## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § § | |
| CARNEGIE DEVELOPMENT, LLC | § | **Hearing Requested** |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § | |
| | § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § | |
| | § § | |
| *Relief Defendants.* | § | |

### DEFENDANT BARTON'S RESPONSE TO MOTION FOR ORDER GOVERNING ADMINISTRATION OF RECEIVERSHIP ESTATE, NOTICE OF DISPOSITION OF CERTAIN PERSONAL PROPERTY, AND BRIEF IN SUPPORT [ECF NO. 47]

Defendant Timothy L. Barton files this Response in opposition to the Receiver's Motion for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and Brief in Support [ECF No. 47] ("Motion"), and requests a hearing on the Motion, as follows.

## I.    INTRODUCTION

The Receiver was appointed less than a month ago to manage and to maintain tens of millions of dollars of real estate development projects and other assets far in excess of the SEC's claims in this case.   Many of these assets represent significant net equity and have cash-profitable operations, in an amount that the Receiver has yet to assess.  *See, e.g.,* Mot. [ECF No. 47] at 11 (acknowledging "unknown net equity").   Absent extraordinary circumstances not present here, liquidation at this stage of a receivership is improper.  The Court should reject the Receiver's even more extraordinary request to have the authority to liquidate assets associated with Mr. Barton without further, specific approval of this Court.

The role of a pre-judgment receiver appointed under SEC-related or other judicial equitable authorities is to secure and manage the current state of assets of corporate entities under receivership.  In the instant motion, however, the Receiver seeks to skip these management obligations and go straight to liquidation. Towards this end, the Receiver has asked for immediate authority to sell, abandon, or destroy substantial property belonging not only to the receivership entities, but also to other third parties.  And the Receiver's proposed procedures for liquidating the estate attempt to circumvent the requirements of 28 U.S.C. § 2001, governing the sale of such property, which is impermissible.  These rules embed notions of due process and fairness into a sale's process to ensure in situations, such as here, where no judgment has been entered so that a litigant's property is not liquidated in a unilateral and unfair manner, if at all.  If permitted to nonetheless move forward, the Receiver's endeavor to liquidate will impair significant asset value and impose an irreversible penalty against Mr. Barton, his companies, and a number of third parties whose assets do not even belong in the estate.   All this will have been done, without any adjudication of liability or wrongdoing against Mr. Barton, much less the

many third party corporations or shareholders thereof, whose property interests would be affected by liquidation.  The Court should therefore deny the Receiver's Motion.[1]

## II.    ARGUMENT & AUTHORITIES

Liquidation is generally inappropriate for an early prejudgment receiver appointed in equity.  *See, e.g., SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets or declaring bankruptcy is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment."); *see also SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("We have in the past criticized the use of receivers to effect the liquidation of a defendant firm *in litigation* under the Securities Act or the Securities Exchange Act.") (emphasis added).  Among other concerns, premature liquidation can result in unnecessary waste and impose an impermissible additional "penalty" exceeding the intended scope of federal securities law.  *See Los Angeles Trust Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960); *see also SEC v. Ahmed*, No. 3:15CV675 (JBA), 2019 WL 11824928, at *4 (D. Conn. Nov. 26, 2019) (staying any liquidation by receiver after noting "substantial risk of irreparable harm resulting from the liquidation of assets which cannot be retrieved even if those assets ultimately prove unnecessary to satisfy the judgment"); *Current Fin. Servs., Inc.*, 783 F. Supp. at 1445 ("The further step of liquidating Current's assets . . . is not necessary . . . ."); !*Campbell v. Pennsylvania Indus.*, 99 F. Supp. 199, 206 (D. Del. 1951) ("[T]here are or were other remedies

---

[1] The Receiver's counsel did not raise this motion with Mr. Barton's undersigned lead trial counsel, Michael Edney, until 5:40 p.m. (EST) on November 3, 2022.  The motion was then filed early the next morning, before Mr. Edney had an opportunity to respond, much less confer.  The motion states no basis for exigency that would excuse a meaningful attempt to meet and confer. And indeed, this is a situation where conferring might have made a difference, as the Defendant has proposed consenting to the ordered of sale of several mature assets for which the time is right to convert them into cash.  *See* App. 4-7, Letter from M. Edney to Receiver, dated Nov. 7, 2022.

available to the corporation or its stockholders for which dissolution or liquidation cannot be arbitrarily substituted in the absence of a showing of extraordinary circumstances of the extreme nature above mentioned."). Such a punitive outcome should especially be avoided when the Receiver does not show why immediate liquidation is necessary or, even more so, when the property of non-defendants is involved. *See, e.g., SEC v. San Francisco Reg'l Ctr. LLC*, No. 17-CV-00223-RS, 2018 WL 11436314, at *4 (N.D. Cal. Aug. 15, 2018) ("Neither the Receiver nor the SEC, however, has made an adequate showing that under the current state of affairs the court should exercise discretion to permit the Receiver to liquidate the real property. . . . Here, neither BHD nor Intervenors are charged with any securities law violation, which only provides a further reason to conclude liquidation by the Receiver is not an appropriate vehicle . . . and may never be."). !

The primary duties of a receiver at the outset of a case, instead, should be focused on maintaining the status quo, marshaling assets, and investigating the financial condition of the receivership estate. *See Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008). If anything, liquidation should be prohibited while the receiver is in the process of ascertaining the true state of affairs and preserving corporate assets. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (citing *SEC v. S & P Nat'l Corp.*, 360 F.2d 741, 750 (2d Cir. 1966)). And if a receivership ever gets to the point of liquidation, federal bankruptcy court often presents a more suitable mechanism for liquidation and resolving claims among potential creditors. *See Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 304 (4th Cir. 2001) ("[W]e do not believe that the equities favor the common-law receivership process over the highly developed and specific bankruptcy process. The procedural requirements for liquidating a large corporation . . . present[s] a task that would push the receivership process to its limits."); *SEC v. High Park Inv.*

*Grp., Inc.*, No. SACV051090CJCMLGX, 2006 WL 8464226, at *5 (C.D. Cal. June 19, 2006) ("Even if this Court could create such a system for the equitable distribution of the creditors' assets, it still lacks the expertise of the bankruptcy court and the guidance of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure."); *cf. Janvey v. Alguire*, No. 3:09-CV-0724-N, 2014 WL 12654910, at *3 (N.D. Tex. July 30, 2014) (noting that "bankruptcy procedures have, in great part, supplanted federal equity receiverships" and bankruptcy case law should be applied even in district court receivership action).

It is worth considering the breathtaking power that—contrary to legal authority—the Receiver is seeking in this matter. The current Receivership Order requires the Receiver to ask this Court for permission before selling any quantum of receivership property, or only under certain conditions spelled out in the Order that are inapplicable here. *See* Receivership Order [ECF No. 29] ¶¶ 39-42. As reflected in the above case law, other courts are also rejecting receiver efforts to sell particular items of property prior to judgment. Even in cases where such sales are authorized, the sales must be made in compliance with 28 U.S.C. § 2001, which the Receiver's Motion seeks to circumvent. This statute creates a protocol for liquidating property in a receivership, the foundational principle of which that the receiver must ask permission from the Court to sale real property and personality. *See* 28 U.S.C. § 2001-2004 (containing specific notice and valuation requirements). While the Motion itself makes passing reference to this statute, the proposed sale procedures in the Motion do not comply with the statute's requirements. The Receiver cites no authority for deviating from the mandates of Section 2001 of Title 28, and the Motion should be denied on this basis alone.

At its outer limits, the receiver's remit is to account for and to secure assets for potential use in the event of an adverse judgment. In the meantime, to avoid penalizing a defendant

without process, a receiver is to manage the assets as the defendant would have, while exercising reasonable business judgment.  *See, e.g., Bd. of Trade, Inc.*, 830 F.2d at 436 (citing *SEC v. S & P Nat'l Corp.*, 360 F.2d at 750).  In this case, the assets associated with Mr. Barton, by and large, involve real property assets, which are not portable and secure themselves.  In this sense, the Receiver's task in this case is more straightforward than that of a receiver appointed to address allegations of a financial Ponzi scheme.

In this regard, the Receiver has not established grounds for an extraordinary departure from standard rules and other admonitions by courts against unnecessary prejudgment liquidation.  Crucially, a serious inquiry into the valuation and assets of the estate had yet to be made.  *See, e.g.,* Mot. [ECF No. 47] at 11 (acknowledging issues of real property having "questionable or unknown net equity").  And the order requires many other inquiries before any liquidation is appropriate.  *See* Receivership Order [ECF No. 29] ¶¶ 57-59 (requiring a proposal on potential liquidation 90 days into the receivership as well as further recommendations whether the receivership is even necessary).

The Receiver's current request for authority to liquidate assets without judicial supervision appears disconnected from securing assets of the scale necessary to satisfy any potential liability in this case, which the SEC claims is $26 million.  *See also Liu v. SEC,* 207 L. Ed. 2d 401, 140 S. Ct. 1936 (2020).  At least two large real estate projects have already been presented to the Receiver as ripe for sale, and these properties will produce, per an independent valuation, well in excess of $26 million in liquid funds. See App. 4-7, Letter to Receiver, dated Nov. 7, 2022 (and attached valuation).  They are the complexes in Forney (Parc @ Windmill Farms) and DeSoto (Bellwether Ridge),    Selling those properties (and placement of the

appropriate amount of proceeds in a secure fund) would obviate the need for any receivership here.

Instead, the Receiver seems fixated on selling items that are particularly dear to Mr. Barton, but will raise no more than trivial amounts of money. *See, e.g.,* Mot. [ECF No. 47] at 10-11, ¶¶ 9-10, 12. That includes an effort to sell Mr. Barton's personal home, which the Receiver has listed for sale without waiting for this Court's order. Coldwell Banker Realty, 4107 Rock Creek Dr. Dallas, TX 75204, https://www.coldwellbankerhomes.com/tx/dallas/4107-rock-creek-dr/pid_50600836/ (last visited Nov. 14, 2022). It also includes proposals to sell Mr. Barton's furniture and personal effects, without regard to whether they are his personal assets rather than belonging to any corporation under the receiver's mandate.

The Receiver suggests that liquidation is necessary because of concerns about the cash flow needs of various corporate entities that have now been subsumed under his control. *See* Mot. [ECF No. 41] at 11. The Receiver's concerns do not justify a change in the liquidation rules for several reasons.

First, many entities already under his receivership have regular revenue that needs to be judiciously managed. It is true that the corporate entities have encountered a significant, unanticipated expense in the last month; but that expense arises from the fees of the receivership itself. Managing cash flow has also been made more difficult by the decision to shutter the operations of JMJ Development and fire all of its employees. This company had managed and generated revenue from the management of real estate assets for thirty years.

Second, the Receiver has not completed a transaction scheduled to close in the days after the receivership order to which Mr. Barton would consent and which would generate hundreds of thousands in operating cash. At the time of the Receiver's appointment, Ridgeview Addition,

LLC, was in the process of closing a pending sale of real property that would have brought in approximately $265,000 in immediate cash equity. That transaction remains available to the Receiver, without these dramatic changes to normal protocols.

Third, the Receiver's concerns about cash flow do not address the protections provided by this Court's order, which prevents creditors from enforcing any claims against the estate. *See, e.g.,* Receivership Order [ECF No. 29] ¶¶ 15, 32, 34-35. Against this backdrop, the Receiver has not identified any other pressing need to compel immediate liquidation of the estate that it cannot resolve through the ongoing receipts from the estate's businesses or other less oppressive means.

Any request to deviate from the regular restrictions against prejudgment receivers liquidating assets must account for the potential that the Receiver's team may lack of familiarity with managing real estate development projects and apartment complexes, which is the business of the corporations now put into receivership. For this reason, federal law contemplates appointments of a receiver for such businesses with experience in managing them. *See* 28. U.S.C. § 3103(b)(1)(B) ("A receiver appointed to manage residential or commercial property shall have demonstrable expertise in the management of these types of property."). The Receiver is trial attorney, however, and has built a team largely of other attorneys, not professionals in real estate development or management. In light of his background, it is particularly concerning that the Receiver already expresses an intent to evict tenants at the apartment complexes, interpose himself into liability-inducing matters, and even abandon certain valuable properties. *See* Mot. [ECF No. 47] at 11.

Even more problematic, the Receiver seeks immediate authority from the Court allowing him to abandon, sell, and destroy all personal property in his possession. *See* Mot. [ECF No. 47] at 9-11. Among other things, the Receiver seeks to abandon and destroy company records and

other personal property belonging to both receivership entities and other third parties. *See* Mot. [ECF No. 47] at 10-11, ¶¶ 3, 9, 10; *see also id.* at p. 11 n.6 (refusing to return personal belongings unless detailed expenditure records provided as to how the belongings were acquired). The Receiver also asks for permission to shred a number of documents that will certainly lead to disputes about spoliation and could easily taint the ongoing civil and criminal proceedings. The Receiver's requests here contemplate the destruction of corporate files, the shredding of litigation and discovery records, and the discard of mail in his possession— regardless of whether those materials belong to the receivership entities or not. *See* Mot. [ECF No. 47] at 10, ¶¶ 4, 5, 7, 8; *but see* Receivership Order ¶ 30 (requiring *all* personal mail be delivered by the Receiver, which the Receiver has yet to do). Before destroying these records, the Receiver will not allow Mr. Barton or his representatives to review many of the files in question, and the Receiver has already refused to allow Mr. Barton's attorneys to even perform a monitored privilege review at the premises. *See* App. 8-10, Letter to Receiver, Nov. 1, 2022; App. 11-12, Email from C. Koonce, Nov. 7, 2022.

Importantly, Fifth Circuit law precludes the Receiver from exercising jurisdiction over much of the non-defendant property currently in his possession. As explained concurrently in the Defendant's opposition to the Receiver's separate motion to expressly name 131 other non-defendant corporate entities under his authority (ECF No. 55), an equity receiver has no power over a non-defendant's assets unless that party (1) received ill-gotten funds belonging to the investors whose rights the receivership protects, and (2) has no legitimate claim to the funds. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009); *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at \*5 (N.D. Tex. Sept. 12, 2018) (Fitzwater, J.); *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012) ("The receivership ordered in this case encompassed

all of Baron's personal property [and] business entities owned or controlled by Baron, including Novo Point, LLC and Quantec, LLC . . . . We conclude the district court could not impose a receivership over Baron's personal property and the assets held by Novo Point and Quantec."). Despite these principles limiting the reach of an equity receiver, the Receiver seeks to sell, liquidate, and destroy assets of over 130 non-defendant entities and other individuals who have not been shown to qualify under the above standard for having a receiver imposed over their property. *See, e.g., SEC v. San Francisco Reg'l Ctr. LLC*, No. 17-CV-00223-RS, 2018 WL 11436314, at *4 (N.D. Cal. Aug. 15, 2018) ("Here, neither BHD nor Intervenors are charged with any securities law violation, which only provides a further reason to conclude liquidation by the Receiver is not an appropriate . . . and may never be.").

The Court's Order initiating this receivership also inherently contemplates the dangers of having an early-stage receiver prematurely attempt to liquidate assets. Specifically, the Order states an intent for the Receiver's purpose to be "marshalling and preserving all assets of the Receivership Entities." *See* Receivership Order [ECF No. 29] at p. 2. In furtherance of this purpose, the Court imposed a duty on the Receiver to "manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court." *See* Receivership Order [ECF No. 29] ¶ 6C. The Court also instructed the Receiver to "use Receivership Property for the benefit of the Receivership Estates, making payments and disbursement and incurring expenses as may be necessary or advisable in the in the ordinary course of business." *See* Receivership Order [ECF No. 29] ¶ 6D. While the Order includes separate provisions allowing for transfers and dispositions of certain property "in the ordinary course of business" (¶ 39) or to sell real property as part of a "wind-down" of "business operations" if "appropriate" (¶ 40, subject to ¶ 42), those

circumstances do not apply here.  *See also* Receivership Order [ECF No. 29] ¶ 41 (requiring

"further Order of this Court" before any real property may be sold).  Not only is a full liquidation

outside the normal course of business, it is inappropriate to wind down and sell real property for

projects that continue to perform.  *Cf. SEC v. Kirkland*, No. 606CV183ORL28KRS, 2008 WL

1787234, at *3 n.1 (M.D. Fla. Apr. 11, 2008) ("The Court denied the first motion to sell the

Isleworth home, finding that pre-judgment liquidation of assets is rare and the Receiver had not

shown an exceptional need to sell the home.").  Such extreme liquidation measures are ultimately

improper under any standard at this early stage.

## III.   CONCLUSION & PRAYER

For the foregoing reasons, Defendant Timothy Barton respectfully requests a hearing on

these matters, and asks that the Court deny the Receiver's Motion for Order Governing

Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and

Brief in Support [ECF No. 47], and grant such other and further relief that may be merited.

Dated: November 14, 2022                    Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(Admitted to NDTX)*
medney@huntonak.com
Sean B. O'Connell
State Bar No. 24103142 *(application for admission forthcoming)*
soconnell@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice*)
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110


– and –

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
Javan Porter
State Bar No. 24116912
javan.porter@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On November 14, 2022 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

/s/ *Michael J. Edney*
Michael J. Edney

-11-