IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § § | |
| CARNEGIE DEVELOPMENT, LLC | § | **Jury Trial Demanded** |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § § | |
| *Relief Defendants.* | § | |

**APPENDIX IN SUPPORT OF DEFENDANT BARTON'S RESPONSE TO MOTION
FOR ORDER GOVERNING ADMINISTRATION OF RECEIVERSHIP ESTATE,
NOTICE OF DISPOSITION OF CERTAIN PERSONAL PROPERTY,
AND BRIEF IN SUPPORT [ECF NO. 47]**

Defendant Timothy L. Barton files this Appendix in Support of his Response to Receiver's

Motion for Order Governing Administration of Receivership Estate, Notice of Disposition of

Certain Personal Property, and Brief in Support.  The Appendix has been consecutively paginated

App. 001 –App. 012 as follows:

---

**RESPONSE APPENDIX – Page 1**

| APPENDIX PAGE | DOCUMENT |
|---|---|
| App. 004 –007 | Letter from M. Edney to Receiver, Nov. 7, 2022 |
| App. 008 –010 | Letter to Receiver, Nov. 1, 2022 |
| App. 011 –012 | Email from C. Koonce, Nov. 7, 2022 |

Dated: November 14, 2022

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(Admitted to NDTX)*
medney@huntonak.com
Sean B. O'Connell
State Bar No. 24103142 *(application for admission forthcoming)*
soconnell@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice*)
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

– and –

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
Javan Porter
State Bar No. 24116912
javan.porter@hklaw.com

**RESPONSE APPENDIX – Page 2**

**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On November 14, 2022 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

/s/ Michael J. Edney
Michael J. Edney

HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL    202 • 955 • 1500
FAX    202 • 778 • 2201

MICHAEL EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@HuntonAK.com

FILE NO:   126068.0000001

November 7, 2022

_**Via Electronic Mail**_

Cort C. Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email:  cort@brownfoxlaw.com

Re:     *Securities and Exchange Commission v. Barton, et al.,* No. 3:22-cv-2118-X

Dear Mr. Thomas:

We write today about a way forward to generate the $26 million allegedly owed to the lenders that is the subject of the above-entitled action.  As we repeatedly have underscored, the receiver has taken possession of significant commercial real estate assets well in excess of $26 million. At the same time, Mr. Barton has not been convicted of any crime or adjudged liable for any violation of the securities laws.  There is no legal authority for an order permitting a receiver, prior to a judgment in the underlying proceeding against the target of the receiver, to liquidate the target's assets in an effort to prepare for punishing him.  At the very most, the receiver may secure such assets that will compensate those allegedly affected by the claimed violation of the securities laws.

We have briefed you on the ongoing, critical-path efforts in development projects that have received funds from loans to Wall entities.  While, in many cases, these projects have been delayed by government approval processes and the pandemic, they stand poised to deliver tens of millions of dollars in value that will pay back lenders and benefit the equity owners of the projects.  We will oppose premature, forced liquidation of these projects for salvage value before the development process is complete.  Such actions are inconsistent with the pre-judgment authorities of any receiver in a securities case and the property rights of private citizens against whom no charge of wrongdoing has been proven.  *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("equity receiverships should not be used to effect the liquidation of defendants in actions brought under the securities laws"); *SEC v. San Francisco Reg'l Ctr. LLC*, No. 17-CV-00223-RS, 2018 WL 11436314, at *4 (N.D. Cal. Aug. 15, 2018) ("the ordinary rule is that a receiver should *not* be authorized to liquidate assets").

**App. 004**

Premature liquidation of ongoing real estate development projects is all the more improper because, if managed properly, those projects will produce more than $26 million in liquidity. Herein we propose a plan to create more than that amount, which represents the outer limit of any legitimate receiver interest. Specifically, Mr. Barton would be prepared to consent, after review of terms and under appropriate circumstances, to the sale of two properties owned by Enoch Investments LLC. The properties—in Forney and DeSoto—are fully built apartment complexes whose construction was financed by the Department of Housing and Urban Development. As these projects were completed before any Wall entity was ever established, they are not the subject of lender funds. They are, however, mature and, thus, their liquidation would not significantly destroy their value.

Attached please find an independent valuation by the manager of Silverlake Capital LLC, a mortgage broker, for two the properties held by Enoch: apartment complexes at Forney (Parc @ Windmill Farms) and DeSoto (Bellwether Ridge), Texas. We have buyers prepared to purchase the properties at or near the valuations therein, creating, we project, well in excess of $27 million. Mr. Barton would consent to the sale of those two properties and to placing $27 million of the proceeds into a special fund for the repayment of lenders subject to this matter, as further described below. The balance of the net proceeds should be returned to Enoch Investments LLC. The $27 million fund should be more than enough to cover the alleged liabilities to the lenders subject to this matter and the fees associated with a short receivership.

Mr. Barton is also open to consenting to the sale of a third mature property (located at Ingleside, Texas) held by Enoch Investments LLC. While unnecessary to address the outer limits of the receiver's mandate, the time is potentially right to sell these properties as an economic matter, and the receiver's existence limits our ability to do so directly.

Once the proposed valuations are verified and the sale process of those properties is initiated, the receiver should immediately return control of all other Barton-related entities and assets to Mr. Barton. That would include control of Mr. Barton's records, electronic files, offices, and residence. Again, there is only one legitimate purpose for the receiver's continued existence: Ensuring funds are available to repay the lenders subject to this action. The proposed course of action will so ensure and should end the need for further action by the receiver.

We note that securing $26 million in funds is only part of the problem. Identifying the real lenders and obtaining their agreement to have funds returned *in a manner consistent with U.S. law* will require considerable effort. Mr. Barton assembled a team in 2019 to attempt payments to the lenders subject to this action. That team insisted that the funds be returned to the accounts that funded the loans in the first instance and that, where appropriate, U.S. taxes be withheld from certain interest payments as required by U.S. law. Michael Fu interfered with this process every step of the way by insisting that funds be repaid to accounts of his choosing and that U.S. taxes not be withheld from any repayments. Mr. Fu also interfered with efforts to contact the true lenders. One explanation for his obstruction became apparent as Barton team inquiries and civil litigation uncovered lenders that, in many cases (accounting for more than 70 percent of the loaned funds), were simply cut-outs to obscure that funding was provided by Haibo Jiang, a Chinese Communist Party officer.

Any fund to reimburse lenders must account for these significant federal anti-money laundering and tax law issues that were an obstacle to repayment in 2019. We look forward to sharing additional information regarding these concerns at the appropriate time.

Please note that there is no legitimate reason or authority to liquidate assets owned by Mr. Barton's entities. The Receivership Order is clear that there are only two purposes of the receivership: "marshaling and preserving all assets of the Receivership Entities." *See* Receivership Order [ECF No. 29] at 2. The courts have repeatedly held that equity receiverships should not be used to liquidate defendants in actions brought under the securities laws. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (expressing being "disturbed" by attempted use of receivership to liquidate defendant entities)*; SEC v. High Park Inv. Grp., Inc.*, No. SACV051090CJCMLGX, 2006 WL 8464226, at *4 (C.D. Cal. June 19, 2006) (holding that a district court's "broad discretion in determining the appropriate relief in an equity receivership" did not create rare case in which a receiver could liquidate); *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reiterating "strong reservations as to the propriety of allowing a receiver to liquidate [an estate]."). This is particularly so here, where a plan has been presented to secure and preserve more than enough assets to address the subject matter of the above entitled action.

Sincerely,

Michael Edney

cc:  Richard Roper, Esq.
     Charlene Koonce, Esq.

App. 006

# SILVERLAKE CAPITAL LLC

2701 SUNSET RIDGE DR., STE 607
ROCKWALL, TEXAS 75032
972.877.8376

November 1, 2022

Mr. Michael Edney
Via email

      Re:  Parc @ Windmill Farms, Forney, TX; and Bellwether Ridge, DeSoto, TX
             (the "Projects")

Dear Mr. Edney

As manager of Silverlake Capital LLC (SLC), I have reviewed the project information you provided for the Projects and am familiar with what apartment projects are selling for in the DFW area as a mortgage broker working in this area. It is SLC's opinion that the Projects should sell at this time at a cap rate between 5.0% and 5.25% on the Trailing 12 month net income. It is indicated that the approximate Trailing 12 month net incomes on the Forney and DeSoto Projects were $2.8M and $1.4M, the range of price based on the 5.0% and 5.25% could be the following: on Forney, between about $56.0M and $53.3M, and on DeSoto, between about $28.0M and $26.7M. However, you should be aware that cap rates have moved up significantly this year and are likely to continue to do so, as long as the interest rate markets are increasing.

I am have been a mortgage broker for SLC in the DFW area for many years and have also personally developed a large HUD financed project which is about the same size as the HUD financed Parc @ Windmill Farms and also in the eastern suburbs of Dallas.

THIS IS A MORTGAGE BROKER PRICE OPINION AND SHOULD NOT BE CONSIDERED AN APPRAISAL OF ANY TYPE, AS IT JUST REPRESENTS THE OPINION OF SLC BASED ON ITS ACTUAL KNOWLEDGE WITHOUT DETAILED MARKET STUDY. Please know that this is just an opinion and that there were not any guidelines, rules, regulations or laws that were followed in providing this opinion. This is strictly a Brokers Opinion of Value and no one is entitled to assert any claim of liability against SLC, me or anyone else based on this opinion.

Respectfully yours,

Silverlake Capital, LLC

By: _____
Joey Howell, Manager

**App. 007**



HUNTON
ANDREWS KURTH

HUNTON ANDREWS KURTH LLP
2200 PENNSYVANIA AVENUE, NW
WASHINGTON, DC 20037

MICHAEL J. EDNEY
HEAD OF GOVERNMENT INVESTIGATIONS
PRACTICE
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

November 1, 2022

**VIA ELECTRONIC MAIL**

Cort C. Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: cort@brownfoxlaw.com

Re:    *Securities and Exchange Commission v. Barton, et al.,* No. 3:22-cv-2118-X

Dear Mr. Thomas:

The Hunton Andrews Kurth LLP law firm represents Mr. Timothy Barton in a civil matter initiated by the Securities and Exchange Commission and the criminal prosecution initiated by the United States Attorney for the Northern District of Texas. I write today to memorialize our position on crucial issues regarding the attorney-client privilege and attorney work product protections.

The receiver has taken possession of Mr. Barton's personal office and home and is seeking to take possession of an email account at JMJ Development that he used for personal purposes. His office has also been the epicenter of preparation by him and his lawyers to defend himself against the SEC's and the DOJ's charges of fraud. This includes entire offices dedicated to the use of his lawyers, and materials created in conjunction with and under the supervision of counsel by Mr. Barton.

As such, the receiver now taken possession of documents and communications that are protected by the attorney-client privilege and the attorney work product doctrine. Before you review these documents, there must be a protocol that ensures that neither receiver nor its staff is exposed to this privileged and/or protected information, especially given the receiver's intention and mandate to communicate with Government agents and prosecutors.

To this end, we are requesting that all documents contained in the personal offices of Mr. Barton and his three counsel in the building not be reviewed by any member of your team, until a group of Mr. Barton's attorneys have reviewed them for privilege and created a log of documents over which we are asserting privilege. In that review, Mr. Barton's counsel would not remove any documents from the premises. Instead, they would physically segregate, and prepare a log detailing, the documents over which Mr. Barton is asserting

ATLANTA  AUSTIN  BANGKOK  BEIJING  BOSTON  BRUSSELS  CHARLOTTE  DALLAS  DUBAI  HOUSTON  LONDON  LOS ANGELES
MIAMI  NEW YORK  NORFOLK  RESEARCH TRIANGLE PARK  RICHMOND  SAN FRANCISCO  THE WOODLANDS  TYSONS  WASHINGTON, DC
www.HuntonAK.com

**App. 008**

Cort C. Thomas, Esq.
November 1, 2022
Page 2

privilege. Depending on your plans to search the electronic communication of Mr. Barton and his attorneys on JMJ Development servers, a similar protocol should be put in place for those data.

We would propose that the receiver then review that log and identify any documents over which the receiver has concerns regarding the assertion of privilege. We would then meet and confer and, in the event that agreement cannot be reached, the parties can seek a judicial resolution of the privilege claim. This proposed protocol also will conserve resources, as it will avoid the retention of separate professionals to review for privilege in the first instance.

I want to address, in advance, an issue that arose in our discussion on Thursday, October 20, 2022. The concept was raised that the receiver has been given control over the privilege of various corporate entities, such that everything on the premises, to the extent privileged, is now in the receiver's control. As an initial matter, the facilities that you now control also served as Mr. Barton's personal offices and home, and there are many documents therein prepared by or under the supervision of Mr. Barton's personal lawyers in the SEC and DOJ matters. In any event, the presence of closely held corporations in Mr. Barton's privilege communication does not give the receiver control over jointly-privileged documents. This issue has been addressed before by the courts, and the participation of the corporation in many of these privileged communications does not destroy Mr. Barton's right to confidentiality. *See*, *e.g.*, *In re Bounds*, 443 B.R. 729 (Bankr. W.D. Tex. 2010) ("In the instant case, this Court finds that [a new control person] is not entitled to the work product generated on behalf of the Corporations insofar as it contains the Debtor's own confidential information. Handing over all the work product of the Corporations, for whom the Debtor once served as an officer, would almost certainly result in a disclosure of the Debtor's own confidential information."); *In re: Taproot Sys., Inc.*, No. 11-05255-8-JRL, 2013 WL 3505621 (Bankr. E.D.N.C. July 11, 2013) ("The general rule with regard to materials protected by the common interest doctrine or a joint defense agreement is that one party to the agreement cannot unilaterally waive the protection.").

**App. 009**

Cort C. Thomas, Esq.
November 1, 2022
Page 3

These are important matters. The seizure of these documents and e-mail accounts is over Mr. Barton's objection. Should these privileged materials make their way into your substantive review and become part of briefings to the Government, they will taint the integrity of a criminal prosecution that is threatening Mr. Barton's liberty. I hope to resolve this issue with you through mutual agreement, but will not hesitate to take this issue to the Court given its importance in the event appropriate arrangements are not reached.

I look forward to working with you through these matters.

Very truly yours,

Michael J. Edney

cc:    Richard Roper, Esq.
       Charlene Koonce, Esq.

**App. 010**

**From:** Charlene Koonce
**To:** Edney, Michael; Cort Thomas
**Cc:** Richard Rooper; Huffman, Ted
**Subject:** RE: Securities and Exchange Commission v. Barton, No. 3:22-cv-2118-X
**Date:** Monday, November 7, 2022 7:52:01 AM
**Attachments:** image001.png

Michael – thank you for these letters.  First, with respect to your proposed privilege protocol, I note that you had promised to provide Mr. Barton's proposed protocol by the close of business on 10/20. Your proposal arrived almost two weeks late.  In the intervening time, we had discussed an FRE 502(b) snapback proposal with Mr. Roper and we propose that we use that process here.  If we proceeded with your proposal to review, segregate, and log documents in which Mr. Barton claims a privilege, a member of the Receiver's team would need to be present at the premises while your team reviewed, thereby multiplying the cost of the review for the estate.  A 502(b) agreement would save both sides time and money.

More generally, I see no basis in the Receivership Order or otherwise for your concerns about "the receiver's intention and mandate to communicate with Government agents and prosecutors."  The Receiver's mandate compels him to perform many tasks and report to the Court about the status of the estate and his efforts. While he is certainly empowered to provide testimony regarding Mr. Barton's cooperation or lack thereof at any sentencing hearing, that effort has *nothing* to do with communicating any purportedly privileged information to anyone.   And as you may know, a receiver serves as *the Court's* agent.  *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) ("The receiver is not an agent of the parties, nor is he like any other party affected by the wrongdoing of the entity's leaders—in this case, by way of a classic Ponzi scheme. He is "an officer or arm of the court ... appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody.").  In the event the Receiver discovered privileged documents in reviewing the materials located in the Receivership Entity's offices that he is *required* to review, he would put them aside for your retrieval on behalf of Mr. Barton.  After ascertaining the existence of a privilege in such materials, under no circumstances would the Receiver continue reviewing the subject documents or include reference to them in any report to the Court or in communications with the government. Your concerns to the contrary are simply unfounded.  Please let us know by the close of business on Thursday whether you will agree to the use of a FRE 502(b) agreement with respect to documents located in the Receivership Entities' offices.

I also note that with respect to Mr. Barton individually claiming a privilege in what you deem "jointly-privileged documents" finds little if any support in the cases you cite.  We are unaware of any joint defense agreement between Mr. Barton individually and any other Receivership Entity, nor would the common interest doctrine have any application in these circumstances. Nor is the Receiver akin to a successor in interest who was previously adverse to Mr. Barton as in *In re Bounds.*

Finally, while we appreciate Mr. Roper's efforts to provide the information requested to date by the Receiver and required by the Receivership Oder, we must disagree that Mr. Barton's privilege against incrimination excuses his obligation to produce documents requested by the Receiver or

**App. 011**

required by the Order. First, you provide no basis for any assertion that the act of production in these circumstances would have any incriminating consequences. For instance, providing appraisals of certain items of art or other identifying information for Receivership Assets could not provide any basis to incriminate Mr. Barton. Moreover, other requested information and documents, such as the location, account numbers, and balances easily falls within the "foregone conclusion" exception to any testimonial conduct in producing the requested information, if in the context presented here, the act of production actually qualified as compelled testimony rather than the mere production of previously existing documents. In short, the law does not support your assertion that Mr. Barton's Fifth Amendment privilege insulates him from his obligation to produce documents and information requested by the Receiver.



**CHARLENE KOONCE**
☏ 214.367.7503
BROWNFOXLAW.COM

---

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Tuesday, November 1, 2022 5:17 PM
**To:** Cort Thomas <cort@brownfoxlaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton, No. 3:22-cv-2118-X

Dear Mr. Thomas and Ms. Koonce:

Attached please find two letters regarding the above entitled matter. Please contact us with any questions.

My very best regards,

Mike


Michael J. Edney
Head of Government Investigations Practice
Hunton Andews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 778-2204

**App. 012**