**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | CASE NO. 3:22-cv-2118-X |
| | ) | **HEARING REQUESTED** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TIMOTHY BARTON et al., | ) ) | |
| Defendants. | ) | |

**MOTION OF HNGH TURTLE CREEK, LLC, TO INTERVENE AND TO CONFIRM
OWNERSHIP OF PROPERTY LOCATED AT 2999 TURTLE CREEK BOULEVARD**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................ 2

        A.      HNGH Obtains the 2999 Turtle Creek Property........................................ 2

        B.      2999TC Breaches the Orders and Fails to Obtain the Property. ............................ 3

        C.      The Receiver Collaterally Questions HNGH's Ownership of the Property. .......... 5

III.    ARGUMENT ............................................................................................................. 6

        A.      Intervention is Proper Both as of Right and by Leave of Court. ............................ 6

                1.      HNGH is entitled to intervene as of right. ................................................. 6

                2.      Alternatively, the Court should grant permissive intervention. .................. 9

        B.      The Court Should Confirm HNGH's Ownership of the Turtle Creek
                Property. ................................................................................................. 10

IV.     CONCLUSION AND RELIEF SOUGHT ...................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2999TC Acquisitions, LLC*,
  No. 21-31954, Doc. 283 (Bankr. N.D. Tex.) ..................................................... *passim*

*In re Baudoin*,
  981 F.2d 736 (5th Cir. 1993) ...............................................................................11

*Eberhard v. Marcu*,
  530 F.3d 122 (2d Cir. 2008).................................................................................12

*Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Ga.*,
  510 F.2d 272 (5th Cir. 1975) ......................................................................7, 10, 11

*Hancock v. Chicago Title Ins. Co.*,
  2008 WL 4344620 (N.D. Tex. Sept. 23, 2008).....................................................10

*In re Jones*,
  490 F.2d 452 (5th Cir. 1974) ...............................................................................12

*Katchen v. Landy*,
  382 U.S. 323 (1966)...............................................................................................11

*In re Moody*,
  817 F.2d 365 (5th Cir. 1987) ...............................................................................11

*Netsphere, Inc. v. Baron*,
  703 F.3d 296 (5th Cir. 2012) .................................................................................8

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
  140 S. Ct. 582 (2020).............................................................................................11

*In re Still*,
  963 F.2d 75 (5th Cir. 1992) .............................................................................11, 12

*Texas v. U.S.*,
  805 F.3d 653 (5th Cir. 2015) ...........................................................................7, 8, 9

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n.*,
  834 F.3d 562 (5th Cir. 2016) .............................................................................7, 9

**Rules**

Fed. R. Civ. P. 24.......................................................................................................7, 8, 9

Pursuant to the Court's instruction that "all interested non-parties are directed to intervene to the extent they wish to participate in the proceedings," Dkt. 62 at 2 n.1, and its prior order that the question of the ownership of 2999 Turtle Creek Boulevard was "not yet properly before the Court," Dkt. 62-63, HNGH Turtle Creek, LLC ("HNGH") respectfully submits this Motion to Intervene and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard.

The Receiver is unopposed to HNGH's request for intervention but is opposed to its request to confirm ownership of 2999 Turtle Creek Boulevard. The SEC is unopposed to HNGH's request for intervention and has stated that it is not in a position to take a position on the other relief sought. Defendant Timothy Barton is opposed to the Motion.

## I.      INTRODUCTION

The Receiver's Initial Status Report leaves HNGH with no choice but to intervene in this litigation. *See* Dkt. 67. As HNGH previously explained, Judge Everett confirmed in September that HNGH remains the rightful owner of the 2999 Turtle Creek Property. *Id.* at 18; *see also* Dkt. 51 at 2-5; *In re 2999TC Acquisitions, LLC*, No. 21-31954, Doc. 283 (Bankr. N.D. Tex.) (App'x at 4, 21, 48-49). Yet the Receiver continues to use this unrelated SEC action, which involves entirely distinct allegations against Defendant Timothy Barton, to collaterally undermine that determination and intrude on HNGH's well-settled rights. In fact, in his recent status report, the Receiver goes so far as to suggest that one of Barton's entities *"is"* still the owner of the Property and that this litigation may be a vehicle to "unwind[] the determination" of Judge Everett. Dkt. 67 at 17-18 (emphasis added). HNGH therefore moves to intervene, and it respectfully requests that the Court reiterate what two other judgments have already confirmed: that HNGH is the owner of the Property.

## II.    BACKGROUND

### A.    HNGH Obtains the 2999 Turtle Creek Property.

HNGH acquired the 2999 Turtle Creek Property several months ago after a protracted set of negotiations, payment defaults, and legal battles with 2999TC Acquisitions, LLC ("2999TC"), which the Court has now designated as a Barton-controlled Receivership Entity. *See* Dkt. 62 at 6 ¶116.  In 2019, HNGH's predecessor-in-interest loaned $32.5 Million to 2999TC, with the note secured by a deed of trust on the Property.  App'x at 4.  After a series of defaults, renegotiations, delays, and dubious litigation by 2999TC, HNGH ultimately agreed to accept a deed in lieu of foreclosure that would "be released to HNGH upon a forbearance default."  *Id.* at 5-7.

On October 29, 2021, 2999TC failed to make its maturity date payment, resulting in a forbearance default.  *Id.* at 8.  Later that same day, HNGH submitted the deed for recordation, and the Dallas County Clerk recorded the deed on November 1, 2021.  *Id.*  But Barton was not finished yet.  2999TC initiated bankruptcy proceedings and, on November 11, 2021, filed an Adversary Complaint to avoid HNGH's recorded deed.  *See 2999TC Acquisitions, LLC v. HNGH Turtle Creek, LLC*, No. 21-03085, Doc. 1 ¶¶ 28-46, Claims I-III (N.D. Tex.) ("Adversary Proceeding").

After four months of litigation in the Adversary Proceeding, the bankruptcy court entered its *Agreed Order of Judgment and Dismissal of Adversary Proceeding with Prejudice to Refiling* (the "Adversary Order").  *See* Adversary Proceeding, Doc. 15 (App'x at 50-53).  The Adversary Order, entered on March 18, 2022, is binding on 2999TC, Barton, and other entities controlled by Barton.  *Id.* at 52.  In that Order, the bankruptcy court issued findings of fact and rulings that conclusively established HNGH's ownership of the 2999 Turtle Creek Property.  In particular, the court determined that "the Debtor defaulted on its payment obligations under the Note by failing to pay all amounts due and owing by 1:00 pm ET on the maturity date, October 29, 2021," and that "following the Debtor's default, HNGH properly exercised its right to file the Deed in Lieu in

2

accordance with the terms and conditions of the Forbearance Agreement." *Id.* at 51. The bankruptcy court then ruled that "all claims and causes of action asserted by Plaintiff in the Complaint are unmeritorious and are denied in their entirety and DISMISSED WITH PREJUDICE TO REFILING." *Id.* Accordingly, the deed filed by HNGH on October 29, 2021, was properly filed and not subject to avoidance or recovery by 2999TC, Barton, or any other party.

As evidenced in the Adversary Order, and as agreed to by 2999TC and Barton, all of the claims and causes of action asserted in the Adversary Complaint were expressly adjudicated on the merits; the Adversary Order was the result of litigation to a final judgment; and 2999TC and Barton waived and released all other claims and causes of action they could have asserted against HNGH in the Adversary Complaint. *Id.* at 51-52. In fact, 2999TC, Barton, and HNGH all agreed—and the bankruptcy court ruled—that the Adversary Order "shall have res judicata and collateral estoppel effect." *Id.* at 52.

### B.      2999TC Breaches the Orders and Fails to Obtain the Property.

Subsequent to the Adversary Order, the only way that 2999TC could ever hope to re-obtain ownership of the Property was through an agreed order in the bankruptcy proceeding determining that, if 2999TC satisfied certain payment obligations to HNGH by May 31, 2022, "the Deed in Lieu [of Foreclosure] would be deemed rescinded and avoided" and "HNGH would deliver [a] recission deed to [2999TC] so the Debtor could record it in the real property records." App'x at 8-10 & n.5. But if 2999TC failed to do so, "the Deed in Lieu would be deemed a valid, unavoidable prepetition transfer that the Debtor would be barred from contesting" and HNGH would be confirmed as "the owner of the property automatically." *Id.* at 9-11.

2999TC "did not satisfy" its obligations by the deadline. *Id.* at 21. Instead, Barton engaged in a further series of dilatory, deceptive, and outrageous ploys, as Judge Everett recounted at length in his 49-page order. *See, e.g.*, *id.* at 14-20. Barton filed more meritless litigation. *Id.* at 16-17.

3

He transformed what should have been a "three-hour" hearing into a 50-hour ordeal "stretched out over fifteen nonconsecutive days over two months"—during which he, his witnesses, and his ever-evolving cast of lawyers relied on "outright falsehoods and half-truths"; made arguments that were "stunning," "disingenuous," and "flat out false"; threatened to file a motion to recuse; bizarrely claimed to have never encountered evidentiary objections "in law school or in thirty years of practice"; moved for continuances; sought the appointment of a mediator; and otherwise tried "to draw out the hearing." *Id.* at 2, 15-20, 32, 36, 38, 45, 47 & nn.8, 13, 15. So unconvincing was this performance that, although Judge Everett entered the case "skeptical of HNGH's allegation" that Barton had "attempt[ed] to set a trap for HNGH," as "the hearing progressed[] the Court became convinced that HNGH's analysis was spot-on." *Id.* at 15 & n.7.

This performance also did nothing to avoid Judge Everett's inevitable judgment: "[T]he Deed in Lieu—automatically—is deemed a valid, unavoidable prepetition transfer to HNGH." *Id.* at 21-22, 47. And because "[t]he Deed in Lieu was a valid conveyance," Judge Everett ordered, HNGH was "the owner of the Property pursuant to that Special Warranty Deed recorded … in the real property records of Dallas County, Texas on or about November 1, 2021," with 2999TC possessing "no further right, title, or interest in the Property." *Id.* at 48. By its express terms, this judgment became "effective and enforceable immediately." *Id.* at 49.

2999TC filed a notice of appeal of Judge Everett's "final order," moved for a stay, and filed a new lis pendens on the Property pending appeal. *In re 2999TC,* Docs. 288, 296, 297; Notice of Lis Pendens, Dallas Cnty. Prop. Rec. No. 202200270741 (Oct. 14, 2022). Those filings recognized that "HNGH has been determined to be the new owner of the Property, free and clear of any claim by 2999TC"; that Judge Everett "concluded that the deed in lieu automatically took

effect because [2999TC] defaulted"; and that the judgment operated "as res judicata." *In re 2999TC,* Docs. 296 at 8-9; 297 at 3-5.

> **C.      The Receiver Collaterally Questions HNGH's Ownership of the Property.**

After Judge Everett confirmed HNGH's ownership of the 2999 Turtle Creek Property in his September 28 order, this Court entered a Receivership Order in this unrelated SEC action appointing the Receiver and granting him certain powers over Barton's property. Dkt. 29. By the Order's plain terms, such property is limited to that belonging to Barton and "other entities that … Barton directly or indirectly controls." *Id.* at 2-4.

Despite this limitation, the Receiver has repeatedly suggested that the 2999 Turtle Creek Property falls within his authority. His motion to supplement the Receivership Order, for example, claimed that 2999TC "owns the Turtle Creek Property which is the subject of [the] bankruptcy case." Dkt. 41 at 4. So too for the supporting declaration, which claimed that 2999TC "is the owner of the Turtle Creek Property" and that various "photos and signs" at the Property "demonstrate[] that the Turtle Creek property f[alls] within the scope of the Receivership Order." Dkt. 42 at 4, 6. The Motion for Order Governing Administration of the Receivership operated on the same assumption, taking an inventory of the contents of the 2999 Turtle Creek Property and lumping this Property in with other locations that "need to be vacated prior to sale." Dkt. 47 at 12-13.

The Receiver's November 17 Initial Status Report confirms this position. Dkt. 67. Despite admitting that Judge Everett "entered an Order on September 28, 2022 that finds, among other things, that HNGH now 'owns' the Turtle Creek Office," the Receiver nonetheless makes several statements inconsistent with this unambiguous confirmation of HNGH's ownership. *Id.* at 18.[1]

---

[1]    In addition to this recognition of Judge Everett's order, the Receiver has taken several other actions that reflect the reality that HNGH owns the Property. For example, in communications

He says that "Receivership Entity 2999TC Acquisitions, LLC" perhaps still **"is"** "the owner of the Turtle Creek Office." *Id.* at 17 (emphasis added). He confirms his ongoing activities and presence at the Property, including "disconnecting external internet access," "posting Receivership signs," "securing all exterior doors," and thoroughly searching the premises. *Id.* at 7, 10-12, 26-27. He invokes a "potential[] sale of … the Turtle Creek Office." *Id.* at 27. And he suggests that the "institution of the Receivership" in these proceedings "may impact" or "unwind[]" the "prior agreements, actions, and decisions in the Bankruptcy Court." *Id.* at 18.[2]

## III.    ARGUMENT

Because the Receiver is using this litigation to question HNGH's property rights, HNGH now moves to intervene. *See* Dkt. 62 at 2 & n.1 (granting intervention to the Max Barton Entities and directing all other "interested non-parties [to move] to intervene"). HNGH further requests an order confirming its ownership of the 2999 Turtle Creek Property.

### A.    Intervention is Proper Both as of Right and by Leave of Court.

#### 1.    HNGH is entitled to intervene as of right.

Rule 24(a) confers a right to intervene on "anyone" who meets four criteria: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that

---

with HNGH's counsel, the Receiver and his representative have asked HNGH to procure insurance coverage for the Property. *See* Nov. 9, 2022, Email from C. Koonce to J. Kane, App'x at 54. The Receiver has also suggested that HNGH pay all ad valorem property taxes when they come due, and has discussed with HNGH whether the Receiver or HNGH should pay for utilities at the Property on a go-forward basis.

[2]    The Receiver baselessly claims that this "unwinding" may prevent HNGH from receiving "a windfall at the expense of potentially impacted investors." Dkt. 67 at 18. Tellingly, however, the Receiver offers ***no support whatsoever*** for this claim of a windfall to HNGH—much less of a windfall at the expense of other individuals that Barton allegedly tried to swindle in wholly unrelated transactions.

the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Texas v. U.S.*, 805 F.3d 653, 657 (5th Cir. 2015). Courts should "liberally construe[]" this test to "allow intervention where no one would be hurt and the greater justice could be attained." *Id.* at 656-67 (quotations omitted). HNGH easily satisfies this standard.

First, HNGH's motion is timely. Not all Defendants have even answered the complaint, *see* Dkt. 61, the Court recently allowed the Max Barton Entities to intervene, *see* Dkt. 62 at 2 & n.1, and the Receiver only filed his Initial Status Report last week. Under "all the circumstances," there is no question that HNGH has promptly moved to protect its rights. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n.*, 834 F.3d 562, 565-66 (5th Cir. 2016) (quotation omitted) (granting intervention "three months after [a party] filed its answer").

Second, HNGH has "an interest relating to the property or transaction which is the subject of the action" given how this litigation is proceeding. *Texas*, 805 F.3d at 657. All that is required is "a stake in the matter that goes beyond a generalized preference that the case come out a certain way"—for example, when "a ***potential*** decree threatens a prospective inference with [the movant's interest]," even if the court is presently "uncertain whether the [movant's] interests w[ill] be affected at all." *Id.* at 657, 660 (ellipses and quotation omitted). In light of this low bar, movants who assert that their "property interests … are threatened by the litigation" are "almost always" entitled to intervene because a property right is "the most elementary type of right that Rule 24(a) is designed to protect." *Id.* at 658 (brackets and quotations omitted).

The current proceedings—at least as conducted by the Receiver—imperil HNGH's settled property rights. To be clear, this litigation ***should*** have nothing to do with HNGH's property rights; the only asserted nexus is that a non-defendant entity controlled by Barton previously

7

controlled the Property before HNGH became the owner through an unrelated series of hard-fought battles. *Compare Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (receivership is improper even for the **main defendant's current property** when that "property [is] not the subject of the underlying dispute"). But as a matter of reality, HNGH's "property interests … are threatened by the litigation." *Texas*, 805 F.3d at 658 (brackets omitted). The Receiver has used this litigation as grounds to enter, search, "secure," and inventory the contents of the Property. *E.g.*, Dkt. 47 at 12-13; Dkt. 67 at 7, 10-12, 26-27. He has suggested that the institution of the Receivership might be a tool for "unwinding the determination that HNGH is the owner of the [P]roperty." Dkt. 67 at 18. He has referenced a "potential sale[]" of the Property. *Id.* at 27. And the Receivership Order imposed a "stay of litigation" involving "any of the Receivership Entities," Dkt. 29 at 16-17, which the Receiver has used to freeze Barton's pending appeal of Judge Everett's decision, thereby continuing to cast a cloud over HNGH's rightful title to the Property. Dkt. 67 at 18, 31; *In re 2999TC,* Docs. 300, 302; *see also* Notice of Lis Pendens, Dallas Cnty. Prop. Rec. No. 202200270741. All of this interferes with HNGH's "property interest" and thus "present[s an] eas[y] case[]" for intervention." *Texas*, 805 F.3d at 658 (quotations omitted).

Third, and for similar reasons, "the disposition of the action may, as a practical matter, impair or impede [HNGH's] ability to protect [its] interest." *Id.* at 657. Again, the Receiver has asserted that the authority conferred by this Court not only justifies his dominion and control over HNGH's property, but may be the impetus for "unwinding" HNGH's ownership altogether. Dkt. 67 at 7, 10-12, 18, 26-27. And the Receiver has invoked the Receivership Order to freeze Barton's putative appeal from Judge Everett's decision and leave HNGH in limbo. *See id.* at 31; *In re 2999TC,* Docs. 300, 302. "[A]s a practical matter," HNGH's property rights are now entangled in this action. *Texas*, 805 F.3d at 657.

Fourth, the existing parties "inadequately" represent HNGH's interests. *Texas*, 805 F.3d at 657. Barton would like nothing more than to undermine HNGH's ownership—hence the hard-fought battle in the bankruptcy court and his efforts to appeal and stay Judge Everett's Order. *See In re 2999TC,* Docs. 288, 296, 297. Likewise, neither the SEC nor the Receiver represents HNGH's interest. *E.g.*, Dkt. 6 at 24 (the Government requests receivership to "gather, manage, and potentially liquidate receivership assets for the benefit of harmed investors"); Dkt. 67 at 14-26 (explaining the Receiver's desire to sell real property). Indeed, the Receiver has an interest in having the Property somehow find its way back to the Receivership Estate so that it can be used to finance the Receiver's activities and satisfy Barton's civil (or criminal) obligations. Given that HNGH is the only entity interested in HNGH remaining the owner of the Property, it clearly satisfies its "minimal burden" of showing that "the representation [provided by existing parties] *may* be inadequate." *Wal-Mart*, 834 F.3d at 569 (quotation omitted); *see also, e.g.*, *Texas*, 805 F.3d at 663-64 (granting intervention when the movants' interests merely "diverge[d]" from the Government's largely-aligned "institutional interest").

### 2.    Alternatively, the Court should grant permissive intervention.

Permissive intervention is open to "anyone" possessing "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The Court has "broad discretion in granting" intervention if "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Hancock v. Chicago Title Ins. Co.*, 2008 WL 4344620, at *2 (N.D. Tex. Sept. 23, 2008).

First, and again, HNGH's motion is timely. HNGH is promptly responding to this Court's directive that interested parties should move to intervene, Dkt. 62 at 2 n.1, as well as to the Initial

9

Status Report that provided the Receiver's first substantial discussion of his views on the Property. Dkt. 67 at 17-18.

Second, HNGH's "claim or defense" (specifically, that it is the rightful owner of the Property) presents "common questions" with the Receiver's opposing view that 2999TC "is" perhaps "the owner of the Turtle Creek Office"—to say nothing of the Receiver's threats to use "the institution of the Receivership" to sell the Property or "unwind[] the determination that HNGH is the owner of the [P]roperty." *Hancock*, 2008 WL 4344620, at *2; Dkt. 67 at 17-18, 27.

Third, "intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Hancock*, 2008 WL 4344620, at *2. HNGH is eager to resolve this matter promptly. The Receiver has already engaged HNGH in discussions about the property. *See* n.1, *supra*. And HNGH previously litigated the question of the Property's ownership against Barton in the bankruptcy proceedings, so HNGH's ongoing involvement should come as no surprise to him.

*     *     *

This Court has recently allowed other non-Defendant entities to intervene and assert their rights. *See* Dkt. 62 at 2. There is no reason to treat HNGH less favorably. For any of the above reasons, the Court should allow HNGH to intervene to protect its settled property interests.

### B.    The Court Should Confirm HNGH's Ownership of the Turtle Creek Property.

HNGH respectfully requests confirmation of its ownership of the Property, consistent with the binding orders in the bankruptcy proceeding. The Court has already explained that the Receivership extends only to property that belongs to Barton and his entities. Dkt. 29 at 2-4; *see also In re Still*, 963 F.2d 75, 77 (5th Cir. 1992) (a receiver "stands in the shoes" of the defendant). And, as the Receiver has recognized elsewhere in his filings, he is "an officer of the [C]ourt and

10

subject to its orders," with those orders providing "the *sole* source of [his] authority." Dkt. 47 at 6 (emphasis added and quotations omitted). The upshot of those principles is inescapable: the Receiver has no basis for claiming power over a property in which Barton and his entities lack any "right, title, or interest." App'x at 48. As both the Adversary Order and Judge Everett's exhaustive opinion made inescapably clear, Barton and his entities have no "right, title, or interest" in the Property, which for months has belonged to HNGH alone. *Id.* at 48, 50-53.

If there were any doubt about the propriety of confirming HNGH's ownership, a straightforward application of res judicata dispels it. Judge Everett's order "definitively dispose[d] of [a] discrete dispute[]" in bankruptcy, and thus is a "final" decision governed by "[t]he normal rules of res judicata and collateral estoppel." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020); *Katchen v. Landy*, 382 U.S. 323, 334 (1966) (collecting cases).[3] It makes no difference that the decision is subject to appeal or that the Receiver has now entered the mix: The order "is res judicata and entitled to full faith and credit unless and until reversed on appeal." *Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Ga.*, 510 F.2d 272, 273 (5th Cir. 1975). And the Receiver merely "stands in the shoes" of Barton and his entities—including the 2999TC debtor entity that fought and lost in the bankruptcy court and is bound by its judgments. *In re Still*, 963 F.2d at 77; *accord Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (a receiver "stands in the shoes of the corporation and can assert only those claims which the corporation could have asserted" (quotation omitted)). Accordingly, the Receiver has no reason to collaterally

---

3   *See also In re Baudoin*, 981 F.2d 736, 739, 742 (5th Cir. 1993) (stressing "the important interest in the finality of judgments in a bankruptcy case" and that "precedent clearly establishes that bankruptcy court orders [can be] final judgments on the merits for res judicata purposes even though [they] neither close[] the bankruptcy case nor dispose[] of any claim" (quotations and italics omitted)); *In re Moody*, 817 F.2d 365, 367-68 (5th Cir. 1987) ("a bankruptcy proceeding is over when an order has been entered that ends a discrete judicial unit in the larger case").

question Judge Everett's holding that HNGH is the exclusive "owner of the Property," App'x at 48 (emphasis added)—or, for that matter, the determinations in the prior Adversary Order conclusively establishing HNGH's ownership of the 2999 Turtle Creek Property, which the court ruled "shall have res judicata and collateral estoppel effect," App'x at 52.

Settled principles of res judicata aside, ignoring Judge Everett would also violate the tenet that "[t]he orders of a bankruptcy court must be given full respect and obedience." *In re Jones*, 490 F.2d 452, 457 (5th Cir. 1974). As courts routinely recognize, "receivership should not be used as an alternative to bankruptcy." *Eberhard*, 530 F.3d at 132 (collecting cases). And here, all parties agree that the bankruptcy court squarely addressed and decided the "ownership" "of the Turtle Creek Property." Dkt. 42 at 6; *see also* Dkt. 67 at 18.

In the words of Judge Everett, "[e]nough is enough." App'x at 2, 47. The judiciary—to say nothing of HNGH—has spent untold resources establishing what has long been plain: HNGH is the rightful owner of the 2999 Turtle Creek Property. That process has consumed 50-plus hours of court time, culminating in a 49-page opinion that methodically disposed of every plausible objection (and then some) to HNGH's ownership. *In re Jones*, 490 F.2d at 457; *see also* App'x at 2. There is no reason to entertain further suggestions that the Property belongs to anyone else.

## IV.    CONCLUSION AND RELIEF SOUGHT

Consistent with the Court's recent direction, HNGH now moves to intervene. HNGH further requests that the Court—in keeping with the bankruptcy orders—confirm that HNGH is the owner of the 2999 Turtle Creek Property.

DATED:  November 25, 2022

Respectfully submitted,

s/ *Erin Nealy Cox*

Erin Nealy Cox
Texas State Bar No. 00794357
Tel: (214) 972-1847
erin.nealycox@kirkland.com
George W. Hicks, Jr.*
Virginia State Bar No. 91711
Tel: (214) 972-1722
george.hicks@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Tel: (214) 972-1770

Kyle M. DeYoung*
Washington D.C. Bar No. 472613
Tel: (202) 389-3251
kyle.deyoung@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, DC 20004
Tel: (202) 389-3251

John J. Kane
Texas State Bar No. 24066794
Tel: (214) 777-4261
jkane@krcl.com
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Suite 5200
Dallas, TX 75202
Tel: (214) 777-4200

*Pro Hac Vice application forthcoming*

*Counsel for HNGH Turtle Creek, LLC*

13

**CERTIFICATE OF CONFERENCE**

I affirm that on November 22, 2022, the undersigned counsel consulted with counsel for the Receiver, who represented the Receiver is unopposed to the request to intervene but is opposed to the other relief requested.  The undersigned counsel also consulted with counsel for the SEC, who represented the SEC is unopposed to the request to intervene and states that it is not in a position to take a position on the other relief sought.

I affirm that on November 23, 2022, the undersigned counsel consulted with counsel for Defendant Timothy Barton, who represented Mr. Barton is opposed to the relief sought.

By: _s/ Erin Nealy Cox_
Counsel for HNGH Turtle Creek, LLC

**CERTIFICATE OF SERVICE**

I affirm that on November 25, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

By: _s/ Erin Nealy Cox_
Counsel for HNGH Turtle Creek, LLC