IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON CARNEGIE DEVELOPMENT, LLC WALL007, LLC WALL009, LLC WALL010, LLC WALL011, LLC WALL012, LLC WALL016, LLC WALL017, LLC WALL018, LLC WALL019, LLC HAOQIANG FU (a/k/a MICHAEL FU) STEPHEN T. WALL | § § § § § § § § § § § § § § § § § § | **Jury Trial Demanded** |
| *Defendants,* | § § § | |
| DJD LAND PARTNERS, LLC LDG001, LLC | § § § | |
| *Relief Defendants.* | § § | |

## DEFENDANT BARTON'S MOTION FOR STAY PENDING APPEAL

Defendant Timothy L. Barton moves for this Court to stay its Order Appointing Receiver [ECF No. 29], its Order Granting Receiver's Motion to Supplement Order Appointing Receiver [ECF No. 62], and its Order Granting Motion for Order Governing Administration of Receivership Estate, Etc. and Approving Disposition of Certain Personal Property [ECF No. 63], while all three Orders are pending appeal to the Fifth Circuit.

**TABLE OF CONTENTS**

I.    Introduction ..................................................................................................................1

II.    Background ...................................................................................................................2

III.    Argument .....................................................................................................................4

  A.    The Defendant is Likely to Establish that the Court Erred in Appointing and
     Empowering the Receiver ..........................................................................................5

    1.    The SEC sought a receivership on the basis of the wrong legal standard...........................5

    2.    The Court failed to consider the inequitable timing of the SEC's request for a
      receivership ..............................................................................................................11

    3.    The Court's orders improperly use the vehicle of a prejudgment receivership to penalize
      Timothy Barton ........................................................................................................13

    4.    The Court's order placing named third-party entities into the receivership contravened
      Fifth Circuit precedent..............................................................................................14

    5.    The Court's order approving the Receiver's liquidation plan was an abuse of discretion ...
      ..................................................................................................................................14

  B.    Mr. Barton will suffer irreparable injury absent a stay pending appeal .................................15

  C.    Other parties face minimal, if any, injury from a stay, and the public interest lies in
     granting a stay ................................................................................................................17

IV.    Conclusion...................................................................................................................19

## TABLE OF AUTHORITIES

**CASES**

*Campbell v. Pa. Indus.*,
99 F. Supp. 199 (D. Del. 1951)..............................................................................................7

*E.T. v. Paxton*,
19 F.4th 760 (5th Cir. 2021) ................................................................................................18

*Earl v. Boeing Co.*,
21 F.4th 895 (5th Cir. 2021) ................................................................................................19

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008)..................................................................................................14

*Index Newspapers LLC v. US Marshals Svc.*,
977 F.3d 817 (9th Cir. 2020) ................................................................................................19

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ......................................................................................8, 9, 14

*Kimmis v. Atchley*,
No. 3:10-CV-1535-D, 2014 WL 6805478 (N.D. Tex. Dec. 3, 2014)............................................7

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)..................................................................................................19

*Los Angeles Trust Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) ................................................................................................15

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ........................................................................................ passim

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................................4, 17

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) ................................................................................................15

*People v. Trump*,
No. 452564/2022 (N.Y. Sup. Ct. Oct. 13, 2022) ....................................................................10

*In re Search Warrant Issued June 13, 2019*,
942 F.3d 159 (4th Cir. 2019) ................................................................................................17

*SEC v. ABS Manager, LLC*,
No. 13CV319-GPC JMA, 2013 WL 1164413 (S.D. Cal. Mar. 20, 2013)................................8, 9

*SEC v. Ahmed*,
No. 3:15CV675 (JBA), 2019 WL 11824928 (D. Conn. Nov. 26, 2019) ....................................16

*SEC v. Am. Bd. of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987) ....................................................................................................14

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) ...........................................................................................14

*SEC v. Faulkner*,
No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018) ..................................8, 14

*SEC v. First Fin. Grp. of Tex.*,
645 F.2d 429 (5th Cir. 1981) ..................................................................................................5, 6

*SEC v. Phillip A. Michael Sec., Inc.*,
No. 74 CIV. 2158, 1974 WL 416 (S.D.N.Y. June 26, 1974) ..................................................7, 13

*SEC v. S & P Nat'l Corp.*,
360 F.2d 741 (2d Cir. 1966) ....................................................................................................15

*SEC v. Spence & Green Chem. Co.*,
612 F.2d 896 (5th Cir. 1980) .....................................................................................................6

*SEC v. Zale Corp.*,
650 F.2d 718 (5th Cir. 1981) .....................................................................................................6

*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) ..................................................................................................4, 15

*United States v. Michelle's Lounge*,
126 F.3d 1006 (7th Cir. 1997) .................................................................................................17

*United States v. Ritchey*,
No. 1:21-CR-6-HSO-RPM, 2022 WL 3023551 (S.D. Miss. June 3, 2022) .............................17

*Wages and White Lions Invs., LLC v. FDA*,
16 F.4th 1130 (5th Cir. 2021) ..................................................................................................15

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) (Costa, J., dissenting) ...............................................................17

## STATUTES & RULES

15 U.S.C. § 78u(d)(5) .............................................................................................................5, 11

18 U.S.C. § 985 .........................................................................................................................12

18 U.S.C. § 3142(c)(2) ..............................................................................................................11

28 U.S.C. § 3103(b)(1)(B) ...............................................................................................16

Fed. R. Crim. P. 16 ..........................................................................................................12

Fed. R. Crim. P. 32.2(b)(1)(A).........................................................................................11

**OTHER AUTHORITIES**

Wright & Miller, 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) ............................7, 11, 18

Megan Smith, *SEC Receivers and the Presumption of Innocence: The Problem
with Parallel Proceedings in Securities Cases and the Ever Increasing Powers
of the Receivers* ...........................................................................................................12

SEC Fraud Cases, WALL ST. J. (Oct. 12, 2022)...............................................................10

TAX L.J. 203, 229 (2011) .................................................................................................12

## I.    Introduction

Congress authorized immediate appeals from an order appointing a receiver because a court's imposition of a receiver before final judgment has dramatic effects on a defendant's interests and rights.   This case demonstrates the irreparable harm that a receiver can inflict on a private party against whom there has been no adjudication of wrongdoing or underlying finding of liability.  The Receiver has kicked the defendant out of his personal home and is poised to sell it and all its contents.  The Receiver has also removed the defendant from his office and is threatening to destroy documents without regard to whether they are essential to the preparation of his defense in a parallel criminal matter.

This has occurred *without any showing of irreparable harm on the other side of the ledger*. Specifically, all parties acknowledge that there are more than enough assets in corporations associated with the defendant to cover any alleged liability associated with the loan agreements at issue in this case.  At the same time, no party has made any meaningful showing of asset flight risk.

The Defendant has appealed the Court's orders relating to the receivership, and this Court should stay them pending the resolution of that appeal.

Importantly, the defendant is likely to succeed on the merits of the appeal.  The question is not whether the Securities and Exchange Commission ("SEC") has alleged securities fraud. Instead, to take a defendant's property prior to judgment, the Government must show a lack of resources to meet the alleged liability and the imminent flight of assets.  The SEC chose to show neither of these issues in any compelling way, even though it had investigated its claims for two years before filing this lawsuit.  The SEC is not hiding these shortcomings, and instead states in its proposed order that a receivership was necessary to penalize the Defendant, a finding that made its way into the Court's receivership order.  *See* Order Appointing Receiver [ECF No. 29] at p. 2.  But

the use of a prejudgment receivership to "penalize" a defendant against whom there has been no adjudication of liability or wrongdoing is improper.

The particular terms of this Court's receivership order are especially likely to be overturned on appeal as they contravene binding precedent.  In addition to the impropriety of having any receivership in this case, one of the most objectionable terms of the Court's existing receivership orders is the extraordinary green-lighting of the Receiver's liquidation of the estate's assets within weeks of the Receiver being appointed.  When there are proper grounds for a receivership in other cases, the purpose of *prejudgment receiverships is to maintain the status quo and preserve estate assets at the outset*, pending final judgment.  This Court's order to the contrary, attempting to go straight to liquidation, crashes through these principles.  So too has the Court's order placing more than one hundred corporate entities in receivership *without any attempted showing by the Receiver that these entities received funds traceable to an alleged violation of the securities laws*.

In the alternative, therefore, the Court should stay aspects of the receivership order that permit the Receiver to liquidate assets, review documents that are privileged without a protocol to ensure that this information is not shared with the Government, to destroy records and property that are essential to the preparation of a defense in the criminal prosecution pending against Mr. Barton, to seize the property of non-defendant entities, and to keep Mr. Barton out of his personal home.

## II.        Background

The SEC filed this action on September 23, 2022, after a two-year investigation.  ECF No. 1; Order Directing Private Investigation (Barton Opp. to SEC Receivership Mot. App. [ECF No. 25] at 006).  The SEC's Complaint alleges that, from March 2017 to June 2019, the Defendants obtained funds from Chinese lenders under false pretenses and invested those funds in real estate projects and other ventures in purported violation of contractual terms.  *See* ECF No. 1.  The

Defendant has yet to answer the Complaint, and there has been no discovery or disclosure of the evidence underlying the SEC's allegations.

Three days after this lawsuit was filed, the SEC filed an Expedited Motion for Appointment of Receiver.  ECF No. 6.  In that motion, the SEC identified 29 companies that it believed should be placed into receivership. *See* Hahn Decl. Ex. C (SEC App. [ECF No. 7-1] at 018). The SEC did not seek a preliminary injunction or temporary restraining order.

On October 18, 2022, the Court granted the SEC's motion over the Defendant's opposition and without granting Mr. Barton the evidentiary hearing he requested. ECF No. 29; Def. Opp. to SEC Receivership Mot. at 25 [ECF No. 24] (requesting an evidentiary hearing). Although the Court adopted the SEC's proposed order nearly verbatim, the final Receivership Order notably deviated from the SEC's request that the receivership be managed by an individual with "extensive experience . . . handling receiverships involving real estate issues." *See* ECF No. 6 at 20. With no notice to the parties much less opportunity for briefing on its propriety, the Court instead appointed an attorney without any documented experience in managing large real estate development projects.

The first two days of the receivership were not dedicated to understanding the tens of millions of dollars of real estate assets managed by the corporate entities placed into receivership. Instead, that critical time was spent harassing the Defendant.  The Receiver used the blank check order from the Court to seize Mr. Barton's personal residence titled in the name of a limited liability corporation, the sole purpose of which was to hold Mr. Barton's private residence.  The Defendant sought emergency relief to stay in his home, but the Court denied the request within thirty minutes, without awaiting a response from the Receiver or the Government.  *See* ECF No. 33 (denying ECF No. 32).  The Receiver has since evicted Mr. Barton and now attempts to sell his personal residence at over $500,000 less than its appraised value, with no explanation of why this

action will do anything to materially advance a legitimate end of the receivership. *Compare* ECF No. 58 (Barton Opposition to Receiver's Mot. to Supplement App. 004-043), *with* Coldwell Banker Realty, 4107 Rock Creek Dr. Dallas, TX 75204, https://www.coldwellbankerhomes.com/tx/dallas/4107-rock-creek-dr/pid_50600836/ (last visited Nov. 22, 2022).

On November 1, 2022, the Receiver moved to supplement the Receivership Order to expressly name 131 new entities that were never previously raised by the SEC in the initial motion practice. ECF No. 41. The Receiver did not attempt to show that any of these new entities received funds traceable to the allegations in the underlying complaint. The Court, nevertheless, granted this motion. ECF No. 62.

On November 4, 2022, the Receiver separately moved for additional authority to liquidate, abandon, and destroy property belonging to Mr. Barton, the receivership entities, and numerous other third parties. ECF No. 47; *see also* ECF No. 56.  Among other things, the Receiver's motion specifically asked for permission to *shred documents* in his possession, including business records, litigation files, and mail. ECF No. 56 at 10.  The Court again granted the Receiver's motion over Mr. Barton's opposition. ECF No. 63.

On November 17, 2022, Mr. Barton filed a notice of interlocutory appeal of the Court's receivership orders. He now requests a stay pending the outcome of that appeal.

### III.    Argument

When deciding whether to grant a stay, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Likelihood of success and irreparable injury are the most important factors. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020).  Each factor favors a stay here.

**A.    The Defendant is Likely to Establish that the Court Erred in Appointing and Empowering the Receiver**

The Court of Appeals is likely to hold that this Court erred in multiple respects. *First*, the SEC sought a receiver based on case law sanctioning the use of receiverships as a means to implement injunctive relief. Here, the SEC did not seek such relief, rendering such authority inapplicable. The SEC failed to meet the required Fifth Circuit standards to obtain a receivership, including requirements that a receivership be proven "necessary and appropriate," that any benefits outweigh the burdens, and that no less drastic remedy be available. *Second*, the Court failed to consider the equities (which weigh against imposing a receiver) before imposing an equitable remedy. *Third*, the Court's Orders impermissibly reflect an intent to penalize Mr. Barton before he has been adjudged liable for any allegations raised in the SEC's Complaint. *Fourth*, the terms of the receivership ordered by the Court impermissibly go beyond measures to secure the status quo, by authorizing the Receiver to pursue early liquidation of assets prior to a judgment and reaching non-defendant corporate entities without any analysis of whether they received funds derived from the alleged violations of the securities laws.

**1.    The SEC sought a receivership on the basis of the wrong legal standard**

The SEC moved for a receivership under Section 21(d)(5) of the Exchange Act, which authorizes "equitable relief" when "appropriate or necessary." 15 U.S.C. § 78u(d)(5). But rather than focus its argument on that inquiry, the SEC directed this Court to inapposite caselaw involving the appointment of a receiver as "an ancillary *to preliminary injunctive relief*." SEC's Mot. for Receiver [ECF No. 6] at pp. 11-14 (emphasis added) (citing cases).[1] The SEC never sought a

---

[1] The cases cited by the SEC in its receivership motion include *SEC v. First Financial Group of Texas*, in which Fifth Circuit held that "the appointment of a temporary receiver is often a necessary ancillary form of relief in a SEC civil enforcement action for injunctive relief." 645 F.2d 429, 438 (5th Cir. 1981); *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (highlighting significance of cases in which "a receivership was proper as *an adjunct to injunctive relief* for a securities fraud" (emphasis added)). The SEC's motion practice also relies on *SEC v. Evolution Capital Advisors, LLC*, for the proposition that "a

preliminary injunction against the Barton Defendants and has presented no evidence to meet the heightened burden for obtaining one.  To do so, the SEC would have needed to prove by a preponderance of the evidence that the Barton Defendants are engaged in or about to engage in a substantive securities violation, *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 434-35 (5th Cir. 1981), and that there is a "reasonable likelihood" of future transgressions.  *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981) (holding that the "mere fact of a past violation does not ipso facto establish the SEC's right to injunctive relief"). The SEC also would have needed to establish that the preliminary injunction was necessary to avoid irreparable harm, which (at a minimum) would have required a showing of an imminent risk of asset flight that the Government has assiduously avoided throughout the briefing process.

Because the SEC's request is unconnected to a previously obtained preliminary injunction, the Fifth Circuit requires showings by the SEC that it did not even attempt to make in this case. Under binding Fifth Circuit precedent, the imposition of a receivership is a "drastic measure" that a district court cannot order unless there is (1) a clear need for such extraordinary relief, (2) the benefits of the receivership outweigh its burdens, and (3) there are no less drastic measures available.  *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012); *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980).

*First*, the SEC has not shown a "clear necessity" for a receivership as it submitted no evidence of an imminent asset flight or dissipation risk. Nor could the SEC make such a showing. The assets here primarily consist of *real property*, which cannot be easily disposed of, concealed, or dissipated. (SEC App. [ECF No. 7-1] at 017); *see First Fin. Grp.*, 645 F.2d at 439 (ordering a

---

receiver 'becomes a necessary implementation *of injunctive relief*,'" 866 F. Supp. 2d 661, 668 (S.D. Tex. 2011).  Similarly, the SEC relies on *SEC v. AmeriFirst Funding, Inc.*, which provides that "the appointment of a receiver is a 'well-established equitable remedy available to the SEC in its civil enforcement proceedings *for injunctive relief*." No. CIV A 307-CV-1188-D, 2007 WL 2192632, at *3 (N.D. Tex. July 31, 2007) (emphasis added)).

receiver based on factors such as that "the nature of the assets (cash and securities) [was] such that they may be easily disposed, concealed, or dissipated"); *see also, e.g., Kimmis v. Atchley*, No. 3:10-CV-1535-D, 2014 WL 6805478, at *2 (N.D. Tex. Dec. 3, 2014) (denying receivership after considering, inter alia, that there was no "imminent danger that property will be concealed, lost, or diminished in value").

Rather than establish any imminent asset flight risk, the crux of the SEC's receivership motion was based on events that occurred between 2017 and 2019, when lender funds were consolidated and accounted for at the parent level. *See* Decl. of C. Hahn [ECF No. 7-1] ¶ 11 ("[M]y review focused on the time period starting from January 1, 2017 through July 2019."). But events in 2017 and 2019 have nothing to do with whether there is an imminent risk of asset dissipation today. *See Kimmis*, 2014 WL 6805478, at *2 (denying receivership where there was no showing of an "imminent danger that [the defendant's] property will be concealed, lost, or diminished in value."); *cf. Campbell v. Pa. Indus.*, 99 F. Supp. 199, 206 (D. Del. 1951) (observing "there is no indication of that imminent danger of serious loss which appears to be a necessary condition precedent to the exercise of such drastic powers" to wind up corporation through receivership).

No doubt had the SEC believed any Defendant-held asset was a flight risk during its more than two-year investigation, it would have intervened much earlier. *See* Wright & Miller, 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) ("[U]nnecessary delay . . . may be viewed as inconsistent with a claim that plaintiff is suffering great injury or . . . that there is an urgent need for immediate relief [such] that a judgment would be rendered ineffective unless some restraint is imposed on defendant pending an adjudication on the merits."); *see also SEC v. Phillip A. Michael Sec., Inc.*, No. 74 CIV. 2158, 1974 WL 416, at *1 (S.D.N.Y. June 26, 1974) (denying receivership relief for alleged securities violation due to, in part, the SEC's inaction despite knowledge of security violation).

If nothing else, the SEC's own evidence dispels the notion that a receivership was clearly necessary. The SEC's factual record clearly shows that the Defendant's myriad real estate projects include substantial assets that far exceed the $26 million at issue in this litigation. *See* SEC App. [ECF No. 7-1] at 017. These real property assets are illiquid by nature and pose no risk of being hidden or absconded. *Cf. SEC v. ABS Manager, LLC*, No. 13CV319-GPC JMA, 2013 WL 1164413, at *6 (S.D. Cal. Mar. 20, 2013) ("In support of its motion to freeze assets, the SEC has offered no evidence that [the defendant] will likely dissipate his own personal assets or the corporate assets."). Indeed, the Defendant has already offered to organize and consent to a sale of three apartment complexes in the receivership estate, which would net sums approaching the $26 million allegedly at issue in this matter. *See* Def. App. [ECF No. 57] at 4-7. This course of action is not speculative; it is backed by hard offers. *See* App. to Mot. for Stay at 004-008, Letter of Intent by Cypress Equity Investments, dated Nov. 21, 2022.

The Court's Orders are additionally improper because they expand the receivership estate beyond bounds permitted by applicable precedent. The Fifth Circuit specifically dictates that "equity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute." *Netsphere*, 703 F.3d at 306. It is not enough for a party to propose an unrelated property "as a possible fund for paying . . . claims" as a basis to toss it into a receivership. *Id*. Rather, to justify an expansion of a receivership to include non-party assets, the movant must show that the non-party (1) received ill-gotten funds, and (2) has no legitimate claim to the funds. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009); *see also* ECF No. 6 at 13 (the SEC arguing the same standard). District courts applying this test have required the movant to show that the non-party entity is (i) controlled by the defendant and (ii) in possession of funds traceable to the alleged fraud. *See, e.g., SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *5 (N.D. Tex. Sept. 12, 2018); *see also Netsphere*, 703 F.3d at 310 (holding that the district court could not impose a

receivership over "personal property and assets" not traceable to the underlying subject matter of the dispute). The SEC has never made a showing that each entity directly or indirectly controlled by Mr. Barton owns property that is the subject of the underlying dispute. And the Receiver merely asserted, without citing any evidence, that "upon information and belief" 131 non-party entities have used or otherwise benefited from lender funds. *See* ECF No. 41 at 5. But mere assertions "upon information and belief" are not enough to demonstrate the nexus between the alleged ill-gotten funds underlying this matter and the entities the Receiver ultimately subsumed. *See Janvey*, 588 F.3d at 834.

*Second*, while the potential benefit of any receivership remains questionable at best, the harm is certain to be significant. Many of the entities that are subject to the Court's receivership orders are real estate development companies. The owner and manager of those companies, with experience running them, has now been extracted by the Court. There is nobody left to man the ship to ensure that these companies and their development projects have any chance of future success. The current Receiver lacks such documented experience, *see* Receiver's Initial Status Report at 15 n.5 [ECF No. 67], and he has already complained of his inability to juggle the projects under his remit. *See, e.g.*, ECF No. 67 at 4 (recounting "immense challenges for the Receiver to carry out his most fundamental duties"). The Receiver has turned instead to liquidation, at any price, rather than managing in progress real estate development projects to maturity. But that outcome will result in substantial losses to projects that are years in the making, which benefits nobody.

Further, any receivership inherently includes substantial receivership fees and third-party attorney costs, none of which will contribute to the future success and profitability of the companies. These fees will only result in a further dissipation of assets, which is the opposite of what the SEC professes to seek. *See, e.g., ABS Manager*, 2013 WL 1164413, at *8 (denying a

motion to appoint a receiver because it would "only further dissipate the assets of the investors"); Ted Bunker, Investors Question Receivership Cost in SEC Fraud Cases, WALL ST. J. (Oct. 12, 2022), https://www.wsj.com/articles/investors-question-receivership-costs-in-sec-fraud-cases-1166 5603351 ("The cost of the receiver and her team exceeded $255,000 just for the first two weeks of their involvement, court filings show.").

*Third*, there is nothing in the record to indicate that the Court considered any "less drastic equitable remedies" than a receivership, even though the Fifth Circuit prohibits a receivership absent such a determination. *See Netsphere*, 703 F.3d at 305. In his opposition to the SEC's motion, however, the Defendant proposed an equally effective and less burdensome alternative to a receivership that would serve the same general purpose as a receiver without destroying the Barton entities: a court-appointed monitor. ECF No. 24 at 25-26; *see, e.g.*, App. to Mot. for Stay at 019, Order Appointing Independent Monitor, *People v. Trump*, No. 452564/2022, at 10 (N.Y. Sup. Ct. Oct. 13, 2022) (explaining that an independent monitor "is the most prudent and narrowly tailored mechanism to ensure" compliance with the law for the pendency of the action). The proposed monitor would have the power to approve budgets, oversee all major transactions such as the sale or transfer of assets, and freeze the use of assets for non-mission critical purposes. Meanwhile, the Defendant and his development team, while operating under the oversight of the monitor, would continue to utilize their comprehensive knowledge toward maximizing the ongoing development on the properties and create value for all interested parties. This type of monitor would have been a suitable alternative to the drastic receivership relief ordered by the Court.

Yet another option proposed by the Defendant—to no avail—would have been to sell a limited number of high-value assets. Such sales would net profits approaching the amount allegedly at issue in this case. *See* Resp. to Mot. for Order Governing Administration of Receivership Estate [ECF No. 56] at 5; Def. App. [ECF No. 57] at 4-7.

### 2. The Court failed to consider the inequitable timing of the SEC's request for a receivership

Mr. Barton is also likely to succeed on appeal because the Exchange Act authorizes "equitable relief" only in appropriate or necessary circumstances, whereas the current Receivership Order was sought for inequitable reasons and under inequitable circumstances. *See* 15 U.S.C. § 78u(d)(5). After running an investigation for two years, the SEC claimed for the first time to need emergency equitable relief mere days after the U.S. Attorney for the Northern District of Texas filed a separate criminal action against Mr. Barton individually. *See* Order Directing Private Investigation (Barton Opp. to SEC Receivership Mot. App. [ECF No. 25] at 006) (October 8, 2020 notice of SEC investigation); Barton Dep. Tr. (SEC App. [ECF No. 9-2] at 229), from May 24, 2021 (investigatory interview of Timothy Barton from 17 months ago). The SEC has yet to substantiate any reason for needing an emergency receivership this past month, but one thing is clear—its timing undermines its claimed need for equitable relief. *See* Wright & Miller 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) ("[U]nnecessary delay . . . may be viewed as inconsistent with a claim that plaintiff is suffering great injury or . . . that there is an urgent need for immediate relief [such] that a judgment would be rendered ineffective unless some restraint is imposed on defendant pending an adjudication on the merits.").

The government's coordinated request for a receivership, in practical effect, makes an end-run around the protections of the criminal justice system by using more lenient civil mechanisms to seize the assets in question. Recognizing the dangers of prosecuting a criminal defendant while starving that defendant of resources, the Federal Rules of Criminal Procedure and relevant statutes provide important protections for those defendants. *See, e.g.*, Fed. R. Crim. P. 32.2(b)(1)(A) (generally limiting criminal forfeiture to seizing property that is involved in the particular offenses for which the defendant is convicted); 18 U.S.C. § 3142(c)(2) (requiring that conditions of pretrial

release not "impose a financial condition that results in the pretrial detention of the person").  Even civil judicial forfeiture requires the government to prove in court, through the introduction of admissible evidence and subject to cross-examination of witnesses, that the specific property being forfeited was linked to criminal activity. 18 U.S.C. § 985.  These rights have all been inequitably stripped by the Court's entry of its receivership orders in these parallel civil proceedings.  Indeed, there is no "fundamental fairness [in] allowing a receiver broad powers, even to liquidate an entire corporation, before a jury is even impaneled." Megan Smith, *SEC Receivers and the Presumption of Innocence: The Problem with Parallel Proceedings in Securities Cases and the Ever Increasing Powers of the Receivers*, 11 HOUS. BUS. & TAX L.J. 203, 229 (2011).

That is only the beginning of how the receivership compromises the fairness of parallel criminal proceedings.  The receivership orders have given the receiver possession over privileged documents in the Defendant's home and office.  Yet there are no safeguards in place to stop the Receiver from ingesting these privileged materials into his review and substantive reports to the prosecution team and opposing counsel in this matter with his findings and observations.  At the same time, the receivership order authorizes the Receiver to destroy documents without any protocol for first determining whether they that are material to the preparation of the defense. *Compare* Fed. R. Crim. P. 16 (requirement government preservation and disclosure of information material to the preparation of the defense).  That is not to mention the unnecessary disruption of the Defendant's displacement from his home and business, while preparing to defend himself from criminal charges. The collective result of these actions is that Mr. Barton has been stripped of many materials necessary to defend himself against the Government's claims.

Finally, the Court's receivership orders authorizing liquidation of the estate also will not serve a legitimate equitable purpose.  Rapid liquidation at bargain prices, rather than management of the development projects and assets held by the estate, will only destroy value for any of the

alleged lenders on whose behalf the SEC purports to bring this case. This is in addition to the irreversible impact that the destruction of such property will have on Mr. Barton and the numerous entities encumbered by the receivership.

### 3. The Court's orders improperly use the vehicle of a prejudgment receivership to penalize Timothy Barton

The Receivership Order itself reflects that the SEC's receivership is being used as a sword rather than a shield. The first page of the Order flatly states the Court's intent to "penaliz[e] past unlawful conduct[,] and deter[] future wrongdoing." ECF No. 29 at 2. But the penalization of a defendant, such as Mr. Barton, who has not been found liable for any wrongdoing is improper. *See, e.g., Phillip A. Michael Sec.,* 1974 WL 416, at *2 ("[T]he extraordinary remedies of injunctive relief and receivership should not be invoked when the only effect would be punitive, not remedial.").

Instead of merely "marshaling and preserving all assets of the Receivership Entities," ECF No. 29 at 2, the Receiver is engaging in a liquidation spree. *See also* ECF No. 63. The Receiver seems especially fixated on selling items that are particularly dear to Mr. Barton, but will raise no more than trivial amounts of money. *See, e.g.,* ECF No. 47 at 10-11. That includes an effort to sell Mr. Barton's personal home. *See* Coldwell Banker Realty, 4107 Rock Creek Dr. Dallas, TX 75204, https://www.coldwellbankerhomes.com/tx/dallas/4107-rockcreek-dr/pid_50600836/ (last visited Nov. 22, 2022). The Receiver separately proposes to sell Mr. Barton's furniture and personal effects, without regard to whether those assets belong to the receivership estate itself or other third parties. All such efforts are inappropriate in light of the background and circumstances of this case, and thus should be stayed.

**4.   The Court's order placing named third-party entities into the receivership contravened Fifth Circuit precedent**

The Court's Order approving the express naming of new entities to the receivership was an abuse of discretion as well. *See* ECF No. 62. "[E]quity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute." *Netsphere*, 703 F.3d at 306. Yet the Court's Order places vast amounts of property into receivership notwithstanding that the Receiver never attempted to show, beyond "information and belief," that this property is the subject of the SEC's Complaint. *See* ECF No. 41 at 5. Contrary to the Court's Order, the Fifth Circuit holds that when seeking to add non-party property to a receivership, the movant must show that the non-party (1) received ill-gotten funds, and (2) has no legitimate claim to the funds. *Janvey*, 588 F.3d at 834. District courts have properly applied this test in requiring that the movant to show that the non-party entity is (i) controlled by the defendant and (ii) in possession of funds traceable to the alleged fraud. *See, e.g., Faulkner*, 2018 WL 4362729, at *5; *see also Netsphere*, 703 F.3d at 310 (holding that the district court could not impose a receivership over "personal property and assets" not traceable to the underlying subject matter of the dispute).

**5.   The Court's order approving the Receiver's liquidation plan was an abuse of discretion**

The Court's order authorizing the Receiver's plans to liquidate property, ECF No. 63, is likewise improper. The use of receiverships as a mechanism for prejudgment liquidation is generally inappropriate. *See Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reiterating "strong reservations" as to receivership liquidations); *SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets or declaring bankruptcy is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment."); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("We have in the past criticized the use of receivers to effect the liquidiation [sic] of a

defendant firm in litigation under the Securities Act or the Securities Exchange Act") (citing *SEC v. S & P Nat'l Corp.*, 360 F.2d 741, 750 (2d Cir. 1966)); *Los Angeles Trust Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (criticizing "additional penalty" by proposed liquidation). There are no special circumstances here that justify a prejudgment liquidation of assets under receivership.

> **B.      Mr. Barton will suffer irreparable injury absent a stay pending appeal**

A stay is also necessary because the Receiver's actions are certain to cause irreparable injury. *See Tex. Dem. Party*, 961 F.3d at 412 (noting that courts "determin[e] irreparable harm not in denying the plaintiffs' requested relief outright but in temporarily staying [order at issue] pending a full appeal").

As an initial matter, the Court's receivership order takes the extraordinary step of authorizing the liquidation of real property assets.  This liquidation process is irreparable harm per se.  *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that a church established irreparable harm where it would lose its lease on property because the deprivation of an interest in real property constitutes irreparable harm).  Even if there could be some theoretical compensation for the improper disposition of real property, the receivership order immunizes the Receiver from any liability for money damages, and the Government is protected by principles of sovereign immunity.  *See Wages and White Lions Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) ("[F]ederal agencies generally enjoy sovereign immunity for any monetary damages.").  These conditions make a stay pending appeal the only method to avoid irreparable harm.

The effects on real property have not just been theoretical, but also personal.  The Receiver has evicted Mr. Barton, seized his family home, and already determined to sell that property "as expeditiously as possible." ECF No. 67 at 15-16.  Should that sale continue and the Receiver's

seizure of Mr. Barton's personal residence ultimately be deemed improper, Mr. Barton will suffer undeniably irreparable harm in the loss of his home.

Although of lesser sentimental value, the liquidation of the real estate portfolio that Mr. Barton has spent his career constructing will also result in irreparable harm. *See SEC v. Ahmed*, No. 3:15CV675 (JBA), 2019 WL 11824928, at *4 (D. Conn. Nov. 26, 2019) (staying liquidation by receiver after noting "substantial risk of irreparable harm resulting from the liquidation of assets which cannot be retrieved even if those assets ultimately prove unnecessary to satisfy the judgment").

The SEC notably proposed the appointment of a *different* individual as receiver, who has the necessary experience to serve in that role. *See* ECF No. 6 at 20 (characterizing David Wallace as an individual with "extensive experience . . . handling receiverships involving real estate issues"); ECF No. 9-2 (SEC App. 312) (describing Wallace's qualifications).  No document filed in this case has addressed why a trial attorney was appointed as the receiver instead. Given that the receivership entities own and manage numerous ongoing real estate projects, the identity of the receiver is likely to lead to unnecessarily lost value and thus irreparable harm. *Cf.* 28 U.S.C. § 3103(b)(1)(B) (requiring, in related federal debt collection context, that "[a] receiver appointed to manage residential or commercial property shall have demonstrable expertise in the management of these types of property").

Further problematic, the Court has granted the Receiver power to abandon, sell, and destroy all personal property in his possession. ECF No. 63 at 2-5; *id.* at 7-9. Under this authority, the Receiver may now abandon and destroy company records and other personal property belonging to both receivership entities and other third parties. The Court's Order also permits the Receiver to *shred documents*, including company records and files owned by third parties. ECF No. 63 at 8. There is no limitation in place to meaningfully protect documents material to Mr. Barton's defense

in parallel criminal proceedings, and this issue will ultimately taint those proceedings. *See* ECF No. 47 at 10.

Moreover, the Receiver has full access to attorney-client privileged documents, over Mr. Barton's objections, purely by virtue of their location in the Defendant's home or office, both of which the Receiver now occupies. To be clear, many of these documents are covered by an attorney-client privilege held by Mr. Barton individually. Neither the Court's Receivership Order nor its subsequent orders set forth any protocols governing how the Receiver is to handle privileged materials now in its possession. Violation of one's attorney-client privilege, of course, amounts to irreparable harm. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) ("[A]n adverse party's review of privileged materials seriously injures the privilege holder."); *Whole Woman's Health v. Smith*, 896 F.3d 362, 378 (5th Cir. 2018) (Costa, J., dissenting) (noting that mandamus is appropriate when a district court errs in ordering discovery of privileged documents, as piercing that privilege causes irreparable harm); *United States v. Ritchey*, No. 1:21-CR-6-HSO-RPM, 2022 WL 3023551, at *7 (S.D. Miss. June 3, 2022) (explaining that inadequate filtering that creates a risk of opposing party review of privileged materials risks irreparable injury).

The Receivership also strips Mr. Barton of important assets and funds with which to defend himself. In doing so, "the wound could be deep: wrongful imprisonment." *United States v. Michelle's Lounge*, 126 F.3d 1006, 1008 (7th Cir. 1997) (affirming a district court order releasing civilly forfeited funds to a defendant in a parallel criminal proceeding).

**C.      Other parties face minimal, if any, injury from a stay, and the public interest lies in granting a stay**

"[H]arm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. But that does not mean that the SEC's

interest is synonymous with the public interest. Instead, the SEC cannot legitimately argue that it would be harmed by a stay.  Nor is a stay in the public interest.

A stay will not harm the SEC's interests. This is underscored by the fact that the SEC waited two years to seek a receivership, long after the substantive part of its investigation completed. *Compare* Order Directing Private Investigation (Barton Opp. to SEC Receivership Mot. App. [ECF No. 25] at 006) (October 8, 2020 notice of SEC investigation) *with* ECF No. 6 (motion filed on September 26, 2020). Failure to "request[] emergency relief" by the opposing party militates in favor of granting a stay, particularly because "maintenance of the status quo is an important consideration." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021); *see also* Wright & Miller 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) ("[U]nnecessary delay . . . may be viewed as inconsistent with a claim that plaintiff is suffering great injury or . . . that there is an urgent need for immediate relief [such] that a judgment would be rendered ineffective unless some restraint is imposed on defendant pending an adjudication on the merits.").  If the Receiver is allowed to continue toward total liquidation, Mr. Barton could strive for only pyrrhic victory on appeal. In the interest of preserving the status quo, the Court should implement a stay. *E.T.*, 19 F.4th at 770.

While the SEC might claim that a stay should be denied to promote its mission to prosecute securities fraud, such an argument is inapplicable here. The SEC remains in a position to pursue that mission in the absence of a receivership, having conducted a lengthy investigation and having sued Mr. Barton to recover a sum that is far less than the assets now encumbered by the receivership estate.  *See, supra,* pp. 7-8.  And Mr. Barton has even indicated his willingness to consent to a court-appointed monitor that would permit him to continue managing the numerous assets at issue while ensuring full transparency and court control over important financial decisions. Such a monitor would be able to consent to the sale and transparent conservation of assets that would substantially cover the alleged principal of the loans subject to the SEC charges, despite the

fact that the lenders have no direct legal recourse against those particular assets. *See* ECF No. 24 at 25-26.  Under such an arrangement, there is little risk that the SEC would be harmed.

A stay would promote the public interest as well, as the public interest is best served when the government complies with the law. *Cf. League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.").  It is also in the public interest to protect Mr. Barton's constitutional rights. *See Index Newspapers LLC v. US Marshals Svc.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). Mr. Barton's rights are in grave danger due to the speed at which the Receiver is barreling toward liquidation.  Mr. Barton has not even *answered* the SEC's complaint.  Nor has he been adjudged liable in this proceeding or guilty in the parallel criminal proceeding.  Nevertheless, his life's work is being held by a court-appointed agent who is content to liquidate rather than preserve and manage. The Court should not allow such result before Mr. Barton has a chance to vindicate his rights on appeal.

Finally, a stay serves the public interest by preserving judicial resources. "[T]he public interest supports staying district court proceedings to avoid potentially wasteful and unnecessary litigation costs where . . . the appellant has shown a substantial likelihood of success on appeal." *Earl v. Boeing Co.*, 21 F.4th 895, 900 (5th Cir. 2021). If a stay is not granted, the parties, and the Court, will continue in this litigation over the Receiver's continued conduct. When Mr. Barton prevails on appeal, all of that would be a waste of valuable resources.

### IV.    Conclusion

For the foregoing reasons, Defendant Timothy L. Barton respectfully requests that the Court stay the Order Appointing Receiver [ECF No. 29], the Order Granting the Receiver's Motion to Supplement Order Appointing Receiver [ECF No. 62], and the Order Granting Motion for Order Governing Administration of Receivership Estate, Etc. and Approving Disposition of Certain

Personal Property [ECF No. 63], while all three Orders are pending appeal to the Fifth Circuit. To the extent the Court does not stay all three Orders in their entirety, Defendant Barton respectfully requests a stay of the most oppressive and overreaching features of the receivership, including by staying these Orders to the extent they authorize the Receiver to (1) take control of any of the non-defendant entities identified in the Court's Order Granting the Receiver's Motion to Supplement Order Appointing Receiver [ECF No. 62]; (2) sell, destroy, or abandon any property or files; (3) infringe or waive any privilege rights of Defendant Timothy Barton; (4) manage the receivership estate without appropriate real estate professionals in place; and/or (5) maintain possession or attempt to dispose of Mr. Barton's personal residence and any personal property located there.

Dated: November 28, 2022                    Respectfully submitted,


                                            By: /s/ Michael J. Edney
                                            Michael J. Edney
                                            Virginia Bar No. 48253
                                            DC Bar No. 492024 (admitted to NDTX)
                                            medney@huntonak.com
                                            Sean B. O'Connell
                                            State Bar No. 24103142 (application for
                                            admission forthcoming)
                                            soconnell@huntonak.com
                                            Michael Dingman
                                            Virginia Bar No. 95762
                                            DC Bar No. 90001474 (admitted pro hac
                                            vice)
                                            mdingman@huntonak.com
                                            HUNTON ANDREWS KURTH LLP
                                            2200 Pennsylvania Avenue NW
                                            Washington, DC 20037
                                            Phone: (202) 955-1500
                                            Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On November 28, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

-21-