IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § § | **Response in Opposition to** |
| CARNEGIE DEVELOPMENT, LLC | § | **Supplemental Brief in Support of** |
| WALL007, LLC | § | **Motion to Supplement Order** |
| WALL009, LLC | § | **Appointing Receiver** |
| WALL010, LLC | § | *Hearing Requested* |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § | |
| | § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § § | |
| *Relief Defendants.* | § | |

**MAXIMILIEN BARTON AND RELATED ENTITIES' RESPONSE TO RECEIVER'S
SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SUPPLEMENT ORDER
APPOINTING RECEIVER [ECF NO. 73]**

Interested Parties Maximilien Barton; Gillespie Villas LLC, Venus59 LLC, TRTX

Properties LLC, MXBA LLC, and Titan Investments LLC (the "Max Barton Entities"); and TC

Hall, LLC, Titan 2022 Investment, LLC, Marine Creek SP, LLC, and LC Aledo TX, LLC (the

"Additional Entities") file this Response in Opposition to the Receiver's Supplemental Brief in

-1-

Support of Motion to Supplement Order Appointing Receiver, ECF No. 73 (the "Supplemental Motion"), and request a hearing on the motion.

## I.    INTRODUCTION

In response to the Court's order requiring the Receiver to justify its request to supplement the Court's original Order Appointing Receiver (the "Receivership Order"), *see* ECF No. 29, to add the Max Barton Entities, the Receiver has filed supplemental briefing addressing not only the Max Barton Entities but now also requesting to encumber even more businesses and entities owned not by Defendant Tim Barton, but by his son, Max Barton.

The Receiver's Supplemental Motion must be denied for at least two important reasons. First, the Court currently lacks jurisdiction to alter the Receivership Order because that order is on appeal. Second, the Receiver has failed to demonstrate that the Max Barton Entities and Additional Entities are in possession of funds or assets traceable to the alleged underlying fraud. The traceability requirement, however, is foundational to receiverships because the primary justification for receiverships is to protect someone else's interests. For that very reason, the traceability requirement is required by case law, embedded in the Receivership Order, and implicitly acknowledged by the Receiver's own briefing.

Additionally, Max Barton respectfully requests that he be permitted to recover his personal belongings. Those belongings have nothing at all to do with his father's case or the Receivership's ability to protect investors. Allowing Max Barton to recover his things is simply the right thing to do and will harm no one.

The Receiver has no basis to pursue Max Barton and his businesses simply because Max's father—Tim Barton—advised him in various capacities. It is no surprise that a father would help his son try his hand at running his own businesses and properties. That is what a dad

should do. It is no surprise that a young man just starting out would have questions, or need guidance. But none of that justifies placing Max Barton in the crosshairs for unproven allegations against his father.

The Book of Ezekiel teaches, "The son shall not suffer for the iniquity of the father." Whatever the government believes about the conduct of Tim Barton, that is not the conduct of Max Barton. And it cannot be that we live in a system where Max Barton must continually prove his innocence or lose his livelihood because of a case against his own father. If Max Barton's businesses are to be encumbered, if Max Barton is to lose his property, the Receiver must be put to his burden.

II.    **MOTION TO INTERVENE ON BEHALF OF TC HALL LLC, TITAN 2022 INVESTMENT LLC, MARINE CREEK SP LLC, AND LC ALEDO TX LLC**

Pursuant to Federal Rule of Civil Procedure 24(a), TC Hall LLC, Titan 2022 Investment LLC, Marine Creek SP LLC, and LC Aledo TX LLC (the "Additional Entities") seek to intervene in this proceeding. In this Circuit, the standard for intervention as a matter of right has been summarized as follows: (i) the application for intervention must be timely, (2) the applicant must have an interest relating to the property or transaction which is subject of the action, (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair the applicant's ability protect that interest absent intervention, and (4) the applicant's interest must be inadequately represented by existing parties to the suit. *Taylor Commc'ns Group, Inc. v. Sw. Bel Tel. Co.*, 172 F.3d 385, 387 (5th Cir. 1999).

The Additional Entities' motion for intervention complies with each of requisite elements to be entitled to intervention as a matter of right. The Additional Entities seek to intervene in this matter in accordance with the Court's instruction that "all interested non-parties are directed

to intervene to the extent they wish to participate in the proceedings." *See* ECF No. 61 at 2 n. 1. Plus, the Receiver identified the Additional Entities as proposed additional Receivership Entities in the Receiver's Supplemental Motion, ECF No. 73, meaning disposition of the Supplemental Motion will bear on the Additional Entities' interests and those interests are currently inadequately represented.

In the alternative, the Additional Entities should be granted permission to intervene pursuant to Federal Rule of Civil Procedure 24(b). Rule 24 (b) states in relevant part:

> Upon timely application anyone maybe permitted to intervene in an action…when an applicant's claim or defense and the main action have a question of law or fact in common…In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

FED. R. CIV. P. 24(b). The Additional Entities' motion for intervention also complies with the requirement set out in Rule 24(b). Specifically, the Additional Entities seek to intervene in this matter pursuant to the Court's instruction and do so within days of being identified in the Receiver's supplemental briefing. *See* ECF No. 61 at 2 n. 1; ECF No. 73.

Based on the foregoing, the Additional Entities seek to intervene in this proceeding as a matter of right pursuant to Rule 24(a) or, in the alternative, by permission of the Court under Rule 24(b).

### III.   ARGUMENT

**A.    The Court lacks jurisdiction to alter the Receivership Order while it is on appeal.**

On November 17, 2022, Defendant Tim Barton filed his Notice of Appeal (the "Appeal") in the above-numbered and styled cause. *See* ECF No. 66. Specifically, Barton appealed (i) the October 18, 2022 Order granting Plaintiff's Expedited Motion for Appointment of Receiver (the Receivership Order), ECF No. 29; (ii) the October 20, 2022 Order denying Barton's Emergency Motion to Amend/Correct the Court's Order Appointing Receiver, ECF No. 33, and (iii) the

-4-

November 16, 2022 Orders Granting the Receiver's Motion to Supplement Order Appointing Receiver, ECF No. 62, and Granting the Receiver's Motion for Order Governing Administration of Receivership Estate, ECF No. 63, (collectively, the "Appealed Orders").

"It is the general rule that a district court is divested of jurisdiction upon the filing of the notice of appeal with respect to any matters involved in that appeal." *Taylor v. Sterrett*, 640 F.2d 663, 667 (5th Cir. 1981). Pursuant to United States Supreme Court precedent, federal district and appellate courts ***should not*** exercise jurisdiction over a case at the same time. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Further, when an aspect of a case is the subject of an interlocutory appeal, "the district court is divested of jurisdiction over that aspect of the case." *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 820–21 (5th Cir. 1989). Accordingly, "a district court does not have the power to 'alter the status of the case as it rests before the Court of Appeals.'" *Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) (quoting *Coastal Corp.*, 869 F.2d at 817) (holding that district court acted without jurisdiction by granting plaintiffs' leave to amend its complaint after defendants appealed the district court's denial of their motions to dismiss for failure to state a claim).

The Receiver's request that the Court amend the Receivership Order by adding the Max Barton Entities and the Additional Entities implicates the core content of the Appealed Orders. The Receiver's Supplemental Motion, in other words, addresses matters now before the Fifth Circuit. Specifically, the Appealed Orders relate to: the appointment of the Receiver itself; the entities identified as Receivership Entities in both the Receivership Order, ECF No. 29, and the November 16, 2022 Order supplementing the Receivership Order, ECF No. 62; and the means by which the Receiver will manage the Receivership Estate, ECF No. 63. The Receiver, however, asks the Court to modify the Receivership Order and the November 16, 2022 Order

supplementing the Receivership Order by adding the Max Barton Entities and the Additional Entities to the Receivership Estate. But the propriety of the Appealed Orders, including those granting the Receiver authority to round-up entities in possession of funds traceable to investors, is in dispute and awaiting resolution by the Fifth Circuit. Thus, further supplementing or modifying any of the Appealed Orders, as requested by the Receiver, prior to resolution of the Appeal would alter the status of this case, undermine the record before the appellate court, and improperly undercut the Fifth Circuit's ability to efficiently resolve the legal challenges pending before them. *See, e.g., Dayton Indep. School Dist.*, 906 F.2d at 1063. Accordingly, the Court currently lacks jurisdiction to supplement, amend, or otherwise modify the Appealed Orders, and the Receiver's Supplemental Motion must be denied or held in abeyance.

Alternatively, if the Court finds it does have jurisdiction to modify the Receivership Order and the November 16, 2022 Order supplementing the Receivership Order, Max Barton respectfully requests that the Court hold any decision on the Supplemental Motion in abeyance until the Court has ruled on Tim Barton's Motion to Stay Pending Appeal. Tim Barton moved to stay several of the Court's orders related to the receivership, including the Receivership Order and the November 16, 2022 Order. *See* ECF No. 71. Accordingly, Max Barton requests that the Court refrain from modifying or otherwise altering these orders until after it has ruled on the Motion to Stay Pending Appeal. "A stay pending appeal 'simply suspends judicial alteration of the status quo.'" *Veasey v. Perry*, 769 S.W. 890, 892 (5th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 429 (2009) (internal quotation marks and alteration omitted)). The ability to hold an order in abeyance while it is reviewed on appeal provides an appellate court with the ability to act responsibly and to "bring considered judgment to bear on the matter before it." *Nken*, 556 U.S. at 427. Thus, even if the Court finds that it does have jurisdiction to amend or otherwise

alter the Receivership Order and the November 16, 2022 Order, Max Barton respectfully requests that this Court refrain from doing so, and maintain the status quo, until it can consider the issues raised in the Motion to Stay.

**B.      The Receiver must trace funds *before* encumbering the private property rights of non-party Max Barton.**

"[E]quity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012). When the SEC seeks receivership over corporate assets in "a suit for non-compliance with SEC regulations," that may be justified where the defendant's "corporate assets *are the underlying subject matter of the dispute.*" *Id.* (emphasis added).  Here, however, the Max Barton Entities and the Additional Entities are not named parties in this action and neither they nor their assets form the underlying subject matter of the suit—and that is true even if the Receiver believes the entities are controlled by Tim Barton and/or received funds traceable to fraud.  That is, the Max Barton Entities and Additional Entities have ***not*** been accused of wrongdoing.  They have been accused of being vehicles for Tim Barton's wrongdoing, and it is only through that lens—and only to the extent that allegation is true—that the Max Barton Entities and Additional Entities may be placed into receivership.

As noted in previous briefing, perhaps the best case for working through this framework and the competing rights and requirements it entails is *Securities and Exchange Commission v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018).  In *Faulkner*, Chris Faulkner and others were accused—as Tim Barton has been here—of a securities-fraud scheme that victimized investors and involved a host of entities.  *See, e.g.*, *Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2017 WL 4238705, at *1 (N.D. Tex. Sept. 25, 2017), *order clarified*, No. 3:16-CV-1735-D, 2020 WL 584614 (N.D. Tex. Feb. 6, 2020) ("Investors in

Faulkner's companies ultimately received only a small fraction of their investment principal. The SEC alleges that, in conducting this scheme, Faulkner and other defendants have violated § 17(a) of the Securities Act of 1933 . . . and § 10(b) of the Securities Exchange Act of 1934 . . . and SEC Rule 10b-5, promulgated thereunder."). From the outset in *Faulkner*, Judge Fitzwater applied a tailored approach, "appointing a temporary receiver over the oil and gas assets of Faulkner" and two of his companies and limiting receivership to entities "to which the unrebutted evidence indicate[d]" Faulkner may have transferred tainted funds. *Faulkner*, 2018 WL 4362729, at *1. Thus, Judge Fitzwater's order was not unlike this Court's Receivership Order—appropriately limited by traceability.

As here, the receiver later moved to expand the receivership. *Id.* at *2. Judge Fitzwater first denied inclusion of one entity on the basis that the record indicated the entity "ha[d] no assets to preserve for future disgorgement to investors." *Id.* a *3. The court reasoned that "a federal court may decline to place an entity in receivership where that entity has no assets, *even if the entity has been used to perpetrate fraud*." *Id.* (emphasis added) (citing *United States v. Scott*, 667 Fed. Appx. 702, 703 (10th Cir. 2016) (memorandum opinion); *Miller v. Up In Smoke, Inc.*, 2010 WL 5095812, at *9 (N.D. Ind. Dec. 8, 2010)). The court also noted that it might change its decision "[i]f the Receiver can later prove that [the entity] *is in possession of any assets traceable to . . . investors . . . .*" *Id.* at *4 (emphasis added).

Judge Fitzwater then considered whether to impose receivership over "certain non-party entities." *Id.* The court explained that it could "exercise its equitable powers over an entity that has *not* engaged in wrongdoing, but nonetheless '(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.'" *Id.* (emphasis in original) (quoting *Janvey v. Adams*, 588 F.3d 831, 835 n.2 (5th Cir. 2009)). Judge Fitzwater helpfully noted that,

"[o]rdinarily, such entities are named in the complaint as 'relief defendants,'" but that "[i]t is not always necessary . . . for an entity to be named as a party in order for the court to appoint a receiver over its assets." *Id.*

Finally, before engaging an entity-by-entity analysis, Judge Fitzwater recounted that his existing receivership decisions had been "necessary so that ill-gotten assets will not 'be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme.'" *Id.* at \*5. He then noted that he would "include in the receivership estate the assets of any non-party entity that is (i) controlled by Faulkner ***and*** (ii) in possession of funds traceable to . . . investors." *Id.* (emphasis added). A review of Judge Fitzwater's remaining analysis demonstrates his careful attention to both the issue of control ***and*** the issue of possession of funds or assets traceable to investors.

*Faulkner* is a clear presentation of the governing law applicable to this case. And unsurprisingly, the Court was careful in the present case to note in the Receivership Order that receivership was justified, in part, by the need to "preserv[e] the illicit proceeds of fraudulent conduct." Receivership Order, ECF No. 29, at 2. Of course, it is impossible to preserve illicit proceeds by placing into receivership an entity that does not have or did not benefit from such proceeds. Accordingly, the Court rightly limited receivership to "Barton-controlled entities that received investor funds, real property interests purchased with investor funds, or own property interests that were improved with or otherwise have benefited from the use of investor funds." *Id.* at 2–3. Thus, the Receivership Order itself is a reflection of controlling law, limiting receivership based on (1) control *and* (2) a connection to investor funds.

In the Supplemental Brief, the Receiver acknowledges that "[t]he factual basis for inclusion of the entities identified in the Receivership Order was Barton's misappropriation of

investor funds . . ." Supp. Mot., ECF No. 73, at 2.  Indeed, the Receiver repeatedly describes how the SEC's investigation, and the SEC's ultimate request for receivership, was driven by an attempt to identify entities to which funds connected to the underlying alleged fraud could be traced.  *See, e.g.*, *id.* ("The SEC relied on the Declaration of Carol Hahn . . . which provided evidence in support of the Motion to Appoint . . . about Barton's *practice of commingling investor funds* and transferring those funds for his own use to the Barton-controlled entities . . . ." (emphasis added)); *id.* at 2–3 ("[T]he SEC provided evidence demonstrating that Barton *used commingled investor funds* . . . ." (emphasis added)); *id.* at 3 ("[T]he SEC identified several properties that Barton had purchased *with investor funds* . . . ." (emphasis added)); *id.* ("Thus, the evidence submitted by the SEC demonstrated that Barton *used investor funds* to operate the entities identified in the Motion to Appoint, and potentially others . . . ." (emphasis added)).

In light of the governing law, the Court's Receivership Order, and the Receiver's own framing of the SEC's pursuit of receivership, it is simply unavoidable that, even if the Max Barton Entities and Additional Entities were controlled directly or indirectly by Tim Barton— something Max Barton does not concede—the Receiver ***must still*** meet his burden to demonstrate that those entities are in possession of funds traceable to the alleged fraud.  Put differently, traceability is a ***requirement*** for inclusion in the receivership estate, full stop.  *See Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *5 (requiring a non-defendant entity be "(i) controlled by [the defendant] ***and*** (ii) in possession of funds traceable to [the allegedly defrauded] investors" (emphasis added)).

The traceability requirement makes sense, because the primary justification for receivership in the first place is to preserve and protect assets that could later be disgorged for the benefit of harmed investors.  Indeed, the Receiver himself argues that "the SEC's authority to

obtain disgorgement" is "the underlying purpose of the receivership." Supp. Mot., ECF No. 73, at 14 n.11. It is difficult to see, then, how the Receiver could be entitled to take control of property and entities belonging to an innocent non-party without demonstrating that the properties and entities have something that could justifiably be disgorged—i.e., funds or assets traceable to the alleged fraud.

Yet, except as to two entities, the Receiver does not even attempt to satisfy the critical traceability element. To the contrary, the Receiver boldly argues that the Court should just ignore the requirement altogether because it is too early to address it: "Barton's control—rather than tracing investor funds (particularly at this very early stage)—demonstrates that the Court placed these entities in receivership when it entered the Receivership Order." *Id.* at 1. The Receiver, however, does not get to set legal requirements aside because it is too early or difficult to meet them. If it is too early to demonstrate that the Max Barton Entities and Additional Entities have assets or funds traceable to the alleged fraud (not just to Tim Barton, but to the alleged fraud), then it is too early to place those entities into receivership. *See, e.g.*, *Faulkner*, 2018 WL 4362729, at *4 (noting the court would be open to amending its decision "[i]f the Receiver can later prove that [the entity] *is in possession of any assets traceable to . . . investors . . . .*" (emphasis added)).

As to the two entities for which the Receiver does attempt to demonstrate tracing, the tracing leads to a single loan from Broadview Holdings, LLC, which Max Barton readily disclosed in his prior briefing. *See* Response in Opposition, ECF No. 53, at 6. As noted there, Gillespie Villas, LLC did receive a legitimate loan from Broadview Holdings, LLC. But again, neither the Receiver nor the SEC has claimed that this loan relates or is traceable to any alleged fraud. The Receiver appears to suggest that, because Tim Barton allegedly commingled assets

generally, it can be deduced that investor funds are implicated by any specific entity the Receiver alleges received funds from Tim Barton or one of his businesses. But suppositions and deductions are insufficient to demonstrate that Max Barton should be stripped of his right to work or his right to his property. And even assuming the loan funds *specifically* were traceable to fraud, the Receiver does not even begin to establish that Gillespie Villas had no legitimate claim to the funds. *See Faulkner*, 2018 WL 4362729, at *4 (noting the court could "exercise its equitable powers over an entity that has *not* engaged in wrongdoing, but nonetheless '(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds'" (emphasis in original) (quoting *Janvey v. Adams*, 588 F.3d 831, 835 n.2 (5th Cir. 2009))). Accordingly, even identifying the loan that Max Barton already disclosed is inadequate to demonstrate that Gillespie Villas LLC received funds or assets traceable to *fraud* to which it has no legitimate claim, let alone that TC Hall ended up with that money or the fruits of that money through a "series of bank transfers." Supp. Mot., ECF No. 73, at 17.

Neither Gillespie Villas nor TC Hall, therefore, fall within the scope of receivership under the Receivership Order, and the Receiver has failed to meet his burden to have those entities added to the Receivership Estate. Plus, as already represented, as part of Max Barton's ongoing good-faith efforts to remove any potential concerns about his businesses, Gillespie Villas, LLC is in the process of securing funds that would allow Gillespie Villas, LLC to accelerate repayment of the Broadview loan and sever all financial ties with that entity.

In sum, the Receiver has not proven traceability as to any of the Max Barton Entities or Additional Entities, and the Receiver's Supplemental Motion must be denied.

**C.      Max Barton respectfully requests the opportunity to reclaim his personal property.**

-12-

Currently, the Receiver possesses several items of personal property belonging to Max Barton that are completely unrelated to this receivership or the underlying litigation. *See* App. 5 ("Personal Property Inventory"). These items include Max Barton's clothing, books, housewares, and other unrelated personal items. *See id*. In total, the items have an estimated value of less than $13,000.00. *See id*. During Max Barton's initial conversations with the Receiver, the Receiver indicated Max Barton would be permitted to retrieve his personal items. *See M. Barton Dec.* ¶ 3–4. However, despite the Receiver's initial representations, to date, Max Barton has not be afforded the opportunity to collect the personal property detailed in the Personal Property Inventory. *See, e.g.*, *id.* ¶ 7.

The need for court intervention regarding this issue is apparent, if unfortunate. The Receiver is actively working to sell-off assets in the Receivership Estate, despite being appointed for less than 60 days and despite admitting that he has neither "obtained all relevant records" nor "had an adequate opportunity for he or his accountant to review all records." *See* Supp. Mot., ECF No. 73, at 18. Further, the items identified in the Personal Property Inventory are still located on the premises of entities under the Receiver's control. *See* Personal Property Inventory. These items belong to Max Barton, personally, and have little to no commercial value. As such, these items would do little to provide restitution to alleged victims, and at any rate, it is totally unclear why Max Barton would be personally responsible for making his father's investors whole.

The Receiver has indicated that he believes there may be insufficient assets in the Receivership Estate to repay victims of the alleged fraud. *See* Supp. Mot., ECF No., 73 ("[F]acts that complicate the potential recovery of any net equity in the assets owned by the Receivership Entities, including properties owned by the Disputed and Additional Entities, could result in a far

lower recovery than the $26M necessary to repay the investors."). It is clear that conducting a fire sale of the assets within the Receivership Estate, including Max Barton's unrelated personal property, does little to benefit any potentially harmed investors. And pulling Max Barton's unrelated personal effects into this ordeal is not only petty, it is unjust. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (noting that "equity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute").

Thus, Max Barton respectfully requests that the Court order the Receiver to afford Max Barton the opportunity to retrieve his unrelated personal property before any asset sales, such as the property detailed in the Personal Property Inventory.

## IV.    CONCLUSION

For the foregoing reasons, Max Barton, the Max Barton Entities, and the Additional Entities respectfully request that the Court deny the Receiver's Motion to Supplement Order Appointing Receiver, ECF No. 41, and the Supplemental Motion, ECF No. 73, with respect to the Max Barton Entities and the Additional Entities.

Dated: December 7, 2022

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Nathan Baum*
**Nathan Baum**
Texas State Bar No. 24082665
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Nathan.baum@nortonrosefulbright.com
Phone: 214-855-7487
Fax: 214-855-8200

**Samuel Ramer**
*Pro Hac to Be Sought*
799 9th Street NW, Suite 1000
Washington, DC 20001-4501
samuel.ramer@nortonrosefulbright.com

Phone: 202-662-0214
Fax: 202-662-4643

**Chris Cooke**
Texas State Bar No. 24129241
111 W. Houston Street, Suite 1800
San Antonio, TX 78205
christopher.cooke@nortonrosefulbright.com
Phone: 210-270-7175
Fax: 210-270-7205

**Barbara Light**
Texas State Bar No. 24109472
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Barbara.light@nortonrosefulbright.com
(713) 651-5151 – Tel
(713) 651-5246 – Fax

**COUNSEL FOR MAXIMILIEN BARTON,
GILLESPIE VILLAS LLC, VENUS59 LLC,
TRTX PROPERTIES LLC, MXBA LLC,
TITAN INVESTMENTS LLC, TC Hall, LLC,
Titan 2022 Investment, LLC, Marine
Creek SP, LLC, and LC Aledo TX, LLC**

## CERTIFICATE OF SERVICE

On December 7, 2022 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Nathan Baum*
Nathan Baum