UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>v.<br><br>TIMOTHY BARTON,<br>CARNEGIE DEVELOPMENT, LLC,<br>WALL007, LLC,<br>WALL009, LLC,<br>WALL010, LLC,<br>WALL011, LLC,<br>WALL012, LLC,<br>WALL016, LLC,<br>WALL017, LLC,<br>WALL018, LLC,<br>WALL019, LLC,<br>HAOQIANG FU (A/K/A MICHAEL FU),<br>STEPHEN T. WALL,<br><br>               Defendants,<br><br>DJD LAND PARTNERS, LLC, and<br>LDG001, LLC,<br><br>               Relief Defendants. | C.A. No.: 3:22-cv-2118-X<br><br><br>Jury Trial Demanded |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO
BARTON'S MOTION FOR STAY PENDING APPEAL AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iii

I.    INTRODUCTION ............................................................................................1

II.   BACKGROUND ...............................................................................................2

III.  ARGUMENT.....................................................................................................3

      A.  Barton Has Not Shown a Likelihood of Success on The Merits ...............................4

          1.  The Court has equitable authority to enter the Receivership Order.............4

          2.  The scope of the receivership is appropriate................................................6

      B.  Barton Has Not Demonstrated Irreparable Injury.........................................................8

      C.  A Stay Would Be Contrary to The Public Interest .......................................................9

## TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*FDIC v. Faulkner*,
  991 F.2d 262 (5th Cir. 1993) ................................................................................. 8

*Janvey v. Adams*,
  588 F.3d 831 (5th Cir. 2009) ............................................................................... 7

*Netsphere, Inc. v. Baron*,
  703 F.3d 296 (5th Cir. 2012) ........................................................................... 5, 6

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................... 3, 4, 9, 10

*SEC v. Faulkner, No. 3:16-CV-1735-D*,
  2018 WL 4362729 (N.D. Tex. Sept. 12, 2018) ..................................................... 7

*SEC v. First Financial Group of Texas*,
  645 F.2d 429 (5th Cir. 1981) ............................................................................... 4

*SEC v. Harris, No. 3:09-CV-1809-B*,
  2010 WL 11617972 (N.D. Tex. June 24, 2010) ............................................. 4-5, 5

*SEC v. Private Equity Mgmt. Group, Inc.,* No. CV 09-2901 PSG
  2009 WL 1941400 (C.D. Cal. July 2, 2009) ......................................................... 7

*SEC v. Unifund SAL*,
  910 F.2d 1028 (2d. Cir. 1990) ............................................................................. 5

The Securities and Exchange Commission ("SEC") submits this Response to Defendant Timothy L. Barton's ("Barton") Motion for Stay Pending Appeal ("Motion for Stay"), and respectfully shows the Court as follows:

## I.    INTRODUCTION

Barton raised approximately $26 million through fraudulent securities offerings related to purported real-estate investments in Texas, and then misappropriated nearly all of the investor funds. Using a web of special purpose entities he controls, Barton misused a significant portion of the investor funds to purchase, improve, or otherwise benefit real property interests held by his various entities.

The SEC moved the Court to appoint a receiver over the Barton-controlled entities to value those property interests (and any other assets) and to secure, preserve, and potentially monetize that value for the benefit of defrauded investors. The SEC submitted extensive evidence in support of its motion that established a prima facie case of Barton's fraud and his violations of the federal securities laws.

The Court provided Barton a full opportunity to respond to the SEC's motion. Barton filed a response that included multiple arguments against the requested receivership. Barton submitted no evidence – and to this day has submitted no evidence – countering any of the SEC's evidence of Barton's fraud.

Thereafter, finding the appointment of a receiver necessary and appropriate based on the record before it, the Court granted the SEC's motion and entered an order appointing the receiver. Barton now moves the Court to stay the receivership pending appeal of the receivership order.

1

The Court should deny this request.  Barton has failed to show that he is likely to succeed on appeal.  Long-standing Fifth Circuit precedent establishes this Court's equitable authority to enter the receivership order.  Barton's arguments, which largely restate arguments he made in response to the SEC's motion for a receiver, do not demonstrate that the Court abused its discretion by exercising that authority.

Further, Barton will not suffer irreparable injury if the receivership is maintained during the appeal, while staying the receivership would be contrary to the public interest.  The receivership does not include Barton personally, and he will suffer no personal, much less irreparable, injury if it continues.  Meanwhile, the receivership, as demonstrated in the receiver's recent filings, is in financial distress and at risk of losing substantial value for defrauded investors if it cannot act quickly to create liquidity and preserve the receivership's remaining property interests.

## II.    BACKGROUND

On September 23, 2022, the SEC instituted this enforcement action, alleging that Barton violated the antifraud provisions of the federal securities laws and seeking injunctive and monetary relief.  (Doc. 1)

On September 26, 2022, the SEC filed an expedited motion for appointment of a receiver ("Motion for Receiver") to marshal and preserve the assets owned, controlled, or possessed by the entities that Barton directly or indirectly controls.  (Doc. 6)  In support of its motion, the SEC submitted extensive evidence that Barton committed securities fraud and commingled and misused investor funds through his web of controlled entities.  (Doc. 7)

The Court did not rule on the Motion for Receiver on an expedited schedule, and instead provided Barton the full 21 days to respond pursuant to Local Civil Rule 7.1(e).  On October 17,

2022, Barton filed his Response to the Motion for Receiver. (Doc. 24) Barton submitted no evidence to controvert the SEC's evidence of Barton's fraud.[1]

On October 18, 2022, the Court, finding that "based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the [r]eceivership," granted the Motion for Receiver, and entered the order appointing the Receiver ("Receivership Order"). (Doc. 29). On November 17, 2022, Barton appealed that order.[2] (Doc. 66)

The same day, the Receiver filed its Initial Status Report, which, among other things, reported on Barton's refusal to provide financial and other information to the Receiver (Receiver's Initial Status Report at 9-10), the receivership entities' lack of liquidity and dire financial straits (*Id.* at 13-14), and the uncertainty as to whether there are meaningful recoverable assets, much less sufficient assets to make investors whole. *Id.* at 14-27. (Doc. 67)

### III.    ARGUMENT

Courts consider four factors when evaluating a request for a stay pending appeal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). The final two prongs of this equitable inquiry generally "merge when the Government is the opposing party." *Id.* at 435.

Further, "[a] stay is not a matter of right, even if irreparable injury might otherwise result.

---

[1] The only evidence Barton submitted in response to the SEC's motion was a copy of the SEC's formal order of investigation in this matter and a copy of a letter about the status of the development of a property owned by a Barton controlled entity. (Doc. 25)

[2] The Notice of Appeal also purports to appeal several of the Court's subsequent orders relating to motions the Receiver filed after his appointment, including the order governing the administration of the receivership estate. The Receiver's response to the Motion to Stay will addresses the subsequent orders.

It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 433 (internal citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-434.

### A. Barton Has Not Shown a Likelihood of Success on The Merits.

#### 1. The Court has equitable authority to enter the Receivership Order.

Barton first argues that the SEC improperly sought a receiver based on case law that applies to actions for injunctive relief, because the SEC has not sought a preliminary injunction.[3] Motion for Stay at 5-6. This argument is misplaced.

This is an SEC enforcement action seeking, among other things, *injunctive* relief. Complaint at 3 & 27-28. The Fifth Circuit's decision in *SEC v. First Financial Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981), and the other cases the SEC cited in support of its Motion for Receiver, establish that the appointment of a receiver is a well-established form of ancillary relief in SEC enforcement actions for injunctive relief. *See* Motion for Receiver at 12. None of those cases holds that preliminary injunctive relief is a prerequisite to appointment of a receiver. The fact that the SEC is seeking a permanent injunction and has not at this time sought a temporary restraining order or preliminary injunction, does not alter this Court's equitable authority to order a receivership.

Indeed, the purpose of such ancillary relief is to protect assets for the benefit of injured investors in the event the SEC ultimately secures a judgment for disgorgement. *SEC v. Harris,* No. 3:09-CV-1809-B, 2010 WL 11617972, at *3 (N.D. Tex. June 24, 2010). In addition, the

---

[3] Barton's Motion for Stay misquotes the SEC's Motion for Receiver by claiming the motion states the appointment of the receiver is "an ancillary *to preliminary injunctive relief.*" Motion for Stay at 5 (purportedly quoting to the SEC's motion with *emphasis added*). The actual quote is "the appointment of a receiver is a well-established form of ancillary relief in SEC enforcement actions." Motion for Receiver at 12.

burden for ancillary relief is lower than the burden to obtain a preliminary injunction, and courts may grant ancillary remedies, such as a receivership, even where the elements to support a traditional injunction have not been satisfied. *Harris,* 2010 WL 11617972, at *3; *Unifund SAL,* 910 F.2d 1028, 1041 (2d. Cir. 1990). Thus, Barton's suggestion that a preliminary injunction is a prerequisite for a receivership is unfounded.

Perhaps recognizing as much, Barton does not claim that the lack of preliminary injunction precludes this Court from ordering a receivership. Rather, he argues the SEC's Motion for Receiver should have cited to the Fifth Circuit's decision in *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) instead of its decision in *First Financial Group of Texas*. This argument does not support Barton's request for a stay.

*Netsphere,* which involved a private litigant seeking a receivership "to control a vexatious litigant" over assets that were not at issue in the litigation, expressly acknowledges the separate line of receivership cases involving securities fraud. *Netsphere,* 703 F.3d at 305. The Fifth Circuit concluded: "[t]hus, in cases of non-compliance with SEC regulations, a receiver may be appointed to prevent the corporation from dissipating corporate assets and to pay defrauded investors." *Id.* at 306. The Fifth Circuit further recognized that in securities fraud cases, like this one and unlike the case at issue in *Netsphere*, the corporate assets are the underlying subject of the dispute. *Id.* at 306.

In any event, Barton cited *Netsphere* in his response to the Motion for Receiver and argued that the SEC had not satisfied its standards. *See e.g.* Response to Motion for Receiver at 8-10. That authority and argument was therefore before this Court when it entered the receivership order. Notably, even if *Netsphere* is applied the way Barton requested, the extensive and unrefuted evidence the SEC submitted in support of its Motion for Receiver would

support this Court determining that there is a clear necessity for a receivership "to protect a party's interest in property," and that "legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." 703 F.3d at 305. Simply put, the SEC's evidence demonstrates that Barton committed fraud, he engaged in extensive commingling and misuse of investor funds, and a receiver is necessary to preserve the assets of his fraudulent enterprise to protect investors. Barton has not demonstrated that this Court abused its discretion in ordering the receivership under *Netsphere* or any of the other cases cited by either party.

Barton also repeats arguments about the timing of the receivership and its purported impact on his parallel criminal proceedings that he raised in his Response to the Motion for Receivership. *See* Response to Motion for Receiver at 19-25. Barton's Motion for Stay provides no additional support for those arguments, much less a basis for concluding that the Court abused its discretion in entering the receivership order after considering, and rejecting, them the first time.[4]

**2. The scope of the receivership is appropriate.**

Barton's arguments that the receivership order expands the receivership beyond its permissible bounds are also unlikely to succeed. Motion to Stay at 8-9 & 14. The receivership here, unlike the receivership in *Netsphere,* is not directed at non-party assets or assets unrelated to the underlying dispute. 703 F.3d at 304-306. As the uncontroverted evidentiary record demonstrates, the receivership was put in place to secure the assets of the intricate web of special

---

[4] Barton also claims the receivership order is improperly punitive in nature, because the order's preamble addressing its exemption from the automatic bankruptcy stay states that the order is in the public interest by, among other things, penalizing past unlawful conduct. Motion for Stay at 13. This reference in the order does not, as Barton claims, support the extraordinary leap to a finding that the receivership was invoked for *only* putative and not remedial effect. To the contrary, the central and stated purpose of this receivership is to preserve assets to remediate harm to investors. (Doc. 29)

purpose entities the defendant wrongdoer controls, and that he has used to commingle and misuse investor funds and hold assets necessary to remediate injured investors if the SEC secures a judgment. *See, e.g.,* App. in Support of Motion for Receiver at 7, 14-18 & 23-24 (Doc 7-1) (demonstrating that Barton controls multiple entities and has engaged in extensive commingling between and among his various entities.)

Further, Barton's reliance on *Janvey v. Adams*, 588 F.3d 831 (5th Cir. 2009), and *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018), is misplaced. *Adams* addressed the different issue of when a receiver could bring claims against independent third-party investors who were not accused of wrongdoing as a relief defendants. 588 F.3d at 834. *Adams* did not address the scope of the receivership, much less preclude this Court from including entities controlled by a defendant wrongdoer within the scope of the receivership to preserve the status quo and protect assets. *Id.*

In *Faulkner,* the district court exercised its "'broad discretion' to fashion an appropriate remedy" and expanded the receivership to include several parties not named as defendants that the defendant controlled and that had intermingled their assets with other entities the defendant controlled. *Faulkner*, 2018 WL 4362729, at *2-5. Far from suggesting this receivership is overbroad, the *Faulkner* case illustrates that district courts have broad discretion to fashion the scope of the receivership on a case-by-case basis to safeguard assets, which is exactly what the Court did here. *See, e.g., Private Equity Mgmt. Group, Inc.*, No. CV 09-2901 PSG (EX), 2009 WL 1941400, at *1 (C.D. Cal. July, 2, 2009) (including non-defendant entities in the receivership where the persons who controlled the entities and had the power to transfer funds overlapped with entity defendants already in the receivership).

Finally, Barton's scope arguments, even if successful, are not a basis to end the

receivership, and would at most merely limit the receivership to those Barton-controlled entities shown to have received or benefited from investor funds or otherwise participated in the scheme. In support of its Motion for Receiver, the SEC submitted evidence identifying 17 entities – in addition to the named entity defendants and relief defendants – that received or benefited from investor funds or otherwise participated in the scheme, which Barton has not contested.  *See* App. in Support of Motion for Receiver at 15 & 18.  Following its appointment, the Receiver uncovered and provided evidence that Barton has used many additional entities to spend, hide, and improperly use investor funds.  *See, e.g.,* Receiver's Supp. Brief at 10-11, 17-19 & App. in Support at 10.  (Docs. 73 & 74-1)  To the extent the Receiver has not yet been able to make a final determination that all of the Barton-controlled entities fall into this category, it is a result of Barton's heavy commingling of funds between entities, and his refusal to provide information to the Receiver.  *Id.* at 11, 17-20 & App. in Support at 10-16; *see also, FDIC v. Faulkner*, 991 F.2d 262, 267-68 (5th Cir. 1993) (holding district court did not abuse its discretion in freezing all assets pending a determination of which assets were traceable to the fraud).

## B.  Barton Has Not Demonstrated Irreparable Injury.

Barton has not demonstrated that *he* will suffer irreparable injury if the receivership continues.  The receivership does not include Barton's personal assets, and Barton has continued to fund a multi-firm team of attorneys to defend him in this action.

Moreover, the irreparable injury Barton purports to identify in his Motion for Stay does not arise from the order appointing the Receiver, but instead is injury that may arise if the Receiver seeks to sell parcels of real property that Barton would rather not sell.   The mere fact that the Receiver may take different steps than Barton would to operate the business entities he previously and fraudulently managed to preserve the value of the receivership assets does not

constitute irreparable injury.[5]  That is particularly the case where, as here, the Receiver's actions are being conducted under the Court's supervision, and the receivership administration procedures provide Barton a full and fair opportunity to object to actions taken by the Receiver.

Last, even if the future sale of properties might result in some irreparable injury to Barton, a stay is not warranted based on the other *Nken* factors, including the public interest in preventing substantial harm to investors as discussed below.  *See Nken,* 556 U.S. at 433.

### C. A Stay Would Be Contrary to The Public Interest.

The final two prongs of the equitable factors generally "merge when the Government is the opposing party," *Nken,* 556 U.S. at 435, and here a stay would be contrary to the public interest.  As the Receiver's recent filings demonstrate, the receivership entities are on life support.  They have little or no cash – it was all transferred out in the lead up to the Receiver's appointment – and the Receiver is struggling to keep the lights on:

> [V]ery limited funds were found in the Receivership Entities bank accounts…absent sale of Receivership Assets, these funds alone will not be sufficient to continue operating the Receivership, even before payment of the Receiver and his team's fees….
>
> Had the Receivership Entities' bank accounts not been drained, the same level of exigency might not exist; however, the dire financial situation is one of Barton and the Receivership Entity's own making….
>
> Within days of the Receiver's appointment, [the Receiver] learned, among other things, that insurance on the [Amerigold Suites] property was on the verge of cancellation, that electricity was on the verge of being shut off to the property, and that significant water bills were owed. The Receiver has been forced to expend scarce Receivership resources to preserve this asset and ensure that operations continue.

Receiver's Initial Status Report at 13-14 & 22. (Doc 67)

---

[5] Barton raises the Receiver's efforts to sell the residential property on Rock Creek Drive as evidence of irreparable injury.  Motion for Stay at 15-16. (Doc 71)  However, it is undisputed that the Rock Creek Drive property is an entity asset – not his personal asset – and that it was being prepared to list for sale before the Receiver was even appointed.  *See* Receiver's Motion for Supp. Order at 3, ¶ 6 & App. at 2-3, ¶ 6.  (Docs. 41 & 42)

Further, the properties in the receivership are heavily encumbered, and the lenders are aggressively asserting their liens and, in some cases, conversion-to-equity claims. *See id.* at 14-25 (discussing significant encumbrances and claims against receivership properties). These issues are compounded by a downward trending real estate market that is expected to negatively impact the properties' future values. *Id.* at 14-15.

Thus, if the Receiver is stayed and cannot act quickly, there is the severe risk (if not certainty) that substantial asset value will be lost. *See Id.* at 14-15 ("Given the uncertainty of the current economic environment and interest rates moving forward, the overwhelming majority of industry participants with whom the Receiver has spoken have advised that attempting to sell assets in the near future will likely result in greater values than waiting three or six months to begin a sales process."). This would jeopardize any recovery for investors and serve to compound the enormous harm to those who have already been victimized by this fraud.

Nonetheless, Barton ignores this factual reality and falsely asserts that "all parties acknowledge that there are more than enough assets in corporations associated with the defendant to cover any alleged liability associated with the loan agreements at issue in this case." Motion for Stay at 1. There is not such acknowledgment. To the contrary, there is the very real uncertainty as to whether there will be a meaningful amount of recoverable assets, much less sufficient assets to make investors whole:

> As stated in my Initial Report, most properties owned by Receivership Entities, including some owned by the Disputed or Additional Entities, are highly leveraged. The equity, and indeed ownership interest held by the Receivership Entities and the Disputed and Additional Entities is in many instances questionable….
>
> Based on liens, ownership disputes, and other facts that complicate the potential recovery of any net equity in the assets owned by the Receivership Entities, including properties owned by the Disputed and Additional Entities, if third-parties are successful in defeating Receivership Entity's ownership or contractual

10

rights, as discussed in my Initial Report, far less than the $26M necessary to repay the investors will be recovered.

App. in Support of Receiver's Supp. Brief at 17-18. (Doc 73)

Finally, Barton's claim that a stay will not harm the public interest, because the SEC waited until completing its investigation to seek a receivership, misses the mark. Barton's fraud has now been exposed and the house of cards he built with his web of special purpose entities is toppling.

For the foregoing reasons, the SEC respectfully requests that the Court deny Barton's Motion for Stay Pending Appeal, and grant the SEC such other or further relief as this Court may deem just, proper, and equitable.

Dated: December 9, 2022                           Respectfully submitted,

                                                  /s/ Keefe M. Bernstein
                                                  Keefe M. Bernstein
                                                  Texas Bar No. 24006839
                                                  David B. Reece
                                                  Texas Bar No. 24002810
                                                  James E. Etri
                                                  Texas Bar No. 24002061
                                                  Securities and Exchange Commission
                                                  801 Cherry Street, Suite 1900
                                                  Fort Worth, Texas 76102
                                                  (817) 900-2607 (KMB phone)
                                                  (817) 978-4927 (facsimile)
                                                  bernsteink@sec.gov
                                                  Counsel for Plaintiff
                                                  Securities and Exchange Commission

11

## **CERTIFICATE OF SERVICE**

I affirm that on December 9, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Keefe M. Bernstein*
Keefe M. Bernstein