**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | §<br>§<br>§ | |
| *Plaintiff*, | §<br>§ | |
| v. | §<br>§ | **C.A. No. 3:22-cv-2118-X** |
| TIMOTHY BARTON, et al. | §<br>§ | |
| *Defendants*. | § | |

**APPENDIX IN SUPPORT OF RECEIVER'S RESPONSE
TO MOTION TO STAY PENDING APPEAL**

Respectfully submitted,

By: */s/ Charlene C. Koonce*
　　Charlene C. Koonce
　　　State Bar No. 11672850
　　　charlene@brownfoxlaw.com
　　BROWN FOX PLLC
　　8111 Preston Road, Suite 300
　　Dallas, Texas 75225
　　T: (214) 327-5000
　　F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

1

| EXHIBIT | DESCRIPTION | APP PAGES |
|---------|-------------|-----------|
| A | Declaration of Receiver Cortney C. Thomas in Support of Receiver's Response to Motion to Stay Pending Appeal | APP000001-14 |
| A-1 | JMJ Holdings 2019 Balance Sheet | APP000015-16 |
| A-2 | Letter from counsel for Tim Barton to Receiver Cort C. Thomas, dated November 1, 2022 | APP000017-20 |
| A-3 | Letter from counsel for Tim Barton to my attorney, Charlene Koonce, dated November 1, 2022 | APP000021-23 |
| A-4 | Email from my attorney, Charlene Koonce, to counsel for Tim Barton, Michael Edney, dated November 7, 2022 | APP000024-26 |
| A-5 | Email from my attorney, Charlene Koonce, to counsel for Tim Barton, Michael Edney, dated November 11, 2022 | APP000027-30 |
| A-6 | Email from my attorney, Charlene Koonce, to counsel for Tim Barton, Ted Huffman, Richard Roper, et al. dated November 29, 2022 | APP000031-34 |
| A-7 | Email from my attorney, Charlene Koonce, to counsel for Tim Barton, Michael Edney dated December 5, 2022 | APP000035-39 |
| A-8 | Agreed Rescission of Special Warranty Deed, recorded on September 1, 2021 | APP000040-49 |

# EXHIBIT A

APP000001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, *et al*. | § § § | |
| *Defendants*. | § | |

DECLARATION OF CORTNEY C. THOMAS
IN SUPPORT OF RECEIVER'S RESPONSE TO
MOTION TO STAY PENDING APPEAL

1.      My name is Cortney C. Thomas.  I have personal knowledge of the matters set forth in this Declaration, I am of sound mind, and I am otherwise competent to testify to these matters.

2.      I am an attorney licensed to practice law in the State of Texas.  On October 18, 2022, I was appointed Receiver in the above-styled case and ordered to take exclusive possession and control over all assets belonging to or under the control of the Receivership Entities.  *See* Order Appointing Receiver (the "Receivership Order") ¶1.

3.      The requested stay of the Receivership is not feasible, nor do I believe it is in any of the interested parties' interest.  Many of the Receivership Entities' already have continuing, urgent operational requirements that have been greatly exacerbated by the dearth of cash available to the Receivership Estate to date.

4.      For example, Receivership Entity Goldmark Hospitality, LLC is the record owner of an extended-stay hotel located at 13636 Goldmark Dr. in Dallas, Texas (the "Amerigold Suites").  In the months prior to the institution of the Receivership, the Amerigold Suites appears to have had negative cashflow, at least in part, because of a large number of vacant units, the

1

generally poor condition of some of the units, and the general mismanagement by Barton and his son Maximilian Barton ("Max").

5. Within days of my appointment, I learned that insurance on the property was on the verge of cancellation for non-payment, shut off notices for the electricity had been received, significant water bills were owed, and at least one vendor was owed over $16,000 for months of unpaid invoices related to HVAC maintenance and repairs.

6. A full-time property manager and maintenance person are necessary employees, as is a contracted security officer (though to date I have been unable to afford to hire a security service for the Amerigold Suites, and the prior security service had been terminated prior to entrance of the Receivership Order).

7. The stay of collection or foreclosure efforts by creditors in the Receivership Order has allowed me to pause payment on the mortgage, thereby freeing up sufficient funds to pay the past due electric bills and bring the account current, preventing cancellation. However, such a stay cannot continue forever, and interest on the loan continues to accrue daily.

8. I have also been able to secure new, albeit expensive, insurance for the property and negotiate with the Dallas City Attorney's Office to prevent termination of water service. Oversight and management is required to ensure continued habitability for this occupied property, as well as to attempt increasing its occupancy to generate additional value for the Receivership Estate.

9. A second example of why a stay is impractical is Receivership Entity D4OP, LLC, which owns an Alabama apartment complex that is still under construction and is financed in part by a HUD loan. HUD's involvement requires extensive regulatory approval and cost certification, absent which, the project could face default and significant penalties. I, or someone else in my

APP000003

stead, must provide continued oversight to ensure this project does not lapse so that its value can be captured.

10.    Moreover, all of the Properties identified in my Initial Status Report have extensive debt and property tax obligations that will continue to accrue during the pendency of any stay. Even if the Court were willing to continue the stay on lenders' ability to foreclose on these loans indefinitely pending Barton's appeal, interest, taxes, and expenses will only continue to grow, and I must have a source of revenue to pay necessary expenses. Because Defendant Barton drained or otherwise appropriated all but approximately $75,000 of available cash away from the Receivership Entities' bank accounts, I have limited resources other than the liquidation of properties and contractual interests.

11.    While Barton asserts in his Motion to Stay that "all parties acknowledge that there are more than enough assets in corporations associated with the defendant to cover any alleged liability associated with the loan agreements at issue in this case," I strongly disagree with this assertion. In support of his position, Barton attaches an unauthenticated Letter of Intent ("LOI") to purchase three Texas apartment complexes—in DeSoto, Forney, and Corpus Christi—for $107 million. Dkt. 72, pp. 4-9. Although I agrees that selling these properties will be essential to *potentially* recovering sufficient funds to satisfy just the investor claims, what is once again notably absent from the LOI and Barton's discussion of the same is any reference to Pillar Asset Management ("Pillar"). As outlined in my Initial Status Report, Pillar contends it provided a second loan to the Receivership Entities in connection with the development of each of the three Texas properties. As best I can tell with the documents provided to date, it appears that the total principal amount is $17.7 million. While I am still working to determine the current balance on the Pillar loans, Pillar asserts it exercised certain purported contractual rights to convert its loan

3

rights in two of the Texas apartment complexes into an equity interest *such that the Receivership Entities purportedly no longer hold **any** ownership position in these properties*. While I intend to oppose any attempt by Pillar to enforce any conversion rights, if Pillar is ultimately successful, these properties will result in a recovery of $0 to the Receivership Estate. *Id.*

12.    Even if I succeed in my efforts to treat Pillar's loans as loans, I still anticipate the net proceeds of any sale to amount to less than the $26 million that the SEC claims has been misappropriated.[1]  If the LOI obtained by Barton were ultimately executed, after accounting for total HUD debt (approximately $78.7 million), Pillar debt (approximately $17.7 million), and the LOI's 1% broker's commission (approximately $1.1 million), I estimate that the net benefit to the Receivership Estate would be approximately $9.9 million before closing costs and other expenses. This net benefit would only be realized after assumption of the HUD loans that are currently in place, a process that is likely to take four to six months or more.  Moreover, the LOI provided by Barton says nothing of the Pillar contingency, the need for Court approval, or the process mandated by 28 U.S.C. § 2001, and it gives CEI broad assignment powers.

13.    As noted in my Initial Report, substantial disputes exist regarding the value and ownership of other Receivership properties in addition to the three apartments discussed above, with every property identified to date being encumbered by substantial loans and often other competing liens and claims.  The limited amount of cash available to me to manage these properties—which have substantial worth but often equally substantial debt—only exacerbates the issue.  Extensive efforts to identify all Receivership Entity bank accounts have resulted in recovery of less than $75,000 in cash to date, despite the fact that I am aware of several million dollars in

---

[1] The SEC claims that at least $26 million flowed into the Wall Entities from investors. *Complaint* ¶ 1.  That loss does not account for the many, many millions of dollars owed to judgement creditors, and creditors or claimants whose lawsuits are currently stayed by paragraph 34 of the Receivership Order is in place.

receipts flowing into the Receivership Entities during the last twelve months alone. Numerous and urgent bills, many long past due upon my appointment, compete for these extremely limited assets. For instance, at the time of appointment several properties, including the Amerigold Suites, had received shut off notices from energy providers and trash collection services. Notices of cancellation for property insurance on several properties were in the Receivership Entities' offices when I entered to take possession and control. The dearth of liquid assets has presented and continues to present immense challenges in performing one of my most fundamental duties, securing and maintaining assets.[2] In short, absent an influx of cash *from the sale of something(s)*, the value of certain properties owned by the Receivership Entities are in jeopardy.

14.    Barton's Motion to Stay focusses particularly on my attempts to sell 4107 Rock Creek (the "Rock Creek Residence"). Although Barton professes harassment, the specter of irreparable harm, and an unnecessary liquidation spree based my sale of the Rock Creek Property, I hold no such sentiments and instead am seeking to best fulfill the mandates of the Receivership Order. Barton's position ignores that facts that (1) Barton himself had signed a listing agreement with a realtor to sell the property within the weeks prior to the commencement of the Receivership; (2) the sales price exceeds the average value of the three independent appraisals I obtained on the property, far exceeding the two-thirds threshold; (3) the property is owned by a Receivership Entity and not Barton personally; (4) I received notice from a person known to Barton that Barton was moving valuable art and contents out of the house *after* the Receivership Order was entered; (5) the diminishing equity in the property due to the accruing but unpaid mortgage and property taxes,

---

[2] In discovering, acknowledging, and reporting these difficulties I in no way agree with Barton's suggestions of incompetence and ineptitude. Instead, I continue to seek to diligently and competently inform the Court of the challenges presented by Defendant Barton's decision to have very limited funds in the Receivership Entities' bank accounts as of October 18, 2022.

APP000006

the net proceeds of which are as yet unknown; and (6) the urgent need for liquid assets to fund management of other Receivership properties.

15.     To fund the Receivership's continuing obligations and eliminate the continuing costs of maintaining them, I immediately began the process of attempting to sell the least encumbered and most easily salable properties, including the Rock Creek Residence.[3]  While I believe the sale of art or other moveable items theoretically might have been a quicker process, Barton to this day refuses to identify certain artwork, to disclose the location to which he has moved such items, or to confirm who owns those items.  During my investigation, I discovered a balance sheet from 2019 which Barton claimed that JMJ Holdings owned $12 million in artwork. Attached hereto as Exhibit A-1 is a true and correct copy of the JMJ Holdings 2019 Balance Sheet. *App.* pp. 13-14.

16.     Sales of the Receivership Entities' commercial properties, such as the apartment complexes discussed above, will take many months at a minimum, after a willing buyer is found, while the Rock Creek Residence is already set to close on December 28.

17.     Relatedly, Barton and Max both complain of my purported refusal to allow them to remove "personal items" from the Rock Creek Property.  Besides the fact that these complaints ignore my repeated requests for (1) a list of the personal items at the Rock Creek Residence and 2999 Turtle Creek and (2) evidence showing that such items were not purchased with the Receivership Entities' funds, I have been told that the majority of these furnishings were purchased within the last two years by a Receivership Entity.  Nonetheless, in recognition of the limited value to the estate of clothing and similar items, I have already allowed Barton, Max, and others to

---

[3] The Rock Creek Property is encumbered by a lien resulting from Barton's recent refinancing of the property recently. Two judgment liens filed in Dallas County against Barton individually, which should not attach to the property but which nonetheless have required time to communicate with those judgment creditors, possibly explain Barton's use of an entity to hold ownership of the Property.

6

remove items of minimal value from the Rock Creek Residence. As to all other items, I offered to allow Barton and Max to retrieve them if they could demonstrate what they wanted to remove was not purchased by Receivership Entities, or to store the items (at Barton's cost) until such time as ownership is established. Barton has ignored both of my proposals and instead continues to insist that he be allowed to remove unspecified contents.

18. When I originally took possession of the Rock Creek Residence, I allowed Barton's daughter, a housekeeper, and a designer to take over a dozen large bags of clothes, bedding, and other personal effects. Virtually, the only things remaining in the house are furniture, appliances, decorations, and kitchenware. If Barton can demonstrate his personal ownership of any of these items, I remain willing to provide them to him. However, to date, he has made no such efforts, and I must claim or sell the contents prior to a December 28 closing of my sale of the Property.

19. Max similarly refused to provide me with a list of the property he claims as his own until December 7, when, rather than providing that information to me, he instead filed the list with his Response to a different motion. His list contains certain items that I have already turned over to him, other items that I am willing for him to pick up, and still other items that he has never provided any documentation indicating his personal ownership of the items.

20. In sum, Barton seeks the Court's sympathy and a carve-out from the terms of the Receivership Order with respect to items he refuses to demonstrate were purchased from his own, rather than Receivership Entity assets, while at the same time refusing to provide information about art he removed from the Rock Creek Property or provide truthful and helpful information about additional assets and properties. His complaints about and assertions of overreach by me merit no weight.

7

21.    Barton also claims that a stay is warranted because of my attempts to secure the digital assets of the Receivership Entities. Barton's actions to date have disregarded the Receivership Order and increased the burden on me and my team. Despite requesting passwords and other IT credentials upon my appointment (and multiple times since), Barton has continually failed and refused to provide the requested information me or my counsel. Instead, Barton, Max, and the Receivership Entities' employees refused to identify which IT professionals controlled the Receivership Entities' email and any other cloud accounts. When I discovered, through independent efforts, the identity of the Receivership Entities' former IT professional, I discovered that Barton had hired a different IT professional who changed the credentials that would have allowed access to the servers and email accounts.

22.    Barton has consistently used my purported access to privileged documents and information as an excuse for ignoring the clear mandate to turnover access to the Receivership Entities' digital assets, despite my repeated statements that I am willing to enter into an FRE 502(b) agreement or other protocol to protect information and documents for which Barton *legitimately* holds the privilege. Despite my continued request for the IT credentials and willingness to preserve Barton's privilege, the IT credentials have still not been provided, and Barton failed to provide any proposed privilege protocol for the electronic data—again, despite repeated requests—until December 7, 2022, and only after my counsel threatened to take the continued delay to the Court. The proposal that Barton has proposed is extremely overbroad and would apply to protect communications between the Receivership Entities and their prior counsel, irrespective of whether or not these communications have any ties to Barton's individual criminal investigation.

23.    Notably, in separating and sifting Barton's privilege from the Receivership Entities', which is now held by me, the Court should be aware that at least 36 lawsuits involving

**8**

Receivership Entities are currently stayed.  Indeed, I only recently discovered yet another lawsuit, filed on December 5, 2022, which Max Barton, purportedly through Titan Investments, LLC, filed in Ellis County without notice to me and despite extensive briefing on the fact that I contend Titan Investments is already a Receivership Entity.  Access to prior communications with counsel regarding this and the other lawsuits is essential to my ability to evaluate how and when to potentially resolve them.

24.    In the alternative to a stay of the entire receivership, Barton seeks a stay of the Order Governing Administration of the Receivership Estate, Dkt. 63 (the "Administrative Order") which permitted I shred certain irrelevant and bulky documents.  Barton fails to explain how, or why destruction of these materials jeopardizes his defense or suggests anything other than appropriate efforts to conserve limited receivership assets.  **Nonetheless, to eliminate any further concerns regarding these documents and despite the increased storage and packing costs, I will refrain from shredding any until further order of the Court.**

25.    Finally, Barton claims that my qualifications do not justify appointment in this case.  If the Court concludes that the Receivership Estate will be better served by a different receiver, the I will willingly and dutifully step down from my current role.  At the same time, I believe that the Court's decision to appoint me was wholly justified for a number of reasons, including but not limited to, the fact that (1) as to the five properties with the highest gross value in the Receivership, the Receivership Estate will recover $0 absent litigation because of the way Barton structured the deals, and thus, as a seasoned commercial litigation attorney, I am in many ways a better fit to deal with these properties regardless of my prior commercial real estate experience; (2) by simply labeling the Receiver a "trial attorney," Barton wholly ignores my background, which includes service as a law clerk to another federal judge in the district, extensive litigation in federal and

9

bankruptcy courts (including litigation involving commercial real estate and other receiverships involving realty), other relevant commercial real estate experience, and a prior receivership appointment that included the sale of multiple properties pursuant to 28 U.S.C. § 2001; and (3) in this Receivership, I moved quickly and diligently to assemble a top-notch team to assist me, and in that regard have consulted with numerous leading commercial realty firms, brokers, and advisors who have to date been willing to assist the Receivership at no cost to the Receivership Estate based upon my prior relationships with these individuals.

26.     Barton's complaints surrounding my appointment are belied by his disregard for the facts regarding the situation he himself has created (including the raising of and apparent failure to return, investor funds), his unrealistic views of value, and his refusal to provide information as required by paragraphs 8, 9, 10, and 18 the Receivership Order. I or my attorneys have requested (but generally not yet received) information and documents from Barton that identify properties and assets, employees, agents and personnel, bank and brokerage accounts, credit cards, inter-entity and defendant transfers, tax returns, keys, codes, passwords, identification and location of safe deposit boxes, and a host of related documents and information.

27.     Attached hereto as Exhibit A-2 is a true and correct copy of a letter from counsel for Tim Barton to Receiver Cort C. Thomas, dated November 1, 2022. *App.* pp. 15-18.

28.     Attached hereto as Exhibit A-3 is a true and correct copy of a letter from counsel for Tim Barton to my attorney Charlene Koonce, dated November 1, 2022. *App.* pp. 19-21.

29.     Attached hereto as Exhibit A-4 is a true and correct copy of an email from my attorney, Charlene Koonce to counsel for Tim Barton, Michael Edney, dated November 7, 2022. *App.* pp. 22-24.

APP000011

30. Attached hereto as <u>Exhibit A-5</u> is a true and correct copy of an email from my attorney Charlene Koonce to counsel for Tim Barton, Michael Edney, dated November 11, 2022. *App.* pp. 25-28.

31.     Attached hereto as <u>Exhibit A-6</u> is a true and correct copy of an email from my attorney Charlene Koonce to counsel for Tim Barton, Ted Huffman, Richard Roper, et al. dated November 29, 2022. *App.* pp. 29-32.

32.     Attached hereto as <u>Exhibit A-7</u> is a true and correct copy of an email from my attorney Charlene Koonce to counsel for Tim Barton, Michael Edney dated December 5, 2022. *App.* pp. 33-37.

33.     Attached hereto as <u>Exhibit A-8</u> is a true and correct copy of an Agreed Rescission of Special Warranty Deed, recorded on September 1, 2021. *App.* pp. 38-47.

34.     Below is a list of the litigation matters involving Receivership Entities that have been stayed to date:

(1)   *Hodges III, L. Allen, as Independent Executor of the Estate of Leland A. Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interests, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC and Timothy Barton*, No. 141-316567-20, (141st District Court Tarrant County, Texas)

(2)   *In re 2999TC LP, LLC*, Chap. 11 BK , No. 4:20-BK-43204 (US Bk Ct, ND Fort Worth Division)

(3)   *Hodges III, L. Allen, as Independent Executor of the Estate of Leland A. Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interests, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLP, JMJ Development, LLC and Timothy Barton*, No. 141-328490-21 (141st District Court, Tarrant County, Texas)

(4)   *"David" Dhirah Ramolia, v. Timothy Barton and JMJ Development*, No. DC-19-11030 (191st District Court, Dallas County, Texas)

(5)   *Timothy Barton and JMJ Development, LLC v. A.J. Babaria, Bilal Khaleeq and Dan Morenof*, No. DC-20-17086, (Related case DC-19-11030) (191st District Court, Dallas County, Texas)

(6)   *JMJ Development, LLC and Timothy Barton v. "David" Dhiraj Ramolia*, No. 05-21-01100-CV (From DC-19-11030, 5th Court of Appeals)

11

APP000012

(7)  *"David" Dhirah Ramolia, v. Timothy Barton and JMJ Development*, No. 02-0922 (Appellate Case (to Sup. Ct.) Supreme Court from 5th Court of Appeals)

(8)  *TRTX Properties, LLC and JMJ Development v.  Dhirah "David" Ramolia*, No. 471-00033-2022 (471st District Court, Collin County, Texas)

(9)  *Sun Yun, Qu Yi, Ma Jinghui, Gao Huaizen v. WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, Platinum Investment Corporation (PIC), JMJ Holdings, LLC*, No. DC-20-04575 (44th District Court, Dallas County, Texas)

(10)  *JMJAV, LLC v. Michael Fu, Jin Wang, Lynn Zhou, Tidy Fan, Summer Tian, Shirley Qing, and Michele Guo*, No. 2020-00720 (281st District Court, Harris County, Texas)

(11)  *Rone Engineering Services, Ltd. v. JMJ Development, LLC, WALL017, LLC, WALL009, LLC, and Seagoville Farms, LLC*, No. DC-19-20384 (116th District Court, Dallas County, Texas)

(12)  *The Somerset-Lost Creek Golf Ltd.v. Timothy Barton, LC Aledo TX LLC, WALL010, LLC, JMJ Acquisitions*, No. 096-319595-20 (96th District Court, Tarrant County, Texas)

(13)  *BM318, LLC v. Dixon Water Foundation*, No. 4:20-BK-42789 (US Bk Ct, ND Dallas Division)

(14)  *BM318, LLC v. Dixon Water Foundation*, Adversary No. 4:21-AP-4051, Related to 4:20-BK-42789 (United States Bankruptcy Court, Northern District of Texas, Dallas Division)

(15)  *BM318, LLC v. Lumar Land Cattle, et al.*, WF AP: 4:21-AP-4051 (United States Bankruptcy Court, Northern District of Texas, Dallas Division, Related to 4:20-BK-42789)

(16)  *JMJAV v. Elite Jet*, No. 017-333443-22 (17th District Court, Tarrant County)

(17)  *JMJ Development, LLC v. Tamamoi, LLC and 3820 Illinois, LLC*, No. DC-22-02622 (68th District Court, Dallas County)

(18)  *2999TC Acquisitions, LLC*, Chap. 11 Bk, No. 3:21-bk-31954 (United States Bankruptcy Court for the Northern District of Texas, Dallas Division)

(19)  *2999TC Acquisitions, LLC v. HNGH*, No. 22-03061-swe (United States Bankruptcy Court for the Northern District of Texas, Dallas Division)

(20)  *2999 Turtle Creek, LLC v. Timothy Lynch Barton*, No. DC-20-12133 (192nd District Court Dallas County, Texas)

(21)  *Serena Badgley, As Next Friend of Bryson Badgley, Minor v. Goldmark Hospitality, LLC*, No. CC-21-02991-B (County Court at Law No. 2, Dallas County, Texas)

(22)  *BGE, Inc. v. JMJ Development, LLC*, No. 471-03497-2020 (471st District Court, Collin County, Texas)

(23)  *Deshazo Group v. Timothy Barton, JMJ Development*, No. CC-22-04381-B (County Court at Law No. 2, Dallas County, Texas)

(24)  *Nitya Capital, LLC v. 2999TC Acquisitions MZ, LLC*, No. DC-22-09841 (14th District Court, Dallas County, Texas)

(25)  *Stream SPE LTD. v. Goldmark Hospitality by and through its General Partner, TRTX Properties, LLC*, No. 2021-81644 (80th District Court, Harris County, Texas

**12**

(26) *Pamela Kirby v. Timothy L. Barton, John McElwee, JMJ Development, LLC, 2999TC Acquisitions, LLC, 2999TC Founders, LLC, 2999TC JMJ, LLC, 2999TC JMJ GM, LLC, 2999 Five Star GM, LLC, Five Star GM, LLC, Five Star MM, LLC, Five Star TC, LLC*, No. 3:22-CV-01447-M (United States District Court for the Northern District of Texas, Dallas Division)

(27) *John Dowdall v. 2999TC JMJ MGR, LLC and Timothy Barton*, No. DC-22-14770 (193rd District Court, Dallas County, Texas)

(28) *In Re: 2999FC Finders, LLC* (Bk.), No. 22-40911 (United States Bankruptcy Court for the Eastern District of Texas)

(29) *In Re: Dallas Real Estate Investors Palisades TC, LLC, Individually and on behalf of Five Star GM, LLC v. Dallas Real Estate Investors, LLC et al.*, No. 21-04073US Bk Ct, (United States District Court for the Northern District of Texas, Fort Worth Division)

(30) *In Re: Dallas Real Estate Investors*, No. 21-41488 (US Bk Ct, ND Fort Worth Division)

(31) *In Re: FM 544 Park Vista, Ltd. and Pavist, LLC*, No. 17-34255-SGJ-11/17-34274-SJG-11 (US Bk Ct, ND Dallas Division)

(32) *JMJ Development, LLC, et al. v. Roger Sefzik, et al.*, No. 3:22-CV-02254-L (related to 17-34255-sgj11) (USDC, ND)

(33) *JMJ Development, LLC and Tim Barton v. L. Allen Hodges III, et al.*, No. 02-21-00414-CV (Second Court of Appeals, Fort Worth Division)

(34) *Cardno, Inc. v. JMJ Development, LLC, Villita Towers, LLC and Tim Barton*, No. DC-22-10928 (160th District Court Dallas County)

(35) *JMJ Development, LLC and Tim Barton v. L. Allen Hodges III, et al.*, No. 02-22-00288-CV (2nd COA, Fort Worth)

(36) *Circle H Contractors, LP*, No. DC-C202200522 (18th Dist. Ct. Johnson Cnty., Tex.)

35. I declare under penalty of perjury that the foregoing is true and correct.

December 9, 2022

 */s/ Cortney C. Thomas*
CORTNEY C. THOMAS

13

# EXHIBIT A-1

APP000015

**JMJ HOLDINGS**
**Consolidated Balance Sheet**
**As of  15th Feb., 2019**

**Assets**
*Current Asset*

| | | |
|---|---|---|
| Cash | | $174,536 |
| Account Receivables | | $807,503 |

note 1  All short term receivables renew every 30 days and are callable within a 30 day notice.

| | |
|---|---|
| Prepaid Expenses | $0 |
| Working Capital Loans | $617,675 |

note 2  TR Carnegie and Lajolla working Capital revolvers callable with 30 days notice

| | |
|---|---|
| **Total Current Assets** | **$1,599,714** |

*Fixed (Long-Term) Assets*

| | |
|---|---|
| Account Receivables | $0 |

note 4  All long term receivables are stated at 12 months.

| | |
|---|---|
| Villital Towers | $8,000,000 |
| Bellwether | $24,766,400 |
| Parc at Windmill Farms | $42,988,946 |
| Turtle Creek | $36,000,000 |
| Long Term Investments | $4,500,000 |
| Art Work | $12,670,000 |
| (less accumulated depreciation) | ($63,000) |
| **Total Fixed Assets** | **$128,862,346** |

*Other Assets*

| | |
|---|---|
| Other | $1,543,000 |

note 5  shares in private company and is not liquid

| | |
|---|---|
| **Total Other Assets** | **$1,543,000** |
| | |
| **Total Assets** | **$132,005,060** |

**Liabilities and Owners Equity**
*Current Liabilities*

| | |
|---|---|
| Accounts Payable | $41,542 |
| Villita Towers | $2,100,000 |
| Bellwether | $19,331,000 |
| Parc at Windmill Farms | $36,540,600 |
| Long-term Loans | $868,311 |

note 6  inter company note due 3/17/2019

| | |
|---|---|
| Notes Payable | $17,465,000 |
| Current portion of Long-Term Debt | $2,150,311 |

note 7  Goldmark note matures 9/19 and will be refinanced at that time

| | |
|---|---|
| **Total Liabilities** | **$78,496,764** |

*Owner's equity*

| | |
|---|---|
| Owner's Investments | $53,508,296 |
| Retained Earnings | $0 |
| Other | $0 |
| **Total Owner's Equity** | **$53,508,296** |
| | |
| ***Total Liabilities and Owner's Equity*** | **$132,005,060** |

To the best of my knowledge, the above statement is true and correct

**Tim Barton**
as President

APP000016

# EXHIBIT A-2

APP000017



HUNTON
ANDREWS KURTH

HUNTON ANDREWS KURTH LLP
2200 PENNSYVANIA AVENUE, NW
WASHINGTON, DC 20037

MICHAEL J. EDNEY
HEAD OF GOVERNMENT INVESTIGATIONS
PRACTICE
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

November 1, 2022

**VIA ELECTRONIC MAIL**

Cort C. Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: cort@brownfoxlaw.com

     Re:    *Securities and Exchange Commission v. Barton, et al.*, No. 3:22-cv-2118-X

Dear Mr. Thomas:

The Hunton Andrews Kurth LLP law firm represents Mr. Timothy Barton in a civil matter initiated by the Securities and Exchange Commission and the criminal prosecution initiated by the United States Attorney for the Northern District of Texas. I write today to memorialize our position on crucial issues regarding the attorney-client privilege and attorney work product protections.

The receiver has taken possession of Mr. Barton's personal office and home and is seeking to take possession of an email account at JMJ Development that he used for personal purposes. His office has also been the epicenter of preparation by him and his lawyers to defend himself against the SEC's and the DOJ's charges of fraud. This includes entire offices dedicated to the use of his lawyers, and materials created in conjunction with and under the supervision of counsel by Mr. Barton.

As such, the receiver now taken possession of documents and communications that are protected by the attorney-client privilege and the attorney work product doctrine. Before you review these documents, there must be a protocol that ensures that neither receiver nor its staff is exposed to this privileged and/or protected information, especially given the receiver's intention and mandate to communicate with Government agents and prosecutors.

To this end, we are requesting that all documents contained in the personal offices of Mr. Barton and his three counsel in the building not be reviewed by any member of your team, until a group of Mr. Barton's attorneys have reviewed them for privilege and created a log of documents over which we are asserting privilege. In that review, Mr. Barton's counsel would not remove any documents from the premises. Instead, they would physically segregate, and prepare a log detailing, the documents over which Mr. Barton is asserting

APP000018

Case 3:22-cv-02118-X   Document 85   Filed 12/09/22   Page 21 of 51   PageID 2545

Cort C. Thomas, Esq.
November 1, 2022
Page 2

privilege.  Depending on your plans to search the electronic communication of Mr. Barton and his attorneys on JMJ Development servers, a similar protocol should be put in place for those data.

We would propose that the receiver then review that log and identify any documents over which the receiver has concerns regarding the assertion of privilege.  We would then meet and confer and, in the event that agreement cannot be reached, the parties can seek a judicial resolution of the privilege claim.  This proposed protocol also will conserve resources, as it will avoid the retention of separate professionals to review for privilege in the first instance.

I want to address, in advance, an issue that arose in our discussion on Thursday, October 20, 2022.  The concept was raised that the receiver has been given control over the privilege of various corporate entities, such that everything on the premises, to the extent privileged, is now in the receiver's control.  As an initial matter, the facilities that you now control also served as Mr. Barton's personal offices and home, and there are many documents therein prepared by or under the supervision of Mr. Barton's personal lawyers in the SEC and DOJ matters.  In any event, the presence of closely held corporations in Mr. Barton's privilege communication does not give the receiver control over jointly-privileged documents. This issue has been addressed before by the courts, and the participation of the corporation in many of these privileged communications does not destroy Mr. Barton's right to confidentiality.  *See*, *e.g.*, *In re Bounds*, 443 B.R. 729 (Bankr. W.D. Tex. 2010) ("In the instant case, this Court finds that [a new control person] is not entitled to the work product generated on behalf of the Corporations insofar as it contains the Debtor's own confidential information. Handing over all the work product of the Corporations, for whom the Debtor once served as an officer, would almost certainly result in a disclosure of the Debtor's own confidential information."); *In re: Taproot Sys., Inc.*, No. 11-05255-8-JRL, 2013 WL 3505621 (Bankr. E.D.N.C. July 11, 2013) ("The general rule with regard to materials protected by the common interest doctrine or a joint defense agreement is that one party to the agreement cannot unilaterally waive the protection.").

APP000019

Cort C. Thomas, Esq.
November 1, 2022
Page 3

These are important matters. The seizure of these documents and e-mail accounts is over Mr. Barton's objection. Should these privileged materials make their way into your substantive review and become part of briefings to the Government, they will taint the integrity of a criminal prosecution that is threatening Mr. Barton's liberty. I hope to resolve this issue with you through mutual agreement, but will not hesitate to take this issue to the Court given its importance in the event appropriate arrangements are not reached.

I look forward to working with you through these matters.

Very truly yours,

Michael J. Edney

cc:    Richard Roper, Esq.
       Charlene Koonce, Esq.

APP000020

# EXHIBIT A-3

APP000021


# HUNTON
## ANDREWS KURTH

HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20037

MICHAEL J. EDNEY
HEAD OF GOVERNMENT INVESTIGATIONS
PRACTICE
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

November 1, 2022

**_VIA ELECTRONIC MAIL_**

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com

> Re:    Sections 8-10, 18, and 24 of the Court's Order Appointing a Receiver: *SEC v. Barton et al.*, No. 3:22-CV-2118 (N.D. Tx.)

Dear Ms. Koonce:

The Hunton Andrews Kurth LLP law firm represents Mr. Timothy Barton in both the above-entitled matter and in *United States v. Barton*, pending in the Northern District of Texas. We write today regarding terms of the Receivership Order requiring the provision of certain information to the receiver. These terms include paragraphs 8-10, 18, and 24. We note the October 25, 2022, correspondence from your office seeking to remind Mr. Barton of his obligation to provide information pursuant to paragraph 18B and suggesting that he may also be required to do so under paragraphs 8-10 of that order.

Paragraphs 8-10 require "the Receivership Entities" to provide a variety of information. The Receivership Order, however, dismissed all "trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys, and other agents of the Receivership Entities," and "suspended" the authority "of any general partners, directors, and/or managers" of those entities. *See* Receivership Order at ¶ 4. The Receivership Order, therefore, divested Mr. Barton personally of any authority or responsibility to direct the Receivership Entities to provide the sworn statements or other information required by paragraphs 8-10.

Paragraph 18B does place obligations on "any person who receives actual or constructive notice of this Order who has or *had* possession or control of any Receivership Assets." (Emphasis added.) To the extent that this term might apply to Mr. Barton personally rather than the corporations holding the assets and now under the control over the receiver, certain actions of the receiver have eliminated Mr. Barton's effective or practical access to the information necessary to make the "sworn statement" required by Paragraph 18B. These actions including excluding Mr. Barton of access to his home, place of business, and business

APP000022

Charlene Koonce, Esq.
November 1, 2022
Page 2

records. These actions have also cut off the access of Mr. Barton's assistants and employees to this information.

To the extent the intervening actions of the receiver cutting Mr. Barton off from the information necessary to make the statements contemplated by Paragraph 18B were not sufficient to excuse his compliance with that paragraph, Paragraph 18B clearly seeks to *compel* through judicial order the sworn testimony of Mr. Barton regarding matters directly pertinent to criminal charges pending in *United States v. Barton*. Accordingly, we have advised Mr. Barton to invoke his constitutional right against self-incrimination, to include his right against compelled testimony and production of information and materials, in response to any obligation Paragraph 18B seeks to impose on him. *See, e.g., United States v. Hubbell*, 530 U.S. 27, 36-37 (2000) (explaining that compelling production of documents may itself violate the Fifth Amendment because document production speaks to existence, possession, control, and authenticity); *S.E.C. v. Farmer*, 560 F. App'x 324, 326 (5th Cir. 2014) (quoting *Hubbell* and explaining that "[t]he Fifth Amendment protects against both self-incriminating testimony and production of documents where production implicitly communicates" existence, possession, control, or authenticity). Please regard this letter as notice that Mr. Barton is invoking his Fifth Amendment privilege against any effort to compel a sworn statement from him pursuant to Paragraph 18B of the Receivership Order.

As you know, counsel for Mr. Barton have been providing information to the receiver to assist in its efforts to identify the many commercial real estate assets held by the receivership entities and will continue to do so. Mr. Barton's sincere hope is that the receiver will continue Mr. Barton's efforts, well advanced prior to the Court's order, to assemble liquid assets that could be available for those lenders who are the focus of the SEC's action and who choose to seek the return of their funds in a manner consistent with U.S. tax and anti-money laundering laws. My colleague, Richard Roper, has spent extensive time briefing you on these efforts and other information about the extensive commercial real estate assets associated with Mr. Barton and will continue to do so. All of us look forward to continue working with the receiver to provide additional information on concrete actions that, we believe, will achieve that outcome in short order.

Should you have any questions, please do not hesitate to contact me directly.

My very best regards,

Michael J. Edney

Cc: Cort Thomas, Esq.
    Richard Roper, Esq.

APP000023

# EXHIBIT A-4

APP000024

**Charlene Koonce**

**Subject:**                    FW: Securities and Exchange Commission v. Barton, No. 3:22-cv-2118-X

---

**From:** Charlene Koonce
**Sent:** Monday, November 7, 2022 7:52 AM
**To:** Edney, Michael <MEdney@huntonak.com>; Cort Thomas <cort@brownfoxlaw.com>
**Cc:** Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** RE: Securities and Exchange Commission v. Barton, No. 3:22-cv-2118-X

Michael – thank you for these letters.  First, with respect to your proposed privilege protocol, I note that you had promised to provide Mr. Barton's proposed protocol by the close of business on 10/20.  Your proposal arrived almost two weeks late.  In the intervening time, we had discussed an FRE 502(b) snapback proposal with Mr. Roper and we propose that we use that process here.  If we proceeded with your proposal to review, segregate, and log documents in which Mr. Barton claims a privilege, a member of the Receiver's team would need to be present at the premises while your team reviewed, thereby multiplying the cost of the review for the estate.  A 502(b) agreement would save both sides time and money.

More generally, I see no basis in the Receivership Order or otherwise for your concerns about "the receiver's intention and mandate to communicate with Government agents and prosecutors."  The Receiver's mandate compels him to perform many tasks and report to the Court about the status of the estate and his efforts. While he is certainly empowered to provide testimony regarding Mr. Barton's cooperation or lack thereof at any sentencing hearing, that effort has *nothing* to do with communicating any purportedly privileged information to anyone.   And as you may know, a receiver serves as *the Court's* agent.  *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) ("The receiver is not an agent of the parties, nor is he like any other party affected by the wrongdoing of the entity's leaders—in this case, by way of a classic Ponzi scheme. He is "an officer or arm of the court ... appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody.").  In the event the Receiver discovered privileged documents in reviewing the materials located in the Receivership Entity's offices that he is *required* to review, he would put them aside for your retrieval on behalf of Mr. Barton.  After ascertaining the existence of a privilege in such materials, under no circumstances would the Receiver continue reviewing the subject documents or include reference to them in any report to the Court or in communications with the government. Your concerns to the contrary are simply unfounded.  Please let us know by the close of business on Thursday whether you will agree to the use of a FRE 502(b) agreement with respect to documents located in the Receivership Entities' offices.

I also note that with respect to Mr. Barton individually claiming a privilege in what you deem "jointly-privileged documents" finds little if any support in the cases you cite.  We are unaware of any joint defense agreement between Mr. Barton individually and any other Receivership Entity, nor would the common interest doctrine have any application in these circumstances. Nor is the Receiver akin to a successor in interest who was previously adverse to Mr. Barton as in *In re Bounds.*

Finally, while we appreciate Mr. Roper's efforts to provide the information requested to date by the Receiver and required by the Receivership Oder, we must disagree that Mr. Barton's privilege against incrimination excuses his obligation to produce documents requested by the Receiver or required by the Order. First, you provide no basis for any assertion that the act of production in these circumstances would have any incriminating consequences.  For instance, providing appraisals of certain items of art or other identifying information for Receivership Assets could not provide any basis to incriminate Mr. Barton.  Moreover, other requested information and documents, such as the location, account numbers, and balances easily falls within the "foregone conclusion" exception to any testimonial conduct in producing the requested information, if in the context presented here, the act of production actually  qualified as compelled testimony rather than the mere production of previously existing documents.  In short, the law does not support your assertion that Mr. Barton's Fifth Amendment privilege insulates him from his obligation to produce documents and information requested by the Receiver.

1

APP000025

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Tuesday, November 1, 2022 5:17 PM
**To:** Cort Thomas <cort@brownfoxlaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton, No. 3:22-cv-2118-X

Dear Mr. Thomas and Ms. Koonce:

Attached please find two letters regarding the above entitled matter.  Please contact us with any questions.

My very best regards,

Mike


Michael J. Edney
Head of Government Investigations Practice
Hunton Andews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 778-2204

APP000026

# EXHIBIT A-5

APP000027

**Subject:**                     FW: Securities and Exchange Commission v. Barton et al., No. 3:22-cv-2118-X

**From:** Charlene Koonce
**Sent:** Friday, November 11, 2022 4:26 PM
**To:** Bernstein, Keefe <bernsteink@SEC.GOV>
**Subject:** FW: Securities and Exchange Commission v. Barton et al., No. 3:22-cv-2118-X



**CHARLENE KOONCE**
214.367.7503
BROWNFOXLAW.COM

**From:** Charlene Koonce
**Sent:** Friday, November 11, 2022 3:40 PM
**To:** Edney, Michael <MEdney@huntonak.com>; Cort Thomas <cort@brownfoxlaw.com>
**Cc:** Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>; Tim Wells <tim@brownfoxlaw.com>
**Subject:** RE: Securities and Exchange Commission v. Barton et al., No. 3:22-cv-2118-X

Mike – Thank you for your letter providing Mr. Barton's recommendation regarding how the Receiver should proceed to perform the mandate of the Receivership Order and recommending that he sell the Forney and DeSoto properties.  We will carefully consider your recommendation but want to be clear about several inaccuracies in your letter and provide additional perspective that your proposal ignores.

First, as you know, the Receiver's possession and control over all Receivership Assets is required by the Receivership Order.  He cannot pick and choose which properties to potentially exclude for Mr. Barton's continued control or development.

Second, many of the properties owned by Receivership Entities have existing and urgent financial obligations tied to them.  For instance, property and liability insurance coverage, long past due utility payments, and payroll obligations owed on the Amerigold extended stay property.  To date, the Receiver has recovered $25,000 in cash that can be used for these continuing and substantial obligations.   All other cash, which is limited, is encumbered or necessary for the continued operation of several other properties.  (The dearth of cash also explains why the Receivership Entities had apparently not been paying virtually any of their debts as they become due).  Thus, even if the Receiver agreed with your proposal to sell the two properties you identified, those sales would take time and he would be required to liquidate additional assets to pay for the administration of the estate.

Third, like every other receivership property, the two which are the subject of your proposal carry more than one lien or encumbrance.  As to Bellwether Ridge in Desoto, the latest information we have is that $17,957,371 is still owed on the HUD loan, and at least $3.8 million is owed to Pillar Income Asset Management for a second loan on the property.  As to the Parc at Windmill Farms in Forney, the latest information we have is that $35,490,553 is still owed on that property's HUD loan and at least $7.3 million is owed to Pillar Income Asset Management.  Even if we assume that the appraisal you cite (which we understand was prepared by an entity and/or individual that is closely connected to Mr. Barton) is accurate and not inflated, the best-case sale scenario on Desoto prior to closing costs and any commissions and legal fees would be $4,942,629–$6,242,629, while Forney would be $10,509,447–$13,209,447.  In other words, even under Mr. Barton's assumptions, successful sales of these two properties alone will still be considerably less than $27 million.

1

APP000028

Fourth, and perhaps most importantly at this point, there is no guarantee that the sale of these properties will result in any value to the Receivership Estate. As Mr. Barton is well aware, Pillar (the second lender on the properties) contends that prior to entry of the Receivership Order it exercised a right of conversion, which operates to extinguish (in whole) *any* interest in those properties held or claimed by the Receivership Entities. While the Receiver plans on vehemently contesting that purported conversion, the outcome is far from certain, and again, will require time and expense.

Fifth, as you note, the process of returning investor funds will be complex and therefore time-consuming and expensive. Thus, as noted above regarding the continuing cost of administering the estate for properties that require management and have accruing expenses, the estate will incur additional and extensive expenses related to other aspects of administration. Indeed, just selling the properties you identify will require additional cash outlays to comply with the statutory sales process that would govern the sale. At this very early juncture we have no estimate of what those costs may be and are unwilling to commit to or limit the receiver's efforts to an uncertain recovery on properties in which the estate may or may not hold any interest as providing sufficient funds to fully reimburse all investors, pay all creditors holding claims on those properties, and pay for the accrued and expected costs of administering the estate.

Finally, without waiver of the *many* other arguments, facts, and authorities that necessitate liquidating some assets in this case as soon as possible, we also direct you to the extremely broad discretion afforded judges supervising equitable receiverships. *See SEC v. Hardy,* 803 F.2d 1036,1037–38 (9th Cir. 1986). Due in part to the considerations listed above, your assertion that a receiver may not liquidate assets held by the estate prior to entry of a judgment is simply incorrect. On the contrary, in instances where the ongoing administration of the estate will drain assets otherwise available for distribution to defrauded investors, liquidation prior to entry of a judgment is *expressly* permissible. *See S.E.C. v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) ("[L]iquidation at this time, prior to entry of judgment, is appropriate because the evidence presented to the Court demonstrated that the TLC entities' liabilities were greater than their assets and because ongoing management alone will drain money out of the estate, money that otherwise could be returned to investors."). Additionally, but not inconsequently, the Fifth Circuit does not adhere to other circuits' (particularly the Second Circuit's) preference for use of bankruptcy procedures over receiverships. Thus, your citations to Second Circuit cases in which "reservations" are expressed about liquidation in the context of receiverships are unpersuasive and inapplicable here. *See for example,* the dozens if not hundreds of opinions arising from the Stanford Receiver's liquidation efforts, much of which occurred for several years before any final judgment was entered against Allan Stanford.

We are in agreement that the Receiver is required to marshal and preserve Receivership Assets. To the extent he must sell some properties to preserve others, he will do so in the most expeditious manner possible and will in all instances seek to maximize the value of all properties. We appreciate Mr. Barton's efforts to assist the Receiver and look forward to receiving the many documents and additional information that has been requested of him in that regard.



CHARLENE KOONCE
214.367.7503
BROWNFOXLAW.COM

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Wednesday, November 9, 2022 5:27 PM
**To:** Cort Thomas <cort@brownfoxlaw.com>
**Cc:** Charlene Koonce <charlene@brownfoxlaw.com>; Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton et al., No. 3:22-cv-2118-X

Dear Mr. Thomas,

Attached please find a letter and an accompanying exhibit regarding the above entitled matter. Please feel free to contact me with any questions.

APP000029

My very best regards,

Mike


Michael J. Edney
Hunton Andews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 778-2204

3

APP000030

# EXHIBIT A-6

APP000031

**Charlene Koonce**

---

| Subject: | FW: Securities and Exchange Commission v. Barton et al. |
|---|---|

---

**From:** Charlene Koonce
**Sent:** Tuesday, November 29, 2022 4:43 PM
**To:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com; Tim Wells <tim@brownfoxlaw.com>; Morgan Buller <morgan@brownfoxlaw.com>
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Mr. Roper – thank you for your agreement to provide the lists of art, its ownership, and approximate value. We ask that Mr. Barton include all art located in the Turtle Creek location that he can recall and we can provide access to that location or provide photos of pieces he does not recall if necessary.

Mr. Huffman, with respect to your letter, we expended significant time and effort to identify the IT consultant previously contracted by the Receivership Entities. When we spoke with that individual a few weeks ago, he tried using his credentials to log in and no longer had access. Obviously, however, Mr. Heller has access. So, either Mr. Barton, one of his children, or his employees changed that access, or Mr. Heller did. In any event, the credentials are known to someone that you represent or your agent, all of whom have received a copy of the Receivership Order.

Regarding the privilege protocol, we have proposed a protocol for handling privileged materials *several times*, the last time on November 7, 2022. We received no response.

While the Receiver is willing to work towards resolution of the privilege issues and would prefer not to have to file a MSC, he is not agreeable to you or your consultant holding the IT access credentials hostage while we attempt to negotiate that process. As previously requested, please provide the IT credentials.

Based on your communications today and in an effort to avoid the necessity of a MSC, we will wait to the close of business tomorrow to receive that information, as well as the lists of the art described previously by Mr. Roper.



**CHARLENE KOONCE**
214.367.7503
BROWNFOXLAW.COM

---

**From:** Huffman, Ted <THuffman@hunton.com>
**Sent:** Tuesday, November 29, 2022 4:04 PM
**To:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Ms. Koonce—

Following up on Mr. Roper's email below, please see the attached correspondence.

APP000032

**From:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>
**Sent:** Tuesday, November 29, 2022 2:27 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Caution: This email originated from outside of the firm.

Rule 408 Communication

Ms. Koonce:

Thanks for speaking with me today.   As we discussed, Barton, through counsel, will provide you two lists.  First, a list of the art work, and each work's approximate value, located in the residence, 4107 Rock Creek Drive, Dallas, Texas, including art work taken out of the residence. Second, a list of art work, and each art work's approximate value located at 2999 Turtle Creek, Dallas, Texas.   Regarding the latter list, Baron may need to walk through the building to ensure that he can accurately list the art work.

Also, Barton will immediately cease from using any Barton-entity email address.

Finally, we will respond this afternoon regarding the receiver's request for the credentials to access the entity file server.

Please respond if I am missing something.

Regards,


**Richard Roper** | **Holland & Knight**
Partner
Holland & Knight LLP
One Arts Plaza, 1722 Routh Street, Suite 1500 | Dallas, Texas 75201
Phone 214.969.1210 | Fax 214.964.9501 | Mobile 682.465.1008
richard.roper@hklaw.com | www.hklaw.com

Add to address book | View professional biography


**From:** Charlene Koonce <charlene@brownfoxlaw.com>
**Sent:** Wednesday, November 16, 2022 7:09 PM
**To:** Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.
**Importance:** High


*[External email]*
Mr. Edney – As Mr. Heller knows, and as he undoubtedly informed you, we contacted him because we were informed that he had become the IT professional *for the Defendant Entities.*

Regardless of whatever Mr. Heller's role is, based on additional information we received, it is abundantly clear that Mr. Heller has received the admin credentials for the Receivership Entities' servers, email accounts and additional electronic data, *and that he changed those credentials.* In so doing, he is interfering with the Receiver's ability to access that information and data.

2

Based on your request that we no longer communicate with Mr. Heller, a request I am not conceding or which in any way insulates Mr. Heller from the mandates in the Receivership Order, I will direct the following to you and your clients:

**Pursuant to ¶¶ 12, 18B.3, and 33 you are hereby instructed to provide me with all access credentials for all Receivership Entity data storage devices, clouds, servers, etc. to me by 9 a.m. tomorrow.** Regardless of who retained Mr. Heller, or why, he and you as his principal, or your clients if you prefer to concede that they are the source of this information, are obligated to provide this requested information to the Receiver. If you on behalf of Mr. Heller fail to provide this requested information, we will so advise the Court and seek the appropriate relief, including but not limited to a request to hold each and both of you in contempt of Court until the access credentials are provided, and sanctions for the costs of obtaining this information that was requested nearly a month ago and expressly required by the Receivership Order. There is no attorney-client privilege, work product protection, or Fifth Amendment privilege in this access information.

Moreover, as Mr. Heller was informed and as the Receivership Order makes abundantly clear ALL data should have been preserved. We will of course seek all and any appropriate remedies if we discover that data or information has been altered or deleted.



**CHARLENE KOONCE**
☎ 214.367.7503
BROWNFOXLAW.COM

---

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Wednesday, November 16, 2022 5:40 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Richard Rooper <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton et al.

Dear Ms. Koonce:

Attached please find correspondence in the above entitled matter.

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

APP000034

# EXHIBIT A-7

APP000035

**Charlene Koonce**

---

**Subject:**                FW: Documents to be signed_Parc at Opelika

---

**From:** Charlene Koonce
**Sent:** Monday, December 5, 2022 3:21 PM
**To:** Edney, Michael <MEdney@huntonak.com>; Cort Thomas <cort@brownfoxlaw.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DFW - X31210) <Richard.Roper@hklaw.com>
**Subject:** RE: Documents to be signed_Parc at Opelika

All – thanks for the call this morning.  I know we discussed the issue of the personal property in the Rock Creek Property, and given the offer to purchase the place with its furnishings vis a vis Mr. Barton's contention that he owns the contents and the pending appeal, we see three options:

1)  Mr. Barton provides evidence showing that he purchased the items with his personal funds, rather than purchasing through an entity, an entity credit card, or funds traced to a Receivership Entity; (please note that we understand that virtually all of the home furnishings were purchased within the last two years and that they were purchased with Receivership Entities' money);
2)  Mr. Barton agrees to pay, in advance, to have the contents moved and stored during the pendency of the appeal so that property can be delivered to purchaser at the December 28 closing; or
3)  Subject to Court approval (which we will request shortly), the Receiver proceeds with the sale of the contents (minus certain artwork and antiques) for $25K.

We are not proposing to sell Mr. Barton (or Victoria's or Max's) clothing, or any similar "personal" items, but rather the furnishings, including soft goods, like sheets, towels, dishes, etc.  We are agreeable to allowing one person – not all three Barton family members at once- to meet at the property and retrieve (or have someone retrieve on their behalf) any remaining "personal" items that would not be sold.  As Cort mentioned on the call today, substantial personal items were already retrieved.

Because we need to get this resolved quickly, please let us know by the end of the day tomorrow whether Mr. Barton wants to proceed under option 1 or 2 above, and if #2, (a) provide the identity of two alternate moving/packing companies who can pack the personal items and will move them to a storage unit selected by the Receiver, and, (b) let us know how Mr. Barton will advance payment for 6 months for a storage unit of the Receiver's choice.



CHARLENE KOONCE
214.367.7503
BROWNFOXLAW.COM

---

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Monday, December 5, 2022 8:59 AM
**To:** Cort Thomas <cort@brownfoxlaw.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DFW - X31210) <Richard.Roper@hklaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>
**Subject:** Re: Documents to be signed_Parc at Opelika

APP000036

Dear Cort:

Thank you.  In terms of times, would 9:30am or 12:30pm today or 2pm tomorrow work for you?  We would be happy to send around a number.

My very best,

Mike

---

**From:** Cort Thomas <cort@brownfoxlaw.com>
**Sent:** Friday, December 2, 2022 11:37 PM
**To:** Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DFW - X31210) <Richard.Roper@hklaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>
**Subject:** Re: Documents to be signed_Parc at Opelika

Caution: This email originated from outside of the firm.

9 am central works on our end.  Let us know if you want us to call you or if better to use a dial-in.

Cort


On Dec 2, 2022, at 9:05 PM, Edney, Michael <MEdney@huntonak.com> wrote:


Dear Cort:

Thank you apprising us of this situation and passing these materials along.  We are reviewing and want to be as helpful as we can, in light of the change of roles effected by the intervening receivership order (which, as you know, we are challenging as entered in error).

I have returned from my federal court commitments in another matter, and we understand the time sensitivity of this and other issues.   We are conferring on these issues over the weekend, and I propose that we have a call at 9am Monday morning (or such other time Monday morning that is convenient for you and your team) to address this and all other pending issues.

We are confident that, working together, we can resolve forge a path forward on all pending matters.

We look forward to speaking with you and your colleagues Monday morning.

My very best regards,

Mike

2

APP000037

**From:** Cort Thomas <cort@brownfoxlaw.com>
**Sent:** Thursday, December 1, 2022 9:53 PM
**To:** Edney, Michael <MEdney@huntonak.com>; Huffman, Ted <THuffman@hunton.com>; Roper, Richard B
(DFW - X31210) <Richard.Roper@hklaw.com>
**Cc:** Charlene Koonce <charlene@brownfoxlaw.com>
**Subject:** FW: Documents to be signed_Parc at Opelika

Caution: This email originated from outside of the firm.

Richard/Mike/Ted,

Please see below and attached from Greystone.  When I spoke with Richard and Mr. Barton a couple of weeks
ago, Mr. Barton offered to assist as needed with signatures involving the HUD loan to ensure that we get
through cost certification.  It has taken considerable effort, but Greystone finally appears to be swimming in
the same direction.  I had a lengthy call with them today, during which they indicated that HUD has asked that
Mr. Barton sign the attached forms on behalf of D4OP since he is still listed on the Regulatory Agreement.

This request of course does not waive our position that D4OP is properly a Receivership Entity, nor do we view
Mr. Barton's cooperation in this respect as a violation of the Receivership Order.  To the contrary, Mr. Barton's
assistance furthers the goals and purposes of the Receivership Order.

**Despite Greystone's delays, there is a great deal of urgency here because of potential defaults (I am happy
to jump on the phone to elaborate further and discuss).  If there is an way that we could get this resolved
one way or the other tomorrow or early next week, it would be very much appreciated.**

Best,

Cort


Cort Thomas
214.367.6094
Brown Fox PLLC
www.brownfoxlaw.com

---

**From:** Amy Briseno <Amy.Briseno@greyco.com>
**Sent:** Thursday, December 1, 2022 4:18 PM
**To:** Cort Thomas <cort@brownfoxlaw.com>; Theresa Johnson <Theresa.Johnson@greyco.com>; Jill L.
Nicholson (jnicholson@foley.com) <jnicholson@foley.com>; Debi Martin <Debi.Martin@greyco.com>;
Samantha Brooks <Samantha.Brooks@greyco.com>
**Subject:** Documents to be signed_Parc at Opelika

Hi Cort-

    Please see the following documents for signatures:

1. 92403 – bottom of Page 1
2. 92464M – "Borrower" Page 6 **and** Page 7
3. 92464M IOD – Page 6

3

APP000038

Please let me know if you have any questions or would like to review before you obtain signatures- thank you!

** I will be out of the office tomorrow, however, please feel free to reply to this email and someone will definitely get back to you.

Thanks again!

**Amy Briseno | Senior Asset Manager**
Greystone | www.greyco.com
amy.briseno@greyco.com  | o: 540.359.7679

4

APP000039

# EXHIBIT A-8

APP000040

2021 - 202100261387  09/01/2021  9:50AM  Page 1 of 9

Capital Title

GF # 21-603645-WB

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE OUT ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER

## AGREED RESCISSION OF SPECIAL WARRANTY DEED

THE STATE OF TEXAS

                                     KNOW  ALL  MEN  BY  THESE  PRESENTS:

COUNTY OF DALLAS

    WHEREAS SF Rock Creek LLC, a Texas limited liability company, (the "Grantor") agreed to sell and convey to Timothy Barton (the "Grantee") the Property (as described herein) to Grantee in accordance with certain agreed terms;

    WHEREAS the executed Special Warranty Deed ("Deed") conveying the Property to Grantee was executed by Grantor to be held in escrow but then erroneously recorded prior to any actual conveyance or closing of the sale of the Property;

    WHEREAS the closing of the sale of the Property to Grantee did not actually occur and neither the agreed sales price nor any consideration was paid to the Grantor for the Property;

    WHEREAS the filing of the Deed was in error;

    WHEREAS Grantee never took possession of the Property; and

    WHEREAS the Parties have agreed to rescind the Deed as stated herein.

    NOW THEREFORE Grantor and Grantee hereby rescind in full the execution, granting, and recording of the Special Warranty Deed ("Deed") as recorded in the real property records of Dallas County, Texas as document number 202100223187 (attached hereto as Exhibit "B") recorded on July 27, 2021, which purported to grant, bargain, sell, and convey the property and improvements located at 4107 Rock Creek Drive. Dallas, Texas 75204 situated in Dallas County, Texas, as described on Exhibit "A" which is attached hereto and incorporated herein by reference for all purposes, together with any and all buildings and other improvements, plants, trees and shrubbery now or hereafter located on said property and together with all and singular all rights and appurtenances pertaining to such property, including any right, title and interest of Grantor in and to adjacent roads, streets, alleys, easements or rights-of-way (with the property, together with all such improvements, rights and appurtenances being collectively referred to herein as the "Property").

Rescission of Special Warranty Deed                                          Page 1

APP000041

Grantee represents, warrants, and affirms that it never took possession of the Property; that it has not altered nor encumbered the Property in any way; that it has no claims related to the Property; and that it has acquired no rights, title, or interests of any kind in the Property.

Except as stated herein, Grantee and Grantor fully release one another including their successors and assigns and related parties from any and all obligations, claims, rights, and covenants related to the purported conveyance of the Property as described herein.

The effect of this rescission shall be as if the conveyance never happened and Grantor and Grantee are each restored to their respective positions as existed prior to the purported conveyance of the Property and as such, the Deed is void and of no force and effect.

*[Signature Pages to Follow]*

Agreed Rescission of Special Warranty Deed                                                        Page 2

APP000042

2021 - 202100261387  09/01/2021  9:50AM  Page 3 of 9

EXECUTED this __30__ day of __August__ 2021.

GRANTOR:

SF ROCK CREEK LLC
a Texas limited liability company

By: _____
Name: Timothy Barton
Its:  President

STATE OF TEXAS
COUNTY OF DALLAS

On this __30__ day of __August__, 2021, before me, a notary public in and for the jurisdiction aforesaid, personally appeared Timothy Barton who acknowledged that he/she executed the foregoing instrument in such person's capacity as the President of Grantor, being authorized to do as his/her free act and deed.

Witness my hand and official seal.

[Notary Seal]

_____
Notary Public
Print Name: Bella D Khusal



Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

Agreed Rescission of Special Warranty Deed

Page 3

APP000043

2021 - 202100261387  09/01/2021  9:50AM  Page 4 of 9

EXECUTED this ___ day of _____ 2021.

GRANTEE:

Timothy Barton

STATE OF TEXAS
COUNTY OF DALLAS

On this _____ day of _____ 2021, before me, a notary public in and for the jurisdiction aforesaid, personally appeared Timothy Barton who acknowledged that he executed the foregoing instrument in his individual capacity as Grantee.

Witness my hand and official seal.

[Notary Seal]

Notary Public
Print Name: _Bella D. Khusal_

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

Agreed Rescission of Special Warranty Deed

Page 4

APP000044

2021 - 202100261387  09/01/2021  9:50AM  Page 5 of 9

EXHIBIT "A"

Lot 32, Block 2, TURTLE CREEK PARK, an Addition to the City of Dallas, Dallas County,
Texas, according to the Map or Plat thereof, recorded in Volume 4, Page 83, Map Records,
Dallas County, Texas

Address: 4107 Rock Creek Drive, Dallas, Texas 75204
Parcel ID: 00000195718000000

Agreed Rescission of Special Warranty Deed                                    Page 5

APP000045

2021 - 202100261387  09/01/2021  9:50AM  Page 6 of 9

2021 - 202100223187  07/27/2021  12:42PM  Page 1 of 3

EXHIBIT "B"

Capital Title

GF # 21- 603645 - WB

### Special Warranty Deed

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

Date: July _27_ , 2021

Grantor: SF Rock Creek, LLC, a Texas limited liability company

Grantor's Mailing Address: _13901 Midway Rd Suite 102 Dallas TX 75244_

Grantee: Timothy L. Barton

Grantee's Mailing Address: _13901 Midway Rd Suite 102 Dallas TX 75244_

Consideration: the sum of TEN DOLLARS ($10.00) cash, and other good and valuable consideration

Property (including any improvements):

**Lot 32, Block 2, TURTLE CREEK PARK, an Addition to the City of Dallas, Dallas County, Texas, according to the Map or Plat recorded in Volume 4, Page 83, Map Records of Dallas County, Texas.**

Reservations from Conveyance: None

Exceptions to Conveyance and Warranty:

This conveyance is made and accepted subject to all restrictions, encumbrances, easements, covenants, and conditions relating to the Property filed for record in Dallas County, Texas.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, when the claim is by, through or under Grantor but not otherwise except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

When the context requires, singular nouns and pronouns include the plural.

APP000046

2021 - 202100261387  09/01/2021  9:50AM  Page 7 of 9

2021 - 202100223187  07/27/2021  12:42PM  Page 2 of 3

EXECUTED this _27_ day of July, 2021

**SF Rock Creek, LLC, a Texas limited liability company**

By: TLB 2018 Trust, dated November 21, 2018
and any amendments thereto
Its: Manager

By: _____
Timothy L. Barton, Trustee

THE STATE OF TEXAS        §
                          §
COUNTY OF DALLAS          §

Before me, a Notary Public, the foregoing instrument was acknowledged on _27_ day of July, 2021 by Timothy L. Barton, Trustee for TLB 2018 Trust, dated November 21, 2018 and any amendments thereto as Manager for SF Rock Creek, LLC, a Texas limited liability company who personally appeared before me, and who is known to me through _personal_ _knowledge_ to be the person(s) who executed it for the purposes and consideration expressed therein, and in the capacity stated.

Bella D Khusal
My Commission Expires
09/24/2022
ID No 131734480

_____
NOTARY PUBLIC, STATE OF TEXAS

AFTER RECORDING, RETURN TO:
TIM BARTON
8401 Midway Rd Ste 102
Dallas, TX 75244

PREPARED IN THE LAW OFFICE OF
Shaddock & Associates, P. C.
2400 N. Dallas Parkway, Ste. 560
Plano, Texas 75093

APP000047

2021 - 202100261387  09/01/2021  9:50AM  Page 8 of 9

2021-202100223187 07/27/2021 12:45 PM Page 3 of 3

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:** 202100223187

eRecording – Real Property

---

Recorded On: July 27, 2021 12:42 PM                     Number of Pages: 3

---

**" Examined and Charged as Follows: "**

Total Recording: $30.00

---

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                   **Record and Return To:**

Document Number:     202100223187                       Simplifile
Receipt Number:      20210727000813
Recorded Date/Time:  July 27, 2021 12:42 PM
User:                Lynn G
Station:             CC18

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

APP000048

**2021-202100261387 09/01/2021 9:54 AM Page 9 of 9**

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:**  202100261387

eRecording – Real Property

Recorded On: September 01, 2021 09:50 AM                    Number of Pages: 9

---

### " Examined and Charged as Follows: "

Total Recording: $54.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                       **Record and Return To:**

Document Number:        202100261387                        Simplifile

Receipt Number:         20210901000175

Recorded Date/Time:     September 01, 2021 09:50 AM

User:                   Lynn G

Station:                CC18

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was** FILED **In the File Number sequence on the date/time
printed hereon, and was duly** RECORDED **in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX

APP000049