# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON CARNEGIE DEVELOPMENT, LLC WALL007, LLC WALL009, LLC WALL010, LLC WALL011, LLC WALL012, LLC WALL016, LLC WALL017, LLC WALL018, LLC WALL019, LLC HAOQIANG FU (a/k/a MICHAEL FU) STEPHEN T. WALL | § § § § § § § § § § § § § § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC LDG001, LLC | § § § | |
| *Relief Defendants.* | § | |

## DEFENDANT BARTON'S REPLY IN SUPPORT OF
## MOTION FOR STAY PENDING APPEAL

Defendant Timothy L. Barton files this Reply in support of his Motion for Stay Pending

Appeal [ECF No. 71] ("Motion"), as follows.

Neither the SEC nor the Receiver makes a meaningful case that binding Fifth Circuit precedent for imposing a prejudgment receiver was followed here.[1]  Indeed, they fail entirely to address the principal purpose of any pre-judgment receivership—to preserve and secure property at risk of imminent asset flight.  Receiverships are for Ponzi schemes and other situations where assets, potentially needed to compensate alleged victims, are headed for the ends of the Earth. That is not this case.  From the beginning, the SEC said this was a complex real estate development business, where assets had been plunged into projects largely in the Dallas area.

Instead, the Court receives a series of personal opinions from the receiver that some of Mr. Barton's businesses had been poorly run before the receiver arrived.  This is backed by an anecdote of overdue bills at a hotel, just one of the dozens of properties held by the receivership entities.

Of course, allegations of poor management are no basis for taking a person's property away, prior to any adjudication of liability.  Instead, prejudgment receiverships are "drastic . . . remedies," to be imposed where there is no "less drastic alternative" that would "protect a party's interest in property" faced with a danger of asset flight. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305-06 (5th Cir. 2012).  None of that has been shown here.

Instead, Mr. Barton has been removed from managing valuable real estate projects in favor of a receiver that is apparently overwhelmed with a business endeavor of this complexity.

---

[1] The Receiver makes a passing claim that "no appellate jurisdiction exists" over the orders throwing 130 additional entities into receivership and providing for additional tools to the receiver. Receiver Opp. at 1 n.1. That is incorrect. Both are properly on appeal because they clarify either the procedures and terms of the initial Receivership Order or expressly impose receivership authority over several corporate entities. *See* ECF No. 62 at 3 (supplementing Receivership Order "nunc pro tunc"); ECF No. 47 at 2 (seeking order to ensure that the Receiver "conducts the Receivership in accordance with the Court's instructions").

Nor is it any answer that the Securities Exchange Commission has alleged fraud. The SEC faults Mr. Barton—a defendant in a parallel criminal case—for not completely telegraphing his defense, on pain of losing all his property, even his personal residence and belongings.  That is not the way the justice system works.  It is the Government's job to prove its allegations.   The Government may not punish first and prove later. Yet the purpose to punish has been incorporated into the Receivership Order, and the SEC does not attempt to defend that stated goal. *See* SEC Opp. at 6 n.4.  That is why the Fifth Circuit requires more than allegations of fraud before imposing the drastic remedy of a prejudgment receivership.

In addition, the irreparable harm to Mr. Barton is clear, as the Receiver has chosen as his first order of business to remove him from his personal residence and auction off his personal belongings.  The SEC does not even attempt to defend this particular aspect of the Receiver's work, instead repeating over and over again that the Receivership is justified because it does not reach Mr. Barton's personal assets and affairs, but instead is solely about his real estate development business.  In any event, Mr. Barton clearly suffers harm from the seizure of his business that has survived every real estate cycle for the last 30 years.  Projects will suffer and apparently be liquidated before anyone has proven Mr. Barton engaged in wrongdoing.

## A.  Mr. Barton is likely to succeed on the merits

The SEC fails meaningfully to address core assertions of error in the Receivership order: By failing to seek a receivership as relief ancillary to preliminary injunctive relief, as the Commission did in the other cases it relies upon, the *Netsphere* test applies. And the Court's appointment of a receiver, absent satisfaction of the *Netsphere* standard, was error. The SEC's arguments also fail to reconcile with clear precedent establishing that it is the movant's burden to

show that non-party assets include property subject to the underlying dispute before they are placed into receivership, not the defendant's job to prove that they are not.

    **1.**    **The SEC continues to misapprehend the applicable test and its conclusory arguments as to the applicable legal standard are unavailing**

The SEC does not dispute that it sought a receivership only as a form of "ancillary relief." . SEC Mot. at 4. By definition, The receiverships must be "supplementary" or "subordinate" to other relief. Ancillary, BLACK'S LAW DICTIONARY (11th ed. 2019). While there are many forms of ancillary relief, the SEC has only shown that an ancillary receivership is proper to aid a concurrently imposed injunction. *See SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 431 (5th Cir. 1981) (considering an "appeal from district court orders granting a preliminary injunction and appointing a receiver"); *SEC v. Evolution Cap. Advisors, LLC*, 866 F. Supp. 2d 661, 664 (S.D. Tex. 2011) (considering simultaneous "motions for preliminary and permanent injunction, asset freeze, and appointment of a receiver"); *SEC v. AmeriFirst Funding, Inc.*, No. CIV A 307-CV-1188-D, 2007 WL 2192632, at *1 (N.D. Tex. July 31, 2007) (considering a motion for "a preliminary injunction and other equitable relief, including . . . receivership"); *SEC v. Harris*, No. 3:09-CV-1809-B, 2010 WL 11617972, at *4 (N.D. Tex. June 24, 2010) (simultaneously imposing an injunction and a receivership).

The SEC cites no case ordering a receivership independent of preliminary injunctive relief. The best it can muster is an out-of-circuit case that only granted a far less drastic equitable remedy: a 30-day asset freeze that only required the defendants to maintain certain levels of liquid funds, but otherwise allowed them to invest their assets "as they s[aw] fit." *SEC v. Unifund SAL*, 910 F.2d 1028, 1042-43 (2d Cir. 1990). That is a far cry from what the SEC sought and obtained here: A receivership that has ousted not only Mr. Barton, but all officers, managers, employees, and other agents from the Receivership Entities, placed those entities

under the Court's control indefinitely, and provides for liquidation of those entities. In fact, if the Court were to apply *Unifund*, it would impose a lesser remedy than a receivership—exactly as Mr. Barton argued should occur from the outset. *See* Barton's Resp. [ECF No. 24] at 25-26.

Because the receivership in this case is not ancillary to a preliminary injunction, binding Fifth Circuit precedent holds it may only be imposed if "there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). Despite the SEC's unsupported suggestions to the contrary, the *Netsphere* standard applies in SEC cases. *See SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *3 (N.D. Tex. Sept. 12, 2018) (demanding satisfaction of the *Netsphere* test before imposing a receivership sought by the SEC).

The SEC does not argue with any specificity that it met the *Netsphere* standard. For the most part, the SEC faults Mr. Barton for "submit[ing] no evidence" to dispute the SEC's allegations that lenders were defrauded. SEC Opp. at 1. But the government obtained a stay of this case, insulating the SEC from discovery, before it disclosed its evidence (or even the expert work papers underlying the Hahn declaration on which the SEC relied to obtain this receivership in the first place). At this point, the "live" case is the parallel criminal prosecution. Against this backdrop, the SEC's position is that a criminal defendant must accelerate his defense to charges—before any disclosure of the government's evidence—or the Court will take his businesses and seize his property. And, to do so, Mr. Barton would be pressed to submit his own counter-affidavits and likely waive Fifth Amendment protections. That is not the law, and it is inconsistent with the bedrock principle that the government has to meet its burden of proof before depriving a citizen of property.

-4-

Of course, the mere allegation of fraud is not sufficient to obtain a prejudgment receiver. Instead, the SEC must show that there is "clear necessity," no less drastic remedy, and the benefits outweigh the burdens of a receivership. *Netsphere*, 703 F.3d at 305. The SEC fails to make each showing. There is no allegation, much less proof, of asset flight. *See First Fin. Grp.*, 645 F.2d at 439 (ordering a receiver where "the nature of the assets (cash and securities) [was] such that they may be easily disposed, concealed, or dissipated"). The only claim is that a family of companies moved money amongst themselves and invested in items such as real estate, which is not going anywhere. Moreover, less drastic remedies—including the court-appointed monitor Mr. Barton proposed—could protect assets located within these companies while allowing their experienced managers to continue developing properties. Even the cases that the SEC cites support imposing a less drastic form of relief here. SEC Opp. at 4 (citing *Unifund*, 910 F.2d at 1042-43).[2]

2.      **Fifth Circuit precedent requires the party seeking receivership to trace funds to a non-party entity before that entity can be placed into receivership**

The SEC conflates several legal concepts in its attempt to distinguish Fifth Circuit precedent requiring a movant seeking receivership over non-parties to trace the property at issue in the underlying dispute to those non-parties. Any time a movant seeks to join a non-party to a lawsuit "to aid the recovery of relief," notwithstanding that the non-party "has no ownership interest in the property that is the subject of the litigation," that non-party becomes a "relief

---

[2] The opening premise of the SEC's request for a receivership was that there were tens of millions in net assets available in these companies to compensate allegedly harmed lenders. SEC App. to Expedited Mot. for Appointment of Receiver [ECF No. 7-1] at 17. The Receiver now begins to make a case that he is the last line of defense between the Barton entities and global insolvency. Receiver Opp. at 7-8. But he provides no meaningful support for that conclusion. He shares an anecdote about a hotel missing some bill payments. *Id*. at 7. And he says that a sale of three apartment complexes may not yields tens of millions in net proceeds, because a lender on that project is making an argument (with which the Receiver disagrees) that he has a right to convert his debt into an equity position. *Id*. at 5-7

defendant." *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). That is exactly what happened here. The Court placed more than 130 entities into receivership. But, absent a showing that these entities "received ill-gotten funds" and that they "do[] not have a legitimate claim to those funds," the Court could not "order equitable relief against" them. *Janvey*, 588 F.3d at 834. *Janvey* does not, as the SEC intimates, distinguish between different types of relief defendants or contain a carveout for relief-defendant entities that are not being sued, but are owned by someone who is. *Compare* SEC Opp. at 7 (attempting to distinguish along those lines) *with Janvey*, 588 F.3d at 834 (containing no basis for that distinction); *see also Netsphere*, 703 F.3d at 310 (refusing to impose receivership over entities "owned or controlled by" the defendant). And mechanical invocation of the "broad discretion" district courts enjoy in fashioning equitable relief does not permit complete disregard for *Janvey*'s tracing requirement. *See* SEC Opp. at 7. Instead, the Fifth Circuit's demand is straightforward: to obtain equitable relief against a relief defendant, a movant must show that it has received ill-gotten funds to which it has no legitimate claim.

Neither may the Court ignore *Janvey* because the Receiver is having difficulty tracing lender funds. *Janvey* places the burden on the Government to trace the funds at issue to a relief defendant before imposing equitable relief. *Janvey*, 588 F.3d at 834. While the SEC cites *FDIC v. Faulkner*, 991 F.2d 262, 267-68 (5th Cir. 1993), for the proposition that assets can be frozen pending a tracing analysis, that case is inapposite. SEC Opp. at 8. That FDIC case does not apply here because it involved an injunction to secure legal relief under the "Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990"—rather than imposition of equitable relief under the Exchange Act in the absence of an injunction.  Thus, the persistent and fatal problem with the SEC's arguments is that they continue to invoke inapposite injunction-

based case law, such as the FDIC case, when no preliminary injunction exists here. This Court's non-application of *Janvey* was therefore an abuse of discretion.

**B. Neither the SEC nor the Receiver has rebutted Mr. Barton's arguments that he will suffer irreparable harm in the absence of a stay**

Both oppositions to the Motion fail to rebut Mr. Barton's arguments that he will suffer irreparable harm absent a stay. As an initial matter, both oppositions ignore Mr. Barton's argument that his attorney-client privilege will be violated. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) ("[A]n adverse party's review of privileged materials seriously injures the privilege holder."). These privilege concerns present a material risk of irreparable harm in the absence of a stay, as no protocol is in place to prevent to the Receiver from digesting privileged communications and sharing either them or conclusions derived from them with Government attorneys. *See* Order Appointing Receiver [ECF No. 29] at 23 (requiring Receiver to "provide the SEC with any documentation that the SEC deems necessary").

In addition, the Receiver has cut off Mr. Barton's access to documents necessary to defend the pending criminal case against him, present in his principal place of business. Perhaps understanding the dangers inherent in shredding documents based on the Receiver's judgment as to whether they will be relevant to Mr. Barton's defense, not Mr. Barton's judgment, the Receiver has committed to not shred documents "until further order of the Court." Receiver Opp. at 13. One thing is clear: No party is now contesting that the Court should stay that aspect of its orders permitting the destruction of documents.

The SEC's arguments that Mr. Barton will not be irreparably harmed are also misplaced. First, the SEC's main point is that it abstained from placing Mr. Barton, individually, into receivership, that is only focused on his real estate development businesses, so he personally is

not harmed.  *See* SEC Opp. at 2, 8, 9 n.5.  That claim is hard to square with the Receiver's eviction of Mr. Barton from his personal residence and plans to sell his personal property, including the "couches, tables, chairs, bed frames, televisions, dishes, other kitchen items, and assorted other pieces of furniture and decorations" from his personal residence.  Notice of Intended Sale [ECF No. 89] at 2.  Mr. Barton will also suffer irreparable harm when he is deprived of his interests in real property, to say nothing of the businesses he spent over 30 years to build (often working with large, high-profile partners in the industry). *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that a church established irreparable harm where it would lose its lease on property).  The Receiver is presently attempting to liquidate real properties in which Mr. Barton retains an interest, whether as the direct owner or a beneficial holder of the corporate entities that do own them. As the Fifth Circuit held in *Opulent Life*, deprivation of any interest in real property is irreparable harm, even a leasehold. *Id*.

C.  **Neither the Receiver nor the SEC will suffer substantial injury in the event of a stay**

The Receiver and the SEC both contend they will be injured if a stay is granted.  These arguments are premised on assertions such as that "the Receiver is struggling to keep the lights on," SEC Opp. 9, there is a "dearth of cash available," Receiver Opp. at 3, and "chaos" would ensue "in terms of the Receiver's ability to recover, monetize or manage non-real estate assets." *Id*. at 5.  The Receiver separately complains that his involvement in the receivership estate has been rife with disputes and is time-intensive and difficult to manage. Receiver Opp. at 4, 7, 10, 14-15. In short, the Receiver is having trouble getting up to speed and managing what is, by all accounts, a complex business. This is more an argument that the Receiver is causing harm than anything else.

-8-

The SEC and the Receiver are also wrong that "substantial asset value will be lost" if the receivership is stayed. SEC Opp. at 10. Neither the SEC nor the Receiver provides any sort of accounting of the estate to support anecdotal arguments that the estate's substantial equity value may be at risk. *See also* Receiver App. at 16 (reflecting over $53 million in net equity). Since the Receiver's appointment, the biggest drain on the estate's viability is the existence of the Receiver himself. In addition to not having relevant real estate development experience, the Receiver has retained a team of attorneys and other professionals who must get up to speed on these businesses and engage in other costly endeavors unique to the receivership. None of these burdens existed when Mr. Barton was in charge. Importantly, the Court declined to appoint the SEC's recommendation for a receiver—David Wallace—who had experience running a complex real estate development businesses. Replacement of the Receiver with a real estate development professional—whether Mr. Barton or not—will ensure proper management and preservation of remaining assets.

Any concerns about asset loss can be mitigated by appointing a Court-controlled monitor to oversee the activities of the Barton entities and to ensure that the entities transfer no assets without prior approval. Indeed, Mr. Barton has been agreeable to the appointment of a monitor for months.

Finally, if the SEC had any legitimate concern about harm to its mission or asset loss, it would have sought a receivership at some point during its two-year investigation of Mr. Barton. *See* Order Directing Private Investigation (Barton Opp. to SEC Receivership Mot. App. [ECF No. 25] at 006) (October 8, 2020 notice of SEC investigation). Instead, it sought that relief just as a parallel criminal proceeding was initiated against Mr. Barton. *See* Wright & Miller 11A Fed.

Prac. & Proc. § 2946 (3d ed. 2022) ("[U]nnecessary delay . . . may be viewed as inconsistent with a claim that . . . that there is an urgent need for immediate relief.").

D. **The public interest supports a stay**

Neither opposition attempts to rebut Mr. Barton's arguments that the public interest favors a stay in the service of government compliance with the law, protection of constitutional rights, and preserving judicial resources. *See* Mot. at 19. And the SEC's offhand remark that the public interest is served because "Barton's fraud has now been exposed" is not only false but also inapposite. SEC Opp. at 11. If the SEC's assertions were somehow true, the public interest would be satisfied by the mere fact that the SEC has filed a complaint. However, that is not the law, and the public interest is best served by a stay that ensures the government is complying with the law by making a proper showing before obtaining a prejudgment receivership.

Dated: December  13, 2022

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to N.D. Tex.*)
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
Javan Porter
State Bar No. 24116912
javan.porter@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

-11-

-12-

## <u>CERTIFICATE OF SERVICE</u>

On December 13, 2022 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney
