**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff*, | § § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON,** | § § | |
| **CARNEGIE DEVELOPMENT, LLC,** | § | |
| **WALL007, LLC,** | § | |
| **WALL009, LLC,** | § | |
| **WALL010, LLC,** | § | |
| **WALL011, LLC,** | § | |
| **WALL012, LLC,** | § | |
| **WALL016, LLC,** | § | |
| **WALL017, LLC,** | § | |
| **WALL018, LLC,** | § | |
| **WALL019, LLC,** | § | |
| **HAOQIANG FU (A/K/A MICHAEL FU),** | § | |
| **STEPHEN T. WALL,** | § § | |
| *Defendants*, | § § | |
| **DJD LAND PARTNERS, LLC, and** | § | |
| **LDG001, LLC,** | § § | |
| *Relief Defendants*. | § | |

**RECEIVER'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT OF
APPRAISERS, APPROVAL OF APPRAISALS OF ROCK CREEK PROPERTY, ETC.
AND RESPONSE TO MOTION TO PROHIBIT SALE OF PERSONAL ITEMS**

Cort Thomas, as Receiver, files this Reply in Support of his Motion for Appointment of

Appraisers, etc. (the "Motion") [Dkt. 76], addressing arguments raised in the Response to the

Motion (the "Response") [Dkt. 91] and in support, respectfully shows the Court as follows:

**SUMMARY**

In a continued effort to regurgitate arguments that have already been rejected or refuted,

Barton's Response ignores evidence, prior briefing, and this Court's Orders, but provides no

evidence or justification for rejecting the sale at issue.  To minimize the continuing burden on the estate created by responding to extraneous and incorrect arguments, this Reply addresses only those arguments (1) that have not already been adequately addressed; and (2) which are necessary to the Court's resolution of the pending motion.

**A.    The Court Possesses Continuing Jurisdiction to Oversee and Administer the Receivership**

Barton contends the Receiver "lacks *appropriate* authority" to sell the Rock Creek Property and by extension, that the Court lacks authority to authorize the sale. *Response* pp. 3-4. His arguments ignore the authorities cited by the Receiver on pages 8-9 of the Response to Barton's Motion to Stay ("Response to Motion for Stay") [Dkt. 84], and misconstrue the authorities on which Barton relies.  *Response* p. 4.  *Compare SEC v. Am. Bd. Of Trade, Inc.*, 830 F.2d 431, 436-37 (2d Cir. 1987) (criticizing receiver's liquidation because of the Second Circuit's well-publicized strong preference for bankruptcy proceedings); *SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) (concluding liquidation of an entire company was premature, but without any discussion of distressed assets in a receivership estate strapped for cash necessary to maintain the value of other assets); *with FTC v. Consumer Defense, LLC*, No. 2:18-CV-30 JCM (PAL), 2019 WL 266287, at *4 (D. Nev. Jan. 18, 2019) (authorizing receiver's sale before entry of final judgment where "the properties [under receivership] are likely to incur further obligations, such as common assessments and property taxes, that will unnecessarily diminish the value of the estate"); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) (similar).

Similarly, in seeking to obtain the automatic stay Rule 62(c) expressly denies[1] and which this Court has likewise not granted despite Barton' pending Motion for Stay [Dkt. 71] Barton contends this Court is divested of jurisdiction to manage the Receivership Estate while he appeals the Receivership Order. *Response* p. 5.  In support of his argument, Barton cites *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) and includes a partial and misleading quote from that case.  The full quote amplifies that case's application to interlocutory appeals of *injunctions*:

> Having reviewed the existing case law throughout the circuits and paying proper respect to Rule 62(c),we are persuaded that the powers of the district court *over an injunction* pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is before us on appeal.

*Id.* (emphasis added).

A receivership order, however, is not an injunction nor is it intended solely to maintain the status quo.  Instead, it mandates the Receiver's ongoing activity in administering the estate and by extension requires the Court's on-going supervision.  *See Receivership Order* ¶¶ 6, 13, 18, 28, 31, 37-45, 56-58.  Nor are orders appointing receivers and injunctions treated similarly for purposes of interlocutory appeal.  As recently observed by the Eleventh Circuit, the difference between 28 U.S.C. §§ 1292(a)(2) and 1292(a)(1) reveals the different treatment each receives and thus by necessity, also informs the reach of the resulting jurisdictional divestiture based on the appeal of either type of order:

> "That provision [1292(a)(1)] more broadly confers jurisdiction over orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.' 28 U.S.C. § 1292(a)(1). It thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review

---

[1]**"Stay of an Injunction, Receivership, or Patent Accounting Order.** Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: **(1)** an interlocutory or final judgment in an action for an injunction or receivership; . . ." FED. R. CIV. P. 62.

of interim receivership-related orders, it could have included similar language in §
1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022).

A district court's expansive judicial discretion in overseeing a receivership also informs the different treatment afforded interlocutory appeals of injunctions as compared with receivership orders. *See Netsphere, Inc. v. Baron*, 799 F.3d 327 (5th Cir. 2015) ("We have also refused to find jurisdiction over other orders issued in the course of a receivership . . . . So have our sister circuits."); *see also United States v. Solco I, LLC*, 962 F.3d 1244, 1250 (10th Cir. 2020) ("Congress, however, did not intend § 1292(a)(2) to burden the appellate courts with ongoing supervision of every action a receiver might be ordered to take.") (internal quotation and alteration omitted); *SEC v. Enterprise Trust Co.*, 559 F.3d 649, 652 (7th Cir. 2009) (discussing district court's broad judicial discretion to manage a complex receivership and determine the appropriate path to take in addressing and resolving claims against the assets of the estate, in accordance with due process and judicial economy).[2]

In contrast, if this Court were automatically divested of jurisdiction to enter orders administering the Receivership, Rule 62(c) would have no meaning and litigants would automatically evade the carefully circumscribed interlocutory appellate review of only (1) orders appointing receivers, (2) refusing to wind up a receivership, and (3) refusing to take steps to accomplish the purpose of winding up a receivership, by staying *every* order necessary to

---

[2] Indeed, at least one district court concluded it possessed jurisdiction to sell receivership assets, even residences into which defendants and their non-defendant relatives injected "sentimental value" despite ownership held by entities, during the pendency of an appeal. *United States v. Bradley*, 513 F. Supp. 2d 1371, 1380 (S.D. Ga. 2007), *objections overruled*, No. 405CR059, 2007 WL 1703232 (S.D. Ga. June 11, 2007) (denying stay of sale of non-exempt real property during appeal of final judgment, despite "injection of sentimentality" by defendant's wife, who was not convicted of any crime, into the residence owned by corporate entity).

administer a receivership during an appeal of the Receivership Order. *See Solco, I, LLC,* 962 F.3d at 1250. Common sense and statutory interpretation demand a contrary conclusion.

Despite the interlocutory appeal,[3] this Court possesses continuing jurisdiction to administer the receivership estate and to thus to enter orders in furtherance of that necessary activity, including approval of sales. *See SEC v. Lauer*, No. 03-80612-CIV, 2015 WL 11005004, at *2 (S.D. Fla. Nov. 25, 2015) ("A notice of appeal [involving asset freeze, venue, disgorgement and other matters] does not, however, divest the district court of jurisdiction over other aspects of the case, such as administration of the Receivership estate, a matter that is not related to or does not affect the issues on appeal."); *see also, e.g., SEC v. Ahmed*, 2020 WL 5951484 * 2, No. 3:15CV675 (D. Conn. Oct. 8, 2020) (declining to stay motion to approve award of receiver's fees pending appeal of receivership order).

**B.   Selling the Rock Creek Property, Immediately, Is in the Best Interest of the Estate and Preserves the Equity that Currently Exists in the Property**

Despite Barton's protests to the contrary, selling the Rock Creek Property sooner rather than later serves the best interest of the estate. As the Court is surely aware (and can judicially notice) during 2022, and particularly the summer and fall of 2022, interest rates have risen.[4] That trend, and perhaps other issues as well, have slowed sales and the climbing value of real estate in North Texas and elsewhere.[5] This shrinking market is only compounded by the growing lien on the Rock Creek Property that will eventually eat any equity in the property (the interest-only loan

---

[3] Again, no appellate jurisdiction exists over any order save the Order Appointing Receiver. *See Complete Bus. Sols. Group, Inc.*, 44 F.4th at 1332 (concluding no jurisdiction existed over interlocutory appeal of order expanding scope of receivership to include additional entities).

[4] https://time.com/nextadvisor/banking/fed-meeting-interest-rate-hike-december-14-2022/#:~:text=The%20Federal%20Reserve%20just%20raised,consecutive%20rate%20hike%20for%202022.

[5] *See* https://www.wfaa.com/article/money/business/dfw-home-sales-down-14-price-growth-slowing/287-e47ee01e-fadf-4c2a-b43c-d91de91d1eea.

on the property has an interest rate of approximately 10%, which the lender claims is now 18% because of non-payment of interest prior to the Receivership, which non-payment has continued because of the limited amount of cash on hand). Further draining receivership assets are payments of insurance, utilities, and other expenses related to the Rock Creek Property.  Barton ignores these facts.  He also ignores his refusal to provide information necessary for the Receiver to identify and sell other assets, and the fact that *he had listed the property for sale immediately before the Receiver's appointment.  Response to Motion for Stay,* Dkt. 84, pp. 7-9.

Similarly, Barton's contention that a net recovery of $100,000 to $200,000 "will not materially advance" the needs of the receivership estate or is akin to "squeezing pennies" is misguided.  For one, as outlined extensively in prior briefing, upon appointment and continuing to this day, the Receiver has faced a dearth of cash that forced him to selectively pay utility, insurance, and other payments on the various properties within the Receivership.  While the Receiver hopes to secure additional funds in the near future (e.g., a forthcoming motion to ratify a $750,000 agreement), past and continuing bills as well as the other ongoing costs of administering the Receivership Estate necessitate the Receiver's exploration of all potential sources of capital.  The fact that a residential property is simpler and quicker to sell than commercial properties is not indicative of bias, rather it demonstrates the Receiver's continued efforts to most expeditiously bring cash into the estate.

Barton's efforts to minimize the net result of this sale may also rest on his false assertion that just a few of the heavily encumbered assets in the estate will suffice to reimburse defrauded investors and dozens of creditors, including those who hold multi-million dollar judgments against him and receivership entities.  *See Response to Motion for Stay*, Dkt. 84, pp. 5-6.  On the contrary, the net recovery from the sale of the Rock Creek Property will allow the estate to pay for continuing

expenses necessary to maintain and administer other properties whose value cannot be preserved absent cash and the Receiver's efforts. *Appendix in Support of Motion*, Dkt. 77, ¶ 12.

Finally, while Barton now contends the Receiver should have sought permission to rent the property to Barton, he provides no evidence that (1) Barton made a bona fide offer to rent the property or would have agreed to such a proposal; (2) Barton would not have continued moving art and other assets out of the property while occupying it; (3) that the source of funds to pay such rent would not have come from the substantial transfers out of the Receivership Entities' bank accounts in the months leading up to the Receivership; or (4) that *monthly* rent in an amount far less than the $100,000-$200,000 Barton derides as minimal would meet the $11,750 in monthly interest payments due under the loan, let alone alleviate the need for cash sufficient to pay the estate's continuing and significant obligations.

The sale of the Rock Creek Property, immediately and on the terms submitted with the Motion, is in the best interest of the Receivership Estate.

**C.      The Sales Price Of $1.4 Million Is Reasonable And Statutorily Sufficient**

Barton's attacks upon the legitimacy of the three independent appraisals secured by the Receiver are similarly unavailing. *See Response* pp. 8-12. First, 28 U.S.C.§ 2001 merely mandates that the Court "shall appoint three disinterested persons to appraise" the Rock Creek Property. Barton makes no attempt to attack the independence of these appraisers, nor does he seek to attack their qualifications. The three appraisers are qualified, respected members of their profession, and the Court should accept their appraisals accordingly.

Second, while Barton goes to great lengths to question certain portions of the appraisals, he offers no competing, current appraisal(s) of his own. Instead, he references an appraisal dated June 1, 2022 that the Receiver has already pointed out employees a cost or replacement approach, rather than a market or sales comparison approach. *See* Motion ¶ 10 & n.6. However, even if the

Court were to determine this other appraisal and its valuation methodology were appropriate, the sales price of $1.4 million still exceeds the two-thirds threshold of Barton's own appraisal, and the sale would still be confirmable under 28 U.S.C. § 2001.

Third, Barton wholly ignores the fact that the Receiver engaged in standard marketing process with a well-known local broker and, while he received multiple offers during the time the property was on the market, the sales price of $1.4 million was the high bid. In other words, the market itself has confirmed the legitimacy and accuracy of the Receiver's own appraisers.

Fourth, rather than secure his own current appraisal(s) based upon comparable sales, Barton instead cites to the list price of three properties he believes are better comparables to the Rock Creek Property. Besides the fact that Barton and his lawyers make no attempt to demonstrate how they are qualified to opine as an appraiser, their arguments ignore, among other things, that (a) they are looking at list prices, not sales prices; (b) that the two properties currently listed for sale have been on the market for five and six months, respectively; (c) that all comparable sales were from the last twelve months and are not "outdated;" and (d) that a simple review of the photos from each property compared to those of the Rock Creek Property show a large disparity in the quality and attractiveness of the properties.

In short, while Barton contends that the Receiver is selling the Rock Creek Property "for less than market value," the Receiver is in fact selling the property for more than its average appraised value and at a price supported by the offers received from prospective buyers. The Court should approve the sale.

**D.    Disposition Of Personal Property Is Necessary the Before the December 28 Closing**

On December 13, 2022, as required by 28 U.S.C. § 2004 and the Order Governing Administrative Procedures, ("Administrative Order") Dkt. 63, the Receiver filed a Notice of Intended Sale of Personal Property, regarding sale of the Furnishings of the Rock Creek Property.

Dkt. 89. Barton's Response includes a cross-motion to stay the sale of the furnishings in the Rock Creek Property (the "Furnishings"), which the Court should treat as an objection contemplated by the Administrative Order. Dkt. 63, ¶ A.4.c.

As expressly stated in the Notice and contrary to Barton's assertions, the contract for sale of the real estate does not encompass sale of the Furnishings. Dkt. 89, p. 2 ("The Furnishings and Personal Items are not included in the Rock Creek Property sale and must be removed or sold prior to closing the sale."). Nor does the sale of the Furnishings encompass certain "personal items" such as clothing, books, and mattresses. *Id.* The Declaration submitted in support of the Response to Motion For Stay, (the "Declaration") Dkt. 85, also demonstrates the Receiver's uncontroverted discovery that the majority of the contents were purchased within the last two years *by a Receivership Entity.* Dkt. 85, pp. 6-7.

As discussed in the Notice and the Declaration, the Receiver has offered multiple times and in multiple ways to preserve the Furnishings and the Personal Items for Barton and his adult children. Dkt. 85, pp. 6-7. But Barton offers absolutely no response to those proposals, including any evidence or indeed any argument, that Barton or his adult children rather than a Receivership Entity purchased these items, instead asking the Court to presume that these are his "personal belongings" because they are located in a property Barton treated as his personal residence but which was owned by a Receivership Entity. *Response*, p. 13.

While the sale of the Furnishings will net only $20,000—a significant amount when considering the amount of cash in the Receivership's bank accounts today—the items must be removed from the property before the December 28, 2022 closing on the real estate. The proposed sale accomplishes removal in the most efficient manner while also benefiting the estate. The Court should overrule the objection and motion to stay sale of the Furnishings.

## CONCLUSION

Barton's Response provides no basis for rejection of a sale that will provide desperately needed cash for the continuing maintenance and management of other Receivership Properties. The Court possesses jurisdiction to approve the sale, the cash-poor condition of the Receivership Estate informs the timing of the sale, rather than any alleged personal attack or improper scheme, and the sales price is reasonable and well-within the statutorily required 2/3 of the average appraised value of the property. The Court should appoint the three appraisers whose appraisals were submitted with the Motion, approve the appraisals, and following the statutorily mandated hearing, approve the sale of the Rock Creek Property.

Finally, Barton's complaints about sale of the Furnishings have no merit, particularly given Barton's failure and refusal to provide *any* evidence, indeed even argument, that he rather than a Receivership Entity purchased the Furnishings, and, his refusal to even discuss an agreement regarding temporary storage of the Furnishings.  The Court should deny Barton's motion to stay the sale of the Furnishings and confirm that sale as well.

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
 State Bar No. 11672850
 charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

10

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.