**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

**RECEIVER'S VERIFIED RESPONSE TO HNGH TURTLE CREEK, LLC'S MOTION
TO INTERVENE AND CONFIRM OWNERSHIP OF CERTAIN PROPERTY**

Cort Thomas, as Receiver, responds to HNGH Turtle Creek, LLC's Motion to Intervene

and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard and (the

"Motion") [Dkt. 69], and in support, respectfully shows the Court as follows:

**SUMMARY**

While the Receiver does not oppose HNGH's intervention, the Court should reject

HNGH's effort to disregard the Court's Stay of Litigation, seek priority treatment, and force

1

immediate resolution of stayed litigation.  HNGH's disputed ownership interest in certain property—which is the subject of a pending and stayed appeal—hardly warrants the special treatment sought by HNGH, particularly given the absence of any evidence that the Property is declining in value and HNGH's failure to provide documents and information requested by the Receiver.  HNGH raises absolutely no reason, factual or legal, supporting its request that the Court immediately resolve disputed ownership over the subject property, and its Motion to confirm ownership should be denied.

### BACKGROUND

1.      Following the SEC's motion, the Court determined that appointing a Receiver was necessary and appropriate and accordingly, on October 18, 2022, entered the Receivership Order pursuant to which the Court assumed exclusive possession and jurisdiction over certain entities and their assets, described in paragraph 1 of the Receivership Order as:

> "1.      … the assets, of whatever kind and wherever situated, including all tangible and intangible property, of Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, Wall019, LLC, Carnegie Development, LLC, DJD Land Partners, LLC, LDG001, LLC, and any other entities that Defendant Timothy Barton directly or indirectly controls, including, but not limited to, the following Barton-controlled entities that received investor funds, real property interests purchased with investor funds, or own property interests that were improved with or otherwise have benefited from the use of investor funds: BM318 LLC; D4DS LLC; D4FR LLC; D4KL LLC; Enoch Investments LLC; FHC Acquisition LLC; Goldmark Hospitality LLC; JMJ Acquisitions LLC; JMJ Development LLC; JMJAV LLC; JMR100 LLC; Lajolla Construction Management LLC; Mansions Apartment Homes at Marine Creek LLC; MO 2999TC, LLC; Orchard Farms Village LLC; Villita Towers LLC; and 126 Villita LLC (collectively, 'Receivership Entities'). The assets of these Receivership Entities are referenced below as 'Receivership Assets.'" *Receivership Order* ¶ 1.

2.      On November 16, 2022, the Court Supplemented the Receivership Order by identifying an additional 126 entities that fall within the scope of the Order as entities "that Defendant Timothy Barton directly or indirectly controls," including 2999TC Acquisitions, LLC

fka 2999TC, LLC ("2999 TC Acquisitions"). Dkt. 62. 2999TC Acquisitions owns, subject to HNGH's dispute, certain property located at 2999 Turtle Creek Boulevard in Dallas (the "Turtle Creek Property"). Ownership of the Turtle Creek Property is the subject of an appeal pending in this Court, Cause No. 3:22-cv-02186-X (the "HNGH Proceeding"), filed before the Receivership Order was entered, and pursuant to which 2999TC Acquisitions challenged the Bankruptcy Order on which HNGH's claimed ownership rests.

3.      On the date the Receivership Order was entered, Barton, his employees, lawyers, and all Receivership Entities were occupying and officing at the Turtle Creek Property. JMJ Development's signage and branding was in the lobby of the building, and the Receiver was forced to negotiate with Barton's counsel to obtain entry into the premises. Utility services at the property were in JMJ's name, and property insurance purchased by JMJ was in place.[1]

4.      To conserve Receivership Assets, allow the Receiver time to perform more pressing tasks mandated by the Receivership Order, and preclude any one creditor from seeking an advantage or preference in treatment, a stay of litigation (the "Stay") is also included in the Receivership Order:

> 34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:
>
>> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for,

---

[1] That insurance coverage lapsed shortly after the Receiver's appointment because the estate had insufficient cash on hand to pay premiums on a renewal policy. The Receiver notified HNGH about the insurance issue and was informed that HNGH had obtained replacement coverage.

3

> or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").
>
> 35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

*Receivership Order*, ¶¶ 34-36.

5.    The protection provided by Stay is not hypothetical.  To date, not less than 36 proceedings are stayed (the "Stayed Cases"), including those that relate to ownership and control over the Turtle Creek Property.  Litigants in the stayed cases have reached out to the Receiver or his counsel on a near daily basis, requesting agreement to lift the Stay so they can proceed with the lawsuits against Receivership Entities, Tim Barton, and in several instances, Barton's counsel.[2] While working diligently to identify and understand the Receivership Entities' ownership interests in dozens of properties, the Receiver has also solicited detailed information regarding the background facts, status, and recommendations for disposition of these cases from the Receivership Entities' prior counsel.[3]  With respect to several of the Stayed Cases, the Receiver's counsel has participated in lengthy calls or meetings, again seeking information to formulate accurate valuations or strategies for disposition, and seeking to reassure opposing counsel that he intends to resolve each matter as expeditiously as possible.

6.    The Receiver has also informed *every single* attorney who has conferred about a motion to lift the Stay—many—that at this very early juncture, the request is premature at best and abusive at worst.  In at least four instances, the Receiver has warned aggressive or frustrated

---

[2] The plain language of the Stay demonstrates its reach to claims asserted against Barton and his attorneys. *Receivership Order* ¶ 34(d).

[3] More than a dozen different firms were representing various Receivership Entities in Stayed Cases.

opposing counsel that if he is forced to expend Receivership Assets responding to early motions to lift the Stay, he would also be forced to request sanctions as compensation for the Estate's expenses in so doing.

7.      In investigating the facts underlying the HNGH Proceeding, on November 4, 2022, the Receiver sent HNGH's counsel a detailed request for documents and information.  While HNGH has provided some of this information, as of date of this filing, however, HNGH still has failed to produce certain of those documents, including a "list of payments made by Borrower or Borrower's affiliates to HNGH and its predecessors/affiliates, as well as an identification of the purpose of the payment (i.e., interest, principal paydown, etc.), and copies of all checks or wire transfer documents evidencing such payments."  The Receiver is hopeful that once he has this information, he will be able to engage in meaningful discussions with HNGH to resolve any disputes with HNGH.

8.      Without addressing the Stay, or indeed, any of the factors that inform the Court's discretion to refuse to disturb the Stay's protection, HNGH asks this Court to disregard the pending appeal, the Stay, and all factors that at this very early juncture militate against lifting the Stay.

## **ARGUMENT**

Other than confidence in a judgment that is on appeal, HNGH provides absolutely no justification for the Court to lift the Stay and immediately resolve ownership in the Turtle Creek Property.

Litigation stays in receivership matters serve as an additional tool in furthering the goals of the receivership.  *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010).  The Stay is intended to protect receivership assets and defrauded investors, and serve "considerations of judicial economy." *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).  The Court's power with respect

to an anti-litigation stay is thus more broad than its power to grant injunctive relief pursuant to Rule 65. *Id.*

In deciding whether to lift such a stay, courts generally consider three factors,[4] which are intended to balance the interests of the Receiver and the moving party. *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Wencke,* 742 F.2d 1230, 1231 (9th Cir.1984) ("Wencke II"). The movant bears the burden of demonstrating that the balance of factors support lifting the stay. *SEC v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 5832330, at *2 (D. Conn. Nov. 16, 2012); *United States v. Petters,* No. 08–5348 ADA/SJM, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008).

HNGH fails to identify the relevant factors, let alone satisfy any, in impliedly seeking to lift the Stay and have the Court "confirm" what the pending appeal disputes. And indeed, the timing of the request alone demonstrates justification for denying HNGH's request. *See SEC v. Byers,* 592 F.Supp.2d 532, 537 (S.D.N.Y. 2008) *aff'd,* 609 F.3d 87 (2d Cir. 2010) (timing factor weighed in favor of receiver during early months and sometimes years in receivership where lifting stay could disrupt the receiver's mandate to discover, organize, and understand estate assets); *Acorn Tech. Fund, L.P.*, 429 F.3d at 443–44 ("Far into a receivership, if a litigant demonstrates that harm will result from not being able to pursue a colorable meritorious claim," a stay should be lifted, while, "[o]n the other hand, very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties."); *CPIF Lending, LLC v. Chestnut Hill HCP I, LLC*, No. CV 18-2049, 2020 WL 3642479, at *3 (E.D. Pa. July 6, 2020) ("Early in the receivership's existence, even meritorious claims may not warrant

---

[4] Those factors are: "(1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *S.E.C. v. Stanford Intern. Bank Ltd.*, 424 Fed. App'x. 338, 341 (5th Cir. 2011) (quoting Wencke II )).

lifting the stay, while claims made later—when the receiver has completed much of the work—are to be given more weight."). Although the timing consideration is fact-specific, denying relief from the stay for up to two-years does not demonstrate an abuse of discretion. *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1464, 1466 (D. Md. 1987) (motion to lift stayed denied where receivership was two years old, receivership entities were embroiled in "a great deal of litigation," receiver needed more time to analyze matters, and lifting stay would vitiate orderly administration of estate); *see also SEC v. Stanford Int'l Bank, Ltd., Inc.,* Civil Action No. 3:09–CV–0298–N (N.D. Tex. May 6, 2011) (lifting a stay when the receivership was "relatively young" at "just over two years old").

While the Receiver seeks to resolve the HNGH Proceeding quickly, as he does every other case that is stayed by the Receivership Order, he must be afforded time to accomplish other more pressing tasks first, and turn to each stayed case in turn. Further, lifting the Stay for HNGH, despite the pending appeal, invites similar motions by other creditors and the resulting expense to the Receivership Estate caused by responding to each such motion. HNGH fails to demonstrate entitlement to relief from the anti-litigation Stay and the Court should deny HNGH's motion to the extent it seeks any relief other than intervention.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## VERIFICATION

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.


*/s/ Cortney C. Thomas*
Cortney C. Thomas


## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

8