### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § | |

### RECEIVER'S VERIFIED MOTION TO RATIFY AGREEMENT
### WITH DLP CAPITAL AND OTHER DLP ENTITIES AND BRIEF IN SUPPORT

Cort Thomas, the Receiver appointed in the above-styled case, moves the Court for an

Order approving the Receiver's settlement agreement (the "Agreement") with DLP Real Estate

Capital, Inc. ("DLP Capital"); DLP Winter Haven Ventures, LLC ("DLP Winter Haven");

Orchard Farms Ventures, LLC ("Orchard Farms Ventures"); and Marine Creek Ventures, LLC

("Marine Creek Ventures") and collectively with DLP Capital, DLP Winter Haven, and Orchard

Farms Venture, the "DLP Entities") and would respectfully show the Court as follows:

1

## I.     INTRODUCTION

On October 18, 2022, the Court entered its Order Appointing Receiver [Dkt. 29] (the "Receivership Order"), which named Cort Thomas as Receiver for the Receivership Entities[1] and directed him to take custody, control, and possession of all Receivership Property.  Receivership Order ¶ 6(B).  The Receivership Order also directs the Receiver to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities."  Receivership Order ¶¶ 6(H), 6(J).  Finally, the Receivership Order gives the Receiver the ability, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.  *Id*. ¶ 39.

The instant Motion relates to the Receiver's efforts to compromise various contractual rights and obligations between various Receivership Entities and the DLP Entities.  While the express terms of the Receivership Order outlined above do not require the Receiver to obtain Court approval of these efforts, he nevertheless seeks the Court's ratification of the Agreement here because the DLP Entities have requested such ratification prior to making the payments outlined below and in the Agreement.

## II.     BACKGROUND

### A.     The DLP Transactions

Certain Receivership Entities and the DLP Entities entered into a series of transactions in late 2021:

---

[1] Capitalized terms used but not defined herein shall have the meanings provided in the Receivership Order.

2

First, on or about October 11, 2021, DLP Winter Haven acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity. The purchase price ($2,000,0000) and the developer fee ($2,200,000) were paid in full, and it appears that transaction was complete as of approximately May 2022 (collectively, the "Winter Haven Transaction").

Second, on or about December 22, 2021, Orchard Farms Ventures acquired approximately 100.223 acres that are generally located along Shelby Road, west of Rendon Road, in Fort Worth, Texas from Orchard Farms Village, LLC ("Orchard Farms Village"), a Receivership Entity. The purchase price ($7,856,500) was paid in full.  In addition to the sale of the real property, Orchard Farms Ventures engaged Orchard Farms Developments, LLC ("Orchard Farms Development"), a Receivership Entity, to provide certain development services (the "Orchard Farms Development Agreement").   Moreover, via a separate Participation Agreement dated December 30, 2021, Orchard Farms Ventures granted Orchard Farms Village a participation fee payable upon substantial completion or as otherwise accelerated (the "Orchard Farms Participation Agreement").  These agreements are collectively referred to herein as the "Orchard Farms Transaction."

Third, on or about December 23, 2021, Marine Creek Ventures acquired approximately 40.20 acres that are generally located at the intersection of Loop 820 and Huffines Boulevard in Fort Worth, Texas from Mansions Apartment Homes At Marine Creek, LLC ("Mansions"), a Receivership Entity. The purchase price ($10,000,000) was paid in full.  In addition to the sale of the real property, Marine Creek Ventures engaged Marine Creek Developments, LLC ("Marine Creek Development"), a Receivership Entity, to provide certain development services (the "Marine Creek Development Agreement").  Marine Creek Ventures also engaged La Jolla

3

Construction Management, LLC ("La Jolla"), another Receivership Entity, to provide construction management services (the "Marine Creek Construction Management Agreement"). Moreover, via a separate Participation Agreement signed in January 2022, Mansion Creek Ventures granted Marine Creek SP LLC a participation fee payable upon substantial completion or as otherwise accelerated (the "Marine Creek Participation Agreement"). These agreements are collectively referred to herein as the "Marine Creek Transaction."

The Winter Haven Transaction, the Orchard Farms Transaction, and the Marine Creek Transaction are collectively referred to herein as the "DLP Transactions."

### B.    Negotiations with the DLP Entities.

Shortly after receiving his appointment and in furtherance of the mandates in the Receivership Order, the Receiver began contacting various individuals and entities with ties to the Receivership Entities, including the DLP Entities. The Receiver quickly learned that, well in advance of the entry of the Receivership Order, Defendant Barton and the contractually-obligated Receivership Entities had become unresponsive and began defaulting on their ongoing obligations to the DLP Entities under the DLP Transactions. Indeed, on October 18, 2022, DLP sent letters to Orchard Farms Development, Marine Creek Development, and La Jolla that those Receivership Entities (i) were in breach under the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach.

On or about October 31, 2022, the Receiver met with counsel to the DLP Entities to discuss the Receivership Entities' pre-Receivership breaches of these agreements and whether continuation under the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement was feasible. The

4

parties agreed that termination of these agreements was necessary and further agreed that the DLP entities should proceed to mitigate their damages by engaging suitable replacement service providers.

After the October 31 meeting, the Parties engaged in protracted settlement discussions, with the exchange of multiple offers and counter-offers, before ultimately reaching an agreement in principle on or about December 6, 2022 regarding the terms under which the agreements would be terminated.  The Court, over Barton's objection, entered its Order Granting Receiver's Motion to Supplement Order Appointing Receiver [Dkt. 88] on December 13, 2022, which confirmed that Marine Creek SP, LLC is a Receivership Entity.

### III.    ARGUMENT

To avoid the expense and uncertainty of potential litigation, as well as the continuing damages and uncertainty surrounding the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement, the Receiver and the DLP Entities agreed to fully settle any claims each party has under the DLP Transactions by the DLP Entities paying to the Receiver the sum of $750,000 (the "Settlement Payment").  A true and correct copy of the Settlement Agreement between the Receiver and the DLP Entities is attached hereto Exhibit A.  Pursuant to the terms of the Settlement Agreement, the Settlement Payment will be made by the DLP Parties to the Receiver within fifteen (15) days after this Court ratifies the Agreement.

The Receiver believes the Agreement with the DLP Entities is in the best interest of the receivership because, among other things, the Agreement

(1) brings much needed capital into the Receivership Estate, which will enable the Receiver to continue managing the Receivership Assets in accordance with the Receivership Order;

(2) minimizes the amount of monetary damages owed to the DLP Entities as a result of the Receivership Entities' pre- and post-receivership breaches of the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement, which damages continued to accrue on a daily basis;

(3) similarly minimizes the attorneys' fees and expenses that would otherwise be incurred by the Receiver in pursuit or defense of any claims surrounding the DLP Transactions;

(4) avoids the uncertainty surrounding the value of the Receivership Entities' participation in the properties given (a) the current instability in the market and the economy at large, (b) the delays in construction on the properties, and (c) the varying amounts of debt on the properties;

(5) perhaps most importantly, maximizes the value received by the Receivership because (a) the Participation Agreements only entitle the Receivership Entities to a percentage of the "Achieved Increased Value" after the sale of the properties, (b) limited construction has occurred on the properties to date, and thus substantial increases in value have not yet occurred, (c) nevertheless, the DLP Entities have agreed to apply a valuation methodology that estimates what the value of the project will be upon stabilization and then discounts that value to present value, (d) one real estate consultant who advised the Receiver has indicated that the valuation methodology and execution of that methodology by DLP Capital were both reasonable, and yet (e) the Settlement Payment still greatly exceeds this discounted income capitalization approach; and

(6) reviewing the totality of the situation from a position of equity, the Participation Agreements appear to have been designed to reward Defendant Barton and the Receivership Entities for their efforts in developing and managing construction of the properties; however, such work did not occur in the past and cannot occur moving forward.

## IV.    CONCLUSION

In light of the foregoing, the Receiver respectfully requests that the Court enter an Order ratifying the Agreement with the DLP Entities and further grant the Receiver such other and further relief to which the Receiver may be justly entitled.

December 14, 2022                                    Respectfully submitted,

**RECEIVER CORTNEY C. THOMAS**

*/s/ Cortney C. Thomas*
Cortney C. Thomas
  State Bar No. 24075153
  cort@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

## <u>VERIFICATION</u>

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

7

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that on December 14, 2022, counsel for the Receiver conferred via email with counsel for Plaintiff and Defendants regarding the relief requested above. The SEC and Defendant Fu are unopposed. Counsel to Defendants Barton and Wall have not responded as of the filing of this Motion, and thus the Receiver assumes that they are opposed.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

8