IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON CARNEGIE DEVELOPMENT, LLC WALL007, LLC WALL009, LLC WALL010, LLC WALL011, LLC WALL012, LLC WALL016, LLC WALL017, LLC WALL018, LLC WALL019, LLC HAOQIANG FU (a/k/a MICHAEL FU) STEPHEN T. WALL | § § § § § § § § § § § § § § | Hearing Requested |
| *Defendants,* | § § § | |
| DJD LAND PARTNERS, LLC LDG001, LLC | § § § | |
| *Relief Defendants.* | § | |

**DEFENDANT BARTON'S RESPONSE TO VERIFIED MOTION TO RATIFY
AGREEMENT WITH DLP CAPITAL AND OTHER DLP ENTITIES**

Defendant Timothy L. Barton files this Response in opposition to the Receiver's Verified

Motion To Ratify Agreement With DLP Capital and Other DLP Entities [ECF No. 95]

("Motion"), and requests a hearing on this matter, as follows.

## I.    INTRODUCTION

The instant motion presents a significant threat of destroying value and harming the interests of the lenders that are subject of this SEC action and the actual owners of the assets. The Receiver comes to the Court seeking to liquidate receivership assets and realty interests *at less than 5% of their value*.  In doing so, the Receiver's Motion contains no detail regarding the development and other real estate contracts at issue with the DLP entities or any assessment of the value of the encumbered assets being disposed of.  Nor does the Receiver attach any documentation to substantiate its arguments as to why the receivership's interests should be contracted away at this time.  Instead, the Receiver contends, in conclusory fashion, that performance under the terms of the contract is no longer feasible and the receivership's interests should be reduced to cash. That showing is insufficient to permit Mr. Barton or this Court to evaluate if the proposed transaction is in the best interests of the estate. And even if the Receiver presented that information, his proposed settlement agreement involves the effective sale of realty interests held by the Receivership Estate, and as such it must comply with 28 U.S.C. § 2001—which the Receiver has come nowhere close to complying with.  At a minimum, the Receiver must produce key documents and the Court hold a hearing, before this sale is approved, to substantiate the value of the transaction.  On this record, the Court should deny the Receiver's Motion without prejudice.

## II.    ARGUMENT & AUTHORITIES

### A.  The Receiver Does Not Substantiate a Basis for His Proposed Transaction

The Receiver's Motion reflects a continued effort to fire sale and liquidate assets of the estate rather than maintain and manage them.  As has been addressed in prior motion practice and before the Court, the receivership does not have a seasoned real estate professional with the necessary experience to manage the multi-million dollar development projects under its remit, and harm to the estate is a direct result.  The present transaction being proposed by the Receiver is particularly reflective of why this feature of the receivership estate is becoming a problem.  Indeed, the Receiver proposes to liquidate over $20 million in equity under certain real estate development and participation interests for a mere $750,000—at a loss of over 95% loss of their value.  Importantly, the substantial sum of equity in these transactions arises under two participation agreements—not the development contracts discussed more directly in the Receiver's Motion—in which the estate has a 25% interest on the increased value of the development properties.[1]  Whether the reasons for the Receiver pushing to liquidate these substantial assets for such a small sum is that he is either not seeing the value or does not understand how unlock the value where his incumbents left off, it is of no import.  There is no reason for this transaction to be approved on its proposed terms.

On the underlying development and real estate transaction that the Receiver proposes to liquidate and dispose of, there are very straight-forward means to preserve the value of the assets.  Although there may not be much work remaining on the initial development in question

---

[1] For just Marine Creek alone, the Phase 1 participation interest held by the receivership is worth approximately $5.75 million, and the majority of the receivership entities' initial development work was completed under Phase 1.  *See* App. 025-27, Max Barton Decl. Additional millions are owed for development and other fees on this project, not to mention millions more in participation interests and other fees owed to the receivership estate on the Orchard Farms project.

(and the Receiver's Motion does not address this issue either), there are also two participation agreements which are not contingent on the participation agreements' terms.  In other words, a breach or failure by one of the receivership entities to perform an alleged development duty does not deprive the other receivership entities of their legal rights under the participation agreements (which compromise the majority of the value in these transactions).  In any event, to the extent any minimal development work were needed from the receivership entities, the Receiver could either hire a developer to assist the estate or sell the development fee (of other interests) to a third party.  But the Receiver has not attempted to do so.

Nor does the Receiver's Motion provide sufficient information to allow the Court or any interested parties to evaluate the proposed transaction. This is a problem.  Before approving of this settlement agreement, the Court should, at a minimum, examine the facts in order to ensure that the settlement transaction proposed by the Receiver is indeed in the best interests of the Receivership Estate.

As an initial matter, the fact that the Receiver's Motion is verified is of no moment unless it is accompanied by sufficient factual detail to substantiate the conclusory assertions made in its Motion. The instant motion is conclusory because it omits several key facts that allegedly form the backgrounds for the Receiver's assertions, including:

1. The Receiver does not provide a financial assessment or supporting statements to address the potential financial impact of the proposed settlement contract, including the over $20 million in asset value that the Receiver attempts to give away.

2. The Receiver does not disclose the basis for DLP's suggestions of any contract breach under each of the five contracts at issue, much less attach the letters (alluded to in the Receiver's Motion) that have purportedly precipitated the Receiver's

decision to dispose of these real estate deals. *See* Mot. at 4. In fact, any prospect of a breach of contract is questionable because DLP halted work on the job in September 2022 for reasons unrelated to any apparent breach by the receivership entities. A claimed breach by any receiver entity after the fact does not follow.

3. The Receiver does not disclose whether the alleged breach was material or curable, or whether the Receiver attempted to cure any potential breach. This point is particularly relevant because the Court's Receivership Order has stayed any claims for breach of contract against the receivership estate.

4. The Receiver does not substantiate his conclusions that continued maintenance of the assets were not "feasible" and "likely needed to be terminated." It is not apparent what specific work or contract terms were allegedly infeasible. *See* Ex. A [ECF 95-1] at p. 2 of 7.

5. The Receiver does not address the difference in value between the alleged contracted-for work, if any, that the Receiver claims it needed to undertake, and the proposed settlement value for the transfer of the receivership's contractual and property interests. *See* Mot. at 6. No valuation is provided with the Motion.

Without that information, there is no way to tell if the Receiver endeavored to realize the value of these assets, or whether the purpose the transaction instead reflects an attempt to cash out the Receivership Entities before year end to pay short-term expenses, with the result of unnecessarily harming the estate. The Court should not approve this agreement without that necessary information.

### B. This Settlement Destroys the Status Quo

This Court appointed the Receiver for multiple purposes, but one of those is "marshaling and preserving all assets of the Receivership Entities." ECF No. 29 at 2. This settlement agreement, if approved, does the opposite. Although the Receiver provides no estimate of how much the Barton entities would be entitled to upon performance or simply be continuing to hold the assets that the Receiver is trying to dispose of, the fact that the DLP entities are apparently willing to *pay the Barton entities* to settle a claim that *the Barton entities are in breach*, it is safe to infer that the value is substantial. Mot. at 5-6. By cashing out these potentially lucrative contracts and interests in the underlying realty, without taking any meaningful effort to preserve the value of these assets, waste is occurring within the estate and the Receiver is not adequately preserving the status quo.

### C. The Receiver's Proposed Disposition of Real Property Interests Under the Proposed Contract Improperly Attempt to Circumvent 28 U.S.C. § 2001

The Receiver also cannot dispose of "[a]ny realty or interest or any part thereof" without first complying with 28 U.S.C. § 2001. Yet, here, the Receiver's Motion makes no reference to this statute, let alone attempts to satisfy the statutory requirements. The omission is glaring.[2]

There is no dispute—or least there should not be—that the Receiver attempts to dispose of the receivership's realty interests. While the Receiver does not attach the contract documents or other material documentation about the assets that he is attempting to dispose of, the Motion makes passing references to the estate's realty interests, including the estate's interests in the "Achieved Increased Value" of the property. Mot. at 6. Tellingly, the Receiver's proposed contract reflects the payment of money by the DLP entities in exchange for the Receiver filing a

---

[2] The reason the Receiver attempts to avoid the statutory requirements for disposing of realty interests is because his proposed transaction—seeking to liquidate receivership property at less than 5% of its value—would not pass muster under 28 U.S.C. § 2001(b).

quitclaim instrument in the public property records to dispose of the receivership's interests in the Orchard Farms and Marine Creek properties. *See* Ex. A [ECF 95-1] at p. 3 of 7. This fact reflects that the Receiver's transaction necessarily involves the disposition and sale of the receivership's interests in realty. In fact, the Tarrant County deed records also reflect that the receivership assets to be disposed of by the Receiver include "covenants, conditions, restrictions, easements, and agreements" that constitute "covenants running with the land." *See* App. 004-24. These encumbrances on the fee simple property are direct interests in realty, and their disposition is governed by 28 U.S.C. § 2001.

To the extent the Receiver may argue in reply that 28 U.S.C. § 2001 only applies to the sale of an entire fee simple property, that argument would be incorrect. The statute not only applies to the sale of entire fee simple estates, but also to any "interest or any part thereof." 28 U.S.C. § 2001(b). And a party can buy, hold, and sell many different types of interests in realty other than fee simple title. For example, any "liens, claims, easements, [] servitudes" or other "encumbrance[s]" are "interest[s] in realty." *Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App. —Austin July 7, 2005, no pet.). Other examples of realty include unaccrued royalty interests, even if these interests are non-participating in nature. *Id.; see also Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007) (" An overriding royalty interest in an oil and gas lease is considered an interest in real estate . . . ."); *Cane Tennessee, Inc. v. United States*, 60 Fed. Cl. 694, 699 (2004) (addressing other state law that a "non-participating royalty interest" may be "classified as realty"). ! Participation agreements are also used to convey realty interests. *See Conocophillips Co. v. Dahlberg*, No. CIV.A. C-10-285, 2011 WL 710604, at *7 (S.D. Tex. Feb. 22, 2011). !

Because the settlement agreement disposes of the receivership's real property interests for cash consideration, it constitutes a de facto sale of those interests and falls within the ambit of 28 U.S.C. § 2001. The Court may not, therefore, merely approve of the settlement agreement without ensuring compliance with § 2001's requirements.

## III.    CONCLUSION & PRAYER

For the foregoing reasons, Defendant Timothy Barton respectfully requests that the Court deny the Receiver's Verified Motion To Ratify Agreement With DLP Capital And Other DLP Entities. At the very least, the Court should require the settlement to proceed under 28 U.S.C. § 2001, following a hearing, and should delay approval of that settlement until such a time as the Receiver provides sufficient information to determine the value of the rights the Receivership Estate is trading away and the Receiver's efforts, if any, to preserve those rights or perform the contracted-for work.

Dated: December 20, 2022

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to N.D. Tex.*)
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice*)
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

-8-

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On December 20, 2022 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney