IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON CARNEGIE DEVELOPMENT, LLC | § § § | Jury Trial Demanded |
| WALL007, LLC WALL009, LLC WALL010, LLC WALL011, LLC WALL012, LLC WALL016, LLC WALL017, LLC WALL018, LLC WALL019, LLC HAOQIANG FU (a/k/a MICHAEL FU) STEPHEN T. WALL | § § § § § § § § § § § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC LDG001, LLC | § § § | |
| *Relief Defendants.* | § § | |

**MOTION FOR STAY PENDING APPEAL OF ORDER GRANTING RECEIVER'S MOTION TO RATIFY AGREEMENT WITH DLP CAPITAL AND OTHER DLP ENTITIES [ECF NO. 109] AND FOR EXPEDITED BRIEFING SCHEDULE**

Defendant Timothy L. Barton moves for this Court to stay its Order Granting Receiver's Motion to Ratify Agreement with DLP Capital and Other DLP Entities [ECF No. 109] pending appeal of that Order to the Fifth Circuit. The Defendant further moves the Court to order an expedited briefing schedule for this motion, requiring any response within three business days of this filing, in accordance with the expedited briefing this Court ordered on the underlying motion to approve the DLP transaction, now under appeal. *See* ECF No. 98.

## I.     Background

The SEC filed this action on September 23, 2022, and moved three days later for the appointment of a receiver to secure and preserve assets of any entity directly or indirectly controlled by Defendant Timothy Barton.  ECF No. 6.   On October 18, 2022, the Court granted the SEC's motion over the Defendant's opposition. ECF No. 29. Although the Court adopted the SEC's proposed order nearly verbatim, the final Receivership Order notably deviated from the SEC's request that the receivership be managed by an individual with "extensive experience . . . handling receiverships involving real estate issues." *See* ECF No. 6 at 20.

On the second day after the Receiver's appointment, Mr. Barton's counsel invited the Receiver and his attorney to a meeting to discuss the Receiver's management of the tens of millions of dollars of assets and businesses being placed under his control.  In this meeting, Barton's counsel instructed the Receiver that there were certain real property interests ripe for sale that would bring in substantial cash to the estate, without requiring the Receiver to prematurely sell off other valuable real property assets still in development.  One such property was located in Collin County, Texas, and known as the Frisco Gate Property.  Mr. Barton had organized a buyer for that property prior to the receivership and has since assisted the Receiver executing on that arrangement by which the Frisco Gate Property would be purchased for $9,000,000.  ECF No. 67 at 17.  This offer has since been finalized and accepted.  ECF No. 110.  Specifically, on December 13, 2022, the Receiver entered into a Purchase and Sale Agreement to sell the Frisco Gate Property to Petra Development, LLC for $9,000,000.  Mot. [ECF No. 110]; *see also* App. [ECF No. 111] at 3, 5. This transaction is expected to bring in approximately $3 million in net proceeds after paying secured lenders with liens on the property.

The influx of this $3 million of cash assets into the receivership estate would resolve any short term cash flow needs of the Receiver.  Nonetheless, on December 15, 2022—after the signing

of the Frisco Gate Property contract—the Receiver moved this Court for approval to sell off more than $20 million in realty interests in the redevelopment of Orchard Farms Village and Marine Creek in Fort Worth, Texas, for the total sale price of $750,000.  ECF No. 95. at 1.  In his motion seeking approval on this fire-sale transaction, the Receiver claimed in part that the purpose of this sale was to bring in "much needed capital" to "enable the Receiver to continue managing the Receivership Assets in accordance with the Receivership Order."  ECF No. 95 at 3.

This Court ordered expedited briefing, giving Mr. Barton three business days (including the day on which the Court so ordered) to respond. ECF No. 98. Despite Mr. Barton's objections that the sale would not comply with 28 U.S.C. § 2001, and would needlessly waste receivership entity assets, the Court, without a hearing, granted the Receiver's motion on December 22, 2022. ECF No. 109.

On December 23, 2022, Mr. Barton filed a notice of interlocutory appeal of the Court's Order approving the sale of the estate's interests in Orchard Farms Village and Marine Creek. ECF No. 112.  He now requests a stay pending the outcome of that appeal.

## II.    Argument

When deciding whether to grant a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Likelihood of success and irreparable injury are the most important factors. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Each factor favors a stay here.

As to the first factor, the Defendant incorporates herein his legal objections to the propriety of appointing the receiver in the first place and the legal authority to approve sales now, prior to a

final judgment in this matter. *See* ECF No. 71. To begin, the Court's orders in this regard run afoul of binding Fifth Circuit precedent, which prohibits the appointment of a receiver in the absence of key circumstances that do not exist in this case. *See id.* at 5-11. Next, the Court's expansion of the receivership to include non-party entities contravenes the Fifth Circuit's instruction that non-parties should not be submitted to receivership control absent some finding that they "received ill-gotten funds" and "ha[ve] no legitimate claim to the funds." *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). Third, the Court's orders stem from an improper prejudgment of this case and a desire to penalize Mr. Barton for conduct that a jury has not found wrongful. ECF No. 71 at 13-14. Fourth, the Court failed to consider the equities when imposing equitable relief against the Defendant. ECF. No. 71 at 11-13. Finally, the Court's approval of the Receiver's proposal to liquidate the estate in the third week of his appointment was an abuse of discretion. ECF No. 71 at 14-15.

As to the DLP transaction specifically, the Court's Order approving the proposed sale disregards that the transaction will result in the transfer of determinable real property interests to DLP. *See* ECF No. 106 at 5-7 (explaining that the agreements at issue convey such an interest, and the Receiver's proposal would effectively sell it). Because this sale transaction involves realty interests, federal statute requires that the sale comply with 28 U.S.C. § 2001, which governs the private sale of any "realty *or interest or part thereof*." (emphasis added). The Court's disregard for ensuring compliance with § 2001 was error that is reversible on appeal. Likewise, the Receiver failed to substantiate the basis for the sale such that the Court could reasonably assure itself that it was in the best interest of the receivership estate. *See* ECF No. 106 at 2-4. That the Court approved the sale on the sparse record that exists underscores the lack of factual basis for any decision to approve the sale. Finally, the Court appointed the Receiver to "marshal[] and preserv[e] all assets of the Receivership Entities." ECF No. 29 at 2. The sale approved by the Court does the opposite.

The second factor also supports a stay. Mr. Barton will suffer irreparable harm absent a stay. It is black-letter law that the loss of an interest in real property is irreparable harm. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that loss of a leasehold is irreparable harm). By selling a determinable interest in real property worth over $20 million, held by entities that Mr. Barton formerly controlled and will control again if vindicated, constitutes such harm.

As to the third factor, the SEC will not be injured in the event of a stay. The SEC waited two years to seek a receivership after beginning its investigation of Mr. Barton's corporate entities. ECF No. 25 at 6. By failing to "request[] emergency relief" in a timely fashion, the "status quo" this stay motion seeks to preserve is one where the receivership entities maintain their assets, at the very least. *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021). The SEC remains in a position to pursue its mandate in the absence of this sale with DLP.

The proposed sale is also not supported by the Receiver's claimed need for immediate cash flow. Any assertion that the receivership estate will lack for operating cash is belied by the Receiver's most recent motion to sell the Frisco Gate Property, which will bring in $9 million in gross proceeds, with a $3 million in net gain. In light of this background, it is appropriate to question the sequence in which the Receiver brought its three proposed sales to the Court for approval. Earlier this month, the Receiver urged the Court to quickly sell Mr. Barton's home and to not look too hard at the Marine Creek and Orchard Farms Village interests for less than 5 cents on the dollar, because the Receiver said he was starved for "much needed capital" to keep the receivership entities above water. But then, the Receiver sought approval of the Frisco Gate Property sale, only *after* obtaining this Court's approval of the Marine Creek and Orchard Park sales for a paltry $750,000. ECF No. 110. The Receiver would have had a hard time claiming a cash crisis if it had just signed a contract to obtain $3 million for the sale of the Frisco Gate

Property. *But the Frisco Gate Property sale was on the shelf ready to go, and urged and consented by the Defendant, from the first days of the receivership.* That the Receiver sat on the Frisco Gate Property sale undermines the Receiver's arguments for fire liquidation of the estate's interests in the Marine Creek and Orchard Farms Village developments. Thus, there is significant reason for staying the DLP/Marine Creek/Orchard Farm Village transaction until the Fifth Circuit can weigh in.

As to the final factor, public interest and the interests of the lenders at issue in the case militate in favor of a stay. Most important, the Receiver's liquidation of over $20 million in assets at less than 5% of their value serves nobody's interests other than DLP. This is especially so in light of the timeline in which the Receiver previously contracted for the sale of the Frisco Gate Property, to bring $3 million in net equity into the estate, obviating any professed need for other expedient liquidation. Also at issue is the interest in letting the Fifth Circuit weigh in on the DLP transaction, where the amount at issue could repay nearly all the alleged liabilities to the lenders the SEC alleges were wronged. If there is even a sliver of doubt about the propriety of approving this sale, the district court should allow a second set of eyes on it. In any event, the public's interest is best served when the government complies with the law and property rights are not needlessly wasted. *Cf. League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."); *Index Newspapers LLC v. US Marshals Svc.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). To allow otherwise, this sale will amount to another needless waste of assets and another step in dismantling Mr. Barton's business before he has been adjudged liable for anything. The public interest does not favor that possibility before Mr. Barton has had a chance to be vindicated on appeal.

### III.    Conclusion

For the reasons stated above, a stay pending appeal is necessary. Mr. Barton respectfully requests that this Court give the SEC the same briefing schedule as the Court set for the Receiver's motion, i.e., three business days to respond. Expedited briefing is necessary given ongoing appellate consideration of this Court's orders. Should this Court not act quickly, Mr. Barton may seek emergency relief from the Fifth Circuit. At the very least, the Court should stay the impending sale for at least four weeks so that the Fifth Circuit has a chance to consider a motion for stay pending appeal.

Dated: December 27, 2022

Respectfully submitted,


By: /s/ Michael J. Edney
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to NDTX*)
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice*)
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

<u>**CERTIFICATE OF SERVICE**</u>

On December 27, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney
