IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| | § | |
| TIMOTHY LYNCH BARTON | § | |
| CARNEGIE DEVELOPMENT, LLC | § | |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § | |
| | § | |
| *Relief Defendants.* | § | |

DEFENDANT BARTON'S REPLY IN SUPPORT OF
HIS MOTION FOR STAY [ECF NO. 114] OF THE COURT'S
<u>ORDER RATIFYING SALE TO DLP ENTITIES [ECF NO. 109]</u>

Defendant Timothy L. Barton respectfully submits this reply memorandum in support of

his Motion for Stay Pending Appeal of Order Granting Receiver's Motion to Ratify Agreement

with DLP Capital and Other DLP Entities (ECF No. 114).

In his opposition brief, the Receiver contends that the DLP sale was in the best interests of the estate because the sale "maximized the value received by the Receivership" and "brought much needed capital into the Receivership Estate." Resp. at 7-8.  However, the Receiver has done nothing meaningful to substantiate his decision to release more than $20 million in asset value as part of that transaction, for less than 4 cents on the dollar, a mere $750,000.  Importantly, these were not just random interests held by Mr. Barton's companies, but rather assets that would secure most, if not all, of the $26 million the SEC claims that the lenders that are the subject of this lawsuit are owed.

The Receiver's opposition contains no evidence supporting this fire sale. The Receiver's opposition brief relies most heavily on a self-serving valuation opinion that he received from DLP. But that should provide the Court with no comfort whatsoever, as DLP was the party poised to recover a more than $20 million windfall if that transaction were approved.  Even then, it is unclear what that DLP report supposedly says, as the Receiver has hidden the report and its contents from the Court, despite repeatedly expounding on its claimed importance.

The Receiver's original justification for this transaction also has been undermined.  The Receiver's main refrain to cover for the terrible value in this transaction has been that the Receiver has no money and needs cash now.  *See* ECF No. 95 at 5 (claiming to be unable to manage the estate without "much needed capital"); ECF No. 119 (claiming "other than the DLP Settlement, the Receiver Estate has no other source of cash on the immediate horizon").  s(estimating net proceeds of sale); ECF No. 110 at 3 (identifying Frisco Gate Property sale being executed on December 13, 2022).  This multi-million transaction was concealed for nine days.  During that time, the Receiver appeared for a hearing on the sale of the Defendant's home and filed a motion for approval of the estate's interests in Orchard Farms and Marine Creek, claiming in both instances that Court approval was needed to address a need for cash.  *The Receiver sat on that Frisco Gate sale*, filing a

motion for its approval just a few hours after the Court approved the DLP sale. *Compare* DLP Order, ECF No. 109 (entered Dec. 22, 2022), *with* Frisco Gate Motion, ECF No. 110 (filed Dec. 22, 2022). The Receiver sequenced its requests to the Court to excuse questionable deals with a claim of cash emergency, revealing the solution to any such emergency only after the Court had approved those questionable transactions. This Court should grant the stay pending appeal *because the Receiver had not fully apprised the Court of the options available for addressing any alleged cash crisis.*

This is an instance where compliance with the procedures for approving sales required by Section 2001 of Title 28 would have made a difference. This statute provides certain safeguards "to protect against the high opportunity for fraud inherent in private sales of realty." *SEC v. T-Bar Res., LLC*, No. CIV.A.3:07CV1994-B, 2008 WL 4790987, at *4 (N.D. Tex. Oct. 28, 2008). These safeguards include requirements that a receiver provide notice to all interested parties of a proposed sale, that any sale be supported by independent valuations, and that no property be sold for less than 2/3 of its appraised value. 28 U.S.C. § 2001(b). Here, however, the Receiver clearly has sought to circumvent these statutory requirements, as he seeks to liquidate real property interests at less than 5% of their worth. Fifth Circuit law is clear that a sale executed in violation of the statute is void and must be reversed. *Acadia Land Co. v. Horuff*, 110 F.2d 354, 354–55 (5th Cir. 1940) (reversing a real property conveyance post-execution). Granting a stay pending appeal will make this transaction easier to unwind, as the court of appeals is likely to hold that Section 2001 of Title 28 applies.

This appeal, and Mr. Barton's opposition to the transaction's approval, is about maximizing the Barton entities' asset value and corresponding ability to pay any lender the SEC claims requires compensation. The approval of this transaction is a mistake on the same order of financial magnitude as the alleged losses underlying the complaint. At a minimum, this Court should stay

approval of the transaction pending appeal so that the Section 2001 process can occur in the event that appeal succeeds.

## ARGUMENT

A district court should grant a stay based on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). The first two factors—likelihood of success and irreparable injury—are the most important. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020).

### A.    The Appeal Is Likely to Succeed

Mr. Barton is likely to succeed on appeal. As an initial matter, the fundamental premise on which the Receiver sought approval of this transaction, and upon which this Court approved it, has been undermined by the Receiver's filings after the Court's order. The Receiver sought approval for this transaction—releasing more than $20 million in contractual payments over the next few years for $750,000 in contractual payments today—on claims that he required "much needed capital" to "enable [him] to continue managing" the estate. ECF No. 95 at 5. This transaction, as poor of terms as it presented, was the best of a bunch of bad options, the Receiver contended, to address this crisis. The crisis was false, because the Receiver had not revealed the Frisco Gate transaction. That transaction was proposed and arranged by Mr. Barton (ECF No. 123), was fully done before the Receiver sought approval of the DLP transaction, was poised to generate millions in net proceeds, and was revealed to the Court hours after the Court approved the DLP transaction.

In addition, it was error to hold that the DLP transaction was in the best interests of the estate. The transaction is giving away an asset worth more than $20 million for less than 4 cents on the dollar. And it is occurring because the Receiver is wondering what cash is available to pay his

fees now. This transaction may be in the Receiver's interests, but that is not the estate's interests, which include those of Mr. Barton (its owner) and any claimants on the estate whose interest lies in the value of its assets in coming years, not days.

The Receiver contends that value could be unlocked only by continuing to provide some development services to the Marine Creek and Orchard Park projects. *See* Resp. at 6, 8, 13. The Receiver's lack of experience in real estate development, a result of this Court's appointment decision currently under appeal, is creating that problem. But even then, this Receiver can solve the problem by contracting with an experienced developer to finish whatever small amount of development services remain.[1]

That the DLP sale was not in the best interests of the estate would have been demonstrated by the Section 2001 appraisal and approval process. But the Court bypassed it, and that was error. The Receiver provides no meaningful defense for skipping the Section 2001 process. He repeats his claim that the transaction is "not a sale" of any realty interests. Resp. at 12; *id.* at 13-14.

Importantly, the Receiver does not attach any of the Marine Creek and Orchard Farms contracts in his possession for the Court's consideration. The only contract that he has submitted is his proposed settlement agreement with DLP from December 2022. *See* ECF No. 95-1. Yet, even that document reflects a real property transaction, as it shows the Receiver could not consummate

---

[1] Contrary to the Receiver's suggestion, there was no breach of agreements, with DLP preventing these payments from occurring. The only new evidence that the Receiver submits are three letters that DLP allegedly sent to him on October 19, 2022, after the Receivership Order had been entered by the Court. *See* Resp. at 6 n.1; *see also* Receivership Order [ECF No. 29] ¶ 32 (enjoining claims). Even then, the Receiver provides no evidentiary support to back up the assertions in the letters. In fact, the letters almost entirely relate to issues caused by DLP or the general contractor (a DLP partner entity) on the projects, for example, work on the projects that was (1) held up by some failure or delay of DLP or the DLP general contractor; (2) delayed by DLP's own failures to provide a bond or other funding (e.g., for zoning, government certificates, and other work); or (3) related to certain timeline events that had yet to occur. In any event, DLP acknowledged in the letters that there had been no actionable breach at the time of the Receiver's appointment. *See, e.g.,* Receiver's App. at 2, 6, 10 (acknowledging thirty days for the completion of tasks prior to any default). And the substantial work to do at the time of appointment were DLP's, rather than of the receivership estate.

the sale in the absence of filing "*instruments in the property records* of Tarrant County, Texas, *releasing and quitclaiming* all participating interests *in* (a) the Orchard Farms *property* to Orchard Farms Ventures [a DLP entity]; and (b) the Mansion Creek *property* to Marine Creek Ventures [another DLP entity]." Receiver's App. [ECF No. 95-1] at 4.

Relevant contract documents, filed in the Tarrant County deed records, provide further evidence of the realty interests at issue. *See* Barton's App. [ECF No. 107] at 004-24. These contracts recite themselves as "binding" agreements, incorporating other provisions from two Participation Agreements, and describe "covenants, conditions, restrictions, easements, and agreements . . . running with the land." Barton's App. [ECF No. 107] at 004, 006, 015-17. Because the agreements provide direct encumbrances on the properties and their potential future transfers, they convey realty interests in the properties themselves. *See Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.—Austin July 7, 2005, no pet.) ("Under Texas law, an encumbrance is an interest in realty that diminishes its value and is a burden on its transfer. . . . Examples of encumbrances include liens, claims, easements, and servitudes.").[2]

The Receiver does not present any legal authority to support his position that the estate lacks realty interests in Orchard Farms and Marine Creek. The Receiver's reliance on *Berne v. Keith* is particularly unavailing. 361 S.W.2d 592 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.). In *Berne*, the plaintiff sought compensation for services performed under an "employer and employee" relationship (which is not the case here), and there was no written contract directly

---

[2] The "covenants, conditions, restrictions, easements, and agreements" reflected in these contracts and property records does not, as the Receiver suggests in a footnote, contradict any of the estate's Participation Agreements or other contracts related to the Orchard Farm and Marine Creek properties. *Cf.* Barton's App. [ECF No. 107] at 006, 017 ("In the event of any inconsistency between the terms of the Participation Agreement and this document, the terms of the Participation Agreement will prevail."). Nor does the Receiver make any evidentiary showing that the Participation Agreement's restrictive sale covenants or any other provision of these agreements is potentially inconsistent with the memorandum contracts filed in the property records.

encumbering the land (as in the present case). In holding that the plaintiff did not possess any real property interest, the court noted that the plaintiff was paid a salary and not promised "an interest in the land or *in the proceeds from the sale of lands or any part thereof*." *Id.* at 596 (emphasis added). In that analysis, the court notably pointed to a similar case in which an employee *did* receive an interest in real property, which occurred because his employer promised to provide him an "interest in the premises to the extent of *$4,000.00 which he would receive from the sale of the lot*." *Id.* (emphasis added). That factual distinction is important. Here, the receivership entities similarly received property interests from DLP, and they also filed real property records encumbering those properties prior to the realization of their sales. Far from supporting the Receiver's arguments, this cited case law lends support to the fact that this sale to DLP was a real property transaction subject to 28 U.S.C. § 2001.

The Receiver also claims that Mr. Barton lacks jurisdiction to appeal the DLP sale under 28 U.S.C. § 1292(a)(2). Resp. at 12. But this argument is misplaced. Mr. Barton is appealing the sale under 28 U.S.C. § 1291, and there is clear authority for appellate jurisdiction under Section 1291. *See Citibank, N. A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981) ("An order confirming a judicial sale of property is a final order from which an appeal may be taken pursuant to 28 U.S.C. s 1291."); *see also* 28 U.S.C. § 2001 (setting forth requirements prior to a district court's "confirmation of any private sale").

### B.    Irreparable Harm Will Occur in the Absence of a Stay

A stay is necessary to prevent irreparable harm. Contrary to the Receiver argument, the transaction does involve the sale of an interest in real property, which traditionally establishes the irreparable harm element. *See also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that the deprivation of a real property interest is irreparable harm).

The process of approving the transaction violated Section 2001 and is thus void.  A stay will prevent complications in unwinding this transaction if the appeal succeeds.  If the Receiver spends the funds on himself or others, it will not be so simple to put the genie back in the bottle. Courts have regularly stayed orders approving transactions pending appeal when they would be difficult to unwind if the appeal succeeds.  *See, e.g., In re Tex. Equip. Co., Inc.*, 283 B.R. 222, 228 (Bankr. N.D. Tex. 2002) (granting stay where "a sale of the property at issue  . . . would be irreversible, even if the court is found to have erred in its judgment"); *see also SEC v. Ahmed*, No. 3:15CV675 (JBA), 2019 WL 11824928, at *4 (D. Conn. Nov. 26, 2019) (granting stay due to "substantial risk of irreparable harm resulting from the liquidation of assets which cannot be retrieved even if those assets ultimately prove unnecessary to satisfy the judgment.").

C.      **The Interests of the SEC and the Receivership Estate Will Benefit from a Stay**

The third factor considers "whether issuance of the stay will substantially injure the other parties interested in the proceeding."  *Nken*, 556 U.S. at 426.  Here, the relevant interests are those of the SEC in preventing the dissipation of assets through a receivership.  *See also* Order, *SEC v. Barton,* Appeal No. 22-11132 (5th Cir. Jan. 6, 2023) (denying the Receiver's Motion to Be Recognized as a Party in Interest and Motion to Intervene).

The Receiver nonetheless devotes his argument on this third factor to addressing issues involving his own management of the estate and his claimed interest in liquidating assets rather than developing them. Most of this argument is premised on the position that the receivership "cannot continue operating without cash."  Resp. at 15.  As explained above, however, the Frisco Gate transaction (of which the Receiver was fully aware when he sought approval of the DLP transaction) undermines any claim of a cash crisis.  The best course for the parties in this case is to stay the transaction and preserve a more than $20 million estate asset or at least handle the sale of that asset under the processes required by Section 2001.

The Receiver nonetheless takes a final position that he should be able to liquidate the Orchard Farms and Marine Creek development interests as a means "to protect" other properties of the estate, as he is not in a position "to develop properties." Resp. at 15. This assertion by the Receiver is concerning and confirms what Mr. Barton has raised all along: the Receiver's only plan is to liquidate and he has no intention to manage. Ultimately, the Receiver's failure to protect some of the estate's most valuable assets does not in any way support his position that the receivership will benefit from his liquidation plans.

### D.     The Public Interest Will Be Served by a Stay

As to the fourth factor, the Receiver only states in passing—in a document heading—that the public will be harmed if the receivership estate is harmed. *See* Resp. at 15. The Receiver's assertion is again untrue, and it also disregards the source of the ongoing harm in this case. As the Receiver puts it, having "*the fox* in charge of the henhouse" is a problem. Resp. at 15 n.5 (emphasis added). And leaving Brown Fox and its litigation team to continue to drive the estate and its many multi-million dollars of real estate development into the ground serves no one.

### CONCLUSION

For the reasons stated above, Mr. Barton respectfully requests that this Court stay its Order Granting Receiver's Motion to Ratify Agreement with DLP Capital and Other DLP Entities [ECF No. 109] pending appeal to the Fifth Circuit.

Dated: January 9, 2023

Respectfully submitted,

By: /s/ Michael J. Edney
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to NDTX*)
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice*)
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On January 9, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

/s/ Michael J. Edney
Michael J. Edney

-9-