## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

### RECEIVER'S MOTION TO COMPEL DOCUMENTS AND INFORMATION, REQUEST FOR SANCTIONS, OR ALTERNATIVELY, <u>MOTION FOR SHOW CAUSE HEARING, AND BRIEF IN SUPPORT</u>

Respectfully submitted,

Charlene C. Koonce
  State Bar No. 11672850
  charlene@brownfoxlaw.com
Timothy B. Wells
  State Bar No. 24131941
  tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000

*Attorneys for Receiver Cortney C. Thomas*

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 2

II.    FACTUAL BACKGROUND .............................................................................. 2

       A.    The Receivership Order Requires Barton to Provide Specific Information
             and Cooperation ....................................................................................... 2

       B.    Barton Refuses to Provide Financial Records, Entity, and Asset
             Information ............................................................................................... 5

       C.    Barton Refuses to Provide Accounting and Data Storage Access and IT
             Information ............................................................................................... 6

       D.    Barton Refuses to Provide An Inventory and Location of Art and Antiques ........ 8

       E.    Barton Interfered with the Rock Creek Property Sale ........................... 9

       F.    Coercive and Monetary Sanctions are Requested .................................. 11

III.   ARGUMENT & AUTHORITIES ...................................................................... 11

       A.    Contempt Pursuant to Rule 37 ............................................................... 11

       B.    Requested Relief .................................................................................... 12

       C.    Sanctions ................................................................................................ 14

       D.    Alternatively, A Show Cause Hearing is Appropriate .......................... 15

IV.    CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
   228 F.3d 574 (5th Cir. 2000) ........................................................................... 12, 15

*Chao v. Transocean Offshore, Inc.,*
   276 F.3d 725 (5th Cir. 2002) ................................................................................. 12

*Chicago Truck Drivers v. Brotherhood Labor Leasing,*
   207 F.3d 500 (8th Cir. 2000) ................................................................................. 14

*Commodity Futures Trading Comm'n v. Weintraub,*
   471 U.S. 343, 105 S. Ct. 1986, 85 L.Ed.2d 372 (1985) ........................................... 6

*Compaq Computer Corp. v. Ergonome Inc.,*
   387 F.3d 403 (5th Cir. 2004) ................................................................................. 14

*FTC v. NHS Sys., Inc.,*
   No. CIV.A. 08-2215, 2011 WL 1833209 (E.D. Pa. May 13, 2011) ......................... 15

*Hogue v. Yordy,*
   No. 1:17-CV-00373-BLW, 2019 WL 4544549 (D. Idaho Sept. 19, 2019) .............. 12

*In re Bradley,*
   588 F.3d 254 (5th Cir. 2009) ................................................................................. 12

*Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.,*
   609 F.2d 165 (5th Cir. 1980) ................................................................................. 12

*M.D. bnf Stukenberg v. Abbot,*
   509 F. Supp. 3d 683 (S.D. Tex. 2020) ................................................................... 12

*McComb v. Jacksonville Paper Co.,*
   336 U.S. 187, 69 S. Ct. 497, 93 L. Ed. 599 (1949) ................................................. 14

*Norman Bridge Drug Co. v. Banner,*
   529 F.2d 822 (5th Cir.1976) ................................................................................. 14

*SEC v. First Fin. Group of Texas, Inc.,*
   659 F.2d 660 (5th Cir. 1981) ................................................................................. 12

*SEC v. Ryan,*
   747 F. Supp. 2d 355 (N.D.N.Y. 2010) ..................................................................... 6

*SynQor, Inc. v. Artesyn Techs., Inc.,*
   No. 2:07-CV-497-TJW-CE, 2011 WL 13134621 (E.D. Tex. July 12, 2011), *aff'd*, 709
   F.3d 1365 (Fed. Cir. 2013) ............................................................................. 12, 14

*Wyatt ex rel. Rawlins v. Sawyer*,
  80 F. Supp. 2d 1275 (M.D. Ala. 1999) ...................................................................................... 15

**Rules**

FED. R. CIV. P. 37(b)(2)(vii).................................................................................................... 11, 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

### RECEIVER'S MOTION TO COMPEL DOCUMENTS AND INFORMATION, REQUEST FOR SANCTIONS, OR ALTERNATIVELY, MOTION FOR SHOW CAUSE HEARING, AND BRIEF IN SUPPORT

Receiver Cortney C. Thomas (the "Receiver") respectfully request that the Court compel

Defendant Timothy Barton ("Barton") to comply with numerous discovery provisions of the

Court's October 18, 2022 Order Appointing Receiver (the "Receivership Order"), Dkt. 29, and

requests compensatory and coercive sanctions. In the alternative, the Receiver requests an order

setting a "Show Cause Hearing" at which Barton will be required to appear and show cause for his

failure to comply with the Receivership Order. In support, the Receiver respectfully shows the Court as follows:

## I.    <u>INTRODUCTION</u>

Barton's disrespect for the Court and its Order has been consistent, disruptive, and costly. His contumacious conduct persists and continues to cause unnecessary expense and hinders the Receiver's ability to perform his mandate.  As explained below, Barton has refused to provide financial information, data and accounting access information, and an inventory and location of art and antiques.  Pursuant to Rule 37(b)(2)(vii), the Receiver accordingly requests an order compelling Barton's production and disclosure of the information and documents described below, coupled with a coercive sanction to ensure his compliance, and an award of sanctions to compensate the Estate for the damages caused by Barton's failure to comply with the Order, including the fees incurred with respect to Barton's failure to provide the information at issue.[1]

## II.    <u>FACTUAL BACKGROUND</u>

### A.    The Receivership Order Requires Barton to Provide Specific Information and Cooperation

1.    On October 18, 2022, this Court entered the Receivership Order, Dkt. 29.

2.    The Receivership Order is by necessity, broad and direct in its mandate.  Among other things, it requires that the Receiver:

- "Take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Entities . . ." ¶ 6B; and
- "Manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court." ¶ 6C.

---

[1] The Receiver files this motion under Rule 37 because of (1) Barton's clear failure to comply with the discovery provisions of the Receivership Order and (2) the increased cost associated with a contempt hearing.  In the event the Court determines that Rule 37 sanctions are not appropriate, the Receiver alternatively requests that the Court set a "Show Cause Hearing" at which Barton will be required to appear and show cause for his failures to comply with the Receivership Order.

3.     The Receivership Order also includes extensive directives to Defendants and any other person who receives notice of the Order, which are essential to the Receiver's ability to accomplish the mandates in the Receivership Order.  For instance, the Receivership Order requires:

"7. The individual Receivership Entities and the past and/or present officers . . .  are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers."  ¶ 7;

"8. Within ten (10) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Entities; and, (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Entities." ¶ 8;

"9. Within twenty (20) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting, with complete documentation, covering the period from January 1, 2017 to the present:

> A. Of all Receivership Property, wherever located, held by or in the name of the Receivership Entities, . . . including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, and other assets, stating the location of each; and (b) any and all accounts, . . . ;

> B. Identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Entities have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Entities; …

> D. Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;  . . ." ¶ 9

"10. Within thirty (30) days of the entry of this Order, the Receivership Entities shall provide to the Receiver and the SEC copies of the Receivership Entities' federal income tax returns for the years 2017 through 2021 with all relevant and necessary underlying documentation." ¶ 10;

"11. ***The individual Receivership Entities and the entity Receivership Entities' past and/or present officers, directors*** . . . shall answer under oath to the Receiver all questions which the Receiver may put to them ***and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant*** to the operation or administration of the receivership or the collection of funds due to the Receivership Entities." ¶ 11 (emphasis added);

"12. The Receivership Entities are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver." ¶ 12;

"13. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records, and all other documents or instruments relating to the Receivership Entities. ***All persons and entities having control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.***" ¶ 13 (emphasis added);

"14. The Receivership Entities, as well as their agents, servants, employees, attorneys, . . . and any persons receiving notice of this Order . . . having possession of the property, business, books, records, accounts, or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents, and/or employees. . . ." ¶ 14;

"18. The Receivership Entities, all persons acting on behalf of any Receivership Defendant, and any person who receives actual or constructive notice of this Order who has or had possession or control over any Receivership Assets, is directed to: . . .

> B. Within five (5) business days after being served a copy of this Order, provide the Receiver a sworn statement setting forth: . . .
>
>> 3. All keys, codes, and passwords, entry codes, combinations to locks, and information or devices required to open or gain access to any Asset or Document, including, but not limited to, access to the business premises, computer servers, networks, or databases, or telecommunications systems or devices; . . ." ¶ 18;

"33. Defendants and Receivership Entities, and their officers, agents, employees, and attorneys . . . shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities. This cooperation and assistance shall include, but is not limited to:

> A. Providing information to the Receiver as directed above or that the Receiver deems necessary to exercise the authority and discharge the responsibilities delegated to the Receiver under this Order; . . ." ¶ 33.

4.    Despite multiple requests by the Receiver, Barton and his counsel have failed and refused to provide the information mandated by the Receivership Order. *See* Declaration of Cort Thomas, ("Thomas Declaration") included in the appendix.

**B.    Barton Refuses to Provide Financial Records, Entity, and Asset Information**

5.    For instance, on October 20, 2022 following an in-person meeting, the Receiver emailed Barton's counsel requesting specific information and documents:

"Michael and Richard - Thanks [sic] you for meeting with us this morning.  In addition to the many items required by the Receivership Order, which we look forward to receiving, we think the following information is most urgent.  Please note this list is just what we see as most urgent; it does not displace the information required by the Receivership Order.

1)    A list of all properties (or property interests) owned by any entity owned or controlled by Mr. Barton.  Include the entity that owns the property interest, the property location, the type of asset (undeveloped land, apartments, etc.), the approximate net value, amounts and identify of lienholders and encumbrances, contact information for any entity involved in developing, managing, or operating the property, and the addressed used by the entity for receipt of mail. ***This request includes properties/entities that are not listed in the Receivership Order, but which fall within its scope, for instance the property in Alabama.  Please also include Mr. Barton's proposal for best path forward on the asset.***

2)    Appraisals and potential lenders or purchasers for the Turtle Creek property and the apartments (you mentioned a bridge lender and prospective purchasers);

3)    ***A list of the entities you agree fall within the scope of the Receivership Order, and any existing organizational or flow charts related to the entities***;

4)    User names, passwords, log-in information ***for the accounting system and bank accounts, and contact information for employees or former employees*** who have information about these issues.

5)    Identify properties or assets that are generating income and identify the accounts into which that income is deposited;

6)    Contact information for Kirk Wilson;

7)    The ***identity, estimated value, and any other pertinent details for artwork*** and other personal property at 2999 Turtle Creek that is valued at $1,000 or more;

8)    Identify all persons who hold company credit cards, the entities listed as the account holder for those cards, and let us know when those cards will be returned to Cort.  (To avoid any doubt down the road, we are advising again that no person is authorized to use any credit card issued to any Receivership Entity);

9)    A list of banks at which any Receivership Entity may have an open account.

10)    Please explain what approval or confirmation is needed from the Mayor of Venus, and your proposal/recommendation for obtaining that approval."

*Thomas Dec.* ¶ 5. (emphasis added).

6.    In response, Barton provided the contact information for Kirk Wilson. None of the other information was provided, although Max Barton subsequently provided certain additional

information about the Amerigold Suites, an extended stay hotel property which is generating income, and for which property insurance was on the verge of cancellation, employees were submitting pay requests, and cancellation notices for utilities had been received by Defendants prior to the Receiver's appointment. *Thomas Dec.* ¶ 6.

**C.    Barton Refuses to Provide Accounting and Data Storage Access and IT Information**

7.    Despite multiple requests for the identity and contact information for the Receivership Entities' IT employee or contractor, passwords, user names, and all information necessary to access the Entities' electronic data storage (the "IT Access Data"), Barton, refused to provide the IT Access Data. *Thomas Dec.* ¶¶ 5, 7, 10-14.  On the contrary, after the Receiver was finally able to discover the identity and contact information for the former IT professional who managed that work for the Receivership Entities, that individual was unable to log into the server, cloud storage, or email accounts.  The Receiver then discovered a new IT professional had been retained by Barton and that professional, or another person acting at Barton's direction, had changed the passwords and access information—based on direct instructions from Barton's counsel—and the IT professional, together with Barton's counsel, refused to provide the access credentials to the Receiver. *Thomas Dec.* ¶¶ 11-13.

8.    Barton justified his refusal to provide the IT Access Data on privilege concerns. *Thomas Dec.,* ¶¶ 12-17. Notably, however, the Receiver holds the privilege for any and all Receivership Entities. *Receivership Order,* ¶ 46; *SEC v. Ryan*, 747 F. Supp. 2d 355, 367–68 (N.D.N.Y. 2010) (Receiver, as successor in interest, controls attorney-client privilege for entities in receivership); *see also Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S. Ct. 1986, 85 L.Ed.2d 372 (1985) (concluding that when control of a corporation passes to a new management, in that case a bankruptcy trustee, the authority to assert or waive the attorney-client privilege passes as well).

9.     Although a privilege protocol *is not a predicate to the Receiver's entitlement to the IT Data, or any other information,* the Receiver has conferred multiple times and in multiple ways about a proposed privilege protocol.  *Thomas Dec.,* ¶¶ 9, 11-14, 18, 21.

10.     In response, Barton eventually provided a proposed privilege protocol, but failed and refused to respond to the Receiver's requested modifications to the proposed protocol.  *Thomas Dec.*, ¶¶ 9, 17-18, 21.  Moreover, as communicated to Barton, absolutely no privilege exists in much of the information requested by the Receiver, for instance access to information for the Receivership Entities' QuickBooks accounts—the accounting system used by several of the Entities—and inventories or location of art and antiques Barton removed from the Rock Creek Property after the Receivership Order was entered.[2]  *Thomas Dec.* ¶ 9.  The latter is discussed below.

11.     As to the Receivership Entities' QuickBooks accounts and other accounting information, Barton has refused to provide any assistance.  For one, Barton refused to provide the name or contact information for the head of the Receivership Entities' accounting group.  Third parties later identified Venkat Murugan as the head of the internal accounting group and provided Mr. Murugan's contact information.  While Mr. Murugan did not return the Receiver's calls between October 2022 and early January 2023, on January 5 he finally returned the Receiver's call.  During the brief call, Mr. Murugan (1) stated that he was calling on Barton's behalf, (2) eventually professed that he had misunderstood the purpose of the Receiver's voice message and believed that the Receiver was actually a creditor of the Receivership Entities; (3) refused to

---

[2] The Receiver addressed Barton's claims of privilege multiple times. *See Thomas Dec.*, ¶¶ 9, 11-14, 18, 21.  No privilege exists in most of what was requested, but to the extent a privilege may exists in some materials, for instance some emails between Barton and his counsel (as distinguished from counsel who represented the Entities in numerous stayed lawsuits), the Receiver offered to enter into a FRE 502(D) agreement to preclude any such waiver. *Id.* Thus, the possibility of waiver did not excuse or render impossible Barton's compliance.

answer any of the Receiver's questions without first speaking to Barton and receiving Barton's permission to talk to the Receiver; (4) acknowledged the existence of a bookkeeper and outside CPA, but refused to identify them by name or provide their contact information; and (5) promised to call the Receiver back after speaking with Barton. Within hours of the call, the Receiver sent a follow-up email to Mr. Murugan confirming in writing an initial set of information requests pursuant to the Receivership Order. *Thomas Dec.*, ¶ 23. To date, Mr. Murugan, who by his own admission is still under the control of Barton, has not responded to the Receiver's requests. *Thomas Dec.*, ¶ 23.

12.    As of the date of this filing, the Receiver and his accountants are still engaged in a prolonged effort with Intuit (the owner of QuickBooks) to secure access to the Receivership Entities' QuickBooks accounts. Had Barton provided this information as requested in the first weeks of the Receivership, much time and expense would have been avoided. Additionally, the Receiver's inability to access QuickBooks and the Receivership Entities' server and email accounts has severely hampered his ability to prepare a general ledger for D4OP, LLC, a necessary step in the cost certification of a pending HUD loan. The penalty for continued delays of this certification will likely result in damages of $30,000 per month. While the Receiver is hopeful that he will have access to D4OP's QuickBooks account in the coming days, he still has no knowledge of whether the needed information has been entered into QuickBooks or will be accurately reflected. Nearly three months has needlessly passed while the Receiver has worked diligently to obtain this information because of Barton's refusal to comply with the Receivership Order's discovery mandates. *Thomas Dec.*, ¶ 24.

**D.    Barton Refuses to Provide An Inventory and Location of Art and Antiques**

13.    Similarly, despite multiple and repeated requests, Barton has failed and refused to provide a comprehensive inventory of the art and antiques owned by the Receivership Entities.

For instance, the Receiver's counsel specifically discussed with Barton's counsel an appraisal that Barton said was available to identify the ownership and value of a large statute presumably owned by JMJ Development and located in the Turtle Creek Property. *Thomas Dec.*, ¶¶ 5, 14, 15, 16, 18, 19. Instead of providing the requested inventory and the appraisal, on the second day of the Receiver's appointment, the Receiver learned Barton was moving art and antiques out of the Rock Creek Property. *Thomas Dec.,* ¶ 14. Barton has failed and refused to disclose the location and value of those items. *Id.*

14. As of 2019, Barton verified that JMJ Development Holdings, purportedly the "parent" (at least on paper) for many of the other single purpose Receivership Entities, owned $12M in art. *Thomas Dec.*, ¶ 15. Barton, however, refused to provide an inventory of the art and antiques owned by any of the Receivership Entities. Rather, after the Receiver conferred about this motion with respect to the requested inventory, Barton provided a list of 6 items, all of which he claimed were his own, and which were purportedly located in the Rock Creek Property. *Thomas Dec.*, ¶ 19. Barton asserted he could not remember any other art in the Rock Creek Property or elsewhere, despite photographs of extensive sculptures and artwork depicted in an appraisal Barton filed with the Court, and ignored the Receiver's request that Barton supplement the inventory to include, at a minimum, each of the items identified in the photographs he had filed with the court. *Id.*

15. In other words, Barton cannot remember $11.9 M in art, or the location of the art that he swore JMJ owned. To date, despite having requested the comprehensive inventory multiple times, Barton has provided only the patently incomplete inventory. *Id.*

**E. Barton Interfered with the Rock Creek Property Sale**

16. Paragraph 32 of the Receivership Order expressly prohibits interference by any person, in any manner, with the Receiver's efforts to control or manage Receivership Property. In

perhaps his most blatant instance of contempt, Barton interfered with the sale of the Rock Creek Property.[3] As will be detailed more fully in the Receiver's forthcoming Second Status Report, the Court held a hearing on the Receiver's Motion to Approve the sale of Rock Creek on the morning on December 19.  At that hearing, the Court orally granted the Receiver's motion.  That afternoon, Barton reached out to the purchaser of the Rock Creek Property (unsolicited) in an attempt to discourage the purchaser from moving forward with the sale.  *Thomas Dec.*, ¶ 28.  A few days later, Barton filed an interlocutory appeal of the Order approving the sale, despite the Fifth Circuit's clear lack of jurisdiction over such an interlocutory appeal.  Because of Barton's actions, neither the title company nor the purchaser were willing to move forward with the closing on December 28.  These steps were all taken after the Receiver was forced to ask the Court to invalidate a lis pendens that Barton filed on the Rock Creek Property within days of the Receiver's filing the Motion to Approve the Sale.  *See* Dkt. 96.  Although the sale may eventually close, Barton's interference has cost the Receivership Estate tens of thousands of dollars to date, with additional damages based on accruing interest, continuing property insurance, and related costs, accruing daily.  *Thomas Dec.*, ¶ 29.  The Receiver will address this instance of contempt in a separate Motion for Show Cause Hearing after damages are more fully known unless the Court grants that alternative relief in response to this Motion and schedules a Show Cause Hearing.  If a hearing is scheduled, the Receiver will seek damages related to Barton's interference with the

---

[3] Notably with respect to Barton's protestations that the Rock Creek Property was his home and that its sale was intended as a distraction from his ability to defend this or the parallel criminal case, [*see* Dkt. 91], the Receiver has discovered that *by occupying the Property, Barton violated the terms of the Deed of Trust.*  More specifically, the Deed of Trust granted to the lender provided:

> **FFF. NON-OWNER OCCUPIED PROPERTY.** Throughout the term of the Loan, Borrower shall not occupy any portion of the Mortgaged Property in any manner. If Borrower is an entity other than a natural person, any persons with a direct or indirect ownership interest in Borrower shall not occupy any portion of the Mortgaged Property in any manner throughout the term of the Loan.

*Thomas Dec.*, ¶ 27.

Rock Creek Property Sale as sanctions.  This conduct is only highlighted here to further demonstrate Barton's continued and blatant disregard of the Receivership Order.

**F.      Coercive and Monetary Sanctions are Requested**

17.      Despite repeated and specific requests, Barton and his counsel refuse to provide the information and documents required by the Receivership Order and requested by the Receiver. The Receiver accordingly requests that the Court order Barton to provide, in writing and within three calendar days from the date of an order on this Motion, all information and documents required by the Receivership Order and all information and documents requested by the Receiver, including but not limited to the financial information, accounting and IT Access Data, and the art inventory and appraisal.  To ensure prompt compliance that has been lacking to date, the Receiver also requests that the Court impose a fine of not less than $500 per day for each day Barton fails to provide all required and requested information after the expiration of three days.

18.      The Receiver also requests that the Court award the Estate not less than $19,250 to compensate for the Receiver's fees and those of his counsel, incurred because of and to address the instances of contempt described above, including but not limited to additional time required to negotiate with Intuit in attempting to obtain Quickbooks access, negotiating with Barton and his counsel in an effort to obtain the financial information, IT Access Data, and the art and inventory information, and preparing this motion.

### III.      ARGUMENT & AUTHORITIES

**A.      Contempt Pursuant to Rule 37**

When a party fails to obey an order permitting or providing for discovery, the Court may impose sanctions and/or treat the failure as contempt of court. FED. R. CIV. P. 37(b)(2)(vii) (court may treat "as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."); *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011

WL 13134621, at *5 (E.D. Tex. July 12, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir. 2013); *see also Hogue v. Yordy*, No. 1:17-CV-00373-BLW, 2019 WL 4544549, at *6 (D. Idaho Sept. 19, 2019). A person commits contempt when, with knowledge of a court's definite and specific order, he fails to perform or refrain from performing what is required of him in the order. *SEC v. First Fin. Group of Texas, Inc.,* 659 F.2d 660, 669 (5th Cir. 1981). More specifically, the elements of civil contempt are: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009) (internal quotation omitted). Only an *inability* to comply, following "all reasonable efforts" to do so will excuse contempt. *M.D. bnf Stukenberg v. Abbot*, 509 F. Supp. 3d 683, 772 (S.D. Tex. 2020) (finding civil contempt where defendant failed to demonstrate inability to make required efforts within time-frame necessary to comply with court's order).

"Good faith is not a defense to a civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002). For this reason, the Court need not look to whether Barton's actions were "willful" nor more generally to his intent, to treat Barton's violations of the Receivership Order as contempt. *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980). Thus, if the Court concludes Barton's violations of the Receivership Order are violations of an order to provide discovery, the Court may treat those violations as contempt, compel compliance, and assess sanctions. Fed. R. Civ. P. 37(b)(2)(vii); *SynQor, Inc.*, 2011 WL 13134621, at *5.

**B.    Requested Relief**

The Receiver requests an order compelling Barton to provide, within three calendar days from the date of any order on this motion:

(1)     All information and materials required by paragraphs 8-10[4] and paragraph 18 of the Receivership Order, including specifically the credentials and information necessary to access the Receivership Entities' servers, email accounts, Quickbooks accounts and the identity, location, and appraisal information for all art owned by any Receivership Entity, including art that was sold, transferred or otherwise disposed of since 2019;

(2)     All information specifically requested by the Receiver in communications with Barton's counsel and others not addressed above, including:

(a)     All books and records of any Receivership Entities that are still in Barton's custody/control/possession, including all accounting data in Venkat Murugan's possession or control;

(b)     The location of any Quickbooks or other accounting files or backup files and all information necessary to access or obtain those documents and information;

(c)     The names, phone numbers, and email addresses for all former employees who were members of the accounting/financial team for the Receivership Entities between 2017 and 2022;

(d)     Tax Returns for the Receivership Entities for 2017-2022;

(e)     Name and contact information for any bookkeeper used by any of the Receivership Entities between 2017 and 2022;

(f)     Name and contact information for any accountant used by any of the Receivership Entities between 2017 and 2022;

(g)     A list of all properties (or property interests) owned by any entity owned or controlled by Mr. Barton, including the entity that owns the property interest, the property location, the type of asset (undeveloped land, apartments, etc.), the approximate net value, amounts and identity of lienholders and encumbrances, contact information for any entity involved in developing, managing, or operating the property, and the addresses used by the entity for receipt of mail.

(h)     Appraisals and potential lenders or purchasers for the Turtle Creek property and the apartments;

---

[4] Although these paragraphs require the Receivership Entities to provide the specified information, paragraphs 11, 14, and 33 require the Entities' past officers and any person who receives a copy of the Receivership Order to provide information and documents requested by the Receiver, and fully cooperate with the Receiver in providing information and documents. Although the Receivership Order requires that much of this information be provided through sworn statements, for purposes of this motion, the Receiver agrees to accept the information requested, without any verification or attestation. Notably, Barton has not attempted to provide even unsworn information to date.

(i)      An organizational or flow chart related to all Receivership Entities;

(j)      Properties or assets that are generating income and the accounts into which that income is deposited;

(k)      A list of all persons who hold company credit cards, and the entities listed as the account holder for those cards; and

(l)      A list of banks at which any Receivership Entity may have an open account.

## C.    Sanctions

Sanctions may compensate the injured party or coerce compliance. *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827 (5th Cir.1976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance."); *SynQor, Inc.*, 2011 WL 13134621, at *5; *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193, 69 S. Ct. 497, 500, 93 L. Ed. 599 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief."). Sanctions may also serve to deter further violations and thereby protect the Court's integrity. *See Chicago Truck Drivers v. Brotherhood Labor Leasing,* 207 F.3d 500, 504 (8th Cir. 2000) ("One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject."). The Court's broad discretion in crafting and awarding sanctions is limited only by the requirements that any sanction be "just," and reasonably relate to the "claim" underlying the order at issue. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004); *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1386 (Fed. Cir. 2013) (Affirming sanctions bearing a "reasonable relationship" to the harm caused by the conduct at issue and which also served as a deterrent against similar discovery violations by other litigants).

The Receiver requests coercive sanctions in the amount of $500 per day assessed against Barton for any day beyond the third day following an order granting this motion, in the event he

fails to provide all information requested. Additionally, the Receiver requests compensatory sanctions in an amount not less than $19,250[5], *Thomas Dec.,* to compensate the Receivership Estate for the costs incurred as a result of Barton's failure to comply with the Receivership Order.

**D.    Alternatively, A Show Cause Hearing is Appropriate**

The Receiver seeks enforcement and sanctions through Rule 37, rather than traditional contempt proceedings which would necessitate further expense and are unnecessary to demonstrate Barton's failure to comply with the Receivership Order.   In the event the Court concludes Rule 37(b)(2)(vii) does not provide the authority for the relief requested above and in the alternative, the Receiver requests a "Show Cause Hearing" at which Barton would be required to appear and show cause why he has failed and refused to comply with the Receivership Order.

Demonstating entitlement to a Show Cause Hearing requires only "adequate allegations." *See Wyatt ex rel. Rawlins v. Sawyer*, 80 F. Supp. 2d 1275, 1278 (M.D. Ala. 1999) (differentiating between movant's burden when requesting a show cause hearing (adequate allegations) versus movant's burden at Show Cause Hearing (clear and convincing evidence)).   Further evidence supporting the Receiver's allegations, while largely already proven, will be introduced at the hearing. Utilizing its broad discretion to award compensatory sanctions,[6] the Court can evaluate the sufficiency of the Receiver's evidence—which will include live testimony—at that time. *See FTC v. NHS Sys., Inc.*, No. CIV.A. 08-2215, 2011 WL 1833209, at *5–6 (E.D. Pa. May 13, 2011) (concluding receiver was "entitled to receive compensatory sanctions for losses arising from . . . [non-party's] disobedience.").

---

[5] If the Court grants the Motion, the Receiver will supplement the amount of fees to include fees incurred in preparing a Reply in support of this Motion and arguing it, if necessary.

[6] *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) ("district court has broad discretion in the assessment of damages in a civil contempt proceeding.") (internal quotation omitted)).

## IV.     <u>CONCLUSION</u>

The Receiver respectfully requests that the Court determine, pursuant to Rule 37, that in failing to comply with the provisions of the Receivership Order that required him to provide information and documents to the Receiver, Barton violated a discovery order and is in contempt. The Receiver also requests that the Court order Barton to comply with the Receivership Order and provide all information required and previously requested, as described in the Receivership Order and in the evidence supporting this Motion, within three days of the date of an order granting this Motion.  To compensate the Estate for the fees and costs incurred with respect to Barton's contempt, the Receiver requests monetary sanctions in an amount not less than $19,250.

In the alternative, the Receiver requests that the Court schedule a Show Cause Hearing compelling Timothy Barton to appear and show cause why he should not be held in contempt for failing to comply with the Receivership Order.  The Receiver requests such other and further relief to which he may show himself entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies that on multiple dates in November and December, and lastly on January 19, 2023, the Receiver conferred with counsel for Defendant Barton regarding the relief requested above. In response to the last conference on today's date, Barton responded that he lacked sufficient specificity for what he was required to provide, had not had adequate time to provide the information, was waiting on the Receiver to confirm the privilege protocol he proposed, and had been denied access to most information and documents so as to enable his response. He also stated that he felt in filing the Motion, the Receiver would violate the local rules. Thus, Barton has failed and refused to provide the requested information, documents and materials and the Receiver assumes Barton is opposed to this Motion. The SEC does not oppose the Motion.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.