**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § § § § | |
| *Plaintiff*, | § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants*. | § | |

**APPENDIX IN SUPPORT OF RECEIVER'S MOTION TO
<u>SUPPLEMENT ORDER APPOINTING RECEIVER</u>**

Respectfully submitted,

By: <u> */s/ Charlene C. Koonce* </u>
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cort Thomas*

## INDEX OF APPENDIX

| Exhibit 1 | Declaration of Cortney C. Thomas in Support of Motion to Compel and for Sanctions, etc. | APP001-080 |
|-----------|----------------------------------------------------------------------------------------|------------|

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

**DECLARATION OF CORTNEY C. THOMAS IN SUPPORT OF
MOTION TO COMPEL AND REQUEST FOR SANCTIONS, ETC.**

1.      My name is Cortney C. Thomas.  I have personal knowledge of the matters set forth in this Declaration, I am of sound mind, and I am otherwise competent to testify to these matters.

2.      I am an attorney licensed to practice law in the State of Texas.  On October 18, 2022, I was appointed Receiver in the case styled above, and ordered to take exclusive possession and control over all assets belonging to, under the control of the Receivership Entities.  *See* Order Appointing Receiver (the "Receivership Order"), Dkt. 29, ¶ 1.

3.      Very shortly after my appointment, I directed my counsel to reach out to Defendant Timothy Barton  ("Barton") and his counsel to meet, as an opportunity to discuss the properties and obtain the information and documents the Receivership Order required that he provide to me, as well as his recommendations regarding the best strategy for managing the properties owned by the Receivership Entities.  In this regard, my counsel and I met in person with Barton's counsel on October 20, 2022, during which we discussed numerous express requests for information.

4.      During that meeting, we also discussed Barton's concerns about privileged documents that he asserted were located in the offices at the Turtle Creek office location.  My team

1

APP002

and I proposed a Rule 502(b) "snap back" agreement, and Barton's counsel agreed to provide a different privilege protocol by the end of the same day, October 20, 2022.

5.      Following that meeting, my counsel emailed Barton's counsel a long list of the most urgent documents and information needed at the inception of the receivership.  A true and correct copy of the October 20, 2022 email to Barton's counsel is attached as **Exhibit A.**

6.      Although my counsel or I spoke with one of Barton's attorneys, Mr. Roper, by phone several times, and emailed with all of Barton's attorneys numerous times, we did not receive the information requested, with two exceptions.  First, Barton provided the contact information for Kirk Wilson, who was working on one of the properties being developed.  Second, in a subsequent in-person meeting with Barton's counsel, Mr. Roper and Max Barton, Max Barton provided certain additional information about the Amerigold Suites, an extended stay hotel property which was still operating (albeit at a loss), and for which property insurance was on the verge of cancellation, employees were submitting pay requests, and cancellation notices for utilities had been received by Defendants prior to my appointment.

7.      On October 25, 2022, my counsel emailed Barton's attorneys again, and requested the status of information that the Receivership Order required that Barton provide within five days of the date of the Order.  *See* Receivership Order, ¶ 18B.  A true and correct copy of the October 25, 2022 email is attached as **Exhibit B**.

8.      On October 24, 2022, my counsel also inquired about the status of the privilege protocol that had been promised on October 20, 2022.  A true and correct copy of the October 24, 2022 email from my counsel to Barton's is attached as **Exhibit C**.

9.      On November 1, 2022, Barton's counsel sent a proposal for reviewing hard copies of documents that were located in the Turtle Creek office. The protocol, however, proposed that

2

Barton's attorney's only would review all documents in several offices at the Entities' Turtle Creek location, and create a privilege log, segregating what they deemed privileged and then allow the Receiver the "opportunity" to review the privilege log.  The proposal, however, asserted Barton held a joint privilege with the Receivership Entities, and thus disclosed his intent to claim a privilege over any document in Barton was copied (as an officer or control person over any of the Entities), and asserted Barton's privilege concerns wholly excused his obligation to provide any of the information required by the Receivership Order or the Receiver's prior requests.  A true and correct copy of Barton's November 1, 2022 letters regarding his privilege concerns in providing the requested information and the information required by the Receivership Order, as well as his proposed outline for dealing with hard copy potentially privileged documents, and my counsel's November 7, 2022 response are attached as **Exhibit D.**

10.     While my team and I were investigating and analyzing the properties owned by the Receivership Entities, the competing ownership and liens on those properties, identifying and investigating the dozens and dozens of entities that fell within the scope of the Receivership Order, negotiating with vendors, creditors, lenders, attorneys who represented claimants and litigants in cases pending against Barton and the entities he controlled, and multiple other pressing activities, we were also attempting to gain control over the Receivership Entities' financial information, including their QuickBook accounts, email accounts, website and data storage.

11.     To assist with the IT Access Data, I retained Veracity Forensics, LLC ("Veracity"). I or someone on my team located the contact information for an individual, Quentin Lynn, who confirmed that a few months before entry of the Receivership Order, he had been providing IT support to the Receivership Entities and Barton.  Mr. Koons of Veracity reached out to Mr. Lynn who disclosed that a few months before the Receivership Order was entered, Max Barton had taken

3

over the IT services and had access credentials.  Mr. Lynn nonetheless attempted to log into the website and email accounts for the Receivership Entities using his credentials and was denied access because the access information had been changed.

12.    Mr. Koons then contacted Robert Heller, another IT consultant we discovered was also providing IT services to either the Receivership Entities or Barton individually, and requested the IT Access Data.  A true and correct copy of the November 11, 2022 email my counsel sent to Mr. Heller is attached as **Exhibit E**.  In response, Barton's counsel sent a letter stating that Heller was retained by Barton's counsel in furtherance of Mr. Barton's defense and instructed my counsel to cease and desist from contacting Mr. Heller.

13.    On November 16, 2022, my counsel responded to Barton's letter and instructed Barton and Heller to provide the IT Access Data as required by the Receivership Order.  In that email, we also conferred about a motion to show cause for the contempt in failing and refusing to provide the IT Access Data.  A true and correct copy of the November 16, 2022 email is attached as **Exhibit F**.  Barton's counsel did not immediately respond, but eventually called to discuss the issues.

14.    On November 28, 2022, my counsel again emailed Barton's counsel requesting, again, the list of art and inventory owned by the Receivership Entities, including the items Mr. Barton had removed from the Rock Creek property, the day or day after the Receivership Order was entered.  A true and correct copy of the November 28, 2022 email from my counsel is attached as **Exhibit G**.

15.    Notably, the art and antiques that had been located in the Rock Creek Property likely pale in comparison to art and antiques purportedly owned by JMJ Holdings, which Barton swore as of February 15, 2019, was valued at $12M.  A true and correct copy of a JMJ Holdings

**4**

Consolidated Balance Sheet, which my team discovered at the Turtle Creek Property, is attached as **Exhibit H**.  I have inspected the Turtle Creek Property and obtained appraisals of potentially valuable items located in there.  Although one large statute is located there (which Barton claimed he owned personally and he valued at $80,000, but which one appraisal valued at most, less than $20,000), the remainder of the art and antiques in that office location is worth, less than $3,500.  I have been unable to locate any other art or antiques, and certainly nothing valued at anywhere near $12M.

16.    On November 29, following several phone calls—during one of which counsel for Barton commented that the IT Access Data would be provided—in which they agreed to provide the inventory of the Receivership Entities' art, that had been requested numerous times previously.  A true and correct copy of Mr. Roper's November 29,  2022 email is included in **Exhibit I**.

17.    Later in the day on November 29, 2022, Barton's counsel sent a letter in which they admitted their consultant had access to all IT Data, and thus possessed the IT Access Data, but refused to provide that information until a privilege protocol was in place.  Barton, however, did not respond to the Receiver's prior communications about the privilege protocol.  A true and correct copy of the letter is included in **Exhibit J**.

18.    My counsel responded to the letter and Mr. Roper's email later on the same day.  A true and correct copy of my counsel's November 29, 2022 email, in which she responded to Barton's arguments regarding the IT Access Data, expressly stating that the Receiver was unwilling to wait for agreement on a privilege protocol, regarding which Defendants delayed providing reasonable agreement, to receive the IT Access Data is included in Exhibit J.  She nonetheless agreed to wait, again, for the inventory of art that should have been provided immediately following entry of the Receivership Order.

19.    On November 30, 2022, Mr. Roper emailed a list of 6 items of art, and stated in a footnote that he could not recall any other art.  Barton claimed he owned each piece.  A true and correct copy of the November 30, 2022 email and the list attached to it, are attached as **Exhibit K**.  Notably the list does not even include all of the items visible in an appraisal of the Rock Creek Property that Barton had filed in support of one of his own filings.  A true and correct copy of the photos in the appraisal are included in Exhibit K.  My counsel emailed Barton's counsel about the photos in the appraisal and asked for information about the location, ownership and value of all such items but received no response.  Additionally, my counsel again insisted on receiving the IT Access Data, regardless of the status of the elusive privilege protocol.  A true and correct copy of the December 1, 2022 email from my counsel to Barton is included in Exhibit K.

20.    My counsel and I spoke on the telephone with Barton's counsel on December 5, 2022 to discuss Barton's requested cooperation in signing documents required to comply with HUD regulations pertaining to one development.  During the call, the parties discussed, again, a privilege protocol to address privilege issues that may exist in some of the emails and in documents located at the Turtle Creek office.  On December 7, 2022, Mr. Barton's counsel emailed their proposed privilege protocol.  A true and correct copy of the email and the protocol they proposed are attached as **Exhibit L**.

21.    On December 12, 2022, my counsel responded to the privilege protocol proposed by Barton.  In a lengthy email, my counsel outlined changes to the protocol, including refusing to agree that any communication in which Mr. Barton was included was automatically subject to a privilege review, and required that any communication must also include an attorney or else fall outside of the scope of any potential privilege.  Additionally, we refused to agree that I would only obtain access to *potentially* privileged materials through a "request for production of a substantive

**6**

category of documents." That provision was wholly unreasonable, given my role as the only person who holds any privilege for any of the Receivership Entities. My counsel also observed that the protocol proposed by Barton lacked any reference to paper documents located at the Turtle Creek location. A true and correct copy of the December 12, 2022 email is attached as **Exhibit M**. Barton's counsel did not respond to the December 12, 2022 email and other than a potential conference on this Motion, has provided no further response to the requested changes to the privilege protocol, and has continued in their refusal to provide the IT Access Data.

22.    Although the access information for the Receivership Entities' accounting system was requested from Barton on October 20, 2022, he has continued in his refusal to provide that information or the contact information for the head of the accounting group utilized by the Receivership Entities. That refusal has been costly and time-consuming for the Receivership Estate.

23.    Third parties nonetheless identified Venkat Murugan as the head of the internal accounting group and provided Mr. Murugan's contact information. While Mr. Murugan did not return my calls between October 2022 and early January 2023, on January 5, 2023, Mr. Murugan finally returned my call. During the brief call, Mr. Murugan (1) stated that he was calling on Barton's behalf, (2) eventually professed that he had misunderstood the purpose of my voice message and had believed that I was actually a creditor of the Receivership Entities; (3) refused to answer any of my questions regarding the Receivership Entities' accounting systems without first speaking to Barton and receiving Barton's permission to talk to me; (4) acknowledged the existence of a bookkeeper and outside CPA, but refused to identify them by name or provide their contact information; and (5) promised to call me back after speaking with Barton. Within hours of the call, I sent a follow-up email to Mr. Murugan confirming in writing an initial set of

7

information requests pursuant to the Receivership Order.  A true and correct copy of the email I sent Mr. Murugan is attached as **Exhibit N**.  To date, Mr. Murugan, who by his own admission is still under the control of Barton, has not responded to my requests.

24.    As of the date of this filing, my accountants and I are still engaged in a prolonged effort with Intuit (the owner of QuickBooks) to secure access to the Receivership Entities' QuickBooks accounts.  Had Barton provided this information as requested in the first weeks of the Receivership, much time and expense would have been avoided.  Additionally, my inability to access QuickBooks and the Receivership Entities' server and email accounts has severely hampered my ability to prepare a general ledger for D4OP, LLC, a necessary step in the cost certification of a pending HUD loan.  The penalty for continued delays of this certification will likely result in damages of $30,000 per month, which I request the Court award as sanctions against Barton. While I am hopeful that I will have access to D4OP's QuickBooks account in the coming days, I do not know whether the needed information has been entered into QuickBooks or will be accurately reflected.  Nearly three months have needlessly passed while my team and I have worked diligently to obtain this information necessitated only because of Barton's refusal to comply with the Receivership Order's discovery mandates.

25.    Barton has interfered numerous times, with Receivership Properties and operations. On at least two occasions, long after he received a copy of the Receivership Order, I have received copies of emails in which Barton contacted individuals who are working on properties being developed by Receivership Entities and attempted to insert himself back into those transactions.

26.    More egregiously, in addition to filing a Lis Pendens to interfere with the sale of the Rock Creek Property, Barton disrupted that sale immediately following the Court's approval of the sale.

8

27.     Notably with respect to Barton's protestations that the Rock Creek Property was his home and that its sale was intended as a distraction from his ability to defend this or the parallel criminal case, [*see* Dkt. 91], I have discovered that *by occupying the Property, Barton violated the terms of the Deed of Trust.*  More specifically, the Deed of Trust granted to the lender provided:

> **FFF. NON-OWNER OCCUPIED PROPERTY.** Throughout the term of the Loan, Borrower shall not occupy any portion of the Mortgaged Property in any manner. If Borrower is an entity other than a natural person, any persons with a direct or indirect ownership interest in Borrower shall not occupy any portion of the Mortgaged Property in any manner throughout the term of the Loan.

True and correct copies of the relevant pages from the Deed of Trust are attached as **Exhibit O**.

28.     A few hours after the hearing, Barton reached out to the purchaser of the Rock Creek Property (unsolicited) in an attempt to discourage the purchaser from moving forward with the sale.  A true and correct copy of Barton's email to the seller is attached as **Exhibit P**.  My counsel notified Barton's counsel of this interference, shortly after we were notified about it by the buyer.  A true and correct copy of my counsel's email to Barton's counsel about his most direct interference in the sale of the Rock Creek Property is attached as **Exhibit Q**.

29.     A few days later, Barton filed an interlocutory appeal of the Order approving the sale, despite the Fifth Circuit's clear lack of jurisdiction over such an interlocutory appeal.  Because of Barton's actions, neither the title company nor the purchaser were willing to move forward with the closing on December 28.  Although the sale may eventually close, Barton's interference has cost the Receivership Estate not less than $8,568 in accrued interest, with additional interest accruing at $285.60 per day (assuming the contract rate of 9.95 applies rather than the default rate of 18%, an agreement I had negotiated with the lender based on the closing date which has now passed), not less than $54,500, a portion of the pre-payment penalty the lender had also agreed to forego if the sale closed before the end of the year, as well as continuing property insurance, and related costs, which are accruing daily.

9

30.     To mitigate these losses, I negotiated a short-term lease with the potential buyer. Because of an assignment of rents provision in the loan documents, however, the lender has demanded remittance of the lease proceeds, and thus those amounts do not mitigate the losses accrued to date or the continuing losses.

31.     The repeated demands for information and documents from Barton and alternative sources whom I believed might be able to provide the information Barton was required to provide but did not, have been time consuming and therefore expensive. Much of the time involved has been my own, although as reflected in the many exhibits, my counsel, and my accountants have also expended considerable time in communicating and negotiating with Barton, other sources, or Intuit (regarding the QuickBooks access), and preparing this Motion.  After reviewing the detailed time sheets regarding my and my counsel's work in this regard, I estimate not less than 50 hours has been spent in connection with Barton's failure and refusal to provide the information and documents described above and in the Motion, and in preparing the Motion and this Declaration. I estimate not less than an additional 20 hours will likely be necessary to prepare a supporting Reply.  In the event the Court sets a Show Cause Hearing rather than considering this Motion pursuant to Rule 37, much more time will be necessary to prepare for and conduct the hearing. Even with the deeply discounted rates for myself and my counsel, the attorneys' fees incurred to date resulting from Barton's continued failure to comply with the Receivership Orders's discovery process are not less than $19,250.

32.     I have been licensed to practice law in Texas since 2010.  After graduating from the University of Texas School of Law, I served one year as a federal law clerk in the Northern District of Texas to the Honorable Jane J. Boyle.  Following the clerkship, I worked at Vinson & Elkins LLP ("V&E") as a trial lawyer, where I worked on a variety of complex commercial

**10**

disputes in federal and state courts and before administrative tribunals.  After approximately seven years at V&E, I joined Brown Fox PLLC ("Brown Fox") as a partner, where I continue to handle a variety of business and commercial litigation, including multiple cases in federal courts around the country. I have also served as Receiver in one prior matter and represented a different receiver in various matters.

33.    My lead counsel, Charlene Koonce, has been licensed to practice law in Texas since 1991 and is also admitted to practice before the Fifth and Eleventh Circuit Courts of Appeal. Following graduation from Pepperdine School of Law with honors, Ms. Koonce worked as an associate at Gibson Dunn & Crutcher for several years, and more than twenty years at Scheef & Stone, LLP, where she became the firm's first female equity partner.  Throughout her thirty years of practice, Ms. Koonce has specialized in complex business litigation and government enforcement receivership matters and has served as or represented government enforcement receiver in more than three dozen federal cases in Texas, California, and Florida.

34.    My current standard rate is $450.00 per hour, and Ms. Koonce's standard rate os $450.  I am familiar with the reasonable and customary rates charged by attorneys and Receivers in comparable matters in the Northern District of Texas, and the rates charged by my counsel and myself, particularly given the deep discounts applied here, $385 for each of us, are reasonable. Additionally, the fees sought in connection with this matter were all necessary and caused by Barton's failure to comply with the Receivership Order as explained above.

35.    I declare under penalty of perjury that the foregoing is true and correct.

January 19, 2022

_/s/ Cortney C. Thomas_
CORTNEY C. THOMAS

**11**

# EXHIBIT A

## Charlene Koonce

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Thursday, October 20, 2022 1:44 PM |
| **To:** | Edney, Michael; Cort Thomas |
| **Cc:** | Roper, Richard B (DFW - X31210); Huffman, Ted; Porter, Javan (DFW - X61345) |
| **Subject:** | RE: Barton Receivership |

Michael and Richard - Thanks you for meeting with us this morning. In addition to the many items required by the Receivership Order, which we look forward to receiving, we think the following information is most urgent. Please note this list is just what we see as most urgent; it does not displace the information required by the Receivership Order.

1) A list of all properties (or property interests) owned by any entity owned or controlled by Mr. Barton. Include the entity that owns the property interest, the property location, the type of asset (undeveloped land, apartments, etc.), the approximate net value, amounts and identify of lienholders and encumbrances, contact information for any entity involved in developing, managing, or operating the property, and the addressed used by the entity for receipt of mail. This request includes properties/entities that are not listed in the Receivership Order, but which fall within its scope, for instance the property in Alabama. Please also include Mr. Barton's proposal for best path forward on the asset.
2) Appraisals and potential lenders or purchasers for the Turtle Creek property and the apartments (you mentioned a bridge lender and prospective purchasers);
3) A list of the entities you agree fall within the scope of the Receivership Order, and any existing organizational or flow charts related to the entities;
4) User names, passwords, log-in information for the accounting system and bank accounts, and contact information for employees or former employees who have information about these issues.
5) Identify properties or assets that are generating income and identify the accounts into which that income is deposited;
6) Contact information for Kirk Wilson;
7) The identity, estimated value, and any other pertinent details for artwork and other personal property at 2999 Turtle Creek that is valued at $1,000 or more;
8) Identify all persons who hold company credit cards, the entities listed as the account holder for those cards, and let us know when those cards will be returned to Cort. (To avoid any doubt down the road, we are advising again that no person is authorized to use any credit card issued to any Receivership Entity);
9) A list of banks at which any Receivership Entity may have an open account.
10) Please explain what approval or confirmation is needed from the Mayor of Venus, and your proposal/recommendation for obtaining that approval.

Thank you.

**CHARLENE KOONCE**
214.367.7503
BROWNFOXLAW.COM

1

APP014

APP015

# EXHIBIT B

| From: | Charlene Koonce |
|---|---|
| Sent: | Tuesday, October 25, 2022 6:57 PM |
| To: | Edney, Michael; Cort Thomas; Bernstein, Keefe |
| Cc: | Roper, Richard B (DFW - X31210); Huffman, Ted; Porter, Javan (DFW - X61345); Tim Wells; eric.chartan@bclplaw.com; mheiskell@johnson-vaughn-heiskell.com |
| Subject: | RE: Barton Receivership |

All- I believe Mr. Barton is in the process of compiling certain information requested by the Receiver.  I have  also received a limited response to our correspondence from counsel for Mr. Fu and Mr. Barton.  We appreciate your cooperation and efforts and will respond to those specific responses separately.

Without waiver of the requests sent to each of you in a letter last week or the additional provisions of the Receivership Order (see ¶¶8 – 10), we also need to check on the status of the information and materials that the Receivership Order required of each of your clients "within give business days of receipt of the Order."  See ¶ 18B.  Please advise.



**CHARLENE KOONCE**
📞 214.367.7503
BROWNFOXLAW.COM

1

APP016

# EXHIBIT C

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Monday, October 24, 2022 10:47 AM |
| **To:** | Edney, Michael; Cort Thomas; Bernstein, Keefe |
| **Cc:** | Roper, Richard B (DFW - X31210); Huffman, Ted; Porter, Javan (DFW - X61345); Tim Wells |
| **Subject:** | RE: Barton Receivership |
| **Attachments:** | Barton Entities List (alphabetized) v.2.docx |

Counsel, the Receiver will be filing a motion to supplement the Receivership Order to expressly identify the entities listed in the attachment as Receivership Entities.  Please confirm your agreement or opposition by 4:00 today.

Also, we have not received the proposed privilege protocol that Defendants said would be provided by the end of the day last Thursday.  If we don't have that by the end of today, we will move forward and handle the privilege issue based on our own processes.

Thank you,

**CHARLENE KOONCE**
📞 214.367.7503
BROWNFOXLAW.COM

1

APP018

# EXHIBIT D

## Charlene Koonce

**From:** Charlene Koonce
**Sent:** Monday, November 7, 2022 7:52 AM
**To:** Edney, Michael; Cort Thomas
**Cc:** Richard Rooper; Huffman, Ted
**Subject:** RE: Securities and Exchange Commission v. Barton, No. 3:22-cv-2118-X

Michael – thank you for these letters. First, with respect to your proposed privilege protocol, I note that you had promised to provide Mr. Barton's proposed protocol by the close of business on 10/20. Your proposal arrived almost two weeks late. In the intervening time, we had discussed an FRE 502(b) snapback proposal with Mr. Roper and we propose that we use that process here. If we proceeded with your proposal to review, segregate, and log documents in which Mr. Barton claims a privilege, a member of the Receiver's team would need to be present at the premises while your team reviewed, thereby multiplying the cost of the review for the estate. A 502(b) agreement would save both sides time and money.

More generally, I see no basis in the Receivership Order or otherwise for your concerns about "the receiver's intention and mandate to communicate with Government agents and prosecutors." The Receiver's mandate compels him to perform many tasks and report to the Court about the status of the estate and his efforts. While he is certainly empowered to provide testimony regarding Mr. Barton's cooperation or lack thereof at any sentencing hearing, that effort has *nothing* to do with communicating any purportedly privileged information to anyone. And as you may know, a receiver serves as *the Court's* agent. *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) ("The receiver is not an agent of the parties, nor is he like any other party affected by the wrongdoing of the entity's leaders— in this case, by way of a classic Ponzi scheme. He is "an officer or arm of the court ... appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody."). In the event the Receiver discovered privileged documents in reviewing the materials located in the Receivership Entity's offices that he is *required* to review, he would put them aside for your retrieval on behalf of Mr. Barton. After ascertaining the existence of a privilege in such materials, under no circumstances would the Receiver continue reviewing the subject documents or include reference to them in any report to the Court or in communications with the government. Your concerns to the contrary are simply unfounded. Please let us know by the close of business on Thursday whether you will agree to the use of a FRE 502(b) agreement with respect to documents located in the Receivership Entities' offices.

I also note that with respect to Mr. Barton individually claiming a privilege in what you deem "jointly-privileged documents" finds little if any support in the cases you cite. We are unaware of any joint defense agreement between Mr. Barton individually and any other Receivership Entity, nor would the common interest doctrine have any application in these circumstances. Nor is the Receiver akin to a successor in interest who was previously adverse to Mr. Barton as in *In re Bounds.*

Finally, while we appreciate Mr. Roper's efforts to provide the information requested to date by the Receiver and required by the Receivership Oder, we must disagree that Mr. Barton's privilege against incrimination excuses his obligation to produce documents requested by the Receiver or required by the Order. First, you provide no basis for any assertion that the act of production in these circumstances would have any incriminating consequences. For instance, providing appraisals of certain items of art or other identifying information for Receivership Assets could not provide any basis to incriminate Mr. Barton. Moreover, other requested information and documents, such as the location, account numbers, and balances easily falls within the "foregone conclusion" exception to any testimonial conduct in producing the requested information, if in the context presented here, the act of production actually qualified as compelled testimony rather than the mere production of previously existing documents. In short, the law does not support your assertion that Mr. Barton's Fifth Amendment privilege insulates him from his obligation to produce documents and information requested by the Receiver.

1

APP020



**CHARLENE KOONCE**
☎ 214.367.7503
BROWNFOXLAW.COM

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Tuesday, November 1, 2022 5:17 PM
**To:** Cort Thomas <cort@brownfoxlaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton, No. 3:22-cv-2118-X

Dear Mr. Thomas and Ms. Koonce:

Attached please find two letters regarding the above entitled matter. Please contact us with any questions.

My very best regards,

Mike


Michael J. Edney
Head of Government Investigations Practice
Hunton Andews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 778-2204

2



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20037

MICHAEL J. EDNEY
HEAD OF GOVERNMENT INVESTIGATIONS
PRACTICE
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

November 1, 2022

**VIA ELECTRONIC MAIL**

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com

> Re:    Sections 8-10, 18, and 24 of the Court's Order Appointing a Receiver: *SEC v.*
> *Barton et al.*, No. 3:22-CV-2118 (N.D. Tx.)

Dear Ms. Koonce:

The Hunton Andrews Kurth LLP law firm represents Mr. Timothy Barton in both the above-entitled matter and in *United States v. Barton*, pending in the Northern District of Texas. We write today regarding terms of the Receivership Order requiring the provision of certain information to the receiver. These terms include paragraphs 8-10, 18, and 24. We note the October 25, 2022, correspondence from your office seeking to remind Mr. Barton of his obligation to provide information pursuant to paragraph 18B and suggesting that he may also be required to do so under paragraphs 8-10 of that order.

Paragraphs 8-10 require "the Receivership Entities" to provide a variety of information. The Receivership Order, however, dismissed all "trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys, and other agents of the Receivership Entities," and "suspended" the authority "of any general partners, directors, and/or managers" of those entities. *See* Receivership Order at ¶ 4. The Receivership Order, therefore, divested Mr. Barton personally of any authority or responsibility to direct the Receivership Entities to provide the sworn statements or other information required by paragraphs 8-10.

Paragraph 18B does place obligations on "any person who receives actual or constructive notice of this Order who has or *had* possession or control of any Receivership Assets." (Emphasis added.) To the extent that this term might apply to Mr. Barton personally rather than the corporations holding the assets and now under the control over the receiver, certain actions of the receiver have eliminated Mr. Barton's effective or practical access to the information necessary to make the "sworn statement" required by Paragraph 18B. These actions including excluding Mr. Barton of access to his home, place of business, and business

Charlene Koonce, Esq.
November 1, 2022
Page 2

records. These actions have also cut off the access of Mr. Barton's assistants and employees to this information.

To the extent the intervening actions of the receiver cutting Mr. Barton off from the information necessary to make the statements contemplated by Paragraph 18B were not sufficient to excuse his compliance with that paragraph, Paragraph 18B clearly seeks to *compel* through judicial order the sworn testimony of Mr. Barton regarding matters directly pertinent to criminal charges pending in *United States v. Barton*. Accordingly, we have advised Mr. Barton to invoke his constitutional right against self-incrimination, to include his right against compelled testimony and production of information and materials, in response to any obligation Paragraph 18B seeks to impose on him. *See, e.g.*, *United States v. Hubbell*, 530 U.S. 27, 36-37 (2000) (explaining that compelling production of documents may itself violate the Fifth Amendment because document production speaks to existence, possession, control, and authenticity); *S.E.C. v. Farmer*, 560 F. App'x 324, 326 (5th Cir. 2014) (quoting *Hubbell* and explaining that "[t]he Fifth Amendment protects against both self-incriminating testimony and production of documents where production implicitly communicates" existence, possession, control, or authenticity). Please regard this letter as notice that Mr. Barton is invoking his Fifth Amendment privilege against any effort to compel a sworn statement from him pursuant to Paragraph 18B of the Receivership Order.

As you know, counsel for Mr. Barton have been providing information to the receiver to assist in its efforts to identify the many commercial real estate assets held by the receivership entities and will continue to do so. Mr. Barton's sincere hope is that the receiver will continue Mr. Barton's efforts, well advanced prior to the Court's order, to assemble liquid assets that could be available for those lenders who are the focus of the SEC's action and who choose to seek the return of their funds in a manner consistent with U.S. tax and anti-money laundering laws. My colleague, Richard Roper, has spent extensive time briefing you on these efforts and other information about the extensive commercial real estate assets associated with Mr. Barton and will continue to do so. All of us look forward to continue working with the receiver to provide additional information on concrete actions that, we believe, will achieve that outcome in short order.

Should you have any questions, please do not hesitate to contact me directly.

My very best regards,

Michael J. Edney

Cc: Cort Thomas, Esq.
Richard Roper, Esq.

APP023



HUNTON
ANDREWS KURTH

HUNTON ANDREWS KURTH LLP
2200 PENNSYVANIA AVENUE, NW
WASHINGTON, DC 20037

MICHAEL J. EDNEY
HEAD OF GOVERNMENT INVESTIGATIONS
PRACTICE
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

November 1, 2022

**_VIA ELECTRONIC MAIL_**

Cort C. Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: cort@brownfoxlaw.com

   Re: _Securities and Exchange Commission v. Barton, et al._, No. 3:22-cv-2118-X

Dear Mr. Thomas:

   The Hunton Andrews Kurth LLP law firm represents Mr. Timothy Barton in a civil matter initiated by the Securities and Exchange Commission and the criminal prosecution initiated by the United States Attorney for the Northern District of Texas. I write today to memorialize our position on crucial issues regarding the attorney-client privilege and attorney work product protections.

   The receiver has taken possession of Mr. Barton's personal office and home and is seeking to take possession of an email account at JMJ Development that he used for personal purposes. His office has also been the epicenter of preparation by him and his lawyers to defend himself against the SEC's and the DOJ's charges of fraud. This includes entire offices dedicated to the use of his lawyers, and materials created in conjunction with and under the supervision of counsel by Mr. Barton.

   As such, the receiver now taken possession of documents and communications that are protected by the attorney-client privilege and the attorney work product doctrine. Before you review these documents, there must be a protocol that ensures that neither receiver nor its staff is exposed to this privileged and/or protected information, especially given the receiver's intention and mandate to communicate with Government agents and prosecutors.

   To this end, we are requesting that all documents contained in the personal offices of Mr. Barton and his three counsel in the building not be reviewed by any member of your team, until a group of Mr. Barton's attorneys have reviewed them for privilege and created a log of documents over which we are asserting privilege. In that review, Mr. Barton's counsel would not remove any documents from the premises. Instead, they would physically segregate, and prepare a log detailing, the documents over which Mr. Barton is asserting

Cort C. Thomas, Esq.
November 1, 2022
Page 2

privilege. Depending on your plans to search the electronic communication of Mr. Barton and his attorneys on JMJ Development servers, a similar protocol should be put in place for those data.

We would propose that the receiver then review that log and identify any documents over which the receiver has concerns regarding the assertion of privilege. We would then meet and confer and, in the event that agreement cannot be reached, the parties can seek a judicial resolution of the privilege claim. This proposed protocol also will conserve resources, as it will avoid the retention of separate professionals to review for privilege in the first instance.

I want to address, in advance, an issue that arose in our discussion on Thursday, October 20, 2022. The concept was raised that the receiver has been given control over the privilege of various corporate entities, such that everything on the premises, to the extent privileged, is now in the receiver's control. As an initial matter, the facilities that you now control also served as Mr. Barton's personal offices and home, and there are many documents therein prepared by or under the supervision of Mr. Barton's personal lawyers in the SEC and DOJ matters. In any event, the presence of closely held corporations in Mr. Barton's privilege communication does not give the receiver control over jointly-privileged documents. This issue has been addressed before by the courts, and the participation of the corporation in many of these privileged communications does not destroy Mr. Barton's right to confidentiality. *See, e.g., In re Bounds*, 443 B.R. 729 (Bankr. W.D. Tex. 2010) ("In the instant case, this Court finds that [a new control person] is not entitled to the work product generated on behalf of the Corporations insofar as it contains the Debtor's own confidential information. Handing over all the work product of the Corporations, for whom the Debtor once served as an officer, would almost certainly result in a disclosure of the Debtor's own confidential information."); *In re: Taproot Sys., Inc.*, No. 11-05255-8-JRL, 2013 WL 3505621 (Bankr. E.D.N.C. July 11, 2013) ("The general rule with regard to materials protected by the common interest doctrine or a joint defense agreement is that one party to the agreement cannot unilaterally waive the protection.").

APP025

Cort C. Thomas, Esq.
November 1, 2022
Page 3

These are important matters. The seizure of these documents and e-mail accounts is over Mr. Barton's objection. Should these privileged materials make their way into your substantive review and become part of briefings to the Government, they will taint the integrity of a criminal prosecution that is threatening Mr. Barton's liberty. I hope to resolve this issue with you through mutual agreement, but will not hesitate to take this issue to the Court given its importance in the event appropriate arrangements are not reached.

I look forward to working with you through these matters.

Very truly yours,

Michael J. Edney

cc:     Richard Roper, Esq.
        Charlene Koonce, Esq.

# EXHIBIT E

APP027

## Charlene Koonce

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Friday, November 11, 2022 7:41 PM |
| **To:** | Robert@ckcconsulting.com |
| **Cc:** | Chip Koons; Cort Thomas |
| **Subject:** | SEC v. Barton et al |
| **Attachments:** | 029. Order Appointing Receiver (002).pdf; Complete list of entities 11.01.22.docx |

| | |
|---|---|
| **Importance:** | High |

Mr. Heller, as Mr. Koons explained, Cort Thomas has been appointed as Receiver for all entities controlled, directly or indirectly, by Tim Barton. A copy of the Receivership Order is attached for your review. (See ¶1). A list of additional entities the Receiver believes also fall within the scope of the Receivership Order is attached.

You will note from the attached Order that Mr. Thomas is required to take possession and control over all Receivership property and records (¶ 6B). No person other than Mr. Thomas is permitted to exercise any authority on behalf of any Receivership Entity. (¶ 5). All persons who receive a copy of the order are required to preserve and turn over to the Receiver all paper and electronic information for the Receivership Entities (¶¶ 7, 14), and to cooperate in providing information and assistance in transferring information and records to the Receiver. (¶ 33A).

The Receiver has retained Veracity Forensics to assist in obtaining control over the electronic data and related accounts of all Receivership Entities. Please cooperate with Mr. Koons in providing the necessary and access and information to allow him to do that.

Please let me know if you have any questions. Thanks very much for your assistance.

 **CHARLENE KOONCE**
Partner

8111 Preston Road    📠 214.327.5000
Suite 300    📞 214.367.7503
Dallas, Texas 75225



📇 👤 in   BROWNFOXLAW.COM

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Brown Fox PLLC immediately (by replying to this message or calling 214.327.5000) and immediately destroy all copies of this message and any attachments. Thank you.

1

APP028

# EXHIBIT F

## Charlene Koonce

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Wednesday, November 16, 2022 7:09 PM |
| **To:** | Edney, Michael |
| **Cc:** | Huffman, Ted; Richard Rooper; Wester, Lori; Robert@ckcconsulting.com |
| **Subject:** | RE: Securities and Exchange Commission v. Barton et al. |
| | |
| **Importance:** | High |

Mr. Edney – As Mr. Heller knows, and as he undoubtedly informed you, we contacted him because we were informed that he had become the IT professional *for the Defendant Entities.*

Regardless of whatever Mr. Heller's role is, based on additional information we received, it is abundantly clear that Mr. Heller has received the admin credentials for the Receivership Entities' servers, email accounts and additional electronic data, *and that he changed those credentials.* In so doing, he is interfering with the Receiver's ability to access that information and data.

Based on your request that we no longer communicate with Mr. Heller, a request I am not conceding is appropriate or which in any way insulates Mr. Heller from the mandates in the Receivership Order, I will direct the following to you and your clients:

**Pursuant to ¶¶ 12, 18B.3, and 33 you are hereby instructed to provide me with all access credentials for all Receivership Entity data storage devices, clouds, servers, etc. to me by 9 a.m. tomorrow.** Regardless of who retained Mr. Heller, or why, he and you as his principal, or your clients if you prefer to concede that they are the source of this information, are obligated to provide this requested information to the Receiver. If you on behalf of Mr. Heller fail to provide this requested information, we will so advise the Court and seek the appropriate relief, including but not limited to a request to hold each and both of you in contempt of Court until the access credentials are provided, and sanctions for the costs of obtaining this information that was requested nearly a month ago and expressly required by the Receivership Order. There is no attorney-client privilege, work product protection, or Fifth Amendment privilege in this access information.

Moreover, as Mr. Heller was informed and as the Receivership Order makes abundantly clear ALL data should have been preserved. We will of course seek all and any appropriate remedies if we discover that data or information has been altered or deleted.



**CHARLENE KOONCE**
☎ 214.367.7503
BROWNFOXLAW.COM

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Wednesday, November 16, 2022 5:40 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Richard Rooper <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton et al.

Dear Ms. Koonce:

1

APP030

Attached please find correspondence in the above entitled matter.

APP031

# EXHIBIT G

APP032

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Monday, November 28, 2022 2:40 PM |
| **To:** | Edney, Michael; Robert@ckcconsulting.com |
| **Cc:** | Roper, Richard B (DFW - X31210); Tim Wells; Morgan Buller |
| **Subject:** | Conference on Motion for Show Cause Hearing |

Counsel – The Receiver has discovered the existence of extensive and valuable artwork owned by JMJ and other Receivership Entities, some of which was recently removed from the property owned by SF Rock Creek and hidden.  As you know, the Receiver has requested multiple times and in various ways, a list all artwork owned by any of the Receivership Entities including any appraisals for that artwork, and a description of any liens held on that art.  To date, we have not received any response to this request.

Similarly, last week I requested that you, Mr. Barton, or Mr. Heller provide immediately, the credentials to access the Receivership Entities' electronic data.  To date, we have not received the requested information.

Additionally, we are aware that Mr. Barton is using the email address:  tbarton@jmjdevelopment.com.  He is directed to cease and desist from using any indicia of ownership/control over any Receivership Entity, including but not limited to this and any similar email addresses.

Please be advised that unless we receive this information before the close of business tomorrow, November 29, 2022, we will proceed to file a Motion for Show Cause Hearing, seeking to hold Mr. Barton, Mr. Heller, and any other person who has failed to comply with the request or is interfering with the Receivers' entitlement to the requested information, in contempt of court.  We will seek all appropriate coercive and compensatory sanctions.



**CHARLENE KOONCE**
Partner

⊙ 8111 Preston Road      📠 214.327.5000
Suite 300        ☎ 214.367.7503
Dallas, Texas 75225

1

APP033

# EXHIBIT H

APP034

**JMJ HOLDINGS**
**Consolidated Balance Sheet**
**As of  15th Feb., 2019**

**Assets**

*Current Asset*

| | | |
|---|---|---|
| Cash | | $174,536 |
| 1 Account Receivables | | $807,503 |

note 1  All short term receivables renew every 30 days and are callable within a 30 day notice.

| | | |
|---|---|---|
| Prepaid Expenses | | $0 |
| 2 Working Capital Loans | | $617,675 |

note 2  TR Carnegie and Lejolla working Capital revolvers callable with 30 days notice

| | | |
|---|---|---|
| **Total Current Assets** | | **$1,599,714** |

*Fixed (Long-Term) Assets*

| | | |
|---|---|---|
| 4 Account Receivables | | $0 |

note 4  All long term receivables are stated at 12 months.

| | | |
|---|---|---|
| Villital Towers | | $8,000,000 |
| Bellwether | | $24,766,400 |
| Parc at Windmill Farms | | $42,988,946 |
| Turtle Creek | | $36,000,000 |
| Long Term Investments | | $4,500,000 |
| Art Work | | $12,670,000 |
| (less accumulated depreciation) | | ($63,000) |
| **Total Fixed Assets** | | **$128,862,346** |

*Other Assets*

| | | |
|---|---|---|
| 5 Other | | $1,543,000 |

note 5  shares in private company and is not liquid

| | | |
|---|---|---|
| **Total Other Assets** | | **$1,543,000** |
| | | |
| **Total Assets** | | **$132,005,060** |

**Liabilities and Owners Equity**

*Current Liabilities*

| | | |
|---|---|---|
| Accounts Payable | | $41,542 |
| Villita Towers | | $2,100,000 |
| Bellwether | | $19,331,000 |
| Parc at Windmill Farms | | $36,540,600 |
| 6 Long-term Loans | | $868,311 |

note 6  Inter company note due 3/17/2019

| | | |
|---|---|---|
| Notes Payable | | $17,465,000 |
| 7 Current portion of Long-Term Debt | | $2,150,311 |

note 7  Goldmark note matures 9/19 and will be refinanced at that time

| | | |
|---|---|---|
| **Total Liabilities** | | **$78,496,764** |

*Owner's equity*

| | | |
|---|---|---|
| Owner's Investments | | $53,508,296 |
| Retained Earnings | | $0 |
| Other | | $0 |
| **Total Owner's Equity** | | **$53,508,296** |
| | | |
| ***Total Liabilities and Owner's Equity*** | | **$132,005,060** |

To the best of my knowledge, the above statement is true and correct

Tim Barton
as President

APP000016

# EXHIBIT I

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Tuesday, November 29, 2022 4:43 PM |
| **To:** | Huffman, Ted; Roper, Richard B (DAL - X31210); Edney, Michael |
| **Cc:** | Wester, Lori; Robert@ckcconsulting.com; Tim Wells; Morgan Buller |
| **Subject:** | RE: Securities and Exchange Commission v. Barton et al. |

Mr. Roper – thank you for your agreement to provide the lists of art, its ownership, and approximate value. We ask that Mr. Barton include all art located in the Turtle Creek location that he can recall and we can provide access to that location or provide photos of pieces he does not recall if necessary.

Mr. Huffman, with respect to your letter, we expended significant time and effort to identify the IT consultant previously contracted by the Receivership Entities. When we spoke with that individual a few weeks ago, he tried using his credentials to log in and no longer had access. Obviously, however, Mr. Heller has access. So, either Mr. Barton, one of his children, or his employees changed that access, or Mr. Heller did. In any event, the credentials are known to someone that you represent or your agent, all of whom have received a copy of the Receivership Order.

Regarding the privilege protocol, we have proposed a protocol for handling privileged materials *several times*, the last time on November 7, 2022. We received no response.

While the Receiver is willing to work towards resolution of the privilege issues and would prefer not to have to file a MSC, he is not agreeable to you or your consultant holding the IT access credentials hostage while we attempt to negotiate that process. As previously requested, please provide the IT credentials.

Based on your communications today and in an effort to avoid the necessity of a MSC, we will wait to the close of business tomorrow to receive that information, as well as the lists of the art described previously by Mr. Roper.

 **CHARLENE KOONCE**
📞 214.367.7503
BROWNFOXLAW.COM

**From:** Huffman, Ted <THuffman@hunton.com>
**Sent:** Tuesday, November 29, 2022 4:04 PM
**To:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Ms. Koonce—

Following up on Mr. Roper's email below, please see the attached correspondence.

**From:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>
**Sent:** Tuesday, November 29, 2022 2:27 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

1

APP037

Caution: This email originated from outside of the firm.

Rule 408 Communication

Ms. Koonce:

Thanks for speaking with me today.   As we discussed, Barton, through counsel, will provide you two lists.  First, a list of the art work, and each work's approximate value, located in the residence, 4107 Rock Creek Drive, Dallas, Texas, including art work taken out of the residence. Second, a list of art work, and each art work's approximate value located at 2999 Turtle Creek, Dallas, Texas.   Regarding the latter list, Baron may need to walk through the building to ensure that he can accurately list the art work.

Also, Barton will immediately cease from using any Barton-entity email address.

Finally, we will respond this afternoon regarding the receiver's request for the credentials to access the entity file server.

Please respond if I am missing something.

Regards,


**Richard Roper | Holland & Knight**

Partner

Holland & Knight LLP

One Arts Plaza, 1722 Routh Street, Suite 1500 | Dallas, Texas 75201

Phone 214.969.1210 | Fax 214.964.9501 | Mobile 682.465.1008

richard.roper@hklaw.com | www.hklaw.com

Add to address book | View professional biography


**From:** Charlene Koonce <charlene@brownfoxlaw.com>
**Sent:** Wednesday, November 16, 2022 7:09 PM
**To:** Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.
**Importance:** High

*[External email]*

Mr. Edney – As Mr. Heller knows, and as he undoubtedly informed you, we contacted him because we were informed that he had become the IT professional *for the Defendant Entities.*

Regardless of whatever Mr. Heller's role is, based on additional information we received, it is abundantly clear that Mr. Heller has received the admin credentials for the Receivership Entities' servers, email accounts and additional electronic data, *and that he changed those credentials.* In so doing, he is interfering with the Receiver's ability to access that information and data.

Based on your request that we no longer communicate with Mr. Heller, a request I am not conceding is appropriate or which in any way insulates Mr. Heller from the mandates in the Receivership Order,  I will direct the following to you and your clients:

2

APP038

Pursuant to ¶¶ 12, 18B.3, and 33 you are hereby instructed to provide me with all access credentials for all Receivership Entity data storage devices, clouds, servers, etc. to me by 9 a.m. tomorrow.    Regardless of who retained Mr. Heller, or why, he and you as his principal, or your clients if you prefer to concede that they are the source of this information, are obligated to provide this requested information to the Receiver.  If you on behalf of Mr. Heller fail to provide this requested information, we will so advise the Court and seek the appropriate relief, including but not limited to a request to hold each and both of you in contempt of Court until the access credentials are provided, and sanctions for the costs of obtaining this information that was requested nearly a month ago and expressly required by the Receivership Order.  There is no attorney-client privilege, work product protection, or Fifth Amendment privilege in this access information.

Moreover, as Mr. Heller was informed and as the Receivership Order makes abundantly clear ALL data should have been preserved.  We will of course seek all and any appropriate remedies if we discover that data or information has been altered or deleted.

 **CHARLENE KOONCE**
214.367.7503
BROWNFOXLAW.COM

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Wednesday, November 16, 2022 5:40 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Richard Rooper <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton et al.

Dear Ms. Koonce:

Attached please find correspondence in the above entitled matter.

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

APP039

# EXHIBIT J

APP040

Add to address book | View professional biography

**From:** Charlene Koonce <charlene@brownfoxlaw.com>
**Sent:** Tuesday, November 29, 2022 4:43 PM
**To:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com; Tim Wells <tim@brownfoxlaw.com>; Morgan Buller <morgan@brownfoxlaw.com>
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Mr. Roper – thank you for your agreement to provide the lists of art, its ownership, and approximate value. We ask that Mr. Barton include all art located in the Turtle Creek location that he can recall and we can provide access to that location or provide photos of pieces he does not recall if necessary.

Mr. Huffman, with respect to your letter, we expended significant time and effort to identify the IT consultant previously contracted by the Receivership Entities. When we spoke with that individual a few weeks ago, he tried using his credentials to log in and no longer had access. Obviously, however, Mr. Heller has access. So, either Mr. Barton, one of his children, or his employees changed that access, or Mr. Heller did. In any event, the credentials are known to someone that you represent or your agent, all of whom have received a copy of the Receivership Order.

Regarding the privilege protocol, we have proposed a protocol for handling privileged materials *several times*, the last time on November 7, 2022. We received no response.

While the Receiver is willing to work towards resolution of the privilege issues and would prefer not to have to file a MSC, he is not agreeable to you or your consultant holding the IT access credentials hostage while we attempt to negotiate that process. As previously requested, please provide the IT credentials.

Based on your communications today and in an effort to avoid the necessity of a MSC, we will wait to the close of business tomorrow to receive that information, as well as the lists of the art described previously by Mr. Roper.

 **CHARLENE KOONCE**
☎ 214.367.7503
BROWNFOXLAW.COM

**From:** Huffman, Ted <THuffman@hunton.com>
**Sent:** Tuesday, November 29, 2022 4:04 PM
**To:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Ms. Koonce—

Following up on Mr. Roper's email below, please see the attached correspondence.

**From:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>
**Sent:** Tuesday, November 29, 2022 2:27 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>

2

**Cc:** Huffman, Ted <THuffman@hunton.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Rule 408 Communication

Ms. Koonce:

Thanks for speaking with me today.  As we discussed, Barton, through counsel, will provide you two lists.  First, a list of the art work, and each work's approximate value, located in the residence, 4107 Rock Creek Drive, Dallas, Texas, including art work taken out of the residence. Second, a list of art work, and each art work's approximate value located at 2999 Turtle Creek, Dallas, Texas.  Regarding the latter list, Baron may need to walk through the building to ensure that he can accurately list the art work.

Also, Barton will immediately cease from using any Barton-entity email address.

Finally, we will respond this afternoon regarding the receiver's request for the credentials to access the entity file server.

Please respond if I am missing something.

Regards,


**Richard Roper | Holland & Knight**
Partner
Holland & Knight LLP
One Arts Plaza, 1722 Routh Street, Suite 1500 | Dallas, Texas 75201
Phone 214.969.1210 | Fax 214.964.9501 | Mobile 682.465.1008
richard.roper@hklaw.com | www.hklaw.com

Add to address book | View professional biography


**From:** Charlene Koonce <charlene@brownfoxlaw.com>
**Sent:** Wednesday, November 16, 2022 7:09 PM
**To:** Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.
**Importance:** High

*[External email]*
Mr. Edney – As Mr. Heller knows, and as he undoubtedly informed you, we contacted him because we were informed that he had become the IT professional *for the Defendant Entities.*

Regardless of whatever Mr. Heller's role is, based on additional information we received, it is abundantly clear that Mr. Heller has received the admin credentials for the Receivership Entities' servers, email accounts and additional electronic data, *and that he changed those credentials.* In so doing, he is interfering with the Receiver's ability to access that information and data.

Based on your request that we no longer communicate with Mr. Heller, a request I am not conceding is appropriate or which in any way insulates Mr. Heller from the mandates in the Receivership Order,  I will direct the following to you and your clients:

3

APP042

**Pursuant to ¶¶ 12, 18B.3, and 33 you are hereby instructed to provide me with all access credentials for all Receivership Entity data storage devices, clouds, servers, etc. to me by 9 a.m. tomorrow.** Regardless of who retained Mr. Heller, or why, he and you as his principal, or your clients if you prefer to concede that they are the source of this information, are obligated to provide this requested information to the Receiver. If you on behalf of Mr. Heller fail to provide this requested information, we will so advise the Court and seek the appropriate relief, including but not limited to a request to hold each and both of you in contempt of Court until the access credentials are provided, and sanctions for the costs of obtaining this information that was requested nearly a month ago and expressly required by the Receivership Order. There is no attorney-client privilege, work product protection, or Fifth Amendment privilege in this access information.

Moreover, as Mr. Heller was informed and as the Receivership Order makes abundantly clear ALL data should have been preserved. We will of course seek all and any appropriate remedies if we discover that data or information has been altered or deleted.



**CHARLENE KOONCE**
📞 214.367.7503
BROWNFOXLAW.COM

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Wednesday, November 16, 2022 5:40 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Richard Rooper <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton et al.

Dear Ms. Koonce:

Attached please find correspondence in the above entitled matter.

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

4

APP043



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@HuntonAK.com

November 29, 2022

FILE NO: 126068.0000001

**Via E-Mail**

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email:  charlene@brownfoxlaw.com

   Re: *Securities and Exchange Commission v. Barton*

Dear Ms. Koonce:

I am writing in response to your Wednesday, November 16, 2022, e-mail regarding certain information technology issues and your e-mail of yesterday suggesting that Mr. Barton and Mr. Heller might be held in contempt based on some of those information technology issues.

There are several statements in your November 16, 2022, e-mail that are mistaken, and I am hopeful that this letter will correct any misimpressions.

First, you are mistaken that JMJ Development somehow hired CKC Consulting or Mr. Heller as its "IT professional" for the company.  Instead, CKC Consulting is an agent of this law firm hired solely to assist in the defense of the Government-led criminal and civil cases against Mr. Barton.  As the Firm's agent assisting in the defense of Mr. Barton against the claims brought in the above-entitled action and the parallel criminal charges brought in *United States v. Barton*, the work of the CKC Consulting firm will almost universally be covered by the attorney-work product doctrine.

Second, I understand the employees of JMJ Development had access with administrator privileges to any servers associated with that company as of the day your receivership was created, and CKC Consulting did nothing to change that access or alter any data.  We are willing to have a discussion, not under threats but in cooperation to resolve differences, to direct you to former employees who may be able to assist.

ATLANTA  AUSTIN  BANGKOK  BEIJING  BOSTON  BRUSSELS  CHARLOTTE  DALLAS  DUBAI  HOUSTON  LONDON
LOS ANGELES  MIAMI  NEW YORK  NORFOLK  RICHMOND  SAN FRANCISCO  THE WOODLANDS  TOKYO  TYSONS  WASHINGTON, DC
www.HuntonAK.com



**HUNTON**
**ANDREWS KURTH**

November 29, 2022
Page 2

To be clear about Mr. Barton personally: Mr. Barton did not manage the JMJ information technology resources and has no personal knowledge of the credentials required to operate those servers.

I hope this makes clear that motion practice concerning Mr. Barton or Mr. Heller is not the appropriate way to address whatever issues you might have regarding the JMJ server. We look forward to discussing these issues with you further.

Third, your recent correspondence is certainly adjacent to another point. Before the receiver begins reviewing email files, including those used by Mr. Barton, we must agree to a privilege protocol to prevent tainting of the Government's investigations. We are aware that the receiver and his agents are having substantive communications about the facts and issues in the case with the prosecution team. If appropriate protocols to protect the privilege are not agreed, we will challenge the continuation of the criminal and civil cases against our clients due to these privilege issues. I understand that you and Mr. Roper have discussed some potential solutions, and we look forward to continuing those discussions.

We look forward to speaking with you further about these issues. Working together, we are hopeful that these matters can be resolved. Thank you.

Sincerely,

Michael Edney

Cc: Richard Roper, Esq.

APP045

# EXHIBIT K

## Charlene Koonce

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Thursday, December 1, 2022 10:18 AM |
| **To:** | Roper, Richard B (DAL - X31210) |
| **Cc:** | Edney, Michael; Huffman, Ted |
| **Subject:** | RE: Securities and Exchange Commission v. Barton et al. |
| **Attachments:** | 058. Appendix ISO Barton's Response to Motion to Supplement Order Appointing Receiver.pdf |

Richard – please see the photos in the appraisal included in your recent filing.  Please ask Mr. Barton to identify the art (framed and sculptures) shown in these photos.   Given his practice of placing ownership of all non-exempt assets in an entity, and as requested, we also need evidence to back up his contention that he rather than an entity owns any of the art.

I am generally available this afternoon, after about 2:00 for a call.  As you stated, I anticipate receiving the IT credentials today, regardless of when we are able to connect via a call.  Please email them to me or send them via dropbox.

Thanks.

 **CHARLENE KOONCE**
☏ 214.367.7503
BROWNFOXLAW.COM

**From:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>
**Sent:** Wednesday, November 30, 2022 7:47 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Edney, Michael <MEdney@huntonak.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** FW: Securities and Exchange Commission v. Barton et al.

Ms. Koonce,

Attached is the promised list of art work and estimates of values that could be gathered.  As mentioned in the prior email, this list may be supplemented if Mr. Barton is given the opportunity to walk through the premises.

On the IT issue, I left you a voicemail this afternoon.  Mike is tied up with a hearing, but we anticipate having resolution tomorrow.

Please give me a call if you would like to discuss.

Regards,


**Richard Roper | Holland & Knight**
Partner
Holland & Knight LLP
One Arts Plaza, 1722 Routh Street, Suite 1500 | Dallas, Texas 75201
Phone 214.969.1210 | Fax 214.964.9501 | Mobile 682.465.1008
richard.roper@hklaw.com | www.hklaw.com

1

## ART LOCATED AT 4107 ROCK CREEK DRIVE, DALLAS, TEXAS

| Description | Ownership | Approximate Value |
|---|---|---|
| Large family photograph (stairway) | Tim Barton | $0.00 |
| African Painting | Tim Barton (gifted from Edward Okpa) | >$1,000.00 |
| Photograph by Flags | Tim Barton (was previously owned by house stager) | $0.00 |
| Photograph Pictures (4) | House stager | >$250.00 |

## ART LOCATED AT 2999 TURTLE CREEK DRIVE, DALLAS, TEXAS[1]

| Description | Ownership | Approximate Value |
|---|---|---|
| Michelangelo Bacchus Statute[2] | Tim Barton | <$80,000.00 |
| Cigar Room Statute | Tim Barton (from Catholic Museum) | >$1,000.00 |

[1] This list constitutes what Timothy Barton recalls at this point in time. Access to the location and/or photographs of any other pieces would be necessary to establish ownership and approximate value.

[2] Value has been discussed at $80,000.00 and others have said more. An appraisal should be in the documents at 2999 Turtle Creek.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § § | |
| CARNEGIE DEVELOPMENT, LLC | § | Jury Trial Demanded |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § § | |
| Defendants, | § § | |
| DJD LAND PARTNERS, LLC | § § | |
| LDG001, LLC | § | |
| Relief Defendants. | § § | |

APPENDIX IN SUPPORT OF DEFENDANT TIMOTHY BARTON'S RESPONSE TO
MOTION TO SUPPLEMENT ORDER APPOINTING RECEIVER [ECF NO. 41]

Defendant Timothy L. Barton files this Appendix in Support of his Response to Receiver's

Motion to Supplement Order Appointing Receiver [ECF No. 41]. The Appendix has been

consecutively paginated App. 001 –App. 043 as follows:

| APPENDIX PAGE | DOCUMENT |
|---|---|
| App. 004 –043 | Appraisal of Real Property, 4107 Rock Creek Drive |

RESPONSE APPENDIX – Page 1

App. 001

APP049

Dated: November 14, 2022

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(Admitted to NDTX)*
medney@huntonak.com
Sean B. O'Connell
State Bar No. 24103142 *(application for admission forthcoming)*
soconnell@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 *(admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

– and –

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
Javan Porter
State Bar No. 24116912
javan.porter@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

---

**RESPONSE APPENDIX – Page 2**

**App. 002**

Main File No. G22120 | Page # 25 of 39

## Subject Interior Photo Page

| Borrower | Timothy Barton | | | |
|---|---|---|---|---|
| Property Address | 4107 Rock Creek Dr | | | |
| City | Dallas | County Dallas | State TX | Zip Code 75204 |
| Lender/Client | REDACTED | | | |



**Living**

4107 Rock Creek Dr
Sales Price
G.L.A.            3,492
Tot. Rooms    7
Tot. Bedrms.   4
Tot. Bathrms.  4.1
Location        N;Res;
View             A;Res;Bks Thru St
Site              8986 sf
Quality         Q3
Age              51



**Dining**



**Kitchen**

App. 029

APP051

Case 3:22-cv-02118-X   Document 58   Filed 11/15/22    Page 30 of 43   PageID 1134

Main File No. G22120 | Page # 26 of 39

## Subject Interior Photo Page

| Borrower | Timothy Barton | | | | |
|---|---|---|---|---|---|
| Property Address | 4107 Rock Creek Dr | | | | |
| City | Dallas | County  Dallas | | State  TX | Zip Code  75204 |
| Lender/Client | REDACTED | | | | |



**Breakfast**

4107 Rock Creek Dr
Sales Price
G.L.A.            3,492
Tot. Rooms    7
Tot. Bedrms.   4
Tot. Bathrms.  4.1
Location       N;Res;
View           A;Res;Blss Thru St
Site           8986 sf
Quality        Q3
Age            51



**Sitting**



**Main Bedroom**

App. 030

| | |
|---|---|
| Main File No. G22120 | Page # 29 of 39 |

## Subject Interior Photo Page

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Timothy Barton | | | | | |
| Property Address | 4107 Rock Creek Dr | | | | | |
| City | Dallas | County | Dallas | State | TX | Zip Code  75204 |
| Lender/Client | REDACTED | | | | | |



**Bedroom**

4107 Rock Creek Dr
Sales Price
G.L.A.          3,492
Tot. Rooms    7
Tot. Bedrms.  4
Tot. Bathrms. 4.1
Location       N;Res;
View            A;Res;Bks Thru St
Site             8986 sf
Quality         Q3
Age             51



**Bedroom**



**Laundry**

App. 033

APP053

# EXHIBIT L

**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Wednesday, December 7, 2022 2:52 PM
**To:** Cort Thomas <cort@brownfoxlaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** HUD; Privilege; Personal Property; and Chase Bank

Dear Cort and Charlene:

1. We have done the work, and Tim has signed the HUD documents. Please let me us know when he can have someone bring them to your office and to pick up his credit cards at the same time.

2. Attached please find a letter outline the privilege protocol we discussed Monday. We look forward to discussing this matter with you further.

3. It continues to be our position that the personal property that Tim accumulated over his lifetime and that happened to be in his personal home does not belong to the receiver. I am asking that Mr. Barton be permitted to pick it up from his home and that any effort to sell that property be cancelled. As you know, the SEC did not seek to place Mr. Barton under receivership in his individual capacity. His individual property's presence in a home owned by a special purpose corporation does not make it receivership property.

   This is a small money issue with large emotional value to my client, where your legal position is, respectfully, not justified. It would be regrettable if this required a motion practice. I look forward to working with you to resolve it.

4. Mr. Barton is going to need a letter to Chase Bank clarifying that your request do not affect accounts, either deposit or credit, held in his personal capacity. I understand that you and Mr. Roper have been discussing this possibility, and the need has arisen.

My very best regards,

Mike

3

APP055


**ANDREWS KURTH**

HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20037

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL J. EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

December 7, 2022

**_VIA E-MAIL_**

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com

Re:     Proposed Privilege Review Protocol for Microsoft 365 Server Documents

Dear Ms. Koonce:

Thank you for agreeing to work together to resolve the privilege issues implicated by Mr. Barton's role as a defendant in the Securities and Exchange Commission civil action and the criminal action brought by the United States Attorney's Office for the Northern District of Texas. In line with the concepts we discussed on December 5, 2022, herein we outline a protocol for protecting the attorney-client privilege and attorney work product protection attendant to electronic communications present on the Microsoft 365 e-mail server that has been the subject of our discussions.

This proposal tracks terms that we discussed Monday. Please note that, by outlining the proposed accommodations, Mr. Barton in no way intends to waive arguments against the appointment of a receiver in his pending appeal or to seek immediate return of all documents shared with the receiver in the event the Court of Appeals reverses or substantially modifies the District Court's order appointing the receiver.

First, as you suggested, a third-party vendor would be given access to the Microsoft 365 and be bound by the protocol we agree. We propose Liquid Lit Manager as an option. Mr. Barton would bear the cost of this additional vendor, and we are working to determine what those costs may be.

Second, the vendor would give the Receiver immediate access to electronic communications that do not fall within the following categories:

APP056

Letter to Charlene Koonce, Esq.
Page 2

1.  Any electronic communications to which Mr. Barton was a party

2.  Any communications involving the following counsel or their associates or agents:

    a.  Hunton Andrews Kurth LLP: Michael Edney, Ted Huffman, Sean O'Connell, Michael Dingman

    b.  Holland & Knight LLP: Richard Roper, Javan Porter, Scott Mascianica

    c.  Khudabuksh Walji and the Law Office of K. Walji

    d.  Metzger & McDonald PLLC: Steven Metzger

    e.  Joyce W. Lindauer Attorney, PLLC: Joyce Lindauer, Laurance Boyd, Paul Geilich, Sydney Ollar, Rebecca Vaughn

    f.  The Marx Law Firm: Randy Marx

    g.  Law Office of Van Shaw: Van Shaw, David Welch, Jeremy Beau Powell

    h.  Vance McMurry

    i.  Robert Kemp

    j.  Gray Reed & McGraw LLP: Norm Lofgren

    k.  Scheef & Stone LLP: Byron Henry, Walker Young

    l.  Marshal Dooley

    m.  Katrine Kershner

    n.  Eric Liepens

    o.  Anunobi Law PLLC: Chidi Anunobi

    p.  Moravcik, Threadgill & Starry: Stuart Starry

    q.  Haynes and Boone, LLP: Kit Addelman

    r.  Joseph Mastrogiovanni

    s.  Ben Pamenari

    t.  Oscar Rodriquez

2

APP057

Letter to Charlene Koonce, Esq.
Page 3

      u.  Roben Phelan

      v.  Camisha Simmons

      w.  Robert Miklos

      x.  Sam Heron

      y.  Reed Smith LLP: Elizabeth Brandon, David Hryck, Scott Bolden, Rizwan Qureshi

      z.  Reese Marketos LLP: Joel Reese

We reserve the right to add other attorneys and law firms to the extent we have omitted one. These categories are necessary to ensure that communications that are themselves privileged communications or contain information that is derived from either a privileged communications or from attorney work product, are reviewed prior to disclosure to the receiver. As we discussed, paragraph 60 of the receivership order and the SEC's access on demand to all information in the receiver's custody constitute one of the reasons that make this review particularly necessary. In addition, addressing the SEC's investigation and accompanying civil litigation has been nearly the full-time focus of Mr. Barton for the last two years, and his obtaining and implementation of legal advice and work product from counsel was run through the electronic mail facility housed on the Microsoft 365 server.

Third, for the purposes of conserving resources, the receiver would then be able to make a request for production of a substantive category of documents against the set of materials to which the receiver does not have access. That search would be run, this law firm would review for privilege and attorney work product, the firm would submit a privilege log of those documents deemed privileged or protected by the attorney-work product doctrine and request the third party vendor to produce the balance.

In the alternative, I am open to discussing the viability of a schedule—once the volume of the documents in the identified categories is ascertained—for this law firm to review all such documents for whether they implicate the attorney-client privilege or attorney work product protection and to produce a privilege log for those documents over which Mr. Barton asserts privilege.

3

APP058

Case 3:22-cv-02118-X   Document 134   Filed 01/19/23   Page 61 of 82   PageID 3280

Letter to Charlene Koonce, Esq.
Page 4

Please let me know if you have thoughts or questions regarding the above, including whether you would like to set up another call to sort through any details with this proposal. Working together, we hope to have an agreement in place as soon as possible and to be moving forward.

My very best regards,

Michael J. Edney

cc: Cort Thomas, Esq.
    Richard Roper, Esq.

4

APP059

# EXHIBIT M

## Charlene Koonce

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Monday, December 12, 2022 2:53 PM |
| **To:** | nathan.baum@nortonrosefulbright.com; Samuel R. Ramer |
| **Subject:** | FW: HUD; Privilege; Personal Property; and Chase Bank |

Counsel – I sent the email below out this morning to Tim Barton's counsel, but realized as Max's counsel and his contention that he owns some of the furnishings or other personal items in the Rock Creek Property, I should also have copied you. (See the section regarding Personal Property).

Apologies for the delay in including you.

 **CHARLENE KOONCE**
📞 214.367.7503
BROWNFOXLAW.COM

**From:** Charlene Koonce
**Sent:** Monday, December 12, 2022 8:42 AM
**To:** Edney, Michael <MEdney@huntonak.com>; Cort Thomas <cort@brownfoxlaw.com>
**Cc:** Richard Rooper <Richard.Roper@hklaw.com>; Huffman, Ted <THuffman@hunton.com>
**Subject:** RE: HUD; Privilege; Personal Property; and Chase Bank

Counsel:
Privilege Protocol:
While the Receiver is generally agreeable to the proposed process- using Liquid Lit Manager ("the Vendor") and Mr. Barton's agreement to pay for that entities' services, we note the following changes to your proposal.

1) The Vendor will be retained by the Receiver so that its duty of candor, disclosure, and compliance with the Receivership Order is absolutely clear. The services it provides will nonetheless be governed by any protocol agreement we reach. Mr. Barton will nonetheless be responsible for paying the Vendor's bills.

2) The Vendor will immediately image the servers and provide a copy to the Receiver. The Receiver's access to the imaged servers, however, will be subject to the privilege protocol absent a court-order to the contrary.

3) Before we can agree that all of the attorneys listed in your paragraph 2 c.-t should be subject to the privilege protocol, we need confirmation that the attorneys and firms identified there provided counsel to Mr. Barton individually rather than to a Receivership Entity. For each attorney identified (except for your and Mr. Roper's firm), please identify the matter on which each listed attorney worked and who his or her clients were.

4) We cannot agree that any communication in which Mr. Barton is included is automatically subject to the privilege protocol. Instead, any communications that include Mr. Barton *must also* include one of the attorneys you list with respect to that attorney's engagement *on behalf of Mr. Barton.* In this regard, as you know, the Receiver holds the privilege for every Receivership Entity, and we are not willing to invite further delay with respect to obtaining the information that should have been available to the Receiver on the first day of the Receivership.

5) We also cannot agree that following a privilege search by the Vendor, the Receiver would obtain access to the *potentially* privileged materials only through "request for production of a substantive category of documents against the set of materials to which the receiver does not have access." Instead, after the Vendor sorts for potential privilege, your firm will be required to review the documents flagged for privilege, immediately turn over to the receiver all documents that you determine are not privileged and provide a privilege log of any documents that you contend are privileged. To reduce the burden in this regard, we agree that any communication between you, Mr. Barton, Mr. Roper and any other counsel you can demonstrate was retained

1

APP061

to provide advice and counsel regarding the SEC's claims (for instance, I believe that is the case with Kit Adelman) need not be included on the privilege log.

6) With respect to providing anything that is subject to a claim of privilege, as you observe, we are also agreeable to discussing the viability of a schedule—once the volume of the documents in the identified categories is ascertained—for a privilege log and the timing and disposition of those documents that may fall within a privilege. Likewise, although we do not propose holding up commencement of the review outlined above for this agreement, we also think it will be helpful to define as soon as possible, the scope of matters that fall within Mr. Barton's privilege so as to exclude materials that do not and eliminate the need for a privilege log regarding those matters- for instance litigation in which only a Receivership Entity was a party and in which Mr. Barton was not named individually.

7) What is your proposal regarding the paper documents in the Turtle Creek location?

Personal Property Issues:

With respect to your request regarding Mr. Barton's personal property, my understanding is that his daughter Victoria, a housekeeper, and a designer removed all of Mr. Barton's clothes and a variety of other personal items on the day that Cort took possession of the property. I also understand that since then, Max Barton met with Cort to obtain his clothing and a variety of other personal items at the residence. From the outset, Cort has also offered for Mr. Barton/others to remove any mattresses from the house. As to any other personal property Mr. Barton seeks to obtain, I reiterate my (and the Receiver's) prior request that Mr. Barton provide some evidence that these items were purchased by Barton individually (or either of his children) rather than by a Receivership Entity. If he is unable to provide that evidence, we are, as stated previously, also willing to (temporarily) store the contents of the residence, if Mr. Barton pays for the costs of moving and storing those items. To date, you have provided no response to this request, despite having been informed that the Receiver has already discovered bank documents demonstrating that most of the furnishings in the Rock Creek property were purchased in the last two years and paid for by a Receivership Entity. If the pending sale is confirmed on December 19, the Receiver will have to ensure the property is vacated by December 28. The purchaser of the property has agreed to purchase the contents of the house for more than the Receiver has been told they are worth, and absent reaching agreement with you in the near term, we anticipate filing a motion to approve such a sale early next week.

Chase Bank/Account Issues:

With respect to your request related to Chase Bank, as I advised Mr. Roper, none of the Receiver's communications to banks or anyone else have requested a freeze over any account in Mr. Barton's name individually. If the bank has acted to the contrary, we are ready to assist in having the account unfrozen but will need you to provide a draft of whatever communication you are requesting, as well as the specifics of the account(s) regarding which you are requesting that we provide instructions as requested below.

Inventory of Art from Mr. Barton:

Additionally, we continue to wait for a more comprehensive inventory of the art that is and was recently located in the Rock Creek residence and in the Turtle Creek property. Please provide that updated information as soon as possible.

I look forward to your prompt response to these requests and the continuing discussion regarding the privilege issues.



**CHARLENE KOONCE**
☎ 214.367.7503
BROWNFOXLAW.COM

2

APP062

# EXHIBIT N

APP063

## Charlene Koonce

| | |
|---|---|
| **From:** | Cort Thomas |
| **Sent:** | Thursday, January 5, 2023 11:59 AM |
| **To:** | assistjmj@outlook.com; assistjmj@gmail.com |
| **Cc:** | Charlene Koonce |
| **Subject:** | No. 3:22-cv-2118; Securities and Exchange Commission v. Barton, et al. |
| **Attachments:** | 029. Order Appointing Receiver.pdf |

Mr. Murugan,

Thank you for your call this morning. As we discussed, on October 18, 2022, the assets of each of various entities controlled "directly or indirectly" by Timothy Barton were placed in receivership and I was appointed as Receiver. A copy of the Order Appointing Receiver ("Receivership Order") is attached and outlines my obligation and right to assume exclusive custody, control, and possession of all assets of, or in the possession, custody, or under the control of the defendants, relief defendants, and related entities (the "Receivership Entities").

My understanding from former employees of Mr. Barton's entities, as well as documents I have seen in the office at 2999 Turtle Creek, is that you were an employee one or more Barton-controlled entities and that you were in charge of the accounting function at JMJ. Accordingly, I direct your attention to certain provisions of the Receivership Order in particular:

- Paragraph 7 of the Receivership Order directs as follows: "The individual Receivership Entities and the past and/or present . . . employees of the entity Receivership Entities, as well as those acting in their place, are hereby ordered and directed <u>to preserve and turn over</u> to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers."
- Paragraph 11 of the Receivership Order similarly directs "[t]he individual Receivership Entities and the entity Receivership Entities' past and/or present . . . employees, accountants, . . ., and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them <u>and produce all documents as required by the Receiver regarding the business of the Receivership Entities,</u> or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities."
- Paragraph 13 of the Receivership Order gives me, as Receiver, the authority "to take immediate possession of all assets, bank accounts or other financial accounts, <u>books and records,</u> and all other documents or instruments relating to the Receivership Entities. <u>All persons and entities having control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.</u>"
- Paragraph 14 of the Receivership Order requires you, as a former employee and person receiving notice of the Receivership Order, to deliver any property, business, books, records, accounts, or assets of the Receivership Entities to the Receiver.
- Paragraph 32 of the Receivership Order prohibits any interference with the Receiver, including "concealing, destroying, or altering records or information" and "interfere[ing] in any manner with the exclusive jurisdiction of this Court over the Receivership Estates."
- Paragraph 33 of the Receivership Order requires any person receiving notice of the Receivership Order to cooperate with the Receiver, including "[p]roviding information to the Receiver as directed above or that the Receiver deems necessary to exercise the authority and discharge the responsibilities delegated to the Receiver under this Order."

In light of these and other provisions in the Receivership Order, please provide the following information to me on or before next Wednesday, January 11, 2023:
- All books and records of any Receivership Entities that are in your custody/control/possession.

1

APP064

- All usernames and passwords for the Receivership Entities Quickbooks accounts.
- The location for physical Quickbooks backups
- The names, phone numbers, and email addresses for other former employees who were members of the accounting/financial team for the Receivership Entities.
- Tax returns for the Receivership Entities, or where I can find them
- Name and contact information for the bookkeeper that you referenced on our call
- Name and contact information for any CPAs used by the Receivership Entities, including the CPA in Houston that you referenced on our call.

Some of this information is needed more quickly than others, and I am happy to discuss what information I need now versus what I can wait until later this month to receive.

In addition to managing the assets of the Receivership Entities, I will also be administering a claims process to determine which creditors have claims against the Receivership. Part of this will be focused upon the investors in the Wall Entities, so I will need to discuss how to locate information showing the funds that were received into the various Wall entities. Another part of this process will be administering a claims process for other creditors who have claims against the Receivership Entities, including former employees who have claims or unpaid time sheets. To the extent you have claims or unpaid bills, please let me know so that I can ensure that you are part of that process.

I would like to set up a time to visit, whether over the phone or via Zoom tomorrow or early next week to discuss the requests above. Please let me know a couple of times that would work best for you.

Best,

Cort




CORT THOMAS
Partner

8111 Preston Road          214.327.5000
Suite 300                  214.367.6094
Dallas, Texas 75225

in     BROWNFOXLAW.COM

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Brown Fox PLLC immediately (by replying to this message or calling 214.327.5000) and immediately destroy all copies of this message and any attachments. Thank you.

APP065

# EXHIBIT O

APP066

Sendera Title

GF# 22D1719-VVJA

PREPARED BY, AND AFTER RECORDING
RETURN TO:

ATHAS CAPITAL GROUP, INC.
27001 Agoura Road
Suite #200
Calabasas, CA 91301

Tax Parcel Number(s): 00000195718000000

Space Above for Recorder's Use
MIN:101515500000131790

# DEED OF TRUST,
## ASSIGNMENT OF RENTS,
### SECURITY AGREEMENT AND FIXTURE FILING
#### (TEXAS)

I.      THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Instrument**") is dated as of **August 24, 2022**, and is given by **SF ROCK CREEK, LLC, a Texas limited liability company**, whose address is **13901 Midway Road 102, Dallas, TX 75244**, as trustor ("**Borrower**"), to **PAUL KELLOGG, ESQ.**, as trustee ("**Trustee**"), for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation**, and whose mailing address is MERS, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, as beneficiary ("**Beneficiary**" or "**MERS**"). **SF ROCK CREEK, LLC's** organizational identification number is **803703380**.

II.     Borrower in consideration of the Indebtedness and the trust created by this Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the Mortgaged Property, including the Land located in **Dallas** County, State of **Texas** and described in Exhibit "A" attached to this Instrument, to have and to hold the Mortgaged Property unto Trustee, Trustee's successor in trust and Trustee's assigns forever.

III.    TO SECURE TO **ATHAS CAPITAL GROUP, INC., a California corporation**, whose address is **27001 Agoura Road, Suite #200, Calabasas, CA 91301** ("**Lender**") the repayment of the Indebtedness evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on the earlier of (i) **September 1, 2024**, and (ii) the date on which the unpaid principal balance of the Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document (the "**Maturity Date**"), in the principal amount of **ONE MILLION FIFTY-THREE THOUSAND AND 00/100 DOLLARS (US $1,053,000.00)**, and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

**Texas Deed of Trust**
© GoDocs® All Rights Reserved.

APP067

2022 - 202200234541  08/31/2022  09:40 AM  Page 6 of 37

"**Uniform Commercial Code**" or "**UCC**" means the Uniform Commercial Code as in effect in the Property Jurisdiction; *provided* that, to the extent perfection or the effect of perfection or non-perfection or the priority of any security interest in any collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the Property Jurisdiction, "**Uniform Commercial Code**" or "**UCC**" means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions hereof relating to such perfection, effect of perfection or non-perfection or priority.

**B. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Instrument is also a security agreement under the Uniform Commercial Code for the Fixtures, and Borrower, as debtor, hereby grants to MERS and/or Lender, as secured party, a security interest in the Fixtures. Borrower hereby authorizes Lender to prepare and file fixture filing financing statements and amendments thereto in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such fixture filing financing statements and amendments. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the Fixtures. Unless Borrower gives notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument as Lender may require, Borrower shall not (a) change its name, identity, structure or jurisdiction of organization; or (b) change the location of its place of business (or chief executive office if more than one place of business). If an Event of Default has occurred which, if it is amenable to cure, has not been timely cured, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the Fixtures separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

**C. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**

**C.1.** As part of the consideration for the Indebtedness, Borrower collaterally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish an assignment to Lender of all Rents in order to provide additional security for the current and future payment and performance by Borrower of all Indebtedness secured hereby and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an assignment for additional security only. For purposes of giving effect to this collateral assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in section A above. However, if this assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of MERS and/or Lender, which lien shall be effective as of the date of this Instrument.

**C.2.** After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred which, if it is amenable to cure, has not been timely cured, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's

**Texas Deed of Trust**
© GoDocs® All Rights Reserved.

Page 6

APP068

rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall, upon notice to Borrower in the manner prescribed by the Texas Rents Act, be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant in the manner prescribed by the Texas Rents Act. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

C.3.    Borrower states that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the Loan), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this section C, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than two (2) months prior to the due dates of such Rents. Borrower shall not collect or accept payment of any Rents more than two (2) months prior to the due dates of such Rents.

C.4.    This section C of this Instrument is subject to the Texas Rents Act and in the event of any conflict or inconsistency between the provisions of this Instrument and the provisions of the Texas Rents Act, the provisions of the Texas Rents Act shall control.  Nothing in this Instrument is intended to or shall diminish or impair Lender's rights under the Texas Rents Act.

D.    ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.

D.1.    As part of the consideration for the Indebtedness, Borrower collaterally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease. It is the intention of Borrower to establish an assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases in order to provide additional security for the current and future payment and performance by Borrower of all Indebtedness secured hereby. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an assignment for additional security only. For purposes of giving effect to this collateral assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in section A above. However, if this assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of MERS and/or Lender, which lien shall be effective as of the date of this Instrument.

D.2.    Until Lender gives notice to Borrower of Lender's exercise of its rights under this section D, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this section D or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases shall automatically terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

D.3.    Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this section D shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the

**Texas Deed of Trust**
© GoDocs⁹ All Rights Reserved.

Page 7

Improvements. The acceptance by Lender of the assignment of the Leases pursuant to section D.1 above shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property. Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (a) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (b) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (c) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

D.4.    Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this section D at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

D.5.    Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect. All Leases shall be on forms approved by Lender, shall be for initial terms of at least six months and not more than two years, and shall not include options to purchase.

D.6.    This section D of this Instrument is subject to the Texas Rents Act and in the event of any conflict or inconsistency between the provisions of this Instrument and the provisions of the Texas Rents Act, the provisions of the Texas Rents Act shall control. Nothing in this Instrument is intended to or shall diminish or impair Lender's rights under the Texas Rents Act.

E.    PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS; PREPAYMENT PREMIUM. Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents. Borrower shall pay a prepayment premium in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

F.    FULL RECOURSE PERSONAL LIABILITY. Borrower shall have full recourse personal liability under the Note, this Instrument and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Note, this Instrument and all other Loan Documents.

G.    DEPOSITS FOR TAXES, INSURANCE AND OTHER CHARGES.

G.1.    Unless this requirement is waived in writing by Lender, or as otherwise provided in this section G, Borrower shall deposit with Lender on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Lender), until the Indebtedness is paid in full, an additional amount estimated by Lender to be sufficient to accumulate with Lender the entire sum required to pay, when due, the items marked "COLLECT" below, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate. Lender will not initially require Borrower to make Imposition Deposits with respect to any items marked "DEFERRED" or "NOT APPLICABLE" below.

[COLLECT]    Property Insurance premiums or other insurance premiums required by Lender under section S below

[COLLECT]    Taxes

**Texas Deed of Trust**    Page 8
© GoDocs® All Rights Reserved.

APP070

**SS. TRUSTEE.**

**SS.1.** Trustee may resign by giving of notice of such resignation in writing to Lender. If Trustee shall die, resign or become disqualified from acting under this Instrument or shall fail or refuse to act in accordance with this Instrument when requested by Lender or if for any reason and without cause Lender shall prefer to appoint a substitute trustee to act instead of the original Trustee named in this Instrument or any prior successor or substitute trustee, Lender shall have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the original Trustee named in this Instrument. Such appointment may be executed by an authorized officer, agent or attorney-in-fact of Lender (whether acting pursuant to a power of attorney or otherwise), and such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by Lender.

**SS.2.** Any successor Trustee appointed pursuant to this Section shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of the predecessor Trustee with like effect as if originally named as Trustee in this Instrument; but, nevertheless, upon the written request of Lender or such successor Trustee, the Trustee ceasing to act shall execute and deliver an instrument transferring to such successor Trustee, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and monies held by the Trustee ceasing to act to the successor Trustee.

**SS.3.** Trustee may authorize one or more parties to act on Trustee's behalf to perform the ministerial functions required of Trustee under this Instrument, including the transmittal and posting of any notices.

**TT. RENEWAL AND EXTENSION.** The Note is in renewal and extension, but not extinguishment, of the following liens: (a) the Vendor's Lien retained in Deed dated August 20, 2020, from Mary "Maria" Geneva Davlos DePetris, Trustee of the DePetris Revocable Trust, dated October 5, 2016 to Borrower, filed for record on August 27, 2020, Under Instrument No. 202000232223, of the Official Public Records of Dallas County, Texas, securing the payment of one note of even date therewith in the sum of $1,310,000.00, payable to the order of FTF Lending, LLC, A Delaware limited liability company, as therein provided; said Note and Lien being further secured by Deed of Trust of even date therewith to Michael J. Palumbo, Trustee(s), recorded under Instrument No. 202000232224, of the Official Public Records of Dallas County, Texas.

Borrower hereby acknowledges receipt of such funds and the validity of the lien(s) securing the prior indebtedness against the Mortgaged Property (without regard to any assignment of said liens contemporaneously with or subsequent to their creation); it is expressly agreed that said liens are hereby renewed, extended, and carried forward in full force and effect to secure payment of the Note secured by this Instrument, and that the holder is subrogated to all the rights, powers and equities of the original owners and holders of the prior indebtedness (whether such current holder shall assign and transfer its respective liens to the holder hereof or shall release its respective liens upon satisfaction of the indebtedness owing to such holder).

**UU. FIXTURE FILING.** This Instrument is also a fixture filing under the Uniform Commercial Code of Texas.

**VV. NO FIDUCIARY DUTY.** Lender owes no fiduciary or other special duty to Borrower.

**WW.    ADDITIONAL PROVISIONS REGARDING ASSIGNMENT OF RENTS.** section C above shall not be construed to require a pro tanto or other reduction of the Indebtedness resulting from the assignment of Rents. If the provisions of section C above and the preceding sentence cause the assignment of Rents in section C above to be deemed to be an assignment for additional security only, Lender shall be entitled to all rights, benefits and remedies attendant to such collateral assignment. The assignment of Rents contained in section C above shall terminate upon the release of this Instrument.

APP071

Lender shall constitute an Event of Default and, without limiting any other remedies of Lender, Lender may immediately instate the Default Rate under the Note until such amounts are received by Lender.

**EEE.BALLOON PAYMENT NOTICE.** The Note secured hereby provides for a balloon payment of the entire Indebtedness upon the Maturity Date of the Note.

**FFF. NON-OWNER OCCUPIED PROPERTY.** Throughout the term of the Loan, Borrower shall not occupy any portion of the Mortgaged Property in any manner. If Borrower is an entity other than a natural person, any persons with a direct or indirect ownership interest in Borrower shall not occupy any portion of the Mortgaged Property in any manner throughout the term of the Loan.

**GGG.    DOCUMENT IMAGING.** Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Instrument and the other Loan Documents, and Lender may destroy or archive the paper originals. Borrower waives (1) any right to insist or require that Lender produce paper originals, (2) agrees that such images shall be accorded the same force and effect as the paper originals, (3) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (4) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Instrument or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

**HHH.    NOTICE OF ADDITIONAL PROVISIONS REGARDING INSURANCE.** Any terms to the contrary contained in this Instrument notwithstanding, the following requirements are hereby imposed pursuant to Section 307.052 of the Texas Finance Code:

  **HHH.1.**  BORROWER IS REQUIRED TO: (a) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN AN AMOUNT EQUAL TO THE INDEBTEDNESS, (b) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER, AND (c) NAME THE LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF LOSS.

  **HHH.2.**  IF BORROWER FAILS TO COMPLY WITH SUBSECTION (1) ABOVE, LENDER MAY, BUT WILL NOT BE OBLIGATED TO, OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.

**III. ENTIRE AGREEMENT.** THIS INSTRUMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**JJJ. WAIVER OF TRIAL BY JURY.** BORROWER, MERS AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER, MERS AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

APP072

**BORROWER:**

**SF ROCK CREEK, LLC,**
a Texas limited liability company

By:    **ONE PASS INVESTMENTS, LLC,**
     a Delaware limited liability company,
     **Manager**

     By:    _____
           TIMOTHY L. BARTON, Trustee of the ONE RL Trust,
           Sole Member and Manager

(SEAL)

**Texas Deed of Trust**
© GoDocs® All Rights Reserved.

Page 34

APP073

State of Texas        ) ss.

County of **Dallas**      )

    This instrument was acknowledged before me on **August 29** , 2022 by TIMOTHY L. BARTON as **Trustee** of the **ONE RL Trust** therein named, said **trust** being the **Sole Member and Manager** of **ONE PASS INVESTMENTS, LLC**, a Delaware limited liability company, said entity being the **Manager of SF ROCK CREEK, LLC**, a Texas limited liability company.

Notary Public in and for the State of Texas

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

**EXHIBIT "A"**
**DESCRIPTION OF THE LAND**

THE LAND REFERRED TO HEREIN IS SITUATED IN DALLAS COUNTY, STATE OF TEXAS, AND IS DESCRIBED AS FOLLOWS:

Lot 32, Block 2, TURTLE CREEK PARK, an addition to the City of Dallas, Dallas County, Texas, according to the map or plat thereof, recorded in Volume 4, Page 83, Map Records, Dallas County, Texas.

APN: 00000195718000000

PROPERTY ADDRESS: 4107 ROCK CREEK DRIVE, DALLAS, TX 75204

**Texas Deed of Trust**                                                    Page A-1
**Exhibit "A" - Legal Description**
© GoDocs® All Rights Reserved.

APP075

2022-202200234541 08/31/2022 9:45 AM Page 37 of 37

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:**  202200234541

eRecording – Real Property

---

Recorded On: August 31, 2022 09:40 AM                    Number of Pages: 37

---

**" Examined and Charged as Follows: "**

Total Recording: $166.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                       **Record and Return To:**

Document Number:      202200234541                         Simplifile
Receipt Number:        20220830000871
Recorded Date/Time:   August 31, 2022 09:40 AM
User:                  Kevin T
Station:               CC18

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

APP076

# EXHIBIT P

**From:** Tim Barton <timothy.barton@proton.me>
**Date:** December 19, 2022 at 3:41:43 PM MST
**To:**
**Subject: Foundation and flooding in high rain disclosure**

Shawn

Make sure you are clear on the rockcreek house has a foundation problem when there is a heavy rain the apartment below fills with water

You can inspect the wood floors have buckled it settled down when it dries

I was unable to locate where the flooding comes in it maybe where the fountain flooding backs up from rain.

I want to make sure that is disclosed to you so if it comes back there is no liability on me

I told Mr thomas and he said he saw no sign of flooding. So as I am liable to disclose anything I know in a sale I want this disclosure even if it is a where is as is sale

Good luck with house and I am available if you have any questions

Tim
2146738714

APP078

# EXHIBIT Q

## Charlene Koonce

| | |
|---|---|
| **From:** | Charlene Koonce |
| **Sent:** | Thursday, December 22, 2022 6:26 AM |
| **To:** | Michael Edney; Ted Huffman; Richard B Roper |
| **Cc:** | Keefe Bernstein; Tim Wells |
| **Subject:** | Rock creek |

Counsel, in the afternoon shortly after the court approved the sale of rock creek, in violation of the receivership order, Mr. Barton reached out to the buyer and interfered with the sale. Because of that interference, the sale is not scheduled for closing and we have entered into a lease to mitigate damages. We will request all appropriate relief from the court, but wanted to let you know a request to stay of the sale is unnecessary.

Sent from my iPhone.  Please ignore typos and  auto-correct oddities.

1

APP080