**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

**RECEIVER'S EXPEDITED MOTION TO RATIFY**
**AGREEMENT WITH LUMAR LAND & CATTLE AND BRIEF IN SUPPORT**

Cort Thomas, the Receiver appointed in the above-styled case, moves the Court for an

Order ratifying the Receiver's Agreement for Sale of Land and Delivery of Partial Releases (the

"Agreement") with Lumar Land & Cattle, LLC ("Lumar") and declaring that that the Agreement

is not subject to 28 U.S.C. § 2001 because the Agreement does not contemplate the Receiver's sale

of real estate. For the reasons explained below, the Receiver also requests expedited briefing.  In

support of this Motion, the Receiver respectfully shows the Court as follows:

1

## I.    SUMMARY

As detailed below, to preserve the equity in certain real property in which Receivership Entity BM318 LLC ("BM318") claims an interest, the Receiver entered into a partial settlement agreement with the current owner, Lumar, to allow the sale of some parcels.  The Settlement Agreement requires using the proceeds of any sales to pay the lender whose lien is superior to BM318's.  Since any recovery by BM318 based on the value of the land would be subordinated to all principal and interest owed to the first lienholder, paying down that first lien through limited sales preserves the equity in the land.  In the event the sales result in proceeds over and above the first lien, remaining proceeds deposited in a trust account managed by the Receiver until resolution of the pending litigation.

Because Barton complained that a prior settlement agreement involving a contractual compromise rather than the sale of realty did not comply with certain statutory requirements,[1] and to establish law of the case for future similar settlement agreements, the Receiver requests the Court's declaration that the Agreement does not fall within the parameters of a statute governing sales of realty by receivers.

## II.    BACKGROUND

### A.    Relevant Provisions of the Receivership Order and the Statute

1.    On October 18, 2022, the Court entered its Order Appointing Receiver [Dkt. 29] (the "Receivership Order"), which appointed Cort Thomas as Receiver for various Receivership Entities and directed him to take custody, control, and possession of all Receivership Property. Receivership Order ¶ 6(B).  The Receivership Order directs the Receiver to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend,

---

[1] *See* Dkt. 106.

compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." Receivership Order ¶¶ 6(H), 6(J).

2.      The Receivership Order also gives the Receiver authority, without further authorizing orders, to "transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." *Id.* ¶ 39.

3.      In the event the Receiver seeks to sell real property he must follow the procedures outlined in the Receivership Order, the Order Governing Administration of Receivership Estate [Dkt. 63] ("Administrative Order"), and 28 U.S.C. § 2001 (the "Statute").

4.      On its face, the Statute applies to *sales* of real estate by receivers:

"(a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs. Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

(b) After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions

3

prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale."

28 U.S.C. § 2001.

**B.    BM318's Claim**

5.    In 2018, The Dixon Water Foundation ("Dixon"), sold BM318 a tract consisting of 2,055.77 acres of unimproved rural property in Parker County, Texas. BM318 paid approximately $2.0 million down and Dixon, as the seller, financed the balance of the purchase price consisting of approximately $33 million. The loan was secured by a Deed of Trust in favor of Dixon on all but a 118 acre tract. BM318 struggled to make payments, and as part of a loan modification, BM318 sold several tracts of land to repay Dixon, leaving 1,531.75 acres of the original tract remaining ("Remaining Land"). Dixon asserts BM318 subsequently defaulted on the debt, and BM318 ultimately executed a Special Warranty Deed to Dixon, as grantee, for the Remaining Land.

6.    On September 1, 2020, approximately two months after the Special Warranty Deed was recorded, BM318 filed a Chapter 11 bankruptcy case. BM318 proposed a plan of reorganization ("Plan"), and the Bankruptcy Court entered an order confirming the Plan on August 2, 2021. Shortly after the confirmation of the Plan, on August 10, 2021, BM318 commenced an Adversary Proceeding against Dixon in Bankruptcy Court ("Adversary Proceeding") asserting that the Transfer of the Remaining Land by the Special Warranty Deed constituted both a preferential and fraudulent transfer. Thereafter, on October 27, 2021, BM318 filed a Notice of Lis Pendens ("Lis Pendens") based on its claims in the Adversary Proceeding related to the Remaining Land.

7.    On April 23, 2021, several months before BM318 initiated the Adversary Proceeding, Lumar purchased a 204-acre tract ("Lumar Land") from Dixon. Lumar's purchase was funded by a $6.5M loan from First National Bank and Trust Company of Weatherford (the

4

"Bank" and "Bank Debt"). Pursuant to a note and deed of trust, the Bank holds a lien on the Lumar Land. Lumar bought the land intending to develop and sub-divide it.

8. The Lumar Land is comprised of a portion of the Remaining Land conveyed by BM318 to Dixon, which is the subject of the Adversary Proceeding and the Lis Pendens. Upon learning of the Adversary Proceeding and the Lis Pendens, Lumar was granted leave to intervene in the Adversary Proceeding based on the Lis Pendens's burden on the Lumar Land.

9. Lumar asserts that BM318's claims are without merit, and further asserts that it is a bona fide good faith purchaser entitled to various protection provisions provided by the Bankruptcy Code. BM318 has contested Lumar's assertions. The Adversary Proceeding is currently stayed by the Receivership Order.

**C.    Negotiations with Lumar**

10. After the Receiver was appointed, Lumar's counsel approached the Receiver's counsel and explained that based on the Lis Pendens, Lumar has been prevented from selling the land or servicing the bank debt. If Lumar prevails in the Adversary Proceeding, the Bank Debt will remain on the Lumar Land. If BM318 prevails in the Adversary Proceeding and regains possession of the Lumar Land, by virtue of the Bank's Deed of Trust, the Lumar Land would still almost certainly be subject to the Bank Debt. While the Adversary Proceeding is stayed, the Bank Debt continues to accrue interest, thereby diminishing the equity available to any party except perhaps the Bank. Moreover, because it is unable to sell the Lumar Land or obtain any resolution of the claims in the Adversary Proceeding while that matter is stayed by the Receivership Order, Lumar's financial condition is deteriorating. According to Lumar's counsel, it is on the brink of bankruptcy.

11. To stop the accruing interest and preclude further diminishment of equity, Lumar and the Receiver negotiated an agreement, which allows Lumar to sell tracts of the Lumar Land

with the sale proceeds first going to service the bank debt and any remaining proceeds deposited in a trust account managed by the Receiver until resolution of the Adversary Proceeding (the "Agreement"). A true and correct copy of the Agreement is included in the Appendix as **Exhibit A**.

12.     The Agreement does not authorize the Receiver to sell anything. Instead, it allows Lumar to enter into one or more contracts to sell tracts of the Lumar Land and requires Lumar to submit a copy of any such contract to the Receiver for his review. If the Receiver approves the contract, he will execute a partial release of the Lis Pendens for the tract under contract. *See* Agreement, ¶ 4.

13.     Thus, the Agreement does not provide for any sale by the Receiver. Indeed, although he owns BM318's *claim* against the Lumar Land, that claim itself is not an ownership interest which would allow the Receiver to sell or convey title to the realty.  Instead, the Agreement represents the Receiver's efforts to maximize the value of the claim held by BM318, and thus serve the best interests of the Receivership Estate.

### III.    ARGUMENT

Sales of real property by receivers are governed by 28 U.S.C. §2001. Nothing in the statute suggests it governs any transaction other than a *sale*, and research did not reveal any authority suggesting the release of a potential claim or interest in real estate, pursuant to a settlement agreement or otherwise, falls within the scope of the Statute.

Neither the Receivership Order nor the Administrative Order require Defendant's consent or approval of the Agreement, nor is ratification or court-approval required. Barton, however, previously objected to the Receiver's request to ratify a different settlement agreement that involved participation interests in the appreciation of real estate rather than the Receiver's sale of

real estate on the grounds that the Receiver failed to comply with the Statue.[2]  To provide clarity regarding the scope of the Receiver's obligation to comply with the Statute regarding the Agreement and thus potentially minimize costs to the Receivership Estate regarding future settlements and transactions, the Receiver seeks the Court's declaration that because the Agreement does not require or involve the Receiver's sale of realty, it is not subject to the requirements of 28 U.S.C. § 2001.

Because Lumar contends its financial condition is precarious and an expedited resolution serves the best interests of the Receivership Estate, the Receiver requests expedited briefing on this matter.

**IV.    <u>CONCLUSION</u>**

The Receiver respectfully requests the Court ratify the Agreement and declare that it is not subject to the requirements of 28 U.S.C. §2001 because it does not involve the sale of real estate or any interest therein by the Receiver, regardless of whether the Agreement also contemplates the release of a Lis Pendens by the Receive and allows another party to transfer or sell real estate in which a Receivership Entity holds a claim. The Receiver also requests such other and further relief to which he may show himself entitled.

---

[2] *See* Dkt. Nos. 95 and 106.

7

Respectfully submitted,

By: */s/ Charlene C. Koonce*
  Charlene C. Koonce
   State Bar No. 11672850
   charlene@brownfoxlaw.com
  Timothy B. Wells
   State Bar No. 24131941
   tim@brownfoxlaw.com
  BROWN FOX PLLC
  8111 Preston Road, Suite 300
  Dallas, Texas 75225
  T: (214) 327-5000
  F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on January 30, 2023, the Receiver conferred with counsel for Barton and the SEC. The SEC is unopposed. Barton did not respond to the conference.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

8