## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY BARTON, | § | |
| CARNEGIE DEVELOPMENT, LLC, | § | |
| WALL007, LLC, | § | |
| WALL009, LLC, | § | |
| WALL010, LLC, | § | |
| WALL011, LLC, | § | |
| WALL012, LLC, | § | |
| WALL016, LLC, | § | |
| WALL017, LLC, | § | |
| WALL018, LLC, | § | |
| WALL019, LLC, | § | |
| HAOQIANG FU (A/K/A MICHAEL FU), | § | |
| STEPHEN T. WALL, | § | |
| | § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and | § | |
| LDG001, LLC, | § | |
| | § | |
| *Relief Defendants*. | § | |

## APPENDIX IN SUPPORT OF RECEIVER'S EXPEDITED
## MOTION TO RATIFY AGREEMENT WITH LUMAR LAND & CATTLE

1

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

2

3

| EXHIBIT | DESCRIPTION | APP PAGES |
|---------|-------------|-----------|
| A | Agreement for Sale of Land and Delivery of Partial Releases | APP000001-9 |

# EXHIBIT A

APP000001

## AGREEMENT FOR SALE OF LAND AND DELIVERY OF PARTIAL RELEASES

### I.    Parties

A.    The parties (individually, a "Party" and, collectively, the "Parties") to this Agreement for Sale of Land and Delivery of Partial Releases ("Agreement") are as follows:

i.    Cortney C. Thomas, in his capacity as receiver ("Receiver") pursuant to the Receiver Order entered in the Receiver Lawsuit (both as defined below); and

ii.    Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

### II.    Definitions

B.    As used in this Agreement, the following terms shall have the respective meanings set forth below:

i.    The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

*BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division;

ii.    The term "Bank" shall refer to First National Bank and Trust Company of Weatherford, d/b/a First Bank Texas;

iii.    The term "Bank Debt" shall refer to the debt owed by Lumar to the Bank pursuant to Note 1 and Note 2;

iv.    The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

*In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division;

v.    The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case;

vi.    The term "Contract of Sale" shall mean a contract of sale between Lumar, as seller, and a third party purchaser, as buyer, which covers a portion of the Lumar Land;

vii.    The term "Deed of Trust 1" shall refer to a Deed of Trust dated April 23, 2021, executed by Lumar, as grantor, in favor of Mike Rhea, as Trustee for the benefit of the Bank, covering the Lumar Land and recorded in the Official Records of Parker County, Texas on April 28, 2021 as Document No. 202116539;

viii.    The term "Deed of Trust 2" shall refer to a Deed of Trust dated July 20, 2021 executed by Lumar, as grantor, in favor of Mike Rhea, as Trustee for the benefit of the Bank,

1

APP000002

also covering the Lumar Land and recorded on July 27, 2021 as Document No. 2021129301 in the Official Records of Parker County, Texas;

ix.     The term "Dixon" shall mean The Dixon Water Foundation, f/k/a The Dixon Foundation, a non-profit foundation, the original defendant in the Adversary Proceeding;

x.      The term "Lis Pendens" shall mean the Notice of Lis Pendens relating to BM318's claims in the Adversary Proceeding filed by BM318 on October 27, 2021, as Document no. 202142097 in the Official Records of Parker County, Texas;

xi.     The term "Lumar Deed" shall mean the Special Warranty Deed with Vendor's Lien executed by Dixon, as grantor, to Lumar, as grantee, covering the Lumar Land and recorded on April 23, 2021, as Document no. 202116538 in the Official Records of Parker County, Texas.

xii.    The term "Lumar Land" shall refer to the 204.50 acre tract located in Parker County, Texas, which is more fully described in the attached **Exhibit "A"**;

xiii.   The term "Net Proceeds" shall mean the gross sales price reflected in any Contract of Sale, less the following: (a) ordinary and reasonable costs of sale, including any proration for property taxes and the premium for an owner's policy of title issuance, (b) any reasonable and ordinary real estate commissions arising from the transaction, and (c) any reasonable and necessary costs as permitted and described below in paragraph 2, relating to the preparation, improvement or conditioning of the land which is the subject of the Contract of Sale to allow or facilitate the sale;

xiv.    The term "Note 1" shall refer to a Promissory Note dated April 23, 2021, executed by Lumar in favor of the Bank in the original principal amount of $3,830,063;

xv.     The term "Note 2" shall refer to a Promissory Note dated July 20, 2021, executed by Lumar in favor of the Bank in the original principal amount of $2,739,924;

xvi.    The term "Original Tract" shall mean the 2,055.77 acre tract located in Parker County, Texas, which was sold by Dixon to BM318 in 2018;

xvii.   The term "Partial Release" shall mean a document, in recordable form, executed by the Receiver releasing the Lis Pendens and other claims as to any Subject Tract, and releasing all rights, title, interest, claims, and causes of action against the Subject Tract, including all claims relating to the Subject Tract pursuant to the Adversary Proceeding, and which shall be in form and substance substantially the same as the attached **Exhibit "B"**;

xviii.  The term "Receiver Lawsuit" shall refer to the following lawsuit in which the Receiver was appointed:

> *Securities and Exchange Commission, Plaintiff v. Timothy Barton, et al., Defendants*, Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

xix.    The term "Receiver Order" shall refer to an *Order Appointing Receiver* entered as Docket no. 29 in the Receiver Lawsuit on October 18, 2022;

2

APP000003

xx.      The term "Remaining Land" shall mean the 1,531.75 acre tract of land located in Parker County, Texas, which is the subject of BM318's claims in the Adversary Proceeding;

xxi.      The term "Special Warranty Deed" shall mean the deed conveying the Remaining Land from BM318, as grantor, to Dixon, as grantee, and recorded on July 2, 2020, as Document no. 202019524 in the Official Records of Parker County, Texas; and

xxii.      The term "Subject Tract" shall mean the parcel of Land out of the Lumar Land subject to any Contract of Sale.

### III.    Recitals

C.      Dixon sold the Original Tract to BM318 during 2018. The majority of the purchase price for the Original Tract was provided through owner financing by Dixon and secured by a deed of trust against most of the Original Tract. The Remaining Land constitutes a portion of the Original Tract. Dixon asserts that BM318 defaulted in the repayment of this debt. Ultimately, BM318 conveyed the Remaining Land to Dixon pursuant to the Special Warranty Deed which was recorded on July 2, 2020.

D.      On September 1, 2020, BM318 commenced the Bankruptcy Case and acted as a debtor-in-possession. The Bankruptcy Court ultimately confirmed a plan of reorganization proposed by BM318 in the Bankruptcy Case which became effective on August 2, 2021.

E.      On April 23, 2021, Dixon sold the Lumar Land to Lumar. The land was conveyed to Lumar pursuant to the Lumar Deed. The Lumar Land constitutes a part of the Remaining Land. Lumar financed a portion of the purchase price through loans from the Bank evidenced by Note 1, which Lumar represents is secured by both Deed of Trust 1 and Deed of Trust 2. Lumar financed some of the costs to develop the Lumar Land for sale through a second loan from the Bank evidenced by Note 2, which Lumar represents is also secured by both Deed of Trust 1 and Deed of Trust 2.

F.      On August 10, 2021, BM318 commenced the Adversary Proceeding against Dixon seeking to avoid the transfer of the Remaining Land by BM318 to Dixon pursuant to the Special Warranty Deed as a preferential or fraudulent transfer pursuant to sections 547 and 548 of the Bankruptcy Code (11 U.S.C., sections 101 *et seq.*, hereinafter the "Bankruptcy Code"). Dixon asserts that these avoidance claims by BM318 are without merit.

G.      On October 27, 2021, BM318 filed the Lis Pendens which relates to its claims in the Adversary Proceeding against Dixon in relation to the Remaining Land.

H.      Lumar sought to intervene in the Adversary Proceeding based on the Lis Pendens which burdens the Lumar Tract as a part of the Remaining Land. The Bankruptcy Court granted Lumar leave to intervene in the Adversary Proceeding. In the Adversary Proceeding, Lumar asserts that BM318's avoidance claims as to the Remaining Land are without merit, and further asserts that it is also entitled to the protections of section 550(b)(1) and (2) of the Bankruptcy Code. Lumar further asserts that, in addition to the lack of merit in BM318's avoidance claims, the Bank's rights in the Lumar Land pursuant to the Deed of Trust 1 and Deed of Trust 2 are further protected by section 550(b)(2) of the Bankruptcy Code. BM318 contests Lumar's assertions.

3

APP000004

I.      On September 23, 2022, the Receiver Lawsuit was filed. Thereafter, the Receiver was appointed to serve in such capacity through the Receiver Order. Based on the Receiver Order, further proceedings in the Adversary Proceeding are stayed.

J.      Pursuant to paragraph 1 of the Receiver Order, the Receiver is appointed as receiver for BM318, as one of the "Receivership Entities," with exclusive control and possession of the BM318's assets, of whatever kind and wherever located, including all tangible and intangible property, and which are included as a part of the "Receivership Assets". Paragraph 3 of the Receiver Order clothes the Receiver with all power, right, and authority possessed by the officers, directors, and managers of each of the Receivership Entities, including BM318. Paragraph 6 grants the Receiver broad powers over the Receivership Assets, including the right to take any action which, prior to the entry of the Receiver Order, could have been taken by the officers, directors, managers, and agents of any of the Receivership Entities.

K.      BM318's claims and rights in relation to the Adversary Proceeding, including in relation to the Lis Pendens, constitute Receivership Assets subject to the Receiver's control pursuant to the Receiver Order.

L.      The Receiver has entered into this Agreement based on the provisions of the Receiver Order, his control of BM318 as one of the Receivership Entities, and his control of all property of BM318 as part of the Receivership Assets.

M.      Lumar has advised the Receiver that it intends to repay the debt to the Bank secured by the Lumar Land through the sale of smaller tracts out of the Lumar Land, using the sale proceeds to repay interest and principal on the Bank Debt. Lumar further asserts that, because of the Lis Pendens, it is unable to sell tracts out of the Lumar Land in order to repay the Bank.

N.      Lumar has requested that the Receiver agree to release the Lis Pendens and all claims pursuant to the Adversary Proceeding as to each Subject Tract covered by a Contract of Sale so that the sale can be closed and the Net Proceeds paid to the Bank to be applied to the Bank Debt. Lumar and the Receiver have entered into this Agreement for that purpose to set forth a procedure to allow Lumar to present to the Receiver proposed sales of any portion of the Lumar Land through any Contract of Sale and obtain a Partial Release as to the Subject Tract, with the resulting Net Proceeds to be paid to the Bank to reduce the Bank Debt.

O.      Lumar represents that even if BM318 prevails on its claims in the Adversary Proceeding, the Lumar Tract would nonetheless be subject to the Bank Debt, which continues to accrue and diminish the equity in the Lumar Tract. The Receiver acknowledges that the diminishing equity is accordingly a significant consideration and incentive in entering into this Agreement.

## IV.    Terms and Conditions

ACCORDINGLY, for value received, the receipt and sufficiency of which is hereby acknowledged by the Parties, they hereby agree as follows:

1.      The above recitals are true and correct and are incorporated as an integral part of this Agreement. Reference is hereby made to all exhibits to this Agreement which are hereby incorporated by reference as a part of this Agreement.

2.      Lumar shall not incur any costs exceeding $3,000.00 related to the preparation, improvement, or conditioning of the land which is the subject of a contract of sale without the

4

APP000005

Receiver's prior written approval. In the event Lumar incurs any expenses exceeding $3,000.00 related to such preparation, improvement, or conditioning of the land which is the subject of a contract of sale without the Receiver's prior written approval, those costs shall not be deductible from the gross proceeds of the sale in calculating Net Proceeds.

3.    Lumar shall enter into one or more Contracts of Sale each covering a Subject Tract which constitutes a portion of the Lumar Land. Either before or upon entering into any such Contract of Sale, Lumar shall submit the proposed contract to the Receiver with a written certification ("Certification") by Lumar to the Receiver certifying as follows and including the following documents:

3.1   A true and accurate copy of the Contract of Sale (either as executed or as proposed to be executed) will be attached to the Certification;

3.2   That the buyer in the Contract of Sale is unrelated to Lumar or, if the buyer has any relationship to Lumar, fully disclosing that relationship;

3.3   That the Contract of Sale was negotiated in good faith by Lumar and Lumar believes in good faith that the purchase price constitutes a fair and reasonable purchase price for the tract of land subject to the Contract of Sale;

3.4   The estimated costs to be deducted from the gross sale price to yield the Net Proceeds;

3.5   The estimated amount of the Net Proceeds; and

3.6   The proposed form of Partial Release pertaining to the Subject Tract covered by the Contract of Sale will also be attached to the Certification.

4.    Upon receipt of the Certification, the Receiver may, as he in the sole exercise of his discretion elects, either (a) consent to the sale pursuant to the proposed Contract of Sale by executing and returning the Partial Release to Lumar releasing the Lis Pendens and any rights, title, interest, claims, and causes of action against the Subject Tract, including all claims relating to the Subject Tract pursuant to the Adversary Proceeding, but only as to the Subject Tract covered by the Contract of Sale, or (b) decline to consent to the proposed sale by declining to execute and return the Partial Release. If the Receiver executes and returns the Partial Release to Lumar, upon the closing of the Contract of Sale, the Net Proceeds shall be handled and paid as set forth in paragraph 4 below.

5.    Upon the closing and funding of any Contract of Sale covering a portion of the Lumar tract:

5.1   The Net Proceeds shall be paid by the title company closing the sale to the Bank and, unless the Bank objects, applied to the Bank Debt as follows: (a) first, to any accrued interest on either Note 1 or Note 2, (b) second, to any principal on either Note 1 or Note 2 which is then due and payable, and (c) third, as a pre-payment on either Note 1 or Note 2 as Lumar may elect, until Note 1 and Note 2 are fully repaid. In the event sales of the Lumar Land result in Net Proceeds that exceed the Bank Debt, all additional sales proceeds that exceed the total amount of the Bank Debt shall be transferred to an interest bearing trust account, which shall be opened and controlled by the Receiver, and held in such account until resolution of the claims asserted in the Adversary Proceeding; and

5

5.2   At least one day before the closing, Lumar shall provide to the Receiver a written statement as to the manner in which the Net Proceeds will be applied to the Bank Debt.

6.      By executing and performing this Agreement, including through the execution and recording of any Partial Release:

6.1   The Receiver does not waive, relinquish or impair any cause of action, claim, offset, defense, or affirmative defense against any person, including any claim by BM318 against Dixon, Lumar, the Bank or any other person, other than releasing its rights in any Subject Tract subject to a Partial Release; and

6.2   Lumar does not waive, relinquish, or impair any claim, cause of action, offset, defense, or affirmative defense against any person, including against BM318 or any affiliate thereof in relation to the Remaining Land.

7.      Any notice or communication required or permitted by this Agreement shall be in writing and shall be deemed as properly given, made or sent when personally delivered to the addressee or deposited in the U.S. Mail, postage prepaid, addressed to the recipient at their respective addresses set forth below, with a copy being concurrently sent to the recipient by email at their respective email addresses set forth below.

7.1      If to the Receiver:

Cortney C. Thomas, Receiver
c/o Charlene Koonce and Tim Wells
Brown Fox
8111 Preston Road, Suite 307
Dallas, Texas 75225
charlene@brownfoxlaw.com
tim@brownfoxlaw.com; and

7.2      If to Lumar:

Lumar Land & Cattle, LLC
c/o Bobby Forshey
Forshey & Prostok, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102
bforshey@forsheyprostok.com;

or to such other addresses as either Party may give written notice designating to the other Party.

7.3   This Agreement:  (a) contains the complete agreement of the Parties regarding the subject matter hereof, (b) may only be modified through a writing signed by all Parties or any Court Order issued by the Receivership Court, (c) shall be governed by, and construed under, Texas law, and (d) is binding on the Parties and their respective successors in interest and assigns.

6

APP000007

8.      With regard to the Receiver and his ability to enter into and perform this Agreement, this Agreement remains subject to a declaration by the Court that 28 U.S.C. § 2001 does not apply to this Agreement.. The Receiver will file an application in the Receivership Lawsuit as quickly as practicable seeking such a declaration from the Court.

9.      This Agreement is effective for all purposes as of _____, 2023.

**RECEIVER:**

_____
Cortney C. Thomas, as Receiver
for BM318

**LUMAR:**

Lumar Land & Cattle, LLC

By: _____

Name: Jim R Martin

Position: Manager

L:\BFORSHEY\Lumar Land & Cattle, LLC (BM318)(non-bnkrptcy)#6323\Barton - SEC Civil Suit 22-cv-02118 (Receivership)\Agreement of Land  Partial Release Lumar (2v) 1.27.23.docx

7

APP000008

8.      With regard to the Receiver and his ability to enter into and perform this Agreement, this Agreement remains subject to a declaration by the Court that 28 U.S.C. § 2001 does not apply to this Agreement.  The Receiver will file an application in the Receivership Lawsuit as quickly as practicable seeking such a declaration from the Court.

9.      This Agreement is effective for all purposes as of _Jaunery 31_, 2023.

**RECEIVER:**

_____, Receiver

Cortney C. Thomas, as Receiver
for BM318

**LUMAR:**

Lumar Land & Cattle, LLC

By: _____

Name: _____

Position: _____

L:\BFORSHEY\Lumar Land & Cattle, LLC (BM318)(non-bnkrptcy)#6323\Barton - SEC Civil Suit 22-cv-02118 (Receivership)\Agreement of Land  Partial Release Lumar (2v) 1.27.23.docx

7

APP000009