**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | CASE NO. 3:22-cv-2118-X |
| Plaintiff, | ) ) | **HEARING REQUESTED** |
| v. | ) ) | |
| TIMOTHY BARTON et al., | ) ) | |
| Defendants. | ) ) | |

**SUPPLEMENT TO HNGH TURTLE CREEK, LLC'S, MOTION TO INTERVENE AND TO CONFIRM OWNERSHIP OF PROPERTY LOCATED AT 2999 TURTLE CREEK BOULEVARD [69]**

HNGH Turtle Creek, LLC, respectfully files this supplement to its Motion to Intervene and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard [69] to bring to this Court's attention recent factual developments underscoring the urgency of its request that the Court grant its motion and confirm what two bankruptcy court orders entitled to res judicata have already held—that HNGH is the rightful owner of the Turtle Creek Property and, accordingly, the Receiver cannot deprive HNGH of its property rights unless and until the Receiver succeeds in vacating those judgments on appeal.

The Receiver's continuing insistence that the Turtle Creek Property is part of the Receivership Estate—while simultaneously refusing to pursue the appeal of the bankruptcy court orders holding otherwise and depriving HNGH of the benefits of property ownership—is inflicting *significant ongoing financial injury* upon HNGH.  In *January 2023 alone*, HNGH spent nearly *$600,000 on the property*.[1]  That amount included almost $400,000 in property taxes and insurance

---

[1]    App'x at 55, Declaration of V. Nambiar ¶ 8.

premiums.[2]  Another $193,000 went to pay interest on HNGH's loan secured by the Property.[3] HNGH paid these amounts precisely because—as determined by the bankruptcy court on September 28, 2022, following a similar bankruptcy court order on March 18, 2022—*it owns the Turtle Creek Property*.  The Receiver has made no attempt to pay any of these amounts, which is at odds with its continued insistence that HNGH does not own the property.  Indeed, while the Receiver contends in his second status report that he has been "determining insurance, utility, tax, and other payments coming due on each of the properties" within the receivership, Dkt. 139 at 13, HNGH is aware of no such efforts by the Receiver with respect to the Turtle Creek Property.[4] Instead, the Receiver has been content to let HNGH make those payments—and, indeed, has explicitly *demanded* that HNGH do so.[5]  Yet HNGH has been precluded from exercising even the most basic of property rights consistent with property ownership, like accessing the property, improving the property, or leasing it to others.[6]  It is the height of inequity for HNGH to continue to pay the ongoing costs of ownership while the Receiver deprives HNGH of the benefits of ownership by maintaining that HNGH does not own the property and insisting that the property is within the receivership.

Remarkably, the Receiver's second status report *admits* that at the time the receivership was established on October 18, 2022, the Turtle Creek Property was *not* Barton-owned or -controlled and had been adjudged by a court to be the property of HNGH—but the Receiver hedges those concessions with unsupported mischaracterizations.  The Receiver states that the

---

[2]    App'x at 55, Declaration of V. Nambiar ¶¶ 5, 7.

[3]    App'x at 55, Declaration of V. Nambiar ¶ 6.

[4]    App'x at 55, Declaration of V. Nambiar ¶ 9.

[5]    *Id.*

[6]    App'x at 55, Declaration of V. Nambiar ¶ 10.

Barton-controlled 2999TC Acquisitions, LLC "is or was" the owner of the Turtle Creek Property. Dkt. 139 at 13. The Receiver is half correct: 2999TC "was" the owner, until multiple bankruptcy rulings determined—prior to the receivership—that it is not. Nothing supports the Receiver's assertion that 2999TC "is" the owner, and the Receiver makes no effort to demonstrate otherwise. The Receiver grudgingly acknowledges the bankruptcy court's September 28, 2022, pre-receivership order confirming that HNGH owns the Turtle Creek Property, yet couches that admission by placing the word "owns" in quotes, as if to downplay or denigrate that ruling. *Id.* But the ruling speaks for itself and was an unambiguous ruling—in a 49-page opinion following exhaustive proceedings—that HNGH owns the property outright. The Receiver recognizes that the bankruptcy court's order "was appealed" and that the appeal has been "automatically stayed." *Id.* But he does not dispute (***and has never disputed***) that, unless and until the order is disturbed on appeal, it has res judicata effect—putting the burden ***on the Receiver*** to proceed with the appeal if he wants to show that the property is not owned by HNGH but instead is part of the Receivership Estate.

The Receiver vaguely asserts that he "continues to investigate HNGH's claims and to analyze how the Receivership potentially impacts prior agreements, actions, and decisions in the Bankruptcy Court." *Id.* It is entirely unclear how any aspect of the Receivership could "impact[]" a prior court ruling that is final and has res judicata effect unless overturned. In any event, such arguments can and should be made in the pending appeal of the bankruptcy court's orders, and the ball is in the Receiver's court to proceed with that appeal. What the Receiver cannot do is hold HNGH hostage by refusing to proceed with that appeal, continuing to maintain that the Turtle Creek Property is part of the receivership, and depriving HNGH of its property rights—all while

leaving (indeed, requiring) HNGH to pay hundreds of thousands of dollars in the ongoing costs of ownership. This legal limbo is intolerable and extremely prejudicial to HNGH.[7]

To be clear, the Receiver's second status report contains numerous other misstatements regarding the Turtle Creek Property. For instance, the Receiver repeats ***Barton's*** erroneous view that the Receivership Entities "paid HNGH 'over $8.5 million' in loan payments from 2021 onward," *id.*, when the actual number is approximately $6.26 million.[8] What likely explains the confusion is that, during the bankruptcy proceedings, Barton falsely claimed that he made five consideration payments of $500,000 apiece,[9] while in reality those payments were just $100,000 apiece.[10] Moreover, approximately $750,000 of the alleged $8.5 million was for property taxes, and not for "loan payments" to HNGH, as the Receiver suggests.[11] This is but one example of the faulty math and unsupported speculation in the Receiver's status report. If necessary, HNGH stands ready to correct the full record and refute the inaccurate and unfair claim that HNGH is seeking a "windfall at the expense of potentially impacted investors." Dkt. 139 at 14.

For present purposes, however, all of that is legally irrelevant. What matters is that HNGH is paying hundreds of thousands of dollars (and counting) in unrecoverable carrying costs for the Turtle Creek Property—consistent with two court orders determining HNGH's ownership—while

---

[7] In the meantime, HNGH remains exposed to a volatile real estate market that, as the Receiver and Government admit, prejudices owners who cannot fully control their property. *E.g.*, Dkt 67 at 14-15, 17-18 ("the overwhelming majority of industry participants … have advised that attempting to sell assets in the near future will likely result in greater values than waiting three or six months"); Dkt. 83 at 13 ("a downward trending real estate market … is expected to negatively impact the properties' future values").

[8]    App'x at 55, Declaration of V. Nambiar ¶ 3.

[9]    App'x at 60, Debtor's Opposition to Motion to Enforce Agreed Orders ¶ 10.

[10]    App'x at 55, Declaration of V. Nambiar ¶ 3.

[11]    App'x at 55, Declaration of V. Nambiar ¶ 4.

the Receiver continues to insist that HNGH does not own the property, refuses to proceed with an appeal that is the only route to establishing that (erroneous) position, and deprives HNGH of the benefits of property ownership.  This Court's intervention is urgently needed to halt the Receiver's pocket veto, confirm HNGH's ownership of the Turtle Creek Property, and end this unfair and unsupported assault on HNGH's property rights.

*        *        *

For the reasons set forth above and in HNGH's pending motion and reply, HNGH respectfully requests that, as soon as practicable, the Court grant leave to intervene and confirm HNGH's ownership of the Turtle Creek Property.  *See* Dkts. 69, 116, 117.  HNGH welcomes the opportunity for a hearing on its motion should the Court see fit.

DATED:  February 9, 2023

Respectfully submitted,

s/ *Erin Nealy Cox*

Erin Nealy Cox
Texas State Bar No. 00794357
Tel: (214) 972-1847
erin.nealycox@kirkland.com
George W. Hicks, Jr.*
Virginia State Bar No. 91711
Tel: (214) 972-1722
george.hicks@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Tel: (214) 972-1770

Kyle M. DeYoung*
Washington D.C. Bar No. 472613
Tel: (202) 389-3251
kyle.deyoung@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, DC 20004
Tel: (202) 389-3251

John J. Kane
Texas State Bar No. 24066794
Tel: (214) 777-4261
jkane@krcl.com
KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Suite 5200
Dallas, TX 75202
Tel: (214) 777-4200

**Pro Hac Vice application forthcoming*

*Counsel for HNGH Turtle Creek, LLC*

6

## CERTIFICATE OF SERVICE

I affirm that on February 9, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

By: <u>s/ *Erin Nealy Cox*</u>
Counsel for HNGH Turtle Creek, LLC