# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON,<br>CARNEGIE DEVELOPMENT, LLC,<br>WALL007, LLC,<br>WALL009, LLC,<br>WALL010, LLC,<br>WALL011, LLC,<br>WALL012, LLC,<br>WALL016, LLC,<br>WALL017, LLC,<br>WALL018, LLC,<br>WALL019, LLC,<br>HAOQIANG FU (A/K/A MICHAEL FU),<br>STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and<br>LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

## REPLY IN SUPPORT OF RECEIVER'S EXPEDITED MOTION TO RATIFY AGREEMENT WITH LUMAR LAND & CATTLE AND BRIEF IN SUPPORT

Cort Thomas files this Reply in Support of his Motion to Ratify (the "Motion") [Dkt. 143] the Agreement for Sale of Land and Delivery of Partial Releases (the "Agreement") with Lumar Land & Cattle, LLC ("Lumar"), addressing arguments raised in the Response to the Motion (the "Response") [Dkt. 155], and respectfully shows the Court as follows:

1

## SUMMARY

Among other arguments discussed below, Barton argues the Court should deny "approval" of the Agreement because it is between "two actors that come to th[e] Court with unclean hands."[1] Putting aside Barton's continued and unjustified disparagement about one party to the Agreement (the Receiver), entitlement to relief by the "other" party, Lumar, plays no role in the determination at issue.

The Motion did not request "approval" of the Agreement in the sense Barton suggests, because pursuant to the Receivership Order [Dkt. 29] and the Administrative Procedures Order [Dkt. 63], the Court has *already* approved contracts and agreements that do not include the sale of real estate. Thus, the Motion requested the Court's declaration that the Agreement, and any other similar agreement, is not subject to 28 U.S.C. § 2001 (the "Statute") regardless of whether the Agreement also contemplates the release of a Lis Pendens and allows an entity that is not a party to sell real estate and sought ratification on that basis only. In response, Barton asserts two irrelevant arguments and complains the Receiver failed to satisfy the Statute without demonstrating that it applies. Each argument is addressed in turn.

## I.    ARGUMENT

### A.    The Court Should Declare the Statute Has No Application

Barton argues the Court should deny the Motion because he contends the Receiver seeks to avoid compliance with procedures governing a receiver's release of "an interest in real

---

[1] *Response* p. 2. Notably, the Response concedes the SEC's assertion that investor funds were used to purchase non-Wall entity owned property—the property that underlies the claims at issue in the Adversary Proceeding between Lumar and BM318, and the basis for Barton's potential liability. *Response,* p. 2 ("Wall entity money—i.e. the investor funds at issue in the claims of the Securities and Exchange Commission—was invested directly in to the purchase rights of the property in question."). As demonstrated by the Motion, as well as BM318's pleadings in the Adversary Proceeding, no Wall entity has or has ever had any legal ownership interest in the Property, which was instead purchased by BM318. *See BM318, LLC v. The Dixon Water Foundation,* Adv. 21-04051-MXM, pending in the United States Bankruptcy Court for the Northern District of Texas, Dkt. 50. (the "Adversary Proceeding").

property."[2]  Barton contends "this transaction is clearly subject to the Section 2001 sale process,"

since in Barton's view, the Statute "governs not only the sale of fee simple property, but also to

[sic] any 'interest or any part thereof.'"[3] That's not what the Statute says, and Barton's contrary

and wholly unsupported argument was the impetus for the Motion.[4]

The Statute does not govern *any transaction involving* an interest in real estate.  It governs

*sales* of realty (or any interest therein) pursuant to court order:

> "(a) Any realty or interest therein sold under any order or decree of any court of the
> United States shall be sold as a whole or in separate parcels at public sale at the
> courthouse of the county, parish, or city in which the greater part of the property is
> located, or upon the premises or some parcel thereof located therein, as the court
> directs. Such sale shall be upon such terms and conditions as the court directs. . ."[5]

Nowhere and in no way does the Statute encompass settlement agreements that

*compromise* interests in or claims to realty, even if third parties are subsequently permitted to sell

real estate or interests therein.  Such a transaction, including the Agreement presented to the Court

in the Motion, is not a *sale* made "under any order or decree of any court."  Presumably, the

Statute's clarity explains the absence of authorities interpreting its limited application, including

the construction Barton seeks, for any *transaction involving* any interest in real estate.  Indeed, the

requirements of subsection (b) regarding appraisals and appraisers buttresses application solely to

*sales*,[6] since settlement agreements are not generally subject to "appraisal" by "appraisers."   The

Court should declare the Statute does not apply to the Agreement or any similar agreement that

does not provide the *sale* of realty or any interest therein *by the Receiver*.

---

[2] *Response* p. 2.

[3] *Response* p. 3.

[4] Authorities that discuss interests in realty as inclusive of encumbrances are irrelevant to whether the Agreement involves "[a]ny realty or interest therein *sold* under any order or decree of any court."

[5] 2001 U.S.C. § 2001(a).

[6] *See* 2001 U.S.C. § 2001(b).

**B.    The Receivership Order Contemplates Maximizing the Value of the Estate, Not Preserving the Status Quo**

Barton also argues the Court should deny the Motion to preserve the status quo because the Agreement "has no time sensitivity." Ignoring that the argument has no relevance to the relief requested, the Receivership Order is not a TRO—it upends rather than preserves the status quo. Its stated purpose is "marshaling and preserving all assets of the Receivership Entities,"[7] and accordingly empowers the Receiver to recover and maximize the value of the estate for the benefit of the defrauded investors. *Receivership Order* ¶ 6. In furtherance of this purpose, the Court required the Receiver to formulate a recovery and liquidation plan (*id.* ¶ 56), authorized him to transfer, sell, or otherwise dispose of Receivership Property (*id.* ¶ 39-41), and to manage or wind-down the business operations of the Receivership Estate. (*id.* at ¶ 42).

Recognizing that preserving value is not the equivalent of a stay, relief this Court and the Fifth Circuit have both denied, courts frequently authorize liquidation or other disposition by receivers before entry of a final judgment. *See FTC v. Consumer Def., LLC*, No. 2:18-CV-30 JCM (PAL), 2019 WL 266287, at *3 (D. Nev. Jan. 18, 2019) ("Courts regularly freeze assets with a preliminary injunction and authorize the sale of those assets prior to finding liability in order to preserve the value of the estate."); *FTC v. Johnson*, No. 2:10-CV-02203-RLH, 2011 WL 3841039, at *2 (D. Nev. Aug. 26, 2011) (granting the Receiver's motion to sell property after "the Receiver ha[d] adequately shown the Court that liquidating the[] assets w[ould] limit expenses and avoid further deterioration or loss of value."); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) ("[L]iquidation at this time, prior to entry of judgment, is appropriate because the evidence presented to the Court demonstrated that the TLC entities' liabilities were

---

[7] *Receivership Order*, p. 2.

greater than their assets and because ongoing management alone will drain money out of the estate, money that otherwise could be returned to investors.").

The only case Barton cites in support of his status quo argument, *SEC v. Current Fin. Services, Inc.*, 783 F. Supp. 1441, 1446 (D.D.C. 1992) severely undercuts application here. In *Current Financial Services,* the trial court granted the SEC's motion for appointment of a receiver, after the Court had frozen the defendant's assets, so the receiver could collect outstanding amounts owed to the defendant entity. *Id.* at 1445. The Court denied without prejudice the relief that is already included in the Receivership Order here, bankruptcy proceedings to liquidate if appropriate, because that relief was unnecessary to preserve the assets for future remedies. *Id.* at 1445–46.

Barton's status quo arguments provide no reason to deny the Motion.

**C.     Barton Ignores the Terms of the Agreement in Arguing It Does Not Serve the Best Interests of the Estate**

Barton argues he was in the process of negotiating rights to purchase the property "under the terms of existing agreements" which would yield a value of approximately $34,000 per acre, and contends that rather than the Agreement, the "better course" would be a purchase and immediate sale of the Property.  Barton, however, fails to provide evidence of any "existing agreements,"[8] and ignored the Receiver's conference about the Motion rather than providing information about purported negotiations.  His "better course" also wholly ignores the current legal

---

[8] *See generally,* the Adversary Proceeding.  The pleadings in the Adversary Proceeding suggest all "agreements" were terminated based on BM318's or JMJ's defaults.  If Barton is aware of "existing agreements" that require either Dixon or Lumar to sell the Property to any Receivership Entity, he was required to provide that information to the Receiver months ago. That contumacious conduct is the subject of a different pending motion.  *See* Dkt. 133.

status of BM318's entitlement to the Property,[9] and the Estate's inability to fund or indeed finance, the purchase.

Barton also contends the accruing liabilities which will be minimized by the sales contemplated by the Agreement are relevant only if the Receivership Entities close a sale of the Property. The Bank's lien on the Lumar Land—as an "accruing liability"—is however, relevant to any potential recovery in the Adversary Proceeding, either with respect to the equity in the Lumar Land if BM318 prevails in its effort to recover the Property including the Lumar Land,[10] or to Lumar's solvency in the event BM318 recovers a judgment or negotiates a settlement that requires Lumar to pay BM318. Given Lumar's threatened bankruptcy and declining financial condition while the property sits idle, the ability to recover anything from Lumar dwindles absent the Agreement.

Barton, however, suggests no scenario by which the Bank's lien no longer encumbers the Lumar Land. Nor does Barton attempt to explain how the Agreement destroys "considerable future value for the receivership entities." If the Lumar Land is now worth far more than BM318

---

[9] As discussed in the Motion, BM318 purchased certain real estate (the "Property")—improperly, with investor funds—from the Dixon Water Foundation ("Dixon"), but despite numerous loan modifications, could not pay for the purchase. Pursuant to a February 27, 2020 "Deed in Escrow Agreement," BM318 executed a Special Warranty Deed in favor of Dixon, to be held in escrow until July 1, 2020, while BM318 continued efforts to make the required payments. When BM318 was unable to make those payments, on July 2, 2020, Dixon recorded the Special Warranty Deed re-conveying title to the Property to Dixon. Shortly before the Special Warranty Deed was recorded, in June 2020, JMJ Development, LLC entered into a "Buyback Agreement" with Dixon, pursuant to which JMJ anticipated repurchasing the Property. On September 1, 2020, BM318 filed a voluntary petition in bankruptcy and in the Adversary Proceeding asserted preference and fraudulent transfer claims against Dixon by which it sought to recover the Property. Those claims are pending. Although the Buyback Agreement was initially extended pursuant to an option, on October 15, 2020, Dixon terminated that agreement, based on JMJ's alleged default. A few months later, in April 2021, without notice to BM318, Dixon sold a portion of the Property to Lumar (the "Lumar Land"). Lumar financed its purchase through First National Bank and Trust Company of Weatherford (the "Bank"), which is the beneficiary of two Deeds of Trust encumbering the Lumar Land. *See generally,* Adversary Proceeding, Dkt. 1, 8, 9, 14, 40, 42.. BM318 filed a lis pendens on the Property on October 27, 2021. Lumar intervened in the Adversary Proceeding, seeking to have the lis pendens set aside. In a cross-claim, BM318 contends the sale to Lumar was accomplished through tortious interference and fiduciary breaches by Lumar's principal, who was formerly the real estate agent for BM318.

[10] Assuming BM318 prevails in the Adversary Proceeding and sets aside Lumar's purchaser of the Lumar Land, BM318 would seek reimbursement from Lumar for sales that satisfy the Bank's lien.

(or JMJ) would have contracted to repurchase it from Dixon but for Lumar's wrongful conduct, a sale by Lumar will capture that benefit and pay down what is owed to the Bank based on the same increased value, concurrently either preserving the same amount of equity in the Lumar Land or increasing BM318's entitlement to recovery from Lumar.

On the other hand, the Agreement (a) allows only sales that are expressly approved by the Receiver, (b) limits the costs Lumar can expend related to preparation of any tract it seeks to sell if those costs are sought to be netted from the sales proceeds, (c) requires sales only to buyers unrelated to Lumar, or if related, to buyers whose relationship with Lumar is fully disclosed, (d) requires Lumar to certify that any proposed contract of sale was negotiated in good faith, that the purchase price constitutes a fair and reasonable price, and detail all costs Lumar seeks to deduct from the gross proceeds, and, (e) allows the proceeds of a sale to be applied only to accrued interest or principal owed to the Bank, with additional sales proceeds, if any, held in escrow by the Receiver.[11]

Even if Barton's "best interest of the Estate" arguments were relevant to the relief requested in the Motion, they provide no basis to deny the Motion. To the contrary, they counsel in favor of granting it.

## IV.    CONCLUSION

The Receiver respectfully requests the Court ratify the Agreement and declare that it is not subject to the requirements of 28 U.S.C. § 2001 because it does not involve the sale of real estate or any interest therein by the Receiver, regardless of whether the Agreement also contemplates the release of a Lis Pendens by the Receiver and allows another party to transfer or sell real estate in

---

[11] *See* Dkt. 144, *App. pp.* 5-6.

which a Receivership Entity holds a claim. The Receiver also requests such other and further relief

to which he may show himself entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
 Charlene C. Koonce
  State Bar No. 11672850
  charlene@brownfoxlaw.com
 Timothy B. Wells
  State Bar No. 24131941
  tim@brownfoxlaw.com
 BROWN FOX PLLC
 8111 Preston Road, Suite 300
 Dallas, Texas 75225
 T: (214) 327-5000
 F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

8