## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **No. 3:22-CV-2118-X** |
| **TIMOTHY LYNCH BARTON** | § | |
| **CARNEGIE DEVELOPMENT, LLC** | § | |
| **WALL007, LLC** | § | |
| **WALL009, LLC** | § | |
| **WALL010, LLC** | § | |
| **WALL011, LLC** | § | |
| **WALL012, LLC** | § | |
| **WALL016, LLC** | § | |
| **WALL017, LLC** | § | |
| **WALL018, LLC** | § | |
| **WALL019, LLC** | § | |
| **HAOQIANG FU (a/k/a MICHAEL FU)** | § | |
| **STEPHEN T. WALL** | § § | |
| *Defendants,* | § § | |
| **DJD LAND PARTNERS, LLC** | § | |
| **LDG001, LLC** | § § | |
| *Relief Defendants.* | § | |

## <u>DECLARATION OF TED A. HUFFMAN</u>

I, Ted A. Huffman, declare and state as follows:

1.     I am over 18 years of age and competent to make this declaration.  I am an attorney at Hunton Andrews Kurth, LLP, counsel for Defendant Timothy L. Barton in the above-styled action.  In that role, I have personal knowledge of the facts stated herein.

-2-

2.      Attached as Exhibits A through L are true and correct copies of correspondence that has been sent by or on behalf of Mr. Barton's attorneys in the above-styled action to the Receiver and/or the Receiver's counsel, on or about the dates stated therein.[1]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 16, 2023.                    */s/ Ted A. Huffman*
                                            Ted A. Huffman

---

[1] The letter attached as Exhibit C contains a typo, in that it is dated November 7, 2022, although sent to the Receiver and his counsel on November 9, 2022.

# Exhibit A

HUNTON
ANDREWS KURTH

HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20037

MICHAEL J. EDNEY
HEAD OF GOVERNMENT INVESTIGATIONS
PRACTICE
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

November 1, 2022

**VIA ELECTRONIC MAIL**

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com

       Re:    Sections 8-10, 18, and 24 of the Court's Order Appointing a Receiver: *SEC v. Barton et al.*, No. 3:22-CV-2118 (N.D. Tx.)

Dear Ms. Koonce:

The Hunton Andrews Kurth LLP law firm represents Mr. Timothy Barton in both the above-entitled matter and in *United States v. Barton*, pending in the Northern District of Texas. We write today regarding terms of the Receivership Order requiring the provision of certain information to the receiver. These terms include paragraphs 8-10, 18, and 24. We note the October 25, 2022, correspondence from your office seeking to remind Mr. Barton of his obligation to provide information pursuant to paragraph 18B and suggesting that he may also be required to do so under paragraphs 8-10 of that order.

Paragraphs 8-10 require "the Receivership Entities" to provide a variety of information. The Receivership Order, however, dismissed all "trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys, and other agents of the Receivership Entities," and "suspended" the authority "of any general partners, directors, and/or managers" of those entities. *See* Receivership Order at ¶ 4. The Receivership Order, therefore, divested Mr. Barton personally of any authority or responsibility to direct the Receivership Entities to provide the sworn statements or other information required by paragraphs 8-10.

Paragraph 18B does place obligations on "any person who receives actual or constructive notice of this Order who has or *had* possession or control of any Receivership Assets." (Emphasis added.) To the extent that this term might apply to Mr. Barton personally rather than the corporations holding the assets and now under the control over the receiver, certain actions of the receiver have eliminated Mr. Barton's effective or practical access to the information necessary to make the "sworn statement" required by Paragraph 18B. These actions including excluding Mr. Barton of access to his home, place of business, and business

Charlene Koonce, Esq.
November 1, 2022
Page 2

records.  These actions have also cut off the access of Mr. Barton's assistants and employees to this information.

To the extent the intervening actions of the receiver cutting Mr. Barton off from the information necessary to make the statements contemplated by Paragraph 18B were not sufficient to excuse his compliance with that paragraph, Paragraph 18B clearly seeks to *compel* through judicial order the sworn testimony of Mr. Barton regarding matters directly pertinent to criminal charges pending in *United States v. Barton.*  Accordingly, we have advised Mr. Barton to invoke his constitutional right against self-incrimination, to include his right against compelled testimony and production of information and materials, in response to any obligation Paragraph 18B seeks to impose on him.  *See, e.g., United States v. Hubbell,* 530 U.S. 27, 36-37 (2000) (explaining that compelling production of documents may itself violate the Fifth Amendment because document production speaks to existence, possession, control, and authenticity); *S.E.C. v. Farmer,* 560 F. App'x 324, 326 (5th Cir. 2014) (quoting *Hubbell* and explaining that "[t]he Fifth Amendment protects against both self-incriminating testimony and production of documents where production implicitly communicates" existence, possession, control, or authenticity).  Please regard this letter as notice that Mr. Barton is invoking his Fifth Amendment privilege against any effort to compel a sworn statement from him pursuant to Paragraph 18B of the Receivership Order.

As you know, counsel for Mr. Barton have been providing information to the receiver to assist in its efforts to identify the many commercial real estate assets held by the receivership entities and will continue to do so.  Mr. Barton's sincere hope is that the receiver will continue Mr. Barton's efforts, well advanced prior to the Court's order, to assemble liquid assets that could be available for those lenders who are the focus of the SEC's action and who choose to seek the return of their funds in a manner consistent with U.S. tax and anti-money laundering laws.  My colleague, Richard Roper, has spent extensive time briefing you on these efforts and other information about the extensive commercial real estate assets associated with Mr. Barton and will continue to do so.  All of us look forward to continue working with the receiver to provide additional information on concrete actions that, we believe, will achieve that outcome in short order.

Should you have any questions, please do not hesitate to contact me directly.

My very best regards,

Michael J. Edney

Cc:  Cort Thomas, Esq.
       Richard Roper, Esq.

# Exhibit B



HUNTON ANDREWS KURTH LLP
2200 PENNSYVANIA AVENUE, NW
WASHINGTON, DC 20037

MICHAEL J. EDNEY
HEAD OF GOVERNMENT INVESTIGATIONS
PRACTICE
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

November 1, 2022

**_VIA ELECTRONIC MAIL_**

Cort C. Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: cort@brownfoxlaw.com

  Re: _Securities and Exchange Commission v. Barton, et al._, No. 3:22-cv-2118-X

Dear Mr. Thomas:

  The Hunton Andrews Kurth LLP law firm represents Mr. Timothy Barton in a civil matter initiated by the Securities and Exchange Commission and the criminal prosecution initiated by the United States Attorney for the Northern District of Texas. I write today to memorialize our position on crucial issues regarding the attorney-client privilege and attorney work product protections.

  The receiver has taken possession of Mr. Barton's personal office and home and is seeking to take possession of an email account at JMJ Development that he used for personal purposes. His office has also been the epicenter of preparation by him and his lawyers to defend himself against the SEC's and the DOJ's charges of fraud. This includes entire offices dedicated to the use of his lawyers, and materials created in conjunction with and under the supervision of counsel by Mr. Barton.

  As such, the receiver now taken possession of documents and communications that are protected by the attorney-client privilege and the attorney work product doctrine. Before you review these documents, there must be a protocol that ensures that neither receiver nor its staff is exposed to this privileged and/or protected information, especially given the receiver's intention and mandate to communicate with Government agents and prosecutors.

  To this end, we are requesting that all documents contained in the personal offices of Mr. Barton and his three counsel in the building not be reviewed by any member of your team, until a group of Mr. Barton's attorneys have reviewed them for privilege and created a log of documents over which we are asserting privilege. In that review, Mr. Barton's counsel would not remove any documents from the premises. Instead, they would physically segregate, and prepare a log detailing, the documents over which Mr. Barton is asserting

Cort C. Thomas, Esq.
November 1, 2022
Page 2

privilege. Depending on your plans to search the electronic communication of Mr. Barton and his attorneys on JMJ Development servers, a similar protocol should be put in place for those data.

We would propose that the receiver then review that log and identify any documents over which the receiver has concerns regarding the assertion of privilege. We would then meet and confer and, in the event that agreement cannot be reached, the parties can seek a judicial resolution of the privilege claim. This proposed protocol also will conserve resources, as it will avoid the retention of separate professionals to review for privilege in the first instance.

I want to address, in advance, an issue that arose in our discussion on Thursday, October 20, 2022. The concept was raised that the receiver has been given control over the privilege of various corporate entities, such that everything on the premises, to the extent privileged, is now in the receiver's control. As an initial matter, the facilities that you now control also served as Mr. Barton's personal offices and home, and there are many documents therein prepared by or under the supervision of Mr. Barton's personal lawyers in the SEC and DOJ matters. In any event, the presence of closely held corporations in Mr. Barton's privilege communication does not give the receiver control over jointly-privileged documents. This issue has been addressed before by the courts, and the participation of the corporation in many of these privileged communications does not destroy Mr. Barton's right to confidentiality. *See, e.g., In re Bounds*, 443 B.R. 729 (Bankr. W.D. Tex. 2010) ("In the instant case, this Court finds that [a new control person] is not entitled to the work product generated on behalf of the Corporations insofar as it contains the Debtor's own confidential information. Handing over all the work product of the Corporations, for whom the Debtor once served as an officer, would almost certainly result in a disclosure of the Debtor's own confidential information."); *In re: Taproot Sys., Inc.*, No. 11-05255-8-JRL, 2013 WL 3505621 (Bankr. E.D.N.C. July 11, 2013) ("The general rule with regard to materials protected by the common interest doctrine or a joint defense agreement is that one party to the agreement cannot unilaterally waive the protection.").

Cort C. Thomas, Esq.
November 1, 2022
Page 3

These are important matters. The seizure of these documents and e-mail accounts is over Mr. Barton's objection. Should these privileged materials make their way into your substantive review and become part of briefings to the Government, they will taint the integrity of a criminal prosecution that is threatening Mr. Barton's liberty. I hope to resolve this issue with you through mutual agreement, but will not hesitate to take this issue to the Court given its importance in the event appropriate arrangements are not reached.

I look forward to working with you through these matters.

Very truly yours,

Michael J. Edney

cc:    Richard Roper, Esq.
       Charlene Koonce, Esq.

# Exhibit C



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@HuntonAK.com

FILE NO:   126068.0000001

November 7, 2022

*__Via Electronic Mail__*

Cort C. Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email:  cort@brownfoxlaw.com

Re:    *Securities and Exchange Commission v. Barton, et al.,* No. 3:22-cv-2118-X

Dear Mr. Thomas:

We write today about a way forward to generate the $26 million allegedly owed to the lenders that is the subject of the above-entitled action.  As we repeatedly have underscored, the receiver has taken possession of significant commercial real estate assets well in excess of $26 million.  At the same time, Mr. Barton has not been convicted of any crime or adjudged liable for any violation of the securities laws.  There is no legal authority for an order permitting a receiver, prior to a judgment in the underlying proceeding against the target of the receiver, to liquidate the target's assets in an effort to prepare for punishing him.  At the very most, the receiver may secure such assets that will compensate those allegedly affected by the claimed violation of the securities laws.

We have briefed you on the ongoing, critical-path efforts in development projects that have received funds from loans to Wall entities.  While, in many cases, these projects have been delayed by government approval processes and the pandemic, they stand poised to deliver tens of millions of dollars in value that will pay back lenders and benefit the equity owners of the projects.  We will oppose premature, forced liquidation of these projects for salvage value before the development process is complete.  Such actions are inconsistent with the pre-judgment authorities of any receiver in a securities case and the property rights of private citizens against whom no charge of wrongdoing has been proven.  *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("equity receiverships should not be used to effect the liquidation of defendants in actions brought under the securities laws"); *SEC v. San Francisco Reg'l Ctr. LLC*, No. 17-CV-00223-RS, 2018 WL 11436314, at *4 (N.D. Cal. Aug. 15, 2018) ("the ordinary rule is that a receiver should *not* be authorized to liquidate assets").

Premature liquidation of ongoing real estate development projects is all the more improper because, if managed properly, those projects will produce more than $26 million in liquidity. Herein we propose a plan to create more than that amount, which represents the outer limit of any legitimate receiver interest. Specifically, Mr. Barton would be prepared to consent, after review of terms and under appropriate circumstances, to the sale of two properties owned by Enoch Investments LLC. The properties—in Forney and DeSoto—are fully built apartment complexes whose construction was financed by the Department of Housing and Urban Development. As these projects were completed before any Wall entity was ever established, they are not the subject of lender funds. They are, however, mature and, thus, their liquidation would not significantly destroy their value.

Attached please find an independent valuation by the manager of Silverlake Capital LLC, a mortgage broker, for two the properties held by Enoch: apartment complexes at Forney (Parc @ Windmill Farms) and DeSoto (Bellwether Ridge), Texas. We have buyers prepared to purchase the properties at or near the valuations therein, creating, we project, well in excess of $27 million. Mr. Barton would consent to the sale of those two properties and to placing $27 million of the proceeds into a special fund for the repayment of lenders subject to this matter, as further described below. The balance of the net proceeds should be returned to Enoch Investments LLC. The $27 million fund should be more than enough to cover the alleged liabilities to the lenders subject to this matter and the fees associated with a short receivership.

Mr. Barton is also open to consenting to the sale of a third mature property (located at Ingleside, Texas) held by Enoch Investments LLC. While unnecessary to address the outer limits of the receiver's mandate, the time is potentially right to sell these properties as an economic matter, and the receiver's existence limits our ability to do so directly.

Once the proposed valuations are verified and the sale process of those properties is initiated, the receiver should immediately return control of all other Barton-related entities and assets to Mr. Barton. That would include control of Mr. Barton's records, electronic files, offices, and residence. Again, there is only one legitimate purpose for the receiver's continued existence: Ensuring funds are available to repay the lenders subject to this action. The proposed course of action will so ensure and should end the need for further action by the receiver.

We note that securing $26 million in funds is only part of the problem. Identifying the real lenders and obtaining their agreement to have funds returned *in a manner consistent with U.S. law* will require considerable effort. Mr. Barton assembled a team in 2019 to attempt payments to the lenders subject to this action. That team insisted that the funds be returned to the accounts that funded the loans in the first instance and that, where appropriate, U.S. taxes be withheld from certain interest payments as required by U.S. law. Michael Fu interfered with this process every step of the way by insisting that funds be repaid to accounts of his choosing and that U.S. taxes not be withheld from any repayments. Mr. Fu also interfered with efforts to contact the true lenders. One explanation for his obstruction became apparent as Barton team inquiries and civil litigation uncovered lenders that, in many cases (accounting for more than 70 percent of the loaned funds), were simply cut-outs to obscure that funding was provided by Haibo Jiang, a Chinese Communist Party officer.

Any fund to reimburse lenders must account for these significant federal anti-money laundering and tax law issues that were an obstacle to repayment in 2019. We look forward to sharing additional information regarding these concerns at the appropriate time.

Please note that there is no legitimate reason or authority to liquidate assets owned by Mr. Barton's entities. The Receivership Order is clear that there are only two purposes of the receivership: "marshaling and preserving all assets of the Receivership Entities." *See* Receivership Order [ECF No. 29] at 2. The courts have repeatedly held that equity receiverships should not be used to liquidate defendants in actions brought under the securities laws. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (expressing being "disturbed" by attempted use of receivership to liquidate defendant entities)*; SEC v. High Park Inv. Grp., Inc.*, No. SACV051090CJCMLGX, 2006 WL 8464226, at *4 (C.D. Cal. June 19, 2006) (holding that a district court's "broad discretion in determining the appropriate relief in an equity receivership" did not create rare case in which a receiver could liquidate); *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reiterating "strong reservations as to the propriety of allowing a receiver to liquidate [an estate]."). This is particularly so here, where a plan has been presented to secure and preserve more than enough assets to address the subject matter of the above entitled action.

Sincerely,

Michael Edney

cc: Richard Roper, Esq.
    Charlene Koonce, Esq.

# SILVERLAKE CAPITAL LLC

2701 SUNSET RIDGE DR., STE 607
ROCKWALL, TEXAS 75032
972.877.8376

November 1, 2022

Mr. Michael Edney
Via email

Re:  Parc @ Windmill Farms, Forney, TX; and Bellwether Ridge, DeSoto, TX
(the "Projects")

Dear Mr. Edney

As manager of Silverlake Capital LLC (SLC), I have reviewed the project information you provided for the Projects and am familiar with what apartment projects are selling for in the DFW area as a mortgage broker working in this area. It is SLC's opinion that the Projects should sell at this time at a cap rate between 5.0% and 5.25% on the Trailing 12 month net income. It is indicated that the approximate Trailing 12 month net incomes on the Forney and DeSoto Projects were $2.8M and $1.4M, the range of price based on the 5.0% and 5.25% could be the following: on Forney, between about $56.0M and $53.3M, and on DeSoto, between about $28.0M and $26.7M. However, you should be aware that cap rates have moved up significantly this year and are likely to continue to do so, as long as the interest rate markets are increasing.

I am have been a mortgage broker for SLC in the DFW area for many years and have also personally developed a large HUD financed project which is about the same size as the HUD financed Parc @ Windmill Farms and also in the eastern suburbs of Dallas.

THIS IS A MORTGAGE BROKER PRICE OPINION AND SHOULD NOT BE CONSIDERED AN APPRAISAL OF ANY TYPE, AS IT JUST REPRESENTS THE OPINION OF SLC BASED ON ITS ACTUAL KNOWLEDGE WITHOUT DETAILED MARKET STUDY. Please know that this is just an opinion and that there were not any guidelines, rules, regulations or laws that were followed in providing this opinion. This is strictly a Brokers Opinion of Value and no one is entitled to assert any claim of liability against SLC, me or anyone else based on this opinion.

Respectfully yours,

Silverlake Capital, LLC

By:  *Joey Howell*
Joey Howell, Manager

# Exhibit D



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@HuntonAK.com

FILE NO: 126068.0000001

November 29, 2022

**Via E-Mail**

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email:  charlene@brownfoxlaw.com

      Re:     *Securities and Exchange Commission v. Barton*

Dear Ms. Koonce:

I am writing in response to your Wednesday, November 16, 2022, e-mail regarding certain information technology issues and your e-mail of yesterday suggesting that Mr. Barton and Mr. Heller might be held in contempt based on some of those information technology issues.

There are several statements in your November 16, 2022, e-mail that are mistaken, and I am hopeful that this letter will correct any misimpressions.

First, you are mistaken that JMJ Development somehow hired CKC Consulting or Mr. Heller as its "IT professional" for the company.  Instead, CKC Consulting is an agent of this law firm hired solely to assist in the defense of the Government-led criminal and civil cases against Mr. Barton.  As the Firm's agent assisting in the defense of Mr. Barton against the claims brought in the above-entitled action and the parallel criminal charges brought in *United States v. Barton*, the work of the CKC Consulting firm will almost universally be covered by the attorney-work product doctrine.

Second, I understand the employees of JMJ Development had access with administrator privileges to any servers associated with that company as of the day your receivership was created, and CKC Consulting did nothing to change that access or alter any data.  We are willing to have a discussion, not under threats but in cooperation to resolve differences, to direct you to former employees who may be able to assist.



November 29, 2022
Page 2

To be clear about Mr. Barton personally:  Mr. Barton did not manage the JMJ information technology resources and has no personal knowledge of the credentials required to operate those servers.

I hope this makes clear that motion practice concerning Mr. Barton or Mr. Heller is not the appropriate way to address whatever issues you might have regarding the JMJ server.  We look forward to discussing these issues with you further.

Third, your recent correspondence is certainly adjacent to another point.  Before the receiver begins reviewing email files, including those used by Mr. Barton, we must agree to a privilege protocol to prevent tainting of the Government's investigations.  We are aware that the receiver and his agents are having substantive communications about the facts and issues in the case with the prosecution team.  If appropriate protocols to protect the privilege are not agreed, we will challenge the continuation of the criminal and civil cases against our clients due to these privilege issues.  I understand that you and Mr. Roper have discussed some potential solutions, and we look forward to continuing those discussions.

We look forward to speaking with you further about these issues.  Working together, we are hopeful that these matters can be resolved.  Thank you.

Sincerely,

Michael Edney

Cc: Richard Roper, Esq.

# Exhibit E

| | |
|---|---|
| **From:** | Roper, Richard B (DAL - X31210) |
| **To:** | Charlene Koonce |
| **Cc:** | Edney, Michael; Huffman, Ted |
| **Subject:** | FW: Securities and Exchange Commission v. Barton et al. |
| **Date:** | Wednesday, November 30, 2022 7:47:36 PM |
| **Attachments:** | image001.png |
| | Inventory List - Barton.pdf |

Caution: This email originated from outside of the firm.

Ms. Koonce,

Attached is the promised list of art work and estimates of values that could be gathered. As mentioned in the prior email, this list may be supplemented if Mr. Barton is given the opportunity to walk through the premises.

On the IT issue, I left you a voicemail this afternoon. Mike is tied up with a hearing, but we anticipate having resolution tomorrow.

Please give me a call if you would like to discuss.

Regards,


**Richard Roper** | **Holland & Knight**
Partner
Holland & Knight LLP
One Arts Plaza, 1722 Routh Street, Suite 1500 | Dallas, Texas 75201
Phone 214.969.1210 | Fax 214.964.9501 | Mobile 682.465.1008
richard.roper@hklaw.com | www.hklaw.com

Add to address book | View professional biography


**From:** Charlene Koonce <charlene@brownfoxlaw.com>
**Sent:** Tuesday, November 29, 2022 4:43 PM
**To:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com; Tim Wells <tim@brownfoxlaw.com>; Morgan Buller <morgan@brownfoxlaw.com>
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Mr. Roper – thank you for your agreement to provide the lists of art, its ownership, and approximate value. We ask that Mr. Barton include all art located in the Turtle Creek location that he can recall and we can provide access to that location or provide photos of pieces he does not recall if necessary.

Mr. Huffman, with respect to your letter, we expended significant time and effort to identify the IT consultant previously contracted by the Receivership Entities.  When we spoke with that individual a few weeks ago, he tried using his credentials to log in and no longer had access.   Obviously, however, Mr. Heller has access. So, either Mr. Barton, one of his children, or his employees changed that access, or Mr. Heller did.  In any event, the credentials are known to someone that you represent or your agent, all of whom have received a copy of the Receivership Order.

Regarding the privilege protocol, we have proposed a protocol for handling privileged materials *several times*, the last time on November 7, 2022.  We received no response.

While the Receiver is willing to work towards resolution of the privilege issues and would prefer not to have to file a MSC, he is not agreeable to you or your consultant holding the IT access credentials hostage while we attempt to negotiate that process.   As previously requested, please provide the IT credentials.

Based on your communications today and in an effort to avoid the necessity of a MSC, we will wait to the close of business tomorrow to receive that information, as well as the lists of the art described previously by Mr. Roper.



---

**From:** Huffman, Ted <THuffman@hunton.com>
**Sent:** Tuesday, November 29, 2022 4:04 PM
**To:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Ms. Koonce—

Following up on Mr. Roper's email below, please see the attached correspondence.

---

**From:** Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>
**Sent:** Tuesday, November 29, 2022 2:27 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>; Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.

Rule 408 Communication

Ms. Koonce:

Thanks for speaking with me today.   As we discussed, Barton, through counsel, will provide you two lists.  First, a list of the art work, and each work's approximate value, located in the residence, 4107 Rock Creek Drive, Dallas, Texas, including art work taken out of the residence. Second, a list of art work, and each art work's approximate value located at 2999 Turtle Creek, Dallas, Texas.   Regarding the latter list, Baron may need to walk through the building to ensure that he can accurately list the art work.

Also, Barton will immediately cease from using any Barton-entity email address.

Finally, we will respond this afternoon regarding the receiver's request for the credentials to access the entity file server.

Please respond if I am missing something.

Regards,


**Richard Roper** | **Holland & Knight**
Partner
Holland & Knight LLP
One Arts Plaza, 1722 Routh Street, Suite 1500 | Dallas, Texas 75201
Phone 214.969.1210 | Fax 214.964.9501 | Mobile 682.465.1008
richard.roper@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Charlene Koonce <charlene@brownfoxlaw.com>
**Sent:** Wednesday, November 16, 2022 7:09 PM
**To:** Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DAL - X31210) <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>; Robert@ckcconsulting.com
**Subject:** RE: Securities and Exchange Commission v. Barton et al.
**Importance:** High

*[External email]*
Mr. Edney – As Mr. Heller knows, and as he undoubtedly informed you, we contacted him because we were informed that he had become the IT professional *for the Defendant Entities.*

Regardless of whatever Mr. Heller's role is, based on additional information we received, it is abundantly clear that Mr. Heller has received the admin credentials for the Receivership Entities' servers, email accounts and additional electronic data, *and that he changed those credentials.* In so doing, he is interfering with the Receiver's ability to access that information and data.

Based on your request that we no longer communicate with Mr. Heller, a request I am not conceding is appropriate or which in any way insulates Mr. Heller from the mandates in the Receivership Order, I will direct the following to you and your clients:

**Pursuant to ¶¶ 12, 18B.3, and 33 you are hereby instructed to provide me with all access credentials for all Receivership Entity data storage devices, clouds, servers, etc. to me by 9 a.m. tomorrow.** Regardless of who retained Mr. Heller, or why, he and you as his principal, or your clients if you prefer to concede that they are the source of this information, are obligated to provide this requested information to the Receiver. If you on behalf of Mr. Heller fail to provide this requested information, we will so advise the Court and seek the appropriate relief, including but not limited to a request to hold each and both of you in contempt of Court until the access credentials are provided, and sanctions for the costs of obtaining this information that was requested nearly a month ago and expressly required by the Receivership Order. There is no attorney-client privilege, work product protection, or Fifth Amendment privilege in this access information.

Moreover, as Mr. Heller was informed and as the Receivership Order makes abundantly clear ALL data should have been preserved. We will of course seek all and any appropriate remedies if we discover that data or information has been altered or deleted.



**From:** Edney, Michael <MEdney@huntonak.com>
**Sent:** Wednesday, November 16, 2022 5:40 PM
**To:** Charlene Koonce <charlene@brownfoxlaw.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Richard Rooper <Richard.Roper@hklaw.com>; Wester, Lori <lwester@hunton.com>
**Subject:** Securities and Exchange Commission v. Barton et al.

Dear Ms. Koonce:

Attached please find correspondence in the above entitled matter.

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

## ART LOCATED AT 4107 ROCK CREEK DRIVE, DALLAS, TEXAS

| Description | Ownership | Approximate Value |
|---|---|---|
| Large family photograph (stairway) | Tim Barton | $0.00 |
| African Painting | Tim Barton (gifted from Edward Okpa) | >$1,000.00 |
| Photograph by Flags | Tim Barton (was previously owned by house stager) | $0.00 |
| Photograph Pictures (4) | House stager | >$250.00 |

## ART LOCATED AT 2999 TURTLE CREEK DRIVE, DALLAS, TEXAS[1]

| Description | Ownership | Approximate Value |
|---|---|---|
| Michelangelo Bacchus Statute[2] | Tim Barton | <$80,000.00 |
| Cigar Room Statute | Tim Barton (from Catholic Museum) | >$1,000.00 |

---

[1] This list constitutes what Timothy Barton recalls at this point in time. Access to the location and/or photographs of any other pieces would be necessary to establish ownership and approximate value.

[2] Value has been discussed at $80,000.00 and others have said more. An appraisal should be in the documents at 2999 Turtle Creek.

# Exhibit F

| | |
|---|---|
| **From:** | Edney, Michael |
| **To:** | Cort Thomas |
| **Cc:** | Huffman, Ted; Roper, Richard B (DFW - X31210); Charlene Koonce |
| **Subject:** | Re: Documents to be signed_Parc at Opelika |
| **Date:** | Monday, December 5, 2022 8:58:57 AM |

Dear Cort:

Thank you.  In terms of times, would 9:30am or 12:30pm today or 2pm tomorrow work for you?  We would be happy to send around a number.

My very best,

Mike

**From:** Cort Thomas <cort@brownfoxlaw.com>
**Sent:** Friday, December 2, 2022 11:37 PM
**To:** Edney, Michael <MEdney@huntonak.com>
**Cc:** Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DFW - X31210) <Richard.Roper@hklaw.com>; Charlene Koonce <charlene@brownfoxlaw.com>
**Subject:** Re: Documents to be signed_Parc at Opelika

Caution: This email originated from outside of the firm.
9 am central works on our end.  Let us know if you want us to call you or if better to use a dial-in.

Cort

> On Dec 2, 2022, at 9:05 PM, Edney, Michael <MEdney@huntonak.com> wrote:

Dear Cort:

Thank you apprising us of this situation and passing these materials along.  We are reviewing and want to be as helpful as we can, in light of the change of roles effected by the intervening receivership order (which, as you know, we are challenging as entered in error).

I have returned from my federal court commitments in another matter, and we understand the time sensitivity of this and other issues.   We are conferring on these issues over the weekend, and I propose that we have a call at 9am Monday morning (or such other

time Monday morning that is convenient for you and your team) to address this and all other pending issues.

We are confident that, working together, we can resolve forge a path forward on all pending matters.

We look forward to speaking with you and your colleagues Monday morning.

My very best regards,

Mike

---

**From:** Cort Thomas <cort@brownfoxlaw.com>
**Sent:** Thursday, December 1, 2022 9:53 PM
**To:** Edney, Michael <MEdney@huntonak.com>; Huffman, Ted <THuffman@hunton.com>; Roper, Richard B (DFW - X31210) <Richard.Roper@hklaw.com>
**Cc:** Charlene Koonce <charlene@brownfoxlaw.com>
**Subject:** FW: Documents to be signed_Parc at Opelika

Caution: This email originated from outside of the firm.

Richard/Mike/Ted,

Please see below and attached from Greystone. When I spoke with Richard and Mr. Barton a couple of weeks ago, Mr. Barton offered to assist as needed with signatures involving the HUD loan to ensure that we get through cost certification. It has taken considerable effort, but Greystone finally appears to be swimming in the same direction. I had a lengthy call with them today, during which they indicated that HUD has asked that Mr. Barton sign the attached forms on behalf of D4OP since he is still listed on the Regulatory Agreement.

This request of course does not waive our position that D4OP is properly a Receivership Entity, nor do we view Mr. Barton's cooperation in this respect as a violation of the Receivership Order. To the contrary, Mr. Barton's assistance furthers the goals and purposes of the Receivership Order.

**Despite Greystone's delays, there is a great deal of urgency here because of potential defaults (I am happy to jump on the phone to elaborate further and discuss). If there is an way that we could get this resolved one way or the other tomorrow or early next week, it would be very much appreciated.**

Best,

Cort


Cort Thomas
214.367.6094
Brown Fox PLLC
www.brownfoxlaw.com

---

**From:** Amy Briseno <Amy.Briseno@greyco.com>
**Sent:** Thursday, December 1, 2022 4:18 PM
**To:** Cort Thomas <cort@brownfoxlaw.com>; Theresa Johnson
<Theresa.Johnson@greyco.com>; Jill L. Nicholson (jnicholson@foley.com)
<jnicholson@foley.com>; Debi Martin <Debi.Martin@greyco.com>; Samantha Brooks
<Samantha.Brooks@greyco.com>
**Subject:** Documents to be signed_Parc at Opelika

Hi Cort-

Please see the following documents for signatures:

1. 92403 – bottom of Page 1
2. 92464M – "Borrower" Page 6 **and** Page 7
3. 92464M IOD – Page 6

Please let me know if you have any questions or would like to review before you obtain signatures- thank you!

** I will be out of the office tomorrow, however, please feel free to reply to this email and someone will definitely get back to you.

Thanks again!

**Amy Briseno** | **Senior Asset Manager**
Greystone | www.greyco.com
amy.briseno@greyco.com | o: 540.359.7679

# Exhibit G

| From: | Edney, Michael |
|---|---|
| To: | Cort Thomas; Charlene Koonce |
| Cc: | Richard Rooper; Huffman, Ted |
| Subject: | HUD; Privilege; Personal Property; and Chase Bank |
| Date: | Wednesday, December 7, 2022 2:52:11 PM |
| Attachments: | Receiver Privilege Letter Final.pdf |

Dear Cort and Charlene:

1. We have done the work, and Tim has signed the HUD documents.  Please let me us know when he can have someone bring them to your office and to pick up his credit cards at the same time.

2. Attached please find a letter outline the privilege protocol we discussed Monday.  We look forward to discussing this matter with you further.

3. It continues to be our position that the personal property that Tim accumulated over his lifetime and that happened to be in his personal home does not belong to the receiver.  I am asking that Mr. Barton be permitted to pick it up from his home and that any effort to sell that property be cancelled.  As you know, the SEC did not seek to place Mr. Barton under receivership in his individual capacity.  His individual property's presence in a home owned by a special purpose corporation does not make it receivership property.

   This is a small money issue with large emotional value to my client, where your legal position is, respectfully, not justified.  It would be regrettable if this required a motion practice.  I look forward to working with you to resolve it.

4. Mr. Barton is going to need a letter to Chase Bank clarifying that your request do not affect accounts, either deposit or credit, held in his personal capacity.  I understand that you and Mr. Roper have been discussing this possibility, and the need has arisen.

My very best regards,

Mike



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20037

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL J. EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

December 7, 2022

***VIA E-MAIL***

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com

   Re: Proposed Privilege Review Protocol for Microsoft 365 Server Documents

Dear Ms. Koonce:

Thank you for agreeing to work together to resolve the privilege issues implicated by Mr. Barton's role as a defendant in the Securities and Exchange Commission civil action and the criminal action brought by the United States Attorney's Office for the Northern District of Texas. In line with the concepts we discussed on December 5, 2022, herein we outline a protocol for protecting the attorney-client privilege and attorney work product protection attendant to electronic communications present on the Microsoft 365 e-mail server that has been the subject of our discussions.

This proposal tracks terms that we discussed Monday. Please note that, by outlining the proposed accommodations, Mr. Barton in no way intends to waive arguments against the appointment of a receiver in his pending appeal or to seek immediate return of all documents shared with the receiver in the event the Court of Appeals reverses or substantially modifies the District Court's order appointing the receiver.

First, as you suggested, a third-party vendor would be given access to the Microsoft 365 and be bound by the protocol we agree. We propose Liquid Lit Manager as an option. Mr. Barton would bear the cost of this additional vendor, and we are working to determine what those costs may be.

Second, the vendor would give the Receiver immediate access to electronic communications that do not fall within the following categories:

Letter to Charlene Koonce, Esq.
Page 2

1.  Any electronic communications to which Mr. Barton was a party

2.  Any communications involving the following counsel or their associates or agents:

   a.  Hunton Andrews Kurth LLP: Michael Edney, Ted Huffman, Sean O'Connell, Michael Dingman

   b.  Holland & Knight LLP: Richard Roper, Javan Porter, Scott Mascianica

   c.  Khudabuksh Walji and the Law Office of K. Walji

   d.  Metzger & McDonald PLLC: Steven Metzger

   e.  Joyce W. Lindauer Attorney, PLLC: Joyce Lindauer, Laurance Boyd, Paul Geilich, Sydney Ollar, Rebecca Vaughn

   f.  The Marx Law Firm: Randy Marx

   g.  Law Office of Van Shaw: Van Shaw, David Welch, Jeremy Beau Powell

   h.  Vance McMurry

   i.  Robert Kemp

   j.  Gray Reed & McGraw LLP: Norm Lofgren

   k.  Scheef & Stone LLP: Byron Henry, Walker Young

   l.  Marshal Dooley

   m. Katrine Kershner

   n.  Eric Liepens

   o.  Anunobi Law PLLC: Chidi Anunobi

   p.  Moravcik, Threadgill & Starry: Stuart Starry

   q.  Haynes and Boone, LLP: Kit Addelman

   r.  Joseph Mastrogiovanni

   s.  Ben Pamenari

   t.  Oscar Rodriquez

Letter to Charlene Koonce, Esq.
Page 3

       u.  Roben Phelan

       v.  Camisha Simmons

       w.  Robert Miklos

       x.  Sam Heron

       y.  Reed Smith LLP: Elizabeth Brandon, David Hryck, Scott Bolden, Rizwan Qureshi

       z.  Reese Marketos LLP: Joel Reese

We reserve the right to add other attorneys and law firms to the extent we have omitted one. These categories are necessary to ensure that communications that are themselves privileged communications or contain information that is derived from either a privileged communications or from attorney work product, are reviewed prior to disclosure to the receiver. As we discussed, paragraph 60 of the receivership order and the SEC's access on demand to all information in the receiver's custody constitute one of the reasons that make this review particularly necessary. In addition, addressing the SEC's investigation and accompanying civil litigation has been nearly the full-time focus of Mr. Barton for the last two years, and his obtaining and implementation of legal advice and work product from counsel was run through the electronic mail facility housed on the Microsoft 365 server.

Third, for the purposes of conserving resources, the receiver would then be able to make a request for production of a substantive category of documents against the set of materials to which the receiver does not have access. That search would be run, this law firm would review for privilege and attorney work product, the firm would submit a privilege log of those documents deemed privileged or protected by the attorney-work product doctrine and request the third party vendor to produce the balance.

In the alternative, I am open to discussing the viability of a schedule—once the volume of the documents in the identified categories is ascertained—for this law firm to review all such documents for whether they implicate the attorney-client privilege or attorney work product protection and to produce a privilege log for those documents over which Mr. Barton asserts privilege.

Letter to Charlene Koonce, Esq.
Page 4

Please let me know if you have thoughts or questions regarding the above, including whether you would like to set up another call to sort through any details with this proposal. Working together, we hope to have an agreement in place as soon as possible and to be moving forward.

My very best regards,

Michael J. Edney

cc:  Cort Thomas, Esq.
     Richard Roper, Esq.

4

126068.0000001 DMS 300481002v2

# Exhibit H



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20037

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL J. EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

January 19, 2023

<u>**VIA E-MAIL**</u>

Charlene Koonce, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com

      Re:     Receiver's Improper Motion to Compel Threats - *SEC v. Barton, et al.*, No. 3:22-cv-2118, in the United States District Court for the Northern District of Texas

Dear Ms. Koonce:

This letter responds to your email from this morning threatening to file a motion to compel later today. As an initial matter, the form and timing of your letter is far from ideal. I disagree with the assertion that you have had meaningful interaction with us about many of the matters in your note. With attachments, your e-mail demands answers or the production of documents on more than 20 matters in four hours or threatens the filing of a motion and the seeking of sanctions. That is not the conferring with opposing counsel required by the local rules and, if you were to go forward with a motion based on this e-mail, it would be in violation of the local rules and subject to being struck and perhaps other remedies. We have previously had issues with your side filing motions without making any meaningful effort to meet and confer with opposing counsel. You can and frankly must do better.

Many of the demands raised this morning are untenable, directed to the wrong person, or have other issues that make it infeasible to respond directly on such short notice today. We, nonetheless, try to do the best we can below.

As to your two initial requests for "information and documents required by various paragraphs of the Receivership Order" or other documentation that you seem to believe is also required, please be more specific so that Mr. Barton can directly respond. As to requests in their general nature, as you ask them, there are at least two general problems. *First*, as has been repeatedly raised many times, Mr. Barton is a criminal defendant and cannot provide any of the sworn statements that you suggest the Receivership Order requires of him, lest he



Page 2

waive his constitutional Fifth Amendment right against self-incrimination. *Second*, one of the other most significant issues preventing Mr. Barton from providing additional information and documents regarding the receivership entities is that the Receiver took over the offices and other properties where such information was kept. Mr. Barton cannot reasonably be asked to hand over information that the Receiver previously took from him. Likewise, the Receiver's seizure of the relevant documentation means he should already have the information in his possession that he claims to seek. If there is something additional that you believe you need that you cannot find, please identify that information specifically and explain the issue.

As to your third request for "IT Access Data," we understand from prior meetings that a privilege protocol will be put in place using Liquid Lit Manager and, as Mr. Barton has agreed, at his expense. Should you seek to confer further about formalizing that protocol, we are ready, willing, and able to do so. Notably, since our last talk, Mr. Barton has tried to identify certain additional information that you requested regarding the screening of certain attorney-client materials of a personal nature. In doing so, there have been significant limitations in trying to put this information together while the Receiver continues to interfere with Mr. Barton access to his office, home, and other properties where relevant information may exist. We will nonetheless send what we can later this evening, which we believe will provide a suitable framework from which to commence screening, which we can supplement as new information may be learned once the database is set up and a review begins.

As to your request this morning for QuickBooks information, this is an issue that I am unfamiliar with. I searched the entirety of our prior emails communications for the term "QuickBooks" and nothing comes up. If there is some information here that you do not have, I can try to run that issue down or identify whether there may be some person who knows how to assist. However, to demand that this data be produced on mere hours' notice, if it even exists in any location other than the Receiver's own possession, does not provide a reasonable opportunity to respond, much less confer.

As to your final request for artwork information, Mr. Barton previously provided notes about the artwork he could recall. I understand that my co-counsel Richard Roper has been in communication with you on those issues as well. For any additional artwork unknown to Mr. Barton, you should recall that you offered to provide Mr. Barton access to the Turtle Creek property so that he could see what artwork you are talking about and provide a further response. However, you have since refused to provide that access and therefore impeded the process. Mr. Barton needs to be allowed to assist or the Receiver needs to review the documentation in its possession to figure things out. Mr. Barton continues to be ready, able, and willing to do what he can.

We are committed to working together to resolve disputes and to avoid needless motion practice, especially since the costs of your participation in that motion practice are being borne by Mr. Barton's entities. Crucial to avoiding the unnecessary consumption of judicial resources is the local rule's mandated process for conferring with opposing counsel



Page 3

prior to the filing of motions.  To reiterate, your e-mail today does not satisfy the local rules, and filing a motion prior to further consultation on these points would be a violation of those rules.  Mr. Roper and I look forward to further discussions, at times mutually convenient for all involved, directed at resolving any potential disputes.

Sincerely,

Michael J. Edney

cc:    Cort Thomas, Esq.
       Richard Roper, Esq.

3

126068.0000002 DMS 300966990

# Exhibit I

| | |
|---|---|
| **From:** | Huffman, Ted |
| **To:** | Charlene Koonce; Cort Thomas; Tim Wells |
| **Cc:** | Edney, Michael; richard.roper@hklaw.com |
| **Subject:** | SEC v. Barton et al - Protocol |
| **Date:** | Friday, January 20, 2023 8:53:38 AM |

Counsel,

Per prior correspondence, we have attempted to gather additional information regarding the personal counsel for Mr. Barton over the years.  While he has been limited due to a lack of access to information in his offices overtaken by the Receiver, we believe the information below can be used to advance terms for the privilege protocol pertaining to the IT privilege issues.

- Hunton Andrews Kurth LLP (Michael Edney; Ted Huffman; Sean O'Connell; Kevin Elliker; Michael Dingman) – personal representation in SEC & DOJ defense
- Holland & Knight LLP (Richard Roper, Javan Porter, Scott Mascianica) – personal representation in SEC & DOJ defense
- Law Office of K. Walji (Khudabuksh Walji) – *inter alia,* personal representation in SEC matter
- Metzger & McDonald PLLC (Steven Metzger) – *inter* alia, personal representation for several years on David Ramolia and Hodges matters, as well as SEC matter
- Joyce W. Lindauer Attorney, PLLC (Joyce Lindauer, Laurance Boyd, Paul Geilich, Sydney Ollar, Rebecca Vaughn) – *inter* alia, personal representation in cases for several years, including Hodges matter
- The Marx Law Firm (Randy Marx) - *inter* alia, personal representation for several years on various cases
- Vance McMurry - personal lawyers for 15 years
- Robert Kemp - personal lawyer for 15 years
- Gray Reed & McGraw LLP (Norm Lofgren) - personal lawyer in non-civil matters
- Moravcik, Threadgill & Starry (Stuart Starry) - *inter* alia, personal representation in Hodges and Ramolia matters, of others
- Haynes and Boone, LLP (Kit Addelman) - personal representation in SEC matter
- Reed Smith LLP (Elizabeth Brandon, David Hryck, Scott Bolden, Rizwan Qureshi) - personal representation in guaranty matters

Please let us know what else you may need and if you believe further discussions regarding our protocol would be helpful.

Thanks,
Ted

Hunton Andrews Kurth

**Ted A. Huffman**
Associate
thuffman@hunton.com
p  214.979.2944
bio | LinkedIn | vCard

Hunton Andrews Kurth LLP

Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202

HuntonAK.com

This communication may include confidential or privileged information. If you are not an intended recipient, please advise by return email immediately and then delete this message, including all copies and backups.

# Exhibit J



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20037

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL J. EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

February 14, 2023

**_VIA E-MAIL_**

Charlene Koonce, Esq.
Cortney Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com
Email: cort@brownfoxlaw.com

      Re:    Issues Regarding Intuit QuickBooks – *SEC v. Barton, et al.*, No. 3:22-cv-2118, in the U.S. District Court for the Northern District of Texas

Counsel:

This letter responds to your recent request that Mr. Barton turn over any QuickBooks access information in his possession.

We want to be as helpful as possible. To the extent, however, this was framed as a demand for testimony or other statement from Mr. Barton pursuant to a court order generally requiring those who the Receiver requests to provide answers, we reiterate our position that the Fifth Amendment protects Mr. Barton from any such judicially compelled statements, given the pendency of a criminal prosecution aimed at the subject matter of your work.

Reserving all rights and privileges, we write to confirm that neither Mr. Barton nor his attorneys have possession of the requested QuickBooks credentials that you seek. Mr. Barton does not personally have any experience with accessing or using that system.

There are former (due to their termination by the Receiver) JMJ employees who do have experience with the system and may have the requested credentials. Among them is Murugan Venkat (mvenkat@jmjdevelopment.com), who I understood you have previously been put in touch with. Mr. Venkat and two employees working underneath him would have been the ones who used the QuickBooks accounting system data in the course of their job duties prior to the Receiver taking control.



Page 2

I also wanted to address the historical process for preparing HUD costs reports. Apparently, HUD cost reports, in the past, have been prepared without reference to accounting system data. Most of that data comes from the operating company, which is controlled by Pillar related entities. Our understanding that any contribution of data to those reports from JMJ Development related entities has been compiled from reference to bank statements.

We hope the foregoing has been helpful. Please contact me with any questions about the above.

Sincerely,

Michael J. Edney

2

126068.0000001 DMS 301143693

# Exhibit K



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@HuntonAK.com

FILE NO:   126068.0000001

February 15, 2023

<u>*Via Electronic Mail*</u>

Charlene Koonce, Esq.
Cort Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com
Email: cort@brownfoxlaw.com

> Re:   Privilege Protocol - *Securities and Exchange Commission v. Barton, et al.,* No. 3:22-cv-2118-X

Dear Ms. Koonce:

In furtherance of prior correspondence regarding the privilege protocol that will govern the treatment of Microsoft 365 access data, Mr. Barton submits the following further proposals and agreements.

(1) Mr. Barton agrees to negotiate a discovery vendor contract, subject to the Receiver's acceptance of terms. , with Mr. Barton as the contracting party.  We can move forward at once with your approval to obtain the bid for this work and obtain a contract.  We can also further address the payment and cost issues once the bid comes back, considering the needs (and burdens) of the vendor's engagement and scope of work, as it is ultimately agreed.  Per your prior requests, Mr. Barton will also agree to include language in such vendor contract to address the Receivership Order and the purpose of the services provided.

(2) Your prior correspondence has suggested running a full image of the Microsoft 366 server.  This proposal is probably impracticable considering the size of the server and also likely to be unnecessary, considering the extraordinary costs of running a full image and the de minimis value of most of the documents on that server.  The protocol would instead be that, when search requests are made, they would be pulled from the server, reviewed for privilege, the unprivileged documents produced, and the privileged

documents retained and logged.  This process would presume that requests for information were being made in good faith, for a legitimate purpose, and not to impose additional costs of review on the Defendant..

(3) We have provided information regarding the various attorneys and law firms relevant to our privilege review.  We believe those disclosures should be sufficient to address your inquiries for the time being, subject to more refined inquiries as the privilege review proceeds.

(4) You have suggested in prior correspondence that a communication involving Barton or his agents should not be governed by a privilege protocol if one of his personal attorneys is not the immediate sender or recipient.  However, we cannot agree to this position by the Receiver as stated. Mr. Barton's emails and email records may reflect work product or an attorney-client communication in various other circumstances, as applicable law reflects, even if internally recording or discussing such information.  To address the scope of the privilege protocol for such communications, narrow search terms should be appropriate.

(5) As to the protocol for ultimate production, the methodology may be best to discuss when the database has been set up.  Because we do not know the number of documents that may be initially flagged as "potentially privileged" (based on the attorneys and search terms we agree upon), a procedure for searching for narrow document categories at the outset seems to be the quickest and most efficient way to roll important documents out to you.  If you believe otherwise, let us know, and we would be happy to discuss further.  At that time, we can also address the schedule for an initial production.

(6) In furtherance of our prior correspondence on a privilege protocol governing paper files located at the 2999 Turtle Creek offices or other locations under the Receiver's control, we have previously proposed having an attorney team go in to review those files, but understand the Receiver has declined those offers.  Please let us know if your position has changed.  In any event, our IT privilege protocol should not affect a separate privilege protocol governing paper files at the various offices.

If you have any additional questions or comments, or if you would like to discuss further sometime soon, do not hesitate to contact me directly.

Sincerely,

Michael Edney

# Exhibit L



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

MICHAEL EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@HuntonAK.com

FILE NO:   126068.0000001

February 16, 2023

*<u>Via Electronic Mail</u>*

Charlene Koonce, Esq.
Cort Thomas, Esq.
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Email: charlene@brownfoxlaw.com
Email: cort@brownfoxlaw.com

>  Re:    Receiver Informational Assistance - *Securities and Exchange Commission v.*
>  *Barton, et al.,* No. 3:22-cv-2118-X

Dear Ms. Koonce:

I write to address some of the informational inquiries of the Receiver that are the subject either of pending motion practice and recent correspondence.  Mr. Barton does have an interest in maximizing the value of assets that are, for the time being, under the Receiver's control and to avoid the dissipation of corporate resources.  To that end, the Defendant has provided advice, both informally to the Receiver and through court filings, regarding the status of assets and how they should be handled.

To clarify, we think, through counsel, we can be more helpful with specific requests for information.  Generalized inquiries claiming that Mr. Barton is judicially compelled to provide broad swaths of information are going to be more problematic because of Mr. Barton's Fifth Amendment privilege that he must maintain during the pendency of a criminal prosecution aimed at the subject matter of the Receiver's work.

### General Records of the Entities or Their Former Employees and Representatives

Most of the Receiver's inquiries appear to seek documents or other information to which Mr. Barton no longer has access because he was removed from his company offices.  However, this impediment does not need to present an ongoing problem.  If Mr. Barton were granted limited or supervised access to his former offices, he could assist the Receiver to identify the



Page 2

relevant business records and other information that the Receiver apparently still seeks.  Mr. Barton not only would gladly assist in this way, he asks that he be allowed to do so, with the hope that such efforts will fully and finally resolve any potential misunderstandings regarding the location of certain information.

There are also other instances where the Receiver seeks information or documentation that was maintained by former company employees, rather than Mr. Barton personally. Company representatives with relevant knowledge include Saskya Bedoya, Murugan Venkat, Bella Khusal, Maximilien Barton, who I understand the Receiver has already interviewed. There may be other former company representatives or third parties with relevant knowledge, and Mr. Barton anticipates he could identify relevant contact information for these individuals if given access to his office files.  On this last point, please note that the Department of Justice has suggested that Mr. Barton not contact certain third parties, which may limit his assistance to largely helping the Receiver with making contact.  Mr. Barton is nonetheless ready and willing to assist to the extent he is able to do so.

### Accounting Records and Bank Statements

In prior correspondence, I have noted the Defendant's lack of access to QuickBooks or other electronic accounting or financial databases.  Those resources were controlled by Mr. Venkat and the two female employees who worked under his supervision and whose names we cannot recall without access to records inside the corporate offices under your control.

Bank statements were maintained in paper form and retained in file cabinets on the second floor of the Turtle Creek offices. (Should you provide Mr. Barton with access to the office, he probably could direct a member of your team to them.)  Many of the corporate entities maintained separate bank accounts at one of four banks:  (1) Chase, (2) CapitalOne, (3) Veritex Community Bank, and (4) Texas Brand Bank.  There also should  be a large number of paper-copy invoices, check stubs, and other payment records in the same file cabinets mentioned above.  These file cabinets were the companies' method of keeping this information and go back for years, as Mr. Barton and other company representatives were often in the regular practice of keeping business records in paper form.

With regard to your inquiry regarding company credit cards, Mr. Barton has returned those and those held by family members who were employees to the Receiver.  Statements for those credit cards should be available in the same file cabinets identified above. Should you have any other specific inquiries regarding the banking, accounting, or other financial records of the various companies, please do not hesitate to let us know and we can attempt to direct you further.

### Artwork

My co-counsel Richard Roper previously provided the Receiver with an itemized inventory of artwork, yet I understand that the Receiver continues to have additional artwork inquires.  On these matters, I have separately been informed as follows.  First, the artwork kept at



Page 3

Mr. Barton's personal residence is all personal property belonging to Mr. Barton, and he did not transfer any of this artwork to any receivership entity. Second, most of the framed artwork at the home is either the property of a third-party stager who was involved in listing the home for sale, personal family photography, posters, or prints of nominal value. Other than those items, there was an African painting that artist Edward Opka gifted to Mr. Barton personally, as previously disclosed to you. There are also two horse statues still in the Receiver's possession that Mr. Barton purchased many years ago (for an amount likely around $1,000), which he asks that the Receiver return to him as they belong to him personally. The appraisal report that your prior correspondence mentions should capture each of the artwork items above.

We have separately itemized information for the Receiver regarding two statues located at the Turtle Creek offices. To the extent you believe there is other artwork located at that location, Mr. Barton has offered to walk the property to identify what other artwork may be there and to see if he can recall any information about it.

### *The Venus Project*

I understand from your recent motion that you have a specific question regarding the need for approval of the Mayor of Venus, Texas for certain aspects of the Venus Project to go forward. I also understand that my co-counsel Richard Roper previously provided information to you regarding next steps on this Project. The Mayor's approval—which the relevant entities were on the eve of securing before recent intervening events—are for the public infrastructure development program and a form of tax increment financing for certain aspects of the Project. We again would be happy to provide as much detail regarding these programs and key approvals as we can and direct you to others who can also elaborate. As you know, the "entitling" of the land—of which these approvals are a part—is a very important aspect of the development process's contribution to enhancing the value of a real estate asset. We encourage you to take all necessary steps to obtain these approvals.

Should you otherwise have any questions or seek to discuss any of the matters contained in this letter, please do not hesitate to contact me directly. I would appreciate hearing from you that the foregoing and other recent correspondence resolves all or some of the issues identified in your pending motion to compel. As you know and as we will point out to the Court, we have some concerns about whether there was any meaningful conferring prior to filing that motion, as Local Rules require. The meet and confer process is particularly important with regard to an informational or discovery matter, which generally lends itself to resolution through consultation short of motion practice.

Should you need additional time to consider whether our responses wholly or partially obviate the need for your motion, please let us know and we can jointly move for an extension of time for the opposition brief. In the absence of hearing from you, we will be filing an opposition and cross-motion today.



Page 4

Sincerely,

Michael Edney