# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY BARTON, | § | |
| CARNEGIE DEVELOPMENT, LLC, | § | |
| WALL007, LLC, | § | |
| WALL009, LLC, | § | |
| WALL010, LLC, | § | |
| WALL011, LLC, | § | |
| WALL012, LLC, | § | |
| WALL016, LLC, | § | |
| WALL017, LLC, | § | |
| WALL018, LLC, | § | |
| WALL019, LLC, | § | |
| HAOQIANG FU (A/K/A MICHAEL FU), | § | |
| STEPHEN T. WALL, | § | |
| | § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and | § | |
| LDG001, LLC, | § | |
| | § | |
| *Relief Defendants*. | § | |

## VERIFIED REPLY IN SUPPORT OF
## RECEIVER'S MOTION TO COMPEL DOCUMENTS
## AND INFORMATION, REQUEST FOR SANCTIONS, OR
## ALTERNATIVELY, MOTION FOR SHOW CAUSE HEARING

Cort Thomas, as Receiver, files this Reply in Support of Receiver's Motion to Compel Documents, etc., (the "Motion") [Dkt. 133], and respectfully shows the Court as follows:

Barton seeks to avoid an order compelling production of documents and information and sanctions by asserting an inability to comply based on his individual testimonial privilege, a purported attorney-client privilege, lack of access or knowledge, and in limited instances, partial compliance.[1] None of Barton's defenses or arguments excuse his contempt.

## A.    Rule 37 Applies, as Do More Formal Contempt Procedures Requested Alternatively

The Receiver did not "separately move for a contempt order, following a future show cause hearing." *Response* p. 5.  Pursuant to Rule 37, he requested the Court treat Barton's failure to comply with the Receivership Order as a contempt of court, compel Barton's compliance, and award sanctions.  If the Court declines to utilize Rule 37, the Receiver requests a Show Cause Hearing in the alternative. *Motion*, pp. 2, 15.  Nor does the Receiver seek to avoid the clear and convincing standard governing traditional contempt proceedings. He sought to utilize the quicker and therefore cheaper mechanism provided by Rule 37 to obtain, ultimately, the same relief available through a Show Cause Hearing: an order compelling Barton's compliance.  Both roads lead to the same destination, but Rule 37 does not require a costly evidentiary hearing.

Although Barton contends Rule 37 does not apply because "no discovery has been sought or served," the plain language of the Rule allows the Court to treat the failure to comply with *an order permitting or providing for discovery* as contempt, thereby eliminating the necessity of a show cause hearing. FED. R. CIV. P. 37(b)(2)(vii).  The Receivership Order unequivocally requires Barton's production of documents, testimony, and specific answers to questions posed by the Receiver.  Barton provides no argument precluding the Court from exercising its considerable

---

[1] *See* Dkt. 160, "the Response."

discretion to treat the provisions of the Receivership Order at issue as an order within the scope of Rule 37 and utilize that rule to craft appropriate sanctions.

**B.      Barton's "Defenses" Do Not Mitigate or Insulate Him from a Finding of Contempt**

The Receiver's Declaration demonstrated Barton's failure to provide the information specified, in detail, in the Motion [Dkt. 134, App. pp. 2-11], and thus shifted the burden to Barton to rebut the conclusion that he was in contempt by demonstrating that he had complied,[2] was unable to comply, or demonstrate "other relevant defenses." *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). Barton asserted an inability to comply in light of (a) his testimonial privilege, (b) a purported attorney-client privilege, and (c) an oblique claim that he is unable to access the information at issue. Barton, however, provided no evidence of an inability to comply—indeed, of any effort to comply at all—other than self-serving letters from his counsel.[3]  His arguments, including his assertion of privilege (even if the privileges were relevant or valid) do not satisfy his burden. *See United States v. Rylander*, 460 U.S. 752, 758 (1983) (assertion of Fifth Amendment privilege in connection with refusal to produce evidence demonstrating an inability to comply is "not a substitute for relevant evidence" negating contempt).

**1.      Barton's Fifth Amendment Privilege is Irrelevant and Inapplicable**

Initially, Barton contends the Court should deny the Motion because "the Receiver makes no sustained legal argument to overcome [Barton's] claim of privilege," as asserted in a letter from Barton's counsel.[4]   Barton's argument in support of a privilege that has not been asserted,[5]

---

[2] Barton provided some information, albeit almost all unhelpful, misleading, or flatly incorrect, after the Motion was filed.  *See* Response.  He has not, however, provided all that is required, nor does his late and inadequate proffer protect him from sanctions.  *See* Rule 37(a)(5)(A).

[3] Barton's counsel's contention that he has directed the Receiver to "key facts, documents, and those knowledgeable about issues who may provide information," *Response* p. 7, is demonstrably false.  *See infra* and prior motions and reports.

[4] Barton's counsel's assertion of Barton's Fifth Amendment privilege is specifically limited to the compelled testimony required by ¶ 18B.  Although Barton's individual privilege is not relevant, for purposes of the Motion, the Receiver waived entitlement to sworn testimony regarding the information required by ¶18. Motion, p. 13, n.4.

[5] A defendant, rather than his attorney, must invoke the privilege.  *Hall v. United States*, 413 F.2d 45, 48 (5th Cir.

regarding information and documents that Barton is required to produce in his role as the Receivership Entities' (the "Entities") former officer—a custodian—cannot excuse his contempt.

Through their former officers or agents, the Entities are required to comply with the Receivership Order, including paragraphs 7-12 and 18.[6] Thus, Barton's obligation to provide Receivership Property, the Entities' books and records, access information to the same, and all information at issue in this Motion is *as an agent* or custodian.[7] Accordingly, Barton's testimonial privilege is irrelevant to his obligation (and failure) to produce the information and documents. *Braswell v. United States*, 487 U.S. 99, 108–109 (1988) ("a corporate custodian . . . may not resist a [proper request] for corporate records on Fifth Amendment grounds."); *Watson v. C. I. R.*, 690 F.2d 429, 431 (5th Cir. 1982) (Fifth Amendment privilege "purely personal" and does not "extend to the documents of an artificial entity . . . held by an individual in a representative capacity.").

Even if Barton, individually, was compelled to produce documents and information, his testimonial privilege provides no insulation from a finding of contempt for his failure to turn over documents that are already in existence, for instance the Entities' books and records, because in so doing, the act of production is not testimonial. *United States v. Hubbell*, 530 U.S. 27, 36 (2000) (producing materials voluntarily prepared prior to issuance of summons does not require testimonial conduct). Nor can Barton's testimonial privilege excuse production of information that does not potentially incriminate him. *United States v. Stafford*, 273 Fed. Appx. 319, 320 (5th Cir. 2008) ("Fifth Amendment's self-incrimination privilege applies only when the accused is

---

1969). Nor is a "blanket" assertion sufficient to "relieve a civil litigant of the responsibility to answer questions put to him during the civil discovery process." *SEC v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981).

[6] *See* Receivership Order ¶¶ 7, 10, 11, 12, 14, 18 (Entities and their past officers and agents are ordered to turn over to the Receivership Property, provide sworn statements and an accounting, tax returns, answer questions and produce information required by the Receiver).

[7] Indeed, as demonstrated by the Receiver's Motion to Supplement [Dkt. 41, 42, 73, 74], Barton is generally the only former officer for most Entities, and thus the only person who possesses the information and documents at issue or the ability to obtain the documents and information from other agents that he controlled. *See also* App. p. 8, ¶ 23.

compelled to make a testimonial communication that is incriminating.") (internal quotation omitted). Barton does not attempt to demonstrate that any of the requested information potentially incriminates him. *See Stafford*, 273 Fed. Appx. at 321 (affirming order compelling compliance with subpoena over assertion of Fifth Amendment, where "Stafford made no attempt to explain how the testimonial aspect of his turning over the relevant documents could tend to incriminate him"). Nor can he: even if construed as requests of Barton individually rather than as a custodian, the information requested, for instance IT Access Data, has no incriminatory potential.[8]  Barton fails to demonstrate that any of the information at issue seeks testimony within the scope of his Fifth Amendment privilege.

### 2.    No Inability to Provide the Quickbooks and Accounting Data

The Receivership Order compelled the Entities and their agents to provide "[a]ll keys, codes, and passwords . . . and information . . . required to open or gain access to any Asset or Document." Receivership Order, ¶¶ 6B; 18.B.3.  As evidenced by the email sent to Barton's counsel on October 20, 2022 and as discussed in the Receiver's Declaration, the Receiver requested the name and contact information for persons in control of the Entities' Quickbooks, accounting functions and access credentials, and other information regarding the Entities' accounting functions (collectively the "Accounting Data") early and often.[9]  Barton provided nothing.  His recent feigned willingness to provide responsive information, arising after the Motion was filed, falls far short of satisfying his obligation because Barton provided the name of the person *disclosed in the Motion* who

---

[8] If the Court concludes any of the requested information or documents *potentially* fall within Barton's privilege, the Receiver requests the Court conduct an *in camera* inspection of the documents and data at issue.  *See United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2021 WL 3190556, at *6 (E.D. Tex. July 28, 2021).

[9] *Motion*, p. 4, App. pp. 3; 14; 16; 64-65.  The Receiver's efforts to obtain this information from Quickbooks continues, but is as yet unfruitful.  Additionally, the Receiver recently discovered that the Entities' accounting functions may have been transitioned to a different platform although still subject to Murugan's control.  Thus, as requested, the Receiver requires access to all accounting storage platforms used by or for the benefit of the Entities, including but not limited to Quickbooks.

contacted the Receiver, mistakenly, *but at Barton's direction*. *Compare*, Barton Exh. J (Feb. 15, 2023 letter identifying Venkat Murugan (mvenkat@jmjdevelopment.com) and disclaiming "possession" of Accounting Data), with App. p. 8, 64-65 (Murugan called the Receiver mistakenly, but at Barton's direction, and refused to answer questions without Barton's permission).[10]  Barton ignores his control over Murugan, *as admitted by Murugan who held himself out as Barton's agent*.[11] Barton thus fails to demonstrate an inability to obtain and provide the Accounting Data.[12]  Barton should be ordered to provide the Accounting Data, and sanctioned and held in contempt for failing to do so.

### 3.    No Attorney-Client Privilege Protects the IT Access Data

The Receiver is the only person entitled to possession of the Entities' books and records, including the servers, email accounts and the IT Access Data.[13]  *Receivership Order,* ¶ 6B; 3. Barton, a former employee and officer, is holding the servers and entire email system hostage to the exclusion of the companies that own them.[14] The Receiver does not seek the vendor's work product or the vendor's privileged communications. He seeks the IT Access Data, in which Barton has failed to demonstrate any privilege exists, and which is admittedly within the vendor's possession.  *Response,* p. 9; *see In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (party asserting privilege bears burden of demonstrating applicability).

Nor does a privilege in some information accessible through use of the IT Access Data, or the unsuccessful negotiation of a privilege protocol excuse Barton's contempt.  Because Barton's

---

[10] Barton also provided an email account for Mr. Murugan he knows does not work—because the Receiver has previously instructed Barton himself to cease using the "jmjdevelopment.com" domain.

[11] App. pp. 8-9.

[12] Even if Barton's assertions about the process necessary to comply with HUD regulations were evidentiary or accurate, the Receiver would still be entitled to the accounting information because compliance with HUD regulations provides just a sliver of the necessity of this information.

[13] The Receiver's requests and the Receivership Order's provisions, are not limited to "Microsoft 365 login information for one of the receivership entities."  Response at 9.

[14] As Barton is aware, none of his former employees has been willing to admit they have possession of, or provide the access credentials for the Entities' data storage or email accounts.

counsel flip-flopped on a Rule 502(b) snapback agreement for any privileged communications that the Receiver might discover,[15] the Receiver continued negotiating a complex and expensive privilege protocol.[16] Barton is using those negotiations to hold the IT Access Data hostage, while insisting on unreasonable and unnecessary provisions.  Barton's latest proposal, sent after the Motion was filed, evidences his lack of good faith and the necessity of the Court's intervention.

In an email sent the day after the Motion was filed and six weeks after the Receiver's requirements for the protocol were sent, Barton responded with a more limited list of counsel.[17] On the same day, the Receiver reiterated several non-negotiable provisions that Barton ignored in both the January 20, 2023 email[18] and in a letter sent days before he filed his Response.[19] Among other improper provisions, Barton insists on:

- Declining to create a full image of the server and requiring the Receiver to submit search requests, the response to which would then be reviewed for privilege, with whatever Barton deemed not privileged, eventually provided to the Receiver.

Barton's proposal is backwards. The Receiver is entitled to possession and control over the servers and email accounts and the access data necessary to inspect their contents. Barton's possible privilege in a limited number of documents stored on those company devices entitles him to propose search terms that include a list of counsel he retained *for his individual defense*.[20] No other privilege exists, including in attorney-client communications between Barton as an officer

---

[15] App p. 20.

[16] App. pp. 18; 20; 37; 56-57; 61-62.  Further, the Receiver is the Court's agent, and his possession is thus the court's possession.  *Porter v. Sabin*, 149 U.S. 473, 479 (1893). By complying with the Receivership Order, at most, Barton risks disclosure of privileged information *to the Court.*

[17] *Compare* App. pp. 61-62 (email dated December 12, 2022, requesting changes to proposed protocol provided by Barton on December 7, 2022 (Response, Dkt. 160-1, pp. 30-31) and email sent on January 20, 2023, (Dkt. 160-1, p. 39).

[18] A copy of the Receiver's response to Barton's January 20, 2023 email is attached as **Exhibit A**.  Barton's Response ignored the issues raised in the January 20, 2023 email from the Receiver.

[19] Response, Exh. K, Dkt. 160-1, pp. 45-51.

[20] The list provided in Exh. I was provided after the Motion was filed.  Moreover, many of the lawyers on the list also represented the Entities in litigation in which Barton was not, individually, a defendant.  Thus, a search protocol must exclude from a privilege segregation communications between Barton and lawyers representing the Entities, unless Barton was also an individual defendant in the case discussed.

of an Entity and that Entity's counsel, even if Barton was also an individual defendant in the same litigation. *See Iafrate v. Warner Norcross & Judd, LLP*, 335 F.R.D. 378, 381 (E.D. Mich. 2020) (common interest doctrine applies only where different parties are represented by separate counsel); *In re Bounds*, 443 B.R. 729, 733 (Bankr. W.D. Tex. 2010) (no expectation of privilege in communications between jointly represented clients and counsel in subsequent dispute between separate clients); *In re Brownsville Gen. Hosp., Inc.*, 380 B.R. 385, 390 (Bankr. W.D. Pa. 2008) ("Among the joint clients, however, the privilege may not be used either to restrict access to, or to preclude use of communications between the attorney and the clients that relate to those matters in which they had a common interest and about which they collectively consulted the attorney."); *see also, Mitchell*, 2021 WL 3190556, at *6 (no work product privilege in materials compiled in the ordinary course of business or business advice provided by attorney).

Barton also seeks to preclude the Receiver's access by insisting on including in the privilege protocol:

- "communications between Barton and his agents," even if no attorney is included on the communication; and
- communications between Barton as an officer of the Entities and attorneys, related to litigation in which only the Entities were parties.

No privilege even potentially exists in the first category, and the Receiver holds the only privilege that exists in the second. Barton's insistence on a protocol to protect this information demonstrates only an intent to delay the Receiver's entitlement to the IT Access Data rather than a good faith interest in protecting potentially privileged communications.

- Insisting Barton retain the vendor, and that the Receiver agree to "discuss costs" later.[21]

The Receiver, not Barton, is entitled to control the data, nor is Barton entitled to control

---

[21] Response, Exh. K.

access to and instructions for the vendor.  Any cost burden of a protocol should fall on Barton, nor the Receiver.

To eliminate any further delay, the Court should order the immediate turnover of the IT Access Data.  To ameliorate Barton's concerns, and consistent with the Receiver's prior proposed protocols, the Court should enter a privilege protocol that provides as follows:

1.      The Receiver is authorized to retain a third-party computer forensic expert of his choosing, Veracity Forensics LLC (the "Vendor") to perform the forensic inspection.  The costs for the work performed by the Vendor as described below, or as further requested by Barton will be paid by Barton, in accordance with the Vendor's standard billing practices.

2.      The Vendor will capture a forensics image, forensic extraction or forensic collection of each Electronic Device, External Device or Cloud Account (collectively "the Devices") identified by the Receiver or in the possession of Barton. In addition to providing the IT Access Data as previously ordered, Barton will provide or cause to be provided to the Vendor any additional logins, passwords or encryption keys necessary for the Vendor to access each Device. Vendor will create a working copy of all original forensic images, extractions or collections. All downstream work including processing, filtering, searching or analysis will be performed using the working copies. All original images, extractions, and collections will be maintained as pristine copies.

3.      Vendor will search the working copies of each Device to identify potentially privileged documents or information using search terms and parameters provided by the Receiver. Such search terms must include each attorney or law firm employed by Barton individually, or employed to defend Barton in any litigation in which Barton was sued as an individual, as supplemented by the Receiver.  Not later than two days after receiving search terms from the Receiver, Barton's counsel may propose additional terms or parameters, which the Receiver will in his discretion, determine whether to utilize.

4.      The parties may determine by agreement the method of presentation of the search results after learning the nature and volume of such searches.  If no agreement is reached within 10 days after the search volume is determined, the Receiver will determine the method of presentation for the search results.

5.      Before providing any reports or work product to the Parties, Vendor will take steps to remove all potentially privileged documents including emails by running the search terms provided by the Receiver.

6.      Upon completion of the above steps, Vendor will promptly provide the results of its findings to both Parties. Vendor will include a Search Result Report ("SRR") in electronic spreadsheet form of all potentially privileged documents identified in the search of each Device. The SRR will include the appropriate metadata fields for each data type so that both Parties can determine if an Identified Item is indeed privileged, but will not include the content of any email.

7.      Unless the parties agree otherwise, counsel for Barton will have seven (7) days from receipt of each SRR to determine which items identified on the SRR they object to being provided

8

to Receiver. For any item Barton objects to, counsel for Barton will make their objection clear by indicating in color highlight (RED) on the SRR. The highlighted SRR will be sent to counsel for Receiver and to Vendor.  Unless the parties agree otherwise, Receiver's counsel will have seven (7) business days to review and respond to Barton' objections. For any item objected to by Barton that Receiver agrees are privileged, no further action is needed. Those items will remain highlighted RED and will not be produced to the Receiver.  Barton may obtain copies if requested. For any item objected to by Barton that Receiver does not agree with and believes is not privileged, Receiver will change the highlight to (BLUE). Once complete with their review, Receiver's counsel will return the SRR to counsel for Barton and to Vendor.

8.      The parties will confer regarding any item highlighted BLUE ("Potentially Privileged") and seek to resolve their dispute regarding whether such item is privileged.  If no agreement is reached, Vendor will export and produce to counsel for Barton all items identified as Potentially Privileged and include a report with the appropriate metadata for each Potentially Privileged item. Counsel for Barton will review the report and each item to determine which items are indeed Privileged. Unless otherwise agreed by the parties, within fourteen business days (14) Barton's counsel will indicate Privileged or Not Privileged on the report as well as mark the item RED if they object to the item being produced to the Receiver. The report will be returned to Vendor and any item that is marked Not Privileged and is not highlighted will be provided to the Receiver. A report of items marked as Not Privileged but highlighted RED will be sent to counsel for Receiver for their review.

9.      If after a further conference, the parties are unable to agree regarding the existence of privilege regarding any item, within seven (7) days of written notice from the Receiver that further conferences will be unproductive, Barton must file a motion seeking the Court's resolution.

10.      After each SRR has been reviewed by both Parties and returned to Vendor, Vendor will provide all items not marked RED or BLUE, to the Receiver as further directed by the Receiver.

11.      Vendor may also perform other forensic examinations as directed by the Receiver, for instance to identify data that was deleted or removed.

12.      Receiver shall task attorneys who have not and will not otherwise work on this case to sort paper documents located in the Office for privilege, utilizing written instructions, search terms, and a process similar to that described above.

13.      Barton must cooperate fully in providing assistance as necessary to comply with the privilege protocol.

## C.      Barton's Other Defenses Do Not Excuse His Contempt

Barton argues that he cannot provide much of the information, documents and art at issue because it is purportedly located in the Turtle Creek offices (the "Offices") and Barton has been denied access.[22]  Barton, however, submits no *evidence* that *any* of the information requested is in

---

[22] If the information, documents or art were readily discoverable by the Receiver in that location, the Receiver would

**9**

the Office or the Rock Creek location or that he has made *any* effort to provide the information at issue that is within his possession or control.  Notably, Barton alone has control over *all data on the cloud servers* from which he could have obtained much of what has been requested.  Nor has Barton supported his argument that he is precluded from contacting anyone to direct production of the information at issue or that he could not obtain permission to do so if the government has imposed such a restriction.

Similarly, Barton's assertion that he could identify the missing art if he was permitted access to the Office demonstrates Barton's true purpose: obstruction.  The Motion seeks the identity and location of $12M in art *owned by the Entities.*[23]  Barton's argument that he cannot recall any art or its location other than the handful of items he claims to own individually as reflected in an appraisal filed by his counsel is neither supported by evidence nor credible.  Similarly, Barton wholly ignores the Motion's request for an appraisal of a statute in the Office, which Barton's counsel informed the Receiver existed.  Nonetheless, if Barton believes *any* of the documents or information at issue is located in the Office, he could, but has not, directed the Receiver to where and how to locate it.

Weary of Barton's continuing refusal to provide specific, necessary, and compelled information and his repeated excuses and delays, the Receiver sought the Court's assistance.  He has met his burden to demonstrate Barton's contempt, and requests coercive and compensatory sanctions compelling each category of information or document requested in the Motion.  Barton has not demonstrated an inability to comply with the Receivership Order or the Receiver's requests and fails to justify or excuse his failure to do so.  The Court should grant the Motion.

---

not be seeking to compel it.

[23] Motion pp. 8-9; App. p. 35.

Respectfully submitted,

By: */s/ Charlene C. Koonce*

    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## **VERIFICATION**

My name is Cortney C. Thomas. I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

11