IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON<br>CARNEGIE DEVELOPMENT, LLC<br>WALL007, LLC<br>WALL009, LLC<br>WALL010, LLC<br>WALL011, LLC<br>WALL012, LLC<br>WALL016, LLC<br>WALL017, LLC<br>WALL018, LLC<br>WALL019, LLC<br>HAOQIANG FU (a/k/a MICHAEL FU)<br>STEPHEN T. WALL | § § § § § § § § § § § § § § § | Hearing Requested |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC<br>LDG001, LLC | § § § | |
| *Relief Defendants.* | § | |

**DEFENDANT BARTON'S RESPONSE TO THE
RECEIVER'S FIRST QUARTERLY FEE APPLICATION [ECF NO. 156]**

Defendant Timothy L. Barton files this Response in opposition to the Receiver's First Quarterly Fee Application [ECF No. 156] ("Application"), and requests a hearing on this matter, as follows.

## I. ARGUMENT & AUTHORITIES

The Receiver's Application seeks attorney's fees in the amount of approximately $340,000 from entities currently held in the receivership estate. This Application should be denied, at least in part. The Receiver's authority to take action on behalf of the receivership estate, let alone charge the estate for that work, is currently on appeal at the Fifth Circuit, with briefing completed last week. *See SEC v. Barton,* Case No. 22-11132 (5th Cir. 2022). The Receiver should not be withdrawing money from the estate to pay himself at this time as the Fifth Circuit may determine that the Receiver's appointment was erroneous and all of the work for which he seeks payment void. The most prudent course of action would to abstain from authorizing these payments until after the Fifth Circuit passes judgment on its Order Appointing Receiver in the coming months.

But even if the Receiver were entitled to some fee at this time, his Application fails to adequately document the legal work that his team performed. The fee statements attached to his Application are heavily redacted, making it is impossible to review much of the work for which he seeks payment. Many entries are impermissibly vague. Other work was clearly unnecessary, unreasonable, or administrative in nature, and therefore not compensable as a reasonable attorney's fee. The Receiver's Application should thus be denied, without prejudice, or reduced in substantial part, as set forth further below.

    **A.**    **The Receiver Should Not Be Withdrawing Funds from the Estate to Pay Fees for Unsanctioned and Unhelpful Work**

An overarching problem with the Receiver's Application is that he seeks payment for work that he had no authority under applicable receivership law to perform. *See SEC v. Barton,* Case No. 22-11132 (5th Cir. 2022) (appeal of the Receiver's appointment and scope of authority). The general rule has long been that "where the appointment of the receiver was

irregular or inequitable or the court which appointed him was without authority so to do, the party who procured the appointment, and not the receivership fund, is liable for the expenses of the receivership." *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1002 (8th Cir. 1939); *see also Porter v. Cooke*, 127 F.2d 853, 859 (5th Cir. 1942) ("[T]he parties whose property has been wrongfully seized are entitled, on equitable principles, to recover costs from those who have wrongfully provoked the receivership."). When an erroneously appointed receiver seeks payment for his work, the district court's "overruling purpose [is] to protect from loss an owner of the seized fund who has not so acquiesced in its administration." *W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932). In accordance with that case law, the Receiver should not be pulling money out of the estate to pay his fees, but rather seek that compensation from the SEC, which requested appointment of the Receiver in the first place. Indeed, the SEC is the only party in this litigation that may benefit in some way from the Receiver's existence. All along, the SEC has repeatedly urged or consented to the Receiver's actions, despite the apparent impact of those actions on the estate. The SEC is thus the responsible party and should pay. *See, e.g., United States v. Guess*, No. 04CV2184-LAB (AJB), 2005 WL 1819382, at *7 (S.D. Cal. June 28, 2005) ("In consideration of [inter alia] the absence of a demonstrated 'genuine benefit' to defendants from the freezing of all their assets, the costly and disruptive seizure of their records and property, their litigation expenses incurred to defend this action and then to undo the interference, the governments objectives . . . , the Court finds it is appropriate to allocate the total expenses of the Temporary Receiver to the United States government.").

Mr. Barton and the entities themselves are receiving no benefit from the Receiver's activities, as they are the victims of the receivership instead of its beneficiaries. *See* Receivership Order [ECF No. 29] at 2 ("[T]he relief sought by the SEC and provided in this Order . . .

penaliz[es] past unlawful conduct and deter[s] future wrongdoing . . . ."). Among other actions, the Receiver has used his authority to remove Mr. Barton from his home and has since tried to sell it, while holding captive his family's personal belongings inside. The Receiver has shut down operations for most of the businesses under his control and fired all of their employees. Worst of all, the Receiver has started to fire-sell assets, so that nothing remains when the receivership ends, following appeal or otherwise.[1] None of these actions have benefitted Mr. Barton or his entities. Victims should not be forced to pay for the actions that harm them.

Paying the Receiver's fees now is also inconsistent with the Receiver's prior positions and will harm the receivership estate. Time and again, the Receiver has told the Court that he needs cash to keep the receivership entities afloat, and that outstanding bills have reached emergency proportions. *See, e.g.*, Hearing Transcript on Receiver's Motion for Appointment of Appraisers, etc. [ECF No. 121] at 6:19–22 ("As the Court is aware, from numerous filings, we have very limited cash and at the same time, we have competing requirements for the cash on hand."); *id.* at 10:20–22 ("[T]he receivership cannot maintain the other properties that we have an obligation to manage without [additional] cash."); *id.* at 44:16 (expressing "immediate need for cash"). Indeed, the "need for cash" was the Receiver's justification for seeking to sell Mr. Barton's home. *See* Receiver's Reply in Support of Motion for Appointment of Appraisers, etc. [ECF No. 93] at 6 ("[T]he Receiver has faced a dearth of cash . . . forc[ing] him to selectively pay" bills and "necessitate[ing] the Receiver's exploration of all potential sources of capital"). It is difficult to square the Receiver's introduction of his fees as another "competing requirement[] for the cash on hand" with the best interests of the receivership estate. ECF No. 121 at 6:19–22.

---

[1] In the most detrimental of these actions, the Receiver sold over $20 million in realty and other contractual interests for a pittance of $750,000. *See* ECF Nos. 95, 106, 109, 114, 124.

The Receiver's Application should separately be denied because the funds from which the Receiver seeks to be paid do not belong to the estate and he has no valid authority to pay himself with that money. According to the Receiver's filings, most of the funds held by the estate were generated through a single sale transaction with DLP Real Estate Capital in December 2022. *Compare* ECF No. 157 at APP002 (reflecting $856,537.36 of cash in the estate) *with* ECF No. 95 (moving for ratification of $750,000 agreement with DLP Capital). But that sale is void for failure to comply with statutory procedural requirements and must be unwound. *See Acadia Land Co. v. Horuff*, 110 F.2d 354, 354–355 (5th Cir. 1940) (holding that a receiver's sale of property was void for failure to comply with the statute). And unwinding that transaction is the subject of pending appellate proceedings. *See SEC v. Barton,* Case No. 22-11242 (5th Cir. 2022). With the funding source of the Receiver's sought payment currently under appeal, nothing should be done to interfere with the Fifth Circuit's ability to order a reversal of the DLP transaction if Mr. Barton's appeal is successful. Payment from the DLP transaction proceeds is thus premature, especially for such a non-mission critical purpose as the payment of a Receiver's fees.

The Receiver's payment, at the very least, should be delayed until after the Fifth Circuit has a chance to weigh in on the situation. To do otherwise would put this Court in the difficult position of potentially having to orchestrate an unwinding of payments and transactions that have already gone through. To the extent the Receiver needs payment immediately, the SEC is the party to look to.

      **B.**    **The Receiver Has Not Satisfied the Lodestar Requirements to Justify the Fee Payment It Seeks.**

Even if the Court were inclined to order the payment of certain fees to the Receiver, the Receiver has not justified payment for the amounts he seeks. The Receiver claims to rely on the

lodestar method to support his fee application. *See* Fee Application [ECF No. 156] at 7–13. Under the lodestar method, the district court calculates a "lodestar" amount by "multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers," and makes various adjustments as appropriate to reach a reasonable fee determination. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Here, three considerations require reduction of the approximately $340,000 fee amount that the Receiver seeks under that method.

*First*, the Receiver should not be permitted to recover for work that he inadequately documents in the fee statements attached to his Application. Among the most fatal flaws is that the Receiver redacted his fee statements so heavily that it is impossible to assess specific legal work performed and whether there is a reasonable basis for the total fee sought by the Receiver for that work. Redactions of fee statements are often criticized as they prevent the district court from independently determining if fees are appropriate. *See Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-CV-00293, 2021 WL 5155715, at *4 (S.D. Tex. July 21, 2021) ("The applicant should maintain billing records in a manner that will enable a reviewing court to identify distinct claims and determine the reasonable number of hours expended on a matter. Redaction of time records defeats these goals . . . ."); *Gray v. Fort Worth Indep. Sch. Dist.*, No. 4:09-CV-225-Y, 2011 WL 13233588, at *3 (N.D. Tex. July 27, 2011) (holding that attorney's fees were insufficiently documented when time statements included entries such as "Work on memo regarding [redacted text] issue" and "Telephone conference with Kevin Greene [FWISD's assistant athletic director] regarding [redacted text]"). In fact, some courts have held that even partial redactions of fee statements obscuring work performed may justify denying attorney's fees *in their entirety*. *See Produce Pay*, 2021 WL 5155715, at *4 (noting that improper

redactions "in some cases, has led courts to disallow fees completely"); *see also Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, P.C.*, No. CIV. 4:09-MC-365, 2010 WL 56045, at *8 (S.D. Tex. Jan. 6, 2010) ("As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole. . . . Plaintiff may not redact, even partially, any entry for which reimbursement is being sought.").

Here, the redactions in the Receiver's fee statements, like those in the cases cited above, impermissibly obscure the work the Receiver performed. The Receiver redacted some entries in their entirety, making it impossible for this Court to perform a lodestar analysis as to those entries. The following excerpts are illustrative:





(APP085)

(APP086)

(APP079)

Per applicable case law, the Receiver should not recover attorney's fees for any of these redacted entries that conceal or obfuscate the basis for the Receiver's claimed fees.

Additional documentation problems remain. For example, the Receiver's fee statements are "block billed." Block billing is a timekeeping method where an attorney records his daily time working on a case in a single entry, without itemizing time expended on specific tasks. *Paris v. Dallas Airmotive, Inc.*, No. CIV.A. 3:97-CV-0208, 2004 WL 2100227, at *9 (N.D. Tex. Sept. 21, 2004). When time records are block billed, a court cannot accurately determine the number of hours spent on any particular task, impairing any evaluation of whether the hours were reasonably expended. Thus, "[c]ourts disfavor the practice of block billing because it impairs the required reasonableness evaluation." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007); *see SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-CV-957-O, 2016 WL 8223206, at *10 (N.D. Tex. Nov. 21, 2016), *report and recommendation adopted*, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017). When presented with block-billed documentation of an attorney's work, "[m]any courts . . . perform[] a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%." *Bramlett*

*v. Med. Protective Co. of Fort Wayne, Ind.*, No. 3:09-CV-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (Fitzwater, J.).  Because the Receiver's fee statements are obscured by redactions and block-billing, to say nothing of their general vagueness, it is impossible to assess the Receiver's work with specificity and thus Mr. Barton submits that a fee reduction in the range of 10% to 30% would be appropriate.

*Second,* the Court should reduce the Receiver's claimed fees that were "not reasonably expended."  See *Becker v. Tools & Metals, Inc.*, No. 3:05-CV-0627-L-BK, 2012 WL 12985112, at *11 (N.D. Tex. Dec. 12, 2012) (Fitzwater, J.); *see also Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) ("The last three items do not demonstrate billing judgment, as plaintiffs do not have the right to bill for . . . time on issues on which they do not prevail . . . ."); *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) ("Hours which, though actually expended, nevertheless 'are excessive, redundant, or otherwise unnecessary,' or which result from the case being 'overstaffed,' are *not* hours 'reasonably expended' and are to be excluded from this calculation.").  The Receiver's dead-on-arrival motions to intervene and file motions to dismiss in the Fifth Circuit are prominent examples of unreasonable expenditures of time.  The Receiver is not a party in any of the three interlocutory appeals that Mr. Barton has taken from this Court's order. In each appeal, the Receiver sought to intervene and file a motion to dismiss, despite being summarily rejected by the Fifth Circuit each time.  He first sought to intervene in Mr. Barton's appeal of the Court's receivership order and orders clarifying it, Motion to Intervene, *SEC v. Barton*, No. 22-11132 (5th Cir. Jan. 5, 2023), but the Fifth Circuit denied his motion the very next day. *See* Order Denying Motion to Intervene, *SEC v. Barton*, No. 22-11226 (5th Cir. Jan. 6, 2023).  Undeterred, he sought to intervene weeks later on similar grounds in Mr. Barton's appeal of this Court's order approving the sale of his home, Motion to

Intervene, *SEC v. Barton*, No. 22-11226 (5th Cir. Jan. 20, 2023), but was again summarily rebuffed. Order Partially Granting Motion to Intervene, *SEC v. Barton*, No. 22-11226 (5th Cir. Jan. 25, 2023) (denying the Receiver's request to be named as an Appellee, Party in Interest, or Intervenor, while permitting him to proceed as an *amicus curiae*). Inexplicably, he *again* sought to intervene in Mr. Barton's appeal of this Court's approval of the DLP sale. Motion to Intervene, *SEC v. Barton*, No. 22-11242 (5th Cir. Feb. 13, 2023). Third time was not the charm, as the Fifth Circuit again denied the motion one day later. Order Denying Motion to Intervene, *SEC v. Barton*, No. 22-11242 (5th Cir. Feb. 14, 2023). It was unreasonable to spend time on these futile efforts, particularly the attempt to intervene in the DLP appeal, after the Fifth Circuit had *twice* made its position clear. And, even after failing to intervene, the Receiver decided to file motions to dismiss the appeals in his capacity as a third-party *amicus curiae*—fully aware that an *amicus* has no standing to seek such relief. *See, e.g.,* APP0084 (describing work "drafting Motion to Dismiss Appeal"). These actions were unnecessary and have run up the Receiver's legal expense without legitimate end. The Court should deny payment of fees for such pointless work.[2]

*Third*, the Receiver should not be awarded attorney's fees for clerical work, or, alternatively, fees that the Receiver seeks for such work should be reduced. *See, e.g., Corman v. Lifecare Acquisitions Corp.*, No. CIV.A. 3:96-CV-0755D, 1998 WL 185517, at *2 (N.D. Tex. Apr. 10, 1998) ("It is well-settled that clerical or secretarial costs . . . are not separately reimbursable as . . . attorney's fees."); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-00371, 2018 WL 1602460, at *6 (E.D. Tex. Apr. 3, 2018) ("Fees will not be

---

[2] Much of the legal work that the Receiver has performed in connection with seeking to intervene in the appeals, and the drafting of its motions to dismiss, appears to be concealed by redactions. However, even though these time entries are redacted, the Receiver's fee statements suggest that he still seeks payment for that appellate work.

awarded for such work."). Clerical work includes tasks such as "calendaring and scheduling," "reviewing local rules," "downloading and saving files," "printing and filing," "recording deadlines," and "obtaining court procedures." *See Produce Pay*, 2021 WL 5155715, at *5. Here, the Receiver's fee statements include entries such as one attorney working at $385 an hour to calendar deadlines (APP031), talk to an assistant (APP032), and "[r]eview deadlines" of other parties (APP071). These clerical entries do not reflect proper tasks to be billed at attorney rates. The Court should therefore deny an attorney's award for such amounts.

## II.     CONCLUSION & PRAYER

For the reasons set forth herein, Mr. Barton respectfully requests that the Court deny the Receiver's First Quarterly Fee Application (ECF No. 156). To the extent the Court is inclined to grant the Receiver's fee requests even in part, Mr. Barton respectfully requests that the amount of those fees be reduced pursuant to the lodestar guidelines and applicable case law set forth above. Any such fee award should be charged against the Plaintiff SEC, who is the party that caused the erroneous appointment of the Receiver in the first place, and thus the responsible party for any work that the Receiver performed.

| | |
|---|---|
| Dated: March 7, 2023 | Respectfully submitted,<br><br>By: */s/ Ted A. Huffman*<br>Michael J. Edney<br>Virginia Bar No. 48253<br>DC Bar No. 492024 (*admitted to N.D. Tex.*)<br>medney@huntonak.com<br>Michael Dingman<br>Virginia Bar No. 95762<br>DC Bar No. 90001474 (*admitted pro hac vice*)<br>mdingman@huntonak.com<br>**HUNTON ANDREWS KURTH LLP**<br>2200 Pennsylvania Avenue NW<br>Washington, DC 20037<br>Phone: (202) 955-1500<br>Facsimile: (202) 778-2201<br><br>Ted A. Huffman<br>State Bar No. 24089015<br>thuffman@huntonak.com<br>**HUNTON ANDREWS KURTH LLP**<br>1445 Ross Avenue, Suite 3700<br>Dallas, Texas 75202<br>Phone: (214) 979-3000<br>Facsimile: (214) 740-7110<br><br>**COUNSEL FOR TIMOTHY LYNCH BARTON** |

## CERTIFICATE OF SERVICE

On March 7, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Ted A. Huffman*
Ted A. Huffman