# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § | |

## RECEIVER'S VERIFIED MOTION TO COMPEL DOCUMENTS AND INFORMATION FROM ATTORNEYS, REQUEST FOR SANCTIONS, AND BRIEF IN SUPPORT

Pursuant to the provisions of the Receivership Order and Rule 37,[1] Cortney C. Thomas, as

the court-appointed ("Receiver"), requests an order compelling attorneys representing Tim Barton,

Hunton Andrews Kurth LLP (the "Attorneys"), to disclose the source of any retainer or security

---

[1] As with a prior motion, [Dkt. 133] to conserve fees and minimize the burden on the Court, the Receiver seeks an order compelling compliance rather than a Show Cause Hearing. In the event the Court concludes a Show Cause Hearing provides the more appropriate remedy, the Receiver alternatively requests such a hearing.

interest and related information received in connection with their representation of Defendant Timothy Barton, so the Receiver can verify that counsel complied with their duty to ensure that the funds or security interest received were not paid with Receivership Assets.  The Receiver also requests sanctions to reimburse the Receivership Estate for fees incurred in preparing this motion, and in support, respectfully shows the Court as follows:

## I.  <u>FACTS</u>

**A.      The Receiver's Attempts to Trace the Receivership Entities' Funds.**

1.      On October 18, 2022, this Court entered an Order Appointing Receiver [Dkt. 29] (the "Receivership Order").

2.      Pursuant to the Receivership Order, this Court vested the Receiver with sole authority to operate, control, or otherwise manage all Receivership Entities. *Receivership Order* ¶¶ 3-5.  The Receiver also holds the attorney client privilege for each Receivership Entity.  *Id.* at ¶ 46.

3.      The Receivership Order transferred ownership of all Receivership Entity assets, of any kind or nature, to the Receiver and directed any person with notice of the Order to preserve and identify those assets to the Receiver.  *Receivership Order*, ¶¶ 1, 18.  Any person who has or had possession or custody of any Receivership Assets was likewise directed to notify the Receiver and cooperate in returning those assets to the Receiver. *Receivership Order* ¶ 15.  The Receiver was also authorized to take all actions necessary to recover Receivership Assets and investigate claims.  *See* Receivership Order, ¶ 6.  And all persons who received notice of the Receivership Order were required to provide, within five days of a request, copies of documents relating to all Receivership Assets, and to fully cooperate with the Receiver by providing information requested by the Receiver. *Receivership Order* ¶¶ 18, 33.

4.      The Court entered the Receivership Order at the request of the SEC, which provided evidence that approximately $26M was raised from investors.  When the Receiver assumed control over the Receivership Entities, however, despite discovering that several million dollars had flowed into the Receivership Entities in the two years before the Receivership Order was entered, only about $75,000 was on deposit in any of the Entities' bank accounts.  Similarly, like the SEC in its pre-suit investigation, the Receiver discovered Barton's consistent practice of co-mingling assets between entities he controlled and using entities to pay his personal expenses.

5.      To date, the Receiver has faced roadblock-after-roadblock in his attempts to trace the ultimate disposition of the millions of dollars that flowed through the Receivership Entities' bank accounts.  As detailed in the Receiver's Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing [Dkt. 133], since October 2022 the Receiver has been asking Barton to provide the Receiver with access to the Receivership Entities' accounting files.  To date, the Receiver has been stonewalled, with Barton most recently claiming that Baron "is not the source" of the Receiver's inability to access QuickBooks and that Barton "does not have any QuickBooks login in his possession."  *See* Response [Dkt. 160] at 8.

6.      Contrary to Barton's assertions, the Receiver only recently learned that in approximately August 2022, the Receivership Entities' accounting records were transferred to a virtual QuickBooks Enterprise account hosted remotely via Microsoft's Azure Virtual Desktop. The Receiver believes that this accounting system *is still* under Barton's control.  In the interim, the Receiver has sought to obtain access to other, presumably older versions of QuickBooks. Additionally, the Receiver is in the process of obtaining bank statements and other bank records from the banks.  Although these processes have been burdensome and time consuming, and are

still incomplete,[2] the Receiver is optimistic that despite Barton's lack of cooperation and blatant violations of the Receivership Order, the Receiver's team will ultimately have the information necessary to complete a forensic accounting in the coming months.

7.      Barton's refusal to provide access to the Receivership Entities' accounting systems has already impeded the Receiver's efforts to administer the Receivership efficiently.  For instance, in December 2022, the Receiver filed a Motion to Approve the Sale of the Rock Creek Property [Dkt. 76].  The Court approved the sale [Dkt. 104], but within days, Barton filed an improper interlocutory appeal [Dkt. 108] of the Court's Order.  As detailed in the Receiver's Second Status Report [Dkt. 139], the Receiver has been unable to complete the sale because the title company is unwilling to issue a title policy until the appeal is resolved.

8.      On February 27, 2023, Barton filed his Appellants' Brief in the Rock Creek appeal. *See SEC v. Barton*, No. 22-11226 (5th Cir.).  One of Barton's primary arguments on appeal is that "the district court erred by seizing and ordering the permanent sale of the defendant's home without tracing the loan proceeds that are the subject of the Government's complaint to the home's purchase or to the limited liability company holding title to the home."  However, the Receiver's past inability to trace Wall investor monies to the Rock Creek property is the result of Barton's own obfuscation, as described above.  The Receiver recently obtained bank records that indicate other Receivership Entities paid for the initial purchase of the Rock Creek Property.  Additionally, while the Receiver's review of the bank records is ongoing, bank records demonstrate that other Receivership Entities made subsequent mortgage payments on the property, even after Barton refinanced.

---

[2] As of the date of this filing, bank records continue to be produced on a running basis.

9.      For example, on August 17, 2020 $300,000 was transferred from a JMJ Development account (5193) to SF Rock Creek (3575). That same day nearly $300k was wired to HSTX Title with the memo "41047 [sic] Rock Creek Drive…Balance Due at Closing." The JMJ account statement shows a corresponding transfer of $300k to the SF Rock Creek account. On February 17, 2021 SF Rock Creek wired BSI Financial $6,700. The account balance on SF Rock creek at the beginning of the month was $446.00. Several transfers from JMJ Residential and JMJ Development accounts provided the funds for the wire to BSI. On March 11, 2021 JMJ Development wired SF Rock Creek $10,200. On March 11, SF Rock Creek wired BSI Financial nearly $10,200.

10.     But–for Barton's refusal to comply with the Receivership Order, this information would have been included in the Receiver's original sale motion.

11.     Moreover, as the Receiver has obtained additional accounting and bank records from other sources, he has discovered substantial transfers to law firms and other transferees (including Defendant Barton) in the months leading up to the Receiver's appointment. Because the Receiver still does not have access to all of these records, it is impossible for him to trace, as of the filing of this Motion, the full amount of funds flowing out of the Receivership Entities' bank accounts leading up to the Receiver's appointment. However, the following facts are beyond dispute: (1) the SEC alleges that approximately $26 million flowed into the Receivership Entities from the Wall investors (Compl. ¶ 1); (2) Barton used Investor funds to pay personal bills and obligations; (3) approximately $75,000 was available in the Receivership Entities' bank accounts when the Receiver was appointed; and yet, (4) Barton's attorneys have been paid sufficiently to challenge virtually every motion filed by the Receiver. Because it is logical to infer that Barton's

counsel has been, and continues to be paid with the missing funds, the Receiver seeks documents and information to prevent further waste of Receivership Assets.

**B.      Hunton's Refusal to Disclose the Source of Retainer and Other Funds.**

12.      On October 12, 2022, Michael J. Edney, Sean B. O'Connell, Michael Dingman, and Ted A. Huffman of Hunton filed a Notice of Appearance [Dkt. 17] (the "Hunton Appearance") on behalf of Defendant Timothy Barton.  The Hunton Appearance does not reflect the firms' engagement on behalf of any Receivership Entity.

13.      On January 24, 2023[3] the Receiver requested, within five days, an accounting of all assets or security interests the Attorneys had received from or for the benefit of Barton and, further requested the Attorneys identify the source of the monies and collateral, produce copies of any documents evidencing such payments or security agreements, and describe the due diligence conducted to ensure the monies or security interests were not subject to the freeze and return provisions imposed by the Receivership Order.[4]

14.      Despite a subsequent request for the same information sent on February 7, 2023[5] and notice that failure to comply would result in this motion, to date, the Attorneys have wholly ignored the Receiver's request for information and documents regarding the source of fees with which they were paid.

## II.  ARGUMENT

An attorney has a duty to investigate the source of funds with which a client pays his fees to ensure the funds did not originate from a "tainted" source or are otherwise subject to a court

---

[3] *See* letter from Charlene Koonce, counsel to Receiver, dated January 24, 2023, included in the appendix as **Exhibit A**.

[4] *Id.*  Other attorneys responded to the Receiver's request.

[5] A true and correct copy of the February 7, 2023 email is included in the Appendix as **Exhibit B**.

order.  *FTC v. Assail, Inc.*, 410 F.3d 256 (5th Cir. 2005). "[A]n attorney must 'audit' a client sufficiently so as to avoid becoming part of a criminal scheme that includes disposing of ill-gotten gains." *Id.* at 264.  Similarly, a lawyer cannot make himself willfully ignorant of the circumstances surrounding the source of his fees where turning over assets to a receiver is required.  "[W]hen an attorney is objectively on notice that his fees may derive from a pool of frozen assets, he has a duty to make a good faith inquiry into the source of those fees.  Failure to make such an inquiry in the face of this duty will result in disgorgement of the funds."  *Id.* at 265; *see also FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1144 (9th Cir. 2010) (notice that source from which fees were paid was potentially subject to constructive trust arising from client's fraud, even absent asset freeze, triggered attorney's duty of inquiry as to the source of the funds).  Importantly, matters involving payment of fees are not generally privileged.  *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 913 F.2d 1118, 1127 (5th Cir. 1990) ("Information concerning who paid Reyes—Requena's fee to DeGeurin and the amount, method or terms of payment is not exempted from disclosure by the attorney-client privilege."); *see also In re Slaughter*, 694 F.2d 1258 (11th Cir. 1982).

The scope of the Receiver's mandate—to marshal all Receivership Assets, including funds owed to the Entities—requires his inquiry regarding the source of the funds paid to the Attorneys. The inquiry is particularly appropriate given (a) Barton's practice of comingling assets between and among Entities; (b) the dearth of cash on deposit in the Entities' bank accounts at the inception of the case despite transactions that should have generated substantial cash; and (c) Barton's demonstrated use of Entity assets to pay his personal expenses, including at least one payment from an Entity to counsel.  Nonetheless, the Attorneys have wholly failed and refused to respond to the Receiver's inquiry.  Their compliance with the Receivership Order, however, is mandated by its terms.

Accordingly, this Court can, and should, enforce the Receivership Order's requirements with respect to the Attorneys and require their compliance. *See FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107–08 (C.D. Cal. 2001) (finding financial institution in contempt for failing to turn over assets and information to Receiver, based on court's inherent authority to enforce the order and provisions of the injunction that mandated the financial institution's compliance); *see also* FED. R. CIV. P. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party); *see also United States v. Hall*, 472 F.2d 261, 265–66 (5th Cir. 1972) (courts of equity possess broad power to enforce injunctions against non-parties to protect the court's ability to enter and enforce a final judgment).

Because a motion was necessary to compel the requested information and documents, the Receiver also requests sanctions in the amount of $1,500 to compensate the Estate for the reasonable fees that were expended in preparing this Motion. *See Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (discretion in crafting and awarding sanctions limited only by requirements that sanction be "just," and reasonably relate to the "claim" underlying the order at issue); *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1386 (Fed. Cir. 2013) (affirming sanctions bearing a "reasonable relationship" to the harm caused by the conduct at issue and which also served as a deterrent against similar discovery violations by other litigants).

## III.  CONCLUSION

For the reasons set forth above, the Receiver prays for an order granting this motion and an order compelling Hunton Andrews Kurth LLP to provide the requested documents evidencing payments or security agreements received from or for the benefit of Barton, and the due diligence, if any, conducted regarding the source of their fees, and grant such other relief to which the Receiver may be justly entitled.

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

    *Attorneys for Receiver Cortney C. Thomas*

## VERIFICATION

My name is Cortney C. Thomas. I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

/s/ Cortney C. Thomas
Cortney C. Thomas

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on January 24, 2023 and again on February 7, 2023, the Receiver conferred Hunton & Williams. It failed to respond to either inquiry.

/s/ Charlene C. Koonce
Charlene C. Koonce

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.