IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON CARNEGIE DEVELOPMENT, LLC WALL007, LLC WALL009, LLC WALL010, LLC WALL011, LLC WALL012, LLC WALL016, LLC WALL017, LLC WALL018, LLC WALL019, LLC HAOQIANG FU (a/k/a MICHAEL FU) STEPHEN T. WALL | § § § § § § § § § § § § § § § | HEARING REQUESTED |
| Defendants, | § § § | |
| DJD LAND PARTNERS, LLC LDG001, LLC | § § § | |
| Relief Defendants. | § | |

**DEFENDANT TIMOTHY BARTON'S SURREPLY TO THE RECEIVER'S
REPLY [ECF NO. 166] TO MOTION TO COMPEL [ECF NO. 133]**

Defendant Timothy L. Barton files this Surreply to address the Receiver's Reply [ECF No.

166] filed in support of the Receiver's Motion to Compel Documents and Information, Request

for Sanctions, or Alternatively, Motion for Show Cause Hearing [ECF No. 133] ("Motion").

The Receiver's Reply in support of his Motion makes clear that a procedure must be

installed to address the privilege issues entailed in the Receiver's informational requests to the

Defendant. For the first time in his Reply, the Receiver proposes a protocol for protecting the

attorney-client and work product privileges.  In light of the broad-based agreement that protections must be installed for the protection of privilege, the Court should deny the pending motion to compel and adopt a privilege protection procedure.

As detailed below, the Court should order the parties to meet and confer over any differences in the terms of the privilege protocol—that all parties concede should be entered—and to report back to the Court within ten days with either an agreed proposed order or with identified and discrete issues regarding the terms of the protocol for the Court's resolution.  Below, the Defendant addresses the Receiver's proposed procedure and urges modifications to that proposal, in the event the Court wishes to enter a protocol directly as a result of this motion practice.  The Defendant is nonetheless confident that with a properly done meet and confer process, in line with those that are supposed to occur under this Court's rules prior to placing a motion on the Court's docket, any remaining disagreements can be either resolved or significantly narrowed without judicial intervention.

**I.      The Parties Agree That a Privilege Protocol is Necessary, and the Court Should Order the Parties to Meet and Confer to Resolve any Discrete Disagreements on the Terms of that Protocol**

The Receiver's Reply makes clear that the privilege issues here are serious and should not be resolved through any type of contempt remedy.  In the middle of his Reply brief, the Receiver moves for the entry of a privilege protocol.  That action shows why such a protocol was needed before the Receiver sought the instant motion.  Indeed, without a privilege protocol in place, a party's consent to the production of his email communications or a password to access such records can result in a loss of privilege.  *See, e.g., In re Royce Homes, LP*, 449 B.R. 709, 744 (Bankr. S.D. Tex. 2011) ("Speer did not object to the Trustee's taking possession of the computer's information nor did he ask Boothe to segregate or destroy his e-mails. Speer's failure to object to the Trustee's confiscation of the computer data shows the intent on his part to voluntarily disclose his e-mails

to the Trustee."); *United States v. Hernandez*, 999 F.3d 1181, 1184 (8th Cir. 2021) ("She also waived any privilege when she consented to a search of her phone by police. Lagunas entered a password into her phone and voluntarily granted access to the text messages, so she gave up any right to assert that the communications were confidential.").[1]  A privilege protocol protects against that risk.

Receivership orders in other SEC cases often include a privilege protocol to govern such matters.  *See, e.g., SEC v. Sunwest Mgmt., Inc.,* No. 09-CV-6056-TC, 2009 WL 10700900, at *3 (D. Or. Mar. 10, 2009) (receivership order providing that the receiver may image all electronic storage devices and have access to the information contained therein "except for information for which any non–Receivership Party holds a privilege").  And one should be put in place here, as the Receiver now apparently agrees.

Mr. Barton's counsel proposed and then attempted to negotiate a privilege protocol to preserve his privilege interests while still delivering information that the Receiver seeks.  *See* ECF No. 160-1 at 30-33, 45-46.[2]   However, when Mr. Barton's counsel presented that protocol proposal—at the Receiver's invitation—discussions stalled shortly thereafter when the Receiver demanded, as part of the privilege protocol, that Mr. Barton fully pay for a vendor *hired by the Receiver* to host a full image of the company servers, with no reasonable limitations on duration or scope of work.  *See, e.g.,* ECF No. 166-1 at 2.[3]   The Receiver separately attempted to make a

---

[1] A company owner may assert a privilege as to personal emails sent through work email accounts absent an act of waiver. *See, e.g., In re Ahlan Indus., Inc.*, No. BG 18-04650, 2020 WL 3620332, at *10 (Bankr. W.D. Mich. July 2, 2020).

[2] Contrary to the Receiver's assertion, Mr. Barton never sought or wanted a Rule 502(b) snapback agreement, as argued in the Receiver's Reply. *See*  Reply at 5-6.  Mr. Barton's counsel has always sought a privilege protocol governing the production of documents, as a snapback agreement often proves problematic, unworkable, and not a remedy of prevention but of backend mitigation.

[3] The Receiver also incorrectly contends that Mr. Barton seeks to withhold communications related to entity-only litigation.  *See* Reply at 7.  That is not what Mr. Barton claims or seeks.  Indeed, Mr. Barton's counsel provided a list of personal attorneys that would be used for the protocol.

categorical rule, inconsistent with applicable law, that would limit Mr. Barton from claiming privilege unless the immediate sender or recipient of the document was an attorney. Mr. Barton could not agree to this attempt to limit his legal privilege under such a categorical rule. *See, e.g., Homeland Ins. Co. of New York v. Clinical Pathology Lab'ys, Inc.*, No. 1-20-CV-783-RP, 2022 WL 17255798, at *6 (W.D. Tex. Nov. 28, 2022) ("[A] lawyer need not be involved as an author or recipient in order for communications to be protected under the work product doctrine.") (internal quotations omitted); *see also* Tex. R. Evid. 503(b)(1)(A), (C), (D) (identifying numerous categories of privilege involving communications not involving the client's attorney, for example, an attorney's representative, a common interest communication, and other non-attorney client representatives).

When Mr. Barton attempted to compromise and address such concerns, the Receiver did not respond. *See* ECF No. 160-1 at Ex. K.

Weeks later, without prior notice to Mr. Barton, the Receiver filed with this Court an entirely new proposal for a privilege protocol, which he embedded in the middle of his Reply. *See* Reply at 8-9. The terms of this new proposal differed in many ways from prior discussions as to how the parties discussed such a protocol would function. For example, the Receiver's new protocol seeks to (1) place a new, more expensive discovery vendor in place than the one that the parties had previously agreed to use; (2) expand the scope of the protocol to require Mr. Barton to pay for the Receiver's other image hosting and document needs unrelated to the Microsoft 365 server privilege issues that the parties previously had negotiated; (3) prevent Mr. Barton's team from choosing search terms that must be used for gathering documents to be included in the privilege protocol; (4) impose burdensome timelines (without any assessment of the scope of documents needing to be reviewed) that would require the parties to fully review potentially-

privileged documents and seek protective relief related to same at a rate that may not be feasible; and (5) give the Receiver additional authority have the contractual vendor perform tasks unrelated to any privilege review, at Mr. Barton's expense.

Mr. Barton objects to such terms, as well as the lack of opportunity to review those terms before the Receiver presented them to the Court in his Reply. To the extent the Court may consider the Receiver's new protocol proposal, without ordering the parties to confer, Mr. Barton submits his own proposed privilege protocol, contemporaneously with this Surreply, for the Court's consideration. The terms of Mr. Barton's modifications to the Receiver's proposal attempt to address at least three principal issues. First, Mr. Barton seeks to modify the scope of the protocol to focus on the issue directly at hand, documents on the Microsoft 365 server and privilege screening matters as to those documents. If other issues or reservoirs of information arise, this protocol could be used as a foundation for addressing those with appropriate tailoring. Second, Mr. Barton seeks to limit his financial burden under the protocol to paying only document vendor fees incurred in connection with the privilege screening stages of the protocol, thereby preventing the Receiver from using the protocol to later force Mr. Barton to pay for general document hosting and management-type expenses even after the privilege screening stages and a final production are complete. Finally, Mr. Barton seeks to ensure his counsel can use and submit their own search terms for identifying potentially privileged documents, based on their understanding of the potential nature of personal cases and issues where privileged documents are likely to exist. Those terms are necessary to ensure that Mr. Barton can adequately protect his privilege interests.

The Defendant respectfully requests that the Court order the parties to meet and confer to resolve any differences about the terms of a privilege protocol, which all parties concede should be put in place. The Court should then order the parties to report back to this Court with an agreed

proposed order or a joint memorandum identifying areas of disagreement with the parties' arguments about how those areas of disagreement should be resolved.  Alternatively, the Court should enter the Defendant's proposed privilege protocol now to resolve this matter.

At a minimum, however, the Court should deny the Receiver's requests for contempt findings or the imposition of sanctions.  Such remedies are simply not appropriate for addressing legitimate privilege disputes.  They are also not ripe.  The Receiver's invocation of Federal Rule of Civil Procedure 37 is not appropriate, as that Rule governs civil discovery and the remedies therein require the prior entry of a discovery order.  *See Williams v. Alabama Dep't of Indus. Rels.*, 684 F. App'x 888, 895 (11th Cir. 2017) ("[T]he district court correctly ruled that Williams could not seek sanctions under that rule without a discovery order.").  Outside Rule 37, civil contempt and sanctions require the moving party first (1) obtain a show cause order providing notice of the accused improper conduct, (2) present evidence at an evidentiary hearing at which Mr. Barton may submit evidence in response, and (3) establish by clear and convincing evidence that Mr. Barton knowingly violated a definite and specific order of the court. *See Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013); *Mercer v. Mitchell*, 908 F.2d 763, 766–67 (11th Cir. 1990).  None of that has happened and, the Defendant respectfully submits, none of those steps can even  reasonably be taken in the future amidst the good faith privilege dispute presented herein.

The differences on privilege can be worked out or considerably through a meet and confer process contemplated by this Court's rules and omitted by the Receiver before placing the instant motion on the Court's docket.  The Court should instruct the parties to meet and attempt to resolve these issues.

## II.    Contrary to the Receiver's Assertions in His Reply, Mr. Barton Cannot Be Compelled to Waive His Fifth Amendment Privilege

The Receiver separately contends, for the first time in his Reply, that Mr. Barton cannot assert his Fifth Amendment privilege as to the questions and inquiries posed to him. Reply at 2-4. That is not an accurate assertion. Those who hold a Fifth Amendment privilege "may properly invoke [it] in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory[,] when he or she reasonably apprehends a risk of self-incrimination," even where "no criminal charges are pending against him or her [and] even if the risk of prosecution is remote." *Izen v. Catalina*, 256 F.3d 324, 329 (5th Cir. 2001). Here, where the defendant is under active prosecution, he may undoubtedly assert that privilege. Mr. Barton has asserted that privilege repeatedly. *See, e.g.,* ECF No. 160-1 at 5, 35-36, 42, 48. In each instance, those privilege assertions were made in response to requests for sworn statements and other specific inquiries from the Receiver (or the Receiver's counsel) regarding the operations, financials, and other matters of the businesses he previously ran. And despite what the Receiver contends, there is significant incriminatory potential if Mr. Barton were forced to provide testimonial responses, especially under oath, regarding the businesses that the Government is currently alleging in parallel criminal proceedings that he mismanaged or used as a purported vehicle for fraud. That is the subject matter of the claims against him.

## III.    The Court Should Deny any Requested Relief as to QuickBooks Records, As They Are Not Held by Mr. Barton

The Receiver's QuickBooks inquiries do not need to be included in the privilege protocol matters negotiated by the parties. Mr. Barton does not have access credentials to any QuickBooks files.

Mr. Barton also does have the authority to reach out to and direct other former employees of the receivership entities to produce any accounting credentials that they have to the Receiver.

The Receiver specifically takes issue with QuickBooks credentials potentially held by former company employee Venkat Murugan. Mr. Barton does not have control over that individual. Mr. Murugan is not Mr. Barton's agent, and the Court's Receivership Order stripped Mr. Barton of any authority to control current or former company employees—including Mr. Murugan. ECF No. 29 at 3–4 (revoking power and authority of all "trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys and other agents of the Receivership Entities"). As raised previously, the United States Attorney's Office for the Northern District of Texas has admonished Mr. Barton against talking to former employees that could be witnesses in the parallel criminal proceeding. That admonishment is consistent with the terms of release imposed by Magistrate Judge Horan, restricting communications with potential witnesses. *See U.S. v. Barton*, Case No. 3:22-cr-352-K, ECF No. 12 (N.D. Tex. Sept. 26, 2022). Given the Court's orders in the parallel criminal proceeding, the Defendant simply cannot be the solution to whatever difficulty the Receiver is having communicating with former employees or contractors of the Receivership entities.

## CONCLUSION

For the foregoing reasons, Mr. Barton respectfully requests that the Court deny the Receiver's Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing [ECF No. 133]. Instead, the Court should order the parties to meet and confer regarding any differences in the privilege protocol that all parties concede to be necessary and to file a joint memorandum with the Court either detailing and attaching an agreed proposed order with the privilege protocol or identifying any remaining differences between the parties and presenting those discrete issues for resolution by this Court.

Dated: March 23, 2023

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(Admitted to NDTX)*
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 *(admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On March 23, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

- 9 -

126068.0000001 DMS 301496549