# EXHIBIT A-68

APP000960

2619    943
Recorded in the Above
DEEDS Book & Page
01-25-2021 01:39:34 PM
Bill English - Probate Judge
Lee County, AL
Book/Pg: 2619/943
Term/Cashier: CHPJDSK02 / coliver
Tran: 24314.359970.479311
Recorded: 01-25-2021 13:39:54
REC Recording Fee                    134.00
Total Fees:  $ 134.00

OMB Approval No. 2502-0598
(Exp. 9/30/2021)

**Public Reporting Burden** for this collection of information is estimated to average .75 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it displays a currently valid OMB control number. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

**Warning:** Federal law provides that anyone who knowingly or willfully submits (or causes to submit) a document containing any false, fictitious, misleading, or fraudulent statement/certification or entry may be criminally prosecuted and may incur civil administrative liability. Penalties upon conviction can include a fine and imprisonment, as provided pursuant to applicable law, which includes, but is not limited to, 18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802, 24 C.F.R. Parts 25, 28 and 30, and 2 C.F.R. Parts 180 and 2424.

Prepared by and Recording Requested by:  After Recording return to:
Thomas Kelly Derryberry                  Department of Housing and Urban Development
Peaseley & Derryberry PLC                Attn: Legal Department
504 Autumn Springs Ct, Suite 26,         40 Marietta Street, 12th Floor,
Franklin, TN 37067                       Atlanta, GA 30303-2806

# U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
# REGULATORY AGREEMENT FOR MULTIFAMILY PROJECTS

## UNDER SECTIONS 207, 220, 221(d)(3), 221(d)(4), 223(a)(7), 223(f) and 231 OF THE NATIONAL HOUSING ACT, AS AMENDED

### Replaces HUD- 92465, 92466, FHA-1730, and 1733

**Project Name**:  Parc at Opelika
**HUD Project No.** 062-35778
**HAP Contract No.:**  N/A
**Project Location**: Opelika, County of Lee, Alabama
**Lender**: Greystone Funding Company LLC          **Processed under:**      [ X ]MAP   [ ]TAP
**Original Principal Amount of Multifamily Note**: $23,661,300.00
**Originally endorsed for insurance under § 221(d)(4).**

Date of Note: as of **January 1, 2021**

**Residual Receipts Rider:** _____Yes   __X___No
*If "yes" is checked, the Surplus Cash provisions of this Agreement are modified by an attached Rider relating to residual receipts account requirements.*

---

APP000961

2619    944
DEEDS  Book & Page
2

This Regulatory Agreement for Multifamily Projects (**"Agreement"**) is entered into as of this 1st day of January, 2021, between D4OP LLC, a limited liability company organized and existing under the laws of State of Texas, whose address is 13901 Midway Rd, Suite 102, Dallas, TX 75244-4388, its successors, heirs, and assigns (jointly and severally) (**Borrower**) and the United States Department of Housing and Urban Development, acting by and through the Secretary, his or her successors, assigns or designates (**HUD**).

In consideration of, and in exchange for an action by HUD, HUD and Borrower agree to the terms of this Agreement. The HUD action may be one of the following: HUD's endorsement for insurance of the Note, HUD's consent to the transfer of the Mortgaged Property, HUD's sale and conveyance of the Mortgaged Property, or HUD's consent to other actions related to Borrower or to the Mortgaged Property.

Further, Borrower and HUD execute this Agreement in order to comply with the requirements of the National Housing Act, as amended, and the regulations adopted by HUD pursuant thereto. This Agreement shall continue during such period of time as HUD shall be the owner, holder, or insurer of the Note. Upon satisfaction of such Note, this Agreement shall automatically terminate. However, Borrower shall be responsible for any Violations of this Agreement which occurred prior to termination.

Violation of this Agreement may subject Borrower and other signatories hereto to adverse actions. Refer to Article VII below.

**AGREEMENTS**: Borrower and HUD covenant and agree as follows:

## I. DEFINITIONS

1. **DEFINITIONS**. Any capitalized term or word used herein but not defined shall have the meaning given to such term in the Security Instrument between Borrower and Lender or the Note. The following terms, when used in this Agreement (including when used in the above recitals), shall have the following meanings, whether capitalized or not and whether singular or plural, unless, in the context, an incongruity results:

a. **"Affiliate"** means any person or business concern that directly or indirectly controls policy of a Principal or has the power to do so. Persons and business concerns controlled by the same third party are also Affiliates.

b. **"Borrower"** means all entities identified as "Borrower" in the first paragraph of the Security Instrument, together with any successors, heirs, and assigns (jointly and severally). "Borrower" shall include any entity taking title to the Mortgaged Property whether or not such entity assumes the Note. Whenever the term "Borrower" is used herein, the same shall be deemed to include the obligor of the debt secured by the Security Instrument and shall also be deemed to be the mortgagor as defined by Program Obligations.

APP000962

3

c. **"Business Day"** is defined in Section 46.

d. **"Construction Contract"** means the construction contract, approved by HUD, between Borrower and the contractor contracting to perform construction or substantial rehabilitation on the Project.

e. **"Declaration of Default"** is defined in Section 37.

f. **"Displaced Persons or Families"** means a person, family or families, displaced from (i) an urban renewal area, (ii) as a result of government action, or (iii) as a result of a major disaster determined by the President pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

g. **"Distribution"** means any disbursal, conveyance or transfer of any portion of the Mortgaged Property, including the segregation of cash or assets for subsequent withdrawal as Surplus Cash, other than in payment of Reasonable Operating Expenses, or any other disbursement, conveyance, or transfer provided for in this Agreement.

h. **"Elderly Person"** means any person, married or single, who is 62 years of age or older.

i. **"Fixtures"** means all property or goods that become so related or attached to the Land or the Improvements that an interest arises in them under real property law, whether acquired now or in the future, excluding all tenant owned goods and property, and including but not limited to: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, computers, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposals, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; playground and exercise equipment and classroom furnishings and equipment.

j. **"Goods and Services"** is defined in Section 22.

---

APP000963

4

k. **"HUD"** means the United States Department of Housing and Urban Development acting by and through the Secretary in his or her capacity as insurer or holder of the Loan under the authority of the National Housing Act, as amended, the Department of Housing and Urban Development Act, as amended, or any other federal law or regulation pertaining to the Loan or the Mortgaged Property.

l. **"Impositions"** and **"Imposition Deposits"** are defined in the Security Instrument.

m. **"Improvements"** means the buildings, structures, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

n. **"Indebtedness"** means the principal of, interest on, and all other amounts due at any time under the Note, the Security Instrument, and any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security as provided in the Security Instrument.

o. **"Land"** means the estate in realty described in <u>Exhibit A</u>.

p. **"Leases"** means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property (including but not limited to proprietary leases, non-residential leases or occupancy agreements if Borrower is a cooperative housing corporation), and all modifications, extensions or renewals. (Ground leases that create a leasehold interest in the Land and where the Borrower's leasehold is security for the Loan are not included in this definition.)

q. **"Lender"** means the entity identified as "Lender" in the first paragraph of the Security Instrument, or any subsequent holder of the Note, and whenever the term "Lender" is used herein, the same shall be deemed to include the Obligee, or the Trustee(s) and the Beneficiary of the Security Instrument and shall also be deemed to be the mortgagee as defined by Program Obligations.

r. **"Loan"** means the loan initially made by Lender to Borrower, as defined in the Security Instrument.

s. **"Mortgaged Property"** means all of Borrower's present and future right, title and interest in and to all of the following whether now held or later acquired:

---

APP000964

5

(1)     the Land;

(2)     the Improvements;

(3)     the Fixtures;

(4)     the Personalty;

(5)     all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads that may have been or may in the future be vacated;

(6)     all insurance policies covering the Mortgaged Property, and all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained such insurance policies pursuant to Lender's requirement;

(7)     all awards, payments and other compensation made or to be made by any Governmental Authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(8)     all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(9)     all proceeds (cash or non-cash), liquidated claims or other consideration from the conversion, voluntary or involuntary, of any of the Mortgaged Property and the right to collect such proceeds, liquidated claims or other consideration;

APP000965

6

(10)   all Rents and Leases;

(11)   all earnings, royalties, instruments, accounts, accounts receivable, supporting obligations, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Loan and, if Borrower is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

(12)   all Imposition Deposits;

(13)   all refunds or rebates of Impositions by any Governmental Authority or insurance company (other than refunds applicable to periods before the real property tax year in which the Security Instrument is dated);

(14)   all forfeited tenant security deposits under any Lease;

(15)   all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property;

(16)   all deposits and/or escrows held by or on behalf of Lender under Collateral Agreements; and

(17)   all awards, payments, settlements or other compensation resulting from litigation involving the Project.

Notwithstanding items numbered (1) through (17) above, Borrower may hold non-project funds in separate, segregated accounts, specifically labeled as non-project funds, which are not part of the Mortgaged Property. These accounts may hold those assets owned or received by Borrower, through equity contributions, gifts, or loan proceeds that were not required by HUD to become part of the Mortgaged Property and were not made a part of the Mortgaged Property by Borrower and funds released from the Mortgaged Property in compliance with Program Obligations (such as Distributions of Surplus Cash and loan repayments, if allowed).

t. **"Note"** means the Note executed by Borrower described in the Security Instrument, including all schedules, riders, allonges and addenda, as such Note may be amended from time to time.

u. **"Notice"** is defined in Section 46.

APP000966

DEEDS Book & Page

7

v. **"Personalty"** means all equipment, inventory, and general intangibles. The definition of "Personalty" includes furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software) and other tangible or electronically stored personal property (other than Fixtures) that are owned, leased or used by Borrower now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, and any operating agreements relating to the Land or the Improvements, and any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, choses in action and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all certifications, approvals and governmental permits relating to any activities on the Land. Intangibles shall also include all cash and cash escrow funds related to the Project, such as but not limited to: Reserve for Replacement accounts, bank accounts, Residual Receipt accounts, and investments.

w. **"Principal"** means:

(1)  an individual, joint venture, partnership, corporation, trust, nonprofit association, or any other public or private entity proposing to participate, or participating, in a project as sponsor, owner, prime contractor, turnkey developer, management agent, packager, or consultant; and architects and attorneys who have any interest in the project other than an arms-length fee arrangement for professional services;

(2)  the term principal also includes: (i) any Affiliates of a principal; (ii) if the principal is a partnership, all general partners, and each limited partner having a 25 percent or more interest in the partnership; (iii) if the principal is a public or private corporation or governmental entity; the president, vice-president, secretary and treasurer and any other executive officers who are directly responsible to the board of directors, or the equivalent thereof; all the directors; and each stockholder having a 10 percent or more interest; and

(3)  specifically excepted from this definition of a principal are: (i) parties whose sole interest is that of purchaser or owner of less than five individual unit(s) in the same condominium or cooperative development; (ii) parties whose sole interest is that of a tenant; and (iii) public housing agencies.

---

Previous editions are obsolete                    Regulatory Agreement                    HUD-92466M (6/18)

APP000967

DEEDS  Book & Page

8

x. **"Project"** and **"Project Assets"** mean the Mortgaged Property.

y. **"Program Obligations"** means (1) all applicable statutes and any regulations issued by the Secretary pursuant thereto that apply to the Project, including all amendments to such statutes and regulations, as they become effective, except that changes subject to notice and comment rulemaking shall become effective only upon completion of the rulemaking process, and (2) all current requirements in HUD handbooks and guides, notices, and mortgagee letters that apply to the Project, and all future updates, changes and amendments thereto, as they become effective, except that changes subject to notice and comment rulemaking shall become effective only upon completion of the rulemaking process, and provided that such future updates, changes and amendments shall be applicable to the Project only to the extent that they interpret, clarify and implement terms in this Agreement rather than add or delete provisions from such document.  Handbooks, guides, notices, and mortgagee letters are available on "HUDCLIPS," at www.hud.gov.

z. **"Property Jurisdiction"** is (are) the jurisdiction(s) in which the Land is located.

aa. **"Reasonable Operating Expenses"** means the reasonable expenses and payments that arise from the purchase of goods or services which are exclusively used for the operation, maintenance, and routine repair of the Project (including all payments and deposits required under this Agreement, the Note, or the Security Instrument), or as otherwise permitted by Program Obligations.

bb. **"Rents"** means all rents (whether from residential or non-residential space), revenues, issues, profits (including carrying charges, maintenance fees, and other cooperative revenues, and fees received from leasing space on the Mortgaged Property), other income of the Land or the Improvements, gross receipts, receivables, parking fees, laundry and vending machine income and fees and charges for food and other services provided at the Mortgaged Property, whether now due, past due, or to become due, Residual Receipts, and escrow accounts, however and whenever funded and wherever held.

cc. **"Reserve for Replacement"** is defined in Section 10.

dd. **"Residual Receipts"** means certain funds which are restricted in their use by Program Obligations and applicable business documents (e.g., HAP Contract, Use Agreement) as may be more specifically described in a Residual Receipts Rider attached hereto.

ee. **"Security Instrument"** means the Multifamily (Mortgage, Deed of Trust, Deed to Secure Debt, or other designation as appropriate in Property Jurisdiction),

---

Previous editions are obsolete                   Regulatory Agreement                   HUD-92466M (6/18)

APP000968

DEEDS  Book & Page

9

Assignment of Leases and Rents and Security Agreement (HUD-94000M), and any other security for the Indebtedness between Borrower and Lender, and shall be deemed to be the "mortgage" as defined by Program Obligations.

ff. **"Surplus Cash"** means certain Project cash pursuant to the calculation set forth in Section 13.

gg. **"State"** includes the several states comprising the United States of America, and Puerto Rico, the District of Columbia, Guam, the Commonwealth of the Northern Marianas, American Samoa, and the U.S. Virgin Islands.

hh. **"Taxes"** means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, that are levied, assessed or imposed by any public authority or quasi-public authority, and that, if not paid, could become a lien on the Land or the Improvements.

ii. **"Undocumented Expense"** is defined in Section 16.

jj. **"Violation"** is defined in Section 36.

kk. **"Waste"** means a failure to keep the Mortgaged Property in decent, safe and sanitary condition and in good repair. During any period in which HUD insures the Loan or holds a security interest on the Mortgaged Property, Waste is committed when, without Lender's and HUD's express written consent, Borrower:

(1)     physically changes the Mortgaged Property, whether negligently or intentionally, in a manner that reduces its value;

(2)     fails to maintain and repair the Mortgaged Property in accordance with Program Obligations;

(3)     fails to pay before delinquency any Taxes secured by a lien having priority over the Security Instrument;

(4)     materially fails to comply with covenants in the Note, the Security Instrument or this Regulatory Agreement respecting physical care, maintenance, construction, abandonment, demolition, or insurance against casualty of the Mortgaged Property; or

(5)     retains possession of Rents to which Lender or its assigns have the right of possession under the terms of the Loan Documents;

---

APP000969

DEEDS Book & Page

10

## II. CONSTRUCTION; REFINANCING

2.  [*Check the applicable box(es):*]
☒ a **CONSTRUCTION FUNDS**. Borrower shall keep funds of the Mortgaged Property to be used for construction or substantial rehabilitation separate and apart from operating funds of the Mortgaged Property. Funds for construction or substantial rehabilitation are identified in the Building Loan Agreement and/or Construction Contract.

☐ b. **DEFERRED REPAIR FUNDS**. Borrower shall keep funds of the Mortgaged Property to be used for non-critical or other deferred repairs separate and apart from operating funds of the Mortgaged Property. Funds for non-critical or other deferred repairs are identified in the Escrow Agreement for Deferred Repairs, if applicable.

3. **UNPAID OR OUTSTANDING OBLIGATIONS**. Borrower certifies, upon final or initial/final endorsement of the Note by HUD, Borrower shall have no unpaid obligations in connection with the purchase of the Mortgaged Property, the construction or repair of the Mortgaged Property, or with respect to the Security Instrument, except such unpaid obligations as have the written approval of HUD as to terms, form and amount; and, except for those obligations approved by HUD in writing, the Land shall be paid for in full and is free from any liens or purchase money obligations, or if the Land is subject to a leasehold interest, it shall be subject to a HUD approved lease, and it shall be free from any lien. As of the date hereof, Borrower has no knowledge of any liens or encumbrances against the Mortgaged Property that are not reflected as exceptions to coverage in the lender's title policy insuring the Security Instrument accepted by HUD or that are not shown on the UCC search. All contractual obligations of Borrower or on behalf of Borrower with any party shall be fully disclosed to HUD.

4. **LENDER'S CERTIFICATE**. Borrower acknowledges receipt of the Lender's Certificate or the Request for Endorsement of Credit Instrument & Certificate of Lender, Borrower & General Contractor, as applicable. To the extent such document establishes or reflects obligations of Borrower, such provisions are incorporated herein by this reference. Borrower agrees that the fees and expenses enumerated in the applicable document have been fully paid or payment has been provided for as set forth in such document and that all funds deposited with Lender shall be used for the purposes set forth in such document insofar as Borrower has rights and obligations in respect thereto.

5. **CONSTRUCTION COMMENCEMENT/REPAIRS**.

---

APP000970

2619  953
DEEDS  Book & Page

11

☒ a. [*Check the box to the left for Construction/Substantial Rehabilitation transactions.*] Borrower certifies that it has not commenced construction or substantial rehabilitation of the Mortgaged Property prior to HUD's initial endorsement of the Note, except that this Section 5a is not applicable if HUD has given prior written approval to an early start of construction, or if this Project is an Insurance Upon Completion or if such work has been disclosed to and approved in writing by HUD.  If Borrower has received prior written approval for early start, Borrower shall perform, observe and comply with all Program Obligations for early start prior to initial endorsement, which includes but is not limited to the release of liens in association with the Project, the funding of escrows for change orders, and the payment of an inspection fee.

☐ b [*Check the box to the left for Refinance/Purchase transactions.*]  Borrower shall complete any non-critical or other deferred repairs in accordance with the terms of the Firm Commitment.   Borrower is in receipt of HUD's written acknowledgment of the satisfactory completion of any non-critical or other deferred repairs for the Mortgaged Property to the extent such repairs have been completed.  Borrower has provided funds to complete any remaining repairs, as evidenced by the Escrow Agreement for Deferred Repairs, in accordance with Program Obligations, if applicable.

6. **DRAWINGS AND SPECIFICATIONS**.  The Mortgaged Property shall be constructed in accordance with the terms of the Construction Contract as approved by HUD, if any, and with the Drawings and Specifications, if any, that have been approved by HUD and deemed attached to the Construction Contract.

7. **REQUIRED PERMITS**

☒ a [*Check the box to the left for Construction/Substantial Rehabilitation transactions.*]  The Borrower has obtained, or caused to be obtained, all necessary certificates, permits, licenses, qualifications, authorizations, consents and approvals from all necessary Governmental Authorities to own and operate the Project and to carry out all of the transactions required by the Loan Documents and to comply with all applicable federal statutes and regulations of HUD in effect on the date of the Firm Commitment, except for those, if any, which customarily would be obtained at a later date, at an appropriate stage of construction or completion thereof, and which the Borrower shall obtain, or cause to be obtained, in the future.  As the construction of the Project progresses, the Borrower will obtain or cause to be obtained, and submit to HUD and Lender all necessary building and other permits required by Governmental Authorities.  The Mortgaged Property shall not be available for occupancy by any tenant without the prior written approval of HUD and of all other legal authorities having jurisdiction of the Mortgaged Property.

---

☐

APP000971

2619    954
DEEDS Book & Page

12

☐ b. [*Check the box to the left for Refinancing/Acquisition transactions.*] Borrower has obtained, or cause to be obtained, all necessary certificates, permits, licenses, qualifications, authorizations, consents and approvals from all necessary Governmental Authorities to own and operate the Project, to carry out all of the transactions required by the Loan Documents and to comply with all applicable federal statutes and regulations of HUD in effect on the date of the Firm Commitment. If HUD requires that Borrower execute an Escrow Agreement for Deferred Repairs in connection with HUD's endorsement for insurance of the Note, the licenses and permits that are in effect as of the date hereof are sufficient to allow any repair of the improvements required pursuant to the terms of the Escrow Agreement for Deferred Repairs to proceed to completion in the ordinary course.

8. **ACCOUNTING REQUIREMENTS**.

☒ a. [*Check the box to the left for Construction/Substantial Rehabilitation transactions.*] Borrower shall submit a cost certification to HUD, if and as required by Program Obligations, for all receipts and disbursements during the period set forth therein. The excess of project income over property disbursements, as determined by HUD, shall be treated as a recovery of construction cost, except as otherwise allowed in Program Obligations.

☐ b. [*Check the box to the left for Refinancing/Acquisition transactions.*] Borrower shall submit a cost certification to HUD, if and as required by Program Obligations, including all receipts and disbursements relating to repairs required pursuant to the Building Loan Agreement and/or the Escrow Agreement for Deferred Repairs. Any funds remaining after completion of the repairs shall be treated in accordance with Program Obligations, and pursuant to the Escrow Agreement for Deferred Repairs, if applicable.

## III. FINANCIAL MANAGEMENT

9. **PAYMENTS**. Borrower shall make promptly all payments due under the Note, Security Instrument, and this Agreement.

10. **RESERVE FOR REPLACEMENT**. Borrower shall establish and maintain a Reserve for Replacement account for defraying certain costs of replacing major structural elements and mechanical equipment of the Project or for any other purpose.

a. The Reserve for Replacement shall be deposited with Lender or in a safe and responsible depository designated by Lender in accordance with Program Obligations. Such funds shall at all times remain under the control of Lender or Lender's designee

---

Previous editions are obsolete            Regulatory Agreement            HUD-92466M (6/18)

APP000972

DEEDS Book & Page

13

and shall be held in accounts insured or guaranteed by a federal agency and in accordance with Program Obligations.

b.  Borrower shall deposit a monthly amount of $3,500.00 concurrently with the Amortization Commencement Date unless a different date or amount is established by HUD.  The amount of the monthly deposit may be increased or decreased from time to time at the written direction of HUD without a recorded amendment to this Agreement. At least every ten years, starting from the date of initial or initial/final endorsement of the Note, and more frequently at HUD's sole discretion, Borrower shall submit to HUD a written analysis of its use of the Reserve for Replacement during the prior ten years and the projected use of the Reserve for Replacement in accordance with Program Obligations.

c.  Borrower shall carry the balance in this account on the financial records as a restricted asset.  The Reserve for Replacement shall be invested in accordance with Program Obligations, and any interest earned on the investment shall be deposited in the Reserve for Replacement for use by the Project in accordance with this Section 10.

d.  Disbursements from the Reserve for Replacement shall only be made after consent, in writing, of HUD, in its sole discretion, or as otherwise approved by HUD pursuant to Program Obligations.  In the event of a Declaration of Default under the terms of the Security Instrument (pursuant to which the Indebtedness has been accelerated) a written notification by HUD to Borrower of a violation of this Agreement or at such other times as determined solely by HUD, HUD may direct the application of the balance in such account to the amount due on the Indebtedness as accelerated or for such other purposes as may be determined solely by HUD.

e.  In the case of a transfer of the Mortgaged Property where the Project is already subject to a Security Instrument insured or held by HUD as of the date hereof, and this Agreement is now being executed by Borrower as of the date hereof, the Reserve for Replacement now to be established shall be equal to the amount due to be in such account under this Agreement, and payments hereunder shall begin with the first payment due on the Security Instrument after acquisition, unless some other method of establishing and maintaining the account is approved in writing by HUD.

f.  Upon Borrower's full satisfaction of all HUD obligations, including but not limited to those imposed under this Agreement, Borrower shall receive any monies remaining in the Reserve for Replacement.


11.  **PROPERTY AND OPERATION; ENCUMBRANCES**.

---

Previous editions are obsolete                     Regulatory Agreement                          HUD-92466M (6/18)

APP000973

14

a.  Borrower shall deposit all Rents and other receipts of the Project in connection with the financing of the Project, including equity or capital contributions required under the Firm Commitment or otherwise advanced for the purpose and as part of the Mortgaged Property, in the name of the Project in a federally insured depository or depositories and in accordance with Program Obligations.  (Such required equity or capital contributions shall not include certain syndication proceeds, such as proceeds from Low Income Housing Tax Credit transactions used to repay bridge loans, all as more fully set forth in Program Obligations.)  Such funds shall be withdrawn only in accordance with the provisions of this Agreement for Reasonable Operating Expenses of the Project or for Distribution of Surplus Cash or as reimbursement of advances as permitted by Sections 14 and 15 below; or for permitted deposits authorized by this Agreement or for any other reason authorized under this Agreement.  Any person or entity receiving Mortgaged Property other than for payment of Reasonable Operating Expenses, authorized Distributions of Surplus Cash, or for any reason authorized under Section 34 of this Agreement, shall immediately deliver such Mortgaged Property to the Project and failing so to do shall hold such Mortgaged Property in trust.

b.  Borrower shall not engage in any business or activity, including the operation of any other project, or incur any liability or obligation not in connection with the Project, nor acquire an Affiliate or contract to enter into any affiliation with any party except as otherwise approved by HUD.

c.  Borrower shall satisfy or obtain a release of any mechanic's lien, attachment, judgment lien, or any other lien that attaches to the Mortgaged Property or any part thereof.

d.  Penalties, including but not limited to delinquent tax penalties and civil money penalties, shall not be paid from the Project.

e.  Borrower shall promptly notify HUD of the appointment of any receiver for the Project, the filing of a petition in bankruptcy or insolvency or for reorganization.

f.   Borrower shall keep the Mortgaged Property insured at all times in accordance with the Security Instrument and Program Obligations, and Borrower shall notify HUD of all payments received from an insurer.

g.  Borrower shall notify HUD of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect condemnation.

h.  Borrower shall notify HUD of any litigation proceeding filed against Borrower or the Project, or any litigation proceeding filed by Borrower.

APP000974

2619  957
DEEDS  BOOK & Page

15

12. **SECURITY DEPOSITS**. Any funds collected as security deposits shall be kept (a) separate and apart from all other funds of the Project; (b) in interest bearing trust accounts, to the extent required by State or local law; and (c) in an amount which shall at all times equal or exceed the aggregate of all outstanding obligations under said account. Security deposit account interest shall be paid on a pro rata basis to tenants or applied to sums due under their leases upon the termination of their tenancy in the Project. The use of tenant security deposits for Project operations is prohibited unless the tenant has forfeited the deposit.

13. **SURPLUS CASH**.

a.  Borrower must calculate Surplus Cash as of the last day of its fiscal year. Borrower may also, at its election, and if permitted pursuant to Program Obligations, calculate Surplus Cash as of the last day of the sixth month of its fiscal year. Borrower shall submit a report of its Surplus Cash calculations to HUD with its required annual financial reports, pursuant to Program Obligations.

b.  Surplus Cash shall equal the sum of:

   (1)   Project cash and cash equivalents (excluding the Reserve for Replacement account and other HUD-required reserves);

   (2)   short-term investments;

   (3)   project-based Section 8 Housing Assistance Payments earned but not yet received by Borrower; and

   (4)   any amounts approved for withdrawal but not yet withdrawn from the Reserve for Replacements or any other reserves or escrow accounts;

         after deducting:

   (5)   all sums due or required to be paid within the calendar month following the date as of which Surplus Cash is calculated under the terms of the Note and Security Instrument (including without limitation principal, interest, mortgage insurance premium deposits, deposits to the Reserve for Replacements and other reserves as may be required by HUD, and tax and insurance escrow deposits);

   (6)   all special funds required to be segregated by this Agreement, the Note, the Security Instrument, or Program Obligations, including tenant security deposits and any other amounts held in trust for tenants; and

   (7)   all other obligations of the Project payable within the next thirty days,

---

Previous editions are obsolete               Regulatory Agreement               HUD-92466M (6/18)

APP000975

16

unless the obligation is paid subject to available Surplus Cash or subject funds for payment of the obligation are set aside or HUD has approved deferment of payment.

14.    **DISTRIBUTIONS**. Borrower shall not make or take, or receive and retain, nor allow any Affiliate or Principal to receive or retain any Distribution of assets or any income of any kind of the Project, except from Surplus Cash or in accordance with Program Obligations. Distributions are governed by the following conditions:

a. No Distribution shall be made or taken from borrowed funds. Distributions shall not be taken prior to the completion of the Project. Distributions shall not be taken after HUD has given Notice to Borrower of a Violation under this Agreement or an Event of Default occurs under the Note or Security Instrument. Distributions shall not be taken when a Project is under a forbearance agreement.

b. No Distribution shall be made or taken when either (i) necessary services (utilities, trash removal, security, lawn service or any other services that Borrower is required to provide) are not being provided on a regular basis, which failure Borrower should have known about in the exercise of due care; (ii) notices of physical repairs or deficiencies (including, but not limited to, building code violations) by Governmental Authorities and/or by HUD have been issued and remain unresolved to the satisfaction of the issuing public body; or (iii) Borrower has been notified by HUD, Lender or a Governmental Authority that physical repairs and/or deficiencies exist and Borrower has not corrected or cured the identified items to HUD's satisfaction. Upon completion of the repairs, HUD may permit a Distribution to be placed in an escrow account until a subsequent inspection has been completed by HUD. If the Project passes a subsequent inspection, HUD may then authorize release of the funds in the escrow account to Borrower. HUD may also permit Distributions when there are minor or contested local code violations on a case-by-case basis.

c. Any Distribution of any funds of the Project not permitted by this Agreement or Program Obligations shall be returned to the appropriate Project account as specified by HUD immediately.

d. Any Distributions shall be made or taken only as permitted by the law of the applicable jurisdiction. Distributions, if taken, must be taken out of the appropriate Project account as specified by HUD within the accounting period immediately following the computation of Surplus Cash, and prior to the Borrower's next calculation of Surplus Cash, pursuant to Section 13 above, and if not taken within the identified period, these funds remain as Mortgaged Property

---

APP000976

2619   959
DEEDS Book & Page

17

and may only be used as permitted by this Agreement.

e.  Equity or capital contributions shall not be reimbursed from Project accounts without the prior written approval of HUD.  Borrower advances for Reasonable Operating Expenses shall not be deemed to fall under this subsection but rather shall be treated under Section 15 below.

15. **BORROWER ADVANCES**.

a.  "**Borrower Advances**" means any advance of funds or loan to the Project made by Borrower or any Affiliate for whatever reason.  Borrower Advances do not include equity or capital contributions whether required in conjunction with the financing of the Project or otherwise.  Borrower Advances may only be repaid from Project funds pursuant to this Section 15.

b.  Any Borrower Advances must be deposited into the Project's operating account as required by Program Obligations.  Interest may accrue on Borrower Advances pursuant to Program Obligations and may only be paid in accordance with this Section 15.

c.  Borrower Advances may only be repaid, and interest on Borrower Advances may only be paid:

(1)    with prior written approval from HUD, or

(2)    if and to the extent that Borrower is permitted to take Distributions, from funds allowable for Distributions, and only at times when Distributions are permitted pursuant to Sections 13 and 14 of this Agreement.

d.  Repayments of Borrower Advances, and payments of interest on Borrower Advances, approved by HUD and made pursuant to Section 15(c)(1) shall be considered Reasonable Operating Expenses.

e.  Borrower shall require, as a condition of any agreement to repay Borrower Advances, or to pay interest thereon, with any party making such Borrower Advances, that such agreement shall recognize the limitations of this Section 15 and, if all of the conditions of this Section 15 are not met, shall hold the Borrower and the Mortgaged Property harmless for failure to pay.

16. **FINANCIAL ACCOUNTING**.  Borrower shall keep the books and accounts of the operation of the Mortgaged Property in accordance with Program Obligations.  The books and accounts must be complete, accurate and current at all times.  Posting

---

APP000977

DEEDS Book & Page

18

must be made at least monthly to the ledger accounts, and year-end adjusting entries must be posted promptly in accordance with sound accounting principles. Any Undocumented Expense or Distribution shall be an ineligible Project expense, unless otherwise determined in writing by HUD. An **"Undocumented Expense"** is an expense without sufficient documentation that provides reasonable identification of the basis of the expense. Books, accounts and records shall be open and available for inspection by HUD, after reasonable prior notice, during normal office hours, at the Project or another mutually agreeable location.

17. **BOOKS MAINTAINED BY MANAGEMENT AGENTS**. The books and records of the Project maintained by management agents and Affiliates shall be maintained in accordance with Program Obligations and shall be open and available to inspection by HUD, after reasonable prior notice, during normal office hours, at the Project or another mutually agreeable location. Every agreement executed on behalf of the Project with any management agent or Affiliate shall include the provision that the books and records of the Project shall be properly maintained and open to inspection during normal business hours by HUD at the Project or another mutually agreeable location and that upon the termination of an agreement with management agent and/or Affiliates, the books and records of the Project maintained by the management agent and/or Affiliates shall remain with Borrower.

18. **ANNUAL FINANCIAL REPORTS.**

    a.  Within ninety (90) days, or such period established in writing by HUD, following the end of each fiscal year, Borrower shall prepare a financial report for the Borrower's fiscal year, or the portion thereof that started with the Borrower's assumption of financial responsibility (or the portion thereof that ended with Borrower's permitted transfer pursuant to a HUD-approved transfer of the Project), based on an examination of the books and records of the Borrower in accordance with generally accepted accounting principles (GAAP) and in such other form and substance as specified by HUD in supplemental guidance, and provide such report to HUD in such form and substance as specified by HUD under the Uniform Financial Reporting Standards at 24 C.F.R. Section 5.801 (UFRS), or any successor regulations, and Program Obligations.

    b.  Unless specifically waived or modified by HUD or through government notice (OMB Circular A-133 or any equally applicable notice), Borrower shall: (i) engage an independent, licensed Certified Public Accountant (CPA) to audit the Borrower's annual financial report and to produce an audit report in accordance with both Generally Accepted Government Auditing Standards (GAGAS) and Generally Accepted Auditing Standards (GAAS); (ii) engage an independent, licensed CPA to perform an agreed-upon procedure, in accordance with the

APP000978

19

American Institute of Certified Public Accountants (AICPA) Statement on Standards for Attestation Engagements (SSAE) Number 4, to compare the financial data template information submitted electronically by the Borrower to HUD against the annual financial report examined by, and the audit report prepared by, the independent, licensed CPA; and (iii) furnish to HUD the audit report, and any other reports relating to the annual financial report or the audit report as required by Program Obligations, by such means and in such form and substance as specified by HUD under UFRS, or any successor regulations, and Program Obligations.

c.  To the extent certain non-profit Borrowers' requirement to submit audited annual financial reports may be waived or modified pursuant to OMB Circular A-133 or any successor notice, no provisions of such notice shall be construed to relieve Borrower of any requirements of this Section 18, except for those requirements specifically waived or modified by such notice.

d.  If Borrower fails to perform as required pursuant to this Section 18, HUD may, at its sole election, and in a manner determined by HUD, and without affecting any other provisions of this Agreement, and without first providing notice of violation of this Agreement pursuant to Section 36 of this Agreement, initiate a forensic audit of the Borrower's books, records, and accounts in such a manner as to provide to HUD with as much of the same information that would have been provided had the Borrower not failed to perform as required.  Any such audit initiated by HUD does not relieve Borrower of the requirement to submit to HUD an annual audited financial report as required pursuant to this Agreement.

## IV.  PROJECT MANAGEMENT

**19. PRESERVATION, MANAGEMENT AND MAINTENANCE OF THE MORTGAGED PROPERTY**.  Borrower (a) shall not commit Waste, (b) shall not abandon the Mortgaged Property, (c) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as HUD may approve in writing, whether or not litigation or insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, and (d) shall keep the Mortgaged Property in decent, safe, sanitary condition and good repair, including the replacement of Personalty and Fixtures with items of equal or better function and quality, all in accordance with Program Obligations.  By executing this Agreement, Borrower agrees and understands that obligations (a) through (d) of this Section 19 are absolute and unconditional and are not limited by any conditions precedent and are not contingent on HUD's performance of any administrative or contractual obligations.  Furthermore, HUD is in no way obligated to

---

Previous editions are obsolete                    Regulatory Agreement                    HUD-92466M (6/18)

APP000979

20

provide funding or any financial assistance of any kind to Borrower to repair, rehabilitate, maintain, or make improvements to the Mortgaged Property. The Mortgaged Property must also be maintained in reasonable condition for proper audit and subject to examination by HUD at the Project or another mutually agreeable location. In the event all or any of the Improvements shall be destroyed or damaged by fire, by failure of warranty, or other casualty, the money derived from any settlement, judgment, or insurance on the Mortgaged Property shall be applied in accordance with the terms of the Security Instrument. In the event all or any of the Improvements shall be taken by an exercise of the power of eminent domain, all awards of compensation in connection with condemnation for public use of or a taking of any of the Improvements shall be paid in accordance with the Security Instrument.

20. **FLOOD HAZARDS**. Borrower shall maintain flood insurance if required by the Security Instrument.

21. **MANAGEMENT**. Borrower shall provide management of the Mortgaged Property in a manner deemed to be acceptable to HUD. At HUD's sole discretion, HUD may require replacement of the management under any circumstances set forth in subsection (d) of this Section 21 pursuant to Program Obligations, in which case Borrower shall immediately make arrangements for providing management satisfactory to HUD. Borrower shall execute a management agreement or other document outlining procedures for managing or operating the Mortgaged Property. Such agreement or document must comply with Program Obligations. Borrower and management agent (if applicable) shall submit and maintain a current management certification in accordance with Program Obligations. In addition to the requirements of Section 17 above, all management agreements must contain the following provisions:

    a. HUD's rights and requirements prevail in the event of any conflict with the terms of the management agreement.

    b. The management agreement shall not be assigned without the prior written approval of HUD.

    c. Management fees will be computed and paid in accordance with HUD requirements.

    d. HUD may require Borrower to terminate the management agreement:

        (1)    immediately without penalty if an Event of Default occurs under the Security Instrument, Note, or Regulatory Agreement;

APP000980

21

(2)    upon thirty (30) days written notice to Borrower and management agent, for failure to comply with the provisions of the Management Certification, or for other good cause; or

(3)    immediately without penalty when HUD takes control of the Mortgaged Property pursuant to its rights under the Loan Documents as mortgagee in possession.

e.  If Borrower terminates the management agreement pursuant to a request from HUD, the management agent must immediately turn over to Borrower all of the cash, accounts, deposits, investments, and records pertaining to the Mortgaged Property.

f.  Borrower may terminate the management agreement for cause with no more than a thirty (30) day notice period.

g.  The management agreement shall not exempt the management agent from liability for damages, injuries or losses, resulting from the management agent's gross negligence or willful misconduct.

22. **CONTRACTS FOR GOODS AND SERVICES**.  Consistent with Program Obligations, Borrower shall obtain contracts for goods, materials, supplies, and services (**Goods and Services**) at costs, amounts, and terms that do not exceed reasonable and necessary levels and those customarily paid in the vicinity of the Land for Goods and Services received.  The purchase price of Goods and Services shall be based on quality, durability and scope of work and shall be made upon the most advantageous terms for the Project operation.  Reasonable Operating Expenses do not include amounts paid for Improvements and/or betterments, unless approved in writing by HUD. Borrower shall keep copies of all written contracts or other instruments that affect the Mortgaged Property, all or any of which may be subject to inspection and examination by HUD at the Project or another mutually agreeable location.

23. **RESPONSIVENESS TO INQUIRIES**.  At the request of HUD, Borrower shall promptly furnish operating budgets and occupancy, accounting and other reports (including credit reports) and give specific answers to questions relative to income, assets, liabilities, contracts, operation, and conditions of the Mortgaged Property and the status of the Security Instrument.

24. **TENANT ORGANIZATIONS**.  If the Project is subject to 24 C.F.R. Part 245, Subpart B or any successor regulation covering the rights of tenants to organize, Borrower shall comply with this Section 24.  Borrower shall not (a) impede the reasonable efforts of resident tenant organizations to represent their members or the reasonable efforts of

| Previous editions are obsolete | Regulatory Agreement | HUD-92466M (6/18) |
| --- | --- | --- |

APP000981

2019 964
DEEDS Book & Page

22

tenants to organize, or (b) unreasonably withhold the use of any community room or other available space appropriate for meetings that is part of the Mortgaged Property when requested by: (i) a resident tenant organization in connection with the representational purposes of the organization; or (ii) tenants seeking to organize or to consider collectively any matter pertaining to their living environment, which includes the terms and conditions of their tenancy as well as activities related to housing and community development. Borrower may charge for the use of the Mortgaged Property any fees or costs approved by HUD as may normally be imposed for the use of such facilities or may waive any such fees or costs.

## V.  ADMISSIONS AND OCCUPANCY

25. **RESIDENTIAL UNITS AND SERVICES**.  If the Project is subject to regulation of rent by HUD, Borrower shall make residential units and services of the Project available to eligible tenants at charges not exceeding those established in accordance with a rental schedule approved in writing by HUD.

26. **LEASE TERMS FOR RESIDENTIAL UNITS**.  Residential units shall not be rented for a period of less than thirty (30) days or for more than 3 years and shall not be used for transient or hotel purposes.  Rental for transient or hotel purposes shall mean:  (a) rental for a period of less than thirty (30) days or (b) any rental, if the occupants of the residential units are provided customary hotel services such as room service for food and beverages, maid service, furnishings or laundering of linens, and bellhop service.  Residential units in projects with Security Instruments initially endorsed for insurance pursuant to Section 231 of the National Housing Act, as amended, may be rented for a period of more than 3 years.

27. **COMMERCIAL (NON-RESIDENTIAL) LEASES**.  No portion of the Mortgaged Property shall be leased for any commercial purpose or use without receiving HUD's prior written approval as to terms, form and amount, except that for lease renewals or extensions or amendments involving no change in terms or use, rent increases are permitted without HUD approval.  Borrower must deliver an executed copy of the commercial Lease to HUD.

28. **SUBLEASES**.  All Leases of residential units by Borrower to tenants must also prohibit assignment of the leasehold interest by the tenant without the prior written approval of Borrower.  All Leases of residential units by Borrower to tenants must prohibit tenants from entering into any subleases that do not run for at least thirty (30) days and must require that all subleases be approved in advance in writing by Borrower.  Leases of residential units must prohibit the tenant from granting the right to occupy the premises for a period of less than thirty (30) days or from furnishing hotel

| Previous editions are obsolete | Regulatory Agreement | HUD-92466M (6/18) |

APP000982

2619   965
DEEDS Book & Page

23

services, as defined in Section 26.  Assignment and subleasing of units by other than the tenant thereof without the prior written approval of Borrower shall be prohibited in the Lease.  Upon discovery of any unapproved assignment, sublease or occupancy, Borrower shall, to the extent permitted by law, immediately demand cancellation and/or vacation of the premises, as appropriate, and notify HUD thereof.

29. **TENANT SELECTION/OCCUPANCY.**

a.  If the Security Instrument is originally a HUD-held purchase money mortgage, or is originally endorsed for FHA multifamily insurance under any Section of the National Housing Act, as amended, other than Section 231 units specially designed for use and occupancy of Elderly Persons exclusively, Borrower shall not, in selecting tenants, discriminate against any person or persons by reason of the fact that there are children in the family, unless in accordance with the Fair Housing Act and otherwise approved in writing by HUD in accordance with the Program Obligations.

b.  If the Security Instrument is originally endorsed for insurance under Section 221, Borrower shall, in selecting tenants, give to Displaced Persons or Families an absolute preference or priority of occupancy that shall be accomplished as follows:  (1) For a period of sixty (60) days from the date of original offering, unless a shorter period of time is approved in writing by HUD, all units shall be held for such preferred applicants, after which time any remaining unrented units may be rented to non-preferred applicants; (2) thereafter, and on a continuing basis, such preferred applicants shall be given preference over non-preferred applicants in their placement on a waiting list to be maintained by Borrower; and (3) through such further provisions agreed to in writing by the parties to this Agreement.

c.  At least 75% of the units in a Project insured under Section 231 shall be designed for the use and occupancy of Elderly Persons unless prior written approval is given by HUD for a lesser number of units.

d.  All advertising or efforts to rent a project insured under Section 231 shall reflect a bona fide effort of Borrower to obtain occupancy by Elderly Persons.

30. **ADDITIONAL OCCUPANCY RESTRICTIONS AND POLICIES:**

NONE

---

APP000983

24

31. **RENTS**.  If the Project is subject to regulation of rent by HUD, HUD will at any time entertain a written request for a rent increase that is properly supported by substantiating evidence and HUD will, within a reasonable time:  (a) approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance costs over which Borrower has no effective control; or (b) deny the increase and state the reasons for its decision.

32. **CHARGES FOR SERVICES AND FACILITIES**.  If the Project is subject to regulation of rent by HUD, Borrower shall only charge to and receive from any tenant such amounts as have the prior written approval of HUD and are mutually agreed upon between Borrower and the tenant for any facilities and/or services not included in the HUD approved rent schedule that may be furnished by, or on behalf of, Borrower to such tenant upon request.

33. **PROHIBITION OF CERTAIN FEES**.  Borrower shall not charge any Project tenant or prospective Project tenant any fees prohibited under Program Obligations. Such prohibited fees may include an admission fee, a key fee, or similar payment pursuant to any agreement to furnish residential units or services to persons making such payments.

34. **SECURITY DEPOSITS AND OTHER FEES**.  Borrower shall not require as a condition of occupancy or leasing of any unit in the Project, any consideration or deposit other than the prepayment of the first month's rent plus a security deposit in an amount not in excess of one month's rent to guarantee the performance of the lease terms. Borrower may charge certain application processing fees such as credit check or criminal background fees or pet deposits.

## VI.  ACTIONS REQUIRING THE PRIOR WRITTEN APPROVAL OF HUD

35. **ACTIONS REQUIRING THE PRIOR WRITTEN APPROVAL OF HUD**.  Borrower shall not without the prior written approval of HUD:

a.  Convey, assign, transfer, pledge, hypothecate, encumber, or otherwise dispose of the Mortgaged Property or any interest therein, or permit the conveyance, assignment, or transfer of any interest in Borrower (if the effect of such conveyance, assignment or transfer is the creation or elimination of a Principal) unless permitted by Program Obligations.  Borrower need not obtain the prior written approval of HUD: (i) for a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under the Security Instrument; (ii) for inclusion of the Mortgaged Property in a bankruptcy estate by operation of law under the United States

| Previous editions are obsolete | Regulatory Agreement | HUD-92466M (6/18) |
|---|---|---|

APP000984

25

Bankruptcy Code; (iii) for acquisition of an interest by inheritance or by Court decree; or (iv) for actions permitted under subsection (g) below.

b. Enter into any contract, agreement or arrangement to borrow funds or finance any purchase or incur any liability, direct or contingent, other than for Reasonable Operating Expenses.

c. Pay out any funds of the Mortgaged Property except as provided in this Agreement and Program Obligations.

d. Except from permissible withdrawals of Surplus Cash, pay any compensation, including wages or salaries, or incur any obligation to do so, to any officer, director, stockholder, trustee, beneficiary, partner, member, manager (in the case of a Borrower formed as a Limited Liability Company or Limited Liability Corporation), or Principal of Borrower, or to any nominee thereof.

e. Enter into or change any contract, agreement or arrangement for supervisory or managerial services or Leases for operation of the Project in whole or in part except as permitted under Program Obligations.

f. Convey, assign or transfer any right to receive the Rents of the Mortgaged Property, except as provided in the Security Instrument.

g. Remodel, add to, subtract from, construct, reconstruct or demolish any part of the Mortgaged Property, except as required by HUD under Section 19(c) and except that Borrower may, without the prior written approval of HUD, dispose of obsolete or deteriorated Fixtures or Personalty if the same are replaced with like items of the same or greater quality or value and make minor alterations that do not impair the security.

h. Permit the use of the Mortgaged Property for any other purpose except the use for which it was originally intended, or permit commercial use greater than that originally approved by HUD.

i. Amend the organizational documents of Borrower in a way that materially modifies the terms of the organization, including, but not limited to: any amendment that activates the requirement that a HUD previous participation certification be obtained from any additional partner or member; any amendment that would authorize any officer, partner or member other than the officer(s), general partner(s) or the managing member(s) of the corporation, partnership or company or pre-approved successor officer(s), general partner(s) or managing member(s) to bind the corporation, partnership or company for any matters concerning the Project which requires HUD's consent or approval; a change in the officer(s), general partner(s) or

---

APP000985

26

managing member(s) or pre-approved successor officer(s), general partner(s) or managing member(s) of the corporation, partnership or company and any proposed changes to the HUD-required provisions included in the organizational documents. Copies of all fully executed amendments to the organizational documents must be provided to HUD within ten (10) days of the effective date of the amendment. If the amendments to the organizational documents are recorded or filed, copies of the recorded or filed documents must be provided to HUD within ten (10) days of receipt by Borrower.

j.  Reimburse any party from Mortgaged Property for payment of expenses or costs of the Project or for any purpose except for Reasonable Operating Expenses and in a manner consistent with Section 15.

k.  Receive any fee or payment of any kind from any managing agent, employee of the Project or of the managing agent, or other provider of Goods or Services of the Project, except for warranty claims from providers of Goods and Services.

l.  Initiate or acquiesce in a change in the zoning classification of the Mortgaged Property that results in any change in permitted use that was in effect at the time of initial/final endorsement.

m.  Establish any condominium or cooperative regime with respect to the Mortgaged Property.

n.  Materially change any unit configurations or change the number of units in the Mortgaged Property.

## VII. ENFORCEMENT

36. **VIOLATION OF AGREEMENT.** The occurrence of any one or more of the following shall constitute a **"Violation"** under this Agreement:

a.  Any failure by Borrower to comply with any of the provisions of this Agreement;

b.  Any fraud or material misrepresentation or material omission by Borrower, any of its officers, directors, trustees, general partners, members, managers or managing agent in connection with (1) any financial statement, rent roll or other report or information provided to HUD or (2) any request for HUD's consent to any proposed action, including a request for disbursement of funds from any restricted account for which HUD's prior written approval is required; and/or

---

Previous editions are obsolete                Regulatory Agreement                HUD-92466M (6/18)

APP000986

DEEDS Book & Page

27

c.  The commencement of a forfeiture action or proceeding, whether civil or criminal, which, in HUD's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the value of the Mortgaged Property.

## 37. DECLARATION OF DEFAULT.

a.  Upon a Violation, HUD may give written Notice, pursuant to Section 46, of the Violation to Borrower, addressed to the addresses stated in this Agreement, or such other addresses as may subsequently, upon appropriate written Notice to HUD, be designated by Borrower as its legal business address.  If, after receiving written Notice of a Violation, that Violation is not corrected to the satisfaction of HUD either within thirty (30) days after the date Notice is mailed, or within such shorter or longer time set forth in said Notice, HUD may declare a default (**Declaration of Default**) under this Agreement without further Notice.  Alternatively, in order to protect the health and safety of the tenants, HUD may declare a default at any time during the existence of a Violation without providing prior written Notice of the Violation.

b.  Upon any **Declaration of Default** HUD may:

(1)  If HUD holds the Note, declare the whole of said Indebtedness immediately due and payable and then proceed with the foreclosure of the Security Instrument;

(2)  If said Note is not held by HUD, notify the Lender of such default and require the Lender to declare a default under the Note and Security Instrument, and the Lender, after receiving such Notice and demand, may declare the whole Indebtedness due and payable and thereupon proceed with foreclosure of the Security Instrument or assignment of the Note and Security Instrument to HUD as provided in Program Obligations.  Upon assignment of the Note and Security Instrument to HUD, HUD may then proceed with the foreclosure of the Security Instrument;

(3)  Collect all Rents and charges in connection with the operation of the Project and use such collections to pay Borrower's obligations under this Agreement and under the Note and Security Instrument and the necessary expenses of preserving and operating the Mortgaged Property;

(4)  Take possession of the Mortgaged Property, bring any action necessary to enforce any rights of Borrower growing out of the Mortgaged Property's operation, and maintain the Mortgaged Property in decent, safe, and sanitary condition and good repair;

APP000987

DEEDS  Book & Page

28

(5)    Apply to any court, state or federal, for specific performance of this Agreement, for an injunction against any Violations of this Agreement, for the appointment of a receiver to take over and operate the Project in accordance with this terms of the Agreement, or for such other relief as may be appropriate, as the injury to HUD arising from a default under any of the terms of this Agreement would be irreparable and the amount of damage would be difficult to ascertain; and,

(6)    Collect reasonable attorney fees related to enforcing Borrower's compliance with this Agreement.

38. **FORBEARANCE NO WAIVER.**  Any forbearance by HUD in exercising any right or remedy under this Agreement or otherwise afforded by applicable law shall not be a waiver of or preclude the exercise of any right or remedy.

39. **MEASURE OF DAMAGES.**  The damage to HUD as a result of Borrower's breach of duties and obligations under this Agreement shall be, in the case of failure to maintain the Mortgaged Property as required by this Agreement, the cost of the repairs required to return the Project to decent, safe and sanitary condition and good repair. This contractual provision shall not abrogate or limit any other remedy or measure of damages available to HUD under any civil, criminal or common law.

## VIII.  MISCELLANEOUS

## 40.  COMPLIANCE WITH LAWS.

a.  Borrower shall comply with all applicable:  laws; ordinances; regulations; requirements of any Governmental Authority; lawful covenants and agreements (including the Security Instrument) recorded against the Mortgaged Property; and Program Obligations including lead-based paint maintenance requirements of 24 C.F.R. Part 35, Subpart G, and any successor regulations; including but not limited to those of the foregoing pertaining to:  health and safety; construction of improvements on the Mortgaged Property; fair housing; civil rights; zoning and land use; Leases; and maintenance and disposition of tenant security deposits; and, with respect to all of the foregoing, all subsequent amendments, revisions, promulgations or enactments. Borrower shall at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 40.  Borrower shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property, including those that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise impair the lien created by the Security Instrument or Lender's interest in the Mortgaged

---

APP000988

29

Property.  Borrower represents and warrants to HUD that no portion of the Mortgaged Property has been or shall be purchased with the proceeds of any illegal activity.

b.  HUD shall be entitled to invoke any remedies available by law to redress any breach or to compel compliance by Borrower with these requirements, including any remedies available hereunder.

41.**BINDING EFFECT**.  This Agreement shall bind, and the benefits shall inure to, Borrower, its heirs, legal representative, executors, administrators, successors in office or interest, and assigns, and to HUD and HUD's successors, so long as the Contract of Insurance continues in effect, and during such further time as HUD shall be the Lender, holder, coinsurer, or reinsurer of the Security Instrument, or obligated to reinsure the Security Instrument.

42.**PARAMOUNT RIGHTS AND OBLIGATIONS**.  Borrower warrants that it has not, and shall not, execute any other agreement with provisions contradictory of, or in opposition to, the provisions hereof, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations set forth and supersede any other requirements in conflict therewith.

43.**SEVERABILITY**.  The invalidity of any clause, part, or provision of this Agreement shall not affect the validity of the remaining portions hereof.

44.**RULES OF CONSTRUCTION.**  The captions and headings of the Sections of this Regulatory Agreement are for convenience only and shall be disregarded in construing this Regulatory Agreement.  Any reference in this Regulatory Agreement to an **"Exhibit"** or a **"Section"** shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Regulatory Agreement or to a Section of this Regulatory Agreement.  All Exhibits attached to or referred to in this Regulatory Agreement are incorporated by reference into this Regulatory Agreement. Use of the singular in this Regulatory Agreement includes the plural and use of the plural includes the singular.  As used in this Regulatory Agreement, the term, "including" means "including, but not limited to."  In this Regulatory Agreement, where the context may so require, feminine or masculine pronouns or adjectives shall be substituted for those of the neuter gender, and vice versa.

45.**PRESENT ASSIGNMENT**.  Borrower irrevocably and unconditionally assigns, pledges, mortgages and transfers to HUD its rights to the Rents, charges, fees, carrying charges, Project accounts, security deposits, and other revenues and receipts of whatsoever sort that it may receive or be entitled to receive from the operation of the Mortgaged Property, subject to the assignment of Rents in the Security Instrument.

| Previous editions are obsolete | Regulatory Agreement | HUD-92466M (6/18) |

APP000989

30

Until a default is declared under this Agreement, a revocable license is granted to Borrower to collect and retain such Rents, charges, fees, carrying charges, Project accounts, security deposits, and other revenues and receipts, but upon a Declaration of Default under this Agreement or under the Security Instrument, this revocable license is automatically terminated.

46. **NOTICE**.

a. All notices, demands and other communications ("**Notice**") under or concerning this Agreement shall be in writing.  A courtesy copy of any Notice given by Borrower or HUD shall be sent simultaneously to Lender.  Each Notice shall be addressed to the intended recipients at their respective addresses set forth below, and shall be deemed given on the earliest to occur of (i) the date when the Notice is received by the addressee; (ii) the first or second Business Day after the Notice is delivered to a recognized overnight courier service, with arrangements made for payment of charges for next or second Business Day delivery, respectively; or (iii) the third Business Day after the Notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested.  As used in this Section 46, the term "**Business Day**" means any day other than a Saturday or a Sunday, a federal holiday or holiday in the state where the Project is located or other day on which the federal government or the government of the state where the Project is located is not open for business.  When not specifically designated as a Business Day, the term "**day**" shall refer to a calendar day.

b. Any party to this Agreement and Lender may change the address to which Notices intended for it are to be directed by means of Notice given to the other party in accordance with this Section 46.  Each party agrees that it shall not refuse or reject delivery of any Notice given in accordance with this Section 46, that it shall acknowledge, in writing, the receipt of any Notice upon request by the other party and that any Notice rejected or refused by it shall be deemed for purposes of this Section 46 to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

**BORROWER:**
D4OP LLC
Attn: Timothy Barton
13901 Midway Rd, Suite 102
Dallas, TX 75244-4388

APP000990

DEEDS  Book & Page

31

**HUD:**
United States Department of Housing and Urban Development
Attn: Housing Asset Management
40 Marietta Street, 3rd Floor
Atlanta, GA 30303

**LENDER:**
Greystone Funding Company LLC
Attn: General Counsel
419 Belle Air Lane
Warrenton, VA 20186

47. **CONFLICTS PROVISION.** Borrower shall comply with the requirements set forth in this Agreement as well as any other agreement Borrower enters into with HUD.  However, if a conflict exists between this Agreement and any other HUD agreement executed by Borrower, the agreement which imposes the more restrictive requirements on Borrower shall control.

48. **THIRD PARTY BENEFICIARY.** Borrower agrees that it is not a third-party beneficiary to the Contract of Insurance between HUD and Lender, as more fully set forth in 24 C.F.R. Part 207, Subpart B.

49. **EXPLANATION OF ROLES.** HUD is not providing a loan to the Borrower.  HUD operates insurance programs under the provisions of the National Housing Act.  HUD, through the Federal Housing Administration (FHA) provides insurance to private and public lenders, which it has approved as financially responsible, against loss on mortgages financing multifamily projects.  The mortgage insurance is a contract between the approved lender and HUD.  These are the only two parties to the FHA insurance contract, the approved mortgage lender and HUD.  The approved lender is the only party that is intended to benefit from the contract of mortgage insurance.  While borrowers and other program participants may incidentally benefit in some manner from the insured mortgage financing that the approved lender provides, all other program participants are deemed not to be third party beneficiaries of the insurance contract.  Thus, program participants have no rights and should not have any expectations in regard to decisions made or actions taken by HUD under the mortgage lender's contract of mortgage insurance, including but not limited to accepting a loan as eligible for insurance or paying a claim.

---

Previous editions are obsolete                    Regulatory Agreement                    HUD-92466M (6/18)

APP000991

32

## SECTION IX.  NON RECOURSE

50.  **NONRECOURSE DEBT**.  The addendum ("Section 50 Addendum") attached hereto is incorporated herein by this reference.

**ATTACHED EXHIBITS.**  The following Exhibits are attached to this Regulatory Agreement:

[X]     <u>Exhibit A</u>     Description of the Land

[X]     <u>Section 50 Addendum</u>

[X]     <u>RIDER</u>     RIDER TO REGULATORY AGREEMENT: Borrower's Obligation to Maintain Project's Energy Performance as Consideration for MIP Reduction

APP000992

DEEDS  Book & Page

33

**IN WITNESS WHEREOF**, the parties hereto have set their hands and seals on the date first herein above written.

Each signatory below hereby certifies that each of their statements and representations contained in this Agreement and all their supporting documentation thereto are true, accurate, and complete and that each signatory has read and understands the terms of this Agreement.  This Agreement has been made, presented, and delivered for the purpose of influencing an official action of HUD in insuring the Loan, and may be relied upon by HUD as a true statement of the facts contained therein.

**BORROWER:**

D4OP LLC,
a Texas limited liability company

By: _____
      Timothy Barton, President

I, _____Bella D Khusal_____ the undersigned, a Notary Public in and for said County in said State hereby certify that on this the __14__ day of _____January_____, _2021_ before me personally appeared Timothy Barton to me personally known (or proved to me on the basis of satisfactory evidence), and who, after being duly sworn, acknowledged himself to be the President of  D4OP LLC, a Texas limited liability company, and that being informed of the contents of the instrument, he as such President and with full authority to so do, did execute the foregoing instrument voluntarily for and as the act of said limited liability company.
Witness my hand and official seal or stamp.

_____
Notary Public
My commission expires: _09/24/2022_

NOTARY PUBLIC
STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

| Previous editions are obsolete | Regulatory Agreement | HUD-92466M (6/18) |
| --- | --- | --- |

APP000993



DEEDS Book & Page

34

HUD Project Number: 062-35778
Project Name: Parc at Opelika

HUD-92466M – Regulatory Agreement
HUD Signature Page

## US DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ACTING BY AND THROUGH THE SECRETARY

By: _Barbara Williams_
     Authorized Agent

STATE OF _Florida_
COUNTY OF _Duval_

      Before me the undersigned authority, a notary public, of the state and county aforesaid, personally appeared _Barbara Williams_, to me personally known and known to be the duly appointed authorized agent of the Secretary of the United States Department of Housing and Urban Development, who executed the foregoing instrument by virtue of the authority vested in him/her and acknowledged to me that he/she executed it voluntarily for the purposes stated therein on behalf of the Secretary of Housing and Urban Development this the _21st_ day of _January_, _2021_ .

      Witness my hand and official seal or stamp.

_____
Notary Public
Print Name: _Thelma A. Robinson_

My commission expires: _MAY 23, 2023_

[Affix Notarial Seal]

> THELMA A ROBINSON
> Notary Public - State of Florida
> Commission # GG 339648
> My Comm. Expires May 29, 2023
> Bonded through National Notary Assn.

| Previous editions are obsolete | Regulatory Agreement | HUD-92466M (6/18) |
| --- | --- | --- |

APP000994

35

## Warning

Any person who knowingly presents a false, fictitious, or fraudulent statement or claim in a matter within the jurisdiction of the U.S. Department of Housing and Urban Development is subject to criminal penalties, civil liability, and administrative sanctions.

**NOTICE:   THIS DOCUMENT MUST HAVE A LEGAL DESCRIPTION ATTACHED AND BOTH THIS DOCUMENT AND THE SECTION 50 ADDENDUM MUST BE EXECUTED WITH ALL FORMALITIES REQUIRED FOR RECORDING A DEED TO REAL ESTATE (*e.g.*, NOTARY/ACKNOWLEDGEMENT, SEAL, WITNESS OR OTHER APPROPRIATE FORMALITIES).**

APP000995

DEEDS Book & Page

HUD Project Number: 062-35778
Project Name: Parc at Opelika

**EXHIBIT A**

**DESCRIPTION OF THE LAND**

Tract "A-3-A" of the Fox Run Parkway Development, LLC Subdivision Opelika, Lee County, Alabama

All that certain tract or parcel of land containing 11.95 acres being shown as Tract "A-3-A" on the plat titled A Re-Subdivision of Tracts "A-3", "A-4" & "A-5" of the Re-Subdivision of Tract "A" of the Fox Run Parkway Development, LLC Subdivision as recorded in Plat Book 42 at Page 104 in the Office of the Judge of Probate of Lee County, Alabama, being located in Section 17, Township 19 North, Range 27 East, Opelika, Lee County, Alabama and being more particularly described a follows:

Starting at the locally accepted Southeast corner of the North Half of Section 17, Township 19 North, Range 27 East, Opelika, Lee County, Alabama go Westerly a distance of 4106 feet, more or less, to an iron pin on the Northwesterly right of way of South Fox Run Parkway; thence South 89 degrees 24 minutes 20 seconds West a distance of 494.29 feet to an iron pin on the present North right of way of Tree Avenue; thence North 58 degrees 38 minutes 34 seconds East a distance of 39.10 feet to an iron pin at the Northeast corner of Tract "A-6" of the Fox Run Parkway Development, LLC Subdivision as shown on the plat recorded in Plat Book 41 at Page 176, also being the POINT of BEGINNING of hereinabove described Tract "A-3-A"; thence along the North line of said Tract "A-6" South 89 degrees 24 minutes 20 seconds West a distance of 597.10 feet to an iron pin; thence continue along the North line of said Tract "A-6" North 45 degrees 27 minutes 20 seconds West a distance of 35.44 feet to an iron pin on the East right of way of McCoy Street; thence along the East right of way of McCoy Street North 00 degrees 19 minutes 01 seconds West a distance of 246.57 feet to a concrete monument; thence continue along the East right of way of McCoy Street North 04 degrees 05 minutes 58 seconds West a distance of 498.14 feet to an iron pin; thence continue along the East right of McCoy Street North 00 degrees 23 minutes 36 seconds West a distance of 68.49 feet to an iron pin; thence South 45 degrees 11 minutes 48 seconds East a distance of 70.95 feet to an iron pin; thence North 90 degrees 00 minutes 00 seconds East a distance of 58.71 feet to an iron pin; thence along a curve, concave Southerly, having a radius of 245.00 feet, an arc distance of 89.89 feet, a chord direction of South 79 degrees 29 minutes 20 seconds East and a chord distance of 89.39 feet to an iron pin; thence South 68 degrees 58 minutes 39 seconds East a distance of 15.00 feet to an iron pin; thence South 21 degrees 01 minutes 21 seconds West a distance of 60.00 feet to an iron pin; thence South 68 degrees 58 minutes 39 seconds East a distance of 174.69 feet to an iron pin; thence along a curve, concave Northerly, having a radius of 220.00 feet; an arc distance of 200.89 feet, a chord direction of North 84 degrees 51 minutes 48 seconds East, and a chord distance of 193.98 feet to an iron pin; thence South 43 degrees 53 minutes 10 seconds East a distance of 636.06 feet to an iron pin; thence South 58 degrees 38 minutes 34 seconds West a distance of 382.74 feet to the POINT of BEGINNING. Subject to all easements and restrictions of record.

HUD-92466M (Rev. 06/14)                                                                 Legal Description

**APP000996**

DEEDS  Book & Page

# SECTION 50 ADDENDUM

The Loan is nonrecourse.  Each individual/entity (each, a **"Section 50 party"**) as identified below and in the **"Firm Commitment"** (which means the commitment for insurance of advances or commitment for insurance upon completion issued to Lender by HUD under which the debt evidenced by the Note is to be insured pursuant to a Section of the Act, dated <u>July 30, 2020</u>, and any amendments thereto):

1. <u>Timothy Barton</u>
        (Individual/Entity Name)

2. <u>JMJD4 LLC, a Texas limited liability company</u>
        (Individual/Entity Name)

does not assume personal liability for payments due under the Note and Security Instrument, or for the payments to the Reserve for Replacements, or for matters not under its control, provided that each Section 50 Party shall be personally liable under this Agreement only with respect to the matters hereinafter stated; namely:  (a) for funds or property of the Project coming into its hands which, by the provisions hereof, it is not entitled to retain; (b) for authorizing the conveyance, assignment, transfer, pledge, encumbrance, or other disposition of the Mortgaged Property or any interest therein in violation of Section 35(a) of the Regulatory Agreement to which this addendum is attached (**"Regulatory Agreement"**) without the prior written approval of HUD; and (c) for its own acts and deeds, or acts and deeds of others, which it has authorized in violation of the provisions of this Section 50 Addendum.  The obligations of each Section 50 Party shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, any termination of the Regulatory Agreement, or any release of record of the Security Instrument.

APP000997

2619   980
DEEDS  Book & Page

## SIGNATURE PAGE TO SECTION 50 ADDENDUM

_____
Timothy Barton

State of _TEXAS_
County of _DALLAS_

    Before me the undersigned authority, a notary public, of the state and county aforesaid, personally appeared
___Timothy Barton___, to me personally known and/or proven on the basis of satisfactory evidence and who executed the foregoing addendum voluntarily for the purposes stated therein on this the _14_ day of _January, 2021_.

    Witness my hand and official seal or stamp.

_____
Notary Public
Print Name: _Bella D Khusal_

My commission expires: _09/24/2022_

               [Affix Notarial Seal]



Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

HUD-92466M (Rev. 06/18)

         Section 50 - Addendum

APP000998

DEEDS  Book & Page

## SIGNATURE PAGE TO SECTION 50 ADDENDUM

JMJD4 LLC,
a Texas limited liability company

By: _____
Name: _Timothy Barton_
Title: _President_

State of _Texas_
County of _Dallas_

  Before me the undersigned authority, a notary public, of the state and county aforesaid, personally appeared _Timothy Barton_, to me personally known and/or proven on the basis of satisfactory evidence and who executed the foregoing addendum voluntarily for the purposes stated therein on this the __14__ day of _January, 2021_.

  Witness my hand and official seal or stamp.

_____
Notary Public
Print Name: _Bella D Khusal_

My commission expires: _09/24/2022_

[Affix Notarial Seal]

HUD-92466M (Rev. 06/18)          Section 50 - Addendum

APP000999

2619    982
DEEDS Book & Page

OMB Control Number: 2502-0029
Expiration Date: 04/30/2020

# RIDER TO REGULATORY AGREEMENT

### Borrower's Obligation to Maintain Project's Energy Performance as Consideration for MIP Reduction

This Rider ("Rider") is attached to and amends the Regulatory Agreement entered into between D4OP LLC, a Texas limited liability company ("Borrower") and the United States Department of Housing and Urban Development, acting by and through the Secretary, his or her successors, assigns or designates ("HUD"), dated as of January 1, 2021 ("Regulatory Agreement") concerning a Project known as Parc at Opelika located at:

> Street: 1375 McCoy Street,
> City/State/ZIP: Opelika, AL 36801

For and in consideration of the reduction in mortgage insurance premiums and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and HUD agree as follows:

To the extent that any provisions of the Rider conflict with any provisions of the Regulatory Agreement, the provisions of this Rider shall prevail. Any terms in the Regulatory Agreement not in conflict with this Rider remain in full force and effect.

Notwithstanding anything else in the Regulatory Agreement to which this Rider is attached:

1. Definitions

The following terms shall be added to Section 1 (Definitions) of the Regulatory Agreement

    (a) Any capitalized terms not defined in this Rider shall have the meaning given in the Regulatory Agreement.

    (b) "**Green Standard**" means an industry recognized standard of building design, construction, renovation and/or maintenance that results in minimized consumption of non-renewable energy sources and optimum use of sustainable materials, resources and methods and is acceptable to HUD.

    (c) "**Portfolio Manager®**" means the free software tool provided by the US Environmental Protection Agency (EPA) for the purpose of reporting and scoring utility consumption for common types of facilities in the built environment including multifamily properties, and any successor or amended tool as EPA may from time to time provide.

    (d) "**Statement of Energy Performance (SEP)**" means a particular report produced by Portfolio Manager® available in various formats providing utility consumption data for 12 month periods with stabilized operations and

APP001000

2619    983
DEEDS Book & Page
OMB Control Number: 2502-0029
Expiration Date: 04/30/2020

comparing the energy consumption per square foot of a subject property to a fixed sample of similar properties by means of an index score, and any successor or amended report providing an index score for multifamily properties.

(e) "**ENERGY STAR® Score**" means the 1 to 100 index score produced by Portfolio Manager and reported on the SEP comparing the energy performance of the subject property to a sample of other similar properties.

(f) "**HUD Custom SEP**" is a machine readable format of the SEP which may be a required format for an SEP when HUD enables electronic or automated reporting.

(g) "**Qualified Energy Professional**" is a person or firm qualified by education and experience as described in the Multifamily Accelerated Processing Guide, Chapter 5, or amended Program Obligations.

2. <u>Borrower's Election to Achieve a Green Standard for the Project</u>

Borrower has elected and hereby agrees to diligently pursue and achieve a Green Standard in accordance with HUD's Announcement and waiver published on March 31, 2016 (81 FR 18473) and entitled "Changes in Certain Multifamily Mortgage Insurance Premiums and Regulatory Waiver for the 542(c) Risk-Sharing Program".

The selected Green Standard is: (choose one, X)

| X | Choose One: |
|---|---|
| | Enterprise Green Communities Criteria |
| | U.S. Green Building Council's LEED-H |
| | U.S. Green Building Council's LEED-H Midrise |
| | U.S. Green Building Council's LEED-NC |
| | LEED for Existing Buildings: Operations & Maintenance |
| | ENERGY STAR Certification |
| | EarthCraft House |
| | EarthCraft Multifamily |
| | Earth Advantage New Homes |
| | Greenpoint Rated New Home |
| | Greenpoint Rated Existing Home (Whole House or Whole Building label) |
| x | National Green Building Standard (NGBS) |
| | Passive Building Certification or EnerPHit Retrofits certification from the Passive House Institute US (PHIUS), International Passive House Association, or the Passive House Institute |
| | Living Building Challenge Certification from the International Living Future Institute |
| | Other (Specify): |

APP001001

2619   984
DEEDS, Book A Page
OMB Control Number: 2502-0029
Expiration Date: 04/30/2020

Each Green Standard establishes milestones and/or performance levels to be met and procedures to evidence successful completion or achievement of the milestones or levels of performance. Lender or HUD may request from time to time and Borrower shall provide status reports of the completion or achievement of the milestones or levels of performance. When all requirements are met the Borrower shall provide the Lender and ensure that HUD receives evidence satisfactory to HUD of the achievement of the selected Green Standard. When such achievement is contingent on completion of construction, repairs or alterations, then evidence, as defined by the Green Standard, that the completion of work is consistent with the Green Standard must be provided to Lender and HUD within three months of the completion of work.

### 3. 1-100 ENERGY STAR® Score

After, and in addition to, meeting the selected Green Standard, Borrower agrees to pursue, achieve and maintain a minimum score of 75 or better on the 1-100 ENERGY STAR® score, using a Statement of Energy Performance from EPA's Portfolio Manager®. Borrower agrees that each score shall be verified in writing by the independent conclusion of a Qualified Energy Professional and promptly provided to Lender and HUD. When achievement of the Green Standard is contingent on completion of construction, the time when the first SEP must be delivered varies as follows:

(a) For new construction or substantial rehabilitation projects, the required ENERGY STAR® score shall be provided to HUD not later than 15 months following the achievement of sustaining occupancy.

(b) For projects acquired or refinanced under Section 223(f) of the National Housing Act with repairs and alterations, the required ENERGY STAR® score shall be provided to HUD not later than 15 months following completion of the repairs and alterations.

### 4. Borrower's Obligation to Maintain Energy Performance after Initial Achievement

After meeting the requirements of Sections 2 and 3 above, evidencing the achievement of the selected Green Standard and the first SEP, Borrower agrees to provide to HUD annually on the anniversary date of the first SEP, without request, evidence of the continuing energy performance of the property by submitting an SEP, each prepared or verified by a Qualified Energy Professional. Borrower covenants and agrees to achieve a score of 75 or better on each SEP. If and when HUD enables submission of machine readable SEPs then the HUD Custom SEP shall be provided. If and when the utility provider(s) for the Project deliver whole building utility consumption data directly to Portfolio Manager® by means of automatic electronic data transfer protocols, then the resulting SEP for the Project does not require verification by a Qualified Energy Professional.

APP001002

OMB Control Number: 2502-0029
Expiration Date: 04/30/2020

## 5. Projects of Less than 20 Units

For Projects of less than 20 units, the Borrower has elected and hereby agrees to diligently pursue and achieve the Green Standard indicated above, but the Borrower is exempt from requirements to provide an SEP and to evidence an ENERGY STAR® Score of 75 or more.

**BORROWER**

D4OP LLC,
a Texas limited liability company

By: _____
        Timothy Barton, President

I, _Bella D Khusal_____ the undersigned, a Notary Public in and for said County in said State hereby certify that on this the _14_ day of _January_____, 2021_ before me personally appeared Timothy Barton to me personally known (or proved to me on the basis of satisfactory evidence), and who, after being duly sworn, acknowledged himself to be the President of D4OP LLC, a Texas limited liability company, and that being informed of the contents of the instrument, he as such President and with full authority to so do, did execute the foregoing instrument voluntarily for and as the act of said limited liability company.
Witness my hand and official seal or stamp.

_____
Notary Public
My commission expires: 09|24|2022

> Bella D Khusal
> My Commission Expires
> 09/24/2022
> ID No. 131734480

Rider to Regulatory Agreement    Achievement of Green Standards    Page **4** of **4**

APP001003

# EXHIBIT A-69

APP001004



**SOUTHERN**
**PROPERTIES CAPITAL**

1603 LBJ Freeway, Suite 800
Dallas, Texas 75234

November 3, 2022

Mr. Courtney C. Thomas
Brown Fox    LLC
8111 Preston Road
Suite 300
Dallas, Texas 75225

     Re:    SEC v. Timothy Barton, et al; Civil Action No. 3:22-CV-2118X (Parc at Opelika)

Dear Mr. Thomas:

This letter is written to you in your capacity as Receiver in the referenced case. Southern Properties Company Ltd. ("Lender") is the lender to D4OPM, LLC and One MFD4, LLC (collectively, "Pledgor") in connection with Parc at Opelika, an apartment complex in Opelika, Alabama ("Parc at Opelika").

Lender made a loan to Pledgor in the amount of $5,129,000.00 ("Mezzanine Loan"). The Mezzanine Loan, evidenced by the attached Promissory Note from Pledgor to Lender, is secured by a Pledge and Security Agreement with Assignment of Rights ("Pledge") executed by Pledgor on January 13, 2021, pledging 100% of the membership interest in the Company, attached hereto. Pursuant to the attached Letter Agreement, Lender has the right to acquire the membership interests of D4OP, LLC ("Company"), the owner of Parc at Opelika.

Parc at Opelika is subject to a first mortgage loan ("Mortgage Loan") in the amount of $23,661,300.00 in favor of Greystone Funding Company LLC ("Greystone"), which loan is insured by the US Department of Housing and Urban Development ("HUD"). The Mortgage Loan, as evidenced by a U.S. Department of Housing and Urban Development Regulatory Agreement for Multifamily Projects ("Regulatory Agreement") and a Note ("Note"), both dated January 1, 2021, is secured by a Multifamily Deed of Trust, Assignment of Leases and Rents and Security Agreement ("Deed of Trust," collectively with the Regulatory Agreement and Note referred to as the "Mortgage Documents"). The terms of the Mortgage Documents allow for an assumption of the loan, subject to the approval of both Greystone and HUD. As you know, construction is not complete, and

APP001005

Mr. Courtney C. Thomas
November 2, 2022
Page 2

additional draws under the Mortgage Loan will need to be made. Once construction is complete and all costs are paid and certified, the Mortgage Loan will be eligible for final endorsement.

While we understand that you have been required to review much information in a short time, it is important that we address how the draws will be reviewed and funded. The current proceedings and your appointment as Receiver violate the Mortgage Documents, and we need to work with Greystone and HUD to allow this project to move forward.

Please contact Mark Cooper (469) 522-4390 at your earliest convenience. Thank you for your help.

Very truly yours,

**SOUTHERN PROPERTIES CAPITAL LTD.**


By:      _____
Name:  _____
Title:   _____


cc:    Enoch Investments, LLC
       TRWF LLC
       JMJAV, LLC
       D4FR, LLC
       JMJ Development, LLC

APP001006

# EXHIBIT A-70

APP001007



# MULTIFAMILY ACCELERATED PROCESSING (MAP) Guide

## Revision March 19, 2021

## Office of the Assistant Secretary for Housing–

## FHA Commissioner

Public reporting burden for this collection of information is estimated to average 323.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  The information is being collected for consideration of the endorsement for insurance by the Secretary or in consideration of the consent of the Secretary to the transfer of the mortgaged property or the sale and conveyance of the mortgaged property by the Secretary, and in order to comply with the requirements of the National Housing Act.  The information will be used by HUD to ensure that viable projects are developed. This agency may not collect this information, and you are not required to complete this form, unless it displays a valid OMB control number.

**Privacy Act Notice:**  The United States Department of Housing and Urban Development, Federal Housing Administration, is authorized to solicit the information requested in the form by virtue of Title 12, United States Code, Section 1701 seq., and regulations promulgated thereunder at Title 12 Code of Federal Regulation.  While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

OMB Number:  2502-0541, Expiration Date:  12/31/2023

**OMB Approval No. 2502-0001**- HUD-92417; **OMB Approval No. 2502-0005** – HUD-92001B; **OMB Approval No. 2502-0009** – HUD 11; **OMB Approval No. 2502-0010** – HUD-92457; **OMB Approval No. 2502-0011** – HUD-92437; HUD-92441; HUD-92442; HUD-92442A; HUD-2880; **OMB Approval No. 2502-0013** – HUD-935.2A; **OMB Approval No. 2502-0016** – HUD-92023; **OMB Approval No. 2502-0018** – HUD-92464; **OMB Approval No. 2502-0028** – HUD-92448; **OMB Approval No. 2502-0029** – HUD-2010, HUD-92013, HUD-92013 SUPP, HUD-92264, HUD-92264T, HUD-92264A, HUD-92273, HUD-92274, HUD-92326, HUD-92329, HUD-92331, HUD-92415, HUD-92447, HUD-92452, HUD-92485, HUD-2880, HUD-92466, HUD-92466R-1, HUD-92466 R-2, HUD-92466 R-3; **OMB Approval No. 2502-0044** – FHA-2205A, HUD-2328, HUD-92330A; **OMB Approval No. 2502-0057** – HUD-3433, HUD-3434, HUD-3435; **OMB Approval No. 2502-0097** – HUD-92403; **OMB Approval No. 2502-0112** – HUD-92330; **OMB Approval No. 2502-0118** – HUD-2530; **OMB Approval No. 2502-0305** – HUD-9832, HUD-9839B, HUD-9839C; **OMB Approval No. 2502-0468** – FHA-3259; **OMB Approval No. 2502-0470** – HUD-2554, HUD-92476A; **OMB Approval No. 2502-0505** – Capital Needs Assessment CNA e Tool; **OMB Approval No. 2502-0541** – MAP Guide; **OMB Approval No. 2502-0598** - Multifamily Closing Document PRA collection; **OMB Approval No. 2502-0618** - HUD-5960, HUD-5985; **OMB Approval No. 2506-0202** - HUD Environmental Review Online System (HEROS); **OMB Approval No. 2060-0347** – Portfolio Manager (EPA) Related to energy usage and consumption characteristics

1

APP001008

To return to this page after clicking a link, press **ALT + Back Arrow**

# Table of Contents

**Chapter 1    Introduction** ....................................................................................................**1-1**

1.1      Multifamily Accelerated Processing Guide ................................................. 1-1

1.2      Purposes of MAP.......................................................................................... 1-1

1.3      Brief Summary of MAP.................................................................................. 1-2

    1.3.1    Lender Qualifications and Monitoring ................................................. 1-2

    1.3.2    Programs Covered by MAP.................................................................... 1-3

    1.3.3    Application Processing ......................................................................... 1-3

    1.3.4    Construction Responsibilities .............................................................. 1-3

    1.3.5    Servicing ............................................................................................... 1-3

1.4      Regulations, Policies, and the MAP Guide................................................... 1-4

1.5      Workload Management................................................................................. 1-5

**Chapter 2    Lender Qualifications and Practices** .................................................................**2-1**

2.1      Introduction ................................................................................................. 2-1

2.2      HUD Approval of Lenders ............................................................................. 2-2

2.3      Lender Standards .......................................................................................... 2-3

2.4      Loan Consultants, Correspondents, or Mortgage Brokers .......................... 2-4

2.5      Underwriting and Construction Administration .......................................... 2-4

    2.5.1    Underwriter Responsibilities................................................................ 2-4

    2.5.2    Construction Administrator Duties ...................................................... 2-5

    2.5.3    Underwriting and Construction– HUD's Role........................................ 2-5

    2.5.4    Electronic Communications.................................................................. 2-6

2.6      Identity of Interest, Conflicts of Interest ..................................................... 2-6

    2.6.1    Introduction.......................................................................................... 2-6

    2.6.2    Definitions ............................................................................................ 2-7

    2.6.3    Identity of Interest - General................................................................ 2-8

    2.6.4    Specific Business Conflicts.................................................................... 2-9

    2.6.5    Disclosing Identities of Interest............................................................ 2-13

    2.6.6    Certification.......................................................................................... 2-14

    2.6.7    Syndicator or Investor Influence .......................................................... 2-14

2.7      New MAP Lender Application Package......................................................... 2-15

2.8      Limitations and Notices ............................................................................... 2-16

2.9      Quality Control, Records and Monitoring.................................................... 2-17

2.10    Underwriters – HUD Approval ..................................................................... 2-17

APP001009

| | | |
|---|---|---|
| 2.10.1 | MAP Underwriters | 2-18 |
| 2.10.2 | Chief Underwriters | 2-19 |
| 2.10.3 | Deputy Chief Underwriters | 2-21 |
| 2.11 | Underwriter Trainees | 2-21 |
| 2.12 | MAP Underwriter Transfers | 2-23 |
| **Chapter 3** | **Programs** | **3-1** |
| 3.1 | General Program Requirements | 3-1 |
| 3.1.1 | Regulatory Agreement | 3-1 |
| 3.1.2 | Single Asset Mortgagor Entity | 3-1 |
| 3.1.3 | Non-Recourse | 3-1 |
| 3.1.4 | Interest Rate | 3-1 |
| 3.1.5 | Amortization Plan | 3-2 |
| 3.1.6 | Loan Terms | 3-2 |
| 3.1.7 | Prepayment Restrictions | 3-2 |
| 3.1.8 | HUD Application Fee | 3-2 |
| 3.1.9 | HUD inspection Fee | 3-3 |
| 3.1.10 | Mortgage Insurance Premium | 3-3 |
| 3.1.11 | Lender Fees and Charges | 3-3 |
| 3.1.12 | Definition of Affordable Housing | 3-4 |
| 3.1.13 | Fair Housing and Equal Opportunity | 3-4 |
| 3.1.14 | Previous Participation | 3-5 |
| 3.1.15 | HUD's Fiscal Procedures | 3-5 |
| 3.1.16 | Bridge or Gap Financing | 3-5 |
| 3.1.17 | Secondary Financing | 3-5 |
| 3.1.18 | Statutory Loan Limits | 3-5 |
| 3.1.19 | Tax Increment Financing | 3-6 |
| 3.1.20 | Commercial Space | 3-6 |
| 3.1.21 | Military Impacted Areas | 3-6 |
| 3.1.22 | Student Housing | 3-7 |
| 3.1.23 | Real Estate Requirements | 3-7 |
| 3.1.24 | Transient Housing/Hotel Services Prohibition | 3-7 |
| 3.1.25 | Sustaining Occupancy | 3-7 |
| 3.1.26 | Operating Deficit | 3-7 |
| 3.1.27 | Short-Term Lease Premiums | 3-8 |
| 3.1.28 | Replacement Reserve | 3-8 |
| 3.1.29 | Developer Fees | 3-8 |

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page ii

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001010

3.1.30  Scattered Sites..................................................................................................3-8

3.1.31  Condominiums ...............................................................................................3-9

3.1.32  Environmental Review...................................................................................3-10

3.1.33  Underwritten Vacancy and Collection Loss...................................................3-10

3.1.34  Borrower's Certifications...............................................................................3-10

3.1.35  Waivers.........................................................................................................3-10

3.1.36  Opportunity Zones .......................................................................................3-10

3.2  New Construction/Substantial Rehabilitation Program Requirements.......................3-11

3.2.1  Properties .....................................................................................................3-11

3.2.2  Insurance for Construction and Permanent Loan Periods ..............................3-11

3.2.3  New Construction Transactions .....................................................................3-11

3.2.4  Substantial Rehabilitation Transactions.........................................................3-11

3.2.5  Cost Certification ..........................................................................................3-12

3.2.6  Federal Labor Standards................................................................................3-12

3.2.7  Assurance of Completion ..............................................................................3-12

3.2.8  Absorption Period .........................................................................................3-12

3.2.9  Marketing and Leasing Plan ..........................................................................3-13

3.2.10  Working Capital Escrow.................................................................................3-13

3.2.11  Furniture, Fixture, and Equipment in Cost Basis............................................3-13

3.2.12  Elderly Developments ...................................................................................3-13

3.2.13  Occupancy Preference...................................................................................3-13

3.2.14  Builder and Sponsor Profit and Risk Allowance (BSPRA) ...............................3-14

3.2.15  Energy Efficiency ..........................................................................................3-14

3.2.16  Cost vs. Value ...............................................................................................3-15

3.3  Section 221(d)(4)–New Construction and Substantial Rehabilitation.........................3-15

3.3.1  Criterion 1.....................................................................................................3-15

3.3.2  Criterion 3.....................................................................................................3-15

3.3.3  Criterion 4.....................................................................................................3-16

3.3.4  Criterion 5.....................................................................................................3-16

3.4  Section 220 Mortgage Insurance for Redevelopment Areas.....................................3-16

3.4.1  Eligible Areas ................................................................................................3-16

3.4.2  Commercial Facilities.....................................................................................3-17

3.4.3  Maximum Loan Ratios and DSCRs..................................................................3-17

3.4.4  Builder and Sponsor Profit and Risk Allowance (BSPRA) ...............................3-17

3.4.5  Sponsor Profit and Risk Allowance (SPRA) ....................................................3-17

3.4.6  Age Restriction Prohibited ............................................................................3-17

APP001011

| | | | |
|---|---|---|---|
| 3.5 | | Section 231 Mortgage Insurance | 3-17 |
| | 3.5.1 | Definitions | 3-18 |
| | 3.5.2 | Design and Amenities | 3-18 |
| | 3.5.3 | BSPRA or SPRA allowances | 3-18 |
| | 3.5.4 | Maximum Loan Ratios and DCRs | 3-18 |
| 3.6 | | Section 241(a) Mortgage Insurance for Supplemental Loans | 3-18 |
| | 3.6.1 | Eligibility | 3-18 |
| | 3.6.2 | Term | 3-19 |
| | 3.6.3 | Equity Requirement and Controlling Mortgage Criteria | 3-19 |
| | 3.6.4 | CNAs, Plans and Cost Estimates | 3-20 |
| | 3.6.5 | Davis-Bacon Act Applicability | 3-20 |
| | 3.6.6 | Insurance of Advances or Insurance upon Completion | 3-20 |
| | 3.6.7 | Environmental Review | 3-21 |
| | 3.6.8 | Working Capital and Operating Deficit Reserves | 3-21 |
| | 3.6.9 | Management Exhibits | 3-21 |
| | 3.6.10 | Multiple Lenders | 3-21 |
| | 3.6.11 | MIP | 3-21 |
| 3.7 | | Section 207/223(f) Refinance or Acquisition | 3-22 |
| | 3.7.1 | General Requirements | 3-22 |
| | 3.7.2 | Eligible Properties | 3-22 |
| | 3.7.3 | Ineligible properties | 3-23 |
| | 3.7.4 | Additional Section 223(f) Requirements | 3-23 |
| | 3.7.5 | Repairs | 3-23 |
| | 3.7.6 | Accessibility Requirements | 3-24 |
| | 3.7.7 | Age Restricted Projects | 3-24 |
| | 3.7.8 | Defaults, Claims, or Enforcement Referrals | 3-24 |
| | 3.7.9 | Labor Standards | 3-24 |
| | 3.7.10 | Prepayment Provisions and Prohibition | 3-25 |
| | 3.7.11 | Maximum Loan and Debt Service Coverage Ratios (DSCR) | 3-25 |
| | 3.7.12 | For Cash Out/Equity Out Proceeds When Repairs are Deferred | 3-26 |
| | 3.7.13 | Capitalization Rates and Determination of Value | 3-26 |
| | 3.7.14 | Statutory Loan Limits | 3-26 |
| | 3.7.15 | Cost Not Attributable to Dwelling Space | 3-27 |
| | 3.7.16 | Reserve for Replacements (RfR) | 3-27 |
| | 3.7.17 | Secondary Financing | 3-27 |
| | 3.7.18 | Commercial Space | 3-27 |

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page iv

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001012

To return to this page after clicking a link, press ALT + Back Arrow

3.7.19  Real Estate Requirements ................................................................................. 3-27

3.7.20  Mortgage Term .................................................................................................. 3-27

3.7.21  Firm Commitment Processing Only .................................................................. 3-27

3.7.22  Market Study ..................................................................................................... 3-28

3.7.23  Bond Financing Costs ........................................................................................ 3-28

3.8  Section 223(a)(7) Refinancing ................................................................................... 3-29

3.8.1  Eligibility ............................................................................................................ 3-29

3.8.2  Terms .................................................................................................................. 3-29

3.8.3  Controlling Mortgage Criteria ........................................................................... 3-29

3.8.4  Lender Fees ........................................................................................................ 3-29

3.8.5  Borrower Fees .................................................................................................... 3-30

3.8.6  CNA ..................................................................................................................... 3-30

3.8.7  Other Issues ....................................................................................................... 3-30

3.9  Property Insurance Requirements ............................................................................. 3-30

3.9.1  Insurance During Construction ......................................................................... 3-30

3.9.2  Permanent Insurance ........................................................................................ 3-31

3.9.3  Other Insurance Requirements ......................................................................... 3-33

3.10  Large Loan Risk Mitigation ....................................................................................... 3-33

3.10.1  Purpose ............................................................................................................. 3-33

3.10.2  Underwriting Ratios for Large Loans ............................................................... 3-33

3.10.3  Increased Reserves for Large Loans ................................................................ 3-34

3.10.4  Extended Lease-Up Period ............................................................................... 3-35

3.10.5  Higher Net Worth and Liquidity ...................................................................... 3-35

3.11  Age and Family Status Restrictions .......................................................................... 3-35

3.11.1  Restrictions Authorized by Statute .................................................................. 3-35

3.11.2  Age Restriction in Certain Projects and Programs .......................................... 3-37

3.11.3  Limitations on Services and Fees ..................................................................... 3-39

3.12  Tenant Relocation ..................................................................................................... 3-41

3.12.1  Relocation-General ........................................................................................... 3-41

3.12.2  Projects with Federal Assistance ..................................................................... 3-42

3.12.3  Projects with No Federal Assistance ................................................................ 3-43

3.12.4  Relocation Costs on HUD Forms ...................................................................... 3-44

Chapter 4  Application Processing .................................................................................... 4-1

4.1  Introduction/General ................................................................................................. 4-1

4.1.1  Approval of Lender's Reviewers ........................................................................ 4-1

4.2  Stages of Application ................................................................................................. 4-1

APP001013

| | | |
|---|---|---|
| 4.2.1 | Refinancing Applications (Sections 223(f), 223(a)(7)) | 4-1 |
| 4.2.2 | New Construction and Substantial Rehabilitation Programs | 4-2 |
| 4.2.3 | Appeals | 4-4 |
| 4.3 | Lender Processing | 4-4 |
| 4.3.1 | General Requirements | 4-4 |
| 4.3.2 | Processing | 4-5 |
| 4.4 | HUD Processing | 4-6 |
| 4.4.1 | General Requirements | 4-6 |
| 4.4.2 | Processing | 4-7 |
| 4.4.3 | Construction Period Responsibilities | 4-8 |
| 4.4.4 | Servicing | 4-8 |
| **Chapter 5** | **Architectural and Construction Analysis** | **5-1** |
| 5.1 | Eligible Construction Activities | 5-1 |
| 5.1.1 | New Construction | 5-1 |
| 5.1.2 | Substantial Rehabilitation | 5-1 |
| 5.1.3 | Class of Work | 5-2 |
| 5.1.4 | Defining Construction Activities | 5-3 |
| 5.1.5 | Eligible Construction by Program | 5-4 |
| 5.2 | Consultant Due Diligence Responsibilities | 5-5 |
| 5.2.1 | General | 5-5 |
| 5.2.2 | Qualifications for Lender's Consultants | 5-6 |
| 5.2.3 | Owner's Consultant Qualifications and Duties | 5-9 |
| 5.2.4 | Other Technical Specialists | 5-12 |
| 5.2.5 | HUD Approval of Qualifications | 5-12 |
| 5.3 | Requirements by Construction Activity and Program | 5-13 |
| 5.3.1 | General | 5-13 |
| 5.3.2 | Sections 220, 221, and 231 | 5-14 |
| 5.3.3 | Section 223(f) with Repairs and Alterations | 5-14 |
| 5.3.4 | Section 223(a)(7) with Repairs and Alterations | 5-18 |
| 5.4 | Architectural and Other Building Standards | 5-18 |
| 5.5 | Construction Contracts | 5-18 |
| 5.5.1 | New Construction and Substantial Rehabilitation | 5-18 |
| 5.5.2 | Section 223(f) Transactions | 5-19 |
| 5.6 | Streamlined Processing | 5-19 |
| 5.6.1 | Eligibility for Streamlined Processing | 5-19 |
| 5.6.2 | Section 223(f) with new LIHTC Applications | 5-20 |

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page vi

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001014

5.6.3   Documentation at Firm Commitment ................................................................. 5-22

5.6.4   Requirements for Issuing a Firm Commitment ................................................ 5-23

5.6.5   Modifications to the Firm Commitment ............................................................ 5-23

5.6.6   Risks Related to Deferred Document Submission ........................................... 5-23

5.7   New Construction Processing through Firm Commitment .......................................... 5-24

5.7.1   Concept Meeting ........................................................................................... 5-24

5.7.2   Pre-Application ............................................................................................... 5-25

5.7.3   Firm Commitment Application ........................................................................ 5-26

5.7.4   Special Considerations for Industrialized Housing ......................................... 5-29

5.8   New Construction Processing through Initial Endorsement ....................................... 5-30

5.8.1   Plans and Specifications Revisions ............................................................... 5-30

5.8.2   Major Changes ............................................................................................... 5-30

5.8.3   Construction Documents ............................................................................... 5-31

5.8.4   Recommendation for Initial Endorsement ...................................................... 5-32

5.8.5   Distribution of Drawings and Specifications .................................................. 5-32

5.8.6   Early Start of Construction ............................................................................ 5-33

5.9   Substantial Rehabilitation Processing through Initial Endorsement .......................... 5-35

5.9.1   Concept Meeting ........................................................................................... 5-35

5.9.2   Pre-Application ............................................................................................... 5-35

5.9.3   Firm Commitment Application ........................................................................ 5-37

5.9.4   Firm Commitment to Initial Endorsement ...................................................... 5-38

5.10   Standard Processing for Section 223(a)(7) and 223(f) ............................................. 5-38

5.10.1   Architectural Standards ................................................................................. 5-39

5.10.2   Concept Meetings ........................................................................................ 5-39

5.10.3   Capital Needs Assessment .......................................................................... 5-39

5.10.4   Lender's Review of Costs ............................................................................. 5-40

5.10.5   Certification .................................................................................................. 5-40

5.10.6   Firm Commitment ........................................................................................ 5-41

5.10.7   Time for Completion of Repairs ................................................................... 5-41

5.10.8   Escrow Agreement for Deferred Repairs ..................................................... 5-41

5.10.9   Completion of Repairs and Alterations ........................................................ 5-43

5.11   Processing Section 241(a) Supplemental Loans ...................................................... 5-43

5.11.1   Supplemental Loan for New Construction .................................................... 5-43

5.11.2   Supplemental Loan for Existing Structures .................................................. 5-43

5.12   Cost Estimating for Lenders ..................................................................................... 5-44

5.12.1   Estimation Method ....................................................................................... 5-44

APP001015

To return to this page after clicking a link, press ALT + Back Arrow

Table of Contents

Go to Table of Contents

| | | |
|---|---|---|
| 5.12.2 | Cost Categories | 5-45 |
| 5.12.3 | Allowances and Fees | 5-47 |
| 5.12.4 | Builder's and Sponsor's Profit and Risk Allowance (BSPRA) | 5-50 |
| 5.12.5 | Construction Time | 5-50 |
| 5.13 | CNAs are Required for All Applications | 5-51 |
| 5.14 | Firm Commitment Cost Package | 5-51 |
| 5.14.1 | Detailed Cost Estimate | 5-51 |
| 5.14.2 | Substantial Rehabilitation Costs | 5-54 |
| 5.14.3 | Refinance/Acquisition Costs | 5-55 |
| 5.15 | HUD Procedures | 5-56 |
| 5.15.1 | HUD Underwriting Assignment | 5-56 |
| 5.15.2 | CNA e-Tool and HUD Underwriting | 5-57 |
| 5.15.3 | Instructions and Training for Users | 5-58 |
| 5.15.4 | Consultation and Review Timeliness | 5-58 |
| **Chapter 6** | **Energy and Water Conservation** | **6-1** |
| 6.1 | Purpose and Summary Requirements | 6-1 |
| 6.1.1 | New Construction and Substantial Rehabilitation Standards | 6-1 |
| 6.1.2 | Incentives for Improved Building Performance | 6-1 |
| 6.2 | Statutes and Regulations | 6-1 |
| 6.3 | Green Building Certifications Specifications Recognized for Green MIP | 6-2 |
| 6.3.1 | New Construction and Substantial Rehabilitation Certifications | 6-2 |
| 6.3.2 | Certifications for Existing Buildings | 6-2 |
| 6.3.3 | Certifications Not Recognized by HUD | 6-2 |
| 6.4 | General Requirements for Green MIP | 6-3 |
| 6.4.1 | Continuing Performance Required under Green MIP | 6-3 |
| 6.4.2 | ENERGY STAR® Appliances and High-Performance Components | 6-4 |
| 6.4.3 | HUD Forms – Borrower's Certifications | 6-4 |
| 6.4.4 | Regulatory Agreement Rider 5 Required for Green MIP | 6-4 |
| 6.4.5 | Data Collection Plan | 6-4 |
| 6.4.6 | Real-Time Consumption Monitoring, Smart Home Tools | 6-5 |
| 6.4.7 | Design and Construction Team Qualifications | 6-5 |
| 6.4.8 | Energy Professionals Qualifications | 6-6 |
| 6.4.9 | Energy Modeling and Modeling Software | 6-7 |
| 6.4.10 | Change Orders Modifying Energy Measures | 6-7 |
| 6.5 | Requirements for Section 223(a)(7) Applications | 6-7 |
| 6.5.1 | Existing Green MIP Mortgages | 6-8 |

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page viii

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001016

6.5.2    Proving Continuing Performance Under ENERGY STAR® Existing Building Certification ................................................................................................ 6-8

6.5.3    Delivery of ENERGY STAR® Existing Building Certification ..................... 6-8

6.5.4    Recording Baseline Data - CNA ................................................................ 6-8

6.6    Green MIP Requirements for Section 223(f) Applications ............................... 6-9

6.6.1    Properties with Previously Earned Certifications ..................................... 6-9

6.6.2    Newly Built Properties with No Prior Certification ................................... 6-9

6.6.3    Existing Properties with No Prior HUD Recognized Green Building Certification ............... 6-10

6.7    Green MIP Requirements for Sections 220, 221(d)(4), 231-New Construction, Sub-Rehab ................................................................................................... 6-13

6.7.1    ENERGY STAR® Appliances and Systems Required ............................... 6-13

6.7.2    Project Architect's Green MIP Responsibilities ..................................... 6-13

6.7.3    Recording Baseline Data-CNA ................................................................ 6-13

6.8    Green MIP Requirements for Section 241(a) ................................................. 6-14

6.9    Underwriting Owner's Utility Cost as Part of Operating Expenses ................ 6-14

6.9.1    Methods for Underwriting Owner's Utility Costs Changes ..................... 6-15

6.9.2    Underwriting Owner Utility Operating Expense for New Projects ........... 6-15

6.9.3    CAUTION: Changed Energy Use Not Proportionate to Resulting Change in Cost ............... 6-15

**Chapter 7    Valuation & Market Analysis** ................................................................... **7-1**

7.1    Introduction ................................................................................................. 7-1

7.2    Selection of Appraisers and Market Analysts ............................................... 7-2

7.3    Appraiser and Market Analyst Qualifications ............................................... 7-3

7.3.1    Appraiser Qualifications ........................................................................ 7-3

7.3.2    Market Analyst Qualifications ............................................................... 7-3

7.4    Valuation Reviews of Third-Party Reports .................................................... 7-4

7.5    Content and Format of the Market Study ..................................................... 7-4

7.5.1    Purpose and Focus of the Study ............................................................ 7-4

7.5.2    Effective Date ....................................................................................... 7-5

7.5.3    Forecast Period for Market Study .......................................................... 7-6

7.5.4    Project Rents Used in Market Study ....................................................... 7-6

7.5.5    HUD as an Intended User ...................................................................... 7-6

7.5.6    Executive Summary ............................................................................... 7-6

7.5.7    Description of the Proposed Project ....................................................... 7-7

7.5.8    Primary Market Area ............................................................................. 7-8

7.5.9    Economic Context ................................................................................. 7-8

7.5.10    Demographic Analysis ......................................................................... 7-9

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page ix

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001017

| | | |
|---|---|---|
| 7.5.11 | Current Housing Market Conditions | 7-9 |
| 7.5.12 | Rental Units in the Pipeline | 7-10 |
| 7.5.13 | Demand Estimate and Analysis | 7-11 |
| 7.5.14 | Findings and Conclusions | 7-13 |
| 7.5.15 | Guidance for Income-Restricted Projects | 7-14 |
| 7.5.16 | Data, Estimates, and Forecasts | 7-14 |
| 7.6 | Appraisal Requirements | 7-14 |
| 7.6.1 | Effective Date | 7-15 |
| 7.6.2 | Brevity | 7-15 |
| 7.6.3 | Complex or Unusual Appraisal Assignments | 7-15 |
| 7.6.4 | HUD Forms to Include in the Report | 7-15 |
| 7.6.5 | USPAP Jurisdictional Exception Rule | 7-16 |
| 7.6.6 | Occupancy Percentage | 7-16 |
| 7.6.7 | Sections 220, 221(d)(4), and 231 | 7-16 |
| 7.6.8 | Section 223(f) | 7-17 |
| 7.6.9 | Reconciliation of the Approaches to Value | 7-18 |
| 7.6.10 | Section 231 Substantial Rehabilitation | 7-18 |
| 7.6.11 | Remaining Economic Life (REL) | 7-18 |
| 7.6.12 | Confidentiality Rule of USPAP | 7-20 |
| 7.6.13 | Appraiser's Certification | 7-20 |
| 7.6.14 | Inspection of the Subject and Comparables | 7-20 |
| 7.6.15 | Required Appraisal Report Exhibits | 7-21 |
| 7.6.16 | Market Analysis | 7-21 |
| 7.7 | Estimating Project Income | 7-22 |
| 7.7.1 | Rental Estimates | 7-22 |
| 7.7.2 | Adjustments | 7-22 |
| 7.7.3 | Final Rent Estimate | 7-22 |
| 7.7.4 | LIHTC and/or Bond Financed Projects | 7-23 |
| 7.7.5 | Trending of Rents | 7-23 |
| 7.7.6 | Equipment Included in Rent | 7-23 |
| 7.7.7 | Occupancy/Vacancy and Collection Losses | 7-23 |
| 7.7.8 | Project Rent Concessions | 7-24 |
| 7.7.9 | Occupancy | 7-24 |
| 7.7.10 | Utilities/Services | 7-24 |
| 7.7.11 | Project Location, Amenities, and Other Factors | 7-25 |
| 7.7.12 | Other Income | 7-25 |

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page x

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001018

7.7.13   Limited Waiver of Commercial Income and Space Limits ................................ 7-28

7.7.14   Commercial Space Valuation ................................ 7-29

7.8      Project Operating Expenses, NOI ................................ 7-29

7.8.1    Purpose ................................ 7-29

7.8.2    Sources of Expense Data ................................ 7-30

7.8.3    General ................................ 7-31

7.8.4    Estimate of Operating Expenses by Units of Comparison ................................ 7-32

7.8.5    Expense Comparables ................................ 7-32

7.8.6    Expense Adjustments ................................ 7-33

7.8.7    Updating Procedures ................................ 7-33

7.8.8    Consistent Expense Line Items ................................ 7-34

7.8.9    Underwritten NOI and Program Guidance ................................ 7-34

7.9      Site Analysis ................................ 7-36

7.9.1    Analysis of Location ................................ 7-36

7.9.2    Specific Location ................................ 7-36

7.9.3    Civic, Social, and Commercial Centers ................................ 7-36

7.9.4    Transportation ................................ 7-37

7.9.5    Special Hazards and Nuisances ................................ 7-37

7.9.6    Parking Facilities ................................ 7-37

7.9.7    Site Suitability ................................ 7-37

7.9.8    Land/Site Valuation ................................ 7-38

7.9.9    Warehousing of "Excess" Land Area ................................ 7-39

7.10     Pre-Application for 220, 221(d), and 231 ................................ 7-40

7.10.1   Lender's Responsibilities ................................ 7-40

7.11     Firm Commitment for 220, 221(d), and 231 (New Construction) ................................ 7-41

7.11.1   Lender's Responsibilities ................................ 7-41

7.11.2   HUD Review ................................ 7-42

7.12     Firm Commitment for 223(f) ................................ 7-42

7.12.1   Lender's Responsibilities ................................ 7-42

7.13     Substantial Rehabilitation for 220, 221(d)(4), and 231 ................................ 7-43

7.13.1   General ................................ 7-43

7.13.2   Completing Form HUD-92264 ................................ 7-43

7.13.3   Applicable Approaches for "As Is" Value ................................ 7-44

7.13.4   Valuation for 220 and 221(d)(4) ................................ 7-44

7.13.5   Valuation for Section 231 Substantial Rehabilitation ................................ 7-45

7.13.6   Valuation for RAD Transactions ................................ 7-45

APP001019

To return to this page after clicking a link, press **ALT + Back Arrow**

7.13.7 Contingency Reserves ................................................................................................ 7-46

7.13.8 Interest During Construction ..................................................................................... 7-46

7.13.9 Inspection Fee .......................................................................................................... 7-46

7.13.10 Offsite Costs ............................................................................................................. 7-46

7.13.11 Rehabilitation Cost not Attributable to Residential Use ........................................... 7-46

7.13.12 Developer's Fee, when Applicable ............................................................................ 7-46

7.13.13 Exclusions to Estimated Replacement Cost .............................................................. 7-47

7.14     Calculating Operating Deficits .................................................................................. 7-47

7.14.1 Estimate of a Project's Operating Deficit .................................................................. 7-47

7.15     Leaseholds/Ground Leases ....................................................................................... 7-49

7.15.1 Definitions ................................................................................................................ 7-50

7.15.2 Legal Requirements .................................................................................................. 7-51

7.15.3 Lease Payments (Ground Rent) ................................................................................. 7-53

7.15.4 Valuation of the Leasehold Estate ............................................................................ 7-54

7.15.5 Rehabilitation of an Existing Project ......................................................................... 7-55

7.15.6 Maximum Mortgage Amount for Criterion 3 ............................................................ 7-55

7.15.7 Fee-Joinders ............................................................................................................. 7-55

7.16     Tax Abatement Procedures ....................................................................................... 7-57

7.16.1 General Comments and Exceptions ........................................................................... 7-57

7.16.2 Full Term Tax Abatement .......................................................................................... 7-57

7.16.3 Partial Term or Variable Tax Abatement ................................................................... 7-58

7.16.4 Deferral of Real Estate Taxes .................................................................................... 7-60

7.17     Project-Based Section 8 and LIHTC ........................................................................... 7-60

7.17.1 For Section 223(f) ..................................................................................................... 7-60

7.17.2 Fee Income ............................................................................................................... 7-61

7.17.3 Income Limits ........................................................................................................... 7-61

7.17.4 Expenses/Fees .......................................................................................................... 7-62

7.18     Appraisal Review Policy and Requirements ............................................................... 7-62

7.18.1 Scope of Work ........................................................................................................... 7-62

7.18.2 Jurisdictional Exception Rule ..................................................................................... 7-63

7.18.3 Record Keeping Rule ................................................................................................. 7-63

7.18.4 Loan Committee ........................................................................................................ 7-63

7.18.5 Workload Sharing ...................................................................................................... 7-63

7.18.6 Consultations with Other Staff .................................................................................. 7-64

7.18.7 Environmental Processing ......................................................................................... 7-64

7.18.8 Technical Appraisal Review Requirements ................................................................ 7-64

APP001020

| | | |
|---|---|---|
| 7.18.9 | Documentation of the Appraisal Review | 7-65 |
| **Chapter 8** | **Mortgage Credit** | **8-1** |
| 8.1 | Introduction | 8-1 |
| 8.2 | Borrower Types – Single Asset Borrower Entity | 8-1 |
| 8.3 | Reviewing Principals and Other Parties in Control | 8-2 |
| 8.3.1 | Determining Principals and Who is in Control | 8-2 |
| 8.3.2 | Underwriting Active Principals and Those with Control | 8-3 |
| 8.3.3 | Previous Participation Certification Requirements | 8-5 |
| 8.3.4 | Nonprofit Principals | 8-9 |
| 8.3.5 | Foreign National Participation in FHA-Insured Multifamily Programs | 8-10 |
| 8.3.6 | Definition of Principal for Regulatory Agreement Section 50 | 8-11 |
| 8.4 | Investigating Credit and Character | 8-12 |
| 8.4.1 | Use of Credit Reports and Credit Investigation | 8-12 |
| 8.4.2 | Lender's Review of the Credit Report | 8-13 |
| 8.4.3 | Delinquent Federal Debt, Judgments and Pending Litigation | 8-13 |
| 8.4.4 | Trade and Credit References | 8-14 |
| 8.4.5 | Rejection Due to Unacceptable Character and Credit | 8-14 |
| 8.5 | Evaluating Financial Capacity | 8-15 |
| 8.5.1 | Financial Statement Analysis | 8-15 |
| 8.6 | Required Prior Credit Approval of Principals/Borrowers | 8-22 |
| 8.6.1 | FHA Insured Balances Greater than $500 Million | 8-22 |
| 8.6.2 | Principal Types | 8-23 |
| 8.6.3 | Threshold | 8-23 |
| 8.6.4 | Threshold Applies to Current and Expected Balance | 8-23 |
| 8.6.5 | Effective Date and Duration | 8-23 |
| 8.6.6 | Lender Submission and Procedure | 8-23 |
| 8.7 | Secondary Financing | 8-24 |
| 8.7.1 | Public Sources | 8-24 |
| 8.7.2 | Private Sources – Section 223(f) | 8-25 |
| 8.7.3 | Private Source – New Construction/Substantial Rehab | 8-26 |
| 8.7.4 | Section 223(a)(7) Refinance Program | 8-26 |
| 8.7.5 | Condition for Repayment of Secondary Financing | 8-26 |
| 8.7.6 | Secured Public Secondary Financing Conditions | 8-27 |
| 8.7.7 | Unsecured Private Secondary Financing Conditions | 8-27 |
| 8.7.8 | Tax Credit Equity Bridge Loans | 8-28 |
| 8.8 | Application Exhibits and Responsibilities | 8-29 |

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page xiii

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001021

8.8.1    General Responsibilities of Lender's Underwriter ................................................. 8-29

8.8.2    Additional Exhibits Required of Project Participants ........................................... 8-30

8.8.3    Evaluating Nonprofit Sponsors and Borrowers .................................................. 8-31

8.8.4    Credit Review of a Nonprofit Sponsor and Borrower .......................................... 8-33

8.8.5    Nonprofit Developer Fees ................................................................................ 8-34

8.8.6    Consultant Fees .............................................................................................. 8-34

8.8.7    Establishing a Profit-Motivated Borrower Entity ............................................... 8-34

8.8.8    Lender's Review and Recommendation ............................................................ 8-35

8.8.9    Mortgage Credit Duties of HUD ...................................................................... 8-36

8.9    Mortgage Term and Amortization Commencement ................................................ 8-37

8.9.1    Sections 220, 221(d)(4), 241(a) and 231 Projects ............................................ 8-37

8.9.2    Section 207 Pursuant to 223(f) Projects .......................................................... 8-37

8.9.3    Section 223(a)(7) Projects .............................................................................. 8-37

8.10    Commitment Processing 220, 221(d), 231, 241(a) ................................................. 8-38

8.10.1    Mortgage Amounts and Cash Requirements ................................................. 8-38

8.11    Sections 223(a)(7) and 223(f) Firm Commitment Processing ................................. 8-40

8.11.1    Determining Mortgage Amounts, Cash Requirements, and Related Matters ..... 8-40

8.12    Firm Commitment Processing with Grants and Loans ............................................ 8-44

8.12.1    General ........................................................................................................ 8-44

8.12.2    Application for Mortgage Insurance ............................................................. 8-44

8.12.3    Grants and Loans from a Government Agency or Instrumentality .................... 8-45

8.12.4    Grants and Loans from a Non-Governmental Source ..................................... 8-46

8.13    Insurance Upon Completion ................................................................................ 8-47

8.14    Determining Cash Requirements for Completion .................................................. 8-48

8.15    Bond Financed Projects and Tax-Exempt Agency Loans ......................................... 8-51

8.15.1    Review of Financing Documents .................................................................. 8-51

8.15.2    Loan Rates .................................................................................................. 8-51

8.15.3    Tax-Exempt Loans and/or Bonds ................................................................. 8-52

8.15.4    Itemized Statement of Costs ........................................................................ 8-53

8.15.5    State and Local Tax-Exempt Financed Projects .............................................. 8-54

8.15.6    Pre-Cost Certification Conference Information .............................................. 8-54

**Chapter 9    Environmental Review and Requirements** ........................................... **9-1**

9.1    Introduction ....................................................................................................... 9-1

9.1.1    Legal Authorities, Guidance, Standards, and Documentation ........................... 9-1

9.1.2    Project Description, Aggregation, and Extent of Review ................................... 9-2

9.1.3    Levels of Environmental Review ...................................................................... 9-3

APP001022

To return to this page after clicking a link, press ALT + Back Arrow

| | | |
|---|---|---|
| 9.1.4 | Local, State, Tribal or Federal Requirements | 9-5 |
| 9.2 | Procedures | 9-6 |
| 9.2.1 | Lender Responsibilities and Limitations | 9-6 |
| 9.2.2 | HUD Responsibilities | 9-7 |
| 9.2.3 | Timing Considerations | 9-9 |
| 9.2.4 | Verifying Qualifications of Professionals | 9-10 |
| 9.2.5 | Consulting with Regional or Satellite Offices | 9-10 |
| 9.3 | HEROS Environmental Reports | 9-11 |
| 9.4 | Contamination and Toxic Substances | 9-12 |
| 9.4.1 | Phase I Environmental Site Assessment Requirements | 9-13 |
| 9.4.2 | Phase II Environmental Site Assessment Requirements | 9-15 |
| 9.4.3 | Remediation Response Planning | 9-17 |
| 9.4.4 | Remediation Plans with Complete Removal of Contamination | 9-18 |
| 9.4.5 | Remediation Plans with Incomplete Removal of Contamination | 9-19 |
| 9.4.6 | Monitoring Wells, Flushing Wells, and Testing Wells | 9-21 |
| 9.4.7 | Off-Site Contamination | 9-22 |
| 9.4.8 | Escrow | 9-22 |
| 9.4.9 | Waivers | 9-22 |
| 9.4.10 | LSTF Approvals and Reviews | 9-22 |
| 9.4.11 | Superfund Sites | 9-23 |
| 9.4.12 | Unacceptable Sites | 9-24 |
| 9.4.13 | Underground Storage Tanks Not Regulated by the LSTF | 9-24 |
| 9.5 | HUD Responsibilities when Projects Require Remediation | 9-25 |
| 9.5.1 | General Responsibilities | 9-25 |
| 9.5.2 | Projects with Complete Removal of Site Contamination | 9-25 |
| 9.5.3 | Projects with Incomplete Removal of Site Contamination | 9-26 |
| 9.5.4 | Insurance and Guarantee Requirements | 9-26 |
| 9.5.5 | Management, Coordination, and Communication | 9-26 |
| 9.6 | Environmental Laws and Authorities | 9-27 |
| 9.6.1 | Lead-Based Paint (24 CFR Part 35.115(a)) | 9-27 |
| 9.6.2 | Asbestos (24 CFR 50.3(i)) | 9-29 |
| 9.6.3 | Radon (Supersedes ML 2013-07) | 9-32 |
| 9.6.4 | Historic Preservation (24 CFR 50.4(a)) | 9-36 |
| 9.6.5 | Floodplain Management (24 CFR 50.4(b)(2)) | 9-40 |
| 9.6.6 | Flood Insurance (24 CFR 50.4(b)(1)) | 9-44 |
| 9.6.7 | Wetlands Protection (24 CFR 50.4(b)(3)) | 9-45 |

MAP Guide, March 2021
Go to beginning of Table of Contents

Table of Contents
Page xv

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001023

5.  Any restrictive covenants in the secondary financing must expire upon foreclosure of the HUD insured loan's mortgage or deed to trust. However, when the source of the secondary financing is HOME program funds, HUD will permit the Rider/Restrictive Covenant Agreement to be modified such that the restrictive covenants will survive foreclosure of the FHA insured security instrument. Additionally, state lending programs that provide secondary financing on terms similar to those under the HOME Program may also be considered under this policy on a case by case basis.

## 8.7.2    Private Sources – Section 223(f)

**A.** Secondary financing from a private lending source must be evidenced by a promissory note (form HUD-92223M Surplus Cash Note or form HUD-92908M Residual Receipts Note) that may not be modified or altered in any manner without the written consent of HUD. If secured by the Project, the private loan must be subordinated to HUD-insured loan with form HUD-92907M Subordination Agreement – Private.

**B.** Private secondary financing is permitted to offset mortgageable and nonmortgageable costs up to the difference between the loan-to-value percentage and a maximum combined debt of 92.5% of the fair market value (FMV), **except** in instances when private secondary financing is combined with federal, state or local governmental agency secondary financing. (In these instances, the governmental loan, in aggregate with the HUD first and private second, may exceed the property's FMV.) The 92.5% limitation on combined debt does not apply to Low Income Housing Tax Credit transactions, in which primary and secondary debt together may equal but not exceed 100% of total development costs. (See Chapter 14 for details.)

**C.** Private secondary financing up to 92.5% total LTV (including both HUD-insured and private secondary financing) may be secured by a lien encumbering the real property.

**D.** Mezzanine financing is a subordinate loan usually secured by a pledge of ownership interests, rather than by a secondary lien on the real estate or an obligation of the Single Asset Mortgagor Entity. Mezzanine debt terms must be fully disclosed to and approved in writing by HUD. Any mezzanine debt that remains from a previous financing of the property is subject to the secondary financing guidance in this section. Payments on mezzanine financing may be made only from surplus cash, and the debt may not mature before the FHA insured loan. Mezzanine loan interest rates will typically be higher than that of the first mortgage but must be reasonably consistent with market rates for mezzanine debt. Additionally, the interest rate must not be so high that it jeopardizes the ownership stability of the property, or that the interest due cannot reasonably be expected to be repaid from surplus cash. Interest due or accruing on the mezzanine loan must be approved as reasonable by HUD.

**E.** In the event of nonpayment or default on the mezzanine debt, any transfer of an ownership interest in the Borrower entity or in its principals to the mezzanine Lender must have prior written approval by HUD, through the Transfer of Physical Assets (TPA) process. The mezzanine Lender may exercise no enforcement remedies against the real estate or against the Borrower entity during the term of the mezzanine loan, nor may the mezzanine Lender take action that would trigger a Transfer of Physical Assets (TPA) without HUD approval.

**NOTE: Project-specific exceptions or waivers to these policies for mezzanine financing must be approved in writing by HUD and documented in a HUD-2 waiver form.**

MAP Guide, March 2021
Go to beginning of Chapter 8

Chapter 8
Page 8-25

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001024

To return to this page after clicking a link, press **ALT + Back Arrow**

## 8.7.3          Private Source – New Construction/Substantial Rehab

**A.**    Private secondary financing is not permitted under Section 221(d)(4) or other new construction/substantial rehabilitation first mortgage programs.  The only exception to this consideration is Seller-financed secondary debt (aka seller take-back note).  The Seller-financed secondary debt must meet the follow criteria:

1.  The FHA loan to replacement cost ratio is less than 50% (80% loan ratio for tax credit applications) of mortgageable cost; and

2.  The Seller financed secondary debt is either:

    a.  An arms-length transaction; or

    b.  It involves an identity of interest transaction and the selling price of the land or building is not greater than the property's "as is" value."

3.  Seller-financed secondary debt must also meet all of the following:

    a.  It is an inferior cash flow debt, such that cumulative payments for that and any other subordinate debt must not exceed 75% of surplus cash, if available.

    b.  It is documented in a promissory note that is not recorded and not secured with a lien against the property; this prohibition on a lien does not apply to LIHTC transactions (see Chapter 14).

    c.  It does not contain any provision of foreclosure that would threaten the first mortgage.

    d.  It is subject to automatic re-subordination in any subsequent refinancing of the first mortgage; and

    e.  The subordinate debt does not have a balloon payment or maturity prior to maturity of the FHA-insured first mortgage.

## 8.7.4          Section 223(a)(7) Refinance Program

**A.**   For Section 223(a)(7) applications, secondary financing terms are governed by the SOA of the underlying insured mortgage but shall not be used directly or indirectly to provide funds for an equity takeout or a Transfer of Physical Assets.

## 8.7.5          Condition for Repayment of Secondary Financing

**A.** (Subordination Agreement – Public (form HUD-92420M) and Subordination Agreement – Private form HUD-92907M).  Required repayment of this and any other secondary debt, including interest, must be made solely payable cumulatively from up to 75% of available surplus cash.  Consider using form HUD-92223M or including the following language in the secondary financing promissory note, or otherwise ensure the transaction provides for the following:

*"So long as the Secretary of Housing and Urban Development or his/her successors or assigns, are the insurers or holders of the first mortgage on **(insert project name and FHA Project No.)**, the total payment(s) due under this Note, and all other secondary debt instruments shall be payable and shall not cumulatively exceed 75% of available surplus cash.  Non-project sources that are outside the Mortgaged Property may also be used to repay subordinate financing.  The term surplus cash is defined in the Regulatory Agreement dated **(insert date)** between HUD and **(insert name of Borrower)**.  The restriction on payment(s) imposed by this*

MAP Guide, March 2021
Go to beginning of Chapter 8

Chapter 8
Page 8-26

Bookmarked Version
Go to Acronym and Abbreviation List, Glossary, Index

APP001025

*paragraph shall not excuse any default caused by the failure of the maker to pay the indebtedness evidenced by this Note."*

**B.** This language does not need to be added to the Subordination Agreement – Public (form HUD-92420M) or the Surplus Cash Note (form HUD-92223M)

## 8.7.6    Secured Public Secondary Financing Conditions

**A.** A publicly financed subordinate loan must be made subject to the Subordination Agreement Public, HUD-92420M, which includes, among other provisions, the following terms:

1.  The Lender on the FHA-insured mortgage (first mortgage) consent to the placing of the subordinate lien and confirm that its existence does not create a basis for default on the insured first mortgage.

2.  The subordinate lender certifies that the subordinate loan documents do not contain a cross default provision or any right of foreclosure before the termination of the FHA-insured mortgage.

3.  The subordinate loan is assumable when a sale or transfer of physical assets occurs, and the insured first mortgage remains in place.

4.  The subordinate loan automatically terminates if HUD acquires title to the project by a deed in lieu of foreclosure.

5.  Repayment of the subordinate loan from Project Assets is limited to 75% Surplus Cash.

6.  Subordinate lender agrees to extend the subordinate loan under certain circumstances (e.g., insufficient surplus cash for repayment when due and payable).

**B.** Both the subordinate lien, as modified by the Subordination Agreement Public, HUD-92420M, and the insured first mortgage loan documents must be recorded prior to or on the day of closing. Though recordable closing documents are frequently recorded in advance of actual closing, the subordinate loan may not be funded until closing. See Chapter 19, Section 19.1.3.4 for details on closing arrangements.

## 8.7.7    Unsecured Private Secondary Financing Conditions

**A.** Terms of unsecured private Promissory Notes must reflect those provisions found in: form HUD-91710M, Residual Receipts Note [Non-profit Borrower], or form HUD-91712, Residual Receipts Note [Limited Dividend Borrower], or form HUD-92223M, Surplus Cash Note [Profit Motivated Mortgagors] based upon the type of Borrower; or Form *Residual Receipts Note* (form HUD-92908M), when Borrower's distributions are restricted through a *Residual Receipts Rider* to the *Regulatory Agreement.* See the Closing Chapter 19, Section 19.4.8.2 for further details.

1.  Form HUD-91710M, Residual Receipts Note (for Non-profit Mortgagors) and form HUD-91712M, Residual Receipts Note (for Limited Dividend Mortgagors).

    a.  Principal and interest shall be due and payable on or after the maturity date of the HUD-insured mortgage.

    b.  If the HUD-insured mortgage is prepaid in full, the holder of the residual receipts note has the right to declare the entire principal sum or any remaining balance including any accrued interest immediately due and payable.

APP001026

# EXHIBIT A-71

APP001027



]

| Borrower's Oath | U.S. Department of Housing | OMB Approval No. 2502-0598 |
|---|---|---|
| (For Residential Housing | and Urban Development | (Exp. 06/30/2017) |
| but not Section 232 Projects) | Office of Housing | |

Public Reporting Burden for this collection of information is estimated to average 0.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it displays a currently valid OMB control number. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

Date: October 1, 2017                                  Project No. 113-35683
                                   Project Name: Bellwether Ridge Apartments

To the U.S. Department of Housing and Urban Development (HUD):

(The definition of any capitalized term or word used herein can be found in this Borrower's Oath, the Regulatory Agreement between Borrower and HUD, the Note, and/or the Security Instrument.)

In accordance with the stated intent of Congress, HUD's regulations implementing the National Housing Act, and the Regulatory Agreement between Borrower and HUD, the undersigned hereby certifies under oath that so long as the Loan made pursuant to the Security Instrument is insured or held by HUD:

(1) That, to carry out the intent of Section 513 of the National Housing Act, as amended, no part of the Mortgaged Property will be rented for a period of less than thirty days or used for transient or hotel purposes, and said Mortgaged Property shall be used principally for residential use;

(2) That the Mortgaged Property will not be sold while the Loan insurance is in effect or the Security Instrument is held by HUD unless the purchaser files with HUD a like certification executed by such purchaser under oath;

(3) Borrower has not and will not enter into any agreement with any party other than Lender in conjunction with the Loan transaction that allows for perfection of any portion of the UCC Collateral through control under the UCC;

(4) That to Borrower's knowledge, there are no proposed change(s) of law, ordinance, or governmental regulation (proposed in a formal manner by elected or appointed officials) that, if enacted or promulgated after the commencement of construction/rehabilitation, would require a modification to the Project, and/or prevent the Project from being completed in accordance with the Drawings and Specifications dated March 24, 2017, executed by Borrower and <u>N.E. Construction, LLP</u> and referred to in the Construction Contract.

Each signatory below hereby certifies under oath that each of their statements and representations contained in this Borrower's Oath and all their supporting documentation thereto are true, accurate, and complete. This Borrower's Oath has

APP001028

2

been made, presented, and delivered for the purpose of influencing an official action of HUD in insuring the Loan, and may be relied upon by HUD as a true statement of the facts contained therein.

D4DS LLC,
a Texas limited liability company

By: _____
        Timothy Barton, President

Dated: <u>Effective as of October 1, 2017, Executed on  October      , 2017</u>

## <u>Warning</u>

**Any person who knowingly presents a false, fictitious, or fraudulent statement or claim in a matter within the jurisdiction of the U.S. Department of Housing and Urban Development is subject to criminal penalties, civil liability, and administrative sanctions.**

<u>NOTE:  THE FOREGOING CERTIFICATION MUST BE GIVEN UNDER OATH IN ACCORDANCE WITH STATE LAW REQUIREMENTS FOR TAKING AN OATH</u>.

APP001029

3

### Notary Acknowledgment for Borrower

County of _Dallas_ )
                    )ss.
State of _Texas_ )

Personally appeared before me this __11__ day of _October_ , 2017, Timothy Barton who, **after being duly sworn**, says that he is the President of D4DS LLC, a limited liability company organized and existing under the laws of the State of Texas and that he has authority to execute **under oath** and has so executed the above certification for and on behalf of such, and for himself.

_____
Notary Public

My commission expires: _July 21 2018_



SASKYA BEDOYA
Notary Public, State of Texas
My Commission Expires
July 21, 2018    [SEAL]

Previous editions are obsolete;          Borrower's Oath          HUD-92478M (06/14)
Replaces form FHA-2478 (06/66)

APP001030