# Exhibit A

# COMSTOCK

Wednesday, April 5, 2023

Cort Thomas
Brown Fox Law
8111 Preston Road, suite 300
Dallas, TX 75225

Re:     *Letter of Intent for 2999 Turtle Creek Dallas, Texas.*

To : Cort Thomas
Fox and Brown

      This letter of intent ("LOI") serves to communicate the non-binding intent of Seller (defined below) to sell and the non-binding intent of Purchaser (defined below) to purchase the real property and any improvements of the +/-**3 *acres in Dallas, Texas,*** generally in accordance with the terms set forth herein. If Seller accepts the terms as set forth in this LOI, please so indicate by executing the signature block below.

| | |
|---|---|
| PURCHASER: | **CHCI Asset Management, LC or its designated affiliate** |
| SELLER: | **Cortney Thomas Receivership of 2999 Turtle Creek.** |
| PURCHASE PRICE: | **$51,000,000**, Seller shall deliver the property free and clear of all encumbrances. |
| PROPERTY: | +/- **3** acre lot and two buildings and all contents located at **2999 Turtle Creek Blvd., Dallas, Texas**. |
| CONVEYANCE: | The Property shall be conveyed to Purchaser by Special Warranty Deed. Any and all rights held by the Seller or affiliates that directly pertain to the Property as well as all mineral rights and any rights to development plans completed for the property shall transfer to Purchaser. |
| EARNEST MONEY: | Within (**5**) calendar days of the execution of the contract, Purchaser shall place in escrow, to be held by the title company, the "Earnest Money Deposit", to Sendera Title (hereinafter "Escrow" and the "Title |

Page 1 of 4

1900 Reston Metro Plaza | 10TH Floor | Reston, VA 20190 | 703.230.1985 | comstockcompanies.com | NASDAQ:CHCI

Company"), an earnest money deposit (the "Deposit") in the amount of **Two Hundred Thousand Fifty ($250,000)** under the terms of the Contract. The Deposit shall be refundable until the end of the feasibility period. The Deposit shall be applied towards the Purchase Price.

TITLE COMPANY:        Sendera Title, 1800 Valley View Ln., Suite 160

TITLE AND SURVEY:     Seller shall furnish to Purchaser within **Ten (10)** days following the full execution of a Contract and the payment of the Deposit, at Seller's sole cost and expense, a Commitment for Title Insurance (the "Title Commitment") and an existing survey of the Property (the "Survey"). Purchaser shall have **Ten (10)** days following the date of receipt of the Title Commitment and the Survey (the "Title Review Period") in which to review the state of Seller's title to the Property. If the Title Commitment and/or Survey reflect or disclose any defect, exception or other matter affecting the Property that is unacceptable to Purchaser for any reason whatsoever then, prior to the end of the Title Review Period, Purchaser shall provide Seller with written notice of its objections (the "Title Defect Notice"). Seller shall have no obligation to remove or cure such objections. If within **Ten (10)** days following Seller's receipt of the Title Defect Notice the Seller fails to notify Purchaser in writing that it will cure all of the matters contained in the Title Defect Notice (the "Title Cure Notice"), then Purchaser may terminate the Contract at any time prior to (i) **Ten (10)** days after the date of the Title Cure Notice, (ii) the end of the Feasibility Period and/or Extended Feasibility Period, or (iii) the end of the Entitlement Period. If any or all of the exceptions are not approved and accepted by the Purchaser, Purchaser shall be entitled to a full refund of all Deposits.

FEASIBILITY PERIOD:   Purchaser shall have a period of **Thirty (30)** day(s) after the date of the Escrow Deposit in which to inspect the property, perform studies, rezone the property, and generally determine if the property is suitable for Purchaser's needs (the "Feasibility Period"). Prior to the end of the Feasibility Period, Purchaser may declare, in its sole discretion, the contract null and void, whereupon neither Seller nor Purchaser shall have any further obligations or liabilities to the other in connection with the transaction contemplated hereby. An additional **Two Hundred Thousand Fifty ($250,000)** deposit at the end of the feasibility period if the contract is not terminated at which time all deposits will be nonrefundable

Page 2 of 4

CLOSING:

Closing shall occur at the offices of the Title Company on that date which is **Thirty (30)** days after the expiration of the Feasibility Period.

EXCLUSIVITY:

The parties hereto agree that during the period commencing on the date hereof and ending on the earlier to occur of (i) the date that the parties execute and deliver the Contract, (ii) sixty (60) days from the execution of this letter, or (iii) written notification by Purchaser of its intention not to proceed, Seller shall not negotiate nor enter into any third-party agreement for a sale of the Property.

REMEDIES UPON
DEFAULT:

In the event Seller defaults, Purchaser's sole remedy is to enforce specific performance of the Contract.

In the event Purchaser defaults, Seller may elect, in its sole discretion, to terminate the Contract by giving written notice thereof to Purchaser, whereupon neither party shall have any further rights or obligations under the Contract, and Seller shall retain the Earnest Money, free of any claims by Purchaser, as liquidated damages.

COUNTERPARTS:

The parties agree that this letter agreement may be executed in multiple counterparts and that facsimile transmitted copies will be acceptable as if executed as original.

This Letter of Intent shall terminate without liability to any party upon the occurrence of any one of the following events: (a) all parties are unable to agree upon all terms, representations, covenants, warranties, conditions and provisions of the Contract, as to both form and substance, or evidenced by the execution of a definitive purchase and sale agreement (the "Contract") by the parties; or (b) either Purchaser or Seller submits, at any time prior to execution of a definite contract, written notification of its intent to abandon the proposed transaction.

The foregoing merely constitutes a possible structure for a potential transaction and does not constitute a binding agreement because it does not contain all matters upon which agreement must be reached in order for such a transaction to be consummated. A binding commitment with respect to the potential transaction outlined herein will result only from the mutual execution of a Contract.

Upon acceptance and approval of this Letter of Intent, along with final definition of the Property, Purchaser shall cause a draft Contract to be prepared and delivered to Seller by Buyer and both parties agree to move in good faith to execute a final agreement.

Page 3 of 4

Sincerely,

Chris Clemente
Chairman of the Board of Directors & Chief Executive
Officer

AGREED AND ACCEPTED as of
the __ day of _____, 2023:

By:_____
Name:_____
Title:_____

Page 4 of 4