**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § § | |
| Defendants, | § § | |
| HNGH TURTLE CREEK, LLC, | § § | |
| Relief Defendant. | § § § | |

**RECEIVER'S VERIFIED MOTION**
**TO APPROVE SETTLEMENT AGREEMENT**
**WITH HNGH TURTLE CREEK, LLC AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND .................................................................................................... 3

    A.    The Property........................................................................................... 3

    B.    The Bankruptcy Case............................................................................. 4

    C.    The Order to Enforce the Agreed Orders............................................... 6

    D.    The Receiver's Appointment and HNGH's Intervention in This Case .................. 7

    E.    The Receiver and HNGH's Disputes...................................................... 7

    F.    Mediation and Settlement with HNGH................................................... 9

III.  ARGUMENT.......................................................................................................... 9

    A.    Legal Standard ...................................................................................... 9

    B.    The Terms of the Settlement Agreement .............................................. 11

    C.    The Settlement Agreement is in the Best Interests of the Receivership Estate .... 12

        1.    Pursuit of the Appeal or Other Paths in the Bankruptcy Case
             Would Be Costly and Unlikely to Succeed.............................................. 12

        2.    Even if the Appeal is Successful, the Receivership Estate Will Still
             Owe Significant Obligations to HNGH as a Secured Lender.................. 13

        3.    A Settlement of the Receiver's Fraudulent Transfer Claims for
             $2.5 Million is a Fair and Equitable Result ............................................. 15

V.    CONCLUSION AND REQUEST FOR RELIEF............................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Ibarra v. Tex. Empl. Comm'n,*
    823 F.2d 873 (5th Cir. 1987) .................................................................................. 10

*Ritchie Capital Mgmt., L.L.C. v. Kelley*,
    785 F.3d 273 (8th Cir. 2015) .................................................................................. 10

*SEC v. Lincoln Thrift Ass'n*,
    577 F.2d 600 (9th Cir. 1978) .................................................................................... 9

*SEC v. Safety Fin. Serv., Inc.*,
    674 F.2d 368 (5th Cir. 1982) .................................................................................... 9

*SEC v. Stanford Int'l Bank Ltd.*,
    No. 3:09-CV-0298-N, 2015 WL 10818588 (N.D. Tex. Sept. 23, 2015) ................................. 10

*SEC v. Stanford Int'l Bank, Ltd.*,
    927 F.3d 830 (5th Cir. 2019) .................................................................................. 10


**Statutes**

TEX. BUS. & COMMERCE CODE § 24.009 ...................................................................... 15

Cort Thomas, the court-appointed Receiver in this case, moves the Court for an order: (1) approving the Receiver's settlement agreement (the "Settlement Agreement," attached as **Exhibit A**) with HNGH Turtle Creek, LLC ("HNGH"); and (2) lifting the stay of *In re 2999TC Acquisitions, LLC*, Case No. 21-31954 in the U.S. Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Case") for 2999TC Acquisitions, LLC ("2999TC") and HNGH to take all appropriate steps to resolve and close 2999TC's Bankruptcy Case.[1]  The Receiver has also filed a proposed order contemporaneously with this motion.  In support of this motion, the Receiver would respectfully show the Court as follows:

## I.    INTRODUCTION

On October 18, 2022, the Court entered its *Order Appointing Receiver* [Dkt. 29] (the "Receivership Order"), which named the undersigned as Receiver for the Receivership Entities[2] and directed the Receiver to take custody, control, and possession of all Receivership Property. Receivership Order ¶ 6(B).  The Receivership Order also empowers the Receiver to "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property" and to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities."  *Id.*  ¶¶ 6(G)–(H).  Specifically, the Receivership Order permits the

---

[1] The steps to resolve and close the Bankruptcy Case include, but are not limited to: (1) the Debtor and HNGH filing a stipulated dismissal in *2999TC Acquisitions, LLC v. HNGH Turtle Creek, LLC*, Case No. 3:22-cv-02186-X in the U.S. District Court for the Northern District of Texas (the "Appeal"); (2) the Debtor and HNGH filing a joint stipulated dismissal in *2999TC Acquisitions, LLC v. HNGH Turtle Creek, LLC*, Case No. 22-03061 in the U.S. Bankruptcy Court for the Northern District of Texas (the "Second Adversary Proceeding"); (3) HNGH withdrawing its motion for sanctions in the Bankruptcy Case [Bankruptcy Case, Dkt. 298]; and (4) the Debtor filing a motion for final decree, requesting the bankruptcy court to close the Bankruptcy Case.

[2] Capitalized terms used but not defined herein shall have the meanings provided in the Receivership Order.

1

Receiver to "seek, among other legal and equitable relief … avoidance of fraudulent transfers … and such other relief from this Court as may be necessary to enforce this Order." *Id.* ¶ 45.

This motion relates to the Receiver's efforts to resolve stayed litigation with HNGH in the Bankruptcy Case regarding the ownership and possession of real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219 (the "Property"), and to resolve potential future litigation against HNGH over alleged fraudulent transfers made by Receivership Entities to HNGH in connection with the Property. Pursuant to the Court's mediation order on February 10, 2023 [Dkt. 154], the Receiver and HNGH mediated their disputes regarding the Property before retired Chief Bankruptcy Judge Harlin D. Hale on March 10, 2023.

Through mediation, the parties agreed on the terms of the Settlement Agreement—a global resolution of all their disputes concerning the Property and payments made by Receivership Entities in connection with the Property—and were directed by the mediator to memorialize the agreement by drafting the Settlement Agreement and this motion. The parties finalized and signed the Settlement Agreement on April 13, 2023. Because the Receivership Order authorizes, empowers, and directs the Receiver to investigate and prosecute claims for the benefit and on behalf of the Receivership Estate, *see* Receivership Order ¶ 45, and because the Settlement Agreement is in the best interests of the Receivership Estate, the Receiver requests the Court to approve the Settlement Agreement.

## II.   BACKGROUND[3]

### A.   The Property

1.   Receivership Entity 2999TC purchased the Property in September 2019. 2999TC is a single-purpose entity formerly operated by Defendant Timothy Barton, who purportedly intended to develop a luxury hotel and residential condominiums on the Property. According to a closing statement in connection with the sale, it appears that 2999 TC paid $43,049,929 for the Property.

2.   In connection with this purchase, 2999TC (formerly known as MO 2999TC, LLC) secured a loan in the amount of $32,500,000.00[4] from HNGH's predecessor in interest, 2999 Turtle Creek LLC (the "Original Lender"), evidenced by that Secured Promissory Note dated as of September 20, 2019 (the "Note"). The Note is secured by the Property, including all improvements and fixtures, as evidenced by that certain Deed of Trust, Security Agreement and Fixture Filing made as of September 20, 2019 (the "Deed of Trust"), and recorded in the real property records of Dallas County, Texas. 2999TC's obligations under the Note and Deed of Trust are guaranteed by Defendant Barton pursuant to a Guaranty dated as of September 20, 2019 (the "Guaranty"). Ultimately, HNGH acquired the Note, the Deed of Trust, and the Guaranty from the Original Lender.

---

[3] The bankruptcy court provided the thorough factual and procedural background involving the disputes between 2999TC and HNGH regarding the Loan Documents (as defined below) and the Property in its *Order (a) Granting in Part and Denying in Party HNGH Turtle Creek, LLC's Motion to Enforce Agreed Orders; (b) Denying the Debtor's Plan-Related Motions; and (c) Granting and Denying Ancillary Relief* dated September 28, 2022 (the "Order Enforcing Agreed Orders") [Bankruptcy Case, Dkt. 283]. The Order Enforcing Agreed Orders is incorporated by reference and is attached as **Exhibit B**.

[4] According to a closing statement from the purchase, it appears that 2999 TC paid $43,049,929 for the Property, with the remaining funds coming from other investors and/or lenders.

3.      The Note matured by its terms on October 1, 2020.  After several defaults by 2999TC and then $200,000 in delay payments paid by 2999TC to HNGH in January and February 2021, 2999TC and HNGH entered into a Forbearance and Payoff Agreement made effective on March 1, 2021 (the "Forbearance Agreement," and, together with the Note, the Deed of Trust, and the Guaranty, the "Loan Documents").  Under the Forbearance Agreement, effective as of December 31, 2020, 2999TC's outstanding defaults and accrued default interest were converted into principal-payment obligations under the Note.  Therefore, effective on December 31, 2020, the principal balance of the loan became $40,073,171.  The loan eventually became due on October 29, 2021.

4.      In exchange for forbearance, as agreed, 2999TC executed a special warranty deed conveying the property to HNGH and transferred the deed into escrow (the "Deed in Lieu").  The Deed in Lieu was to be released to HNGH upon a forbearance default.  On October 29, 2021, 2999TC defaulted on the Forbearance Agreement.  That same day, HNGH submitted the Deed in Lieu for recording.  However, also on that day (the "Petition Date"), before the Deed in Lieu was recorded, 2999TC filed its chapter 11 petition and commenced the Bankruptcy Case.

**B.      The Bankruptcy Case**

5.      The County Clerk recorded the filed Deed in Lieu on November 1, 2021.  On November 5, 2021, 2999TC recorded a lis pendens against the Property.

6.      On November 11, 2021, 2999TC initiated an adversary proceeding by filing a complaint against HNGH and related parties, seeking to avoid and recover, under the Bankruptcy Code, the transfer of the Property as a preferential and fraudulent transfer (the "First Adversary Proceeding") [Bankruptcy Case, Dkt. 23].  The First Adversary Proceeding and related stay litigation in the Bankruptcy Case were resolved through an agreed order dated December 10,

2021 (the "December 2021 Agreed Order") [Bankruptcy Case, Dkt. 64], that set a "Payoff Deadline" of 5:00 p.m., March 15, 2022, for 2999TC to pay an agreed "Payoff Amount" to satisfy the Note in full. As consideration for obtaining this extended Payoff Deadline, 2999TC agreed to make "Consideration Payments" totaling $500,000 from December 2021 through March 2022. If a timely "Payoff Event" occurred, HNGH would deliver a rescission deed to 2999TC, 2999TC would retain all title in the Property, and HNGH would be granted a $2 million allowed claim against 2999TC's estate. However, if 2999TC defaulted on the December 2021 Agreed Orders terms, the Deed in Lieu would be deemed a valid, unavoidable prepetition transfer and HNGH would become the owner of the Property.

7.      Before the December 2021 Agreed Order's Payoff Deadline, the parties reached another agreement memorialized in a joint stipulation dated March 15, 2022 and an agreed order dated March 17, 2022 (the "March 2022 Agreed Order") [Bankruptcy Case, Dkt. 94], which extended the Payoff Deadline to May 30, 2022 ("Extended Payoff Deadline"). 2999TC also agreed to pay in March 2022 $3.5 million to HNGH. Additionally, the March 2022 Agreed Order resulted in the bankruptcy court's agreed order dismissing the First Adversary Proceeding with prejudice [First Adversary Proceeding, Dkt. 14].

8.      On April 25, 2022, 2999TC filed its *Third Amended Plan of Reorganization* (the "Plan") [Bankruptcy Case, Dkt. 108], which incorporated the December 2021 Agreed Order and March 2022 Agreed Order (together, the "Agreed Orders"): "If the Debtor or Reorganized Debtor fails to cause HNGH to be paid in full in accordance with the terms of the Agreed Orders, then HNGH shall be entitled to exercise all of its rights and remedies under the Agreed Orders." Plan § 6.01. Specifically, 2999TC was required to market the Property in an effort to obtain a

5

loan to pay HNGH.  *Id.*  The bankruptcy court entered its confirmation order on May 18, 2022, and the Plan became effective on May 21, 2022.

### C.    The Order to Enforce the Agreed Orders

9.    2999TC did not satisfy the Payoff Amount by the Extended Payoff Deadline.  On June 3, 2022, HNGH filed its Motion to Enforce Agreed Orders (the "Motion to Enforce") [Bankruptcy Case, Dkt. 134].  Before the bankruptcy court heard the Motion to Enforce, 2999TC commenced the Second Adversary Proceeding [Bankruptcy Case, Dkt. 152] by filing a complaint alleging that HNGH failed to satisfy the requirements of the Agreed Orders and asking the bankruptcy court to find, among other things, that 2999TC was the rightful owner of the Property.  While the extensive hearing on the Motion to Enforce was ongoing, 2999TC also sought to modify the Plan and the confirmation order to extend the Extended Payoff Deadline [Bankruptcy Case, Dkts. 173–74].

10.    On September 28, 2022—five days after this case commenced and twenty days before this Court entered the Receivership Order—the bankruptcy court largely granted HNGH's Motion to Enforce through its Order Enforcing Agreed Orders, finding that the Deed in Lieu was a valid conveyance and that HNGH is the owner of the Property.  The bankruptcy court ordered 2999TC to remove its lis pendens from the Property, which 2999TC accomplished on October 13, 2022.  The bankruptcy court also denied 2999TC's requests to modify the Plan and confirmation order.  2999TC timely appealed the Order Enforcing Agreed Orders to this Court [Bankruptcy Case, Dkt. 284] but did not post a bond.  HNGH's motion to dismiss the Second Adversary Proceeding is pending.

**D.      The Receiver's Appointment and HNGH's Intervention in This Case**

11.      On October 18, 2022, this Court entered the Receivership Order.  Among other things, the Receivership Order stayed all pending litigation involving the Receivership Entities, including the Appeal, Second Adversary Proceeding, and the entire Bankruptcy Case.

12.      On November 25, 2022, HNGH filed a motion to intervene in this case and requested this Court to confirm HNGH's ownership of the Property [Dkt. 69].  Although the Receiver did not oppose HNGH's intervention, the Receiver did oppose HNGH's effort to disregard this Court's stay of litigation, seek priority treatment, and force immediate resolution of stayed litigation regarding the Property [Dkt. 94].  During this time, the parties discussed potential resolution of their disputes concerning the Property, but such negotiations quickly resulted in a stalemate.

13.      On February 9, 2023, HNGH filed its supplement to its motion to intervene [Dkt. 151].  The next day, this Court granted in part and denied in part HNGH's motion, granting permission for HNGH to intervene in this case but denying its request to confirm ownership of the Property [Dkt. 154].  Furthermore, this Court ordered the parties to mediate and appointed retired Chief Bankruptcy Judge Harlin D. Hale as mediator.

**E.      The Receiver and HNGH's Disputes**

14.      The Receiver and HNGH's disputes were threefold: (1) the ownership and rightful possession of the Property; (2) the amount due to HNGH under the Loan Documents; and (3) the state-law fraudulent transfer claims the Receiver likely possesses against HNGH.

*Ownership and Possession of the Property.*

15.      HNGH contended that pursuant to the pre-petition Loan Documents and the Bankruptcy Court's orders—namely the Agreed Orders, order confirming the Plan, and the

7

Order Enforcing Agreed Orders—HNGH owned and had the right to possess the Property.  The Receiver maintained that the bankruptcy court's findings were made without the benefit of facts that were discovered after this case was filed (namely, the allegations in the SEC's Complaint), and accordingly sought examination of all options available to challenge the bankruptcy court's determinations regarding the ownership and possession of the Property in the stayed Bankruptcy Case.  Although those options were limited, they included seeking to lift the stay to pursue the Appeal, withdraw the reference of the Bankruptcy Case to this Court, and/or move to modify the Plan before the bankruptcy court or this Court.

### *Amount Due Under the Loan Documents.*

16.    If the Receiver were to succeed in unwinding the Order Enforcing Agreed Orders and the Confirmed Plan in the Bankrupcty Case, he would still have to pay off HNGH's ever-growing secured loan as part of any sale.  HNGH asserted in its proof of claim in the Bankruptcy Case that it was owed $45,939,456 under the Loan Documents as of the Petition Date and claimed this amount had only increased in the sixteen months since then.  By his own investigation, the Receiver calculated that as of March 10, 2023 (the date of mediation), 2999TC owed HNGH as much as $51,364,069.55 under the Loan Documents.

### *The Receiver's State-Law Fraudulent Transfer Claims Against HNGH.*

17.    Records from HNGH and the Receivership Entities show that various Receivership Entities paid HNGH approximately $4.735 million under the Loan Documents.[5] Upon investigation, the Receiver discovered that $3.95 million of this total, comprising nine separate payments (including four cashier's checks), was paid not by 2999TC but by other Receivership Entities, including those that the SEC alleges misappropriated funds from the Wall

---

[5] As a result of a third-party funding agreement with 2999TC, Swapnil Agarwal, president of Nitya Capital, LLC ("Nitya Capital"), wired an additional $1,528,496 directly to HNGH to enable 2999TC fulfill its obligations under the Loan Documents.

Investors.  The Receiver contends that these payments from other Receivership Entities likely constitute fraudulent transfers, since the other Receivership Entities were making payments on 2999TC's behalf.  HNGH maintained that these transfers were appropriate and in accordance with the Agreed Orders.

### F.    Mediation and Settlement with HNGH

18.    On March 10, 2023, the Receiver and HNGH participated in a mediation led by retired Chief Bankruptcy Judge Hale.  The mediation lasted all day.  That evening, the parties entered into the general terms of the Settlement Agreement—a global resolution of the disputes concerning the Property—and were directed by Judge Hale to memorialize the agreement by drafting the Settlement Agreement and this motion.  Over the following weeks, the parties exchanged several drafts of the Settlement Agreement, ultimately finalizing and executing the agreement on April 13, 2023.

## III.    ARGUMENT

### A.    Legal Standard

It is "a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).  Any action by the district court "supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse." *Id.* at 373 (*quoting SEC v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)).

"Ordinarily, parties are free to settle cases amongst themselves without court involvement." *SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-0298-N, 2015 WL 10818588, at *2

9

(N.D. Tex. Sept. 23, 2015) (citing *Ibarra v. Tex. Empl. Comm'n,* 823 F.2d 873, 878 (5th Cir. 1987)).   However, "in the equity receivership context, parties have sought and courts have rendered decisions regarding whether to approve or reject settlement agreements based on courts' wide discretion in administering an equity receivership."  *Id.*  "Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are 'fair and equitable and in the best interests of the estate.'"  *Stanford*, 927 F.3d at 840 (quoting *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015)).

"In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership."  *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019).  However, by this Motion the Receiver is not seeking to sell "any realty or interest therein."  *See* 28 U.S.C. § 2001.  The Bankruptcy Court has already determined that the Receivership Entities do not possess any interest in the Property to sell, and this Court has already determined that other decisions by the Receiver do not implicate 28 U.S.C. § 2001.  *See* Dkt. 109 and Dkt. 163. Instead, the Receiver seeks the Court's approval of his decision to most efficiently and economically deal with his dispute with HNGH: after a thorough investigation into potential avenues of unwinding those decisions, the Receiver has determined that the extensive costs of litigating with HNGH through a district court appeal and then an inevitable Fifth Circuit appeal vastly outweigh the marginal-at-best chances of success—particularly where the prize for successfully completing the Hail Mary is the privilege of paying HNGH an ever-increasing loan balance in connection with any sale.

10

**B.      The Terms of the Settlement Agreement**

To avoid the expense and uncertainty of potential litigation, as well as the continuing damages and uncertainty surrounding the stayed litigation in the Bankruptcy Case (as discussed below), the Receiver and HNGH agreed to fully settle any claims each party has in the Bankruptcy Case or in any potential fraudulent transfer actions regarding payment made by Receivership Entities to HNGH in connection with the Property.  As demonstrated by its terms below, the Settlement Agreement is fair and equitable and in the best interests of the Receivership Estate.  Therefore, the Court should, in its discretion, approve the Settlement Agreement.

Pursuant to the terms of the Settlement Agreement, HNGH will pay the Receiver a total of $2.5 million in the following intervals after the Court's approval of the Settlement Agreement: (i) $500,000 paid within seven days; (ii) $500,000 paid within one year; (iii) $750,000 paid within eighteen months; and (iv) $750,000 paid within two years (collectively, the "Settlement Payments").  If the Property is sold within two years of Court approval of the Settlement Agreement, all amounts owed by HNGH under the Settlement Agreement shall be due and paid. If HNGH defaults on its Settlement Payment obligations under the Settlement Agreement, the Receiver may bring an action to enforce the Settlement Agreement or a fraudulent-transfer action against HNGH, and may retain Settlement Payments paid to date (but must credit such amounts against any judgment obtained).  Conversely, HNGH shall then retain any defenses it may have to such a fraudulent-transfer action.

Additionally, the Receiver has until June 9, 2023 to vacate the premises of the Property. Until the Receiver vacates the Property, the Receiver is liable for utility payments for the Property.  Upon satisfaction of HNGH's payment obligations under the Settlement Agreement,

11

the parties grant and receive mutual releases of all claims regarding the Property and payments made in connection with the Property.  HNGH also grants a release of Defendant Barton from the Guaranty, provided that such release shall be null and void if Defendant Barton files a lawsuit against HNGH or certain related parties related to or arising out of transactions underlying or based on the Settlement Agreement.  Furthermore, HNGH shall dismiss its stayed litigation against Defendant Barton regarding the Guaranty upon confirmation that the lis pendens on the Property has been removed.

### C.    The Settlement Agreement is in the Best Interests of the Receivership Estate

The Receiver believes that the Settlement Agreement is fair and equitable and in the best interests of the Receivership Estate because it eliminates several likely and costly risks to the Receivership Estate.

### 1.    Pursuit of the Appeal or Other Paths in the Bankruptcy Case Would Be Costly and Unlikely to Succeed

After an extensive investigation, the Receiver has determined that there are significant, potentially impossible hurdles to unwinding the bankruptcy court's Agreed Orders, the confirmed and effective Plan, and the Order Enforcing Agreed Orders.  The Appeal would likely be unsuccessful, given the bankruptcy court's thoroughly examined factual record "in a hearing that lasted over fifty hours, stretched out over two months"[6] and the requisite "clear error" standard of review for a bankruptcy court's findings of fact.  Furthermore, given 2999TC's failed attempts to seek to modify the Plan (contrary to the confirmed and effective Plan's express terms), any attempt by the Receiver to do the same would likely fail as well.  Finally, an attempt to withdraw the reference, if successful, would only burden this Court with the administration and disposition of the Bankruptcy Case.  Such strategies, albeit creative, would merely result in

---

[6] Exhibit B (the Order Enforcing Agreed Orders) at 2.

delay,increased costs, and significant attorneys' fees for the Receivership Estate while providing very little or no chance of success.

### 2.    Even if the Appeal is Successful, the Receivership Estate Would Still Owe Significant Obligations to HNGH as a Secured Lender

Even if the Receiver were to succeed on the Appeal—after an indefinite amount of time for this Court's decision and then HNGH's inevitable appeal to the Fifth Circuit—the likely amount due under the Loan Documents would far exceed the value of the Property and the likely selling price of the Property.  2999TC closed on the Property for $43,049,929 in 2019.  Based on records that the Receiver has located to date, Receivership Entities put at least $10.5 million into the Property when 2999TC purchased the Property, and then paid an additional $4.735 million to HNGH in 2021 and 2022 to pay down the original $32.5 million loan comprising the Note.[7] Meanwhile, the Note accrued interest at 12.4% annually before the Forbearance Agreement and at 8% annually after the Forbearance Agreement (and HNGH contends that default interest of 24% has been accruing annually after 2999TC's default under the Forbearance Agreement). Consequently, depending on the amount determined to be due to HNGH under the Loan Documents (and inclusive of what Receivership Entities and Nitya Capital have already paid HNGH), as of the date of mediation, HNGH was still owed between approximately $40.9 million (without default interest) and approximately $57.5 million (with default interest) based on the $32.5 million loan secured by the Property.

Early in settlement negotiations, the Receiver proposed to HNGH the possibility of attempting to sell the Property and, if the sales price exceeded the amount due under the Loan Documents, using the sale proceeds to satisfy 2999TC's obligations under the Loan Documents

---

[7] As noted above, Nitya Capital paid HNGH an additional $1,528,496 owed under the Loan Documents, on 2999TC's behalf, as part of its third-party funding agreement with 2999TC.

and reserving any additional amounts for the Receivership Estate. However, since the first days of the Receivership, HNGH has steadfastly refused to engage in any such process, meaning the only way the Receiver could sell the Property would be after the expensive, quixotic unwinding of the Bankruptcy Court's Orders discussed above. But even if HNGH had been willing to engage in the Receiver's proposed sale process, a third-party appraiser (hired by the Receiver, not HNGH)—National Valuation Consultants, Inc.—valued the Property at only $43 million as of March 2023. And while the Receiver obtained other opinions of value and even an offer of approximately $50 million,[8] these proposals would likely not meet or exceed the amount that HNGH claims is now due under the Loan Documents—irrespective of the risks to reach that point. The Receiver eventually concluded that a sale path provides little to no recovery for the Receivership Estate.

Furthermore, even if a profitable sale was possible, any delay in selling the Property would only result in increased costs to the Receivership Estate to maintain the Property and in increased amounts due under the Loan Documents. In particular, HNGH has contended that the Receivership Estate is responsible to pay insurance, tax, and utility payments, and to either pay rent for or to lease the Property, if HNGH is denied ownership and possession of the Property during the pendency of this case [Dkt. 151]. With each passing day, these risks only make a sale

---

[8] On April 16, 2023, the Receiver sent a copy of the Settlement Agreement to cousnel for Barton for purposes of the certificate of contference included with this Motion. On April 17, Barton simultaneously responded that he was opposed to the settlement and filed a "Notice of Third Party Offers to Purchase 2999 Turtle Creek Property," to which he attached a $51 million offer dated April 5, 2023 from Comstock Holdings Companies, Inc. (the "Comstock Offer"). The Comstock offer is troubling in a number of respects. First, the offer was not solicited by the Receiver. In fact, it is dated April 5, 2023, several weeks *after* the Reciever had reached a settlement-in-principle with HNGH at the March 10 mediation. In a troubling pattern consistent with actions outlined in prior filings, Defendant Barton blatantly admits that he is continuing to violate the Receivership Order and interfere with the Receiver's efforts to administer (and maximize the value of) the Receivership Estate. Second, Barton's preemptive "Notice" disregards the Court's Local Rules regarding motion practice. Third, and most importantly, the Comstock Offer is presented as evidence that the Receiver "has not been substantively engaging with third parties" and is not maximizing the value to the estate, when, as outlined above, the Receiver's prior rejection of an approximately $50 million offer was precisely because of the likely futility and extensive cost of pursuing such an option.

attempt a greater liability to the Receivership Estate.  Given the status of the Property following disposition in the Bankruptcy Court and the significant amount already allegedly due to HNGH under the Loan Documents, the Receiver concluded the Receivership Estate's best avenue for any recovery was provided by the Receivership Entities' fraudulent transfer claims against HNGH.

### 3. A Settlement of the Receiver's Fraudulent Transfer Claims for $2.5 Million is a Fair and Equitable Result

The Receiver contends that $3.95 million of the $4.735 million that Receivership Entities paid to HNGH under the Loan Documents are arguably fraudulent transfers, although $3.8 million of that was paid in accordance with obligations incurred by 2999TC under the Agreed Orders, which were incorporated into the confirmed and now-effective Plan, approved in the Bankruptcy Case.  Even if the payments were made with actual or constructive fraudulent intent, the Receiver faces the significant hurdle of overcoming HNGH's good-faith defense because these payments were made by Receivership Entities pursuant to court orders.[9]  The substantial financial costs and delay of litigating these fraudulent transfer claims would only deplete the Receivership Estate with no guarantee of success.  Consequently, the Receivership Estate's receipt of $2.5 million of potentially $3.95 million in fraudulent transfer amounts is a fair and equitable result.

In addition to mitigating or eliminating these likely risks and significant costs, the Receiver believes the Settlement Agreement with HNGH is also in the best interests of the Receivership Estate because, among other things, the Settlement Agreement brings $2.5 million—much needed capital—into the Receivership Estate.  The Settlement Payments will

---

[9] *See* TEX. BUS. & COMMERCE CODE § 24.009 ("A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.").

enable the Receiver to continue managing the Receivership Assets in accordance with the Receivership Order, including beginning to service debt on other Receivership properties still held by the Receivership (in combination with the proceeds from other sales) and other administrative costs of the Recievership.

## IV.    CONCLUSION AND REQUEST FOR RELIEF

In light of the foregoing, the Receiver respectfully requests that the Court enter an order approving the Settlement Agreement with HNGH, lifting the stay of the Bankruptcy Case so that 2999TC and HNGH may take all appropriate steps to resolve and close the Bankruptcy Case, and further grant the Receiver such other and further relief to which the Receiver may be justly entitled.

April 17, 2023                                                  Respectfully submitted,

**RECEIVER CORTNEY C. THOMAS**

*/s/ Cortney C. Thomas*
Cortney C. Thomas
  State Bar No. 24075153
  cort@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

16

## VERIFICATION

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on April 17, 2023, the Receiver conferred via email with counsel for Plaintiff  and Defendant Barton regarding the relief requested above.  The SEC and HNGH have indicated that they are unopposed to the relief requested herein.   Counsel to Defendant Barton indicated that he is opposed to this Motion and simultaneously filed a "Notice of Third Party Offers to Purchase 2999 Turtle Creek Property" [Dkt. 209].  *See* n. 8, *supra*.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.