# EXHIBIT A

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement (the "**Settlement Agreement**") is made and entered into this ____ day of April, 2023, by and between HNGH Turtle Creek, LLC ("**HNGH**") and Cort Thomas in his role as court-appointed receiver on behalf of the Receivership Entities[1] (the "**Receiver**" and together with HNGH the "**Parties**") in *Securities and Exchange Commission v. Timothy Barton et. al.*, Case No. 3:22-cv-2118-X (the "**Receivership Case**"), pending before Judge Starr in the United States District Court for the Northern District of Texas, Dallas Division (the "**Court**").

## RECITALS

**WHEREAS**, on September 20, 2019, HNGH's predecessor in interest, 2999 Turtle Creek LLC (the "**Original Lender**") made a loan to the entity now known as 2999TC Acquisitions, LLC ("**2999TC Acquisitions**" or the "**Debtor**") in the principal amount of $32,500,000 evidenced by that certain Secured Promissory Note dated as of September 20, 2019 (the "**Note**"). The Note was secured by a parcel of land, including all improvements and fixtures, located at 2999 Turtle Creek Boulevard in Dallas, Texas (the "**Property**"), as evidenced by that certain Deed of Trust, Security Agreement and Fixture Filing made as of September 20, 2019, and recorded in the real property records of Dallas County, Texas. The Note had an original maturity date of October 1, 2020 and was guaranteed by Timothy Barton ("**Barton**") pursuant to a *Guaranty* dated as of September 20, 2019 (the "**Guaranty**");

**WHEREAS**, in January of 2020, HNGH acquired a participation interest in the loan from the Original Lender to the Debtor. HNGH later acquired 100% of the loan from the Original Lender pursuant to that certain *Assignment and Assumption of Assigned Rights and Obligations* dated as of December 7, 2020;

**WHEREAS**, on August 28, 2020, the Original Lender filed a petition against Barton for breach of the Guaranty in the District Court for the 192nd Judicial District, Dallas County, Texas, Cause No. DC-20-12133-K (the "**Guaranty Litigation**"). The court dismissed the Guaranty Litigation for want of prosecution without prejudice on September 3, 2021. A motion to reinstate the Guaranty Litigation was filed by HNGH. An order granting the motion to reinstate was entered on October 14, 2021. After the Debtor's bankruptcy filing, the Guaranty Litigation was abated until it was eventually stayed by the Receivership Case on October 21, 2022;

**WHEREAS**, on October 22, 2020, after Debtor's maturity date default, 2999TC Acquisitions and Barton filed suit against HNGH, Vipin Nambiar ("**Nambiar**"), HN Green Hollow Capital Partners, LLC (collectively, the "**HNGH Defendants**"), and other defendants in the United States District Court for the Northern District of Texas, Case No. 3:20-CV-3229 (the "**District Court Case**"). The District Court Case was dismissed with prejudice as to the HNGH Defendants pursuant to an Agreed Final Judgment on January 10, 2021. Prior to entry of the Agreed Final Judgment, HNGH and 2999TC Acquisitions agreed to temporarily delay foreclosing on the Property in exchange for an immediate partial interest payment of $100,000.00 plus an additional $100,000.00 on February 2, 2021. HNGH and 2999TC Acquisitions memorialized these

---

[1] "Receivership Entities" includes all entities subject to administration in the receivership proceeding including, but not limited to, those entities identified in the *Order Appointing Receiver* [Docket No. 29] and later supplemental orders entered in the Receivership Case [Docket Nos. 62, 88, etc.].

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

payments by entering into a *Forbearance and Payoff Agreement* made effective on March 1, 2021 (the "**Forbearance Agreement,**" and, together with the Note, Deed of Trust, and Guaranty, the "**Loan Documents**"). The Forbearance Agreement converted 2999TC Acquisitions' outstanding defaults and accrued default interest and expense obligations into an amended and restated principal payment obligation under the Note effective as of December 31, 2020;

**WHEREAS**, under the Forbearance Agreement, the new maturity date of the Note was July 31, 2021. The Forbearance Agreement provided that, in addition to interest payments and Barton's ratification of the Guaranty, 2999TC Acquisitions agreed to provide HNGH a deed in lieu of foreclosure (the "**Deed in Lieu**"). Pursuant to the terms of the Forbearance Agreement, and with the agreement of 2999TC Acquisitions, HNGH agreed to extend the Note maturity date to October 29, 2021;

**WHEREAS**, on October 29, 2021, 2999TC Acquisitions defaulted under the Note by failing to pay all amounts due and owing by the October 29, 2021 maturity date. Following the 2999TC Acquisitions' default, on October 29, 2021, and in accordance with the terms of the Forbearance Agreement, HNGH filed the Deed in Lieu with the Clerk of the Dallas County Real Property Records for recording. Later that evening, after HNGH submitted the Deed in Lieu for recording, 2999TC Acquisitions filed a petition for bankruptcy relief commencing *In re 2999TC Acquisitions, LLC*, No. 21-31954 (the "**Bankruptcy Case**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**").[2] The County Clerk recorded the Deed in Lieu at 1:36 p.m. on November 1, 2021. On November 5, 2021, the Debtor recorded a lis pendens against the Property in the Official Public Records of Dallas County, Texas, as Instrument No. 202100333511;

**WHEREAS**, the Debtor commenced Adversary Proceeding No. 21-3085 (the "**First Adversary Proceeding**") by filing its *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* (the "**First Complaint**") against the HNGH Defendants. The Debtor asserted claims to avoid and recover the transfer of the Property as a preferential and fraudulent transfer under the Bankruptcy Code. The First Complaint also asserted fraudulent inducement claims and fraud-by-nondisclosure claims that were previously dismissed with prejudice in the District Court Case. The First Adversary Proceeding was resolved through an *Agreed Order of Judgment and Dismissal of Adversary Proceeding with Prejudice to Refiling* (the "**Adversary Judgment**");

**WHEREAS**, in addition to the First Adversary Proceeding, HNGH and the Debtor litigated in the Bankruptcy Case. Shortly after the commencement of the Bankruptcy Case, HNGH requested that the Bankruptcy Court dismiss the Bankruptcy Case because of the Debtor's alleged bad faith filing, or lift the automatic stay to allow HNGH to enforce all rights and remedies against the Debtor under its Note, Deed of Trust, and Deed in Lieu (the "**Bankruptcy Litigation**"). The Debtor objected. The Bankruptcy Litigation was resolved through an agreed order dated December 10, 2021 (the "**December 2021 Agreed Order**"). The December 2021 Agreed Order set a deadline of March 15, 2022 (the "**Payoff Deadline**") by which the Debtor must have satisfied an agreed payoff amount (the "**Payoff Amount**") to retain its interest in the Property. It also obligated the

---

[2] The Bankruptcy Court provided the background involving the disputes between the Debtor and HNGH regarding the Property and the Loan Documents in its Order Enforcing Agreed Orders (defined below).

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

Debtor to make or cause to be made certain "Consideration Payments" totaling $500,000 from December 14, 2021 through March 1, 2022. The Debtor made or caused Receivership Entities to make the Consideration Payments, but proved incapable of satisfying the Payoff Amount by the Payoff Deadline;

WHEREAS, after the Debtor failed to pay the Payoff Amount by the Payoff Deadline, the Debtor filed a motion to extend the Payoff Deadline. HNGH and the Debtor resolved the Debtor's motion by entering into an agreement memorialized in a joint stipulation dated March 15, 2022 (the "**Joint Stipulation**") and an agreed order dated March 17, 2022 (the "**March 2022 Agreed Order**"). The March 2022 Agreed Order extended the Payoff Deadline to May 30, 2022, and later to May 31, 2022 (the "**Extended Payoff Deadline**"), and it obligated the Debtor to pay $3.5 million to HNGH in March of 2022 to reduce outstanding principal obligations and to receive the Extended Payoff Deadline. The Debtor caused $3.5 million to be paid to HNGH in full from Receivership Entities, resulting in a revised Payoff Amount (the "**Revised Payoff Amount**");

WHEREAS, on May 18, 2022, the Court entered its order confirming the Debtor's *Third Amended Plan of Reorganization* (the "**Plan**"). The Plan incorporated the December 2021 Agreed Order and the March 2022 Agreed Order (together, the "**Agreed Orders**"). The Plan became effective on May 21, 2022;

WHEREAS, on May 31, 2022, the Debtor breached its obligations under the March 2022 Agreed Order by failing to pay the Revised Payoff Amount to HNGH by the Extended Payoff Deadline. The Debtor's breach prompted HNGH to file its *Motion to Enforce Agreed Orders* (the "**Motion to Enforce**") on June 3, 2022. The Motion to Enforce sought a confirmation from the Bankruptcy Court that HNGH was the owner of the Property based on the Debtor's defaults under the Agreed Orders and findings that the releases, waivers, and indemnifications in the Joint Stipulation, March 2022 Agreed Order, and Adversary Judgment remained binding and enforceable. The Bankruptcy Court set the Motion to Enforce for a hearing to begin on June 10, 2022;

WHEREAS, on June 9, 2022, the Debtor filed a complaint (the "**Second Complaint**") against HNGH initiating Adversary Proceeding No. 22-3061 (the "**Second Adversary Proceeding**"). In the Second Complaint, the Debtor alleged that HNGH, not the Debtor, breached the Agreed Orders and requested that the Bankruptcy Court declare that the Debtor was the rightful owner of the Property;

WHEREAS, on September 28, 2022, following more than fifteen days of hearing settings, more than fifty hours of evidence and argument, and weeks of additional briefing, Bankruptcy Judge Everett issued his 49-page *Order (a) Granting in Part and Denying in Part HNGH Turtle Creek, LLC's Motion to Enforce Agreed Orders; (b) Denying the Debtor's Plan-Related Motions; and (c) Granting and Denying Ancillary Relief* (the "**Order Enforcing Agreed Orders**"). Pursuant to the Order Enforcing Agreed Orders, the Bankruptcy Court ordered, adjudged, and decreed that, among other things, the Deed in Lieu was a valid, enforceable conveyance, that HNGH was and remained the owner of the property pursuant to that Special Warranty Deed recorded as Instrument Number 202100327172, and that following its default under the March 2022 Agreed Order and on a go-forward basis, the Debtor would have no further right, title, or interest in the Property.  Additionally, the Order Enforcing Orders required HNGH to release

Barton from his Guaranty and dismiss its Guaranty Litigation with prejudice upon receiving notice that a lis pendens burdening the Property was removed;

**WHEREAS**, on October 13, 2022 HNGH filed a motion to dismiss the Second Adversary Proceeding for lack of live controversy and for lack of service.. No hearing on the motion to dismiss was held because of the Receivership Stay, as that term is defined below;

**WHEREAS**, on September 23, 2022, the Receivership Case began as a civil action filed by the Securities and Exchange Commission against Barton and certain of the Receivership Entities seeking permanent injunctive relief, disgorgement of ill-gotten gains plus prejudgment interest, civil penalties, officer and director bars, and all other just and proper equitable and ancillary relief. On October 18, 2022, Judge Starr appointed the Receiver to oversee the administration of all Receivership Entities (the "**Receivership Order**") and issued a stay against litigation involving the Receivership Entities (the "**Receivership Stay**") and any of the Receivership Entities' past or present officers, directors, managers, agents or partners sued in connection with actions taken in such capacity. Since his appointment, the Receiver has paid utilities and maintained possession of the Property and the contents therein. Due to a lack of of funds in the first months  of the  receivership, the Receiver has not paid taxes or insurance on the Property.

**WHEREAS**, on September 29, 2022, the Debtor filed its Notice of Appeal of the Order Enforcing Agreed Orders but did not post a bond. On the following day, the Debtor filed its Amended Notice of Appeal of the Order Enforcing Agreed Orders to clarify the appellee. The Notice of Appeal was docketed on October 3, 2022, commencing Civil Case No. 3:22-cv-02186 in the United States District Court for the Northern District of Texas (the "**Appeal**"). On October 14, 2022, the Debtor filed its *Motion for Stay Pending Appeal* (the "**Stay Motion**"). A hearing on the Stay Motion was stayed by the Receiver's Notice of Stay, which was docketed on October 24, 2022. To date, the Debtor's Stay Motion has not been heard and the Appeal has not been prosecuted by the Receiver;

**WHEREAS**, on November 4, 2022, the Receiver filed his *Motion for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and Brief in Support* [Docket No. 47] (the "**Receivership Estate Administration Motion**"). On November 11, 2022, HNGH filed its opposition to the Receiver's Receivership Estate Administration Motion [Docket No. 51]. The Court entered an order granting the Receivership Estate Administration Motion and withheld judgment regarding the ownership of the Property. [Docket Nos. 62–63];

**WHEREAS**, on November 25, 2022, HNGH filed its *Motion to Intervene and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* [Docket No. 69] (the "**Motion to Intervene**"). The Motion to Intervene requested that the Court, in keeping with the Bankruptcy Court's orders, confirm and reiterate HNGH's ownership of the Property. On December 15, 2022, the Receiver filed his Response to the Motion to Intervene [Docket No. 94] disputing HNGH's ownership interest. On December 29, 2022, HNGH filed its reply to the Receiver's response [Docket No. 116];

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

**WHEREAS**, the Receiver filed his *Second Status Report* [Docket No. 139] on January 30, 2023. In that report, the Receiver reiterated his position regarding the Property and detailed his investigation into alleged fraudulent transfers. The alleged fraudulent transfers total approximately $6.2 million dollars but include transfers from the Debtor and payments made pursuant to the Forbearance Agreement and the Agreed Orders (the "**Transfers**"). HNGH responded to the Second Status Report with a Supplement to its Motion to Intervene [Docket No. 151] (the "**Supplement**"). In the Supplement, HNGH contested the Receiver's fraudulent transfer allegations. HNGH also later asserted a right to recover from the Receivership Estate an administrative claim for the fair market value of rent for the period during which the Receiver has used and possessed the Property. On February 10, 2023, the Court granted HNGH permission to intervene and ordered the Parties to mediate their dispute [Docket No. 154];

**WHEREAS**, on March 10, 2023, the Parties mediated their disputes in good faith before Judge Hale and reached an agreement (the "**Mediation**"). During the Mediation, the Parties, with the assistance of an experienced retired bankruptcy judge, extensively negotiated at arm's length and in good faith and now desire to enter into this Settlement Agreement to resolve and confirm, with certainty, all issues regarding the ownership of the Property, the Receiver's occupation of the Property, the validity of the Transfers, and all other claims and causes of action that could be asserted by the Receiver and the Receivership Entities against HNGH, and all claims and causes of action that could be asserted by HNGH against the Receiver and Receivership Entities;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to Court Approval (defined below), the Parties agree as follows:

1.      Incorporation of Recitals.  The above recitals are incorporated into and made a substantive part of this Settlement Agreement.

2.      Court Approval.  In accordance with the terms of the Receivership Order, this Settlement Agreement is subject to approval of the Court ("**Court Approval**"). Upon the Parties' execution of the Settlement Agreement, the Receiver shall file a motion in the Receivership Case to seek Court Approval (the "**Motion to Approve Settlement Agreement**"). If this Settlement Agreement does not receive Court Approval, it shall be null and void.

3.      HNGH Settlement Obligations.  The Parties agree that in consideration for entry into this Settlement Agreement, HNGH shall make the Scheduled Payments in the manner set forth below:

(a)      Scheduled Payments.  The Parties agree that HNGH shall issue to the Receiver in good funds via wire pursuant to wire instructions to be provided by the Receiver the following payments (collectively, the "**Scheduled Payments**"), totaling $2,500,000.00   (the "**Settlement Obligation**"), in accordance with the schedule provided below, *provided however*, that if any payment date falls on a weekend or federal holiday, the applicable Scheduled Payment shall be due on the first business day following the payment date:

(i)     First Installment. Within seven (7) days of Court Approval, HNGH will pay to the Receiver $500,000.00.

(ii)    Second Installment. Within twelve (12) months of Court Approval, HNGH will pay to the Receiver $500,000.00.

(iii)   Third Installment. Within eighteen (18) months of Court Approval, HNGH will pay to the Receiver $750,000.00.

(iv)    Final Installment. Within twenty-four (24) months of Court Approval, HNGH will pay to the Receiver $750,000.00.

(v)     Acceleration. If the Property is sold within twenty-four (24) months of the Court's approval of the Settlement Agreement, HNGH will promptly notify the Receiver of the sale and shall pay to the Receiver in one lump sum the outstanding amount of all unpaid Scheduled Payments not later than fourteen (14) days after the closing of the sale.

4.     The Receiver Settlement Obligations. The Receiver is authorized to market and sell personal property of the Receivership Entities located at the Property, not including fixtures, up to and until June 9, 2023, by which time the Receiver shall have removed or disposed of such personal property and vacated the premises (the "**Vacate Date**"). The Receiver is liable for all utility payments until he vacates the Property.  The Receiver agrees to use commercially reasonable efforts to vacate the premises as soon as reasonably practicable following the execution of this Settlement Agreement, and agrees to reasonably cooperate with HNGH to promptly turnover possession of the Property, or to enter into arrangements and accommodations as the case may be to enable HNGH to enjoy the use of the Property as soon as reasonably practicable. As provided above, the Receiver shall file the Motion to Approve Settlement Agreement.

5.     Event of Default. The following shall constitute an "**Event of Default**" under this Settlement Agreement:

(a)     HNGH's failure to make a timely Scheduled Payment.

(b)     The Receiver's failure to vacate the property by the Vacate Date.

6.     Right to Cure and Remedies. HNGH shall have seven (7) days to cure an Event of Default for failing to timely make any Scheduled Payment. If HNGH fails to make a Scheduled Payment, then the Receiver, at his sole discretion, may bring suit against HNGH to: (a) enforce this Settlement Agreement; or (b) avoid and recover the Transfers, and may retain all Scheduled Payments paid to date; *provided however* that the Receiver must credit such amounts against any judgment he later obtains against HNGH. HNGH shall retain any defenses it may have to the avoidance and recovery of the Transfers, including any setoff claims it may have for unpaid rent. If the Receiver is unable to vacate the Property by the Vacate Date, he shall provide notice of his inability to HNGH not less than fourteen (14) days in advance of the Vacate Date, and shall reasonably cooperate with HNGH to identify and implement a reasonable arrangement or accommodation, as the case may be, to allow HNGH the maximum benefit of the Property practicable until the Receiver has vacated the Property.  HNGH may, at its sole discretion, grant

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

the Receiver an extension to the Vacate Date but in no instance shall the Receiver remain in possession of the Property beyond June 16, 2023, unless otherwise ordered by the Court.

7.    Release by the Receiver.  Upon execution of the Settlement Agreement, Court Approval, and HNGH's payment of the Final Installment, the Receiver, on behalf of himself and all Receivership Entities, including their respective officers, directors, employees, equity holders, affiliates, subsidiaries, parents, predecessors-in-interest, successors-in-interest, assigns, transferees, agents or other representatives (the "**Receivership Parties**"), hereby forever irrevocably releases, acquits and discharges HNGH and its respective officers, directors, equity holders, affiliates, predecessors-in-interest, successors-in-interests, assigns, transferees, employees, agents, and representatives, specifically including Vipin Nambiar (collectively, the "**HNGH Parties**"), from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies, whether known or unknown now or in the future, other than the obligations owed in this Settlement Agreement.

8.    Release by HNGH. Upon execution of the Settlement Agreement, Court Approval, and the Receiver having vacated the Property, HNGH, on behalf of itself and the HNGH Parties, hereby forever irrevocably releases, acquits and forever discharges the Receiver and the Receivership Parties, from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies whether known or unknown, now or in the future, other than the obligations owed in the Settlement Agreement.

9.    Conditional Release by HNGH. Upon execution of the Settlement Agreement and Court Approval, HNGH, on behalf of itself and the HNGH Parties, hereby forever irrevocably releases, acquits and forever discharges Timothy Barton from the Guaranty and from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies whether known or unknown, now or in the future, regarding the Guaranty (the "**Barton Release**"), provided that the Barton Release shall be null and void, and shall have no effect, if Timothy Barton files a lawsuit against HNGH or any of the HNGH Parties based on any event related to or arising out of any of the transactions underlying the Settlement Agreement or based on the Settlement Agreement itself. For the avoidance of doubt, in accordance with the Order Enforcing Agreed Orders, HNGH shall dismiss its Guaranty Litigation with prejudice upon receiving notice that any currently existing lis pendens burdening the Property has been removed.

10.    Expenses. Each Party shall bear its own attorney's fees and costs in connection with the negotiation and execution of this Settlement Agreement.

11.    Cooperation. The Parties agree, upon Court Approval, to cooperate in good faith to effectuate the terms and conditions of this Settlement Agreement. The Parties shall take all necessary actions to immediately terminate all pending litigation, prepare all documents necessary to resolve the foregoing, and seek to lift any stay required to do so. The Receiver shall eliminate all encumbrances on the Property arising out of any act or omission of any of the Receivership Parties and seek to lift any stay required to do so. For the avoidance of doubt, the Receiver shall, as soon as reasonably practicable, dismiss the Appeal with prejudice, resolve all pending adversary proceedings in the Bankruptcy Case, and assist with the removal of any currently existing lis pendens on the Property.

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

12.     <u>Tolling Provision</u>. The Parties hereby stipulate that with respect to all claims or causes of action, known or unknown, relating to, arising out of, or in connection with the Transfers, on the one hand, and any other claim or cause of action that could be asserted by HNGH against Receivership Entities on the other hand (the "**Tolled Claims**"), any applicable statute of limitations or other time defenses or statutes of repose shall be deemed tolled or waived from the date of this agreement until HNGH has fully satisfied the Settlement Obligation (the "**Tolling Period**"), or this Settlement Agreement is rendered void or unenforceable for any reason. For purposes of clarity, the tolling of the statute of limitations and any other time defenses, including expiration of any statute of repose during the Tolling Period shall survive any termination hereof, such that any Tolled Claims which would have been barred as a result of the expiration of the statute of limitations or other time defense, including extinguishment resulting from any statute of repose with respect to such claim at any time during the Tolling Period may be brought by the Receiver or HNGH, and neither the Receiver nor HNGH may assert the expiration of the statute of limitations during such period or any other time defense or statute of repose as a defense or bar to any such Tolled Claims brought by the either of the Parties. The Parties shall retain all defenses they may have to such Tolled Claims. Notwithstanding the foregoing, this paragraph does not apply to claims made to enforce this agreement.

13.     <u>Appeal and Effects of Appeal</u>.  On November 18, 2022, Barton appealed the Court's appointment of the Receiver to the United States Court of Appeals for the Fifth Circuit, commencing appellate case number 22-11132 (the "**Fifth Circuit Appeal**"). On November 28, 2022, Barton filed in the Court a *Motion for Stay Pending Appeal*, in which Barton sought entry of any order staying the Receivership Order, including the Receiver's administration of the Receiver's administration of the Receivership Entities, during the pendency of the Fifth Circuit Appeal. Barton's motion was denied by order of the Court on January 17, 2023. On December 28, 2022, Barton also filed in the Fifth Circuit a *Motion for Stay Pending Appeal*, which was denied by order of the Fifth Circuit on January 6, 2023. Accordingly, the Receiver is authorized as a matter of law to administer the Receivership Entities during the pendency of the Fifth Circuit Appeal and is authorized to execute this Settlement Agreement on behalf of the Receivership Entities, which, subject to Court Approval, shall be binding on the Parties. If this Settlement Agreement is later voided or otherwise invalidated as a result of the Fifth Circuit Appeal, and HNGH does not receive the benefit of its bargain hereunder, then HNGH shall have recourse against the Receivership Entities and the Receiver for any payments made pursuant to this Agreement, and shall have a right to the disgorgement or avoidance and recovery of such payments. Further, if this Settlement Agreement is so voided or otherwise invalidated, then all of HNGH's claims, causes of action, defenses, or other rights against the Receivership Entities and all of the Receivership Entities' or Receiver's claims, causes of action, defenses, or other rights against HNGH shall immediately be reinstated to the extent otherwise waived or released in this Settlement Agreement.

14.     <u>Entire Agreement</u>.  This Settlement Agreement constitutes the entire agreement between the Parties hereto and supersedes and replaces all prior negotiations, proposed or actual agreement or agreements, written or oral, of any nature or substance relative thereto.  Neither Party is relying and hereby disclaims reliance on any other representation, omission, or document not expressly contained in this Agreement.

15.     <u>Binding Effect</u>.  This Settlement Agreement shall be binding on any successors or assigns of the Parties hereto.

16.     <u>Representation by Counsel</u>.  The Parties acknowledge and understand that they are executing and delivering this Settlement Agreement with full knowledge of any and all rights which they may have with respect to the claims herein settled and released.  Each acknowledges that it was represented by and consulted with an attorney of its own choosing before executing and delivering this Settlement Agreement to review this document and the claims being settled and released, and that they had a reasonable and sufficient opportunity to do so.

17.     <u>Notices</u>.  Unless otherwise specifically provided herein, any notice delivered under this Settlement Agreement shall be in writing addressed to the respective Party as set forth below and may be (a) personally served, (b) sent by overnight courier service or certified or registered United States mail, or (c) transmitted by e-mail, and shall be deemed to have been given (x) if delivered in person, when delivered, (y) if delivered by e-mail, on the date of transmission if transmitted on a business day before 5:00 p.m. (Central time) or, if not, on the next succeeding business day, and (z) if delivered by courier or certified or registered United States mail, when received. Notices shall be addressed as follows:

If to Receiver:

> Cort C. Thomas
> Brown Fox PLLC
> 8111 Preston Road, Suite 300
> E-mail: cort@brownfoxlaw.com

With a copy to:

> Charlene C. Koonce
> C. Alan Carrillo
> Brown Fox PLLC
> 8111 Preston Road, Suite 300
> E-mail: charlene@brownfoxlaw.com
> E-mail: alan@brownfoxlaw.com

If to HNGH:

> Vipin Nambiar
> HNGH Turtle Creek LLC
> 1807 Ross Ave, Ste 440
> Dallas, TX 75201
> E-mail: vnambiar@hncapitalpartners.com

With a copy to:

> John J. Kane
> Kane Russell Coleman Logan PC
> 901 Main Street, Suite 5200

Dallas, TX 75202
E-mail: jkane@krcl.com

Erin Nealy Cox
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
E-mail: erin.nealycox@kirkland.com

18.    Counterparts.   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Settlement Agreement shall be final and binding upon execution and delivery of the Settlement Agreement by the Parties. The Parties agree that copies of this Settlement Agreement shall have the same effect and may be accepted with the same authority as the original and that this Settlement Agreement may be executed electronically and in counterparts.

19.    Authority.   The Parties represent that, subject to Court Approval, they have the legal right and authority required to compromise and settle all claims under the terms and conditions set forth herein. The Parties also represent that the signatures on behalf of the Parties, or their counsel, to this Settlement Agreement is sufficient, without further approval of third parties, other than Court Approval, to fully bind such party to the terms hereof, including without limitation, each of the payment obligations and releases set forth herein.

20.    Amendments.   This Settlement Agreement may only be amended, modified, or supplemented by a separate written document duly executed by authorized representatives of the Parties or their legal successors in interest.

21.    Severability.   If any provision of this Settlement Agreement shall be held to be invalid or unenforceable, the validity or enforceability of the remaining provisions shall not in any way be affected or impaired thereby, but rather this Settlement Agreement shall be construed as if not containing the invalid or unenforceable provision. However, if such provision is an essential element of this Settlement Agreement, such as the release provisions, then the Parties shall promptly attempt in good faith to negotiate a suitable replacement provision.

22.    Jurisdiction and Governing Law.   The Parties agree that the Court shall retain exclusive personal and subject matter jurisdiction to enforce the terms of this Settlement Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Settlement Agreement, or any breach of default hereunder. The Parties agree that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law, and expressly waive any requirement that separate notice be provided before pursuing such judgment. This Settlement Agreement shall be construed in accordance with and governed by the laws of the State of Texas (excluding the laws applicable to conflicts or choice of law).

**IN WITNESS WHEREOF**, the Parties have executed this instrument on the dates indicated below.

*Executed on this* 4/13/2023 *day of April, 2023*

SETTLEMENT AND RELEASE AGREEMENT                                    Page 10
10027704 v3 (73276.00002.001)

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

By:

DocuSigned by:

*Viplav Nambiar*

—60FFC5505E52428...

Title:   Managing Member

SETTLEMENT AND RELEASE AGREEMENT                                                    Page 11
10027704 v3 (73276.00002.001)

DocuSign Envelope ID: 5CBC9D11-A162-490E-8424-73563E1AE69F

*Executed on this* 4/13/2023 *day of April, 2023*


By: Cort Thomas
        361411AF70B740A...

Title:  Receiver