# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § § | |
| CARNEGIE DEVELOPMENT, LLC | § | HEARING REQUESTED |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § § | |
| *Defendants,* | § § § | |
| DJD LAND PARTNERS, LLC | § § | |
| LDG001, LLC | § § | |
| *Relief Defendants.* | § § § | |

**DEFENDANT TIMOTHY BARTON'S OBJECTION TO RECEIVER'S NOTICE OF
INTENDED AUCTION OF CONTENTS OF
2999 TURTLE CREEK BLVD AND CROSS-MOTION FOR A
<u>PRELIMINARY INJUNCTION AGAINST THE AUCTION</u>**

Defendant Timothy L. Barton objects to the Receiver's Notice of Intended Auction of

Contents of 2999 Turtle Creek Blvd [ECF No. 213] ("Notice"). The Defendant also respectfully

moves this Court for a preliminary injunction barring the Receiver from carrying out the auction

until a final judgment is entered in this matter. The Defendant respectfully requests that the Court,

for the avoidance of doubt, instruct the Receiver not to conduct the auction pending the resolution

- 1 -

of the objection herein and cross-motion for a preliminary injunction set forth herein. The Defendant also respectfully requests a hearing on the objection detailed herein and the motion for a preliminary injunction.

This Court should stop the proposed auction of personal property that happens to be present at the offices of JMJ Management. This auction does not represent the allegedly sensible management of the estate's portfolio of real estate assets pending final resolution of this matter. Instead, the proposed auction rests on the assumption that the Defendant will lose the underlying case brought by the SEC and JMJ Management will never resume operations, such that liquidating everything that JMJ used to operate its business now is an appropriate response to the inevitable. *That is not a proper objective for a pre-judgment receiver*, whose sole purpose is to preserve the status quo of business assets, pending a final judgment, for return to the Defendant or for use to satisfy a judgment depending on the outcome of the case. *Gordon v. Washington*, 295 U.S. 30, 37 (1935); *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981).

In addition, JMJ Management is not General Motors. It is not a publicly traded company, but instead a company closely held by the Defendant. The office of the undersigned counsel contains all sorts of items that belong to counsel personally, not the Firm. So too for the Defendant, who operated his business for more than 30 years and kept many items of his own personal property in the office. The Defendant—for better or for worse—was never once allowed to return to his office after this Court's order imposing the receivership was entered. He requested on numerous occasions to have an escorted tour of the office to identify personal property; the Receiver denied those requests. Just a week ago, the Receiver's solution was to give him a bunch of pictures and ask him to identify what was his. But the Receiver is demanding documentation that even trivial items belong to him. His children have identified numerous items that have been in the family for decades.

Some rapid fire auction of these items is neither necessary nor appropriate. When the Receiver wanted to sell the Defendant's house, the Court ordered the Receiver to store its contents elsewhere. Now the Receiver wants to sell the Defendant's office. That sale has not been approved by this Court, but even if it were, the minimum solution should be for the office's contents to be returned to the Defendant or stored. Nothing warrants the Receiver's permanent alteration of the status quo, which appears again aimed to prioritizing the liquidation of personalty that the Defendant holds dear rather than managing the major assets of the Estate.

At a minimum, the Receiver is again putting the cart before the horse. This Court has not approved the sale of the office, and any auction should await the resolution of that issue. In addition, the United States Court of Appeals for the Fifth Circuit is holding an expedited oral argument regarding the existence and extent of the Receiver's authorities *on Monday*, *May 1*. Any auction should await the Court's resolution of that appeal.

The Defendant's counsel made numerous entreaties to the Receiver to find a way to resolve this issue and keep it off the Court's docket, so that the parties can spend scarce resources on the important items. At every turn, the Receiver refused, necessitating this motion practice. The Receiver should be denied approval to conduct the proposed auction.

## BACKGROUND

On October 18, 2022, the Court appointed receiver Cort Thomas (the "Receiver") more than 164 entities affiliated with Defendant Timothy Barton. ECF No. 29. One month later, the Court entered an Order "Governing Administration of Receivership Estate, Etc. and Approving Disposition of Certain Personal Property." ECF No. 63 (the "Administrative Order"). That Administrative Order provided, in relevant part, the following rules governing the Receiver's disposition of personal property:

- 3 -

a. ***At least ten days prior to any sale or abandonment, the Receiver shall file a written Notice of the intended sale or abandonment*** of item of personal property valued above $1,500. The notice shall describe the property to be sold or abandoned and the manner in which it will be sold or abandoned.

b. ***The Receiver shall also serve by First Class Mail, the written Notice described above*** on every person who has made a written request to the Receiver. The Receiver may in his discretion provide additional notice as he deems appropriate.[1]

c. Any person who wishes to object to the proposed sale or abandonment shall file and serve a motion setting forth the objection and the basis for it, not more than five (5) days after the Receiver mails the Notice regarding the sale or abandonment.

d. If no objection is timely filed and served, the Receiver may sell or abandon the property without further order of the Court in accordance with these procedures and as described in the Notice.

e. ***If an objection is timely filed and served, the proposed sale or abandonment shall not be completed until the motion setting forth the objection has been decided by the Court***.

ECF No. 63 at p. 5–6, § 4 (emphasis added).

Importantly, the Administrative Order does not contemplate the Receiver selling personal property from the offices of the entities at 2999 Turtle Creek Blvd that are not owned by the receivership entities, but instead provides for the return of such property belonging to the individuals working there. *See, e.g.,* ECF No. 63 at p. 9.

For months, Mr. Barton and his counsel have demanded, over and over again, that the Receiver turn over his personal belongings and those of his adult children. Ex. A. In these communications, Mr. Barton also repeatedly asked for an opportunity to walk the offices at 2999 Turtle Creek Blvd so that he could see and account for what personal property of his that still

---

[1] While the Receiver's Notice quotes paragraphs (a), (c), (d), and (e) from Section 4 of the Administrative Order, the Receiver omits the key reference to Section 4(b).  Mr. Barton and his children have yet to receive any such mailing.

remained there.  *See, e.g.*, Ex. A.[2]    The Receiver, however, repeatedly refused Mr. Barton's requests.

Only months later, on April 20, 2023, the Receiver's counsel instead sent an email with a link to 1,157 photographs of personal items located at the Turtle Creek offices.  Receiver's App. [ECF No. 214] at 117.  In that email, the Receiver demanded that Mr. Barton and his children, *just two business days later* (i) review all of the photographs, (ii) identify all personal property in the photographs that they intended to claim as their personal property, and (iii) provide a receipt of purchase or a sworn statement regarding the means by which such property was acquired. Receiver's App. 123–24; *see also* Receiver's App. 4–109.  In making that demand, the Receiver was well aware that bank records generally do not have the level of detail necessary to make such a showing, that much of the personal property was acquired years ago and likely impossible to find a receipt for, the Receiver has cut off access to personal records of Mr. Barton that he might need to make the requested showing, and that Mr. Barton's Fifth Amendment privilege in parallel criminal proceedings impedes his ability to submit sworn statements in connection with these proceedings.[3]

On April 21, 2023, the very next day after sending Mr. Barton the photographs for review, the Receiver filed a Notice claiming that an auction of all of the personal property—even if not

---

[2] Because Mr. Barton was suddenly and forcibly removed by the Receiver on October 18, 2022, without an opportunity to gather or account for his belongings in those offices, he does not know the entirety of the property that the Receiver still keeps at that location.

[3] The Receiver previously has suggested, without providing legal support, that Mr. Barton could provide sworn statements regarding the property in the estate without waiving his Fifth Amendment privilege because of that property's claimed irrelevance to the underlying SEC and DOJ proceedings against him.  However, these arguments conflict with the Receiver's current filing, in which he now claims that many materials at issue in his possession "have evidentiary value" (ECF No. 213 n.1), and thus clearly relate in the Receiver's mind to the ongoing government actions against Mr. Barton.

proven to be owned by the receivership entities—would commence ten days later. ECF No. 213 at p. 4. Yet, even on the short timeline, Mr. Barton and *both* of his children, Max and Victoria, have submitted detailed lists of the personal belongings they claim are theirs and should not be disposed of. *See, e.g.,* Ex. B. The Receiver nonetheless refuses to maintain all of this property, and his counsel continues to claim that the Receiver will still auction most of that property away. *See, e.g.*, Ex. B.

In filing its Notice, and rushing to now sell personal property of disputed ownership, the Receiver also is aware that the Fifth Circuit is scheduled to hear expedited oral argument in the coming week, on May 1, 2023, as to whether the Receiver's appointment was proper and the appropriate extent of his authorities. *See SEC v. Barton, et al.,* Case No. 22-11132 (5th Cir. 2022). The Fifth Circuit very well may find on that appeal that the Receiver's appointment was erroneous and contrary to law, thus confirming that the Receiver lacks any authority to dispose of any property in his current possession.

In defending the basis for its current property sale efforts, the Receiver claims only that it is on the verge of transferring the Turtle Creek offices to third-party HNGH Turtle Creek, LLC ("HNGH") as part of putative "settlement" transaction with that entity. Notice at 2–3; *see also* ECF No. 210 (proposing HNGH transaction). However, that transaction requires Court approval and the briefing process for that sale will not be even close to concluded by the date of the proposed auction. In addition, because the Receiver has claimed ownership and/or other interests in the real property at issue, the proposed HNGH transaction requires the special procedures of 28 U.S.C. § 2001. ECF No. 213. That statute also specifically mandates that, before any sale of real property interests by a receiver, three disinterested appraisers must be appointed, public notice of the proposed sale must be published, and a hearing must be held on the propriety of the sale. *See also* ECF No. 63 at p. 2, § A(1)(b) (requiring hearing on *all* motions filed by the Receiver). But the

Receiver has taken no steps toward the satisfaction of those requirements.  Even if the Receiver had taken those steps, the HNGH transaction, as the Receiver initially proposes it, would not require the Turtle Creek property to be transferred to HNGH until June 9, 2023.  ECF No. 210-1 (Settlement and Release Agreement § 4).  That transfer date will almost certainly be moved to a later date in light of the issues above, if the sale is ever approved.

In light of these timelines, and ongoing questions regarding the ownership and authority of the Receiver to dispose of the personal property identified in the Notice, Mr. Barton opposes the Receiver's proposed auction.

**RESPONSE TO RECEIVER'S AUCTION NOTICE**

This Court should reject the Receiver's proposed auction of personal property.  The proposed auction is premature and unnecessary and, if approved, it threatens to result in a disposal of Mr. Barton's and other individuals' personal belongings having nothing to with the Receiver's management of the estate.

The timing of the current proposed personal property sale is concerning.  Within days, the Fifth Circuit is set to hear oral argument regarding the propriety of the Receiver's appointment and whether he has the authority to engage in the types of liquidation measures that his Notices reflects he continues to seek to do.  By rushing to accomplish such a disposal of property set forth in the current Notice, the Receiver's actions threaten to upend the status quo and will result in substantial prejudice to the rights and interests that Mr. Barton seeks to preserve on that appeal.

The liquidation of all personal property—including those of the businesses—assumes an final outcome in this case:  That the Government will prevail in the instant suit and that the Defendant's business will never again resume operations.  That is exactly the type of assumption a prejudgment receiver should not be making.  Such a winding down of business is reserved for if, and when, the Government obtains a judgment and if it is then apparent the Defendant's business

will not be returned to him.  It likewise makes no sense to liquidate the business contents and other personal property of de minimis value found in the company offices.  This is especially so when substantial commercial assets remain, which can be sold, and business operations should remain ongoing.  To proceed otherwise would suggest a presumed outcome in this case and an intention by the Receiver to liquidate from the outset, rather to manage and maintain the status quo.

The Receiver's professed desire to vacate the 2999 Turtle Creek Blvd offices, and let HNGH take over, does not change the analysis.  As an initial matter, the Court has not approved the sale of that property to HNGH.  And, on its face, that transaction cannot be approved, because that proposed transaction contemplates the sale of real property interests, which can only be consummated under 28 U.S.C. § 2001.  That statute includes a number of requirements, from hiring independent appraisers, to providing public notice, to establishing justifications for the sale at a public hearing.  While that process will take weeks, if not more, to complete, the Receiver has not even started.  Even if that transaction were approved tomorrow, by the Receiver's own representations, the 2999 Turtle Creek Blvd offices will remain in his possession for at least another six weeks. ECF No. 210-1 (Settlement and Release Agreement § 4) (seeking approval of a potential move-out date of June 9, 2023). There is therefore no need to move out now, much less to sell all of the personal belongings found inside.

In any event, the Court's solution for the Receiver's desire to sell or vacate a property, when the property contains personal property affecting the Defendant's interest, is to have it stored elsewhere.  ECF No. 104 at 2–3.  Such a solution is consistent with preserving the status quo pending a final judgment in this matter and a sensible sorting of the personal property issues.  And that should be the solution for any asserted Receiver need to prepare the premises for a proposed but not approved sale.

The Receiver's proposed auction also has entangled business personal property with the personal belongings of Mr. Barton, his children, and other individuals who previously worked at the offices. The Receiver has repeatedly made it impossible for those individuals to recover all of their personal property, often interfering with Mr. Barton's efforts to walk the offices to account for his belongings. To date, there remains substantial personal property in those offices belonging to individuals that the Receiver has no basis to sell. While disputes remain over the ultimate ownership of that property, it is not appropriate for the Receiver to sell it now. At a minimum, the Receiver should have presented such personal property ownership disputes to the Court for resolution, before attempting to sell it. The Receiver has had months to seek such relief, but simply chose not to do so. Instead, he made the improvident decision of giving Mr. Barton and his children a single day's notice of the of the personal items scheduled for sale, before then filing a Notice with this Court stating that an auction would occur ten days later. Should the Receiver move forward to sell personal property of the Bartons that has become entangled with the other business property located the Turtle Creek offices, that action will achieve nothing productive, but rather embroil the estate in further dispute and new liability concerns. *See Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir. 1990) (holding there is no absolute immunity if court order appointing official is clearly lacking in jurisdiction or appointed official acts outside the scope of jurisdiction granted); *Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 151 (10th Cir. 2009) (holding that complainant properly alleged lack of absolute immunity, where receiver took assets that did not belong to the person subject of the receivership and also allegedly engaged in fraud); *In re Ocean Tower LP*, No. 11-70776, 2014 WL 6686542, at *5 (Bankr. S.D. Tex. Nov. 25, 2014) (holding that state court receiver doubtfully enjoyed derivative judicial immunity in fraudulent transfer matter); *see also* 28 U.S.C.A. § 959 ("[R]eceivers or managers of any property . . . may

be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.").

In sum, the Receiver's premature Notice should be stricken and the proposed auction of personal property stayed, until surrounding ownership and other related matters can be resolved.

## APPLICATION FOR PRELIMINARY INJUNCTION

Mr. Barton, in the alternative, respectfully requests that the Court enter a preliminary injunction against the Receiver's attempted sale of personal property from the 2999 Turtle Creek Blvd offices, pending a final judgment in this matter.

A "preliminary injunction's purpose is to maintain the status quo until the parties have the chance to adjudicate the merits." *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 389 (5th Cir. 2023). To obtain a preliminary injunction, the following requirements must be shown: (1) the movant is likely to prevail on the merits; (2) there is a substantial threat that irreparable injury will result in the absence of an injunction; (3) the threatened injury to the movant outweighs the threatened harm an injunction may cause to the nonmovant; and (4) the injunction will not disserve the public interest. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Here, all four elements are met.

*First*, Mr. Barton is likely to prevail on the merits as to the relief sought by the SEC and the Receiver in this case. Not only are the SEC's claims premised on mischaracterizations of fact and tenuous legal theories, the merits of the SEC's receivership application flatly contravene black-letter law. As an initial matter, the Defendant is likely to succeed in his challenge to the auction itself. The sole proper purpose of a prejudgment receivership is to preserve the status quo of estate assets, for the return of a business to the Defendant or for use by the Court in the event that the Plaintiff's claims are successful. *Gordon*, 295 U.S. at 37; *First Fin. Grp.*, 645 F.2d at 438. Whatever the merits of authorizing a sale of a business asset as a matter of prudent interim

management of a business, the proposed auction assumes there will be no business to operate at the end of this case. While that may be the SEC's aspiration, approving this auction now puts the cart before the horse. Accordingly, the Defendant is likely to succeed in any challenge to the auction itself.

In addition, the Fifth Circuit is hearing an expedited challenge to the Receiver's appointment and authorities, and those underlying challenges enhance the Defendant's likelihood of success in its claims against the proposed auction. Among other things, the SEC has not and cannot show, under the circumstances of this case, that a receivership over 164 different entities (including a number of non-defendants and unnamed third parties) is of "clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). Further, Fifth Circuit law does not allow the Receiver to obtain a receivership over non-defendant parties who have been accused of no wrongdoing and have not been shown to have improperly received investor funds. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). Nonetheless, a receivership has been imposed, without legal or factual justification, over 164 entities with no connection to this lawsuit. And the appointed Receiver has since seized substantial personal property belonging to other individuals under the auspices of this Court's appointing order, without valid authority to do so. On the merits, Mr. Barton is clearly in the right in contesting the events that have unfolded and the claims of relief urged by the SEC in this case.

*Second*, irreparable harm will result in the absence of an injunction if this Court were to approve the Receiver's proposed auction of personal property from 2999 Turtle Creek Blvd. Once that auction moves forward, all of the personal property sold will be scattered to hundreds of different buyers, making it infeasible, if not impossible, to recover. That harm will be felt especially hard by Mr. Barton, his children, and the other individuals who have been unable to

- 11 -

recover their belongings from the Turtle Creek offices that the Receiver now attempts to sell. Many of these personal belongings include property that the Barton family acquired many years ago or were gifted from other family, friends, and colleagues. Further, irreparable injury will result from the entities' loss of business personal property currently under the Receiver's control. Those entities—at least until the Receiver's appointment—included multiple operational businesses, overseeing millions of dollars of real estate development work. To continue operations, after those entities are returned to Mr. Barton, the offices including any office equipment, furnishings, and other business items, need to remain in place for future use.

*Third*, the injury that will be caused in the absence of an injunction outweighs any interest that the Receiver may claim to the contrary. The personal property located in the offices is currently being stored for free and could even be stored at a third-party location for minimal expense. The value of the property being sold also is of minimal value, as compared to the other substantial assets, worth tens of millions of dollars, held by the many entities under the Receiver's control. The Receiver's only claimed interest in fire-selling the personal property now relates to a prospective transfer of the building to another third-party in June 2023. However, that transaction has not been approved by the Court, and, in light of the Receiver's failures to comply with 28 U.S.C. § 2001, prior to attempting to sell that property, the sale cannot go forward under its present posture to the Court. Even then, the personal property could be stored elsewhere pending resolution of the parties' disputes regarding its ownership.

*Finally*, the injunction sought by Mr. Barron will not disserve the public interest. The public has no interest in the Receiver selling away personal belongings of Mr. Barton and his family. And it is in the public interest that such a dramatic deprivation of property not occur, without due process and an opportunity for the property owners to be heard. The Receiver's proposed auction should thus be enjoined.

- 12 -

The matters addressed herein, and the grounds on which Mr. Barton moves for the entry of a preliminary injunction are of serious nature and should be expediently resolved.  To the extent the Receiver does not intend to withdraw his Notice and stop the proposed auction, Mr. Barton respectfully asks that an expedited briefing schedule be ordered, and the relief sought herein addressed in turn prior to any auction moving forward.

## CONCLUSION & PRAYER

For the foregoing reasons, Defendant Timothy Barton respectfully requests that the Court stay or enjoin the Receiver's proposed auction of personal property, as set forth in the Receiver's Notice [ECF No. 213] dated April 21, 2013, and grant all other relief to which he shows himself to be entitled.

Dated: April 27, 2023                    Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(Admitted to NDTX)*
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 *(admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

**COUNSEL FOR TIMOTHY LYNCH BARTON**

- 13 -

**CERTIFICATE OF CONFERENCE**

On April 21, 2023, I emailed the Receiver's counsel to request the Receiver's position on a motion for preliminary injunctive relief against the sale of the property referenced herein.  The same day, counsel indicated the Receiver's opposition, which is further reflected in the *Receiver's Notice of Intended Auction of Contents of 2999 Turtle Creek Blvd* [ECF No. 213, *see* n.4].  Therefore, the alternative motion for preliminary injunction is presented as opposed.

*/s/ Michael J. Edney*
Michael J. Edney

**CERTIFICATE OF SERVICE**

On April 27, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney