# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

SECURITIES AND EXCHANGE § 
COMMISSION, §
 §
*Plaintiff*, §
 §
v. §        No. 3:22-cv-2118-X
 §
TIMOTHY BARTON, §
CARNEGIE DEVELOPMENT, LLC, §
WALL007, LLC, §
WALL009, LLC, §
WALL010, LLC, §
WALL011, LLC, §
WALL012, LLC, §
WALL016, LLC, §
WALL017, LLC, §
WALL018, LLC, §
WALL019, LLC, §
HAOQIANG FU (A/K/A MICHAEL FU), §
STEPHEN T. WALL, §
 §
*Defendants*, §
 §
DJD LAND PARTNERS, LLC, and §
LDG001, LLC, §
 §
*Relief Defendants*. §

**RECEIVER'S RESPONSE TO DEFENDANT BARTON'S
OBJECTION TO RECEIVER'S NOTICE OF INTENDED
AUCTION OF CONTENTS OF 2999 TURTLE CREEK BLVD, AND
<u>MOTION TO STRIKE CROSS MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

SUMMARY ......................................................................................................................... 1

RESPONSE TO BARTON'S FACTUAL STATEMENTS........................................................ 2

     A.     The Receivership Order and Barton's Repeated Requests for a Stay.................... 2

     B.     The Admin Order ................................................................................................ 5

     C.     Efforts to Sell Receivership Assets and Identify Any Property that Is Not a Receivership Asset ............................................................................................. 5

ARGUMENT ..................................................................................................................... 10

     A.     Legal Standard ................................................................................................. 10

     B.     The Auction is in the Best Interest of the Receivership Estate............................ 11

     C.     Response to Barton's Inaccurate, Disingenuous or Unsupported Arguments ...... 12

           1.     Authority to Sell or Otherwise Dispose of Property, as Necessary to Maximize the Value of the Estate, is Not Stayed Until Entry of a Final Judgment ..................................................................................12

           2.     The Receiver Has Not Sold 2999 Turtle Creek Blvd and Thus Need Not Comply with 28 U.S.C. § 2001 ..................................................13

           3.     Through the Auction, the Receiver Does Not Seek to Sell or Dispose of Non-Receivership Assets ..........................................................14

           4.     Barton Has Not Identified, and the Receiver Is Unaware of, Legitimate Third-Party Claims to the Assets Included in the Auction ..................................................................................................16

           5.     Threatened Challenges to the Receiver's Immunity Have No Factual or Legal Basis................................................................................17

     D.     Alternatively, the Court Should Compel Barton, Individually, to Pay the Costs of Moving and Storing the Office Contents ............................................. 19

     E.     Motion to Strike Motion for Preliminary Injunction ........................................... 19

CONCLUSION.................................................................................................................. 20

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Fharmacy Records v. Nassar*
  No. 05-72126, 2008 WL 11355569 (E.D. Mich. Dec. 4, 2008) ............................................. 21

*First Fin. Grp. of Texas*
  645 F.2d at 438 .................................................................................................................. 14

*FTC v. Consumer Def., LLC*
  No. 2:18-CV-30 JCM, 2019 WL 266287 (D. Nev. Jan. 18, 2019).......................................... 13

*Gordon v. Washington*
  295 U.S. 30, 55 S. Ct. 584, 79 L. Ed. 1282 (1935)................................................................. 13

*Havlik v. United States*
  No. 2:18-CV-00692, 2019 WL 4491635, (W.D. La. Sept. 17, 2019) ...................................... 21

*In re Ocean Tower LP*
  No. 11-70776, 2014 WL 6686542 (Bankr. S.D. Tex. Nov. 25, 2014) ..................................... 19

*Seaman Paper Co. of Massachusetts, Inc. v. Polsky*
  537 F. Supp. 2d 233 (D. Mass. 2007) ..................................................................................... 19

*SEC v. Arkansas Loan & Thrift Corp.,*
  427 F.2d 1171 (8th Cir. 1970) ................................................................................................ 10

*SEC v. Elliott*
  953 F.2d 1560 (11th Cir. 1992) .............................................................................................. 11

*SEC v. Safety Fin. Serv., Inc.*
  674 F.2d 368 (5th Cir. 1982) .................................................................................................. 10

*SEC v. Stanford Int'l Bank, Ltd.*
  927 F.3d 830 (5th Cir. 2019) .................................................................................................. 10

*SEC v. TLC Investments & Trade Co.*
  147 F. Supp. 2d 1031 (C.D. Cal. 2001) .................................................................................. 13

*Teton Millwork Sales v. Schlossberg*
  311 F. App'x 145 (10th Cir. 2009) .......................................................................................... 18

*Turney v. O'Toole*
  898 F.2d 1470 (10th Cir. 1990) .............................................................................................. 18

*United States v. Antiques Ltd. P'ship*
  760 F.3d 668 (7th Cir. 2014) .................................................................................................. 20

*United States v. Stafford,*
  273 Fed. Appx. 319 (5th Cir. 2008)......................................................................... 16

**Statutes**

28 U.S.C. § 1292............................................................................................................ 20

28 U.S.C. § 2001........................................................................................................... 14

28 U.S.C. § 959............................................................................................................. 19

Cort Thomas, as Receiver, responds to Barton's Objection to the Receiver's Notice of Intended Sale (the "Objection") and also moves to strike Barton's Cross-Motion for a Preliminary Injunction staying the auction, (Dkt. 223).  In support, the Receiver respectfully shows the Court as follows.

## SUMMARY

As required by the Order Appointing Receiver, (the "Receiver Order") Dkt. 29, and as disclosed in his Notice of Intended Auction, Dkt. 213 (the "Notice") the Receiver seeks to preserve Receivership Assets by (1) vacating an office[1] for which the Receivership Estate would otherwise incur maintenance expenses and possible rent as required by a settlement agreement; (2) selling, by auction, the contents of the Office[2] which are Receivership Assets; and (3) in the process, minimizing the costs of storing or moving the Office Contents.  The Receiver does not seek to sell items that belong to third parties, only property that belongs to the Receivership Entities.  Indeed, the Receiver has gone to great lengths to identify non-Receivership Entity property and has already authorized retrieval or removal from the auction of items stored at the Office for which he received confirmation that such items are not Receivership Assets.

In contrast, Barton seeks, again (although through a different mechanism this time) the stay that this Court has denied multiple times.[3]  His arguments, that the Court should preserve the "status quo" and that for various reasons the auction is improper, do not merit an order staying or otherwise denying permission for an auction of the Office Contents as described in the Receiver's

---

[1] The location at issue is 2999 Turtle Creek Blvd., the office location previously used by virtually all Receivership Entities (the "Office").

[2] The "Office Contents," which are also the items the Receiver seeks to include in the proposed auction.

[3] The Fifth Circuit also denied Barton's Motion for Stay.

Notice. The Court should overrule Barton's Objection and strike the requested preliminary injunction as improper.

As outlined below, the Receiver has requested, multiple times and in various ways, that Barton and others identify personal belongings that are not Receivership Assets. Where items appear to be Receivership Assets but an individual claims that the items is their personal property (*e.g.*, office furniture, a trailer, etc.), the Receiver has requested either some proof of personal ownership or a sworn statement from anyone with personal knowledge of the ownership of the item. To date, every identified individual other than Barton has complied with this request. Barton has identified twenty-nine items – out of over 1,000 total auction items – that he claims are his personal property, yet he refuses to provide any proof of ownership or sworn declaration from anyone with knowledge of this ownership. These twenty-nine items include the large, primary conference table from the office, other office furniture, and a coffee machine, among other things. Rather than forestall the entire auction, the Court should either (1) permit the Receiver to sell these items, (2) order the Receiver to move and store these items (at Barton's cost), or (3) permit the Receiver to turn over these items to Barton irrespective of any potential ownership claim of the Receivership Entities.

**RESPONSE TO BARTON'S FACTUAL STATEMENTS**

**A.    The Receivership Order and Barton's Repeated Requests for a Stay**

1.    On or about October 18, 2022, over Barton's objection, the Court entered the Receivership Order. Pursuant to the Receivership Order, the Court assumed exclusive jurisdiction and control over all Receivership Assets,[4] and instructed the Receiver to take possession of those assets. Dkt. 29. The Receivership Order also compelled Barton to identify, within 20 days of the

---

[4] Receivership Assets are "the assets, of whatever kind and wherever situated . . . of the Receivership Entities. Dkt. 29, ¶ 1.

date of the Order, all Receivership Assets. *Id.* ¶ 9.  Barton has not complied.  *Thomas Dec.,* Exh. A (APP001-009).

2.     Since October 18, 2022, the "status quo" has been the Court's possession and control over all Receivership Entities and Receivership Assets, and the Receiver's mandate to maximize the value of the Receivership Estate. Dkt. 29, ¶6.

3.     Barton filed a motion for rehearing regarding entry of the Receivership Order, which the court denied. Dkt. 32.

4.     Performing his mandate has required decisions and activities necessary to sell certain properties and settle certain claims to maximize the value of the Receivership Estate.  *See* Dkt. Nos. 76, 95, 110, 161, 164, 167.  These continuing activities, rather than any stasis, are also the "status quo."[5]

5.     For example, Barton previously objected to the Receiver's sale of the Rock Creek Property, arguing that entry of the Receivership Order was an error or an abuse of discretion, and seeking an order staying the sale.  *See* Dkt. No. 91.  While the Court ultimately overruled Barton's objections to the sale (Dkt. Nos. 104, 202), the Court instructed the Receiver to

> "remove Barton's personal items from the Property before the Property is sold, and to place them in storage at the expense of the receivership estate. If storage expenses cause the personal items to rapidly deteriorate in value when compared to the cost of the storage, the Receiver may seek Court approval to sell the items, and Barton must notify the Court in response if he will pay the storage costs to avoid a sale."

Dkt. 104 (footnote omitted).

6.     As the Receiver has informed the Court, sale of the Rock Creek Property did not close because Barton interfered and also appealed that Order.  Dkt. Nos. 133, 139.  Accordingly,

---

[5] The Receivership Order authorizes the Receiver, "without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property."  Dkt. 29 ¶ 39.

because not moving and storing the contents of Rock Creek eliminates the related costs, the furnishings Barton contends are his personal property which are located in the Rock Creek Property, remain there.[6] *Thomas Dec.,* Exh. A (APP001-009).

7.      Despite the Court's approval of the sale of the Rock Creek Property and the approval of two additional sales,[7] the Receivership Estate has not yet received the proceeds of any sale approved by the Court. *Thomas Dec.* Exh. A (APP001-009).

8.      Barton also objected to the Court's orders identifying numerous other entities within the scope of the Receivership Order, and again argued the Court erred in entering the Receivership Order. Dkt. 55. The Court overruled those objections. Dkt. 62.

9.      Barton filed a motion to stay the case, including the Receivership, during his appeal of the Receivership Order. Dkt. 71. The Court denied the motion for stay. Dkt. 132.

10.     Following his appeal of the Receivership Order, Barton filed a motion for stay in the Fifth Circuit, which was also denied. Dkt. 122.

11.     Barton objected to the Receiver's settlement with DLP Capital, contending entry of the Receivership Order was error. Dkt. 106. The Court overruled the objection. Dkt. 109.

12.     Barton filed a motion to stay the DLP Settlement, again contending, among other things, that entry of the Receivership Order was an error, and the Settlement was premature given the absence of a final judgment and the pending interlocutory appeal. Dkt. 114. The Court denied the motion to stay the DLP Settlement. Dkt. 219.

---

[6] Items that are inherently personal were returned to Barton and his children during the first days of the Receivership.

[7] The Court has approved the sale of the Frisco Gate Property and the Amerigold Suites, Dkt Nos. 140, 202, neither of which has successfully closed as of the date of this Response.

**B.      The Admin Order**

13.      Shortly after his appointment, in an effort to streamline processes and potentially save costs related to his work, the Receiver moved the Court for an Order Governing Administration Of Receivership Estate, Etc. and Approving Disposition Of Certain Personal Property (the "Admin Order"), which the Court granted. Dkt. Nos. 43, 63.

14.      The Admin Order establishes procedures for *Motions filed by the Receiver*, Dkt. 63 at p. 2 (Section A.1.b), and separate procedures for sales of personal (non-real estate) property. Notice of intended disposition—by auction or otherwise—requires a notice filed at least ten days before the disposition, mailing the Notice to *every person who has made a written request*, and the Court's resolution of any objection to the disposition. *Id.* at pp. 5-6 (Section B.4).

15.      In filing the Notice, the Receiver has followed these procedures.[8]  He has received no written requests for notice of an intended disposition, filed his Notice more than ten days before the proposed auction, and is waiting on the Court's resolution of Barton's objection before proceeding with the auction, if permitted to do so.

**C.      Efforts to Sell Receivership Assets and Identify Any Property that Is Not a Receivership Asset**

16.      As discussed in the Receiver's Verified Motion to Approve Settlement Agreement with HNGH Capital, pursuant to a court-ordered mediation, the Receiver settled a dispute with HNGH Capital (the "HN Settlement"), which requires the Receivership Entities to vacate the Office.[9] Dkt. 210 (the "HN Settlement Motion"). The HN Settlement does not involve the Receiver's sale of any real estate.  *See id.*

---

[8] In an Appendix filed concurrently, the Declaration of Cort Thomas ("Thomas Dec.") is submitted in support of this Response.  No person has made a written request for service by mail of the Notice. *Thomas Dec.*, Exh. A, (APP001-009).

[9] The Receiver requested the Court's approval of the settlement agreement although the Receivership Order authorizes the Receiver to enter into such agreements without further Court approval.  Dkt. 29, ¶ 39.

17.     On the date the Receivership Order was entered, the Receiver assumed possession of the Office. *Thomas Dec.*, Exh. A (APP001-009). On that date, Victoria Barton and another female employee removed several boxes of items they alleged were their personal property.  On the same day and subsequently, other persons, including Vance McMurray, Randy Marx, Byron Rowlett, Ben Pamenari, Aria Pamenari, Jeremy Morelli, and Max Barton have also removed items, with the Receiver or his counsel's supervision, that either were inherently personal or that they demonstrated were not Receivership Assets.  *Id.*

18.     On numerous dates and in several different ways, the Receiver has repeatedly requested that Barton identify the provenance and ownership of art located in the Office.  *Thomas Dec.*, Exh. A (APP001-009); *see also* Dkt. Nos. 84, 133.   Barton, however, identified all such art as his own personal property.  *See* Dkt. 160.

19.     Based on their location and the nature of the items at issue, the Office Contents— the property for which permission to auction is requested—are reasonably presumed to be owned by the Receivership Entities.  Further, through discussions with prior tenants or other individuals who have personal knowledge of the matters at issue, the Receiver has confirmed that certain items located in the Office which Barton asserts (without providing support or a sworn statement) are not Receivership Assets, were in fact purchased by third-parties with Receivership Entity funds or credit cards. *Thomas Dec.*, Exh. A (APP001-009).

20.     Rather than "rushing" to sell or otherwise dispose of the Office Contents, the Receiver has engaged in prolonged discussions with Barton, as well as his adult children, Victoria and Max, regarding identification and removal of personal property from the Office.  Until very recently, however, the Receiver's requests were generally met with silence, obstruction, or bare arguments rather than any evidence. *Thomas Dec.*, Exh. A (APP001-009).

- 6 -

21.     For instance, on February 13, 2022, the Receiver's counsel requested from Barton, Max, and Victoria, within ten days from the date of the letter,

> "(1) a list of all personal property you claim is currently in the Receiver's possession and, (2) proof of ownership, through either (a) a receipt or other sufficient proof of purchase or (b) a sworn statement that the item(s) are your personal property and that you own the property. For each item you received after March 1, 2017, if any, please include a sworn statement that the item was neither purchased with any Receivership Entity funds, nor a gift from Timothy Barton or any Receivership Entity."

*Thomas Dec.*, Exh. A-1 (APP010-015).

22.     The same letter requested that each recipient "advise any family, friends, or acquaintances who claim to have personal property in the Receiver's possession they must follow the same procedure outlined above."  *Id.*  No person, except as discussed below, contacted the Receiver to request permission to remove personal belongings from the Office.

23.     Barton did not respond to the February letter from the Receiver's counsel until March 21, 2023, when he provided a list of items he wished to exclude from the auction, but failed to provide any proof that the items listed were his personal property. *Thomas Dec.*, Exh. A-4 (APP023-027).

24.     In a March 29, 2023 letter to Barton's counsel, the Receiver informed Barton that an auction would occur no later than April 24, 2023, and asked for evidence of Barton's purportedly personal ownership before that date.  True and correct copies of letters sent regarding identification and retrieval of personal items from the Office are attached to the Thomas Declaration. *Thomas Dec.,* Exh. A-5 (APP028-030).

25.     Because Barton has professed an inability to recall what personal items are located in the Office, in a call with Barton's counsel, the Receiver agreed to provide photos of all items to be included in the auction, to refresh Mr. Barton's recollection regarding items he claims were not

purchased with Receivership Assets.[10] *Thomas Dec.*, Exh. A (APP001-009).  A link to the auction website which included photos of all items included in the auction was accordingly provided to Barton, counsel for Max, and Victoria. *Thomas Dec.*, Exh. A-6 (APP031-033).

26.     As requested, Victoria and Max provided Declarations identifying specific items located in the Office that they swore were not purchased with Receivership Assets.  *Thomas Dec.* Exhs. A-9, A-10 (APP043-047, APP048-052). The Receiver has removed from the auction all items identified by Max and Victoria and will return them at a mutually convenient date and time. *Id.*

27.     Barton, however, again provided a long list of items he asserted were his personal property, but again provided no evidence of any kind and refused to submit a sworn statement from anyone with knowledge.  *Thomas Dec.*, Exh. A-8 (APP038-042).

28.     Nonetheless, the Receiver agreed to remove from the auction items that were inherently personal, but again requested *some* confirmation from Barton other than his bare assertion, that items he claimed from the Office, including a large conference table, other office furniture, and a break room coffee maker were not purchased by Receivership Entities and therefore Receivership Assets. *Thomas Dec.*, Exh. A-8 (APP038-042).

29.     Barton, however, responded with much of the same: a long list unsupported by any evidence, complaints, and threats. *Thomas Dec.*, Exh. A-8 (APP038-042). Although the Receiver agreed to remove from the auction items that are inherently personal, the list Barton nonetheless

---

[10] The Receiver does not believe that allowing Mr. Barton to tour the Office is wise under the circumstances. Furthermore, providing a link to the proposed auction (which was prepared at no cost to the Receivership Estate) is far more economical and efficient and ensures that only Receivership Assets are sold via the auction.

contends are his personal property include items such as the primary and very large conference table and other office furnishings, speakers, and two TVs.[11]

30.    For the first time, on April 24, 2023, Barton also claimed that certain prints stored in the basement of the Office, which the Receiver had been informed were hung in a prior office location used by the Receivership Entities, were owned by a third-party.  The Receiver requested that Barton notify the individual who purportedly owned the prints about the auction and provide contact information for that individual.  Barton did not comply.  *Id.*

31.    The Receiver, however, independently communicated with counsel to and members of the family of the individual identified by Barton.  To the extent the individual identified by Barton confirms his ownership of the property, these items will be pulled from the auction.  *Thomas Dec.*, Exh. A-8 (APP038-042).

32.    In addition to the Office Contents that will be included in the auction, binders of formation documents for most of the Receivership Entities, computers, and documents were also located in the Office.  *Thomas Dec.*, Exh. A (APP001-009)*, see also* Dkt. 41, 42, 43 and Dkt. 67.  These items have been packed by professionals and moved to storage.  *Thomas Dec.*, Exh. A (APP001-009).

---

[11] The lot numbers for the 29 disputed items Barton contends are his personal property for which the Receiver has requested some evidence to substantiate that assertion are as follows: Lot 9, Sonos speaker; Lot 60, Panasonic flat screen TV; Lot 70, DeWalt reciprocating saw (already excluded based on Max Barton's Declaration); Lot 101, Round table; Lot 154, painting; Lot 164, executive office chair; Lot 169, Set of two wood upholstered side chairs; Lot 170 Set of two wood upholstered side chairs (same as 169- both 169 and 170 are excluded based on V. Barton's evidence); Lot 173, executive desk; Lot 176, office chair; Lot 197, woman figurine and letter opener; Lot 202, Nespresso espresso machine; Lot 281 Nutribullet; Lot 282, Nutribullet and accessories; Lot 407, inversion table; Lot 433, folding table; Lot 509 taupe cloth sofa; Lot 582, double axel trailer (excluded based on Max's Declaration); Lot 583, mowing attachment for tractor (excluded based on Max's Declaration); Lot 584, John Deere 790 tractor (excluded based on Max's Declaration); Lot 587 Holmes speakers; Lot 618, miscellaneous tool (excluded based on Max's Declaration); Lot 711, electric scooter (excluded based on Max's Declaration); Lot 725, shredded tires (excluded based on Max's Declaration); Lot 745, hydraulic jack; Lot 795, dining table and 8 chairs; Lot 797, sideboard; Lot 911, conference table and 14 chairs; Lot 917, flat screen tv.  Collectively, excluding those items for which Max Barton or Victoria Barton provided evidence of personal ownership, these items are the "Disputed Items").

33.     Following the Receiver's Notice of Auction, Barton filed his Objection.  Rather than seeking to exclude from the auction certain items he contends are his personal assets, Barton seeks to wholly prevent any auction until a final judgment is entered.

34.     The Court should overrule Barton's Objection and authorize the auction to proceed. Regarding the Disputed Items, the Court should (a) permit the Receiver to sell these items in the auction, (b) order the Receiver to move and store these items (at Barton's cost), or (c) permit the Receiver to turn over these items to Barton irrespective of any potential ownership claim of the Receivership Entities.

35.     The Court should also strike Barton's request for injunctive relief because his request to stay the auction, framed as a request for injunctive relief to create the appearance of interlocutory jurisdiction, seeks the same relief this Court and the Fifth Circuit have already rejected.

**ARGUMENT**

The few authorities provided and the arguments advanced in the Objection do not support denying authority for the auction to proceed.

**A.    Legal Standard**

"In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership."  *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019).  The Receiver's authority and discretion derives from the district court's authority.  *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) ("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse") (*quoting SEC v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)); *see also SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992).

- 10 -

**B.**     **The Auction is in the Best Interest of the Receivership Estate**

The basis for, necessity of, required timing and the benefits to the Estate regarding the HN Settlement are explained in the HN Settlement Motion, and are incorporated here by reference.[12] Pursuant to the HN Settlement, the Receivership Entities must vacate the Office no later than June 9, 2023.  Had the HN Settlement not occurred, however, the Receiver would nonetheless have vacated the Office to either elminate a claim by HN Capital that the Receivership Estate owed rent or lease payments for continuing to occupy the Office, or to lease the Office to a third-party and thereby generate income.  *Thomas Dec.*, Exh. A (APP001-009).  Doing neither until a final judgment is entered as Baton proposes, ignores the Receiver's mandate to maximize the value of the Estate, HN Capital's claim of ownership to the Office,[13] the Receiver's authority to enter into the HN Settlement even without court-authority, and the several times this Court and the Fifth Circuit have denied Barton's requested stay.

In anticipation of vacating the Office, since nearly the first days of the receivership and despite Barton's well-documented refusal to cooperate,[14] the Receiver has endeavored to coordinate removal of personal property stored or located there, if such property was not a Receivership Asset, *i.e.*, purchased by a Receivership Entity.   For example, in his Motion requesting the Admin Order, the Receiver identified numerous items that he sought to sell, store, or otherwise dispose of.  Dkt. 47.  Selling the remainder, most of which are furnishings, eliminates the cost of moving and storing them, while concurrently generating income from their sale.  Moreover, the items included in the auction are all located *at the Office*.  Unless inherently

---

[12] Without the further expenditure of legal fees and the unncertainty of generating *any* recovery through such effort, the HN Settlement results in a recovery of $2.5M for the Estate.  *See HN Settlement Motion*

[13] HN Capital sought to intervene and requested the Court's declaration that it owned the Office.  Dkt. 69.  Following the Receiver's response, Dkt. 94, the Court ordered the Receiver and HN Capital to mediate.  Dkt. 154.

[14] *See* Dkt Nos. 84, 133, 139, 225.

personal, such as clothing, cigars, desk contents or the like, absent evidence to the contrary, the Office Contents are accordingly reasonably presumed to be Receivership Assets. *Thomas Dec.*, Exh. A (APP001-009).

In oposing the auction, Barton provided no evidence that any item included in the Office Contents belongs to any person or entity other than the Receiveship Entities that occupied the Office. *Thomas Dec.*, Exh. A (APP001-009). In requesting such evidence, the Receiver did not set a high bar or demand any unreasonable degree of certainty or proof. *See Thomas Dec.*, Exhs. A-1, A-3, A-5, A-8, A-9, A-10 (APP001-009, APP020-022, APP028-030, APP038-042, APP043-047, APP048-052). Max and Victoria both provided the requested Declarations. *Thomas Dec.* Exh. A-9, A-10 (APP043-047, APP048-052). Barton has chosen not to do so. *Id.*

Nor has Barton offered to pay the costs of his proposed indefinite delay. Because auctioning the Office Contents serves the best interests of the Receivership Estate by maximizing its value, the Court should overrule Barton's Objection and authorize the auction.

**C.    Response to Barton's Inaccurate, Disingenuous or Unsupported Arguments**

**1.    Authority to Sell or Otherwise Dispose of Property, as Necessary to Maximize the Value of the Estate, is Not Stayed Until Entry of a Final Judgment**

As demonstrated in numerous filings, as well as the several instances in which this Court and the Fifth Circuit have denied Barton's request for a stay, the Receiver's obligation to maximize the value of the Receivership Estate, including through sales as necessary, is not contingent on entry of a final judgment. *See FTC v. Consumer Def., LLC*, No. 2:18-CV-30 JCM, 2019 WL 266287, at *3 (D. Nev. Jan. 18, 2019) ("Courts regularly . . . authorize the sale of those [frozen] assets prior to finding liability in order to preserve the value of the estate."); (authorizing pre-judgment sale of real estate assets, due to high costs of maintaining "stasis," impending expiration of master use permits necessary for development, and timeline for a third-party purchaser to

comply with building requirements); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) ("[L]iquidation . . ., prior to entry of judgment, is appropriate because the evidence . . . demonstrated that the . . . entities' liabilities were greater than their assets and . . . ongoing management alone will drain money out of the estate . . . that otherwise could be returned to investors.").[15]

Nor do the two cases Barton cites for his assertion that the Receiver's "sole purpose" is preserving the "status quo" support that assertion or change the authority already granted through entry of the Receivership Order. *Compare Gordon v. Washington*, 295 U.S. 30, 37, 55 S. Ct. 584, 588, 79 L. Ed. 1282 (1935) (no discussion of "preservation of status quo," and holding court erred in appointing receiver where no other relief was requested for property vested in receiver's possession because "there is no occasion for a court of equity to appoint a receiver of property of which it is asked to make no further disposition."); *First Fin. Grp. of Texas*, 645 F.2d at 438 (appointing a receiver is appropriate to preserve the status quo but omitting any discussion of appropriate authority for Receiver to maximize estate value through sales as necessary, prior to entry of final judgment).

### 2.   The Receiver Has Not Sold 2999 Turtle Creek Blvd and Thus Need Not Comply with 28 U.S.C. § 2001

As demonstrated in his Response to Barton's Motion to Stay Settlement with DLP Capital, Dkt. 119, and his Motion for Ratification of Agreement with Lumar Land & Cattle, Dkt. 143, and as determined by this Court in connection with both, Dkt Nos. 163, 219, 28 U.S.C. § 2001 (the "Statute") has no application unless a receiver *seeks to sell* an interest in real estate. *See id.* Thus,

---

[15] Indeed, a cursory review of the docket in the Stanford Receivership, *SEC v. Stanford Int'l Bank et al.,* Cause No. 09-000298, pending before Judge Godbey, reveals that although the case was filed in 2009 and the Receiver engaged in *extensive* efforts to sell assets, litigate claims, and wind down the business, shortly after appointment and continuing through today, partial summary judgment in favor of the SEC was not granted until 2013, (Dkt. 1858), and no final judgment has yet been entered.

- 13 -

settlement agreements which include resolution of disputed claims to real estate but pursuant to which the Receiver is not selling the real estate, do not implicate the Statute.

Although Barton repeatedly challenges the HN Settlement as improper for failing to comply with the Statute, he fails to demonstrate any sale of real estate by the Receiver in conjunction with the Settlement.  None exists. The HN Settlement does not run afoul of the Statute, nor does the Court's pending consideration of the Settlement impact the propriety of the requested auction.

Moreover, in the interest of transparency and because approval serves the best interests of the Estate and HN Capital, although the Receiver has requested approval of the HN Settlement, the Receivership Order authorizes the Receiver to enter into such settlements *without further Court approval.*  Dkt. 29, ¶39.  Likewise, absent that Settlement but as authorized by the Admin Order, the Receiver could seek permission to conduct the auction. Dkt. 63, p. 4. Thus, the pendency of the HN Settlement Motion does not preclude approval of the proposed auction.

3.    **Through the Auction, the Receiver Does Not Seek to Sell or Dispose of Non-Receivership Assets**

The Admin Order authorizes the Receiver to return employee's "personal belongings" "upon proof of ownership." Dkt. 63, p. 12.  With respect to the items Barton seeks to except from the auction, however, no such proof has been provided.

Barton complains the Court should "stop the proposed auction of personal property that happens to be present at the offices of JMJ Management," arguing Barton kept many items of his personal property at the office.  Objection p. 2.  For this reason, the Receiver has excepted from the auction items that are inherently personal, such as clothing, family photos, cigars, alcohol, mattresses, and miscellaneous desk contents.  *Thomas Dec.*, Exh. A (APP001-009).  Further, the

Receiver's purported "interference with Barton's ability to enter and inspect the Offices"[16] ("interference" which is mandated by the Receivership Order and the inverse of the actual interference that has occurred to date) has no bearing on the propriety of the auction or Barton's refusal to provide any evidence that any item of furniture, art, or other Office Contents was purchased by or gifted to Barton individually. The Receiver provided a link to photos of all items included in the auction[17] and Barton responded with a list that included Office furnishings and furniture that he asserted, without any evidence, he purchased personally or received as a gift.[18]

Barton fails to explain how testimony regarding his purported ownership over *any* item included in the Office Contents potentially incriminates him. Without that predicate, his testimonial privilege has no application. *See United States v. Stafford*, 273 Fed. Appx. 319, 320 (5th Cir. 2008) ("Fifth Amendment's self-incrimination privilege applies only when the accused is compelled to make a testimonial communication that is incriminating.") (internal quotation omitted). Even if it applied, however, Barton's right to remain silent does not negate the Receiver's obligation to ensure that Barton does not remove Receivership Assets from the Office, as Barton has done with investor assets removed from Receivership Entity bank accounts,[19] and therefore does not excuse Barton's evidentiary burden. Barton could have provided declarations from third-parties (including his children who submitted declarations of their own) regarding the

---

[16] Objection p. 9.

[17] The art, including statutes, will be sold pursuant to a separate sales process intended to maximize the value of those items. *Thomas Dec.*, Exh. A (APP001-009).

[18] For example, Barton asserted the large conference table in the Office was a gift to him personally. Barton also objected to the inclusion of many items of little value, for instance a trash can and a coffee maker. But the auctioneer will sell whatever he is able, based on a commission structure, thereby negating any argument that these items should be excepted from the sale or otherwise abandoned. *Thomas Dec.*, Exh. A-8 (APP038-042).

[19] *See* Dkt. Nos. 6, 67, 84, 85, 95, 139, 199, 200, 225.

items he contends are gifts, or requested copies of his personal bank statements or credit card statements from his banks.  He chose not to do so.

Nor has the Receiver requested that Barton provide any evidence or proof to except from the auction any item with "evidentiary value."  *See Objection* p. 5, n.3.  Instead, as stated in the Notice, "[d]ocuments, computers, and other materials that have evidentiary value are being stored."[20]  Thus, Barton's unwillingness to provide a declaration for the items that are included in the auction, rather than a conflict between Barton's Fifth Amendment privilege regarding "many materials at issue" having evidentiary value, *id.*, is instead, mere refusal to confirm that items like a conference table, a coffee maker, and other office furniture are his personal property and not the property of the Receivership Entities.

Thus, with respect to the Disputed Items, the only items Barton has asserted (without any supporting evidence) are his personal belongings, the Court should permit the Receiver to sell these items.  In the alternative, the Court should order the Receiver to move and store those items (at Barton's cost) or permit the Receiver to turn over these items to Barton irrespective of any potential ownership claim of the Receivership Entities.

4.    **Barton Has Not Identified, and the Receiver Is Unaware of, Legitimate Third-Party Claims to the Assets Included in the Auction**

Through his Objection, Barton does not only seek to protect items he contends he or other individuals own instead of the Receivership Entities.  Instead, he seeks to preclude the sale of *any* item. *Objection* pp. 1 (the Court should "instruct the Receiver not to conduct the auction"); p. 2 (the "Court should stop the proposed auction…"). Nor are Barton's arguments for the benefit of

---

[20] Dkt. 213, n. 1.

any other person whose property he asserts is stored at the Office factually correct, supported by evidence, or a legitimate basis to deny authority for the auction to proceed.

For the first time in his April 24, 2023 email, despite a request on the second day of the receivership that Barton identify the owners of any art located in the Office, Barton asserted certain framed prints stored at the Office are owned by a third party. *Thomas Dec.*, Exh. A-8 (APP038-042). The Receiver requested the contact information for that third-party but received no response from Barton. *Thomas Dec.*, Exh. A-8 (APP038-042). Nonetheless, the Receiver independently was able to locate and communicate with counsel to and members of that third-party. To the extent this individual claims that the prints are indeed his personal property, the items will be pulled from the auction. *Thomas Dec.* Because the Receiver has already coordinated removal of personal items for all other persons who requested such removal, he is unaware of any other person with a claim to any of the property included in the auction. *Thomas Dec.*, Exh. A (APP001-009).

Thus, like many argumentative assertions made previously by Barton, his contention that the Receiver has made it impossible for individuals to recover all of their personal property, and that "there remains substantial personal property in those offices belonging to [third-party] individuals,"[21] is contrary to the evidence. The contention also ignores Barton's own role in refusing to provide contact information for any such individual, or indeed, to cooperate in identifying any person who has a potential interest in or claim to the Office Contents.

5.    **Threatened Challenges to the Receiver's Immunity Have No Factual or Legal Basis**

Barton threatens litigation directly against the Receiver if the Court authorizes the auction, suggesting such a sale would fall outside of the Receiver's derivative judicial immunity, or perhaps

---

[21] Objection p. 9.

outside of the Court's absolute immunity if the Court rather than the Receiver is the intended target of the threat.  Yet, each of the cases cited by Barton for this threat involve situations in which the appointing court lacked jurisdiction, the receiver acted outside the scope of his authority, or committed fraud.  *See* Objection p. 9, citing *Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir. 1990); *Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 151 (10th Cir. 2009); *In re Ocean Tower LP*, No. 11-70776, 2014 WL 6686542, at *5 (Bankr. S.D. Tex. Nov. 25, 2014).  Obviously, here, jurisdiction exists: the Receiver has requested the Court's approval of the auction, and no fraud—at least on the Court's or Receiver's part—is at play. Nor does 28 U.S.C. § 959[22] create any risk of liability, or indeed pave an avenue for Barton to challenge the Receiver's activities in proposing and then proceeding with the auction if the Court approves it.  That statute applies *only* when a Receiver is operating and conducting the business of the Receivership Entities, rather than performing tasks required by the Receivership Order, such as sales intended to maximize the value of the Estate. *Seaman Paper Co. of Massachusetts, Inc. v. Polsky*, 537 F. Supp. 2d 233, 238 (D. Mass. 2007) ("This provision [28 U.S.C. § 959] does not remove this case from the general rule [of immunity] as it only covers acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise.") (internal quotation omitted)).

  None of Barton's arguments support denying permission for the auction to proceed, and the Court should overrule the Objection.

---

[22] "[R]eceivers or managers of any property . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."  28 U.S.C. § 959.

**D.**     **Alternatively, the Court Should Compel Barton, Individually, to Pay the Costs of Moving and Storing the Office Contents**

In the alternative, if the Court is inclined to deny permission for the auction to proceed, in consideration of the HN Settlement and the Receiver's obligation to vacate the Office, as well as the goal of maximizing the value of the Receivership Estate and minimizing the costs of doing so, the Court should order Barton to pay all costs associated with moving and storing the Office Contents.

**E.**     **Motion to Strike Motion for Preliminary Injunction**

Through the injunction he requests, Barton seeks the same relief, on the same grounds, that this Court has previously denied numerous times and which the Fifth Circuit has likewise denied: a stay of the Receiver's activities pending Barton's appeal, or if he is unsuccessful there, pending final judgment.  *See* Dkt. Nos. 122, 132, 219.

Through the current request, framed in terms of a request for injunctive relief rather than a stay, Barton seeks to create interlocutory jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), where none exists pursuant to the statute that controls, 28 U.S.C. § 1292(a)(2).  *See United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 671 (7th Cir. 2014) ("Appellate jurisdiction over interlocutory orders involving receivers is limited to the three types of order specified in section 1292(a)(2))." The repetitive appeals of orders for which no interlocutory jurisdiction exists is detrimental to the Receivership Estate, and, highly prejudicial given that Barton has blocked the Receiver's efforts to be recognized as the appellee, despite the fact that the order on appeal was issued based on a motion filed by the Receiver, rather than the SEC.  *See* Appeal No. 22-11226.

Given the repetitive requests for reconsideration, this Court should strike the motion for preliminary injunction.  *See Havlik v. United States*, No. 2:18-CV-00692, 2019 WL 4491635, at *3 (W.D. La. Sept. 17, 2019) (striking repetitive filings and "to deter . . . frequent, duplicative, and

- 19 -

unnecessary filings, as of this date, the Court will require . . . [the plaintiff] to seek leave of Court prior to filing any future motions in this matter."); *see also, e.g., Fharmacy Records v. Nassar*, No. 05-72126, 2008 WL 11355569, at *3 (E.D. Mich. Dec. 4, 2008) ("Repeated requests for reconsideration are disapproved and should be viewed with caution.").

## **CONCLUSION**

Through his Objection, Barton provides no justification to stay or preclude the auction and the Court should overrule the Objection.  In the alternative, the Court should require Barton, individually, to pay the costs of moving and storing the Office Contents if the auction is not permitted. The Receiver also requests the Court's permission to include the Disputed Items in the auction, or an order directing that the Disputed Items be moved to storage and that Barton pay all moving and storage costs, or that the Court authorize the Receiver to turn over the Disputed Items to Barton regardless of their value and ownership.

Additionally, because he merely requests the same relief already denied multiple times, the Court should strike Barton's motion for preliminary injunction by which he seeks to stay the auction.

WHEREFORE, PREMISES CONSIDERED, the Receiver requests that the Court overrule the Objection, authorize the auction to proceed, and strike Barton's motion for a preliminary injunction.

- 21 -

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
      State Bar No. 11672850
      charlene@brownfoxlaw.com
    Timothy B. Wells
      State Bar No. 24131941
      tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.