## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § | HEARING REQUESTED |
| CARNEGIE DEVELOPMENT, LLC | § | |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § | |
|  | § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § | |
|  | § | |
| *Relief Defendants.* | § | |

**DEFENDANT TIMOTHY BARTON'S OPPOSITION
TO THE RECEIVER'S MOTION TO APPROVE SETTLEMENT
AGREEMENT WITH HNGH TURTLE CREEK, LLC [ECF NO. 210]**

Defendant Timothy Barton opposes the Receiver's Motion to Approve Settlement

Agreement with HNGH Turtle Creek, LLC ("Motion") [ECF No. 210], and requests a hearing on

this matter, as follows.

## BACKGROUND

The Receiver's Motion seeks approval to dispose of real property interests and to settle fraudulent transfer claims that are pending in bankruptcy proceedings involving 2999TC Acquisitions, LLC ("2999TC")—a non-defendant entity currently under the Receiver's control.

### A.    2999TC Finances and Acquires Turtle Creek Development Property in 2019.

In late 2019, 2999TC purchased real property located at 2999 Turtle Creek Boulevard in Dallas, Texas, 75219, in one of the most "dynamic and sought-after Dallas neighborhood[s]." App. 004-005, *JMJ Development Announces Mandarin Oriental Hotel And Residences In Dallas,* CISION PR NEWSWIRE (Nov. 13, 2019), https://www.prnewswire.com/news-releases/jmj-development-announces-mandarin-oriental-hotel-and-residences-in-dallas-300957485.html. Shortly thereafter, 2999TC started predevelopment work toward building a luxury-branded residential and hotel project. The development project was initially financed by an acquisition loan secured by a first lien deed of trust on the property from an affiliate of Madison Residential Capital ("Madison Capital") and by substantial equity with the intent of refinancing or obtaining a new loan to fund the development of the project. Over the following year, 2999TC sought to acquire the additional equity funding needed in order to obtain a construction loan for the development of the project. The property is regarded as one of the best sites for development in the Dallas Fort Worth area. *See* App. 006-007, Mark El-Rayes, *JMJ Development Obtains $33M Loan for 2999 Turtle Creek Acquisition*, CONNECT CRE (Sept. 26, 2019), https://www.connectcre.com/stories/jmj-development-obtains-33m-loan-2999-turtle-creek-acquisition/.

### B.    HNGH Acquires a Participation Interest in the Project Lending Before Eventually Purchasing the Entire Loan.

HNGH Turtle Creek, LLC ("HNGH") is an entity managed by HN Capital Partners, LLC, which in turn is managed and/or controlled by Vipin Nambiar along with James Glasgow

(collectively, the "HN Group").  The HN Group is in the business of investing in the acquisition and development of hospitality sector properties, rather than in the business of lending.  However, shortly after the 2999TC's acquisition of the property, HNGH sought to acquire a participating interest in Madison Capital's loan to 2999TC with the ultimate goal of leveraging such interests to ultimately gain ownership control of the desired property at 2999 Turtle Creek Blvd.  In January 2020, HN Group acquired a participation interest in Madison Capital's loan to 2999TC.

In December of 2020, HNGH purchased the entire $32.5 million loan from Madison Capital.  Shortly thereafter, HNGH and 2999TC negotiated and executed a Forbearance and Payoff Agreement ("Forbearance Agreement") under which the original loan was modified with an extension of the maturity date to July 31, 2021, which could be extended through October 29, 2021 ("Extended Maturity Date"). The Forbearance Agreement also required 2999TC to execute a special warranty deed conveying the underlying Turtle Creek property to HNGH to be held in escrow by a third-party agent and recorded if the loan was not paid off on or before the maturity date (including any extension).  2999TC made all required payments under the Forbearance Agreement including for the Extended Maturity Date.

C.    **HNGH's Withdrawn Agreements Lead to Disputes Between the Parties and Ultimately Bankruptcy Court.**

About a week before the Extended Maturity Date, Nambiar on behalf of HNGH, and Barton on behalf of 2999TC, began discussing an additional extension. After several discussions including an in-person meeting, the parties verbally agreed to terms, and Nambiar said he would have his attorney draft and send 2999TC the extension documents.  By the Extended Maturity Date, HNGH still had not sent the extension documents.  It became clear around this time that HNGH did not intend to paper up the extension, and, in fact, was trying to stall 2999TC from seeking other appropriate recourse or protections on the loan.  It was later discovered that, early in

the afternoon of the Extended Maturity Date, Nambiar had directed his counsel to go ahead and have an escrow agent start the process of recording a deed prior to a potential default by 2999TC under the Forbearance Agreement. Notwithstanding the impropriety of HNGH's actions, 2999TC realized the ruse being pulled against it and thus filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code on October 29, 2021, in the United States Bankruptcy Court for the Northern District of Texas. *See In re 2999TC Acquisitions, LLC,* Case No. 21-31954 (N.D. Bankr.). HNGH attempted to submit its deed record for filing that same day. Even in the face of the bankruptcy filing, and the automatic stay that prevents actions by a creditor against a bankruptcy debtor, HNGH improperly allowed the deed to be recorded by the county the following business day, November 1, 2021. *See* 11 U.S.C. § 362(a)(3)–(6) (automatic stay); *In re Prado*, 340 B.R. 574, 585 (Bankr. S.D. Tex. 2006) (holding that enforcement of a prepetition lien violated automatic stay).

> **D.      The Bankruptcy Court Enters an Agreed Order Governing 2999TC's Ownership Interests in the Turtle Creek Property.**

In the bankruptcy proceedings, 2999TC contested the improper deed filing. As a workaround to simply voiding the deed or other resolution, the bankruptcy court approved an Agreed Order providing that such deed would be rescinded upon (1) 2999TC making certain periodic payments over the following three months, (2) HNGH holding a rescission deed to unwind the post-bankruptcy deed filing, (3) HNGH reinstating of the note, and (4) only after the first three conditions were met, 2999TC making a final payoff of the loan. App. 008-011, *In re 2999TC Acquisitions, LLC,* Case No. 21-31954, ECF No. 64 (N.D. Bankr. Dec. 10, 2021) ("Agreed Order").

2999TC contributed capital to pay the obligations under the bankruptcy court's order and actively pursued a refinance of the loan on the Turtle Creek real property. Debtor negotiated an

extension of the payoff deadline to May 30, 2022—later extended to May 31—which was memorialized by an agreed order dated March 17, 2022.[1]

    **E.**    **HNGH Breaches Its Obligations Under the Bankruptcy Court's Agreed Order.**

On the May 31 deadline, HNGH had lined up third-party lenders that were ready and willing to fund a final payoff of the loan, evidence of which was provided in camera to the bankruptcy court along with proof of funds. However, HNGH had not fulfilled either of its obligations under the Agreed Order. First, it was discovered shortly before closing of the payoff that HNGH had not created or held a rescission deed that would unwind its prior post-bankruptcy deed filing. Second, far from being ready to reinstate the underlying note, it was discovered that HNGH had collaterally assigned the note to a third-party bank, Happy State Bank. HNGH therefore could not directly reinstate the note. These breaches were no small problem. Because HNGH was unable to return title, the note, and other deliverables (that were in the exclusive control of HNGH and/or Happy State Bank), 2999TC's lenders and the title company could not agree to close the funding. Nor is it standard business practice for a lender or other interested party to pay off a promissory note absent the simultaneous return of title and other documentary rights for which payment is being made. That was especially the case here, where all parties understood that a rescission deed was to be provided and the underlying promissory note reinstated before the bankruptcy court said 2999TC was required to fund the payoff.

---

[1] From January 1, 2021, from the time HNGH acquired the loan to 2999TC to the payoff date on May 21, 2022, HNGH paid a total of $6,178,496 over less than 18 months to HNGH on HNGH's initial $32.5 million investment. *Compare in re 2999TC Acquisitions, LLC,* Case No. 21-31954, ECF No. 251 at 51 (N.D. Bankr.) (indicating over $6 million in initial payments by 2999TC), *with* Mot. at 13 (acknowledging $32.5 million loan).

**F.**    **A New Bankruptcy Judge Holds an Ad Hoc Trial Regarding the Turtle Creek Property.**

On June 3, 2022, HNGH filed a motion seeking an order enforcing its claimed rights in the ownership of the 2999 Turtle Creek property. 2999TC contested that motion, leading to a hearing, which ultimately occurred over portions of fifteen nonconsecutive days that the bankruptcy court has since characterized as a "trial." *See, e.g., In re 2999TC Acquisitions, LLC,* Case No. 21-31954, ECF No. 283 at 18-20, 26, 29-31, 36-37, 39-40, 46 (N.D. Bankr. Sept. 28, 2022). This proceeding was improper, as it was one to determine proper title to property and thus must be held as an adversary proceeding with the benefit of discovery. Fed. R. Bankr. P. 7001(1),(2),(9). In adversary proceedings, parties are afforded certain rights, including the right to obtain discovery, which in turn includes, *inter alia*, document production, Fed. R. Bankr. P. 7034, and pretrial depositions, Fed. R. Bankr. P. 7027-31. It is legal error for a bankruptcy court to deny these rights when the Bankruptcy Rules provide that an adversary proceeding is required. *In re Krueger*, 812 F.3d 365, 369 (5th Cir. 2016) ("[P]roceedings classified as adversary proceedings *must* be litigated as lawsuits under rules that essentially track the Federal Rules of Civil Procedure." (emphasis added)).

After its non-trial extended motion hearing, the bankruptcy court entered an order excusing HNGH for its multiple breaches of the Agreed Order. *See, e.g., In re 2999TC Acquisitions, LLC,* Case No. 21-31954, ECF No. 283 (N.D. Bankr. Sept. 28, 2022). The bankruptcy court took this matter under advisement for more than four months, but entered its order days after the Defendant's indictment. 2999TC filed a Notice of Appeal the following day. *In re 2999TC Acquisitions, LLC,* Case No. 21-31954, ECF No. 284 (N.D. Bankr. Sept. 29, 2022); *see also id.* at ECF No. 288 (amended notice of appeal). On October 14, 2022, 2999TC also moved for a stay of the bankruptcy court's decision. *See, e.g., In re 2999TC Acquisitions, LLC,* Case No. 21-31954,

ECF No. 297 (N.D. Bankr. Sept. 28, 2022).   2999TC's bankruptcy appeal and its motion to stay remain pending to this date.

**G.     A Receiver Is Appointed Over 2999TC in the Present SEC Civil Action, Resulting in a Stay of the Property Ownership Dispute.**

On October 18, 2022, this Court appointed a receiver over "any entity that Defendant Timothy Barton directly or indirectly controls." ECF No. 29 at 2. It later clarified that this phrase included 2999TC, even though this entity was not one expressly named by the SEC in its motion seeking the receivership.  ECF No. 62 at 6.

On November 25, 2022, HNGH filed a Motion to Intervene and Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard.  ECF No. 69.  After motion practice, *see* ECF Nos. 94, 97, 116-17, 151, the Court ordered the parties to mediate their dispute before retired bankruptcy judge Harlin Hale, who is very knowledgeable about the facts of this case having addressed it before retirement.  ECF No. 154.  If that mediation did occur, the Receiver and HNGH excluded both Mr. Barton—who personally guaranteed the loan documents at issue—and several other investors in 2999TC that have nothing to do with the SEC's case or the allegations against Mr. Barton.  The parties appeared to  enter into a so-called "settlement agreement" through bilateral discussions.  ECF No. 210-1.  In that agreement, the Receiver agreed to accept $2.5 million in settlement of $3.95 million of claimed fraudulent transfers that HNGH had obtained during the bankruptcy proceedings, and separately agreed to turn over the real property at 2999 Turtle Creek to HNGH for free.  Mot. at 15 (addressing $2.5 million payment as payback compensation for fraudulent transfers).  The Receiver also agreed to release all rights and claims that the receivership entities, Mr. Barton, and a number of affiliated parties have against HNGH. ECF No. 210-1 (Settlement and Release Agreement § 7).  In doing so, the Receiver represented without explanation to have all "legal right and authority required to compromise and settle [such]

claims" and to bind third parties to the contract even "without further approval of [those] third parties." ECF No. 210-1 (Settlement and Release Agreement § 19).

Now, the Receiver seeks Court approval of his agreement with HNGH that would effect a transfer of 2999TC's property interests to HNGH and resolve outstanding fraudulent transfer claims. Mot. at 11. In this Motion, the Receiver admits he did not attempt to sell the real property interests on behalf of 2999TC (Mot. at 14-15), even though third parties have made offers to acquire the property from the estate. *See, e.g.,* ECF No. 209 at 2 (noting April 5, 2023 $51 million offer from Comstock Holding Companies, Inc.). Mr. Barton opposes the Motion.

ARGUMENT & AUTHORITIES

A.    **The Court Should Not Approve any Alteration of the Status Quo on the Receiver's Authority Until the Resolution of the Fifth Circuit Appeal.**

The Receiver's Motion improperly attempts to dispose of real property and other interests belonging to 2999TC Acquisitions, LLC ("2999TC"). This is one of the many entities that Mr. Barton has challenged as being improperly included as part of the receivership estate since the outset of this case. The SEC has never made a real argument for 2999TC's inclusion in the receivership. The SEC did not name 2999TC as a defendant (or even a relief defendant), or make any claim that 2999TC was the holder of any lender funds at issue in these proceedings. When moving for the appointment of a receivership, the SEC certainly knew all about 2999TC and the entity's real property located at 2999 Turtle Creek Blvd. *See* ECF No. 7-1 at App. 021 & 023 (acknowledging Mr. Barton's disclosure to the SEC in March 2021 regarding 2999TC).

At oral argument on May 1, 2023, a panel of the Fifth Circuit raised serious questions regarding whether the Receivership in the matter was consistent with binding authority of the Court. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) ("Receivership is 'an extraordinary remedy that should be employed with the utmost caution' and is justified only where

there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties.").

The asset being addressed here is worth tens of millions of dollars and, as explained below, is subject to a substantial and meaningful dispute as to proper ownership. The Receiver has advanced no reason why the status quo of an asset of this magnitude should be disturbed prior to a Fifth Circuit ruling, particularly in light of the serious questions raised at oral argument by a panel of the Court. This Court should defer ruling on the Receiver's motion until the Fifth Circuit has entered a decision on the appeal of this Court's order appointing a receiver over 2999TC.

**B.      The Receiver's Motion Should Be Denied Because the Receiver Made No Attempt to Comply with 28 U.S.C. § 2001.**

Even if the Receiver had valid authority over 2999TC to dispose of that entity's real property interests, the Receiver's proposed agreement with HNGH does not comply with 28 U.S.C. § 2001. That is a fatal problem requiring denial of the Receiver's Motion on its face. A receiver's sale of any real property, "interest therein," or "part thereof" must comply with 28 U.S.C. § 2001, or the transaction is void. *Acadia Land Co. v. Horuff*, 110 F.2d 354, 354 (5th Cir. 1940) (holding that a sale is void if statutory requirements are not satisfied).

The Receiver incorrectly contends in his Motion that he "is not seeking to sell 'any realty or interest therein'" under 28 U.S.C. § 2001. Mot. at 10. The Receiver does not cite any legal authority in support of this assertion. Despite the Receiver's unsupported contentions, the case law is clear that real property interests include fee simple title or any encumbrance on the property or its title that "diminishes the value of the [property] and constitutes a burden on its transfer." *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 521 (Tex. App.—Austin 1998, no pet.) (citing Black's Law Dictionary 527 (6th ed. 1990)); *see also In re Applied Chem. Magnesias Corp.*, 206

- 9 -

S.W.3d 114, 118 (Tex. 2006) (addressing the more inclusive scope of an "interest" in real property).  Texas courts have long recognized such encumbrances to include interests such as liens, easements, leases, servitudes, claims, and other charges upon the estate.  *See City of Beaumont v. Moore*, 146 Tex. 46, 54–55 (1947); *Latham v. Miller*, 250 S.W.2d 302, 304 (Tex. Civ. App.—Austin 1952, writ mand. overr); *see also Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.—Austin July 7, 2005, no pet.) ("Examples of encumbrances include liens, claims, easements, and servitudes."); *In re City Nat'l Bank*, 257 S.W.3d 452, 455 (Tex. App.—Tyler 2008, orig. proceeding) ("[A]ny deed, contract, judgment, or other instrument . . . that purports to convey any interest in or makes any charge upon the land of a true owner . . . is a cloud upon the legal title of the owner."); *Kelley v. Marlin*, 714 S.W.2d 303, 305 (Tex. 1986) (holding that a devise, by will, promising the plaintiff a future role in and profit from the sale of the land, made him "a conditional beneficiary" such that he had an "interest" that was "an equitable charge upon the land.").  A lis pendens filing in local real property records separately denotes an "action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property." Tex. Prop. Code § 12.007.

The Receiver's agreement with HNGH clearly involves the sale of real property interests under the applicable case law, and the Receiver's proposed sale of those interests must therefore comply with 28 U.S.C. § 2001.  As reflected in the bankruptcy records cited in the Receiver's Motion, 2999TC and HNGH have long been litigating their respective rights, claims, and ownership in the real property located at 2999 Turtle Creek Blvd.  That litigation is currently pending resolution in Chapter 11 bankruptcy proceedings.  *See in re 2999TC Acquisitions, LLC,* Case No. 21-31954 (N.D. Bankr.).  Although the Receiver claims that a recent order from the

bankruptcy court conclusively "determined that the Receivership Entities do not possess any interest in the Property to sell" (Mot at. 10), the Receiver attempts to gloss over the fact that the real property ownership dispute in those proceedings is still ongoing. At the time of the Receiver's appointment, 2999TC had noticed an appeal of the bankruptcy court's order, and separately moved to stay enforcement of that order. *See in re 2999TC Acquisitions, LLC,* Case No. 21-31954, ECF Nos. 284 & 297 (N.D. Bankr.). That appeal and 2999TC's motion to stay remain pending to this date and likely would be resolved by now, absent the Court's stay of those proceedings. Absent resolution of those matters, 2999TC continues to have a claim in the ownership of the real property located at 2999 Turtle Creek Blvd, and its interests in the property remain an encumbrance on the estate. The Receiver therefore has no basis to dispose of 2999TC's rights and interests in the subject real property unless the pending appeal of the bankruptcy court's orders is resolved first or, alternatively, the Receiver sells 2999TC's interests in the property in accordance with 28 U.S.C. § 2001. Because neither of those events have occurred, this Court should deny the Receiver's proposed sale.

### C. The Requirements of 28 U.S.C. § 2001 Provide Specific Protections that Are Important to the Receiver's Present Motion.

Congress enacted Section 2001 of Title 28 to ensure that receivers entrusted with the care of a third party's property do not sell that property without appropriate protections in place. *See SEC v. T-Bar Res., LLC*, No. CIV.A.3:07CV1994-B, 2008 WL 4790987, at \*4 (N.D. Tex. Oct. 28, 2008) ("Congress enacted the foregoing safeguards to protect against the high opportunity for fraud inherent in private sales of realty."); *see also Acadia*, 110 F.2d at 354 (holding that non-compliance with the statute results in a void sale). The requirements of this statute mandate that a receiver must provide proper notice of a proposed sale, that any sale be supported by independent valuations, that no interest in property be sold for less than two-thirds of its appraised value, and

that third parties have an opportunity to present higher offers. 28 U.S.C. § 2001(b). Although the Receiver has satisfied none of the statutory requirements in this case, those requirements matter here.

Of particular importance is that the Receiver did not obtain independent valuations of the property before attempting to sell it and did not allow third parties to submit offers to acquire estate's property interests outside of the HNGH settlement. In skipping these requirements, the Receiver claims they would not have mattered as he does not believe the property could be sold for an amount that would do any good. Mot. at 14. Instead, the Receiver submits that the best course of action is to simply give away the property to HNGH *for free*. *See* Mot. at 14 ("The Receiver eventually concluded that a sale path provides little to no recovery for the Receivership Estate"); *see also* Mot. at 15 (acknowledging that the $2.5 million to be received from HNGH under the Settlement and Release Agreement is to settle fraudulent transfer claims against HNGH). The Receiver's decision to forego any effort to secure some value from the property under his control was obviously not correct or in the best interests of the estate. That is particularly so because multiple third parties have already made substantial offers to acquire the estate's interests in 2999 Turtle Creek Blvd. As Mr. Barton raised in a prior filing, "[o]ne such offer was submitted to the Receiver on April 5, 2023, by Comstock Holding Companies, Inc., a NASDAQ-traded property management company, which offered to buy the Turtle Creek property for $51 million." ECF No. 209. That offer amount is at least $10 million greater than the approximate $41 owed on the loan to HNGH. *See in re 2999TC Acquisitions, LLC,* Case No. 21-31954, ECF No. 251 at 35 (N.D. Bankr.) (HNGH describing the debt as "only about $41 million" on a property worth "more than $58.5 million"). By consummating that sale, the Receiver would have secured substantial value for the estate. However, by baldly claiming that he could not sell the property,

and refusing to comply with 28 U.S.C. § 2001 prior to attempting to dispose of it, the Receiver was never put to the test.  The statute does not allow such an outcome.  Nor should this Court.

      **D.**      **The Receiver Improperly Attempts to Enter Into Binding Obligations on Behalf of Third Parties that the Receive Does Not Represent.**

One of the material terms of the Receiver's proposed Settlement and Release Agreement with HNGH is that the Receiver must have the "legal right and authority required to compromise and settle all claims" and to bind third parties to the contract even "without further approval of [those] third parties." ECF No. 210-1 (Settlement and Release Agreement § 19).  However, the Receiver does not have the authority that the contract says is required.

Of particular importance, the Receiver does far more than attempt to release the claims of the Receivership Entities against HNGH.  The Receiver also promises in the settlement document to release all claims held by any "officers, directors, employees, equity holders, affiliates, subsidiaries, parents, predecessors-in-interest, successors-in-interest, assigns, transferees, agents or other representatives" related to any of the 164 receivership entities.  ECF No. 210-1 (Settlement and Release Agreement § 7).  But the Receiver has not secured any consent or authority from these third parties to enter into any such release, whether from Mr. Barton individually or any other third-party investors and lenders.

The Receiver did even not alert the third parties affected by the settlement that such an agreement was in the verge of being put in place.  The exclusion and lack of notice to Mr. Barton is of considerable concern.  That is because Mr. Barton has a direct interest in the settlement, as he was one of the contracting parties to the underlying lending and/or guaranty agreements with HNGH that the Receiver now attempts to dispose of.  This Court also ordered the "the parties" to mediation, inclusive of Mr. Barton. ECF No. 154 (Electronic Order on ECF No. 69); *see also* ECF No. 97 (reflecting Mr. Barton's involvement in the briefing against HNGH in response to ECF No.

69 that precipitated this Court's Order at ECF No. 154). It is unclear why the Receiver chose a course of conduct to exclude Mr. Barton from the settlement discussions despite his direct interest and the orders of this Court to include him. However, what is clear is that the Receiver—in negotiating a settlement behind Mr. Barton's back—was without valid authority to enter into any contract on his behalf or on the terms presented to this Court.

> **E.** **The Property of 2999 Turtle Creek Should Not Be Disposed of Outside of 2999TC's Chapter 11 Bankruptcy Proceedings.**

Mr. Barton is not the only party whose rights and interests will be materially prejudiced by the Receiver's settlement agreement with HNGH. Prior to this Court's appointment of the Receiver, 2999TC was in the midst of Chapter 11 bankruptcy proceedings. *See In re 2999TC Acquisitions, LLC*, Case No 21-31954 (N.D. Bankr.). HNGH was not the only creditor of 2999TC in those proceedings, but rather one of over thirty creditors involved with interests in the estate. *See* App. 012-017, *In re 2999TC Acquisitions, LLC*, ECF No. 5 (Verification of Creditor Matrix).

The Receiver's proposed settlement agreement with HNGH attempts to circumvent the protections of that bankruptcy court and to disregard the interests of 2999TC's other creditors entirely. Not only does the settlement attempt to give away valuable real property owned by the bankruptcy debtor (2999TC), but the Receiver attempts to extract a return of fraudulent transfer payments from HNGH that ordinarily would be turned over to the bankruptcy trustee. *See* Mot. at 15 (acknowledging the $2.5 million settlement amount relates to a settlement of fraudulent transfer claims). Such an outcome would not be right. That is particularly so here, where the Receiver claims he intends to use the funds from this HNGH settlement agreement for the benefit of the receivership estate (Mot. at 15), without any demonstrable showing as to whether 2999TC or its assets belong in the receivership estate in the first place. *See also SEC v. Founding Partners Cap. Mgmt.*, 639 F. Supp. 2d 1291, 1295 (M.D. Fla. 2009) (holding that a recipient of loan proceeds

was not a proper relief defendant); *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 178 (2d Cir. 2016) (holding that disgorgement order against recipient of intercompany loan was improper). The proposed settlement is thus not one in which the Receiver will be acquiring any assets or funds for the estate's benefit. Rather, those funds will either be required to be turned over to the bankruptcy court, or it will likely invite a flurry of 2999TC creditors racing to this Court seeking to recover against the Receiver that he and HNGH admit were fraudulent transfers as to the other bankruptcy creditors.

In light of these issues, the Receiver's proposed settlement outside of the bankruptcy estate is improper. *See* ECF No. 97 at 5–6. Should HNGH seek to reopen litigation of its ownership claims related to the Turtle Creek property, it must follow the procedure as every other creditor: It must file a motion to lift this Court's stay and pursue claims in the forums where they belong. The Court previously was clear on this procedure, as it expressly said it would require "further Order of this Court" before claims against the receivership entities proceed in those other forums. Order Appointing Receiver [ECF No. 29] ¶ 36; *see also* 15 U.S.C.A. § 78u(g) (requiring consent from the SEC prior to consolidation of other claims in an SEC civil enforcement action). Yet neither the Receiver nor HNGH have sought an order from this Court to lift the stay to resolve the pending claims related to the ownership and/or distribution of assets implicating 2999TC's parallel bankruptcy proceedings. They instead mediated their dispute without the oversight of the bankruptcy court and the other creditors with interests in those proceedings. The efforts by the Receiver and HNGH to circumvent that process should not be approved. The Receiver's Motion should be denied accordingly.

### F.    2999TC's Realty Interest in the Property Is Serious, and There Is No Reason to Release It Now

The Receiver should not be heard to denigrate the 2999TC's realty interest in the property. Judge Everett of the bankruptcy court—after taking over the case from Judge Hale—ruled against

2999TC.  But his ruling is under appeal and came after a proceeding that was non-compliant with the Bankruptcy Code, which requires an adversary proceeding, with the benefit of pretrial discovery, to determine the proper title to real property.  *See* Fed. R. Bankr. P. 7001(1),(2),(9). That discovery would have made even clearer that 2999TC had funding and was prepared to close on the removal of the loan against the property, at the bankruptcy-order specified price of $42 million, but HNGH refused to come to the closing table with the necessary deeds and releases in exchange for that $42 million.  HNGH claims that 2999TC defaulted through non-payment, but that counterparty cannot frustrate another's performance of a contract and then claim the benefits of a breach.  Judge Everett, respectfully, changed the rules of the game set by Judge Hale after the game was played. His order excused HGNH from its violation of Judge Hale's order for it to maintain a recission deed that would have facilitated the exchange of payment and simultaneous confirmation of full 2999TC ownership, released from the liens of HGNH or its lenders. And it discarded the terms of Judge Hale's prior orders and custom in real estate transactions to suggest that 2999TC's new financing parties should have paid HGNH $42 million and simply trusted it to deliver any deed and release documents later.  HGNH's actions are consistent with an entity that was maneuvering not to enforce compliance with its loan agreement, but to use the loan agreement to seize ownership of the property.

This Court should be in no rush to dramatically alter the status quo in favor of this settlement.  There is certainly no equitable reason to do so.  HGNH will be taking a property into which a receivership estate entity has plunged tens of millions of dollars, leading to a massive windfall for HGNH.  HGNH, through several transactions through third party financing, bought the 2999TC loan for $32.5 million.  Since its purchase, 2999TC has paid more than $6 million to HGNH in timely interest and extension payments.  The settlement agreement, if adopted, will have

HGNH spending a net $26.5 million to purchase a property potentially worth potentially upwards of $70 million.

And the settlement agreement will do nothing to benefit the Chinese lenders for whom the receivership estate was founded. To the contrary, it will deprive the receivership estate of tens of millions in realty interest, if HNGH is ordered (as it should have been) to cooperate with the prior closing process. And the $2.5 million payment to the receivership estate likely will never make it to the lenders, as 2999TC has several lenders of its own (making claims in the bankruptcy process) who will attempt to seize those funds. Nor is the receivership estate avoiding some kind of liability. The settlement agreement already will ensure the 2999TC contributes nothing to the Chinese lenders the Receivership is supposed to serve, given 2999TC's secured creditors, and leave it without assets to protect. And the Receiver's alleged concerns about 2999TC being charged equitable rent by HNGH is no excuse for this non-diligence fire sale. If HNGH somehow were to prevail in the pending appeal, its claims for equitable rent would be against a company with no assets and thus are no financial threat. In any event, such an equitable remedy would not be appropriate given this Court's stay, and HNGH would seek equitable relief with unclean hands and seeking to further enhance a windfall at the expense of the receivership estate.

This Court should deny the Receiver's motion outright. At a minimum, however, this Court should direct the Receiver and HNGH to participate in the mediation before Judge Hale that this Court ordered, with all parties including the Defendant in his capacity as personal guarantor and other 2999TC creditors that filed claims in the bankruptcy process. That mediation could generate a comprehensive resolution that would deal with all interests, not just those of two participants. This Court selected the right mediator for that role, as Judge Hale is familiar with the facts of this case.

In the alternative, this Court should defer ruling on the motion until the Fifth Circuit rules on the expedited appeal of the Receiver's authorities, heard by a panel of the Court of May 1, 2023. Whether the order appointing the Receiver is reversed or affirmed by the Fifth Circuit, the Defendant has an acute interest in ensuring the significant asset of the 2999 Turtle Creek property is maximized and, at a minimum, generates funds to address the SEC's claims if they succeed. The settlement agreement presents a serious problem, as it destroys the value of a significant asset and ensures that the property will generate nothing for the receivership estate. The Court should reject the Receiver's request or adopt some combination of the suggested measures above.

**G.    The Receiver's Proposed Settlement Inappropriately Upends the Status Quo.**

This Court appointed the Receiver for multiple purposes, but one of those is for "marshaling and preserving all assets of the Receivership Entities." ECF No. 29 at 2. The Receiver's proposed settlement agreement with HNGH, if approved, would accomplish the opposite.

As an initial matter, the Receiver did not appropriately investigate and assess the interests of 2999TC prior to seeking to dispose of that entity's rights, claims, and interests. *See* ECF No. 29 at 4 (ordering the Receiver to "use reasonable efforts to determine the nature, location, and value of all property interest of the Receiver Entities"). Indeed, when the Receiver was first appointed, one of his first items of business was to terminate the companies' employees, agents, and contractors. In doing so, the Receiver failed to complete a reasonable investigation into the background of 2999TC's ownership claims to the real property located at 2999 Turtle Creek Blvd. Importantly, the ownership of that asset has been the subject matter of litigation for multiple years in Chapter 11 bankruptcy proceedings and, currently, is subject to a pending appeal before the district court. Despite the importance of this asset, and the relevance of the bankruptcy proceedings pertaining to that asset, the key attorney with knowledge of 2999TC's ownership

claim (Joyce Lindauer) did not receive a single phone call from the Receiver about the matter. App. 018, Decl. of J. Lindauer ¶ 4. That is despite the fact that Ms. Lindauer, likely more than any other person, was intimately knowledgeable of the background facts, legal issues, bankruptcy court proceedings, and subsequent appeal in which those ownership rights are being litigated. Any party performing any reasonable level of due diligence on the acquisition or disposal of that property certainly would have sought to confer with Ms. Lindauer about the property prior to seeking to dispose of it. The Receiver did not.

Moreover, the Receiver's actions in seeking to dispose of 2999TC's real property interests do nothing to serve the status quo. As the Receiver admits, he made no attempt to obtain any compensation in exchange for selling the estate's interests in the real property at 2999 Turtle Creek Blvd. *See* Mot. at 14–15 (acknowledgement by the Receiver that no sale of the real property would occur). That decision makes no sense. This is not some random property of the estate. Rather it is one of the estate's largest and most valuable assets—described by one interested third party as "a rare and sizable development site in one of Dallas's wealthiest and most attractive neighborhoods for residential and commercial uses." App. 006-007, Mark El-Rayes, *JMJ Development Obtains $33M Loan for 2999 Turtle Creek Acquisition*, CONNECT CRE (Sept. 26, 2019), https://www.connectcre.com/stories/jmj-development-obtains-33m-loan-2999-turtle-creek-acquisition/. Even if the Receiver had concerns about this assets, and how to secure value from it, there is no meaningful support for the position that giving away the property for free in the opening months of the receivership helps to preserve the status quo of the estate. This is certainly not the time to rush through such a transaction while the ownership of the subject real property and other matters remain to be sorted out.

The timing of the Receiver's efforts to give away the Turtle Creek property are especially concerning because the Fifth Circuit is on the verge of handing down an opinion as to whether the Receiver should have been appointed to take control of 2999TC in the first place.  Should the Fifth Circuit reach the expected conclusion that the SEC failed to establish grounds for a receivership over 2999TC, that decision will confirm the Receiver's lack of authority for the present transaction with HNGH.  The near term pendency of that decision does not mean that the Receiver should be speeding through to sell all of 2999TC's assets before the Fifth Circuit takes away the Receiver's authority.  It means the Receiver should await the outcome of the appeal to ensure that his actions are proper and right.

The result of the Receiver's proposed settlement agreement with HNGH thus does nothing to preserve the status quo of 2999TC's assets or to meaningfully benefit the receivership estate. Rather, as the terms of the proposed contract and surrounding circumstances suggest, the agreement is aimed to cause a rapid liquidation of an entity that never should have been included in the receivership in the first place, that will serve nobody's interests except those of HNGH and the Receiver's law firm.  The Receiver's Motion seeking approval of the proposed settlement agreement should therefore be denied.

**CONCLUSION**

For the foregoing reasons, Defendant Timothy J. Barton respectfully requests that the Court deny the Receiver's Motion to Approve Settlement Agreement with HNGH Turtle Creek, LLC [ECF No. 210].  At a minimum, the Motion should be denied without prejudice, with the Court ordering all parties—including 2999TC's creditors and the Defendant as personal guarantee to participate in mediation before Judge Hale to seek a comprehensive and accretive resolution or deferred, pending the outcome of the appeal of this Court's Order Appointing Receiver [ECF No.

29] to the Fifth Circuit Court of Appeals (Case No. 22-11132) and subject to the Receiver's compliance with 28 U.S.C. § 2001.

Dated: May 8, 2023                    Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(admitted to N.D. Tex.)*
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 *(admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Facsimile: (214) 740-7110

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On May 8, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

- 21 -