## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY BARTON, | § | |
| CARNEGIE DEVELOPMENT, LLC, | § | |
| WALL007, LLC, | § | |
| WALL009, LLC, | § | |
| WALL010, LLC, | § | |
| WALL011, LLC, | § | |
| WALL012, LLC, | § | |
| WALL016, LLC, | § | |
| WALL017, LLC, | § | |
| WALL018, LLC, | § | |
| WALL019, LLC, | § | |
| HAOQIANG FU (A/K/A MICHAEL FU), | § | |
| STEPHEN T. WALL, | § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and | § § | |
| LDG001, LLC, | § § | |
| *Relief Defendants*. | § § | |

## RECEIVER'S REPLY IN SUPPORT OF
## RECEIVER'S REQUESTED PRIVILEGE PROTOCOL

Cort Thomas, as Receiver, files this Reply in Support of Receiver's Motion to Compel Documents, etc., (the "Motion") [Dkt. 133], and as permitted by the Court's Order requiring a response from Barton to the Receiver's proposed privilege protocol [Dkt. 216] and in support respectfully shows the Court as follows:

## SUMMARY

The alternative protocol proposed by Barton and several arguments he advances in his Response to the Receiver's proposed privilege protocol [Dkt. 229, the "Response"] rests on a fundamentally incorrect assertion: that Barton is entitled to control all of the documents and information in which any privileged document may be stored and the Receiver should submit limited requests to obtain unprivileged documents from Barton. Because the Court assumed exclusive jurisdiction and control over the Receivership Entities and their records, Barton's entitlement to any privileged materials does not entitle him to control all of the documents and data at issue, which are owned by the Receivership Entities. *See* Dkt. 29, ¶1. Nor does he hold *any* privilege in communications between counsel for any Receivership Entity and any person who communicated with counsel as a representative for the entity. *See* Dkt. 29, ¶46. Barton, rather than the Receiver, is the requesting party, and the Court should not condone Barton's continued refusal to comply with the Receivership Order based on a privilege that at most, entitles Barton to a privilege protocol to request protection of communications between Barton, individually, and his individual counsel.

## ARGUMENT

The Court should reject Barton's alternate privilege protocol, as well as the several incorrect factual assertions Barton advances in support.

1

**A.      Barton's Request For a Further Conference Is A Delay Tactic**

As an initial matter, the factual basis for Barton's request that the Court require the parties to confer, again, before ordering a privilege protocol that governs access to the documents and information Barton should have turned over to the Receiver on October 18, 2022, is a blatant misrepresentation.  Barton contends that the Receiver did not respond to his last communication regarding the privilege protocol, and thus failed to confer.  *See* Response at p. 3, citing ECF No. 160-1 at Ex. K.  On the contrary, on January 20, 2022, the day after the Receiver filed the Motion to Compel, Barton emailed additional requirements for the protocol that the parties had been negotiating for months, in fits and starts, because Barton's responses generally ignored the Receiver's proposals.  *See* Dkt. 166-1.  The Receiver responded on the same day.  *Id.*  Barton's subsequent communication on February 15, 2023, Dkt. 160-1, Exh. K, sent almost a month later, *had already been addressed in the pending Motion to Compel.*

The record evidences the Receiver's extensive efforts to negotiate a protocol, while hamstrung by Barton's absolute refusal to comply with the Receivership Order.  As of the date of this filing, the Receiver *still* does not have access to the Receivership Entities' email accounts, one drive account, and certain accounting records nearly seven months after his appointment.  Barton's request for a further conference, and the limited protocol he proposes evidences his intent to use his mistaken assertion that he is entitled to control all of the data at issue as a further excuse for his contumacious refusal to provide the access credentials to the Receiver.[1]

---

[1] Nor does *In re Royce Homes, LP*, 449 B.R. 709, 744 (Bankr. S.D. Tex. 2011) provide any justification for Barton's contempt.  In *Royce Homes*, a former key member of the debtor voluntarily turned over possession and control of his formerly privileged data to a third-party, Boothe.  That access destroyed his privilege.  *Id.* at 743.  In addition, when he failed *to object* to the Trustee's requests for the third-party's laptop on which the privileged communications were stored, he also waived his privilege *in his own privileged communications. Id.* at 744.  However, the case does not speak to the Trustee's (or Receiver's) entitlement, based on an order, to all of the debtor's records, or preservation of a privilege where the individual objects to protect his privilege but subsequently complies with an order.

Likewise, Barton's suggestion that the Court should "modify the scope of the protocol to focus on the issue directly at hand, specifically electronic documents on the Microsoft 365 server and privilege screening matters as to those documents" reserving for a later day a protocol to address "other issues" as they arise, *Response* at 4, again reveals Barton's misconception about the import of the Court's assumption of jurisdiction and control over all Receivership Records, as well as his continuing effort to prevent the Receiver's access to the data on the servers. The Receiver does not only need access to the Microsoft 365 cloud servers, but also the Receivership's Microsoft One Drive Account, accounting systems, and any other Receivership Entity information still possessed by Barton.[2]

**B.      Barton's Objections to the Receiver's Proposed Protocol Do Not Justify Rejecting It**

Barton raises six objections to the Receiver's proposed protocol and four related "key issues" in the modified protocol he proposes. *Response* at 4-5. None of these objections or issues warrant the inverse procedure—Barton's control over the data with limited access for the Receiver—Barton proposes.

> **1.      No Evidence Suggests the Vendor the Receiver Proposes is More Expensive (Objection No. 1)**

Without any evidence, Barton argues the vendor the Receiver proposes is more expensive than the one he seeks to use to control all of the data at issue. Similarly, Barton's argument that parties had previously agreed to use an alternate vendor falters on the fact that Barton would not agree to the basic provisions of the protocol. The absence of an agreement was the basis for presenting the dispute to the Court. The Receiver, as the Court's agent, *should have control over all the data*. Accordingly, he should be entitled to select the vendor he chooses to work with.

---

[2] As stated in multiple prior filings, in violation of paragraphs 8-10 and 18 of the Receivership Order, Barton *still* has made no attempt to identify what information belonging to the Receivership Entities remains in his possession. *See, e.g.*, Dkt. 67 at 9-10; Dkt. 139 at 30; Dkt. 225 at 36-37.

2.      **The Scope of the Protocol Is Required by the Receiver's Mandate to Control the Data; Barton Must Pay for His Access (Objection Nos. 2, 3 and 5; Proposed Modification No. 2)[3]**

Barton complains the scope of the protocol unfairly requires Barton to pay for the Receiver's imaging and hosting requirements at the same time he is holding all data hostage, and similarly complains the Receiver should not have "sole" control over what documents should be made available for a review. Thus, Barton seeks to control data to which he has absolutely no right, and to limit the data the Receiver preserves[4] and to which the Receiver has access, by requiring the Receiver to submit "reasonably targeted searches" while also limiting Barton's obligation to pay for data hosting "only until the completion of the privilege review process." *Response* p. 5.

Negotiations for the Receiver to access and preserve the data he has been ordered to assume possession and control over highlight Barton's disregard for the Receivership Order. Barton, not the Receiver, should submit search requests as necessary only to protect the limited privilege that may exist in some emails. Privileged data should be managed through the protocol proposed by the Receiver *with the remainder of the data wholly available to the Receiver.* Barton, who stored potentially privileged data on company servers, should be required to pay the costs of imaging, hosting, and searching for the communications he seeks to protect, particularly in view of the goal of the receivership: the preservation of limited assets for the eventual distribution to defrauded investors.[5] The Receiver should have the authority to ask the contractual vendor to conduct all

---

[3] Barton's first proposed modification—to limit the privilege protocol (and his obligation to turn over to the discovery vendor) to only the Receivership Entities' Microsoft 365 email accounts—is dealt with *supra*.

[4] The Receivership Order requires that the Receiver preserve all such records, books, and data. Dkt. 29, ¶6.

[5] *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (explaining that when electronic discovery poses an undue burden or expense on the responding party, the requesting party should bear the expense). Since the Receiver seeks (and has been ordered to) take possession of this information and holds the privilege for the Receivership Entities, Barton is the requesting party and should bear the expense.

tasks required for the Receiver to carry out his duties, even those unrelated to the privilege review, at Barton's expense. Once all searches and privilege reviews are complete, the Receiver agrees the Receivership Estate will assume the obligation to pay for continued hosting and additional searches.

3.   **The Proposed Timelines Are Not Unduly Burdensome, Nor Immovable (Objection No. 4)**

Barton has delayed, literally from the first day of the Receivership, in providing the access credentials to the Receivership Entities' data. His request now, to further delay the process of the Receiver's access to information stored on the servers by delaying his review of potentially privileged documents evidences, once again, an intent to delay. Barton has retained a very large law firm to defend him. That firm surely possesses resources sufficient to review and evaluate potentially privileged materials as necessary to satisfy a short timeline. In addition, the Receiver has not once refused a requested extension from Barton. The Court should impose the short deadlines in the Receiver's proposed protocols, but allow extension of those deadlines, as necessary, based on the parties' agreement. It should not, however, allow Barton to continue his contumacious behavior by using extended and moving deadlines as an excuse.

4.   **Barton Is Attempting to Invert His Burden (Objection No. 6; Proposed Modification Nos. 3 and 4)**

In his Response, Barton attempts to place the burden of overcoming any privilege on the Receiver. *Response* at 5. This contravenes Fifth Circuit law. Barton, not the Receiver, bears the burden of establishing that the communication to be protected is privileged. *See Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) ("Determining the applicability of the privilege is a highly fact-specific inquiry, and the party asserting the privilege bears the burden of proof.") (internal citations omitted); *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (same). Barton's proposed order would

allow him to claim any communication or document as privileged and then require the Receiver to negotiate with Barton to resolve this dispute or petition the Court for relief. Instead of lowering costs for the Receiver, as Barton asserts his proposal will do,[6] this will increase costs for the Receivership if the Receiver is required to dispute every communication Barton deems privileged.

Further, many of the communications involving Barton are likely in his capacity as an officer of a company and not in his individual capacity, and there can be no dispute that the Receiver now possesses any privilege previously held by the Receivership Entities. Moreover, "[t]here is no presumption that a company's communications with counsel are privileged." *BDO USA, L.L.P.*, 876 F.3d at 696. "A confidential communication between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance. Additionally, communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, are not privileged." *Id*. Allowing Barton to invert the Fifth Circuit's presumption will waste the Receiver's time, the Court's time, and provide Barton additional delays—which from the seven months of delay already achieved, appears to be his ultimate goal. The Receiver should have access to all communications and documents, and Barton should carry the burden of proving which materials are privileged.[7]

---

[6] Response at 5.

[7] In addition to his six objections and four proposed modifications to the Receiver's privilege protocol, Barton also mistakenly asserts, in blanket fashion, that Texas law supports expanding privilege protections to communications not involving an attorney. *Response* at 3. As an initial matter, federal law, not Texas law, governs any privilege dispute. *See Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action."); Complaint [Dkt. 1] (claiming federal questions jurisdiction and asserting claims under the Securities Act of 1933 and Securities and Exchange Act of 1934). Even if Texas law does apply, *Homeland*, the case cited by Barton, does not help Barton because the Microsoft 365 accounts to which the Receiver seeks access were all Receivership Entity accounts, not Barton's separate personal email account. Again, these communications by default are the property of the Receivership Entities because of their location on the Receivership Entities' cloud server. Nevertheless, the Receiver's proposed privilege protocol already accounts for Barton's potential individual privilege in any such communications. To the extent Barton relies upon *Homeland* for the proposition that the work product doctrine may nonetheless protect non-attorney communications or attachments, there is nothing in the proposed privilege protocol that would prevent him from proposing additional search terms to the Receiver to be included on the Search Result Report. Similarly, there is nothing that would have prevented Barton from identifying such documents during the pendency of the *seven months* since he was first ordered to turn over information on the

## **CONCLUSION**

For the reasons explained above, the Court should reject Barton's revised privilege

protocol and adopt the Receiver's proposed privilege protocol.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

---

Receivership Entities' cloud servers.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.