UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     *Plaintiff,*

v.

TIMOTHY BARTON, et al.,

     *Defendants,*

DJD LAND PARTNERS, LLC, and
LDG001, LLC,

     *Relief Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 3:22-CV-2118-X

## ORDER GRANTING THE RECEIVER'S MOTION TO COMPEL DOCUMENTS AND REQUEST FOR SANCTIONS AND ENTERING PRIVILEGE PROTOCOL

Before the Court is the Receiver's Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing. [Doc. 133]. Having carefully considered the motion, the Court **GRANTS** the Receiver's request to compel documents and information, **GRANTS** the Receiver's request for sanctions, and **DENIES** Defendant Timothy Barton's request for a hearing on the motion. Also before the Court is Barton's motion for leave to file a sur-reply to the Receiver's motion. [Doc. 201]. The Court has reviewed the proposed sur-reply and it does not alter the Court's analysis on the Receiver's motion. Accordingly, the Court **DENIES** Barton's motion for leave to file a sur-reply.

1

The Court's Order Appointing Receiver (the "Receivership Order") empowers and obligates the Receiver to, among many other things, "[t]ake custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Entities."[1]  It also ordered "[t]he individual Receivership Entities and the[ir] past and/or present officers . . . to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property."[2]  And it places the following *ongoing* obligation on the Receivership Entities and their past and present officers and directors: They "shall answer under oath to the Receiver all questions which the Receiver may put to them and *produce all documents as required by the Receiver* regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the [R]eceivership[.]"[3]

Since the Court issued these clear commands, Barton has flagrantly disregarded them and duplicitously sought to minimize or misinterpret their scope. A few of the most egregious examples serve to illustrate this pervasive trend.

After the first in-person meeting between Barton and the Receiver, the Receiver sent a written request for ten specific pieces of information that he believed were "most urgent" for the Receivership.[4]  Despite multiple follow-up calls and

---

[1] Doc. 29 at 4.

[2] *Id.* at 5.

[3] *Id.* at 7 (emphasis added).

[4] Doc. 134 at 16.

emails, Barton answered only one request, providing the contact information for a single individual.[5]

Barton refused the Receiver's request to provide information necessary to access the Receivership Entities' electronic data storage, such as contact information for IT employees or passwords, usernames, and contractor information.[6]  The Receiver eventually learned that Barton had retained a new IT professional and directed them to change Barton's passwords and access information, which he still refuses to provide.[7]  Barton also refused to provide the name or contact information for the head of the Receivership Entities' accounting group, and though the Receiver eventually located him through third parties, this Barton-controlled individual has so far refused to answer any of the Receiver's questions or provide any information.[8]

Despite multiple and repeated requests, Barton has thus far refused to provide an inventory of the art and antiques owned by the Receivership Entities.  The day

---

[5] *Id.* at 5.

[6] *Id.* at 5–8.

[7] *Id.* Though Barton asserts he withheld this and other data due to privilege concerns, the Receiver holds, and may waive, the privilege for all Receivership Entities.  Doc. 29 at 19.  And while the Receiver eventually sought proposed privilege protocol from Barton—which the Receivership Order does not require—Barton then refused to respond to the Receiver's requested modifications. Doc. 134 at 8–10.  The Court ordered Barton to respond, and having considered the Receiver's proposal and Barton's response, the Court details below the privilege protocol that shall govern going forward. Barton additionally claims his Fifth Amendment privilege obviates the need to comply with the Court's order, but while "a claim of Fifth Amendment privilege may be an adequate reason for the [C]ourt not compelling [Barton] to respond to cross-examination at [a] contempt hearing, [] the claim of privilege is not a substitute for relevant evidence." *United States v. Rylander*, 460 U.S. 752, 761 (1983).  And Barton's testimonial privilege does not apply to the act of producing the documents at issue because that act is not testimonial.  *See United States v. Hubbell*, 530 U.S. 27, 36 (2000).  Regardless, the Court is unaware of any assertion of Barton's Fifth Amendment privilege by Barton himself, rather than Barton's counsel, so this argument is at best premature.  *See Hall v. United States*, 413 F.2d 45, 48 (5th Cir. 1969).

[8] Doc. 134 at 10–11.

3

after the Receiver's appointment, he learned that Barton was removing art and antiques from a property in the Receivership, and Barton has yet to account for those missing items.[9]  Barton has confirmed that one Receivership Entity owned art and antiques valued at $12 million, but other than a handful of items worth only a few thousand dollars Barton has refused to disclose the location or description of any art or antiques.[10]

In perhaps his most blatant act of contempt, Barton violated the Receivership Order by interfering with a sale of property after the Court orally granted the Receiver's motion approving the sale.[11]  Barton personally contacted the purchaser of the property and attempted to dissuade them from going through with the sale.[12] Barton succeeded in delaying the sale, which has so far cost the Receivership tens of thousands of dollars due to his illicit activity.[13]

"If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."[14]  Additionally, "the court must order the disobedient party,

---

[9] *Id.* at 7, 35.

[10] *Id.* at 7–8, 37.

[11] Doc. 29 at 15–16.

[12] Doc. 134 at 12.

[13] *Id.*

[14] FED. R. CIV. PROC. 37(b)(2)(A)(vii).

the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure[.]"[15]

A finding of civil contempt requires "(1) that a court order was in effect, [] (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[16] Civil contempt is excusable only where a party has "ma[d]e in good faith all reasonable efforts to comply."[17] Willfulness is not required, and "[g]ood faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order" or not.[18]

The Court finds that Barton is in civil contempt of the Court's Receivership Order because he has repeatedly refused to follow its clear requirements. Accordingly, the Court **ORDERS** Barton to provide the following information, materials, and documents to the Receiver by the close of business (5pm central time) on the third calendar day from the date of this Order:

1.  All information and materials required by paragraphs 8–10 and paragraph 18 of the Receivership Order, including specifically the credentials and

---

[15] *Id.* at 37(b)(2)(C); *Carroll v. Jacques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 n.2 (5th Cir. 1997) ("Rule 37, in part, permits the court to order the offending party or its attorneys or both to pay the opposing counsel's reasonable expenses and fees incurred as sanctions for the offending party's failure to make disclosures or to cooperate during discovery."). Though Barton protests that Rule 37 is inapplicable because the Receivership Order does not "provide or permit discovery," the Rule's subsection permitting discovery sanctions permits them for discovery violations *and* "an order under Rule . . . 37(a)." FED. R. CIV. PROC. 37(b)(2)(A). And Rule 37(a) contemplates "order[s] compelling *disclosure or* discovery," which clearly encompasses the Receivership Order. *Id.* at 37(a).

[16] *In re Bradley*, 588, F.3d 254, 264 (5th Cir. 2009) (cleaned up).

[17] *Smith v. Smith*, No. 99-50212, 1999 WL 766991, at \*2 (5th Cir. 1999) (per curiam) (cleaned up). This exception—a contemnor's *inability* to comply—does not encompass Barton's claim that he is unable to access the documents at issue because he has submitted no evidence that they're located at a property he cannot access or that he has made any effort to provide the documents that he *can* access.

[18] *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).

information necessary to access the Receivership Entities' servers, email accounts, financial, accounting, and/or Quickbook accounts and the identity, location, and appraisal information for all art owned by any Receivership Entity, including art that was sold, transferred or otherwise disposed of since 2019;

2.   All information specifically requested by the Receiver in communications with Barton's counsel and others not addressed above, including:

(a)   All books and records of any Receivership Entities that are still in Barton's custody/control/possession, including all accounting data in Venkat Murugan's possession or control;

(b)   The location of any Quickbooks or other accounting files or backup files and all information necessary to access or obtain those documents and information;

(c)   The names, phone numbers, and email addresses for all former employees who were members of the accounting/financial team for the Receivership Entities between 2017 and 2022;

(d)   Tax Returns for the Receivership Entities for 2017–2022 or the contact information for whomever has possession or control of the tax returns;

(e)   Name and contact information for any bookkeeper used by any of the Receivership Entities between 2017 and 2022;

(f)   Name and contact information for any accountant used by any of the Receivership Entities between 2017 and 2022;

(g)   A list of all properties (or property interests) owned by any entity owned or controlled by Barton, including the entity that owns the property interest, the property location, the type of asset (undeveloped land, apartments, etc.), the approximate net value, amounts and identity of lienholders and encumbrances, contact information for any entity involved in developing, managing, or operating the property, and the addresses used by the entity for receipt of mail;

(h)    Appraisals and potential lenders or purchasers for the Turtle Creek property and the apartments;

(i)    An organizational or flow chart related to all Receivership Entities;

(j)    Properties or assets that are generating income and the accounts into which that income is deposited;

(k)    A list of all persons who hold company credit cards, and the entities listed as the account holder for those cards; and

(l)    A list of banks at which any Receivership Entity may have an open account.

3.    If Barton fails to fully comply by providing all listed information, documents, and materials by the close of business (5pm central time) on the third calendar day from the date of this Order, the Receiver shall file a Notice describing all information and materials that have not been provided. Upon the filing of such Notice, sanctions in the amount of $500 per day will begin to accrue until such time as the Receiver files a Notice of Compliance indicating Barton's full compliance with this Order. Barton may contest the adequacy of his compliance, although such contest will not stay the accrual of these coercive sanctions unless the Court subsequently sustains Barton's assertion that his compliance has been complete.

4.    The Court further finds that Barton's failure to comply with the Receivership Order as described in the Receiver's motion and evidenced by the supporting evidence has caused the Receivership Estate to unnecessarily incur costs and expenses, which are hereby assessed against Barton as compensatory sanctions. Within three business days from the date of this Order, Barton shall pay to the Receiver the amount of $19,250.

Finally, having considered the Receiver's proposed privilege protocol and Barton's response to that proposal, the Court **DENIES** Barton's request for the Court to order the parties to meet and confer about the privilege protocol[19] and **ORDERS** that the following privilege protocol shall govern going forward:

1.    The Receiver is authorized to retain a third-party computer forensic expert of his choosing, Veracity Forensics LLC (the "Vendor") to perform the forensic inspection.  The costs for the work performed by the Vendor as described below, or as further requested by Barton, will be paid by Barton, in accordance with the Vendor's standard billing practices.

2.    The Vendor will capture a forensic image, forensic extraction, or forensic collection of each Electronic Device, External Device, or Cloud Account (collectively, the "Devices") identified by the Receiver or in the possession of Barton.  In addition to providing the IT Access Data as previously ordered, Barton will provide or cause to be provided to the Vendor any additional logins, passwords, or encryption keys necessary for the Vendor to access each Device.  The Vendor will create a working copy of all original forensic images, extractions, or collections.  All downstream work including processing, filtering, searching, or analysis will be performed using the working copies.  All original images, extractions, and collections will be maintained as pristine copies.

---

[19] The Court is apprised of Barton's concerns about the Receiver exercising control over documents he believes may be privileged, but the Receivership Order makes clear that the Receiver holds, and may waive, the privilege for all Receivership Entities.  Doc. 29 at 19.  Barton's concern is thus with the Receivership Order, not with this privilege protocol.  And to the extent that Barton believes this protocol should be limited and then "tailor[ed]" for future issues, he may request modification of the protocol in response to such future issues should they arise.  Doc. 229 at 4.

3.    The Vendor will search the working copies of each Device to identify potentially privileged documents or information using search terms and parameters provided by the Receiver.  Such search terms must include each attorney or law firm employed by Barton individually, or employed to defend Barton in any litigation in which Barton was sued as an individual, as supplemented by the Receiver.  Not later than two days after receiving search terms from the Receiver, Barton's counsel may propose additional terms or parameters, which the Receiver will, in his discretion, determine whether to utilize.

4.    The parties may determine by agreement the method of presentation of the search results after learning the nature and volume of such searches.  If no agreement is reached within 10 days after the search volume is determined, the Receiver will determine the method of presentation for the search results.

5.    Before providing any reports or work product to the Parties, the Vendor will take steps to remove all potentially privileged documents including emails by running the search terms provided by the Receiver.

6.    Upon completion of the above steps, the Vendor will promptly provide the results of its findings to both Parties.  The Vendor will include a Search Result Report ("SRR") in electronic spreadsheet form of all potentially privileged documents identified in the search of each Device.  The SRR will include the appropriate metadata fields for each data type so that both Parties can determine if an Identified Item is indeed privileged, but will not include the content of any email.

7.      Unless the parties agree otherwise, counsel for Barton will have seven (7) days from receipt of each SRR to determine which items identified on the SRR they object to being provided to the Receiver.  For any item Barton objects to, counsel for Barton will make their objection clear by indicating in color highlight (RED) on the SRR.  The highlighted SRR will be sent to counsel for the Receiver and to the Vendor.  Unless the parties agree otherwise, the Receiver's counsel will have seven (7) business days to review and respond to Barton's objections.  For any items objected to by Barton that the Receiver agrees are privileged, no further action is needed.  Those items will remain highlighted RED and will not be produced to the Receiver.  Barton may obtain copies if requested.  For any item objected to by Barton that the Receiver does not agree with and believes is not privileged, the Receiver will change the highlight to (BLUE).  Once their review is completed, the Receiver's counsel will return the SRR to counsel for Barton and to the Vendor.

8.      The parties will confer regarding any item highlighted BLUE ("Potentially Privileged") and seek to resolve their dispute regarding whether such item is privileged.  If no agreement is reached, the Vendor will export and produce to counsel for Barton all items identified as Potentially Privileged and include a report with the appropriate metadata for each Potentially Privileged item.  Counsel for Barton will review the report and each item to determine which items are indeed Privileged.  Unless otherwise agreed by the parties, within fourteen business days Barton's counsel will indicate Privileged or Not Privileged on the report as well as mark the item RED if they object to the item being produced to the Receiver.  The

10

report will be returned to the Vendor and any item that is marked Not Privileged and is not highlighted will be provided to the Receiver. A report of items marked as Not Privileged but highlighted RED will be sent to counsel for the Receiver for review.

9.     If after a further conference, the parties are unable to agree regarding the existence of privilege regarding any item, within seven (7) days of written notice from the Receiver that further conferences will be unproductive, Barton must file a motion seeking the Court's resolution.

10.     After each SRR has been reviewed by both Parties and returned to the Vendor, the Vendor will provide all items not marked RED or BLUE to the Receiver as further directed by the Receiver.

11.     The Vendor may also perform other forensic examinations as directed by the Receiver, for instance to identify data that was deleted or removed.

12.     The Receiver shall task attorneys who have not and will not otherwise work on this case to sort paper documents located in the Office for privilege, utilizing written instructions, search terms, and a process similar to that described above.

13.     Barton must cooperate fully in providing assistance as necessary to comply with the privilege protocol.

**IT IS SO ORDERED** this 15th day of May, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

11