IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff | §<br>§<br>§<br>§ | |
| v. | §<br>§ | Case No. 3:22-cv-02118-X |
| TIMOTHY BARTON, et al,<br>    Defendants | §<br>§<br>§ | |

## MOTION TO INTERVENE AND LIFT STAY

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** First Development Company of Ohio, LLC ("Movant") and files this its *Motion To Intervene And Lift Stay* ("Motion"), seeking to (1) intervene in the above-captioned case and (2) lift the litigation stay, and would respectfully show unto the Court as follows:

### SUMMARY OF MOTION

1.    The instant case is a receivership case wherein this Court has appointed a receiver over a list of entities, including Titan Investments, LLC ("Titan").

2.    Prior to the instant proceedings, Titan entered into a contract to purchase 16.3 acres of real property in Grayson County, Texas (the "Property") from Movant. Pursuant to the terms of the purchase agreement, Titan paid earnest money and option fees into escrow at a title company. Because Titan never closed on the purchase of the Property, under the terms of the purchase agreement the funds belong to Movant. However, the aforementioned funds are still sitting in escrow at the title company because the SEC filed the instant case before the funds could be disbursed to Movant. There appears to be no dispute on the substance of the law that these funds belong to Movant. However, because of these receivership proceedings, the funds have not been disbursed to Movant.

MOTION TO INTERVENE                         1

3.      Accordingly, Movant files this Motion, seeking to intervene in the instant proceedings and requesting that the Court lift the litigation stay currently in effect with respect to the funds so that Movant can adjudicate its rights with respect to the same.

## TABLE OF CONTENTS

| **Section** | **Page No.** |
|---|---|
| Summary of Motion | 1 |
| Table of Contents | 3 |
| Table of Authorities | 4 |
| Factual And Procedural Background | 5 |
| Law And Argument | 8 |
|     Intervention | 8 |
|     Request to Lift Litigation Stay | 10 |
| Prayer | 15 |

**TABLE OF AUTHORITIES**

| **Authority** | **Page Nos.** |
|---|---|
| *Rishmague v. Winter*, 616 F. App'x 138 (5th Cir. 2015) | 11 |
| *Schauss v. Metals Depository Corp.*, 757 F.2d 649 (5th Cir. 1983) | 11 |
| *SEC v. Faulkner*, Civil Action No. 3: 16-CV-1735-D (N.D. Tex. Feb. 25, 2020) | 12 |
| *SEC v. Provident Royalties*, LLC, Civil Action No. 3: 09-CV-1238-L (N.D. Tex. July 7, 2011) | 11,12 |
| *SEC v. Stanford Int'l Bank Ltd.*, 2011 WL 1758763 (5th Cir. 2011). | 11, 12 |
| *SEC v. Stanford Int'l Bank Ltd.*, No. 11-10355 (5th Cir. Mar. 8, 2012) | 11, 12 |
| *SEC v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) | 11, 12 |
| Fed. R. Civ. P. 24 | 8 – 10 |

### FACTUAL AND PROCEDURAL BACKGROUND

4.    Movant is the owner of the above-described Property, comprising 16.3 acres in Grayson County, Texas situated along Woodlawn Bolevard and West Coffin Street in Denison, Texas.

5.    On or about February 10, 2022, Movant and Titan executed a *Contract of Sale* ("Contract"), whereby Movant would sell and Titan would purchase the Property.  A true and correct copy of the Contract is attached hereto as **Exhibit A** and incorporated herein by reference for all intents and purposes as if set forth in full.

6.    The purchase price for the Property under the Contract was $2,282,000.00, and as part of its obligations under the Contract Titan was required to put up earnest money (the "Earnest Money").[1] The Contract had several provisions detailing how the Earnest Money was to be treated, but succinctly once the inspection period expired the Earnest Money became non-refundable, and if Titan ever defaulted under the Contract, Movant was entitled to the Earnest Money as damages.[2]

7.    On May 11, 2022, the initial inspection period under the Contract expired, and by this date Titan had deposited the $55,000.00 in Earnest Money required by the Contract.[3]

8.    However, the Contract had an option whereby Titan could purchase a 30-day extension to the inspection period by paying a $10,000.00 purchase price, which Titan did.[4]

9.    On June 11, 2022, the extended inspection period expired and the Earnest Money went hard, becoming non-refundable.[5]

10.    Accordingly, per the terms of the Contract, this set the closing date for Titan to purchase the Property for August 10, 2022.[6]

---

1    See Ex. A, pg. 1, paragraph 3; pg. 2, paragraph 4(A).
2    See Ex. A, pg. 2, paragraph 4(B); pg. 9, paragraph 9(A); pg. 3, paragraph 4(C).
3    See Ex. A, pg. 9, paragraph 9(A); pg. 14, paragraph 15(A); pg. 19; pg. 2, paragraph 4(A).
4    See Ex. A, pg. 10, paragraph 9(E).
5    See Ex. A, pg. 9, paragraph 9(A); pg. 14, paragraph 15(A); pg. 19; pg. 2, paragraph 4(B).
6    See Ex. A, pg. 11, paragraph 12(A).

**MOTION TO INTERVENE**                    **5**

11.     However, the Contract included a provision that provided Titan the option to purchase two closing date extensions, whereby Titan could "extend the closing date for two (2) thirty (30) day periods upon the delivery to the Title Company of a non-refundable extension fee equal to Twenty Thousand and 00/100 ($20,000.00) for each extension prior to the applicable Closing Date."[7]

12.     On August 10, 2022, Titan purchased the first 30-day closing date extension option for $20,000.00, extending the closing date to September 9, 2022.

13.     On September 9, 2022, Titan purchased the second 30-day closing date extension option for $20,000.00, extending the closing date to October 9, 2022.

14.     The above-described funds paid by Titan under the Contract – comprising the earnest money ($55,000.00), the inspection period extension option purchase price ($10,000.00), and the two closing date extension option purchase prices ($20,000.00 per extension, totaling $40,000.00), for a total of $105,000.00 (collectively, the "Non-Refundable Funds") – are currently sitting in escrow at the title company.

15.     On September 23, 2022, the Securities and Exchange Commission ("Plaintiff") filed its Complaint [Doc. No. 1], initiating the above-captioned case.  Titan was not listed as a defendant in Plaintiff's Complaint.

16.     On September 26, 2022, Plaintiff filed its motion requesting, among other things, that a receiver be appointed over a list of entities [Doc. No. 6].  However, of note, Titan was not included in the list of entities that Plaintiff was requesting a receiver for.

17.     October 9, 2022 came and went, and Titan did not close on the purchase of the Property.

18.     On October 18, 2022, the Court signed its order appointing a receiver [Doc. No. 29] ("Receivership Order").  Per its terms, the Receivership Order covered all tangible and intangible property of the entities put into the receivership.[8]  Included in the Receivership Order was a stay of all

---

7    See Ex. A, pg. 11, paragraph 12(A).
8    Receivership Order, pg. 2 – 3, paragraph 1.

**MOTION TO INTERVENE**                                    6

litigation, including a stay on all civil legal proceedings with respect to any of the receivership entities or the receivership property.[9]

19.     And while the Receivership Order did not list Titan or its assets in the list of entities or property covered by the Receivership Order, the receiver asserted that Titan and its assets fell within the Receivership Order's scope and indicated that a motion would be forthcoming to clarify this.

20.     Accordingly, on November 1, 2022, Cort Thomas, as Receiver ("Receiver") filed a motion to supplement the Court's original Receivership Order [Doc. Nos. 41 and 42], requesting that the receivership be expanded to include a number of new entities, including Titan.

21.     In or about the beginning of November 2022, counsel for Movant reached out to counsel for Receiver to specifically discuss the Non-Refundable Funds and whether the Receiver had any objection to releasing them to Movant.  Counsel for Receiver indicated that since the receivership was new that the Receiver needed some time to review all the different matters within the scope of the receivership – including Titan and the Non-Refundable Funds – because the Receiver was "drinking from a firehouse."  In recognition of this, Movant agreed to allow Receiver some time before taking any further steps.

22.     On December 13, 2022, the Court entered its order granting the Receiver's motion and expanding the list of receivership entities, nunc pro tunc [Doc. No. 88] ("New Receivership Order"). The New Receivership Order included Titan as one of the receivership entities under the Receiver.

23.     Subsequently, counsel for Movant and counsel for Receiver have spoken a number of times, but Receiver has not agreed to release the Non-Refundable Funds to Movant or even agreed to lifting of the litigation stay to allow this issue to be litigated.

24.     Further, despite their multiple conversations regarding these issues, Receiver has offered no substantive argument to contest that the Non-Refundable Funds belong to Movant.

---

9    Receivership Order, pg. 16 – 17.

**MOTION TO INTERVENE**                                    **7**

25.     Rather, instead, counsel for Receiver has stated that the stay is in place and indicated that the Receiver would ask for sanctions and/or attorneys' fees if Movant filed a motion seeking to lift the stay.

26.     As of the filing of this Motion, it has been almost **eight months** since the closing date passed (October 9, 2022) and since the Court signed its original Receivership Order (October 18, 2022), as well as over five months since the Court signed its New Receivership Order (December 13, 2022) – which, as covered above, was by its own terms designated nunc pro tunc, and thus retroactive back to the original Receivership Order.

27.     Accordingly, Movant now files this Motion in order to protect its rights in the Non-Refundable Funds.

## LAW AND ARGUMENT

28.     Movant files this Motion, seeking to intervene in this case and requesting that the Court lift the litigation stay so that Movant may pursue its rights with respect to the Non-Refundable Funds.

29.     As outlined below, the Court should grant both requests.

### Intervention

30.     Federal Rule of Civil Procedure 24, titled Intervention, governs intervention in federal cases.

31.     Subsection (a), which covers interventions as a matter of right, states that a Court "**must** permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest" (emphasis added).[10]

---

10  Fed. R. Civ. P. 24(a)("On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.").

**MOTION TO INTERVENE**                                              **8**

32.     As described above, Movant claims an ownership interest in the Non-Refundable Funds. From discussions with the Receiver's counsel, Receiver asserts that the Non-Refundable Funds are a part of the receivership estate and are thus a part of the subject of the above-captioned case.  There is currently a litigation stay in place and not allowing Movant to intervene to request a lifting of the stay so it can litigate its rights with respect to the Non-Refundable Funds will, as a practical matter, impair or impede Movant's ability to protect its interest in the funds.  Further, allowing the Receiver to take and dispose of the Non-Refundable funds – or even to adjudicate legal rights to or ownership of the funds – without Movant being a party in this case will, as a practical matter, impair or impede Movant's ability to protect its interest in the funds, and no other party currently in the instant action adequately represents Movant's interest in the Non-Refundable funds.

33.     Finally, Movant's motion to intervene is timely.  No material litigation with respect to the funds has occurred and Movant has only delayed its filing of this Motion at the request of the Receiver to give the Receiver adequate time to examine the facts of this matter and for the parties to potentially resolve this matter without the need for Court intervention.

34.     Accordingly, the Court should grant Movant's request to intervene in this case as a matter of right under subsection (a) of Rule 24.

35.     In the alternative, subsection (b) of Rule 24, which covers permissive intervention, also forms a basis for granting Movant's request to intervene.  Subsection (b) states that a Court may allow a party to intervene who has a claim or defense that shares with the main action a common question of law or fact.[11]  The common questions of law or fact which justify intervention are two-fold: first, those questions with respect to Movant's request that the litigation stay be lifted, and second, potentially those questions with respect to the actual ownership of the funds, if that determination is made in this

---

11  Fed. R. Civ. P. 24(b)(1) ("In General. On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.")

**MOTION TO INTERVENE**                              **9**

Court (although, as outlined below, Movant is requesting that the Court lift the stay so that Movant can have this matter adjudicated in Texas State Court or in the alternative this Court).   Moreover, a permissive intervention here would not unduly delay or prejudice the adjudication of the original parties' rights because Movant is not asking for any continuance of any kind or to delay the adjudication of anyone's rights in this case; rather, just the opposite: Movant is intervening so that the adjudication of rights with respect to Non-Refundable Funds can actually take place.[12]

36.      Furthermore, the bases of Plaintiff's claims in intervention are set out herein, with the factual basis being described above and in the attached exhibit and the legal basis being described below.  To put it succinctly, Movant is seeking to intervene so it can have this Court lift the litigation stay so that Movant can litigate the ownership of the Non-Refundable Funds in Texas State Court or in the alternative in this Court.[13]

37.      Accordingly, in addition to intervention as a matter of right, permissive intervention is also appropriate under Rule 24(b) as well.

38.      Thus, for the reasons set forth herein, Movant requests that the Court grant Movant's request to intervene in the above-captioned case.

### Request to Lift Litigation Stay

39.      Movant is also asking the Court to lift its litigation stay so that Movant can litigate its rights to the Non-Refundable Funds in Texas State Court, or, in the alternative, in this Court.

40.      As described above, both Movant and the Receiver claim an ownership interest in the Non-Refundable Funds.  As also described above, the Court's Receivership Order includes a litigation stay which currently prevents Movant from litigating and resolving this dispute.[14]  Accordingly, Movant

---

12  Fed. R. Civ. P. 24(b)(3)("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.")

13  Fed. R. Civ. P. 24(c)("A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.").

14  Receivership Order, pg. 16 – 17.

**MOTION TO INTERVENE**                              **10**

now requests that the Court lift or modify its stay to allow Movant to litigate this matter and obtain a judgment resolving this dispute either in Texas State Court, or, in the alternative, in this Court.

41.    Per the Fifth Circuit, a United States District Court has authority and discretion to enter and modify orders imposing a stay of litigation with respect receivership property and the administration of the same.[15]  However, while the Court's discretion on this matter is broad, a litigation stay cannot be indefinite, and when a request to lift the stay is put before the Court, the question "is **not if** but **when** … the stay [should] be lifted and claims allowed to proceed" (emphasis added).[16]

42.    This reason for this is "because at some point, persons with claims against the receivership should have their day in court."[17]

43.    As stated above, whether to modify or lift a litigation stay in a receivership is within the District Court's discretion, and while there's no mechanical formula for a District Court to determine whether to lift or modify a receivership litigation stay, the Fifth Circuit has recognized a three-factor test that provides "a useful set of considerations" called the *Wencke* test that Courts use in both this District as well as this Circuit as a whole.[18]

---

15  See *Securities and Exchange Commission v. Provident Royalties, LLC*, Civil Action No. 3: 09-CV-1238-L (N.D. Tex. July 7, 2011)("a district court has broad authority to issue orders preventing interference with its administration of the receivership property, such as orders imposing blanket stays of litigation.") citing *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1983) and *SEC v. Stanford Int'l Bank Ltd.*, 2011 WL 1758763, at \*1 (5th Cir. 2011).

16  *Securities and Exchange Commission v. Provident Royalties, LLC*, Civil Action No. 3: 09-CV-1238-L (N.D. Tex. July 7, 2011)("To determine whether to make an exception to a stay of proceedings, a court should consider: "`(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from stay is made; and (3) the merit of the moving party's underlying claim." Stanford, 2011 WL 1758763, at \*2 (quoting SEC v. Wencke ("Wencke II"), 742 F.2d 1230, 1231 (9th Cir. 1984)). The issue under the test is not if but when during the course of a receivership should the stay be lifted and claims allowed to proceed because "at some point, persons with claims against the receivership should have their day in court.""); *Rishmague v. Winter*, 616 F. App'x 138, 139 (5th Cir. 2015)("the relevant issue "is one of timing, that is, when during the course of a receivership a stay should be lifted and claims allowed to proceed, not whether the stay should be lifted at all"")

17  *Securities and Exchange Commission v. Provident Royalties, LLC*, Civil Action No. 3: 09-CV-1238-L (N.D. Tex. July 7, 2011)("The issue under the test is not if but when during the course of a receivership should the stay be lifted and claims allowed to proceed because "at some point, persons with claims against the receivership should have their day in court."").

18  *Securities and Exchange Commission v. Stanford International Bank Limited*, No. 11-10355 (5th Cir. Mar. 8, 2012) (""We review the district court's actions pursuant to the injunction it issued for an abuse of discretion.""); 41. Securities and Exchange Commission v. Stanford International Bank Limited, No. 11-10355 (5th Cir. Mar. 8, 2012) ("The Wencke test is a balancing test that sets forth three factors for courts to consider in determining whether to modify or lift a stay which prohibits persons from commencing any suits against a receivership estate … Although this

**MOTION TO INTERVENE**                    **11**

44.     The *Wencke* test consists of three factors: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.[19]

45.     All three factors point towards lifting the stay in this case.

46.     First, refusing to lift the stay does not genuinely preserve the status quo and the moving party will suffer substantial injury if not permitted to proceed.  Lifting the stay will not disturb the status quo because lifting the stay will not actually change possession of the Non-Refundable Funds.  As described above, the Non-Refundable Funds are currently sitting in escrow at the title company.  Lifting the stay will not disturb this status quo because lifting the stay will not change possession of the funds – they will remain in escrow at the title company.  Rather, lifting the stay will only allow Movant to go to court to adjudicate the dispute as to the ownership of the funds.  Moreover, Movant will suffer substantial injury if not permitted to proceed because the funds are a part of its business capital and not

---

court has not explicitly required the district courts to use the Wencke test, we have noted that these factors "are a useful set of considerations" in determining whether a stay should be modified or lifted … the district court does not need to mechanically echo the Wencke test in its decision."); *Securities and Exchange Commission v. Faulkner*, Civil Action No. 3: 16-CV-1735-D (N.D. Tex. Feb. 25, 2020)("Courts considering whether to lift a stay of litigation entered pursuant to a receivership order have applied the following three-part test that balances the interests of the receiver and the moving parties: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if it is not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merits of the moving party's underlying claim."); *Securities and Exchange Commission v. Provident Royalties*, LLC, Civil Action No. 3: 09-CV-1238-L (N.D. Tex. July 7, 2011)("To determine whether to make an exception to a stay of proceedings, a court should consider: "`(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from stay is made; and (3) the merit of the moving party's underlying claim." Stanford, 2011 WL 1758763, at *2 (quoting SEC v. Wencke ("Wencke II"), 742 F.2d 1230, 1231 (9th Cir. 1984)). The issue under the test is not if but when during the course of a receivership should the stay be lifted and claims allowed to proceed because "at some point, persons with claims against the receivership should have their day in court."").

19  *Securities and Exchange Commission v. Stanford International Bank Limited*, No. 11-10355 (5th Cir. Mar. 8, 2012) ("This court has previously described the test by stating: To determine whether an exception should be made to a stay of proceedings in a case such as this, the court should consider "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim."")

**MOTION TO INTERVENE**                     **12**

having those funds available for use in Movant's business materially impacts its ability to conduct such business. Thus, this factor leans in favor of lifting the stay.

47. Second, the time in the course of this receivership also favors lifting the stay. As of the filing of this Motion, it has been almost eight months since the Court signed its original Receivership Order (October 18, 2022), and over four months since the Court incorporated Titan into the receivership nunc pro tunc back to the date of the original Receivership Order. Further, as described above, counsel for Movant reached out to Receiver regarding Movant's claim to the Non-Refundable Funds in the beginning of November 2022 (approximately 6 months ago) and despite that time having elapsed, to date counsel for Receiver has provided no substantive reason (i.e. no reason based on the substance of the law vs. merely the procedural block of the litigation stay) why the funds do not belong to Movant and why they should not be released from escrow at the title company to Movant. Thus, the second factor also favors lifting the stay.

48. Finally, the third factor – the merits of Movant's underlying claim – also favors lifting the stay. As described above, all of the Non-Refundable Funds are non-refundable under the Contract and belong to Movant: $55,000.00 was earnest money that went hard at the end of the inspection period, and the remaining $50,000.00 comprises 3 separate purchase prices for 3 corresponding extensions of time (specifically, as described above, one extension of the inspection period and two extensions of the closing date). All of the funds were spent by Titan before this case had even been filed, much less before any receivership order had been entered. Further, Receiver has provided no substantive contest to any of the foregoing nor to Movant's right to the funds. Accordingly, this factor also favors lifting the stay to allow Movant to litigate its rights to the funds.

49. Thus, all three factors favor lifting the stay, and the Court should lift the litigation stay to allow Movant to adjudicate its rights with respect to the funds.

**MOTION TO INTERVENE**                    **13**

50.     Moreover, even without the foregoing factors, the Court should still lift the stay.  Movant is not attempting to bog down or interfere with this case.  Rather, Movant simply wants to have its day in court and is asking the Court to lift the stay to for that purpose.  Moreover, as covered above, (1) Movant's claim to the funds is meritorious and supported by the facts and (2) despite Movant holding off (**at Receiver's request**) for approximately six months to give Receiver time to review the matter and offer any legitimate contest to Movant's rights with respect to the funds, Receiver has not provided **any** substantive reasons to contest Movant's right to the funds.  Given the foregoing, Movant should not be kept in litigation stay limbo with respect to money that should rightfully be in its possession, and the Court should exercise its discretion and lift the stay to allow Movant to have its day in court with respect to the ownership of the funds.

51.     Further Movant is asking that it be allowed to litigate this matter in Texas State Court. The determination of the ownership of the Non-Refundable Funds is a matter of purely Texas law. Texas Courts are imminently qualified to interpret and decide matters of Texas state law, and a Texas Court can make such a determination expeditiously.  Further, allowing Movant to go to Texas State Court to obtain such a determination will only require Movant and the Receiver to participate in such litigation, and not involve the many other many parties in this case which might otherwise be dragged in if the litigation took part in this case, bogging down this case and the other parties in it with what is essentially a separate two-party dispute.

52.     Moreover, allowing Movant to go to State Court serves to preserve judicial economy, because it allows this dispute to be resolved by a court of competent jurisdiction without bogging down this Court's docket with what is in the grand scheme of this receivership a minor side dispute (i.e. when comparing the amount in controversy in this particular dispute vs. the amounts in controversy for the entire receivership).

**MOTION TO INTERVENE**                              **14**

53.    Moreover, if the Court is concerned about the effect that having a State Court decide this dispute will have on the administration of the receivership estate in this case as a whole, this Court can always condition its lifting of the stay so that once the determination as to the ownership of the Non-Refundable Funds is done in State Court the parties will still have to come back to this Court to actually authorize the release of the funds from the title company.

54.    In the alternative, if the Court is not inclined to allow Movant to litigate this matter in Texas State Court, the Court should still lift the litigation stay to allow Movant to litigate this matter in this Court, for all of the same reasons listed above.

55.    In conclusion, for all the reasons listed above, the Court should lift the litigation stay and allow Movant to proceed as described herein.

**WHEREFORE, PREMISES CONSIDERED**, Movant requests that the Court grant Movant all the relief requested herein, including (1) entering an order allowing Movant to intervene in this case, and (2) lifting the stay to allow Movant to litigate its rights as described herein, and such other and further relief, both at law and in equity, to which Movant may show itself to be justly entitled.

Respectfully submitted,

  /s/ Jonathan Gitlin
Jonathan Gitlin
jgitlin@patellegal.com
Texas State Bar No. 24064305
The Patel Law Group, PLLC
1125 Executive Circle, Suite 200
Irving, Texas 75038
Ph: (972) 650-6848
Fax: (972) 650-6167
**ATTORNEYS FOR MOVANT**

**MOTION TO INTERVENE**                    **15**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that prior to filing this motion that he personally spoke with counsel for the receiver who indicated that the receiver was opposed to this motion and the relief requested herein.

    /s/ Jonathan Gitlin
    Jonathan Gitlin

## CERTIFICATE OF SERVICE

I certify that on May 25, 2023, a true and correct copy of this document was served on all counsel of record by the Court's ECF system.

    /s/ Jonathan Gitlin
    Jonathan Gitlin