**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| Plaintiff | § § | |
| **v.** | § § | **Case No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al,** | § § | |
| Defendants | § | |

**MOTION TO INTERVENE AND LIFT STAY APPENDIX**

| Exhibit | Description | Page No. |
|---|---|---|
| A | Contract of Sale | 2 |

APPENDIX                                              1

## CONTRACT OF SALE

IN CONSIDERATION of the mutual terms, provisions, covenants and agreements contained in this Contract of Sale (the "Contract"), the parties hereto agree as follows, as of the Effective Date (as defined herein).

1.      PARTIES. **First Development Co. of Ohio, LLC, a Texas limited liability company (** "Seller"), shall cause the sale and convey same to **Titan Investments, LLC, a Texas limited liability company** (the "Purchaser"), and Purchaser shall buy and pay for the Property (defined below).

2.      PROPERTY. Upon the terms and conditions hereinafter stated, Seller hereby agrees to sell and convey to Purchaser good and indefeasible title of an estimated **16.3 acres situated along Woodlawn Boulevard and West Coffin Street, in the City of Denison,  Grayson County, Texas**, an approximate legal description of which is set forth on Exhibit "A" attached hereto and incorporated herein by this reference for all purposes (the "Land"), together with

(1) all rights and appurtenances pertaining to the Land, including, without limitation, (a) all roads, alleys, easements, streets and rights of ways adjacent to or serving the Land, (b) strips and gores of real property lying between the boundaries of the Land and adjoining real estate, and (c) any and all rights of ingress and egress thereto; and all of Seller's right, title and interest in any minerals, utilities, licenses and permits related to the Land,

(2) all benefits, privileges, tenements, hereditaments, rights and appurtenances thereon or pertaining to such real property,

(3) all permits, approvals, licenses, leases, contracts, reports, water and sewer capacity commitments, all engineering and architectural plans, Declarant status under any Property Associations formed on or respecting the Land, rights to develop and rights to reimbursements from any governmental or quasi-agency for either utility impacts fees, taxing district bond sale proceeds if any, and other rights and interests owned or held by Seller, if any, in connection with the Land (collectively, "Intangible Property"), and

(4) all appurtenant easements owned by Seller, if any, which are used, usable  or needed in connection with the development of the Land

(the foregoing is collectively referred to herein as the "Property"), and Purchaser agrees to purchase the Property at the Purchase Price (hereinafter defined) and upon the terms set forth herein. The metes and bounds description of the Land contained in the Survey (hereinafter defined), if different from the legal description attached hereto, shall be substituted for Exhibit "A" and shall become a part of this Contract as the description of the Land to be conveyed hereunder. Furthermore, Exhibit "A" shall be automatically updated to include the description of the tract(s) within the Property, and or easements appurtenant to the Property,  that Seller owns upon disclosure to the Purchaser by Seller which shall occur prior to the expiration of the Seller Delivery Date (as defined herein).

3.      PURCHASE PRICE. The purchase price for the Property is **Two Million, Two Hundred And Eighty-Two Thousand U. S. Dollars ($2,282,000.00)** (the "Purchase Price").

4.    EARNEST MONEY.

A.    Initial Earnest Money.    Within 5 business days of the Effective Date of this Contract, Purchaser shall deposit earnest money in the form of a check or wire transfer of funds in the amount of **FIVE THOUSAND DOLLARS ($5,000)** (the "Initial Earnest Money") with **Title Partners, LLC, attn: Judd Whiteman**, in its capacity as escrow agent, to be held in escrow pursuant to the terms of this Contract. Additional Earnest Money. Not later than ninety (90) days after the Effective Date, if this Agreement shall not have terminated prior to such time, then Purchaser shall deposit additional earnest money with the Escrow Agent in the amount of **FIFTY THOUSAND DOLLARS ($50,000.00)** by check or in cash, which sum shall be invested by the Escrow Agent in a federally-insured, interest-bearing account pending disposition thereof in accordance with this Agreement (such sum and the interest accrued thereon being hereinafter referred to collectively as the **"Additional Earnest Money", and together with the Initial Earnest Money, shall be referred to herin as the "Earnest Money"**). Notwithstanding anything herein to the contrary, a portion of the Earnest Money in the amount of $100.00 shall be non-refundable and shall be distributed to Seller upon any termination of this Contract as full payment and independent consideration (the "Independent Consideration") for Seller's execution of and performance under this Contract.

B.    If Purchaser fails to timely deposit the Earnest Money, Seller may terminate this Contract at any time before Purchaser deposits the Earnest Money with the Title Company. The Earnest Money, at Purchaser's election, may be placed in an interest-bearing account by the Title Company, and any interest earned thereon shall become a part of the Earnest Money. If Purchaser terminates this Contract on or prior to the expiration of the Inspection Period, all Earnest Money, other than the Independent Consideration, shall be returned to Purchaser. If Purchaser does not terminate this Contract on or prior to the expiration of the Inspection Period, the Earnest Money **(referring to both the Iniital and Additional Earnest Money)** shall be **non-refundable** to Purchaser; unless:

> (a)    Seller fails or refuses to comply in a timely manner with its obligations hereunder, or
>
> (b)    at the Closing, any of Seller's representations, warranties or covenants contained herein is not true or has been breached or modified, or
>
> (c)    or in the event that, at the Closing, any condition precedent to Purchaser's obligations hereunder, **as set forth in Section 14 hereof,** is not fully satisfied as herein required, or
>
> (d)    this Contract is terminated pursuant to Sections 6 (Review of Title Documents), 10 (Casualty Loss; Condemnation) or 13(A) (Purchaser's Remedies) hereof,

(herein the **"Limited Special Circumstances"**) in which case such shall be disposed in accordance with the provisions of this Agreement relating to Earnest Money. If this Contract is terminated pursuant to either Sections 6 (Review of Title Documents), 10 (Casualty Loss; Condemnation) or 13(A) (Purchaser's Remedies) after the expiration of the Inspection Period, the Earnest Money shall be returned to Purchaser. The Earnest Money shall be paid to Seller at the Closing and shall be applicable to the Purchase Price.

C.      Disposition of Earnest Money.   If Purchaser terminates this Agreement pursuant to any right to do so as specified herein, the Earnest Money, together with any interest thereon, if applicable, shall be returned to Purchaser, without any requested or required notice to or approval of any person or party.  If Purchaser completes this Agreement and purchases the Property, such Earnest Money, including interest, shall be applied towards the Purchase Price.  If Purchaser fails to perform its obligations, or otherwise terminates this Agreement, without any right to do so as specified herein, Seller shall be entitled to receive the Earnest Money as its sole damages under this Agreement.

D.      Disbursement of Earnest Money. In the event that the sale of the Property is consummated as contemplated in this Agreement, then the Earnest Money shall be applied to the Purchase Price or returned to Purchaser at Closing, as Purchaser shall direct.   In the event that this Agreement is terminated prior to consummation of the sale of the Property in accordance with this Agreement, then the Earnest Money shall be delivered as provided herein or as otherwise directed in writing by Purchaser and Seller.

E.      Authority to Disburse Earnest Money. The Escrow Agent shall be authorized to make disbursements of the Earnest Money authorized herein without any further joinder or approval of Seller or Purchaser; provided, however, that, if Purchaser does not terminate this Agreement pursuant to an express right to do so as provided herein, then the Escrow Agent shall not thereafter disburse the Earnest Money to either party hereto until and unless either (i) the Escrow Agent has received a notice signed jointly by both parties or a court order directing such disbursement or (ii) the Escrow Agent has received a request for such disbursement signed by one of the parties and has given the other party notice of such request not less than five (5) business days prior to consummating such disbursement.

5.      SURVEY AND TITLE DOCUMENTS.

A.      Survey. **Within ten (10) days after the Effective Date**, Seller, at its sole cost and expense, shall deliver to Purchaser its existing survey on the Property.  The Survey shall be in a form acceptable to the Title Company for the deletion of the standard survey exception relating to boundaries, which if applicable may require the Seller providing an affidavit to the Title Company that there have not been any changes to the condition of the Property which would render the existing survey inaccurate for any reason; which the Seller covenants to provide, if and to the extent such is factual. The Survey must: (a) Identify the Land by metes and bounds, and by platted lot description; (b) Show that the Survey was made and staked on the ground with corner permanently marked; (c) Set forth the dimensions and total area of the Land; (d) Show the location of all improvements, highways, streets, roads, railroads, rivers, creeks or other waterways, fences, easements and rights-of-way on the Land with all easements and rights-of-way referenced to their recording information; (e) Show any discrepancies or conflicts in boundaries, any visible encroachments and any portion of the Land lying in a special flood hazard area (an "A" or "V" zone as show on the current Federal Emergency Management Agency (FEMA) flood insurance rate map); and (f) Contain the surveyor certificate that the survey is true and correct.  If the Survey is not acceptable to the Purchaser or the Title Company, then Purchaser may update the Survey prior to Closing at Purchaser's cost (provided however, that if and conditioned upon the Closing, then the Seller shall reimburse Purchaser for the costs of any such update of the Survey up to the

amount of $3,000.00, but not otherwise). At Closing, the metes and bounds description of the Land reflected in the Survey (or update thereof, as the case may be), upon approval of the Purchaser and Title Company, shall be used in the warranty deed and any other closing documents requiring a legal description of the Property.

B.    Title Commitment. **Within ten (10) days after the Effective Date**, Seller shall, at Seller's sole cost and expense, deliver or cause to be delivered to Purchaser (1) a title commitment (the "Title Commitment") covering the Property binding the Title Company to issue a Texas Owner Policy of Title Insurance (the "Title Policy") on the standard form prescribed by the Texas State Board of Insurance at the Closing, in the full amount of the Purchase Price, insuring Purchaser's fee simple title to the Property to be good and indefeasible, subject only to the Permitted Exceptions as defined below, and (2) the following documents (collectively, the "Title Documents"): (a) true and legible copies of all recorded instruments affecting the Property and recited as exceptions in the Title Commitment, (b) a current tax certificate, and (c) written notices as required in Section 5(C).

C.    Special Assessment Districts. If the Property is situated within a utility district or flood control district subject to the provisions of Section 50.301, Texas Water Code, then Seller shall give to Purchaser as part of the Title Documents the required written notice and Purchaser agrees to acknowledge receipt of the notice in writing. The notice must set forth the current tax rate, the current bonded indebtedness and the authorized indebtedness of the district, and must comply with all other applicable requirements of the Texas Water Code. If the Property is subject to mandatory membership in a property owner's association, Seller shall notify Purchaser of the current annual budget of the property owners' association, and the current authorized fees, dues and/or assessments relating to the Property.

6.    REVIEW OF TITLE DOCUMENTS.

A.    Review Period. Purchaser shall have Ten (10) days (the "Review Period") after Purchaser's receipt of the last of (i) the Survey (or any update thereof, as the case may be), (ii) the Title Commitment, and (iii) the Title Documents, to review them. If Purchaser has any objections to the Survey, Title Commitment or Title Documents, then Purchaser may deliver the objections to Seller prior to the expiration of the Review Period. Except as otherwise provided herein, any item to which Purchaser or its lender does not object prior to the expiration of the Inspection Period which is not otherwise required to be cured by the Title Company shall be deemed a "Permitted Exception." Any other provision herein to the contrary notwithstanding, all liquidated liens disclosed in the Title Commitment (or any subsequent commitment) and all other exceptions disclosed in the Title Commitment (or any subsequent commitment) which arise on or after the Effective Date of this Agreement and are not attributable to actions by Purchaser (collectively, the "**Mandatory Cure Items**"), shall be satisfied, cured or removed by Seller, at Seller's sole cost and expense, at or prior to the Closing. The Mandatory Cure Items and any other items that the Title Company identifies that it requires to be released at Closing will be deemed objections by Purchaser that must be cured and shall not be Permitted Exceptions. If there are objections by Purchaser, including a third party lender, Seller may, but is not obligated to attempt to satisfy such objections except as otherwise provided herein, and Seller shall respond in writing irrevocably identifying which objections it will not cure and which objects it will cure which shall occur within

ten (10) days after receipt of Purchaser's objections (the "Cure Period"). If Seller fails to respond to Purchaser's written objections, then Seller shall be deemed to be obligated to cure all such objections prior to or at Closing, by a credit toward the Purchase Price, as a condition to Purchaser's closing. Regardless of any conflict herein or Purchaser's objections or any failure to object, any blanket easements, Seller's retained rights or rights of third parties including mineral owners and lessees, restrictions, or other encumbrances which would prohibit or materially interfere with or increase the costs of Purchaser's redevelopment of the Land shall be deemed objections which must be cured by Seller at Seller's expense prior to Closing which shall be a condition to Purchaser's closing. Otherwise, Purchaser's failure to object within the time provided shall be a waiver of the right to object.

B.      Cure Period. If Seller cannot cure the objections as required above within the Cure Period, then Purchaser may terminate this Contract by delivering a written notice to Seller within ten (10) days after the expiration of the Cure Period and otherwise shall be deemed to have elected to extend the Cure Period as necessary but not later than the Closing Date in order for Seller to cure such objection which shall be a condition for Purchaser to close but which may be waived by Purchaser prior to Closing. If Purchaser terminates this Contract or elects not to close because of Seller's failure to cure any required objection, the refundable portion of the Earnest Money and any fees remitted by Purchaser shall be immediately returned to Purchaser and thereafter neither party shall have any rights or obligations under this Contract (except for those which may expressly survive the termination of this Contact). If Purchaser does not terminate this Contract and proceeds with Closing, then Purchaser shall be deemed to have waived any uncured objections and must accept such title as Seller is able to convey as of Closing, subject to the other terms and provisions of this Contract. Notwithstanding the foregoing, at or prior to Closing, Seller shall discharge or cause to be discharged all: (i) matters set forth on Schedule C of the Title Commitment; (ii) exceptions to title created after the Effective Date without the written consent of Purchaser; and (iii) judgments, liens and mortgages affecting the Property, and same shall not constitute Permitted Exceptions.

C.      Updated Commitment.     If Purchaser elects not to terminate this Agreement in accordance with Section 6A or 6B  above, Seller, upon request of Purchaser, shall cause Title Company to reissue from time to time the Commitment prior to Closing. Purchaser shall have the right to object to any new exceptions other than the Permitted Exceptions shown on any updated Commitment. If Seller fails to cure such items, Purchaser shall again have the right to terminate this Agreement and be reimbursed the Earnest Money or waive the objection. The time periods for objecting to and curing the additional exceptions and for terminating this Agreement shall be the same as those set forth in Sections 6A and 6B  above, commencing with the date Purchaser receives the updated Commitment, and, if necessary, the Closing Date shall be extended for such purposes.

7.      SELLER'S WARRANTIES AND REPRESENTATIONS.

A.      Statements. Seller represents and warrants to Purchaser as of the Effective Date and as of the Closing as follows:

(1)      Title.   Seller has the right to, and will, convey to Purchaser good and indefeasible fee simple title to the Property free and clear of any and all liens, assessments, unrecorded easements, security interests and other encumbrances except only to the Permitted Exceptions.

(2)      Leases.   There are not any parties in possession of any portion of the Property as lessees, tenants at sufferance or trespassers.

(3)      Negative Covenants.  Seller shall not further encumber any of the Property or allow an encumbrance upon the title to any of the Property, or execute or modify the terms or conditions of any leases, contracts or encumbrances, if any, currently affecting the Property without the written consent of Purchaser.

(4)      Liens and Debts.   Except for the liens securing any existing mortgages which will be paid in full at Closing, there are no mechanic's liens, Uniform Commercial Code liens or unrecorded liens against the Property, and Seller shall not allow any such liens to attach to the Property prior to Closing, which will not be satisfied out of the Closing proceeds. All obligations of Seller arising from the ownership and operation of the Property and any business operated on the Property, including, but not limited to, taxes, leasing commissions, salaries, contracts, and similar agreements, have been paid or will be paid prior to Closing. Except for obligations for which provisions are made in this Contract for prorating at Closing, there will be no obligations of Seller with respect to the Property outstanding as of Closing.

(5)      Litigation.   There is no pending or, to the knowledge of Seller, threatened litigation, condemnation, or assessment affecting Seller or any of the Property, pending or being prosecuted in any court or by or before any federal, state, county or municipal department, commission, board, bureau or agency or other governmental entity.   Seller shall promptly advise Purchaser of any litigation, condemnation or assessment affecting the any of Property which is threatened or instituted after the Effective Date.

(6)      Hazardous Materials.  Except as otherwise disclosed in writing by Seller to Purchaser prior to the Effective Date, to the knowledge of Seller, the Property (including the improvements located thereon) does not contain any Hazardous Materials (defined below).  For purposes of this Contract, the term "Hazardous Materials" means any pollutants, toxic substances, oils, hazardous wastes, hazardous materials or hazardous substances as defined in or pursuant to the Resource Conservation and Recovery Act, as amended, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, the Federal Clean Watch Act, as amended, or any other Federal, State or local environmental law, regulation, ordinance, rule, or bylaw, whether existing as of the Effective Date, or subsequently enacted.

(7)      Surface Use.  No party has any right to use the surface of the Land or otherwise, Seller shall provide a surface use waiver at Closing under which any party which has any surface use rights, including any mineral owner or lessee, waives any right to use the surface of the Land.

Contract of Sale –                                                                                          6

(8)     Operation of the Property. After the Effective Date until the Closing Date, Seller shall (a) operate the Property in the same manner as the Property has been operated, and (b) maintain the Property in the same condition and in the same manner as existed on the Effective Date, except for ordinary wear and tear and any casualty loss.

(9)     Seller's Authority. This Agreement has been duly authorized by requisite action and is enforceable against Seller in accordance with its terms; neither the execution and delivery of this Agreement nor the consummation of the sale provided for herein will constitute a violation or breach by Seller of any provision of any agreement or other instrument to which Seller is a party or to which Seller may be subject although not a party, or will result in or constitute a violation or breach of any judgment, order, writ, junction or decree issued against or binding upon Seller or the Property.

(10)     Seller Not Foreign Person. Seller is not a foreign person or entity as defined in Section 1445 of the Internal Revenue Code of 1986, as amended, and Purchaser is not obligated to withhold portions of the Purchase Price for the benefit of the Internal Revenue Service.

(11)     No Insolvency Proceedings. No attachment, execution, assignment for the benefit of creditors, receivership, conservatorship or voluntary or involuntary proceedings in bankruptcy or pursuant to any other debtor relief laws is contemplated or has been filed by or against Seller or the Property, nor is any such action pending by or against Seller or the Property.

(12)     No Competing Rights. No person, firm or entity, other than Purchaser, has any right to purchase, lease or otherwise acquire or possess the Property or any part thereof;

(13)     No Regulatory Violations. Seller has no knowledge that, and has not received any written or other notice that, the Property is in breach of any law, ordinance or regulation, or any order of any court or any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality wherever located, including, without limitation, those relating to environmental matters and hazardous waste, and no claim, action, suit or proceeding is pending, or, to the best of Seller's knowledge and belief and after due inquiry, threatened against or affecting Seller or affecting the Property, at law or in equity, or before or by any federal, state, municipal or other governmental department, commission, board, bureau, agency or entity wherever located, with respect to the Property or the Seller's present use and operation of the Property;

B.     Definitions of "Knowledge" and "Belief." When reference is made in this Agreement to Seller's "knowledge" or "belief", such terms shall include only the actual knowledge and belief of _____ Spiro Trajcevski _____ and _____ and shall be deemed to imply that Seller and the above identified person or persons has conducted such inquiry or investigation with respect to the subject matter of any representation or warranty which is so qualified as shall have been reasonably necessary to make such representation or warranty. Seller acknowledges that Purchaser has relied and will rely on the representations and warranties of Seller in executing this Agreement and in closing the purchase and sale of the Property pursuant to this Agreement, and Seller, during the term of this Agreement, agrees to notify Purchaser in writing promptly in the event of any change affecting any of such representations and warranties,

in which event Purchaser shall be entitled to exercise the remedies set forth in Section 13A hereof. Until and unless Seller's warranties and representations shall have been qualified and modified as appropriate by any such additional information provided by Seller to Purchaser, Purchaser shall continue to be entitled to rely on Seller's representatives and warranties set forth in this Agreement, notwithstanding any contrary information resulting from any inspection or investigation made by or on behalf of Purchaser.

      C.     Remedies. If Purchaser discovers prior to Closing that any of Seller's warranties or representations has been misrepresented or is inaccurate, Purchaser may notify Seller promptly in writing, and Seller shall correct or remedy the misrepresentation or inaccuracy at Seller's expense. If the misrepresentation or inaccuracy is not remedied prior to Closing, upon written notice to Seller, Purchaser may: (i) proceed to Closing without waiving any claim for breach of warranty or misrepresentation; or (ii) delay Closing until ten (10) days after the misrepresentation or inaccuracy is remedied or such other period necessary for Seller to cure such issue; or (iii) exercise Purchaser's remedies for default by Seller under this Contract including terminating this Contract and being refunded all Earnest Money and any other fees paid to Seller. If Purchaser discovers after Closing that any of Seller's warranties or representations has been misrepresented or is inaccurate, Purchaser may notify Seller promptly in writing, and Seller may attempt to correct or remedy the misrepresentation within thirty (30) days of such notice and to the extent Seller is unable to remedy such warranty or misrepresentation then Purchaser may pursue any remedy available at law or in equity except that Purchaser may not pursue any punitive, speculative, or consequential damages. The Parties agree that Seller will incur no liability or damages pursuant to this Section 7 for any claim or cause of action asserted more than ONE HUDNRED EIGHTY (180) DAYS after the date of the Closing.

      D.     **NO OTHER WARRANTIES AND DISCLAIMER. EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT AND SELLER'S WARRANTY OF TITLE SET FORTH IN THE DEED(S), PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS, AND PURCHASER IS NOT RELYING ON, ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (D) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, OR (E) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY. EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT AND SELLER'S WARRANTY OF TITLE SET FORTH IN THE DEED CONVEYING THE PROPERTY TO PURCHASER, PURCHASER UNCONDITIONALLY AND IRREVOCABLY WAIVES AND RELEASES ANY AND ALL ACTUAL OR POTENTIAL RIGHTS PURCHASER MIGHT HAVE (INCLUDING CONTRACTUAL AND/OR STATUTORY ACTIONS FOR CONTRIBUTION OR INDEMNITY)**

**REGARDING THE NATURE, CONDITION OR SUITABILITY OF THE PROPERTY OR ANY FORM OF WARRANTY WITH RESPECT TO THE PROPERTY, EXPRESS OR IMPLIED OR ARISING BY OPERATION OF LAW. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE HAS BEEN ADJUSTED BY PRIOR NEGOTIATION TO REFLECT THAT ALL OF THE PROPERTY IS SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING.**

8.      NONCONFORMANCE.  Purchaser has or will independently investigate and verify to Purchaser's satisfaction the extent of any limitations or permitted uses of the Property.  Purchaser acknowledges that the current use of the Property or any improvements located on the Property (or both) may not conform to applicable Federal, State or municipal laws, ordinances, codes or regulations.  Zoning, permitted uses, height limitations, setback requirements, minimum parking requirements, limitations on coverage of improvements to total area of land, requirements of the Americans with Disabilities Act, wetlands restrictions and other matters may have a significant economic impact upon the intended use of the Property by Purchaser.  However, if Seller is aware of nonconformance with any Federal, State or local laws, ordinances, codes or regulations, Seller shall disclose same to Purchaser.  Purchaser is not relying upon any warranties or representations of Seller or the Broker concerning the permitted uses of the Property or with respect to any nonconformance of the Property.

9.      INSPECTION.

A.      Inspection.  Purchaser shall have a period of **Ninety (90)days** after the Effective Date (the "Inspection Period"), subject to the conditions listed in Section 9(B) below, to inspect the Property and to conduct feasibility studies regarding Purchaser's intended use of the Property.  Purchaser's studies may include without limitation:  (i) core borings; (ii) environmental and architectural tests and investigations; (iii) physical inspections of all improvements, fixtures, equipment, subsurface soils, structural members, and personal property; and (iv) examination of plans specifications, manuals, and other documents relating to the construction and condition of the Property.  Purchaser and Purchaser's agents employees, consultants and contractors shall have the right of reasonable entry onto the Property during normal business hours, and upon reasonable advance notice to Seller and/or Seller's tenants, for purposes of the inspections, studies, tests and examinations deemed necessary by Purchaser.  **Purchaser and or its agents, employees, consultants and or contractors shall have and maintain adequate liability insurance in force and effect  covering the activies of such persons on the Property.**   All inspections, studies, tests and examinations performed hereunder shall be at Purchaser's expense. If Purchaser terminates this Contract, Purchaser shall reasonably restore the Property to substantially its same state or condition prior to such inspection, and shall  deliver copies of third party studies it obtains on the Property to the Seller, all of which shall be delivered without representation or warranty by Purchaser. Purchaser shall not, however, be required to deliver to Seller copies of any reports or other "work product" prepared or developed by Purchaser or any of its employees or affiliates.

B.      Report. Prior to the expiration of ten (10) days following the Effective Date ("Seller Delivery Date"),  Seller shall deliver or cause to be delivered to Purchaser, copies of any and all other documents, instruments and information known to Seller or in Seller's actual possession or control and/or received pursuant to or in connection with the Property including relating to the condition, status, and approvals of the Land including, without limitation, all platting and zoning

Contract of Sale –                                                                                                                        9

applications and proposed zoning documents, contracts, development agreements, permits, annexation, approvals, compliance, declarations, restrictions, preliminary plans, site plans, conceptual plans, preliminary plats, final plats, topographical maps, soil tests, inspection reports, environmental reports, flood plain information and building restrictions and any and all documents creating, evidencing, governing or created by or for any property or homeowners' association affecting, governing or relating to the Land or the Lots. Seller shall use its best efforts to cause any soils tests and environmental reports, if any, to be reissued and/or updated at Purchaser's cost (subject to Purchaser's approval prior to such cost being incurred), and to have reliance letters issued on any existing soils tests and environmental reports, to Purchaser relating thereto, at no cost to Purchaser.

C.    Termination. If Purchaser determines, in Purchaser's sole discretion, no matter how arbitrary, that the Property is not in satisfactory condition or is not suitable for Purchaser's intended use or purpose, or if Purchaser for any reason does not desire to proceed with the acquisition of the Property, then Purchaser may terminate this Contract by delivering a written notice to Seller on or before the last day of the Inspection Period, in which event, the Earnest Money, other than the Independent Consideration, shall be promptly returned by the Title Company to Purchaser and neither party shall have any further rights or obligations under this Contract (except for those which may expressly survive the termination of this Contract).

D.    Restoration. If the transaction described in this Contract does not close through no fault of Seller, and the condition of the Property was altered due to tests and inspections performed by Purchaser or on Purchaser's behalf, Purchaser must restore the Property to its original condition. Purchaser shall not permit any liens or encumbrances to arise against the Property in connection with or as a result of such inspections, studies, or investigations. **PURCHASER SHALL INDEMNIFY, DEFEND AND HOLD SELLER HARMLESS OF AND FROM ANY AND ALL LOSSES, LIABILITIES, COSTS, EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND COSTS OF COURT), DAMAGES, LIENS, CLAIMS (INCLUDING, WITHOUT LIMITATION, MECHANICS' OR MATERIALMEN'S LIENS OR CLAIMS OF LIENS), ACTIONS AND CAUSES OF ACTION (COLLECTIVELY, "CLAIMS") ARISING FROM OR RELATING TO PURCHASER'S (OR PURCHASER'S AGENTS, EMPLOYEES, CONTRACTORS, SUBCONTRACTORS, OR REPRESENTATIVES) ENTERING UPON THE PROPERTY TO TEST, STUDY, INVESTIGATE, OR INSPECT THE PROPERTY, WHETHER PURSUANT TO THIS SECTION 9, OR OTHERWISE, UNLESS DUE TO THE NEGLIGENCE OR WILLFUL MISCONDUCT OF SELLER.** Purchaser will not be required to indemnify, defend or hold Seller harmless of or from any condition affecting any of the Property prior to Purchaser's entry thereon. This Section 9(E) shall survive termination of this Contract or a Closing of the transaction contemplated hereunder.

E.    Extension of Inspection Period. Purchaser may extend the Inspection Period for an additional thirty (30) days upon the delivery to the Title Company of an Additional Earnest Money deposit of **TEN-THOUSAND AND 00/100 DOLLARS ($10,000.00)** (this and any other "Additional Earnest Money" together with the initial "Earnest Money" referred to collectively as "Earnest Money") prior to the expiration of the Inspection Period which shall be be treated as any other Earnest Money; BUT SHALL NOT be applicable to the Purchase Price at the Closing.

10.    CASUALTY LOSS; CONDEMNATION. All risk of loss to the Property shall remain upon Seller prior to the Closing. If, prior to the Closing, any portion of the Property is damaged or destroyed by fire or other casualty, or subject to a condemnation or taking or the threat of a condemnation or taking, Seller shall have a duty to notify Purchaser, and Purchaser may either terminate this Contract by delivering a written termination notice to Seller or elect to close. If the transaction is to proceed to Closing, there shall be no reduction in the Purchase Price, but Seller shall assign to Purchaser all of Seller's right and interest in any insurance proceeds and/or condemnation awards, as applicable, plus an amount equal to any insurance deductible.

11.    ASSIGNMENT. Purchaser may assign this Contract without the prior written consent of Seller. This Contract shall be binding upon and inure to the benefit of the respective legal representatives, successors, assigns, heirs, and devises of the parties; however, Seller may not assign this Contract without Purchaser's consent.

12.    CLOSING.

A.    Closing Date. The closing of the transaction described in this Contract (the "Closing") shall be held on the date which is **sixty (60) days following the last day of the Inspection Period** (the "Closing Date"), at the offices of the Title Company. Purchaser may extend the Closing Date for two (2) thirty (30) day periods upon the delivery to the Title Company of a non-refundable extension fee equal to **Twenty Thousand and 00/100 Dollars ($20,000.00)** for each extension prior to the applicable Closing Date. The extension fee shall be **non-refundable** to Purchaser unless:

    (a)    Seller fails or refuses to comply in a timely manner with its obligations hereunder, or

    (b)    at the Closing, any of Seller's representations, warranties or covenants contained herein is not true or has been breached or modified, or

    (c)    or in the event that, at the Closing, any condition precedent to Purchaser's obligations hereunder is not fully satisfied as herein required, or

    (d)    this Contract is terminated pursuant to Sections 6 (Review of Title Documents), 10 (Casualty Loss; Condemnation) or 13(A) (Purchaser's Remedies) hereof,

in which case such shall be disposed in accordance with the provisions of this Agreement relating to Earnest Money. The extension fee shall **NOT** be applicable to Purchase Price at Closing.

B.    Seller's Closing Documents. At the Closing, Seller shall deliver to Purchaser at Seller's expense:

    (1)    A duly executed Special Warranty Deed (the "Deed"), in a form reasonably acceptable to Seller and Purchaser, conveying the Property in fee simple according to the legal description as prepared by the surveyor as shown on the Survey, subject only to the Permitted Exceptions;

    (2)    The Title Policy issued by the underwriter for the Title Company pursuant to the Title Commitment, subject only to the Permitted Exceptions, in the full amount of

the Purchase Price, dated as of the date of Closing, and with the survey exception deleted except as to "shortages in area;"

    (3)    Bill of Sale conveying the personal property, if any, including all Intangible Property and other items described in section 2 which are not considered part of the Land;

    (4)    Possession of the Property;

    (5)    Evidence of Seller's authority and capacity to close this transaction;

    (6)    Assignment of all Intangible Property; if any, relating to the Property;

    (7)    Any required surface use waiver; as may be requested or required by Purchase or its lender,

    (8)    All other documents reasonably required in this Contract or by the Title Company from Seller to close this transaction.

    C.    Purchaser's Closing Documents. At the Closing, Purchaser shall deliver to Seller at Purchaser's expense:

    (1)    The Cash Payment;

    (2)    [reserved];

    (3)    Evidence of Purchaser's authority and capacity to close this transaction; and

    (4)    All other documents reasonably required by the Title Company from Purchaser to close this transaction.

    D.    Closing Costs. The base title policy premiums shall be paid by Seller and any endorsements or extended coverage shall be paid by Purchaser. Any survey costs shall be allocated to the party listed at Section 5(A). The Seller shall pay the costs of recording any releases, and the Purchaser shall pay the cost of recording the deed and any lender costs on its side of the transaction. The escrow fees shall be equally split between the parties. All other costs shall be allocated among the Parties as is customary for a transaction of this character in the county where the Property is located, or as otherwise agreed.

    E.    Real Estate Commissions. Seller shall be responsible for paying **Vanguard Real Estate Advisors** commission(s) as agreed under a separate agreement. Otherwise, each party to this Contract represents and warrants to the other party that such party has had no dealings with any person, firm, agent or finder in connection with the negotiation of this Contract and/or the consummation of the purchase and sale contemplated herein and no real estate broker, agent, attorney, person, firm or entity is entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such party. Each party hereby agrees to indemnify, defend, protect, and hold the other party harmless from and against any costs, expenses

or liability for compensation, commission, fee, or charges which may be claimed by any agent, finder, or other similar party by reason of any dealings or acts of the indemnifying party.

F.      Prorations. Prior to Closing, Seller shall pay prior to delinquency all taxes and expenses applicable to the Property. Ad valorem taxes applicable to the Property shall be prorated at the Closing effective as of the Closing date. If the Closing occurs before the tax rate is fixed for the current tax year, the apportionment of the taxes shall be upon the basis of the tax rate for the preceding year applied to the latest assessed valuation, but any difference between estimated taxes for the current tax year and the actual taxes paid by Purchaser shall be adjusted equitably between the parties upon proof of payment of the taxes by Purchaser. This provision shall survive the Closing.

G.      Rollback Taxes. Seller shall pay Purchaser any rollback taxes (i) within the three (3) year period immediately following the calendar year in which the Closing occurs; and (ii) attributable to the period that Seller owned the applicable portion of the Property. For purposes of calculating the Additional Tax, Seller shall be deemed to have owned the applicable portion of the Property for the five year period immediately preceding the Closing Date. Appropriate prorations shall be made in the calculation of any rollback taxes payable by Seller hereunder based upon the date on which the rollback taxes are actually triggered with respect to the Property. Alternatively, Purchaser may reduce the payment on the Note by the amount of Rollback Taxes assessed against the Property and owed by Seller following Closing. This provision shall survive Closing.

H.      Foreign Person Notification. If Seller is a Foreign Person, as deemed by the U.S. Internal Revenue Code, or if Seller fails to deliver to Purchaser a non-foreign affidavit pursuant to Section 1445 of the Internal Revenue Code, then Purchaser may withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the withheld proceeds to the Internal Revenue Service together with appropriate tax forms. The required affidavit(s) from Seller(s) shall include (1) a statement that Seller is not a foreign person, (2) the U. S. taxpayer identification number(s) of Seller(s), and (3) other information required by Section 1445 of the Internal Revenue Code.

13.    DEFAULT.

A.      Purchaser's Remedies. If Seller fails to perform its obligations under this Contract for any reason (except resulting from Purchaser's default or the termination of this Contract by Seller pursuant to a right to terminate as set forth in this Contract) which continues for more than five (5) business days following delivery of written notice of such default from Purchaser to Seller, Seller shall be in default and Purchaser may elect one of the following, as Purchaser's sole remedies: (1) enforce specific performance of this Contract; provided, however, that if Seller shall have **intentionally or wrongfully** taken or omitted to take any action which shall preclude or impair the ability of Purchaser to maintain any such action for specific performance, then Purchaser shall be entitled to seek damages for Seller's default; or (2) terminate this Contract and receive a refund of the Earnest Money along with any extension fees paid, other than the Independent Consideration, immediately. In the event of any breach of the representations or warranties in this Contract discovered after Closing or if Purchaser elects to enforce specific

performance and such remedy is not available as a result of Seller's actions, such as conveying the Property to a third party, then Purchaser shall be entitled to seek damages.

B.  Seller's Remedies. If Purchaser fails to perform its obligations under this Contract for any reason (except resulting from Seller's default or the termination of this Contract by Purchaser pursuant to a right to terminate as set forth in this Contract) which continues for more than five (5) business days following delivery of written notice of such default from Seller to Purchaser, Purchaser shall be in default and Seller may, as Seller's sole remedy, terminate this Contract, in which event, the Earnest Money along with any extension fees paid by Purchaser shall be delivered to Seller as liquidated damages for the Purchaser's breach of this Contract, thereby releasing Purchaser from this Contract.

14.  Conditions Precedent. Purchaser's obligation to consummate the transaction contemplated herein is conditioned upon satisfaction of each of the following conditions at or prior to the Closing, any one or more of which conditions precedent may be waived by Purchaser in Purchaser's sole discretion:

(a) Representations and Warranties. None of the representations and warranties of Seller set forth in Article V hereof shall be untrue or inaccurate in any respect; and

(b) Seller's Obligations. Seller shall have performed or complied with Seller's covenants, agreements and obligations hereunder in all respects; and

(c) No Bankruptcy Proceeding. There shall not have been instituted by or against Seller or the Property any bankruptcy proceeding.

15.  MISCELLANEOUS PROVISIONS.

A.  Effective Date. The term "Effective Date" means the date the Contract is marked receipted by the Title Company (if any).

B.  Notices. All notices and other communications required or permitted under this Contract must be in writing and shall be deemed delivered on the earlier of: (i) actual receipt, if delivered in person or by messenger with evidence of delivery; or (ii) receipt of an electronic facsimile transmission ("Fax") with a transmission confirmation receipt; or email transmission, or (iii) three (3) business days after deposit in the United States Mail as required below. Notices may be transmitted by Fax to the Fax telephone numbers specified below, if any. Notices delivered by mail must be deposited with the U.S. Postal Service and sent by certified mail return receipt requested with postage prepaid, and properly addressed to the intended recipient at the address set forth below. Any party may change its address for notice purposes by delivering written notice of its new address to all other parties in the manner set forth above. For the purposes of notice, the addresses of the parties shall be as follows:

Purchaser:  Titan Invesments, LLC
            13901 Midway Road. Ste 102.

Dallas, Texas 75244
TBarton@jmjdevelopment.com

With a Copy to:    The Marx Firm, LLC
Attn: Randy Marx
2999 Turtle Creek Blvd.
Dallas, Texas 75219
Randy@themarxfirm.com
214.360.9343
214.405.5120 cell

Seller:    First Development Company of Ohio, LLC
111 Lilyfield Dr.
Allen, Tx 75002
Phone: 586-709-6182
Email: spiro1000@gmail.com

With a Copy to:

Title Company:

**Title Partners, LLC**
**Attn: Mr. Judd Whiteman**
**judd.whiteman@titlepartnersllc.com**
**8350 N. Central Expressway, North Mezzainine Suite #M1090**
**Dallas, Texas 75206**
**Mobile: 214.649.4845**
**Fax: 214.987.6771**

C.    Forms and Construction.    This Contract is the result of negotiations between the parties, neither of whom has acted under any duress or compulsion, whether legal, economic or otherwise. Accordingly, the terms and provisions hereof shall be construed in accordance with their usual and customary meanings. Seller and Purchaser hereby waive the application of any rule of law which otherwise would be applicable in connection with the construction of this Contract that ambiguous or conflicting terms or provisions should be construed against the party who (or whose attorney) prepared the executed Contract or any earlier draft of the same.

D.    Attorneys Fees. The prevailing party in any legal proceeding brought in relation to this Contract or transaction shall be entitled to recover from the non-prevailing parties court costs, reasonable attorneys' fees and all other reasonable litigation expenses.

E.    Integration. This Contract contains the complete agreement between the parties with respect to the Property and cannot be varied except by written agreement of the parties hereto. The parties agree that there are no oral or signed agreements, understandings, representations or warranties made by the parties which are not expressly set forth herein.

F.    Survival.    Any warranty, representation, covenant, condition or obligation contained in this Contract not otherwise consummated at the Closing along with any rights and obligations under any promissory note and deed of trust agreed to as part of any Seller financing will survive the Closing of this transaction and nothing herein shall act as an election, release, or waiver of any legal or equitable remedies related thereto.

G.    Binding Effect.    This Contract shall inure to the benefit of and be binding upon the parties to this Contract and their respective heirs, legal representatives, successors and assigns.

H.    Time for Performance.    Time is of the essence under each provision of this Contract. If any date of performance hereunder falls upon a Saturday, Sunday or recognized holiday, such date will be deemed moved forward to the next day which is not a Saturday, Sunday or recognized holiday.

I.    Right of Entry.    Subject to the requirements of Section 9, upon reasonable advance notice and during normal business hours, Purchaser, Purchaser's representatives and the Broker have the right to enter upon the Property prior to Closing for purposes of viewing, inspecting and conducting studies of the Property, so long as they do not unreasonably interfere with the use of the Property by Seller or any tenants, or cause undue damage to the Property.

J.    Business Day.    The term "business day" shall mean days elapsed exclusive of Saturday, Sunday or recognized holidays.

K.    Governing Law.    This Contract shall be construed under and governed by the laws of the State of Texas, and unless otherwise provided herein, all obligations of the parties created under this Contract are to be performed in the county where the Property is located.

L.    Severability.    If any provision of this Contract is held to be invalid, illegal, or unenforceable by a court of competent jurisdiction, the invalid, illegal or unenforceable provision shall not affect any other provisions, and this Contract shall be construed as if the invalid, illegal, or unenforceable provision is severed and deleted from this Contract.

M.    Counterparts.    This Contract may be executed in a number of identical counterparts. Each counterpart is deemed an original and all counterparts shall, collectively, constitute one agreement.

N.    Gender; Number.    Unless the context requires otherwise, all pronouns used in this Contract shall be construed to include the other genders, whether used in the masculine, feminine or neuter gender. Words in the singular number shall be construed to include the plural, and words in the plural shall be construed to include the singular.

O.    Cessation of Marketing Activities. From and after the Effective Date, Seller (i) shall suspend all activities to market the Property for sale; (ii) shall refer all persons making inquiry about the sale of the Property to Purchaser; and (iii) shall not enter into any contract to sell the Property to anyone other than Purchaser, including without limitation any contract denominated as a so-called "back-up contract".

16.    CONTRACT AS OFFER.    The execution of this Contract by the first party to do so constitutes an offer to purchase or sell the Property on the conditions contained in this Contract. Unless within ten (10) business days from the date of execution of this Contract by the first party, this Contract is accepted by the other party by signing the offer and delivering a fully executed copy to the first party, the offer of this Contract may be rescinded and the Earnest Money, if any, shall be promptly returned to Purchaser.

*[Signature Page to Follow]*

EXECUTED on the dates stated below, to be effective on the Effective Date.

**SELLER:**

**First Development Company of Ohio, LLC**
A Texas limited liability company

By: _____

Name: Spiro Trajcevski
Title:   President
Date:   February 10, 2022

**PURCHASER:**

**Titan Investments, LLC**
A Texas limited liability company

By: _____

Name:  Tim Barton
Title:   President
Date:   Feb 10, 2022

## Title Company Receipt and Acknowledgement

The Title Company acknowledges receipt of a fully executed copoy of this Contract on February 10, 20 22 (the "Effective Date") and agrees to accept the Earnest Money, when deposited, subject to the terms and conditions set forth in this Contract and shall notify the parties once the Earnest Money is received.

TITLE COMPANY:

By: _____

Name: Jessica Puckett

Title: Commercial Escrow Officer

Contract of Sale –                                                                        19

**Exhibit "A"**
**Property Legal Description**

**As per the attached.**



M:\JMJ 20220119 TitanFirstDevelopOhio16 3 acres\Purchase Agreement\20220208 b\PSA Titan Inv - First Development Co. of Ohio (16.3 ac Denison) v6.docx