# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § | Hearing Requested |
| CARNEGIE DEVELOPMENT, LLC | § | |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § § | |
| *Relief Defendants.* | § | |

## DEFENDANT BARTON'S OPPOSITION TO THE RECEIVER'S
## SECOND QUARTERLY FEE APPLICATION [ECF NO. 237]

Michael J. Edney
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037

Ted A. Huffman
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202

**COUNSEL FOR TIMOTHY LYNCH BARTON**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ..................................................................................................................... ii

**TABLE OF AUTHORITIES** ............................................................................................................. iii

**I.    ARGUMENT & AUTHORITIES** ................................................................................. 1

   **A.    The Entities Over Which the Receiver Was Improperly Appointed Should Not Be Forced to Pay the Receiver's and His Agents' Fees** .............................................................. 2

   **B.    The Receiver Has Not Satisfied the Lodestar Requirements to Justify the Fee Payment He Seeks.** ................................................................................................................ 4

**II.   CONCLUSION & PRAYER** .......................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

*Acadia Land Co. v. Horuff*,
110 F.2d 354 (5th Cir. 1940) .............................................................. 4

*Barrow v. Greenville Indep. Sch. Dist.*,
No. 3:00-CV-0913-D, 2005 WL 6789456 (N.D. Tex. Dec. 20, 2005) .................. 7

*Beach v. Macon Grocery Co.*,
125 F. 513 (5th Cir. 1903) ....................................................................... 3

*Becker v. Tools & Metals, Inc.*,
No. 3:05-CV-0627-L-BK, 2012 WL 12985112 (N.D. Tex. Dec. 12, 2012)........... 8

*Bowersock Mills & Power Co. v. Joyce*,
101 F.2d 1000 (8th Cir. 1939) ................................................................. 2

*Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*,
No. 3:09-CV-1596-D, 2010 WL 3294248 (N.D. Tex. Aug. 20, 2010) ................. 8

*Corman v. Lifecare Acquisitions Corp.*,
No. CIV.A. 3:96-CV-0755D, 1998 WL 185517 (N.D. Tex. Apr. 10, 1998) .......... 10

*Gray v. Fort Worth Indep. Sch. Dist.*,
No. 4:09-CV-225-Y, 2011 WL 13233588 (N.D. Tex. July 27, 2011)................ 5

*Gurule v. Land Guardian, Inc.*,
912 F.3d 252 (5th Cir. 2018) ............................................................. 10

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
No. 4:14-CV-00371, 2018 WL 1602460 (E.D. Tex. Apr. 3, 2018) ...................... 10

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ........................................................................ 2

*Leroy v. City of Houston*,
906 F.2d 1068 (5th Cir. 1990)............................................................. 8

*Migis v. Pearle Vision, Inc.*,
135 F.3d 1041 (5th Cir. 1998) ............................................................. 5

*Netsphere, Inc. v. Baron*,

703 F.3d 296 (5th Cir. 2012) .......................................................................... 2

*Paris v. Dallas Airmotive, Inc.*,
No. CIV.A. 3:97-CV-0208, 2004 WL 2100227 (N.D. Tex. Sept. 21, 2004) .......... 7

*Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, P.C.*,
No. CIV. 4:09-MC-365, 2010 WL 56045 (S.D. Tex. Jan. 6, 2010) ................... 5

*Porter v. Cooke*,
127 F.2d 853 (5th Cir. 1942) .................................................................. 2

*Produce Pay, Inc. v. Amore Produce, LLC*,
No. 7:20-CV-00293, 2021 WL 5155715 (S.D. Tex. July 21, 2021)......... 5, 10

*SCA Promotions, Inc. v. Yahoo! Inc.*,
No. 3:14-CV-957-O, 2016 WL 8223206 (N.D. Tex. Nov. 21, 2016) .................. 7

*SEC v. Goren*,
272 F. Supp. 2d 202 (E.D.N.Y. 2003) ............................................................ 11

*Walker v. U.S. Dep't of Hous. & Urb. Dev.*,
99 F.3d 761 (5th Cir. 1996) .............................................................. 8

*W.F. Potts Son & Co. v. Cochrane*,
59 F.2d 375 (5th Cir. 1932) .................................................................. 3

Defendant Timothy L. Barton files this Opposition to the Receiver's Second Quarterly Fee Application [ECF No. 237], and requests a hearing on this matter, as follows.

## I.    ARGUMENT & AUTHORITIES

The Receiver's second fee application seeks the payment of claimed attorney's fees and other professional expenses in the amount of $444,394.22 to be paid by the entities that he was ordered to preserve.  Mr. Barton objects to the estate's payment of these amounts on multiple grounds.

As a preliminary matter, the receivership—and many of the Receiver's actions—are currently on appeal to the Fifth Circuit, with oral argument in the first appeal occurring last month.  *See SEC v. Barton,* Case No. 22-11132 (5th Cir. 2022).  During the time of his appointment, the Receiver has not meaningfully advanced the interests of the estate and the operations of the business under his control.  To the extent the Receiver will be entitled to any fee payment for such actions, it is not the defendant's resources that should be used to pay them. Rather, because it is the SEC that improperly sought the Receiver's appointment, the SEC should fund this remedy.  At this time, however, the Receiver should not be withdrawing money from the estate to pay himself and his law firm, while the merits of his appointment remain pending resolution in short order by the Fifth Circuit.  The most prudent course of action under these circumstances would be to abstain on any ruling on the Receiver's application until that decision is rendered.

But even if the Receiver were entitled to some fee at this time, his fee application fails to adequately document the legal work that his team performed.  The fee statements attached to his application are heavily redacted, making it impossible to review much of the work for which he seeks payment.  Many entries are also impermissibly vague.  Other work was clearly unnecessary, unreasonable, or administrative in nature, and therefore not compensable as a

reasonable attorney's fee.  Nor has the Receiver substantiated that the amount of fees is justified in light of the results obtained to date. The Receiver's fee application should therefore be denied, or reduced in substantial part, as set forth further below.

**A.     The Entities Over Which the Receiver Was Improperly Appointed Should Not Be Forced to Pay the Receiver's and His Agents' Fees**

Defendant Barton objects to the Receiver's second fee application, which again seeks payment out of the receivership estate, because the Receiver's appointment over the entities in the estate never should have occurred in the first place.  *See Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012); *Janvey v. Adams*, 588 F.3d 831 (5th Cir. 2009).  Not only was it unnecessary to appoint a receivership over the companies in question to preserve the alleged Wall-entity lender funds targeted by the SEC, but there also were other less drastic and burdensome means available to preserve those assets.  Fifth Circuit law provides that a receivership should not have been ordered under the circumstances.  *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) ("Receivership is . . .  justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties.").

Importantly, the general rule, applicable here, provides that "where the appointment of the receiver was irregular or inequitable or the court which appointed him was without authority so to do, the party who procured the appointment, and not the receivership fund, is liable for the expenses of the receivership." *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1002 (8th Cir. 1939); *see also Porter v. Cooke*, 127 F.2d 853, 859 (5th Cir. 1942) ("[T]he parties whose property has been wrongfully seized are entitled, on equitable principles, to recover costs from those who have wrongfully provoked the receivership.").  When an erroneously appointed receiver seeks payment for his work, the district court's "overruling purpose [is] to protect from

loss an owner of the seized fund who has not so acquiesced in its administration." *W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932); *see also Beach v. Macon Grocery Co.*, 125 F. 513, 517 (5th Cir. 1903) ("The petitioners who instituted the proceedings and secured the appointment of a receiver are properly and equitably chargeable with the costs and expenses incurred by their wrongful application. In the event of their insolvency, any expenses incurred by the receiver should fall on him, and not on the defendants."). The import of this case law is that the SEC should be the one that funds the Receiver's work on their behalf, rather than having Mr. Barton or any of the entities in receivership pay those amounts.

The Receiver's new application seeking another $444,394.22 of fees out of the estate also runs contrary to his prior professions as to the estate's needs for cash to pay other bills. *See, e.g.*, Hearing Transcript on Receiver's Motion for Appointment of Appraisers, etc. [ECF No. 121] at 6:19–22 ("As the Court is aware, from numerous filings, we have very limited cash and at the same time, we have competing requirements for the cash on hand."); *id.* at 10:20–22 ("[T]he receivership cannot maintain the other properties that we have an obligation to manage without [additional] cash."); *id.* at 44:16 (expressing an "immediate need for cash"); ECF No. 93 at 6 ("[T]he Receiver has faced a dearth of cash . . . forc[ing] him to selectively pay" bills and "necessitate[ing] the Receiver's exploration of all potential sources of capital"). It is difficult to square the Receiver's claims for the payment of the hundreds of thousands of dollars in additional attorney's fees, as another "competing requirement[] for the cash on hand," with the best interests of the receivership estate. ECF No. 121 at 6:19–22. His fee application should thus be denied at this time.

The Receiver's second fee application should be denied for the additional reason that some of the funds from which the Receiver seeks to be paid do not belong to the estate. This

primarily includes funds generated through a single sale transaction with DLP Real Estate Capital in December 2022. However, the receivership entities that the Receiver purportedly represented in the DLP sale were not entities properly made a part of the receivership in the first place. ECF No. 114 at 3. That means the $750,000 in equity generated by the Receiver from the sale for those entities is not valid receivership property and should not be used to pay the expenses of a Receiver whose authority over those entities is being contested. Further, the $750,000 sale consummated with DLP is void because it was consummated in violation of statutory procedural requirements governing receivership sales, meaning the sale must be unwound and the cash returned. *See Acadia Land Co. v. Horuff*, 110 F.2d 354, 354–355 (5th Cir. 1940); *see also SEC v. Barton,* Case No. 22-11242 (5th Cir. 2022) (appellate proceedings to unwind the DLP sale transaction).

Because the Receiver's right to receive payment for its fees out of the estate is contingent on the outcome of the pending appeals before the Fifth Circuit, the Court should wait to resolve the fee application after the Fifth Circuit has a chance to weigh in. For this Court to otherwise preemptively grant the Receiver's fee application prior to the resolution of those appellate proceedings will risk creating new complications and payment transactions needing to be unwound. To the extent payment to the Receiver is to be approved immediately by the Court, despite the pending appeals, the SEC should be the party to look to.

**B.    The Receiver Has Not Satisfied the Lodestar Requirements to Justify the Fee Payment He Seeks.**

Even if the Court were inclined to order the payment of certain fees to the Receiver, the Receiver has not justified payment for the amounts requested. The Receiver relies on the lodestar method to support his fee application. *See* ECF 237 at 7–8. Under the lodestar method, the district court calculates a "lodestar" amount by "multiplying the reasonable number of hours

expended on the case by the reasonable hourly rates for the participating lawyers," and makes various adjustments as appropriate to reach a reasonable fee determination. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). At least four considerations require reduction of the $444,394.22 fee amount that the Receiver seeks under that methodology.

*First*, the Receiver should not be permitted to recover for work that is inadequately documented in the fee statements attached to his application. One of the problems with the documentation is that the fee statements are redacted so heavily that it interferes with the evaluation of what legal work the Receiver seeks to be compensated for and whether there is a reasonable basis for the total fee sought by the Receiver for that work. *See Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-CV-00293, 2021 WL 5155715, at *4 (S.D. Tex. July 21, 2021) ("The applicant should maintain billing records in a manner that will enable a reviewing court to identify distinct claims and determine the reasonable number of hours expended on a matter. Redaction of time records defeats these goals . . . ."); *Gray v. Fort Worth Indep. Sch. Dist.*, No. 4:09-CV-225-Y, 2011 WL 13233588, at *3 (N.D. Tex. July 27, 2011) (holding that attorney's fees were insufficiently documented when time statements included entries such as "Work on memo regarding [redacted text] issue" and "Telephone conference with Kevin Greene [FWISD's assistant athletic director] regarding [redacted text]"). As other courts have held, the improper redaction of fee entries, even in part, may justify denying such fees in their entirety. *See Produce Pay*, 2021 WL 5155715, at *4 (noting that improper redactions "in some cases, has led courts to disallow fees completely"); *see also Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, P.C.*, No. CIV. 4:09-MC-365, 2010 WL 56045, at *8 (S.D. Tex. Jan. 6, 2010) ("As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining

-5-

all billing statements pertaining to the legal services provided as a whole. . . . Plaintiff may not redact, even partially, any entry for which reimbursement is being sought.").

Here, the redactions of the time entries in the fee statements, like those in the cases cited above, obscure the nature and scope of work performed. Illustrative excerpts from the submitted time records are set forth below:



The Receiver has not substantiated a basis to be paid for this undisclosed work.

Separately, the Receiver's time records are mostly "block billed" without itemization of time spent on particular tasks. *Paris v. Dallas Airmotive, Inc.*, No. CIV.A. 3:97-CV-0208, 2004 WL 2100227, at *9 (N.D. Tex. Sept. 21, 2004). Block billing prevents any meaningful determination regarding the number of hours spent on any particular task, and is disfavored "because it impairs the required reasonableness evaluation." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007); *see SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-CV-957-O, 2016 WL 8223206, at *10 (N.D. Tex. Nov. 21, 2016). But, from the limited instances where itemized time entries are submitted, the records reflect examples where counsel spent excessive time on work that the tasks did not require. This includes instances of one attorney[1] recording:

- 12 minutes (or $40 in attorney time) to draft a transmittal email with a single attachment, *see* App. 047;

- 1.8 hours (or $360 in attorney's fees) to draft a one-page letter reiterating prior correspondence from other attorneys in the case, *see* App. 047 (Feb. 7, 2023), App. 048 (Feb. 9, 2023), App. 050 (Feb. 13, 2023), and another 4.1 hours (or $820 in attorney's fees) preparing a similar 1.5 page letter, *see* App. 070 (Mar. 24, 2023), App. 071 (Mar. 27, 2023), App. 072 (Mar. 28 & Mar. 29, 2023);

- 30 minutes (or $100 in attorney's fees) to review the Receiver's own status report *two days after it had been filed* with the Court, *see* App. 045 (Feb. 1, 2023);

- Multiple hours and many hundreds of dollars of billable attorney time each month to "review mail", *see* App. 042 (.6 hours, $120 attorney time), App. 044 (.9 hours, $180 attorney time), App. 046 (1.1* & .9 hours, $400 attorney time), App. 048 (.6 hours, $120 attorney time), App. 055 (.4 hours, $80 attorney time), App. 057 (.3

---

[1] Some of the time records repeatedly suggest that this attorney's work should be reduced to $100, apparently "for certain tasks that either took longer than anticipated or that did not justify billing at [that attorney's] full hourly rate" (ECF No. 237 at 5), but the time sheets nonetheless show that the attorney's time in certain such instances was still billed at the higher rate without the claimed reduction being implemented. *See, e.g.,* App. 045 (Feb. 2, 2023), App. 046 (Feb. 3, 2023).

hours, $60 attorney time), App. 059 (.6 hours, $120 attorney time), App. 068 (.7 hours, $140 attorney time), App. 073 (.6 hours, $120 attorney time).

The amount of time spent by the Receiver's law firm on these tasks (and the amounts that the Receiver seeks to charge for them) are too high for the nature of work performed. And, as addressed above, these concerns become more problematic in light of the block-billing practice emanating throughout the law firm's remaining fee records, which prevent any meaningful analysis as to whether time spent on the tasks buried in those block-billed entries were appropriately spent. It is for that reason, when presented with block-billed fee documentation, "[m]any courts . . . perform[] a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 3:09-CV-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (Fitzwater, J.). Mr. Barton submits that such a fee reduction should occur here.

*Second,* the Court should reduce the Receiver's claimed fees that were "not reasonably expended" on meritorious tasks. *See Becker v. Tools & Metals, Inc.*, No. 3:05-CV-0627-L-BK, 2012 WL 12985112, at *11 (N.D. Tex. Dec. 12, 2012) (Fitzwater, J.); *see also Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) ("The last three items do not demonstrate billing judgment, as plaintiffs do not have the right to bill for . . . time on issues on which they do not prevail . . . ."); *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) ("Hours which, though actually expended, nevertheless 'are excessive, redundant, or otherwise unnecessary,' or which result from the case being 'overstaffed,' are *not* hours 'reasonably expended' and are to be excluded from this calculation."). Some of the most prominent examples of the Receiver's improper fee expenditures were spent toward substantial briefing at the Fifth Circuit Court of Appeals, in which the Receiver is not a party. Although the Receiver is not the Appellee in those proceedings, the Receiver repeatedly has sought to intervene (and

sometimes even file motions to dismiss)[2] despite being summarily rejected by the Fifth Circuit each time.    The Receiver first sought to intervene in Mr. Barton's appeal of the Court's Receivership Order, Motion to Intervene, *SEC v. Barton*, No. 22-11132, Dkt No. 33 (5th Cir. Jan. 5, 2023), but the Fifth Circuit denied his motion the very next day. *See* Order Denying Motion to Intervene, *SEC v. Barton*, No. 22-11332, Dkt No. 40 (5th Cir. Jan. 6, 2023). Undeterred, the Receiver sought to intervene weeks later on similar grounds in Mr. Barton's appeal of this Court's order approving the sale of his home, Motion to Intervene, *SEC v. Barton*, No. 22-11226, Dkt No. 29   (5th Cir. Jan. 20, 2023), but was again denied. Order Partially Granting Motion to Intervene, *SEC v. Barton*, No. 22-11226, Dkt No. 34 (5th Cir. Jan. 25, 2023) (denying the Receiver's request to be named as an Appellee, Party in Interest, or Intervenor, while permitting him to proceed as an *amicus curiae*).    Nonetheless, he *again* sought to intervene in Mr. Barton's appeal of this Court's approval of the DLP sale, Motion to Intervene, *SEC v. Barton*, No. 22-11242, Dkt No. 21 (5th Cir. Feb. 13, 2023), which the Fifth Circuit denied one day later.    Order Denying Motion to Intervene, *SEC v. Barton*, No. 22-11242, Dkt No. 27 (5th Cir. Feb. 14, 2023).    Finally, just weeks ago, the Receiver filed a motion to intervene in a fourth appeal, *SEC v. Barton*, Case No. 23-10515, Dkt No. 6 (5th Cir. May 22, 2023), with the expected denial entered shortly after. *SEC v. Barton*, Case No. 23-10515, Dkt No. 25 (5th Cir. May 25, 2023).    Although the Receiver should not have spent time on these activities, especially after the Fifth Circuit had repeatedly made its position clear, the Receiver claims in its current fee application that it did so because "there was uncertainty whether the SEC would dedicate

---

[2] After failing to intervene, the Receiver decided to file motions to dismiss multiple appeals in his capacity as a third-party *amicus curiae*—fully aware that an *amicus* has no standing to seek such relief. *See, e.g.,* App. 050 (describing work at $385 per hour related to "filing motion to dismiss as an amicus brief"); App. 083 (describing more work related to "filing our 'amicus' motion to dismiss").

Agency resources to defending the resulting Orders" on the motions of the Receiver being appealed. ECF No. 237 at 5 n. 2. But that position is not supported by the record. As the Fifth Circuit has made clear, the receivership is the SEC's remedy and it is the SEC's to defend or not. And the SEC has actively pursued its role as the Appellee in those proceedings.

*Third*, the Receiver should not be awarded attorney's fees for clerical work or, alternatively, fees that the Receiver seeks for such work should be reduced. *See, e.g., Corman v. Lifecare Acquisitions Corp.*, No. CIV.A. 3:96-CV-0755D, 1998 WL 185517, at *2 (N.D. Tex. Apr. 10, 1998) ("It is well-settled that clerical or secretarial costs . . . are not separately reimbursable as . . . attorney's fees."); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-00371, 2018 WL 1602460, at *6 (E.D. Tex. Apr. 3, 2018) ("Fees will not be awarded for such work."). Clerical work includes tasks such as "calendaring and scheduling," "reviewing local rules," "downloading and saving files," "printing and filing," "recording deadlines," and "obtaining court procedures." *See Produce Pay*, 2021 WL 5155715, at *5. Here, the Receiver's fee statements include entries for attorneys to "calendar due dates" for water bills (App. 039), "review mail" (App. 044), "download and organize documents" (App. 055), "confer with [an] assistant" (App. 069), "verify deadline for response" (App. 073), and "schedule movers to move mattresses" (App. 075). These is all clerical, non-attorney work that should not be reimbursed as part of any fee application.

*Fourth,* under the lodestar method, the Court should consider the results obtained by the party seeking an attorney's fee award. *See Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 261 (5th Cir. 2018) (affirming downward adjustment by 60% because the attorneys failed to exercise "good judgment" in its expenditure toward the results ultimately achieved, where the attorney's fees award was many times the results obtained for the client). That factor is significant here.

By the present fee application, the Receiver seeks approval of payments for an additional $444,394.22 in professional fees, on top of the $349,868.70 that was previously awarded to him, his law firm, and retained discovery professionals. ECF No. 195. This is a total of $794,262.92. In comparison, the Receiver appears to have recovered $750,000 on behalf the estate, and in connection with a transaction about which substantial legal questions have been raised on appeal, with only a few other de minimis amounts. As the case law cited in the Receiver's own fee application suggests, the work by his team so far, in light of the results achieved to date, do not justify the quantum of fees sought. *See SEC v. Goren*, 272 F. Supp. 2d 202, 210 (E.D.N.Y. 2003) ("[T]he total number of hours expended strikes the Court as greatly out of proportion to the final results achieved"); *see also id.* at 213 ("[T]his Court is especially concerned by the threatened appearance of a windfall, an important public policy concern.").

## II.     CONCLUSION & PRAYER

Mr. Barton respectfully requests that the Court deny the Receiver's Second Quarterly Fee Application [ECF No. 237] for the reasons set forth above. If the Court is inclined to grant the Receiver's fee request in part, Mr. Barton respectfully requests that the amount of those fees be reduced in accordance with lodestar guidelines and applicable case law. Those fees, if any, ultimately should be charged against the SEC, the party that improperly sought the Receiver's appointment at the beginning of this lawsuit and thus the party that caused and should be held responsible for the receivership's expenses.

-11-

Dated: June 5, 2023

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024
(*admitted to N.D. Tex.)*
medney@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On June 5, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney