**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

**RECEIVER'S RESPONSE TO FIRST
DEVELOPMENT COMPANY OF OHIO, LLC'S
MOTION TO INTERVENE AND LIFT STAY**

Respectfully submitted,

Charlene C. Koonce
  State Bar No. 11672850
  charlene@brownfoxlaw.com
Timothy B. Wells
  State Bar No. 24131941
  tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## TABLE OF CONTENTS

I.    SUMMARY ........................................................................................................... 1

II.   BACKGROUND ................................................................................................. 1

      A.    The Receivership Order ............................................................................ 1

      B.    First Development's "Claim" .................................................................... 3

III.  ARGUMENT ....................................................................................................... 4

      A.    Any Relief, Whether Intervention or Lifting the Stay, Is Premature ...................... 4

      B.    The Stay Must Remain Intact ................................................................... 6

            1.    The Stay Preserves Receivership Assets and Serves Equity ...................... 6

            2.    First Development Did Not Satisfy Any of the *Wenke* Factors ................. 7

                  i.    The Court Should Preserve the Status Quo, Which Imposes No Harm ............................................................................. 8

                  ii.   Timing Does Not Support Lifting the Stay .................................... 9

                  iii.  The Merits of First Development's Claim Do Not Support Lifting the Stay ........................................................................... 10

      C.    Intervention is not Required or Permitted ............................................. 10

IV.   CONCLUSION ................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Crawford v. Silette*
  608 F.3d 275 (5th Cir. 2010) ............................................................................................ 8

*Klein v. Cornelius*
  786 F.3d 1310 (10th Cir. 2015) ....................................................................................... 8

*Riehle v. Margolies,*
  279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929).................................................... 7, 8

*Schwartzman v. Rogue Int'l Talent Group, Inc.*
  No. 12-5255, 2013 WL 460218 (E.D. Pa. Feb. 7, 2013) ............................................ 9

*SEC v. Byers*
  609 F.3d 87 (2d Cir. 2010) ............................................................................................... 7

*SEC v. Illarramendi*
  No. 3:11CV78 JBA, 2012 WL 5832330 (D. Conn. Nov. 16, 2012) ......................... 8

*SEC v. Provident Royalties*, L.L.C.
  No. 3:09-CV-1238-L, 2011 WL 2678840 (N.D. Tex. July 7, 2011).......................... 9

*SEC v. Res. Dev. Int'l., LLC*
  487 F.3d 295 (5th Cir. 2007) .......................................................................................... 10

*SEC v. Stanford Int'l Bank, Ltd.*
  429 Fed. Appx. 379 (5th Cir. 2011)............................................................................... 7

*SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2011 WL 13180449
  (N.D. Tex. May 6, 2011) .................................................................................................. 9

*SEC v. Vescor Cap. Corp.*
  599 F.3d 1189 (10th Cir. 2010) ...................................................................................... 7

*SEC. v. Universal Fin.*
  760 F.2d 1034 (9th Cir. 1985) ........................................................................................ 9

*Sierra Club v. Espy*
  18 F.3d 1202 (5th Cir. 1994) .......................................................................................... 10

*United States v. Acorn Tech. Fund, L.P.*
  429 F.3d 438 (3d Cir. 2005) ............................................................................................ 7

*United States v. Petters*
  No. 08–5348 ADA/SJM, 2008 WL 5234527 (D. Minn. Dec. 12, 2008).................... 8

**Statutes**

TEX. BUS. & COMM. CODE § 24.01 ............................................................................................. 10

**Rules**

FED. R. CIV. P. 24 .................................................................................................................... 10

Cort Thomas, the Court-appointed Receiver, responds to First Development Company of Ohio, LLC's ("First Development") Motion to Intervene and Lift Stay [Dkt. 245] (the "Motion") and in support respectfully shows the Court as follows.

## I.    SUMMARY

The Receiver contends, and in discussions with First Development, informed First Development before it filed its Motion, that the Receivership Estate has a valid claim to certain funds in an escrow account.  First Development nonetheless seeks an order lifting the Litigation Stay included in the Receivership Order so that it can file suit against the Receiver or Receivership Entity Titan Investments, LLC in an effort to recover the funds at issue.  Through its Motion, First Development thus seeks priority treatment by attempting to force immediate resolution of its claim, or, cause the Receivership Estate to defend premature, and potentially unnecessary litigation.  First Development's arguments do not justify the relief it seeks, and the Receiver accordingly requests that the Court deny First Development's Motion.

## II.    BACKGROUND

### A.    The Receivership Order

1.      On October 18, 2022, the Court entered its Order Appointing Receiver [Dkt. 29] (the "Receivership Order"), pursuant to which the Court assumed exclusive possession and jurisdiction over certain entities identified in the Receivership Order and their assets, as well as all other entities Defendant Timothy Barton directly or indirectly controls (the "Receivership Entities"). *Receivership Order* ¶ 1.

2.      Subsequently, the Court granted the Receiver's Motion to Supplement Order Appointing Receiver [Dkt. 62, 88] and identified, *nunc pro tunc*, numerous additional Receivership Entities, including Broadview Holdings LLC ("Broadview") and Titan Investments,

1

LLC ("Titan").[1]

3.    The Receivership Order allows the Receiver to "seek, among other legal and equitable relief . . . avoidance of fraudulent transfers . . . and such other relief from this Court as may be necessary to enforce this Order." *Id.* ¶ 45.

4.    To conserve Receivership Assets, allow the Receiver time to perform the most pressing tasks, and preclude any one claimant from seeking an advantage or preference in treatment over another, the Receivership Order also stays all collection efforts against Receivership Assets and Receivership Entities, as well as all litigation against Receivership Entities or involving Receivership Assets (the "Stay"). *Id.* ¶¶ 32 and 34.  Those provisions provide, in relevant part:

> 32. The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:
>
> ***
>
> > C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;
>
> ***
>
> 34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:
>
> > All civil legal proceedings of any nature, including, but not limited

---

[1] Max Barton has appealed the Order Granting the Receiver's Motion to Supplement with respect to Titan and certain other entities. *See* Dkt. No. 130.

to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

*Receivership Order*, ¶¶ 32, 34–35.

## B.    First Development's "Claim"

5.      Before the Receiver's appointment, in February 2022, Titan and First Development entered into an agreement pursuant to which Titan sought to purchase from First Development 16.3 acres of real property in Grayson County, Texas (the "Agreement" and the "Property"). *See* Dkt. 245-1.

6.      Together with several options that permitted Titan to extend inspection or closing on the Property, the Agreement required five earnest money payments totaling $105,000. *Id.* In furtherance of the Agreement, these funds were deposited into an escrow account with Title Partners (the "Escrow Funds"). *Motion*; *see also, Declaration of Cort Thomas* ("Thomas Dec"), APP000002.

7.      Records obtained from Title Partners and the Receiver's review of the limited bank records available for Titan and Broadview demonstrate that Titan paid *none* of the Escrow Funds. The initial $5,000 payment was made by JMJ VC Management, LLC, with the remaining $100,000

paid by Broadview.[2]  True and correct copies of a ledger from Title Partners and bank records from JMJ VC Management, LLC and Broadview are attached to the Thomas Declaration as **Exhibits A-1, 2, and 3**;[3] APP000006-16.

8.      Since approximately October 25, 2022, First Development and the Receiver have communicated sporadically about First Development's contention that the Agreement entitles it to retain and recover the Escrow Funds.  In response to First Development's claim, the Receiver informed First Development of a competing fraudulent transfer claim he holds on behalf of Broadview.[4] *Thomas Dec*. Although the Receiver was willing to negotiate and attempt to resolve the competing claims, First Development chose instead to file its Motion, by which it seeks to intervene to obtain an order lifting the Litigation Stay so that it may litigate against Titan in "a Texas State Court or in the alternative in this Court."  The Court should deny the Motion in its entirety.

## III.    ARGUMENT

### A.    Any Relief, Whether Intervention or Lifting the Stay, Is Premature

First Development states no reason, other than the passage of time, justifying the order it seeks lifting the Litigation Stay.  The Escrow Funds are not at risk of dissipating, nor were they funds that First Development originally parted with such that the continued deposit of the Funds could cause *any* hardship to First Development.  Further, allowing the Escrow Funds to remain on deposit does not impede First Development's ability to sell or otherwise utilize the Property; it

---

[2] In previous filings, the Receiver demonstrated the *extensive* intercompany transfers that occurred between other Receivership Entities and Broadview, including transfers of comingled Wall Investor funds and the proceeds of Wall Investor funds.  *See* Dkt. Nos. 73 and 74

[3] As the Court is aware, the Receiver's ability to obtain and review Receivership Entity financial records has been hampered by Barton's contumacious conduct.  Nonetheless, the Receiver has requested and obtained bank records directly from financial institutions, including but not limited to the records obtained from Title Partners.

[4] *See* discussion below.

sold the Property in December 2022.[5] In short, absolutely no urgency exists regarding First Development's claim to the Escrow Funds or its request for permission to assert a claim against Titan or the Receiver for recovery of the Funds.

On the other hand, the Receiver is attempting to address claims to Receivership Assets and against Receivership Entities in a logical progression, for instance by dealing first with some of the largest claims—like HN Capital's claim to the $40+ million dollar property located at 2999 Turtle Creek, SPC's claim of ownership to four apartment developments worth many millions of dollars, and DLP's claim that Receivership Entities were in breach of various development contracts. In comparison, although the Receiver has investigated the source of the Escrow Funds and believes he holds a fraudulent transfer claim for their recovery, he is not yet ready to file a lawsuit against First Development and would prefer to resolve the dispute without incurring litigation fees and expenses. Nor should he be forced to expend Receivership Assets, at this time, to defend the lawsuit First Development seeks leave to file. Instead, the Receiver has attempted to negotiate with First Development—to date without success—to resolve the disputed claim to the Escrow Funds.

Moreover, rewarding First Development's efforts to jump to the front of the long line of creditors and claimants by lifting the Litigation Stay for it to initiate a lawsuit while others with far more compelling and valuable claims continue to wait will only embolden other creditors and claimants. Granting the relief First Development requests will thus result in significant costs in attorney's fees and time required of the Receiver's counsel to resist other creditors and claimants whose claims will otherwise be resolved in due course, through settlement, agreement to litigate, or pursuant to an order lifting the Stay based on the existence of irreparable harm arising from

---

[5] *See* Thomas Declaration, Exh. A, APP000003.

continuing the Stay.  Those circumstances do not exist here.

**B.     The Stay Must Remain Intact**

**1.     The Stay Preserves Receivership Assets and Serves Equity**

The protection provided by the Litigation Stay is not hypothetical.  Although a few have been resolved, not less than 36 proceedings were originally stayed (the "Stayed Cases").  Litigants in the Stayed Cases frequently request agreement to lift the Stay so they can proceed with the lawsuits against Receivership Entities, Tim Barton, and in several instances, Barton's counsel.[6] *Thomas Dec.*, APP000003.

Likewise, dozens if not hundreds of creditors are standing in line for payment from Receivership Assets, if and when a claims process is established.  The Receiver has informed all such creditors that their collection efforts, whether in the form of foreclosure, repossession, seizure, or a lawsuit to enforce rights, are stayed by the Receivership Order.  Indeed, the Receiver has informed *every single* attorney who has conferred about a motion to lift the Stay to date, including First Development's counsel, that at this juncture, the request is premature at best. *Thomas Dec.*, APP000004.

As the Court is aware, the Receiver is diligently working to perform his mandate, including managing and operating an extended stay hotel, selling properties to recoup money for damaged investors and fund the receivership, and responding to the stream of motions and objections filed by Barton and others.  Indeed, Barton has objected to and appealed virtually every settlement, sale, and activity undertaken by the Receiver, objecting to the time expended and the "premature" nature of the work given Barton's appeal of the Receivership Order, all the while consistently impugning the Receiver's integrity and competence.

---

[6] The plain language of the Stay demonstrates its reach to claims asserted against Barton and his attorneys. *Receivership Order* ¶ 34(d).

Because of the constant press of these and related issues in the Receivership and despite diligent efforts, to date the Receiver has fully resolved only a handful of the Stayed Cases or claims asserted by creditors or third parties.[7] He has generally attempted to resolve such claims and litigation by addressing them when, as, and in the priority that best serves the Receivership Estate. *Thomas Dec.*, APP000004.  Multiple times in communications with First Development's counsel, like communications with counsel for every creditor or claimant affected by the Stay, the Receiver and his counsel have conveyed the basis for and necessity of the Stay, and the contentions raised by Barton in his numerous appeals that all of the Receiver's work is premature. *Thomas Dec.*, APP000004.

> **2.    First Development Did Not Satisfy Any of the *Wenke* Factors**

Litigation stays in receivership matters serve as an additional tool to further the goals of the receivership.  *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010).  The Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).  "District courts have broad equitable powers to preserve a receiver's ability to operate without interference." *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379, 380 (5th Cir. 2011). The Court's power with respect to an anti-litigation stay is thus more broad than its power to grant injunctive relief pursuant to Rule 65.  *Id.*

In deciding whether to lift such a stay, courts generally consider three factors,[8] the *"Wenke* factors," which are intended to balance the interests of the Receiver and the moving party.  *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Wencke,* 742 F.2d

---

[7] *See* Dkt. Nos. 95, 143, 206-208, and 210.

[8] Those factors are: "(1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x. 338, 341 (5th Cir. 2011) (quoting Wencke II)).

1230, 1231 (9th Cir.1984) ("Wencke II").  The movant bears the burden of demonstrating that the balance of factors support lifting the stay.  *SEC v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 5832330, at *2 (D. Conn. Nov. 16, 2012); *United States v. Petters,* No. 08–5348 ADA/SJM, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008).

### i. The Court Should Preserve the Status Quo, Which Imposes No Harm

Here, the first factor weighs heavily against First Development. Keeping the Stay in place preserves the status quo by preventing unnecessary litigation against a Receivership Entity and the resultant expense to the Receivership Estate necessary to defend the litigation.[9]  Maintaining the status quo in this regard also dissuades other claimants or creditors from seeking the same relief, which would otherwise result in unnecessary fees and expenses borne by the Receivership Estate.

Nor does First Development demonstrate *any* harm, let alone irreparable harm from the continued Stay.  It argues, without evidence, that it will suffer "substantial injury" if not permitted to litigate for the return of the Escrow Funds because "the funds are a part of its business capital and not having those funds available for use in Movant's business materially impacts its ability to conduct such business."  *Motion* pp. 12-13.  But JMJ VC Management and Broadview are the source of the Escrow Funds, not First Development. *Thomas Dec.*  Thus at most, keeping the Funds on deposit deprives First Development of these Receivership Entities' funds, not its own capital. Further, based on a review of the real property records, First Development sold the Property to a

---

[9] Because this Court has assumed exclusive jurisdiction and control over all Receivership Assets and Entities, *Receivership Order* ¶ 1, it also possesses ancillary jurisdiction over any litigation involving such Entities and Assets. *See Crawford v. Silette,* 608 F.3d 275, 278 (5th Cir. 2010) (district court possesses ancillary subject matter jurisdiction over suits involving receivership assets or filed by the receiver); *see also Riehle v. Margolies,* 279 U.S. 218, 223 (1929) ("The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit . . .  or by ancillary proceedings."); *Klein v. Cornelius*, 786 F.3d 1310, 1315 (10th Cir. 2015) (Concluding ancillary jurisdiction existed over receiver's state law claims because "the general grant of federal question jurisdiction under the CEA brings with it the power to hear 'all other claims that are so related to' the original claim as to "form part of the same case or controversy.") (quoting 28 U.S.C. §1367(a)).

subsequent buyer before the end of 2022.[10]  No harm results from continuing the Litigation Stay.

### ii.    Timing Does Not Support Lifting the Stay

The timing in the course of the receivership also weighs against lifting the Stay.  Although stays of up to two years are not uncommon in similar cases, stays in receiverships can last up to four years.  *See SEC. v. Universal Fin.*, 760 F.2d 1034 (9th Cir. 1985) (affirming denial of a motion to lift stay four years into a receivership); *see also SEC v. Provident Royalties*, L.L.C., No. 3:09-CV-1238-L, 2011 WL 2678840 (N.D. Tex. July 7, 2011) (lifting the litigation stay almost two years into the receivership); *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2011 WL 13180449 (N.D. Tex. May 6, 2011) (lifting a stay when the receivership was "relatively young" at "just over two years old"); *Schwartzman v. Rogue Int'l Talent Group, Inc.*, No. 12-5255, 2013 WL 460218, at *3 (E.D. Pa. Feb. 7, 2013) (denying motion to lift stay more than two years into the receivership because "the receivership is at an early stage and the Receiver is still collecting relevant information").

The Receivership Order was entered approximately eight months ago and Titan's inclusion as a Receivership Entity was confirmed only five months ago.  In the context of complex receiverships, the case is very young.  It is also complex, with more than 100 Receivership Entities, many going concerns, and extensive litigation, including numerous appeals.

In performing his mandate and to the greatest extent possible, the Receiver has focused on *urgent* or the most important issues, like managing and selling the Amerigold Suites, contesting SPC's ownership interest in four apartment complexes, complying with HUD regulations to continue certification of HUD loans on those complexes, and selling properties, when possible, to fund the work necessary to perform his mandate.  *Thomas Dec.*, APP000004.  In the context of

---

[10] *Thomas Dec.* Exh. A, APP000003.

these broader issues, First Development's claim to the Escrow Funds is neither urgent nor one of the most important.  The timing in the course of the receivership weighs heavily against lifting the Stay.

> ### iii.    The Merits of First Development's Claim Do Not Support Lifting the Stay

Finally, the third factor, the merits of First Development's claim, also weighs against lifting the Stay.  Although First Development may hold a contractual right against Titan for recovery of the Escrow Funds, the Receiver, on behalf of Broadview, holds a competing and offsetting claim against First Development.  *See* TEX. BUS. & COMM. CODE § 24.01(a)(1) and (a)(2); *see also SEC v. Res. Dev. Int'l., LLC*, 487 F.3d 295, 301–02 (5th Cir. 2007) (affirming summary judgment on receiver's fraudulent transfer claims based on payment made to defendant by one receivership entity, where defendant exchanged value only with a third entity, rather than the transferring receivership entity).   First Development's claim may accordingly fail entirely.

In sum, each factor counsels against lifting the Stay.  The Receiver requests that the Court deny First Development's Motion to the Lift the Stay, and further, provide a strongly worded order dissuading other creditors or claimants from seeking the same relief for the foreseeable future.

## C.    Intervention is not Required or Permitted

Because First Development fails to demonstrate entitlement to the ultimate relief sought through intervention, the Court should also deny its Motion to Intervene, without prejudice. Indeed, because the relief it seeks through intervention—an order lifting the Litigation Stay—is premature, First Development fails to satisfy the first factor required to intervene: a timely application.  *See* FED. R. CIV. P. 24; *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994) ("If a party seeking to intervene fails to meet any one of . . . [the four] requirements, it cannot intervene as a matter of right." *Id.*

10

## IV.    CONCLUSION

The Receiver requests that the Court deny First Development's Motion to Intervene and

Lift Stay and requests such other and further relief to which he may show himself entitled.


Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.