UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| Plaintiffs, | § § | C.A. No: 3:22-cv-2118-X |
| v. | § § | JURY TRIAL DEMANDED |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, et al, | § § § § | |
| Defendants. | § | |

**MOTION OF MCCORMICK 101, LLC FOR ORDER (1) LIFTING STAY AND (2) FOR EXCEPTION FROM THE COURT'S ORDER APPOINTING RECEIVER OF MCCORMICK 101, LLC [DOC. 29], OR, (3) IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION AND BRIEF IN SUPPORT**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES JUDGE:

COMES NOW McCormick 101, LLC ("McCormick") and files this Motion (1) to Lift Stay and (2) for Exception from the Court's Order Appointing Receiver [Doc. 29], or, (3) In the Alternative, Motion for Adequate Protection and Brief in Support (the "Motion") and respectfully shows the Court the following:

**INTRODUCTION**

McCormick is the first lienholder on the Amerigold Suites, an extended stay hotel located in Dallas, Texas and the owner of all rents generated from it. Despite this, the Receiver has failed to make a single payment, in whole or in part, to McCormick after his appointment. Under the current control of the Receiver, the value of McCormick's collateral is being depleted. McCormick, as the lender, has a property interest in its collateral and is entitled to protection of the value of that collateral.

It is entitled to foreclose on its property or to collect on the rents received from the property. The Receiver has received an offer to purchase the property for an amount in excess of the debt owing to McCormick but, because of a series of appeals by the Defendant, has been unable to close on those sales. Now, the Fifth Circuit has even displaced the Receiver. And the parties must now begin again the processes of approval of the receivership and sales, surely to be met by more appeals. And when will the proposed buyer walk away in frustration? McCormick, too, has so far been patient but can sit by no longer. The presence of a buyer who is willing and able to close but who *cannot* close means the property has no value to the Receiver.

At a minimum, McCormick is entitled to adequate protection for its inability to foreclose or collect on its property. Counsel has repeatedly advised the Receiver "has no money" to pay McCormick but this is because the Receiver is paying for significant improvements to the property (which is of no benefit to McCormick or the Receiver since the sales price is already set). And the Receiver is paying rents to another lender who itself has an assignment of rents similar to McCormick. The failure to provide adequate protection is itself a reason to permit foreclosure.

## BACKGROUND

1. On or about November 14, 2019, Goldmark Hospitality, LLC ("Goldmark") and Texas Brand Bank ("TBB") entered a loan agreement (the "Loan Agreement") pursuant to which TBB loaned Goldmark the principal sum of $2,584,249.00 (the "Note"). A true and correct copy of the Loan Agreement is attached as **Exhibit A.**

2. The Note was secured by a Deed of Trust, Security Agreement – Financing Statement (the "Deed of Trust") over certain real property located at 13636 Goldmark Drive, Dallas, Texas 75240 (the "Property"). A true and correct copy of the Deed of Trust is attached as **Exhibit B**.

3.      Amerigold Suites, Extended Stay Hotel operates at the Property ("Amerigold").

4.      The last payment on the Note, in the amount of $20,199.75 was made on September 20, 2022.

5.      On September 23, 2022, the Securities and Exchange Commission (the "SEC") filed its Complaint in Case No. 3:22-CV-2118-X [Doc. 1] (the "Lawsuit").

6.      On September 26, 2022, the SEC filed Plaintiff Securities and Exchange Commission's Expedited Motion for Appointment of Receiver and Brief in Support ("Motion for Appointment of Receiver") [Doc. 6].

7.      The next payment due on the Note was October 14, 2022, which was not received, putting Goldmark into default under the Note.   There are other nonmonetary defaults under the Loan Agreement and Note.

8.      On October 18, 2022, the Court entered the Order Appointing Receiver, Cortney C. Thomas (the "Receiver") (the "Court's Order Appointing Receiver") [Doc. 29].

9.      On November 1, 2022, the Receiver filed a Motion to Supplement Order Appointing Receiver [Doc. 41].

10.     On November 2, 2022, the Government filed the Government's Unopposed Motion to Intervene and to Stay Proceedings [Doc. 44].

11.     On November 16, 2022, the Court entered the Order Granting Receiver's Motion to Supplement Order Appointing Receiver [Doc. 62] (the "First Supplemental Order").

12.     Also, on November 16, 2022, the Court entered the Order Granting Motion to Intervene and Stay Proceedings (the "Stay Order") [Doc. 64].

13.     On November 17, 2022, Timothy Barton ("Barton") filed a Notice of Interlocutory Appeal related to, *inter alia*, the receivership order.

14.     On December 13, 2022, the Court entered its second Order Granting Receiver's Motion to Supplement Order Appointing Receiver [Doc. 88] (the "Second Supplemental Order").

15.     Nothing in the Stay Order precluded the Receiver from performing his duties and obligations as receiver.

16.     On or about December 22, 2022, McCormick entered an Asset Sale Agreement with TBB pursuant to which McCormick acquired the Loan.

17.     Pursuant to the Court's Order Appointing Receiver and the Stay Order, McCormick is precluded from exercising its rights under the Loan Agreement and Deed of Trust.

18.     The Receiver filed Receiver's Second Status Report on January 30, 2023 (the "Report") [Doc. 139]. In the Report, the Receiver confirmed that the Property was generating rental income.

19.     On March 2, 2023, the Receiver filed a Verified Motion for Appointment of Appraisers, Approval of Appraisers, Approval Hearing, and Approval of Sale of Amerigold Suites [Doc. 167].

20.     On March 29, 2023, the Court entered an Order approving the Amerigold sale [Doc. 202].

21.     On June 28, 2023, the Fifth Circuit issued its opinion in which it ruled, *inter alia*, that the receivership order should be vacated (90 days after the Fifth Circuit issues the mandate), that certain of the Receiver's powers were stayed, but permitted the Receiver to moved forward with the sale of property that had already been approved by the District Court.

22.     On August 31, 2023, the Fifth Circuit withdrew its previous opinion and entered a new opinion prohibiting the Receiver from closing on even the previously approved property sales without a new receivership order.

23.     The Fifth Circuit also issued its mandate on August 31, 2023.

24.     The previously-approved sale of the Property did not close.

25.     On September 7, 2023, the Receiver petitioned the Court for a new Order Appointing Receiver [Doc. 309-1].

## ARGUMENTS AND AUTHORITIES

**A.     The stay should be lifted.**

1.     The Property is Generating Income, and Goldmark Remains in Default

On information and belief, Amerigold is at least 70% occupied and is generating income in the form of monthly rent.  Between October 18, 2022 and June 30, 2023, the Amerigold Suites generated $519,921.99 in rental income. Report at p. 4 of Exhibit A-3. Based on information provided to McCormick by the Receiver, McCormick estimates that Amerigold generated $750,000.00 in rent since entry of the Court's Order Appointing Receiver.  While certain expenses were made by the Receiver in the months since his original appointment depleted the net profit of Amerigold, the lion's share of these expenses were one-off maintenance expenses and/or annual expenses that reduce significantly, or to zero, on a going forward basis.  As of the filing of this Motion, on information and belief, the Property is currently significantly occupied, and monthly rents have grown from $48,930.00 in December 2022 to $82,732.00 in June 2023.  The Receiver has funds sufficient to make payments on the Note on a going forward basis. Despite this, the Receiver is refusing to make payments on the Note.

2.     McCormick Should Be Permitted to Foreclose on the Property

Goldmark is in default under the Loan Agreement and McCormick desires to exercise its rights under the Loan Agreement and Deed of Trust by foreclosing on the Property. The stated purpose of the original Motion for Appointment of Receiver was to protect assets for the defrauded

investors and is presumably the stated purpose of the new proposed Order Appointing Receiver [Doc. 309-1]. Such protection should not come at the expense of a secured lender operating in good faith. The Court should permit foreclosure given the Receiver's inability to close the sale of the property to the proposed buyer.

3.    The Receiver Should Turn Over All of the Rents to McCormick

In the alternative and without waiving the foregoing, if McCormick is not granted leave to exercise its right to foreclose, McCormick requests the Court require the Receiver begin servicing the debt owed to McCormick and cease utilizing funds that belong to McCormick.

The filing of the Motion for Appointment of Receiver constituted an event of default under the Loan Agreement, thus triggering the assignment of rents provision of the Deed of Trust:

> Section 5.2. *Assignment of Rents*. Grantor does hereby absolutely and unconditionally assign, transfer and set over to Beneficiary all rents, income, receipts, revenues, issues, profits and proceeds to be derived from the Property, including, without limitation, the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other sums of money that may now or at any time hereafter become due and payable to Grantor under the terms of any leases now or hereafter covering the Property, or any part thereof, including, but not limited to, minimum rents, additional rents, percentage rents, deficiency rents and liquidated damages following an Event of Default, all proceeds payable under any policy of insurance covering the loss of rents resulting from untenantability caused by destruction or damage to the Property, and all of Grantor's rights to recover monetary amounts from any tenant in bankruptcy, including, without limitation, rights of recovery for use and occupancy and damage claims arising out of lease defaults, including rejections, under the United States Bankruptcy Code or any other present or future federal or state insolvency, bankruptcy or similar law, together with any sums of money that may now or at any time hereafter become due and payable to Grantor by virtue of any and all royalties, overriding royalties, bonuses, delay rentals and any other amount of any kind or character arising under any and all present and future oil, gas and mining leases covering the Property or any part thereof (collectively, the "Rents"); and all proceeds and other amounts paid or owing to Grantor under or pursuant to any and all contracts and bonds relating to the construction, erection or renovation of the Property; subject however to a license hereby granted by Beneficiary to Grantor to

collect and receive all of the foregoing (such license evidenced by Beneficiary's acceptance of this Deed of Trust), subject to the terms and conditions hereof. Notwithstanding anything contained herein or in any of the other Loan Documents to the contrary, the assignment in this Paragraph is an absolute, unconditional and presently effective assignment and not merely a security interest; provided, however, upon the occurrence of an Event of Default hereunder, such license shall automatically and immediately terminate and Grantor shall hold all Rents paid to Grantor thereafter in trust for the use and benefit of Beneficiary and Beneficiary shall have the right, power and authority, whether or not it takes possession of the Property, to seek enforcement of any such lease, contract or bond and to demand, collect, receive, sue for and recover in its own name any and all of the above described amounts assigned hereby and to apply the sum(s) collected, first to the payment of expenses incident to the collection of the same, and the balance to the payment of the Obligation; provided further, however, that Beneficiary shall not be deemed to have taken possession of the Property except on the exercise of its option to do so, evidenced by its demand and overt act for such purpose. It shall not be necessary for Beneficiary to institute any type of legal proceedings or take any other action whatsoever to enforce the assignment provisions in this Section 5.2. It is the intent of Grantor and Beneficiary that this Section 5.2 of this Deed of Trust comply with Chapter 64 of the Texas Property Code, as amended from time to time. To the extent there is an inconsistency between the terms of this Section 5.2 of this Deed of Trust and Chapter 64 of the Texas Property Code, then Chapter 64 of the Texas Property Code shall control.

Deed of Trust at ¶ 5. Post default, all rent generated by the Property belongs to McCormick. The Receiver is aware of his obligations with respect to assignments of rents as he is servicing debt owed to another creditor, Rock Creek, pursuant to certain applicable loan documents, "[a]s outlined above, these funds must be delivered to the lender under the applicable loan documents." Report at p. 34. Yet, the Receiver has failed to make a single payment to McCormick. And, the Receiver is utilizing funds that belong to McCormick without McCormick's permission.

For all of the foregoing reasons, McCormick respectfully requests that the Court lift the stay and except McCormick from the restrictions of the Court's Order Appointing Receiver, thus allowing McCormick to exercise any and all of its rights under the Loan Agreement, the Deed of Trust, and all related documents.

## B.    Adequate Protection is Merited.

The sale of the Property was previously approved by this Court and was scheduled to close on September 8, 2023, until the Fifth Circuit withdrew its June 28, 2023 opinion and entered its August 31, 2023 opinion prohibiting the Receiver from closing on even the previously approved

property sales without a new receivership order. The longer the sale of the Property is delayed, the more the risk increases that the Property will continue to fall into a state of disrepair, thus devaluing McCormick's collateral. Additionally, further delay in selling the Property in light of market factors serves to further deplete the value of the Property. Over $2,825,367.75 remains due and owing to McCormick, with interest continuing to accrue. The debt owed to McCormick is growing while the property is declining in value. For example, higher financing costs reduce the value of the property.

In the alternative and without waiving the foregoing, McCormick requests the Court require the Receiver to provide debt service to McCormick in the amount of $19,699.75 per month. Further, McCormick requests the Court require the Receiver to provide an operating budget, a monthly accounting of funds generated by the Property, and to conserve such funds, including funds from the rent rolls on the Property. These measures are necessary to ensure McCormick receives adequate protection during the interim period in which McCormick is precluded from foreclosing on the Property.

## PRAYER

WHEREFORE, McCormick respectfully request the Court enter an order lifting the stay in this matter, permitting the filing of McCormick's request to be excepted from the Court's Order Appointing Receiver, and granting all such other and further relief, at law and in equity, to which McCormick may show itself justly entitled.

Dated: September 12, 2023
Dallas, Texas

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By:     */s/ Russell W. Mills*
Russell W. Mills
Texas Bar No. 0078469
rmills@bellnunnally.com
Gwen I. Walraven
Texas Bar No. 24047065
gwalraven@bellnunnally.com
Lewis F. Collins III
Texas Bar No. 24132383
lcollins@bellnunnally.com
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
214-740-1400 Telephone
214-740-1499 Facsimile

**ATTORNEYS FOR**
**MCCORMICK 101, LLC**

## CERTIFICATE OF CONFERENCE

On September 8, 2023, the undersigned conferred with Charlene Koonce, counsel for the Receiver, regarding the relief sought herein.  On September 11, 2023, Ms. Koonce indicated her opposition to that relief. On September 11, 2023, I left a message for Keefe Bernstein, counsel for the SEC but that call was not returned by the time of filing this motion.

*/s/ Russell W. Mills*
Russell W. Mills

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Motion (1) to Lift Stay and (2) for Exception from the Court's Order Appointing Receiver [Doc. 29] and Brief in Support was served on all parties on this 12th day of September 2023, v*ia CM/ECF* and/or by First Class Regular Mail.

*/s/ Lewis F. Collins III*
Lewis F. Collins III