# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

SECURITIES     AND     EXCHANGE §
COMMISSION §
§
    *Plaintiffs*, §
§
                          §           **C.A. No: 3:22-cv-2118-X**
v. §
§       **JURY TRIAL DEMANDED**
§
TIMOTHY BARTON, CARNEGIE §
DEVELOPMENT, LLC, et al, §
§
    *Defendants*. §

## APPENDIX IN SUPPORT OF MOTION OF MCCORMICK 101, LLC FOR ORDER (1) TO LIFT STAY AND (2) FOR EXCEPTION FROM THE COURT'S ORDER APPOINTING RECEIVER OF MCCORMICK 101, LLC [DOC. 29], OR, (3) IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION

| EXHIBIT | DESCRIPTION | APP. NO. |
|---------|-------------|----------|
| Exhibit A | Loan Agreement | App. 001 - 032 |
| Exhibit B | Deed of Trust | App. 033 - 063 |

Dated: September 12, 2023
Dallas, Texas

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By:    */s/ Russell W. Mills*
Russell W. Mills
Texas Bar No. 0078469
rmills@bellnunnally.com
Gwen I Walraven
Texas Bar No. 24047065
gwalraven@bellnunnally.com
Lewis F. Collins III
Texas Bar No. 24132383
lcollins@bellnunnally.com
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
214-740-1400 Telephone
214-740-1499 Facsimile

**ATTORNEYS FOR
MCCORMICK 101, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Appendix in Support of the Motion (1) to Lift Stay and (2) for Exception from the Court's Order Appointing Receiver [Doc. 29] and Brief in Support was served on all parties on this 12th day of September 2023, v*ia CM/ECF*.

*/s/ Russell W. Mills*
Russell W. Mills

**EXHIBIT**

**A**

## LOAN AGREEMENT

THIS LOAN AGREEMENT is made and entered into as of November 14, 2019 (the "Effective Date") by **TEXAS BRAND BANK** ("Bank"), and **GOLDMARK HOSPITALITY, LLC**, a Texas limited liability company ("Borrower").

### RECITALS:

A.     Borrower has requested that Bank extend credit to Borrower as described in this Agreement. Bank is willing to make such credit available to Borrower upon and subject to the provisions, terms, and conditions hereinafter set forth.

B.     Subject to and upon the terms and conditions of this Agreement, Bank has agreed to lend to Borrower the amounts herein described for the purposes set forth below.

### AGREEMENT:

NOW, THEREFORE, in consideration of the premises, the covenants, representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

### ARTICLE ONE

### DEFINITIONS AND USE OF TERMS

1.1     _Definitions._ As used in this Agreement, all exhibits and schedules hereto and in any note, certificate, report or other Loan Documents made or delivered pursuant to this Agreement, the following terms will have the meanings given such terms in Article One.

"Advance" means a disbursement by Bank, whether by journal entry, deposit to Borrower's account, check to third party or otherwise of any of the proceeds of the Loan, or any insurance proceeds.

"Affiliate" means, as to any Person, any other Person (a) that directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, such Person, (b) that directly or indirectly beneficially owns or holds ten percent (10%) or more any class of voting stock of such Person, or (c) that controls ten percent (10%) or more of the voting stock of which is directly or indirectly beneficially owned or held by the Person in question. The term "control" means the possession, directly or indirectly, of the power to direct or cause direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise; provided, however, in no event shall Bank be deemed an Affiliate of Borrower.

"Agreement" means this Loan Agreement, as the same may from time to time be amended, supplemented, replaced or restated.

"Approved Purpose" means that the proceeds of the Loan must be used as part of the funds necessary to (a) refinance the existing indebtedness encumbering the Property, (b) reimburse Borrower for the cost of making certain capital improvements to Property, (c) pay closing costs related to the Loan, and (d) provide Borrower with a return of a portion of its equity in the Property.

"Bank" means Texas Brand Bank and its successors and assigns, in whole or in part.

**App. 001**

"Borrower" means the Person identified as such in the introductory paragraph hereof, and its successors and assigns.

"Business Day" means a day other than a Saturday, Sunday or a day on which Bank is authorized to be closed.  Unless otherwise provided, the term "days" means calendar days.

"Closing Date" means the Effective Date.

"Code" means the Uniform Commercial Code of the State of Texas or other applicable jurisdiction as it may be amended and in effect from time to time.

"Committed Sum" is defined in Section 2.1.

"Debt" means, with respect to any Person and as of any applicable date of determination, all indebtedness, obligations and liabilities of such Person, whether matured or unmatured, due or to become due, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, including all items that should be classified as liabilities in accordance with GAAP.  In the case of Borrower, the term "Debt" shall include, without limitation, the Indebtedness.

"Debtor Relief Laws" means Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors generally from time to time in effect.

"Deed of Trust" means the Deed of Trust, Security Agreement-Financing Statement encumbering the Property to secure payment and performance of the Indebtedness and the Obligations, as such may be amended, restated, supplemented or otherwise modified from time to time.

"Disposition" means any sale, Lease (except as permitted in the Loan Documents), exchange, assignment, conveyance, transfer, trade, or other disposition of all or any portion of the Property (or any interest therein).

"Effective Date" means the date set forth in the introductory paragraph hereof.

"Event of Default" has the meaning set forth in Article Six hereof and in the other Loan Documents.

"Financial Statements" means all balance sheets, income statements, statements of profit and loss, statements of cash flow, statements of sources and uses of funds, and other financial data, statements and reports (whether of Borrower, any Guarantor, or any other Person or otherwise) which are required to, have been, or may from time to time hereafter, be furnished to Bank, for the purposes of, or in connection with, this Agreement.

"GAAP" means generally accepted accounting principles, applied on a consistent basis, set forth in Opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants and/or in statements of the Financial Accounting Standards Board which are applicable in the circumstances as of the date in question; and the requisite that such principles be applied on a consistent basis means that the accounting principles observed in a current period are comparable in all

material respects to those applied in a preceding period, except the extent that a deviation therefrom is expressly permitted by this Agreement.

"Governmental Authority" means the United States, the state, the county, the city or any other political subdivision in which the Property is located, and any court or political subdivision, agency, or instrumentality having jurisdiction over Borrower, any Guarantor or any of the Property.

"Guarantor" means Timothy Barton and any Person who from time to time guarantees the payment or performance of all or any part of the Indebtedness or the Obligations.

"Guaranty" means each Guaranty Agreement executed by a Guarantor, guaranteeing all or any portion of the Indebtedness or the Obligations, as such may be amended, restated, supplemented or otherwise modified from time to time.

"Impositions" means: (i) all real estate and personal property taxes, charges, assessments, standby fees, excises, and levies and any interest, costs, or penalties with respect thereto, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied, or imposed upon the Property or the ownership, use, occupancy, or enjoyment thereof, or any portion thereof, or the sidewalks, streets, or alleyways adjacent thereto; (ii) any charges, fees, license payments, or other sums payable for or under any easement, license, or agreement maintained for the benefit of the Property; (iii) water, gas, sewer, electricity, and other utility charges and fees relating to the Property; and (iv) assessments and charges arising under any subdivision, condominium, planned unit development, or other declarations, restrictions, regimes, or agreements affecting the Property.

"Improvements" means the improvements situated on the Land.

"Indebtedness" means all present and future indebtedness, obligations, and liabilities, including all direct and contingent obligations arising under letters of credit, banker's acceptances, bank guaranties and similar instruments, net obligations under any swap contract, overdrafts, Automated Clearing House obligations, and other financial accommodations which could be considered a liability under GAAP, and all renewals, extensions, and modifications thereof, or any part thereof, in each case now owed or hereafter owing to Bank by Borrower, and all interest accruing thereon and costs, expenses, and all attorneys' fees paid or incurred by Bank in the enforcement or collection thereof, regardless of whether such indebtedness, obligations, and liabilities are direct, indirect, fixed, contingent, liquidated, unliquidated, joint, several, due or to become due, or joint and several, including, but not limited to, all indebtedness, obligations, and liabilities evidenced, secured, or arising from time to time under or pursuant to any of the Loan Documents, and all renewals and extensions thereof, or any part thereof, and all present and future amendments thereto. "Indebtedness," however, does not include any Debt which is covered by the federal Truth-in-Lending Act.

"Land" means the real property described in **Exhibit "A"**.

"Leases" means any and all leases, subleases, licenses, concessions, or other agreements (whether written or oral, or now or hereafter in effect) which grant to third parties a possessory interest in and to, or the right to use or occupy, all or any part of the Property, together with all security, including letters of credit, and other deposits or payments made in connection therewith.

"Legal Requirements" means (i) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any Guarantor or the Property, including, without limiting the generality

LOAN AGREEMENT                                                                    PAGE 3
L:\50423\251\Loan Agreement.doc

**App. 003**

of the foregoing, the ownership, use, occupancy, possession, construction, operation, maintenance, alteration, repair, or reconstruction thereof, (ii) any and all covenants, conditions, and restrictions contained in any deeds, other forms of conveyance, or in any other instruments of any nature that relate in anyway or are applicable to the Property or the ownership, use, or occupancy thereof, (iii) Borrower's or any Guarantor's present or subsequently effective bylaws and articles of incorporation, operating agreement or regulations and articles of organization or partnership, limited partnership, joint venture, trust, or other form of business association agreement, and (iv) any and all Leases and other contracts (written or oral), of any nature that relate in any way to the Property and to which Borrower or any Guarantor may be bound.

"Lien" means any valid and enforceable interest in any property, whether real, personal or mixed, securing an indebtedness, obligation or liability owed to or claimed by any Person other than the owner of such property, whether such indebtedness is based on the common law or any statute, ordinance or contract and including, but not limited to, liens created by or pursuant to, a security interest, pledge, mortgage, assignment, conditional sale, trust receipt, lease, consignment or bailment for security purposes.

"Loan" means the loan made by Bank to Borrower pursuant to this Agreement.

"Loan Documents" means this Agreement, the Note, the Deed of Trust, each Guaranty, the Security Agreement, and any other agreements, instruments and documents evidencing, securing, guaranteeing or pertaining to the Loan as shall from time to time be executed and delivered to Bank by Borrower or any other party pursuant to this Agreement, including, without limitation, any future amendments hereto, or restatements hereof, or pursuant to the terms of any of the other loan documents, together with any and all renewals, extensions, and restatements of, and amendments and modifications to, any such agreements, documents, and instruments.

"Material Adverse Effect" means any set of circumstances or event which with respect to any Person (a) could reasonably be expected to have any material adverse effect whatsoever upon the validity, performance, or enforceability of any Loan Document against such Person, (b) is or could reasonably be expected to have a material adverse effect upon the condition (financial or otherwise), properties, liabilities (actual or contingent), business operations of such Person, (c) could reasonably be expected to materially impair the ability of such Person to fulfill its obligations under the terms and conditions of the Loan Documents.

"Maximum Lawful Rate" means the maximum non-usurious rate of interest (or, if the context so requires, an amount calculated at such rate) which Bank is allowed to contract for, charge, take, reserve, or receive in this transaction under applicable federal or state (whichever is higher) law from time to time in effect after taking into account, to the extent required by applicable federal or state (whichever is higher) law from time to time in effect, any and all relevant payments or charges under the Loan Documents.

"Note" means the Promissory Note made by Borrower and payable to the order of Bank in the maximum principal amount of and evidencing the Loan, as such may be amended, increased, replaced, restated, renewed and extended from time to time.

"Obligated Party" means the Borrower, each Guarantor and any other Person who is or becomes party to or makes any agreement, instrument or document that guarantees or secures payment and performance of any of the Indebtedness, and/or the Obligations or any part thereof.

LOAN AGREEMENT                                                                                    PAGE 4
L:\50423\251\Loan Agreement.doc

**App. 004**

"Obligations" means any and all of the covenants, conditions, warranties, representations and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower or any Obligated Party to Bank as set forth in the Loan Documents, or any other agreement as to which Borrower is granted a possessory interest in the Property.

"Origination Fee" means the amount of $25,842.49 to be paid to Bank in consideration of the agreement of Bank to make the proceeds of the Loan available to Borrower as provided in this Agreement. The Origination Fee shall be paid to Bank on of the Closing Date.

"Permitted Encumbrances" has the meaning assigned to such term in the Deed of Trust.

"Person" means any individual, firm, corporation, limited liability company, association, partnership, joint venture, trust, other entity, unincorporated organization or Governmental Authority.

"Principal Balance" means the aggregate unpaid balance of all Advances of the Loan and all other principal indebtedness, if any, under the Note at the time in question.

"Property" means the Land, the Improvements and all other property, real and personal, now or hereafter subject to a Right, or Lien in favor of Bank, as any of the foregoing are described herein, in the Deed of Trust or in any of the other Loan Documents.

"Rights" means any rights, remedies, powers, and privileges exercisable by Bank under any of the Loan Documents, in each case whether at law, in equity, or otherwise.

"Security Agreement" means the Security Agreement of even date herewith, from Borrower for the benefit of Bank covering the collateral therein described.

"Subordinated Debt" means all Debt of Borrower, whether now existing or hereafter incurred, which is subordinate in right of payment to the Indebtedness, pursuant to a written agreement executed by such parties required by, and in form and content satisfactory to, Bank.

"Subsidiary(ies)" means any entity more than fifty percent (50%) of whose ownership, equity or voting interest now or hereafter is owned directly or indirectly by Borrower or any Subsidiary or may be voted by Borrower or any Subsidiary.

"Survey" means a survey of the Land consisting of a plat and field notes, prepared by a licensed surveyor acceptable to Bank and the Title Company which survey shall: (a) reflect the actual dimensions of the Land, the gross and net area of the Land, the location of any easements, rights-of-way, setback lines, encroachments or overlaps thereof or thereover and the outside boundary lines of any Improvements located thereon; (b) identify by recording reference any easements, setback lines or other matters referred to in the title commitment issued by the Title Company; (c) include the surveyor's registration number and seal and the date of the Survey; (d) include a surveyor's certificate acceptable to Bank within its reasonable discretion; (e) reflect that the Land has access to and from a publicly dedicated street, roadway or highway; (f) be sufficient to cause the Title Company to delete the "survey exception" in Schedule B of the Title Policy to the extent permitted by the rules of the State Board of Insurance; and (g) reflect the area, including the boundaries thereof, within the Land that has been designated by the Federal Insurance Administration, the Army Corps of Engineers or any other Governmental Authority as being subject to special or increased flood hazards.

"Taxes" means all taxes (including withholding), assessments, fees, levies, impositions, imposts, duties, deductions, withholdings, or other charges of any nature whatsoever from time to time or

LOAN AGREEMENT                                                                                    PAGE 5
L:\50423\251\Loan Agreement.doc

**App. 005**

at any time imposed by any laws or by any Governmental Authority, excluding state and local sales and use taxes.

"Title Company" means the title company or title companies specified in **Exhibit "C"**.

"Title Policy" means a loan policy (or policies) of title insurance, and any reinsurance agreement (or agreements) issued by the Title Company in accordance with **Exhibit "C"**.

1.2     Headings. The headings, captions, and arrangements used in any of the Loan Documents are, unless specified otherwise, for convenience only and shall not be deemed to limit, amplify, or modify the terms of the Loan Documents, nor to affect the meaning thereof.

1.3     Number and Gender of Words. Whenever herein the singular number is used, the same shall include the plural where appropriate, and words of any gender shall include each other gender where appropriate. Reference herein to Borrower shall mean, jointly and severally, each Person comprising same.

1.4     Articles, Sections and Exhibits. All references herein to "Articles" and "Sections" are, unless specified otherwise, references to articles and sections of this Agreement. All references herein to an "Exhibit" or "Schedule" are references to exhibits or schedules attached hereto, all of which are made a part hereof for all purposes, the same as if set forth herein verbatim, it being understood that if any exhibit or schedule attached hereto, which is to be executed and delivered, contains blanks, the same shall be completed correctly and in accordance with the terms and provisions contained and as contemplated herein prior to or at the time of the execution and delivery thereof. The words "herein," "hereof," "hereunder" and other similar compounds of the word "here" when used in this Agreement shall refer to the entire Agreement and not to any particular provision or section; and the word "including," as used herein, shall mean "including, without limitation."

## ARTICLE TWO

## COMMITMENT TO LEND

2.1     *Commitment to Lend*. Subject to and upon the terms, covenants, and conditions hereof, Bank hereby agrees to lend to Borrower an aggregate sum (the "Committed Sum") of the lesser of (a) $2,584,249.00; or (b) seventy percent (70%) of the appraised value of the Property based upon the appraisal described in **Exhibit "B"** attached hereto. Bank may, in Bank's sole discretion, disburse Loan proceeds by journal entry to pay interest and financing costs and disburse Loan proceeds directly to third parties to pay costs or expenses required to be paid by Borrower pursuant to this Agreement. All disbursements of Loan proceeds by Bank by journal entry to pay interest or financing costs, and all disbursements of Loan proceeds directly by Bank to third parties to pay costs or expenses required to be paid by Borrower pursuant to this Agreement, shall constitute Advances to Borrower. Any Loan amount(s) repaid may not be reborrowed.

2.2     *Interest*. Interest shall accrue on the Loan at the rate specified in the Note shall be computed on the Principal Balance which exists from time to time and shall be computed with respect to each Advance only from the date of the Advance.

2.3     *Conditions to Closing*. As conditions precedent to the Advance of the proceeds of the Loan, Borrower must satisfy the conditions required hereby and Bank must have received and approved all of the documents, certificates and other items specified in **Exhibit "B"**, together with such other documents, certificates and items as Bank may require from time to time. In addition, Borrower shall

LOAN AGREEMENT                                                                                                    PAGE 6
I:\50423\251\Loan Agreement.doc

**App. 006**

provide to Bank evidence which is reasonably satisfactory to Bank that Borrower has contributed the required Borrower's Equity towards the acquisition of the Property. Bank, at Bank's option, may waive any of the preceding or elect not to require any of the preceding. All conditions precedent to the obligation of Bank to advance the proceeds of the Loan are imposed solely for the benefit of Bank.

## ARTICLE THREE

## REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants to Bank as follows:

3.1     *Financial Statements*. The Financial Statements are true, correct and complete as of the dates specified therein and fully and accurately present the financial condition of Borrower as of the dates specified therein. Since the date of the Financial Statements most recently submitted to Bank by Borrower, no material adverse change has occurred in the financial condition of Borrower nor, except as heretofore disclosed in writing to Bank, has Borrower incurred any material liability, direct or indirect, fixed or contingent. Borrower is solvent. Neither Borrower nor any Obligated Party has any material Debt, other contingent liabilities, liabilities for taxes, any long-term lease obligations or unusual forward or long-term commitments, or any transaction or obligation in respect of derivatives, that are not reflected in the most recent financial statements referred to in this paragraph.

3.2     *Suits, Actions, Etc.* There are no actions, suits or proceedings pending or to the best of Borrower's knowledge threatened before or by any Governmental Authority against or affecting Borrower or the Property, or involving the validity, enforceability or priority of any of the Loan Documents except as has been disclosed in writing to Bank. Borrower is not, and the execution and delivery of the Loan Documents and consummation of the transactions contemplated hereby and the performance or satisfaction of any of the terms or conditions hereof and of the other Loan Documents will not cause Borrower to be, in violation of or in default with respect to any Legal Requirement or in default (or provide cause for acceleration of indebtedness) under any agreement or restriction to which Borrower is a party or by which Borrower or the Property may be bound.

3.3     *Status of Borrower; Valid and Binding Obligations*. If Borrower is a corporation, limited liability company, partnership or other entity, Borrower is and shall until the Indebtedness is fully discharged continue to (a) be duly organized and validly existing and in good standing under the laws of the state of its organization, and in good standing under Texas law, (b) be in compliance with all conditions prerequisite to its lawfully doing business in Texas, and (c) possess all power and authority necessary to own and operate the Property. All of the Loan Documents, upon execution and delivery will constitute valid and binding obligations of Borrower, enforceable against Borrower in accordance with their terms except as the enforcement thereof may be limited by Debtor Relief Laws.

3.4     *Title to the Property*. Borrower holds good and indefeasible fee simple title to the Land and all Improvements thereon, free and clear of any Liens and subject only to the Permitted Encumbrances.

3.5     *Purpose of Loan*. The proceeds of the Loan will be used solely for the purposes specified in the Approved Purpose.

3.6     *No Failure To Disclose*. No representation or warranty made by Borrower or any other Obligated Party under this Agreement or any other Loan Document and no document, instrument or certificate furnished, to be furnished or caused or to be furnished by Borrower or any other Obligated Party to Bank in anticipation of or pursuant to this Agreement or any other Loan Document contains or

**App. 007**

will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained therein not misleading.

3.7      *Taxes*. All federal, state, foreign, and other Tax returns of Borrower required to be filed have been filed, all federal, state, foreign, and other Taxes imposed upon Borrower which are due and payable have been paid, and no material amounts of Taxes not reflected on such returns are payable by Borrower, other than Taxes being contested in good faith by appropriate legal proceedings.

3.8      *Consents, Approvals and Filings, Etc.* Except as have been previously obtained or as otherwise expressly provided in this Agreement, no authorization, license, or formal exemption from, any Governmental Authority or other Person, is required in connection with the execution and performance by Borrower or any other Obligated Party of any Loan Document.

3.9      *Contracts, Agreements and Leases*. To the best of Borrower's knowledge, Borrower is not in default (nor has any event occurred which, with the passing of time or the giving of notice, or both, would cause a default) under any material contract or Lease to which it is a party or by which it or any of its properties or assets are bound, where such default would have a Material Adverse Effect.

3.10      *Relationship*. The relationship between Borrower and Bank is solely that of borrower and lender, and Bank has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between Borrower and Bank to be other than that of borrower and lender.

3.11      *No Assignment*. Borrower has made no previous assignment of its right to or interest in the Leases or the rents due thereunder.

3.12      *Compliance with Legal Requirements*. The Improvements comply and will comply with all applicable Legal Requirements, and the use to which Borrower is using and intends to use the Land and Improvements complies with and will comply with such Legal Requirements. Borrower has obtained or applied for all consents or approvals necessary to comply with all Legal Requirements.

3.13      *Disclaimer of Permanent Financing*. Borrower acknowledges and agrees that Bank has not made any commitments, either express or implied, to extend the term of the Loan past its stated maturity date or to provide Borrower with any permanent financing, except to the extent, if any, that the same is expressly stated in this Agreement or in the other Loan Documents.

**ARTICLE FOUR**

**AFFIRMATIVE COVENANTS**

Borrower covenants and agrees with Bank that, so long as any of the Indebtedness or Obligations remain outstanding, or Bank has any further obligation under any of the Loan Documents:

4.1      *Hazard and Other Insurance*.

(a)      Borrower shall obtain and maintain the insurance coverage required by **Exhibit "D"** and any other Loan Documents and shall furnish to Bank promptly upon request a certificate or certificates from the respective insurer(s) setting forth the nature and extent of all such insurance maintained by Borrower and, a certified copy of the original policy, including all endorsements thereto, and a satisfactory certificate of insurance with premiums fully paid. Any such insurance may be evidenced by blanket insurance policies covering the Property and other property and assets, provided

LOAN AGREEMENT                                          PAGE 8
L:\50423\251\Loan Agreement.doc

that each policy otherwise complies with the requirements of the Loan Documents and specifies the amount (if less than all) of the total coverage that is allocated to the Property. Borrower shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Bank is included thereon under a standard mortgagee clause (without contribution) acceptable to Bank, with loss payable as provided herein. All insurance shall be primary without right of contribution from any other insurance that may be carried by Borrower or Bank and all of the provisions thereof shall operate in the manner as if there were a separate policy covering each insured. Borrower shall immediately notify Bank whenever any such separate insurance is taken out and shall promptly deliver to Bank any policy or certificate of such separate insurance.

(b)     Not later than ten (10) days before the expiration date of any such insurance policy, Borrower shall deliver to Bank a binder or certificate of the insurer evidencing the renewal or replacement of that policy, with premiums fully paid together with (in the case of a renewal) a copy of all endorsements to the policy affecting the Property and not previously delivered to Bank, or (in the case of a replacement) an original or certified copy of the replacement policy. Borrower shall pay all premiums on policies required hereunder as they become due and payable and promptly deliver to Bank evidence satisfactory to Bank, in Bank's sole discretion, of the timely payment thereof. Borrower shall at all times comply with the requirements of the insurance policies required hereunder and of the issuers of such policies and of any board of fire underwriters or similar body as applicable to or affecting the Property.

(c)     If Borrower fails to obtain and/or maintain the insurance required under the Loan Documents, (i) Borrower shall indemnify and hold Bank harmless from and against any damage, loss, liability, claim, cost and expense resulting from all risks that would have been covered by the required insurance if so maintained, (ii) if any loss occurs, Bank shall nevertheless be entitled to the benefit of all insurance covering the loss and held by or for Borrower, to the same extent as if it had been made payable to Bank, and (iii) Bank has the Right (but not the obligation) to obtain such insurance at Borrower's expense, which may at Bank's election be coverage for Bank's interest in the Property only (excluding Borrower's equity in the Property, if any), or such other amount as Bank may determine in Bank's sole discretion, and the costs and expenses so expended by Bank shall be due and payable by Borrower on demand, as part of the Indebtedness, even if in excess of the amount set forth in Section 2.1, and secured by the Loan Documents. **TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) BORROWER IS REQUIRED TO (i) KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT SPECIFIED HEREIN; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER OR OTHERWISE AS PROVIDED HEREIN; AND (iii) NAME BANK AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS AS PROVIDED HEREIN; (B) SUBJECT TO THE PROVISIONS HEREOF, BORROWER MUST, IF REQUIRED BY BANK, DELIVER TO BANK A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) SUBJECT TO THE PROVISIONS HEREOF, IF BORROWER FAILS TO MEET ANY REQUIREMENT LISTED IN THE FOREGOING SUBPARTS (A) OR (B), BANK MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.**

(d)     Upon any foreclosure of the Deed of Trust or transfer of title to the Property in lieu of foreclosure, all of Borrower's Right, title and interest in and to the insurance policies referred to in this Section (including unearned premiums) and all proceeds payable thereunder shall thereupon vest in the purchaser at foreclosure or other such transferee to the extent permissible under such policies.

(e)     Bank has the Right (but not the obligation) to  make proof of loss for, settle and adjust any claim under, and receive the proceeds of, all insurance for loss of or damage to the Property,

LOAN AGREEMENT                                                                                    PAGE 9
L:\50423\251\Loan Agreement.doc

**App. 009**

and the costs and expenses (including reasonable attorneys' fees), appraisal costs, and consultant fees incurred by Bank in the adjustment and collection of insurance proceeds shall be due and payable by Borrower on demand, as part of the Indebtedness, even if in excess of the amount set forth in Section 2.1, and secured by the Loan Documents. Bank shall not be, under any circumstances, liable or responsible for failure to collect or exercise diligence in the collection of any of such proceeds or for the obtaining, maintaining or adequacy of any insurance or for failure to see to the proper application of any amount paid over to Borrower. Provided there is no Event of Default hereunder, Borrower will have full authority to exercise the Right granted under this Section, subject to the consent of Bank, not to be unreasonably withheld.

(f)    Borrower shall take all action necessary or desirable or requested by Bank to obtain the benefit of any insurance proceeds lawfully or equitably payable to Borrower or Bank in connection with any loss of or damage to the Property and shall apply such insurance proceeds to the payment of the Indebtedness, unless otherwise consented to in writing by Bank. The unpaid portion of the Indebtedness shall remain in full force and effect and the payment thereof shall not be excused.

4.2    *Compliance with Legal Requirements*. Borrower shall timely comply with all Legal Requirements and shall deliver evidence thereof to Bank, if requested by Bank. Borrower shall assume full responsibility for the compliance of the Property with all Legal Requirements, notwithstanding any approvals by Bank. Bank shall have no obligation or responsibility for any matter incident to the Property.

4.3    *Utilities; Access*. Borrower represents that (a) all utility services necessary for the operation of the Improvements for their intended purposes are available for connection to the Improvements, and (b) either all roads necessary for access to and from the Property have been completed or the necessary rights-of-way therefor have been acquired by the appropriate Governmental Authority or dedicated to the public use and accepted by such Governmental Authority.

4.4    *Correction of Defects*. Borrower shall correct or cause to be corrected (a) any material defect in the Improvements, (b) any material departure of the Improvements from the Legal Requirements or the requirements of any Lease, if applicable, or (c) any encroachment by any part of the Improvements or any structure located on the Land on any building line, easement, property line, or restricted area.

4.5    *Notices by Governmental Authority; Fire and Casualty Losses, Etc.* Borrower shall timely comply with and promptly furnish to Bank true and complete copies of any notice or claim by any Governmental Authority pertaining to the Property. Borrower shall promptly notify Bank of any fire or other casualty or any notice of taking or eminent domain action or proceeding affecting the Property.

4.6    *Costs and Expenses*. Borrower shall pay when due all costs and expenses required to be paid by Borrower under this Agreement and the other Loan Documents.

4.7    *Additional Documents*. Borrower shall execute and deliver to Bank, from time to time as required by Bank, such other agreements, instruments and documents as shall reasonably be necessary or requested by Bank to provide the Rights and remedies to Bank granted or provided for by the Loan Documents.

4.8    *Financial Statements; Inspection of Books and Records; Other Reports*. Borrower shall, unless Bank otherwise consents in writing, furnish to Bank or cause to be furnished to Bank the following:

LOAN AGREEMENT                                                                 PAGE 10
L:\50423\251\Loan Agreement.doc

**App. 010**

(a)    Within sixty (60) days after the last day of each fiscal year of Borrower, beginning with the end of Borrower's next fiscal year, internally prepared Financial Statements showing the financial position and results of operations of Borrower as of, and for the year ended on, such last day, together with the certificate of the chief financial officer of Borrower that all of such Financial Statements present fairly the financial position of Borrower as of the last day of such fiscal year and the results of the operations and the cash flow of Borrower for the fiscal year then ended in accordance with the cash basis of accounting. Each such Financial Statement shall contain at least a balance sheet of Borrower as at the end of such fiscal year and statements of income, cash flow, retained earnings, and contingent liabilities. In addition, Borrower shall provide to Bank a true, correct and complete copy of Borrower's federal income tax return and a true, correct and complete copy of each amended tax return for each fiscal year of Borrower from and after the date hereof, within fifteen (15) days after same has been filed with the Internal Revenue Service (provided, however, if Borrower shall have duly filed for an extension of the filing deadline for such tax return, Borrower shall promptly furnish evidence thereof to Bank);

(b)    If Guarantor is a natural person, on an annual basis, within thirteen (13) months of the date of the then most recent Financial Statement provided to Bank, Financial Statements showing the financial position of Guarantor as of the most recent calendar year, together with Guarantor's signed statement that all of such Financial Statements present fairly the financial position of Guarantor as of the last day of such calendar year. Each such Financial Statement shall be on Bank's standard Financial Statement form (or an acceptable alternate) and contain at least a balance sheet of Guarantor as at the end of such calendar year and related statements of cash flow and contingent liabilities. In addition, Borrower shall cause Guarantor to provide to Bank a true, correct and complete copy of Guarantor's federal income tax return and a true, correct and complete copy of each amended tax return for each fiscal year of Guarantor from and after the date hereof within fifteen (15) days after same has been filed with the Internal Revenue Service (provided, however, if Guarantor shall have duly filed for an extension of the deadline for such tax return, Guarantor shall promptly furnish evidence thereof to Bank). Each federal income tax return shall include all schedules and addenda thereto and in addition shall include copies of all Forms K-1 and Forms W-2 issued to Guarantor;

(c)    On a semi-annual basis, within forty-five (45) days of the end of each semi-annual period, commencing as of the end of the next semi-annual period, for the Borrower, an operating statement, a summary report of semi-annual collections, the current semi-annual period's budget, year to date activity, year to date budget, a statement of contingent liabilities, in form and substance acceptable to Lender, and all other matters as Lender may reasonably request;

(d)    Within forty-five (45) days after the end of each semi-annual period, or more often upon request of Bank, Borrower shall provide to Bank a written statement (rent roll) certified as true, correct, and complete by Borrower, containing the following information for each tenant of the Property: tenant name; suite or unit number; commencement and expiration date; base rent payable by such tenant; whether the tenant is in default under the subject lease, including the nature of any such default, as applicable; and other pertinent information which Bank may reasonably request; and

(e)    Additional Financial Statements, financial information and other information as Bank may reasonably request from time to time.

4.9    *Financial Information.*    All representations and warranties set forth in the Loan Documents with respect to any Financial Statements or other financial information concerning Borrower, any Obligated Party, the Property, or otherwise, shall apply to all such information delivered to Bank by Borrower, any Obligated Party, or any Person purporting to be an officer, director, employee, attorney, agent or other representative thereof, regardless of the method of transmission to Bank and whether or not signed by Borrower, such Obligated Party, or such Person.

LOAN AGREEMENT                                                        PAGE 11
I:\50423\251\Loan Agreement.doc

**App. 011**

4.10    *Compliance with Leases and Material Contracts*. Subject to the provisions contained in the Deed of Trust, Borrower shall comply with all terms and conditions of the Leases, if any, and all other lease or rental agreements covering any premises or property (real or personal) wherein any of the Property is or may be located, and any Legal Requirement, except where the failure to so comply could not cause a Material Adverse Effect.

4.11    *No Liability of Bank*. Bank shall have no liability, obligation or responsibility with respect to the Improvements or any other Property. Bank shall not be obligated to inspect the Property and any inspection conducted by Bank is solely for the benefit of Bank and does not give rise to any duty of Bank to report or relay the results of any such inspections to Borrower or otherwise create any liability of Bank to Borrower. Bank shall not be liable for any failure to protect or insure the Improvements, or for the performance of any obligation of Borrower or any other Obligated Party. Nothing herein or in any other Loan Document, nor any other action taken by Bank, including, without limitation, any Advance made by Bank or acceptance of any document or instrument by Bank, shall be construed as a representation or warranty, express or implied, to any party by Bank. Further, Bank shall not have, and has not assumed, and by its execution and delivery of this Agreement hereby expressly disclaims any liability or responsibility for the payment or performance of any indebtedness or obligations of Borrower, and no term or condition hereof, or of any of the Loan Documents, shall be construed otherwise. Bank has no liability or obligation in connection with the Property and Loan Documents except to disburse Loan proceeds as herein agreed.

4.12    *Defense of Actions*. Bank may (but shall not be obligated to) commence, appear in or defend any action or proceeding purporting to affect the Loan, the Property or the respective Rights and obligations of Bank or Borrower pursuant to this Agreement. Bank may (but shall not be obligated to) pay all necessary expenses, including reasonable attorney's fees and expenses incurred in connection with any such proceedings or actions, which Borrower agrees to repay to Bank upon demand.

4.13    *Restrictions and Annexation*. Borrower shall not impose any restrictive covenants or encumbrances upon the Property, execute or file any subdivision plat affecting the Property or consent to the annexation of the Property to any city without the prior written consent of Bank.

4.14    *Maintenance of Entity Existence, Assets and Business; Continuance of Present Business*. Borrower shall preserve and maintain its existence and all of its leases, licenses, permits, franchises, qualifications, and rights that are necessary or desirable in the ordinary conduct of its business. Borrower will conduct its business in an orderly and efficient manner in accordance with good business practices. Borrower shall keep or cause to be kept all of Borrower's assets which are useful and necessary in their respective businesses in good repair, working order and condition, and will make or cause to be made all necessary repairs, renewals and replacements as may be reasonably required. Borrower shall carry on and conduct its business in substantially the same fields as such business is now and has heretofore been carried on.

4.15    *Tax Receipts*. To the extent applicable, Borrower shall furnish to Bank receipts or tax statements marked "paid" to evidence the payment of all Taxes levied on the Property before the date on which such taxes become delinquent.

4.16    *Incumbency*. Borrower shall from time to time, at the request of Bank, certify to Bank the names, signatures and positions of all persons authorized to execute and deliver any of the Loan Documents.

LOAN AGREEMENT                                                                                    PAGE 12
L:\50423\251\Loan Agreement.doc

**App. 012**

4.17    *Depository Relationship*.  To induce Bank to establish the interest rates provided for in the Note, and if and to the extent permitted by applicable laws, Borrower shall use and maintain Bank as its principal depository bank, including for the maintenance of business, cash management, operating and administrative deposit accounts.

**ARTICLE FIVE**

**NEGATIVE COVENANTS**

Borrower covenants and agrees that, so long as any of the Indebtedness or Obligations remain outstanding, or Bank has any commitment to make Advances hereunder or any other obligation under the Loan Documents:

5.1    *Debt*.  Borrower will not, directly or indirectly, incur, create, assume, or permit to exist, any Debt, except:

    (a)    Debt to Bank;

    (b)    Debt which exists on the Closing Date which has been disclosed to Bank in writing prior to the Closing Date;

    (c)    Trade Debt incurred in the ordinary course of business;

    (d)    Subordinated Debt; and

    (e)    Purchase money Debt and other unsecured Debt not to exceed $100,000.00 in the aggregate in any calendar year.

5.2    *Contingent Liabilities*.  Borrower will not, directly or indirectly, assume, guarantee, endorse, contingently agree to purchase or otherwise become liable upon the obligation of any Person (other than Borrower) except by the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

5.3    *Limitation on Liens*.  Borrower will not, directly or indirectly, incur, create, assume, or permit to exist any Lien upon the Property or any of its property, assets, or revenues, whether now owned or hereafter acquired, except:

    (a)    The Permitted Encumbrances;

    (b)    Encumbrances consisting of minor easements, zoning restrictions, or other restrictions on the use of real property that do not (individually or in the aggregate) materially affect the value of the assets encumbered thereby or materially impair the ability of Borrower to use such assets in their respective businesses, and none of which is violated in any material respect by existing or proposed structures or land use;

    (c)    Liens for taxes, assessments, or other governmental charges which are being contested in good faith and for which adequate reserves have been established;

    (d)    Liens resulting from good faith deposits to secure payments of workmen's compensation or other social security programs or to secure the performance of tenders, statutory

LOAN AGREEMENT                                                      PAGE 13
L:\50423\251\Loan Agreement.doc

**App. 013**

obligations, surety and appeal bonds, bids, or contracts (other than for payment of Debt), or Leases made in the ordinary course of business; and

(e)    Purchase money Liens on specific personal property to secure Debt used to acquire such property to the extent permitted in Section 5.1.

5.4    *Mergers, Etc.*  Borrower will not, directly or indirectly, (a) become a party to a merger or consolidation, or (b) purchase or otherwise acquire all or any part of the assets of any Person or any shares, or other evidence of beneficial ownership of any Person, or (c)wind-up, dissolve, or liquidate.

5.5    *Restricted Payments.*  Upon the occurrence of an Event of Default hereunder, Borrower will not, directly or indirectly, declare or pay any dividends or make any other payment or distribution (in cash, property, or obligations) on account of its equity interests, or redeem, purchase, retire, or otherwise acquire any of its equity interests, or set apart any money for a sinking or other analogous fund for any dividend or other distribution on its equity interests or for any redemption, purchase, retirement, or other acquisition of any of its equity interests, or incur any obligation (contingent or otherwise) to do any of the foregoing.  Notwithstanding the foregoing, Borrower may, with respect to any calendar year, distribute to the owners of its equity interests a cash distribution equal to the federal income tax attributable to the income arising during such year as a result of such ownership, provided that no Event of Default exists at the time of, or would result after giving effect to, any such distribution.

5.6    *Loans and Investments.*  Borrower will not, directly or indirectly, make any advance, loan, extension of credit, or capital contribution to or investment in, or purchase, any stock, bonds, notes, debentures, or other securities of, any Person, except:

(a)    readily marketable direct obligations of the United States of America or any agency thereof with maturities of one year or less from the date of acquisition; and

(b)    fully insured depository accounts maintained at a commercial bank operating in the United States of America.

5.7    *Limitation on Issuance of Equity.*  Borrower will not, directly or indirectly, at any time issue, sell, assign, or otherwise dispose of (a) any of its equity interests, (b) any securities exchangeable for or convertible into or carrying any rights to acquire any of its equity interests, or (c) any option, warrant, or other right to acquire any of its equity interests.

5.8    *Transactions With Affiliates.*  Borrower will not, directly or indirectly, enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service or the payment of any management, advisory or similar fees, with any Affiliate of Borrower, except in the ordinary course of and pursuant to the reasonable requirements of Borrower's business, or pursuant to a transaction which is otherwise expressly permitted under this Agreement and upon fair and reasonable terms no less favorable to Borrower than would be obtained in a comparable arm's-length transaction with a Person not an Affiliate of Borrower.

5.9    *Nature of Business.*  Borrower will not engage in any business other than the businesses in which it is engaged as of the Closing Date.

5.10    *No Negative Pledge.*  Borrower will not enter into or permit to exist any arrangement or agreement, other than pursuant to this Agreement or any Loan Document, which directly or indirectly prohibits or limits Borrower from creating or incurring a Lien on any of its assets, whether now owned or hereafter acquired.

**App. 014**

5.11    *Judgments*.  Borrower will not allow any judgment for the payment of money in excess of $25,000.00 rendered against it to remain undischarged or unsuperseded for a period of thirty (30) days during which execution shall not be effectively stayed.

## ARTICLE SIX

## EVENT OF DEFAULT

The term "Event of Default," as used herein, shall include the occurrence of any one or more of the following events:

6.1    *Payment of Indebtedness*.  The failure of Borrower to pay the Indebtedness, or any part thereof, or any sum of money in accordance with the Loan Documents, within five (5) business days after notice is given to Borrower, on the date on which the payment is due.

6.2    *Covenants*.  The failure of Borrower or any Obligated Party punctually and properly to perform, observe or comply with (a) any covenant contained in Article Five or (b) any of the Obligations or any other covenant, agreement, undertaking or condition contained in this Agreement or any other Loan Document (other than covenants to pay any sum of money in accordance with the Loan Documents), which failure is not otherwise specifically addressed in this Section, and such failure continues for a period of thirty (30) days after the date Bank sends notice to Borrower of such failure; provided, however, that if the default is not reasonably able to be cured within thirty (30) days, Borrower shall have a reasonable period to make such cure not to exceed one hundred twenty (120) months, provided that Borrower is diligently pursuing such cure and the cure is completed as soon as reasonably possible.

6.3    *Voluntary Debtor Relief*.  Borrower or any Obligated Party shall (a) execute an assignment for the benefit of creditors or take any action in furtherance thereof, or be or become adjudicated as bankrupt or insolvent, or (b) generally not, or be unable to, or admit in writing its inability to pay, or fail to pay, its debts generally as they become due, or (c) file a voluntary petition, or commence any other case, proceeding or other action pursuant to, or voluntarily seek the benefit or benefits of or relief under, any Debtor Relief Law or take any action in furtherance thereof, or (d) apply for or seek, acquiesce in, consent to or suffer the appointment of a receiver, trustee, custodian, liquidator or other similar official of it or of the Property or any part thereof or of any significant portion of its other property, or (e) institute or voluntarily be or become a party to any other proceeding seeking to effect a suspension or having the effect of suspending any of the Rights of Bank granted or referred to in the Loan Documents or of the trustee under the Deed of Trust or take any action in furtherance thereof or (f) file an answer admitting the material allegations of or consenting to, or default in, a petition filed against it in any liquidation, conservatorship, bankruptcy, reorganization, rearrangement, or other insolvency proceedings.

6.4    *Involuntary Proceedings*.  The filing of a petition, case, proceeding or other action against Borrower or any Obligated Party as a debtor under any Debtor Relief Law or seeking appointment of a receiver, trustee, custodian or liquidator of it or of the Property or any part thereof or of any significant portion of its other property or seeking to effect a suspension or having the effect of suspending any of the Rights of Bank granted or referred to in the Loan Documents or of the trustee under the Deed of Trust and (a) Borrower or any Obligated Party admits, acquiesces in or fails to contest diligently the material allegations thereof, or (b) the petition, case, proceeding or other action results in entry of an order for relief or order granting the relief sought against it, or (c) the petition, case,

LOAN AGREEMENT                                                      PAGE 15
L:\50423\251\Loan Agreement.doc

**App. 015**

proceeding or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or sixty (60) days next following the date of its filing.

6.5     *Other Debt*.  Borrower shall default in the due and punctual payment of the principal of or the interest on any Debt or other mortgage, deed of trust, security agreement or other security instrument (other than the Indebtedness) with Bank, secured or unsecured, or in the due performance or observance of any covenant or condition of any indenture or other agreement executed in connection therewith, and such default shall have continued beyond any period of grace or cure provided with respect thereto.

6.6     *Levy*.  The levy against the Property or any part thereof, or against any significant portion of Borrower's or any Obligated Party's other property, of any execution, garnishment, attachment, sequestration or other writ or similar proceeding which is not permanently dismissed or discharged within sixty (60) days after the levy.

6.7     *Misrepresentation*.  Any statement, representation or warranty heretofore or hereafter made by Borrower or any Obligated Party in this Agreement or any other Loan Document or in any other document or any statement or representation made in any certificate, report, or opinion delivered to Bank pursuant to or in connection with the Loan Documents, is false, misleading, or erroneous in any material respect at the time made.

6.8     *Abandonment*.  Abandonment of any portion of the Land or Improvements.

6.9     *Judgment*.  Borrower or any Obligated Party shall allow any judgment for the payment of money in excess of $25,000.00 rendered against it, him or her, as applicable, to remain undischarged or unsuperseded for a period of thirty (30) days during which execution shall not be effectively stayed.

6.10    *Dissolution or Death*.  The dissolution, liquidation, termination or forfeiture of the Right to do business of Borrower or any Obligated Party for any reason whatsoever or the death or incapacity of an individual Borrower or Obligated Party.

6.11    *Non-Compliance with Legal Requirements*.  A determination by Bank of any failure of any part of the Improvements to comply with any Legal Requirement, or the requirements of any Lease, if applicable, in any material respect.

6.12    *Fraudulent Transfer*.  Borrower shall have (i) concealed, removed, or permitted to be concealed or removed any part of its property with the intent to hinder, delay or defraud any of its creditors, or (ii) made or suffered a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or (iii) suffered or permitted while insolvent (under any applicable definition of the term) any creditor to obtain a Lien upon any of its property through legal proceedings or distraint which Lien is not permanently vacated within thirty (30) days from the date thereof.

6.13    *Destruction or Condemnation of Improvements*.  If any portion of the Improvements is demolished, destroyed, or substantially damaged, or any portion of the Land or Improvements is taken or threatened to be taken by eminent domain, so that in any event, in Bank's sole judgment, the same cannot be restored or rebuilt with available funds to the condition existing immediately prior to such demolition, destruction, or damage within a reasonable period of time.

6.14    *Defaults on Other Debt or Agreements*.  Borrower shall fail to make any payment when due on or in respect of any Debt owing to any Person (other than Bank) or to perform, observe or comply

LOAN AGREEMENT                                                                                        PAGE 16
L:\50423\251\Loan Agreement.doc

**App. 016**

with any covenant, agreement or other obligation to be performed, observed or complied with by Borrower in any agreement between Borrower and any other Person (subject to any grace and/or cure periods provided therein), which failure could reasonably be expected to have a material adverse effect on the business, operations, condition (financial or otherwise), or assets of Borrower, the ability of Borrower to pay and perform any of the Indebtedness or Obligations under any Loan Document to which it is a party or by which it is bound or the enforceability of any Loan Document.

6.15    *Other Agreements with Bank*.  A default or event of default shall occur and be continuing after the expiration of any applicable grace, notice, and cure periods under any other written agreement (which is not a Loan Document) between Bank and Borrower or any other Obligated Party.

6.16    *Tax Lien Loan*.  (a) Borrower shall obtain a loan to pay all or any portion of the ad valorem taxes accrued and/or accruing against the Property or any portion thereof (a "Tax Lien Loan"), (b) Borrower shall execute a deed of trust or other lien instrument encumbering the Property or any portion thereof to secure a Tax Lien Loan, or (c) any taxing authority shall assign its lien securing the payment of ad valorem taxes accrued and/or accruing against the Property or any portion thereof to a third party to secure or collateralize a Tax Lien Loan.

6.17    *Change in Ownership*.  Any of the record or beneficial ownership of Borrower shall have been transferred, assigned or hypothecated to any Person, when compared to such ownership as of the Closing Date.

6.18    *Section 2.4*.  Borrower commits the Event of Default set forth in Section 2.4 in this Agreement.

6.19    *Application to Guarantors*.  The occurrence of any event referred to in Sections 6.5, 6.9, 6.12, 6.14 or 6.17 above with respect to any Guarantor (as if such Guarantor were "Borrower" in such Sections).

### ARTICLE SEVEN

### CERTAIN RIGHTS AND REMEDIES OF BANK

7.1    *Rights Upon Event of Default*.  If any Event of Default shall occur and be continuing or upon the final maturity of the Note, Bank may, without notice, terminate its commitment to Advance and declare the Indebtedness or any party thereof to be immediately due and payable, and the same shall thereupon become immediately due and payable, without notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, protest, or other formalities of any kind, all of which are hereby expressly waived by Borrower; provided, however, that upon the occurrence of an Event of Default under Sections 6.3 or 6.4, Bank's commitment to Advance shall automatically terminate, and the Indebtedness shall become immediately due and payable without notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, protest, or other formalities of any kind, all of which are hereby expressly waived by Borrower.  If any Event of Default shall occur and be continuing, Bank may exercise all Rights and remedies available to it in law or in equity, under the Loan Documents, or otherwise.

7.2    *Performance by Bank*.  Should any covenant, duty, or agreement of Borrower fail to be performed in accordance with the terms of the Loan Documents, Bank may, at its option, perform, or attempt to perform, such covenant, duty or agreement on behalf of Borrower.  In such event, Borrower shall pay to Bank on demand any amount expended by Bank in such performance or attempted performance, together with interest thereon at the Maximum Lawful Rate from the date of such

**App. 017**

expenditure by Bank until paid. Notwithstanding the foregoing, it is expressly understood that Bank does not assume and shall never have any liability or responsibility for the performance of any duties of Borrower hereunder. Without limiting the generality of the foregoing, upon the occurrence of an Event of Default, Bank shall have the Right, in addition to any other Right of Bank, but not the obligation, in its own name or in the name of Borrower, to enter into possession of the Property; to perform all work necessary to satisfy the requirements of any Lease, if applicable; and to employ watchmen and other safeguards to protect the Property. Borrower hereby appoints Bank as the attorney-in-fact of Borrower with full power of substitution, and in the name of Borrower if Bank elects to do so, upon the occurrence of an Event of Default, to (a) use such sums as are necessary, including any proceeds of the Loan to perform all work necessary to satisfy the Legal Requirements and the requirements of any Lease, if applicable, (b) endorse the name of Borrower on any checks or drafts representing proceeds of the insurance policies required hereunder, or other checks or instruments payable to Borrower with respect to the Property, (c) do every act with respect to the Property which Borrower may do, and (d) prosecute or defend any action or proceeding incident to the Property. The power-of-attorney granted hereby is a power coupled with an interest, is irrevocable and shall not terminate upon disability of the principal. Bank shall have no obligation to undertake any of the foregoing actions, and if Bank should do so, it shall have no liability to Borrower for the sufficiency or adequacy of any such actions taken by Bank.

7.3    *Bank Not in Control.*    None of the covenants or other provisions contained in this Agreement shall, or shall be deemed to, give Bank the Right or power to exercise control over the affairs and/or management of Borrower, the power of Bank being limited to the Rights to exercise the remedies referred to in the other Sections of this Article; provided that if Bank becomes the owner of any stock of any entity, whether through foreclosure or otherwise, Bank shall be entitled to exercise such legal Rights as it may have by being a shareholder of such entity.

7.4    *Waivers.*    The acceptance by Bank at any time and from time to time of part payment on the Indebtedness shall not be deemed to be a waiver of any Event of Default then existing. No waiver by Bank of any Event of Default shall be deemed to be a waiver of any other then existing or subsequent Event of Default. No waiver by Bank of any of its Rights hereunder, in the other Loan Documents or otherwise shall be considered a waiver of any other or subsequent Right of Bank. No delay or omission by Bank in exercising any Right under the Loan Documents or otherwise shall impair such Right or be construed as a waiver thereof or any acquiescence therein, nor shall any single or partial exercise of any such Right exhaust the same or preclude other or further exercise thereof or the exercise of any other Right under the Loan Documents or otherwise.

7.5    *Cumulative Rights.*    All Rights available to Bank under the Loan Documents shall be cumulative of and in addition to all other Rights of Bank at law, in equity or otherwise whether or not the Indebtedness is due and payable and whether or not Bank shall have instituted any suit for collection, foreclosure or other action in connection with the Loan Documents.

7.6    *Setoff.*    At any time an Event of Default exists, Bank shall be entitled to exercise the Rights of setoff and/or banker's lien against the interest of Borrower in and to each and every account, and other property of Borrower which are in the possession of Bank to the extent of the full amount of the Indebtedness, whether or not any such Indebtedness is then due. The rights and remedies of Bank hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Bank may have.

7.7    *Receiver.*    At any time an Event of Default exists, Bank, as a matter of right and without regard to the sufficiency of the security for repayment of the Indebtedness and performance and discharge of the Obligations, without notice to any Borrower or Obligated Party, and without any showing of insolvency, fraud, or mismanagement on the part of any Borrower or Obligated Party, and further without

LOAN AGREEMENT                                                                                     PAGE 18
L:\50423\251\Loan Agreement.doc

**App. 018**

the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of or for Borrower or the Property or any part thereof, including the rents therefrom, and each Borrower and Obligated Party hereby irrevocably consents to the appointment of a receiver or receivers and agrees not to oppose, directly or indirectly, Bank's efforts to obtain same. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

       7.8    *BORROWER'S INDEMNITY*. BORROWER SHALL INDEMNIFY, DEFEND, PROTECT AND HOLD HARMLESS BANK, EACH AFFILIATE OF BANK, AND EACH OF ITS AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, REPRESENTATIVES, AGENTS, ATTORNEYS, SUCCESSORS, AND ASSIGNS AND THE TRUSTEE UNDER THE DEED OF TRUST (COLLECTIVELY, THE "INDEMNIFIED PARTIES") FROM AND AGAINST ANY AND ALL LOSSES, LIABILITIES, DAMAGES, CLAIMS, PENALTIES, JUDGMENTS, DISBURSEMENTS, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND EXPENSES), ACTIONS, PROCEEDINGS, OR DISPUTES INCURRED OR SUFFERED OR TO WHICH ANY OF THEM MAY BECOME SUBJECT WHICH DIRECTLY OR INDIRECTLY ARISE FROM OR RELATE TO:

       (i)    THE NEGOTIATION, EXECUTION, DELIVERY, PERFORMANCE, ADMINISTRATION, OR ENFORCEMENT OF ANY OF THE LOAN DOCUMENTS;

       (ii)    ANY OF THE TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS;

       (iii)    ANY BREACH BY BORROWER OR ANY OTHER OBLIGATED PARTY OF ANY REPRESENTATION, WARRANTY, COVENANT, OR OTHER AGREEMENT CONTAINED IN ANY OF THE LOAN DOCUMENTS;

       (iv)    THE PRESENCE, RELEASE, THREATENED RELEASE, DISPOSAL, REMOVAL, OR CLEANUP OF ANY HAZARDOUS MATERIAL LOCATED ON, ABOUT, WITHIN OR AFFECTING ANY OF THE PROPERTIES OR ASSETS OF THE BORROWER OR ANY OTHER OBLIGATED PARTY;

       (v)    ANY LITIGATION CONCERNING THIS AGREEMENT, THE OTHER LOAN DOCUMENTS OR THE PROPERTY, OR ANY INTEREST OF BORROWER OR BANK THEREIN, OR THE RIGHT OF OCCUPANCY THEREOF BY BORROWER OR BANK, WHETHER OR NOT ANY SUCH LITIGATION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;

       (vi)    ANY DISPUTE, INCLUDING DISPUTES AS TO THE DISBURSEMENT OF PROCEEDS OF THE NOTE NOT YET DISBURSED, AMONG OR BETWEEN BORROWER OR OTHER PARTNERS OR VENTURERS OF BORROWER IF BORROWER IS A GENERAL OR LIMITED PARTNERSHIP, OR AMONG OR BETWEEN ANY EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS OR MANAGERS OF BORROWER IF BORROWER IS A CORPORATION OR LIMITED LIABILITY COMPANY OR PARTNERSHIP, OR AMONG OR BETWEEN ANY MEMBERS, TRUSTEES OR OTHER RESPONSIBLE PARTIES IF BORROWER IS AN ASSOCIATION, TRUST OR OTHER ENTITY;

App. 019

(vii)    ANY ACTION TAKEN OR NOT TAKEN BY BANK OR TRUSTEE WHICH IS ALLOWED OR PERMITTED UNDER THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS RELATING TO BORROWER, THE PROPERTY, OR OTHERWISE IN CONNECTION WITH THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, THE PROTECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST OR OTHER RIGHT, REMEDY OR RECOURSE CREATED OR AFFORDED BY THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS; AND

(viii)    ANY ACTION BROUGHT BY BANK AGAINST BORROWER UNDER THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS, WHETHER OR NOT SUCH ACTION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT; PROVIDED, HOWEVER, IF BANK DOES NOT PREVAIL IN SUCH MATTER, BORROWER SHALL NOT BE LIABLE FOR BANK'S COSTS OR ATTORNEY'S FEES IN SUCH MATTER.

WITHOUT LIMITING ANY PROVISION OF THIS AGREEMENT OR OF ANY OTHER LOAN DOCUMENT, IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT EACH PERSON TO BE INDEMNIFIED UNDER THIS SECTION SHALL BE INDEMNIFIED FROM AND HELD HARMLESS AGAINST ANY AND ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING ATTORNEYS' FEES) ARISING OUT OF OR RESULTING FROM THE SOLE CONTRIBUTORY OR ORDINARY NEGLIGENCE OF SUCH PERSON; PROVIDED, HOWEVER, THE INDEMNITIES PROVIDED IN THIS SECTION 7.7 DO NOT EXTEND TO LOSSES, LIABILITIES, CLAIMS, OR DAMAGES CAUSED BY BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

BANK MAY EMPLOY AN ATTORNEY OR ATTORNEYS TO PROTECT OR ENFORCE ITS RIGHTS, REMEDIES AND RECOURSES UNDER THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, AND TO ADVISE AND DEFEND BANK WITH RESPECT TO ANY SUCH ACTIONS AND OTHER MATTERS. BORROWER SHALL REIMBURSE BANK FOR THEIR RESPECTIVE ATTORNEYS' FEES AND EXPENSES (INCLUDING EXPENSES AND COSTS FOR EXPERTS) IMMEDIATELY UPON RECEIPT OF A WRITTEN DEMAND THEREFOR, WHETHER ON A MONTHLY OR OTHER TIME INTERVAL, AND WHETHER OR NOT AN ACTION IS ACTUALLY COMMENCED OR CONCLUDED. ALL OTHER REIMBURSEMENT AND INDEMNITY OBLIGATIONS HEREUNDER SHALL BECOME DUE AND PAYABLE WHEN ACTUALLY INCURRED BY BANK. ANY PAYMENTS NOT MADE WITHIN FIVE (5) DAYS AFTER WRITTEN DEMAND THEREFOR SHALL BEAR INTEREST AT THE EVENT OF DEFAULT RATE FROM THE DATE OF SUCH DEMAND UNTIL FULLY PAID. THE PROVISIONS OF THIS SECTION 7.7 SHALL SURVIVE REPAYMENT OF THE INDEBTEDNESS AND PERFORMANCE OF THE OBLIGATIONS, THE RELEASE OF THE LIEN OF THE DEED OF TRUST, ANY FORECLOSURE (OR ACTION IN LIEU OF FORECLOSURE), THE TRANSFER BY BORROWER OF ANY OR ALL OF ITS RIGHT, TITLE AND INTEREST IN OR TO THE PROPERTY AND THE EXERCISE BY BANK OF ANY AND ALL REMEDIES SET FORTH HEREIN OR IN ANY OTHER LOAN DOCUMENT FOR A PERIOD OF EIGHTEEN (18) MONTHS AFTER SUCH EVENT.

7.9    _Limitation of Liability._    Neither Bank nor any Affiliate, officer, director, employee, attorney, or agent of Bank shall have any liability with respect to, and Borrower hereby waives, releases, and agrees not to sue any of them upon, any claim for any special, indirect, incidental, or consequential damages suffered or incurred by the Borrower in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this

LOAN AGREEMENT                                                                                                    PAGE 20
L:\50423\251\Loan Agreement.doc

**App. 020**

Agreement or any of the other Loan Documents. Borrower hereby waives, releases, and agrees not to sue Bank or any of Bank's Affiliates, officers, directors, employees, attorneys, or agents for punitive damages in respect of any claim in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents.

## ARTICLE EIGHT

## MISCELLANEOUS

8.1    *Notices.*    Unless otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including by facsimile transmission) and mailed, faxed, or delivered, to the address or facsimile number specified for notices on the signature page below or to such other address as shall be designated by such party in a notice to the other parties. All such other notices and other communications shall be deemed to have been given or made upon the earliest to occur of (a) actual receipt by the intended recipient, or (b) (i) if delivered by hand or courier, when signed for by the designated recipient, (ii) if delivered by mail, upon deposit in the mail, postage prepaid, and (iii) if delivered by facsimile when sent and receipt has been confirmed by telephone. Electronic mail and internet websites may be used only to distribute routine communications, such as Financial Statements and other information, and to distribute Loan Documents for execution by the parties thereto, and may not be used for any other purpose.

8.2    *Form and Number of Documents.*    Each agreement, document, instrument, or other writing to be furnished to Bank under any provision of this Agreement must be in form and substance and in such number of counterparts as may be satisfactory to Bank and its counsel.

8.3    *Survival.*    All covenants, agreements, undertakings, representations, and warranties made in any of the Loan Documents shall survive all closings under the Loan Documents and shall continue in full force and effect so long as any part of the Indebtedness remains and, except as otherwise indicated, shall not be affected by any investigation made by any party. Notwithstanding anything contained herein to the contrary, the covenants, agreements, undertakings, representations, and warranties made in Section 4.10 and Section 7.7 shall survive the expiration or termination of this Agreement, regardless of the means of such expiration or termination.

8.4    *GOVERNING LAW; PLACE OF PERFORMANCE.*    **THE LOAN DOCUMENTS ARE BEING EXECUTED AND DELIVERED, AND ARE INTENDED TO BE PERFORMED, IN THE STATE OF TEXAS, AND THE LAWS OF SUCH STATE AND OF THE UNITED STATES SHALL GOVERN THE RIGHTS AND DUTIES OF THE PARTIES HERETO AND THE VALIDITY, CONSTRUCTION, ENFORCEMENT, AND INTERPRETATION OF THE LOAN DOCUMENTS, EXCEPT TO THE EXTENT OTHERWISE SPECIFIED IN ANY OF THE LOAN DOCUMENTS. THIS AGREEMENT, ALL OF THE OTHER LOAN DOCUMENTS, AND ALL OF THE OBLIGATIONS OF BORROWER UNDER ANY OF THE LOAN DOCUMENTS ARE PERFORMABLE IN DALLAS COUNTY, TEXAS.    VENUE OF ANY LITIGATION INVOLVING THIS AGREEMENT OR ANY LOAN DOCUMENT SHALL BE MAINTAINED IN AN APPROPRIATE STATE OR FEDERAL COURT LOCATED IN DALLAS COUNTY, TEXAS, TO THE EXCLUSION OF ALL OTHER VENUES. BORROWER AGREES THAT SERVICE OF PROCESS UPON IT MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, AT ITS ADDRESS SPECIFIED HEREIN. NOTHING HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT THE RIGHT OF BANK TO BRING ANY ACTION OR PROCEEDING AGAINST BORROWER OR WITH RESPECT TO ANY OF**

**App. 021**

BORROWER'S PROPERTY IN COURTS IN OTHER JURISDICTIONS. THE SCOPE OF EACH OF THE FOREGOING WAIVERS IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER ACKNOWLEDGES THAT THESE WAIVERS ARE A MATERIAL INDUCEMENT TO BANK'S AGREEMENT TO ENTER INTO AGREEMENTS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, THAT BANK HAS ALREADY RELIED ON THESE WAIVERS AND WILL CONTINUE TO RELY ON EACH OF THESE WAIVERS IN RELATED FUTURE DEALINGS. THE WAIVERS IN THIS SECTION ARE IRREVOCABLE, MEANING THAT THEY MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THESE WAIVERS APPLY TO ANY FUTURE RENEWALS, EXTENSIONS, AMENDMENTS, MODIFICATIONS, OR REPLACEMENTS IN RESPECT OF THE APPLICABLE LOAN DOCUMENT. IN CONNECTION WITH ANY LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

8.5     *Maximum Interest.* It is expressly stipulated and agreed to be the intent of Borrower and Bank at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the indebtedness evidenced by the Note or any Loan Document, and the Related Indebtedness (or applicable United States federal law to the extent that it permits Bank to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount (a) contracted for, charged, taken, reserved or received pursuant to the Note, any of the other Loan Documents or any other communication or writing by or between Borrower and Bank related to the transaction or transactions that are the subject matter of the Loan Documents, (b) contracted for, charged, taken, reserved or received by reason of Bank's exercise of the option to accelerate the maturity of the Note and/or any and all indebtedness paid or payable by Borrower to Bank pursuant to any Loan Document other than the Note (such other indebtedness being referred to in this Section as the "Related Indebtedness"), or (c) Borrower will have paid or Bank will have received by reason of any prepayment by Borrower of the Note and/or the Related Indebtedness, then it is Borrower's and Bank's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Bank shall be credited on the principal balance of the Note and/or the Related Indebtedness (or, if the Note and the Related Indebtedness have been or would thereby be paid in full, refunded to Borrower), and the provisions of the Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if the Note has been paid in full before the end of the stated term of the Note, then Borrower and Bank agree that Bank shall, with reasonable promptness after Bank discovers or is advised by Borrower that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Borrower and/or credit such excess interest against the Note and/or any Related Indebtedness then owing by Borrower to Bank. Borrower hereby agrees that as a condition precedent to any claim or counterclaim (in which event such proceeding shall be abated for such time period) seeking usury penalties against Bank, Borrower will provide written notice to Bank, advising Bank in reasonable detail of the nature and amount of the violation, and Bank shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the Note to which the alleged violation relates and/or the Related Indebtedness then owing by Borrower to Bank. All sums contracted for, charged, taken, reserved or received by Bank for the use, forbearance or detention of any debt evidenced by the Note and/or the Related Indebtedness shall, to the extent permitted by applicable law, be

LOAN AGREEMENT                                                                                          PAGE 22
L:\50423\251\Loan Agreement.doc

**App. 022**

amortized or spread, using the actuarial method, throughout the stated term of the Note and/or the Related Indebtedness (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Note and/or the Related Indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Note and/or the Related Indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code which regulates certain revolving credit loan accounts and revolving triparty accounts apply to the Note and/or any of the Related Indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Bank to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

8.6     *Ceiling Election.* To the extent that Bank is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or any other portion of the Indebtedness, Bank will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. To the extent federal law permits Bank to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Bank will rely on federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate. Additionally, to the extent permitted by applicable law now or hereafter in effective, Bank may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect.

8.7     *Invalid Provisions.* If any provision of any of the Loan Documents is held to be illegal, invalid, or unenforceable under present or future laws effective during the term thereof, such provision shall be fully severable, the appropriate Loan Document shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part thereof; and the remaining provisions thereof shall remain in full force and effect and shall not be effected by the illegal, invalid, or unenforceable provision or by its severance therefrom. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as a part of such Loan Document a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

8.8     *Entirety and Amendments.* This instrument embodies the entire agreement between the parties relating to the subject matter hereof (except documents, agreements and instruments delivered or to be delivered in accordance with the express terms hereof), supersedes all prior agreements and understandings, if any, relating to the subject matter hereof, and may be amended only by an instrument in writing executed jointly by Borrower and Bank and supplemented only by documents delivered or to be delivered in accordance with the express terms hereof.

8.9     *Multiple Counterparts.* This Agreement has been executed in a number of identical counterparts, each of which constitutes an original and all of which constitute, collectively, one agreement; but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

8.10    *Parties Bound.* This Agreement shall be binding upon and inure to the benefit of Borrower, Bank and their respective successors and assigns; provided that Borrower may not, without the prior written consent of Bank, assign any of its Rights, duties, or obligations hereunder. No term or provision of this Agreement shall inure to the benefit of any Person other than Borrower and Bank and their respective successors and assigns; consequently, no Person other than Borrower and Bank and their respective successors and assigns, shall be entitled to rely upon, or to raise as a defense, in any manner

App. 023

whatsoever, the failure of Borrower or Bank to perform, observe, or comply with any such term or provision.

8.11     *Bank's Consent or Approval*. Except where otherwise expressly provided in the Loan Documents, in any instance where the approval, consent or the exercise of judgment of Bank is required, the granting or denial of such approval or consent and the exercise of such judgment shall be (a) within the sole discretion of Bank, and (b) deemed to have been given only by a specific writing intended for that purpose and executed by Bank. Each provision for consent, approval, inspection, review, or verification by Bank is for Bank's own purposes and benefit only.

8.12     *Sale of Participations*. Bank may, from time to time and without notice to Borrower, sell or offer to sell the Indebtedness, or interests therein, to one or more assignees or participants and Bank is hereby authorized to disseminate and disclose any information (whether or not confidential or proprietary in nature) Bank now has or may hereafter obtain pertaining to Borrower, the Indebtedness or the Loan Documents (including, without limitation, any credit or other information regarding Borrower, any of its principals, or any other person or entity liable, directly or indirectly, for any part of the Loan, to (a) any assignee or participant or any prospective assignee or prospective participant, (b) any regulatory body having jurisdiction over Bank or the Indebtedness, and (c) any other persons or entities as may be necessary or appropriate in Bank's reasonable judgment). Bank, as a courtesy to Borrower, will endeavor to notify Borrower of any such assignees or participants, or prospective assignees or participants, to which Bank disseminates any of the information described above.

8.13     *Loan Agreement Governs*. In the event of any conflict between the terms of this Agreement and any terms of any other Loan Document, the terms of this Agreement shall govern. All of the Loan Documents are by this reference incorporated into this Agreement.

8.14     ***WAIVER OF JURY TRIAL.***  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE ACTIONS OF BANK IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT THEREOF.

8.15     ***WAIVER OF FRAUDULENT INDUCEMENT.*** NEITHER BANK NOR ANY AFFILIATE OF BANK HAS MADE ANY REPRESENTATION, WARRANTY OR STATEMENT TO BORROWER IN ORDER TO INDUCE BORROWER TO EXECUTE THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS. BORROWER HEREBY EXPRESSLY WAIVES ANY CLAIM OF FRAUDULENT INDUCEMENT TO EXECUTE THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS AND FURTHER DISCLAIMS ANY RELIANCE OR STATEMENTS ON OR REPRESENTATIONS OF BANK IN WAIVING SUCH CLAIM.

8.16     ***WAIVER OF CONSEQUENTIAL, PUNITIVE AND SPECULATIVE DAMAGES.*** BORROWER AND BANK AGREE THAT, IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING RELATING TO OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, EACH MUTUALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECULATIVE DAMAGES.

LOAN AGREEMENT                                                                                          PAGE 24
L:\50423\251\Loan Agreement.doc

**App. 024**

8.17 *STATUTE OF FRAUDS NOTICE.* **THIS WRITTEN LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

8.18 *ATTORNEY FEE AGREEMENT AND REPRESENTATION DISCLAIMER ACKNOWLEDGMENT.* Legal instruments involved in the above-referenced Loan have been prepared for the BANK by the law firm of Shackelford, Bowen, McKinley & Norton, LLP (the "Firm"). As part of the obligation of the Borrower to pay the reasonable expenses of the Bank in connection with the Loan, the undersigned hereby agree to pay, at closing, the legal fees and related expenses charged to Bank by the Firm in connection with the preparation of the aforementioned legal instruments. The undersigned acknowledge that the Firm has acted only as counsel to Bank, and has not, in any manner, undertaken to represent or render legal counsel to the undersigned with respect to the Loan or the Property, or with respect to any of the documents or instruments being executed in connection therewith. The undersigned have been and are hereby advised to obtain legal counsel of their own choice to represent them in this transaction.

[Signature Page Follows]

**App. 025**

EFFECTIVE as of the Effective Date.

**BANK**:

TEXAS BRAND BANK

By: _____
Name: _____
Title: _____

Address for Notices:
1919 S. Shiloh Road, Suite 100, LB30
Garland, Texas 75042
Att'n:  William E. Lowe

**BORROWER:**

GOLDMARK HOSPITALITY, LLC,
a Texas limited liability company

By: Enoch Investments, LLC,
    a Delaware limited liability company,
    its Sole Member and Managing Member

By: _____
    Timothy Barton, its Managing Member

Address for Notices:
13901 Midway Road, Suite 102-243
Farmers Branch, Texas 75244
Att'n: Timothy Barton

## LIST OF EXHIBITS AND SCHEDULES

EXHIBIT A    -    Land
EXHIBIT B    -    Conditions Precedent
EXHIBIT C    -    Title Policy Requirements
EXHIBIT D    -    Insurance Requirements

**App. 026**

## EXHIBIT "A"
## TO
## LOAN AGREEMENT

### Description of Land

BEING all of Lot 3, Block A/7761 of CARLETON HOUSE, an addition to the City of Dallas, Dallas County, Texas, recorded in Volume 80137, Page 261, of the Map Records of Dallas County, Texas, and being all of that same tract of land described in Foreclosure Deed to Goldmark Hospitality, LLC, recorded in Instrument Number 201100196546 of the Deed Records of Dallas County, Texas, and said lot being more particularly described as follows:

BEGINNING at a 5/8" iron rod found at the northernmost corner of a corner cut-off line at the intersection of the southeast R.O.W. line of Goldmark Drive (a 60' R.O.W.) with the southwest R.O.W. line of Midpark Road (a 60' R.O.W.); said point being the beginning of a curve to the right having a central angle of 1 3°1 8'00" and a radius of 320.00' bearing S 32°19'00" W;

THENCE around said curve and along the southwest line of Midpark Road, a distance of 74.11' to a 1/2" iron rod found for corner;

THENCE S 44°23'00" E, 179.69' along the southwest line of Midpark Road to a PK nail found at the north corner of Lot 1, Block A/7761 of La Quinta-Midpark Addition, an addition to the City of Dallas, Texas, recorded in Volume 76201, Page 1 of the Map Records of Dallas County, Texas;

THENCE S 45°37'00" W, 590.05' along the northwest line of said Lot 1 to a cross found for corner in a northeast line of Lot 4, Block A/7761 of Section Five, Keystone Park Addition, an addition to the City of Dallas, Texas, recorded in Volume 92208, Page 2836 of the Map Records of Dallas County, Texas;

THENCE N 44°23'00" W, 263.00' along a northeast line of said Lot 4 to a 5/8" iron rod found for corner in the southeast line of Goldmark Drive;

THENCE N 45°37'00" E, 569.02' along the southeast line of Goldmark Drive to a 5/8" iron rod found at the south corner of a corner cut-off line;

THENCE N 83°31'43" E, 15.77' along said cut-off line to the POINT OF BEGINNING and CONTAINING 154,828.37 square feet or 3.5544 acres of land, more or less.

App. 027

**EXHIBIT "B"**
**TO**
**LOAN AGREEMENT**

This Agreement.

The Note.

The Deed of Trust.

A Guaranty from Timothy Barton.

The Security Agreement.

The other Loan Documents, as applicable.

The Title Policy.

If Borrower is an entity:

      (a)    A copy of the organizational documents for the entity.

      (b)    A certificate of incumbency, in a form acceptable to Bank, of all agents of the entity who will be authorized to execute any of the Loan Documents on behalf of Borrower and Guarantor, dated the Closing Date, and in a form acceptable to Bank.

      (c)    A copy of resolutions of the Borrower and each other Obligated Party that is a corporation, limited liability company, partnership or other entity, approving and authorizing the Loan Documents and the transactions contemplated by this Agreement, duly adopted by the governing body of each such entity, accompanied by a certificate of an authorized representative of each such entity, dated the Closing Date, that such copy is a true and correct copy of resolutions duly adopted at a meeting of the governing body of each such entity and that such resolutions have not been amended or revoked in any respect and are in full force and effect as of the Closing Date.

Such other satisfactory evidence as Bank shall require that all necessary action on the part of Borrower and each other Obligated Party has been taken with respect to the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby so that this Agreement and all other Loan Documents to be executed and delivered by or on behalf of Borrower or any other Obligated Party will be valid and binding upon Borrower and each such Obligated Party.

The Survey bearing a date not earlier than 180 days prior to the Closing Date.

Financing Statements with respect to the security interests granted in the Loan Documents, together with evidence of the priority of the respective security interests perfected thereby. Borrower hereby irrevocably authorizes Bank at any time and from time to time to prepare and file one or more financing statements regarding the Land and the Improvements.

The Origination Fee in the amount of $25,842.49, in cash.

EXHIBIT "B" TO LOAN AGREEMENT                             PAGE EXHB-1
L:\50423\251\Loan Agreement.doc

An appraisal of the Property by a qualified MAI appraiser approved by Bank, in form, scope and substance satisfactory to Bank, showing a "completed value" of not less than $3,691,785.00.

Insurance Policies, certificates and binders required pursuant to Section 4.1 and **Exhibit D** to this Agreement.

Financial Statements.

EXHIBIT "B" TO LOAN AGREEMENT                                              PAGE EXHB-2
L:\50423\251\Loan Agreement.doc

**App. 029**

## EXHIBIT "C"
## TO
## LOAN AGREEMENT

The Title Company:    Stewart Title Guaranty Company

### Title Policy Requirements

Borrower shall deliver to Bank, at Borrower's expense, for Texas property, a Texas loan policy of title insurance (Form T-2), acceptable to Bank and Bank's counsel. The Title Policy shall (a) show "Texas Brand Bank" as the insured mortgagee, (b) insure the Lien of the Deed of Trust as a first lien against the Land and Improvements in the full amount of the Loan, (c) delete the exception for matters which a current survey would show, and all "standard" exceptions which can be deleted, to the fullest extent authorized under applicable title insurance rules and Borrower shall satisfy all requirements therefor, (d) contain (i) no exception for standby fees or real estate taxes other than standby fees and real estate taxes for the year in which the Closing Date occurs to the extent the same are not then due and payable in which case the same shall be endorsed "not yet due and payable" and (ii) no exception for subsequent assessments for prior years, (e) provide full coverage against mechanic's liens to the extent authorized by applicable title insurance rules and Borrower shall satisfy all requirements therefor, (f) contain only such exceptions (regardless of rank or priority) Bank approves, and Borrower shall cause to be delivered to Bank true, complete and fully legible copies of all recorded instruments shown as exceptions, including the subdivision plat (if any) and any restrictive covenants, (g) insure that no restrictive covenants shown in the Title Policy have been violated, and that no violation of the restrictions will result in a reversion or forfeiture of title, (h) insure that the lands shown in the required Survey are one and the same as the lands encumbered by the Deed of Trust, and that all recorded easements and other exceptions locatable on the ground are located as shown on the Survey, (i) insure that indefeasible or marketable (as coverage is available) fee simple title to the Land and Improvements is vested in Borrower, (j) contain such endorsements Bank requires and are available under applicable title insurance rules and Borrower shall satisfy all requirements therefor, (k) insure any easements, leasehold estates or other matters appurtenant to or benefiting the Land and/or the Improvements as part of the insured estate and not show the same as exceptions, (l) provide the recording information for the UCC financing statement (if any) filed in the real estate records of the county where the Land is located, and (m) insure the zoning of, and the Right of access to, the Land to the extent authorized under applicable title insurance rules and Borrower shall satisfy all requirements therefor.

Borrower shall be solely responsible for satisfying the requirements of the Title Company necessary to allow the Company to issue the Title Policy required by this Agreement. The conditions to Bank's obligation to make the Loan will not be satisfied if the Title Policy required by this Agreement is not, or cannot be, issued, whether caused by Borrower's failure to satisfy the underwriter's requirements or otherwise.

**App. 030**

**EXHIBIT "D"**
**TO**
**LOAN AGREEMENT**

**Insurance Requirements**

Borrower shall maintain with responsible insurance companies having at least an A Policyholder's Rating and a Financial Size Rating of XII by Alfred M. Best Company (or another company approved by Bank) the following:

1.    Hazard Insurance. Insurance with respect to all insurable Property against loss or damage by fire, lightning, windstorm, explosion, hail, tornado, collapse, riot, riot attending a strike, sprinkler leakage, civil commotion, damage from aircraft and vehicles, and smoke damage and loss or damage from such hazards as are presently included in so called "extended coverage" and against vandalism and malicious mischief and against such other insurable hazards as may be required by Bank for the benefit of Borrower and Bank as named insured and/or loss payees. The amount of such insurance shall be the full replacement cost of the buildings, improvements, furniture, furnishings, fixtures, equipment and other items (whether personalty or fixtures) included in the Property, without deduction for depreciation. Full replacement cost, as used herein, means, with respect to the buildings and improvements, the cost of replacing the buildings and improvements, exclusive of the cost of excavations, foundations and footings below the first floor slab grade, but including the cost of debris removal, and means, with respect to such furniture, furnishings, fixtures, equipment and other items, the cost of replacing same. Each such policy shall contain a replacement cost endorsement and such other endorsements as are sufficient to prevent Borrower and Bank from becoming a coinsurer with respect to such buildings and improvements. Such insurance shall be "*All-Risk*" form.

2.    Flood Insurance. If and to the extent any of the Property is located in a flood hazard area, a federal flood insurance policy in an amount equal to the lesser of the amount of the Loan or the maximum amount available.

3.    Other. Such other insurance on the Property, or any replacements or substitutions thereof, or additions thereto, and in such amounts as may from time to time be required by Bank against other insurable hazards or casualties which at the time are commonly insured against in the case of premises similarly situated, due regard being given to the height and type of the buildings and improvements, or any replacements or substitutions therefor, or additions thereto, and their construction, location, use and occupancy. Bank may also require Borrower to maintain comprehensive general liability insurance for owners and contractors in amounts and form acceptable to Bank.

4.    Contracts. With respect to any Contractor performing work in connection with the Improvements such insurance as Bank shall reasonably require, including, but not limited to, Worker's Compensation Insurance for statutory limits.

All insurance policies shall be "*occurrence*" based policies, issued and maintained by Insurers, in amounts, with deductibles, and in form satisfactory to Bank, shall require not less than thirty (30) days' prior written notice to Bank of any cancellation lapse, expiration, reduction or other change of coverage, and shall provide, if possible, for payment of all costs and expenses incurred by Bank in the event of any contested claim. Without limiting the discretion of Bank with respect to required endorsements to insurance policies, all such policies for loss or damage to the Property shall contain a standard mortgagee clause (without contribution) naming Bank as mortgagee with loss proceeds payable to Bank. All such policies also shall provide that the validity and enforceability of such policies will not be affected by, and the proceeds of such policies will be payable to Bank notwithstanding any (i) act, failure to act, or

EXHIBIT "D" TO LOAN AGREEMENT                                                    PAGE EXHD-1
L:\50423\251\Loan Agreement.doc

negligence of the insured, (ii) any violation of any warranty, declaration or condition contained in any such policy by the insured, (iii) the occupancy or use of the Property for purposes more hazardous than permitted by the terms of the policy, (iv) the exercise of the power of sale or any foreclosure or other action or proceeding taken by Bank pursuant to the Loan Documents, or (v) any change in title to or ownership of the Property. In the case of policies of *"extended coverage"* insurance carried by a lessee of the Property for the benefit of Borrower, Borrower will upon request of Bank cause such policies to be endorsed to provide for payment of proceeds to Bank as its interests may appear.

**App. 032**

**ELECTRONICALLY RECORDED 201900314312**
**11/20/2019 04:06:43 PM DT 1/31**

When Recorded, Return To:
Texas Brand Bank
Attn: William E. Lowe
1919 S. Shiloh Road, Suite 100, LB 30
Garland, Texas 75042

```
EXHIBIT

B
```

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION
FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC
RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE
NUMBER.

## DEED OF TRUST,
### SECURITY AGREEMENT - FINANCING STATEMENT

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

That, as of the 14th day of November, 2019, Goldmark Hospitality, LLC, a Texas limited
liability company ("Grantor"), whose mailing address is 13901 Midway Road, Suite 102-243,
Farmers Branch, Texas 75244, in consideration of the debt and trust hereinafter mentioned, does
hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY unto John C.
Shackelford, Trustee (as hereinafter defined), for the benefit of Texas Brand Bank ("Beneficiary"),
the following described property (all of which is sometimes referred to collectively herein as the
"Property"):

　　　　(i)　　the real estate situated in Dallas County, Texas, which is more
particularly described in Exhibit "A" attached hereto and made a part hereof for all
purposes the same as if set forth herein verbatim, together with all right, title and interest
of Grantor in and to (a) all streets, roads, alleys, easements, rights-of-way, licenses,
rights of ingress and egress, vehicle parking rights and public places, existing or
proposed, abutting, adjacent, used in connection with or pertaining to the real property
or the Improvements (as hereinafter defined); (b) any strips or gores between the real
property and abutting or adjacent properties; and (c) all water and water rights, timber,
crops and mineral interests pertaining to the real property (such real estate and other
rights, titles and interests being hereinafter sometimes called the "Land");

　　　　(ii)　　all buildings, structures and other improvements (such buildings,
structures and other improvements being hereinafter sometimes called the
"Improvements") now or hereafter situated on the Land;

　　　　(iii)　　all fixtures, equipment, systems, machinery, furniture, furnishings,
inventory, goods, building and construction materials, supplies, and articles of personal
property, of every kind and character, now owned or hereafter acquired by Grantor,
which are now or hereafter attached to or situated in, on or about the Land or the

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 1
L:\50423\251\DOTSecAgmt-FS.doc

**App. 033**

Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing, including, but without limiting the foregoing, any and all fixtures, equipment, machinery, systems, facilities and apparatus for heating, ventilating, air conditioning, refrigerating, plumbing, sewer, lighting, generating, cleaning, storage, incinerating, waste disposal, sprinkler, fire extinguishing, communications, transportation (of people or things, including, but not limited to, stairways, elevators, escalators and conveyors), data processing, security and alarm, laundry, food or drink preparation, storage or serving, gas, electrical and electronic, water, and recreational uses or purposes; all tanks, pipes, wiring, conduits, ducts, doors, partitions, rugs and other floor coverings, wall coverings, windows, drapes, window screens and shades, awnings, fans, motors, engines and boilers; and decorative items and art objects (all of which are herein sometimes referred to together, as the "Accessories");

(iv)    all (a) plans and specifications for the Improvements; (b) contracts relating to the Land, or the Improvements or the Accessories or any part thereof; (c) deposits, (including, but not limited to, Grantor's rights in tenants' security deposits, deposits with respect to utility services to the Land, or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Document (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles (including, but not limited to, trademarks, trade names and symbols), notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land, or the Improvements or the Accessories or any part thereof; (d) permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Land, or the Improvements or the Accessories or any part thereof; (e) all rights, titles and privileges arising under or pursuant to any and all deed restrictions, restrictive covenants and conditions, property owners associations and condominium associations whether such rights and privileges exist due to Grantor being a declarant, member, owner or beneficiary under such instruments which create such rights and privileges, (f) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (g) other properties, rights, titles and interests, if any, specified in any Section or any Article of this Deed of Trust as being part of the Property; and

(v)    all (a) proceeds of or arising from the properties, rights, titles and interests referred to above in paragraphs (i), (ii), (iii) and (iv), including, but not limited to, proceeds of any sale, lease or other disposition thereof, proceeds of each policy of insurance relating thereto (including premium refunds), proceeds of the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law, and proceeds arising out of any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and (b) other interests of every kind and character, and proceeds thereof, which Grantor now has or hereafter acquires in, to or for the benefit of

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                     PAGE 2
L:\50423\251\DOTSecAgmt-FS.doc

**App. 034**

the properties, rights, titles and interests referred to above in paragraphs (i), (ii), (iii) and (iv) and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests. In the event the estate of Grantor in and to any of the Property is a leasehold estate, this conveyance shall include, and the lien and security interest created hereby shall encumber and extend to, all other further or additional title, estates, interest or rights which may exist now or at any time be acquired by Grantor in or to the property demised under the lease creating such leasehold estate and including Grantor's rights, if any, to the property demised under such lease and, if fee simple title to any of such property shall ever become vested in Grantor such fee simple interest shall be encumbered by this Deed of Trust in the same manner as if Grantor had fee simple title to said property as of the date of execution hereof.

TO HAVE AND TO HOLD the Property, unto Trustee and Trustee's successors, substitutes or assigns, in trust and for the uses and purposes herein set forth, forever, together with all rights, privileges, hereditaments and appurtenances in anywise appertaining or belonging thereto, subject only to the Permitted Exceptions (herein so called) listed on Exhibit "B" attached hereto (to the extent that the same are valid, subsisting and affect the Property), and Grantor, for Grantor and Grantor's successors, hereby agrees to warrant and forever defend, all and singular, the Property unto Trustee and trustee's successors or substitutes in this trust against the claim or claims of all persons claiming or to claim the same or any part thereof, subject, however, as aforesaid.

ARTICLE I

THE OBLIGATION

Section 1.1. *Beneficiary.* This Deed of Trust (as used herein, the expression "this Deed of Trust" shall mean this Deed of Trust, Security Agreement – Financing Statement), and all rights, title, interest, liens, security interests, powers and privileges created hereby or arising by virtue hereof, are given to secure payment and performance of the Obligation (as hereinafter defined), including the indebtedness described in Section 1.2 hereof payable to the order of Texas Brand Bank ("Beneficiary"), whose mailing address is 1919 S. Shiloh Road, Suite 100, LB30, Garland, Texas 75042. The word "Beneficiary," as used herein, shall mean Beneficiary named in this Section and all subsequent holders of the Note at the time in question.

Section 1.2. *Obligation.* The word "Obligation," as used herein, shall mean all of the indebtedness, obligations and liabilities described as follows:

(a)    the indebtedness evidenced by that certain Promissory Note (the "Note") of even date herewith, incorporated herein by this reference, executed by Grantor, payable to the order of Beneficiary in the principal amount of $2,584,249.00, bearing interest as therein specified, containing an attorney's fee clause, interest and principal being payable as therein specified;

(b)    all indebtedness, obligations and liabilities including overdrafts, arising pursuant to the provisions of this Deed of Trust, any other security agreement, mortgage, deed of trust, collateral assignment, pledge agreement, loan agreement, contract or assignment of any kind, now or hereafter

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 3
L:\50423\251\DOTSecAgmt-FS.doc

**App. 035**

existing, as security for or in connection with payment of the Obligation or any part thereof and of any other document evidencing, securing or executed in connection with the Obligation (herein referred to individually as a "Loan Document" and collectively as the "Loan Documents"); and

(c) any and all renewals, modifications, rearrangements, amendments or extensions of all or any part of the indebtedness, obligations and liabilities described or referred to in Subsections 1.2(a) and 1.2(b) preceding.

Grantor, and each party at any time claiming an interest in or lien or encumbrance against the Property, agrees that all advances made by Beneficiary from time to time under any of the Loan Documents, and all other portions of the obligation herein referred to, shall be secured by this Deed of Trust with priority as if all of the same had been advanced, had arisen or became owing or performable on the date of this Deed of Trust. No reduction of the outstanding principal balance under the Note shall extinguish, release or subordinate any rights, titles, interests, liens, security interests, powers or privileges intended, created or arising hereunder or under any other Loan Document, and this Deed of Trust shall remain in full force and effect as to any subsequent advances or subsequently arising portions of the Obligation without loss of priority until the Obligation is fully paid, performed and satisfied, all agreements and obligations, if any, of Beneficiary for further advances have been terminated and this Deed of Trust has been released of record by Beneficiary.

ARTICLE II

CERTAIN REPRESENTATIONS, WARRANTIES AND
COVENANTS OF GRANTOR

Section 2.1. *Warranties and Representations*. Grantor represents, warrants and undertakes that:

(a)    Grantor has full right and authority to execute and deliver this Deed of Trust;

(b)    Grantor has, in Grantor's own right, good and indefeasible title in fee simple to the Property free from any encumbrance superior to the indebtedness hereby secured, subject only to the Permitted Exceptions;

(c)    no part of the Property is Grantor's homestead of any type or character and this Deed of Trust is and shall continue to be a valid and enforceable lien and security interest against the Property until the Obligation is fully discharged;

(d)    Grantor and each guarantor of the Obligation are solvent and no proceeding under any Debtor Relief Laws (as hereinafter defined) is pending or threatened by or against any of them, or any affiliate of any of them, as a debtor;

(e)    if Grantor is a corporation, partnership or other entity, Grantor is and shall until the Obligation is fully discharged continue to be (i) duly organized and validly existing in good standing under the laws of the state of Grantor's organization, and in good standing under Texas law, (ii) in

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                           PAGE 4
L:\50423\251\DOTSecAgmt-FS.doc

**App. 036**

compliance with all conditions prerequisite to Grantor's lawfully doing business in the State of Texas and (iii) possessed of all power and authority necessary to own and operate the Property;

(f)    all Loan Documents executed by Grantor have been duly authorized, executed and delivered by Grantor, and the obligations thereunder and the performance thereof by Grantor in accordance with their terms are within Grantor's powers and are not in contravention of any law, agreement or restriction to which Grantor or the Property is subject;

(g)    the loan evidenced by the Note is solely for the purpose of carrying on or acquiring a business of Grantor, and is not for personal, family, household or agricultural purposes;

(h)    the statement above of Grantor's mailing address is true and correct;

(i)    all reports, financial statements and other information heretofore furnished to Beneficiary by or on behalf or at the request of Grantor with respect to the Property, Grantor, any guarantor or other party liable for payment or performance of the Obligation or any part thereof are, and all of the same hereafter furnished to Beneficiary will when furnished be, true, correct and complete in all material respects and do not, or will not, omit any fact, the inclusion of which is necessary to prevent the facts contained therein from being materially misleading; and

(j)    since the date of the financial statements of Grantor or of any guarantor or other party liable for payment or performance of the Obligation or any part thereof heretofore furnished to Beneficiary, no material adverse change has occurred in the financial condition of Grantor or any such other party, and, except as heretofore disclosed in writing to Beneficiary, Grantor or any such other party has not incurred any material liability, direct or indirect, fixed or contingent.

Section 2.2. _Covenants_. Grantor, for Grantor and Grantor's successors and permitted assigns, hereunder covenants, agrees and undertakes to

(a)    pay and perform the Obligation in accordance with the terms thereof;

(b)    pay or cause to be paid, before delinquent, all taxes and assessments of every kind or character in respect of the Property or any part thereof and, from time to time upon request of Beneficiary, to furnish to Beneficiary evidence satisfactory to Beneficiary of the timely payment of such taxes and assessments and governmental charges (the word "assessments" as used herein includes not only assessments and charges by any governmental body, but also all other assessments and charges of any kind, including, but not limited to, assessments or charges for any utility or utility service, easement, license or agreement upon, for the benefit of, or affecting the Property, and assessments and charges arising under subdivision, condominium, planned unit development or other declarations, restrictions, regimes or agreements);

(c)    purchase policies of insurance with respect to the Property with such insurers, in such amounts and covering such risks as shall be satisfactory to Beneficiary, including, but not limited to, (i) personal injury and death; (ii) loss or damage by fire, lightning, hail, windstorm, explosion and such other hazards, casualties and contingencies (including at least six (6) months rental insurance in an amount equal to the gross rentals for such period, and broad form boiler and machinery insurance)

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                PAGE 5
L:\50423\251\DOTSecAgmt-FS.doc

**App. 037**

as are normally and usually covered by extended coverage policies in effect where the Property is located, and comprehensive general public liability insurance; provided that in the absence of written direction from Beneficiary each fire and extended coverage policy shall include a "standard mortgage clause" and shall provide by way of endorsement, rider or otherwise that no such insurance policy shall be canceled, endorsed, altered, or reissued to effect a change in coverage unless such insurer shall have first given Beneficiary ten (10) days prior written notice thereof, such policy shall be on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the policy, but not less than 100 percent of the insurable value (based upon replacement cost), and the deductible clause, if any, of the fire and extended coverage policy may not exceed the lesser of one percent of the face amount of the policy or $10,000.00; (iii) loss or damage by flood, if the Property is located in an area that has been or is hereafter identified by the Director of the Federal Emergency Management Agency ("FEMA") as a special flood hazard area using FEMA's Flood Insurance Rate Map or the Flood Hazard Boundary Map for the community in which the Property is located, in amounts not less than the maximum limit of coverage then available or the amount of the Note, whichever is less; and (iv) such other insurance and endorsements, if any, as Beneficiary may require from time to time, or which is required by the Loan Documents;

(d)    cause all insurance (except general public liability insurance) carried in accordance with Subsection 2.2(c) hereof to be payable to Beneficiary as a mortgagee and not as a co-insured, to deliver copies of such policies of insurance to Beneficiary, and, in the case of all policies of insurance carried by each lessee of all or any portion of the Property for the benefit of Grantor, to cause all such policies to be payable to Beneficiary as Beneficiary's interest may appear;

(e)    pay, or cause to be paid, all premiums for insurance required hereunder at least ten (10) days before such premiums become due, furnish to Beneficiary satisfactory proof of the timeliness of such payments and deliver all renewal policies to Beneficiary at least ten (10) days before the expiration date of each expiring policy;

(f)    comply with all federal, state, or municipal laws, rules, ordinances and regulations applicable to the Property and Grantor's ownership, use and operation thereof, and comply with all, and not violate any, easements, restrictions, agreements, covenants and conditions with respect to or affecting the Property or any part thereof;

(g)    at all times maintain, preserve and keep the Property in good repair and condition and presenting a first class appearance, and from time to time, make all necessary and proper repairs, replacements and renewals, and not commit or permit any waste on or of the Property, and not to do anything to the Property that may impair its value;

(h)    promptly pay all bills for labor and materials incurred in connection with the Property and never permit to be created or to exist in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and security interests hereof, for any such bill, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest on a parity with or superior to any of the liens or security interests hereof;

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                                    PAGE 6
L:\50423\251\DOTSecAgmt-FS.doc

**App. 038**

(i)     from time to time, at the request of Beneficiary, (i) promptly correct any defect, error or omission which may be discovered in the contents of this Deed of Trust or in any other Loan Document or in the execution or acknowledgment thereof; (ii) execute, acknowledge, deliver and record and/or file such further instruments (including, without limitation, further deeds of trust, security agreements, financing statements, continuation statements and assignments of rents or leases) and perform such further acts and provide such further assurances as may be necessary, desirable or proper, in Beneficiary's opinion, to carry out more effectively the purposes of this Deed of Trust and such other instruments and to subject to the liens and security interests hereof and thereof any property intended by the terms hereof or thereof to be covered hereby or thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Property; and (iii) execute, acknowledge, deliver, procure, and file and/or record any document or instrument (including specifically, but without limitation, any financing statement) deemed advisable by Beneficiary to protect the liens and the security interests herein granted against the rights or interests of third persons, and Grantor will pay all costs connected with any of the foregoing;

(j)     *reserved*;

(k)     continuously maintain Grantor's existence and right to do business in Texas;

(l)     at any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust, or upon any rights, titles, liens or security interests created hereby, or upon the Obligation or any part thereof, immediately pay all such taxes; provided that, if such law as enacted makes it unlawful for Grantor to pay such tax, Grantor shall not pay nor be obligated to pay such tax, and in the alternative, Grantor may, in the event of the enactment of such a law, and must, if it is unlawful for Grantor to pay such taxes, prepay the Obligation in full within sixty (60) days after demand therefor by Beneficiary;

(m)     at any time and from time to time, furnish promptly upon the request of Beneficiary, a written statement or affidavit, in form satisfactory to Beneficiary, stating the unpaid balance of the Obligation and that there are no offsets or defenses against full payment of the Obligation and the terms hereof, or, if there are any such offsets or defenses, specifying them;

(n)     not cause or permit the Accessories or any part thereof, to be removed from the county and state where the Land is located, except items of the Accessories which have become obsolete or worn beyond practical use and which have been replaced by adequate substitutes having a value equal to or greater than the replaced items when new;

(o)     not seek or acquiesce in a zoning reclassification of any portion of the Property or grant any easement, dedication, plat or restriction (or allow any easement to become enforceable by prescription) covering any portion of the Property, without Beneficiary's prior written consent;

(p)     not, without the prior written consent of Beneficiary, permit any drilling or exploration for or extraction, removal or production of any mineral, natural element, compound or substance from the surface or subsurface of the Land regardless of the depth thereof or the method of mining or extraction thereof and agree to defend, indemnify, save and hold Beneficiary, its officers, agents,

**App. 039**

servants, employees, successors and assigns harmless from any and all claims, liabilities, losses or expenses which may be incurred by Beneficiary, and any and all other expenses or losses, either direct or consequential, which are attributable, or alleged in any way to be attributable, to the development and exploitation of mineral rights in, on or around the Property by Grantor or any other party; and

(q)    subject to the provisions of Section 7.7 hereof, pay on demand all reasonable and bona fide out-of-pocket costs, fees and expenses and other expenditures, including, but not limited to, reasonable attorneys' fees and expenses, paid or incurred by Beneficiary or Trustee to third parties incident to this Deed of Trust or any other Loan Document (including, but not limited to, reasonable attorneys' fees and expenses in connection with the negotiation, preparation and execution hereof and of any other Loan Document and any amendment hereto or thereto, any release hereof, any consent, approval or waiver hereunder or under any other Loan Document, the making of any advance under the Note, and any suit to which Beneficiary or Trustee is a party involving this Deed of Trust or the Property) or incident to the enforcement of the Obligation or the exercise of any right or remedy of Beneficiary under any Loan Document.

## ARTICLE III

### EVENTS OF DEFAULT AND REMEDIES OF BENEFICIARY

Section 3.1.  *Events of Default*.  The term "Event of Default," as used herein, shall have the meaning ascribed to such term in that certain Loan Agreement of even date herewith, by and between Grantor, as borrower, and Beneficiary, as lender.

Section 3.2.  *Beneficiary's Remedies Upon an Event of Default*.  Upon an Event of Default, after the giving of any required notice and expiration of any applicable cure period provided in the Note, Beneficiary may, at Beneficiary's option, do any one or more of the following:

(a)    If Grantor has failed to keep or perform any covenant whatsoever contained in this Deed of Trust, Beneficiary may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant, and any payment made or expense incurred in the performance or attempted performance of any such covenant shall be and become a part of the Obligation, and Grantor promises, upon demand, to pay to Beneficiary, at the place where the Note is payable, all sums so advanced or paid by Beneficiary, with interest from the date when paid or incurred by Beneficiary at the rate provided in the Note for past due payment.  No such payment by Beneficiary shall constitute a waiver of any Event of Default.  In addition to the liens and security interests hereof, Beneficiary shall be subrogated to all rights, titles, liens and security interests securing the payment of any debt, claim, tax or assessment for the payment of which Beneficiary may make an advance, or which Beneficiary may pay.

(b)    Subject to any applicable grace period or notice and cure period set forth in the Loan Agreement, Beneficiary may, without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration or any other notice or any other action, all of which are hereby waived by Grantor and all other parties obligated in any manner whatsoever on the Obligation, declare the entire unpaid balance of the

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 8
L:\50423\251\DOTSecAgmt-FS.doc

**App. 040**

Obligation immediately due and payable, and upon such declaration, the entire, unpaid balance of the Obligation shall be immediately due and payable.

(c)    Beneficiary may request Trustee to proceed with foreclosure under the power of sale which is hereby conferred, such foreclosure to be accomplished in accordance with the following provisions:

(i)    Trustee is hereby authorized and empowered and it shall be Trustee's special duty, upon such request of Beneficiary, to sell the Property or any part thereof, with or without having taken possession of same. Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust. If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.

(ii)    In addition to the rights and powers of sale granted under the preceding provisions of this Subsection, if default is made in the payment of any installment of the Obligation, Beneficiary may, at Beneficiary's option, at once or at any time thereafter while any matured installment remains unpaid, without declaring the entire Obligation to be due and payable, orally or in writing direct Trustee to enforce this trust and to sell the Property subject to such unmatured indebtedness and to the rights, powers, liens, security interests and assignments securing or providing recourse for payment of such unmatured indebtedness, in the same manner, all as provided in the preceding provisions of this Subsection. Sales made without maturing the Obligation may be made hereunder whenever there is a default in the payment of any installment of the Obligation, without exhausting the power of sale granted hereby, and without affecting in any way the power of sale granted under this Subsection, the unmatured balance of the Obligation or the rights, powers, liens, security interests and assignments securing or providing recourse for payment of the Obligation.

(iii)    Sale of a part of the Property shall not exhaust the power of sale, but sales may be made from time to time until the Obligation is paid and performed in full. It is intended by each of the foregoing provisions of this Subsection that Trustee may, after any request or direction by Beneficiary, sell not only the Land and the Improvements, but also the Accessories and other interests constituting a part of the Property or any part thereof, along with the Land and the Improvements or any part thereof, as a unit and as a part of a single sale, or may sell any part of the Property separately from the remainder of the Property. It shall not be necessary to have present or to exhibit at any sale any of the Property.

(iv)    After any sale under this Subsection, Trustee shall make good and sufficient deeds, assignments and other conveyances to the purchaser or purchasers thereunder in the name of Grantor, conveying the Property or any part thereof so sold to the purchaser or purchasers with general warranty of title by Grantor. It is agreed that, in any deeds, assignments or other conveyances given by Trustee, any and all statements of fact or other

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 9
I:\50423\251\DOTSecAgmt-FS.doc

**App. 041**

recitals therein made as to the identity of Beneficiary, or as to the occurrence or existence of any Event of Default, or as to the acceleration of the maturity of the Obligation, or as to the request to sell, notice of sale, time, place, terms and manner of sale, and receipt, distribution and application of the money realized therefrom, or as to the due and proper appointment of a substitute trustee, and, without being limited by the foregoing, as to any other act or thing having been duly done by or on behalf of Beneficiary or by or on behalf of Trustee, shall be taken by all courts of law and equity as prima facie evidence that the said statements or recitals state facts and are without further question to be so accepted, and Grantor does hereby ratify and confirm any and all acts that Trustee may lawfully do in the premises by virtue hereof.

(d)     Beneficiary may, or Trustee may upon written request of Beneficiary, proceed by suit or suits, at law or in equity, to enforce the payment and performance of the Obligation in accordance with the terms hereof and of the Note or the Loan Documents, to foreclose the liens and security interests of this Deed of Trust as against all or any part of the Property, and to have all or any part of the Property sold under the judgment or decree of a court of competent jurisdiction.

(e)     Beneficiary, as a matter of right and without regard to the sufficiency of the security, and without any showing of insolvency, fraud or mismanagement on the part of Grantor, and without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of the Property or any part thereof, and of the income, rents, issues and profits thereof.

(f)     Beneficiary may enter upon the Land, take possession of the Property and remove the Accessories or any part thereof, with or without judicial process, and, in connection therewith, without any responsibility or liability on the part of Beneficiary, take possession of any property located on or in the Property which is not a part of the Property and hold or store such property at Grantor's expense.

(g)     Beneficiary may require Grantor to assemble the Accessories or any part thereof, and make them available to Beneficiary at a place to be designated by Beneficiary which is reasonably convenient to Grantor and Beneficiary.

(h)     After notification, if any, hereafter provided in this Subsection, Beneficiary may sell, lease or otherwise dispose of, at the office of Beneficiary or on the Land or elsewhere, as chosen by Beneficiary, all or any part of the Accessories, in their then condition, or following any commercially reasonable preparation or processing, and each Sale (as used in this Subsection, the term "Sale" means any sale, lease, or other disposition made pursuant to this Subsection) may be as a unit or in parcels, by public or private proceedings, and by way of one or more contracts, and, at any Sale it shall not be necessary to exhibit the Accessories or part thereof being sold. The Sale of any part of the Accessories shall not exhaust Beneficiary's power of sale, but Sales may be made from time to time until the Obligation is paid and performed in full. Reasonable notification of the time and place of any public Sale pursuant to this Subsection, or reasonable notification of the time after which any private Sale is to be made pursuant to this Subsection, shall be sent to Grantor and to any other person entitled under the Code (as hereinafter defined) to notice; provided that if the Accessories or part thereof being sold are perishable, or threaten to decline rapidly in value, or are of a type customarily sold on a recognized market, Beneficiary may sell, lease or otherwise dispose of

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 10
L:\50423\251\DOTSecAgmt-FS doc

**App. 042**

the Accessories, or part thereof, without notification, advertisement or other notice of any kind. It is agreed that notice sent or given not less than ten (10) calendar days prior to the taking of the action to which the notice relates, is reasonable notification and notice for the purposes of this Subsection.

(i)    Beneficiary may surrender the insurance policies maintained pursuant to Subsection 2.2(c) hereof or any part thereof, and receive and apply the unearned premiums as a credit on the Obligation and, in connection therewith, Grantor hereby appoints Beneficiary as agent and attorney-in-fact for Grantor to collect such premiums.

(j)    Beneficiary may retain the Accessories in satisfaction of the Obligation whenever the circumstances are such that Beneficiary is entitled to do so under the Code.

(k)    Beneficiary may buy the Property or any part thereof at any public sale or judicial sale.

(l)    Beneficiary may buy the Accessories or any part thereof at any private sale, if the Accessories or part thereof being sold are a type customarily sold in a recognized market or a type subject to widely distributed standard price quotations.

(m)    Beneficiary shall have and may exercise any and all other rights and remedies which Beneficiary may have at law or in equity, or by virtue of any Loan Document, or under the Code, or otherwise.

(n)    Beneficiary may apply the reserves, if any, required by Section 6.3 hereof toward payment of the Obligation.

Section 3.3.    *Beneficiary as Purchaser*.  If Beneficiary is the purchaser of the Property or any part thereof, at any sale thereof, whether such sale be under the power of sale hereinabove vested in Trustee or upon any other foreclosure of the liens and security interests hereof, or otherwise, Beneficiary shall, upon any such purchase, acquire good title to the Property so purchased, free of the liens and security interests hereof, unless the sale was made subject to an unmatured portion of the Obligation and Beneficiary elects that no merger occur.

Section 3.4.    *Other Rights of Beneficiary*.  Should any part of the Property come into the possession of Beneficiary, whether before or after an Event of Default, Beneficiary may use or operate the Property for the purpose of preserving it or its value, pursuant to the order of a court of appropriate jurisdiction or in accordance with any other rights held by Beneficiary in respect of the Property. Grantor covenants promptly to reimburse and pay to Beneficiary on demand, at the place where the Note is payable, the amount of all reasonable expenses (including the cost of any insurance, taxes or other charges) incurred by Beneficiary in connection with Beneficiary's custody, preservation, use or operation of the Property, together with interest thereon from the date incurred by Beneficiary at the rate provided in the Note for past-due principal, and all such expenses, costs, taxes, interest and other charges shall be and become a part of the Obligation. It is agreed, however, that the risk of loss or damage to the Property is on Grantor, and Beneficiary shall have no liability whatsoever for decline in value of the Property, for failure to obtain or maintain insurance, or for failure to determine whether insurance in force is adequate as to amount or as to the risks insured.

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 11
L:\50423\251\DOTSecAgmt-FS.doc

**App. 043**

Section 3.5 *Possession After Foreclosure*. If the liens or security interests hereof shall be foreclosed by power of Trustee's sale, by judicial action or otherwise, the purchaser at any such sale shall receive, as an incident to Trustee's ownership, immediate possession of the property purchased, and if Grantor or Grantor's successors shall hold possession of said property or any part thereof, subsequent to foreclosure, Grantor and Grantor's successors shall be considered as tenants at sufferance of the purchaser at foreclosure sale (without limitation of other rights or remedies, at a reasonable rental per day, due and payable daily, based upon the value of the portion of the Property so occupied), and anyone occupying such portion of the Property after demand is made for possession thereof shall be guilty of forcible detainer and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, and all damages by reason thereof are hereby expressly waived.

Section 3.6. *Application of Proceeds*. The proceeds from any sale, lease or other disposition made pursuant to this Article, or the proceeds from the surrender of any insurance policies pursuant to Subsection 3.2(i) hereof, or any rental collected by Beneficiary from the Property, or the reserves required by Section 6.3 hereof, or sums received pursuant to Section 6.1 hereof, or proceeds from insurance which Beneficiary elects to apply to the Obligation pursuant to Section 6.2 hereof, shall be applied by Trustee, or by Beneficiary, as the case may be, as follows: first, to the payment of all expenses of advertising, selling and conveying the Property or part thereof, including reasonable attorneys' fees; second, to accrued interest on the Obligation; third, to principal on the matured portion of the Obligation; fourth, to prepayment of the unmatured portion, if any, of the Obligation applied to installments of principal in inverse order of maturity; and fifth, the balance, if any, remaining after the full and final payment and performance of the Obligation, to the person or persons legally entitled thereto.

Section 3.7. *Abandonment of Sale*. In the event a foreclosure hereunder is commenced by Trustee in accordance with Subsection 3.2(c) hereof, Beneficiary may, at any time before the sale, direct Trustee to abandon the sale, and may then institute suit for the collection of the Note and for the foreclosure of the liens and security interests hereof. If Beneficiary should institute a suit for the collection of the Note and for a foreclosure of the liens and security interests hereof, Beneficiary may, at any time before the entry of a final judgment in said suit, dismiss the same and require Trustee to sell the Property or any part thereof in accordance with the provisions of this Deed of Trust.

Section 3.8. *Payment of Fees*. If the Note or any other part of the Obligation shall be collected or enforced by legal proceedings, whether through a probate or bankruptcy court or otherwise, or shall be placed in the hands of an attorney for collection after maturity, whether matured by the expiration of time or by an option given to the beneficiary to mature same, or if Beneficiary becomes a party to any suit where this Deed of Trust or the Property or any part thereof is involved, Grantor agrees to pay Beneficiary's attorneys' and collection fees, and such fees shall be and become a part of the Obligation.

Section 3.9. *Indemnification of Trustee*. Except for gross negligence or willful misconduct, Trustee shall not be liable for any act or omission or error of judgment. Trustee may rely on any document believed by Trustee in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 12
L:\5042\251\DOTSecAgmt-FS.doc

**App. 044**

extent required by law), and Trustee shall not be liable for interest thereon. Grantor shall indemnify Trustee against all liability and expenses which Trustee may incur in the performance of Trustee's duties hereunder.

Section 3.10. *Substitute Trustee*. Beneficiary may appoint a substitute Trustee (a) if Trustee herein named or any substitute Trustee shall die, resign, or fail, refuse or be unable, for any reason, to make any such sale or to perform any of the trusts herein declared; or (b) at the option of Beneficiary from time to time as often and whenever Beneficiary prefers and with or without any reason or cause. Each appointment shall be in writing, but without the necessity of recordation, notice to Grantor, or any other action or formality. Each substitute trustee so appointed shall thereupon by such appointment become Trustee and succeed to all the estates, titles, rights, powers, trusts and duties of predecessor Trustee. Any such appointment may be executed by Beneficiary or any authorized representative of Beneficiary, and such appointment shall be presumed conclusively to have been executed with due and proper authority. Without limiting the generality of the foregoing, if Beneficiary is a corporation, bank or association, of any type or character, such appointment may be executed in its behalf by any officer of Beneficiary and shall be presumed conclusively to have been executed with due and proper authority without necessity of proof of any action by the board of directors or any superior officer. Wherever herein the word "Trustee" is used, the same shall mean the duly appointed trustee or substitute trustee hereunder at the time in question. Trustee may resign by written notice to Beneficiary.

Section 3.11. *Waiver of Deficiency Statute*.

(a) In the event an interest in any of the Property is foreclosed upon pursuant to a judicial or non-judicial foreclosure sale, Grantor agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Grantor agrees that Beneficiary shall be entitled to seek a deficiency judgment from Grantor and/or any other party obligated on the Obligation equal to the difference between the amount owing on the Obligation and the amount for which the Property was sold pursuant to judicial or non-judicial foreclosure sale. Grantor expressly recognizes that this Subsection (a) constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Grantor and other persons against whom recovery of deficiencies is sought or guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Grantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Grantor and/or others against whom recovery of a deficiency is sought.

(b) Alternatively, in the event the waiver provided for in Subsection (a) above is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as amended from time to time): (i) the Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                                    PAGE 13
L:\50423\251\DOTSecAgmt-FS.doc

App. 045

Property will be repaired or improved in any manner before a resale of the Property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Property for cash promptly (but no later than twelve [12] months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Property, including, without limitation, brokerage commissions, title insurance, a survey of the Property, tax prorations, attorneys' fees, and marketing costs: (iv) the gross fair market value of the Property shall be further discounted to account for any estimated holdings costs associated with maintaining the Property pending sale, including, without limitation, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership expenses, and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Property must be given by persons having at least five (5) years' experience in appraising property similar to the Property and who have conducted and prepared a complete written appraisal of the Property taking into consideration the factors set forth above.

ARTICLE IV

SECURITY AGREEMENT

This Deed of Trust is also a security agreement between Grantor, as debtor, and Beneficiary, as secured party. Grantor hereby grants to Beneficiary and Beneficiary's successors and assigns, a security interest in those portions of the Property which constitute Accessories and each and every part thereof, and in all proceeds from the sale, lease or other disposition thereof, and in all sums, proceeds, funds and reserves described or referred to in Sections 6.1, 6.2 and 6.3 hereof. However, the grant of a security interest in proceeds shall not be deemed to authorize any action otherwise prohibited herein. The security interest created hereby is specifically intended to cover and include all leases of the Property (in this Article IV, together with all amendments and supplements thereto made as provided therein, called the "Leases"), between Grantor (or parties acting on behalf of Grantor), as lessor or as successor to or assignee from the lessor, and tenants which occupy the Property under the Leases, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacements of said Leases, together with all the right, title and interest of Grantor, as lessor thereunder, including, without limiting the generality of the foregoing, the present and continuing right to make claim for, collect, receive and receipt for any and all of the rents, income, revenues, issues and profits and moneys payable as damages or in lieu of rent and moneys payable as the purchase price of the Property or any part thereof or of awards or claims for money and other sums of money payable or receivable thereunder howsoever payable, and to bring actions and proceedings thereunder or for the enforcement thereof, and to do any and all things which Grantor or any lessor is or may become entitled to do under the Leases, all as assigned to Beneficiary in accordance with Article V hereof; provided, that this provision and said Article V shall not impair or diminish any obligation of Grantor under the Leases, nor shall any obligation be imposed upon Beneficiary. In addition to Beneficiary's rights hereunder or otherwise, Beneficiary shall have all of the rights of a secured party under the Texas Business and Commerce Code, as amended (the "Code"). Grantor, from time to time, upon each request of Beneficiary, shall promptly (a) execute and deliver to Beneficiary all financing statements as required by Beneficiary in order to establish or maintain the validity, perfection or priority of the security interest with respect to the

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 14
L:\50423\251\DOTSecAgmt-FS.doc

**App. 046**

Accessories or fixtures; (b) pay to Beneficiary on demand all costs of preparation and filing of financing statements pursuant hereto and all costs of Code searches reasonably required by Beneficiary; and (c) give to Beneficiary a certificate in form satisfactory to Beneficiary listing all trade names of Grantor and under which Grantor operates or intends to operate the Property or any part thereof, and give to Beneficiary advance written notice of any proposed change of any such trade name and of any change of name (or trade name or assumed name), identity or structure of Grantor. A carbon, photographic or other reproduction of this Deed of Trust or of a financing statement executed pursuant hereto is sufficient as a financing statement. This Deed of Trust is, without limitation, intended to be a financing statement filed as a fixture filing with respect to the portions of the Property which are or are to become fixtures, and as mineral, crop and timber filing. The address of Grantor (debtor) is set forth on the first page hereof and the address of Beneficiary (secured party) from whom information concerning the security interest may be obtained, is set forth in Section 1.1 hereof. Grantor is the record owner of the Land, the Improvements and the Accessories.

ARTICLE V

ASSIGNMENT OF RENTS, LEASES, PROFITS,
INCOME, CONTRACTS AND BONDS

Section 5.1. *Assignment of Leases.* Grantor hereby assigns to Beneficiary all existing and future leases, including, without limitation, all subleases thereof, and any and all extensions, renewals, modifications and replacements thereof, upon any part of the Property (collectively, the "Leases"). Grantor hereby further assigns to Beneficiary all guaranties of tenants' performance under the Leases. Prior to an Event of Default, Grantor shall have the right, without joinder of Beneficiary, to enforce the Leases, unless Beneficiary directs otherwise.

Section 5.2. *Assignment of Rents.* Grantor does hereby absolutely and unconditionally assign, transfer and set over to Beneficiary all rents, income, receipts, revenues, issues, profits and proceeds to be derived from the Property, including, without limitation, the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other sums of money that may now or at any time hereafter become due and payable to Grantor under the terms of any leases now or hereafter covering the Property, or any part thereof, including, but not limited to, minimum rents, additional rents, percentage rents, deficiency rents and liquidated damages following an Event of Default, all proceeds payable under any policy of insurance covering the loss of rents resulting from untenantability caused by destruction or damage to the Property, and all of Grantor's rights to recover monetary amounts from any tenant in bankruptcy, including, without limitation, rights of recovery for use and occupancy and damage claims arising out of lease defaults, including rejections, under the United States Bankruptcy Code or any other present or future federal or state insolvency, bankruptcy or similar law, together with any sums of money that may now or at any time hereafter become due and payable to Grantor by virtue of any and all royalties, overriding royalties, bonuses, delay rentals and any other amount of any kind or character arising under any and all present and future oil, gas and mining leases covering the Property or any part thereof (collectively, the "Rents"); and all proceeds and other amounts paid or owing to Grantor under or pursuant to any and all contracts and bonds relating to the construction, erection or renovation of the Property; subject however to a license hereby granted by Beneficiary to Grantor to

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 15
L:\50423\251\DOTSecAgmt-FS.doc

**App. 047**

collect and receive all of the foregoing (such license evidenced by Beneficiary's acceptance of this Deed of Trust), subject to the terms and conditions hereof. Notwithstanding anything contained herein or in any of the other Loan Documents to the contrary, the assignment in this Paragraph is an absolute, unconditional and presently effective assignment and not merely a security interest; provided, however, upon the occurrence of an Event of Default hereunder, such license shall automatically and immediately terminate and Grantor shall hold all Rents paid to Grantor thereafter in trust for the use and benefit of Beneficiary and Beneficiary shall have the right, power and authority, whether or not it takes possession of the Property, to seek enforcement of any such lease, contract or bond and to demand, collect, receive, sue for and recover in its own name any and all of the above described amounts assigned hereby and to apply the sum(s) collected, first to the payment of expenses incident to the collection of the same, and the balance to the payment of the Obligation; provided further, however, that Beneficiary shall not be deemed to have taken possession of the Property except on the exercise of its option to do so, evidenced by its demand and overt act for such purpose. It shall not be necessary for Beneficiary to institute any type of legal proceedings or take any other action whatsoever to enforce the assignment provisions in this Section 5.2. It is the intent of Grantor and Beneficiary that this Section 5.2 of this Deed of Trust comply with Chapter 64 of the Texas Property Code, as amended from time to time. To the extent there is an inconsistency between the terms of this Section 5.2 of this Deed of Trust and Chapter 64 of the Texas Property Code, then Chapter 64 of the Texas Property Code shall control.

Section 5.3. *Warranties Concerning Leases and Rents.* Grantor represents and warrants that:

(a)     Grantor has good title to the Leases and Rents and authority to assign them, and no other person or entity has any right, title or interest therein;

(b)     all existing Leases are valid, unmodified and in full force and effect, except as indicated herein, and no default exists thereunder;

(c)     unless otherwise provided herein, no Rents have been or will be assigned, mortgaged or pledged;

(d)     no Rents have been or will be anticipated, waived, released, discounted, set off or compromised; and

(e)     except as indicated in the Leases, Grantor has not received any funds or deposits from any tenant for which credit has not already been made on account of accrued Rents.

Section 5.4. *Grantor's Covenants of Performance.* Grantor covenants to:

(a)     perform all of its obligations under the Leases and give prompt notice to Beneficiary of any failure to do so;

(b)     give immediate notice to Beneficiary of any notice Grantor receives from any tenant or subtenant under any Leases, specifying any claimed default by any

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 16
L:\50423\251\DOTSecAgmt-FS.doc

**App. 048**

party under such Leases, excluding, however, notices of default under residential leases;

(c)    enforce the tenant's obligations under the Leases;

(d)    defend, at Grantor's expense, any proceeding pertaining to the Leases, including, if Beneficiary so requests, any such proceeding to which Beneficiary is a party; and

(e)    neither create nor permit any encumbrance upon its interest as lessor of the Leases, except this Deed of Trust and any other encumbrances permitted by this Deed of Trust.

Section 5.5. *Prior Approval for Actions Affecting Leases*. Grantor shall not, without the prior written consent of Beneficiary:

(a)    receive or collect Rents more than one month in advance;

(b)    encumber or assign future Rents;

(c)    waive or release any material obligation of any tenant under the Leases;

(d)    cancel or terminate any of the Leases; cause or permit any cancellation, termination or surrender of any of the Leases; or commence any proceedings for dispossession of any tenant under any of the Leases, except upon default by the tenant thereunder;

(e)    renew, extend or modify any of the Leases other than at the prevailing market rate except as may be provided in any such Lease;

(f)    permit any assignment of the Leases; or

(g)    enter into any Leases other than at the prevailing market rate.

Section 5.6. *Settlement for Termination*. Grantor agrees that no settlement for damages for termination of any of the Leases under the Federal Bankruptcy Code, or under any other federal, state or local statute, shall be made without the prior written consent of Beneficiary, and any check in payment of such damages will be made payable to both Grantor and Beneficiary. Grantor hereby assigns any such payment to Beneficiary to be applied to the Obligation as Beneficiary may elect and agrees to endorse any check for such payment to the order of Beneficiary.

Section 5.7. *Beneficiary in Possession*. Beneficiary's acceptance of this assignment shall not, prior to entry upon and taking possession of the Property by Beneficiary, be deemed to constitute Beneficiary a "mortgagee in possession," nor obligate Beneficiary to appear in or defend any proceedings relating to any of the Leases or to the Property, take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under the Leases, or assume

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT          PAGE 17
L:\50423\251\DOTSecAgmt-FS.doc

**App. 049**

any obligation for any deposits delivered to Grantor by any tenant and not delivered to Beneficiary. Beneficiary shall not be liable for any injury or damage to any person or property in or about the Property.

Section 5.8. *Appointment of Attorney*. Grantor hereby irrevocably appoints Beneficiary its attorney-in-fact, coupled with an interest, empowering Beneficiary to subordinate any Leases to this Deed of Trust.

Section 5.9. *Indemnification*. Grantor hereby indemnifies and holds Beneficiary (which shall include the directors, officers, partners, employees, representatives and agents of Beneficiary and any persons or entities owned or controlled by, owning or controlling, or under common control or affiliated with Beneficiary) harmless from all liability, damage or expense imposed on or incurred by Beneficiary from any claims under the Leases, including, without limitation, any claims by Grantor with respect to payments of Rents made directly to Beneficiary after an Event of Default and claims by any tenant for security deposits or for rental payments more than one (1) month in advance and not delivered to Beneficiary. All amounts indemnified against hereunder, including, without limitation, attorneys' fees, if paid by Beneficiary shall bear interest at the maximum lawful rate and shall be payable by Grantor in accordance with Section 1.1 hereof. The foregoing indemnities shall not terminate upon the foreclosure, release or other termination of this Deed of Trust but will survive foreclosure of this Deed of Trust or conveyance in lieu of foreclosure and the repayment of the Obligation and the discharge and release of this Deed of Trust and the other Loan Documents for a period of eighteen (18) months.

Section 5.10. *Records*. Upon request by Beneficiary, Grantor shall deliver to Beneficiary executed copies of all Leases, amendments thereto and copies of all payment histories relating thereto.

Section 5.11. *Merger*. There shall be no merger of the leasehold estates, created by the Leases, with the fee estate of the Land without the prior written consent of Beneficiary.

Section 5.12. *Right to Rely*. Grantor hereby irrevocably authorizes and directs the tenants under the Leases to pay Rents to Beneficiary upon written demand by Beneficiary without further consent of Grantor, and the tenants may rely upon any written statement delivered by Beneficiary to the tenants. Any such payment to Beneficiary shall constitute payment to Grantor under the Leases. The provisions of this Paragraph are intended solely for the benefit of the tenants and shall never inure to the benefit of Grantor or any person claiming through or under Grantor, other than a tenant who has not received such notice. The assignment of Rents set forth in Section 5.2 is not contingent upon any notice or demand by Beneficiary to the tenants.

ARTICLE VI

SPECIAL PROVISIONS

Section 6.1. *Condemnation Proceeds*. Beneficiary shall be entitled to receive any and all sums which may be awarded or become payable to Grantor for the condemnation of the Property or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 18
L:\50423\251\DOTSecAgmt-FS.doc

**App. 050**

sums which may be awarded or become payable to Grantor for damages caused by public works or construction on or near the Property. All such sums are hereby assigned to Beneficiary and Grantor shall, upon request of Beneficiary, make, execute, acknowledge and deliver any and all additional assignments and documents as may be necessary from time to time to enable Beneficiary to collect and receipt for any such sums. Beneficiary shall not be, under any circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any of such sums. Any sums received by Beneficiary as a result of condemnation shall be applied to installments on the Obligation in inverse order of maturity. Notwithstanding the foregoing provisions of this Section 6.1, Beneficiary shall only be entitled to receive that portion of any condemnation proceeds which is equal to the total Obligation then outstanding. However, if there shall occur any damage to or destruction of the Property or any part thereof due to such condemnation, and if (i) in the reasonable judgment of Beneficiary, the Property can be restored, within a reasonable time and in any event prior to twelve (12) before the maturity date of the Note, to an economic unit not less valuable than the same was prior to such condemnation and adequately securing the obligation, and (ii) Beneficiary receives assurances satisfactory to Beneficiary that tenancies or other sources of revenue from the Property will continue in full force and effect after restoration subject only to rent abatement during the period when any leased premises are untenantable, then, if and so long as there is no Event of Default hereunder, Beneficiary will make available to Grantor for such restoration, proceeds of condemnation, if any, collected by Beneficiary because of the act or occurrence and not restricted by any adverse claim thereto.

Section 6.2. *Insurance Proceeds*. The proceeds of any and all insurance upon the Property shall be collected by Beneficiary, and subject to the next sentence, Beneficiary shall have the option, in Beneficiary's sole discretion, to apply any proceeds so collected either to the restoration of the Property or to the liquidation of the Obligation. However, if there shall occur any insured damage to or destruction of the Property or any part thereof, and if (i) in the reasonable judgment of Beneficiary, the Property can be restored, within a reasonable time and in any event prior to twelve (12) before the maturity date of the Note, to an economic unit not less valuable than the same was prior to such insured casualty and adequately securing the obligation, and (ii) Beneficiary receives assurances satisfactory to Beneficiary that tenancies or other sources of revenue from the Property will continue in full force and effect after restoration subject only to rent abatement during the period when any leased premises are untenantable, then, if and so long as there is no Event of Default hereunder, Beneficiary will make available to Grantor for such restoration, proceeds of insurance, if any, collected by Beneficiary because of the act or occurrence and not restricted by any adverse claim thereto.

Section 6.3. *Reserve for Taxes, Assessments and Insurance Premiums*. Upon Grantor's failure to perform the covenants of this Deed of Trust concerning the delivery to Beneficiary of evidence of the payment of taxes and insurance premiums on the Property and upon written request by Beneficiary, Grantor shall create a fund or reserve for the payment of all insurance premiums, taxes and assessments against or affecting the Property by paying to Beneficiary, on the first day of each calendar month prior to the maturity of the Note, a sum equal to the premiums that will next become due and payable on the hazard insurance policies covering the Property or any part thereof, plus taxes and assessments next due on the Property or any part thereof as estimated by Beneficiary, less all sums paid previously to Beneficiary therefor divided by the number of months to elapse before one (1) month prior to the date when such premiums, taxes and assessments will become due; such

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                                    PAGE 19
L:\50423\251\DOTSecAgmt-FS.doc

**App. 051**

sums to be held by Beneficiary without interest, unless interest is required by applicable law, for the purposes of paying such premiums, taxes and assessments. Any excess reserve shall, at the discretion of Beneficiary, be credited by Beneficiary on subsequent reserve payments or subsequent payments to be made on the Note by the maker thereof, and any deficiency shall be paid by Grantor to Beneficiary on or before the date when such premiums, taxes and assessments shall become delinquent. In the event there exists deficiency in such fund or reserve at any time when taxes, assessments or insurance premiums are due and payable, Beneficiary may, but shall not be obligated to, advance the amount of such deficiency on behalf of Grantor and such amounts so advanced shall become a part of the Obligation, shall be immediately due and payable, and shall bear interest at the rate provided in the Note from the date of such advance through and including the date of repayment. Transfer of legal title to the Property shall automatically transfer the interest of Grantor in all sums deposited with Beneficiary under the provisions hereof or otherwise.

Section 6.4. *Right to Accelerate Upon Transfer*. If Grantor shall sell, convey, assign or transfer all or any part of the Property or any interest therein or any beneficial interest in Grantor, Beneficiary may, at Beneficiary's option, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Grantor and all other parties obligated in any manner on the Obligation, declare the Obligation to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment or transfer, and upon such declaration the entire unpaid balance of the Obligation shall be immediately due and payable. Beneficiary may, in Beneficiary's sole discretion and at Grantor's request, decide not to exercise said option, in which event Beneficiary's forbearance may be predicated on such terms and conditions as Beneficiary may, in Beneficiary's sole discretion require, including, but not limited to, Beneficiary's approval of the transferee's creditworthiness and management ability, the execution and delivery to Beneficiary by transferee prior to the sale, transfer, assignment or conveyance of a written assumption agreement containing such terms as Beneficiary may require, including, but not limited to, a payment of a part of the principal amount of the Obligation, an increase in the rate of interest payable by the Obligation, the payment of an assumption fee, a modification of the term of the Obligation and such other terms as Beneficiary may require, or Beneficiary may require any of such modifications of the terms of the Obligation without requiring an assumption thereof by the transferee. Should the Property be sold, traded, transferred, assigned, exchanged or otherwise disposed of without the prior written consent of Beneficiary and should payment of any portion of the Obligation thereafter be accepted by Beneficiary, such acceptance shall not be deemed a waiver of the requirement of Beneficiary's consent in writing thereto or with respect to any other sale, trade, transfer, assignment, exchange or other disposition. Notwithstanding the foregoing, said option shall not apply in case of: (a) sales or transfers of items of the Accessories which have become obsolete or worn beyond practical use and which have been replaced by adequate substitutes having a value equal to or greater than the replaced items when new; and (b) the grant, in the ordinary course of business, of a leasehold interest in a part of the Property which is in compliance with Section 5.5 of this Deed of Trust provided such lease does not contain an option to purchase.

Section 6.5. *Subordinate Financing*. If Grantor, without the prior written consent of Beneficiary, executes or delivers any pledge, security agreement, mortgage or deed of trust covering all or any portion of the Property (hereinafter called "Subordinate Mortgage"), Beneficiary may, at Beneficiary's option, which option may be exercised at any time following such pledge, security

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                                    PAGE 20
L:\50423\251\DOTSecAgmt-FS.doc

**App. 052**

agreement, mortgage or deed of trust, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Grantor and all other parties obligated in any manner on the Obligation, declare the Obligation to be immediately due and payable. In the event of consent by Beneficiary to the granting of a Subordinate Mortgage, or in the event the above-described right of Beneficiary to declare the Obligation to be immediately due and payable upon the granting of a Subordinate Mortgage without the prior written consent of Beneficiary is determined by a court of competent jurisdiction to be unenforceable under the provisions of any applicable law, Grantor will not execute or deliver any Subordinate Mortgage unless (i) it shall contain express covenants to the effect: (a) that the Subordinate Mortgage is in all respects unconditionally subject and subordinate to the lien and security interest evidenced by this Deed of Trust and each term and provision hereof; (b) that if any action or proceeding shall be instituted to foreclose the Subordinate Mortgage (regardless of whether the same is a judicial proceeding or pursuant to a power of sale contained therein), no tenant of any portion of the Property will be named as a party defendant, nor will any action be taken with respect to the Property which would terminate any occupancy or tenancy of the Property without the prior written consent of Beneficiary; (c) that the rents and profits, if collected through a receiver or by the holder of the Subordinate Mortgage, shall be applied first to the obligations secured by this Deed of Trust, including principal and interest due and owing on or to become due and owing on the Note and the other indebtedness secured hereby, and then to the payment of maintenance, operating charges, taxes, assessments, and disbursements incurred in connection with the ownership, operation and maintenance of the Property; and (d) that if any action or proceeding shall be brought to foreclose the Subordinate Mortgage (regardless of whether the same is a judicial proceeding or pursuant to a power of sale contained therein), written notice of the commencement thereof will be given to Beneficiary contemporaneously with the commencement of such action or proceeding; and (ii) a copy thereof shall have been delivered to Beneficiary not less than ten (10) days prior to the date of the execution of such Subordinate Mortgage.

Section 6.6. *Environmental Matters; Compliance with Laws.* Grantor warrants and represents to Beneficiary that (a) the occupancy, operation, and use of the Property shall not violate any applicable law, statute, ordinance, rule, regulation, order, or determination of any governmental authority or any board of fire underwriters (or other body exercising similar functions), or any restrictive covenant or deed restriction (of record or otherwise) affecting the Property, including, without limitation, applicable zoning ordinances and building codes, the Americans with Disabilities Act of 1990, flood disaster laws and health and environmental laws and regulations (hereinafter sometimes collectively called the "Applicable Regulations"); (b) Grantor and any lessee of space from Grantor in the Property shall obtain all permits, licenses, or similar authorizations required by reason of any Applicable Regulations pertaining to health or the environment (hereinafter sometimes collectively called "Applicable Environmental Laws"), including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") and the Resource Conservation and Recovery Act of 1976 ("RCRA"), as each is amended from time to time; and (c) the use that Grantor intends to make, or intends to allow, of the Property will not result in the disposal of or release of any hazardous substance or solid waste onto or into the Property, or any part thereof, in violation of any Applicable Environmental Laws. The terms (as used in this Deed of Trust) "hazardous substance" and "release" have the meanings specified in CERCLA, and the terms "solid waste" and "disposal" (or "disposed") have the meanings specified in RCRA. If either CERCLA or RCRA is amended to broaden the meaning of any term defined

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 21
L:\50423\251\DOTSecAgmt-FS.doc

**App. 053**

thereby, the broader meaning shall apply to this provision after the effective date of the amendment. Moreover, to the extent that Texas law establishes a meaning for "hazardous substance", "release", "solid waste", or "disposal" that is broader than that specified in either CERCLA or RCRA, the broader meaning shall apply.

Following an Event of Default and/or following a fact, circumstance or event which indicates the release of a Hazardous Substance on or adjacent to the Property, Beneficiary (through its officers, employees and agents) may employ persons (the "Site Reviewers") to conduct environmental site assessments ("Site Assessments") on the Property to determine whether or not there exists on the Property any environmental condition which might result in any liability, cost or expense to the owner, occupier or operator of the Property arising under the Applicable Environmental Laws. The Site Assessments may be performed at any time or times, upon reasonable notice, and under reasonable conditions established by Beneficiary (so as not to unreasonably interfere with the operation of the Property). The Site Reviewers are authorized at their own risk to enter upon the Property and to perform above and below-the-ground testing (including, without limitation, taking of core samples) to determine environmental damage or presence of any hazardous substance or solid waste in, on or under the Property and such other tests as may be necessary or desirable, in the opinion of the Site Reviewers, to conduct Site Assessments. Grantor will supply to the Site Reviewers such historical and operational information available to Grantor regarding the Property as may be requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters.

Grantor shall indemnify, defend (with counsel selected by Beneficiary) and hold Beneficiary harmless from and against, and reimburse Beneficiary with respect to, any and all claims, demands, causes of action, loss, damage, liabilities, costs, and expenses (including attorney's fees and court costs) of every kind or character, known or unknown, fixed or contingent, asserted against or incurred by Beneficiary at any time and from time to time by reason of or arising out of any violation of an Applicable Environmental Law and all matters arising out of acts, omissions, events, or circumstances relating to the Property (including, without limitation, the presence on the Property or release from or to the Property of hazardous substances or solid wastes disposed of or otherwise released and Grantor's breach of any of its covenants, representations or indemnities under this provision), regardless of whether the act, omission, event, or circumstance constituted a violation of any Applicable Environmental Law at the time of the existence or occurrence. The foregoing indemnities shall not terminate upon the foreclosure, release or other termination of this Deed of Trust but will survive foreclosure of this Deed of Trust or conveyance in lieu of foreclosure and the repayment of the Obligation and the discharge and release of this Deed of Trust and the other Loan Documents.

Section 6.7. _Appraisals_. Upon written request of Beneficiary, Grantor agrees to reimburse Beneficiary for the full cost of narrative appraisals of the Property, such appraisals being required once every other calendar year, in Beneficiary's sole discretion to re-evaluate the current value of the Property due to (a) a deterioration of Grantor's revenue from the Property, (b) an increase in Grantor's operating expenses for the Property, or (c) other events which would suggest a deterioration in the value of the Property. Each appraisal shall be ordered directly by Beneficiary from an appraiser satisfactory to Beneficiary and shall be in form and substance necessary to comply

App. 054

with all laws and regulations affecting Beneficiary. Grantor shall reimburse Beneficiary for any requested appraisal expense within thirty (30) days from the date of the written request by Beneficiary. Appraisals may be ordered by Beneficiary at any time in its sole discretion, but Grantor is required to reimburse Beneficiary for only one appraisal every other calendar year. Failure of Grantor to reimburse Beneficiary for any requested appraisal (not to exceed one appraisal in any twenty-four month period) shall constitute an Event of Default under this Deed of Trust.

Section 6.8. *Contest of Certain Claims*. Notwithstanding the provisions of Subsections 2.2(b) or 2.2(h) hereof, Grantor shall not be in default for failure to pay or discharge any tax, assessment, or mechanic's or materialmen's lien asserted against the Property if, and so long as, (a) Grantor shall have notified Beneficiary of same within five days of obtaining knowledge thereof; (b) Grantor shall diligently and in good faith contest the same by appropriate legal proceedings which shall operate to prevent the enforcement or collection of the same and the sale of the Property or any part thereof, to satisfy the same; (c) Grantor shall have furnished to Beneficiary a cash deposit, or an indemnity bond satisfactory to Beneficiary with a surety satisfactory to Beneficiary, in the amount of the tax, assessment or mechanic's or materialmen's lien claim, plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, to assure payment of the matters under contest and to prevent any sale or forfeiture of the Property or any part thereof; (d) Grantor shall promptly upon final determination thereof pay the amount of any such tax, assessment or claim so determined, together with all costs, interest and penalties which may be payable in connection therewith; (e) the failure to pay the tax, assessment or mechanic's or materialmen's lien claim does not constitute a default under any other deed of trust, mortgage or security interest covering or affecting any part of the Property; and (f) notwithstanding the foregoing, Grantor shall immediately upon request of Beneficiary pay (and if Grantor shall fail so to do, Beneficiary may, but shall not be required to, pay or cause to be discharged or bonded against) any such tax, assessment or claim notwithstanding such contest, if in the reasonable opinion of Beneficiary the Property shall be in jeopardy or in danger of being forfeited or foreclosed. Beneficiary may pay over any such cash deposit or part thereof to the claimant entitled thereto at any time when, in the judgment of Beneficiary, the entitlement of such claimant is established.

## ARTICLE VII

## MISCELLANEOUS

Section 7.1. *Release*. If the Obligation is paid in full in accordance with the terms of this Deed of Trust, the Note and the Loan Documents, and if Grantor shall well and truly perform all of Grantor's covenants contained herein, then this conveyance shall become null and void and be released at Grantor's request and expense and Beneficiary shall have no further obligation to make advances under and pursuant to the provisions hereunder or in the Note.

Section 7.2. *Rights Cumulative*. Beneficiary shall have all rights, remedies and recourses granted in the Loan Documents and available at law or in equity (including, without limitation, those granted by the Code and applicable to the Property or any portion thereof), and the same (a) shall be cumulative and concurrent, (b) may be pursued separately, successively or concurrently against Grantor or others obligated for the Obligation or any part thereof, or against any one or more of them, or against the Property, at the sole discretion of Beneficiary, (c) may be exercised as often as

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 23
L:\50423\2511\DOTSecAgmt-FS.doc

**App. 055**

occasion therefor shall arise, it being agreed by Grantor that the exercise, discontinuance of the exercise of or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. All rights and remedies of Beneficiary hereunder and under the other Loan Documents shall extend to any period after the initiation of foreclosure proceedings, judicial or otherwise, with respect to the Property.

Section 7.3. *Waiver*. Any and all covenants in this Deed of Trust may, from time to time, by instrument in writing signed by Beneficiary and delivered to Grantor, be waived to such extent and in such manner as Beneficiary may desire, but no such waiver shall ever affect or impair Beneficiary's rights, remedies, powers, privileges, liens, titles and security interests hereunder except to the extent so specifically stated in such written instrument. No waiver of any Event of Default on the part of Grantor or a breach of any of the provisions of this Deed of Trust or of any Loan Document shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers, and likewise no exercise or enforcement of any rights or powers hereunder shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time. No notice to or demand on Grantor in any case shall of itself entitle Grantor to any other or further notice or demand in similar or other circumstances. The granting of any consent or approval by Beneficiary shall be limited to the specific instance and shall not waive or exhaust the requirement of consent or approval in any other instance. Except as otherwise specified herein, in any instance hereunder where Beneficiary's approval or consent is required or the exercise of Beneficiary's judgment is required, the granting or denial of such approval or consent and the exercise of such judgment shall be within the sole discretion of Beneficiary, and Beneficiary shall not, for any reason or to any extent, be required to grant such approval or consent or exercise such judgment in any particular manner regardless of the reasonableness of the request or of Beneficiary's judgment.

Section 7.4. *Payments*. Remittances in payment of any part of the Obligation other than in the required amount in funds immediately available at the place where the Note is payable shall not, regardless of any receipt or credit issued therefor, constitute payment until the required amount is actually received by Beneficiary in funds immediately available at the place where the Note is payable (or such other place as Beneficiary, in Beneficiary's sole discretion, may have established by delivery of written notice thereof to Grantor) and shall be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Beneficiary of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be a default.

Section 7.5. *Exceptions to Covenants*. Grantor shall not be deemed to be permitted to take any action or to fail to take any action, notwithstanding (a) that the action or omission may be permitted as an exception to any of the covenants or conditions contained herein, or (b) that obligations of Grantor or rights of Beneficiary are provided herein with respect to the action or omission (or the result thereof), if the action or omission would result in the breach of any other covenant or condition contained herein or in any of the Loan Documents, nor shall Beneficiary be

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 24
L:\50423\251\DOTSecAgmt-FS.doc

App. 056

deemed to have consented to any such act or omission if the same would provide cause for acceleration of the Obligation.

Section 7.6. *Change of Security*. Any part of the Property may be released, regardless of consideration, by Beneficiary from time to time without impairing, subordinating or affecting in any way the lien, security interest and other rights hereof against the remainder. The lien, security interest and other rights granted hereby shall not be affected by any other security taken for the Obligation or any part thereof. The taking of additional security, or the extension, renewal or rearrangement of the Obligation or any part thereof, shall not release or impair the lien, security interest and other rights granted hereby, or affect the liability of any endorser or guarantor or improve the right of any junior lienholder; and this Deed of Trust, as well as any instrument given to secure any renewal, extension or rearrangement of the Obligation or any part thereof, shall be and remain a first and prior lien, except as otherwise provided herein, on all of the Property not expressly released until the Obligation is fully paid and performed.

Section 7.7. *Controlling Agreement*. The parties hereto intend to conform strictly to the applicable usury laws. All agreements between Grantor (and any other party liable for any part of the Obligation) and Beneficiary, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no event whatsoever, whether by reason of acceleration of the maturity of the Obligation or otherwise, shall the interest contracted for, charged or received by Beneficiary hereunder or otherwise exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever interest would otherwise be payable to Beneficiary in excess of the maximum lawful amount, the interest payable to Beneficiary shall be reduced automatically to the maximum amount permitted under applicable law. If Beneficiary shall ever receive anything of value deemed interest under applicable law which would apart from this provision be in excess of the maximum lawful amount, the amount which would have been excessive interest shall be applied to the reduction of the principal amount owing on the Obligation in inverse order of maturity and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid principal balance of the Obligation, such excess shall be refunded to Grantor, or to the maker of the Note or other evidence of indebtedness if other than Grantor. All interest paid or agreed to be paid to Beneficiary shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full stated term, including any renewal or extension, of such indebtedness so that the amount of interest on account of such indebtedness does not exceed the maximum permitted by applicable law. The terms and provisions of this section shall control and supersede every other provision of all existing and future agreements between Grantor, the maker of the Note or other evidence of indebtedness if other than Grantor, and Beneficiary.

Section 7.8. *Effect of Transfer on Grantor's Liability*. If the ownership (legal or beneficial) of the Property or any part thereof becomes vested in a person other than Grantor, or in the event of a change in ownership (legal or beneficial) of any Grantor other than an individual, Beneficiary may, without notice to or consent of Grantor or Grantor's successors, deal with such successor or successors in interest with reference to this Deed of Trust and the Obligation either by way of forbearance on the part of Beneficiary, or extension of time of payment of the Obligation, or release of all or any part of the property or any other property securing payment of the Obligation, or otherwise, without in any way modifying or affecting Beneficiary's rights and liens hereunder or the liability of Grantor or any other party liable for payment of the Obligation, in whole or in part.

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 25
L:\50423\251\DOTSecAgmt-FS.doc

**App. 057**

Section 7.9. *Waiver of Right to Marshal.* Grantor hereby waives all rights of marshaling in the event of any foreclosure of the liens and security interests hereby created.

Section 7.10. *Subrogation.* To the extent that proceeds of the Obligation are used to renew, extend or pay any outstanding debt or to perform any obligation, such proceeds have been advanced by Beneficiary at Grantor's request, and Beneficiary shall be subrogated to all liens, security interests, rights, priorities, powers, titles, equities and interests owned or held by any owner or holder of such outstanding debt or obligation, however remote, irrespective of whether the same are released of record, and all of the same are recognized as valid and subsisting and are renewed, continued and preserved in force to secure the Obligation; provided, however, that if and to the extent Beneficiary desires in each case, the terms and provisions hereof and of the other Loan Documents shall govern the rights and remedies of Beneficiary and shall supersede the terms, provisions, rights, and remedies under any lien, security interest, charge or other encumbrance to which Beneficiary is subrogated hereunder.

Section 7.11. *Covenant to Perform.* Grantor and each subsequent owner of the Property or any part thereof, covenants and agrees that Grantor or any subsequent owner will perform or cause to be performed, each and every condition, term, provision and covenant of this Deed of Trust, except that Grantor shall have no duty to pay the indebtedness evidenced by the Note except in accordance with the terms of the Note and all renewals and extensions thereof, and this Deed of Trust or in accordance with the terms of the transfer to Grantor or any subsequent owner.

Section 7.12. *Notice.* Except as otherwise provided herein, all notices, demands, requests and other communications required or permitted hereunder shall be in writing, and shall be deemed to be given and delivered when received, or if earlier and regardless of whether or not actually received (except where actual receipt is specified herein), upon deposit in a regularly maintained receptacle for the United States mail, registered or certified, postage fully prepaid, return receipt requested, addressed to the addressee at such addressee's address set forth herein or at such other address as such party may have specified theretofore by notice delivered in accordance with this Section and actually received by the addressee. To the extent actual receipt is required herein, rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was received shall be deemed to be receipt of the notice, demand, request or other communication sent.

Section 7.13. *Enforceability.* If any provision of this Deed of Trust or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Deed of Trust nor the application of such provision to any other person or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law. If the rights and liens created by this Deed of Trust shall be held by a court of competent jurisdiction to be invalid or unenforceable as to any part of the Obligation, the portion of the Obligation which as the result of such invalidity or unenforceability is no longer secured by the liens and security interests herein granted shall be completely paid prior to the payment of the portion, if any, of the Obligation which shall continue to be secured hereunder, and all payments made on the Obligation shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Obligation.

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT                    PAGE 26
L:\50423\251\DOTSecAgmt-FS.doc

**App. 058**

Section 7.14. *Binding Effect.* The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, personal representatives, successors, and assigns of the parties hereto and shall be covenants running with the Land. The term "Grantor" shall include in their individual capacities and jointly all parties hereinabove named a Grantor. The duties, covenants, conditions, obligations, and warranties of Grantor in this Deed of Trust shall be joint and several obligations of Grantor and, if more than one, of each party named a Grantor hereinabove, and each such party's heirs, personal representatives, successors and assigns. Each party who executes this Deed of Trust and each subsequent owner of the Property or any part thereof (other than Beneficiary), covenants and agrees that it will perform, or cause to be performed, each term, provision, covenant and condition of this Deed of Trust.

Section 7.15. *Headings; Construction.* The headings which have been used throughout this Deed of Trust have been inserted for convenience of reference only and do not constitute matter to be construed in interpreting this Deed of Trust. Words of any gender used in this Deed of Trust shall be held and construed to include any other gender and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise. The words "herein," "hereof," "hereunder" and other similar compounds of the words "here" when used in this Deed of Trust shall refer to the entire Deed of Trust and not to any particular provision or section.

Section 7.16. *Counterparts.* This Deed of Trust has simultaneously been executed in a number of identical counterparts, each of which, for all purposes, shall be deemed an original. If any Grantor is a corporation, this instrument is executed, acknowledged and delivered by Grantor's officers hereunto duly authorized.

Section 7.17. *Controlling Law.* This Deed of Trust shall be governed by and construed in accordance with Texas law and applicable United States federal law.

Section 7.18. *Renewal and Extension.* The Note is given in renewal and extension of a portion of the aggregate amount left owing and unpaid by Grantor herein upon that one certain Promissory Note in the principal sum of $2,190,948.00, dated September 11, 2014, executed by Grantor and payable to the order of Beneficiary, more fully described in and secured by that certain Deed of Trust, Security Agreement-Financing Statement of even date therewith, duly recorded under Instrument No. 2014-234364 of the Real Property Records of Dallas County, Texas, upon the Property, which lien is hereby expressly acknowledged and agreed, by Grantor to be a valid and subsisting lien against the Property, and it is expressly agreed that said lien is hereby renewed, extended and continued in full force and effect to secure the payment of the Note. Grantor further acknowledges and agrees that the Note and this Deed of Trust do not constitute a novation or a release of such indebtedness.

App. 059

EXECUTED as of the date first above written.

**GRANTOR**:

GOLDMARK HOSPITALITY, LLC,
a Texas limited liability company

By: Enoch Investments, LLC,
a Delaware limited liability company,
its Sole Member and Managing Member

By: _____
Timothy Barton, its Managing Member

STATE OF TEXAS          §
                        §
COUNTY OF Dallas        §

This instrument was acknowledged before me on the 14th day of November, 2019, by Timothy Barton, the Managing Member of Enoch Investments, LLC, a Delaware limited liability company, the Sole Member and Managing Member of Goldmark Hospitality, LLC, a Texas limited liability company, on behalf of said limited liability company, for the purposes and consideration therein expressed.



JENNIFER MAXWELL
Notary Public, State of Texas
Comm. Expires 06-19-2021
Notary ID 12368440

_____
Notary Public in and for the State of Texas

Schedule of Exhibits:
Exhibit "A" - Legal Description
Exhibit "B" - Permitted Exceptions

DEED OF TRUST, SECURITY AGREEMENT – FINANCING STATEMENT          PAGE 28
L:\50423\251\DOTSecAgmt-FS.doc

**App. 060**

EXHIBIT "A"

Legal Description

BEING all of Lot 3, Block A/7761 of CARLETON HOUSE, an addition to the City of Dallas, Dallas County, Texas, recorded in Volume 80137, Page 261, of the Map Records of Dallas County, Texas, and being all of that same tract of land described in Foreclosure Deed to Goldmark Hospitality, LLC, recorded in Instrument Number 201100196546 of the Deed Records of Dallas County, Texas, and said lot being more particularly described as follows:

BEGINNING at a 5/8" iron rod found at the northernmost corner of a corner cut-off line at the intersection of the southeast R.O.W. line of Goldmark Drive (a 60' R.O.W.) with the southwest R.O.W. line of Midpark Road (a 60' R.O.W.); said point being the beginning of a curve to the right having a central angle of 1 3°1 8'00" and a radius of 320.00' bearing S 32°19'00" W;

THENCE around said curve and along the southwest line of Midpark Road, a distance of 74.11' to a 1/2" iron rod found for corner;

THENCE S 44°23'00" E, 179.69' along the southwest line of Midpark Road to a PK nail found at the north corner of Lot 1, Block A/7761 of La Quinta-Midpark Addition, an addition to the City of Dallas, Texas, recorded in Volume 76201, Page 1 of the Map Records of Dallas County, Texas;

THENCE S 45°37'00" W, 590.05' along the northwest line of said Lot 1 to a cross found for corner in a northeast line of Lot 4, Block A/7761 of Section Five, Keystone Park Addition, an addition to the City of Dallas, Texas, recorded in Volume 92208, Page 2836 of the Map Records of Dallas County, Texas;

THENCE N 44°23'00" W, 263.00' along a northeast line of said Lot 4 to a 5/8" iron rod found for corner in the southeast line of Goldmark Drive;

THENCE N 45°37'00" E, 569.02' along the southeast line of Goldmark Drive to a 5/8" iron rod found at the south corner of a corner cut-off line;

THENCE N 83°31'43" E, 15.77' along said cut-off line to the POINT OF BEGINNING and CONTAINING 154,828.37 square feet or 3.5544 acres of land, more or less.

EXHIBIT "B"

Permitted Exceptions

1.

Restrictive covenants recorded in/under Volume 80137, Page 261, Map/Plat Records, Dallas County, Texas.

2.

The following matters and all terms of the documents creating or offering evidence of the matters

The following easements as shown on plat recorded in [Volume 80137, Page 261], Plat Records, Dallas County, Texas, as approximately depicted on the Survey prepared by Bryan Connally of CBG Surveying Texas, LLC on November 1, 2019, Job number 1921067, hereinafter referred as the "Survey".

a. Water main easement, 10 feet in width, located in southeast portion of the subject property;

b. Sanitary and storm sewer easements, 10 feet in width located in the south corner and along a portion of the southeast property line.

3.

Easement and/or Right of Way from T. C. Stricklin to City of Dallas, filed 8/4/1977 recorded in [Volume 77150, Page 1243], Real Property Records Dallas County, Texas.

4.

Easement and/or Right of Way from Carleton House Investors, Ltd. to Texas Power and Light Company filed 5/26/1981, recorded in [Volume 81101, Page 646], Real Property Records, Dallas County, Texas, as approximately depicted on the Survey.

5.

Lease Agreement dated 6/12/81, filed 7/27/1981, executed by and between The Hawaii Company, and Kwik-Wash Laundries, Inc., and evidenced by instrument recorded in [Volume 81144, Page 211], Real Property Records, Dallas County, Texas.

EXHIBIT "B" TO DEED OF TRUST, SECURITY AGREEMENT — FINANCING STATEMENT
L:\50423\251\DOTSecAgmt-FS doc

PAGE EXHB-1

App. 062

6.

SURVEY RELATED MATTERS: The survey compieted by Bryan Connally of CBG Surveying Texas, LLC for Kensington Vanguard National Land Services on November 1, 2019, job number 1921067, hereinafter referred as the "Survey".

(A) Southerly adjoiners wood fence exceeds the southeast and southwest boundaries onto the subject property by a maximum extent of 0.8 feet, ownership unknown; (B) Brick and stucco wall exceed the southwest boundary onto lands of others by a maximum extent of 0.1 feet; (C) Multiple portions of brick and stucco walls exceed the northwest boundary into the Goldmark Drive right-of-way and northeast boundary into the Midpark Road right-of-way by a maximum extent of 0.8 feet;(D) Overhead power lines at the northeast side of the subject property are without benefit of easement; (E) Site sign with bollards and wall at the eastern corner of the subject property lie within the 10-foot water main easement area detailed in Volume 90137, Page 261 by undisclosed distances;(F) Surveyor notes iron rod found at the western corner of the subject property lies 0.41 feet from noted corner.

**Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
11/20/2019 04:06:43 PM
$146.00
201900314312**



EXHIBIT "B" TO DEED OF TRUST, SECURITY AGREEMENT
– FINANCING STATEMENT
L:\50423\251\DOTSecAgmt-FS.doc

PAGE EXHB-2