IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY BARTON, | § | |
| CARNEGIE DEVELOPMENT, LLC, | § | |
| WALL00f7, LLC, | § | |
| WALL009, LLC, | § | |
| WALL010, LLC, | § | |
| WALL011, LLC, | § | |
| WALL012, LLC, | § | |
| WALL016, LLC, | § | |
| WALL017, LLC, | § | |
| WALL018, LLC, | § | |
| WALL019, LLC, | § | |
| HAOQIANG FU (A/K/A MICHAEL FU), | § | |
| STEPHEN T. WALL, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| DJD LAND PARTNERS, LLC, and | § | |
| LDG001, LLC, | § | |
| | § | |
| *Relief Defendants.* | § | |

**RECEIVER'S RESPONSE TO MCCORMICK 101, LLC'S
MOTION FOR ORDER (1) LIFTING STAY AND (2) FOR
EXEMPTION FROM COURT'S ORDER APPOINTING RECEIVER [DOC. 29],
OR (3) IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION**

Cort Thomas, the Court-appointed Receiver, responds to McCormick 101, LLC's

("McCormick") Motion for Order (1) Lifting Stay and (2) for Exemption from Court's Order

Appointing Receiver, or (3) in the Alternative, Motion for Adequate Protection [Dkt. 311] (the

"Motion") and in support respectfully shows the Court as follows:

– 1 –

## I.    SUMMARY

Non-party McCormick purchased the promissory note secured by the Amerigold Suites (the "Note") with full knowledge of the Receivership Order, the Receiver's failure and indeed inability to make payments on that Note, and the Enforcement Stay and Litigation Stay included in the Receivership Order. Nonetheless, McCormick now requests that this Court lift the Litigation Stay so it can foreclose a lien in advance of every other creditor, exclude property from the scope of the receivership, or require that the Receiver make "adequate protection payments" on a property valued at more than twice the amount due on the Note. Although the Motion speaks to a continuing systemic problem—insufficient cash in a receivership that to date has been prevented from closing any real property sales—the Court should strike McCormick's motion, or alternatively, deny all relief requested without prejudice to refiling at a later date.

## II.    BACKGROUND

### A.    The Receivership Order

1.     On October 18, 2022, the Court entered its Order Appointing Receiver [Dkt. 29] (the "Receivership Order"), pursuant to which the Court assumed exclusive possession and jurisdiction over certain entities identified in the Receivership Order and their assets, as well as all other entities Defendant Timothy Barton directly or indirectly controls (the "Receivership Entities"). *Receivership Order* ¶ 1. Goldmark Hospitality, LLC, which owns the Amerigold Suites was included in the Receivership Order as property into which the SEC traced Wall Investor Funds.

2.     To conserve Receivership Assets, allow the Receiver time to perform the most pressing tasks, and preclude any one claimant from seeking an advantage or preference in treatment over another, the Receivership Order also stays all collection efforts against Receivership Assets and Receivership Entities, (the "Enforcement Stay"), as well as all litigation against Receivership Entities or involving Receivership Assets (the "Litigation Stay"). *Id.* ¶¶ 32

and 34.  Those provisions provide, in relevant part:

32. The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

\*\*\*

C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;

\*\*\*

34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

*Receivership Order*, ¶¶ 32, 34–35.

**B.      The Cash Poor Receivership Estate and the Amerigold Suites**

3.      As explained repeatedly in status reports,[1] motions requesting authorization to sell properties,[2] briefs opposing stays requested by Barton,[3] and most recently, in the Receiver's Report and Declaration in support of a new receivership order,[4] the Receivership Estate is cash poor. At the beginning of the case, less than $75,000 was on deposit in any Receivership Entity bank account, yet large, pressing expenses existed and have continued to accrue.

4.      Many of the most pressing expenses were related to the Amerigold Suites. As explained in numerous reports, [Dkts. 67, 139, 225, 299, 308], as well as the Motion for Appointment of Appraisers, etc. by which the Receiver requested permission to sell the Amerigold Suites, [Dkts. 167-168], the property operates at a loss every month. Nonetheless, as an occupied property with tenants, the Receiver owes statutory and similar duties regarding habitability and safety. Paying for repairs, insurance, utilities, and payroll to operate the property is necessary to preserve the limited income the Amerigold Suites generates as well as maintain its habitability.

5.      Since the Receiver's appointment, no payments have been made on the Note secured by the Amerigold Suites. While the property does generate some income every month, that limited income has gone to pay the above-detailed expenses.

6.      Because the Amerigold Suites drains Receivership Assets, because the debt on the property continues to accrue, and because every attempted sale of Receivership property has been foiled by Barton's interference or misconduct, the Receiver originally sought the Court's approval of a sale of the Amerigold Suites and continues to believe its sale is in the best interest of the

---

[1] Dkts. 67, 139, 225, 299.

[2] Dkts. 76, 110, 161, 164, 167.

[3] Dkts. 84, 119; *see also* Dkt. 5, *Barton v. SEC*; 90-1, 122, Appeal No. 22-11132.

[4] Dkt. 308.

Receivership Estate. Dkts. 167-168. If the sale had closed as intended when approved in March, *after paying McCormick's lien,* the sale would have generated a net recovery for the Receivership Estate of approximately $2.7 million. *Id.*

7.     The sale, however, has not closed. The Receivership Estate is still starved for cash and Barton continues to succeed in his contumacious interference.

8.     Nonetheless, the Receiver and the buyer for the Amerigold Suites have extended the closing date for the proposed sale. Once the Court considers all briefing in support of a new Receivership Order and presumably enters a new Receivership Order, based on the contract already approved, the sale will still allow for payment of the principal owed to McCormick as well as a substantial net recovery for the Receivership Estate.

**C.     Vacatur of Initial Receivership Order and Entry of New Receivership Order**

9.     On June 28, 2023, in response to Barton's appeal, the Fifth Circuit vacated the Initial Receivership Order effective 90 days after the mandate issued, and remanded the case for further proceedings, including this Court's consideration of a new receivership order. (the "Appellate Opinion"). When it amended the Appellate Opinion in August, the Fifth Circuit also stayed the sale of any Receivership Property.

10.    The mandate issued on August 31, 2023, and thus vacatur of the Initial Receivership Order becomes effective on November 29, 2023.

11.    In accordance with this Court's orders, on September 7, 2023, the SEC moved for appointment of a receiver, a preliminary injunction, and other equitable relief. Dkts. 309-310. Defendant Barton's Response is due on or before October 2, 2023, and the Court has set a hearing to consider the SEC's request for October 11, 2023.

**D.      McCormick's "Claim"**

12.      On or about December 22, 2022, McCormick entered an Asset Sale Agreement with Texas Brand Bank ("TBB") pursuant to which McCormick acquired the Note.  When it purchased the Note, no payments had been made since September 2022.  *Motion*, p. 3.  A copy of the Receivership Order was attached to the Asset Sale Agreement, which provided in relevant part:

> "The Buyer is fully aware that collection and enforcement of the Loan may be limited by the Receivership and that the Obligor is the subject of a Receivership Order (attached) . . . Buyer has made such independent investigation as the Buyer deems to be warranted in to the Receivership, as well as nature, title, attachment, perfection, priority, validity, enforceability, collectability, and value of the Loan, the title, condition and value of any collateral securing the Loan, the market conditions and other characteristics of the places where any such collateral is located, and all other facts it deems material to the purchase of the Loan."[5]

13.      Likewise, the Asset Sale Agreement also stated that TBB made no representations regarding limitations that might apply to enforcement or collection of the loan based on the Receivership, that collection and enforcement could be limited by the Receivership, and that "[b]uyer has entered into this transaction based on its own interpretation of the laws, regulations, judgments, orders, decrees, writs, injunctions, contracts, agreements or instruments related thereto."

**14.**      Thus, despite actual knowledge of the Receivership and the Receiver's inability to make any payments on the mortgage, months after the Receiver's appointment, in December 2022, McCormick nonetheless purchased the Note.  McCormick accordingly voluntarily acquired the Note with full knowledge that the collateral was included in a receivership, that no payments were being made or likely to be made on the Note, and that any foreclosure or other enforcement efforts were stayed.

---

[5] A true and correct copy of the relevant pages from Asset Sale Agreement, excluding the attachments, is included in the Appendix.

### III.    ARGUMENT AND AUTHORITIES

The Receiver has endeavored, time and again, to sell property necessary to preserve other Receivership Assets and administer the Estate. Barton's interference, his jurisdiction-less appeals of sale orders, and the Fifth Circuit's most recent stay of any sale until this Court considers a new receivership order have prevented those sales. Despite these obstacles, however, McCormick— which has not intervened and thus lacks *any* standing in this proceeding—presents absolutely no entitlement for the relief it seeks.

**A.    McCormick Acquired the Note With Full Knowledge of All Defaults and the Enforcement Stay**

McCormick purchased the Note with full knowledge that the relief it now requests was prohibited. Nothing relevant to the Amerigold Suites or McCormick's position has changed since McCormick purchased the Note. McCormick's complaint that it is not receiving rents that were not being paid to TBB when McCormick purchased the Note, and that a sale that was not contemplated at the time McCormick purchased the Note has not closed, provides absolutely no basis to lift the Litigation Stay and Enforcement Stay to permit McCormick to foreclose on its lien.

Likewise, McCormick's contention that "[t]he presence of a buyer who is willing and able to close but who ***cannot*** close means the property has no value to the Receiver" is a total non sequitur. Delay does not eliminate all value, nor does delay entitle McCormick to extract a valuable Receivership Property from the Estate through foreclosure.

**B.    Legal Standard**

McCormick has not intervened, nor sought permission to intervene, and thus has no entitlement to be heard in this proceeding. Even if it had sought and justified intervention,[6]

---

[6] *See* FED. R. CIV. P. 24; *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994) ("If a party seeking to intervene fails to meet any one of . . . [the four] requirements, it cannot intervene as a matter of right.").

however, it fails to identify let alone satisfy the standards governing consideration of whether to lift the Litigation Stay or Enforcement Stay.

"District courts have broad equitable powers to preserve a receiver's ability to operate without interference." *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379, 380 (5th Cir. 2011). Stays in receivership matters serve as additional tools furthering the goals of the receivership. *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). The Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010). The Court's power with respect to an anti-litigation stay is thus more broad than its power to grant injunctive relief pursuant to Rule 65. *Id.*

In deciding whether to lift such a stay, courts generally consider three factors,[7] the *"Wenke* factors,"* which are intended to balance the interests of the Receiver and the moving party. *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir.1984) ("Wencke II"). The movant bears the burden of demonstrating that the balance of factors support lifting the stay. *SEC v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 5832330, at *2 (D. Conn. Nov. 16, 2012); *United States v. Petters*, No. 08–5348 ADA/SJM, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008). McCormick does not address any of these factors, and none weighs in its favor. Further, even if "adequate protection" had any role in the Court's analysis—McCormick provides no such authority—the current balance on the Note claimed by McCormick, "over $2,825,367.75," while inflated by non-recoverable penalty interest, is still well below the contracted sale price of $5,500,000.

---

[7] Those factors are: "(1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x. 338, 341 (5th Cir. 2011) (quoting Wencke II)).

**C.      Any Relief, Whether Intervention or Lifting the Stay, Is Premature**

The Litigation Stay and Enforcement Stay preserves the status quo that existed when McCormick purchased the Note and no justification is offered for disturbing the status quo in McCormick's favor and to the detriment of the defrauded Wall Investors. Similarly, rental income from the Amerigold Suites is being ploughed back into the property to preserve its value, maintain habitability, and remain in compliance with the terms of the approved sale.[8]

On the other hand, sales of Receivership Property are at a standstill until the Court considers the briefing regarding entry of a new receivership order. In that regard, the Court previously denied without prejudice all pending motions, including a similar motion to intervene and lift stay. [Dkt. 245]. Thus, the Enforcement Stay and Litigation Stay are more important than ever in preserving the status quo regarding Receivership Assets, and indeed lenders and creditors continue to threaten similar motions that will flood the docket if the Court entertains one.

In the unlikely event that the Court determines that Goldmark Hospitality should not be included as a Receivership Entity, the Amerigold Suites will be exempted from any further stay and McCormick can then foreclose or proceed as it wishes. Until the Court makes that determination, however, it should preserve the property as well as all income it generates.

## IV.      CONCLUSION AND PRAYER

McCormick seeks relief from a situation into which it voluntarily interjected itself. While the Receiver readily recognizes that his continued inability to close sales of real property held by the Receivership Entities negatively impacts the Receivership Estate, creditors like McCormick,

---

[8] Nor is McCormick entitled to rely on any default arising as a result of the Receivership Order to justify a specific remedy, for instance entitlement to an assignment of rents, particularly where it acquired the Note *after* entry of the Receivership Order. *See Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163 (1946) ("The general rule in bankruptcy and equity receivership has been interest on the debtors' obligations ceases to accrue at the beginning of proceedings.").

and a host of others, the proper course is maintain the stay. The Court should either strike the Motion or deny it entirely.

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX 75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

/s/ Charlene C. Koonce
Charlene C. Koonce