# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY BARTON, | § | |
| CARNEGIE DEVELOPMENT, LLC, | § | |
| WALL007, LLC, | § | |
| WALL009, LLC, | § | |
| WALL010, LLC, | § | |
| WALL011, LLC, | § | |
| WALL012, LLC, | § | |
| WALL016, LLC, | § | |
| WALL017, LLC, | § | |
| WALL018, LLC, | § | |
| WALL019, LLC, | § | |
| HAOQIANG FU (A/K/A MICHAEL FU), | § | |
| STEPHEN T. WALL, | § | |
| | § | |
| *Defendants*, | § § | |
| | § | |
| DJD LAND PARTNERS, LLC, and | § | |
| LDG001, LLC, | § | |
| | § | |
| *Relief Defendants*. | § | |

**APPENDIX IN SUPPORT OF RECEIVER'S
RESPONSE TO MCCORMICK 101, LLC'S MOTION
FOR ORDER (1) LIFTING STAY AND (2) FOR EXEMPTION
FROM COURT'S ORDER APPOINTING RECEIVER [DOC. 29], OR
(3) IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION**

1

Respectfully submitted,

By: */s/ Charlene C. Koonce*
 Charlene C. Koonce
  Texas Bar No. 11672850
  charlene@brownfoxlaw.com
 Timothy B. Wells
  Texas Bar No. 24131941
  tim@brownfoxlaw.com
 BROWN FOX PLLC
 8111 Preston Road, Suite 300
 Dallas, TX  75225
 Tel. 214.327.5000
 Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

2

3

| EXHIBIT | DESCRIPTION | APP PAGES |
|---------|-------------|-----------|
| A | Goldmark Hospitality – Asset Sale Agreement | APP001-014 |

# EXHIBIT A

APP001

## ASSET SALE AGREEMENT

THIS ASSET SALE AGREEMENT ("Agreement"), entered into this _____ day of December, 2022, ("Effective Date") by and between TEXAS BRAND BANK (the "Seller"), and MCCORMICK 101, LLC (the "Buyer"), sets forth the terms and conditions whereby the Seller agree to sell and the Buyer agrees to purchase the Loan identified herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller and the Buyer hereby agree as follows:

**1.    Definitions**.  Capitalized terms shall be defined as set forth in this Agreement, including in Appendix A to this Agreement.

**2.    Agreement to Purchase and Sell**.  Subject to and in accordance with the terms and conditions of this Agreement, the Seller hereby agree to sell, assign, transfer and convey to the Buyer on the Closing Date, and the Buyer hereby agrees to purchase and accept on the Closing Date, all rights, title, and interests of the Seller, together with all payment and performance obligations of the Seller, as of the Closing Date, in, to and under the Loan set forth on the Loan Schedule.

**3.    Payment of Purchase Price; Closing**.  The closing shall occur on the Closing Date, by delivery of Closing Documents by hand or overnight delivery.  In the event a copy of the Seller's signature to this Agreement is not delivered to the Buyer within one Business Day after the date hereof, the Buyer may extend the Closing Date by one Business Day for each Business Day of such delay.

Except to the extent such amounts are required to be remitted to the applicable Obligor or are permitted to be retained by  Seller pursuant to this Agreement, the Buyer shall be entitled to (a) all payments of principal actually received by Seller or their servicer with respect to the Loan after the Calculation Date; (b) all payments of interest actually received by the Seller or their servicer with respect to such Loan after the Calculation Date; and (c) all other monies collected or received by Seller or their servicer after the Calculation Date with respect to such Loan.

**3.1    Intentionally Omitted**.

**3.2    Payment of Purchase Price.**  On the Closing Date, the Buyer shall pay to the Seller by wire transfer in immediately available funds, the Purchase Price.  The Purchase Price shall be calculated on a settlement statement prepared by the Seller and made available for the Buyer's review two Business Days prior to the Closing Date.

**3.3    Conveyance**.  Upon receipt of the Purchase Price, the Seller shall sell, assign, transfer and convey the Loan to the Buyer subject to and in accordance with the provisions of this Agreement.

APP002

**3.4      Taxes, Fees, Etc**.  The Buyer shall pay all transfer, filing and recording fees, taxes (including all 2022 property taxes), costs and expenses, and any applicable documentary taxes, required to be paid by either the Seller or the Buyer in connection with the transactions contemplated hereby, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims, liability, costs and expenses arising out of or in connection with the failure of the Buyer to pay any such amount on a timely basis.  The Seller shall be entitled to require the payment of any such fees, taxes, costs and expenses at or prior to the closing and as a condition thereof.  This Section shall not require the Buyer to pay any recording fees and expenses related to recording intervening assignments of mortgage to the related Seller, or the taxes, costs or expenses related to the Seller' sale or income tax obligations occasioned by the sale of the Loan.

**3.5      Payments Subsequent to the Closing Date**.  From time to time after the Closing Date the Seller shall pay to the Buyer, promptly after receipt thereof, the net amount of any Collections received by the Seller on or after the Calculation Date (to the extent collected in good funds by the Seller) and not already so paid to the Buyer.

**4.          <u>Transfer of Loan</u>**.

**4.1      Closing Documents**.  Not later than the Closing Date, the Seller shall deliver to the Buyer (i) a Bill of Sale in the form attached hereto as <u>Attachment 1</u>, selling, assigning, transferring and conveying to the Buyer all rights, title and interests of the Seller in, to and under the Loan, all on the terms and conditions set forth in this Agreement; (ii) the original Note, or affidavits of lost Note, endorsed to the Buyer by allonge in the form attached hereto as <u>Attachment 2</u>; and (iii) assignment(s) of the Mortgage in the form attached hereto as <u>Attachment 3</u> (collectively, to the extent delivered to the Buyer, the "Closing Documents").  The endorsements and assignments included in the Closing Documents shall be without recourse, representation or warranty of any kind or nature.  Such qualifying language on the endorsements and assignments shall not affect, limit or enlarge the obligations of the Seller and the rights, remedies and recourse of the Buyer under this Agreement.

**4.2      Intentionally Omitted.**

**4.3      Delivery of Collateral Documents, Etc**.  Promptly after the closing, the Seller shall deliver to the Buyer the entire Review File including, without limitation, originals of each Collateral Document to the extent originals are in the Seller's possession.

**4.4      Delivery of Additional Loan Information**.  Seller shall provide the following: pay-off statement for the Loan prepared as of closing date, pay histories for the Loan through the closing date, and the next payment due date(s).

**4.5      Execution of Separate Loan Assignments**.  At and after the closing, to the extent prepared by the Buyer, the Seller shall execute, and acknowledge if appropriate, for delivery to the Buyer one or more additional documents to the extent required by applicable public recording or filing laws to transfer to such Buyer the rights, title and interests of the Seller in, to and under the purchased Loan ("Separate Loan Assignment").  The Separate Loan Assignment shall be without recourse, representation or warranty of any kind or nature.  Such qualifying language on the

2

Separate Loan Assignment shall not affect, limit or enlarge the obligations of the Seller and the rights, remedies and recourse of the Buyer under this Agreement. The Buyer shall prepare and furnish any and all further Separate Loan Assignment, if necessary, in form satisfactory to the Seller.  The Buyer shall promptly file or record the Separate Loan Assignment, at its sole cost and expense.

**4.6    Hazard, Liability Insurance, Etc**.  At the request of the Buyer, the Seller shall cooperate with the Buyer in executing written requests to each hazard, casualty and liability insurer, and to the writing agent for each flood hazard insurer, issuing a policy of insurance obtained by an Obligor with respect to the Loan, requesting an endorsement of its policy of insurance effective on the Closing Date adding the Buyer as the mortgagee, the loss payee and/or an insured named therein, as the case may be, together with instructions that such endorsement be forwarded directly to the Buyer, with a copy to the Seller at the addresses herein specified for notices.  Each such request shall be prepared by the Buyer at its sole cost and expense, and any additional premium or other charge in connection therewith shall be paid by the Buyer.   To the extent the Loan constitute personal or real property, the Seller expressly disclaims any obligation to pay property taxes, or pay any related transaction taxes or other fees.

**5.    Representations and Warranties of the Buyer**.   The Buyer hereby represents and warrants as follows:

**5.1    Organization, Existence, Etc**.  The Buyer is duly formed or organized, validly existing and in good standing under the laws of the jurisdiction of its formation or organization, and is registered or qualified to conduct business in all other jurisdictions in which the failure to be so registered or qualified would materially and adversely affect the ability of the Buyer to perform its obligations hereunder.

**5.2    Authority and Enforceability, Etc**.  The Buyer has the power and authority to execute, deliver and perform each of the Sale Documents to which it is a party and has taken all necessary action to authorize such execution, delivery and performance.  The Buyer's execution of this Agreement and its performance of its obligations hereunder are not subject to any further approval, vote or contingency from any person or committee.  Assuming due authorization, execution and delivery by the Seller, the Sale Documents and all obligations of the Buyer thereunder are the legal, valid and binding obligations of the Buyer, enforceable in accordance with the terms of the Sale Documents, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

**5.3    Conflict with Existing Laws or Contracts**.  The execution and delivery of the Sale Documents and the performance by the Buyer of its obligations thereunder will not conflict with or be a breach of any provision of any law, regulation, judgment, order, decree, writ, injunction, contract, agreement or instrument to which the Buyer is subject; and the Buyer has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery and performance by the Buyer of the Sale Documents.

3

APP004

**5.4    Financial Condition**.  Neither the Buyer nor any general partner, limited partner, shareholder or joint venturer in the Buyer is involved in any financial difficulties which would impair or prevent a closing pursuant to this Agreement on the Closing Date.  The Buyer has now and will have as of the Closing Date sufficient liquid assets, capital and net worth to meet its obligations under the Sale Documents and to pay the Purchase Price without any financing or other contingencies.

**5.5    Decision to Purchase**.  The Buyer's bid and decision to purchase the Loan is based upon its own comprehensive review and independent expert evaluation and analysis of the Review File and other materials deemed relevant by the Buyer and its agents.  The Buyer has read and agrees to all of the terms and conditions of the Bid Award Letter dated December 7, 2022.  The Buyer is fully aware that collection and enforcement of the Loan may be limited by the Receivership and that the Obligor is the subject of a Receivership Order, as more particularly described in Exhibit "A", attached hereto (the "Receivership" or the "Receivership Order").  Buyer has made such independent investigation as the Buyer deems to be warranted in to the Receivership, as well as nature, title, attachment, perfection, priority, validity, enforceability, collectability, and value of the Loan, the title, condition and value of any collateral securing the Loan, the market conditions and other characteristics of the places where any such collateral is located, and all other facts it deems material to the purchase of the Loan.

**5.6    No Reliance**.  In entering into this Agreement and the other Sale Documents, the Buyer has not relied upon any oral or written information from the Seller or any of their respective employees, agents, attorneys or representatives, other than the limited representations and warranties of the Seller contained herein.  The Buyer acknowledges that no employee, agent, attorney or representative of the Seller has been authorized to make, and that the Buyer has not relied upon, any statements, representations or warranties other than those specifically contained in this Agreement.

**5.7    Buyer a Sophisticated Investor**.  The Buyer is a sophisticated investor (as that term is used in regulations promulgated under the Securities Act of 1933) who could withstand the loss of the entire Purchase Price.

**5.8    Information True and Correct, Full Disclosure**.  The information provided by the Buyer in connection with its qualification as a bidder, was true and correct on the date provided and did not omit any information necessary to the accuracy and full disclosure of information provided and such information is accurate and complete on the date hereof.

**5.9    Confidentiality Agreement**.  The Buyer has not violated any of the terms of the Confidentiality Agreement.  At no time has the Buyer or any of its representatives or agents communicated with any Obligor or any of its representatives or agents regarding the Loan.  The Buyer has no affiliation with, any ownership interest in, or agreement with the Obligor or any of its representatives or agents regarding the Loan.

**5.10    Brokers**.  No broker or other party entitled to a commission is involved in connection with this transaction.

**6.**    <u>**Disclaimer of Representations, Warranties and Recourse**</u>.  This sale is made without recourse against the Seller, or representation or warranty by the Seller, whether expressed, implied or imposed by law, of any kind or nature except as expressly provided in <u>Sections 6.1</u> and <u>6.2</u> of this Agreement.  The Seller has attempted to provide accurate information to all prospective Bidders.  Without limiting the generality of the foregoing, the Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the Bid Package or in the Review File, Collateral Documents, Note or Loan (whether contained in originals, duplicate originals, copies, or magnetic media, including computer tapes and disks), including without limitation any reports or other information prepared by accountants, engineers, appraisers, environmental consultants or other professionals.  The Seller has not, does not and will not make any representations or warranties with respect to the collectability of that Loan or the value or condition of the Mortgaged Property.  To the extent the Loan constitute personal or real property, such property is sold "AS IS, WHERE IS, WITH ALL FAULTS".  The Seller expressly disclaims any representations or warranties with respect to all such matters.

**6.1**    **Representations and Warranties by the Seller.**  Subject to the disclaimer in <u>Section 6</u> above, the Seller hereby makes the following limited representations and warranties:

**6.1.1    Organization, Existence, Etc**.  The Seller is duly formed or organized, validly existing and in good standing under the laws of the jurisdiction of their formation or organization, and are registered or qualified to conduct business in all other jurisdictions in which the failure to be so registered or qualified would materially and adversely affect the ability of the Seller to perform their obligations hereunder.

**6.1.2    Authority, Enforceability, Etc**.  The Seller has taken all reasonable action to authorize execution, delivery and performance of each of the Sale Documents to which it is a party.  Assuming due authorization, execution and delivery by the Buyer, the Sale Documents and, subject to the Receivership, all the obligations of the Seller thereunder are the legal, valid and binding obligations of the Seller, enforceable in accordance with the terms of the Sale Documents, except as such enforcement may be limited by the Receivership, bankruptcy, insolvency, reorganization or other laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

**6.1.3    Conflict with Existing Laws or Contracts**.  To the best of Seller's current knowledge and belief, and, including the Receivership, the execution and delivery of the Sale Documents and the performance by the Seller of their obligations thereunder will not conflict with or be a breach of any material provision of any law, regulation, judgment, order, decree, writ, injunction, contract, agreement or instrument to which the Seller is subject; and Seller has made full disclosure to Buyer of the Receivership. Seller has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery and performance by the Seller of the Sale Documents, as demonstrated by the terms stated in that certain letter dated December 9, 2022, which were accepted and agreed to by Charlene Koonce, attorney for the Receiver.  The said letter is attached hereto as <u>Exhibit "B"</u>.  Seller makes no representation or warranty as to any limitations that might apply to the enforcement or collection of the Loan as a result of the Receivership and Buyer has entered into this transaction

based on its own interpretation of the laws, regulations, judgments, orders, decrees, writs, injunctions, contracts, agreements or instruments related thereto.

**6.1.4    Legal Action Against Seller**.  To the best of Seller's current knowledge and belief, and, with the exception of the Receivership, there is no action, suit or proceeding of which the Seller has received actual notice pending against the Seller in any court or by or before any other governmental agency or instrumentality which would materially affect the ability of the Seller to carry out the transactions contemplated by the Sale Documents.

**6.1.5    Brokers.**  No broker or other party entitled to a commission is involved in connection with this transaction.

**6.2    Representations and Warranties by Seller as to the Loan**.  Subject to the disclaimer in Section 6 and except as otherwise disclosed in the Review File or in publicly available records, the Seller hereby represents and warrants that, as to the Loan, the following representations and warranties are true and correct in all material respects as of the date hereof.

**6.2.1    Title to Loan.**  Subject to the Receivership, the Seller has good title to and is the sole owner and holder of the Loan, free and clear of any liens, claims, encumbrances or other charges whatsoever, except as to any encumbrances created by the Receivership.  The Loan is not subject to any prior assignment, conveyance, transfer or participation or agreement to assign, convey, transfer or participate, in whole or in part.

**6.2.2    Enforceability.**  To the best of the Seller's knowledge and belief, the Note and Mortgage are the legal, valid and binding obligations of the Obligor thereof, enforceable against such Obligor in accordance with their terms (a) except as such enforcement and collection may be limited by the Receivership, bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors rights generally and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law) and (b) except particular remedies, waivers and other provisions may not be enforceable, but such unenforceability does not affect the practical realization of the intended benefits of the Mortgage, meaning the ability of the holder thereof to foreclose the Mortgage for any payment default by the maker or obligor thereunder, subject to the limitations set forth above in this Section 6.2.2.

**6.2.3    No Defense by Obligor.**  To the best of the Seller's knowledge, and, except for any limitations imposed by the Receivership, the Obligor has no valid defense that prevents enforcement by the holder thereof of the provisions of the Note or Mortgage, or realization by the holder thereof or its assigns against the Mortgaged Property that arises from applicable local, state or federal laws, regulations or other requirements pertaining to usury and any or all other requirement of any federal, state or local law including, without limitation, truth-in-lending, real estate settlement procedures, consumer credit protection, and equal credit opportunity or disclosure laws applicable to such Loan.  To the best of Seller's knowledge and belief, the Loan is not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense that prevents enforcement by the Seller thereof or their assigns of the provisions of the Note or Mortgage, or realization by the Seller thereof or its assigns against the Mortgaged Property of the

6

APP007

intended benefits of such Mortgage and no such claims have been asserted as of the date hereof with respect to such Loan.

**6.2.4    Loan and Loan Document Schedule.**  The information set forth on <u>Schedule A</u> with respect to the Loan is true and correct in all material respects.

**6.2.5    No Modification.**  Except by written instrument or other written documentation contained in the Review File, neither the Seller  nor, to the best of the Seller's current knowledge an belief, any prior holder of the Loan has modified the Note or Mortgage or satisfied, canceled or subordinated the Note or Mortgage in whole or in part or released all or any material portion of the Mortgaged Property from the lien of the Mortgage or executed any instrument of release, cancellation or satisfaction.  The Note and Mortgage and any documents modifying their terms included in the Review File are true and correct copies of the documents they purport to be and have not been superseded, amended, modified, canceled or otherwise changed except as disclosed in the Review File.

**6.2.6    Review File.**  With the exception of any Excluded Information, the Review File includes all material documents in the possession of the Seller, or copies thereof, relating to the Loan.

**6.2.7    Disbursement of Loan Proceeds.**  The Obligor does not have the right to disbursement of additional loan proceeds or future advances with respect to the Loan.

**6.2.8    Cross-Collateralization.**  The Loan is not secured by the same property as any other loan held by the Seller or its affiliated entities, which is not the subject of this Agreement.

**6.2.9    Litigation.**  To the best of the Seller's current knowledge and belief, and except for the Receivership, and the information contained in the Title Fact Sheet dated December 14, 2022, provided to Seller by Buyer, there is no litigation, proceeding or governmental investigation pending, or any order, injunction or decree outstanding, existing or relating to the Loan or Mortgaged Property.

**6.2.10  Lien Position.**    Buyer has conducted its own investigation as to the lien position of Seller and is satisfied with such position.

**6.2.11  Taxes.**  With respect to the Loan, all real property taxes, tax assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents affecting the related Mortgaged Property through 2021 have been paid.

**6.3      Remedies.**  Subject to the express disclaimers in <u>Section 6</u>, upon discovery by the Buyer of a material breach of any of the foregoing representations and warranties made by the Seller pursuant to <u>Sections 6.1</u> and <u>6.2</u> during the Survival Period noted in <u>Section 16</u> hereto which materially and adversely affects the value of the Loan sold on the Closing Date (each, a "<u>Breach</u>"), the Buyer shall deliver to the Seller a notice of breach within thirty (30) days of discovery of such Breach.  Such notice of breach must be delivered by the Buyer to the Seller within the Survival Period. The Seller shall have a period of ninety (90) days from the receipt by Seller of a notice of

APP008

breach (the "Cure Period") within which to: (i) correct or cure such Breach in all material respects; provided, that if the Seller requires, in its reasonable discretion, information from the Buyer that it had provided to the Buyer or its designees or requires, in its reasonable discretion, access to copies of any loan documents that it has provided to the Buyer or its designees, the Seller shall provide written notice to the Buyer and the Buyer shall provide all such information or access to such documents within five (5) Business Days of receipt of such notice.  If the Seller is unable to cure such a material Breach, the Seller shall (i) reimburse to the Buyer an amount, which in no event shall exceed the lesser of (x) the Repurchase Price and (y) the Purchase Price, equal to the mutually agreed to reduction in value of the Loan based upon the Breach; or (ii) repurchase the Loan at the Repurchase Price.  In the event that the Seller elects the option described in clause (i) in the immediately preceding sentence, the Seller and the Buyer shall promptly negotiate in good faith to reach a mutual agreement with respect to the applicable reimbursement amount.

7.      **Conditions Precedent to Closing.**  The respective obligations of the Buyer and the Seller to complete the purchase and sale of the Loan pursuant to this Agreement are subject to the fulfillment on or prior to Closing Date of each of the following additional conditions to be fulfilled by the other, unless the same is specifically waived in writing by the party for whose benefit the same is to be fulfilled:

7.1     **Performance of Covenants**.  The Seller and the Buyer shall have performed all of their respective covenants and agreements contained herein which are required to be performed by them on or prior to the Closing Date.

7.2     **Representations and Warranties**.  All representations and warranties of the Buyer set forth in Section 5 and the Seller set forth in Sections 6.1 and 6.2 of this Agreement shall be true in all material respects at and as of the Closing Date.

7.3     **Governmental Approvals**.  All requisite federal, state and local governmental and regulatory approvals relating to the transactions contemplated hereby, if any, shall have been obtained.  Buyer shall satisfy itself as to all such requisite approvals independently from any investigation or representation from Seller, any and all of which are hereby expressly disclaimed by Seller.

7.4     **Other Approvals**.  Upon the request of the other, the Seller and the Buyer shall provide certified copies of appropriate resolutions, directions and consents approving the execution and delivery of the Sale Documents and the consummation of the transactions contemplated thereby together with such other certificates of incumbency and other evidences of authority as the Seller or the Buyer or their respective counsel may reasonably require.

8.      **Certain Obligations of the Buyer**.

8.1     **Collection Practices**.  The Buyer will not violate any laws relating to unfair credit collection or foreclosure practices in connection with the Loan.

8

APP009

**8.2** **Reporting to or for the Internal Revenue Service**. The Buyer agrees to submit all Internal Revenue Service Forms and Information Returns for the Loan for the period during which it owns the Loan.

**8.3** **Current Litigation**. With exception of the Receivership, the parties are aware of no claim, action, lawsuit, foreclosure action, bankruptcy, or other proceeding, administrative or judicial, or similar action related to the Loan prior to the Effective Date.

**8.4 Buyer's Duties Regarding Future Litigation**. The Buyer agrees to notify the Seller immediately in the event a claim, counterclaim or crossclaim is brought or threatened against the Seller for claims arising from events after the Closing Date in the Receivership, any litigation, bankruptcy or foreclosure involving a Loan. The Buyer, at its cost and expense, shall assume the defense of the Seller with respect to any such claims arising from events after the Closing Date; provided however, that the Seller may choose, at its sole discretion, but shall not have an obligation, to assume the defense of such claims. In connection therewith, subject to the other provisions of this Agreement, the Buyer shall have the sole responsibility to determine the appropriate direction and strategy for such litigation or proceeding, excluding matters which the Seller elects at its sole discretion to defend. The Buyer shall have no duty to defend the Seller for any claim, counterclaim or crossclaim brought or threatened against the Seller, based on the Seller's actions or failure to act, for claims arising from events before the Closing Date.

**9.** **Notice to Obligor**. The Buyer shall, within thirty (30) days after the Closing Date or such other period as may be required by applicable regulations or laws, give notice of this transfer to the Obligor(s) by first class U.S. Mail.

**10.** **Notice of Claim**. The Buyer shall immediately notify the Seller of any claim or any litigation against the Seller, or any of their predecessors or affiliates, which may come to its attention relating to the Loan.

**11.** **Notices**. All notices or deliveries required or permitted hereunder shall be in writing and delivered personally or by facsimile or generally recognized overnight delivery service, and shall be deemed given (a) when delivered, if delivered personally or by facsimile, or (b) on the following Business Day, if sent by generally recognized overnight delivery service, in each case to the Seller at the following addresses, to the Buyer at the address set forth on the signature page below, or such other address as either party may hereafter designate by notice given in compliance with this Section to the other party:

SELLER:    c/o Texas Brand Bank
           4161 McKinney Ave., Suite 101
           Dallas, Texas 75204
           Attention:  William E Lowe
           Telephone Number:  (214) 219-0003
           Email:  WELowe@TexasBrandBank.com

9

BUYER: c/o Beltway Capital Management, LLC
    Executive Plaza II
    11350 McCormick Road, Suite 902
    Hunt Valley, MD 21031
    Attention:  Jeremy Halverson, Vice President
    Telephone Number:  (410) 403-2073
    Facsimile Number:  (410) 403-2070
    Email: _____

12. **Severability**.  Each part of this Agreement is intended to be severable.  If any term, covenant, condition or provision hereof is unlawful, invalid, or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

13. **Construction**.  Unless the context otherwise requires, singular nouns and pronouns (including defined terms), when used herein, shall be deemed to include the plural and vice versa, and impersonal pronouns shall be deemed to include the personal pronoun of the appropriate gender.

14. **Assignment**.  This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including any attachments hereto, shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors, and assigns.  Notwithstanding anything herein to the contrary, however, the Buyer shall not assign its rights under this Agreement without the prior written consent of the Seller, except that the Buyer may assign its rights under this Agreement to an affiliate, and in the event of any assignment both the Buyer and assignee shall be jointly and severally liable hereunder.

15. **Prior Understandings**.  This Agreement supersedes any and all prior discussions and agreements between the Seller and the Buyer with respect to the purchase of the Loan and other matters contained herein, and this Agreement contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein.

16. **Survival**.  Each and every covenant made by the Buyer or the Seller in this Agreement shall survive the closing and shall not merge into the Closing Documents, but instead shall be independently enforceable, provided, however, that the Seller' representations and warranties set forth in Sections 6.1 and 6.2 shall expire thirty (30) days after the Closing Date (the "Survival Period"), after which time no claim for breach of the Seller' representations or warranties may be made.

17. **Choice of Law**.  This Agreement and claims arising out of or in connection therewith shall be governed by and construed and enforced in accordance with the laws of the State of Texas, and the Buyer consents to jurisdiction in the federal or state courts situated in the county of the Seller's principal place of business, Dallas County, Texas.

APP011

**18.     Time of the Essence**.  Time is of the essence of all provisions of this Agreement.   This Agreement is contingent upon Closing and funding of the Purchase Price or before December 30, 2022.

**19.     Limitation of Damages**.   Neither party shall be liable to the other party for any consequential, special or punitive damages.  The Buyer's remedies set forth in Section 6.3 shall be the exclusive remedies of the Buyer, and the Buyer shall not be entitled to any other rights, remedies or other relief, at law or in equity, for the Seller' breach of any representation or warranty set forth in this Agreement.

**20.     Counterparts; Faxed and/or Electronically Transmitted Document.**  This Agreement may be executed and delivered by the parties in a facsimile or electronic mail format and in any number of separate counterparts, all of which, when delivered, shall together constitute one and the same document.

[Signatures on Following Page]
[Remainder of Page Intentionally Left Blank]

11

APP012

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed as of the Effective Date.

**SELLER:**

**TEXAS BRAND BANK**

By:_____

Name:  William E Lowe
Title:    President & CEO

**BUYER:**

**MCCORMICK 101, LLC,**
a Maryland limited liability company

By:_____

Name:  Jeremy Halverson
Title:   Vice President

R:\SHACKLAW\50423\1\Goldmark Hospitality Purchase and Sale Agreement.Final.docx

12

APP013

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed as of the Effective Date.

**SELLER:**

**TEXAS BRAND BANK**

By:_____
Name:  William E Lowe
Title:    President & CEO

**BUYER:**

**MCCORMICK 101, LLC,**
a Maryland limited liability company

By:_____
Name: Jeremy Halverson
Title:  Vice President

R:\SHACKLAW\50423\1\Goldmark Hospitality Purchase and Sale Agreement Final.docx

12

APP014