UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff | § § | |
| v. | § § | C.A. No.: 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (aka MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § | Jury Trial Demanded |
| Defendants | § § | |
| DJD LAND PARTNERS, LLC and LDG001, LLC, | § § § | |
| Relief Defendants | § | |

### SERENA BADGLEY'S LIMITED OBJECTION TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR APPOINTMENT OF A RECEIVER, FOR A PRELIMINARY INJUNCTION AND ANCILLARY RELIEF, AND TO LIFT STAY FOR LIMITED PURPOSE

TO THE HONORABLE BRANTLEY STARR, UNITED STATES JUDGE:

Serena Badgley (Badgley), as a representative of minor B.B., files this limited objection (Objection) to the Securities and Exchange Commission's *Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose* [Dkt. 309] (Motion) and states as follows:

## I.     INTRODUCTION

1. Badgley is a personal injury claimant with claims against Goldmark Hospitality, LLC (Goldmark), which the SEC seeks to designate as a Receivership Entity. Badgley's claims have been referenced in this proceeding, primarily in relation to the sale of an apartment complex owned by Goldmark, the Amerigold Suites. The condition of the Amerigold Suites, which has been documented in this proceeding, is at the basis of Badgley's claims. Badgley and her son resided at the Amerigold Suites on or about June 24, 2021, having recently moved. At that time, a deteriorated window gave way on three sides. Badgley's five-year-old son fell from the second story of the apartment complex. He suffered severe injuries to his pelvis, head, legs, and other parts of his body, necessitating extensive medical treatment.

2. Badgley brought claims against Goldmark less than a month after the injuries were sustained in *Badgley v. Goldmark Hospitality, LLC*, No. CC-21-02991-B, County Court at Law No. 2, Dallas County, Texas (State Court Case). Prior to the initial Receivership Order, these claims were actively litigated in the State Court Case with mediation scheduled for November 18, 2022, and trial set for February 14, 2023. Badgley has reason to believe Goldmark maintained, or caused to be maintained, insurance coverage potentially applicable to the type of claims Badgley asserts in the State Court Case.

3. Badgley files this limited Objection to the extent the Motion seeks to extend the Receiver's jurisdiction to non-receivership property and stay the adjudication of her claims against Goldmark in the State Court Case for purposes of collection against applicable insurers and insurance policies.

### III.  FACTUAL BACKGROUND

4. Badgley is a personal injury claimant with claims pending against Goldmark. On or about June 24, 2021, Badgley's five-year-old son fell from the second story of an apartment complex, the Amerigold Suites, owned by Goldmark when a rotted window that should have been secured gave way. Badgley's son sustained serious injuries to his pelvis, head, legs, and other parts of his body. Goldmark's negligence and gross negligence were a proximate cause of these injuries and the resulting damages.

5. On July 23, 2021, Badgley filed claims against Goldmark in the State Court Case. *See* **Exhibit A**, Original Petition. On October 18, 2021, Badgley filed her Amended Petition. *See* **Exhibit B**, Amended Petition. These claims were actively litigated in the State Court Case with mediation scheduled for November 18, 2022, and trial set for February 14, 2023. *See* **Exhibit C**, Mediation Order; **Exhibit D**, Trial Order.

6. Upon information and belief, Goldmark has maintained, or caused to be maintained, insurance coverage applicable to the type of claims asserted by Badgley in the State Court Case, including defense costs. *See* **Exhibit E**.

7. The SEC filed its Complaint in this action on September 23, 2022. [Dkt. 1].

8. On September 26, 2022, the SEC moved the Court for the appointment of a receiver [Dkt. 6], which the Court granted on October 18, 2022 [Dkt. 29] (Receivership Order). The Receivership Order designated Goldmark as a Receivership Entity and enjoined the adjudication of Badgley's claims in the State Court Case. *See* Receivership Order, at 3, 16-17. The Court supplemented the Receivership Order on November 16, 2022 [Dkt. 62], and December 13, 2022 [Dkt. 88], to include additional entities to the receivership.

9. On November 2, 2022, the United States Attorney's Office for the Northern District of Texas filed a motion to stay this action but not the receivership [Dkt. 44], which the Court granted on November 16, 2022 [Dkt. 64].

10. On March 2, 2023, the Receiver sought approval to sell the Amerigold Suites, an apartment complex owned by Goldmark [Dkt. 167], which the Court approved on March 29, 2023 [Dkt. 202]. This sale has not yet closed.

11. On June 28, 2023, the Fifth Circuit vacated the Receivership Order, effective 90 days after the issuance of its mandate, and granted a stay of the receivership's powers to sell or dispose of property in the interim. *SEC v. Barton*, 72 F.4th 640 (5th Cir. 2023). On August 31, 2023, the Fifth Circuit withdrew its prior opinion and entered a new opinion (Opinion). *SEC v. Barton*, No. 22-11132, 2023 WL 5618997 (5th Cir., Aug. 31, 2023). The Opinion substantially aligned with its initial opinion but clarified the scope of its stay on the sale and disposition of property under the receivership. *See id.* at *5-6.

12. On August 31, 2023, the Fifth Circuit issued its mandate.

13. On September 5, 2023, the Receiver filed a Declaration and Interim Report, detailing the status of the receivership [Dkt. 308] (Interim Report). The Interim Report alleges that Goldmark received funds subject to the underlying controversy via HR Sterling, LLC and JMJ Development, LLC that were used for improvements and operations for the Amerigold Suites. *See* Interim Report at ¶¶ 103-116, Ex. 9. Specifically, the Interim Report identified two payments in September and December 2018 to Goldmark totaling $250,000 that was then directed to Universal Solar System. *See id.* at Ex. 9.

14. On September 7, 2023, the SEC filed their Motion for appointment of a receiver and preliminary injunction [Dkt. 309]. The Motion relies on the Interim Report as well as the declarations of Carol Hahn, which similarly allege that Goldmark received funds subject to the underlying controversy, identifying the September and December 2018 amounts totaling $250,000. *See* App. at 10 [Dkt. 7-1]; Supp. App. at 7 [Dkt. 310-2].

## IV.   ARGUMENT AND AUTHORITIES

15. Badgley asserts this limited Objection to the SEC's Motion to the extent it seeks to enjoin the adjudication of her claims against Goldmark for purposes of collection against applicable insurance proceeds. Currently, the Motion seeks a blanket injunction that would enjoin all litigation against designated Receivership Entities regardless of the nature of the claim or property at issue. *See* Mot. at 20-21. The Court has broad authority to issue stays of litigation to preserve receivership property. *See SEC v. Stanford Int'l Bank, Ltd.*, 424 Fed. App'x 338, 340 (5th Cir. 2011). However, that authority is limited to property subject to the underlying litigation. *Barton*, 2023 WL 5618997, at *5 (citing *Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012)). A receivership's jurisdiction extends only over property subject to those underlying claims. *Id.*

16. Insurance proceeds under third-party liability policies providing coverage for claims like Badgley's are not property of the receivership. When analyzing receivership assets, courts have turned to bankruptcy caselaw, as the purpose of the two processes is essentially the same—the fair distribution of liquidated assets. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840-41 (5th Cir. 2019) (identifying the "shared legal heritage, since 'federal equity receiverships were the predecessor to Chapter 7 liquidations and Chapter 11 reorganizations'"). Under bankruptcy caselaw, it is well-settled that "while insurance policies are generally property of the estate, the

proceeds of liability insurance policies, unlike first party policies, generally are not." *See Sosebee v. Steadfast Ins., Co.*, 701 F.3d 1012, 1023 (5th Cir. 2012); *see also In re Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993). This determination turns on entitlement to proceeds (*i.e.*, whether proceeds of the policy would belong to the debtor once the insurer pays a claim). *See, e.g., Sosebee*, 701 F.3d at 1023; *In re Edgeworth*, 993 F.2d at 55-56. Courts in this circuit have applied this bankruptcy law to receiverships. *See Exec. Risk Indem., Inc. v. Integral Equity, L.P.*, No. 3:03-cv-0269, 2004 WL 438936, at *13 (N.D. Tex. Mar. 10, 2004); *SEC v. Narayan*, No. 3:16-cv-1417-M, 2017 WL 447205, at *4 (N.D. Tex. Feb 2, 2017); *Pellegrini v. Toffoli*, 640 F.Supp.3d 553, 564, n.44 (E.D. La. 2022). Like debtors, receivers have no cognizable claim to the proceeds of liability insurance policies or control over how those proceeds are distributed. *See Exec. Risk Indemnity, Inc.*, 2004 WL 438936, at *13 (citing *In re Edgeworth*, 993 F.2d at 55-56 and *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 786 (Bankr. M.D. La. 2001)). Those proceeds are only payable to claimants falling within the terms of the applicable policies. *See Narayan*, 2017 WL 447205, at *5 ("The general rule is that a receiver acquires no greater rights in property than the debtor had"); *SEC v. Faulkner*, No. 3:16-cv-1735-D, 2018 WL 2761850, *5 (N.D. Tex. Jun. 06, 2018) (same). The insurance proceeds under Goldmark's CGL policy are not subject to the receivership and should be excluded from any issued litigation stay. *See* **Exhibit E**.

17. Moreover, the potential harm to Badgley in staying the State Court Case far outweighs any harm to the receivership. Badgley asserts personal injury claims for injuries her child sustained. Those injuries cannot be compensated until they are adjudicated. And that adjudication is poised for resolution. Badgley's claims have been pending for over two years. *See* **Exhibits A-B**. Mediation was set for November 18,

2022, shortly after when the initial Receivership Order was entered, with trial then set for February 14, 2023. *See* **Exhibits C-D**. In in the context of liability insurance, Badgley must first establish Goldmark's liability before an insurer becomes contractually obligated to make payments. *See In re Edgeworth*, 993 F.2d at 53-56. Bankruptcy again provides guidance here as bankruptcy courts often grant relief from the automatic stay, so claimants can adjudicate their unliquidated claims against a debtor outside of bankruptcy court, particularly when the claims are already the subject of pending litigation. *See Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 414 (5th Cir. 2017); *see also In re Fuchs*, No. 05-3595-BJH-7, 2006 WL 6543977, at *2-3 (Bankr. N.D. Tex. 2006) (unpublished) (finding adjudication of personal injury claims sufficient to establish cause for granting relief from the automatic stay); *In re Bock Laundry Machine Co.*, 37 B.R. 564, 567 (Bankr. N.D. Ohio 1984) ("The automatic stay was never intended to preclude a determination of tort liability and the attendant damages"). Additional delay will unnecessarily harm Badgley and her son.

18.     In contrast, the adjudication of Badgley's claims will not harm the receivership. First, the applicable insurance policy at issue provides defense costs. *See* **Exhibit E**. Regardless, courts in this circuit have permitted defense costs to be issued even when receivership assets were implicated. *See Narayan*, 2017 WL 447205, at *5-10; *SEC v. Stanford Int'l Bank, Ltd.*, No. 309-cv-298-N, 2009 WL 8707814, *2-4 (N.D. Tex. Oct. 9, 2009). Second, there is no indication that subject funds were used to pay insurance premiums on the applicable policy. *See* Interim Report at ¶¶ 103-116, Ex. 9; *see also* App. at 10; Supp. App. at 7. In fact, the Receiver has identified $2,500,000 in assets for Goldmark subject to the pending sale, but only $250,000 in subject funds being directed to Goldmark. *See* Interim Report at ¶¶ 103-116, Ex. 9. Regardless, use of such

funds to pay insurance premiums does not create a contractual right to insurance proceeds. *See Stanford Int'l Bank, Ltd.*, 2009 WL 8707814, *3 n.2. Third, the claims at issue are isolated and not a mass tort. *See Sosebee*, 701 F.3d at 1023-24; *In re Sfuzzi*, 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996). The Receiver has only identified Badgley's pending personal injury claims during the applicable policy period.[1] *See* Interim Report at ¶ 107. Finally, Badgley would limit collection against Goldmark outside of any receivership entered to third-party insurers and insurance proceeds, while reserving any direct collection of judgment or settlement against Goldmark to a claim within the administration of any receivership entered. All of these considerations warrant the adjudication of Badgley's claims in the State Court Case.

## V. PRAYER

WHEREFORE, Badgley respectfully requests that the Court limit the proposed receivership order to receivership property and allow the adjudication of Badgley's claims in the State Court Case to final judgment or settlement and collection of any judgment or settlement from third-party insurers and insurance policies outside the receivership, while reserving any direct collection of judgment or settlement against Goldmark to a claim within the administration of any entered receivership. Badgley also requests any and all other general relief to which she may be entitled.

---

[1] The only other personal injury claim identified against Goldmark appears to have been raised in 2023 in relation to a storm. *See* Interim Report at ¶ 107.

Respectfully submitted this 28th day of September 2023.

*/s/ Ryan E. Chapple*
Ryan E. Chapple (pro hac vice)
Texas State Bar No. 24036354
Email: rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEY FOR BADGLEY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing limited Objection has been served on counsel for the parties and all parties receiving or entitled to notice through CM/ECF on this 28th day of September 2023.

*/s/ Ryan E. Chapple*
Ryan E. Chapple