IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CASE NO. 3:22-cv-2118-X |
| TIMOTHY BARTON ET AL., | § § § | |
| Defendants, | § | |

**SOUTHERN PROPERTIES CAPITAL, LTD.'S BRIEF IN SUPPORT OF RESPONSE TO SEC'S MOTION FOR APPOINTMENT OF A RECEIVER, FOR A PRELIMINARY INJUNCTION AND ANCILLARY RELIEF, AND TO LIFT STAY FOR LIMITED PURPOSE, AND BRIEF IN SUPPORT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE BRANTLEY STARR:

Southern Properties Capital, Ltd. ("SPC"), Respondent at risk of suffering imminent and irreparable harm, files this Brief in Support of Response to SEC's Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose (the "Response"), responding to Securities and Exchange Commission's Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose (Doc. 309) (the "Motion" or the "SEC's Motion"), and states as follows:

**i**

Southern Properties Capital, Ltd.'s Brief in Support of Response
To SEC's Motion for Appointment of a Receiver
(456080v3)

**TABLE OF CONTENTS**

I.    SUMMARY OF RESPONSE ............................................................................................ 1

II.   FACTUAL BACKGROUND .......................................................................................... 3

    A.   The SPC Projects. ................................................................................................... 3

III.  LEGAL STANDARD.................................................................................................... 6

IV.   ARGUMENTS & AUTHORITIES................................................................................ 7

    A.   The Receiver cannot show that investor funds were paid into the SPC Project, or that the SPC Projects benefitted from them. ...................................................................... 7

    B.   SPC would be irreparably harmed if the Court allows the SPC Projects to be in the Proposed Order.................................................................................................... 16

    C.   SPC cannot be adequately compensated with monetary damages.................................... 24

V.    CONCLUSION ......................................................................................................... 25

Southern Properties Capital, Ltd.'s Brief in Support of Response
To SEC's Motion for Appointment of a Receiver
(456080v3)

## TABLE OF AUTHORITIES

**Cases**

*Bean v. Indep. Am. Sav. Ass'n,* 838 F.2d 739, 743 (5th Cir. 1988).................................................3

*Eastland v. Camp Mystic, Inc*., No. 04-08-00675-CV, 2009 WL 260523, at *4 (Tex. App.—San Antonio Feb. 4, 2009) ...........................................................................................................................25

*EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.3d 1085, 1087-88 (5th Cir. 1987) ......................19

*Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 710 (5th Cir. 1984) ..............................................19

*In re Swiftco, Inc*., No. 85-07083-H1-5, 1988 WL 143714, at *12 (Bankr. S.D. Tex. Oct. 5, 1988) .........24

*La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010) .................................................19

*Luis v. United States*, 578 U.S. 5, 22 (2016)...........................................................................................6

*Matter of Bumstead Fam. Irrevocable Tr*., No. 13-20-00350-CV, 2022 WL 710159, at *25 (Tex. App.—Corpus Christi Mar. 10, 2022) ..........................................................................................25

*Montanile v. Board of Trustees of Nat. Elevator Industry Health Benefit Plan*, 136 S. Ct. 651, 659, 577 U.S. 136, 145 (2016)) .........................................................................................................6

*Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012)...................................................................8, 16

*San Antonio Sav. Ass'n v. C.I.R.*, 887 F.3d 577, 591 (5th Cir. 1989) .........................................................24

*SEC v. Banner Fund Intern.*, 211 F.3d 602, 617 (D.C.C. 2000)...................................................................7

*SEC v. Seghers*, 298 Fed.Appx. 319, 336 (5th Cir. 2008) ..........................................................................6

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) .........................24

*Smith v. SEC*, 653 F.3d 121, 128 (2d. Cir. 2011).......................................................................................18

*Smoothie King Franchises, Inc. v. UKE-MEX Enterprises, Inc.*, No. 4:10-CV-1285, 2010 WL 11679368, at *4 (S.D. Tex. 2010)..........................................................................................................17

*United States v. Ayika*, 837 F.3d 460, 469 (5th Cir. 2016) ...........................................................2, 7, 8, 9

*United States v. Dass*, No. 22-20025, 2023 WL 1529713, at *1 (5th Cir. 2023) ...............................2, 8, 9

*United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969) ..................................................19

*Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997)...............................................17

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ....................................................................... 6

Southern Properties Capital, Ltd.'s Brief in Support of Response
To SEC's Motion for Appointment of a Receiver
(456080v3)

## I.     SUMMARY OF RESPONSE

SPC is an innocent bystander at risk of real harm. Long ago, SPC planted the seeds to own and operate the four (4) residential apartment developments at issue: (1) Bellwether Ridge ("Bellwether Ridge"), (2) Parc at Windmill Farms ("Windmill Farms"), (3) Parc at Ingleside ("Ingleside"), and (4) Parc at Opelika ("Opelika") (collectively, whether entities owning the assets, or the assets themselves, the "SPC Projects"). SPC provided equity funding, purchased the raw land, created design plans, paid for development, oversaw construction, and now manages leasing and day-to-day maintenance. The seeds SPC planted years ago have harvested into stabilized residential apartment complexes—after millions invested, SPC created something.

Despite all of this, the Receiver seeks to take it all away. The Receiver's intent is to pay one group of victims (Barton's investors) by creating another (SPC and its shareholders). The Receiver seeks to do this with no evidence that Barton's investor funds were used to develop, build, operate or otherwise benefit the SPC Projects. The Receiver cannot do so *because the SPC Projects did not use investor funds to develop, build, operate or otherwise benefit from investor funds*.

The SEC's Motion has one overarching objective: convince this Court to appoint a Receiver. SPC does not take a position on this issue. More specifically, however, SPC objects to the SEC's Proposed Receivership Order (the "Proposed Order") because it includes the "D4" entities and their assets, which the Receiver alleges includes the SPC Projects.

In past proceedings, the Receiver made clear it disregards SPC's claim of ownership interest in the SPC Projects and will sell them at fire sale prices. If the SEC's Motion and its Proposed Order are granted, SPC will be denied due process. For the following three (3) reasons, the SPC Projects should not be included in the Proposed Order.

Southern Properties Capital, Ltd.'s Brief In Support of Response                                    Page 1 of 25
To SEC's Motion to Appoint Receiver
(455,984)

**First, no investor funds were paid to or otherwise benefitted the SPC Projects.** The SEC alleges Barton and others swindled investors. The allegations range from Barton using investor funds to foot Barton's personal bills to Barton using investor money to repay other investors, like a typical Ponzi scheme. The Receiver, however, fails to meet his burden of proof to show by sufficient evidence that investor funds were paid to develop, build, operate or to otherwise benefit the SPC Projects. *See United States v. Dass*, No. 22-20025, 2023 WL 1529713, at *1 (5th Cir. 2023); *United States v. Ayika*, 837 F.3d 460, 469 (5th Cir. 2016). During construction, all of the funding for the SPC Projects came from either the debt from HUD (in the form of mortgage loans) or from equity from SPC (in the form of convertible loans). [App. 7-8, 10, 12].[1] The Receiver admits this incontrovertible fact. Present day, the SPC Projects are funded from the source one would expect: rental income. The Court should exclude the SPC Projects from the Proposed Order because no investor funds were paid to develop, build, operate or to otherwise benefit the SPC Projects, and the Receiver cannot show otherwise.

**Second, SPC would be irreparably harmed if the Court includes the SPC Projects in the Proposed Order.** Real property owners possess unique interests. All real property is unique. The SPC Projects are no different. From the outset, SPC expended funds for the develop, construction, and operation of SPC Projects. Despite this, the Receiver intends to confiscate the SPC Projects and sell them. SPC (and TCI shareholders) should not be punished for implementing a perfectly reasonable business strategy. Yet, if this Court grants the SEC's Motion, this Court would "greenlight" the Receiver to "rob Peter to pay Paul," and creates a new group of victims (SPC and TCI shareholders) to pay back another group of alleged victims (Barton's investors).

---

[1] "App." refers to SPC's Appendix attached hereto.

Southern Properties Capital, Ltd.'s Brief In Support of Response    Page 2 of 25
To SEC's Motion to Appoint Receiver
(455,984)

**Third, monetary damages cannot adequately compensate SPC.** The loss of real property rights inherently results in irreparable harm. *See e.g. Bean v. Indep. Am. Sav. Ass'n,* 838 F.2d 739, 743 (5th Cir. 1988) and cases cited *infra*. If the SPC Projects are included in the Proposed Order, it is all but certain the Receiver will sell the SPC Projects. SPC, therefore, would be irreparably harmed because monetary relief would fail to provide SPC with adequate compensation for the loss of its real property interests.

SPC appreciates and supports the mission of the SEC to protect investors, as well as the role of the Receiver in attempting to marshal and conserve assets for the benefit of victims of fraudulent conduct. Nonetheless, not every proposal that might return funds to investors is fair or just. And the relief sought by the SEC's Motion is neither fair nor just.

## II.    FACTUAL BACKGROUND

### A.    The SPC Projects

SPC is a subsidiary of Transcontinental Realty Investors, Inc. ("TCI"). [App. 2]. TCI is a national real estate company that is publicly traded on the New York Stock Exchange. [App. 2, 21]. SPC develops and owns a portfolio of real estate, including multifamily residential properties. [App. 2, 3].

On certain occasions, SPC outsources the developer role. [App. 3]. Defendant Timothy Barton ("Barton") served as the developer for the SPC Projects. [App. 4]. Barton, through one of his "D4" entities would develop the SPC Projects. [App. 12-14, 16]. SPC paid Barton a market rate developer's fee to serve as the SPC Projects' developer. [App. 4, 5]. In return, Barton performed equivalent services. Barton sought HUD mortgage financing, pursued zoning, and provided other ancillary developer services. [App. 4]. SPC provided the equity in the form of convertible loans. [App. 5]. Pursuant to the convertible loans, SPC loaned money to Barton's

Southern Properties Capital, Ltd.'s Brief In Support of Response                      Page 3 of 25
To SEC's Motion to Appoint Receiver
(455,984)

entities performing the developer role. [App. 5, 12-14, 16]. The convertible loans gave SPC the option to convert its debt into 100% equity at a later date, when the projects stabilized. [App. 5]. SPC secured the raw land; funded the equity; and constructed, designed, and developed the SPC Projects. [App. 5-6]. Since construction is complete, SPC now oversees day-to-day management for the SPC Projects, including leasing and property maintenance. App. 598-600, 602-604, 606-609. Importantly, SPC has not received any funds from Barton or his entities to manage the day-to-day operations of the SPC Projects. *Id.* Once the SPC Projects reach stabilization, Barton was to transfer title of the SPC Projects to SPC. [App. 3, 5]. Each of the four properties in the SPC Projects is briefly discussed below.

**<u>Bellwether Ridge</u>**

Bellwether Ridge is an apartment complex located in Desoto, Texas. [App. 12]. For this project, Barton, as the developer, used his development company, JMJ Development, LLC ("JMJ"). *Id.* To obtain a mortgage loan, Barton used his borrower company, D4DS, LLC ("D4DS"). *Id.* D4DS obtained a HUD loan for $18,608,100.00. *Id.*

SPC, for its part, provided equity financing to fund construction of Bellwether. *Id.* SPC used a convertible loan to do so. [App. 12-13]. JMJ executed a note with SPC for $3,800,000.00 (the "Bellwether Note"). [App. 12]. To provide security for the Bellwether Note, JMJ assigned to SPC all of JMJ's right, title, and interest in the membership interests of D4DS's parent company, JMJD4, LLC ("JMJD4"). [App. 12-13]. Importantly, each of JMJ's pledges included a "Conversion Option." *Id.* The Conversion Option granted SPC an option to convert its loan into equity and acquire Bellwether. [App. 13]. On October 3, 2022, SPC exercised its option and converted its Bellwether loan to 100% ownership over Bellwether. *Id.*

Southern Properties Capital, Ltd.'s Brief In Support of Response                                      Page 4 of 25
To SEC's Motion to Appoint Receiver
(455,984)

**Windmill Farms**

Windmill Farms is an apartment complex located in Forney, Texas. *Id.* For this project, SPC again outsourced the developer role to Barton. *Id.* Barton used his same developer company, JMJ. *Id.* Barton used a different borrowing company for this project—D4FR, LLC ("D4FR"). D4FR obtained a HUD loan for $36,540,600.00. *Id.*

SPC, through another convertible loan, provided equity financing to fund construction of Windmill Farms. [App. 13-14]. JMJ executed a note with SPC for $7,300,000.00, which was later increased to $8,300,000.00 (the "Windmill Note"). *Id.* JMJ secured the Windmill Note by assigning to SPC all of JMJ's right, title, and interest in the membership interests of D4FR's parent company, JMJD4. [App. 14]. JMJ's pledges included a "Conversion Option." *Id.* The Conversion Option granted SPC an option to convert its loan into equity and acquire Windmill Farms. *Id.* On October 3, 2022, SPC converted its Windmill loan to 100% ownership of Windmill Farms. *Id.*

**Parc at Ingleside**

Ingleside is an apartment complex located in Ingleside, Texas. [App. 14]. Ingleside follows the same model as Bellwether Ridge and Windmill Farms. [App. 14-15]. SPC outsourced the developer role to Barton. [App. 14]. Barton used his development company, JMJ. *Id.* Barton used D4IN, LLC ("D4IN") as his borrowing company. *Id.* D4IN obtained a HUD loan totaling $25,201,000.00. [App. 14-15].

SPC, through a convertible loan, provided equity financing to fund construction of Ingleside. [App. 15]. JMJ's parent company, JMJAV, LLC ("JMJAV") executed a note with SPC for $6,634,490.00 (the "Ingleside Note"). *Id.* JMJAV secured the Ingleside Note by assigning all of the right, title, and interest in the membership interests in JMJD4. *Id.* JMJAV's pledges

Southern Properties Capital, Ltd.'s Brief In Support of Response          Page 5 of 25
To SEC's Motion to Appoint Receiver
(455,984)

included the "Conversion Option," granting SPC an option to convert its loan into equity and acquire Ingelside. *Id.* On October 3, 2022, SPC converted its Ingleside loan to 100% ownership of Ingleside. *Id.*

**Parc at Opelika**

Opelika is an apartment complex located in Opelika, Alabama. *Id.* As with the above developments, SPC retained (and paid) Barton's companies to perform developer services. [App. 16]. Barton caused JMJ to perform development services and formed the placeholder company D4OP, LLC ("D4OP") during the pre-stabilization phase (prior to SPC's option exercise). *Id.* D4OP obtained a HUD loan for $23,789,100.00. *Id.*

SPC, using a convertible loan, provided equity financing to fund construction of Opelika. *Id.* D4OP and One MFD4, LLC executed a note with SPC for $5,129,000.00 (the "Opelika Note"). *Id.* D4OP and MF D4, LLC ("MF D4") secured the Opelika Note by assigning all of the right, title, and interest in the membership interests in D4OP. *Id.* D4OP's and MF DF's pledges included a "Conversion Option," granting SPC an option to convert its loan into equity and acquire Opelika. *Id.* While SPC retains the right to exercise its option to convert its loan into ownership interest, it has not done so yet. SPC must obtaining a cost certification before doing so, which SPC is currently pursuing. *Id.*

## III.    LEGAL STANDARD

Tracing is the process of tracking assets, over time, to determine the original source of funds. *See Tracing*, BLACK'S LAW DICTIONARY (11th ed. 2019). Since "[c]ourts use tracing rules in cases involving fraud…[t]hey consequently have experience separating tainted assets from untainted assets[.]" *Luis v. United States*, 578 U.S. 5, 22 (2016) (plurality opinion) (referencing *Montanile v. Board of Trustees of Nat. Elevator Industry Health Benefit Plan*, 136 S. Ct. 651,

Southern Properties Capital, Ltd.'s Brief In Support of Response                    Page 6 of 25
To SEC's Motion to Appoint Receiver
(455,984)

659, 577 U.S. 136, 145 (2016)). If the SEC "shows a causal relationship between the defendant's wrongdoing and the amount by which he was unjustly enriched, that amount of money may be disgorged even if the defendant has otherwise disposed of, reinvested, or spent the particular assets that he wrongfully obtained." *SEC v. Seghers*, 298 Fed.Appx. 319, 336 (5th Cir. 2008) (citing *SEC v. Banner Fund Intern.*, 211 F.3d 602, 617 (D.C.C. 2000)). The Fifth Circuit, however, holds that assets can be forfeited only if they can be adequately traced to funds gained from fraudulent activity. *Ayika*, 837 F.3d 460, 469 (5th Cir. 2016).

## IV.    ARGUMENTS & AUTHORITIES

The SPC Projects should be excluded from the Proposed Order because: (1) The Receiver cannot show that investor funds were paid into the SPC Project, or that the SPC Projects benefitted from them; (2) SPC would be irreparably harmed; and (3) monetary damages cannot adequately compensate SPC. These reasons are discussed in turn below.

### A. The Receiver cannot show that investor funds were paid into the SPC Project, or that the SPC Projects benefitted from them.

The SEC draws a picture of Barton and others conspiring to pull off a far-flung fraud. The SEC alleges Barton and his accomplices used investor funds to pay for Barton's lifestyle, to compensate Barton's accomplices, and to further their Ponzi scheme, among other activities. Yet, a crucial aspect is missing: the SEC has not shown any money that allegedly was used to develop, construct, and operate SPC Projects came from the supposed defrauded investors.

Instead, the SEC asks this Court to take the convenient approach for convenience's sake. That is, the SEC wants the Court to include the SPC Projects in the Proposed Order without accurate and adequate tracing. This approach offends all notions of justice and does not comport with the law. This Court, therefore, must exclude the SPC Projects from any receivership order.

Southern Properties Capital, Ltd.'s Brief In Support of Response                                    Page 7 of 25
To SEC's Motion to Appoint Receiver
(455,984)

For starters, the SEC fails to establish the first element under *Netsphere*: "a clear necessity to protect the defrauded investors' interest in property[.]" *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). The SEC has not shown how the SPC Projects have benefitted from alleged fraudulent funds. That is because it can't show that. The SPC Projects received their funding from two sources—HUD loans and SPC funding. [App. 7-8, 10, 12]. The SEC points this Court to certain financial transactions, but there is nothing there. As explained in more detail below, the SEC fails to disclose that the funds were paid in error and were quickly returned. Instead, the SEC claims snapshot images of financial transactions, without context, is adequate tracing. The law on tracing conclusively demonstrates that tracing here has been woefully inadequate.

In *Dass*, a defendant pled guilty to aiding and abetting healthcare fraud. *Dass*, No. 22-20025, 2023 WL 1529713, at *1 (5th Cir. 2023). The defendant admitted that $500,000.00 in her bank account was directly tied to her fraudulent activities. *Id.* The district court ordered forfeiture of the $500,000.00 *and* issued a $928,621.16 money judgment. *Id.* The Fifth Circuit, however, vacated the money judgment because "part of the $928,621.16 money judgment lacks the required statutory nexus." *Id.* at *2.

Similarly, in *Ayika*, a pharmacist was convicted for healthcare fraud. *Ayika*, 837 F.3d at 464. The government also wanted to seize *all* funds in the pharmacist's bank account. *Id.* at 469. The pharmacist responded, arguing many of the funds in the account were derived from legitimate sources. *Id.* at 470. That is, the government could only trace 33.5% of the funds in the pharmacist's account to the pharmacist's fraudulent activity. *Id.* at 471. The Fifth Circuit ultimately agreed with the pharmacist because the government failed to trace *all* the funds in the

Southern Properties Capital, Ltd.'s Brief In Support of Response                                    Page 8 of 25
To SEC's Motion to Appoint Receiver
(455,984)

account to the pharmacist's fraud. *Id.* at 474. Thus, the funds could not be wholly seized in mass. *Id.*

While these cases concern criminal proceedings, they are analogous here. Barton has been charged with criminal wrongdoing. Because of Barton's alleged conduct, the SEC now seeks to place any and all of Barton's assets under the Receiver's control. Like the government in *Dass* and *Ayika*, the SEC hopes to do so with a broad brush. Yet, *Dass* and *Ayika* show the problems with the SEC's overly broad Proposed Order. Namely, the SEC cannot show the required nexus between the investor funds and the SPC Projects.

In fact, the SEC has not engaged in adequate tracing efforts relating to the SPC Projects. In *Dass* and *Ayika*, the government at least engaged in legitimate tracing. *See Dass*, No. 2023 WL 1529713, at *1; *Ayika*, 837 F.3d at 464. Even then, the Fifth Circuit found, in both instances, that the government's efforts were insufficient. *See Dass*, No. 2023 WL 1529713, at *2; *Ayika*, 837 F.3d at 474. The government, in both cases, failed to trace all of the funds to the respective frauds. *See id.* Here, the SEC does not engage in adequate tracing in accordance with the legal standard. As shown below, the Receiver asks this Court to take a split-second look at eight (8) snapshots of incomplete financial transactions. When the Court views the challenged transactions in context, as it should, the Court can reach only one result: none of the SPC Projects cannot be subjected to the Proposed Order or any receivership order. In fact, simple arithmetic supports this outcome.

SPC invested tens of millions of dollars to develop the SPC Projects. [App. 7-8, 10, 12, 52]. SPC's efforts were not for charity; SPC expected to reap the rewards of owning the SPC Projects. Now, the SEC claims its supposed threatened harm meets or exceeds the harm to SPC. This is untenable.

Southern Properties Capital, Ltd.'s Brief In Support of Response    Page 9 of 25
To SEC's Motion to Appoint Receiver
(455,984)

As explained above, the SEC uses its wholly and conclusively inadequate attempts at "tracing" efforts to claim the SPC Projects are tainted by Barton's alleged fraud. Of course, had the SEC engaged in adequate tracing, it would have easily discovered that all of the supposed problematic transactions netted to zero. That is, the SPC Projects did not receive any benefit.

Importantly, as set forth in the Johnson Declaration, *all funds for construction or initial operations of Bellwether Ridge, Windmill Farms, Ingleside and Opelika have come from the primary HUD loan or SPC equity*. *Id.* SPC equity advances either equal or exceed reported equity for Bellwether Ridge. *Id.*

Transactions for each of the SPC Projects will be discussed in detail below.

The Receiver fails to show that Bellwether Ridge received or benefitted from investor funds.

The Receiver supports his tracing with payments to D4DS, but he fails to disclose that the payments were made in error, and that D4DS quickly returned the money.

The Receiver alleges that on August 1, 2019, JMJ made a $25,000.00 payment to D4DS. Yet, D4DS returned this payment. On September 9, 2019, D4DS returned the $25,000.00 to JMJ. [App. 6]. This transaction, then, was an "in-and-out" or "cancelled" transaction. *Id.* It had a net zero effect—there was no payment received by Bellwether Ridge, and Bellwether Ridge did not benefit from it. *Id.*

The Receiver also relies on a $30,000.00 payment from JMJ to D4DS on August 12, 2019. As above, the payment was made in error, and D4DS returned the money to JMJ. [App. 7]. On September 11, 2019, D4DS made a $30,000.00 payment to JMJ. *Id.* As above, the transaction results in neither a payment nor benefit to Bellwether Ridge. *Id.*

Finally, the Receiver, flailing, alleges Bellwether Ridge received $35,529.45 to pay Greystone Servicing Company ("Greystone"). Greystone was the service provider for the HUD

Southern Properties Capital, Ltd.'s Brief In Support of Response                Page 10 of 25
To SEC's Motion to Appoint Receiver
(455,984)

loans. *Id.* What the Receiver fails to disclose is that SPC (not investor funds) was the source of the $35,529.45. *Id.* SPC paid the money to JMJ, which then paid it into Bellwether Ridge as part of SPC's equity contribution in Bellwether. *Id.* The Receiver's reliance on this payment fails to support tracing. Instead, it substantiates that SPC provided equity funding for Bellwether.

The Receiver's claims are misleading and without substance. The Court should completely disregard the Receiver's argument here.

The Receiver fails to show that Windmill Farms received or benefits from investor funds.

The Receiver alleges Windmill Farms received investor funds to construct Windmill Farms. The Receiver fails to disclose, again, that money was paid in error and immediately returned.

The Receiver alleges, in support of its supposed "tracing", a July 17, 2019 payment from JMJ to D4FR for $106,097.70. The Receiver asks this Court to look no further, but the Receiver's snapshot is incomplete. A couple of weeks before, on July 3, 2019, JMJ received the money, $106,097.70, from D4FR in error. [App. 8]. Thus, when JMJ paid $106,097.70 to D4FR, just days later, on July 17, 2019, JMJ was returning the money D4FR previously paid in error. *Id.* The transaction was an in-and-out, cancelled transaction. *Id.* It nets to zero—there was no payment made to, or benefit to, Windmill Farms. *Id.* As above, there is no merit to the Receiver's position.

The Receiver fails to show that Ingleside received or benefits from investor funds.

The Receiver alleges Ingleside received investor funds. Yet again, the Receiver fails to disclose that the money was paid in error and quickly returned.

The Receiver alleges that JMJD4 made three payments to Ingleside, totaling $357,147.50, as follows: (1) a $163,054.48 payment to SPC on February 24, 2022; (2) a

Southern Properties Capital, Ltd.'s Brief In Support of Response                    Page 11 of 25
To SEC's Motion to Appoint Receiver
(455,984)

$72,000.00 payment to JMJ VC Management, LLC ("JMJ VC") on February 25, 2022; and (3) a $120,000.00 payment to Maximillian Barton on February 28, 2022. The Receiver alleges the money originated from Capital Title of Texas, LLC ("Capital Title"). Yet again, however, the Receiver fails to disclose important context.

The Capital Title funds represent "Excess Loan Proceeds" from Ingleside's HUD loan. [App. 9]. D4IN secured the loan from HUD. *Id.* After closing costs, there remained excess loan proceeds. *Id.* Under HUD regulations, the remaining proceeds can be distributed to the equity holder of the property. *Id.* All of the $357,147.50 was supposed to be distributed to SPC to pay down SPC's convertible loan. *Id.* The payments to JMJ VC and Maximillian Barton were paid in error (and represent an additional claim that SPC has against Barton). *Id.* Regardless, the Capital Title funds originated from HUD, not investors. *Id.*

Next, the Receiver oddly supports his tracing with a payment that originated from the SBA, was made in error, and had nothing to do with Ingleside. The payment at issue, for $24,014.85, originated from a SBA loan, not investors. *Id.* The payment was to reimburse D4IN for a payment D4IN made earlier, in error, to the City of Fort Worth. *Id.* The payment to City of Fort Worth had nothing to do with Ingleside, which is located near Corpus Christi, Texas. [App. 10]. This payment was another in-and-out, cancelled transaction. *Id.* The Receiver fails to show that Ingleside received this payment or benefitted from it.

<u>The Receiver fails to show that Opelika received or benefits from investor funds.</u>

Finally, the Receiver alleges Opelika also received funds from investors. As one has come to expect, the Receiver fails to show tracing. The Receiver supports its tracing by alleging that on December 3, 2021, Enoch Investments, LLC ("Enoch") paid $210,000.00 to D4OP. The Receiver fails to disclose that just shy of a month earlier, on November 10, 2021, D4OP

Southern Properties Capital, Ltd.'s Brief In Support of Response                    Page 12 of 25
To SEC's Motion to Appoint Receiver
(455,984)

erroneously paid the $210,000.00 to Enoch. *Id.* Enoch's December 3, 2021 payment to D4OP, then, is simply Enoch returning the money to D4OP. [App. 11]. The transactions cancel each other out; Opelika did not benefit. *Id.*

Next, the Receiver supports its tracing by relying on a $15,000.00 payment from JMJD4 to D4OP on June 23, 2021. Yet again, the Receiver fails to disclose that the payment was made in error, and that D4OP returned the money. *Id.* On June 23, 2021, D4OP returned the $15,000.00 to JMJD4. *Id.* This transaction, as with the above Enoch payment, resulted in a net zero to Opelika.

In summary, the Receiver directed this Court to murky, incomplete, one-off transactions. In response, SPC has provided this Court with clear and complete explanations for each transaction. Importantly, SPC engaged in the required analysis to show a lack of adequate tracing. Under *Dass* and *Ayika*, the Fifth Circuit refused to allow the government to seize amounts it failed to adequately trace. Here, had the SEC engaged in any tracing beyond snapshot, incomplete glances, then it would have easily realized the transactions resulted in no payments or benefit to the SPC Projects. Since the government fails to provide any adequate tracing of investor funds to the SPC Projects, this Court should deny the SEC's Motion.

The Thomas Declaration

Since the SEC's "tracing" efforts fail, it has resorted to relying on the Receiver's tangential declaration. The Receiver starts by conceding the weaknesses in his tracing. He writes, "[t]he vast majority of funds used to develop each of the [SPC Projects]" were from two sources: (1) the HUD loans service by Greystone and secured by a lien on each property, and (2) the SPC convertible loans for the equity (what SPC has claimed all along). *See* Declaration and Interim Report of Cortney C. Thomas, As Receiver (Dkt. 308), ¶ 78. (hereinafter "Thomas Decl.").

Southern Properties Capital, Ltd.'s Brief In Support of Response                                    Page 13 of 25
To SEC's Motion to Appoint Receiver
(455,984)

The Receiver then baldly concludes, "even if no Wall Investor Funds flowed directly into the [SPC Projects]…it does not follow those one of three lenders—HUD, SPC, or the Small Business Administration—would become anything more than a lender." *Id.* Predictably, the Receiver provides no support for his assertion. Worse, the Receiver's statement ignores the reality of SPC's ownership interest in the SPC Projects. From the start, SPC assumed the owner role for the SPC Projects because SPC always intended to exercise its right to convert its convertible loans to equity.

The Receiver argues he is somehow excused from showing adequate tracing because he makes the vague, unsupported argument that the SPC Projects generally benefited from Barton's involvement. He is wrong for several reasons. First, the Receiver is always required to show tracing. He must show either that the SPC Projects received investor funds, or they benefitted by investor funds. The Receiver proves nothing by arguing that the SPC Projects benefitted from Barton. Second, the Receiver fails to show that Barton provided benefit to the SPC Projects beyond what SPC paid him in developer's fees. SPC paid Barton a developer's fees that compensates for overhead and "G&A." [App. 4, 5].

The Receiver offers five (5) examples of how Barton benefitted the SPC Projects, and SPC shows that SPC's payment of the developer's fees paid for benefits, not investor funds. More importantly, the SEC does not parse through other sources of income to determine precisely the source of the below benefits. In other words, the SEC has not shown that funds from Barton's alleged fraud were the source.

First, the Receiver claims the funds paid salaries for JMJ employees that worked on the SPC Projects. *See* Thomas Decl. ¶ 81(a). SPC's payment of the developer's fee paid Barton's G&A, such as employee salaries.

Southern Properties Capital, Ltd.'s Brief In Support of Response                                      Page 14 of 25
To SEC's Motion to Appoint Receiver
(455,984)

Second, the Receiver asserts the funds paid for JMJ's office space. *See* Thomas Decl. ¶ 81(b). Again, SPC's payment of the developer's fee paid Barton's G&A, such as office space.

Third, the Receiver writes, "[t]hese same salary and property expenses were used in obtaining Economic Injury Disaster Loans for each of the D4 Entities from the SBA." *See* Thomas Decl. ¶ 81(c). Again, SPC paid Barton a developer's fee for the benefit, if any, that the SPC Projects received from the SBA's Economic Injury Disaster Loans.

Fourth, the Receiver claims that assets from Barton's alleged fraud key in obtaining the HUD loans for the SPC Projects. *See* Thomas Decl. ¶ 81(d). SPC's developer's fee paid Baron for his experience, expertise and abilities to obtain HUD loans for apartment complexes.

Fifth, and finally, the Receiver writes that Barton's entities, not SPC, will shoulder the tax liability for the SPC Projects. *See* Thomas Decl. ¶ 81(e). This, however, would be outcome of the Receiver's choosing. SPC is ready, willing, and able to assume the tax liabilities for the SPC Projects. In fact, SPC would welcome such a burden because it would mean the Receiver is no longer blocking SPC's full use and enjoyment of the SPC Projects. Since the SEC's Complaint is simply a product of its choosing, this Court should ignore this argument. In sum, there is zero (0) evidence that the SPC Projects received any more than that which SPC paid Barton on behalf of the SPC Projects. Therefore, the SPC Projects in no way benefitted from anything performed by Barton. They paid for exactly what they received.

SPC's Harm v. The SEC's "Harm"

SPC invested tens of millions of dollars to develop the SPC Projects. [App. 7-8, 10, 12, 52]. SPC's efforts were not for charity; SPC expected to reap the rewards of owning the SPC Projects. Now, the SEC claims its supposed threatened harm is on par with SPC's. This is untenable.

Southern Properties Capital, Ltd.'s Brief In Support of Response                                    Page 15 of 25
To SEC's Motion to Appoint Receiver
(455,984)

As explained above, the SEC uses its wholly inadequate "tracing" efforts to claim the SPC Projects are tainted by Barton's alleged fraud. Of course, had the SEC engaged in adequate tracing, it would have discovered that all of the supposed problematic transactions netted to zero—the SPC Projects did not receive any benefit.

*Netsphere* requires the SEC to show "the benefits of receivership outweigh the burdens on the affected parties." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). Yet, the total amount of the supposed problematic transactions is dwarfed by the total amount SPC put into the SPC Projects. The SEC simply cannot show how its alleged threatened injury outweighs that of SPC's, which has devoted years and substantial sums toward developing the SPC Projects.

Concluding on this topic, the SEC asks this Court to "take exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated" belonging to Barton. *See* Proposed Order. This includes the entities Barton used as the developer for the SPC Project. Yet, for a receivership order, the onus for showing what assets should be included is not on a non-party—*it is on the SEC*. Here, the SEC simply failed to show why the SPC Projects should be included in the Proposed Order. This Court, therefore, should deny the Receiver's Motion.

## B. SPC would be irreparably harmed if the Court allows the SPC Projects to be in the Proposed Order

The Receiver previously made clear his intent to sell the SPC Projects at fire sale prices. If the Court includes the SPC Projects in the Proposed Order, then the Receiver, and not the rightful and true owner, SPC may exercise dominion and control over the SPC Projects. SPC, which has invested tens of millions of dollars and years developing the SPC Projects, would be irreparably harmed.

On this topic, the SEC seeks a preliminary injunction, writing, "the threatened injury if the preliminary injunction is denied also far outweighs any harm that will result if the asset

Southern Properties Capital, Ltd.'s Brief In Support of Response
To SEC's Motion to Appoint Receiver
(455,984)

Page 16 of 25

freeze is not granted, and the preliminary injunction is indisputably in the public interest." Mot. at 22. The SEC adds, "[t]his interest far outweighs any potential harm that Barton may suffer if the status quo is maintained[.]" *Id.* The SEC, however, has overlooked *the harm that SPC would suffer* if this Court grants the SEC's request for preliminary injunction.

More specifically, in the SEC's proposed preliminary junction, the SEC includes Barton entities "not placed in receivership." This means that, even if SPC is successful in ensuring the SPC Projects avoid the Receivership, those properties would still be subject to the SEC's preliminary injunction. The SEC, in effect, is seeking a preliminary injunction not just against Barton, but also SPC.

A preliminary injunction is no small ask. In fact, "a preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) *that the threatened injury outweighs any harm that may result from the injunction to the non-movant*; and (4) that the injunction will not undermine the public interest." *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). Without conceding any of the above elements, SPC narrows its focus to the third element. "The third element requires that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted." *Smoothie King Franchises, Inc. v. UKE-MEX Enterprises, Inc.*, No. 4:10-CV-1285, 2010 WL 11679368, at *4 (S.D. Tex. 2010) (citing *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008)).

SPC takes no position on a preliminary injunction for Barton's assets outside of the SPC Projects. Yet, for the SPC Projects, the SEC has not shown that its supposed "threatened injury outweighs any harm that may result from the injunction to the non-movant[.]" *Valley*, 118 F.3d

Southern Properties Capital, Ltd.'s Brief In Support of Response                Page 17 of 25
To SEC's Motion to Appoint Receiver
(455,984)

at 1051. Instead, the SEC relies on its conclusory assertion that "the SEC need not demonstrate harm." Mot. at 23. The law, however, tells a different story.

Initially, the SEC directs this Court to *Smith v. SEC*. The SEC writes, "because a preliminary injunction preventing the transferring of assets is a provisional remedy intended to preserve the status quo, the SEC need not demonstrate irreparable harm." *Id. Smith*, however, does not create a blanket exception like the SEC claims. In fact, *Smith* is inapposite of this case for two main reasons.

First, the Second Circuit in *Smith* writes, "*[i]n this jurisdiction*, injunctions sought by the SEC do not require a showing of irreparable harm or the unavailability of remedies at law." *Smith v. SEC*, 653 F.3d 121, 128 (2d. Cir. 2011) (emphasis added). *Smith* is a *Second Circuit* case. *Smith* cites other Second Circuit cases to support its proposition. *See id.* Here, however, the SEC fails to direct this Court to any *Fifth Circuit* case supporting the maxim that "the SEC need not demonstrate irreparable harm." *See* Mot. at 23. Unless this Court wishes to forge its own path on this issue, the SEC is not entitled to the special treatment it demands.

Second, not only is *Smith* exclusive to the Second Circuit, but it also includes a caveat for non-defendants in an enforcement action. "'[f]ederal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *Smith*, 653 F.3d at 128 (quoting *SEC v. Cavanaugh*, 155 F.3d 129, 136 (2d. Cir. 1998)). Here, as shown above, the SPC Projects have neither received nor benefitted from ill-gotten funds. Any transactions related to Barton's "D4" entities and the SPC Projects were cancelled out. [App. 6-12]. Plus, the SPC Projects do not assert they have a legitimate claim to the funds paid in error, which they held only for a brief time—*that is why they returned them*. Not only is the SEC

Southern Properties Capital, Ltd.'s Brief In Support of Response                    Page 18 of 25
To SEC's Motion to Appoint Receiver
(455,984)

wrong in arguing it need not show irreparable harm, but it has also fallen short of establishing these two elements. Ultimately, *Smith* is inapplicable here.

The Fifth Circuit is clear that to obtain a preliminary injunction, the movant must show "the threatened injury outweighs any harm that may result from the injunction to the non-movant." *Valley*, 118 F.3d at 1051; *see also Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d at 1088; *Ridgley*, 512 F.3d at 734; *La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010). The SEC does not receive special treatment allowing it to forgo this required element.

The SEC continues to misconstrue case law. The SEC relies on *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, asserting, "irreparable harm is presumptively established by a showing of a statutory violation." Mot. at 23. A closer look shows otherwise. *Cosmair* featured a dispute over age discrimination. *Cosmair, Inc.,* 821 F.3d at 1087-88. The district court granted the EEOC's motion for preliminary injunction, requiring the employer to continue paying the former employee's severance pay, among other benefits. *Id.* The employer challenged the injunction by arguing the EEOC "failed to show irreparable injury." *Id.* at 1090. The Fifth Circuit disagreed, writing "*when a civil rights statute is violated*, 'irreparable injury should be presumed from the very fact that the statute has been violated.'" *Id.* (quoting *United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969)) (emphasis added).

Here, there is no civil rights statute at issue. The SEC does not, in any way, allege Barton violated another's civil rights. Instead, the SEC alleges Barton defrauded investors. *Cosmair*, which centered solely on a violation of a civil rights statute, is wholly inapplicable to this case. And its principle, that irreparable injury is presumed when a civil rights statute is violated, cannot be applied here.

Southern Properties Capital, Ltd.'s Brief In Support of Response                                    Page 19 of 25
To SEC's Motion to Appoint Receiver
(455,984)

The SEC misapplies these cases to distract this Court from an obvious truth: the SEC cannot show how its supposed threatened injury outweighs the harm to SPC. SPC has an ownership interest in the projects and invested millions to ensure the construction and development of the SPC Projects. [App. 7-8, 10-12, 52]. SPC efforts were not confined solely to passive funding either. SPC, at minimum, (a) selected and purchased the raw land, (b) assembled and maintained required documents for the land development projects, (c) paid the developer's fee; (d) controlled, funded, and managed the construction, design, and development processes, (e) funded change orders and costs overruns, (f) provided certificates of deposit and cash collateral to obtain Letters of Credit, (g) funded the equity through convertible debt, (h) supervised operations and leasing of properties, and (i) SPC's financial statements and TCI's SEC filings evidence indicia of ownership. [App. 5, 17, 18]. These activities are discussed in summary below to further demonstrate SPC's ownership interests and development of the SPC Projects.

SPC Funded the Raw Land and Construction

SPC scouted, and ultimately funded the purchase of, the raw land for the SPC Projects. More specifically, SPC made the following transactions: (1) $1,770,979.91 to purchase the raw land for Bellwether; (2) $5,605,100.96 to purchase the raw land for Windmill Farms; (3) $1,240,702.49 to purchase the raw land for Opelika; and (4) $797,729.63 to purchase the raw land for Ingleside. [App. 17]. *This totals nearly $10 million paid by SPC*. From there, affiliates of TCI, SPC's owner, held the raw land until Barton took over as the developer. *Id.* SPC, of course, did not pay near $10 million as a gift with no expectation of a return on investment. SPC intended that Barton would transfer ownership to SPC once the properties stabilized and SPC exercised its convertible debt rights.

Southern Properties Capital, Ltd.'s Brief In Support of Response                    Page 20 of 25
To SEC's Motion to Appoint Receiver
(455,984)

After purchasing the land, SPC assembled and maintained required documents for the land development projects. *Id*. SPC then controlled, funded, and managed the construction, design, and development processes. *Id.* This also included funding change orders and cost overruns. *Id.* SPC, once again, did not devote itself to the SPC Projects as a mere favor—SPC sowed the seeds of development to reap the rewards of ownership. App. 611-614.

SPC Funded Escrows and Letters of Credit

SPC also spent millions in funding escrows and letters of credit. For instance, SPC paid the required escrows for Bellwether and Windmill Farms—$996,006.05 for Bellwether and $2,480,383.78 for Windmill Farms, totaling $3,476,389.83. [App. 17-18] TCI, SPC's owner, funded letters of credit for Ingleside and Opelika. [App. 18]. These letters of credit, like the escrows for Bellwether and Windmill Farms, funded operating deficits and working capital for Ingleside and Opelika. *Id.* For Ingleside, TCI signed a letter of credit for $1,250,898.00. *Id.* For Opelika, TCI signed a letter of credit for $1,073,963.00. *Id.* This totals $2,324,861.00. The escrows and the letters of credit, therefore, combine for a total of $5,801,250.83. SPC has, yet again, poured millions of dollars into developing the SPC Projects.

SPC's Financial Statements Reflect Ownership

SPC's financial statements depict an ownership interest in the SPC Projects. For instance, SPC's financial statements show the fair value of the convertible loan portfolio by providing the loan balance and an appraised value for the conversion rights in each note. [App. 19]. An excerpt from SPC's 2021 financial statements is provided below:

Southern Properties Capital, Ltd.'s Brief In Support of Response                Page 21 of 25
To SEC's Motion to Appoint Receiver
(455,984)

| Borrower / Project | Carrying Value | | Interest Rate | Maturity Date |
| | 2021 | 2020 | | |
|---|---|---|---|---|
| Autumn Breeze(1) | $ 10,365 | $ 4,854 | 5.00 % | 7/1/22 |
| Bellwether Ridge(1)(2) | 12,308 | 5,898 | 5.00 % | 11/1/26 |
| Forest Pines(1) | 9,404 | 2,294 | 5.00 % | 11/1/22 |
| Parc at Ingleside(1) | 2,426 | 2,422 | 5.00 % | 11/1/26 |
| Parc at Opelika(1)(3) | 1,363 | — | 10.00 % | 1/13/23 |
| Parc at Windmill Farms(1) | 18,819 | 10,770 | 5.00 % | 11/1/22 |
| Plum Tree(1) | 1,979 | 1,113 | 5.00 % | 4/26/26 |
| RNC Portfolio, Inc.(4) | — | 9,430 | 5.00 % | 9/1/24 |
| Spyglass of Ennis(1)(5) | 9,488 | 4,680 | 5.00 % | 11/1/22 |
| Steeple Crest(1) | 13,355 | 6,389 | 5.00 % | 8/1/26 |
| | $ 79,507 | $ 47,850 | | |

Below this table, SPC explains its ownership interest, writing, "[t]he note is convertible, at our option, into a 100% ownership interest in the underlying development property and is collateralized by the underlying development property." [App. 19, 20]. SPC adds, "[t]he convertible loans are stated at fair value, which has been determined based on valuations performed by independent external valuation experts who hold recognized and relevant professional qualifications and who have experience in the category of the assets being valued." [App. 20]. SPC's 2022 interim financial statements echo this trend, explaining that SPC "accounts for its investment in convertible notes at fair value that is based on third-party appraisals." *Id.* These statements, and the table above, make plain that SPC's financial statements reflect an ownership interest in the SPC Projects.

First, SPC owned convertible debt, which could be converted "into a 100% ownership interest" in the SPC Projects. This differs from a typical loan because SPC could, "at its option," obtain 100% ownership interest in the SPC Projects. SPC, of course, did just that for Bellwether, Windmill Farms and Ingleside. SPC similarly retains the same option for Opelika. *Id.*

Second, SPC had the SPC Projects valued by "independent external valuation experts" or "third-party appraisals." If the SPC Projects were mere loans, SPC would not have taken the pains to appraise the properties to determine their carrying values. This is consistent with equity

Southern Properties Capital, Ltd.'s Brief In Support of Response                    Page 22 of 25
To SEC's Motion to Appoint Receiver
(455,984)

ownership because SPC expended resources to ascertain the properties' values, instead of simply waiting for a return on its loan. *Id.*

TCI's SEC Filings Show SPC Projects are Not Mere Loans

TCI files financial reports under GAAP (Generally Acceptable Accounting Principles) for compliance with its public reporting requirements. App. 21. TCI's 10-K filings, as far back as 2018, evidence that Ingleside and Opelika are not mere loans. App. 21.  In the 2020 10-K and 2021 10-K, TCI describes its interest in the SPC Projects not as a loan, but as a "note . . . convertible, at our option, into a 100% ownership interest." App. 21. The 2018 10-K and 2019 10-K provide that TCI "intends to service and hold for investment the mortgage notes in [TCI's] portfolio." App. 21 "Servic[ing] and hold[ing] for investment" a convertible loan is not consistent with a mere loan; it is consistent with property ownership. App. 21.

Further, in its 10-Ks, TCI consistently included the SPC Projects as "Notes Receivable" or "Mortgage Loans." App. 21. In the 10-Ks, there is a table listing all notes receivable TCI owns. TCI had convertible debt into 100% ownership interest for all entities included in the table. The SPC Projects were included in each table. An example of such a table is included below.

**9. Notes Receivable**

The following table summarizes our notes receivables at December 31, 2021 and 2020:

| Borrower / Project | Carrying Value 2021 | Carrying Value 2020 | Interest Rate | Maturity Date |
|---|---|---|---|---|
| ABC Land and Development, Inc. | $ 4,408 | $ 4,408 | 9.50 % | 6/30/2026 |
| ABC Paradise, LLC | 1,210 | 1,210 | 9.50 % | 6/30/2026 |
| Autumn Breeze(1) | 2,486 | 1,867 | 5.00 % | 7/1/2022 |
| Bellwether Ridge(1) | 3,967 | 3,858 | 5.00 % | 11/1/2026 |
| Forest Pines(1) | 6,472 | 2,869 | 5.00 % | 11/1/2026 |
| Lake Wales | 3,000 | 3,000 | 9.50 % | 6/30/2026 |
| Legacy Pleasant Grove | 496 | 496 | 12.00 % | 10/23/2022 |
| McKinney Ranch | 4,554 | 4,554 | 6.00 % | 9/15/2022 |
| One Realco Land Holding, Inc. | 1,728 | 1,728 | 9.50 % | 6/30/2026 |
| Parc at Ingleside(1) | 3,700 | 2,523 | 5.00 % | 11/1/2026 |
| Parc at Opelika(1) | 2,305 | — | 10.00 % | 1/13/2023 |
| Parc at Windmill Farms(1) | 7,830 | 7,803 | 5.00 % | 11/1/2022 |

Under the table, the 2020 10-K and the 2021 10-K state, "[t]he note is convertible, at our option, into a 100% ownership interest in the underlying development property, and is collateralized by the underlying development property." App. 22.

Southern Properties Capital, Ltd.'s Brief In Support of Response                    Page 23 of 25
To SEC's Motion to Appoint Receiver
(455,984)

TCI did not recognize interest income under SPC's convertible loans because of the view that TCI, through SPC, would exercise its right of conversion for ownership. App. 22. TCI would not be expected to recognize the interest income because when it chose to exercise its conversion rights, as it planned, such interest income would have been forgiven, per the Convertible Loans. App. 22. This is shown in TCI's 10-Ks. In its 10-Ks, TCI accrued, but fully reserved, interest income recognition on the Convertible Loans. App. 22.  Any uncollected interest income is forgiven in the event of conversion. App. 22. TCI had the ability and the intent to convert the SPC Convertible Loans into 100% equity interest. TCI, through SPC, exercised its rights. App. 22. Any interest was forgiven once TCI exercised its convertible rights. Since TCI planned to exercise its right, it did not recognize interest income on the convertible loans. App. 22.

 SPC has invested millions in the SPC Projects. The SEC, conversely, cannot measure its supposed harm with SPC's harm. This Court, therefore, should deny the SEC's Motion.

## C.  SPC cannot be adequately compensated with monetary damages

It is no secret: the Receiver intends to sell the SPC Projects. Granting the SEC's Motion is simply the first step toward that inevitable reality. The Receiver and the SEC persist in their shared stance despite SPC's demonstrated ownership interest in the SPC Projects, as shown above.

The Receiver's stance is in defiance of even the most basic principles of real property law. That is, "[i]t is elementary in the law that real property . . . is unique." *San Antonio Sav. Ass'n v. C.I.R.*, 887 F.2d 577, 591 (5th Cir. 1989). SPC has expended tremendous effort and resources toward the Properties, each inherently unique. The Receiver, however, seeks to erase these efforts, causing irreparable harm to SPC. *See Opulent Life Church v. City of Holly Springs,*

Southern Properties Capital, Ltd.'s Brief In Support of Response                                      Page 24 of 25
To SEC's Motion to Appoint Receiver
(455,984)

*Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) (finding that depriving one of an interest in real property constitutes irreparable harm).

SPC would face unquantifiable harm if this Court granted the SEC's Motion—the first step toward selling the SPC Projects. Each of the SPC Projects are inherently unique because the valuation of real property is nearly impossible to pin down. *In re Swiftco, Inc.*, No. 85-07083-H1-5, 1988 WL 143714, at *12 (Bankr. S.D. Tex. Oct. 5, 1988) ("[T]he value of land is difficult (some say 'impossible') to fix."). There are many factors that are involved in the valuation of real estate, such as size and location. *Matter of Bumstead Fam. Irrevocable Tr.*, No. 13-20-00350-CV, 2022 WL 710159, at *25 (Tex. App.—Corpus Christi Mar. 10, 2022), reh'g denied (July 5, 2022), review denied (Jan. 27, 2023). This further complicates valuation. Real estate situated in a prime location may appreciate it value, meaning its true value cannot be captured in a fixed moment in time. *Id.*

There is no optimal method for forecasting the potential value of the SPC Projects. SPC's individual appraisals shed some light, but this is insufficient under Texas law. In fact, Texas courts are clear that there is no way to make one whole after the loss of their real property. *Eastland v. Camp Mystic, Inc.*, No. 04-08-00675-CV, 2009 WL 260523, at *4 (Tex. App.—San Antonio Feb. 4, 2009) ("The 'replacement cost' cannot be assigned to real property since real property is individually unique and is not replaceable."). Unlike personal property, real estate is considered an investment opportunity. *Bumstead*, 2022 WL 710159, at *25. SPC treated the SPC Projects accordingly. If the SEC's Motion is granted, then the Receiver is all but certain to sell the SPC Projects. SPC would not have any financial method of recovery.

## V.     CONCLUSION

For the foregoing reasons, this Court should deny the SEC's Motion.

Southern Properties Capital, Ltd.'s Brief In Support of Response                                      Page 25 of 25
To SEC's Motion to Appoint Receiver
(455,984)

**RESPECTFULLY SUBMITTED BY:**

*/s/ Brian K. Norman*
**C. GREGORY SHAMOUN**
Co-Lead Counsel
State Bar No. 18089650
g@snlegal.com
**BRIAN K. NORMAN**
Co-Lead Counsel
State Bar No. 00797161
bkn@snlegal.com
**SHAMOUN & NORMAN, LLP**
1800 Valley View Lane, Suite 200
Farmers Branch, Texas 75234
Telephone (214) 987-1745
Facsimile: (214) 521-9033

**ATTORNEYS FOR SOUTHERN
PROPERTIES CAPITAL, LTD**

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2023, I filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record, who have consented in writing to accept this Notice as service of the document by electronic means.

*/s/ J. Blair Norris*
**J. BLAIR NORRIS**

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 2, 2023, I corresponded with Keefe Bernstein, counsel for the SEC, regarding the merits of this Motion. Mr. Berstein indicated that the SEC opposes this Motion.

*/s/ J. Blair Norris*
**J. BLAIR NORRIS**

Southern Properties Capital, Ltd.'s Brief In Support of Response
To SEC's Motion to Appoint Receiver
(455,984)