**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION**, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | **CASE NO. 3:22-cv-2118-X** |
| **TIMOTHY BARTON ET AL.,** | § § § | |
| *Defendants.* | § § | |

**APPENDIX VOLUME IV**

**APP. 549-563**

**APPENDIX TO SOUTHERN PROPERTIES CAPITAL, LTD.'S BRIEF IN SUPPORT OF RESPONSE TO SEC'S MOTION FOR APPOINTMENT OF A RECEIVER, FOR A PRELIMINARY INJUNCTION AND ANCILLARY RELIEF, AND TO LIFT STAY FOR LIMITED PURPOSE, AND BRIEF IN SUPPORT**

| Ex. No. | Title | App. No. |
|---|---|---|
| Ex. A-50 | Ingleside Letter of Credit Application | App. 549-563 |

# EXHIBIT A-50



ATTENTION: Bank Leumi USA - LC Department
(PLEASE TYPE OR PRINT)

**IRREVOCABLE STANDBY LETTER OF CREDIT APPLICATION AND SECURITY AGREEMENT**

GENTLEMEN:                              DATE 11/12/2019              L/C NO.
PLEASE ISSUE AN IRREVOCABLE LETTER OF CREDIT AS SET FORTH BELOW AND FORWARD THE SAME TO
YOUR CORRESPONDENT OR THE BENEFICIARY (AT YOUR OPTION) BY:

[✓] AIRMAIL                    [ ] AIRMAIL WITH BRIEF TELEX/CABLE          [ ] FULL TELEX/CABLE OR OTHER
    MESSENGER/COURIER              OR OTHER TELETRANSMISSION METHOD            TELETRANSMISSION METHOD

APPLICANT NAME: Parc at Ingleside on behalf of D4IN, LLC
ADDRESS: 1603 LBJ Frwy
         Suite 800
         Dallas, TX 75234

BENEFICIARY NAME: Greystone Funding Company LLC
ADDRESS: 419 Belle Air Lane
         Warranton, VA 20186

ADVISING BANK NAME: _____          AMOUNT: $1,250,898
ADDRESS: _____
         _____          EXPIRY
                                SWIFT CODE: _____   DATE: 11/1/2021

AVAILABLE BY PRESENTATION OF THE FOLLOWING DOCUMENTS, EACH OF WHICH MUST BEAR YOUR L/C NO. (Check
one or more of the following, As appropriate, and completed as directed)

[✓] DRAFT(S) AT SIGHT TO BE DRAWN ON YOU (OR, AT YOUR OPTION, A CORRESPONDENT BANK SELECTED BY YOU),
    WHEN ACCOMPANIED BY THE FOLLOWING DOCUMENTS:

[ ] A WRITTEN STATEMENT PURPORTEDLY SIGNED BY THE BENEFICIARY, READING AS FOLLOWS: (Please indicate
    below the exact wording to appear on the statement to be presented with the draft(s))

_____

_____

_____

[ ] OTHER DOCUMENTS: (Please specify below, if any)

_____

_____

(Check one or more of the following, as applicable)

PARTIAL DRAWINGS           [ ] ALLOWED      [ ] NOT ALLOWED
[✓] TERMS AND CONDITIONS OF THE LETTER OF CREDIT TO BE IN THE FORM
    ATTACHED HERETO, WHICH FORMS AN INTEGRAL PART OF THIS
    L/C APPLICATION

[ ] ADDITIONAL CONDITIONS OR INSTRUCTIONS, IF ANY:

_____

_____

UNLESS OTHERWISE EXPRESSLY STATED HEREIN, THIS CREDIT AND ANY AMENDMENTS THERETO SHALL BE
SUBJECT TO: (PLEASE CHECK ONE OF THE BOXES BELOW):

[ ] THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (2007 REVISION) PUBLICATION
    NO. 600 OF THE INTERNATIONAL CHAMBER OF COMMERCE (THE "UCP") OR SUCH OTHER VERSION OF
    THE "UCP" AS MAY BE IN EFFECT FROM TIME TO TIME, IN SO FAR AS THE SAME SHALL BE
    APPLICABLE.

[✓] INTERNATIONAL STANDBY PRACTICES (THE "ISP98") PUBLICATION NO. 590 OF THE INTERNATIONAL
    CHAMBER OF COMMERCE OR SUCH OTHER VERSION OF THE ISP98 AS MAY BE IN EFFECT FROM TIME TO
    TIME, IN SO FAR AS THE SAME SHALL BE APPLICABLE.

PLEASE DATE AND OFFICIALLY SIGN THE AGREEMENT ON THE REVERSE SIDE OF THIS APPLICATION IN
CONSIDERATION OF YOUR ISSUING THE REQUEST OF THE UNDERSIGNED YOUR IRREVOCABLE STANDY LETTER
OF CREDIT (HEREIN CALLED THE "CREDIT"), SUBSTANTIALLY IN ACCORDANCE WITH THE FOREGOING
APPLICATION, THE UNDERSIGNED AGREES AS FOLLOWS:

Irrevocable Standby Letter of Credit Application and Security Agreement

1.   As to drafts payable in United Sates currency drawn or purporting to be drawn under the Credit, the undersigned
agrees (a) in case of each sight draft, to pay to you at your office at 350 Madison Avenue, 3rd Floor, New York, New
York 10017 (hereinafter called the "Office") in United States currency the amount payable thereon immediately upon
receipt of notice of payment there of, with interest from the time of such payment at the rate of four (4%) percent above
the rate of interest designated by you, and in effect from time to time, as your "Reference Rate", adjusted
when said Reference Rate changes, or at such other rate as is agreed upon in writing between us (but if such interest rate
shall not be lawful with respect to the undersigned, then such rate shall be the highest lawful rate permitted to be charged
by you on a loan to the undersigned), or, if so demanded by you, to so pay to you the amount of such draft in
advance at a time to be determined by you; and (b) in case of each time draft, to pay to you the amount thereof at
your Office, in United States currency not later than two (2) business days prior to its maturity, or, if the draft is

payable elsewhere, then to make such payment at your Office in sufficient time to reach the place of payment in the usual course of the regular mails, not later than two (2) business days prior to maturity. Interest payable hereunder shall be computed on the basis of the actual number of days in a 360-day year. The charging of interest on the basis of a 360-day year results in the payment of more interest than would be required if interest were charged on the basis of the actual number of days in the year. The undersigned acknowledges that the Reference Rate may not necessarily represent the lowest rate charged by you to customers. You are hereby authorized, but not required, to charge the undersigned's account(s) maintained with you for any or all amounts due to you hereunder. For purposes of this Agreement, the term "draft" shall mean any sight or time draft or other document or written statement required for a drawing under the Credit.

2.  As to drafts payable in currency other than United States currency drawn or purporting to be drawn under the Credit, the undersigned agrees (a) in case of each sight draft, to pay to you immediately upon receipt of notice of payment thereof at your office in United States currency the equivalent of the amount payable on each draft at your then selling rate for cable transfers to the place where, and in the currency in which, such draft is payable, with interest at the legal rate or at such other rate as is agreed upon in writing from the time of such payment, or if so demanded by you to pay the same to you in advance at any other time to be determined by you, and (b) in case of each time draft to furnish you at said Office, sufficiently in advance to reach the place of payment in the usual course of the regular mails not later than two (2) business days prior to maturity, with first class banker's demand bills of exchange to be approved by you for the amount and in the currency of such draft and bearing the unqualified endorsement of the undersigned, or if you so request, to pay to you on demand at said office in United States currency the equivalent of the amount of such draft at your then selling rate for demand drafts on, or cable transfers to, the place where, and in the currency in which, such draft is payable. If at the time payment is to be made by the undersigned as aforesaid, there exists no rate of exchange generally current in New York City for cable transfers or demand drafts as hereinbefore provided, the undersigned agrees to pay to you on demand in United States currency the actual cost to you of settlement of your obligation to the payee of the draft or to any holder thereof as the case may be and however and whenever such settlement shall be made by you, including interest on the dollar amount payable by the undersigned from the date of payment of such draft to the date of the undersigned's payment to you. The undersigned shall pay you on demand in United States currency, such amounts as you may be required to expend in order to comply with all governmental exchange, currency control or other laws, orders and regulations of any country now or hereafter applicable to the purchase or sale of and/or dealings in, foreign currency.

3.  The undersigned shall pay to you such fees as are set forth on the Addendum attached hereto.  The undersigned shall pay to you on demand from time to time any additional amounts necessary (in your sole determination) to indemnify you against any increase in your direct or indirect costs of issuing or maintaining, or any reduction in the net amount to be received by you with respect to, the Credit, whether due to the imposition or modification of any reserve, special deposit or similar requirement (including any assessment for insurance of deposits or of letters of credit), any requirement to pay, or withhold or deduct from any amount payable, any taxes, fees or similar charges, or for any other reason.

4.  Except as expressly stated to the contrary herein, the undersigned agrees: (a) that partial payments may be made under the Credit and that you may honor the relative drafts without inquiry; (b) that notwithstanding the provisions of Article 45 of the UCP or any successor provision thereof, if the Credit provides for drawings available in installments within designated periods and there is a failure to draw under the Credit in any designated period, the Credit will not cease to be available for any subsequent installment, and subsequent installments made in their respective designated periods may be drawn against the Credit and drafts may be accepted and paid with respect to such installments; (c) that you may accept or pay, as complying with the terms of the Credit, any drafts or other documents otherwise in order which may be signed or issued by an administrator, executor, trustee in bankruptcy, debtor in possession, assignee for benefit of creditors, liquidator, receiver or other legal representative of the party who is authorized, under the Credit, to draw or issue any drafts or other documents without being required to inquire as to his authority or appointment; (d) that without limiting any other provisions of this agreement, you and any of your correspondents may accept documents of any character which comply with the provisions, definitions, interpretations and practices contained in "The Uniform Customs and Practice for Documentary Credits". The International Chamber of Commerce Publication as amended from time to time, or which comply with the laws or regulations in force in customs and usages of the place of negotiation; (e) that in the event of any extension of the maturity or time for negotiation or presentation of drafts, acceptances or documents or any other modification of the terms or provisions of the Credit at the request or with the consent of any of the undersigned with or without notification to the others or in the event of any increase in the amount of the Credit at the request of the undersigned, this Agreement shall be binding upon the undersigned with regard to (I) the Credit so increased or otherwise modified, (II) drafts, documents and property covered thereby, and (III) any action taken by you or any of your correspondents in accordance with such extension, increase or other modification; and (f) that you and/or any of your correspondents may accept or pay any draft dated on or before the expiration of any time limit expressed in the Credit, regardless of when drawn and when or whether negotiated, provided the other required documents are dated prior to the expiration date of the Credit.

5.  The undersigned assumes all risks of the acts or omissions of the users of the Credit and all risks of misuse of the Credit. Neither you nor any of your correspondents, agents, representatives or designees shall be liable or responsible in any manner including, without limitation, for any damages, losses or other consequences resulting by reason of, and the undersigned's obligations to you shall not be affected by, (a) the form, validity, accuracy, sufficiency, genuineness or legal effect of any draft, claim, document or required statement, or any endorsement thereon, even if such draft, claim, document, statement or endorsement should in fact prove to be in any or all respects invalid, insufficient, inaccurate, fraudulent or forged (and notwithstanding that the undersigned shall have notified you thereof); (b) the validity or sufficiency of any instrument transferring or assigning or purporting to transfer or assign the Credit or the rights or benefits thereunder or the proceeds thereof, in whole or part, which may prove to be invalid or ineffective for any reason; (c) any loss or delay in the transmission or otherwise of any such draft, claim, document, statement or endorsement, or any proceeds thereof; (d) any act or omission of you or any of your correspondents or of your or their respective agents or employees, other than any such act or omission arising

2

from your or their gross negligence or willful misconduct; (e) any act or omission of the beneficiary of the Credit and the transferee of the Credit, if transferable; (f) the solvency or responsibility of any party issuing any documents in connection with the property; (g) delay in arrival or failure to arrive of either the property or any of the documents relating thereto; (h) delay in giving, or failure to give any notice; (i) any breach of contract between the undersigned and any other party; (j) failure of any draft to bear any reference or adequate reference to the Credit or failure of documents to accompany any draft at negotiation or failure of any person to note the amount of any draft on the reverse side of the Credit or to surrender or take up the Credit or to send forward documents apart from drafts as required by the terms of the Credit, each of which provisions, if contained in the Credit itself, it is agreed may be waived by you; (k) errors, omissions, interruptions or delays in transmission or delivery of any message by mail, cable, telegram, wireless, telex or otherwise, whether or not they be in cipher; (l) errors in translation or errors in interpretation of technical term; (m) any act, error, neglect or default, omission, insolvency or failure in business of any correspondent or for any consequences arising from causes beyond your control; or (n) any payment against presentation of any draft, claim, document, required statement or endorsement thereon that does not strictly comply with the terms of the Credit, provided that such draft, claim, document, required statement or endorsement substantially complies with the terms of the Credit. You shall have sole discretion to decide whether to pay against any draft, claim, document, required statement or endorsement thereon that does not strictly comply, but substantially complies, with the terms of the Credit, provided, however, that the beneficiary of the Credit may not require you to pay against such draft, claim, document, required statement or endorsement thereon that does not strictly comply with the terms of the Credit. In case of any variation between the undersigned's instructions and the requirements of the Credit or between any draft, claim, document, required statement or endorsement thereon accepted by you or your correspondents and the requirements of the Credit for which you are otherwise responsible hereunder, the undersigned shall conclusively be deemed to have waived any right to object to such variation unless, upon the undersigned's receipt of a copy of the Credit or of any such draft, claim, document, required statement or endorsement or notice of such variation, the undersigned immediately delivers to you a written notice of objection specifying each variation to which the undersigned objects and such notice is actually received by you and such receipts acknowledged by the signature of one of your officers. No legal proceeding or action shall be brought by the undersigned against you arising from any such variation unless (i) the undersigned shall have given you written notice of objection, as provided in the preceding sentence, and (ii) such legal proceeding or action shall be commenced in a court of competent jurisdiction sitting in the State and City of New York, within six months after the date when such copy of the Credit or draft, claim, document, required statement or endorsement thereon were delivered or mailed to the undersigned. In furtherance and extension (and not in limitation) of the specific provisions hereinbefore set forth, the undersigned agrees that any action taken or omitted by you or any of your correspondents under or in connection with the Credit or the relative drafts or documents if done in good faith, shall be binding on the undersigned and shall not put you or your correspondents under any resulting liability to the undersigned and the undersigned shall indemnify and hold you and your correspondents, agents and representatives harmless from any claim, loss or liability arising from or in connection with the Credit or the related drafts or documents.

6.  In case the undersigned consents to any overdrafts under any Credit or authorizes payment or acceptance of drafts drawn thereunder with irregular documents attached thereto, or authorizes or consents to any departure from, or modification of the terms of this agreement or the Credit hereunder, this agreement shall be fully binding upon the undersigned in respect thereto and notwithstanding such overdrafts, irregularities or variances, this agreement and the documents shall be, subsist, and remain as though all matters had been done in strict compliance with this agreement and with the Credit. You and your correspondents shall not be liable for any failure by you or anyone else to pay or accept any draft or acceptance under this Credit or for any loss or damage resulting from any censorship, law, control or restriction rightfully or wrongfully exercised by any de facto or de jure domestic or foreign government or agency thereof, declared or undeclared war, or from any other cause, of whatsoever nature, beyond your control or the control of your correspondents, agents or representatives, and the undersigned agrees to indemnify and hold you harmless from any claim, loss, liability or expense arising by reason thereof.

7.  The word "Obligations" as used in this agreement shall mean any and every indebtedness, obligation and liability of the undersigned to you and your claims of every nature and description against the undersigned, whether or not represented by negotiable instruments or other writings, whether arising under this agreement, the Credit or by reason of any other agreement or transaction, whether now existing or hereafter incurred, originally contracted with you and/or with another or others and now or hereafter owing to or acquired in any manner by you, whether contracted by the undersigned alone or jointly or severally with another or others, direct or indirect, absolute or contingent, secured or not secured, matured or not matured.

8.  In order to secure the prompt and unconditional payment of the Obligations, the undersigned hereby grants you a security interest in any and all property of the undersigned in your actual or constructive possession or in transit to you or your correspondents, agents or representatives from or for the undersigned and the proceeds thereof, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into your possession in any other manner for any other reason, and the undersigned agrees to pledge, transfer and deposit with you and grant to you a security interest in such other property as you shall reasonably request to secure payment of the Obligations and to make such payments as you request on account of the Obligations. You are also hereby given a continuing lien and/or right of set-off for the amount of the Obligations, upon or with respect to any and all deposits, general or special, and credits of the undersigned with, and any and all claims of the undersigned against you at any time existing, and you are hereby authorized at any time or times, without prior notice, to apply such deposits or credits, or any part thereof, to payment of the Obligations in such amounts as you may select, although contingent or unmatured, and whether the Collateral is deemed adequate or not. All of the foregoing, together with any property in which you may now or hereafter be granted a security interest, or which may be deposited with you or your agents by the undersigned to secure the Obligations, is herein collectively called "Collateral", and you are hereby authorized to deal therewith in the same manner as if you had sole title thereto. If the undersigned, as registered holder of Collateral, shall become entitled to receive or does receive any stock certificate, option or right, whether as an addition to, in substitution of, or in exchange for, such Collateral, or otherwise, the undersigned agrees to accept same as your agent and to hold same in trust for you, to forthwith deliver the same to you in the exact form received, with the undersigned's endorsement when necessary, to be held by you as Collateral

3

9. You may, but shall not be obligated to, insure all or any part of the Collateral held by you hereunder against all risks of any kind and the premium thereon shall be paid to you by the undersigned within five days after the demand for the same and you shall have the right to debit the amount of such premium to any balances of the undersigned without notice. If the undersigned fails to pay the premium upon any policy of insurance pledged hereunder or upon any policy of insurance covering any property or Collateral within five days of the due date (without benefit of the grace period), you may, but shall not be obligated to, pay the same without notice to the undersigned and said premium shall be repaid to, or may be debited by you, as above provided. The undersigned agrees to reimburse you upon demand in the event you or any of your correspondents, agents or representatives pay for or incur any expense or liability in connection with the Credit or any draft accepted by you pursuant to this agreement or in relation to any of the matters set forth or referred to herein, including, but not limited to all correspondents' charges and expenses and charges for or incidental to the care, the safekeeping or otherwise of any of the Collateral pursuant to, or in connection with the Credit.

10. The undersigned will at any and all times at your request, sign financing statements, security agreements or other documents with respect to the Collateral as you may reasonably request. The right is expressly granted to you, at your discretion, to file one or more financing statements without the signature of the undersigned under the Uniform Commercial Code naming the undersigned as debtor and you as secured party and indicating therein the types or describing the items of Collateral herein referred to. The undersigned hereby agrees to pay on demand, and authorizes you to charge its account with the cost of any and all filing fees and costs which you deem necessary to incur to protect your interest in the Collateral.

11. The undersigned consents that, without the necessity for any reservation of rights against the undersigned and without notice to or further assent by the undersigned, the liability of any party for or upon Obligations or Collateral may from time to time, in whole or in part, be renewed, extended, modified, prematured, compromised, settled for cash, credit or otherwise and upon any terms or conditions you may deem advisable and that you may discharge or release any party from all such liabilities and that any collateral security for any of the Obligations may from time to time, in whole or in part, be exchanged, sold or surrendered by you all without in any way affecting or releasing the liability of the undersigned upon the Obligations. You shall not be liable for any failure to collect or demand payment of or protest or give any notice of non-payment of any of the Collateral or for any delay in so doing, nor shall you be under any obligation to take any action whatsoever with respect to the Collateral or any part thereof. You shall use reasonable care in the custody and preservation of Collateral in your possession but need not take any steps to preserve rights against prior parties or keep the Collateral identifiable. You shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in your possession if you take such action as the undersigned shall reasonably request in writing but in no event shall an omission to do any act which the undersigned fails to request in writing be deemed a failure to exercise such reasonable care and no omission to comply with any request of the undersigned shall be deemed a failure to exercise such reasonable care. Any right of set-off exercised by you shall be deemed to have been exercised immediately upon the occurrence of any event referred to in Paragraph 12 hereof, even though such set-off is made or entered on your books subsequent thereto. You shall have no obligation to comply with any recording re-recording, filing, re-filing or other legal requirement necessary to establish or maintain the validity, priority or enforceability of, or your rights in and to, Collateral, or any part thereof. You may exercise any right of the undersigned with respect to any Collateral. In any statutory or non-statutory proceeding, affecting the undersigned or Collateral, you or your nominee may, whether or not a default exists and regardless of the amount of Obligations, file a proof of claim for the full amount of any Collateral and vote such claim for the full amount thereof: (a) for or against any proposal or resolution; (b) for a Trustee or Trustees or for a Committee of Creditors; (c) for the acceptance or rejection of any proposed agreement, plan of reorganization, wage earners' plan, composition or extension, and you or your nominee may receive any payment or distribution and give acquittance therefor and may exchange or release Collateral. Any Collateral held by you hereunder, may without notice and whether or not a default exists, be registered and held in your or your nominee's name. You are hereby granted a power of attorney to endorse the undersigned's name on any and all notes, checks, drafts, bills of exchange, money orders or commercial paper included in the Collateral or representing the proceeds thereof.

12. All monies due or owing to you from the undersigned under this agreement or any other Obligations shall, at your option, become immediately due and payable, without notice or demand and notwithstanding any time or credit otherwise allowed or given to you under this or any other agreement or instrument and the undersigned and all guarantors shall be deemed in default hereunder upon the occurrence of any one of the following events with respect to any one of the undersigned or any guarantor or endorser of any Obligations of any of the undersigned to you: (a) failure to pay any sum upon the due date thereof; (b) if any statement, representation or warranty made in any application, financial statement or other agreement made with, or document delivered to you, shall be false or untrue in any material respect; (c) default in the performance of any condition or provision of this agreement or any other agreement with, or any Obligations to you; (d) death, and if a partnership, death of a partner, (e) insolvency, howsoever evidenced; (f) the making of a general assignment for the benefit of creditors; (g) the filing of any petition or the commencement of any proceedings by or against any of the undersigned or any guarantor of any Obligations, for any relief under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, compositions or extensions; (h) the appointment of a temporary or permanent receiver or trustee or similar legal representative of, or the issuance or making of a writ or order of attachment, against any property or assets; (i) entry of a judgment; (j) the commencement of any proceeding for enforcement of a judgment under Article 52 of the New York Civil Practice Law and Rules or under provisions of any other law; (k) the adoption of any resolution for dissolution or liquidation or the taking of any action for the purpose of such dissolution or liquidation; (l) the suspension of usual business; (m) the failure to deposit any additional collateral security with you upon demand; (n) the failure to pay any premium on any insurance policy pledged, or any insurance policy covering any property pledged with you, or in which you are granted a security interest, within five days after such premium becomes due without benefit of any period of grace; (o) failure forthwith upon demand to furnish any financial information or to permit inspection of books, documents or records of account; (p) failure to pay any tax when due; (q) if at any time in your sole judgment the financial responsibility

4

of any of the undersigned, or of any guarantor of any Obligations of the undersigned shall become impaired or unsatisfactory to you.

13. Upon the happening of any of the events set forth in Paragraph 12, and at any time thereafter, you shall have, in addition to all other rights and remedies, the remedies of a secured party under the New York Uniform Commercial Code. The undersigned shall, upon your request, assemble the Collateral and make it available to you at a place to be designated by you which is reasonably convenient to you and the undersigned. You will give the undersigned notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is to be made by sending notice, as provided below, at least five days before the time of the sale or disposition, which provisions for notice you and the undersigned agree are reasonable. No such notice need be given by you with respect to Collateral which is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market. You may apply the net proceeds of any sale, lease or other disposition of Collateral after deducting all costs and expenses of every kind incurred therein or incidental to the retaking, holding, preparing for sale, selling, leasing or the like of said Collateral, or in any way relating to the rights of the undersigned thereunder, including attorney's fees hereinafter provided for and legal expenses, to the payment, in whole or in part, in such order as you may elect, of one or more of said Obligations, whether due or not due, absolute or contingent, and if contingent you may retain sufficient of such proceeds to cover the largest aggregate sum which may become due or owing thereunder to you with prospective interest, costs, expenses and counsel fees and you shall not be charged with any interest with respect thereto, and only after so applying such net proceeds and after the payment by you of any other amounts required by law need you account for the surplus, if any. The undersigned shall remain liable to you for the payment of any deficiency, with legal interest, and does hereby waive any and all rights of redemption with relation to the Collateral, to the extent permitted by law.

14. Any notice to you shall be deemed effective only if sent to and received at your office, division or department conducting the transaction or transactions hereunder. Any notice to or demand on and of the undersigned shall be binding on the undersigned and shall be deemed effective if not first otherwise made or given when forwarded by mail, telegraph, cable, radio, telephone or otherwise to the last address or telephone number of any of the undersigned appearing on your books with the same effect as if the same were actually delivered to and received by the undersigned in person. You shall not by any act, delay, omission or otherwise be deemed to have waived any of your rights or remedies hereunder and no waiver whatsoever shall be valid unless in writing, signed by one of your duly authorized officers, and then only to the extent therein set forth. A waiver by you of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which you would otherwise have on any future occasion. No term or provision of this agreement can be changed orally and no executory agreement shall be effective to change or modify or to discharge in whole or in part this agreement unless such executory agreement is in writing and signed by one of your duly authorized officers. All your rights and remedies hereunder shall be cumulative and may be exercised singly or concurrently, and your rights specified herein are in addition to those otherwise created. No delay on you part in exercising any power or right hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right, nor shall you be liable for exercising or failing to exercise any such power or right. The undersigned hereby waives demand, presentment, protest, notice of protest and notice of dishonor of any and all drafts, notes, bills of exchange, checks and other instruments deposited or pledged as Collateral hereunder whether upon inception, maturity, acceleration of maturity or due date, or at any other time, and any and all other notices and demands whatsoever, whether or not relating to such instruments.

15. In the event that you or any of your correspondents, at the request of the undersigned, extend, renew or refinance any of the obligations of the undersigned to you, arising by means of (a) bankers' acceptances created by the acceptance of drafts drawn by the undersigned on you, arising under Paragraphs 1 and 2 hereof; (b) drafts drawn by the beneficiary of the Credit, accepted by you or any of your correspondents; (c) notes made by the undersigned; or (d) otherwise, or in the event that you further extend, renew or refinance, from time to time, any such bankers' acceptances, draft or note, then, and in consideration thereof, the undersigned agrees to pay to you the amount of each bankers acceptance or draft in the manner provided in Paragraphs 1 and 2 hereof for the payment of time drafts drawn under the Credit, or, if a note is involved, then in the manner provided in the note. The undersigned further agrees that with respect to any such extension, renewal or refinancing, all of the terms, conditions, agreements and obligations contained in this agreement shall apply thereto and that you shall have all the rights and remedies set forth in this agreement as well as those set forth in any other document signed by or on behalf of the undersigned. Should the beneficiary under the Credit, upon receipt of advice by cable or otherwise of the issuance of the Credit, but prior to its actual receipt, negotiate drafts by virtue of such advice, such negotiation shall be considered a proper one and shall be included under the terms and subject to all conditions hereof and in addition thereto the undersigned assumes all the risk of the misuse of the Credit

16. You may, but shall not be obligated to, contest, pay and/or discharge all liens, encumbrances, taxes or assessments on, or claims, actions or demands against, any of the Collateral deposited hereunder without notice to, or the consent of, the undersigned and you may, but shall not be obligated to, take all actions and proceedings in your own name or in the name of the undersigned or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments and all sums advanced or paid by you and all costs, attorneys' fees and expenses relating thereto shall be paid by, and chargeable to, the undersigned.

17. The word "property" as used in this agreement, includes goods, merchandise, instruments, documents, securities, funds, choses in action and any and all other forms of property, whether real, personal or mixed, and any right or interest therein and the proceeds thereof. Property in your possession shall include property in possession of any person holding same for you in any manner whatsoever.

18. If any of the undersigned is a partnership, the members thereof shall be individually bound and liable hereunder. If this agreement is signed by two or more parties, it shall be the joint and several agreement of such parties.

19. If the Credit issued by you will provide that it will be available by presentation, to you or to any of your correspondents, of the documents described in the application, unaccompanied by drafts, the undersigned agrees

5

App. 554

that all reference herein to drafts, documents relative to drafts, and the presentation, acceptance for payment or payment of drafts shall refer to documents presented for payment without drafts, the presentation and acceptance thereof, and payment upon such presentation, and that the undersigned's obligation and your rights, privileges and remedies hereunder shall be the same as though payments had been made upon presentation of drafts drawn under the Credit accompanied by the said documents.

20. The undersigned will bear and pay all expenses of every kind for the enforcement of any of your rights herein mentioned or of any claim or demand by you against the undersigned and/or guarantors and/or any other person, firm or corporation and of any Collateral held by you, and the undersigned will pay to you upon demand any such expenses incurred by you. If an attorney is used to collect or enforce the Obligations or to enforce, declare or adjudicate any rights or obligations under this agreement, or with respect to the Obligations or Collateral, whether by suit, or any other means whatsoever, attorneys' fees incurred by you shall be payable by the undersigned. The undersigned in any litigation (whether or not arising out of or relating to this agreement or to any Obligations) in which you and any of the undersigned shall be adverse parties, waives trial by jury and the right to interpose any defense based on any statute of limitations or any claim of laches, set-off, or counterclaim of any nature or description. Notwithstanding anything to the contrary contained herein, the undersigned hereby indemnifies and holds you harmless from and against any and all claims, actions (including, without limitation, legal proceedings relating to any court order, injunction or other process or decree restraining or seeking to restrain you from paying any amount under the Credit or relating to any attachment or execution in connection with the Credit, any Obligations or Collateral), losses, judgments, amounts and expenses including, without limitation, attorneys' fees, and court costs, ( such claims, actions, losses, etc., hereinafter called collectively "Liabilities") suffered or incurred by you in connection with or arising out of this agreement, any Obligations or the Collateral and regardless of whether such Liabilities relate to claims or actions brought by the undersigned or any third party, including without limitation liabilities suffered or incurred by you in connection with (a) your exercise of any right or remedy granted to you hereunder, by law or otherwise, (b) any claim and the prosecution or defense thereof arising out of or in any way connected to this agreement, and any Obligations or the Collateral, (c) the collection or enforcement of the Obligations, and (d) any of the events or circumstances referred to in Paragraph 5 hereof. In the event of the undersigned or any guarantor of any of the Obligations acts in any way (including but not limited to seeking an injunction or temporary restraining order) to prevent or delay payment by you of a draft or claim, the undersigned: (i) agrees to provide to you on demand such additional collateral in such amount as you, in your sole discretion, shall deem necessary to secure the payment to you of the Obligations; (ii) agrees to bear and pay all expenses of every kind incurred by you, including attorneys' fees, in connection with such action to prevent or delay payment by you of a draft or claim; (iii) consents to your exclusive determination to pay or compromise any claim or obligation of any nature or description relating to the Credit, including without limitation all costs, attorneys' fees, fines, interest, damages or any other charge, expense or liability; and (iv) agrees to indemnify you and to reimburse you on demand for the amount of such payments or compromises together with interest thereon at the rate and on the terms set forth in Paragraph 1 hereof.

21. The term "you" as used throughout this agreement shall be deemed to include the Bank Leumi USA and all its branches or departments wherever located, and any individuals, partnerships or corporations acting as nominee, for, or in behalf of, the Bank Leumi USA and any subsidiary or entity controlled by the Bank Leumi USA and any other subsidiary or entity which is controlled directly or indirectly by any such subsidiary or entity. The term "undersigned", as used throughout this agreement shall include the individual or individuals, association, partnership, corporation, or other entity named herein as "undersigned", and (a) any successor individual or individuals, associations or partnership, corporation, or other entity to which all or substantially all of the business or assets of said undersigned shall have been transferred, (b) in case of a partnership, any new partnership which shall have been created by reason of the admission of any new partner or partners therein or the dissolution of the existing partnership by death, resignation or other withdrawal of any partner, and (c) in the case of a corporation, any other corporation into or with which said undersigned shall have been merged, consolidated, reorganized or absorbed.

22. This agreement is made in the City of New York and shall be construed in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof. In the event that you bring any action or suit in any court of record of New York State or the Federal Government to enforce any or all of the Liabilities of the undersigned or any of your rights hereunder, service of process may be made upon the undersigned by mailing a copy of the summons to the undersigned at the address set forth below, and the undersigned hereby irrevocably submits to the jurisdiction and venue of any New York State or Federal court located in New York City over any action, suit or proceeding arising out of any dispute between the undersigned and you.

23. If any term, condition or provisions of this agreement or of any other agreement or document executed and/or delivered to you is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provisions of this agreement and all other agreements executed and/or delivered to you and they shall be carried out as if any such invalid or unenforceable term, condition or provision were not embodied herein or therein.

24. You may assign or transfer this agreement and all Collateral and in such event the assignee or transferee thereof shall have the same rights and remedies hereunder as if originally named herein in your place. Upon any such assignment or transfer, you may deliver the Collateral and property held as security or any part thereof to the assignee or transferee, who shall thereupon become vested with all your powers and rights in respect thereof and you shall thereafter be forever relieved and fully discharged from any liability or responsibility with respect to the property transferred, but you shall retain all powers and rights with respect to the property not so transferred. You shall, at all reasonable times and from time to time, be allowed, by or through any of your officers, agents, attorneys or accountants, to examine, inspect and make abstracts from the undersigned's books.

25. Except as otherwise provided herein, the Credit shall be subject to the Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce Publication as amended from time to time.

6

26. The undersigned agrees that: (a) any assistance provided by you in the preparation of the terms of the credit was requested by the undersigned and was based solely upon information provided to you by the undersigned, (b) except for information furnished by the undersigned, you have no knowledge of the transaction for which the credit has been obtained, (c) the undersigned has read and understands all of the terms and provisions of the credit and this Letter of Credit Application, and (d) the terms of the credit are in accord with the undersigned's instructions and represent all the conditions that the undersigned has requested as a prerequisite for you to pay under the credit.

By  Daniel Moos - Chairman & CEO

Address  1603 LBJ Frwy

Suite 800

Dallas, TX  75234

On behalf of:
TRANSCONTINENTAL REALTY INVESTORS, INC.

On behalf of:
PARC AT INGLESIDE, ON BEHALF OF D4IN, LLC

FORM 1221 (R6/11)

7

App. 556



ATTENTION: Bank Leumi USA - LC Department
(PLEASE TYPE OR PRINT)

## IRREVOCABLE STANDBY LETTER OF CREDIT APPLICATION AND SECURITY AGREEMENT

GENTLEMEN:                                          DATE 11/12/2019                    L/C NO.
PLEASE ISSUE AN IRREVOCABLE LETTER OF CREDIT AS SET FORTH BELOW AND FORWARD THE SAME TO
YOUR CORRESPONDENT OR THE BENEFICIARY (AT YOUR OPTION) BY:

☑ AIRMAIL                    ☐ AIRMAIL WITH BRIEF TELEX/CABLE            ☐ FULL TELEX/CABLE OR OTHER
   MESSENGER/COURIER            OR OTHER TELETRANSMISSION METHOD            TELETRANSMISSION METHOD

APPLICANT NAME: Parc at Ingleside on behalf of D4IN, LLC
ADDRESS: 1603 LBJ Frwy
         Suite 800
         Dallas, TX 75234

BENEFICIARY NAME: Greystone Funding Company LLC
ADDRESS: 419 Belle Air Lane
         Warranton, VA 20186

ADVISING BANK NAME:                                              AMOUNT: $1,081,396
ADDRESS:
                                                                 EXPIRY
                                          SWIFT CODE:            DATE: 11/1/2021

AVAILABLE BY PRESENTATION OF THE FOLLOWING DOCUMENTS, EACH OF WHICH MUST BEAR YOUR L/C NO. (Check
one or more of the following. As appropriate, and completed as directed)

☑ DRAFT(S) AT SIGHT TO BE DRAWN ON YOU (OR, AT YOUR OPTION, A CORRESPONDENT BANK SELECTED BY YOU),
   WHEN ACCOMPANIED BY THE FOLLOWING DOCUMENTS:

☐ A WRITTEN STATEMENT PURPORTEDLY SIGNED BY THE BENEFICIARY, READING AS FOLLOWS: (Please indicate
   below the exact wording to appear on the statement to be presented with the draft(s))

☐ OTHER DOCUMENTS: (Please specify below, if any)

(Check one or more of the following, as applicable)

PARTIAL DRAWINGS            ☐ ALLOWED        ☐ NOT ALLOWED
☑ TERMS AND CONDITIONS OF THE LETTER OF CREDIT TO BE IN THE FORM
   ATTACHED HERETO, WHICH FORMS AN INTEGRAL PART OF THIS
   L/C APPLICATION

☐ ADDITIONAL CONDITIONS OR INSTRUCTIONS, IF ANY:

UNLESS OTHERWISE EXPRESSLY STATED HEREIN, THIS CREDIT AND ANY AMENDMENTS THERETO SHALL BE
SUBJECT TO: (PLEASE CHECK ONE OF THE BOXES BELOW):

☐ THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (2007 REVISION) PUBLICATION
   NO. 600 OF THE INTERNATIONAL CHAMBER OF COMMERCE (THE "UCP") OR SUCH OTHER VERSION OF
   THE "UCP" AS MAY BE IN EFFECT FROM TIME TO TIME, IN SO FAR AS THE SAME SHALL BE
   APPLICABLE.

☑ INTERNATIONAL STANDBY PRACTICES (THE "ISP98") PUBLICATION NO. 590 OF THE INTERNATIONAL
   CHAMBER OF COMMERCE OR SUCH OTHER VERSION OF THE ISP98 AS MAY BE IN EFFECT FROM TIME TO
   TIME, IN SO FAR AS THE SAME SHALL BE APPLICABLE.

PLEASE DATE AND OFFICIALLY SIGN THE AGREEMENT ON THE REVERSE SIDE OF THIS APPLICATION IN
CONSIDERATION OF YOUR ISSUING THE REQUEST OF THE UNDERSIGNED YOUR IRREVOCABLE STANDY LETTER
OF CREDIT (HEREIN CALLED THE "CREDIT"), SUBSTANTIALLY IN ACCORDANCE WITH THE FOREGOING
APPLICATION, THE UNDERSIGNED AGREES AS FOLLOWS.

### Irrevocable Standby Letter of Credit Application and Security Agreement

1. As to drafts payable in United Sates currency drawn or purporting to be drawn under the Credit, the undersigned
agrees (a) in case of each sight draft, to pay to you at your office at 350 Madison Avenue, 3rd Floor, New York, New
York 10017 (hereinafter called the "Office") in United States currency the amount payable thereon immediately upon
receipt of notice of payment there of, with interest from the time of such payment at the rate of four (4%) percent above
the rate of interest designated by you, and in effect from time to time, as your "Reference Rate", adjusted
when said Reference Rate changes, or at such other rate as is agreed upon in writing between us (but if such interest rate
shall not be lawful with respect to the undersigned, then such rate shall be the highest lawful rate permitted to be charged
by you on a loan to the undersigned), or, if so demanded by you, to so pay to you the amount of such draft in
advance at a time to be determined by you; and (b) in case of each time draft, to pay to you the amount thereof at
your Office, in United States currency not later than two (2) business days prior to its maturity, or, if the draft is

payable elsewhere, then to make such payment at your Office in sufficient time to reach the place of payment in the usual course of the regular mails, not later than two (2) business days prior to maturity. Interest payable hereunder shall be computed on the basis of the actual number of days in a 360-day year. The charging of interest on the basis of a 360-day year results in the payment of more interest than would be required if interest were charged on the basis of the actual number of days in the year. The undersigned acknowledges that the Reference Rate may not necessarily represent the lowest rate charged by you to customers. You are hereby authorized, but not required, to charge the undersigned's account(s) maintained with you for any or all amounts due to you hereunder. For purposes of this Agreement, the term "draft" shall mean any sight or time draft or other document or written statement required for a drawing under the Credit.

2.  As to drafts payable in currency other than United States currency drawn or purporting to be drawn under the Credit, the undersigned agrees (a) in case of each sight draft, to pay to you immediately upon receipt of notice of payment thereof at your office in United States currency the equivalent of the amount payable on each draft at your then selling rate for cable transfers to the place where, and in the currency in which, such draft is payable, with interest at the legal rate or at such other rate as is agreed upon in writing from the time of such payment, or if so demanded by you to pay the same to you in advance at any other time to be determined by you, and (b) in case of each time draft to furnish you at said Office, sufficiently in advance to reach the place of payment in the usual course of the regular mails not later than two (2) business days prior to maturity, with first class banker's demand bills of exchange to be approved by you for the amount and in the currency of such draft and bearing the unqualified endorsement of the undersigned, or if you so request, to pay to you on demand at said office in United States currency the equivalent of the amount of such draft at your then selling rate for demand drafts on, or cable transfers to, the place where, and in the currency in which, such draft is payable. If at the time payment is to be made by the undersigned as aforesaid, there exists no rate of exchange generally current in New York City for cable transfers or demand drafts as hereinbefore provided, the undersigned agrees to pay to you on demand in United States currency the actual cost to you of settlement of your obligation to the payee of the draft or to any holder thereof as the case may be and however and whenever such settlement shall be made by you, including interest on the dollar amount payable by the undersigned from the date of payment of such draft to the date of the undersigned's payment to you. The undersigned shall pay you on demand in United States currency, such amounts as you may be required to expend in order to comply with all governmental exchange, currency control or other laws, orders and regulations of any country now or hereafter applicable to the purchase or sale of and/or dealings in, foreign currency.

3.  The undersigned shall pay to you such fees as are set forth on the Addendum attached hereto.  The undersigned shall pay to you on demand from time to time any additional amounts necessary (in your sole determination) to indemnify you against any increase in your direct or indirect costs of issuing or maintaining, or any reduction in the net amount to be received by you with respect to, the Credit, whether due to the imposition or modification of any reserve, special deposit or similar requirement (including any assessment for insurance of deposits or of letters of credit), any requirement to pay, or withhold or deduct from any amount payable, any taxes, fees or similar charges, or for any other reason.

4.  Except as expressly stated to the contrary herein, the undersigned agrees: (a) that partial payments may be made under the Credit and that you may honor the relative drafts without inquiry; (b) that notwithstanding the provisions of Article 45 of the UCP or any successor provision thereof, if the Credit provides for drawings available in installments within designated periods and there is a failure to draw under the Credit in any designated period, the Credit will not cease to be available for any subsequent installment, and subsequent installments made in their respective designated periods may be drawn against the Credit and drafts may be accepted and paid with respect to such installments; (c) that you may accept or pay, as complying with the terms of the Credit, any drafts or other documents otherwise in order which may be signed or issued by an administrator, executor, trustee in bankruptcy, debtor in possession, assignee for benefit of creditors, liquidator, receiver or other legal representative of the party who is authorized, under the Credit, to draw or issue any drafts or other documents without being required to inquire as to his authority or appointment; (d) that without limiting any other provisions of this agreement, you and any of your correspondents may accept documents of any character which comply with the provisions, definitions, interpretations and practices contained in "The Uniform Customs and Practice for Documentary Credits", The International Chamber of Commerce Publication as amended from time to time, or which comply with the laws or regulations in force in customs and usages of the place of negotiation; (e) that in the event of any extension of the maturity or time for negotiation or presentation of drafts, acceptances or documents or any other modification of the terms or provisions of the Credit at the request or with the consent of any of the undersigned with or without notification to the others or in the event of any increase in the amount of the Credit at the request of the undersigned, this Agreement shall be binding upon the undersigned with regard to (I) the Credit so increased or otherwise modified, (II) drafts, documents and property covered thereby, and (III) any action taken by you or any of your correspondents in accordance with such extension, increase or other modification; and (f) that you and/or any of your correspondents may accept or pay any draft dated on or before the expiration of any time limit expressed in the Credit, regardless of when drawn and when or whether negotiated, provided the other required documents are dated prior to the expiration date of the Credit.

5.  The undersigned assumes all risks of the acts or omissions of the users of the Credit and all risks of misuse of the Credit. Neither you nor any of your correspondents, agents, representatives or designees shall be liable or responsible in any manner including, without limitation, for any damages, losses or other consequences resulting by reason of, and the undersigned's obligations to you shall not be affected by, (a) the form, validity, accuracy, sufficiency, genuineness or legal effect of any draft, claim, document or required statement, or any endorsement thereon, even if such draft, claim, document, statement or endorsement should in fact prove to be in any or all respects invalid, insufficient, inaccurate, fraudulent or forged (and notwithstanding that the undersigned shall have notified you thereof); (b) the validity or sufficiency of any instrument transferring or assigning or purporting to transfer or assign the Credit or the rights or benefits thereunder or the proceeds thereof, in whole or part, which may prove to be invalid or ineffective for any reason; (c) any loss or delay in the transmission or otherwise of any such draft, claim, document, statement or endorsement, or any proceeds thereof; (d) any act or omission of you or any of your correspondents or of your or their respective agents or employees, other than any such act or omission arising

2

App. 558

from your or their gross negligence or willful misconduct; (e) any act or omission of the beneficiary of the Credit and the transferee of the Credit, if transferable; (f) the solvency or responsibility of any party issuing any documents in connection with the property; (g) delay in arrival or failure to arrive of either the property or any of the documents relating thereto; (h) delay in giving, or failure to give any notice; (i) any breach of contract between the undersigned and any other party; (j) failure of any draft to bear any reference or adequate reference to the Credit or failure of documents to accompany any draft at negotiation or failure of any person to note the amount of any draft on the reverse side of the Credit or to surrender or take up the Credit or to send forward documents apart from drafts as required by the terms of the Credit, each of which provisions, if contained in the Credit itself, it is agreed may be waived by you; (k) errors, omissions, interruptions or delays in transmission or delivery of any message by mail, cable, telegram, wireless, telex or otherwise, whether or not they be in cipher; (l) errors in translation or errors in interpretation of technical term; (m) any act, error, neglect or default, omission, insolvency or failure in business of any correspondent or for any consequences arising from causes beyond your control; or (n) any payment against presentation of any draft, claim, document, required statement or endorsement thereon that does not strictly comply with the terms of the Credit, provided that such draft, claim, document, required statement or endorsement substantially complies with the terms of the Credit. You shall have sole discretion to decide whether to pay against any draft, claim, document, required statement or endorsement thereon that does not strictly comply, but substantially complies, with the terms of the Credit, provided, however, that the beneficiary of the Credit may not require you to pay against such draft, claim, document, required statement or endorsement thereon that does not strictly comply with the terms of the Credit. In case of any variation between the undersigned's instructions and the requirements of the Credit or between any draft, claim, document, required statement or endorsement thereon accepted by you or your correspondents and the requirements of the Credit for which you are otherwise responsible hereunder, the undersigned shall conclusively be deemed to have waived any right to object to such variation unless, upon the undersigned's receipt of a copy of the Credit or of any such draft, claim, document, required statement or endorsement or notice of such variation, the undersigned immediately delivers to you a written notice of objection specifying each variation to which the undersigned objects and such notice is actually received by you and such receipts acknowledged by the signature of one of your officers. No legal proceeding or action shall be brought by the undersigned against you arising from any such variation unless (i) the undersigned shall have given you written notice of objection, as provided in the preceding sentence, and (ii) such legal proceeding or action shall be commenced in a court of competent jurisdiction sitting in the State and City of New York, within six months after the date when such copy of the Credit or draft, claim, document, required statement or endorsement thereon were delivered or mailed to the undersigned. In furtherance and extension (and not in limitation) of the specific provisions hereinbefore set forth, the undersigned agrees that any action taken or omitted by you or any of your correspondents under or in connection with the Credit or the relative drafts or documents if done in good faith, shall be binding on the undersigned and shall not put you or your correspondents under any resulting liability to the undersigned and the undersigned shall indemnify and hold you and your correspondents, agents and representatives harmless from any claim, loss or liability arising from or in connection with the Credit or the related drafts or documents.

6. In case the undersigned consents to any overdrafts under any Credit or authorizes payment or acceptance of drafts drawn thereunder with irregular documents attached thereto, or authorizes or consents to any departure from, or modification of the terms of this agreement or the Credit hereunder, this agreement shall be fully binding upon the undersigned in respect thereto and notwithstanding such overdrafts, irregularities or variances, this agreement and the documents shall be, subsist, and remain as though all matters had been done in strict compliance with this agreement and with the Credit. You and your correspondents shall not be liable for any failure by you or anyone else to pay or accept any draft or acceptance under this Credit or for any loss or damage resulting from any censorship, law, control or restriction rightfully or wrongfully exercised by any de facto or de jure domestic or foreign government or agency thereof, declared or undeclared war, or from any other cause, of whatsoever nature, beyond your control or the control of your correspondents, agents or representatives, and the undersigned agrees to indemnify and hold you harmless from any claim, loss, liability or expense arising by reason thereof.

7. The word "Obligations" as used in this agreement shall mean any and every indebtedness, obligation and liability of the undersigned to you and your claims of every nature and description against the undersigned, whether or not represented by negotiable instruments or other writings, whether arising under this agreement, the Credit or by reason of any other agreement or transaction, whether now existing or hereafter incurred, originally contracted with you and/or with another or others and now or hereafter owing to or acquired in any manner by you, whether contracted by the undersigned alone or jointly or severally with another or others, direct or indirect, absolute or contingent, secured or not secured, matured or not matured.

8. In order to secure the prompt and unconditional payment of the Obligations, the undersigned hereby grants you a security interest in any and all property of the undersigned in your actual or constructive possession or in transit to you or your correspondents, agents or representatives from or for the undersigned and the proceeds thereof, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into your possession in any other manner for any other reason, and the undersigned agrees to pledge, transfer and deposit with you and grant to you a security interest in such other property as you shall reasonably request to secure payment of the Obligations and to make such payments as you request on account of the Obligations. You are also hereby given a continuing lien and/or right of set-off for the amount of the Obligations, upon or with respect to any and all deposits, general or special, and credits of the undersigned with, and any and all claims of the undersigned against you at any time existing, and you are hereby authorized at any time or times, without prior notice, to apply such deposits or credits, or any part thereof, to payment of the Obligations in such amounts as you may select, although contingent or unmatured, and whether the Collateral is deemed adequate or not. All of the foregoing, together with any property in which you may now or hereafter be granted a security interest, or which may be deposited with you or your agents by the undersigned to secure the Obligations, is herein collectively called "Collateral", and you are hereby authorized to deal therewith in the same manner as if you had sole title thereto. If the undersigned, as registered holder of Collateral, shall become entitled to receive or does receive any stock certificate, option or right, whether as an addition to, in substitution of, or in exchange for, such Collateral, or otherwise, the undersigned agrees to accept same as your agent and to hold same in trust for you, to forthwith deliver the same to you in the exact form received, with the undersigned's endorsement when necessary, to be held by you as Collateral

3

9. You may, but shall not be obligated to, insure all or any part of the Collateral held by you hereunder against all risks of any kind and the premium thereon shall be paid to you by the undersigned within five days after the demand for the same and you shall have the right to debit the amount of such premium to any balances of the undersigned without notice. If the undersigned fails to pay the premium upon any policy of insurance pledged hereunder or upon any policy of insurance covering any property or Collateral within five days of the due date (without benefit of the grace period), you may, but shall not be obligated to, pay the same without notice to the undersigned and said premium shall be repaid to, or may be debited by you, as above provided. The undersigned agrees to reimburse you upon demand in the event you or any of your correspondents, agents or representatives pay for or incur any expense or liability in connection with the Credit or any draft accepted by you pursuant to this agreement or in relation to any of the matters set forth or referred to herein, including, but not limited to all correspondents' charges and expenses and charges for or incidental to the care, the safekeeping or otherwise of any of the Collateral pursuant to, or in connection with the Credit.

10. The undersigned will at any and all times at your request, sign financing statements, security agreements or other documents with respect to the Collateral as you may reasonably request. The right is expressly granted to you, at your discretion, to file one or more financing statements without the signature of the undersigned under the Uniform Commercial Code naming the undersigned as debtor and you as secured party and indicating therein the types or describing the items of Collateral herein referred to. The undersigned hereby agrees to pay on demand, and authorizes you to charge its account with the cost of any and all filing fees and costs which you deem necessary to incur to protect your interest in the Collateral.

11. The undersigned consents that, without the necessity for any reservation of rights against the undersigned and without notice to or further assent by the undersigned, the liability of any party for or upon Obligations or Collateral may from time to time, in whole or in part, be renewed, extended, modified, prematured, compromised, settled for cash, credit or otherwise and upon any terms or conditions you may deem advisable and that you may discharge or release any party from all such liabilities and that any collateral security for any of the Obligations may from time to time, in whole or in part, be exchanged, sold or surrendered by you all without in any way affecting or releasing the liability of the undersigned upon the Obligations. You shall not be liable for any failure to collect or demand payment of or protest or give any notice of non-payment of any of the Collateral or for any delay in so doing, nor shall you be under any obligation to take any action whatsoever with respect to the Collateral or any part thereof. You shall use reasonable care in the custody and preservation of Collateral in your possession but need not take any steps to preserve rights against prior parties or keep the Collateral identifiable. You shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in your possession if you take such action as the undersigned shall reasonably request in writing but in no event shall an omission to do any act which the undersigned fails to request in writing be deemed a failure to exercise such reasonable care and no omission to comply with any request of the undersigned shall be deemed a failure to exercise such reasonable care. Any right of set-off exercised by you shall be deemed to have been exercised immediately upon the occurrence of any event referred to in Paragraph 12 hereof, even though such set-off is made or entered on your books subsequent thereto. You shall have no obligation to comply with any recording re-recording, filing, re-filing or other legal requirement necessary to establish or maintain the validity, priority or enforceability of, or your rights in and to, Collateral, or any part thereof. You may exercise any right of the undersigned with respect to any Collateral. In any statutory or non-statutory proceeding, affecting the undersigned or Collateral, you or your nominee may, whether or not a default exists and regardless of the amount of Obligations, file a proof of claim for the full amount of any Collateral and vote such claim for the full amount thereof: (a) for or against any proposal or resolution; (b) for a Trustee or Trustees or for a Committee of Creditors; (c) for the acceptance or rejection of any proposed agreement, plan of reorganization, wage earners' plan, composition or extension, and you or your nominee may receive any payment or distribution and give acquittance therefor and may exchange or release Collateral. Any Collateral held by you hereunder, may without notice and whether or not a default exists, be registered and held in your or your nominee's name. You are hereby granted a power of attorney to endorse the undersigned's name on any and all notes, checks, drafts, bills of exchange, money orders or commercial paper included in the Collateral or representing the proceeds thereof.

12. All monies due or owing to you from the undersigned under this agreement or any other Obligations shall, at your option, become immediately due and payable, without notice or demand and notwithstanding any time or credit otherwise allowed or given to you under this or any other agreement or instrument and the undersigned and all guarantors shall be deemed in default hereunder upon the occurrence of any one of the following events with respect to any one of the undersigned or any guarantor or endorser of any Obligations of any of the undersigned to you: (a) failure to pay any sum upon the due date thereof; (b) if any statement, representation or warranty made in any application, financial statement or other agreement made with, or document delivered to you, shall be false or untrue in any material respect; (c) default in the performance of any condition or provision of this agreement or any other agreement with, or any Obligations to you; (d) death, and if a partnership, death of a partner, (e) insolvency, howsoever evidenced; (f) the making of a general assignment for the benefit of creditors; (g) the filing of any petition or the commencement of any proceedings by or against any of the undersigned or any guarantor of any Obligations, for any relief under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, compositions or extensions; (h) the appointment of a temporary or permanent receiver or trustee or similar legal representative of, or the issuance or making of a writ or order of attachment, against any property or assets; (i) entry of a judgment; (j) the commencement of any proceeding for enforcement of a judgment under Article 52 of the New York Civil Practice Law and Rules or under provisions of any other law; (k) the adoption of any resolution for dissolution or liquidation or the taking of any action for the purpose of such dissolution or liquidation; (l) the suspension of usual business; (m) the failure to deposit any additional collateral security with you upon demand; (n) the failure to pay any premium on any insurance policy pledged, or any insurance policy covering any property pledged with you, or in which you are granted a security interest, within five days after such premium becomes due without benefit of any period of grace; (o) failure forthwith upon demand to furnish any financial information or to permit inspection of books, documents or records of account; (p) failure to pay any tax when due; (q) if at any time in your sole judgment the financial responsibility

4

App. 560

of any of the undersigned, or of any guarantor of any Obligations of the undersigned shall become impaired or unsatisfactory to you.

13. Upon the happening of any of the events set forth in Paragraph 12, and at any time thereafter, you shall have, in addition to all other rights and remedies, the remedies of a secured party under the New York Uniform Commercial Code. The undersigned shall, upon your request, assemble the Collateral and make it available to you at a place to be designated by you which is reasonably convenient to you and the undersigned. You will give the undersigned notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is to be made by sending notice, as provided below, at least five days before the time of the sale or disposition, which provisions for notice you and the undersigned agree are reasonable. No such notice need be given by you with respect to Collateral which is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market. You may apply the net proceeds of any sale, lease or other disposition of Collateral after deducting all costs and expenses of every kind incurred therein or incidental to the retaking, holding, preparing for sale, selling, leasing or the like of said Collateral, or in any way relating to the rights of the undersigned thereunder, including attorney's fees hereinafter provided for and legal expenses, to the payment, in whole or in part, in such order as you may elect, of one or more of said Obligations, whether due or not due, absolute or contingent, and if contingent you may retain sufficient of such proceeds to cover the largest aggregate sum which may become due or owing thereunder to you with prospective interest, costs, expenses and counsel fees and you shall not be charged with any interest with respect thereto, and only after so applying such net proceeds and after the payment by you of any other amounts required by law need you account for the surplus, if any. The undersigned shall remain liable to you for the payment of any deficiency, with legal interest, and does hereby waive any and all rights of redemption with relation to the Collateral, to the extent permitted by law.

14. Any notice to you shall be deemed effective only if sent to and received at your office, division or department conducting the transaction or transactions hereunder. Any notice to or demand on and of the undersigned shall be binding on the undersigned and shall be deemed effective if not first otherwise made or given when forwarded by mail, telegraph, cable, radio, telephone or otherwise to the last address or telephone number of any of the undersigned appearing on your books with the same effect as if the same were actually delivered to and received by the undersigned in person. You shall not by any act, delay, omission or otherwise be deemed to have waived any of your rights or remedies hereunder and no waiver whatsoever shall be valid unless in writing, signed by one of your duly authorized officers, and then only to the extent therein set forth. A waiver by you of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which you would otherwise have on any future occasion. No term or provision of this agreement can be changed orally and no executory agreement shall be effective to change or modify or to discharge in whole or in part this agreement unless such executory agreement is in writing and signed by one of your duly authorized officers. All your rights and remedies hereunder shall be cumulative and may be exercised singly or concurrently, and your rights specified herein are in addition to those otherwise created. No delay on you part in exercising any power or right hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right, nor shall you be liable for exercising or failing to exercise any such power or right. The undersigned hereby waives demand, presentment, protest, notice of protest and notice of dishonor of any and all drafts, notes, bills of exchange, checks and other instruments deposited or pledged as Collateral hereunder whether upon inception, maturity, acceleration of maturity or due date, or at any other time, and any and all other notices and demands whatsoever, whether or not relating to such instruments.

15. In the event that you or any of your correspondents, at the request of the undersigned, extend, renew or refinance any of the obligations of the undersigned to you, arising by means of (a) bankers' acceptances created by the acceptance of drafts drawn by the undersigned on you, arising under Paragraphs 1 and 2 hereof; (b) drafts drawn by the beneficiary of the Credit, accepted by you or any of your correspondents; (c) notes made by the undersigned; or (d) otherwise, or in the event that you further extend, renew or refinance, from time to time, any such bankers' acceptances, draft or note, then, and in consideration thereof, the undersigned agrees to pay to you the amount of each bankers acceptance or draft in the manner provided in Paragraphs 1 and 2 hereof for the payment of time drafts drawn under the Credit, or, if a note is involved, then in the manner provided in the note. The undersigned further agrees that with respect to any such extension, renewal or refinancing, all of the terms, conditions, agreements and obligations contained in this agreement shall apply thereto and that you shall have all the rights and remedies set forth in this agreement as well as those set forth in any other document signed by or on behalf of the undersigned. Should the beneficiary under the Credit, upon receipt of advice by cable or otherwise of the issuance of the Credit, but prior to its actual receipt, negotiate drafts by virtue of such advice, such negotiation shall be considered a proper one and shall be included under the terms and subject to all conditions hereof and in addition thereto the undersigned assumes all the risk of the misuse of the Credit

16. You may, but shall not be obligated to, contest, pay and/or discharge all liens, encumbrances, taxes or assessments on, or claims, actions or demands against, any of the Collateral deposited hereunder without notice to, or the consent of, the undersigned and you may, but shall not be obligated to, take all actions and proceedings in your own name or in the name of the undersigned or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments and all sums advanced or paid by you and all costs, attorneys' fees and expenses relating thereto shall be paid by, and chargeable to, the undersigned.

17. The word "property" as used in this agreement, includes goods, merchandise, instruments, documents, securities, funds, choses in action and any and all other forms of property, whether real, personal or mixed, and any right or interest therein and the proceeds thereof. Property in your possession shall include property in possession of any person holding same for you in any manner whatsoever.

18. If any of the undersigned is a partnership, the members thereof shall be individually bound and liable hereunder. If this agreement is signed by two or more parties, it shall be the joint and several agreement of such parties.

19. If the Credit issued by you will provide that it will be available by presentation, to you or to any of your correspondents, of the documents described in the application, unaccompanied by drafts, the undersigned agrees

5

that all reference herein to drafts, documents relative to drafts, and the presentation, acceptance for payment or payment of drafts shall refer to documents presented for payment without drafts, the presentation and acceptance thereof, and payment upon such presentation, and that the undersigned's obligation and your rights, privileges and remedies hereunder shall be the same as though payments had been made upon presentation of drafts drawn under the Credit accompanied by the said documents.

20. The undersigned will bear and pay all expenses of every kind for the enforcement of any of your rights herein mentioned or of any claim or demand by you against the undersigned and/or guarantors and/or any other person, firm or corporation and of any Collateral held by you, and the undersigned will pay to you upon demand any such expenses incurred by you. If an attorney is used to collect or enforce the Obligations or to enforce, declare or adjudicate any rights or obligations under this agreement, or with respect to the Obligations or Collateral, whether by suit, or any other means whatsoever, attorneys' fees incurred by you shall be payable by the undersigned. The undersigned in any litigation (whether or not arising out of or relating to this agreement or to any Obligations) in which you and any of the undersigned shall be adverse parties, waives trial by jury and the right to interpose any defense based on any statute of limitations or any claim of laches, set-off, or counterclaim of any nature or description. Notwithstanding anything to the contrary contained herein, the undersigned hereby indemnifies and holds you harmless from and against any and all claims, actions (including, without limitation, legal proceedings relating to any court order, injunction or other process or decree restraining or seeking to restrain you from paying any amount under the Credit or relating to any attachment or execution in connection with the Credit, any Obligations or Collateral), losses, judgments, amounts and expenses including, without limitation, attorneys' fees, and court costs, ( such claims, actions, losses, etc., hereinafter called collectively "Liabilities") suffered or incurred by you in connection with or arising out of this agreement, any Obligations or the Collateral and regardless of whether such Liabilities relate to claims or actions brought by the undersigned or any third party, including without limitation liabilities suffered or incurred by you in connection with (a) your exercise of any right or remedy granted to you hereunder, by law or otherwise, (b) any claim and the prosecution or defense thereof arising out of or in any way connected to this agreement, and any Obligations or the Collateral, (c) the collection or enforcement of the Obligations, and (d) any of the events or circumstances referred to in Paragraph 5 hereof. In the event of the undersigned or any guarantor of any of the Obligations acts in any way (including but not limited to seeking an injunction or temporary restraining order) to prevent or delay payment by you of a draft or claim, the undersigned: (i) agrees to provide to you on demand such additional collateral in such amount as you, in your sole discretion, shall deem necessary to secure the payment to you of the Obligations; (ii) agrees to bear and pay all expenses of every kind incurred by you, including attorneys' fees, in connection with such action to prevent or delay payment by you of a draft or claim; (iii) consents to your exclusive determination to pay or compromise any claim or obligation of any nature or description relating to the Credit, including without limitation all costs, attorneys' fees, fines, interest, damages or any other charge, expense or liability; and (iv) agrees to indemnify you and to reimburse you on demand for the amount of such payments or compromises together with interest thereon at the rate and on the terms set forth in Paragraph 1 hereof.

21. The term "you" as used throughout this agreement shall be deemed to include the Bank Leumi USA and all its branches or departments wherever located, and any individuals, partnerships or corporations acting as nominee, for, or in behalf of, the Bank Leumi USA and any subsidiary or entity controlled by the Bank Leumi USA and any other subsidiary or entity which is controlled directly or indirectly by any such subsidiary or entity. The term "undersigned", as used throughout this agreement shall include the individual or individuals, association, partnership, corporation, or other entity named herein as "undersigned", and (a) any successor individual or individuals, associations or partnership, corporation, or other entity to which all or substantially all of the business or assets of said undersigned shall have been transferred, (b) in case of a partnership, any new partnership which shall have been created by reason of the admission of any new partner or partners therein or the dissolution of the existing partnership by death, resignation or other withdrawal of any partner, and (c) in the case of a corporation, any other corporation into or with which said undersigned shall have been merged, consolidated, reorganized or absorbed.

22. This agreement is made in the City of New York and shall be construed in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof. In the event that you bring any action or suit in any court of record of New York State or the Federal Government to enforce any or all of the Liabilities of the undersigned or any of your rights hereunder, service of process may be made upon the undersigned by mailing a copy of the summons to the undersigned at the address set forth below, and the undersigned hereby irrevocably submits to the jurisdiction and venue of any New York State or Federal court located in New York City over any action, suit or proceeding arising out of any dispute between the undersigned and you.

23. If any term, condition or provisions of this agreement or of any other agreement or document executed and/or delivered to you is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provisions of this agreement and all other agreements executed and/or delivered to you and they shall be carried out as if any such invalid or unenforceable term, condition or provision were not embodied herein or therein.

24. You may assign or transfer this agreement and all Collateral and in such event the assignee or transferee thereof shall have the same rights and remedies hereunder as if originally named herein in your place. Upon any such assignment or transfer, you may deliver the Collateral and property held as security or any part thereof to the assignee or transferee, who shall thereupon become vested with all your powers and rights in respect thereof and you shall thereafter be forever relieved and fully discharged from any liability or responsibility with respect to the property transferred, but you shall retain all powers and rights with respect to the property not so transferred. You shall, at all reasonable times and from time to time, be allowed, by or through any of your officers, agents, attorneys or accountants, to examine, inspect and make abstracts from the undersigned's books.

25. Except as otherwise provided herein, the Credit shall be subject to the Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce Publication as amended from time to time.

6

26. The undersigned agrees that: (a) any assistance provided by you in the preparation of the terms of the credit was requested by the undersigned and was based solely upon information provided to you by the undersigned, (b) except for information furnished by the undersigned, you have no knowledge of the transaction for which the credit has been obtained, (c) the undersigned has read and understands all of the terms and provisions of the credit and this Letter of Credit Application, and (d) the terms of the credit are in accord with the undersigned's instructions and represent all the conditions that the undersigned has requested as a prerequisite for you to pay under the credit.

By Daniel Moos - Chairman & CEO

Address 1603 LBJ Frwy

Suite 800

Dallas, TX 75234

On behalf of:
TRANSCONTINENTAL REALTY INVESTORS, INC.

On behalf of:
PARC AT INGLESIDE, ON BEHALF OF D4IN, LLC

FORM 1221 (R6/11)

7

App. 563