UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 3:22-cv-2118-X |
| v. | § § | |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (a/k/a MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § | |
| *Defendants.* | § § | |
| DJD LAND PARTNERS, LLC and LDG001, LLC, | § § § | |
| *Relief Defendants.* | § | |

**PIONEER FINANCE, INC.'S MOTION TO LIFT STAY AND FOR EXCEPTION FROM
THE COURT'S ORDER APPOINTING RECEIVER (DKT. 29)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A.    Pioneer makes a $3 million loan to LDG001.................................................................. 2

    B.    Court appoints Receiver over entities controlled by Timothy Barton, resulting in LDG001's first default on its loan obligation. .................................................................. 3

    C.    LDG001 defaults on its loan obligation for a second time by failing to make a required monthly payment. .............................................................................................................. 3

    D.    Pioneer begins discussions with Receiver's counsel to no success. .................................. 4

APPLICABLE LAW ............................................................................................................... 7

ARGUMENT .......................................................................................................................... 8

PRAYER ................................................................................................................................ 12

CERTIFICATE OF CONFERENCE...................................................................................... 14

CERTIFICATE OF SERVICE .............................................................................................. 14

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Est. of Price*,
  528 S.W.3d 591 (Tex. App.—Texarkana 2017, reh'g denied)................................................10

*Marshall v. People of New York*,
  254 U.S. 380 (1920)..................................................................................................................9

*Netsphere, Inc. v. Baron*,
  703 F.3d 296 (5th Cir. 2012) ...................................................................................................8

*Sec. Trust Co. of Austin v. Lipscomb Cnty.*,
  180 S.W.2d 151 (Tex. 1944)....................................................................................................11

*SEC v. Barton*,
  72 F. 4th 640 (5th Cir. 2023) ...................................................................................................6

*SEC v. Barton*,
  79 F.4th 573 (5th Cir. 2023) ....................................................................................................8

*SEC v. Stanford Int'l Bank, Ltd.*,
  424 Fed. App'x 338 (5th Cir. 2011) .........................................................................................8

*SEC v. Wencke*,
  622 F.2d 1363 (9th Cir. 1980) ..............................................................................................8, 9

*United States v. Acorn Tech. Fund, L.P.*,
  429 F.3d 438 (3d Cir. 2005)......................................................................................................8

*United States v. Petters*,
  No. 08-5348, 2008 WL 5234527 (D. Minn. Dec. 12, 2008) ....................................................8

*Whitson Co. v. Bluff Creek Oil Co.*,
  256 S.W.2d 1012 (Tex. Civ. App.—Fort Worth 1953, writ dism'd)......................................11

STATUTES

Tex. Prop. Code § 51.002 ..............................................................................................................4

OTHER AUTHORITIES

65 Am. Jur. 2d Receivers § 70........................................................................................................9

Pioneer Finance, Inc. ("Pioneer") files this Motion to Lift Stay and for Exception from the Court's Order Appointing Receiver (the "Motion") and respectfully shows the Court the following:

### INTRODUCTION

Pioneer is the first and only lienholder on three properties in Venus, Texas located at 940 County Road 110, 980 County Road 110, and 324 W County Road 109 (collectively, the "Properties"), which are currently owned by LDG001, LLC ("LDG001").

On March 24, 2022, Pioneer made a secured loan in the original principal amount of $3,000,000.00 to LDG001 guaranteed by Timothy Barton ("Barton") and JMJ Development, LLC ("JMJ"; collectively with Barton, "Guarantors"). Though the loan is due and owing, no payment has been received under the loan since the Receiver was appointed on October 18, 2022—almost one year ago—which constitutes a default of the underlying loan documents including the Promissory Note, the Deed of Trust, and Guaranty Agreement (collectively, "Loan Documents").[1]

Pioneer is a good-faith lender who made its loan to LDG001 without knowledge of and long after the wrongdoing alleged in the U.S. Securities and Exchange Commission's ("SEC") underlying case against Mr. Barton, his associates, and his numerous entities. The failure to repay LDG001's debt has caused Pioneer financial strain and adversely impacts the health of Pioneer's asset portfolio. As a lender and first lienholder, Pioneer is entitled to timely protection of the value of the Properties. There is no reasonable basis to contest that Pioneer must either be paid back for its loan or is entitled to foreclose on the property securing its loan. Accordingly, Pioneer requests that this Court lift the stay and allow Pioneer to enforce its rights to foreclose on the Properties.

---

[1] All undefined capitalized terms herein shall bear the same meaning as in the Loan Documents attached as Exhibits A-C to this Motion.

## BACKGROUND

### A.    Pioneer makes a $3 million loan to LDG001.

1.    In March 2022, Pioneer was approached to provide a loan to LDG001 secured by the Properties, as guaranteed by the Guarantors.  As of that time, neither Barton nor his agents advised Pioneer that Barton and his companies had been subject to an SEC investigation.  Nor did they mention that Barton and his companies had any outstanding issues with investors.  Instead, Pioneer was advised that Barton was a wealthy and successful real estate developer in the Dallas, Texas metropolitan area whose assets would ensure the repayment of Pioneer's loan.

2.    Based on those representations, on or about March 24, 2022, Pioneer and LDG001 entered a loan agreement pursuant to which Pioneer lent LDG001 the principal sum of $3,000,000.00.[2]  The Promissory Note was secured by a Deed of Trust, Security Agreement and Financing Statement over the Properties.[3]  The loan was guaranteed by Barton and JMJ.[4]

3.    Under the Loan Documents, LDG001 was required to make monthly installment payments beginning on April 24, 2022 and continuing until a Maturity Date of March 24, 2027, when a final balloon payment for the entire unpaid principal and accrued, unpaid interest shall be due and payable.[5]

---

[2] Ex. A, Promissory Note at 1.
[3] *See* Ex. B, Deed of Trust.
[4] Ex. C, Guaranty Agreement at 1.
[5] Ex. A, Promissory Note at 1.

**B.    Court appoints Receiver over entities controlled by Timothy Barton, resulting in LDG001's first default on its loan obligation.**

4.    On September 23, 2022, the Securities and Exchange Commission (the "SEC") filed its Complaint in Case No. 3:22-CV-2118-X (Dkt. 1), which alleges a $26-million fraudulent scheme through which Barton defrauded investors between March 2017 through June 2019.

5.    On October 18, 2022, the Court entered the Order Appointing Receiver Cortney C. Thomas (the "Receiver") (the "Receivership Order") (Dkt. 29).  In the Receivership Order, LDG001 is included in the list of Barton-controlled companies whose assets to be controlled and managed by the Receiver as part of the Receivership Estate.  Dkt. 29 at 2.  The appointment of a Receiver over "all entities controlled, directly or indirectly, by Timothy Lynch Barton,"[6] including LDG001 and JMJ, constituted a default of the Loan Documents.[7]  As a result of this receivership, Pioneer is entitled under the Loan Documents to declare the Note and any and all other indebtedness of LDG001 to Pioneer immediately "due and payable forthwith without demand, notice of default, notice of intent to accelerate the maturity of this note, notice of acceleration of the maturity of this note, notice of nonpayment, presentment, protest or notice of dishonor."[8]

**C.    LDG001 defaults on its loan obligation for a second time by failing to make a required monthly payment.**

6.    On October 24, 2022, LDG001 and Guarantors failed to make their monthly installment payment of $30,000.00 as required by the Loan Documents. LDG001, JMJ, and Barton's failure to make a required payment constitutes a default of the Promissory Note and Deed of Trust.[9]

---

[6] Dkt. 62 at 3.
[7] *See* Ex. A, Promissory Note at 4; Ex. B, Deed of Trust at § 3.1 D.; Ex. C, Guaranty Agreement at §§ 7, 15.
[8] Ex. A, Promissory Note at 4.
[9] *Id.*; Ex. B, Deed of Trust at § 3.1 A.

7.      When Pioneer contacted Barton about the missed payment, he informed Pioneer that payment would not be possible because his money was frozen in a receivership. This was the first time Pioneer became aware of Barton's SEC investigation and purported issues with investors.

8.      As a result of this default, Pioneer is entitled under the Loan Documents to declare the unpaid principal balance and earned interest on the Note immediately due and payable. Further, all past due principal and interest shall bear interest at the rate of eighteen percent (18%) per annuum, instead of the typical interest rate of twelve percent (12%) per annum. [10]

**D.      Pioneer begins discussions with Receiver's counsel to no success.**

9.      In the event that defaults that are not timely cured, Pioneer as first lienholder is entitled under the Loan Documents and by law to proceed with various remedies, including but not limited to declaring all indebtedness evidenced by the Loan Documents immediately due and payable plus interest at the rate of eighteen percent (18%) per annuum; accelerating of all indebtedness evidenced by the Loan Documents; and foreclosing on the property.[11]

> All past due principal and interest shall bear interest at the rate of eighteen percent (18%) per annum (the "Maximum Rate"). All scheduled payments as made shall be applied first to the interest then accrued, and the balance, if any, to the principal. The provisions of this paragraph shall not limit the Lender's right to compel prompt performance under this note, nor grant an option to Borrower to make late payments. [12]

> Lender shall provide Borrower seven (7) days prior written notice of a monetary default hereunder and twenty (20) days written notice of non-monetary default, both with opportunity to cure, prior to acceleration of the balance of this Note. [13]

10.      Following LDG001's nonpayment, on November 8, 2022, Pioneer served a Notice of Default on LDG001, JMJ, Barton, and the Receiver and his counsel (the "Notice of Default")

---

[10] Ex. A, Promissory Note at 1.
[11] *Id*. at 1-2; *see* Tex. Prop. Code § 51.002.
[12] Ex. A, Promissory Note at 1.
[13] Ex. A, Promissory Note at 2.

wherein Pioneer: (1) demanded that they cure the default by making the required payment along with any earned interest, and (2) reserved all of Pioneer's rights and remedies available under the Loan Documents.[14]  No payment was received following this Notice of Default.

11.    The service of the Notice of Default began a nearly year-long dialogue between counsel for Pioneer and counsel for Receiver, during which Pioneer received zero payment but was repeatedly reassured that Receiver was highly motivated to sell the Properties.  However, counsel for Receiver reported that the Receiver would market the Properties for sale *after* he was able to overcome Mr. Barton's appeals to the Fifth Circuit—including Barton's appeal of the Receivership order itself.

12.    For many months, Pioneer waited patiently for Receiver to resolve the issues raised on appeal and initiate sale of the Properties. In all that time, Pioneer has repeatedly admonished the Receiver regarding the rapid devaluation of the Properties while in his care.  In the interest of recouping its losses more quickly, Pioneer took proactive steps to assist Receiver with his stated goal of selling the Properties.  On two occasions, Pioneer informed Receiver that it was willing to purchase the Properties for the amount due on the Promissory Note.[15]  Receiver rejected Pioneer's suggestion on both occasions in favor of an unconfirmed deal that was merely *proposed* to an unnamed, prospective, "interested buyer" for an allegedly higher sale price.  The Receiver has long claimed that he has had preliminary discussions with a prospective buyer interested in purchasing the Properties and surrounding land as part of a package deal for an amount allegedly greater than the debt owed to Pioneer.  However, nearly a year after those alleged "discussions" began, no sale of the Properties has been proposed or meaningfully marketed.

---

[14] Ex. D, Notice of Default.

[15] *See* Ex. E, Emails between Counsel for Receiver and Pioneer (April 12, 2023 Email from L. Buchanan to T. Wells and C. Koonce).

13.     On June 28, 2023, the Fifth Circuit issued its opinion in which it ruled, *inter alia*, that the receivership order should be vacated (90 days after the Fifth Circuit issues the mandate), and that certain of the Receiver's powers were stayed.[16]  The Fifth Circuit also issued its mandate on August 31, 2023.

14.     On July 18, 2023, Pioneer served on counsel for Receiver, SEC, and Barton a demand for immediate payment ("Demand Letter").[17]  In that correspondence, Pioneer informed all parties that unless the debt owed by LDG001 was repaid and brought current, Pioneer would pursue its available remedies under the Loan Documents.[18]  Neither the Receiver, the SEC, nor Barton responded to the Demand Letter.  No payment was received following this Demand Letter.

15.     On August 1, 2023, counsel for Pioneer contacted counsel for the Receiver to confer about the Demand Letter.  However, counsel for the Receiver stated that they did not "see further discussions being productive" until the entry of a new receivership order.[19]

16.     On August 2, 2023, counsel for Pioneer conferred with counsel for SEC regarding the Demand Letter and whether the Properties would be excepted from the property over which the SEC's new Proposed Order Appointing a Receiver would seek a Receiver's control.  During the conference, counsel for the SEC claimed that repayment was not within SEC's powers at that time and stated that analysis was still "ongoing" as to what property would be included in the new proposed order.  Counsel for SEC also intimated that the process of repaying creditors "could take years."

---

[16] *SEC v. Barton*, 72 F. 4th 640 (5th Cir. 2023), *withdrawn and superseded on denial of reh'g*, 79 F. 4th 573 (5th Cir. 2023).

[17] Ex. F, Demand Letter.

[18] *Id.* at 2.

[19] Ex. G, August 1, 2023 Email from T. Wells to L. Buchanan.

6

17.    On September 7, 2023, the SEC petitioned the Court for a new Order Appointing Receiver.  Dkt. 309-1.  Included on the list of proposed Receivership Entities are LDG001 and guarantor JMJ.  Dkt. 309-1 at 3-4.

**18.    In all this time, Pioneer has not received any loan payments, and no sale of the Properties has been proposed or submitted to the court for approval.  In addition, the Properties have never been meaningfully or officially marketed for sale.**

19.    As Pioneer continuously reminded counsel for Receiver over the past year, the amount due on the Note will surpass the value of the Properties, while the amount owed continues to accrue and increase.[20]

20.    As a result of Receiver's failure to make payments required to satisfy LDG001's debts, Pioneer has suffered financial harm and reputational damage, as its portfolio of properties appears riskier, and it has not received any of the payments that it is owed.  Specifically, Pioneer recently had two credit lines totaling $50 million revoked at two banks and was denied credit at others based solely on the banks' concern regarding the outstanding amounts owed by LDG001.

21.    As of this date, LDG001 and Guarantors therefore owe and have failed to pay the unpaid principal and 18% interest per annuum, as provided in the Loan Documents.  As of October 30, 2023, Pioneer is owed $3,829,441.30, an amount which will continue to accrue unless paid off.

## APPLICABLE LAW

Courts considering whether to lift a stay of litigation entered pursuant to a receivership order balance the following three interests of the receiver and the moving parties: "(1) whether refusing to lift the injunction genuinely preserves the status quo or whether the moving party will suffer substantial injury if it is not permitted to proceed"; (2) the time in the course of the

---

[20] *See, e.g.,* Ex. E, Emails between Counsel for Receiver and Pioneer (March 31, 2023 Email from L. Buchanan to T. Wells, emphasizing the loan's continuous accrual).

receivership at which the motion for relief from the injunction is made; and (3) the merits of the moving party's underlying claim." *SEC v. Wencke*, 622 F.2d 1363, 1373-74 (9th Cir. 1980) (establishing balancing test); *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3d Cir. 2005). Movants have the burden of proving that the balance of these factors weighs in favor of lifting the stay. *Acorn*, 429 F.3d at 450. "[T]he factors enable a district court to remain mindful that '[t]he interests of the Receiver are very broad and include not only protection of the receivership res, but also protection of defrauded investors and considerations of judicial economy' and the purpose of the stay of litigation is 'to give the receiver a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant.'" *United States v. Petters*, No. 08-5348, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008) (quoting *Acorn*, 429 F.3d at 443).

## ARGUMENT

LDG001 is in default under the Loan Agreement, and Pioneer desires to exercise its rights under the Loan Documents by foreclosing on the Property. The stated purpose of the original Motion for Appointment of Receiver was to protect assets for the defrauded investors (Dkt. 309-1). Such protection should not come at the expense of Pioneer—a secured lender operating in good faith.

The Court has broad authority to issue stays of litigation to preserve receivership property. *See SEC v. Stanford Int'l Bank, Ltd.,* 424 Fed. App'x 338, 340 (5th Cir. 2011). However, that authority is limited to property subject to the underlying litigation. *SEC v. Barton*, 79 F.4th 573, 580, 581 (5th Cir. 2023) (citing *Netsphere, Inc. v. Baron,* 703 F.3d 296, 310 (5th Cir. 2012)). A receivership's jurisdiction extends only over property subject to those underlying claims. *Id.* Pioneer made the loan to LDG001 in March 2022, almost 3 years after the last alleged purported investor fraud occurred. As such, the property secured by Pioneer's loan is not implicated in or related to the underlying allegations made by the SEC in this matter. In addition, the further harm

8

to Pioneer in further preventing it from exercising its contractual rights far outweighs any harm to the receivership by the removal of the Properties from the vast Receivership Estate.

Further, the *Wencke* factors weigh in favor of lifting the stay. *See Wencke*, 622 F.2d at 1373-74 (9th Cir. 1980). First, refusing the lift would do nothing to preserve the "status quo" and would only serve to cause additional substantial harm to Pioneer. By all accounts, the status quo—Pioneer receiving timely payments from LDG001—was interrupted as a result of the appointment of the receiver and the imposition of the stay. Indeed, refusing to lift the stay would also disturb the universal understanding that first lien secured creditors have the rights that must be respected, even in the event of a receivership. When receivers take control of property, they do so subject to any existing liens or priorities on that land. See *Marshall v. People of New York*, 254 U.S. 380, 385 (1920) (federal court receiver takes property "subject to all liens, priorities, or privileges existing or accruing under the laws of the state."). The appointment of a receiver does not alter property rights or affect title: title to a property in receivership remains vested in those persons or entities in whom it was vested when the receiver was appointed. *See* 65 Am. Jur. 2d Receivers § 70. Stated simply, the Receiver now stands in the shoes of the Receivership Entities, including LDG001, and is no freer to disregard or abolish Pioneer's security interest in the Properties than Mr. Barton, JMJ, or LDG001 would have been prior to the Receiver's appointment. If the stay is not lifted and Pioneer is not permitted to accelerate the debt or timely foreclose on the property in which it has a secured interest, Pioneer will suffer irreparable injury, loss, and damage, as it will be deprived of its contractual rights and be forced to risk the daily diminution of the value of its security interest.

Second, the timing of this motion during the receivership is ideal, as there is no justification for delaying Pioneer's ability to pursue its available contractual remedies. SEC and the Receiver

have: (1) been apprised of and acknowledged Pioneer's security interest in the three properties in Venus, Texas; (2) averred that Pioneer's rights as a secured lender will be "generally and fully protected" by its sales process;[21] and (3) evinced his intent to timely "maximize the value of [Receivership Estate] properties" by pursuing arm's-length private sales of property to qualified buyers, auctions, or abandonment of property.[22]   The sale of the Properties would be a simple transaction within all the interests of all parties as it is a simple transaction that can be handled quickly and cooperatively between the Receiver and Pioneer once the stay is lifted.  As a first lien secured creditor, Pioneer should be allowed to enforce its priority interest rights and protect its interests by foreclosing on the Properties without waiting the several "years" counsel for SEC estimates it will take to sort out all creditor issues and receive repayment in this action.

Finally, Pioneer's underlying claims are strong, as Pioneer's objectives for lifting the stay—exercising its contractual rights for the purpose of ensuring the preservation of the Properties and the value of its security interest—are supported by case law and echoed by the objectives and duties outlined in the Receivership Order.  One of Receiver's duties under the Receivership Order is to take such "action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property."[23] The longer that the Receiver allows the Properties to sit without proper management and care, the less marketable it becomes and the likelihood of deterioration of the property increases.  As supported by Texas law, "[a] receiver is not appointed for the benefit of the applicant, but to receive and preserve the property for the benefit of all parties interested therein."  *Est. of Price*, 528 S.W.3d

---

[21] Ex. E, Emails between Counsel for Receiver and Pioneer (November 11, 2022 Email from C. Koonce to T. Nguyen).
[22] *Id.*
[23] Receivership Order § I.6.G. at 5 (emphasis added) (Dkt. 29).

591, 597 n.7 (Tex. App.—Texarkana 2017, reh'g denied) (quoting *Whitson Co. v. Bluff Creek Oil Co.*, 256 S.W.2d 1012, 1014 (Tex. Civ. App.—Fort Worth 1953, writ dism'd). A Receiver is charged with the responsibility of protecting the interests of the parties to this suit and secured creditors like Pioneer. *See Sec. Trust Co. of Austin v. Lipscomb Cnty.,* 180 S.W.2d 151, 158 (Tex. 1944) (explaining that a receiver "is a disinterested party, the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property in receivership"). Presumably to protect those interests, the Court authorized the Receiver "to take all actions to <u>manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors</u>[.]"[24]  To comply with his obligations under both state law and the Receivership Order, the Receiver must maintain or timely sell the Properties to ensure that: (1) the value of the property is preserved, and (2) Pioneer does not lose its vested security interest.

The Court should lift the stay and allow Pioneer to foreclose on the Properties, given the Receiver's current inability to satisfy the debt using the monies which exist in the Receivership Estate. There is no disputing that Pioneer is a secured lender entitled to payment and its security. There is no basis to delay Pioneer's contractual rights to foreclose on the Properties, particularly based on the speculation that has not occurred for nearly a year that the Receiver wishes to sell the Properties to satisfy the debt LDG001 owes to Pioneer. The Receiver has failed to make a single payment to Pioneer.

For the foregoing reasons, Pioneer respectfully requests that the Court lift the stay and except Pioneer from the restrictions of the Receivership Order, allowing Pioneer to exercise all of its rights under the Loan Documents. In addition, Pioneer was required to retain counsel to

---

[24] *Id*. at § X.42 (emphasis added).

represent it before this Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the Loan Documents.

## PRAYER

Pioneer respectfully request the Court enter an order lifting the stay in this matter, permit Pioneer's request to be excepted from the Receivership Order, and granting all such other and further relief, at law and in equity, to which Pioneer may show itself justly entitled.

12

Dated: October 6, 2023

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Tina Q. Nguyen*
    Tina Q. Nguyen
    State Bar No. 24078670
    Lindsay L. Buchanan
    State Bar No. 24105551
    910 Louisiana Street
    Houston, Texas 77002
    Telephone: (713) 229-1912
    Facsimile: (713) 229-2712
    tina.nguyen@bakerbotts.com
    lindsay.buchanan@bakerbotts.com

    ATTORNEYS FOR
    PIONEER FINANCE, INC.

## CERTIFICATE OF CONFERENCE

The undersigned has conferred with counsel for Receiver telephonically and via electronic mail regarding the issues detailed in this Motion several times between December 2022 and the present.  In general, these conferences with counsel for Receiver occurred on a bi-monthly basis throughout that period, but in some circumstances the discussions occurred more frequently.  On July 18, 2023, Pioneer served on counsel for Receiver, SEC, and Barton a demand for immediate payment ("Demand Letter").  In that correspondence, Pioneer informed all parties that unless the debt owed by LDG001 was repaid and brought current, Pioneer would pursue its available remedies under the Loan Documents.  Neither the Receiver, the SEC, nor Barton responded to the Demand Letter.  The undersigned also conferred with counsel for SEC via Zoom regarding the issues detailed in this Motion on August 2, 2023.  On October 5, 2023, the undersigned conferred with Charlene Koonce, counsel for the Receiver, and Keefe Bernstein, counsel for the SEC, regarding the relief sought herein. On October 5, 2023, Ms. Koonce indicated the Receiver's opposition to this Motion and the relief requested.  On October 5, 2023, Keefe Bernstein, indicated the SEC's opposition to this Motion and the relief requested.

*/s/ Lindsay L. Buchanan*
Lindsay L. Buchanan

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above-referenced motion was served on all parties on this 6th day of October 2023, v*ia CM/ECF* and/or by First Class Regular Mail.

*/s/ Lindsay L. Buchanan*
Lindsay L. Buchanan

14