# Ex. A

## PROMISSORY NOTE

**$3,000,000.00**                                          March 24, 2022

For value received, after date, without grace (other than as provided for herein) and in the manner, on the dates and in the amounts herein stipulated, the undersigned, **LDG001, LLC, a Texas limited liability company ("Borrower"),** whose address is 940 County Road 110, Venus, Texas 76084, promises to pay to the order of **PIONEER FINANCE, INC., A TEXAS CORPORATION ("Lender"),** at 13310 University Blvd, Suite 100, Sugar Land, TX 77479, or at such other place designated in writing by Lender, or other holder thereof:

(i)    The principal sum of $3,000,000.00, or as much thereof as disbursed pursuant to the Loan Agreement of even date herewith, together with,

(ii)    An interest rate per annum which is 12%.

(iii)    This note is due and payable as follows: Interest only is due and payable in twelve (12) equal monthly installments of $30,000.00, or more, each, payable on the 24th day of each and every calendar month, beginning the 24th day of April, 2022, and continuing regularly thereafter for an additional eleven (11) months. Thereafter, Principal and accrued, unpaid interest is due and payable in forty-eight (48) equal monthly installments of $36,005.04, or more, each payable on the 24th day of each and every calendar month, beginning the 24th day of April, 2023, and continuing regularly thereafter until March 24, 2027 (the "Maturity Date"), when a final balloon payment for the entire unpaid principal and accrued, unpaid interest shall be due and payable in full; interest being calculated on the unpaid principal to the date of each installment paid, and the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal, the maturity hereof, at which time the final installment of all unpaid principal and all accrued but unpaid interest shall be due and payable in full. For all payments not honored by Borrower's financial institution, due to non-sufficient funds ("NSF") or any other reason, Lender may charge a fee of 5% of the amount of the payment. Upon receipt of three instances of payments that are not honored by the Borrower's financial institution due to NSF or any other reason during the loan term, Lender may declare the unpaid principal balance and earned interest on the Note immediately due and payable.

All past due principal and interest shall bear interest at the rate of eighteen percent (18%) per annum (the "Maximum Rate"). All scheduled payments as made shall be applied first to the interest then accrued, and the balance, if any, to the principal. The provisions of this paragraph shall not limit the Lender's right to compel prompt performance under this note, nor grant an option to Borrower to make late payments.

As an alternative to matured unpaid amounts accruing interest at the Maximum Rate, at the option of Lender, in the event any installment shall become overdue for a period in excess of ten (10) calendar days, at Lender's option, a late payment charge of FIFTY ($50.00) DOLLARS may be charged for the purpose of defraying the expense incident to handling such delinquent

1

Initial for Identification

payments. The provisions of this paragraph shall not limit the Lender's right to compel prompt performance under this note, nor grant an option to Borrower to make late payments.

Borrower may prepay this Note on any monthly installment date, only in whole, subject to the following conditions:

This Note may be prepaid at any time, in whole, and Borrower will pay a prepayment penalty in the amount of $60,000.00 ("Prepayment Penalty") to Lender at the time of such prepayment.

Borrower shall pay to Lender a loan exit fee of $60,000.00 at the Maturity Date. In the event the Borrower prepays the entire loan amount prior to the Maturity Date, the Maker shall pay the Prepayment Penalty only.

If payment of principal or interest on this note shall become due on a Saturday, Sunday or public holiday as defined under the laws of the State of Texas, such payment shall be made on the next succeeding business day and such extension of time shall in such case be included in computing interest in connection with such payment. Any check, draft, money order or other instrument given in payment of all or any portion hereof may be accepted by the holder hereof and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the holder hereof except to the extent that actual cash proceeds of such instrument are unconditionally received by the holder and applied to this note in the manner herein provided.

It is especially agreed that if default be made in any of the payment of principal and/or interest due hereon or if there is an Event of Default in any of the covenants of provisions set forth in any Deed of Trust, Security Agreement or other security document given to secure the payment hereof, or should any Borrower, endorser or guarantor hereof become insolvent or commit any act of bankruptcy or make an assignment for the benefit of creditors or authorize the filing or file a voluntary Petition in Bankruptcy or should a receiver of any of their property be appointed, or should involuntary bankruptcy proceedings be filed or threatened against any of said parties, then, in any such event, at the option of the holder hereof, at any time thereafter, after notice as provided for herein, the unpaid principal of this note and all accrued interest shall at once become due and payable and shall bear interest at the rate aforesaid from the date of such default or event. Failure to exercise any of said options shall not constitute a waiver on the part of the holder hereof of the right to exercise the same at any other time.

Lender shall provide Borrower seven (7) days prior written notice of a monetary default hereunder and twenty (20) days written notice of non-monetary default, both with opportunity to cure, prior to acceleration of the balance of this Note.

It is further agreed that if this note be placed in the hands of an attorney for collection, for the purposes of being sued upon or established in any manner in any court, then in any of said events, Borrower, any endorsers and guarantors hereof, promise to pay Lender's or other holder's reasonable attorney's fees and costs of collection, which sums shall become a part of the principal hereof.

2

Initial for Identification

It is the intention of the parties hereto to comply with applicable usury laws; accordingly, notwithstanding any provision to the contrary in this note, or in any of the documents securing the payment hereof or otherwise relating hereto, in no event shall this note or such documents require the payment or permit the collection of interest in excess of the maximum amount permitted by such laws. If any such excess or interest is contracted for, charged or received under this note or under the terms of the documents securing the payment hereof, or otherwise relating hereto, or in the event the maturity of the indebtedness evidenced by this note is accelerated in whole or in part, or in the event that all or any part of the principal or interest of this note shall be prepaid, so that under any such circumstances the amount of interest contracted for, charged or received under this note or under any of the instruments securing the payment hereof or otherwise relating hereto, on the amount of principal actually outstanding from time to time under this note shall exceed the maximum amount of interest permitted by applicable usury laws, then in any such event (a) the provisions of this paragraph shall govern and control, (b) any such excess which may have been collected shall, at final maturity of said indebtedness, either be applied as a credit against the then unpaid principal amount hereof or refunded to Borrower, at Lender's option, and (c) upon such final maturity, the effective rate of interest shall automatically be reduced to the maximum lawful contract rate allowed under the applicable usury laws. Without limiting the foregoing, all calculations as to the rate of interest contracted for, charged or received under this note or under such other documents which are made for the purposes of determining whether such rate exceeds the maximum lawful contract rate shall be made, to the extent permitted by applicable usury laws, by amortizing, prorating, allocating and spreading, in equal parts, during the period of the full stated term of the loan evidenced hereby, all interest at any time contracted for, charged or received from Borrower or otherwise by Lender in connection with such indebtedness.

This note and the Maximum Rate of nonusurious interest applicable to the loan evidenced hereby shall be governed by the laws of the United States of America and the State of Texas in effect on the date of the loan evidenced hereby, and, to the extent allowed by law, as now or as may hereafter be in effect, but in any event Texas Finance Code Section 303.006, as same may be amended, modified or supplemented (which regulates certain revolving credit loan accounts) shall not apply to the loan evidenced hereby. Unless changed in accordance with law, the applicable method of calculating the usury ceiling rate under Texas law shall be the indicated (weekly) ceiling rate from time to time in effect, as provided in Texas Finance Code Section 303.002, as same may be amended, modified or supplemented.

It is further agreed that any funds at any time in the possession of any holder hereof, which belong to any Borrower, endorser or guarantor hereof, and any deposits or other sums at any time credited by or due from any holder hereof to any of the said parties and defined as collateral under the Deed of Trust (defined herein) shall be held and treated as additional security for the payment of this note, and the holder hereof, at the holder's option, may at any time without notice and without liability, apply such funds or deposits to any sums credited by or due from such holder against any sums owing, whether due or not, under this note and in any manner and in any order or preference which the holder, at the holder's sole discretion, chooses.

The Borrower, endorsers and guarantors hereof and all other persons who are or may become liable for all or any part of the obligations represented by this note shall be considered as principals as to the making of this note and shall have joint and several liability and, except at

3

Initial for Identification

provided herein or in the Deed of Trust, Borrower, endorsers and guarantors hereof severally waive presentment for payment, protest, notice of protest, notice of intention to accelerate, and of nonpayment, as to this note and as to each, every and all installments hereof, and consent to the renewal or extension of the time of payment hereof and to the release of all or any part of the security described herein or any person liable hereon upon the terms deemed by the holder hereof, in the holder's sole discretion, to be adequate. Any renewal or extension or release of any of such security or person may be made without notice to any of said parties and without affecting their liability.

If any installment or payment of principal or interest of this note is not paid when due; or if default occurs under any document, instrument or agreement executed in connection with or as security for this Note (the "Loan Documents," including without limitation the agreements described in the following paragraph of this note); or if Maker or any co-maker, drawer, accepter, endorser, guarantor, surety, accommodation party or other person now or hereafter primarily or secondarily liable upon or for payment of all or any part of this Note (each hereinafter called an "other liable party") dies or becomes insolvent (however such insolvency may be evidenced); or if any proceeding, procedure or remedy supplementary to or in enforcement of judgment is resorted to or commenced against Maker or any other liable party, or with respect to any property of any of them; or if any governmental authority or any court at the instance thereof takes possession of any substantial part of the property of or assumes control over the affairs or operations of, or a receiver is appointed for or takes possession of the property of, or a writ or order of attachment or garnishment is issued or made against any of the property of Maker or any other liable party; or if any indebtedness owing to Payee for which Maker or any other liable party is primarily or secondarily liable is not paid when due or becomes due and payable by acceleration of maturity thereof, or if any event or condition occurs which permits the holder of any such indebtedness to declare it due and payable upon the lapse of time, giving of notice or otherwise; or if any indebtedness for which Maker or any other liable party is primarily or secondarily liable is not paid when due or becomes due and payable by acceleration of maturity thereof, or if any event or condition occurs which permits the holder of any such indebtedness to declare it due and payable upon lapse of time, giving notice or otherwise; or if Maker or any other liable party (if other than a natural person) is dissolved, wound up, liquidated or otherwise terminated, or a party to any merger or consolidation without the written consent of Payee; or if Maker or any other liable party sells substantially all or an integral portion of its assets without the written consent of Payee; or if Maker or any other liable party fails to furnish financial or other information requested by Payee; or if Maker or any other liable party furnishes or has furnished any financial or other information or statements that are misleading in any material respect; thereupon, at the option of Payee, this Note and any and all other indebtedness of Maker to Payee will become and be due and payable forthwith without demand, notice of default, notice of intent to accelerate the maturity of this note, notice of acceleration of the maturity of this note, notice of nonpayment, presentment, protest or notice of dishonor, all of which are expressly waived by Maker and each other liable party, except for such notice of default as is expressly required by the Mortgage, if any. Payee's failure to exercise this option upon any default does not waive the right to exercise it in the event of any subsequent default.

The payment of this note is secured by (i) Deed of Trust, Security Agreement and Financing Statement (the "Deed of Trust") of even date herewith to TED A. COX, Trustee for the

4



Initial for Identification

benefit of Lender; (ii) Security Agreements that place a lien on the business assets; and (iii) Absolute Assignment of Rents dated of even date herewith executed by Borrower for the benefit of Lender, covering the following described real property and all improvements now or hereafter thereon:

**See Exhibit "A" attached hereto.**

The payment of this note is further secured by: Guaranty Agreements of even date herewith executed by TIMOTHY BARTON and JMJ DEVELOPMENT, LLC, for the benefit of Lender;

## WAIVER OF JURY TRIAL

EACH PARTY HERETO ACKNOWLEDGES THAT ANY DISPUTE OR CONTROVERSY BETWEEN OR AMONG BORROWER AND THE LENDER WOULD BE BASED ON DIFFICULT AND COMPLEX ISSUES OF LAW AND FACT AND WOULD RESULT IN DELAY AND EXPENSE TO THE PARTIES. ACCORDINGLY, TO THE EXTENT PERMITTED BY APPLICABLE LAW, LENDER AND BORROWER EACH HEREBY WAIVE ITS RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING OF ANY KIND OR NATURE IN ANY COURT OR TRIBUNAL IN WHICH AN ACTION MAY BE COMMENCED BY OR AGAINST ANY PARTY HERETO ARISING OUT OF THIS GUARANTY OR ANY OTHER LOAN DOCUMENT ORBY REASON OF ANY OTHER SUIT, CAUSE OF ACTION OR DISPUTE WHATSOEVER BETWEEN BORROWER AND THE LENDER OF ANY KIND OR NATURE RELATING TO ANY OF THE LOAN DOCUMENTS.

## NOTICE UNDER SECTION 26.02 OF THE TEXAS BUSINESS & COMMERCE CODE

A LOAN AGREEMENT IN WHICH THE AMOUNT INVOLVED IN THE LOAN AGREEMENT EXCEEDS $50,000.00 IN VALUE IS NOT ENFORCEABLE UNLESS THE AGREEMENT IS IN WRITING AND SIGNED BY THE PARTY TO BE BOUND OR BY THAT PARTY'S AUTHORIZED REPRESENTATIVE.

THE RIGHTS AND OBLIGATIONS OF THE PARTIES TO AN AGREEMENT SUBJECT TO SUBSECTION (b) OF SECTION 26.02 OF THE TEXAS BUSINESS & COMMERCE CODE SHALL BE DETERMINED SOLELY FROM THE WRITTEN LOAN AGREEMENT AND ANY PRIOR ORAL AGREEMENTS BETWEEN THE PARTIES ARE SUPERSEDED BY AND MERGED INTO THE LOAN AGREEMENT.

THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEOUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.



Initial for Identification

**BORROWER**:

**LDG001, LLC,**
**a Texas limited liability company**

    **By its Manager:**
    Carnegie Development, LLC,
    A Delaware limited liability company

        **By its Managing Member:**
        JMJ Development, LLC,
        A Texas limited liability company

By: _____
Name: Tim Barton
Title: Manager

6

Initial for Identification

Exhibit "A" – Legal Description

<u>Tract I:</u>

BEING a 154.93-acre tract of land situated in the B.B.B. & C.R.R. Co. Survey, Abstract No 93. Being part of that certain called 156-acre tract of land described in deed to Patrick M. Griffin, Stephen Griffin, Loretta Ann Griffin and Virginia Bone to LDG001, LLC, and recorded in Document No. 2018-24505 of the Deed Records of Johnson County, Texas, and a called 1.00 acre tract of land described in deed to LDG001, LLC, and recorded in Document No. 2018-32084 of the Deed Records of Johnson County, Texas, said 154.93 acre tract being more particularly described by meets and bounds as follows:

BEGINNING at a 1/2" iron rod found for corner at the Southwest corner of the B.B.B. & C.R.R. Co. Survey, the Northwest corner of the Jackson Smith Survey, Abstract No. 758 and being in the East line of Philip P. Barnes Survey, same being the Southwest corner of said 156 acre tract, the Northwest corner of Lot 2 of Plainview Acres, Phase 3, recorded in Volume 8, Page 248 of said Deed Recorded and also being in the East line of that certain called 94.26 acre tract of land described in deed to Harper Cattle, LLC and recorded in Volume 2304, Page 895, and also being at the intersection of County Road 213 (60' right-of-way) and County Road 110 (60' right-of-way);

THENCE North 30 Degrees 31 Minutes 39 Seconds West with said County Road 213, the West line of said 156-acre tract and the East line of said 94.26-acre tract, a distance of 2,640.00 feet to a point for corner at the Northwest corner of said 156-acre tract, the Southwest corner of that certain called 1.074-acre tract described in deed in deed to H.C. Griffin, recorded in Volume 1583, Page 241 of said Deed Records;

THENCE North 59 Degrees 28 Minutes 21 Seconds East, with the North line of said 156 acre tract and the South line of said 1.074 acre tract at a distance of 30.00 feet passing a 1/2" iron rod with plastic marked "SANDS" set for reference corner in said Right-of-Way and continuing a total distance of 869.98 feet to a 1/2" iron rod with plastic marked "SANDS" set for corner in the North line of said 156 acre tract, the East corner of said 1.074 acre tract and also being in the South line of G.C. & S.F. Railroad (100' wide Right-of-Way);

THENCE North 66 Degrees 32 Minutes 57 Seconds East, with the South line of said Railroad, a distance of 682.02 feet to a 1/2" iron rod with plastic cap marked "SANDS" set for corner in said South line at the beginning of a curve to the right;

THENCE in a Northeasterly direction with said curve to the right having a radius of 2,595.97 feet, whose chord bears North 70 Degrees 50 Minutes 32 Seconds East - 388.67 feet for an arc length of 389.03 feet to 1/2" iron rod with plastic cap marked "SANDS" set for corner in South line of said Railroad;

7

Initial for Identification

THENCE North 75 Degrees 08 Minutes 08 Seconds East, with said South line a distance of 756.88 feet to a 1/2" iron rod with plastic cap marked "SANDS" set for corner in the East line of said 156-acre tract and being in the West line of that certain called 184.887-acre tract of land conveyed to Billy C. Roten by deed recorded in Volume 1248, Page 742 of said Deed Records;

THENCE South 30 Degrees 31 Minutes 39 Seconds East, with the East line of said 156-acre tract and the West line of said 184.887-acre tract, at a distance of 2,245.02 feet passing a 1/2" iron rod with plastic marked "SANDS" set for reference in the North Right-of-Way of said County Road No. 110 and continuing a total distance of 2,275.02 feet a point for corner at the Southeast corner of said 156-acre tract and being in the Southerly edge of County Road 110 (60' right-of-way);

THENCE South 59 Degrees 28 Minutes 21 Seconds West, with said road and the South line of said 156-acre tract a distance of 860.80 feet a point for corner in said road and being at the Southeast corner of that certain called 1.00-acre tract of land described in deed to LDG001, LLC and continuing with said County Road 110 and the South line of said 156-acre tract, for a total distance of 2,656.62 feet to the POINT OF BEGINNING and containing 154.93 acres of land, more or less.

**Tract II:**

BEING a 47.86-acre tract of land situated in the Jackson Smith Survey, Abstract No. 758, Johnson County, Texas, being all of that certain called 47.5-acre tract of land described in deed to LDG001, LLC, and recorded in Document No. 2018-24505 of the Deed Records of Johnson County, Texas, said 47.86-acre tract to be more particularly described by meets and bounds as follows:

COMMENCING at a 1/2" iron rod found for corner at the Northwest corner of said Jackson Smith Survey, same being the Southwest corner of the B.B.B. & C.R. R. Co. Survey, Abstract No. 93 and being at the intersection of County Road No. 213 (601 right-of-way) with County Road No. 110 (60' right-of-way);

THENCE North 59 Degrees 28 Minutes 21 Seconds East, with the North line of said Jackson Smith Survey and the South line of said B.B.B. & C.R.R. Co. Survey and with County Road No, 110, a distance of 2,656.62 feet to a point for corner in the southerly line of said County Road 110, same being the Northwest corner of said 47-1/2 acre tract, the Northeast corner of that certain called 50 acre tract described in deed to Judith Louise Brown and recorded in Volume 3119, Page 27 of said Deed Records, the Southeast corner of that certain called 156 acre tract described in deed to Patrick M. Griffin and recorded in Volume 3130, Page 714 of said Deed Records and the Southwest corner of that certain called 184.887 acre tract described in deed to Bill C. Roten and recorded in Volume 1248, Page 472 of said Deed Records and being the POINT OF BEGINNING;

8

Initial for Identification

THENCE North 59 Degrees 28 Minutes 21 Seconds East, with the North line of said 47-1/2-acre tract and with said County Road 110 a distance of 843.25 feet to a point for corner at the Northeast corner of said 47-1/2-acre tract, the Northwest corner of that certain called 70.74 acres tract of land described in deed to Duane Schifano and recorded in Instrument No.201200024756 of said Deed Records and also being in the South line of said 184.887-acre tract;

THENCE South 30 Degrees 31 Minutes 39 Seconds East, with the East line of said 47-1/2 acre tract and the West line of said 70.74 acre tract at a distance of 30.00 feet passing a 1/2" iron rod with plastic cap marked "SANDS" set for reference and continuing for a distance of 1,721.56 feet, passing a 1" iron found for corner at the southwest corner of said 70.74 acre tract, same being the Northwest corner of that certain called 15.004 acre tract of land described in deed to RES Land Holding and recorded in Volume 3507, Page 398 of said Deed Records and continuing at a distance of 2,088.49 feet passing a 1" iron bar found for corner at the Southwest corner of said 15.004 acre tract, same being the Northwest corner of that certain called 0.78 acre tract of land described in deed to Daniel II, Vesper, Sr. and recorded in Instrument No. 201000011279 of said Deed Records and continuing at a distance of 2,443.17, feet passing a 1/2" iron rod with plastic cap marked "SANDS" set for reference and continuing a total distance of 2,472.17 feet to a point for corner at the Southeast corner of said 47.5 acre tract, the Southwest corner of said 0.78 acre tract, and being in County Road 109 (60' right-of- way) and also being in the North line of Southern Acres, Phase 1, an addition to Johnson County, Texas;

THENCE South 59 Degrees 28 Minutes 21 Seconds West, with the South line of said 47.5-acre tract and the North line of said Southern Acres a distance of 843.25 feet to a point for comer in said County Road 109 and being in the North line of that certain called Lot 2R-1, Block 1 of Harden Estates, an addition to Johnson County, Texas, according to the plat thereof recorded in Volume 10, Page 463 of said Deed Records, same being the Southeast corner of said above mentioned 50-acre tract;

THENCE North 30 Degrees 31 Minutes 39 Seconds West, with the West line of said 47-1/2-acre tract and the East line of said 50-acre tract, a distance of 2,472.17 feet to the POINT OF BEGINNING and containing 47.86 acres of land, more or less.

9

Initial for Identification