# Ex. B

## DEED OF TRUST, SECURITY AGREEMENT
## AND FINANCING STATEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

STATE OF TEXAS              §
                           §
COUNTY OF JOHNSON           §

**LDG001, LLC, a Texas limited liability company** (herein called "Grantor", whether one or more), for and in consideration of the indebtedness hereinafter described, has granted, bargained, transferred, sold and conveyed, and by these presents does grant, bargain, transfer, sell and convey in trust, unto **TED A. COX, Trustee** and unto Trustee's successors in this trust and Trustee's substitutes and assigns (herein called "Trustee"), forever, for the use and benefit of the Beneficiary (hereafter defined) all and singular the property hereinafter described situated in the County of Johnson, State of Texas, to wit:

(a) **See Exhibit "A" attached hereto.**

(b) all rights, titles, interest, estates, reversions and remainders now owned or hereafter acquired by Grantor in and to the Land and in and to all other properties covered hereby and all other lands now owned or hereafter acquired by Grantor abutting, adjacent or contiguous to the Land;

(c) all buildings and other improvements now or hereafter situated on the Land and in and to the properties covered hereby (herein sometimes called the "Improvements");

(d) all rights, titles and interest now owned or hereafter acquired by Grantor in and to all easements, licenses, streets and rights-of-way of every kind and nature adjoining, serving, belonging, appertaining or otherwise affording ingress and egress to the Land and all public or private utility connections thereto and all appurtenances, tenements, hereditaments, franchises, servitudes, rights, ways, privileges and prescriptions thereto;

(e) all goods, equipment, fixtures, furnishings, inventory, crops, other farm products, timber, shrubs and any other vegetation, and any and all other personal property of any kind or character defined in and subject to the applicable provisions of the Texas Business and Commerce Code as now adopted and existing and as it may hereafter be amended or succeeded (herein called the "Uniform Commercial Code") now owned or hereafter acquired by Grantor and now or hereafter affixed to, planted or grown on, located on or within, or severed from the Land or the Improvements, and any and all personal property purchased with a portion of the proceeds of the Note (hereinafter defined), regardless of the location of such property, and all replacements thereof, substitutions therefor, additions thereto, and proceeds and products thereof,

1

Initial for Identification

including without limitation, all rights, titles and interests of Grantor now owned or hereafter acquired in and to any of such personal property that may be subject to any title retention or security agreement superior in lien or security interest to the lien or security interest of this Mortgage, Security Agreement and Financing Statement (herein called "Mortgage");

(f) all rights and interests of Grantor now owned or hereafter acquired in and to (i) all contracts, subcontracts, building permits, and plans and specifications relating to the Improvements and all deposits, funds, accounts, contract rights, instruments, documents, general intangibles (including but not limited to, trademarks, trade names and symbols used in connection therewith), notes or chattel paper arising from or by virtue of any transactions relating to the Land or the Improvements; (ii) all right, title and interest of Grantor in and to any and all wastewater capacity reservations of any kind or character covering the Land or Improvements, issued or which may be issued by any governmental agencies having jurisdiction thereof, and all other rights relating to sewage, treatment capacity, water capacity and utilities serving the Land or Improvements, (said rights described in this subparagraph (iii) being collectively sometimes called "Utilities Rights"), permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Land or the Improvements; (iv) all proceeds and proceeds of proceeds arising from or by virtue of the sale, lease or other disposition of any of the real or personal property covered hereby;(v) all proceeds and proceeds of proceeds (including premium refunds) payable or to be payable under each policy of insurance relating to the Land or the Improvements; and (vi) all proceeds and proceeds of proceeds arising from the taking of all or any part of the Land or any rights appurtenant thereto, including, but not limited to, change of grade of streets, curb cuts or other rights of access, for any public or quasi-public use under any law, or by right of eminent domain, or by private or other purchase in lieu thereof (all of the items described in (e) and (f) inclusive, being herein called the "Goods"); and

(g) without limiting the foregoing, any and all rights, royalties, rents, revenues, profits, benefits, leases, contracts, accounts, general intangibles, money, instruments, chattel paper, insurance proceeds, documents, tenements, hereditaments, and appurtenances now owned or hereafter acquired by Grantor and appertaining to, generated from, arising out of or belonging to any of the foregoing (all of the foregoing items described in (a) through (g), inclusive, being herein called the "Mortgaged Property"). All of the Goods which constitute tangible personal property shall be deemed to be part of and affixed to the Land for all purposes to the maximum extent permitted by law.

TO HAVE AND TO HOLD the Mortgaged Property unto Trustee, and Trustee's successors in this trust, and Trustee's assigns, forever, to secure the payment of the Indebtedness (hereafter defined) and to secure the performance of the covenants, agreements, and obligations of the Grantor herein contained, and Grantor does hereby bind Grantor, and Grantor's respective heirs, personal representatives, successors and assigns, to warrant and forever defend the Mortgaged Property unto Trustee, and Trustee's successors and assigns, forever, against the claim or claims of all persons whomsoever claiming or to claim the same, or any part thereof.



Initial for Identification

## ARTICLE I:  INDEBTEDNESS SECURED

1.01   This conveyance is made in trust, however, to secure and enforce the payment and performance of all of the following obligations (herein collectively called the "Indebtedness"):

A.     All sums due or to become due pursuant to that one certain Promissory Note (herein called the "Note") of even date herewith, executed by **LDG001, LLC, a Texas limited liability company** (sometimes referred to herein as the "Borrower", whether one or more), payable to the order of **PIONEER FINANCE, INC., A TEXAS CORPORATION** (said party or any subsequent owner or holder of the Note being herein called "Beneficiary"), whose address is as specified below, in the original amount of **$3,000,000.00** bearing interest at the rate therein stated and finally maturing as stated therein, the Note providing that, if an uncured Event of Default occurs after applicable grace period or notice and failure to cure after applicable cure period, the unpaid principal thereof and all accrued unpaid interest thereon may, at Beneficiary's option, be declared due and payable prior to the stated maturity thereof and providing further for the payment of attorneys' fees and other expenses of collection under certain circumstances;

B.     All funds advanced by Beneficiary to or for the benefit of Borrower or Grantor pursuant hereto, pursuant to any other document securing, guaranteeing or relating to the Note; and

C.     All renewals, rearrangements, modifications and extensions for any of the foregoing.

1.02   The Indebtedness shall be payable at the address specified in the Note or at such other place as Beneficiary from time to time may hereafter designate in writing; and, unless otherwise expressly provided in the instruments evidencing the Indebtedness, all portions of the Indebtedness shall bear interest from the due date thereof until paid at the same rate per annum as provided in the Note for interest accruing on past due amounts; provided however, in no event shall Beneficiary compute the interest in a manner that would cause Beneficiary to contract for, charge or receive interest that would exceed the maximum legal contract rate of interest that Beneficiary may charge Grantor.

1.03 All payments received by Beneficiary, whether designated as payments of principal or interest, shall be applied to the principal or interest of the Indebtedness or to expenses provided for herein, or any combination of the foregoing, as directed by Beneficiary at Beneficiary's option, exercised in its sole discretion.

## ARTICLE II:  COVENANTS OF GRANTOR

2.1 In order to secure payment of the Indebtedness, and performance of Grantor's obligations hereunder, Grantor and Borrower covenant and agree with Beneficiary and with Trustee as follows:

A.     <u>Agreement to Pay Indebtedness.</u> Grantor or Borrower shall pay or cause there to be

3

Initial for Identification

paid when due all of the Indebtedness, together with the interest and all other charges accruing thereon and thereunder in accordance with the terms of the Note and all other instruments evidencing, securing or otherwise relating to the Indebtedness.

B.    Title to Mortgaged Property. Grantor represents and warrants that (1) Grantor has good and indefeasible title in fee simple to the Mortgaged Property, (2) unless otherwise herein provided, the Mortgaged Property is free from restrictions, easements, outstanding mineral or royalty interests, liens and security interests, and (3) Grantor has full right and authority to make this conveyance. Grantor agrees to maintain and preserve Grantor's legal existence and all related rights, franchises and privileges. If Grantor is an entity other than an individual, Grantor shall not amend its Articles of Organization or change its name or identity without Beneficiary's prior written consent, such consent not to be unreasonably withheld or delayed. For purposes hereof, the term "Articles of Organization" shall mean, as they exist on the date hereof, (a) Grantor's Articles of Incorporation and By-Laws, if Grantor is a corporation, (b) Grantor's Partnership Agreement or Joint Venture Agreement, if Grantor is a general partnership or joint venture, (c) Grantor's Limited Partnership Agreement and Certificate of Limited Partnership, if Grantor is a limited partnership or a registered limited liability partnership, (d) the Trust Agreement creating Grantor, if Grantor is a trust or (e) Grantor's Articles of Organization and Regulations, if Grantor is a limited liability company.

C.    Insurance. Grantor shall promptly obtain and deliver to Beneficiary insurance policies with premiums paid for at least one year in advance providing extended coverage for all Improvements and other property covered by this Mortgage against damage by fire, lightning and such other risks as Beneficiary shall require, all in amounts required by Beneficiary not exceeding 100% of full replacement cost of all Improvements and all other property covered by this Mortgage, such insurance to be written on a replacement cost form promulgated by the Texas State Board of Insurance and with companies approved by Beneficiary, with (1) loss made payable to Beneficiary pursuant to the standard mortgagee clause promulgated by the Texas State Board of Insurance, without contribution; (2) provision that (a) each of said policies shall not be terminated, reduced or limited, regardless of any breach of the representations and agreements set forth therein, and (b) no such policy shall be canceled, endorsed or amended to any extent unless the issuer thereof shall have first given Beneficiary at least thirty (30) days' prior written notice. In case Grantor fails to furnish such policies, Beneficiary, at Beneficiary's option, may procure such insurance at Grantor's expense, and Grantor further agrees to pay at Grantor's expense such reasonable placement fees, or charges and any other penalties assessed by Beneficiary in procuring such insurance. All renewal and substitute policies of insurance shall be delivered to the office of Beneficiary, premiums paid for at least one year, at least ten (10) days before expiration of the insurance protection to be replaced by such renewal or substituted policies. In case of loss, Beneficiary, at Beneficiary's option shall be entitled to receive and retain the proceeds of the insurance policies, applying the same toward payment of the Indebtedness in such manner as Beneficiary may elect, or at Beneficiary's option, Beneficiary may pay the same over wholly or in part to Grantor for the repair of the Improvements or for the erection of new improvements in their place, or for any other

4



Initial for Identification

purpose satisfactory to Beneficiary, but Beneficiary shall not be obligated to see to the proper application of any amounts so paid to Grantor. If Beneficiary elects to allow such payments to Grantor, disbursement shall be made on such terms and subject to such conditions as Beneficiary may specify, and any insurance proceeds in excess of the Indebtedness shall be refunded by Beneficiary to Grantor. Regardless of whether the insurance proceeds payable to Grantor are sufficient to pay the full costs of repair and restoration of the Mortgaged Property, Grantor shall promptly commence and carry out the repair, replacement, restoration and rebuilding of any and all of the Improvements damaged or destroyed so as to return same, to the extent practicable, to the same form and condition as existed immediately prior to such damage to or destruction thereof, with such modifications or additions as may be required to comply with applicable laws, ordinances, rules and regulations of all governmental agencies having jurisdiction thereof. Grantor shall not permit or carry on any activity within or relating to the Mortgaged Property that is prohibited by the terms of any insurance policy covering any part of the Mortgaged Property or which permits cancellation of or increase in the premium payable for any insurance policy covering any part of the Mortgaged Property. In the event of a foreclosure of this Mortgage, the purchaser of the Mortgaged Property shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Beneficiary pursuant to the provisions of this instrument. Regardless of the types or amounts of insurance required and approved by Beneficiary, Grantor shall assign and deliver to Beneficiary all policies of insurance that insure against any loss or damage to the Mortgaged Property, as collateral and further security for the payment of the Indebtedness. Grantor also shall obtain and maintain in force and effect at Grantor's expense such liability and other insurance policies and protection as Beneficiary from time to time may require.

D.     Taxes and Assessments. Except as provided for in Section 2.01 M. hereof, Grantor shall pay, when due, all taxes, assessments, ground rents, maintenance charges, all other charges and impositions (herein called the "Impositions") now or hereafter assessed, levied or otherwise charged against the Mortgaged Property, or any part thereof, and shall promptly furnish proof, satisfactory in form and substance to Beneficiary, of such payment. In the event of the passage after date of this Mortgage of any law, ordinance, or regulation, deducting from the Mortgaged Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of mortgages, deeds of trust, or indebtedness secured thereby, or the manner of the preparation of such taxes so as to affect the interest of Beneficiary, then and in such event, Grantor shall bear and pay the full amount of such taxes, unless the payment thereof by Grantor would be unlawful or if the payment thereof would constitute usury or render the Indebtedness wholly or partially usurious. If Grantor fails to pay any such taxes and assessments, Beneficiary may pay the same, together with all costs and penalties thereon, at Grantor's expense; provided, however, that if for any reason payment by Grantor or by Beneficiary of any such new or additional taxes would be unlawful or if the payment thereof would constitute usury or render the Indebtedness wholly or partially usurious, Beneficiary, at Beneficiary's option, may declare the unpaid Indebtedness with all accrued interest thereon to be immediately due and payable, or beneficiary, at Beneficiary's option, may pay the amount or portion of such taxes which

5



Initial for Identification

otherwise would render the Indebtedness unlawful or usurious, in which even Grantor shall concurrently therewith pay the remaining lawful and non-usurious portion or balance of said taxes. Grantor reserves the right to contest appraisals or other assessments made against the Mortgaged Property by applicable governmental authority, but such right shall not adversely affect Beneficiary's right to receive the escrow of taxes as provided for in Section 2.01 M. hereof.

E.      Eminent Domain. Grantor represents to Beneficiary that to Grantor's knowledge and belief no eminent domain proceedings affecting the Mortgaged Property or any part thereof are pending or threatened. In the event Grantor acquires knowledge or notice that any entity (public or private) having the right of eminent domain (herein called a "Condemning Authority") may or does intend to acquire or has threatened to institute or has instituted condemnation proceedings to acquire the Mortgaged Property, any part thereof or any interest therein, Grantor shall promptly give Beneficiary written notice of full details with regard thereto. Beneficiary shall be notified of and have the right to participate in all negotiations with any Condemning Authority and Grantor shall not grant to any Condemning Authority any right, title or interest in or to the Mortgaged Property or any part thereof (in lieu of eminent domain or condemnation proceedings or otherwise) without the prior written consent of Beneficiary to, and the joinder of Beneficiary with Grantor in, any such grant. Grantor has transferred and assigned, and does hereby transfer and assign unto Beneficiary (i) the full amount of and right to receive and be paid the full amount of all consideration and or damages for injury or damage to the Mortgaged Property paid or to be paid by an Condemning Authority for and, or, by virtue of the grant, in lieu of eminent domain or condemnation proceeding, of any right, title or interest in the Mortgaged Property, and (ii) all judgments, decrees and awards or payments for the taking of and, or, for injury or damage to the Mortgaged Property (including but not limited to all awards and judgments pursuant to any condemnation proceedings), including interest thereon, and Beneficiary shall apply all sums actually paid to and received by Beneficiary pursuant to any such grant, judgment, decree or award first to reimbursement of all costs and expenses (including but not limited to attorneys' fees) incurred by Beneficiary in connection with any such matters, and the balance shall be applied to the Indebtedness in such manner as Beneficiary may elect. Beneficiary shall have the right to participate in any such condemnation proceedings and upon an uncured Event of Default hereunder, Beneficiary is hereby authorized, in the name of Grantor, to direct the conduct of any such proceedings, compromise and settle any such proceedings and, or, to execute and deliver valid satisfactions of, and to appeal from, any award, judgment or decree in any such condemnation proceeding. If Beneficiary elects to allow a portion of the proceeds of any grant in lieu of threatened condemnation or condemnation proceedings to be paid to Grantor to be used in rebuilding, restoration or repair of the Mortgaged Property, then the disbursement of such proceeds shall be on such terms and subject to such conditions as Beneficiary and Grantor shall mutually agree. In the event that as a result of any grant in lieu of threatened condemnation or of any such judgment, decree or award and notwithstanding application by Beneficiary of the proceeds thereof in any manner herein provided, Beneficiary nevertheless determines that the payment of the Indebtedness or performance of any obligations under this Mortgage is impaired, Beneficiary, with notice

6



Initial for Identification

to Grantor, may declare all of the Indebtedness immediately due and payable.

F.      Agreement to Protect Mortgaged Property. Grantor shall keep the Mortgaged Property in first-class condition and presenting a first-class appearance, make promptly all repairs, renewals and replacements necessary to such end, prevent waste to any part of the Mortgaged Property, and do promptly all else necessary to such end; and Grantor shall promptly discharge or bond around all claims for labor performed and material furnished therefor, and shall not suffer any lien of mechanics or materialmen therefor to attach to any part of the Mortgaged Property. Grantor shall guard every part of the Mortgaged Property from removal, destruction and damage, and shall not do or suffer to be done any act whereby the value of any part of the Mortgaged Property may be lessened. No building, improvement or other property now or hereafter covered by the lien or security interest of this Mortgage shall be removed, demolished or materially altered or enlarged, nor shall any new building or other improvements be constructed, without the prior written consent of Beneficiary. Grantor shall not initiate, join in, or consent to any change in any private restrictive covenants, zoning ordinances or other public or private restrictions limiting or defining the uses that may be made of the Mortgaged Property or any part thereof without the prior express written consent of Beneficiary. Grantor at all times shall comply with and perform all obligations under any and all applicable laws, statutes, regulations, ordinances or restrictive covenants relating to the Mortgaged Property and the existence, use and operation thereof. With prior notice to Grantor and without unreasonably interfering with tenants in their enjoyment of the property and in their day-to-day operations, Beneficiary and Beneficiary's agents or representative shall have access to the Mortgaged Property at all reasonable times in order to inspect same and verify Grantor's compliance with Grantor's duties and obligations under this document. Grantor shall not, without the prior written consent of Beneficiary, engage in or permit any mining or drilling activities on the Land.

G.      Alienation of Interest in the Mortgaged Property. If, without the prior written consent of Beneficiary, (a) all or any part of the Mortgaged Property, or any interest therein, is sold, transferred or otherwise conveyed, or (b) any contract or instrument for the sale, transfer or conveyance of all or any part of the Mortgaged Property, or any legal, equitable; beneficial or other interest therein, is entered into, or (c) any substantial interest in Grantor ("substantial" meaning any interest of 25% or more of either the membership or ownership interest in the aggregate), whether beneficial, stockholding, partnership or otherwise, is sold, conveyed, mortgaged, pledged or otherwise transferred or encumbered, or (d) any lien or encumbrance is hereafter created or arises covering all or any part of the Mortgaged Property, or any interest therein, or all or any part of the Mortgaged Property, or any interest therein, is hereafter pledged or encumbered in any manner, or (e) any easement, right-of-way or any other right whatsoever with respect to the Mortgaged Property, is hereafter created or granted, or (f) all or any portion of the Mortgaged Property, or any interest therein, is leased or possession thereof is transferred, for any purpose, including, without limitation, one or more oil, gas or other mineral leases, for a period longer than one (1) year except in the ordinary course of business and at then market rates (any of the above being hereinafter called a "Transfer" or collectively "Transfers"), and irrespective of whether any such Transfers are done directly or

7



Initial for Identification

indirectly, voluntarily or involuntarily, by written instrument (whether or not filed for record), by operation of law or otherwise, then Beneficiary may, at its option, declare all or part of the Indebtedness immediately due and payable, and Beneficiary shall be entitled to exercise any and all rights and remedies provided under this Mortgage and under any other document securing payment of the Indebtedness or executed in connection therewith. Grantor shall immediately notify Beneficiary in writing of any Transfer (herein called "Transfer Notice") by certified mail, postage prepaid, return receipt requested, addressed to Beneficiary at the address set out herein (or to such other address as Beneficiary may have designated by notice to Grantor). The consent of Beneficiary to any Transfer may be given or withheld for any reason in the exercise of Beneficiary's sole and absolute discretion. Without limiting the foregoing or being limited thereby, Beneficiary's consent (1) may be withheld even though the Transfer will not (i) jeopardize or impair the security for the Indebtedness or Beneficiary's ability or right to enforce its liens and security interests against such security, or (ii) increase the risk of default in the payment of Indebtedness hereunder, or (iii) increase in the likelihood that Beneficiary may have to resort to other collateral for the payment of the Indebtedness, or (iv) release or discharge any person or party liable, directly or indirectly, for the payment of the Indebtedness, and (2) may be conditioned upon, any one or more of, (a) an increase in the rate of interest payable on the Indebtedness to a rate acceptable to Beneficiary or the rearrangement or acceleration of the payment of the Indebtedness or any part thereof, (b) the payment to Beneficiary of a reasonable transfer fee, in an amount determined by Beneficiary, and all costs and expenses, including, without limitation, attorneys' fees, incurred by Beneficiary in connection with the transfer or the giving of its consent, (c) the assumption or guarantee of the Indebtedness or any part thereof, by any party determined by Beneficiary to be necessary or desirable, (d) the payment of any part of the Indebtedness or the pledge of additional collateral to secure the payment thereof, or (e) the amendment, modification, rearrangement or other change in any of terms and provisions of any document evidencing the Indebtedness, or any part thereof, or in any of the terms and provisions of any document securing the payment of the indebtedness or any part thereof. The option of Beneficiary may be exercised at any time after the occurrence of the Transfer and until one (1) year after receipt by Beneficiary of said Transfer Notice; and if no such Transfer Notice is received by Beneficiary, then there shall be no limitation on the period of time within which Beneficiary may exercise said option.

H.    Successors.    In the event the ownership of the Mortgaged Property or any part thereof becomes vested in a person other than Grantor, Beneficiary, at Beneficiary's option, may deal with such successor or successors in interest with reference to this Mortgage, the Mortgaged Property and the Indebtedness in the same manner and to the same extent as with Grantor, without in any way vitiating or discharging Grantor's liability hereunder or upon the Indebtedness. No sale of the Mortgaged Property and no forbearance on the part of Beneficiary, or extension of the time for the payment of the Indebtedness, shall operate to release, discharge, modify, change or affect, either in whole or in part, any liability of Grantor or the liability of the guarantors or sureties of Grantor or of any other party liable for payment of the Indebtedness.

8

Initial for Identification

I.      Application of Payments. In the event any part of the indebtedness is not secured by this Mortgage, all payments hereafter made by Grantor, Borrower or any other person shall be applied first to the part of the Indebtedness not so secured until such part is paid in full. In the event any lien or security interest securing part of the Indebtedness does not cover or apply to all of the Mortgaged Property, then all payments paid hereunder by Grantor, Borrower or any other person shall be applied first to the part of such Indebtedness which is not secured by all of the Mortgaged Property and then to that part which is so secured by all of the Mortgaged Property.

J.      [Intentionally omitted].

K.      Advances Part of Indebtedness. To the extent that any advance of funds by Beneficiary is used to pay any indebtedness secured by an outstanding lien, security interest, charge or encumbrance against the Mortgaged Property or any part thereof, such funds have been advanced by Beneficiary at Borrower's or Grantor's request, shall constitute a part of the Indebtedness, and Beneficiary shall be subrogated to any and all rights, power, equities, liens and security interests owned or granted to any owner or holder of such indebtedness, irrespective of whether said security interests, liens, charges of encumbrances are transferred to Beneficiary or are released of record.

L.      Additional Documents. Grantor agrees that Grantor shall execute and deliver such other and further reasonable documents and do and perform such other acts as may be reasonably necessary and proper in Beneficiary's judgment to carry out the intention of the parties as herein expressed and to effect the purposes of this document and the loan transaction referred to herein. Without limitation of the foregoing, Grantor agrees to execute and deliver such documents as may be necessary to cause the liens and security interests granted hereby to cover and apply to any property placed in, on or about the Mortgaged Property in addition to, or replacement or substitution for, any of the Mortgaged Property, and to execute and deliver such documents requested by Beneficiary as Beneficiary may deem necessary or desirable to transfer to Beneficiary Grantor's Utilities Rights.

M.      Escrow Funds. Unless otherwise not required by Beneficiary, in order to further secure the payment of the Indebtedness, and to further secure Grantor's obligation to timely pay the Impositions for calendar year 2021 and 2022 and pay premiums due on insurance policies (the "Premiums") required hereunder, Grantor has deposited with Beneficiary the sum of ___-0-___ (the "Escrow Funds"). Beneficiary shall use the Escrow Funds to pay the Impositions for 2013 and the Premiums for required hazard insurance on the Land. Grantor hereby conveys, pledges, transfers and grants to Beneficiary a security interest pursuant to the Texas Uniform Commercial Code in and to all Escrow Funds, as same may increase or decrease from time to time, for the purpose of securing Grantor's obligations under this Mortgage. In order to further secure the Indebtedness, Grantor shall pay to Beneficiary, in addition to all amounts of principal, interest and other sums required to be paid by the terms of the Note, this Mortgage or any other instruments evidencing, securing or otherwise relating to the Indebtedness, on the 1st day of each calendar month beginning on January 1, 2022, and on the first day of each month

9



Initial for Identification

thereafter until the Indebtedness shall be paid in full, a sum determined from time to time by Beneficiary to be equal to 1/12th of (i) all Impositions, as herein defined, and (ii) all Premiums. Beneficiary shall not be required to post any bond for any such amount so deposited with it by Grantor and shall not be required to pay any interest or other compensation for or on account of any such sums so deposited with it. Likewise, Beneficiary shall not be liable for any failure to pay any such taxes or other charges or premiums for which deposit has not been made with it pursuant to the foregoing provisions. Beneficiary may use and invest any such sums so deposited with it without any duty or obligation to compensate Grantor for the use thereof or for any profit or benefit therefrom realized by Beneficiary. If the amount of the deposits paid to Beneficiary are insufficient to pay all of the Impositions and the Premiums as and when same become due, Beneficiary may, but shall have no obligation to notify Grantor of the amount of such deficiency and, if so notified, Grantor shall deposit the full amount necessary to satisfy such deficiency with Beneficiary within five (5) days after its receipt of such notice of deficiency. Any sale and conveyance of the Mortgaged Property shall serve as a transfer by Grantor to the grantee of the Mortgaged Property of all of its rights to any sums then held by Beneficiary pursuant to the terms of this paragraph. Beneficiary shall have the right, at its option and without being required to do so, to advance its own funds for the purpose of paying any of the Impositions or the Premiums and any such amounts so paid shall bear interest from the date advanced at the maximum lawful rate of interest permitted by applicable law, now or hereafter mentioned, until the full amount thereof shall be paid in full and all such sums so advanced shall constitute a part of the Indebtedness and shall be secured by this Mortgage, Grantor hereby grants to Beneficiary a security interest in and right of set off against any and all funds so held by Beneficiary in order to additionally secure the payment and performance of the Indebtedness and Grantor's observance of the covenants in this Mortgage and any other instruments securing the payment of the Indebtedness or relating thereto and Beneficiary shall be entitled, at any time and without notice, demand or presentment to Grantor, to set off all or any part of such funds in said account against any sums then due and payable on the Indebtedness in such manner, order or priority, as determined by Beneficiary. In the event of a Default (as hereinafter defined) resulting in foreclosure, such conversion of such amounts so deposited with Beneficiary to the exclusive and sole ownership of Beneficiary shall be automatic without the necessity of any action on the party of the Beneficiary.

N.    Financials. Grantor shall furnish to Beneficiary annually, and at any other time upon Beneficiary's request, an itemized list of all tenants or lessees of any portion of the Property including the amount of rental each such tenant or lessee is paying. Grantor shall keep proper books and records of accounts in accordance with generally accepted accounting principles and set aside on Grantor's books from its earnings for each fiscal year reserves for depreciation, depletion, obsolescence and amortization of Grantor's properties during such fiscal year as determined in accordance with generally accepted accounting principles consistently applied and all other proper reserves, similarly determined, which should be set aside from such earnings in connection with Grantor's business. Beneficiary shall have the right to examine the books of account of the Grantor, to reasonably discuss the non-confidential affairs, finances and accounts of the Grantor

10

Initial for Identification

and also the Mortgaged Property and Grantor's operation thereof, and to be informed as to the same by Grantor's officers or other duly authorized representatives, all at such times designated by Beneficiary. Grantor shall further furnish from time to time to Beneficiary, upon written request, copies of balance sheets of Grantor, copies of statements of income and retained earnings of Grantor, and copies of statements of changes in financial position of Grantor, covering such periods of time and containing such reasonable detail as Beneficiary shall from time to time request, prepared and certified by a person or firm acceptable to Beneficiary.

O.    Non-Homestead Property.   Grantor represents and agrees that no part of the Mortgaged Property constitutes or shall constitute any part of Grantor's members' or owners' business, residential, urban or rural homestead.

P.    Grantor's Statement.  Grantor, at any time and from time to time, shall furnish promptly upon request, a written statement or affidavit, in such form as may be required by Beneficiary, stating the unpaid balance of the Note and that there are no offsets or defenses against full payment of the Note and performance of the terms hereof or of any document securing payment of the Note or executed in connection therewith, or if there are any such offsets and defenses, specifying them in reasonable detail.

Q.    Compliance with Laws.   Grantor shall comply with all laws, ordinances, rules and regulations of all governmental or quasi-governmental agencies relating to the Mortgaged Property or any part thereof and shall secure and maintain in full force and effect all contracts, franchises, permits and licenses necessary or desirable for the construction and/or the efficient operation of the Improvements and/or business conducted on the Mortgaged Property.

R.    Attorney's Fees.   Grantor shall reimburse Beneficiary and Trustee for all reasonable attorneys' fees and other reasonable and necessary costs and expenses of any kind which either of them may incur in connection with any legal proceedings or matters related to the Indebtedness including, but not limited to, condemnation proceedings, probate proceedings or bankruptcy proceedings.

S.    Mineral Exploration.   Grantor shall not, without the prior written consent of Beneficiary, engage in or permit any person to conduct geologic and geophysical surveys, or investigate, explore, prospect, drill, mine for or produce, store, treat or transport oil, gas and all other minerals or engage in activities related thereto on the Land.

T.    Appraisals. Upon an event of default by Borrower, Grantor hereby agrees that Beneficiary shall be entitled to obtain at any time, and from time to time, when deemed appropriate by Beneficiary (but no more frequently than annually if there is no Default and only then if required by Beneficiary's federal regulatory agency), a current appraisal of the Mortgaged Property from an appraiser, or appraisers, chosen by Grantor from a list of appraisers approved by Beneficiary. The reasonable cost and expenses of such appraisals shall be paid by grantor herein within ten (10) days of the date an invoice thereof is mailed to Grantor at the address of Grantor as provided in Section 6.01 G

11

Initial for Identification

hereof. In the event Grantor fails to fully pay such invoice within such ten (10) days, Beneficiary may (i) pay the same at Grantor's expense, in which case the amount thereof shall be advanced and included as a portion of the Indebtedness pursuant to Section 1.01 B hereof, and or (ii) Beneficiary may declare the same to be a Default pursuant to Section 3.01 B hereof.

U.    Environmental Indemnity.    The terms "hazardous waste", "hazardous substance", "disposal", "release", and "threatened release", as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "Hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum byproducts or any fraction thereof and asbestos. Grantor represents and warrants to Beneficiary that: (a) during the period of Grantor's ownership of the Mortgaged Property, Grantor has not and will not cause or allow, and Grantor will use best efforts to ensure that there will not occur any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, or about the Mortgaged Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Beneficiary in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance by any prior owners or occupants of the Mortgaged Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) except as previously disclosed to and acknowledged by Beneficiary in writing, (i) neither Grantor nor any tenant, contractor, Agent or other authorized user of the Mortgaged Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, or about the Mortgaged Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor further represents and warrants to Beneficiary that Grantor has no knowledge of or reason to believe that there have been or currently are any underground storage tanks located under the Mortgaged Property. With prior notice to Grantor and without unreasonably interfering with tenants in their enjoyment of the property and in their day-to-day operations, Grantor authorizes Beneficiary and its agents to enter upon the Mortgaged Property to make such inspections and tests as Beneficiary may deem appropriate to determine compliance of the Mortgaged Property with this section of the Mortgage. Any inspections or tests made by Beneficiary shall be for Beneficiary's purposes only and shall occur without unreasonably interfering with tenants in their enjoyment of the property and in their day-to-day operations and shall not be construed to create any responsibility or liability on the part of Beneficiary to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Mortgaged Property for hazardous waste. Grantor hereby (a) releases

12



Initial for Identification

and waives any future claims against Beneficiary for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Beneficiary against any and all claims, losses, liabilities, damages, penalties, and expenses which Beneficiary may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Mortgaged Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive any reconveyance of the lien of this Mortgage and shall not be affected by Beneficiary's acquisition of any interest in the Mortgaged Property, whether by foreclosure or otherwise; provided, however, Grantor's obligation to indemnify Beneficiary under this section shall be released by Beneficiary at such time as Grantor shall pay the Indebtedness in full and concurrent with said final payment, Grantor shall provide to Beneficiary a then current Phase I environmental report at Grantor's sole cost and expense, issued by an environmental inspection firm acceptable to Beneficiary which shows there is no hazardous waste and no hazardous materials in, on or under the Mortgaged Property.

V.    Reserve  Replacement Agreement.    If, at any  time, Beneficiary  determines, in Beneficiary's sole judgment, that reserves necessary to keep the Mortgaged Property in the condition agreed to herein (including but not limited to those requirements set forth in paragraph 2.01(F) herein) are not being kept by Grantor, Grantor agrees to execute a Reserve Replacement Agreement ("Reserve Replacement Agreement") in a form and substance acceptable to Beneficiary upon Beneficiary's request. Thereafter, Grantor agrees to deposit with Beneficiary in accordance with the Reserve Replacement Agreement, the periodic amounts reasonably agreed by Beneficiary and Lender as sufficient to perform periodic maintenance and repairs to the Mortgaged Property.

W.    No Additional Indebtedness. Grantor shall not, and shall not permit any of its Subsidiaries, to incur, create, contract, waive, assume, have outstanding, guarantee or otherwise become, directly or indirectly, liable for any Additional Indebtedness (as hereinafter defined) exceeding, in sum, a combined total of $50,000.00, without the prior written consent of Beneficiary. "Additional Indebtedness" shall mean any and all new debt or obligations for which Grantor becomes liable after the effective date hereof, other than the indebtedness arising out of this Agreement.

2.2    If, while this Mortgage is in force, the title of Trustee to the Mortgaged Property, or any part thereof, or any interest therein, shall be endangered or shall be attacked directly or indirectly, Grantor hereby authorizes Beneficiary, at Grantor's reasonable cost and expense, to take all necessary and proper steps for the defense of said title, including the employment of counsel, the prosecution or defense of litigation, and the compromise or discharge of any such claims made against said title.

2.3    All costs, expenses, and reasonable attorneys' fees incurred in performing and complying with Grantor's covenants herein shall be borne solely by Grantor.  The sum of each

13



Initial for Identification

such payment shall be added to the Indebtedness and thereafter shall form a part of the same and shall be secured by this Mortgage. Beneficiary shall be automatically subrogated to all the rights of the person, corporation, or body politic receiving such payment made by Beneficiary.

2.4    Subject only to the terms of existing non-disturbance agreements, in the event that there be a trustee's sale hereunder, and, if at the time of such sale, Grantor, or Grantor's heirs, personal representatives, successors or assigns, is or are occupying the Mortgaged Property so sold, each and all shall immediately surrender and deliver possession of the Mortgaged Property so sold to the purchaser at such sale, and in the event of their failure to do so, they shall thereupon become the tenant of the purchaser at such sale, which tenancy shall be a tenancy at sufferance, terminable at the will of such purchaser as landlord, at a rental per day determined by such purchaser, such rental to be due and payable daily to such purchaser. An action of forcible entry and detainer and any other legal proceedings may be brought by any purchaser if the tenant holds over after a demand in writing for possession of any of the Mortgaged Property; and this Mortgage and the trustee's deed delivered at such sale shall constitute the lease and agreement under which any such tenant's possession arose.

2.5    The covenants herein contained shall inure to the benefit of Beneficiary and Trustee, their respective heirs, personal representatives, successors and assigns, and shall be binding upon the respective heirs, personal representatives, successors and assigns of Grantor and any other party now or hereafter liable for payment of the Indebtedness, but nothing in this paragraph shall constitute an authorization for Grantor to sell, transfer, lease or in any way dispose of the Mortgaged Property or any part thereof if otherwise prohibited by any of the terms hereof.

## ARTICLE III: DEFAULT AND REMEDIES

3.1    The term "Default" or "Event of Default" as used in this Mortgage shall mean the occurrence of one or more of the following and the continuing existence of said Default or Event of Default after applicable grace period or notice and failure to cure after applicable cure period as provided for herein:

A.    Grantor or Borrower shall fail, refuse or neglect to promptly pay all Indebtedness due and payable under the Note, under this Mortgage, the Loan Agreement or under any instrument relating to or securing the payment of the Indebtedness or any part thereof, as the same shall become due and payable;

B.    Grantor or Borrower shall fail to materially keep and perform (or shall fail to furnish evidence of the performance of) any of the covenants or agreements contained herein or in the Note or in any other document evidencing, securing payment of, or otherwise relating to the Indebtedness;

C.    Grantor or Borrower, or any other person liable for the Indebtedness, or any portion thereof, files a voluntary petition in bankruptcy or for corporate reorganization, makes an assignment for the benefit of any creditor, or is the subject of an Order of Relief entered in any bankruptcy, insolvency, reorganization, rehabilitation or

14

Initial for Identification

other such proceeding, and such petition, assignment or proceeding is not dismissed within sixty (60) days after taking effect, and in said event, Grantor shall not be entitled to any notice or right to cure from Beneficiary;

D.    The Mortgaged Property or any property owned by a person now or hereafter liable for payment of the Indebtedness, or any interest therein or portion thereof, is placed under control or in the custody of any court or receiver and such petition, assignment or proceeding is not dismissed within sixty (60) days after taking effect;

E.    Grantor or Borrower or the general partner of either, if applicable, shall default in payment of sums due under obligations for borrowed money, whether to Beneficiary or otherwise, or an event of default shall occur which, with or without the giving of notice or passage of time, or both, will permit the holder of any such obligations to accelerate the maturity date thereof;

F.    Incapacity, dissolution, termination, cessation of business, merger or similar event affecting Grantor or Borrower or any other party now or hereafter liable for payment of the Indebtedness or any part thereof or any material adverse change in the business, operations or financial condition of Grantor or Borrower or any other party now or hereafter liable for payment of the Indebtedness or any part thereof;

G.    Occurrence of any condition, no matter how caused, which renders it impossible for Grantor or Borrower to comply fully in a timely manner with the provisions hereof or of any other documents evidencing, securing payment of, or relating to, the Indebtedness;

H.    Beneficiary discovers that any statement, representation, or warranty in the Note, this Mortgage or in any other document or instrument delivered to or relied upon by Beneficiary in connection with the Indebtedness is intentionally false, intentionally misleading or materially and adversely erroneous in any respect;

I.    Grantor or Borrower admits in writing Grantor's inability to pay its debts generally as they become due;

J.    Grantor abandons any of the Mortgaged Property for a period of time greater than twenty-one (21) consecutive days;

K.    If anyone applies for or consents to the appointment of a custodian, trustee, or liquidator of Grantor (or any of them) or of any guarantor of or surety for the performance of any obligation hereunder or of all or a substantial part of Grantor's assets, and such petition, assignment or proceeding is not dismissed within sixty (60) days after taking effect;

L.    Grantor or Borrower institutes or voluntarily is or becomes a party to any judicial proceedings intended to effect a discharge of the debts of Grantor or Borrower (or any of them) or of any guarantor or surety, in whole or in part, or to effect a

15

Initial for Identification

postponement of the maturity or the collection thereof or to effect a suspension of any of the rights or powers of Beneficiary granted in the Note, this Mortgage or in any other document or instrument evidencing or security payment of the Indebtedness, and such petition, assignment or proceeding is not dismissed within sixty (60) days after taking effect and in said event, Grantor shall not be entitled to any notice or right to cure from Beneficiary;

M.    An order, judgment or decree shall be entered by any court of competent jurisdiction appointing a trustee, custodian or liquidator of Grantor (or any of them) or of any guarantor or surety or of all or any substantial part of the assets of Grantor (or any of them) or any such guarantor or surety shall fail to pay any money judgment against it at least thirty (30) days prior to the date on which the assets of Grantor (or any of them) or any such guarantor or surety may be sold to satisfy such judgment;

N.    If Grantor (or any of them) or any such guarantor or surety, shall fail to have discharged within a period of thirty (30) days after the commencement thereof any attachment, sequestration, or similar proceeding against any assets of Grantor (or any of them), or of any guarantor or surety, or if any of the assets of Grantor (or any of them) or of any such guarantor or surety are levied upon, sequestered, garnished, attached or otherwise seized by or through any similar process.

Upon the occurrence of any Event of Default and after applicable notice and failure to cure as provided for herein, Beneficiary, at Beneficiary's option, and without notice of intention to accelerate, notice of acceleration or notice of any kind or nature whatsoever, demand or presentment, all of which are hereby expressly waived by Grantor and any and all other parties liable with respect to the Indebtedness or any part thereof, to the extent not prohibited by law, may declare the entire unpaid Indebtedness (other than interest therein which has not yet accrued) immediately due and payable, whereupon it shall be so due and payable, and may exercise or invoke all rights and remedies granted hereunder or in any other instrument securing payment of or relating to the Indebtedness and all rights and remedies available at law or in equity.

3.2    In addition, upon the occurrence of any Event of Default, after applicable grace period or notice and failure to cure after applicable cure period, Beneficiary shall have the option, without declaring the entire Indebtedness due, to proceed with foreclosure either through the courts or by directing Trustee to proceed as if under a full foreclosure, conducting the sale as hereinafter provided. Such sale may be made subject to the unmatured portion of the Note or other Indebtedness without any effect thereon, but as to such unmatured portion of the Note or other Indebtedness, this Mortgage shall remain in full force and effect just as though no sale had been made under the provisions of this paragraph. In addition, several sales may be made hereunder without exhausting the right of sale for any unmatured portion of the Note or other Indebtedness, it being the intention of the parties hereto to provide for a foreclosure and sale of the security for any matured portion of the Indebtedness without exhausting the power to foreclose and to sell the security for any other portion of the Indebtedness whether matured at the time or subsequently maturing.

16

Initial for Identification

3.3     Upon the occurrence of any Event of Default, Grantor hereby authorizes and empowers Trustee, at any time thereafter, at the request of Beneficiary (which request is hereby conclusively presumed), to sell at public venue the Mortgaged Property or any part thereof, or any interest therein, to the highest bidder, for cash, at the area of the County courthouse in which the Land (or any part thereof to be sold) is situated, as designated by the Commissioner's Court of such County as the area in which foreclosure sales are to take place, as evidenced by the designation of such area recorded in the real property records of the County in which the Land (or any part thereof to be sold) is situated, and, if no area is so designated, then in the area designated in the Notice of Sale as being the area for foreclosure sales to take place, between the hours of 10:00 a.m. and 4:00 p.m. of the first Tuesday of any month, after Trustee, or Trustee's Agent, has given notice of the time, place and terms of said sale, and the property to be sold (such property in this Section 3.03 being called the "Posted Mortgaged Property"), by posting (or by having any person acting for Trustee post) for at least twenty-one (21) days preceding the date of the sale, written notice of the proposed sale at the Courthouse door of said County in which the Posted Mortgaged Property is situated and as otherwise required by the applicable provisions of the Texas Property Code, as then amended. If the Posted Mortgaged Property is in more than one County, one such notice of sale shall be posted at the Courthouse door of each County in which part of the Posted Mortgaged Property is situated and the Posted Mortgaged Property may be sold at the courthouse door of any one of such counties, and the notice so posted shall designate in which County the Posted Mortgaged Property shall be sold. In addition to such posting of notice, Trustee (or any person acting for Trustee), at least twenty-one (21) days preceding the date of the sale, shall file a copy of such written notice of the proposed sale in the office of the County clerk of the County in which the sale is to be made, and if the Posted Mortgaged Property is situated in more than one County, a copy of such written notice of sale shall be so filed in the office of the County clerk of each County in which any of the Posted Mortgaged Property is situated. In addition to such posting and filing of notice, Beneficiary (or any person acting for Beneficiary), at least twenty-one (21) days preceding the date of the sale, shall serve written notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness according to records of Beneficiary and as otherwise required by the applicable provision of the Texas Property Code, as then amended. Service of such notice shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to such debtor at said debtor's most recent address as shown by the records of Beneficiary, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. Grantor agrees that no notice of any sale other than as set out in this paragraph need be given by Trustee, Beneficiary or any other person. Grantor designates as Grantor's address for the purposes of such notice, the address set out below, and each other debtor, if any, obligated to pay the Indebtedness agrees that such address shall likewise constitute such other debtor's address for such notice, unless a different address is designated by such other debtor; no change of such address or designation of a different address shall be binding on Beneficiary until fifteen (15) days after Beneficiary has received notice of such change sent to Beneficiary by certified mail postage prepaid, return receipt requested, addressed to Beneficiary at the address for Beneficiary set out herein (or to such other address as Beneficiary may have designated by notice given as above provided to Grantor and such other debtors). Any change of address of Beneficiary shall be effective fifteen (15) business days after written notice thereof addressed to Grantor and sent by regular United

17

Initial for Identification

States mail, postage prepaid, has been deposited in the care and custody of the United States Postal Service. Grantor authorizes and empowers Trustee to sell the Posted Mortgaged Property, or any part thereof (which partial sale shall be governed by Section 3.08 hereof) or any interest therein, as an entirety or in parcels, by one sale or by several sales held at one time or at different times as the Trustee shall deem advisable at the time of sale, and to execute and deliver to the purchaser or purchasers thereof good and sufficient deed or deeds of conveyance thereof and bills of sale with covenants of general warranty binding on Grantor and Grantor's heirs, personal representatives, successors and assigns. Trustee making such sale shall receive the proceeds thereof and shall apply the same as follows: (i) Trustee shall pay, in addition to the reasonable attorneys' fees provided for in the Note, the reasonable expense of executing this trust, including a commission to Trustee of five percent (5%) of the gross proceeds of the sale; (ii) after paying such expenses, Trustee shall pay so far as may be possible the Indebtedness (other than interest thereon which has not yet accrued), discharging first that portion of the Indebtedness arising under the covenants or agreements herein contained and not evidenced by the Note; and (iii) Trustee shall pay the residue, if any, to Grantor, Grantor's respective heirs, personal representatives, successors or assigns. Payment of the purchase price to Trustee shall satisfy the obligation of the purchaser at such sale therefor, and such purchaser shall not be bound to look after the application thereof. Notwithstanding the foregoing, if any person or party other than the then owners of the Mortgaged Property shall notify Beneficiary or Trustee of a claim to said sums or any part thereof prior to disbursement thereof by Trustee, then Trustee or Beneficiary or both of them at their option, may interplead all or any part of said funds into a court of competent jurisdiction, and in such event, Beneficiary and Trustee each shall be entitled to recover from such sums so deposited an amount equal to the attorneys' fees and other costs and expenses incurred by them or either of them, in connection with such proceeding, to the full extent permitted by all applicable laws.

3.4     Grantor hereby ratifies and confirms any and all acts that Trustee shall do lawfully by virtue hereof. Grantor hereby agrees, on behalf of Grantor and Grantor's respective heirs, personal representatives, successors and assigns, that the recitals contained in any deed or deeds or other instrument executed in due form by any Trustee, acting under the provisions of this instrument, shall be prima facie evidence of the facts recited, and that it shall not be necessary to prove in any court, otherwise than by such recitals, the existence of the facts essential to authorize the execution and delivery of such deed or deeds or other instrument and the passing of title thereby, and all prerequisites and requirements of any sale or sales shall be conclusively presumed to have been performed, and all persons subsequently dealing with the Mortgaged Property purported to be conveyed by such deed or deeds or other instrument, including without limitation, the purchaser or purchasers thereof, shall be fully protected in relying upon the truthfulness of such recitals. Trustee, acting in accordance with the terms hereof, shall not be personally liable for any action taken pursuant hereto.

3.5     Beneficiary may bid, and being the highest bidder therefor, become the purchaser of any or all of the Mortgaged Property at any trustee's or foreclosure sale hereunder and shall have the right to credit the amount of the bid upon the unpaid amount of the Indebtedness in lieu of cash payment. Grantor waives the benefit of any right of discharge under Chapter 34 of the Texas Business and Commerce Code and all other rights of sureties and grantors under such Chapter and under any amendments, remodifications, supplements or any successor statute or

18

Initial for Identification

law of or to any such statute or law. Grantor waives all rights and defenses under Sections 51.003, 51.004 and 51.005 of the Texas Property Code and under any amendments, remodifications, supplements or any successor statute or law of or to any such statute or law. Grantor waives all rights and defenses arising under Rule 31 of the Texas Rules of Civil Procedure, Section 17.001 of the Texas Civil Practice and Remedies Code, Chapter 34 of the Texas Business and Commerce Code, and under any amendments, recodifications, supplements or any successor statute or law. The Grantor waives marshalling of assets and liabilities, sale in inverse order of alienation, and all other defenses given to sureties and grantors under any statute, common law, law in equity or otherwise other than actual payment of the indebtedness and performance of the actions constituting the Obligations.

3.6    The purchaser at any trustee's or foreclosure sale hereunder may disaffirm any easement granted, or lease or other agreement made in violation of any provision of this Mortgage and may take immediate possession of the Mortgaged Property free from and notwithstanding the terms of, such grant of easement, lease or other agreement.

3.7    Upon the occurrence of an Event of Default by Grantor as set out in Section 3.01, Beneficiary may, without limitation of any other rights or remedies of Beneficiary, exercise the rights and remedies set forth in an Absolute Assignment of Rents dated of even date herewith executed by Grantor in favor of Beneficiary.

3.8    The sale or sales by the Trustee of less than the whole of the Mortgaged Property shall not exhaust the power of sale herein granted, and the Trustee is specifically empowered to make successive sale or sales, under such power, of such portion of or interest in the Mortgaged Property and in such order as Trustee may determine until the whole of the Mortgaged Property shall be sold; and if the proceeds of such sale or sales of less than the whole of such Mortgaged Property shall be less than the aggregate of the Indebtedness and the expense of executing this trust, this Mortgage shall remain in full force and effect as to the unsold portion of the Mortgaged Property just as though no sale or sales had been made; provided, however, that Grantor shall never have the right to require that the Mortgaged Property be sold, as an entirety or in parcels, but Beneficiary shall have the right, as a matter of Beneficiary's sole discretion, to request the Trustee to sell the Mortgaged Property as an entirety or to sell any portion of or interest in the Mortgaged Property. In addition, if any sale hereunder is not completed or is defective in the opinion of Beneficiary, such sale shall not exhaust the power of sale hereunder, and Beneficiary shall have the right to have a subsequent sale or sales to be made by the Trustee.

3.9    In the event Trustee mails, files and/or posts the notices of foreclosure sale as required hereunder, Beneficiary may decide not to proceed with a foreclosure sale on the date set forth in such notice, and such decision shall in no manner prevent Beneficiary from directing the Trustee to give notice of a foreclosure sale, as provided herein, at any future date, nor effect a waiver of any of Beneficiary's rights and remedies hereunder. Further, in the event a foreclosure sale is commenced hereunder by Trustee, Beneficiary, at any time prior to the completion of such sale, may direct such Trustee to abandon the sale and may thereafter institute suit for foreclosure of any of the liens and security interests created by this Mortgage. If Beneficiary shall so elect to institute a suit for collection of the Indebtedness or any part thereof and for foreclosure of the liens and security interests evidenced hereby, it is agreed further that

19

Initial for Identification

Beneficiary, at any time before entry of final judgment, may cause such suit to be dismissed and thereafter direct and require that Trustee proceed to sell the Mortgaged Property, or any part thereof, in accordance with the terms hereof, including but not limited to, the terms of Section 3.03 hereof and the terms of the Uniform Commercial Code, as herein provided.

3.10   Each and all of the rights, powers and remedies hereunder are cumulative of and in addition to all other rights, powers and remedies herein contained or contained in any other instrument or document evidencing, securing or otherwise relating to the Indebtedness or which Beneficiary may have under all applicable laws. None of the terms and provisions hereof and no action or omission by or on behalf of Beneficiary shall ever make Beneficiary a trustee for, or otherwise create a trust, partnership or other fiduciary relationship between, Beneficiary and Grantor.

## ARTICLE IV:  SUBSTITUTE AND SUCCESSOR TRUSTEE

4.1   If Trustee shall die or become disqualified from acting in the execution of this trust, or shall fail or refuse to execute the same when requested by Beneficiary so to do, or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee to act instead of the herein named Trustee, Beneficiary shall have full power to appoint, at any time and without any formality other than by written instrument recorded in the appropriate real property records prior to the trustee's taking any action hereunder, executed by Beneficiary, a substitute trustee, and, if desired by Beneficiary, several substitute trustees in succession, each of whom shall succeed to all the estate, rights, powers and duties of Trustee named herein, and no notice of such appointment need be given to Grantor or to any other person or filed for record in any public office. Such appointment may be executed by Beneficiary or any Agent of Beneficiary and, if Beneficiary is a corporation or other entity, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any executive officer of the corporation or otherwise.

## ARTICLE V: DEFEASANCE

5.1   All of the covenants and agreements of Grantor herein shall survive the execution and delivery of this document and shall continue in force until an express written release hereof is executed by Beneficiary. Accordingly, if Grantor shall perform faithfully each and all of the covenants and agreements herein contained and shall pay the Indebtedness in full, and shall satisfy all obligations secured hereby, then, and then only, this conveyance shall be promptly released upon Grantor's written request and at Grantor's expense, by documentation in form and substance satisfactory to Beneficiary. No release of this conveyance or the lien thereof shall be valid unless executed by Beneficiary.

## ARTICLE VI: SECURITY AGREEMENT

6.1   To further secure the payment and performance of the Indebtedness and Grantor's observance of the covenants of this Mortgage and any other instruments securing the payment of the Indebtedness or relating thereto, Grantor hereby grants a security interest to Beneficiary in and to all the Goods (all of the Goods and the proceeds and products thereof being herein called

20

Initial for Identification

the "Collateral", provided, however, (a) the mention of proceeds of collateral herein shall not be construed as an authorization for the sale or surrender by Grantor of the Collateral, and (b) the term Collateral as used in this Article VII shall be included in the term "Mortgaged Property" when used in this Mortgage). This document shall constitute a security agreement as well as a mortgage and Mortgage. The following applies with respect to the Collateral:

A.    In addition to and cumulative of any other remedies granted in this Mortgage to Beneficiary, Beneficiary, upon default hereunder, may proceed under Chapter 9 of the Uniform Commercial Code as to all or any part of the Collateral and shall have and may exercise with respect to all or any part of the Collateral all of the rights, remedies and powers of a secured party under the Uniform Commercial Code, including, without limitation, the right and power to repossess, retain and sell, at public or private sale or sales, or otherwise dispose of, lease or utilize the Collateral or any part thereof and dispose of the proceeds and products in any manner authorized or permitted under the applicable provisions of the Uniform Commercial Code, and to apply the proceeds and products thereof toward payment of Beneficiary's attorneys' fees and other expenses and costs of pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral thereby incurred by Beneficiary, and toward payment of the Indebtedness in such order and manner as Beneficiary may elect consistent with the provisions of the Uniform Commercial Code. Nothing in this <u>Article VI</u> shall be construed to impair or limit any other right or power to which Beneficiary may be entitled at law or in equity.

B.    Among the rights of Beneficiary upon default and acceleration of the Indebtedness pursuant to the provisions hereof, and without limitation, Beneficiary shall have the right (but not the obligation), without being deemed guilty of trespass and without liability for damages thereby occasioned, and to the extent such may now or hereafter be permitted under Texas law (i) to enter upon any Mortgaged Property where the Collateral may be situated and take possession of the collateral, or render it unusable, or dispose of the Collateral on Grantor's Mortgaged Property, and Grantor agrees not to resist or to interfere, and (ii) to take any action deemed necessary or appropriate or desirable by Beneficiary at Beneficiary's option and in Beneficiary's discretion, to repair, refurbish or otherwise prepare the Collateral for sale, lease or other use or disposition as herein authorized. Beneficiary, at Beneficiary's discretion, may require Grantor to assemble the Collateral and make it available to Beneficiary at a place designated by Beneficiary that is reasonably convenient to both parties.

C.    Beneficiary shall give Grantor notice, by certified mail, postage prepaid, of the time and place of any public sale of any of the collateral or of the time after which any private sale or other intended disposition thereof is to be made by sending notice to Grantor at the address of Grantor as specified below at least five (5) days before the time of the sale or other disposition, which provisions for notice Grantor and Beneficiary agree are reasonable and shall fully satisfy any requirement for giving of any such notice;



Initial for Identification

Case 3:22-cv-02118-X    Document 349-2    Filed 10/06/23    Page 23 of 33    PageID 12687

notwithstanding the foregoing, Grantor further agrees that, upon the occurrence of an Event of Default, Beneficiary may sell or otherwise dispose of all or any part of the Mortgaged Property which is subject to the Uniform Commercial Code in the manner provided therein or as provided in this Mortgage, or under both the Uniform Commercial Code and this Mortgage, as Beneficiary may determine, and any and all proceeds received at any such sale shall be applied in the manner set forth in Section 3.03 hereof.

D.      To the extent such now or hereafter may be permitted under Texas law, Beneficiary is authorized to execute and file financing statements and continuation statements under the Uniform Commercial Code with respect to the collateral without joinder of Grantor in such execution or filing. Grantor shall execute and deliver to Beneficiary such financing statements, continuation statements and other documents relating to the Collateral or any portion thereof as Beneficiary may reasonably request from time to time to preserve and maintain the priority of the security interest created by this Mortgage and shall pay to Beneficiary on demand any expenses and attorneys' fees incurred by Beneficiary in connection with the preparation, execution, filing and perfection and continuation of the liens and security interest of this Mortgage and of any financing statements, continuation statements, partial releases, termination statements or other documents necessary or desirable to continue or confirm Beneficiary's security interest, or any modification thereof, and in connection with any Uniform Commercial Code searches performed by Beneficiary. This document or any reproduction of this document may be filed by Beneficiary and shall be sufficient as a financing statement. All or part of the collateral is or is to become fixtures on the real estate constituting a portion of the Mortgaged Property, but this statement shall not impair or limit the effectiveness of this document as a security agreement or financing statement for other purposes, and, without limitation of any other provision hereof, this Mortgage shall constitute a fixture financing statement and, as such, shall be filed for record in the real estate records of each county in which the Land, or any part thereof, is located. Grantor shall not change Grantor's name, identity or structure without the prior express written consent of Beneficiary. The name of the record owner of the Land is the party or parties defined herein as Grantor.

E.      Grantor represents that, except for the security interest granted hereby in the collateral, Grantor is the owner of the Collateral free of any adverse claim, security interest or encumbrance, and Grantor shall defend the Collateral against all claims and demands of any person at any time claiming the same or any interest therein. Grantor has not heretofore signed any financing statement and no financing statement signed by Grantor is now on file in any public office except those statements, true and correct copies of which have been delivered to Beneficiary. So long as any amount remains unpaid on the Indebtedness, Grantor shall not execute and there shall not be filed in any public office any such financing statement or statements affecting the Collateral other than financing statements in favor of Beneficiary hereunder unless the express prior written

Initial for Identification

consent and approval of the Beneficiary shall have first been obtained.

F.      The security interest granted herein shall not be construed or deemed to constitute Beneficiary or Trustee as a trustee or mortgagee in possession of the Mortgaged Property so as to obligate Beneficiary or Trustee to lease the Mortgaged Property or attempt to do the same, or take any action, incur any expenses or perform or discharge any obligation, duty or liability with respect to the Mortgaged Property or any part thereof or otherwise.

G.      Grantor's address is as stated below and Beneficiary's address is as stated below. Either party may notify the other of a new address in the manner specified in Section 3.03 above.

6.2      Grantor does hereby further grant and assign to Beneficiary a security interest in, general lien upon and/or right of set-off against: (i) all deposits, deposit accounts and other sums now or at any time hereafter credited by or due from Beneficiary to Grantor; (ii) all monies, instruments, securities, documents, chattel paper, credits, claims, demands and any other property, rights and interest of Grantor which at any time shall come into the possession or custody or under the control of Lender or any of its agents or affiliates, for any purpose; and, (iii) the proceeds, products and accessions of and to any of the foregoing, as security for the payment and performance of the Indebtedness and Grantors' observance of the covenants of this Mortgage and any other instruments securing the payment of the Indebtedness or relating thereto. In the event of any Default, Beneficiary, at its option, at any time thereafter and without notice, demand or presentment to Grantor, may hold all or any part of any such deposits or other sums until the Indebtedness shall have been paid in full, or may apply or set-off all or any part of such deposits or sums credited by or due from Beneficiary to or against any sums then due on the Indebtedness in any manner and in such order of preference as Beneficiary, in its sole discretion, shall determine.

## ARTICLE VII: MISCELLANEOUS

7.1      In the event Beneficiary shall elect to invoke any of the rights or remedies provided for herein, but shall thereafter determine to withdraw or discontinue same for any reason, Beneficiary shall have the unqualified right to do so, whereupon all parties shall be automatically restored and returned to their respective positions regarding the Indebtedness and this Mortgage as shall have existed prior to the invocation of Beneficiary's rights hereunder and the rights, powers and remedies of Beneficiary hereunder shall be and remain in full force and effect.

7.2      Any part of the Mortgaged Property, or any interest therein, may be released by Beneficiary without affecting Beneficiary's liens, security interests and other rights against the remainder of the Mortgaged Property. The lien, security interest and other rights hereby granted shall not affect or be affected by any other security taken or acquired by the Beneficiary or the Indebtedness or any part thereof. The taking of additional security, or the modification, extension or renewal of the Indebtedness or any part thereof, shall at no time release or impair the liens, security interests and the rights granted hereby, or affect the liability of any endorser, guarantor,

23

Initial for Identification

surety, or any other party liable on the Indebtedness, or improve the right or priority of any junior lien holder; and this Mortgage, as well as any instrument given to secure any modification, renewal or extension of the Indebtedness, or any part thereof, shall be and remain a first and prior lien and security interest on all of the Mortgaged Property not expressly released.

7.3    The invalidity, or unenforceability in particular circumstances, of any provision of this Mortgage shall not extend beyond such provision or such circumstances and no other provision of this Mortgage shall be affected thereby. It is the intention of the parties hereto to comply with the applicable usury laws, now or hereafter enacted (herein called "Applicable Laws"); accordingly, notwithstanding any provisions to the contrary in the Note, in any document evidencing or securing the Indebtedness, in this Mortgage or in any document securing payment of the Indebtedness or otherwise relating thereto, in no event shall the Note or such documents require the payment or permit the collection of interest in excess of the maximum amount permitted by such Applicable Laws. If any such excess of interest is contracted for, charged or received, under the Note or any document evidencing the Indebtedness, under this Mortgage or under the terms of any of the other documents securing payment of the Indebtedness or otherwise relating thereto, or in the event the maturity of any of the Indebtedness is accelerated in whole or in part, or in the event that all or part of the principal or interest of the Indebtedness shall be prepaid, so that under any of such circumstances, the amount of interest contracted for, charged or received, under the Note or any document evidencing the Indebtedness, under this Mortgage or under any document securing payment of the Indebtedness or otherwise relating thereto, on the amount of principal actually outstanding from time to time under the Note and other document evidencing or securing the Indebtedness, shall exceed the maximum amount of interest permitted by the Applicable Laws, then in any such event: (a) the provisions of this paragraph shall govern and control, (b) neither Grantor nor any other person or entity now or hereafter liable for the payment of the Note or any document evidencing the Indebtedness shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by the Applicable Laws, (c) any such excess that may have been collected shall be either applied as a credit against the then unpaid principal amount hereof or refunded to Grantor, at the Beneficiary's option, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under the Applicable Laws. Without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under the Note, or any document evidencing the Indebtedness, under this Mortgage or under such other documents that are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by the Applicable Laws, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the loans evidenced by the Note or the documents evidencing the Indebtedness, all interest at any time contracted for, charged or received from Grantor or otherwise by Beneficiary in connection with such loans.

7.4    Beneficiary may accept any payment tendered by Grantor or Borrower after the due date of such payment or after acceleration of maturity of the Indebtedness and may apply the same to the principal, interest thereon or attorneys' fees and expenses of collection, or any combination thereof, as determined by Beneficiary, whether such payment was designated as a payment of principal, interest or otherwise; any such acceptance of a late payment shall not constitute a waiver of the rights of Beneficiary thereafter to accelerate the maturity of the

24

Initial for Identification

Indebtedness because of such default and foreclose the liens securing the payment thereof or, if the maturity of the Indebtedness has theretofore been accelerated, such acceptance of late payment shall not constitute a reinstatement of the indebtedness or otherwise affect the rights of Beneficiary to proceed with foreclosure of the lien securing the payment thereof. It is expressly agreed that (i) no waiver of any default on the part of Grantor or breach of any of the provisions of this Mortgage shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers, and likewise no exercise or enforcement of any rights or powers hereunder shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time; (ii) any failure by Beneficiary to insist upon the strict performance by Grantor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Beneficiary, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Grantor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Beneficiary, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Grantor of any and all of the terms and provisions of this Mortgage; (iii) neither Grantor nor any other person now or hereafter obligated for the payment of the whole or any part of the Indebtedness shall be relieved of such obligation by reason of the failure of Beneficiary or Trustee to comply with any request of Grantor, or of any other person so obligated, to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured by this Mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the Indebtedness, or by reason of the subordination in whole or in part by Beneficiary of the lien, security interest or other rights evidenced hereby, or by reason of any agreement or stipulation with any subsequent owner or owners of the Mortgaged Property renewing or extending the time of payment or modifying the terms of the Indebtedness or this Mortgage without first having obtained the consent of Grantor or such other person, and in the latter event, Grantor and all such other persons shall continue liable to make such payments according to the terms of any such agreement of renewal, extension or modification unless expressly released and discharged in writing by Beneficiary; (iv) regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien or security interest on the Mortgaged Property, Beneficiary may release the obligation of anyone at any time liable for any of the Indebtedness or any part of the security held for the Indebtedness and may renew or extend the time of payment or otherwise modify the terms of the documents evidencing or securing the Indebtedness or this Mortgage without impairing or affecting the lien or security interest of this Mortgage or the priority of such lien or security interest over any subordinate lien or security interest; (v) the holder of any subordinate lien or security interest shall have no right to terminate any leases affecting the Mortgaged Property whether or not such lease be subordinate to this Mortgage; and (vi) Beneficiary may resort for the payment of the Indebtedness to any security therefor held by Beneficiary in such order and manner as Beneficiary may elect.

7.5    The terms and provisions of this Mortgage shall be governed by and construed in accordance with the laws of the state of Texas.

7.6    Time is of the essence in the performance of this Mortgage.

25

Initial for Identification

7.7     Wherever used in this document, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the words "Mortgage" shall mean this Mortgage, Security Agreement and Financing Statement and any modifications, renewals or supplements hereto, the word "Grantor" shall mean Grantor, Grantor's heirs, personal representatives, successors and assigns, and/or any subsequent owner or owners of the Mortgaged Property, or any part thereof or any interest therein, the word "Beneficiary" shall mean Beneficiary and/or any subsequent transferee, assignee, owner or holder of the Note or any interest therein at the time in question, the word "Note" shall mean the Note secured by this Mortgage and any renewals, extensions and rearrangements thereof, the word "person" shall mean an individual, corporation, trust, partnership, joint venture or unincorporated association, and the pronouns of any gender shall include the other genders, and either the singular or plural shall include the other. In the event that the person who is the maker of the Note (herein called "Borrower") is not the same person as the Grantor, all terms and provisions of this Mortgage shall apply to and be binding on the Borrower, as well as the Grantor notwithstanding any term or provision contained herein to the contrary.

7.8     This Mortgage, together with any related documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

7.9     Notwithstanding anything to the contrary contained in this Mortgage, if any person executing this Mortgage is a "consumer" as defined in Regulation AA of the Board of Governors of the Federal Reserve System, 12 C.F.R. Part 227, or the Federal Trade Commission Credit Practices Act, 16. C.F.R. Part 444, as applicable, no lien or security interest created or evidenced by this Mortgage shall extend to or cover a nonpossessory lien or security interest in "household goods", other than a purchase money lien or security interest, in accordance with such regulations as applicable.

7.10     Grantor agrees that Grantor and Borrower shall perform and observe all of their covenants and agreements as set forth in a Loan Agreement ("Loan Agreement") of even date herewith between Grantor and Beneficiary and acknowledges that this Mortgage shall also secure performance of all obligations of Grantor thereunder. Grantor agrees that a default under the Loan Agreement shall constitute an Event of Default under this Mortgage.

7.11     Additional Funds - To the extent that the total sum advanced according to the Note hereby secured exceeds the total balance of any prior liens on the Mortgaged Property being paid-off hereby and the total balance owed on the Notes being renewed and extended herein, such difference, if any, represents the reasonable closing costs incident to the indebtedness evidenced by the Note hereby secured, and each Grantor herein acknowledges that the advancement of such closing costs by the Lender is necessary to the preservation of and solely for the benefit of such grantor's retention of the property hereby secured. In the event any portion of the sums intended to be secured by this Mortgage cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

7.12     Other Indebtedness/Cross Default. This Mortgage secures payment of all other

26

Initial for Identification

indebtednesses, of whatever kind or character, now owing or that may hereafter become owing by Grantor, Maker and/or any Guarantor to Beneficiary, including but not limited to any referred to herein, whether such indebtedness is evidenced by note, open account, over draft, endorsement, surety agreement, guaranty, or otherwise. This Mortgage shall secure, in addition to the indebtedness and/or obligations described herein, the payment and performance of all other indebtednesses and obligations of whatever kind and character ( except solely any indebtedness which is prohibited from being secured hereby under any applicable law of the State of Texas or the United States of America), owing or which may hereafter become owing or to be performed by any one or more of the Grantors, as Debtors/Obligors to Beneficiary, whether such indebtednesses or obligations are evidenced by a note, open account, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtednesses or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed or contingent or otherwise, whether such indebtednesses or obligations were originally owed to Beneficiary or to be performed for Beneficiary or owed to or to be performed for other and acquired by purchase or otherwise by any Beneficiary, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Property, it being contemplated that one or more of the present or future Grantors or Debtors/Obligors may now or hereafter be or become indebted or obligated to Beneficiary in further sum or sums; and Grantors further agree that if any default ever occurs under any instrument, document or other writing whatsoever now or hereafter evidencing or securing any indebtedness now or hereafter secured by this Mortgage, then, jn any such event, Beneficiary may, at its option, (without demand, notice of any such default or event, notice of intent to accelerate maturity, notice of acceleration of maturity, presentment for payment or acceleration or any other act or notice whatsoever), declare immediately due and payable any and all indebtednesses then secured hereby.

7.13    Any Collateral pledged to Beneficiary to secure any obligation of Grantor or Guarantors shall also secure any other obligation of Grantor or Guarantors to Lender.

27

Initial for Identification

EXECUTED this, the ___*24th*___ day of March, 2022.

**GRANTOR**:

**LDG001, LLC,**
**a Texas limited liability company**

By its Manager:
Carnegie Development, LLC,
A Delaware limited liability company

By its Managing Member:
JMJ Development, LLC,
A Texas limited liability company

By: _____
Name: Tim Barton
Title: Manager

STATE OF TEXAS           §
                         §
COUNTY OF *DALLAS*        §

This instrument was acknowledged before me on the *24th* day of March, 2022, by TIM BARTON, acting as Manager of JMJ Development, LLC, a Texas limited liability company, acting as Managing Member of Carnegie Development, LLC, a Delaware limited liability company, acting as Manager of **LDG001, LLC, a Texas limited liability company**, in his capacity therein.

_____
Notary Public, State of Texas



R A Blanshard
Notary Public, State of Texas
My Comm. Exp. 08/16/2024
Notary ID 135379-7

**AFTER RECORDING RETURN TO:**
Pioneer Finance Inc.
13310 University Blvd, Suite 100,
Sugar Land, TX 77479

28

Initial for Identification

**Exhibit "A" – Legal Description**

<u>Tract I:</u>

BEING a 154.93-acre tract of land situated in the B.B.B. & C.R.R. Co. Survey, Abstract No 93. Being part of that certain called 156-acre tract of land described in deed to Patrick M. Griffin, Stephen Griffin, Loretta Ann Griffin and Virginia Bone to LDG001, LLC, and recorded in Document No. 2018-24505 of the Deed Records of Johnson County, Texas, and a called 1.00 acre tract of land described in deed to LDG001, LLC, and recorded in Document No. 2018-32084 of the Deed Records of Johnson County, Texas, said 154.93 acre tract being more particularly described by meets and bounds as follows:

BEGINNING at a 1/2" iron rod found for corner at the Southwest corner of the B.B.B. & C.R.R. Co. Survey, the Northwest corner of the Jackson Smith Survey, Abstract No. 758 and being in the East line of Philip P. Barnes Survey, same being the Southwest corner of said 156 acre tract, the Northwest corner of Lot 2 of Plainview Acres, Phase 3, recorded in Volume 8, Page 248 of said Deed Recorded and also being in the East line of that certain called 94.26 acre tract of land described in deed to Harper Cattle, LLC and recorded in Volume 2304, Page 895, and also being at the intersection of County Road 213 (60' right-of-way) and County Road 110 (60' right-of-way);

THENCE North 30 Degrees 31 Minutes 39 Seconds West with said County Road 213, the West line of said 156-acre tract and the East line of said 94.26-acre tract, a distance of 2,640.00 feet to a point for corner at the Northwest corner of said 156-acre tract, the Southwest corner of that certain called 1.074-acre tract described in deed in deed to H.C.
Griffin, recorded in Volume 1583, Page 241 of said Deed Records;

THENCE North 59 Degrees 28 Minutes 21 Seconds East, with the North line of said 156 acre tract and the South line of said 1.074 acre tract at a distance of 30.00 feet passing a 1/2" iron rod with plastic marked "SANDS" set for reference corner in said Right-of-Way and continuing a total distance of 869.98 feet to a 1/2" iron rod with plastic marked "SANDS" set for corner in the North line of said 156 acre tract, the East corner of said 1.074 acre tract and also being in the South line of G.C. & S.F. Railroad (100' wide Right-of-Way);

THENCE North 66 Degrees 32 Minutes 57 Seconds East, with the South line of said Railroad, a distance of 682.02 feet to a 1/2" iron rod with plastic cap marked "SANDS" set for corner in said South line at the beginning of a curve to the right;

THENCE in a Northeasterly direction with said curve to the right having a radius of 2,595.97 feet, whose chord bears North 70 Degrees 50 Minutes 32 Seconds East -

29

Initial for Identification

388.67 feet for an arc length of 389.03 feet to 1/2" iron rod with plastic cap marked "SANDS" set for corner in South line of said Railroad;

THENCE North 75 Degrees 08 Minutes 08 Seconds East, with said South line a distance of 756.88 feet to a 1/2" iron rod with plastic cap marked "SANDS" set for corner in the East line of said 156-acre tract and being in the West line of that certain called 184.887-acre tract of land conveyed to Billy C. Roten by deed recorded in Volume 1248, Page 742
of said Deed Records;

THENCE South 30 Degrees 31 Minutes 39 Seconds East, with the East line of said 156-acre tract and the West line of said 184.887-acre tract, at a distance of 2,245.02 feet passing a 1/2" iron rod with plastic marked "SANDS" set for reference in the North Right-of-Way of said County Road No. 110 and continuing a total distance of 2,275.02 feet a point for corner at the Southeast corner of said 156-acre tract and being in the Southerly edge of County Road 110 (60' right-of-way);

THENCE South 59 Degrees 28 Minutes 21 Seconds West, with said road and the South line of said 156-acre tract a distance of 860.80 feet a point for corner in said road and being at the Southeast corner of that certain called 1.00-acre tract of land described in deed to LDG001, LLC and continuing with said County Road 110 and the South line of said 156-acre tract, for a total distance of 2,656.62 feet to the POINT OF BEGINNING and containing 154.93 acres of land, more or less.

## Tract II:

BEING a 47.86-acre tract of land situated in the Jackson Smith Survey, Abstract No. 758, Johnson County, Texas, being all of that certain called 47.5-acre tract of land described in deed to LDG001, LLC, and recorded in Document No. 2018-24505 of the Deed Records of Johnson County, Texas, said 47.86-acre tract to be more particularly described by meets and bounds as follows:

COMMENCING at a 1/2" iron rod found for corner at the Northwest corner of said Jackson Smith Survey, same being the Southwest corner of the B.B.B. & C.R. R. Co. Survey, Abstract No. 93 and being at the intersection of County Road No. 213 (601 right-of-way) with County Road No. 110 (60' right-of-way);

THENCE North 59 Degrees 28 Minutes 21 Seconds East, with the North line of said Jackson Smith Survey and the South line of said B.B.B. & C.R.R. Co. Survey and with County Road No, 110, a distance of 2,656.62 feet to a point for corner in the southerly line of said County Road 110, same being the Northwest corner of said 47-1/2 acre tract, the Northeast corner of that certain called 50 acre tract described in deed to Judith Louise Brown and recorded in Volume 3119, Page 27 of said Deed Records, the

30

Initial for Identification

Southeast corner of that certain called 156 acre tract described in deed to Patrick M. Griffin and recorded in Volume 3130, Page 714 of said Deed Records and the Southwest corner of that certain called 184.887 acre tract described in deed to Bill C. Roten and recorded in Volume 1248, Page 472 of said Deed Records and being the POINT OF BEGINNING;

THENCE North 59 Degrees 28 Minutes 21 Seconds East, with the North line of said 47-1/2-acre tract and with said County Road 110 a distance of 843.25 feet to a point for corner at the Northeast corner of said 47-1/2-acre tract, the Northwest corner of that certain called 70.74 acres tract of land described in deed to Duane Schifano and recorded in Instrument No.201200024756 of said Deed Records and also being in the South line of said 184.887-acre tract;

THENCE South 30 Degrees 31 Minutes 39 Seconds East, with the East line of said 47-1/2 acre tract and the West line of said 70.74 acre tract at a distance of 30.00 feet passing a 1/2" iron rod with plastic cap marked "SANDS" set for reference and continuing for a distance of 1,721.56 feet, passing a 1" iron found for corner at the southwest corner of said 70.74 acre tract, same being the Northwest corner of that certain called 15.004 acre tract of land described in deed to RES Land Holding and recorded in Volume 3507, Page 398 of said Deed Records and continuing at a distance of 2,088.49 feet passing a 1" iron bar found for corner at the Southwest corner of said 15.004 acre tract, same being the Northwest corner of that certain called 0.78 acre tract of land described in deed to Daniel II, Vesper, Sr. and recorded in Instrument No. 201000011279 of said Deed Records and continuing at a distance of 2,443.17, feet passing a 1/2" iron rod with plastic cap marked "SANDS" set for reference and continuing a total distance of 2,472.17 feet to a point for corner at the Southeast corner of said 47.5 acre tract, the Southwest corner of said 0.78 acre tract, and being in County Road 109 (60' right-of- way) and also being in the North line of Southern Acres, Phase 1, an addition to Johnson County, Texas;

THENCE South 59 Degrees 28 Minutes 21 Seconds West, with the South line of said 47.5-acre tract and the North line of said Southern Acres a distance of 843.25 feet to a point for corner in said County Road 109 and being in the North line of that certain called Lot 2R-1, Block 1 of Harden Estates, an addition to Johnson County, Texas, according to the plat thereof recorded in Volume 10, Page 463 of said Deed Records, same being the Southeast corner of said above mentioned 50-acre tract;

THENCE North 30 Degrees 31 Minutes 39 Seconds West, with the West line of said 47-1/2-acre tract and the East line of said 50-acre tract, a distance of 2,472.17 feet to the POINT OF BEGINNING and containing 47.86 acres of land, more or less.

Initial for Identification

2022-10456 03/25/2022 1:27 PM Page 32 of 32

## Johnson County
## Becky Ivey
### Johnson County
### Clerk

---

**Instrument Number:**  2022 - 10456

eRecording - Real Property

Deed of Trust

Recorded On: March 25, 2022 01:27 PM                    Number of Pages: 32

---

## " Examined and Charged as Follows: "

Total Recording: $146.00

---

**\*\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                          **Record and Return To:**

Document Number:    2022 - 10456                           Simplifile

Receipt Number:     20220325000104                        5072 North 300 West

Recorded Date/Time: March 25, 2022 01:27 PM

User:               Leslie S                               PROVO UT

Station:            ccl83

---



**STATE OF TEXAS**
**COUNTY OF JOHNSON**

**I hereby certify that this Instrument was** FILED **In the File Number sequence on the date/time
printed hereon, and was duly** RECORDED **in the Official Records of Johnson County, Texas.**

Becky Ivey
Johnson County Clerk
Johnson County, TX