**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL00f7, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § § § | |
| *Defendants*, | § § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § | |

**RECEIVER'S RESPONSE TO SERENA
BADGLEY'S LIMITED OBJECTION TO PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR
APPOINTMENT OF A RECEIVER, FOR A PRELIMINARY INJUNCTION
<u>AND ANCILLARY RELIEF, AND TO LIFT STAY FOR LIMITED PURPOSE</u>**

Cort Thomas, the Court-appointed Receiver, responds to the Objection of Serena Badgley,

("Badgley") to the SEC's Motion for Appointment of a Receiver, etc. [320] (the "Objection") and

in support respectfully shows the Court as follows:

–1–

**SUMMARY**

The lawsuit filed by Badgley, like approximately 30 other lawsuits involving Receivership Entities and/or Receivership Assets, is stayed by the Receivership Order.[1] Because Badgley's claim, unlike every other, is a personal injury claim for which insurance coverage exists, the Receiver, from very early in this case, encouraged Badgley to seek a settlement with Goldmark's insurer, if such a settlement imposed no financial obligation on Goldmark. Nonetheless, without warning and without conferring with the Receiver, Badgley filed her Objection. The Receiver contacted both Badgley's counsel and Goldmark's defense counsel (retained by Goldmark's insurer) and learned settlement discussions had not occurred but encouraged both parties to mediate. Badgley's counsel agreed but Goldmark's counsel failed, multiple times, to respond to the Receiver's inquiries.

Due to the unique, personal injury nature of the claim and the existence of insurance coverage for the claim, the Receiver does not oppose limited relief from the Litigation Stay for Badgley to mediate her claim if mediation can occur with limited participation by the Receiver or his designee, and only if a settlement can be achieved within policy limits and without any financial contribution from Goldmark other than potentially creation of a claim against Receivership Estate assets for the amount of the deductible. The Receiver opposes lifting the Litigation Stay for any other litigation.

**BACKGROUND**

A.    **The Receivership Order**

1.    On October 18, 2022, the Court entered its Order Appointing Receiver [Dkt. 29]

---

[1] If the Court does not issue a new Receivership Order or if it does not include Goldmark Hospitality, LLC within a new Receivership Order, the relief requested by Badgley will be unnecessary because the Litigation Stay will cease to apply.

– 2 –

(the "Receivership Order"), pursuant to which the Court assumed exclusive possession and jurisdiction over certain entities identified in the Receivership Order and their assets, as well as all other entities Defendant Timothy Barton directly or indirectly controls (the "Receivership Entities"). *Receivership Order* ¶ 1. Goldmark Hospitality, LLC, which owns the Amerigold Suites, was included in the Receivership Order as an entity into which the SEC traced Wall Investor Funds.

2.      As provided in the Receivership Order, all officers and directors for each Receivership Entity, including Goldmark Hospitality, were removed and the Receiver is now the only authorized representative for the entity.

3.      To conserve Receivership Assets, allow the Receiver time to perform the most pressing tasks, and preclude any one claimant from seeking an advantage or preference in treatment over another, the Receivership Order also stays all collection efforts against Receivership Assets and Receivership Entities, (the "Enforcement Stay"), as well as all litigation against Receivership Entities or involving Receivership Assets (the "Litigation Stay"). *Id.* ¶¶ 32 and 34. Those provisions provide, in relevant part:

> 32. The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:
>
> ***
>
> > C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;
>
> ***

34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

*Receivership Order*, ¶¶ 32, 34–35.

## B.    The Cash Poor Receivership Estate and a Multitude of Stayed Litigation

4.      As explained repeatedly in status reports,[2] motions requesting authorization to sell properties,[3] briefs opposing stays requested by Barton,[4] and most recently, in the Receiver's Report and Declaration in support of a new receivership order,[5] the Receivership Estate is cash poor.  At the beginning of the case, less than $75,000 was on deposit in any Receivership Entity bank account, yet large, pressing expenses existed and have continued to accrue.

5.      Additionally, at the inception of the receivership, more than 35 active cases were stayed by the Litigation Stay, including Badgley's case, *Badgley v. Goldmark Hospitality, LLC,*

---

[2] Dkts. 67, 139, 225, 299.

[3] Dkts. 76, 110, 161, 164, 167.

[4] Dkts. 84, 119; *see also* Dkt. 5, *Barton v. SEC*; 90-1, 122, Appeal No. 22-11132.

[5] Dkt. 308.

No. CC-21-02991-B, County Court at Law No. 2, Dallas County, Texas ("Badgley's Case"). When stayed, many of those cases were close to trial dates or equally near completion. Indeed, in one such case, following prolonged litigation, Barton, a Receivership Entity, and their lawyer had been held in contempt and a hearing was set to assess the sanctions.

6.      Before the Receivership Order was issued, Badgley's Case was set on the jury trial docket. The court overseeing the case ordered mediation to occur by December 2, 2022, and prior to entry of the Receivership Order, mediation was scheduled on or about November 18, 2022.

**C.      Vacatur of Initial Receivership Order and Entry of New Receivership Order**

7.      On June 28, 2023, in response to Barton's appeal, the Fifth Circuit vacated the Initial Receivership Order effective 90 days after the mandate issued, and remanded the case for further proceedings, including this Court's consideration of a new receivership order. (the "Appellate Opinion").

8.      The mandate issued on August 31, 2023, and thus vacatur of the Initial Receivership Order becomes effective on November 29, 2023.

9.      In accordance with this Court's orders, on September 7, 2023, the SEC moved for appointment of a receiver, a preliminary injunction, and other equitable relief. Dkts. 309–310. On October 11, 2023, this Court conducted a hearing to consider the SEC's motion and indicated that it will rule on the SEC's motion prior to vacatur of the Initial Receivership Order.

10.      Evidence supporting the SEC's motion demonstrates that Goldmark Hospitality received Investor Funds and should thus appropriately be included within the scope of a new Receivership Order, if the Court issues one.[6]

---

[6] Receiver's Report and Declaration, Dkt. 208, ¶¶ 103-105; Dkt. 310, Supp. App. 007.

**D.      Receiver Supports Mediation**

11.      A commercial general liability policy issued by AmTrust E&S Insurance provides coverage for personal injury claims that occurred at the Amerigold Suites during the period in which the injury underlying Badgley's Case occurred (the "Policy"). The Policy has a $1,000 per occurrence deductible and appears to provide $1,000,000 in coverage per personal injury occurrence.

12.      Shortly after the Receiver was appointed, Badgley's counsel contacted the Receiver and inquired about settlement negotiations with Goldmark's insurance carrier. On or about November 9, 2022, Receiver's counsel emailed Badgley's counsel confirming that the Receiver approved of settlement discussions and would agree to a settlement that was within policy limits and did not require any payment from Goldmark.

13.      The Receiver believed settlement negotiations were ongoing and was surprised when Badgley filed her objection without conferring about the apparent impasse with insurance counsel.

14.      When the Receiver contacted Badgley's counsel to determine the status of any settlement discussions between Badgely and Goldmark's insurer, he was informed no such discussions had occurred. The Receiver reiterated his approval of settlement discussions, subject to the limitations set forth above, to Badgely's counsel.

15.      Goldmark's insurance carrier retained Patrick Madden, Jennifer Cheek, and Sha'Kera Trimble from Macdonald Devin Madden Kenefick & Harris P.C. ("Macdonald Devin") to represent Goldmark. Badgley's counsel asked the Receiver to help establish communication and set up a mediation. Between October 5 and October 10, 2023 Receiver's counsel emailed and called Macdonald Devin no less than 4 times regarding mediation but, with the exception of one

discussion in which counsel promised to obtain and provide additional information regarding potential settlement discussions or mediation, received no response.

## ARGUMENT

**A.    The Litigation Stay is Vital to the Receivership**

"District courts have broad equitable powers to preserve a receiver's ability to operate without interference." *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379, 380 (5th Cir. 2011). Stays in receivership matters serve as an additional tool to further the goals of the receivership. *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010).    The Litigation Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).

The protection provided by the Litigation Stay is not hypothetical.    Although a few have been resolved, more than 35 proceedings were originally stayed.    Three creditors, in addition to Badgley have recently moved to lift the Litigation Stay, and dozens if not hundreds of creditors are standing in line for payment from Receivership Assets, if and when a claims process is established.

In deciding whether to lift such a stay, courts generally consider three factors, the *"Wenke factors,"* which are intended to balance the interests of the Receiver and the moving party. *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir.1984) ("Wencke II").    Badgley does not address these factors.    Nonetheless, as discussed below, the Receiver does not oppose lifting the Litigation Stay for the limited purpose of mediating Badgley's Case.

**B.     Badgley's Situation is Unique and Warrants Mediation**

Badgley's Case differs from all other stayed cases.  First, it is the only personal injury case (arising from injury to a child) among the over 30 cases stayed by the Receivership Order.[7]  Most of the other stayed cases involve claims alleging non-payment for services or claims alleging default of a loan.  Second, it is the only case that the Receiver knows of, for which insurance proceeds provide a source of recovery.  Thus, a settlement could be reached that either imposes no financial obligation on the Receivership Estate or which creates only a claim for the amount of the Policy deductible, while fully resolving the claim within coverage limits.

Because of these unique considerations, the Receiver does not oppose lifting the Litigation Stay, solely for a mediation between Badgley and Goldmark's insurance carrier so long as any settlement is: (1) within the policy limits of the Policy; (2) payment of the deductible amount is either waived or submitted as a claim for payment in any claims process; and (3) a representative for the Receiver is permitted to attend only to the extent necessary and only by telephone.

## CONCLUSION

Based on the unique, personal injury nature of Badgley's Case, the Receiver does not oppose limited relief from the Litigation Stay for Badgley and Goldmark's insurer to mediate Badgley's claims within the parameters outlined above.  The Receiver opposes lifting the Litigation Stay for any other purpose, to any other degree, and for any other matter.

---

[7] The Receiver was contacted by a law firm several months ago regarding another personal injury that allegedly occurred at the Amerigold Suites.  The Receiver is not aware of any lawsuit having been filed and is unsure if one will be filed.

Respectfully submitted,

By: /s/ Charlene C. Koonce
Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
Timothy B. Wells
Texas Bar No. 24131941
tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

/s/ Charlene C. Koonce
Charlene C. Koonce