# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

## RECEIVER'S RESPONSE TO PIONEER FINANCE, INC.'S MOTION TO INTERVENE AND MOTION TO LIFT STAY AND FOR EXCEPTION FROM COURT'S ORDER APPOINTING RECEIVER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.    SUMMARY ................................................................................................................ 1

II.   BACKGROUND ........................................................................................................ 2

        A.    The Receivership Order ................................................................................. 2

        B.    The Cash Poor Receivership Estate and Cessation of Loan Payments to
              Lenders ......................................................................................................... 4

        C.    Vacatur of The Receivership Order and Entry of New Receivership Order .......... 5

        D.    Pioneer's "Claim" ......................................................................................... 6

III.  ARGUMENT ............................................................................................................. 8

        A.    Legal Standard .............................................................................................. 8

        B.    Pioneer Does Not Justify Excluding LDG001 from the Receivership
              Estate ........................................................................................................... 9

        C.    Pioneer Does Not Satisfy the *Wencke* Factors ............................................ 9

              1.    Lifting the Stay Would Upend the Status Quo Without Evidence of Any
                    Resulting Harm to Pioneer ............................................................... 9

              2.    Timing Does Not Support Lifting the Stay ....................................... 11

              3.    The Merits of Pioneer's Claim Do Not Warrant Lifting the Stay ...... 12

        D.    Pioneer Does Not Justify Intervention .......................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*CPIF Lending, LLC v. Chestnut Hill HCP I, LLC*
  No. CV 18-2049, 2020 WL 3642479 (E.D. Pa. July 6, 2020)...................................................... 12

*Netsphere, Inc. v. Baron*
  799 F.3d 327 (5th Cir. 2015) ................................................................................................. 5, 9

*SEC v. Barton*
  79 F.4th 573 (5th Cir. 2023) ....................................................................................................... 9

*SEC v. Byers*
  592 F.Supp.2d 532 (S.D.N.Y. 2008) *aff'd,* 609 F.3d 87 (2d Cir. 2010) .............................. 8, 11

*SEC v. Capital Cove Bancorp LLC*
  No. SACV15980JLSJCX, 2015 WL 9701154 (C.D. Cal. Oct. 13, 2015)................................. 10

*SEC v. Champion-Cain*
  2019 WL 6834661 (S.D. Cal. Dec. 13, 2019) ......................................................................... 11

*SEC v. Complete Bus. Sols. Group, Inc.*
  44 F.4th 1326 (11th Cir. 2022) .................................................................................................. 5

*SEC v. Hardy*
  803 F.2d 1034 (9th Cir. 1986) ................................................................................................. 10

*SEC v. Heartland Group Ventures, LLC*
  No. 4:21-CV-01310-O-BP, 2023 WL 5333278 (N.D. Tex. Aug. 18, 2023) ............................ 10

*SEC v. Illarramendi*
  No. 3:11CV78 JBA, 2012 WL 5832330 (D. Conn. Nov. 16, 2012) .......................................... 9

*SEC v. Stanford Int'l Bank, Ltd.*
  429 Fed. Appx. 379 (5th Cir. 2011)............................................................................. 8, 10, 12

*SEC v. Vescor Cap. Corp.*
  599 F.3d 1189 (10th Cir. 2010) ................................................................................................. 8

*SEC v. Wencke*
  742 F.2d 1230 (9th Cir.1984) .................................................................................................... 8

*Sierra Club v. Espy*
  18 F.3d 1202 (5th Cir. 1994) ................................................................................................... 13

*United States v. Acorn Tech. Fund, L.P.*
  429 F.3d 438 (3d Cir. 2005) ................................................................................................. 8, 11

*United States v. ESIC Capital, Inc.*
   675 F. Supp. 1464 (D. Md. 1987) ........................................................................................ 12

*United States v. Petters*
   No. 08–5348 ADA/SJM, 2008 WL 5234527 (D. Minn. Dec. 12, 2008) ................................... 9

*Vanston Bondholders Protective Committee v. Green* (Green)
   329 U.S. 156 (1946) ........................................................................................................ 10

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 24 ............................................................................................................... 13

Cort Thomas, as Receiver, responds to Pioneer Finance, Inc.'s ("Pioneer") Motion to Intervene [Dkt. 348] ("Motion to Intervene") **and** Pioneer Finance, Inc.'s Motion to Lift Stay and for Exception from the Court's Order Appointing Receiver [Dkt. 349] ("Motion to Lift Stay" and collectively, the "Motions"), and requests that the Court deny both. In support, the Receiver respectfully shows the Court as follows:

## I.    SUMMARY

As stated in multiple reports, motions, and responses, virtually every property currently in the Receivership Estate is encumbered, and every lender has been stayed from collecting or enforcing its lien.  In this regard, based on the Court's broad discretion to protect all assets in the Estate, every lender has been told, essentially, to "wait."  Wait until the Receiver has had ample time to address the most pressing issues, claims, and disputes, until he determines which properties must, can, or should be sold immediately (if and when sales are again permitted), and more recently, until this Court considers entering a new receivership order and determines which entities and properties will be included within the scope of such an order.

Nonetheless, as it has done since the beginning of the case, through its Motion, Pioneer seeks to elevate itself and its lien over every other creditor, secured and unsecured, including the defrauded investors.[1]  It treats the default on its lien, caused by the receivership and the dearth of cash, as unique and surprising.[2]  It also seeks to increase the amount of its lien through default rate interest and exorbitant attorney's fees, much of which were incurred in sending repetitive demands, emails and calls, despite the clear stay included in the Receivership Order and the Receiver's

---

[1] Notably, Pioneer does not seek permission to enforce the personal guarantee against Barton, individually.

[2] "Though the loan is due and owing, no payment has been received under the loan since the Receiver was appointed on October 18, 2022—almost one year ago . . ." *Motion* p. 1;  *see also*, *Motion*, ¶ 18; p. 11.

constant refrain to "wait," premised in large part on the "wait" imposed by the Stay in the Receivership Order and the procedural posture of this case.

Because Pioneer presents absolutely no basis for the Court to advance it to the front of the long, long, *long* line of creditors and claimants, and because doing so would further widen the flood gate of creditors seeking the same relief, the Court should deny Pioneer's Motions and "admonish" it and other similarly situated creditors that these motions are premature at best, and if continually pressed, will result in an award of costs to the Receivership Estate.

## II.    BACKGROUND

### A.    The Receivership Order

1.    When it filed this lawsuit, the SEC named LDG001 as a "Relief Defendant." Dkt. 1.

2.    Pursuant to the Receivership Order issued on October 18, 2022 (the "Receivership Order"), the Court assumed exclusive possession and jurisdiction over certain entities and their assets described in paragraph 1 of the Receivership Order as:

> "1.    … the assets, of whatever kind and wherever situated, including all tangible and intangible property, of Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, Wall019, LLC, Carnegie Development, LLC, DJD Land Partners, LLC, **LDG001, LLC**, and any other entities that Defendant Timothy Barton directly or indirectly controls, including, but not limited to, the following Barton-controlled entities that received investor funds, real property interests purchased with investor funds, or own property interests that were improved with or otherwise have benefited from the use of investor funds . . .

*Receivership Order* ¶ 1 (emphasis added).

3.    To conserve Receivership Assets, allow the Receiver to prioritize tasks that are most pressing, and preclude any one creditor from seeking an advantage or preference over another, the Receivership Order includes a stay of enforcement and a stay of litigation against the Receiver and all Receivership Entities (collectively, the "Stay"). *Receivership Order*, ¶¶ 34-36. Those provisions provide, in relevant part:

2

32. The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

\*\*\*

> C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;

\*\*\*

34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

*Receivership Order*, ¶¶ 32, 34–35.

3

**B.    The Cash Poor Receivership Estate and Cessation of Loan Payments to Lenders**

4.    As explained repeatedly in status reports,[3] motions requesting authorization to sell properties,[4] briefs opposing stays requested by Barton,[5] and most recently, in the Receiver's Report and Declaration filed in support of a new receivership order,[6] the Receivership Estate is cash poor. At the beginning of the case, less than $75,000 was on deposit in any Receivership Entity bank account, yet large, pressing expenses existed and have continued to accrue.

5.    Since its inception, the Receivership Estate's cash position has not improved significantly. Although the Estate received the proceeds of two settlements,[7] those funds were necessary for expenses related to the HUD certification process regarding one apartment complex, expenses such as insurance, preparation of tax returns and tax payments, and other administrative expenses.

6.    Thus, in reliance on the Stay, the Receiver has not made loan payments to Pioneer, or any other lender.

7.    Comparatively, as the Receiver has stated repeatedly, industry professionals have advised him that marketing conditions suggest Receivership Estate properties will decline in value.[8] When possible, "maximizing" the value of the properties as required by the Receivership Order thus required, and still requires, selling them. The value of some properties, including the multiple lots located in Venus, Texas, are also complicated by development obligations that remain

---

[3] Dkts. 67, 139, 225, 299.

[4] Dkts. 76, 110, 161, 164, 167.

[5] Dkts. 84, 119; *see also* Dkt. 5, *Barton v. SEC*; 90-1, 122, Appeal No. 22-11132.

[6] Dkt. 308 (hereafter "Report").

[7] The settlement with HN Capital also requires additional payments in the future.

[8] Report, p. 95, ¶ 227.

unresolved,[9] as well as the potential for increased value of a potential development and a sale of most or all lots in one transaction rather than piecemeal.

8.      Barton, however, opposed and appealed every order approving the sale of any property (despite the absence of any jurisdiction for those appeals).[10] He has also complained the Receiver should have focused sales efforts on the HUD apartments (that Barton now contends should not be included in the Receivership), should have focused efforts on developing various properties to maximize their value, but should also have no authority to sell any property.[11]

**C.      Vacatur of The Receivership Order and Entry of New Receivership Order**

9.      On June 28, 2023, in response to Barton's appeal, the Fifth Circuit vacated the Receivership Order effective 90 days after the mandate issued and remanded the case for further proceedings, including this Court's consideration of a new receivership order.  (the "Appellate Opinion").  When it amended the Appellate Opinion in August, the Fifth Circuit also stayed the sale *or disposition* of **any** Receivership Property.

10.      The mandate issued on August 31, 2023, and thus vacatur of the Receivership Order becomes effective on November 29, 2023.

11.      In accordance with this Court's orders, on September 7, 2023, the SEC moved for appointment of a receiver, a preliminary injunction, and other equitable relief.[12]  As ordered by the Court, the Receiver also filed the lengthy Report.

---

[9] Report, p. 44.

[10] *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015); *SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022).

[11] *See* Dkt. 339.

[12] Dkts. 309-310.

12.     The SEC's evidence in support of its Motion demonstrated that investor funds were used to purchase the property owned by LDG001.[13]   Similarly, with respect to LDG001 the Receiver's Report demonstrated Barton's use of Wall Investor Funds to purchase the land in Venus, Texas through LDG001, LLC, which serves as the collateral for Pioneer's loan. Specifically, the Receiver testified that "LDG001, LLC is the record owner of certain parcels of land located at 980 CR 110 Venus, TX; 324 W. CR 109 Venus, TX; and 940 CR 110 Venus, TX (the "Griffin Property" or the "Property"). Wall Investor Funds from Wall016, LLC and Wall012, LLC provided most of the funds to purchase the Griffin Property."[14]

13.     The Court recently conducted a hearing to consider the SEC's motion for a new Receivership Order and indicated that it will rule on the SEC's motion prior to vacatur of the Initial Receivership Order.

**D.     Pioneer's "Claim"**

14.     Pursuant to a Note and Deed of Trust, Pioneer holds a lien on the Griffin Property owned by LDG001[15] and received notice of the Receivership Order and the Stay shortly after the Order was issued.[16]   Since receiving that notice, and despite the Receiver's crystal clear position that he would not agree to lift the stay to permit foreclosure, would not sell to Pioneer for less than market value, but would likely seek a collective sale of all "Venus Properties" to maximize their

---

[13] Dkt. 309, p. 13; Dkt. 310 at ¶¶ 23-24.

[14] The Report is incorporated herein by reference.  The Report also provided a description of Barton's commingling based on the property purchased by LDG001:  "In July of 2019, Barton took a loan out against the property owned by LDG001 and among other uses, transferred $200,000 of the loan proceeds to a bank account for HR Sterling, LLC for payroll payments, and sent $675,000 to a JMJ Development bank account, where the money was then dispersed to various accounts, including $100,000 to D4FR, LLC—the entity that owns the Park at Windmill Farms. Report at ¶ 31.

[15] *Motion*.  Pioneer is not, however, the only lienholder on the Property.  Instead, one lot is cross-collateralized for another loan *See* Notice of Foreclosure, posted prior to issuance of the Initial Receivership Order, included in the Appendix at A-2.

[16] *Motion*, Exh. E, Dkt. 349-5;  *see also* Appendix, at A-1.

value,[17] and could not make the loan payments in the interim, Pioneer has continually "admonished" the Receiver regarding its purported entitlement to foreclose and its entitlement to interim payments.  It also claims to have racked up more than $140,000 in fees in so doing—for instance in sending a lengthy "Demand Letter" more than six months after notice of the Stay and after its initial Demand Letter—which it seeks to offset against any sale of the Property.[18]  Pioneer was apparently also incensed by the Receiver's rejection of its offers to purchase the property for the price of Pioneer's inflated calculation of its lien[19]—an offer that would award the property to Pioneer without the costs of the prohibited foreclosure while providing absolutely nothing to the Estate.

15. Further, without any supporting evidence, Pioneer contends the Receiver's failure to "repay LDG001's debt has caused Pioneer financial strain and adversely impacts the health of Pioneer's asset portfolio."[20]  And of course, it complains that the Receiver has not sold the Property in the last year.

16. With its Motion, Pioneer provided no evidence regarding the Property's current value, no evidence demonstrating diminution in value, and indeed no evidence that the value of the Property is less than the principal amount owed on Pioneer's Note.

17. Nonetheless, Pioneer contends that despite the Stay, it is "entitled under the Loan Documents and by law" to proceed with various remedies, including declaring all indebtedness

---

[17] The Receiver's exploration of sale opportunities has occurred against the backdrop of Barton's efforts to preclude any sale, while Barton also complained the Receiver should have focused on selling some properties rather than others and his misrepresentations regarding the status of various developments, including development of the Venus properties.

[18] *Motion,* Exh. F, Dkt. 349-6.

[19] As discussed below, Pioneer is not entitled to the 18% default rate interest and thus in addition to the excessive legal fees it seeks, the amount it contends is due is inflated by the interest it seeks to recover.

[20] *Motion*, at 1.

immediately due, plus 18% interest, and foreclosing on the property.[21]  Pioneer's arguments ignore the Receivership Order as well as the governing law.

### III.    ARGUMENT

**A.    Legal Standard**

"District courts have broad equitable powers to preserve a receiver's ability to operate without interference." *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379, 380 (5th Cir. 2011). Stays in receivership matters serve as additional tools furthering the goals of the receivership. *SEC v. Byers*, 592 F.Supp.2d 532, 537 (S.D.N.Y. 2008) *aff'd,* 609 F.3d 87 (2d Cir. 2010).  The Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).  The Court's power with respect to an anti-litigation stay is thus more broad than its power to grant injunctive relief pursuant to Rule 65.  *Id.*

In deciding whether to lift such a stay, courts generally consider three factors, the *"Wenke* factors," which are intended to balance the interests of the Receiver and the moving party.  *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir.1984) ("Wencke II").  Those factors are: "(1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x. 338, 341 (5th Cir. 2011) (quoting Wencke II)).   The movant bears the burden of demonstrating that the balance of factors support lifting the stay.  *SEC*

---

[21] *Motion* p. 4.

*v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 5832330, at *2 (D. Conn. Nov. 16, 2012); *United States v. Petters*, No. 08–5348 ADA/SJM, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008).

None of these factors weigh in Pioneer's favor, nor does its conclusory assertion that the Property "is not implicated in or related to the underlying allegations made by the SEC" warrant any different outcome.

**B.      Pioneer Does Not Justify Excluding LDG001 from the Receivership Estate**

LDG001 is currently and should continue to be included within the scope of any Receivership Order, and moreover, is named as a Relief Defendant. The Receiver and the SEC traced investor funds directly into the property purchased by LDG001 and thus satisfied *Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012), and *SEC v. Barton*, 79 F.4th 573, 580 (5th Cir. 2023).  Indeed, if the outcome were likely to be otherwise, Pioneer could have waited until the vacatur date for the existing Receivership Order and foreclosed without spending time and fees on the instant motion.  Pioneer, however, chose to file its motion while the SEC's Motion for Appointment of Receiver is pending.

Assuming the Court concludes a new Receivership Order is warranted and finds the Receiver's and the SEC's tracing analysis sufficient, LDG001 and the Property should be included within the scope of the new Receivership Order.  Even if not identified as a Receivership Entity, however, because it is a Relief Defendant, LDG001 would still be subject to any litigation stay in a new Receivership Order.

**C.      Pioneer Does Not Satisfy the *Wencke* Factors**

**1.      Lifting the Stay Would Upend the Status Quo Without Evidence of Any Resulting Harm to Pioneer**

Pioneer's arguments in support of the first factor, "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not

9

permitted to proceed," points the Court towards the irrelevant "status quo" that existed before the Receivership Order was issued.  In evaluating the first factor, however, courts focus on preserving the status quo with respect to the Receivership Estate's ownership and control over the subject property.  *See SEC v. Heartland Group Ventures, LLC*, No. 4:21-CV-01310-O-BP, 2023 WL 4157490, at *2–3 (N.D. Tex. May 18, 2023), report and recommendation adopted, No. 4:21-CV-01310-O-BP, 2023 WL 5333278 (N.D. Tex. Aug. 18, 2023) (rejecting motion to lift stay in favor of personal injury litigant, based on preserving estate assets and preventing loss of receivership properties preserved through the stay); *see also SEC v. Stanford Intern. Bank Ltd.*, 424 Fed. Appx. 338, 341 (5th Cir. 2011) (first *Wencke* factor "balances the interests in preserving the receivership estate with the interests of the Appellants").  Thus, granting Pioneer's motion would not preserve the status quo; it would upend it.

Likewise, Pioneer fails to demonstrate any substantial injury.  Its contractual rights and indeed its security remain intact, albeit subject to alteration in the interest of equity.  *See Vanston Bondholders Protective Committee v. Green* (Green), 329 U.S. 156 (1946) ("The general rule in bankruptcy and equity receivership has been interest on the debtors' obligations ceases to accrue at the beginning of proceedings."); *SEC v. Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2015 WL 9701154, at *12 (C.D. Cal. Oct. 13, 2015) (Finding "that staying all post-receivership default interest satisfies the 'primary purpose' of receiverships, which is 'to promote orderly and efficient administration of the estate' for the benefit of all creditors") (quoting *SEC v. Hardy,* 803 F.2d 1034, 1038 (9th Cir. 1986)).  Thus, while the Receiver stands in LDG001's shoes with respect to the Note and Deed of Trust and is "no freer to disregard or abolish Pioneer's security interest in the Properties than Mr. Barton, JMJ or LDG001 would have been prior to the Receiver's

10

appointment,"[22] the Court has deep and wide authority to modify the measure and timing of any remedy or relief Pioneer receives.  For instance, the Court may: (a) wholly disallow any interest, at any rate, that purportedly accrued after the Receivership Order was entered (as well as the exorbitant and unjustified attorney's fees Pioneer seeks), (b) authorize the Receiver to sell the Property free and clear of all liens, and (c) transfer Pioneer's lien, in an amount determined by the Court, to the proceeds of the sale with payment occurring through a subsequent claims process. *See SEC v. Champion-Cain,* 2019 WL 6834661 (S.D. Cal. Dec. 13, 2019) (Court has jurisdiction to approve proposed sale of realty, free and clear of any encumbrances).  The court's authority in this regard, however, is not "harm" to Pioneer. Instead, the "harm" Pioneer relies on—its present inability to foreclose despite a contractual entitlement to do so absent the Stay—is no more than preservation of the status quo.

### 2.    Timing Does Not Support Lifting the Stay

Pioneer's arguments regarding timing are simply conclusions supported by the assertion that it should be permitted to foreclose, now, because it wants to. *Motion* pp. 9-10.  But the timing factor considers the tenure and posture of the receivership, not how many times and with what degree of insistence a creditor has asserted entitlement to foreclose in the face of a stay.  *See SEC v. Byers,* 592 F.Supp.2d 532, 537 (S.D.N.Y. 2008) *aff'd,* 609 F.3d 87 (2d Cir. 2010) (timing factor weighed in favor of receiver during early months and sometimes years in receivership where lifting stay could disrupt the receiver's mandate to discover, organize, and understand estate assets); *Acorn Tech. Fund, L.P.*, 429 F.3d at 443–44 ("Far into a receivership, if a litigant demonstrates that harm will result from not being able to pursue a colorable meritorious claim," a stay should be lifted, while, "[o]n the other hand, very early in a receivership even the most meritorious claims

---

[22] *Motion*, p. 9.

might fail to justify lifting a stay given the possible disruption of the receiver's duties."); *CPIF Lending, LLC v. Chestnut Hill HCP I, LLC*, No. CV 18-2049, 2020 WL 3642479, at *3 (E.D. Pa. July 6, 2020) ("Early in the receivership's existence, even meritorious claims may not warrant lifting the stay, while claims made later—when the receiver has completed much of the work— are to be given more weight.").

Because this receivership will likely "restart" and because most sales efforts were stayed or otherwise not possible during the first year of the soon-to-be vacated Receivership Order, the Court will not abuse its discretion in denying *any* motion to lift the stay for a significant period into the future. *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1464, 1466 (D. Md. 1987) (motion to lift stayed denied where receivership was two years old, receivership entities were embroiled in "a great deal of litigation," receiver needed more time to analyze matters, and lifting stay would vitiate orderly administration of estate); *see also SEC v. Stanford Int'l Bank, Ltd., Inc.,* Civil Action No. 3:09–CV–0298–N (N.D. Tex. May 6, 2011) (lifting a stay when the receivership was "relatively young" at "just over two years old").

### 3.    The Merits of Pioneer's Claim Do Not Warrant Lifting the Stay

Default occurred because the Receiver was unable to make payments on Pioneer's or any other creditor's Note.[23]    As a situation that occurs in virtually every receivership, the Stay prohibited Pioneer from enforcing any claim against Receivership Property, including attempting to accelerate any indebtedness. *Receivership Order*, ¶ 32. C.  In other words, Pioneer is prohibited from enforcing any contractual remedies based on a default caused by the existence of the receivership.  Comparatively, the Receiver must protect, preserve, and maximize the value of *all*

---

[23] Report, ¶ 20.

Estate property, for the interests of *all* potential claimants; not just one that seeks to elevate itself above all others, because it, like all others, has not received loan payments in the last year.

Pioneer fails to establish that the value of the Property is less than the principal amount owed on its Note, or that once sales are again permissible, the Receiver could not sell the Property with other lots in Venus, Texas and satisfy Pioneer's lien while also recovering a benefit for the Receivership Estate. It merely complains that the Receiver has not yet sold the Property and paid Pioneer or permitted Pioneer to extract the Property from the Receivership Estate. Allowing Pioneer to foreclose at this time, given these circumstances, would result in an inequitable distribution elevating Pioneer over every other creditor, secured and otherwise, in violation of the goals of the receivership. As the Court implicitly instructed when it included the Stay in the Receivership Order, Pioneer must continue to wait. If and when a new Receivership Order is entered and sales or abandonment is permitted, the present Receiver or whoever is appointed in his stead, will resume efforts to appropriately address treatment of the Property, and all other Receivership Assets, so as to maximize its value for the Estate.

### D.    Pioneer Does Not Justify Intervention

Rule 24 governs entitlement to intervene, and failure to satisfy any one of the four factors required by the Rule precludes intervention as a matter of right. FED. R. CIV. P. 24; *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994) ("If a party seeking to intervene fails to meet any one of . . . [the four] requirements, it cannot intervene as a matter of right."). As with its failure to demonstrate entitlement to an order lifting the Stay, Pioneer does not justify intervention. Other than the accrual of 18% default interest—to which it is not entitled—Pioneer offers absolutely no evidence or indeed explanation for why its interests are now in jeopardy or why the Court's October 11, 2023 hearing or the November 29, 2023 vacatur of the Receivership Order has any bearing whatsoever on its entitlement to intervene.

13

## **CONCLUSION**

Pioneer offers no reason why it should receive relief from the Stay, nor indeed, why filing its Motion was necessary. The Court should deny the Motions and "admonish" Pioneer and similarly situated creditors that because of the expense to the Receivership Estate and the balance of the *Wencke* factors, efforts to obtain leave to foreclose or otherwise evade the terms of the Initial Receivership Order or any subsequent Receivership Order will be summarily denied for some reasonable period of time in the future.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.