**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | §<br>§<br>§ | |
| *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | §<br>§<br>§ | |
| *Defendants*. | § | |

**RECEIVER'S EXPEDITED MOTION TO APPROVE,**
**RATIFY, ADOPT, AND OTHERWISE "BLESS" PREVIOUS**
**ACTIONS OF RECEIVER AND ORDERS ISSUED PRIOR TO**
**EFFECTIVE DATE OF VACATUR OF INITIAL RECEIVERSHIP ORDER**

Respectfully submitted,

By: */s/ Charlene C. Koonce*

    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    SUMMARY ............................................................................................................ 1

II.   BACKGROUND ..................................................................................................... 2

    A.  The Initial Receivership Order ......................................................................... 2

    B.  The Receiver's Activities In Reliance on the Authority Provided and Responsibility Assigned By the Initial Receivership Order ........................................................ 4

    C.  Vacatur of Initial Receivership Order and Entry of New Receivership Order .................... 6

III.  ARGUMENT ......................................................................................................... 7

    A.  Legal Standard ............................................................................................. 7

    B.  Ratification And Renewed Authority for The Receiver's Activities Undertaken In Performing the Initial Receivership Order ...................................................... 8

    C.  Adoption or Ratification, Nunc Pro Tunc, of Prior Orders .................................... 9

    D.  Carryover of Accrued Fees and Expenses and Authorization to File One Final Accounting .......................................................................................... 10

    E.  Adoption and Continuation of Litigation Stay .................................................. 11

    F.  Barton's Continuing Contempt ....................................................................... 12

    G.  Release, Immunity, and Continued Jurisdiction ................................................ 12

    H.  Alternative Motion for "Closing" Order .......................................................... 15

IV.  CONCLUSION .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Baron v. Vogel*
　No. 3:15-CV-232-L, 2015 WL 5664455 (N.D. Tex. Sept. 25, 2015)................................. 13, 14

*Briscoe v. LaHue*
　460 U.S. 325 (1983)...................................................................................................... 13

*Clark v. Clark*
　58 U.S. 315, 15 L. Ed. 164 (1855)................................................................................. 7

*David v. King*
　No. 122CV1053PTGIDD, 2023 WL 5004039 (E.D. Va. Aug. 4, 2023)................................... 8

*Davis v. Bayless*
　70 F.3d 367 (5th Cir. 1995) ...................................................................................... 12, 13

*FDIC v. Bernstein*
　786 F .Supp. 170 (E.D.N.Y. 1992) ................................................................................. 7

*Federal Home Loan Mortgage Corp. v. Spark Tarrytown, Inc.*
　829 F. Supp. 82 (S.D.N.Y. 1993) ................................................................................... 7

*FSLIC v. PSL Realty Co.*
　630 F.2d 515 (7th Cir. 1980), cert. denied, 452 U.S. 961, 69 L. Ed.2d 971,
　101 S.C t. 319 (1981)..................................................................................................... 7

*FTC v. AH Media Group, LLC*
　No. 19-CV-04022-JD, 2022 WL 18046402 (N.D. Cal. Feb. 11, 2022) ..................................... 7

*Gaskill v. Gordon*
　27 F.3d 248 (7th Cir. 1994) ........................................................................................... 7

*Hall v. Dixon*
　No. CIV A. H 09-2611, 2010 WL 3909515 (S.D. Tex. Sept. 30, 2010) ................................. 12

*Henderson v. W. Jackson Student Hous., L.L.C.*
　676 Fed. Appx. 293 (5th Cir. 2017)............................................................................... 14

*In re Cox*
　No. 16-32363-H5-11, 2017 WL 1058263 (Bankr. S.D. Tex. Mar. 20, 2017) ......................... 13

*Netsphere, Inc. v. Baron*
　No. 3:09-CV-0988-L, 2015 WL 1400543, (N.D. Tex. Mar. 27, 2015) ............................... 7, 13

*Netsphere, Inc. v. Gardere Wynne Sewell, L.L.P*
　657 Fed. Appx. 320 (5th Cir. 2016)................................................................................ 7

*New Alaska Dev. Corp. v. Guetschow*
  869 F.2d 1298 (9th Cir. 1989) ........................................................................................ 12

*Preston Hollow Capital, LLC v. Bouldin*
  No. 3:19-CV-00185, 2020 WL 3542260, (S.D. Tex. June 30, 2020)........................................ 7

*Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*
  140 S. Ct. 696, 206 L. Ed. 2d 1 (2020) ...................................................................... 8

*SEC v. Durmaz*
  No. 210CV01689JLSAJW, 2018 WL 10798893 (C.D. Cal. Sept. 19, 2018)............................ 7

*SEC v. Hardy*
  803 F.2d 1034 (9th Cir. 1986) ................................................................................... 8

*SEC v. Safety Fin. Service, Inc.*
  674 F.2d 368 (5th Cir. 1982) .................................................................................... 8

*SEC v. Sethi Petroleum, LLC*
  No. 4:15-CV-338, 2021 WL 2366110 (E.D. Tex. May 21, 2021), *appeal dismissed
  sub nom*, No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021) ...................................... 8

*SEC v. Stanford Int'l Bank, Ltd.*
  927 F.3d 830 (5th Cir. 2019) .................................................................................... 8

*Stump v. Sparkman*
  435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978)............................................................ 13

Cort Thomas, as the court appointed Receiver, respectfully submits this Motion to Approve, Ratify, Adopt, and Otherwise "Bless" Previous Action of Receiver and Orders Issued Prior to Effective Date of Vacatur of Initial Receivership Order. ***To the extent necessary to accomplish all briefing required by the Court prior to vacatur of the Initial Receivership Order, the Receiver also requests that the Court order expedited briefing regarding this Motion. Similarly, the Receiver requests that the Court rule on this Motion contemporaneously with the SEC's pending Motion for Appointment of a Receiver, for Preliminary Injunction and Ancillary Relief, and to Lift Stay for a Limited Purpose [Dkt. 309]***. Alternatively, to the extent the Court is inclined to deny the SEC's Motion, the Receiver respectfully requests that the Court enter a "Closing Order" consistent with the relief requested herein.

As demonstrated below, the timing of this Motion—before the Court rules on the SEC's pending Motion but with consideration requested contemporaneously so that the Court can rule on this Motion before the Initial Receivership Order is vacated—is necessary to preserve Receivership Estate Assets and prevent confusion, uncertainty, and potential chaos regarding the matters discussed below, for all interested creditors and investors. In support, the Receiver respectfully shows the Court as follows:

## I.     <u>SUMMARY</u>

Typically, when a receivership ends, the Receiver files a "closing motion" seeking authority to windup all necessary activities, for instance closing bank accounts, paying any outstanding debts or obligations, approving the disposition of any remaining property, finalizing tax returns, and following a determination that the Receiver's and his agent's activities were performed in good faith and in accordance with the terms of his appointment, discharging the Receiver. Here, the original Receivership Order entered October 18, 2022 (the "Initial

1

Receivership Order") will be vacated 90 days after the appellate mandate issued, or November 29, 2023.

In reliance on the likelihood that the Court will enter a new Receivership Order in some fashion and to minimize the costs related to performance of a new Receivership Order—for instance the necessity of filing amended Notices of Stay in each of the ancillary cases stayed in reliance on the Initial Receivership Order as well as many other similar tasks—and to foreclose Barton's ability to sue the Receiver individually[1] or otherwise seek to unwind sales,[2] settlements, and other activities previously approved by the Court, the Receiver requests an order providing the specific relief requested below. Alternatively, if the Court does not enter a new Receivership Order, the Receiver requests a discharge and the related and incidental relief related to discharge.

## II.    BACKGROUND

### A.    The Initial Receivership Order

1.    On September 23, 2022, the SEC filed its Complaint [Dkt. 1] against Defendant Tim Barton, and numerous other persons and entities.

2.    Among other things, the SEC alleged that between March 2017 and June 2019, Barton "raised approximately $26 million from over 100 investors . . . in unregistered, fraudulent securities offerings related to real-estate investments in Texas." Dkt. 1, ¶ 1. The SEC further alleged that Barton "partnered with Wall . . . and Fu . . . to offer and sell investment loans issued by" the Wall Entities. *Id.* ¶ 2. More specifically, the SEC alleged that Defendants promised funds raised by the Wall Entities would be used to purchase specific parcels of land at specific prices set forth in the offering materials, those parcels would then be developed by Barton into residential lots, and then Wall would build homes on the lots and sell them. *Id.* ¶ 3.

---

[1] *See* Dkt 223 at 9; *SEC v. Barton*, Appeal No. 22-11132, ECF No. 113 at 7.

[2] The Receiver will seek ratification of all orders related to prior approval of real property sales in a separate motion.

3.    Based on the SEC's motion and supporting evidence, [Dkts. 6-7], on October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities (the "Receivership Entities") controlled by Barton.  Dkt. 29. When the Receiver submitted motions providing extensive evidence demonstrating Barton's control over a vast web of entities, in two subsequent orders, the Court clarified that although not specifically identified in the Initial Receivership Order, more than 130 additional entities controlled by Barton were included as Receivership Entities.  Dkt. Nos. 62, 68.

4.    Pursuant to the Receivership Order, the Court directed the Receiver to take possession and control of all Receivership Assets, "[t]he assets of the[] Receivership Entities," and Receivership Records, authorized the Receiver to take possession and control over the Receivership Entities' mail, change locks, pay ordinary operating expenses, enter into and compromise contracts, and subject to the Court's approval, transfer, compromise, or sell property.  Dkt. 29, ¶¶ 6, 16, 17, 19, 20, 29, 40, 61.

5.    The Initial Receivership Order assigned extensive responsibilities to the Receiver, including using reasonable efforts to determine the nature, location, and value of all property interests held by the Receivership Entities; giving notice of his appointment to third-parties; managing, controlling and operating the Receivership Entities; taking reasonable steps as necessary to preserve or prevent the dissipation of Receivership Property; and engage or employ professionals to assist in performing his duties. *Id.* at ¶¶ 6, 26, 62.

6.    A stay of litigation involving any Receivership Entity (the "Litigation Stay"), as well as a stay of enforcement precluding any self-help, lien-creation or lien-enforcement activity ("Enforcement Stay") was also included in the Initial Receivership Order. *Id.* at ¶¶ 34-36.  As

3

explained in the Receiver's numerous reports, both stays have been crucial to preserving Receivership Assets.

7. The Initial Receivership Order also immunized the Receiver and all Retained Personnel from liability to any person based on the good faith performance of their duties and responsibilities as outlined in the Receivership Order. *Id.* ¶ 53.

**B.** **The Receiver's Activities In Reliance on the Authority Provided and Responsibility Assigned By the Initial Receivership Order**

8. The Receiver's Activities In Reliance on the Authority Provided and Responsibility Assigned By the Initial Receivership Order

9. Based on his responsibility to protect and maximize the value of Receivership Property and the authority provided by the Initial Receivership Order,[3] the Receiver expended Receivership Assets for the benefit of the Properties, for instance in paying taxes, insurance, utilities, maintenance costs, and similar expenses.

10. Premised on the authority provided and responsibilities assigned by the Initial Receivership Order, the Receiver, among other things, obtained a tax ID number for the Receivership Estate, provided notice of the receivership to the IRS and filed tax returns for various Receivership Entities; opened bank accounts as "Receiver;" engaged a law firm, accountants, and an IT provider (the "Retained Professionals"); obtained bank and other financial records from various financial institutions; forwarded Receivership Entity mail to his business address; and following court approval, sold personal property and resolved certain claims to personal property stored at the Receivership Entities' office location.

11. The Receiver also sought and received approval of and permission to pay his and his Retained Professional's fees and expenses. Dkts. 156, 195, 23, 287. The Court also entered

---

[3] *See* Initial Receivership Order ¶¶ 6 D, 42.

an Order Governing Administrative Procedures pertaining to the administration of the receivership (the "Administration Order").  Dkt. 63.

12.    Similarly, the Receiver entered into contracts, including, but not limited to, settlement agreements by which the Estate received valuable consideration, and in some instances the continuing entitlement to such consideration, that the Court ratified.  Dkt. Nos. 109, 163, 236.

13.    In reliance on the Litigation Stay, the Receiver filed Notices of Stay in more than 30 pending cases involving Receivership Entities.  In reliance on the Enforcement Stay, and in light of the cash-poor state of the Receivership, the Receiver ceased payments to lenders holding debts or mortgages secured by Receivership Properties, and halted foreclosure proceedings involving several Receivership Properties.

14.    Based on numerous motions filed by the Receiver, the Court also (a) approved the Receiver's engagement agreements with various professionals [Dkt. 38]; (b) entered an order governing administrative procedures [Dkt. 63]; (c) denied numerous motions to stay various orders approving sales [Dkts. 132, 219]; (d) supplemented the Initial Receivership Order [Dkt. 62, 88]; (e) ratified two settlement agreements [Dkts. 109, 236]; (f) held Barton in contempt for failing to comply with most provisions of the Initial Receivership Order that compelled Barton to provide information or cooperation [Dkt. 235]; (g) entered a privilege protocol governing the treatment of various emails and documents potentially subject to a claim of privilege by Barton (*id.*); (h) declared a lis pendens Barton had filed regarding sale of the "Rock Creek Property" to be void [Dkt. 104]; (i) entered a summary judgment briefing schedule for a dispute with Southern Properties Capital, Ltd, regarding ownership of certain apartment developments [Dkt. 190]; (j) and approved two motions by which the Receiver sought permission to pay accrued fees and expenses. Dkts. 195 and 287.

**C.      <u>Vacatur of Initial Receivership Order and Entry of New Receivership Order</u>**

15.      On June 28, 2023, in response to Barton's appeal, the Fifth Circuit vacated the Initial Receivership Order effective 90 days after the mandate issued, and remanded the case for further proceedings, including this Court's consideration of a new receivership order.  (the "Appellate Opinion").  The Appellate Opinion was subsequently amended to stay the Receiver's authority to sell or dispose of any property including sales that had previously been approved, until this Court considers entry of a new Receivership Order.

16.      The mandate issued on August 31, 2023, and thus vacatur of the Initial Receiver Order becomes effective on November 29, 2023 (the "Vacatur Date").

17.      In accordance with this Court's orders, the SEC moved for appointment of a receiver, a preliminary injunction, and other equitable relief.  On October 11, 2023, the Court conducted a hearing regarding the Motion and indicated that it would rule on the Motion before the Vacatur Date.

18.      The proposed order for a new Receivership Order submitted by the SEC, if entered, will generally provide the same responsibilities and authority as the Initial Receiver Order, but the Initial Receivership Order will nonetheless be vacated within a matter of weeks.[4]

19.      To confirm all activities undertaken by the Receiver based on his reliance on the to-be-vacated Initial Receivership Order, and to avoid the delay and expense in seeking the same relief previously granted in connection with the Initial Receivership Order, premised on this Court's broad discretion and the terms of a new Receivership Order, if and when entered, the Receiver requests (a) ratification and approval of all activities undertaken in performing the Initial Receivership Order, including continuation of the Receiver's possession and control over

---

[4] The proposed order submitted by the SEC differs somewhat from the Initial Receivership Order entered by the Court.

all books, records, keys, and access data or materials, acquired by the Receiver in reliance on the Initial Receivership Order; (b) adoption and reissuance, *nunc pro tunc*, of various orders issued in response to the Receiver's motions, as explained and identified below; and (c) approval and release[5] for all activities undertaken in good faith by the Receiver and his Retained Professionals and agents, in performing the responsibilities assigned by the Initial Receivership Order.

## III.    ARGUMENT

### A.    Legal Standard

A receiver is neither plaintiff nor defendant, but instead, acts as the Court's agent with respect to the administration of property. *Clark v. Clark*, 58 U.S. 315, 331, 15 L. Ed. 164 (1855); *FSLIC v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980), *cert. denied*, 452 U.S. 961, 69 L. Ed.2d 971, 101 S.C t. 319 (1981) ("Receiver is an officer of the court and subject to its orders in relation to the property for which he is responsible until discharged by the court"); *FSLIC v. Spark Tarrytown, Inc.*, 829 F. Supp. 82, 85 (S.D.N.Y. 1993). The orders of the appointing court are the sole source of a receiver's authority, and receivers are therefore authorized to petition the appointing court on matters related to the administration of the receivership. *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) (imposing lien for receiver's costs on property administered by receiver); *PSL Realty Co.*, 630 F.2d at 521.

Although issues that arise in receiverships are generally fact-specific, two basic principles are recognized in most receivership proceedings. First, district courts are given "extremely broad" discretion in determining "the appropriate procedures to be used in its administration." *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992); *SEC v. Stanford Int'l Bank, Ltd.*, 927

---

[5] "Release" should not be seen as indicating that the Receiver believes any of his actions have been improper or should be undone; rather, the term and procedure is used where a receiver's prior actions are approved and a Receiver is discharged. *See Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-L, 2015 WL 1400543, at *10 (N.D. Tex. Mar. 27, 2015), *aff'd sub nom. Netsphere, Inc. v. Gardere Wynne Sewell, L.L.P*, 657 Fed. Appx. 320 (5th Cir. 2016); *Preston Hollow Capital, LLC v. Bouldin*, No. 3:19-CV-00185, 2020 WL 3542260, at *1 (S.D. Tex. June 30, 2020); *FTC v. AH Media Group, LLC*, No. 19-CV-04022-JD, 2022 WL 18046402, at *2 (N.D. Cal. Feb. 11, 2022); *SEC v. Durmaz*, No. 210CV01689JLSAJW, 2018 WL 10798893, at *3 (C.D. Cal. Sept. 19, 2018).

F.3d 830, 840 (5th Cir. 2019); *SEC v. Safety Fin. Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) ("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse"). Second, "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). Accordingly, "reasonable procedures instituted by the district court that serve [these] purpose[s]" are generally upheld. *Id.*; *see also SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2021 WL 2366110, at \*6 (E.D. Tex. May 21, 2021), *appeal dismissed sub nom*, *SEC v. Sethi*, No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021) (court possesses broad powers to fashion appropriate relief intended to assist receiver in accomplishing his primary task, "protect[ing] the Receivership Estate.").

**B.**     **Ratification And Renewed Authority for The Receiver's Activities Undertaken In Performing the Initial Receivership Order**

District courts are permitted to enter "nunc pro tunc" orders to "'reflect the reality' of what has already occurred." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01, 206 L. Ed. 2d 1 (2020) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49, 110 S.Ct. 1651, 109 L. Ed.2d 31 (1990)); *David v. King*, No. 122CV1053PTGIDD, 2023 WL 5004039, at \*5–6 (E.D. Va. Aug. 4, 2023) (Approving engagement of counsel for Chapter 11 phase, *nunc pro tunc*, where same counsel had been approved in prior Chapter 7 phase).  Each order addressed below reflects the "reality of what has already occurred," and ratification or adoption based on a new Receivership Order merely breathes new life into such an order.

The Receiver relied on the authority provided by the Initial Receivership Order and this Court's subsequent and related orders in all activities undertaken prior to issuance of any new Receivership Order.  For instance, the Receiver continues in possession of the Receivership Entities' books and records, their mail, access credentials to various data storage platforms, and

their properties, based on the authority initially provided. He entered into and terminated contracts, ceased making mortgage and other payments required of the Receivership Entities under various theories, obtained a tax ID number for the Receivership Estate and opened a bank account.

The Receiver requests that the Court expressly ratify **all activities** undertaken by the Receiver and his Retained Professionals in good faith and in reliance on and in performing the Initial Receivership Order, including, but not limited to his present possession of any documents, data, assets, properties, access credentials, or materials;[6] use of the tax ID number obtained and the bank account opened for the receivership created by the Initial Receivership Order; preparation and filing of tax returns for Receivership Entities; and all contracts and agreements entered into in his capacity as Receiver. Similarly, the Receiver requests that the Court ratify and approve the Receiver's possession of **any and all** such materials and information obtained pursuant to the Initial Receivership Order.[7] If a new Receivership Order is entered, the Receiver likewise requests the Court's approval of continued use of the tax ID number obtained in connection with the Initial Receivership Order, as well as use of the bank account opened in compliance with the Initial Receivership Order.[8]

### C.    <u>Adoption or Ratification, Nunc Pro Tunc, of Prior Orders</u>

The factual predicate that animated the Receiver's requests for orders issued with respect to administration of the Estate—the best interests of the Receivership Estate—have not changed, despite the impending vacatur of the Initial Receivership Order.   Thus, such orders, for instance

---

[6]Possession of all such materials will be transferred if a different individual or entity is appointed as Receiver.

[7] Even if the Court appoints a different individual to serve as Receiver, the relief requested below is nonetheless required to save the Estate and whoever serves as Receiver time, money, and uncertainty, as well as to enforce the protections created by the Initial Receivership Order in the event Mr. Thomas is discharged.

[8] If the Court enters a new receivership order, to establish the Court's *in rem* jurisdiction over all receivership assets as well as providing personal jurisdiction for persons holding such assets, the Receiver will re-file notices required by 28 U.S.C. § 754.

approving engagement agreements for Retained Professionals, approving fee petitions, ratifying contracts and settlements, and rejecting objections to the sale of personal property stored at JMJ Development's business office, that were appropriate and justified at the time those orders were issued remain appropriate today. The Receiver accordingly requests that based on the authority of a new Receivership Order and the Court's discretion, and to preclude the unnecessary and wasteful expenditure of Receivership Assets in seeking the same relief the Court has already granted, the Court ratify and adopt the following orders, *nunc pro tunc*:

- Orders Ratifying or Approving Agreements with DLP Capital and HNGH Turtle Creek, Dkts. 109, 236;

- Order Ratifying Agreement with Lumar Land and Cattle, Dkt. 163;

- Order Granting Motion for Order Governing Administration of the Receivership Estate, Dkt. 63;

- Order Declaring Lis Pendens Void (as included in the Order Approving the Sale of the Rock Creek Property), Dkt. 104;

- Order Granting Motion to Compel[9] and Establishing Privilege Protocol, Dkt. 235;

- Orders Granting Fee Petitions, Dkts. 195, 287;

- Order Approving Engagement Agreements, Dkt. 38.

**D.    Carryover of Accrued Fees and Expenses and Authorization to File One Final Accounting**

In reliance on the Initial Receivership Order, the Receiver accrued fees and expenses, including professional fees and expenses.[10] Subject to the Court's consideration of a fee petition that the Receiver will file separately in which he presents all such fees and expenses for the Court's evaluation, the Receiver requests the Court's approval of carryover and assumption of any accrued but unpaid expenses, costs, or fees, incurred in connection with the Initial

---

[9] The Court's conclusion regarding Barton's contempt is addressed separately below.

[10] Fees incurred between April 1, 2023 and June 30, 2023 were the subject of a fee petition filed on August 14, 2023, Dkt. 300, which was denied without prejudice. Dkt. 306.

Receivership Order, and for consideration pursuant to the terms of a new Receivership Order. Thus, any unpaid fee or expense incurred in performing the Initial Receivership Order would be deemed, *nunc pro tunc*, a fee or expense incurred by the Receivership Estate in the course of administration based on a new Receivership Order.

Likewise, although the Initial Receivership Order required the Receiver to submit a Final Accounting "at the close of the Receivership," because a new Receivership Order will effectively continue the Receivership Estate established by the Initial Receivership Order, the Receiver requests permission to file one final accounting at the close of the receivership, following performance of all duties assigned in a new Receivership Order. All fees and expenses incurred during the administration of the Estate, whether premised on the Initial or a new Receivership Order would be included in the same Final Accounting.

### E.   Adoption and Continuation of Litigation Stay

No less than 35 lawsuits, including several foreclosure actions, were stayed based upon the Litigation Stay included in the Initial Receivership Order. *See* Dkt 29, ¶¶ 34-36; Dkt. 139, pp. 36-47. Based on the testimony regarding the necessity of the Litigation Stay,[11] and indeed, Barton's argument that such a stay should be included even if the Court creates a monitorship rather than a receivership, the Receiver presumes that any new Receivership Order will likewise include a Litigation Stay.

To ensure compliance with the Litigation Stay, immediately after the Initial Receivership Order was entered, in every court in which any lawsuit involving a Receivership Entity or Receivership Assets was pending the Receiver filed "Notices of Stay" in which he described entry of the Initial Receivership Order and its relevant terms. Dkt. 139, pp. 36-47 (discussing

---

[11] *See* Receiver's Report and Declaration filed in support of new Receivership Order, (hereafter "Report") Dkt. 308 ¶¶ 104, 118, 157, 191, 211-212.

stayed cases).  To eliminate the necessity of filing new Notices of Stay in the stayed cases, the Receiver requests that this Court declare that the Litigation Stay in any new Receivership Order, *nunc pro tunc*, continues the Litigation Stay from the Initial Receivership Order.

## F.    Barton's Continuing Contempt

Based on his failure to comply with a multitude of provisions in the Initial Receivership Order, the Court found Defendant Barton in contempt. Dkt. 235.  The factual basis for Barton's contempt—his disregard for the requirements of the Initial Receivership Order—continues today.  Rather than requiring the same motion practice based on the same contumacious conduct at issue in the Receiver's Motion to Compel, [Dkts. 133, 166], the Receiver requests that the Court order Barton to file a Notice of Compliance with each relevant paragraph of any new Receivership Order.  If Barton fails to confirm his compliance with each relevant provision of a new Receivership Order, the Receiver requests that the Court again, but without further expense or motion practice, find Barton in contempt of the new Receivership Order, and impose continuing coercive sanctions.

## G.    Release, Immunity, and Continued Jurisdiction

As the Court's agent, a Receiver and his agents, employees, and Retained Professionals are entitled to qualified derivative judicial immunity for all activities undertaken in good faith performance of appointment.[12]  *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989); *Hall v. Dixon*, No. CIV A. H 09-2611, 2010 WL 3909515, at *40 (S.D. Tex. Sept. 30, 2010) ("Derived judicial immunity protects from suit all who are 'integral parts of the judicial process.'") (*quoting Briscoe v. LaHue*, 460

---

[12] The Initial Receivership Order incorporated this principle by providing that "[t]he Receiver and his agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel." Initial Receivership Order, ¶ 53.

U.S. 325, 335 (1983)), *aff'd sub nom. Hall v. Smith*, 497 F. App'x 366 (5th Cir. 2012)). Only activities that exceed the scope of the Receiver's authority, derived from his order of appointment, are not protected. *Davis*, 70 F.3d at 373.

Similarly, because a Receiver's immunity is derived from the immunity with which his appointing judge is cloaked, immunity does not exist if the appointment was "obviously taken outside the scope of the judge's power." *Id.* This inquiry does not focus on "whether the judge actually had jurisdiction, or even whether the court exceeded its jurisdictional authority," but instead, whether in appointing the receiver, the appointing judge was acting beyond the scope of his authority as a judge. *Id.*; *citing Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S. Ct. 1099, 1105, 55 L. Ed. 2d 331 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'")). Following reversal of the order of appointment in *Netsphere*,[13] the Court concluded that because the appointing court "had subject matter jurisdiction over the action based on diversity jurisdiction . . . and the . . . appointment of a receiver is a normal judicial function, the receiver was entitled to judicial immunity for all activities undertaken in performance of his vacated appointment. *Baron v. Vogel*, No. 3:15-CV-232-L, 2015 WL 5664455, at *5 (N.D. Tex. Sept. 25, 2015). Thus, even where the order appointing a receiver is *reversed*, judicial immunity still protects the Receiver so long as the appointing court possessed "the jurisdiction necessary to perform an act of that kind [appointing a receiver] in the case." *In re Cox*, No. 16-32363-H5-11, 2017 WL 1058263, at *2 (Bankr. S.D. Tex. Mar. 20, 2017); *Baron*, 2015 WL 5664455, at *5.

Here, the Fifth Circuit's remand for this Court's consideration of a new Receivership Order demonstrates that entry of the Initial Receivership Order was well within this Court's

---

[13] *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).

jurisdiction.    Further, despite Barton's repeated but baseless assertions challenging the Receiver's competence, absolutely no evidence exists that the Receiver or any of his Retained Professionals exceeded the scope of the authority provided by the Initial Receivership Order or acted in bad faith.

Accordingly, the Receiver requests this Court's determination that he, his Retained Professionals, and all agents are released from any liability for any activity undertaken in performing the Initial Receivership Order and are thus immune from any claim or liability for such activities.  *See Henderson v. W. Jackson Student Hous., L.L.C.*, 676 Fed. Appx. 293, 297 (5th Cir. 2017) (Affirming dismissal of claims against Receiver where Receiver was released from all liability in discharge order, which superseded appointment order); *see also Baron v. Vogel*, No. 3:15-CV-232-L, 2016 WL 1273465, at *5 (N.D. Tex. Mar. 31, 2016), *aff'd*, 678 Fed. Appx. 202 (5th Cir. 2017) (dismissing claims against receiver where "nothing in the complaint indicates that the receiver has acted outside the scope of authority granted to him by the court" and he was thus immune from liability).  Likewise, the Receiver requests that the Court enjoin all persons from asserting claims, of any kind, in any forum or venue, against him or any of his Retained Professionals or agents for any activities undertaken in performance of the Initial Receivership Order.

The Receiver also requests that the Court, *nunc pro tunc*, expressly retain jurisdiction over any and all matters relating to the Receiver, the Receivership and the Receivership Estate based on performance of the Initial Receivership Order.  Such continuing jurisdiction should include, but not be limited to, matters relating to the distribution of funds received by the Receiver in connection with his obligations as Receiver or otherwise received after the Initial Receivership Order is vacated. Thus, to the extent any dispute arises concerning the Receiver's administration of the Receivership Estate or to the extent any person or entity seeks to pursue or

14

assert any claim or action against the Receiver or any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver, arising out of or related to activities undertaken in performing the Initial Receivership Order, the Court would retain jurisdiction to hear and resolve any such dispute or claim.

## H.      Alternative Motion for "Closing" Order

Alternatively, if the Court does not enter a new receivership order or is inclined to discharge Mr. Thomas as Receiver, the Receiver requests that the Court enter a "traditional" order closing the receivership estate, authorizing the Receiver to undertake all activities necessary to windup the Receivership Estate and its business, for instance closing the bank account, notifying the Investors of such closure, transferring possession of all Receivership Estate records to Barton or the government (or authorizing continued storage of same following receipt of payment for related costs), paying all final fees and expenses (or imposing a lien for such expenses on property previously held by the Estate to the extent insufficient assets exist to pay such expenses)[14], and all such necessary and incidental relief.[15]

## IV.      CONCLUSION

For the reasons explained above, and in the interests of efficiency and expediency, the Receiver requests that the Court approve, ratify, adopt, and otherwise "bless" the activities and orders issued in reliance on the Initial Receivership Order, and requests such other and further relief to which he may show himself entitled.

---

[14] *See Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) ("Certainly the district court has the authority to impose a lien on property in a receivership to satisfy the receivership expenses.").

[15] If the Court is inclined to deny the SEC's motion for appointment of receiver or discharge the Receiver, upon request from the Court, the Receiver will submit an alternative proposed order.

WHEREFORE, the Receiver respectfully requests that the Court enter an order providing the relief requested above, and awarding all other and further relief to which he may show himself entitled.

Respectfully submitted,

By: /s/ Charlene C. Koonce
Charlene C. Koonce
  Texas Bar No. 11672850
  charlene@brownfoxlaw.com
Timothy B. Wells
  Texas Bar No. 24131941
  tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for the Receiver conferred with counsel for the SEC and for Barton, by email on October 25 and again on October 27.  The SEC indicates it has not yet determined whether it opposes the relief.  (If it is unopposed, the Receiver will file an amended certificate of conference).  Barton opposes the relief requested and warned that if required to respond to this and other forthcoming motions about which the Receiver conferred, he would seek sanctions against the Receiver's firm.  Sanctions are wholly unwarranted but if requested the Receiver will respond in due course.

/s/ Charlene C. Koonce
Charlene C. Koonce

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.