# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

**RECEIVER'S VERIFIED AND EXPEDITED MOTION
TO (I) RATIFY ORDERS APPOINTING APPRAISERS,
APPROVING APPRAISALS AND APPROVING SALE OF REAL ESTATE AS
REQUIRED BY 28 U.S.C. § 2001 WITH RESPECT TO THE ROCK CREEK
PROPERTY, (II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS,
AND (III) STAY ACCRUAL OF POST-RECEIVERSHIP DEFAULT RATE INTEREST**

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
 Texas Bar No. 11672850
 charlene@brownfoxlaw.com
C. Alan Carrillo
 Texas Bar No. 24109693
 alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## TABLE OF CONTENTS

I.    SUMMARY ........................................................................................................... 1

II.   BACKGROUND ................................................................................................... 3

    A.    The Initial Receivership Order.................................................................. 3

    B.    SF Rock Creek and the Rock Creek Property............................................ 4

    C.    The Rock Creek Property Orders............................................................... 6

III.  ARGUMENT......................................................................................................... 9

    A.    The Court Has Authority to Ratify the Rock Creek Property Orders, *Nunc Pro Tunc*, Based on a New Receivership Order................................ 9

    B.    The Court May—and Should—Also Authorize the Sale of the Rock Creek Property Free and Clear of All Liens, Stay the Accrual of Post-Receivership Default Interest, and Reserve Payment of Any Other Asserted Fees, Costs, or Other Amounts for the Claims Process...................................................... 10

    C.    Ratifying the Rock Creek Property Orders, Authorizing the Sale of the Rock Creek Property Free and Clear of All Liens, Staying Post-Receivership Default Interest, and Reserving Any Other Asserted Fees, Costs, or Other Amounts for the Claims Process Serve the Best Interests of the Receivership Estate........................................................................................................... 13

IV.   CONCLUSION..................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*CFTC v. TMTE, Inc.*
  No. 3:20-CV-2910-L, 2022 WL 20210406 (N.D. Tex. May 12, 2022) ................................... 14

*David v. King*
  No. 122CV1053PTGIDD, 2023 WL 5004039 (E.D. Va. Aug. 4, 2023).................................... 9

*FDIC v. Bernstein*
  786 F. Supp. 170 (E.D.N.Y. 1992) ...................................................................................... 13

*FTC v. Consumer Defense, LLC*
  No. 2:18-CV-30 JCM (PAL), 2019 WL 266287 (D. Nev. Jan. 18, 2019)................................ 14

*Janvey v. Alguire*
  No. 3:09-CV-0724-N, 2014 WL 12654910 (N.D. Tex. July 30, 2014),
  *aff'd on other grounds*, 847 F.3d 231 (5th Cir. 2017) ............................................................... 10

*Missouri v. Jenkins*
  495 U.S. 33, 110 S.Ct. 1651 L.Ed.2d 31 (1990).......................................................................... 9

*Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*
  140 S. Ct. 696, 206 L. Ed. 2d 1 (2020) ....................................................................................... 9

*SEC v. AmeriFirst Funding, Inc.*
  No. CIV. 3:07-CV-1188-D, 2008 WL 706846 (N.D. Tex. Mar. 11, 2008)............................. 14

*SEC v. BIC Real Est. Dev. Corp.*
  No. 116CV00344LJOJLT, 2017 WL 2463854 (E.D. Cal. June 7, 2017)................................. 10

*SEC v. Capital Cove Bancorp LLC*
  No. SACV 15-980-JLS (JCx), 2015 WL 9701154 (C.D. Cal. Oct. 13, 2015) ................... 11, 12

*SEC v. Champion-Cain*
  No. 3:19-CV-1628-LAB-AHG, 2020 WL 4673397 (S.D. Cal. Aug. 12, 2020)....................... 10

*SEC v. Hardy*
  803 F.2d 1034 (9th Cir. 1986) ...................................................................................................... 13

*SEC v. Safety Fin. Service, Inc.*
  674 F.2d 368 (5th Cir. 1982) ........................................................................................................ 13

*SEC v. Sethi Petroleum, LLC*
  No. 4:15-CV-338, 2021 WL 2366110 (E.D. Tex. May 21, 2021),
  *appeal dismissed sub nom,* No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021)......... 13

*SEC v. Stanford Int'l Bank, Ltd.*
    927 F.3d 830 (5th Cir. 2019) ............................................................................................... 13

*SEC v. TLC Investments & Trade Co.*
    147 F. Supp. 2d 1031 (C.D. Cal. 2001) ................................................................................ 14

*Vanston Bondholders Protective Comm. v. Green*
    329 U.S. 156 (1946)....................................................................................................... 11, 12

Cort Thomas, as the court appointed Receiver, respectfully submits this Motion for Ratification and Approval of the Rock Creek Property Orders (defined below), by which the Court appointed appraisers, approved appraisals, and, following notice and hearing, approved the sale of the Rock Creek Property in reliance on the Initial Receivership Order (defined below). Dkt. Nos. 99, 104. The Receiver also requests that the Court authorize the sale "free and clear" of all liens and equitably stay accrual of all interest at any "default rate" which otherwise accrued from the date of the Initial Receivership Order.[1] **To the extent necessary to accomplish all briefing prior to vacatur of the Initial Receivership Order, the Receiver also requests that the Court order expedited briefing regarding this Motion.** In support, the Receiver respectfully shows the Court as follows:

## I.    SUMMARY

The evidence submitted in the Receiver's Declaration and Interim Report [Dkt. 308] and in support of the SEC's renewed Motion for Appointment of Receiver [Dkt. Nos. 309–10] following vacatur of the Initial Receivership Order demonstrates the flow of Investor funds into the respective entities that own properties the Court previously authorized the Receiver to sell, including SF Rock Creek, LLC, the entity that owns the Rock Creek Property (defined below). As when the Court first approved the sale, the sale of the Rock Creek Property now continues to be in the best interest of the Receivership Estate. To prevent duplicative work, unnecessary expenses, further delays, and the potential harm to the Receivership Estate from the dearth of liquid assets and loss of the remaining equity in the Rock Creek Property, and assuming the Court enters a new Receivership Order and includes SF Rock Creek, LLC within the scope of such an order, the Receiver requests that the Court ratify the Rock Creek Property Orders.

---

[1] The Receiver will serve a copy of this motion on the lender that holds the lien on the Rock Creek Property.

The Rock Creek Property is one of many Receivership Assets that at the time of the Receiver's appointment was (and today still is) encumbered by significant debt. As detailed in the Receiver's prior Reports, to date the Receivership Estate has been unable to service the debt on any of the realty held in the Receivership Estate, let alone any of the three properties the Court previously approved for sale, including the Rock Creek Property. Furthermore, the Rock Creek Property is one of many Receivership Assets on which the "standard" contract rate was (and is) above the prevailing market rate, and the threatened "default" rate is nearly double that amount. With every passing month, accruing interest collectively for all Receivership Assets is between approximately $167,899.06 (at the standard interest rates) and $256,529.13 (at the default interest rates). As a result, if the Receivership Estate does not sell any of the real estate assets (the freeze Barton has repeatedly requested), between $2 million and $3 million in interest alone accrues annually, further reducing the assets that may ultimately be available to defrauded investors and creditors.

Specifically regarding the three properties the Court has approved for sale,[2] the monthly interest cost is between $40,791.92 (standard rates) and $91,533.66 (default rates). As of the date of the Initial Receivership Order's vacatur, and using the original agreed, approved closing dates for each transaction, the delayed closing of just these three properties has already cost the

---

[2] The Receiver also sought and obtained the Court's appointment of appraisers, approval of appraisals, and, following a hearing that was published, the Court's approval of the sales of the Frisco Gate Property (owned by FHC Acquisitions, LLC), and the Amerigold Property (owned by Goldmark Hospitality) (together with the Rock Creek Property Orders, the "Sales Orders"). Dkt. Nos. 142, 202. Similar to the Rock Creek Property, the sales of the Frisco Gate Property and Amerigold Property have not closed because of Barton's improper appeals of the sales and eventually the Fifth Circuit's stay of the previously approved sales. (The Receiver will seek the Court's ratification and approval of each of the Sales Orders in separate forthcoming motions.) The Receiver also sought the Court's approval of certain appraisers, appraisals and sales of two of the four HUD apartment complexes, Dkt. Nos. 161 and 164, but those motions were first stayed for the Court to evaluate SPC's competing claim of ownership through a summary proceeding, and then denied without prejudice when the Fifth Circuit vacated and remanded the receivership order. Dkt. Nos. 190, 306.

Receivership Estate between roughly $340,000 (standard rates) and $753,000 (default rates).[3] The Rock Creek Property alone accounts for between approximately $97,000–$177,000 of this loss. And the losses from the continued delay of closings only continue to accrue.

Therefore, through this Motion the Receiver seeks both ratification and approval of the Rock Creek Property Orders and, as explained below, authorization of the sale "free and clear" of any lien or related expenses or claims, and a stay of interest accruing at the default interest rate provided in the Rock Creek Property's Note and Deed of Trust (defined below) following entry of the Initial Receivership Order.

## II.    BACKGROUND

### A.    The Initial Receivership Order

1.    On September 23, 2022, the SEC filed its Complaint against Defendant Tim Barton, and numerous other persons and entities. Dkt. 1.

2.    Among other things, the SEC alleged that between March 2017 and June 2019, Barton "raised approximately $26 million from over 100 investors . . . in unregistered, fraudulent securities offerings related to real-estate investments in Texas." Dkt. ¶ 1. The SEC further alleged that Barton "partnered with Wall . . . and Fu . . . to offer and sell investment loans issued by" the Wall Entities. *Id.* ¶ 2. More specifically, the SEC alleged that Defendants promised that funds raised by the Wall Entities would be used to purchase specific parcels of land at specific prices set forth in the offering materials, those parcels would then be developed by Barton into residential lots, and then Wall would build homes on the lots and sell them. *Id.* ¶ 3.

---

[3] The ranges of standard versus default interest rates for each of the three properties is as follows: Rock Creek Property ($97,000–$177,000); Frisco Gate Property ($161,000–$386,000); Amerigold Suites ($82,000–$190,000).

3

3.      Based on the SEC's Motion and supporting evidence [Dkt. Nos. 6–7] on October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities (the "Receivership Entities") controlled by Barton. Dkt. 29. When the Receiver submitted motions providing extensive evidence demonstrating Barton's control over a vast web of entities, in two subsequent orders, the Court clarified that although not specifically identified in the Initial Receivership Order, more than 130 additional entities controlled by Barton were included as Receivership Entities. Dkt Nos. 62, 88.

**B.      SF Rock Creek and the Rock Creek Property**

4.      SF Rock Creek, LLC ("SF Rock Creek") is the record owner of 4107 Rock Creek Drive in Dallas (the "Rock Creek Property"). SF Rock Creek was previously identified as a Receivership Entity. Dkt. 62. Moreover, as reflected in the Receiver's Report and Declaration [Dkt. 308], the Receiver has determined that SF Rock Creek received or otherwise benefitted from Wall Investor Funds. Dkt. 308 ¶ 59. For example,[4] proceeds from the sale of the Mansion Apartment Homes at Marine Creek, which was purchased using Wall Investor Funds, were used to repay a prior loan on the Rock Creek Property.

5.      Additionally, SF Rock Creek received commingled funds from entities that received SBA loans obtained by relying on properties purchased with Wall Investor Funds, and at least one entity (BM318 LLC, via Carnegie Development, LLC) that received Wall Investor Funds. Dkt. 308 ¶ 59; Dkt. Nos. 76, 77.

6.      As explained further in the Receiver's Report and Declaration [Dkt. 308], if the

---

[4] As explained in the Receiver's Interim Report and Declaration [Dkt. 308], these are some but not all examples of SF Rock Creek receiving the benefit of Wall Investor funds.

Court enters a new Receivership Order, SF Rock Creek should be included within its scope as an entity that received Investor Funds and benefited from Investor Funds.

7.    The Rock Creek Property is subject to a Note and Deed of Trust, which prohibited the owner or its agents (SF Rock Creek LLC and Defendant Barton) from residing in the Property.[5] The Note also includes a 9.99% annual interest rate (the "Standard Interest Rate"), and, assuming no principal reduction payments are made and no other changes to the outstanding balance occur, the Note's required payments of interest accruing at this rate are $8,687.25 per month. Appendix at APP001-002 (the Note at 1–2). If one of these monthly payments remains past due for over 30 days, or if any other Event of Default occurs and is not timely cured, the Note prescribes an 18.0% annual default interest rate (the "Default Interest Rate") that is immediately due and payable *in addition* to the regularly scheduled interest or principal and interest payments, or a total of $15,795.00 per month. *Id.* at APP001, APP003 (the Note at 1, 3).

8.    The Note was current—albeit because of Barton's improper use of funds originally traceable to the Wall Investors—until the Receiver was appointed. As reflected in prior Reports, insufficient cash was available at the time of his appointment (and since) to service debt on any of the properties owned by Receivership Entities. And because the Initial Receivership Order included a stay prohibiting any creditor from enforcing self-help remedies or accelerating obligations, the Receiver used the limited cash available for more pressing concerns, for instance paying overdue utility bills to continue those services for the Amerigold Property, repairs and maintenance necessary to maintain habitability, and to purchase insurance for various properties.

---

[5] To the extent Barton used the Rock Creek Property as his "home," as he has complained on multiple occasions, he did so in violation of the Note and Deed of Trust.

5

C.      **The Rock Creek Property Orders**

9.      Shortly after his appointment, the Receiver sought permission to sell the Rock Creek Property because closing a sale for a residential property should have been faster and simpler than closing a transaction related to commercial property, and because:

- The Receivership Estate was in dire need of cash;
- The $1.4 million sales price exceeded the statutorily required 2/3 of the average appraised value[6];
- Rising interest rates had slowed (and continue to slow) real property sales in the Dallas area;
- The increasing lien on the Rock Creek Property, premised on a 9.9% interest rate (and an 18% default rate that the Receiver contends should have no application), eats the equity in the Rock Creek Property;
- Payments for insurance, utilities, and other expenses related to the Rock Creek Property burdened the limited cash assets on hand[7];
- Barton refused to provide information regarding other assets the Receiver could sell to satisfy continuing financial obligations for operating the Estate; and
- Barton had listed the Rock Creek Property for sale immediately before the Receiver's appointment. Dkt. 93; Dkt. 84 at 7–9.

10.     In reliance on the provisions of the Initial Receivership Order and a statute that governs sales of realty by receivers, 28 U.S.C. § 2001 (the "Statute"), and to preserve the value of the Estate, the Receiver sought the Court's appointment of appraisers, approval of appraisals, a hearing, and approval of the sale of property owned by SF Rock Creek. Dkt. No 76.

11.     During negotiations with the Rock Creek Property lender, shortly before the hearing to consider sale of the Rock Creek Property, the lender agreed to waive default interest if the Note was paid in full before June 1, 2023.

12.     On December 16, 2022, the Court entered an order appointing appraisers and

---

[6] The Receiver incorporates by reference the appraisals, appraisers, and related information and evidence submitted in support of the motion and reply filed regarding sale of the Rock Creek Property. *See* Dkt. Nos. 76, 77, 93.

[7] Since obtaining approval for the sale and because Barton interfered with that sale, the Receiver has leased the property to the prospective purchaser. The rental payments, while initially paid to the lender, are now being used primarily for insurance and taxes.

6

approving appraisals of the Rock Creek Property (the "Rock Creek Property Appraisal Order").

Dkt. 99. On December 20, 2022, following notice and hearing, as required by the Statute, and over

Barton's objections, the Court entered an order approving the sale of the Rock Creek Property in

reliance on the Initial Receivership Order (the "Rock Creek Property Sale Order," and, together

with the Rock Creek Property Appraisal Order, the "Rock Creek Property Orders").[8] Dkt. 104.

13.     Defendant Barton's interference in the sale process for the Rock Creek Property

made it impossible for the Receiver to close the sale and satisfy the Note by June 1, 2023.

In addition to interfering in the sale by contacting the buyer after entry of the Rock Creek Property

Orders [Dkt. 133], Barton also sought a stay of the Rock Creek Property Sale Order. This Court

denied the stay, as did the Fifth Circuit when Barton first appealed the Receivership Order and

again when Barton sought a more limited stay. *See* Dkt. Nos. 132, 135; *SEC v. Barton*, Appeal No.

22-1132, Dkt. 5.

14.      The Fifth Circuit later stayed all sales and property dispositions when it ruled on

Barton's appeal of the Receivership Order. Barton also separately appealed the Rock Creek

Property Sale Order. *See SEC v. Barton*, Appeal No. 22-11226.

15.     On June 19, 2023, the Fifth Circuit dismissed Barton's appeal for lack of

jurisdiction, but, on Barton's petition for rehearing *en banc*, withdrew its prior opinion and

dismissed the appeal as moot, following vacatur of the Receivership Order. *Id.*; Dkt. Nos. 74-1,

90-1. Nonetheless, while the appeal was pending, the title company was unwilling to issue title

insurance.

16.     The Receiver was unable to close the sale while Barton's appeal was pending, but

---

[8] In the Rock Creek Property Sale Order, the Court also declared a lis pendens Barton had filed on the property was void. Dkt. 104.

he and the buyer have extended the closing date numerous times, and upon the Court's ratification of its prior approval of the sale, the Receiver anticipates closing the sale in the coming months. To date, however, the lender has not agreed to waive the default rate interest.

17.    Compliance with the Statute is expensive because it requires costly appraisals,[9] publishing notice of sales and the related hearing, as well as the time necessary to draft the relevant motions and appear at the hearing.

18.    The factual predicate that animated the Receiver's requests for approval of the Rock Creek Property sale—the best interests of the Receivership Estate and satisfaction of the statutory requirements—has not changed, despite the impending vacatur of the Initial Receivership Order. Further, the sales contract underlying the Rock Creek Property sale has been extended and the terms accordingly remain the same as previously approved.

19.    Interest on the Note continues to accrue, and thus the net proceeds available to the Estate upon closing will be less than if the sale had closed when approved. More specifically, assuming only the Standard Interest Rate and assuming at least 7% for standard closing costs, if the sale closes by the end of the year, the net recovery to the Estate should be approximately $100,765.[10]  With these assumptions, the sale will thus still generate a net recovery for the Estate. Moreover, the Receiver's real estate professionals advise that terminating the purchase agreement and remarketing the property is not likely to result in a higher purchase price and will only cause additional delay. Accordingly, and for the same reasons the Court originally approved the sale, the sale continues to be in the best interest of the Receivership Estate. Absent a sale of the Rock Creek

---

[9] In its Order Governing Administrative Procedures (the "Administrative Order"), the Court authorized the Receiver to utilize one or more offers received from disinterested purchasers or broker's opinions of value as two of the appraisals required by the Statute. Dkt. 63. Like the Sales Orders, the Receiver has requested ratification of the Administrative Order.

[10] Again, had the sale closed as originally contemplated on December 27, 2023, approximately $97,586.78 in additional funds would have been retained by the Receivership.

Property in the near future, in light of the significant debt on the property, all remaining equity in the Rock Creek Property will be consumed no later than October 2024 if the Standard Interest Rate ultimately applies. If the Court permits imposition of interest at the Default Interest Rate, all equity will be extinguished by January 2024.

20.     The sale is currently stayed by the Fifth Circuit's vacatur of the Receivership Order. Once the vacatur becomes effective on November 29, 2023 (the "Vacatur Date"), absent the Court's ratification or approval of the sale in connection with the New Receivership Order, the Rock Creek Property Orders are likely void as well.

21.     The real estate market in the Dallas area has not improved since the Rock Creek Property Orders were entered. Instead, interest rates have risen, and demand has fallen. Nonetheless, the contracted buyer has continued to wait until closing the sale is possible.

### III.     ARGUMENT

**A.     The Court Has Authority to Ratify the Rock Creek Property Orders, *Nunc Pro Tunc*, Based on a New Receivership Order**

District courts are permitted to enter "nunc pro tunc" orders to "'reflect the reality' of what has already occurred." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01, 206 L. Ed. 2d 1 (2020) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)); *e.g., David v. King*, No. 122CV1053PTGIDD, 2023 WL 5004039, at *5–6 (E.D. Va. Aug. 4, 2023) (approving engagement of counsel for Chapter 11 phase, *nunc pro tunc*, where same counsel had been approved in prior Chapter 7 phase). The Rock Creek Property Orders reflect the "reality of what has already occurred" regarding the Court's prior approval of the sale of the Rock Creek Property. Ratification based on the Court's discretion and the Receivership Estate created by a new Receivership Order merely breathes new

life into the Rock Creek Property Orders while eliminating the unnecessary delay and expense of complying with statutory requirements that have already been satisfied.

The Receiver accordingly requests that the Court ratify the Rock Creek Property Orders, first appointing and approving the appraisers and appraisals, and second, approving the sale pursuant to the existing contract.

**B.      The Court May—and Should—Also Authorize the Sale of the Rock Creek Property Free and Clear of All Liens, Stay the Accrual of Post-Receivership Default Interest, and Reserve Payment of Any Other Asserted Fees, Costs, or Other Amounts for the Claims Process**

In addition to ratifying the Rock Creek Property Orders, the Court should also authorize the sale of the Rock Creek Property free and clear of all liens, including late fees, attorneys' fees, offsets, penalties, costs, damages, other amounts due, and any other related claims, and instead reserve recovery of these amounts, if at all, in the Receivership claims process and subject to the Court's further approval. *E.g., SEC v. Champion-Cain*, No. 3:19-CV-1628-LAB-AHG, 2020 WL 4673397, at *5 (S.D. Cal. Aug. 12, 2020) ("[I]t has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.") (internal citation omitted); *see Janvey v. Alguire*, No. 3:09-CV-0724-N, 2014 WL 12654910, at *8 (N.D. Tex. July 30, 2014), *aff'd on other grounds*, 847 F.3d 231 (5th Cir. 2017) (A "receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor, if in his opinion it would be unprofitable or undesirable to do so; and he is entitled to a reasonable time to elect whether to adopt or repudiate such contracts") (internal citation omitted); *see SEC v. BIC Real Est. Dev. Corp.*, No. 116CV00344LJOJLT, 2017 WL 2463854, at *7 (E.D. Cal. June 7, 2017) (denying a secured creditor's request for attorney's fees incurred in receivership litigation before the court had "even considered distributing receivership assets to other creditors and investors," because

10

reimbursing a secured creditor's attorney's fees "during the pendency of the receivership estate" would "not comport" with the court's "equity obligations" or "promote judicial economy"); *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154, at *9 (C.D. Cal. Oct. 13, 2015) (declining to order payment of a secured creditor's attorneys' fees and charges in connection with a property sale process). Instead, the Court should order that at closing and from the proceeds of the sale of the Rock Creek Property, the lender shall initially recover only the principal due under the Note as well as interest accrued under the Standard Interest Rate. To the extent the lender asserts that its lien exceeds this amount, such lien should be transferred to the proceeds of the sale of the Rock Creek Property, and entitlement to payment for those additional amounts will be paid, if approved by the Court, during the Receivership's claims process for creditors. Similarly, if the lender claims entitlement to proceeds from the sale for fees, costs, defaults, penalties, breach, offsets, default, or other amounts (including, but not limited to, the delta between interest accruing at the Standard Interest Rate and interest the lender argues is owed at the Default Interest Rate), the Receiver requests that the Court require the lender to submit a claim for the Court's consideration of such amounts during a claim process.

In connection with this requested relief, the Receiver also requests that the Court stay accrual of interest at the Note's Default Interest Rate, which otherwise accrued only after and because of the Initial Receivership Order. The Court possesses discretion to do so:

> [T]he general rule in bankruptcy and in equity receivership . . . that interest on the debtors' obligations ceases to accrue at the beginning of proceedings. . . . As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate.

*Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163 (1946). The delay in paying lenders or making other distributions is "necessitated by law if the courts are properly to preserve

11

and protect the estate for the benefit of all interests involved." *Id.* The Court's equitable goal is "to preserve and protect the debtor's estate pending a ratable distribution among all the creditors according to their interests as of the date the receivership began." *Id.* at 166.

Based on these fundamental principles, courts administering federal equity receivership estates have found that they may "stay post-receivership default interest under equitable considerations."[11] *Capital Cove Bancorp LLC*, 2015 WL 9701154, at *11 (granting the receiver's motion to stay post-receivership default interest on purchase money loan, "[e]ven assuming that the property values exceed the contested claims"). One of those equitable considerations is "whether the application of default interest will harm junior or unsecured creditors." *Id*. (citing comparable cases in the bankruptcy context).

As the Receiver's Report and Declaration shows, substantial evidence demonstrates that Receivership Assets will be, in the words of the *Capital Cove* court, "insufficient to pay all claimants 100% of the amounts claimed, and that many unsecured and junior creditors are most at risk for losing their potential recoveries." *Id.* at *12; *see also* Interim Report and Declaration. Dkt. 308. Therefore, the Court should conclude that "ongoing default interest rates would directly harm junior and unsecured creditors" and that "staying all post-receivership default interest satisfies the 'primary purpose' of receiverships, which is 'to promote orderly and efficient administration of the estate' for the benefit of all creditors." *Id.* This is particularly true here, where payment of default interest rate to the lender would ultimately reduce the potential payment of "principal" that will eventually be available to defrauded investors, as well as other creditors.

---

[11] The equitable discretion discussed in *Vanston Bondholders Protective Comm* allows a court to stay *all* interest accruing from the date a receivership is imposed.  At this juncture, the Receiver is not requesting that relief, and seeks instead only to stay the accrual of *default rate* interest.  He reserves the right, however, to request a stay or modification of all post receivership interest or other charges certain lenders may seek to impose in connection with proposed sales, for instance, excessive or unnecessary attorney's fees purportedly incurred in connection with a default. *See* Dkt. 349.

Accordingly, the Court should stay the accrual of post-Receivership interest at the Default Interest Rate, authorize the lender to recover the principal amount due and interest that has accrued at the Standard Interest Rate as part of the proceeds of the sale of the Rock Creek Property, and permit the lender to include the delta between interest accruing at the Standard Interest Rate and the interest that the lender argues is owed at the Default Interest Rate as part of the lender's claim against the Receivership Estate.

**C.** **Ratifying the Rock Creek Property Orders, Authorizing the Sale of the Rock Creek Property Free and Clear of All Liens, Staying Post-Receivership Default Interest, and Reserving Any Other Asserted Fees, Costs, or Other Amounts for the Claims Process Serve the Best Interests of the Receivership Estate**

Although issues that arise in receiverships are generally fact-specific, two basic principles are recognized in most receivership proceedings. First, district courts are given "extremely broad" discretion in determining "the appropriate procedures to be used in … administration [of a receivership]." *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992); *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019); *SEC v. Safety Fin. Service, Inc*., 674 F.2d 368, 372 (5th Cir. 1982) ("Any action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse") (internal citation omitted). Second, "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). Accordingly, "reasonable procedures instituted by the district court that serve this purpose" are generally upheld. *Id*.; *see also SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2021 WL 2366110, at *6 (E.D. Tex. May 21, 2021), *appeal dismissed sub nom, SEC v. Sethi*, No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021) (court possesses broad powers to fashion appropriate relief intended to assist receiver in accomplishing his primary task, "protect[ing] the Receivership Estate.").

13

More specifically, courts generally consider the "best interest of the estate" when evaluating approval of real property sales. *CFTC v. TMTE, Inc.*, No. 3:20-CV-2910-L, 2022 WL 20210406, at *1 (N.D. Tex. May 12, 2022) (utilizing "best interest of the estate" evaluation); *SEC v. AmeriFirst Funding, Inc.*, No. CIV. 3:07-CV-1188-D, 2008 WL 706846, at *2 (N.D. Tex. Mar. 11, 2008) (same). Further, courts have discretion to approve real property sales by receivers, even before a final judgment is entered. *See FTC v. Consumer Defense, LLC*, No. 2:18-CV-30 JCM (PAL), 2019 WL 266287, at *4 (D. Nev. Jan. 18, 2019) (authorizing receiver's sale before entry of final judgment where "the properties [under receivership] are likely to incur further obligations, such as common assessments and property taxes, that will unnecessarily diminish the value of the estate"); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) (similar).

Ratifying the Rock Creek Property Orders, authorizing the sale of the Rock Creek Property free and clear of all liens, staying accrual of post-Receivership default rate interest under the Note, and reserving any other asserted fees, costs, defaults, penalties, breach, offsets, or other amounts claimed by the lender for the claims process serve the best interest of the Receivership Estate. The requested relief converts this valuable Receivership Asset to much-needed cash, and best preserves what remains of the value of the Receivership Asset not only for the secured lender of the Rock Creek Property but also for all unsecured creditors of the Receivership Estate, including the Wall Investors.

## IV.    CONCLUSION

For the reasons stated in the original motion and supporting reply by which the Receiver sought permission to sell the Rock Creek Property, as well as the additional reasons described in the Receiver's Interim Report and Declaration filed in connection with the SEC's renewed Motion for Appointment of a Receiver, and to conserve Receivership Assets, the Receiver requests that

the Court ratify the Rock Creek Property Orders *nunc pro tunc*. Additionally, after satisfaction of the principal amount due under any Note or Deed of Trust and interest accrued at the Standard Interest Rate at closing, the Receiver requests that the Court authorize the sale of the Rock Creek Property free and clear of all liens, stay post-Receivership default interest, and reserve payment of any other requested fees, costs, defaults, penalties, breach, offsets or other amounts for the claims process.

The Receiver also requests such other and further relief to which he may show himself entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    C. Alan Carrillo
     Texas Bar No. 24109693
     alan@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## **VERIFICATION**

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for the Receiver conferred with counsel for Barton and the SEC, via email, on or about October 27, 2023. Counsel for the SEC confirmed the SEC is not opposed. Barton opposes the relief requested and warned that if required to respond to this and other forthcoming motions about which the Receiver conferred, he would seek sanctions against the Receiver's firm. Sanctions are wholly unwarranted but if requested the Receiver will respond in due course.

Additionally, the Receiver conferred with the lender on the Rock Creek Property, who is also opposed.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

The Receiver will provide a copy of this Motion and any order regarding expedited briefing to the Rock Creek Property lender.

16