**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | §<br>§<br>§ | |
| *Plaintiff*, | §<br>§ | |
| v. | §<br>§ | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | §<br>§<br>§ | |
| *Defendants*. | § | |

**APPENDIX IN SUPPORT OF**
**RECEIVER'S VERIFIED AND EXPEDITED MOTION**
**TO (I) RATIFY ORDERS APPOINTING APPRAISERS,**
**APPROVING APPRAISALS AND APPROVING SALE OF REAL ESTATE AS**
**REQUIRED BY 28 U.S.C. § 2001 WITH RESPECT TO THE ROCK CREEK**
**PROPERTY, (II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS,**
**AND (III) STAY ACCRUAL OF POST-RECEIVERSHIP DEFAULT RATE INTEREST**

| EXHIBIT | DESCRIPTION | APP PAGES |
|---|---|---|
| A | Promissory Note between SF Rock Creek, LLC and Athas Capital Group, Inc. dated August 24, 2022 | APP001-009 |
| B | Deed of Trust | APP0010-047 |
| C | Guaranty Agreement between Timothy L. Barton and Athas Capital Group, Inc. dated August 24, 2022 | APP048-054 |

1

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

# EXHIBIT A

# PROMISSORY NOTE
### (Texas)

US $1,053,000.00                                                    August 24, 2022
MIN:101515500000131790                               MERS Phone # 1-888-679-6377

FOR VALUE RECEIVED, the undersigned, **SF ROCK CREEK, LLC, a Texas limited liability company** (together with such party's or parties' successors and assigns, "**Borrower**"), jointly and severally (if more than one) promises to pay to the order of **ATHAS CAPITAL GROUP, INC., a California corporation**, the principal sum of **ONE MILLION FIFTY-THREE THOUSAND AND 00/100 DOLLARS (US $1,053,000.00)**, with interest on the unpaid principal balance, as hereinafter provided.

## A. Defined Terms.

**A.1.** Capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Mortgage. In addition to defined terms found elsewhere in this Note, as used in this Note, the following definitions shall apply:

**Business Day**: Any day other than a Saturday, a Sunday or any other day on which Lender or the national banking associations are not open for business.

**Default Rate**: The rate of **eighteen percent (18.00%)** per annum. However, at no time will the Default Rate exceed the Maximum Interest Rate.

**Disbursement Date**: The date of the initial disbursement of Loan proceeds hereunder.

**First Payment Due Date**: October 1, 2022.

**Fixed Interest Rate**: The annual interest rate of **9.99 percent (9.99%)**.

**Indebtedness**: The principal of, interest on, or any other amounts due at any time under this Note, the Mortgage or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of the Mortgage under section L of the Mortgage or any other applicable provision of the Mortgage or any other Loan Document or as permitted by law.

**Lender**: The holder(s) from time to time of this Note.

**Loan**: The loan evidenced by this Note.

**Maturity Date**: The earlier of (i) **September 1, 2024**, and (ii) the date on which the unpaid principal balance of this Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document.

**Maximum Interest Rate**: The rate of interest that results in the maximum amount of interest allowed by applicable law.

**Mortgage**: That certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of the date of this Note, executed by Borrower to or for the benefit of Mortgage Electronic Registration Systems, Inc., as nominee, in an administrative capacity only, for Lender and its successors and assigns and securing this Note, which Mortgage encumbers certain real property commonly known as **4107 Rock Creek Drive, Dallas, TX 75204**.

**Payment Due Date**: The First Payment Due Date and any subsequent date on which a monthly installment of interest or principal and interest is due and payable pursuant to section C below.

**Prepayment Premium End Date**: September 1, 2023.

**Prepayment Premium Period**: The period during which, if a prepayment of principal occurs, a prepayment premium will be payable by Borrower to Lender. The Prepayment Premium Period is the period from the Disbursement Date to and excluding the Prepayment Premium End Date.

**Property Jurisdiction**: The jurisdiction in which the Land is located.

Texas Promissory Note
Loan No.: BPB2022060382
© GoDocs™ All Rights Reserved.

**A.2.**    "Event of Default" and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Mortgage.

**B.    Manner of Payment.**

**B.1.**    Subject to section B.2 below, all payments due under this Note shall be payable at **FCI LENDER SERVICES, INC., P.O. BOX 27370, ANAHEIM, CA 92809-0112**, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

**B.2.**    By separate document, Borrower shall authorize Lender to deduct all monthly installments of interest and/or principal, and any other Indebtedness, due under this Note, from Borrower's U.S. domiciled checking or operating account by means of Automated Clearing House (ACH) automatic debit transfers. Borrower shall do the following: (i) maintain an Automatic Clearing House (ACH) election for automatic payment of its monthly installment of interest and/or principal, and any other Indebtedness, under the Note, from a checking or operating account domiciled in the United States, (ii) maintain sufficient funds to cover the full payment, at the time the ACH payment is made to Lender, in the account designated for ACH payment, and (iii) not terminate the ACH election such that monthly installment payments, and other Indebtedness, under this Note are not automatically withdrawn. Any failure to comply with the provisions of this section B.2 shall constitute an Event of Default under the Loan, regardless of whether any amount is currently due to Lender.

**C.    Payments.**

**C.1.**    Interest will accrue on the outstanding principal balance of this Note at the Fixed Interest Rate, subject to the provisions of section H below.

**C.2.**    Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months. A balloon payment will be due upon full repayment of this Note even if this Note is not repaid until the Maturity Date. Each monthly payment will first be applied to pay in full interest due, and the balance of the monthly payment paid by Borrower will be credited to principal.

**C.3.**    Unless disbursement of principal is made by Lender to Borrower on the first day of a calendar month, interest for the period beginning on the Disbursement Date and ending on and including the last day of such calendar month shall be payable by Borrower on or before the Disbursement Date. If the Disbursement Date is on the first day of a calendar month, then no payment will be due from Borrower until the First Payment Due Date. The Payment Due Date for the first monthly installment payment under section C.4 below of interest only or principal and interest, as applicable, will be the First Payment Due Date set forth in section A.1 above. Except as provided in this section C.3 and in section J, accrued interest will be payable in arrears.

**C.4.**    Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, accrued interest only shall be payable by Borrower in consecutive monthly installments due and payable on the first day of each calendar month. The amount of the monthly installment of interest only payable pursuant to this section C.4 on a Payment Due Date shall be **EIGHT THOUSAND SEVEN HUNDRED SIXTY-SIX AND 22/100 DOLLARS (US $8,766.22)** (assuming no principal reduction payments have been made and no other changes to the outstanding principal balance have occurred). The amount of the monthly interest only payment shall be adjusted in the event any principal reduction payments or other changes to the outstanding principal balance are made during the term of the Loan.

**C.5.**    All remaining Indebtedness, including all principal and interest, shall be due and payable by Borrower on the Maturity Date. All payments under this Note shall be made in immediately available U.S. funds. Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any accrued interest remaining past due for **thirty (30)** days or more, at Lender's discretion, may be added to and become part of the unpaid principal balance of this Note and any reference to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance. Any amount added to principal pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of interest or principal and interest. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any preauthorized monthly debit from

APP003

Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $25.00 (but not more than the maximum amount allowed by law) for each such event.

**C.6.** *Balloon Payment*. The interest-only payment schedule contained in this Loan requires that you make a balloon payment of **ONE MILLION SIXTY-ONE THOUSAND SEVEN HUNDRED SIXTY-SIX AND 22/100 DOLLARS (US $1,061,766.22)** on the Maturity Date, which is comprised of the unpaid principal balance of this Note in the amount of $1,053,000.00, plus the unpaid interest-only payment for the period from **August 1, 2024** through **August 31, 2024** (the "Balloon Payment"). This Balloon Payment is more than double the amount of the regular payments.

**D.  Application of Payments.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply the amount received to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

**E.  Security.** The Indebtedness is secured by, among other things, the Mortgage and reference is made to the Mortgage for other rights of Lender as to collateral for the Indebtedness.

**F.  Acceleration.** If an Event of Default has occurred, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under section J below, and all other amounts payable under this Note and any other Loan Document, shall at once become due and payable, at the option of Lender, without any prior notice to Borrower (except if notice is required by applicable law, then after such notice). Lender may exercise this option to accelerate regardless of any prior forbearance. For purposes of exercising such option, Lender shall calculate the prepayment premium as if prepayment occurred on the date of acceleration.

**G.  Late Charge.**

**G.1.**  If any installment of interest or principal and interest or other amount payable under this Note, the Mortgage or any other Loan Document (including the Balloon Payment) is not received in full by Lender within **five (5)** days after the installment or other amount is due (unless applicable law requires a longer period of time before a late charge may be imposed, in which event such longer period shall be substituted), Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to **ten percent (10%)** of such installment or other amount due (unless applicable law requires a lesser amount be charged, in which event such lesser amount shall be substituted).

**G.2.**  Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charge payable pursuant to this section G represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to section H below.

**H.  Default Rate.**

**H.1.**  So long as (a) any monthly installment under this Note remains past due for **thirty (30)** days or more or (b) any other Event of Default has occurred which, if it is amenable to cure, has not been timely cured, then notwithstanding anything in section C above to the contrary, interest under this Note shall accrue on the unpaid principal balance from the Payment Due Date of the first such unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at the Default Rate.

**H.2.**  From and after the Maturity Date, the unpaid principal balance and all accrued interest shall continue to bear interest at the Default Rate until and including the date on which the entire principal balance is paid in full.

**H.3.**  Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for **thirty (30)** days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those

Texas Promissory Note                                                                                                   Page 3
© GoDocs™ All Rights Reserved.

additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for **thirty (30)** days or more or any other Event of Default has occurred which, if it is amenable to cure, has not been timely cured, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the Fixed Interest Rate shall be immediately due and payable in addition to the regularly scheduled interest or principal and interest payments.

I.    **Full Recourse Personal Liability.** Borrower shall have full recourse personal liability under this Note, the Mortgage and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under this Note, the Mortgage and all other Loan Documents.

J.    **Voluntary and Involuntary Prepayments.**

**J.1.**    Any receipt by Lender of principal due under this Note prior to the Maturity Date, other than principal required to be paid in monthly installments pursuant to section C above, constitutes a prepayment of principal under this Note. Without limiting the foregoing, any application by Lender, prior to the Maturity Date, of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note constitutes a prepayment under this Note.

**J.2.**    Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Payment Due Date so long as Borrower designates the date for such prepayment in a notice from Borrower to Lender given at least **thirty (30)** days prior to the date of such prepayment. If a Payment Due Date (as defined in section A.1 above) falls on a day which is not a Business Day, then with respect to payments made under this section J only, the term "Payment Due Date" shall mean the Business Day immediately preceding the scheduled Payment Due Date.

**J.3.**    Notwithstanding section J.2 above, Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day other than a Payment Due Date if Borrower provides Lender with the notice set forth in section J.2 above and meets the other requirements set forth in this section J.3. Borrower acknowledges that Lender has agreed that Borrower may prepay principal on a Business Day other than a Payment Due Date only because Lender shall deem any prepayment received by Lender on any day other than a Payment Due Date to have been received on the Payment Due Date immediately following such prepayment and Borrower shall be responsible for all interest that would have been due if the prepayment had actually been made on the Payment Due Date immediately following such prepayment.

**J.4.**    Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a **"Partial Prepayment"**) at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to section J.5 below, based on the amount being prepaid, shall be due and payable to Lender upon demand. In order to voluntarily prepay all or any part of the principal of this Note, Borrower must also pay to Lender, together with the amount of principal being prepaid, (a) all accrued and unpaid interest due under this Note, plus (b) all other sums due to Lender at the time of such prepayment, plus (c) any prepayment premium calculated pursuant to section J.5 below, to the extent such prepayment premium does not exceed the Maximum Interest Rate.

**J.5.**    Except as provided in section J.6 below, a prepayment premium shall be due and payable by Borrower in connection with any prepayment of principal under this Note during the Prepayment Premium Period. The prepayment premium shall be **five percent (5%)** of the amount of principal being prepaid for any prepayments occurring during the Prepayment Premium Period.

**J.6.**    Notwithstanding any other provision of this section J, no prepayment premium shall be payable with respect to (a) any prepayment made after the expiration of the Prepayment Premium Period or (b) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Mortgage.

**J.7.**    Unless Lender agrees otherwise in writing, a permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments.

**J.8.**    Borrower recognizes that any prepayment of any of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from an Event of Default by Borrower, will result in Lender's incurring loss,

Texas Promissory Note                                                                                    Page 4
© GoDocs' All Rights Reserved.

including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in this Note represents a reasonable estimate of the damages Lender will incur because of a prepayment. Borrower further acknowledges that any prepayment premium provisions of this Note are a material part of the consideration for the Loan, and that the terms of this Note are in other respects more favorable to Borrower as a result of Borrower's voluntary agreement to the prepayment premium provisions.

**K.   Costs and Expenses.** To the fullest extent allowed by applicable law, Borrower shall pay: (a) all expenses and costs, including Attorneys' Fees and Costs incurred by Lender or any Loan Servicer as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents (whether or not any lawsuit or other proceeding is instituted), including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding; and (b) all expenses and costs, including Attorneys' Fees and Costs, incurred by Lender or any Loan Servicer in connection with the servicing of the Loan, including without limitation responding to requests from Borrower, and expenses and costs incurred in connection with potential defaults or other legal questions regarding the Loan.

**L.   Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Mortgage, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

**M.   Waivers.** Borrower and all endorsers and guarantors of this Note and all other third party obligors waive presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness.

**N.   Loan Charges.** Borrower and Lender intend at all times to comply with the law of the State of Texas governing the Maximum Interest Rate or the maximum amount of interest payable on or in connection with this Note and the Indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under this Note or under any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or as a result of acceleration of the maturity of this Note, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by any applicable law, then Borrower and Lender expressly intend that all excess amounts collected by Lender shall be applied to reduce the unpaid principal balance of this Note (or, if this Note has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of this Note, the Mortgage and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under this Note or any other Loan Document reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under this Note or any other Loan Document. The right to accelerate the Maturity Date of this Note does not include the right to accelerate any interest, which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in this Note, the Mortgage or any other Loan Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of this Note, the total amount of interest that Borrower is obligated to pay and Lender is entitled to receive with respect

Texas Promissory Note                                                                                      Page 5
© GoDocs™ All Rights Reserved.

to the Indebtedness shall not exceed the amount calculated on a simple (i.e., non-compounded) interest basis at the maximum rate on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances and any advances made pursuant to the Mortgage or other Loan Documents (such as for the payment of taxes, insurance premiums and similar expenses or costs).

O.  **Purpose of Indebtedness.** Borrower states that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for agricultural, personal, family, or household purposes.

P.  **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

Q.  **Governing Law.** This Note shall be governed by the laws of the Property Jurisdiction.

R.  **Construction.** The captions and headings of the Sections of this Note are for convenience only and shall be disregarded in construing this Note. Any reference in this Note to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Note or to a Section of this Note. All Exhibits attached to or referred to in this Note are incorporated by reference in this Note. Any reference in this Note to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Note includes the plural and use of the plural includes the singular. As used in this Note, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." The use of one gender includes the other gender, as the context may require. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Note shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Note or any other Loan Document), and (b) any reference in this Note to any Person shall be construed to include such Person's successors and assigns.

S.  **Notices; Written Modifications.**

   S.1.  All notices, demands and other communications required or permitted to be given pursuant to this Note shall be given in accordance with section EE of the Mortgage.

   S.2.  Any modification or amendment to this Note shall be ineffective unless in writing signed by the party sought to be charged with such modification or amendment.

T.  **Consent to Jurisdiction and Venue.** Borrower agrees that any controversy arising under or in relation to this Note may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies that shall arise under or in relation to this Note. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise. However, nothing in this Note is intended to limit any right that Lender may have to bring any suit, action or proceeding relating to matters arising under this Note in any court of any other jurisdiction.

U.  **Counterparts.** This Note may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Note.

V.  **Document Imaging.** Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Note and the other Loan Documents, and Lender may destroy or archive the paper originals. Borrower waives (1) any right to insist or require that Lender produce paper originals, (2) agrees that such images shall be accorded the same force and effect as the paper originals, (3) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (4) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Note or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

W.   WAIVER OF TRIAL BY JURY. BORROWER AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

IN WITNESS WHEREOF, and in consideration of Lender's agreement to lend Borrower the principal amount set forth above, Borrower has signed and delivered this Note under seal (where applicable) or has caused this Note to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Borrower intends that this Note shall be deemed to be signed and delivered as a sealed instrument.

**SIGNATURE(S) ON FOLLOWING PAGE(S)**

APP008

BORROWER:

SF ROCK CREEK, LLC,
a Texas limited liability company

By:    ONE PASS INVESTMENTS, LLC,
       a Delaware limited liability company,
       Manager

       By:    _____
              TIMOTHY L. BARTON, Trustee of the ONE RL Trust,
              Sole Member and Manager

(SEAL)

Texas Promissory Note                                                              Page 8
© GoDocs. All Rights Reserved.

APP009

# EXHIBIT B

APP010

Sendera Title

GF# 22D1719-VVJA

*PREPARED BY, AND AFTER RECORDING*
*RETURN TO:*

ATHAS CAPITAL GROUP, INC.
27001 Agoura Road
Suite #200
Calabasas, CA 91301

Tax Parcel Number(s): **00000195718000000**

Space Above for Recorder's Use
**MIN:101515500000131790**

# DEED OF TRUST,
# ASSIGNMENT OF RENTS,
# SECURITY AGREEMENT AND FIXTURE FILING
## (TEXAS)

**I.**     THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Instrument**") is dated as of **August 24, 2022**, and is given by **SF ROCK CREEK, LLC, a Texas limited liability company**, whose address is **13901 Midway Road 102, Dallas, TX 75244**, as trustor ("**Borrower**"), to **PAUL KELLOGG, ESQ.**, as trustee ("**Trustee**"), for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation**, and whose mailing address is **MERS, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS**, as beneficiary ("**Beneficiary**" or "**MERS**"). **SF ROCK CREEK, LLC's** organizational identification number is **803703380**.

**II.**     Borrower in consideration of the Indebtedness and the trust created by this Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the Mortgaged Property, including the Land located in **Dallas** County, State of **Texas** and described in Exhibit "A" attached to this Instrument, to have and to hold the Mortgaged Property unto Trustee, Trustee's successor in trust and Trustee's assigns forever.

**III.**     TO SECURE TO **ATHAS CAPITAL GROUP, INC., a California corporation**, whose address is **27001 Agoura Road, Suite #200, Calabasas, CA 91301** ("**Lender**") the repayment of the Indebtedness evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on the earlier of (i) **September 1, 2024**, and (ii) the date on which the unpaid principal balance of the Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document (the "**Maturity Date**"), in the principal amount of **ONE MILLION FIFTY-THREE THOUSAND AND 00/100 DOLLARS (US $1,053,000.00)**, and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

**Texas Deed of Trust**
© GoDocs® All Rights Reserved.

**IV.**      Borrower warrants and represents that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered, except as shown on the Schedule of Title Exceptions. Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Mortgaged Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Instrument.

**Covenants.** In consideration of the mutual promises set forth in this Instrument, Borrower and Lender, covenant and agree as follows:

**A.   DEFINITIONS.** The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:

"**Assignment**" means, collectively, the provisions of sections C and D of this Instrument relating to the assignment of rents and leases affecting the Mortgaged Property.

"**Attorneys' Fees and Costs**" means (a) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable (whether or not any lawsuit or other proceeding is instituted), including costs of Lender's and Loan Servicer's allocable costs of in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (b) costs and fees of expert witnesses, including appraisers; and (c) investigatory fees. As used in this Instrument and in the Note, "Attorneys' Fees and Costs" shall include those awarded by an appellate court.

"**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. Section 101 *et seq.*, as amended from time to time.

"**Borrower**" means all Persons identified as "Borrower" in Recital I of this Instrument, together with their successors and assigns.

"**Borrower Certificate**" means that certain Borrower Certificate dated the same date as this Instrument, executed by Borrower in favor of Lender.

"**Borrower's Statements of Fact**" means the statements of fact made by Borrower that are enumerated in the Borrower Certificate.

"**Collateral Agreement**" means any separate agreement between Borrower and Lender for the purpose of establishing replacement reserves for the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account.

"**Controlling Entity**" means an entity which owns, directly or indirectly through one or more intermediaries, (A) a general partnership interest or a Controlling Interest of the limited partnership interests in Borrower (if Borrower is a partnership or joint venture), (B) a manager's interest in Borrower or a Controlling Interest of the ownership or membership interests in Borrower (if Borrower is a limited liability company), or (C) a Controlling Interest of any class of voting stock of Borrower (if Borrower is a corporation).

"**Controlling Interest**" means (i) 51 percent or more of the ownership interests in an entity, or (ii) a percentage ownership interest in an entity of less than 51 percent, if the owner(s) of that interest actually direct(s) the business and affairs of the entity without the requirement of consent of any other party.

**Texas Deed of Trust**                                                                                                                    **Page 2**
© GoDocs® All Rights Reserved.

"**Environmental Permit**" means any permit, license, or other authorization issued under any Hazardous Materials Law with respect to any activities or businesses conducted on or in relation to the Mortgaged Property.

"**Event of Default**" means the occurrence of any event listed in section V below

"**Fixtures**" means all property now or hereafter owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

"**Governmental Authority**" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property or over Borrower.

"**Guarantor**" means each guarantor identified in that certain Guaranty dated the same date as this Instrument, as well as any other or future guarantor of all or any portion of the Indebtedness.

"**Guaranty**" means that certain Guaranty dated the same date as this Instrument, and each and every other guaranty executed by any Guarantor in favor of Lender in connection with the Loan.

"**Hazardous Materials**" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

"**Hazardous Materials Laws**" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials or the protection of human health or the environment and apply to Borrower or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Federal Water Pollution Control Act, 33 U.S.C. Section 1251 *et seq.*, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, as amended by the Superfund Amendments Reauthorization Act of 1986, the Materials Transportation Act, 49 U.S.C. Section 1801 *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Solid Waste Disposal Act, as amended, the Clean Air Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, and their state analogs.

"**Impositions**" and "**Imposition Deposits**" are defined in section G.1 below

**Texas Deed of Trust**
© GoDocs℠ All Rights Reserved.

Page 3

APP013

"**Improvements**" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

"**Indebtedness**" means the principal of, interest on, and all other amounts due at any time under, the Note, this Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of this Instrument under section L of this Instrument or any other applicable provision of this Instrument or any other Loan Document or as permitted by law.

"**Initial Owners**" means, with respect to Borrower or any other entity, the Person(s) that (i) on the date of the Note, or (ii) on the date of a Transfer to which Lender has consented, own in the aggregate 100% of the ownership interests in Borrower or that entity.

"**Land**" means the land described in Exhibit "A".

"**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

"**Lender**" means the Person or Persons identified as "Lender" in Recital III of this Instrument, or any subsequent holder of the Note.

"**Loan**" means the loan evidenced by the Note and secured by this Instrument.

"**Loan Documents**" means the Note, this Instrument, the Assignment, the Borrower Certificate, all guaranties, all indemnity agreements, all Collateral Agreements, O&M Plans, and any other documents now or in the future executed by Borrower, any Guarantor or any other Person in connection with the Loan, as such documents may be amended from time to time.

"**Loan Servicer**" means the Person or Persons that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, this Instrument and any other Loan Document, and otherwise to service the Loan for the benefit of Lender. Unless otherwise specified in section B of the Note, or unless Borrower receives notice to the contrary, the Loan Servicer means the Person or Persons identified as "Lender" in Recital III of this Instrument.

"**MERS**" means the entity identified as "Beneficiary" or "MERS" in page one of this Instrument. MERS acts as nominee in the county land records for the Lender as more particularly set forth in the Section of this Instrument entitled "MERS PROVISIONS".

"**Mortgaged Property**" means all of Borrower's present and future right, title and interest in and to all of the following: (1) the Land; (2) the Improvements; (3) the Fixtures; (4) the Personalty; (5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated; (6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement; (7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof; (8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations; (9) all proceeds from the conversion, voluntary

**Texas Deed of Trust**                                                                                                                                Page 4
© GoDocs® All Rights Reserved.

APP014

or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; (10) all Rents and Leases; (11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Loan; (12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all Imposition Deposits) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account; (13) all refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Instrument is dated); (14) all tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits; and (15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

"**Note**" means the Promissory Note described in Recital III of this Instrument, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

"**O&M Plan**" shall have the meaning as defined in section R of this Instrument.

"**Person**" means any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

"**Personalty**" means all tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements.

"**Potential Default**" means any event or condition that with notice or passage of time, or both, would constitute an Event of Default.

"**Property Insurance**" is defined in section S below

"**Property Jurisdiction**" is defined in section DD.1 below

"**Rents**" means all rents, revenues and other income of the Land or the Improvements, whether now due, past due, or to become due, and deposits forfeited by tenants.

"**Schedule of Title Exceptions**" means title exceptions approved by Lender and shown in the schedule of exceptions to coverage in the title policy issued to Lender contemporaneously with the recordation of this Instrument and insuring Lender's interest in the Mortgaged Property.

"**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

"**Texas Rents Act**" means the "Texas Assignment of Rents Act", Chapter 64 of the Texas Property Code (Senate Bill No. 889), as amended and updated.

"**Transfer**" is defined in section U below

Texas Deed of Trust
© GoDocs® All Rights Reserved.

Page 5

"**Uniform Commercial Code**" or "**UCC**" means the Uniform Commercial Code as in effect in the Property Jurisdiction; *provided* that, to the extent perfection or the effect of perfection or non-perfection or the priority of any security interest in any collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the Property Jurisdiction, "**Uniform Commercial Code**" or "**UCC**" means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions hereof relating to such perfection, effect of perfection or non-perfection or priority.

B.    **UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Instrument is also a security agreement under the Uniform Commercial Code for the Fixtures, and Borrower, as debtor, hereby grants to MERS and/or Lender, as secured party, a security interest in the Fixtures. Borrower hereby authorizes Lender to prepare and file fixture filing financing statements and amendments thereto in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such fixture filing financing statements and amendments. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the Fixtures. Unless Borrower gives notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument as Lender may require, Borrower shall not (a) change its name, identity, structure or jurisdiction of organization; or (b) change the location of its place of business (or chief executive office if more than one place of business). If an Event of Default has occurred which, if it is amenable to cure, has not been timely cured, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the Fixtures separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

C.    **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**

    **C.1.**    As part of the consideration for the Indebtedness, Borrower collaterally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish an assignment to Lender of all Rents in order to provide additional security for the current and future payment and performance by Borrower of all Indebtedness secured hereby and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an assignment for additional security only. For purposes of giving effect to this collateral assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in section A above. However, if this assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of MERS and/or Lender, which lien shall be effective as of the date of this Instrument.

    **C.2.**    After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred which, if it is amenable to cure, has not been timely cured, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's

**Texas Deed of Trust**                                                                                                          Page 6
© GoDocs® All Rights Reserved.

rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall, upon notice to Borrower in the manner prescribed by the Texas Rents Act, be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant in the manner prescribed by the Texas Rents Act. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

**C.3.**    Borrower states that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the Loan), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this section C, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than two (2) months prior to the due dates of such Rents. Borrower shall not collect or accept payment of any Rents more than two (2) months prior to the due dates of such Rents.

**C.4.**    This section C of this Instrument is subject to the Texas Rents Act and in the event of any conflict or inconsistency between the provisions of this Instrument and the provisions of the Texas Rents Act, the provisions of the Texas Rents Act shall control.  Nothing in this Instrument is intended to or shall diminish or impair Lender's rights under the Texas Rents Act.

**D.    ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.**

**D.1.**    As part of the consideration for the Indebtedness, Borrower collaterally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease. It is the intention of Borrower to establish an assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases in order to provide additional security for the current and future payment and performance by Borrower of all Indebtedness secured hereby. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an assignment for additional security only. For purposes of giving effect to this collateral assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in section A above. However, if this assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of MERS and/or Lender, which lien shall be effective as of the date of this Instrument.

**D.2.**    Until Lender gives notice to Borrower of Lender's exercise of its rights under this section D, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this section D or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases shall automatically terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

**D.3.**    Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this section D shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the

**Texas Deed of Trust**                                                                                                         Page 7
© GoDocs® All Rights Reserved.

APP017

Improvements. The acceptance by Lender of the assignment of the Leases pursuant to section D.1 above shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property. Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (a) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (b) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (c) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

**D.4.** Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this section D at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

**D.5.** Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect. All Leases shall be on forms approved by Lender, shall be for initial terms of at least six months and not more than two years, and shall not include options to purchase.

**D.6.** This section D of this Instrument is subject to the Texas Rents Act and in the event of any conflict or inconsistency between the provisions of this Instrument and the provisions of the Texas Rents Act, the provisions of the Texas Rents Act shall control. Nothing in this Instrument is intended to or shall diminish or impair Lender's rights under the Texas Rents Act.

**E. PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS; PREPAYMENT PREMIUM.** Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents. Borrower shall pay a prepayment premium in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

**F. FULL RECOURSE PERSONAL LIABILITY.** Borrower shall have full recourse personal liability under the Note, this Instrument and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Note, this Instrument and all other Loan Documents.

**G. DEPOSITS FOR TAXES, INSURANCE AND OTHER CHARGES.**

**G.1.** Unless this requirement is waived in writing by Lender, or as otherwise provided in this section G, Borrower shall deposit with Lender on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Lender), until the Indebtedness is paid in full, an additional amount estimated by Lender to be sufficient to accumulate with Lender the entire sum required to pay, when due, the items marked "COLLECT" below, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate. Lender will not initially require Borrower to make Imposition Deposits with respect to any items marked "DEFERRED" or "NOT APPLICABLE" below.

| | |
|---|---|
| [COLLECT] | Property Insurance premiums or other insurance premiums required by Lender under section S below |
| [COLLECT] | Taxes |

**Texas Deed of Trust**                                                                                     Page 8
© GoDocs® All Rights Reserved.

APP018

[DEFERRED]    water and sewer charges (that could become a lien on the Mortgaged Property)

[DEFERRED]    assessments or other charges (that could become a lien on the Mortgaged Property)

The amounts deposited under the preceding sentence are collectively referred to in this Instrument as the "**Imposition Deposits**". The obligations of Borrower for which the Imposition Deposits are required are collectively referred to in this Instrument as "**Impositions**". The amount of the Imposition Deposits shall be sufficient to enable Lender to pay each Imposition before the last date upon which such payment may be made without any penalty or interest charge being added. Lender shall maintain records indicating how much of the monthly Imposition Deposits and how much of the aggregate Imposition Deposits held by Lender are held for the purpose of paying Taxes, insurance premiums and each other Imposition.

**G.2.**  Imposition Deposits shall be held by Lender or in a bank, credit union or other financial institution designated by Lender. Lender shall apply the Imposition Deposits to pay Impositions so long as no Event of Default has occurred which, if it is amenable to cure, has not been timely cured. Unless applicable law requires, Lender shall not be required to pay Borrower any interest, earnings or profits on the Imposition Deposits. As additional security for all of Borrower's obligations under this Instrument and the other Loan Documents, Borrower hereby pledges and grants to Lender a security interest in the Imposition Deposits and all proceeds of, and all interest and dividends on, the Imposition Deposits. Any amounts deposited with Lender under this section G shall not be trust funds, nor shall they operate to reduce the Indebtedness, unless applied by Lender for that purpose under section G.5 below.

**G.3.**  If Lender receives a bill or invoice for an Imposition, Lender shall pay the Imposition from the Imposition Deposits held by Lender. Lender shall have no obligation to pay any Imposition to the extent it exceeds Imposition Deposits then held by Lender. Lender may pay an Imposition according to any bill, statement or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement or estimate or into the validity of the Imposition.

**G.4.**  If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition exceeds the amount reasonably deemed necessary by Lender, plus at Lender's discretion, a contingency reserve of up to one-sixth of such estimate, the excess shall be credited against future installments of Imposition Deposits. If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition is less than the amount reasonably estimated by Lender to be necessary, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate, Borrower shall pay to Lender the amount of the deficiency within fifteen (15) days after notice from Lender.

**G.5.**  If an Event of Default has occurred which, if it is amenable to cure, has not been timely cured, Lender may apply any Imposition Deposits, in any amounts and in any order as Lender determines, in Lender's discretion, to pay any Impositions or as a credit against the Indebtedness. Upon payment in full of the Indebtedness, Lender shall refund to Borrower any Imposition Deposits held by Lender.

**G.6.**  If Lender does not collect an Imposition Deposit with respect to an Imposition either marked "DEFERRED" in section G.1 above or pursuant to a separate written waiver by Lender, then at least thirty (30) days before the date each such Imposition is due, or on the date this Instrument requires each such Imposition to be paid, Borrower must provide Lender with proof of payment of each such Imposition for which Lender does not require collection of Imposition Deposits. Lender may revoke its deferral or waiver and require Borrower to deposit with Lender any or all of the Imposition Deposits listed in section G.1 above, regardless of whether any such item is marked "DEFERRED" in such section, upon notice to Borrower, (a) if Borrower does not timely pay any of the Impositions as required by this Instrument, (b) if Borrower fails to provide timely proof to Lender of such payment as required by this Instrument, or (c) at any time from and after the occurrence of an Event of Default. In the event of a Transfer prohibited by or requiring Lender's approval under section U below, Lender's waiver or deferral of the collection of

**Texas Deed of Trust**
© GoDocs® All Rights Reserved.

Page 9

any Imposition Deposit in this section G may be modified or rendered void by Lender at Lender's sole option and discretion by notice to Borrower and the transferee(s) as a condition of Lender's approval of such Transfer.

**H.    COLLATERAL AGREEMENTS.** Borrower shall deposit with Lender such amounts as may be required by any Collateral Agreement and shall perform all other obligations of Borrower under each Collateral Agreement.

**I.    APPLICATION OF PAYMENTS.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument and the Note shall remain unchanged.

**J.    COMPLIANCE WITH LAWS AND ORGANIZATIONAL DOCUMENTS.**

**J.1.**    Borrower shall comply with all laws, ordinances, regulations and requirements of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, fair housing, zoning and land use, and Leases. Borrower also shall comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits.

**J.2.**    Borrower shall at all times maintain records sufficient to demonstrate compliance with the provisions of this section J.

**J.3.**    Borrower shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise materially impair the lien created by this Instrument or MERS and/or Lender's interest in the Mortgaged Property. Borrower states that no portion of the Mortgaged Property has been or will be purchased with the proceeds of any illegal activity.

**J.4.**    Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the Property Jurisdiction.

**J.5.**    If Borrower is not a natural person: (a) Borrower, and any Sub-Entity, shall maintain its existence as long as any portion of the Indebtedness remains unpaid; and (b) Borrower shall give written notice to Lender within ten (10) days after any dissolution or event triggering dissolution of Borrower or any Sub-Entity (which shall constitute an Event of Default under clause (a) of this sentence). As used in this section J, "Sub-Entity" shall include any managing or controlling entities, including any of the following that is not a natural person: (i) any manager or member of a limited liability company and any Sub-Entity thereof, (ii) any general partner of a general or limited partnership or limited liability partnership and any Sub-Entity thereof. To the extent not in conflict with the provisions of this Instrument and the other Loan Documents, Borrower shall at all times comply with its organizational documents, including but not limited to its partnership agreement (if Borrower is a partnership), its by-laws (if Borrower is a corporation or housing cooperative corporation or association) or its operating agreement (if Borrower is a limited liability company, joint venture or tenancy-in-common). If Borrower is not a natural person, then: (a) Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the state or commonwealth of Borrower's formation; (b) if the state or commonwealth of Borrower's formation is not the Property Jurisdiction, Borrower shall register or qualify as a foreign entity in the Property Jurisdiction and maintain such registration or qualification in good standing; (c) Borrower shall promptly provide Lender with copies of any amendments or supplements to Borrower's and any Sub-Entity's organizational documents; and (d) within ten (10) days after request

**Texas Deed of Trust**                                                                                           **Page 10**
© GoDocs® All Rights Reserved.

by Lender Borrower shall furnish evidence satisfactory to Lender that Borrower and any Sub-Entity is/are in good standing in its/their state(s) or commonwealth(s) of organization, and, if different, the Property Jurisdiction.

**K.    USE OF PROPERTY.** Unless required by applicable law, Borrower shall not (1) except for any change in use approved by Lender, allow changes in the use for which all or any part of the Mortgaged Property was being used at the time this Instrument was executed, (2) convert any individual dwelling unit or common area to commercial use, (3) convert, in whole or in part, any non-residential income producing units to non-income producing units, (4) initiate or acquiesce in a change in the zoning classification of the Mortgaged Property, or (5) establish any condominium or cooperative regime with respect to the Mortgaged Property. Borrower acknowledges that Lender has not agreed to grant any partial releases or reconveyances of any portion of the Mortgaged Property, and that the release and reconveyance of the lien of this Instrument shall only be granted by Lender upon full repayment of the Indebtedness.

**L.    PROTECTION OF LENDER'S SECURITY.**

**L.1.**    If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, MERS and/or Lender's security or MERS and/or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including (a) payment of fees and out-of-pocket expenses of attorneys, accountants, inspectors and consultants, (b) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (c) procurement of the insurance required by section S below, (d) payment of amounts which Borrower has failed to pay under sections O and Q below, and (e) advances made by Lender to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a "**Prior Lien**").

**L.2.**    Any amounts disbursed by Lender under this section L, or under any other provision of this Instrument that treats such disbursement as being made under this section L, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "**Default Rate**", as defined in the Note.

**L.3.**    Nothing in this section L shall require Lender to incur any expense or take any action.

**M.    INSPECTION.** Lender, its agents, representatives and designees may make or cause to be made entries upon and inspections of the Mortgaged Property (including environmental inspections and tests) during normal business hours, or at any other reasonable time. Borrower shall within five (5) days after written request by Lender provide the name, phone number, address and email address of a contact person for Borrower or for a property management company managing the Mortgaged Property to arrange such inspection. Such contact person shall meet Lender's inspector(s) at the Mortgaged Property at the time specified by Lender and shall provide Lender's inspector(s) with access to all areas of the Mortgaged Property as Lender's inspector(s) may require to complete such inspection. At any time when an Event of Default has occurred which, if it is amenable to cure, has not been timely cured, the cost of such inspections shall be paid by Borrower upon written demand by Lender and if not paid within thirty (30) days after such written demand, and, until paid, shall be added to and constitute a part of the Indebtedness as provided in section L above.

**N.    BOOKS AND RECORDS; FINANCIAL REPORTING.**

**N.1.**    Borrower shall keep and maintain at all times, and upon Lender's request shall deliver to Lender or otherwise make available at the Mortgaged Property or other location agreed upon by the parties, complete and accurate books of account and records, copies of all written contracts, Leases and other instruments which affect

**Texas Deed of Trust**                                                                                                   Page 11
© GoDocs® All Rights Reserved.

the Mortgaged Property (collectively, **"Records"**). Unless Lender specifies another date in writing, Borrower shall deliver such Records to Lender within three (3) calendar days of Lender's request, or the next business day thereafter if such delivery falls on a weekend or holiday. Delivery of Records can be made electronically unless otherwise requested by Lender. Borrower shall bear the cost of delivery of Records, if any, which shall be no more frequent than once every twelve (12) months.

**N.2.**    In the event Borrower or any Guarantor fails to maintain and/or deliver Records as required by section N.1 above, then such failure shall constitute an Event of Default and, in addition to any other remedies which may be available to Lender as a result of such Event of Default, Borrower shall pay a late charge equal to two percent (2%) of the monthly payment amount for each late submission of Records requested by Lender to compensate Lender or its servicer for the additional administrative expense caused by such failure or delay whether or not Borrower is entitled to any notice and opportunity to cure such failure prior to the exercise of any of the remedies. Such late charge shall be charged each month that any Records remain delinquent. The late charge shall be immediately payable from Borrower upon demand by Lender and, until paid, shall be added to and constitute a part of the Indebtedness as provided in section L above. In no event shall such late charge constitute a cure of Borrower's or any Guarantor's default in failing to provide Records requested by Lender, nor limit Lender's remedies as a result of such default. In addition to such late charge and any other remedies which may be available to Lender as a result of such Event of Default, Lender shall have the right: (i) to increase the interest rate under the Note to the Default Rate provided for in the Note as long as such failure to provide Records continues, and (ii) to have Borrower's or any Guarantor's books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such Records, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Indebtedness as provided in section L above.

**N.3.**    If an Event of Default has occurred which, if it is amenable to cure, has not been timely cured, Borrower shall deliver to Lender upon written demand all books and records relating to the Mortgaged Property or its operation.

**N.4.**    Borrower authorizes Lender to obtain a credit report on Borrower at any time.

**O.    TAXES; OPERATING EXPENSES.**

**O.1.**    Subject to the provisions of sections O.3 and O.4 below, Borrower shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment.

**O.2.**    Subject to the provisions of section O.3 below, Borrower shall pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including insurance premiums, utilities, repairs and replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added.

**O.3.**    As long as no Event of Default exists and Borrower has timely delivered to Lender any bills or premium notices that it has received, Borrower shall not be obligated to pay Taxes, insurance premiums or any other individual Imposition to the extent that sufficient Imposition Deposits are held by Lender for the purpose of paying that specific Imposition. If an Event of Default exists, Lender may exercise any rights Lender may have with respect to Imposition Deposits without regard to whether Impositions are then due and payable. Lender shall have no liability to Borrower for failing to pay any Impositions to the extent that any Event of Default has occurred (which, if it is amenable to cure, has not been timely cured), insufficient Imposition Deposits are held by Lender at the time an Imposition becomes due and payable or Borrower has failed to provide Lender with bills and premium notices as provided above.

**O.4.**    Borrower, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of any Imposition other than insurance premiums, if (a) Borrower notifies Lender of the commencement or expected commencement of such proceedings, (b) the Mortgaged Property is not in danger of being sold or forfeited, (c) Borrower deposits with Lender reserves sufficient to pay the contested

**Texas Deed of Trust**                                                                                                              **Page 12**
© GoDocs® All Rights Reserved.

2022 - 202200234541  08/31/2022  09:40 AM  Page 13 of 37

Imposition, if requested by Lender, and (d) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of the reserves established by Borrower to pay the contested Imposition.

O.5.    Borrower shall promptly deliver to Lender a copy of all notices of, and invoices for, Impositions, and if Borrower pays any Imposition directly, Borrower shall promptly furnish to Lender receipts evidencing such payments in accordance with section G.6 above.

P.    LIENS; ENCUMBRANCES. Borrower acknowledges that the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a **"Lien"**) on the Mortgaged Property (other than the lien of this Instrument and the liens and encumbrances reflected on the Schedule of Title Exceptions) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a **"Transfer"** which constitutes an Event of Default under section U of this Instrument.

Q.    PRESERVATION, MANAGEMENT AND MAINTENANCE OF MORTGAGED PROPERTY. Borrower (1) shall not commit waste or permit impairment or deterioration of the Mortgaged Property, (2) shall not abandon the Mortgaged Property, (3) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, (4) shall keep the Mortgaged Property in good repair, including the replacement of Fixtures with items of equal or better function and quality, (5) shall provide for professional management of the Mortgaged Property by a residential rental property manager satisfactory to Lender under a contract approved by Lender in writing, and (6) shall give notice to Lender of and, unless otherwise directed in writing by Lender, shall appear in and defend any action or proceeding purporting to affect the Mortgaged Property, MERS and/or Lender's security or MERS and/or Lender's rights under this Instrument. Borrower shall not (and shall not permit any tenant or other Person to) remove, demolish or alter the Mortgaged Property or any part of the Mortgaged Property except in connection with the replacement of Fixtures.

R.    ENVIRONMENTAL HAZARDS.

R.1.    Except for matters covered by a written plan of operations and maintenance approved in writing by Lender (an **"O&M Plan"**) or matters described in section R.2 below, Borrower shall not cause or permit any of the following:

(a)    the presence, use, generation, release, treatment, processing, storage (including storage in above ground and underground storage tanks), handling, or disposal of any Hazardous Materials on or under the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property;

(b)    the transportation of any Hazardous Materials to, from, or across the Mortgaged Property;

(c)    any occurrence or condition (including soil and groundwater conditions) on the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property, which occurrence or condition is or may be in violation of Hazardous Materials Laws; or

(d)    any violation of or noncompliance with the terms of any Environmental Permit with respect to the Mortgaged Property or any property of Borrower that is adjacent to the Mortgaged Property.

The matters described in clauses (a) through (d) above are referred to collectively in this section R as **"Prohibited Activities or Conditions"**.

R.2.    Prohibited Activities and Conditions shall not include the safe and lawful use and storage of quantities of (a) pre-packaged supplies, cleaning materials and petroleum products customarily used in the operation and maintenance of comparable properties, (b) cleaning materials, personal grooming items and other items sold in pre-

**Texas Deed of Trust**                                                                                              Page 13
© GoDocs® All Rights Reserved.

APP023

packaged containers for consumer use and used by tenants and occupants of residential dwelling units in the Mortgaged Property; and (c) petroleum products used in the operation and maintenance of motor vehicles from time to time located on the Mortgaged Property's parking areas, so long as all of the foregoing are used, stored, handled, transported and disposed of in compliance with Hazardous Materials Laws.

**R.3.**    Borrower shall take all commercially reasonable actions (including the inclusion of appropriate provisions in any Leases executed after the date of this Instrument) to prevent its employees, agents, and contractors, and all tenants and other occupants from causing or permitting any Prohibited Activities or Conditions. Borrower shall not lease or allow the sublease or use of all or any portion of the Mortgaged Property to any tenant or subtenant for nonresidential use by any user that, in the ordinary course of its business, would cause or permit any Prohibited Activity or Condition.

**R.4.**    If an O&M Plan has been established with respect to Hazardous Materials, Borrower shall comply in a timely manner with, and cause all employees, agents, and contractors of Borrower and any other Persons present on the Mortgaged Property to comply with the O&M Plan. All costs of performance of Borrower's obligations under any O&M Plan shall be paid by Borrower, and Lender's out-of-pocket costs incurred in connection with the monitoring and review of the O&M Plan and Borrower's performance shall be paid by Borrower upon demand by Lender. Any such out-of-pocket costs of Lender which Borrower fails to pay promptly shall become an additional part of the Indebtedness as provided in section L above.

**R.5.**    Borrower states that, except as previously disclosed by Borrower to Lender in writing:

(a)  Borrower has not at any time engaged in, caused or permitted any Prohibited Activities or Conditions;

(b)  to the best of Borrower's knowledge after reasonable and diligent inquiry, no Prohibited Activities or Conditions exist or have existed;

(c)  except to the extent previously disclosed by Borrower to Lender in writing, the Mortgaged Property does not now contain any underground storage tanks, and, to the best of Borrower's knowledge after reasonable and diligent inquiry, the Mortgaged Property has not contained any underground storage tanks in the past. If there is an underground storage tank located on the Mortgaged Property which has been previously disclosed by Borrower to Lender in writing, that tank complies with all requirements of Hazardous Materials Laws;

(d)  Borrower has complied with all Hazardous Materials Laws, including all requirements for notification regarding releases of Hazardous Materials. Without limiting the generality of the foregoing, Borrower has obtained all Environmental Permits required for the operation of the Mortgaged Property in accordance with Hazardous Materials Laws now in effect and all such Environmental Permits are in full force and effect;

(e)  no event has occurred with respect to the Mortgaged Property that constitutes, or with the passing of time or the giving of notice would constitute, noncompliance with the terms of any Environmental Permit;

(f)  there are no actions, suits, claims or proceedings pending or, to the best of Borrower's knowledge after reasonable and diligent inquiry, threatened that involve the Mortgaged Property and allege, arise out of, or relate to any Prohibited Activity or Condition;

(g)  Borrower has not received any complaint, order, notice of violation or other communication from any Governmental Authority with regard to air emissions, water discharges, noise emissions or Hazardous Materials, or any other environmental, health or safety matters affecting the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property;

(h)  there are no liens arising under or pursuant to any Hazardous Materials Laws affecting the Mortgaged Property and there are no facts, circumstances, or conditions that could reasonably be expected to restrict, encumber, or result in the imposition of special conditions under any Hazardous Materials Law with respect to the ownership, occupancy development, use, or transferability of the Mortgaged Property;

**Texas Deed of Trust**                                                                                         Page 14
© GoDocs® All Rights Reserved.

APP024

(i)    there has been no written environmental audit, investigation, assessment, review, sampling or analysis conducted by Borrower of the Mortgaged Property which in any such case has not been delivered to Lender prior to the date hereof; and

(j)    at the time of acquiring the Mortgaged Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Mortgaged Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Mortgaged Property has been or is now being used for any Prohibited Activities or Conditions.

If any of Borrower's statements of fact in this section R.5 are inaccurate on the date of this Instrument or become inaccurate prior to repayment of the Indebtedness, then (i) such inaccuracy shall be an Event of Default, and (ii) without limiting any other remedies of Lender, Lender may bring a claim against Borrower for misrepresentation, a claim for breach of warranty, or both.

R.6.    Borrower shall promptly notify Lender in writing upon the occurrence of any of the following events:

(a)    Borrower's discovery of any Prohibited Activity or Condition;

(b)    Borrower's receipt of or knowledge of any complaint, order, notice of violation or other communication from any Governmental Authority or other Person with regard to present or future alleged Prohibited Activities or Conditions or any other environmental, health or safety matters affecting the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property; and

(c)    any statement of fact in this section R becomes untrue after the date of this Agreement.

Any such notice given by Borrower shall not relieve Borrower of, or result in a waiver of, any obligation under this Instrument, the Note, or any other Loan Document.

R.7.    Borrower shall pay promptly the costs of any environmental inspections, tests or audits ("**Environmental Inspections**") required by Lender in connection with any foreclosure or deed in lieu of foreclosure, or as a condition of Lender's consent to any Transfer under section U below, or required by Lender following a reasonable determination by Lender that Prohibited Activities or Conditions may exist. Any such costs incurred by Lender (including the fees and out-of-pocket costs of attorneys and technical consultants whether incurred in connection with any judicial or administrative process or otherwise) which Borrower fails to pay promptly shall become an additional part of the Indebtedness as provided in section L. The results of all Environmental Inspections made by Lender shall at all times remain the property of Lender and Lender shall have no obligation to disclose or otherwise make available to Borrower or any other party such results or any other information obtained by Lender in connection with its Environmental Inspections. Lender hereby reserves the right, and Borrower hereby expressly authorizes Lender, to make available to any party, including any prospective bidder at a foreclosure sale of the Mortgaged Property, the results of any Environmental Inspections made by Lender with respect to the Mortgaged Property. Borrower consents to Lender notifying any party (either as part of a notice of sale or otherwise) of the results of any of Lender's Environmental Inspections. Borrower acknowledges that Lender cannot control or otherwise assure the truthfulness or accuracy of the results of any of its Environmental Inspections and that the release of such results to prospective bidders at a foreclosure sale of the Mortgaged Property may have a material and adverse effect upon the amount which a party may bid at such sale. Borrower agrees that Lender shall have no liability whatsoever as a result of delivering the results of any of its Environmental Inspections to any third party, and Borrower hereby releases and forever discharges Lender from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the results of, the delivery of any of Lender's Environmental Inspections.

R.8.    If any investigation, site monitoring, containment, clean-up, restoration or other remedial work ("**Remedial Work**") is necessary to comply with any Hazardous Materials Law or order of any Governmental Authority that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property under any Hazardous Materials Law, Borrower shall, by the earlier of (a) the applicable deadline

**Texas Deed of Trust**                                                                                                      Page 15
© GoDocs® All Rights Reserved.

2022 - 202200234541  08/31/2022  09:40 AM  Page 16 of 37

required by Hazardous Materials Law or (b) 30 days after notice from Lender demanding such action, begin performing the Remedial Work, and thereafter diligently prosecute it to completion, and shall in any event complete the work by the time required by applicable Hazardous Materials Law. If Borrower fails to begin on a timely basis or diligently prosecute any required Remedial Work, Lender may, at its option, cause the Remedial Work to be completed, in which case Borrower shall reimburse Lender on demand for the cost of doing so. Any reimbursement due from Borrower to Lender shall become part of the Indebtedness as provided in section L above.

**R.9.**  Borrower shall cooperate with any inquiry by any Governmental Authority and shall comply with any governmental or judicial order which arises from any alleged Prohibited Activity or Condition.

**R.10.**  Borrower shall indemnify, hold harmless and defend (a) Lender, (b) any prior owner or holder of the Note, (c) the Loan Servicer, (d) any prior Loan Servicer, (e) the officers, directors, shareholders, partners, employees and trustees of any of the foregoing, and (f) the heirs, legal representatives, successors and assigns of each of the foregoing (collectively, the **"Indemnitees"**) from and against all proceedings, claims, damages, liabilities, obligations, demands, causes of action, losses, fines, penalties and costs (whether initiated or sought by Governmental Authorities or private parties), including fees and out of pocket expenses of attorneys and expert witnesses, investigatory fees, and remediation costs, whether incurred in connection with any judicial or administrative process or otherwise, arising directly or indirectly from any of the following:

(i)    any breach of any statement of fact of Borrower in this section R;

(ii)    any failure by Borrower to perform any of its obligations under this section R;

(iii)    the existence or alleged existence of any Prohibited Activity or Condition;

(iv)    the presence or alleged presence of Hazardous Materials on or under the Mortgaged Property or any property of Borrower that is adjacent to the Mortgaged Property;

(v)    the actual or alleged violation of any Hazardous Materials Law; and

(vi)    any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to any Hazardous Materials.

**R.11.**  Counsel selected by Borrower to defend Indemnitees shall be subject to the approval of those Indemnitees. However, any Indemnitee may elect to defend any claim or legal or administrative proceeding at Borrower's expense.

**R.12.**  Borrower shall not, without the prior written consent of those Indemnitees who are named as parties to a claim or legal or administrative proceeding (a **"Claim"**), settle or compromise the Claim if the settlement (a) results in the entry of any judgment that does not include as an unconditional term the delivery by the claimant or plaintiff to Lender of a written release of those Indemnitees, satisfactory in form and substance to Lender; or (b) may materially and adversely affect Lender, as determined by Lender in its discretion.

**R.13.**  Borrower's obligation to indemnify the Indemnitees shall not be limited or impaired by any of the following, or by any failure of Borrower or any Guarantor to receive notice of or consideration for any of the following:

(a)    any amendment or modification of any Loan Document;

(b)    any extensions of time for performance required by any Loan Document;

(c)    any provision in any of the Loan Documents limiting Lender's recourse to property securing the Indebtedness, or limiting the personal liability of Borrower or any other party for payment of all or any part of the Indebtedness;

(d)    the accuracy or inaccuracy of any statements of fact made by Borrower under this Instrument or any other Loan Document;

**Texas Deed of Trust**
© GoDocs® All Rights Reserved.

Page 16

APP026

(e)  the release of Borrower or any other Person, by Lender or by operation of law, from performance of any obligation under any Loan Document;

(f)  the release or substitution in whole or in part of any security for the Indebtedness; and

(g)  Lender's failure to properly perfect any lien or security interest given as security for the Indebtedness.

**R.14.**  Borrower shall, at its own cost and expense, do all of the following:

(a)  pay or satisfy any judgment or decree that may be entered against any Indemnitee or Indemnitees in any legal or administrative proceeding incident to any matters against which Indemnitees are entitled to be indemnified under this section R;

(b)  reimburse Indemnitees for any expenses paid or incurred in connection with any matters against which Indemnitees are entitled to be indemnified under this section R; and

(c)  reimburse Indemnitees for any and all expenses, including fees and out of pocket expenses of attorneys and expert witnesses, paid or incurred in connection with the enforcement by Indemnitees of their rights under this section R, or in monitoring and participating in any legal or administrative proceeding.

**R.15.**  In any circumstances in which the indemnity under this section R applies, Lender may employ its own legal counsel and consultants to prosecute, defend or negotiate any claim or legal or administrative proceeding and Lender, with the prior written consent of Borrower (which shall not be unreasonably withheld, delayed or conditioned) may settle or compromise any action or legal or administrative proceeding. Borrower shall reimburse Lender upon demand for all costs and expenses incurred by Lender, including all costs of settlements entered into in good faith, and the fees and out of pocket expenses of such attorneys and consultants.

**R.16.**  The provisions of this section R shall be in addition to any and all other obligations and liabilities that Borrower may have under applicable law or under other Loan Documents, and each Indemnitee shall be entitled to indemnification under this section R without regard to whether Lender or that Indemnitee has exercised any rights against the Mortgaged Property or any other security, pursued any rights against any Guarantor, or pursued any other rights available under the Loan Documents or applicable law. If Borrower consists of more than one Person, the obligation of those Persons to indemnify the Indemnitees under this section R shall be joint and several. The obligation of Borrower to indemnify the Indemnitees under this section R shall survive any repayment or discharge of the Indebtedness, any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the lien of this Instrument.

**S.  PROPERTY AND LIABILITY INSURANCE.**

**S.1.**  Borrower shall keep the Improvements insured at all times against such hazards as Lender may from time to time require, which insurance shall include but not be limited to coverage against loss by fire, windstorm and allied perils, general boiler and machinery coverage, and business income coverage. Lender's insurance requirements may change from time to time throughout the term of the Indebtedness. If Lender so requires, such insurance shall also include sinkhole insurance, mine subsidence insurance, earthquake insurance, and, if the Mortgaged Property does not conform to applicable zoning or land use laws, building ordinance or law coverage. In the event any updated reports or other documentation are reasonably required by Lender in order to determine whether such additional insurance is necessary or prudent, Borrower shall pay for all such documentation at its sole cost and expense. If any of the Improvements is located in an area that is either (a) identified by the Federal Emergency Management Agency (or any successor to that agency) ("**FEMA**") as an area having special flood hazards or (b) designated by FEMA as Zone D, and if flood insurance is available in that area, Borrower shall insure such Improvements against loss by flood. If Lender so requires, such insurance shall also include business income/rental value insurance for all relevant perils to be covered in the amount required by Lender, but in no case less than the effective gross income attributable to the Mortgaged Property for the preceding 12 months, as determined by Lender in Lender's discretion. All insurance required pursuant to this section S shall be referred to as

Texas Deed of Trust                                                                                              Page 17
© GoDocs® All Rights Reserved.

"**Property Insurance**". All policies of Property Insurance must include a non-contributing, non-reporting mortgagee clause in favor of, and in a form approved by, Lender, and shall provide that the insurer will notify Lender in writing of cancelation of policies at least 10 days before the cancelation of the policy by the insurer for nonpayment of the premium or nonrenewal and at least 30 days before cancelation by the insurer for any other reason.

**S.2.** All premiums on insurance policies required under this section S shall be paid in the manner provided in section G above, unless Lender has designated in writing another method of payment. All such policies shall also be in a form approved by Lender. Borrower shall deliver to Lender a legible copy of each insurance policy (or duplicate original) and Borrower shall promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums. At least thirty (30) days prior to the expiration date of a policy, Borrower shall deliver to Lender a legible copy of each renewal policy (or a duplicate original) in a form satisfactory to Lender.

**S.3.** Borrower shall maintain at all times general liability insurance, which must contain a standard additional insured provision, in favor of, and in a form approved by, Lender. Lender reserves the right to require Borrower to carry such other insurance coverage as Lender deems reasonably necessary including, but not limited to, commercial liability, workers' compensation, errors and omissions, and fidelity insurance.

**S.4.** All insurance policies and renewals of insurance policies required by this section S shall be in such amounts and for such periods as Lender may from time to time require, shall be in such form and contain such endorsements as Lender may from time to time require, and shall be issued by insurance companies satisfactory to Lender.

**S.5.** Borrower shall comply with all insurance requirements and shall not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage that this Instrument requires Borrower to maintain.

**S.6.** In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this section S shall require Lender to incur any expense or take any action. Lender may, at Lender's option, (a) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Mortgaged Property to the equivalent of its original condition or to a condition approved by Lender (the "**Restoration**"), or (b) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due. To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar properties.

**S.7.** Lender shall not exercise its option to apply insurance proceeds to the payment of the Indebtedness if all of the following conditions are met: (a) no Potential Default exists and no Event of Default has occurred which, if it is amenable to cure, has not been timely cured; (b) Lender determines, in its discretion, that Borrower has sufficient funds to complete the Restoration; (c) Lender determines, in its discretion, that the rental income from the Mortgaged Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, Imposition Deposits, deposits to reserves and loan repayment obligations relating to the Mortgaged Property; and (d) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (i) one year before the maturity date of the Note or (ii) one year after the date of the loss or casualty.

**S.8.** If the Mortgaged Property is sold at a foreclosure sale or Lender acquires title to the Mortgaged Property, Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance

**Texas Deed of Trust**                                                                                                      Page 18
© GoDocs® All Rights Reserved.

APP028

premiums and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

**T.    CONDEMNATION.**

**T.1.**    Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a **"Condemnation"**). Borrower shall appear in and prosecute or defend any action or proceeding relating to any Condemnation unless otherwise directed by Lender in writing. Borrower authorizes and appoints Lender as attorney in fact for Borrower to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with any Condemnation. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this section T shall require Lender to incur any expense or take any action. Borrower hereby transfers and assigns to Lender all right, title and interest of Borrower in and to any award or payment with respect to (a) any Condemnation, or any conveyance in lieu of Condemnation, and (b) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation.

**T.2.**    Lender may apply such awards or proceeds, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to the restoration or repair of the Mortgaged Property or to the payment of the Indebtedness, with the balance, if any, to Borrower. Unless Lender otherwise agrees in writing, any application of any awards or proceeds to the Indebtedness shall not extend or postpone the due date of any monthly installments referred to in the Note, section G of this Instrument or any Collateral Agreement, or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards or proceeds as Lender may require.

**U.    TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN BORROWER [NO RIGHT TO TRANSFER].**

**U.1.**    **"Transfer"** means (a) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (b) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (c) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (d) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (e) the merger, dissolution, liquidation, or consolidation of a legal entity or the reconstitution of one type of legal entity into another type of legal entity. For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.

**U.2.**    "Transfer" does not include: (a) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument, (b) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the Bankruptcy Code, or (c) a lien against the Mortgaged Property for local taxes and/or assessments not then due and payable.

**U.3.**    The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of this section U to the contrary:

(a)    a Transfer to which Lender has consented;

(b)    the grant of a leasehold interest in an individual dwelling unit, so long as such leasehold interest (i) is for a term of two years or less, (ii) does not contain an option to purchase or other current or future ownership right in the Mortgaged Property, and (iii) is otherwise in accordance with the terms of this Instrument;

(c)    a Transfer of obsolete or worn out Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender; and

**Texas Deed of Trust**                                                                                                                Page 19
© GoDocs® All Rights Reserved.

(d)  the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is released of record or otherwise remedied to Lender's satisfaction within sixty (60) days of the date of creation.

U.4.    The occurrence of any of the following Transfers shall not constitute an Event of Default under this Instrument, provided that Borrower has notified Lender in writing within 30 days following the occurrence of any of the following, and such Transfer does not constitute an Event of Default under any other Section of this Instrument:

(a)  a change of Borrower's name, provided that, as applicable, a fixture filing financing statement and/or amendments sufficient to continue the perfection of Lender's security interest have been properly recorded and copies have been delivered to Lender;

(b)  a change of the form of Borrower not involving a transfer of Borrower's assets and not resulting in any change in liability of any Initial Owner, provided that, as applicable: (i) a fixture filing financing statement and/or amendments sufficient to continue the perfection of Lender's security interest have been properly recorded and copies have been delivered to Lender, (ii) Lender has been provided, in advance, for Lender's review and approval, all proposed filings, amendments and other documents pertaining to such change in form, and (iii) Borrower shall pay for attorneys' fees, and other out of pocket costs of Lender for the review of such documents and any filings, including any title endorsement costs if Lender in its discretion requires an endorsement or endorsements to Lender's title policy;

(c)  the merger of Borrower with another entity when Borrower is the surviving entity;

(d)  a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person; and

(e)  the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Borrower pays to Lender, upon demand, all costs and expenses, including Attorneys' Fees and Costs, incurred by Lender in connection with reviewing Borrower's request.

U.5.    The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

(a)  a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property (including without limitation the creation or existence of any Lien as provided in section P of this Instrument);

(b)  if Borrower is a limited partnership, a Transfer of (i) any general partnership interest, or (ii) limited partnership interests in Borrower that would cause the Initial Owners of Borrower to own less than a Controlling Interest of all limited partnership interests in Borrower;

(c)  if Borrower is a general partnership or a joint venture, a Transfer of any general partnership or joint venture interest in Borrower;

(d)  if Borrower is a limited liability company, (i) a Transfer of any membership interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the membership interests in Borrower, (ii) a Transfer of any membership or other interest of a manager in Borrower that results in a change of manager, or (iii) a change of a nonmember manager;

(e)  if Borrower is a corporation, (i) the Transfer of any voting stock in Borrower which would cause the Initial Owners to own less than a Controlling Interest of any class of voting stock in Borrower or (ii) if the outstanding voting stock in Borrower is held by one hundred (100) or more shareholders, one or more transfers by a single transferor within a 12-month period affecting an aggregate of five percent (5%) or more of that stock;

(f)  if Borrower is a trust, (i) a Transfer of any beneficial interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the beneficial interests in Borrower, (ii) the termination or revocation of the trust, or (iii) the removal, appointment or substitution of a trustee of Borrower; and

APP030

(g)   a Transfer of any interest in a Controlling Entity which, if such Controlling Entity were Borrower, would result in an Event of Default under any of sections U.5(a) through U.5(f).

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this section U.

**V.   EVENTS OF DEFAULT.** The occurrence of any one or more of the following shall constitute an Event of Default under this Instrument:

**V.1.**   any failure by Borrower to pay or deposit when due any amount, including the Balloon Payment (as defined in the Note), required by the Note, this Instrument or any other Loan Document;

**V.2.**   any failure by Borrower to maintain the insurance coverage required by section S above or to provide any financial information or documents required by section N above;

**V.3.**   [Intentionally Omitted];

**V.4.**   fraud or material misrepresentation or material omission by Borrower, any of its officers, directors, trustees, general partners or managers or any Guarantor in connection with (i) the application for or creation of the Indebtedness, (ii) any financial statement, rent roll, or other report or information provided to Lender during the term of the Indebtedness, or (iii) any request for Lender's consent to any proposed action, including a request for disbursement of funds under any Collateral Agreement;

**V.5.**   any event or condition that under the terms of this Instrument is specifically stated to constitute an Event of Default, including, without limitation, any Event of Default under section U above;

**V.6.**   the commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property;

**V.7.**   any failure by Borrower to perform any of its obligations under this Instrument (other than those specified in sections V.1 through V.6 above) as and when required, which continues for a period of thirty (30) days after notice of such failure by Lender to Borrower. However, no such notice or grace period shall apply in the case of any such failure which could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under or this Instrument, result in harm to Lender, impairment of the Note or this Instrument or any other security given under any other Loan Document;

**V.8.**   any failure by Borrower or any Guarantor to perform any of its obligations as and when required under any Loan Document other than this Instrument which continues beyond the applicable cure period, if any, specified in that Loan Document;

**V.9.**   any event or condition occurs that results in any other indebtedness (i.e. indebtedness other than the Indebtedness secured by this Instrument) owing by Borrower or any Borrower Affiliate (as defined below) to Lender becoming due prior to its scheduled maturity or that enables or permits (after the lapse of any applicable cure period) Lender or any trustee or agent on its behalf to cause such indebtedness to become due prior to its scheduled maturity (**"Borrower Affiliate"** means (i) any entity owned or controlled by Borrower, (ii) any entity commonly owned or controlled by the members or owners of Borrower, (iii) any Guarantor and (iv) any entity owned or controlled by one or more Guarantors);

**V.10.**   any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt on the Mortgaged Property of a right to declare all amounts due under that debt instrument immediately due and payable;

**V.11.**   should any statement of fact contained in this Instrument, the Borrower Certificate, any other Loan Document, or any other document submitted by Borrower to Lender be or become false or misleading in any material respect;

Texas Deed of Trust                                                                                                          Page 21
© GoDocs® All Rights Reserved.

APP031

**V.12.** if the Mortgaged Property is subject to any covenants, conditions and/or restrictions, land use restriction agreements or similar agreements, Borrower fails to perform any of its obligations under any such agreement as and when required, and such failure continues beyond any applicable cure period;

**V.13.** Borrower or any Guarantor makes a general assignment for the benefit of creditors, voluntarily files for bankruptcy protection under the Bankruptcy Code or voluntarily becomes subject to any reorganization, receivership, insolvency proceeding or other similar proceeding pursuant to any other federal or state law affecting debtor and creditor rights, or an involuntary case is commenced against Borrower or any Guarantor by any creditor (other than Lender) of Borrower or any Guarantor pursuant to the Bankruptcy Code or other federal or state law affecting debtor and creditor rights to which Borrower or any Guarantor voluntarily becomes subject, and is not dismissed or discharged within 60 days after filing; and

**V.14.** Borrower, any member, manager, officer, shareholder, general partner or trustee of Borrower, any Guarantor or any member, manager, officer, shareholder, general partner or trustee of any Guarantor, purports to revoke or dispute the validity of, or Borrower's or any Guarantor's liability under, any of the Loan Documents or any Guaranty.

**W.  REMEDIES CUMULATIVE.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

**X.  FORBEARANCE.**

**X.1.**   Lender may (but shall not be obligated to) agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any Guarantor or any other third party obligor, to take any of the following actions: extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Instrument, the Note, or any other Loan Document; release anyone liable for the payment of any amounts under this Instrument, the Note, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under the Note; and otherwise modify this Instrument, the Note, or any other Loan Document.

**X.2.**   Any forbearance by Lender in exercising any right or remedy under the Note, this Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender. Lender's receipt of any awards or proceeds under sections S and T above shall not operate to cure or waive any Event of Default.

**Y.   LOAN CHARGES.** If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the principal of the Indebtedness. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute

**Texas Deed of Trust**
© GoDocs® All Rights Reserved.

Page 22

interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

**Z.   [Intentionally Omitted]**

**AA. WAIVER OF MARSHALING.** Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshaling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

**BB. FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

**CC. ESTOPPEL CERTIFICATE.** Within ten (10) days after a request from Lender, Borrower shall deliver to Lender a written statement, signed and acknowledged by Borrower, certifying to Lender or any Person designated by Lender, as of the date of such statement, (1) that the Loan Documents are unmodified and in full force and effect (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications); (2) the unpaid principal balance of the Note; (3) the date to which interest under the Note has been paid; (4) that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Instrument or any of the other Loan Documents (or, if Borrower is in default, describing such default in reasonable detail); (5) whether or not there are then existing any setoffs or defenses known to Borrower against the enforcement of any right or remedy of Lender under the Loan Documents; and (6) any additional facts requested by Lender.

**DD. GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

**DD.1.** This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the **"Property Jurisdiction"**).

**DD.2.** Borrower agrees that any controversy arising under or in relation to the Note, this Instrument, or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise.

**EE. NOTICE.**

**EE.1.** All notices, demands and other communications (**"notice"**) under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in Recital I of this Instrument, and shall be deemed given on the earliest to occur of (a) the date when the notice is received by the addressee; (b) the first Business Day after the notice is delivered to a recognized overnight courier service, with

**Texas Deed of Trust**                                                                                             Page 23
© GoDocs® All Rights Reserved.

APP033

arrangements made for payment of charges for next Business Day delivery; or (c) the third Business Day after the notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested. As used in this section EE, the term "Business Day" means any day other than a Saturday, a Sunday or any other day on which Lender is not open for business. Borrower acknowledges that any notice Borrower provides to Lender must also be provided to MERS until MERS' nominee interest is terminated. Any notice provided by Borrower in connection with this Instrument will not be deemed to have been given to MERS until actually received by MERS.

**EE.2.**    Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this section EE. Each party agrees that it will not refuse or reject delivery of any notice given in accordance with this section EE, that it will acknowledge, in writing, the receipt of any notice upon request by the other party and that any notice rejected or refused by it shall be deemed for purposes of this section EE to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

**EE.3.**    Any notice under the Note and any other Loan Document which does not specify how notices are to be given shall be given in accordance with this section EE.

**FF.  SALE OF NOTE; CHANGE IN SERVICER; LOAN SERVICING.** The Note or a partial interest in the Note (together with this Instrument and the other Loan Documents) may be sold one (1) or more times without prior notice to Borrower. A sale may result in a change of the Loan Servicer. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given notice of the change. All actions regarding the servicing of the Loan, including the collection of payments, the giving and receipt of notice, inspections of the Mortgaged Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives notice to the contrary. If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such notice from Lender shall govern.

**GG. [INTENTIONALLY OMITTED]**

**HH. SUCCESSORS AND ASSIGNS BOUND.** This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by section U shall constitute an Event of Default.

**II.  JOINT AND SEVERAL LIABILITY.** If more than one Person signs this Instrument as Borrower, the obligations of such Persons under this Instrument, the Note and other Loan Documents shall be joint and several. Each Person comprising Borrower agrees, and shall be estopped to deny, that (1) each Borrower is jointly and severally liable for all obligations of Borrower under the Loan Documents and not merely for an allocated portion thereof, and (2) this Instrument is intended to grant to Lender a mortgage lien and security interest in and to the entire Mortgaged Property and the proceeds thereof, and not merely a lien and security interest in and to a tenant-in-common or other co-tenancy interest.

**JJ.  RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.**

**JJ.1.**    The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Borrower.

**JJ.2.**    No creditor of any party to this Instrument and no other Person shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (a) any arrangement (a **"Servicing Arrangement"**) between Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (b) Borrower shall not be a third party beneficiary of

**Texas Deed of Trust**                                                                                                                    Page 24
© GoDocs® All Rights Reserved.

APP034

any Servicing Arrangement, and (c) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

**KK.  SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents shall be legally severable. If any term or provision of this Instrument, or any other Loan Document, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document shall not be affected thereby, and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

**LL.  CONSTRUCTION.** The captions and headings of the Sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument. Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this Instrument. All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument. Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." The use of one gender includes the other gender, as the context may require. Unless the context requires otherwise, (1) any definition of or reference to any agreement, instrument or other document in this Instrument shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument or any other Loan Document), and (2) any reference in this Instrument to any Person shall be construed to include such Person's successors and assigns.

**MM.    DISCLOSURE OF INFORMATION.** Lender may furnish information regarding Borrower or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the Indebtedness, including but not limited to trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of similar mortgage loans, as well as governmental regulatory agencies having regulatory authority over Lender. Borrower irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including but not limited to any right of privacy.

**NN. NO CHANGE IN FACTS OR CIRCUMSTANCES.** All information in the application for the loan submitted to Lender (the **"Loan Application"**) and in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan Application are complete and accurate in all material respects. There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

**OO. SUBROGATION.** If, and to the extent that, the proceeds of the Loan, or subsequent advances under section L above, are used to pay, satisfy or discharge a Prior Lien, such Loan proceeds or advances shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

**PP.  BUSINESS PURPOSE.** Borrower acknowledges and agrees that the Loan is for business purposes and not for personal, family or household purposes.

**Texas Deed of Trust**                                                                                                   Page 25
© GoDocs℠ All Rights Reserved.

APP035

## QQ. ACCELERATION; REMEDIES.

**QQ.1.** At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale and any other remedies permitted by Texas law or provided in this Instrument or in any other Loan Document. Borrower acknowledges that the power of sale granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs, and costs of documentary evidence, abstracts and title reports.

**QQ.2.** If Lender invokes the power of sale, Lender may, by and through the Trustee, or otherwise, sell or offer for sale the Mortgaged Property in such portions, order and parcels as Lender may determine, with or without having first taken possession of the Mortgaged Property, to the highest bidder for cash at public auction. Such sale shall be made at the courthouse door of the county in which all or any part of the Land to be sold is situated (whether the parts or parcel, if any, situated in different counties are contiguous or not, and without the necessity of having any Personalty present at such sale) on the first Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m. (or, if the first Tuesday of the month falls on January 1 or July 4, the date of the foreclosure sale will be the first Wednesday of such month), after advertising the time, place and terms of sale and that portion of the Mortgaged Property to be sold by posting or causing to be posted written or printed notice of sale at least twenty-one (21) days before the date of the sale at the courthouse door of the county in which the sale is to be made and at the courthouse door of any other county in which a portion of the Land may be situated, and by filing such notice with the County Clerk(s) of the county(s) in which all or a portion of the Land may be situated, which notice may be posted and filed by the Trustee acting, or by any Person acting for the Trustee, and Lender has, at least twenty-one (21) days before the date of the sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness according to Lender's records by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by Lender's records, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any Person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

**QQ.3.** Trustee shall deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Mortgaged Property so sold in fee simple with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Mortgaged Property against all claims and demands. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements contained in those recitals. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable Trustee's fees not to exceed 5% of the gross sales price, Attorneys' Fees and Costs and costs of title evidence; (b) to the Indebtedness in such order as Lender, in Lender's discretion, directs; and (c) the excess, if any, to the Person or Persons legally entitled to the excess.

**QQ.4.** If all or any part of the Mortgaged Property is sold pursuant to this section QQ, Borrower will be divested of any and all interest and claim to the Mortgaged Property, including any interest or claim to all insurance policies, utility deposits, bonds, loan commitments and other intangible property included as a part of the Mortgaged Property. Additionally, after a sale of all or any part of the Land, Improvements, Fixtures and Personalty, Borrower will be considered a tenant at sufferance of the purchaser of the same, and the purchaser shall be entitled to immediate possession of such property. If Borrower shall fail to vacate the Mortgaged Property immediately, the purchaser may and shall have the right, without further notice to Borrower, to go into any justice court in any precinct or county in which the Mortgaged Property is located and file an action in forcible entry and detainer, which action shall lie against Borrower or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have under this Instrument or otherwise.

**QQ.5.** In the event an interest in any of the Mortgaged Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Borrower agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004,

**Texas Deed of Trust**    **Page 26**
© GoDocs® All Rights Reserved.

and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Borrower agrees that Lender will be entitled to seek a deficiency judgment from Borrower and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Mortgaged Property was sold pursuant to judicial or nonjudicial foreclosure sale. Borrower expressly recognizes that this Section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower and other Persons against whom a recovery of deficiencies is sought or any Guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Mortgaged Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Borrower further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Mortgaged Property for purposes of calculating deficiencies owed by Borrower, any Guarantor, and others against whom recovery of a deficiency is sought. Alternatively, in the event the waiver provided for in this Section is determined by a court of competent jurisdiction to be unenforceable, in any action for a deficiency after a foreclosure under this Instrument, if any Person against whom recovery is sought requests the court in which the action is pending to determine the fair market value of the Mortgaged Property, as of the date of the foreclosure sale, the following shall be the basis of the court's determination of fair market value:

(a)  the Mortgaged Property shall be valued "as is" and in its condition as of the date of foreclosure, and no assumption of increased value because of post-foreclosure repairs, refurbishment, restorations or improvements shall be made;

(b)  any adverse effect on the marketability of title because of the foreclosure or because of any other title condition not existing as of the date of this Instrument shall be considered;

(c)  the valuation of the Mortgaged Property shall be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Mortgaged Property for cash within a six month-period after foreclosure;

(d)  although the Mortgaged Property may be disposed of more quickly by the foreclosure purchaser, the gross valuation of the Mortgaged Property as of the date of foreclosure shall be discounted for a hypothetical reasonable holding period (not to exceed 6 months) at a monthly rate equal to the average monthly interest rate on the Note for the twelve months before the date of foreclosure;

(e)  the gross valuation of the Mortgaged Property as of the date of foreclosure shall be further discounted and reduced by reasonable estimated costs of disposition, including brokerage commissions, title policy premiums, environmental assessment and clean-up costs, tax and assessment, prorations, costs to comply with legal requirements and Attorneys' Fees and Costs;

(f)  expert opinion testimony shall be considered only from a licensed appraiser certified by the State of Texas and, to the extent permitted under Texas law, a member of the Appraisal Institute, having at least five years' experience in appraising property similar to the Mortgaged Property in the county where the Mortgaged Property is located, and who has conducted and prepared a complete written appraisal of the Mortgaged Property taking into considerations the factors set forth in this Instrument; no expert opinion testimony shall be considered without such written appraisal;

(g)  evidence of comparable sales shall be considered only if also included in the expert opinion testimony and written appraisal referred to in subsection (f), above; and

(h)  an affidavit executed by Lender to the effect that the foreclosure bid accepted by Trustee was equal to or greater than the value of the Mortgaged Property determined by Lender based upon the factors and methods set forth in subsections (a) through (g) above before the foreclosure shall constitute *prima facie* evidence that the foreclosure bid was equal to or greater than the fair market value of the Mortgaged Property on the foreclosure date.

**Texas Deed of Trust**                                                                                          **Page 27**
© GoDocs® All Rights Reserved.

APP037

2022 - 202200234541  08/31/2022  09:40 AM  Page 28 of 37

**QQ.6.** Lender may, at Lender's option, comply with these provisions in the manner permitted or required by Title 5, Section 51.002 of the Texas Property Code (relating to the sale of real estate) or by Chapter 9 of the Texas Business and Commerce Code (relating to the sale of collateral after default by a debtor), as those titles and chapters now exist or may be amended or succeeded in the future, or by any other present or future articles or enactments relating to same subject. Unless expressly excluded, the Mortgaged Property shall include Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Borrower shall pay such Rents to the purchaser at such sale.

**QQ.7.** At any such sale, all of the following will be true:

(a)  whether made under the power contained in this Instrument, Section 51.002 of the Texas Property Code, Chapter 9 of the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to have physically present, or to have constructive possession of, the Mortgaged Property (Borrower shall deliver to Trustee any portion of the Mortgaged Property not actually or constructively possessed by Trustee immediately upon demand by Trustee) and the title to and right of possession of any such property shall pass to the purchaser as completely as if the property had been actually present and delivered to the purchaser at the sale;

(b)  each instrument of conveyance executed by Trustee shall contain a general warranty of title, binding upon Borrower;

(c)  the recitals contained in any instrument of conveyance made by Trustee shall conclusively establish the truth and accuracy of the matters recited in the Instrument, including nonpayment of the Indebtedness and the advertisement and conduct of the sale in the manner provided in this Instrument and otherwise by law and the appointment of any successor Trustee;

(d)  all prerequisites to the validity of the sale shall be conclusively presumed to have been satisfied;

(e)  the receipt of Trustee or of such other party or officer making the sale shall be sufficient to discharge to the purchaser or purchasers for such purchaser(s)' purchase money, and no such purchaser or purchasers, or such purchaser(s)' assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication of such purchase money;

(f)  to the fullest extent permitted by law, Borrower shall be completely and irrevocably divested of all of Borrower's right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale shall be a perpetual bar to any claim to all or any part of the property sold, both at law and in equity, against Borrower and against any Person claiming by, through or under Borrower; and

(g)  to the extent and under such circumstances as are permitted by law, Lender may be a purchaser at any such sale.

**QQ.8.** Lender may foreclose or exercise its remedies with respect to part or all of the collateral for the Indebtedness, and no foreclosure or exercise of remedies with respect to less than all of the collateral for the Loan shall limit Lender's rights with respect to the remaining collateral or other remedies of Lender. Without limiting the foregoing, multiple foreclosure sales of portions of the Mortgaged Property, at the same time or at different times, are permitted and shall not affect Lender's rights or remedies with respect to remaining portions of the Mortgaged Property. The power of sale under this Instrument shall survive until all of the Mortgaged Property is sold or the lien of this Instrument is fully satisfied.

**RR.  RELEASE.** Upon payment of the Indebtedness, Lender shall release this Instrument. Borrower shall pay Lender's reasonable costs incurred in releasing this Instrument.

**Texas Deed of Trust**                                                                                               **Page 28**
© GoDocs® All Rights Reserved.

**SS.  TRUSTEE.**

**SS.1.**  Trustee may resign by giving of notice of such resignation in writing to Lender. If Trustee shall die, resign or become disqualified from acting under this Instrument or shall fail or refuse to act in accordance with this Instrument when requested by Lender or if for any reason and without cause Lender shall prefer to appoint a substitute trustee to act instead of the original Trustee named in this Instrument or any prior successor or substitute trustee, Lender shall have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the original Trustee named in this Instrument. Such appointment may be executed by an authorized officer, agent or attorney-in-fact of Lender (whether acting pursuant to a power of attorney or otherwise), and such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by Lender.

**SS.2.**  Any successor Trustee appointed pursuant to this Section shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of the predecessor Trustee with like effect as if originally named as Trustee in this Instrument; but, nevertheless, upon the written request of Lender or such successor Trustee, the Trustee ceasing to act shall execute and deliver an instrument transferring to such successor Trustee, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and monies held by the Trustee ceasing to act to the successor Trustee.

**SS.3.**  Trustee may authorize one or more parties to act on Trustee's behalf to perform the ministerial functions required of Trustee under this Instrument, including the transmittal and posting of any notices.

**TT.  RENEWAL AND EXTENSION.** The Note is in renewal and extension, but not extinguishment, of the following liens: (a) the Vendor's Lien retained in Deed dated August 20, 2020,  from Mary "Maria" Geneva Davlos DePetris, Trustee of the DePetris Revocable Trust, dated October 5, 2016 to Borrower, filed for record on August 27, 2020, Under Instrument No. 202000232223, of the Official Public Records of Dallas County, Texas, securing the payment of one note of even date therewith in the sum of $1,310,000.00, payable to the order of FTF Lending, LLC, A Delaware limited liability company, as therein provided; said Note and Lien being further secured by Deed of Trust of even date therewith to Michael J. Palumbo, Trustee(s), recorded under Instrument No. 202000232224, of the Official Public Records of Dallas County, Texas.

Borrower hereby acknowledges receipt of such funds and the validity of the lien(s) securing the prior indebtedness against the Mortgaged Property (without regard to any assignment of said liens contemporaneously with or subsequent to their creation); it is expressly agreed that said liens are hereby renewed, extended, and carried forward in full force and effect to secure payment of the Note secured by this Instrument, and that the holder is subrogated to all the rights, powers and equities of the original owners and holders of the prior indebtedness (whether such current holder shall assign and transfer its respective liens to the holder hereof or shall release its respective liens upon satisfaction of the indebtedness owing to such holder).

**UU. FIXTURE FILING.** This Instrument is also a fixture filing under the Uniform Commercial Code of Texas.

**VV.  NO FIDUCIARY DUTY.** Lender owes no fiduciary or other special duty to Borrower.

**WW.    ADDITIONAL PROVISIONS REGARDING ASSIGNMENT OF RENTS.** section C above shall not be construed to require a pro tanto or other reduction of the Indebtedness resulting from the assignment of Rents. If the provisions of section C above and the preceding sentence cause the assignment of Rents in section C above to be deemed to be an assignment for additional security only, Lender shall be entitled to all rights, benefits and remedies attendant to such collateral assignment. The assignment of Rents contained in section C above shall terminate upon the release of this Instrument.

**Texas Deed of Trust**                                                                                              Page 29
© GoDocs® All Rights Reserved.

**XX. LOAN CHARGES.** Borrower and Lender intend at all times to comply with the laws of the State of Texas governing the maximum rate or amount of interest payable on or in connection with the Indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under the Note, this Instrument or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or if acceleration of the maturity of the Indebtedness, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by any applicable law, then Borrower and Lender expressly intend that all excess amounts collected by Lender shall be applied to reduce the unpaid principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Note, this Instrument and the other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. The right to accelerate the maturity of the Indebtedness does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Note, this Instrument or any other Loan Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of the Indebtedness, the total amount of interest that Borrower is obligated to pay and Lender is entitled to receive with respect to the Indebtedness shall not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances and any advances made pursuant to the Instrument or any other Loan Document (such as for the payment of Impositions and similar expenses or costs).

**YY. INTERPRETATION.** It is the intention of Borrower and Lender that if any provision of this Instrument or any other Loan Document is capable of two (2) constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid. Borrower acknowledges that Lender has attempted in good faith to assure that this Instrument, the Note and all other Loan Documents are in compliance with applicable laws of the Property Jurisdiction and federal laws. Nevertheless, in the event that any provision of this Instrument, the Note or any other Loan Document is not in compliance with any such laws, then the non-complying provision shall be deemed to be deleted or modified to the extent necessary to assure legal compliance. Similarly, in the event any language or disclosure required by applicable laws of the Property Jurisdiction is not contained in the Loan Documents, then the Loan Documents shall be deemed to have been supplemented to add such language or disclosure, or, at Lender's option, Lender may provide such additional language or disclosure. In either event, such legal requirement shall thereby be satisfied and such noncompliance shall be deemed to have been cured for all purposes. Within ten (10) days after written request by Lender, Borrower agrees to execute such documentation as Lender may require to cure any legal compliance issues or deficiencies in the Loan Documents.

**ZZ. FUTURE ADVANCES.** In addition to the Indebtedness, this Instrument shall (to the extent allowed by applicable law) also secure payment of the principal, interest and other charges due on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Mortgaged Property) when the promissory note evidencing such loan or advance specifically states that it is secured by this Instrument ("**Future Advances**"), including all extensions, renewals and modifications of any such Future Advances.

© GoDocs® All Rights Reserved.

APP040

**AAA.    AGREEMENT TO PROVIDE ADDITIONAL DOCUMENTS.** Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of this Instrument and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended or corrected and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this section or under section BB above within ten (10) days after written request by Lender shall constitute an Event of Default.

**BBB.    EXECUTION IN COUNTERPARTS.** This Instrument may be executed in multiple counterparts, and the separate signature pages and notary acknowledgments may then be combined into a single original document for recordation.

**CCC.    MERS PROVISIONS.**

   **CCC.1. NOMINEE OF CAPACITY OF MERS.** MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and only holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Indebtedness shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Lender herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Mortgaged Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Instrument. Subject to the foregoing, all references herein to "Lender" shall include Lender and its successors and assigns.

   **CCC.2. RELATIONSHIP.** The relationship of Borrower and Lender under this Instrument and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender (the role of MERS hereunder being solely that of nominee as set forth in subsection (a) above and not that of a lender); and Mortgagee neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Mortgaged Property. Notwithstanding any other provisions of this Instrument and the other Loan Documents: (i) Mortgagee is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower, and Mortgagee does not intend to ever assume such status; and (ii) Mortgagee shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower.

   **CCC.3. NO LIABILITY.** Mortgagee shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of the Mortgaged Property, whether caused by or arising from: (i) any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on the Mortgaged Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Borrower or any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Mortgaged Property in a safe condition; or (v) any nuisance made or suffered on any part of the Mortgaged Property.

**DDD.    PAYMENT OF CLOSING COSTS.** If for any reason the escrow or closing agent fails to reserve and pay for all of Lender's fees, legal, documentation, appraisal, title, recording and other closing costs incurred in connection with the closing and funding of the Loan, then Borrower shall pay or reimburse Lender for any such unpaid fees or costs within ten (10) days after written demand by Lender itemizing the unpaid fees and costs. Failure of Borrower to so pay or reimburse Lender for any such unpaid fees and costs within ten (10) days after written demand by

Texas Deed of Trust                                                                                         Page 31
© GoDocs® All Rights Reserved.

Lender shall constitute an Event of Default and, without limiting any other remedies of Lender, Lender may immediately instate the Default Rate under the Note until such amounts are received by Lender.

**EEE. BALLOON PAYMENT NOTICE.** The Note secured hereby provides for a balloon payment of the entire Indebtedness upon the Maturity Date of the Note.

**FFF. NON-OWNER OCCUPIED PROPERTY.** Throughout the term of the Loan, Borrower shall not occupy any portion of the Mortgaged Property in any manner. If Borrower is an entity other than a natural person, any persons with a direct or indirect ownership interest in Borrower shall not occupy any portion of the Mortgaged Property in any manner throughout the term of the Loan.

**GGG.    DOCUMENT IMAGING.** Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Instrument and the other Loan Documents, and Lender may destroy or archive the paper originals. Borrower waives (1) any right to insist or require that Lender produce paper originals, (2) agrees that such images shall be accorded the same force and effect as the paper originals, (3) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (4) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Instrument or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

**HHH.    NOTICE OF ADDITIONAL PROVISIONS REGARDING INSURANCE.** Any terms to the contrary contained in this Instrument notwithstanding, the following requirements are hereby imposed pursuant to Section 307.052 of the Texas Finance Code:

**HHH.1.**    BORROWER IS REQUIRED TO: (a) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN AN AMOUNT EQUAL TO THE INDEBTEDNESS, (b) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER, AND (c) NAME THE LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF LOSS.

**HHH.2.**    IF BORROWER FAILS TO COMPLY WITH SUBSECTION (1) ABOVE, LENDER MAY, BUT WILL NOT BE OBLIGATED TO, OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.

**III. ENTIRE AGREEMENT.** THIS INSTRUMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**JJJ. WAIVER OF TRIAL BY JURY.** BORROWER, MERS AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER, MERS AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

**ATTACHED EXHIBIT.** The following Exhibit is attached to this Instrument:
Exhibit "A"        Description of the Land

THIS DEED OF TRUST SECURES A FIXED RATE PROMISSORY NOTE. THIS DEED OF TRUST IS A FIRST DEED OF TRUST. NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE MORTGAGED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND AT LENDER'S OPTION THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Instrument under seal (where applicable) or has caused this Instrument to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Borrower intends that this Instrument shall be deemed to be signed and delivered as a sealed instrument.

**SIGNATURE(S) ON FOLLOWING PAGE(S)**

APP043

BORROWER:

SF ROCK CREEK, LLC,
a Texas limited liability company

By:    ONE PASS INVESTMENTS, LLC,
       a Delaware limited liability company,
       Manager

       By:    _____
              TIMOTHY L. BARTON, Trustee of the ONE RL Trust,
              Sole Member and Manager

(SEAL)

2022 - 202200234541  08/31/2022  09:40 AM  Page 35 of 37

State of Texas                          )  ss.

County of __Dallas__                    )

This instrument was acknowledged before me on __August 10_____, 2022 by TIMOTHY L. BARTON as **Trustee of the ONE RL Trust** therein named, said trust being the **Sole Member and Manager** of **ONE PASS INVESTMENTS, LLC, a Delaware limited liability company,** said entity being the **Manager of SF ROCK CREEK, LLC, a Texas limited liability company.**

_____
Notary Public in and for the State of Texas

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

APP045

2022 - 202200234541  08/31/2022  09:40 AM  Page 36 of 37

**EXHIBIT "A"**
**DESCRIPTION OF THE LAND**

THE LAND REFERRED TO HEREIN IS SITUATED IN DALLAS COUNTY, STATE OF TEXAS, AND IS DESCRIBED AS FOLLOWS:

Lot 32, Block 2, TURTLE CREEK PARK, an addition to the City of Dallas, Dallas County, Texas, according to the map or plat thereof, recorded in Volume 4, Page 83, Map Records, Dallas County, Texas.

APN: 00000195718000000

PROPERTY ADDRESS: 4107 ROCK CREEK DRIVE, DALLAS, TX 75204

APP046

2022-202200234541 08/31/2022 9:45 AM Page 37 of 37

# Dallas County
# John F. Warren
**Dallas County Clerk**

**Instrument Number:**  202200234541

eRecording – Real Property

Recorded On: August 31, 2022 09:40 AM                Number of Pages: 37

**" Examined and Charged as Follows: "**

Total Recording: $166.00

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                      **Record and Return To:**

Document Number:      202200234541                  Simplifile
Receipt Number:        20220830000871
Recorded Date/Time:   August 31, 2022 09:40 AM
User:                 Kevin T
Station:              CC18



**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was** FILED **In the File Number sequence on the date/time
printed hereon, and was duly** RECORDED **in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX

APP047

# EXHIBIT C

APP048

# GUARANTY

## (Texas)

This Guaranty ("**Guaranty**") is entered into as of **August 24, 2022**, by **TIMOTHY L. BARTON** ("**Guarantor**"), for the benefit of **ATHAS CAPITAL GROUP, INC., a California corporation**, and/or any subsequent holder of the Note (the "**Lender**").

### RECITALS

A.      **SF ROCK CREEK, LLC, a Texas limited liability company** ("**Borrower**"), has requested that Lender make a loan to Borrower in the amount of **ONE MILLION FIFTY-THREE THOUSAND AND 00/100 DOLLARS (US $1,053,000.00)** (the "**Loan**"). The Loan will be evidenced by a Promissory Note from Borrower to Lender dated as of the date of this Guaranty (the "**Note**"). The Note will be secured by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith (hereinafter referred to as the "**Mortgage**"), encumbering the real property described in the Mortgage (the "**Mortgaged Property**").

B.      As a condition to making the Loan to Borrower, Lender requires that Guarantor execute this Guaranty.

C.      Guarantor has a direct or indirect ownership or other financial interest in Borrower and/or will otherwise derive a material benefit from the making of the Loan.

NOW, THEREFORE, in order to induce Lender to make the Loan to Borrower, and in consideration thereof, Guarantor agrees as follows:

1.      "Indebtedness" and other capitalized terms used but not defined in this Guaranty shall have the meanings assigned to them in the Mortgage.

2.      Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, and the full and prompt performance when due, of all of the following:

(a)  The entire Indebtedness;

(b)  All of Borrower's obligations under section R of the Mortgage; and

(c)  All costs and expenses, including Attorneys' Fees and Costs and fees and out-of-pocket expenses of expert witnesses, incurred by Lender in enforcing its rights under this Guaranty.

3.      The obligations of Guarantor under this Guaranty shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the Mortgage, and, in addition, the obligations of Guarantor relating to Borrower's obligations under section R of the Mortgage shall survive any repayment or discharge of the Indebtedness. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness or any of such surviving obligations remains unpaid.

4.      Guarantor's obligations under this Guaranty constitute an unconditional guaranty of payment and not merely a guaranty of collection. This is a "continuing guaranty" under which Guarantor agrees to guarantee the full and punctual payment and performance of the Indebtedness to Lender on an open and continuing basis. Accordingly, any payments made on the Indebtedness will not discharge or diminish Guarantor's obligations and liability under this Guaranty for any remaining Indebtedness.

5.      The obligations of Guarantor under this Guaranty shall be performed without demand by Lender and shall be unconditional irrespective of the genuineness, validity, regularity or enforceability of the Note, the Mortgage, or any other Loan Document, and without regard to any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor. Guarantor hereby waives the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor. Guarantor hereby waives the benefits of any right of discharge under any and all statutes or other laws

**Texas Guaranty**
**Loan No.: BPB2022060382**
© GoDocs® All Rights Reserved.

APP049

relating to guarantors or sureties and any other rights of sureties and guarantors thereunder. Without limiting the generality of the foregoing, Guarantor hereby waives, to the fullest extent permitted by law, diligence in collecting the Indebtedness, presentment, demand for payment, protest, all notices with respect to the Note and this Guaranty which may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including, but not limited to, notice of acceptance, notice of any amendment of the Loan Documents, notice of the occurrence of any Potential Default or Event of Default, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of foreclosure, notice of protest, and notice of the incurring by Borrower of any obligation or indebtedness. Guarantor also waives, to the fullest extent permitted by law, all rights to require Lender to (a) proceed against Borrower or any other guarantor of Borrower's payment or performance with respect to the Indebtedness (an "**Other Guarantor**"), (b) if Borrower or any Other Guarantor is a partnership, proceed against any general partner of Borrower or the Other Guarantor, (c) proceed against or exhaust any collateral held by Lender to secure the repayment of the Indebtedness, or (d) pursue any other remedy it may now or hereafter have against Borrower, or, if Borrower is a partnership, any general partner of Borrower. In addition to the waivers set forth elsewhere in this Guaranty, (a) Guarantor waives the benefit of any right of discharge under Chapter 43 of the Texas Civil Practice and Remedies Code and all other rights of sureties and guarantors under such Chapter; and (b) Guarantor waives all rights or defenses arising under Rule 31 of the Texas Rules of Civil Procedure, Section 17.001 of the Texas Civil Practice and Remedies Code, Chapter 43 of the Texas Civil Practice and Remedies Code, or any other statute or law, common law, in equity, under contract or otherwise, or under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law; and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code and under any amendments, recodifications, supplements or any successor statute or law of or to any such statute or law.

6.      At any time or from time to time and any number of times, without notice to Guarantor and without affecting the liability of Guarantor, (a) the time for payment of the principal of or interest on the Indebtedness may be extended or the Indebtedness may be renewed in whole or in part; (b) the time for Borrower's performance of or compliance with any covenant or agreement contained in the Note, the Mortgage or any other Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (c) the maturity of the Indebtedness may be accelerated as provided in the Note, the Mortgage or any other Loan Document; (d) the Note, the Mortgage or any other Loan Document may be modified or amended by Lender and Borrower in any respect, including, but not limited to, an increase in the principal amount; (e) any security for the Indebtedness may be modified, exchanged, surrendered or otherwise dealt with or additional security may be pledged or mortgaged for the Indebtedness; and (f) all or any part of the Indebtedness or any participation therein may be sold, transferred or assigned by Lender or any loan participant.

7.      Guarantor states that (a) no statements or agreements of any kind have been made to Guarantor that would limit or qualify in any way the terms of this Guaranty; (b) Guarantor has full power, right and authority to enter into this Guaranty; (c) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (d) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (e) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender, and no event has occurred which may materially adversely affect Guarantor's financial condition; (f) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid Taxes) against Guarantor is pending or, to the best of Guarantor's knowledge, threatened; (g) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (h) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. If any of the above statements of fact are inaccurate on the date of this Guaranty or become inaccurate prior to repayment of the Indebtedness, then (i) such inaccuracy shall be an Event of Default under the Loan and under this Guaranty, and (ii) without limiting any other remedies of Lender, Lender may bring a claim against Guarantor for misrepresentation, a claim for breach of warranty, or both.

8.      If more than one Person executes this Guaranty, the obligations of those Persons under this Guaranty shall be joint and several. Lender, in its sole and absolute discretion, may (a) bring suit against Guarantor, or any one or more of the Persons constituting Guarantor, and any Other Guarantor, jointly and severally, or against any one or

© GoDocs® All Rights Reserved.

more of them; (b) compromise or settle with Guarantor, any one or more of the Persons constituting Guarantor, or any Other Guarantor, for such consideration as Lender may deem proper; (c) release one or more of the Persons constituting Guarantor, or any Other Guarantor, from liability; and (d) otherwise deal with Guarantor and any Other Guarantor, or any one or more of them, in any manner, and no such action shall impair the rights of Lender to collect from Guarantor any amount guaranteed by Guarantor under this Guaranty. Nothing contained in this paragraph shall in any way affect or impair the rights or obligations of Guarantor with respect to any Other Guarantor.

9.      Any indebtedness of Borrower held by Guarantor now or in the future is and shall be subordinated to the Indebtedness and any such indebtedness of Borrower shall be collected, enforced and received by Guarantor, as trustee for Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

10.     Guarantor shall have no right of, and hereby waives any claim for, subrogation or reimbursement against Borrower or any general partner of Borrower by reason of any payment by Guarantor under this Guaranty, whether such right or claim arises at law or in equity or under any contract or statute, until the Indebtedness has been paid in full and there has expired the maximum possible period thereafter during which any payment made by Borrower to Lender with respect to the Indebtedness could be deemed a preference under the Bankruptcy Code.

11.     All notices, demands and other communications ("notice") shall be given in accordance with section EE of the Mortgage. Any notices to Guarantor shall be addressed to Guarantor at the address of Borrower set forth in said section EE of the Mortgage.

12.     If any payment by Borrower is held to constitute a preference under any applicable bankruptcy, insolvency, or similar laws, or if for any other reason Lender is required to refund any sums to Borrower, such refund shall not constitute a release of any liability of Guarantor under this Guaranty. It is the intention of Lender and Guarantor that Guarantor's obligations under this Guaranty shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

13.     Guarantor shall from time to time, upon request by Lender, deliver to Lender such financial statements as Lender may reasonably require, including a current balance sheet and income and expense statement in form and content acceptable to Lender. Guarantor shall also furnish to Lender copies of all federal and state income tax returns filed by Guarantor within thirty (30) days after filing. Upon request by Lender, all such tax returns must be prepared by an independent certified public accountant or attorney. Each of the statements, schedules, documents, items and reports required by this paragraph shall be certified to be complete and accurate by Guarantor (or for an entity Guarantor, an individual having authority to bind Guarantor), and shall be in such form and contain such detail as Lender may reasonably require. Lender may at Lender's discretion require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender. Guarantor acknowledges and agrees that (a) the reporting requirements of this paragraph apply to each Guarantor if more than one Guarantor is executing this Guaranty, and (b) that failure of any Guarantor to provide financial statements, information, documents or tax returns required by this paragraph shall constitute an Event of Default. Guarantor acknowledges and agrees that Lender may from time to time (i) verify and re-verify any information contained in Borrower's application for the Loan, (ii) order additional credit reports from any credit reporting agency with respect to Borrower and Guarantor, and (iii) report Borrower's and Guarantor's name(s), account information and payment history to any credit reporting agency. Guarantor agrees to keep adequately informed of any facts, events or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

14.     Lender may assign its rights under this Guaranty in whole or in part and upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of such assignee to the extent so assigned. The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties; and the term "Lender" shall include, in addition to Lender, any lawful owner, holder or pledgee of the Note.

15.     This Guaranty and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements. There are no unwritten oral agreements between the parties. All prior or contemporaneous agreements, understandings, representations, and statements, oral or written, are merged into this Guaranty and the other Loan Documents.

© GoDocs™ All Rights Reserved.

Guarantor acknowledges that it has received and reviewed copies of the Note, the Mortgage and all other Loan Documents. Neither this Guaranty nor any of its provisions may be waived, modified, amended, discharged, or terminated except by an agreement in writing signed by the party against which the enforcement of the waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in that agreement.

16.    This Guaranty, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Mortgaged Property is located (the "**Property Jurisdiction**"). Guarantor agrees that any controversy arising under or in relation to this Guaranty may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies which shall arise under or in relation to this Guaranty, the Note, the Mortgage or any other Loan Document. Guarantor irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise.

17.    The invalidity or unenforceability of any provision of this Guaranty shall not affect the validity or enforceability of any other provision and all other provisions shall remain in full force and effect.

18.    Except as otherwise provided in this Guaranty, each married individual who executes this Guaranty intends to bind both his or her separate estate and his or her marital community.

19.    Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Guaranty and the other Loan Documents, and Lender may destroy or archive the paper originals. Guarantor (i) waives any right to insist or require that Lender produce paper originals, (ii) agrees that such images shall be accorded the same force and effect as the paper originals, (iii) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (iv) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Guaranty or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

20.    **GUARANTOR AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS GUARANTY OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

21.    This Guaranty may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Guaranty.

**IN WITNESS WHEREOF**, Guarantor has signed and delivered this Guaranty under seal (where applicable) or has caused this Guaranty to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

**SIGNATURE(S) ON FOLLOWING PAGE(S)**

APP052

GUARANTOR:

_____ (SEAL)

TIMOTHY L. BARTON

APP053

State of Texas           ) **ss.**

County of ___Dallas___ )

    This instrument was acknowledged before me on _August 29_____, **2022** by **TIMOTHY L. BARTON**.

_____
Notary Public in and for the State of Texas

Bella D Khusal
My Commission Expires
09/24/2022
ID No 131734480

APP054