IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § § | |

**APPENDIX IN SUPPORT OF RECEIVER'S VERIFIED AND EXPEDITED MOTION TO (I) RATIFY ORDERS APPOINTING APPRAISERS, APPROVING APPRAISALS AND APPROVING SALE OF REAL ESTATE AS REQUIRED BY 28 U.S.C. § 2001 WITH RESPECT TO THE FRISCO GATE PROPERTY, (II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS, AND (III) STAY ACCRUAL OF POST-RECEIVERSHIP DEFAULT RATE INTEREST**

| EXHIBIT | DESCRIPTION | APP PAGES |
|:---:|---|:---:|
| A | Loan Agreement | APP001-031 |
| B | Promissory Note | APP032-037 |
| C | Guaranty | APP038-046 |
| D | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing | APP047-075 |
| E | UCC-1 Financing Statement | APP076-077 |
| F | Assignment of Money Market Account Management | APP078-081 |
| G | Assignment of Licenses, Permits and Approvals | APP082-085 |
| H | Assignment of Contract Rights and Proceeds | APP086-096 |
| I | Hazardous Materials Indemnity Agreement | APP097-105 |
| J | Closing Certificate | APP106-110 |
| K | Loan Modification Agreement | APP111-119 |

– 2 –

Respectfully submitted,


By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    C. Alan Carrillo
     Texas Bar No. 24109693
     alan@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

/s/ Charlene C. Koonce
Charlene C. Koonce

# EXHIBIT A

TRB Loan #

## LOAN AGREEMENT

THIS LOAN AGREEMENT (this "Agreement") dated effective as of January 30, 2020 ("Date Hereof"), is made by and between TEXAS REPUBLIC BANK, N.A. ("Lender"), and FHC ACQUISITION, LLC, a Texas limited liability company (individually and collectively, the "Borrower").

## ARTICLE I.
## DEFINITIONS

For purposes of this Agreement, in addition to other terms defined herein, the following terms shall have the respective meanings assigned to them.

**1.1    Advance.** The term "Advance" shall mean a disbursement from Lender's account to or for the benefit of Borrower of any of the proceeds of the Loan in accordance with any of the provisions of this Agreement or of any of the other Loan Documents.

**1.2    Affiliate.** The term "Affiliate" shall mean, with respect to any Person, another Person that directly or indirectly through one or more intermediaries, Controls, or is Controlled by or is under common Control with, the Person specified.

**1.3    Approved Purpose.** The term "Approved Purpose" means the proceeds of the Loan are to be used to acquire the Property.

**1.4    Assignment of Contract Rights.** The term "Assignment of Contract Rights" shall mean the Assignment of Contract Rights and Proceeds, pursuant to which Borrower will assign to Lender all of its rights, titles, and interests in and to the Master Development Agreement, the Performance Agreements, and all proceeds related thereto, as each may be amended, supplemented or modified from time to time.

**1.5    Assignment of Licenses.** The term "Assignment of Licenses" shall mean the Assignment of Licenses, Permits, and Approvals pursuant to which Borrower will assign all of its rights, titles, and interests in and to any and all governmental instrumentalities and authorities in connection with the acquisition, ownership, operation, construction, use, leasing or occupancy of the land and improvements on the Property.

**1.6    Assignment of Money Market Account.** The term "Assignment of Money Market Account" shall mean that certain Assignment of Money Market Account Agreement executed by Borrower and assigning to Lender the Reserve Account as more particularly described therein.

**1.7    Assignment of Leases.** The term "Assignment of Leases" shall mean that certain Assignment of Leases and Rents pursuant to which Borrower will assign to Lender all of the landlord's interest in the Leases, lease proceeds and/or rents from the Property.

5556.236la
**Loan Agreement – Page 1**

APP002

**1.8    Code.** The term "Code" shall mean the Uniform Commercial Code of the State of Texas.

**1.9    Consultant.** The term "Consultant" shall mean all architects, engineers, landscape architects, consultants and other professionals providing services to Borrower in connection with the operation and management of the Property and approved by Lender.

**1.10    Control.** The term "Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract, or otherwise. Without limiting the generality of the foregoing, a Person (the "subject Person") shall be deemed to be "Controlled" by another Person if such other Person possesses, directly or indirectly, power to vote 50% or more of the securities having ordinary voting power for the election of directors, managing general partners, or equivalent governing body of the subject Person.

**1.11    Debt.** The term "Debt" shall mean for any Person: (i) all indebtedness, whether or not represented by bonds, debentures, notes or other evidences of indebtedness, for the repayment of money borrowed; (ii) all indebtedness representing deferred payment of the purchase price of property or assets; (iii) all indebtedness under any lease which, in conformity with GAAP, is required to be capitalized for balance sheet purposes; (iv) all indebtedness under the guaranty, endorsements, assumptions or other contingent obligations, in respect of, or to purchase or otherwise acquire, indebtedness to others; and (v) all indebtedness secured by a Lien existing on property owned, subject to such Lien, whether or not the indebtedness secured thereby shall have been assumed by the owner thereof.

**1.12    Debtor Relief Laws.** The term "Debtor Relief Laws" shall mean any applicable liquidation, conservatorship, bankruptcy, moratorium, rearrangement, insolvency, reorganization, or similar laws affecting the rights or remedies of creditors generally, as in effect from time to time.

**1.13    Default Rate.** The term "Default Rate" shall mean the rate of interest per annum equal to the Maximum Rate.

**1.14    Event of Default.** The term "Event of Default" shall have the meaning set forth in Section 5.1 of this Agreement.

**1.15    Environmental Indemnity Agreement.** The term "Environmental Indemnity Agreement" shall mean that certain Hazardous Materials Indemnity Agreement dated of even date herewith, executed by Borrower and Guarantor, as indemnitor, for the benefit of Lender, as the same may be amended, supplemented or modified from time to time.

**1.16    FCDC Performance Agreement.** The term "FCDC Performance Agreement" shall mean that certain Performance Agreement dated effective as of December 30, 2019 between Frisco Community Development Corporation, a Texas non-profit corporation, and Borrower.

5556.236la
**Loan Agreement – Page 2**

APP003

**1.17    FEDC Performance Agreement.** The term "FEDC Performance Agreement" shall mean that certain Performance Agreement dated effective as of December 31, 2019 between Frisco Economic Development Corporation, a Texas non-profit corporation, and Borrower.

**1.18    Financial Statements.** The term "Financial Statements" shall mean the balance sheets, profit and loss statements, reconciliations of capital and surplus, changes in financial condition, schedules of sources and applications of funds, and other financial information of Borrower and Guarantor, heretofore furnished to Lender or required to be furnished to Lender under the terms of this Agreement or any other of the Loan Documents from time to time, which statements shall be prepared in such scope, detail and form as shall be acceptable to Lender, and shall be certified by such parties.

**1.19    Financing Statements.** The term "Financing Statements" shall mean the Form UCC-1 or other Code financing statements perfecting the security interest securing the Loan, to be filed with the appropriate offices for the perfection of a security interest in any of the Property.

**1.20    GAAP.** The term "GAAP" shall mean generally accepted accounting principles in the United States set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board or such other principles as may be approved by a significant segment of the accounting profession in the United States, that are applicable to the circumstances as of the date of determination, consistently applied.

**1.21    Governmental Authority.** The term "Governmental Authority" shall mean the United States, the State of Texas, the County of Collin, the City of Frisco, or any other political subdivision in which the Property is located, and any other political subdivision, agency, or instrumentality exercising jurisdiction over Borrower, the Property, or the Improvements.

**1.22    Governmental Requirements.** The term "Governmental Requirements" shall mean all laws, ordinances, rules and regulations of any Governmental Authority applicable to Borrower, Guarantor, or the Property.

**1.23    Guaranty.** The term "Guaranty" shall mean that certain Guaranty of even date herewith executed by Guarantor for the benefit of Lender.

**1.24    Guarantor.** The term "Guarantor" mean Timothy Barton.

**1.25    Hazardous Materials.** The term "Hazardous Materials" shall have the meaning set forth in Section 3.19 of this Agreement.

**1.26    Hazardous Materials Laws.** The term "Hazardous Materials Laws" mean all laws, ordinances and regulations relating to Hazardous Materials, including, without limitation: the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 et seq.; the Comprehensive

5556.236la
**Loan Agreement – Page 3**

APP004

Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651, the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, 42 U.S.C. Section 300f et seq.; and, all comparable state and local laws, laws of other jurisdictions or orders and regulations (including, without limitation, the Texas Water Code, the Texas Health & Safety Code and the Texas Solid Waste Disposal Act).

1.27   **Improvements.** The term "Improvements" shall mean all improvements now or hereafter located on the Property.

1.28   **Inspecting   Consultants/Engineers.** The term "Inspecting Consultants/Engineers" shall mean the engineer chosen by Lender, or its replacement as selected by Lender.

1.29   **Laws.** The term "Laws" shall mean all applicable statutes, laws, ordinances, regulations, orders, writs, injunctions, decisions, opinions or decrees of any Governmental Authority or any Tribunal.

1.30   **Leases.** The term "Leases" shall mean all leases, master leases, subleases, licenses, concessions, or other agreements (whether written or oral) that grant to third parties a possessory interest in or the right to use or occupy any part of the Property, together with all security and other related deposits or payments made in connection therewith.

1.31   **Lien.** The term "Lien" shall mean any lien, mortgage, security interest, pledge, charge, or encumbrance of any kind, including, without limitation, a mechanic's lien, a materialman's lien, the rights of a vendor, lessor, or similar party under any conditional sales agreement or other title retention agreement or lease substantially equivalent thereto, and any other right of or arrangement with any creditor to have his claim satisfied out of any property or assets, or the proceeds therefrom, prior to the general creditors of the owner thereof.

1.32   **Loan.** The term "Loan" shall mean the Loan by Lender to Borrower, in an amount not to exceed the Maximum Funding Obligation, to be used for the Approved Purpose, as well as any involuntarily advanced funds in excess of the principal Loan amount which Lender deems necessary to advance to maintain the quality of the Improvements and the Property, and to preserve and to protect collateral covered by the Loan Documents and Lender's status as a first lienholder as to the Property, Improvements, and other collateral for the Loan.

1.33   **Loan Documents.** The term "Loan Documents" shall mean this Agreement, the Mortgage, the Note, the Guaranty, the Assignment of Licenses, the Assignment of Contract Rights, the Assignment of Leases, the the Assignment of Money Market Account, the Environmental Indemnity Agreement, the Financing Statements, and such other instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by Borrower, Guarantor, or any other party to Lender pursuant to this Agreement.

5556.236la
**Loan Agreement – Page 4**

1.34   **Management Agreement.** The term "Management Agreement" shall mean any property management agreement for the Property executed by and between Borrower and Property Manager, and approved by Lender in writing.

1.35   **Master Development Agreement.** The term "Master Development Agreement" shall mean that certain Master Development Agreement dated effective as of December 31, 2019 between the City of Frisco, Texas, a municipal corporation of the State of Texas and a home rule municipality, Frisco Economic Development Corporation, a Texas non-profit corporation, Frisco Community Development Corporation, a Texas non-profit corporation, and Borrower.

1.36   **Material Agreement.** The term "Material Agreement" shall mean any material written or oral agreement, contract, commitment, promissory note, lease or understanding executed by Borrower requiring payments, pledges, or performance by Borrower executed in connection with the Property over the term of any such agreement, contract, commitment or understanding in excess of Fifty Thousand and No/100 Dollars ($50,000.00) to which the person or entity in question is a party, by which such person or entity is directly or indirectly bound, jointly or severally bound, contingently or directly liable, or to which any assets of such person or entity may be subject, which is not cancelable by such person or entity upon thirty (30) days' or less notice without liability for further payment other than a nominal penalty.

1.37   **Maximum Funding Obligation.** The term "Maximum Funding Obligation" shall mean an amount not to exceed Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00).

1.38   **Maximum Rate.** The term "Maximum Rate" shall mean during the term of the Loan the maximum permissible amount which may be paid or agreed to be paid to Lender or the holder of the Note, or collected by Lender or such holder, for the use, forbearance, or detention of the Loan or for the payment of or performance of any covenant obligation contained in any of the Loan Documents under applicable federal or state usury laws.

1.39   **Mortgage.** The term "Mortgage" shall mean that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing conveying to David L. Baty, as Trustee for the benefit of Lender, the Property as security for the payment of the Obligations and the payment and performance of all obligations specified in the Mortgage, this Agreement, and the other Loan Documents, as the same may be amended, supplemented or modified from time to time.

1.40   **Note.** The term "Note" shall mean that certain Promissory Note from Borrower to Lender of even date herewith in the amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00) and evidencing the Loan, and all extensions, renewals and modifications thereof.

1.41   **Obligated Party.** The term "Obligated Party" shall mean Borrower, Guarantor, any Person that now or hereafter guarantees the Obligations, and their respective successors and assigns.

5556.2361a
**Loan Agreement – Page 5**

1.42    **Obligations.** The term "Obligations" shall mean all obligations, indebtedness and liabilities of any Obligated Party to Lender, now existing or hereafter created, acquired or incurred, whether direct, indirect, primary or secondary, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, regardless of whether such present or future indebtedness, obligations and liabilities may, prior to their acquisition by such Obligated Party, be or have been in favor of some other person or have been acquired by such Obligated Party in a transaction with one or more borrowers, together with any and all renewals and extensions of such indebtedness, obligations and liabilities, including, without limitation, the obligations, indebtedness and liabilities of any Obligated Party under this Agreement, the Note, the Guaranty, and the other Loan Documents, and all interest accruing thereon and all attorneys' fees and other expenses incurred in the enforcement or collection thereof, and including interest and fees that accrue after the commencement by or against any Obligated Party or any Affiliate thereof of any proceeding under any Debtor Relief Laws naming such Person as the debtor in such proceeding, regardless of whether such interest and fees are allowed claims in such proceeding.

1.43    **Origination Fee.** The term "Origination Fee" shall mean a loan origination fee in the amount of Twenty-Nine Thousand Six Hundred Fifty-Seven and 83/100 Dollars ($29,657.83) to be paid to Lender on the date hereof, if not previously paid, in consideration of Lender's originating the Loan to Borrower and of the commitment of Lender to make the proceeds of the Loan available to Borrower from time to time during the term of this Agreement in accordance with the terms hereof.

1.44    **Performance Agreements.** The term "Performance Agreements" shall mean, collectively, the FCDC Performance Agreement and the FEDC Performance Agreement.

1.45    **Person.** The term "Person" shall mean any individual, trustee, corporation, general partnership, limited partnership, limited liability company, joint stock company, trust, unincorporated organization, bank, business association, firm, joint venture, or Governmental Authority.

1.46    **Property.** The term "Property" shall mean the real property described as being **Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas,** together with the Improvements and all other property described in the Mortgage.

1.47    **Property Manager.** The term "Property Manager" shall mean such entities engaged to provide property management services to the Property as selected by Borrower and approved by Lender pursuant to the terms of this Agreement.

1.48    **Reserve Account.** The term "Reserve Account" means the account to be established by Borrower with Lender and pledged to Lender as security for the Loan, as more particularly described in the Assignment of Account.

5556.236la
**Loan Agreement – Page 6**

1.49    **Taxes.** The term "Taxes" shall mean all taxes, assessments, fees, levies, imposts, duties, deductions, withholdings, or other charges of any nature whatsoever from time to time or at any time imposed by any Laws or by any Tribunal.

1.50    **Title Company.** The term "Title Company" shall mean Chicago Title Insurance Company.

1.51    **Tribunal.** The term "Tribunal" shall mean any court, department, commission, board, bureau, agency, or instrumentality of any Governmental Authority.

1.52    **Underwriting Fee.** The term "Underwriting Fee" shall mean an underwriting fee in the amount of Two Thousand and No/100 Dollars ($2,000.00) to be paid to Lender on the date hereof, if not previously paid, in consideration of Lender's underwriting of the Loan.

1.53    **Writings.** The term "Writings" shall have the meaning set forth in Section 3.13 of this Agreement.

**ARTICLE II.**
**ADVANCES**

2.1    **Commitment of Lender.** Subject to the provisions of this Agreement, and provided that an Event of Default has not occurred, and no event or condition which with the giving of notice or the passage of time or both would constitute an Event of Default has occurred and remains uncured to Lender's sole satisfaction, Lender will extend the Loan to Borrower in a single Advance for the Approved Purpose. Notwithstanding the forgoing to the contrary, Lender has the right, but not the obligation, to make Advances of principal under the Loan in excess of the Maximum Funding Obligation (i) pay any portion of the Obligations that may be due and owing at any time under the Loan Documents; and (ii) preserve the Collateral or the Property, or enforce its rights under the Loan Documents.

2.2    **General Conditions Precedent.** Lender shall not be obligated to disburse all or any portion of the Loan, unless at or prior to the time of the making of such disbursement, the following conditions have been fulfilled:

(a)    All representations and warranties set forth in this Agreement and in all other Loan Documents shall be true and complete.

(b)    Borrower is in full compliance with all of the covenants, agreements, obligations and undertakings required to be performed by Borrower under this Agreement and under the other Loan Documents unless compliance thereof shall have been waived in writing by Lender.

(c)    No Event of Default as defined herein or in any other Loan Documents, and no event or condition which with the notice or the passage of time or both as prescribed herein or in such other Loan Documents, would constitute any such Event of Default has occurred.

5556.236la
**Loan Agreement – Page 7**

(d)    There shall have been no material adverse change in the net income or condition of the Property or in the business or financial condition or management of Borrower or Guarantor and the Property shall not have suffered any damage by fire or other casualty, and no condemnation or adverse zoning or usage change proceedings shall have been commenced or threatened.

(e)    All statements contained in all certificates, statements and data furnished to Lender by or on behalf of Borrower or in connection with the transactions contemplated by this Agreement or any of the other Loan Documents are true and complete, and there are no facts or events known to Borrower which, if disclosed to Lender, would make such statements, certificates or data untrue.

(f)    All documentation shall at all times be in form and content acceptable to Lender.

**2.3    Interest on the Loan.** Interest on the Loan, at the rate specified in the Note, shall be (i) computed on the unpaid principal balance which exists from time to time, as more particularly set forth in the Note; and (ii) paid in accordance with the terms and provisions of the Note.

**2.4    Use of Advances.** Borrower shall disburse all Advances for payment of costs and expenses related to the Approved Purpose.

**2.5    Direct Disbursement and Application by Lender.** Lender shall have the right, but not the obligation, to disburse and apply the proceeds of any Advance to the satisfaction of any of Borrower's obligations hereunder directly to the Title Company and any other person or firm to whom payment is due under this Agreement or any other Loan Documents. Any Advance by Lender for such purpose shall be part of the Loan and shall be secured by the Loan Documents. Borrower hereby authorizes Lender to hold, use, disburse, and apply the Loan for the Approved Purpose, expenses incident to the Loan and the Property, and the payment or performance of any portion of the Obligations, including, without limitation, interest on the Loan, any Loan fees owing to Lender, legal fees of Lender's attorneys which are payable by Borrower, and such other sums as may be owing from time to time by Borrower to Lender with respect to the Obligations. Such payments may be made, at the option of Lender, by (a) debiting or charging Borrower's Loan account in the amount of such payments without first disbursing such amounts to Borrower, or (b) advancing all or any part of the amount of such payments to Borrower and then invoicing Borrower therefor. No further direction or authorization from Borrower shall be necessary to warrant such direct Advances and all such Advances shall satisfy pro tanto the obligations of Lender hereunder and shall be secured by the Loan Documents as fully as if made directly to Borrower. Notwithstanding the other provisions of this paragraph, nothing in this Agreement is intended to be for the benefit of, nor may be enforced by, nor should be relied upon by, any person, firm or corporation other than Borrower.

**2.6    Advances Do Not Constitute A Waiver.** No Advance shall constitute a waiver of any of the conditions precedent to Lender's obligations to make further Advances nor, in the event Borrower is unable to satisfy any such condition, shall any such waiver have the effect of

5556.2361a
Loan Agreement – Page 8

APP009

precluding Lender from thereafter declaring such inability to be an Event of Default or any event which with notice and/or passage of time could be an Event of Default.

2.7    **Conditions to the Single Advance.** As a condition precedent to the single Advance hereunder, Borrower must satisfy the conditions required hereby and set forth elsewhere in this Agreement and deliver to Lender, the documents, certificates, and other items that are set forth below, together with such other documents, instruments, and certificates as Lender, or its legal counsel, may require from time to time:

(a)    The general conditions set forth in Section 2.2 of this Agreement shall have been satisfied;

(b)    The Origination Fee;

(c)    The Underwriting Fee;

(d)    The Loan Documents duly executed and in recordable form by Borrower and, other parties thereto, if applicable;

(e)    A mortgagee's title insurance policy, in form and content satisfactory to Lender, to be obtained at Borrower's expense insuring that the Mortgage constitutes a valid first Lien in the Property, free and clear of all defects and encumbrances except (i) the Lien secured by the Deed of Trust, (ii) such defects and encumbrances as Lender shall approve in writing and shown on the Commitment for Title Insurance issued by Title Company in connection with the Loan under G.F. No. 4712010652 (the "Permitted Exceptions"), (iii) the electric services agreement to be entered into between Grantor and CoServ in place of an existing electric services agreement that is the subject of a recorded memorandum of electric services agreement, and (iv) the Performance Agreements, and naming Lender as insured mortgagee, issued by the Title Company, in the maximum principal amount of the indebtedness owing or to be owing to Lender on account of the Loan, with no exceptions or exclusions other than as may be approved by Lender in writing and containing any endorsements required by Lender;

(f)    The insurance policies or certificates of such insurance policies as specified in Section 4.8 herein;

(g)    Borrower's compliance with or satisfaction of all conditions, covenants, and requirements, applicable to the Leases;

(h)    Evidence that all applicable zoning ordinances or restrictive covenants affecting the Property permit the use for which the Property is intended and have been or will be complied with;

(i)    Evidence of the Property's compliance with the requirements of all applicable "environmental protection" laws, rules, codes and regulations, whether federal, state, or municipal and that the Improvements, if any, are in compliance

5556.236la
**Loan Agreement – Page 9**

with all Governmental Requirements relating to the use, occupancy and operation thereof and construction of the Improvements and evidence of the Property's compliance with the National Earthquake Hazards Reduction Program Recommended Provisions;

(j)     Evidence that all of the streets providing access to the Property either have been dedicated to public use or established by private easement, duly recorded in the records of the County in which the Property is located, and have been fully installed and accepted by the applicable Governmental Authority, with all costs and expenses of the installation and acceptance thereof having been paid in full, and that there are no restrictions on the use and enjoyment of such streets that adversely affect, limit, or impair Borrower's ability to develop and construct the Property or operate the Property for the purposes and in the manner represented to Lender;

(k)     Evidence of the availability for hook-up at the boundaries of the Property of all utilities and other related services to the Property including specifically, but without limitation, gas, electricity, telephone, waste removal, water services and storm and sanitary sewer facilities;

(l)     Evidence satisfactory to Lender's legal counsel that all necessary action on the part of Borrower and Guarantor has been taken with respect to the execution and delivery of this Agreement and the Loan Documents and the consummation of the transactions contemplated hereby, so that this Agreement and all Loan Documents to be executed and delivered by or on behalf of Borrower and Guarantor will be valid and binding upon Borrower, Guarantor, or the person or entity executing and delivering such document in accordance with its terms. Such evidence shall include the legal opinion of legal counsel for Borrower and Guarantor, as approved by Lender, confirming such authority, validity, and binding effect of the documents in accordance with their terms, confirming that neither the Loan nor any of the financing arrangements contemplated by this Agreement violate the usury laws of the State of Texas, and covering such other matters as Lender may require in form and content reasonably acceptable to Lender's legal counsel and containing no exceptions other than such as may be acceptable to Lender and its legal counsel;

(m)     An environmental audit for the Property, either a ASTM Transaction Screen or a Phase 1, conducted by an environmental firm acceptable to Lender, and certified to Lender, in form and content satisfactory to Lender;

(n)     An appraisal and appraisal review of the Property acceptable to Lender and addressed to Lender;

(o)     Satisfaction of such other assurances, certificates, documents, consents, evidence of perfection of all Liens securing the Obligations, or opinions as Lender may require;

5556.2361a
**Loan Agreement – Page 10**

(p)    The governing documents of Borrower;

(q)    The Assignment of Money Market Account;

(r)    Evidence that Borrower has opened its primary operating account with Lender prior to Loan closing;

(s)    An executed copy of the FCDC Performance Agreement, which FCDC Performance Agreement shall be in form and substance satisfactory to Lender;

(t)    An executed copy of the FEDC Performance Agreement, which FEDC Performance Agreement shall be in form and substance satisfactory to Lender;

(u)    An executed copy of the Master Development Agreement, which Master Development Agreement shall be in form and substance satisfactory to Lender; and

(v)    Executed Lease between Borrower and each tenant of the Property in form and substance satisfactory to Lender.

**2.8    Conditions Precedent for the Benefit of Lender.**  All conditions precedent to the obligation of Lender to make any Advance are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or be entitled to assume that Lender will refuse to make any Advance in the absence of strict compliance with such conditions precedent.  All requirements of this Agreement may be waived by Lender, in whole or in part, at any time.

**2.9    Maximum Funding Obligation.**  Lender shall have no obligation to make Advances in excess of amounts Borrower has properly qualified in advance to receive in accordance with the terms of this Agreement, and Lender shall have no obligation to make Advances under this Loan in excess of the Maximum Funding Obligation; provided however, such Maximum Funding Obligation is subject to the terms of Section 2.1 hereof.

**2.10    Setoff.**  Lender shall have the right to set off and apply against the Obligations in such manner as Lender may determine, without prior notice to Borrower, any and all deposits (general or special, time or demand, provisional or final) or other sums at any time credited by or owing from Lender to Borrower.  As further security for the Obligations of Borrower, Borrower hereby grants to Lender a security interest in all money, instruments and other property of Borrower now or hereafter held by Lender, including, without limitation, property held in safekeeping.  In addition to Lender's right of setoff and as further security for the Obligations of Borrower, Borrower hereby grants to Lender a security interest in all deposits (general or special, time or demand, provisional or final) and other accounts of Borrower now or hereafter on deposit with or held by Lender and all other sums at any time credited by or owing from Lender to Borrower.  The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

5556.236la
**Loan Agreement – Page 11**

**2.11  Auto-Debit.** Borrower shall repay the accrued but unpaid interest and unpaid principal amount of the Loan in accordance with the terms as more particularly described in the Note. Borrower authorizes and instructs Lender to debit Borrower's accounts established with Lender each time a payment comes due under the Note and apply same towards satisfaction of the Obligations as they come due.

**2.12  Reserve Account.** At the initial closing of the Loan, Borrower shall deposit its own funds in cash in the amount of $372,500.00 into the Reserve Account. The funds on deposit in the Reserve Account shall be used for servicing the first twelve (12) months of interest accrual on the Note and ad valorem taxes on the Property and may be paid in accordance with the auto-debit provisions set forth in Section 2.11 above. Borrower authorizes and instructs Lender to debit the Reserve Account as and when the Obligations come due without notice to Borrower or Guarantor. To the extent sums are not available in the Reserve Account to service the principal and interest payments due under the Note, Borrower shall be responsible for making any shortfall payments to keep the Obligations current. Notwithstanding anything contained in the foregoing to the contrary, Borrower is and remains responsible for the payment and performance of the Obligations and for the performance all covenants, obligations, and agreements contained in the Loan Documents.

### ARTICLE III.
### REPRESENTATIONS AND WARRANTIES OF BORROWER

**3.1  The Financial Statements.** The Financial Statements are true, correct, and complete as of the dates specified therein and fairly present the financial condition of Borrower and Guarantor as of the dates specified. No material adverse change has occurred in the financial condition of Borrower or Guarantor.

**3.2  Suits, Actions, Etc.** There are no actions, suits, or proceedings pending or threatened in any court or before or by any Governmental Authority against or affecting Borrower, Guarantor or the Property, or involving the validity, enforceability, or propriety of any of the Loan Documents, at law or in equity. The consummation of the transactions contemplated hereby, and the performance of any of the terms and conditions hereof and of the other Loan Documents, will not result in a breach of, or constitute a default in, any mortgage, deed of trust, deed to secure debt, lease, promissory note, loan agreement, credit agreement, operating agreement, or other agreement to which Borrower or Guarantor is a party or by which Borrower or Guarantor may be bound or affected.

**3.3  Valid and Binding Obligation.** All of the Loan Documents, and all other documents referred to herein to which Guarantor or Borrower is a party, upon execution and delivery will constitute valid and binding obligations of Borrower and Guarantor, enforceable in accordance with their terms.

**3.4  Title to the Property.** Borrower holds good and indefeasible legal and equitable title to the Property.

**3.5  No Default.** Borrower and Guarantor are not in default in the payment of the principal of, or interest on, any Debt, nor are Borrower or Guarantor in default under any

5556.236la
**Loan Agreement – Page 12**

APP013

instrument or agreement under or subject to which any Debt has been issued, and no event has occurred under the provisions of any instrument which, with or without the lapse of time or the giving of notice or both, constitutes or will constitute an event of default of Borrower or Guarantor thereunder.

3.6 **Approval and Consent.** No approval, authorization, or consent of any Tribunal or Governmental Authority that has not yet been received, is required for the proper execution, delivery, and performance of this Agreement or the other Loan Documents.

3.7 **Flood Plain and Wetlands.** No portion of the Property is located within a designated flood hazard area as identified by the Secretary of Housing and Urban Development in the Flood Disaster Protection Act of 1973 (42 U.S.C. § 4001-4128) or is designated a wetlands area requiring a Section 404(b) Permit under the Federal Water Pollution Control Act, as amended or the Rivers and Harbors Act of 1899.

3.8 **Taxes.** All federal, state, foreign, and other tax returns of Borrower and Guarantor required to be filed have been filed, and no deficiency, claim, controversy or dispute exists with respect to any federal, state, foreign, and other taxes imposed upon Borrower or Guarantor.

3.9 **Purpose of Loan.** None of the proceeds of the Advances will be used for any purpose that is contrary to, or that would result in a violation of, any Laws.

3.10 **Properties; Liens.** Borrower has good and indefeasible title to all properties listed as assets on Borrower's Financial Statements, and there is no Lien on any asset of Borrower, except for the Lien held by Lender on the Property.

3.11 **Financial Condition.** Borrower and Guarantor are solvent and there has been no material adverse change in the financial condition of Borrower or Guarantor between the date of the most recent Financial Statements submitted to Lender and the date this warranty is made or deemed to have been made.

3.12 **Damage; Condemnation.** No casualty or damage of any kind has occurred to the Property, any portion thereof, any improvements thereon or any appurtenances thereto. Borrower has not received notice with respect to (and Borrower does not know of) any actual or threatened taking of the Property or any portion thereof, for any public or quasi-public purpose by the exercise of the right of condemnation or eminent domain.

3.13 **General.** There are no facts or conditions relating to the Loan Documents, the Property, and/or the financial condition and business of Borrower or any Guarantor and which have not been related, in writing, to Lender. Additionally, all writings heretofore or hereafter exhibited or delivered to Lender by or on behalf of Borrower ("Writings") are and will be genuine and in all respects are what they purport and appear to be, and the Writings do not omit or fail to disclose facts of such character that, if omitted, would cause the Writings as submitted to be materially misleading.

5556.236la
**Loan Agreement – Page 13**

**3.14    Material Agreements.**  Borrower is not directly, indirectly, or contingently obligated with respect to any Material Agreements relating to the Property.

**3.15    Property Compliance.**  The Property will comply, during the term of this Agreement, with all applicable subdivision, platting, building, land use, environmental, safety and zoning Laws and requirements and all requirements contained within any of the title exceptions approved by Lender in writing.

**3.16    Roads.**  The Property has access to and from public streets and roads adequate for its intended use, subject to temporary closing for construction purposes; all such streets and roads have been completed, dedicated to the public use and accepted for all purposes (including, but not limited to, maintenance) by the appropriate Governmental Authority.

**3.17    Utility Services.**  All utility services, in sufficient size and capacity, necessary for the construction of the Improvements and the operation thereof for the intended use of the Property are available at the boundaries of the Property, consisting of water supply, storm and sanitary sewer facilities, electric, gas, and telephone facilities.

**3.18    Permits.**  Borrower has secured all necessary building and other permits and consents (such permits and consents to be unconditional) for the operation of the Property.

**3.19    Hazardous Materials.**  No portion of the Property has been used to generate, store or dispose of, on, under or about the Property, or transport to or from the Property, any hazardous wastes, toxic substances or related materials ("Hazardous Materials").  For purposes of this Section 3.19, Hazardous Materials shall include, but not be limited to, substances defined as "Hazardous Substances" or "Toxic Substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9061, et seq.; and in the regulations adopted and publications promulgated pursuant to such statute now or in the future.

**3.20    Federal Small Business Certification.**  Borrower represents, warrants and certifies to Lender, that none of the principals of Borrower or their affiliates have been convicted of, or pleaded nolo contender to, any offense covered by 42 U.S.C. §16911(7).  For purposes of this subsection, the term "principal" means: (a) with respect to a sole proprietorship, the proprietor; (b) with respect to a partnership, each managing partner and each partner who is a natural person and holds a twenty percent (20.00%) or more ownership interest in the partnership; and (c) with respect to a corporation, limited liability company, association or development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of twenty percent (20.00%) or more of the ownership stock or stock equivalent of the entity.

**3.21    Leases.**  There are no Leases affecting the Property or any portion thereof.

APP015

## ARTICLE IV.
## COVENANTS AND AGREEMENTS OF BORROWER

**4.1    Compliance with Governmental Requirements.** Borrower shall timely comply with all Governmental Requirements and deliver to Lender evidence thereof. Borrower assumes full responsibility for the compliance of the Property with all Governmental Requirements and requirements of the Leases and with sound building and engineering practices and, notwithstanding any approvals by Lender, Lender shall have no obligation or responsibility whatsoever for any matter incident to the Property.

**4.2    Inspection of the Property.** Borrower shall permit Lender, Inspecting Consultants/Engineers, and any Governmental Authority, and their agents and representatives, to enter upon the Property for the purpose of inspection of the Property.

**4.3    Notices by Governmental Authority, Fire and Casualty Losses, Etc.** Borrower shall timely comply with and promptly furnish to Lender true and complete copies of any official notice or claim by any Governmental Authority pertaining to the Property. Borrower shall immediately notify Lender of any fire or other casualty or any notice of taking or eminent domain action or proceeding affecting the Property.

**4.4    Costs and Expenses.** Borrower shall promptly pay Lender upon demand all costs and expenses incurred by Lender in connection with: (a) the preparation of this Agreement and all other Loan Documents and the closing of the Loan and any amendment, supplement, or modification of, or any waiver or consent under or with respect to, any of the Loan Documents; and (b) the enforcement or satisfaction by Lender of any of Borrower's obligations under this Agreement or the other Loan Documents. For all purposes of this Agreement, Lender's costs and expenses shall include, without limitation, all appraisal fees, cost engineering and inspection fees, legal fees, environmental consultant fees and the cost to Lender of any title insurance premiums and title surveys (including, without limitation, the costs and expenses of the inspection of the Property by the Inspecting Consultants/Engineers). Borrower recognizes and agrees that formal written appraisals of the Property and Improvements by a licensed independent appraiser may be required by Lender's internal procedures and/or federal regulatory reporting requirements on an annual and/or specialized basis and that Lender may, at its option, require inspection of the Property and Improvements by an independent supervising consultant and/or cost engineering specialist.

**4.5    Additional Documents.** Borrower shall execute and deliver to Lender, from time to time as requested by Lender, such other documents as shall be necessary to provide the rights and remedies to Lender granted or provided for by the Loan Documents.

**4.6    Inspection of Books and Records.** Borrower shall permit Lender, at all any time, to examine and copy the books and records of Borrower pertaining to the Loan and the Property. Such books and records of Borrower shall be kept in accordance with GAAP.

**4.7    No Liability of Lender.** Lender shall not be obligated to inspect the Property, nor be liable for the performance or default of Borrower, Consultant, the Inspecting Consultants/Engineers, or any other party, or for the performance of any obligation of Borrower

5556.236la
**Loan Agreement – Page 15**

APP016

whatsoever. Nothing, including without limitation any Advance or acceptance of any document or instrument, shall be construed as a representation or warranty, express or implied, to any party by Lender.

**4.8   Insurance.** Borrower shall maintain in full force until full payment of the Loan such insurance on the Property as is satisfactory in all respects to Lender, including, without limitation:

(a)   Commercial general liability insurance covering Borrower, in such amounts as Lender may require, but in any event not less than One Million and No/100 Dollars ($1,000,000.00) bodily injury and/or property damage liability per occurrence.

Lender reserves the right herein, when it deems it necessary, to require additional physical damage hazard insurance. Casualty and business interruption or rental insurance policies shall name Lender as mortgagee under New York (or equivalent, in other areas) long form noncontributory endorsement and evidenced by the delivery of the original or certified copy of the policy to Lender. Liability and worker's compensation insurance shall be evidenced by a certificate of insurance issued to Lender. All insurance required herein shall be issued by responsible carriers acceptable to Lender and guarantee at least thirty (30) days prior written notice to Lender of cancellation, non-renewal or material change.

**4.9   No Conditional Sale Contracts, Etc.** No materials, equipment, or fixtures shall be supplied, purchased, or installed for the construction or operation of the Improvements pursuant to security agreements, conditional sale contracts, lease agreements, or other arrangements or understandings whereby a security interest or title is retained by any party or the right is reserved or accrues to any party to remove or repossess any materials, equipment, or fixtures intended to be utilized in the construction or operation of the Improvements.

**4.10   Defense of Actions.** Lender may (but shall not be obligated to) commence, appear in, or defend any action or proceeding purporting to affect the Loan, the Property, or the respective rights and obligations of Lender and Borrower pursuant to this Agreement. Lender may (but shall not be obligated to) pay all necessary expenses, including attorneys' fees and expenses incurred in connection with such proceedings to actions, which Borrower agrees to repay to Lender upon demand.

**4.11   Bills of Sale.** Borrower shall deliver to Lender, on demand, any contracts, bills of sale, statements, receipted vouchers or agreements under which Borrower claims title to any materials, fixtures or articles incorporated in the Improvements or subject to the Lien or security title of the Loan Documents.

**4.12   Leases.** Borrower shall not, without the prior written consent of Lender, enter into any Leases. Borrower shall deliver to Lender copies of all Leases affecting the Property upon the execution of same and upon the renewal of same.

**4.13   Additional Security.** As additional security for the payment of the Loan, Borrower hereby irrevocably assigns to Lender and grants to Lender a security interest in all

5556.236la
**Loan Agreement – Page 16**

Advances disbursed to Borrower and Borrower's interest in all Loan funds held by Lender, whether or not disbursed. Lender shall have, in addition to all rights and remedies provided herein, and in the other Loan Documents, all of the rights and remedies of a "secured party" under the Code.

**4.14   Prohibition on Transfers.** Borrower shall not, without the prior written consent of Lender, transfer, convey, assign, encumber or otherwise dispose of the Property, the Improvements, or any part thereof or any interest of Borrower therein, except for Borrower's obligations under that certain Parking Development and Easement Agreement among Borrower, IGO – USA LP, a Texas limited partnership and IGO – Frisco 1 LLC, a Texas limited liability company, and Lender dated December 19, 2019 and recorded in the Real Property Records of Collin County (the "Parking Development and Easement Agreement"), to dedicate one hundred twenty (120) parking spaces to IGO – USA LP, a Texas limited partnership, IGO – Frisco 1 LLC, a Texas limited liability company, and their Benefitted Parties (as that term is set forth in the Parking Development and Easement Agreement) and grant IGO – USA LP, a Texas limited partnership, IGO – Frisco 1 LLC, a Texas limited liability company, and their Benefitted Parties (as that term is set forth in the Parking Development and Easement Agreement) an easement for pedestrian and vehicular ingress and egress, all as more particularly set forth in the Parking Development and Easement Agreement.

**4.15   No Assignment by Borrower.** This Agreement may not be assigned by Borrower without the written consent of Lender. If Lender approves an assignment hereof by Borrower, Lender shall be entitled to make Advances to such assignee and such Advances shall be secured by the Loan Documents. Borrower shall remain liable for payment of all sums advanced hereunder before and after such assignment.

**4.16   Further Assurance of Title.** If at any time Lender's legal counsel is of the opinion that any Advance is not secured or will or may not be secured by the Loan Documents as a first Lien or first priority security interest on the Property, then Borrower shall, upon demand, do all things and matters necessary to assure to the satisfaction of Lender's counsel that any advance previously made hereunder or to be made hereunder is secured or will be secured by the Loan Documents as a first Lien or first priority security interest on the Property, and Lender, at its option, may decline to make further Advances hereunder until Lender has received such assurance.

**4.17   Payment of Claims.** Borrower shall promptly pay or cause to be paid when due all costs and expenses incurred in connection with the Property, and Borrower shall keep the Property free and clear of any Liens, charges, or claims other than Liens held by Lender.

**4.18   Restrictions and Annexation.** Borrower shall not impose any restrictive covenants, easements, sharing agreements or encumbrances upon the Property, execute or file any subdivision plat affecting the Property, or consent to any assessments burdening the Property without the prior written consent of Lender.

**4.19   Advertising by Lender.** Borrower agrees that during the term of the Loan Lender shall have the right to place a sign for display upon the Property describing in general terms Lender's participation in such transaction.

5556.236la
**Loan Agreement – Page 17**

**4.20**    **Financial Statements; Tax Returns; Other Information**.    Borrower shall furnish, or cause Guarantor to furnish, to Lender the following financial statements and information:

a.    As soon as available, but in no event later than thirty (30) days after filing of same with the Internal Revenue Service each year, in any event no later than October 31st of each year, a true and correct copy of Borrower's and Guarantor's annual tax return, including all schedules and K-1 filings, for the immediately preceding calendar year, signed by Borrower and Guarantor, respectively, and filed with the Internal Revenue Service.

b.    Annually on December 31 of each year, proof of insurance on the Property and Borrower's assets as required in the Loan Documents.

c.    Annually, and at least before January 31 of each year evidence that all ad valorem taxes on the Property have been paid.

d.    Promptly, such additional information concerning Borrower and Guarantor as Lender may request.

Borrower shall cause the Guarantor to deliver to Lender such Financial Statements and tax returns as required under the Guaranty.

**4.21**    **Notification of Adverse Changes.**    Borrower and Guarantor shall promptly notify Lender of the occurrence of any event or condition which, if not remedied, would result in a material, adverse change to the financial condition of Borrower or Guarantor or would materially and adversely affect the value of the Property or any portion thereof.

**4.22**    **Indemnification.    Borrower agrees to indemnify, defend and hold Lender harmless from and against any and all claims, charges, actions, suits, proceedings, lawsuits, obligations, liabilities, fines, penalties, costs and expenses, including, but not limited to, attorneys' fees incurred by Lender, alleged by or in favor of Borrower or any principal, partner, stockholder, officer, director, employee or agent thereof, or by or in favor of any broker, realtor, agent or other party claiming brokerage commissions or finder's fees in connection with entering into this Agreement or the transactions contemplated hereby (other than for claims for commissions or fees claimed by persons or parties employed or engaged by Lender), or in connection with making or collecting the Loan or enforcing the Loan Documents.    Borrower shall further indemnify Lender and hold Lender harmless against any and all liabilities (including any and all taxes and special assessments levied against the Property or any improvements, fixtures, or personal property located thereon), obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses, and disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against Lender, in any way relating to, or arising out of, the Loan Documents or any of the transactions contemplated therein, or the construction and/or operation of the Property, to the extent that any such indemnified liabilities result, directly or indirectly, from any claims made or actions, suits, or proceedings commenced by or on behalf of any person or entity other than Lender.    The obligations and provisions of this**

5556.236la
Loan Agreement – Page 18

paragraph shall continue and remain in full force and effect after the Loan and other obligations of Borrower under this Agreement and under the other Loan Documents have been paid or discharged in full and shall survive the termination of this Agreement and the repayment of the Loan.

**4.23    Termination.**  Lender, at its option, may terminate this Agreement and its obligation to make any Advance upon the occurrence of any Event of Default.

**4.24    Third-Party Agreements; Management Fee.**  Borrower shall not execute or enter into any agreement with any unrelated third party providing for management and operation of the Property and/or the Improvements without the prior written consent of Lender.  Borrower shall not terminate, replace or appoint any Property Manager or terminate or amend any Management Agreement for the Property and/or the Improvements without Lender's prior written approval.  Any change in ownership or control of any Property Manager shall be cause for Lender to reapprove such Property Manager and Management Agreement.  Each Property Manager shall hold and maintain all necessary licenses, certifications and permits required by law.  Borrower shall fully perform all of its covenants, agreements and obligations under any Management Agreement.

**4.25    Prohibition on Additional Debt and Transfer of Assets.**  BORROWER WILL NOT, WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER (WHICH MAY BE WITHHELD IN LENDER'S SOLE AND ABSOLUTE DISCRETION), (A) CREATE, INCUR OR ASSUME ANY ADDITIONAL DEBT, EXCEPT DEBT OWED TO LENDER; (B) SELL, TRANSFER, MORTGAGE, ASSIGN, PLEDGE, LEASE, GRANT A SECURITY INTEREST IN OR ENCUMBER ANY OF BORROWER'S ASSETS, INCLUDING, WITHOUT LIMITATION, THE PROPERTY; OR (C) SELL WITH RECOURSE ANY OF BORROWER'S ACCOUNTS, EXCEPT TO LENDER.  In addition, Borrower hereby acknowledges and agrees that notwithstanding anything contained in the organizational documents of the Borrower, while the Loan is outstanding, Borrower shall not (a) now or in the future own any asset or property other than (i) the Property and (ii) incidental personal property necessary for the ownership or operation of the Property, or (b) engage in any business other than the ownership, development, management, leasing and operation of the Property, and conduct and operate its business other than as presently conducted and operated.

**4.26    Maintenance of Existence.**  Borrower will maintain and preserve its existence and assets and all rights, franchises and other authority necessary for the conduct of its business and will maintain and preserve its property, equipment and facilities in good order, condition and repair.  Lender may, at any time, visit and inspect any of the properties of Borrower.

**4.27    Dissolution or Change of Ownership.**  (a) Borrower shall not dissolve or liquidate, or merge with or be consolidated into any other entity, or attempt to do any of the same, without the prior written consent of Lender; and (b) Borrower shall not allow, consent or permit any member of Borrower or any Person having a controlling interest in any member of Borrower to sell, assign, transfer, convey, pledge, mortgage, encumber or grant a security interest in any of the membership interests in Borrower or ownership interest in any member of Borrower, without the prior written consent of Lender.

5556.236la
**Loan Agreement – Page 19**

**4.28**   **Restricted Payments**.  Borrower will not declare or pay any dividends or make any other payment or distribution (in cash, property, or obligations) on account of its equity interests, or redeem, purchase, retire, or otherwise acquire any of its equity interests, or set apart any money for a sinking or other analogous fund for any dividend or other distribution on its equity interests or for any redemption, purchase, retirement, or other acquisition of any of its equity interests.

**4.29**   **Mergers, Acquisitions and Dissolutions**.  Borrower will not become a party to a merger or consolidation, or purchase or otherwise acquire all or a substantial part of the assets of any Person or any shares or other evidence of beneficial ownership of any Person, nor shall Borrower be permitted to dissolve or liquidate.

**4.30**   **Management**.  Borrower shall not change and shall not permit to be changed the persons holding the executive management positions of Borrower, without the prior written consent of Lender.  For purposes of this Section 4.30, executive management positions shall mean the Chief Executive Officer, President, General Partner, Managing Member, and/or Manager of Borrower.

**4.31**   **Subordination Agreements.**   All Debt owed by Borrower to members of Borrower and any Affiliates of Borrower shall be subordinated to the Debt owed to Lender, and Borrower shall cause such members and Affiliates to execute subordination agreements in form and substance satisfactory to Lender.

**4.32**   **Limitation on Liens**.  Borrower will not incur, create, assume, or permit to exist any Lien upon any of its property, assets, or revenues, whether now owned or hereafter acquired.

**4.33**   **Contingent Liabilities.**   Borrower will not assume, guarantee, endorse, contingently agree to purchase or otherwise become liable upon the obligation of any Person.

**4.34**   **Loans and Investments**.  Borrower will not make any advance, loan, extension of credit, or capital contribution to, or investment in, or purchase, any stock, bonds, notes, debentures, or other securities of, any Person, other than investments approved by Lender.

**4.35**   **Limitation on Issuance of Equity**.  Borrower will not at any time issue, sell, assign, or otherwise dispose of (a) any of its equity interests, (b) any securities exchangeable for or convertible into or carrying any rights to acquire any of its equity interests, or (c) any option, warrant, or other right to acquire any of its equity interests.

**4.36**   **Transactions With Affiliates**.  Borrower will not enter into any transaction, including, without limitation, the purchase, sale, or exchange of property or the rendering of any service, with any Affiliate of Borrower, however Borrower may utilize a related Affiliate of Borrower for the purpose of managing the Property and for performing certain pre-development activities on the Property related to any architectural and concept plans and other similar activities.

5556.236la
**Loan Agreement – Page 20**

**4.37    Depository Relationship.**    To induce Lender to establish the interest rate provided for in the Note, and if and to the extent permitted by applicable laws, Borrower will establish and maintain with Lender its primary operating account.

**4.38    Hotel Agreements.**    Notwithstanding any conflict herein or within any Loan Document, Lender consents to Borrower negotiating and entering into any hotel management, franchise, brand, license, services, or related agreement related to the operation and management of a hotel, including any leasing of residences as part of a project developed on the Property at, on, or above market terms, provided (i) Borrower provides to Lender an executed copy of any such hotel management, franchise, brand, license, services, or related agreement executed by Borrower upon execution, and (ii) Lender approves any subordination, non-disturbance, and attornment agreement or similar type agreement.

**ARTICLE V.**
**EVENTS OF DEFAULT**

**5.1    Default.**    Any one or more of the following events shall constitute an "Event of Default" hereunder and under the Loan Documents:

(a)    The failure or refusal of any Obligated Party shall fail to pay when due the Obligations or any part thereof, and such default in payment is not cured within ten (10) days after written notice of same is sent to Borrower; provided, however, Lender shall not be required to furnish such notice more than two (2) times in any calendar year;

(b)    The failure or refusal of any Obligated Party to punctually and properly to perform, observe and comply with any covenant, agreement or condition contained in any of the Loan Documents (which does not otherwise include the payment of the monetary Obligations covered by Section 5.1(a) above) and such failure to perform, observe, or comply is not fully cured within thirty (30) days after written notice of same is sent to Borrower;

(c)    An "Event of Default" as such term is defined in the Mortgage or any other Loan Document;

(d)    Any representation or warranty made by Borrower to Lender in any of the Loan Documents or in any other certificate or document furnished to Lender in connection with the Loan or in furtherance of the requirements of this Agreement or of any other Loan Documents shall be incorrect or misleading at the time when made or at the time when reaffirmed or deemed reaffirmed by the terms of this Agreement relating to conditions precedent to Lender's obligation to make Advances;

(e)    If a Lien for the performance of work or the supply of materials or any other Lien, whether for federal, state or local taxes or otherwise is filed against the Property, tor any part thereof;

APP022

(f)    If a receiver, liquidator or trustee of Borrower, Guarantor, or of the Property or of any substantial portion of Borrower's or any Guarantor's properties, shall be appointed; if a petition in bankruptcy or for reorganization or for protection under any Debtor Relief Laws shall have been filed against Borrower or Guarantor and the same is not withdrawn, dismissed, cancelled or terminated within ninety (90) days; if Borrower or Guarantor make an assignment for the benefit of creditors or files or consent to the filing of a petition in bankruptcy or for protection under any Debtor Relief Laws or commence or consent to the commencement of any proceeding under the Federal Bankruptcy Code or any other federal or state law, now or hereafter in effect, relating to the reorganization of Borrower or Guarantor or the arrangement or rearrangement or readjustment of the debts of Borrower or Guarantor or having the effect of enjoining or staying the exercise of rights or remedies by creditors, it being understood that the filing against Borrower or Guarantor of such a petition by a member or manager of Borrower shall be deemed to be a filing with the consent of Borrower; if there is an attachment or sequestration of or relating to the Property or to any other substantial portion of any other assets of Borrower or Guarantor and the same is not promptly discharged;

(g)    If Borrower shall cause, institute or fail to contest any proceeding for the dissolution or termination of Borrower;

(h)    If Borrower ceases to do business or terminates its business as presently conducted for any reason whatsoever;

(i)    If any condemnation, eminent domain or other taking proceedings shall have commenced against the Property (or any portion thereof) which Lender, in its sole judgment, believes will adversely affect the value of the Property;

(j)    If any Obligated Party shall die or cease to exist;

(k)    The failure or refusal by any of the Guarantor to comply with the terms and covenants of the Guaranty;

(l)    The sale, encumbrance or other unauthorized transfer of the Property or any portion thereof, without Lender's prior written consent;

(m)    If, in the opinion of Lender, there is a material adverse change in the financial condition of any Obligated Party, or Lender deems itself not fully secured based on the value of the Property;

(n)    If Borrower shall fail to perform, observe and comply with any covenant, agreement or condition contained in the Master Development Agreement, and such failure continues beyond all applicable notice and cure periods set forth in the Master Development Agreement;

5556.236la
**Loan Agreement – Page 22**

APP023

(o)    If Borrower shall fail to perform, observe and comply with any covenant, agreement or condition contained in the Performance Agreements, and such failure continues beyond all applicable notice and cure periods set forth in the Performance Agreements; or

(p)    If any member of Borrower or any Person having a controlling interest in any member of Borrower sells, assigns, transfers, conveys, pledges, mortgages, encumbers or grants a security interest in any of the membership interests in Borrower or ownership interest in any member of Borrower, without the prior written consent of Lender.

## ARTICLE VI.
## RIGHTS AND REMEDIES OF LENDER

**6.1    Rights of Lender.**  Upon the occurrence of any one or more Events of Default, Lender shall have the right, in addition to any other right or remedy of Lender under the Loan Documents or at equity or under applicable law, but not the obligation, in its own name or through an agent or in the name of Borrower, to enter into possession of the Property; to perform all work necessary to complete the construction and equipping of the Improvements substantially in accordance with Governmental Requirements, and the requirements of any Lease approved by Lender; and to do anything necessary or desirable in Lender's sole judgment to fulfill the obligations of Borrower hereunder and under the other Loan Documents, including the right to avail itself of and procure performance of any construction contract and subcontractors or to let new or additional contracts with a new general contractor or the same subcontractors or to others; and to employ watchmen and other safeguards to protect the Property.  Without restricting the generality of the foregoing, and for the purposes aforesaid, Borrower hereby appoints Lender as the attorney-in-fact of Borrower, with full power of substitution, and in the name of Borrower, if Lender elects to do so, upon the occurrence of an Event of Default, to (a) use such sums as are necessary, including any proceeds of the Loan to employ such consultants, engineers, inspectors, rental agents, managers and contractors as may be required for the purpose of completing the construction of the Improvements substantially in the manner contemplated by the plans and Governmental Requirements, (b) execute all applications and certificates in the name of Borrower which may be required for completion of construction of the Improvements, (c) endorse the name of Borrower on any checks or drafts representing proceeds of the insurance policies, or other checks or installments payable to Borrower with respect to the Property, (d) do every act with respect to the construction of the Improvements which Borrower may do, (e) prosecute or defend any action or proceeding incident to the Property, (f) to do all things necessary in Lender's sole judgment, to complete construction, finishing and equipping of the Improvements and to rent, operate and manage the Improvements, and to pay operating costs and expenses, including management fees, of every kind and nature in connection therewith so that the same shall be operational and usable for its intended purpose, all in the name of Borrower, Lender or both; (g) pay interest when due on all amounts disbursed hereunder (either by adding such interest to the principal balance of the Loan or paying the same in cash); (h) pay, settle or compromise all existing bills and claims which may be or become Liens or security interests, or to avoid such bills and claims becoming Liens against the Property, or against fixtures or equipment, or as may be necessary or desirable for the completion of construction or for the equipping and operation of the Improvements; (i) prosecute and defend all actions or

5556.236la
Loan Agreement – Page 23

proceedings in connection with the Property or any equipment or fixtures; (j) the right, to be exercised in Lender's sole discretion, to terminate any remaining obligations under this Agreement; (k) apply for and obtain, by appropriate judicial action, appointment of a receiver or receivers for all or any part of the Property as a matter of right, without regard to the sufficiency of the security, without any showing of insolvency, fraud or mismanagement on the part of Borrower and without the necessity of filing judicial proceedings (other than for the appointment of the receiver(s)) to protect or enforce the rights of Lender (and Borrower hereby consents to such appointment); and (l) exercise any right or remedy as may be available to Lender under the Loan Documents or at equity or under applicable law. The power-of-attorney granted hereby is a power coupled with an interest and is irrevocable. Lender shall have no obligation to undertake any of the foregoing actions, and if Lender should do so, it shall have no liability to Borrower for the sufficiency or adequacy of any such actions taken by Lender. All cost and expenses, including all attorneys' fees in connection with the matters contemplated in this Section 6.1 shall be payable by Borrower on demand, and if not promptly paid, shall be added to the principal of the Loan and shall be secured by all of the Loan Documents. The power-of-attorney granted hereby is a power coupled with an interest and irrevocable by action of Borrower without the joinder of Lender. Lender shall have no obligation to undertake any of the foregoing actions, and if Lender should do so, it shall have no liability to Borrower for the sufficiency or adequacy of any such actions taken by Lender.

**6.2    Acceleration.** Upon the occurrence of an Event of Default, Lender may, at its option, declare the Loan immediately due and payable without notice of any kind, Borrower hereby waiving expressly, but not by way of limitation, notice of default, notice of intent to accelerate and notice of acceleration.

**6.3    Cessation of Advances.** Upon the occurrence of an Event of Default, the obligation of Lender to make any Advance and all other obligations of Lender hereunder and under the Loan Documents shall at Lender's option, immediately terminate; provided, however, that nothing in this paragraph shall be deemed to limit the other provisions of this Agreement setting forth the conditions precedent to Lender's obligation to make any Advance or the conditions under which Lender may refuse to make further disbursements or to limit Lender's option to make further Advances at Lender's sole option notwithstanding the occurrence of one or more Events of Default.

**6.4    Funds of Lender.** Any funds of Lender used for any purpose referred to in this Article VI shall constitute Advances secured by the Loan Documents and shall bear interest at the Default Rate.

**6.5    No Waiver or Exhaustion.** No waiver by Lender of any of its rights or remedies hereunder, in the other Loan Documents, or otherwise, shall be considered a waiver of any other or subsequent right or remedy of Lender; no delay or omission in the exercise or enforcement by Lender of any rights or remedies shall ever be construed as a waiver of any right or remedy of Lender; and, no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any right or remedy of Lender.

**6.6    Performance by Lender.** Should any covenant, duty, or agreement of Borrower fail to be performed after the occurrence of an Event of Default (or during a potential Event of

5556.236la
**Loan Agreement – Page 24**

APP025

Default if, in Lender's opinion, an emergency exists) in accordance with the terms of the Loan Documents, Lender may, at its option, perform, or attempt to perform, such covenant, duty, or agreement on behalf of Borrower. In such event, Borrower shall, at the request of Lender, promptly pay to Lender any amount expended by Lender in such performance or attempted performance, together with interest thereon at the Default Rate from the date of such expenditure by Lender until paid. Notwithstanding the foregoing, it is expressly understood that Lender does not assume and shall never have, except by express written consent of Lender, any liability or responsibility for the performance of any duties of Borrower hereunder or in connection with all or any part of the Property.

   **6.7 Use or Operation by Lender.** Should all or any part of the Property come into the possession of Lender, Lender may use or operate the same for the purpose of preserving it or its value, or pursuant to the order of a court of appropriate jurisdiction, or in accordance with any other rights held by Lender in respect thereof. The risk of accidental loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for failure to obtain or maintain insurance, or to determine whether any insurance ever in force is adequate as to amounts or as to the risks insured, or for decline in the value of the Property.

   **6.8 Diminution in Collateral Value.** Lender does not assume, and shall never have, any liability or responsibility for any loss or diminution in the value of all or any part of the Property.

   **6.9 Cumulative Rights.** All rights available to Lender under the Loan Documents shall be cumulative of and in addition to all other rights granted to Lender at law or in equity, whether or not any sums be due and payable to Lender and whether or not Lender shall have instituted any suit for collection, foreclosure, or other action in connection with the Loan Documents.

   **6.10 Acceptance of Assignments and Items Delivered.** By acceptance of delivery of copies of, or by taking an assignment of or security interest in, any of the items delivered to or received by Lender pursuant to this Agreement, including, but not limited to, the Material Agreements, Lender shall not be deemed to have approved same or to have assumed any liability, obligation, or responsibility whatsoever in connection therewith except as expressly stated in the Loan Documents.

   **6.11 Delegation of Duties and Rights.** Lender may exercise any of its duties and/or exercise any of its rights under the Loan Documents by or through its officers, directors, employees, attorneys, agents, or other representatives.

   **6.12 Lender Not in Control.** None of the covenants or other provisions contained in this Agreement shall, or shall be deemed to, give Lender the right or power to exercise control over the affairs of Borrower, the power of Lender being limited to the right to exercise the remedies provided in this Article VI and elsewhere in the Loan Documents.

APP026

**ARTICLE VII.**
**GENERAL TERMS AND CONDITIONS**

**7.1    Modifications.**  No provision of this Agreement or the other Loan Documents may be modified, waived, or terminated except by instrument in writing executed by the party against whom a modification, waiver or termination is sought to be enforced.

**7.2    Severability.**  In case any of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein; provided, however, if the disregard of such provision would frustrate the intent and purposes of this Agreement, Lender may petition any court having jurisdiction in equity to render a judgment modifying the disregarded provision(s) of this Agreement so as to carry out such intent and purposes.

**7.3    Election of Remedies.**  Lender shall have all of the rights and remedies granted in the Loan Documents in addition to such rights and remedies that may be available to Lender at law or in equity, and these same rights and remedies shall be cumulative and may be pursued separately, successively, or concurrently against Borrower, Guarantor, or any property covered under the Loan Documents at the sole discretion of Lender.  The exercise or failure to exercise any of the same shall not constitute a waiver or release thereof or of any other right or remedy, and such exercise or failure to exercise shall be nonexclusive.

**7.4    Form and Substance.**  All documents, certificates, insurance policies, and other items required under this Agreement to be executed and/or delivered to Lender shall be in form and substance satisfactory to Lender and its legal counsel.

**7.5    Savings Clause.**  It is the intention to the parties hereto to comply with all applicable federal and state laws relating to usury; that is, laws limiting charges for the use, detention or forbearance of money and governing contracts relating thereto; accordingly, all agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of the maturity hereof, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance or detention of the money to be loaned hereunder or otherwise, or for the performance or payment of any covenant or obligation contained herein or in any other document evidencing securing or pertaining to the Loan, exceed the Maximum Rate.  If from any circumstance whatsoever fulfillment of any provision hereof or of any such other document, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Lender shall ever receive anything of value deemed interest by applicable law which would exceed the Maximum Rate, an amount equal to any excessive interest shall be applied to the reduction of the principal amount owing under the Note or on account of any other principal indebtedness of Borrower to Lender, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of such principal and such other indebtedness, such excess shall be refunded to Borrower.  All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness of Borrower to Lender shall, to the extent permitted by applicable law, be

5556.236la
**Loan Agreement – Page 26**

amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full in such manner as permitted by law so as to avoid any portion of the interest on the Loan becoming usurious. The terms and provisions of this Section 7.5 shall control and supersede every other provision of all agreements between Borrower and Lender in the event of a conflict in such provisions.

7.6 **Rights of Third Parties**. All conditions of the obligations of Lender hereunder, including the obligation to make Advances, are imposed solely and exclusively for the benefit of Lender and its successors and assigns and no other person or entity shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make Advances in the absence of strict compliance with any or all thereof, and no other person or entity shall, under any circumstances, be deemed to be a beneficiary of this Agreement, any and all of the terms and conditions of which may be freely waived in whole or in part by Lender at any time if in its sole discretion it deems it desirable to do so, and Lender reserves the right to enter into modifications or amendments of this Agreement with Borrower without notification to or the consent of any other party. In particular, Lender makes no representations and assumes no obligations as to third parties concerning the quality of the construction of the Improvements by Borrower or the absence therefrom of defects. In this connection Borrower agrees to and shall indemnify, defend and hold harmless Lender from and against any liabilities, claims or losses resulting from the disbursement of the proceeds of the Loan or from the condition of the Property whether related to the quality of construction or otherwise and whether arising during or after the term of the Loan. This provision shall survive the repayment of the Loan and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

7.7 **Evidence of Satisfaction of Conditions**. Any condition of this Agreement which requires the submission of evidence of the existence or non-existence of a specified fact or facts implies as a condition the existence or non-existence, as the case may be, of such fact or facts and Lender shall, at all times, be free independently to establish to its satisfaction and in its sole discretion such existence or non-existence.

7.8 **All Matters Satisfactory to Lender**. All proceedings taken in connection with the transactions provided for herein, all surveys, appraisals and documents required or contemplated by this Agreement or the Loan Documents and the person responsible for the execution and preparation thereof, contractor and all subcontractors, all sureties, insurers, the form of the construction contract and all subcontracts, all leases, bonds, guaranties and policies of insurance shall be satisfactory to Lender and to Lender's counsel which shall receive copies (or certified copies where appropriate in Lender's counsel judgment) of all documents which it may request in connection therewith.

7.9 **No Agency**. Lender is not the agent or representative of Borrower, and Borrower is not the agent or representative of Lender, and nothing in this Agreement shall be construed to make Lender liable to anyone for goods delivered or services performed upon the Property or for debts or claims accruing against Borrower.

7.10 **No Partnership or Joint Venture**. Nothing herein nor the acts of the parties hereto shall be construed to create a partnership or joint venture between Borrower and Lender.

5556.236la
**Loan Agreement – Page 27**

**7.11    Number and Gender.** Whenever used herein, the singular number shall include the plural and the singular, and the use of any gender shall be applicable to all genders. The duties, covenants, obligations, and warranties of Borrower in this Agreement shall be joint and several obligations of Borrower, and of each Borrower if more than one.

**7.12    Conflicts.** In the event of any conflict between the provisions of this Agreement and those of the Mortgage, the provisions of this Agreement shall govern.

**7.13    Time of Essence.** Time is of the essence in performance of this Agreement by Borrower.

**7.14    Participation.** Lender shall have the right, at its sole discretion, to invite participants to participate in or to purchase all or portions of the Loan, and to disclose all information pertaining to Borrower as may be in Lender's possession, and Borrower agrees to execute any documents requested by Lender in connection with any such participation or purchase.

**7.15    Further Assurances.** Borrower shall do, execute, acknowledge and deliver, at the sole cost and expense of Borrower, all and every such further acts, deeds, conveyances, mortgages, assignments, estoppel certificates, notices of assignment, transfers and assurances as Lender may require from time to time in order to better assure, convey, assign, transfer and confirm unto the Lender, the rights now or hereafter intended to be granted to the Lender under the Loan Documents for carrying out the intention of facilitating the performance of the terms of this Agreement.

**7.16    Captions.** The captions, headings, and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

**7.17    APPLICABLE LAW.    THIS AGREEMENT AND THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS WITHIN SUCH STATE.    PROPER VENUE FOR ANY MATTER ARISING OUT OF THE SUBJECT MATTER OF THE LOAN DOCUMENTS SHALL LIE IN COLLIN COUNTY, TEXAS.**

**7.18    Notices.** Any notice, consent or other communication required or permitted to be given under any of the Loan Documents to Lender or Borrower must be in writing and delivered in person or mailed by registered or certified mail, return receipt requested, postage prepaid, as follows:

If to Lender:                    Texas Republic Bank, N.A.
                                 Attention: David L. Baty
                                 2595 Preston Road
                                 Frisco, Texas 75034
                                 (972) 334-0700

5556.236la
**Loan Agreement – Page 28**

APP029

If to Borrower:                    FHC Acquisition, LLC, a Texas limited liability company
                                   1755 Wittington Place, Suite 340
                                   Dallas, Texas 75234

With a copy to
(including by email):              Vance McMurry
                                   McMurry Law, PLLC
                                   508 W. Lookout, Suite 508 – 14
                                   Richardson, Texas 75080
                                   vance@mcmurrylegal.com

or such other address as shall be set forth in a notice from the appropriate party given in compliance with this Section 7.18. Any such notice, consent or other communication shall be deemed given when delivered in person or, if mailed, when duly deposited in the United States mail.

**7.19    Counterparts.** This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement.

**7.20    Certain Rules of Construction.** No implications or inferences shall be drawn from the deletion from the terms and provisions of this Agreement of any terms or provisions contained in unexecuted drafts of this Agreement. In addition, all parties hereto acknowledge that counsel for same have participated in the preparation of this Agreement and that, therefore, in the event of any ambiguity in, or controversy with respect to the meaning of, any term or provision contained in this Agreement, no presumption shall exist against any party's interpretation of this Agreement solely by reason of such party's or its counsel's participation in the preparation of this Agreement.

**7.21    RELIEF FROM AUTOMATIC STAY. AS A MATERIAL INDUCEMENT AND AS FURTHER CONSIDERATION TO INDUCE LENDER TO MAKE THE LOAN, BORROWER HEREBY STIPULATES, AGREES, CONSENTS TO AND ACKNOWLEDGES THAT IN THE EVENT THAT A PROCEEDING UNDER TITLE 11 OF THE U.S. CODE IS COMMENCED, EITHER VOLUNTARY OR INVOLUNTARY, BY OR AGAINST BORROWER, LENDER IS ENTITLED TO IMMEDIATE RELIEF FROM ANY AUTOMATIC STAY IMPOSED UNDER SECTION 362 OF TITLE 11 OF THE U.S. CODE, AS AMENDED, OR OTHERWISE, ON OR AGAINST THE EXERCISE OF THE RIGHTS AND REMEDIES OTHERWISE AVAILABLE TO LENDER, WITHOUT REQUIRING LENDER TO FILE A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IN ADDITION TO THE FOREGOING, BORROWER FURTHER STIPULATES, AGREES AND ACKNOWLEDGES THAT BORROWER SHALL NOT OPPOSE OR OBJECT TO LENDER'S MOTION FOR RELIEF FROM ANY AUTOMATIC STAY OR ANY VALUATION OF THE PROPERTY SUBJECT TO THE AUTOMATIC STAY CONDUCTED BY LENDER.**

**7.22    WAIVER OF JURY TRIAL. IN THE EVENT LITIGATION SHOULD ARISE OUT OF THE TRANSACTIONS CONTEMPLATED BY ANY OF THE LOAN DOCUMENTS OR ANY OTHER MATTER RELATED THERETO WHATSOEVER OR**

5556.236la
**Loan Agreement – Page 29**

IN CONNECTION WITH ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OR INACTIONS BY LENDER, IT IS HEREBY STIPULATED AND AGREED BY BORROWER THAT BORROWER SHALL WAIVE AND DO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ALL RIGHTS TO DEMAND A TRIAL OF ANY SUCH MATTER BY OR BEFORE A JURY. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO COMMIT TO MAKE THE LOAN.

EXECUTED AND DELIVERED on the date first above recited.

**LENDER:**
Texas Republic Bank, N.A.

By:_____
(Signature)

_____
(Printed Name and Title)

**BORROWER:**
FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
    By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager

      By:_____
        Timothy Barton, President

5556.236la
**Loan Agreement – Page 30**

APP031

# EXHIBIT B

APP032

TRB Loan #

## PROMISSORY NOTE

$2,965,783.00                    Frisco, Texas                    January 30, 2020

FOR VALUE RECEIVED, the undersigned, **FHC Acquisition, LLC**, a Texas limited liability company (the "Maker"), promises to pay to the order of **Texas Republic Bank, N.A.** (together with all subsequent holders of this Promissory Note, "Payee") the principal sum of **Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00)**, together with interest on the unpaid principal balance from time to time outstanding, as herein specified.

The principal of and accrued interest on this Promissory Note shall be due and payable as set forth herein in lawful money of the United States of America in Frisco, Texas at the office of Payee at 2595 Preston Road, Frisco, Texas 75034, Attention: Loan Administration Department, or such other place as Payee may from time to time designate in writing to Maker. All payments on this Promissory Note shall, at the option of Payee, be applied, first, to the payment of accrued but unpaid interest and any remainder shall be applied to the reduction of the principal balance hereof.

      1.    **Payments of Interest and Principal.** The outstanding principal balance hereof and accrued but unpaid interest shall be due and payable as follows:

      A.    Accrued but unpaid interest only shall be due and payable in monthly installments, commencing February 29, 2020, with like installments of accrued but unpaid interest only due and payable on the 30th* day of each successive month thereafter, through and including December 30, 2020; and

      B.    The entire outstanding principal balance of this Promissory Note, together with all accrued but unpaid interest shall be due and payable on January 30, 2021. All payments shall be applied first to accrued but unpaid interest and then to principal.

      *Notwithstanding the above referenced payment due on February 29, 2020, all other payments due for the month of February shall be due and payable on February 28th.

      2.    **Interest.**    The outstanding principal balance hereof shall bear interest prior to maturity at the fixed rate of **seven and one-half percent (7.5%)** per annum based on a 360 day year and the actual number of days elapsed. All matured and past due amounts shall bear interest at the Maximum Lawful Rate (defined below). All payments shall be applied first to accrued but unpaid interest and then to principal.

      3.    **Prepayments.** Maker may prepay the principal of this Promissory Note, in whole or in part, at any time without penalty or premium. Any such prepayment shall be applied to principal in the inverse order of its stated maturity.

5556.236n
Promissory Note – Page 1

TRB Loan #

4.      **Events of Default and Remedies.** Except as otherwise expressly provided for in the Loan Agreement, without further notice or demand, all of which are hereby waived, the entire unpaid principal balance of, and all accrued interest on, this Promissory Note shall immediately become due and payable at the option of the holder hereof upon the occurrence of an Event of Default (as defined in the Loan Agreement which is defined below). Upon the occurrence of an Event of Default, Payee may exercise any and all remedies set forth in the Loan Documents (as defined in the Loan Agreement) (including, without limitation, acceleration of the indebtedness evidenced by this Promissory Note and commencement of foreclosure proceedings), may offset against this Promissory Note any sum or sums owed by the holder hereof to Maker or any guarantor, and/or may proceed to protect and enforce its rights either by suit in equity and/or by action at law, or by other appropriate proceedings, whether for the specific performance of any covenant or agreement contained in this Promissory Note or in any of the other Loan Documents, or in aid of the exercise of any power or right granted by this Promissory Note or to enforce any other legal or equitable right of the holder of this Promissory Note.

5.      **Cumulative Rights.** No delay on the part of the holder of this Promissory Note in the exercise of any power or right under this Promissory Note, or under any of the other Loan Documents, shall operate as a waiver thereof, nor shall a single or partial exercise of any such power or right. Enforcement by the holder of this Promissory Note of any security for the payment hereof shall not constitute any election by it of remedies so as to preclude the exercise of any other remedy available to it.

6.      **Waiver.** Maker, and each surety, endorser, guarantor and other party ever liable for the payment of any sum of money payable on this Promissory Note, jointly and severally waive demand, presentment, protest, notice of nonpayment, notice of intention to accelerate, notice of protest, notice of acceleration and any and all lack of notice or diligence or any delay in collection or the filing of suit hereon which may occur, and agree that their liability on this Promissory Note shall not be affected by any renewal or extension in the time of payment hereof, by any indulgences, by any release of any party primarily or secondarily liable hereon, or by any release, substitution, subordination or change in any security for the payment of this Promissory Note.

7.      **Late Charge as to Overdue Payments.** If Payee has not received the full amount of any monthly payment within ten (10) days after the payment is due, Maker shall pay to Payee a late charge equal to five percent (5%) of the overdue payment, but not to exceed the maximum amount permitted by law. This charge may only be assessed once on each late payment.

8.      **Attorneys' Fees and Costs.** In the event this Promissory Note is placed in the hands of an attorney for collection, or in the event this Promissory Note is collected in whole or in part through legal proceedings of any nature, then and in any such case, Maker promises to pay all costs of collection, including, but not limited to, attorneys' fees incurred by the holder hereof on account of such collection, whether or not suit is filed.

5556.236n
Promissory Note – Page 2

APP034

TRB Loan #

9.    **Notices.**  Any notice or demand given hereunder by the holder hereof shall be deemed to have been given and received in accordance with the notice provisions in the Loan Agreement.

10.    **GOVERNING LAW.**  THE LAWS OF THE STATE OF TEXAS SHALL GOVERN THE CONSTRUCTION, VALIDITY, ENFORCEMENT, AND INTERPRETATION HEREOF, EXCEPT TO THE EXTENT FEDERAL LAWS OTHERWISE GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION HEREOF.

11.    **Headings; Construction.**  The headings of the sections of this Promissory Note are inserted for convenience only and shall not be deemed to constitute a part hereof, words used herein of any gender shall be construed to include any other gender where appropriate, and words used herein which are either singular or plural shall be construed to include the other where appropriate.

12.    **Successors and Assigns.**  All of the covenants, stipulations, promises and agreements in this Promissory Note contained by or on behalf of Maker shall bind its successors and assigns, whether so expressed or not; provided, however, that Maker may not, without the prior written consent of Payee, assign any rights, duties, or obligations under this Promissory Note.  Without the consent of Maker, Payee may, in its sole discretion, at any time or from time to time while any portion of the indebtedness evidenced hereby remains unpaid, transfer, sell, assign or pledge this Promissory Note (or any portion thereof) and any of the other Loan Documents, and in connection therewith Payee may provide information concerning the Loan to any future transferee or participant (including, without limitation, financial information for Maker).

13.    **Maximum Interest Rate.**  It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on this Promissory Note or the Related Indebtedness (hereinafter defined) (or applicable United States federal law to the extent that it permits Payee to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law).  If the applicable law is ever judicially interpreted so as to render usurious any amount: (i) contracted for, charged, taken, reserved or received pursuant to this Promissory Note, any of the other Loan Documents or any other communication or writing by or between Maker and Payee related to the transaction or transactions that are the subject matter of the Loan Documents; (ii) contracted for, charged or received by reason of Payee's exercise of the option to accelerate the maturity of this Promissory Note and/or the Related Indebtedness; or (iii) Maker will have paid or Payee will have received by reason of any voluntary prepayment by Maker of this Promissory Note and/or the Related Indebtedness, then it is Maker's and Payee's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically cancelled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Payee shall be credited on the principal balance of this Promissory Note and/or the Related Indebtedness (or, if this Promissory Note and all Related Indebtedness have been or would thereby be paid in full, refunded to Maker), and the provisions of this Promissory Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount

5556.236n
Promissory Note – Page 3

APP035

TRB Loan #

otherwise called for hereunder and thereunder; provided, however, if this Promissory Note has been paid in full before the end of the stated term of this Promissory Note, then Maker and Payee agree that Payee shall, with reasonable promptness after Payee discovers or is advised by Maker that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Maker and/or credit such excess interest against this Promissory Note and/or any Related Indebtedness then owing by Maker to Payee. Maker hereby agrees that as a condition precedent to any claim seeking usury penalties against Payee, Maker will provide written notice to Payee, advising Payee in reasonable detail of the nature and amount of the violation, and Payee shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Maker or crediting such excess interest against this Promissory Note and/or the Related Indebtedness then owing by Maker to Payee. All sums contracted for, charged or received by Payee for the use, forbearance or detention of any debt evidenced by this Promissory Note and/or the Related Indebtedness shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of this Promissory Note and/or the Related Indebtedness (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of this Promissory Note and/or the Related Indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to this Promissory Note and/or the Related Indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Promissory Note and/or the Related Indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Payee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. As used herein, the term "Maximum Lawful Rate" shall mean the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Payee in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that it permits Payee to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges (hereinafter defined) made in connection with the transaction evidenced by this Promissory Note and the other Loan Documents. As used herein, the term "Charges" shall mean all fees, charges and/or any other things of value, if any, contracted for, charged, received, taken or reserved by Payee in connection with the transactions relating to this Promissory Note and the other Loan Documents, which are treated as interest under applicable law. As used herein, the term "Related Indebtedness" shall mean any and all debt paid or payable by Maker to Payee related to the transaction or transactions that are the subject matter of the Loan Documents, except such debt which has been paid or is payable by Maker to Payee under this Promissory Note. To the extent that Payee is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on this Promissory Note and/or the Related Indebtedness, Payee will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. To the extent United States federal law permits Payee to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Payee will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate. Additionally, to the extent permitted by applicable law now or hereafter in effect, Payee may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Maker as provided by applicable law now or hereafter in effect.

5556.236n
Promissory Note – Page 4

TRB Loan #

14.   **Payments; Business Day.**  Each payment or prepayment hereon must be paid at the office of Payee specified above in lawful money as therein specified and in funds which are or will be available for immediate use by Payee at such office on or before 1:00 p.m., Dallas, Texas time, on the day such payment or prepayment is due. In any case where a payment of principal or interest hereof is due on a day which is not a Business Day, Maker, shall be entitled to delay such payment until the next succeeding Business Day, but interest shall continue to accrue until the payment is, in fact, made. As used herein "Business Day" means every day on which banking associations located in Texas are allowed to be open for general lending business.

15.   **Security.**  This Promissory Note is secured by, among other things, the Mortgage, as such term is more fully described and defined in the Loan Agreement (defined below).

16.   **Loan Payable at Maturity.**  IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THIS PROMISSORY NOTE WILL REQUIRE A "BALLOON" PAYMENT OF ALL UNPAID PRINCIPAL AND ACCRUED BUT UNPAID INTEREST ON THE MATURITY DATE.  THE PRINCIPAL INDEBTEDNESS EVIDENCED BY THIS PROMISSORY NOTE IS PAYABLE IN FULL AT MATURITY.  MAKER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS PROMISSORY NOTE AND ACCRUED BUT UNPAID INTEREST THEN DUE.  PAYEE IS UNDER NO OBLIGATION TO REFINANCE THIS PROMISSORY NOTE AT THAT TIME.

17.   **Loan Agreement.**  This Promissory Note has been executed and delivered pursuant to, and is subject to, the terms of that certain Loan Agreement (the "Loan Agreement") of even date herewith between Maker and Payee.  This Promissory Note is the Promissory Note referred to and defined in the Loan Agreement. All capitalized terms used but not otherwise defined in this Promissory Note shall have the respective meanings ascribed thereto in the Loan Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Promissory Note as of the date and year first above written.

MAKER:
FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
     By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager

     By: _____
          Timothy Barton, President

5556.236n
**Promissory Note – Page 5**

APP037

# EXHIBIT C

Loan # 49406

## GUARANTY
*(Timothy Barton)*

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by **Timothy Barton** ("Guarantor") and for the purpose of inducing **Texas Republic Bank, N.A.**, or its successors or assigns ("Holder") to make a loan (the "Loan Transaction"), to **FHC Acquisition, LLC**, a Texas limited liability company (the "Borrower"), and recognizing that Guarantor has benefited or shall benefit, directly or indirectly, from the Loan Transaction, that the Loan Transaction is in the best interests of Guarantor, and that but for this Guaranty (as such has been or may hereafter be amended, supplemented, modified, renewed, extended and/or restated from time to time, herein called the "Guaranty"), the Holder would not consummate the Loan Transaction, **Guarantor hereby absolutely and unconditionally guarantees to Holder the prompt payment when due of the following (collectively, the "Guaranteed Indebtedness"):** (a) the Indebtedness and Obligations (as such terms are defined in that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as such has been or may hereafter be amended, supplemented, modified, renewed, extended and/or restated from time to time, herein called the "Deed of Trust") of even date herewith, executed by Borrower, including, without limitation, the indebtedness, obligations and liabilities evidenced by or arising under that certain Promissory Note (as such has been or may hereafter be amended, supplemented, modified, renewed, extended and/or restated from time to time, herein called the "Note"), of even date herewith, executed by Borrower, payable to the order of Holder, in the stated principal amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00); and (b) any and all renewals or extensions of all or any part of the indebtedness, obligations, and liabilities described or referred to in Subsection (a) preceding, together with all costs, expenses, and attorneys' fees incurred in the enforcement or collection thereof. Borrower and Holder have entered into that certain Loan Agreement of even date herewith and pertaining to the loan evidenced by the Note (such Loan Agreement, as the same may be amended, supplemented, modified, and/or restated from time to time, is herein called the "Loan Agreement").

1.      **Borrower.** As used throughout this Guaranty, the term "Borrower" shall include, without limitation, Borrower, Borrower as a debtor-in-possession, and any receiver, trustee, liquidator, conservator, custodian, or similar party hereafter appointed for Borrower or all or substantially all of its assets pursuant to any liquidation, conservatorship, bankruptcy, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief law from time to time in effect affecting the rights of creditors generally (collectively, "Debtor Relief Laws").

2.      **Primary Liability.** Guarantor shall be liable as a primary obligor for the payment and performance of the Guaranteed Indebtedness. This Guaranty shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to the Guaranteed Indebtedness of Borrower to Holder thereafter incurred.

5556.236gtGYS
**Guaranty- Page 1**

APP039

3.    **Payment.**  In the event of default by Borrower in payment of the Guaranteed Indebtedness, or any part thereof, when such indebtedness becomes due, either by its terms or as the result of the exercise of any power to accelerate, Guarantor shall, on demand and without further notice of dishonor, without any notice having been given to Guarantor previous to such demand of the acceptance by Holder of this Guaranty, and without any notice having been given to Guarantor previous to such demand of the creating or incurring of the Guaranteed Indebtedness, pay the amount due thereon to Holder.  All amounts becoming payable by Guarantor to Holder under this Guaranty shall be payable at Holder's address set forth in Paragraph 10 hereof.  The payment by Guarantor of any amount pursuant to this Guaranty shall not in anywise entitle Guarantor to any right, title or interest (whether by way of subrogation or otherwise) in any of the Guaranteed Indebtedness or any proceeds thereof; Guarantor hereby waiving any and all of such rights, including, without limitation, any rights of subrogation.

4.    **Waiver of Notice.**  Guarantor specifically waives any notice of acceptance of this Guaranty by Holder and of the creation, advancement, existence, extension, renewal, modification, consolidation, or rearrangement from time to time of the Guaranteed Indebtedness, or increase from time to time in the principal amount thereof, or increase or reduction from time to time of the rate of interest thereon, or any indulgence from time to time with respect to the Guaranteed Indebtedness, or any part thereof.  Guarantor additionally waives grace, demand, protest, presentment and notice of demand, protest, presentment and dishonor with respect to the Guaranteed Indebtedness, notice of intent to accelerate, notice of acceleration and notice of disposition of collateral and waives notice of the amount of the Guaranteed Indebtedness outstanding at any time, and agrees that the maturity of the Guaranteed Indebtedness, or any part thereof, may be accelerated, extended, modified, amended or renewed from time to time, or any other indulgence may be granted with respect thereto by Holder without notice to or further consent by Guarantor, at any time or times.

5.    **Rights of Holder.**

a.    Guarantor agrees that no release of Borrower, any co-guarantor, or of any other person primarily or secondarily liable on the Guaranteed Indebtedness, or any part thereof shall in any manner impair, diminish or affect the liability of Guarantor or the rights of Holder hereunder.

b.    Guarantor specifically agrees that it shall not be necessary or required, and that Guarantor shall not be entitled to require, that Holder file suit or proceed to obtain or assert a claim for personal judgment against Borrower for the Guaranteed Indebtedness, or make any effort at collection of the Guaranteed Indebtedness from Borrower, or foreclose against or seek to realize upon any security or collateral now or hereafter existing for the Guaranteed Indebtedness, or file suit or proceed to obtain or assert a claim for personal judgment against any other party (whether maker, guarantor, endorser or surety) liable for the Guaranteed Indebtedness, or make any effort at collection of the Guaranteed Indebtedness from any such other party, or exercise or assert any other right or remedy to which Holder is or may be entitled in connection with the Guaranteed Indebtedness or any security or collateral or other guaranty therefor, or assert or file any claim against the assets or estate of Borrower or any other guarantor or other person

5556.236gt
**Guaranty- Page 2**

APP040

liable for the Guaranteed Indebtedness, or any part thereof, before or as a condition of enforcing the liability of Guarantor under this Guaranty or requiring payment of the Guaranteed Indebtedness by Guarantor hereunder, or at any time thereafter.

c. If any or all of the Guaranteed Indebtedness are now or hereafter secured in whole or in part, Guarantor agrees that Holder may, from time to time, at its discretion, and with or without valuable consideration, allow substitution, withdrawal, release, surrender, exchange, subordination, deterioration, waste, loss or other impairment of all or any part of such security or collateral, without notice to or consent by Guarantor, and without in anywise impairing, diminishing or releasing the liability of Guarantor hereunder.

d. No delay or omission or lack of diligence or care in exercising any right or power with respect to the Guaranteed Indebtedness or any security or collateral therefor (including without limitation the failure of Holder to perfect a security interest therein) or guaranty thereof or under this Guaranty shall in any manner impair, diminish or affect the liability of Guarantor or the rights of Holder hereunder. Guarantor expressly waives any right to the benefit of or to require or control application of any security or collateral or the proceeds of any security or collateral now existing or hereafter obtained by Holder as security for the Guaranteed Indebtedness, or any part thereof. Holder agrees that any monies or payments at any time received by Holder under this Guaranty shall be applied as follows: first, to the payment of all costs, attorneys' fees and expenses incurred or expended by Holder in collecting any of the Guaranteed Indebtedness; second, to that portion of the Guaranteed Indebtedness constituting interest and; third, to that portion of the Guaranteed Indebtedness constituting principal on the Note.

e. Guarantor's liability hereunder shall in no manner be affected, reduced, impaired or released by reason of any renewal, extension, modification, consolidation, or rearrangement of or any other indulgence, forbearance or compromise with respect to the Guaranteed Indebtedness, or any part thereof; or increase in the principal amount thereof; or increase or reduction of the rate of interest thereon.

f. Guarantor absolutely and unconditionally covenants and agrees that if all or any part of the Guaranteed Indebtedness (or any instrument or agreement made or executed in connection therewith) is for any reason found to be invalid, illegal, unenforceable, uncollectible or legally impossible, for any reason whatsoever (including, without limiting the generality of the foregoing, upon the grounds that the payment and/or performance of the Guaranteed Indebtedness is ultra vires or otherwise without authority, may violate applicable usury laws, is subject to valid defenses, claims or offsets of Borrower, or any instrument evidencing any of the Guaranteed Indebtedness is forged or otherwise irregular); then in any such case Guarantor shall pay and perform the Guaranteed Indebtedness as herein provided and that no such occurrence shall in any way diminish or otherwise affect Guarantor's obligations hereunder.

5556.236gt
**Guaranty- Page 3**

g.     Guarantor agrees, to the full extent it may legally do so, that suit may be brought against Guarantor with or without making Borrower a party to such suit (as Holder may elect).

h.     Holder shall have the right to set off and apply against the Guaranteed Indebtedness, any and all deposits owing from Holder Guarantor if Guarantor's obligation to remit all or any portion of the Guaranteed Indebtedness has matured under this Guaranty irrespective of whether or not such Beneficiary shall have made any demand under this Guaranty. The rights and remedies of Holder hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Holder may have with someone else and all accounts which Guarantor may open in the future.

6.     **Change in Composition.**  Should the status, composition, structure or name of Borrower change, this Guaranty shall continue and also cover the indebtedness and Guaranteed Indebtedness of Borrower under the new status, composition, structure or name according to the terms hereof.

7.     **Liability in the Event of Preference.**  In the event any payment of Borrower to Holder is held to constitute a preference under any Debtor Relief Laws, such payment by Borrower to Holder shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Holder upon demand and this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of any such payment or payments.

8.     **Bankruptcy.**  Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Holder granted hereunder, and the same is not discharged or remedied within sixty (60) days of commencement thereof, then, in any such event, the Guaranteed Indebtedness shall be, as between such Guarantor and Holder, a fully matured, due, payable and performable obligation of Guarantor to Holder (without regard to whether Borrower is then in default under the Note or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing or unperformed by Borrower to Holder), payable and/or performable in full by Guarantor to Holder upon demand, which, for purposes of Section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

9.     **Actions Against Guarantors.**  The Guarantor agrees that Holder, in its discretion, may (i) bring suit against the Guarantor and any other guarantor of the Guaranteed Indebtedness or against any one or more of them, (ii) compound or settle with any one or more of the guarantors of the Guaranteed Indebtedness for such consideration as the Holder may deem proper, (iii) release one or more of the guarantors of all or any part of the Guaranteed Indebtedness from liability thereunder, and (iv) otherwise deal with the Guarantor and any other guarantors of the Guaranteed Indebtedness, or any one or more of them, in any manner whatsoever; and that no such action shall impair the rights of the Holder to collect the Guaranteed Indebtedness from the Guarantor. Nothing contained in this paragraph shall in any

5556.236gt
**Guaranty- Page 4**

way affect or impair the rights or obligations of the Guarantor with respect to any other guarantor of all or any part of the Guaranteed Indebtedness.

10. **Notices.** Any notice, consent or other communication required or permitted to be given under this Guarantor to Holder or Guarantor must be in writing and delivered in person or mailed by registered or certified mail, return receipt requested, postage prepaid, as follows:

If to Guarantor:                    Timothy Barton
                                    1755 Wittington Place, Suite 340
                                    Dallas, Texas 75234

With a copy to:                     Vance McMurry
                                    McMurry Law, PLLC
                                    508 W. Lookout, Suite 508 - 14
                                    Richardson, Texas 75080
                                    vance@mcmurrylegal.com

If to Holder:                       Texas Republic Bank, N.A.
                                    Attention:  David L. Baty
                                    2595 Preston Road
                                    Frisco, Texas 75034

or such other address as shall be set forth in a notice from the appropriate party given in compliance with this Section 10.  Any such notice, consent or other communication shall be deemed given when delivered in person or, if mailed, when duly deposited in the United States mail.

11. **Rights of Holder Cumulative.** The rights of Holder hereunder are cumulative and shall not be exhausted by its exercise of any of its rights hereunder, under any prior guaranty or otherwise against Guarantor or by any number of successive actions until and unless all indebtedness constituting the Guaranteed Indebtedness has been paid.

12. **GOVERNING LAW.** THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.

13. **Entire Agreement.** Guarantor acknowledges and agrees that this Guaranty accurately represents and contains the entire agreement between Guarantor and Holder with respect to the subject matter hereof, that Guarantor is not relying on the execution of this Guaranty, on any representations (whether written or oral) made by or on behalf of Holder except as expressly set forth in this Guaranty, and that any and all prior statements and/or representations made by or on behalf of Holder to Guarantor (whether written or oral) in connection with the subject matter hereof are merged herein. This Guaranty shall not be waived, altered, modified or amended as to any of its terms or provisions except in writing duly signed by Holder and Guarantor.

5556.236gt
**Guaranty- Page 5**

14.    **Assignment.**  This Guaranty is intended for and shall inure to the benefit of Holder and each and every other person who shall from time to time be or become the owner or holder of any of the Guaranteed Indebtedness, and each and every reference herein to "Holder" shall also include and refer to each and every successor or assignee of Holder at any time holding or owning any part of or interest in any part of the Guaranteed Indebtedness.  This Guaranty shall be transferable by Holder, it being understood and stipulated that upon the assignment or transfer by Holder of any of the Guaranteed Indebtedness (or any part thereof or interest therein thus transferred or assigned by Holder), such transferee shall also, unless provided otherwise by Holder in its assignment, have and may exercise all the rights granted to Holder under this Guaranty to the extent of the part of or interest in the Guaranteed Indebtedness thus assigned or transferred to said person.  Guarantor expressly waives notice of transfer or assignment of the Guaranteed Indebtedness, or any part thereof, or of the rights of Holder hereunder.

15.    **Severability.**    A determination that any provision of this Guaranty is unenforceable or invalid shall not affect the enforceability or validity of any other provision.

16.    **Multiple Counterparts.**  This Guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which constitute, collectively, one Guaranty, but in making proof of this Guaranty, it shall not be necessary to produce or account for more than one counterpart.

17.    **WAIVER OF JURY TRIAL.**  TO THE MAXIMUM EXTENT PERMITTED BY LAW, GUARANTOR AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS HEREUNDER OR IN ANY WAY RELATING TO THE LOAN TRANSACTION (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS GUARANTY, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS GUARANTY WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR HOLDER TO ENTER INTO THE LOAN TRANSACTION.

18.    **WAIVERS**.  **Guarantor waives any rights Guarantor has under, or any requirement imposed by, (i)   Chapter 43 of the Texas Civil Practice and Remedies Code, as amended, (ii) Section 17.001 of the Texas Business and Commerce Code, as amended, and (iii) Rule 31 of the Texas Rules of Civil Procedure, as amended.  Furthermore, in the event any property securing the Guaranteed Indebtedness is foreclosed upon in any manner, and a deficiency is created as a result of the purchase price at such foreclosure sale, Guarantor does hereby irrevocably waive all rights to claim any offset against the deficiency as provided in Section 51.003, 51.004 and 51.005 of the Texas Property Code, as amended.**

5556.236gt
**Guaranty- Page 6**

APP044

19.    **Financial Statements; Reporting Requirements; Prohibition on Transfer.**

Guarantor shall deliver to Holder a copy of such Guarantor's annual tax return, including Guarantor's K-1 (if any), for the preceding calendar year within thirty (30) days of filing the same with the Internal Revenue Service each year, but in any event no later than October 15th of each year, beginning October 15, 2020 for less than reasonably equivalent value or if the result of such action would (i) materially and adversely affect the financial condition of Guarantor or (ii) materially and adversely affect such Guarantor's ability to perform its obligations under this Guaranty or the other Loan Documents. Additionally, Guarantor shall furnish such additional information concerning Guarantor or any real property owned by Borrower as Holder may reasonably request.

Guarantor hereby acknowledges and agrees that while the Loan Transaction remains outstanding, Guarantor will not, without the prior written consent of Holder (which may be withheld in Holder's sole and absolute discretion), sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of Guarantor's assets or any interest therein for less than reasonably equivalent value or if the result of such action would (i) materially and adversely affect the financial condition of Guarantor or (ii) materially and adversely affect such Guarantor's ability to perform its obligations under this Guaranty or the other Loan Documents. Guarantor hereby further acknowledges and agrees that while the Loan Transaction remains outstanding, Guarantor will not, without the prior written consent of Holder (which may be withheld in Holder's sole and absolute discretion), sell, assign, transfer, convey, pledge, mortgage, encumber or grant a security interest in any of Guarantor's direct or indirect membership interests in Borrower or in any member of Borrower.

20.    **Subordination.**    Guarantor warrants and represents to Holder that Borrower does not owe any indebtedness to Guarantor. However, if in the future Borrower becomes indebted to Guarantor, Guarantor agrees that all present and future indebtedness of Borrower to Guarantor is hereby subordinated to the Guaranteed Indebtedness and is hereby assigned to Holder as security for the Guaranteed Indebtedness. If any sums shall be paid to Guarantor on account of such indebtedness, such sums shall be held in trust by Guarantor for the benefit of Holder and shall forthwith be paid to Holder without affecting the liability of Guarantor under this Guaranty. Upon the request of Holder, Guarantor shall execute, deliver and endorse to Holder such documents and instruments as Holder deems necessary or appropriate to perfect, preserve and enforce its rights hereunder.

[REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

5556.236gt
**Guaranty- Page 7**

APP045

EXECUTED effective as of the 30th day of January, 2020.

GUARANTOR:

_____
Timothy Barton

THE STATE OF TEXAS    §
                      §
COUNTY OF Dallas      §

Before me  Bella D Khusal  (Notary printed name) on this day personally appeared Timothy Barton, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 30 day of January, 2020.

_____
Notary Public, State of Texas

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

5556.236gt
**Guaranty- Page 8**

APP046

# EXHIBIT D

APP047

We hereby certify this to be a true &
correct copy of the original instrument.
CHICAGO TITLE INSURANCE CO.

Authorized Signature

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

---

FHC ACQUISITION, LLC, A TEXAS LIMITED LIABLITY COMPANY
(Grantor)

to

DAVID L. BATY
(Trustee)

for the benefit of

TEXAS REPUBLIC BANK, N.A.
(Beneficiary)

---

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

---

Dated as of January 30, 2020

Property Location:  Collin County, Texas

WHEN RECORDED, RETURN TO:

Texas Republic Bank, N.A.
Attention:  Loan Administration Department
2595 Preston Road, Suite 300
Frisco, Texas 75034

**THIS INSTRUMENT CONTAINS INDEMNIFICATION PROVISIONS AND PROVISIONS LIMITING THE BENEFICIARY'S LIABILITY FOR NEGLIGENCE**

---

APP048

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Deed of Trust") is executed effective as of January 30, 2020, by FHC ACQUISITION, LLC, a Texas limited liability company, (the "Grantor"), whose address for notice hereunder is 1755 Wittington Place, Suite 340, Dallas, Texas 75234, to DAVID L. BATY ("Trustee"), whose address is 2595 Preston Road, Suite 300, Frisco, Texas 75034 (and any substitute or successor trustees), for the benefit of TEXAS REPUBLIC BANK, N.A. ("Beneficiary"), whose address for notice hereunder is 2595 Preston Road, Suite 300, Frisco, Texas 75034, Attention: David L. Baty.

**ARTICLE I
DEFINITIONS**

**Section 1.1    Definitions.** As used herein, the following terms shall have the following meanings:

"Anti-Terrorism Laws": Any and all present or future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, orders and ordinances of any Governmental Authority relating to terrorism or money laundering, including, without limitation, the United and Strengthening America By Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Pub. L. No. 107-56); the Trading With the Enemy Act (50 U.S.C.A. App 1 et seq.); the International Emergency Economic Powers Act (50 U.S.C.A. §1701-1706); Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001 and the United States Treasury Department's Office of Foreign Assets Control list of "Specifically Designated and Blocked Persons" (as published from time to time in various mediums).

"Constituent Party": Any (i) general partner, manager or managing member of Grantor, as applicable, and (ii) signatory to this Deed of Trust on Grantor's behalf that is an entity or other business organization.

"Indebtedness": The principal of, interest on and all other amounts, payments and premiums due under the Note and secured by the other Loan Documents (as defined hereinbelow), together with and including all other direct and indirect indebtedness now or any time in the future owing or to be owing by Grantor to Beneficiary, regardless of how evidenced or incurred, it being understood that it is contemplated that Grantor will become further indebted to Beneficiary in the future. The term "Obligations" as that term is defined in the Loan Agreement shall be included within the definition of Indebtedness as used in this Deed of Trust.

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 1**

APP049

"Leases":  All leases, master leases, subleases, licenses, concessions, or other agreements (whether written or oral) that grant to third parties a possessory interest in or the right to use or occupy any part of the Mortgaged Property, together with all security and other related deposits or payments made in connection therewith.  The term "Leases" shall also include all guarantees of and security for the Tenants' performance thereunder, and all amendments, extensions, renewals or modifications thereto which are expressly permitted hereunder.

"Loan":  The Loan made to Grantor by Beneficiary as evidenced and secured by the Loan Documents.

"Loan Agreement": The Loan Agreement even date herewith, executed by Grantor and Beneficiary, as the same may be amended, modified, supplemented, and restated from time to time.

"Loan Documents":  (a) The Loan Agreement, (b) the Promissory Note (the "Note") of even date herewith, executed by Grantor, payable to the order of Beneficiary, in the stated principal amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00), (c) this Deed of Trust, (d) all other documents now or hereafter executed by Grantor, or any other person or entity, to evidence, secure or guaranty the payment of all or any portion of the Indebtedness or the performance of all or any portion of the Obligations or otherwise executed in connection with the Note or this Deed of Trust, and (f) all modifications, restatements, extensions, renewals and replacements of the foregoing.

"Mortgaged Property":  (a) the real property described as **Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas,** together with any greater estate therein as hereafter may be acquired by Grantor (the "Land"), (b) all buildings, structures and other improvements, now or at any time situated, placed or constructed upon the Land (the "Improvements"), (c) all materials, supplies, equipment, apparatus and other items of personal property now owned or hereafter acquired by Grantor and now or hereafter attached to, installed in or used in connection with any of the Improvements or the Land, and water, gas, electrical, storm and sanitary sewer facilities and all other utilities whether or not situated in easements (the "Fixtures"), (d) all right, title and interest of Grantor in and to all goods, accounts, general intangibles, instruments, documents, chattel paper and all other personal property of any kind or character, including such items of personal property as defined in the UCC, now owned or hereafter acquired by Grantor and now or hereafter affixed to, placed upon, used in connection with, arising from or otherwise related to the Land and Improvements or which may be used in or relating to the planning, development, financing or operation of the Mortgaged Property, including, without limitation, furniture, furnishings, equipment, machinery, money, insurance proceeds, accounts, contract rights, trademarks, goodwill, chattel paper, documents, trade names, licenses and/or franchise agreements,

5556.236dt
<u>Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 2</u>

APP050

rights of Grantor under leases of Fixtures or other personal property or equipment, inventory, all refundable, returnable or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Grantor with any governmental authorities, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs (the "Personalty"), (e) all reserves, escrows or impounds required under this Deed of Trust (including, without limitation, the reserve accounts described in Section 3.14 (together with all cash and instruments held therein, and all interest and other property receivable in respect thereof)) and all deposit accounts maintained by Grantor with respect to the Mortgaged Property, (f) all plans, specifications, shop drawings and other technical descriptions prepared for construction, repair or alteration of the Improvements, and all amendments and modifications thereof (the "Plans"), (g) all leases, ground leases, subleases, licenses, concessions, occupancy agreements, rental contracts, or other agreements (written or oral) now or hereafter existing relating to the use or occupancy of all or any part of the Mortgaged Property, together with all guarantees, letters of credit and other credit support, modifications, extensions and renewals thereof (whether before or after the filing by or against Grantor of any petition of relief under 11 U.S.C. § 101 et seq., as same may be amended from time to time (the "Bankruptcy Code")) and all related security and other deposits (the "Leases") and all of Grantor's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a Tenant of any Lease under the Bankruptcy Code, (h) all of the rents, revenues, issues, income, deposits, proceeds, profits, and all other payments of any kind under the Leases for using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying the Mortgaged Property whether paid or accruing before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code, including, without limitation, all amounts payable and all rights and benefits accruing to Grantor under the Leases and all other "Rents" (as such term is defined in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code, as amended) (the "Rents"), (i) all other agreements, such as construction contracts, architects' agreements, engineers' contracts, property management agreements, utility contracts, maintenance agreements, franchise agreements, service contracts, permits, licenses, certificates and entitlements in any way relating to the development, construction, use, occupancy, operation, maintenance, enjoyment, acquisition or ownership of the Mortgaged Property (the "Property Agreements"), (j) all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages and appurtenances appertaining to the foregoing, and all right, title and interest, if any, of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the Land or any part thereof, (k) all accessions, replacements and substitutions for any of the foregoing and all proceeds thereof, (l) all insurance policies, unearned premiums therefor and proceeds from such policies covering any of the above property now owned or hereafter acquired by Grantor, (m) all mineral, water, oil and gas rights now owned or hereafter acquired and relating to all or any part of the Mortgaged Property, (n) all right, title and interest of Grantor in and to all trade names, trademarks, service marks, logos, copyrights, goodwill, books and records and all other general

APP051

intangibles relating to or used in connection with the operation of the Mortgaged Property; and (o) all of Grantor's right, title and interest in and to any awards, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made by any Governmental Authority (as defined in the Loan Agreement) pertaining to the Land, Improvements, Fixtures or Personalty. As used in this Deed of Trust, the term "Mortgaged Property" shall mean all or, where the context permits or requires, any portion of the above or any interest therein.

"Obligations":   All of the agreements, covenants, conditions, warranties, representations and other obligations (other than to repay the Indebtedness) made or undertaken by Grantor or any other person or entity to Beneficiary or others as set forth in the Loan Documents.

"Prohibited Person":  Any person or entity that (i) is specifically named or listed in, or is otherwise subject to, any Anti-Terrorism Laws; (ii) is owned or controlled by, or acting for or on behalf of any person or entity specifically named or listed, or otherwise subject to, any Anti-Terrorism Laws; (iii) Beneficiary is prohibited from dealing with, or engaging in any transaction with, pursuant to any Anti-Terrorism Laws; or (iv) is affiliated with any person or entity described in clauses (i) through (iii) of this definition.

"State":  The State of Texas.

"Tenants":  All tenants under the Leases, if any.

"Title Company":  Chicago Title Insurance Company.

"UCC":  The Uniform Commercial Code of the State or, if the creation, perfection and enforcement of any security interest herein granted is governed by the laws of a state other than the State, then, as to the matter in question, the Uniform Commercial Code in effect in that state.

**Section 1.2     Other Terms.** Capitalized terms not otherwise defined herein shall have the meaning set forth in the Loan Agreement.

## ARTICLE 2
## GRANT

**Section 2.1     Grant.**  To secure the full and timely payment of the Indebtedness and the full and timely performance of the Obligations, Grantor hereby GRANTS, BARGAINS, SELLS, CONVEYS and ASSIGNS to Trustee (and with respect to any portions of the Mortgaged Property that constitute personal property, to Beneficiary) the Mortgaged Property; TO HAVE AND TO HOLD the Mortgaged Property to Trustee, IN TRUST, WITH POWER OF SALE, and Grantor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 4**

DEFEND the title to the Mortgaged Property unto Trustee and Beneficiary and their respective successors, substitutes and assigns.

## ARTICLE 3
### WARRANTIES, REPRESENTATIONS AND COVENANTS

Grantor warrants, represents and covenants to Beneficiary as follows:

**Section 3.1    Title to Mortgaged Property and Lien of this Instrument.**  Grantor owns the Mortgaged Property free and clear of any liens, claims or interests, except for (i) the lien of this Deed of Trust, (ii) the Permitted Exceptions (as defined in the Loan Agreement), (iii) the electric services agreement to be entered into between Grantor and CoServ in place of an existing electric services agreement that is the subject of a recorded memorandum of electric services agreement (the "Electric Services Agreement"), and (iv) the Performance Agreements (as defined in the Loan Agreement). This Deed of Trust creates valid, enforceable first priority liens and security interests against the Mortgaged Property. Grantor warrants that Grantor has good, indefeasible and insurable title to the Mortgaged Property and has the full power, authority and right to execute, deliver and perform its obligations under this Deed of Trust.

**Section 3.2    First Lien Status.**  Grantor shall preserve and protect the first lien and security interest status of this Deed of Trust and the other Loan Documents. If any lien or security interest is asserted against the Mortgaged Property, Grantor shall promptly, and at its expense, (a) give Beneficiary a detailed written notice of such lien or security interest (including origin, amount and other terms), and (b) pay the underlying claim in full or take such other action so as to cause it to be released or, in Beneficiary's discretion, provide a bond or other security satisfactory to Beneficiary for the payment of such claim.

**Section 3.3    Payment and Performance.**  Grantor shall pay the Indebtedness when due under the Loan Documents and shall perform the Obligations in full when they are required to be performed.

**Section 3.4    Replacement of Fixtures and Personalty.**  Grantor shall not, without the prior written consent of Beneficiary, permit any of the Fixtures or Personalty to be removed at any time from the Land or Improvements, unless the removed item is removed temporarily for maintenance and repair or, if removed permanently, is obsolete and is replaced by an article of equal or better suitability and value, owned by Grantor subject to the liens and security interests of this Deed of Trust and the other Loan Documents, and free and clear of any other lien or security interest except such as may be first approved in writing by Beneficiary.

**Section 3.5    Maintenance of Rights of Way, Easements, Licenses and Franchises.**  Grantor shall maintain all rights of way, easements, grants, privileges, licenses, certificates, permits, entitlements and franchises necessary for the use of the Mortgaged Property and will not, without the prior consent of Beneficiary, consent to any public restriction (including any zoning ordinance) or private restriction as to the use of the Mortgaged Property, except for the

5556.236dt
__Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 5__

Case 3:22-cv-02118-X    Document 377    Filed 11/01/23    Page 56 of 121    PageID 14474

Permitted Exceptions (as defined in the Loan Agreement) and except as otherwise provided for in the Parking Development and Easement Agreement (as defined in the Loan Agreement), the Electric Services Agreement, and the Performance Agreements (as defined in the Loan Agreement). Grantor shall comply with all restrictive covenants affecting the Mortgaged Property, and all zoning ordinances and other public or private restrictions as to the use of the Mortgaged Property.

**Section 3.6**    **Inspection.**    Grantor shall permit Beneficiary and its agents, representatives and employees to inspect the Mortgaged Property and conduct such environmental and engineering studies as Beneficiary may require, provided that such inspections and studies shall not materially interfere with the use and operation of the Mortgaged Property.

**Section 3.7**    **Notices by Governmental Authority, Tenant, Fire and Casualty Losses, Etc.**  Grantor shall timely comply with and promptly furnish to Beneficiary true and complete copies of any official notice or claim by any Governmental Authority or any Tenants under Leases pertaining to the Mortgaged Property.  Grantor shall immediately notify Beneficiary of any fire or other casualty or any notice of taking or eminent domain action or proceeding affecting the Mortgaged Property.

**Section 3.8**    **Condemnation Awards and Insurance Proceeds.**

(a)    **Condemnation Awards.**  Grantor assigns all awards and compensation for any condemnation or other taking, or any purchase in lieu thereof, to Beneficiary and authorizes Beneficiary to collect and receive such awards and compensation and to give proper receipts and acquittances therefor, and Beneficiary may apply the same to the Indebtedness and Obligations secured hereby in accordance with Section 4.8 below.

(b)    **Insurance Proceeds.**  Grantor assigns all insurance proceeds resulting from a Casualty to Beneficiary and authorizes Beneficiary to collect and receive such proceeds in accordance with the terms hereof:

(i)    If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (a "Casualty"), Grantor shall give prompt notice thereof to Beneficiary.  Following the occurrence of a Casualty, Grantor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be completed in accordance with applicable law.

(ii)    Beneficiary may apply any insurance proceeds it may receive to the payment of the Indebtedness or allow all or a portion of such proceeds to be used for the restoration of the Mortgaged Property.

5556.236dt
Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 6

APP054

(iii)    Insurance proceeds applied to restoration will be disbursed on receipt of satisfactory plans and specifications, contracts and subcontracts, schedules, budgets, lien waivers and architects' certificates, and otherwise in accordance with prudent commercial construction lending practices for construction loan advances (including appropriate retainages to ensure that all work is completed in a workmanlike manner).

**Section 3.9    Transfer or Encumbrance of Mortgaged Property.**

(a)    Without the prior written consent of Beneficiary,

(i)    neither Grantor nor any other person or entity having an ownership or beneficial interest in Grantor shall (A) directly or indirectly sell, transfer, convey, mortgage, pledge, or assign any interest in the Mortgaged Property or any part thereof (including any partnership, membership, or any other ownership interest in Grantor); (B) further encumber, alienate, grant a lien or grant any other interest in the Mortgaged Property or any part thereof (including any partnership, membership, or other ownership interest in Grantor), whether voluntarily or involuntarily; or (C) enter into any easement or other agreement granting rights in or restricting the use or development of the Mortgaged Property except as provided for in the Parking Development and Easement Agreement (as defined in the Loan Agreement) and the Incentive Agreements, and except for the electric easement required to be granted by Grantor to CoServ pursuant to Section 8 of the Electric Services Agreement;

(ii)    no new general partner, manager, member, or limited partner having the ability to control the affairs of Grantor shall be admitted to or created in Grantor (nor shall any existing general partner, manager or member or controlling limited partner withdraw from Grantor), and no change in Grantor's organizational documents relating to control over Grantor and/or the Mortgaged Property shall be effected; and

(iii)    no transfer of any ownership interest in Grantor shall be effected.

(b)    As used in this Section 3.9, "transfer" shall include (i) an installment sales agreement wherein Grantor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Grantor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Grantor's right, title and interest in and to any Leases or any Rents; (iii) the sale, transfer, conveyance, mortgage, pledge, or assignment of the legal or beneficial ownership of any partnership interest in any member or manager in Grantor that is a partnership; (iv) the sale, transfer, conveyance, mortgage, pledge, or assignment of the legal or beneficial ownership of any membership interest of any member or manager in Grantor that is a

APP055

limited liability company; (v) the sale, transfer, conveyance, mortgage, pledge, or assignment of the legal or beneficial ownership of any voting stock in any member or manager in Grantor that is a corporation; (vi) the sale, transfer, conveyance, mortgage, pledge, or assignment of any membership interest in any member or manager of Grantor that is a limited liability company; and (vii) the sale, transfer, conveyance, mortgage, pledge, or assignment of any partnership interest in any member or manager of Grantor that is a limited partnership. "Transfer" is specifically intended to include any pledge or assignment, directly or indirectly, of an ownership interest in Grantor or its general partner, member, or limited partner for purposes of securing so-called "mezzanine" indebtedness to such transferor.

(c) Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Indebtedness immediately due and payable upon Grantor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Beneficiary's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Beneficiary has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

(d) Beneficiary's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any interest in Grantor shall not be deemed to be a waiver of Beneficiary's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property made in contravention of this paragraph shall be null and void and of no force and effect.

**Section 3.10  Insurance.**  Unless waived in writing by Beneficiary, Grantor shall maintain in full force until full payment of the Loan such insurance on the Mortgaged Property as is satisfactory in all respects to Beneficiary, including, without limitation:

(a) Commercial general liability insurance covering Grantor, in such amounts as Beneficiary may reasonably require, but in any event not less than One Million and No/100 Dollars ($1,000,000.00) bodily injury and/or property damage liability per occurrence.

Beneficiary reserves the right herein, when it reasonably deems necessary, to require additional physical damage hazard insurance such as, but not limited to: (a) collapse due to faulty construction and/or error design and/or faulty workmanship; and (b) contingent liability from the operation of any building laws pertaining to non-conforming property.

Casualty and business interruption or rental insurance policies shall name Beneficiary as mortgagee under New York (or equivalent, in other areas) long form noncontributory

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 8**

APP056

endorsement and evidenced by the delivery of the original or certified copy of the policy (or insurance certificate) to Beneficiary. Liability and worker's compensation insurance shall be evidenced by a certificate of insurance issued to Beneficiary. All insurance required herein shall be issued by responsible carriers reasonably acceptable to Beneficiary and guarantee at least fifteen (15) days' prior written notice to Beneficiary of cancellation, non-renewal or material change. TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO: (I) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT BENEFICIARY SPECIFIED; (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) GRANTOR MUST, IF REQUIRED BY BENEFICIARY, DELIVER TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT THE GRANTOR'S EXPENSE.

Section 3.11 **Notification of Adverse Changes.** Grantor shall promptly notify Beneficiary of the occurrence of any event or condition which, if not remedied, would result in a material, adverse change to the financial condition of Grantor or would materially and adversely affect the value of the Mortgaged Property or any portion thereof.

Section 3.12 **Indemnification.** GRANTOR AGREES TO INDEMNIFY, DEFEND AND HOLD BENEFICIARY HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, CHARGES, ACTIONS, SUITS, PROCEEDINGS, LAWSUITS, OBLIGATIONS, LIABILITIES, FINES, PENALTIES, COSTS AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS' FEES INCURRED BY BENEFICIARY, ALLEGED BY OR IN FAVOR OF GRANTOR OR ANY PRINCIPAL, PARTNER, STOCKHOLDER, OFFICER, DIRECTOR, EMPLOYEE OR AGENT THEREOF, OR BY OR IN FAVOR OF ANY BROKER, REALTOR, AGENT OR OTHER PARTY CLAIMING BROKERAGE COMMISSIONS OR FINDER'S FEES IN CONNECTION WITH THE LOAN, OR IN CONNECTION WITH MAKING OR COLLECTING THE LOAN OR ENFORCING THE LOAN DOCUMENTS. GRANTOR SHALL FURTHER INDEMNIFY BENEFICIARY AND HOLD BENEFICIARY HARMLESS AGAINST ANY AND ALL LIABILITIES (INCLUDING ANY AND ALL TAXES AND SPECIAL ASSESSMENTS LEVIED AGAINST THE MORTGAGED PROPERTY OR ANY IMPROVEMENTS, FIXTURES, OR PERSONAL PROPERTY LOCATED THEREON), OBLIGATIONS, LOSSES, DAMAGES, PENALTIES, ACTIONS, JUDGMENTS, SUITS, CLAIMS, COSTS, EXPENSES, AND DISBURSEMENTS OF ANY KIND OR NATURE WHATSOEVER WHICH MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST BENEFICIARY, IN ANY WAY RELATING TO, OR ARISING OUT OF, THE LOAN DOCUMENTS OR ANY OF THE TRANSACTIONS CONTEMPLATED THEREIN, OR THE CONSTRUCTION

APP057

AND/OR OPERATION OF THE MORTGAGED PROPERTY, TO THE EXTENT THAT ANY SUCH INDEMNIFIED LIABILITIES RESULT, DIRECTLY OR INDIRECTLY, FROM ANY CLAIMS MADE OR ACTIONS, SUITS, OR PROCEEDINGS COMMENCED BY OR ON BEHALF OF ANY PERSON OR ENTITY OTHER THAN BENEFICIARY. THE OBLIGATIONS AND PROVISIONS OF THIS PARAGRAPH SHALL CONTINUE AND REMAIN IN FULL FORCE AND EFFECT AFTER THE LOAN AND OTHER OBLIGATIONS OF GRANTOR UNDER THIS DEED OF TRUST AND UNDER THE OTHER LOAN DOCUMENTS HAVE BEEN PAID OR DISCHARGED IN FULL AND SHALL SURVIVE THE TERMINATION OF THIS DEED OF TRUST AND THE REPAYMENT OF THE LOAN. NOTWITHSTANDING ANYTHING CONTAINED IN THIS SECTION 3.12 TO THE CONTRARY, THE OBLIGATIONS AND INDEMNITIES CONTAINED HEREIN SHALL NOT APPLY TO CLAIMS, CHARGES, ACTIONS, SUITS, PROCEEDINGS, LAWSUITS, OBLIGATIONS, LIABILITIES, FINES, PENALTIES, COSTS AND EXPENSES CAUSED SOLELY BY BENEFICIARY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

**Section 3.13 <u>Payment of Taxes</u>.** Grantor shall pay or cause to be paid before delinquent, all taxes and assessments of every character in respect of the Mortgaged Property, or any part thereof, and promptly thereafter deliver to Beneficiary evidence reasonably satisfactory to Beneficiary of the timely payment of such taxes and assessments. After payment of the taxes imposed on Grantor or the Mortgaged Property, Grantor may protest the imposition of such taxes, and any refund resulting from such tax protest shall be paid directly to Grantor. However, if an Event of Default has occurred and is continuing, Grantor shall direct the payment of any refund resulting from such tax protest to be paid directly to Beneficiary.

**Section 3.14 <u>Tax and Insurance Impounds</u>.** Upon written notice to Grantor Beneficiary may establish a reserve account and Grantor shall deposit on the date of such notice and on each anniversary thereof, with respect to property taxes and assessments an amount sufficient as determined by Beneficiary to enable payment of one (1) full year of property taxes and assessments prior to their due date and with respect to insurance premiums, an amount sufficient as determined by Beneficiary to enable payment of one (1) full year of insurance premiums prior to their due date. Beneficiary may re-calculate the foregoing monthly amounts from time to time to assure that funds are reserved in amounts sufficient to enable the payment of property taxes and assessments and insurance premiums prior to their respective due dates). Beneficiary shall make payments of property taxes and assessments and insurance premiums out of such account before the same shall be delinquent to the extent that there are funds available therein and Beneficiary has received appropriate documentation to establish the amount(s) due and the due date(s) as and when provided above. Each of the reserve accounts described herein shall be a custodial account established by Beneficiary, shall not constitute a trust fund, and, to the extent permitted by law, may be commingled with other money held by Beneficiary or its servicer. Grantor acknowledges and agrees that such accounts are subject to the sole dominion, control and discretion of Beneficiary, its authorized agents or designees, subject to the terms hereof. Grantor shall not have the right to make any withdrawal from any such account.

APP058

Notwithstanding anything to the contrary contained herein, if an Event of Default has occurred, any amounts deposited into or remaining in any such account may be applied in any manner as Beneficiary may elect in Beneficiary's discretion (including, without limitation, to the payment of any of the Indebtedness). Grantor shall not be entitled to any earnings or interest on funds deposited into any of such accounts. If Beneficiary determines that any amounts paid by Grantor are insufficient for the payment of such taxes, assessments, levies, charges and/or insurance premiums, Beneficiary shall notify Grantor of the increased amounts required to pay all amounts when due, whereupon Grantor shall pay to Beneficiary within thirty (30) days thereafter the additional amount as stated in Beneficiary's notice. Upon an Event of Default, Beneficiary may apply all or any part of such deposits to the payment of any of the Indebtedness.

**Section 3.15   Hazardous Materials Representations and Warranties.**

(a)   **Hazardous Materials.** The Land and Improvements are not and have not been a site for the use, generation, manufacture, storage, treatment, release, threatened release, discharge, disposal, transportation or presence of any oil, flammable explosives, asbestos, urea formaldehyde insulation, radioactive materials, hazardous wastes, toxic or contaminated substances or similar materials, including, without limitation, any substances which are "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under the Hazardous Materials Laws, as described below, and/or other applicable environmental laws, ordinances or regulations (collectively, the "Hazardous Materials").

(b)   **Hazardous Materials Laws.** The Land and Improvements are in compliance with all laws, ordinances and regulations relating to Hazardous Materials ("Hazardous Materials Laws"), including, without limitation: the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 et seq.; the Comprehensive Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651, the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, 42 U.S.C. Section 300f et seq.; and, all comparable state and local laws, laws of other jurisdictions or orders and regulations (including, without limitation, the Texas Water Code, the Texas Health & Safety Code and the Texas Solid Waste Disposal Act).

(c)   **Hazardous Materials Claims.** There are no claims or actions ("Hazardous Materials Claims") pending or threatened against Grantor or the Mortgaged Property by any Governmental Authority or by any other person or entity relating to Hazardous Materials or pursuant to the Hazardous Materials Laws.

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 11**

(d)  **Storage Tanks.**   No storage tanks (including, without limitation, petroleum or heating oil storage tanks), underground or above-ground, are present on or under the Land or have been on or under the Land.

**Section 3.16   Hazardous Materials Covenants.**

(a)  **No Hazardous Activities.**  Grantor shall not cause or permit the Land or Improvements to be used as a site for the use, generation, manufacture, storage, treatment, release, discharge, disposal, transportation or presence of any Hazardous Materials except in compliance with all applicable Hazardous Materials Laws.

(b)  **Compliance.**  Grantor shall comply and cause the Land and Improvements to comply with all Hazardous Materials Laws.

(c)  **Notices.**  Grantor shall promptly notify Beneficiary in writing of:  (i) the discovery of any Hazardous Materials on, under or about the Land and Improvements; (ii) any knowledge by Grantor that the Land and Improvements do not comply with any Hazardous Materials Laws; (iii) any Hazardous Materials Claims; and (iv) any knowledge of Grantor with respect to the discovery of any occurrence or condition involving Hazardous Materials in, on or under the real property adjoining or in the vicinity of the Land.

(d)  **Remedial Action.**  In response to the presence of any Hazardous Materials on, under or about the Land or Improvements, Grantor shall immediately take, at Grantor's sole expense, all remedial action required by any Hazardous Materials Laws or any judgment, consent decree, settlement or compromise in respect to any Hazardous Materials Claims.

**Section 3.17   Covenants Regarding Leases.**  Grantor shall (a) not enter into any Leases without the prior written consent of Beneficiary, (b) timely comply with the terms and provisions and fulfill all obligations of the landlord under each of such Leases, (c) not assign, transfer, pledge or mortgage any rentals under such Leases, (d) not terminate or cancel any such Leases without the prior written consent of Beneficiary, and (e) not modify or amend any of such Leases without the prior written consent of Beneficiary.

**Section 3.18   Compliance with Laws.**   Grantor shall promptly comply with all governmental laws, ordinances and regulations applicable to the Mortgaged Property and Grantor's use and operation of the Mortgaged Property.

**Section 3.19   Maintenance of Mortgaged Property.**  Grantor shall or shall cause the Tenants under the Leases to, at all times maintain, preserve and keep the Mortgaged Property in good repair and condition and from time to time make all necessary and proper repairs and

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 12**

APP060

replacements and not commit or permit any waste on or of the Mortgaged Property and not do anything to the Mortgaged Property that may materially impair its value.

Section 3.20  **Financial Statements.**  In accordance with the terms of the Loan Agreement, Grantor shall furnish to Beneficiary and cause any guarantors to promptly furnish to Beneficiary such Financial Statements (as defined in the Loan Agreement) and reports relating to Grantor and each guarantor as Beneficiary may request.

Section 3.21  **Costs and Expenses.**  Grantor shall promptly pay Beneficiary upon demand all costs and expenses incurred by Beneficiary in connection with: (a) the preparation of this Deed of Trust and all other Loan Documents and the closing of the Loan and any amendment, supplement, or modification of, or any waiver or consent under or with respect to, any of the Loan Documents; and (b) the enforcement or satisfaction by Beneficiary of any of Grantor's obligations under this Deed of Trust or the other Loan Documents.  For all purposes of this Deed of Trust, Beneficiary's costs and expenses shall include, without limitation, all appraisal fees, cost engineering and inspection fees, legal fees, environmental consultant fees and the cost to Beneficiary of any title insurance premiums and title surveys.  Grantor recognizes and agrees that formal written appraisals of the Mortgaged Property by a licensed independent appraiser may be required by Beneficiary's internal procedures and/or federal regulatory reporting requirements on an annual and/or specialized basis and that Beneficiary may, at its option, require inspection of the Mortgaged Property.

Section 3.22  **Third-Party Agreements; Management Fee.**  Grantor shall not execute or enter into any agreement with any third party providing for management and operation of the Property and/or the Improvements without the prior written consent of Beneficiary except that Grantor may enter into a management agreement and/or development agreement with a related entity for certain pre-development activitied conducted on the Mortgaged Property.  Grantor shall not terminate, replace or appoint any property manager or terminate or materially amend the management agreement for the Mortgaged Property without Beneficiary's prior written approval. Any change in ownership or control of the property manager shall be cause for Beneficiary to re-approve such property manager and management agreement.  Each property manager shall hold and maintain all necessary licenses, certifications and permits required by law.  Grantor shall fully perform all of its covenants, agreements and obligations under any management agreement.

Section 3.23  **Anti-Terrorism Laws.**

(a)      Without limiting the requirements of Section 3.18 hereof, Grantor has taken and shall continue to take until the Indebtedness is fully repaid and all Obligations are performed in full, such measures as are required by any and all Anti-Terrorism Laws to assure Beneficiary that the funds invested in Grantor and/or used to make payments of the Indebtedness and/or the Obligations are derived from (a) transactions and sources that do not violate any Anti-Terrorism Laws nor, to the extent such funds originate outside the United States, do not violate the laws of the jurisdiction from which  they originated; and (b) permissible sources under Anti-Terrorism Laws or, to the extent such funds originate

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 13**

APP061

outside the United States, under the laws of the jurisdiction from which they originated. If Beneficiary reasonably believes that Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties may have breached any of the representations, warranties or covenants set forth in this Deed of Trust or the other Loan Documents relating to any Anti-Terrorism Laws or the identity of any person or entity as a Prohibited Person, then, Beneficiary shall have the right, with or without notice to Grantor, to (1) notify the appropriate Governmental Authority and to take such action as such Governmental Authority or applicable Anti-Terrorism Law may direct; (2) withhold advances and segregate the assets constituting the Loan or any of Grantor's funds or assets deposited with or otherwise controlled by Beneficiary pursuant to the Loan Documents; (3) decline any payment (or deposit such payment with an appropriate United States Governmental Authority or court) or decline any prepayment or consent request; and/or (4) declare an Event of Default and immediately accelerate the Indebtedness in connection therewith. Grantor agrees that none of Grantor, Guarantor, Constituent Party or any other affiliate or related person or entity to the foregoing parties will assert any claim (and hereby waives, for itself and on behalf of the foregoing parties any claim it may now or hereafter have) against Beneficiary or any of its affiliates, successors, assigns, representatives or agents for any form of damages as a result of the foregoing actions, regardless of whether or not Beneficiary's reasonable belief is ultimately demonstrated to be accurate or not.

(b)     Grantor acknowledges and understands that Beneficiary may be required, and hereby authorizes Beneficiary to obtain, verify and record information that identifies Grantor, Guarantor, Constituent Party and any other affiliate or related person or entity to the foregoing parties, which information may include the names and addresses of such parties and other information that will allow Beneficiary to identify such parties in accordance with the requirements of certain Anti-Terrorism Laws.

(c)     None of Grantor, Guarantor, Constituent Party nor any person owning any interest in Grantor, Guarantor or Constituent Party (i) is a Prohibited Person, or (ii) has violated any Anti-Terrorism Laws.

(d)     None of the funds of Grantor, any Constituent Party or Guarantor have been derived from any activity in violation of or prohibited by any Anti-Terrorism Laws.

(e)     If at any time Grantor obtains knowledge that Grantor, any Constituent Party or Guarantor is, or becomes, a Prohibited Person or are indicted, arraigned or custodially detained on charges or allegations involving or relating to any Anti-Terrorism Laws, Grantor shall immediately notify Beneficiary of same.

(f)     Grantor shall promptly deliver, or shall cause any Guarantor or Constituent Party to promptly deliver, to Beneficiary any reasonable evidence (including any requested certifications) confirming compliance by all such parties with all Anti-

APP062

Terrorism Laws and confirming that none of such parties (nor any person owning an interest in Grantor, Guarantor or any Constituent Party) is a Prohibited Person.

## ARTICLE 4
## DEFAULT AND FORECLOSURE

**Section 4.1   Events of Default.** The term "Event of Default," as used herein, shall mean the occurrence of any one or more of the following events (including the passage of time, if any, specified therefor) (provided that if any such event occurs and Beneficiary subsequently agrees in writing that it will not exercise any rights hereunder as a result thereof, the occurrence of such event shall no longer be deemed an "Event of Default" hereunder insofar as the state of facts giving rise to such event is concerned, but the same shall not operate as or be deemed to be a waiver with respect to any identical or similar state of facts in existence or occurring theretofore or thereafter):

(a)   the occurrence of an "Event of Default" as that term is defined in the Loan Agreement;

(b)   the failure or refusal of Grantor to pay when due the Indebtedness or any part thereof, and Grantor fails to cure such default in payment within ten (10) days after written notice of same shall have been sent to Grantor; provided, however, Beneficiary shall not be required to furnish such notice more than two (2) times in any calendar year;

(c)   the failure or refusal of Grantor punctually and properly to perform, observe, and comply with any covenant, agreement or condition (which does not otherwise include the payment of the Indebtedness covered by Section 4.1(b) above) contained herein, or in any other Loan Document, and Grantor fails to remedy such breach of any such obligation within thirty (30) days after written notice of same shall have been sent to Grantor;

(d)   the failure for any reason of the liens created by this Deed of Trust to constitute the only first and prior liens against the entire Mortgaged Property;

(g)   a "transfer" in violation of Section 3.9 hereof; or

(h)   condemnation of a sufficient part of the Mortgaged Property as to materially affect Grantor's ability to perform its obligations hereunder or the value of the Mortgaged Property.

**Section 4.2   Remedies.** If an Event of Default occurs, Beneficiary may, at Beneficiary's election, and by or through Trustee or otherwise, exercise any or all of the following rights, remedies and recourses:

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 15**

(a) **Acceleration.** Declare the Indebtedness to be immediately due and payable, without further notice, presentment, protest, notice of intent to accelerate, notice of acceleration, demand or action of any nature whatsoever (each of which hereby is expressly waived by Grantor), whereupon the same shall become immediately due and payable.

(b) **Entry on Mortgaged Property.** Enter the Mortgaged Property and take exclusive possession thereof and of all books, records and accounts relating thereto. If Grantor remains in possession of the Mortgaged Property after an Event of Default and without Beneficiary's prior written consent, Beneficiary may invoke any legal remedies to dispossess Grantor.

(c) **Operation of Mortgaged Property.** Hold, lease, develop, manage, operate or otherwise use the Mortgaged Property upon such terms and conditions as Beneficiary may deem reasonable under the circumstances (making such repairs, alterations, additions and improvements and taking other actions, from time to time, as Beneficiary deems necessary or desirable), and apply all Rents and other amounts collected by Beneficiary or Trustee in connection therewith in accordance with the provisions of Section 4.8.

(d) **Foreclosure and Sale.** Sell or offer for sale the Mortgaged Property in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of same, to the highest bidder for cash at public auction. Such sale shall be made in accordance with the applicable provisions of Section 51.002 of the Texas Property Code, as amended, or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust relating to the sale of real estate or by Chapter 9 of the UCC relating to the sale of collateral after default by a debtor (as such laws now exist or may be hereafter amended or succeeded), or by any other present or subsequent articles or enactments relating to same. At any such sale (i) whether made under the power herein contained, the UCC, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to be physically present, or to have constructive possession of, the Mortgaged Property (Grantor shall deliver to Trustee any portion of the Mortgaged Property not actually or constructively possessed by Trustee immediately upon demand by Trustee), and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if Trustee had been actually present and delivered to purchaser at such sale, (ii) each instrument of conveyance executed by Trustee shall contain a special warranty of title, binding upon Grantor, (iii) each recital contained in any instrument of conveyance made by Trustee shall be prima facie evidence of the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Indebtedness, advertisement and conduct of such sale in the manner provided herein and otherwise by law, and appointment of any successor Trustee hereunder, (iv) any prerequisites to the validity of

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 16**

such sale shall be conclusively presumed to have been performed, (v) the receipt of Trustee or other party making the sale shall be a sufficient discharge to the purchaser or purchasers for his or their purchase money and no such purchaser or purchasers, or his or their assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or non-application thereof, and (vi) to the fullest extent permitted by law, Grantor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold and such sale shall be a perpetual bar both at law and in equity against Grantor, and against all other persons claiming or to claim the property sold or any part thereof, by, through or under Grantor. Beneficiary may be a purchaser at such sale and if Beneficiary is the highest bidder, may credit the portion of the purchase price that would be distributed to Beneficiary against the Indebtedness in lieu of paying cash.

(e)     **Receiver.**  Make application to a court of competent jurisdiction for, and obtain from such court as a matter of strict right and without notice to Grantor or regard to the adequacy of the Mortgaged Property for the repayment of the Indebtedness, the appointment of a receiver of the Mortgaged Property, and Grantor irrevocably consents to such appointment. Any such receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property upon such terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of Section 4.8.

(f)     **UCC.**  Exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the personal property or any part thereof, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the personal property, and (ii) request Grantor at its expense to assemble the personal property and make it available to Beneficiary at a convenient place acceptable to Beneficiary. Any notice of sale, disposition or other intended action by Beneficiary with respect to the personal property sent to Grantor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Grantor.

(g)     **Other.**  Exercise all other rights, remedies and recourses granted under the Loan Documents or otherwise available at law or in equity (including an action for specific performance of any covenant contained in the Loan Documents, or a judgment on the Note either before, during or after any proceeding to enforce this Deed of Trust). Beneficiary shall have the right at any time and from time to time, without notice to Grantor (any such notice being expressly waived), to set-off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held, and any other indebtedness at any time owing by Beneficiary to or for the credit or the account of Grantor, against any and all of the indebtedness of Grantor evidenced by the Note or the Loan Agreement and/or secured by the Deed of Trust, irrespective of whether

or not Beneficiary shall have made any demand under the Note or any other Loan Document and although such indebtedness may be unmatured. Beneficiary agrees to notify Grantor promptly after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application. The rights of Beneficiary under this subsection are in addition to any other rights and remedies (including, without limitation, other rights of set-off) which Beneficiary may have under the Note or the other Loan Documents or otherwise.

**Section 4.3    Separate Sales.** The Mortgaged Property may be sold in one or more parcels and in such manner and order as Trustee, in his sole discretion, may elect; the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

**Section 4.4    Remedies Cumulative, Concurrent and Nonexclusive.** Beneficiary shall have all rights, remedies and recourses granted in the Loan Documents and available at law or equity (including the UCC), which rights (a) shall be cumulative and concurrent, (b) may be pursued separately, successively or concurrently against Grantor or others obligated under the Note and the other Loan Documents, or against the Mortgaged Property, or against any one or more of them, at the sole discretion of Beneficiary, (c) may be exercised as often as occasion therefor shall arise, and the exercise or failure to exercise any of them shall not be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. No action by Beneficiary in the enforcement of any rights, remedies or recourses under the Loan Documents or otherwise at law or equity shall be deemed to cure any Event of Default.

**Section 4.5    Release of and/or Resort to Collateral.** Beneficiary may release, regardless of consideration and without the necessity for any notice to or consent by the holder of any subordinate lien on the Mortgaged Property, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior lien and security interest in and to the Mortgaged Property.

**Section 4.6    Waiver of Redemption, Notice and Marshalling of Assets.** To the fullest extent permitted by law, Grantor hereby irrevocably and unconditionally waives and releases (a) all benefit that might accrue to Grantor by virtue of any present or future statute of limitations or law or judicial decision exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (b) all notices of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Loan Documents, and (c) any right to a marshalling of assets or a sale in inverse order of alienation.

**Section 4.7    Discontinuance of Proceedings.** If Beneficiary shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Beneficiary shall have the unqualified right to

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 18**

APP066

do so and, in such an event, Grantor and Beneficiary shall be restored to their former positions with respect to the Indebtedness, the Obligations, the Loan Documents, the Mortgaged Property and otherwise, and the rights, remedies, recourses and powers of Beneficiary shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Beneficiary thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

**Section 4.8    Application of Proceeds.** The proceeds of any sale of, and the Rents and other amounts generated by the holding, leasing, management, operation or other use of the Mortgaged Property, shall be applied by Beneficiary or Trustee (or the receiver, if one is appointed) in the following order unless otherwise required by applicable law:

(a)    to the payment of the reasonable costs and expenses of taking possession of the Mortgaged Property and of holding, using, leasing, repairing, improving and selling the same, including, without limitation (i) Trustee's and receiver's fees and expenses, (ii) court costs, (iii) attorneys' and accountants' fees and expenses, (iv) costs of advertisement, (v) insurance premiums and (vi) the payment of all ground rent, real estate taxes and assessments, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold;

(b)    to the payment of all amounts (including interest), other than the unpaid principal balance of the Note and accrued but unpaid interest, which may be due to Beneficiary under the Loan Documents;

(c)    to the payment of the Indebtedness and performance of the Obligations in such manner and order of preference as Beneficiary in its sole discretion may determine; and

(d)    the balance, if any, to the payment of the persons legally entitled thereto.

**Section 4.9    Occupancy After Foreclosure.** The purchaser at any foreclosure sale pursuant to Section 4.2(d) shall become the legal owner of the Mortgaged Property. All occupants of the Mortgaged Property shall, at the option of such purchaser, become tenants of the purchaser at the foreclosure sale and shall deliver possession thereof immediately to the purchaser upon demand. It shall not be necessary for the purchaser at said sale to bring any action for possession of the Mortgaged Property other than the statutory action of forcible detainer in any justice court having jurisdiction over the Mortgaged Property.

**Section 4.10    Additional Advances and Disbursements; Costs of Enforcement.**

(a)    If any Event of Default exists, Beneficiary shall have the right, but not the obligation, to cure such Event of Default in the name and on behalf of Grantor. All sums advanced and expenses incurred at any time by Beneficiary under this Section 4.10, or

otherwise under this Deed of Trust or any of the other Loan Documents or applicable law, shall bear interest from the date that such sum is advanced or expense incurred, to and including the date of reimbursement, computed at the Default Rate (as defined in the Note), and all such sums, together with interest thereon, shall be secured by this Deed of Trust.

(b)    Grantor shall pay all expenses (including attorneys' fees and expenses) of or incidental to the perfection and enforcement of this Deed of Trust and the other Loan Documents, or the enforcement, compromise or settlement of the Indebtedness or any claim under this Deed of Trust and the other Loan Documents, and for the curing thereof, or for defending or asserting the rights and claims of Beneficiary in respect thereof, by litigation or otherwise.

Section 4.11    **No Mortgagee in Possession.**    Neither the enforcement of any of the remedies under this Article 4, the assignment of the Rents and Leases under Article 5, the security interests under Article 6, nor any other remedies afforded to Beneficiary under the Loan Documents, at law or in equity shall cause Beneficiary to be deemed or construed to be a mortgagee in possession of the Mortgaged Property, to obligate Beneficiary to lease the Mortgaged Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

Section 4.12    **Actions and Proceedings.**    Beneficiary has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Grantor, which Beneficiary, in its discretion, decides should be brought to protect its interest in the Mortgaged Property.

## ARTICLE 5
## ASSIGNMENT OF RENTS AND LEASES

Section 5.1    **Assignment.**    Grantor does hereby assign to Beneficiary all of Grantor's right, title and interest in, to and under:  (a) all Leases of the Mortgaged Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Mortgaged Property or any portion thereof, whether now existing or entered into after the date hereof and all amounts payable and all rights and benefits accruing to Grantor; and (b) the Rents.  Without in any way limiting or restricting any of Beneficiary's other rights, benefits or privileges hereunder, Grantor and Beneficiary hereby expressly agree that Beneficiary shall be entitled to and all rights, benefits or privileges provided for in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code, as amended (the "TAR").  Upon the occurrence of an Event of Default, Beneficiary shall have all of the rights granted pursuant to the Loan Documents and the TAR.

Section 5.2    **Effect of Assignment.**    The foregoing assignment shall not cause Beneficiary to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Mortgaged Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; or

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 20**

(c) responsible or liable for any waste committed on the Mortgaged Property by the Tenants under any of the Leases or any other parties; for any dangerous or defective condition of the Mortgaged Property; or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any Tenant, licensee, employee, invitee or other person. Beneficiary and Trustee shall not directly or indirectly be liable to Grantor or any other person as a consequence of: (i) the exercise or failure to exercise by Beneficiary or Trustee, or any of their respective employees, agents, contractors or subcontractors, any of the rights, remedies or powers granted to Beneficiary or Trustee hereunder; or (ii) the failure or refusal of Beneficiary to perform or discharge any obligation, duty or liability of Grantor arising under the Leases.

## ARTICLE 6
## SECURITY AGREEMENT

**Section 6.1    Security Interest.** This Deed of Trust constitutes a "Security Agreement" on personal property within the meaning of the UCC and other applicable law with respect to the Personalty, Fixtures, Plans, Leases, Rents and Property Agreements. To this end, Grantor grants to Trustee and Beneficiary, a first and prior security interest in the Personalty, Fixtures, Plans, Leases, Rents and Property Agreements and all other Mortgaged Property which is personal property to secure the payment of the Indebtedness and performance of the Obligations, and agrees that Beneficiary shall have all the rights and remedies of a secured party under the UCC with respect to such property. Any notice of sale, disposition or other intended action by Beneficiary with respect to the Personalty, Fixtures, Plans, Leases, Rents and Property Agreements sent to Grantor at least ten (10) days prior to any action under the UCC shall constitute reasonable notice to Grantor.

**Section 6.2    Financing Statements.** Grantor hereby authorizes Beneficiary to file, in form and substance satisfactory to Beneficiary, such financing statements and such further assurances as Beneficiary may, from time to time, consider necessary to create, perfect and preserve Beneficiary's security interest hereunder and Beneficiary may cause such statements and assurances to be recorded and filed, at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest. Grantor's chief executive office is in the State at the address set forth in the first paragraph of this Deed of Trust.

**Section 6.3    No Obligation of Trustee or Beneficiary.** The security interest herein granted shall in no event cause Trustee or Beneficiary to be deemed or construed as a mortgagee in possession of the Mortgaged Property, to obligate Trustee or Beneficiary to lease the Mortgaged Property or attempt to do so, or to take any action, incur any expense or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

**Section 6.4    Fixture Filing.** This Deed of Trust shall also constitute a "fixture filing" for the purposes of the UCC against all of the Mortgaged Property which is or is to become fixtures. Information concerning the security interest herein granted may be obtained at the

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 21**

APP069

addresses of Debtor (Grantor) and Secured Party (Beneficiary) as set forth in the first paragraph of this Deed of Trust.

**Section 6.5**   **Continuing Effect Notwithstanding Termination of Deed of Trust.**   It is expressly agreed that until the security interest granted hereby has been released in writing by Beneficiary, this Deed of Trust shall remain fully effective as a security agreement, notwithstanding that the lien on real property that is created by this Deed of Trust may be extinguished or released, by foreclosure of this Deed of Trust or otherwise.

**ARTICLE 7**
**CONCERNING THE TRUSTEE**

**Section 7.1**   **Certain Rights.**   With the approval of Beneficiary, Trustee shall have the right to select, employ and consult with counsel. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine. Trustee shall be entitled to reimbursement for actual expenses incurred by him in the performance of his duties hereunder. Grantor shall, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and indemnify, defend and save Trustee harmless against, all liability and reasonable expenses which may be incurred by him in the performance of his duties. Grantor's obligations under this Section 7.1 shall not be reduced or impaired by principles of comparative or contributory negligence.

**Section 7.2**   **Retention of Money.**   All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law), and Trustee shall be under no liability for interest on any moneys received by him hereunder.

**Section 7.3**   **Successor Trustees.**   If Trustee or any successor Trustee shall die, resign or become disqualified from acting in the execution of this trust, or Beneficiary shall desire to appoint a substitute Trustee, Beneficiary shall have full power to appoint one or more substitute Trustees and, if preferred, several substitute Trustees in succession who shall succeed to all the estates, rights, powers and duties of Trustee. Such appointment may be executed by any authorized agent of Beneficiary, and as so executed, such appointment shall be conclusively presumed to be executed with authority, valid and sufficient, without further proof of any action.

**Section 7.4**   **Perfection of Appointment.**   Should any deed, conveyance or instrument of any nature be required from Grantor by any successor Trustee to more fully and certainly vest in and confirm to such successor Trustee such estates, rights, powers and duties, then, upon request by such Trustee, all such deeds, conveyances and instruments shall be made, executed, acknowledged and delivered and shall be caused to be recorded and/or filed by Grantor.

## ARTICLE 8
## MISCELLANEOUS

**Section 8.1    Limitation on Interest.** It is the intention of the parties hereto to conform strictly to applicable usury laws. Accordingly, all agreements between Grantor and Beneficiary with respect to the Loan are hereby expressly limited so that in no event, whether by reason of acceleration of maturity or otherwise, shall the amount paid or agreed to be paid to Beneficiary or charged by Beneficiary for the use, forbearance or detention of the money to be lent hereunder or otherwise, exceed the maximum amount allowed by law. If the Loan would be usurious under applicable law (including the laws of the state where the Mortgaged Property is located and the laws of the United States of America), then, notwithstanding anything to the contrary in the Loan Documents: (a) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, taken, reserved, charged or received under the Loan Documents shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on the Indebtedness; and (b) if maturity is accelerated by reason of an election by Beneficiary, or in the event of any prepayment, then any consideration which constitutes interest may never include more than the maximum amount allowed by applicable law. In such case, excess interest, if any, provided for in the Loan Documents or otherwise, to the extent permitted by applicable law, shall be amortized, prorated, allocated and spread from the date of advance until payment in full so that the actual rate of interest is uniform through the term hereof. If such amortization, proration, allocation and spreading is not permitted under applicable law, then such excess interest shall be canceled automatically as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited on the Indebtedness. The Loan Documents are contracts made under and shall be construed in accordance with and governed by the laws of the State, except that if at any time the laws of the United States of America permit Beneficiary to contract for, take, reserve, charge or receive a higher rate of interest than is allowed by the laws of the State (whether such federal laws directly so provide or refer to the law of any state), then such federal laws shall to such extent govern as to the rate of interest which Beneficiary may contract for, take, reserve, charge or receive under the Loan Documents.

**Section 8.2    Notices.** Any notice, consent or other communication required or permitted to be given under any of the Loan Documents to Beneficiary or Grantor must be in writing and delivered in person or mailed by registered or certified mail, return receipt requested, postage prepaid, as follows:

| | |
|---|---|
| If to Beneficiary: | Texas Republic Bank, N.A.<br>Attention: David L. Baty<br>2595 Preston Road<br>Frisco, Texas 75034 |
| If to Grantor: | FHC Acquisition, LLC, a Texas limited liability company<br>1755 Wittington Place, Suite 340<br>Dallas, Texas 75234 |

or such other address as shall be set forth in a notice from the appropriate party given in compliance with this Section 8.2. Any such notice, consent or other communication shall be deemed given when delivered in person or, if mailed, when duly deposited in the United States mail.

**Section 8.3** **Covenants Running with the Land.** All Obligations contained in this Deed of Trust are intended by Grantor, Beneficiary and Trustee to be, and shall be construed as, covenants running with the Mortgaged Property. As used herein, "Grantor" shall refer to the party named in the first paragraph of this Deed of Trust and to any subsequent owner of all or any portion of the Mortgaged Property (without in any way implying that Beneficiary has or will consent to any such conveyance or transfer of the Mortgaged Property). All persons or entities who may have or acquire an interest in the Mortgaged Property shall be deemed to have notice of, and be bound by, the terms of the Loan Documents; however, no such party shall be entitled to any rights thereunder without the prior written consent of Beneficiary.

**Section 8.4** **Attorney-in-Fact.** Grantor hereby irrevocably appoints Beneficiary and its successors and assigns, as its attorney-in-fact, which agency is coupled with an interest, (a) to execute and/or record any notices of completion, cessation of labor or any other notices that Beneficiary deems appropriate to protect Beneficiary's interest, (b) upon the issuance of a deed pursuant to the foreclosure of this Deed of Trust or the delivery of a deed in lieu of foreclosure, to execute all instruments of assignment, conveyance or further assurance with respect to the Leases, Rents, Personalty, Fixtures, Plans and Property Agreements in favor of the grantee of any such deed and as may be necessary or desirable for such purpose, (c) to prepare, execute and file or record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve Beneficiary's security interests and rights in or to any of the collateral, and (d) to perform any obligation of Grantor hereunder; however: (i) Beneficiary shall not under any circumstances be obligated to perform any obligation of Grantor; (ii) any sums advanced by Beneficiary in such performance shall be added to and included in the Indebtedness and shall bear interest at the Default Rate; (iii) Beneficiary as such attorney-in-fact shall only be accountable for such funds as are actually received by Beneficiary; and (iv) Beneficiary shall not be liable to Grantor or any other person or entity for any failure to take any action which it is empowered to take under this Section.

**Section 8.5** **Successors and Assigns.** This Deed of Trust shall be binding upon and inure to the benefit of Beneficiary and Grantor and their respective successors and assigns. Grantor shall not, without the prior written consent of Beneficiary, assign any rights, duties or obligations hereunder.

**Section 8.6** **No Waiver.** Any failure by Trustee or Beneficiary to insist upon strict performance of any of the terms, provisions or conditions of the Loan Documents shall not be deemed to be a waiver of same, and Trustee or Beneficiary shall have the right at any time to insist upon strict performance of all of such terms, provisions and conditions.

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 24**

APP072

Section 8.7    **Subrogation.**   To the extent proceeds of the Note have been used to extinguish, extend or renew any indebtedness against the Mortgaged Property, then Beneficiary shall be subrogated to all of the rights, liens and interests existing against the Mortgaged Property and held by the holder of such indebtedness and such former rights, liens and interests, if any, are not waived, but are continued in full force and effect in favor of Beneficiary.

Section 8.8    **Waiver of Stay, Moratorium and Similar Rights.**  Grantor agrees, to the full extent that it may lawfully do so, that it will not at any time insist upon or plead or in any way take advantage of any appraisement, valuation, stay, marshalling of assets, extension, redemption or moratorium law now or hereafter in force and effect so as to prevent or hinder the enforcement of the provisions of this Deed of Trust or the indebtedness secured hereby, or any agreement between Grantor and Beneficiary or any rights or remedies of Beneficiary.

Section 8.9    **Governing Law.**  THIS DEED OF TRUST SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.

Section 8.10   **Headings.**  The Article, Section and Subsection titles hereof are inserted for convenience of reference only and shall in no way alter, modify or define, or be used in construing, the text of such Articles, Sections or Subsections.

Section 8.11   **Entire Agreement.**  This Deed of Trust and the other Loan Documents embody the entire agreement and understanding between Beneficiary and Grantor and supersede all prior agreements and understandings between such parties relating to the subject matter hereof and thereof. Accordingly, the Loan Documents may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

Section 8.12   **Counterparts.**   This Deed of Trust may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

Section 8.13   **Waivers.**  In the event the Mortgaged Property  or any part thereof is foreclosed upon in any manner, and a deficiency is created as a result of the purchase price at such foreclosure sale, Grantor does hereby irrevocably waive all rights to claim any offset against the deficiency as provided in Section 51.003, 51.004 and 51.005 of the Texas Property Code, as amended.

Section 8.14   **Additional   Waivers.**  GRANTOR   WAIVES   ANY   RIGHTS GRANTOR HAS UNDER, OR ANY REQUIREMENT IMPOSED BY, (I)   CHAPTER 43 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE, AS AMENDED, (II) SECTION 17.001 OF THE TEXAS BUSINESS AND COMMERCE CODE, AS AMENDED, (III) RULE 31 OF THE TEXAS RULES OF CIVIL PROCEDURE, AS AMENDED.

5556.236dt
**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 25**

APP073

Section 8.15  WAIVER OF JURY TRIAL.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, GRANTOR AND BENEFICIARY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS DEED OF TRUST, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS HEREUNDER OR IN ANY WAY RELATING TO THE LOAN OR THE MORTGAGED PROPERTY (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS DEED OF TRUST, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS DEED OF TRUST WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).  THIS WAIVER IS A MATERIAL INDUCEMENT FOR BENEFICIARY TO MAKE THE LOAN.

Section 8.16  Vendor's Lien.  A portion of the proceeds of the loan evidenced by the Note was advanced as purchase money for the Mortgaged Property, for which a coextensive and cumulative vendor's lien is retained in favor of Beneficiary in Deed dated as of the Date Hereof from IGO-USA LP, a Texas limited partnership, to Grantor.

[REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

APP074

EXECUTED as of the date first above written.

> FHC Acquisition, LLC, a Texas limited liability company
> By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
>> By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager
>
> By:_____
> Timothy Barton, President

STATE OF TEXAS        §
                      §
COUNTY OF Dallas      §

This instrument was acknowledged before me this 30 day of January 2020, by Timothy Barton, President of Dallas Real Estate Investors, LLC, a Delaware limited liability company, as Manager of Dallas Real Estate Lenders, LLC, a Delaware limited liability company, as Managing Member of FHC Acquisition, LLC, a Texas limited liability company, on behalf of said limited liability companies.

_____
Notary Public

_____
Bella D Khusal
Printed name of Notary

My Commission Expires:
09/24/2022



Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

5556.236dt
Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing – Page 27

APP075

# EXHIBIT E

TRB Loan #

### UCC-1 Financing Statement

Date Hereof:          The effective date of this instrument, which shall be January 30, 2020.

Debtor:               FHC Acquisition, LLC, a Texas limited liability company
                      1755 Wittington Place, Suite 340
                      Dallas, Texas 75234

Secured Party:        Texas Republic Bank, N.A.
                      Attention: David Baty
                      2595 Preston Road, Suite 300
                      Frisco, Texas 75034

Real Property:        **Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas**

This Financing Statement covers the following types or items of property:

All right, title and interest of Debtor in and to all goods, accounts, general intangibles, instruments, documents, chattel paper and all other personal property of any kind or character, including such items of personal property as defined in the Uniform Commercial Code, now owned or hereafter acquired by Debtor and now or hereafter affixed to, placed upon, used in connection with, arising from or otherwise related to the Real Property or which may be used in or relating to the planning, development, financing or operation of the Real Property, including, without limitation, furniture, furnishings, fixtures, equipment, machinery, money, insurance proceeds, accounts, contract rights, trademarks, goodwill, chattel paper, documents, trade names, licenses and/or franchise agreements, rights of Debtor under leases of fixtures or other personal property or equipment, inventory, all refundable, returnable or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Debtor with any governmental authorities, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs; all accessions, replacements and substitutions for any of the foregoing and all proceeds thereof; all insurance policies, unearned premiums therefor and proceeds from such policies covering any of the foregoing.

Check only if applicable:

_      Products of collateral are also covered.

x      This Financing Statement is to be filed with the Secretary of State.

**Debtor**:
FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member

         By: Dallas Real Estate Investors, LLC ,a Delaware limited liability company, its Manager

         By:_____
             Timothy Barton, President

5556.236ucc
**UCC-1 Financing Statement - Page Solo**

APP077

# EXHIBIT F

APP078

## Assignment of Money Market Account

Date Hereof:          January 30, 2020

Borrower:             FHC Acquisition, LLC, a Texas limited liability company

Assignor:             FHC Acquisition, LLC, a Texas limited liability company

Assignee:             Texas Republic Bank, N.A.

Loan Amount:          $2,965,783.00

Account:              Money Market Savings Account No. 41427, issued by Assignee in the name of Assignor.

Loan Agreement:       Loan Agreement dated as of the Date Hereof, by and between Borrower and Assignee, and pertaining to the loan from Assignee to Borrower in the Loan Amount.

### W i t n e s s e t h:

### KNOW ALL MEN BY THESE PRESENTS:

That this Assignment of Money Market Account Agreement ("Agreement"), made and entered into as of the Date Hereof, by and between Assignor and Assignee, pursuant to the terms of the Loan Agreement, to which witness the following:

### W i t n e s s e t h:

**Whereas**, Assignee has advanced the Loan Amount for the benefit of Borrower, evidenced by that one certain Promissory Note ("Note") of even date herewith, executed by Borrower, payable to the order of Assignee; and

**Whereas**, Assignee has required that the Account opened by Assignor, which is the same as the "Reserve Account" as defined in the Loan Agreement, act as security for the Note;

**Now, Therefore**, for and in consideration of the mutual covenants, promises, representations, and recitations herein contained, and for and in consideration of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, it is agreed as follows, to-wit:

1.      Indebtedness.  The security interest defined below is herein created to secure the payment, both principal and interest, owing under the Note.  The security interest is additionally created to secure the performance of all obligations and the payment of all indebtedness of Assignor or Borrower or both owed to Assignee, direct or indirect, now existing or hereafter

5556.236amm
**Assignment of Money Market Account Agreement - Page 1**

APP079

arising, of whatsoever kind or character, whenever or however created or incurred by Assignor or Borrower or both, including, without limitation, the indebtedness evidenced by the Note and the "Obligations" as that term is defined in the Loan Agreement, and including the obligation to pay ad valorem taxes on the real property securing the Note (collectively, the "Indebtedness").

2.   Security Interest. For value received, Assignor hereby grants to Assignee a security interest in all of Assignor's right, title and interest in and to the Account, and all sums now or hereafter on deposit therein standing to the credit of Assignor   (collectively, the "Deposit").

3.   Assignment. Assignor hereby assigns, delivers and pledges to Assignee all of its right, title and interest in and to the Deposit as security for the Indebtedness.  During the term of this assignment Assignee shall have complete right, title and interest in and to the Deposit, and the interest thereon.

4.   Default. Upon the occurrence of an "Event of Default" as that term is defined in the Loan Agreement, Assignee shall immediately apply such Deposit toward the payment of the Indebtedness to the extent the Indebtedness remains unpaid.

5.   Auto-Debit. Assignor authorizes and instructs Assignee to auto-debit the Account to pay itself as and when any portion of the Indebtedness becomes due by Assignee. Assignor further authorizes and instructs Assignee to auto-debit the Account to pay interest accrual on the Note and ad valorem taxes as provided for in Section 2.12 of the Loan Agreement.

6.   No Assignment. Assignor shall not assign or further encumber the Deposit without the prior written consent of Assignee.  Assignee may assign or transfer all or part of its rights in, and obligations, if any, under the Indebtedness, the Deposit and this Agreement.

7.   Modification. No limitation or modification of this Agreement shall be valid except by written agreement duly executed by Assignee and Assignor, and this Agreement shall be irrevocable except by written instrument expressly referring hereto signed by both Assignor and Assignee.  This Agreement shall be binding upon the heirs, executors, administrators, assigns, and successors of Assignor.

8.   Texas Law to Apply. This Agreement shall be construed in accordance with the laws of the State of Texas and any proceeding hereunder shall be in Collin County, Texas.

9.   Severability. The enforceability of any provision of this Agreement shall not affect the enforceability or validity of any other provision hereof.

10.   Waiver of Assignor. Assignor hereby waives presentment, demand, notice of dishonor, protest, and notice of protest and all other notices with respect to collection or acceleration of maturity of the Indebtedness.

11.   Joinder. Assignor warrants and represents to Assignee that Assignor has full and complete authority to execute this Assignment and convey the interests herein granted, without the requirement of the joinder of any other person or entity.

5556.236amm
**Assignment of Money Market Account Agreement - Page 2**

APP080

Executed to be effective as of the Date Hereof.

                **Assignor/ Borrower**:
                FHC Acquisition, LLC, a Texas limited liability company
                By: Dallas Real Estate Lenders, LLC, a Delaware limited
                liability company, its Managing Member
                      By: Dallas Real Estate Investors, LLC, a Delaware
                      limited liability company, its Manager

                          By:_____
                              Timothy Barton, President

                **Assignee**:
                Texas Republic Bank, N.A.

                By:_____
                      (Signature)

                  _____
                    (Printed Name and Title)

5556.236amm
**Assignment of Money Market Account Agreement - Page 3**

APP081

# EXHIBIT G

APP082

TRB Loan #

## ASSIGNMENT OF LICENSES, PERMITS AND APPROVALS

THIS ASSIGNMENT OF LICENSES, PERMITS AND APPROVALS (this "Assignment") is made as of January 30, 2020, by FHC ACQUISITION, LLC, a Texas limited liability company (individually and collectively, the "Assignor"), in favor of TEXAS REPUBLIC BANK, N.A. ("Assignee").

Assignor, having an office and principal place of business at 1755 Wittington Place, Suite 340, Dallas, Texas 75234, for good and valuable consideration, the receipt, sufficiency and adequacy of which are hereby acknowledged, does hereby grant to Assignee, with an office at 2595 Preston Road, Suite 300, Frisco, Texas 75034, Attention: David Baty, to the extent permitted under applicable law, a security interest in and to the entire interest of Assignor in, arising out of, or in relation to, but not its obligations under, any and all licenses, permits, authorizations, consents and approvals heretofore or hereafter issued by any and all governmental instrumentalities and authorities in connection with the acquisition, ownership, operation, construction, use, leasing or occupancy of the land and improvements on the "Mortgaged Property" as defined and more fully described in the Loan Documents (as hereinafter defined) (collectively, the "Permits").

THIS ASSIGNMENT is a present and irrevocable assignment and is made for the purpose of securing:

A.      The payment of all sums and indebtedness now or hereafter due in connection with that certain loan in the maximum principal amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00) (the "Loan") from Assignee to Assignor pursuant to that certain Loan Agreement of even date herewith by and between Assignor and Assignee (as the same may hereafter be amended, modified, renewed, restated or extended from time to time, the "Loan Agreement"), which Loan is evidenced by that certain Promissory Note of even date herewith made by Assignor, as maker, in favor of Assignee, as holder, in the stated principal amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00), and any and all amendments, extensions or renewals thereof (as hereafter amended, supplemented, substituted, extended and modified, the "Note"). All capitalized words used but not otherwise defined herein shall have the meanings ascribed thereto in the Loan Agreement. Said Loan is secured by, among other things, (a) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of even date herewith, made by Assignor in favor of Assignee (as amended or otherwise modified from time to time, the "Mortgage"), which Mortgage creates a first and prior lien on the Property (as that term is defined in the Loan Agreement), and (b) those certain Uniform Commercial Code Financing Statements for the benefit of Assignee (as hereafter amended, supplemented or modified from time to time, the "Financing Statements") (this Assignment, the Loan Agreement, the Note, the Mortgage, the Financing Statements and any and all other documents now or hereafter executed or authorized by Assignor or others in favor of Assignee, which wholly or partially evidence or secure the Loan or are executed in connection therewith, together with all amendments, modifications, renewals, substitutions and extensions thereof, and any documents in exchange therefor, are hereinafter referred to collectively as the "Loan Documents"); and

5556.236aslicenses
**Assignment of Licenses, Permits and Approvals – Page 1**

B.    Payment, performance and discharge of all obligations of Assignor under and in accordance with the Loan Documents.

THIS ASSIGNMENT is made on the following terms, covenants and conditions:

1.    Assignor hereby appoints Assignee its true, lawful and irrevocable attorney-in-fact to demand, receive and enforce any rights, interests and benefits accruing to Assignor under the terms of the Permits, and, after written notice given to Assignor, to sue, either in the name of Assignor or in the name of Assignee, or both, in connection with said rights, interests and benefits set forth in the Permits.

2.    Until an Event of Default has occurred, Assignor may continue to demand, receive and enforce said rights, interests and benefits under and in accordance with the terms of the Permits.

3.    Upon or at any time after the occurrence of an Event of Default, Assignee may, at its option, give written notice of this Assignment to Assignor and may demand, receive and enforce the aforesaid rights, interests and benefits under and in accordance with the terms of the Permits.

4.    Assignor warrants and covenants that Assignor shall not execute any other assignment of any or all interests assigned to Assignee hereunder.

5.    This Assignment is irrevocable and shall remain in full force and effect until and unless the Loan has been repaid in full.

6.    This Assignment, together with the agreements and warranties contained herein, shall inure to the benefit of Assignee, its successors and assigns, and shall be binding upon Assignor, its successors and assigns.  Until such time as the Mortgaged Property is sold at a foreclosure sale or transferred by deed in lieu thereof, Assignee shall not assign its right under this Assignment except in connection with the assignment of all or any part of Assignee's interest in the Loan.  In connection with the sale of all or any part of Assignee's interest in the Loan, Assignee may, in Assignee's sole discretion, assign its right, title and interest in, to and under the Permits to any persons or entities upon notice to Assignor, but without any further requirement for Assignor's consent, and any such reassignment shall be valid and binding upon Assignor as fully as if it had expressly approved the same.

7.    In the event of any conflict between the terms hereof and the terms of the Loan Agreement, the terms of the Loan Agreement shall govern.

8.    This Assignment shall be governed by and construed in accordance with the laws of the State of Texas.

APP084

IN WITNESS WHEREOF, Assignor has duly executed this Assignment as of the date first written above.

ASSIGNOR:
FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
    By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager

      By:_____
          Timothy Barton, President

5556.236aslicenses
**Assignment of Licenses, Permits and Approvals – Page 3**

APP085

# EXHIBIT H

APP086

Loan #

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | **Assignment of Contract Rights and Proceeds** |
| COUNTY OF COLLIN | § | |

Definitions

Date:                    January 29, 2020

Assignor:                FHC Acquisition, LLC, a Texas limited liability company
                         1755 Wittington Place, Suite 340
                         Dallas, Texas 75234

Assignee:                Texas Republic Bank, N.A.
                         Attention: David L. Baty
                         2595 Preston Road
                         Frisco, Texas 75034

Property:                **Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas.**

Public Entities:         (i) The City of Frisco, Texas, a municipal corporation of the State of Texas and a home rule municipality, (ii) Frisco Economic Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act, and (iii) Frisco Community Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act.

Contracts:               (i) That certain Master Development Agreement, dated effective as of December 31, 2019, executed by the Public Entities and Assignor, together with any and all renewals or extensions thereof and substitutions or replacements therefor; (ii) that certain Performance Agreement, dated effective as of December 30, 2019, executed by Frisco Community Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act, and Assignor, together with any and all renewals or extensions thereof and substitutions or replacements therefor; and (iii) that certain Performance Agreement, dated effective as of December 31, 2019, executed by Frisco Economic Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act, and Assignor, together with any and all renewals or extensions thereof and substitutions or replacements therefor.

Proceeds:                All rights of Assignor to receive payments, receipts, revenues, reimbursements, interest and income of any kind under the Contracts.

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 1**

APP087

Loan #

Loan:                   Loan of $2,965,783.00 from Assignee to Assignor as of the Date, evidenced by that certain Promissory Note (the "Note") executed as of the Date by Assignor in said sum, payable to the order of Assignee, secured by, among other things, Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), as of the Date, from Assignor to a trustee for the benefit of Assignee.

Loan Agreement:         Loan Agreement executed as of the Date by and between Assignor and Assignee pertaining to the Loan.

<u>Assignment</u>

In consideration of the above and of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Assignor, Assignor hereby covenants and agrees with Assignee as follows:

1.      <u>Assignment</u>. Assignor hereby sells, assigns, transfers and sets over unto Assignee, its successors and assigns, all of Assignor's right, title and interest in, to and under the Contracts, including but not limited to (a) any and all rights of Assignor to receive the Proceeds, and (b) any and all rights and remedies which Assignor may have to enforce the payment or delivery of the Proceeds or otherwise,<u> but not any of the obligations, liabilities or responsibilities of Assignor under the Contracts</u>.   Prior to an Event of Default under the Loan Agreement, Assignor shall have the right to exercise its rights as owner under the Contracts, but not the right to receive Proceeds under the Contracts; provided that Assignor shall not cancel or amend the Contracts or do or suffer to be done any act which would impair the security constituted by this Assignment without the prior written consent of Lender.   Assignor acknowledges and agrees that the Public Entities' shall deliver all Proceeds directly to Assignee following Assignor's compliance with the performance criteria in the Contracts.   Nothing contained herein shall impair or alter the rights of the Public Entities set forth in the Contracts, including the Public Entities' right to (i) withhold payment in the event the performance criteria set forth in the Contracts is not complied with, or (ii) terminate the Contracts in accordance with the terms and provisions of the Contracts.

2.      <u>Purpose</u>.   These presents are given to additionally secure (a) payment of the "Obligations" as that term is defined in the Loan Agreement and all interest and principal from time to time outstanding thereon as evidenced by the Note, and (b) performance of all obligations under the Note and any other instrument evidencing or securing the Note.

3.      <u>Covenants, Warranties and Representations</u>.   Assignor hereby represents, warrants and agrees that, subject to the terms of the Contracts:

A.      Assignor has the right, power and capacity to make this Assignment and that no person, firm or corporation other than Assignor or Assignee has or will have (i) any right, title or interest in, to or under the Contracts, or (ii) any right to receive the Proceeds or any part thereof.

B.      Assignor will, at Assignor's sole cost and expense, perform and discharge all of Assignor's obligations and undertakings under the Contracts.  Assignor will use all reasonable efforts to enforce or secure the performance of each and every obligation and undertaking of the Public Entities under the Contracts and will appear in

5556.236assignment of contract
**<u>Assignment of Contract Rights and Proceeds - Page 2</u>**

and prosecute or defend any action or proceeding arising under, or in any manner connected with, the Contracts or the obligations and undertakings of the Public Entities thereunder.

C.    Assignor will not without the prior written consent of Assignee (i) pledge, transfer, mortgage or otherwise encumber or assign any portion of the Proceeds or any of Assignor's rights under any of the Contracts (ii) waive, excuse, condone or in any manner release or discharge the Public Entities under the Contracts, (iii) disaffirm, cancel, terminate or consent to any surrender the Contracts, or (iv) modify, extend or in any way alter the terms of the Contracts so as to reduce or diminish or postpone Assignor's receipt of any portion of the Proceeds.

D.    Any default by Assignor in the performance of any obligation or undertaking hereunder shall constitute and be deemed to be an event of default under the Loan Agreement, Note, the Deed of Trust, and under any other instrument securing or relating to the Loan so as to entitle Assignee to exercise any and all of the rights and remedies thereunder, including the right to declare all sums payable under the Note immediately due and payable without notice or demand.

E.    There are no existing defaults under the Contracts and Assignor has not performed any act or executed any instrument which might prevent Assignee from operating under any of the terms and provisions hereof or which would limit Assignee in such operation.

F.    Assignor will deliver to Assignee a true and correct copy of the executed Contracts.

4.    No Possession: Further Assurances.    These presents shall not be deemed or construed to constitute Assignee as mortgagee in possession of the Property or to obligate Assignee to take any action hereunder, to incur expenses or to perform or discharge any obligation, duty or liability hereunder or under the Contracts.    Until the Loan and all indebtedness evidenced by the Note shall have been paid in full, Assignor will from time to time execute and deliver unto Assignee upon demand any and all writings that Assignee may reasonably deem necessary or desirable to carry out the purpose and intent hereof, or to enable Assignee to enforce any right or rights hereunder.

5.    Events of Default.    The term "Event of Default" as used herein shall mean the occurrence of any one of the following:

A.    Assignor's failure to comply with any of the covenants, duties or obligations of Assignor herein;

B.    An "Event of Default" as that term is defined in the Loan Agreement, in the Deed of Trust, or any default in the payment of the Note; or

C.    At any time any representation or warranty made by Assignor herein shall be materially incorrect.

6.    Disposition of Proceeds.    From and after the occurrence of an Event of Default (whether or not Assignee shall have exercised its option to declare the Note immediately due and payable), all Proceeds assigned hereunder that are due and payable to Assignor under the Contracts shall be paid

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 3**

APP089

directly to Assignee; and Assignee may notify the Public Entities to pay all of the Proceeds directly to Assignee for which this Assignment shall be sufficient warrant. Assignor acknowledges that all Proceeds received after the occurrence of an Event of Default belong to Assignee. Accordingly, all Proceeds received by Assignor after the occurrence of an Event of Default shall be held in trust for the benefit of Assignee and immediately turned over to Assignee to be applied by Assignee in accordance with this Section 6. All Proceeds so paid to Assignee shall be applied by Assignee, in its discretion, to the payment of the costs and expenses of the operation and construction of the Property, to the payment of accrued interest and principal on the Loan and/or the prepayment of the Loan, all in such order and in such respective amounts as Assignee shall from time to time determine.

7.      Litigation. Assignor hereby assigns to Assignee any award made hereafter to Assignor in any court proceeding involving the Public Entities, in any bankruptcy, insolvency or reorganization proceeding in any state or federal court, and any and all payments made by the Public Entities in lieu of payment of Proceeds. Assignor hereby grants to Assignee the conjunctive right with Assignor to appear in any action and/or to collect any such award or payment.

8.      Further Rights of Assignee. Assignor, upon the occurrence of an Event of Default, hereby authorizes Assignee, at its option, to enter and take possession of the Property and to manage, operate, develop and construct the same; to collect as herein provided all or any Proceeds payable under the Contracts; to consummate the transactions contemplated by the Contracts; to bring or defend any suits in connection with the possession of the Property, in Assignor's name or Assignee's own name; to make repairs as Assignee deems appropriate; and to perform such other acts in connection with the management, operation, development and construction of the Property as Assignee, in its discretion, may deem proper.

9.      Foreclosure. The receipt by Assignee of any Proceeds pursuant to this Assignment after the institution of foreclosure proceedings under the Deed of Trust shall not cure any such Event of Default or affect such proceedings or any sale pursuant thereto.

10.     Performance. Assignee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Assignor under any of the Contract; and Assignor hereby agrees to indemnify Assignee for, and to save Assignee harmless from, any and all liability arising from any of the Contracts or from this Assignment. This Assignment shall not place responsibility for the control, care, management or repair of the Property or for negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or damage or injury or death to any party; provided, however, the aforesaid indemnity and save harmless of Assignor shall not apply to any liability caused by Assignee's negligence or willful misconduct occurring while Assignee has actual possession of the Property and is operating same pursuant thereto, upon foreclosure or otherwise.

11.     No Waiver. The failure of Assignee to enforce any of the terms, covenants or conditions hereof shall not be construed or deemed to be a waiver of any rights or remedies hereunder. Assignee shall have the full right, power and authority to enforce this Assignment, or any of the terms, covenants or conditions hereof, at any time or times that Assignee shall deem fit.

12.     Notices. All notices required or permitted to be given hereunder shall be deemed to have been duly given if deposited in the United States Mail, postage prepaid, registered or certified mail, return receipt requested, and addressed as above, or to such other address or addresses as the parties hereto may by ten (10) day's prior written notice thereof from time to time designate for the purpose of receiving notices hereunder.

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 4**

APP090

13.    Binding Effect.    This Assignment applies to and binds the parties hereto and their respective heirs, administrators, executors, successors and assigns.    Any provisions in any other agreement creating rights in Assignee other than those created herein shall be deemed incorporated herein by reference and made a part hereof for all purposes.

In witness whereof, Assignor has caused this instrument to be executed as of the date first above written.

*[End of Text; Signature Pages to Follow.]*

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 5**

APP091

**Assignor:**

FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited
liability company, its Managing Member

By: _____
　　　Timothy Barton, President

THE STATE OF TEXAS §
　　　　　　　　　　　　§
COUNTY OF Dallas §

　　　　Before me Bella D Khusal (Notary printed name) on this day personally appeared Timothy Barton, as President of Dallas Real Estate Lenders, LLC, a Delaware limited liability company, as Managing Member of FHC Acquisition, LLC, a Texas limited liability company, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity stated.

　　　　Given under my hand and seal of office this 30 day of January , 2020.

　　　　　　　　　　　　_____
　　　　　　　　　　　　Notary Public, State of Texas

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 6**

APP092

**Assignee:**
Texas Republic Bank, N.A.

By: _____
(Signature)

_____
(Printed Name and Title)

THE STATE OF TEXAS      §
                        §
COUNTY OF Collin        §

Before me _Shelia J Emery_ (Notary printed name) on this day personally appeared _David Baty_, _President & CEO_ of Texas Republic Bank, N.A., known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he or she executed the same for the purposes and consideration therein expressed and in the capacity stated.

Given under my hand and seal of office this _31_ day of _January_, 2020.

_____
Notary Public, State of Texas

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 7**

**Acknowledgment, Consent and Approval of the Public Entities**

The undersigned Public Entities acknowledges, consents to and approves of the foregoing assignment of the Contracts and the Proceeds; however, nothing contained herein shall impair or alter the rights of the Public Entities set forth in the Contracts, including the Public Entities' right to (i) withhold payment in the event the performance criteria set forth in the Contracts is not complied with, or (ii) terminate the Contracts in accordance with the terms and provisions of the Contracts.

Acknowledged By:
City of Frisco, Texas, a Texas home rule municipality

By: _____
George Purefoy, City Manager

THE STATE OF TEXAS    §
                      §
COUNTY OF Collin      §

Before me __Holly McCall__ (Notary printed name) on this day personally appeared George Purefoy, City Manager of City of Frisco, Texas, a Texas home rule municipality, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity stated.

Given under my hand and seal of office this 30th day of January, 2020.

HOLLY MCCALL
Notary Public, State of Texas
Comm. Expires 12-21-2020
Notary ID 130940259

_____
Notary Public, State of Texas

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 8**

APP094

Frisco Economic Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act

By: _____

Ron K. Patterson, President

THE STATE OF TEXAS       §
                                §
COUNTY OF Collin      §

Before me __Holly McCall__ (Notary printed name) on this day personally appeared Ron K. Patterson, President of Frisco Economic Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity stated.

Given under my hand and seal of office this 30th day of January, 2020.

_____

Notary Public, State of Texas

HOLLY MCCALL
Notary Public, State of Texas
Comm. Expires 12-21-2020
Notary ID 130940259

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 9**

APP095

Frisco Community Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act

By: _George Purefoy_____
     (Signature)

_George Purefoy, Operations Mgr._
     (Printed Name and Title)

THE STATE OF TEXAS     §
                       §
COUNTY OF Collin       §

Before me __Holly McCall_____ (Notary printed name) on this day personally appeared __George Purefoy_____, __Operations Manager_____ of Frisco Community Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity stated.

Given under my hand and seal of office this _30th_ day of _January_, 2020.

HOLLY MCCALL
Notary Public, State of Texas
Comm. Expires 12-21-2020
Notary ID 130940259

_Holly McCall_____
Notary Public, State of Texas

5556.236assignment of contract
**Assignment of Contract Rights and Proceeds - Page 10**

APP096

# EXHIBIT I

APP097

TRB Loan #

**THIS INSTRUMENT CONTAINS INDEMNIFICATION PROVISIONS AND
PROVISIONS LIMITING THE LENDER'S LIABILITY FOR NEGLIGENCE**

**HAZARDOUS MATERIALS INDEMNITY AGREEMENT**

THIS HAZARDOUS MATERIALS INDEMNITY AGREEMENT (the "Agreement") is entered into effective as of January 30, 2020, by FHC ACQUISITION, LLC, a Texas limited liability company (the "Borrower"), and TIMOTHY BARTON (the "Guarantor") (Borrower and Guarantor are also referred to herein as the "Indemnitor"), for the benefit of TEXAS REPUBLIC BANK, N.A. ("Lender").

**RECITALS**

A.      Concurrently with the execution of this Agreement, Borrower has executed and delivered to Lender that certain Loan Agreement (the "Loan Agreement") of even date herewith executed by and between Borrower and Lender, and that certain Promissory Note (the "Note") in the amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00) to evidence the loan (the "Loan") made by Lender to Borrower.

B.      The Loan is secured in part by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith given by Borrower to the Lender (as such has been or may hereafter be amended, supplemented, modified, renewed, extended and/or restated from time to time, herein called the "Mortgage"). The Mortgage secures Borrower's interest in and to the "Mortgaged Property" described in the Mortgage (the "Mortgaged Property").

C.      Lender has required, as a condition of funding the Loan, that Indemnitor indemnify and hold Lender harmless against and from certain obligations for which Lender may incur liability, by reason of the threat or presence of any hazardous substance at or near the Mortgaged Property.

D.      Indemnitor is the Borrower and/or the owner of a direct or indirect interest in Borrower, and Indemnitor will directly benefit from Lender's making the Loan to Borrower.

NOW, THEREFORE, in consideration of the premises, Ten and No/100 Dollars ($10.00), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Indemnitor, intending to be legally bound, hereby agrees as follows:

1.      **Certain Definitions.** As used herein, the following terms have the meanings indicated:

1.1      "Environmental Laws" means any federal, state or local law (whether imposed by statute, ordinance, rule, regulation, administrative or judicial order, or common law), now or hereafter enacted, governing health, safety, industrial hygiene, the

5556.236env
**Hazardous Materials Indemnity Agreement – Page 1**

APP098

environment or natural resources, or Hazardous Materials, including, without limitation, such laws governing or regulating (a) the use, generation, storage, removal, recovery, treatment, handling, transport, disposal, control, release discharge of, or exposure to, Hazardous Materials, (b) the transfer of property upon a negative declaration or other approval of a governmental authority of the environmental condition of such property, or (c) requiring notification or disclosure of releases of Hazardous Materials or other environmental conditions whether or not in connection with a transfer of title to or interest in property.

1.2     "Hazardous Materials" means (a) petroleum or chemical products, whether in liquid, solid, or gaseous form, or any fraction or by-product thereof, (b) asbestos or asbestos-containing materials, (c) polychlorinated biphenyls (PCBs), (d) radon gas, (e) underground storage tanks, (f) any explosive or radioactive substances, (g) lead or lead-based paint, or (h) any other substance, material, waste or mixture which is or shall be listed, defined, or otherwise determined by any governmental authority to be hazardous, toxic, dangerous or otherwise regulated, controlled or giving rise to liability under any Environmental Laws.

1.3     "Site Assessment" means an environmental engineering report for the Mortgaged Property prepared by an engineer engaged by Borrower and approved by Lender, and in a manner satisfactory to Lender, based upon an investigation relating to and making appropriate inquiries concerning the existence of Hazardous Materials on or about the Mortgaged Property, and the past or present discharge, disposal, release or escape of any such substances, all consistent with ASTM Standard E1527-93 (or any successor thereto published by ASTM) and good customary and commercial practice.

Other capitalized terms used in this Agreement and not defined shall have the meanings assigned to such terms in the Loan Agreement.

2.     **Indemnity.**

2.1     ALL RISK OF LOSS ASSOCIATED WITH NON-COMPLIANCE WITH ENVIRONMENTAL LAWS, OR WITH THE PRESENCE OF ANY HAZARDOUS MATERIAL AT, UPON, WITHIN, CONTIGUOUS TO OR OTHERWISE AFFECTING THE MORTGAGED PROPERTY LIES SOLELY WITH INDEMNITOR AND THE INDEMNITOR HAS AGREED TO BEAR ALL RISKS AND COSTS ASSOCIATED WITH ANY LOSS (INCLUDING ANY LOSS IN VALUE ATTRIBUTABLE TO HAZARDOUS MATERIALS), DAMAGE OR LIABILITY THEREFROM, INCLUDING ALL COSTS OF REMOVAL OF HAZARDOUS MATERIALS OR OTHER REMEDIATION REQUIRED BY LAW. INDEMNITOR SHALL AT ALL TIMES AND DOES HEREBY INDEMNIFY, AGREE TO DEFEND AND TO HOLD LENDER AND ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, LIABILITIES, DAMAGES, CLAIMS, COSTS AND EXPENSES (INCLUDING REASONABLE

APP099

COSTS OF DEFENSE AND CONSULTANT FEES, INVESTIGATION AND LABORATORY FEES, COURT COSTS, AND OTHER LITIGATION EXPENSES) OF ANY NATURE WHATSOEVER INCURRED BY LENDER (HEREINAFTER COLLECTIVELY REFERRED TO AS "LIABILITIES"), WHETHER AS MORTGAGEE UNDER THE MORTGAGE, AS A MORTGAGEE IN POSSESSION, OR AS SUCCESSOR-IN-INTEREST TO BORROWER BY FORECLOSURE DEED OR DEED-IN-LIEU OF FORECLOSURE, AND WHETHER BASED IN CONTRACT, TORT, IMPLIED OR EXPRESS WARRANTY, STRICT LIABILITY, CRIMINAL OR CIVIL STATUTE OR COMMON LAW, INCLUDING THOSE LIABILITIES ARISING FROM THE JOINT, CONCURRENT OR COMPARATIVE NEGLIGENCE OF LENDER, AND INCLUDING ANY LIABILITIES ARISING OUT OF OR ASSOCIATED, IN ANY WAY, WITH:  (A) THE NON-COMPLIANCE OF THE BORROWER OR THE MORTGAGED PROPERTY WITH ENVIRONMENTAL LAWS; (B) ANY DISCHARGE OR RELEASE OF HAZARDOUS MATERIALS, THE THREAT OF DISCHARGE OR RELEASE OF ANY HAZARDOUS MATERIALS OR THE STORAGE OR PRESENCE OF ANY HAZARDOUS MATERIALS AFFECTING THE MORTGAGED PROPERTY OR ANY CONTIGUOUS REAL ESTATE; (C) ANY PERSONAL INJURY (INCLUDING WRONGFUL DEATH) OR PROPERTY DAMAGE (REAL OR PERSONAL) ARISING OUT OF OR RELATED TO HAZARDOUS MATERIALS; (D) ANY LAWSUIT BROUGHT OR THREATENED, SETTLEMENT REACHED, OR GOVERNMENT ORDER RELATING TO SUCH HAZARDOUS MATERIALS; (E) A BREACH OF ANY REPRESENTATION, WARRANTY OR COVENANT CONTAINED IN ANY OF THE LOAN DOCUMENTS RELATING TO HAZARDOUS MATERIALS OR ENVIRONMENTAL LAWS; OR (F) THE IMPOSITION OF ANY ENVIRONMENTAL LIEN ENCUMBERING THE MORTGAGED PROPERTY. INDEMNITOR'S OBLIGATIONS UNDER THIS AGREEMENT SHALL ARISE UPON THE DISCOVERY OF THE PRESENCE OF ANY HAZARDOUS MATERIAL, WHETHER OR NOT THE ENVIRONMENTAL PROTECTION AGENCY, ANY OTHER FEDERAL AGENCY OR ANY STATE OR LOCAL ENVIRONMENTAL AGENCY HAS TAKEN OR THREATENED ANY ACTION IN CONNECTION WITH THE PRESENCE OF ANY HAZARDOUS MATERIALS AND WHETHER OR NOT THE EXISTENCE OF ANY SUCH HAZARDOUS MATERIAL OR POTENTIAL LIABILITY ON ACCOUNT THEREOF IS DISCLOSED IN THE SITE ASSESSMENT, AND SHALL CONTINUE NOTWITHSTANDING THE REPAYMENT OF THE LOAN OR ANY TRANSFER OR SALE OF ANY RIGHT, TITLE AND INTEREST IN THE MORTGAGED PROPERTY (BY FORECLOSURE, DEED IN LIEU OF FORECLOSURE OR OTHERWISE).

2.2     Indemnitor hereby acknowledges and agrees that Indemnitor shall be personally liable for any and all obligations arising under this Agreement even if the amount of liability incurred exceeds the amount of the Loan. All of the representations, warranties, covenants and indemnities of this Agreement shall survive the repayment of

5556.236env
**Hazardous Materials Indemnity Agreement – Page 3**

the Note and/or the release of the lien of the Mortgage from the Mortgaged Property, and shall survive the transfer of any or all right, title and interest in and to the Mortgaged Property by Borrower to any party.  Indemnitor hereby acknowledges and agrees that, notwithstanding anything contained in any of the Loan Documents (as such term is defined in the Mortgage) to the contrary, this Agreement and the obligations of Indemnitor under this Agreement shall not be secured by the Mortgage or any other Loan Documents or any other mortgage, deed of trust or other security document securing any obligations of Borrower in connection with the Loan.

2.3    Notwithstanding any provision in this Agreement or elsewhere in the Loan Documents, or any rights or remedies granted by the Loan Documents, Lender does not waive and expressly reserves all rights and benefits now or hereafter accruing to Lender under the "security interest" or "secured creditor" exception under applicable Environmental Laws, as the same may be amended.  No action taken by Lender pursuant to the Loan Documents shall be deemed or construed to be a waiver or relinquishment of any such rights or benefits under the "security interest exception."

2.4    A separate right of action hereunder shall arise each time Lender acquires knowledge of any violation of any of the terms hereof. Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time.  No action hereunder shall preclude any subsequent action, and Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

**3.    Reliance.**  Indemnitor recognizes and acknowledges that in making the Loan and accepting the Mortgage and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Loan Documents without any obligation to investigate the Mortgaged Property and notwithstanding any investigations of the Mortgaged Property by Lender; that such reliance exists on the part of Lender prior hereto; that such warranties and representations are a material inducement to Lender in making the Loan and accepting the Mortgage and other Loan Documents; and that Lender would not be willing to make the Loan and accept the Mortgage in the absence of such warranties and representations.

**4.    Unimpaired Liability.**  The liability of Indemnitor under this Agreement shall in no way be limited or impaired by, and Indemnitor hereby consents to and agrees to be bound by, any amendment or modification of the provisions of the Loan Agreement, the Note, the Mortgage or any other Loan Documents. In addition, the liability of Indemnitor under this Agreement shall in no way be limited or impaired by (a) the unenforceability of the Loan Agreement, the Note, Mortgage or any other Loan Document against Borrower and/or any guarantor; (b) any release or other action or inaction taken by Lender with respect to the collateral, the Loan, the Borrower and/or any guarantor, whether or not the same may impair or destroy any subrogation rights of the Indemnitor, or constitute a legal or equitable discharge of any surety or indemnitor; (c) the existence of any collateral or other security for the Loan, and any requirement that Lender pursue any of such collateral or other security, or pursue any

5556.236env
**Hazardous Materials Indemnity Agreement – Page 4**

APP101

remedies it may have against Borrower and/or any guarantor; (d) any requirement that Lender provide notice to or obtain Indemnitor's consent to any modification, increase, extension or other amendment of the Loan; (e) any right of subrogation (until payment in full of the Loan and the expiration of any applicable preference period and statute of limitations for fraudulent conveyance claims); (f) any defense based on any statute of limitations; (g) any payment by Borrower to Lender if such payment is held to be a preference or fraudulent conveyance under bankruptcy laws or Lender is otherwise required to refund such payment to Borrower or any other party; (h) any voluntary or involuntary bankruptcy, receivership, insolvency, reorganization or similar proceeding affecting Borrower or any of its assets; (i) any extensions of time for performance required by the Note, the Mortgage, the Loan Agreement or any of the other Loan Documents; (j) any sale or transfer of all or part of the Mortgaged Property; (k) the accuracy or inaccuracy of the representations and warranties made by the Borrower under the Note, the Mortgage, the Loan Agreement or any of the other Loan Documents or herein; (l) the release of the Borrower or any other person from performance or observance of any of the agreements, covenants, terms or condition contained in the Note, Mortgage, the Loan Agreement or any of the other Loan Documents by operation of law, Borrower's voluntary act, or otherwise; (m) the release or substitution in whole or in part of any security for the Note; or (n) Lender's failure to record the Mortgage or file any UCC financing statements (or Lender's improper recording or filing of any thereof) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Note; and, in any such case, whether with or without notice to Indemnitor and with or without consideration.

5.      **Enforcement**.   Lender may enforce the obligations of the Indemnitor without first resorting to or exhausting any security or collateral or without first having recourse to the Note, the Mortgage, or any other Loan Document or any of the Mortgaged Property, through foreclosure proceedings or otherwise; provided, however, that nothing herein shall inhibit or prevent Lender from suing on the Note, foreclosing, or exercising any power of sale under, the Mortgage, or exercising any other rights and remedies it may have under the Loan Documents. It is not necessary for an Event of Default (as such term is defined in the Loan Agreement) to have occurred for Lender to exercise its rights pursuant to this Agreement.

6.      **Indemnitors' Representations and Warranties**.   Indemnitor hereby represents and warrants that: (a) if Indemnitor is a corporation, partnership or limited liability company, it has the full corporate/partnership/company power and authority to execute and deliver this Agreement and to perform its obligations hereunder; the execution, delivery and performance of this Agreement by Indemnitor has been duly and validly authorized; and all requisite corporate/partnership/company action has been taken by Indemnitor to make this Agreement valid and binding upon Indemnitor, enforceable in accordance with its terms; (b) if Indemnitor is a corporation, a partnership or a limited liability company, its execution of, and compliance with, this Agreement is in the ordinary course of business of that Indemnitor and will not result in the breach of any term or provision of the charter, bylaws, partnership or trust agreement, articles of organization, operating agreement or other governing instrument of that Indemnitor or result in the breach of any term or provision of, or conflict with or constitute a default under or result in the acceleration of any obligation under any agreement, indenture or loan or credit agreement or other instrument to which the Indemnitor or the Mortgaged Property is subject, or result in the

5556.236env
**Hazardous Materials Indemnity Agreement – Page 5**

violation of any law, rule, regulation, order, judgment or decree to which the Indemnitor or the Mortgaged Property is subject; (c) it does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement; (d) no approval, authorization, order, license or consent of, or registration or filing with, any governmental authority or other person, and no approval, authorization or consent of any other party is required (or if required, the same has been obtained) in connection with this Agreement; and (e) this Agreement constitutes a valid, legal and binding obligation of Indemnitor, enforceable against it in accordance with the terms hereof.

7.    **Interest.** In the event that Lender incurs any obligations, costs or expenses under this Agreement, Indemnitor shall pay Lender immediately on demand, and if such payment is not received within ten (10) days of Lender's demand, interest on such amount shall, after the expiration of the ten (10) day period, accrue at the Default Rate (as such term is defined in the Note) until such amount, plus interest, is paid in full.

8.    **Joint and Several Liability.** In the event that this Agreement is executed by more than one party as Indemnitor, the liability of such parties is joint and several. In addition, Indemnitor's obligations hereunder are joint and several with any other person now or hereafter obligated under the Loan Documents and are independent of any obligations of Indemnitor under the Loan Documents. A separate action or actions may be brought and prosecuted against Indemnitor, whether or not action is brought against any other person or whether or not any other person is joined in such action or actions.

9.    **Notices.** Any notice, consent or other communication required or permitted to be given under any of the Loan Documents to Lender or  Indemnitor must be in writing and delivered in person or mailed by registered or certified mail, return receipt requested, postage prepaid, as follows:

If to Lender:            Texas Republic Bank, N.A.
                         Attention: David Baty
                         2595 Preston Road, Suite 300
                         Frisco, Texas 75034

If to Indemnitor:        FHC Acquisition, LLC, a Texas limited liability company,
                         and Timothy Barton
                         1755 Wittington Place, Suite 340
                         Dallas, Texas 75234

or such other address as shall be set forth in a notice from the appropriate party given in compliance with this Section 9. Any such notice, consent or other communication shall be deemed given when delivered in person or, if mailed, when duly deposited in the United States mail.

5556.236env
**Hazardous Materials Indemnity Agreement – Page 6**

10.    **Waivers.**  No course of dealing on the part of Lender, its officers, employees, consultants or agents, nor any failure or delay by Lender with respect to exercising any right, power or privilege of Lender hereunder, shall operate as a waiver thereof.

11.    **Severability.**  If any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement in whole or in part, then such clause or provision shall be held for naught as though not contained herein, and the remainder of this Agreement shall remain operative and in full force and effect.

12.    **Successors and Assigns.**  This Agreement shall be binding upon Indemnitor's successors, assigns, heirs, personal representatives and estate and shall inure to the benefit of Lender and its successors and assigns.

13.    **Controlling Laws.**  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAWS OF THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED.

14.    **WAIVER OF JURY TRIAL.**  TO THE MAXIMUM EXTENT PERMITTED BY LAW, INDEMNITOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS HEREUNDER OR IN ANY WAY RELATING TO THE LOAN OR THE MORTGAGED PROPERTY (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).   THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN.

15.    **Counterparts.**  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

[REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Indemnitor has executed this Hazardous Materials Indemnity Agreement as of the date first above written.

INDEMNITOR:
FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
    By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager

    By:_____
        Timothy Barton, President

_____
Timothy Barton

5556.236env
**Hazardous Materials Indemnity Agreement – Page 8**

APP105

# EXHIBIT J

APP106

TRB Loan #

## CLOSING CERTIFICATE

The undersigned, **FHC Acquisition, LLC**, a Texas limited liability company (the "Borrower"), in consideration of the commitment of **Texas Republic Bank, N.A.** ("Lender"), to make to Borrower a loan (the "Loan") pursuant to the terms and conditions of that certain Loan Agreement (the "Loan Agreement") of even date herewith, executed by and between Borrower and Lender, and evidenced by a Promissory Note (the "Note") of even date herewith, executed by Borrower, payable to the order of Lender, in the original principal amount of Two Million Nine Hundred Sixty-Five Thousand Seven Hundred Eighty-Three and No/100 Dollars ($2,965,783.00) and for the express purpose of inducing Lender to advance the proceeds of the Loan and with full and complete knowledge that if it were not for the truth and accuracy of the statements and agreements set forth herein, such funds would not be advanced, warrants, certifies and represents to and agrees with Lender as follows:

1.    **Previous Warranties Still True.**    All warranties, representations and certifications made and all information and materials submitted or caused to be submitted to Lender in connection with the Loan are true and correct, and there have been no material adverse changes in or conditions affecting any of such warranties, representations, certifications, materials or information prior to the date hereof.

2.    **Execution of Loan Documents Authorized.**  The execution and delivery of the Note and any other document evidencing, securing or pertaining to the Loan, and all other documents executed or delivered by Timothy Barton, as President of Dallas Real Estate Investors, LLC, a Delaware limited liability company, as Manager of Dallas Real Estate Lenders, LLC, a Delaware limited liability company, as Managing Member of Borrower in connection with the Loan (collectively, the "Loan Documents") have been duly authorized or approved by the members and managers of Borrower and when executed and delivered by Timothy Barton, as President of Dallas Real Estate Investors, LLC, a Delaware limited liability company, as Manager of Dallas Real Estate Lenders, LLC, a Delaware limited liability company, as Managing Member of Borrower or when caused to be executed and delivered on behalf of Borrower, will constitute the valid and binding obligations of Borrower, enforceable in accordance with their respective terms and the payment or performance thereof will be subject to no offsets, claims or defenses.

3.    **No Litigation.**  No actions, suits or proceedings are pending or, threatened against Borrower or the property located in the City of Frisco, Collin County, Texas, and more particularly described in the Loan Agreement (the "Property").

4.    **No Violation of Other Agreement.**  The execution and delivery of the Loan Documents will not violate or contravene in any way any indenture, agreement or other instrument to which Borrower is a party or by which its properties may be bound, or be in conflict with, result in a breach of or constitute (with due notice and/or lapse of time) a default under any such indenture, agreement or other instrument, or result in the creation or imposition

5556.236closingcert
**Closing Certificate – Page 1**

APP107

of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Borrower, and no action or approval with respect thereto by any third person is required.

5.    **Accuracy of Financial Statements.**   The financial statements of Borrower delivered to Lender were prepared in conformity with generally acceptable accounting principles applied on a basis consistent with that of previous such statements and truly disclosed its financial position (including all contingent liabilities) as of the date thereof, and there has been no material adverse change in its financial position subsequent to the date of the most recent financial statements delivered to Lender.

6.    **Brokerage Commissions.**   No brokerage fees or commissions are payable in connection with the Loan to any person and/or entity claiming by, through, or under Borrower.

7.    **No Homestead.**   The Property does not and will not constitute the residential or business homestead of any guarantor or co-maker of the Loan.

8.    **Condemnation.**   Borrower has not received any notice from any person and/or entity with respect to any actual or threatened taking of the Property or any portion thereof, for any public or quasi-public purpose by the exercise of the right of condemnation or eminent domain.

9.    **Taxes.**   All federal, state, and other tax returns of Borrower required to be filed have been filed, and all taxes imposed upon Borrower which are due and payable have been paid, and no tax liens have been filed against Borrower or the Property.

10.    **Laws, Ordinances, and Regulations.**   Neither the Property nor any existing or proposed uses of the Property violates or will violate any existing applicable platting and subdivision, building, environmental protection, or other ordinances, laws, or regulations of any kind or any covenants or restrictions of record.  There are no restrictions, covenants, agreements, or conditions which would prohibit the Property to be developed for any and all proposed uses which have not been previously approved by Lender.   There are no petitions, actions, or proceedings pending or threatened to revoke, rescind, alter, or declare invalid any laws, ordinances, regulations, permits, certificates, or agreements for or relating to the Property.

11.    **Access.**   The Property has rights and access to public streets and roads sufficient to permit the Property to be utilized fully in accordance with its proposed uses.

12.    **Default.**   On the date hereof, neither any Event of Default (as such term is defined in the Loan Agreement) nor any event which with notice and/or lapse of time could constitute an Event of Default has occurred and is continuing.

13.    **No Commencement of Construction.**   Prior to the recordation of the Mortgage (as defined in the Loan Agreement), no work of any kind (including the destruction or removal of any existing improvements, site work, clearing, grubbing, draining, or fencing of the Property) has been commenced or has been performed on the Property, no equipment or material has been

5556.236closingcert
**Closing Certificate – Page 2**

APP108

delivered to or upon the Property whatsoever, and no contract (or memorandum or affidavit thereof) for the supplying of labor, materials, or services for the construction of any improvements on the Property has been recorded in the mechanic's lien or other appropriate records in the county where the Property is located.

14. **Controlling Laws.** THIS CERTIFICATE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.

EXECUTED and delivered effective as of 30th day of January, 2020.

> FHC Acquisition, LLC, a Texas limited liability company
> By: Dallas Real Estate Lenders, LLC, a Delaware limited liability company, its Managing Member
> > By: Dallas Real Estate Investors, LLC, a Delaware limited liability company, its Manager
>
> By:_____
> Timothy Barton, President

STATE OF TEXAS §
§
COUNTY OF Dallas §

This instrument was acknowledged before me this 30 day of January, 2020, by Timothy Barton, President of Dallas Real Estate Investors, LLC, a Delaware limited liability company, as Manager of Dallas Real Estate Lenders, LLC, a Delaware limited liability company, as Managing Member of FHC Acquisition, LLC, a Texas limited liability company, on behalf of such limited liability companies.

_____
Notary Public

_____
Bella D Khusal
Printed name of Notary

My Commission Expires:
09|24|2022



Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

5556.236closingcert
**Closing Certificate – Page 3**

APP109

**EXHIBIT "A"**

**Company Agreement**

[See Attached.]

5556.236CompanyCert
**Company Certificate – Page 5**

# EXHIBIT K

APP111

20220406000553950   04/06/2022 09:30:15 AM MO  1/7

#49799

Loan #49799

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### Loan Modification Agreement
*(Third Modification)*

This **Loan Modification Agreement** *(Third Modification)* (the "Modification"), is dated to be effective as of January 30, 2022, and is executed by and between **FHC Acquisition, LLC**, a Texas limited liability company (hereinafter referred to as the "Borrower"); and **Timothy Barton** (the "Guarantor"); and **Texas Republic Bank, N.A.** (hereinafter referred to as the "Lender").

### Recitals:

A.      Borrower and Lender have entered into that certain Loan Agreement dated January 30, 2020, (the "Loan Agreement") pertaining to that certain loan from Lender to Borrower in the principal amount of $2,965,783.00 (the "Loan").

B.      The Loan is evidenced by that certain Promissory Note (the "Note"), dated January 30, 2020, in the original principal sum of $2,965,783.00, signed by Borrower and payable to the order of Lender.

C.      The Note is guaranteed by the unlimited unconditional guaranty of the Guarantor evidenced by that certain Guaranty (the "Guaranty") of even date therewith executed by the Guarantor.

D.      The Note is secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by Borrower, to David L. Baty, Trustee for the benefit of Lender, filed under **Document Number20200203000144950** of the Collin County Real Property Records (the "Deed of Trust") and covering the real property situated in the City of Frisco, Collin County, Texas, and being more particularly described as **Lot 13, Block A, The Gate, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume 2019, Page 275, Plat Records, Collin County, Texas** (the "Property").

E.      The Note is further secured by an Assignment of Contract Rights and Proceeds executed by Borrower for the benefit of Lender and consented to by the City of Frisco, Texas, a municipal corporation of the State of Texas and a home rule municipality, Frisco Economic Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act, and  Frisco Community Development Corporation, a Texas non-profit corporation organized and existing under Chapter 501 of the Texas Local Government Code, known as the Development Corporation Act  (collectively, the "Public Entities")., and covering the performance agreements described therein (the "Assignment of Contracts").

F.      The Loan was renewed, extended, and modified pursuant to that certain Loan Modification Agreement *(First Modification)* dated January 30, 2021, executed by Borrower, Guarantor, and Lender, and recorded under **Document Number 20210406000684310** of the Collin County Real Property Records (the "First Modification").

18182.103lma
**Loan Modification Agreement - Page 1**

APP112

Loan #49799

G.       The Loan was renewed, extended, and modified pursuant to that certain Loan Modification Agreement (*Second Modification*) dated July 30, 2021, executed by Borrower, Guarantor, and Lender, and recorded under **Document Number 20211012002083340** of the Collin County Real Property Records (the "Second Modification").

H.       The Loan Agreement, Note, Guaranty, Deed of Trust, Assignment of Contracts, First Modification, Second Modification, and all other documents, assignments and instruments evidencing, securing or pertaining to the indebtedness evidenced by the Note, or executed in connection with the Loan are hereinafter collectively referred to in this Modification as the "Loan Documents."

I.       Borrower and Guarantor have requested Lender to (i) extend the maturity date of the Note from January 30, 2022 to July 31, 2022; and (ii) modify the payment terms of the Note as more particularly set forth herein to cover the extended term of the Note (collectively, the "Renewal Request").

J.       As an accommodation to Borrower and Guarantor, Lender has agreed to the Renewal Request, provided, however, that, among other things (i) Borrower pays Lender a renewal fee in the amount of $14,828.92 and all attorneys' fees and costs incurred by Lender in connection with this Modification, (ii) Borrower deposits an additional $173,447.42 into the Reserve Account (as that term is defined in the Loan Agreement), (iii) Borrower causes the Public Entities to execute and deliver to Lender an acknowledgment agreement in form and substance satisfactory to Lender wherein the Public Entities acknowledge that the Contracts (as that term is defined in the Assignment of Contracts) are in full force and effect; and (iv) Borrower and Guarantor enter into this Modification to reflect the understandings of the parties in connection with such Renewal Request.

NOW, THEREFORE, in consideration of the premises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties hereto, Borrower, Guarantor, and Lender agree as follows:

## Article 1.
## Amendments

1.1.     **Modification of Payment Terms.**    The payment terms of the Note shall be amended to (i) extend the maturity date of the Note from January 30, 2022 to July 31, 2022; and (ii) modify the payment terms of the Loan as more particularly set forth herein to cover the extended term.   Accordingly, the applicable provision concerning repayment of principal and interest as set forth in the Note is hereby modified to read as follows:

"1.     **Payments of Interest and Principal**. The outstanding principal balance hereof and accrued but unpaid interest shall be due and payable as follows:

A.      Accrued but unpaid interest only shall be due and payable in monthly installments, commencing February 28, 2022, with like installments of accrued but unpaid interest only due and payable on the 30th day of each successive month thereafter, through and including June 30, 2022; and

B.      The entire outstanding principal balance of this Promissory Note, together with all accrued but unpaid interest shall be due and payable on July 31,

18182.103lma
**Loan Modification Agreement – Page 2**

APP113

Loan #49799

2022. All payments shall be applied first to accrued but unpaid interest and then to principal."

1.2.    **Renewal Fees; Principal Balance.**    Borrower acknowledges and agrees that, in connection with this Modification, Borrower shall pay to Lender upon execution of this Modification (i) a renewal fee in the amount of $14,828.92, (ii) a recording fee to record this Modification in the Real Property Records of Collin County, Texas in the amount of $50.00, and (iii) attorneys' fees in the amount of $1,000.00 (collectively, the "Renewal Fees"). Borrower and Guarantors authorize and instruct Lender to advance funds under the Loan to pay the Renewal Fees. Accordingly, As of the date of execution of this Modification, the outstanding principal balance of the Loan is $2,981,661.92.

1.3.    **Reserve Account.**    Simultaneous with the execution of this Modification, Borrower shall deposit its own funds in cash in the amount of $173,447.42 into the Reserve Account (as that term is defined in the Loan Agreement). Borrower and Guarantor agree that all funds on deposit in the Reserve Account (as that term is defined in the Loan Agreement) are subject to the terms and provisions of Section 2.12 of the Loan Agreement and shall be used to service the interest accrual on the Note and ad valorem taxes assessed against the Property, as more particularly set forth in Section 2.12 of the Loan Agreement.

1.4.    **Continuation of Pre-Maturity Interest Rate.**    The rate at which interest accrues on the outstanding principal balance of the Note prior to maturity shall continue to accrue at the fixed rate of seven and one-half percent (7.5%) per annum, based on a 360 day year and the actual number of days elapsed, as set forth in the Note. All matured past due amounts owing under the Note shall bear interest at the "Maximum Rate" as that term is defined in the Note.

1.5    **Acknowledgment Agreement**    Simultaneous with the execution of this Modification, Borrower shall cause the Public Entities to execute and deliver to Lender an acknowledgment agreement in form and substance satisfactory to Lender wherein the Public Entities acknowledge and agree, among other things, that the Contracts (as that term is defined in the Assignment of Contracts) are in full force and effect.

### Article 2.
### Ratifications, Representations, Warranties and Covenants

2.1.    **Ratifications.**    Except as expressly modified and superseded by this Modification, all other terms and provisions of the Loan Agreement, Note, Guaranty, Deed of Trust, Assignment of Contracts, First Modification, Second Modification, and the other Loan Documents are ratified and confirmed and shall continue in full force and effect and unchanged. Borrower, Guarantor, and Lender agree that the Loan Agreement, Note, Guaranty, Deed of Trust, Assignment of Contracts, First Modification, Second Modification, and the other Loan Documents shall continue to be legal, valid, binding and enforceable in accordance with their terms. Without limiting the generality of the foregoing sentence, Borrower and Guarantor hereby acknowledge and agree that (i) any and all rights, titles, interests and liens securing the repayment of the Loan are hereby reaffirmed, renewed and extended, including, without limitation, the rights, titles, interests and liens created in the Deed of Trust, and (ii) the Guaranty executed by the Guarantor guaranteeing the payment of the Loan shall remain in full force and effect and shall continue to guarantee the payment of the Note as modified hereby.

2.2.    **Representations and Warranties.**    Borrower and Guarantor hereby represent and warrant to Lender that (i) the execution, delivery and performance of this Modification and the Loan Documents have been authorized by all requisite action on the part of Borrower and Guarantor, (ii) the representations and

18182.103lma
**Loan Modification Agreement – Page 3**

APP114

Loan #49799

warranties contained in the Loan Documents are true and correct on and as of the date hereof as though made on and as of the date hereof, (iii) no Event of Default as defined in any of the Loan Documents has occurred and is continuing and no event or condition has occurred that with the giving of notice or lapse of time or both would be an Event of Default as defined in any of the Loan Documents, and (iv) Borrower and Guarantor are in full compliance with all covenants and agreements contained in the Loan Documents.

2.3.    **Federal Small Business Certification.**    Borrower and Guarantor represent, warrant and certify to Lender, that none of the principals of Borrower or Guarantor or their affiliates have been convicted of, or pleaded *nolo contender* to, any offense covered by 42 U.S.C. §16911(7). For purposes of this subsection, the term "principal" means: (a) with respect to a sole proprietorship, the proprietor; (b) with respect to a partnership, each managing partner and each partner who is a natural person and holds a twenty percent (20.00%) or more ownership interest in the partnership; and (c) with respect to a corporation, limited liability company, association or development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of twenty percent (20.00%) or more of the ownership stock or stock equivalent of the entity.

### Article 3.
### Miscellaneous

3.1.    **Survival of Representations and Warranties.**    All representations and warranties made in this Modification or any Loan Document, including any Loan Document furnished in connection with this Modification, shall survive the execution and delivery of this Modification and the other Loan Documents, and no investigation by Lender or any closing shall affect the representations and warranties or the right of Lender to rely upon them.

3.2.    **Expenses of Lender.**    Borrower agrees to: (i) pay to Lender all fees and expenses, including attorney's fees, which Lender has incurred or will incur in connection with the consummation of the matters as set forth herein; (ii) pay to Lender all interest and other fees which have accrued under the Note up to and including the effective date hereof, if any; and (iii) upon request from Lender, execute and deliver such other instruments and documents as may be requested by the Lender to evidence the modification herein embodied, and to carry forward or perfect the liens and interests securing the Note. Lender is authorized to make advances under the Note to pay for these costs and fees.

3.3.    **Severability.**    Any provision of this Modification held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Modification and the effect thereof shall be confined to the provision so held to be invalid or unenforceable.

3.4.    **Applicable Law.**    This Modification and all other Loan Documents executed pursuant hereto shall be deemed to have been made and to be performable in **City of Frisco, Collin County, Texas**, and shall be governed by and construed in accordance with the laws of the State of Texas.

3.5.    **Successors and Assigns.**    This Modification is binding upon and shall inure to the benefit of Lender, Borrower and Guarantor and their respective successors and assigns, except Borrower and Guarantor may not assign or transfer any of their rights or obligations hereunder without the prior written consent of Lender.

18182.103lma
**Loan Modification Agreement - Page 4**

Loan #49799

**3.6.    Counterparts.** This Modification may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original, but all of which when taken together shall constitute one and the same instrument.

**3.7.    Effect of Waiver.** No consent or waiver, express or implied, by Lender to or for any breach of or deviation from any covenant, condition or duty by Borrower or Guarantor shall be deemed a waiver to or for any other breach of the same or any other covenant, condition or duty. Lender expressly reserves all rights and remedies provided for under the Loan Documents.

**3.8.    Headings.** The headings, captions and arrangements used in this Modification are for convenience only and shall not affect the interpretation of this Modification.

**3.9.    Release of Lender.** As a material inducement for Lender to enter into this Modification, Borrower and Guarantor and their respective successors and assigns forever jointly and severally release, acquit and discharge Lender and its shareholders, officers, directors, affiliates, attorneys, agents and representatives (collectively "Lender et al") of and from any and all liabilities, claims, actions, demands, and/or causes of action of whatsoever nature, whether known or unknown, whether asserted or unasserted as of the date hereof, and whether arising under or pursuant to common or statutory laws, rules or regulations (including state and/or federal law), which Borrower or Guarantor may now or hereafter have against Lender et al on account of any matter relating in any way to the Loan. Borrower and Guarantor have no offsets or defenses to the payment of the indebtedness evidenced by the Note and the other Loan Documents, or to the enforceability of the Loan Documents by Lender against Borrower and Guarantor.

**3.10.    Balloon Feature.**        Upon demand or at maturity, Borrower must repay the entire principal balance of the loan and unpaid interest then due. Lender is under no obligation to refinance the loan at that time. Borrower will, therefore, be required to make payment out of other assets that Borrower may own or Borrower will have to find a lender, which may be Lender, willing to lend Borrower the money. If Borrower refinances this loan at maturity, Borrower will have to pay some or all of the closing costs normally associated with a new loan even if Borrower obtains refinancing from Lender.

**3.11.    ENTIRE AGREEMENT.** THIS MODIFICATION, THE LOAN DOCUMENTS AND ALL OTHER INSTRUMENTS, DOCUMENTS AND AGREEMENTS EXECUTED AND DELIVERED IN CONNECTION WITH THIS MODIFICATION EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THIS MODIFICATION, AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.

[Remainder of page intentionally blank. Signature pages follow.]

18182.103lma
**Loan Modification Agreement - Page 5**

Loan #49799

Executed as of the date first above written.

**Borrower:**
FHC Acquisition, LLC, a Texas limited liability company
By: Dallas Real Estate Lenders, LLC, a Delaware limited
liability company, its Managing Member
    By: Dallas Real Estate Investors, LLC, a Delaware
    limited liability company, its Manager

    By: _____
          Timothy Barton, President

**Guarantor:**

_____
Timothy Barton

**Lender:**
Texas Republic Bank, N.A.

By: _____
    (Signature)

_____
    (Printed Name and Title)

THE STATE OF TEXAS     §
                      §
COUNTY OF Dallas     §

    Before me Bella Khusal (Notary printed name) on this day personally appeared Timothy Barton, individually and as Manager of Dallas Real Estate Investors, LLC, a Delaware limited liability company, as Manager of Dallas Real Estate Lenders, LLC, a Delaware limited liability company, as Managing Member of FHC Acquisition, LLC, a Texas limited liability company, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacities stated.

    Given under my hand and seal of office this 14 day of March, 2022.

_____
Notary Public, State of Texas

Bella D Khusal
My Commission Expires
09/24/2022
ID No 131734480

18182.103lma
**Loan Modification Agreement - Page 6**

APP117

Loan #49799

THE STATE OF TEXAS      §
             §
COUNTY OF COLLIN     §

     Before me _Shelia Emery_____ (Notary printed name) on this day personally appeared _David Baty_____, _President - CEO_ of Texas Republic Bank, N.A., known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he or she executed the same for the purposes and consideration therein expressed and in the capacity stated.

     Given under my hand and seal of office this _29_ day of _March_____, 2022.

_Shelia J Emery_

Notary Public, State of Texas

**After Recording Return to:**
Texas Republic Bank, N.A.
Attention: David Baty
2595 Preston Road
Frisco, Texas 75034

SHELIA J EMERY
Notary Public, State of Texas
My Commission Expires
May 05, 2025
NOTARY ID 70938-0

Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
04/06/2022 09:30:15 AM
$50.00 CARLA
20220406000553950



18182.103lma
**Loan Modification Agreement - Page 7**

APP118

APP119