**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | § | |
| **COMMISSION,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, et al.** | § | |
| | § | |
| *Defendants*. | § | |

**RECEIVER'S VERIFIED AND EXPEDITED MOTION**
**TO (I) RATIFY ORDERS APPOINTING APPRAISERS, APPROVING**
**APPRAISALS AND APPROVING SALE OF REAL ESTATE AS REQUIRED**
**BY 28 U.S.C. § 2001 WITH RESPECT TO THE AMERIGOLD SUITES,**
**(II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS,**
**AND (III) STAY ACCRUAL OF POST-RECEIVERSHIP DEFAULT RATE INTEREST**

Respectfully submitted,

By:  */s/ Charlene C. Koonce*

    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    C. Alan Carrillo
     Texas Bar No. 24109693
     alan@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

1

**TABLE OF CONTENTS**

I.      SUMMARY ........................................................................................................................ 1

II.     BACKGROUND ............................................................................................................... 3

        A.    The Initial Receivership Order.................................................................................. 3

        B.    Goldmark Hospitality and the Amerigold Suites........................................................ 4

        C.    The Amerigold Suites Orders ................................................................................... 5

III.    ARGUMENT..................................................................................................................... 8

        A.    The Court Has Authority to Ratify the Amerigold Suites Orders,
              *Nunc Pro Tunc*, Based on a New Receivership Order................................................. 8

        B.    The Court May—and Should—Also Authorize the Sale of the Rock Creek
              Property Free and Clear of All Liens, Stay the Accrual of Post-Receivership ...........
              Default Interest, and Reserve Payment of Any Other Asserted Fees, Costs,
              or Other Amounts for the Claims Process ................................................................. 8

        C.    Ratifying the Amerigold Suites Orders, Authorizing the Sale of the Amerigold
              Suites Free and Clear of All Liens, Staying Post-Receivership Default Interest
              on the Note, and Reserving Any Other Asserted Fees, Costs, or Other Amounts
              for the Claims Process Serve the Best Interests of the Receivership Estate............ 11

IV.     CONCLUSION................................................................................................................. 13

ii

## TABLE OF AUTHORITIES

Cases

*CFTC v. TMTE, Inc.*
   No. 3:20-CV-2910-L, 2022 WL 20210406 (N.D. Tex. May 12, 2022) ................................... 12

*David v. King*
    No. 122CV1053PTGIDD, 2023 WL 5004039 (E.D. Va. Aug. 4, 2023).................................. 8

*FDIC v. Bernstein*
   786 F. Supp. 170 (E.D.N.Y. 1992) ........................................................................................ 11

*FTC v. Consumer Defense, LLC*
   No. 2:18-CV-30 JCM (PAL), 2019 WL 266287 (D. Nev. Jan. 18, 2019)................................ 12

*Janvey v. Alguire*
   No. 3:09-CV-0724-N, 2014 WL 12654910 (N.D. Tex. July 30, 2014),
   *aff'd on other grounds*, 847 F.3d 231 (5th Cir. 2017) .................................................................. 9

*Missouri v. Jenkins*
   495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)................................................................... 8

*Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*
   140 S. Ct. 696, 206 L. Ed. 2d 1 (2020) ...................................................................................... 8

*SEC v. AmeriFirst Funding, Inc.*
   No. CIV. 3:07-CV-1188-D, 2008 WL 706846 (N.D. Tex. Mar. 11, 2008).............................. 12

*SEC v. BIC Real Est. Dev. Corp.*
   No. 116CV00344LJOJLT, 2017 WL 2463854 (E.D. Cal. June 7, 2017).................................. 9

*SEC v. Capital Cove Bancorp LLC*
   No. SACV 15-980-JLS (JCx), 2015 WL 9701154 (C.D. Cal. Oct. 13, 2015) ............... 9, 10, 11

*SEC v. Champion-Cain*
   No. 3:19-CV-1628-LAB-AHG, 2020 WL 4673397 (S.D. Cal. Aug. 12, 2020)........................ 8

*SEC v. Hardy*
   803 F.2d 1034 (9th Cir. 1986) ................................................................................................ 12

*SEC v. Safety Fin. Service, Inc.*
   674 F.2d 368 (5th Cir. 1982) .................................................................................................. 11

*SEC v. Sethi Petroleum, LLC*
   No. 4:15-CV-338, 2021 WL 2366110 (E.D. Tex. May 21, 2021),
   *appeal dismissed sub nom,* No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021)......... 12

*SEC v. Stanford Int'l Bank, Ltd.*
  927 F.3d 830 (5th Cir. 2019) ............................................................................................... 11

*SEC v. TLC Investments & Trade Co.*
  147 F. Supp. 2d 1031 (C.D. Cal. 2001) ................................................................................ 12

*Vanston Bondholders Protective Comm. v. Green*
  329 U.S. 156 (1946)............................................................................................................. 10

Cort Thomas, as the court appointed Receiver, respectfully submits this Motion for Ratification and Approval of the Amerigold Suites Orders (defined below), by which the Court appointed appraisers, approved appraisals and, following notice and hearing, approved the sale of the Amerigold Suites in reliance on the Initial Receivership Order (defined below). Dkt. Nos. 197, 202. The Receiver also requests that the Court authorize the sale "free and clear" of all liens and equitably stay accrual of all interest at any "default rate" which otherwise accrued from the date of the Initial Receivership Order.[1] **To the extent necessary to accomplish all briefing prior to vacatur of the Initial Receivership Order, the Receiver also requests that the Court order expedited briefing regarding this Motion.** In support, the Receiver respectfully shows the Court as follows:

## I.    SUMMARY

The evidence submitted in the Receiver's Declaration and Interim Report [Dkt. 308] and in support of the SEC's renewed Motion for Appointment of Receiver [Dkt. Nos. 309–10] following vacatur of the Initial Receivership Order demonstrates the flow of Investor funds into the respective entities that own properties the Court previously authorized the Receiver to sell, including Goldmark Hospitality, LLC ("Goldmark Hospitality"), the entity that owns the Amerigold Suites (defined below). As when the Court first approved the sale, the sale of the Amerigold Suites now continues to be in the best interest of the Receivership Estate. To prevent duplicative work, unnecessary expenses, further delays, and the potential harm to the Receivership Estate from the dearth of liquid assets and loss of the remaining equity in the Amerigold Suites, and assuming the Court enters a new Receivership Order and includes Goldmark Hospitality

---

[1] The Receiver will serve a copy of this motion on the lender that holds the lien on the Amerigold Suites.

within the scope of such an order, the Receiver requests that the Court ratify the Amerigold Suites Orders.

The Amerigold Suites is one of many Receivership Assets that at the time of the Receiver's appointment was (and today still is) encumbered by significant debt. As detailed in the Receiver's prior Reports, to date the Receivership Estate has been unable to service the debt on any of the realty held in the Receivership Estate, let alone any of the three properties the Court previously approved for sale, including the Amerigold Suites. Furthermore, the Amerigold Suites faces a threatened default interest rate that is over double that amount of the standard interest rate. With every passing month, accruing interest collectively for all Receivership Assets is between approximately $167,899.06 (at the standard interest rates) and $256,529.13 (at the default interest rates). As a result, if the Receivership Estate does not sell any of the real estate assets (the freeze Barton has repeatedly requested), between $2 million and $3 million in interest alone accrues annually, further reducing the assets that may ultimately be available to defrauded investors and creditors.

Specifically regarding the three properties the Court has approved for sale,[2] the monthly interest cost is between $40,791.92 (standard rates) and $91,533.66 (default rates). As of the date of the Initial Receivership Order's vacatur, and using the original agreed, approved closing dates

---

[2] The Receiver also sought and obtained the Court's appointment of appraisers, approval of appraisals, and, following a hearing that was published, the Court's approval of the sales of the Rock Creek Property (owned by SF Rock Creek LLC), and the Frisco Gate Property (owned by FHC Acquisition, LLC) (together with the Amerigold Suites Orders, the "Sales Orders"). Dkt. Nos. 99, 104, 142. Similar to the Amerigold Suites, the sales of the Rock Creek Property and Frisco Gate Property have not closed because of Barton's improper appeals of the sales and eventually the Fifth Circuit's stay of the previously approved sales. (The Receiver will seek the Court's ratification and approval of each of the Sales Orders in separate motions.) The Receiver also sought the Court's approval of certain appraisers, appraisals and sales of two of the four HUD apartment complexes, Dkt. Nos. 161 and 164, but those motions were first stayed for the Court to evaluate SPC's competing claim of ownership through a summary proceeding, and then denied without prejudice when the Fifth Circuit vacated and remanded the receivership order. Dkt. Nos. 190, 306.

for each transaction, the delayed closing of just these three properties has already cost the Receivership Estate between roughly $340,000 (standard rates) and $753,000 (default rates).[3] The Amerigold Suites alone accounts for between approximately $82,000–$190,000 of this loss. And the losses from the continued delay of closings only continue to accrue.

Therefore, through this Motion the Receiver seeks both ratification and approval of the Amerigold Suites Orders and, as explained below, authorization of the sale "free and clear" of any lien or related expenses or claims, and a stay of interest accruing at the default interest rate provided in the Note (defined below) following entry of the Initial Receivership Order.

## II.    BACKGROUND

### A.    The Initial Receivership Order

1.      On September 23, 2022, the SEC filed its Complaint against Defendant Tim Barton, and numerous other persons and entities. Dkt. 1.

2.      Among other things, the SEC alleged that between March 2017 and June 2019, Barton "raised approximately $26 million from over 100 investors . . . in unregistered, fraudulent securities offerings related to real-estate investments in Texas." Dkt. ¶ 1. The SEC further alleged that Barton "partnered with Wall . . . and Fu . . . to offer and sell investment loans issued by" the Wall Entities. *Id.* ¶ 2. More specifically, the SEC alleged that Defendants promised that funds raised by the Wall Entities would be used to purchase specific parcels of land at specific prices set forth in the offering materials, those parcels would then be developed by Barton into residential lots, and then Wall would build homes on the lots and sell them. *Id.* ¶ 3.

---

[3] The ranges of standard versus default interest rates for each of the three properties is as follows: Rock Creek Property ($97,000–$177,000); Frisco Gate Property ($161,000–$386,000); Amerigold Suites ($82,000–$190,000).

3.      Based on the SEC's Motion and supporting evidence, Dkt. Nos. 6–7, on October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities (the "Receivership Entities") controlled by Barton. Dkt. 29. When the Receiver submitted motions providing extensive evidence demonstrating Barton's control over a vast web of entities, in two subsequent orders, the Court clarified that although not specifically identified in the Initial Receivership Order, more than 130 additional entities controlled by Barton were included as Receivership Entities. Dkt. Nos. 62, 88.

**B.      Goldmark Hospitality and the Amerigold Suites**

4.      As reflected in the Receiver's Report and the SEC's evidence, Goldmark Hospitality is the record owner of a 70-unit extended-stay hotel located at 13636 Goldmark Dr. in Dallas, Texas (the "Amerigold Suites").

5.      The Amerigold Suites received Wall Investor Funds for improvements and operations. Dkt. 308 ¶ 103; Dkt. Nos. 309–10. Further, the manager of the Amerigold Suites was regularly paid by HR Sterling, LLC—another Receivership Entity used primarily to manage payroll for most other Receivership Entities and which on many occasions used Wall Investor Funds to make such payments. *Id.* Other contractors and bills were regularly paid by Receivership Entity JMJ Development as early as 2017 and booked as intercompany transactions. *Id.* If the Court enters a new Receivership Order, Goldmark Hospitality should be included within its scope as an entity that received Investor Fund.

6.      A Note with a principal balance of $2,481,098.27[4] encumbers the Amerigold Suites

---

[4] The lender, McCormick 101, has provided payoff statements listing two different principal balances. The Receiver is using the lower amount for his calculations.  If the higher amount applies, the difference of approximately $28,000 does not meaningfully change the Court's analysis.

and interest at the rate of 6.5% has accrued on the Note (the "Standard Interest Rate").  APP002 (the Note at 1). The lender, McCormick 101, LLC (which purchased the Note from the original lender in the months after the Receiver's appointment), has filed a motion to intervene and to lift the stay so that it can foreclose. Dkt. 311. Furthermore, the lender now contends that the Note allows it to require interest to be paid at the rate of 15% (the "Default Interest Rate"). APP003 (the Note at 2).

## C.    The Amerigold Suites Orders

7.    In reliance on the provisions of the Initial Receivership Order and a statute that governs sales of realty by receivers, 28 U.S.C. § 2001 (the "Statute"), and to preserve the value of the Estate, the Receiver sought the Court's appointment of appraisers, approval of appraisals, a hearing, and approval of the sale of the Amerigold Suites. Dkt. 167.[5]

8.    On March 20, 2023, the Court entered an order appointing appraisers and approving appraisals of the Amerigold Suites (the "Amerigold Suites Appraisal Order"). Dkt. 197. Following appraisals and brokers' opinions of value that created an average appraised value of $4,366,667, the Receiver contracted to sell the Property for $5,500,000.

9.    On March 29, 2023, following notice and a hearing, as required by the Statute, and over Barton's objections, the Court entered an order approving sale of the Amerigold Suites (the "Amerigold Suites Sale Order," and together with the Amerigold Suites Appraisal Order, the "Amerigold Suites Orders"). Dkt. 202.

10.    As with the Rock Creek Property Sale Order, Barton appealed the Amerigold Suites Sale Order,[6] and while the appeal was pending, the title company was unwilling to issue title

---

[5] The Receiver incorporates by reference the appraisals, appraisers, and related information and evidence submitted in support of the motion and reply filed regarding sale of the Amerigold Suites. *See* Dkt. Nos. 167, 168, 193.

[6] *See SEC v. Barton*, Appeal No. 23-10515 in the Fifth Circuit.

insurance.

11.     The sale was and is in the best interest of the Receivership Estate because the sale will generate a substantial recovery for the Estate; the Amerigold Suites loses money virtually every month; the equity on the Amerigold Suites is diminishing as a result of the lien; and operating the Amerigold Suites creates a drain on Receivership Assets and resources. Dkt. 308 ¶¶ 104–109. For instance, in the months prior to the institution of the Receivership, the Amerigold Suites had negative cashflow, in part because of a high number of vacant units and the generally poor condition of several units. The Texas heat caused the failure of many air conditioning units in the Summer of 2023, and many apartment units require substantial renovation to make them habitable. Insurance premiums for the Property exceed $14,000 per month, and property tax bills are also high. An injury also occurred at the Property during 2023 that may result in a second lawsuit or claim against the Amerigold Suites insurance. *Id.* ¶ 107.

12.     On July 17, 2023, the Fifth Circuit dismissed the Amerigold Suites Sale Order appeal for lack of jurisdiction, but on October 12, 2023, in light of the vacatur of the Receivership Order and following Barton's motion for reconsideration and rehearing en banc, the Fifth Circuit dismissed the Amerigold Suites Sale Order appeal as moot.[7] Nonetheless, the sale is currently stayed by the Fifth Circuit's opinion regarding vacatur of the Receivership Order. Once the vacatur becomes effective on November 29, 2023, absent the Court's ratification or approval of the sale in connection with the New Receivership Order, the Amerigold Suites Orders are likely void as well.

13.     Compliance with the Statute is expensive because it requires costly appraisals,[8]

---

[7] *Id.* Dkt. Nos. 48, 68.

[8] In its Order Governing Administrative Procedures (the "Administrative Order"), the Court authorized the Receiver to utilize one or more offers received from disinterested purchasers or broker's opinions of value as two of the appraisals required by the Statute. Dkt. 63. Like the Sales Orders, the Receiver has requested ratification of the Administrative Order.

publishing notice of sales and the related hearing, as well as the time necessary to draft the relevant motions and appear at the hearing.

14.     For the same reasons the sale was in the best interests of the Receivership Estate when approved, ratifying the sale now continues to serve the Receivership Estate's best interests.

15.     Pursuant to amendments, the closing date for the sale of the Amerigold Suites has been extended to permit the Court to consider entering a new Receivership Order.

16.     Interest on the Note continues to accrue, and thus the net proceeds available to the Estate upon closing will be less than if the sale had closed when approved. More specifically, assuming only the contracted Standard Interest Rate and assuming at least 4% for standard closing costs, if the sale closes by the end of the year, the net recovery to the Estate should be at least $2.5 million.[9] With these assumptions, the sale will thus still generate a net recovery for the Estate. Moreover, the Receiver's real estate professionals advise that terminating the purchase agreement and remarketing the property is not likely to result in a higher purchase price and will only cause additional delay. Accordingly, and for the same reasons the Court originally approved the sale, the sale continues to be in the best interest of the Receivership Estate.

17.     The real estate market in the Dallas area has not improved since the Amerigold Suites Orders were entered. Instead, interest rates have risen, and demand has fallen. Nonetheless, the contracted buyer has continued to wait until closing the sale is possible.

---

[9] Again, had the sale closed as originally contemplated on May 29, 2023, approximately $82,427.60 in additional funds would have been retained by the Receivership.

### III.    ARGUMENT

**A.    The Court Has Authority to Ratify the Amerigold Suites Orders, *Nunc Pro Tunc*, Based on a New Receivership Order**

District courts are permitted to enter "nunc pro tunc" orders to "'reflect the reality' of what has already occurred." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01, 206 L. Ed. 2d 1 (2020) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)); *e.g., David v. King*, No. 122CV1053PTGIDD, 2023 WL 5004039, at *5–6 (E.D. Va. Aug. 4, 2023) (approving engagement of counsel for Chapter 11 phase, *nunc pro tunc*, where same counsel had been approved in prior Chapter 7 phase). The Amerigold Suites Orders reflect the "reality of what has already occurred" regarding the Court's prior approval of the sale of the Amerigold Suites. Ratification based on the Court's discretion and the Receivership Estate created by a new Receivership Order merely breathes new life into the Amerigold Suites Orders while eliminating the unnecessary delay and expense of complying with statutory requirements that have already been satisfied.

The Receiver accordingly requests that the Court ratify the Amerigold Suites Orders, first appointing and approving the appraisers and appraisals, and second, approving the sale pursuant to the existing contract.

**B.    The Court May—and Should—Also Authorize the Sale of the Amerigold Suites Free and Clear of All Liens, Stay the Accrual of Post-Receivership Default Interest, and Reserve Payment of Any Other Asserted Fees, Costs, or Other Amounts for the Claims Process**

In addition to ratifying the Amerigold Suites Orders, the Court should also authorize the sale of the Amerigold Suites free and clear of all liens, including late fees, attorneys' fees, offsets, penalties, costs, damages, other amounts due, and any other related claims, and instead reserve recovery of these amounts, if at all, in the Receivership claims process and subject to the Court's further approval. *E.g., SEC v. Champion-Cain*, No. 3:19-CV-1628-LAB-AHG, 2020 WL

4673397, at *5 (S.D. Cal. Aug. 12, 2020) ("[I]t has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.") (internal citation omitted); *see Janvey v. Alguire*, No. 3:09-CV-0724-N, 2014 WL 12654910, at *8 (N.D. Tex. July 30, 2014), *aff'd on other grounds*, 847 F.3d 231 (5th Cir. 2017) (A "receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor, if in his opinion it would be unprofitable or undesirable to do so; and he is entitled to a reasonable time to elect whether to adopt or repudiate such contracts") (internal citation omitted); *see SEC v. BIC Real Est. Dev. Corp.*, No. 116CV00344LJOJLT, 2017 WL 2463854, at *7 (E.D. Cal. June 7, 2017) (denying a secured creditor's request for attorney's fees incurred in receivership litigation before the court had "even considered distributing receivership assets to other creditors and investors," because reimbursing a secured creditor's attorney's fees "during the pendency of the receivership estate" would "not comport" with the court's "equity obligations" or "promote judicial economy"); *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154, at *9 (C.D. Cal. Oct. 13, 2015) (declining to order payment of a secured creditor's attorneys' fees and charges in connection with a property sale process). Instead, the Court should order that at closing and from the proceeds of the sale of the Amerigold Suites, the lender shall initially recover only the principal due under the Note as well as interest accrued under the Standard Interest Rate. To the extent the lender asserts that its lien exceeds this amount, such lien should be transferred to the proceeds of the sale of the Amerigold Suites, and entitlement to payment for those additional amounts will be paid, if approved by the Court, during the Receivership's claims process for creditors. Similarly, if the lender claims entitlement to proceeds from the sale for fees, costs, defaults, penalties, breach, offsets, default, or other amounts (including, but not limited to, the delta between interest accruing

9

at the Standard Interest Rate and interest the lender argues is owed at the Default Interest Rate), the Receiver requests that the Court require the lender to submit a claim for the Court's consideration of such amounts during a claim process.

In connection with this requested relief, the Receiver also requests that the Court stay accrual of interest at the Note's Default Interest Rate, which otherwise accrued only after and because of the Initial Receivership Order. The Court possesses discretion to do so:

> [T]he general rule in bankruptcy and in equity receivership . . . that interest on the debtors' obligations ceases to accrue at the beginning of proceedings. . . . As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate.

*Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163 (1946). The delay in paying lenders or making other distributions is "necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved." *Id.* The Court's equitable goal is "to preserve and protect the debtor's estate pending a ratable distribution among all the creditors according to their interests as of the date the receivership began." *Id.* at 166.

Based on these fundamental principles, courts administering federal equity receivership estates have found that they may "stay post-receivership default interest under equitable considerations."[10] *Capital Cove Bancorp LLC*, 2015 WL 9701154, at *11 (granting the receiver's motion to stay post-receivership default interest on purchase money loan, "[e]ven assuming that the property values exceed the contested claims"). One of those equitable considerations is

---

[10] The equitable discretion discussed in *Vanston Bondholders Protective Comm* allows a court to stay *all* interest accruing from the date a receivership is imposed. At this juncture, the Receiver is not requesting that relief, and seeks instead only to stay the accrual of *default rate* interest. He reserves the right, however, to request a stay or modification of all post receivership interest or other charges certain lenders may seek to impose in connection with proposed sales, for instance, excessive or unnecessary attorney's fees purportedly incurred in connection with a default. *See* Dkt. 349.

"whether the application of default interest will harm junior or unsecured creditors." *Id.* (citing comparable cases in the bankruptcy context).

As the Receiver's Report and Declaration shows, substantial evidence demonstrates that Receivership Assets will be, in the words of the *Capital Cove* court, "insufficient to pay all claimants 100% of the amounts claimed, and that many unsecured and junior creditors are most at risk for losing their potential recoveries." *Id.* at *12; *see also* Interim Report and Declaration [Dkt. 308] at ¶¶ 194-196. Therefore, the Court should conclude that "ongoing default interest rates would directly harm junior and unsecured creditors" and that "staying all post-receivership default interest satisfies the 'primary purpose' of receiverships, which is 'to promote orderly and efficient administration of the estate' for the benefit of all creditors." *Id.* This is particularly true here, where payment of default interest rate to the lender would ultimately reduce the potential payment of "principal" that will eventually be available to defrauded investors, as well as other creditors.

Accordingly, the Court should stay the accrual of post-Receivership interest at the Default Interest Rate, authorize the lender to recover the principal amount due and interest that has accrued at the Standard Interest Rate as part of the proceeds of the sale of the Amerigold Suites, and permit the lender to include the delta between interest accruing at the Standard Interest Rate and the interest that the lender argues is owed at the Default Interest Rate as part of the lender's claim against the Receivership Estate.

**C.    Ratifying the Amerigold Suites Orders, Authorizing the Sale of the Amerigold Suites Free and Clear of All Liens, Staying Post-Receivership Default Interest, and Reserving Any Other Asserted Fees, Costs, or Other Amounts for the Claims Process Serve the Best Interests of the Receivership Estate**

Although issues that arise in receiverships are generally fact-specific, two basic principles are recognized in most receivership proceedings. First, district courts are given "extremely broad" discretion in determining "the appropriate procedures to be used in … administration [of a

11

receivership]." *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992); *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019); *SEC v. Safety Fin. Service, Inc*., 674 F.2d 368, 372 (5th Cir. 1982) ("Any action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse.") (internal citation omitted). Second, "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). Accordingly, "reasonable procedures instituted by the district court that serve this purpose" are generally upheld. *Id*.; *see also SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2021 WL 2366110, at *6 (E.D. Tex. May 21, 2021), *appeal dismissed sub nom, SEC v. Sethi*, No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021) (court possesses broad powers to fashion appropriate relief intended to assist receiver in accomplishing his primary task, "protect[ing] the Receivership Estate.").

More specifically, courts generally consider the "best interest of the estate" when evaluating approval of real property sales. *CFTC v. TMTE, Inc.*, No. 3:20-CV-2910-L, 2022 WL 20210406, at *1 (N.D. Tex. May 12, 2022) (utilizing "best interest of the estate" evaluation); *SEC v. AmeriFirst Funding, Inc.*, No. CIV.A.3:07-CV-1188-D, 2008 WL 706846, at *2 (N.D. Tex. Mar. 11, 2008) (same). Further, courts have discretion to approve real property sales by receivers, even before a final judgment is entered. *See FTC v. Consumer Defense, LLC*, No. 2:18-CV-30 JCM (PAL), 2019 WL 266287, at *4 (D. Nev. Jan. 18, 2019) (authorizing receiver's sale before entry of final judgment where "the properties [under receivership] are likely to incur further obligations, such as common assessments and property taxes, that will unnecessarily diminish the value of the estate"); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) (similar).

12

Ratifying the Amerigold Suites Orders, authorizing the sale of the Amerigold Suites free and clear of all liens, staying accrual of post-Receivership default rate interest under the Note, and reserving any other asserted fees, costs, defaults, penalties, breach, offsets, or other amounts claimed by the lender for the claims process serve the best interest of the Receivership Estate. The requested relief converts this valuable Receivership Asset to much-needed cash, and best preserves what remains of the value of the Receivership Asset not only for the secured lender of the Amerigold Suites but also for all unsecured creditors of the Receivership Estate, including the Wall Investors.

## IV.   CONCLUSION

For the reasons stated in the original motion and supporting reply by which the Receiver sought permission to sell the Amerigold Suites, as well as the additional reasons described in the Receiver's Interim Report and Declaration filed in connection with the SEC's renewed Motion for Appointment of a Receiver, and to conserve Receivership Assets, the Receiver requests that the Court ratify the Amerigold Suites Orders *nunc pro tunc*. Additionally, after satisfaction of the principal amount due under any Note or Deed of Trust and interest accrued at the Standard Interest Rate at closing, the Receiver requests that the Court authorize the sale of the Amerigold Suites free and clear of all liens, stay post-Receivership default interest, and reserve payment of any other requested fees, costs, defaults, penalties, breach, offsets or other amounts for the claims process.

The Receiver also requests such other and further relief to which he may show himself entitled.

Respectfully submitted,

By: /s/ Charlene C. Koonce

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
Texas Bar No. 24109693
alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## VERIFICATION

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

/s/ Cortney C. Thomas
Cortney C. Thomas

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for the Receiver conferred with counsel for Barton and the SEC, via email, on or about October 27, 2023. Counsel for the SEC confirmed the SEC is not opposed. Barton opposes the relief requested and warned that if required to respond to this and other forthcoming motions about which the Receiver conferred, he would seek sanctions against the Receiver's firm. Sanctions are wholly unwarranted but if requested the Receiver will respond in due course.

Additionally, also on October 27, 2023, the Receiver conferred with the lender on the Amerigold Suites, who is also opposed.

/s/ Charlene C. Koonce
Charlene C. Koonce

14

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

The Receiver will provide a copy of this Motion, as well as any order regarding expedited briefing, to the Amerigold Suites lender.