UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 3:22-cv-2118-X |
| v. | § § § | |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (a/k/a MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § | |
| *Defendants.* | § § | |
| DJD LAND PARTNERS, LLC and LDG001, LLC, | § § § | |
| *Relief Defendants.* | § § § | |

**PIONEER FINANCE, INC.'S REPLY IN SUPPORT OF MOTION TO INTERVENE (Dkt. 348) AND MOTION TO LIFT STAY AND FOR EXCEPTION FROM THE COURT'S ORDER APPOINTING RECEIVER OF LDG001, LLC (Dkt. 349)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................................. ii

SUMMARY ............................................................................................................................................ 1

ARGUMENT .......................................................................................................................................... 2

I.    Pioneer's Motion to Intervene should be granted. .................................................................... 2

II.   Pioneer's Motion to Lift Stay should be granted. ..................................................................... 4

PRAYER ................................................................................................................................................. 9

CERTIFICATE OF SERVICE ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bd. of Comm'rs of Sweetwater County v. Bernardin*,
74 F.2d 809 (10th Cir. 1934) ...............................................................................................8

*Diaz v. S. Drilling Corp.*,
427 F.2d 1118 (5th Cir. 1970) .............................................................................................3

*Grubb v. FDIC*,
833 F.2d 222 (10th Cir. 1987) .............................................................................................8

*Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*,
579 F.2d 964 (5th Cir. 1978) ...............................................................................................2

*SEC v. Champion-Cain*,
No. 3:19-cv-1628-LAB-AHG, 2019 WL 6834661 (S.D. Cal. Dec. 13, 2019).........................8

*SEC v. Provident Royalties, L.L.C.*,
No. 3:09-CV-1238-L, 2011 WL 2678840 (N.D. Tex. July 7, 2011) ........................................5

*SEC v. Stanford Int'l Bank, Ltd.*,
No. 3:09-CV-0298-N, 2011 WL 13180449 (N.D. Tex. May 6, 2011) ..............................4, 5, 6

*SEC v. Wencke*,
742 F.2d 1230 (9th Cir. 1984) .............................................................................................4

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ...............................................................................................3

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) .......................................................................................2, 3, 4

*United States v. ESIC Capital, Inc.*,
685 F. Supp. 483 (D. Md. 1988)...........................................................................................6

OTHER AUTHORITIES

2 *Collier on Bankruptcy* ¶ 362.01 (15th ed. 1985) ...........................................................................3

Fed. R. Civ. P. 24...............................................................................................................2

Fed. R. Civ P. 24(a) ...........................................................................................................3

Fed. R. Civ. P. 24(a)(2)....................................................................................................2, 3

Pioneer Finance, Inc. ("Pioneer") files this Reply in Support of its Motion to Intervene (Dkt. 348) and Motion to Lift Stay and for Exception from the Court's Order Appointing Receiver (Dkt. 349) and respectfully shows the Court the following:

### SUMMARY

In their briefs, Receiver and SEC ask Pioneer to continue to "wait" and forego timely protection of its Constitutional right to the value of its collateral investment and contractual rights related to the recovery of debts. They provide no reasoned legal argument as to why Pioneer should not be permitted to intervene. Further, Receiver and SEC's arguments against lifting the stay appear to center on the idea that allowing Pioneer to foreclose on the property would serve to satisfy only *Pioneer's* debt and may lessen the surplus amount of money that might be earned by the Receivership Estate and redistributed to creditors and investors as a whole. *See* Dkt. 369 at 3-4; Dkt. 370 at 13. The Receiver's goal of increasing the value of the Receivership Estate should not come at the expense of Pioneer—a good-faith secured lender to which the Estate currently owes a significant debt. This is especially true where, as here, Receiver's prospective sale of the Properties: (1) hinges entirely on speculative development contracts on which no progress has been made; and (2) by Receiver's own admission, is unlikely to result in an influx of surplus cash for the Receivership Estate. The original Receivership was ordered not only for the purpose of preserving assets for distribution to defrauded investors but also "[t]o take such action as necessary and appropriate for the preservation of Receivership Property or to **prevent the dissipation**, concealment, **or inequitable distribution of Receivership Property**." Dkt. 29 at 5 (emphases added). The Receiver has not satisfied this purpose as to the Properties at issue, as LDG001, LLC ("LDG001") is already underwater on the debt it owes to Pioneer.

As Receiver has admitted, after more than a year of work, he has been unable to secure development agreements which would be necessary to recover any purported value for the

1

Receivership Estate in excess of the existing "significant debt[s]" owed on certain land in Venus, Texas currently controlled by Barton's entities. Dkt. 373 at 34. Included in the Receiver's list of properties in danger of sinking further "underwater" on their loans and liens are 940 County Road 110, 980 County Road 110, and 324 W County Road 109 (collectively, the "Properties"), which are currently owned by LDG001 and on which Pioneer is the first and only lienholder. LDG001's debt to Pioneer now exceeds the as-is market value of two of the Properties as determined by an appraiser last year. The failure to repay LDG001's debt continues to adversely impact the health of Pioneer's asset portfolio and several banks have refused to do business with Pioneer based on LDG001's outlying debt. In addition, despite Pioneer's status as a secured creditor, the constantly growing aggregate debt on *all* the Receivership Properties continues to put Pioneer at risk of not receiving the repayment of the amounts it is owed. As Receiver points out, under limited circumstances, the Court may choose to limit Pioneer's recovery of the debt it is owed. To avoid further accrual of debts, potential loss of property value, and additional diminution of Pioneer's contractual rights, Pioneer requests that this Court lift the stay and allow Pioneer to enforce its rights to foreclose on the Properties.

## ARGUMENT

### I.    Pioneer's Motion to Intervene should be granted.

SEC and Receiver put forth no legal arguments for why Pioneer should not be allowed to intervene. Nor can they. Pioneer is entitled to intervene in this action as a matter of right under Federal Rule of Civil Procedure 24, as it satisfies all four factors for intervention under that rule. *See* Fed. R. Civ. P. 24(a)(2); *see also, e.g.*, *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978) (discussing factors for intervention as a matter of right); *Texas v. United States*, 805 F.3d 653, 656-57 (5th Cir. 2015) (explaining that Courts should "liberally

2

construe[]" the factors to "allow intervention where no one would be hurt and the greater justice could be attained." (citations omitted)).

Receiver only *suggests* that Pioneer is not entitled to intervene as a matter of right because it has no "interest" at stake in the litigation. Dkt. 370 at 13. Receiver's conclusory statement that Pioneer's only jeopardized "interest" is the imposition of default interest is wholly incorrect. *See id.*

First, Pioneer's status as a first lien secured creditor means that it has a real cognizable property interest in the value of the Properties. *See Texas*, 805 F.3d at 658 ("A property interest . . . is 'the most elementary type of right that Rule 24(a) is designed to protect,' because it is concrete, specific to the person possessing the right, and legally protectable.") (internal citation omitted) (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)). The Fifth Amendment protects a secured creditor's rights to the "value of the property." *See* 2 *Collier on Bankruptcy* ¶ 362.01, at 362-15 (15th ed. 1985) (explaining that it is a secured creditor's Fifth Amendment right "to have the value of its secured position maintained throughout the proceeding").

Second, Pioneer has "legally protectable interests" in enforcing its contractual rights to foreclose on the properties, accelerate and demand the repayment of debts it is owed, and recover the default interest contracted-for by the parties. *See Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (holding that two trade associations representing timber purchasers met the "interest" requirement of Rule 24(a)(2) because the timber purchasers had "property interests in existing timber contracts that are threatened by the [litigation]," and that such interests were "direct, substantial and legally protectable" (alteration and citation omitted)); *see also Texas,* 805 F.3d 653 at 658 (holding that even non-property interests are sufficient to support intervention when "they

3

are concrete, personalized, and legally protectable"). If Pioneer is not allowed to intervene, it may lose these enforceable contractual rights and will be foreclosed from advocating for receipt of the full value of its secured interest. All of Pioneer's above-described interests are undoubtedly threatened by the current litigation due to the possible diminution of property value that would result from further delay in land sales as the Receivership "restarts" and reprioritizes assets.

"In short, [Pioneer] ha[s] a real, concrete stake in the outcome of this litigation." *Texas,* 805 F.3d 653 at 661. Accordingly, Pioneer should be permitted to intervene to protect its interests.

## II.    Pioneer's Motion to Lift Stay should be granted.

SEC and Receiver argue that the stay should not be lifted because (1) the status quo would not be preserved by doing so; (2) after over a year, the Receivership is still in its "early" stages, and Pioneer will not be harmed by "waiting" for the Receiver to continue repayment, if ever; and (3) Pioneer's claims have no merit. All three arguments fail.

First, the interest in preserving the status quo of the Receivership is far outweighed by the substantial injury to Pioneer. "[W]hen preserving the status quo threatens to 'irreparably injure' the moving party, equity may dictate that the Court afford the movant an exception to the imposed litigation stay." *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2011 WL 13180449, at *2 (N.D. Tex. May 6, 2011) ("*Stanford I*") (internal citation omitted) (quoting *SEC v. Wencke*, 742 F.2d 1230, 1232 (9th Cir. 1984)), *aff'd*, 465 F. App'x 316 (5th Cir. 2012) (per curiam) ("*Stanford II*"). Receiver and SEC incorrectly assume that Pioneer will not be harmed by waiting the estimated "years" it will take for Receiver to repay LDG001's debts. In so doing, they ignore Pioneer's offered examples of how it has *already* been harmed substantially. *See* Dkt. 349, ¶ 20 (discussing harm to Pioneer). Because it has not received the payments owed by LDG001, Pioneer's financial ledger and asset portfolio are unbalanced. As a result, several banks have refused to do business with Pioneer. *See id.* (discussing revocation of two credit lines totaling $50

4

million and was denial of credit at banks).  The loss of these opportunities has caused Pioneer irreparable financial harm and reputational damage, puts Pioneer at risk, and creates concern as to Pioneer's ability to continue to operate at the same level and strength as it once did.  *See Stanford I*, 2011 WL 13180449, at *3 (lifting stay, finding status quo outweighed by substantial injury where lack of owed payments to movant depleted and caused a deficit in movant's general fund, left movant without funds to meet other financial obligations, and raised doubts about movant's "ability to continue as a going concern" (citation omitted)).

Second, the current Receivership is not so young that lifting the stay will be inappropriate or improper.  The current Receivership has been active for over a year – more than enough time for the Receiver to substantially sort out the Receivership Entities' assets and for the Court to determine that a stay should be lifted.  A court may lift a litigation stay "anywhere from a few months to a few years into the receivership, depending on the particular circumstances of the case." *See, e.g.*, *SEC v. Provident Royalties, L.L.C.*, No. 3:09-CV-1238-L, 2011 WL 2678840, at *3 (N.D. Tex. July 7, 2011) (granting motion to lift stay of litigation imposed in receivership).  The circumstances of this case demand serious consideration of lifting the stay.

*Stanford I* is instructive here.  *See* 2011 WL 13180449 (lifting stay imposed in receivership).  There, as in the present case, the receiver contended that the movant should not be allowed to proceed with foreclosure because significant value on the encumbered properties might be recovered if receiver had more time to negotiate with prospective financiers who could "provide the capital to satisfy several liens . . . and to continue development of the real property" at issue. *Id.* at *3 (citation omitted).  Additionally, as here, that receiver also asserted that allowing the movant to foreclose would guarantee "a total loss." *Id*. (citation omitted).  The *Stanford I* court lifted the stay imposed by the receivership, finding important that the "negotiations never bore

5

fruit," the receiver had not located other prospective investors in a full year, and that the "development remain[ed] unfinished." *Id.*

By comparison, the Receiver's current pacing—and counsel for SEC's own estimation—indicates that many years will have passed before the Receiver will sell the Properties and Pioneer will recoup even *some* of its debt. A year of the Receivership has passed with relatively no sales or money added to the Receivership Estate. Even Receiver admits that "most [property] sales efforts were stayed or otherwise not possible during the first year of the soon-to-be vacated Receivership Order." Dkt. 370 at 12; *see also id.* at 5 ("Barton . . . opposed and appealed every order approving the sale of any property . . . ."). Further, in its recently filed Fifth Status Report, Receiver admits that although he has received offers to purchase the property in excess of the total debt, he has "not yet found viable paths toward development" and is therefore unsure "whether the Receiver will be able to recover ***any*** value for the Receivership Estate from the Venus Development," including the Properties on which Pioneer has a lien. Dkt. 373 at 34 (emphasis added). To avoid a significant or total loss of value in the Properties, Pioneer should be allowed to timely enforce its rights as the first and only lienholder on the Properties and protect its interests by pursuing foreclosure—especially because doing so would not interfere with any pending land sale or development deal or inconvenience any other creditors.

Third, "[t]he merits of [Pioneer's] underlying claim are substantial. It is only a foreclosure action which, if conducted properly, will be painless for all concerned[.]" *United States v. ESIC Capital, Inc.*, 685 F. Supp. 483, 486 (D. Md. 1988) (lifting receivership stay to allow foreclosure of property). The sale of the Properties would be a simple transaction within the interests of all parties, as it can be handled quickly and cooperatively between the Receiver and Pioneer once the stay is lifted. The value of Pioneer's security interest has *already* been diminished by the delayed

6

sale of the Properties.  The amount of debt LDG001 owes to Pioneer already well exceeds the previously appraised value of two of the three plots of land in which Pioneer has a secured interest. As of October 30, 2023, **Pioneer is owed $3,829,441.30**.  On April 22, 2022, independent appraiser The Ambrose Group determined that **the as-is market value price of 980 County Road 110 and 324 West County Road 109, Venus, TX is $3,630,000**.  Ex. A, Ambrose Group Appraisal.  This appraisal was also performed last year, in a much more favorable interest rate environment and real estate "sellers' market," when sale prices and valuations would have been higher than the present day.  Allowing Pioneer to foreclose on the property would further the Receiver's interest in maintaining the assets of the Receivership Estate, as it would lessen the amount of "underwater" debt owed by LDG001.

Further, Receiver is admittedly having trouble finalizing the development agreements necessary for the sale of the Properties and therefore "do[es] not expect significant recoveries for the Receivership" based on their proposed sale as part of a larger group of properties in Venus, Texas. Dkt. 373 at 34.  Accordingly, no prospective windfall to the Receivership Estate is forgone by allowing Pioneer to timely foreclose and recoup its debts.  By contrast, if the stay is *not* lifted and Pioneer is not permitted to accelerate the debt or timely foreclose on the property in which it has a secured interest, Pioneer will continue to suffer irreparable injury, loss, and damage, as it will be deprived of its contractual rights and be forced to risk the daily diminution of the value of its security interest.

It is incongruous for Receiver to claim that Pioneer will suffer no substantial injury by being denied relief and in the *same paragraph* state that *without* such relief, the Court may take actions to deprive Pioneer of its rights, including disallowing interest that accrued after the Receivership Order was entered and authorizing the sale of the Properties "free and clear of all

7

liens."  *See* Dkt. 370 at 11 (citing *SEC v. Champion-Cain*, No. 3:19-cv-1628-LAB-AHG, 2019 WL 6834661 (S.D. Cal. Dec. 13, 2019)).  It is notable that Receiver and SEC cite no Fifth Circuit cases in support of their arguments that such actions can be taken to deprive Pioneer of its secured rights, and there does not appear to be any controlling law directly on point.[1]

Further, Receiver's unsupported claim that Pioneer is not entitled under the Loan Documents to recover 18% default rate interest is also improper and incorrect.  Ex. A to Dkt. 348, Promissory Note at 1 (showing that upon default, Pioneer may declare any unpaid principal balance on the Note and accrued interest immediately due and payable at a rate of 18% per annum).  "[A] secured creditor *is* entitled to interest on its claim to the extent of its security, regardless of whether that interest accrues before or after insolvency." *Grubb v. FDIC*, 833 F.2d 222, 226 n.2 (10th Cir. 1987) (in bankruptcy context); *see also Bd. of Comm'rs of Sweetwater County v. Bernardin*, 74 F.2d 809, 814 (10th Cir. 1934) (holding that "[w]here, however, the assets are sufficient to pay all claims of equal dignity in full with interest accruing during the receivership after the costs of administration have been provided for, interest should be allowed and paid on all claims").

Pioneer should be allowed to intervene to protect its significant concrete, personalized, and legally protectable interest.  In addition, given the Receiver's demonstrated inability to repay the debt outright or otherwise sell the Properties at an amount satisfactory to add a surplus to the Receivership Estate, the Court should lift the stay on litigation in this matter and for the limited purpose of allowing Pioneer to foreclose on the Properties.

---

[1] Notwithstanding the non-controlling nature of the cases cited, the judicial remedies mentioned are only available in "appropriate circumstances" unlike the ones present here. *See Champion-Cain*, 2019 WL 6834661, at *6 (citation omitted).  Pioneer disagrees with the Receiver's argument and is troubled by his laissez-faire attempts to ignore a secured interest.

## PRAYER

Based on the foregoing, Pioneer respectfully requests that the Court enter an order granting Pioneer's: (1) motion to intervene; (2) motion to lift the stay and except Pioneer from the restrictions of the Receivership Order, allowing Pioneer to exercise all of its rights under the Loan Documents; (3) recovery of the legal expenses and attorneys' fees in connection with this matter for which Pioneer is entitled to reimbursement under the Loan Documents; and all such other and further relief, at law and in equity, to which Pioneer may show itself justly entitled.

Dated: November 3, 2023

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Tina Q. Nguyen*
    Tina Q. Nguyen
    State Bar No. 24078670
    Lindsay L. Buchanan
    State Bar No. 24105551
    910 Louisiana Street
    Houston, Texas 77002
    Telephone: (713) 229-1912
    Facsimile: (713) 229-2712
    tina.nguyen@bakerbotts.com
    lindsay.buchanan@bakerbotts.com

    ATTORNEYS FOR
    PIONEER FINANCE, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above-referenced motion was served on all parties on this 3rd day of November 2023, v*ia CM/ECF* and/or by First Class Regular Mail.

*/s/ Lindsay L. Buchanan*
Lindsay L. Buchanan

10