# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON CARNEGIE DEVELOPMENT, LLC WALL007, LLC WALL009, LLC WALL010, LLC WALL011, LLC WALL012, LLC WALL016, LLC WALL017, LLC WALL018, LLC WALL019, LLC HAOQIANG FU (a/k/a MICHAEL FU) STEPHEN T. WALL | § § § § § § § § § § § § § § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC LDG001, LLC | § § § | |
| *Relief Defendants.* | § | |

**DEFENDANT TIMOTHY LYNCH BARTON'S OPPOSITION TO SEC'S OPPOSED
MOTION TO SUPPLEMENT THE RECORD IN SUPPORT OF ITS MOTION FOR
APPOINTMENT OF A RECEIVER, FOR A PRELIMINARY INJUNCTION AND
ANCILLARY RELIEF, AND TO LIFT STAY FOR LIMITED PURPOSE OR, IN THE
<u>ALTERNATIVE, MOTION FOR NEW HEARING</u>**

Defendant Timothy Lynch Barton ("Defendant" or "Barton") files this Response Opposing

Plaintiff Securities and Exchange Commission's ("Plaintiff" or the "Commission") Motion to

Supplement the Record in Support of its Motion for Appointment of a Receiver, for a Preliminary

Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose.

## I.    INTRODUCTION

At issue is placing 775 pages of additional financial records before the Court—after multiple rounds of briefing and after a lengthy evidentiary hearing for testing the Commission's evidence—in support of the Commission's effort to have a new receiver appointed over just about anything associated with the Defendant.  The Court should reject the Commission's request to send these proceedings into another overtime period.

This is especially so because all of the documents at issue go exclusively to the breadth of any remedy—what entities it should cover—not whether there should be a remedy.  The Court should reject the Commission's request for a new receiver.  But, if the Court were to grant the Commission's request for a new receivership, it should extend only to those corporate entities that the Commission proved through its motion papers to possess substantial amounts of the loan proceeds that are the subject of this litigation.  If the Commission wants to attempt to seize additional entities based on later developing evidence, it should make another motion, the Court should hold another evidentiary hearing in which its submission could be tested, and the Court should make another ruling on it.

The proposed supplemental submission itself is the latest bizarre attempt to perform the complicated tracing of assets without surfacing an accounting expert or, in this case, even identifying whoever is doing this work, much less how he or she did it.  Not that the motion to supplement or its attachment explains what is going on here, but the 775 page evidentiary submission appears to be an annotated version of the "tracing examples" provided in the Receiver's declaration.  Each flow chart attaches a handful of spreadsheets pulled from some ledger or bank statement that the submission implies supports the chart.  This submission is completely improper on so many levels.  There is no affiant authenticating any of these documents.

There is no one explaining how they were gathered or selected and whether other documents undermining the analysis were omitted.  And there is no one, again, explaining the methodology of the proffered tracing analyses.  These documents even include summaries of accounting ledgers without explanations of who created them and how.  *See e.g.*, Ex. 10, REC0340-44.  Thus, we have a bundle of documents masquerading as some kind of summary witness declaration or expert report, with absolutely nothing to authenticate or explain it.  The compilation does not cross any hurdle of admissibility, whether it be related to the thresholds for expert testimony, or summary witnesses, or otherwise.

The rejoinder to these complaints might have been that the Defendant could question Commission witnesses and figure out what this submission was all about at the evidentiary hearing.  But this submission came long after that.  The sequence of events is also important, because the Defendant has been trying to put on evidence in an orderly manner.  Understanding that complex accounting questions would be at issue, the Defendant presented the testimony of an accounting expert.  If the Receiver's attempt at tracing were backed by the work of a particular accountant, it took the evidentiary hearing to figure that out.  Even the accountant that showed up repeatedly disclaimed familiarity with the methodologies underlying these flow charts. The motion to supplement is a 13th hour attempt to fill in for what was missing prior to or even at the hearing.  This course of conduct has prevented adversarial testing of these accounting assertions, both in the accounting expert's report and in his testimony.  It defeats the purpose of the motion deadlines and hearing itself.  The motion to supplement should be denied.

## II.    BACKGROUND

The United States Court of Appeals for the Fifth Circuit reversed this Court's decision to seize all of the Defendant's assets and place them under the control of a receiver because the

Commission did not meet the high evidentiary standards for imposing the "drastic" remedy of a receivership. The Commission is trying again, and this Court placed the Commission on early notice of the procedures for meeting its evidentiary burden. The Court set a deadline for the Commission to move for a new receivership and to present its documentary evidence supporting both whether and over what corporations it should be appointed. The Court provided the Commission with an opportunity to file a reply brief, to rebut any arguments against the existence and scope of a receivership. And the Court set an evidentiary hearing where the evidence submitted by the Commission in support of its motion would be adversarially tested.

The Commission sought appointment of a receiver over 82 companies associated with the Defendant. In support of its motion, the Commission submitted a report from its staff accountant in which she claims to have traced into only 28 of those companies. The staff accountant stated in the declaration, and later testified on the stand, that "as a result [of alleged commingling of funds among corporate entities associated with Barton], the Commission cannot yet confirm whether additional Barton-controlled entities received, or otherwise benefitted from, Barton's alleged fraudulent activities that are the subject of this litigation." Supplemental Declaration of Carol Hahn, ECF Dkt. 310, Supp. App. 003 at ¶ 6; Tr. 138:24–25; 139:1–3.

Clearly, the Commission had not even attempted to carry its tracing burden with respect to many of the companies it is currently proposing to seize. At the evidentiary hearing, the Commission turned to the assertions of the illegally-appointed receiver in an attempt to fill this gap. The Receiver had submitted a declaration asserting the tracing of funds associated with the subject loans into some of the companies. To the declaration were attached some diagrams, purporting to reflect fund movements. These diagrams were not accompanied by an identification

of or declaration by the person who put them together, much less did they indicate the method by which they were prepared or the documents on which they relied.

It took the evidentiary hearing to obtain any detail about from where these diagrams came. Although attached to the Receiver's declaration, the Receiver disclaimed any role in assembling them, saying that his accountants would know any answers to Defendant counsel's questions about them. The Commission then called Mr. Anthony Cecil, a person whose name appears nowhere in the Commission's motion papers or declaration. Mr. Cecil testified that he is an accountant and he composed the diagrams at issue. When questioned on cross-examination, however, Mr. Cecil showed a lack of familiarity with the details of any particular diagram or even the methodology by which they were assembled. These diagrams were very much a hot potato, one that all of the Commission's witnesses wanted the Commission to be able to use but that for which none of the Commission's witnesses wanted to take responsibility.

For its part, the Defendant called an accountant to testify as an expert witness. He raised issues with the attempted tracing analysis in the papers submitted prior to the hearing and in the testimony presented by Commission witnesses. Tr. 146:17–164; Decl. Gregory Ginn.

At some point during the evidentiary hearing, the receiver volunteered from his observer seat in the courtroom that he had some additional tracing evidence that might help the Court. Tr. 182:15–183:2. It came, the Receiver said, from a binder that he had brought to the stand to use as an aide while testifying. *Id.* Of course, having a book on one's lap while testifying in an evidentiary hearing is itself odd and, almost always, improper.

One week after the hearing, the Commission moved to supplement the record of the evidentiary hearing with a string of 775 pages of bank statements. The Commission's motion stated that the supplemental evidentiary submission contains "bank records." It does much more

5

than simply place some bank records before the Court.  It takes what appears to be some of the diagrams in the original declaration of the Receiver and annotates them with cover sheets claiming that the records that follow support parts of that diagram.  *See, e.g.*, Ex. 4; Ex. 8; and Ex. 23.  Some of the attachments are not even bank records, but asserted summaries of accounting ledgers for various companies.  *See e.g.*, Ex. 10, REC0340-44.  The submission is accompanied by no declaration authenticating the records, much less explaining the method by which records were selected for or omitted from the submission or by which the summaries of ledgers were prepared. Indeed, at this late stage, there is no indication of who prepared this submission, much less any opportunity to cross-examine that person.

### III.    ARGUMENT

Before the Court is Take Four on the Commission's effort to gobble up as much of the Defendant's assets as possible and to leave him financially paralyzed to defend against the Commission's substantive charges.  The Commission is trying to put evidence before the Court that was absent from its opening motion, absent from its opportunity to file a reply brief, and absent from its elucidation of testimony from witnesses at the evidentiary hearing.  More troubling is that no witness is authenticating the evidence nor testifying as to how it was assembled.  Moreover, the materials are submitted at a time after the Defendant's expert's declaration, after that expert's testimony, and after cross-examination of any witness where the adversarial process might have had a shot at figuring out how this submission came to be and even to test it. The Court should deny the Commission's motion.

First, these materials would be inadmissible no matter when they were submitted.  The Commission lays absolutely no foundation for them.  *Francois v. Gen Health Sys.*, 459 F. Supp. 3d 710, 725 (M.D. La. 2020) ("Before the witness is allowed to give lay opinion testimony, a

foundation must be laid which demonstrates that the factual basis upon which the opinion is given is rationally based on the witness's perception and absent that foundation, the opinion is inadmissible."). And no witness authenticates them. The submission is also an attempt at testimony, as they are organized with cover sheets following a replication of the receiver's attempted tracing diagrams. Those cover sheets assert that the financial records that follow support the diagrams. But we have no idea who is doing the testifying, much less what that person did to decide which records to include or omit from this description of the purported transactions. Even if this is some kind of effort at summary testimony (free from the higher requirements of the expert to explain himself and his methods), there is zero foundation laid for who the summary witness is and what he did to compile this submission.[1] *United States v. Armstrong*, 619 F.3d 380, 385 (5th Cir. 2010) ("To minimize the danger of abuse, summary [witness] testimony 'must have an adequate foundation in evidence that is already admitted.'").

Second, the materials were submitted too late, after the evidentiary hearing and outside this Court's established procedures for providing some opportunity to test the Commission's evidence. This Court has been clear that "[t]he mere fact that [] 'extra-record evidence . . . is relevant to [a litigant's] arguments,' [] does not justify the addition of extra-record evidence." *Reaves v. United States SBA*, No. 3:18-CV-1230-B, 2020 WL 3976984, at *4 (N.D. Tex. July 14, 2020) (citing *Knight v. U.S. Army Corps of Eng'rs*, No. 4:18-cv-352, 2019 WL 3413423, at *3 (E.D. Tex. July 29, 2019)).

Contrary to the Commission's assertion, the Defendant will very prejudiced by this late-breaking evidentiary submission. By dropping several hundred pages of financial documents and

---

[1] These materials, for the reasons identified above, again attempts to make expert accounting conclusions regarding the tracing of assets.

assertions about their relevance into the record after the hearing, the Commission is seeking to immunize that evidence and those assertions from cross-examination or from rebuttal by the Defendant's expert, either through his report or his testimony.  This prejudice is particularly acute when the whole submission is an exercise in picking and choosing from the Commission's trove of financial records, what some undisclosed author of this submission thinks is relevant to various tracing assertions appended to the receiver's declaration.  While it is true that the Commission dumped more than ten thousand pages of financial records on the Defendant only days before his opposition brief was due, those were simply those documents relied on by the Commission's staff accountant.  There has been no assertion that financial documents inconsistent with the tracing assertions made in this matter have been produced, making the inability to cross-examine the author of this new expert / summary witness accounting report all the more unfair.

The evidence properly admitted into the record shows the prejudice from not being able to question the completeness of this submission is not hypothetical.  The declaration of Eric Johnson, for example, shows that these materials are leaving out key financial facts about transactions related to the HUD-financed apartment complexes, far afield from the loan transactions that are the subject matter of the Commission's suit. For example, the compilation continues to omit financial records showing that alleged de minimis transactions regarding the HUD owned apartments were immediately reversed.  *See* Johnson Decl. ¶¶ 13-41.

The fair and correct solution to this problem is that the Commission should have to live with the evidence submitted in support of its motion, evidence that the Defendant at least have some sliver of time to test at the hearing.  The Commission did not even try to establish that many of the corporate entities possess property that would make them a potential candidate for a receivership or other remedy.  The Government would no doubt be disappointed if the Defendant

were left with some resources with which to contest the Government's allegations of wrongdoing. But the Fifth Circuit made clear that the Commission had to establish that it was seizing the loan proceeds property, not just parking on all the Defendant's assets for later satisfaction of a liability judgment it hopes to obtain. *SEC v. Barton*, 79 F.4th 573, 580–81 (5th Cir. 2023).  It has not done so for many of the companies it wants to seize, and the submission of evidence after the evidentiary hearing is a completely improper way to remedy that deficiency.

## IV.    CONCLUSION

For the reasons set forth above, Barton respectfully requests that this Court deny the Commission's Motion to Supplement the Record in Support of its Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose.

Dated: November 6, 2023

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to N.D. Tex.*)
medney@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On November 6, 2023, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

9