IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND | § | |
| EXCHANGE COMMISSION, | § | |
| | § | CASE NO. 3:22-cv-2118-X |
| | § | |
| Plaintiff. | § | |
| v. | § | |
| | § | |
| TIMOTHY BARTON, et al., | § | |
| | § | |
| Defendant. | § | |

**LENDER'S VERIFIED RESPONSE IN OPPOSITION TO THE RECEIVER'S VERIFIED AND EXPEDITED MOTION TO (I) RATIFY ORDERS APPOINTING APPRAISERS, APPROVING APPRAISALS AND APPROVING SALE OF REAL ESTATE AS REQUIRED BY 28 U.S.C. § 2001 WITH RESPECT TO THE FRISCO GATE PROPERTY, (II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS AND (III) STAY ACCRUAL OF POST RECEIVERSHIP DEFAULT RATE INTEREST**

COMES NOW TEXAS REPUBLIC BANK (the "Lender") and would show the Court as follows:

## I. SUMMARY

1. Lender does not contest the entry of the order ratifying the Receiver's authority to sell the Frisco Gate property (the "Property") owned by FHC Acquisition, LLC ("FHC"). Lender opposes the Receiver's request that (a) the interest rate that has accrued since the maturity of the Note (as defined below) should be the 7.5% rate as reflected in the Note (Exhibit "B" to the Receiver's Appendix) and the Loan Modification (Exhibit K) rather than the Maximum Rate as allowed under the Note and Loan Modification as a result of the Note maturing by its terms prior to the appointment of the Receiver; and (b) that interest continue to accrue on the Lender's claim at the Maximum

Rate as allowed by the Note.

2.      Lender objects to the proposed order accompanying the Receiver's Verified and Expedited Motion (the "Motion") as it fails to state that the Lender's lien will be transferred to the sale proceeds of the Property to the extent that the Lender's claim is not paid in full at closing.

3.      Lender further objects to the Receiver's proposed payment of the unsecured claim of Palisades TC, LLC at closing as same violates the Absolute Priority Rule as well as the statutory priority of payment of creditors established in section 507 of the Bankruptcy Code.

4.      Lender objects to the proposed treatment of its claim as the Receiver's Interim Report and Declaration clearly demonstrates that there are more than sufficient Receivership Assets to pay the unsecured creditors of the Receivership Estate. *SEC v. Capital Cove Bancorp LLC*, 2015 WL 9701154, at *12 (C.D. Cal. October 13, 2015).

5.      Lender would also point out to the Court that the Receiver and his professionals have been paid nearly a million dollars for their services without ever mentioning to the Court that the payment of their fees and expense could diminish the Receivership Assets to the point that they would be "insufficient to pay all claimants 100% of the amounts claimed, and that many unsecured and junior creditors are most at risk for losing their potential recoveries." *Capital Cove Bancorp LLC*, 2015 WL 9701154, at *12.   Yet that is the argument made in the Motion to justify reducing Lender's interest

by roughly $230,000[1] and that argument is flawed based on the Receiver's Interim Report and Declaration [ECF No. 308]. Lender is not implying that such services were not warranted, however, the same standard for allowing fees and expenses of the creditors should be applied to the Receiver and his professionals.

6.    Lender object to the Receiver seeking the same relief as to the Rock Creek and Amerigold properties as Lender's Note has matured whereas the notes of the lenders for the Rock Creek and Amerigold properties have not yet matured when the Receivership was created.

## II.    SPECIFIC RESPONSES TO THE MOTION

7.    Lender admits the allegations of paragraph A(1) of the Motion.

8.    The SEC Complaint is a written instrument which constitutes the best evidence of its allegations and to the extent that the allegations of paragraph A(2) of the Moption are inconsistent with same, said allegations are denied.

9.    The allegations of paragraph A(3) of the Motion are recitations of the events that have occurred in this proceeding and warrant no response by Lender.

10.    Lender admits the allegations of paragraph B(4) of the Motion.

11.    Lender is without sufficient information to admit or deny the allegations of paragraph B(5) of the Motion.

12.    The Note and Third Modification Agreement referenced in paragraph B(6) of the Motion are written instruments that constitute the best evidence of their terms and

---

[1] Said amount is roughly the average amount of attorneys fees sought by Receiver's professionals in their fee applications.

LENDER'S VERIFIED RESPONSE IN OPPOSITION TO
RECEIVER'S VERIFIED AND EXPEDITED MOTION - PAGE 3

conditions and to the extent that the Receiver misstates said terms and conditions, said allegations are denied.   Lender specifically denies the implication in footnote 7 that the 18% interest rate asserted by Lender as a default rate by analogizing the failure to pay the Note at Maturity as an Event of Default.   The Receiver fails to mention to the Court that section 1.4 of the Third Modification Agreement (Exhibit K) states:

> The rate at which interest accrues on the outstanding principal balance of the Note prior to maturity shall continue to accrue at the fixed rate of seven and one-half percent (7.5%) per annum, based on a 360 day year and the actual number of days elapsed, as set forth in the Nite. ***All matured past due amounts owing under the Note shall bear interest at the "Maximum Rate" as that term is defined in the Note.***(emphasis added).

Third Modification Agreement, Exhibit J, AP114.

Lender did not threaten to foreclose the Property prior to the Receiver being appointed; it in fact had posted the Property for foreclosure as a result of the Note not being paid at Maturity.   Lender denies that it is reasonable to characterize the Maximum Rate as a default interest rate as alleged in footnote 7 of paragraph B(6) of the Motion.

13.    Lender is without information to admit or deny the allegations of paragraph B(7) of the Motion, however, to the extent that the claim of Palisades TC, LLC is unsecured and subject to litigation, Lender objects to the Receiver seeking Court approval to pay same at any closing in violation of the priorities of payment as outlined in section 507 of the Bankruptcy Code and especially if Lender is not paid in full prior to Palisades being paid one dollar.

14.    Lender admits the allegations of paragraph C(8) of the Motion as same are recitations of events that transpired in this proceeding.

15.     Lender admits the allegations of paragraph C(9) of the Motion as same are recitations of events that transpired in this proceeding.

16.     Lender admits the allegations of paragraph C(10) of the Motion as same are recitations of events that transpired in this proceeding.

17.     Lender admits the allegations of paragraph C(11) of the Motion as same are recitations of events that transpired in this proceeding.

18.     Lender is without sufficient information to admit or deny the allegations of paragraph C(12) of the Motion.

19.     Lender is without sufficient information to admit or deny the allegations of paragraph C(13) of the Motion as the Receiver failed to advise the Lender of any modifications to the purchase and sale agreement as some of the issues facing the Receiver in this Motion could have been addressed by the purchaser paying the interest on the Note during the pendency of this proceeding.

20.     Lender agrees that the sale is in the best interest of the Receivership as well as the Lender.   Lender objects to the sale proceeds from the Property be used to "*make payment of property taxes on all properties, insurance on certain properties, a host of administrative expenses, and significant professional fees*" as alleged in paragraph C(14) of the Motion while Lender is not paid in full pursuant to the Note.

21.     Lender denies the allegations of paragraph C(15) of the Motion as it improperly assumes paying an unsecured disputed claim of Palisades at closing while failing to pay 100% of the amounts due and owing to Lender under the Note.   Lender

agrees that terminating the purchase and sale agreement for the Property would not be in the best interests of the Receivership or the Lender.

22.     Lender agrees with the legal argument contained in paragraph III(A) of the Motion.

23.     Lender agrees that the Court has the ability to authorize the sale of the Property free and clear of liens, claims and encumbrances but objects to the proposed order which does not provide for the transfer of the Lender's lien to the proceeds of the sale of the Property to the extent that Lender's claim is not paid in full.   Lender renews its objection to the relief suggested in footnote 11 of paragraph III(B) of the Motion as said claim is disputed and unsecured and should not be paid at closing unless Lender is paid in full.   To the extent that the Court grants the relief requested in paragraph III(B) of the Motion, Lender requests that any claim submitted by Lender to the Court for allowance and payment retain its secured status and priority over unsecured creditors such as Palisades.

24.     Lender objects to the staying of the accrual of interest of the Lender's Note at any rate of interest as the Property is selling for more than the amount of the Lender's indebtedness and the Receiver, by his own Interim Report and Declaration [ECF No. 308] does not demonstrate that "…the Receivership Assets will be, in the words of the *Capital Cove* court, 'insufficient to pay all claimants 100% of the amounts claimed, and that many unsecured and junior creditors are most at risk for losing their potential recoveries.'" Receiver cites pages 194-196 of the Interim Report and Declaration but such pages do not exist as the document is only 179 pages as filed with the Court.   In fact, the Receiver, in

his Interim Report and Declaration at page 82, sets forth a table where the estimated recovery of the Receivership Assets, as of September 5, 2023, was $25,700,000.00 but his table failed to allocate (or even estimate) any values to properties owned by D4OP, LLC; D4KL, LLC; Villita Towers, LLC; BM318, LLC; JMR100, LLC; LC Aledo TX, LLC and Seagoville Farms, LLC.   Said entities are a part of the Initial Receivership and are to be part of the new Receivership. Lender objects to (a) the staying of the accrual of the Maximum Rtae under the Note as the Lender is oversecured; (b) payment of any junior unsecured creditor at closing before Lender is paid in full; and (c) to have its claim stripped of its lien and lumped into the unsecured pool of creditors in violation of its loan documents.

25.    Lender objects to the arguments of the Receiver contained in paragraph III(C) of the Motion as same are simply a recitation of the same justifications found in paragraph III(B) of the Motion and to the extent that Lender is required to respond to the arguments of paragraph III(C) of the Motion, Lender incorporates by reference its arguments in paragraphs 23 and 24, supra, as if fully copied herein.

### III. ARGUMENT

**The Court should NOT Stay the Accrual of Post-Receivership   Interest, and Reserve Payment of any other Asserted Fees, Costs, or Other Amounts for the Claims Process**

26.    The Receiver relies on *SEC v. Champion-Cain*, No. 3:19-CV-1628-LAB-AHG, 2020 WL 4673397, at \*5 (S.D. Cal. Aug. 12, 2020) to support its argument that a Court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.   Albeit the Lender does not oppose this portion of

the relief sought by the Receiver, the *Champion-Cain* matter is of importance as it also holds that this can be done in <u>appropriate circumstances</u>, which in the *Champion-Cain* matter included notifying all creditors who might have an interest in the sale of the property and considering their claims and further refers to the matter of *Alt. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908), where the Court held that a motion to appoint a receiver to take charge of property is to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale.

27.     The Motion does not reflect that all parties in interest as to the Property have been notified of this Motion, be it directly or indirectly and more importantly the *quantum* thereof, to enable the Court to properly consider the equities when it comes to staying the interest component of Lender's claim.

28.     It cannot be emphasized enough that the relief Receiver seeks in limiting Lender's contractual right to charge the Maximum Rate pursuant to the Note that matured some three months prior to the initial appointment of the Receiver, will prejudice the Lender in circumstances where the proposed purchase price secured by the Receiver is approximately triple what is owed to the Lender.   An order prejudicing the Lender's rights as enshrined in the contract in favor of other creditors who have no direct interest in the property and whose claims could adequately be met through the sale of other estate assets, is not equitable, particularly where the Note matured prior to the estate being placed under receivership, a further circumstance which makes the order sought by the Receiver in this regard, iniquitous.

29.     The *Champion-Cain* matter granted an order that the property be sold free and clear of a federal tax lien, in circumstances where the IRS did not oppose the order and because such an order was consistent with the principles of equity and the goal of the receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See SEC v. Wencke (Wencke II),* 783 F.2d 829, 837 n. 9 (9th Cir.1986); *First Empire Bank-New York v. FDIC,* 572 F.2d 1361, 1368 (9th Cir.), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); *Accord Safety Finance,* 674 F.2d at 373; S.E.C. v. Hardy, 803 F.2d 1034, 1038 (9th Cir. 1986).   The Receiver has not set out what exact difference depriving the Lender of the contractually agreed Maximum Rate will make to the payment of the estate's other creditors.   The evidence provided by the Receiver's Interim Report and Declaration undermine any argument that the creditors junior to Lender will not be paid in full.   Nor is it Lender's obligation to ferret that information to support its contractually agreed interest rate and payment of its Note.

30.     In seeking the stay of the interest rate, the Receiver places reliance on four cases, all of which are distinguishable from the factual matrix in this matter and do not support the Receiver.   In the case *Janvey v. Alguire*, No. 3:09-CV-0724-N, 2014 WL 12654910, at *8 (N.D. Tex. July 30, 2014), the Court held that a Receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor, if in his opinion it would be unprofitable or undesirable to do so. The *Janvey* case is distinguishable in that the Lender's Note <u>matured before</u> the appointment of the Receiver.   The Lender's Note and the sale of this Property is not a matter where there is a pending or prospective contract where the Receiver is free to elect to be bound to or

repudiate the terms of the Note.    Here the Receiver is effectively seeking to repudiate a promissory note after maturity and prior to his appointment, thereby negating the Lender's position as secured creditor *ex post facto* the maturity of the loan.

31.    In the cases *SEC v. BIC Real Est Dev. Corp.*, No 116CV00344LJOJLT, 2017 WL 2463854, at *7 (E.E. Cal. June 7, 2017), the Court denied a secured creditor's request for attorney's fees incurred in receivership litigation because reimbursing a secured creditor's attorney's fees during receivership would not comport with the Court's equity obligations or promote judicial economy and *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154, at *9 (C.D. Cal. Oct. 13, 2015),    the Court declined to order payment of a secured creditor's attorney's fees and charges in connection with a property sale process are similarly distinguishable, as the Lender's claim in this matter is in respect of the amount of interest that can be charged pursuant to the terms of the Note.

32.    Finally, in the *Capital Cove* matter *supra*, there was substantial evidence that the proceeds were insufficient to pay all creditors of the estate and not just a situation where the estate was "*cash strapped*" as alleged in this matter.    The Court granted a motion staying post receivership Default Interest on a money loan under equitable considerations in *Capital Cove*, by applying the equitable discretion set out in the matter of *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163 (1946), where the Court held that the delay in paying lenders will harm junior or unsecured creditors, in circumstances where creditors would not be paid at all.    There is no such substantial evidence in this case. In fact, the Receiver has provided limited and incomplete information to the Court in the Interim Report and Declaration.

33.    The Receiver further submits that the Court's equitable goal is to preserve and protect the debtor's estate pending a ratable distribution among all the creditors according to their interests as of the date the receivership began, without allowing for the fact that as opposed to other creditors, Lender's interest matured prior to receivership and has nothing to do with default consequent upon receivership.    The Receiver's reliance on *Vanston* to disallow the contractually provided for interest on the alleged equitable ground that it would be unfair to the other creditors, is fatally flawed.    The *Vanston Bondholders* decision has however been superseded by Statue as stated in the matter of *In re Colortex Industries, Inc.* 11th Cir.(GA.) May 2, 1994.    Additionally, the order staying Default Interest in in the *Vanston Bondholders* matter was considered to be in the nature of a penalty imposed because of delay in prompt payment, whereas any delay in payment in this matter is not at the hands of the lender, who in effect will be penalized for the conduct of others, should the Receiver be granted relief in this regard - a factor which heavily weights against any equities contended for by the Receiver.

34.    11 U.S.C.A. § 506(b) (West Supp.1989) provides:

> *To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.*

35.    In the matter of *United States v. Ron Pair Enterprises, Inc.,*    489 U.S. 235, 109 S.Ct 1026, 1030, 103 L.ed.2d 290 (1989), the Supreme Court held that, "*[t]he natural reading of [section 506(b)] entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable*

*fees, costs, and charges provided for in that agreement.*"   Where claimed interest charges are provided for by the loan instruments and are otherwise reasonable under applicable state law, this statutory language precludes disallowance of those charges.   See *Mack Financial Corp. v. Ireson,* 789 F.2d 1083, 1084 (4th Cir.1986); *Matter of LHD Realty Corp.,* 726 F.2d 327, 333 & n. 8 (7th Cir.1984).

36.     Additionally, the Court's ability to stay interest is not settled law.[2]   In the matter of *In re Sundale, Ltd.* 410 B.R. 101 (Bankr. S.D. Fla. 2009), the Court recognized that a creditor's right to postpetition interest is unqualified, as opposed to its right to attorney's fees, costs and charges.   The Court further held that an oversecured creditor's contractual right[3] to Default Interest was enforceable and could not be denied by a Bankruptcy Court in exercise of its equitable powers based on such considerations as reasonableness of rate specified, or whether the default rate amounted to a penalty, and that even if it was appropriate for a Bankruptcy Court to consider equitable factors, the court would not disallow such intertest based on equities of the case.   A Court may exercise its equitable powers only in a manner consistent with the provisions of the Bankruptcy Code and may not use those equitable powers to deny postpetition interest on oversecured claims, particularly where the underlying loan documents provide for the interest.   Contractual rights may not be altered based on equitable considerations.[4]

---

[2]  *Thomas v. Western Car Co.*, 149 U.S 95, 117, 13 S.Ct. 824, 833, 37 L.ED. 663 (1893).

[3]  *Hancock Bank v. Tote Enterprises LLC*, 2013 WL 12114832, at *4 (N.D. Fla. Apr.2, 2013).

[4]  *In Re Heritage Hotel Associates, LLC*, 2021 WL 2646533 (N.D. Fla. June 28, 2021)

37.    In the matter of *In Re Heritage Hotel Associates, LLC*, 2021 WL 2646533, the Court expressly considered the enforceability of Default Interest provisions in bankruptcy cases and relied on *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S Ct. 1026, 103 L.Ed. 2d 290 (1989) when it held that oversecured creditors are entitled to interest and that most Courts have concluded that postpetition interest should be calculated at the contract rate[5].    The Court further held that there is no reasonableness requirement under §506(b) for postpetition interests, even though the statute explicitly requires postpetition fees and costs to be reasonable[6].    As the Eleventh Circuit Court of Appeals explained in *In re Delta Resources, Inc.*, "a creditor's right to recover postpetition interest on its oversecured claim pursuant to 11 U.S.C. §506(b) is virtually 'unqualified'".[7]

38.    As per *In re John Q. Hammons Fall 2006, LLC*, 612 B.R. 779, 794 (Bankr. D. Kan. 2020), the Bankruptcy Court held that §506(b) allows oversecured creditors to recover postpetition interest and any reasonable postpetition fees and costs that are provided for in the parties' agreement or under state statute.    Consequently, the Bankruptcy Court allowed the oversecured creditor's claim for postpetition Default Interest under §506(b) as long as it is permitted under the contract and state law.

39.    In *In re Family Pharmacy, Inc.*, 2020 WL 1291112, at *7 (8th Cir. BAP Mar. 19, 2020), the Bankruptcy Appellate Panel held that after the Supreme Court's ruling in the

---

[5] *In Re Myrtle Avenue Group, LLC*, 598 B.R. 729, 736 (Bankr. S.D.N.Y. 2019) where the Court held that the debtor bears the burden of rebutting the presumption that the contract rate of interest applies postpetition.

[6] *In Re Welzel*, 275 F.3d 1308, 1314 (11th Cir. 2001)

[7] 54 F.3d 722, 727 (11th Cir. 1995)

*Ron Pair* matter *supra*, the interest rate under §506(b) for an oversecured creditor is the contract rate, both Non-Default and Default, to the extent that the rate is enforceable under state law.

40.     The Receiver failed to provide this Court with any authority that the Court may stay the accrual of the Maximum Rate under the Note, which it may not.   As stated in *In re Marfin Ready Mix Corp.*, 220 B.R 148 (1998), the purpose of interest is to compensate for a loss of monetary value.   Allowance of interest to oversecured creditors affects the quantum of creditor's allowed secured claim and, provides an exception to the general rule that interest stops accruing as of the filing of a bankruptcy petition (11 U.S.C. §506(b)).   While a Bankruptcy Court has the power to modify rights created either by state law or by private agreements, the Court should be loath to exercise that power in the absence of compelling evidence that recognition of a right created by state statute or by private agreement would do violence to principles constituting the foundation of bankruptcy law (11 U.S.C. §506(b)).

41.     In exercising its discretion in this matter, any relief granted must still remain reasonable given the fact-specific circumstances of the case.   The relief sought by the Receiver is clearly unreasonable given the facts that:

  a.     The Maturity (not Default) Interest Rate arises under the Note which matured prior to the estate being placed under receivership;

  b.     The delay in closing the sale of the Property is in no way attributable to the Lender;

c.    The purchase price of the Property is in the sum of $9 million, whereas Lender is owed only approximately $3.5 million,[8] including the Maturity Interest, leaving approximately $5.5 million to be used by the Receiver to, on his own version "*make payment of property taxes on all properties, insurance on certain properties, a host of administrative expenses, and significant professional fees.*" No mention is made of the creditors which are allegedly being prejudiced whilst the bulk of the $6 million balance will evidently be allocated towards other properties and "*significant*" fees and expenses incurred in respect of the receivership.

42.    Additionally, the Receiver has not provided this Court with any authority that he is not bound to abide by a loan agreement and/or that the Maturity Interest charged in respect of a Note which had matured at the time of the commencement of a receivership, is subject to being stayed as contended for.

43.    In *In re DEL-A-RAE, INC.*, 448 B.R. 303 (Bankr. S.D. Ga. 2011), the bankruptcy court held that a creditor was entitled to accrue postpetition interest at the promissory note's Maturity/Default Rate of Interest (of 16%) from date of maturity going forward, particularly if said rate did not violate state law and that any balancing of the equities did not favor precluding use of Maturity or Default Rate of Interest. As in the case of *In Re Gilikin*, Case No. 09-06178 (March 3, 2011), the Judge held that the contract rate of interest was the Maturity/Default Rate and that this was the appropriate rate of interest to apply. Similarly in *In re Sublett*, 895 F.2d 1381, 1385 (11th Cir. 1990), the Default Interest Rate charges were allowed as a consequence of being provided for by the loan instrument.

---

[8]As of today, November 10, 2023, Lender is owed as follows:

| | |
|---|---|
| Principal amount: | $2,996,429.52 |
| Interest: | $619,005.72 |
| Late Fees: | $93.18 |
| Attorneys' Fees: | $14,767.60 (not including fees today) |

44.     The Court, in *In Re Moon*, 648 B.R. 73 (BAP 9th Cir. 2023) held that post-maturity interest could not be denied to a lender on the basis of equitable estoppel.

45.     This Response is limited to the grounds set forth in the Motion and Lender reserves the right to amend, supplement, or file additional substantive or procedural responses to any subsequent pleading by the Receiver.

WHEREFORE, PREMISES CONSIDERED, Lender TEXAS REPUBLIC BANK respectfully requests that the Court approve the sale of the Frisco Gate Property Free and Clear of All Liens, allow Lender's interest to accrue at the Maximum Rate as allowed under the Note until closing, deny payment of any junior or unsecured claims at closing prior to Lender being paid in full, and to the extent the Court seeks to bifurcate the claim of Lender, the lien of Lender be transferred to the proceeds from the sale of the Frisco Gate Property until such time as said claims are allowed and for such other relief as is just and proper.

Respectfully submitted this the 10th day of November, 2023.

SCHEEF & STONE, L.L.P.
2600 Network Boulevard
Suite 400
Frisco, Texas 75034
Telephone: 214.472.2100
Telecopier: 214.472.2150


By:   /s/ Patrick J. Schurr
    Patrick J. Schurr
    State Bar No. 17853530
    Patrick.schurr@solidcounsel.com
    Shirley B. Rose
    State Bar No. 24137167
    Shirley.rose@solidcounsel.com

LENDER'S VERIFIED RESPONSE IN OPPOSITION TO
RECEIVER'S VERIFIED AND EXPEDITED MOTION - PAGE 16

ATTORNEYS FOR TEXAS REPUBLIC BANK

## **VERIFICATION**

My name is David Baty and I am the president of Texas Republic Bank, the Lender as said term is defined hereinabove.   I am over the age of 18 and am fully competent to make this verification given my position as president of Texas Republic Bank.   I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

_____/s/ David Baty_____
David Baty

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served on counsel for the Receiver, and any parties requesting notice herein, via electronic means, on this 10th day of November, 2023.

_/s/ Patrick J. Schurr_____

LENDER'S VERIFIED RESPONSE IN OPPOSITION TO
RECEIVER'S VERIFIED AND EXPEDITED MOTION - PAGE  17