**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

**RECEIVER'S EXPEDITED MOTION TO AMEND**
**ORDER SUPPLEMENTING RECEIVERSHIP ORDER**
**AND NOTICE OF SUPPLEMENTAL INFORMATION**
**REGARDING MYRA PARK 635, LLC**

Cort Thomas, as Receiver, respectfully moves the Court to amend the Receivership Order, as Supplemented [Dkt. 29, 62], and further provides notice that he withdraws his recommendation that Myra Park 635, LLC ("Myra 635") be included within a freeze order, [Dkt.308, ¶ 188]. **Because of the urgency of the requested relief from Myra 635's perspective, the Receiver requests expedited consideration**. In support, the Receiver respectfully shows the Court as follows:

**SUMMARY**

On November 2, 2023, the Receiver received information indicating that Myra Park 635, LLC ("Myra 635") is not controlled by Tim Barton or any current Receivership Entity. Moreover, to date, the Receiver similarly has seen no evidence that Myra 635 received Investor Funds, the proceeds of Investor Funds, or the benefit of any Investor Funds and has received an affidavit from Myra 635's principal confirming it did not receive Investor Funds or their proceeds. While Myra 635 was previously included within the scope of the Initial Receivership Order based on the Receiver's motion to supplement, and more recently, the Receiver recommended inclusion within

1

the scope of an asset freeze if the Court issues a new receivership order.  The Receiver now moves the Court to amend the Order Supplementing the Initial Receivership Order to exclude Myra 635 and provides notice of the additional information included below for the Court's consideration in determining the SEC's motion for an asset freeze that includes Myra 635 within its scope.

## BACKGROUND

1.      In response to the SEC's Motion for Appointment of Receiver ("Motion to Appoint") [Dkt. 6], the Court entered the Order Appointing Receiver ("Receivership Order") [Dkt. 29]. As stated in the Receivership Order, its intent is, among other things, to marshal and preserve assets for the further and eventual distribution to investors defrauded by Barton and other defendants, as well as to penalize past unlawful conduct and deter future wrongdoing. *Receivership Order,* p. 2.

2.      The factual basis for inclusion of the entities identified in the Receivership Order was Barton's misappropriation of investor funds, which the SEC's evidence demonstrated he misused to, "among other things, purchase properties in the name of other entities he controlled, pay undisclosed fees and commissions, pay expenses associated with unrelated real estate development projects, and fund his lifestyle."  [Dkt. 6, p. 1; Dkt. 7, pp. 10-15]. The SEC's investigation revealed, that "Barton, acting *through various entities he controls*, misused a significant portion of the investor funds to purchase real property interests, including several parcels of raw land in Texas." [Dkt. 7-1 at ¶¶ 26-33 & Ex. B. (pdf pgs. 10-17) (emphasis added)].

3.      The SEC relied on the Declaration of Carol Hahn, ("Hahn Dec") which provided evidence in support of the Motion to Appoint—to the extent the evidence was discoverable prior to filing—about Barton's practice of commingling investor funds and transferring those funds for his own use to the Barton-controlled entities, "***including but not limited to***" those listed in the SEC's Motion.

A.      **The Motion to Supplement**

4.      In communicating with lenders, banks, vendors, creditors, counsel in cases adverse these entities, and others, as well as evaluating the debt and equity held by Receivership Entities, the Receiver needed confirmation that the entities he discovered also fell within the scope of the Receivership Order. Accordingly, the Receiver filed a Motion to Supplement the Receivership Order ("Motion to Supplement") and sought a supplemental order identifying more than one hundred additional entities controlled by Barton as included in the Receivership from inception. Dkt. 41, p. 1.

5.      The Motion to Supplement did not seek to add any entities controlled by non-parties or otherwise expand the scope of the receivership. On the contrary, many of the additional entities were identified in a list provided by Barton to the SEC before the lawsuit was filed. Dkt. 42, pdf pp. 39-40. Instead, the Motion to Supplement sought clarification and a supplemental order expressly identifying the additional entities as "***other entities that Defendant Timothy Barton directly or indirectly controls.***" Dkt. 41.

6.      The Motion was supported by the Receiver's Declaration in which he provided testimony about the basis for his conclusion that the additional entities were controlled by Barton. The Receiver's conclusion was supported by, among other evidence: (a) binders with entity information located at the Turtle Creek Property occupied by Barton and the entities (which included Myra 635); (b) tax records; (c) the common addresses used by Barton and virtually all entities; (d) additional documents reviewed at the Turtle Creek Property, for instance real property records, contracts, bank records and bills; (e) a spread sheet located in the Turtle Creek Property identifying virtually all entities included in the Motion; (f) inclusion of several of the entities in a list of on-going litigation managed by counsel who officed on-site with Barton; and (g) interviews. Dkt. 42, pdf pgs. 5-7.

7.      Before filing the Motion, the Receiver sent a preliminary list of supplemental entities to

all counsel. Barton's counsel identified several entities that Barton claimed he did not control, or which Barton otherwise objected to inclusion. Barton, however, did not object to the majority of the entities included in the list as subject to his control. Dkt. 42 (*Thomas Dec.* ¶¶ 8-9).  Barton's counsel did not identify Myra 635, LLC ("Myra 635") as outside of his control.

8.    Myra 635 was one of the entities for which a binder of organizational documents was included at the Turtle Creek Property.  Those documents also reflected the entity was organized by Vance McMurray, the organizer of many if not most other entities owned and controlled by Barton, that it used another Barton entity as its agent for service of process.  The initial manager was the wife of an individual who has engaged in numerous transactions with Barton.

9.    Barton's counsel did not identify Myra 635 as an entity that Barton did not control.

10.    On November 16, 2022, the Court granted the Motion to Supplement and identified Myra 635, LLC as a Receivership Entity.  Dkt. 62.

11.    On June 28, 2023, as amended on August 31, 2023, the Fifth Circuit vacated the Initial Receivership Order and instructed the District Court to consider various factors set out in *Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012).

**B.    SEC's Motion for New Receivership Order**

12.    Much has occurred in the eleven months that have passed since the Court granted the Receiver's Motion to Supplement, but Barton's court-mandated cooperation and provision of information to the Receiver has not.  *See* Dkt. 29, ¶¶ 7. 11. 12. 33; Dkt. 308, ¶ 198.  As explained in his Motion to Compel, Dkt. 133, Barton has steadfastly refused to provide the information requested by and necessary to the Receiver.

13.    Thus, in connection with his Declaration and Interim Report, Dkt.308, filed after the Fifth Circuit vacated the Initial Receivership Order, the Receiver identified Myra 635 as an

entity over which he believed an asset freeze was appropriate.    With respect to Myra 635 and numerous other entities, the Receiver stated:

> "Finally, a host of entities exist for which documentation in the Turtle Creek Office or on the Texas Secretary of State's website indicates Barton's control or ownership but to which my team has not yet traced Wall Investor Funds.  Lack of tracing to date does not mean that Investor Funds did not flow into these entities, since we have focused to date on entities holding assets and for which the Financial Records or Business Records demonstrated the most involvement with or readily identifiable receipt of Wall Investor Funds.  My forensic accounting is ongoing. Indeed, I suspect that based on the payments to the Texas and Delaware Secretaries of State to form each of these entities even the formation was paid for with commingled Wall Investor Funds.  Some of these entities may never have operated. Others may be holding companies in the chain of ownership for other Initial Receivership Entities or properties listed above.  Since I do not have organization charts for the 160+ entities listed herein, and since to date  Barton has refused to meet with me or provide information regarding the structure of his entities, I do not currently have sufficient information to confirm whether any of the below entities own assets or hold beneficial ownership positions in other Initial Receivership Entities that hold assets acquired with or benefitted by Wall Investor Funds.  At the same time, because I likewise do not have sufficient information to rule out that any of these Entities received or benefitted by Wall Investor Funds, freezing each of the following entities would preserve any assets owned by these entities and preserve the status quo while allowing time for further investigation:"

Dkt. 308 ¶ 188.

14.    In its Motion for Appointment of Receiver, the SEC did not seek to include Myra 635 as a Receivership Entity, but instead, sought to include it within a freeze as an entity for which additional analysis is necessary to confirm its role. Dkt. 309, p. 14; 309-2.

## C.    Myra 635's Current Ownership

15.    On November 2, 2023, counsel for Myra 635 contacted the Receiver and provided confirmation that (1) Marketspace Capital Holdings, LLC ("Marketspace") is the sole manager of Myra 635 and the sole member of Myra 635, following Marketspace's purchase of all membership interest in the entity from Diana Edelman; (2) at the time of the  purchase, Myra 635 and a third entity, Stone Street Development, LLC had entered into a Purchase Agreement to acquire 3 Medical Parkway, Farmers Branch, Texas (the "Property") from Prime A Investments, LLC, a

Delaware Limited Liability Company (the "PSA"); (3) the PSA was the only asset held by Myra 635 at the time Marketspace acquired it; and (4) Barton was not involved in the PSA, had no ownership or control over Myra 635 or Stone Street, and is not involved with Marketspace, its operations, management, or assets.  *See* **Exhibit A**.

16.    Marketspace also confirmed Barton does not now control Myra 635, and to the best of its knowledge, never has.

17.    To date, neither the Receiver nor his accountants have traced any Investor Funds into Myra 635, or into the Property, and similarly, Myra 635 is unaware of having received any funds from Barton or any Receivership Entity.  **Exhibit A**.

18.    Marketspace has indicated inclusion in the Initial Receivership Order is an event of default under its loan documents and thus, despite the impending vacatur of the Initial Receivership Order, seeks exclusion from the receivership on an expedited basis.   Additionally, a third-party with whom Myra 635 is trying to resolve a dispute has raised concerns regarding Myra 635's current inclusion in the Initial Receivership Order.

## **DISCUSSION**

The web of entities controlled by Barton and operated as a collective enterprise is extensive. Comparatively, very little public information exists about the ownership or control over limited liability corporations.  Barton refused to provide information about the Receivership Entities he controlled, to which he directly or indirectly transferred Investor Funds, or which he used to secrete or otherwise improperly dissipate Investor Funds.  Thus, when he filed his Motion to Supplement the Initial Receivership Order, the Receiver relied on substantial evidence regarding Barton's creation, control, and operation of entities located in the Turtle Creek Property and additional circumstantial evidence to demonstrate the basis for inclusion of many entities within the scope of the Initial Receivership Order.  *See* Dkt. 42.

**6**

In *SEC v. Barton*, 79 F.4th 573, 577 (5th Cir. 2023), and following its prior holding in *Netsphere v. Baron,* 703 F.3d 296 (5th Cir. 2012), the Fifth Circuit explained the standard to which this Court should adhere in deciding whether to enter a new receivership order and the scope of such order entities to include in a such an order.  Accordingly, the SEC did not request Myra 635's inclusion in a new Receivership Order, but instead, requested inclusion of Myra 635 within the scope of an asset freeze as an entity regarding which additional time and investigation is needed to determine whether it received Investor Funds or benefitted from such funds.  Dkt. 309; *see also* Receiver's Report, Dkt. 308, ¶ 188.

The Receiver hereby provides notice of the supplemental information reflected above regarding Marketspace's acquisition of Myra 635, and the additional information included in the Affidavit attached as Exhibit A (1) confirming that no evidence has been discovered to date that Barton or any other Defendant was involved in Myra 635's purchase of the Property or the transfer of the membership interest in Myra 635 to Marketspace, and, (2) the absence of any evidence discovered to date reflecting the transfer of any Investors Funds or their proceeds to Myra 635, used to purchase the Property, or Myra 635's receipt of any benefit from Investor Funds.  Based on this additional information, the Receiver also requests that the Court amend the Order Supplementing the Initial Receivership Order, Dkt. 62, and strike Myra 635 from that Order.

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully prays the Court amend the Order Supplementing Receivership Order and requests such other and further relief to which he may be justly entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    C. Alan Carrillo
     Texas Bar No. 24109693
     alan@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on November 10, 2023, the Receiver conferred with counsel for the SEC and Barton. The SEC is unopposed to the relief requested herein. Barton did not respond.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because motion is being filed with the Court's electronic-filing system.

8

# EXHIBIT A

**AFFIDAVIT OF SOHAIL HASSAN**

STATE OF TEXAS                    §
                                  §
COUNTY OF HARRIS                  §

BEFORE ME the undersigned authority, on this day personally appeared Sohail Hassan, known to me and who after being by me duly sworn on oath stated:

"My name is Sohail Hassan. I am a Manager of Marketspace Capital, LLC, a Texas limited liability company ("**MSC**"), and by virtue of my role with MSC have personal knowledge of the facts stated below, each of which is true and correct.

1. MSC is the sole manager of Myra Park GP, LLC, a Texas limited liability company ("**GP**"). GP, in turn is the sole-manager of MYRA PARK 635, LLC a Delaware limited liability company (formerly a Texas limited liability company), ("**Company**") with an address of 9100 Southwest Freeway, Suite 201, Houston, Texas 77077.  GP is also the sole general partner Myra Park Investors, LP ("**Investors**") a Texas limited partnership. and is the sole member of the Company.

2. On November 2, 2023, I received notice through counsel that Company was named in an Order Granting Receiver's Motion to Supplement Order Appointing Receiver filed with the United States District Court of the Northern District of Texas, Dallas Division under civil action no. 3:22-cv-2118-X ("**Order**"). Before November 2, 2023, I did not have personal knowledge or notice that Company was named in the Order nor am I aware of any other agent or representative of Company having knowledge or notice that Company was named in the Order.

3.     It is my understanding that Company was originally formed as a Texas limited liability company on October 29, 2019 by Vance McMurray, with Diana Edelman listed on the certificate of formation as the sole manager.  It is also my understanding that Stone Street Development, LLC, a Texas limited liability company ("**Stone Street**") entered into a contact to purchase the real property and improvements thereon located in 3 Medical Parkway, Farmers Branch, Texas (the "**Property**"), and later assigned its interest in the contract to the Company. It is my understanding that subsequently, Company entered into a Purchase and Sale Agreement ("**PSA**") with Prime A Investments, L.L.C., a Delaware Limited Liability Company ("**Prime A**") dated March 2, 2020. Several amendments to the PSA were executed after the execution of the initial PSA. The Earnest Money associated with the PSA was funded in part by MSC and one of my personal family friends, Jason Wu.

4.     Based on documents I have seen, the original Company Agreement of Company, dated October 29, 2019, shows that Diana Edelman held 100% of the membership interests in the Company and was appointed the Manager.

5.     On or about April 1, 2020, MSC entered into that certain Assignment and Membership Interest Purchase Agreement (the "**MIPA**") with Stone Street, the Company, Diana Edelman, an individual and sole owner of the member interests in the Company. At the time the MIPA was entered into, the Property was also under contract between Stone Street and the Company. Based on information provided to me at the time, I understood that Stone Street was managed by Robert Edelman.  Because Stone Street was still a party to the contract for the sale of the Property, Stone Street was also involved with the MIPA. The MIPA transferred, sold, and conveyed all ownership interests and related rights in and to the Company to MSC. There was no earnest money deposit associated with the MIPA.

6.     To the best of my knowledge, prior to April 1, 2020, neither Tim Barton nor any other entity he owned or controlled had any control over the Company or provided any funding to the Company, or funding used in the purchase of the Property

7.     On or about April 30, 2020, MSC assigned its interest in the MIPA to Marketspace Capital Holdings, LLC, a Texas limited liability company ("**MSCH**").  MSCH acquired all the interest in the Company pursuant to the MIPA and caused the Company to close on the Property pursuant to the PSA on or about that date. At the time of the PSA, the only asset owned by the Company was the Property subject to the PSA.

8.     From the time of Closing, the Company has continuously been solely under the control of MSC and/or its affiliates. On or about June 30, 2020, MSCH assigned 100% of its membership interest in the Company to Investors (the "**Investors Assignment**").

9.     Since the time of the Investors Assignment, the Company has at all times been owned by Investors, and solely controlled by GP through MSC. MSC has caused the Company to take out construction loans and begin construction of a multifamily project on the Property.

10.     On August 9, 2023, Company was converted into Delaware limited liability company for the purpose of obtaining a refinance loan on the Property.

11.      To the best of my knowledge, other than MSC's sale of that certain .515 acre tract of land situated near the southwest corner of Turtle Creek Blvd and Hall Street ("Hall Property"), neither MSC, MSCH nor Company have had any affiliation or any business dealings with Timothy Barton ("**Barton**"), any of the other Receivership Entities, or named Defendants in the case in which the Order was filed. For clarity and for the avoidance of doubt, neither MSC, MSCH, nor Company were aware that the transaction involving the Hall Property involved or was in any way connected to Barton, any other of the Receivership Entities, or named Defendants in the case in which the Order was filed.

12.     To the best of my knowledge, from around April 30, 2020 forward, Barton had no involvement with, or control over, any of the entities identified above, and did not control or own any interest in the Property, and did not provide, directly or indirectly, any funding to Company, GP, MSC, Investors, or MSCH.  To the best of my knowledge, at no point in time was any of the membership interest in Company, Investors, GP, MSC, or MSCH

owned by Barton or any other entity named as a Defendant, Relief Defendant or  Receivership Entity in the case in which the Order was entered."

[Signature Page to follow]

By: _____

Sohail Hassan, as Manager of
Marketspace Capital, LLC, the
Sole Manager of Myra Park GP, LLC,
Which is in turn, the sole Manager of
Myra Park 635, LLC

This instrument was acknowledged before me on November 09 , 2023, by Sohail
Hassan, as Manager of Marketspace Capital, LLC, the Sole Manager of Myra Park GP, LLC,
which is in turn, the sole Manager of Myra Park 635, LLC.

_____
Notary Public, State of Texas

**JOSHUA C KING**
**Notary ID #133871443**
**My Commission Expires**
**July 21, 2026**

July 21, 2026
_____
My Commission Expires