## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § | |
| CARNEGIE DEVELOPMENT, LLC | § | |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § § | |
| *Defendants,* | § § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § § | |
| *Relief Defendants.* | § | |

**DEFENDANT TIMOTHY LYNCH BARTON'S OPPOSITION TO RECEIVER'S EXPEDITED MOTION TO APPROVE, RATIFY, ADOPT, AND OTHERWISE "BLESS" PREVIOUS ACTIONS OF RECEIVER AND ORDERS ISSUED PRIOR TO EFFECTIVE DATE OF VACATUR OF INITIAL RECEIVERSHIP ORDER AND TO <u>RECEIVER'S CONTEMPORANEOUSLY FILED SPECIFIC RATIFYING MOTIONS</u>**

Defendant Timothy Lynch Barton ("Defendant" or "Barton") files this Opposition to the Receiver's Expedited Motion to Approve, Ratify, Adopt, and Otherwise "Bless" Previous Actions of Receiver and Order Issued Prior to Effective Date of Vacatur of Initial Receivership Order and to the Receiver's contemporaneously filed specific ratifying Motions (ECF Nos. 372, 374, 376, 378).

On August 31, 2023, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") vacated this Court's Order Appointing Receiver (Dkt. 29) and immediately suspended the unlawfully appointed Receiver's authority to sell or dispose of property belonging to Defendant. *See SEC v. Barton*, 79 F.4th 573, 581–82 (5th Cir. 2023). The Receiver, recognizing that the Fifth Circuit's vacatur will take effect in a matter of weeks and assuming that the Court will enter an order appointing a new receiver, is now asking the Court to ratify, *nunc pro tunc*, actions taken under its vacated and unlawful exercise of authority. The Court should reject this blatant attempt to circumscribe the Fifth Circuit's ruling and should deny the Receiver's ratifying motions.

## I.    ARGUMENT & AUTHORITIES

First, as the Defendant has argued and is arguing in its contemporaneously filed post-trial papers, a new receivership should not imposed by the Court. This suite of motions operates as if a new receivership is all but guaranteed, so much so that ratification of specific, now-invalidated sale orders should be reanimated. For the reasons set forth herein and in the related papers filed today, there should be no new receivership and, as such, the actions contemplated in the Receiver's motion are unnecessary and inappropriate.

By vacating the Court's Order appointing a receiver, the Fifth Circuit rendered the order a legal nullity, effectively restoring the parties to their pre-receiver status. *See Alicea v. Comm'r of Soc. Sec.*, 855 F. App'x 494, 496 (11th Cir. 2021) ("[A] vacated ruling is 'officially gone,' has 'no legal effect whatever,' '[is] void,' and '[n]one of the statements made [therein] has any remaining force.'" (alteration in original) (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc))); *In re Smith*, 165 F. App'x 961, 967 (3d Cir. 2006) (noting that "the 'slate was wiped clean'" where underlying decision was vacated). Vacated orders are treated as though they never went into effect. *See United States v. Harris*, 155 F. Supp. 17, 21 (S.D. Cal.

2

1957) ("The general rule is that when an order or judgment is vacated the previously existing status is restored and the situation is the same as though the order or judgment had never been made." (quoting A.C. Freeman, *A Treatise of the Law of Judgments* 594–95 (5th ed. 1925))); *Lufkin v. McCallum*, 752 F. Supp. 421, 423 (N.D. Ala. 1990) (noting that, when opinion was vacated, "it was as if it had never existed").

To be clear, the Fifth Circuit had a series of remedies before it when it decided that the order seizing all the Defendant's assets and commending them to Mr. Thomas's care was error. It could have decided that the Court's error was one of inadequate explanation, identified the error, and remanded it for further consideration. It did not. Instead, the Court held that the Commission did not make, and the District Court did not demand, the showings necessary to deprive a citizen of his property rights, including with regard to what property and companies were seized. That was not only an academic legal error; it made the seizure illegal. The Fifth Circuit, therefore, chose to vacate this Court's order, an appellate remedy that has the intentional and well-established effect of evaporating it and the authority that flows from it as if it never existed.

The Court cannot now ratify actions taken pursuant to authority exercised under a vacated order because vacated orders are entitled to no legal effect. *See Salitros v. Chrysler Corp.*, 306 F.3d 562, 575 n.2 (8th Cir. 2002) ("A vacated decision is deprived of its precedential effect."); *cf. Falcon v. Gen. Tel. Co.*, 815 F.2d 317, 320 (5th Cir. 1987) ("[T]o vacate a judgment 'is to take away from it any precedential affect.' In essence, when a judgment is vacated '[a]ll is effectually extinguished.'" (internal citation omitted) (quoting *Troy State Univ. v. Dickey*, 402 F.2d 515, 517 (5th Cir. 1968), and *Lebus v. Seafarer's Int'l Union, Etc.*, 398 F.2d 281, 283 (5th Cir. 1968))); *United States v. M.C.C. of Fla., Inc.*, 967 F.2d 1559, 1561 (11th Cir. 1992) ("[A] general vacation

3

by an appellate court of the lower court's judgment vacates the entire judgment below, divesting the lower court's earlier judgment of its binding effect.").

Perhaps recognizing that a receiver cannot exercise authority pursuant to a vacated order, the Receiver nevertheless requests that the Court ratify its prior actions *nunc pro tunc* in a new order. This is entirely improper. A *nunc pro tunc* order is "only a means for regularizing, as a matter of court record, court orders that were *in fact* entered in the past but that, due to some clerical oversight, did not find their way onto the docket or other appropriate court record." *United States v. Gillespie*, 666 F. Supp. 1137, 1139 (N.D. Ill. 1987). "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court . . . ." *Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390 (1912). It replaces a prior order, with another amended one, as if the subsequent one had been originally entered. That is simply not an option when a prior erroneous order is vacated and wiped away. Indeed, the Receiver is not seeking relief from a clerical oversight, but instead *post hac* ratification of unlawful acts taken pursuant to a vacated order. These requests are intended to circumvent the established principles discussed above that prevent courts from enforcing vacated orders.

The Fifth Circuit made that clear in this case. The Court did not contemplate that the District Court would consider whether it was right the first time and justify its original appointment of a receiver. Instead, it contemplated the possibility that the District Court would entertain a motion from SEC to appoint "a *new* receiver" or impose "a *new* receivership." *See Barton*, 79 F.4th at 579–81 (noting that "the district court may consider whether to appoint a new receivership," the "possibility that a new receivership would cover some of the same entities," and that "[s]hould the district court decide that a new receivership is justified on remand, it can only extend over entities that received or benefitted from assets traceable to Barton's alleged fraudulent

4

activities that are the subject of this litigation").  If the Court grants the SEC's motion and holds it has now marshalled sufficient evidence to justify the drastic remedy of seizing property through a receivership (which it should not), that ruling would be no validation of what happened in October 2022 and the months since.  It would be a fresh start, presumably over a smaller receivership estate. And it would be up to that "new receiver" to move this Court for what is appropriate under the circumstances of any order for a "new receivership," and for interested parties to bring arguments to the Court for and against those proposals, based upon the current circumstances.

The Receiver's cited cases do not establish entitlement to ratification *nunc pro tunc* of actions made under a prior, unlawful receivership.  In *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020) (per curiam), the Supreme Court rejected a variant of the same argument that the Receiver makes here.  There, the defendant removed a state court case to federal court on the basis that the litigation was sufficiently related to an ongoing bankruptcy proceeding.  *Id.* at 699–700.  The bankruptcy court dismissed the bankruptcy proceeding on March 13, 2018, but the district court action was not remanded to the state court until August 20, 2018. *Id.* at 700.  In the interim, the state court issued several payment and seizure orders, and the district court issued its remand order "by way of a *nunc pro tunc* judgment stating that the order 'shall be effective as of March 13, 2018.'"  *Id.*  The Supreme Court rejected the district court's attempt to use a *nunc pro tunc* order to rewrite the case's procedural history.  *See id.* at 701 ("Put colorfully, '[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating "facts" that never occurred in fact.'"  (quoting *Gillespie*, 666 F. Supp. at 1139)).  The Court concluded that the state court orders entered prior to remand were void.  *Id.*

The Receiver's citation to *David v. King*, 653 B.R. 833 (E.D. Va. Aug. 4, 2023) is similarly inapposite.  In *King*, the district court considered whether the bankruptcy court could approve *nunc*

*pro tunc* expenses incurred by a Chapter 11 trustee prior to the conversion of the proceedings to Chapter 13 where the former trustee's request was made after the conversion. *Id.* at 834–35. The *King* Court ultimately determined that the trustee could seek approval after his role had terminated for lawful actions taken during the Chapter 11 proceedings. *See id.* at 838 ("In effect, this allowed the former Chapter 11 trustee to act on behalf of the bankruptcy estate only for the period he was the acting Chapter 11 trustee."). Unlike the instant case, there was never any dispute that the Chapter 11 trustee was properly appointed and exercised lawful authority during the period that he acted as trustee. In fact, the court had previously *rejected* the trustee's attempt to seek approval for actions taken after the bankruptcy proceedings were converted to Chapter 13 based on a finding that the former trustee had no authority to act on behalf of the bankruptcy estate after his role was terminated. *Id.* at 838.

Here, the Fifth Circuit has determined that the Receiver was improperly appointed and ordered vacatur of the appointment order. The Receiver has, thus, *never* exercised lawful authority over the receivership properties such that *nunc pro tunc* ratification of its prior actions would be appropriate. Ratifying *nunc pro tunc* actions taken during an unlawful exercise of authority would therefore improperly rewrite the procedural history of this case. *See Acevedo Feliciano*, 140 S. Ct. at 701 ("Put plainly, the court 'cannot make the record what it is not.'" (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990))).

The Receiver's proposed approach also would effectively eliminate the heightened standards for appointment of a receiver, which is "a harsh and extreme remedy which should not issue except upon a clear showing that the movant is entitled thereto under applicable statutes or established principles of equity." *Whisenhunt v. Park Lane Corp.*, 418 F. Supp. 1096, 1098 (N.D. Tex. 1976). Under this approach, a court could appoint a receiver with little or no analysis or due

process, allow the receiver to engage in a broad range of disruptive conduct, and later ratify such prior conduct through a new, properly considered and entered appointment order. This is entirely inconsistent with the purpose of a receivership as an equitable remedy, and the Fifth Circuit's decision in this case, holding that the Receiver's appointment was illegal in the first instance.

To the extent that the Court ultimately enters a new receivership order in some form (which, again, it should not), such order would establish an entirely new receivership. The Receiver cites no case for the remarkable proposition that this new receivership would be entitled to ratification of earlier actions taken by an unlawfully appointed and invalid receivership. Nor is there any guarantee that a new receiver, if appointed, would even take those same actions or request their ratification. The Receiver should not be permitted to bootstrap acts taken during its unlawful tenure under a new receivership.

Finally, the Receiver's motion requests various summary actions by the Court that are both premature and inappropriate. In each instance, the Court should defer consideration of these proposed actions until after it has decided whether a new receivership is to be imposed, who is to be appointed as the receiver to oversee it, and any receivership's scope.

First, the Court should reject the Receiver's request for approval of carryover and assumption of any accrued but unpaid expenses, costs, or fees, incurred in connection with the Initial Receivership Order. The Receiver's massive accrual of fees is an issue very much in dispute and one that deserves individual consideration, with an opportunity for the Defendant to challenge them in due course. The question will not only be whether the Receiver is paid, but who will do the paying, as the party invalidly seeking a receivership can and often is held liable. The appropriateness of the fees and expenses, and the source of their reimbursement, simply cannot be assessed in a vacuum. This is particularly the case for what is likely to be (based on the volume

of work product produced) a large amount of fees incurred *after* the Fifth Circuit's vacatur order. There is no reason whatsoever that this issue needs to be decided here and now. There will be plenty of time to do so, in full apprehension of the outcome.

Second, a continued litigation stay is not necessary. Should the Court impose a new receivership, it can order a litigation stay in connection with that new receivership. There is no risk of there being a time gap in which litigants can seize upon the assets at issue.

Third, there is no need for the Court to take any action with regards to what the Receiver refers to as Barton's "continuing contempt." As the Receiver acknowledges, the Defendant cannot be held in contempt of the vacated receivership order. The Court should not prejudge how enforcement of any future receivership order's coercive terms should be handled, especially as the parties are disputing (1) whether there should be a receivership; (2) if so, over what corporations; and (3) if so, what the terms of the accompanying order should be given the parallel criminal proceedings. The Receiver provides no justification, none, for jumping over that process now. If anything, the Receiver is forecasting that his primary mission, if reappointed, will be as an investigatory stalking horse for a federal Government that is maintaining a parallel criminal prosecution against the Defendant. That is what, if anyone, the Government should doing with public funds, not what the Receiver should be doing burning through assets ostensibly being safeguarded for return to lenders.

Fourth, the Receiver's requests related to "release, immunity, and continued jurisdiction" seek some kind of blanket immunity from any and all future legal actions. In support of its motion, the Receiver analogizes himself to the Court. (We must have missed his appointment by the President and confirmation by the Senate.) And the Receiver rattles off the circumstances under which the Court would be immune.

Whether the Receiver is immune for events during the time of his illegal appointment is not something to be decided in a vacuum. No legal claims are pending or threatened. If a claim arises, the court handling the matter can decide the Receiver's immunity applied to the claim. But no such legal actions are pending. There are, perhaps, valid claims against the Receiver, including for its continued operation and disposal of assets during the pendency of the Fifth Circuit's vacatur order. But, if such a claim is brought at some future point, a court of competent jurisdiction can consider it then. Our judicial system does not grant blanket immunity over any and all claims, no matter how hypothetical. It decides cases and controversies. U.S. Const. Art. III § 1. The Court should decline the invitation to provide an advisory opinion on future potential claims here. Nor should or can the Court retain jurisdiction over all claims against the Receiver. No litigant, not even the Receiver, is entitled to pick his own judge and jump over potential questions of federal jurisdiction (after all, any claim of immunity would be a federal defense). The Court should address these issues, which may never arise, on a case by case basis.

Fifth, the Court should reject the Receiver's requested ratifying motions for previously approved sales. As the Fifth Circuit has made clear in addressing individual appeals of those sales, those appeals are mooted because the Fifth Circuit's decision vacating the receivership will have the effect of vacating those motions (ECF Nos. 360, 366, 367, 368). If the Court appoints a "new receiver," which it should not, it will be up to that "new receiver" to seek approval for sales based on all the circumstances of the estate and the marketplace then in place. Any historical approval, aside from being vacated and evaporated from legal effect, will be based on a stale record regarding ever changing market conditions and a receivership, if there is one, with new contours and terms.

Importantly, there would be absolutely no prejudice to any party by the Receiver moving again, with current evidence, for a new approval. Except, potentially, in delaying the speed with

which the Receiver can be paid for what is presumably a wallop of a bill he is holding *in pectora*. Respectfully to the fiscal concerns of the Brown Fox law firm, this Receiver has been paid at a lightning-fast rate. The Stanford receiver, by contrast, was required to wait until conclusion of the receivership for most of its fees, to be evaluated in proportion to the size of the work and the results for the beneficiaries. If a new receiver were appointed (and one should not be) and if Mr. Thomas were selected as that "new receiver" (and he should not be) and if he has to move for new sale approvals on a fresh record before raising even more cash for his seven-figure fees, he will still have been paid more quickly than many major receivers in this jurisdiction and frankly most law firms representing a private client. His ratification requests are premature.

In any event, the Defendant hereby incorporates all arguments in opposition to the individual motions over which the Receiver seeks ratification previously made.

This whole exercise is running up the costs to the Defendant of addressing the conduct of a receivership held to be illegal, and the Defendant reserves the right to supplement it arguments in opposition to these premature motions.

## II.    CONCLUSION & PRAYER

For the foregoing reasons, Defendant Timothy Barton respectfully requests that the Court deny the Receiver's Expedited Motion to Approve, Ratify, Adopt, and Otherwise "Bless" Previous Actions of Receiver and Order Issued Prior to Effective Date of Vacatur of Initial Receivership Order and the Receiver's contemporaneously filed specific ratifying Motions (ECF Nos. 372, 374, 376, 378).

Dated: November 10, 2023

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to N.D. Tex.*)
medney@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On November 10, 2023, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney