**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants*. | § § | |

**RECEIVER'S REPLY IN SUPPORT OF HIS EXPEDITED
MOTION TO APPROVE, RATIFY, ADOPT, AND OTHERWISE "BLESS"
PREVIOUS ACTIONS OF RECEIVER AND ORDERS ISSUED PRIOR TO
<u>EFFECTIVE DATE OF VACATUR OF INITIAL RECEIVERSHIP ORDER</u>**

Respectfully submitted,

By: <u> */s/ Charlene C. Koonce* </u>
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

Cort Thomas, as the court-appointed Receiver, submits this Reply in Support of His Expedited Motion to Approve, Ratify, Adopt, and Otherwise "Bless" Previous Actions of Receiver and Orders Issued Prior to Effective Date of Vacatur of Initial Receivership Order [Dkt. 372] (the "Blessing Motion") and would respectfully show the Court as follows:

## SUMMARY

The vacatur of the Initial Receivership Order will occur no later than November 29, 2023. Given that a multitude of significant events have occurred and multiple orders entered since the Receiver's appointment in October 2022, clarity is needed regarding what actions (if any) need to be repeated. The purpose of the Blessing Motion, together with the Receiver's additional Motions To Ratify Various Orders Related to the Sale of The Rock Creek Property, the Amerigold Suites, and the Frisco Gate Property [Dkts. 374, 376, and 378] (collectively the "Ratification Motions" and, together with the Blessing Motion, the "Motions"), is to most efficiently and practically address the factual reality facing the Court and the Receivership. With his Response [Dkt. 397], Defendant Barton cites no authority for his assertion that a court is unable to ratify orders that were previously issued but vacated, based on a new receivership order, if and when one is issued. The Court should overrule Barton's objections to the relief requested and grant the Motions.

## ARGUMENT

**A.      The Initial Receivership Order Was Neither Illegal Nor Unlawful**

As an initial matter, the Blessing Motion does not presume that a new receivership order will be entered. Indeed, the Receiver requested alternative relief in the event the Court does not enter one.[1]   However, in the event that a new Receivership Order is entered, efficiency and

---

[1] *See* Blessing Motion, pp.2; 6 (Motion were filed "[i]n reliance on the likelihood that the Court will enter a new Receivership Order in some fashion," and "if the Court entered a new receivership order."). Alternatively, to the

1

practicality will be best served by granting of the Blessing Motion.  In short, the impending vacatur necessitated the Blessing Motion, which seeks to avoid the increased burden and expense on the Receivership Estate that will likely result without the requested relief.

Further, although Barton's Response repeatedly suggests the Initial Receivership Order was "illegal" and the Receiver's actions in reliance on it were "unlawful," those assertions are incorrect. The Fifth Circuit did not hold this Court lacked jurisdiction to enter a receivership order; it held this Court applied the wrong legal standard.  *SEC v. Barton*, 79 F.4th 573, 578-79 (5th Cir. 2023).  Nor did the Fifth Circuit hold that the Court lacked jurisdiction to create a receivership, acted beyond the bounds of its authority, or even abused its discretion.[2] *Id.* at 579 ("Constraining our review to the district court's limited reasoning in its original order, we cannot say whether it abused its discretion.").  And tellingly, the Fifth Circuit stayed vacatur for 90 days to allow sufficient time following remand for consideration of a new receivership order.  *Id.* at 581-582. Remand thus recognizes this Court's discretion to enter a new receivership order, as well as the importance of allowing appropriate "blessing" and clean up orders if a new order is entered.

**B.     Vacatur Does Not Preclude Ratification Based on a New Receivership Order, *Nunc Pro Tunc***

While vacatur means that, legally, the Initial Receivership Order never existed, factually, vacatur cannot erase all activities that occurred in reliance on it.  As described in the Blessing Motion, those activities are legion. But vacatur does not preclude subsequent ratification premised on a new receivership order.  In support of the contrary argument, Barton merely chases his tail: "[t]he Court cannot now ratify actions taken pursuant to authority exercised under

---

extent the Court is inclined to deny the SEC's Motion, the Receiver respectfully requests that the Court enter a "Closing Order" consistent with the relief requested herein. *Id.* at 15.

[2] *See also,* Blessing Motion, pp. 13-14.

a vacated order because vacated orders are entitled to no legal effect." *Response* p. 3. That of course is the point. Because the Initial Receivership Order will cease to provide the authority on which the Court's additional orders and the Receiver's activities rested, those activities and additional orders require ratification, premised on a *new* receivership order, if one is entered.

Here, the Receiver does not ask for the Court to *pretend* that prior orders had been issued when they had not, or to create a paper trail, *nunc pro tunc*, approving, blessing, and ratifying fictional activities. *Compare Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01, 206 L. Ed. 2d 1 (2020) (rejecting *nunc pro tunc* order to create remand and validate orders issued prior to remand, where no remand order had been entered). Each order, each activity, did, factually, occur. No one forgot to seek these orders, and the court did not inadvertently fail to enter them. *Compare United States v. Gillespie*, 666 F. Supp. 1137, 1138 (N.D. Ill. 1987) (rejecting "'revisionist jurisprudence—a 'now for then' order to 'confirm' action that had never been taken in fact. . .'"). Moreover, that vacatur will render those acts a *legal* nullity and treat them as if they had not occurred, does not change history or eliminate this Court's discretion to re-issue, ratify, or otherwise recognize what has factually occurred. The discussion in *David v. King*, *David v. King*, 653 B.R. 833, 838 (E.D. Va. 2023), underscores this logic. In that case, the court approved the Trustee's engagement of the same counsel, retroactively, that had been approved before the Chapter 7 case was converted to a Chapter 11. *Id.* at  834-835. The Court did not reach back, retroactively to approve engagement of counsel or any activities by the Trustee after the case was subsequently converted to a Chapter 13 (the "Chapter 13 window"), because no trustee is authorized under that chapter. *Id.* at 835; 838. In other words, factually, there had never been a Chapter 13 Trustee, and thus the Court *could not* authorize his engagement of counsel retroactively.

3

In comparison, Barton's arguments wholly miss the mark. While *nunc pro tunc* orders may issue to remedy clerical oversights, they may and should issue in the unique circumstances presented here, where non-ratification would lead to costly rehashing (and in some instances re-briefing) a myriad of issues already decided or acted upon. For instance, Barton has opposed virtually every motion filed by the Receiver during the life of this case. The costs of this opposition to the Receivership have been immense, and the Court has issued voluminous (and often lengthy) opinions. Precluding the colossal waste of receivership assets and judicial resources that will result from requiring the receiver appointed under a new order, if any, to reinvent a wheel that this Court has already manufactured and installed in furtherance of the efficient operation of the receivership falls well within such discretion. Barton cannot rely on vacatur to rewrite history, particularly where the Fifth Circuit *remanded* for consideration of the exact relief that was vacated, and where the Court has broad discretion to administer a receivership how it sees fit. *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) ("It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.") (quoting *SEC v. Lincoln Thrift Ass'n,* 577 F.2d 600, 606 (9th Cir. 1978)).

Finally, Barton's feared conspiracy, where the Court could appoint a receiver improperly at the outset of a case to circumvent the governing "heightened standards," allow that receiver to engage in improper conduct, and then ratify such conduct retroactively based on a later, proper order, is not only far-fetched and an Orwellian dream, but impugns the integrity of the federal courts. Regardless, Barton's parade of horrible did not happen here, and recognizing the factual record in existence through ratification based on a new receivership order hardly warrants this "concern."

**C.**    **Ratifying and Approving the Requested Orders and Activities Is Appropriate**

**1.**    **Carryover of Accrued Fees and Expenses Does Not Eliminate Barton's Entitlement to Object**

Barton contends that his dispute with this Court's prior approval fees and expenses, whether the Receiver should be paid in the future, and "who will do the paying," "cannot be addressed in a vacuum" and thus the Court should not ratify orders approving payment of fees, nor allow carry forward of accrued but unpaid expenses into a new receivership. *Response* p. 8. Ratification of orders authorizing payment of prior fees, however, does not eliminate Barton's purported entitlement to seek the recovery of fees and expenses from the SEC or a different source, irrespective of how unlikely and almost certainly unjustifiable. Nor would appointment of a different receiver or discharge if a new receivership order is not entered change the analysis. *See USA Motel Corp. v. Danning*, 521 F.2d 117, 119 (9th Cir. 1975) (Even where petition for reorganization was dismissed as a bad faith filing, the "trustee, his attorney, and the referee/special master are entitled to reasonable compensation."); *see also SEC v. Striker Petroleum, LLC*, No. 3:09-CV-2304-D, 2012 WL 685333, at *2 (N.D. Tex. Mar. 2, 2012) ("A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred.") (internal quote omitted)).

With the Blessing Motion, the Receiver does not request ***approval*** of fees and expenses the Court has not already approved. With respect to previously approved fees and expenses, the Court has already rejected Barton's objections. With respect to accrued but unpaid fees and expenses,[3] the Receiver intends to file one or more fee applications. Barton will be free to object to payment of those fees and expenses when approval is requested, and he will also be able to reiterate his request for reimbursement from a different source for approved fees at that time.

---

[3] Neither the Receiver nor any of his Retained Professionals have been paid for any time or expenses incurred after March 31, 2023. *See* Dkt. 287.

Barton's objection to the Receiver's requested ratification and carry forward of fees and expenses is meritless.

### 2.    A Continued Litigation Stay is Essential

Barton misses the point of the Receiver's request to ratify and continue the litigation stay in the Initial Receivership Order.  While a new receivership order may and should include the same stay, the myriad of litigation Barton used as a business strategy is stayed based on the stay in the Initial Receivership Order.  To avoid the time and cost of preparing and filing new notices in every lawsuit to continue the stay based on a new receivership order, the Receiver requested that the Court *also* continue the prior litigation stay.  The requested relief aligns with the Court's goals in creating a receivership: preservation of assets.

### 3.    Barton's Continuing Contempt Justifies the Court's Immediate Attention

In his Motion to Compel, the Receiver sought to compel Barton's compliance with the many provisions in the Initial Receivership Order that Barton ignored.  *See* Dkt. 133, 166. The relief was requested not to facilitate any investigation by the SEC or a prosecutor, but because Barton's compliance was essential to the efficient administration of the receivership. *See id.* Nothing about the Receiver's motivation, or the resultant expense and difficulties have changed. Nor apparently, has Barton's disrespect for the Court or his likely continued contempt.

Nonetheless, the Receiver did not request that the Court "prejudge" how enforcement of a new receivership order—presumably based on a proposed order submitted by the SEC which is very nearly identical to the order issued by this Court—should be handled.  Instead, again to avoid the cost, delay, and burden on the estate from Barton's conduct, the Receiver requested that the Court force Barton to tell the Court and the Receiver whether he has or will comply with enforcement provisions of a new receivership order.  Such an order falls well within this Court's

6

discretion in the event it issues a new receivership order. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019); *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).

### 4.    Barton Justifies the Receiver's Request for Release, Immunity and Continued Jurisdiction

Without addressing the extensive authorities that hold a receiver is entitled to qualified judicial immunity,[4] Barton objects to the Receiver's request that this Court release and immunize he and his Retained Professionals for activities undertaken in good faith in performing the Initial Receivership Order, and argues:

> "The Receiver analogizes himself to the Court. (We must have missed his appointment by the President and confirmation by the Senate.) And the Receiver rattles off the circumstances under which the Court would be immune."

*Response* p. 8.  Barton then asserts our judicial system does not permit "blanket immunity" over any claims, but instead decides cases and controversies. And in a preview of things to come, Barton also contends the Court cannot retain continuing jurisdiction over all claims against the Receiver, arguing: "No litigant, not even the Receiver, is entitled to pick his own judge and jump over potential questions of federal jurisdiction (after all, any claim of immunity would be a federal defense)." *Response* p. 9.  Barton is dead wrong on all points.

### i.    Receivers Serve As Judicial Agents

"The receiver is not an agent of the parties . . . [h]e is 'an officer or arm of the court ... appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody[.]'" *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) (quoting *Crites, Inc. v. Prudential Ins. Co. of Am.*, 322 U.S. 408, 414, 64 S.Ct. 1075, 88 L.Ed. 1356 (1944)); *see also Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995)

---

[4] *See* Dkt. 372, pp. 12-13.

("Court appointed receivers act as arms of the court . . ."). Thus, the Receiver does not "analogize himself to the Court;" he recognizes that the Supreme Court has done so.

### ii.    Claims Against the Receiver *Must* Be Filed in This Court

In what has coincidentally been labeled the "Barton doctrine," the Supreme Court has also determined that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour,* 104 U.S. 126, 128, 26 L.Ed. 672 (1881).    The doctrine is jurisdictional. *In re Coastal Plains, Inc.*, 326 B.R. 102, 111 (Bankr. N.D. Tex. 2005), *aff'd*, 338 B.R. 703 (N.D. Tex. 2006).  By requiring that suits against the court's agent can only be filed in the appointing court, the doctrine avoids collateral attacks against orders issued in receiverships (or bankruptcies) through claims asserted against the receiver. *Nat'l Bus. Consultants Inc. v. Lightfoot*, 292 Fed. Appx. 298, 300 (5th Cir. 2008); *see also, Matter of Linton*, 136 F.3d 544, 546 (7th Cir. 1998) ("A debtor who had failed to obtain a discharge might through a suit against the trustee obtain the funds necessary to pay the debt that had not been discharged.").  Thus, the Court already possesses continuing but exclusive jurisdiction over any claims asserted against the Receiver. *In re Coastal Plains, Inc.*, 326 B.R. at 111.  Perhaps just as importantly, in the Initial Receivership Order this Court also enjoined all persons from commencing any legal proceeding against the Receiver.  Dkt. 29, ¶ 34.  The Court may ratify that provision based on a new receivership order, and conclude, nunc pro tunc, that such injunction reaches back to the date on which this Receiver was appointed pursuant to the Initial Receivership Order, and that the scope of an injunction issued in reliance on a new receivership order also governs activities undertaken in reliance on the Initial Receivership Order.

Moreover, as with any other type of injunction, the Court possesses (and therefore may also declare) its continuing jurisdiction to enforce orders prohibiting baseless claims against the

Receiver. *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees" and court that issued injunction at issue must be the court that enforces such order); *see also Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) ("A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation"); *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1146 (5th Cir. 1982) (recognizing continuing jurisdiction of "district court in support of its judgment, as long as that judgment has not been superseded").

When Barton seeks to assert baseless claims against the Receiver, he will be required to do so in this Court, in front of this judge. But neither the Court nor the Receiver need wait for Barton to force the unnecessary expenditure of Receivership Assets to defend such claims. Instead, the Court may look back at the Receiver's Reports, motions, contracts, and all other activities taken in performing the Initial Receivership Order, and release and discharge the Receiver and his agents from liability for all such actions taken in good faith performance of the Initial Receivership Order. *See Henderson v. W. Jackson Student Hous., L.L.C.*, 676 Fed. Appx. 293, 297 (5th Cir. 2017) *see also SEC v. Capital Cove Bancorp LLC*, No. SACV1500980JLSJCX, 2018 WL 11357746, at *8 (C.D. Cal. Sept. 7, 2018) ("Neither the Receiver nor any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver shall have any liability to any person or entity for any action taken in good faith in connection with carrying out the Receiver's administration of this Receivership Estate."). In the alternative, the Receiver is content to rely on the Court's ratification of the litigation stay from the Initial Receivership Order with respect to claims that could be asserted against the Receiver and his Retained Professionals based on activities undertaken in reliance on the Initial Receivership Order, and the Court's continuing jurisdiction over such claims.

9

### 5.    Ratification of the Sale Orders Is Appropriate and Timely

In objecting to ratification of the Sale Orders, Barton returns to his circular argument that orders issued in reliance on a to-be-vacated order will also be void. The obvious purpose of the Ratification Motions is to avoid this outcome by ratifying soon-to-be void orders based on a new order.  In each of the Ratification Motions, the Receiver explained why ratification would *still* be in the best interest of the new receivership estate, and why the Receivership Estate would be prejudiced by repeating an expensive statutory process to accomplish what this Court has already deemed appropriate.[5]  Alternatively, if the Court prefers to enter new Sale Orders that mirror the prior Sale Orders, the requirements of 28 U.S.C. § 2001 (namely the appointment of appraisers and a hearing) have already been satisfied, and each sale remains in the best interest of the Receivership Estate.

The Receiver requests that the Court overrule Barton's objections and grant the Motions.

---

[5] Barton's incorrect discussion regarding the timing and manner of payment for the *Stanford* receiver also provides no basis for withholding ratification of the Sale Orders.   First, although the Court in the *Stanford* case imposed a 20% holdback for approved fees, the holdback hardly constitutes "most" of the fees paid to the Stanford Receiver, which after just two years, were more than $46.2 million, and through July 2021 were "hundreds of millions to the receiver and professionals," and more than $73 million to his primary law firm, Baker Botts.  *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2011 WL 13160367, at *2 (N.D. Tex. Nov. 14, 2011) ("Since its inception . . . [about]  $46.2 million, has been spent on professional fees and expenses."); *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, in the United States District Court for the Northern District of Texas ("*Stanford*"), Dkt. 3095. Second, the SEC has objected numerous times to the Stanford Receiver's fees, including recent requests to increase the billable rates. *See Stanford*, Dkt. 946, 3095.  Finally, the *Stanford* receivership had not concluded, but continues now 15 years after its commencement, with only an 11 percent return to the investors. *Id.; see also Stanford*, Dkt. 3362 (Most recent order approving fees issued on November 7, 2023, for fees in the amount of $1,442,202 in fees and expenses, and an additional $1,124, 403 in out-of-pocket expenses).

Respectfully submitted,

By: /s/ Charlene C. Koonce
Charlene C. Koonce
   Texas Bar No. 11672850
   charlene@brownfoxlaw.com
Timothy B. Wells
   Texas Bar No. 24131941
   tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

11