**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants*. | § | |

**RECEIVER'S REPLY IN SUPPORT OF
VERIFIED AND EXPEDITED MOTION TO (I) RATIFY ORDERS APPOINTING
APPRAISERS, APPROVING APPRAISALS AND APPROVING SALE OF REAL
ESTATE AS REQUIRED BY 28 U.S.C. § 2001 WITH RESPECT TO THE FRISCO
GATE PROPERTY, (II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS,
AND (III) STAY ACCRUAL OF POST-RECEIVERSHIP DEFAULT RATE INTEREST**

Charlene C. Koonce
 Texas Bar No. 11672850
 charlene@brownfoxlaw.com
C. Alan Carrillo
 Texas Bar No. 24109693
 alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

Cort Thomas, as the court appointed Receiver, submits this Reply in support of the Motion[1] and respectfully shows the Court as follows:

## I.    SUMMARY

By the Motion, the Receiver requests that the Court ratify the Frisco Gate Property Orders *nunc pro tunc*. Additionally, after satisfaction of the principal amount due under any Note or Deed of Trust and interest accrued at the Standard Interest Rate at closing, the Receiver requests that the Court authorize the sale of the Frisco Gate Property free and clear of all liens, stay post-Receivership default interest, and reserve payment of any other requested fees, costs, defaults, penalties, breach, offsets, or other amounts for the claims process.

On November 10, 2023, Texas Republic Bank ("Lender") filed its Verified Response to the Motion (the "Response").[2] While Lender does not oppose the Receiver's requested relief of ratification of the Frisco Gate Property Orders, it objects to: (1) the Receiver's request that the Court stay the post-Receivership accrual of interest at the Default Interest Rate; (2) any payment of a junior unsecured creditor at closing before Lender is paid in full; and (3) any removal of Lender's lien on the proceeds of the sale of the Frisco Gate Property.[3] The first two objections should be overruled, and the latter may be resolved in an order granting the Motion.

## II.    REPLY

**A.    Lender Does Not Oppose the Receiver's Requests for the Court to Ratify the Frisco Gate Property Orders, *Nunc Pro Tunc*, and to Authorize the Sale of the Frisco Gate Property Free and Clear of Liens and Related Claims**

The Lender does not object to the Receiver's requests for the Court to ratify the Frisco Gate Property Orders, *nunc pro tunc*, and to authorize the sale of the Frisco Gate Property free and clear

---

[1] Dkts. 376, 377. All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2] Dkt. 393.

[3] *Id.* ¶ 24.

of liens and related claims. Regarding this portion of the Receiver's requested relief, Lender only inaccurately suggests that not all parties in interest were notified of the Motion. Lender received a copy of the Motion from Receiver's undersigned counsel, and Palisades[4]—and every other party in interest that has appeared in this case—receives automatic filing notices through the Court's electronic-filing system. Consequently, these requests for relief are without objections from Lender.

**B.      The Court Should Enter an Order, Over Lender's Objections, Staying the Accrual of Post-Receivership Default Interest**

In objection to the Receiver's request for the Court to stay the accrual of post-Receivership interest at the Default Interest Rate, Lender first contends that the Note's "Maximum Rate" (or "Maximum Lawful Rate") is "maturity interest," not "default interest," and that a material difference exists between the two. While Lender asserts it is not "reasonable" to use these descriptors interchangeably, its Loan Documents do precisely that.[5] And even Lender uses both "maturity" and "default" when referring to interest rates and citing case law in the Response.[6] By its own terms, the Note's Maximum Rate *is* the Note's Default Rate.[7] Lender's semantics gymnastics cannot eliminate that conclusion.

Lender relies almost exclusively on Title 11 of the United States Code (the "Bankruptcy Code") and case law from various U.S. Bankruptcy Courts. However, this Court is not bound by the Bankruptcy Code in this Receivership. Another federal district court has stated it clearly and straightforwardly: "this is an equity receivership case, not a bankruptcy." *SEC v. TCA Fund Mgmt.*

---

[4] As discussed below, Palisades and the Receiver have also reached an agreement regarding treatment of the funds that Palisades contributed to the purchase of the Frisco Gate Property.

[5] *See* Motion ¶ 6.

[6] *See* Response ¶ 43.

[7] *See* Motion ¶ 6, n. 6 ("The Loan Agreement does define 'Default Rate' as 'the rate of interest per annum equal to the Maximum Rate.' APP003 (Loan Agreement ¶ 1.13).").

*Grp. Corp.*, No. 20-21964-CIV, 2022 WL 17816956, at \*4 (S.D. Fla. Dec. 2, 2022). Indeed, there "are cases in which courts fashioning relief in the equity receivership context find 'bankruptcy law ... analogous and instructive[.]'" *Id.* (quoting *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1344 (11th Cir. 2017)). "But the two bodies of law are distinct in that one must acquiesce to the bankruptcy code, while the other serves equity alone." *Id.* As the U.S. Court of Appeals for the Sixth Circuit has observed:

> There remains a class of cases, however, in which the federal courts may exercise their equitable powers and institute receiverships over disputed assets in suits otherwise falling within the federal court's jurisdiction, but which fall outside the statutory bankruptcy proceedings or other legislated domain. In this range of cases the federal courts exercise the traditional, common law powers of equity.

*Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). "Accordingly, bankruptcy law, while occasionally helpful in equity receivership cases, does not control here." *TCA Fund Mgmt. Grp. Corp.*, 2022 WL 17816956, at \*4 (citing *CFTC v. Eustace*, No. 05-cv-2973, 2008 WL 471574, at \*7 (E.D. Pa. Feb. 19, 2008)); *see SEC v. Total Wealth Mgmt., Inc.*, No. 15-CV-00226-BAS-RNB, 2019 WL 13179067, at \*5 (S.D. Cal. Apr. 8, 2019) ("Although the Court is guided by bankruptcy law principles, such principles do not constrain the Court's authority to further the overriding principle of equity."). "When an equity receivership is involved, case law concerning equity receiverships is generally more applicable than bankruptcy case law." *Eustace*, 2008 WL 471574, at \*7.

While Lender cites several bankruptcy cases to allege that an oversecured creditor's right to default interest is enforceable under the Bankruptcy Code, Lender ignores the receivership case law that the Receiver cites to show that a Court may stay post-receivership default interest for an oversecured creditor under the principles of equity. Contrary to Lender's allegation that the

"Receiver failed to provide this Court with any authority that the Court may stay the accrual of the Maximum Rate under the Note," the Receiver provided case law specifically describing this Court's authority. In *SEC v. Capital Cove Bancorp, LLC*, the Central District of California noted that under California law receivers should "administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy" and that the "Bankruptcy Code permits interest on secured creditor's claims only to the extent the value of the secured property exceeds the amount of the claim." *SEC v. Capital Cove Bancorp, LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154, at \*11 (C.D. Cal. Oct. 13, 2015). Despite this, the federal district court concluded: "*Even assuming that the property values exceed the contested claims*, however, the Court finds it may stay post-receivership default interest under equitable considerations." *Id.* (emphasis added).

In so holding, the *Capital Cove Bancorp* court applied the reasoning of the Supreme Court in *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946). Lender, however, first argues that *Vanston Bondholders* is superseded by statute.[8] Some bankruptcy courts, or appeals courts reviewing bankruptcy court decisions, have noted that the current Bankruptcy Code postdates *Vanston Bondholders*. *E.g., In re Colortex Industries, Inc.* 19 F.3d 1371 (11th Cir. 1994). However, for the reasons stated herein, this Court is not bound by the Bankruptcy Code in this matter. Therefore, *Vanston Bondholders*' reasoning may still be applied in the context of equity receiverships, as it was in *Capital Cove Bancorp*. Second, Lender argues that *Vanston Bondholders* is inapplicable because the Note's interest began accruing at the Default Interest Rate prior to the appointment of the Receiver. But if, in *Vanston Bondholders*, the court could order the receiver not to abide by an obligation to pay simple interest as of the date the receivership began, the

---

[8] *See* Response ¶ 33.

Receiver maintains that this Court may order the Receiver not to abide by an obligation to pay default interest by that date as well. This is, in essence, what the *Capital Cove Bancorp* court determined and what this Court should conclude as well. *See Capital Cove Bancorp, LLC*, 2015 WL 9701154, at \*12 (finding that "ongoing default interest rates would directly harm junior and unsecured creditors" and that it is "manifest that the touchstone of each decision on allowance of interest in … receivership … has been a balance of equities between creditor and creditor or between creditors and the debtor") (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. at 165).

Contrary to what Lender argues, even if the Court were bound by the Bankruptcy Code in this proceeding, bankruptcy courts have also held that balancing of equities may require the denial of post-petition interest at contractual default rates. At the very least, it is "clear that there is an absence of uniformity in the treatment of default interest provisions." *In re White*, 88 B.R. 498, 510 (Bankr. D. Mass. 1988) (internal citations omitted). Indeed, as the Receiver said in the Motion, the *Capital Cove Bancorp* receivership court cited several bankruptcy case cases to show that even bankruptcy courts "have found that a secured creditor's entitlement to default interest under 11 U.S.C. § 506(b) is subject to equitable considerations, *including whether the application of default interest will harm junior or unsecured creditors*." 2015 WL 9701154, at \*11 (citing bankruptcy cases) (emphasis added). Therefore, even if the Court is inclined to rely on bankruptcy courts' application of the Bankruptcy Code and balancing of equities, it may still reach the conclusion the Receiver asks it to hold today.

In sum: while persuasive precedent does not prescribe equity receivership courts to stay the post-Receivership accrual of interest at default rates, it permits them to do so. As of the date of this Reply, it highly unlikely that the Wall Investors will review a return of 100% of their

principal. In the event the Receiver loses his dispute with SPC regarding ownership of the four HUD properties, the ultimate recovery available to investors will be substantially less. It would be inequitable at this early stage of the proceedings to allow secured lenders in this case to receive post-Receivership default interest at the expense of the Wall Investors' principal. The Court may—and should—stay the accrual of post-Receivership default interest over Lender's objection.

**C.    The Court Should Enter an Order, Over Lender's Objections, Reserving Payment of Any Other Asserted Fees, Costs, or Other Amounts for the Claims Process**

The essence of Lender's objection to this portion of the Receiver's requested relief is Lender's belief that: (1) the Proposed Order "fails to state that the Lender's lien will be transferred to the sale proceeds of the Property to the extent that the Lender's claim is not paid in full at closing"[9]; (2) the Receiver's "proposed payment of the unsecured claim of Palisades TC, LLC at closing violates the Absolute Priority Rule"[10]; and (3) "there are more than sufficient Receivership Assets to pay the unsecured creditors of the Receivership Estate."[11] The Receiver responds to each objection in turn.

First, the Receiver does not object to Lender's desire for the Proposed Order to state that Lender's lien will be transferred to the sale proceeds of the Property to the extent that Lender's claim is not paid in full at closing. Indeed, the Receiver suggested this relief in the Motion.[12]

Second, Lender cites no authority for application of the "absolute priority rule," or the section of the Bankruptcy Code codifying that rule, in this Receivership. On the contrary, as

---

[9] Response ¶ 2.

[10] *Id.* ¶ 3.

[11] *Id.* ¶ 4.

[12] Motion at 10 ("[T]he Court should order that at closing and from the proceeds of the sale of the Frisco Gate Property, the lender shall initially recover only the principal due under the Note as well as interest accrued under the Standard Interest Rate. To the extent the lender asserts that its lien exceeds this amount, such lien should be transferred to the proceeds of the sale of the Frisco Gate Property, and entitlement to payment for those additional amounts will be paid, if approved by the Court, during the Receivership's claims process for creditors.").

demonstrated above and in the Motion, the Court has broad discretion to treat Lender's claim for recovery of fees incurred as a result of the Receivership (for instance, attorneys' fees and interest) in an equitable manner, including rejecting those claims entirely. In fact, in equity receiverships, "courts regularly grant defrauded investors a higher priority than defrauded creditors, and there is persuasive authority supporting this view." *CFTC v. RFF GP, LLC*, No. 4:13-CV-382, 2014 WL 491639, at *2 (E.D. Tex. Feb. 4, 2014), *report and recommendation adopted*, No. 4:13-CV-382, 2014 WL 994928 (E.D. Tex. Mar. 10, 2014). Nor does any equitable reason exist for refusing to return Palisades' principal/purchase money funds at closing, while ample justification demonstrates that doing so serves the best interests of the Receivership Estate.[13]

Third, the Receiver's Declaration and Interim Report [Dkt. 308] provides substantial evidence that the Receivership Assets will be insufficient to pay all of the claims of all claimants.[14] Lender's comments about the Receiver's projected recoveries of the Receivership Assets wholly fail to consider what the Receiver explained in the Motion: as of the date of the Initial Receivership Order's vacatur, and using the original agreed, approved closing dates for each transaction, the delayed closing of the three properties the Court has authorized the Receiver to sell has already cost the Receivership Estate between roughly $340,000 (standard rates) and $753,000 (default rates) in accrued interest. The Frisco Gate Property alone accounts for between approximately

---

[13] Palisades contends that: it is an equity investor in the entities that own FHC Acquisition, LLC ("FHC"); it provided $3.5 million as a preferred capital contribution in connection with the Company Agreement related to the operation of FHC by which it is entitled to no less than a 125% return on its investment, default interest, additional fees and costs; ultimately, it is entitled to take control of FHC through control of its parent entity, Dallas Real Estate Investors, LLC ("DREI"); and it should recover all fees and costs in advance of any distribution to the Receiver, Lender, or other creditors. The Receiver contends that Palisades' $3.5 million investment, which was used to finance the purchase of the Frisco Gate Property together with Lender's loan and other funds, should be treated in fairness as a loan on the Property. Accordingly, to foreclose Palisades' objection to a sale and its assertion of a lien on the entirety of the sales proceeds, Palisades and the Receiver have entered into a Compromise Agreement that permits Palisades to recover principal only from closing, with entitlement to all other fees, interests, and costs submitted in a claims process. The Agreement, however, is contingent upon (a) a new receivership order that includes FHC and DREI; and (2) an expeditious closing.

[14] Receiver's Declaration and Interim Report ¶¶ 194–96.

$161,000–$386,000 of this loss, irrespective of any claim by Palisades. And the losses from the continued delay of closings only continue to accrue. Accordingly, none of Lender's objections to this scope of the Receiver's requested relief have merit.

### III.    CONCLUSION

For the reasons stated in the Motion and this Reply, the Receiver requests that the Court overrule all of Lender's objections and ratify the Frisco Gate Property Orders *nunc pro tunc*. Additionally, after satisfaction of the principal amount due under any Note or Deed of Trust and interest accrued at the Standard Interest Rate at closing, the Receiver requests that the Court authorize the sale of the Frisco Gate Property free and clear of all liens, stay post-Receivership default interest, and reserve payment of any other requested fees, costs, defaults, penalties, breach, offsets, or other amounts for the claims process.

The Receiver also requests such other and further relief to which he may show himself entitled.

Respectfully submitted,

By:  */s/ C. Alan Carrillo*
 Charlene C. Koonce
  Texas Bar No. 11672850
  charlene@brownfoxlaw.com
 C. Alan Carrillo
  Texas Bar No. 24109693
  alan@brownfoxlaw.com
 BROWN FOX PLLC
 8111 Preston Road, Suite 300
 Dallas, TX  75225
 Tel. 214.327.5000
 Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

The Receiver will provide a copy of this Reply to Lender.