IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CASE NO. 3:22-CV-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| Defendant. | § | |

**UNOPPOSED MOTION OF TEXAS REPUBLIC BANK, N.A. TO INTERVENE ON A LIMITED BASIS WITH REGARD TO RECEIVER'S VERIFIED AND EXPEDITED MOTION TO (I) RATIFY ORDERS APPOINTING APPRAISERS, APPROVING APPRAISALS AND APPROVING SALE OF REAL ESTATE AS REQUIRED BY 28 U.S.C. § 2001 WITH RESPECT TO THE FRISCO GATE PROPERTY, (II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS AND (III) STAY ACCRUAL OF POST RECEIVERSHIP DEFAULT RATE INTEREST**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW TEXAS REPUBLIC BANK, N.A. (Lender") and would respectfully show the Court as follows:

**I.**
**INTRODUCTION**

1.      The Lender does not oppose: (a) the ratification of the Orders appointing appraisers, approving appraisals and approving the sale of real estate as required by 28 U.S.C. §2001 with respect to the Frisco Gate Property; or (b) the authorization of the sale of the Frisco Gate Property free and clear of all liens provided Lender's lien attaches to the proceeds of said sale.

2.      The Lender does oppose the proposed stay of the accrual of post

TEXAS REPUBLIC BANK, N.A.'S UNOPPOSED MOTION TO INTERVENE ON A LIMITED BASIS
WITH REGARD TO RECEIVER'S MOTION RELATING TO FRISCO GATE PROPERTY ONLY – PAGE 1

receivership interest, which the Receiver incorrectly refers to as Default Interest, as more fully set out in Lender's Response to the Receiver's Motion, the contents of which is to be read as if specifically incorporated herein, where the Receiver seeks approval of payment of the principal amount of the Lender's claim plus accrued interest at the "non-default" rate not at the Maturity Interest as called in the Lender's loan documents.

3.      The Receiver does not contest the enforceability or validity of the Lender's Note or security instruments or the amount of principal owed.   The Receiver further does not dispute that the Note is payable in full at maturity, which maturity date was **July 31, 2022**, approximately 2 and a half months prior to the Initial Receivership Order being granted on **October 18, 2022.**   Since July 2022, Maturity Interest has been accruing – not Default Interest.

4.      The Receiver does not allege that the Maturity Interest is punitive, but instead simply submits to the Court that equities favor a stay of Default Interest in circumstances where other junior and unsecured creditors of the Estate at large - and **not** in respect of the Frisco Gate Property (the "Property") itself, will be prejudiced should the Interest continue to accrue at the "Default" *(sic)* Interest Rate.   Reference is made to Lender's Response to the Receiver's Motion regarding this issue.

5.      Lender's debt has not been serviced- at all - by the Receiver since his initial appointment in terms of the Order granted on **October 18, 2022**.

6.      The delay of Closing of the sale of the Property is in no way attributable to

Lender, yet the relief sought by the Receiver will effectively penalize and prejudice Lender, who is the only secured creditor of the Property.

7.      What is further evident from the Receiver's Motion, is that he wants to sell the Property to *"make payment of property taxes on all properties, insurance on certain properties, a host of administrative expenses, and significant professional fees"* and makes provision to make payment in full to what the Receiver himself describes as an unsecured creditor, Palisades TC, LLC ("Palisades"), whose claim is in the sum of $3,500,000.00. Litigation is pending in regard to the claim of Palisades, in circumstances where Barton is alleging that the sum constituted a capital contribution and not a loan as alleged by Palisades and purportedly accepted by the Receiver.  Given said amount is in fact a capital contribution (see Lender's Sur-Reply and the DREI Company Agreement attached thereto as an exhibit), Palisades would not be entitled to be reimbursed said amount at closing.  Said company agreement further substantiates that Palisades' claim is not as alleged by the Receiver   a loan to purchase the Property.

8.      After the Receiver served a Reply to Lender's Response on November 17, 2023, it became critical that Lender be granted leave to intervene, in circumstances where the Receiver did a complete volte-face from its position in regard to Palisades compared to what it originally alleged in its Motion.

9.      The   Receiver, in paragraph 7 of the Receiver's Motion, states:

> In addition to FHC's loan, Palisades TC, LLC ("Palisades") provided an **unsecured $3.5 million loan towards the purchase** of the Frisco

Gate Property.  In pending (but stayed) litigation concerning the repayment of these funds, **Palisades asserts that the funds were a loan** intended to be repaid while **Barton claimed** the funds were a **capital contribution to an LLC created by Barton and Palisades TC**." (bold and underlining added for emphasis)

10.    In footnote 4 to paragraph A of his Reply, the Receiver advises that:

Palisades and the Receiver have also reached an agreement regarding treatment of the **funds that Palisades contributed to the purchase** of the Frisco Gate Property" (bold and underlining added for emphasis)

11.    In paragraph C as read with footnote 14 of his Reply, the Receiver now states that:

Nor does any equitable reason exist for refusing to return Palisades' principal/purchase money funds **at closing**, while ample justification demonstrates that doing so serves the best interests of the Receivership Estate.

**Palisades contends** that: it is an **equity investor** in the entities that own FHC Acquisitions, LLC ("FHC"); it provided $3.5 million as a **preferred capital contribution in connection with the Company Agreement related to the operation of FHC** by which it is entitled to no less than 125% return on its investment, default interest, additional fees and costs; ultimately, it is entitled to take control of FHC through control of its parent entity, Dallas Real Estate Investors, LLC ("DREI"); and should recover all fees and costs in advance of any distribution the Receiver, Lender, or other creditors. The **Receiver contends** that Palisades' $3.5 million investment, which **was used to finance the purchase** of the Frisco Gate Property together with Lender's loan and other funds, should be **treated** in fairness **as a loan on the Property**.  Accordingly, to foreclose Palisades' objection to a sale and its assertion of a lien on the entirety of the sales proceeds, Palisades and the Receiver have entered into a Compromise Agreement that permits Palisades to recover principal only from closing, with entitlement to all other fees, interests, and costs submitted in a claims process. (bold and underlining added for emphasis)

12.    From the Motion to the Reply, the Receiver, without a shred of

documentary evidence, transforms Palisades from a disputed unsecured creditor to being "an equity investor" whose "capital contribution" entitles Palisades to being paid at Closing along with TRB for no other reason than the Receiver struck a deal with Palisades. No loan agreement.  No promissory note.  No deed of trust.  No subordination agreement with TRB.

13.    Despite the Receiver's references to an alleged Compromise Agreement with Palisades, neither the DREI Company Agreement and/or any documents entitling Palisades to claim superiority as alleged are attached to the Reply despite a request made shortly after service of its Reply.

14.    As part of its due diligence in making the loan to FHC, TRB had a copy of the company agreement Dallas Real Estate Lenders, LLC ("DREI"), the managing member of FHC Acquisition, the borrower.  A true and correct copy of said DREI Company Agreement is attached hereto as Exhibit "A" and incorporated herein. Exhibit "B" to the DREI Company Agreement shows clearly that the $3.5 million dollars was in fact an equity contribution for a fifty percent interest in DREI.

15.    If Exhibit "B" is not enough evidence to show Palisades made an equity contribution (and to negate any argument that it was a loan entitled to be paid at any closing), section 1.06 (purpose of Company) states that "[t]he Company authorizes FHC to enter into that certain Loan Agreement dated on or about the date hereof (January 29, 2020) with Texas Republic Bank, N.A. ("Lender") for a loan of approximate amount of

$3,000,000.00 (the "Loan")."[1]   No reference is made to FHC being authorized to enter into any loan agreement with Palisades (as no such loan agreement exists).

16.    Finally, the Receiver ignores its own evidence in support of the Motion. Section 4.31 of the Loan Agreement (Exhibit "A" to the Motion) states:

> All Debt owed by Borrower to members of Borrower **and any Affiliates of Borrower shall be subordinate** to the Debt owed to Lender, and Borrower shall cause such member and Affiliates to execute subordination agreements in form and substance satisfactory to Lender." (bold and underlining added for emphasis).[2]

Exhibit "A" to the Motion, at APP021.

17.    The plain language of the Loan Agreement, the DREI Company Agreement and the absence of any documentation to support the "compromise" contemplated by the Receiver elevating an equity member to the same level as Lender strongly supports Lender's objection to the Receiver's attempt to pay Palisades at the proposed closing of the Property,

## MOTION TO INTERVENE

18.    In circumstances where it is unclear if formal intervention is required in light of the Receiver's request that Lender indicate if it agrees or opposes the relief sought by the Receiver in his Motion, and the Receiver's Reply which has rendered Lender's intervention crucial, Lender brings this application for intervention *ex abundante cautela*.

---

[1]Exhibit "A," DREI Company Agreement, page 2.

[2]Palisades is a 50% member of DREI.   DREI is the manager of the Borrower, FHC.

19.     The relief sought by the Receiver directly impacts Lender's rights in its collateral as a secured creditor whose Note matured prior to the Receivership being created.

20.     The intervention should be allowed "where no one would be hurt and the greater justice could be attained."[3]   No harm will suffered by the Receiver or other creditors of the estate at large, by permitting Lender to intervene in the Receiver's Motion, whereas the prejudice to Lender should it not be permitted to intervene, will be substantial and irreparable.   The denial of intervention could compromise Lender's standing as a secured creditor in favor of unsecured creditors who have no standing to argue Lender's undisputed indebtedness owed to it.

21.     Intervention of parties is governed by Rule 24 FED. R. CIV. P., which provides for the intervention of parties as of right if it satisfies the following elements:[4]

> (a)     the application must be timely;
>
> (b)     the applicant must have an interest relating to the property or transaction which is the subject of the action;
>
> (c)     the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest;[5]and
>
> (d)     the applicant's interest must be inadequately represented by the existing parties to the suit.[6]

---

[3]*Sierra Club v. Espy,*18 F.3d 1202, 1205 (5th Cir. 1994);   *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir. 1970).

[4] Rule 24(a)(2).

[5] *La Union del Pueblo Entero,* 29 F.4th 299, 306 (5th Cir. 2022)

[6] *La Union del Pueblo Entero,* 29 F.4th at 305.

22.     Lender's application to intervene is timely and no delay has been caused and/or will be caused as a result of it, particularly considering that other creditors are similarly seeking leave to intervene with regard to properties they have an interest in.

23.     It is common cause that Lender has a direct and substantial material interest in the property or transaction which is the subject of the action as demonstrated herein above and in its response to the Receiver's Motion.   The Receiver's Reply has further demonstrated that it ignores the loan agreement, the loan documents, the contractual obligations contained therein and the plain meaning of said documents.   Should Lender not be granted leave to intervene, such refusal to allow intervention will substantially impair or impede its ability to protect its contractual, undisputed interest.[7]

24.     The relief sought by the Receiver, despite it compromising Lender's position as a secured creditor and lien holder as set out more fully herein above, the Receiver's Reply and the facts set out in Lender's Response to the Receiver's Motion and Lender's Sur-Reply, are clear indicators that Lender's interest is inadequately represented by the existing parties to the suit as it relates to the Property.

WHEREFORE, PREMISES CONSIDERED, Texas Republic Bank, N.A. respectfully request the Court permit Texas Republic Bank, N.A. to intervene in the Receiver's Motion to (i) ratify the Orders appointing appraisers, approving appraisals

---

[7] *La Union del Pueblo Entero,* 29 F.4th at 305; *Edwards v. City of Houston,* 78 F.3d 983, 1004 (5th Cir. 1996)(en banc).

TEXAS REPUBLIC BANK, N.A.'S UNOPPOSED MOTION TO INTERVENE ON A LIMITED BASIS WITH REGARD TO RECEIVER'S MOTION RELATING TO FRISCO GATE PROPERTY ONLY – PAGE 8

and approving the sale of real estate as required by 28 U.S.C. §2001 with respect to the

Frisco Gate Property, (ii) authorize the sale of the Property free and clear of all liens, and

(iii) stay the accrual of post-receivership Default *(sic)* Rate Interest and for such other

relief as is just and proper.

Respectfully submitted this the 22nd day of November, 2023.

> SCHEEF & STONE, L.L.P.
> 2600 Network Boulevard
> Suite 400
> Frisco, Texas 75034
> Telephone: 214.472.2100
> Telecopier: 214.472.2150
>
>
> By:_____/s/ Patrick J. Schurr____
> Patrick J. Schurr
> State Bar No. 17853530
> Patrick.schurr@solidcounsel.com
> Shirley B. Rose
> State Bar No. 24137167
> Shirley.rose@solidcounsel.com
>
> ATTORNEYS FOR TEXAS REPUBLIC BANK, N.A.

## CERTIFICATE OF CONFERENCE

On November 13, 2023, the undersigned conferred with Charlene Koonce, counsel for the Receiver, regarding the relief sought in the Receiver's Motion.   Charlene Koonce does not oppose Texas Republic Bank, N.A.'s Motion to Intervene herein for the limited purpose or arguing this Receiver's Motion as it relates to Frisco Gate Property.

> _____/s/ Patrick J. Schurr_____

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served on counsel for the Receiver, and any parties requesting notice herein, via electronic means, on this 22nd day of November, 2023.


_____/s/ Patrick J. Schurr_____