| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:22-cv-2118-X |
| TIMOTHY BARTON, *et al.,* | § § | |
| *Defendants,* | § § | |

**UNOPPOSED RENEWED MOTION OF PALISADES TC LLC TO INERVENE ON A LIMITED BASIS WITH REGARD TO THE RECEIVER'S VERIFIED AND EXPEDITED MOTION TO RATIFY ORDERS APPOINTING APPRAISERS, APPROVING APPRAISALS AND APPROVING SALE OF REAL ESTATE AS REQUIRED BY 28 U.S.C. § 2001 WITH RESPECT TO THE FRISCO GATE PROPERTY, (II) AUTHORIZE THE SALE FREE AND CLEAR OF ALL LIENS AND (III) STAY ACCRUAL OF POST RECEIVERSHIP DEFAULT RATE INTEREST AND BRIEF IN SUPPORT**

COMES NOW Palisades-TC, LLC ("Palisades") and files this unopposed renewed motion to intervene on a limited basis after previously filing a similar motion (ECF No. 414) that the Court denied without prejudice to re-filing, and shows the Court as follows:

**<u>INTRODUCTION</u>**

1.      Palisades seeks to intervene on a very limited basis to protect its interest in the Frisco Gate Property (the "Property") being sold by the Receiver and that is the subject of the pending motions for which Palisades seeks to intervene. Palisades invested $3.5 million to purchase the Property and is a 50% member of the limited liability company that effectively owns the Property. Title to the Property is owned by a special purpose entity, FHC Acquisition, LLC, which is 100% owned by DREL. FHC Acquisition is a Receivership Entity, but DREL was excluded as a Receivership Entity in the new Receivership Order.

2. Palisades is in favor of the Receiver's proposed sale of the Property and asks the Court to approve to it.

3. From the beginning of the Receivership in this case, Palisades has asserted its interest in the Property and claim to any proceeds from a sale, and through counsel has been in contact and discussions/negotiations with the Receiver about it from the outset. Palisades and the Receiver have reached an agreement regarding Palisades' claim to the proceeds of the expected upcoming sale of the Property that allows the Receiver to keep part of the sale proceeds for the Receivership. Recently, that agreement has become the subject of briefing between the Receiver and the senior secured lender to the Property, Texas Republic Bank (the "Bank"), as part of their dispute over how much interest the Bank should receive. Palisades seeks to intervene to ask the Court to approve the proposed sale, protect its interest in the Property, and clarify its position being discussed in the Bank's briefing.

4. To be clear, Palisades agrees to the sale and Palisades does not oppose the Receiver's pending motions and requested relief regarding the sale of the Property; namely, the ratification of the Order appointing appraisers, approving appraisals and approving the sale of real estate and the authorization of the sale of the Property free and clear of all liens (ECF No. 376), based on the agreement Palisades reached with the Receiver. Palisades and the Receiver have worked well together since the inception of this case with regard to handling the sale of the Property.

5. The reason for the requested intervention is because just recently Palisades' interest has come under fire by Bank in briefing on the Bank's dispute with the Receiver over how much interest the Bank should receive from the sale. *See* ECF Nos. 393 (Bank Response), 410 (Receiver Reply), 411 (Bank Surreply), 413 (Bank motion to intervene); 426 (Bank Response and Objection). But that is a dispute between the Bank and the Receiver that does not and should not

involve Palisades. Rather, that dispute is over how much money the Receiver should keep from the proceeds of the sale after the Bank is paid off, and, more specifically, how much interest the Bank should get to be "paid off" in full.

6. The Court's decision on that issue determines how much is then leftover for the Receiver. The Receiver and Palisades have already agreed on the split between them, which has nothing to do with the Bank. In other words, if the Bank is owed more interest than the Receiver contends, that money comes from the Receiver, not Palisades. The sale is for approximately $9 million and the Bank is owed approximately $3 million in principal, leaving $6 million to go toward allowed interest/fees on the Bank's loan, and then Palisades/the Receiver. After Palisades' $3.5 million, there is still $2.5 million for the Receiver to satisfy whatever amount the Court determines the Bank should be paid, which at most based on the Bank's own contention is just shy of $650,000. ECF No. 393 at pg. 15 n.8 (Bank breakdown of principal/interest/fees it is claiming).

7. As the Court can see from the DREL company agreement the Bank attached to its motion to intervene, under that agreement, after the Bank's loan is satisfied, Palisades is actually entitled contractually by the company agreement to far more than the remainder of the proceeds leftover, which would leave the Receiver with nothing. *See* ECF No. 413-1 § 5.02 (waterfall distribution section entitling Palisades to *e.g.*, Base Return, Default Return, etc.). However, Palisades compromised that claim with the Receiver and has agreed to receive only its unpaid principal from the sale proceeds and defer the balance to the claims process, so that the Receiver can realize funds as well. Notably, the Receiver has noted his intention for Palisades to receive at least its $3.5 million from the sale since the inception of this case in his quarterly status reports. *See*, *e.g.*, ECF Nos. 67 at pg. 17.

8. It seems part of the misguided attention to Palisades has come from the Receiver's reference to Palisades providing an unsecured loan to buy the Property. *See* Bank Motion to

3

Intervene at pg. 3-4, ECF No. 413. That characterization was mistaken and incorrect. Palisades invested $3.5 million toward the purchase of the Property as a 50% member of DREL pursuant to the DREL company agreement, as reflected in that agreement attached by the Bank as Exhibit A to its motion to intervene. ECF No. 413-1.

9. However, that mistaken characterization has no impact on the Bank. Neither Palisades nor the Receiver is contending that Palisades has priority to the Bank. The question in the pending dispute between the Bank and Receiver is simply how much interest the Bank is entitled to receive to be fully paid off on its loan, something that only impacts the net proceeds to the Receiver.

10. Finally, Palisades notes that Defendant Barton has no interest in any of the proceeds from a sale of the Property because Palisades invested the $3.5 million equity to buy the Property and under the terms of the DREL Company Agreement is owed far more than the proceeds under any calculation. *See* ECF No. 413-1 § 5.02 (waterfall distribution section entitling Palisades to *e.g.*, Base Return, Default Return, etc.).

<u>**MOTION TO INTERVENE**</u>

11. Based on the foregoing, Palisades respectfully submits that it should be allowed to intervene pursuant to Federal Rule of Civil Procedure 24 to ensure it protects its interest in the Property. *See* Fed. R. Civ. P. 24. No harm will be suffered by the Receiver or other parties, and in fact the Receiver does not oppose this request for limited intervention. Palisades clearly has an interest in the Property and the sale of the Property, and, recently, Palisades has been brought into the fray by the Bank's briefing and motion to intervene, so the request is timely.

WHEREFORE, PREMISES CONSIDERED, Palisades respectfully requests that the Court permit it to intervene in the Receiver's Verified and Expedited Motion to (i) Ratify Orders Appointing Appraisers, Approving Appraisals and Approving Sale Of Real Estate as Required By

28 U.S.C. § 2001 with Respect to the Frisco Gate Property, (ii) Authorize the Sale Free And Clear of All Liens and (iii) Stay Accrual Of Post Receivership Default Rate Interest, ECF No. 376. Palisades requests that it be allowed to be heard at the upcoming hearing and further requests that the Court award it any other relief it finds just and proper.

Dated: December 12, 2023

Respectfully submitted,

*/s/ Jonathan R. Patton*
Jeffrey M. Tillotson
Texas Bar No. 20039200
jtillotson@tillotsonlaw.com
Jonathan R. Patton
State Bar No. 24088198
jpatton@tillotsonlaw.com
**TILLOTSON JOHNSON & PATTON**
One Main Place
1201 Main Street, Suite 1300
Dallas, Texas 75202
(214) 382-3041 Telephone
(214) 292-6564 Facsimile

**ATTORNEYS FOR PALISADES-TC, LLC**

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with the Receiver, Cort Thomas, and he is unopposed to the relief sought in this motion.

*/s/ Jonathan R. Patton*
Jonathan Patton

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served by ECF service to all counsel of record herein on December 12, 2023.

*/s/ Jonathan R. Patton*
Jonathan Patton