Patrick J. Schurr
State Bar No. 17853530
Parick.schurr@solidcounsel.com
SCHEEF & STONE, L.L.P.
2600Network Boulevard
Suite 400
Frisco, Texas 75034
Telephone: 214.472.2100
Telecopier: 214.472.2150

ATTORNEYS FOR TEXAS REPUBLIC BANK, N.A.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § § § | |
| **v.** | § § | **CASE NO. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| **Defendant.** | § | |

**TEXAS REPUBLIC BANK, N.A.'S MOTION FOR RECONSIDERATION OF
THE JANUARY 8, 2024 ORDER REGARDING THE FRISCO GATE PROPERTY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW TEXAS REPUBLIC BANK, N.A. ("TRB" or "Lender") and would respectfully show the Court the following:

1.      The Court entered its Order Regarding the Frisco Gate Property [ECF No. 451] on January 8, 2024 (the "Order").

2.      The Order elevates Palisades to a position equal to TRB based on erroneous assumptions by the Court that (a) there is a settlement between the Receiver and

TEXAS REPUBLIC BANK, N.A.'S MOTION FOR RECONSIDERATION OF
THE JANUARY 8, 2024 ORDER REGARDING THE FRISCO GATE PROPERTY - PAGE 1

Palisades; (b) that the $3,500,000.00 capital contribution of Palisades to acquire its 50% interest in Dallas Real Estate Lenders, LLC ("DREL") should be treated as a secured lien in furtherance of this illusory settlement; (c) that TRB should receive the Standard Interest Rate (or non-default, non-maturity) interest rate despite its Note having matured prior to the appointment of the Receiver; and (d) granting a lien on the sale proceeds yet allowing the Receiver to object to TRB's claim for the Interest Delta does not preserve TRB's position as the Interest Delta and Additional Amounts are included in the definition of the Indebtedness to be paid to TRB and which the deed of trust lien secured payment thereof.

3.      TRB accordingly requests that the Court reconsider the Order as more fully set forth below.

## ARGUMENTS AND AUTHORITIES

4.      Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (alterations in original) (quoting FED. R. CIV. P. 54(b)). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin,* 864 F.3d at 336; *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)), *abrogated on other grounds*, *Little*, 37 F.3d at 1075, n.14; *see also McClung v.*

TEXAS REPUBLIC BANK, N.A.'S MOTION FOR RECONSIDERATION OF
THE JANUARY 8, 2024 ORDER REGARDING THE FRISCO GATE PROPERTY - PAGE 2

*Gautreaux* , No. 11-263, 2011 WL 4062387, at *1 (M.D. La. Sept. 13, 2011) ("Yet, because the district court is faced on with an interlocutory order, it is free to reconsider its ruling 'for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" (quoting *Brown v. Wichita Cty.*, No. 7:05-cv-108-0, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011))). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear . . . [s]uch a motion requires the Court to determine whether reconsideration is necessary under the circumstances." *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014) (quotation marks omitted). "[T]he power to reconsider or modify interlocutory rulings [under Rule 54(b)] 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders [under Rule 59(e)]." *Austin*, 864 F.3d at 337 (quoting *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible [than Rule 59(e)], reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Austin*, 864 F.3d at 336–37 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)). Accordingly, in contrast to a Rule 59(e) motion, the district court may consider "new arguments" on a Rule 54(b) motion that the movant did not raise in prior briefing. *Austin*, 864 F.3d at 337.

**Reason No. 1 to Reconsider the Order:  There is <u>no</u> settlement between Palisades TC LLC and the Receiver that justifies paying Palisades from the closing of the Frisco Gate**

5.      The Order in Footnote No. 5 states that "[t]he Court determines that the settlement with Palisades is a fair and reasonable basis to treat its investment as a secured line, because the Receivership is compromising Palisades's (sic) arguable entitlement to much more than its principle (sic), to ensure the estate receives the balance of the sale." Order, page 3.

6.      A review of the docket in this case as of January 31, 2024 reveals that there is neither a motion for approval of any settlement between Palisades and the Receiver nor an order approving, blessing or in any manner memorializing any settlement between Palisades and the Receivership.

7.      A review of the Receiver's Sixth Quarterly Report filed on January 30, 2024 [ECF No. 456] makes absolutely no mention of any settlement with Palisades.

8.      A review of the docket of the bankrupt Dallas Real Estate Investors, LLC the "DREI Bankruptcy"),[1] the other 50% member of Dallas Real Estate Lenders, LLC ("DREL"), the sole manager of FHC Acquisition, LLC, one of the receivership entities, reflects no agreement regarding the claim of Palisades in that proceeding.

**Reason No. 2 to Reconsider the Order:   Palisades is judicially estopped from arguing its capital contribution should be treated as a secured loan**

9.      In the DREI Bankruptcy, Palisades claims to be a creditor of DREI and filed

---

[1]*In re Dallas Real Estate Investors, LLC*, in the United States Bankruptcy Court for the Northern District of Texas, Fort worth Division, case No. 21-41488-elm-11.

TEXAS REPUBLIC BANK, N.A.'S MOTION FOR RECONSIDERATION OF
THE JANUARY 8, 2024 ORDER REGARDING THE FRISCO GATE PROPERTY - PAGE 4

an unsecured claim against DREI for the very same $3,500,000 "preferred capital contribution" Palisades made to acquire its 50% interest in DREL.[2]  Attached to that proof of claim is a copy of the state court lawsuit filed by Palisades against Dallas Real Estate Investors, LLC ("DREI").   The state court lawsuit characterizes the $3,500,000 as "preferred Capital Contribution." *See* Exhibit 1 to the Palisades Proof of Claim. Even more interesting (but not disclosed to this Court by Palisades in its Intervention in this case [ECF No. 430]) is DREI's proposed plan of reorganization purports to pay Palisades the $3,500,000 through an equity purchase by a third party (in fact there is a settlement with DREI in the DREI Bankruptcy wherein DREI purports to pay Palisades $4.75 million for its equity interest in DREL).

**Reason No. 3 to Reconsider the Order:**   **The Court references a settlement that does not exist to elevate an equity investor in an entity that is not a receivership entity to a secured status yet ignores the terms of TRB's Loan Documents**

10.     It is undisputed that the Note between TRB and FHC Acquisitions, LLC ("FHC"), the owner of the Frisco Gate Property, matured on July 31, 2022, prior to the Receivership being created in October 2022 ((Exhibit B - the Note) APP032-037, (Exhibit K- the Loan Modification Agreement) APP113-119, Receiver Appendix dated November 1, 2023 (the "Appendix"), ECF No. 377).

11.     It is undisputed that the deed of trust securing payment of the Note

---

[2]A true and correct copy of the Palisades proof of claim filed in the DREI Bankruptcy is attached hereto as Exhibit "A" and incorporated herein.

between FHC and TRB is valid and secures "the full and timely payment of the Indebtedness." *See* Appendix, (Exhibit D - deed of trust) APP047-075.  Indebtedness is defined in the deed of trust as "the principal of, interest on and all other amounts, payments and premiums due under the Note and secured by the other Loan Documents…." *See* Appendix, APP049.

12.    It is undisputed that the Receivership was originally created on October 18, 2022, after the maturity of TRB's Note (July 31, 2022).

13.    Yet the Order inexplicably provides for the payment to TRB of the principal owed on the Note "together with all interest accrued on such note through the date of closing, based solely on the Standard Interest Rate (or not-default, non-maturity) rate provided in the Note" and that the Interest Delta and Additional Amounts (amounts secured by the lien of TRB on the Property and part of the Indebtedness of the Note) may be a part of some "claims process" *if and when* established.  TRB's lien is released from the Property at closing; it is not paid in full under the Loan Documents at closing; and if and when a claim process is established, the Receiver can object to the priority of payment to TRB based on its purported lien to said proceeds.  This ability to object to the payment of amounts that should be paid at closing but deferred until some date in the future (without any mention of interest accruing on the sale proceeds) further eviscerates TRB's Loan Documents should the Court allow Palisades' Additional Amounts to be paid *in pari passu* with TRB's Additional Amounts.  While the Court mentions this treatment "in equity," it is in reality far from equitable to strip TRB of its lien on the Property and

defer payment of its Indebtedness to a uncertain date after closing.   There should be no burden of proof necessary for TRB to justify being paid the amounts it is entitled to under its Loan Documents.   TRB has done nothing in this case to warrant this treatment and yet its Loan Documents are being ignored while the Court elevates the company agreement of the sole member of FHC and transforms it into a secured lender while ignoring that very creditor's pleadings in other matters involving the very same parties.

14.     Another example of the Order ignoring the Loan Documents to the detriment of TRB is the very Loan Agreement executed by FHC that states that:

> *All Debt owed by Borrower to members of Borrower **and any Affiliates of Borrower shall be subordinate** to the Debt owed to Lender, and Borrower shall cause such member and Affiliates to execute subordination agreements in form and substance satisfactory to Lender."* (bold and underlining added for emphasis).[3]

Appendix, Exhibit "A" – Loan Agreement, APP021.

15.     "Debt" as used hereinabove is defined as "….all indebtedness…for the repayment of money borrowed" and "…all indebtedness secured by a Lien existing on property.." Appendix, Exhibit "A" – Loan Agreement, APP003.

16.     No party in this case has argued nor cited any caselaw that the company agreement of the sole member of a Receivership Entity subject to the control of this Court should be elevated above the loan documents between a lender and that same

---

[3]Palisades is a 50% member of DREL along with DREI (who is in bankruptcy).   DREL is the sole member and manager of the Receivership Entity FHC.

Receivership Entity.   No one has alleged that Palisades' $3,500,000.00 was not used for its express purpose, to fund the acquisition of the Frisco Gate Property.   If that was the intent of Palisades to consider the $3,500,000 a loan to FHC several unanswered questions arise.   Why not document it as a loan in January 2020? Why call it a "capital contribution" in the DREL company agreement with DREI? Why four months later in a state court lawsuit is it called a "capital contribution" and a year later in the DREI Bankruptcy under penalty of perjury it again is called a "capital contribution" in a filed proof of claim yet in this proceeding under an unfiled and unapproved "settlement" this capital contribution (aka investor funds) is transformed into a secured loan to FHC. Under the Loan Documents, no such loan could have been made without the consent or approval of TRB.   The DREL company agreement specifically mentions the loan from TRB yet said agreement is silent as to any "loan" made by Palisades.   What does this settlement" resolve?   Nothing.   Palisades has not waived its entitlement to the amounts it alleges it is entitled to receive under the DREL company agreement yet this Order justifies paying Palisades "to ensure the estate receives the balance of the sale." The Order allows for the repayment of an investment made by an affiliated member of a Receivership Entity before TRB is paid in full, ignoring the Loan Documents between said Receivership Entity and TRB.   This repayment of investor funds occurs before any other investors in this Receivership Estate receive any repayment of their investments, the justification for same again a settlement that violates the TRB Loan Documents while preserving all the claims of Palisades to be asserted later to further diminish the

TEXAS REPUBLIC BANK, N.A.'S MOTION FOR RECONSIDERATION OF THE JANUARY 8, 2024 ORDER REGARDING THE FRISCO GATE PROPERTY - PAGE  8

Receivership Estate.

## Summary

17.    In summary, TRB requests that the Court reconsider its Order and rectify the inequities it has created favoring an affiliate of FHC to the detriment of TRB. TRB respectfully requests that such Order be revised and state:

(a) There is no stay of the accrual of the interest rate applicable to TRB's Note;

(b) At closing, the Receiver is authorized to pay TRB from the proceeds of the sale of the Frisco Gate Property: (i) the principal amount of the Note plus all accrued but unpaid interest from Maturity (July 31, 2022) at the Maximum Lawful Rate as defined in the Note (currently eighteen percent (18.0%) per annum) until Closing; and (ii) all expenses, penalties (if any), attorneys' fees and costs accrued or incurred through the date of closing; TRB will provide the Receiver at least three (3) days in advance of closing an itemized list of all amounts due and owing under the Note incurred or accrued through the date of closing (the "Payoff Amount");

(c) Upon receipt of the Payoff Amount, TRB will execute a release of lien to the Property and deliver same to the Receiver (or its designee) at closing;

(d) Upon payment of the Payoff Amount to TRB, the Receiver may pay

Palisades the sum of $3,500,000.00 at closing; and

(e) Any additional amounts Palisades contends it is entitled to recover pursuant to any contract or agreement with a Receivership Entity shall be submitted for consideration in a claims process.

WHEREFORE, PREMISES CONSIDERED, Texas Republic Bank, N.A. respectfully requests the Court grant the relief requested hereinabove and for such other relief as is just and proper.

Respectfully submitted this the 3rd day of February, 2024.

SCHEEF & STONE, L.L.P.
2600 Network Boulevard
Suite 400
Frisco, Texas 75034
Telephone: 214.472.2100
Telecopier: 214.472.2150


By: /s/ Patrick J. Schurr
Patrick J. Schurr
State Bar No. 17853530
Patrick.schurr@solidcounsel.com

ATTORNEYS FOR TEXAS REPUBLIC BANK, N.A.

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that on January 31, 2024, Patrick Schurr, counsel for Texas Republic Bank, N.A. conferred with Charleene Koonce, counsel for the Receiver, regarding the filing of a motion for leave and outlined the grounds for the motion for reconsideration.  On February 1, 2024, Ms. Koonce responded that she opposed the request.

/s/ Patrick J. Schurr
Patrick J. Schurr

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on Charlene Koonce, counsel for the Receiver, and any parties requesting notice herein, via electronic means, on this the 3rd day of February, 2024.


　　　/s/ Patrick J. Schurr
Patrick J. Schurr