**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

**REPLY IN SUPPORT OF RECEIVER'S MOTION TO
LIFT STAY OF BM318 BANKRUPTCY CASE**

Cort Thomas, as the Court-appointed Receiver, files this Reply in support of his *Motion to Lift Stay of BM318 Bankruptcy Case* (the "Motion")[1] [Dkt. 450] and respectfully shows the Court as follows:

**SUMMARY**

The Receiver filed the Motion to ask this Court to lift the Receivership Order's Litigation Stay on Receivership Entity BM318, LLC's Bankruptcy Case so that the Bankruptcy Court may consider approving settlement agreements between the Receiver, BM318, Dixon, and Lumar pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. If the Bankruptcy Court approves the settlement agreements, the Receiver will file a motion in this case seeking this Court's ratification of the settlement agreements.

One of the premises of the Motion is that the Bankruptcy Court is best positioned to consider this matter in the first instance. This is due to the Bankruptcy Court's familiarity with the facts of the Bankruptcy Case and the Bankruptcy Court's regular application of Rule 9019 of the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

Federal Rules of Bankruptcy Procedure, which sets the standard for a bankruptcy court's review of settlements of adversary proceedings. Therefore, as a matter of judicial efficiency, it makes sense for this Court to lift the stay to permit the Bankruptcy Court to aid this Court.

Barton's Objection [Dkt. 455] ignores the fact that the Litigation Stay does not exist to aid Barton—it aids the Receiver by allowing the Receiver to become acquainted with the case and to centralize all claims in this Court before dealing with litigation. As the Receiver is recommending that the Litigation Stay be lifted solely for the Bankruptcy Case, the Court should determine that the litigation stay's purpose for the Bankruptcy Case has been fulfilled already. Barton also proposes that this Court should conduct an initial review of the settlement terms, which would defeat the efficiency of the Bankruptcy Court considering this matter in the first instance.

None of Barton's objections to the Motion overcome the presumption that this Court may exercise its inherent, broad discretion to simply lift the Litigation Stay on BM318's Bankruptcy Case. Accordingly, the Court should grant the Motion and allow the Bankruptcy Court to consider the settlement agreements. Barton may object to the terms of the settlement agreements then.

## LEGAL STANDARD

This Court has "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)); *see SEC. v. Provident Royalties, L.L.C.*, No. 3:09-CV-1238-L, 2011 WL 2678840, at *2 (N.D. Tex. July 7, 2011) (same). That "broad authority" extends to issuing, or making exceptions to, "orders preventing interference with its administration of the receivership property, such as orders imposing blanket stays of litigation." *SEC v. Provident Royalties, L.L.C.*, 2011 WL 2678840, at *2 (citing *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985)).

2

A court "should consider" certain factors to "determine whether to make an exception to a stay of proceedings." *Id.* According to the Fifth Circuit, they are the "*Wencke* factors": (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC. v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011) (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) ("*Wencke II*")); *see SEC v. Provident Royalties, L.L.C.*, 2011 WL 2678840, at *2 (same).

"The first factor balances the receiver's interests with those of the moving party." *SEC v. Provident Royalties, L.L.C.*, 2011 WL 2678840, at *2 (citing *Stanford*, 2011 WL 1758763, at *2). "In determining the moving party's interests, the court considers whether the moving party will suffer substantial injury if not allowed to proceed." *Id.* (citing *Wencke II*, 742 F.2d at 1231). "The second factor, timing in the course of the receivership, is fact specific, and takes into account 'the number of entities, the complexity of the scheme, and any number of other factors.'" *Id.* at *3 (quoting *Stanford*, 2011 WL 1758763, at *2). "A court may therefore lift or decline to lift a litigation stay anywhere from a few months to a few years into the receivership, depending on the particular circumstances of the case." *Id.* (collecting cases). "Under the third factor of the analysis, the moving party is not required to show that it is likely to prevail on the merits, only that it has 'colorable' claims that justify lifting the stay." *Id.* at *4.

## **ARGUMENT**

### 1. **The Court Should Exercise Its Discretion and Lift the Litigation Stay on BM318's Bankruptcy Case.**

Under the first *Wencke* factor, the Court should find that the limited lifting of the Litigation Stay for the Bankruptcy Case properly balances the Receiver's interest against those of the

opposing party. The Court's application of this factor in *SEC v. Provident Royalties* correctly illustrates that the point of a litigation stay is to balance the tension between litigants seeking to advance their cases against receivership defendants and the interest of the receiver in being provided breathing room at the outset of a case. *See id.* at *2–3. Here, the Receiver's own statement on this issue should be dispositive. Indeed, in *Provident Royalties,* this Court observed that the court-appointed receiver "is in the best position" to decide whether "litigation would interfere with the interests of the receivership." *Id.* at *2. In that case, the receiver "approved" the liquidating trustee's motion to lift stay. *Id.* In this instance, *the Receiver* is the movant. So, plainly, the Receiver believes he has had ample time to get up to speed on the Bankruptcy Case and to address it. This fact alone weighs heavily in favor of the limited relief from the Litigation Stay at issue here.

The Objection wholly misunderstands this factor. Barton asserts that the Litigation Stay exists to protect him. It does not. Again, as explained by this Court in *Provident Royalties*, wherein it was the receivership defendants who similarly objected to the lifting of the stay, the Court admonished: "The fact that they face multiple lawsuits is irrelevant because the purpose of the receivership and the accompanying stay on litigation is to protect the interests of the defrauded investors and not [the receivership defendants'] individual interests." *Id*.

Additionally, in his Objection, Barton seeks to undermine the very judicial-efficiency benefit that makes the Motion particularly sensible here. Barton seeks to have this Court consider the settlement in the first instance, when the question is whether the Bankruptcy Court should do so. His assertion that the Court should await the Fifth Circuit's determination of Barton's appeal of the Receivership Order before ruling on the Motion also ignores the absence of a stay in this

case pending Barton's appeal.[2] Indeed, the Court has continued exercising its authority over the Receivership Estate while Barton's appeal is pending.[3]

Furthermore, while the SEC "asserts claims under the Securities Act of 1933 and the Securities Exchange Act," the proposed settlement agreements at issue here pertain to resolving separate causes of action under the Bankruptcy Code or state law. *See, e.g., id.* If approved, the settlement agreements will resolve causes of action that will not conflict with or disturb the prosecution of this case.

The second and third *Wencke* factors also weigh in favor of the Court granting the Motion. The timing, as this Court has noted, of the lifting of any litigation stay depends "on the particular circumstances of the case." *Id.* at *3. The Parties mediated their disputes in May 2023, executed the settlement agreements in June 2023, and waited to seek court approval and ratification of the settlement agreements until the Court entered the new Receivership Order. Since then, Dixon and Lumar have pressed the Receiver to commence this process by filing and seeking the Court's approval of the Motion—in accordance with the terms of the settlement agreements.

Importantly, the Receiver is not seeking to lift the entire Litigation Stay but is only seeking to lift the Litigation Stay as it pertains to one bankruptcy case and for the purpose of marshalling receivership assets in accordance with the Receivership Order. *See id.* Ultimately, the Receiver, who "is in the best position" to decide whether "litigation would interfere with the interests of the receivership," *id.* at *2, has concluded that lifting the stay of the Bankruptcy Case is in the best interest of the Receivership Estate now. Finally, the settlement agreements are evidence of the resolution of colorable claims that justify the lifting of the stay of the Bankruptcy Case.

---

[2] *See* FED. R. CIV. P. 62(c)(1).

[3] For example, on December 15, 2023—one week after Barton filed his notice of appeal of the Receivership Order—the Court entered orders approving the sale of certain Receivership properties. *See, e.g.,* Dkts. 436–38.

**2. The Court Should Overrule Barton's Remaining Objections as Untimely and Meritless.**

Barton also objects to the Motion by claiming that the settlement agreements are "not in the estate's best interest" and because they "must comply with 28 U.S.C. § 2001."[4] These meritless arguments have no role at this juncture, and instead may be raised when the Bankruptcy Court weighs approval of the agreements and when this Court considers ratification of any approval of the agreements by the Bankruptcy Court. Furthermore, this Court has already ruled that Barton's theory on the alleged applicability of 28 U.S.C. § 2001 in a situation like this is incorrect—in the Court's words, the statute, "which governs the sale of real property by a receiver, does not apply to settlement agreements or contractual compromises like the one at issue here."[5] Barton's premature arguments regarding the terms of the settlement agreements, which are not the subject of the Motion, do not weigh against lifting the Litigation Stay solely for the Bankruptcy Case.

## CONCLUSION

The Receiver respectfully requests the Court grant the Motion so that the Bankruptcy Court may consider approving settlement agreements between the Receiver, BM318, Dixon, and Lumar pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Receiver also requests such other and further relief to which he may show himself entitled.

---

[4] *See* Objection at 2–3.

[5] *Order Granting Receiver's Motion to Ratify Agreement with Lumar Land & Cattle* [Dkt. 163] at 1. Additionally, BM318 holds no real property—Barton lost possession of BM318's real property prior to the appointment of the Receiver as a result of defaulting on the "First Buyback Contract" with Dixon.

6

Respectfully submitted,

By: */s/ C. Alan Carrillo*

    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    C. Alan Carrillo
     State Bar No. 24109693
     alan@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

7