# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | Case No. 3:22-CV-2118-X |
| v. | § § | |
| TIMOTHY BARTON, *et al.*, | § § | |
| Defendants. | § § | |

## MOTION OF INTERESTED PARTY MCCORMICK 101, LLC TO MODIFY STAY PROVISION SET FORTH IN RECEIVER ORDER

### *Introduction*

McCormick 101, LLC (**"McCormick"** or **"Lender"**) is the holder of a certain commercial real estate mortgage loan (the **"Loan"**), the borrower under which is Goldmark Hospitality, LLC (**"Goldmark"** or **"Borrower"**).  The Loan is evidenced in part by:

● that certain Loan Agreement, dated as of November 14, 2019 (the **"Loan Agreement"**);

● that certain Promissory Note, in the original principal amount of $2,584,249.00, dated as of November 14, 2019 (the **"Note"**); and

● that certain Deed of Trust, Security Agreement and Financing Statement, dated as of November 14, 2019 (the **"Deed of Trust"**).

The property encumbered by the Deed of Trust includes certain real property, together with improvements thereon, sometimes referred to as the Amerigold Suites, which is a 70-unit extended-stay hotel located at 13636 Goldmark Drive in Dallas, Texas.  The Amerigold Suites, together with the personal property that is subject to the Deed of Trust, is sometimes referred to herein as the **"Property."**  The Loan Agreement, Note, Deed of Trust, and other documents further

evidencing or securing the Loan, as each may have been modified from time to time, are sometimes referred to herein as the **"Loan Documents."**

This matter was commenced against Timothy Barton (**"Barton"**) and others on September 23, 2022 – more than 15 months ago. As part of the proceedings in this matter, on motion of the Securities Exchange Commission (the **"SEC"**), the Court entered its Order Appointing Receiver (the **"Receiver Order"**), appointing Cortney C. Thomas as receiver (the **"Receiver"**). The Receiver Order vests in the Receiver exclusive authority to administer not just the property of Barton and other defendants in the case, but also to administer the property of certain entities directly or indirectly owned or controlled by Barton. This includes the Property, owned by Goldmark.

In turn, the Receiver Order stays certain actions of third parties, like McCormick, including actions to foreclose on collateral, such as the Property. The stay is set forth at paragraph 34 of the Receiver Order, stating in pertinent part, "… the following proceedings … are stayed *until further Order of this Court*: … foreclosure actions." (emphasis added).[1]

McCormick submits to the Court that, given the history of this case to date, particularly as it applies to the Property (as set forth below), it is now appropriate for the Court (1) to enter an order modifying the stay set forth in the Receiver Order and (2) to authorize McCormick to proceed with a foreclosure sale of the Property in accordance with Texas law. Accordingly, McCormick respectfully moves for such relief.

---

[1] The Court has asserted jurisdiction over McCormick in staying McCormick from enforcing its rights and remedies under its Loan, and McCormick has dutifully recognized and respected both the Court's jurisdiction and stay. The Court's order staying McCormick renders McCormick a party in interest, entitled to be heard in the course of the receivership. To the extent the Court requires that McCormick formally intervene in order to have this Motion heard, McCormick so moves, and has submitted herewith a proposed order granting such intervention.

***The Loan, the Property, the Property's History in This Case, and Argument for Relief***

The original principal balance of the Loan is sizable – more than \$2.58 million.  The Loan accrues interest at a non-default rate of 6.5 percent per annum and at a default rate of 15 percent per annum.  The monthly debt service payable to McCormick on the Loan is \$19,699.75.  That amounts to, over the 15 months of the receivership, \$295,496.25, a staggering dollar amount that will only continue to increase, as not a penny of that amount has been paid to McCormick since the commencement of the receivership.

Meanwhile, during the course of the receivership, the assessed tax value of the Property has increased from \$950,000.00 to \$2.45 million in 2023, resulting in real estate taxes payable for the Property tripling, from approximately \$13,000 annually to approximately \$39,000 annually.  An increase in a property's real estate tax obligations, of course, results in a decrease of that property's net operating income, which is the key driver of the value of an income-producing property.  In short, the debt owed to McCormick has grown exponentially during the receivership, while the value of the Property has decreased (particularly in the real estate market of 2022-23).  Thus, the entire economic risk of the receivership, as it applies to the Property, has been borne by McCormick.[2]

Because of all of these factors, and in the midst of all of the foregoing, the Receiver determined, and has acted dutifully, to market and attempt to sell the Property.  But no sale has

---

[2] The challenges the Property presents were well-summarized in the Receiver's Sixth Status Report, filed with the Court:

> During the Third and Fourth Quarters of 2023, the Texas heat took its toll on the unit's air conditioning units, resulting in significant repair costs.  Meanwhile, interest on the property has continued to accrue, the necessity for significant repairs have continued, property tax and insurance bills remain high, and the Receiver and his team are required to continue devoting significant attention to this property.  The majority of these challenges have been present from the outset of the Receivership.

come to fruition.  This has largely been due to the actions of Barton, and the Court is likely to remember the history.

The Receiver's sale efforts commenced in late 2022.  A broker was retained by the Receiver and a buyer duly located, with Matthew Flume submitting a letter of intent to purchase the Property at the price of $5.5 million.  A contract for sale was eventually executed, dated as of March 1, 2023.  *Such sale, however, was subject to court approval, pursuant to 28 U.S.C. Section 2001 – and the Receiver duly so moved for approval.*  The Court entered its Order, only for Barton to appeal it, for no good reason at all.  The appeal spooked the title company acting in connection with the sale, who would not provide a policy pending said appeal.

The process effectively repeated itself four more times in the latter half of 2023, with the sale's closing date being extended time and again, and with Barton filing an improper interlocutory appeal as to a second sale order entered by the Court in December 2023.  The appeal was, in the end, dismissed, but in the interim, the purchaser walked from the sale, citing to what is noted above: that the market for sales of multifamily properties had, since negotiations had begun in late 2022, changed significantly in favor of buyers, to the detriment of sellers, *like the Receiver.*

As the Court can readily surmise, the issue today is thus how to effectuate a sale of the Property as expeditiously as possible without the potential for further interference from Barton. The answer is to modify the stay provision in the Receiver Order and allow McCormick to conduct a nonjudicial foreclosure sale of the Property, which (1) requires no (appealable) approval order under 28 U.S.C. Section 2001 and (2) provides Barton no opportunity to further interfere with the sale process.[3]

---

[3] Nor would Barton have a right to appeal the Court's order modifying the Receiver Order. Wells Fargo Bank, N.A. v. JRK Villages of Meyerland, LLC, No. 01-10-01076-CV, 2011 WL 61170 at *1 (Tex.App. Jan. 6, 2011) ["Wells Fargo is not appealing an order appointing a receiver.  Wells Fargo asked for the appointment of a receiver, but appeals a condition the trial court imposed upon the receiver.  Section 51.014(a) does not address orders modifying or

In connection with modification of the stay provision in the Receiver Order, McCormick is willing to agree that certain provisions apply to the foreclosure sale.  For example:

● if the Court determines that the three appraisals of the Property, already obtained by the Receiver, are no longer timely, McCormick is agreeable to new appraisals being obtained.  (And, likewise, if the Court determines that the existing appraisals are satisfactory, McCormick is agreeable to utilization of such appraisals in connection with the sale to come);

● the Receiver's broker can continue to market the Property during the time it takes to notice, advertise, and conduct the sale under Texas law;

● notice may be provided to the prior purchaser, who may still have interest in acquiring the Property, of the sale;

● McCormick will bid, pursuant to its credit bid rights at the sale, no less than 2/3 of the appraised value of the Property (by taking the average of the three appraisals discussed above);

● if McCormick is not the prevailing bidder at the sale (meaning that there would be actual cash proceeds payable at the sale), the cash proceeds of the sale would be paid first to the broker's commission if the bidder was in fact procured by the broker, and second to McCormick's outstanding principal and interest, with any remaining cash proceeds to be deposited into escrow, to be disbursed after further order of the Court after a hearing on McCormick's entitlement to default interest, late charges, expenses (including attorneys fees), and other amounts owed under the Loan Documents; and

● if McCormick *is* the prevailing bidder via McCormick's credit bid at the sale, no cash proceeds would be available for distribution and no amounts would be payable to third parties, including for the broker's commission.

A grant of McCormick's motion herein, paired with the provisions set forth above, strikes a balance between (a) McCormick's valid lien interests in the Property and (b) the Receiver's interests in (i) finalizing a sale (and thus ridding the receivership of both the Property and the ongoing, considerable expense incurred in connection with it) and (ii) making such sale available to potential bidders (and in turn maximizing the return on the Property).  Moreover, it does so in a

---

amending the terms of a receiver's appointment.  Construing Section 51.014(a) strictly, as we must, we conclude we lack jurisdiction over this appeal"] (holding court lacked jurisdiction over appeal of order modifying receiver order).

MCCORMICK 101, LLC'S MOTION TO MODIFY STAY PROVISION SET FORTH IN RECEIVER ORDER PAGE    5
93295673.2

manner that prevents further meddling on the part of Barton with respect to a sale that would be beneficial to the receivership estate.

### *Conclusion*

This case is more than 15 months old.  McCormick has, of course, complied with the stay set out in the Receiver Order, but, while doing so, has watched (1) its indebtedness increase by nearly $300,000.00 (at least) and (2) the value of its collateral diminish in a volatile real estate market.  In short, the stay is injuring McCormick's financial interests.

McCormick did not, upon commencement of the receivership, rush to the courtroom and seek relief.  It respected the stay and observed the efforts of the Receiver (and has actively interacted with the Receiver) to market and sell the Property, efforts that have not come to fruition (through no fault of the Receiver).  Now, however, with the debt ever-increasing, and McCormick's interest in its Loan diminishing, is the time for this Motion to be duly considered.

And, of course, there is no doubt of the merits of McCormick's claim to enforcement of its rights and remedies.  Its Borrower is long in payment default; but for the stay in the Receiver Order, McCormick would certainly be entitled to enforcement of its rights and remedies.

In short, the *Wencke* elements for modification of the stay are satisfied here: (1) continuing injury to the moving party absent modification of the stay; (2) appropriateness with respect to the timing of the moving party's motion; and (3) the underlying legal merits of the moving party's claim. *See S.E.C. v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980).

Sale of the Property is beneficial to the receivership estate, and it is beneficial to McCormick.  The key is to find a manner of sale that is not subject to interference by Barton.  This Motion presents that manner of sale and sets forth proposed additional provisions to apply to said

sale, for the benefit of the Receiver and the estate.  For those reasons, the Court should grant the motion, and McCormick, accordingly, so respectfully requests.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By: */s/ Russell W. Mills*
Russell W. Mills
Texas Bar No. 0078469
rmills@bellnunnally.com
K. Shane Thomas
Texas Bar No. 24126045
sthomas@bellnunnally.com
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
214-740-1400 Telephone
214-740-1499 Facsimile

ATTORNEYS FOR
MCCORMICK 101, LLC

-and-

**POLSINELLI PC**

By: */s/  P. Kyle Cheves*
P. KYLE CHEVES (SBN 24126723)
2950 N. Harwood Street, Suite 2100
Dallas, TX 75201
(214) 397-0030
kcheves@polsinelli.com

BRETT D. ANDERS (*pro hac vice* forthcoming)
BRADLEY R. GARDNER (*pro hac vice* forthcoming)
KELSEY E. HODGDON (*pro hac vice* forthcoming)
900 West 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
banders@polsinelli.com
bgardner@polsinelli.com
khodgdon@polsinelli.com

SUCCEEDING ATTORNEYS FOR
MCCORMICK 101, LLC

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1, I hereby certify that on February 16, 2024, I conferred with counsel for the Receiver, regarding the relief sought herein, who indicated that Plaintiff is opposed. I attempted to confer with counsel for Plaintiff Securities and Exchange Commission, but I could not reach them.

*/s/ Kelsey Hodgdon*
Kelsey Hodgdon

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of February, 2024, a true and correct copy of the foregoing Motion to Modify the Stay Provision Set Forth in Receiver Order was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of such filing to all counsel of record.

*/s/ Russell W. Mills*
Russell W. Mills