**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

**THE RECEIVER'S RESPONSE IN OPPOSITION TO
TEXAS REPUBLIC BANK, N.A.'S MOTION FOR RECONSIDERATION OF
THE JANUARY 8, 2024 ORDER REGARDING THE FRISCO GATE PROPERTY**

Cort Thomas, as the court-appointed Receiver, submits this Response in opposition to Texas Republic Bank, N.A.'s ("Lender") *Motion for Reconsideration of the January 8, 2024 Order Regarding the Frisco Gate Property* ("Motion") [Dkt. 457][1] and respectfully shows the Court as follows:

**I.    SUMMARY**

Lender's Motion does not provide new or good reasons for the Court to reconsider its *Order Regarding the Frisco Gate Property* ("Frisco Gate Property Order") [Dkt. 451], and is really just an attempt to relitigate its dispute with the Receiver over whether Lender is entitled to default interest at the expense of the Receivership Estate. The Motion rehashes at least two arguments the Court considered when it entered the Frisco Gate Property Order—one alleging that Palisades' claim for $3.5 million investment in DREI (the parent entity of FHC, which owns the Frisco Gate

---

[1] Capitalized terms not otherwise defined have the meanings ascribed to them in the Receiver's *Verified and Expedited Motion to (I) Ratify Orders Appointing Appraisers, Approving Appraisals and Approving Sale of Real Estate as Required by 28 U.S.C. § 2001 with Respect to the Frisco Gate Property, (II) Authorize the Sale Free and Clear of All Liens, and (III) Stay Accrual of Post-Receivership Default Rate Interest* (the "Sale Ratification Motion") [Dkt. 410] or the Receiver's reply in support of the Sale Ratification Motion (the "Sale Ratification Reply") [Dkt. 410].

Property) should be characterized as a capital contribution and not a loan, and the other claiming that the Frisco Gate Property Order ignores the terms of the Loan Documents. The Motion also presents at least one new argument that the Bank could have made in its extensive briefing preceding the Frisco Gate Property Order, but it did not: that there is allegedly no settlement between the Receiver and Palisades. That argument, however, is incorrect and untimely. As a result, the Motion is a meritless mulligan—the Court should deny it.

## II.    LEGAL STANDARD

"A request that the Court reconsider an interlocutory order is governed by Rule 54(b) of the Federal Rules of Civil Procedure." *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014), *aff'd sub nom. Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015). Rule 54(b) says that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).

"Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court." *Ackerman McQueen, Inc. v. Stinchfield*, Case No. 3:19-CV-03016-X, 2021 WL 793755, at *1 (N.D. Tex. Mar. 2, 2021) (quoting *Dos Santos v. Bell Helicopter Textron, Inc. District,* 651 F.Supp.2d 550, 553 (N.D. Tex. 2009)). The court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Id.* (quoting *SEC. v. Cuban*, Case No. 3:08-cv-2050-D, 2013 WL 1091233, at *2 (N.D. Tex. Mar. 15, 2013)).

"Such a motion requires the Court to determine 'whether reconsideration is necessary under the circumstances.'" *MERSCORP, Inc.*, 2 F. Supp. 3d at 950 (citing *Rotella v. Mid–Continent Casualty Co.,* Case No. 3:08-cv-0486-G, 2010 WL 1330449, at *5 (N.D. Tex. Apr. 5,

2

2010)). "Even though the standard for evaluating a motion to reconsider under Rule 54(b) 'would appear to be less exacting than that imposed by Rules 59 and 60 ..., considerations similar to those under Rules 59 and 60 inform the Court's analysis.'" *Id.* (quoting *Dos Santos,* 651 F.Supp.2d at 553). "It is clear under Rules 59 and 60 that '[m]otions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct a manifest error of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Arrieta v. Yellow Transportation, Inc.,* Case No. 3:05-cv-2271-D, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009)); *see also Templet v. HydroChem Inc.,* 367 F.3d 473, 478–79 (5th Cir. 2004) (citation omitted) (stating that under Rule 59(e), relief may be granted "to correct manifest errors of law or fact or to present newly discovered evidence" and Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment").

### III.    ARGUMENT

**A.    The Frisco Gate Property Order Fully Considered the Parties' Different Positions Regarding the Existence and Nature of Palisades' Interest in the Frisco Gate Property, Which is Irrelevant Anyway.**

Most of Lender's Motion deals with the characterization of Palisades' interest in the Frisco Gate Property, but that issue is ultimately irrelevant to whether the Receiver must pay Lender default interest from the sale proceeds of that property—the issue Lender actually wants to relitigate. Lender is correct that before the Court entered the Frisco Gate Property Order, the parties offered differing characterizations of Palisades' interest in the Frisco Gate Property. In the Sale Ratification Reply, the Receiver explained how he and Palisades characterized Palisades' interest in the Frisco Gate Property differently, but ultimately reached an agreement on how Palisades should be treated regardless of the characterization of its interest.[2] The Receiver said that Palisades

---

[2] *See generally* Sale Ratification Reply at 7, n. 13. Although in the Sale Ratification Motion the Receiver referred to Palisades' $3.5 million investment as an unsecured loan and said that "Palisades asserts that funds were a loan intended

contends that it "is an equity investor in the entities that own" FHC and that Palisades "provided $3.5 million as a preferred capital contribution in connection with the Company Agreement related to the operation of FHC," among other things.[3] In contrast, the Receiver asserted that Palisades' $3.5 million investment "should be treated in fairness as a loan on the property."[4] In its own filing, Palisades confirmed its position and its disagreement with the Receiver's description of its funding.[5]  In response, Lender simply argued that "to the extent that the claim of Palisades TC, LLC is unsecured and subject to litigation," Lender objected to the Receiver seeking Court approval to pay Palisades at all before Lender was "paid in full."[6]

Now, Lender argues that "Palisades is judicially estopped from arguing its capital contribution should be treated as a loan."[7] But Lender is mistaken. Palisades *did* argue that its $3.5 million investment is a capital contribution.[8] Hence, the Receiver and Palisades' disagreement.

---

to be repaid while Barton claimed the funds were a capital contribution," Sale Ratification Motion ¶ 7, the Receiver clarified his understanding of Palisades' position in the Sale Ratification Reply, as described herein. Additionally, in the Sale Ratification Motion, the Receiver asked the Court to "treat" Palisades as an unsecured lender. *Id.* at 10, n. 13 ("At this juncture, the Receiver is amenable to (and believes equity will be best served by) treating Palisades as an unsecured lender who is entitled to recover the amount of its principal at closing, with the ability to seek any other amounts (including interest and attorneys' fees) as part of the Receivership's claims process for creditors.").

[3] Sale Ratification Reply at 7, n. 13.

[4] *Id.*

[5] *See Unopposed Renewed Motion of Palisades TC LLC to Intervene on a Limited Basis with Regard to the Regard to the Receiver's Verified and Expedited Motion to (I) Ratify Orders Appointing Appraisers, Approving Appraisals and Approving Sale of Real Estate as Required by 28 U.S.C. § 2001 with Respect to the Frisco Gate Property, (II) Authorize the Sale Free and Clear of All Liens, and (III) Stay Accrual of Post-Receivership Default Rate Interest and Brief in Support* ("Palisades' Intervention Motion") [Dkt. 430] ¶ 8 ("It seems part of the misguided attention to Palisades has come from the Receiver's reference to Palisades providing an unsecured loan to buy the Property. That characterization was mistaken and incorrect. Palisades invested $3.5 million toward the purchase of the Property as a 50% member of DREL pursuant to the DREL company agreement, as reflected in that agreement attached by the Bank as Exhibit A to its motion to intervene.") (internal citations omitted).

[6] *Lender's Verified Response in Opposition to the Receiver's Verified and Expedited Motion to (I) Ratify Orders Appointing Appraisers, Approving Appraisals and Approving Sale of Real Estate as Required by 28 U.S.C. § 2001 with Respect to the Frisco Gate Property, (II) Authorize the Sale Free and Clear of All Liens, and (III) Stay Accrual of Post-Receivership Default Rate Interest* ("Sale Ratification Response") [Dkt. 393] ¶ 13.

[7] Motion at 4.

[8] *See* Palisades' Intervention Motion ¶ 8.

The Receiver and Palisades' dispute regarding the nature of Palisades' interest and how the sale proceeds should be disbursed resulted in their settlement agreement, which Lender mistakenly alleges does not exist.[9] Ultimately, the characterization of Palisades' interest—and Lender's disagreement with it—is irrelevant. Both the Receiver and Palisades explained to the Court why that is so.[10]

The Court heard the parties' differing positions on the issue and expressly acknowledged them when it considered the Sale Ratification Motion. In its order dated December 14, 2023, the Court said that it "*has received papers on Palisades's interest* and Texas Republic Bank's default interest argument *and will resolve those issues on the papers.*"[11] Through the Frisco Gate Property Order, the Court did so.[12] Under this Court's standard governing reconsideration motions for interlocutory orders, Lender's revisitation of this fully briefed and resolved dispute provides no new or good reason for the Court to reconsider its Frisco Gate Property Order.

**B.    The Frisco Gate Property Order Considered the Terms of Lender's Loan Documents.**

Before the Court entered the Frisco Gate Property Order, the Receiver and Lender disputed the meaning of certain terms of the Loan Documents. That dispute is really what the Lender asks

---

[9] *See* discussion *infra*.

[10] *See id.* ¶ 9 ("However, [the Receiver's] mistaken characterization has no impact on the Bank. Neither Palisades nor the Receiver is contending that Palisades has priority to the Bank. The question in the pending dispute between the Bank and Receiver is simply how much interest the Bank is entitled to receive to be fully paid off on its loan, something that only impacts the net proceeds to the Receiver."); *see* Sale Ratification Reply at 6–7 ("Second, Lender cites no authority for application of the 'absolute priority rule,' or the section of the Bankruptcy Code codifying that rule, in this Receivership. On the contrary, as demonstrated above and in the Motion, the Court has broad discretion to treat Lender's claim for recovery of fees incurred as a result of the Receivership (for instance, attorneys' fees and interest) in an equitable manner, including rejecting those claims entirely. In fact, in equity receiverships, 'courts regularly grant defrauded investors a higher priority than defrauded creditors, and there is persuasive authority supporting this view.' Nor does any equitable reason exist for refusing to return Palisades' principal/purchase money funds at closing, while ample justification demonstrates that doing so serves the best interests of the Receivership Estate.") (internal citations omitted).

[11] Dkt. 432 (emphasis added).

[12] *See* Frisco Gate Property Order ¶ 5, n. 5 ("The Court determines that the settlement with Palisades is a fair and reasonable basis to treat its investment as a secured lien, because the Receivership is compromising Palisades's arguable entitlement to much more than its principle [sic], to ensure the estate receives the balance of the sale.").

the Court to reconsider. Their specific disagreement related to whether Lender has a right to any "default" or "maturity" interest under the Loan Documents.[13] However, in its *Response to Receiver's Motion for Appointment of Appraisers, Approval of Appraisals and a Hearing Regarding Approval of Sale of Frisco Gate Property* ("Second Sale Ratification Response") [Dkt. 426], Lender asserted the argument that it raises again in the Motion: that Lender's inability to collect "maturity" interest "prohibits Palisades from receiving any funds at closing until the Lender is paid in full notwithstanding any subsequent agreement between Palisades and the Receiver."[14] The Court rejected Lender's argument the first time. It should reject it again.

Notably, if the Court were to reconsider its ruling on this issue and allow Lender to receive default interest at closing, the result would not only be a smaller net recovery from the sale of the Frisco Gate Property, but it would also set a dangerous precedent for other lenders to properties in the Receivership Estate to seek default interest. As the Receiver has stated repeatedly, because of the cash-starved nature of this Receivership Estate to date, the Receiver has been unable to service the debt on the Receivership Assets, meaning virtually every loan is in default status. Allowing lenders to collect default interest would have a significant negative impact on the Receiver's efforts to collect assets and distribute them to defrauded investors and creditors.

## C.    Lender is Mistaken—the Receiver and Palisades Reached a Settlement.

Lender mistakenly argues that because it cannot locate the Receiver and Palisades' settlement on a court docket that such an agreement must not exist. But court approval is not required for the settlement that the Receiver and Palisades reached regarding proceeds of the sale of the Frisco Gate Property, which the Court *has* authorized. In its *Order Appointing Receiver*

---

[13] *See generally* Sale Ratification Motion at 9–12; Sale Ratification Response ¶¶ 26–45; Sale Ratification Reply at 2–6.

[14] Second Sale Ratification Response ¶ 2, n. 2.

[Dkts. 29, 417], the Court ordered: "The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property."[15] The Court empowered the Receiver to enter into settlements like the one he reached with Palisades, and the Court recognized the efficacy of that settlement in the Frisco Gate Property Order.[16] Accordingly, Lender's new argument on this issue is meritless and fails to provide any basis for the Court's reconsideration of the Frisco Gate Property Order.

## IV.    CONCLUSION

The Receiver requests that the Court, in its sole and sound discretion, find that there is no cause for the Motion and to deny the Motion. The Receiver also requests such other and further relief to which he may show himself entitled.

---

[15] Order Appointing Receiver ¶ 39. Furthermore, in its *Order Granting Motion for Order Governing Administration of Receivership Estate, Etc. and Approving Disposition of Certain Personal Property* [Dkt. 63], which was ratified by the Court's *Order Granting in Part Receiver's Blessing Motion* ("administrative Order") [Dkt. 419], the Court also noted that the procedures prescribed by the Administrative Order "do not encompass approval for any compromise, sale, or other disposition of contractual rights or pending choses in actions, regarding which no further Court approval is required. Following final disposition of such rights or claims, the Receiver shall describe all relevant terms of such disposition in his next filed Status Report. In his discretion, the Receiver may also seek Court approval prior to compromising, selling, or otherwise disposing of these intangible rights.").

[16] *See* Frisco Gate Property Order ¶ 5, n. 5. Absent a settlement with Palisades, the Receiver and Palisades would have to litigate whether and what share of the sale proceeds Palisades should receive. Instead, they resolved that uncertainty, which benefits the Receivership Estate.

Respectfully submitted,

By: _/s/ C. Alan Carrillo_____
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    C. Alan Carrillo
     Texas Bar No. 24109693
     alan@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

8