## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*, | § | |

### RECEIVER'S RESPONSE TO DEFENDANT BARTON'S OBJECTION TO RECEIVER'S NOTICE OF INTENDED AUCTION OF CONTENTS OF 2999 TURTLE CREEK BLVD

Cort Thomas, as Receiver, responds to Barton's Objection to the Receiver's Notice of Intended Auction of Contents of 2999 Turtle Creek Blvd. (the "Objection") (Dkt. 462). In support, the Receiver respectfully shows the Court as follows.

### SUMMARY

Barton's frequent refrain that the Court should effectively stay this case while he appeals the Receivership Order ignores the absence of a stay, this Court's adherence to the Fifth Circuit's guidance in entering the Receivership Order, and perhaps most importantly, the Fifth Circuit's implicit instruction that it intended no stay, of any activity in this case, following this Court's reconsideration of the Receivership Order.[1]

As with a multitude of other challenges filed by Barton, his Objection also lacks any supporting evidence, disregards this Court's prior orders, and mischaracterizes key facts.

---

[1] *See* Appeal No. 22-11132, Aug. 31, 2023 Mem. Op. p. 13 ("[T]he receiver's power to sell or dispose of property belonging to receivership entities, including the power to complete sales or disposals of property already approved by the district court, is immediately suspended, and this suspension will remain in effect until the receivership order is vacated 90 days from the issuance of this court's mandate. This suspension does not apply to activities in furtherance of sales or dispositions of property that have already occurred or been approved by the district court. 'Activities in

Moreover, Barton's implicit threat of litigation against the Receiver is factually and legally baseless.  No hearing is necessary for the Court to resolve the Objection, and the Receiver requests that the Court overrule it.[2]

### RESPONSE TO "FACTUAL" BACKGROUND

1.      Although Barton contends the Receiver seeks to "permanently dispose of a number of Mr. Barton's personal effects," he fails to identify a single item as such.  Nor does he provide any evidence that any one of the eleven pieces of art or furniture which are the subject of the Receiver's intended auction[3] and which were previously located in the offices occupied by various Receivership Entities, is his personal property.  Indeed, despite clear and explicit orders that he do so, Barton has never identified the location or specific items included in the $12M of art that he swore JMJ Development owned.[4]

2.      Barton's assertion that the Receiver should demonstrate the auction items are owned by the Receivership Entities ignores this Court's determination, in the Administrative Order, that the Receiver was authorized to sell or otherwise dispose of the contents of 2999 Turtle Creek, as Receivership Property.[5]  The same provision requires "employees" to provide proof of

---

furtherance' do not include the completion of the sale of any property. ***Should the district court enter a new receivership order before the present order is vacated, this partial stay has no bearing on any actions a receiver may take under the new order***.") (emphasis added); *see also* Appeal No. 22-11132, Dkt. Nos. 132-2 (denying motion for partial stay); 147-2 (Order Denying motion for expansion of stay pending appeal until the order vacating the receivership becomes effective).

[2] The Administrative Order provides for a hearing in the event of objections to certain motions filed by the Receiver. *See* Dkt. 63, A.1.b. The procedure authorizing notices regarding intended auctions, however, merely requires that the Court resolve such an objection prior to the Receiver proceeding with the proposed sale.  Dkt. 63, C. 4. e.

[3] *See* Dkt. 459.

[4] *See* Dkt. 134, pdf p. 36 of 82, Page ID 3255; Dkt. 235, p. 6.  For the Court's convenience, a true and correct copy of the sworn financial statement reflecting Barton's testimony that JMJ Development owned $12MM in art is attached as **Exhibit 1**.

[5] Dkt. 63. "C. The Receiver's proposed disposition of the contents of the two properties listed below is **APPROVED**. The Receiver is authorized to store, destroy, or abandon the property identified below, in any manner provided below as he determines in his discretion is most appropriate, as follows: . . . 2999 Turtle Creek Blvd.  . . . 9. Furniture, TVs, Office Equipment (copier)—sold, returned to lessor, or donated;  10. Artwork—valued and sold. . ."

ownership for any personal items they seek to have returned.  Barton again, however, fails to provide any such proof.

3.      Barton's contention that he has demanded "over and over" that the Receiver turn over his personal property similarly ignores the Court's requirement that he pay moving expenses related to property located at the Rock Creek Property, and the Receiver's agreement to abandon those contents to him following his agreement to pay the related expenses.[6]

4.      Similarly, with regard to the Contents of 2999 Turtle Creek (long since moved— since that Property was not owned by the Receivership Estate and the Receiver reached a settlement with HN Capital to recover certain fraudulent transfers in exchange for vacating the premises), following an express procedure, Barton was permitted, months ago, to identify and claim many of those items.[7]  Pursuant to that process, Barton did not provide *any* sworn statement, from anyone, (as an alternative to bank records), nor did he provide any explanation as to how or why such statement regarding the property at issue would have implicated his Fifth Amendment privilege.

5.      Additionally, as stated in the Receiver's Notice, in May 2023, the Receiver vacated 2999 Turtle Creek.  Thus, as Barton knows full-well, the Receiver has no authority to permit him to "walk" that Property,[8] nor was the Receiver obligated to allow any such "walk through" following entry of the first Receivership Order, by which the Receiver was ordered to take *exclusive* custody and control over all Receivership Assets, including their properties.  Given

---

[6] *See* Dkt. Nos. 441 and 447.

[7] *See* Dkt. Nos. 213.  Barton's timeline ignores his refusal to even identify items that he contended were personal, until the Receiver filed his Notice regarding the intended sale of those items.  *See id.; and* Dkt. 227. Barton also fails to disclose that the Receiver abandoned dozens of items to Barton as "inherently" personal in nature.  Dkt. 227.

[8] Given Barton's repeated and blatant falsehoods about his ownership of the Property, HN Capital, the current owner, is unlikely to permit Barton to access the Property. *See* Appeal No.22-1132, Dkt. 112.

Barton's harassment of other property owners and his loose relationship with facts and the truth, among other things, the Receiver exercised his discretion to deny such access.

6.      In light of his lengthy opposition to the Receivers' motion requesting that the Court ratify and "bless" various orders and activities following vacatur of the first Receivership Order, Barton's assertion that the Administrative Order has no "continuing effect" evidences intentional disrespect for this Court and its orders, including this Court's express ratification of the Administrative Order. [9]

## ARGUMENT

### A.      Legal Standard

"In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). The Receiver's authority and discretion derives from the district court's authority. *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) ("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse") (*quoting SEC v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)); *see also SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992).

### B.      The Appeal of the Receivership Order Neither Stays Administration of the Receivership Nor Justifies Sustaining Barton's Objection.

The absence of *any* stay connected to Barton's interlocutory appeal of the Receivership Order is a horse that's been beaten to death, buried, and passed to ash.[10]   Congress, the Fifth Circuit, and this Court have been clear:  Barton's interlocutory appeals do not stay administration

---

[9] Dkt. 63; 419.

[10] *See* Dkts. 119, 122, 159, 227, 265 435, p. 18; *see also* Dkts. 122, 265, and Appeal No. 22-11132, Dkt. 84.  Perhaps premised on this Court's and the Fifth Circuit's rebuff of his stay requests in connection with his appeal of the initial Receivership Order and the clarity of the absence of a stay following the Fifth Circuit's vacatur of the initial Receivership Order, Barton has not requested a stay in connection with his latest appeal.

- 5 -

of the Receivership Estate or prohibit the Court from overruling Barton's Objection and authorizing the auction. The Receiver accordingly incorporates by reference the numerous instances in which he has made this point.[11] The Court should again disregard Barton's redundant and incorrect arguments premised on his pending appeal.

**C.    The Sales Are In the Best Interest of the Receivership Estate**

Without evidence, Barton suggests that the sales of the art and furniture are of *de minimus* value. On the contrary, Barton's former counsel suggested an appraisal of at least certain items reflected a significant value and that the Receiver should focus on selling the art. The Receiver also disagrees with Barton's unsupported assertion, and based on conversations with the auctioneer, believes the auction will net the Estate a meaningful recovery.

Further, as Barton is aware, his jurisdiction-less appeals of the orders approving sales of more valuable properties have stymied those sales, resulting in a continuing need for operating cash.[12] The Receiver *must* sell something.

Additionally, as stated in the Notice, until recently, the art and furniture were stored at no cost to the estate, but the auctioneer provided notice of an intent to begin charging storage costs as of March 1, 2024. The auction will accordingly minimize such storage costs.

As the Court has already determined, these items belong to Receivership Entities.[13] Barton does not identify or provide any evidence that any one of the eleven pieces of art or furnishings

---

[11] *Id.*

[12] *See* Dkt. 456.

[13] Although Barton discusses this Court's prior order that directed the Receiver to store the furnishings *of the residence* Barton occupied or obtain the costs to move those items from Barton, that Order has no bearing on the items at issue in the auction.

identified in photos attached to the Notice belonged to him (or anyone else) rather than any Receivership Entity.

Barton's Objection presents no basis for the Court to deny approval for the Receiver to proceed with the auction described in the Notice, and the Receiver requests that the Court overrule Barton's Objection and authorize the Receiver to proceed with the auction.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Receiver requests that the Court overrule the Objection and authorize the auction to proceed.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.