IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

**RECEIVER'S MOTION TO LIFT LITIGATION STAY FOR LIMITED PURPOSE**

Cort Thomas, the Court-appointed Receiver ("Receiver"), files this Motion to Lift Litigation Stay for the Limited Purpose of permitting mediation in one of the stayed cases, and in support respectfully shows the Court as follows:

**SUMMARY**

Serena Badgley is the representative of minor B.B. who is a personal injury claimant in a pending lawsuit filed against Receivership Entity Goldmark Hospitality, LLC ("Goldmark"), the

– 1 –

owner of the Amerigold Suites, *Badgley v. Goldmark Hospitality*, LLC, No. CC-21-02991-B County Court at Law No. 2, Dallas County, Texas ("Badgely's Lawsuit") regarding injuries B.B. allegedly sustained while living at the Amerigold Suites.

Badgley's Lawsuit, like approximately 30 other lawsuits involving Receivership Entities and/or Receivership Assets, is stayed by the Litigation Stay (defined below) in the Receivership Order (defined below). However, Badgley's Lawsuit, unlike every other stayed case, is a personal injury claim for which insurance coverage exists. Because of the unique circumstances of this case, the Receiver, from very early in the receivership, has encouraged Badgley to seek a settlement with Goldmark's insurer, if such a settlement imposed no financial obligation on Goldmark. The Receiver, through his counsel, has communicated with both Badgley's counsel and Goldmark's defense counsel (retained by Goldmark's insurer) and encouraged both parties to mediate, with certain conditions discussed below.

Due to the unique, personal injury nature of the claim and the existence of insurance coverage for the claim, the Receiver requests that the Court grant a limited relief from the Litigation Stay for Badgley and Goldmark's insurer to mediate Badgely's claim. The Receiver opposes lifting the Litigation Stay for any other litigation.

## BACKGROUND

### A.    The Receivership Order

1.    As the Court is aware, pursuant to the Receivership Order issued on November 29, 2023 (which was preceded by the Receivership Order entered on October 18, 2022), [Dkt. 29, 417], numerous lawsuits involving Receivership Entities or Receivership Properties are stayed. *See* Dkt. 417, ¶¶ 32, 34- 35. (the "Litigation Stay").

2.    The Litigation Stay is important to administration of the Receivership Estate and allows the Receiver to conserve Receivership Assets as well as precluding any one claimant from

– **2** –

seeking an advantage or preference in treatment over another, *Receivership Order*, ¶¶ 32, 34–35.

3.  The Receivership Order also provides that the Receiver is now the only authorized representative for any Receivership Entity.

4.  At the inception of the receivership, more than 35 active cases were stayed, including Badgley's Lawsuit.

5.  Before the Receivership Order was issued, Badgley's Lawsuit was set on the jury trial docket.  The court overseeing the case ordered mediation to occur by December 2, 2022, and prior to entry of the Receivership Order, mediation was scheduled for November 18, 2022.

**B.  The Cash Poor Receivership Estate and a Multitude of Stayed Litigation**

6.  As explained repeatedly in status reports,[1] motions requesting authorization to sell properties,[2] briefs opposing stays requested by Barton,[3] and the Receiver's Report and Declaration in support of a new receivership order,[4] the Receivership Estate is cash poor.  At the beginning of the case, less than $75,000 was on deposit in any Receivership Entity bank account, yet large, pressing expenses existed and have continued to accrue.

**C.  The Receiver Supports Mediation**

7.  A commercial general liability policy issued by AmTrust E&S Insurance provides coverage for personal injury claims that occurred at the Amerigold Suites during the period in which the injury underlying Badgley's Lawsuit occurred (the "Policy").  The Policy has a $1,000 per occurrence deductible and appears to provide $1,000,000 in coverage per personal injury occurrence.

---

[1] Dkts. 67, 139, 225, 299, 373, 456.

[2] Dkts. 76, 110, 161, 164, 167.

[3] Dkts. 84, 119; *see also* Dkt. 5, *Barton v. SEC*; 90-1, 122, Appeal No. 22-11132.

[4] Dkt. 308.

8.      Shortly after the Receiver was appointed, Badgley's counsel inquired about settlement negotiations with Goldmark's insurance carrier. Following the Court's denial of Badgley's prior motion to lift the Litigation Stay, [Dkt. 365] and the Court's denial of that motion, without prejudice, communications have continued.

Pursuant to those discussions, the Receiver agreed to move the Court to lift the Litigation Stay solely for mediation to occur, on the condition that (1) a representative for the Receiver is permitted to attend only to the extent necessary and only by telephone; (2) payment of the deductible amount is either waived or submitted as a claim for payment in any claims process; and (3) understanding that the Receiver will object to and oppose any settlement in excess of policy limits.[5]

The Receiver has also conferred with the insurer regarding these conditions, and the insurer agrees to these terms as well.

### ARGUMENT

**A.      The Litigation Stay is Vital to the Receivership**

"District courts have broad equitable powers to preserve a receiver's ability to operate without interference." *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379, 380 (5th Cir. 2011). Stays in receivership matters serve as an additional tool to further the goals of the receivership. *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010).  The Litigation Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).

---

[5] The insurer has authority to settle within policy limits without the Receiver (insured's) agreement but cannot settle in excess of policy limits without the Receiver's agreement.  Defense counsel also believes the case is worth far less than policy limits and asserts that a settlement, if any, will be well-within limits.

– 5 –

The protection provided by the Litigation Stay is not hypothetical. Although a few have been resolved, more than 35 proceedings, including Badgley's Lawsuit, were originally stayed. Multiple creditors continue to press the Receiver for agreement to lift the Litigation Stay, with several having filed motions to lift the stay, including the latest filed by McCormick 101, LLC. [Dkt. 463]. Additionally, dozens if not hundreds of creditors are standing in line for payment from Receivership Assets, if and when a claims process is established.

In deciding whether to lift such a stay, courts generally consider three factors, the *"Wenke* factors,"* which are intended to balance the interests of the Receiver and the moving party. *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir.1984) ("Wencke II"). Those factors are: "(1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x. 338, 341 (5th Cir. 2011) (quoting Wencke II)).

**B.      Badgley's Situation is Unique and Warrants Mediation**

Badgley's Lawsuit differs from all other stayed cases. First, it is the only personal injury case (arising from injury to a child) among the many cases stayed by the Receivership Order.[6] Most of the other stayed cases involve claims alleging non-payment for services or claims alleging default of a loan. Second, it is the only case that the Receiver knows of for which insurance proceeds provide a source of recovery. Thus, a settlement could be reached that either imposes no financial obligation on the Receivership Estate or which creates only a claim for the amount of the

---

[6] The Receiver was contacted by a law firm several months ago regarding another personal injury that allegedly occurred at the Amerigold Suites. The Receiver is not aware of any lawsuit having been filed and is unsure if one will be filed.

Policy deductible, while fully resolving the claim within coverage limits. Third, lifting the Litigation Stay in this instance will not affect the status quo of the Receivership. Unlike many of the other stayed cases, Badgley's claim will not require the Receiver to expend Receivership Assets litigating issues beyond this Motion and will require very little involvement from the Receiver or his counsel.

Because of these unique considerations, the Receiver moves the Court to lift the Litigation Stay, solely for a mediation between Badgley and Goldmark's insurance carrier, conditioned on Badgley's agreement that (1) a representative for the Receiver is permitted to attend only to the extent necessary and only by telephone; (2) payment of the deductible amount is either waived or submitted as a claim for payment in any claims process; and (3) the Receiver will oppose any settlement that exceeds policy limits.

## CONCLUSION

Based on the unique, personal injury nature of Badgley's Lawsuit, the Receiver requests limited relief from the Litigation Stay for Badgley and Goldmark's insurer to mediate Badgley's claims within the parameters outlined above. The Receiver opposes lifting the Litigation Stay for any other purpose, to any other degree, and for any other matter.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for the Receiver conferred with the SEC regarding the relief requested above and the Commission does not oppose this Motion.  The Receiver did not confer with any other party because the Motion does not affect any such party.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce