UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     *Plaintiff,*

v.

TIMOTHY BARTON,
CARNEGIE DEVELOPMENT, LLC,
WALL007, LLC,
WALL009, LLC,
WALL010, LLC,
WALL011, LLC,
WALL012, LLC,
WALL016, LLC,
WALL017, LLC,
WALL018, LLC,
WALL019, LLC,
HAOQIANG FU (a/k/a MICHAEL FU),
STEPHEN T. WALL,

     *Defendants,*

DJD LAND PARTNERS, LLC, and
LDG001, LLC,

     *Relief Defendants.*

Civil Action No. 3:22-CV-2118-X

## <u>ORDER</u>

Before the Court is Interested Party McCormick 101, LLC's ("McCormick") motion to modify the stay provision in the receivership order. (Doc. 463). The Court **DENIES** the motion.

In lifting a litigation stay in a Receivership, the Court should consider "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the

1

moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim."[1]  The first factor "essentially balances the interests in preserving the receivership estate with the interests of [McCormick.]"[2]  The Court recognizes McCormick's frustration that the sale of the Amerigold Suites hasn't gone through and has increased McCormick's indebtedness by nearly $300,000.  The Court is "not insensitive" to the $19,699.75 monthly debt payment that has yet to be paid to McCormick.[3]  "However, the Receiver's task to marshal, preserve and conserve the receivership estate is as much for [McCormick's] benefit as for the benefit of all of the other [creditors]."[4]  It is no secret that liquidity is an issue in the Receivership, notwithstanding the Receiver's diligence to recover funds for the Receivership Estate.[5]  Further, the Receiver has indicated he is opposed to the Court lifting the stay for McCormick.[6]  If the Court grants this litigation stay, it anticipates numerous motions by other lenders seeking similar relief—costing more money to the Receivership Estate as the Receiver would

---

[1] *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011) (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1980) (*Wencke II*)).

[2] *Id.*

[3] *See id.*

[4] *Id.*

[5] *See* Doc. 460 at 2–3 (In the Receiver's motion to extend the deadline to file his Third, Fourth, and Fifth quarterly fee applications, he discusses "the current lack of available funds" and inability to "service any of the extensive debt that encumbers the Receivership's real estate assets.").

[6] Doc. 463 at 8.

have to use funds to respond to each one.  Here, the interests of the Receivership outweigh the injury suffered by McCormick.

Second, the timing points toward denying McCormick's motion.  McCormick filed a similar motion last fall.[7]  The Court previously denied that motion (and others) without prejudice, allowing parties to refile because it had granted the SEC's motion for entry of a new Receivership Order.[8]  Now a few months into the new Receivership, McCormick seeks to modify the stay provision and allow it to proceed with a foreclosure of the Amerigold Suites.  Barton appealed both the first sale order of the Amerigold Suites and the most recent sale order.  As McCormick notes, "[t]he appeal was, in the end, dismissed, but in the interim, the purchaser walked from the sale."[9] McCormick files this motion seeking permission to conduct a nonjudicial foreclosure sale of the Amerigold Suites because Barton would have "no opportunity to further interfere with the sale process."[10]  The Court here finds the timing to be premature. This current Receivership has only been in place for a few months, and the prior Receivership for a year before that.[11]  The Court finds this factor weighs in favor of keeping the stay.

Finally, the Court considers the merits of McCormick's underlying claim to the principal and interest it's owed.  McCormick as the holder of Goldmark Hospitality's

---

[7] Doc. 311.

[8] Doc. 421.

[9] Doc. 463 at 4.

[10] *Id.*

[11] *See Stanford*, 424 F.App'x at 342 (finding a year-long Receivership to be in the "early stages" such that "the interest of the Receiver in continuing to marshal and conserve the estate outweighed" the claims to lift the stay).

mortgage loan for the Amerigold Suites, is entitled to repayment—as the Court noted in its order approving the sale of the Amerigold Suites.[12]  Maintaining the stay here doesn't change that.  McCormick states, that if the Court allowed the foreclosure, McCormick would agree to bid "no less than 2/3 of the appraised value."[13]  But 2/3 is likely less than what the Receiver could receive in the market for the property.  For example, the Amerigold Suites was most recently under contract for $5.5 million— well above the average appraised value of $4,366,667,[14] let alone 2/3 of that value ($2,911,111).  To lift the stay for the foreclosure would likely be tying the Receiver's hands to accept much less for the property than he could get if he sold it on the market.  That doesn't seem to be in the best interest of the Receivership Estate.  The Court appreciates McCormick's attempt to "strike a balance" between its own lien interests and the "Receiver's interests in . . . finalizing a sale . . . and making such sale available to potential bidders,"[15] but ultimately finds this factor also weighs in favor of denying McCormick's motion.

Accordingly, the Court **DENIES** McCormick's motion to modify the stay provision in the Receivership Order and further **DENIES** McCormick's request to proceed with a foreclosure sale of the Amerigold Suites.

It is **SO ORDERED**, this 7th day of March, 2024.

---

[12] *See* Doc. 436 at 2.

[13] Doc. 463 at 5.

[14] *See* Doc. 378 at 9.

[15] Doc. 463 at 5.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE