IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § § § | |
| Plaintiff, | § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| Defendants, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| Relief Defendants. | § | |

RECEIVER'S VERIFIED MOTION TO RATIFY
SETTLEMENT AGREEMENT WITH SOMERSET-LOST CREEK
GOLF, LTD AND THE BERYL ARTZ BYPASS TRUST AND BRIEF IN SUPPORT

Cort Thomas, the court-appointed Receiver in this case, moves the Court for an order (1) ratifying the Receiver's settlement agreement (the "Settlement Agreement," attached as Exhibit A) between Somerset-Lost Creek Golf, Ltd, ("Somerset" and Beryl Artz Bypass Trust "Beryl Artz Trust," and together with Somerset, the "Lost Creek Parties") on the one hand, and the Receiver on behalf Wall010, LLC, LC Aledo TX, LLC, and JMJ Acquisitions, LLC (the "JMJ

1

Parties" and together with the Lost Creek Parties, the "Parties") on the other, and (2) lifting the litigation stay in *Somerset-Lost Creek Golf, Ltd. v. Tim Barton, LC Aledo TX, LLC, JMJ Acquisitions, LLC, and Wall010, LLC*, Cause No. 096-319595-20 in the 96th Judicial District Court of Tarrant County, Texas (the "State Court Litigation") for the limited purpose of dismissing the case. In support of this motion, the Receiver respectfully shows the Court as follows:

## I.    INTRODUCTION

This motion relates to the Receiver's efforts to resolve claims asserted by the Lost Creek Parties against the JMJ Parties—all Receivership Entities—regarding an aborted contract and related loan for property in Tarrant County, Texas, commonly known as the Lost Creek Golf Course, as well as the Receiver's potential claims against the Lost Creek Parties. Because the settlement is in the best interest of the Receivership Estate, subject to the Court's ratification, on April 11, 2024, the Receiver and the Lost Creek Parties executed the Settlement Agreement to settle pending litigation between the JMJ Parties and the Lost Creek Parties. As explained below, while the express terms of the Receivership Order (defined below) do not require the Receiver to obtain Court approval of these efforts, he nevertheless seeks the Court's ratification of the Settlement Agreement because the Parties agreed to seek approval in connection with their settlement.

## II.    BACKGROUND

### A.    The Receivership Order

1.    On November 29, 2023 the Court entered its *Order Appointing Receiver* [Dkt. 417] (the "Receivership Order") (which was preceded by the Receivership Order entered on October 18, 2022), [Dkt. 29]) which named the undersigned as Receiver for the Receivership

Entities[1] and directed the Receiver to take custody, control, and possession of all Receivership Property. *Receivership Order* ¶ 6(B). The Receivership Order also provides the Receiver with "all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Entities." *Id.* ¶ 3. Specifically, the Receivership Order permits the Receiver to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." *Id.* ¶ 6(J). Finally, the Receivership Order gives the Receiver the ability to, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." *Id.* ¶ 39.

2.  The Receivership Order includes a stay against "[a]ll civil litigation proceedings of any nature" involving the Receivership Entities and any of the Receivership Entities' past or present officers, directors, managers, agents, or partners sued in connection with actions taken in such capacity which stayed the State Court Litigation. *Id.* ¶ 34.

**The Lost Creek Transaction**

3.  On or about July 17, 2017, Receivership Entity JMJ Acquisitions, LLC and Somerset entered into a Contract for Sale and Purchase of Unimproved Real Property (the "Contract") for five tracts of land consisting of 145.49 acres commonly known as the Lost Creek Golf Course (the "Property"). Under the Contract, JMJ Acquisitions agreed to buy the Property for $2,200,000, with closing initially set to occur after receiving plat approval from the City of

---

[1] "Receivership Entities" was defined in the initial Receivership Order [Dkt. 29] as all entities "Timothy Barton directly or indirectly controls" but was later redefined as the entities listed in the current Receivership Order [Dkt. 417].

Fort Worth.  To satisfy the terms of the Contract, Receivership Entity Carnegie Development, LLC wrote a $65,000 check to Sendera Title Company ("Sendera") as earnest money.

4.      By April 7, 2018, the sale of the Property still had not closed, and Timothy Barton ("Barton") and representatives for Lost Creek met to discuss the status of the sale.  Documents created contemporaneously with those discussions reveal that Lost Creek informed Barton that after patrons learned of plans to build homes on Property the golf course began losing money. Lost Creek also informed Barton that even though it had attempted to mitigate its losses by closing the golf course, ongoing bills and payments owed to vendors continued to cause Lost Creek financial difficulties.

5.      On June 28, 2018, JMJ Acquisitions and Lost Creek executed the 1st Amendment to the Contract ("First Amendment") which extended the closing date until December 31, 2018 and provided for Receivership Entity Wall010, LLC to loan Lost Creek $300,000 (the "Loan").[2] Under the First Amendment, the Loan was to be credited to the purchase price with no interest charged to Lost Creek if sale of the Property closed on or before December 31, 2018.  If sale of the Property did not close by December 31, the Contract would terminate, and the Loan's maturity date would be extended until December 31, 2019.  Contemporaneously with the First Amendment, Wall010 paid Lost Creek $300,000.

6.      With the termination deadline looming, on December 18, 2018, JMJ Acquisitions and Lost Creek executed a 2nd Amendment to the Contract (the "Second Amendment") which extended the closing date to February 28, 2019 and provided that JMJ Acquisitions would pay Lost Creek $23,000 as reimbursement for the 2018 Property taxes.   On December 24, Wall010 cut a $23,000 check to Lost Creek.

---

[2] These funds can be traced directly to Wall Investors.

7.       On February 29, 2019, the sale of the Property still had not closed, and JMJ Acquisitions and Lost Creek executed the 3rd Amendment to the Contract (the "Third Amendment") which extended the closing date to April 4, 2019 and provided that JMJ Acquisition would pay Lost Creek $6,000 for 2019 taxes and $23,000 for maintenance and expenses.   The maturity date on the Loan was changed to the due date of another loan that was to be signed at closing.  On March 1, Wall010 cut Lost Creek a check for $29,000.

8.       On June 8, 2019, JMJ Acquisitions and Lost Creek signed a Termination of Contract and Release of Earnest Money Agreement (the "Termination Agreement") which terminated the Contract and directed Sendera to release $65,000 in earnest money to JMJ Acquisitions.   The Termination Agreement provided that upon receipt of the returned earnest money, $65,000 would be credited toward payment of the Loan.  The Termination Agreement also stated that "[Lost Creek] and [JMJ Acquisitions] release each other from all obligations under the Contract, except for the [Loan], which, as modified hereunder, shall remain in full force and effect."   On June 11, Sendera/Silver Star Title wired $64,908.80 (the $65,000 earnest money less certain fees) to Wall010.

9.       On May 19, 2020, counsel for Wall010 wrote Lost Creek a letter stating that the Loan was past due and demanded payment by June 12, 2020. When no payment was received, on July 14, 2020, Wall010 appointed a substitute trustee and filed notice of a substitute trustee sale.

10.       On August 10, 2020, the substitute trustee filed a Substitute Trustee's Deed and Bill of Sale ("LC Aledo Deed") stating that a Substitute Trustee's Sale had occurred on August 4, 2020, and that the Property had been sold to Receivership Entity LC Aledo TX, LLC a/k/a LC Aledo, LLC ("LC Aledo") for $200,000.

11. Upon learning of Wall010's foreclosure of the Property, Lost Creek filed the State Court Litigation on September 9, 2020 seeking to set aside the foreclosure.

12. Several years before the Parties had executed the Contract, a deed of trust was recorded on October 12, 2011 evidencing a $500,000 loan from the Beryl Artz Trust secured against the Property ("Beryl Artz Loan"). On September 15, 2020, the Beryl Artz Bypass Trust, through its substitute trustee S. Gary Werley, filed a Notice of Substitute Trustee's Sale with Tarrant County to satisfy the Beryl Artz Loan.

13. On October 6, 2020, Werley filed a Substitute Trustee's Deed stating that the Property had been sold in a trustee sale to the Beryl Artz Trust (the "Beryl Artz Foreclosure").

14. On October 14, 2020, Lost Creek moved for Default Judgment in the State Court Litigation, and on November 25, 2020, the court entered a Default Judgment voiding the LC Aledo Deed.

15. Upon learning that a default judgment had been entered, LC Aledo filed a motion to set aside the Default Judgment on December 22, 2020, and on January 14, 2021, the trial court in the State Court Litigation granted LC Aledo's motion and voided the Default Judgment.

16. In the interim, Wall010, JMJ Acquisitions and LC Aledo, asserted counter claims against Lost Creek, Somerset-Lost Creek Management, LLC, Beryl Artz Bypass Trust, Rhonda Artz, and S. Gary Werley. Several dueling motions were pending in the State Court Litigation, when on September 1, 2022 Wall010 filed a Suggestion of Bankruptcy and the court in the State Court Litigation entered a Bankruptcy Stay. Upon his appointment, the Receiver also filed a Receivership Notice of Stay. The State Court Litigation is accordingly currently stayed.

17. At different times after the Receiver's initial appointment in October 2022, counsel for the Lost Creek Parties and the Receiver discussed settlement but were unable to

reach a resolution. In January 2024, the Lost Creek Parties approached the Receiver again about a settlement because the Lost Creek Parties had a prospective buyer for the Property.

18.    On February 22, 2024 the Parties mediated their dispute in good faith in front of retired bankruptcy judge Harlin Hale and reached an agreement.

19.    Based on his review of the facts and issues related to  the State Court Litigation and his many years as a civil litigator, the Receiver determined that the JMJ Parties were unlikely to prevail in setting aside the Beryl Artz Foreclosure and that the only viable claim was related to the Loan—which has an outstanding balance of $235,000.[3]  Further,  proceeding with the State Court Litigation would burden the Receivership Estate with significant attorney's fees and a limited potential recovery. The Receiver accordingly determined that settling the State Court Litigation was in the best interest of the Receivership Estate.

20.    On April 11, 2024, the Receiver, and the Lost Creek Parties executed the Settlement Agreement, whereby the Lost Creek Parties agreed to pay the Receivership Estate $210,000 and dismiss the State Court Litigation in exchange for a full and complete release from the Receiver and the JMJ Parties.  Because the Settlement Agreement is in the best interests of the Receivership Estate, the Receiver requests that the Court ratify the Settlement Agreement.

### III.    ARGUMENT

**A.    Legal Standard**

District courts have "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).  Any action by the district court "supervising an equity receivership is committed to his sound discretion and will

---

[3] Under the Termination Agreement the $65,000 earnest money (less fees) was refunded to Wall010, and a credit of $65,000 was applied to the Loan, leaving an outstanding balance of $235,000.

not be disturbed unless there is a clear showing of abuse." *Id.* at 373 (*quoting SEC v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)).

"Ordinarily, parties are free to settle cases amongst themselves without court involvement." *SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-0298-N, 2015 WL 10818588, at *2 (N.D. Tex. Sept. 23, 2015) (citing *Ibarra v. Tex. Empl. Comm'n,* 823 F.2d 873, 878 (5th Cir. 1987)). However, "in the equity receivership context, parties have sought and courts have rendered decisions regarding whether to approve or reject settlement agreements based on courts' wide discretion in administering an equity receivership." *Id.* "Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are 'fair and equitable and in the best interests of the estate.'" *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (quoting *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015)).

"In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership." *Stanford*, 927 F.3d at 840. However, by this Motion the Receiver is not seeking to sell "any realty or interest therein." *See* 28 U.S.C. § 2001. The Receivership Entities do not possess any interest in the Property, and this Court has already determined that similar settlements by the Receiver do not implicate 28 U.S.C. § 2001 ("the Statute") [Dkts. 109, 163]. Thus, rather than permission to sell any realty based on the Statute, the Receiver seeks the Court's ratification of his decision to resolve the JMJ Parties' dispute with the Lost Creek Parties.

## B.    The Terms of the Settlement Agreement

To avoid the expense and uncertainty of litigation, particularly given the dubious outcome for the JMJ Parties' claims if litigated, the Receiver and the Lost Creek Parties agreed

to fully settle all existing claims related to the Property. The Settlement Agreement requires the Lost Creek Parties to pay the Receivership Estate $210,000, dismiss of the State Court Litigation with prejudice, and release all claims against the Receiver or Receivership Entities in exchange for the Receiver's release of all claims against the Lost Creek Parties related to the Property and the Receiver's help clearing any *lis pendens* clouding the Property's title.

**C.      The Settlement Agreement is in the Best Interests of the Receivership Estate**

The Receiver believes that the Settlement Agreement is fair and equitable and in the best interests of the Receivership Estate because it eliminates the costs of litigation the Receivership Estate would incur through proceeding with the State Court Litigation or in asserting claims ancillary to this proceeding for the recovery of the amounts paid to the Lost Creek Parties.

**1.      The JMJ Parties' Claims Are Unlikely to Succeed**

To prevail on their fourteen counterclaims, including wrongful foreclosure, breach of contract, breach of promissory note, trespass to title, fraud, fraud in real estate, fraud by nondisclosure, fraudulent inducement, negligent misrepresentation, wrongful foreclosure, and other claims, the JMJ Parties would need to demonstrate that the Beryl Artz Foreclosure was fraudulent or otherwise improper and that the JMJ Parties had no notice of the Beryl Artz Loan even though it was recorded in Tarrant County's real property records.  After thoroughly investigating and reviewing the pleadings and evidence, the Receiver determined that the JMJ Parties would not likely be able to satisfy their evidentiary burden, and thus following the expense of trial, the JMJ Parties would neither prevail nor recover.  Further, even if the JMJ Parties prevailed, the costs incident to trial would very possibly render any recovery negligible. Thus, the Receiver determined that spending Receivership Assets to pursue the pending but stayed State Court Litigation was neither justified nor reasonable.

### 2.  A Settlement of $210,000 Is Fair and Equitable

Because the Receiver does not believe the JMJ Parties would prevail on their counterclaims by which they sought to recover the Property, recovery of nearly all of the funds outstanding on the Loan—$235,000—represents more than a reasonable recovery.  Thus, a settlement for $210,000 is fair and equitable and in the best interests of the Receivership Estate.

### IV.  CONCLUSION AND REQUEST FOR RELIEF

The Receiver respectfully requests that the Court enter an order ratifying the Settlement Agreement with the Lost Creek Parties, lifting the litigation stay in the State Court Litigation for the limited purpose of dismissing the case, and further granting the Receiver such other and further relief to which he may be justly entitled.

April 17, 2024                                   Respectfully submitted,

**RECEIVER CORTNEY C. THOMAS**

*/s/ Cortney C. Thomas*
Cortney C. Thomas
  State Bar No. 24075153
  cort@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

**VERIFICATION**

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

/s/ Cortney C. Thomas
Cortney C. Thomas

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that on April 16, 2024, the Receiver conferred via email with counsel for Plaintiff and Defendant Barton regarding the relief requested above.  The SEC is unopposed to the relief requested herein.  As of filing, counsel for Defendant Barton has not responded to the conference email.

/s/ Cortney C. Thomas
Cortney C. Thomas

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

# EXHIBIT A

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement (the "**Settlement Agreement**") is made and entered into this __11__ day of April, 2024, by and between Somerset-Lost Creek Golf, Ltd, ("**Somerset**") and Beryl Artz Bypass Trust ("**Beryl Artz Trust**", and together with Somerset, the "**Lost Creek Parties**") and Cort Thomas in his role as court-appointed receiver on behalf of the Receivership Entities[1] (the "**Receiver**" and together with the Lost Creek Parties, the "**Parties**") in *Securities and Exchange Commission v. Timothy Barton et. al.,* Case No. 3:22-cv-2118-X (the "**Receivership Case**"), pending before Judge Starr in the United States District Court for the Northern District of Texas, Dallas Division (the "**Court**").

## RECITALS

**WHEREAS**, on July 17, 2017, Receivership Entity JMJ Acquisitions, LLC and Somerset entered into a Contract for Sale and Purchase of Unimproved Real Property (the "**Contract**") for five tracts of land consisting of 145.49 acres commonly known as the Lost Creek Golf Course (the "**Property**"). Under the Contract, JMJ Acquisitions agreed to buy the Property for $2,200,000. Per the terms of the Contract, Receivership Entity Carnegie Development, LLC wrote a $65,000 check to Sendera Title Company ("**Sendera**") as earnest money;

**WHEREAS**, on June 28, 2018, JMJ Acquisitions, and Lost Creek executed the 1st Amendment to the Contract ("**First Amendment**") which extended the closing date until December 31, 2018 and provided for Receivership Entity Wall010, LLC to loan Somerset $300,000 (the "**Loan**");

**WHEREAS**, on December 18, 2018, JMJ Acquisitions and Lost Creek executed the 2nd Amendment to the Contract (the "**Second Amendment**") which extended the closing date to February 28, 2019 and provided that JMJ Acquisitions would pay Somerset $23,000 as reimbursement for the 2018 Property taxes;

**WHEREAS**, on February 29, 2019, JMJ Acquisitions and Lost Creek executed the 3rd Amendment to the Contract (the "**Third Amendment**") which extended the closing date to April 4, 2019 and provided that JMJ Acquisitions would pay Somerset $6,000 for 2019 Property taxes and $23,000 for maintenance and expenses;

**WHEREAS**, on June 8, 2019, JMJ Acquisitions and Lost Creek signed a Termination of Contract and Release of Earnest Money Agreement (the "**Termination Agreement**") which terminated the Contract and directed Sendera to release the $65,000 in earnest money to JMJ Acquisitions. The Termination Agreement provided that upon receipt of the returned earnest money, $65,000 would be credited toward payment of the Loan. On June 11, Sendera Title wired $64,908.80 (the $65,000 earnest money less some fees) to Wall010.

**WHEREAS**, after the Termination Agreement was executed, a disagreement arose over repayment of the Loan which resulted in Wall010 foreclosing on the Property. On August 3, 2020,

---

[1] "Receivership Entities" was defined in the Initial Receivership Order (defined below) [Dkt. 29] as all entities "Timothy Barton directly or indirectly controls" but was later redefined as the entities listed in the Order Appointing Receiver [Dkt. 417].

Wall010 executed an Assignment of Note and Liens transferring the Note and Deed of Trust to LC Aledo, LLC which was recorded in the Tarrant County property records on August 4, 2020. On August 10, 2020, a Substitute Trustee's Deed and Bill of Sale was recorded in the Tarrant County property records evidencing that the Property had been sold to Receivership Entity LC Aledo TX, LLC a/k/a LC Aledo, LLC ("**LC Aledo**") for $200,000.

**WHEREAS,** seeking to set aside Wall010's foreclosure, Somerset filed suit in *Somerset-Lost Creek Golf, Ltd. v. Tim Barton, LC Aledo TX, LLC, JMJ Acquisitions, LLC, and Wall010, LLC,* Cause No. 096-319595-20 in the 96th Judicial District Court of Tarrant County, Texas (the "**State Court Litigation**"). Additionally, based on a deed of trust recorded in the Tarrant County property records on October 12, 2011 evidencing a $500,000 loan from the Beryl Artz Trust to Somerset for the Property, Beryl Artz Trust foreclosed on the Property. October 6, 2020, a Substitute Trustee's Deed was recorded in the Tarrant County property records evidencing that the Lost Creek Property had been sold to Beryl Artz Trust for $10.

**WHEREAS,** on September 23, 2022, the Receivership Case began as a civil action filed by the Securities and Exchange Commission against Barton and certain entities Barton controlled seeking permanent injunctive relief, disgorgement of ill-gotten gains plus prejudgment interest, civil penalties, officer and director bars, and all other just and proper equitable and ancillary relief. On October 18, 2022, Judge Starr appointed the Receiver to oversee the administration of all Receivership Entities (the "**Initial Receivership Order**") and issued a stay against litigation involving the Receivership Entities (the "**Receivership Stay**") and any of the Receivership Entities' past or present officers, directors, managers, agents or partners sued in connection with actions taken in such capacity. Following vacatur of the Initial Receivership Order by the Fifth Circuit Court of Appeals, Judge Starr reappointed the Receiver on November 29, 2023 ("**Receivership Order**") over a substituted set of Receivership Entities and reaffirmed the Receivership Stay;

**WHEREAS,** on October 18, 2022, the State Court Litigation was stayed by the Receivership Case;

**WHEREAS,** on or about October 25, 2022 counsel for the Lost Creek Parties contacted the Receiver's counsel about the Property and State Court Litigation, and multiple times throughout 2023 proposed settlements, which the Receiver rejected as premature;

**WHEREAS,** in January 2024 the Parties agreed to mediate, and on February 22, 2024 the Parties mediated their disputes in good faith in front of retired bankruptcy judge Harlin Hale and reached an agreement. The Parties extensively negotiated at arm's length and now desire to enter into this Settlement Agreement to resolve and confirm, with certainty, all issues regarding the ownership of the Property, and all other claims and causes of action relating to the Property that could be asserted by the Receiver and the Receivership Entities against the Lost Creek Parties and all claims and causes of action relating to the Property that could be asserted by the Lost Creek Parties against the Receiver and Receivership Entities;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which

are hereby acknowledged, and subject to Court Ratification (defined below), the Parties agree as follows:

1.      Incorporation of Recitals.  The above recitals are incorporated into and made a substantive part of this Settlement Agreement.

2.      Court Ratification.  In accordance with the terms of the Receivership Order, this Settlement Agreement is subject to ratification from the Court ("**Court Ratification**").  Following the Parties' execution of this Settlement Agreement, the Receiver shall file a motion in the Receivership Case seeking ratification of the Settlement Agreement and to lift the Receivership Stay for the limited purpose of dismissing the State Court Litigation (the "**Motion to Ratify Settlement Agreement**").  If this Settlement Agreement does not receive Court Ratification within 60 days of filing the Motion to Ratify Settlement Agreement, it shall be null and void.

3.      Lost Creek Parties Settlement Obligations.  The Parties agree that in consideration for entry into this Settlement Agreement, the Lost Creek Parties shall make a one-time payment of $210,000.00 to the Receiver (the "**Settlement Payment**") in good funds via wire pursuant to wire instructions to be provided by the Receiver upon the earlier of (i) the closing date for a sale of the Property or (ii) 6 months from the date the Motion to Ratify Settlement Agreement is filed. Additionally, within seven (7) business days of receiving Court Ratification, the following shall occur: (i) the Beryl Artz Trust shall execute a promissory note and a Deed of Trust on the Property in favor of the Receiver memorializing the Settlement Payment and shall record the Deed of Trust in the Tarrant County property records; (ii) the Lost Creek Parties and Receiver shall file the agreed motion dismissing the State Court Litigation with prejudice attached hereto as Exhibit A, and the agreed order dismissing all claims that were brought or could be brought surrounding the Parties dealings with the Property attached hereto as Exhibit B.

4.      The Receiver Settlement Obligations. Within seven (7) business days of the Deed of Trust being recorded in Tarrant County, the Receiver shall file a release of *lis pendens* in the Tarrant County property records.

5.      Event of Default. The following shall constitute an "**Event of Default**" under this Settlement Agreement:

(a)      The Lost Creek Parties' failure to abide by any of the terms set forth in Section 3 entitled Lost Creek Parties Settlement Obligations.

(b)      The Receiver's failure to file the release of *lis pendens* as provided in Section 4 entitled The Receiver Settlement Obligations.

6.      Release by the Receiver.  Upon execution of the Settlement Agreement, Court Ratification, receipt of the Settlement Payment, and termination of the State Court Litigation, the Receiver, on behalf of himself and all Receivership Entities, including their respective officers, directors, employees, equity holders, affiliates, subsidiaries, parents, predecessors-in-interest, successors-in-interest, assigns, transferees, agents or other representatives (the "**Receivership Parties**"), forever irrevocably releases, acquits and discharges (i) Somerset and its respective officers, directors, equity holders, affiliates, predecessors-in-interest, successors-in-interests, assigns, transferees, employees, agents, and representatives, and (ii) Beryl Artz Trust and its

respective officers, directors, equity holders, affiliates, predecessors-in-interest, successors-in-interests, assigns, transferees, employees, agents, and representatives, from any and all existing demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies regarding the Property, whether known or unknown, other than the obligations owed in this Settlement Agreement.

7.      Release by Lost Creek Parties. Upon execution of the Settlement Agreement, Court Ratification, and the Receiver filing the release of *lis pendens*, Somerset and Beryl Artz Trust forever irrevocably release, acquit and forever discharge the Receiver and the Receivership Parties, from any and all existing demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies related to the Property whether known or unknown, other than the obligations owed in the Settlement Agreement.

8.      Expenses. Each Party shall bear its own attorney's fees and costs in connection with the negotiation and execution of this Settlement Agreement.

9.      Cooperation. The Parties agree, upon Court Ratification, to cooperate in good faith to effectuate the terms and conditions of this Settlement Agreement. The Parties shall take all necessary actions to immediately terminate all pending litigation, prepare all documents necessary to resolve the foregoing, and seek to lift any stay required to do so. The Receiver shall eliminate all encumbrances on the Property arising out of any act or omission of any of the Receivership Parties and seek to lift any stay required to do so. For the avoidance of doubt, the Receiver shall, assist with the removal of any currently existing *lis pendens* on the Property.

10.     Entire Agreement. This Settlement Agreement constitutes the entire agreement between the Parties and supersedes and replaces all prior negotiations, proposed or actual agreement or agreements, written or oral, of any nature or substance relative thereto. The Parties are not relying and hereby disclaim reliance on any other representation, omission, or document not expressly contained in this Agreement.

11.     Binding Effect. This Settlement Agreement shall be binding on any successors or assigns of the Parties.

12.     Representation by Counsel. The Parties acknowledge and understand that they are executing and delivering this Settlement Agreement with full knowledge of any and all rights which they may have with respect to the claims herein settled and released. Each acknowledges that it was represented by and consulted with an attorney of its own choosing before executing and delivering this Settlement Agreement to review this document and the claims being settled and released, and that they had a reasonable and sufficient opportunity to do so.

13.     Notices. Unless otherwise specifically provided herein, any notice delivered under this Settlement Agreement shall be in writing addressed to the respective Party as set forth below and may be (a) personally served, (b) sent by overnight courier service or certified or registered United States mail, or (c) transmitted by e-mail, and shall be deemed to have been given (x) if delivered in person, when delivered, (y) if delivered by e-mail, on the date of transmission if transmitted on a business day before 5:00 p.m. (Central time) or, if not, on the next succeeding

business day, and (z) if delivered by courier or certified or registered United States mail, when received. Notices shall be addressed as follows:

If to Receiver:

> Cortney C. Thomas
> Brown Fox PLLC
> 8111 Preston Road, Suite 300
> E-mail: cort@brownfoxlaw.com

With a copy to:

> Charlene C. Koonce
> Timothy B. Wells
> Brown Fox PLLC
> 8111 Preston Road, Suite 300
> E-mail: charlene@brownfoxlaw.com
> E-mail: tim@brownfoxlaw.com

If to Somerset or Beryl Artz Trust:

> Rhonda Artz

With a copy to:

> Gary Werley
> Padfield & Stout, LLP
> 420 Throckmorton St. Suite 1210
> Fort Worth, Texas 76102
> E-mail: sgwerley@werleylaw.com

14.    Counterparts.   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Settlement Agreement shall be final and binding upon execution and delivery of the Settlement Agreement by the Parties. The Parties agree that copies of this Settlement Agreement shall have the same effect and may be accepted with the same authority as the original and that this Settlement Agreement may be executed electronically and in counterparts.

15.    Authority.   The Parties represent that, subject to Court Ratification, they have the legal right and authority required to compromise and settle all claims under the terms and conditions set forth herein. The Parties also represent that the signatures on behalf of the Parties, or their counsel, to this Settlement Agreement is sufficient, without further approval of third parties, other than Court Ratification, to fully bind such party to the terms hereof, including without limitation, each of the payment obligations and releases set forth herein.

16.    Amendments. This Settlement Agreement may only be amended, modified, or supplemented by a separate written document duly executed by authorized representatives of the Parties or their legal successors in interest.

17.    Severability. If any provision of this Settlement Agreement shall be held to be invalid or unenforceable, the validity or enforceability of the remaining provisions shall not in any way be affected or impaired thereby, but rather this Settlement Agreement shall be construed as if not containing the invalid or unenforceable provision. However, if such provision is an essential element of this Settlement Agreement, such as the release provisions, then the Parties shall promptly attempt in good faith to negotiate a suitable replacement provision.

18.    Jurisdiction and Governing Law. The Parties agree that the Court shall retain exclusive personal and subject matter jurisdiction to enforce the terms of this Settlement Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Settlement Agreement, or any breach of default hereunder. The Parties agree that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law, and expressly waive any requirement that separate notice be provided before pursuing such judgment. This Settlement Agreement shall be construed in accordance with and governed by the laws of the State of Texas (excluding the laws applicable to conflicts or choice of law).

**IN WITNESS WHEREOF**, the Parties have executed this instrument on the dates indicated below.

*[Signatures on following page]*

*Executed on this __//__ day of April, 2024*

Somerset-Lost Creek Golf, Ltd

By: _____

Title: *Co managing partner*

*Executed on this _____ day of April, 2024*

Beryl Artz Bypass Trust

By: _____

Title: *Co managing partner*

*Executed on this __//__ day of April, 2024*

By: _____ *, Receiver*

Title:    Receiver

---

**SETTLEMENT AGREEMENT**                                              **PAGE 7 OF 7**

# EXHIBIT A

CAUSE NO. 096-319595-20

| | | |
|---|---|---|
| SOMERSET-LOST CREEK GOLF, LTD, | § § § | IN THE DISTRICT COURT |
| Plaintiff. | § § | |
| v. | § § § | TARRANT COUNTY, TEXAS |
| TIM BARTON, LC ALEDO TX, LLC, JMJ ACQUISITIONS, LLC and WALL010, LLC, | § § § § | |
| Defendants. | § § | 96TH JUDICIAL DISTRICT |

## JOINT MOTION TO DISMISS WITH PREJUDICE

Plaintiff Somerset-Lost Creek Golf, LTD ("Lost Creek") and Defendants LC Aledo TX, LLC, JMJ Acquisitions, LLC and Wall010, LLC (all collectively referred to as the "Parties"), request that the Court, pursuant to the Parties' Settlement and Release Agreement ("Settlement Agreement") attached hereto as **Exhibit A**, dismiss with prejudice all of the Parties' claims and requests for relief alleged against one another in the above-numbered and styled case, and that all costs be taxed against the Party incurring same.

On October 18, 2022, Cort Thomas was appointed as the Receiver over numerous entities previously controlled by Timothy Barton (the "Receivership Entities").[1] Included in the Receivership Entities are LC Aledo TX, LLC, JMJ Acquisitions, LLC and Wall010, LLC. The Order Appointing Receiver ("Receivership Order") attached hereto as **Exhibit B**, directs the Receiver to assume and control the operations of the Receivership Entities and to pursue and preserve all of their claims. *Receivership Order* ¶4. The Receivership Order also includes a stay

---

[1] This Order was later replaced by a subsequent Receivership Order entered on November 29, 2023 reappointing Mr. Thomas as the Receiver.

of all litigation involving any of the Receivership Entities (the "Litigation Stay"). *See id*. ¶¶ 34–36. Accordingly, the Receiver filed a Notice of Stay with this Court on October 21, 2022.

Since that time, the Parties participated in mediation and reached an agreement to settle this dispute. The United States District Court that appointed the Receiver ratified the Settlement Agreement and entered an order lifting the Litigation Stay for the limited purposed of dismissing this lawsuit, attached hereto as **Exhibit C**.

## **PRAYER**

Accordingly, the Parties respectfully request that the Court grant this Motion, enter an order dismissing all claims with prejudice, and that all costs be taxed against the Party incurring same.

Respectfully submitted,

By: */s/ S. Gary Werley*
S. GARY WERLEY
State Bar No. 21187000
sgwerley@werleylaw.com
PADFIELD & STOUT, LLP
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
Phone: (817) 338-1616
Facsimile: (817) 338-1616

*Attorney For Plaintiff Somerset-Lost Creek Golf, Ltd*


By: */s/ Timothy B. Wells*
   Charlene C. Koonce
    State Bar No. 11672850
    charlene@brownfoxlaw.com
   Timothy B. Wells
    State Bar No. 24131941
    tim@brownfoxlaw.com
   BROWN FOX PLLC
   8111 Preston Road, Suite 300
   Dallas, Texas 75225
   T: (214) 327-5000
   F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*


## CERTIFICATE OF SERVICE

I certify that on April 17, 2024, a true and correct copy of this document was delivered to counsel of record by electronic service in accordance with the Texas Rules of Civil Procedure.


*/s/ S. Gary Werley*
S. Gary Werley

# EXHIBIT B

CAUSE NO. 096-319595-20

| | | |
|---|---|---|
| SOMERSET-LOST CREEK GOLF, LTD, | § § § | IN THE DISTRICT COURT |
| Plaintiff. | § § | |
| v. | § § | TARRANT COUNTY, TEXAS |
| TIM BARTON, LC ALEDO TX, LLC, JMJ ACQUISITIONS, LLC and WALL010, LLC, | § § § § | |
| Defendants. | § § | 96TH JUDICIAL DISTRICT |

## ORDER DISMISSING WITH PREJUDICE

The Court, having considered Plaintiff's Somerset-Lost Creek Golf, LTD ("Lost Creek") and Defendants' LC Aledo TX, LLC, JMJ Acquisitions, LLC and Wall010, LLC Joint Motion to Dismiss With Prejudice, is of the opinion that the Motion should be **GRANTED**.

Therefore, the Court hereby **ORDERS** that this action be **DISMISSED with prejudice** to refiling at a later date, and that all costs be taxed against the Party incurring same.

IT IS SO ORDERED.

_____
PRESIDING JUDGE