IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

**RECEIVER'S VERIFIED MOTION TO
RATIFY SETTLEMENT AGREEMENT WITH
TAMAMOI, LLC AND 3820 ILLINOIS, LLC AND BRIEF IN SUPPORT**

Cort Thomas, the court-appointed Receiver in this case, moves the Court for an order

(1) ratifying the Receiver's settlement agreement (the "Settlement Agreement," attached as

**Exhibit A**) between Tamamoi, LLC ("Tamamoi") and 3820 Illinois, LLC ("3820 Illinois", and

together with Tamamoi, the "Tamamoi Parties") and JMJ Development, LLC ("JMJ")

(collectively the "Parties") and (2) lifting the litigation stay in *JMJ Development v. Tamamoi,*

*LLC and 3820 Illinois, LLC*, Cause No. DC-22-02622, pending in the 68th District Court for

1

Dallas County, Texas (the "State Court Litigation") for the limited purpose of dismissing the case. The Receiver has also filed a proposed order contemporaneously with this motion. In support of this Motion, the Receiver respectfully shows the Court as follows:

## I.    INTRODUCTION

This Motion relates to the Receiver's efforts to resolve JMJ's claims against the Tamamoi Parties arising from Tamamoi's pre-receivership foreclosure of its lien on certain property. To allow resolution by the Tamamoi Parties of numerous health and safety concerns on the property, and because the settlement is in the best interest of the Receivership Estate, subject to the Court's approval, on May 13, 2024, the Receiver and the Tamamoi Parties executed the Settlement Agreement to settle pending litigation between JMJ and the Tamamoi Parties. As explained below, while the express terms of the Receivership Order (defined below) do not require the Receiver to obtain Court approval of these efforts, he nevertheless seeks the Court's ratification of the Settlement Agreement because the Parties agreed to seek ratification in connection with their settlement.

## II.    BACKGROUND

### A.    The Receivership Order

1.    On November 29, 2023, the Court entered its *Order Appointing Receiver* [Dkt. 417] (the "Receivership Order") (which was preceded by the Receivership Order entered on October 18, 2022), [Dkt. 29]) which named the undersigned as Receiver for the Receivership Entities[1] and directed the Receiver to take custody, control, and possession of all Receivership Property. *Receivership Order* ¶ 6(B). The Receivership Order also provides the Receiver with "all powers, authorities, rights, and privileges heretofore possessed by the officers, directors,

---

[1] "Receivership Entities" was defined in the initial Receivership Order [Dkt. 29] as all entities "Timothy Barton directly or indirectly controls" but was later redefined as the entities listed in the current Receivership Order [Dkt. 417].

managers and general and limited partners of the entity Receivership Entities." *Id.* ¶ 3. Specifically, the Receivership Order permits the Receiver to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." *Id.* ¶ 6(J). Finally, the Receivership Order gives the Receiver the ability to, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." *Id*. ¶ 39.

2.      The Receivership Order includes a stay against "[a]ll civil litigation proceedings of any nature" involving the Receivership Entities and any of the Receivership Entities' past or present officers, directors, managers, agents, or partners sued in connection with actions taken in such capacity which stayed the State Court Litigation. *Id.* ¶ 34.

**The JMJ and Tamamoi Transaction**

3.      In 2018, Tamamoi loaned JMJ $500,000, evidenced by a Secured Promissory Note (the "Note"). The Note was secured by a parcel of land, including all improvements and fixtures, located at 3820 E. Illinois Ave. in Dallas, Texas (the "Property"), and subject to a properly recorded Deed of Trust. JMJ used $400,000 from the proceeds of the Note to purchase the Property, but never requested or received the remaining $100,000. The Note had an original maturity date of April 26, 2019, and was guaranteed by Timothy Barton ("Barton," and the "Guaranty").

4.      Despite several extensions to the maturity date, JMJ was unable to timely repay the Note. Following an April 24, 2021 notice of default, on July 6, 2021, Tamamoi foreclosed

on the Property and purchased it via credit bid.  Subsequently, Tamamoi conveyed the Property to 3820 Illinois pursuant to a Special Warranty Deed.

5.     On March 7, 2022, JMJ filed suit against the Tamamoi Parties in the State Court Litigation, alleging, among other things, that Tamamoi had wrongfully foreclosed on the Property because it failed to provide timely notice of default and an opportunity to cure the default.  JMJ also filed a notice of lis pendens against the Property (the Lis Pendens"), clouding title to the Property.

6.     Upon his appointment, the Receiver filed a Notice of Stay in the State Court Litigation. Accordingly, the State Court Litigation is currently stayed.

7.     On several occasions since the Receiver's initial appointment in October 2022, counsel for the Tamamoi Parties contacted the Receiver requesting resolution of the State Court Litigation and a release of the Lis Pendens to address numerous health and safety concerns on the Property.  For instance, the Property contains a dilapidated structure which poses serious health and safety concerns, including but not limited to the structural integrity of the building, vagrancy (because of a homeless encampment across the street, vagrants frequently shelter in the structure during bad weather), and ongoing illegal dumping (e.g., most recently, tires dumped at the property that required costly disposal).  Throughout 2022 and into 2023, the City of Dallas issued multiple citations based on these health and safety violations.  To mitigate the illegal dumping and reduce access and the likelihood of a personal injury on the Property, 3820 Illinois installed a chain link fence surrounding the Property.  The fence, however, was almost immediately torn down. Due to its condition, the Property is uninsurable.  The Tamamoi Parties spend at least $700 per month trying to avoid additional citations from the City of Dallas.

8.      Based on his review of the facts and issues surrounding the State Court Litigation and his many years as a civil litigator, the Receiver determined JMJ was unlikely to prevail on its claims asserted in the State Court Litigation.  Further, proceeding with the State Court Litigation would burden the Receivership Estate with significant attorney's fees and a limited potential recovery.  The Receiver accordingly determined that settling the State Court Litigation was in the best interest of the Receivership Estate.

9.      In early 2024, the Tamamoi Parties approached the Receiver again requesting resolution to the State Court Litigation.  Because he is concerned about the ongoing health and safety issues at the Property, the Receiver agreed to meet with the Tamamoi Parties in an effort to settle the State Court Litigation so the Tamamoi Parties could address and fully resolve the health and safety issues on the Property.

10.     On April 23, 2024, the Parties mediated their disputes in good faith in front of retired United States Bankruptcy Judge Harlin Hale and reached an agreement.

11.     On May 13, 2024, JMJ, through the Receiver, and the Tamamoi Parties executed the Settlement Agreement, whereby the Receiver agreed to release the Lis Pendens and dismiss the State Court Litigation with prejudice, and the Tamamoi Parties agreed to pay $75,000 to settle JMJ's State Court Litigation claims and each side released all existing claims related to the Property.  Because the Settlement Agreement is in the best interests of the Receivership Estate, the Receiver requests that the Court ratify the Settlement Agreement.

### III.    ARGUMENT

**A.     Legal Standard**

District courts have "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982)

(quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).  Any action by the district court "supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse."  *Id.* at 373 (*quoting SEC v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)).

"Ordinarily, parties are free to settle cases amongst themselves without court involvement."  *SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-0298-N, 2015 WL 10818588, at *2 (N.D. Tex. Sept. 23, 2015) (citing *Ibarra v. Tex. Empl. Comm'n,* 823 F.2d 873, 878 (5th Cir. 1987)).  However, "in the equity receivership context, parties have sought and courts have rendered decisions regarding whether to approve or reject settlement agreements based on courts' wide discretion in administering an equity receivership."  *Id.*  "Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are 'fair and equitable and in the best interests of the estate.'"  *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (quoting *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015)).

"In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership." *Stanford*, 927 F.3d at 840.  However, by this Motion the Receiver is not seeking to sell "any realty or interest therein." *See* 28 U.S.C. § 2001.  The Receivership Entities do not possess any interest in the Property, and this Court has already determined that similar settlements by the Receiver do not implicate 28 U.S.C. § 2001 ("the Statute") [Dkts. 109, 163]. Thus, rather than permission to sell any realty based on the Statute, the Receiver seeks the Court's ratification of his decision to resolve JMJ's dispute with the Tamamoi Parties.

**B.      The Terms of the Settlement Agreement**

To avoid the expense and uncertainty of litigation, particularly given the dubious outcome for JMJ's claims if litigated, and mindful of the persisting health and safety issues on

the Property, the Receiver and the Tamamoi Parties agreed to fully settle all existing claims related to the Property.[2]

The Settlement Agreement requires the Tamamoi Parties to pay the Receivership Estate $75,000 and release all claims against the Receiver or Receivership Entities in exchange for the Receiver's dismissal of the State Court Litigation with prejudice, release of the Lis Pendens, and release of all claims against the Tamamoi Parties related to the Property.  Additionally, the Tamamoi Parties have agreed to conditionally release Barton from his Guaranty so long as he does not sue the Tamamoi Parties or their officers or managers for any event related to or arising out of any of the transactions underlying the Settlement Agreement or based on the Settlement Agreement itself.  If Barton violates this provision the conditional release is void.

**C.      The Settlement Agreement is in the Best Interests of the Receivership Estate**

The Receiver believes that the Settlement Agreement is fair and equitable and in the best interests of the Receivership Estate because it eliminates the costs of litigation the Receivership Estate would incur through proceeding with the State Court Litigation or in asserting claims ancillary to this proceeding for the recovery of the amounts paid to the Tamamoi Parties related to the Property.

**1.      JMJ's Claims Are Unlikely to Succeed**

To prevail on its wrongful foreclosure, breach of contract, trespass to title, fraudulent inducement, fraudulent transfer, and conspiracy claims, JMJ would need to demonstrate that Tamamoi's foreclosure was fraudulent or otherwise improper.  After thoroughly investigating and reviewing the pleadings and evidence regarding the case, the Receiver determined JMJ would not likely be able to satisfy its evidentiary burden, and thus following the expense of trial,

---

[2] The Tamamoi Parties and Receivership Entity Carnegie Development, LLC are also involved in a separate transaction regarding property located in Venus, Texas.  The Settlement Agreement expressly exempts all claims and issues related to the Venus property.

JMJ would neither prevail nor recover. Further, even if JMJ prevailed, the costs incident to trial could render any recovery negligible. Thus, the Receiver determined that spending Receivership Assets to pursue the pending but stayed State Court Litigation was neither justified nor reasonable.

### 2.    A Settlement of $75,000 Is Fair and Equitable

JMJ used the proceeds of the Note to purchase the Property, and paid approximately $175,000 to Tamamoi in interest, principal, and fees. Because the Receiver does not believe JMJ would prevail on its wrongful foreclosure claim, and because JMJ was contractually obligated to make the payments that it did, a settlement for $75,000 is fair and equitable and in the best interests of the Receivership Estate.

### IV.    CONCLUSION AND REQUEST FOR RELIEF

The Receiver respectfully requests that the Court enter an order ratifying the Settlement Agreement with the Tamamoi Parties, lifting the litigation stay in the State Court Litigation for the limited purpose of dismissing the case, and further granting the Receiver such other and further relief to which he may be justly entitled.

May 15, 2024                                          Respectfully submitted,

                                                     **RECEIVER CORTNEY C. THOMAS**

                                                     */s/ Cortney C. Thomas*
                                                     Cortney C. Thomas
                                                        State Bar No. 24075153
                                                        cort@brownfoxlaw.com
                                                     Brown Fox PLLC
                                                     8111 Preston Road, Suite 300
                                                     Dallas, Texas 75225
                                                     Telephone: (214) 327-5000
                                                     Fax: (214) 327-5001

## VERIFICATION

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.


/s/ Cortney C. Thomas
Cortney C. Thomas




## CERTIFICATE OF CONFERENCE

The undersigned certifies that on May 14, 2024, the Receiver conferred via email with counsel for Plaintiff and Defendant Barton regarding the relief requested above.  The SEC is unopposed to the relief requested herein.  As of filing, counsel for Defendant Barton has not responded to the conference email.


/s/ Cortney C. Thomas
Cortney C. Thomas




## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

9