UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| | § | Case No. 3:22-CV-2118-X |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY BARTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

_____

**MOTION AND BRIEF IN SUPPORT OF INTERESTED PARTY
SOUTHERN STAR CAPITAL, LLC
TO MODIFY STAY PROVISION SET FORTH IN RECEIVER ORDER**

_____

*Introduction*

Southern Star Capital, LLC (**"SSC"** or **"Lender"**) is the holder of two commercial real estate mortgage loan (the **"Loans"**), the borrowers being DJD Land Partners, LLC and Wall 009, LLC. (**"DJD" or "Wall 009").** Both loans are secured by real property that is not claimed as a homestead. These Loans are evidenced by the following:

### 1.    DJD LAND PARTNERS, LLC

a.  Note dated November 27, 2018, in the principal amount of $127,500.00 and due on January 1, 2020, (Exhibit 1);

b.  Modification and Extension Agreement dated January 9, 2020, extending the due date of the note to January 1, 2020; (Exhibit 2)

c.  Second Modification and Extension Agreement dated July 1, 2021, extending the due date of the note to January 1, 2021; (Exhibit 3)

d.  Correction Deed of trust dated February 21, 2020, securing the loan by certain property, (Exhibit 4);

e.  Payoff statement on loan showing amount due as of May 1, 2024, being $186,651.32 with a per diem interest from May 1, 2024, of $38.42 per day, (Exhibit 5);

f.  Appraisal on the property secured by the Deed of Trust dated November 30, 2023, showing the value of the property to be $120,000.00 as of November 7, 2023; (Exhibit 6)

g.  Johnson County Web Map showing location of property in relation to other properties subject to the receivership.  (Exhibit 7)

e.  This property has a building located on it that is being used by an automotive detail shop.  To SSC's knowledge the occupant is not paying rent and there are no utilities connected to the building.  It is unknown to SSC under what authority this person/entity is occupying the premises.  (See affidavit of Al Keller Exhibit 19)

## 2.  WALL 009, LLC

a.  Note dated September 11, 2019, in the principal amount of $900,000.00 and due on September 1, 2020, (Exhibit 8);

b.  Deed of trust dated September 11, 2019, securing the loan by certain property, (Exhibit 9);

c.  Payoff statement on loan showing amount due as of May 1, 2024, being $1,071,273.34 with a per diem interest from May 1, 2024, of $266.30 per day, (Exhibit 10);

d.  Appraisal on the property secured by the Deed of Trust dated November 28, 2023, showing the value of the property to be $1,210,000 as of November 7, 2023; (Exhibit 11);

e.  For unknown reasons Wall 009, LLC, through its purported President, Tim Barton, transferred title to the property to Lynco Ventures, LLC on January 20, 2020.  SSC's deed of trust was filed and perfected prior to the transfer and the transfer is subject to the debt of SSC. (Deed at Exhibit 12).  Lynco Ventures, LLC is subject to the receivership.

f.   Johnson County Web Map showing location of property in relation to other properties subject to the receivership.  (Exhibit 13)

### *The Receivership*

3.        This matter was commenced against Timothy Barton (**"Barton"**) and others on September 23, 2022 – approximately twenty (20) months ago.  As part of the proceedings in this matter, on motion of the Securities Exchange Commission (the **"SEC"**), the Court entered its Order Appointing Receiver (the **"Receiver Order"**), appointing Cortney C. Thomas as receiver (the **"Receiver"**).  The first Receivership order was entered on October 18, 2022 (Doc. 29) and was later overturned by the Fifth Circuit Court of Appeals.  Thereafter the Court entered a Second Receivership Order on November 29, 2023, again appointing Mr. Thomas as the receiver.  The Current Receiver Order, (Doc. 417)  like the first order, vests in the Receiver exclusive authority to administer not just the property of Barton and other defendants in the case, but also to administer the property of certain entities directly or indirectly owned or controlled by Barton.  This includes the Property owned by DJD Land Partners, LLC, and Wall009, LLC, which was transferred to Lynco Ventures, LLC.

4.        The Current Receiver's Order stays certain actions of third parties, like SSC, including actions to foreclose on collateral, such as the real property subject to the Deeds of Trust.  The stay is set forth at paragraph 34 of the Receiver Order, stating in pertinent part, "… the following proceedings … are stayed *until further Order of this Court*: … foreclosure actions." (emphasis added).[1]

5.        SSC submits to the Court that, given the history of this case to date, particularly as it applies to the Properties (as set forth below), it is now appropriate for the Court (1) to enter an

---

[1] The Court has asserted jurisdiction over SSC in staying SSC from enforcing its rights and remedies under its loan documents and SSC has dutifully recognized and respected both the Court's jurisdiction and stay.  The Court's order staying SSC renders SSC a party in interest, entitled to be heard in the course of the receivership.  To the extent the Court requires that SSC formally intervene in order to have this Motion heard, SSC so moves, and has submitted herewith a proposed order granting such intervention.

order modifying the stay set forth in the Receiver Order and (2) to authorize SSC to proceed with a foreclosure sale of the Properties in accordance with Texas law. Accordingly, SSC respectfully moves for such relief.

### *Basis for Lifting the Stay*

6.      This Court, in a prior order (Doc. 477), denied a similar motion of McCormick 101, LLC. (Motion at Doc. 463). In the Order this Court set forth three items that the Court should consider in lifting a litigation stay in a Receivership. These are:

(1)     whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed;

(2)     the time in the course of the receivership at which the motion for relief from the stay is made; and

(3)     the merit of the moving party's underlying claim.[2]

### *Southern Star Capital, LLC*

7.      Southern Star Capital as part of its business extended what are termed "hard money loans". These are loans made to individuals or entities that traditionally have no credit or assets to secure a loan other than equity in real property. Both of the loans to DJD and Wall009 are such loans as these entitles were new, with no credit history, and no immediate means of repayment.

8.      In order to fund these loans SSC borrowed the funds from traditional banks at a lower interest rate than what was charged the borrower. SSC makes its money from the spread between the two interest rates. However, in the event of non-payment by the borrower, SSC is still obligated to make the payments on the funds that it has borrowed and in the event of a prolonged delay in exercising its rights under the Deeds of Trust, it loses money.

---

[2] The Court in the order reference *SEC v. Stanford Int'l Bank Ltd.*, 424 F.App'x 338, 341 (5th Cir.2011)(quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1980)(Wencke II). *Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1980)(Wencke II).

9.      In the case of the DJD loan SSC borrowed $127,500 on June 30, 2021, from Texas Brand Bank with a variable interest rate.  (Underlying Note at ExhibitBecause the loan of DJD is non-performing SSC is still making monthly payments on the underlying debt. The current monthly payment is $1,320.75 and to date SSC has made payments totaling $39,261.85 on this loan. (Exhibit 15, payment history) This loan has been in default since September 1, 2019, and has been the subject of various foreclosure postings, bankruptcy actions, lawsuits, injunctions and even an attempted appeal to the Waco Court of Appeals. Since the inception of this loan the interest rate that SSC has had to pay has increased from 5.50% to 9.50%.

10.      In regard to the Wall009 loan SSC initially borrowed $900,000 from Texas Brand Bank at  a variable interest rate. (Exhibit 16) The note has been refinanced over time and the principal amount has been reduced and SSC currently has a note with Harmony Bank, the successor to Texas Brand Bank, in the principal amount of $620,036.13 with a variable interest rate.  Because the loan of Wall009 is non-performing, SSC is still making monthly interest payments on the underlying debt of approximately $5,072.24 each month and to date SSC has made payments totaling $522,313.27 on this loan. (Payment history Exhibit 17)  This loan has been in default since September 15, 2019, and has been the subject of various foreclosure postings, bankruptcy actions, lawsuits, and attempted injunctions.  Since the inception of this loan the interest rate that SSC has had to pay has increased from 6.00% to 9.50%.

11.      All of these loans to the underlying banks were personally guaranteed by Michael D. Anderson, who was the sole member of SSC at the time the loans were made .

**FACTOR 1.   WHETHER REFUSING TO LIFT THE STAY GENUINELY PRESERVED THE STATUS QUO OR WHEITHER THE MOVING PARTY WILL SUFFER SUBSTANTIAL INJURY IF NOT PERMITTED TO PROCEED.**

12.     To Movant's knowledge the receiver has taken no action to market these properties. Further, the DJD property has a business occupying the structure but to Movant's knowledge the receiver is not receiving rent for the use of the premises.

13.     Southern Star is an entity which was in the mortgage business. It was owned and operated by Michael D. Anderson, who was the licensed mortgage broker. Mr. Anderson passed away in September 2023 and Southern Star Capital ceased generating new business.  Southern Star is winding up its outstanding affairs.  Because Southern Star is not generating any new revenue the burden of the payments being made on the loans which were used to fund the loans to Wall009 and DJD has fallen on the estate of Michael D. Anderson and said payments are depleting the estate.

**DJD Land Partners, LLC:**

14.     Based on the appraisal there is no equity in the land.  The current debt owed to SSC exceeds the value of the land.  As such the land is of no value to the receivership.  In the event the receiver sells the property the debt alone will exceed the probable sales price based on the appraisal.

15.     In fact, holding the property is a liability to the receivership in regard to ongoing taxes that must be paid on the property which the receiver has been paying.

16.     The purpose of the receivership is to Marshall assets for the benefit of the creditors. These assets do not benefit or are of value to the receivership as there is no equity remaining in the land.

17.     Holding the property in the receivership will continue to further damage SSC.  The value of the land per the appraisal, $120,000, is less than the principal amount of the loan $127,500 and substantially less than the amount due on the loan as of May 1, 2024 in the amount of

$186,651.32. And, the loss to SSC increases each day that it prevented from foreclosing on its security interest.

18.    The continued loss as to the DJD property is causing substantial harm to Movant. As stated in *U.S. v. Acorn Technology Fund, L.P*. at 433

> "Far into a receivership, if an litigant demonstrates that harm will result from not being able to pursue a colorably meritorious claim, we do not see why a receiver should continue to be protected from suit. *Cf. Wencke II, 742 F.2d at 1232."*

19.    The first factor essentially balances the interests in preserving the receivership estate with the interest of the Movant.  See *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005).

20.    Southern Star is continuing to be damaged and suffer harm by the continuance of the stay.  Its losses continue to mount daily and have done so for the twenty or more months by the time this Motion is resolved. The properties are of no value to the receivership estate as there is no equity in either. In fact, the deficiency in any sales price will only cause a claim against the receivership which increases by the day.

**Wall009, LLC**

21.    Based on the appraisal there is marginal equity in the land but in allowing for closing costs in the sale of the land there will probably be little, or no equity.  As such the land is of no value to the receivership.  In the event the receiver sells the property the debt alone will exceed the probable sales price based on the appraisal allowing for closing costs, commissions, and other traditional sales costs.  Just a five percent brokers commission on the appraised value of $1,210,000, if there are no other sales costs, being $60,500 would leave the receiver with little or no equity after closing costs if the property can even be sold for this appraised value.

22.    Therefore, holding the property in the receivership is of no value to the receivership

based on the appraisal.

23.     The purpose of the receivership is to Marshall assets for the benefit of the creditors. These assets do not benefit or are of value to the receivership as there is no equity remaining in the land.

24.     Holding the property in the receivership will continue to further damage SSC.  The value of the land per the appraisal, $1,210,000, is only $138,726.66 more than the amount owed as of May 1, 2024, and is being reduced by the per diem costs of the funds of $266.30 per day. The loss to SSC increases each day that it prevented from foreclosing on its security interest.

25.     The continued loss from both the DJD and Wall009 properties is causing substantial harm to Movant.  Southern Star is continuing to be damaged and suffer harm by the continuance of the stay.  Its losses continue to mount daily and have done so for the twenty or more months by the time this Motion is resolved. The properties are of no value to the receivership estate as there is no equity after sales costs in either. In fact, the deficiency in any sales price will only cause a claim against the receiver, which increases by the day.

26.     SSC has met factor 1 as it is sustaining substantial harm which continues each day that the receivership is in place on these properties.

**FACTOR 2:   THE TIME IN THE COURSE OF THE RECEIVERSHP AT WHICH THE MOTION FOR RELIEF FROM THE STAY IS MADE.**

27.     The case was filed on September 23, 2022.  The first receivership order was entered on October 18, 2022, and the second on November 29, 2023.

28.     To Movant's knowledge no action has been taken by the receiver to market these properties. It is understandable that the receiver would deal with more valuable assets first as these,

at least at the time the receiver was appointed, had marginal value to the estate.  Now they have no value to the estate at present according to the appraisals.

29.    Sufficient time has passed since the receivership was put in place to do something with these properties. It having appeared that no action has been taken, not even collecting rent from the business on the DJD property, these properties are of little or no value to the receivership. It the stay remains in place SSC will continue to suffer damage.

**FACTOR 3:   THE MERIT OF THE MOVING PARTY'S UNDERLYING CLAIM.**

30.    As shown by Exhibits 1, 2, 3, 4, 8 & 9, Movant is the lender on these properties and has valid security instruments. There have been no allegations in the course of dealing with these entities that SSC's liens are improper or that it did not fund the loans.

31.    In fact, during the course of trying to resolve numerous defaulted loans with various Barton Entities, a settlement agreement was reached on March 22, 2021, including Wall009 and DJD, outlining the terms  of how the loans would be repaid.  (Exhibit 18)  Of course, in the usual manner of doing business for Mr. Barton, this agreement was breached and the payments promised were not made.

32.    In short, the debt owed to Southern Star has grown exponentially during the receivership, while the value of the Property to the receiver has eroded due to the increasing debt owed to SSC. Thus, the entire economic risk of the receivership, as it applies to the Property, has been borne by SSC which it cannot afford to continue.

33.    As the Court can readily surmise, the issue is how to effectuate a sale of the Property as expeditiously as possible without the potential for further interference from Barton. The answer

is to modify the stay provision in the Receiver Order and allow Southern Star to conduct a nonjudicial foreclosure sale of the Property, which (1) requires no (appealable) approval order under 28 U.S.C. Section 2001 and (2) provides Barton no opportunity to further interfere with the sale process.[3]

34.    In connection with modification of the stay provision in the Receiver Order, Southern Star would agree to certain provisions that would apply to the foreclosure sale.  For example:

   a.  if the Court determines that the appraisal of the Property, already obtained by SSC, is no longer timely, Southern Star is agreeable to a new appraisal being obtained. (And, likewise, if the Court determines that the existing appraisals are satisfactory, Southern Star is agreeable to utilization of such appraisals in connection with any sale to come);

   b.  the Receiver's broker can continue to market the Property during the time it takes to notice, advertise, and conduct the sale under Texas law, if indeed any such broker is in place to attempt to sale the land;

   c.  Southern Star will bid, pursuant to its credit bid rights at the sale, no less than the appraised value of the Property or the amount of its loan payoff, whichever is less;

   d.  If Southern Star is not the prevailing bidder at the sale, the cash proceeds of the sale would be paid first to Southern Star's outstanding principal, interest and other allowed costs under the note and deed of trust, with any remaining cash proceeds to be deposited with the receiver, to be disbursed on such terms and conditions as the Court determines; and

   e.  If Southern Star *is* the prevailing bidder via Southern Star's credit bid at the sale, no cash proceeds would be available for distribution and no amounts would be payable to third parties.

---

[3] Nor would Barton have a right to appeal the Court's order modifying the Receiver Order. *Wells Fargo Bank, N.A.v. JRK Villages of Meyerland, LLC*, No. 01-10-01076-CV, 2011 WL 61170 at *1 (Tex.App. Jan. 6, 2011) ["Wells Fargo is not appealing an order appointing a receiver.  Wells Fargo asked for the appointment of a receiver, but appeals a condition the trial court imposed upon the receiver.  Section 51.014(a) does not address orders modifying or amending the terms of a receiver's appointment.  Construing Section 51.014(a) strictly, as we must, we conclude we lack jurisdiction over this appeal"] (holding court lacked jurisdiction over appeal of order modifying receiver order).

35.    Granting Southern Star's motion herein, paired with the provisions set forth above, strikes a balance between (a) Southern Star's valid lien interests in the Property and (b) the Receiver's interests in (i) finalizing a sale (and thus ridding the receivership of both of the Properties and the ongoing expenses incurred in connection with them) and (ii) making such sale available to potential bidders.  Moreover, it does so hopefully in a manner that prevents further interference on the part of Barton with respect to a sale that would be beneficial to the receivership estate.

### *Conclusion*

36.    This case is approximately 20 months old.  Southern Star Capital, LLC has complied with the stay set out in the Receiver Order, but, while doing so, watched the amount it is owed increase, had the interest rate increase on its underlying loans, watched the equity evaporate on the land making it near impossible to be made whole on a foreclosure all while having suffered a loss due to the actions of Barton and Wall of over $3,500,000 which does not include the loss it will suffer on these loans.  It is time to allow Southern Star to move forward on its security interests to stop the harm that is being done to it.

37.    In short, the stay is injuring Southern Star's financial interests and now that of its prior owners' estate.

38.    Southern Star has respected the stay and observed the efforts of the Receiver in regard to the properties.  In fact, the properties were posted for foreclosure at the time the first receivership order was entered. Now, however, with the debt ever-increasing, and Southern Star's interest in its Loans diminishing, this Motion should be granted.

39.    There is no doubt of the merits of Southern Star's claim to enforcement of its rights and remedies.  The Borrowers have been in default for almost five years; but for the stay in the

Receiver Order, Southern Star would have continued in its attempts to enforce its rights and remedies as provided in the loan documents.

40.    In short, the *Wencke* elements for modification of the stay are satisfied here: (1) continuing injury to the moving party absent modification of the stay; (2) appropriateness with respect to the timing of the moving party's motion; and (3) the underlying legal merits of the moving party's claim. *See S.E.C. v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980).

41.    Sale of the Property is beneficial to the receivership estate as the properties appear to continue to be a burden on the estate with no value and it is beneficial to Southern Star. This Motion presents that manner of sale and sets forth proposed additional provisions to apply to said sale, for the benefit of the Receiver and the estate.  For those reasons, the Court should grant the motion, and Southern Star, accordingly, so respectfully requests.

Respectfully submitted,

**THE LAW OFFICE OF ROBERT W. BUCHHOLZ, P.C.**

By: */s/ Robert W. Buchholz*
Robert W. Buchholz
Texas Bar No. 03290600
bob@attorneybob.com
5220 Spring Valley Road, Suite 618
Dallas, Texas 75254
214-754-5500 Telephone
214-754-9100 Facsimile
**ATTORNEY FOR**
**SOUTHERN STAR CAPITAL, LLC.**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1, I hereby certify that on May 1st and 2nd, 2024, I held numerous conversations with counsel for the Receiver regarding the relief sought herein.  As a result of our discussions Counsel for the Receiver stated that she is opposed to the relief requested.

Further, I conferred with counsel for Plaintiff Securities and Exchange Commission who indicated that the Securities and Exchange Commission is likewise opposed.

/s/ Robert W. Buchholz
Robert W. Buchholz
Attorney for Southern Star Capital, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of May 2024, a true and correct copy of the foregoing Motion was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of such filing to all counsel of record.

/s/ Robert W. Buchholz
Robert W. Buchholz
Attorney for Southern Star Capital, LLC