IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

RECEIVER'S VERIFIED MOTION FOR
APPOINTMENT OF APPRAISERS, APPROVAL OF APPRAISALS,
APPROVAL HEARING, AND APPROVAL OF SALE OF HALL STREET PROPERTY

Cort Thomas, as the court-appointed Receiver, respectfully moves the Court as follows:

## I.    SUMMARY

In compliance with the Court's Order Appointing Receiver (defined below) and 28 U.S.C.

§ 2001 (the "Statute"), the Receiver requests appointment of three appraisers, approval of the

appraisals, a hearing regarding approval of the sale of certain property, and, ultimately, approval

of the sale discussed below.

– 1 –

## II.    FACTUAL BACKGROUND

### A.    The Receivership Order and the Property.

1.    On October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities. The Court directed the Receiver to take possession and control of all Receivership Assets and Receivership Records defined in the Initial Receivership Order.

2.    On November 16, 2022, the Court entered the Order Governing the Administration of the Receivership ("Administrative Order") which also established procedures for sales of real property in conformity with the Statute. [Dkt. 63].

3.    Following the Fifth Circuit's vacatur of the Initial Receivership Order, this Court solicited briefing and conducted a hearing to consider entry of a new receivership order, which the Court entered on November 29, 2023 (the "Receivership Order") [Dkt. 417].  The Receivership Order directed the Receiver to take "possession of all Receivership Property" including "all real property of the Receivership Entities." Receivership Order ¶¶ 6, 17.

4.    On November 29, 2023, this Court entered an order adopting several orders entered under the Initial Receivership Order, including the Administrative Order, making them effective under the Receivership Order [Dkt. 419].

5.    TC Hall, LLC ("TC Hall") is identified in the Receivership Order as a Receivership Entity that "received or benefited from assets traceable to Barton's alleged fraudulent activities." *Id.* ¶1.

6.    TC Hall owns unimproved property located at 3407 and 3409 Hall Street, Dallas, Texas (the "Property").

**B.      The Proposed Sale of the Property.**

7.      The Property is one of many Receivership Properties that at the time of the Receiver's appointment was (and today still is) encumbered by significant debt.  As detailed in the Receiver's prior Reports, to date the Receivership Estate has been unable to service the debt on any of the realty held in the Receivership Estate.

8.      In light of these challenges, and to avoid using limited receivership assets to continue operating the Property, at a loss, the Receiver determined selling the Property was in the best interest of the Receivership Estate if a sale would generate a net return for the Estate.  After consulting multiple industry professionals and brokers regarding the Property's potential value, the Receiver engaged a broker to market the Property.

9.      The broker obtained multiple offers on the Property, the highest of which was submitted by Glacier Development Partners, LLC ("Buyer") at a purchase price of $6,000,000.[1]

10.      The Receiver and the Buyer engaged in negotiations regarding a purchase and sale agreement for the Property, and on May 30, 2024, the Receiver and the Buyer entered into a Purchase and Sale Agreement (the "Contract"),[2] pursuant to which the Receiver agreed, subject to Court approval, to sell the Property to the Buyer for $6,000,000.

11.      The Contract requires deposit of an initial earnest money payment of $200,000 within seven days after the Effective Date defined in the Contract.  Pursuant to the Contract $20,000 of the earnest money is non-refundable.  The Contract requires closing no later than 60

---

[1] The Buyer is not related to, nor controlled by any of the parties to this lawsuit, and is not related to, nor controlled by the Receiver, or any of his agents, employees, or attorneys.

[2] A true and correct copy of the Contract is included in the Appendix submitted with this Motion as Exhibit A, APP000001–42.

days after the expiration of the Feasibility Period defined in the contract, subject to one optional 30-day extension based on additional events.

12.    The Receiver believes that this sale is in the best interest of the Receivership Estate and accordingly seeks permission to sell the Property pursuant to the Contract and in accordance with the Administrative Order and the Statute.  Further, the Receiver requests authorization to sell and to convey title to the Property free and clear of mortgages, liens, claims and encumbrances, save and except those secured liens discussed in this Motion.

### III.    ARGUMENT AND AUTHORITIES

#### A.    Legal Standard

Pursuant to the Statute, the Court may order the sale of real property by private sale "if it finds that the best interests of the estate will be conserved thereby."  Before the confirmation of any private sale, (1) "the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities[, and] [n]o private sale shall be confirmed at a price less than two-thirds of the appraised value;" (2) "the terms [of the sale] shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation" and a hearing held, "of which notice to all interested parties shall be given by publication or otherwise as the court directs;" and (3) "[t]he private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale."  28 U.S.C. § 2001(b).

#### B.    The Court Should Appoint the Identified Appraisers and Accept Their Appraisals.

In accordance with this Court's Orders and the Statute, the Receiver obtained three independent appraisals of the Property.  One is an informal broker opinion of value, and two are

– 5 –

certified appraisals (collectively, the "Appraisals").[3]   True and correct copies of the three Appraisals are included in the Appendix as Exhibits B-1, B-2, and B-3 (APP000043–150, APP000151–243, and APP000244–250).   The Receiver requests that the Court appoint the appraisers for the purpose of providing the attached Appraisals and accept these three Appraisals as required by the Statute.

The three Appraisals value the Property at $5,300,000,[4] $4,780,000,[5] and $4,487,800–$6,170,725,[6] resulting in an average appraised value of $5,136,421.[7] Thus, the contracted sales price, $6,000,000, not only greatly exceeds two-thirds of the average appraised value of the Property ($3.4 million) as required, but also exceeds the average certified appraised value by nearly $1 million.  The Receiver contends the proposed sale satisfies the two-thirds threshold and is in the best interest of the Receivership Estate.

**C.    The Court Should Set a Hearing on the Proposed Sale**

The Statute also requires that the Court conduct a hearing to consider the proposed sale. At least ten days before the hearing, the Statute further requires publication of the terms of the proposed sale so that bona fide interested purchasers can submit competing bids of not less than 10% more than the Contract price.  Any competing offers should be accompanied by proof of funds for a cash sale, or confirmation of approved financing to allow an immediate closing on the same basis provided in the Contract.

---

[3] In accordance with the Court's Administrative Order, the Receiver is using an informal opinion of value as an appraisal due to the cost of a certified appraisal on commercial property. Dkt. 63 at 9 ("Similarly, the Receiver may in his discretion utilize informal "opinions of value" received from respected brokers in the respective industries related to the subject property, as one or more of the "appraisals" required by § 2001(b).")

[4] The appraisal was issued by National Valuation Consultants, Inc. and is dated as of January 7, 2024. APP000044.

[5] The appraisal was issued by Integra Realty Resources and is dated December 27, 2023. APP000156.

[6] The Broker Opinion of Value was issued by JLL and is dated as of March 27, 2024. APP000245.

[7] The averaged appraised value was calculated using the average of the JLL Broker Opinion of Value, $5,329,262.

The Receiver requests that the Court schedule a hearing on or before July 12, 2024, to consider the sale. The Receiver will publish notice of the hearing at least ten (10) days prior to the hearing as required by the Statute and provide notice of the hearing through the receivership website. Additionally, the Receiver requests that the Court require that any objections to the proposed sale be filed no later than ten days after the date of an order setting the hearing, or fourteen days before such hearing, whichever date is earlier.

The Receiver requests that any bona fide offers for purchase of the Property which exceed by ten percent (10%) the Contract sales price of $6,000,000 be served on the Receiver and filed with the Court not later than two days before the hearing scheduled to consider the sale.

**D.    After the Hearing, the Court Should Approve the Sale, or Any Bona Fide Offers Exceeding 10% of the Sales Price, as in the Best Interest of the Receivership.**

The disposition of the Property outlined above is in the best interest of the Receivership Estate. As discussed previously, the Property is heavily leveraged with debt and subject to a variable interest rate. As of April 29, 2024, a loan balance of $4,653,655.88 is purportedly owed on the Property.[8] And at an annual rate of 9.009%, interest is accruing at $1,023 per day. Moreover, as discussed in the Receiver's Seventh Status Report [Dkt. 491], other property sales previously approved by the Court have not closed. While the Receiver is optimistic these sales eventually will close, additional funds are needed for continued administration of the Receivership Estate.

If the Court approves the sale, after discounting the loan balance (approximately $4,684,345 as of May 29, 2024) broker's commissions (approximately $180,000), and property

---

[8] The Receiver has not yet audited this loan balance and may dispute some of the charges include in it.

taxes (approximately $159,159)[9] the sale will result in a net benefit of approximately $976,496 to the Receivership Estate.

Finally, the Receiver further requests that in the event the Court approves the sale contemplated in this Motion but the Buyer ultimately terminates the Contract in accordance with its terms, the Court authorize the Receiver to sell the Property on substantially similar terms and at a price at or above the sales price of the Contract.

## IV.    CONCLUSION AND PRAYER

As set forth above, the Receiver requests that the Court (1) appoint the three appraisers identified above and in the Appraisals included in the Appendix; (2) approve and accept the Appraisals provided by each appraiser; (3) set this matter for hearing to consider approval of the sale on the terms provided by the Contract or as offered in any bona fide competing offer received after the date of this Motion; and, (4) provided no timely bona fide offers exceeding the Contract price by 10% are received at least two days before the date of the hearing, enter an order authorizing the Receiver to sell the Property pursuant to the terms of the Contract (or upon substantially similar terms in the event the Contract is terminated).  The Receiver also requests such other and further relief to which he is justly entitled.

---

[9] Property taxes for 2022 and 2023 are currently owed.

– 8 –

Respectfully submitted,

By: _/s/ Timothy B. Wells_____
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## VERIFICATION

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

    _/s/ Cortney C. Thomas_____
    Cortney C. Thomas

**CERTIFICATE OF CONFERENCE**

I hereby certify that on May 31, 2024, the Receiver conferred with counsel for Defendant Barton. As of the filing of this Motion, no response has been received. Because Barton has not responded to the Receiver's requested conference, the instant Motion is deemed opposed pursuant to L.R. 7.1.

I further certify that on June 4, 2024, I conferred with the SEC. As of the filing of this Motion, the SEC was unable to confirm whether it was opposed or unopposed. Based on L.R. 7.1, the SEC is deemed opposed; however, an amended certificate of conference may be filed at a later date.

> */s/ Timothy B. Wells*
> Timothy B. Wells

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

> */s/ Timothy B. Wells*
> Timothy B. Wells