# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § | Hearing Requested |
| CARNEGIE DEVELOPMENT, LLC | § | |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § | |
| | § | |
| *Relief Defendants.* | § | |

## DEFENDANT BARTON'S RESPONSE TO VERIFIED MOTION TO RATIFY SETTLEMENT AGREEMENT WITH TAMAMOI, LLC AND 3820 ILLINOIS, LLC

Defendant Timothy Barton files this Response in opposition to the Receiver's Verified Motion To Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC [ECF No. 494] ("Motion"), and requests a hearing on this matter, as follows.

## I.    INTRODUCTION

This Court should deny the Receiver's request to permanently dispose of the receivership estate's assets, including the legal claim at issue here, while the United States Court of Appeals for the Fifth Circuit actively considers the legality of his appointment.  Such a disposition is inequitable, unnecessary, and not in the best interests of the estate (nor is it in the best interests of the subject matter lenders or the Defendant), and this Court lacks jurisdiction to approve it.

The Receiver comes to the Court seeking to release Mr. Barton's legal claim related to property subject to a wrongful foreclosure.  The property at issue, located at 3820 East Illinois Avenue, Dallas, Texas, consists of 6.46 acres of land, with a likely market value today of more than $1 million.  Rather than simply holding on to this asset, the Receiver seeks to terminate all claims attached to the property for just $75,000—a mere fraction of the value of the claim—and permit the lender to foreclose on the property.  But the Motion contains no analysis whatsoever supporting a determination that JMJ Development, LLC would not succeed on the merits in staving foreclosure.  This conclusory review does not provide this Court with a sufficient factual basis for approving release of the claim.  And the Receiver inexplicably attempts to rush through this proceeding where there is no immediate need to resolve the claims against the property, particularly given the ongoing litigation stay imposed by this Court.  The transaction proposed by the Motion is as unnecessary as it is unsupported by the law and facts.

At a minimum, the Court must conduct a hearing to ensure compliance with all aspects of 28 U.S.C. § 2001 prior to the resolution of claims that would impact the permanent disposition of real property.  And the Receiver should be made to produce key documents and the Court hold a hearing, before this sale is approved, to substantiate the value of the transaction.  That careful consideration mandated by Congress has clearly not yet been undertaken.

## II.    ARGUMENT & AUTHORITIES

**A.    The Court Should Not Permit the Permanent Disposition of Property While the Legality of the Receivership Is On Appeal.**

While a receivership order is the subject of an active appeal—particularly following a previous appeal that vacated a similar receivership—a district court should not permit a receiver to permanently dispose of a defendant's assets. Briefing is currently underway before the Fifth Circuit on Mr. Barton's challenge to the new receivership order authorizing the Receiver to take any actions on behalf of the property and legal rights held by entities currently housed in the receivership estate. That appeal also challenges the propriety of specific transactions undertaken by the Receiver and approved by this Court permanently disposing of receivership estate property.

It is black letter law that district courts, when having resolved serious legal questions for which an appeal is pending or forthcoming, should avoid actions that cannot be later undone if the appeal is successful. *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) (holding that district courts must "maintain[] the status quo" pending appeal); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 07-01827 SI, 2013 WL 6055079, at *2 (N.D. Cal. Nov. 13, 2013) (citing *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Intern. Typographical Union*, 686 F.2d 731, 735 (9th Cir. 1982)) ("During the pendency of an appeal, the Court may act to preserve the status quo, but may not take actions that alter any substantial rights on appeal or that cannot later be undone."). The ratification the Receiver seeks here is exactly the type of irrevocable action that courts have rightly and regularly steered clear of. It would be wholly inappropriate to allow further disposition of the receivership estate's legal rights, as the Motion at

issue contemplates, during the pendency of Mr. Barton's appeal. Doing so would disregard the role and undermines the supremacy of the appellate court. If granted, the Receiver's request would set in motion a chain of events that would be exceedingly difficult and expensive to unwind, if such an outcome is ultimately even possible at all. As this Court has previously acknowledged, property rights are held sacred in our Country and not to be abridged without process. This Motion, if granted, would deny that process.

**B.      The Court Cannot Expand the Scope of the Receiver's Authority While an Appeal is Pending.**

Because the propriety of the receivership order is on appeal, this Court does not possess jurisdiction to modify the order and expand the scope of the Receiver's authority. According to the Fifth Circuit, "[t]he filing of a timely and sufficient notice of appeal transfers jurisdiction over matters involved in the appeal from the district court to the court of appeals. The district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal." *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, (5th Cir. 2024). The Fifth Circuit reviewed other cases to determine whether procedural orders concern "the aspects of the case on appeal." *Id.* (considering whether a Texas federal court had jurisdiction to transfer a case to a District of Columbia federal court while an appeal of a failure to grant a preliminary injunction was pending). The question before this Court is much simpler, as it is incontrovertible that the District Court lacks jurisdiction to enlarge or alter one of the actual orders being appealed—here, the order imposing a receivership. *See, e.g.*, *City of Cookeville, Tenn. V. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2007).

The Court's order imposing the current receivership authorizes and requires the Receiver to both "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership

Property" and "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities."  Order Appointing Receiver (Dkt. No. 418) at 7-8.  The Receiver asserts that the proposed settlement resolves an interest in property that is not real estate.  As a result, he relies on a separate provision of the receivership order to contend that the Court's authorization is not necessary here.  *See id.* ¶ 39.  That provision allows the Receiver to, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, *other than real estate*, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property."  *Id.* (emphasis added).

But, as discussed in Section E, *infra*, the interest here is indeed one in real estate, and the Receiver does not possess authority to transfer it without an appropriate order from this Court.  The Receiver either intentionally or mistakenly miscategorized this transaction as one that would not require the Court's approval (and, thus, expand his current authority), but then nonetheless seeks such approval.  Regardless, there are several steps in this process that would prevent execution of the transaction.  First, the Receiver would need to seek the Court's approval of disposition of a real estate interest, then the Court would need to hold a hearing under 28 U.S.C. § 2001 to determine whether the sale was appropriate, and then the Court would need to wait until the pending appeal before the Fifth Circuit was resolved.

In reality, the Receiver attempts to expedite the dissipation of the relevant property by settling claims related to the property at a significantly undervalued price.  In doing so, the Receiver seeks to expand the power granted to it by acting contrarily to the Court's previous commands, indeed, while the existence and proper scope of the Receiver's authority is being

challenged by a pending appeal.  This Court lacks the authority to grant it.  *Cf. S.E.C. v. Kirkland*, No. 606CV-183-ORL-28KRS, 2006 WL 3333672, at *1 (M.D. Fla. Nov. 16, 2006) (reasoning that, where preexisting order required receiver to seek authority before selling real property, conferring such authority would constitute modification of the scope of the order on appeal).

The Receiver is requesting that this Court expand the scope of his authority to enter the settlement, but, as a result of appeal of the new receivership order pending before the Fifth Circuit, the Court cannot presently modify the scope of the receivership order for this purpose.

**C.    The Court Should Not Ratify the Proposed Settlement.**

Even if the Receiver possessed the authority or ability to enter into the proposed settlement, which—for the reasons outlined above—he does not, the merits and procedural posture of these proceedings require that the Court deny the Motion.

Generally, courts that have considered the question have held that the business of prejudgment receiverships should not be the liquidation of assets, but instead their conservation in place.  *See SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets … is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment."); *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (lamenting the "special additional penalty" that would result by allowing a Commission receiver to liquidate).  Ratifying this settlement agreement would fail to secure one of the receivership estate's valuable assets in place for potential return to Mr. Barton, in the event the Commission does not prove its case.  And the Receiver does not meaningfully attempt to establish that release of this claim will protect the subject lenders' potential interests or is otherwise in the best interest of the receivership estate.

Moreover, the Receiver has not even attempted to show that this transaction is necessary, only passingly mentioning that it would provide some cost savings by avoiding legal fees, which are themselves avoided by the current stay of litigation imposed by the receivership order. *See, e.g.*, *Current Fin. Servs.*, 783 F. Supp. at 1445 (finding liquidation neither "necessary to protect [the defendant's] investors" nor "appropriate prior to the entry of final judgment"); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("We have in the past criticized the use of receivers to effect the liquidiation [sic] of a defendant firm in litigation under the Securities Act or the Securities Exchange Act") (citing *SEC v. S & P Nat'l Corp.*, 360 F.2d 741, 750 (2d Cir. 1966)). The Receiver improperly requests to permanently change the *status quo* of assets rather than preserve them for use or return upon final judgment. *See id.*; *Los Angeles Tr. Deed*, 285 F.2d at 182. Settlement and disposition of legal rights are extremely difficult to undue or otherwise claw back after settlement transactions of the type contemplated by the Motion are consummated. There is no stated or apparent urgency to do what the Receiver requests to do right now. The foreclosure litigation at issue is stayed by the receivership order. And the receiver need not expend funds pursuing it. The Receiver can simply let the claim remain in the same posture it has been in since the first receivership order was issued. The Receiver has identified no special circumstances that justify a prejudgment liquidation of assets under receivership, particularly when a cloud of legal uncertainty hangs over the entire process.

In the meantime, the Government either will prove its allegations at trial and establish an entitlement to the property and assets held in receivership or it will fail to do so and the property and assets will be returned to the Defendant. Absent extraordinary circumstances, this Court cannot permit a Receiver to permanently dispose of or change the status of that property prior to trial and a final judgment. The Receiver has established no such extraordinary circumstances.

**D.      The Receiver Fails to Show the Proposed Transaction Is in the Receivership's Best Interests.**

The present transaction proposed by the Receiver is particularly instructive of the upside-down nature of this proposed transaction and lack of benefit it would bring to the receivership estate.  Indeed, a hearing held pursuant to 28 U.S.C. § 2001 would show that the Receiver proposes to settle illegitimate claims on a property worth more than $1 million for a mere $75,000.  Such an evidentiary hearing would also show that the foreclosure at issue on this property is wrongful and ought to be resisted on the merits. The claim is that the creditor's foreclosure effort was improper because the receivership entity cured the default through full payment, which the creditor returned in an improper effort to seize all the excess value in the property.  This is a straightforward and powerful legal claim that can be presented efficiently and successfully to secure the estate's rights to the full property.  A hearing before this Court would establish that, despite the best efforts of the plaintiff in the underlying matter to resolve the foreclosure dispute in good faith without litigation, the defendants in the case have rejected all proposals that would preserve the plaintiff's ownership rights, including attempts to cure.  Providing perhaps a silver lining to an otherwise significantly damaging imposition of this receivership over Mr. Barton's property, the litigation stay in effect prevents the opposing party in the underlying matter from prematurely or unfairly seeking to execute the foreclosure it commenced.

The Receiver has made no showing that undoing this stay and entering the transaction would be in the best interests of the estate.  Before the Court can even consider approving this settlement agreement, it should, at a minimum, require the Receiver to provide and then subsequently examine the facts that would ensure that the settlement transaction proposed by the Receiver is indeed in the best interests of the receivership estate.  As an initial matter, the fact that

the Receiver's Motion is verified is of no moment unless it is accompanied by sufficient factual detail to substantiate the conclusory assertions made in its Motion.

The Receiver's assertions set forth in the Motion to support its request are inadequate because the Receiver omits several critical considerations, including:

1. The Receiver does not provide a financial assessment or supporting statements to address the potential financial impact of the proposed settlement contract.

2. The Receiver does not analyze whether the alleged foreclosure was legitimate or curable, or whether the Receiver attempted to cure the foreclosure. This point is particularly relevant because the Court's Receivership Order has stayed claims against the receivership estate.

3. The Receiver does not demonstrate why it cannot maintain and preserve the property.

Without that information, there is no way to tell if the Receiver endeavored to realize the value of the asset, or whether the purpose of the transaction instead reflects an attempt to cash out the value of the asset to pay short-term expenses (or a severe misunderstanding of the facts and posture of the underlying foreclosure litigation), with the result of unnecessarily harming the receivership estate. The Court should not approve this agreement without requiring that necessary information from the Receiver and analyzing it in due course.

**E.    Granting the Motion Would Result in Disposal of Real Property Interests and, Thus, Improperly Circumvent 28 U.S.C. § 2001.**

The Receiver also cannot dispose of "[a]ny realty or interest or any part thereof" without first complying with 28 U.S.C. § 2001. Yet, here, the Receiver's Motion makes only a passing and incorrect conclusion as to the statute's application.

There is no dispute—or at least there should not be—that the Receiver attempts to dispose of the receivership's realty interests. Encumbrances on the fee simple property are direct interests

in realty, and their disposition is governed by 28 U.S.C. § 2001.  To the extent the Receiver may argue in reply that 28 U.S.C. § 2001 only applies to the sale of an entire fee simple property, that argument would be incorrect.  The statute not only applies to the sale of entire fee simple estates, but also to any "interest or any part thereof."  28 U.S.C. § 2001(b).  And a party can buy, hold, and sell many different types of interests in realty other than fee simple title.  For example, any "liens, claims, easements, [] servitudes" or other "encumbrance[s]" are "interest[s] in realty."  *Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App. —Austin July 7, 2005, no pet.).  Other examples of realty include unaccrued royalty interests, even if these interests are non-participating in nature.  *Id.; see also Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007) ("An overriding royalty interest in an oil and gas lease is considered an interest in real estate . . . ."); *Cane Tennessee, Inc. v. United States*, 60 Fed. Cl. 694, 699 (2004) (addressing other state law that a "non-participating royalty interest" may be "classified as realty"). !  Participation agreements are also used to convey realty interests.  *See Conocophillips Co. v. Dahlberg*, No. CIV.A. C-10-285, 2011 WL 710604, at *7 (S.D. Tex. Feb. 22, 2011). !

Because the settlement agreement disposes of the receivership's real property interests for cash consideration, it constitutes a *de facto* sale of those interests and falls within the ambit of 28 U.S.C. § 2001.  The Court may not, therefore, merely approve of the settlement agreement without ensuring compliance with § 2001's requirements.

### III.    CONCLUSION & PRAYER

For the foregoing reasons, Defendant Timothy Barton respectfully requests that the Court deny the Receiver's Verified Motion To Ratify Agreement With Tamamoi, LLC and 3820 Illinois, LLC.  At a minimum, the Court should require the settlement to proceed under 28 U.S.C. § 2001, following a hearing, and should delay approval of that settlement until such a time as the Receiver

provides sufficient information to determine the value of the rights the receivership estate is trading away and the Receiver's efforts, if any, to preserve those rights.

Dated: June 5, 2024

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to N.D. Tex.*)
medney@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On June 5, 2024 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney