# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

## RECEIVER'S VERIFIED RESPONSE TO
## SOUTHERN STAR CAPITAL LLC'S MOTION TO
## MODIFY STAY PROVISION SET FORTH IN RECEIVER ORDER

Cort Thomas, the Court-appointed Receiver, responds to Southern Star Capital, LLC's ("Southern Star") Motion to Modify Stay Provision Set Forth in Receiver Order [Dkt. 498], and in support respectfully shows the Court as follows:

## SUMMARY

As stated in multiple reports, motions, and responses, virtually every property currently in the Receivership Estate is encumbered by debt, and every lender has been stayed from collecting or enforcing its lien. Multiple lenders, including Southern Star, are pressuring the Receiver to address their specific claims, seeking to elevate their claims and liens above other claims, liens and creditors and the defrauded investors. But for the Enforcement Stay and Litigation Stay[1] (collectively, the "Stay") presumably every lender would have foreclosed on each of the properties included in the Receivership Estate, undermining the Receivership's purpose—preserving the value of these properties to provide a recovery for defrauded investors.

---

[1] As defined below. *See also,* Receivership Order, Dkt. 417, ¶¶ 32 C; 34.

1

Southern Star attempts to paint a grim picture surrounding the value of the Properties (defined below) that secure its loan. Appraisals commissioned by the Receiver, however, demonstrate the Properties still have equity and provide value to the Receivership Estate— information previously shared with Southern Star. The Receiver shares Southern Star's (and every other creditor's) frustration with the slow progress in resolving creditor claims and liens, as well as concluding real property sales, caused by Barton's repeated and often jurisdiction-less, appeals.  But Southern Star's frustration, caused in part, by its business decision to borrow money at a variable rate, does not permit it to skip the line in which all creditors, including the investors, are waiting.

Similarly, although the Court created the Receivership Estate nearly 20 months ago as Southern Star points out, the unfortunate reality is that for reasons completely beyond the Receiver's control, the Estate is much closer, factually, to inception than conclusion.  For the majority of 2023, the Receiver could not close approved sales that would have netted over $4 million to the Receivership Estate. The proceeds of those sales might have permitted the Receiver to satisfy some of the debt on which the highest interest accrues, or perhaps if feasible and advisable, turn to questions of development for certain properties, including Southern Star's Properties and the other "Venus Properties."  Knowing, however, that marketing and sales efforts have and will be stymied by Barton, the Receiver has focused his efforts on properties that are losing the most equity (because of their high interest rates), properties which drain Receivership Assets, or which present similar reasons to seek an immediate contract or resolution.

Regardless of these frustrations, (1) because Southern Star fails to justify the relief it seeks for  the Court to advance it to the front of the long, long, *long* line of creditors and claimants; and (2) because lifting the Stay at this time for the benefit of Southern Star, or the

2

benefit of any of the other pressing creditor, would open the flood gates on creditors seeking similar relief and wreak havoc on the cash-starved Receivership Estate, the Court should deny Southern Star's Motion and reaffirm the Stay.

## I.    BACKGROUND

1.    On October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities. The Court directed the Receiver to take possession and control of all Receivership Assets and Receivership Records defined in the Initial Receivership Order.[2]

2.    Immediately upon his appointment the Receiver went to work identifying and marketing real property owned by Receivership Entities to preserve their value, and in December 2022 and March 2023, filed motions seeking to sell properties, which the Court approved. *See* Dkts. 104, 142, 202.

3.    Due to multiple appeals Barton filed, including an appeal of the orders approving the sales and the Initial Receivership Order, the title companies would not issue title policies for the sales and the approved transactions did not close.

4.    Following the Fifth Circuit's vacatur of the Initial Receivership Order, this Court solicited briefing and conducted a hearing to consider entry of a new receivership order, which the Court entered on November 29, 2023 (the "Receivership Order") [Dkt. 417].

5.    The Receiver then moved the Court to re-approve the previously approved sales and following a hearing, the Court re-approved the previously approved sales. *See* Dkts. 436, 437, 438.  However, due to Barton's appeal of the Receivership Order, title companies continue

---

[2] Dkt. 29.

to refuse to issue title policies. Thus, none of the sales previously approved by the Court have closed.[3]

6.        Included in the Receivership Order as Receivership Entities are Lynco Ventures, LLC which owns a tract of land totaling approximately 63.75 acres subject to a note and deed of trust in favor of Southern Star (the "Lynco Property"), and DJD Land Partners, LLC which owns a tract of land totaling approximately 127.24 acres of which 1 acre is subject to a note and deed of trust in favor of Southern Star (the "DJD Property" together with the Lynco Property the "Properties").

## II.    ARGUMENT

### A.    Southern Star Did Not Intervene

As an initial matter, Southern Star has not intervened, nor properly sought permission to intervene, and thus its entitlement to be heard is doubtful.[4]  Even if it had justified intervention, however, it still failed to satisfy the standards that govern lifting the Stay.

### B.    Southern Star Does Not Satisfy the *Wenke* Factors

"District courts have broad equitable powers to preserve a receiver's ability to operate without interference." *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379, 380 (5th Cir. 2011). Stays in receivership matters serve as additional tools furthering the goals of the receivership. *SEC v. Byers*, 592 F.Supp.2d 532, 537 (S.D.N.Y. 2008) *aff'd,* 609 F.3d 87 (2d Cir. 2010).  The Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).  The

---

[3] Despite this, the Receiver has recently filed motions to approve the sale of two properties in the hopes that he will soon be able to close on these sales. *See* Dkts. 500, 502.

[4] Southern Star dropped a footnote saying the Court has asserted jurisdiction over it through the Stay. The Court's exercise of jurisdiction, however, is not the equivalent of a motion to intervene. *See* FED. R. CIV. P. 24; *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994) ("A party seeking to intervene as of right must satisfy four requirements . . . . If a party seeking to intervene fails to meet any one of . . . [the four] requirements, it cannot intervene as a matter of right.").

Court's power with respect to an anti-litigation stay is thus more broad than its power to grant injunctive relief pursuant to Rule 65. *Id.*

In deciding whether to lift such a stay, courts generally consider three factors, the *"Wenke* factors," which are intended to balance the interests of the Receiver and the moving party. *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir.1984) ("Wencke II"). Those factors are: "(1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x. 338, 341 (5th Cir. 2011) (quoting Wencke II)). The movant bears the burden of demonstrating that the balance of factors support lifting the stay. *SEC v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 5832330, at *2 (D. Conn. Nov. 16, 2012); *United States v. Petters*, No. 08–5348 ADA/SJM, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008). None of these factors weigh in Southern Star's favor, nor does its conclusory assertion that the Properties are "of no value to the receivership." *Motion* at 8.

### 1.    The Court Should Preserve the Status Quo Regarding the Stay

"The first factor balances the receiver's interests with those of the moving party." *SEC v. Provident Royalties, L.L.C.*, No. 3:09-CV-1238-L, 2011 WL 2678840, at *2 (N.D. Tex. July 7, 2011) (citing *Stanford*, 424 Fed. App'x. at 341). In evaluating the first *Wenke* factor, courts focus on preserving the status quo with respect to the Receivership Estate's ownership and control over the subject property during the litigation stay. *See SEC v. Heartland Group Ventures, LLC*, No. 4:21-CV-01310-O-BP, 2023 WL 4157490, at *2–3 (N.D. Tex. May 18, 2023), report and recommendation adopted, No. 4:21-CV-01310-O-BP, 2023 WL 5333278 (N.D. Tex. Aug. 18, 2023) (rejecting motion to lift stay in favor of personal injury litigant, based

on preserving estate assets and preventing loss of receivership properties preserved through the stay); *see also Stanford*, 424 Fed. Appx. at 341 (first *Wencke* factor "balances the interests in preserving the receivership estate with the interests of the Appellants").   In *Provident Royalties,* this Court observed that the court-appointed receiver "is in the best position" to decide whether "litigation would interfere with the interests of the receivership."  *Provident Royalties, L.L.C.*, 2011 WL 2678840, at *2.   Here, the Receiver's own statement on this issue should be dispositive.   Moreover, if the Stay is lifted for one creditor, the floodgates will open for other creditors with far less persuasive claims than Southern Star—inundating the Receiver and the Court with motions to lift the Stay.

Likewise, Southern Star fails to demonstrate any substantial injury.  Although Southern Star points to the decreasing equity in the Properties, the Receiver disputes Southern Star's conclusion regarding the amount of equity or the existence of substantial harm.[5]  While the Receiver does not dispute equity is decreasing, he does dispute Southern Star's valuations and the amount of equity remaining.  For instance, the Receiver's appraisal for the Lynco Property (Southern Star refers to this as Wall009) lists the value at $1,590,000 while Southern Star says the value is only $1,210,000.  According to Southern Star, as of May 1, 2024, the outstanding balance on the note for the Lynco Property was $1,071,273.34.  Based on the Receiver's appraisal, over $500,000 in equity thus remains in the Property, which presents substantial value to the Receivership Estate.

Turning to the DJD Property, in a vacuum, Southern Star might be correct that the 1-acre parcel securing its note has negative equity.  However, this 1-acre parcel is connected to a total

---

[5] To be sure, the Receiver will continue evaluating net equity in Southern Star's Properties, and if he determines no equity exists and the best interests of the Receivership Estate are served by doing so, he will abandon those Properties.

of 127 acres owned by DJD (as shown in the diagram below) and contains a building and direct road access.



The Receiver's appraisal for the entire 127 acres is $2,040,000. When viewed as a whole, if the one-acre parcel is carved out, the value of the remaining 126 acres (and Southern Star's one-acre as well) are likely to be disproportionately impacted if the entire tract cannot be sold as a whole. Moreover, even if the one-acre parcel has negative equity, Southern Star's interests are served by increasing the value of its one-acre through a sale of the entire tract, so as to increase the likelihood of recovering more than the amount owed on Southern Star's note.

Southern Star fails to demonstrate substantial injury and its interests do not outweigh the Receiver's interests in preserving the status quo. At least until the Fifth Circuit decides Barton's

7

latest appeal of the Receivership Order, the Court should deny any motion seeking to lift the Stay.  If Barton's appeal is denied, sales of the properties approved by the Court should close quickly and the Receiver can then address the proper treatment for additional Receivership Properties—including the Lynco and DJD Properties.  If Barton's appeal is successful, the Stay will be abated, and Southern Star will be free to foreclose.

### 2.       Timing Does Not Support Lifting the Stay

Southern Star's arguments regarding timing are simply conclusions supported by the assertion that it should be permitted to foreclose, now, because the Receiver is not moving fast enough.  *Motion* pp. 8-9.  But the timing factor considers the tenure and *posture* of the receivership, not how many times and with what degree of insistence a creditor has asserted entitlement to foreclose in the face of a stay.  *See Byers,* 592 F.Supp.2d at 537 (timing factor weighed in favor of receiver during early months and sometimes years in receivership where lifting stay could disrupt the receiver's mandate to discover, organize, and understand estate assets); *Acorn Tech. Fund, L.P.*, 429 F.3d at 443–44 ("Far into a receivership, if a litigant demonstrates that harm will result from not being able to pursue a colorable meritorious claim," a stay should be lifted, while, "[o]n the other hand, very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties."); *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2011 WL 13180449 (N.D. Tex. May 6, 2011) (lifting a stay when the receivership was "relatively young" at "just over two years old"); *Schwartzman v. Rogue Int'l Talent Group, Inc.*, No. 12-5255, 2013 WL 460218, at *3 (E.D. Pa. Feb. 7, 2013) (denying motion to lift stay more than two years into the receivership because "the receivership is at an early stage and the Receiver is still collecting relevant information").  Further, as this Court has noted, the timing of the lifting a litigation stay

depends "on the particular circumstances of the case." *Provident Royalties, L.L.C.*, 2011 WL 2678840, at *3.

The particular circumstances of this case do not support lifting the stay. Southern Star avers that after 20 months the Receiver should have had ample time to make a decision regarding the Properties. Much of the time, however, including presently, progression in the Receivership has been hindered or effectively stayed by Barton's appeals. Thus, factually in posture, this Receivership is still in its early stages and this factor counsels against lifting the Stay.

**3.    The Merits of Southern Star's Claim Do Not Warrant Lifting the Stay**

As a situation that occurs in virtually every receivership, the Stay prohibited Southern Star from enforcing any claim against Receivership Property, including attempting to accelerate any indebtedness. *Receivership Order*, ¶ 32. C. Comparatively, the Receiver must protect, preserve, and maximize the value of *all* Receivership Property, for the interests of *all* potential claimants; not just one that seeks to elevate itself above all others, because it, like all others, has not received loan payments in the last year. While the Receiver does not, at least at this juncture, contest the validity of Southern Star's note and entitlement to be paid, in light of the additional considerations and factors addressed above, Southern Star's status as a lien creditor does not justify lifting the Stay. Further, while the Receiver appreciates the concessions and sales process proposed by Southern Star, for the same reasons the Receiver opposed the similar process when offered by McCormick, LLC, he opposes it here.[6]

Foreclosure sales rarely if ever generate any value above the lien which provides the basis for foreclosure. Thus, the foreclosure procedure suggested by Southern Star provides little hope of *any* recovery for the Receivership Estate, while an arms-length sale at market value,

---

[6] *See* Dkt. 463 at 8; *see also* Dkt. 477 at 2.

9

even if delayed again by Barton's invalid and improper appeals, will.  Allowing Southern Star to foreclose at this time, given these circumstances, would result in an inequitable distribution elevating Southern Star over every other creditor, secured and otherwise, in violation of the goals of the Receivership.  As the Court implicitly instructed when it included the Stay in the Receivership Order, Southern Star must continue to wait.  The Receiver will continue efforts to preserve the value of Receivership Properties and seeking to recover the maximum value for the Estate.  Because of the magnitude of the secured loans on all but one property, this likely means selling the properties to avoid the $2-$3 million in interest that accrues annually.  The Receiver will not, however, simply walk away from value to appease frustrated creditors.

## C.       Responding to Motions to Lift the Stay Continue to Burn Receivership Assets

As the Receiver has detailed in other filings, the Receivership Estate lacks substantial liquid assets to fund receivership expenses.[7]  The costs related to preparing a forensic accounting, dealing with creditors, properties, and taxes, as well as litigation expenses necessitated by Barton's opposition to virtually every motion or notice filed by the Receiver, continue to accrue.  Counsel for the Receiver communicated numerous times with counsel for Southern Star and explained that lifting the Stay was not at this juncture.  The Receiver also shared information regarding his appraisal with Southern Star.  While Southern Star's frustration is understandable, the Receiver requests that the Court counsel patience (and frugality) with respect to any future motions by any other creditors.  Fees spent in filing and responding to such motions do not serve creditors or the Receivership Estate.

The Receiver accordingly requests that the Court deny Southern Star's motion without prejudice.

---

[7] *See* Dkts 139, 456, 491.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## VERIFICATION

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

11