UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY BARTON, et al.<br><br>*Defendants*,<br><br>DJD LAND PARTNERS, LLC, and LDG001, LLC,<br><br>*Relief Defendants*. | § § § § § § § § § § § § § § § § § §    Civil Action No. 3:22-CV-2118-X |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Texas Republic Bank's ("TRB") motion for reconsideration of the Court's prior order regarding the Frisco Gate Property. (Doc. 457). Because the Court's order was not a final judgment, Federal Rule of Civil Procedure 54(b) governs the Court's analysis.[1] Under Rule 54(b), a "trial court is free to reconsider and reverse its decision for any reason it deems sufficient."[2] As such, TRB's motion for reconsideration is **DENIED.**

---

[1] *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018).

[2] *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up).

This Court has broad discretion regarding equitable issues at issue here.[3] Though TRB provides three reasons for reconsideration, the Court doesn't deem any of them sufficient. First, TRB argues that no settlement exists between Palisades-TC LLC ("Palisades") and the Receiver.[4] Both the Receiver and Palisades dispute this point.[5] As the Receiver points out, the Order Appointing Receiver authorized the Receiver to enter into settlements such as this one "without further Order of this Court."[6] So while court approval for the settlement wasn't required, the Receiver did address the agreement in his reply to his prior motion to ratify the orders regarding the Frisco Gate Property.[7] TRB's argument here doesn't move the needle such that would warrant reconsideration.

The Court is also dissuaded by TRB's second argument that "Palisades is judicially estopped from arguing its capital contribution should be treated as a secured loan."[8] TRB points to the bankruptcy proceeding of Dallas Real Estate Investors, LLC ("DREI") in which "Palisades claims to be a creditor of DREI and filed an unsecured claim against DREI for the very same $3,500,000 'preferred capital

---

[3] *See SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) ("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse"); *see also SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840.

[4] Doc. 457 at 3–4.

[5] *See* Docs. 467 at 6; 468 at 1–2 ("Notably, that settlement in which the Receiver agreed to pay Palisades $3.5 million from the closing, was nothing different than what the Receiver has been reporting as his intention in his quarterly reports as early as November 2022.").

[6] Doc. 467 at 6–7 (quoting Doc. 417).

[7] *See* Doc. 410 at 8, n. 13.

[8] Doc. 457 at 4–5.

contribution' Palisades made to acquire its 50% interest in DREI."[9] But Palisades doesn't argue it should be treated as a secured lender; rather, Palisades argues that its investment is a capital contribution.[10] The Receiver, on the other hand, contends that Palisades should be "treat[ed] . . . as an unsecured lender."[11] Palisades points out that the disagreement in characterization over Palisades's interest "has no impact on [TRB]" because neither the Receiver nor Palisades argue that Palisades has priority to TRB.[12] "The question in the pending dispute between [TRB] and the Receiver is simply how much interest [TRB] is entitled to receive to be fully paid off on its loan, something that only impacts the net proceeds to the Receiver."[13] Palisades's compromise (settlement) with the Receiver allows Palisades to recover only its principal from the sale proceeds; whereas, its capital contribution under the company agreement with Dallas Real Estate Lenders LLC entitles Palisades to "far more than the remainder of the proceeds leftover, which would leave the Receiver with nothing."[14] As such, the Court finds that allowing Palisades to recover its principal only from closing is in the best interest of the Receivership Estate because it would "foreclose Palisades'[s] objection to a sale and its assertion of a lien on the entirety of the sales proceeds."[15]

---

[9] *Id.*

[10] *See* Doc. 430 at 3–4.

[11] Doc. 376 at 14, n. 13.

[12] Doc. 430 at 4.

[13] *Id.*

[14] *Id.* at 3.

[15] *See* Doc. 410 at 8, n.13.

Finally, TRB argues that Palisades shouldn't be elevated to a secured status because of TRB's loan documents.[16] The deed of trust that secures payment of the Note between TRB and the Receivership Entity, FHC Acquisitions, LLC, requires that TRB receive "the full and timely payment of the Indebtedness."[17] The deed of trust defines indebtedness to include TRB's principal, interest, payments, and premiums.[18] TRB's issue is that, at closing, it only recovers its principal and interest accrued at the Standard Interest Rate at closing but has to wait until the claims process for any "Interest Delta" or additional amounts. But the Court's order does not stand in the way of TRB's loan documents. The Court's resolved this very point before. Under the Court's order, TRB is entitled to full and timely payment of its indebtedness—TRB receives its principal and interest accrued until closing. The prior order also required the Receiver to hold the total of any further amounts the Lender contends it is owed (including the "Interest Delta," and "Additional Amounts" such as penalties, attorney's fees, other costs) and provides such to the Receiver in an itemized list at least three days before closing.[19] What's more, the Receiver is ordered that he "shall not object" to any claim for the Interest Delta, "so long as such claim is correctly calculated."[20] So the Court doesn't buy TRB's argument that its loan documents are "eviscerate[d]" because the Receiver may object to its future claim of

---

[16] Doc. 457 at 5–6.

[17] *Id.* at 6.

[18] *Id.*

[19] Doc. 451 at 3.

[20] *Id.* at 4.

Additional Amounts.[21] Palisades isn't elevated above TRB, and it isn't even elevated to the status of TRB.

As with its discretion to decide issues related to administration of the Receivership Estate, the Court has broad discretion in resolving motions for reconsideration. "Even though the standard for evaluating a motion to reconsider under Rule 54(b) would appear to be less exacting than that imposed by Rules 59 and 60 . . . considerations similar to those under Rules 59 and 60 inform the Court's analysis."[22] Simply put, TRB's reasons aren't sufficient.

The Court stands behind its previous order that: stayed the accrual of any default or maturity rate interest on any note secured by the Frisco Gate Property, held that, at closing, TRB is entitled to all principal owed on the note and interest accrued through the date of closing at the Standard Interest Rate, held that Palisades is entitled to its principal only at closing, and permitted TRB to provide the Receiver with an itemized list of any amounts it contends it is owed.[23]

For these reasons, the Court **DENIES** Texas Republic Bank's motion for reconsideration.

**IT IS SO ORDERED** this 18th day of June, 2024.

---

[21] Doc. 457 at 6.

[22] *Dallas Cnty., Tex. V. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014) (O'Connor, J.) (cleaned up); *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (stating that under Rule 59(e), relief is available "to correct manifest errors of law or fact or to present newly discovered evidence" and that Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment").

[23] Doc. 451 at 2–3.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE