INITIAL:_____

## PROMISSORY NOTE

| | |
|---|---|
| **DATE:** | April 27, 2018 |
| **BORROWER:** | **JMJ Development LLC,**<br>**a Texas Limited Liability Company** |
| **BORROWER'S MAILING ADDRESS:** | 13901 Midway Rd Ste. 102,<br>Farmers Branch TX 75244-4388 |
| **LENDER:** | **TAMAMOI, LLC, a Delaware limited liability company** |
| **LENDER'S MAILING ADDRESS**<br>**(PLACE FOR PAYMENT):** | 5060 SW Philomath Blvd #363, Corvallis OR 97333 |
| **PRINCIPAL AMOUNT:** | $500,000 |
| **ANNUAL INTEREST RATE:** | Eleven Percent (11%) |
| **MATURITY DATE:** | April 26, 2019 |
| **ANNUAL INTEREST RATE**<br>**ON MATURED, UNPAID AMOUNTS:** | Lesser of: (a) eighteen percent (18%); or (b) the Highest Lawful Rate permitted by law. |

1. **TERMS OF PAYMENT (PRINCIPAL AND INTEREST):** Commencing June 1, 2018, monthly installments of accrued but unpaid interest shall be due and payable on the 1st day of each month after the date of this Note; then principal and accrued interest are due and payable on the Maturity Date. On the Maturity Date or upon the earlier maturity hereof, whether by acceleration or otherwise as provided in this Note or the Deed of Trust, any and all unpaid principal, together with all accrued but unpaid interest thereon shall be immediately, finally and fully due and payable. Interest shall begin to accrue on the entire principal balance from the date of execution of the documents.

2. **SECURITY FOR PAYMENT:** This Promissory Note (herein referred to as the "Note") is secured by Deed of Trust (herein referred to as the "Deed of Trust") of even date from Borrower to Ian Ghrist, Trustee, both of which cover that certain real property located in Dallas County, Texas, which is more particularly described as:

**SEE EXHIBIT A FOR LEGAL DESCRIPTION, more commonly known as 2830 E. Illinois Ave., Dallas TX 75216.**

3. **OTHER SECURITY FOR PAYMENT:** This loan is additionally secured by a personal guarantee from Tim Barton.

4. **PROMISE OF PAYMENT:** Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This Note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

1 of 4

5.    **DEFAULT:** If Borrower defaults in the payment of this Note or in the performance of any obligation in any instrument securing or collateral to this Note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the Note immediately due; provided, however, that the entire principal balance and accrued interest owing thereon shall not be so accelerated unless Borrower fails to cure any such default within ten (10) days, if a monetary default, or, within twenty (20) days if a nonmonetary default, following the receipt of written notice from Lender, or any subsequent holder of this Note, specifying the existence of any such default. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

6.    **LATE CHARGE:** At the option of Lender, Borrower shall pay a "late charge" in the amount of five percent (5%) of any installment on this Note when such installment is not paid within ten (10) days following the date such installment is due, in order to cover the additional expenses involved in handling delinquent payments.

7.    **SERVICING CHARGE:** Borrower shall pay a $40 per month servicing fee each month for the duration of the loan is borrower makes its payments through ACH auto-debit by servicer. For each month where Borrower does not authorize ACH auto-debit or where auto-debit is rejected, servicing fee shall be $100.

7.    **ATTORNEY'S FEES:** Borrower also promises to pay reasonable attorney's fees and court and other costs if this Note is placed in the hands of an attorney to collect or enforce the Note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the Note and will be secured by any security for payment.

8.    **PREPAYMENT:** Borrower must pay a minimum of six (6) months of interest payments to prepay this Note. After paying a minimum of six (6) months of interest payments, Borrower may prepay this Note in any amount at any time before the Maturity Date. Prepayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue.

9.    **Intentionally Deleted.**

10.    **FURTHER ASSURANCES AND CORRECTIONS:** From time to time, at the reasonable request of Lender, Borrower will: (i) promptly correct any defect, error or omission which may be discovered in the contents of this Note or in any other loan document or in the execution or acknowledgement thereof; (ii) execute, acknowledge, deliver, record and/or file (or cause to be executed, acknowledged, delivered, recorded and/or filed) such further documents and instruments (including, without limitation, further deeds of trust, security agreements, financing statements, continuation statements, and assignments of rents) and perform such further acts and provide further assurances as may be necessary, desirable or proper in Lender's reasonable opinion (a) to carry out more effectively the purposes of this Note and the other loan documents and the transactions contemplated hereunder and thereunder, (b) to confirm the rights created under this Note and the other loan documents, (c) to protect and further the validity, priority and enforceability of this Note and the other loan documents and the liens and security interests created thereby, and (d) to subject to the loan documents any portion of the Property intended by the terms of any one or more of the loan documents to be encumbered by the loan documents; and (iii) pay all costs in connection with any of the foregoing.

LOAN_TITLE_TAMAMOI_002

11.    **USURY SAVINGS:** It is expressly provided that in no event shall the aggregate of all interest paid or contracted to be paid to Lender by Borrower ever exceed the maximum amount of interest which may lawfully be charged by Lender on the principal balance of this Note from time to time advanced and remaining unpaid. It is expressly agreed that it is the intent of Lender and Borrower in the execution and delivery of this Note to contract in strict compliance with applicable usury laws. None of the terms of this Note shall ever be construed to create a contract to pay interest at a rate in excess of the Highest Lawful Rate. The term "Highest Lawful Rate" shall mean the maximum non-usurious rate of interest which may lawfully be charged the undersigned by Lender according to: (a) the higher of the "indicated rate ceiling" or the "quarterly ceiling" as of the date of this Note as defined in Chapter 303 of the Texas Finance Code as amended in effect at such time and which would be applicable to the indebtedness evidenced by this Note; or (b) under the laws of the United States, and the regulations promulgated thereunder or under other applicable law. In determining whether the loan any time contracted for, charged, or received from Borrower in connection with the loan evidenced by this Note is usurious under applicable law, all interest shall be amortized, prorated, allocated, and spread in equal parts during the period of the full stated term of the loan. However, in the event that this Note is paid in full by Borrower prior to the end of the term of this Note and in the event the interest received by the holder of this Note for the actual period of the existence of the loan exceeds the Highest Lawful Rate, the holder of this Note shall, either refund to Borrower the amount of such excess or credit the amount of such excess against any amounts owing by Borrower under this Note. In addition, if fulfillment of any provision hereof, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by applicable law, then, ipso facto, the obligation to fulfill shall be reduced to the limit of such validity, and if from any circumstance the holder thereof shall ever receive as interest an amount which would exceed the Highest Lawful Rate, such amount which would be excessive interest shall, at the option of Lender, be refunded to Borrower or be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest. The provisions of this paragraph shall supersede all other provisions of this Note.

12.    **LOAN PAYABLE AT MATURITY.** IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THIS NOTE WILL REQUIRE A "BALLOON" PAYMENT OF ALL UNPAID PRINCIPAL AND ACCRUED BUT UNPAID INTEREST ON THE MATURITY DATE. THE PRINCIPAL INDEBTEDNESS EVIDENCED BY THIS NOTE IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ACCRUED BUT UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS NOTE AT THAT TIME

13. **MISCELLANEOUS:**

(a) Borrower is responsible for all obligations represented by this Note.

(b) When the context requires, singular nouns and pronouns include the plural.

(c) If any provision of this Note conflicts with any provision of any loan agreement, the Deed of Trust, or security agreement of the same transaction between Lender and Borrower, the provisions of the Deed of Trust will govern to the extent of the conflict.

(d) This Note will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction.

**(signature on following page)**

3 of 4

LOAN_TITLE_TAMAMOI_003

INITIAL:_____

**BORROWER:**

**JMJ Development, LLC**

By: Tim Barton
Its: Manager

LOAN_TITLE_TAMAMOI_004

# Exhibit B

REPUBLIC TITLE OF TEXAS, INC.
GF #24-4051 WRO FF $ 62

3

201800113116
04/30/2018 02:48:48 PM    DT  1/11

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## DEED OF TRUST

### Terms

**DATE:** April 27, 2018

**GRANTOR: JMJ Development LLC, a Texas Limited Liability Company**

**GRANTOR'S MAILING ADDRESS:** 13901 Midway Rd Ste. 102, Farmers Branch TX 75244-4388

**TRUSTEE: IAN GHRIST**

**TRUSTEE'S MAILING ADDRESS:** 2735 Villa Creek Drive, Suite 140, Farmers Branch, Texas 75234

**LENDER: TAMAMOI, LLC, a Delaware Limited Liability Company**

**LENDER'S MAILING ADDRESS:** 5060 SW Philomath Blvd #363, Corvallis OR 97333

**NOTE:**

Date: April 27, 2018

Original principal amount: $500,000

Borrower: JMJ Development LLC, a Texas Limited Liability Company

Lender: **TAMAMOI, LLC, a Delaware Limited Liability Company**

Maturity date: April 26, 2019

**PROPERTY (INCLUDING ANY IMPROVEMENTS):**

**SEE ATTACHED EXHIBIT A FOR LEGAL DESCRIPTION. More commonly known as 2830 E. Illinois Ave., Dallas TX 75216.**

**OTHER EXCEPTIONS TO CONVEYANCE AND WARRANTY:**
This conveyance is made and accepted subject to any and all restrictions, reservations, covenants, conditions, rights of way, easements, municipal and other governmental zoning laws, regulations and ordinances, if any, of record in said county, to the extent (but not further) the same are valid and subsisting and affect title to the Property.

---

For value received and to secure payment of the Note, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Note and all other amounts

LOAN_TITLE_TAMAMOI_005

secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

**Clauses and Covenants**

**A.      Grantor's Obligations**

Grantor agrees to:

1.      keep the Property in good repair and condition;

2.      pay all taxes and assessments on the Property before delinquency, furnish to Lender annually, before taxes become delinquent, copies of tax receipts showing that all taxes on the property have been paid;

3.      defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

4.      maintain, in a form acceptable to Lender, an insurance policy that:

> a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Lender approves a smaller amount in writing;
>
> b. contains an 80 percent coinsurance clause;
>
> c. provides fire and extended coverage, including windstorm coverage;
>
> d. protects Lender with a standard mortgage clause;
>
> e. provides flood insurance at any time the Property is in a flood hazard area; and
>
> f. contains such other coverage as Lender may reasonably require;

5.      comply at all times with the requirements of the 80 percent coinsurance clause;

6.      deliver the insurance policy to Lender within ten days of the date of this deed of trust and deliver renewals to Lender at least fifteen days before expiration;

7.      furnish to Lender annually evidence of current paid-up insurance naming Lender as an insured;

8.      obey all laws, ordinances, and restrictive covenants applicable to the Property;

9.      keep any buildings occupied as required by the insurance policy; and

10. and      if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes abide by or cause to be abided by all prior lien instruments,

11.      obtain the written consent of Lender prior to entering into any pledge, security agreement, mortgage, or deed of trust covering any portion of the Property.

**B. Lender's Rights**

1. Lender may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2. If the proceeds of the Note are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

3. Lender may apply any proceeds received under the insurance policy either to reduce the Note or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the insurance proceeds available to Grantor for repairs.

4. Notwithstanding note terms to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor under the Note or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender under the Note, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5. If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6. Collateral Protection Insurance Notice: In accordance with the provisions of Section 307.052(a) of the Texas Finance Code, the Lender hereby notifies the Grantor as follows:

   a. the Grantor is required to:
      i. keep the collateral insured against damage in the amount the Lender specifies;

      ii. purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and

      iii. name the Lender as the person to be paid under the policy in the event of a loss;

   b. the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and

   c. if the Grantor fails to meet any requirement listed in Paragraph (a) or (b), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.

7. If there is a default on the Note or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may:

   a. declare the unpaid principal balance and earned interest on the Note immediately due;

b.    direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

c.    purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Note.

8.    Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

9.    If Grantor shall sell or convey all or any part of the Property or any interest therein, Lender may at Lender's option, declare the Note to be immediately due and payable, which option may be exercised at any time following such sale and/or conveyance.

## C. Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will:

1.    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.    sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3.    from the proceeds of the sale, pay, in this order:

a.    expenses of foreclosure, including a reasonable commission to Trustee;

b.    to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.    any amounts required by law to be paid before payment to Grantor; and

d.    to Grantor, any balance; and

4.    be indemnified, held harmless and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

## D. General Provisions

1.    If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.    Recitals in any trustee's deed conveying the Property will be presumed to be true.

3.    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

LOAN_TITLE_TAMAMOI_008

4.  This lien will remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the Property is released.

5.  If any portion of the Note cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6.  Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Note. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.  Grantor assigns to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Grantor warrants the validity and enforceability of the assignment. Grantor may as Lender's licensee collect rent and other income and receipts as long as Grantor is not in default under the Note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the Note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the Note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the Note or performance of this deed of trust, Lender may terminate Grantor's license to collect rent and other income and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations under the Note and this deed of trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

8.  Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9.  In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

10.  When the context requires, singular nouns and pronouns include the plural.

11.  The term *Note* includes all extensions and renewals of the Note and all amounts secured by this deed of trust.

LOAN_TITLE_TAMAMOI_009

12. This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

13. If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

14. Grantor and each surety, endorser, and guarantor of the Note waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

15. Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

16. If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

17. The term *Lender* includes any mortgage servicer for Lender.

18. Grantor represents that this deed of trust and the Note for $500,000.00 are given for the following purposes: funds advanced for business and investment purposes by Lender at Grantor's request and used in payment of the purchase price of the Property and for construction improvements.

**THIS DEED OF TRUST REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES**

**GRANTOR:**

JMJ Development LLC

By:_____

Tim Barton

Its. Manager

## ACKNOWLEDGMENT

STATE OF TEXAS                    §
COUNTY OF __Dallas__      §

BEFORE ME, the undersigned authority, on this day personally appeared Tim Barton known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in his capacity as manager of JMJ Development, LLC.

Given under my hand and seal of office this __27__ day of April, 2018.



NOTARY PUBLIC, STATE OF TEXAS

Printed Name: Saskya Bedoya

My Commission Expires: July 21, 2018

SASKYA BEDOYA
Notary Public, State of Texas
My Commission Expires
July 21, 2018

**AFTER RECORDING RETURN TO:**
Tamamoi LLC
5060 SW Philomath Blvd #363
Corvallis OR 97333

EXHIBIT "A"
Property Description

BEING a 6.46 acre tract of land situated in the R. F. Smith Survey, Abstract No. 1376 in the City of Dallas, Dallas County, Texas, and being a portion of that certain tract of land conveyed in Warranty Deed to Wilmer-Hutchins Independent School District recorded in Volume 2660, Page 450, Deed Records, Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2 inch iron rod set for the Northwest corner of said Wilmer-Hutchins Independent School District tract, said point being the intersection of the Northeast right-of-way line of Missouri-Kansas-Texas Railway Company of Texas (a 100' right-of-way) with the Southwest right-of-way line of Linfield Drive (a 50 right-of-way);

THENCE North 60 degrees 50 minutes 00 seconds East, along the common line of said Wilmer-Hutchins Independent School District tract, and the South right-of-way line of said Linfield Drive, a distance of 147.27 feet to a 1/2 inch iron rod set for corner, said point being in the intersection of the Southeast right-of-way line of Linfield Drive with the Southwest right-of-way line of Illinois Avenue (a variable width right-of-way);

THENCE South 68 degrees 54 minutes 01 second East along the common line of said Wilmer-Hutchins Independent School District tract, and the Southwest right-of-way line of said Illinois Avenue, a distance of 147.83 feet to a TX DOT Monument found for corner;

THENCE South 76 degrees 12 minutes 10 seconds East, continuing along the common line of said Wilmer-Hutchins Independent School District tract, and said Southwest right-of-way line of said Illinois Avenue, a distance of 38.87 feet to a TX DOT Monument found for corner, said point being the intersection of the Southwest right-of-way line of said Illinois Avenue with the Southwest right-of-way of May Forge Drive (a variable width right-of-way), same being the North corner of that certain tract of land dedicated to the State of Texas, by deed recorded in Volume 70021, Page 1241, of said Deed Records;

THENCE South 48 degrees 24 minutes 28 seconds East along the common line of said Wilmer-Hutchins Independent School District tract, and the South right-of-way line of said May Forge Drive, a distance of 75.51 feet to a DC DOT Monument found for corner;

THENCE South 56 degrees 02 minutes 40 seconds East, through the interior of said Wilmer-Hutchins Independent School District tract, and along the Southwest right-of-way line of said May Forge Drive, a distance of 328.14 feet to a DC DOT monument found for corner;

EXHIBIT "A", Page 1

LOAN_TITLE_TAMAMOI_012

THENCE South 30 degrees 53 minutes 07 seconds East, through the interior of said Wilmer-Hutchins Independent School District tract, and along said Southwest right-of-way of said May Forge Drive, a distance of 177.34 feet to a 1/2 inch iron rod set for corner, said point being the Southeast corner of the herein-described tract, same being the Southwest corner of said R.O.W. dedication as recorded in Volume 70021, Page 1241, same being in the East line of said Wilmer-Hutchins Independent School District tract, same being in the North line of a 12' alley, as dedicated on Linfield Park, an Addition to the City of Dallas, Dallas County, Texas, according to the map thereof recorded in Volume 17, Page 405, Map Records, Dallas County, Texas;

THENCE South 60 degrees 00 minutes 00 seconds West along the common line of said Wilmer-Hutchins Independent School District tract, and said 12 foot alley, a distance of 575.84 feet to a 1/2 inch iron rod set for corner from which a 1/2 inch iron rod bears South 88 degrees 18 minutes 34 seconds East 0.34 feet, said point being the Southwest corner of said Wilmer-Hutchins Independent School District tract same being the Northwest corner of said 12 foot alley, same being in the Southeast right-of-way line of aforesaid Missouri-Kansas-Texas Railway Company of Texas;

THENCE North 18 degrees 44 minutes 00 seconds West along the common line of said Wilmer-Hutchins Independent School District tract and said Missouri-Kansas-Texas Railway Company of Texas, a distance of 701.40 feet to the POINT OF BEGINNING, and containing 281,364 square feet or 6.46 acres of computed land, more or less.

SAVE AND EXCEPT that 0.185 acre tract of land designated as the Smith Family Cemetery in Agreed Final Judgment filed 11/30/2015, under Cause No. DC-15-05099, District Court of Dallas County, Texas as set out in Affidavit filed 05/31/2016, recorded in cc# 201600144377, Real Property Records, Dallas County, Texas and being further described as follows:

BEING a 0.185-acre tract of land in the Robinson F. Smith Survey, Abstract No. 1376, in The City of Dallas, Dallas County, Texas, and being situated in a 6.46-acre tract of land described in the Deed Without Warranty executed on the 21st day of July, 2010, by Adam Medrano, President of the Board of Trustees of the Dallas Independent School District to ADI Engineering, Inc. and filed on September 2, 2010, at County Clerk's File No. 201000225558 of the Official Public Records of Dallas County, Texas, and also being part of a 0.22-acre tract for the Family Grave Yard set off out of the land of the estate of Thomas and Polly Smith, deceased for the common use of their heirs as described and shown on the plat of the lands of Estate of Thomas and Polly Smith with their subdivisions as made by the Commissioners chosen by the heirs of said Smith to settle said estate and divide the lands thereof on May 19th, 1877 as surveyed by R. M. Cook, County Surveyor, as said plat and descriptions appear in Volume 36, at Page 301 of the Deed Records of Dallas County, Texas, said 0.185-acre tract of land being more particularly described as follows:

COMMENCING at a 1/2 inch steel rod with a red plastic cap stamped RPLS 3688 (Hugh E. Peiser, RPLS No. 3688) found on September 22, 2015, marking the intersection of the

EXHIBIT "A", Page 2

LOAN_TITLE_TAMAMOI_013

Southwesterly right-of-way line of Linfield Road (a fifty-foot right-of-way) with the Southwesterly right-of-way line of Illinois Avenue (a variable width right-of-way) and being the most Northerly corner of the 6.46-acre tract of land cited above and having coordinates of:

X = 2,503,711.23 feet, Y = 6,946,948.89 feet

THENCE South 69 degrees 59 minutes 41 seconds East with the Southwesterly right-of-way line of Illinois Avenue for a distance of 147.83 feet or 53.22 varas to the remnants of a concrete monument found on September 22, 2015;

THENCE South 77 degrees 17 minutes 50 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 38.87 feet or 13.99 varas;

THENCE South 49 degrees 30 minutes 08 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 6.46 feet or 2.33 varas to a point on the Northerly line of the Grave Yard tract for the POINT OF BEGINNING of the herein described 0.185-acre tract and having coordinates:

X = 2,503,893.02 feet, Y = 6,946,885.54 feet

THENCE South 49 degrees 30 minutes 08 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 69.05 feet or 24.86 varas to a 3 1/2 inch brass disk embedded in concrete and inscribed "TEXAS HIGHWAY DEPARTMENT R.O.W." found on September 22, 2015;

THENCE South 57 degrees 08 minutes 20 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 10.56 feet or 3.80 varas to a point on the Easterly line of the Grave Yard tract;

THENCE South 00 degrees 56 minutes 58 seconds East with said Easterly line of the Grave Yard tract for a distance of 60.94 feet or 21.94 varas to the Southeast corner thereof;

THENCE South 89 degrees 03 minutes 02 seconds West with the Southerly line of the Grave Yard tract for a distance of 85.83 feet or 30.90 varas to the Southwest corner thereof;

THENCE North 00 degrees 56 minutes 58 seconds West with the Westerly line of the Grave Yard tract for a distance of 112.53 feet or 40.51 varas to the Northwest corner thereof;

THENCE North 89 degrees 03 minutes 02 seconds East with the Northerly line of the Grave Yard tract for a distance of 25.30 feet or 9.11 varas to the PLACE OF BEGINNING and Containing 8,049 square feet or 0.185 acres of land.

EXHIBIT "A", Page 3

LOAN_TITLE_TAMAMOI_014

Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
04/30/2018 02:48:48 PM
$62.00



201800113116

LOAN_TITLE_TAMAMOI_015