Howard Marc Spector
TBA#00785023
Sarah M. Cox
TBA #24119316
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
hspector@spectorcox.com
sarah@spectorcox.com

**ATTORNEYS FOR**
**TAMAMOI, LLC AND 3820 ILLINOIS, LLC**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| | § | **CASE NO. 3:22-cv-2118-X** |
| v. | § § | |
| TIMOTHY BARTON, ET AL., | § § | |
| Defendants. | § | |

### DECLARATION OF JAMES RICHARDSON

I, James Richardson, state than I am over 18 years of age, and am authorized to make this declaration.

1.      I have care, custody and control over the books and records relating to the loans made by FDRE, Inc. and Tamamoi, LLC to JMJ Development, LLC. I also have custody and control over the books and records relating to the purchase by 3820 Illinois, LLC of the real property located at 3820 Illinois, Dallas, Texas.

2.      I make this declaration in support of Tamamoi and 3820 Illinois' Response in Support of the Receiver's Verified Motion to Ratify Settlement Agreement (the "Response").

Declaration of James Richardson                                                                                    Page    1

3.    I am the Manager of Tamamoi, LLC ("Tamamoi") and 3820 Illinois, LLC ("3820 Illinois", and together with Tamamoi, the "Tamamoi Parties"). I have reviewed all of the books and records for the Tamamoi Parties and I have personal knowledge of the facts contained herein. If called to testify, I would testify to such facts under oath.

### The 3820 Property

4.    On April 27, 2018, JMJ Development ("JMJ"), as borrower, executed a Promissory Note to Tamamoi in the amount of $500,000.00 to purchase the real property located at 3820 E Illinois Ave, Dallas, Texas (the "3820 Note"). The 3820 Note is attached to the Response as **Exhibit A.**

5.    The 3820 Note required JMJ to pay Tamamoi monthly installments of accrued but unpaid interest on the first day of each month beginning June 1, 2018, and continuing until the maturity date of April 26, 2019, at which time JMJ was required to pay Tamamoi all amounts then-outstanding.  To secure JMJ's payment and other obligations under the Note, JMJ executed a Deed of Trust (the "3820 Deed of Trust") for the benefit of Tamamoi, which conveyed the Property in trust to the Ian Ghrist ("Trustee").

6.    From the date the Note and Deed of Trust were executed, JMJ struggled to timely fulfill its payment and other obligations, and in fact, JMJ ultimately defaulted by failing to pay the full amount it owed under the Note by the original Maturity Date.

7.    Tamamoi and JMJ executed multiple extensions, first extending the maturity date of April 26, 2020, and then a second one to July 2, 2021. Partial payments were made at the times of both these extensions, but ultimately, JMJ continued to default on the 3820 Note.

8.      As of May 11, 2021, JMJ was still in monetary default, had not paid the 2020 ad valorem taxes on the Property, and had not delivered to Tamamoi proof of insurance as required by the Deed of Trust. Tamamoi sent JMJ notice of foreclosure sale on that date.

9.      On June 1, 2021, just moments before the foreclosure sale, JMJ made a partial payment toward its monetary default, but JMJ still had not paid the 2020 ad valorem taxes on the Property and had not delivered to Tamamoi proof of insurance as required by the Deed of Trust.

10.     Even though JMJ had not cured its entire monetary default and had not paid its ad valorem taxes or provided proof of insurance, Tamamoi agreed to give JMJ one last chance by instructing Tamamoi's attorney to notify JMJ that Tamamoi was passing the June 1st foreclosure sale. Despite passing this sale date, neither the Note nor the Deed of Trust were modified by the parties, as Tamamoi had not agreed and would not agree to grant any more extensions or modifications of the loan terms.

11.     As of June 15, 2021, when Tamamoi's attorney posted notice of the foreclosure sale at the courthouse, JMJ was in monetary default, still had not paid the 2020 ad valorem taxes on the Property and had not delivered to Tamamoi proof of insurance as required by the Deed of Trust.

12.     On June 17, 2021, JMJ made a partial payment toward its monetary default, but JMJ still had not paid the 2020 ad valorem taxes on the Property and had not delivered to Tamamoi proof of insurance as required by the Deed of Trust. Despite making this partial payment, JMJ did not ask Tamamoi (and Tamamoi did not agree) to extend the July 2nd Maturity Date. JMJ also did not ask Tamamoi (and Tamamoi did not agree) to reschedule the July 6th foreclosure sale. Tamamoi never represented to JMJ that this partial payment cured its default, and Tamamoi never waived its rights to enforce the Note and Deed of Trust as a result of JMJ's default.

13.  JMJ missed its July 1st interest payment and failed to pay the full balance owed under the Note and Deed of Trust by the July 2nd Maturity Date. Because JMJ had failed to cure its defaults (monetary or otherwise), had not sought from Tamamoi a continuance of the foreclosure sale, and had not otherwise reached an agreement with Tamamoi to modify or extend the Note and Deed of Trust, Tamamoi instructed Trustee to proceed with the foreclosure sale on July 6, 2021. Tamamoi purchased of the Property using a credit bid of $405,946.59, leaving a deficiency of $962.53.

14.  A true and correct copy of the foreclosure sale deed is attached to the Response as **Exhibit B**.

15.  On October 14, 2021, Tamamoi conveyed the Property to Buyer pursuant to a Special Warranty Deed. A true and correct copy of this deed is attached to the Response as **Exhibit C**.

16.  On December 22, 2021, Tamamoi paid both the 2020 and 2021 ad valorem taxes, along with all penalties and interest, assessed against the Property in the amount of $18,266.08. A true and correct copy of the statement I obtained from the Dallas County Web Site showing these two payments is attached to the Response as **Exhibit D**.

17.  Despite all of this, on March 7, 2022, JMJ filed suit against Movants in the 68th District Court for Dallas County, Texas, alleging (among other things) Tamamoi wrongfully foreclosed on the 3820 Property. JMJ also filed a notice of *lis pendens* against the Property in an effort to cloud title to the Property. The lis pendens is attached to the Response as **Exhibit E**.

18.  The Tamamoi Parties' Motion for Summary Judgment was filed on September 30, 2022, and set for hearing on November 7, 2022. Before the Motion could be heard, the Receiver was appointed and filed a Notice of Stay in the State Court Proceedings.

19.    The 3820 Property is in serious disrepair and is vacant. It has been completely stripped by vagrants and has water intrusion issues. **The 3820 Property poses a serious health and safety risk to the surrounding community.** These photos were taken on October 31, 2022, by a contractor hired by 3820 Illinois. In the year and a half since these photos were taken, the 3820 Property has only deteriorated further.






3820 Illinois is incurring significant costs to keep the 3820 Property secure. 3820 Illinois spends a minimum of $700 each month to avoid citations from the city. Illegal dumping on the 3820 Property is a recurring problem. 3820 Illinois installed a fence at a cost of $5,000, but it was ripped out of the ground and stolen. Vagrancy is a constant problem, requiring regular intervention. There are also other risks that 3820 cannot completely mitigate without destroying the building (such as the risk that a child enters the building without supervision, or that crimes might occur in the building).

20.    As of April 23, 2024, 3820 Illinois has spent $554,987.66 on the 3820 Property

a.   $405,946.59 – Credit bid for the 3820 Property at foreclosure

b.   $962.53 deficiency amount

c.   $26,603 in legal fees

d.   $31,512.97 Proprety Taxes

e.   $2,325.95 City of Dallas Fines

f.   $1,424.44 City of Dallas Utilities

g.   $86,212.18 Maintenance, cleanup and security of property

21.    As long as the Receiver cannot dismiss the Wrongful Foreclosure Lawsuit or release the *lis pendens*, 3820 Illinois incurs costs to maintain a property that it cannot sell or otherwise improve or even render safer to the surrounding community.

22.    The settlement is in the best interests of the Tamamoi Parties and the Receivership Estate. The Estate will not be forced to incur additional legal expenses to litigate the wrongful foreclosure claim. The Tamamoi Parties and the Receivership benefit from a complete resolution of all the issues relating to the 3820 Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June __18__, 2024.

_____
James Richardson