**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | §<br>§<br>§ | |
| *Plaintiff*, | §<br>§ | |
| **v.** | §<br>§ | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | §<br>§<br>§ | |
| *Defendants*, | § | |

**RECEIVER'S REPLY IN SUPPORT OF VERIFIED MOTION TO RATIFY
SETTLEMENT AGREEMENT WITH TAMAMOI, LLC AND 3820 ILLINOIS, LLC**

Respectfully submitted,

Charlene C. Koonce
  State Bar No. 11672850
  charlene@brownfoxlaw.com
Timothy B. Wells
  State Bar No. 24131941
  tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT...................................................................................................... 3

      A.    The Pendency of the Appeal Does Not Eliminate This Court's Obligation
            to Preserve the Value of the Estate (Rather Than the Status Quo). ........................ 3

      B.    The Court Retains Jurisdiction to Grant the Motion, Which Will Not
            "Expand the Scope of the Receiver's Authority." .................................................. 6

            1.    The Fifth Circuit Has Implicitly Determined that Jurisdiction to
                  Continue Administering the Estate Remains in this Court. ........................ 6

            2.    The "Nature of the Appeal" In an Appeal of a Receivership Order
                  Is Extremely Narrow............................................................................. 9

            3.    The Requested Relief Does Not Impermissibly Expand the
                  Receiver's Authority............................................................................. 11

      C.    The Court Should Ratify the Proposed Settlement, Which Is Necessary
            And Appropriate, Even Pre-Judgment.................................................................. 13

      D.    The Proposed Settlement is in the Best Interest of the Receivership ................... 15

      E.    28 U.S.C. §2001 Does Not Apply Here................................................................ 16

III.  CONCLUSION.................................................................................................. 17

**TABLE OF AUTHORITIES**

**Cases**

*Alice L. ex rel. R.L. v. Dusek,*
  492 F.3d 563 (5th Cir. 2007) ................................................................................ 6

*City of Cookville, Tenn. v. Upper Cumberland Elec. Membership Corp.,*
  484 F.3d 380 (6th Cir. 2007) .............................................................................. 11

*Coastal Corp. v. Tex. E. Corp.,*
  869 F.2d 817 (5th Cir. 1989) ........................................................................... 4, 12

*FTC v. Consumer Def., LLC,*
  No. 2:18-CV-30 JCM, 2019 WL 266287 (D. Nev. Jan. 18, 2019) .......................... 13

*Gordon v. Dadante,*
  336 Fed. App'x 540 (6th Cir. 2009) ...................................................................... 14

*Griggs v. Provident Consumer Disc. Co.,*
  459 U.S. 56, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982) .............................................. 4

*Hancock v. Chicago Title Ins. Co.,*
  No. 3:07-CV-1441, 2010 WL 3766695 (N.D. Tex. Sept. 28, 2010) .......................... 3

*In re Fort Worth Chamber of Commerce,*
  100 F.4th 528 (5th Cir. 2024) ........................................................................ 11, 12

*In re Pressman-Gutman Co.,*
  459 F.3d 383 (3d Cir. 2006) .................................................................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  No. C 07-01827 SI, 2013 WL 6055079 (N.D. Cal. Nov. 13, 2013) ........................... 4

*Netsphere, Inc. v. Baron,*
  799 F.3d 327 (5th Cir. 2015) ................................................................................. 9

*SEC v. Ahmed,*
  No. 20-4198, 2021 WL 1055187 (2d Cir. Mar. 11, 2021) ........................................ 4

*SEC v. Complete Bus. Sols. Group, Inc.,*
  44 F.4th 1326 (11th Cir. 2022) ............................................................................. 10

*SEC v. Kaleta,*
  530 Fed. App'x 360 (5th Cir. 2013) ...................................................................... 14

*SEC v. Kirkland,*
  No. 606CV-183-ORL-28KRS, 2006 WL 3333672 (M.D. Fla. Nov. 16, 2006) ........... 12

– **ii** –

*SEC v. Path Am., LLC*,
   No. C15-1350JLR, 2016 WL 1588384 (W.D. Wash. Apr. 20, 2016) ...................................... 13

*SEC v. Stanford Int'l Bank, Ltd.*,
   927 F.3d 830 (5th Cir. 2019) .............................................................................................. 14

*SEC v. TLC Investments & Trade Co.*,
   147 F. Supp. 2d 1031 (C.D. Cal. 2001) ............................................................................. 13

*Taylor v. Sterrett,*
   640 F.2d 663 (5th Cir.1981) ................................................................................................. 6

*United States Sec. & Exch. Comm'n v. Ahmed*,
   No. 3:15CV675 (JBA), 2020 WL 5951484 (D. Conn. Oct. 8, 2020) ...................................... 4

*United States v. Antiques Ltd. P'ship*,
   760 F.3d 668 (7th Cir. 2014) .............................................................................................. 10

*United States v. Leppo,*
   634 F.2d 101 (3d Cir. 1980) ................................................................................................. 3

*US v. Solco I, LLC*,
   962 F.3d 1244 (10th Cir. 2020) ............................................................................................ 9

## Rules

FED. R. CIV. P. 62 (c) ............................................................................................................... 10

FED. R. CIV. P. 62 (c)(1).............................................................................................................. 4

FED. R. CIV. P. 62 (d) ................................................................................................................. 4

## Codes

28 U.S.C. § 1292(a) .................................................................................................................. 9

28 U.S.C. § 1292(a)(2)............................................................................................................... 9

28 U.S.C.A. § 2001(b) ............................................................................................................. 13

TEX. PROP. CODE § 13.004....................................................................................................... 16

## Other Authorities

C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3949
   (1977)................................................................................................................................. 3

Cort Thomas as the court-appointed Receiver files this Reply in Support of his Verified Motion to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC and Brief in Support [Dkt. 494] (the "Motion") and addressing arguments raised in Barton's Response [Dkt.504] and respectfully shows the Court as follows.

## I.    **INTRODUCTION**

Barton's arguments are contrary to Congress' expressed intent regarding the effect of an appeal on the administration of a receivership. This Court is not divested of jurisdiction to approve the settlement at issue, and in so doing, this Court will not alter the "case on appeal."  Barton knows jurisdiction does not exist for an interlocutory appeal of any order entered with respect to administering the receivership estate, including the order requested pursuant to the Motion. Barton also knows that no stay exists during the pendency of his appeal of the Receivership Order,[1] unless the Court enters one.[2]  Likely based on the overwhelming weight of evidence that would defeat such a request, Barton did not request a stay but nonetheless seeks to obtain the equivalent by arguing this Court lacks jurisdiction to enter the order requested by the Receiver's Motion.  The statutes and governing principles, however, permit this Court to continue administering the Receivership Etate, including through entering orders that approve and ratify activities the Receivership Order expressly empowers the Receiver to undertake.

To be sure, if accepted, Barton's argument has broad and virtually unbounded consequences.  Although 28 U.S.C.§ 1292(a)(2) and Rule 62(c)(1) permit continued administration of a receivership estate during an interlocutory appeal absent a stay, following the logic of Barton's argument, any defendant displeased with being placed in receivership can nullify both the statute

---

[1] The Receivership Order is Dkt. 417.  Barton's Notice of Appeal is Dkt. 429.

[2] *See* FED. R. CIV. P. 62(c).

and the Rule through the appeal of a receivership order which, according to Barton, automatically divests the district court of jurisdiction to continue administering the receivership estate in any manner.  In this case and likely every other receivership matter, adhering to that logic could preclude hiring or paying employees whose employment is necessary to maintain habitability for third-party tenants (like those employed to manage the Amerigold Suites); negotiating or settling with  the IRS to prevent levy on accounts and assets due to unpaid taxes or penalties; contracting for repairs to property (like the Amerigold Suites); or as in the instant Motion, settling claims that have little merit but which burden a third-party regarding property that has been cited, numerous times, for health and safety hazards, to capture the value of the claims for the Estate.  Congress, the Fifth Circuit, and this Court have seen fit to preclude evasion of the rule of law and the resulting chaos and harm that would arise from such an automatic but unauthorized stay.

Moreover, despite Barton's best efforts to squeeze a square peg into a round hole by arguing that a release and settlement of claims is a sale of property within the scope of 28 U.S.C. § 2001, he is factually and legally incorrect.  Releasing a lis pendens merely eliminates *notice of a claim* against realty.  Neither the lis pendens itself nor its release equates to the sale of realty as is required to trigger that statute.  And contrary to Barton's assertion that the Receiver has not shown the transaction is necessary, the Receiver's motion is replete with examples—including the structural integrity of the building, vagrancy from a nearby homeless shelter, and ongoing illegal dumping—illustrating the necessity of ratifying this settlement agreement.  The Court should reject Barton's repeated, and repeatedly rejected, arguments.

## II.    ARGUMENT

**A.    The Pendency of the Appeal Does Not Eliminate This Court's Obligation to Preserve the Value of the Estate (Rather Than the Status Quo).**

Barton did not seek a stay in connection with his most recent appeal, either from this Court or the Fifth Circuit.  He should not obtain indirectly what he has been denied (or failed to seek) directly.  *See e.g., Hancock v. Chicago Title Ins. Co.*, No. 3:07-CV-1441, 2010 WL 3766695, at *4 (N.D. Tex. Sept. 28, 2010) (Denying motion to dismiss during pendency of interlocutory appeal, which would have enabled the plaintiffs to "obtain indirectly from this court what they could not secure directly from the Fifth Circuit," where appellate court had denied similar motion to dismiss the appeal); *see also United States v. Leppo,* 634 F.2d 101, 104 (3d Cir. 1980) ("This . . . judge-made rule [divestiture of jurisdiction during pendency of appeal is] designed to avoid confusion or waste of time that might flow from putting the same issues before two courts at the same time.  As Professor Moore has observed, *the rule "should not be employed to defeat its purpose or to induce needless paper shuffling.*") (quoting C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3949, at 358–59 (1977) (emphasis original to *Leppo*)).

Nonetheless, relying on the same authorities presented and rejected numerous times, Barton argues this Court must "preserve the status quo" while his appeal of the Receivership Order is pending.  The Fifth Circuit rejected this argument in denying several motions to stay the entire case as well as various proposed sales and settlements.[3]  This Court rejected the same argument in granting numerous motions by which the Receiver sought authority to sell property or approve settlements regarding different claims.[4]  Barton's regurgitated arguments are no more persuasive

---

[3] *See SEC v. Barton,* Appeal No. 22-11132 (the "First Appeal"), Dkt 05, Mem. Op., January 6, 2023; First Appeal, Dkt. 110-1, Mem. Op., June 8, 2023; First Appeal, Dkt. 132-2, Mem. Op., June 9, 2023.

[4] *See* Dkts. 119, 122, 159, 227, 265, 435, p. 18, and 470, p. 4; *see also* Dkts. 122, 265.

now than when first raised and do not warrant denying the Receiver's Motion. The Receiver accordingly incorporates, verbatim, his arguments regarding Barton's oft-repeated argument raised on pages 3-4 of the Response, including the specific arguments regarding the same cases Barton has cited numerous times.[5] *See also*, *e.g., United States Sec. & Exch. Comm'n v. Ahmed*, No. 3:15CV675 (JBA), 2020 WL 5951484, at *2 (D. Conn. Oct. 8, 2020) (declining to stay an order authorizing payment of receivership expenses during appeal of order authorizing payment because no direct appellate jurisdiction existed for the appeal and following the Second Circuit's denial of a stay during the appeal of the receivership order, it was "highly unlikely that the Court of Appeals would find that a derivative appeal seeking exercise of discretionary pendent appellate jurisdiction related to payments pursuant to this Order would fare any better.").[6]

Moreover, the necessity of preserving the status quo in the context of an appeal of an injunction and cases that rely on that requirement are inapposite to the interlocutory appeal of an order appointing a receiver. First, as discussed below, the scope of jurisdiction for an interlocutory appeal of an injunction differs markedly from jurisdiction for an interlocutory appeal of an order appointing a receiver. Second, an injunction is entered for the purpose of preserving the status quo,

---

[5] *See* Dkt. 435, Receiver's Reply To Defendant Timothy Barton's Consolidated Opposition To Receiver's Verified Motions For Authorization To Sell Three Receivership Properties. Quoting some of those arguments here, "[N]one of the cases cited by Barton in support of this argument involves the limited appeal of an order appointing a receiver. Such an appeal *does not* stay the order appointing a receiver and is likewise unbounded by the further limit of a district court's authority over an injunction during the pendency of a related appeal. *See* FED. R. CIV. P. 62 (c)(1), and (d). Instead, *Coastal Corporation* discussed a district court's authority to *dissolve* an injunction while an appeal was pending. *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 819 (5th Cir. 1989) (Discussing Rule 62(c)(1) and (d), and the district court's authority to dissolve an injunction pending an appeal of the injunction). *Griggs* involved an order denying an order to alter or amend a final judgment while that order was being appealed. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 57, 103 S. Ct. 400, 401, 74 L. Ed. 2d 225 (1982). And *In re TFT-LCD* discussed a motion to release funds held in escrow during the pendency of an appeal. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 07-01827 SI, 2013 WL 6055079, at *1 (N.D. Cal. Nov. 13, 2013) ("LFG now moves the Court to release the $28.2 million held in the escrow fund so that, when LFG requests the sheriff to levy the account, the bank will permit payment from the escrow account.")

[6] The Second Circuit subsequently dismissed the appeal of the order authorizing payment of receivership expenses for lack of jurisdiction. *SEC v. Ahmed*, No. 20-4198, 2021 WL 1055187, at *1 (2d Cir. Mar. 11, 2021).

– 4 –

based on facts and claims that justify such preservation. Thus, an expectation exists at the outset of such a case that the status quo can, will, and should be maintained during the pendency of the case, including an appeal.[7]

In contrast, the purpose of an order appointing a receiver is preserving the value of the assets in the Receivership Estate by establishing the Court's in rem possession and control over the Receivership Estate.[8] Preserving value, particularly where third-party rights and interests like those of Tamamoi are also involved, requires continual active and reactive supervision. Thus, appeal of an order appointing a receiver does not require and indeed would rarely permit, maintenance of the status quo.

Even if "preserving the status quo" was the governing standard, however, the Court would still possess jurisdiction to grant the Motion. The status quo based on the Receivership Order, is a receiver empowered to:

> "[T]ransfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.";

> "[T]o investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.[9]

---

[7] Barton's appeal of the Preliminary Injunction (the "Injunction") does not necessitate preserving the status quo with respect to management of the Receivership Estate, because the Injunction enjoins and freezes only entities and assets that are not in receivership, and nothing about the Motion impacts the entities and assets included within the scope of the Injunction. *See* Dkt. 418, p. 7 ("All funds, property, or other assets (the "Freeze Assets") of any entity that Barton directly or indirectly controls that is not placed in receivership are hereby frozen until further order of this Court. Barton and any other person or entity with direct or indirect control over any Freeze Assets are preliminarily enjoined from transferring, selling, dissipating, assigning, concealing, pledging, withdrawing, alienating, encumbering, incurring debt upon, disposing of, or diminishing the value of any Freeze Asset.").

[8] *See* Dkt. 417 ("WHEREAS the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities (defined below)").

[9] Dkt. 417, ¶ 39; 44.

Barton's pending appeal of the Receivership Order does not mandate preserving the status quo, but even if it did, the Court would still be authorized to grant the Motion and approve the settlement.

**B.    The Court Retains Jurisdiction to Grant the Motion, Which Will Not "Expand the Scope of the Receiver's Authority."**

In the second verse of the same song, Barton argues that this Court lacks "jurisdiction to modify the order and expand the scope of the Receiver's authority" while the Receivership Order is on appeal.[10]  The argument is incorrect from every perspective.

The scope of a jurisdictional divestiture during an interlocutory appeal depends on the "nature of the appeal."  *Alice L. ex rel. R.L. v. Dusek,* 492 F.3d 563, 564–65 (5th Cir. 2007) (per curiam).  Although the Fifth Circuit has not created a bright-line definition for the "nature of the appeal," the narrow jurisdictional basis for Barton's appeal, the Fifth Circuit's orders in this case and others, and Barton's own motions demonstrate that orders by which the Court administers the Receivership Estate during an interlocutory appeal of the Receivership Order are well-within this Court's continuing jurisdiction.

**1.    The Fifth Circuit Has Implicitly Determined that Jurisdiction to Continue Administering the Estate Remains in this Court.**

During the pendency of an interlocutory appeal, a district court "may still proceed with matters not involved in the appeal."  *Taylor v. Sterrett,* 640 F.2d 663, 667–68 (5th Cir.1981); *Alice L. ex rel. R.L.,* 492 F.3d at 564–65.  In denying Barton's repeated motions to stay during the pendency of his appeal of the first Receivership Order, the Fifth Circuit necessarily concluded that continued administration of the Receivership Estate was not "a matter involved in [that] appeal."  *See* First Appeal, Dkt 05, Mem. Op., January 6, 2023 (denying Barton's motion to stay order

---

[10] *Response*, p. 4.

appointing receiver, pending appeal and alternative motion to stay "components" of that order and other orders that became part of it, including orders authorizing sale of property); First Appeal, Dkt. 110-1, Mem. Op., June 8, 2023 (denying motion for partial stay, which sought, among other things, to suspend the receiver's power to sell the assets of Receivership Entities and stay the Receiver's ability to undertake receivership activities that go beyond caring for the seized assets); First Appeal, Dkt. 132-2, Mem. Op., June 9, 2023 (denying similar motion to stay transfer of possession of Turtle Creek Property, following Barton's correction of motion and certification that revised facts were true and correct, and carrying the remainder of the motion to stay with the case). In none of these orders did the Fifth Circuit even hint that the interlocutory appeal divested this court of jurisdiction to continue activities that Court and this one declined to stay. Instead, the Fifth Circuit implicitly concluded otherwise in denying the stays requested by Barton and in expressly "carrying" part of the last motion with the appeal.  Had the jurisdictional divestiture Barton now relies on occurred, the issues encompassed by Barton's requested stays would already have been included in the appeal and the Fifth Circuit would have granted Barton's motions to stay to preserve its ability to render meaningful relief in the appeal.

The further treatment of Barton's efforts to stay the entire receivership in the Fifth Circuit's disposition of the first appeal reveals the same jurisdictional posture. On June 28, 2023, the Fifth Circuit vacated the first Receivership Order, and separately from the questions implicated by that appeal, also considered Barton's "carried" motion to stay. First Appeal, Dkt. 132-1, Opinion, June 28, 2023 (granting in part, Barton's motion to stay the Receiver's power to sell or dispose of assets belonging to Receivership Entities until the effective date of the vacatur, unless a new Receivership Order was entered in the interim).  Similarly, on August 24, 2023, the Fifth Circuit denied Barton's motion for expansion of stay pending appeal and motion to enforce stay, in which Barton had

complained that the Receiver continued, among other things, "spending estate resources on a forensic accounting investigation. . . , to negotiate releases of corporate transactional rights to third parties, . . . [and] even spending time arranging sales of real property." First Appeal, Dkt. 147-2, Mem. Op., August 24, 2023. On August 31, 2023, the Fifth Circuit vacated its June 28, 2023 Opinion and changed the scope of the stay, but still restricted the stay only to activities in furtherance of property sales during the 90 days in which the vacatur was stayed, unless a new Receivership Order was entered in that time-period. First Appeal, Opinion, Dkt. 150-1, August 31, 2023. As with the Fifth Circuit's prior memorandum orders denying Barton's interim motions to stay, the Opinion in the appeal addressed the stay separately based on Baton's motion to stay rather than any jurisdictional divestiture and only granted a partial stay while the status of a new Receivership Order was uncertain.

The current appeal of the new Receivership Order is no different than the First Appeal, except that Barton includes orders for which no jurisdiction exists[11] and has not sought *any* stay. The appellate court is thus certainly not "carrying" with the appeal any non-existent requested stay.

Barton's serial motions to stay filed in the Fifth Circuit demonstrate that he did not believe this Court was divested of jurisdiction and that he was required to obtain a stay to preclude this Court's continued administration of the Receivership Estate. The Fifth Circuit's denial of Barton's motions for stay support what Barton already knows: the pending interlocutory appeal of an order appointing a receiver does not stay administration of the receivership, indirectly through a jurisdictional divestiture.

---

[11] *See SEC v. Barton,* Appeal No. 22-11237, Dkt. 22, Motion to Consolidate Appeals.

**2.    The "Nature of the Appeal" In an Appeal of a Receivership Order Is Extremely Narrow.**

Even if the Fifth Circuit had not already rejected Barton's argument, the scope and "nature of" an interlocutory appeal of an order appointing a receiver mandates the same conclusion.  First, Congress has carefully limited the scope of an interlocutory appeal involving a receivership order. With two inapplicable exceptions, jurisdiction for such an appeal is strictly limited to the order appointing the receiver and thus excludes orders necessary to administer the receivership estate.[12] 28 U.S.C. § 1292(a)(2);[13] *US v. Solco I, LLC*, 962 F.3d 1244, 1250 (10th Cir. 2020) ("Courts narrowly construe § 1292(a)(2) 'to permit appeals only from the three discrete categories of receivership orders specified in the statute, namely [1] orders appointing a receiver, [2] orders refusing to wind up a receivership, and [3] orders refusing to take steps to accomplish the purposes of winding up a receivership.'") (quoting *In re Pressman-Gutman Co.*, 459 F.3d 383, 393 (3d Cir. 2006)); *Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015). Orders "entered in the normal course of a receivership," for instance orders approving settlements, do not fall within the jurisdictional scope of section 1292(a)(2).  *Netsphere*, 799 F.3d at at 332.  As recently observed by the Eleventh Circuit, the difference between 28 U.S.C. §§ 1292(a)(2) and 1292(a)(1) reveal the different treatment afforded interlocutory appeals of orders related to injunctions and orders related to receiverships:

---

[12] For the same reason, Barton's appeal of the "Sale Orders," Dkts. 436, 437, 438, and Order granting the Receiver's Blessing Motion, Dkt. 419, are improper and unsupported by appellate jurisdiction.

[13] "(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court; (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property; (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a).

"That provision [1292(a)(1)] more broadly confers jurisdiction over orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.' 28 U.S.C. § 1292(a)(1). It thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022). "To conclude otherwise would mean that virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable. Such a piecemeal approach to the appellate process would be disruptive and costly, both to the parties and the courts." *Id.* at 1332–33 (internal quotation omitted); *see also United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 671–72 (7th Cir. 2014) (concluding no jurisdiction existed over order approving receiver's sale of property, because "that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals."). Thus, the nature of Barton's appeal *cannot* include "mid-stream" orders such as the one requested by the Receiver in the instant Motion.

Second, Congress also exempted interlocutory appeals of receivership orders from any automatic stay that would otherwise arise during an appeal. FED. R. CIV. P. 62(c) ("Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: (1) an interlocutory or final judgment in an action for an injunction or receivership."). Surely Congress did not intend an appellant to obtain indirectly, by arguing for an all-encompassing interpretation of the "nature of the case on appeal," what Congress expressly withheld pursuant to Rule 62(c) and 28 U.S.C. § 1292(a)(2).

Barton nonetheless argues, essentially, that *In re Fort Worth Chamber of Commerce* creates a blanket rule precluding the relief Barton did not seek to stay. In *Fort Worth Chamber of*

– 10 –

*Commerce*, the Fifth Circuit determined that a district court had abused its discretion by transferring a case out of the district while the appeal of the denial of a preliminary injunction was pending. *In re Fort Worth Chamber of Commerce,* 100 F.4th 528, 531 (5th Cir. 2024). In reaching that conclusion, the Court expressly considered the breadth of the "case on appeal," over which the district court was divested of jurisdiction," and concluded the district court's order transferring the case to a new district would "frustrate" the appellate court's "ability to provide meaningful relief" because the appellate court "would have no case to review." *Id.* at 536.

In comparison, nothing about continued administration of the Receivership Estate, even authorization to convert an inchoate claim or an interest in real property into cash so as to preserve the value of both assets, frustrates the appellate court's ability to provide meaningful relief in the pending appeal. As it did when it vacated the first Receivership Order and despite this Court's interim approval of numerous settlements and orders authorizing the sale of realty, the appellate court can resolve Barton's pending appeal if it determines error occurred in entering the new Receivership Order.

### 3. The Requested Relief Does Not Impermissibly Expand the Receiver's Authority.

Barton's incorrect assertion that a settlement and compromise of a claim regarding which a lis pendens has been filed is a sale of realty within the scope of 28 U.S.C. § 2001 is debunked below. Even if he was correct in that refrain, however, Barton's argument that approving the sale of realty impermissibly expands the Receiver's authority lacks merit.

First, the argument at p. 4 of the Response regarding an absence of jurisdiction, supported only by an "e.g." cite to a Sixth Circuit case,[14] is nothing more than a repackaged assertion that

---

[14] *City of Cookville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2007).

the Court lacks jurisdiction to alter the case on appeal.  As discussed above, that argument should be rejected.   Second, the case cited regarding jurisdiction to continue administering the Receivership Order,  *Fort Worth Chamber of Commerce,* deals with a final judgment rather than an interlocutory one, and again, does not involve a Receivership Order. *See* 100 F.4th at 531 (concluding a trial court lacked jurisdiction to issue an injunction that expanded a final judgment by ordering one party to compensate the other for electric service related to property annexed pursuant to the judgment on appeal, where the trial court had refused to reach the issue of payment for electrical services in the judgment).

Likewise, *SEC v. Kirkland*, a 2006 case from the middle district of Florida that has never been cited by any other court, lends no support.  The discussion about approving a sale was *dicta*, because the only motion before the Court sought to lower the listing price of certain property.  *SEC v. Kirkland*, No. 606CV-183-ORL-28KRS, 2006 WL 3333672, at *1–2 (M.D. Fla. Nov. 16, 2006). Further, although a Receivership Order and an order expanding a Receivership Order were the subject of a pending appeal, the *Kirkland* Court considered the permissibility of altering an injunction on appeal rather than the scope of an appeal involving a Receivership Order.  *Id.* Finally, the opinion relied on *Coastal Corporation*, which as discussed above, involved a district court's authority to *dissolve* an injunction while an appeal was pending. *Coastal Corp.*, 869 F.2d at 819.

This Court has already empowered the Receiver, upon the Court's further orders pursuant to the applicable statutory processes, to settle claims (the activity at issue in the instant Motion), and sell property.[15] The necessity of the Court's further approval of such sales does not reflect

---

[15] Dkt. 417, ¶ 40; 41 ("Subject to Paragraph 42 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of

authority absent from the Receivership Order which would require an "expansion" of the Order, but rather, recognition that where the statute applies, the Court must approve such a sale. *See* 28 U.S.C. § 2001(b).[16] Likewise, ratification of a settlement the Receiver was authorized to enter has absolutely no impact on the scope of the Receivership Order or the Receiver's authority.

**C.  The Court Should Ratify the Proposed Settlement, Which Is Necessary And Appropriate, Even Pre-Judgment**

In another oft-repeated but never accepted argument, Barton contends the Court should not ratify the Settlement Agreement because no final judgment has been entered. That is not, however, the law. Receivership courts are permitted to exercise authorize sale of receivership assets before final judgement. *See FTC v. Consumer Def., LLC*, No. 2:18-CV-30 JCM, 2019 WL 266287, at *3 (D. Nev. Jan. 18, 2019) ("Courts regularly . . . authorize the sale of those [frozen] assets prior to finding liability in order to preserve the value of the estate."); *SEC v. Path Am., LLC*, No. C15-1350JLR, 2016 WL 1588384, at *5 (W.D. Wash. Apr. 20, 2016) (authorizing pre-judgment sale of real estate assets, due to high costs of maintaining "stasis," impending expiration of master use permits necessary for development, and timeline for a third-party purchaser to comply with building requirements); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) ("[L]iquidation . . ., prior to entry of judgment, is appropriate because the evidence  . .

---

the true and proper value of such real property." "41. Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.").

[16] "After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale." 28 U.S.C.A. § 2001(b).

. demonstrated that the . . . entities' liabilities were greater than their assets and . . . ongoing management alone will drain money out of the estate . . . that otherwise could be returned to investors."). Likewise, district courts possess discretion to approve settlements regarding estate assets "provided that the settlements are fair and equitable and in the best interests of the estate." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). As the Fifth Circuit explained, "no federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *SEC v. Kaleta*, 530 Fed. App'x 360, 362 (5th Cir. 2013) (quoting *Gordon v. Dadante*, 336 Fed. App'x 540, 549 (6th Cir. 2009)). Absent a clear showing of an abuse of discretion, a district court's approval of a settlement will not be overturned. *Stanford*, 927 F.3d 830 at 839. Barton's argument to the contrary rests on inapplicable cases, and present nothing more than a self-serving legal fiction.

Similarly, Barton contends there is no "urgency" or "special circumstances" that justify ratifying this settlement. As the Receiver has explained, repeatedly, the Receivership Estate is cash starved. It cannot pay taxes owed on properties, fees owed to accountants, or fees owed to the Receiver and his law firm.[17] And only because the litigation stay included in the Receivership Order excuses paying the lender is it able to keep the dilapidated Amerigold Suites patched together.[18] Any cash that comes into the Receivership Estate is quickly spent catching up on outstanding bills.

Moreover, as the Receiver explained in his Verified Motion, the Property poses numerous health and safety concerns.[19] In addition to ongoing illegal dumping, a decrepit structure sits on

---

[17] *See* Dkt. 491 at 52–53.

[18] *See* Dkts. 373, 456, 491.

[19] Dkt. 494 at 4.

the Property and serious concerns exist regarding the structural integrity of the building. Adding to this concern, vagrants from a nearby homeless shelter often wander onto the Property and frequently reside in the structure during bad weather.[20]  To mitigate injuries, a chain link fence was installed surrounding the Property but was almost immediate torn down.  Absent ratification of the Settlement Agreement, Tamamoi has limited options to fully mitigate these health and safety concerns, which illustrates a clear urgency and special circumstance absent in other Receivership Properties.

**D.    The Proposed Settlement is in the Best Interest of the Receivership**

As he has done throughout this case, Barton's Response presents a pie-in-the-sky projection about setting aside the foreclosure sale already conducted.  The reality, however, is far different. As reflected in the Receiver's Verified Motion, through Receivership Entity JMJ Development, LLC, Bartton signed a note in 2018 (the "Note"). Prior to the July 2021 foreclosure sale, JMJ had defaulted on the Note numerous times and was in default due at the time of the foreclosure based on missed loan payments and unpaid property taxes.  But, to prevail on its wrongful foreclosure, breach of contract, trespass to title, fraudulent inducement, fraudulent transfer, and conspiracy claims asserted against Tamamoi, JMJ would need to demonstrate that Tamamoi's foreclosure was improper.[21]   After thoroughly investigating and reviewing the pleadings and evidence regarding the claims, the Receiver determined JMJ would not likely be able to satisfy its evidentiary burden, and thus following the expense of trial, JMJ would neither prevail nor recover.  Further, even if JMJ miraculously prevailed, the costs incident to trial could

---

[20] *Id.*

[21] *BAPA Brooklyn 2004, LLC v. Michael A. & Maria D. Twiehaus Revocable Living Tr.*, No. 05-21-00180-CV, 2022 WL 2526975, at *2 (Tex. App.—Dallas July 7, 2022, no pet.) ("The elements of a wrongful foreclosure are (1) defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price.").

– 15 –

render any recovery negligible.[22] Thus, the Receiver determined that spending Receivership Assets to pursue the pending but stayed State Court Litigation was neither justified nor reasonable.

Based on a fraudulent transfer theory available to JMJ because of the Receivership, the Receiver is able to recover $75,000 from the approximately $175,000 in interest payments required under the Note made by several Receivership Entities. Without the Receiver's unique position to recover these funds, Barton and JMJ would likely not have recovered anything.

### E.   28 U.S.C. §2001 Does Not Apply Here

As this court has already held multiple times, 28 U.S.C. § 2001,[23] which governs the sale of real property by a receiver, does not apply to settlement agreements or contractual compromises *unless a sale is involved*.[24]  Pursuant to the Settlement Agreement, the Receiver is only settling claims, dismissing a lawsuit, and releasing a lis pendens; he has not *sold* an interest in anything, as is necessary for the statute to apply.  A lis pendens is not an interest in real property but rather *notice of a claim* against realty. *See* TEX. PROP. CODE § 13.004 ("[a] recorded lis pendens is notice to the world of its contents.").  Cases discussing oil and gas leases and participation interests do not convert such a lis pendens, as existed in connection with the Property, *to a sale of real estate.* Nowhere and in no way does the Statute encompass settlement agreements that *compromise* interests in or even claims to realty.  Such a transaction, including the Settlement Agreement presented to the Court in the Motion, is simply not a *sale.* Presumably, the Statute's clarity explains

---

[22] Barton's assertion that the Property is valued at $1 million illustrates this point. According to the Dallas Central Appraisal District ("DCAD"), the value of the Property is $275,000. *See* Dallas Central Appraisal District, https://www.dallascad.org/AcctDetailCom.aspx?ID=00000513148000000 (last visited June 17, 2024). While the DCAD appraisal may be somewhat lower than sales value, it is highly unlikely that DCAD's appraisal is inaccurate by nearly a multiple of four.

[23] "Any realty or interest therein *sold under any order or decree of any court* of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs." 28 U.S.C. §2001(a) (emphasis added).

[24] *See* Dkts. 109, 163.

the absence of authorities interpreting its limited application, including the construction Barton seeks, for any *transaction* involving any interest in real estate. Indeed, the requirements of subsection (b) regarding appraisals and appraisers buttresses application solely to *sales,*[25] since settlement agreements are not generally subject to "appraisal" by "appraisers." The statute has no application.

### III. CONCLUSION

Authorizing continued performance of the duties assigned to the Receiver does not interfere with the appellate court's ability to decide whether this Court acted within its discretion and in accordance with governing legal standards by entering a new Receivership Order. Instead, approving a settlement like the one at issue in this Motion merely converts the form of an inchoate claim into cash, without impacting the "status of the case" in the appellate court. Moreover, ratifying the Settlement Agreement is in the best interest of the Receivership Estate because the claims at issue (1) have little chance of success; and the (2) the settlement of the Receiver's fraudulent transfer claim nonetheless result in a substantial payment to the cash-starved Receivership Estate. Additionally, the settlement allows the owners to address the numerous health and safety concerns that persist on a property that cannot be sold and into which funds will not be invested, while the lis pendens clouds title.

The Receiver respectfully requests the Court ratify the Settlement Agreement with the Tamamoi Parties, lift the litigation stay in the State Court Litigation for the limited purpose of dismissing the case, and further grant the Receiver such other and further relief to which he may be justly entitled.

---

[25] *See* 28 U.S.C. § 2001(b) ("Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value.").

– 17 –

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

**– 18 –**