## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | No. 3:22-CV-2118-X |
| TIMOTHY LYNCH BARTON | § § | Hearing Requested |
| CARNEGIE DEVELOPMENT, LLC | § | |
| WALL007, LLC | § | |
| WALL009, LLC | § | |
| WALL010, LLC | § | |
| WALL011, LLC | § | |
| WALL012, LLC | § | |
| WALL016, LLC | § | |
| WALL017, LLC | § | |
| WALL018, LLC | § | |
| WALL019, LLC | § | |
| HAOQIANG FU (a/k/a MICHAEL FU) | § | |
| STEPHEN T. WALL | § § | |
| Defendants, | § § | |
| DJD LAND PARTNERS, LLC | § | |
| LDG001, LLC | § § | |
| Relief Defendants. | § | |

**DEFENDANT BARTON'S RESPONSE IN OPPOSITION TO RECEIVER'S VERIFIED MOTION FOR APPOINTMENT OF APPRAISERS, APPROVAL OF APPRAISALS, APPROVAL HEARING, AND APPROVAL OF SALE OF AMERIGOLD SUITES**

Defendant Timothy Barton files this Response in opposition to the Receiver's Verified Motion for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites [ECF No. 500], and requests a hearing on this matter, as follows.

## I.       INTRODUCTION

This Court should deny the Receiver's request to permanently dispose of the receivership estate's assets, including the property at issue here, while the United States Court of Appeals for the Fifth Circuit actively considers the legality of his appointment.  Such a disposition is inequitable, unnecessary, and not in the best interests of the estate (nor is it in the best interests of the lenders who are the subject matter of this litigation or the Defendant).  Moreover, this Court lacks jurisdiction to approve it.

The Receiver comes to the Court seeking to liquidate a valuable and revenue-generating apartment complex.  This facility is colloquially called the Amerigold Suites, so named because it was converted into apartments from a long-term stay hotel by the same name.  It was purchased by one of the Defendant's businesses—Goldmark Hospitality LLC, from which no Chinese funds were paid—in 2005, seventeen years before the initiation of this case.

Rather than simply safeguarding this asset, while the underlying merits case is litigated, the Receiver seeks to permanently change the status quo of the property and sell it to a third party. The Receiver makes this proposal even though the property could be fully occupied and sustain itself during the litigation through rental revenues.

Nor is it clear that this sale is even feasible, which begs the question of why the Receiver is expending what he claims to be scarce receivership resources to pursue it in the first place.  As the Receiver notes at the very outset of his Motion, the two previous attempts to sell off Amerigold Suites had to be abandoned because "the title company would not close on the sale" as a direct result of Mr. Barton's legal challenges to those sales.  Br. at 1-2.  And the title company was exactly right to back away from those previous sales when it learned of the reality of the situation, as the Receiver's authority to exercise control over and sell this property is an open legal question.

## II.    ARGUMENT & AUTHORITIES

**A.    The Court Should Not Permit the Permanent Disposition of Property While the Legality of the Receivership Is On Appeal.**

While a receivership order is the subject of an active appeal, a district court should not permit a receiver to permanently dispose of a defendant's assets. This is particularly so when a prior appeal was successful and serious legal questions remain. After all, it is black letter law that district courts, when having resolved serious legal questions for which an appeal is pending or forthcoming, should avoid actions that cannot be later undone if the appeal is successful. *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) (holding that district courts must "maintain[] the status quo" pending appeal); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 07-01827 SI, 2013 WL 6055079, at *2 (N.D. Cal. Nov. 13, 2013) (citing *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Intern. Typographical Union*, 686 F.2d 731, 735 (9th Cir. 1982)) ("During the pendency of an appeal, the Court may act to preserve the status quo, but may not take actions that alter any substantial rights on appeal or that cannot later be undone."). The sale approval the Receiver seeks here is exactly the type of irrevocable action of which courts have regularly and rightly steered clear. It would be inappropriate to allow further liquidation of the receivership estate's property, as the Motion at issue contemplates, during the pendency of Mr. Barton's appeal.

Importantly, real property is not fungible—it is unique—and its permanent and irrevocable seizure without discovery and trial violates the Defendant's Due Process rights. That is why the

better course, absent extraordinary circumstances, is for a prejudgment receiver to safeguard assets in place pending a final judgment of liability.

**B.      The Court Cannot Expand the Scope of the Receiver's Authority While an Appeal is Pending.**

Because the propriety of the receivership order is on appeal, this Court does not possess jurisdiction to modify the order and expand the scope of the Receiver's authority.  According to the Fifth Circuit, "[t]he filing of a timely and sufficient notice of appeal transfers jurisdiction over matters involved in the appeal from the district court to the court of appeals.  The district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal." *In re Fort Worth Chamber of Commerce*, 100 F.4th 528,  (5th Cir. 2024).  The Fifth Circuit has reviewed other cases to determine whether procedural orders concern "the aspects of the case on appeal." *Id.*  (considering whether a Texas federal court had jurisdiction to transfer a case to a District of Columbia federal court while an appeal of a failure to grant a preliminary injunction was pending).  The question before this Court is much simpler, as it is incontrovertible that the District Court lacks jurisdiction to enlarge or alter one of the actual orders being appealed—here, the order imposing a receivership. *See, e.g.*, *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2007).

Through his Motion the Receiver asks the Court to enlarge the scope of his authority under the receivership order under appeal, Br. at 2, which denies him the power to sell real property without further order of the Court (a further approval that is required by 28 U.S.C. § 2001). *See* Dkt. 63, at 9.  For this reason, courts to have confronted the question have held they were without jurisdiction to authorize a receiver to sell real property, when the order appointing him is under appeal. *See S.E.C. v. Kirkland*, No. 606CV-183-ORL-28KRS, 2006 WL 3333672, at *1 (M.D. Fla. Nov. 16, 2006) (reasoning that, where preexisting order required receiver to seek court

-3-

approval before selling real property, conferring such authority would constitute modification of the scope of the order on appeal).

**C.      The Court Should Not Approve the Proposed Sale.**

The foregoing provides reasons why, as a general matter, this Court should not approve permanent sales of property while the receivership order is being appealed or before a final judgment of liability.  But even if those arguments were incorrect (which they are not), the Court should reject the proposed sale as not in the best interests of the estate.

Generally, courts that have considered the question have held that the business of prejudgment receiverships should not be the liquidation of assets, but instead their conservation in place.  *See SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets … is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment.");  *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (lamenting the "special additional penalty" that would result by allowing a Commission receiver to liquidate).  Approving the sale of Amerigold Suites would fail to secure one of the receivership estate's valuable assets in place for potential return to Mr. Barton, in the event the Commission does not prove its case.

The Receiver does not meaningfully attempt to establish that the sale will be in the best interest of the receivership estate, particularly as opposed to imposing new and qualified management and returning the property complex to its previous, profitable status.

Moreover, the Receiver has failed to establish that this sale is necessary.  *See, e.g.*, *Current Fin. Servs.*, 783 F. Supp. at 1445 (finding liquidation neither "necessary to protect [the defendant's] investors" nor "appropriate prior to the entry of final judgment"); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("We have in the past criticized the use of receivers

-4-

to effect the liquidiation [sic] of a defendant firm in litigation under the Securities Act or the Securities Exchange Act") (citing *SEC v. S & P Nat'l Corp.*, 360 F.2d 741, 750 (2d Cir. 1966)). The Receiver asserts that the complex's physical plan is in decline, that securing occupancy has been difficult, and that repairs are costly. Br. 9-10. These assertions are accompanied by no detail as to the numbers (such as the current occupancy rate) and as to efforts to address these situations. And the record of this case suggests why occupancy has been a struggle: The Receiver agreed with a previous buyer not to accept any new tenants for an extended period of time. Dkt. 168, at 9. It would be inequitable to allow a receiver to take possession of private property, mismanage (or, at a bare minimum, inadequately manage) that property, and then allow the Receiver to use the declined state of the property as the primary basis for his need to sell it off for what he admits to be under market value. Br. at 10.

Based on the Receiver's seventh quarterly report, Amerigold Suites management is collecting around two-thirds ($67,842.86) of what the full rental income revenue would be at full capacity with 100% payments received. Dkt. 491. The Receiver's submission does not evaluate the alternative of unwinding the voluntary draw down of occupancy and returning it to pre-receivership levels, and to increase the rent to market rates. If the property were running at 90% full occupancy, which is a conservative estimate and what it was running at prior to COVID-19, then the monthly receipts would be closer to $81,000, which would bring the monthly profit closer to $24,000 (based on the seventh quarterly report's account of expenses at $57,000), which has been the norm for this property.

The Receiver also cites the mounting interest on the property's mortgage. Br. at 5, 9. But the receivership order specifically allows the receiver to pause payments of interest on debts

secured by assets held by the receivership estate, in keeping with the purpose to safeguard them in place and to preserve the status quo pending final judgment. Dkt. 29 at 4, 13.

Nor is a sale for below the market price justified. Br. at 8. The proposed sale is at $4,800,000, but the property was appraised in 2024 (i.e., *this year*) for up to $7,100,000. *Id.* The Receiver says this deflated value is due to the cloud of the Defendant appealing this Court's receivership order. Dkt 491, at 23. But that is nothing but an argument for waiting on the sale until the Receiver's authority is rejected or confirmed, as urged above.

As the Court is aware, discovery is stayed in this matter and depositions are not possible. This is where the Court's scheduled Section 2001 hearing should be used. The Court should take the testimony of the Receiver employees responsible for managing and marketing this property so this Court may evaluate the viability of retaining the property in the estate, at least pending the appeal if not the end of litigation, on an appropriate factual record. And this Court should allow those sponsoring this level of this sale as appropriate to be questioned on their methodology and the asymmetry between their analysis here and what is happening to the rest of the market. The Receiver has not provided a factual record with enough detail and absent contradictions that would support a finding that selling this property, now, at this price is in the best interests of the estate.

### III.    CONCLUSION & PRAYER

For the foregoing reasons, Defendant Timothy Barton respectfully requests that the Court deny the Receiver's Verified Motion for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites.

Dated: June 26, 2024                              Respectfully submitted,

                                                  By: */s/ Michael J. Edney*
                                                  Michael J. Edney
                                                  Virginia Bar No. 48253
                                                  DC Bar No. 492024 (*admitted to N.D. Tex.*)
                                                  medney@huntonak.com
                                                  **HUNTON ANDREWS KURTH LLP**
                                                  2200 Pennsylvania Avenue NW
                                                  Washington, DC 20037
                                                  Phone: (202) 955-1500
                                                  Facsimile: (202) 778-2201

                                                  **COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On June 26, 2024 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

                                                  */s/ Michael J. Edney*
                                                  Michael J. Edney

-7-