UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § § § § § § § | |
| | | Case No. 3:22-CV-2118-X |
| Plaintiff, | | |
| v. | | |
| TIMOTHY BARTON, *et al.*, | | |
| Defendants. | | |

_____

REPLY TO
RESPONSE OF THE RECEIVER AND SEC TO
MOTION AND BRIEF IN SUPPORT OF INTERESTED PARTY
SOUTHERN STAR CAPITAL, LLC
TO MODIFY STAY PROVISION SET FORTH IN RECEIVER ORDER
_____

Southern Star Capital, LLC (**"SSC"**) makes this its Reply to the Response of the Receiver (Dkt. 508) and the Securities and Exchange Commission (Dkt. 509) to its Motion and Brief in Support of Motion to Modify the Stay (Dkt. 498) and would respectfully show the Court as follows:

**SEC RESPONSE**

1.      The SEC response can basically be summarized that the Receiver should be allowed more time to complete its ongoing efforts to value and address these properties. The Response basically relies on the Response of the Receiver. There is no evidence presented by the SEC to support its position. Therefore SSC will address the Receivers Response.

**RECEIVER'S RESPONSE**

2.      A close reading of the Receivers Verified Response provides no evidence or basis

to support their position. Despite the verification, the response only contains conclusions and speculation that there may be some value in the future to these two properties and the properties may add value if sold with others however, no evidence was offered to support this position.

3.      The Receiver basically believes that just because he says it should be denied it should be.  This is evident by a comment of the Receiver on page 6 of the Response under the section stating that the status quo should remain:

> "Here, the Receiver's own statement on this issue should be dispositive.  Moreover, if the Stay is lifted for one creditor, the floodgates will open for other creditors with far less persuasive claims than Southern Star—inundating the Receiver and the Court with motions to lift the Stay."

4.      Of further interest in the Response, it appears that the Receiver has not marketed the properties. The reason given is that the Receiver is focusing on larger properties where more money can realize to fund the Receivership. Which, in effect, harms smaller lenders like SSC.

5.      The purpose of the receivership, as stated by the Receiver, is "preserving the value of these properties to provide a recovery for defrauded investors".  The problem that the Receiver tries to avoid is that the properties have no equity and are of no value to the Receiver.  Also, he wants to provide a recovery for defrauded investors while punishing further an investor who has been defrauded.

6.      The Receiver states on page 6 of the Response in regard to the DJD Land Partners Property:

> "Turning to the DJD Property, in a vacuum, Southern Star might be correct that the 1-acre parcel securing its note has negative equity."

7.      Receivers argument for retaining the property, and further punishing SSC, is that it is adjacent to another Receiver property and if marketed as a whole it could bring more value. This is mere speculation and a conclusory statement that is not backed up by any evidence other

than the hearsay statements verified by the Receiver in the response. SSC objects to such evidence as based on hearsay and mere speculation and conclusions not supported by the evidence.

8.    Further, the Receiver blames SSC for causing the problem:

"But Southern Star's frustration, caused in part, by its business decision to borrow money at a variable rate, does not permit it to skip the line in which all creditors, including the investors, are waiting." P. 2 of Response.

9.    To Movant's knowledge the receiver has taken no action to market these properties. This is shown by the Response which confirms such a fact.

"Knowing, however, that marketing and sales efforts have and will be stymied by Barton, the Receiver has focused his efforts on properties that are losing the most equity (because of their high interest rates), properties which drain Receivership Assets, or which present similar reasons to seek an immediate contract or resolution." P.2 of Response.

10.    As stated in SSC's Motion:

¶13.    Southern Star is an entity which was in the mortgage business. It was owned and operated by Michael D. Anderson, who was the licensed mortgage broker. Mr. Anderson passed away in September 2023 and Southern Star Capital ceased generating new business. Southern Star is winding up its outstanding affairs. Because Southern Star is not generating any new revenue the burden of the payments being made on the loans which were used to fund the loans to Wall009 and DJD has fallen on the estate of Michael D. Anderson and said payments are depleting the estate.

11.    The burden of these matters now falls on the widow of Mr. Anderson. SSC, as an operating entity, no longer exists. Its goal in this proceeding is just to "get out of the box" and liquidate the properties, take its loss, and be done.

12.    The Receiver is happy to sit on the side and say "let's wait" for months or even years to resolve any issues regarding the people who were defrauded by Mr. Barton and indeed Mr. Wall, who defrauded SSC out of $3,546,97.24. See judgment, uncollected, against Mr. Wall attached as Exhibit 1. The losses incurred by dealing with Mr. Barton are still ongoing. Mr. Wall

is a defendant in this case and it is odd that his assets have not been investigated.

13.    The waiting may not harm some of the parties who have various properties tied up in the receivership with substantial equity but some small lenders, such as SSC, are being destroyed by the delay and inability of the Receiver to resolve issues in the light of the dilatory tactics of Mr. Barton. At the end of the day it is doubtful that these properties will yield sufficient funds through the receivership to pay what is owed.

14.    The Receiver complains about the cost to the receivership estate of having to address Motions and how they should not have to do that to preserve assets. He fails to address the financial destruction of the SSC and how Mr. Anderson's Widow is left without any proposed resolution other than to wait. Indeed, it is doubtful that if the Receiver ever sells the property that there will be funds to pay SSC what is owed on these properties.

15.    The Receiver states:

"Appraisals commissioned by the Receiver, however, demonstrate the Properties still have equity and provide value to the Receivership Estate— information previously shared with Southern Star." P. 2 of Response

16.    SSC objects to this statement as it is a conclusion and hearsay. No appraisals have been attached to the Response to support the position.  Indeed, the Receiver did provide an appraisal of the Wall009 parcel of land dated March 16, 2023, but not to the proposed development land that includes the DJD Land Partners, LLC, land of approximately 1-acre as he felt it was too sensitive to share. Because of this refusal SCS cannot review the appraisal to see if the property actually adds value to the tract as a whole or if it should be released as Receiver admits that there is no equity.

17.    The Receiver states on P. 6 of the Motion:

"Likewise, Southern Star fails to demonstrate any substantial injury.  Although

Southern Star points to the decreasing equity in the Properties, the Receiver disputes Southern Star's conclusion regarding the amount of equity or the existence of substantial harm.[5] While the Receiver does not dispute equity is decreasing, he does dispute Southern Star's valuations and the amount of equity remaining. For instance, the Receiver's appraisal for the Lynco Property (Southern Star refers to this as Wall009) lists the value at $1,590,000 while Southern Star says the value is only $1,210,000. According to Southern Star, as of May 1, 2024, the outstanding balance on the note for the Lynco Property was $1,071,273.34. Based on the Receiver's appraisal, over $500,000 in equity thus remains in the Property, which presents substantial value to the Receivership Estate.

18.     These again are mere Conclusions, based on hearsay to which SSC objects, as none of the alleged appraisals are attached to the Response so that SSC can assess them for accuracy or respond. SSC objects to this on those basis. Its hearsay and speculation without any basis or evidence to support this conclusion. Substantial injury is clearly shown by the impact the carrying cost is having on SSC none of which has been refuted by Receiver.

19.     At P. 7 the receiver states:

"The Receiver's appraisal for the entire 127 acres is $2,040,000. When viewed as a whole, if the one-acre parcel is carved out, the value of the remaining 126 acres (and Southern Star's one-acre as well) are likely to be disproportionately impacted if the entire tract cannot be sold as a whole. Moreover, even if the one-acre parcel has negative equity, Southern Star's interests are served by increasing the value of its one-acre through a sale of the entire tract, so as to increase the likelihood of recovering more than the amount owed on Southern Star's note."

20.     SSC objects as this is not supported by any evidence and is hearsay. Further comments such as "are likely to be disproportionately impacted" is speculation and a mere conclusion on the part of the Receiver to which SSC objects. There is no appraisal or evidence of any sort to support this statement.

21.     At P. 9 the receiver states:

"Allowing Southern Star to foreclose at this time, given these circumstances, would result in an inequitable distribution elevating Southern Star over every other creditor, secured and otherwise, in violation of the goals of the Receivership. As

the Court implicitly instructed when it included the Stay in the Receivership Order, Southern Star must continue to wait. The Receiver will continue efforts to preserve the value of Receivership Properties and seeking to recover the maximum value for the Estate. Because of the magnitude of the secured loans on all but one property, this likely means selling the properties to avoid the $2-$3 million in interest that accrues annually. The Receiver will not, however, simply walk away from value to appease frustrated creditors."

22. SSC objects as this is not supported by any evidence and is hearsay and a mere conclusion. There is no value to preserve with these properties as there is no equity. SSC has provided proof of this and its perfected lien debt against both properties. The Receiver has provided no proof. All the Receiver is doing at this point in time by holding these properties is costing the other creditors. The properties have no equity and are of no benefit to the estate. The Receiver has not proffered any evidence to the contrary. Stating that it would be an "inequitable distribution" is ridiculous. SSC would only be getting what it is owed, if even that much, on its debts. It is not a distribution of any funds from the receiver, it is the release of properties with no equity or benefit to the Receivership.

23. The receiver states on P. 10

"While Southern Star's frustration is understandable, the Receiver requests that the Court counsel patience (and frugality) with respect to any future motions by any other creditors. Fees spent in filing and responding to such motions do not serve creditors or the Receivership Estate."

24. The question that should be asked if the time spent dealing with properties that have no value to the Receivership Estate is a wise use of the Receivership Funds. Maybe the Receiver should be counseled about making sound business decisions regarding properties that have little or no equity or value to the estate.

**DJD Land Partners, LLC:**

25. Based on the appraisal produced by SSC there is no equity in the land. The receiver

admits this.  The current debt owed to SSC exceeds the value of the land.  As such the land is of no value to the receivership.  In the event the receiver sells the property the debt alone will exceed the probable sales price based on the appraisal.

26.     Holding the property in the receivership will continue to further damage SSC.  The value of the land per the appraisal, $120,000, is less than the principal amount of the loan $127,500 and substantially less than the amount due on the loan as of May 1, 2024, in the amount of $186,651.32.  And, the loss to SSC increases each day that it prevented from foreclosing on its security interest.

**Wall009, LLC**

27.     Based on the appraisal there is marginal equity in the land but in allowing for closing costs in the sale of the land there will probably be little, or no equity.  Any equity there may be is being reduced daily by the debt owed to SSC.  As such the land is of no value to the receivership.  In the event the receiver sells the property the debt alone will exceed the probable sales price based on the appraisal allowing for closing costs, commissions, and other traditional sales costs.  Just a five percent brokers commission on the appraised value of $1,210,000, if there are no other sales costs, $60,500 would leave the receiver with little or no equity after closing costs if the property can even be sold for this appraised value.

28.     Therefore, holding the property in the receivership is of no value to the receivership based on the appraisal.

29.     The purpose of the receivership is to Marshall assets for the benefit of the creditors.  These assets do not benefit or are of value to the receivership as there is no equity remaining in the land.

**CONCLUSION**

The goal of the Receivership to marshal for the benefit of the people who were defrauded is understood.  But it is felt that one purpose should be to protect all creditors including SSC especially when it is demonstrated that the properties held by the Receiver are of no value to the Receivership.

For the reasons stated the Stay should be lifted as to these two entities and the properties that SSC holds the first lien deed of trusts on.  The *Wencke* elements for modification of the stay are satisfied here: (1) continuing injury to the moving party absent modification of the stay; (2) appropriateness with respect to the timing of the moving party's motion; and (3) the underlying legal merits of the moving party's claim. *See S.E.C. v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980).

The Receiver has put forth no evidence to the contrary. Just conclusions and speculation as to what may be, which is improper.

The Court should grant the motion and Southern Star Capital, LLC, accordingly, so respectfully requests.

Respectfully submitted,

**THE LAW OFFICE OF ROBERT W. BUCHHOLZ, P.C.**

By: */s/ Robert W. Buchholz*
Robert W. Buchholz
Texas Bar No. 03290600
bob@attorneybob.com
5220 Spring Valley Road, Suite 618
Dallas, Texas 75254
214-754-5500 Telephone
214-754-9100 Facsimile
**ATTORNEY FOR**
**SOUTHERN STAR CAPITAL, LLC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June 2024, a true and correct copy of the foregoing

Motion was filed with the Clerk of the Court using the CM/ECF system, which will send a notice

of such filing to all counsel of record.

*/s/ Robert W. Buchholz*
Robert W. Buchholz
Attorney for Southern Star Capital, LLC