## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants.* | § | |

## RECEIVER'S VERIFIED MOTION TO RATIFY
## BM318, LLC'S SETTLEMENT AGREEMENTS WITH THE DIXON WATER
## <u>FOUNDATION AND LUMAR LAND & CATTLE, LLC AND BRIEF IN SUPPORT</u>

Charlene C. Koonce
  Texas Bar No. 11672850
  charlene@brownfoxlaw.com
C. Alan Carrillo
  Texas Bar No. 24109693
  alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTS ......................................................................................................................... 3

        A.      After the Court Lifted the Litigation Stay, the Bankruptcy Court
                Conducted an Evidentiary Hearing and Applied the Standards of
                Bankruptcy Rule 9019 to Approve the Settlement Agreements. ............................ 3

        B.      Settling the Adversary Proceeding Maximized the Value of BM318's
                Assets. ..................................................................................................................... 6

III.    ARGUMENT............................................................................................................... 11

        A.      Legal Standard ....................................................................................................... 11

        B.      The Court Should Adopt the Findings and Determination of the
                Bankruptcy Court................................................................................................... 13

        C.      The Settlement Agreements Also Meet the Standard that They Are in the
                Best Interests of the Receivership Estate. ............................................................. 13

                1.      BM318's Claims Against Dixon, and BM318 and the Receiver's
                        Claims Against Lumar, Are Unlikely to Succeed...................................... 13

                2.      The Settlement Amounts are Fair and Equitable. ..................................... 14

                3.      No Justification Exists to Delay Ratification............................................ 14

IV.     CONCLUSION AND REQUEST FOR RELIEF........................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Connecticut General Life Ins. Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.)*,
  68 F.3d 914 (5th Cir. 1995) ................................................................................ 12

*Ibarra v. Tex. Empl. Comm'n,*
  823 F.2d 873 (5th Cir. 1987) ................................................................................ 11

*Ritchie Capital Mgmt., L.L.C. v. Kelley*,
  785 F.3d 273 (8th Cir. 2015) ................................................................................ 12

*SEC v. Arkansas Loan & Thrift Corp.*,
  427 F.2d 1171 (8th Cir. 1970) .............................................................................. 11

*SEC v. Lincoln Thrift Ass'n*,
  577 F.2d 600 (9th Cir. 1978) ................................................................................ 11

*SEC v. Safety Fin. Serv., Inc.*,
  674 F.2d 368 (5th Cir. 1982) ................................................................................ 11

*SEC v. Stanford Int'l Bank Ltd.*,
  No. 3:09-CV-0298-N, 2015 WL 10818588 (N.D. Tex. Sept. 23, 2015) ................................. 11

*SEC v. Stanford Int'l Bank, Ltd.*,
  927 F.3d 830 (5th Cir. 2019) ................................................................................ 12

**Rules**

FED. R. BANKR. P. 9019(a) ....................................................................................... 12

**Codes**

11 U.S.C. § 105(a) ................................................................................................. 12

28 U.S.C. § 2001 ................................................................................................... 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | §<br>§<br>§ | |
| *Plaintiff,* | §<br>§ | |
| **v.** | §<br>§ | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | §<br>§<br>§ | |
| *Defendants.* | § | |

**RECEIVER'S VERIFIED MOTION TO RATIFY
BM318, LLC'S SETTLEMENT AGREEMENTS WITH THE DIXON WATER
FOUNDATION AND LUMAR LAND & CATTLE, LLC AND BRIEF IN SUPPORT**

Cort Thomas, the court-appointed Receiver in this case, moves the Court for an order ratifying certain settlements, respectfully showing the Court as follows:

## I.       INTRODUCTION

This motion pertains to Receivership Entity BM318, LLC ("BM318"), which, through the Receiver, has entered into settlement agreements with The Dixon Water Foundation ("Dixon") (the "Dixon Agreement") and Lumar Land & Cattle, LLC ("Lumar") (the "Lumar Agreement," and together with the Dixon Agreement, the "Settlement Agreements").

The Settlement Agreements have been approved by final orders of the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") in *In re BM318, LLC*, Case No. 20 42789-MXM (the "Bankruptcy Case"), pursuant to Federal Rule of Bankruptcy Procedure 9019 on May 28, 2024 (the "Settlement Approval Orders").[1] These approvals followed a May 20, 2024 evidentiary hearing (the "Evidentiary Hearing"),[2] in which Defendant Timothy

---

[1] True and correct copies of the Settlement Approval Orders are attached as **Exhibit 14** (APP254–257) and **Exhibit 15** (APP258–261).

[2] A true and correct copy of the transcript of the Evidentiary Hearing is attached as **Exhibit 12** (APP136–233).

Barton ("Barton") appeared through counsel. The Settlement Approval Orders are supported by the Bankruptcy Court's findings of fact and conclusions of law (the "Findings"), which were read into the record on May 22, 2024.[3] The Settlement Approval Orders were not appealed, and the 14-day deadline to do so passed on June 11, 2024.

By entering into the Settlement Agreements, the Receiver preserved value in BM318, which is a recipient of funds traced to Wall investors.

The Settlement Agreements resolve Adversary Proceeding No. 21-04051, pending in the Bankruptcy Court (the "Adversary Proceeding"), in which BM318 asserted claims against Dixon and Lumar that BM318 was unlikely to win and lacked resources to prosecute. In exchange, the Receiver obtained $175,000 in cash. In so doing, and as discussed below, the Receiver avoided expensive litigation that likely would have been unsuccessful.

The Settlement Agreements were the product of arms-length negotiations, and, indeed, a mediation conducted by a neutral mediator.

As evidenced by both the Bankruptcy Court's Findings and the record developed in the Bankruptcy Case, and by the facts presented in this Motion, the Settlement Agreements are fair and equitable and in the best interests of the Receivership Estate. While the express terms of the Receivership Order (defined below) do not require the Receiver to obtain the Court's approval of the Settlement Agreements, the Receiver seeks this Court's ratification of the Settlement Agreements—as approved by the Settlement Approval Orders—based on the Parties' respective agreements to do so.

---

[3] A true and correct copy of the transcript of the Findings is attached as **Exhibit 13** (APP234–253).

## II.    FACTS

**A.    After the Court Lifted the Litigation Stay, the Bankruptcy Court Conducted an Evidentiary Hearing and Applied the Standards of Bankruptcy Rule 9019 to Approve the Settlement Agreements.**

1.      On September 1, 2020 (the "Petition Date"), BM318 filed its voluntary chapter 11 petition, thus initiating the Bankruptcy Case. The Bankruptcy Court entered the order confirming BM318's plan on August 2, 2021.

2.      On October 18, 2022, the Court entered an *Order Appointing Receiver* (the "First Receivership Order") [Dkt. 29]. The order appointed Cortney C. Thomas as Receiver for the Defendants and directed him to take possession and control over all funds, property, and other assets in the possession of, or under the control of Defendants. *Receivership Order* ¶ 6.

3.      On November 29, 2023, the Court entered a second *Order Appointing Receiver* [Dkt. 417] (the "Second Receivership Order"). The Receivership Order also provides the Receiver with "all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Entities." *Id.* ¶ 3. Among these powers is authorization to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." *Id.* ¶ 6(J). Also, the Receivership Order gives the Receiver the ability to, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." *Id.* ¶ 39.

4.    Among the entities specifically included again in the Second Receivership Order is BM318.[4]

5.    In connection with the proceedings leading to the entry of the Second Receivership Order, the Receiver filed a Declaration and Interim Report of Courtney C. Thomas, as Receiver ("Declaration") [Dkt. 308]. In the Declaration, the Receiver identified transactions relative to BM318 and the Bear Creek Ranch, *id.* at 55–56, and classified those transactions among those funded indirectly with funds traced to the Wall investors. *Id.* at 57 & 165. The Receiver also reported certain litigation brought by BM318 against the owner of the Bear Creek Ranch (Dixon) as among those where Barton had been using litigation as a business tactic, and the Receiver described this practice as an "expensive and risky strategy." *Id.* at 90–91 & fn. 78. Finally, the Receiver explained that, if permitted to do so by the re-imposition of the receivership, he would pursue approval of a settlement with Dixon and Lumar that would end that litigation. *Id.* at 95–96.

6.    Thus, following the entry of the Second Receivership Order, on January 5, 2024, the Receiver filed a motion to lift stay and proposed that he be permitted to seek approval of the settlement by means of a three-step process: the lifting of the litigation stay in the Second Receivership Order, the consideration of the settlement agreements by the Bankruptcy Court where the litigation was pending, and ratification by this Court (the "Lift Stay Motion") [Dkt. 450].

7.    By order dated April 15, 2024, this Court granted the Receiver's Lift Stay Motion [Dkt. 486].

8.    On April 25, 2024, the Receiver, on behalf of BM318, and Dixon filed their joint motion for the Bankruptcy Court's approval of the Dixon Agreement pursuant to Rule 9019, and,

---

[4] "Receivership Entities" was defined in the First Receivership Order as all entities "Timothy Barton directly or indirectly controls" but was later redefined as the entities listed in the Second Receivership Order.

4

likewise, the Receiver, on behalf of BM318, and Lumar filed their joint motion for the Bankruptcy Court's approval of the Lumar Agreement pursuant to Rule 9019 (together, the "9019 Motions").[5]

9.      The deadline for responses or objections to be filed to the 9019 Motions was May 16, 2024. Barton filed no response to the 9019 Motions.

10.    On May 20, 2024, the Bankruptcy Court conducted the Evidentiary Hearing on the 9019 Motions.

11.    At the Evidentiary Hearing, the Receiver provided testimony supporting the 9019 Motions.[6]

12.    Barton appeared at the Evidentiary Hearing through counsel, who made an opening argument, conducted cross-examination, was given the opportunity to call witnesses and offer evidence (but did not do so), and made a closing argument.[7]

13.    Following the Evidentiary Hearing, the Court read its Findings into the record, including that it possessed "subject matter jurisdiction to consider" the 9019 Motions, which constituted "core proceedings over which the Court has both statutory and constitutional authority to enter final orders."[8] The Bankruptcy Court also found that notice of the 9019 Motions and the Evidentiary Hearing was "proper, timely, adequate, and sufficient," and that a "reasonable opportunity to conduct discovery, object, and to be heard was afforded to all creditors and parties-in-interest" in the Bankruptcy Case.[9]

---

[5] True and correct copies of the 9019 Motions and their exhibits are attached as **Exhibits 1–11** (APP001–135).

[6] Exhibit 12 at 26–73 (APP162–209).

[7] Exhibit 12 at 3, 22–24, 44–63, 68–74, 87–91 (APP139, 158–160, 180–199, 204–210, 223–227). Also, BM318's former bankruptcy counsel, Joyce Lindauer PLLC ("Lindauer"), filed an objection to the 9019 Motions but offered no evidence at the Evidentiary Hearing to support its objection.

[8] Exhibit 13 at 6:6–12 (APP240).

[9] *Id.* at 6:13–16 (APP240).

14.     The Bankruptcy Court also found and concluded that the testimony offered by the Receiver in support of the 9019 Motions "was credible and largely uncontroverted,"[10] "clear, concise, and credible,"[11] and supported by several exhibits offered into evidence by Dixon and Lumar.[12] The Bankruptcy Court found and concluded neither Barton nor Lindauer "called any witnesses or offered any exhibits into evidence, or filed any briefs citing to any case law" in support of their objections.[13]

15.     Based "upon the evidentiary record before the Court," the Bankruptcy Court also found and concluded that the Settlement Agreements (1) constitute the "exercise of the Receiver's reasonable and sound business judgment consistent with the Debtor's fiduciary duties," (2) are in the "best interest of the BM318, LLC bankruptcy estate, its creditors and parties in interest," and (3) are "clearly within the range of reasonableness necessary for approval of a compromise agreement under Bankruptcy Rule 9019."[14] For several other reasons that the Bankruptcy Court explained on the record, the Bankruptcy Court overruled the objections of Barton and Lindauer and granted the 9019 Motions.[15]

16.     The Bankruptcy Court subsequently entered the Settlement Approval Orders, which expressly incorporated the Findings and granted the 9019 Motions.

**B.     Settling the Adversary Proceeding Maximized the Value of BM318's Assets.**

17.     After emerging from bankruptcy in August 2021, BM318 was left with very few assets.

---

[10] *Id.* at 8:16–17 (APP242).

[11] *Id.* at 10:1–4 (APP244).

[12] *See id.* at 10:5–9 (APP244).

[13] *Id.* at 11:7–10 (APP245).

[14] *Id.* at 16:22–17:7 (APP250).

[15] *See id.* at 17:8–12 (APP251).

18.     These included causes of action, which had been first described in BM318's May 10, 2021 Second Amended Schedules of Assets and Liabilities, wherein BM318 identified the possibility of suing Dixon pursuant to 11 U.S.C. §§ 547, 548, and 550 [Bankruptcy Case, Dkt. 82].

19.     On August 10, 2021, BM318 commenced the Adversary Proceeding by filing an avoidance-action complaint against Dixon, alleging that Dixon's recording of the Deed (defined below) constituted a preference under Bankruptcy Code section 547 or a constructive fraudulent transfer under Bankruptcy Code section 548.

20.     The Adversary Proceeding faced a number of obstacles.

21.     First, if BM318 were successful in avoiding the Deed, BM318 would return matters to the state in which they were immediately before the Deed was recorded. Those were circumstances where BM318 owed a very large debt. To explain, the Deed had been provided as security for a loan, and, when BM318 defaulted on that loan, the recording of the Deed satisfied the debt. Thus, if the recording of the Deed were rescinded, the debt would be reinstated. Indeed, BM318 and Dixon actually agreed in the Third Modification to Debtor's First Amended Plan that such would be the effect [Bankruptcy Case, Dkt. 100]. By the time of the First Receivership Order, the amount of the loan, if reinstated, would have exceeded $34 million.

22.     Second, BM318 faced a difficult evidentiary burden, requiring costly expert testimony to attain. BM318 needed to show that there was no reasonably equivalent value exchanged at the time, even though the recording of the Deed effected the cancellation of, as noted, a very large debt. To explain, the recording of the Deed came at the end of a series of transactions. The original sale transaction took place in late 2018, when BM318 purchased 2,055.77 acres located in Parker County, Texas from Dixon for $35,046,900.00. The sale was largely seller-financed, meaning that a large part of the consideration was provided in the form of a

7

$32,946,900.00 promissory note to Dixon (the "Note") that was secured by a deed of trust (the "Deed of Trust"). The underlying debt was restructured several times but never satisfied. BM318's failure to make its first $6.494 million principal payment began a lengthy process of attempting to modify the loan. BM318 and Dixon thereafter entered into a series of loan modification agreements under which certain payment deadlines were extended upon Dixon's receipt of extension fees and under which BM318 was to sell certain parcels of land from Bear Creek Ranch. The last loan modification occurred in February 2020. It included a Deed in Escrow Agreement, which established a "Final Payoff" for the Remaining Land (defined below) in the amount of $27,500,658 in principal and accrued interest plus all of Dixon's costs and expenses as of the date of such payment. It also extended the deadline to remit the accrued interest and principal balance by four months to July 1, 2020. To secure its performance of the Deed in Escrow Agreement, BM318 executed a special warranty deed to the Remaining Land (the now contested "Deed") be held in escrow unless and until BM318 defaulted. If BM318 defaulted, Dixon was permitted to record the Deed in satisfaction of BM318's obligations. BM318 was unable to complete the Final Payoff and satisfy the Note on July 1, 2020. Accordingly, the next day, Dixon recorded the Deed and regained possession of approximately 1,531.75 acres (the "Remaining Land"). The consideration for the transfer was thus the extinguishment of a substantial debt.

23.    Third, BM318 would also have had to defeat the claims of Lumar. In April 2021, Dixon conveyed a 204.5-acre tract of the Remaining Land to Lumar (the "Lumar Land"). After it filed the Adversary Proceeding, BM318 filed a Notice of Lis Pendens, which caused Lumar to intervene in the Adversary Proceeding so that it could seek a declaratory judgment that it was a good-faith transferee and a bona-fide purchaser of the Lumar Land and to expunge the Lis Pendens. After the Bankruptcy Court granted Lumar's motion to intervene, Lumar filed its complaint against

8

BM318. In its answer to Lumar's complaint in intervention, BM318 asserted several counterclaims: tortious interference with a contract; tortious interference with a prospective contract; breach of fiduciary duties; fraud; conversion; fraud in a real estate transaction; conspiracy; and declaratory judgment (the "Counterclaims"). Eventually, BM318 also sought leave to amend its complaint in the Adversary Proceeding, but the Bankruptcy Court denied the motion.

24.    Fourth, BM318 still faced an expensive trial that it lacked the resources to fund. After the District Court denied BM318's motion for leave to file an interlocutory appeal of the Bankruptcy Court's denial of the motion for leave to amend, the Bankruptcy Court originally set trial for March 2023 (before the case was stayed pursuant to the Receivership Order). At that eventual trial, BM318 would have had to navigate the complex fact pattern outlined above, present experts to support its case, defeat opposing experts, and present briefing on various legal issues. But BM318 had no resources to do so.

25.    Fifth, the Receiver faced the prospect that Dixon and Lumar would have, but for the Settlement Agreements, appeared in this Court and sought to lift the litigation stay. This would have cost the Receivership Estate to defend (as the Receiver has been forced to do repeatedly to date), or, eventually when it was appropriate to lift the stay, would have placed BM318 on a short path to trial.

26.    The settlements produce cash in place of doubtful and costly litigation. The Dixon Agreement requires Dixon to pay BM318 $100,000 and release all claims against BM318 in exchange for a final judgment in the Adversary Proceeding that provides for the dismissal of the Adversary Proceeding with prejudice, and BM318's release of the Lis Pendens. Additionally, the Receiver reserves certain alleged non-debtor claims against Dixon. The Lumar Agreement requires

9

Lumar to pay BM318 $75,000 and release all claims against BM318 in exchange for a final judgment in the Adversary Proceeding that provides for the dismissal of the Adversary Proceeding with prejudice, BM318's release of the Lis Pendens, BM318's release of all claims against Lumar, and the Receiver's release of all claims against Lumar.

27. In sum, the settlements took BM318 away from litigation that it was unlikely to win and would have cost money BM318 did not have, and turned the litigation into funds that have a value at least as great as the claims and which are not a wasting asset.

**D.   Arms-Length Discussions and a Mediation Resulted in the Settlement Agreements.**

28. After his appointment, Dixon and Lumar's counsel contacted the Receiver, seeking a resolution of the Adversary Proceeding and Bankruptcy Case and removal of the Lis Pendens.

29. The Receiver first acted to preserve value because the Lis Pendens had prevented Lumar from selling the land or servicing its $6.5 million loan that funded its purchase of the Lumar Land (the "Bank Debt"). The Bank Debt had continued to accrue interest, thereby diminishing the equity available to any party except perhaps the bank. Moreover, because Lumar was unable to sell the Lumar Land or obtain any resolution of the claims in the Adversary Proceeding, Lumar's financial condition deteriorated. Lumar and the Receiver accordingly negotiated an agreement (the "Lumar Agreement"), which allows Lumar to sell tracts of the Lumar Land, subject to the Receiver's approval of each contract because the Receiver owns BM318's claim against the Lumar Land, with the sale proceeds first going to service the Bank Debt and any remaining proceeds deposited in a trust account managed by the Receiver until resolution of the Adversary Proceeding. In February 2023, this Court granted the Receiver's motion to ratify the Lumar Agreement over Barton's objection. Barton did not appeal that determination.

30.     A month later, Dixon, Lumar, the Receiver and their counsel met to discuss potential procedures for resolving the Adversary Proceeding and Bankruptcy Case and removing the Lis Pendens. They were unable to resolve the dispute informally.

31.     On April 25, 2023, the parties engaged in an all-day, arms-length mediation conducted by the Honorable Harlin D. Hale (Ret.) and reached a mediated settlement of the Adversary Proceeding.

32.     The respective Settlement Agreements were executed shortly thereafter, subject to the court-approval process.

### III.     <u>ARGUMENT</u>

**A.     Legal Standard**

District courts have "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)). Any action by the district court "supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse." *Id.* at 373 (*quoting SEC v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)).

"Ordinarily, parties are free to settle cases amongst themselves without court involvement." *SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-0298-N, 2015 WL 10818588, at *2 (N.D. Tex. Sept. 23, 2015) (citing *Ibarra v. Tex. Empl. Comm'n,* 823 F.2d 873, 878 (5th Cir. 1987)). However, "in the equity receivership context, parties have sought and courts have rendered decisions regarding whether to approve or reject settlement agreements based on courts' wide discretion in administering an equity receivership." *Id.* "Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are '*fair and equitable and in the best interests of the estate*.'" *SEC v. Stanford*

11

*Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (emphasis added) (quoting *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015)).

"In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership." *Stanford*, 927 F.3d at 840. However, by this Motion the Receiver is not seeking to sell "any realty or interest therein." *See* 28 U.S.C. § 2001. The Receivership Entities do not possess any interest in any portion of Bear Creek Ranch (including the Remaining Land), and this Court has already determined that similar settlements by the Receiver do not implicate 28 U.S.C. § 2001 ("the Statute") [Dkts. 109, 163]. Thus, rather than permission to sell any realty based on the Statute, the Receiver seeks the Court's ratification of his decisions to resolve BM318's disputes with Dixon and Lumar.

In addition to the overlaying receivership, these settlements resolve claims pending in the Bankruptcy Court. Bankruptcy courts' approvals of settlements are governed by Federal Rule of Bankruptcy Procedure 9019(a), which provides, in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). The Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

The Fifth Circuit has instructed bankruptcy courts to consider the following elements when approving Rule 9019 motions: (1) the probability of success in the litigation with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (3) all other factors bearing on the wisdom of the compromise. *See Connecticut General Life Ins. Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

12

**B.**     **The Court Should Adopt the Findings and Determination of the Bankruptcy Court.**

This Court lifted the Litigation Stay, in part, for the purpose of obtaining the guidance of the Bankruptcy Court. The Bankruptcy Court conducted the Evidentiary Hearing at which it considered live testimony from the Receiver and other documentary evidence. Barton appeared and participated. The Bankruptcy Court applied standards that are comparable to those to be applied in federal equity receiverships. The Bankruptcy Court made its Findings and entered the Settlement Approval Orders. Barton did not appeal the determinations made or orders entered.

**C.**     **The Settlement Agreements Also Meet the Standard that They Are in the Best Interests of the Receivership Estate.**

In addition, the facts as presented here, and the record developed in the Bankruptcy Court, establish that the Settlement Agreements are fair and equitable and in the best interests of the Receivership Estate.

**1.**     **BM318's Claims Against Dixon, and BM318 and the Receiver's Claims Against Lumar, Are Unlikely to Succeed.**

BM318 is unlikely to succeed in its claims against Dixon under Bankruptcy Code sections 547 and 548. To succeed under section 547, among other elements, BM318 would need to demonstrate that it was insolvent when the alleged transfer was made, that it transferred its interest in property within 90 days of the Petition Date, and that the alleged transfer enabled Dixon to receive more than it would have received if the Bankruptcy Case were a liquidation case under Bankruptcy Code chapter 7. To succeed under section 548, BM318 would need to demonstrate that it was insolvent when the alleged transfer was made and that it received less than reasonably equivalent value in exchange for the transfer of property.

In addition, BM318 and the Receiver are also unlikely to succeed in their claims against Lumar because BM318 as the Reorganized Debtor did not preserve any claims against Lumar in its plan of reorganization, so that BM318 would have no standing to assert such claims. In addition,

13

even if the Receiver independently asserted BM318's common-law claims against Lumar, the Receiver could likely only seek limited actual damages from Lumar rather than a recovery of the Lumar Land.

After thoroughly investigating and reviewing the pleadings and evidence regarding the Bankruptcy Case and the Adversary Proceeding, the Receiver determined that BM318 would not likely be able to satisfy its evidentiary burden, and thus, following the expense of trial, BM318 would neither prevail nor recover against either Dixon or Lumar. Further, even if BM318 or the Receiver prevailed, the costs incident to trial could render any recovery negligible, particularly considering the extent of the debt that would be reinstated as a condition of avoiding the deed in question. Thus, the Receiver determined that spending Receivership Assets to pursue the Adversary Proceeding against Dixon and Lumar, or any claims against Lumar, is neither justified nor reasonable.

### 2.    The Settlement Amounts are Fair and Equitable.

As explained above, the Receiver does not believe BM318 would prevail on its claims against Dixon in the Adversary Proceeding or that he or BM318 would prevail on claims against Lumar in or outside of the Adversary Proceeding. Further, the Dixon Agreement expressly reserves the Receiver's claims against Dixon on behalf of the Receivership Estate. A settlement replaces uncertain claims that would cost money BM318 does not have with $100,000 in the case of Dixon and $75,000 in the case of Lumar. This result is fair and equitable and in the best interests of the Receivership Estate.

### 3.    No Justification Exists to Delay Ratification.

As the Court is aware, since issuance of the First Receivership Order, creditors have sought relief from the Litigation Stay and pressed the Receiver to resolve claims against or asserted by those creditors, or to release property from the Receivership Estate. As discussed above, the claims

14

at issue in the Settlement Agreements cloud title to realty in which no Receivership Entity held an interest, but which caused financial and other prejudice to Lumar and Dixon. Resolving these claims, in due course, serves the interests of the Receivership Estate, while acknowledging competing interests. Further, as discussed in several recent briefs, Barton's pending appeal of the Second Receivership Order does not stay administration of the Receivership or present any reason for the Court to deny the relief requested above.

## IV.    <u>CONCLUSION AND REQUEST FOR RELIEF</u>

The Receiver respectfully requests that the Court enter an order ratifying the Settlement Agreements with Dixon and Lumar, as authorized by the Bankruptcy Court through the final and non-appealed Settlement Approval Orders and based on the Bankruptcy Court's Findings, and further granting the Receiver such other and further relief to which he may be justly entitled.

July 8, 2024                                     Respectfully submitted,

By:  */s/ C. Alan Carrillo*
     Charlene C. Koonce
       Texas Bar No. 11672850
       charlene@brownfoxlaw.com
     C. Alan Carrillo
       Texas Bar No. 24109693
       alan@brownfoxlaw.com
     BROWN FOX PLLC
     8111 Preston Road, Suite 300
     Dallas, TX  75225
     Tel. 214.327.5000
     Fax. 214.327.5001

     *Attorneys for Receiver Cortney C. Thomas*

15

## VERIFICATION

My name is Cortney C. Thomas. I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

 /s/ Cortney C. Thomas

Cortney C. Thomas

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on July 3, 2024, the Receiver conferred via email with counsel for Plaintiff and Defendant Barton regarding the relief requested above. The SEC is unopposed to the relief requested herein. Defendant Barton is opposed to the relief requested herein.

/s/ C. Alan Carrillo

C. Alan Carrillo

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

16