**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants.* | § | |

**RECEIVER'S OMNIBUS REPLY
IN SUPPORT OF MOTIONS FOR APPROVAL
OF SALE OF AMERIGOLD SUITES AND HALL STREET**

Charlene C. Koonce
  Texas Bar No. 11672850
  charlene@brownfoxlaw.com
Timothy B. Wells
  Texas Bar No. 24131941
  tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

In support of two pending motions [Dkts. 500 and 502] (the "Motions"), Cort Thomas, as the court-appointed Receiver, files this Consolidated Reply to the Responses filed by Timothy Barton [Dkts. 516 and 517] (the "Responses"), and in support, respectfully shows the Court as follows:

## I.       INTRODUCTION

As Barton is aware, the Receiver has to date been unable to close any real property sale approved by the Court, while any of Barton's serial appeals are pending.[1]   Accordingly, the Receiver cannot service the debt on any property, which for the Hall Property, accrues at more than $30,000 per month.  With respect to the Amerigold Suites, interest accrues at $13,000 per month, and, as evidenced by the two sales contracts brought to the Court for approval, the property has lost an additional $750,000 in value in fifteen months.  For these and additional reasons discussed below, and because each proposed sale will require an extended diligence period, the Receiver seeks the Court's approval for these sales, now, to facilitate an expedient closing once it is possible.

Nonetheless, without expressly asking for a stay and despite the several instances in which this Court and the Fifth Circuit denied Barton's Motions to Stay pending his appeal of the first Receivership Order,[2] Barton seeks, essentially, a stay.  Rather than demonstrating entitlement to that relief, Barton attempts a new tact[3] by arguing (1) this Court must preserve the status quo pending his appeal, and (2) this Court cannot "expand" the scope of the Receiver's authority by

---

[1] *See* Dkt. Nos. 104, 142, 202, 436, 437, 438.

[2] *See* Dkts 122, 132.

[3] Barton raised these same arguments most recently in Response to the Receiver's Verified Motion to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC [Dkt. 504].  The Receiver's arguments in response, similar to those above, are at Dkt. 513 (the "Reply").  To the extent the Receiver's arguments from Reply are not included here, they are expressly incorporated by reference.

approving these sales; and (3) the sales are not necessary or in the best interest of the Receivership. None of these arguments is persuasive and each is addressed in turn.

## II.    ARGUMENT AND AUTHORITIES

### A.    The Pending Interlocutory Appeal Has No Impact on This Court's Obligation to Preserve the Value of the Estate Properties.

In connection with his appeal of the new Receivership Order [Dkt. 417] (the "Receivership Order"), Barton has not sought a stay. His argument that this Court should "steer clear" of irrevocable actions during his appeal thus begs the question of why he has not.[4] Relying on the same authorities presented and rejected numerous times, Barton argues this Court must "preserve the status quo" while his appeal of the Receivership Order is pending. The Fifth Circuit rejected this argument in denying several motions to stay the entire case as well as various proposed sales and settlements.[5] This Court rejected the same argument in granting numerous motions by which the Receiver sought authority to sell property or approve settlements regarding different claims.[6] Barton's regurgitated arguments do not warrant denying the Receiver's Motions, and the Receiver incorporates his arguments regarding Barton's oft-repeated argument raised in Section II A of the Responses, including the specific arguments regarding the same cases Barton has cited numerous times.[7]

---

[4] Barton should not obtain indirectly what he has been denied (or failed to seek) directly. *See e.g., Hancock v. Chicago Title Ins. Co.*, No. 3:07-CV-1441, 2010 WL 3766695, at *4 (N.D. Tex. Sept. 28, 2010) (Denying motion which would have enabled the plaintiffs to "obtain indirectly from this court what they could not secure directly from the Fifth Circuit," where appellate court had denied similar motion to dismiss the appeal).

[5] *See SEC v. Barton,* Appeal No. 22-11132 (the "First Appeal"), Dkt 05, Mem. Op., January 6, 2023; First Appeal, Dkt. 110-1, Mem. Op., June 8, 2023; First Appeal, Dkt. 132-2, Mem. Op., June 9, 2023.

[6] *See* Dkts. 119, 122, 159, 227, 265, 435 at 18, and 470 at 4; *see also* Dkts. 122, 265.

[7] *See* Dkt. 513; Dkt. 435, Receiver's Reply To Defendant Timothy Barton's Consolidated Opposition To Receiver's Verified Motions For Authorization To Sell Three Receivership Properties. Quoting some of those arguments here, "[N]one of the cases cited by Barton . . . involves the limited appeal of an order appointing a receiver. Such an appeal *does not* stay the order appointing a receiver and is likewise unbounded by the further limit of a district court's authority over an injunction during the pendency of a related appeal. *See* FED. R. CIV. P. 62 (c)(1), and (d). Instead, *Coastal Corporation* discussed a district court's authority to *dissolve* an injunction while an appeal was pending. *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 819 (5th Cir. 1989) (Discussing Rule 62(c)(1) and (d), and the district court's authority to dissolve an injunction pending an appeal of the injunction). *Griggs* involved an order denying an

Similarly, Barton's contention that "black letter law" requires that district courts "avoid actions which cannot later be undone" while an appeal is pending, fails on several fronts. The jurisdictional divestiture incident to the appeal of an interlocutory order appointing a receiver is very narrow. *Netsphere, Inc.*, 799 F.3d at 331-32 (5th Cir. 2015) (every circuit to address the meaning of § 1292(a)(2)'s 'refusing orders' interprets it to "permit[ ] appeals only from orders 'refusing . . . to take steps to accomplish the purposes of [winding up receiverships].'"); *SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1332 (11th Cir. 2022) (recognizing absence of interlocutory jurisdiction for "mid-stream" orders issued in administering receivership because "[w]ere we to immediately review all scope-related orders of the sort that this case entails, we would, in effect, become the micromanagers of district courts' day-to-day administration of receiverships."). If this Court was required to maintain the status quo of a receivership during the interlocutory appeal of a receivership order, or indeed the appeal of a mid-stream order for which no appellate jurisdiction exists, Rule 62(c)(1) would have no meaning and litigants would automatically evade the carefully circumscribed limits to interlocutory jurisdiction by staying *every* order necessary to administer a receivership by appealing each such order.

**B.    The Court Retains Jurisdiction to Grant the Motion, Which Will Not "Expand the Scope of the Receiver's Authority."**

Barton also argues that this Court lacks "jurisdiction to modify the order and expand the scope of the Receiver's authority" while the Receivership Order is on appeal. The argument is incorrect from every perspective. The scope of a jurisdictional divestiture during an interlocutory appeal depends on the "nature of the appeal." *Alice L. ex rel. R.L. v. Dusek,* 492 F.3d 563, 564–65 (5th Cir. 2007) (per curiam). Although the Fifth Circuit has not created a bright-line definition

---

order to alter or amend a final judgment while that order was being appealed. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982). And *In re TFT-LCD* discussed a motion to release funds held in escrow during the pendency of an appeal. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 07-01827 SI, 2013 WL 6055079, at *1 (N.D. Cal. Nov. 13, 2013)."

for the "nature of the appeal," the narrow jurisdictional basis for Barton's appeal, the Fifth Circuit's orders in this case and others, and Barton's own motions demonstrate that orders by which the Court administers the Receivership Estate during an interlocutory appeal of the Receivership Order are well-within this Court's continuing jurisdiction.

> **1.    The Fifth Circuit Has Implicitly Determined that Jurisdiction to Continue Administering the Estate Remains in this Court.**

During the pendency of an interlocutory appeal, a district court "may still proceed with matters not involved in the appeal." *Taylor v. Sterrett,* 640 F.2d 663, 667–68 (5th Cir.1981); *Alice L. ex rel. R.L.,* 492 F.3d at 564–65.   In denying Barton's repeated motions to stay during the pendency of his appeal of the first Receivership Order, the Fifth Circuit necessarily concluded that continued administration of the Receivership Estate was not "a matter involved in [that] appeal." *See* First Appeal, Dkt 05, Mem. Op., January 6, 2023 (denying Barton's motion to stay order appointing receiver, pending appeal and alternative motion to stay "components" of that order and other orders that became part of it, including orders authorizing sale of property); First Appeal, Dkt. 110-1, Mem. Op., June 8, 2023 (denying motion for partial stay, which sought, among other things, to suspend the receiver's power to sell the assets of Receivership Entities and stay the Receiver's ability to undertake receivership activities other than caring for the seized assets); First Appeal, Dkt. 132-2, Mem. Op., June 9, 2023 (denying similar motion to stay transfer of possession of Turtle Creek Property and carrying the remainder of the motion to stay with the case).   In none of these orders did the Fifth Circuit even hint that the interlocutory appeal divested this Court of jurisdiction to continue activities that Court and this one declined to stay.   Instead, the Fifth Circuit implicitly concluded otherwise in denying the stays requested by Barton and in expressly "carrying" part of the last motion with the appeal.   Had the jurisdictional divestiture Barton now relies on occurred, the issues encompassed by Barton's requested stays would already have been

included in the appeal and the Fifth Circuit would have granted Barton's motions to stay to preserve its ability to render meaningful relief in the first appeal.  That did not happen.

Moreover, Congress also exempted interlocutory appeals of receivership orders from any automatic stay that would otherwise arise during an appeal.  FED. R. CIV. P. 62(c).  Surely no court intends an appellant to obtain indirectly, through an all-encompassing interpretation of the "nature of the case on appeal," what Congress expressly withheld pursuant to Rule 62(c) and 28 U.S.C. § 1292(a)(2).

Barton nonetheless argues, essentially, that *In re Fort Worth Chamber of Commerce* creates a blanket rule precluding the relief Barton did not seek to stay.  In *Fort Worth Chamber of Commerce*, the Fifth Circuit determined that a district court had abused its discretion by transferring a case out of the district while the appeal of the denial of a preliminary injunction was pending. *In re Fort Worth Chamber of Commerce,* 100 F.4th 528, 531 (5th Cir. 2024).  In reaching that conclusion, the Court expressly considered the breadth of the "case on appeal," over which the district court was divested of jurisdiction," and concluded the district court's order transferring the case to a new district would "frustrate" the appellate court's "ability to provide meaningful relief" because the appellate court "would have no case to review." *Id.* at 536.

In comparison, nothing about continued administration of the Receivership Estate, even authorization to convert an interest in real property into cash so as to preserve the value of the realty, frustrates an appellate court's ability to provide meaningful relief in the pending appeal.  As it did when it vacated the first Receivership Order and despite this Court's interim approval of numerous orders authorizing the sale of realty, the appellate court can resolve Barton's pending appeal if it determines error occurred in entering the new Receivership Order.

Barton cites *SEC v. Kirkland*, a 2006 case from the middle district of Florida that has never been cited by any other court, in support of his argument that this Court lacks jurisdiction to

approve the sales. *Kirkland's* brief discussion regarding approving a sale, however, was dicta because the only motion before that court requested permission to lower the listing price of certain property. *SEC v. Kirkland*, No. 606CV-183-ORL-28KRS, 2006 WL 3333672, at *1–2 (M.D. Fla. Nov. 16, 2006). Further, although a Receivership Order and an order expanding a Receivership Order were the subject of a pending appeal, the *Kirkland* Court considered the permissibility of altering an injunction on appeal rather than the jurisdictional divestiture arising from an appeal involving a Receivership Order. *Id*. Finally, the opinion relied on *Coastal Corporation*, which as discussed above, involved a district court's authority to dissolve an injunction while an appeal was pending. *Coastal Corp*., 869 F.2d at 819.

### 2. Approving the Sales Does Not Expand the Receiver's Authority.

Barton's argument that approving the sale of realty impermissibly expands the Receiver's authority lacks merit. This Court has already empowered the Receiver to sell property.[8] The requirement of the Court's further approval of such a sale does not reflect authority absent from the Receivership Order which would require an "expansion" of the Order or even the Receiver's authority, but rather, recognition that where the statute applies, the Court must approve the terms and mechanics of such a sale. *See* 28 U.S.C. § 2001(b).

### C. The Sales are in the Best Interest of the Receivership Estate and Should Be Approved.

Barton's assertion that "no special circumstances" justify prejudgment sales of *some* properties, or indeed the Properties at issue here, ignores all evidence to the contrary, including accruing interest collectively for all Receivership Assets at approximately $170,774 per month, which thus erodes the recoverable value of all such assets by over $2 million each year.[9] The Receivership Estate lacks cash to service that debt and absent additional relief, the Receiver or

---

[8] Dkt. 417, ¶¶ 40–41.

[9] *Id*. Further although the Receivership Order stays *collection* of interest, it does not stay accrual.

Barton will have to repay the accrued interest, or, abandon properties to lenders who will otherwise, at some point, be entitled to foreclose, as many continually seek to leave to do even now.[10]

### 1.  Approval Now Preserves Receivership Estate Value

As Barton is well aware, his serial (and improper) appeals of sale orders have dissuaded title companies from issuing title policies on prior Court-approved sales.  Even assuming Barton will appeal Orders approving the instant sales and assuming new title companies will be unwilling issue title policies until such appeals are resolved, by seeking approval of these sales now, however, the Receiver seeks to run the due diligence periods related to each property sale concurrently with the Fifth Circuit's consideration of the appeal, such that the sales will close shortly after resolution of the appeal.  This expedient timeline seeks to avoid accrual of hundreds of thousands of dollars in interest and related expenses (and potential loss of the sales) if the diligence period does not begin until after the appeal is resolved.

With respect to the TC Hall property, as discussed in the Motion, as of April 29, 2024, the balance on the loan encumbering the property was \$4,653,655.88, **and interest at the extremely high rate of 9.009%, accrues at \$1,023 per day,** eroding equity at the same rate.[11]  Converting the value of this property to cash thus preserves the value of the receivership estate at the rate of more than \$1,000 per day.

The Amerigold Suites drains receivership assets and time, interest on the loan encumbering the property erodes its value at \$13,254 per month,[12] and **the property's value has decreased by**

---

[10] *See* Dkts. 245, 311, 321, 349, 498, 505.

[11] Dkt. 502 at 6.  Further, in his email conference with Barton before filing the Motion, the Receiver sought Barton's agreement to the proposed sale (again, because of the extremely high interest rate) and offered to hold the sale proceeds in an escrow account during the pendency of the appeal.  Barton, however, did not respond to that email.

[12] As discussed in the Motion, the lender has also sought permission to foreclose, twice, and has agreed to submit its claim for interest at a higher "default rate" in a claims process.  *See* Motion, p. 5; *see also* Dkt. 409.

**at least \$750,000 in the fifteen months** since the Court approved the first sale.[13]  Seeking to facilitate a sale that closes shortly after the appeal is resolved, and locking in the sales price now, preserves value.

From several prior hearings, reports, and motions, this Court (and Barton) knows assertions regarding Amerigold's "previous, profitable status" prior to the Receiver's appointment is untrue. Within days of his appointment, the Receiver learned insurance on Amerigold was on the verge of cancellation, that electricity was on the verge of being shut off, and significant water bills were owed.[14]  Similarly, the necessity for significant repairs have continued, property tax and insurance bills remain high (totaling over \$100,000 per year) and the Receiver and his team are required to devote significant attention to overseeing the property.[15]  Barton's assertion that the Receiver has voluntarily drawn down the occupancy rate was debunked at a prior hearing, and his argument that the Receiver should explore returning the property to a higher occupancy rate has more in common with a demand to spin straw into gold than reality.  In its current dilapidated condition, raising the occupancy rate or monthly rent is nearly impossible, and because Barton has opposed and blocked the sale of every single property, the Receiver has been unable to service the debt, pay taxes due on many properties, and has barely kept them insured.  What funds would he use for the millions of dollars in repairs and upgrades necessary to improve the occupancy rate at Amerigold?

Nor should this Court nor any other be misled by Barton's assertions that the Amerigold Suites did not receive or benefit from Investor Funds.  As with virtually every property owned by every entity he controls, Barton used Investor Funds for the benefit of the Amerigold Suites.[16]  As

---

[13] *See* Dkts. 167, 202.

[14] *See* Dkt. 67, Receiver's Initial Status Report, at 23.

[15] *See* Dkt. 500 at 5–6; Dkt. 308 at 39–41; and Dkt. 373 at 28–31. The annual premium for CGL coverage on the Amerigold Suites is \$179.972.44. [Dkt. 491 at 5]

[16] *See* Dkt. 435 at 9–10; Dkt. 308 at 38–39.

examples only, Investor Funds were used to purchase at least $250,000 in solar panels installed there;[17] the on-site employee who manages the property was regularly paid by HR Sterling, LLC (another Receivership Entity), which on many occasions used Wall Investor Funds to make such payments;[18] and contractors who provided repair or maintenance services at the Amerigold Suites, and bills incident to operating the property were regularly paid by JMJ Development (which received *extensive* Investor Funds)[19] and only later booked as intercompany transactions.[20]

Finally, the sales prices are not under market value, as Barton asserts without supporting evidence.[21]   The appraisals show the Hall Property is being sold above the average appraised value, and the Amerigold sale is well-within the statutorily required 2/3 of the average appraised value.[22]

### 2.  Selling Pre-Judgment Is Appropriate and Supported by Authority

As he has repeatedly, Barton argues sales do not serve the "business of a prejudgment receivership."[23] District courts can, however, and when necessary, do approve pre-judgment sales or limited liquidation, even for realty. *See FTC v. Consumer Def., LLC*, No. 2:18-CV-30 JCM, 2019 WL 266287, at *3 (D. Nev. Jan. 18, 2019) ("Courts regularly . . . authorize the sale of those [frozen] assets prior to finding liability in order to preserve the value of the estate."); *SEC v. Path*

---

[17] Dkt. 308, Exh. 9.

[18] Dkt. 308, ¶ 103.

[19] *Id.*

[20] *Id.*

[21] *See* Dkt. 517 at 7, Dkt. 516 at 6.

[22] *See* Motions, Dkt. 500 at 8. and Dkt. 502 at 5; *see also* Dkt. 501 at APP000046–337; Dkt. 503 at APP000043–250. Barton's argument that an appraisal values Amerigold at $7,100,000 is misleading.  The broker's opinion of value on which he relied, valued the property between $6,700,000–$7,100,000, while the more comprehensive appraisals placed value at $4,170,000 and $5,570,000.  Dkt. 500, at p. 8.

[23] He cites two cases, neither of which support his argument here. *SEC v. Current Fin. Services, Inc.*, 783 F. Supp. 1441, 1445–46 (D.D.C. 1992) (denying authority to wholly liquidate the defendant entity and place it in bankruptcy at the inception of a receivership); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (reiterating in *dicta,* Second Circuit's strong preference for bankruptcy procedures over receivership); and, *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 179 (9th Cir. 1960) (rejecting "total liquidation" as a penalty for failure to comply with registration provisions).

*Am., LLC*, No. C15-1350JLR, 2016 WL 1588384, at *5 (W.D. Wash. Apr. 20, 2016) (authorizing pre-judgment sale of real estate assets, due to high costs of maintaining "stasis," impending expiration of permits necessary for development, and timeline for purchaser to comply with building requirements); *FTC v. Johnson*, No. 2:10-CV-02203-RLH, 2011 WL 3841039, at *2 (D. Nev. Aug. 26, 2011) (granting Receiver's motion to sell where "Receiver ha[d] adequately . . . that liquidating the[] assets w[ould] limit expenses and avoid further deterioration or loss of value."); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) ("[L]iquidation . . . prior to entry of judgment, is appropriate because the evidence . . . demonstrated that the . . . entities' liabilities were greater than their assets and . . . ongoing management alone will drain money out of the estate . . . that otherwise could be returned to investors."). Indeed, this Court, has previously authorized the sale of realty prior to entry of a final judgment,[24] as have other federal judges sitting in this district.[25]

Continuing delays, including Barton's prior jurisdiction-less appeals of orders approving real property sales, have to date cost the receivership estate more than $2,000,000 in interest, and more in diminishing property value. Approving these sales now to allow them to close immediately after any appeal is resolved will minimize that continuing loss, at least for these properties.

For the reasons stated in the Verified Sale Motions and this Reply, the Receiver requests that the Court overrule each of Barton's objections and approve sales of the Properties based on the contracts presented to the Court.

---

[24] *See CFTC v. TMTE, Inc.*, No. 3:20-cv-2910, slip op. 548 (N.D.Tex. May 18, 2023).

[25] *SEC v. Gallagher*, No. 3:19-cv-0575, slip op. 136 (N.D.Tex. March 10, 2020) (Cummings, J.) (ordering sale of real property by receiver prior to judgment of liability); *SEC v. Amerifirst Funding, Inc.*, No. 3:07-cv-1188, slip op. 280 (N.D.Tex. Mar. 11, 2008) (Fitzwater, J.) (ordering sale of real property by receiver prior to final judgment); *SEC v. Stanford Int'l Bank*, No. 3-09-cv-0298, slip op. 979 (N.D.Tex. Jan. 25, 2010) (Godbey, J.) (permitting the sale of real property by receiver prior to judgment of liability).

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

/s/ Charlene C. Koonce
Charlene C. Koonce

– **11** –