Barton will have to repay the accrued interest, or, abandon properties to lenders who will otherwise, at some point, be entitled to foreclose, as many continually seek to leave to do even now.[10]

### 1. Approval Now Preserves Receivership Estate Value

As Barton is well aware, his serial (and improper) appeals of sale orders have dissuaded title companies from issuing title policies on prior Court-approved sales. Even assuming Barton will appeal Orders approving the instant sales and assuming new title companies will be unwilling issue title policies until such appeals are resolved, by seeking approval of these sales now, however, the Receiver seeks to run the due diligence periods related to each property sale concurrently with the Fifth Circuit's consideration of the appeal, such that the sales will close shortly after resolution of the appeal. This expedient timeline seeks to avoid accrual of hundreds of thousands of dollars in interest and related expenses (and potential loss of the sales) if the diligence period does not begin until after the appeal is resolved.

With respect to the TC Hall property, as discussed in the Motion, as of April 29, 2024, the balance on the loan encumbering the property was $4,653,655.88, **and interest at the extremely high rate of 9.009%, accrues at $1,023 per day,** eroding equity at the same rate.[11] Converting the value of this property to cash thus preserves the value of the receivership estate at the rate of more than $1,000 per day.

The Amerigold Suites drains receivership assets and time, interest on the loan encumbering the property erodes its value at $13,254 per month,[12] and **the property's value has decreased by**

---

[10] *See* Dkts. 245, 311, 321, 349, 498, 505.

[11] Dkt. 502 at 6. Further, in his email conference with Barton before filing the Motion, the Receiver sought Barton's agreement to the proposed sale (again, because of the extremely high interest rate) and offered to hold the sale proceeds in an escrow account during the pendency of the appeal. Barton, however, did not respond to that email.

[12] As discussed in the Motion, the lender has also sought permission to foreclose, twice, and has agreed to submit its claim for interest at a higher "default rate" in a claims process. *See* Motion, p. 5; *see also* Dkt. 409.