IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

**RECEIVER'S RENEWED, PARTIALLY UNOPPOSED
THIRD QUARTERLY FEE APPLICATION**

Pursuant to the Order Appointing Receiver [Dkt. 29] entered by the Court on October 18, 2022 (the "Initial Receivership Order") and a second Order Appointing Receiver [Dkt. 417] entered by the Court on November 29, 2023 (the "Second Receivership Order" or simply "Receivership Order" or "RO"), the Receiver is required to submit quarterly fee applications for authorization to pay the fees and expenses incurred by the Receiver and all personnel hired by the Receiver, including counsel to the Receiver. These fee applications must be submitted "[w]ithin

forty-five (45 days) after the end of each calendar quarter." Initial Receivership Order ¶ 64; Second Receivership Order ¶ 64.

On August 14, 2023, in accordance with the Initial Receivership Order, the Receiver originally filed his Third Quarterly Fee Application [Dkt. 300], which covers April 1, 2023 through June 30, 2023. On August 31, 2023, the Court entered an Order [Dkt. 306] denying without prejudice all pending motions—including the Third Quarterly Fee Application—and instructed the parties that they may "refile all such motions after the Court resolves the SEC's motion for entry of a new receivership order."

On November 3, 2023, and then again on February 14, 2024, and May 15, 2024, the Receiver filed Motions for Extension of Time, asking the Court to extend the deadline for filing his Third, Fourth, Fifth, and Sixth Fee Applications. The Court granted each of these motions.

As of the date of this Fee Application, the Receiver and his professional team have not been compensated for any time expended or reimbursed for any expenses incurred on or after April 1, 2023. As detailed in the Receiver's Seventh Quarterly Status Report [Dkt. 491], to date the Receiver has been unable to close on the sale of any of the real estate assets that are part of the Receivership, resulting in a continued dearth of available cash. Indeed, to date, the Receiver has been unable to service any of the extensive debt that encumbers the Receivership's real estate assets. While significant equity remains in many of the assets held by the Receivership, the continued delay of the Receiver's proposed (and previously approved) sales continues to cost the Receivership between $2 million and $3 million annually. *See* Seventh Quarterly Report [Dkt. 491] at 15. At the same time, the Receiver and his retained personnel necessarily continue to expend significant time and resources administering the Receivership.

The sale of the real estate assets within the Receivership are expected to bring considerable sums into the Receivership, once those sales close. In the interim, the Receiver has been able to settle certain litigation matters, which not only served to generate income, but also addressed concerns, complaints, and challenges asserted by creditors and interested parties whose interests are affected by the litigation stay included in the Receivership Order. . As will be detailed more fully in the Receiver's Quarterly Report for the Second Quarter of 2024, which will be filed on July 30, between April and June 2024, the Receiver deposited, among other things, the second payment from his settlement with HNGH ($50,000) and a settlement payment related to the Lost Creek litigation ($210,000). By this Fee Application, the Receiver accordingly seeks approval to pay a total of $427,849.67 in professional fees and expenses. While the Receiver will still be unable to service debt and pay certain property taxes for certain properties, his professionals did not agree to serve the receivership with accounts receivable exceeding a full calendar year. To the extent the Court is inclined to further delay or trim payments, the Receiver respectfully requests that the Court further delay or trim his time alone and not the time of his accountants or attorneys, because the Receivership will be unable to properly function if his accountants or attorneys must cease offering services due to non-payment (and the Receiver is doubtful he would be able to find replacements given the history of non-payment here).

In accordance with the Receivership Order, the Receiver originally provided the Securities and Exchange Commission (the "Commission") a complete copy of the proposed Application, together with all exhibits and relevant billing information. The Receiver has now provided the renewed Third Fee Application to the Commission. The Commission has indicated that it once again does not object to the relief sought in the application, with the exception of the 20% holdback

discussed below.  Defendant Barton originally indicated that he was opposed to this Application but has not responded to the latest conference.  He is thus deemed opposed.

This Third Quarterly Fee Application covers April 1, 2023 through June 30, 2023.  Fee Applications covering subsequent quarters will be filed at a later date.[1]

### I.
### FEES AND EXPENSES INCURRED

A.    **SFAR**

A copy of the Standardized Fund Accounting Report for the period April 1, 2023 through June 30, 2023 is attached as **Exhibit A**.

B.    **Receiver Fees & Expenses ($81,283.19).**

Fees.  By this Third Quarterly Fee Application, the Receiver requests authority to pay $69,363.50 in Receiver fees incurred from April 1, 2023 through June 30, 2023.  The Receiver provided 208.4 hours of service to the Receivership during this period, which, if the Receiver were to bill at his standard hourly rate, would otherwise result in a bill of $114,620.[2]

Moreover, the Receiver has also voluntarily reduced or otherwise written-off portions of his work on top of the steeply discounted hourly rate.  For example, the Receiver has written off the entirety of his time related to drafting the prior quarter's fee application, bi-weekly meetings with the Amerigold property manager to drop off paychecks, and regular maintenance of the extensive email and correspondence generated by the Receivership, among other things.  This resulted in write-offs of 25.4 total hours ($9,779 in savings) that would have otherwise been billed

---

[1] Notably, because the Receiver and his team were forced to spend considerable time between July 1, 2023 and the present, significant administrative expenses (in the form of professional services) have continued to accrue. The Receiver anticipates filing a motion to extend his deadline to file the Fourth, Fifth, Sixth, and Seventh Fee Applications on or before the current deadline of August 14, 2024.

[2] The Receiver's discounted hourly rate for this matter is $385 per hour.  Mr. Thomas' regular billing rate at the time for non-receivership matters is $550 per hour (a discount of 30%).

to the Receivership Estate.  The Receiver also reduced his rate from $385 per hour to $200 per hour for certain work that he needed to undertake but that ordinarily could otherwise be performed by a less expensive member of his team.  This work included meetings at 2999 Turtle Creek, as well as lengthy internal meetings with counsel, totaling 5.9 hours at the reduced rate ($1,091.50 in savings).

The Receiver's application of a steeply reduced hourly rate and the other reductions and write-offs should not be interpreted as implying that the Receiver's work that is the subject of these reductions had no or little value, was in any manner subject to an objection, or otherwise not worthy of reasonable compensation.  To the contrary, the Receiver believes that most attorneys or receivers would charge for these services and not agree to such steep discounting.  Instead, these voluntary, steep reductions reflect the Receiver's concern for the investors and other creditors impacted by this Receivership, and his desire to minimize the administrative expense to the Receivership where appropriate, among other things.  Defendant Barton's continuing practice of challenging many of the Receiver's efforts during the Second Quarter of 2023 (and in the months since) has once again necessitated significant time and attention by both the Receiver and, more predominantly, his counsel.

The services provided by the Receiver from April 1, 2023 through June 30, 2023, as well as itemized reductions and write-offs, are set forth in the invoices attached hereto as **Exhibit B**.  Where appropriate, the Receiver has redacted privileged information and information that is likely to prejudice the Receivership if publicly disclosed at this time.  If the Court desires, the Receiver will submit unredacted copies of this and prior invoices for *in camera* review.  The services are also summarized in the Receiver's Fourth Status Report [Dkt. 299], which was filed on July 31, 2023.

Expenses.  In addition, to assist the Receivership Estate, the Receiver incurred expenses in the amount of $11,919.69 between April 1, 2023 through June 30, 2023.  *See* Ex. B at 5-6.  These expenses included moving costs related to the movement of documents from 2999 Turtle Creek to the Receivership's storage units, entity-related searches with the Texas Secretary of State, PACER fees, and postage fees for mail forwarding, among other things.  The Receiver did not seek reimbursement for any mileage fees.

In sum, pursuant to the Receivership Order, the Receiver seeks authority to pay a total of $81,283.19 in Receiver fees and expenses incurred during the Second Quarter of 2023.

**C.    Receiver's Counsel Fees and Expenses ($208,628.50).**

Fees.  The law firm of Brown Fox PLLC ("Brown Fox") serves as primary counsel for the Receiver.  By this Application and pursuant to the Receivership Order, the Receiver requests authority to pay Brown Fox $208,628.50 in non-receiver fees billed for work by Brown Fox from April 1, 2023 through June 30, 2023.

The attorneys and paralegals of Brown Fox who provided services to the Receiver during this period, their billable rates, and the hours billed are summarized as follows:

| Attorney/Paralegal | Hours Billed | Discounted Billable Rate | Total Billed |
|---|---|---|---|
| Charlene Koonce (Partner) | 281.4 | $385 | $108,339.00 |
| Margaret Mead (Partner) | .30 | $385 | $115.50 |
| Tim Wells (Associate) | 363.7 | $200 | $65,494.00 |
| Alan Carrillo (Associate) | 92 | $300 | $26,100.00 |
| Shannon Latham (Paralegal) | 35 | $110 | $3,850.00 |
| Joshua Mahaffey (Associate) | 17.2 | $275 | $4,730.00 |
| TOTALS: (blended rate) | 789.60 | | $208,628.50 |

Similar to the Receiver, the attorneys representing the Receiver have agreed to steeply discounted hourly rates in this matter. Moreover, the Receiver's counsel has also agreed to write-offs of time incurred during the Second Quarter of 2023. The Receiver and his primary attorney, Charlene Koonce, have continued to strive to pass along any work that did not merit their expertise to less-expensive associates or paralegals. This has continued to result in substantial work by associate Tim Wells in particular. For certain tasks performed by Mr. Wells, Brown Fox has further agreed to reduce his hourly rate to that of a paralegal ($110 total) for certain tasks that either took longer than anticipated or that did not justify billing at Mr. Wells' full hourly rate. Brown Fox has agreed to write-down approximately 61.4 hours of Mr. Wells' time from the Second Quarter of 2023 ($5,526 in savings), the vast majority of which involved coordinating the movement of documents from 2999 Turtle Creek to the Receivership's storage facilities. Brown Fox has also agreed to write-off the entirety of 13.6 hours of associate work during the Second Quarter of 2023 attending a mediation and other miscellaneous receivership items ($3,220 in savings). Once again, these reductions and write-offs are not a reflection of the work that was performed and should in no way minimize or call into question any of the work performed by the Receiver's counsel. To the contrary, the Receiver and his team are seeking to minimize the expense to the Receivership Estate where possible.[3]

Brown Fox provided valuable services to the Receiver during the Second Quarter of 2023. A description of these services is set forth in the invoices attached hereto as **Exhibit C**. Where appropriate, the Receiver has redacted privileged information and information that is likely to

---

[3] Defendant Barton has previously complained of the Receiver's efforts in connection with Barton's appeal of several of the Court's Orders to the Fifth Circuit. Because these appeals stem from motions filed by the Receiver and because there was uncertainty whether the SEC would dedicate Agency resources to defending the resulting Orders, the Receiver believes that his efforts were (and continue to be) necessary and reasonable.

prejudice the Receivership if publicly disclosed at this time.  If the Court desires, the Receiver will submit unredacted copies of this and prior invoices for *in camera* review.  The services are also summarized in the Receiver's Fourth Status Report [Dkt. 299], which was filed on July 31, 2023.

Expenses.  Brown Fox did not incur any separate non-receiver expenses during the Second Quarter of 2023.

In sum, pursuant to the Receivership Order, the Receiver seeks authority to reimburse Brown Fox the total of $208,628.50 for fees and expenses incurred between April 1, 2023 through June 30, 2023.

### D.    Receiver's Accountant Fees and Expenses ($137,937.98).

The accounting firm of Ahuja & Clark, PLLC ("Ahuja & Clark") serves as the Receiver's accountants.  Ahuja & Clark submitted the invoice attached hereto as **Exhibit D** for the accounting services rendered during the period from April 1, 2023 through June 30, 2023.  During the Second Quarter of 2023, the accountants logged 577.60 labor hours for $116,303.00 in fees to the Receivership Estate.

As detailed more fully in the Receiver's Fourth Status Report [Dkt. 299], the Accountants' efforts during the Second Quarter of 2023 related to examination of the miscellaneous QuickBooks files and tax documents obtained by the Receiver, preparing certain Receivership tax filings, and beginning a forensic accounting to determine funds received by the Receivership Entities and identify potential fraudulent transferees, among other things.  The Receiver's accountants have additionally voluntarily agreed to write-off an additional $10,707.00 related to internal discussions and background information on the various Receivership Entities.

Expenses.  In addition, to assist the Receivership Estate, Ahuja & Clark incurred expenses in the amount of $21,634.98 between April 1, 2023 through June 30, 2023.  *See* Ex. E at 2, 4.

These expenses included fees to QuickBooks for certain online accounts and software fees in conjunction with the forensic accounting.

Pursuant to the Receivership Order, the Receiver seeks authority to pay Ahuja &Clark the total of $137,937.98 for fees and expenses incurred during the Second Quarter of 2023.

### E.    Veracity's Fees and Expenses ($9,891.36).

The Receiver retained Veracity Forensics ("Veracity") to assist in securing the various digital assets located at 2999 Turtle Creek and with establishing the Receivership Website. Veracity submitted the invoices attached hereto as **Exhibit E** for fees and expenses rendered during the period from April 1, 2023 through June 30, 2023.  These services included creating forensic images of additional digital assets recovered at 2999 Turtle Creek, storage of devices and images, and imaging of certain online servers the Receiver gained access to during the Second Quarter of 2023.

Pursuant to the Receivership Order, the Receiver seeks authority to pay Veracity the total of $9,892.36 for fees and expenses incurred during the Second Quarter of 2023.

*    *    *    *

Based on the foregoing, the Receiver believes the services rendered to the Receivership by the Receiver, the Receiver's law firm Brown Fox, the Receiver's accountant Ahuja & Clark, and the Receiver's IT Professional Veracity were valuable and that the rates charged to the Receivership were fair and reasonable.  Moreover, the expenses incurred for the Receivership were also reasonable and necessary.  As of the filing of this Application, the Receiver has not yet closed on the previously approved sales of several properties, which collectively are expected to bring several million dollars into the Receivership Estate.  As outlined in the Receiver's prior Quarterly Reports, until sales begin to close, the Receiver anticipates that the Receivership will continue to

be cash-strapped, although certain settlements of litigation matters is expected to continue generating some income.

The Receivership Order provides that "Quarterly Fee Applications *may be subject* to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court." RO ¶ 66 (emphasis added). Given the substantial reductions already taken (and outlined above), combined with the delays that have resulted in a 100% holdback for over a year, the Receiver once again respectfully requests that no holdback occur in this case. The SEC has indicated that it believes it would be appropriate to impose a holdback in the amount of 20% of the amount of fees and expenses for each quarterly fee application filed with the Court as described in the Order and in accordance with the SEC's standard receivership billing procedures. Again, however, the holdback is unnecessary here, where, for example, the Receiver has already voluntarily discounted his own fees by approximately 40% ($69,363.50 billed versus $114,620 if no discounts were applied).

In accordance with the Receivership Order, the attorneys for the Securities and Exchange Commission previously reviewed the invoices of the Receiver, Brown Fox, Ahuja & Clark, and Veracity and have no objection to the invoices.

**II.**
**LEGAL DISCUSSION OF GUIDELINES FOR PAYMENT OF RECEIVERSHIP FEES AND EXPENSES**

In reviewing the total fees (not including expenses) of the Receiver, the Receiver's counsel, and the Receiver's accountants for which approval is sought in this Application (collectively, $394,295.00), divided by the hours worked (1,575.60 hours), the lodestar average rate per hour is

$250.25.[4]  In accordance with the law governing calculation of the lodestar rate, the lodestar rate for which approval is sought in this case is reasonable and does not merit any adjustment.

The "lodestar" method of evaluating the reasonableness of fees, which has been expressly approved by the Supreme Court, requires the court to look into the prevailing market rates in the relevant community and compare the prevalent rates with the average rate charged in the matter in issue.  *Perdue v. Kenny*, 130 S.Ct. 1662, 1673 (2010).  The lodestar method also includes most of the relevant factors constituting a "reasonable" fee but does not expressly require the "subjective" *Johnson* factor analysis.[5]  *Id.*

The Court calculates the lodestar by determining the number of hours reasonably expended by an appropriate hourly rate in the community.[6]  *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  In evaluating whether requested fees are reasonable, the court may use its own expertise and judgment to independently assess the value of an attorney's services.  *Davis v. Bd. of Sch. Comm'rs of Mobile County,* 526 F.2d 865, 868 (5th Cir. 1976).  The Court also looks for evidence of "billing judgment," or the attorney or receiver's decision to discount or write off time that was unproductive or duplicative.  *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006).  The amount of the award, and any reduction of the requested fee award, is within the trial court's discretion.  *See, e.g.*, *United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989).

---

[4] As of June 30, 2023, the Receiver, Receiver's counsel, and Receiver's accountants have billed at a cumulative lodestar average rate of $268.05.

[5] These *Johnson* factors are nevertheless addressed herein.  *See infra*.

[6] The movant bears the burden of proving that the compensation requested is reasonable, and satisfaction of this burden requires that the movant present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required.  *Louisiana Power*, 50 F.3d at 324.

Additional considerations are also relevant in the context of an equity receivership. First, the agreement or opposition of the Commission to the fee application is entitled to great weight. *See, e.g.*, *SEC v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973). Further, given the public service nature of equity receiverships, courts also consider the amounts recovered or other results obtained by the receiver in determining what constitutes a "reasonable fee." *SEC v. Goren,* 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003). Additionally, examination of reasonableness and necessity should take into account all circumstances surrounding the receivership. *See SEC v. W.L. Moody & Co., Bankers (Unincorporated)*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd, SEC v. W.L. Moody & Co.*, 519 F.2d 1087 (5th Cir. 1975). The complexity and difficulty associated with the receivership are highly relevant factors in determining the reasonableness of professional fees. *See Fifth Ave. Coach Lines*, 364 F. Supp. at 1222 (awarding interim fees and expenses to law firm for role in receivership and noting that it involved wide variety of complex legal matters requiring the time, competence, and diverse resources of a law firm of high caliber). Further, Courts examine the credentials, experience, reputation, and other professional qualities required to carry out a court's orders when assessing the reasonableness of the rates charged for services to a receivership. *See W.L. Moody & Co.,* 374 F. Supp. at 481 (holding that a court should give "considerable weight" to "a receiver's abilities, as required by the tasks of the receivership"); *see also Fifth Ave. Coach Lines*, 364 F. Supp. at 1222 (fees awarded in full because they were based on law firm's usual hourly rate and supported by meticulous records).

The Receiver submitted detailed descriptions of the matters on which services were expended, the number of hours billed by each professional, the rates charged by each, and the lodestar calculation for the fees submitted in this Application. Further, the Receiver's invoices and this Application demonstrate that billing judgment was exercised in the reduction of the

standard rates charged by the Receiver and the retained professionals, in staffing the work, performing it efficiently, and in writing off time and further reducing rates where necessary. Finally, the Receiver requests that the Court judicially notice the much higher lodestar and hourly rates approved in other receiverships in Texas.[7]

The request for approval of the disbursements is also consistent with the *Johnson* factors set forth by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Based on the lodestar calculation and the *Johnson* factors, the Receiver believes that the fees submitted are appropriate, just, and reasonable:

**A.** **The Time and Labor Required.** The Receiver respectfully directs the Court's attention to the foregoing summary of unpaid fees and expenses, which identifies the total number of hours billed by the Receiver, the Receiver's attorneys, and accountants (1,575.60 hours total) for the period April 1, 2023 through June 30, 2023. Considerable portions of the hours expended by the Receiver and his counsel continued to result from various challenges by Defendant Barton to the Receiver's efforts. While substantial work remains to be completed, the Receiver remains hopeful that such challenges (and the resulting expense to the Receivership Estate) will be less prevalent in future quarters.

**B.** **The Novelty and Difficulty of the Questions.** Federal equity receiverships require extensive effort in order to act swiftly and efficiently in securing assets, obtaining documents and

---

[7] *See*, *e.g.*, *SEC v. Agridime LLC, et al.,* Case No. 4:23-cv-1224, (N.D. Tex.) ($1,395 hourly rate for receiver); *SEC v. AriseBank,* No. 3:18-CV-00186 (N.D. Tex) (approving receiver's fee of $525 per hour and counsel's fee of $525 per hour [Dkt. 92]); *SEC v. Narayan,* No. 3:16-CV-1417, 2018 WL 11361757 (N.D. Tex. June 19, 2018) (approving receiver's fee of $445 per hour and noting that standard rates for the attorneys in the case, including the receiver, were discounted 10% and capped at $450); *SEC v. Stanford Int'l Bank Ltd.,* No. 3:09-CV-00298 (N.D. Tex) (approving receiver's fee of $550 per hour [Dkt.3161]); *SEC v. Correll*, No. 4:05-CV-472 (E.D. Tex.) (approving Receiver fees of $400 per hour and lead counsel fees of $585 per hour); *SEC v. Amerifirst Funding, Inc., et al.*, No. 3:07-CV-1188 (N.D. Tex.) (noting in Dkt. 117 that Receiver's counsel's rates, discounted by 10–20% is $420 per hour); *SEC v. W Financial Group, LLC, et al.*, No. 3:08-CV-0499-N (N.D. Tex.) (noting in Dkt. 65 that Receiver's counsel's rate is $510 per hour, and $165 per hour for a law clerk); and *CFTC v. Pousa*, No. 1:12-cv-00862 (W.D. Tex.) (approving Receiver fees in excess of $600 per hour).

data from computers to find additional assets, and to communicate with investors and other parties. Additionally, as set forth in the Receiver's prior status reports, the majority of properties subject to this Receivership face substantial legal challenges.   To date, the Receiver and his personnel have effectively gained control of the Defendants' assets and continued the process of interfacing with the investors, financial institutions, creditors, and persons in possession of information necessary for the Receiver to accomplish his mandate.

   **C.**  **The Requisite Skill to Perform the Service.**  The Receiver believes the services performed in this case to date required individuals possessing considerable skill in the administration of receiverships, asset seizure, collection, and litigation.  The Receiver, Brown Fox, and Ahuja & Clark have considerable skill and experience in such areas.

   **D.**  **The Preclusion of Other Employment Due to Acceptance of the Case.**  Neither the Receiver, Brown Fox, nor Ahuja & Clark have declined any representation solely because of their services in this case.  However, performing all of the work necessary since the inception of the Receivership has substantially limited the Receiver's and Receiver's counsel's available time to dedicate to other pending matters for which their rates were not reduced and which were not subject to write-off or delayed payment (which delays have been significant).

   **E.**  **The Customary Fee.**  The hourly rates sought herein for the Receiver and the Receiver's attorneys and accountants are *substantially* lower than the rates charged by other practitioners of similar experience levels in Texas.  Indeed, the per hour rates charged by the Receiver's counsel whose fees are included herein are substantially lower than the rates currently charged on other receiverships pending in Texas.[8]  The lodestar rate of $250.25 per hour (and $268.05 cumulatively) also demonstrates that when appropriate the Receiver is having work

---

[8] *See* footnote 7, *supra*.

performed by less expensive attorneys or legal assistants or is otherwise reducing the amounts billed to the Receivership Estate.

F.    **Whether the Fee is Fixed or Contingent.**    The Receiver's fees and his counsel's fees are fixed insofar as monies exist by way of Receivership Assets from which to pay such fees, but payment of the fees and expenses is subject to approval by the Court.    Moreover, as detailed in the Receiver's Status Reports filed to date, until the Receiver's settlement with DLP, it was unclear whether and when substantial funds would be secured to pay the Receiver and counsel's fees in this case.    Similarly, appeals and other challenges have delayed the Receiver's ability to bring other significant sums into the Receivership.    Brown Fox has agreed to consider a separate contingency engagement for certain ancillary litigation or other work incident to this engagement, should the need arise.

G.    **Time Limitations Imposed by the Client or Other Circumstances.**    Performing the mandate of the Receivership Order has been extremely time-sensitive given the nature of the appointment, the on-going concerns of many of the properties, the absence of funds to administer the estate, and other related concerns.    Likewise, deadlines for the Receiver related to reporting, duties related to asset recovery, management and liquidation are generally time sensitive.    And identifying and communicating with investors, primarily through the Receivership Website, is extremely time-sensitive.    Finally, Defendant Barton's litigation conduct to-date has resulted in a multitude of time-sensitive and extensive briefing with the District Court and the Fifth Circuit Court of Appeals.

H.    **The Amount Involved and the Results Obtained.**    The fees for which payment is sought were for work summarized previously.    The Receiver's attorneys contributed significantly to the Receiver's recovery of settlement funds that were obtained directly through the

efforts of the Receiver and the personnel he retained.  Moreover, the Receiver has continued the process of identifying and securing additional sources of recovery and has entered into agreements that should result in several million dollars coming into the Receivership Estate within the coming months.

**I.      The Experience, Reputation and Ability of the Attorneys.**  Both the Receiver, and his primary counsel, Charlene Koonce at Brown Fox, have extensive experience in representation of equity receivers in federal securities or commodities enforcement cases. Ms. Koonce has done so for more than twenty years.  The reputation of Brown Fox, PLLC is recognized and respected in these fields.  Both the Receiver and Ms. Koonce also have extensive experience in litigation in federal and state courts in and around the Northern District of Texas.

**J.      The Undesirability of the Case.**  The representation of the Receiver incident to this case has not been undesirable. Defendant's blatant disregard for the requirements imposed on him by the Receivership Order, his frequent mischaracterizations of the work performed by the Receiver, and the resulting challenges have considerably increased the complexity and challenges of the appointment.

**K.      The Nature and Length of the Professional Relationship with the Client.** Brown Fox and Ahuja & Clark have previously represented the Receiver in one other receivership.

**L.      Awards in Similar Cases.**  The Receiver believes the fees requested in this case for his counsel are less than or equal to those which have been awarded in similar cases in federal courts in Texas.

### III.
### CONCLUSION

In conclusion, the Receiver represents and certifies that: (i) he has personally reviewed the entire contents of this Fee Application; (ii) the fees and expenses included in this Application were

incurred in the best interests of the Receivership Estate; and, (iii) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof. The Receiver respectfully requests that the Court enter an order approving the fees and expenses requested in this Third Quarterly Fee Application, for the period from April 1, 2023 through June 30, 2023.

Dated: July 26, 2024

Respectfully submitted,

**RECEIVER CORTNEY C. THOMAS**

*/s/ Cortney C. Thomas*
Cortney C. Thomas
  State Bar No. 24075153
  cort@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

**CERTIFICATE OF CONFERENCE**

I hereby certify that this Application and copies of the invoices that are exhibits to this Application were provided to counsel for the Securities and Exchange Commission by agreement and in accordance with the Receivership Order on July 15, 2023. The Receiver subsequently conferred with counsel for the Securities and Exchange Commission, who indicated that the SEC does not object to the relief sought in the application; provided that, the SEC believes it would be appropriate to impose a holdback in the amount of 20% of the amount of fees and expenses for each quarterly fee application filed with the Court as described in the Order and in accordance with the SEC's standard receivership billing procedures. The Receiver also provided a copy of this Application to counsel for all Defendants on August 11, 2023. Defendant Barton previously indicated that he was opposed to the relief requested herein but has not responded to a more recent conference request.

/s/ Cortney C. Thomas
Cortney C. Thomas

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this Quarterly Fee Application is being filed with the Court's electronic-filing system.

/s/ Cortney C. Thomas
Cortney C. Thomas