**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff,* | § § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants.* | § | |

**RECEIVER'S REPLY IN SUPPORT OF VERIFIED MOTION
TO RATIFY BM318, LLC'S SETTLEMENT AGREEMENTS WITH
THE DIXON WATER FOUNDATION AND LUMAR LAND & CATTLE, LLC**

**BROWN FOX PLLC**

Charlene C. Koonce
  Texas Bar No. 11672850
  charlene@brownfoxlaw.com
C. Alan Carrillo
  Texas Bar No. 24109693
  alan@brownfoxlaw.com
8111 Preston Road, Suite 300
Dallas, TX 75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

Cort Thomas, the court-appointed Receiver, files this Reply in support of his *Verified Motion to Ratify BM318, LLC's Settlement Agreements with the Dixon Water Foundation and Lumar Land & Cattle, LLC* (the "Motion") [Dkt. 524],[1] and to rebut Barton's response to the Motion (the "Response") [Dkt. 541], respectfully showing the Court as follows:

## I.    INTRODUCTION

The Motion relies on the correct legal standards and provides an evidentiary record supporting the Court's ratification of the Settlement Agreements, which were duly approved by the Bankruptcy Court after a properly noticed Evidentiary Hearing.

The Response, on the other hand, is smoke and mirrors. Barton had the opportunity to file a timely objection in advance of, and to call witnesses and offer admissible evidence at, the Evidentiary Hearing. Barton squandered that chance even though he appeared at the Evidentiary Hearing through counsel, who hand-delivered the last-minute, third-party "offer" to purchase BM318's legal claims to the Receiver, cross-examined the Receiver, and gave opening and closing arguments in support of Barton's oral objection. The Bankruptcy Court ultimately overruled Barton's untimely objection in the Findings and Settlement Approval Orders, which Barton could have appealed. He did not.

Now Barton objects to the Settlement Agreements' ratification. The Response rehashes allegations against Lumar that the Bankruptcy Court concluded that BM318 has no standing to pursue, characterizes new and self-serving third-party affidavits as "evidence," and demands another hearing. But the Response offers no evidentiary or legal basis to question the Findings or Settlement Approval Orders.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Barton's other arguments, which this Court and the Fifth Circuit have rejected before, are also meritless. First, this Court is not divested of jurisdiction to ratify the Settlement Agreements. The Court's ratification will not alter the "case on appeal" or expand the scope of the Second Receivership Order. Second, the Settlement Agreements are in the best interest of the Receivership Estate, and the Receiver can preserve estate value pre-judgment. Third, 28 U.S.C. § 2001 in inapplicable—a duplicative hearing is not required.

Therefore, the Receiver respectfully requests that the Court grant the Motion.

## II.    <u>ARGUMENT</u>

### A.    The Court May Ratify the Settlement Agreements Despite Barton's Interlocutory Appeal of the Second Receivership Order.

Barton's interlocutory appeal of the Second Receivership Order has no effect on the Receiver's authority to enter into the Settlement Agreements or this Court's authority to ratify them. Barton has not sought a stay in connection with his appeal of the Second Receivership Order. His argument that this Court should "steer clear" of irrevocable actions during his appeal thus begs the question of why he has not sought a stay if he had grounds to do so.[2]

Relying on the same authorities presented and rejected numerous times, Barton argues this Court must "preserve the status quo" while his appeal of the Receivership Order is pending. But the Fifth Circuit rejected this argument in denying several motions to stay the entire case as well as various proposed sales and settlements.[3] And this Court rejected the same argument in granting many motions by which the Receiver sought authority to sell property or approve settlements

---

[2] Barton should not obtain indirectly what he has been denied (or failed to seek) directly. *See e.g., Hancock v. Chicago Title Ins. Co.*, No. 3:07-CV-1441, 2010 WL 3766695, at *4 (N.D. Tex. Sept. 28, 2010) (denying motion which would have enabled the plaintiffs to "obtain indirectly from this court what they could not secure directly from the Fifth Circuit," where appellate court had denied similar motion to dismiss the appeal).

[3] *See SEC v. Barton,* Appeal No. 22-11132 (the "First Appeal"), Dkt 05, Mem. Op., January 6, 2023; First Appeal, Dkt. 110-1, Mem. Op., June 8, 2023; First Appeal, Dkt. 132-2, Mem. Op., June 9, 2023.

regarding different claims.[4] The Receiver incorporates his past refutations of Barton's oft-repeated argument raised in Section III.B of the Response, including the specific arguments regarding the same cases Barton cites in the Response and has cited numerous times.[5]

The purpose of an order appointing a receiver is preserving the value of receivership estate assets by establishing the Court's *in rem* possession and control over the receivership estate—not preserving the status quo.[6] Thus, the Second Receivership Order empowers the Receiver to "compromise" claims with "due regard to the realization of true and proper value" and to "compromise" legal proceedings as may "be advisable or proper.[7] The Receiver's determined that he could not equitably put off Dixon and Lumar forever, and that the cash obtained in the Settlement Agreements can be preserved whereas unsupportable claims headed to trial cannot.

**B.      The Court Retains Jurisdiction to Grant the Motion, Which Does Not "Expand the Scope of the Receiver's Authority."**

Barton incorrectly maintains that this Court lacks "jurisdiction to modify the order and expand the scope of the Receiver's authority" while the Second Receivership Order is on appeal. But the scope of a jurisdictional divestiture during an interlocutory appeal depends on the "nature of the appeal." *Alice L. ex rel. R.L. v. Dusek,* 492 F.3d 563, 564–65 (5th Cir. 2007) (per curiam).

**1.      The Fifth Circuit Has Implicitly Determined That Jurisdiction to Continue Administering the Estate Remains in This Court.**

During the pendency of an interlocutory appeal, a district court "may still proceed with matters not involved in the appeal." *Taylor v. Sterrett,* 640 F.2d 663, 667–68 (5th Cir.1981); *Alice*

---

[4] *See* Dkts. 119, 122, 159, 227, 435, 470, and 528.

[5] *See* Dkts. 435, 513, and 528.

[6] *See* Dkt. 417 at 2. Further, Barton's appeal of the Preliminary Injunction (the "Injunction") does not necessitate preserving the status quo with respect to management of the Receivership Estate, because the Injunction enjoins and freezes only entities and assets that are not in receivership, and nothing about the Motion impacts the entities and assets included within the scope of the Injunction. *See* Dkt. 418 at 7.

[7] Dkt. 417 ¶¶ 39, 44.

*L. ex rel. R.L.,* 492 F.3d at 564–65. In denying Barton's repeated motions to stay during the pendency of his appeal of the Initial Receivership Order, the Fifth Circuit necessarily concluded that continued administration of the Receivership Estate was not "a matter involved in [that] appeal."[8]

Moreover, Congress also exempted interlocutory appeals of receivership orders from any automatic stay that would otherwise arise during an appeal. FED. R. CIV. P. 62(c). Surely no court intends an appellant to obtain indirectly—through an all-encompassing interpretation of the "nature of the case on appeal"—what Congress expressly withheld pursuant to Rule 62(c) and 28 U.S.C. § 1292(a)(2). Barton only offers distinguishable authorities. For example, the Fifth Circuit, in *In re Fort Worth Chamber of Commerce*,[9] determined that a district court had abused its discretion by transferring a case out of the district while the appeal of the denial of a preliminary injunction was pending. The Fifth Circuit concluded that the district court's transfer order would "frustrate" the appellate court's "ability to provide meaningful relief" because the appellate court "would have no case to review." *Fort Worth Chamber*, 100 F.4th at 536.

In comparison, nothing about continued administration of the Receivership Estate, even ratification of the Settlement Agreements, frustrates the Fifth Circuit's ability to provide

---

[8] First Appeal, Dkt 05, Mem. Op., January 6, 2023 (denying Barton's motion to stay order appointing receiver, pending appeal and alternative motion to stay "components" of that order and other orders that became part of it, including orders authorizing sale of property); First Appeal, Dkt. 110-1, Mem. Op., June 8, 2023 (denying motion for partial stay, which sought, among other things, to suspend the receiver's power to sell the assets of Receivership Entities and stay the Receiver's ability to undertake receivership activities other than caring for the seized assets); First Appeal, Dkt. 132-2, Mem. Op., June 9, 2023 (denying similar motion to stay transfer of possession of Turtle Creek Property and carrying the remainder of the motion to stay with the case). In none of these orders did the Fifth Circuit even hint that the interlocutory appeal divested this Court of jurisdiction to continue activities that the Fifth Circuit and this Court declined to stay. Instead, the Fifth Circuit implicitly concluded otherwise in denying the stays requested by Barton and in expressly "carrying" part of the last motion with the appeal. Had the jurisdictional divestiture Barton now relies on occurred, the issues encompassed by Barton's requested stays would already have been included in the appeal and the Fifth Circuit would have granted Barton's motions to stay to preserve its ability to render meaningful relief. That did not happen.

[9] 100 F.4th 528, 531 (5th Cir. 2024).

meaningful relief in Barton's appeal. As it did when it vacated the Initial Receivership Order and despite this Court's approval or ratification of numerous settlement agreements, the Fifth Circuit can resolve Barton's pending appeal if it determines error occurred in entering the Second Receivership Order.

> **2.    Ratification of the Settlement Agreements Does Not Expand the Receiver's Authority.**

Barton's argument that entering into the Settlement Agreements impermissibly expands the Receiver's authority is also meritless.[10] This Court has already empowered the Receiver, upon the Court's further orders pursuant to the applicable statutory processes, to settle claims. Therefore, the ratification of settlements that the Receiver was authorized to enter has absolutely no effect on the scope of the Second Receivership Order or the Receiver's authority.

> **C.    The Settlement Agreements Are in the Best Interests of the Receivership Estate.**

The Motion provides two bases for ratification—a process that the Second Receivership Order does not require. First, consistent with the procedure adopted by the Court when lifting the stay on the Bankruptcy Case and Adversary Proceeding, the Receiver went to the Bankruptcy Court and obtained approval under the standards applicable to an adversary proceeding. This is appropriate because the sole asset of BM318 is claims asserted in a bankruptcy adversary

---

[10] First, the Response supports this argument with an "e.g." cite to a Sixth Circuit case, which is nothing more than a repackaged assertion that the Court lacks jurisdiction to alter the case on appeal. *See City of Cookville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2007). As discussed above, that argument should be rejected. Second, the case cited regarding jurisdiction to continue administering the Receivership Order, *Fort Worth Chamber of Commerce,* deals with a final judgment rather than an interlocutory one, and again, does not involve a Receivership Order. *See Fort Worth Chamber*, 100 F.4th at 531. Likewise, *SEC v. Kirkland*, a 2006 case from the middle district of Florida that has never been cited by any other court, lends no support. The discussion about approving a sale was *dicta*, because the only motion before the court sought to lower the listing price of certain property. *Kirkland*, No. 606CV-183-ORL-28KRS, 2006 WL 3333672, at *1–2 (M.D. Fla. Nov. 16, 2006). Further, the *Kirkland* court considered the permissibility of altering an injunction on appeal rather than the scope of an appeal involving a receivership order. *Id.* Finally, the opinion relied on *Coastal Corporation*, which involved a district court's authority to *dissolve* an injunction while an appeal was pending. *Coastal Corp.*, 869 F.2d at 819.

proceeding. Second, the Bankruptcy Court's record supports finding that the Receiver has satisfied the parallel equitable standard applicable in a receivership proceeding.

### 1. The Court Should Adopt the Bankruptcy Court's Findings and Settlement Approval Orders.

The Motion explains why the Court should adopt the findings and determination of the Bankruptcy Court.[11] The Motion cited to the Fifth Circuit standard for the approval of a debtor's claim asserted in an adversary proceeding pending in bankruptcy court. That standard considers the probability of success, the complexity and likely duration and cost of litigation, and all other factors bearing upon the wisdom of the compromise.[12] The Motion also supplies the relevant evidentiary record from the Bankruptcy Court, including the Evidentiary Hearing transcript and admitted evidence, the Findings, and the Settlement Approval Orders.[13]

The Response offers one paragraph in opposition to this process, wherein Barton asserts the Findings and Settlement Approval Orders were solely regarding the bankruptcy estate and not the Receivership Estate. But Barton should not be permitted to sidestep the Bankruptcy Court proceedings so easily. As explained in the Motion, the sole asset of BM318 is the bankruptcy-law claims reserved regarding Dixon that were being pursued in the Adversary Proceeding.[14] And, clearly, the parties are debating whether that asset should have been converted from an inchoate litigation claim to cash that the Receiver asserts has the same value. The Court should adopt the Bankruptcy Court's determination for settling the Adversary Proceeding.

Barton instead asks this Court to conduct its own hearing on the Settlement Agreements. But a second hearing would be unnecessarily duplicative. Barton received proper notice of the

---

[11] *See* Motion at 16.

[12] *See id.* at 15.

[13] *See id.* at 7–9.

[14] *See id.* at 9–10.

9019 Motions and the Evidentiary Hearing.[15] Barton personally attended the Evidentiary Hearing with counsel, who hand-delivered the purported third-party "offer" to purchase BM318's legal claims to the Receiver, cross-examined the Receiver, and gave opening and closing arguments in support of an oral objection to the 9019 Motions.[16] Barton did not file a timely objection to the 9019 Motions, offer evidence or call any witnesses in the evidentiary hearing (including the supposed third-party bidder), testify himself (even though his counsel said he'd "like Mr. Barton to testify to those issues, because he was central here"[17]), or appeal the Findings and Settlement Approval Orders.[18] Barton's call for another hearing rings hollow—the Court need not heed it.

### 2. The Court Should Determine That the Settlement Agreements Are in the Best Interest of the Receivership Estate.

In the Motion, the Receiver also provides the Fifth Circuit standard for the approval of a settlement by a receiver, which is a broad discretionary question as to whether the settlement is fair and equitable and in the best interest of the receivership estate.[19] The Motion shows that BM318's claims would not likely succeed at trial, the amount received under the Settlement Agreements is fair and equitable, and the timing of the Settlement Agreements is proper because the opposing parties would have been entitled to proceed to trial.[20] The Bankruptcy Court's record supports the view that the claims faced an uphill battle, that there was a lack of evidence, and that converting the claims to equivalent cash was necessary to avoid further legal proceedings.

Barton now provides affidavits from two witnesses who are unable to support the unfounded assertions presented in BM318's pre-Receivership pleadings (the "Lindauer Affidavit"

---

[15] *See Findings* at 6:13–16 (Motion Appendix at APP240 [Dkt. 525]).

[16] *See* Evidentiary Hr'g Tr. at 3:21–22, 24:11–14, 56:16–59:17 (APP139, 160, 192–194).

[17] *Id.* at 23:11–17 (APP159).

[18] *See* Findings at 10:18–20, 11:7–18, 15:3–16:3 (APP244–245, 249–250).

[19] *See* Motion at 14–15.

[20] *See id.* at 16–18.

and the "Farah Affidavit"). Barton submits these new affidavits now instead of citing to the Bankruptcy Court's proceedings because, in the Bankruptcy Court's words, Barton did not offer a "shred of evidence" in opposition to the Settlement Agreements.[21] Indeed, BM318 could not have presented its own counsel to testify at trial in support of its allegations,[22] nor could BM318 have offered hearsay concerning the irrelevant alleged present value of the property in a case dependent upon facts that occurred years ago. Additionally, both affidavits are rife with hearsay and therefore not admissible. In fact, by tendering only these witnesses, Barton proves one of the Receiver's reasons for settling the Adversary Proceeding: BM318 cannot win at trial.

The Court should disregard the Lindauer Affidavit.[23] Specifically, the Court should reject the notion that the Receiver was required to consult Ms. Lindauer—now a defendant in the Receiver's fraudulent-transfer lawsuit against Barton's former attorneys[24]—about the Adversary Proceeding.[25] As found by the Bankruptcy Court, and as the Receiver testified at the Evidentiary Hearing, the Receiver separately "conducted sufficient due diligence to arrive at his reasonable business judgment conclusions."[26] Furthermore, the eleventh-hour $200,000 "offer" to purchase BM318's claims actually validates the notion that settlements at $175,000 were within the range of reasonableness. Moreover, the Bankruptcy Court correctly concluded that the alleged "offer"

---

[21] *See Findings* at 15:3–16:3 (APP249–250).

[22] And even if Ms. Lindauer could testify as to BM318's allegations against Lumar, the Bankruptcy Court has already found that BM318, when represented by Ms. Lindauer, did not preserve such claims in its now-effective plan of reorganization. The Bankruptcy Court denied BM318's motion for leave to amend its complaint to include such claims. *See* Adversary Proceeding, Dkts. 94, 100.

[23] Ms. Lindauer also attended the Evidentiary Hearing and cross-examined the Receiver, but she did not offer evidence or call witnesses at it. *See Findings* at 10:18–20, 11:7–10, 11:14–18, 12:19 –13:1, 13:15 –14:1, 15:3–16:3 (APP244– 247, 249–250).

[24] *See Thomas v. Walji, et. al.*, Case No. 3:24-cv-512 (N.D. Tex.).

[25] *See* Findings at 11:19–12:18 (APP245–246).

[26] *Id.* at 12:19–13:10 (APP246–247).

handed to the Receiver minutes before the start of the Evidentiary Hearing was "dubious, at best" and "not credible."[27] The Bankruptcy Court said this conclusion was "not a close call."[28]

The Court should also disregard the Farah Affidavit. Its hearsay statements validate the Receiver's determination that there was a lack of expert testimony as to value at the time of the transactions, which is necessary for the avoidance claims against Dixon. Without a credible expert offering admissible testimony on the question of value, BM318 could not have succeeded at trial.[29]

Similarly, Barton's contention that there is no "urgency" or "special circumstances" that justify ratifying the Settlement Agreements ignores the evidence showing that the claims at issue in the Settlement Agreements cloud title to realty in which no Receivership Entity holds an interest, which only causes unnecessary financial harm and other prejudice to Lumar and Dixon.[30] Additionally, the Receivership Estate cannot pay taxes owed on any properties or pay professional fees owed to accountants or the Receiver and his law firm.[31]

### D.    A Hearing Before this Court is Not Required.

This Court should deny Barton's request for a second hearing. First, a hearing before this Court is not required at all. As this Court has already held multiple times, 28 U.S.C. § 2001, which governs the sale of real property by a receiver, does not apply to settlement agreements or contractual compromises *unless a sale is involved*.[32] Pursuant to the Settlement Agreements, the Receiver is only settling claims, dismissing an adversary proceeding, and releasing a lis pendens;

---

[27] *Id.* at 13:15–14:22 (APP247–248).

[28] *Id.*

[29] Notably, Barton also did not call Ms. Farah—or any Lumar member—as a witness in the Evidentiary Hearing.

[30] *See* Motion at 12, 17–18; *see* Findings at 16:4–8 (APP250).

[31] *See* Dkt. 543 at 57–58.

[32] *See* Motion at 15; *see* Dkts. 109, 163.

he has not *sold* an interest in anything.[33] And even if the statute applied absent a sale, BM318 only held at most a bare legal title in the property subject to BM318's bankruptcy-law avoidance claims against Dixon, which is insufficient for BM318 to have a property interest in the Remaining Land for purposes of seeking avoidance under Bankruptcy Code sections 547 and 548. *See, e.g., Matter of Maple Mortg., Inc.*, 81 F.3d 592, 597 (5th Cir. 1996) (holding that a debtor's legal title in transferred funds did not constitute, under the Bankruptcy Code, "an interest of the debtor in property" because the debtor did not have equitable ownership of the alleged property). Indeed, even if BM318 somehow avoided the Deed, all of Dixon's equitable liens and security interests in the Remaining Land, including pursuant to the Note and Deed of Trust, would be automatically revied and reinstated.[34] *See In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 421 (Bankr. N.D. Tex. 2021) (finding that "bare legal title is insufficient for a debtor to have an interest in property—the debt must have an equitable interest in the property transferred" and that a "debtor lacks equity in an asset if it is fully encumbered by a creditor's lien").

Second, the Evidentiary Hearing already occurred. Barton appeared through counsel and participated in it. An unrequired second hearing would be wasteful of judicial and receivership assets and unproductive.

### III.   CONCLUSION AND REQUEST FOR RELIEF

The Receiver respectfully requests that the Court enter an order ratifying the Settlement Agreements, as approved by the Bankruptcy Court through the final and non-appealed Settlement Approval Orders, based on the Findings entered after the Evidentiary Hearing, and granting the Receiver such other and further relief to which he may be justly entitled.

---

[33] Indeed, a lis pendens is not an interest in real property but rather *notice of a claim* against realty. *See* TEX. PROP. CODE § 13.004 ("[a] recorded lis pendens is notice to the world of its contents.").

[34] *See* Evidentiary Hr'g Tr. at 14:2–21 (APP150).

August 12, 2024

Respectfully submitted,

By: _/s/ C. Alan Carrillo_

    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    C. Alan Carrillo
     Texas Bar No. 24109693
     alan@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX 75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

11