UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § | Civil Action No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al., | § § | |
| *Defendants.* | § § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC | § § § | |
| *Relief Defendants.* | § § § § | |

**ORDER GRANTING RECEIVER'S VERIFIED
MOTION TO RATIFY SETTLEMENT AGREEMENT
WITH TAMAMOI, LLC AND 3820 ILLINOIS, LLC**

Before the Court is a motion to ratify a settlement agreement (Doc. 494).  The

Court **GRANTS** the motion.

### I.    Background

This settlement agreement involves the Receiver along with Tamamoi, LLC

("Tamamoi"), 3820 Illinois, LLC ("3820 Illinois," and together with Tamamoi, the

"Tamamoi Parties") and JMJ Development, LLC ("JMJ").  In the order appointing a

receiver, the Court designated JMJ as an entity that received or benefited from assets

traceable to defendant Timothy Barton's allegedly fraudulent activities.

In 2018, Tamamoi loaned JMJ half-a-million dollars, as set forth in a Secured

Promissory Note.  The note was secured by land and improvements and fixtures at

1

3820 E. Illinois Ave. in Dallas, Texas (the "Property") and subject to a deed of trust. JMJ used $400,000 from the proceeds of the Note to buy the Property but never requested or received the remaining $100,000. The Note had an original maturity date of $100,000, and Barton guaranteed the note.

Several extensions to the maturity date occurred, but JMJ was unable to timely repay the Note's balance. Tamamoi issued a notice of default on April 24, 2021, and foreclosed on July 6, 2021. Tamamoi conveyed the property to entity 3820 Illinois by a special warranty deed. JMJ sued the Tamamoi Parties in state court in 2022, arguing Tamamoi failed to provide timely notice of default or a chance to cure. And JMJ filed a notice of lis pendens that clouded the title. When the Court appointed the Receiver in this action, he filed a notice staying that litigation.

Counsel for the Tamamoi Parties reached out to the receiver on multiple occasions to discuss settlement. Liability and health and safety issues drove that request. First, there is a homeless encampment across the street, and vagrants tend to shelter in the dilapidated structure on the property during bad weather. Second, the City of Dallas issued multiple citations for health and safety issues in 2022 and 2023, causing the Tamamoi Parties to spend over $700 a month trying to avoid additional citations. And because of these conditions, the property is uninsurable.

The Receiver determined the litigation was unlikely to succeed and would be costly. The parties mediated before Judge Harlin Hale, where they agreed that Tamamoi Parties would pay $75,000 to settle JMJ's state court claims and each side would release all existing claims related to the property. Although this dispute does

2

not involve real estate and does not need this Court's approval, the parties agreed to bring the settlement to this Court for approval.

## II.   Hearing

As an initial matter, the Court must address Barton's request for an evidentiary hearing.  Barton argues the settlement is an interest in real estate and the mandate for a hearing in 28 U.S.C. § 2001 applies.  The Receiver argues a hearing is only required for a sale of real property.  The Court continues to agree with the Receiver that sales of real property require the hearing in section 2001.  Because this matter is for approving settlement of a claim, the Court concludes no hearing is required.

## III.   Legal Standard

"Ordinarily, parties are free to settle cases amongst themselves without court involvement."[1]  However, "in the equity receivership context, parties have sought and courts have rendered decisions regarding whether to approve or reject settlement agreements based on courts' wide discretion in administering an equity receivership."[2] "Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are fair and equitable and in the best interests of the estate."[3]

## IV.   Analysis

---

[1] *SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-0298, 2015 WL 10818588, at *2 (N.D. Tex. Sept. 23, 2015) (Godbey, J.) (citing *Ibarra v. Tex. Empl. Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987)).

[2] *Id.*

[3] *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (cleaned up).

The Receiver, Tamamoi LLC and 3820 Illinois LLC argue settlement is in the best interest of the receivership estate because the claims are unlikely to succeed in that they must prove the foreclosure was fraudulent and that the expense required to prove the claims at trial would make any recovery negligible. Barton responds that the Court lacks jurisdiction because of his appeal of the receivership order and the Court should keep the claim stayed rather than dispose of it for a fraction of its potential value. The Court agrees with the Receiver, Tamamoi LLC and 3820 Illinois LLC.

The Court has rejected and continues to reject Barton's arguments that the Court lacks jurisdiction over the receivership while its order is on appeal. As to arguments on the best interest of the receivership estate, the Court agrees with the Receiver that any claim requiring proof of fraud is inherently difficult to prevail in and costly to bring. True, there is a stay of the litigation. If the receivership were a cash rich one, perhaps it would allow a rolling of the dice and paying long-running costs for litigating a low percentage chance claim. But this receivership estate is anything but rolling in cash. Just one example is the Receiver had not sought (until mere weeks ago) compensation for services from April 1, 2023, because of the cash-starved receivership estate. As the receiver put it:

> [T]o date the Receiver has been unable to close on the sale of any of the real estate assets that are part of the Receivership, resulting in a continued dearth of available cash. Indeed, to date, the Receiver has been unable to service any of the extensive debt that encumbers the Receivership's real estate assets. While significant equity remains in many of the assets held by the Receivership, the continued delay of the

4

Receiver's proposed (and previously approved) sales continues to cost the Receivership between $2 million and $3 million annually.[4]

The Court notes that the inability to close deals stems from Barton's appeal of every order and his personal contacting of prospective buyers (in violation of the Court's order) to scare them from closing for fear he will sue them too.  Barton cannot starve a cash-depleted receivership and then argue it should expend considerable cash.  Because protracted litigation is not something the receivership estate can afford in addition to paying its own bills, the Court finds that the proposed settlement is in the best interest of the estate.

## V.    Conclusion

For the foregoing reasons, the Court **GRANTS** the motion.

It is **SO ORDERED**, this 14th day of August, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[4] Doc. 539 at 2.

5