UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE           §
COMMISSION,                        §
                                   §
        *Plaintiffs*,              §
                                   §
                                   §
v.                                 §
                                   §  Civil Action No. 3:22-cv-2118-X
TIMOTHY BARTON, et al.,            §
                                   §
                                   §
        *Defendants*.              §
                                   §
DJD  LAND  PARTNERS, LLC, and      §
LDG001, LLC                        §
                                   §
                                   §
        *Relief Defendants*.       §

## ORDER REGARDING THE BM318, LLC'S
## SETTLEMENT AGREEMENTS WITH THE
## DIXON WATER FOUNDATION AND LUMAR LAND & CATTLE, LLC

Before the Court is a motion to ratify settlement agreements (Doc. 524).  The

Court **GRANTS** the motion.

## I.    Background

Entity BM318, LLC (BM318) is an entity in the receivership because it

received funds traced to Wall investors.[1]  BM318 asserted claims in a bankruptcy

proceeding against The Dixon Water Foundation ("Dixon") and Lumar Land & Cattle,

LLC ("Lumar").  The Receiver believes these claims were expensive to litigate and

unlikely to win.  This Court previously lifted the stay as to the BM318 litigation.

---

[1] The Court outlined this case's general background exhaustively in its order establishing a receivership and need not do so again here.  *See* Doc. 416 at 2–6.

1

When BM318, Dixon, and Lumar reached a settlement for BM318 to receive $175,000 ($100,000 from Dixon and $75,000 from Lumar), the bankruptcy court held an evidentiary hearing where Timothy Barton appeared through counsel. The bankruptcy court made findings of fact and conclusions of law on the record and approved the settlement as in the best interest of the bankruptcy estate. Barton did not appeal that ruling.

## II.    Hearing

As an initial matter, the Court must address Barton's request for an evidentiary hearing. Barton argues the settlement is an interest in real estate and the mandate for a hearing in 28 U.S.C. § 2001 applies. The Receiver argues a hearing is only required for a sale of real property. The Court continues to agree with the Receiver that sales of real property require the hearing in section 2001. Barton's strongest argument that BM318 had a legal interest in property is on BM318's avoidance claims against Dixon arising under the Bankruptcy Code. But BM318 was at best only holding bare legal title to the property at issue. The Fifth Circuit has rejected that such a position constitutes a debtor's interest in property, including in the context of bankruptcy-law avoidance actions.[2] And in any event, Barton had his evidentiary hearing on this matter in the bankruptcy court.

---

[2] *See, e.g.*, *Matter of Maple Mortg., Inc.*, 81 F.3d 592, 597 (5th Cir. 1996) (holding that a debtor's legal title in transferred funds did not constitute, under the Bankruptcy Code, "an interest of the debtor in property" because the debtor did not have equitable ownership of the alleged property).

### III.    Legal Standard

"Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are fair and equitable and in the best interests of the estate."[3]  Because of the bankruptcy relatedness and the applicability of Bankruptcy Rule 9019, the Fifth Circuit has instructed bankruptcy courts to consider the following elements when approving Rule 9019 motions: (1) the probability of success in the litigation with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (3) all other factors bearing on the wisdom of the compromise.[4]

### IV.    Analysis

The Receiver argues ratification is in the best interest of the receivership because prevailing on BM318's claims was unlikely and litigating them would have been expensive, especially for an underfunded entity in bankruptcy.  The Receiver adds that the settlement was prompted by arms-length negotiation and mediation before Judge Hale.

Barton argues the Court lacks jurisdiction because of his appeal of the receivership order and such an order is not in the best interest of the receivership estate or anyone else.  Barton contends that BM318 paid Dixon $2,100,000 in cash to

---

[3] *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (cleaned up).

[4] *Conn. General Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

purchase the property along with a seller-financing arrangement (of $32,946,900). But hard times caused by COVID and other factors made BM318 fall behind on payments, and BM318 and Dixon worked out a plan to return title to Dixon with a right to repurchase the property for $27 million (the original sales price minus payments BM318 had made). But when BM318 tried to repurchase the property with the help of its broker, the broker organized a group of purchasers working through Lumar and bought the property for himself. According to Barton, Lumar intends to sell the property for $47 million. And Barton contends litigating the claims would have a high likelihood of returning a $47 million property to the receivership estate.

As an initial matter, this Court adopts the findings and conclusions of the bankruptcy court as to the settlements. While Barton's lack of a timely appeal means the Court is not obligated to reevaluate those findings and conclusions, the Court has done so independently and found no error in them.

Next, the Court concludes the settlements are in the best interest of the receivership estate (not just the narrower inquiry of the bankruptcy court on whether the settlements are in the best interest of the bankruptcy estate). The real question here is what benefit the settlement will bring to the receivership estate separate and apart from the bankruptcy estate and whether the receivership estate is in a position to litigate the claims. The vast majority of Barton's arguments focus on his belief that the claims will return a $47 million property. But the bankruptcy court appropriately concluded that the Receiver conducted sufficient due diligence to reach the settlements (and the purported evidence on this point that Barton offers now, and

4

did not provide to the bankruptcy court, is not credible). The question here is what is going on in the receivership beyond the scope of BM318's bankruptcy estate. Barton's arguments on this front are (1) that the Court lacks jurisdiction (it doesn't) and (2) that prudentially the Court shouldn't do anything pending the resolution of the current and forthcoming appeals. But the Court previously ruled that Barton's jurisdictional arguments are flawed.

As to his prudential argument, the Court disagrees. Using the Fifth Circuit's factors, the Court must assess the probability of the success of the BM318 litigation and the complexity. The Court agrees with the Receiver's assessment that the probability of success on such claims is low. Claims like fiduciary duty breach are inherently hard to prove. But the dominant factor here is the complexity of the litigation. If the receivership were a cash rich one, perhaps it would allow a rolling of the dice and paying long-running costs for litigating a low percentage chance claim. But this receivership estate is anything but rolling in cash. Just one example is the Receiver had not sought (until mere weeks ago) compensation for services from April 1, 2023, because of the cash-starved receivership estate. As the Receiver put it:

> [T]o date the Receiver has been unable to close on the sale of any of the real estate assets that are part of the Receivership, resulting in a continued dearth of available cash. Indeed, to date, the Receiver has been unable to service any of the extensive debt that encumbers the Receivership's real estate assets. While significant equity remains in many of the assets held by the Receivership, the continued delay of the Receiver's proposed (and previously approved) sales continues to cost the Receivership between $2 million and $3 million annually.[5]

---

[5] Doc. 539 at 2.

The Court notes that the inability to close deals stems from Barton's appeal of every order and his personal contacting of prospective buyers (in violation of the Court's order) to scare them from closing for fear he will sue them too.  Barton cannot starve a cash-depleted receivership and then argue it should expend considerable cash. Because protracted litigation is not something the receivership estate can afford in addition to paying its own bills, the Court finds that the proposed settlement is in the best interest of the receivership estate.

### V.      Conclusion

For the foregoing reasons, the Court **GRANTS** the motion.

It is **SO ORDERED**, this 14th day of August, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

6