# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § | |
| *Defendants*, | § § | |

## RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING, SANCTIONS, INJUNCTIVE RELIEF, AND BRIEF IN SUPPORT

Charlene C. Koonce
  State Bar No. 11672850
  charlene@brownfoxlaw.com
Timothy B. Wells
  State Bar No. 24131941
  tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

Receiver Cortney C. Thomas (the "Receiver") respectfully requests that the Court schedule a "Show Cause Hearing" compelling Defendant Timothy Barton ("Barton") to appear and show cause why he should not be held in civil contempt for repeatedly violating the Court's November 29, 2023 Order Appointing Receivership [Dkt. 417] (the "Receivership Order"). The Receiver also requests that the Court enter an injunction preventing Barton from continuing his persistent interference with the Receiver's duties. In support, the Receiver respectfully shows the Court as follows:

## I.     <u>INTRODUCTION</u>

Barton's disrespect for the Court and its orders has been consistent, damaging, and costly. Despite an unmistakable warning from the Court during a recent hearing, Barton continues to interfere with the Receiver's possession and control of Receivership Property by contacting buyers contracted to purchase Receivership Property and attempting to dissuade them from performing those contracts. Thus, despite the clarity of the Receivership Order and this Court's recent admonishments, following a hearing in July Barton has accelerated his active violation of the Receivership Order and the Court's specific instructions. Barton's interference has already resulted in the expenditure of thousands of dollars in attorney time necessary to remedy the results of his conduct, including the termination of at least one sales contract. As he intends, Barton's continued interference is likely to scare committed or potential buyers away and thereby damage the value of Receivership Properties, or at a minimum, result in additional expenses for a receivership that cannot afford, and should not tolerate, such blatant disregard for the Court's authority.

The Receiver accordingly requests a "Show Cause" hearing at which Barton must appear and demonstrate legal justification for his consistent and persistent contempt. The Receiver further requests an injunction preventing Barton from communicating with any contracted buyers of

Receivership Assets or any persons associated with managing or operating any Receivership Assets. In the event Barton fails to comply with such an injunction, including the Receivership Order, the Receiver requests coercive sanctions.  Additionally, the Receiver requests monetary sanctions to compensate the Receivership Estate for the expenses incurred as a result of Barton's interference, including the necessity of this Motion and the hearing.

## II.      BACKGROUND

1.      On October 18, 2022, the Court entered its initial Order Appointing Receiver [Dkt. 29] ("Initial Receivership Order") which directed the Receiver to take control of entities owned or controlled by Barton. The Initial Receivership Order required Barton to provide specific information and documents to the Receiver and to cooperate with the Receiver to accomplish the mandate of the Initial Receivership Order. The Initial Receivership Order also prohibited Barton from interfering with the Receiver's duties, or the Receiver's possession, control, and management of the Receivership Properties.[1]

2.      Following an appeal of the Initial Receivership Order, on November 29, 2023, the Court entered the Receivership Order [Dkt. 417] and a Preliminary Injunction Order [Dkt. 418] ("Injunction Order").[2]

3.      The Receivership Order includes the same cooperation and noninterference provisions as the Initial Receivership Order, as well as also requiring the Receivership Entities,

---

[1] As the Court is aware, Barton violated the Initial Receivership Order with impunity by filing a lis pendens on a property the Court authorized the Receiver to sell; contacting the buyer of the Rock Creek Property to provide false information, and later, to harass the buyer's family; and withholding virtually all information and documents the Receivership Order compelled him to provide, including documents, access credentials and similar information. *See* Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing [Dkt. 133] ("Motion to Compel").  After extensive briefing, the Court found Barton in contempt and awarded coercive sanctions of $500 per day.  Dkt. 235.  The Receiver incorporates by reference the facts set forth in the Motion to Compel as if set forth fully herein to show Barton's repeated and prolonged disregard for the Court's orders.

[2] As with the Initial Receivership Order, Barton has appealed the Receivership Order and Injunction Order. *See SEC v. Barton,* Appeal No. 22-11237.

through persons who have or have had possession or control over Receivership Assets, *i.e.*, Barton, to provide the Receiver a sworn statement setting forth extensive financial and related information. Dkt. 417 ¶ 18(B). As noted in prior filings, no such statement has ever been provided.[3]

4.       Like the Initial Receivership Order, the new Receivership Order prohibits interference with the Receiver's duties:

> "The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:
>
> A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property; . . .
>
> B. Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; . . .
>
> E. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates."

Receivership Order, ¶ 32. The Receivership Order also directs Defendants (including Barton) "and their officers, agents, employees, and attorneys . . . [to] fully cooperate and assist the Receiver." ¶ 33.

5.       In addition to failing to comply with the discovery provisions of both the Receivership Order and the Injunction Order, Barton has escalated his active interference with the Receivership Properties.

6.       More specifically, in February 2024, the Receiver learned that Barton visited the

---

[3] The Injunction Order also required Defendant Barton to "provide an *ex parte* sworn accounting, under seal and under oath, within ten (10) days of the issuance of this Order." Dkt. 417, p. 11.  Barton disregarded the January 13, 2024 deadline to comply with the discovery provisions of the Receivership Order and the Injunction Order, and to date still refuses to comply with these provisions.

Amerigold Suites, owned by Receivership Entity Goldmark Hospitality, LLC. During the visit, Mr. Barton sought out the property manager, boasting that he had thwarted the earlier sale of that property and questioning her about the operation of the property—a flagrant violation of ¶ 32 of the Receivership Order.[4]

7.      The Receiver provided written notice to Barton's counsel that Barton is "expressly prohibited from setting foot on any property owned by a Receivership Entity, contacting any person or entity employed by or contracted to a Receivership Entity regarding any such Receivership Property, (including loans, sales or transactions related to such Properties) or from interfering with the duties of anyone employed by a Receivership Entity." The Receiver requested confirmation that these instructions had been communicated to Barton. No response was provided.[5]

8.      Following Barton's interference with the Amerigold Suites and his refusal to provide the information and documents required by the Receivership Order and the Injunction Order, the Receiver filed with the Court a Notice of Non-Compliance and Continuing Interference [Dkt. 478] which he incorporates by reference in this Motion.

9.      Barton, however, was not deterred. On July 12, 2024, the Receiver was informed that Barton had contacted the respective buyers for the Amerigold Suites Property and Hall Street Property,[6] ostensibly to sow doubt about the Receiver's ability to sell the properties prior to the July 23 hearing or the Receiver's motions to approve those sales.[7] Moreover, the Receiver learned on July 16, 2024, that Barton also contacted the broker who previously listed the Rock Creek

---

[4] *See* Declaration of Cortney C. Thomas ("Thomas Dec."), included in the Appendix submitted in support of this Motion.

[5] *Id.*

[6] The Hall Street Property is property owned by Receivership Entity TC Hall, LLC more fully explained in Dkt. 502.

[7] Thomas Dec. ¶ 9.

property for sale, again in violation of the Receivership Order, requesting documents related to the proposed sale of that property, purportedly because he had "lost" his copies.[8]

10.    This interference prompted the Receiver to file his Notice of Continued Interference with the Receiver's Management of Receivership Property [Dkt. 530] ("Notice of Continued Interference") which the Receiver incorporates by reference in this Motion.

11.    In response to the Receiver's Notice of Continued Interference, during a hearing held on July 23, 2024 to approve the sale of the Amerigold Suites and Hall Street Property, the Court read into the record portions of the Receivership Order prohibiting interference with the Receiver and specifically directed Barton to not contact buyers contracted to purchase Receivership Property and to cease interfering with the Receiver.

12.    Rather than heeding this Court's warning, Barton was apparently encouraged to accelerate his interference. On August 19, 2024—less than a month after the Court's admonition about interfering—the Receiver learned that Barton had recently left a voicemail for the buyer of the Frisco Gate Property[9] asking the buyer to call him back.[10]  Around the same time Barton also contacted the Frisco Gate buyer's broker (who also previously assisted Barton in marketing the property), inquiring if the deal was moving forward or if the contract was abandoned.[11]

13.    On the same day, the buyer of the Hall Street property notified the Receiver that Barton is telling industry participants that he is exonerated and will regain his properties by the end of the year.[12]

---

[8] Thomas Dec. ¶ 11.

[9] The Frisco Gate Property is property owned by Receivership Entity FHC Acquisition, LLC and the Court approved sale of that property on December 12, 2023. Dkt. 438. On December 29, 2023, Barton filed a Notice of Appeal encompassing the December 12, 2023 order approving the sale of the Frisco Gate Property.

[10] Thomas Dec. ¶ 14.

[11] *Id.*

[12] Thomas Dec. ¶ 15.

14.     These revelations came on the heels of the buyer for the Amerigold Suites notifying the Receiver that it was terminating its contract to purchase the Amerigold Suites because Barton had contacted that buyer and advised he would soon resume possession and control over the property and the Receiver would not be able to close on the approved sale.[13]   The buyer also advised that after reviewing additional information about Barton, it was deeply concerned about being sued by him after the sale closed.[14]

15.     Barton's recent interference, while brazen, is not new. Barton's history of interference with the Receiver's duties started almost immediately upon the Receiver's appointment under the Initial Receivership Order. In November 2022, Barton contacted the owner of the UPS mail store where mail for most of the Receivership Entities is delivered and demanded that the UPS store close those mail accounts and divert them to another address.[15] Shortly thereafter, Barton also contacted Greystone, the lender on the D4 HUD apartment complexes, in December of 2022 attempting to set up a meeting with Greystone to discuss the HUD loans.[16]

16.     Because Barton continues to interfere with the Receiver's possession and control over these properties, as well as the Court's approval of the sales of each, the Receiver files this Motion and seeks a specific injunction prohibiting Barton's continued interference with contracted or interested buyers of Receivership Properties, their brokers, lenders, or lawyers, and any person associated with managing or operating any Receivership Assets.

17.     Moreover, because he has implicitly or explicitly threatened prospective buyers with litigation if they close the sales the Court has approved, the Receiver requests that the Court

---

[13] *See* Order Approving Sale, Dkt. 537.

[14] Thomas Dec. ¶ 16.

[15] *See* Dkt. 73, Receiver's Supplemental Brief in Support of Motion to Supplement Order Appointing Receiver, at 4 n.2.

[16] *See* Thomas Dec. ¶ 17.

require Barton (and any person or entity acting on his behalf) to seek leave of Court before filing any lawsuit against any person or entity which relates to, references, or in any way touches on any Receivership Property or property sold by the Receiver during the course of the Receivership.

18.     Finally, the Receiver also requests compensatory sanctions in the amount of the fees to compensate the Receivership Estate for the time and expense incurred in responding to Barton's interference, including but not limited to communicating with buyers and brokers, and the costs of preparing and arguing this Motion.

### III.     ARGUMENT & AUTHORITIES

#### A.     Legal Standard

District courts possess inherent power to enforce their orders though contempt proceedings. *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977); *see also Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1302 (11th Cir. 1991).  A party commits contempt when, with knowledge of a court's definite and specific order, he fails to perform or refrain from performing what is required of him in the order.  *SEC v. First Financial Group of Texas, Inc.,* 659 F2d 660, 669 (5th Cir. 1981).  More specifically, in the Fifth Circuit, the elements of civil contempt are: "(1) that a court order was in effect*,* and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."  *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009) (internal quotation omitted).  A court's order requiring specific conduct can be either written or oral.  *Id.* at 264-66.  "Good faith is not a defense to a civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).  For this reason, the Court need not look to whether actions were "willful," nor more generally to the intent of the respondent.  *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980).  Finally, civil

contempt may serve two different purposes: "coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *In re Bradley*, 588 F.3d at 263.

**B.      Barton Should Be Held in Contempt for Refusing to Comply With the Receivership Order and This Court's Oral Orders**

As demonstrated by the Receivers' Declaration submitted in support of this Motion as well as the plain terms of the Receivership Order and the Court's admonishment at the last hearing, evidence of each element of civil contempt exists. Barton cannot deny knowledge of the Receivership Order or the Court's express warning to cease interference with the Receiver's possession and control over Receivership Properties and the clarity the Court provided at that hearing. Similarly, even though the Receivership Order is on appeal, the Receivership Order still remains in effect and Barton cannot simply decide for himself whether he will abide by it or not. *See Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) ("Unless a court issues a stay, a trial court's judgment . . . normally takes effect despite a pending appeal.").   Through his continued communications with buyers, brokers, and others, Barton intends to preclude the Receiver from managing these assets, including through sales intended to preserve the value of the properties. To ensure Barton's efforts are not successful, the Receiver requests a hearing at which Barton must appear and show cause why he should not be held in contempt for his continuing violation of the Receivership Order.

**C.      The Receiver Requests an Injunction Expressly Precluding Communications Between Barton And Any Contracted Purchaser Or Their Agents And An Order Requiring Leave of Court Before Suing Any Purchaser Of Receivership Property**

Barton's continued harassment of purchasers or potential purchasers of Receivership Property is scaring committed buyers and has the potential to dissuade future buyers from purchasing Receivership Property, thus further damaging the value of the Receivership Properties

and the potential recovery to the Receivership Estate. Buyers and prospective buyers who are, expressly or implicitly, threatened with lawsuits, told the Receiver lacks authority to close a sale, or simply harassed, will very likely refuse to purchase or make competing offers to purchase, Receivership Assets.  Shrinking the potential market for these properties thus directly decreases the value of the Receivership Estate.

To ensure clarity and compliance in the future, the Receiver therefore requests an injunction, expressly prohibiting Barton from:

(1)     Communicating about the Receivership in any manner, directly or indirectly, through (a) any person, agent, or entity whom Barton knows or suspects has contracted to purchase any Receivership Asset (a "Contracted Purchaser"); (b) any person or entity whom Barton knows or suspects the Receiver is or has been negotiating with regarding the sale of any Receivership Property (a "Negotiating Purchaser"); or (c) any other person or entity, or the broker or agent for such person, who has contacted the Receiver to inquire about purchasing a Receivership Property, if the Receiver notifies Barton in writing that Barton's communications with such person are prohibited (an "Identified Potential Purchaser"); and (d) any person or entity that Barton knows or suspects is the broker, attorney, employee, or agent of any Contracted Purchaser, Negotiating Purchaser, or Identified Potential Purchaser; and

(2)     Any action by which Barton seeks to disrupt, hinder, terminate, delay, or interfere with in any manner, the Receiver's or his agents and broker's efforts to (a) locate buyers interested in purchasing Receivership Properties; (b) contract for the sale of any Receivership Property; or (c) close an approved sale, including all activities necessary and incidental to closing;

(3)     Communicating in any manner, directly or indirectly, through any person, agent, or any entity, with person or entity whom Barton knows or suspects is employed by, contracted to, or actively involved in managing, operating, supervising, or assisting in the management, care, or supervision of any Receivership Asset, including specifically but not limited to contracted management for the Amerigold Suites and the D4 HUD apartment complexes;

(4)     Without first seeking and obtaining leave of Court, commencing or participating in any manner, directly or indirectly, through any person, agent or entity, in any lawsuit against any person or entity which relates to, references, or in any way touches on any Receivership Asset or former Receivership Asset sold by the Receiver during the Receivership.

## D.     The Receiver Requests Compensatory Sanctions

Remedial civil contempt provides a mechanism for compensating a person injured through

another person's contempt. *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("Like criminal contempt, remedial civil contempt is backward-looking."); *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir.1976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance.").  Here, the Receiver seeks compensation for the reasonable and necessary attorney's fees incurred in preparing this Motion and the anticipated Reply, as well as conducting the requested hearing. Additionally, the Receiver requests reimbursement to the Receivership Estate for fees incurred in communicating with buyers who have been harassed by Barton or with whom Barton has communicated in an effort to disrupt approved sales, and fees incurred in ameliorating the damage, confusion or misdirection provided by Barton to current employees or agents, such as the manager at the Amerigold Suites and Greystone.[17] In the event the Court awards such fees and Barton fails to pay them, the Receiver will request further relief.

## IV.  CONCLUSION

The Receiver respectfully requests that the Court set a Show Cause Hearing compelling Timothy Barton to appear and show cause why he should not be held in contempt for failing to comply with the provisions of the Receivership Order as described above.  Following such hearing, the Receiver also requests that the Court enter an order enjoining Barton from the conduct specified above, and award compensatory sanctions to the Receivership Estate in an amount determined at the hearing.  The Receiver requests such other and further relief to which he may show himself entitled.

---

[17] The Receiver requests that the Court judicially notice the reasonable rates that are billed by the Receiver and his counsel.  *See, e.g.,* Receiver's Quarterly Fee Application [Dkt. 539].  The Receiver estimates fees, in total, to be not less than $5,000, but will provide the number of hours incurred and the time-keepers who billed such rates in connection with this request, in advance of the hearing.

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001
    *Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on August 23, 2024, the Receiver conferred with counsel for Defendant Barton and the SEC regarding the relief requested above. Defendant Barton's counsel responded, "I am going to have to know more about the details of your allegations in order to take an informed position on your motion." He also requested a phone call next week to further confer and offered an "assurance" "solely as protective measure to preserve the status quo in the meantime, Mr. Barton will have no contact with principals or agents of any court approved purchaser of property." The Receiver's counsel sent a copy of the Motion and asked for confirmation that Barton would agree to the proposed injunction, which the Receiver's counsel deemed necessary since counsel's assurance, particularly considering Barton's recent disregard of the Court's express instruction, was insufficient. The Receiver's counsel also offered to further confer by telephone before 4:30 today. No response was received, however, and thus as of the time of filing this Motion, pursuant to L.R. 7.1 the Motion is deemed opposed. Should Defendant Barton indicate he is not opposed to the Relief sought by the Motion, the undersigned will file an updated Certificate of Conference with the Court. Counsel for the SEC responded that the SEC is not opposed to the Receiver enforcing the provisions of the Receivership Order through a Motion for Show Cause.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.