# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*, | § | |

## APPENDIX IN SUPPORT OF RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING, SANCTIONS, INJUNCTIVE RELIEF, AND BRIEF IN SUPPORT

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
Timothy B. Wells
State Bar No. 24131941
tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001
*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

2

| Document | APP # |
|---|---|
| Declaration of Cortney C. Thomas | APP001-0006 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| *Defendants*. | § | |

**<u>DECLARATION OF CORTNEY C. THOMAS, AS RECEIVER</u>**

1.      My name is Cortney C. Thomas.  I have personal knowledge of the matters set forth in this Declaration.  I am of sound mind, and I am otherwise competent to testify to the facts set forth below.

2.      I am an attorney and have been licensed to practice law in the State of Texas since 2010.  After graduating from the University of Texas School of Law, I served one year as a federal law clerk in the Northern District of Texas to the Honorable Jane J. Boyle, where I worked on a host of civil litigation matters.  Following the clerkship, I was employed by Vinson & Elkins LLP ("V&E") as a trial lawyer, where I worked on a variety of complex commercial disputes in federal and state courts and before administrative tribunals.  After approximately seven years at V&E, in September 2018, I joined Brown Fox PLLC ("Brown Fox") as a partner.  During my time at Brown Fox, I have continued to handle a variety of business and commercial litigation matters, including multiple cases in federal courts around the country.  I have also been appointed as Receiver in one other government enforcement matter, am representing another Receiver in a different enforcement case, and am a member of the National Association of Federal Equity Receivers.

1

APP001

3.      On October 18, 2022, the Court entered its initial Order Appointing Receiver [Dkt. 29] ("Initial Receivership Order") which directed me to take control of entities owned or controlled by Timothy Barton ("Barton"). The Initial Receivership Order required Barton to provide specific information and documents to me and to cooperate with me to accomplish the mandate of the Initial Receivership Order. The Initial Receivership Order also prohibited Barton from interfering with my duties, or my possession, control, and management of Receivership Assets.[1]

4.      Following an appeal of the Initial Receivership Order, on November 29, 2023, the Court entered a new Order Appointing Receiver [Dkt. 417] ("Receivership Order"), whereby I was again appointed as Receiver, and a Preliminary Injunction Order [Dkt. 418] ("Injunction Order").

5.      The Receivership Order includes the same cooperation and noninterference provisions as the Initial Receivership Order, as well as also requiring the Receivership Entities, through persons who have or have had possession or control over Receivership Assets, *i.e.*, Barton, to provide the Receiver a sworn statement setting forth extensive financial and related information. Dkt. 417 ¶ 18(B).  As noted in prior filings, no such statement has ever been provided.[2]

6.      Like the Initial Receivership Order, the new Receivership Order prohibits interference with my duties:

> "The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined

---

[1] As the Court is aware, Barton violated the Initial Receivership Order with impunity by filing a lis pendens on a property the Court authorized me to sell, contacting the buyer of the Rock Creek Property to provide false information, and later, to harass his family, withholding virtually all information and documents the Receivership Order compelled him to provide, including documents, access credentials and similar information. *See* Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing [Dkt. 133] ("Motion to Compel").  After extensive briefing, the Court ultimately found Barton in contempt and awarded coercive sanctions of $500 per day.  Dkt. 235

[2] The Injunction Order also required Defendant Barton to "provide an *ex parte* sworn accounting, under seal and under oath, within ten (10) days of the issuance of this Order." Dkt. 417, p. 11.  Barton disregarded the January 13, 2024 deadline to comply with the discovery provisions of the Receivership Order and the Injunction Order, and to date still refuses to comply with these provisions.

2

from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property; . . .

B. Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; . . .

E. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates."

Receivership Order, ¶ 32. The Receivership Order also directs Defendants (including Barton) "and their officers, agents, employees, and attorneys . . . [to] fully cooperate and assist the Receiver." ¶ 33.

7.    In addition to failing to comply with the discovery provisions of both the Receivership Order and the Injunction Order, Barton has escalated his active interference with the Receivership Properties.

8.    More specifically, in February 2024, I learned that Barton visited the Amerigold Suites, owned by Receivership Entity Goldmark Hospitality, LLC. During the visit, Mr. Barton sought out the property manager, boasting that he had thwarted the earlier sale of that property and questioning her about the operation of the property—a flagrant violation of ¶ 32 of the Receivership Order.

9.    I directed my counsel to provide written notice to Barton's counsel that Barton is "expressly prohibited from setting foot on any property owned by a Receivership Entity, contacting any person or entity employed by or contracted to a Receivership Entity regarding any such Receivership Property, (including loans, sales or transactions related to such Properties) or from interfering with the duties of anyone employed by a Receivership Entity."  My counsel

3

requested confirmation that these instructions had been communicated to Barton. But, to my knowledge, no response was provided.

10.     Following Barton's interference with the Amerigold Suites and his refusal to provide the information and documents required by the Receivership Order and the Injunction Order, I filed with the Court a Notice of Non-Compliance and Continuing Interference [Dkt. 478].

11.     However, this did not deter Barton. On July 12, 2024, I was informed that Barton had contacted the respective buyers for the Amerigold Suites Property and Hall Street Property,[3] ostensibly to sow doubt about my ability to sell the properties prior to the July 23 hearing or the motions to approve those sales.  Moreover, I learned on July 16, 2024, that Barton also contacted the broker who previously listed the Rock Creek property for sale, again in violation of the Receivership Order, requesting documents related to the proposed sale of that property, purportedly because he had "lost" his copies.

12.     This interference prompted me to file a Notice of Continued Interference with the Receiver's Management of Receivership Property [Dkt. 530] ("Notice of Continued Interference").

13.     In response to my Notice of Continued Interference, during a hearing held on July 23, 2024 to approve the sale of the Amerigold Suites and Hall Street Property, the Court read into the record portions of the Receivership Order prohibiting interference with my duties as Receiver, and specifically instructed Barton to not contact buyers contracted to purchase Receivership Property and to cease interfering with my duties as Receiver.

14.     Rather than heeding this Court's warning, Barton was apparently encouraged to accelerate his interference.  On August 19, 2024—less than a month after the Court's admonition

---

[3] The Hall Street Property is property owned by Receivership Entity TC Hall, LLC more fully explained in Dkt. 502.

4

APP004

about interfering—I again learned that Barton had recently left a voicemail for the buyer of the Frisco Gate Property[4] asking the buyer to call him back. Around the same time, Barton also contacted the buyer's broker (who previously assisted Barton in marketing the property), inquiring if the deal was moving forward and if the contract was abandoned.

15.  On the same day, the buyer of the Hall Street property emailed me that Barton is informing people he has been "exonerated" and will regain his properties by the end of the year.

16.  These revelations came on the heels of the buyer for the Amerigold Suites notifying me that it was terminating its contract to purchase the Amerigold Suites because Barton had contacted that buyer and advised he would soon resume possession and control over the property and I would not be able to close on the approved sale.[5] The buyer also told me that after reviewing additional information about Barton, it was deeply concerned about being sued by him after the sale closed.

17.  Barton's history of interference with my duties started almost immediately upon my appointment. By way of example, in November 2022, Barton contacted the owner of the UPS mail store where mail for most of the Receivership Entities is delivered and demanded that the UPS store close those mail accounts and divert them to another address.[6] Shortly thereafter, Barton contacted Greystone, the lender on the D4 HUD apartment complexes, in December of 2022 attempting to set up a meeting with Greystone to discuss the HUD loans.

---

[4] The Frisco Gate Property is property owned by Receivership Entity FHC Acquisition, LLC, and the Court approved sale of that property on December 12, 2023. Dkt. 438. On December 29, 2023, Barton filed a Notice of Appeal encompassing the December 12, 2023 order approving the sale of the Frisco Gate Property.

[5] *See* Order Approving Sale, Dkt. 537.

[6] *See* Dkt. 73, Receiver's Supplemental Brief in Support of Motion to Supplement Order Appointing Receiver, at 4 n.2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed August 23, 2024.

*/s/ Cortney C. Thomas*
CORTNEY C. THOMAS

6

APP006