**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | § | |
| **COMMISSION,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, et al.** | § | |
| | § | |
| *Defendants*. | § | |

**RECEIVER'S RESPONSE TO INTERESTED PARTY MCCORMICK 101, LLC**
**TO MODIFY STAY PROVISION SET FORTH IN RECEIVER ORDER**

Charlene C. Koonce
 Texas Bar No. 11672850
 charlene@brownfoxlaw.com
Timothy B. Wells
 Texas Bar No. 24131941
 tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

**TABLE OF CONTENTS**

SUMMARY ........................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ........................................................................................................................ 3

A.    The Basis for Goldmark Hospitality's Inclusion in the Receivership ................................. 3

B.    Legal Standard – Equitable Receiverships and Litigation Stays ........................................ 4

      1.    Preserving the Status Quo ................................................................................. 5

      2.    Timing in the Course of the Receivership ............................................................ 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Am. Dev. Corp. v. Strack*,
1996 WL 134339 (9th Cir. 1996) ................................................................................. 3

*CFTC v. TMTE, Inc.*,
No. 23-10420, 2024 WL 983553 (5th Cir. Mar. 7, 2024) ........................................... 4

*Cunningham v. Brown,*
265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924) ........................................................... 4

*Horwitt v. Flatiron Partners, LP*,
No. 21-2245, 2023 WL 192500 (2d Cir. Jan. 17, 2023) .............................................. 4

*In re Stanford Int'l Bank, Ltd.*,
No. 3:09-CV-0721-N, 2012 WL 13093939 (N.D. Tex. Feb. 1, 2012) ......................... 5

*Rishmague v. Winter*,
No. 3:11-CV-2024-N, 2014 WL 11633690 (N.D. Tex. Sept. 9, 2014), *aff'd*, 616 Fed.
App'x 138 (5th Cir. 2015) ...................................................................................... 5, 6

*SEC v. Adams*,
No. 318CV00252CWRBWR, 2023 WL 8483662 (S.D. Miss. June 28, 2023) ............... 5, 7, 11

*SEC v. Byers*,
609 F.3d 87 (2d Cir. 2010) .......................................................................................... 4

*SEC v. Byers*,
637 F. Supp. 2d 166, 176 (S.D.N.Y. 2009), *aff'd sub nom. SEC v. Malek*, 397 Fed.
App'x 711 (2d Cir. 2010) ............................................................................................ 4

*SEC v. Callahan*,
2 F. Supp. 3d 427 (E.D.N.Y. 2014) ............................................................................. 7

*SEC v. Capital Cove Bancorp LLC*,
No. SACV15980JLSJCX, 2015 WL 9701154 (C.D. Cal. Oct. 13, 2015) ..................... 8

*SEC v. Faulkner*,
No. 3:16-CV-1735-D, 2021 WL 3930091 (N.D. Tex. Sept. 2, 2021) .......................... 5

*SEC v. Hardy,*
803 F.2d 1034 (9th Cir. 1986) ..................................................................................... 8

*SEC v. Heartland Group Ventures, LLC*,
No. 4:21-CV-01310-O-BP, 2023 WL 4157490 (N.D. Tex. May 18, 2023), *report and*

*recommendation adopted*, No. 4:21-CV-01310-O-BP, 2023 WL 5333278 (N.D. Tex. Aug. 18, 2023) ........................................................................................................ 5, 6

*SEC v. Kaleta*,
No. CIV.A. 4:09-3674, 2012 WL 2577537 (S.D. Tex. July 3, 2012) .................................. 5, 11

*SEC v. Provident Royalties, L.L.C.*,
No. 3:09-CV-1238-L, 2011 WL 2678840 (N.D. Tex. July 7, 2011) ........................................ 6

*SEC v. Stanford Int'l Bank Ltd.*,
424 Fed. App'x 338 (5th Cir. 2011) ......................................................................................... 5

*SEC v. Stanford Int'l Bank Ltd.,*
465 Fed. App'x 316 (5th Cir. 2012) ......................................................................................... 5

*SEC v. Stanford Int'l Bank, Ltd.*,
429 Fed. App'x 379 (5th Cir. 2011) ......................................................................................... 5

*SEC v. Vescor Cap. Corp.*,
599 F.3d 1189 (10th Cir. 2010) ............................................................................................... 4

*SEC v. Wencke,*
742 F.2d 1230 (9th Cir.1984) ................................................................................................... 5

*United States v. Acorn Tech. Fund, LP,*
429 F.3d 438 (3rd Cir. 2003) ................................................................................................... 6

*United States v. Durham*,
86 F.3d 70 (5th Cir. 1996) ........................................................................................................ 4

*Vanston Bondholders Protective Committee v. Green* (Green),
329 U.S. 156 (1946).................................................................................................................. 8

**Other Authorities**

*Texas Among States Feeling Most Stressed by Inflation*, FEDERAL RESERVE BANK OF DALLAS (Nov. 7, 2023).............................................................................................................. 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | §<br>§<br>§ | |
| *Plaintiff,* | §<br>§ | |
| v. | §<br>§ | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | §<br>§<br>§ | |
| *Defendants.* | § | |

**RECEIVER'S RESPONSE TO INTERESTED PARTY MCCORMICK 101, LLC**
**TO MODIFY STAY PROVISION SET FORTH IN RECEIVER ORDER**

Cort Thomas, the Court-appointed Receiver, responds to McCormick 101, LLC's ("McCormick") Motion to Modify Stay Provision Set Forth in Receiver Order (the "Motion") [Dkt. 563], and in support respectfully shows the Court as follows:

**SUMMARY**

As with its three prior motions, McCormick does not justify relief from the stay provisions of the Receivership Order. McCormick's assertion that the "Amerigold Suites" is included in the receivership "simply" because of "one general allegation in the SEC's Complaint," ignores evidence to the contrary. McCormick also omits from its "core facts" its acquisition of the Amerigold Suites, and the lien at issue, *after* the Court placed Goldmark Hospitality, LLC, which owns the Amerigold Suites, in receivership. McCormick thus omits from its "core facts" its express knowledge of the stay and the Receiver's inability to service debt on the property. McCormick also ignores the equity cushion that between the amount of the lien and the value of the property and bases its challenges regarding the Receiver's management on partial or inaccurate data. While McCormick is likely as frustrated as the Receiver by the effect of Barton's interference

– 1 –

and improper appeals of sale orders, which to date have successfully stymied sales of Receivership

Properties including the Amerigold Suites, that frustration does not warrant lifting the stay.

## FACTUAL BACKGROUND

1.      On October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial

Receivership Order") by which Cort Thomas was appointed as Receiver for certain entities. The

Court directed the Receiver to take possession and control of all Receivership Assets and

Receivership Records defined in the Initial Receivership Order.  Goldmark Hospitality and the

Amerigold Suites were included in the Initial Receivership Order.

2.      On or about December 22, 2022, shortly after entry of the Initial Receivership

Order, McCormick entered into an Asset Sale Agreement with Texas Brand Bank ("TBB")

pursuant to which McCormick acquired the Note.  When it purchased the Note, no payments had

been made since September 2022. *Motion*, p. 3.  A copy of the Receivership Order was attached

to the Asset Sale Agreement, and that Agreement provided in relevant part:

> "The Buyer is fully aware that collection and enforcement of the Loan may be
> limited by the Receivership and that the Obligor is the subject of a Receivership
> Order (attached) . . ."[1]

3.      The Asset Sale Agreement also stated that TBB made no representations regarding

limitations that might apply to enforcement or collection of the loan based on the Receivership,

that collection and enforcement could be limited by the Receivership.[2]

4.      Following the Fifth Circuit's vacatur of the Initial Receivership Order, after

briefing and a hearing, on November 29, 2023, the Court entered a new Receivership Order (the

"Receivership Order") Dkt. 417.  When deciding which entities to include in the Receivership

---

[1] *See* Dkt. 317 at ¶ 5.5.

[2] *See id.*

Order as Receivership Entities, the Court determined that Goldmark Hospitality, LLC ("Goldmark") received no less than $200,000 of Wall Investor Funds and used those funds "to make improvements to the [Amerigold Suites], fund hotel operations, and pay the manager of the hotel." Dkt. 416[3]

5.     The Receivership Order, like the Initial Receivership Order, includes a stay of enforcement and a stay of litigation against the Receiver and all Receivership Entities (collectively, the "Stay").  Dkt. 417, ¶¶ 34-36.

6.     McCormick has filed repeated motions to lift the Stay— first at Dkt. 311 and at Dkt. 321—both of which the Court denied on November 29, 2023 [Dkt. 421]—and again at Dkt 463, which the court denied on March 7, 2024. Dkt. 477.  Its latest motion should similarly be denied.

## ARGUMENT

### A.     The Basis for Goldmark Hospitality's Inclusion in the Receivership

McCormick fails to demonstrate standing to challenge Goldmark's inclusion in the receivership.  *See Am. Dev. Corp. v. Strack*, 1996 WL 134339, *3 (9th Cir. 1996) (holding that a third party does not meet the prudential requirements of standing to challenge the propriety of a receivership or what assets are included in the receivership). Even if it had made that showing, however, this Court appropriately determined that Wall Investor Funds were used to fund operations at the Amerigold Suites, make improvements to the Amerigold Suites, and pay employees. *Id.; see also* Dkt. 308 at 38-42. Goldmark Hospitality and the Amerigold Suites are thus appropriately included in the Receivership.

---

[3] The Court utilized, in part, the Receiver's Declaration and Interim Report [Dkt. 308] to make this determination; however, the examples the Receiver provided were not exhaustive. Since submitting his Declaration and Interim Report, the Receiver has discovered additional tracing examples.

**B.       Legal Standard – Equitable Receiverships and Litigation Stays**

Although McCormick seeks to extract a property from the receivership on which it holds a lien and thus obtain different treatment from all other creditors, it acknowledges that receiverships are equitable proceedings.  As such, "equality is equity." *SEC v. Byers*, 637 F. Supp. 2d 166, 176 (S.D.N.Y. 2009), *aff'd sub nom. SEC v. Malek*, 397 Fed. App'x 711 (2d Cir. 2010) (quoting *Cunningham v. Brown,* 265 U.S. 1, 13, 44 S.Ct. 424, 68 L.Ed. 873 (1924) (holding, in original Ponzi scheme case, that circumstances of Charles Ponzi's scheme "call strongly for the principle that equality is equity")).  Equity thus requires treating similarly situated investors or creditors, to the greatest extent possible, equally. *CFTC v. TMTE, Inc.*, No. 23-10420, 2024 WL 983553, at *3 (5th Cir. Mar. 7, 2024) (affirming distribution methodology as equitable, although an "equitable plan is not necessarily a plan that everyone will like") (quoting *Horwitt v. Flatiron Partners, LP*, No. 21-2245, 2023 WL 192500, at *2 (2d Cir. Jan. 17, 2023)).   In supervising equitable receiverships, district courts accordingly have deep and wide discretion because the circumstances of every case are different.  *TMTE, Inc.*, 2024 WL 983553, at *3 (Recognizing breadth of court's discretion in prioritizing investor claims over those of creditors, because, "'[f]or us to hold otherwise would be to chain the hands of the court in Equity to do what is right under the circumstances.'") (quoting *United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996)).

Stays in receivership matters serve as additional tools furthering the goals of the receivership.  *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010).  The Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).   Three factors—the *Wencke* factors—inform the court's broad discretion regarding whether to lift a litigation stay: "'(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which

– 4 –

the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.'" *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x 338, 341 (5th Cir. 2011) (quoting *SEC v. Wencke,* 742 F.2d 1230, 1231 (9th Cir.1984) (Wencke II)).

Giving lip service to the deference afforded district courts in the decision at hand, McCormick discusses and distinguishes one of dozens,[4] of *Stanford Financial* cases, in which a motion to lift a receivership litigation stay was denied. *See* Motion at 4, and *Stanford*, 424 Fed. App'x at 338. The facts of that specific dispute bear little resemblance to those at issue here, i.e., investors rather than creditors, who sought to recover general funds through arbitration. *Stanford*, 424 Fed. App'x at 338. Thus distinguishing those facts does not support McCormick's requested relief, where McCormick's status as a creditor provides less justification for lifting a stay than Stanford investors whose request to lift the stay was denied. Although McCormick identifies the governing factors, it misapplies the first factor and does not provide a single case in which a receivership court lifted a litigation stay in favor of a creditor.

### 1.    Preserving the Status Quo

In evaluating the first factor, the Court compares the Receiver's interests with those of the movant. *Id.* at 341. The "Receiver's interests" encompass "not only protection of the receivership *res,* but also protection of defrauded investors and considerations of judicial economy.'" *SEC v.*

---

[4] *See SEC v. Stanford Int'l Bank Ltd.,* 465 Fed. App'x 316, 321 (5th Cir. 2012)(affirming denial of motion to lift stay filed by creditor); *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. App'x 379, 380 (5th Cir. 2011) (same); *Rishmague v. Winter*, No. 3:11-CV-2024-N, 2014 WL 11633690, at *1 (N.D. Tex. Sept. 9, 2014), *aff'd*, 616 Fed. App'x 138 (5th Cir. 2015) (denying motion to lift *Stanford* litigation stay); *In re Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0721-N, 2012 WL 13093939, at *3 (N.D. Tex. Feb. 1, 2012) (denying motion to lift stay). Indeed, many, many cases exist in which creditors or claimants of various types, who sought relief for varying purposes, were denied, orders lifting litigation stays imposed in receiverships. *See SEC v. Kaleta*, No. CIV.A. 4:09-3674, 2012 WL 2577537, at *1 (S.D. Tex. July 3, 2012) (denying motion to lift stay); *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2021 WL 3930091, at *17 (N.D. Tex. Sept. 2, 2021) (denying third motion to lift stay by the same parties); *SEC v. Heartland Group Ventures, LLC*, No. 4:21-CV-01310-O-BP, 2023 WL 4157490, at *3 (N.D. Tex. May 18, 2023*), report and recommendation adopted*, No. 4:21-CV-01310-O-BP, 2023 WL 5333278 (N.D. Tex. Aug. 18, 2023) (denying motion to lift stay); *SEC v. Adams*, No. 318CV00252CWRBWR, 2023 WL 8483662, at *2 (S.D. Miss. June 28, 2023) (denying motion to lift stay four years into a receivership).

– 5 –

*Provident Royalties, L.L.C.*, No. 3:09-CV-1238-L, 2011 WL 2678840, at \*3 (N.D. Tex. July 7, 2011) (quoting *United States v. Acorn Tech. Fund, LP,* 429 F.3d 438, 443 (3rd Cir. 2003)). Protecting the receivership estate, including judicial resources at issue with respect to the estate, is accordingly the status quo that the Court seeks to preserve. *See SEC v. Heartland Group Ventures, LLC*, No. 4:21-CV-01310-O-BP, 2023 WL 4157490, at \*2–3 (N.D. Tex. May 18, 2023), *report and recommendation adopted*, No. 4:21-CV-01310-O-BP, 2023 WL 5333278 (N.D. Tex. Aug. 18, 2023) (rejecting motion to lift stay in favor of personal injury litigant, based on preserving estate assets and preventing loss of receivership properties preserved through the stay); *Rishmague*, 616 Fed. App'x at 138 (upholding district court's decision not to lift a litigation stay several years into a receivership to preserve receivership assets).  The Receiver, rather than the challenging creditor, is in the best position to evaluate the impact of relief from the stay, and thus the Receiver's agreement or opposition warrants significant weight.  *Provident Royalties, L.L.C.*, 2011 WL 2678840 at \*2.

### a.    The Receiver's Interests and Judicial Economy

The status quo here is a property on which McCormick *acquired a lien while the property was already in receivership and the Note was already in default*¸ for which utility providers had issued disconnect notices and insurance was on the verge of cancellation.[5]  The Receiver's interest in maintaining the status quo and precluding foreclosure favors denying the Motion because claims of investors almost certainly exceed the value of properties in the estate, Dkt. 308 at 81, and Barton has challenged the propriety of including several of the most valuable properties. *See* Appeal No. 23-11237.    Although potentially subject to McCormick's claimed interest, the value of the

---

[5] *See* Dkt. 316; *see also* Dkt. 139 at 18; Dkt. 225 at 21; Dkt. 299 at 25; Dkt. 373 at 28; Dkt. 456 at 33; Dkt. 491 at 34; Dkt. 543 at 35.

Amerigold Suites currently exceeds the principal amount due on the Note by approximately $2.4 million.

As the Court is aware, perhaps even more acutely than the Receiver, judicial economy also favors preserving the status quo because if one creditor, whose collateral more than covers its debt, is permitted to foreclose the floodgates will open and the Court and the Receiver will be inundated with similar motions by the many, many other creditors whose collection activities are currently foreclosed. *See Adams*, 2023 WL 8483662, at *2 (denying motion to lift stay, where "letting one claim proceed at this stage risks opening the doors for many such motions"); *see also SEC v. Callahan*, 2 F. Supp. 3d 427, 429-30 (E.D.N.Y. 2014) (denying creditor's motion to intervene and lift litigation stay to foreclose on receivership property).

### b. McCormick's Interests

In contrast, McCormick claims the status quo is not being preserved because its debt is increasing without any offsetting payment. *Motion, p. 6.* That, however, was the status quo when the stay was issued as well as at the time McCormick acquired the Note. *See* Dkt. 316, 317. Thus, although McCormick contends the status quo is not preserved by continuing the stay because its debt is increasing without any loan payments, that was exactly the status quo when McCormick acquired the lien it now seeks to foreclose.

Nor does any purported "diminishment in value" move the needle in McCormick's favor. As discussed below, fluctuating operating expenses during the Receiver's tenure speaks primarily to the cost of insuring the property, rising property taxes, and inflation, rather than a "languishing stewardship."[6] Even if the Court were to credit these complaints, however, McCormick fails to demonstrate that it is or will be irreparably or even substantially harmed by the continued stay

---

[6] *Compare* Motion at 6, with Dkt. 543 at 35-36.

because as it is aware, the value of the property still exceeds the principal amount (as well as the principal plus accrued interest) due on the Note.  *See* Dkt. 500 at 11.

McCormick also offers no evidence that lifting the stay to permit a foreclosure would generate any income for the Receivership Estate.  *See* Motion p. 5.  The Receiver's experience suggests the contrary, since foreclosure sales only very rarely generate sales proceeds that even meet the amount of any encumbrance. Similarly, even if foreclosure followed a "marketing campaign," McCormick offers no concession on the interest it contends continues to accrue (15% at the default rate and 6.5% at the "standard" rate).[7]  Moreover, the Court's authority in this regard is not "harm" to McCormick. Instead, the "harm" McCormick relies on—its present inability to foreclose despite a contractual entitlement to do so absent the Stay—is no more than preservation of the status quo.   Indeed, bold lettering in the Motion reflects McCormick's real complaint— which applies equally to every other lender affected by the receivership—that none of the income from the property has been paid to McCormick.  *See Motion* at 6.

Finally, McCormick previously sought "clarification" regarding its right to enforce the personal guarantee provided by Defendant Barton regarding the property. *See* Dkt. 321.  Neither the Receiver nor the SEC asserted the Receivership Order stayed enforcement of the guarantee, [Dkts. 345 and 325] yet McCormick is now silent on this point.  Seeking recovery from Barton, however, could ameliorate any harm McCormick contends exists from the litigation stay.

---

[7] Notably, despite McCormick's assertion to the contrary, the Court may determine that *all* interest on the Note was stayed by the Receivership order, or that McCormick's entitlement to any such interest is subordinated to investor claims. *See Vanston Bondholders Protective Committee v. Green* (Green), 329 U.S. 156 (1946) ("The general rule in bankruptcy and equity receivership has been interest on the debtors' obligations ceases to accrue at the beginning of proceedings."); *SEC v. Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2015 WL 9701154, at *12 (C.D. Cal. Oct. 13, 2015) (Finding "that staying all post-receivership default interest satisfies the 'primary purpose' of receiverships, which is 'to promote orderly and efficient administration of the estate' for the benefit of all creditors") (quoting *SEC v. Hardy,* 803 F.2d 1034, 1038 (9th Cir. 1986)).   .

### c.    The Condition of the Property

The Receiver has protected the value of the Amerigold Suites by keeping it insured, getting and keeping all utilities caught up, and rehabbing more than half of the air conditioning units while maintaining and slightly increasing occupancy. *See* Dkt. 543 at 35-36.  And although Barton has interfered with or otherwise precluded sale of the property, it is attractive to buyers (two have contracted for its purchase) and still has an equity cushion.  *See* Dkt. 500 at 11.

McCormick asserts income from the Amerigold Suites has decreased because of the Receiver's management, relying on $912,277 as the 2021 income amount reported to the lender. The argument rests on faulty data. Amerigold's 2020 records show $850,920 in revenue. Additional records suggest the increase between 2020 and 2021 was due to COVID-19 Rent Relief Payments.  Jumping forward to 2022, McCormick says the borrower (controlled by Barton) listed revenues of $451,711 for the first six months of 2022. *Motion* at 7.  Financial records available to the Receiver, however, suggest these numbers were either misreported or fabricated.  Amerigold's records reflect revenue for the first six months of 2022 of only $367,517 and total revenue for 2022 of only $708,639.  Revenue in 2023 was $829,497, and in the first six months of 2024, revenue was $436,533, which is on pace to exceed $870,000 for 2024.  Thus, Amerigold's revenues during the Receiver's tenure are in line with Amerigold's historical revenues.

Similarly, regarding increased expenses, as stated repeatedly when the Receiver assumed control of the Amerigold Suites, insurance on the property was on the verge of cancellation, shut off notices had been issued for electricity service, significant water bills were long overdue, and trash service had been discontinued.[8]  These overdue or unpaid bills similarly suggest the expenses reported to the lender were inaccurate.  Even if the expenses were accurately reported, however,

---

[8] *See* Dkt. 139 at 18; Dkt. 225 at 21; Dkt. 299 at 25; Dkt. 373 at 28; Dkt. 456 at 33; Dkt. 491 at 34; Dkt. 543 at 35.

inflation in the last two years, during the Receiver's tenure and affecting all Americans and businesses, has also driven up prices for electricity, water, trash service, and maintenance.[9]  And as McCormick noted, the cost of insurance has risen sharply for Amerigold, due primarily to prior accidents and claims at the property and a prior cancellation notice, issued before the Receiver was appointed.   Rather than mismanagement, these financial facts suggest an increase in the cost of operating the Amerigold Suites and thus bolster the Receiver's efforts to sell the property.[10]

No considerations regarding the status quo, whether viewed from the perspective of the Receiver, the Court, or McCormick, suggest the first factor weighs in favor of lifting the stay.

### 2.        Timing in the Course of the Receivership

McCormick's arguments regarding the second factor focus primarily on the length of time during which it has not been paid and the fact that to date, the Receiver has not been able to close a sale of the Property.  These arguments focus on timing as it affects McCormick, rather than the timing in the course of the receivership.  McCormick ignores the relative infancy, in terms of progress of this receivership, due to Barton's first round of appeals, (including dismissal of his appeal of the first order that approved the sale of the Amerigold Suites), and the delays caused by the still pending appeal of the new Receivership Order.   Unlike many receiverships at the two-year mark, this case has not progressed substantially towards finality: the SEC's claims against Barton are stayed, and due to the pending appeal, the Receiver is in no position to seek or evaluate investor or creditor claims or distribute assets

---

[9] *See Texas Among States Feeling Most Stressed by Inflation*, FEDERAL RESERVE BANK OF DALLAS (Nov. 7, 2023), https://www.dallasfed.org/research/economics/2023/1107.

[10] *See* Dkt. 500 explaining why the Receiver has tried to sell the Amerigold Suites three times but due to Barton's improper appeals has not been able to close on these sales.

"Timing in a receivership process is fact specific, based on the number of entities, the complexity of the scheme, and any number of other factors." *Stanford*, 424 Fed. App'x at 341. Numerous courts consider a two-year-old receivership in which a receiver has not made significant progress towards liquidating and distributing assets or where the Receiver is still discovering new facts too "youthful" to lift the stay. *See United States v. Acorn Tech. Fund, L.P.,* 429 F.3d 438, 450 (3d Cir. 2005) (denying motion to lift stay after three years, where "new facts" continued to come to light); *Kaleta,* 2012 WL 2577537, at *3 (denying motion to lift stay after three years, where the Receiver "continues to pursue various Estate claims and thus is not yet prepared to distribute Estate assets" and if stay was lifted "Receiver would lose necessary control over Estate assets for purposes of administering Receivership."); *Adams*, 2023 WL 8483662, at *2 (denying motion to lift stay, after five years, where "the Receiver continues to pursue various claims for the Receivership Estate and is, therefore, not yet prepared to distribute the Receivership Estate's assets.") (internal quotation omitted)).   The second factor does not weigh in favor of lifting the stay.

Where the first two factors weigh against lifting the stay, the Court need not evaluate the third. *Adams*, No. 2023 WL 8483662, at *2; *Kaleta*, 2012 WL 2577537, at *3.

## CONCLUSION

For the reasons stated above, the Court should deny McCormick's Motion.  The Court should further express to McCormick and to other similarly situated creditors that because of the expense to the Receivership Estate in responding to motions to lift stay and the balance of the *Wencke* factors, efforts to obtain leave to foreclose or otherwise lift the Stay will be summarily denied for some reasonable period of time in the future.

–**11**–

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

– **12** –