IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | No. 3:22-cv-2118-X |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants*. | § | |

# RECEIVER'S VERIFIED RESPONSE TO DEFENDANT BARTON'S MOTION FOR PROTECTIVE ORDER *AND* MOTION TO COMPEL

Respectfully submitted,

Charlene C. Koonce
 State Bar No. 11672850
 charlene@brownfoxlaw.com
Timothy B. Wells
 State Bar No. 24131941
 tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000

*Attorneys for Receiver Cortney C. Thomas*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

      A.   The Receiver's Obligation to Trace the Receivership Entities' Funds. ................... 3

      B.   Barton Has Used The Receivership Entities' Corporate Forms as Shams and Used Third-Parties to Circumvent the Receivership Order ............................. 4

      C.   Barton Has Refused to Provide Information and Access to Information Necessary for the Receiver to Locate and Trace Receivership Assets ................... 5

      D.   Barton Has Used Investor Funds for His Attorneys' Fees, For Other Personal Uses, and Has Refused to Disclose the Location of Receivership Assets. ................................................................................................................ 6

      E.   Barton Has Received a Robust Defense ................................................................ 8

III.  ARGUMENT & AUTHORITIES ....................................................................... 9

      A.   Legal Standard Governing Court's Authority to Administer a Receivership and Authorize the Receiver's Request Through the Receivership Order ............. 10

      B.   The Receiver's Request for Information Regarding the Source of Payments or Security Provided to Barton's Attorneys Falls Within the Scope of the Receivership Order ......................................................................... 11

IV.   CONCLUSION ................................................................................................. 14

...

# **TABLE OF AUTHORITIES**

### Cases

*Carr v. State Farm Mut. Auto. Ins. Co.*,
  312 F.R.D. 459 (N.D. Tex. 2015) .................................................................................... 11

*CFTC  v. TMTE, Inc.*,
  No. 3:20-CV-2910-L, 2022 WL 1321572 (N.D. Tex. May 3, 2022) ...................................... 13

*Clark v. Clark*
  58 U.S. 315, 15 L. Ed. 164 (1855) .................................................................................... 10

*FDIC v. Bernstein*
  786 F .Supp. 170 (E.D.N.Y. 1992) ................................................................................... 10

*Federal Home Loan Mortgage Corp. v. Spark Tarrytown, Inc.*
  829 F. Supp. 82 (S.D.N.Y. 1993) ..................................................................................... 10

*FSLIC v. PSL Realty Co*.
  630 F.2d 515 (7th Cir. 1980), cert. denied, 452 U.S. 961, 69 L. Ed.2d 971, 101 S.C t. 319
  (1981) .............................................................................................................................. 10

*SEC v. Hardy*
  803 F.2d 1034 (9th Cir. 1986) ......................................................................................... 10

*SEC v. Safety Fin. Service, Inc*.
  674 F.2d 368 (5th Cir. 1982) ........................................................................................... 10

*SEC v. Sethi Petroleum, LLC*
  No. 4:15-CV-338, 2021 WL 2366110 (E.D. Tex. May 21, 2021), *appeal dismissed sub nom*,
  *SEC v. Sethi*, No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021) ............................... 10

*SEC v. Stanford Int'l Bank, Ltd.*
  927 F.3d 830 (5th Cir. 2019) ........................................................................................... 10

*See FTC v. Assail, Inc.*,
  410 F.3d 256 (5th Cir. 2005) ........................................................................................... 13

*Wing v. Fulbright & Jaworski LLP*,
  No. 2:09CV200, 2010 WL 1566801 (D. Utah Apr. 16, 2010) ............................................. 12

*Zacarias v. Standford Int'l Bank, Ltd.*,
  945 F. 3d 883 (5th Cir. 2019) .......................................................................................... 12

Cort Thomas, the Court-appointed Receiver, responds to Defendant Barton's Motion for Protective Order [Dkt. 587] (the "Motion"), *and* seeks an order compelling Barton to produce documents evidencing payments or security received from or for the benefit of Barton and the due diligence, if any, conducted regarding the source of any fees paid on Barton's behalf (the "Requests"), and in support respectfully shows the Court as follows:

## I.    INTRODUCTION

Barton's collateral attack on the Receivership Order as posed in the Motion paints the Receiver's Requests as a threat to Barton's ability to fund his defense, and indeed, a potential crisis with virtually infinite reach, premised on the scope of a receiver's authority. But the canvas on which Barton paints his arguments is heavily writ with Barton's blatant contempt[1] and refusal to disclose information, including the location of Receivership Entity assets[2] from which Barton may be funding the millions in fees he has surely incurred to date. Moreover, the outline for the entire landscape─Barton's contention that he is unable to fund his defense based on the existence of the Receivership Order and the Receiver's authority to ask for documents and information demonstrating the source of funds used to pay the defense─falters, as most arguments Barton makes, on the facts.

First, stark facts highlight the importance and reasonableness of the Requests: (a) before the Receiver was appointed, Barton's use of Investor Funds purportedly in the possession and control of Receivership Entities to pay Barton's attorneys; (b) potential money laundering transactions, dense commingling, and other practices that conceal the uses to which Barton put Investor Funds; and (c) Barton's refusal to disclose the location of Receivership Assets (including

---

[1] *See* Dkt. 133, 530.

[2] *See* Dkt. 133, 199, 478, 558.

– 1 –

assets that he secreted immediately upon the Receiver's appointment) and access credentials for the Receivership Entities' financial records. Although the Receivership Order rather than Rule 45 governs, these facts and the limited scope of the Requests demonstrate that the Requests are proportionate, relevant, and reasonable.[3]

Second, while Barton's ability to fund a defense, through secreted Receivership Assets, loans, or gifts, is not the appropriate focus of the motion that seeks to preclude the Receiver from obtaining information to which the Receivership Order entitles him, Barton has never filed any motion seeking the release of any funds or assets to pay his defense. The standard governing such a motion,[4] and the fact that Barton has obtained a robust defense despite protestations of poverty and the impact of the Receivership Order on Receivership Entity assets previously available for Barton's personal use, demonstrates the explanation for this omission. Nor does Barton provide any evidence whatsoever in support of his assertion that the Requests should be denied based on his wholly speculative argument that a donor to his defense will be deterred in making a donation to Barton's fees because the Receivership Order entitles the Receiver to discover the name of the donor and the "terms" of such a "donation."

The Requests fall squarely within the scope of the Receivership Order, the Court's authority to administer the Receivership, and common sense. The Court should deny the Motion and compel Barton to produce documents and information as requested.

---

[3] Barton's assertion that the Court should treat the Receiver as a party (rather than as an agent of the Court) and use Rule 45 to limit the Receiver's entitlement to information and documents is extremely disingenuous. Barton's effort to cabin the Receiver as a party for purposes of the Motion *directly* contradicts Barton's prior and repeated assertions that the Receiver is *not* a party and should not be heard, for instance in the multiple appeals Barton has filed.

[4] *See FTC v. Digital Altitude, LLC*, No. LACV1800729JAKMRWX, 2018 WL 4944419, at *6 (C.D. Cal. July 26, 2018) ("Limits on a defendant's use of frozen funds for attorney's fees neither "arbitrarily interfere[s] with a defendant's fair opportunity to retain counsel" nor offends the Fifth or Sixth Amendments.").

## II. BACKGROUND

### A. The Receiver's Obligation to Trace the Receivership Entities' Funds.

1. On October 18, 2022, this Court entered an Order Appointing Receiver [Dkt. 29] (the "Initial Receivership Order"). Pursuant to the Initial Receivership Order, this Court vested the Receiver with sole authority to operate, control, or otherwise manage all Receivership Entities. *Initial Receivership Order* ¶¶ 3-5. The Receiver also holds the attorney-client privilege for each Receivership Entity. *Id.* at ¶ 46.

2. The Initial Receivership Order transferred ownership of all Receivership Entity assets, of any kind or nature, to the Receiver and directed any person with notice of the Order to preserve and identify those assets to the Receiver. *Initial Receivership Order*, ¶¶ 1, 18. Any person who has or had possession or custody of any Receivership Assets was likewise directed to notify the Receiver and cooperate in returning those assets to the Receiver. *Initial Receivership Order* ¶ 15. The Receiver was also authorized to take all actions necessary to recover Receivership Assets and investigate claims. *See Initial Receivership Order*, ¶ 6. And all persons who received notice of the Receivership Order were required to provide, within five days of a request, copies of documents relating to all Receivership Assets, and to fully cooperate with the Receiver by providing information requested by the Receiver. *Initial Receivership Order* ¶¶ 18, 33.

3. Barton individually is not in receivership, nor are his personal assets. *Initial Receivership Order* ¶ 1. Just as importantly, Barton has never filed a motion seeking to release Receivership Assets for his use in paying any living expenses or attorney's fees.[5]

4. The Court entered the Receivership Order at the request of the SEC, which provided evidence that approximately $26M was raised from investors through fraud. When the Receiver

---

[5] The Receiver would oppose such a motion.

assumed control over the Receivership Entities, however, despite discovering that several million dollars had flowed into the Receivership Entities in the two years before the Receivership Order was entered, only about $75,000 was on deposit in any of the Entities' bank accounts. Similarly, like the SEC in its pre-suit investigation, the Receiver discovered Barton's consistent practice of co-mingling assets between entities he controlled and using entities to pay his personal expenses.[6]

5. Following the Fifth Circuit's vacatur of the Initial Receivership Order, and after extensive briefing[7] and an evidentiary hearing, on November 30, 2024, the Court entered the current Receivership Order, (the "Receivership Order"). Dkt. 417. Like the Initial Receivership Order, the current Receivership Order includes the same provisions regarding the Receiver's obligation to assume possession and control over all Receivership Assets and Entities, and to use his best efforts to discover the location of any Receivership Assets. *Receivership Order,* ¶¶ 3-6.

**B.    Barton Has Used The Receivership Entities' Corporate Forms as Shams and Used Third-Parties to Circumvent the Receivership Order**

The Court is aware of Barton's use of corporate entities as a shield and sham to circumvent the law, for instance through the mezzanine loan structure and "parent" entities created to avoid the strictures of HUD regulations.[8] Similarly, the Court is familiar with Barton's practice of using third persons, for instance, his son, to control Receivership Entities on paper, while personally maintaining such control in practice.[9]

---

[6] *See* Dkt. 308 at ¶¶ 23-32; 373 at 43.

[7] In connection with this Court's consideration of a new receivership order, the Court also ordered the Receiver to file a declaration providing "all information obtained since his appointment that the Receiver believed was relevant to the Court's consideration of a new receivership order." Dkt. 305. The Receiver's Interim Report and Declaration, Dkt. 308, is referenced below by its docket number or "the Report."

[8] *See* Dkt. 178; 308 at ¶ 221.

[9] Dkt. 73; Dkt. 88.

– 5 –

The Receiver has also discovered that Barton has used third parties as proxies to disrupt sales, provide inaccurate valuations, and make last minute sales offer lacking necessary [10] financial support. And months into the Receivership, Barton was apparently still directing his former associates to solicit information from the Receiver.[11]

**C.   Barton Has Refused to Provide Information and Access to Information Necessary for the Receiver to Locate and Trace Receivership Assets**

6.     As reflected throughout the docket and discussed during the hearing at which the Court considered the new Receivership Order, the Receiver has faced continual roadblocks in his attempts to trace the ultimate disposition of the millions of dollars that flowed through the Receivership Entities' bank accounts.[12]

7.     For instance, as detailed in the Receiver's Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing [Dkt. 133], as well as the Receiver's Report [Dkt. 308], since October 2022 the Receiver has been asking Barton to provide access to the Receivership Entities' accounting files.  To date, the Receiver has been stonewalled, with Barton at times claiming that he was "not the source" of the Receiver's inability to access QuickBooks and that Barton "does not have any QuickBooks login in his possession." *See* Dkt. 160 at 8.

8.     On the contrary, however, as the Receiver eventually discovered that in approximately August 2022, well after Barton was aware of the SEC's investigation, the Receivership Entities' accounting records were transferred to a virtual QuickBooks Enterprise account hosted remotely via Microsoft's Azure Virtual Desktop.  The Receiver believes that this

---

[10] Dkt. 193 at 3-4; Dkt. 546 at 8-9; Dkt. 558.

[11] Dkt. 130 at ¶ 11.

[12] *See also* Dkt. 308.

accounting system *is still* under Barton's control. In the interim, the Receiver has sought to obtain access to other, presumably older versions of QuickBooks. Additionally, the Receiver undertook the expensive, time-consuming process of obtaining bank statements and other bank records from the banks. Thus, despite Barton's lack of cooperation, the Receiver has obtained most of the information necessary to prepare a forensic accounting. Because the Receivership Estate has been precluded from selling any properties as necessary to preserve the value of such properties and to pay for such an accounting, only the work necessary to comply with the Court's order regarding the Receiver's Interim Report, rather than to prepare a comprehensive accounting, has been completed.

**D.    Barton Has Used Investor Funds for His Attorneys' Fees, For Other Personal Uses, and Has Refused to Disclose the Location of Receivership Assets.**

9.    Even the limited tracing effort conducted to date reveals Barton's unauthorized uses of Investor Funds, including payments to Barton's attorneys and misappropriation of Investor Funds for Barton's personal use.[13] Barton's personal uses of Investor Funds, in the months and years before the SEC filed suit, include his receipt of cash payments from the Amerigold Suites, which to date he has refused to account for and which was not deposited into any Receivership Entity bank account and millions of dollars in Investor Funds spent by Barton for personal expenses, such as meals, car payments, educational expenses, airplane repair expenses, payments to his children, and mortgage payments on the residence in which Barton lived.[14] And notably, *after* the SEC filed its complaint, Barton spent no less than $225,000 of Wall Investor Funds—received through the sale of Villita Towers—to pay attorneys, including $75,000 to Hunton; purchase a cashier's check in the amount of $30,200 from Texas Brand Bank in the name of

---

[13] Dkt. 308, ¶ 200.

[14] *Id.* at ¶ 202; *see also Thomas v. Fu*, 3:24-cv-00612-X (N.D. Tex. April 2, 2024).

LDG001; and wired $42,000 from a Broadview Holdings account at Texas Brand Bank to D4OP—the entity that owns an apartment complex in Opelika, Alabama.[15]

10. Further, as reflected in multiple reports and briefs, the Receiver was forced to assume control over the "Rock Creek Property," which Barton had used in violation of the governing loan documents as his personal residence, because within hours after the Initial Receivership Order was entered, the Receiver discovered that Barton was moving valuable art out of the property, and secreting it.[16] To this day, Barton has refused to disclose the location of this art.

11. Barton has also utilized many of the Receivership Entities as shams to conceal his misappropriation of Investor Funds. For instance, in August of 2020 $300,000 was transferred from a JMJ Development account (5193) to SF Rock Creek (3575). That same day nearly $300k was wired to HSTX Title with the memo "41047 [sic] Rock Creek Drive…Balance Due at Closing." The JMJ account statement shows a corresponding transfer of $300k to the SF Rock Creek account.[17]

12. Although the Receivership Estate cannot currently afford to pay for a comprehensive forensic accounting, the following facts are beyond dispute: (a) the SEC alleges that approximately $26 million flowed into the Receivership Entities from the Wall investors (Compl. ¶ 1); (b) Barton used Investor funds to pay personal bills and obligations; (c) approximately $75,000 was available in the Receivership Entities' bank accounts when the Receiver was appointed; and yet, (d) Barton's attorneys have been paid or received guarantees of

---

[15] Dkt. 308, ¶ 200.

[16] Dkt. 139 at 24-25; Dkt. 308, ¶ 225.

[17] Dkt. 308 at 111-12.

payment to enable challenges to virtually every motion filed by the Receiver—or they have done all of this work without payment or a promise of payment since October 2022.

### E.     Barton Has Received a Robust Defense

13.    On October 12, 2022, several attorneys from Hunton Andrews Kurth, LLP ("Hunton") including Michael J. Edney, as well as attorneys from other firms (collectively, the "Attorneys") appeared on behalf of Defendant Barton.  *See* Dkt. 17.

14.    In January 2023, the Receiver requested an accounting of all assets or security interests the Attorneys had received from or for the benefit of Barton and, further requested the Attorneys identify the source of the monies and collateral, produce copies of any documents evidencing such payments or security agreements, and describe the due diligence conducted to ensure the monies or security interests were not subject to the freeze and return provisions imposed by the Receivership Order.

15.    Despite a subsequent request for the same information and notice that failure to comply would result in a motion to compel, the Hunton Attorneys ignored the Receiver's request. After the Receiver filed a motion to compel, in approximately April 2023, Hunton eventually provided the requested information.

16.    In the 18 months since receiving that initial information, Barton's attorneys have continued to vigorously and capably defend him. At the same time, because Barton continues in his refusal to comply with the disclosure obligations in the Receivership Order,[18] the Receiver still does not know where the art Barton removed from the Rock Creek property is located or its

---

[18] *See* Dkt. 478.

– 8 –

potential disposition and has not received any information from Barton about his use of millions of dollars in Investor Funds or their proceeds.[19]

17. It is logical to infer that Barton's counsel has been, and continues to be paid with the missing funds, or at a minimum has received security or some other form of guarantee related to Receivership Assets. Even if such payments are *de minimus* or have been made by third parties, the Receiver is obligated to confirm as much. Similarly, it requires virtually no imagination to conclude that Barton could easily have "gifted" the art to a friend, relative, or sham entity for sale, and had such third-party use the proceeds to pay Barton's living expenses or his attorneys. Such a scenario is hardly far-fetched given (a) Barton's claims that he has been stripped of "virtually" all assets, (b) his historical disregard for this Court's orders; (c) his use of Investor Funds for personal purposes, and (d) because in a sworn statement before the Receiver was appointed, Barton identified $12 million in art and antiques owned by Receivership Entity JMJ Development, which he has refused to identify or produce.[20]

### III. ARGUMENT & AUTHORITIES

Barton frames the protection he seeks from enforcement of the literal terms of the Receivership Order as necessary to ensure his future "fund raising" efforts are unhampered. While Barton provides no plausible reason why a potential donor may be unwilling to publicly fund his defense, a donor's theoretical desire to remain anonymous has no bearing on the Receiver's entitlement to the information at issue. Instead, the Receivership Order and the Court's discretion to administer the Receivership governs the issue at hand.

---

[19] *See* Dkt. 583.

[20] *See* Dkts. 339, 478, 583.

A. **Legal Standard Governing Court's Authority to Administer a Receivership and Authorize the Receiver's Request Through the Receivership Order**

A receiver is neither plaintiff nor defendant, but instead, acts as the Court's agent with respect to the administration of property. *Clark v. Clark*, 58 U.S. 315, 331, 15 L. Ed. 164 (1855); *FSLIC v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980), *cert. denied*, 452 U.S. 961, 69 L. Ed.2d 971, 101 S.C t. 319 (1981) ("Receiver is an officer of the court and subject to its orders in relation to the property for which he is responsible until discharged by the court"); *FSLIC v. Spark Tarrytown, Inc.*, 829 F. Supp. 82, 85 (S.D.N.Y. 1993). Although issues that arise in receiverships are generally fact-specific, two basic principles are recognized in most receivership proceedings. First, district courts are given "extremely broad" discretion in determining "the appropriate procedures to be used in its administration." *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992); *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019); *SEC v. Safety Fin. Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) ("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse"). Second, "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). Accordingly, "reasonable procedures instituted by the district court that serve [these] purpose[s]" are generally upheld. *Id.*; *see also SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2021 WL 2366110, at *6 (E.D. Tex. May 21, 2021), *appeal dismissed sub nom*, *SEC v. Sethi*, No. 21-40564, 2021 WL 7711044 (5th Cir. Dec. 27, 2021) (court possesses broad powers to fashion appropriate relief intended to assist receiver in accomplishing his primary task, "protect[ing] the Receivership Estate.").

B.   **The Receiver's Request for Information Regarding the Source of Payments or Security Provided to Barton's Attorneys Falls Within the Scope of the Receivership Order**

Barton offers no arguments regarding the propriety of the Receiver's requests, arguing instead that the Receivership Order is overly broad in its entirety.[21]  But this Court denied Barton's requests for a monitor and rejected his arguments against appointment and reappointment of a receiver.  And while the Fifth Circuit vacated the initial Receivership Order, it did so with an express focus on the parameters governing a new receivership order.  If the Fifth Circuit reverses entry of the Receivership Order, Barton's challenges to the scope of the Order will presumably also be resolved. Until and unless that occurs, the Receivership Order is enforceable and mandates that Barton disclose the information requested.

Nor are Barton's bare arguments of burden and "limitless prerogative" persuasive.  The Receiver is not seeking "limitless" information nor are the Requests burdensome. Even if the requested information presented more than a minimal burden, Barton has presented no evidence of such burden. *See Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) (party seeking protective order bears burden of supporting objections with evidence).  In truth, Barton cannot present even one instance in which the Receiver has exceeded the bounds of relevance and necessity with respect to *any* request.  Thus, Barton's "limitless prerogative" arguments, even if they had relevance to the Receiver's entitlement to the information requested, are not grounded in the facts of this case, which are the only relevant facts.

Similarly, Barton's arguments that the amount at issue "is so small" as to make their source irrelevant only demonstrates the importance of the Requests.[22]  Is a defendant entitled to ignore a

---

[21] *Motion* p. 4 ("The theoretically infinite scope of that requirement [that the Receiver may ask and demand an answer to any question of anyone on any topic…]").

[22] On the contrary, "limits on a defendant's use of frozen funds for attorney's fees neither 'arbitrarily interfere[s] with a defendant's fair opportunity to retain counsel' nor offends the Fifth or Sixth Amendments." *FTC v. Digital Altitude,*

– 11 –

Court order if the defendant deems the amount at issue, or indeed the request, "irrelevant?" What amount would be relevant, particularly if Receivership Assets rather than a wholly independent donor is the source? What is the amount Barton deems irrelevant? And how is a request for documents and information disclosing the source of funds used to pay Barton's attorneys or provide a security interest not proportionate or a legitimate request, particularly given Barton's secretion of Receivership Assets?

In asserting the amount and source of payments for his fees is confidential (although clearly not privileged) Barton contends the information would "not be disclosed to others in the ordinary course of business." But the progression of a receivership and the mandatory provisions of the Receivership Order are far from the "ordinary course of business," and rather than Barton's adversary or the Commission's proxy, the Receiver is the Court's agent. *Zacarias v. Standford Int'l Bank, Ltd.,* 945 F.3d 883, 896 (5th Cir. 2019). And although Barton provides no support for his confidentiality assertion, other courts have rejected that argument as sufficient to protect the same information at issue here. *See Wing v. Fulbright & Jaworski LLP*, No. 2:09CV200, 2010 WL 1566801, at *2 (D. Utah Apr. 16, 2010) (Granting Receiver's motion to compel an accounting and disposition of money paid from receivership defendant to law firm, the disclosure of which neither violated "the rules of professional conduct, the attorney-client privilege, or the work-product privilege.").

Barton's assertion that "future contributing third parties will be concerned that the information will be unfairly exploited" is similarly meritless. First, the concerns of such third-

---

*LLC*, No. LACV1800729JAKMRWX, 2018 WL 4944419, at *7 (C.D. Cal. July 26, 2018) (quoting *FTC v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) (quoting *United States v. Monsanto*, 491 U.S. 600, 616 (1989)); *see also Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985) ("[T]here is generally no right to counsel in a civil case."). Here of course, the funds in the Receivership Estate are not Barton's "frozen funds." They are funds owned and controlled by entities Barton set up, expressly to distance himself from those entities and their activities (which were nonetheless conducted by and through Barton).

parties do not negate Barton's obligations under the Receivership Order.[23] Second, Barton has presented absolutely no evidence in support of this argument, nor is the argument logical. The Receiver has not exploited any information, nor is there any support whatsoever for Barton's assertions that donors would subject themselves to government scrutiny if their identity is disclosed to the Receiver, or that any such donor would be deterred by any such imagined scrutiny.

Further, as Barton concedes, his personal assets are not in receivership and the effect of the Receivership Order in precluding Barton's use of Investor Funds as his own personal assets does not justify a refusal to provide specific information for which the Receiver has demonstrated a legitimate need in seeking to protect such Investor Funds and their proceeds. Instead, the Requests merely reflect the obligation of Barton's Attorneys to ensure that any funds or security they receive are not Receivership Assets or their proceeds, masquerading as a donation. *See FTC v. Assail, Inc.*, 410 F.3d 256 (5th Cir. 2005) (attorney has a duty to investigate the source of funds with which a client pays his fees to ensure the funds did not originate from a "tainted" source or are otherwise subject to a court order).

Finally, but perhaps more importantly, as reflected in the docket, able counsel has willingly participated in this case for more than two years, through no less than 590 docket entries, numerous hearings, and at lease eight appeals. Thus, while Barton could conceivably argue that he is entitled to access Receivership Assets for his defense, (even though Receivership Assets are not his personal assets), even that request would require that Barton demonstrate that he could not "obtain the services of an attorney" unless such funds are released to him." *CFTC v. TMTE, Inc.*, No. 3:20-CV-2910-L, 2022 WL 1321572, at *2 (N.D. Tex. May 3, 2022). Given Barton's

---

[23] In a hearing on a receiver's motion to compel the very same information at issue here, Judge Toliver expressly rejected third parties' concerns about avoiding an investigation and remaining anonymous as sufficient to warrant an attorney's refusal to disclose the identity of the persons and entities who had paid him. *See* Tr. of July 21, 2021 hearing from *CFTC v. TMTE, Inc. et al.,* Cause No. 3:20-CR-2910-L.

unwillingness to disclose the location of the hidden Receivership Assets, as well his demonstrated ability to obtain Hunton's assistance without a release of Receivership Assets, Barton accordingly could not justify such a request.

## IV.    CONCLUSION

For the reasons set forth above, the Receiver prays for an order denying Barton's Motion for Protective Order, *and* an Order granting the Receiver's motion to compel and compelling Barton or his Attorneys to provide documents evidencing payments or security agreements received from or for the benefit of Barton, and the due diligence, if any, conducted regarding the source of any fees paid on Bartn's behalf, and granting such other relief to which the Receiver may be justly entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     Texas Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## VERIFICATION

      My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated in the Background above are within my personal knowledge and are true and correct.

                                                    */s/ Cortney C. Thomas*  
                                                    Cortney C. Thomas

## CERTIFICATE OF SERVICE

      Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.