IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff,* | § § § § § | |
| v. | § § | |
| TIMOTHY BARTON, ET AL.,<br>*Defendants,* | § § § | No. 3:22-cv-2118-X |
| DJD LAND PARTNERS, LLC, and LDG001, LLC<br>*Relief Defendants.* | § § § | |

### DEFENDANT TIMOTHY L. BARTON'S RESPONSE TO RECEIVER'S FOURTH QUARTERLY FEE APPLICATION

Comes now, Defendant Timothy L. Barton, responding ("Response") to the Receiver's Fourth Quarterly Fee Application ("Application") (Doc. 593).

**Summary**: The Application contains unreasonable fees that should not be awarded. The Court should decline to award fees for: a) fees charged by the Receiver before the Receiver was authorized following the Fifth Circuit's vacatur and proper appointment; b) fees concerning sale of properties when the sales have not comported with state law and not resulted in any substantive sale; c) fees insufficiently described, either by vague descriptions or so redacted as to be indiscernible; and d) questionable expenses.

Additionally, this Court should require the Receiver to properly justify fees pursuant to the *Johnson* factors and disallow conclusory statements.

The Court is obligated to award fees only upon proper support; the Receiver appears to be taking his appointment as license to sloppily heap expenses and seek fees without sense of a need to show the necessity of his work; the Court should not reward this approach.

**TABLE OF CONTENTS**

I. ARGUMENT AND AUTHORITIES ................................................................................. 4

    A. Courts must not award unreasonable fees. ............................................................. 4

    B. The Receivership's Application's showing of the *Johnson* factors are conclusory. ........... 5

    C. The Receivership's Application's time entries contain unreasonable expenses. ................ 7

        i. The Receiver was vacated during the period covering the fourth application, August 31 to September 30, 2023 - the SEC should bear any awarded fees. ......................... 7

        ii. The Receivership is incurring costs to do things that the Receiver previously represented it cannot do. ..................................................................................... 9

        iii. Microsoft 365 licenses are mentioned in vague values and are unjustified. ................. 10

        iv. The Intuit expenses are extraneous. .............................................................................. 11

        v. The Fee Application contains heavily redacted entries – this Court should not award the redacted fees that the Court has not inspected. .................................................. 11

        vi. Ahuja & Clark Accounting miscalculated hours worked by Associate. ....................... 12

        vii. Receiver's testimony on percentage of total spending on tax returns in the Application is inconsistent. ......................................................................................... 12

        viii. There are vague time entries. ....................................................................................... 13

    D. The unreasonable expenses in the Receiver's fee application should not be awarded. ..... 14

II. CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*15625 Ft. Bend, Ltd. v. Sentry Select Ins. Co.*, 991 F. Supp. 2d 932, 946 (S.D. Tex. 2014) ........... 4

*Beach v. Macon Grocery Co.*, 125 F. 513, 517 (5th Cir. 1903) ....................................................... 9

*Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1002 (8th Cir. 1939) .......................... 4, 8

*Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016) ............................... 4, 10, 11

*EC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) ................................................ 9

*Islamic Ctr. v. Starkville*, 876 F.2d 465, 468 (5th Cir. 1989) ................................................ passim

*La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) .......................... 4, 5, 10, 11

*Porter v. Cooke*, 127 F.2d 853, 859 (5th Cir. 1942) ............................................................. passim

*Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017) ......................................................... 4

*SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022) ..................................................................... 7

*SEC v. Barton*, Case No. 23-11237 (5th Cir. 2023) ..................................................................... 8

*SEC v. W.L. Moody & Co., Bankers (Unincorporated)*, 374 F. Supp. 465, 480
   (S.D. Tex. 1974), aff'd, *SEC v. W.L. Moody & Co.*, 519 F.2d 1087 (5th Cir. 1975) ............. 4

*W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932) ............................................ 9

## I.    ARGUMENT AND AUTHORITIES

The Receivership's Application includes unreasonable fees that should not be awarded.

**A. Courts must not award unreasonable fees.**

Courts must apply a two-step method for determining a reasonable fee award. *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017) (citing *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016)). First, they calculate the lodestar. *Id.* (quotation marks and citation omitted). "In calculating the lodestar, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* Second, the court should consider whether to decrease or enhance the lodestar based on the *Johnson* factors. *Id.* Lastly, "The court must provide 'a reasonably specific explanation for all aspects of a fee determination.'" *Id.*

Further, Courts examine the credentials, experience, reputation, and professional qualities required to carry out a court's orders when assessing the reasonableness of the rates charged for services to a receivership. *See SEC v. W.L. Moody & Co., Bankers (Unincorporated)*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), aff'd, *SEC v. W.L. Moody & Co.*, 519 F.2d 1087 (5th Cir. 1975).

For a party to recover attorney's fees it must produce supporting expert testimony. *15625 Ft. Bend, Ltd. v. Sentry Select Ins. Co.*, 991 F. Supp. 2d 932, 946 (S.D. Tex. 2014). Mere conclusory statements regarding the reasonableness of a fee are insufficient to withstand appellate review. *Islamic Ctr. v. Starkville*, 876 F.2d 465, 468 (5th Cir. 1989); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995).

Longstanding legal precedent provides that when a receiver's appointment is found to be irregular or unauthorized, the expenses should be borne by the party seeking the appointment, not the receivership estate. *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1002 (8th Cir. 1939); *Porter v. Cooke*, 127 F.2d 853, 859 (5th Cir. 1942).

**B. The Receivership's Application discussion of the *Johnson* factors are conclusory.**

There are conclusory statements all throughout the Receiver's application of the *Johnson* factors to its receivership.

**1)** **Skill and Experience (Sections C and I of Application):** The Application does not contain any affidavits from the Receivership's team's firms, describing their skills credentials, experience, reputation, or other professional qualities that support that their fees are reasonable. The Receiver conclusory description includes such statements as, "The Receiver believes the services performed in this case to date required individuals possessing considerable skill in the administration of receiverships, asset seizure, collection, and litigation. The Receiver, Brown Fox, and Ahuja & Clark have considerable skill and experience in such areas." Doc. 593, p. 16. And,

> "Both the Receiver, and his primary counsel, Charlene Koonce at Brown Fox, have extensive experience in representation of equity receivers in federal securities or commodities enforcement cases. Ms. Koonce has done so for more than twenty years. The reputation of Brown Fox, PLLC is recognized and respected in these fields. Both the Receiver and Ms. Koonce also have extensive experience in litigation in federal and state courts in and around the Northern District of Texas."

Doc. 593, p. 18. These statements cannot establish the reasonableness of the various entities' fees; even the claim that the firms are respected is a mere conclusory opinion. There is little detail of Ms. Koonce's experience, and it is conclusory. Conclusory statements that someone has practiced for so long, or is at such firm, cannot possibly prove reasonableness of that individual's fees. *Islamic Ctr.*, 876 F.2d at 468; *La. Power & Light Co.*, 50 F.3d at 326.

Perhaps these questions were established orally during the appointment process or previously, but if so, at least a reference to that previous finding should be provided. Unless the Receiver produces nonconclusory statements regarding the reasonableness of the fees charged, none of the fees should be awarded as they will not withstand appellate review. *See id.*

2) **Customary Fee (Section E of Application):**

Further, for the customary fee, the Receiver states the following in a conclusory fashion:

"The hourly rates sought herein for the Receiver and the Receiver's attorneys and accountants are substantially lower than the rates charged by other practitioners of similar experience levels in Texas. Indeed, the per hour rates charged by the Receiver's counsel whose fees are included herein are substantially lower than the rates currently charged on other receiverships pending in Texas."

Doc. 593, p. 17. Yet, there is no testimony regarding other rates charged by other practitioners of similar experience in Texas, just conclusory allegations. Unless the Receiver produces nonconclusory statements regarding the reasonableness of the customary fees charged, none of the fees should be awarded as they will not withstand appellate review. *See id.*

3) **Results Obtained (Section H of Application):**

As fully described in Section C(i) below, the Receiver has claimed excessive billing in the pursuit of selling properties he knows he cannot sell while the appeal on his authority is ongoing. While the appeal is pending, buyers have not purchased the Receivership Estate properties, the Receiver has not sold a single property, even while failing to provide state disclosures as every seller in the state is required to provide.[1] Surely, unless the pending appeal ends, there will not be millions of dollars coming into the Receivership Estate.[2] It certainly has not happened yet because of the pending appeal, which the Receiver is fully aware yet he continues to incur billing for himself and his team at the expense of the Receivership Estate, pursuing such fruitless ventures and incurring significant waste. Further, the Receivership Estate incurred billing while its Receivership was vacated, and its Receivership suspended.

---

[1] "As of the date of this Fee Application, the Receiver has been unable to close on the sale of any of the real estate assets that are part of the Receivership or to service any of the extensive debt that encumbers the Receivership's real estate assets." Doc. 593, p. 2.

[2] *See* "Moreover, the Receiver has continued the process of identifying and securing additional sources of recovery and has entered into agreements that should result in several million dollars coming into the Receivership Estate within the coming months." Doc. 539, p. 16, filed on July 26, 2024.

Because the Receiver knows these will be fruitless pursuits, fees should not be awarded as excessive. If the Receiver wants fees for selling the Receivership properties, it should wait until the material conditions that disturb the buyers have passed, then proceed with the certainty that it can sell the properties. Otherwise, the fees should not be paid or significantly decreased for the knowingly fruitless results. Also, the SEC should have to pay for the unauthorized fees incurred while the Receivership was vacated.

### C. The Receivership's Application's time entries contain unreasonable expenses.

The Receivership's Fee Application contains various categories of unreasonable expenses. This Court should deny awarding the Receivership the fees discussed below. The SEC should have to pay for the fees and expenses which are unreasonable.

**i. The Receiver was vacated during the period covering the fourth application, August 31 to September 30, 2023 - the SEC should bear any awarded fees.**

As a preliminary matter, the receivership—and numerous actions taken by the Receiver—were vacated by the Fifth Circuit in favor of the defendant. *See SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022). The court's August 31, 2023, order mandated that the district court adopt less drastic measures and re-evaluate the entities to determine any benefit or receipt of Wall lender funds in line with *Netsphere* standards. Exhibit 1, p. 11. The Receivership was vacated between August 31, 2023, to November 29, 2023, stating:

> "the receiver's power to sell or dispose of property belonging to receivership entities, including the power to complete sales or disposals of property already approved by the district court, is immediately suspended, and this suspension will remain in effect until the receivership order is vacated 90 days from the issuance of this court's mandate. This suspension does not apply to activities in furtherance of sales or dispositions of property that have already occurred or been approved by the district court. "Activities in furtherance" do not include the completion of the sale of any property. Should the district court enter a new receivership order before the present order is vacated, this partial stay has no bearing on any actions a receiver may take under the new order."

Exhibit 1, p. 13. The Court previously granted in part Receiver's Blessing Motion on November 29, 2023, which Defendant Barton has again appealed to the Fifth Circuit in *SEC v. Barton*, Case No. 23-11237 (5th Cir. 2023), a pending matter. *See* Doc. 419.

Given that the receivership was vacated for this period, any employment of the Receiver during this time was unauthorized, unless previously authorized, and thus the Receiver's request for expenses incurred during August 31 to September 30, 2023, lacks legal basis. These expenses, improperly incurred at the SEC's request, should be funded by the SEC, not Defendant Barton or the Receivership Estate. The Fifth Circuits order specifically suspends the receiver's power to complete sales or disposals for 90 days unless there is a new receivership order. The "blessing order" came 90 days later; however, the Fifth Circuit's order clearly states the Receivership is not to perform certain actions until the order, and it did anyway. *See* Doc. 419; Exhibit 1. The Receiver's actions were not authorized at the time, and fees should not be awarded to the Receivership at the expense of the Receivership Estate or Defendant Barton between August 31, 2023 to September 30, 2023.

During the period covered by the current application, the Receiver directed substantial resources toward justifying his re-employment compared to the benefits to the Receivership Estate. Instead of preserving or advancing the estate's interests, the Receiver primarily focused on compiling the information required to support his reappointment, as documented in the Declaration of Cort Thomas, Doc. 308, and the pursuit of fire sale activities Docs. 374, 375, 376, 378 and 408. These actions do not serve the estate and constitute an improper use of estate resources.

Because the Receiver's appointment is irregular and unauthorized, its fees should be paid by the SEC completely - certainly at least for the period of 90 days that the Receivership was vacated. *Bowersock Mills & Power Co.*, 101 F.2d at 1002; *Porter*, 127 F.2d at 859. Therefore, the

SEC, having initiated the Receiver's appointment, should cover these fees, not Defendant Barton or the Receivership Estate. One of the district court's primary obligations is to protect estate assets from unauthorized expenses. *W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932); *Beach v. Macon Grocery Co.*, 125 F. 513, 517 (5th Cir. 1903).

Further, the Receiver's application contradicts previous representations regarding the estate's limited cash resources and immediate cash needs. See, e.g., Hearing Transcript on Receiver's Motion for Appointment of Appraisers, Dkt. No. 121, at 6:19–22, 10:20–22, and 44:16, Receiver's Renewed, Partially Unopposed Third Quarterly Fee Application, Doc. 539, p. 9 & 10, status reports and motions for all the fire sale pursuit. The Receiver's claim of hundreds of thousands in additional fees as another "competing requirement[s] for the cash on hand" conflicts with the estate's best interests. See, Hearing Transcript on Receiver's Motion for Appointment of Appraisers, Doc. 121, at 6:19–22.

The Application should be denied, or the SEC should be liable for any fees awarded after the Receivership was vacated as the appointment is irregular and potentially unauthorized pending appeal, especially for those fees awarded during the period that the Receivership was vacated.

### ii. The Receivership is incurring costs to do things that the Receiver previously represented it cannot do.

The Receiver and his team have been continuously involved in pursuing sale attempts on properties pertaining to the Receivership Estate, while clearly knowing that the sales cannot be closed due to the cloud of appeal in the Fifth Circuit Court on his appointment. Further, the actual performance of Receivership in regard to handling the Receivership Estates has led to substantial waste. *See EC v. Stanford Int'l Bank, Ltd*., 927 F.3d 830, 840 (5th Cir. 2019).[3]

---

[3] "Receivers appointed by a federal court are directed to "manage and operate" the receivership estate "according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

Such intentional attempts are a clear indication of unnecessary billing generation, while clearly knowing that such sales cannot close. The Receiver describes its efforts in its Ninth Status Report [Doc. 583.] and the Appendix to the Receiver's Fourth Application [Doc. 594] contains corresponding time entries regarding the efforts. However, much of the Receiver's described efforts should never been attempted, omit material details, conclusory, and are not adequately documented. The Receiver has incurred unreasonable expenses regarding these efforts. Receivership has mismanaged the Receivership Estates, and any fees associated with the mismanagement should not be awarded against Receivership Estates or Defendant Barton. *Combs.*, 829 F.3d at 391; *Islamic Ctr.*, 876 F.2d at 468; *Porter*, 127 F.2d at 859; *La. Power & Light Co*, 50 F.3d at 326.

Further, from the beginning the Receiver has historically listed the dearth of cash and the exorbitant bills, yet they have presented no bills in crisis that must be paid to be paid. Also, after two years, the only bills to be paid are their own bills. If they had not done unnecessary pursuits of selling properties, there would be less bills to pay, or none at all. *Id.*

iii. **Microsoft 365 licenses are mentioned in vague values and are unjustified.**

In Receiver's Exhibit E-1 through E-7, one can see that the descriptions of the Microsoft 365 license are vague and irregular. Specifically, for the months of July and August 2023, there is a quantity of eighty, but only a quantity of one for September, October, November, and December of 2023. There is no explanation regarding the different quantities of Microsoft 365 licensing – the $8468.80 expenses in July and August 2023 regarding those licenses are unjustified, and the Receiver's explanation is conclusory and inadequately documented. The Receiver should not be awarded $8468.80 for the 158 licenses for July and August of 2023. *Combs.*, 829 F.3d at 391; *Islamic Ctr.*, 876 F.2d at 468; *Porter*, 127 F.2d at 859; *La. Power & Light Co*, 50 F.3d at 326.

### iv. The Intuit expenses are extraneous.

The Intuit expenses make little sense. Through July 2023 to January 2024 the Intuit expenses are thousands of dollars each month, while February 2024 through September 2024 Intuit expenses each month are less than a thousand dollars. So, either the later ones are justified, or the prior ones are justified. Regardless, the Receiver is paying thousands of to Intuit under unknown circumstances. These expenses are excessive, conclusory, and inadequately documented. The Receiver does not describe the "Intuit hosting fees" and there is no explanation of the fees in the Receiver's appendix. For QuickBooks Enterprise Pricing, the "most powerful" program is $4668 a year- with "up to 40" users, it is $1429 a month.[4] The Receiver should not be awarded excessive, duplicative, and inadequately documented fees for the Intuit Expenses, potentially a total of $33,293.32 or more. *Combs.*, 829 F.3d at 391; *Islamic Ctr.*, 876 F.2d at 468; *Porter*, 127 F.2d at 859; *La. Power & Light Co*, 50 F.3d at 326.

### v. The Fee Application contains heavily redacted entries – this Court should not award the redacted fees that the Court has not inspected.

The Receiver's Application describes that "the Receiver has redacted privileged information and information that is likely to prejudice the Receivership if publicly disclosed at this time." Upon Defendant's review, Receiver's Application's Exhibits B and C include $77,112.50 corresponding to redacted time entries. These redacted entries must be inspected by the Court to be awarded. Otherwise, $77,112.50 in fees should not be awarded for unknown work. *See Combs.*, 829 F.3d at 391; *Islamic Ctr.*, 876 F.2d at 468; *Porter*, 127 F.2d at 859; *La. Power & Light Co*, 50 F.3d at 326.

---

[4] https://quickbooks.intuit.com/desktop/enterprise/pricing/

    **vi.**    **Ahuja & Clark Accounting miscalculated hours worked by Associate.**

The Receiver's Accountants incorrectly reported Associate hours. Ahuja & Clark's Q3 2023 Billing Summary Page states that Kiranpreet Walia (KW) incurred 328.40 hours, with a rate of $210.00, for a total of $68,964.00. Doc. 594, p. 58. However, upon Defendant's review, the total hours billed are 321.4 for KW, the summary wrongly adds an additional seven hours for an additional $1,470.00. The Receiver should not be awarded the $1,470.00 for unaccounted work. *See Combs.*, 829 F.3d at 391; *Islamic Ctr.*, 876 F.2d at 468; *Porter*, 127 F.2d at 859; *La. Power & Light Co*, 50 F.3d at 326.

    **vii.**    **Receiver's testimony on percentage of total spending on tax returns in the Application is inconsistent.**

The Receiver misrepresents that most of the bills for its accountants are related to tax returns. The Receiver stated on page 9 its Application:

> "As detailed more fully in the Receiver's Fifth Status Report [Dkt. 373], the Accountants' efforts during the Third Quarter of 2023 primarily focused on the preparation and filing of over 300 tax returns for the Receivership Entities, as well as underlying accounting and auditing work that primarily assisted the preparation of these tax filings (*collectively 80% of the billed fees for the Third Quarter*). (emphasis added).

However, Defendant's review of the time entries shows total costs incurred for "tax returns" for Ahuja & Clark are $247,943 against their total bill of $550,413, thus making it 45% of the total billing. The Receiver's misrepresentation should be noted or explained. Otherwise, the excessive and inadequately documented additional 35% for "tax returns" should not be awarded, a total of $192,644.55 should be deducted. *See Combs.*, 829 F.3d at 391; *Islamic Ctr.*, 876 F.2d at 468; *Porter*, 127 F.2d at 859; *La. Power & Light Co*, 50 F.3d at 326.

**viii.   There are vague time entries.**

The Receiver's Application's contains many vague time entries that should not be awarded. *See Combs.*, 829 F.3d at 391; *Islamic Ctr.*, 876 F.2d at 468; *Porter*, 127 F.2d at 859; *La. Power & Light Co*, 50 F.3d at 326.

1)   There are 49 vague entries for Ahuja & Clark stating, "Discussion regarding the status of the project and the next steps," billed for $11,826.50. The entries are vague, excessive, and too inadequately documented to be awarded.

2)   Both Brown Fox Law and Ahuja & Clark exploited the terms "Reviewing Accounting Records & Bank Statements" and "Tracing" in their billing, which is written so that no one can determine who is actually tracing and what tracing is being done, whether it was the receiver law firm or it was the receiver accounting company. For tracing, Brown Fox Law incurred $36,045; Ahuja & Clark incurred $66,162. It is unclear who has done the tracing or what tracing is being done. Further, the time entries for the Receivership's team describe all tracing efforts in a conclusory manner and it difficult to trace what work is being done on their tracing.[5] The entries are vague, excessive, and inadequately documented to be awarded. A list of Ahuja and Clark's tracing invoices is attached as Exhibit 3. A list of Brown Fox Law's invoices regarding tracing is attached as Exhibit 4 totaling $28,158.24.

3)   There is little description in the time entries for the enormous amounts spent on preparing the Receiver's Declaration and Interim Report for justifying the Receiver's continuation of his and his law firm's appointment. Brown Fox Law's time entries regarding drafting the

---

[5] For example, "8/10/23 TBW Continue tracing research." [Dkt. 594, p. 32]; "09/28/2023 TBW Continue extensive review of records to trace funds." [Dkt. 594, p. 42]; "08/01/23 TC Perform property tracing using bank records relating to Wall entities [yet they failed to produce any concrete evidence] as well as other Barton related entities; document tracing analysis." [Dkt. 594, p. 64].

Declaration and Interim Report have little to no detail.[6] The Receiver invoiced $21,598.50 for the Declaration and Interim Report, but Brown Fox invoiced $36,419.50 for reviewing and revisions of the same, without any detail of the apparently necessary duplicative reviews or "substantial edits" to the Receiver's prepared report. The Receiver's team should not be awarded fees based on conclusory allegations that are not adequately documented and excessive, nor on duplicative work on the Receiver's report. There is little explanation and evidence regarding the need for Brown Fox's work on the Receiver's Declaration and Interim Report justifying the larger proportion of the fees requested. The entries are vague, excessive, and too inadequately documented to be awarded. The allocation of work between senior litigators and support staff appears inefficient, with senior personnel billing substantial time ($20,000+) for tasks that could have been performed by junior staff or clerks under supervision. A list of these entries is attached as Exhibit 5 and totals $58,018.00.

4) The Application also contains other vague time entries. These time entries that are excessive, duplicative, and inadequately documented should not be awarded. A list of vague entries is attached as Exhibit 6 and totals $32,032, however the decrease of the award for vague entries should not be limited to this list if others are found by the Court.

**D. Unreasonable expenses in the Receiver's fee application should not be awarded.**

Incorporating the above, the Receiver should not be awarded for the excessive, duplicative, and inadequately documented fees as shown herein. *Combs*, 829 F.3d at 391; *La. Power & Light Co.*, 50 F.3d at 326. Further, any award of fees incurred from irregular and unauthorized Receiver appointment should be paid by the SEC. *Porter*, 127 F.2d at 859.

---

[6] For example, "08/13/2023 CCT "Begin reviewing working draft of Declaration and Interim Report; begin extensive revisions to same" [Dkt. 594, p. 10]; "09/04/2023 CCK Review and substantial edits and comments to C. Thomas Declaration and Interim Report." [Dkt. 594, p. 49].

## II. CONCLUSION

Defendant Timothy L. Barton respectfully requests that the Court deny the Receiver's Fourth Quarterly Fee Application [Doc. 593] for the reasons set forth above, particularly considering the Fifth Circuit Court's vacatur of the receivership. Should the Court be inclined to grant any portion of the Receiver's fee request, Defendant respectfully requests that the fees be substantially reduced in line with *Lodestar* principles and applicable case law in not awarding fees that are vague, excessive, duplicative, and inadequately documented, with a reduction of up to 33% to account for the vacated receivership period and excluding all unreasonable fees within the period. Any fees ultimately awarded should be charged to the SEC, as the party responsible for initiating the receivership under irregular and unauthorized circumstances, and therefore the party that should bear the associated expenses.

Defendant Timothy L. Barton respectfully requests this Court to deny the Application, or deduct the unreasonable fees and award them against Plaintiff SEC.

Respectfully submitted,

*/s/ Solomon G. Norred*
Warren V. Norred; TBN 24045094; warren@norredlaw.com
Solomon G. Norred; TBN 24138007; sgn@norredlaw.com
515 E. Border Street; Arlington, Texas 76010
P. 817-704-3984; F. 817-524-6686
   *Attorney for Defendant Barton*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing response was served upon all parties of record via the Court's electronic filing system on this 21st day of January 2025.

*/s/ Warren V. Norred*
Warren V. Norred