UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        *Plaintiff,*<br><br>v.<br><br>TIMOTHY BARTON, et al.<br><br>        *Defendants,*<br><br>DJD LAND PARTNERS, LLC, and LDG001, LLC,<br><br>        *Relief Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-CV-2118-X |

## <u>ORDER GRANTING RECEIVER'S SECOND FEE APPLICATION</u>

Before the Court is the Receiver's Fourth Quarterly Fee Application.  (Doc. 593).  Defendant Timothy Barton opposes the motion; the Securities and Exchange Commission (SEC) does not.  For the reasons below, and because the Court concludes that the Receiver has acted reasonably and diligently and that the requested fees and expenses are reasonable and necessary given the circumstances surrounding the Receivership, the Court **GRANTS** the Receiver's fourth fee application.

### I.      Background

The Court entered the first Receivership Order in this case in 2022.  (Doc. 29). Barton appealed the order, and the Fifth Circuit vacated it, "effective 90 days from

the issuance of [its opinion]," which it entered on August 31, 2023.[1]  Ninety days later, this Court entered a second Receivership Order.  (Doc. 417).

Though we are in the eleventh quarter of this receivership, this is only the Receiver's fourth quarterly fee application.  The Receiver and his team have not been compensated for their work in over eighteen months.  Barton has filed interlocutory appeals to the Fifth Circuit eight separate times since the Court entered the initial Receivership Order.  The Receiver has yet to close on the sale of any real property in the estate or service any of the debt that encumbers the assets due to Barton's appeals and interference.

In his fourth quarterly fee application, the Receiver seeks fees and expenses for the work performed from July 1, 2023, to September 30, 2023, and receivership expenses from October 1, 2023, to September 30, 2024.

## II.    Legal Standard

"The award of fees in a receivership is entrusted to the discretion of the district court."[2]  Further, as the Court has noted, a receiver "is entitled to compensation" regardless of whether he "increased, or prevented a decrease in, the value of the collateral," so long as he "reasonably and diligently discharged his duties."[3]

---

[1] *SEC v. Barton*, 79 F.4th 573, 581 (5th Cir. 2023).

[2] *Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993) (cleaned up).

[3] *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992).

"In general, a reasonable fee is based on all circumstances surrounding the receivership."[4]  This includes a myriad of factors, including "(1) the complexity of the problem faced by the receivership; (2) the ability, reputation and professional qualities of the receiver and assisting professionals necessary for the job; (3) the time and value of the labor necessarily expended; (4) the results achieved; and (5) the ability of the receivership estate to afford the requested fees and expenses."[5]  And "opposition or acquiescence by the SEC to the fee application will be given great weight" in this analysis.[6]

In determining legal fees, courts apply a two-step method.[7]  "First, they calculate the lodestar, which is equal to the numbers of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work."[8]  This excludes any time that is "excessive, duplicative, or inadequately documented."[9]  Then, courts decide "whether to decrease or enhance the lodestar based on the *Johnson* factors."[10]

---

[4] *SEC v. Striker Petroleum, LLC*, No. 3:09-CV-2304-D, 2012 WL 685333, at *3 (N.D. Tex. Mar. 2, 2012) (Fitzwater, C.J.) (cleaned up).

[5] *Id.*

[6] *Id.*

[7] *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017)

[8] *Id.* (cleaned up).

[9] *Id.* (cleaned up).

[10] *Id.* (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)).

## III.    Analysis

Barton has opposed the Receiver's first, second, and fourth fee applications.  In his opposition to the Receiver's fourth quarterly fee application, Barton argues the Receiver's fees are unreasonable and improper because the Fifth Circuit vacated the receivership order for a month during the period this fee application covers: July 1, 2023, through September 30, 2023.  But as the Receiver outlines in his reply, the Fifth Circuit's August 31, 2023, opinion vacated the prior Receivership Order "effective 90 days from the issuance of [the opinion],"[11] and the Court entered the current Receivership Order on November 29, 2023.[12]  Therefore, the Receiver acted under a valid receivership order during the entire period covered by this fee application.

Barton also argues that the Court must deny or reduce the requested fees because the Receiver has yet to sell any property from the receivership estate, makes conclusory statements in his fee application, and seeks some unreasonable expenses, such as Microsoft 365 licenses and Intuit Quickbooks fees.

The Court starts by calculating the lodestar.  The Receiver submitted itemized bills for (1) his time and expenses, separated into categories for case administration and asset analysis and recovery;[13] (2) his counsel's time and expenses, separated into categories for case administration, asset analysis and recovery, and the sale of

---

[11] *SEC v. Barton*, 79 F.4th 573, 581 (5th Cir. 2023).

[12] *See* Doc. 417.

[13] Doc. 594, Ex. B.

specific properties;[14] and (3) his accounting firm's time and expenses in preparing tax returns for the Receivership Entities for the past three years.[15]  The itemized bills for Receiver's counsel and accounting firm apply rates particular to individual attorneys and accountants.    The total hours billed by the Receiver, his counsel, and his accountants is 3,145.25 hours.  Most of these hours were spent on tax issues.

Barton argues the Receiver exceeded the scope of his authority and should not have spent time working to sell the receivership properties while an appeal was pending on the first Receivership Order.  But the Fifth Circuit gave the Receiver the express authority to continue "activities in furtherance of sales or dispositions of property that have already occurred or been approved by the district court," so long as he did not execute final sale until a new Receivership Order was in place.[16] Further, the Receiver properly identified assets and assessed the taxes owed by the receivership estate.  And the expenses Barton calls unreasonable flow directly from his own refusal to cooperate.  Because Barton refused to provide information and documents to the Receiver, the Receiver and his team had to reactivate 79 individual Microsoft 395 accounts and retrieve tax information from Intuit Quickbooks directly.

---

[14] Doc. 594, Ex. C.

[15] Doc. 594, Ex. D.

[16] *SEC v. Barton*, No. 22-11132, Doc. 152, at 13, *superseded by SEC v. Barton*, 79 F.4th 573, 573 (5th Cir. 2023).

The Receiver does not ask for any enhancements to the lodestar formula of hours worked times fee. And the Court sees no reason to diminish the lodestar when it is significantly lower than that of other receiverships in this district.[17]

Turning now to the 20% holdback, the SEC filed no response or objection to the Receiver's fee application, but the Receiver stated in his application's Certificate of Conference that the SEC believes the standard holdback is appropriate. The live Receivership Order contemplates a permissive 20% holdback to be reserved from each fee application and paid out at the Court's discretion at the close of the receivership.[18] This prevents the receivership estate from being drained by fees. But the Receiver and his team have gone unpaid for well over a year now, refraining from submitting five quarterly fee applications so as not to overburden the estate. So the Court will not impose a 20% holdback on this fee application. It has been held back long enough.

## IV.    Conclusion

Accordingly, the Court **GRANTS** the application and **ORDERS** that the Receiver is hereby authorized to pay from the Receivership assets the following fees and expenses:

1.  The sum of $60,947.06 shall be paid to Cort Thomas for his services as Receiver from July 1, 2023, to September 30, 2023. Additionally, the sum

---

[17] *See, e.g.*, *SEC v. Agridine*, No. 4:23-cv-1224-P, Doc. 129 (N.D. Tex. Oct. 28, 2024) (Pittman, J.) (granting receiver's fee application with a lodestar of $530.34); *SEC v. AriseBank*, No. 3:18-cv-0186-M, Doc. 92 (N.D. Tex. Sept. 11, 2018) (Lynn, C.J.) (granting receiver's fee application with lodestar of $525).

[18] Doc. 417 ¶ 66.

of $12,002.34 shall be paid to Cort Thomas for expenses incurred as Receiver from October 1, 2023, to September 30, 2024.

2.  The sum of $129,944.00 shall be paid to Brown Fox PLLC for its services as counsel for the Receiver from July 1, 2023, to September 30, 2023.

3.  The sum of $563,081.75 shall be paid to Ahuja & Clark, PLLC, for its accounting services rendered from July 1, 2023, to September 30, 2023.

4.  The sum of $29,255.29 shall be paid to Veracity Forensics for its services as digital asset and discovery advisor to the Receiver from July 1, 2023, to September 30, 2023.

**IT IS SO ORDERED,** this 26th day of February, 2025.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE