# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>　　*Plaintiff,*<br><br>v.<br><br>TIMOTHY BARTON, ET AL.,<br>　　*Defendants,*<br><br>DJD LAND PARTNERS, LLC, and LDG001, LLC,<br>　　*Relief Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>No. 3:22-cv-2118-X |

### DEFENDANT TIMOTHY L. BARTON'S REPLY IN SUPPORT OF HIS MOTION FOR MORE DEFINITE STATEMENT 12(e) IN RESPONSE TO THE TENTH QUARTERLY REPORT

TO THE HONORABLE JUDGE OF THIS COURT:

　　Defendant Barton files this reply in support of his Motion for a more definite statement regarding the Receiver's Tenth Quarterly Report pursuant to Rule 12(e).

　　To summarize, Defendant Barton only seeks that Receiver Thomas prepare a compliant quarterly report to this Court so that Mr. Barton can prepare a proper response. Though Receiver Thomas found space in his Quarterly Report for irrelevant and slanderous complaints concerning Mr. Barton, he failed to include required information, such as property valuations.

　　Mr. Thomas has taken the position opposite of the Constitution, treating Barton as though he is guilty, though no court has issued any judgment, and the SEC case against him is stayed. Mr. Barton's actions are irrelevant to the Receiver's duty to file quarterly reports or their content. (See ECF No. 417 at 25–26.) The Receiver's omissions prevent Mr. Barton from properly responding to the Quarterly Report. Rather than attempting to correct the report or show why it is sufficient, the Receiver's response doubles down on his Quarterly Report's insufficiencies. Therefore, Mr. Barton files this reply in support of his Motion, pursuant to FRCP 12(e).

## I. ARGUMENT

**A. The Receiver's Quarterly Report is a pleading to which a response may be filed.**

1. The Receiver's first argument is that the Quarterly Report is not a pleading within the definition of Fed. R. Civ. P. 12(e). To support his argument, Receiver cites Fed. R. Civ. P. 7(a). Receiver's argument does not match relevant case law.

2. In his Motion, Mr. Barton cited *SEC v. W. L. Moody & Co., Bankers (Unincorporated)*, 374 F. Supp. 465, 490 (S.D. Tex. 1974) (allowing objections to a receiver's report in an SEC case where the court had appointed a temporary receiver), *aff'd sub nom. S. E. C. v. W. L. Moody & Co.*, 519 F.2d 1087 (5th Cir. 1975). In that case, the court allowed objections to the receiver's quarterly report. Combining this case with Fed. R. Civ. P. 12(e), a motion for more definite statement appears to be the most accurate means of challenging a receiver's quarterly report that is vague and filled with extraneous, irrelevant comments that obscure the required content. The Receiver's response appears to just ignore that authority.

3. Further, the Receiver failed to show in its response why Mr. Barton's alleged conduct was relevant to the Court's required content specified in listed items "b" – "h" on pages 25–26. On the contrary, Mr. Barton specifically described how his alleged conduct was not relevant to those items. Further, Mr. Barton pointed out how the Receiver failed to include critical information as required in this Court's Order. The combination of irrelevant comments and obscured information constitutes a shotgun pleading for which a motion 12(e) is proper. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 n. 10 (11th Cir. 2015) (cited approvingly in *Chowdary v. Ozcelebi (Ozcelebi)*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021)). Therefore, Mr. Barton properly filed a Motion 12(e) to request that the Receiver comply with this Court's order.

4. Even if the Receiver is correct that the Motion 12(e) was not the proper mechanism, Fed. R. Civ. P. 7(b) and 8(e) require that this Court construe the Motion so as to do justice. In this case, if the Court does not recognize a motion 12(e) as the proper mechanism, it can, without causing injustice to the Receiver, construe the Motion as objections to the contents of the Tenth Quarterly Report. In his Motion, Mr. Barton included specific objections to most parts of the Quarterly Report, described the portion to which he was objecting with specificity, and described why the portion to which he objected was objectionable. In most instances, Mr. Barton objected that the content was not relevant to the Court's order and did not comply with the information the Receiver was required to produce. As a result, if this Court determines that a motion 12(e) is the wrong mechanism, it should construe the motion as objections to the Quarterly Report and sustain those objections.

**B. The general disfavoring of motions for more definite statement should not prevent this Court from requiring supplementation or refiling.**

5. The Receiver's second argument is that motions for more definite statement are generally disfavored, and so this Court should not grant the motion. Specifically, the Receiver argues here that motions for a more definite statement are not generally favored and that, in this circumstance, it is too expensive to provide the information about which Mr. Barton complained. Mr. Barton agrees that motions for more definite statement are disfavored, but merely because a tool is disfavored does not make it the wrong tool. Nor is a general argument that "these motions are disfavored" an argument against the motion generally. An equitable receivership is also a disfavored remedy. *SEC v. Barton*, 79 F.4th 573, 578-79 (5th Cir. 2023), but this Court has granted a receivership in this case. Motions for summary judgments can be said to be generally disfavored too, but courts grant summary judgment quite often. Each motion stands on its own.

6. As explained above, the Tenth Quarterly Report is full of irrelevant comments and lacks crucial information that this Court requires the Receiver to produce every quarter. As explained above and in his original Motion, Mr. Barton is unable to reasonably prepare a response because the Receiver failed to file a Quarterly Report that clearly stated the information this Court required and included an ipso facto prosecution of Mr. Barton's alleged behavior. A request that the Receiver do the job that this Court ordered is hardly an extreme remedy – one can note that Mr. Barton was doing this job and ceased doing the work only when the Court ordered such.

7. Even if this Court agrees that a motion under FRCP 12(e) is not the correct mechanism, it should construe the motion as objections to the contents of the Tenth Quarterly Report, sustain those objections, and order the Receiver to either re-file a compliant Tenth Quarterly Report or supplement the missing information.

8. Additionally, the Receiver's complaint that it is too expensive to file the information that Mr. Barton pointed out is missing is irrelevant to his duty as a Receiver. As an equitable appointment, the Receiver's powers and duties are defined by this Court's order appointing him as receiver. The Receiver has wide latitude in what actions he may take under the Court's order, but he must comply with the duties this Court imposed on him. *See Nabers v. Miss. State Tax Comm'n*, 665 F. Supp. 2d 692, 697-98 (S.D. Miss. 2009) (holding that a receiver must comply with the order appointing the receiver). One of those duties is to make compliant Quarterly Reports such that both Mr. Barton as a real party in interest as owner of entities held in trust and this Court can know that the Receiver is properly handling the assets. The Receiver has not complied with its duty to disclose the relevant information pursuant to this Court's Order. The duty to comply is not contingent on expense. Therefore, the Receiver cannot rely on expense as a legitimate excuse to fail to produce the required information. Additionally, if the Receiver was

caring for the Receivership Properties as Barton was, the Receiver would be operating in the black, and would not struggle with these expenses.

### C. The missing information is not within Mr. Barton's knowledge or control.

9. The Receiver's next argument is that the information Mr. Barton recognized as missing from the Tenth Quarterly Report is available to Mr. Barton already. First, this argument has no bearing on the Receiver's duty of disclosure. Even if it were true that Mr. Barton has access to the information that is missing or irreconcilably obscured in the Tenth Quarterly Report, Mr. Barton's access does not excuse the Receiver's duty to comply with the terms of the Court's order. As pointed out above, the function of the Quarterly Report, as with any other personal representative, is to keep all interested persons informed and to hold the personal representative accountable for actions he is taking. *See*, *e.g.*, Tex. Estates Code § 359.001(a). One party's access to information does not change that responsibility. Therefore, the Receiver has a duty to provide unobscured information this Court requires him to produce regardless of Mr. Barton's access.

10. Additionally, Mr. Barton does not have access to the information. The Receiver has even recently accused Mr. Barton of hoarding information and asserting that he was acting with contempt because he has knowledge of bank account numbers. However, the bank account numbers in question were taken from the Receiver's documents filed in this case. The ongoing narrative that Mr. Barton is a bad guy is based on no court findings – in fact, all the government players in this case have acted only to ensure that no adjudication of any issue on its merits can be performed. The Receiver walked into Mr. Barton's office and cleaned everything out, and then demands that he produce information taken from him. Then he claims that Mr. Barton has information is keeping information from the Receiver which Barton only knows because the Receiver talked about it in his own court documents. (See Exhibits 1 and 2.) However, even now, Mr. Barton estimates more than 1200 bank statements have not been produced.

11. While Barton should be able to seek discovery on such information, the Receiver has taken the position that Barton has no standing and only begrudgingly provide even bank statements out of the goodness of his heart, months after requested, and only when faced with a motion to compel the production. But even Barton's ability to seek discovery does not remove the Receiver's duty to voluntarily disclose that information. Much like the mandatory initial disclosures a party must make at the outset of litigation, the opposing party's ability to obtain that information later in discovery does not mean the disclosing party is free from his duty to make the initial disclosure and subsequently supplement those disclosures. Fed. R. Civ. P. 26(a). Therefore, the Receiver is not excused from making a compliant quarterly report to this Court based on access or ability to access information the Receiver is required to disclose already.

**D.  Mr. Barton's alleged hounding of the Receiver is irrelevant to the merits of the Motion.**

12. The Receiver next complains that he has been hounded by Mr. Barton about information already, so information is unneeded in the Tenth Quarterly Report. If the Receiver was providing proper reports, there would be no need for a request, but the Receiver's complaints are irrelevant to his duty. Even if Mr. Barton requested information from the Receiver, his willingness to make some disclosures on request does not equate to obeying his Court-ordered duty to disclosure. Mr. Barton's previous requests are not and never were a legitimate reason to fail to comply with the Court's order concerning required information for disclosure on a quarterly basis.

**E.  The Receiver should supplement its Tenth Quarterly Report.**

13. Finally, the relief Mr. Barton requests from this Court is a compliant Quarterly Report. Regardless of whether this Court chooses to grant the Motion or construe it as objections to be sustained, this Court should either require the Receiver to re-file a Tenth Quarterly Report with the information this Court required in its Order (ECF No. 417 at 25–26) or order the Receiver to expeditiously supplement the existing Tenth Quarterly Report with the required information.

## II.  CONCLUSION

Because the Receiver has not properly drafted his Tenth Quarterly Report by obscuring the required information with complaints about Mr. Barton, and refusing to provide a proper report and disclosure, Mr. Barton cannot reasonably prepare an adequate response to the Tenth Quarterly Report. Therefore, the Court should require the Receiver to amend his Tenth Quarterly Report with a more definite statement of the information this Court required in its Order (ECF No. 417) and allow additional time to respond to that amended report. Alternatively, this Court should construe the Motion as objections and sustain those objections, ordering the Receiver to file a new, compliant quarterly report or supplement the existing report with compliant information. Mr. Barton prays for all such further relief as to which he may be entitled.

Respectfully submitted on March 20, 2025,

*/s/Warren V. Norred*
Warren V. Norred; Texas Bar Number: 24045094; warren@norredlaw.com
NORRED LAW, PLLC; 515 E. Border Street; Arlington, TX 76010
O: (817) 704-3984; F: (817) 524-6686

**CERTIFICATE OF SERVICE** - I certify that on March 20, 2025, I filed the preceding document and its attachments using the Court's CM/ECF filing service, which will send notice of the filing to all parties seeking service in this action.

*/s/Warren V. Norred*
Warren V. Norred

**VERIFICATION OF EXHIBITS** - My name is Warren V. Norred. I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. The attached Exhibits 1 and 2 are communications between me and opposing counsel for the Receiver, which I maintain as business records in my office, and were collected as they were received or created in the normal course of business.

Executed in Tarrant County on March 20, 2025,

Warren V. Norred

# BROWN FOX

Tim Wells
214.367.6091
tim@brownfoxlaw.com

March 7, 2025

**Via Email** wnorred@norredlaw.com **and**
**U.S. Priority Mail 9405530109355112981164**
Warren Norred
Norred Law, PLLC
515 East Border Street
Arlington, Texas 76010

RE:   Mr. Barton's Request for Bank Statements

Dear Warren:

In response to Mr. Barton's repeated requests for bank statements, the Receiver has agreed to provide the bank statements, which are on the flash drive enclosed with the physical copy of this letter (the "Bank Statements"). The Bank Statements correspond to Receivership Entities and prior receivership entities and are provided pursuant to the confidentiality provisions of the Order Appointing Receiver [Dkt. 417] ("Receivership Order") including, but not limited to, Paragraph 18. Accordingly, Mr. Barton, including through counsel and other third-parties, is prohibited from sharing, disseminating, copying, or publishing the Bank Statements.

For added context, when the Court entered its initial Order Appointing Receiver [Dkt. 29] ("Initial Receivership Order"), the Initial Receivership Order required Mr. Barton to cooperate with the Receiver and his team in providing, among other things, all documents requested by the Receiver (¶11), all books, records, and accounts of the Receivership Entities (¶13), and within 5 business days, provide all keys, codes, and passwords, entry codes, combinations to locks to access computer servers, networks, or databases (¶18). Since Mr. Barton refused to abide by the Initial Receivership order, the Receiver and his team were forced to undertake the laborious process of contacting numerous banks to inquire whether they had accounts belonging to any of the initial Receivership Entities. The Bank Statements are one product of these efforts.

Now, over two years into the Receivership, Mr. Barton has produced a list of entity names, account numbers, and bank names, including one entity previously unknown to the Receiver and his team. Had Mr. Barton produced this list from the onset of the Receivership, significant fees would have been saved. Tellingly, production of this list confirms what the Receiver has suspected all along, that Mr. Barton has information available to him that he has not produced in accordance with the Receivership Order. Production of the list, at this stage in the Receivership and in connection with Mr. Barton's latest request highlights his general disregard of the Court, its orders, and the Receiver's appointment and further reveals his continuing contempt.

Despite all of this, and although no legal obligation requires the Receiver to do so, he has agreed to voluntarily produce the Bank Statements to avoid the cost and distraction of this unnecessary and pointless fight.

Sincerely,

*Tim Wells*

Tim Wells



Exhibit 2

Warren Norred <warren@norredlaw.com>

---

### Re: No. 3:22-cv-2118-X; SEC v. Barton, Conference on Motion to Show Cause

**Warren Norred** <wnorred@norredlaw.com>                                    Tue, Mar 11, 2025 at 12:28 PM
To: Tim Wells <tim@brownfoxlaw.com>, Charlene Koonce <charlene@brownfoxlaw.com>, Cort Thomas <cort@brownfoxlaw.com>
Cc: Kimberley O'Rourke <korourke@brownfoxlaw.com>
Bcc: Tim Barton <timothy.barton@proton.me>, zohibahmad <zohibahmad@proton.me>

All,
I have received a set of statements. I would like to ensure that I have received everything that you have sent. Can you send me a list of what you believe you sent me?

Also, I noted that your letter asserts that Mr. Barton has kept a secret list of accounts from you. However, the list of accounts requested were created from court documents and SEC discovery which I'm pretty sure you have access to, and always have. The entity listing and account numbers were cobbled together from the Receiver's First Order (Dkt 29), Declarations (Dkt 308, 309, 310), the Second Receiver Order (Dkt 417) and PI Order (Dkt 418). So...please refrain from suggesting that Mr. Barton has committed fraud when the information is right in front of you.

I would like to avoid a motion to show cause, but as part of the process, I am seeking resolution on the following subjects, which shall be the subject of a motion to show cause if it cannot be resolved:

1) The Receiver's work regarding privilege pursuant to Dkt 235 requires a specific process which is not being followed. Specifically, para. 12 requires that "a process similar to that described above" be followed in the evaluation of paper documents. I have not received any list of written instructions or search terms. This order states that we can seek resolution on issues concerning the privilege log by a motion in para. 9, so this is probably coming. I recognize that your position is that you have not been paid, but in light of the criminal accusation against Mr. Barton, the idea that he has to pay for documents that will help him in his defense seems fairly heinous. Additionally, as I understand it, you've paid the forensic team $30k...what is the estate getting for this money? Could we get a detailed description?

2) Between the first and second receivership orders, a number of entities are no longer under your control, yet you have maintained that control. For example, all of the 2999TC entities are listed in Dkt. XX and not Dkt. 417 (2999TC FOUNDERS, LLC; 2999TC JMJ CMGR, LLC; 2999TC JMJ EQUITY, LLC; 2999TC JMJ MGR, LLC; 2999TC JMJ, LLC; 2999TC LP, LLC; 2999TC MM, LLC; 2999TC MZ, LLC), and unless I have missed something, Barton should regain control of the bank accounts, documents, etc., regarding these accounts. This would also lighten your load and allow Barton to care for the entities in ways that you are not, e.g., federal and tax filings, Secretary of State PIRs.

3) We've discussed our position that you must inform would-be buyers of the Receivership Properties of the pending appeal. Your side has taken what I believe to be different positions on this at various times, but I have an email or two which seems to indicate that Charlene would give notice, but Cort has disclaimed that duty. We need this established, either as a stipulation, or a coming motion to clarify or show cause.

4) The recent filing by McCormick indicates that the Receivership Properties are not being maintained properly as the owner would. This is federal law (28 U.S.C. § 959(b)). What is the Receiver's position on this issue?

Cheers,
Warren

**Warren V. Norred, P.E.**
**NORRED LAW, PLLC**
515 East Border Street
Arlington, Texas 76010
817.704.3984 office
817.524.6686 fax

Contact us for matters involving Intellectual Property, Business Needs, Bankruptcy, and Wills & Estates.
Licensed to practice before the United States Patent and Trademark Office, all state and federal courts in Texas, the Federal Circuit, and the Supreme Court of the United States.



www.norredlaw.com

CONFIDENTIALITY NOTICE: This message and any attachments contain information that may be confidential or legally privileged. The information is intended only for the use of the individual or entity to whom it is directed, regardless of the e-mail address. If you are not the intended recipient, you are notified that any examination, disclosure, copying, distribution or the taking of any action in reliance on, or with respect to, the contents of this information is strictly prohibited. If you have received this e-mail message in error, please immediately notify the person identified as the sending person by reply e-mail or notify the sender by phone at 817-704-3984.