IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> TIMOTHY BARTON, ET AL., § <br> *Defendants,* § <br> § <br> DJD LAND PARTNERS, LLC, and LDG001, LLC § <br> *Relief Defendants.* § | No. 3:22-cv-2118-X |

**DEFENDANT TIMOTHY L. BARTON'S
MOTION TO SHOW CAUSE FOR FAILURE TO PRESERVE RECEIVERSHIP ASSETS and
JOINDER TO McCORMICK 101 LLC'S MOTION FOR THIRD-PARTY INSPECTION
(BRIEF INCORPORATED)**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Timothy L. Barton moves that this Court order Receiver Cort Thomas to demonstrate that he is complying with his duties pursuant to his Court's Order and federal law to care for the property and entities under his control. This failure has created dangerous conditions on estate property which could result in irreversible injury to the estate and innocent bystanders.

Specifically, lender McCormick 101, LLC, in its *Motion for Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues* ("Motion"), documented mismanagement of the Amerigold Property, including a collapsing retaining wall, exposed live electrical wires in outdoor areas, open conduit boxes and exposed pigtails, unlatched sheds housing dangerous equipment, unrepaired windows, cracked foundations, exposed screws and more. ECF Nos. 612 and 613. This Court ought not allow its Receiver to permit such conditions on estate property.

Barton therefore joins with the McCormick Motion, and adds his own motion.

Federal law requires the Receiver to care for these properties as the owner would, This Court should require the Receiver comply with his duties, or the properties returned to Barton.

## I. BACKGROUND

1. This Court originally appointed a receiver to take control of certain properties and entities that Mr. Barton owned on October 18, 2022. ECF No. 29. In the First Order, this Court appointed the Receiver to control 29 limited liability companies and following entities and their property, and "any other entities that Defendant Timothy Barton directly or indirectly controls."

2. As part of the "any other entities," the Receiver took control of the unenumerated entities 2999TC Founders, LLC, 2999TC JMJ CMGR, LLC, 2999TC JMJ Equity, LLC, 2999TC JMJ MGR, LLC, 2999TC JMJ, LLC, 2999TC LP, LLC, 2999TC MM, LLC, and 2999TC MZ, LLC.

3. On appeal, the Fifth Circuit Court of Appeals vacated the first Order, appointing the Receiver to assume control over entities related to Defendant Barton. This Court then issued a second order appointing the Receiver on November 29, 2023. ECF No. 417. In the Second Order, this Court directed the Receiver to take control of what it called "Receivership Entities."

4. **Subsequent Appeal.** On reappointment, Barton appealed this action to the Fifth Circuit Court, where the matter remains pending. Fifth Circuit Case No. 23-11237 ("Pending Appeal"). The Pending Appeal raises substantial concerns as to the enforceability of any Receiver-related activities, particularly regarding property transactions.

5. **Concerns Regarding Failure to Preserve the Estate.** This Court's Second Order requires the Receiver "To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property." ECF No. 417 at 8.

6. However, the Receiver's quarterly reports are filled with reports of how the Receiver is dissipating the Receivership Estate, which defeats the purpose of the receivership in the first place. In the Tenth Quarterly Status Report (ECF No. 599), the Receiver discusses from pages 2–11 how the Receivership Estate is doing extraordinarily poorly. The Receiver claims that the

properties and entities in the Receivership Estate have significant obligations which the Receiver is unable to meet. Further, the Receiver claims that the estate is in such a bad state that he is unable to be compensated for his work.

7. This devastation of the Receivership Estate has not gone unnoticed. Lender McCormick 101, LLC filed its Motion for Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues because it stated that it has raised serious concerns about the Receiver's care for the properties under his control. ECF No. 612. As a lender, it appears that McCormick is concerned that the estate will be unable to make good on the debt owed to McCormick.

8. In the Receiver's response to the McCormick motion (ECF No. 620) and then Reply by McCormick (ECF No. 622), the Receiver has not alleviated the concerns, but rather validated them, defending itself with objections concerning an inspector who might do his job and find the Receiver's work to be unsatisfactory. (See Resp., p. 2.)

## II.    LEGAL ARGUMENT AND AUTHORITIES

9. In short, Mr. Barton argues that the Receiver has abdicated his duties under this Court's Second Order by failing to properly care for the property and entities under his control. The Receiver certainly has wide latitude as an equitable appointment to accomplish his role in this litigation. However, that latitude is strictly curbed by this Court's Second Order since an equitable receivership is an extreme, unusual, equitable remedy to <u>preserve</u> the assets during litigation. *SEC v. Barton*, 79 F.4th 573, 579 (5th Cir. 2023). The Receiver is failing to accomplish this goal. Therefore, this Court should order the Receiver to show cause that he is complying with his duty under the Second Order to preserve the assets.

**A. The Receiver is failing to comply with its duty to preserve the Receivership Estate.**

10. Receiver Cort Thomas is failing to comply with his duties under the Second Order because he is failing to preserve the Receivership Estate. An equitable receivership is a creature

of common law and court orders. *SEC v. Barton*, 79 F.4th 573, 578–79 (5th Cir. 2023). Although it is an equitable remedy, neither a receiver's nor a receivership court's power is unlimited. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840–41 (5th Cir. 2019). The purpose of bankruptcy receiverships and equity receiverships is essentially the same: to marshal assets, preserve value, equally distribute to creditors, and either reorganize, if possible, or orderly liquidate. *Id.*

11. Notably, the 5th Circuit has already commented that in this specific case, the function of a receiver is to preserve the estate. *Barton*, 79 F.4th at 579.

12. A federally appointed receiver is required to possess and maintain the receivership estate in the same manner as the owner. *Stanford*, 927 F.3d at 840. The question, then, is what it means for a receiver to operate the receivership estate in the same manner as the owner. As noted above, an equitable receiver is a sort of fiduciary whose duties and authority are described and circumscribed by the Court's Order appointing the equitable receiver. *Barton*, 79 F.4th at 578–79.

13. In this case, the Court requires the Receiver to "manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court." ECF No. 417 at 7, ¶ 6B. Further, both relevant Fifth Circuit case law and this Court's Order require that the Receiver preserve the Receivership Estate. *Barton*, 79 F.4th at 579; ECF No. 417 at 8, ¶ 6G.

14. The first and key reason for a Court to consider a receivership is when there is a "clear necessity" to protect defrauded investors. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). Additionally, a receivership's benefits must outweigh the burdens to the subject of the receivership. *Id.* A receiver that fails to perform the basic functions of the receivership either ought to be replaced or the receivership terminated.

15. Here, the receivership is failing to meet the basic requirements for which it was established. The Receiver has reported that the Receivership Estate is wildly in the red. ECF No.

599 at 11–13. The Receiver, in his Tenth Quarterly Status Report, states that he is unable to sufficiently maintain the entities and properties with which he has been charged. ECF No. 599 at 11–13. The Receiver states that he is unable to maintain sufficient cash flow from the entities and properties to maintain the Receivership Estate. ECF No. 599 at 12–13.

16. By contrast, before the Receiver took charge of the Receivership Estate, Mr. Barton successfully ran his entities without the crisis-level cash flow problems the Receiver now admits to suffering. Mr. Barton was able to produce sufficient income from the properties within the entities he controlled, and each entity was able to achieve a place of financial stability. The Receiver has had three years to protect and maintain the Receivership Estate, yet his Tenth Quarterly Report, to the extent in which it contains information the Court requires him to disclose, paints a grim picture of the position the Receiver has put the estate into.

17. A reasonable owner of income-producing properties would not consider the maintenance of such properties as optional. However, other reasonable business owners have recognized the Receiver is not properly maintaining the Receivership Estate. As noted above, McCormick 101 filed a Motion to Inspect the records concerning the Amerigold Property. ECF No. 612 and 613.

18. In its motion, McCormick 101 indicates that the Receiver is mismanaging this hotel in such a manner that, even as it generates revenue, the Receiver is apparently comingling this income with other funds. ECF No. 613. Further, McCormick 101 indicates that the manner in which the Receiver is operating the Amerigold property has led to safety issues: "a large retaining wall that is in imminent threat of collapsing, multiple exposed electrical wires, and other clear and present dangers to the Tenants and visitors." ECF No. 613 at 4–5.

19. The Receiver cannot show that Barton treated the property subject of the Motion to Inspect with a cavalier attitude toward maintenance, particularly when property conditions endanger the lives of others. As the Receiver is obligated to treat the properties as the owner

would, he must use, at the least, the income received from the property's management for such maintenance.

20. Finally, the Receiver has explicitly admitted he does not preserve the Receivership Property. When the Receiver's team appeared at Mr. Barton's office to take all Mr. Barton's files, Receiver Cort Thomas conversed with Jeremy Morelli, an architect who was residing on the third floor of the same building; Mr. Morelli came away from the discussion with the understanding that the Receiver intended to sell all of the property in 30 days, and it was clear that he never intended to treat these properties as the owner would. See Exhibit 1, incorporated here.

21. The Receiver's behavior with regard to the bank accounts and care for the Receivership Properties reflect his approach that he does not intend to protect the receivership property. The Receiver has maintained a single bank account to collect the funds from the entire Receivership Estate and to allegedly maintain the multitude of entities and property under his care.

22. Furthermore, the receiver has failed to maintain records properly, including critical files stored in designated storage locations. There has been no adherence to standard procedures that the Receiver is obligated to follow, particularly where the assets were meant to be preserved and returned to the rightful owner. Instead, their actions are clearly in anticipation of a permanent disposition and liquidation rather than fulfilling the court's mandate of temporary custodianship.

23. After nearly two and a half years of this conduct, substantial evidence likely exists to establish the receiver's bad faith and lack of intent to return the assets. His continued actions suggest a deliberate attempt to dissolve and disperse assets rather than administer them in accordance with legal and ethical standards.

### III.   PRAYER

Incorporating the above, according to Federal Rules of Civil Procedure 11(c), Defendant Barton asks the Court to require the Receiver to show cause for why he is failing to maintain the Receivership Estate within the purview of this Court's Order and his duties under the law, including mundane maintenance of the Receivership Properties, and explain how he is using the income from income-producing companies, rather than performing property maintenance, and if inadequate, the Court should return control to Barton, who is competent to do this work.

Respectfully submitted on April 4, 2025,

*/s/Warren V. Norred*
Warren V. Norred, TBN: 24045094, warren@norredlaw.com
NORRED LAW, PLLC; 515 E. Border Street; Arlington, TX 76010
(817) 704-3984 (Telephone)
(817) 524-6686 (Fax)
*Attorney for Tim Barton*

### CERTIFICATE OF CONFERENCE

On March 11, 2024, I have sought an explanation from the Receiver by email regarding his failure to maintain the Receivership Properties as described herein, and he has not responded.

*/s/Warren V Norred*
Warren V. Norred

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing motion was served on all parties of record via the Court's electronic filing system on April 4, 2025.

*/s/Warren V Norred*
Warren V. Norred

Exhibit 1

## DECLARATION of JEREMY MORELLI

My name is Jeremy Morelli. I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

1. I am over 18 years of age, of sound mind, and competent to make this declaration.

2. I was residing in the building at 2999 Turtle Creek Boulevard in Dallas, Texas, when the receiver in this case, Cort Thomas, took over its management.

3. Mr. Thomas required me to vacate immediately, that same day, and expressed to me that everything in the building would be sold within 30 days when I met him, and it was clear by his verbiage that he had no intention of managing the building as Tim Barton had been. Rather, what I took away from my conversation with him was that he intended to do a quick liquidation

4. Mr. Thomas also told me that I could only enter the premises to gather up my goods by making an appointment and being let in by himself or one of his colleagues. Mr. Barton was very helpful and assisted me load and unload the goods on that day, into storage where it is to this day.

Executed on March 21, 2025,

_____
Jeremy Morelli