IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

RECEIVER'S VERIFIED MOTION TO RATIFY
SETTLEMENT AGREEMENTS WITH ELITE JET SOLUTIONS, LLC AND
FIRST DEVELOPMENT COMPANY OF OHIO, LLC AND BRIEF IN SUPPORT

Cort Thomas, the court-appointed Receiver in this case, moves the Court for an order

(1) ratifying the Receiver's settlement agreement between Elite Jet Solutions, LLC ("Elite Jet")

and JMJAV, LLC ("JMJAV") and (2) the Receiver's settlement agreement between himself as

representative for Titan Investments, LLC ("Titan") and First Development Company of Ohio,

LLC ("FDCO"). In support of this Motion, the Receiver respectfully shows the Court as follows:

1

## I.      INTRODUCTION

This Motion reflects the Receiver's efforts to derive value from a dilapidated airplane and to recoup funds paid into escrow by a Receivership Entity prior to inception of the receivership. JMJAV is the registered owner of an airplane encumbered by a bank loan and a mechanic's lien, subject to a lawsuit, and in such dilapidated condition that making it airworthy, if that is even possible, would cost several hundred thousand dollars. The aircraft has been parked outside at Arlington Munipal Airport in Arlington, Texas since early 2019. Having not flown in over six years, the aircraft is deteriorating and utilizing precious space at the airport, which prompted Elite Jet, the beneficiary of the mechanic's lien, to seek resolution about the airplane's status. Working with the bank that holds a lien, the Receiver and Elite Jet have reached an agreement as set forth below.

Similarly, before the Receiver's appointment, Receivership Entity Titan contracted to buy land from FDCO and deposited $105,000 in an escrow account. Titan terminated the purchase contract shortly before the Receiver's appointment, and the escrowed funds were trapped in escrow due to the Receivership Order's stay. Although the purchase contract provided that the deposit was nonrefundable, FDCO agreed to split the escrowed funds with the Receivership Estate in exchange for the Receiver's agreement to settle all claims related to the funds and the property.

The Receiver accordingly seeks ratification of both settlement agreements.

## II.      BACKGROUND

### A.      The Receivership Order

1.      On October 18, 2022, this Court entered an Order Appointing Receiver [Dkt. 29] (the "Initial Receivership Order"), which was replaced on November 29, 2023, when the Court entered its *Order Appointing Receiver* [Dkt. 417] (the "Receivership Order"). Both the Initial

Receivership Order and the Receivership Order appointed the undersigned as the Receiver for the Receivership Entities[1] and directed the Receiver to take custody, control, and possession of all Receivership Property. *Receivership Order* ¶ 6(B). The Receivership Order also provides the Receiver with "all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Entities." *Id.* ¶ 3. Specifically, the Receivership Order permits the Receiver to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." *Id.* ¶ 6(J). Finally, the Receivership Order gives the Receiver the ability to, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." *Id*. ¶ 39.

2.      The Receivership Order includes a stay against "[a]ll civil litigation proceedings of any nature" involving the Receivership Entities and any of the Receivership Entities' past or present officers, directors, managers, agents, or partners sued in connection with actions taken in such capacity which stayed the State Court Lawsuit (as defined below). *Id.* ¶ 34.

**B.      The Airplane**

3.      JMJAV is the owner of a Learjet 55 airplane bearing serial number 60 and a registration number of N24NV (the "Plane"). In November 2019, JMJAV obtained a $600,000 loan from Third Coast Bank, collateralized against the Plane (the "Third Coast Loan"). Throughout 2019 JMJAV authorized Elite Jet to perform various repairs to the Plane. In May

---

[1] "Receivership Entities" was defined in the initial Receivership Order [Dkt. 29] as all entities "Timothy Barton directly or indirectly controls" but was later redefined as the entities listed in the current Receivership Order [Dkt. 417].

2020, however, Elite Jet filed a mechanic's lien against the Plane based on JMJAV's failure to pay for the repairs. In September 2021, Elite Jet revised the lien claiming a principal amount of $143,576.63 plus interest was owed (the "Elite Jet Lien").

4.	Disputing what was owed under the Elite Jet Lien, JMJAV filed suit against Elite Jet and one of its members, Raymond Weeks, in a case styled *JMJAV, LLC v. Elite Jet Solutions, LLC*, Cause No. 017-333443-22, pending in the 17th District Court for Tarrant County, Texas (the "State Court Lawsuit").

5.	Pursuant to the stay in the Initial Receivership Order, the State Court Lawsuit was stayed and has remained stayed under the Receivership Order. Payments to and collection of the Third Coast Loan, which had a remaining balance of approximately $350,000 when the Initial Receivership Order was issued, were similarly stayed by the Receivership Order.

6.	Not long after the Receiver was appointed, Elite Jet contacted the Receiver about the Elite Jet Lien. Almost simultaneously, the Receiver learned of the Third Coast Loan. Uncertain of the Plane's value, the Receiver inquired about marketing the Plane and was told that the value of the Plane was significantly less than what was owed based on the Elite Jet Lien and the Third Coast Loan. Further complicating the Plane's status, since JMJAV did not pay for the repairs performed by Elite Jet, the Plane is partially disassembled and thus not airworthy. And because the Plane is stored outside and not maintained, its condition is not improving.

7.	In early 2024, Elite Jet approached the Receiver about a possible resolution of the competing claims to the Plane and its continued storage. In this regard, the airport was pressuring Elite Jet to move the Plane, and Elite Jet needed the space occupied by the Plane to service other aircraft. Recognizing that Elite Jet's mechanic's lien had priority over the Third Coast Loan, the Receiver approached Third Coast about settlement options.  After several rounds of negotiations,

the Receiver reached a deal with Third Coast whereby it gave up its' right to the Plane for the right to file a claim in the eventual claim process.

8.    Contemporaneously with these negotiations, the Receiver obtained a Certified Aircraft Appraisal for the Plane which placed the value of the Plane, in its current condition, at $100,000 (the "Appraised Value"). A true and correct copy of the Certified Aircraft Appraisal is attached as **Exhibit A**.

9.    Based on the Appraised Value of the Plane and the competing amount of the Elite Jet Lien, the Receiver determined that turning the Plane over to Elite Jet to sell for parts in exchange for a $20,000 settlement payment was in the best interest of the Receivership Estate. Accordingly, in early 2025 Elite Jet and the Receiver executed a settlement agreement by which the Receiver agreed to turn the Plane over to Elite Jet to sell for salvage value in exchange for the Receiver relinquishing JMJAV's claim to the Plane and dismissing the State Court Lawsuit. To mitigate the possibility of a windfall, if Elite Jet is able to sell the Plane for more than the Elite Jet Lien plus its verified out-of-pocket expenses, Elite Jet will split any surplus equally with the Receiver. A true and correct copy of the Elite Jet Settlement Agreement is attached as **Exhibit B**.

**C.    The FDCO Escrow Funds**

10.    On or about February 10, 2022, Titan and FDCO entered into a contract to purchase 16.3 acres of real property in Grayson County, Texas (the "Property"). Pursuant to the contract, Titan deposited $105,000 into escrow, consisting of $55,000 in earnest money and an additional $50,000 in option payments (the "Escrow Funds"). The contract provides that these payments would be non-refundable. The closing date was slated for October 9, 2022. Titan,

however, did not close on the Property. And on October 19, 2022, the Initial Receivership Order was entered, which stayed disbursement of the Escrow Funds.

11.    Upon investigating the source of the Escrow Funds, the Receiver determined that some of the funds were investor funds or the proceeds of investor funds. The Receiver also recognized that litigating to recover all of the Escrow Funds would be expensive and recovery would be uncertain. The Receiver and FDCO determined that splitting the Escrow Funds would be in the best interest of both parties. Accordingly, the Receiver and FDCO entered into a settlement agreement to equally split the Escrow Funds. A true and correct copy of the FDCO Settlement Agreement is attached as **Exhibit C**.

### III.    ARGUMENT

#### A.    Legal Standard

District courts have "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)). Any action by the district court "supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse." *Id.* at 373 (*quoting SEC v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)).

"Ordinarily, parties are free to settle cases amongst themselves without court involvement." *SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-0298-N, 2015 WL 10818588, at *2 (N.D. Tex. Sept. 23, 2015) (citing *Ibarra v. Tex. Empl. Comm'n,* 823 F.2d 873, 878 (5th Cir. 1987)). However, "in the equity receivership context, parties have sought and courts have rendered decisions regarding whether to approve or reject settlement agreements based on courts' wide discretion in administering an equity receivership." *Id.* "Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to

6

receivership assets, provided that the settlements are 'fair and equitable and in the best interests of the estate.'" *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (quoting *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015)).

"In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership." *Id.* However, by this Motion the Receiver is not seeking to sell "any realty or interest therein." *See* 28 U.S.C. § 2001. The Receivership Entities do not possess any real property interest in the Plane or the Escrow Funds, and this Court has already determined that similar settlements by the Receiver do not implicate 28 U.S.C. § 2001 ("the Statute") [Dkts. 109, 163, 549]. Thus, rather than permission to sell any realty based on the Statute, the Receiver seeks the Court's ratification of his decision to resolve JMJAV's dispute with Elite Jet and Titan and FDCO's claims.

## B.     The Terms of the Settlement Agreements

To avoid the expense and uncertainty of litigation, particularly given the dubious outcome for JMJAV and Titan's claims if litigated, and mindful of the deteriorating condition of the Plane and the Receivership Estate's need for liquidity, the Receiver determined that settling with Elite Jet and FDCO is in the best interest of the Receivership.

### 1.     Elite Jet

The Settlement Agreement requires Elite Jet to pay the Receivership Estate $20,000 and release all claims against JMJAV in exchange for the Receiver's dismissal of the State Court Lawsuit with prejudice, and JMJAV's release of all claims against Elite Jet related to the Plane. Moreover, JMJAV is not required to pay storage fees for the nearly six years that the Plane has been parked at Elite Jet's facility. Elite Jet has represented to the Receiver that it intends to sell the Plane for scrap value to get the Plane moved and free up the space it is currently occupying. To prevent Elite Jet from obtaining a windfall, if Elite Jet is able to sell the Plane for more than

the Elite Jet Lien plus its verified out-of-pocket expenses related to selling the Plane, Elite Jet will split any surplus above those expenses equally with the Receiver.

### 2.    FDCO

The Settlement Agreement provides that the Receiver will direct the title company to release the Escrow Funds and split the funds equally between the Receivership Estate and FDCO in exchange for the mutual release of any claims related to the failed purchase contract for the Property or the Escrow Funds. This results in a net gain to the Receivership Estate of $52,500.

### C.    The Settlement Agreements are in the Best Interests of the Receivership Estate

The Receiver believes that both Settlement Agreements are fair and equitable and in the best interests of the Receivership Estate because they eliminate the costs of litigation the Receivership Estate would incur through proceeding with the Lawsuit or in asserting claims for the recovery of the amounts paid to the FDCO related to the Property.

### 1.    JMJAV's Claims Are Unlikely to Succeed, and the Settlement is Fair and Equitable

To prevail on the breach of contract, fraud, deceptive trade practices, breach of warranty, and conversion claims asserted in the State Court Lawsuit JMJAV would need to demonstrate that Elite Jet's conduct and charges were fraudulent or otherwise improper.  After thoroughly investigating and reviewing the pleadings and evidence regarding the case, the Receiver determined JMJAV would not likely be able to satisfy its evidentiary burden, and thus following the expense of trial, JMJAV would neither prevail nor recover. Even if JMJAV prevailed, the costs incident to pursuing the Lawsuit could render any recovery negligible. And further, even if the Receivership Estate regained control of the Plane, the Third Coast Loan would still minimize any chance of the Receivership Estate recovering any value for the Plane. Thus, the Receiver

8

determined that the proposed settlement was the best, and possibly only, path to recover any value for the Receivership Estate. Thus, a settlement of $20,000 is fair and equitable.

**2.      If Titan Could Prove Its Claims, Doing So Would Dissipate Any Potential Recovery**

Under the terms of the Property contract, the Escrow Funds were non-refundable, negating any potential causes of action outside fraudulent transfer claims the Receiver could allege. Even if the Receiver was able to prove these claims, the cost of pursuing them would render any recovery negligible and likely less than the $52,500 the Receiver was able to secure under the Settlement Agreement.  Accordingly, the Receiver determined that recovering half of the Escrow Funds, without the cost of a protracted fight, was in the best interest of the Receivership Estate, and recovering half of the funds, $52,500, is fair and equitable.

**IV.      <u>CONCLUSION AND REQUEST FOR RELIEF</u>**

The Receiver respectfully requests that the Court enter an order (1) ratifying the Elite Jet Settlement Agreement and lifting the litigation stay in the State Court Lawsuit for the limited purpose of dismissing the case; (2) ratifying the FDCO Settlement Agreement; and (3) further granting the Receiver such other and further relief to which he may be justly entitled.

April 25, 2025

Respectfully submitted,

**RECEIVER CORTNEY C. THOMAS**

*/s/ Cortney C. Thomas*
Cortney C. Thomas
  State Bar No. 24075153
  cort@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

## VERIFICATION

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

/s/ Cortney C. Thomas
Cortney C. Thomas

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on April 23, 2025, the Receiver conferred via email with counsel for Plaintiff and Defendant Barton regarding the relief requested above.  The SEC is unopposed to the relief requested herein. As of filing, counsel for Defendant Barton has not responded to the conference email.

/s/ Cortney C. Thomas
Cortney C. Thomas

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

10