**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff,* | § § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, *et al.,*** | § § § | |
| *Defendants,* | § § | |

**RECEIVER'S NOTICE OF BARTON'S CONTINUED**
**<u>INTERFERENCE AND VIOLATIONS OF RECEIVERSHIP ORDER</u>**

On May 14, 2025, the Receiver and his attorneys became aware of a Grievance that Barton—and possibly his attorneys—filed with the State Bar of Texas regarding briefs, motions and lawsuits filed on behalf of the Receiver.  This Grievance follows a pattern of Barton's harassment of the Receiver and his team and continued interference with their work.  Indeed, the Receiver fears that finding counsel, should that be necessary, willing to represent the Receivership in the face of both continued payment issues and threats of future grievances will be next to impossible.  While the Receiver's counsel will file a response[1] with the Texas State Bar, the Receiver also files this Notice to bring to the Court's attention Barton's continued interference, his violations of Paragraphs 32 and 53 of the Receivership Order, and the burden the Receivership Estate continues to face in dealing with such interference.

**A.      Barton's History of Harassment and Interference**

As the Court is aware, Barton's disrespect for the Court and its orders has been consistent, damaging, and costly.  Barton violated the Initial Receivership Order with impunity by filing a lis

---

[1] A response to the Grievance (defined below) must be filed with the State Bar no later than June 13, 2025.  Counsel is informed that such a Response will be necessary regardless of the outcome of a hearing, if one occurs.

1

pendens on a property the Court authorized the Receiver to sell; contacting the buyer of the Rock Creek Property to provide false information, and later, to harass the buyer's family; and withholding virtually all information and documents the Receivership Order compelled him to provide, including documents, access credentials and similar information. *See* Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing [Dkt. 133] ("Motion to Compel"). After extensive briefing, the Court found Barton in contempt and awarded coercive sanctions of $500 per day and compensatory sanctions of $19,250. *See* Dkt. 235 (the "Contempt Order"). The Receiver then had to file a Notice of Non-Compliance [Dkt. 243] because Barton refused to comply with the Contempt Order claiming that he did not have the funds to pay the sanctions. Even after the Court entered the Contempt Order, Barton continued his gamesmanship, requiring the Receiver to file an additional Notice of Non-Compliance [Dkt. 478] detailing Barton's refusal to comply with the Receivership Order.

Undeterred, Barton continued interfering with the Receiver's duties by contacting purchasers of Receivership Properties to ostensibly sow doubt about the Receiver's ability to close on these transactions, prompting the Receiver to file yet another Notice of Non-Compliance [Dkt. 530]. This prompted the Court during a hearing held on July 23, 2024, to read into the record portions of the Receivership Order prohibiting interference with the Receiver and specifically directed Barton to not contact buyers contracted to purchase Receivership Property and to cease interfering with the Receiver. Barton, still resolute in his desire to derail the Receivership, continued interfering with the Receiver's duties necessitating the Receiver filing a Motion to Show Cause [Dkt. 558]. While the Motion to Show Cause was eventually settled through an Agreed Order and Injunction [Dkt. 580], Barton has continued his public disdain for the Receiver and the Court through two websites he operates: bartonreceivership.net and defense-fund.com.

As the Receiver has demonstrated through previous filings, Barton has also persistently harassed the Receiver and his counsel, *see* Dkt. 616-1, and continues to do so.[2]

**B.      Barton's Grievance Filing at the State Bar of Texas**

Barton's harassment, however, has now escalated to a baseless grievance filed with the State Bar of Texas against the Receiver's lead counsel (the "Grievance").  A true and correct copy of the Grievance is included with the Notice, as **Exhibit A**.

As is evident from the subject of the Grievance, Barton's complaints focus solely on activities undertaken in good faith by the Receiver's counsel in support of the Receiver's appointment, focusing primarily on briefs and pleadings filed in this case or related ancillary cases,[3] including an Amicus Brief filed in the Fifth Circuit in opposition to Barton's appeal of the Receivership Order.[4]  A true and correct copy of the Amicus Brief is included with this Notice as **Exhibit B**.

As the Court will be aware from reviewing the Receiver's Briefing (defined below) the factual basis for the Grievance is wholly and completely meritless, and directly contrary to the many, many orders issued by this Court.  Indeed, with respect to the Amicus Brief, the allegations in the Grievance are also directly contrary to the Opinion issued by the Fifth Circuit in its recent order affirming the Receivership Order.[5]

---

[2] While Barton has sent the Receiver and his counsel many harassing emails, two of the latest are attached as **Exhibit C**.

[3] All of the complaints listed in the Grievance surround actions taken at the Receiver's request and on his behalf, including filing the amicus brief, filing lawsuits with certain allegations based upon "information and belief," ensuring the source of counsel fees is not Receivership Assets, filing fraudulent transfer lawsuits against certain family members, and filing fraudulent transfer lawsuits against certain lawyers.

[4] Capitalized terms used but not defined herein shall have the same meanings provided in the Receiver's Eleventh Quarterly Report [Dkt. 636].

[5] The Receiver requests that the Court take judicial notice of all pleadings, briefs or other materials filed in this case or any related ancillary case by the Receiver or his counsel, including any briefs filed by the Receiver in the Fifth Circuit, as well as the opinions or orders issued by the Fifth Circuit, which inform or relate to the meritless nature of the Grievance (collectively, "the Receiver's Briefing").

**C.**     **Barton (and His Counsel, if Counsel Assisted in Preparing the Grievance) Violated the Receivership Order**

As a baseless grievance, filed solely in connection with counsel's representation of the Receiver, the Grievance also violates the Receivership Order's prohibition against harassing the Receiver.  *See* Receivership Order, ¶ 32.  And, the Grievance violates the Receivership Order's express provision insulating the Receiver and his Retained Personnel from liability for any good faith performance of the Receivership Order.  *See* Receivership Order ¶ 53.

Further, as Barton is aware from the Receiver's Blessing Motion, and this Court's Order granting the "Blessing" Motion, the Receiver and his counsel are entitled to derivative judicial immunity.  *See* Dkt. 372 and Dkt. 419.  Indeed, as the Court's agent, a Receiver and his agents, employees, and Retained Professionals are entitled to qualified derivative judicial immunity for all activities undertaken in good faith performance of the Receiver's appointment.[6]  *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989); *Hall v. Dixon*, No. CIV A. H 09¬2611, 2010 WL 3909515, at *40 (S.D. Tex. Sept. 30, 2010) ("Derived judicial immunity protects from suit all who are 'integral parts of the judicial process.'") (*quoting Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)), *aff'd sub nom. Hall v. Smith*, 497 F. App'x 366 (5th Cir. 2012)).

As demonstrated by the Grievance and the plain terms of the Receivership Order, Barton has once again knowingly violated the Receivership Order by intentionally harassing the Receiver's counsel.  If the Court deems such relief appropriate—and in order to put an end to Barton's current harassment and to ensure it does not continue in a different form or fashion—the

---

[6] The Receivership Order incorporated this principle by providing that "[t]he Receiver and his agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel." Receivership Order, ¶ 53.

Receiver is willing to file a show cause motion, requesting a hearing at which Barton and his counsel must appear and show cause why each should not be held in contempt for this latest violation of the Receivership Order. Because of the nature of the violation, the Receiver believes Barton should ultimately be compelled to notify the State Bar, and enclose a copy of any relevant order, that his Grievance is baseless and was filed solely to harass the Receiver and the Receiver's counsel. And, in order to ensure the Receiver is able to find counsel willing to assist the Receivership in the future, the Receiver believes it would ultimately be appropriate for the Court to order Barton to obtain the Court's leave prior to filing any future or similar grievance or Complaint against the Receiver or his counsel.

Finally, Barton has once again compelled the Receiver and his team to dedicate scarce Receivership resources to responding to or otherwise deal with his continued interference and violations of the Receivership Order. If the Court is inclined to force Barton to cover the reasonable and necessary attorneys' fees incurred in preparing this Notice, preparing the Response to the Grievance, the Receiver will file a motion for the award of his fees.

## CONCLUSION

In spite of the Fifth Circuit's recent affirmation of the second Receivership Order, Barton continues to violate that Order and interfere with the Receiver's efforts. The Receiver requests that Barton voluntarily remedy such violations, and if he will not, that this Court ultimately order him to do so. The Receiver further requests such other and further relief to which he may show himself entitled.

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001
*Attorneys for Receiver Cortney C. Thomas*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

6

# EXHIBIT A

RECEIVED

OFFICE OF THE CHIEF DISCIPLINARY COUNSEL
STATE BAR OF TEXAS
GRIEVANCE FORM

APR 16 2025

CHIEF Disciplinary Counsel
State Bar of Texas
By: _____

THREE WAYS TO FILE:
1. ONLINE FILING AVAILABLE AT http://sbotservices.texasbar.com.
2. FAX FILING AVAILABLE AT (512) 427-4315
3. MAIL FILING TO P.O. BOX 13287, AUSTIN, TX 78711

## I.    GENERAL INFORMATION

**Before you fill out this paperwork, there may be a faster way to resolve the issue you are currently having with an attorney.**

If you are considering filing a grievance against a Texas attorney for any of the following reasons:

~    You are concerned about the progress of your case.
~    Communication with your attorney is difficult.
~    Your case is over or you have fired your attorney and you need documents from your file or your former attorney.

**You may want to consider contacting the Client-Attorney Assistance Program (CAAP) at 1-800-932-1900.**

CAAP was established by the State Bar of Texas to help people resolve these kinds of issues with attorneys quickly, without the filing of a formal grievance.

CAAP can resolve many problems without a grievance being filed by providing information, by suggesting various self-help options for dealing with the situation, or by contacting the attorney either by telephone or letter.

**I have ☐    I have not ☒ contacted the Client-Attorney Assistance Program.**

**If you prefer, you have the option to file your grievance online at http://sbotservices.texasbar.com.**

**In order for us to comply with our deadlines, additional information/documentation that you would like to include as part of your grievance submission must be received in this office by mail or fax within (10) days after submission of your grievance. Please limit your additional information to 25 pages. Information, including audio, video or image files, submitted on a USB thumb drive or flash drive must not exceed 25MB. Information received after the 10 day deadline will be returned and not considered, as well as information submitted on CDs, DVDs, cassette tapes or other unsupported media. Thank you for your cooperation in this matter.**

070824                                                                                                  1

**NOTE: All questions on the grievance form must be answered completely.** If a question doesn't apply to your situation, you must state "not applicable" or "N/A." If you don't know the answer to a question, state that you don't know. **Do not leave any section blank.** Grievance forms that are not complete with required information will be automatically rejected and returned.

II.    **INFORMATION ABOUT YOU -- PLEASE KEEP CURRENT**

1. TDCJ/SID # ___NA___        Name: ___Timothy Lynch Barton___

   Immigration # ___NA___

   Address: ___1846 E Rosemeade Pkwy, #232, Carrollton, TX 75007, USA___

   City: ___Carrollton___    State: ___Texas___    Zip Code: ___75007___

2. Employer: ___SELF___

   Employer's Address: ___NA___

3. Telephone numbers: Residence: ___2146738714___    Work: ___2146738714___
   Cell: ___2146738714___

4. Email: ___timothy.barton@proton.me___

5. Drivers License # ___16981398___        Date of Birth ___08/17/1963___

6. Name, address, and telephone number of person who can always reach you in the event that the Office of Chief Disciplinary Counsel needs to locate you. *Please note that confidentiality is not waived and this individual does not have the authority to contact the Office of Chief Disciplinary Counsel in order to obtain information about this grievance.

   Name ___Warren Norred___        Address ___515 East Border Street___

   ___Arlington, Texas 76010___        Telephone ___817.704.3984___

7. Do you understand and write in the English language? ___Yes___
   If no, what is your primary language? ___NA___
   Who helped you prepare this form? ___Myself___
   Will they be available to translate future correspondence during this process? ___NA___

8. Are you a Judge?  Yes ☐    No ☒

070824                                                                                    2

If yes, provide Court, County, City, State: _____ NA _____

_____

9. Are you an attorney? Yes ☐   No ☒
   If "yes," are you currently in litigation with the attorney named in this grievance?  NA
   Yes ☐          No ☐

## III.  INFORMATION ABOUT ATTORNEY

Note:  **Grievances are not accepted against law firms**. You must specifically name the attorney against whom you are complaining.  A separate grievance form must be completed for each attorney against whom you are complaining.

1. Attorney name: _____ Charlene C. Koonce _____  Address: __ 8111 Preston Road, Suite 300 __

   City: __ Dallas _____  State:__ Texas ____  Zip Code:__ 75225 _____

2. Telephone number: Work __(214) 327-5000__ Home _____ Other _____

3. Have you or a member of your family filed a grievance about this attorney previously?
   Yes ☐          No ☒ If "yes", please state its approximate date and outcome. ___ NA ____

   _____

   Have you or a member of your family ever filed an appeal with the Board of Disciplinary Appeals about this attorney?

   Yes ☐          No ☒ If "yes," please state its approximate date and outcome.

   _____

4. Please check one of the following:

   ☐ This attorney was **hired** to represent me.

   ☐ This attorney was **appointed** to represent me.

   ☒ This attorney was hired to represent **someone else**.

   If this attorney represents **someone else**, please check one of the following:

   ☐ I am a family member or a ward in a guardianship proceeding that is the subject of the grievance;

   ☐ I am a family member of a decedent in a probate matter that is the subject of the grievance;

   ☐ I am a trustee of a trust or an executor of an estate if the matter that is the subject of the grievance relates to the trust or estate;

070824                                                                                    3

☐ I am the judge, prosecuting attorney, defense attorney, court staff member, or juror in the legal matter that is the subject of the grievance;

☐ I am a trustee in a bankruptcy that is the subject of the grievance;

☒ I have an interest in, or connection with, the attorney or the legal matter or the facts alleged in the grievance based on the following facts:

I am the controlling party in a matter that the attorneys have been appointed as a receiver

over my estate.

If you hired the attorney, tell us how you met the attorney. Specifically, please provide details about how you came to know and hire this attorney._____

_____NA_____

_____

_____

Please give the date the attorney was hired or appointed._____NA_____

Please state what the attorney was hired or appointed to do._____

_____NA_____

_____

_____

_____

5. What was your fee arrangement with the attorney?_____NA_____

How much did you pay the attorney?_____NA_____

**If you signed a contract and have a copy, please attach.**
**If you have copies of checks and/or receipts, please attach.**
**Do not send originals.**

6. Are you currently represented by an attorney? Yes ☒        No ☐
   If yes, please provide information about your current attorney_____

   Mr. Warren Norred, Norred Law PLLC, 515 East Border Street Arlington, Texas 76010

   _____

7. Do you claim the attorney has an impairment, such as depression or a substance use disorder? If yes, please provide specifics (your **personal** observations of the attorney such

070824                                                                                          4

as slurred speech, odor of alcohol, ingestion of alcohol or drugs in your presence etc., including the date you observed this, the time of day, and location).

NA

8. Did the attorney ever make any statements or admissions to you or in your presence that would indicate that the attorney may be experiencing an impairment, such as depression or a substance use disorder? If so, please provide details.

NA

## IV. INFORMATION ABOUT YOUR GRIEVANCE

1. Where did the activity you are complaining about occur?

County: __Dallas__          City: __Dallas__

2. If your grievance is about a lawsuit, answer the following, if known:

a. Name of court _____Northern District Court_____

b. Title of the suit _____SEC vs Barton et al: 3:22-cv-02118X_____

c. Case number and date suit was filed _____3:22-cv-02118X Dated September 23, 2022_____

d. If you are not a party to this suit, what is your connection with it? Explain briefly.

_____Party_____

**If you have copies of court documents, please attach.**

3. Explain in detail why you think this attorney has done something improper or has failed to do something which should have been done. Attach additional sheets of paper if necessary.

**Supporting documents, such as copies of a retainer agreement, proof of payment, correspondence between you and your attorney, the case name and number if a specific case is involved, and copies of papers filed in connection with the case, may be useful to our investigation. Do not send originals, as they will not be returned. Additionally, please do not use staples, post-it notes, or binding. Please limit your supporting documentation to 25 pages. Information, including audio, video or image files, submitted on a USB thumb drive or flash drive must not exceed 25MB. Information received after the 10 day deadline will be returned and not considered, as well as information submitted on CDs, DVDs, cassette tapes or other unsupported media.**

**Include the names, addresses, and telephone number of all persons who know something about your grievance.**

070824                                                                                                          5

**Please be advised that a copy of your grievance will be forwarded to the attorney named in your grievance. To protect your privacy and the privacy of others, please redact personal identifying information (i.e., social security number, date of birth) from any document you provide in support of your grievance and avoid submitting medical records or protected health information belonging to third-parties.** <u>Please be advised that in the event that you do provide records that contain your own personal identifying information or protected health information, you are authorizing us to share this information with the attorney named in your grievance.</u> Be advised that documents that contain unredacted third party personal identifying information or that individual's protected health information will be returned and not considered. <u>By executing the grievance below, you authorize the CDC to disclose your personal identifying information and protected health information as necessary to comply with the law, or as necessary to carry out the function and duties of the CDC.</u>

Content of the grievances and supporting documents attached at the end of this form.

070824                                                                                             6

**V.  HOW DID YOU LEARN ABOUT THE STATE BAR OF TEXAS' ATTORNEY GRIEVANCE PROCESS?**

☐    **Yellow Pages**        ☐    **CAAP**

☒    **Internet**        ☐    **Attorney**

☐    **Other**        ☐    **Website**


**VI.  ATTORNEY-CLIENT PRIVILEGE WAIVER**

I hereby expressly waive any attorney-client privilege as to the attorney, the subject of this Grievance, and authorize such attorney to reveal any information in the professional relationship to the Office of Chief Disciplinary Counsel of the State Bar of Texas. I understand that it may be necessary to act promptly to preserve any legal rights I may have, and that commencement of a civil action may be required to preserve those rights.

Additionally, I understand that the Office of Chief Disciplinary Counsel may exercise its discretion and refer this Grievance to the Client-Attorney Assistance Program (CAAP) of the State Bar of Texas for assistance in resolving a subject matter of this Grievance. In that regard, I hereby acknowledge my understanding that such discretionary referral does not constitute the commencement of a civil action and that the State Bar of Texas will not commence any civil action on my part. I acknowledge that it is my responsibility to seek and obtain any necessary legal advice with respect to this matter. I also understand that any information I provide to the State Bar of Texas may be used to assist me and will remain confidential for purposes of resolving the issue(s) described above.

I understand that the Office of Chief Disciplinary Counsel maintains as confidential the processing of Grievances.

I hereby swear and affirm that I am the person named in Section II, Question 1 of this form (the Complainant) and that the information provided in this Grievance is true and correct to the best of my knowledge.

Signature: _____    Date: _____April 14, 2025_____

Printed Name: ___Timothy Lynch Barton_____

To ensure **PROMPT ATTENTION, THE GRIEVANCE SHOULD BE MAILED OR FAXED TO:**

**THE OFFICE OF CHIEF DISCIPLINARY COUNSEL**
**P.O. Box 13287**
**Austin, TX 78711**
**Fax: (512) 427-4315**

070824

7

Timothy Barton

3926 VISTA WOODS DRIVE
CARROLLTON TX 75007
+1 (214) 914-3811
Timothy.barton@proton.me
April 14, 2025


THE OFFICE OF CHIEF DISCIPLINARY COUNSEL
Texas Bar Association
P.O. Box 13287
Austin, TX 78711
Fax: (512) 427-4315

**Re: Ethical Complaint Against Attorney Charlene C Koonce, State Bar No. 11672850**


Dear Sir/Ma'am,


I am submitting this formal complaint against Ms. Charlene C. Koonce, State Bar No. 11672850, for various ethical violations in her role as Attorney to the Receiver appointed by the Northern District Court of Texas on request of SEC in SEC vs Barton et al Case No. 3:22-CV-02118X. The actions described below demonstrate a pattern of professional misconduct, malicious intent, and abuse of authority, causing substantial harm to myself, my associates, and my family.

**Complainant Information**

Full Name: Timothy Barton
Address: 1846 E Rosemeade Pkwy, #232, Carrollton,
TX 75007, USAPhone Number: (214) 914-3811
Email Address: timothy.barton@proton.me


**Attorney Information**

| | |
|---|---|
| Full Name of Attorney: | Charlene C. Koonce |
| Bar Number: | 11672850 |
| Law Firm Name: | Brown Fox PLLC |
| Address: | 8111 Preston Road, Suite 300 |
| City, State, Zip Code: | Dallas, Texas 75225 |
| Phone Number: | T: (214) 327-5000 |
| | F: (214) 327-5001 |
| Email Address: | charlene@brownfoxlaw.com |

Page 1 of 29

## Details of the Complaint

### 1.    Baseless Legal Filings:

The honorable Court is hereby notified of the malicious and unethical actions perpetrated by Ms. Charlene C. Koonce in her capacity as Attorney to the Receiver, in coordination with the SEC. In her legal filings before Judge Starr, and in the Amicus Curiae Brief filed in the Fifth Circuit Court of Appeals in Louisiana, Ms. Koonce made allegations completely devoid of foundation or evidence. These filings were designed to defame and discredit me before the appellate court. A copy of the relevant portions of the Amicus Brief is attached for your review as **Exhibit A –** *Excerpts of the Amicus Curiae Brief.* As per Rule 1.01 of Texas Rules of Disciplinary Procedures titled as "Competent and Diligent Representation" and Rule 3.01 titled as "Meritorious Claims and Contentions", Ms. Koonce's conduct have violated this rule by potentially engaging in actions that demonstrate a lack of diligence which she did in an overzealous manner without providing adequate legal grounding for evidence on her filings and accusations in the Amicus Curiae brief.

### 2.    Improper Legal Basis:

Ms. Koonce has routinely initiated legal actions based solely on "information and belief" rather than relying on actual statutory authority as required by SEC regulations and established legal procedures. This practice undermines the legitimacy of the claims she has advanced against me. Attached as **Exhibit B** are excerpts from various lawsuits demonstrating this pattern of conduct. As per Rule 3.04 titled as "Fairness in Adjudicatory Proceedings" Ms. Koonce unfairly influenced the proceedings and made slanderous and unsupported claims stating "information and belief" of the unknown, violates the requirement to conduct litigation fairly and avoid improper practices.

### 3.    Harassment of Supporters:

Ms. Koonce has unjustifiably targeted individuals who have sought to support me, either financially or by providing shelter. This has further exacerbated my inability to defend myself and maintain basic personal security. **Exhibit C** describes her malicious pursuit of the mere funding to my defense counsel. **Exhibit D** describes a language from the receiver about the activities of defense-fund.com [non for profit] supporting me, being under their monitoring. They have threatened me with potential actions against me, being under monitoring. Further not stopping the harassment process and spending more than the funded amount on litigating to reveal how much was received for my support in the defense fund. This being a clear example of harassment and going to all possible extents that Charlene Koonce can imagine of.

### 4.    Unwarranted Attacks on Family Members:

Ms. Koonce has engaged in malicious legal actions against members of my family, including my ex-wife. Notably, she has made an unwarranted demand for a payment of $781,074.89 from JMJ Development LLC, a company entirely unrelated to the SEC matter. Attached as **Exhibit E** are excerpts highlighting this improper demand. Additionally, these actions extend to targeting Ms. Victoria Barton [my daughter] and Mr. Max Barton [my son] for their

consultant fees. Ms. Victoria Barton's security clearance has been compromised due to these actions. Ms. Koonce was fully aware that Victoria's familiarity with the administration was critical to her current role, making this act particularly damaging. As per Rule 4.04 titled as "Respect for Rights of Third Persons", Ms. Koonce being the counsel for the receiver has not spared anybody who thought of my support and did not spare my family, by suing them vide Case 3:24-cv-00612-X filed on March 13, 2024. This case along with another was filed in the very court of the Judge Starr and immediately stayed to devoid any actions from the defense. When in fact, at the time of filing said cases, the District Court had a stay in place. Which Charlene Koonce violated at the time of filing this case as well as the Case against my children and myself, by breaching the stay, which was attempted to be corrected by after the fact asking the Judge lifting the stay, that she in fact violated and once said stay was lifter, immediately requested as stay be in place because Charlene Koonce became aware of an appeal by me as the reason to stay the cases again, when in fact Charlene Koonce filed an Amicus Brief against the very appeal that she attempted the court believe she was unaware of. While recently in the recent filing Dkt No 15, Case No. 3:24-cv-00612-X the receiver and his lawyer now admitted that Ms. Martine Barton had nothing to do with it and it is simply a continuation of the malicious prosecution and frivolous lawsuit.

## 5.      Frivolous Lawsuits:

Ms. Koonce has filed cases against distinguished lawyers with decades of exemplary legal experience, intentionally targeting them with lawsuits that she immediately stayed, while knowing that such targeting is purely frivolous and Ms. Koonce accepting that she had no proof of such allegations against them, which she told to her co-workers Kimberly O' Rourke and Time Wells in an email. This pattern of malicious case filing is evident and warrants thorough review by the board. By staying these lawsuits after filing, it appears to be a calculated strategy to ensure that no legal counsel remains available to support the defense. The very reason that Koonce gave as to the timing of lawsuits was statues of limitations was running out which is additional malicious prosecution because she knew full well, when she filed the case, it was an attempt to stop the clock on statues of limitation of which she would be required to prosecute the case, when in fact she knew she was going to stay the case which leaves one to belief the case was not filed to be prosecuted but filed to discredit the family members and the lawyers that were supporting me. All while disregarding the requirement to serve anybody, in both the cases, no party has been served and no attempt was made such over last 9 months, which by Texas Law makes these cases null and void when request was made to dismiss these cases, or more recently to open these cases to be processed, she objected. Clearly this was all to punish the defendant.

This tactic not only undermines the defense's efforts but also damages the reputation of any lawyers willing to provide support. Filing lawsuits against legal professionals, only to halt them immediately, serves as a clear and deliberate attempt to jeopardize the defense and demonstrates malicious intent. As per Rule 4.04 titled as "Respect for Rights of Third Persons", Ms. Koonce being the counsel for the receiver has not spared anybody who through of my support and lawyers, by suing them vide Case 3:24-cv-00512-X filed on March 1, 2024.

**6.      Improper Seizure of Personal Property and Records:**

Without following proper legal procedures, Ms. Koonce has seized my personal and business records from both my residence and office. In a remarkable seizure, Koonce has ordered the taking of my personal legal work product as well as all of my lawyers working files on the SEC and the DOJ case which were agreed to be off limits and said files as we speak are being confidential legal files and are being reviewed by Koonce's team. Thereby blocking Barton's due process to defend himself by taking all legal working files of the very case, she has been employed to work on. All requests for legal files and personal business files return have been denied.

Additionally, seized my house, leaving me homeless and not even given the Burny Madoff or Stanford treatment, further depriving me of my rights without due process. The attempt on sale of the residence had been there first priority clearly depicting a direct harm to the defense. Seizing of all files along with attorney client privilege documents is a clear indication of the malicious intent that the attorney Koonce has imposed through the receiver in this case.

Ms. Koonce has refused to return my seized records, claiming an inability to locate them. This has resulted in storage companies charging exorbitant fees for holding these materials. Due to her failure to return these records, I am unable to comply with court orders, which has resulted in the imposition of sanctions against me.

**7.      Violation of Privilege Protocol:**

Ms. Koonce's as in her role of counsel to the receivership in SEC vs Barton et al case has repeatedly violated the privilege protocol, refusing to the court orders and not providing the client-attorney files paramount for my effective defense. This deprivation beyond any financial assistance is a clear example of the malicious intent that Ms. Koonce has adopted in my case. As per Rule Rule 1.05 titled as "Confidentiality of Information" Ms. Koonce disclosed and misused confidential information acquired through the receivership control of all my documents, which is a breach of the confidentiality and privilege obligations to third parties specially the government institutions associated with the case, as per my belief.

**8.**      Considering these serious ethical violations, I respectfully request an immediate investigation into Ms. Koonce's actions, as well as the actions of those associated with her. I believe that her conduct is in clear violation of professional standards and warrants the attention of this bar association.

Thank you so much for reading and beginning your investigation.

### Certification and Signature

I certify that the information provided in this complaint is true and correct to the best of my knowledge.

Sincerely,

Sign: _____

April 14, 2025                                                        Timothy Barton

Page 4 of 29

# EXHIBIT A

No. 23-11237 Consolidated with No. 24-10004

# In the United States Court of Appeals
# for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff — Appellee,*

v.

TIMOTHY BARTON,

*Defendant — Appellant.*

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-cv-2118-X

## RECEIVER'S PARTIALLY UNOPPOSED MOTION
## FOR LEAVE TO FILE AMICUS CURIAE BRIEF

Brown Fox PLLC
Charlene C. Koonce
State Bar No. 11672850
Timothy B. Wells
State Bar No. 24131941
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com
tim@brownfoxlaw.com

*Counsel for Receiver Cortney C. Thomas*

## IDENTITY AND INTEREST OF MOVANT

In these interlocutory appeals, Cortney C. Thomas, the Court-appointed Receiver ("Receiver"), seeks leave to file as *Amicus Curiae* the attached proposed brief, and in support, respectfully shows the Court as follows:

Although the SEC initiated the lawsuit from which these consolidated appeals arise, four of the interlocutory orders on appeal were issued in response to motions filed solely by the Court-appointed Receiver. *See* Doc. 1, Appeal No. 23-11237, [appealing Dkt. 427], and Doc. 1, Appeal No. 24-10004 [appealing Dkt. 436, 437 and 438] (collectively the "Administrative Orders"). The SEC did not participate in the briefing on any of the motions that resulted in these orders, nor did it argue the motions to the District Court. Nonetheless, in related appeals, this Court previously denied the Receiver's motion for designation as an Appellee or real party in interest (although it granted leave for the Receiver to file a motion to dismiss one appeal and amicus briefs in others). *See* Appeal No. 22-11132, Doc. 40.

Further, Appeal No. 23-11237 also challenges the District Court's decision to enter a new Order Appointing Receiver, [Dkt. 417], by which it appointed the same Receiver previously appointed in an order vacated by this Court. *See SEC v. Barton*, 79 F.4th 573, 579-580 (5th Cir. 2023) (hereafter, "*Barton*")). The evidence submitted in support of the Order Appointing Receiver challenged in Appeal No. 23-11237 included a lengthy report filed by the Receiver and his testimony at the

– 14 –

hearing at which the District Court considered SEC's Motion for Appointment of Receiver. Appellant has challenged the reliability, credibility, and sufficiency of that evidence, and the Receiver is uniquely positioned to respond to those challenges.

Appellant also requests that this Court reverse the Receivership Order with immediate effect. Again, the Receiver alone possesses knowledge of the impact of such relief, if this Court were inclined to reverse or vacate the Receivership Order without a stay as occurred in the prior appeal.

Finally, but perhaps more importantly, no interlocutory appellate jurisdiction exists for appeal of the Administrative Orders. *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015); *SEC v. Am. Principals Holdings, Inc.*, 817 F.2d 1349 (9th Cir. 1987). As the Eleventh Circuit observed, the difference between 28 U.S.C. §§ 1292(a)(2) and 1292(a)(1) reveals the different scope of jurisdiction for appeals of injunctions versus receivership orders:

> "That provision [28 U.S.C. § 1292(a)(1)] more broadly confers jurisdiction over orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." . . . It thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

–15–

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022) (internal quotation omitted).  The Supreme Court warned against the result of Barton's piecemeal and jurisdiction-less appeals, a warning that is "especially salient in the receivership context," given the "fluid" and "evolving scope" of receiverships: "[p]ermitting piecemeal, prejudgment appeals ... undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Complete Bus. Sols. Group, Inc.*, 44 F.4th at 1332 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009)).

The Receiver rather than the SEC can speak to the impact of Barton's serial, jurisdiction-less appeals, and the acute diminishment of the Receivership Estate during their pendency.

## AUTHORITY

The Federal Rules of Appellate Procedure contemplate the filing of amicus curiae briefs where the participation of the amicus is "desirable and [where] the matters asserted are relevant to the disposition of the case. FED. R. APP. P. 29(a)(3)(B).  For the reasons set forth above, the Receiver's amicus brief is desirable and relevant.

–16–

## PRAYER

For the foregoing reasons, the Receiver respectfully requests that the Court grant this motion and issue an order granting leave for the Receiver to file the attached Amicus Curiae Brief in Support of Appellee Securities and Exchange Commission's Brief and in opposition to Appellant's Brief.

Respectfully submitted,

By: /s/ Charlene C. Koonce
    Charlene C. Koonce
      State Bar No. 11672850
    Timothy B. Wells
      State Bar No. 24131941
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    Phone: (214) 327-5000
    Fax: (214) 327-5001
    Email: charlene@brownfoxlaw.com
    Email: tim@brownfoxlaw.com

*Counsel For Receiver Cortney C. Thomas*

–17–

# EXCERPTS FROM DKT NO 56 / 56-1 CASE # 22-11237

*Case No: 22-11237 Dkt No: 56-1 Page: 16 Para: 2*

Appellant also requests that this Court reverse the Receivership Order with immediate effect. Again, the Receiver alone possesses knowledge of the impact of such relief, if this Court were inclined to reverse or vacate the Receivership Order without a stay as occurred in the prior appeal.

*Case No: 22-11237 Dkt No: 56-1 Page: 17 Para: 2*

The Receiver rather than the SEC can speak to the impact of Barton's serial, jurisdiction-less appeals, and the acute diminishment of the Receivership Estate during their pendency.

*Case No: 22-11237 Dkt No: 56-2 Page: 19 Para: 1*

Amicus Curiae Cortney C. Thomas is the court-appointed Receiver ("Receiver") in this case, who serves as the District Court's agent. These consolidated appeals include challenges to orders issued in response to motions filed by the Receiver rather than either party to these appeals.

*Case No: 22-11237 Dkt No: 56-2 Page: 19 Para: 2*

the absence of supporting record references or misleading record references throughout his brief, truth has limited relevance in many of Barton's arguments. The Receiver is uniquely qualified to respond to Barton's false assertions, including the sufficiency and reliability of evidence related to the entities and properties included

*Case No: 22-11237 Dkt No: 56-2 Page: 20 Para: 2*

This Amicus Curiae Brief was prepared entirely by the undersigned counsel and the Receiver. The undersigned certifies that: (i) no party's counsel authored this brief in whole or in part; (ii) no party or party's counsel contributed money that was

*Case No: 22-11237 Dkt No: 56-2 Page: 27 Para: 2*

On the other hand, "risk of asset flight," a potential basis for an injunction, has never been the sole justification for a receivership.[15]   Receiverships *are* appropriate to protect and preserve real estate, if management is required, value is

*Case No: 22-11237 Dkt No: 56-2 Page: 28 Para: 2*

whether a receivership is necessary or even the primary purpose in creating a receivership. Receiverships instead protect value, actively, in whatever manner and by whatever means is appropriate for the assets at issue.[17] *See* **ROA.14800-14801**; **14813-14815** (Receivership Order, ¶ 6, ¶¶ 37-46, compelling Receiver to actively

*Case No: 22-11237 Dkt No: 56-2 Page: 30 Para: 2*

As the Receiver and his accountant, a CPA with a background in forensic investigations, both testified, a complete forensic accounting was prohibitively expensive at this juncture. **ROA.15337; 15354; 15297-15298.** The analysis instead

*Case No: 22-11237 Dkt No: 56-2 Page: 33 Para: 2*

Likewise, this Court should not allow Barton to achieve exclusion of entities into which Investor Funds were traced based on his contention that the Receiver has been unable so far to sufficiently unravel *all* comingled transactions. A comprehensive analysis was not required. *See Barton*, pp. 580-581. Further,

*Case No: 22-11237 Dkt No: 56-2 Page: 34 Para: 2*

**10272; 14797**. Collectively, all properties in the receivership have less equity than the amount owed just to the Investors, a metric that ignores the additional $10M owed to judgment creditors, dwindling equity, and costs of administering the estate. **ROA.10315-10316; 14795; Dkt. 528 at 6**.

*Case No: 22-11237 Dkt No: 56-2 Page: 35 Para: 1*

the SEC's claims. **ROA.10242. The District Court did not include entities that were merely "parent" or other "pass through" entities that did not receive Investor Funds; it included entities that Barton used in conducting the fraud which is the subject of the litigation and which "received or benefited from" assets traceable to Barton's fraud. ROA.14778.**

*Case No: 22-11237 Dkt No: 56-2 Page: 36 Para: 1*

assertion. **ROA.15333-15338. Instead, the "received or benefited" analysis rested on evidence that specific Investor Funds traced to JMJ were traced into other entities.**

*Case No: 22-11237 Dkt No: 56-2 Page: 37 Para: 1*

Court's conclusion that the D4 Entities secured HUD loans by relying on assets purchased with Investor Funds. **ROA.14782. Without the HUD loans the properties owned by those entities would not exist. ROA.14782.** Indeed, Barton initially

*Case No: 22-11237 Dkt No: 56-2 Page: 39 Para: 1*

custody") (internal quotation and alteration omitted)). Thus, **the Receiver was not analyzing financial records and preparing reports in aid of the SEC's case or to "strenuously advocate" for his reappointment.** *Brief,* 10. His financial analysis and

*Case No: 22-11237 Dkt No: 56-2 Page: 39 Para: 2*

**Second, the Receiver's experience as a seasoned litigator has been far more important than real estate development experience.** Instead of nearly completed

*Case No: 22-11237 Dkt No: 56-2 Page: 42 Para: 1*

responses, replies and reports have been prepared by the Receiver since March 31, 2023, all without payment. That work, **like all work since Barton began filing his jurisdiction-less appeal of orders approving sales, was performed with knowledge that payment may *never* be made.** Because of the amount of time necessary to perform the work, however, the Receiver has had to turn away other full-fee work.

*Case No: 22-11237 Dkt No: 56-2 Page: 49 Para: 3*

creditors, and because Barton has refused to comply with the District Court's orders regarding identifying and recovering assets, as well as tracing, **[ROA.3119]**, **the District Court did not err in refusing his request to release funds for a defense in this** or any case. *See SEC v. Dobbins*, No. CIV.3:04-CV-0605-H, 2004 WL 957715, at

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CORT THOMAS, as the Receiver for Carnegie Development, LLC, et al., | § § § § | |
| Plaintiff, | § § § | |
| v. | § § § | CIVIL ACTION NO. 3:24-cv-512 |
| KHUDABUKSH K. WALJI, LAW OFFICE OF K. WALJI, ESQ., P.C., LAW OFFICE OF JUSTIN GUENLEY PLLC, JUSTIN M. GUENLEY, JOYCE W. LINDAUER, JOYCE W. LINDAUER ATTORNEY, PLLC, RANDY P. MARX, THE MARX FIRM, LLC, WILLIAM V. MCMURRY, Individually and d/b/a MCMURRY LEGAL, PLLC, MCMURRY LAW, PLLC, MCMURRY & MCMURRY, LLP, STEVEN C. METZGER, METZGER LAW PLLC, and METZGER & MCDONALD, PLLC, | § § § § § § § § § § § § § § | |
| Defendants. | | |

## ORIGINAL COMPLAINT

Cort Thomas, in his capacity as the court-appointed Receiver, files this Original Complaint against Khudabuksh K. Walji, Law Office of K. Walji, Esq., P.C., Justin M. Guenley, Law Office of Justin Guenley PLLC, Joyce W. Lindauer, Joyce W. Lindauer Attorney, PLLC, Randy P. Marx, The Marx Firm, LLC, William V. McMurry individually and d/b/a McMurry Legal, PLLC, McMurray Law, PLLC, McMurry & McMurry, LLP, Steven C. Metzger, Metzger Law PLLC, and Metzger & McDonald, PLLC (collectively, "Defendants"). In support, the Receiver respectfully shows the Court the following:

ORIGINAL COMPLAINT                                                                                          Page 1

**Case 3:24-cv-00512-X Document 1 Page 9 of 36 Para 33**
*Upon information and belief, with the assistance of one or more of the Defendants, Barton formed and controlled the Wall Entities. Barton promised that the Investor's Funds, together with funds from the Wall Entities themselves, would be used to purchase specific parcels of land at specific prices set forth in the offering materials. Barton promised he would then develop that land into residential lots, and Wall would build homes on the lots and sell them.*

**Case 3:24-cv-00512-X Document 1 Page 9 of 36 Para 36**
*Upon information and belief, with the assistance of one or more of the Defendants, Barton, Wall, and Fu, however, inflated the land purchase prices in the offering materials, which enabled them to raise more money from Investors; overstated the value of the assets securing the investments; and concealed that the Wall Entities were not actually contributing any funds.*

**Case 3:24-cv-00512-X Document 1 Page 10 of 36 Para 41**
*Upon information and belief, one or more of the Defendants assisted Barton in creating and organizing many of the Receivership Entities, which were used for these purposes.*

**Case 3:24-cv-00512-X Document 1 Page 11 of 36 Para 46**
*Upon information and belief, most if not all of these lawsuits were intended to hinder, delay or defraud creditors.*

**Case 3:24-cv-00512-X Document 1 Page 12 of 36 Para 51**
*Upon information and belief, and except for Goldmark Hospitality, LLC which operated the Amerigold Suites (generally at a loss) none of the Receivership Entities generated any net income for payment of even ordinary operating expenses.*

**Case 3:24-cv-00512-X Document 1 Page 13 of 36 Para 60**
*Upon information and belief, Walji is a subsequent transferee of any Transfer made first to Law Office of K. Walji, P.C. to or Law Offices of Justin Guenley, PLLC.*

**Case 3:24-cv-00512-X Document 1 Page 15 of 36 Para 71**
*Upon information and belief, Marx began working for Barton no later than July 2020.*

**Case 3:24-cv-00512-X Document 1 Page 15 of 36 Para 72**
*Upon information and belief, McMurry began working for Barton no later than the summer of 2019.*

**Case 3:24-cv-00512-X Document 1 Page 16 of 36 Para 81**
*Upon information and belief, Metzger began representing Barton and various Receivership Entities no later than May 2019.*

**Case 3:24-cv-00512-X Document 1 Page 16 of 36 Para 82**
*On information and belief, Metzger was retained to assist McMurry, Walji, and Lindauer (discussed below) in defending or prosecuting various lawsuits. In at least one instance, he also represented Barton individually (in contempt proceedings) in connection with an involuntary bankruptcy proceeding filed by the Investors.*

**Case 3:24-cv-00512-X Document 1 Page 18 of 36 Para 90**
*Upon information and belief, based on Defendants' advice, the Receivership Entities intentionally engaged in litigation, much of which was baseless, to avoid paying their creditors or otherwise to delay, hinder, or defraud their creditors.*

**Case 3:24-cv-00512-X Document 1 Page 20 of 36 Para 106**
*Upon information and belief, not later than December of 2020, Barton, the Receivership Entities, and Defendants learned of the SEC's investigation.*

**Case 3:24-cv-00512-X Document 1 Page 21 of 36 Para 111**
*Upon information and belief, Marx and Lindauer were also aware of the SEC's investigation, as well as the information about which the SEC inquired, and Barton's responses.*

**Case 3:24-cv-00512-X Document 1 Page 26 of 36 Para 133**
*Upon information and belief, however, no Defendant advised any of the Wall Entities, Carnegie, or any other Receivership Entity that any was engaged in securities fraud, or otherwise exposed to liability based on, among other things, the manner in which each operated, and used Investor Funds.*

**Case 3:24-cv-00512-X Document 1 Page 33 of 36 Para 167**
*Upon information and belief, each Defendant represented Barton individually in various lawsuits, while also representing various Receivership Entities despite the existence of a direct conflict between Barton's interests and the Receivership Entities' interests.*

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, et al. | § § § | |
| Defendants. | § § | |

### RECEIVER'S VERIFIED RESPONSE TO DEFENDANT BARTON'S MOTION FOR PROTECTIVE ORDER *AND* MOTION TO COMPEL

Respectfully submitted,

Charlene C. Koonce
 State Bar No. 11672850
 charlene@brownfoxlaw.com
Timothy B. Wells
 State Bar No. 24131941
 tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000

*Attorneys for Receiver Cortney C. Thomas*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.    The Receiver's Obligation to Trace the Receivership Entities' Funds. .................. 3

        B.    Barton Has Used The Receivership Entities' Corporate Forms as Shams
              and Used Third-Parties to Circumvent the Receivership Order ........................... 4

        C.    Barton Has Refused to Provide Information and Access to Information
              Necessary for the Receiver to Locate and Trace Receivership Assets ................... 5

        D.    Barton Has Used Investor Funds for His Attorneys' Fees, For Other
              Personal Uses, and Has Refused to Disclose the Location of Receivership
              Assets. ................................................................................................................ 6

        E.    Barton Has Received a Robust Defense ............................................................... 8

III.    ARGUMENT & AUTHORITIES ...................................................................... 9

        A.    Legal Standard Governing Court's Authority to Administer a Receivership
              and Authorize the Receiver's Request Through the Receivership Order ............. 10

        B.    The Receiver's Request for Information Regarding the Source of
              Payments or Security Provided to Barton's Attorneys Falls Within the
              Scope of the Receivership Order ....................................................................... 11

IV.     CONCLUSION ................................................................................................. 14

-i-

Cort Thomas, the Court-appointed Receiver, responds to Defendant Barton's Motion for Protective Order [Dkt. 587] (the "Motion"), *and* seeks an order compelling Barton to produce documents evidencing payments or security received from or for the benefit of Barton and the due diligence, if any, conducted regarding the source of any fees paid on Barton's behalf (the "Requests"), and in support respectfully shows the Court as follows:

## I.    INTRODUCTION

Barton's collateral attack on the Receivership Order as posed in the Motion paints the Receiver's Requests as a threat to Barton's ability to fund his defense, and indeed, a potential crisis with virtually infinite reach, premised on the scope of a receiver's authority. But the canvas on which Barton paints his arguments is heavily writ with Barton's blatant contempt[1] and refusal to disclose information, including the location of Receivership Entity assets[2] from which Barton may be funding the millions in fees he has surely incurred to date. Moreover, the outline for the entire landscape—Barton's contention that he is unable to fund his defense based on the existence of the Receivership Order and the Receiver's authority to ask for documents and information demonstrating the source of funds used to pay the defense—falters, as most arguments Barton makes, on the facts.

First, stark facts highlight the importance and reasonableness of the Requests: (a) before the Receiver was appointed, Barton's use of Investor Funds purportedly in the possession and control of Receivership Entities to pay Barton's attorneys; (b) potential money laundering transactions, dense commingling, and other practices that conceal the uses to which Barton put Investor Funds; and (c) Barton's refusal to disclose the location of Receivership Assets (including

---

[1] *See* Dkt. 133, 530.

[2] *See* Dkt. 133, 199, 478, 558.

-1-

# EXHIBIT D

| From | Cort Thomas <cort@brownfoxlaw.com> |
|------|-----|
| To | timothy.barton<timothy.barton@proton.me> |
| CC | Michael Edney<MEdney@huntonak.com>, Charlene Koonce<charlene@brownfoxlaw.com>, Warren Norred<wnorred@norredlaw.com>, Kyle Coker<kyle@farmercoker.com>, tim<tim@brownfoxlaw.com> |
| Date | Saturday, January 11th, 2025 at 8:55 PM |

Tim,

The emails you continue to send are unproductive and generally a drain of limited receivership resources in responding to them. I had been hopeful that after the two-hour sit-down with you, Kyle Coker, and Tim Wells, the general pattern of communication would improve, and we would move forward with far more collaboration and cooperation than the last twenty-six months. Unfortunately, within days of that meeting, you apparently created or assisted in the creation on content at defense-fund.com and https:// bartonreceivership.net/, which wrongly impugned and defamed me and my team and very likely violated both the Receivership Order and our Agreed Injunction. Given the continued billable time that I have had to devote to dealing with these distractions, I have decided that going forward the most efficient (and cost-effective for the Receivership) means of communicating going forward will be communications with your lawyers (Mike Edney, Kyle Coker, and Warren Norred) and not you individually. Thus, except for emails notifying me that you will be coming to pick up mail, my team and I will once again only respond to emails coming from your attorneys moving forward.

In answer to some of your incorrect assumptions asserted below, I retained accountants, not a bookkeeper. As has been stated multiple times in multiple filings, your refusal to comply with the disclosure requirements in the initial Receivership Order meant that, among other things, (1) I generally did not have access to the Receivership Entities' most recent tax returns, (2) did not have access to the Receivership Entities' accounting records, and (3) did not know which entities did or did not purportedly need to have tax returns filed. Because of this wrongful silence and the non-filing of tax returns for at least two prior years, my accountants were forced to prepare hundreds of tax returns at a huge cost to the receivership. This work was completely separate and apart from their tracing work and commingling analysis.

I never said that a junior lawyer is putting the bank statements together. As an initial matter, again, because of the lack of cooperation in violation of the Receivership Order, I did not have ready access to all bank accounts of all receivership entities at the outset of the Receivership and did not know where to get the statements. Instead, I had to send multiple letters to every bank used by the Receivership Entities. Chase

Page 24 of 29

.

Bank in particular has required multiple requests over multiple years just to get everything the Receivership has requested, and the productions we have received are neither organized nor clearly labeled. I have a paralegal (the same one who has been involved since the outset of the case) who has been pulling the statements you requested when she is able on top of her other billable work. She is nearing completion. If you would like us to send you what we have gathered to date, please have Mike, Kyle, or Warren reach out to request an interim production. Otherwise, we will send to your attorneys as soon as the work is complete. My understanding is that the bank statements she is still tracking down had nothing to do with the limited tracing analysis performed in 2023.

In terms of your "personal files," I don't know if you are referring to your email or to the paper documents from the Turtle Creek Office. If the former, as you know, I did not have access to the Receivership Entities' email accounts for multiple months after my appointment. As detailed in prior filings, I only received access to these email accounts after you were forced to turnover access to them. In other words, you or your team have had access to those files from the outset of the Receivership. In terms of paper documents, I most recently offered to Kyle that if y'all want to have a vendor copy or scan any of the documents housed at the Receivership storage unit, that is fine. We will just need to set up times for your team and a member of my team to meet there. We will then need to mark whatever boxes/files your team wants pulled, and then your approved vendor can come out and pull (and later return) those documents. Again, that should be coordinated through your lawyers.

As is probably obvious at this point, I am not otherwise responding to the personal attacks direct at me or the references to my family. Your continued assertions that Charlene is a puppet master are both insulting and patronizing as to me, but more importantly are completely unfair to Charlene. She has been tasked with the unenviable duty of zealously advocating for the Receivership as her client. My personal belief is that she has done a phenomenal job executing on these duties, all while not being paid for work performed over a year ago and on top of that billing at drastically discounted rate compared to her other matters. Again, I am optimistic that communications once again only flowing through lawyers will decrease these personal attacks going forward.

I truly hope that you have a fantastic weekend, and I will continue to reiterate that I bear no personal animosity or ill will towards you or your family. Going forward and until I am discharged as Receiver, I will continue to do my very best to fulfill the duties prescribed in the Receivership Order, as well as my personal moral and ethical commitments, to preserve the Receivership Estate.

Best,

Cort

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CORT THOMAS, as the Receiver for Carnegie Development, LLC, et al, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. _____ |
| HAOQIANG FU (A/K/A MICHAEL FU), PIC CONSULTANT, LLC, SILVERLAND FINANCE LIMITED, STEPHEN T. WALL, CARNEGIE HOMES, LLC, SASKYA BEDOYA ZUNIGA, TIMOTHY L. BARTON, VICTORIA L. BARTON, V STRATEGIES, LLC, MAXIMILIEN E. BARTON, MARTINE G. BARTON, SADA CUMBER, INDIVIDUALLY AND DBA PLUMBROOK GLOBAL CONSULTING COMPANY, MURUGAN VENKATACHALAM, INDIVIDUALLY AND DBA BROWARD ACCOUNTANTS, | § § § § § § § § § § § § § § § | |
| Defendants. | § | |

**ORIGINAL COMPLAINT**

Cort Thomas, in his capacity as the court-appointed Receiver, files this Original Complaint against Haoqiang Fu (a/k/a Michael Fu, "Fu"), PIC Consultant, LLC ("PIC Consultant"), Silverland Finance Limited ("Silverland Finance Ltd."), Stephen T. Wall ("Wall"), Carnegie Homes, LLC ("Carnegie Homes"), Saskya Bedoya Zuniga ("Bedoya"), Timothy L. Barton ("Barton"), Victoria L. Barton, V Strategies, LLC, ("V Strategies") Maximilien E. Barton ("Max Barton"), Martine G. Barton, Sada Cumber ("Cumber"), individually, and dba Plumbrook Global Consulting Company, and Murugan Venkatachalam ("Venkat"), individually and dba Broward

ORIGINAL COMPLAINT                                                                                          Page 1

and the specific entity that transferred funds to Bedoya-Zuniga is attached as **Exhibit F**.

### v.    **Victoria Barton**

64.    Victoria Barton is Tim Barton's adult daughter. Ms. Barton was neither employed by nor contracted to any Receivership Entity but she officed in the same building as all other Receivership Entities. Despite the absence of any value provided by Victoria Barton, Receivership Entities purchased a car for Ms. Barton, paid her car insurance, and funded her lifestyle.

65.    Between November 5, 2018 and June 16, 2022, Transfers in an amount not less than $29,519.00 made from various Receivership Entities were made to or for the benefit of Victoria Barton. A true and correct summary reflecting the dates, amounts, manner of transfer, and the specific entity that transferred funds to Vicotria Barton is attached as **Exhibit G**.

66.    In addition or in the alternative, Transfers made to V Strategies, Citi Card, and Comenity were also made for the benefit of Victoria Barton.

67.    In the further alternative, and upon information and belief, Victoria Barton is a subsequent transferee of all Transfers made to V Strategies.

### vi.    **Max Barton**

68.    Upon information and belief, for at least some period of time, Max Barton purported to manage Receivership Entity Goldmark Hospitality, LLC and its property, the Amerigold Suites. He was not successful in his management efforts, however, and at some point, his father Tim resumed control of the entity and property.

69.    Max Barton also purported to assist Barton in development efforts for other properties (again, with Investor Funds or the proceeds of those Funds), or upon information and belief, attempted to develop or otherwise acquire other properties (still with Investor Funds or their proceeds) at the direction and for the benefit of Barton.

70.     Regardless of any services Max Barton purported to provide to Goldmark Hospitality, LLC, he received Transfers from many other Receivership Entities, again, from Investor Funds or their proceeds.   None of the Receivership Entities that made Transfers to or for the benefit of Max Barton received reasonably equivalent value, if any, in exchange.

71.     Between October 15, 2019 and September 23, 2022, Transfers in an amount not less than $62,872.70 made from various Receivership Entities were made to or for the benefit of Max Barton.  A true and correct summary reflecting the dates, amounts, manner of transfer, and the specific entity that transferred funds to Max Barton is attached as **Exhibit H**.

72.     The services, if any, provided by Max Barton to any Receivership Entity were not the reasonably equivalent value of the Transfers he received, nor were services provided or Transfers made in arms-length, commercially reasonable transactions.  Further, services, if any, provided by Max Barton, were not provided to the Receivership Entit(ies) that made the Transfers to him.

vii.     **Martine Barton**

73.     Martine Barton is Barton's ex-wife.  She provided no services or value to any Receivership Entity, yet received substantial payments, again from Investor Funds.

74.     Between March 20, 2017 and December 13, 2018, Transfers in an amount not less than $781,074.89 made from various Receivership Entities were made to American Express for the benefit of Martine Barton.  A true and correct summary reflecting the dates, amounts, manner of transfer, and the specific entity that transferred funds to Martine Barton is attached as **Exhibit I**.

viii.     **Cumber**

75.     Upon information and belief, in response to a lawsuit filed by Investors and Fu

---

**ORIGINAL COMPLAINT**                                                                                    **Page 15**

**G**

US POSTAGE AND FEES PAID
GROUND ADVANTAGE IMI
Apr 14 2025
Mailed from ZIP 75007
12 OZ GROUND ADVANTAGE RATE
ZONE 3
10587018
Commercial



## USPS GROUND

**TIM BARTON
3926 VISTA WOODS
CARROLLTON TX 75007**

RECEIVED

APR 16 2025

CHIEF Disciplinary Counsel
State Bar of Texas

By: _____

SHIP
TO:
**state bar of texas
chief disciplinary counsel's office
PO BOX 13287
AUSTIN TX 78711 – 3287**

---

### USPS TRACKING #



**9400 1118 9956 0172 1358 97**



SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited
RRD RF2 0920

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

May 14, 2025

**Sent via Email**: **charlene@brownfoxlaw.com**

Charlene Cantrell Koonce
8111 Preston Rd Ste 300
Dallas, TX 75225-6329

Re: 202502660 - Timothy Barton - Charlene Cantrell Koonce

Dear Charlene Cantrell Koonce:

The Office of Chief Disciplinary Counsel has received the above-referenced Grievance, a copy of which is enclosed with this notice. This office has examined the Grievance and determined that the information provided alleges Professional Misconduct and the person filing the grievance satisfies the requirements of Rule 1.06G of the Texas Rules of Disciplinary Procedure, as amended on September 1, 2023. Pursuant to the Texas Rules of Disciplinary Procedure, this matter has been classified as a Complaint.

**Preparing Your Response:**

If you will be represented by an attorney for this Complaint, please notify this office immediately. We will not communicate with anyone other than you about this case without first receiving a letter of representation.

The response should address specifically each allegation contained in the Complaint. You should provide all information and documentation necessary for this office to make a determination of Just Cause as defined in the Texas Rules of Disciplinary Procedure.

If you or your attorney have questions or concerns regarding the nature and scope of the investigation, do not hesitate to contact this office. The undersigned Investigator is available to explain the process and answer most questions about the Complaint.

**Response Deadline:**

Within **thirty (30) days** of receipt of this notice you must respond, in writing, to the Complaint or you must file an appeal of the classification of the Complaint to the Board of Disciplinary Appeals.

**Right to Appeal:**

**4201 Spring Valley Road, Suite 400, Dallas, Texas 75244**
**Telephone: (972) 383-2900   Fax: (972) 383-2978**

Charlene Cantrell Koonce
May 14, 2025
Page | 2

Pursuant to Rule 2.10B, within **thirty (30) days** of receipt of this notice, you may appeal the determination of the Chief Disciplinary Counsel that this grievance constitutes a Complaint to the Board of Disciplinary Appeals. A copy of BODA's Notice of Appeal Form with instructions for filing an appeal is enclosed. Unless BODA reverses the determination and dismisses the grievance as an Inquiry, you will be required to respond, in writing, to the Complaint within **thirty (30) days** of receipt of BODA's notice of affirmance.

**Delivery Instructions:**

Please deliver an electronic copy of your response and supporting documentation by email to **dalcdcresponses@texasbar.com**. If your response and/or supporting documents are voluminous (over 25MB), please consider sending the attachments separately over multiple email transmissions or, in the alternative, you may download them to a flash drive and deliver it to this office. Please be aware that sending a flash drive through USPS may damage the flash drive and render it unreadable.

**Pursuant to Rule 2.10 of the Texas Rules of Disciplinary Procedure, you are required to provide a copy of your response directly to the Complainant.**

**Failure to Respond:**

Pursuant to Rules 8.01(b) and 8.04(a)(8) of the Texas Disciplinary Rules of Professional Conduct, failure or refusal to timely furnish a response or other information requested by the Chief Disciplinary Counsel, without timely asserting legal grounds to do so, constitutes Professional Misconduct.

**Confidentiality Notice:**

The Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure, except that the pendency, subject matter, and status of a Disciplinary Proceeding may be disclosed by the Chief Disciplinary Counsel if the Respondent has waived confidentiality or the Disciplinary Proceeding is based upon conviction of a serious crime. The Chief Disciplinary Counsel may provide appropriate information, including the response, to law enforcement agencies, under Rule 6.08 of the Texas Rules of Disciplinary Procedure.

You will be notified in writing of further proceedings in this matter.

Sincerely,

*/s/ Jason Kyle McCaslin*

Jason Kyle McCaslin
Investigator

JKM/mkm

Enclosure(s):

Grievance (Copy of Complaint)
Copy of Complainant Notice
R Notice of Appeal



# THE BOARD *of* DISCIPLINARY APPEALS
## APPOINTED BY THE SUPREME COURT *of* TEXAS
www.txboda.org                                   512-427-1578

# BODA APPEAL FORM: ENGLISH

SBOT #: <u>202502660</u>, UPGRADE DATE: 05/14/2025

| | | |
|---|---|---|
| Timothy Barton | vs | Charlene Cantrell Koonce |
| 1846 East Rosemeade Parkway, #232 | | 11672850 |
| Carrollton, TX 75007 | | 8111 Preston Rd Ste 300 |
| | | Dallas, TX 75225-6329 |
| timothy.barton@proton.me | | charlene@brownfoxlaw.com |

**I WANT TO APPEAL THE CLASSIFICATION OF THIS GRIEVANCE TO THE BOARD OF DISCIPLINARY APPEALS ("BODA").**

_____        _____
*Signature*                                                        *Date*

☐ I agree to receive future correspondence by email

☐ I have a new mailing or email address (print here):

_____

BODA is an appellate body and will independently review the grievance and all supporting documentation that was considered when the classification decision was made. It is **not** a part of the State Bar of Texas or the Office of Chief Disciplinary Counsel.

**Return** this form to BODA within 30 days of the date you received the classification decision. By returning this form, you are asking BODA to review the classification as either an "inquiry" (grievance was dismissed) or a "complaint" (grievance was upgraded for investigation and further proceedings).

**DO NOT SEND ANY ADDITIONAL INFORMATION TO BODA**. BODA will obtain a complete copy of the grievance file from the Office of the Chief Disciplinary Counsel.

We will notify both parties in writing when this form has been received and the appeal docketed.

_____

**RETURN THIS FORM TO:**

**Mail:** Board of Disciplinary Appeals            **Email:** appeal@txboda.org
          P.O. Box 12426
          Austin TX 78711                          **Fax:** 512-427-4366

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

May 14, 2025

**Sent via Email:  timothy.barton@proton.me**

Timothy Barton
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007

Re: 202502660 - Timothy Barton - Charlene Cantrell Koonce

Dear Timothy Barton:

Pursuant to Rule 2.10 of the Texas Rules of Disciplinary Procedure, the Office of Chief Disciplinary Counsel of the State Bar of Texas has reviewed the above-referenced grievance and determined that the information provided alleges Professional Misconduct or a Disability, or both. Additionally, we have determined that the person filing the grievance satisfies the requirements of Rule 1.06G of the Texas Rules of Disciplinary Procedure.

The lawyer ("Respondent") will be provided a copy of your Complaint and directed to deliver a response to the Office of the Chief Disciplinary Counsel, and to you, within **thirty (30) days** of receiving notice of the Complaint. **Please be advised that pursuant to Rule 2.10B of the Texas Rules of Disciplinary Procedure, within thirty (30) days of receipt of notice of the Complaint, Respondent may appeal the classification determination to the Board of Disciplinary Appeals. If Respondent files an appeal, you will receive written notification from the Board of Disciplinary Appeals. In such event, the deadline for Respondent to deliver a response to the Complaint will be stayed pending a decision on the appeal.**

Should the Board of Disciplinary Appeals reverse the classification determination, your Complaint will be dismissed as an Inquiry. If the Board of Disciplinary Appeals affirms the classification determination, Respondent will be required to deliver a response to the Complaint to the Office of Chief Disciplinary Counsel, and to you, within **thirty (30) days** from receipt of the Notice of Affirmance from the Board of Disciplinary Appeals.

After receipt of Respondent's written response, the Office of Chief Disciplinary Counsel shall investigate the Complaint to determine whether there is Just Cause to believe that the lawyer has committed Professional Misconduct or suffers from a Disability.  During this time, it is important that you keep us informed of any changes to your address, telephone number, or employment, and that you cooperate fully with our investigation. You will be notified in writing of further proceedings in this matter.

**4201 Spring Valley Road, Suite 400, Dallas, Texas 75244**
**Telephone: (972) 383-2900   Fax: (972) 383-2978**

Please know that the Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure.

Sincerely,

*/s/ Jason Kyle McCaslin*

Jason Kyle McCaslin
Investigator

JKM/mkm

cc: Charlene Cantrell Koonce

# EXHIBIT B

**No. 23-11237**
**Consolidated with**
**No. 24-10004**

# In the United States Court of Appeals

# for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff – Appellee,*

v.

TIMOTHY BARTON,

*Defendant – Appellant.*

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-CV-2118-X

### RECEIVER'S AMICUS BRIEF

BROWN FOX PLLC
Charlene C. Koonce
State Bar No. 11672850
Timothy B. Wells
State Bar No. 24131941
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com
tim@brownfoxlaw.com

*Counsel for Receiver Cortney C. Thomas*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel of record certifies that

the following listed persons and entities as described in the fourth sentence of Rule

28.2.1 have an interest in the outcome of this case. These representations are made

in order that the judges of this Court may evaluate possible disqualification or

recusal.

1. 126 Villita LLC, receivership entity

2. 2999TC Acquisitions, LLC, receivership entity

3. 2999TC JMJ CMGR, LLC (Delaware), receivership entity

4. 3820 Illinois, LLC, interested party

5. Adam and Reese LLP, counsel for interested party Bank of America, N.A.

6. Alexander, Daniel Rasoul, counsel for interested party Dhiraj Ramolia

7. AVG West, LLC, receivership entity

8. Badgley, Serena, interested party

9. Bank of America, N.A., interested party

10. Barbero, Megan, counsel for plaintiff-appellee Securities and Exchange Commission

11. Barton, Maximilien, interested party

12. Barton, Timothy, defendant-appellant

13. Baum, Nathan B., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, LLC, Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

–i–

14. BEE2019, LLC, receivership entity

15. Bernstein, Keefe M., counsel for plaintiff-appellee Securities and Exchange Commission

16. BM318 LLC, receivership entity

17. Broadview Holdings Trust, receivership entity

18. Brown Fox PLLC, counsel for receiver Cortney C. Thomas

19. Buchholz, Robert W., counsel for interested party Southern Star Capital LLC

20. Cain & Skarnulis PLLC, counsel for interested party Serena Badgley

21. Capps, Aaron T., counsel for interested party Circle H Contractors LP

22. Capps and Associates PLLC, counsel for interested party Circle H Contractors LP

23. Carnegie Development, LLC, defendant and receivership entity

24. Carrillo, C. Alan, counsel for receiver Cortney C. Thomas

25. Chandler & Shavin PLLC, counsel for interested party Dhiraj Ramolia

26. Chandler Law PC, counsel for interested party Dhiraj Ramolia

27. Chandler, Corinna P., counsel for interested party Dhiraj Ramolia

28. Chapple, Ryan E., counsel for interested party Serena Badgley

29. Cheves, P. Kyle, counsel for interested party McCormick 101, LLC

30. Circle H Contractors LP, interested party

31. Conley, Michael A., counsel for plaintiff-appellee Securities and Exchange Commission

–ii–

32.   Cooke, Chris, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

33.   Cox, Eric Angela Nealy, counsel for interested party HNGH Turtle Creek

34.   Curran, Thomas J., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

35.   D4DS LLC, receivership entity

36.   D4FR LLC, receivership entity

37.   D4IN, LLC (Texas), receivership entity

38.   D4KL LLC, receivership entity

39.   D4MC, LLC (Texas), receivership entity

40.   D4OP, LLC, receivership entity

41.   DeYoung, Kyle M., counsel for interested party HNGH Turtle Creek, LLC

42.   DJD Land Partners, LLC, relief defendant and receivership entity

43.   Edney, Michael J., counsel for defendant-appellant Timothy Barton

44.   Enoch Investments LLC, receivership entity

45.   Etri, James E., counsel for plaintiff-appellee Securities and Exchange Commission

46.   FHC Acquisition LLC, receivership entity

47.   Freda, Dominick V., counsel for plaintiff-appellee Securities and Exchange Commission

48.   First Development Company of Ohio LLC, interested party

–iii–

49.  Fu, Haoqiang, defendant

50.  Fullington, Ian E., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

51.  Gillespie Villas LLC, receivership entity

52.  Gitlin, Jonathan Alexander, counsel for interested party First Development Company of Ohio LLC

53.  Goldmark Hospitality LLC, receivership entity

54.  Green, Gordon Welborne, counsel for interested party Truist Bank

55.  Hale, Harlin D., counsel for ADR Provider

56.  Heiskell, Michael P., counsel for defendant Stephen T. Wall

57.  Hicks, Jr., George W., counsel for counsel for interested party HNGH Turtle Creek, LLC

58.  Hill, Ezekiel L., counsel for plaintiff-appellee Securities and Exchange Commission

59.  HNGH Turtle Creek, LLC, interested party

60.  Holland & Knight LLP, counsel for defendant-appellant Timothy Barton

61.  HR Sterling, LLC, receivership entity

62.  Hunter, Renee M., counsel for intervenor United States of America.

63.  Hunton Andrews Kurth LLP, counsel for defendant-appellant Timothy Barton

64.  <u>Investors:</u>

    1.  Hong Guo
    2.  Yijing Wu

3. Nanjing Sun
4. Kangying Mao
5. Huaizhen Gao
6. Wanwan Li
7. Yue Xu
8. Lan Ji
9. Wei Xing
10. Wenjun Wang
11. Jie Zou
12. Jun Wang
13. Lin Li
14. Yunding Kang
15. Shuping Yang
16. ChangHua Lin
17. Pei Guan
18. Yulan Chen
19. Hairuo Yang
20. Xuegeng Gong
21. Haiming Xu
22. Aiguo Luo
23. Yi Tang
24. Xuezhen Cai
25. Jingqiu Tang
26. Qu Chen
27. Yue Zhang
28. Sun Zhang
29. Xiangdong Zhu
30. Yaohua Lin
31. Jiancheng Chen
32. Min Deng
33. Liying Mao
34. Zhongguo Feng
35. Liying Yang
36. Dan Wu
37. Ying Ding
38. Hanjiang Fu
39. Yuan Yuan
40. Hanjiang Fu
41. Hua Cai
42. Ruiling Xiao

43. Chenchen Jiang
44. Pengfei Dong
45. Xiaodong Hao
46. Xiaoquan Dai
47. Jialin Hu
48. Heng Zhang
49. Fang Ding
50. Lin Gao
51. Fei Gao
52. Qin Chu
53. Gang Xu
54. Ling Guan
55. Chao Xu
56. Weipeng He
57. Jianjin Li
58. Zhenhua Li
59. Qiao Qin
60. Ying Zhang
61. Jiaxiang Lu
62. Weijia Kong
63. Li Jang
64. Li wen Bian
65. Jun Li
66. Youhong Zhu
67. Rongping Wu
68. Yadan Liu
69. Rufeng Ding
70. Lin Zhou
71. Jinghui Ma
72. Yun Sun
73. Guoqin Zhou
74. Qiuying Li
75. Bingjie Xu
76. Shufang Luo
77. Tianqing Song
78. Ping Chen
79. Di Tang
80. Jin Wang
81. Fuqing Chen
82. Kui Wang

83. Weisi Wang
84. Yi Qu
85. Xiaomin Fan
86. Cunxiang Ji
87. Jinzhe Wu
88. Ruinian Wu
89. Wen Wu
90. Ou Jiang
91. Feng Yan
92. Mai Ye
93. Wenjuan Yin
94. Kai Tian
95. Ling Zhong
96. Sicheng Zhan
97. Yan Zhang
98. Ying Zhou
99. Jun Zeng
100. Peng Guo

65. JMJ Acquisitions LLC, receivership entity

66. JMJ Development LLC, receivership entity

67. JMJ Hospitality, LLC, receivership entity

68. JMJ VC Management, LLC, receivership entity

69. JMJAV, LLC, receivership entity

70. JMJD4, LLC (Delaware), receivership entity

71. JMR100 LLC, receivership entity

72. Johnson Vaughn & Heiskell, counsel for defendant Stephen T. Wall

73. Johnston Clem Gifford PLLC, counsel for interested party Truist Bank

74. Kane Russell Coleman & Logan PC, counsel for interested party HNGH Turtle Creek, LLC

75.     Kane, John J., counsel for interested party HNGH Turtle Creek, LLC

76.     Kearns, David T., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

77.     Kirkland & Ellis LLP, counsel for interested party HNGH Turtle Creek, LLC

78.     Kleinsasser, Matthias, counsel for interested party Vertical Street Ventures, LLC

79.     Koonce, Charlene C., counsel for receiver Cortney C. Thomas

80.     Lajolla Construction Management LLC, receivership entity

81.     Law Office of Robert W. Buchholz PC, counsel for interested party Southern Star Capital LLC

82.     LC Aledo TX, LLC, receivership entity

83.     LDG001, LLC, relief defendant and receivership entity

84.     Lesser, Joshua A., counsel for interested party Bank of America, N.A.

85.     Light, Barbara, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

86.     Louisiana National Bank, interested party

87.     Lynco Ventures, LLC, receivership entity

88.     Mansion Apartment Homes at Marine Creek, LLC, receivership entity

89.     Marine Creek SP, LLC, receivership entity

90.     McCormick 101, LLC, interested party

91.  MFO Venus Development, LLC, interested party

92.  MO 2999TC, LLC, receivership entity

93.  Moeller, Evan A., counsel for interested party Bank of America, N.A.

94.  Moss & Associates, LLC, counsel for interested party MFO Venus Development LLC

95.  Munsch Hardt Kopf & Harr, P.C., counsel for interested party The Dixon Water Foundation

96.  MXBA LLC, interested party

97.  Nealy Cox, Erin, counsel for interested party HNGH Turtle Creek, LLC

98.  Norman, Brian K., counsel for interested party Southern Properties Capital, Ltd.

99.  Norris, Jeffrey Blair, counsel for interested party Southern Properties Capital, Ltd.

100.  Northstar PM, LLC (Texas), receivership entity

101.  Norton Rose Fulbright US LLP, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

102.  O'Connell, Sean B., counsel for defendant-appellant Timothy Barton

103.  Orchard Farms Village LLC, receivership entity

104.  Palisades-TC, LLC, interested party

105.  Patton, Jonathan R., counsel for interested party Palisades-TC, LLC

106.  Peckar & Abramson, counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

–ix–

107. Perry, Deborah M., counsel for interested party The Dixon Water Foundation

108. Pioneer Finance, Inc., interested party

109. Polsinelli PC, counsel for interested party McCormick 101, LLC

110. Ramer, Samuel, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

111. Ramolia, Dhiraj, interested party

112. Ridgeview Addition, LLC (Texas), receivership entity

113. Roossien, Jr., Dennis L., counsel for interested party The Dixon Water Foundation

114. Rose, Shirley B., counsel for interested party Texas Republic Bank, N.A.

115. Scheef & Stone, L.L.P., counsel for interested party interested party Texas Republic Bank, N.A.

116. Schurr, Patrick J., counsel for interested party interested party Texas Republic Bank, N.A.

117. Scott, John B., counsel for interested party Pioneer Finance, Inc.

118. Scott & Scott, PLLC, counsel for interested party Pioneer Finance, Inc.

119. Seagoville Farms, LLC, receivership entity

120. Securities and Exchange Commission, plaintiff-appellee

121. SF Rock Creek, LLC, receivership entity

122. Shamoun & Norman, LLP, counsel for interested party Southern Properties Capital, Ltd.

–x–

123. Shamoun, C. Gregory, counsel for interested party Southern Properties Capital, Ltd.

124. Shavin, Eliot Dana, counsel for interested party Dhiraj Ramolia

125. Sosland, Martin Allen, counsel for interested party Louisiana National Bank

126. Southern Properties Capital, Ltd., interested party

127. Southern Star Capital LLC, interested party

128. Spector & Cox, PLLC, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

129. Spector, Howard Marc, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

130. Tamamoi, LLC, interested party

131. TC Hall, LLC, receivership entity

132. Texas Republic Bank, N.A., interested party

133. The Dixon Water Foundation, interested party

134. Thomas, Cortney C., receiver

135. Tillotson Johnson & Patton, counsel for interested party Palisades-TC, LLC

136. Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, receivership entity

137. TRTX Properties LLC, interested party

138. Truist Bank, interested party

139. United States of America, intervenor

–xi–

140.  Venus59 LLC, receivership entity

141.  Vertical Street Ventures, LLC, interested party

142.  Villita Development, LLC, receivership entity

143.  Villita Towers LLC, receivership entity

144.  Wall, Stephen T., defendant

145.  Wall007, LLC, defendant and receivership entity

146.  Wall009, LLC, defendant and receivership entity

147.  Wall010, LLC, defendant and receivership entity

148.  Wall011, LLC, defendant and receivership entity

149.  Wall012, LLC, defendant and receivership entity

150.  Wall016, LLC, defendant and receivership entity

151.  Wall017, LLC, defendant and receivership entity

152.  Wall018, LLC, defendant and receivership entity

153.  Wall019, LLC, defendant and receivership entity

154.  Waller, Greg, counsel for Hunton Andrews Kurth LLP, counsel to defendant-appellant Timothy Barton

155.  Wells, Tim, counsel for receiver Cortney C. Thomas

156.  Wielebinski, Joe, counsel for interested party Vertical Street Ventures, LLC

157.  Winstead PC, counsel for interested party Vertical Street Ventures, LLC

158.  WRL2019, LLC (Texas), receivership entity

/s/ Charlene C. Koonce
Charlene C. Koonce

*Attorney of Record for*
*Receiver Cortney C. Thomas*

## TABLE OF CONTENTS

I.    IDENTITY AND INTEREST OF AMICUS CURIAE ..................................1

II.   AUTHORITY TO FILE AMICUS CURIAE BRIEF ......................................1

III.  RULE 29(a)(4)E STATEMENT ...............................................................2

IV.   INTRODUCTION ....................................................................................3

V.    ARGUMENT............................................................................................5

    A.    The District Court Exercised Rather than Abandoned Its
        Discretion ...........................................................................................5

    B.    Barton Lacks Credibility .....................................................................6

    C.    The District Court Appropriately Concluded a Clear Necessity
        for a Receivership Existed.....................................................................7

    D.    The Scope of the Receivership Complies with *Barton* and Does
        Not Reward Fraud and Comingling .....................................................10

        1.    *In Rem* Jurisdiction Does Not Inform Scope ...........................10

        2.    The District Court Acted Within its Discretion in
              Determining Which Entities to Include in the
              Receivership.............................................................................11

              a.    The Tracing Was Reliable But Not Exhaustive .............12

              b.    Barton's Complaints That Certain Properties
                  Didn't Benefit Enough or For Long Enough Are
                  Meritless .........................................................................14

              c.    Ample Evidence and Discretion Support Inclusion
                  of Each Entity in the Receivership ................................16

    E.    Receiver Selection, Competence, Work and Compensation ..............20

    F.    No Error In Ratifying Certain Orders ................................................24

    G.    The District Court Did Not Err in Approving Real Property
        Sales..................................................................................................25

1.    The District Court Continues to Possess Jurisdiction and
Authority to Administer the Estate and Approve Sales, if
Necessary. ..................................................................................25

2.    Sales Seek to Preserve Eroding Value .....................................26

H.    This Court Lacks Jurisdiction to Review Orders Approving
Real Property Sales, and Barton's Serial Appeals Continue to
Damage the Estate ..............................................................................28

I.    The Current Status of the Receivership and the Effect of the
Relief Barton Seeks ...........................................................................30

VI.    CONCLUSION.........................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Beard v. Bell,*
   47 F.3d 426 (5th Cir. 1995)....................................................................................6

*FDIC v. Faulkner*,
   991 F.2d 262 (5th Cir. 1993)................................................................................16

*FTC v. Affordable Media*,
   179 F.3d 1228 (9th Cir. 1999) ...............................................................................3

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
   712 F.3d 185 (5th Cir. 2013)................................................................................11

*Matter of McGaughey,*
   24 F.3d 904 (7th Cir. 1994) ...................................................................................9

*Netsphere, Inc. v. Baron*,
   703 F.3d 296 (5th Cir. 2012)..................................................................................6

*Netsphere, Inc. v. Baron*,
   799 F.3d 327 (5th Cir. 2015)................................................................................28

*Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*,
   140 S. Ct. 696, 206 L. Ed. 2d 1 (2020)...............................................................25

*SEC v. Camarco*,
   No. 19-1486, 2021 WL 5985058 (10th Cir. Dec. 16, 2021)...............................15

*SEC v. Complete Bus. Sols. Group, Inc.*,
   44 F.4th 1326 (11th Cir. 2022) ...........................................................................29

*SEC v. Dobbins*,
   No. CIV.3:04-CV-0605-H, 2004 WL 957715 (N.D. Tex. Apr. 14, 2004)..........31

*SEC v. Equitybuild, Inc.*,
   101 F.4th 526 (7th Cir. 2024)................................................................................9

*SEC v. Equitybuild, Inc.*,
   No. 21-2664, 2021 WL 745317 (7th Cir. Nov. 4, 2021) ......................................9

*SEC v. First Fin. Group of Tex.*,
   645 F.2d 429 (5th Cir. 1981)........................................................................................6

*SEC v. Quinn,*
   997 F.2d 287 (7th Cir.1993)........................................................................................31

*SEC v. Safety Fin. Service, Inc.*,
   674 F.2d 368 (5th Cir. 1982)......................................................................................25

*SEC v. Stanford Int'l Bank, Ltd.*,
   927 F.3d 830 (5th Cir. 2019)........................................................................ 5, 10, 30

*Thompson v. Phenix Ins. Co.*,
   136 U.S. 287 (1890)....................................................................................................11

*United States v. Antiques Ltd. P'ship*,
   760 F.3d 668 (7th Cir. 2014)......................................................................................29

*Zacarias v. Stanford Int'l Bank, Ltd.*,
   945 F.3d 883 (5th Cir. 2019)......................................................................................21

## I.   IDENTITY AND INTEREST OF AMICUS CURIAE

Amicus Curiae Cortney C. Thomas is the court-appointed Receiver ("Receiver") in this case, who serves as the District Court's agent.  These consolidated appeals include challenges to orders issued in response to motions filed by the Receiver rather than either party to these appeals.

## II.   AUTHORITY TO FILE AMICUS CURIAE BRIEF

This Amicus Brief is desirable and relevant to the disposition of the case as required by Appellate Rule 29(a)(3)(B).  In two consolidated appeals, Appellant Barton ("Barton") challenges the propriety of several orders, including an Order Appointing Receiver (the "Order" or "Receivership Order"), an order ratifying administrative orders governing the receivership (the "Ratification Order") and orders approving sales of property ("Sale Orders"), and other orders. As revealed by the absence of supporting record references or misleading record references throughout his brief, truth has limited relevance in many of Barton's arguments.  The Receiver is uniquely qualified to respond to Barton's false assertions, including the sufficiency and reliability of evidence related to the entities and properties included in the receivership, the necessity and scope of a receivership, the impact of the relief Barton seeks, and Barton's false assertions about the Receiver's honesty, motivation, and competence.

–1–

Additionally, although this appeal and No. 24-10004 consolidated herein include challenges to certain orders issued based on the Receiver's motions (the Ratification Order and the Sales Orders), in prior but related appeals the Receiver was denied leave to participate directly but possesses the most current and relevant information and evidence demonstrating why these Orders were in the best interest of the Receivership Estate.  He is thus uniquely situated to address the propriety of these Orders, including the timing and necessity of the relief obtained, the risk of harm to Receivership Assets[1] absent the relief granted by the District Court, and the prejudice caused by Barton's repeated, improper interlocutory appeals.  The victims of Barton's investment activities are most impacted by the serial appeals and resulting delays, and the Receiver is best situated to speak on their behalf.

### III.    RULE 29(a)(4)E STATEMENT

This Amicus Curiae Brief was prepared entirely by the undersigned counsel and the Receiver.  The undersigned certifies that: (i) no party's counsel authored this brief in whole or in part; (ii) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (iii) no person contributed money that was intended to fund preparing or submitting the brief.  (The Receiver's and his counsel's fees are paid from Receivership Assets, but, as of the date of this

---

[1] Undefined capitalized terms have the same meaning ascribed in briefing in the District Court.

–2–

Brief, neither the Receiver nor his counsel have been paid for any work performed after March 31, 2023).

## IV.    INTRODUCTION

"An old adage warns that a fool and his money are easily parted. This case shows that the same is not true of a district court judge and his common sense." *FTC v. Affordable Media*, 179 F.3d 1228, 1231 (9th Cir. 1999).   Barton swindled investors (the "Investors") and used investor funds ("Investor Funds") to speculate in raw land unrelated to the intended investments and to fund his lavish lifestyle. **ROA.167**; **212-216; 10318**.[2]   He used more than one hundred entities, money-laundering transactions, and dense and extensive commingling to hide his misappropriation.  **ROA.10240-10241**. As he has repeatedly in the District Court, here he uses half-truths and outright lies to challenge imposition of a receivership. Through blatant contempt he also sought to preclude the Receiver from obtaining and providing the evidence that supports the remedies the District Court deemed necessary and appropriate. **ROA.7463-7473.**

The District Court concluded, albeit tardily, that the first receivership order was justified, even under the *Netsphere* test. **ROA.3102-3103; 3110**.  In reversing the first Receivership Order, however, this Court concluded it could not consider that analysis and could "not say whether" the trial court abused its discretion in

---

[2] Unless indicated otherwise, all record references are to the record in Appeal No. 23-11237.

entering the first Receivership Order.[3] This Court vacated the first receivership order but stayed vacatur for ninety days to avoid the chaos, waste, and misappropriation that would have ensued had the first Order been void while the District Court considered whether to issue a new order. *Barton*, pp. 581-82.[4]

After carefully reviewing reams of evidence, hours of testimony, and Barton's repeated false statements in dozens of briefs and motions, the District Court again exercised its discretion to preserve the only assets available to satisfy any final judgment and compensate the defrauded Investors, by appointing an independent receiver, selected by the District Court rather than one proposed by the Commission. As this Court implicitly recognized by staying vacatur, the evidence warranted the extraordinary relief of a receivership. The additional evidence considered by the District Court on remand (rather than Barton's inaccurate characterizations of it) likewise justify the new Order. On this record, this Court should conclude no abuse of discretion or other error occurred with respect to the new Receivership Order.

Additionally, Barton also appeals several other orders issued by the District Court. Not only do these interlocutory appeals lack jurisdiction, but they also have imposed and continue to impose significant prejudice to the Receivership Estate. In

---

[3]*See* Appeal No. 22-11132 (*SEC v. Barton*, 79 F.4th 573, 579-580 (5th Cir. 2023) (hereafter, "*Barton*")).

[4] *See also*, Appeal No. 22-11132, Doc.5, pp. 20-22.

essence, these other appeals have practically given Barton the very same stay that both this Court [**ROA.9879**] and the District Court [**ROA.3096**] have denied repeatedly.  The improper interlocutory appeals of sale orders in particular have resulted in the loss of millions of dollars in equity in commercial real estate assets that are encumbered by sizeable loans.  This Court should address and prohibit these baseless serial appeals.

## V.    <u>ARGUMENT</u>

### A.    **The District Court Exercised Rather than Abandoned Its Discretion**

The District Court possessed broad discretion in the fact-based determinations which governed the clear necessity of a receivership and evaluation of which entities "received or benefited from" Investor Funds[5] and thus fell within the scope of a receivership. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). Its treatment of objections[6] and the previously expressed frustration with Barton's "unsupported assertions and outright misrepresentations," [**ROA.3097**] reveal appropriately exercised discretion in weighing the credibility and reliability of the witnesses, and in determining whether the three *Netsphere* factors were satisfied and which entities should be included in the receivership. **ROA.14773-14792**; *see*

---

[5] *Barton* pp. 579, 580.

[6] The court explained and repeatedly responded to evidentiary objections by noting the evidence would be afforded "the weight to which it is due." **ROA.15278-15279; 15288; 15292; 15295; 15299; 15305; 15306; 15309-15310; 15333; 15356; 15366-15367; 15383; 15384; 15385; 15395; 15396; 15407; 15429**.

*Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (requiring "clear necessity" for receivership, inadequacy of other remedies and balance of harm); *SEC v. First Fin. Group of Tex.*, 645 F.2d 429, 439 (5th Cir. 1981) (appointment of receiver is an ancillary remedy within the court's discretion). Barton's conduct, including his contempt for refusing to provide financial information necessary for more comprehensive tracing, also properly informed the District Court's discretion with respect to the same factors. *See* **ROA.14775**. Thus, the District Court's acceptance of the Commission's evidence and arguments demonstrates an embrace rather than abandonment of discretion.

## B.    Barton Lacks Credibility

Although this Court weighs neither evidence nor credibility and affords great deference to the District Court on such issues,[7] the Court should, however, acknowledge that as in many, many prior instances,[8] Barton's arguments are unsupported or refuted by the record. His repetition of various false or fabricated facts underscores the District Court's finding that Barton relies on "unsupported assertions and outright misrepresentations." **ROA.3097**. Mindful of the word limit,

---

[7] *See Beard v. Bell,* 47 F.3d 426 (5th Cir. 1995).

[8] *See* **ROA. 3014-3023; 4293-4304**; *see also* Appeal 22-11132, Doc. 110-1 (denying Barton's motion that lacked Rule 27.3 certification), Doc. 113-2, p. 2 (noting a false statement in Barton's renewed motion); and Doc. 112 (detailing Barton's many falsehoods), and Doc. 05 (Receiver's Opposition to Barton's Motion to Stay, also discussing many misrepresentations in support of Barton's first motion to stay).

the Receiver can address only a few of the most egregious inaccuracies, for example, Barton's characterization of his unauthorized use of Investor Funds as legitimate "inter-company loans,"[9] which ignores: (a) the millions of investor dollars used for personal purposes; **ROA.10319-10320**; (b) financial records suggesting money laundering rather than legitimate transactions **ROA.10242**; and, (d) the absence of any loan documents. **ROA.15424**; **15331** ("I haven't seen any documentation of any inter-company loans.").

## C.    The District Court Appropriately Concluded a Clear Necessity for a Receivership Existed.

In concluding the three fact-based *Netsphere* factors were satisfied, the District Court followed the standard delineated by this Court.  As the Receiver explained in his Report:

- The properties in the receivership have less equity than the total claims (and less every day).[10] **ROA.10321**; **10324**. In asserting otherwise, Barton ignores the substantial debt that encumbers all but one property, as well as the disputed ownership of several of the most valuable properties held by the D4 Entities.[11] **ROA.10315-10316**; *see also* **ROA.14795** (substantial risk that insufficient assets exist to satisfy potential disgorgement).  Indeed, the Receiver's summary analysis of value, **ROA.10316-10317 (¶ 196)**, did

---

[9] *Brief,* p. 6.

[10] The Receiver's comparison of potential property value with the amount of the Investor losses, **ROA. 10314-10317** does not account for the cost of administering the receivership, which in large part because of Barton's objection to *every single motion filed by the Receiver* save two, has been and will continue to be, substantial.

[11] Barton has made this assertion numerous times and the District Court has rejected it, numerous times. *See* **ROA.1365; 1382; 2572-2573; 3096.**

not account for another year of accruing interest and another $2,000,000 in lost value;[12]

- Several properties require active management or supervision, for instance the Amerigold Suites, sale of which Barton has effectively blocked twice, and the apartment developments owned by the "D4 Entities"; **ROA.10329-10330; 14775-14776**; and

- All properties are at risk of foreclosure. **ROA.14773**. The initial Receivership Order stayed multiple imminent foreclosure sales, **ROA. 3250**, although 4 creditors have since sought leave to lift the stay imposed by the Receivership Order and proceed with foreclosure. **ROA.7640; 10490; 12438; Dkt. 498.**[13] Creditors have and continue to confer with the Receiver regarding similar motions and threats.[14]

At the time of the Receiver's initial appointment, thirty days after the SEC moved for appointment of a receiver, Barton had stripped virtually all cash from the bank accounts of the entities that had received or benefited from Investor Funds, and several properties were in disrepair or dangerous to residents or citizens **ROA.10318-10321**; Dkt. 498 at 4. *After* the SEC filed its motion seeking a receiver, Barton also spent at least $225,000 traceable to Investor Funds. **ROA.10318**. Barton habitually encumbered or transferred properties purchased with Investor Funds, and indeed disregarded orders to refrain from doing so. **ROA.2781-2783;**

---

[12] Dkt. 528 at 10.

[13] References to docket entries in the District Court created after the Record was prepared are referenced above as "Dkt. _."

[14] *See* **ROA.10332 (¶ 236)**; *see also*, Dkt. 508 at 1.

**7463-7473; 10318-10321**. These facts demonstrate a clear necessity for a receivership.

On the other hand, "risk of asset flight," a potential basis for an injunction, has never been the sole justification for a receivership.[15]  Receiverships *are* appropriate to protect and preserve real estate, if management is required, value is diminishing, or a risk of further dissipation or waste exists.  For example in *SEC v. Equitybuild, Inc.,* a case pending in the United States District Court for the Northern District of Illinois, the District Court appointed a Receiver to "marshal, preserve, and protect," dozens of real properties obtained by the defendants through a fraudulent real estate investment scheme, where "Defendants cannot be trusted to continue to manage these properties or to liquidate them or other assets for their victims' benefit."[16] *See also Matter of McGaughey,* 24 F.3d 904, 907 (7th Cir. 1994) (Affirming appointment of receiver as "an especially appropriate remedy in cases involving fraud and the possible dissipation of assets since the primary consideration

---

[15] *See Brief*, p. 52.

[16]*SEC v. Equitybuild, Inc.*, Cause No. 18-CV-5587, pending in the United States District Courty for the N.D.Ill., Dkt. 4 at 17.  The court appointed Kevin Duff, a commercial litigator who had also served ably as a receiver in other matters. The *Equitybuild* case has generated many published or reported opinions regarding the Receiver's administration of that Estate. *See SEC v. Equitybuild, Inc.*, 101 F.4th 526 (7th Cir. 2024); *SEC v. Equitybuild, Inc.*, No. 21-2664, 2021 WL 745317, *1 (7th Cir. Nov. 4, 2021) (dismissing for lack of jurisdiction appeal of order issued in "mid-stream" administration of receivership).

in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit.").

Barton repeatedly asserts the Receiver and District Court should only preserve the status quo.  But that is an injunctive goal rather than the standard governing whether a receivership is necessary or even the primary purpose in creating a receivership. Receiverships instead protect value, actively, in whatever manner and by whatever means is appropriate for the assets at issue.[17] *See* **ROA.14800-14801**; **14813-14815** (Receivership Order, ¶ 6, ¶¶ 37-46, compelling Receiver to actively *change* the status quo).  Thus, as the District Court acknowledged in the Order, without a receiver to "manage, maximize, and protect the value of the Receivership Entities' assets," the Investors' interests in the subject properties are "at substantial risk." **ROA.14795**.

### D.   The Scope of the Receivership Complies with *Barton* and Does Not Reward Fraud and Comingling

#### 1.   *In Rem* Jurisdiction Does Not Inform Scope

Barton argues that "because a receivership is a remedy in rem, [a court] may seize the assets of an entity only to the extent it *possesses* the property in question." *Brief*, 25 (emphasis added). That legally flawed assertion mischaracterizes this

---

[17] The necessity of such flexibility explains the breadth of discretion afforded in administering receiverships, *Stanford Int'l Bank, Ltd.*, 927 F.3d at 840, and is likely one reason this Court stayed vacatur of the initial receivership order.

–10–

Court's holding and conflates a court's *in rem* jurisdiction over assets in receivership with the jurisdictional basis for a receivership.

Assets in a receivership, including inchoate rights like fraudulent transfer claims frequently asserted by receivers,[18] are held *in rem* by a district court. *See Thompson v. Phenix Ins. Co.*, 136 U.S. 287, 297 (1890) ("The possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it."). *In rem* possession, however, does not inform whether the assets and entities are the subject of the dispute, i.e., used in connection with Barton's misappropriation of Investor Funds.

## 2. The District Court Acted Within its Discretion in Determining Which Entities to Include in the Receivership

In imposing a receivership over entities it found "received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of the litigation," the District Court followed the test this Court defined, which was premised on Barton's prior arguments.[19] **ROA.14778**; *see also*, *Barton*, pp. 580-581.

---

[18] The Receiver has filed lawsuits asserting such claims, which are "property of the estate." *See* **Dkts. 472, 488**; *see also Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188 (5th Cir. 2013).

[19] Appeal No. 22-11132, Doc. 51, p. 57. To the extent Barton now complains about the District Court's application of this standard, if any error exists, Barton invited it.

–11–

### a.    The Tracing Was Reliable But Not Exhaustive

Barton asserts the Receiver's tracing was performed to further the government's case while also complaining it was unreliable and incomplete.[20] In essence, Barton complains the Receiver has not done enough work, while also complaining that he has done too much.

As the Receiver and his accountant, a CPA with a background in forensic investigations, both testified, a complete forensic accounting was prohibitively expensive at this juncture. **ROA.15337; 15354; 15297-15298.** The analysis instead focused on non-exhaustive *examples* demonstrating Investor Funds or their proceeds flowing into each entity. **ROA.15273; 15339; 15361** ("our analysis was to go find examples [of Investor Funds flowing into each entity] to try to do this in the most economic manner possible"); **ROA.10288**; **15383** (lowest intermediate balance not used because "I wasn't trying to estimate [sic] amount of commingling funds that attributed to investor funds . . . I was trying to show situations where investor funds were sent to a Barton-controlled entity.").  The tracing examples included in the Receiver's Report, discussed at the hearing, and listed in the Order are by no means exhaustive, but were more than sufficient to demonstrate Investor Funds flowing into each entity, and therefore satisfy the standard set in *Barton*.[21]

---

[20] *Brief,* 32-33; 38; 82.

[21] Notably, it is unlikely that any party seeking a receiver to halt fraud and preserve assets could ever satisfy the standard proposed by Barton—a complete forensic accounting tracing every

Nor are Barton's challenges to methodology supported by the record. Barton's expert admitted he could not opine that any entity into which Investor Funds or their benefit had been traced had *not* received or benefited from Investor Funds, [**ROA.15438**], and also conceded that GAAP, GAAS, or other accounting standards did not apply to a fraud examiners' summary of the flow of funds. **ROA.15442**. Barton's expert admitted "where the money is directly deposited into an account, there is no tracing method." **ROA.15436**.

Barton also ignores his extensive and contumacious efforts to withhold accounting records and information, for example by changing log-in credentials for "Quickbooks;" migrating accounting data to a cloud-based platform once he became aware of the SEC's investigation and withholding the log-in credentials; and instructing the entities' head accountant to refuse to speak to the Receiver, all of which contributed to tracing difficulties. **ROA.3119; 10242; 10248-10249; 10251**. Similarly, Barton's "pervasive and dense" comingling, his practice of funneling Investor Funds from one property to another through transfers made to or by title companies, and his use of loan proceeds from the sale of one property purchased with Investor Funds or their proceeds to purchase another [**ROA.10243-10245**] "rendered a definitive, start-to-finish tracing analysis nearly impossible for many

---

fraudulently obtained dollar to its trial disposition—because such evidence is virtually impossible to obtain at the beginning of a case when the defendant is often busy secreting, spending, or dissipating such assets and hiding that activity from those who have been defrauded.

accounts." **ROA.10243**. Barton's arguments regarding the sufficiency of the

Receiver's and his accountant's tracing analysis thus merit no consideration here.

### b.     Barton's Complaints That Certain Properties Didn't Benefit Enough or For Long Enough Are Meritless

Barton's arguments about an insufficient quantum of benefit received by any

entity—each of which Barton controlled and operated as a collective but unitary

sham—as well as arguments regarding seizing a "whole corporate entity" based on

an entities' receipt of a *de minimis* benefit, are grossly disingenuous.[22]   With the

exception of a limited few parent or operating entities, [**ROA.10247-10248**] the vast

majority of Receivership Entities are  single purpose entities Barton used in (a)

dense, extensive, and complex comingling (which rendered tracing nearly

impossible in some instances) [**ROA.10242**]; (b) transferring the proceeds of

property purchased with Investor Funds through escrow agents to different

properties **[ROA.10243-10244]**; and, (c) as individual pieces of a larger sham

enterprise **[ROA.10245-10247]** by which Barton now seeks to frustrate

investigation into his finances and operation of the Wall Entities. **ROA.10251**.

Barton should not succeed in limiting the scope of an equitable receivership based

on having purchased only a few Investor properties while seeking to exempt

---

[22] For an exhaustive discussion regarding Barton's control over each of the Receivership Entities included in the first Receivership Order, most of which are included in the current Order, *see* **ROA.741-746; 1399-1918; 1919-2413**.

–14–

properties that he purchased or developed with Investor Funds or that benefitted

from Investor Funds, and which are held by single purpose entities he controls. That

result encourages fraud and fraudsters. *See, e.g., SEC v. Camarco*, No. 19-1486,

2021 WL 5985058, at *14 (10th Cir. Dec. 16, 2021) ("[I]mposing [a] strict tracing

requirement . . . [would be improper] because a savvy embezzler could quickly

spend the money on luxury vacations, secrete ill-gotten funds away in a location or

foreign bank account not detectable by authorities, or so commingle tainted funds

with untainted funds as to make it impossible to trace the tainted funds to their final

resting place.").

Likewise, this Court should not allow Barton to achieve exclusion of entities

into which Investor Funds were traced based on his contention that the Receiver has

been unable so far to sufficiently unravel *all* comingled transactions. A

comprehensive analysis was not required. *See Barton*, pp. 580-581. Further,

although this Court previously held "refusal to aid" in identifying which entities to

exclude was insufficient to justify a receivership absent a preliminary injunction,

*Barton*, at p. 580, the District Court has now entered such an injunction.

**ROA.14822**. And, Barton's activities stretch far beyond a "refusal to aid"—he was

held in contempt for refusing to provide access credentials to his financial records

and other disclosure obligations. **ROA 3119; 7467; 10248-10249; 14775**. Except

for email access credentials (Barton did not provide credentials to access

"Quickbooks") his disregard of the Receivership Order continues today. [Dkt. 530].

Barton owns each property and entity he contends is beyond the scope of the Order, is the origin of the fraud at issue in the SEC's Complaint and has blocked access to evidence that could provide further clarity regarding the scope of the Order.  Thus, these additional equitable considerations support inclusion of all properties at issue. *See*, *e.g.*, *FDIC v. Faulkner*, 991 F.2d 262, 268 (5th Cir. 1993) (no error in freezing all of defendants' assets where they "refused to aid the district court in tracing").

### c.    Ample Evidence and Discretion Support Inclusion of Each Entity in the Receivership

First, Barton's assertion that *any* entity included in the receivership has tens of millions of dollars in net assets[23] ignores the debt that burdens each entity. **ROA.10315-10316**.  With respect to the D4 Entities that own apartment complexes (the "D4 Entities"), Barton also ignores the competing claim of ownership asserted by Southern Property Capital. **ROA.5695-5697; 5698-5755; 7682-7736; 10262-10272; 14797**.  Collectively, all properties in the receivership have less equity than the amount owed just to the Investors, a metric that ignores the additional $10M owed to judgment creditors, dwindling equity, and costs of administering the estate. **ROA.10315-10316**; **14795**; **Dkt. 528 at 6**.

---

[23] *Brief*, 25.

–16–

Similarly, Barton's misleading complaints regarding corporate entities that received less than the entity's worth or used the ill-gotten funds for a short period of time[24] focuses on the quantum of assets received rather than the governing standard—entities that received or benefited from assets traceable to the "subject of the litigation." *See Barton*, pp. 580-581. Barton argues, essentially, that he didn't use some entities enough in his fraud to justify their inclusion in the receivership. As demonstrated by the Receiver's lengthy Declaration and testimony, however, whether through design, status as single purpose entities, timing in the course of the fraud, or mere happenstance, all of the Barton-controlled entities included in the receivership received or benefited from Investor Funds and are thus the subject of the SEC's claims. **ROA.10242.** The District Court did not include entities that were merely "parent" or other "pass through" entities that did not receive Investor Funds; it included entities that Barton used in conducting the fraud which is the subject of the litigation and which "received or benefited from" assets traceable to Barton's fraud. **ROA.14778.**

Barton's argument that the District Court held that "every dollar spent by . . . [JMJ Development] was tainted, whether it came in form of a salary benefit or the advance of funds,"[25] is a bald lie, refuted by the Order and the underlying record.

---

[24] *Brief,* 25.

[25] *Brief*, 45.

The District Court *could not* have concluded that everything any entity, including JMJ, "spent" after receiving Investor Funds was "tainted" because the Receiver, the SEC's staff accountant, and the Receiver's accountant rejected that specific assertion. **ROA.15333-15338**. Instead, the "received or benefited" analysis rested on evidence that specific Investor Funds traced to JMJ were traced into other entities. **ROA.15333-15334**. The District Court carefully referenced examples of Investor Funds traced into each entity, **ROA.14783-14785**, relying on testimony in which the Receiver, his accountant, and the Commission's accountant demonstrated the falsity of Barton's "operating assumption" argument, that any money spent by JMJ was tainted with lender funds." **ROA.15334-15335; 15367-15368; 15398-15399**.

Barton's assertion that "zero evidence" supports the District Court's conclusion that the "apartment complex companies," (the "D4 Entities") would not have received the HUD loans necessary for their existence without using properties purchased with lender funds, *Brief*, 44, is also false. The Receiver's Report included detailed information about the use of properties purchased with Investor Funds on the certified HUD Personal Financial and Credit Statements used to obtain the four, multi-million-dollar HUD loans. **ROA.10264-10265**. If those Investor-funded properties were unnecessary to obtaining the HUD loans, Barton would not have included them in the certified applications that he submitted under penalty of prosecution.

Similarly, Barton's assertion that D4IN was included solely because JMJ "paid the salary of an employee who filled out paperwork,"[26] ignores the District Court's conclusion that the D4 Entities secured HUD loans by relying on assets purchased with Investor Funds. **ROA**.**14782**.  Without the HUD loans the properties owned by those entities would not exist. **ROA**.**14782**. Indeed, Barton initially complained the Receiver was not moving fast enough to sell the properties owned by the "D4 Entities," [**ROA.3641-3643**] a near judicial admission regarding inclusion of these properties within the scope of the receivership.

Barton's complaints about the sufficiency of tracing to FHC Acquisitions, LLC,[27] are equally disingenuous since the Receiver and the Commission traced Investor Funds directly to the entity. **ROA.10260; 10353-10354; 10487**.  Barton also brought the buyer of the entity's property to the Receiver and complained the Receiver was not closing a sale fast enough. **ROA.3061.**

The FHC example in particular demonstrates Barton's willingness to obfuscate the truth in his attacks on the District Court's analysis.  Barton complains specifically of "intervening deposits" totaling $2.917 million received by Receivership Entity Broadview Holdings between March 24, 2022, when it received $232,000 in investor funds, and March 29, 2022, when it sent $168,146.67 to FHC

---

[26] *Brief*, 21.

[27] *Brief*, 46.

Acquisitions.[28]   Barton claims these funds are "entirely unrelated to any lender funds" and "18 times the outflow the Receiver claims was tainted."  However, (1) Barton's reliance on "2.917 million" is inaccurate because the "intervening deposits" totaled $2.635 million, [**ROA 16080**]; (2) $2.5 million of the $2.635 million in "intervening deposits" flowed right back out of the Broadview Holdings Account, days before the transfer to FHC relied on by the Receiver in his tracing, [**ROA.15449; 16080-81**]; (3) the $2.5 million was from a refinance of property owned by Receivership Entity LDG001, LLC in Venus, Texas which itself was tainted with Investor Funds [**ROA.10374; 10383**]; and (4) the District Court has already considered and rejected Barton's faulty premise and exercised its discretion in rejecting it.  **ROA.14780**.

Each shotgun objection raised by Barton with respect to the District Court's analysis and conclusion that the entities included in the receivership received *and* benefited from Investor Funds is similarly belied by the evidence, or merely a baseless attack on the District Court's discretion.

## E.   Receiver Selection, Competence, Work and Compensation

Barton's complaints about the bias, competency, motivation, and compensation of the Receiver similarly rest on false assertions.  First, the District Court rejected the Commission's receiver candidate and independently selected Mr.

---

[28] *Brief*, 47.

–20–

Thomas because it sought "separation" between the receiver and the SEC. **ROA.15171**. Indeed, the Receiver is the District Court's agent, not an ancillary arm of the SEC, and receives any authority he possesses solely from the court. *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) ("The receiver is . . . an officer or arm of the court . . . appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody") (internal quotation and alteration omitted)). Thus, the Receiver was not analyzing financial records and preparing reports in aid of the SEC's case or to "strenuously advocate" for his reappointment. *Brief,* 10. His financial analysis and Report were required by the original Receivership Order[29] and a subsequent order [**ROA.660; 45**[30]] and prepared because the Receiver knew the best interests of the Receivership Estate required "maximizing and accurately identifying the assets included in the Receivership Estate." **ROA.10240**.

Second, the Receiver's experience as a seasoned litigator has been far more important than real estate development experience. Instead of nearly completed developments requiring just a guiding hand to cross the finish line, most properties are raw land embroiled in litigation or near foreclosure. **ROA.15327.** An

---

[29] The Receiver was directed to investigate "the manner in which the financial and business affairs of the [Initial] Receivership Entities were conducted." **ROA.660.**

[30] An electronic order entered in the docket as text only, at Dkt. 305, reflects the District Court's order for the Receiver to prepare a Declaration regarding information obtained after the case was filed relevant to a new receivership order. **ROA.45.**

–21–

experienced litigator (and receiver), equipped to manage the litigation resulting from Barton's opposition to virtually every motion, his use of litigation as a business tactic, and indeed the litigation with creditors and third parties who claim ownership of some properties,[31] possesses all skills necessary to preserve the value of receivership assets and properties while serving the District Court as outlined in the Order. A receiver also has the ability to hire experts and obtain specialized guidance when necessary. **ROA.646**.

Further, the Receiver *has* continued overseeing progression of the few properties for which "development" had progressed at the time of his appointment beyond hope and a prayer.[32] Barton's complaints about the Receiver's failure to continue developing or rehabilitate properties,[33] however, must be viewed against the dearth of liquid assets necessary to accomplish that work, which results largely from Barton's jurisdiction-less appeals of orders approving sales discussed below.

Nonetheless, leaning on his deep business connections, the Receiver has obtained development, management, and sales guidance, when necessary, from industry professionals, often at no charge. **ROA.10250; 15319-15320; 16327-**

---

[31] **ROA.1399; 2581-2582; 2706; 5698; 10490; 12438; 14320; 14660; 14666; 14719.**

[32] For instance, within days of his appointment, the Receiver learned that one of the HUD Apartments, owned by D4OP LLC, was in the final stages on construction and cost certification with HUD. **ROA.13843-13849**. The Receiver shepherded this property through cost certification with incomplete records (while Barton refused to cooperate) and continues to regularly correspond with HUD, the lender, and auditors on the HUD Apartments. **ROA.13843-13849**.

[33] *Brief,* 62.

–22–

**15328.**  Rather than speculating in development, however, he has continued working to fulfill the purpose of his appointment: preserving and maximizing the value of the receivership estate.  **ROA.15350.**    Accordingly, the Receiver has attempted to preserve value by selling properties to stop the accrual of interest on liens that drain equity and recover cash necessary to continue the maintenance and preservation of other properties.  **ROA.15009**; *see also*, **Dkt. 528**.

The work required to comply with the Receivership Order and additional orders has been extensive and time-consuming although all time by the Receiver, his counsel, and accountants has been billed at discounted rates.  Indeed, the Receiver's billable rate is 33% lower than his standard rate and his lead counsel's rate is likewise 85% of her standard rate.[34]  Further, despite his ad hominin attacks and sarcasm suggesting an improper financial motivation, Barton knows the Receiver, his counsel, and accountants have not been paid for any time incurred after March 31, 2023, including the time necessary to prepare the extensive Report and testify at the hearing and to prepare this brief.[35]  **ROA.46 (Dkt. 306); Dkt. 539**.

---

[34] *Compare* the Receiver's $385.00 rate with the Receiver's billable rate in *SEC v. Agridime LLC, et al.,* Case No. 4:23-cv-1224, (N.D. Tex.) ($1,395 hourly rate); *SEC v. Heartland Group Ventures, LLC et al.,* Case No. 4:21-cv-1310, (N.D. Tex.) ($675 hourly rate).

[35] On July 26, 2024, the Receiver filed a fee petition seeking authorization to pay fees incurred between April 1, 2023 and June 30, 2023.  **Dkt. 539.**  As of the date of this Brief, the petition is pending.

–23–

Indeed, as reflected in the docket below, more than 88 motions, briefs, responses, replies and reports have been prepared by the Receiver since March 31, 2023, all without payment. That work, like all work since Barton began filing his jurisdiction-less appeal of orders approving sales, was performed with knowledge that payment may *never* be made. Because of the amount of time necessary to perform the work, however, the Receiver has had to turn away other full-fee work. **ROA.15348-15348**.

## F.   No Error In Ratifying Certain Orders

In contending the District Court erred in ratifying prior orders based on a new receivership order because the prior order had been vacated, Barton raises a circular argument. *Brief,* 77-78; *see also* **ROA.14835**.

Based on the initial Receivership Order, the Receiver performed extensive work, including identifying and taking possession of property, mail, and records; engaging professionals; and staying more than thirty lawsuits and numerous foreclosures. **ROA.1240; 10236-10238; 14794; 14835**. He attempted to preserve the value of assets by converting some to cash through sales and settlements; paid taxes and insurance; opened a bank account; entered into numerous contracts; and paid certain fees and expenses. *See* **ROA.13810**; *see also* **ROA.714;** 1**226; 2824; 3096; 7197; 7463; 7474; 2781; 5628; 9977**. While this Court's vacatur, stayed for 90 days, potentially rendered every order issued in reliance on the first order void

(or at least created concern regarding the continued viability of those orders) the vacatur did not erase the activities that had occurred or negate their necessity.  If the District Court was inclined to create a new receivership it was therefore entitled to ratify and "bless" any of those prior orders and activities based on the new Order. *See Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01, 206 L. Ed. 2d 1 (2020) (District courts are permitted to enter "nunc pro tunc" orders to "reflect the reality of what has already occurred.") (internal quote omitted)).  Indeed, judicial efficiency, asset preservation, and common sense mandated such an order.  *See*, *e.g.*, *SEC v. Safety Fin. Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) ("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse").

## G.    The District Court Did Not Err in Approving Real Property Sales

### 1.    The District Court Continues to Possess Jurisdiction and Authority to Administer the Estate and Approve Sales, if Necessary.

Barton's challenges to the District Court's continued jurisdiction to administer the Receivership, including as necessary to preserve value by converting wasting assets to cash, are meritless.  District courts are imbued with broad discretion to administer receiverships, even during the pendency of an appeal, and they are no more divested of jurisdiction to continue doing so than they are subject to a stay absent an order imposing one. The Receiver incorporates his extensive arguments

–25–

from prior briefing on these issues, including references to this Court's denials of Barton's prior efforts to stay continued activity (including sales) in the District Court, which necessarily demonstrate continued jurisdiction below. *See* Dkt. 513, 528; *see also* **ROA**.**15082**; and Appeal No. 22-11132, Doc. 5.

### 2.    Sales Seek to Preserve Eroding Value

Barton has played the lottery with Investor Funds, by purchasing properties the Investor loan agreements did not authorize, but which he now seeks to prevent the Receiver from selling. Through interest that erodes value by at least $170,000 per month, the receivership is paying the price for Barton's speculation. Because of the high rate of interest accruing on the debt secured by these properties, since October 22, 2022 more than $2,000,000 in value has been lost. **ROA.13988;** *see also* **Dkt. 528**.

That loss does not include the additional losses attributable to a softening real estate market, which just for the "Amerigold Suites" has resulted in a $750,000 decrease in value. Dkt. 528, p. 1. In March 2023, the Court approved sale of the Amerigold Suites for $5,500,000. **ROA.5680-5681**. The Receiver was unable to close that sale, however, while Barton's appeal of the order approving the sale was pending.[36] Although the appeal was originally dismissed for lack of jurisdiction, that opinion was later vacated and the appeal was dismissed as moot. After the new

---

[36] *See* Appeal No. 23-10515.

Receivership Order was entered, the Receiver obtained another order, again authorizing the sale. **ROA.15096-15097**. Barton's current appeal, No. 24-10004, challenging that and two other sales orders, again effectively stayed the sale causing the first buyer to terminate the sale.[37] Dkt.500.  Barton also continues to *actively* interfere with these sales, despite an express provision in the Receivership Order prohibiting such interference [**ROA.14811-14812**] and the District Court's prior admonitions [**ROA.7463**], by telling contracted buyers that their sales will not close. **Dkt.530**.

With respect to the Frisco Gate property, Barton not only consented to that sale, he brought the buyer to the Receiver and complained the Receiver took too long to negotiate the sale. **ROA.3062**.  And as this Court knows from Barton's prior appeal of the order initially approving the sale of the Rock Creek Property,[38] Barton's play for sympathy about that investment property, owned by a single purpose entity controlled by Barton rather than Barton individually, must be viewed in light of: (1) the significant amount of Investor Funds traced into Barton's purchase of the property; **ROA.10256-10257**, (2) Barton having listed the property for sale before the Receiver was appointed; **ROA.2575; 2700**, (3) Barton moving art out of the property and secreting it; **ROA.10328**, (4) Barton refuses to disclose the location

---

[37] Barton's appeal of the order approving the sale of the Amerigold Suites, is accordingly moot.

[38] Appeal No. 22-11226.

of that art, which in theory could have been sold initially, instead of at least some properties; **ROA.10328**; and (5) the relative speed at which a residential sale ordinarily closes as a temporary but expedient fix for a receivership estate that was cash-starved. **ROA. 2695; 15059; 15136**

As the Receiver has informed the District Court with respect to proposed sales—including a new sales contract for the Amerigold Suites following the first buyer's termination of the contract on appeal here—the purpose of these sales is to preserve value by converting highly-leveraged assets with declining and eroding value, into cash. **ROA.14132-14133; 14135;** *see also* **Dkts. 500, 528** ("Receiver cannot service the debt on any property, which for the Hall Property, accrues at more than $30,000 per month. With respect to the Amerigold Suites, interest accrues at $13,000 per month").

## H.    This Court Lacks Jurisdiction to Review Orders Approving Real Property Sales, and Barton's Serial Appeals Continue to Damage the Estate

Perhaps most importantly with respect to the Sale Orders and the Ratification Order, as this Court previously concluded in related appeals,[39] no appellate jurisdiction exists for an interlocutory appeal of these types of orders. *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015). As the Eleventh Circuit

---

[39] *See* Appeal Nos. 22-11226 and 22-10516.

observed, the governing statutory provisions reveal the different scope of interlocutory jurisdiction for appeals of injunctions versus receivership orders:

> Section 1292(a)(1) "thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022). "To conclude otherwise would mean that virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable. Such a piecemeal approach to the appellate process would be disruptive and costly, both to the parties and the courts." *Id.* at 1332–33 (internal quotation omitted); *see also United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 671–72 (7th Cir. 2014) (concluding no jurisdiction existed over order approving receiver's sale of property, because "that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals.").

Similarly, as Barton intends through his serial appeals, (seven so far) piecemeal appeals of every order entered by the District Court hinders the primary purpose of the equitable receivership: "marshaling [] the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities." *SEC*

*v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). Indeed, Barton intends these appeals to create the stay he has not sought in this appeal and which were generally denied in the prior one. This Court should not permit continued frustration of the purpose of the receivership through serial but improper appeals. After dismissing Appeal No. 24-10004 and Barton's appeal of the Ratification Order in Appeal 23-11237, this Court should, and indeed must, prohibit similar appeals.

## I.   The Current Status of the Receivership and the Effect of the Relief Barton Seeks

More than thirty lawsuits, many seeking foreclosure and one involving personal injury to a child at the Amerigold Suites, were initially stayed by the Receivership Order. **ROA.3265-3276**; *see also* **Dkts. 476, 491**. Although the Receiver has reached settlements that resolve a few of these lawsuits, most are still stayed. The Receiver is negotiating with the IRS regarding penalties for returns Barton failed to file and creditors who seek to exempt collateral from the receivership and seize it. *See* **ROA.10574; 13664**; *see also* **Dkt. 505**. He continues to negotiate settlements with creditors who claim injury based on the continuing stay, [**Dkts. 473, 487, 494, 513, 519**], and find avenues to generate income to pay property taxes, insurance, and other bills. The Receiver has filed (and stayed) lawsuits against third parties to preserve limitations regarding those claims, [**Dkt. 472**] and continues management of the occupied Amerigold Suites, for instance supervision and payment of employees, utilities, and insurance. Buyers are

conducting diligence regarding approved sales that have not yet closed [*see* **Dkt. 500, 502, 513**]; a tenant that Barton or his family have repeatedly harassed occupies another property pursuant to a lease **[Dkt. 491, pp. 16-20**];[40] and the Receiver continues to regularly correspond with HUD, the lender, and auditors on the HUD Apartments in connection with extensive annual audits and other matters. **ROA.10262-10272**; **Dkt. 456 at 27-33**.

In short, for all the reasons the District Court concluded that a monitorship or an injunction were inadequate, [**ROA.14775**] if this Cout is inclined to vacate or reverse any part of the Order, it should stay such an order to allow time to address these myriad issues.

Finally, because insufficient assets exist to compensate the Investors let alone creditors, and because Barton has refused to comply with the District Court's orders regarding identifying and recovering assets, as well as tracing, [**ROA.3119**], the District Court did not err in refusing his request to release funds for a defense in this or any case. *See SEC v. Dobbins*, No. CIV.3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004) (citing *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir.1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.") (internal citations omitted)).

---

[40] *See also,* Appeal No. 23-10515, Doc. 6, and Appeal No. 22-11132, Doc. 5, pp. 20-22.

## VI.    <u>CONCLUSION</u>

This Court should not accept Barton's invitation to conclude that any legal error occurred with respect to entry of the new Receivership Order, given the District Court's faithful adherence to the standard this Court announced in *Barton*. Likewise, Barton fails to demonstrate any abuse of discretion by the District Court in exercising its ample discretion to enter a new receivership order and determine the appropriate scope of the Order. Finally, this Court should dismiss Barton's appeal of "administrative" orders for which no interlocutory jurisdiction exists, the Ratification Order and the Sales Orders, and dissuade in the clearest terms possible, similar future appeals.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF COMPLIANCE

1.    I certify that this Motion complies with the type-volume limit of FED. R. APP. P. 21(d) because, excluding the words that need not be counted, it contains 7,410 words.

2.    This Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

–33–

## CERTIFICATE UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (*see* Local Rule 25.2.13); (2) the electronic submission is an exact copy of the paper document (*see* Local Rule 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

# EXHIBIT C

**Charlene Koonce**

| | |
|---|---|
| **From:** | Tim Barton <timothy.barton@proton.me> |
| **Sent:** | Wednesday, April 30, 2025 6:50 AM |
| **To:** | Cort Thomas; Charlene Koonce; Tim Wells |
| **Subject:** | Man shot five times on our door step. |

[EXTERNAL EMAIL] Do not open links or attachments if you cannot verify the sender.

Well I am sending you some news I am sure you will enjoy and have good laugh.

A man was shot five time in front of the apartment that Victoria has to live in now. Thanks to your vicious attack against her and all my assets you have left us to have to live in the hood of DC as you have stripped me of everything. Then You attack lawyer  after lawyer and hope to scare off any donors.

You are all a bunch of sick lost souls  that enjoy and laugh when you took Victoria's money she paid to fix the car on the insurance that you have her locked into pay $1200 a month. That money could have gotten her a safe place to live. But no you are sick sick people you want to torture her and destroy her so you can bring pain to me.
God will hold you responsible if we are killed because we have to live in the getto and risk getting shot by just stepping on the street. Our neighbors tell us oh yeah as the summer heat goes up so does the murder. How can you live with yourself to attack Warren now because he is fighting your lies You lied about Martine and made up what ever you can to damage my family Your dubious rants about money being hidden. You can't even add or read a bank statement .

Where does any bank show Tim Barton took money and hid it that could be used to pay a lawyer now. You have none just more lies

You destroyed my son he is obliterated I hope you are proud how you broken him

Charlene weapons of a receivership white paper  have been honed to add destroy each member of the family.

I am sure your mother and father would fall on there knees and pray if they know what you have done to me

Going after my family when you knew they did no wrong is a play book of nasty people.

Well Charlene and suing lawyers a week after you emailed you staff to go ahead and send the files as we won't get any money from suing the lawyers as they were likely act in good faith and then suing all of them is just as sick.
It's almost impossible to find a lawyer who will sue a lawyer but you sick people sued them all after you emailed and said they did no wrong a week earlier. Yes your emails don't lie Charlene and just like that one many more will come out and then maybe you will have to move into a ghetto and see murders on your front door.

Many of the things you did were just vindictive many you should have never done. So look in the mirror tonight and see who you really are. A sick person that did acts that may get people that have never been give a trial murdered because you wanted to be vicious beyond belief and destroy innocent people

Sent from Proton Mail Android

1

**Charlene Koonce**

| | |
|---|---|
| **From:** | Tim Barton <timothy.barton@proton.me> |
| **Sent:** | Friday, May 16, 2025 10:30 PM |
| **To:** | Charlene Koonce; Tim Wells; Alan Carrillo; Cort Thomas |
| **Subject:** | Deception, Leverage, Pipedreams, the Real 'DLP Capital Partners, LLC' Story |

[EXTERNAL EMAIL] Do not open links or attachments if you cannot verify the sender.

Charlene

Great job first deal you did you believed this crook and con man

You allowed this crook to say he was gonna sue the estate when it was under a stay

I told you he defaulted on funding and we were not in any default

You gave a project that just opened 250 apartments and we had to do zero and would own 25% Is now open and built and you gave it away for $375,000

To a con man and a crook who you believed over me and all so you could pay yourself.

Just like his chickens are coming home to roost I have exposed him for what he is.
All of your action will come out as well and no blessing order is gonna help.
You did no due dillgence on this crook you were all to happy to take his fake narrative and use it against me.
Sunlight is coming

Happy reading and more on face book

Deception, Leverage, Pipedreams, the Real 'DLP Capital Partners, LLC' Story

https://www.linkedin.com/pulse/deception-leverage-pipedreams-real-dlp-capital-partners-barry-minkow-gozbc?utm_source=share&utm_medium=member_android&utm_campaign=share_via

Sent from Proton Mail Android

1