# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § | |
| Defendants. | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LC, | § § § | |
| Relief Defendants. | § § | |

**DECLARATION OF BARRY DEGROOT REQUESTING EXPEDITED
CONSIDERATION AND IN SUPPORT OF DLP ENTITIES'
EMERGENCY MOTION TO DECLARE LIS PENDENS VOID**

| | |
|---|---|
| STATE OF FLORIDA | § |
| | § |
| COUNTY OF ST. JOHNS | § |

1.    My name is Barry DeGroot. I am over 21 years old, and my business address is 405 Golfway West Dr., St. Augustine, FL 32095. I declare under penalty of perjury that the statements and facts contained in this declaration are true and correct.  I have personal knowledge of the facts set forth in this declaration. I am authorized to make this declaration and am competent to testify to the matters in this declaration.

**DECLARATION OF BARRY DEGROOT**                                                                **PAGE 1**
83223848;3

2.      I submit this Declaration in support of DLP Real Estate Capital, Inc., DLP Winter Haven Ventures, LLC, Orchard Farms Ventures, LLC, and Marine Creek Ventures, LLC (collectively the "*DLP Entities*") Emergency Motion to Declare Lis Pendens Void in the above-captioned lawsuit (the "*Motion*") and to request expedited consideration of the Motion.

3.      I previously served as a Managing Principal and General Counsel for DLP Capital. In connection with my roles at DLP Capital, I oversaw legal aspects of the firm and its business units, including advising on corporate governance, risk management, capital structuring, and compliance. Through my role with DLP Capital, I am aware of the facts and circumstances surrounding the purported dispute that is the subject of the Motion, as well as the role of the DLP Entities and their relation to DLP Capital.

4.      The DLP Entities were parties to several contracts with certain entities that are now subject to a federal receivership in this lawsuit (the "*Receivership Entities*" and each, a "*Receivership Entity*"), to wit:

a.      DLP Winter Haven Ventures, LLC, a DLP Entity and a Florida limited liability company ("*DLP Winter Haven*") acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity, on October 11, 2021 (the "*Winter Haven Transaction*").

b.      Orchard Farms Ventures, LLC, a DLP Entity and a Florida limited liability company ("*Orchard Farms Ventures*") acquired approx. 100.223 acres, generally located along Shelby Road, west of Rendon Road, City of Fort Worth, County of Tarrant, State of Texas (the "*Orchard Farms Property*") from Orchard Farms Village, LLC ("*Orchard Farms Village*"), a Receivership Entity, on December 22, 2021 (the "*Orchard Farms Transaction*"). The Orchard Farm Transaction included a Participation Agreement with Orchard Farms

**DECLARATION OF BARRY DEGROOT**                                                         **PAGE 2**
83223848;3

Village, and a Development Agreement with Orchard Farms Developments, LLC ("*Orchard Farms Development*"), a Receivership Entity, each dated December 20, 2021.

c. Marine Creek Ventures, LLC, a DLP Entity and a Delaware limited liability company ("*Marine Creek Ventures*") acquired approx. 40.20 acres, generally located at the intersection of Loop 820 and Huffines Boulevard, City of Fort Worth, County of Tarrant, State of Texas (the "*Marine Creek Property*"), from Mansions Apartment Homes At Marine Creek, LLC ("*Mansions*"), a Receivership Entity, on December 23, 2021 (the "*Mansions Creek Transaction*"). The Mansions Creek Transaction included a Participation Agreement with Mansions, a Development Agreement with Marine Creek Developments, LLC ("*Marine Creek Development*"), a Receivership Entity, and a Construction Management Agreement with La Jolla Construction Management, LLC ("*La Jolla*"), a Receivership Entity, each dated as of January 2022. The Mansions Creek Transaction, the Winter Haven Transaction and Orchard Farms Transaction are collectively referred to as the "*DLP Transactions*".

5. Prior to the Receiver's appointment, disputes arose between the DLP Entities and the Receivership Entities. Timothy Barton ("*Barton*") and the Receivership Entities became unresponsive and began defaulting on their ongoing obligations to the DLP Entities. On October 18, 2022, DLP notified Orchard Farms Development, Marine Creek Development, and La Jolla that they (i) were in breach under the Orchard Farms Development Agreement; Marine Creek Development Agreement and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach.

6. This Court appointed Cortney C. Thomas as the Receiver (the "*Receiver*") over the estate of the Receivership Entities, pursuant to (i) the Order Appointing Receiver dated October 18, 2022, (ii) the Order Granting Receiver's Motion to Supplement Order Appointing Receiver dated

November 16, 2022, and (iii) the Order Granting Receiver Motion to Supplement Order Appointing Receiver dated December 13, 2022.

7.      After the Receiver's appointment, the DLP Entities and the Receiver entered into a comprehensive settlement agreement in December 2022, resolving all disputes between the DLP Entities and the Receivership Entities (the "*Settlement Agreement*"). This Court ratified the Settlement Agreement on December 22, 2022. A true and correct copy of the Settlement Agreement is attached to the Motion as Exhibit A.

8.      Promptly upon the Court's ratification of the Settlement Agreement, the DLP Entities satisfied all of their contractual obligations and remitted SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000) to the Receivership estate in reliance on the Receiver's authority and with the express expectation that all disputes pertaining to the DLP Transactions were resolved.

9.      Pursuant to the Settlement Agreement and subsequent court orders, the Receivership Entities released and quit-claim all participating interest in (a) the Orchard Farms Property to Orchard Farms Ventures; and (b) the Mansion Creek Property to Marine Creek Ventures. The DLP Entities are and have been authorized to sell the Orchard Farms and Marine Creek properties unencumbered by any competing claims from the Receivership Entities.

10.      Per the Settlement Agreement and this Court's subsequent ratification, the Receivership Entities expressly "*RELEASED, REMISED, CANCELED, ACQUITTED and DISCHARGED any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by a Receivership Entity against any DLP Entity*."

**DECLARATION OF BARRY DEGROOT**                                                          **PAGE 4**
83223848;3

11.     In preparing for the sale of the Orchard Farms Property and Marine Creek Property (collectively the "***Properties***" and each, a "***Property***"), the DLP Entities discovered that on July 31, 2024, nearly two years after the Settlement Agreement's effective date, Barton filed a lis pendens (the "***Lis Pendens***") as to each Property.

12.     No DLP Entities was served with notice of the filing of these Lis Pendens. The DLP Entities only recently discovered their existence during due diligence for the pending sale.

13.     Facially, the Lis Pendens "*challenge the appointment of receiver and the declaring of Receivership Entities as receivership entities*" but fails to (a) challenge title, or (b) assert an interest or encumbrance on the Properties.

14.     Barton filed the Lis Pendens, in his individual capacity. He is not and has never been in either Properties' chain of title. He has no interest in either Property nor can he claim any encumbrance on them.

15.     Even if a dispute had existed as to title, interest, or encumbrance; such a dispute did not and could not pertain to Barton's title, interest or encumbrance.

16.     Title in the Properties vested in the DLP Entities well before the Receiver's appointment. Neither the Receivership nor the Settlement Agreement unwinds the pre-receivership acquisitions or otherwise adversely affects the DLP Entities' title.

17.     The Receivership Entities did not file a Lis Pendens. Any interest or encumbrance held by any Receivership Entity was released, remised, canceled, acquitted and discharged in 2022 pursuant to the Settlement Agreement.

18.     If a dispute existed as to title, interest or encumbrance, such a dispute was definitively resolved by this Court's ratification of the Settlement Agreement, confirmation of the Receiver's appointment, the Fifth Circuit's affirmation of this Court's appointment of the Receiver and the subsequent ratification of the Receiver's acts.

19.     The due diligence period for the sale of the Orchard Farms property ends on October 1, 2025. The Lis Pendens cloud title and threaten to prevent the sale from closing. Time is of the essence. In order to avoid irreparable harm to the DLP Entities, the DLP Entities respectfully request that the Court set an emergency hearing and rule on the Motion before October 1, 2025,

20.     There are no factual or legal issues that would prevent the Court from granting the DLP Entities' Emergency Motion to Declare Lis Pendens Void. The Lis Pendens were filed without notice, are improper under Texas law, do not pertain to and the underlying disputes have been fully resolved and released by the settlement agreement, which has been ratified by the Court.

21.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ⸺ day of September, 2025.

Barry DeGroot
General Counsel, DLP Capital

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

VS.                                                                              CASE NO. 3:22-CV-2118-X

TIMOTHY BARTON, ET AL.,

     Defendants.

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

THIS SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS ("*Agreement*") is made and entered into by and between Cortney C. Thomas in his capacity as the Court-Appointed Receiver over the estate of the Receivership Entities, as identified in the Order Appointing Receiver dated October 18, 2022 (the "*Receivership Order*"), the Order Granting Receiver's Motion to Supplement Order Appointing Receiver dated November 16, 2022, and the Order Granting Receiver Motion to Supplement Order Appointing Receiver dated December 13, 2022, in the above captioned matter (the "*Receiver*"), including without limitation the entities identified on Exhibit A, attached hereto (collectively, the "*Receivership Entities*"); DLP Real Estate Capital, Inc., a Florida corporation ("*DLP Capital*"); DLP Winter Haven Ventures, LLC, a Florida limited liability company ("*DLP Winter Haven*"); Orchard Farms Ventures, LLC, a Florida limited liability company ("*Orchard Farms Ventures*"); and Marine Creek Ventures, LLC, a Delaware limited liability company ("*Marine Creek Ventures*") and collectively with DLP Capital, DLP Winter Haven, and Orchard Farms Venture, the "*DLP Entities*"). Each of the Receiver, the Receivership Entities and the DLP Entities is sometimes referred to herein as a "*Party*" and collectively as the "*Parties*").

WHEREAS, DLP Winter Haven acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity, on October 11, 2021. The purchase price ($2,000,0000) and the developer fee ($2,200,000) have been paid in full.  That transaction is complete as of approximately May 2022 (collectively, the "*Winter Haven Transaction*").

WHEREAS, Orchard Farms Ventures acquired approx. 100.223 acres, generally located along Shelby Road, west of Rendon Road, City of Fort Worth, County of Tarrant, State of Texas from Orchard Farms Village, LLC ("*Orchard Farms Village*"), a Receivership Entity, on December 22, 2021. The purchase price ($7,856,500) was paid in full.  Pursuant to that certain Participation Agreement dated December 30, 2021, Orchard Farms Ventures granted Orchard Farms Village a participation fee payable upon substantial completion or as otherwise accelerated in accordance therewith (the "*Orchard Farms Participation Agreement*"). Pursuant to that certain Development Agreement dated December 30, 2021, Orchard Farms Ventures engaged Orchard Farms Developments, LLC ("*Orchard Farms Development*"), a Receivership Entity, to provide certain development

67624767;5

services in accordance therewith (the "*Orchard Farms Development Agreement*"). The instrument of grant conveying the acquired property to Orchard Farms Ventures erroneously failed to include approx. 288 square feet (the "*OF Strip*") (collectively, the "*Orchard Farms Transaction*").

WHEREAS, Marine Creek Ventures acquired approx. 40.20 acres, generally located at the intersection of Loop 820 and Huffines Boulevard, City of Fort Worth, County of Tarrant, State of Texas, from Mansions Apartment Homes At Marine Creek, LLC ("*Mansions*"), a Receivership Entity, on December 23, 2021. The purchase price ($10,000,000) was paid in full.  Pursuant to that certain Participation Agreement dated January ___, 2022, Mansion Creek Ventures granted Mansions a participation fee payable upon substantial completion or as otherwise accelerated in accordance therewith the (the "*Marine Creek Participation Agreement*").   Pursuant to that certain Development Agreement dated January ___, 2022, Marine Creek Ventures engaged Marine Creek Developments, LLC ("*Marine Creek Development*"), a Receivership Entity, to provide certain development services in accordance therewith (the "*Marine Creek Development Agreement*"). Pursuant to that certain Construction Management Agreement dated January ___, 2022, Marine Creek Ventures engaged La Jolla Construction Management, LLC ("*La Jolla*"), a Receivership Entity, to provide construction management services in accordance therewith (the "*Marine Creek Construction Management Agreement*")(collectively, the "*Mansions Creek Transaction*" and collectively with the Winter Haven Transaction and Orchard Farms Transaction, the "*DLP Transactions*")).

WHEREAS, Timothy Barton and the Receivership Entities became unresponsive and began defaulting on their ongoing obligations to the DLP Entities well in advance of the Receiver's appointment. On October 18, 2022, DLP notified Orchard Farms Development, Marine Creek Development, and La Jolla that they (i) were in breach under the Orchard Farms Development Agreement; Marine Creek Development Agreement and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach.

WHEREAS, the Receivership Order gives the Receiver the ability, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property," as well as the general powers to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities."  Receivership Order ¶¶ 6(H), 6(J), 39.

WHEREAS, On October 31, 2022, the Parties discussed whether continuation under the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement was feasible, agreed that these agreements likely needed to be terminated, and further agreed thatthe DLP entities should proceed to mitigate their damages by engaging suitable replacement service providers.

DLP SETTLEMENT AGREEMENT                                                                              PAGE 2 OF 7

67624767;5

WHEREAS, each of DLP Capital and the Receiver have independently reviewed the Orchard Farms Participation Agreement and the Mansion Creek Participation Agreement and assessed the value of the Receivership Entities' interests thereunder.

WHEREAS, there are bona fide disputes, disagreements, and controversies between the Parties pertaining to the DLP Transactions; the Parties desire to avoid the trouble, expense and uncertainty of litigation, to terminate all past, present and potential controversies between them pertaining to the DLP Transactions, and to compromise and settle all of their differences pertaining to the DLP Transactions of any type; and the Parties wish to enter into a compromise agreement relating to the Orchard Farms Participation Agreement, the Mansion Creek Participation Agreement and all claims and alleged damages which were or could have been asserted by and among the Parties in connection with the DLP Transactions, without admission by any Party of the merits of the claims, demands, charges, and/or contentions of the others; and

NOW, THEREFORE, as material considerations and inducements to and for the execution of this Agreement, and in consideration of the mutual promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto and their respective past and present parents, subsidiaries, affiliates, predecessors, successors, directors, officers, agents, representatives, employees, and assigns, and their respective heirs, executives, administrators and personal representatives, conditioned on the approval of this Agreement by the Court, hereby contract, covenant, and agree as follows:

1. Within ten (10) days of the execution of this Agreement, Receiver will file a Motion for Ratification of this Agreement ("***Motion for Ratification of the Agreement***"), seeking approval of the Court of the terms contained within the Agreement. The Parties agree that the Receiver need not obtain approval or ratification of the Agreement pursuant to the Receivership Order as outline above but nevertheless agree to seek ratification of the Agreement as outlined herein.

2. The Effective Date of this Agreement shall be the date the Court ratifies this Agreement and enters an order granting the Motion for Ratification of the Agreement.

3. Within fifteen (15) days of the Effective Date, DLP Capital shall:

   (a) remit or cause its affiliate to remit $750,000.00 to the Receiver (the "***Cash Consideration***"); and

   (b) file in the Property Records of Tarrant County, Texas, a non-material correction pursuant to §5.028, Texas Property Code substantially in the form attached hereto as Exhibit B (the "**Corrective Affidavit**").

4. Promptly upon receipt of the Cash Consideration, but in no event more than ten (10) days thereof, the Receiver on behalf of each Receivership Entity shall file instruments in the property records of Tarrant County, Texas releasing and quit-claiming all participating interests in (a) the Orchard Farms property to Orchard Farms Ventures; and (b) the Mansion Creek property to Marine Creek Ventures.

67624767;5

The Parties hereby acknowledge and agree that they are entering this Agreement for the sole and exclusive purpose of compromising and settling any and all claims arising out of the DLP Transactions and that this Agreement is entered into in full and final settlement of all such alleged or unalleged claims or causes of action, as well as any and all alleged or unalleged damages relating thereto. The preceding sentence notwithstanding, all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability pertaining to title of the conveyed property under any of the DLP Transactions (the "*Reserved Claims*") are expressly reserved and survive this Agreement.

The Parties further acknowledge and agree that they have entered into this Agreement for the purpose and intent of fully and finally compromising and resolving doubtful and disputed claims pertaining to the DLP Transactions by and between the Parties and to avoid the uncertainty of future litigation or arbitration. The Parties agree and understand that this is a compromise of doubtful and disputed claims, and that neither (a) the entry into this Agreement, nor (b) any recital contained herein, shall be construed or interpreted as an admission of liability by any party hereto.

By execution hereof, each Party represents, covenants and warrants that: (a) it has not, in whole or in part, conveyed, assigned or in any manner transferred, or subrogated any claims arising out of the DLP Transactions, to any third party other than to their attorneys of record, and (b) its signatory hereto is authorized to act in the capacities indicated.

Conditioned on full performance by the Receivership Entities and the Receiver of the obligations of this Agreement, DLP Capital and each DLP Entity does hereby RELEASE, REMISE, CANCEL, ACQUIT and DISCHARGE any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by any DLP Entity against the Receivership Entities or the Receiver, its past or present parents, predecessors, subsidiaries or affiliates, and their respective past or present officers, directors, shareholders, partners, agents, employees, attorneys, accountants or representatives, and their respective heirs, executors, personal representatives, successors and assigns, and anyone claiming by, through or under any or all of them (collectively, the "*Receivership Affiliated Persons*"), arising out of the DLP Transactions, which existed or may have existed prior to the date of this Agreement, *provided however,* that nothing contained in this paragraph shall release any obligations arising out of this Agreement or the Reserved Claims.

Conditioned on full and timely performance by DLP Capital of the obligations of this Settlement Agreement, the Receivership Entities do hereby RELEASE, REMISE, CANCEL, ACQUIT and DISCHARGE any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by a Receivership Entity against any DLP Entity, its past or present parents, predecessors,

**DLP SETTLEMENT AGREEMENT**                                                                 **PAGE 4 OF 7**

67624767;5

subsidiaries or affiliates, and their respective past or present officers, directors, shareholders, partners, agents, employees, attorneys, accountants or representatives, and their respective heirs, executors, personal representatives, successors and assigns, and anyone claiming by, through or under any or all of them, including without limitation Barry W. DeGroot, Robert Peterson, and Donald Wenner (collectively, the "*DLP Affiliated Persons*"), arising out the DLP Transactions, which existed or may have existed prior to the date of this Agreement, including without limitation the participation fees under the Orchard Farms Participation Agreement and the Mansion Creek Participation Agreement; *provided however,* that nothing contained in this paragraph shall release any obligations arising out of this Agreement or the Reserved Claims.

Each Party completely and unconditionally releases and forever discharges each other from any claim that this Agreement was induced by any fraudulent or negligent act or omission, and/or resulted from any actual or constructive fraud, negligent misrepresentation, conspiracy, breach of fiduciary duty, breach of confidential relationship, or the breach of any other duty under law or in equity. The Parties expressly understand and agree that the exchange of releases does not apply to actions brought by any of them to enforce the terms of this Agreement or the Reserved Claims. The Parties shall reserve and each has reserved all rights against the other to enforce the terms of this Agreement and pursue the Reserved Claims.

The Parties hereby represent and confirm that they have not filed or otherwise initiated any pending lawsuit, complaint, charge, or other proceeding against each other in any local, state, or federal court or agency. The Parties each covenant and agree that they will not at any time hereafter commence, maintain, or prosecute any action at law or otherwise, or assert any claim, against the other for any actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands released herein.

The Parties agree that the rights and obligations covered by this Agreement shall survive execution of these releases.

Receiver and the Receivership Entities further agree to DEFEND, INDEMNIFY AND HOLD HARMLESS the DLP Entities from any claim or cause of action of any kind filed or made against any of them which has been or may subsequently be brought by, through, or on behalf of a Receivership Entity and arising from any claim released under this Agreement. Each DLP Entities, likewise, agrees to DEFEND, INDEMNIFY AND HOLD HARMLESS the Receiver and the Receivership Entities from any claim or cause of action of any kind hereafter filed or made against any of them which has been or may subsequently be brought by, through, or on behalf of any DLP Entity and arising from any claim released under this Agreement. This indemnity is conditioned upon prompt notice by the party claiming a right to indemnity on any such claim to the party against whom indemnity is sought and the party against whom indemnity is sought being given the right to defend the claim on which indemnity is sought. The Parties warrant they are not presently aware of any facts that would give rise to a claim for indemnity under this Section. The right to indemnity in this Section is limited to the Parties, as herein defined, and shall not be construed as granting a right to indemnity in favor of any other entities or persons related to or affiliated with the released parties

All parties to this Agreement will bear their own attorney's fees, expenses and costs in this lawsuit.

The Parties further warrant and represent that they will cooperate fully and execute any and all supplementary documents and to take such additional actions which reasonably may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

If any single section or clause of this Agreement should be found unenforceable, it shall be severed and the remaining sections and clauses shall be enforced in accordance with the intent of this Agreement. Texas law shall govern the validity and interpretation of this Agreement.

The Parties agree that one or more waivers or breaches of any covenant, term, or provision of this Agreement by any party shall not be construed as a waiver of a subsequent breach of the same covenant, term, or provision, or as a waiver or breach of any other covenant, term, or provision.

This Agreement contains the entire understanding between the Parties and supersedes all prior agreements and understandings, oral or written, relating to the subject matter of this Agreement. The Parties expressly acknowledge and agree that no provisions, representations, or warranties whatsoever were made, express or implied, other than those contained in this Agreement and that they are not relying on any statement or communication from the other party other than those expressly contained in this Agreement in deciding to execute this Agreement. This Agreement shall not be modified, amended, or terminated unless such modification, amendment, or termination is executed in writing and signed by authorized representatives of the affected parties. The Parties hereby waive their right to make future oral agreements covering the same subject as this Agreement.

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party. Any ambiguity, doubt or question as to applicability of the Parties' respective releases contained in this Agreement shall be resolved in all events in favor of waiver, release, relinquishment and disavowal of any possible claims. The Parties agree that the waivers, releases, relinquishments and disavowals herein granted shall be with respect to claims, interests, rights, remedies and causes of action known or unknown, matured or unmatured, contingent or direct, existing or hereafter arising. The Parties acknowledge (after full consideration of the consequences and after being fully advised in the premises) that the waiver and relinquishment of their respective claims contained in this Agreement is full and complete, whether or not the factual basis for their respective claims or defenses are currently known to them.

The Parties, and each of them, hereby represent and certify that they: (1) have had an opportunity to read all of this Agreement; (2) have been given a fair opportunity to, and have been advised to, discuss and negotiate the terms of this Agreement by and through their legal counsel; (3) have been given a reasonable time to consider the Agreement; (4) understand the provisions of this Agreement; (5) have had ample opportunity to seek and have received advice from an attorney or other advisors regarding this Agreement or have otherwise waived their right to do so; (6) have determined that it is in their best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation by the other party or its legal counsel or other representative not contained in

**DLP SETTLEMENT AGREEMENT**                                                          **PAGE 6 OF 7**

67624767;5

this Agreement; (8) have had sufficient time to investigate the existence of the claims and other rights hereby released and have satisfied themselves with respect to the same based upon their investigation and the advice of counsel, (9) are fully authorized to execute this Agreement in the capacities in which it is executed and (10) enter into this Agreement knowingly and voluntarily without coercion, duress, or fraud.

The Parties agree that this Agreement is supported by good, valuable, and sufficient consideration.

The Parties understand and agree that the facts in respect of which this Agreement is made may hereafter prove to be other than, or different from the facts now known by either of them or believed by either of them to be true as set forth in this Agreement. The Parties expressly accept and assume the risk of the facts proving to be so different, and each of the them agrees that all of the terms of this Agreement shall be, in all respects, effective and binding, and not subject to termination or rescission by either of them due to any such difference in facts.

The Parties agree that this Agreement may be signed in multiple counterparts, each of which shall be deemed an original for all purposes.

**The Receivership Entities,**

By: _____
Cortney C. Thomas, Receiver

THE STATE OF _Texas_ §

COUNTY OF _Dallas_ §

BEFORE ME, the undersigned authority, on this day personally appeared, Cortney C. Thomas, known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _8th_ day of December 2022.

_____
Notary Public, the State of _Texas_

KIMBERLEY OROURKE
Notary Public, State of Texas
Comm. Expires 05-16-2026
Notary ID 6283194

67624767;5

**DLP Real Estate Capital, Inc.,**
a Florida Corporation.

By:

Name: Barry W. DeGroot
Its:    Secretary

## THE STATE OF FLORIDA§

## COUNTY OF ST. JOHNS§

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Secretary of DLP Capital, known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

*Sandra Lee Muise*

Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**DLP SETTLEMENT AGREEMENT**

**DLP Winter Haven Ventures LLC,**
a Florida limited liability company

By: 

Name: Barry W. DeGroot
Its:     Vice President


**THE STATE OF <u>FLORIDA</u>§**

**COUNTY OF <u>ST. JOHNS</u>§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of DLP Winter Haven Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8ᵗʰ day of December 2022.

Sandra Lee Muise

Notary Public, the State of Florida

> SANDRA LEE MUISE
> Notary Public-State of Florida
> Commission # HH 304384
> My Commission Expires
> August 23, 2026

**DLP SETTLEMENT AGREEMENT**

**Orchard Farms Ventures, LLC,**
a Florida limited liability company

By: _____

Name: <u>Barry W. DeGroot</u>

Its:     <u>Vice President</u> **THE STATE OF <u>FLORIDA</u>§**

**COUNTY OF <u>ST. JOHNS</u>§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of Orchard Farms Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

Sandra Lee Muise

Notary Public, the State of Florida



SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**DLP SETTLEMENT AGREEMENT**

**Marine Creek Ventures, LLC,**
a Delaware limited liability company

By: _____
Name: Barry W. DeGroot
Its:    Vice President


**THE STATE OF <u>FLORIDA</u>§**

**COUNTY OF <u>ST. JOHNS</u>§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of Marine Creek Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

_____
Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**DLP SETTLEMENT AGREEMENT**

**Exhibit A**
**Receivership Entities**

## 1. Receivership Entities

a.    Wall007, LLC,

b.    Wall009, LLC,

c.    Wall010, LLC,

d.    Wall011, LLC,

e.    Wall012, LLC,

f.    Wall016, LLC,

g.    Wall017, LLC,

h.    Wall018, LLC,

i.    Wall019, LLC,

j.    Carnegie Development, LLC,

k.    DJD Land Partners, LLC,

l.    LDG001, LLC,

m.    BM318 LLC;

n.    D4DS LLC;

o.    D4FR LLC;

p.    D4KL LLC;

q.    Enoch Investments LLC;

r.    FHC Acquisition LLC;

s.    Goldmark Hospitality LLC;

t.    JMJ Acquisitions LLC;

u.    JMJ Development LLC;

v.    JMJAV LLC;

w.    JMR100 LLC;

x.    Lajolla Construction Management LLC;

y.    Mansions Apartment Homes at Marine Creek LLC;

z.    MO 2999TC, LLC;

aa.    Orchard Farms Village LLC;

bb.    Villita Towers LLC; and

cc.    126 Villita LLC

(collectively, "*Receivership Entities*").

**Exhibit B**

**Correction Affidavit**

**(Non-material correction pursuant to §5.028, Texas Property Code)**

---

Date:     _____
Affiant:  _____


Description of Original Instrument (include name of Instrument, date, parties and recording information):

Special Warranty Deed from Orchard Farms Village, LLC, a Texas limited liability company to Orchard Farms Ventures LLC, a Florida limited liability company, dated December 31, 2021, recorded March 8, 2022 at under Clerk's File No. D222061225, of the Public Records of Tarrant County, Texas.

Affiant on oath swears that the following statements are true and within the personal knowledge of Affiant:

1.  My name is _____.  My address is _____. I am over the age of eighteen (18) years and am otherwise competent to make this Correction Affidavit.

2.  I am the _____ [title/capacity] of _____[name of entity] which was the grantee named in that certain deed executed by _____ dated _____ and recorded under Clerk's File No. _____, Official Public Records, _____ County, Texas.

3.  I am making this Affidavit as a correction instrument pursuant to §5.028 of the Texas Property Code, with regard to the following unintended error in the Original Instrument:

    legal description included two incorrect distance measurements in the metes and bounds description


4.  The Original Instrument should be corrected with respect to the error described above, this being a non-material change to the Original Instrument:

    1)  metes and bounds call of "N 10 14'41"W, a distance of 75.27 feet" is revised to "N 10 14'41"W, a distance of 73.53 feet"; and
    2)  metes and bounds call of "S 10 14'41"E, a distance of 724.61 feet" is revised to "S 10 14'41"E, a distance of 722.87 feet".

    The corrected legal description is documented in the legal description attached to this Affidavit as Exhibit "A".


5.  I have given notice of this correction of the Original Instrument by sending a copy of this Correction Affidavit by mail to each party to the Original Instrument in accordance with §5.028 (d) (2) of the Texas Property Code.


AFFIANT:

_____

67624037.1

STATE OF _____                                 §

COUNTY OF _____                              §

       SWORN TO AND SUBSCRIBED before me on this _____ day of \_\_\_\_, 20\_\_, by _____, to certify which witness my hand and seal of office.


My Commission Expires:                          _____
                                                Notary Public, State of \_\_\_

                                                Notary Name Printed:
                                                _____

**CORRECTION AFFIDAVIT AS TO A RECORDED ORIGINAL INSTRUMENT**
**(Texas)**

Exhibit A
Legal Description of Land:
(Orchard Farms)

BEING a tract of land situated in Block 20 and Block 23 of the Shelby County School Land Survey, Abstract No. 1375, City of Fort Worth, Tarrant County, Texas, being a portion of that tract of land as described in deed to Wall 007, LLC, recorded in County Clerk's File No.D217259397, Official Public Records, Tarrant County, Texas (OPRTCT), and being more particularly described as follows:

BEGINNING at a mag nail with shiner stamped JPH LAND SURVEYING found in Rendon Road (R.O.W. varies) at the southeast corner of the final plat of Everman Junior High School #2 Addition, an addition to the City of Fort Worth, Tarrant County, Texas as recorded in County Clerk's File No. D209253723, OPRTCT and the most easterly northeast corner of said Wall 007 tract;

THENCE S 00 29'40" E, within said Rendon Road, along the east line of said Wall 007 tract, a distance of 866.90 feet to the southeast corner of the herein described tract of land, from which a 1/2" rebar capped found at the southeast corner of said Wall 007 tract bears S 00 29'40" E, 231.90 feet;

THENCE departing said Rendon Road, across said Wall 007 tract, as follows:

S 87 39'08" W, a distance of 54.11 feet to the beginning of a curve to the left, radial to said line;

Southeasterly, along said curve, having a radius of 1755.00 feet, a central angle of 01 37'57", an arc distance of 50.00 feet, and a chord that bears S 03 09'51" E, 50.00 feet to the end of said curve;

S 39 46'03" W, non-tangent to said curve, a distance of 21.58 feet;

S 83 4537" W, a distance of 110.25 feet to the beginning of a tangent curve to the left;

Southwesterly, along said curve, having a radius of 1205.00 feet, a central angle of 07 53'33", an arc distance of 165.99 feet, and a chord that bears S 79 48'50" W, 165.86 feet to the end of said curve;

S 75 52'03" W, tangent to said curve, a distance of 169.27 feet to the beginning of a tangent curve to the right;

Southwesterly, along said curve, having a radius of 1095.00 feet, a central angle of 13 33'42", an arc distance of 259.18 feet, and a chord that bears S 82 38'54" W, 258.58 feet to the end of said curve;

S 89 25'45" W, tangent to said curve, a distance of 286.15 feet; N

45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 115.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 215.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 60.00 feet;

**N** 45 34'15" W, a distance of 14.14 feet;

**N** 00 34'15" W, a distance of 205.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

**N** 00 34'15" W, a distance of 50.00 feet;

**N** 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 200.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

**N** 45 34'15" W, a distance of 14.14 feet;

**N** 00 34'15" W, a distance of 118.00 feet;

S 89 25'45" W, a distance of 50.00 feet;

S 44 25'45" W, a distance of 14.14 feet;

S 89 25'45" W, a distance of 1015.66 feet;

**N** 50 24'28" W, a distance of 15.28 feet;

**N** 10 14'41" W, a distance of 73.53 feet;

S 79 45'19" W, a distance of 166.00 feet;

S 10 14'41" E, a distance of 722.87 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 81.44 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 50.72 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 83.47 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 16.23 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 83.47 feet;

N 50 24'28" W, a distance of 15.28 feet;

67624937.1

S 89 25'45" W, a distance of 50.72 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 49.46 feet to the beginning of tangent curve to left;

Southwesterly, having a radius of 525.00 feet, a central angle of 03 41'01", an arc distance of 33.75 feet, and a chord that bears S 87 35'14" W, 33.75 feet to the end of said curve;

N 52 31'21" W, non-tangent to said curve, a distance of 14.80

feet; S 83 46'44" W, a distance of 16.04 feet;

S 36 03'24" W, a distance of 13.82 feet to the beginning of a non-tangent curve to the left;

Southwesterly, along said curve, having a radius of 525.00 feet, a central angle of 02 03'25", an arc distance of 18.85 feet, and a chord that bears S 80 47'01" W, 18.85 feet to the end of said curve;

S 79 45'19" W, tangent to said curve, a distance of 63.17

feet; N 55 14'41" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 50.00 feet;

S 34 45'19" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 111.00 feet to a point in the west line of said Wall 007 tract and the east line of Tract II as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, from which a 5/8" rebar capped JACOBS found at the southwest corner of said Wall 007 tract and an angle point in the east line of said Crimson Ridge Land Partners Tract II bears S 10 14'41" E, 489.49 feet;

THENCE N 10 14'41" W, along the west line of said Wall 007 tract and the east line of said Crimson Ridge Land Partners Tract II and Tract I as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, a distance of 1945.20 feet to a 1/2" rebar found at the northeast corner of said Crimson Ridge Land Partners Tract I and the southeast

67624937;1

corner of a tract of land as described in deed to Lieven J. Van Riet, recorded in Volume 7229, Page 809, Deed Records, Tarrant County, Texas;

THENCE N 10 14'21" W, along the west line of said Wall 007 tract and the east line of said Riet tract, a distance of 189.63 feet (deeds 189.63 feet & 189.74 feet) to a 1/2" rebar found in the south line of Shelby Road (R.O.W. varies);

THENCE N 10 14'55" W, along the west line of said Wall 007 tract and within said Shelby Road, a distance of 30.53 feet to a 1" rebar found at the most westerly northwest corner of said Wall 007 tract;

THENCE within said Shelby Road, along the north line of said Wall 007 tract, as follows:

N 89 59'58" E, a distance of 101.56 feet to a 1" rebar found;

N 10 15'06" W, a distance of 28.88 feet to a point for corner;

N 89 28'44" E, a distance of 644.79 feet to a corner of said Wall 007 tract and the northwest corner of a tract of land as described in deed to Bean Electrical, Inc., recorded in County Clerk's File No. D21513149, OPRTCT;

THENCE S 00 38'25" E, departing said Shelby Road, along a reentrant line of said Wall 007 tract and the west line of said Bean Electrical tract, at a distance of 28.45 feet (deeds 28.45 & 28.38 feet) passing a 1" rebar found, continuing a total distance of 657.00 feet to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southwest corner of said Bean Electrical tract;

THENCE N 89 3226" E, along a north line of said Wall 007 tract, the south line of said Bean Electrical tract, and the south line of a tract of land as described in deed to Michael E. Cleveland and Carolyn G. Cleveland, recorded in County Clerk's File No. D205045974, OPRTCT, a distance of 660.30 feet (deeds 660.30 feet 659.00 feet) to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southeast corner of said Cleveland tract;

THENCE N 00 32'37" W, along a reentrant line of said Wall 007 tract and the east line of said Cleveland tract, at a distance of 641.1O feet passing a 1/2" rebar found continuing a total distance of 656.96 feet (deeds 656.96 feet & 657.00 feet) to a point for corner in said Shelby Road at a corner of said Wall 007 tract and the northeast corner of said Cleveland tract;

THENCE N 89 31'1O" E, within said Shelby Road, along the north line of said Wall 007 tract, a distance of 403.83 feet to a point for corner at the most northerly northeast corner of said Wall 007 tract and the northwest corner of said Everman Junior High School #2 Addition, from which a mag nail with shiner stamped JPH LAND SURVEYING found at the northeast corner of said Addition bears N 89 31 '10" E, 1571.46 feet (plat 1571.58 feet), and a 5/8" rebar capped JACOBS found bears S 00 51'10" E, 15.77 feet;

THENCE departing said Shelby Road, along the line common to said Wall 007 tract and said Everman Junior High School #2 Addition, as follows:

S 00 31'03" E, at a called distance of 80.40 feet passing the south line of said Shelby Road and the northwest corner of Lot 1, Block 1 of said Everman Junior High School #2 Addition, continuing a total distance of 260.76 feet (deed 260.76 feet, plat 260.90 feet) to a 1/2" rebar capped JPH LAND

Page **6** of **7**

67624937;1

SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 82 10' E, 0.25 feet;

S 45 30'57" E, a distance of 1809.96 feet (deed 1809.96 feet, plat 1810.00 feet) to a 1/2" rebar capped JPH LAND SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 67 50' E, 0.20 feet;

N 89 30'20" E, at a distance of 232.75 feet (deed 232.75 feet, plat 232.89 feet) passing a 1/2" rebar capped JPH LAND SURVEYING found at the southeast corner of said Lot 1, Block 1 and the west line of said Rendon Road, continuing a total distance of 291.04 feet (deed 291.04 feet, plat 291.06 feet) to the POINT OF BEGINNING and containing 4,365,714 square feet or 100.223 acres of land.

67624937;1