## <u>RELEASE OF RECORDED LIS PENDENS</u>

STATE OF TEXAS                          §
                                        §
COUNTY OF DALLAS                        §

WHEREAS, on or about March 14, 2022, a Notice of Lis Pendens ("Lis Pendens") was filed in the real property records of Dallas County, Texas as document number 202200070336 which provided notice that a lawsuit styled *JMJ Development, LLC v. Tamamoi, LLC and 3820 Illinois LLC*, Cause No. DC-22-02622 (the "State Court Case") affected certain property described in **Exhibit A** and that JMJ Development, LLC had claim to this property.

WHEREAS on September 23, 2022, the SEC filed suit against Tim Barton, *SEC v. Barton et al.,* Cause No. 3:22-cv-02118-X, pending in the United States District Court for the Northern District of Texas. On October 18, 2022, Cort Thomas was appointed as Receiver ("Receiver") for multiple entities owned or controlled by Timothy Barton, including JMJ Development, LLC. Following vacatur of the Initial Receivership Order by the Fifth Circuit Court of Appeals, Judge Starr reappointed the Receiver on November 29, 2023 (the "Receivership Court") over a substituted set of entities, including JMJ Development, LC. A copy of the Receivership Order is attached as **Exhibit B**.

WHEREAS under the Receivership Order the Receiver is the only person with authority to act for or on behalf of JMJ Development, LLC.

WHEREAS on May 13, 2024, the Receiver entered into a Settlement and Release Agreement (the "Settlement Agreement") on behalf of JMJ Development, LLC ("JMJ") with Tamamoi, LLC ("Tamamoi") and 3820 Illinois, LLC (the "3820 Illinois" together with Tamamoi the "Tamamoi Parties").

WHEREAS on August 14, 2024, the Receivership Court approved the Settlement Agreement, whereby all claims, with respect to the property in Exhibit A, by and between the Receiver and the Tamamoi Parties were released.

WHEREAS on September 6, 2024, the Receiver and the Tamamoi Parties filed a Joint Motion to Dismiss with Prejudice in the State Court Case.

NOW THEREFORE the undersigned hereby RELEASES the Lis Pendens dated March 14, 2022, recorded in the Official Records of Dallas County, Texas, under document number 202200070336.

[signature on next page]



**RELEASE OF RECORDED LIS PENDENS**                                          1

SIGNED this 2th day of September 2024.

By: _____
CORTNEY C. THOMAS, RECEIVER

## ACKNOWLEDGMENT

STATE OF TEXAS                    §
                                 §
COUNTY OF DALLAS                 §

This instrument was acknowledged before me by Cortney C. Thomas, a person personally known to me this 12th day of September, 2024.



Notary Public, State of Texas

**After recording, please return to:**
**Cort Thomas**
**BROWN FOX PLLC**
**8111 Preston Road, Suite 300**
**Dallas, Texas 75225**
**cort@brownfoxlaw.com**

**RELEASE OF RECORDED LIS PENDENS**                                    **3**

**EXHIBIT A**
**Property Description**

EXHIBIT "A"
Property Description

BEING a 6.46 acre tract of land situated in the R. F. Smith Survey, Abstract No. 1376 in the City of Dallas, Dallas County, Texas, and being a portion of that certain tract of land conveyed in Warranty Deed to Wilmer-Hutchins Independent School District recorded in Volume 2660, Page 450, Deed Records, Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2 inch iron rod set for the Northwest corner of said Wilmer-Hutchins Independent School District tract, said point being the intersection of the Northeast right-of-way line of Missouri-Kansas-Texas Railway Company of Texas (a 100' right-of-way) with the Southwest right-of-way line of Linfield Drive (a 50 right-of-way);

THENCE North 60 degrees 50 minutes 00 seconds East, along the common line of said Wilmer-Hutchins Independent School District tract, and the South right-of-way line of said Linfield Drive, a distance of 147.27 feet to a 1/2 inch iron rod set for corner, said point being in the intersection of the Southeast right-of-way line of Linfield Drive with the Southwest right-of-way line of Illinois Avenue (a variable width right-of-way);

THENCE South 68 degrees 54 minutes 01 second East along the common line of said Wilmer-Hutchins Independent School District tract, and the Southwest right-of-way line of said Illinois Avenue, a distance of 147.83 feet to a TX DOT Monument found for corner;

THENCE South 76 degrees 12 minutes 10 seconds East, continuing along the common line of said Wilmer-Hutchins Independent School District tract, and said Southwest right-of- way line of said Illinois Avenue, a distance of 38.87 feet to a TX DOT Monument found for corner, said point being the intersection of the Southwest right-of-way line of said Illinois Avenue with the Southwest right-of-way of May Forge Drive (a variable width right-of- way), same being the North corner of that certain tract of land dedicated to the State of Texas, by deed recorded in Volume 70021, Page 1241, of said Deed Records;

THENCE South 48 degrees 24 minutes 28 seconds East along the common line of said Wilmer-Hutchins Independent School District tract, and the South right-of-way line of said May Forge Drive, a distance of 75.51 feet to a DC DOT Monument found for corner;

THENCE South 56 degrees 02 minutes 40 seconds East, through the interior of said Wilmer-Hutchins Independent School District tract, and along the Southwest right-of-way line of said May Forge Drive, a distance of 328.14 feet to a DC DOT monument found for corner;

EXHIBIT "A", Page 1

LOAN TITLE TAMAMOI 012

THENCE South 30 degrees 53 minutes 07 seconds East, through the interior of said Wilmer-Hutchins Independent School District tract, and along said Southwest right-of-way of said May Forge Drive, a distance of 177.34 feet to a 1/2 inch iron rod set for corner, said point being the Southeast corner of the herein-described tract, same being the Southwest corner of said R.O.W. dedication as recorded in Volume 70021, Page 1241, same being in the East line of said Wilmer-Hutchins Independent School District tract, same being in the North line of a 12' alley, as dedicated on Linfield Park, an Addition to the City of Dallas, Dallas County, Texas, according to the map thereof recorded in Volume 17, Page 405, Map Records, Dallas County, Texas;

THENCE South 60 degrees 00 minutes 00 seconds West along the common line of said Wilmer-Hutchins Independent School District tract, and said 12 foot alley, a distance of 575.84 feet to a 1/2 inch iron rod set for corner from which a 1/2 inch iron rod bears South 88 degrees 18 minutes 34 seconds East 0.34 feet, said point being the Southwest corner of said Wilmer-Hutchins Independent School District tract same being the Northwest corner of said 12 foot alley, same being in the Southeast right-of-way line of aforesaid Missouri- Kansas-Texas Railway Company of Texas;

THENCE North 18 degrees 44 minutes 00 seconds West along the common line of said Wilmer-Hutchins Independent School District tract and said Missouri-Kansas-Texas Railway Company of Texas, a distance of 701.40 feet to the POINT OF BEGINNING, and containing 281,364 square feet or 6.46 acres of computed land, more or less.

SAVE AND EXCEPT that 0.185 acre tract of land designated as the Smith Family Cemetery in Agreed Final Judgment filed 11/30/2015, under Cause No. DC-15-05099, District Court of Dallas County, Texas as set out in Affidavit filed 05/31/2016, recorded in cc# 201600144377, Real Property Records, Dallas County, Texas and being further described as follows:

BEING a 0.185-acre tract of land in the Robinson F. Smith Survey, Abstract No. 1376, in The City of Dallas, Dallas County, Texas, and being situated in a 6.46-acre tract of land described in the Deed Without Warranty executed on the 21st day of July, 2010, by Adam Medrano, President of the Board of Trustees of the Dallas Independent School District to ADI Engineering, Inc. and filed on September 2, 2010, at County Clerk's File No. 201000225558 of the Official Public Records of Dallas County, Texas, and also being part of a 0.22-acre tract for the Family Grave Yard set off out of the land of the estate of Thomas and Polly Smith, deceased for the common use of their heirs as described and shown on the plat of the lands of Estate of Thomas and Polly Smith with their subdivisions as made by the Commissioners chosen by the heirs of said Smith to settle said estate and divide the lands thereof on May 19th, 1877 as surveyed by R. M. Cook, County Surveyor, as said plat and descriptions appear in Volume 36, at Page 301 of the Deed Records of Dallas County, Texas, said 0.185-acre tract of land being more particularly described as follows:

COMMENCING at a 1/2 inch steel rod with a red plastic cap stamped RPLS 3688 (Hugh E. Peiser, RPLS No. 3688) found on September 22, 2015, marking the intersection of the

EXHIBIT "A", Page 2

LOAN TITLE TAMAMOT 013

Southwesterly right-of-way line of Linfield Road (a fifty-foot right-of-way) with the Southwesterly right-of-way line of Illinois Avenue (a variable width right-of-way) and being the most Northerly corner of the 6.46-acre tract of land cited above and having coordinates of:

X = 2,503,711.23 feet, Y = 6,946,948.89 feet

THENCE South 69 degrees 59 minutes 41 seconds East with the Southwesterly right-of-way line of Illinois Avenue for a distance of 147.83 feet or 53.22 varas to the remnants of a concrete monument found on September 22, 2015;

THENCE South 77 degrees 17 minutes 50 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 38.87 feet or 13.99 varas;

THENCE South 49 degrees 30 minutes 08 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 6.46 feet or 2.33 varas to a point on the Northerly line of the Grave Yard tract for the POINT OF BEGINNING of the herein described 0.185-acre tract and having coordinates:

X = 2,503,893.02 feet, Y = 6,946,885.54 feet

THENCE South 49 degrees 30 minutes 08 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 69.05 feet or 24.86 varas to a 3 1/2 inch brass disk embedded in concrete and inscribed "TEXAS HIGHWAY DEPARTMENT R.O.W." found on September 22, 2015;

THENCE South 57 degrees 08 minutes 20 seconds East continuing with the Southwesterly right-of-way line of Illinois Avenue for a distance of 10.56 feet or 3.80 varas to a point on the Easterly line of the Grave Yard tract;

THENCE South 00 degrees 56 minutes 58 seconds East with said Easterly line of the Grave Yard tract for a distance of 60.94 feet or 21.94 varas to the Southeast corner thereof;

THENCE South 89 degrees 03 minutes 02 seconds West with the Southerly line of the Grave Yard tract for a distance of 85.83 feet or 30.90 varas to the Southwest corner thereof;

THENCE North 00 degrees 56 minutes 58 seconds West with the Westerly line of the Grave Yard tract for a distance of 112.53 feet or 40.51 varas to the Northwest corner thereof;

THENCE North 89 degrees 03 minutes 02 seconds East with the Northerly line of the Grave Yard tract for a distance of 25.30 feet or 9.11 varas to the PLACE OF BEGINNING and Containing 8,049 square feet or 0.185 acres of land.

EXHIBIT "A", Page 3

Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
04/30/2018 02:48:48 PM
$62.00



201800113116

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> *Plaintiff,* <br><br> v. <br><br> TIMOTHY BARTON, <br> CARNEGIE DEVELOPMENT, LLC, <br> WALL007, LLC, <br> WALL009, LLC, <br> WALL010, LLC, <br> WALL011, LLC, <br> WALL012, LLC, <br> WALL016, LLC, <br> WALL017, LLC, <br> WALL018, LLC, <br> WALL019, LLC, <br> HAOQIANG FU (a/k/a MICHAEL FU), <br> STEPHEN T. WALL, <br><br> *Defendants,* <br><br> DJD LAND PARTNERS, LLC, and <br> LDG001, LLC, <br><br> *Relief Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:22-CV-2118-X |

## ORDER APPOINTING RECEIVER

For the reasons set out in a memorandum opinion and order filed today, the Court enters the following order.

**WHEREAS** this matter has come before this Court upon motion of Plaintiff Securities and Exchange Commission ("SEC") to appoint a receiver in the above-captioned action; and,

1

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities (defined below);

**WHEREAS** the Court finds that: (a) there is a clear necessity for the receivership to protect defrauded investors' interest in property; (b) legal and less drastic equitable remedies are inadequate; and (c) the benefits of a receivership outweigh the burdens on the affected parties.

**WHEREAS** the Court finds that: (a) a receiver is necessary to manage the Receivership Entities' properties to preserve and protect the value of such properties; (b) Defendant Timothy Barton ("Barton") has misused and mismanaged the Receivership Entities' properties and has, and is likely to continue to, misuse, dissipate and/or conceal investor funds and assets obtained with, or that otherwise benefited from, investor funds; (c) certain Receivership Entities and their assets are subject to liens, lawsuits, and foreclosures that threaten to further diminish their value without the protection of a receiver that would have the power to stay litigation and foreclosures, among other powers; (d) there is a substantial risk that Barton, the Receivership Entities, and other entities that Barton directly or indirectly controls do not hold assets sufficient to satisfy the potential disgorgement of ill-gotten gains for the benefit of investors; (e) absent a receiver to manage, maximize, and protect the value of the Receivership Entities' assets, the investors' interest in these properties is at substantial risk; and (f) these benefits outweigh the burden on Barton.

**WHEREAS** the Court finds that each of the Receivership Entities received or

2

benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation.

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Entities, and venue properly lies in this district.

**WHEREAS**, the Court finds that the SEC has brought this action to enforce the federal securities laws, in furtherance of the SEC's police and regulatory powers, and the relief sought by the SEC and provided in this Order is in the public interest by preserving the illicit proceeds of fraudulent conduct, penalizing past unlawful conduct and deterring future wrongdoing, and is not in furtherance of a pecuniary purpose, and therefore, the Court concludes that the entry of this Order is excepted from the automatic stay pursuant to 11 U.S.C. §362(b)(4).

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following entities, each of which received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation (collectively, "Receivership Entities"):

2. 126 Villita, LLC

3. 2999TC Acquisitions LLC

4. 2999TC JMJ CMGR, LLC (Delaware)

5. AVG West, LLC

6. BEE2019, LLC

3

7.      BM318, LLC

8.      Broadview Holdings Trust

9.      Carnegie Development, LLC

10.     D4DS LLC

11.     D4FR LLC

12.     D4IN, LLC (Texas)

13.     D4KL, LLC

14.     D4MC, LLC (Texas)

15.     D4OP, LLC

16.     DJD Land Partners, LLC

17.     Enoch Investments, LLC

18.     FHC Acquisition, LLC

19.     Gillespie Villas, LLC

20.     Goldmark Hospitality, LLC

21.     HR Sterling, LLC

22.     JMJ Acquisitions, LLC

23.     JMJ Development LLC (f/k/a JMJ Development, Inc.)

24.     JMJ Hospitality, LLC

25.     JMJ VC Management, LLC

26.     JMJAV, LLC

27.     JMJD4, LLC (Delaware)

28.     JMR100, LLC

29.     LaJolla Construction Management, LLC

30. LC Aledo TX, LLC

31. LDG001, LLC

32. Lynco Ventures, LLC

33. Mansions Apartment Homes at Marine Creek, LLC

34. Marine Creek SP, LLC

35. MO 2999TC, LLC

36. Northstar PM, LLC (Texas)

37. Orchard Farms Village, LLC

38. Ridgeview Addition, LLC (Texas)

39. Seagoville Farms, LLC

40. SF Rock Creek, LLC

41. TC Hall, LLC

42. Titan Investments, LLC a/k/a Titan 2022 Investments, LLC

43. Venus59, LLC

44. Villita Development, LLC

45. Villita Towers, LLC

46. WALL007, LLC

47. WALL009, LLC

48. WALL010, LLC

49. WALL011, LLC

50. WALL012, LLC

51. WALL016, LLC

52. WALL017, LLC

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 6 of 28   PageID 15214

53.    WALL018, LLC

54.    WALL019, LLC

55.    WRL2019, LLC (Texas)

2.    Until further Order of this Court, Cortney C. Thomas is hereby appointed to serve without bond as receiver (the "Receiver") of the Receivership Entities.

3.    The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, trustees, managers and general and limited partners of the entity Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Rule 66 of the Federal Rules of Civil Procedure.

## I.    GENERAL POWERS AND DUTIES OF RECEIVER

4.    The trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys and other agents of the Receivership Entities are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operations of the Receivership Entities and shall pursue and preserve all of their claims.

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 7 of 28   PageID 15215

5.      No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.

6.      Subject to the specific provisions in Sections II through XII below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B.      To take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto;

C.      To manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court;

D.      To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.      To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Entities;

F.      To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 8 of 28   PageID 15216

G.     To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property;

H.     Enter into and cancel contracts and purchase insurance as the Receiver deems necessary or advisable;

G.     The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.     To bring such legal actions based in law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.     To pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities; and,

K.     To take such other action as may be approved by this Court.

## II.     ACCESS TO INFORMATION

7.     The individual Receivership Entities and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the entity Receivership Entities, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers.

8.     Within ten (10) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and

8

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 9 of 28   PageID 15217

any other agents or contractors of the Receivership Entities; and, (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Entities.

9.      Within twenty (20) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting, with complete documentation, covering the period from January 1, 2017 to the present:

A.      Of all Receivership Property, wherever located, held by or in the name of the Receivership Entities, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage, or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage, or other financial institution;

B.      Identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Entities have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Entities;

C.      Identifying all credit, bank, charge, debit, or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve (12) months;

D.      Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.      Of all funds received by the Receivership Entities, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint. The submission must clearly identify, among other things,

9

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 10 of 28   PageID 15218

all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F.      Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

G.      Of all transfers of assets made by any of them.

10.      Within thirty (30) days of the entry of this Order, the Receivership Entities shall provide to the Receiver and the SEC copies of the Receivership Entities' federal income tax returns for the years 2017 through 2021 with all relevant and necessary underlying documentation.

11.      The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities.

12.      The Receivership Entities are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### III.   ACCESS TO BOOKS, RECORDS, AND ACCOUNTS

13.      The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records, and all other documents or instruments relating to the Receivership Entities. All persons and entities having

control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

14.     The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, email, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

15.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, any of the Receivership Entities that receive actual notice of this Order by personal service, email, facsimile transmission, or otherwise shall:

A.     Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C.     Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.     Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 12 of 28   PageID 15220

## IV.     ACCESS TO REAL AND PERSONAL PROPERTY

16.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

17.     The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, email, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

18.     The Receivership Entities, all persons acting on behalf of any Receivership Defendant, and any person who receives actual or constructive notice of this Order who has or had possession or control over any Receivership Assets, is directed to:

>  A.     Hold and retain any such Receivership Assets that are within his or her control and prohibit any person or entity from assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning,

12

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 13 of 28   PageID 15221

pledging, selling, spending, transferring, or withdrawing any such Asset except:

    1.     As directed by further order of the Court; or

    2.     As directed in writing by the Receiver.

B.     Within five (5) business days after being served a copy of this Order, provide the Receiver a sworn statement setting forth:

    1.     The account number and other identifying information for any such Receivership Asset belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Defendant;

    2.     The balance of each such account, or a description of the nature and value of such Asset as of the close of business on the day on which this Order is received, and, if the account or other Asset has been closed or removed, or more than $5,000 withdrawn or transferred from it, on or after March 1, 2021, the date of the closure or removal of the funds, the total funds removed or transferred, and the name of the person or entity to whom such account or other Asset was remitted;

    3.     All keys, codes, and passwords, entry codes, combinations to locks, and information or devices required to open or gain access to any Asset or Document, including, but not limited to, access to the business premises, computer servers, networks, or databases, or telecommunications systems or devices;

    4.     The identification and location of any safe deposit box, commercial mailbox, or storage facility belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity, and if the safe deposit box, storage facility, commercial mailbox, or storage facility has been closed or removed, the date closed or removed;

    5.     Within five (5) business days of a written request from the Receiver, provide the Receiver copies of all Documents relating to each Receivership Asset, including, but not limited to account applications, statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 14 of 28   PageID 15222

19.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

20.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

21.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate.

## V.     REPATRIATION OF ASSETS AND DOCUMENTS

22.     Immediately upon service of this Order, any person or entity with possession or control over any Receivership Assets shall:

A.     Take such steps as are necessary to transfer to the United States all Documents and Assets that are located outside the United States and belong to, are for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity; and

B.     Hold and retain all repatriated Assets and prevent the disposition, transfer, or dissipation of such Assets except as required by this Order.

14

23.    Receivership Entities, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from taking any action that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including:

A.    Sending any statement, letter, fax, email or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time as all Assets have been fully repatriated according to Section VIII of this Order; or

B.    Notifying any trustee, protector, or other agent of any Defendant or Receivership Entity of the existence of this Order, or of the fact that repatriation is required under a court Order, until such time as all Assets have been fully repatriated according to Section VIII of this Order.

## VI.    NOTICE TO THIRD PARTIES

24.    Defendants and the Receivership Entities shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, subsidiary, division, and representative of any Defendant or Receivership Defendant. Within ten (10) business days following service of this Order, Defendants and Receivership Entities shall serve on the Receiver a declaration identifying the name, title, address, telephone number, date of service, and manner of service of each person Defendants or Receivership Entities served with a copy of this Order in compliance with this provision.

15

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 16 of 28   PageID 15224

25.     Copies of this Order may be served by the Receiver by any means, including U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of the Receiver, by any law enforcement agency, or by process server, upon any person, including financial institutions, that may have possession, custody, or control over any Asset or Document belonging to, for the use or benefit of, under the control of, or subject to access by any Receivership Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall constitute service upon the entire financial institution.

26.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

28.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government

offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

29.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.

30.     The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Entities, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

31.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership

Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII.   INJUNCTION AGAINST INTERFERENCE WITH RECEIVER

32.    The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.    Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to concealing, destroying, or altering records or information;

C.    Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;

D.    Create, operate, or exercise any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, e-mail address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities; or,

18

E. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

## VIII. COOPERATION WITH THE RECEIVER

33. Defendants and Receivership Entities, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or indirectly and all persons who receive actual notice of this Order, shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities. This cooperation and assistance shall include, but is not limited to:

A. Providing information to the Receiver as directed above or that the Receiver deems necessary to exercise the authority and discharge the responsibilities delegated to the Receiver under this Order;

B. Advising all persons who owe money to the Receivership Entities that all debts should be paid directly to the Receiver; and

C. Transferring funds at the Receiver's direction and producing Documents related to the Assets and sales of the Receivership Entities. The entities obligated to cooperate with the Receiver under this provision include financial institutions and persons that have transacted business with the Receivership Entities. The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## IX. STAY OF LITIGATION

34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

19

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, parent or affiliated entities, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35.    The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

36.    All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## X.    MANAGING ASSETS

37.    For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

38.    The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Barton Companies" together with the name of the action.

20

Case 3:22-cv-02118-X  Document 417  Filed 11/29/23  Page 21 of 28  PageID 15229

39.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

40.     Subject to Paragraph 42 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

41.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

42.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

43.    The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

## XI.    INVESTIGATE AND PROSECUTE CLAIMS

44.    The Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

45.    Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the SEC before commencing investigations and/or actions.

46.    The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Entities.

47.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII.  BANKRUPTCY FILING

48.     Effective immediately, the Receiver, as sole and exclusive officer, director and managing member of Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, and Wall019, LLC (collectively, "Wall Entities"), shall possess sole and exclusive authority and control over the Wall Entities, as debtors-in-possession, in their respective Chapter 11 cases titled *In re WALL007 LLC, et al.*, No. 22-41049 (Bankr. E.D. Tex.) (the "Bankruptcy Cases") pending in the U.S. Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"). The employment of any and all other officers, directors, managers or other employees of the Wall Entities is and are hereby terminated by the Court. All such persons shall comply with the applicable provisions of this Order.

49.     Within thirty (30) days of the entry of this Order, the Receiver shall report to this Court as to whether the Bankruptcy Cases should continue in Chapter 11, or be converted to Chapter 7, dismissed or suspended during the course of the receivership. The Receiver shall file the appropriate pleadings with the Court and the Bankruptcy Court effectuating this Order.

50.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for other Receivership Entities. If a Receivership Defendant is (or has been) placed in

23

Case 3:22-cv-02118-X   Document 417   Filed 11/29/23   Page 24 of 28   PageID 15232

bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 3 above, the Receiver is vested with management authority for all entity Receivership Entities and may therefore file and manage a Chapter 11 petition.

51.    All persons and entities, other than the Receiver, are barred from commencing any bankruptcy proceedings against any of the Receivership Entities.

### XIII.  LIABILITY OF RECEIVER

52.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

53.    The Receiver and his agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

54.    This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

55.    In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the

24

resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XIV.  RECOMMENDATIONS AND REPORTS

56.    The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

57.    Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

58.    Within thirty (30) days after the end of each subsequent calendar quarter following the date on which the Receiver files his Liquidation Plan, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

59.    The Quarterly Status Report shall contain the following:

A.    A summary of the operations of the Receiver;

B.    The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.    A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.     A list of all known creditors with their addresses and the amounts of their claims;

G.     The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

60.     On the request of the SEC, the Receiver shall provide the SEC with any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

## XV.   FEES, EXPENSES, AND ACCOUNTINGS

61.     Subject to the paragraphs below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

62.     Subject to the paragraph immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any

Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

63.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates. Such compensation shall require the prior approval of the Court.

64.    Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

65.    All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

66.    Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

27

67.     Each Quarterly Fee Application shall:

A.     Contain representations that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) unless previously disclosed to and approved by the Court, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

68.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED**, this 29th day of November, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:** 202400184492

eRecording - Real Property

---

Recorded On: September 12, 2024 03:52 PM                    Number of Pages: 38

---

**" Examined and Charged as Follows: "**

Total Recording: $169.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                        **Record and Return To:**

Document Number:     202400184492                          Simplifile

Receipt Number:      20240912000291

Recorded Date/Time:  September 12, 2024 03:52 PM

User:                Marija  H

Station:             Cc138

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX