IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § | |
| *Plaintiff,* | § | |
| v. | § § | |
| TIMOTHY BARTON, et al., | § | Civil Action No. 3:22-cv-2118-X |
| *Defendants,* | § | |
| and | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § | |
| *Relief Defendants.* | § | |

**DEFENDANT TIMOTHY BARTON'S REPLY IN
SUPPORT OF EMERGENCY MOTION TO STAY PENDING
APPEAL AND, ALTERNATIVELY, MOTION FOR ADMINISTRATIVE STAY**

Defendant Timothy Barton files this reply in support of his Emergency Motion to Stay Pending Appeal, or alternatively, for a short administrative stay[1], and responds to the Securities and Exchange Commission's opposition.[2]

## I.      INTRODUCTION

Under Nken v. Holder, 556 U.S. 418, 433–35 (2009), and Hilton v. Braunskill, 481 U.S. 770, 776 (1987), a stay pending appeal turns on four familiar factors: (1) likelihood of success on the merits, (2) irreparable injury, (3) injury to other parties, and (4) the public

---

[1] *See ECF 691*
[2] *See ECF 694*

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

interest. A stay's core function is to preserve the status quo so that the appellate court's judgment is not overtaken by events on the ground.[3]

Defendant's request is narrow here. He does not ask the Court to revisit its merits rulings. He asks the Court to suspend status-changing actions—sales, new encumbrances, distributions, and fee payments—under the June 23, 2025 Order Appointing Receiver[4], while the Fifth Circuit reviews that order. Ordinary preservation work such as paying taxes and insurance, making critical repairs, keeping the lights on, and collecting rent would continue.

The SEC's Opposition to Barton Motion of Stay pending Appeal rests on three ideas. First, that the Fifth Circuit has already rejected Barton's stay request. Second, that the June 23, 2025 Order Appointing Receiver is a midstream housekeeping modification that the Fifth Circuit cannot review and lack jurisdiction. Third, that any stay would cripple "active management" of the estate.

None of those ideas hold. The Fifth Circuit denied Barton's earlier stay motion because he had not yet sought relief in this Court, as Federal Rule of Appellate Procedure 8(a)(1) generally requires—not because the panel found the stay factors lacking[5]. The June 23 order is a fresh, comprehensive appointing order that re-empowers the Receiver, changes rights, and adds new restraints, including a bar-complaint preclearance rule, and is independently appealable under 28 U.S.C. § 1292(a)(2) and the Fifth Circuit's

---

[3] *See Nken v. Holder, 556 U.S. 418, 434 (2009) (articulating the four stay factors), also reported at 129 S. Ct. 1749, 173 L. Ed. 2d 550. And Hilton v. Braunskill, 481 U.S. 770, 776 (1987) (same factors and considerations), also reported at 107 S. Ct. 2113, 95 L. Ed. 2d 724.*

[4] See Order Appointing Receiver (June 23, 2025), *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), Dkt. 650.

[5] SEC v. Barton, No. 25-10871, Dkt. 68 (5th Cir. Nov. 4, 2025) Unpublished Order.

Page 2

<u>REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL</u>

receivership decisions in Netsphere[6] and this very case. And Barton does not seek to shut down preservation; he seeks a preservation-only stay that fits squarely within Federal Rule of Civil Procedure 62.

## II. ARGUMENT

### A. The fifth circuit's order invites this court to decide the stay on the merits

The SEC insists that the Fifth Circuit has already rejected Barton's stay request "on the merits" and that the court of appeals has "already considered and denied" the same relief Barton now seeks here. That is not what the Fifth Circuit's orders say.

In its November 4, 2025 order, the Fifth Circuit denied Barton's stay motion for one stated reason: he "has not justified his failure to file for a stay initially in the district court." The order does not apply the *Nken–Hilton* factors, does not weigh likelihood of success or irreparable harm, and does not say that a stay would be improper even if those factors were met. It enforces the sequencing rule in Federal Rule of Appellate Procedure 8(a)(1): ask the district court first[7].

The SEC's opposition tries to read more into that order than is there, treating it as if the Fifth Circuit had already decided that Barton's stay arguments are substantively weak or that a stay can never be granted in this case. But the plain language of the order speaks only to timing and forum, not to the merits of a stay.

---

[6] *Netsphere, Inc. v. Baron, 703 F.3d 296, 305–09 (5th Cir. 2012)*
[7] *SEC v. Barton, No. 25-10871, Dkt. 68 (5th Cir. Nov. 4, 2025) Unpublished Order.*

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

Earlier, on October 17, 2025, the Fifth Circuit entered an order that denied the then-pending stay motion subject to reconsideration after the SEC responded, and at the same time granted an administrative stay "to continue until further order of this court."[8] That temporary stay reflects the same concern: without interim relief, an appeal can be mooted by irreversible acts before the appellate court can rule. The court of appeals would not have entered that administrative stay if it believed a stay was categorically unavailable.

The SEC's briefing thus overreads the Fifth Circuit's orders. Those orders do not hold that a stay is unavailable, that Barton's arguments are weak, or that this Court is barred from granting targeted, preservation-focused relief. They simply insist that the stay request be presented here first. Barton has now complied. The merits of a stay—under *Nken* and *Hilton*—are squarely before this Court.

**B. The June 23, 2025 order is a new appointing order, not mere housekeeping**

The SEC next argues that Barton lacks any likelihood of success because the receivership has already been affirmed and the June 23 order is merely a midstream administrative adjustment.

The SEC leans on decisions like *SEC v. Complete Business Solutions Group, Inc.*, 44 F.4th 1326 (11th Cir. 2022), *Netsphere, Inc. v. Baron*, 799 F.3d 327 (5th Cir. 2015), and *United States v. Solco I, LLC*, 962 F.3d 1244 (10th Cir. 2020), which involved true midstream supervisory orders in ongoing receiverships[9]. Those cases do not describe the

---

[8] See Unpublished Order, *SEC v. Barton*, No. 25-10871, at 1 (5th Cir. Oct. 17, 2025) (granting administrative stay pending further order), Dkt. 49.

[9] See SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.), P. 5 ¶ 1, Dkt. 694.

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

Court's June 23 order. This order does not merely adjust a reporting deadline or approve a particular sale. It is a new order styled and functions as an "ORDER APPOINTING RECEIVER" that re-constitutes the receivership, re-defines the Receiver's authority, and adds new restraints, including a prospective bar-complaint preclearance requirement directed to state-bar petitioning all in one package. It does not make a minor tweak to an existing decree. That is the sort of foundational appointing order that § 1292(a)(2) squarely reaches. At a minimum, the SEC's own authorities show that whether this order is appealable is a serious question—not a jurisdictional non-starter.

Under 28 U.S.C. § 1292(a)(2), the court of appeals has jurisdiction over "orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof." In Netsphere, Inc. v. Baron, 703 F.3d 296, 305–09 (5th Cir. 2012), the Fifth Circuit described receivership as an "extraordinary remedy" and reversed an overbroad appointment as an abuse of discretion. On remand, in Netsphere, Inc. v. Baron, 799 F.3d 327, 334–36 (5th Cir. 2015), the court addressed fee awards and administration issues flowing from that receivership, reinforcing that equity controls how a receivership is structured and financed after appellate review.

In Securities & Exchange Commission v. Barton, 135 F.4th 206, 214–19 (5th Cir. 2025), the Fifth Circuit reviewed and affirmed an earlier receivership structure in this very case, stressing that a receivership's function is to preserve assets—not to run an unchecked liquidation or fee-generation program. A later order that re-appoints the Receiver, resets his authority, and adds new restraints is not "housekeeping" under that line of cases; it is the kind of order that § 1292(a)(2) reaches.

Page 5

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

At the very least, whether the June 23 order is appealable as a new appointing order is a serious legal question. Under Hilton and Nken, a substantial legal question plus strong equities is enough to support a stay pending appeal.

## C. The bar-complaint preclearance provision raises serious first amendment and federalism issues

The SEC tries to recast the bar-complaint preclearance provision as a routine pre-filing injunction against vexatious litigation, invoking cases like *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187–90 (5th Cir. 2008). But this provision goes further than a typical pre-filing injunction in a single court.

Filing a grievance with the State Bar of Texas is a classic form of petitioning government; it invokes the First Amendment's Petition Clause. In *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972), the Supreme Court recognized the right to "free and unlimited access" to courts and agencies, subject only to a narrow "sham" exception for baseless, abusive filings. Here, the order does not merely limit serial motions in this Court. It conditions Barton's access to a separate sovereign's disciplinary system on prior approval in this civil-enforcement case.

*Baum* and similar pre-filing-injunction cases share two features that are missing here. They involve a documented pattern of vexatious, repetitive filings in the same court, and their restrictions apply to future filings in that same tribunal. By contrast, the June 23 order arose from a single grievance and contains no finding that Barton has engaged in a history of frivolous or malicious litigation. And the pre-clearance rule reaches beyond this Court, conditioning Barton's access to the State Bar's disciplinary processes on prior

Page 6

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

approval. That is materially different from the injunction in *Baum* or the bankruptcy-court order in the Fifth Circuit's unpublished *Okorie* decision[10], which concerned filings in the issuing court itself.

The provision also operates as a prior restraint. It requires Barton to obtain permission before he can submit a grievance, without the procedural safeguards *Freedman v. Maryland*, 380 U.S. 51, 57–60 (1965), and similar cases demand for licensing or censorship systems. The Supreme Court has repeatedly cautioned that prior restraints and licensing schemes are "the most serious and the least tolerable infringement" on First Amendment rights and carry a heavy presumption of invalidity. See, e.g., *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The SEC responds that there is "no First Amendment right to file meritless grievances," and that the pre-clearance requirement merely screens out baseless complaints.[11] But the order does not confine itself to "meritless" filings; it applies ex ante to all grievances relating to the Receiver and his counsel, backed by fee-shifting and contempt risk if Barton misjudges what will be deemed "meritorious." A prior-approval regime of that breadth chills even colorable grievances. That is precisely why *Freedman* and *Elrod* treat prior restraints on First Amendment activity as presumptively invalid and irreparable while they remain in place.

The restraint also causes irreparable harm on its own. *Elrod* teaches that the loss of First Amendment freedoms, even briefly, is irreparable as a matter of law. Each day the

---

[10] *Matter of Okorie*, No. 24-60469, 2024 WL 4867073, at *1 (5th Cir. Nov. 22, 2024) (per curiam) (unpublished).
[11] See *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), P. 6 ¶ 1, Dkt. 694.

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

pre-clearance rule remains in force is a day Barton must choose between silence and the risk of sanctions if he misjudges what this Court will permit. And because Texas law vests disciplinary authority in the Supreme Court of Texas and the State Bar, not in a federal receiver or a federal civil-enforcement court, a federal order that prospectively conditions access to that state process raises structural federalism questions warranting appellate review.[12]

**D. Ongoing status-changing receiver actions create irreparable harm**

The SEC argues that there is no irreparable harm because the receivership has already been affirmed and Barton's complaints are simply about the receivership itself[13]. The record tells a different story.

Barton's Emergency Motion and his Fifth Circuit filings identify specific harms that are concrete and irreversible.[14] Asset sales and settlements at steep discounts cannot realistically be unwound once titles change hands and third-party rights vest. Receiver reports[15] show that substantial sums have been paid to the Receiver and professionals, while little or nothing has been reserved or distributed for the benefit of lenders or alleged co-lenders.

The SEC answers that these are really complaints about the existence of the receivership, which the Fifth Circuit has already affirmed. But Barton is not asking this

---

[12] See Tex. Gov't Code § 81.072 (Supreme Court establishes attorney disciplinary system); id. § 81.076 (Commission for Lawyer Discipline and chief disciplinary counsel perform disciplinary functions for the State Bar); TEX. R. DISCIPLINARY PROC. pmbl. (rules promulgated by Supreme Court of Texas).
[13] See *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), P. 5 ¶ 3, Dkt. 694.
[14] See *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), P. 5 ¶ 1 Dkt. 691. See also Appellant's Motion for Stay Pending Appeal ("5th Cir. Stay Mot.") P. 4, SEC v. Barton, No. 25-10871 (5th Cir.), Doc. 38.
[15] See all Receiver Status Report from 1st to 13th in *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.).

Page 8
REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

Court to dismantle the receivership. He is asking the Court to pause new, status-changing acts under the June 23 order—including sales, settlements, and fee payments—while the court of appeals reviews that order. The Fifth Circuit's prior affirmance of an earlier receivership structure does not immunize later harms that occur under a new appointing order.

Fifth Circuit receivership decisions, including *Netsphere* and *SEC v. Barton*, recognize that fee-heavy, depletion-heavy regimes warrant close scrutiny and that once receivership assets are liquidated and fees are paid, post-hoc unwinding is difficult and often inequitable. That is exactly the scenario a stay is designed to prevent.

The bar-complaint restraint adds a separate form of irreparable harm. Under *Elrod*, a continuing loss of First Amendment freedoms is irreparable as a matter of law. [16]That principle applies with full force where a prior-restraint-style rule chills access to a disciplinary tribunal.

Every new closing, deed, transfer, and fee disbursement further depletes the estate and complicates any potential unwinding. Those are the kinds of harms the Supreme Court has treated as irreparable in the stay context—harms that threaten to make any later appellate victory an empty one. A short, preservation-only stay directly addresses these risks.

---

[16] See *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), P. 4 ¶ 2 Dkt. 691

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

**E. Limited record clarifications support preserving the status quo**

Barton does not ask the Court to make new merits findings. He offers a few clarifications drawn from the existing record to show why a stay makes sense and why it will not harm the estate.

First, the SEC's current position is that there is no "emergency," even as it resists any pause in status-changing actions. That concession undercuts the idea that transactions must be rushed through before the Fifth Circuit can rule.

Second, Receiver reports show that the estate holds cash and that most spending has gone to professional and administrative fees, not to core preservation like taxes, insurance, and critical repairs. That pattern suggests that a pause on asset dispositions and fee distributions would protect the estate rather than harm it, especially where receivership is meant to preserve assets, not spur avoidable dissipation.

Third, the appellate record includes receiver filings indicating that title limitations and pending appeals prevent certain transactions from closing, yet sale efforts continue, consuming time and money without delivering finality. Aligning the estate's activity with that reality, through a stay, furthers the basic purpose of a stay: to avoid mooting appellate review through irreversible acts.

These clarifications are not accusations. They simply frame the posture of the estate so this Court—and the Fifth Circuit—can see why status-changing actions should pause while the appeal is pending.

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

**F. Preservation-focused relief is appropriate**

*Hilton* and *Nken* both emphasize that a stay is an exercise of judicial discretion. Barton seeks a preservation-focused relief so the Court implements protection for the status quo.

First, Barton asks the Court to stay status-changing actions under the June 23, 2025 Order Appointing Receiver for the duration of the appeal. Under this option, the Receiver would not consummate asset sales, closings, conveyances, deeds, new encumbrances, distributions, fee payments, settlements, or transfers—or take steps in furtherance of them—without further order. This fits the traditional use of Rule 62 to suspend injunctive and receivership-type orders pending appeal.

Second, if the Court is not inclined to grant a full stay, Barton asks for a more targeted status-quo order. That order would bar only those actions that change ownership or dissipate value, while expressly permitting ordinary-course preservation: paying taxes and insurance, making routine safety repairs, paying necessary utilities and vendors, and collecting rents and revenues under existing management. The Receiver could seek leave for any specific transaction that truly cannot await the Fifth Circuit's decision.

The SEC quotes the Fifth Circuit's observation that several receivership properties "require active management" and that "without such management" they "will deteriorate."[17] Barton agrees. That is why his proposed stay expressly preserves the Receiver's ability to pay taxes and insurance, make safety and maintenance repairs, pay necessary utilities and vendors, and collect rent and revenues. The requested relief targets only those actions that

---

[17] See SEC Dist. Ct. Opp. P. 6 ¶ 2, Dkt. 694

Page 11

<u>REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL</u>

change ownership or dissipate value—sales, closings, new encumbrances, and fee distributions—not the core "active management" the panel approved.

Third, if the Court declines both of those options, Barton asks for a narrow cash-preservation order. That order would require that all estate cash be held in a segregated, interest-bearing account or in the Court's registry, and that no further distributions be made to the Receiver or his professionals without leave of Court during the appeal.

The SEC also relies on the Receiver's description of the estate as "cash-starved," with insufficient cash on hand to pay accrued liabilities[18]. But if cash is scarce, that is all the more reason to prevent further depletion through discretionary fee distributions and rushed transactions while an interlocutory appeal is pending. A cash-preservation order does not harm the estate; it preserves limited cash so that, if Barton prevails in whole or in part on appeal, there will still be something left to distribute to lenders and alleged victims.

Each rung is modest. Each is firmly within this Court's equitable power over its own receivership. And each is designed to ensure that the Fifth Circuit can decide the appeal before the estate is further and irreversibly depleted.

### III. CONCLUSION AND PRAYER

Barton has shown substantial legal questions about the appealability and scope of the current appointing order, serious First Amendment and federalism issues tied to the

---

[18] See SEC Dist. Ct. Opp. P. 7 ¶ 1, Dkt. 694

Page 12

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

bar-complaint preclearance provision, concrete irreparable harm from ongoing status-changing actions, and a public interest in preserving meaningful appellate review.

He therefore asks the Court to grant his Emergency Motion to Stay Pending Appeal, or at least to adopt one of the narrower preservation-focused options described above, and to enter a short administrative stay that remains in effect until the Court rules on the stay request.

Respectfully submitted,

/s/ Jules P Slim
Jules P. Slim, Attorney

State Bar No. 00793026
PO BOX 140307
Irving, Texas 75014
Telephone: (214) 350-5183
Email: jslim@slimlawfirm.com
Attorney for Defendant Timothy Barton

Page 13
REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of December 10, 2025, a true and correct copy of the foregoing Reply was filed and served through the Court's e-filing (CM/ECF) system.

<u>*/s/ Jules P Slim*</u>
*Jules P. Slim*