Jules P. Slim
State Bar No. 00793026
PO BOX 140307
Irving, Texas 75014
Telephone: (214) 350-5183
Email:  jslim@slimlawfirm.com
**Attorney for Defendant**
**Timothy Barton**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § | |
| **v.** | § § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL 009, LLC, WALL 010, LLC, WALL 011, LLC, WALL 012, LLC, WALL 016, LLC, WALL 017, LLC, WALL 018, LLC, WALL 019, LLC, HAOQIANT FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § § § § § § § § § | **No. 3:22-cv-2118-X** |
| **Defendants,** | § | |
| **v.** | § § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § § | |
| **Relief Defendants.** | § | |

**DEFENDANT TIMOTHY BARTON'S EMERGENCY MOTION TO**
**MODIFY RECEIVERSHIP OVER HOMESTEAD**

**COMES NOW** Timothy Barton through counsel and files this Motion to Modify Receivership Over Homestead and presents following to the honorable court:

## I.   INTRODUCTION

1.   Defendant Timothy Lynch Barton files this Motion to present a single, narrow question for the Court's determination: whether a court-appointed receiver may continue to exercise control over a residential property where the receiver's administration necessarily

operates the asset at a guaranteed monthly loss, steadily erodes the property's equity, and confers no corresponding benefit upon the receivership estate.

2.      For approximately three years, the receiver has controlled 4107 Rock Creek Dr., Dallas, Texas and leased it at $5,000 per month, despite a market rental value of approximately $10,000-$15,000 per month and a monthly mortgage obligation of approximately $10,500, exclusive of 18% default interest accruing on the underlying loan. The rent does not cover even the mortgage payment, and it does not account for mandatory property taxes and hazard insurance, which further increase the monthly loss. Continued receivership control therefore guarantees compounding loss and equity erosion.

3.      Defendant does not ask the Court to adjudicate liability or merits. Defendant asks the Court to exercise its continuing supervisory authority to modify or terminate receivership control where that control causes economic waste and no longer serves any estate-protective function.

## II.      FACTUAL BACKGROUND

4.      The receiver has exercised control over the residential property located at 4107 Rock Creek Dr., Dallas, Texas for approximately three years.  The receiver leased the property to a third-party tenant at $5,000 per month.  Based on market information available to Defendant, the property's market rental value is approximately $10,000-$15,000 per month.  The property carries a monthly mortgage payment of approximately $10,500.

5.      Due to the receiver's actions, the loan accrues default interest at 18%, compounding monthly.  In addition to mortgage and default interest, the property incurs mandatory property taxes and hazard insurance, further increasing the monthly loss incurred under receivership

control.  The rental income does not cover the mandatory carrying costs, and the shortfall grows each month.

### III.    ARGUMENT AND AUTHORITIES

6.      A receivership is an extraordinary equitable remedy, and it must be employed with the utmost caution. *See Gordon v. Washington,* 295 U.S. 30, 37 (1935).  In the Fifth Circuit, the controlling framework asks whether there is: (1) a clear necessity to protect the relevant interests in the property; (2) legal and less drastic equitable remedies are inadequate; and (3) the benefits of receivership outweigh its burdens.  *Netsphere, Inc. v. Baron,* 703 F.3d 296, 305 (5th Cir. 2012).

7.      In SEC enforcement actions, the Court has broad equitable authority to appoint a receiver and to supervise and tailor the receiver's powers to what is necessary and beneficial. *See SEC v. First Fin. Grp. of Tex., Inc.,* 645 F.2d 429, 438 (5th Cir. 1981).

8.      In this very case, the Fifth Circuit has instructed that *Netsphere* provides the governing framework for evaluating whether a receivership (and the scope of its control) is justified. *See SEC v. Barton*, No. 22-11132 (5th Cir. Aug. 31, 2023) (vacating receivership and remanding for *Netsphere* analysis); *SEC v. Barton,* No. 23-11237 (5th Cir. Apr. 17, 2025) (reiterating *Netsphere* factors).

9.      Even where a receivership exists, the Court retains continuing authority to supervise, correct, modify, or terminate a receiver's control over particular assets when that control no longer preserves value or benefits the estate. FED. R. CIV. P. *66*; *See also Liberte Capital Grp., LLC v. Capwill,* 421 F.3d 377, 383 (6th Cir. 2005) (recognizing broad discretion in equity receiverships).

**A.  This Court Has Continuing Supervisory Authority to Modify or Terminate Receiver Control Where Administration Causes Waste or No Longer Benefits the Estate.**

DEFENDANT TIMOTHY BARTON'S EMERGENCY MOTION TO
MODIFY RECEIVERSHIP OVER HOMESTEAD

10.     A receivership is an extraordinary equitable remedy. The Court retains continuing jurisdiction upon which to base its inherent equitable power to supervise the receiver and to modify or terminate receivership control when continued control ceases to be necessary, becomes disproportionate, or affirmatively harms the estate. The question here is narrow and administrative—not merits-based: whether continued receiver control over this residence is estate-protective or instead guarantees compounding loss

**B. Continued Receivership Control Produces Per Se Economic Waste Because the Lease Fails to Cover Mandatory Carrying Costs.**

11.     The receiver's leasing decision does not merely fall below market; it fails to cover the property's mandatory carrying costs.  The receiver leased the property for $5,000/month while the property carries a $10,500/month mortgage obligation, plus 18% default interest accruing on the underlying loan.

12.     Critically, those figures do not include property taxes and hazard insurance—both of which are non-discretionary and legally required expenses of ownership.  When rent fails to cover the total carrying costs (debt service + default interest + taxes + insurance + basic maintenance/HOA), the asset is being operated at a guaranteed loss. That is the precise condition equity forbids.

13.     This makes the issue determinable on arithmetic alone:

- Rent collected: $5,000/month

- Mortgage payment alone: ~$10,500/month

- Default interest: 18% (compounding)

- Plus mandatory: property taxes + hazard insurance

- Result: unavoidable monthly shortfall and compounding equity erosion thereby dissipating the receivership estate, not preserving it.

**DEFENDANT TIMOTHY BARTON'S EMERGENCY MOTION TO
MODIFY RECEIVERSHIP OVER HOMESTEAD**

14.     Because the receiver's continued possession mathematically guarantees loss, the Court need not entertain speculative defenses (e.g., "market uncertainty," "long-term offsets," or "typical costs"). No valuation dispute can change the core reality that rent is insufficient to service mandatory obligations. Each additional month of receivership control destroys equity and increases arrears/interest. That is economic waste as a matter of equity and fiduciary administration.

## C. The Receiver Cannot Justify "Reasonableness" by Ignoring Taxes and Insurance; Failure to Cover Mandatory Expenses Is Misadministration, Not Judgment.

15.     A receiver cannot claim "break-even," "reasonable rent," or "prudent administration" by excluding taxes and insurance from the analysis.  Those expenses are predictable, legally required, and non-optional.  Operating the property while failing to cover mandatory carrying costs is not a discretionary business judgment; it is misadministration that erodes the estate and increases exposure.  Equity does not permit the estate's administrator to maintain control over an asset under conditions that ensure loss.

## D. Continued Control Fails the Fifth Circuit's Necessity/Benefit Framework; It Harms—Rather Than Protects—the Estate.

16.     Under Fifth Circuit law, receivership control must be justified by necessity and benefit, and the court must be able to assess whether continued control is proportionate and estate-protective. *See Netsphere,* 703 F.3d at 312–13.

17.     Here, the receiver has held this residence for approximately three years while:

- leasing below market and below carrying costs,

- failing to raise rent to market,

- failing to sell or otherwise convert the asset to protect equity, and

- allowing compounding interest and mandatory expenses to erode value.

18.      Where control causes predictable, compounding loss, continued control cannot be "necessary" to protect the estate. The status quo does not preserve value; it destroys it.

**E.  Continued Control Is Punitive, Not Protective; At Minimum, Equity Requires Equal-Terms Lease-Back.**

19.      The receiver is not preserving the residence for the benefit of creditors and does not use it to secure, stabilize, or improve the asset.  Continued control under a below-carrying-cost lease deprives the owner of use while simultaneously eroding the asset.  That transforms receiver control from protective to punitive—an improper use of equity.

20.      At minimum, the receiver's own position proves the equitable alternative: if $5,000/month is "reasonable," then equity requires that Movant be offered the identical lease terms. Denying the owner the same terms confirms that the arrangement is not a neutral economic decision but an inequitable restraint. The Court should therefore order either (i) immediate return of possession, or (ii) equal-terms lease-back pending further order.

21.      The only incentive apparently governing the receiver's continued mismanagement of the home is to humiliate Barton, an improper use of receivership collateral—and certainly not a proper use of this Court's delegated discretion.

**F.  Immediate Correction Is Required; Delay Becomes an Endorsement of Waste**

22.      Because the monthly loss is unavoidable under the present lease, delay is not neutral—it is an affirmative continuation of waste. Once the Court recognizes that rent fails to cover mandatory carrying costs, the only rational corrective options are:

- return possession,

- order an equal-terms lease-back to Barton, or

- require immediate rent correction to market (supported by sworn evidence) and/or sale authorization to stop compounding loss.

DEFENDANT TIMOTHY BARTON'S EMERGENCY MOTION TO
MODIFY RECEIVERSHIP OVER HOMESTEAD

23.     Any continuation of the "status quo" effectively ratifies ongoing equity destruction and increased interest exposure.

## IV.     RELIEF REQUESTED

24.     Barton pleads in the alternative and to the extent equity requires, any partial relief to which this Court deems appropriate:

- Terminate the receiver's control over the residential property located at 4107 Rock Creek Dr., Dallas, Texas and order immediate return of possession to Defendant;

- Alternatively, order that Defendant may lease the property from the receiver on identical terms and rent as the current tenant pending further order of the Court;

- Order the receiver to lease the property at market rate supported by sworn valuation evidence;

- Order an accounting specific to the property (rent receipts, expenses, taxes, insurance, maintenance, default interest impacts, and any management fees); and

- Grant such other and further relief as the Court deems just and equitable, including surcharge for losses attributable to below-market leasing and failure to mitigate.

Respectfully Submitted,

*/s/ Jules P. Slim*
Jules P. Slim
State Bar No. 00793026
PO BOX 140307
Irving, Texas 75014
Telephone: (214) 350-5183
Email:  jslim@slimlawfirm.com

**Attorney for Defendant
Timothy Barton**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2025, a true and correct copy of the foregoing Response was filed and served through the Court's e-filing (CM/ECF) system.

/s/ Jules P. Slim
Jules P. Slim
