# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § § § | |
| *Defendants*. | § | |

## RECEIVER'S RESPONSE AND OBJECTION TO DEFENDANT TIMOTHY BARTON'S EMERGENCY MOTION TO MODIFY RECEIVERSHIP OVER HOMESTEAD

Dated: March 3, 2026

Respectfully submitted,

Charlene C. Koonce
 Texas Bar No. 11672850
 charlene@brownfoxlaw.com
C. Alan Carrillo
 Texas Bar No. 24109693
 alan@brownfoxlaw.com
Andrew C. Debter
 Texas Bar No. 24133954
 andrew@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
T: 214.327.5000

*Attorneys for Receiver Cortney C. Thomas*

Cort Thomas, as Receiver, responds to Defendant Timothy Barton's ("Barton") Emergency Motion to Modify Receivership Over Homestead [Dkt. 710] (the "Motion") and in support respectfully shows the Court as follows:

## I.      INTRODUCTION

Defendant Barton returns to this Court with an "emergency" of his own making. Having shot himself in the foot regarding the repeatedly approved but never closed sale of 4107 Rock Creek Drive (the "Rock Creek Property"), he now complains about his limp in the form of an alleged loss of value.

Barton's Motion seeks to terminate the receivership's control over the Rock Creek Property because it is losing money, even though such losses are the result of Barton's own efforts to frustrate and prevent its sale. This Court has repeatedly considered and approved the inclusion, administration, and proposed sale of the Rock Creek Property, which is owned by SF Rock Creek, LLC, a Receivership Entity. *See, e.g.*, Dkts. 76, 374, 435. The Fifth Circuit has likewise affirmed the Court's authority to include the property within the receivership and to administer it pursuant to its broad equitable discretion.

Over and over again, the Rock Creek Property has been the subject of extensive briefing, multiple orders, appellate review, ratification proceedings, lender negotiations, and repeated findings that its inclusion and administration within the receivership are proper. Each time the issue has been presented, the Court has exercised its broad equitable discretion to preserve value for investors and creditors. Each time, Barton has resisted, interfered, appealed, or attempted to relitigate the same ground.

Now, after impeding the sale process, filing lis pendens, contacting and harassing buyers, and prolonging litigation over the very orders authorizing liquidation, Barton complains that delay has allowed interest to accrue and equity to narrow. He characterizes that predictable consequence

1

as "economic waste" and asks this Court to dismantle the status quo.

But equity does not reward obstruction. A litigant may not frustrate liquidation and then invoke the resulting delay as proof of mismanagement. Nor may he demand return of property he never personally owned, held through an LLC funded with investor money, and occupied in violation of loan terms.

The Motion presents no new facts, no new authority, and no equitable basis to disturb this Court's prior rulings. It is simply the latest reiteration of an argument the Court and the Fifth Circuit have already considered and rejected. The Motion should be denied.

## II.    BACKGROUND

### A.    The Rock Creek Property is Owned by an LLC, Not Barton.

The Rock Creek Property is owned by SF Rock Creek, LLC, a Receivership Entity. Dkt. 374 at ¶ 4. The Receiver discovered loan and insurance documents relating to the property while reviewing materials at the Turtle Creek office and thereafter confirmed that Wall Investor Funds had been traced into the Rock Creek Property. *See* Dkt. 41 ¶¶ 6–7. It was included within the receivership after the Court found investor funds flowed into the entity. Dkt. 435, p. 6.

The Fifth Circuit has already defined the boundaries of what entities and property should be included in the receivership estate. *See SEC v. Barton*, 79 F.4th 573, 580–81 (5th Cir. 2023) (instructing that the receivership properly extends to "entities that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation"). That includes the Rock Creek Property. Dkt. 435, p. 6; *see* Mem. Op. and Order [Dkt. 416] pp. 13–14 & n.63; Dkt. 650, p. 5.

Barton never personally owned the Rock Creek Property. *See* Dkt. 374 at ¶ 4. His attempt to characterize it as his "homestead" ignores its ownership structure, the absence of any record homestead declaration, and the fact that his occupancy violated the terms of the investment "house

2

flipping" loan securing the property, which prohibited occupancy by the borrower or any person with a direct or indirect ownership interest in SF Rock Creek, LLC. *See* Dkt. 435, pp. 23–24.[1]

**B.      The Receiver Promptly Attempted to Sell the Property.**

From the outset, the Rock Creek Property was treated as a wasting asset due to its high interest financing and ongoing carrying costs. *See* Dkt. 435, pp. 10–11.[2] The Rock Creek Property was encumbered by a 9.99% investment loan, with continuing obligations for utilities, insurance, and taxes, at a time when the Receivership lacked significant liquid assets. Dkt. 374 ¶ 7. Within days of his appointment, the Receiver also learned that Barton had listed the Property for sale.

Within weeks of appointment, the Receiver listed the property for sale through a respected, independent broker and sought court approval pursuant to 28 U.S.C. § 2001. *See* Dkt. 76. After obtaining three appraisals averaging approximately $1,393,333, the Receiver entered into a contract, subject to Court approval, to sell the property "AS IS" for $1.4 million, a price exceeding both two-thirds of the appraised value and the average appraised value itself. *See* Dkt. 76; 28 U.S.C. § 2001(b).

This Court approved the sale following a hearing on December 19, 2022. Dkt. 104. When the initial Receivership Order was vacated and later re-entered under the *Netsphere* framework, the Receiver sought ratification and renewed authorization to sell the Rock Creek Property. Dkt. 374. The Court approved the sale again on December 15, 2023. Dkt. 437.

In connection with the renewed sale motion, the secured lender, The Rama Fund, LLC,

---

[1] Specifically, the Deed of Trust governing the Rock Creek Property provided: "Throughout the term of the Loan, Borrower shall not occupy any portion of the Mortgaged Property in any manner. If Borrower is an entity other than a natural person, any persons with a direct or indirect ownership interest in Borrower shall not occupy any portion of the Mortgaged Property in any manner throughout the term of the loan." Dkt. 134, App. p. 10.

[2] Dkt. 435, p. 10 ("The continued accrual of interest which erodes the recoverable value of each property provides the most compelling reason, common to all Properties, why a sale now preserves assets and is in the best interest of the Receivership Estate.").

entered a stipulation providing that at closing it would receive only principal ($1,053,000) and accrued interest at the standard (non-default) rate, with any additional claims reserved for later adjudication in the claims process. Dkt. 392.

In short: the Receiver has consistently and repeatedly attempted to liquidate this property in order to prevent continued erosion of value.

### C.    Barton Interfered Repeatedly with the Sale.

The equity erosion Barton now attributes to the Receiver stems from Barton's own conduct. On December 1, 2022 (the same day counsel conferred regarding the sale) and in violation of the Receivership Order, Barton recorded a lis pendens against the property. Because the title company refused to issue a title policy while the lis pendens remained of record, the Receiver was forced to file an emergency motion to have it declared void. *See* Dkt. 96. At the December 19, 2022 sale hearing, the Court authorized the sale. Dkt. 104. Hours later, Barton contacted the purchaser directly (unsolicited and without Court authorization) to raise purported foundation and flooding issues. Dkt. 133, p. 10. As a result of Barton's actions, neither the title company nor the purchaser were willing to move forward with the sale. Dkt. 133, p. 10. A few days later, on December 21, 2022, Barton filed a Notice of Appeal of the Rock Creek Sale Order (Fifth Circuit Case No. 22-11226) [Dkt. 108] negating the Receiver's ability to obtain title insurance while the appeal was pending. *See* Dkt. 374, p. 7 ¶ 15. Although the Fifth Circuit initially dismissed the appeal for lack of jurisdiction, that opinion was later withdrawn in light of the vacatur of the initial Receivership Order.

After the Court entered the Second Rock Creek Sale Order [Dkt. 437], Barton again filed an interlocutory appeal (Fifth Circuit Case No. 24-10004) [Dkt. 440], again practically precluding title insurance. *See* Dkt. 374 p. 7 ¶ 15. The Fifth Circuit ultimately affirmed, finding no abuse of discretion in approving the sale. *See SEC v. Barton*, 135 F.4th 206, 223 (5th Cir. 2025). Barton's

Petition for Rehearing En Banc was denied and his petition for certiorari is pending. The Receiver and the purchaser have extended the closing date until the petition is resolved, and the purchaser remains in possession under a long-term lease.

Thus, any delay in liquidation (and the resulting narrowing of equity) rests squarely on Barton's shoulders.

## D.    The Lender is Working with the Receiver.

Contrary to Barton's suggestion that the value of the Rock Creek Property is spiraling uncontrollably, the secured lender has negotiated and stipulated to terms facilitating orderly administration, including staying accrual of post-receivership default rate interest. *See* Dkt. 392. The only party with a secured, legally cognizable interest in forcing abandonment is the lender. *See* Dkt. 392 ¶ 1. The lender has not sought such relief. The Receiver retains discretion—subject to Court supervision—to determine whether and when abandonment to the lender is appropriate. Dkt. 650 ¶¶ 94–95. Although the lender has taken the position that rental payments should be applied to the loan, it has cooperated with the Receiver in pursuing an orderly sale rather than seeking immediate foreclosure.

## III.    ARGUMENT

## A.    The Court's Discretion in Equity is Broad.

Federal equity receiverships are, by design, flexible, fact-specific proceedings entrusted to the sound discretion of the district court. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) ("A properly appointed receiver is 'vested with complete jurisdiction and control of all [receivership] property with the right to take possession thereof.'" (quoting 28 U.S.C. § 754)); *see also* FED. R. CIV. P. 66. First, district courts are afforded "extremely broad discretion" in determining "the appropriate procedures to be used in . . . administration [of a receivership]." *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992); *see also Stanford Int'l Bank*, 927 F.3d

at 840. "It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982). "Therefore, any action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse." *Id.* (internal quotations marks and alteration omitted).

Second, the animating purpose of an equity receivership is not to vindicate the preferences of a defendant, but "to promote orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). For that reason, "reasonable procedures instituted by the district court that serve this purpose" are routinely upheld. *Id.*; *see also SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2021 WL 2366110, at *6 (E.D. Tex. May 21, 2021) (recognizing the court's broad authority to fashion relief to assist the receiver in protecting the estate). Those principles govern here.

This Court has already applied the correct *Netsphere* framework and re-entered a receivership order following remand. Dkts. 416, 417. The Motion now asks the Court to revisit not the legal standard governing appointment of a receiver, but its exercise of discretion regarding how that receivership is administered. In essence, it invites substitution of Barton's preferences for the Court's judgment.

Here, the Court twice determined that sale of the Rock Creek Property was in the best interest of the Receivership Estate. Dkt. 104; Dkt. 437. The Fifth Circuit affirmed the Second Rock Creek Sale Order and found no abuse of discretion. *See Barton*, 135 F.4th at 223 ("[W]e hold that the district court did not abuse its discretion in confirming those sales."). The Motion does not identify any intervening legal development, newly discovered fact, or structural defect in the governing framework. It simply disagrees with how the Court has exercised its supervisory

6

authority in administering one asset within a complex, multi-entity receivership.

The Court's "extremely broad" discretion extends to every basis for the Motion, including how to balance liquidation timing, lender negotiations, market conditions, and litigation posture to promote the best interests of the estate. *See Bernstein*, 786 F. Supp. at 177. Barton's efforts to dictate details of administering the receivership conflicts with that discretion, particularly—as explained further below—where the dynamic he complains about is traceable to his own conduct in interfering with and frivolously appealing every aspect of the receivership. *See* Dkt. 133, pp. 9–11; Dkt. 374, p. 7 ¶ 15.

**B.     Barton's "Economic Waste" Argument Ignores His Own Conduct.**

Barton's central contention is that the Receiver is "operating the property" at a loss and thereby committing "economic waste." Dkt. 710, pp. 4–5. That framing omits the most salient fact in the record: the very conditions he characterizes as waste are the foreseeable product of his own interference.

From the earliest days of the receivership, because the Rock Creek Property was burdened by high-interest debt which eroded its value and already listed for sale, the Receiver promptly listed it for sale and sought Court approval for the sale. Dkt. 76; Dkt. 104; Dkt. 435, pp. 10–11; Dkt. 374 ¶ 7. The Receiver redoubled his efforts when the Initial Receivership Order was vacated and under the new Receivership Order, obtaining this Court's approval at each stage. Dkt. 374; Dkt. 437.

Barton's repeated contempt, in filing the lis pendens and harassing the buyer, and his baseless appeals of orders approving the sale are the cause in fact of the loss in value he now complains about. Nonetheless, Barton now points to the passage of time and accruing obligations as evidence of "waste." That argument is unpersuasive and inequitable. Equity does not allow a party to manufacture the condition he later invokes as grounds for relief. *See Texas v. Biden*, 20

F.4th 928, 942 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022) (explaining that the requested equitable remedy "is unavailable to parties with unclean hands" and that the requesting party's "litigation tactics disqualify it from such equitable relief"); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (describing the clean hands doctrine as "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief"). A litigant may not impede liquidation, prolong litigation, and then ask the Court to treat the predictable consequences of delay as proof of fiduciary failure. The receivership exists because of Barton's conduct. The debt burden attached to the property predates the Receiver's appointment and the terms of that debt were negotiated by Barton. *See* Dkt. 374 ¶ 7. And the Receiver's consistent effort has been to mitigate, not exacerbate, that burden.

In short, Barton's "economic waste" theory asks this Court to disregard both context and causation. The Receiver moved to sell. The Court approved the sale. Barton interfered. The value erosion he now laments is the result of the delay he created. On that record, equity forecloses rather than compels the relief Barton seeks. Accordingly, the Court should deny the Motion.

**C.      Barton Presents No Basis for Any Change in the Status of the Rock Creek Property.**

Barton's arithmetic (regarding rent versus mortgage) provides no basis to remove the Rock Creek Property from the Estate. First, he presents no evidence that the lender is no longer willing to work with the Receiver in reaching a mutually beneficial outcome once Barton's current appeal is resolved.

Second, Barton lacks standing to complain on behalf of a lender, about property he does not and has never owned, which he nonetheless seeks to characterize as his "homestead." *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties."); *see also Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (describing shareholder standing rule as "a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation"); *Whalen v. Carter*, 954 F.2d 1087, 1091–92 (5th Cir. 1992) (affirming shareholder standing rule).

Finally, a federal equity receivership is not administered asset by asset in isolation. It is supervised holistically, with an eye toward preserving the estate as a whole and maximizing recovery for investors and creditors. As this Court has recognized in other contexts, equitable receivership administration requires preservation of the status quo when appropriate and the exercise of discretion informed by the entire estate rather than mechanical optimization of a single property in a vacuum. *See* Dkt. 570 (discussing equitable discretion and preservation of the status quo). Here, as the Court is aware, multiple factors regarding the receivership as a whole inform the Court's administration regarding any one property. For that additional reason, the Motion should be denied.

### D.    Barton's "Equal-Terms Lease-Back" Proposal is Legally Baseless.

As a fallback position, Barton proposes that if the current rental rate is "reasonable," he should be permitted to lease the property on identical terms. Dkt. 710, p. 6. That proposal rests on a premise for which he cites no authority: that a defendant whose conduct precipitated a federal equity receivership may compel the receiver to return possession of receivership property to him on court-imposed terms. No such rule exists, and there is no reason that it should.

The Rock Creek Property is owned by SF Rock Creek, LLC, a Receivership Entity funded with investor money, not by Barton individually. Dkt. 374 ¶ 4; Dkt. 41 ¶¶ 6–7. The property is also administered as part of a larger equitable proceeding designed to marshal assets, preserve value, and maximize recovery for creditors and victims. *See Stanford Int'l Bank*, 927 F.3d at 840.

Against this framework, Barton's lease-back request not only lacks support, it conflicts

9

with the purpose of the receivership. A federal equity receiver does not operate as a landlord obligated to offer former insiders parity in tenancy. Decisions about leasing, selling, holding, or abandoning assets are informed by the receiver's fiduciary duties and the Court's supervisory authority. Particularly when the supervising courts have concluded that allowing Barton *any* control over assets poses an unacceptably high risk of loss and contemptuous conduct, *see Barton*, 135 F.4th at 219, his request to resume control over the Rock Creek Property should be rejected.

## IV.    CONCLUSION

The Rock Creek Property is properly included within the receivership. It is owned by a Receivership Entity rather than Barton personally. From the earliest days of the receivership, the Receiver sought to sell the Property, obtained court approval to do so, negotiated with the secured lender to stay default interest, and battled against Barton's contemptuous interference and baseless appeals challenging the sale orders. Any delay in liquidation results from Barton's own persistent interference and serial challenges to the orders he now invokes as grounds for complaint, rather than inaction or misadministration

Equity does not permit a litigant to obstruct a process and then rely on the predictable consequences of that obstruction as a basis for relief. The Motion presents no new facts, no new law, and no compelling equitable justification to disturb the status quo. It is simply the latest attempt to relitigate issues this Court and the Fifth Circuit have already addressed.

For these reasons, the Receiver respectfully requests that the Court deny the Motion in its entirety and grant such further relief as the Court deems just and proper.

Dated: March 3, 2026

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
    Texas Bar No. 11672850
    charlene@brownfoxlaw.com
    C. Alan Carrillo
    Texas Bar No. 24109693
    alan@brownfoxlaw.com
    Andrew C. Debter
    Texas Bar No. 24133954
    andrew@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX 75225
    T: 214.327.5000
    F: 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

Barton's Motion does not include a certificate of conference. For the Court's benefit, counsel for the Receiver has conferred with counsel for the SEC regarding the Motion. SEC counsel advised that the SEC agrees with the Receiver's position, deferring to the Receiver's business judgment (subject to the Court's supervision) regarding the appropriate administration of the Rock Creek Property going forward.

*/s/ Andrew C. Debter*
Andrew C. Debter

## CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

11