**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, et al.,** | § | |
| | § | |
| ***Defendants.*** | § | |

**RECEIVER'S RESPONSE IN OPPOSITION TO MOUNTAIN PEAK SPECIAL UTILITY DISTRICT'S EMERGENCY MOTION TO LIFT LITIGATION STAY TO PURSUE CONDEMNATION OF PUBLIC WATERLINE EASEMENTS**

Respectfully submitted,

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
Texas Bar No. 24109693
alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ........................................................................................................ 2

A. The Receivership Order's Litigation Stay ................................................................ 2

B. The Properties at Issue ........................................................................................ 3

C. Prior Motions to Lift the Stay ................................................................................ 4

D. The Current State of the Receivership ..................................................................... 4

III. ARGUMENT ........................................................................................................... 5

A. Legal Standard ....................................................................................................... 5

B. The *Wencke* Factors Each Favor Maintaining the Stay. ........................................ 5

1. Factor One: Preserving the Status Quo ..................................................................... 5

2. Factor Two: Timing in the Course of the Receivership ............................................. 8

3. Factor Three: The Merits of Movant's Claim .......................................................... 10

C. Mountain Peak's Sole Authority, *In re Still*, Is Inapposite. ................................... 11

IV. CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*In re Still*,
117 B.R. 251 (Bankr. E.D. Tex. 1990) .......... 11, 12

*Rishmague v. Winter*,
616 F. App'x 138 (5th Cir. 2015) .......... 6, 10

*Rupert v. Winter*,
No. 3:10-CV-0799-N, 2012 WL 13102348 (N.D. Tex. Jan. 24, 2012) .......... 6

*SEC v. Adams*,
No. 318CV00252, 2023 WL 8483662 (S.D. Miss. June 28, 2023) .......... 10

*SEC v. Byers*,
609 F.3d 87 (2d Cir. 2010) .......... 5

*SEC v. Heartland Group Ventures, LLC*,
No. 4:21-01310, 2023 WL 4157490 (N.D. Tex. May 18, 2023) .......... 6

*SEC v. Kaleta*,
No. CIV.A. 4:09-3674, 2012 WL 2577537 (S.D. Tex. July 3, 2012) .......... 9, 10

*SEC v. Provident Royalties, L.L.C.*,
No. 3:09-1238, 2011 WL 2678840 (N.D. Tex. July 7, 2011) .......... 6

*SEC v. Stanford Int'l Bank Ltd.*,
424 F. App'x 338 (5th Cir. 2011) .......... 1, 5, 8

*SEC v. Vescor Cap. Corp.*,
599 F.3d 1189 (10th Cir. 2010) .......... 5

*SEC v. Wencke*,
742 F.2d 1230 (9th Cir. 1984) .......... 1, 5, 8

*United States v. Acorn Tech. Fund, LP*,
429 F.3d 438 (3d Cir. 2005) .......... 6, 8, 9

*Zacarias v. Stanford Int'l Bank, Ltd.*,
945 F.3d 883 (5th Cir. 2019) .......... 5

**Statutes**

11 U.S.C. § 362(d) .......... 12

**Codes**

TEX. PROP. CODE § 21.0113 ........................................................................................... 11

Cort Thomas, as Receiver, files this response in opposition to the Emergency Motion to Lift Litigation Stay to Pursue Condemnation Waterline Easements [Dkt. 725] and brief in support [Dkt. 727] (together, the "Motion"), filed by nonparty Mountain Peak Special Utility District ("Mountain Peak"), and in support respectfully shows the Court as follows:

## I. INTRODUCTION

On a purportedly emergency basis, Mountain Peak asks this Court to lift the Receivership Order's stay so that it may pursue a separate condemnation proceeding against Receivership Property. At this time, that request should be denied. The Motion seeks permission to take a permanent property interest in real property that is subject to this Court's receivership and the Receiver's administration, which is precisely the kind of disruption the stay exists to prevent.

The Receivership Order stays civil proceedings involving the Receiver, Receivership Entities, and Receivership Property. Mountain Peak acknowledges that the two parcels at issue are owned by Receivership Entities and are subject to the stay. It nevertheless asks to proceed now based on a proposed public waterline easement. But Mountain Peak has not shown that condemnation would preserve or enhance the Receivership Estate, has not provided an appraisal or other valuation evidence, has not provided the necessity resolution on which it relies, has not shown that it made the statutory pre-suit offer required to begin condemnation, and has not identified any concrete deadline or urgent harm that requires immediate stay relief.

The controlling framework confirms that the stay should remain in place. Under *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011), and *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984), the Court considers whether maintaining the stay preserves the status quo or causes substantial injury, the timing of the request in the course of the receivership, and the merits of the movant's underlying claim. Each factor favors the Receiver. Lifting the stay would alter the status quo by permitting a permanent encumbrance on receivership real estate that could

adversely affect its value. Timing-wise, this complex receivership remains effectively in its early stages due to serial appeals that have impeded its progress, with no claims process or distribution imminent, and the Receiver's hands having been nearly tied with regard to development or disposition of properties. And although the Receiver does not question its general condemnation authority, Mountain Peak has not established that it is entitled to condemn these easements, on these tracts, at this time.

This Court has repeatedly denied requests to disturb the receivership stay where doing so would interfere with the Receiver's orderly administration of the estate. The same result is warranted here. The Receiver does not dispute that Mountain Peak may have eminent domain authority in an appropriate case. But, general condemnation authority does not entitle Mountain Peak to bypass this Court's stay, proceed in another forum, and impose permanent easements on Receivership Property without first providing evidence justifying that extraordinary relief. The Motion should be denied.

## II. <u>BACKGROUND</u>

### A. The Receivership Order's Litigation Stay

1. On October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial Receivership Order") [Dkt. 29], appointing Cortney C. Thomas as Receiver. The Court has since entered a new Order Appointing Receiver on June 23, 2025 (the "Receivership Order") [Dkt. 650], which contains a stay of enforcement and a stay of all civil legal proceedings involving the Receivership Entities and the Receivership Property. Dkt. 650 ¶¶ 87–89.

2. The stay applies to "all civil legal proceedings . . . of any nature" involving the Receiver, the Receivership Entities, or the Receivership Property. Dkt. 650 ¶ 87. Mountain Peak acknowledges that the parcels at issue are Receivership Properties and that Lynco Ventures, LLC and DJD Land Partners, LLC are Receivership Entities. Dkt. 725 ¶ 3 ("Lynco Ventures, LLC and

DJD Land Partners, LLC are Receivership Entities as defined by the Receivership Order, and thus litigation in which either is a party is stayed.").

**B. The Properties at Issue**

3. The two tracts that Mountain Peak proposes to encumber are part of the Venus Properties, located along County Road 501 and FM 157 in Venus, Johnson County, Texas. *See* Dkt. 725-1 (easement surveys for property of Lynco Ventures, LLC at 11208 County Road 501, Venus, TX 76084 and property of DJD Land Partners, LLC at 11417 County Road 501, Venus, TX 76084). Lynco Ventures, LLC and DJD Land Partners, LLC are Receivership Entities, and their properties, including the two parcels at issue, are accordingly Receivership Assets. *See* Dkt. 650, pp. 4–5 ¶ 16, 32. Lynco Ventures, LLC owns the 27.262-acre tract from which Mountain Peak seeks a 60-foot-wide, 1.403-acre permanent waterline easement, and DJD Land Partners, LLC owns the 128.8645-acre tract from which Mountain Peak seeks a variable-width, 2.517-acre permanent easement together with an associated temporary construction easement. *See* Dkt. 728, pp. 55–57.

4. Mountain Peak's exhibits date the field survey work to May and June 2025, and the metes-and-bounds descriptions are dated November 18, 2025. *See* Dkt. 725-1 (legal descriptions and easement exhibits dated November 18, 2025, reflecting field survey work conducted in May and June 2025). Mountain Peak represents that on January 12, 2026 its board adopted a "resolution finding and determining that public necessity requires" the condemnation it proposes. Dkt. 727, p. 4 ¶ 9. However, the Motion does not attach that resolution, does not provide any appraisal for its proposed easements, does not discuss or reference any alternative location for the easement, and does not offer any evidence of the monetary impact to the value of the Receivership Properties. Nor does the Motion provide any evidence supporting resolution on an emergency basis, with or without evidence supporting the bald assertions in the Motion.

**C. Prior Motions to Lift the Stay**

5. Mountain Peak's Motion is not the first request to disturb the Receivership Order's stay. *See* Dkts. 551, 562, 584, 630. The Court denied McCormick 101 LLC's motion to modify the stay on November 6, 2024 [Dkt. 584]. The Court denied a second McCormick motion on April 10, 2025 [Dkt. 630]. In August 2024, the Court denied Southern Star Capital, LLC's motion to modify the stay to foreclose on tracts owned by these same Receivership Entities, Lynco Ventures, LLC and DJD Land Partners, LLC [Dkt. 551]. And in September 2024, the Court denied First Development's motion to intervene and lift the stay [Dkt. 562].

6. In each case, the Court applied the *Wencke* factors (set forth below, *infra*, Part III(A)) and concluded that the receivership's interests in preservation and orderly administration controlled.

**D. The Current State of the Receivership**

7. Since then, the receivership has continued to advance, but the central drivers of complexity and delay that this Court identified in April 2025 remain in place. The Fifth Circuit affirmed the Second Receivership Order and denied rehearing en banc, but in October 2025 Defendant Barton filed a petition for writ of certiorari with the Supreme Court of the United States, which the Supreme Court did not deny until March 30, 2026. *See* Dkt. 728, pp. 3–4 (describing administrative closure on August 7, 2025; affirmance by the Fifth Circuit; denial of *certiorari* on March 30, 2026). Barton's criminal trial, which the Receiver has reported in successive quarterly status reports, has been reset on multiple occasions and is now set for November 2, 2026. *Id.* at 19–20. Interest continues to accrue on the Venus Properties at a rate of $153,245.31 per month (over $5.2 million in accrued interest to date), and the Receiver continues to analyze next steps for a potential sale. *Id.* at 55–58.

## III. ARGUMENT

### A. Legal Standard

Stays in receivership cases serve as "one of the tools available to courts to help further the goals of the receivership." *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). The Receivership Order's stay is intended to protect receivership assets and defrauded investors and to serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010). District courts have "broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC action." *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 897 n.38 (5th Cir. 2019).

Three factors inform the Court's discretion regarding whether to lift a litigation stay: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011) (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)). This Court has applied those factors repeatedly throughout this receivership. Although Mountain Peak identifies the correct governing framework, it misapplies the *Wencke* factors and does not provide ample justification to lift the stay.

### B. The *Wencke* Factors Each Favor Maintaining the Stay.

#### 1. Factor One: Preserving the Status Quo

The first factor "essentially balances the interests in preserving the receivership estate with the interests of the [movant]." *Stanford*, 424 F. App'x at 341. The "Receiver's interests" encompass "not only protection of the receivership *res*, but also protection of defrauded investors and considerations of judicial economy." *SEC v. Provident Royalties, L.L.C.*, No. 3:09-1238, 2011

WL 2678840, at *3 (N.D. Tex. July 7, 2011) (quoting *United States v. Acorn Tech. Fund, LP*, 429 F.3d 438, 443 (3d Cir. 2005)). Protecting the Receivership Estate, including judicial resources at issue with respect to the Estate, is accordingly the status quo that the Court seeks to preserve. *See SEC v. Heartland Group Ventures, LLC*, No. 4:21-01310, 2023 WL 4157490, at *2–3 (N.D. Tex. May 18, 2023), *report and recommendation adopted*, No. 4:21-CV-01310-O-BP, 2023 WL 5333278 (N.D. Tex. Aug. 18, 2023) (rejecting motion to lift stay in favor of personal injury litigant, based on preserving estate assets and preventing loss of receivership properties preserved through the stay); *Rishmague v. Winter*, 616 F. App'x 138, 140 (5th Cir. 2015) (affirming district court's decision not to lift a litigation stay several years into a receivership to preserve receivership assets). Because the Receiver, rather than a challenging third party, "is in the best position to evaluate the impact of relief from the stay," the Receiver's position carries significant weight. *Provident Royalties*, 2011 WL 2678840, at *2. This factor weighs heavily against stay relief for three independent reasons.

First, Mountain Peak seeks to alter the status quo by taking (by eminent domain) a permanent property interest in receivership real estate. The Motion does not propose to liquidate a damages claim or preserve evidence, as is more typically the case in lift stay motions. It proposes, instead, to impose permanent easements on the Lynco and DJD tracts. That would directly alter the receivership *res*. It would shift control of part of receivership property to a different tribunal, create permanent encumbrances, affect title and marketability, and generate costs the Receiver would have to incur to participate in a proceeding the stay was designed to forestall. In short, what Mountain Peak proposes "could endanger the receivership status quo, diminishing the total pool of funds available for distribution to creditors." *Rupert v. Winter*, No. 3:10-CV-0799-N, 2012 WL 13102348, at *8 (N.D. Tex. Jan. 24, 2012).

Second, the Motion fails to show that the proposed easements will preserve or enhance estate value. Mountain Peak asserts that condemnation would not negatively affect the status quo because it "believes it would improve the status quo by adding value to the receivership estate." Dkt. 727, p. 5 ¶ 12. That assertion is unsupported and, at least on the present record, dubious. A permanent utility easement across 1.403 acres of one tract and 2.517 acres of another, together with an associated temporary construction easement, will impose real burdens on the encumbered acreage. It would necessarily create access, title, and marketability issues that will no doubt diminish the value of at least those portions of receivership properties. The Receiver is currently analyzing a potential sale of the Venus Properties, which include the Lynco and DJD tracts, and the proposed condemnation proceedings would affect the value of those properties. Whether installation of a public water line might ultimately enhance the value of the surrounding properties is a fact-intensive question. Mountain Peak supplies no appraisal, no broker opinion, no development analysis, and no comparison of the burdened parcels with and without the proposed easements. It is simply premature to know how the proposed encumbrances would affect receivership value. Mountain Peak has failed to establish that lifting the stay would maximize assets for the estate and its creditors.

Third, Mountain Peak has not shown substantial injury from maintaining the stay while it provides the Receiver and the Court the ordinary diligence materials necessary to evaluate the request. Mountain Peak asserts that the waterline is "urgently needed" [Dkts. 725 ¶ 4; 727 ¶ 8], but it identifies no customer who lacks water, no regulatory deadline, no funding deadline, no construction deadline, or any other concrete time-sensitive harm. Its own timeline shows survey work in May and June 2025, legal descriptions in November 2025, a board resolution in January

2026, and its Motion filed in late April 2026. That chronology is difficult to square with its request to bypass the receivership process on an "emergency" basis.

This Court's prior treatment of stay-relief motions in this case is instructive. When this Court denied the most recent McCormick motion to lift the stay, it explained that lifting the stay "would prevent the Receiver from managing the Receivership Estate in such a way to maximize assets for the estate and its creditors," and that the Receiver's interest in preservation "outweighed the injury suffered by McCormick." [Dkt. 630, p. 4]. The same reasoning applies here. Mountain Peak (like other claimants whose requests to lift stay this Court denied), may well have a serious interest. But it has not shown that its interest substantially outweighs the Receivership Estate's interest in preserving the properties. Accordingly, the first factor counsels strongly in favor of denying the Motion.

**2. Factor Two: Timing in the Course of the Receivership**

The second factor—"the time in the course of the receivership at which the motion for relief from the stay is made," *Wencke*, 742 F.2d at 1231—also favors maintaining the stay. "Timing in a receivership process is fact specific, based on the number of entities, the complexity of the scheme, and any number of other factors." *Stanford*, 424 F. App'x at 341; *see also Acorn Tech. Fund, L.P.*, 429 F.3d at 450 ("The second *Wencke* prong is inherently case-specific[.]"). Mountain Peak argues that timing should cut in its favor merely because the receivership has been pending since October 2022 and has no "determinable end." [Dkt. 727 ¶ 12]. That is not enough to show that the receivership has progressed to a late stage.

Here, despite the passage of time, this case has not progressed substantially towards finality due to its complexity and serial appeals that have stalled its progress. As it stands, the SEC's claims against Barton are stayed, repeated appeals have caused lengthy delays, the Receiver will not be

in a position to seek or evaluate investor or creditor claims until the Fall at the earliest, let alone distribute assets. Thus, this case remains in its early stages.

This Court has already reached that determination, at least as of April 2025, when it concluded that "the size of the Receivership Estate, the complexity of the scheme, the litigiousness of the defendant, and the linkage of this case to a criminal case that has not proceeded to trial all slow the Receivership down such that it is still in the early stages." [Dkt. 630 pp. 4–5]. Each of those dynamics remains in place.

Nothing in the intervening year materially changes the picture. To the contrary, the developments since April 2025 confirm that distribution and final administration remain prospective rather than imminent. For most of that time, the case has been held up on appeal on a threshold issue that Barton appealed to the Fifth Circuit and then (after losing that appeal) subsequently petitioned the Supreme Court of the United States for writ of certiorari. The Supreme Court finally denied certiorari on March 30, 2026, resolving one threshold dispute. But still this case is far from a claims process. The Venus Properties (including the tracts at issue) remain under analysis for a sale. And the criminal case, which "must resolve before this case can," [Dkt. 671], is now scheduled for trial in November 2026.

Other courts agree that even longstanding receiverships that have been in place for years are still too "youthful" for stay relief where the receiver continues to investigate facts, pursue claims, and prepare for distribution. *United States v. Acorn Tech. Fund, LP*, 429 F.3d 438, 450 (3d Cir. 2005) (affirming denial of a motion to lift stay after three years and concluding that "where the alleged fraud encompassed many individuals and companies, we cannot say that the timing factor tips in the [movant's] favor"); *SEC v. Kaleta*, No. CIV.A. 4:09-3674, 2012 WL 2577537, at *3 (S.D. Tex. July 3, 2012) (denying motion to lift stay after three years where the receiver

"continues to pursue various Estate claims and thus is not yet prepared to distribute Estate assets"); *SEC v. Adams*, No. 318CV00252, 2023 WL 8483662, at *2 (S.D. Miss. June 28, 2023) (denying motion after five years on similar grounds); *see also Rishmague v. Winter*, 616 F. App'x 138, 140 (5th Cir. 2015) (affirming refusal to lift stay four years into a receivership where "the district court continues to . . . coordinate and oversee extensive litigation, relating to asset recovery").

Mountain Peak's statement that the receivership has "no determinable end" is actually an admission that procedurally, the receivership remains in its infancy. The reason the receivership has no determinable end is precisely that the criminal case, multiple appeals, and the receivership's structural complexity continue to govern the pace such that distribution of assets remains a long way off. *See Kaleta*, 2012 WL 2577537, at *3. Lifting the stay in those conditions would invite the very "race for Receivership assets" the stay exists to prevent. Thus, the second factor does not weigh in favor of lifting the stay.

**3. Factor Three: The Merits of Movant's Claim**

Where the first two factors weigh against lifting the stay, the Court need not evaluate the third. *See Adams*, 2023 WL 8483662, at *2; *Kaleta*, 2012 WL 2577537, at *3. This Court has so held in this very receivership: "Whether th[e] third factor weighs in [the movant's] favor or not, the first two strongly favor the Receivership interest in maintaining the stay, and that is dispositive." Dkt. 584, p. 4; *see also* Dkt. 562, p. 3 (finding first two factors controlled where third factor was "a wash").

In any event, the third factor cuts in favor of denial here. The Receiver does not contest that Mountain Peak is a political subdivision with general authority to condemn easements for water purposes under Texas Water Code § 49.222 and Chapter 21 of the Texas Property Code. But that general authority is not the question. The question is whether Mountain Peak has shown an entitlement to condemn *these* easements, on *these* tracts, at this point. It has not.

Mountain Peak relies almost entirely on the assertion that its board adopted a necessity resolution on January 12, 2026. Dkt. 727 ¶ 12. But the Motion does not attach that resolution. Even if it did, a unilateral resolution would not tell the Court whether the proposed easements are appropriately located (and why it could not be placed elsewhere), whether the proposed compensation is fair, whether the affected tracts have been valued before and after the encumbrance, whether the proposed construction and restoration plans protect the estate, or whether the alternatives have been considered. And Mountain Peak has not addressed Texas Property Code § 21.0113, which requires an entity with eminent domain authority to make a bona fide offer to acquire the property voluntarily before commencing condemnation. *See* TEX. PROP. CODE § 21.0113 (requiring a bona fide offer prior to commencing condemnation proceedings). No formal offer has been provided to the Receiver. On this record, Mountain Peak has failed to demonstrate the merits of its claim.

At most, Mountain Peak has shown that it may have a public water project and may have condemnation authority in an appropriate case. It has not shown that it has satisfied the prerequisites for condemnation, and it has not shown that a separate condemnation action should proceed against receivership property while the receivership estate remains under this Court's control.

### C. Mountain Peak's Sole Authority, *In re Still*, Is Inapposite.

Mountain Peak relies on *In re Still*, 117 B.R. 251 (Bankr. E.D. Tex. 1990), for the proposition that a federal court in Texas has lifted a stay to permit easement condemnation. Dkt. 727 ¶ 13. For starters, that case involved a different posture where a dispute arose *after* the pipeline company had already sought and obtained relief from the bankruptcy court before the rescheduled condemnation hearing occurred. *Id.* at 253. The later dispute concerned whether the initial notice merely setting the hearing (prior to seeking relief from stay and the later refiled

condemnation action) violated the automatic stay. *Id.* at 254. The bankruptcy court denied relief largely because it found that utility's actions did not amount to a stay violation but also stated that, in the alternative, it would have annulled the stay anyway under § 362(d). *Id.* at 254–55. Thus, its import for this case is minimal.

More fundamentally, *Still* involved relief from the automatic stay in a Chapter 11 bankruptcy, rather than a federal equity receivership. The standard there is statutory, governed by 11 U.S.C. § 362(d) and its "cause" based framework. *See* 11 U.S.C. § 362(d) (setting forth "for cause" standard for relief from the bankruptcy automatic stay). This case involves an equitable, court-issued stay in an SEC enforcement receivership, and the governing standard is the *Stanford*/*Wencke* framework that this Court has now applied multiple times in this case. At best, *Still* might suggest that utility condemnation can sometimes suffice as adequate "cause" in a bankruptcy proceeding to lift the automatic stay. Mountain Peak has not identified, and the Receiver is not aware of, any decision of this Court or the Fifth Circuit holding that the existence of a condemning entity's state law authority is, by itself, sufficient to lift an SEC receivership stay over the Receiver's objection.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Receiver respectfully requests that the Court deny Mountain Peak's Motion to Lift Stay. Mountain Peak has not shown that stay relief would preserve the receivership status quo, that it will suffer substantial injury if required to proceed through the receivership process, that the timing of this request supports disturbing the stay, or that it has satisfied the prerequisites necessary to proceed with condemnation of Receivership Property. The Court should therefore maintain the Receivership Order's stay and deny the Motion.

Respectfully submitted,

By: */s/ C. Alan Carrillo*

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
Texas Bar No. 24109693
alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.