IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *Plaintiff*, | § | |
| v. | § | NO. 3:22-cv-2118-X |
| TIMOTHY BARTON, et. al., *Defendants*. | § | |

**MOUNTAIN PEAK SPECIAL UTILITY DISTRICT'S REPLY IN SUPPORT OF EMERGENCY MOTION TO LIFT LITIGATION STAY TO PURSUE CONDEMNATION OF PUBLIC WATERLINE EASEMENTS**

Third-Party MOUNTAIN PEAK SPECIAL UTILITY DISTRICT (hereafter "Movant") files this Reply in Support of its Motion to Lift Litigation Stay to Pursue Condemnation of Public Waterline Easements. In support thereof, Movant respectfully shows the Court as follows:

## INTRODUCTION

The Receiver's response relies heavily on general receivership stay cases involving claims materially different from the present dispute, including creditor claims, foreclosure efforts, insurance disputes, personal injury suits, arbitration proceedings, and other private tort and contractual claims. But the Receiver does not cite a single case applying the *Wencke* factors in the context presented here: a governmental entity seeking relief from a federal stay in order to exercise eminent-domain authority for a public infrastructure project.

That distinction is critical. Condemnation proceedings are fundamentally different from private creditor- or investor-driven litigation because condemnation involves sovereign authority and constitutionally protected public-use powers. The Receiver's response repeatedly treats Mountain Peak's request as though it were an attempt to deplete receivership assets or take away from the pool of available funds for private benefit. It is not.

Importantly, the Receiver does not dispute that Mountain Peak possesses general condemnation authority. The issue before the Court is therefore not whether Mountain Peak may ultimately condemn the easements. The issue is whether Mountain Peak may proceed through the ordinary Texas condemnation process now, or whether the Receivership Stay temporarily suspends otherwise valid governmental condemnation authority.

As explained below, the authorities most analogous to the present dispute make clear that condemnation proceedings are generally permitted to proceed notwithstanding federal stay protections. Further, even applying the Wencke factors, the balance favors lifting or modifying the stay.

## ARGUMENTS AND AUTHORITIES

### 1. Condemnation Proceedings Are Fundamentally Different from the Private Claims Addressed in the Receiver's Authorities.

The Receiver cites numerous general receivership stay cases involving requests to pursue ordinary private litigation. But the Receiver cites virtually no authority addressing the interaction between federal stay protections and requests to proceed with condemnation. That omission is significant because courts consistently recognize that eminent domain deserves different treatment than ordinary creditor collection activity.

The cases most analogous to the present dispute are instead bankruptcy cases addressing requests to proceed with condemnation notwithstanding automatic federal stay protections. Those courts recognize that eminent domain implicates sovereign authority and public-use powers not present in ordinary private disputes.

For example, in *In re Quality Supplier General Partnership*, the court explained that "[t]he state's right to take property for public use is an attribute of sovereignty, of great importance," and that "[t]he guiding principle should be to permit the exercise of the power of eminent domain to

the greatest extent" possible. 176 B.R. 135, 141-42 (Bankr. D. Md. 1994) (citing *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co*., 739 F.2d 1169, 1174-75 (7th Cir. 1984)). The court further explained that "[d]eference should be given to the state's sovereign power of eminent domain," and that "exercise of the state's power of eminent domain should not be readily found to conflict with the purposes of federal law." *Id*. at 142 (citing *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co*., 739 F.2d at 1174 n.4). While courts should attempt to reconcile adverse interests, "if the conflict is not reconcilable, the state's sovereign powers must prevail." *Id*. (citing *Commonwealth v. Bartlett*, 384 F.2d 819, 822 (1st Cir.1967)).

The underlying reasoning is that the government's eminent-domain power "is paramount to any interest of the debtor in the property." *Id*. at 140 (citing *Bartlett*, 384 F.2d at 822). Meaning, the debtor never possessed property rights free from the government's condemnation authority in the first place. *See id*. Thus, the debtor, receiver, or court cannot "convey, qualify, or subordinate" that authority to competing claims or interests. *Id*. Rather, the sovereign power of eminent domain exists independently from the ultimate administration or distribution of the estate. *See id*. Accordingly, a federal stay does not create immunity from otherwise valid exercises of eminent domain. *See id*.

Ultimately, the court concluded that a balancing test should govern requests to proceed with condemnation notwithstanding federal stay protections. Under that framework, the federal interest in protecting a debtor's right to reorganize may temporarily prevail where doing so does not "substantial[ly] harm" "the state's interests in pursuing condemnation of a debtor's property." *Id*. at 141. However, if the property is not necessary to reorganization, "the state should be allowed to proceed with its condemnation." *Id*. Further, "where an irreconcilable conflict appears between a debtor's opportunity to reorganize and the public interest served by the state's exercise of eminent-domain powers, the debtor's reorganization must yield." *Id*.

Here, when the competing interests are properly balanced, the State's interest in exercising its condemnation authority should prevail. The Receiver undoubtedly has obligations relating to administration of the Receivership Estate, preservation of assets, and distribution to investors and creditors. But those functions can operate independently and without interference from Mountain Peak's condemnation. Indeed, both processes can coexist and proceed simultaneously without changing the status quo, which in this case would be actually moving forward with condemnation rather than not. The Receiver can continue administering the estate while Mountain Peak proceeds through the ordinary Texas condemnation process.

Importantly, the Receiver does not dispute that Mountain Peak possesses condemnation authority. Thus, the issue is not whether condemnation may ultimately occur. Mountain Peak possesses the authority to condemn now, and it will possess that same authority later regardless of how the Receivership Estate is ultimately administered or distributed. Maintaining the stay therefore serves little to no practical purpose because it simply delays the exercise of eminent domain.

Further, preventing Mountain Peak from proceeding with condemnation substantially impairs Mountain Peak's interests because it prevents Mountain Peak from moving forward with the statutory procedures necessary to acquire easements for public water infrastructure without delay. At the same time, the Receiver has not shown that allowing condemnation proceedings to move forward would materially interfere with administration of the Receivership Estate, particularly where any compensation awarded would become part of the Receivership Estate under this Court's supervision.

Finally, to the extent these interests cannot be fully reconciled, the bankruptcy-condemnation cases recognize that the sovereign's eminent-domain power must ultimately prevail over continued protection from condemnation.

**2. Even Applying the Wencke Factors, the Balance Favors Lifting the Stay to Permit Condemnation Proceedings.**

**a. The First Wencke Factor Favors Relief Because Condemnation Will Not Diminish the Receivership Estate.**

Contrary to the Receiver's arguments, allowing Mountain Peak to proceed with condemnation will not diminish the total pool of funds available to investors, creditors, or alleged victims. The principal concern underlying the Receiver's cited authorities was preservation of receivership assets and prevention of piecemeal litigation that could deplete limited funds available for equitable distribution. Those cases involved private parties attempting to recover money damages, collect debts, or obtain priority access to receivership assets. In those circumstances, every dollar recovered by an individual claimant reduced the funds available to others allegedly harmed by the same conduct. That concern is not present here.

Mountain Peak is not seeking money from the Receivership Estate or seeking priority over other claimants. The requested underground utility easements involve limited and defined property interests and do not prevent the Receiver from continuing to market, develop, or otherwise administer the property. In fact, the installation of the needed water pipeline will move the property closer to development and will enhance, rather than impair, the value of the presently undeveloped property. Instead, Mountain Peak seeks to pay compensation to the estate in exchange for limited easement rights necessary for public infrastructure. Accordingly, the "status quo" concerns identified in the Receiver's authorities do not apply with equal force in the condemnation context. Condemnation does not deplete the Receivership Estate or reduce the total pool of available funds. Rather, condemnation simply converts one form of property interest into another through a court-supervised process structured to guarantee just compensation. *See In re RIM Dev., LLC*, No. 10-10132, 2012 WL 3597575, at *2 (Bankr. D. Kan. Aug. 6, 2012) (recognizing that condemnation proceedings would "result in cash payment to the debtor and/or lienholders on the property equal

to the fair market value of the condemned property" and therefore would "not prevent the effective reorganization of the debtor"). Any compensation awarded through the condemnation process would itself become part of the Receivership Estate and remain subject to this Court's supervision.

If Mountain Peak is not permitted to proceed, it will suffer substantial injury because it cannot begin the statutory condemnation procedures necessary to acquire easements for public water infrastructure. The stay effectively prevents Mountain Peak from moving forward with a public infrastructure project and exercising statutory procedures otherwise available under Texas condemnation law.

**b. The Second Wencke Factor Favors Relief Because Maintaining the Stay Merely Delays, Rather Than Prevents, Condemnation.**

The Receiver repeatedly characterizes the Receivership as being in its "early stages," while simultaneously acknowledging that the Receivership has "no determinable end." Under the Receiver's position, Mountain Peak would effectively be prevented from initiating condemnation proceedings for an indefinite period despite possessing undisputed condemnation authority.

The bankruptcy-condemnation cases reject that result. As those courts recognize, a federal stay may temporarily postpone condemnation proceedings, but it does not create immunity from otherwise valid exercises of eminent domain. Mountain Peak possesses condemnation authority now, and it will possess that same authority later regardless of how the Receivership Estate is ultimately administered or distributed. Maintaining the stay therefore serves little to no practical purpose because it simply delays the exercise of eminent domain.

Unlike the Receiver's cited authorities, this case does not involve duplicative litigation, competing claims to the same pool of money, or efforts to obtain priority over other claimants. The Receiver may continue administering the estate while Mountain Peak simultaneously proceeds through the ordinary Texas condemnation process. Again, the condemnation proceeding would

not diminish the Receivership Estate. It enhances it. The limited property interests sought by Mountain Peak would simply be converted into compensation that remains under the Receiver's control and subject to this Court's supervision.

**c. The Third Wencke Factor Favors Relief Because Mountain Peak Possesses a Colorable Condemnation Claim.**

Under the third Wencke factor, Mountain Peak is not required to conclusively prove the entire condemnation case before obtaining relief from the stay. Rather, the inquiry is whether Mountain Peak possesses a "colorable" claim sufficient to justify allowing the litigation to proceed. *S.E.C. v. Wencke*, 742 F.2d 1230, 1232 (9th Cir. 1984). Indeed, it is an "abuse of discretion for the district court to rule on the merits of [movant's] claims in a proceeding to lift the stay." *Id.* All Mountain Peak must demonstrate is a facially cognizable condemnation claim sufficient to justify permitting the litigation to proceed.

The Receiver nevertheless repeatedly argues that Mountain Peak has not yet established, through evidence, certain issues related to a condemnation proceeding, including public necessity, compliance with condemnation prerequisites under the Property Code, and valuation of the land and property interests involved. But those are issues ordinarily resolved within the condemnation proceeding itself. Mountain Peak seeks relief from the stay precisely so that it may begin that process.

Mountain Peak cannot conclusively establish many of the very issues identified by the Receiver because the stay itself presently prevents Mountain Peak from proceeding through the ordinary condemnation process. For example, the Receiver incorrectly criticizes Mountain Peak for not completing pre-condemnation procedures and related valuation and acquisition steps (it has met every statutory pre-requisite), while simultaneously taking the position that the stay prohibits Mountain Peak from pursuing those procedures against Receivership Property. The Receiver's

position would therefore require Mountain Peak to substantially prove the condemnation case before being entitled to relief from the stay, while at the same time preventing Mountain Peak from taking the statutory steps necessary to develop and litigate those issues in the first place.

But *Wencke* does not require Mountain Peak to conclusively establish the merits of the condemnation proceeding before being permitted to proceed. Mountain Peak is required only to demonstrate a colorable claim, which it has done here. Again, the Receiver does not dispute that "Mountain Peak is a political subdivision with general authority to condemn easements for water purposes…." Thus, the Receiver does not dispute that Mountain Peak possesses condemnation authority or that Mountain Peak seeks the easements for a public infrastructure project. The relevant question therefore becomes whether Mountain Peak may proceed through the ordinary Texas condemnation process. In support of its request, Mountain Peak submits the attached Affidavit of Ruben Garza (Interim General Manager), which establishes at minimum a facially valid and colorable basis for the proposed condemnation proceeding. Said Affidavit is attached hereto and incorporated herein for all purposes as Exhibit "A."

Ruben Garza's affidavit establishes the legitimacy and public necessity of the Project. The affidavit explains the public need for the proposed water infrastructure, the planning and engineering considerations used to identify the proposed route, and the limited nature and scope of the easement interests sought. The affidavit further explains that the proposed waterline easements involve relatively minor surface impacts associated with underground utility infrastructure and require minimal interference with the subject property. The affidavit also explains that the property remains largely undeveloped and that the proposed water infrastructure is expected to support and enhance future development of the surrounding area rather than materially impair the property. Finally, the affidavit confirms that Mountain Peak sought relief

from this Court before initiating condemnation proceedings because it understood the Receivership Stay prohibited proceeding directly against Receivership Property absent Court authorization.

Thus, this request is neither speculative nor premature. It concerns a concrete public infrastructure project that Mountain Peak is legally authorized to pursue and that may proceed independently from the ultimate administration or distribution of the Receivership Estate.

## CONCLUSION

For the foregoing reasons, Mountain Peak respectfully requests that the Court lift or modify the Litigation Stay to permit Mountain Peak to proceed through the ordinary Texas condemnation process regarding the requested public waterline easements. The Receiver's cited authorities concern materially different circumstances involving private claims that threatened to deplete or compete for limited receivership assets. By contrast, Mountain Peak seeks only to exercise undisputed eminent-domain authority for a public infrastructure project while providing constitutionally required compensation that would remain subject to this Court's supervision and control. Further, even under the *Wencke* factors, the balance favors relief because maintaining the stay merely delays, rather than prevents, the exercise of eminent domain, while substantially impairing Mountain Peak's ability to move forward with the statutory condemnation procedures necessary for the Project.

Dated: May 26, 2026

Respectfully submitted,

**BAKER MORAN DOGGETT MA & DOBBS LLP**

By: /s/ *Jordan A. Miller*
JORDAN A. MILLER
State Bar No. 24074720
jmiller@bakermoran.com
1400 Preston Road, Suite 295
Plano, Texas 75093-3601
Tel.: (469) 351-3500; Fax: (469) 351-3490

**ATTORNEY FOR MOVANT,**
**MOUNTAIN PEAK SPECIAL UTILITY DISTRICT**

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic filing system.

*/s/ Jordan A. Miller*
Jordan A. Miller