FILED-USDC-NDTX-DA
'26 JUN 5 PM4:18
JJF

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § | Civil Action No. 3:22-cv-2118-X |
| v. | § § § | |
| TIMOTHY L. BARTON, et al., | § § | |
| *Defendants.* | § | |

**DEFENDANT TIMOTHY L. BARTON'S RESPONSE AND OBJECTION TO THE RECEIVER'S VERIFIED AND EMERGENCY MOTION TO DECLARE LIS PENDENS VOID [DKT. 741], AND REQUEST TO HEAR THE PRESERVATION MOTION FIRST**

Defendant Timothy L. Barton ("Barton"), appearing pro se, submits this Response and Objection to the Receiver's Verified and Emergency Motion to Declare Lis Pendens Void [Dkt. 741] (the "Motion"). Barton files within the expedited schedule the Court entered on June 4, 2026 [Dkt. 743], which directs Barton to respond by June 6, 2026 and permits the Receiver to reply by June 8, 2026. Barton opposes the Motion.

The Court ordered expedited *briefing*; it did not order expedited *disposition*, and it has not granted the relief the Receiver seeks. The threshold request of this Response is simple and decisive: the Court should hear Barton's Motion for Preservation of Status Quo Under Rule 60(b), filed June 3, 2026 (the "Preservation Motion"), first—or, at a minimum, decide the two motions together. The Court should not permit the Receiver to close any sale, and thereby irrevocably moot the Preservation Motion, before the Court has heard it. The two filings concern overlapping property and the very same imminent closings; expedited briefing on the lis pendens makes that risk more acute, not less.

Barton does not ask the Court to disregard its prior ruling at [Dkt. 104]. He asks the Court to decline to resolve a contested, irreversible question under artificial time pressure, in isolation from the broader motion that squarely presents whether these sales should close at all right now.

## SUMMARY OF THE OBJECTION

1. **The Preservation Motion should be heard first, and it reaches more than these four properties.** The Preservation Motion asks the Court to hold the status quo as to *all* Receivership real property whose previously approved sale has not yet consummated—expressly including the Frisco Gate Property, the Rock Creek Property, the Amerigold Suites, and any other unconsummated sale. The Motion, by contrast, addresses only four recorded notices. The broad, dispositive question (should any of these sales close now?) subsumes the narrow one (are four notices void?). The narrow motion should not be decided ahead of the motion that frames it.

2. **The asserted emergency is manufactured.** Barton recorded the four notices on July 31, 2024. The Receiver waited roughly twenty-two months to challenge them. The estate is solvent, and the only deadline in sight is a closing schedule the Receiver himself set and can move. A party that sat for nearly two years cannot credibly insist the Court must brief, decide, and act within days.

3. **The Receiver's own position defeats the emergency.** The Receiver relies on [Dkt. 104], where the Court found a prior lis pendens "would not have encumbered the sale even if it were not [void]." If that is so, the closings can proceed regardless of these notices, and nothing is lost by hearing the Preservation Motion first. The Receiver cannot treat the notices as both harmless to the sales and an emergency requiring relief in days.

4. **There is no urgency as to three of the four properties—and Frisco is not even among them.** The Receiver grounds the emergency in "Rock Creek and Frisco" closings. Frisco is not one of the four properties subject to the notices, and the Motion identifies no imminent closing for the Goldmark, Turtle Creek, or Hall Street properties. As to those three, no emergency is even alleged.

5. **Granting the Motion now would irrevocably moot the Preservation Motion.** Once clear title passes to a third-party purchaser, the transfer cannot be undone, and the real-property equity converts into fungible cash. There would be no status quo left to preserve. That mootness would be an accident of sequencing, not a decision on the merits—and the relief Barton requests is precisely what avoids it.

6. **Coercive sanctions cannot issue on this posture.** Coercive contempt sanctions require notice and an opportunity to be heard. An open-ended request for unspecified "additional coercive sanctions," briefed on a two-day turnaround, cannot satisfy that standard.

7. **The $2,700 fee request fails as a matter of law.** A fee-based sanction must be compensatory and limited to fees the movant would not have incurred but for the sanctioned conduct, and the movant bears the burden to document the hours and rates actually expended. The Receiver supplies no hours, no rates, no records, and no causal showing—only a lump sum pegged to a prior, different award. That is not a basis for any award.

8. **On the merits, summary voiding in isolation is premature.** Whether the notices are valid is intertwined with the Rule 60(b) and *Luis* questions raised by the Preservation Motion. The Court should resolve that motion first rather than void the notices summarily, in isolation, and under time pressure.

## I. RELEVANT BACKGROUND

On July 31, 2024, Barton recorded four notices of lis pendens in the Dallas County real property records against the Goldmark, Rock Creek, Turtle Creek, and Hall Street properties. Mot. 2. The Court entered the operative Receivership Order on June 23, 2025 [Dkt. 650]. The Fifth Circuit affirmed in *SEC v. Barton*, No. 24-10004 (5th Cir. Apr. 17, 2025) (mandate issued June 23, 2025). On August 7, 2025, the Court administratively closed the case while preserving the Receiver's ability to perform his duties and the parties' ability to make appropriate filings [Dkt. 671].

The Receiver filed the Motion on June 3, 2026—nearly twenty-two months after the notices were recorded—and asked the Court to rule "on or before June 10, 2026." Mot. 5. The same day, Barton filed the Preservation Motion under Rule 60(b), asking the Court to hold the status quo on the not-yet-consummated sales until it resolves (i) whether Paragraph 94 of the Receivership Order requires a "further Order" before transfer of clear title; (ii) whether the repeatedly amended, multi-year-old transactions still satisfy 28 U.S.C. § 2001 and Paragraph 93's "true and proper value" command; and (iii) whether the contracted Frisco Gate purchaser remains qualified and able to close. On June 4, 2026, the Court ordered expedited briefing [Dkt. 743]. That order sets a schedule; it does not grant the Motion, and it does not direct that any sale close.

## II. ARGUMENT

### A. The Court should hear the Preservation Motion first; it subsumes the lis-pendens question and reaches the entire status quo.

The Preservation Motion and the Motion arrive together, but they are not coequal. The Preservation Motion asks the threshold question—whether any of the Receivership's not-yet-consummated sales should be permitted to close right now, given Paragraph 94's "further

Order" requirement, the staleness of the approving record, 28 U.S.C. § 2001, and the *Luis* analysis. The Motion asks a narrow, derivative question: whether four recorded notices should be declared void so that two of those same closings can proceed without delay. Resolving the narrow question first would put the cart before the horse: it would clear the path for the very closings whose propriety the Preservation Motion places squarely at issue.

The mismatch in scope underscores the point. The Preservation Motion seeks to hold the status quo as to *all* Receivership real property whose previously approved sale has not consummated—Frisco Gate, Rock Creek, Amerigold Suites, and any other such property. The four notices reach only Goldmark, Rock Creek, Turtle Creek, and Hall Street. The only property common to both is Rock Creek. Deciding the Motion in isolation would therefore resolve neither the broader preservation question nor even the full set of properties Barton has asked the Court to protect. The orderly and efficient course is to take up the Preservation Motion first, or to decide both together. That sequence costs the estate nothing—as shown below, there is no emergency—and it preserves the Court's ability to grant meaningful relief.

**B. The asserted emergency is manufactured and cannot justify a rushed, irreversible disposition.**

The Motion is styled "emergency," but the record shows none. Barton recorded the notices on July 31, 2024. The Receiver allowed them to sit for roughly twenty-two months before seeking relief. A litigant who waits nearly two years is poorly positioned to insist that the Court must not only brief, but decide and act, within days.

The estate faces no cash crisis. The Fifteenth Quarterly Status Report reflects a fund balance of approximately $1,245,547.36 as of March 31, 2026, with no imminent cash

requirement.[1] The only time pressure the Receiver identifies is a closing schedule he controls and can adjust—the same kind of self-set deadline that, in [Dkt. 728], the Receiver describes managing through repeated extensions. Self-generated urgency is not an emergency. It is a scheduling choice, and it cannot justify foreclosing the Court's consideration of a pending, dispositive motion.

The Receiver's own accounting understates how far the estate is from any cash emergency. Beyond the fund balance reflected in its quarterly status report, [more than one million dollars] are held in receivership estate [Dkt. 728], and the status report identifies no outstanding bill, obligation, or expense of the estate that is due, unpaid, or otherwise at risk absent an immediate sale. The status report supplies no exhibit, accounting, or declaration showing what funds the estate purportedly needs, when any obligation comes due, or how the proceeds of the challenged closings would be applied. A party asserting an emergency cash need must demonstrate that need; the Receiver demonstrates none.

The asserted urgency is also irreconcilable with the Receiver's own prior representations and conduct. When the Receiver sought the Court's approval to sell, it represented that the estate lacked available funds [Dkt. 77, Dkt 84, Dkt 85, Dkt 93, Dkt 119, Dkt 308, Dkt 374, Dkt 376, Dkt 378, Dkt 467, Dkt 500, Dkt 513, Dkt 528, Dkt 714]—a representation that cannot be squared with the solvent estate its current accounting reflects. And a fiduciary genuinely facing a cash emergency would not continue to pay its own fees and those of its professionals ahead of the estate's needs, yet the Receiver has continued to do so. The Receiver cannot manufacture an emergency from an estate that its own filings show to be solvent and that it administers without any unmet obligation.

---

[1] *See* [Dkt. 728-1] Ex. A-1 (Standardized Fund Accounting Report reflecting a balance of $1,245,547.36 as of March 31, 2026). The Receiver's own Fifteenth Quarterly Status Report thus reflects a solvent estate facing no imminent cash requirement.

**C. The Receiver's own authority shows the notices do not block the sales—which removes any emergency.**

The Receiver leans on [Dkt. 104], where the Court declared a prior Rock Creek lis pendens void and found it "would not have encumbered the sale even if it were not [void]." Mot. 2. The Receiver cannot have it both ways. If a notice of this kind does not encumber the sale, the Rock Creek closing can proceed on schedule regardless of when the Court rules, and there is no harm in deciding the Motion together with the Preservation Motion. If instead the notice does cloud title and could delay a closing, then it is performing exactly the preservation function at the heart of the Preservation Motion—and the two motions plainly belong before the Court together. Either way, the "emergency" framing collapses.

**D. No emergency exists as to Goldmark, Turtle Creek, or Hall Street, and Frisco is not among the four notices.**

The Receiver justifies expedition by pointing to "upcoming closing dates currently scheduled for the Rock Creek and Frisco properties." Mot. 1 n.1; see also Mot. 5. Two defects follow. First, Frisco is not one of the four properties subject to the challenged notices, which encumber Goldmark, Rock Creek, Turtle Creek, and Hall Street. Mot. 2. Whatever urgency a Frisco closing may carry has nothing to do with these notices. Second, of the four, only Rock Creek is tied to any asserted imminent closing; the Motion identifies no pending closing for Goldmark, Turtle Creek, or Hall Street. There is no basis to rush relief as to those three at all—and, as shown above, even the single time-sensitive property dissolves under the Receiver's own [Dkt. 104] position.

**E. Granting the Motion now would irrevocably moot the Preservation Motion and any Luis claim.**

This is the heart of the objection, and the point on which the requested sequencing turns. If the Court voids the notices and the closings proceed, the Preservation Motion will not be denied on its merits—it will simply cease to matter. Real property is unique, and the transfer of clear title to a third-party purchaser is, as a practical matter, irreversible. Once Rock Creek (and Frisco) close, the real-property equity converts into pooled, fungible receivership cash, and there is no longer any "status quo" for the Court to preserve. The Preservation Motion would be rendered moot not by a considered ruling, but by the accident of which motion the Court reached first.

That outcome would also extinguish, before it can be heard, Barton's *Luis* argument. In *Luis v. United States*, 578 U.S. 5 (2016), the Supreme Court held that the Sixth Amendment bars the pretrial restraint of legitimate, untainted assets a defendant needs to retain counsel of choice. Barton is a defendant in a parallel federal criminal proceeding. To the extent any portion of the equity in these properties is untainted, converting that equity into commingled cash through closing would foreclose or substantially impair the *Luis* analysis the Preservation Motion asks the Court to undertake. A litigant should not lose the substance of a pending motion—or a constitutional argument—because an adversary obtained a faster order on a related one. The Preservation Motion is itself a serious filing: it invokes the settled *Rufo–Horne* framework under which a significant change in factual conditions can render continued prospective enforcement of a prior order inequitable. See *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992); *Horne v. Flores*, 557 U.S. 433 (2009). Those questions deserve to be decided, not bypassed.

**F. The request for coercive sanctions must be denied or deferred.**

The Receiver asks the Court to "consider whether additional coercive sanctions are warranted to deter further violations." Mot. 4–5. Coercive civil contempt is a serious remedy, and it may be imposed only upon notice and an opportunity to be heard. See *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). An open-ended request for unspecified coercive sanctions—of unstated nature and amount, briefed on a two-day turnaround—cannot satisfy that standard, because Barton has had no meaningful opportunity to respond to a sanction that has not been defined. Moreover, a sanction framed to "deter" rather than to compensate or to coerce compliance through a purgeable condition edges from civil into criminal contempt, which carries still greater procedural protections. *Bagwell*, 512 U.S. at 827–29. Any request for coercive sanctions should be denied or, at a minimum, deferred to a separately noticed proceeding stating a defined charge.

**G. The $2,700 fee request fails as a matter of law.**

The Receiver seeks $2,700 as "compensatory sanctions" but offers nothing to support it—no time records, no hourly rates, no statement of hours, and no description of the work performed. That request fails on its own terms, for two independent reasons.

First, a fee award imposed as a sanction must be *compensatory*, not punitive, and must be limited to the fees the movant would not have incurred but for the sanctioned conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017). The award must be "calibrated" to the loss the misconduct actually caused; a court must establish a but-for causal link between the conduct and the fees awarded. *Goodyear*, 581 U.S. at 108–09. The Receiver makes no causal showing at all. He does not identify what work the notices required, or why $2,700 (rather than any other figure) reflects fees caused by the filings as opposed to fees he would have incurred regardless.

Second, the party seeking fees bears the burden of establishing entitlement and of documenting the hours expended and the rates claimed; where that documentation is absent, the request cannot be sustained. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); see also id. at 433 (movant "should submit evidence supporting the hours worked and rates claimed"). The Receiver substitutes for that evidence a bare invocation of consistency with the Court's prior award in [Dkt. 104]. But the reasonableness of a fee in a different motion, on a different record, is not evidence of the hours and rates actually and reasonably incurred in preparing *this* Motion. On the record presented, there is no basis for any award. The request should be denied.

**H. If the Court reaches the merits, it should not void the notices summarily and in isolation.**

Barton does not ask the Court to find, on this compressed record, that the notices are valid; that question is bound up with the Preservation Motion and should be resolved with it. Barton asks only that the Court not resolve it the wrong way—summarily, in isolation, and under time pressure—before the related motion is heard.

The Receiver argues the Court "has no obligation" to follow the Texas Property Code's expunction and cancellation procedures, relying on *In re Duval County Ranch Co.*, 155 B.R. 723 (Bankr. S.D. Tex. 1993). Mot. 4. But the language the Receiver himself quotes shows why *Duval* does not govern here: that court acted because there was "an outright conflict between Federal and State law," such that "compliance of both Federal and State laws [was] impossible." Mot. 4 (quoting *Duval*, 155 B.R. at 727). No such impossibility is present. The Texas expunction statute, Tex. Prop. Code § 12.0071, directs a court to rule on a motion to expunge after notice and a hearing, on affidavits, counter-affidavits, and "any other proof the court allows." § 12.0071(c)–(e). That process can be applied without disturbing any federal command, and it would give the Court a developed record rather than a summary declaration.

If the Court is inclined to reach the merits, the better course is to set the matter under § 12.0071—together with, or after, the Preservation Motion—so that the validity question is decided on evidence, not on a two-day exchange of briefs.

Barton is mindful that § 12.007 authorizes a lis pendens only in an action involving title to, an interest in, or an encumbrance on the property, and that a notice resting on a merely collateral interest may be subject to expunction. See Mot. 3 (citing *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995)). That is one more reason to resolve the intertwined Preservation Motion—which develops the *Luis* untainted-equity question on a proper record—before any final determination on the notices, rather than to foreclose that question by an irreversible closing.

**I. The Receiver's representations at the July 23, 2024 hearing confirm there is no emergency.**

The Receiver's claim of emergency is also irreconcilable with the representations on which the Court approved the underlying sales. At the July 23, 2024 hearing on the Receiver's motions to approve the Amerigold Suites and Hall Street sales, the Receiver's position—as stated in its reply brief and recounted on the record without contradiction—was that those sales would not close until the pending Fifth Circuit appeal of the Receivership Order was concluded. [Dkt. 561] (Tr. 13). The Court approved the sales on that very understanding, explaining that it would enter approval "knowing that there wouldn't be a closing until after appeals are exhausted." (Tr. 27). A transaction the Receiver itself represented could not close until the appeals were resolved cannot now furnish the "emergency" the Receiver invokes to justify summary, irreversible relief on a two-day schedule.

The Court's approval also rested on the premise that the sales involved no concealment of the litigation from buyers or title companies. The Court stated that it did not want "deception

to cause a higher price" and was "not trying to benefit the receivership estate at the expense of unwitting buyers." (Tr. 25). It reasoned that because there would be no closing "until the litigation has concluded over the validity of the receivership's authority," there was "no deception going on, on the Receiver's part." (Tr. 24–25). Barton's counsel, for his part, urged that "the Receiver should be transparent with the title companies . . . that these appeals are going on," and observed that buyers and title companies were "looking for [the appeal] to be resolved before they're willing to close on these sales." (Tr. 16, 24). The propriety of the sales thus turned on buyers and title companies being informed of the pending appeals and of the challenge to the Receiver's authority.

The relief the Receiver now seeks is in tension with those representations. An emergency order voiding the lis pendens, so that title may pass "free and clear" and the closings may proceed at once, is the opposite of the appeal-contingent, fully disclosed sales the Court approved. If the Receiver and its counsel did disclose the pending appeals and the litigation risks to each buyer and title company—as the premise of the Court's approval required—then no emergency exists, because each buyer agreed to proceed with knowledge of the contingency and the notices create no obstacle the buyer did not already accept. If those disclosures were not made, the Court should not lend its process to delivering "clean" title on a record that conceals the very litigation the Court was assured would be disclosed. If the Receiver previously committed, in writing or on the record, to disclose the pending appeals to any title company and buyer in connection with a future sale, that commitment independently forecloses the relief now sought and should be enforced. Either way, before any relief issues, the Receiver should be required to demonstrate, for each sale, what it and its counsel have told and will tell the buyer and the title company about the pending appeals and the challenge to its authority; that each buyer is bona fide and financially able to close; and whether, and on what conditions, title is expected to issue notwithstanding the pending appeals. Barton has already been required

to bear the Receiver's fees and the costs of these proceedings; he should not also bear the risk of closings the Receiver represented would not occur until the appeals were resolved.

### J. Barton preserves his objections to the expedited process and reserves all rights.

To the extent the Court reaches and denies any part of the relief Barton requests, Barton respectfully preserves his objections for the record. The Receiver's compressed, two-day schedule does not afford a meaningful opportunity to develop the contested factual record on which the validity of the notices and the propriety of the closings depend. The relief the Receiver seeks would extinguish recorded interests in real property and implicates Barton's property and title rights, as well as the rights of related parties. The questions the Motion raises are intertwined with the Rule 60(b) and *Luis* issues presented by the Preservation Motion—questions that warrant evidentiary development rather than summary resolution under time pressure. Consistent with that orderly course, and because this action remains administratively closed [Dkt. 671], Barton further requests that the Court remove the case from administrative closure so that these motions may be briefed, heard, and decided in the ordinary course. Barton does not waive, and expressly reserves, all objections and all rights, including the right to seek reconsideration and appellate or mandamus review of any order entered on the present posture.

## III. CONCLUSION AND PRAYER

For these reasons, Defendant Timothy L. Barton respectfully requests that the Court:

1. Hear and decide Barton's Motion for Preservation of Status Quo Under Rule 60(b) before the Motion, or decide the two motions together;

2. Pending that resolution, direct that no closing or transfer of legal title to any of the subject properties occur until the Court has resolved the Preservation Motion;

3. Deny the Motion; and if the Court reaches the merits, decline to declare the notices void on the present record and instead set the matter for hearing under Tex. Prop. Code § 12.0071, with leave for Barton to submit affidavits and evidence;

4. Deny the Receiver's request for coercive sanctions, or defer it to a separately noticed proceeding stating a defined charge;

5. Deny the Receiver's request for $2,700 in fees;

6. Remove this action from administrative closure so that the Motion and the Preservation Motion may be briefed, heard, and decided in the ordinary course;

7. Before any relief issues, require the Receiver to demonstrate, for each sale at issue, (a) what it and its counsel have disclosed, and will disclose, to the buyer and the title company concerning the pending appeals and the challenge to the Receiver's authority; (b) that the buyer is bona fide and financially able to close; and (c) whether, and on what conditions, title is expected to issue notwithstanding the pending appeals; and

8. Grant such other and further relief to which Barton may be entitled.

Dated: June 5, 2026.

Respectfully submitted,

*/s/ Timothy L. Barton*
Timothy L. Barton
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

*/s/ Timothy L. Barton*
Timothy L. Barton