**(EXHIBIT A)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY BARTON, et al., | § | Civil Action No. 3:22-CV-2118-X |
| | § | |
| Defendants, | § | |
| | § | |
| DJD LAND PARTNERS LLCS, LDG001 LLC, | § | |
| | § | |
| Relief Defendants. | § | |

**DEFENDANT TIMOTHY BARTON'S OPPOSED MOTION FOR RECONSIDERATION OF THE PRE-FILING REQUIREMENT IN THE COURT'S ORDER (DKT. 747)**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy Barton, appearing pro se, respectfully moves the Court to reconsider and, in the alternative, to modify its June 5, 2026 Order (Dkt. 747) solely to the extent it requires him to seek leave of the Court before filing any motion. In support, Mr. Barton states as follows:

## I. INTRODUCTION AND NATURE OF RELIEF

Mr. Barton, now appearing pro se following the Court's June 5, 2026 Order granting the unopposed motion of his former counsel to withdraw (Dkt. 747; see Dkt. 724), seeks reconsideration only of the portion of the Order directing that he "must seek leave of the Court before filing any motion." Dkt. 747. Mr. Barton does not seek reconsideration of any other portion of the Order, including the grant of his former counsel's withdrawal.

A requirement that a litigant obtain the Court's permission before filing a motion is a pre-filing restriction on access to the courts. The Fifth Circuit permits such restrictions only where certain predicates are satisfied—notice and an opportunity to be heard, a record of vexatious,

harassing, or duplicative filings supporting the restriction, and consideration of less burdensome alternatives. With respect, the June 5 Order reflects none of these predicates. It was entered sua sponte in an order resolving an unopposed motion to withdraw, contains no finding that Mr. Barton has engaged in abusive litigation, and does not address less restrictive alternatives. Reconsideration is therefore warranted.

## II. BACKGROUND

On June 5, 2026, the Court entered an Order granting attorney Jules Slim's unopposed motion to withdraw as counsel for Mr. Barton. Dkt. 747 (granting Dkt. 724). In the same Order, the Court permitted Mr. Barton to represent himself pro se but directed that "he must seek leave of the Court before filing any motion." *Id.* The Order provides that this requirement "shall not apply to responses and replies filed pursuant to L.R. 7.1(e),(f)." *Id.*

The motion that prompted the Order (Dkt. 724) sought only leave for counsel to withdraw; it did not request the imposition of any pre-filing restriction on Mr. Barton. Mr. Barton did not receive notice that the Court was considering a pre-filing restriction, and had no opportunity to be heard on that question, before it was imposed. The Order does not recite any history of vexatious, harassing, or duplicative filings by Mr. Barton, nor does it identify any specific filing as the basis for the requirement.

## III. LEGAL STANDARD

The June 5 Order is interlocutory. Under Federal Rule of Civil Procedure 54(b), an order that does not adjudicate all claims as to all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Independent of the Rule, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981).

## IV. ARGUMENT

### *A. The leave requirement is a pre-filing restriction subject to the Fifth Circuit's requirements.*

A requirement that a party obtain judicial permission before filing a motion restrains that party's access to the court and is a form of pre-filing restriction. The Fifth Circuit has recognized that federal courts possess inherent authority to impose pre-filing restrictions to deter vexatious, harassing, or abusive litigation. Baum v. Blue Moon Ventures, LLC, 513 F.3d 181 (5th Cir. 2008). That authority, however, is not unbounded. Before imposing such a restriction, a court must weigh "all the relevant circumstances," including four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good-faith basis for pursuing the litigation or instead intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *Id.* at 189 (adopting Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 818 (4th Cir. 2004)). And because such restrictions implicate the right of access to the courts, due process requires that the affected party receive notice and an opportunity to be heard before a pre-filing restriction is imposed. *Id.* at 193; see Cromer, 390 F.3d at 819–20 (notice of a possible contempt finding "rarely" provides adequate notice that a pre-filing injunction is under consideration).

### *B. The predicates for a pre-filing restriction are absent here.*

#### *1. Mr. Barton received no notice and no opportunity to be heard.*

The leave requirement was imposed sua sponte in an Order resolving an unopposed motion to withdraw. No motion sought a pre-filing restriction, and Mr. Barton was not notified that one was under consideration or given any opportunity to respond before it issued. Due process requires both notice and an opportunity to be heard before a court restrains a litigant's ability to file. Baum, 513 F.3d at 193. Notice directed to a different question—here, counsel's withdrawal—does not supply notice that the Court is contemplating a restriction on the client's ability to file motions. Cf. Cromer, 390 F.3d at 819–20.

#### *2. The Order contains no findings of vexatious, harassing, or duplicative filings.*

A pre-filing restriction must rest on the party's "history of litigation," in particular a demonstrated pattern of "vexatious, harassing, or duplicative" filings. Baum, 513 F.3d at 189. The

June 5 Order recites no such history and identifies no filing by Mr. Barton as vexatious, harassing, duplicative, or made in bad faith. Absent findings tying the restriction to conduct that warrants it, the requirement is not supported under Baum.

***3. The Order does not address less restrictive alternatives.***

The fourth factor requires the Court to consider "the adequacy of alternative sanctions" before imposing a pre-filing restriction. Baum, 513 F.3d at 189. The Order reflects no such consideration. The Court retains ample tools to address any improper filing if and when one is made—including the requirements of Federal Rule of Civil Procedure 11, the Court's authority to strike improper papers, and its inherent power to sanction abusive conduct. A blanket requirement that Mr. Barton obtain leave before filing any motion is broader than necessary to protect the Court's docket, particularly where no abuse has been identified.

***C. Reconsideration is warranted; in the alternative, the requirement should be narrowed.***

Because the leave requirement was imposed without the notice, findings, and consideration of alternatives that govern pre-filing restrictions, reconsideration is appropriate to correct that error and to prevent the manifest injustice of restricting Mr. Barton's access to the Court at a critical stage of this litigation—including the status conference set for June 11, 2026, Mr. Barton respectfully requests that the Court strike the leave requirement.

Should the Court conclude that some management of Mr. Barton's pro se filings is warranted, Mr. Barton respectfully requests, in the alternative, that the Court narrow the requirement so that it is tailored to any specific concern.

## V. CONCLUSION AND PRAYER

For the foregoing reasons, Mr. Barton respectfully requests that the Court (i) reconsider the June 5, 2026 Order (Dkt. 747) and strike the requirement that he seek leave of the Court before filing any motion; or, in the alternative, (ii) modify that requirement as set forth above; and (iii) grant such other and further relief to which Mr. Barton may be entitled.

Dated: June 12, 2026

Respectfully submitted,

*/s/ Timothy L. Barton*
Defendant, Pro Se
1846 East Rosemeade Parkway,
#232 Carrollton, TX 75007
(214) 914-3811
*timothy.barton@proton.me*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

*/s/ Timothy L. Barton*
Defendant, Pro Se

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b), Defendant has conferred with counsel for the Receiver and counsel for the SEC regarding this Motion. The SEC and Receiver are opposed.

*/s/ Timothy L. Barton*
Defendant, Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY L. BARTON, et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT TIMOTHY L. BARTON'S OPPOSED MOTION TO REINSTATE HIS MOTION FOR PRESERVATION OF STATUS QUO <u>[DKT. 745], OR IN THE ALTERNATIVE FOR LEAVE TO RE-FILE THE SAME</u>**

Defendant Timothy L. Barton ("Defendant" or "Barton"), proceeding pro se, respectfully moves the Court, pursuant to the Court's June 5, 2026 Order [Dkt. 747] and the Court's inherent authority to manage its own docket, to: (i) reconsider and vacate the portion of [Dkt. 746] striking Defendant's Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) [Dkt. 745], and reinstate that Motion on the docket; or, in the alternative, (ii) grant Defendant leave to re-file the same Motion. In support, Defendant respectfully states:

**I. BACKGROUND**

1. On June 3, 2026, Defendant filed his Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) and Brief in Support. [Dkt. 745].

2. On June 5, 2026, the Court struck [Dkt. 745]. [Dkt. 746]. The Court gave three reasons: that, as of the issuance of that order, (a) Defendant had not been permitted to represent himself pro se; (b) the Court had not granted Attorney Jules Slim's motion to withdraw;

and (c) Defendant had not complied with the Court's May 29, 2026 order to file a status report concerning the status of Attorney Sean O'Connell's representation. [Dkt. 746]. The Court struck the Motion on those grounds and did not reach, or rule upon, the merits of the relief requested.

3. Also on June 5, 2026, the Court entered an Order granting Attorney Jules Slim's unopposed motion to withdraw [Dkt. 724] and permitting Defendant to represent himself pro se, subject to the condition that Defendant "must seek leave of the Court before filing any motion." The Court further provided that this requirement "shall not apply to responses and replies filed pursuant to L.R. 7.1(e),(f)." [Dkt. 747].

## II. ARGUMENT AND AUTHORITIES

### *A. The Grounds on Which the Motion Was Stricken Have Now Been Resolved.*

The strike rested entirely on Defendant's representational status and procedural posture, not on the substance of the Motion. Two of the three stated grounds have been cured by the Court's contemporaneous Order at [Dkt. 747], which both granted Attorney Slim's withdrawal and authorized Defendant to proceed pro se. The reason for striking [Dkt. 745] as the product of an unauthorized pro se filing, filed while the withdrawal motion remained pending, no longer obtains.

As to the third ground, the Court's May 29, 2026 directive concerning the status of Attorney Sean O'Connell's representation, Defendant has since complied by filing the required status report on June 5th see [Dkt. 752], docketed on June 8, 2026.

### *B. Reinstatement Is the Most Efficient Course and Preserves the Original Filing.*

A district court has inherent authority to reconsider its own interlocutory orders, including an order striking a filing, and to manage its docket as the interests of justice require. Because the impediments identified in [Dkt. 746] were procedural and have now been cured, Defendant

respectfully submits that the appropriate course is to vacate the strike and reinstate [Dkt. 745] as filed. The Motion is fully briefed and already of record; reinstating it avoids the needless duplication of requiring an identical second filing, and preserves the Motion's original June 3, 2026 submission. Its substance is unchanged.

***C. In the Alternative, Leave to Re-File the Identical Motion Should Be Granted.***

If the Court prefers that the Motion be presented as a new filing consistent with the leave procedure set out in [Dkt. 747], Defendant requests, in the alternative, leave to re-file the identical Motion for Preservation of Status Quo previously filed at [Dkt. 745], which Defendant incorporates herein by reference, a true and correct copy of which is attached as Exhibit 1.

Leave is warranted. The Motion does not seek to relitigate any matter affirmed on direct appeal; it asks the Court, before any irreversible transfer of clear title to Receivership real property, to resolve discrete and colorable questions arising under the Receivership Order [Dkt. 650] and 28 U.S.C. § 2001 — including whether Paragraph 94's "further Order" requirement is satisfied as to materially amended transactional terms; whether the § 2001(b) valuation safeguards remain satisfied on late-2022 appraisals; whether changed circumstances render continued prospective application of the December 15, 2023 sale Orders no longer equitable under Rule 60(b)(5); and whether the Sixth Amendment, under Luis v. United States, 578 U.S. 5 (2016), counsels preservation pending a traceability analysis.

The relief sought is purely preservative. No transaction has consummated, and the Motion asks only that the status quo be maintained while the Court addresses these questions. By contrast, transfer of clear title to real property is, by long-settled equitable principle, irreversible. Maintaining the status quo for the limited period needed for resolution imposes no cognizable

prejudice on any party, particularly where the receivership estate faces no demonstrated imminent cash need.

## III. PRAYER FOR RELIEF

WHEREFORE, Defendant Timothy L. Barton respectfully requests that the Court:

1. Reconsider and vacate the portion of [Dkt. 746] striking Defendant's Motion for Preservation of Status Quo [Dkt. 745], and reinstate that Motion on the docket as filed; or
2. In the alternative, grant Defendant leave to re-file the identical Motion for Preservation of Status Quo previously filed at [Dkt. 745], and deem it filed as of the date leave is granted; and
3. Grant such other and further relief to which Defendant may be entitled.

Dated: June 12, 2026

Respectfully submitted,

*/s/ Timothy L. Barton*
Timothy L. Barton
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(b), Defendant has conferred, or attempted in good faith to confer, with counsel for the Receiver and counsel for the SEC regarding the relief requested in this Motion. The SEC and Receiver are opposed.

/s/ Timothy L. Barton
Timothy L. Barton,
Defendant, Pro Se

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

/s/ Timothy L. Barton
Timothy L. Barton,
Defendant, Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY L. BARTON, et al., | § | |
| | § | |
| Defendants. | § | |

**[PROPOSED] ORDER GRANTING DEFENDANT TIMOTHY L. BARTON'S OPPOSED MOTION TO REINSTATE HIS MOTION FOR PRESERVATION OF STATUS QUO [DKT. 745]**

Before the Court is Defendant Timothy L. Barton's Opposed Motion to Reinstate His Motion for Preservation of Status Quo [Dkt. 745], or in the Alternative for Leave to Re-File the Same (the "Motion"). Having considered the Motion, any response and reply, the record, and the applicable law, the Court finds that the Motion should be and hereby is **GRANTED**.

The Court's June 5, 2026 Order [Dkt. 746] struck Defendant's Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) [Dkt. 745] on procedural grounds relating to Defendant's representational status, without reaching the merits of the relief requested. By separate Order entered the same day [Dkt. 747], the Court granted former counsel's motion to withdraw and permitted Defendant to proceed pro se, and Defendant has since filed the status report directed by the Court's May 29, 2026 order. See [Dkt. 752]. Because the procedural impediments identified in [Dkt. 746] have been resolved, reinstatement of the previously filed Motion is the most efficient course and avoids duplicative filings.

It is therefore **ORDERED** that the portion of the Court's June 5, 2026 Order [Dkt. 746] striking Defendant's Motion for Preservation of Status Quo [Dkt. 745] is **VACATED**, and the Motion at [Dkt. 745] is **REINSTATED** on the docket as filed.

It is further **ORDERED** that any response to the reinstated Motion shall be filed within twenty-one (21) days of the date of this Order, and any reply within fourteen (14) days thereafter, in accordance with Local Rule 7.1.

**SO ORDERED**.

Signed this ______ day of ______________, 2026.

______________________________
**BRANTLEY STARR**
**UNITED STATES DISTRICT JUDGE**

**[EXHIBIT 1]**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 3:22-cv-2118-X |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY L. BARTON, et al., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT TIMOTHY L. BARTON'S OPPOSED MOTION FOR PRESERVATION OF STATUS QUO UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND BRIEF IN SUPPORT**

Defendant Timothy L. Barton ("Defendant" or "Barton") respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 60(b), Rule 62, 28 U.S.C. § 1651, and the Court's inherent equitable authority, for preservation of the status quo as to all Receivership real property whose sale was approved by Orders now more than two years old — including the Frisco Gate Property, the Rock Creek Property, the Amerigold Suites, and any other Receivership real property as to which a previously approved sale has not yet consummated. In support, Defendant states:

## I. INTRODUCTION

This Motion is not an attempt to relitigate matters affirmed in SEC v. Barton, No. 24-10004 (5th Cir. Apr. 17, 2025). It asks the Court to recognize that the orders affirmed on direct appeal approved specific transactions, not perpetual blanket disposition authority. The passage of time, the apparent expiration of the original transactional terms, the staleness of the appraisal record, the material changes in market conditions, and — as developed in Section IV.E below — recent regulatory enforcement actions against the contracted purchaser's named principal raise concrete questions under Rule 60(b) that should be answered before any closing occurs.

Defendant frames this Motion under Rule 60(b) expressly, and applies each subdivision below. Subdivisions (4), (5), and (6) supply the substantive grounds for preservation; Rule 62 supplies the interim mechanism.

Defendant concedes, candidly, that no acute emergency requires expedited decision. That concession is the predicate of the requested relief, not an obstacle to it. The *Receivership Order* itself, [Dkt. 650], does not condition the Receiver's sale authority on any emergency; but it also does not authorize accelerated or expedited consummation of stale, materially modified transactions years after the original approval, particularly where credible questions have arisen regarding the contracted purchaser's present capacity and qualifications. The *Receivership Order* requires the Receiver to act *"with due regard to the realization of the true and proper value"* of receivership real property (Paragraph 93) and conditions transfer of clear title on a "further Order of this Court" (Paragraph 94). It is those two structural commands — together with the Receiver's fiduciary obligation to confirm that any proposed counterparty can in fact consummate the transaction — that anchor the relief Defendant requests.

## II. RELEVANT PROCEDURAL AND TRANSACTIONAL BACKGROUND

1. The *Receivership Order* [Dkt. 650], entered June 23, 2025, governs the Receiver's authority. Its Paragraphs 93 and 94 are central to this Motion.

2. Paragraph 93 provides, in relevant part: *"the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property."*

3. Paragraph 94 provides: *"Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as* 28 U.S.C. §§ 2001 *and* 2004, *the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates."*

4. The Frisco Gate Property is subject to a Purchase and Sale Agreement ("**PSA**") between the Receiver and Petra Development, dated December 13, 2022, filed at *Appendix A to [Dkt. 111]*, signed by Rashid Salem as Manager on December 15, 2022. The PSA contemplated a defined closing window: a Feasibility Period ending thirty (30) days after the December 13, 2022 Effective Date, with closing required "on or before 4:00 p.m. (Central time) on the date which is sixty (60) days after the expiration of the Feasibility Period, or earlier date as agreed in writing by the Parties" (PSA § 5.1(a)).

5. By that contractual measure, the original outside closing date was approximately March 13, 2023. Defendant respectfully requests that the precise contractual closing-date computation be confirmed by the Receiver on the present record.

6. On January 31, 2023, this Court entered [Dkt. 142], approving sale of the Frisco Gate Property under the December 13, 2022 PSA. Following the Fifth Circuit's vacatur of the original Receivership Order, the Court entered [Dkt. 438] on December 15, 2023, again approving sale of the Frisco Gate Property — referencing the same underlying PSA, as described by the Receiver to have been amended five times. See [Dkt. 376] at 4–6 (describing First through Fifth Amendments).

7. The Rock Creek Property is subject to a One to Four Family Residential Contract (Resale) between the Receiver and JNJ Group, LLC, dated November 16, 2022, filed at Exhibit A to [Dkt. 77]. The Receiver has reported that he leased the Rock Creek Property to the same approved purchaser pending closing and that the parties "have entered into several extensions of the closing date." [Dkt. 728] at 28–32.

8. On December 15, 2023, the Court entered [Dkt. 437] approving sale of the Rock Creek Property.

9. The Fifth Circuit affirmed in SEC v. Barton, No. 24-10004 (5th Cir. Apr. 17, 2025); mandate issued June 23, 2025.

10. On August 7, 2025, this Court administratively closed the case while preserving (i) the Receiver's ability to perform his duties under the Order Appointing Receiver and (ii) the parties' ability to make "appropriate filings." [Dkt. 728] at 9.

11. No transaction has consummated. No subsequent order of this Court has expressly approved (a) the post-Fifth-Amendment transactional posture of the Frisco Gate Property, (b) any amendment of the Rock Creek transaction beyond the original 2022 contract, or (c) any updated appraisal contemporaneous to closing for either Property.

12. On January 31, 2025, the Office of the Attorney General for the District of Columbia filed a civil enforcement action naming **Rashid Salem** personally, **Petra Management Group, LLC**, and three single-purpose limited liability companies (4825-4829 North Capital St L.L.C., 5616 13th St NW L.L.C., and 743 Fairmont St NW LLC). See OAG Press Release dated January 31, 2025 (attached as **Exhibit A**). On October 16, 2025, the DC OAG announced a $700,000 settlement of that action, together with reform commitments and three years of compliance monitoring. See OAG Press Release dated October 16, 2025 (attached as **Exhibit B**).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) authorizes relief from a final order on six enumerated grounds. Defendant addresses each in turn so the Court can squarely evaluate the requested preservation in light of the specific subdivision invoked.

### A. Rule 60(b)(1) — Mistake, Inadvertence, Surprise, or Excusable Neglect

Defendant does not invoke Rule 60(b)(1) as a present ground for preservation. The one-year limitation in Rule 60(c)(1) forecloses (b)(1) relief as to the December 15, 2023 sale Orders. Defendant identifies this subdivision only for completeness.

### B. Rule 60(b)(2) — Newly Discovered Evidence

Although the one-year limitation likewise bars formal (b)(2) relief as to the December 15, 2023 Orders, Defendant respectfully notes that *present-day* market evidence — including current appraisal evidence Defendant intends to present under separate cover — together with the *post-affirmance* January 31, 2025 DC OAG enforcement action against the named principal of the contracted Frisco Gate purchaser (Exhibit A) are properly considered under (b)(5) and (b)(6) below, where the inquiry is whether continued prospective application of the prior Orders remains equitable or whether extraordinary circumstances warrant relief.

### C. Rule 60(b)(3) — Fraud, Misrepresentation, or Misconduct

Defendant does not formally invoke Rule 60(b)(3) at this time. Defendant reserves the right to file under (b)(3) if further discovery of the Receiver's post-affirmance dealings — and of the Receiver's due diligence (or lack thereof) into the contracted purchaser's present capacity, given the publicly available regulatory record — reveals a predicate sufficient under controlling Fifth Circuit standards.

### D. Rule 60(b)(4) — The Judgment Is Void

Rule 60(b)(4) authorizes relief where the underlying judgment is void. Defendant submits that, to the extent the Receiver intends to consummate transactions whose operative contractual terms expired by their own terms, were materially modified through multiple post-approval amendments, or have been revived without the "further Order of this Court" required by Paragraph 94 of the *Receivership Order*, consummation in that posture would exceed the scope of authority the Court itself defined. A consummation undertaken in excess of the Court-defined authority is, in substance, an action taken without judicial approval and therefore raises substantial questions regarding whether consummation remains within the scope of the authority previously approved by the Court — questions this Court should resolve before the transaction is irreversible.

### E. Rule 60(b)(5) — Continued Prospective Application Is No Longer Equitable

Rule 60(b)(5) permits relief where "applying [the judgment] prospectively is no longer equitable." The Supreme Court has confirmed that Rule 60(b)(5) provides a means by which a party may obtain relief from an order with prospective application where a significant change in factual conditions or in law renders continued enforcement no longer equitable, under a flexible standard that places the burden on the party seeking relief to show that changed circumstances warrant modification. That is the heart of Defendant's Motion. The orders approving sale rested on a defined transactional record: 2022 PSAs at a defined price, with a defined closing window, supported by appraisals and broker value opinions as of late 2022 valuation dates, and entered under a "best interest" analysis premised on then-current economic conditions and concerns about eroding equity. Each of those premises has materially changed by the simple operation of time:

- The original PSA closing window expired in or about March 2023; no closing has occurred in the more than three years since.

- The Frisco Gate transaction has been the subject of at least five amendments, per the Receiver's own description at [Dkt. 376].

- The appraisals and broker opinion of values on which the Court relied were effective late 2022; they are now more than three years stale. Market conditions in the Dallas–Fort Worth metroplex — including in the Frisco corridor and Rock Creek specifically — have materially changed.

- The Receiver's original "best interest" analysis was premised on the proposition that delay would erode equity. That premise has been tested by time and, Defendant contends, has been falsified by appreciation.

- Subsequent to original approval, the named principal of the contracted Frisco Gate purchaser became the subject of a public DC OAG civil enforcement action that resolved in a $700,000 settlement plus three years of compliance monitoring. See **Exhibits A & B**.

### F. Rule 60(b)(6) — Any Other Reason That Justifies Relief

Rule 60(b)(6) is the residual ground available where the case presents extraordinary circumstances not captured by subdivisions (1)–(5). Defendant submits that the conjunction of (i) the apparent expiration of the originally approved contractual framework, (ii) the constitutional concerns under Luis v. United States, 578 U.S. 5 (2016), (iii) the administrative-closure status of this case, (iv) the post-affirmance regulatory record regarding the contracted purchaser's principal, and (v) the irreversibility of real-property transfer while there being no emergency collectively present extraordinary circumstances within the meaning of (b)(6).

## IV. ARGUMENT

### A. Paragraph 94 of the Receivership Order Independently Requires a "Further Order" Before Transfer of Clear Title.

The *Receivership Order* itself states that the Receiver "will be authorized to sell, and transfer clear title to," receivership real property only "Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001

and 2004." [Dkt. 650] ¶ 94 (emphasis added). The structure is intentional: locating, listing, and contracting for sale (Paragraph 93) is one category of authority; transferring clear title is another, conditioned on further judicial process.

This Court approved a *defined* transaction at [Dkt. 142] in January 2023 and re-approved a *defined* transaction at [Dkt. 438] in December 2023 — each time tied to the operative state of the PSA before it. As described by the Receiver, the PSA has since been amended at least five times. [Dkt. 376] at 4–6. A reasonable reading of Paragraph 94 — read in conjunction with 28 U.S.C. § 2001(b) — is that material changes to the operative transactional terms after the approval Order require a further Order before clear title may be transferred. That is the precise question Defendant asks this Court to resolve before any closing occurs.

### *B. The Original PSA Closing Window Expired by Its Own Terms; Revival Years Later Requires Renewed Judicial Scrutiny.*

Section 5.1(a) of the December 13, 2022 PSA fixed an outside closing date of approximately March 13, 2023 (sixty days after expiration of a thirty-day Feasibility Period). No closing occurred. The Receiver has described five subsequent contractual amendments. [Dkt. 376] at 4–6. Defendant submits, respectfully, that the conjunction of (i) elapsed closing date, (ii) successive amendments, and (iii) materially changed market conditions converts the present transaction into something legally and factually distinct from the transaction the Court approved in 2023.

This is not an argument that the PSA is "void" as a matter of pure contract law. It is the more disciplined argument: the Court approved a specific transaction with specific economics and specific timing. A revived, amended, and stale version of that transaction is, on the current record, materially different from what the Court approved. Whether the difference rises to the level requiring renewed judicial approval under Paragraph 94 of the *Receivership Order* and § 2001(b) is itself a question the Court should answer before consummation moots it.

### *C. Paragraph 93's "True and Proper Value" Standard Requires Contemporaneous Valuation Evidence.*

Paragraph 93 of the *Receivership Order* obligates the Receiver to act "with due regard to the realization of the true and proper value of such real property." [Dkt. 650] ¶ 93. That standard is not satisfied by reliance on three-year-old appraisals as the sole valuation basis for a transaction the Receiver now intends to consummate. The appraisals supporting [Dkt. 438] had effective

valuation dates in late 2022; they have not been refreshed in any record visible to Defendant. Compliance with Paragraph 93 — together with the statutory two-thirds threshold of § 2001(b) — requires that the Court direct the Receiver to obtain and file current appraisal evidence before any closing.

Section 2001(b) reinforces this conclusion. The statute provides that, before confirmation of any private sale, "the court shall appoint three disinterested persons to appraise such property," and that "[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value." 28 U.S.C. § 2001(b). Those safeguards are mandatory, and a broker's opinion of value — while potentially informative — is not the equivalent of the three court-appointed disinterested appraisals the statute contemplates. On the present record, the valuation basis for the approved sales appears to rest in material part on broker opinions of value together with appraisals bearing late-2022 effective dates. Defendant does not contend that the prior sale Orders were void from inception. Defendant submits only that, before any transfer of clear title, the Court should direct the Receiver to confirm on a current record that the § 2001(b) valuation safeguards — including the three-disinterested-appraiser requirement and the two-thirds-of-appraised-value floor — are satisfied as of consummation, rather than as of approval more than three years ago.

### *D. Market Values of the Subject Properties Have Materially Appreciated, Inverting the Receiver's Original Equity-Erosion Premise.*

At the time of approval, the Receiver argued that delay would erode estate equity. See, e.g., [Dkt. 76]; [Dkt. 110]. Defendant contends, and intends to demonstrate by current appraisal evidence submitted under separate cover, that market values for the Frisco Gate Property and the Rock Creek Property have materially appreciated in the interim. If the record bears that out, the original "best interest" analysis under § 2001(b) no longer holds, and prospective application of the December 15, 2023 sale Orders is no longer equitable within the meaning of Rule 60(b)(5).

### *E. Buyer-Entity Qualification and Capacity for the Frisco Gate Transaction; Recent Regulatory Record of the Named Principal.*

The Frisco Gate PSA was signed by Rashid Salem as Manager of Petra Development on December 15, 2022. More than three years have since elapsed. In the interim, the publicly available regulatory record has materially changed. Specifically:

13. On **January 31, 2025**, the Office of the Attorney General for the District of Columbia filed a civil enforcement action against **Petra Management Group, LLC**, **Rashid Salem** personally, and three single-purpose limited liability companies, alleging violations of the District's Human Rights Act and Consumer Protection Procedures Act in connection with housing-voucher practices at three District apartment complexes. See OAG Press Release dated January 31, 2025 (attached as **Exhibit A**); see also OAG Complaint, filed January 30, 2025.

14. On **October 16, 2025**, the DC OAG announced a **$700,000 settlement** of that action, together with reform commitments and three years of compliance monitoring. See OAG Press Release dated October 16, 2025 (attached as **Exhibit B**); see also Petra Consent Order, executed.

15. Additional publicly available material reviewed by Defendant — including marketing materials referencing a Frisco "Petra Park" concept at kirksey.com/portfolio/projects/petra-park and other publicly accessible compilations regarding Rashid Salem-affiliated entities — together raise legitimate, non-frivolous questions about whether the contracted purchaser remains presently qualified and financially capable of consummating a $9,000,000 transaction.

Defendant does not assert that the contracted purchaser entity is fictitious or that the regulatory record renders the PSA per se invalid. Defendant respectfully submits, however, that the conjunction of (i) the lapse of the original contractual closing window, (ii) the named principal's personal involvement as a defendant in a DC OAG enforcement action that settled for $700,000 within the past twelve months, and (iii) the absence on the record of any current proof-of-funds or capacity confirmation from the contracted purchaser, collectively trigger a Receiver-side fiduciary obligation to verify capacity before consummation. That obligation flows directly from Paragraph 93's mandate of "due regard to the realization of the true and proper value" of receivership real property — value cannot be realized at closing if the purchaser cannot fund the closing.

Defendant accordingly requests that the Court, before any closing, direct the Receiver to file on the record:

(a) the present legal status of Petra Development (jurisdiction of organization, current standing certificate, and registration status with the Texas Secretary of State to the extent transacting business in Texas);

(b) the present authority of Rashid Salem (or any successor signatory) to bind the contracting entity;

(c) current proof of funds or fully executed financing commitment sufficient to fund the $9,000,000 purchase price plus closing costs;

(d) any assignment or substitution of the purchaser entity that has occurred since December 15, 2022;

(e) a representation as to whether the contracted purchaser, the entities it manages, or the named principal are subject to any then-pending civil enforcement actions, settlements with conditions still in effect, or regulatory compliance monitoring (including the DC OAG consent order described in Exhibits A and B); and

(f) the Receiver's diligence file documenting his verification of (a)–(e) above.

***F. Texas Practice and the Receiver's Fiduciary Obligation Support Pre-Closing Proof-of-Funds Verification.***

Texas commercial real estate practice routinely conditions multi-million-dollar private sales on documented proof of funds or executed financing commitments. Defendant does not assert that any specific Texas statute mandates proof of funds in this context. Defendant submits instead that the Receiver's fiduciary obligation under Paragraph 93 of the *Receivership Order* — read in conjunction with the "best interest of the estate" finding required under 28 U.S.C. § 2001(b) — incorporates, at minimum, a reasonable verification that the contracted purchaser is presently capable of funding the contracted transaction. A "best interest" determination based on a purchaser who cannot in fact close is no determination at all.

The point is sharpened in light of the regulatory record described in Section IV.E. Where the named principal of the contracted purchaser has personally settled, within the past twelve months, a DC OAG enforcement action for $700,000 plus three years of compliance monitoring, the Receiver's

fiduciary diligence cannot reasonably be satisfied by the same proof-of-funds posture that may have sufficed in late 2022. The minimum reasonable diligence requires (at least) current proof of funds or financing commitments adequate to fund a $9,000,000 closing — to be filed on the record, subject to objection and review, before any transfer of clear title occurs.

### *G. Sixth Amendment Concerns Under Luis v. United States.*

Defendant remains the subject of an active parallel federal criminal proceeding. The Supreme Court in Luis v. United States, 578 U.S. 5 (2016), held that the Sixth Amendment prohibits the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice. Defendant acknowledges that this Court has found Wall Investor Funds traceable into the Frisco Gate and Rock Creek Properties. See [Dkt. 416] at 13–14. Luis nonetheless requires a particularized analysis as to any portion of equity that may not be traceable. Consummation of these sales will convert real-property equity into pooled receivership funds, foreclosing or substantially impairing any Luis-based claim Defendant might pursue with respect to untainted equity. Preservation pending that analysis is therefore not optional; it is constitutionally indicated.

### *H. The Absence of Emergency Does Not Justify Accelerated Consummation.*

Defendant acknowledges that the *Receivership Order* does not condition the Receiver's sale authority on an emergency. It also does not authorize accelerated or expedited consummation in the absence of one. The Receiver has waited more than three years to consummate the Frisco Gate transaction through five amendments, and more than three years to consummate the Rock Creek transaction through multiple closing-date extensions. No imminent financial collapse[1], foreclosure event, or other irreparable estate harm has been shown. The same equity-erosion concerns the Receiver originally invoked are inapplicable to a market in which values have appreciated rather than depreciated.

### *I. Jurisdictional Preservation Following Administrative Closure.*

The Court's August 7, 2025 administrative-closure order preserved the Receiver's authority to perform his duties under the Order Appointing Receiver and likewise preserved the parties' ability to make "appropriate filings." [Dkt. 671]. The order does not divest this Court of jurisdiction; it

[1] The Fifteenth Quarterly Status Report reflects that the receivership estate holds sufficient funds and faces no imminent cash requirements. See [Dkt. 728-1] Ex. A-1 (Standardized Fund Accounting Report reflecting a balance of $1,245,547.36 as of March 31, 2026).

does not authorize irreversible disposition of real property during administrative closure without further judicial process; and it does not displace the structural commands of Paragraphs 93 and 94 of the *Receivership Order*.

### *J. Real Property Is Unique; Consummation Is Irreversible.*

Real property is, by long-settled equitable principle, unique. Once title transfers to a third-party purchaser, restoration is rarely available. Equitable remedies that would otherwise be available under Rule 60(b), or any Luis claim may be foreclosed or substantially impaired by consummation. Irreversibility is the classic predicate for preservation relief.

## V. PRAYER FOR RELIEF

WHEREFORE, Defendant Timothy L. Barton respectfully prays that the Court:

1. Preserve the status quo as to the Frisco Gate Property, the Rock Creek Property, and any other Receivership real property whose previously approved sale has not yet consummated, by directing that no closing or transfer of legal title occur until the Court has resolved the matters identified herein;

2. Direct the Receiver to file, within a reasonable period to be set by the Court, a report addressing each of the following:

   (a) the present contractual posture of each pending transaction, including (i) the operative purchase and sale agreement (with all amendments) and (ii) the current closing-date framework;

   (b) the present legal status of each purchaser entity, including jurisdiction of organization, current good-standing certificate, registration status in Texas, signatory authority, and any assignment or substitution since execution;

   (c) current proof of funds or fully executed financing commitments adequate to fund the contracted purchase price plus closing costs for each pending transaction;

   (d) the appraisals or broker's opinions on which the Receiver intends to rely at closing, including whether those reflect valuation dates contemporaneous to closing;

(e) a representation as to whether the contracted purchaser, the entities it manages, or its named principals are subject to any then-pending civil enforcement actions, regulatory settlements with conditions still in effect, or compliance monitoring; and

(f) the conformity of the contemplated closing with Paragraphs 93 and 94 of the *Receivership Order* and with 28 U.S.C. § 2001;

3. Set a status conference or briefing schedule on Defendant's anticipated substantive motion under Rule 60(b)(4), (b)(5), and (b)(6); and

4. Grant such other and further relief, including any preservation order under the Court's inherent equitable authority or under the All Writs Act, as the Court deems just and proper.

Dated: June 12, 2026.

Respectfully submitted,

*/s/ Timothy L. Barton*
Defendant, Pro Se
1846 East Rosemeade Parkway,
#232 Carrollton, TX 75007
(214) 914-3811
*timothy.barton@proton.me*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(b), Defendant has conferred with counsel for the Receiver and counsel for the SEC regarding the relief requested in this Motion. The SEC and Receiver are opposed.

*/s/ Timothy L. Barton*
Defendant, Pro Se

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

*/s/ Timothy L. Barton*
Defendant, Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-2118-X |
| | § | |
| TIMOTHY L. BARTON, et al., | § | |
| | § | |
| Defendants. | § | |

**[PROPOSED] ORDER GRANTING DEFENDANT TIMOTHY L. BARTON'S OPPOSED MOTION FOR PRESERVATION OF STATUS QUO UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

Before the Court is Defendant Timothy L. Barton's Opposed Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) and Brief in Support (the "Motion"). Having considered the Motion, any response and reply, the record, and the applicable law, the Court finds that the Motion should be and hereby is **GRANTED**.

The Court finds that preservation of the status quo is warranted pending resolution of the questions raised in the Motion concerning (i) the present contractual posture of the previously approved but unconsummated sales of Receivership real property, including the Frisco Gate Property and the Rock Creek Property; (ii) compliance with Paragraphs 93 and 94 of the Order Appointing Receiver [Dkt. 650] and with 28 U.S.C. § 2001 as of consummation; (iii) the currency of the valuation record supporting each pending transaction; and (iv) the present capacity and qualification of each contracted purchaser. Because real property is unique and transfer of title is effectively irreversible, these questions should be resolved before, not after, any closing occurs.

It is therefore **ORDERED** that:

1. The status quo is **PRESERVED** as to the Frisco Gate Property, the Rock Creek Property, the Amerigold Suites, and any other Receivership real property whose previously approved sale has not yet been consummated. No closing, conveyance, or transfer of legal title as to any such property shall occur until further Order of this Court.

2. Within ________ (___) days of the date of this Order, the Receiver shall file a report addressing, as to each pending transaction:

   (a) the present contractual posture of the transaction, including the operative purchase and sale agreement with all amendments and the current closing-date framework;

   (b) the present legal status of each purchaser entity, including jurisdiction of organization, current good-standing certificate, registration status in Texas, signatory authority, and any assignment or substitution since execution;

   (c) current proof of funds or fully executed financing commitments adequate to fund the contracted purchase price plus closing costs;

   (d) the appraisals or broker's opinions of value on which the Receiver intends to rely at closing, including whether those reflect valuation dates contemporaneous to closing;

   (e) a representation as to whether the contracted purchaser, the entities it manages, or its named principals are subject to any then-pending civil enforcement actions, regulatory settlements with conditions still in effect, or compliance monitoring; and

   (f) the conformity of the contemplated closing with Paragraphs 93 and 94 of the Order Appointing Receiver and with 28 U.S.C. § 2001.

3. A status conference on the matters raised in the Motion and the Receiver's report, and on Defendant's anticipated motion under Rule 60(b)(4), (b)(5), and (b)(6), is set for **the**

______ **day of _____________, 2026, at ____:____ __.m.**, or the parties shall submit a proposed briefing schedule within ________ (___) days of the filing of the Receiver's report.

**SO ORDERED**.

Signed this ______ day of ______________, 2026.

______________________________
**BRANTLEY STARR**
**UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY BARTON, et al.,<br><br>Defendants,<br><br>DJD LAND PARTNERS LLCS, LDG001 LLC,<br><br>Relief Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-CV-2118-X |

**[PROPOSED] ORDER GRANTING DEFENDANT TIMOTHY BARTON'S OPPOSEDMOTION FOR RECONSIDERATION OF THE PRE-FILING REQUIREMENT IN THE COURT'S ORDER (DKT. 747)**

Before the Court is Defendant Timothy Barton's Opposed Motion for Reconsideration of the Pre-Filing Requirement in the Court's Order (Dkt. 747) (the "Motion"). The Motion seeks reconsideration of the June 5, 2026 Order (Dkt. 747) solely to the extent that it requires Mr. Barton, appearing pro se, to seek leave of the Court before filing any motion. Having considered the Motion, any response and reply, the record, and the applicable law, the Court finds that the Motion should be and hereby is **GRANTED**.

It is therefore **ORDERED** that the Motion is **GRANTED**. The portion of the Court's June 5, 2026 Order (Dkt. 747) directing that Mr. Barton "must seek leave of the Court before filing any motion" is hereby **VACATED** and stricken from the Order.

It is further **ORDERED** that all other provisions of the June 5, 2026 Order (Dkt. 747), including the grant of former counsel's motion to withdraw and Mr. Barton's pro se status, remain

in full force and effect. Mr. Barton remains subject to the Federal Rules of Civil Procedure, the Local Civil Rules of this Court, and Federal Rule of Civil Procedure 11 in all filings.

**SO ORDERED**.

Signed this ______ day of ______________, 2026.

__________________________________
**BRANTLEY STARR**
**UNITED STATES DISTRICT JUDGE**