**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

SECURITIES and EXCHANGE COMMISSION,
Plaintiff,
vs.
TIMOTHY BARTON, et al.,
Defendant.

Case No. 3:22-cv-02118-X

**MOTION HEARING**
**BEFORE THE HONORABLE REBECCA RUTHERFORD**

**June 11, 2026**
**3:25 p.m.**

(Proceedings recorded by mechanical stenography, transcript produced by computer-assisted transcription.)

**REPORTED BY:**
SUSAN K. CAYLER, FCRR, RPR
Federal Official Court Reporter
(515)778-5008 | reportercayler@gmail.com
1100 Commerce Street, Fifteenth Floor, Dallas, Texas 75242

## APPEARANCES

**FOR THE PLAINTIFF:**

KEEFE M. BERNSTEIN
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas
817.900.2607
bernsteink@sec.gov

**FOR MOVANT:**

MICHAEL D. NAPOLI
Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
214.720.4300
michael.napoli@akerman.com

**FOR INTERESTED PARTY:**

HOWARD MARC SPECTOR
SARAH MELISSA COX
Spector & Cox PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
214.365.5377
214.310.1321
hms7@cornell.edu
Sarah@spectorcox.com

**FOR THE RECEIVER:**

CORT THOMAS
Brown Fox PLLC
2699 Howell Street, Suite 500
Dallas, Texas 65204
Cort@brownfoxlaw.com

~~~~~

(Open court.)

(Proceedings began at 3:25 p.m.)

03:25:59PM THE COURT: Our next matter is case 3:22-cv-2118-X, 03:26:06PM Securities and Exchange Commission versus Timothy Barton, 03:26:09PM et al., and there are two motions to declare lis pendens void.

03:26:19PM Who do I have here today?

03:26:20PM MR. NAPOLI: Your Honor, Michael Napoli, N-a-p-o-l-i, 03:26:24PM for the DLP entities, and we are movant on one of the motions.

03:26:29PM THE COURT: All right.

03:26:31PM MR. SPECTOR: Your Honor, Howard Marc Spector and 03:26:34PM Sarah Cox for Tamamoi and 3820 Illinois.

03:26:34PM THE COURT: Very good.

03:26:43PM MR. BERNSTEIN: Keefe Bernstein on behalf of the SEC, 03:26:43PM Your Honor.

03:26:43PM THE COURT: Thank you.

03:26:49PM MR. THOMAS: Cort Thomas here for myself, Your Honor.

03:26:50PM THE COURT: Before we go any further, does anyone 03:26:53PM have any AI generative tools they wish to disclose before --

03:26:59PM MR. NAPOLI: No, Your Honor.

03:27:00PM THE COURT: Okay. Good.

03:27:04PM Mr. Barton is not here. The Court is aware that he 03:27:12PM is otherwise occupied in Washington, D.C., but I believe that 03:27:19PM we can proceed on these motions related to lis pendens.

03:27:25PM Does anyone disagree that for some reason we should
~~~~~

wait for Mr. Barton?

MR. NAPOLI: No, Your Honor.

From our perspective our motion has been fully briefed, we filed, he responded, we filed a reply. So we're ready to work this out.

THE COURT: And with respect to Tamamoi, is it correct that Mr. Barton -- as far as I can tell from the docket, Mr. Barton never filed a response?

MR. SPECTOR: That's correct, Judge.

We would, however, ask to address the Court on ours.

THE COURT: Let's take yours first since I don't have to worry about any argument from Mr. Barton.

MR. SPECTOR: Your Honor, I will just say upfront, my remarks are generally complaints in nature about the nature of this proceeding at this point.

We are four years into a receivership where Mr. Barton was restricted from doing things like filing a lis pendens. The receiver was charged with administering assets, and no one who is actually a party to the receivership proceeding seems inclined to hold the parties to their requirements.

Mr. Barton should have been held in contempt a year ago. I'm not sure we have standing to do that, because we're not the receiver. We're not an intervenor.

THE COURT: I'm also pretty sure I don't have

authority to do that, but I'm glad you're putting these complaints on the record.

MR. SPECTOR: That's my only point. This is not directed at the magistrate judge, it is directed at basically everyone else.

My client has two pieces of property. He has a property in South Dallas that is a blight upon the neighborhood because he can't sell it, because the deal that we entered into with the receiver is now held up by a lis pendens filed by Mr. Barton, and the receiver doesn't want to seem to do anything about it.

I am actually the chairman of the state receivership association -- or this state's receivership association, the Commercial Receivers Association, and I would regard this as a major impediment to doing my job, because who else would believe me if on the next deal that they're going to pay me for something I can do for them, if Mr. Barton is allowed to throw a monkey wrench into the process of selling it with no consequences to him.

I have no incentive to ever address any of my problems to the receiver because the receiver is not willing to make good on what he delivers.

Similarly, we have a large tract of land in Venus that is completely under water. There is no conceivable argument that there is equity for the receivership estate. And

rather than do the right thing, the receiver just wants to sit on it. And now says, well, I'm going to sit on it until you give in, until I can surcharge you somehow under some theory that doesn't exist. He's just going to hold us hostage on our property, even though there's no economic basis to do so.

And I will just say, I find all of this, Mr. Barton's activities, the receivers' intransigence in the proceeding, the four years with no explanation about how he's going to dispose of assets, just very, very troubling.

And I would encourage the Court to ramp up some level of supervision over the receiver's activities so that we are not here four years later.

THE COURT: Is the Venus property the subject of your -- are you just bringing that to the Court's attention or is that --

MR. SPECTOR: It is emblematic of the problem we have in this case, that no one is willing to force the people who do have standing, Mr. Barton, the receiver, to move this process along.

THE COURT: But it doesn't --

MR. SPECTOR: It is not the subject of the lis pendens, that's correct.

THE COURT: Okay. Because I was not aware --

MR. SPECTOR: It is not the subject of today's proceeding.

THE COURT: And with respect to the property at 3820 Illinois that you referenced that you haven't been able to sell, are you working with -- a title company can't see through this and won't endorse over this --

MR. SPECTOR: Over the lis pendens, that's right.

THE COURT: -- clearly frivolous lis pendens?

MR. SPECTOR: That's correct.

I frankly don't know of any title company that will insure around a lis pendens.

THE COURT: Anyone that's familiar with Mr. Barton?

MR. SPECTOR: No. I mean, as I said, I'm the receiver in many case, and the old joke is title companies are paid to not take any risks, so they just won't insure it, which means you can't sell it.

And just to go back to Venus for a minute.

We will face the same problem with Venus, whether --

THE COURT: Is there a lis pendens on it?

MR. SPECTOR: No, but just bear with me for a minute.

Let's just say that the receiver comes up with some theory that it can solve, free and clear, all the liens and not pay the liens at closing. He will never be able to insure title because the lienholders will appeal that.

I mean, we're going to be in this process for years, unless people make rational decisions and the Court holds the receiver to account for what is going on in this case. We are

at the 15th receiver's report and we are four years in. We don't even have a light at the end of the tunnel for the most significant assets in the case.

That's all I have.

THE COURT: Okay. Thank you.

Mr. Napoli.

MR. NAPOLI: Yes, Your Honor.

I represent several entities affiliated with DLP Capital. We are -- we purchased two pieces of property from the entities that subsequently became receivership entities back in 2021. Those sales came with some development agreements and some other ancillary agreements. And about a year later we declared them in default. Shortly after we did that, the receiver was appointed. We entered into a settlement agreement with the receiver, which was approved by the Court in December of 2022.

Under that settlement agreement, parties, as typical, released each other, the now receivership entities quick claim any interest in these properties, and we paid $750,000.

Mr. Barton appealed the grant of the settlement. It was dismissed. The -- we'd been up and down a lot on whether or not the receivership was appropriate. When the receivership was vacated, then reaffirmed, the Court ratified and reaffirmed the order approving our settlement.

And at some point during that process in July of

2024, Mr. Barton filed lis pendens on two of our properties, the Orchard Farms property and the Marine Creek property, both of which are identified in our motion and in the proposed order by leaps and bounds, Your Honor.

We did not -- my client did not discover the lis pendens until about September of last year, when it was in the process of refinancing one of the properties and selling another one. It came up, the title company went bonk, the purchaser went what, and we filed a motion to vacate the lis pendens in October.

We requested expedited consideration, which was granted, and it was fully filed and briefed by October 14, our motion, Barton's response, and our reply, and so here we are.

As you mentioned in connection with the other lis pendens, this lis pendens is obviously frivolous, Your Honor. It is -- you know, a lis pendens only -- under Texas law you can only do a lis pendens if you, the person filing the lis pendens, actually asserts a claim to title. Mr. Barton is the defendant here, he has asserted no claims, nor does he ever assert a claim for title.

If you look in his reply, his only dispute is that he controls the entities, and the receiverships in proper, but a dispute over control of entities is not a claim against title, so there is no claim.

We cited *Texas Extrusion Corp v. Lockheed*, which is a

03:36:47PM case from the Fifth Circuit, basically noting that complaints about how Court-appointed fiduciaries handle property are not claims to title. Therefore, it held that lis pendens would be improper.

A case we didn't cite, but *Huffines Regional Partners*, which is a mandamus case, dealing with another dispute over control over entities, held that that in fact, on its face, was not a dispute over title, and therefore, no lis pendens, and it granted mandamus directing the district court to dissolve the lis pendens.

There's a lot of other problems with this lis pendens, Your Honor. Mr. Barton doesn't seek a claim. Mr. Barton is not allowed to assert claims on behalf of the entities. The entities themselves have released any claims. Mr. Barton's attempt to assert the lis pendens is a direct violation of the receivership order. And, you know, from a technical procedural standpoint, he never served it, which in and of itself under Texas law is a basis on which to dissolve the lis pendens.

I don't have a lot more to add, Your Honor. It's very clear that this lis pendens is absolutely inappropriate, absolutely improper, and it's costing my client. As with the other party, title company's not going to go around it. The buyers -- we've lost $95 million refinance.

THE COURT: At the title company?

MR. MONTGOMERY: Yes.

We asked -- my client even offered to indemnify, and their answer and the buyer's answer -- this is a $95 million transaction and the second one was a $5 million transaction, and they wouldn't do it. And I spoke with counsel, who is a buddy of mine, for one of the buyers and we could not get them comfortable with this lis pendens.

Simple fact is a lis pendens is a notice of a lien on property and I understand it's absurd that we couldn't do it, but unfortunately, Your Honor, I don't know if you've heard it, there's Texas law and there's Texas title company law, and you can't get the title companies to move.

So I'm here asking the Court to grant our motion and dissolve the two lis pendens.

Thank you.

THE COURT: All right. Thank you.

Does the SEC or the receiver wish to put anything on the record?

MR. BERNSTEIN: The SEC doesn't have anything, Your Honor.

THE COURT: Thank you.

MR. THOMAS: Your Honor, I'm happy to defend myself or to answer questions about the lis pendens process. I can assure you, I've lived this for four years, and the title companies are insistent that you have to lift lis pendens.

I can answer more questions --

THE COURT: I don't have any more questions, but I feel this is your opportunity to put whatever you want to put on the record, you're here.

The transcript will be available for Judge Starr, so if there's something if you feel that it would be helpful, then you should put it in the record.

MR. THOMAS: Sure.

So, one, I would point Your Honor to our quarterly reports that Mr. Spector was complaining about. You'll see all of the efforts, everything that is going on.

The lis pendens problem is real. I would point Your Honor to just Monday, Judge Starr declared a lis pendens void that I had sought because I haven't been able to sell property. So there's cases he cites. We have our own motions we filed. I'm sure Your Honor has already seen those.

You know, the frustrations are well-taken. The frustrations are all over my report. We haven't been paid for time since April of 2024. Fortunately, since Mr. Barton filed these lis pendens, the Supreme Court has denied his cert petition, and we are moving forward.

We will be getting to Venus, along with the dozen-plus other properties, hopefully in the near future, but that's Judge Starr's business, as you noted, not for today's hearing.

THE COURT: There was a suggestion that perhaps someone seek contempt against Mr. Barton, is that something that the receiver has considered?

MR. THOMAS: So we filed a show cause motion in the fall of 2024, right around when Mr. Barton filed these lis pendens. He also called a buyer of a property and talked them out of purchasing the property because of threats of litigation, and so Mr. Barton agreed to an agreed injunction that prohibits this kind of behavior going forward.

We're always open to considering a motion for contempt. We've had -- as you can see with the docket entries in this case, we've had lots of opportunities, lots of conversations with Judge Starr on the record and hearings before him and have not gotten to the contempt point yet.

I don't know when that will be, but Judge Starr has routinely administered his docket, in my estimation, in the best way that he can, given all of the challenges that are here.

THE COURT: Thank you.

MR. THOMAS: Thank you, Your Honor.

THE COURT: We'll be adjourned.

(Proceedings adjourned at 3:42 p.m.)

**CERTIFICATE OF REPORTER**

I, SUSAN K. CAYLER, FCRR, RPR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

*/s/ Susan K. Cayler*
Susan K. Cayler, FCRR, RPR
Federal Official Court Reporter
United States District Court
Northern District of Texas
Date: 6.23.26