**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FILED-USDC-NDTX-DA
'26 JUN 29 PM1:58
JJF

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY L. BARTON, et al., | § | Civil Action No. 3:22-cv-2118-X |
| | § | |
| *Defendants.* | § | |

**DEFENDANT TIMOTHY L. BARTON'S MOTION FOR LEAVE TO FILE OPPOSED MOTION FOR PRESERVATION OF STATUS QUO UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND BRIEF IN SUPPORT**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton, appearing pro se, respectfully moves this Court for an order granting leave to file the attached Opposed Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) and Brief in Support (the "Motion"), attached hereto as Exhibit A. In support, Mr. Barton states as follows:

1. On June 5, 2026, the Court entered an Order permitting Mr. Barton to represent himself pro se but directing that he "must seek leave of the Court before filing any motion." [Dkt. 747]. The Order further provides that the leave requirement does not apply to responses and replies filed pursuant to Local Civil Rule 7.1(e) and (f).

2. Pursuant to that Order, Mr. Barton respectfully seeks leave to file the attached Motion (Exhibit A). The Motion requests preservation of the status quo as to unconsummated receivership-property sales and targeted relief concerning the procedural history of the original preservation motion [Dkt. 745].

3. The attached Motion is made in good faith and is not brought for delay, harassment, or frivolous duplication. The preservation issues were first presented in Dkt. 745 on June 3, 2026, but that motion was struck on representational-status grounds without reaching the merits. The present Motion is designed to place those issues before the Court in a corrected, procedurally proper form.

4. The Motion raises concrete, case-specific questions concerning whether unconsummated, years-old approved real-estate transactions may proceed before the Receiver establishes the current validity of the operative agreements, purchaser availability and authority, proof of funds, and current valuation support. These matters are tied to the Court's continuing supervision of the receivership and to Paragraphs 93 and 94 of the Receivership Order [Dkt. 650].

5. Leave is particularly appropriate because the prior reinstatement effort was denied without prejudice on the stated ground that the proposed motion had not been attached. [Dkt. 768]. That

issue is now cured: the complete proposed Motion is attached as Exhibit A, together with a separately captioned proposed order for the requested substantive relief.

6. The Motion seeks limited preservation, not a final adjudication of the merits of any transaction and not relitigation of the Court's rulings concerning the lis pendens. Once clear title is transferred, however, the requested preservation review may become impracticable or moot. Granting leave will permit orderly briefing and a merits determination before any irreversible transfer occurs.

7. Granting leave will not itself prohibit a sale, release assets, or alter the Receiver's authority. It will merely permit the Court to consider the discrete Motion and allow the SEC and Receiver a full opportunity to respond. Mr. Barton remains subject to the Court's leave requirement under Dkt. 747 for future motions.

8. Presenting the related requests in one Motion promotes judicial economy and avoids repetitive filings. The relief is severable, and the Court may address any component of the Motion independently or establish an appropriate briefing schedule.

9. A proposed order granting this Motion for Leave is submitted herewith.

WHEREFORE, Mr. Barton respectfully requests that the Court GRANT this Motion for Leave, permit the attached Motion (Exhibit A) to be filed and entered on the docket, and grant such other and further relief as is just and proper.

Dated: June 29, 2026

Respectfully submitted,

*<u>/s/ Timothy L. Barton</u>*
Timothy L. Barton
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Civil Rule 7.1(b), Defendant has conferred, via email on the date of filing of this Motion with counsel for the Securities and Exchange Commission and counsel for the Receiver regarding this Motion. The Securities and Exchange Commission and the Receiver are opposed.

*/s/ Timothy L. Barton*
Timothy L. Barton

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

*/s/ Timothy L. Barton*
Timothy L. Barton

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY L. BARTON, et al., | § | Civil Action No. 3:22-cv-2118-X |
| | § | |
| *Defendants.* | § | |

**[PROPOSED] ORDER GRANTING DEFENDANT TIMOTHY L. BARTON'S MOTION FOR LEAVE TO FILE OPPOSED MOTION FOR PRESERVATION OF STATUS QUO UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

Before the Court is Defendant Timothy L. Barton's Motion for Leave to File Opposed Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) and Brief in Support (the "Motion for Leave"). Having considered the Motion for Leave, the Court finds that good cause exists and that the Motion for Leave should be GRANTED.

It is therefore ORDERED that Defendant Timothy L. Barton is GRANTED leave to file his Opposed Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) and Brief in Support, attached to the Motion for Leave as Exhibit A.

It is further ORDERED that the Clerk of Court is directed to file and enter Exhibit A as a separate motion on the docket of this case.

IT IS SO ORDERED this ____ day of ______________, 2026.

______________________________
**BRANTLEY STARR**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | Civil Action No. 3:22-cv-2118-X |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY L. BARTON, et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT TIMOTHY L. BARTON'S OPPOSED MOTION FOR PRESERVATION OF STATUS QUO UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND BRIEF IN SUPPORT**

Defendant Timothy L. Barton ("Defendant" or "Barton"), proceeding pro se, respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 60(b), Rule 62, Rule 54(b), 28 U.S.C. § 1651, and the Court's inherent equitable authority, first to reinstate his original Motion for Preservation of Status Quo [Dkt. 745] nunc pro tunc to its June 3, 2026 filing date—so that the preservation questions, which were presented before the lis-pendens motion was decided, are reached and adjudicated first—and, for preservation of the status quo as to all Receivership real property whose sale was approved by Orders now more than two years old—including the Frisco Gate Property, the Rock Creek Property, and any other Receivership real property as to which a previously approved sale has not yet consummated—and to compel the Receiver, before any closing or transfer of clear title, to establish on the record the present validity of the underlying contracts, the existence and availability of the contracted purchasers, and those purchasers' present financial capacity to close. In support, Defendant states:

## I. INTRODUCTION

This Motion is not an attempt to relitigate matters affirmed on direct appeal. It asks the Court to recognize that the Orders affirmed on appeal approved specific transactions, not perpetual blanket disposition authority. The passage of time, the apparent expiration of the original transactional terms, the staleness of the appraisal record, material changes in market conditions, and recent regulatory enforcement against the contracted purchaser's named principal raise concrete questions under Rule 60(b) that should be answered before any closing occurs.

Defendant respectfully submits that these preservation questions have never been heard on their merits, and that the procedural history of the past several weeks—set out in Part II below—explains why. The questions were presented in Defendant's original Motion for Preservation of Status Quo [Dkt. 745], which was struck on procedural grounds relating to representational status [Dkt. 746], not on the merits. When the Court then granted the Receiver's expedited motion to declare the lis pendens void [Dkt. 755], it expressly declined to consider preservation, reasoning that the struck motion was not pending and therefore "nonexistent." A subsequent reinstatement effort was denied without prejudice on an attachment technicality produced by docket-merger and sequencing errors [Dkt. 768]. The merits of preservation have thus repeatedly fallen between procedural cracks. Critically, the original Preservation Motion was filed on June 3, 2026—before the Receiver's lis-pendens motion was briefed and decided. Had that timely-filed motion been treated as pending rather than as administratively absent, preservation would have been reached first. Defendant respectfully submits that deciding the lis-pendens question while an earlier-filed, related motion sat struck for a curable representational-status defect was a sequencing error this Court may correct under Rule 54(b) and its inherent authority, and that the appropriate corrective is to reinstate [Dkt. 745] nunc pro tunc to its June 3, 2026 filing date so that preservation is adjudicated on the merits, first, as it should have been. This Motion, filed with leave and on a corrected record, asks the Court to reach them.

Defendant concedes, candidly, that no acute emergency requires expedited decision. That concession is the predicate of the requested relief, not an obstacle to it. The Receivership Order [Dkt. 650] does not condition the Receiver's sale authority on any emergency; but neither does it authorize accelerated consummation of stale, materially modified transactions years after the original approval, particularly where credible questions have arisen regarding the contracted purchaser's present capacity and qualifications. Paragraph 93 requires the Receiver to act "with due regard to the realization of the true and proper value" of Receivership real property, and Paragraph 94 conditions transfer of clear title on a "further Order of this Court." Those two structural commands—together with the Receiver's fiduciary obligation to confirm that any proposed counterparty can in fact consummate the transaction—anchor the relief Defendant requests.

## II. PROCEDURAL HISTORY: WHAT WAS FILED, WHAT WAS STRUCK, AND WHAT WAS DECIDED ON AN ADMINISTRATIVE RATHER THAN A MERITS BASIS

Because the present posture is the product of a sequence of procedural events, Defendant sets out that sequence so the Court may see that the preservation questions remain undecided on their merits:

- June 3, 2026 — Preservation Motion filed. Defendant filed his Motion for Preservation of Status Quo Under Rule 60(b). [Dkt. 745].
- June 5, 2026 — Preservation Motion struck on procedural grounds. The Court struck [Dkt. 745] because, as of that date, Defendant had not yet been permitted to proceed pro se, prior counsel's withdrawal had not yet been granted, and a representation status report had not been filed. [Dkt. 746]. Each of those grounds was a function of prior counsel's representational status—not of any defect in the substance or timeliness of the June 3 filing itself.The Court did not reach the merits.
- June 5, 2026 — Pro se status granted with a leave requirement. The Court granted prior counsel's withdrawal and permitted Defendant to proceed pro se, subject to seeking leave before filing any motion. [Dkt. 747]. The grounds underlying the strike were thereby cured, and Defendant filed the required status report. [Dkt. 752].
- June 4–9, 2026 — Expedited lis-pendens briefing. The Court ordered expedited briefing on the Receiver's Verified and Emergency Motion to Declare Lis Pendens Void [Dkt. 741], setting a compressed schedule [Dkt. 743], later extended to June 9 at noon [Dkt. 750]. Defendant filed a response and objection that expressly asked the Court to hear the Preservation Motion first. [Dkt. 754].
- June 9, 2026 — Lis pendens declared void; preservation not reached. The Court granted the Receiver's motion in part, declaring the lis pendens void as to four Dallas County properties, and denied the sanctions request without prejudice. [Dkt. 755]. The Court declined to consider preservation, reasoning that "there is no pending Preservation Motion before this Court for it to consider" because [Dkt. 745] had been struck. [Dkt. 755] at 2–3. The voiding was thus decided while the related preservation questions were treated as administratively absent rather than addressed on their merits.
- June 17–25, 2026 — Reinstatement effort frustrated by docketing error. Defendant moved to reinstate [Dkt. 745] or, alternatively, for leave to re-file it. [Dkt. 766]. The Court denied reinstatement and denied the alternative request for leave without prejudice, on the single stated ground that the proposed motion "had not been attached." [Dkt. 768]. That non-attachment was the product of docket-merger and sequencing errors—not any deficiency in the proposed motion—which Defendant documented in a June 22, 2026 letter to the Clerk and

attempted to cure by a corrected filing [Dkt. 773]. The Court then granted Defendant CM/ECF access. [Dkt. 777]. This Motion is attached to a contemporaneous motion for leave and filed electronically, curing the non-attachment ground identified in [Dkt. 768]; the corrected motion at [Dkt. 773] is being withdrawn to avoid duplication.

In short: the Preservation Motion was struck on administrative grounds and never heard on the merits; the Receiver's lis-pendens voiding was decided on an expedited, administrative footing that expressly bypassed preservation; and the reinstatement request was denied without prejudice on a technicality created by clerical error. This Motion is now properly before the Court, with leave, on a corrected record.

## III. THE COURT SHOULD REVISIT ITS JUNE 9, 2026 ORDER (DKT. 755) TO THE EXTENT IT FORECLOSES PRESERVATION AND REINSTATE THE PRESERVATION MOTION NUNC PRO TUNC

A district court has inherent authority to reconsider its own interlocutory orders, and Federal Rule of Civil Procedure 54(b) confirms that an order that does not resolve all claims "may be revised at any time before the entry of a judgment." Defendant respectfully submits that the June 9, 2026 Order [Dkt. 755] should be revisited to the limited extent that it forecloses consideration of preservation, for three reasons. Properly understood, the Court's decision not to reach preservation was not a merits ruling against Defendant; it was the byproduct of a sequencing error—a motion filed first, on June 3, treated as administratively absent while a later-filed, related motion was decided on June 9.

First, the sole reason the Court gave for not considering preservation was that the Preservation Motion was not pending—an absence created entirely by the administrative strike of [Dkt. 745], which rested on representational status and not on the merits. That predicate no longer holds: the strike grounds have been cured, and the Preservation Motion is now properly presented with leave. The reason the Court declined to consider preservation has therefore been removed.

Second, the lis-pendens ruling was entered on an expedited schedule [Dkt. 743] in which the Receiver did not even file a reply, and which the Court itself compressed and then briefly extended [Dkt. 750]. Reconsideration to permit orderly consideration of preservation does not disturb the Court's holding that the lis pendens were not authorized by Texas statute; it asks only that the distinct, equitable question of preservation—whether clear title should transfer before the Receiver establishes contract validity, purchaser availability, and proof of funds—be addressed before any closing occurs.

Third, voiding the lis pendens removed an encumbrance but did not itself transfer title or adjudicate whether the underlying, years-old approved sales remain valid and consummable on their original terms. Preservation therefore remains meaningful and timely: the very purpose of the Receiver's expedited motion was to clear the path to closing, which makes the preservation questions ripe now, before that path is irreversibly traveled.

Because the predicate for declining preservation was the administrative absence of [Dkt. 745]—not any merits determination—the precise and limited corrective is to restore that motion to the docket as of the date it was in fact filed. Defendant therefore asks the Court to reinstate [Dkt. 745] nunc pro tunc to June 3, 2026, so that the motion is treated as having been pending when the related lis-pendens question was under submission, and so that preservation is reached first, on the merits. This relief stays well within the proper office of a nunc pro tunc order. A nunc pro tunc order may "reflect the reality of what has already occurred" and "presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano, 140 S. Ct. 696, 700–01 (2020) (per curiam). Defendant does not ask the Court to manufacture a ruling that never issued or to "make the record what it is not"; he asks only that the record reflect a motion that was, in fact, filed on June 3, 2026, and that was removed from the Court's consideration for a representational-status reason since cured. So limited, reinstatement corrects the sequencing error without disturbing the Court's separate holding that the lis pendens were not authorized by Texas statute.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) authorizes relief from a final order on enumerated grounds. Defendant addresses the pertinent subdivisions so the Court can squarely evaluate the requested preservation in light of the specific subdivision invoked. Subdivisions (4), (5), and (6) supply the substantive grounds for preservation; Rule 62 and the All Writs Act, 28 U.S.C. § 1651, supply the interim mechanism; and Rule 54(b) and the Court's inherent authority permit revisiting the interlocutory June 9 Order [Dkt. 755].

### A. Rule 60(b)(4) — Action in Excess of the Court-Defined Authority.

To the extent the Receiver intends to consummate transactions whose operative contractual terms expired by their own terms, were materially modified through multiple post-approval amendments, or would be revived without the "further Order of this Court" required by Paragraph 94 of the

Receivership Order, consummation in that posture would exceed the scope of authority the Court itself defined. A consummation undertaken in excess of the Court-defined authority is, in substance, an action taken without judicial approval, and raises substantial questions the Court should resolve before the transaction is irreversible.

**B. Rule 60(b)(5) — Continued Prospective Application Is No Longer Equitable.**

Rule 60(b)(5) permits relief where "applying [the judgment] prospectively is no longer equitable." The Orders approving sale rested on a defined transactional record: 2022 contracts at defined prices, with defined closing windows, supported by appraisals and broker value opinions bearing late-2022 and early 2023 valuation dates, entered under a "best interest" analysis premised on then-current conditions and concerns about eroding equity. Each premise has materially changed by the operation of time: the original closing windows expired in or about 2023; the Frisco Gate transaction has been the subject of at least five amendments, per the Receiver's own description at [Dkt. 376]; the supporting appraisals are now more than three years stale; the original equity-erosion premise has, Defendant contends, been falsified by appreciation; and the named principal of the contracted Frisco Gate purchaser became the subject of a public enforcement action resolved by a $700,000 settlement, as described in Part V.E below.

**C. Rule 60(b)(6) — Extraordinary Circumstances.**

Rule 60(b)(6) is the residual ground available in extraordinary circumstances not captured by other subdivisions. The conjunction of (i) the apparent expiration of the originally approved contractual framework, (ii) the Sixth Amendment concerns under Luis v. United States, 578 U.S. 5 (2016), (iii) the administrative-closure status of this case and the Stay accorded vide Dkt. 64, (iv) the post-affirmance regulatory record regarding the contracted purchaser's principal, and (v) the irreversibility of real-property transfer in the absence of any emergency collectively present extraordinary circumstances within the meaning of (b)(6).

## V. ARGUMENT

**A. Paragraph 94 Independently Requires a "Further Order" Before Transfer of Clear Title.**

The Receivership Order states that the Receiver "will be authorized to sell, and transfer clear title to," Receivership real property only "Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004." [Dkt. 650] ¶ 94. The structure is intentional: locating, listing, and contracting for sale (Paragraph 93) is one category of authority; transferring clear title is another, conditioned on further judicial process. The Court approved a defined transaction in January 2023 [Dkt. 142] and re-approved a defined transaction in December 2023 [Dkt. 438], each tied to the operative state of the contract before it. As described by the Receiver, the Frisco Gate contract has since been amended at least five times. [Dkt. 376] at 4–6. A reasonable reading of Paragraph 94, in conjunction with 28 U.S.C. § 2001(b), is that material changes to the operative transactional terms after the approval Order require a further Order before clear title may be transferred. That is the precise question Defendant asks the Court to resolve before any closing occurs.

**B. The Original Closing Windows Expired by Their Own Terms; Revival Years Later Warrants Renewed Scrutiny.**

Section 5.1(a) of the December 13, 2022 Frisco Gate purchase and sale agreement fixed an outside closing date of approximately March 13, 2023 (sixty days after expiration of a thirty-day feasibility period). No closing occurred. The Receiver has described five subsequent amendments. [Dkt. 376] at 4–6. The conjunction of (i) an elapsed closing date, (ii) successive amendments, and (iii) materially changed market conditions converts the present transaction into something legally and factually distinct from the transaction the Court approved. This is not an argument that the contract is "void" as a matter of pure contract law; it is the more disciplined argument that the Court approved a specific transaction with specific economics and timing, and that a revived, amended, and stale version of it is materially different from what was approved. Whether that difference requires renewed judicial approval under Paragraph 94 and § 2001(b) is itself a question the Court should answer before consummation moots it.

**C. Paragraph 93's "True and Proper Value" Standard and 28 U.S.C. § 2001(b) Require Contemporaneous Valuation Evidence.**

Paragraph 93 obligates the Receiver to act "with due regard to the realization of the true and proper value" of Receivership real property. [Dkt. 650] ¶ 93. That standard is not satisfied by reliance on three-year-old appraisals as the sole valuation basis for a transaction the Receiver now intends to consummate. Section 2001(b) reinforces this: before confirmation of any private sale, "the court shall

appoint three disinterested persons to appraise such property," and "[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value." 28 U.S.C. § 2001(b). Those safeguards are mandatory, and a broker's opinion of value is not the equivalent of three court-appointed disinterested appraisals. Before any transfer of clear title, the Court should direct the Receiver to confirm on a current record that the § 2001(b) safeguards are satisfied as of consummation, rather than as of approval more than three years ago.

**D. Market Values Have Materially Appreciated, Inverting the Receiver's Original Equity-Erosion Premise.**

At the time of approval, the Receiver argued that delay would erode estate equity. See, e.g., [Dkt. 76]; [Dkt. 110]. Defendant contends, and intends to demonstrate by current appraisal evidence submitted under separate cover, that market values for the subject properties have materially appreciated in the interim. If the record bears that out, the original "best interest" analysis under § 2001(b) no longer holds, and prospective application of the December 15, 2023 sale Orders is no longer equitable within the meaning of Rule 60(b)(5).

**E. The Court Should Compel the Receiver to Establish, Before Any Closing, (1) That the Settlement and Sales Contracts Remain Valid as Presented, (2) That the Buyers Are Real and Available, and (3) That the Buyers Can Prove Their Funds.**

The central enhancement Defendant respectfully requests is an order compelling the Receiver, before any closing or transfer of clear title, to establish three predicate facts on the record—facts that go to the heart of whether the years-old approved sales can lawfully and prudently be consummated today:

- Contract validity as presented. The Receiver should be directed to confirm and document that each settlement agreement and sale contract on which he intends to rely remains presently valid and enforceable on the terms presented to and approved by the Court, including a complete copy of the operative agreement with all amendments, the current closing-date framework, and confirmation that no term material to the Court's prior approval has lapsed, been waived, or been altered without disclosure. The Receiver has described the Frisco Gate contract as amended at least five times [Dkt. 376] at 4–6; the Court and the parties are entitled to know whether what will close is what was approved.
- Buyers are real and available. The Receiver should be directed to confirm the present legal existence, good standing, and availability of each contracted purchaser entity—including

jurisdiction of organization, current good-standing status, registration to transact business in Texas to the extent applicable, the present authority of the signatory to bind the entity, and any assignment or substitution of the purchaser since execution. A "best interest" determination premised on a counterparty that no longer exists, cannot be located, or has been silently substituted is no determination at all.

- Proof of funds. The Receiver should be directed to file current proof of funds or a fully executed financing commitment sufficient to fund each contracted purchase price plus closing costs. This safeguard is especially warranted here because the named principal of the contracted Frisco Gate purchaser, Rashid Salem, personally resolved a public civil enforcement action brought by the Office of the Attorney General for the District of Columbia for $700,000, together with reform commitments and three years of compliance monitoring, as described below. Value cannot be realized at closing if the purchaser cannot fund the closing; the Receiver's fiduciary obligation under Paragraph 93 incorporates, at minimum, a reasonable verification that each contracted purchaser is presently capable of funding the contracted transaction.

The regulatory record underscores the need for these confirmations. On January 31, 2025—after the Fifth Circuit's affirmance—the Office of the Attorney General for the District of Columbia filed a civil enforcement action naming Rashid Salem personally, Petra Management Group, LLC, and three single-purpose limited liability companies, alleging violations of the District's Human Rights Act and Consumer Protection Procedures Act in connection with housing-voucher practices. On October 16, 2025, the DC OAG announced a $700,000 settlement of that action, together with reform commitments and three years of compliance monitoring. Defendant does not assert that the contracted purchaser is fictitious or that the regulatory record renders the contract per se invalid. Defendant submits only that the conjunction of the lapse of the original closing window, the named principal's recent personal involvement in a $700,000 enforcement settlement, and the absence on the record of any current proof-of-funds or capacity confirmation collectively trigger a Receiver-side fiduciary obligation to verify capacity before consummation.

**F. Sixth Amendment Concerns Under Luis v. United States.**

Defendant remains the subject of an active parallel federal criminal proceeding. The Supreme Court in Luis v. United States, 578 U.S. 5 (2016), held that the Sixth Amendment prohibits the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice. Luis requires a

particularized analysis as to any portion of equity that may not be traceable. Consummation of these sales will convert real-property equity into pooled receivership funds, foreclosing or substantially impairing any Luis-based claim Defendant might pursue with respect to untainted equity. Preservation pending that analysis is therefore not optional; it is constitutionally indicated.

**G. Jurisdictional Preservation Following Administrative Closure; Real Property Is Unique.**

The Court's administrative-closure order preserved the Receiver's authority to perform his duties and the parties' ability to make appropriate filings; it did not divest this Court of jurisdiction, authorize irreversible disposition of real property without further judicial process, or displace the structural commands of Paragraphs 93 and 94. Real property is, by long-settled equitable principle, unique. Once title transfers to a third-party purchaser, restoration is rarely available, and equitable remedies otherwise available under Rule 60(b)—or any Luis claim—may be foreclosed. Irreversibility is the classic predicate for preservation relief, and it is fully present here, where no emergency has been shown and the estate faces no demonstrated imminent cash need.

## VI. PRAYER FOR RELIEF

WHEREFORE, Defendant Timothy L. Barton respectfully prays that the Court:

- Reinstate Defendant's original Motion for Preservation of Status Quo [Dkt. 745] nunc pro tunc to its June 3, 2026 filing date, and deem it to have been pending before the Court when the Receiver's lis-pendens motion was decided, so that the preservation questions are reached and adjudicated on their merits first;
- Preserve the status quo as to the Frisco Gate Property, the Rock Creek Property, and any other Receivership real property whose previously approved sale or settlement has not yet consummated, by directing that no closing or transfer of legal title occur until the Court has resolved the matters identified herein;
- To the extent necessary, revisit and reconsider the Court's June 9, 2026 Order [Dkt. 755] under Federal Rule of Civil Procedure 54(b) and the Court's inherent authority, limited to the extent that Order forecloses consideration of preservation, so that the preservation questions may be reached on their merits before any closing;
- Compel the Receiver to file, within a reasonable period to be set by the Court and before any closing, a report establishing: (a) that each settlement agreement and sale contract on which he intends to rely remains presently valid and enforceable on the

terms presented to and approved by the Court, with all amendments and the current closing-date framework; (b) the present legal existence, good standing, signatory authority, and availability of each contracted purchaser, and any assignment or substitution since execution; (c) current proof of funds or fully executed financing commitments adequate to fund each contracted purchase price plus closing costs; (d) the appraisals or valuations on which the Receiver intends to rely at closing, including whether they reflect valuation dates contemporaneous to closing and satisfy 28 U.S.C. § 2001(b); and (e) whether the contracted purchaser, the entities it manages, or its named principals are subject to any then-pending civil enforcement actions, regulatory settlements with conditions still in effect, or compliance monitoring;

- Set a status conference or briefing schedule on Defendant's substantive grounds under Rule 60(b)(4), (b)(5), and (b)(6); and
- Grant such other and further relief, including any preservation order under the Court's inherent equitable authority or under the All Writs Act, 28 U.S.C. § 1651, as the Court deems just and proper.

Dated: June 28, 2026

Respectfully submitted,

*<u>/s/ Timothy L. Barton</u>*
Timothy L. Barton
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Civil Rule 7.1(b), Defendant has conferred, via email on the date of filing of this Motion with counsel for the Securities and Exchange Commission and counsel for the Receiver regarding this Motion. The Securities and Exchange Commission and the Receiver are opposed.

*/s/ Timothy L. Barton*
Timothy L. Barton

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

*/s/ Timothy L. Barton*
Timothy L. Barton

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:22-cv-2118-X |
| TIMOTHY L. BARTON, et al., | § | |
| | § | |
| *Defendants.* | § | |

**[PROPOSED] ORDER GRANTING IN PART DEFENDANT TIMOTHY L. BARTON'S OPPOSED MOTION FOR PRESERVATION OF STATUS QUO UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND BRIEF IN SUPPORT**

Before the Court is Defendant Timothy L. Barton's Motion for Preservation of Status Quo Under Federal Rule of Civil Procedure 60(b) and Brief in Support (the "Motion"). Having considered the Motion, any response and reply, the record, and the applicable law, the Court finds that the Motion should be **GRANTED IN PART** as set out below.

It is therefore ORDERED that:

1. Defendant's original Motion for Preservation of Status Quo [Dkt. 745] is **REINSTATED** nunc pro tunc to its June 3, 2026 filing date for purposes of considering the preservation issues presented therein.

2. The Court's June 9, 2026 Order [Dkt. 755] is revisited only to the extent necessary to clarify that it does not foreclose consideration of the preservation issues raised in the Motion. Nothing in this Order alters the Court's separate ruling concerning the lis pendens.

3. Pending further order of this Court, the Receiver shall not close any sale or transfer legal title to the Frisco Gate Property, the Rock Creek Property, or any other Receivership real property subject to a previously approved sale or settlement that has not yet been consummated.

4. Within fourteen (14) days of this Order, the Receiver shall file a report, supported by competent documentation, addressing: (a) the presently operative agreement for each unconsummated sale or settlement, including every amendment and the current closing-date framework; (b) the legal existence, good standing, signatory authority, and present availability of each purchaser,

including any assignment or substitution; (c) current proof of funds or a fully executed financing commitment sufficient to fund the purchase price and closing costs; (d) the appraisals or valuations on which the Receiver intends to rely at closing, including their valuation dates and whether the Receiver contends they satisfy 28 U.S.C. § 2001(b); and (e) any then-pending civil enforcement action, regulatory settlement with conditions remaining in effect, or compliance-monitoring obligation involving a purchaser, an entity it manages, or a named principal.

5. The SEC and Receiver may file any response to the Motion within twenty-one (21) days after the Receiver files the report required by paragraph 4. Defendant may file a reply within fourteen (14) days after any response is filed.

6. This Order preserves the status quo and does not adjudicate the ultimate enforceability of any sale contract, settlement agreement, or buyer qualification. The Court will determine any remaining substantive issues after the required report and briefing are complete.

IT IS SO ORDERED this ____ day of ______________, 2026.

______________________________
**BRANTLEY STARR**
**UNITED STATES DISTRICT JUDGE**