**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § § § § | |
| **v.** | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants.* | § § § | |

**DEFENDANT TIMOTHY L. BARTON'S MOTION FOR LEAVE TO FILE OPPOSED MOTION TO ENFORCE THE ORDER, COMPEL A COMPLETE ENTITY-BY-ENTITY ACCOUNTING, AND REQUIRE SUPPLEMENTAL FINANCIAL AND TAX REPORTING**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton ("Barton"), appearing pro se, respectfully moves this Court for an order granting leave to file the attached Opposed Motion to Enforce the Receivership Order, Compel a Complete Entity-by-Entity Accounting, and Require Supplemental Financial and Tax Reporting (the "Proposed Motion"), attached as Exhibit A. In support, Barton states:

1. On June 5, 2026, the Court entered an Order permitting Mr. Barton to represent himself pro se but directing that he "must seek leave of the Court before filing any motion." [Dkt. 747]. The Order further provides that the leave requirement does not apply to responses and replies filed under Local Civil Rule 7.1(e) and (f).
2. Pursuant to Dkt. 747, Mr. Barton seeks leave to file the attached Proposed Motion. The Proposed Motion asks the Court to enforce the accounting and reporting duties imposed by the Receivership Orders, including the requirements for custodial accounts and a full report and accounting of each Receivership Estate.

3. The Proposed Motion is made in good faith and is not filed for delay, harassment, or frivolous duplication. It does not seek to dissolve the receivership, relitigate appointment, unwind any completed transaction, or stay the lender-proposal process directed by Dkt. 792.
4. Good cause exists because the Proposed Motion raises a narrow receivership-supervision issue: whether the Receiver's aggregate reporting should be supplemented with estate-specific ledgers, reconciliations, account registers, tax records, and supporting schedules necessary to identify ownership, liabilities, cash, receipts, disbursements, and proposed dispositions by Receivership Estate.
5. The issue is timely. Dkt. 792 contemplates potential free-and-clear sales and later priority determinations against sale proceeds. Before any such disposition, the Court should have a record identifying which estate owns the asset, which liabilities attach to that estate, what inter-estate transfers or subsidies exist, and how net proceeds will be held and allocated.
6. Granting leave will not itself compel production, alter the receivership, stay any sale process, or adjudicate any accounting dispute. It will only permit the Proposed Motion to be docketed and briefed so the Court may determine whether the requested supplemental accounting should be required.
7. The requested filing will assist the Court's continuing supervision of its officer and the separate Receivership Estates. The proposed relief is proportional because it focuses on records the Receiver should possess or maintain in administering the estates, and it allows confidentiality protections, redactions, privilege logs, and phased production if needed.

8. No party will be prejudiced by leave. The Receiver and SEC may respond under Local Civil Rule 7.1(e), and Mr. Barton may reply under Local Civil Rule 7.1(f), unless the Court orders otherwise.

9. A proposed order granting this Motion for Leave is submitted herewith.

WHEREFORE, Mr. Barton respectfully requests that the Court GRANT this Motion for Leave, permit the attached Proposed Motion (Exhibit A) to be filed and entered on the docket, and grant such other and further relief as is just and proper.

Dated: July 22, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me

## CERTIFICATE OF CONFERENCE

Pursuant to Local Civil Rule 7.1(b), Defendant conferred in good faith with counsel for the Receiver and counsel for the Securities and Exchange Commission regarding the relief requested in this Motion for Leave. The Receiver and the SEC are opposed to the requested relief.

***/s/ Timothy L. Barton***
**Timothy L. Barton,**
**Defendant, Pro Se**

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed through the Court's electronic-filing system, which will serve all counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton,**
**Defendant, Pro Se**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § | |
| **v.** | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants.* | § | |

**[PROPOSED] ORDER GRANTING DEFENDANT TIMOTHY L. BARTON'S MOTION FOR LEAVE TO FILE OPPOSED MOTION TO ENFORCE THE RECEIVERSHIP ORDER, COMPEL A COMPLETE ENTITY-BY-ENTITY ACCOUNTING, AND REQUIRE SUPPLEMENTAL FINANCIAL AND TAX REPORTING**

Before the Court is Defendant Timothy L. Barton's Motion for Leave to File Opposed Motion to Enforce the Receivership Order, Compel a Complete Entity-by-Entity Accounting, and Require Supplemental Financial and Tax Reporting (the "Motion for Leave"). Having considered the Motion for Leave, the record, and the applicable law, the Court finds that good cause exists and that the Motion for Leave should be GRANTED.

It is therefore ORDERED that Defendant Timothy L. Barton is GRANTED leave to file his Motion to Enforce the Receivership Order, Compel a Complete Entity-by-Entity Accounting, and Require Supplemental Financial and Tax Reporting, attached to the Motion for Leave as Exhibit A.

It is further ORDERED that the Clerk of Court is directed to file and enter Exhibit A as a separate motion on the docket of this case.

**SO ORDERED.**

Signed this _____ day of ___________________, 2026.

___________________________________________
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:22-cv-02118-X** |
| | § | |
| **TIMOTHY BARTON, et al.,** | § | |
| ***Defendants.*** | § | |

**DEFENDANT TIMOTHY L. BARTON'S OPPOSED MOTION TO ENFORCE THE RECEIVERSHIP ORDER, COMPEL A COMPLETE ENTITY-BY-ENTITY ACCOUNTING, AND REQUIRE SUPPLEMENTAL FINANCIAL AND TAX REPORTING**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton respectfully moves the Court to enforce the accounting and reporting duties imposed on the Receiver by the Court's own orders. The operative Modified Receivership Order requires the Receiver to establish custodial accounts "[f]or each of the Receivership Estates" and to file "a full report and accounting of each Receivership Estate." Dkt. 650 ¶¶ 90–91, 111–12; see also Dkt. 417 ¶¶ 37–38, 58–59. The requested relief is limited to entity-level financial reporting, supporting records, and reconciliation sufficient for meaningful judicial supervision before the receivership proceeds further into liquidation. Before any free-and-clear sale under Dkt. 792, however, the Court should have the accounting necessary to determine which estate owns the asset, which liabilities attach to it, and how the proceeds will be held and allocated. This motion does not seek to dissolve the receivership, relitigate its

appointment, unwind any completed transaction, or stay the lender-proposal process directed by Dkt. 792.

## I. RELEVANT ORDERS AND CURRENT RECORD

### A. The Court ordered account administration and reporting by Receivership Estate.

The Modified Receivership Order directs the Receiver, "[f]or each of the Receivership Estates," to establish one or more custodial accounts at a federally insured bank to receive and hold cash-equivalent Receivership Property. Dkt. 650 ¶ 90. It prescribes the account title and separately requires a quarterly "full report and accounting of each Receivership Estate" reflecting the existence, value, and location of Receivership Property and the extent of liabilities. Id. ¶¶ 91, 111. Paragraph 112 requires, among other things, cash on hand, accrued administrative expenses, unencumbered funds, receipts and disbursements, property descriptions and valuations, proposed dispositions, claims, creditors, and the Receiver's recommendation concerning continuation or discontinuation of the receivership. The Second Receivership Order imposed materially identical duties. Dkt. 417 ¶¶ 37–38, 58–59.

The phrase "each Receivership Estate" must have practical accounting content. Even if the Receiver lawfully uses a master custodial account for more than one estate, the records must still identify which estate owns each receipt and cash balance, which estate incurred each expense, and how transfers and shared costs are allocated. Otherwise, the Court cannot determine the financial condition of any particular estate or reconcile aggregate figures to the separate entities placed in receivership.

**B. The Fifteenth Report provides selected account summaries, but not a complete accounting for every estate.**

The Receiver's Fifteenth Quarterly Status Report states that, as of March 31, 2026, receivership bank accounts held $1,245,547.36. Dkt. 728 at 74. Exhibit A reports total receipts of $4,372,384.20 and total disbursements of $3,723,498.65 till that quarter. Dkt. 728-1 at 5–10. The Report identifies a main Receivership Account and separate reporting for certain accounts, including Amerigold Suites and D4OP. Dkt. 728 at 74 & n.28; Dkt. 728-1 at 5–21. But it does not provide, for every Receivership Estate, a balance sheet, trial balance, general ledger, income statement, cash-flow statement, debt schedule, complete bank-account register, and reconciliation tying the entity's books to the amounts reported to the Court.

The Report itself demonstrates why a complete reconciliation is necessary. It discloses that two $6,940.35 Amerigold Suites insurance payments were inadvertently paid from the Main Receivership Account and later reimbursed from the Amerigold account. Dkt. 728-1 at 9–10, 19. That disclosure does not establish misconduct. It does establish that receipts and expenses may pass through an account attributable to a different estate and later require correction. A complete account matrix, entity ledger, and inter-estate reconciliation are therefore necessary to determine which estate owns each receipt, bears each expense, and holds each resulting cash balance.

**C. The Receiver's continuing forensic and tax work confirms that the requested records are material.**

The Fifteenth Report states that the forensic accounting remains ongoing, that the Receiver's accountants have encountered extensive commingling among various Receivership Entity funds and accounts, and that the work is intended to trace funds from each Wall-entity investor into other Receivership Entities and determine how those funds were used. Dkt. 728 at 68–69. The Report also states that the accountants continued preparing federal and state tax

filings and forms during the first quarter of 2026. Id. at 69. These disclosures make an entity-by-entity ledger, source-and-use schedule, account register, and tax-reporting schedule directly relevant to the duties the Receiver is already performing.

**D. The July 8, 2026 Order makes the accounting issue ripe.**

On July 8, 2026, after reviewing the Fifteenth Report, the Court directed the Receiver to solicit lender proposals for each Receivership Property and report within ninety days. Dkt. 792 at 1–2. The Order further states that, absent workable proposals, the Court will instruct the Receiver to begin selling properties free and clear of liens and loans and will later determine competing priorities against the proceeds. Id. The Receiver has reported substantial debt, accrued interest, and continuing equity erosion as reasons to move the receivership forward. Dkt. 728 at 3–5. Those assertions may warrant action, but their financial premise cannot be tested estate by estate without the accounting already required by the Receivership Order. Because a free-and-clear sale would permanently convert property of a particular estate into cash and shift ownership and priority disputes to the proceeds, the Court should require the estate's ownership, liabilities, cash position, and allocation methodology to be identified before authorizing that disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 66 provides that the administration of a receivership estate must accord with historical federal practice or an applicable local rule. Fed. R. Civ. P. 66. A receiver is an officer or arm of the appointing court, appointed to assist the court in protecting and preserving property in the court's custody for all concerned. *Crites, Inc. v. Prudential Insurance Co. of America, 322 U.S. 408, 414–15 (1944)*. Property delivered to a receiver is held by the court through its officer for those ultimately entitled to it. *Atlantic Trust Co. v. Chapman, 208 U.S. 360, 370–71 (1908)*. Courts also possess inherent authority to enforce their own orders.

*Waffenschmidt v. MacKay, 763 F.2d 711, 716 (5th Cir. 1985)*. The Fifth Circuit has emphasized that a receivership is an extraordinary remedy and that its administration and costs remain matters for careful judicial review. *Netsphere, Inc. v. Baron, 703 F.3d 296, 305, 311–13 (5th Cir. 2012)*; see also *SEC v. Barton, 79 F.4th 573, 578–81 (5th Cir. 2023)*. Here, the Court need not infer a generalized accounting duty from historical practice because its own order expressly requires a full report and accounting of each Receivership Estate. Rule 66 therefore contemplates active judicial supervision of the estate and the court-appointed officer administering it. That supervision cannot be meaningful where the Court receives only aggregate totals that cannot be reconciled to the separate estates placed in receivership.

## III. ARGUMENT

### A. This motion seeks enforcement of existing duties, not creation of a private inspection right.

The Receiver may respond that Barton no longer manages the Receivership Entities or lacks an independent right to inspect every receivership record. That issue need not be decided. This motion asks the Court to enforce duties the Court already imposed on its own officer: custodial-account administration for each Receivership Estate and a full accounting sufficient to identify property, liabilities, cash, receipts, disbursements, and proposed dispositions. Dkt. 650 ¶¶ 90–91, 111–12. The Court may require compliance with those commands regardless of whether Barton possesses a separate state-law inspection right.

The Receivership Order transferred management and control to the Receiver and gave him immediate access to the entities' books, bank accounts, records, tax returns, and electronic information. Dkt. 417 ¶¶ 4, 7, 10, 13–15; Dkt. 650 ¶¶ 56–57, 60, 63–65. The same order requires the resulting accounting to be filed and served. Dkt. 650 ¶ 111. The Receiver cannot rely on

aggregate financial assertions to obtain sale authority, compensation, or broader liquidation relief while leaving the underlying entity-level accounting unavailable for meaningful review.

**B. Aggregate cash summaries do not establish the financial condition of each estate.**

A cash-receipts-and-disbursements schedule answers only part of the inquiry. It does not identify, for each legally distinct Receivership Estate, total assets, liabilities, equity, receivables, payables, debt service, operating income, reserves, security deposits, accrued expenses, or the account in which each estate's cash is held. Nor does it show whether one estate's funds paid another estate's obligations, whether such amounts were recorded as intercompany receivables or payables, or how shared professional and administrative costs were allocated.

The need for entity-level separation is especially material because alleged pre-receivership commingling has been central to the Receiver's forensic work. See Dkt. 728 at 68–69. The present request does not equate court-authorized pooling or consolidated cash management with the conduct alleged by the SEC. It asks the Receiver to disclose whether funds were pooled, identify the authority and accounting methodology used, and produce the ledger entries that preserve ownership and allocation among the separate Receivership Estates.

These are legally distinct estates with different assets, creditors, lenders, ownership interests, tax attributes, guarantees, and potential priorities. The existing record separately identifies, among others, 2999TC Acquisitions LLC, BM318, LLC, Amerigold Suites, and D4OP. Unless the Court expressly authorizes substantive consolidation or pooling, the accounting must preserve the ownership and liabilities of each estate even where cash management is consolidated.

**C. The accounting is necessary to protect all persons interested in each separate Receivership Estate.**

The Receiver's fiduciary obligations run to the Court and to all persons interested in the property entrusted to him, not to any one claimant group. A receiver is a trustee with the highest fiduciary obligations and owes strict impartiality and undivided loyalty to all persons interested in the receivership estate. *Phelan v. Middle States Oil Corp., 154 F.2d 978, 991 (2d Cir. 1946)*. The Receivership Order likewise treats the listed entities as separate Receivership Estates: it directs the Receiver to use Receivership Property for the benefit of the Receivership Estates, requires custodial accounts "[f]or each" estate, and requires a full report and accounting "of each" estate, including its liabilities and known creditors. Dkt. 417 ¶¶ 6(D), 37, 58–59; Dkt. 650 ¶¶ 90, 111–12.

Barton contends that creditors, investors, and lenders associated with 2999TC Acquisitions LLC, BM318, LLC, and other Receivership Entities have not been separately identified or shown in an estate-specific accounting. At the same time, the Fifteenth Report describes the forensic work principally in terms of tracing funds from Wall-entity investors into other Receivership Entities. Dkt. 728 at 68–69. Without an entity-by-entity claimant matrix and transaction-level reconciliation, the Court cannot determine whether assets, revenues, or sale proceeds attributable to one estate have been used to pay expenses or claims associated with another estate, whether any such use was authorized, or whether it was recorded as an inter-estate receivable or payable.

The issue is not the nationality of any claimant; it is estate ownership, legal priority, and equal fiduciary treatment. Absent express Court authorization and a transparent accounting basis, consolidated administration should not obscure the ownership, liabilities, or priorities of the separate estates or prevent the Court from determining whether each estate has been treated

consistently with the Receivership Orders. The requested evidence will permit the Court to determine whether the Receiver has maintained the independence and accounting required for each estate, complied with the Receivership Orders, and protected the rights of every creditor, investor, and financial institution holding a legally cognizable interest.

Without that accounting, the Court and affected creditors, lenders, investors, guarantors, and owners cannot determine whether liquidation of a particular estate is justified or whether proceeds and expenses have been attributed to the correct estate. Entity-level disclosure is therefore necessary to provide meaningful notice and an opportunity to evaluate the financial premises on which disposition and priority decisions will be made.

**D. The accounting is necessary to evaluate the asserted need for expedited sales and broader liquidation.**

The Receiver has sought or supported expedited sales and now reports debt, accrued interest, and declining equity as reasons to advance liquidation. Dkt. 728 at 3–5. A complete accounting would permit the Court to evaluate those assertions without presuming they are either correct or incorrect. Entity-level cash, operating results, reserves, debt schedules, default-interest calculations, accrued administrative expenses, and available alternatives are necessary to determine whether sale of a particular asset is required for preservation, whether another estate has subsidized that asset, and whether less drastic measures are available. The request is especially timely because Dkt. 792 contemplates free-and-clear sales if lender proposals are unsuccessful.

For each prior or proposed expedited sale, the nonprivileged financial basis should be identifiable: the estate's contemporaneous cash position, carrying costs, debt service, accrued interest, anticipated deterioration, and the alternatives considered. Those records will allow the

Court to assess the claimed need for urgency and liquidation on an estate-by-estate basis, rather than from a consolidated narrative alone.

Proceeding to permanent dispositions without that information creates concrete prejudice. An asset may be sold before ownership, liabilities, inter-estate transfers, and the proposed allocation of proceeds are reconciled; creditors and lenders may be unable to test balances or priorities; tax reporting may become more difficult to correct; and later review may be rendered practically ineffective once the property has been transferred to a purchaser. The accounting should therefore precede any free-and-clear sale under Dkt. 792, while the lender-proposal process may continue.

**E. The Court cannot make future equitable distribution decisions without complete estate accounting.**

Dkt. 792 states that, after any free-and-clear sale, the Court will determine competing priorities against the proceeds. That determination necessarily requires the Court to know which Receivership Estate owned the asset, which liabilities and liens are attributable to that estate, whether another estate funded carrying costs or received revenues, and how administrative expenses were allocated. Aggregate figures cannot supply those answers.

Requiring the accounting before permanent disposition will not adjudicate ownership or priority in advance. It will create the record needed for the Court to make those equitable determinations accurately and to protect every person with a legally cognizable interest in the particular estate.

**F. The Receiver should already possess or maintain the requested records.**

The Receiver has exercised exclusive control over the Receivership Entities for years and has retained accountants and other professionals. The requested ledgers, trial balances, bank reconciliations, tax filings, and property-level operating reports are records ordinarily created or

maintained in administering the estates. Requiring their production and reconciliation should not require reconstruction of information that a fiduciary managing dozens of entities should already maintain. If a requested record was not maintained, the Receiver should identify that fact specifically, explain the substitute records used, and state how the quarterly reports were prepared without it. That includes the chart of accounts, accounting-software exports or backup files, monthly bank reconciliations, adjusting entries, and intercompany journal entries.

**G. Tax reporting is a limited and legitimate component of the accounting.**

The Receiver is directed to maintain the Receivership Funds as a taxable settlement fund and is authorized to pay federal, state, and local taxes. Dkt. 650 ¶¶ 96, 114; see also Dkt. 417 ¶¶ 43, 61. The Fifteenth Report confirms that the Receiver's accountants continued preparing federal and state tax filings and forms. Dkt. 728 at 69. Barton held membership interests in multiple Receivership Entities before the receivership and states that he has received no Schedule K-1 from the Receiver during the receivership and no explanation of the tax classification or reporting used for those entities.

Production of filed returns, extensions, K-1s and other information returns, tax elections, depreciation schedules, fixed-asset ledgers, and related workpapers is necessary to identify how income, gain, loss, depreciation, debt cancellation, and sale proceeds have been reported. This motion does not ask the Court to decide ownership or tax liability. It asks for the tax records generated under the Receiver's exclusive control so that affected persons can understand the administration and satisfy continuing tax obligations. If no K-1 was prepared for Barton, the Receiver should identify the tax classification applied, the persons or entities treated as owners or partners for tax purposes, and the basis on which no K-1 was issued.

**H. The requested relief is proportionate and can protect confidential information.**

Barton does not request that full account numbers, taxpayer-identification numbers, tenant information, or other sensitive material be filed publicly. The Court may require public filing of summary schedules while directing production of supporting bank statements, native accounting exports, tax records, and workpapers to the parties under the existing protective framework or another confidentiality protocol. Privileged legal advice may be redacted, but any withheld responsive record should be identified on a privilege log. If the Receiver contends that full production cannot be completed within thirty days, he should identify the specific records not maintained or not readily available and propose a short, phased schedule.

## IV. RELIEF REQUESTED

Barton respectfully requests that the Court order the Receiver to file, within thirty days, a verified supplemental accounting current through the most recently completed quarter and to produce the supporting records described below:

1. An entity matrix identifying every Receivership Estate; its jurisdiction of formation; current operating status; property and material assets; liabilities and creditors; pending claims; and every bank, custodial, operating, escrow, reserve, security-deposit, or investment account used for that estate. The matrix shall identify every known creditor, investor, lender, or other claimant; the amount and stated legal basis of the claim; the specific estate against which it is asserted; and whether the claim is allowed, disputed, contingent, secured, or unsecured.
2. For each Receivership Estate, a balance sheet, income statement, cash-flow statement, trial balance, general ledger, complete chart of accounts, all adjusting and intercompany journal entries, accounts-receivable and accounts-payable aging, debt schedule, and a native

electronic export, backup file, or equivalent transaction-level data from each accounting system used.

3. A complete account register identifying every account used during the receivership, including the account title, financial institution, last four digits, opening and closing dates, taxpayer-identification number used, estates served, present balance, and whether the account holds funds attributable to more than one estate.

4. A reconciliation tying every account and entity ledger to each quarterly report, including monthly bank reconciliations, every transfer between estates or accounts, every intercompany receivable or payable, every correcting or adjusting entry, and the methodology used to allocate shared expenses and professional fees.

5. For each income-producing property, quarterly rent rolls and operating statements showing gross receipts, occupancy, operating expenses, security deposits, reserves, capital expenditures, net operating income, mortgage payments, principal balances, accrued interest, default interest, and other liens.

6. For each sale, settlement, foreclosure, or other disposition, a schedule showing the asset; valuation materials; contract and closing dates; gross proceeds; closing costs; lien or debt payments; net proceeds; the account receiving those proceeds; and every subsequent use or transfer of the proceeds.

7. For each prior or proposed sale presented as expedited, urgent, or necessary to preserve value, the nonprivileged contemporaneous cash-flow forecast, carrying-cost analysis, debt-service and interest calculations, and financial alternatives considered or relied upon.

8. The status and results of the forensic accounting and tracing work by entity and property, including completed source-and-use schedules and final or interim accounting reports, subject to appropriate redaction of privileged legal advice.

9. All federal, state, and local tax returns and extensions filed for each Receivership Entity for tax years 2022 through the present; all K-1s, 1099s, and other information returns prepared or issued; tax-classification elections; depreciation and fixed-asset schedules; capital-account schedules; settlement-fund returns; and related nonprivileged tax workpapers. If no K-1 was issued to Barton, a verified explanation identifying the tax classification used, the persons or entities treated as owners or partners for tax purposes, and the basis for not issuing one.

10. Bank statements, account-opening documents, signature cards, monthly bank reconciliations, and native accounting-software backup files or exports sufficient to verify the schedules above, with full account numbers and taxpayer-identification numbers redacted from any public filing.

11. A declaration signed by the Receiver under penalty of perjury certifying that the supplemental accounting is complete to the best of his knowledge, identifying the accounting professionals who prepared or verified it, and identifying any requested record that was not maintained or cannot be produced.

12. Preservation of all accounting databases, native files and backup files, charts of accounts, journal entries, bank records, tax records, allocation workpapers, and correspondence concerning estate accounting until further order of the Court.

13. Before any free-and-clear sale under Dkt. 792, a verified estate-specific schedule identifying the selling estate, that estate's ownership of the asset, the liabilities and liens attributable to that estate, the estate's cash position and carrying costs, any inter-estate transfers or

subsidies, and the account and proposed methodology for holding and allocating the net sale proceeds.

If the Receiver cannot reconcile the account and entity records, Barton alternatively requests that the Court direct a neutral forensic accountant to review the receivership books and report directly to the Court on the limited accounting issues identified above. The neutral accountant should be authorized to access the Receiver's native accounting systems, backup files, bank records, tax records, and other source materials necessary to perform that review. Barton further requests such other and further relief to which he may be entitled.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Timothy L. Barton*
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(b), Defendant conferred in good faith with counsel for the Receiver and counsel for the Securities and Exchange Commission regarding the relief requested in this Motion. The Receiver and the SEC are opposed to the requested relief.

***/s/ Timothy L. Barton***
**Timothy L. Barton,**
**Defendant, Pro Se**

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed through the Court's electronic-filing system, which will serve all counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton,**
**Defendant, Pro Se**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § | |
| **v.** | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants.* | § | |

**[PROPOSED] ORDER GRANTING**
**DEFENDANT TIMOTHY L. BARTON'S MOTION**
**TO ENFORCE THE RECEIVERSHIP ORDER, COMPEL**
**A COMPLETE ENTITY-BY-ENTITY ACCOUNTING, AND**
**REQUIRE SUPPLEMENTAL FINANCIAL AND TAX REPORTING**

Before the Court is Defendant Timothy L. Barton's Motion to Enforce the Receivership Order, Compel a Complete Entity-by-Entity Accounting, and Require Supplemental Financial and Tax Reporting (the "Motion"). Having considered the Motion, any response and reply, the record, and applicable law, the Court finds that the Motion should be GRANTED as set forth below.

It is therefore ORDERED that the Receiver shall file, within thirty (30) days of this Order, a verified supplemental accounting current through the most recently completed quarter and shall produce the supporting records described below, subject to appropriate confidentiality protections and redaction of full account numbers, taxpayer-identification numbers, tenant information, and other sensitive information from any public filing.

1. An entity matrix identifying every Receivership Estate; its jurisdiction of formation; current operating status; property and material assets; liabilities and creditors; pending

claims; every bank, custodial, operating, escrow, reserve, security-deposit, or investment account used for that estate; and every known creditor, investor, lender, or other claimant, including the amount and stated legal basis of each claim, the specific estate against which it is asserted, and whether the claim is allowed, disputed, contingent, secured, or unsecured.

2. For each Receivership Estate, a balance sheet, income statement, cash-flow statement, trial balance, general ledger, complete chart of accounts, all adjusting and intercompany journal entries, accounts-receivable and accounts-payable aging, debt schedule, and a native electronic export, backup file, or equivalent transaction-level data from each accounting system used.

3. A complete account register identifying every account used during the receivership, including the account title, financial institution, last four digits, opening and closing dates, taxpayer-identification number used, estates served, present balance, and whether the account holds funds attributable to more than one estate.

4. A reconciliation tying every account and entity ledger to each quarterly report, including monthly bank reconciliations, every transfer between estates or accounts, every intercompany receivable or payable, every correcting or adjusting entry, and the methodology used to allocate shared expenses and professional fees.

5. For each income-producing property, quarterly rent rolls and operating statements showing gross receipts, occupancy, operating expenses, security deposits, reserves, capital expenditures, net operating income, mortgage payments, principal balances, accrued interest, default interest, and other liens.

6. For each sale, settlement, foreclosure, or other disposition, a schedule showing the asset; valuation materials; contract and closing dates; gross proceeds; closing costs; lien or debt payments; net proceeds; the account receiving those proceeds; and every subsequent use or transfer of the proceeds.
7. For each prior or proposed sale presented as expedited, urgent, or necessary to preserve value, the nonprivileged contemporaneous cash-flow forecast, carrying-cost analysis, debt-service and interest calculations, and financial alternatives considered or relied upon.
8. The status and results of the forensic accounting and tracing work by entity and property, including completed source-and-use schedules and final or interim accounting reports, subject to appropriate redaction of privileged legal advice.
9. All federal, state, and local tax returns and extensions filed for each Receivership Entity for tax years 2022 through the present; all K-1s, 1099s, and other information returns prepared or issued; tax-classification elections; depreciation and fixed-asset schedules; capital-account schedules; settlement-fund returns; and related nonprivileged tax workpapers. If no K-1 was issued to Barton, the Receiver shall provide a verified explanation identifying the tax classification used, the persons or entities treated as owners or partners for tax purposes, and the basis for not issuing one.
10. Bank statements, account-opening documents, signature cards, monthly bank reconciliations, and native accounting-software backup files or exports sufficient to verify the schedules above.
11. A declaration signed by the Receiver under penalty of perjury certifying that the supplemental accounting is complete to the best of his knowledge, identifying the

accounting professionals who prepared or verified it, and identifying any requested record that was not maintained or cannot be produced.

12. Preservation of all accounting databases, native files and backup files, charts of accounts, journal entries, bank records, tax records, allocation workpapers, and correspondence concerning estate accounting until further order of the Court.
13. Before any free-and-clear sale under Dkt. 792, a verified estate-specific schedule identifying the selling estate, that estate's ownership of the asset, the liabilities and liens attributable to that estate, the estate's cash position and carrying costs, any inter-estate transfers or subsidies, and the account and proposed methodology for holding and allocating the net sale proceeds.

It is further ORDERED that if the Receiver contends that any requested record was not maintained, cannot be produced, or cannot be produced within the deadline set above, the Receiver shall identify the specific record, state the reason for nonproduction or delay, identify any substitute record used to prepare prior reports, and propose a short phased schedule for completion.

It is further ORDERED that privileged legal advice may be redacted or withheld, provided that the Receiver serves a privilege log identifying any responsive material withheld on that basis.

It is further ORDERED that if the Receiver cannot reconcile the account and entity records, the Court may appoint a neutral forensic accountant to review the receivership books and report directly to the Court on the limited accounting issues identified in this Order. Any neutral accountant appointed by the Court shall have access to the Receiver's native accounting

systems, backup files, bank records, tax records, and other source materials necessary to perform that review.

**SO ORDERED.**

Signed this _____ day of __________________, 2026.

___________________________________

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE