**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § | |
| **v.** | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants.* | § | |

**DEFENDANT TIMOTHY BARTON'S MOTION FOR LEAVE TO FILE OPPOSED MOTION TO ENFORCE OR MODIFY THE LITIGATION STAY TO PERMIT RECIPROCAL MERITS DISCOVERY**

TO THE HONORABLE BRANTLEY STARR,

UNITED STATES DISTRICT JUDGE:

Defendant Timothy Barton ("Barton"), appearing pro se, respectfully moves this Court for an order granting leave to file the attached Opposed Motion to Enforce or Modify the Litigation Stay to Permit Reciprocal Merits Discovery (the "Proposed Motion"), attached as Exhibit A. In support, Barton states:

1. On June 5, 2026, the Court entered an Order permitting Mr. Barton to represent himself pro se but directing that he "must seek leave of the Court before filing any motion." [Dkt. 747]. The Order further provides that the leave requirement does not apply to responses and replies filed under Local Civil Rule 7.1(e) and (f).

2. Pursuant to Dkt. 747, Mr. Barton seeks leave to file the attached Proposed Motion (Exhibit A). The Proposed Motion asks the Court, under Federal Rules of Civil Procedure 26 and 54(b), the Court's inherent authority, and the principles governing litigation stays,

to enforce or modify the stay entered at Dkt. 64 to permit focused reciprocal merits discovery.

3. The Proposed Motion is made in good faith and is not filed for delay, harassment, or frivolous duplication. It addresses a discrete procedural problem: while Mr. Barton's civil merits discovery has remained stayed, Receiver-developed evidence, tracing work, interviews, analyses, and declarations have been used to support substantive receivership relief and continue to affect estate administration.

4. Leave is warranted because the Proposed Motion identifies changed circumstances arising after entry of the stay. The Receiver's Interim Report at Dkt. 308, successor tracing work, and related merits submissions were developed during the stay and were later relied upon in consequential receivership proceedings. The Proposed Motion seeks a fair opportunity to test the sources, methods, assumptions, and conclusions of that material.

5. The requested leave is narrow. The Proposed Motion does not ask the Court to dissolve the stay in full, reopen unrestricted merits discovery, resolve the SEC's claims, or vacate any existing receivership order at the leave stage. It seeks either a focused ninety-day discovery phase concerning Receiver-developed merits material, or evenhanded enforcement of the stay to prevent further reliance on newly developed merits evidence while reciprocal discovery remains unavailable.

6. Granting leave will not itself alter the stay, compel production, authorize depositions, or affect any asset. It will simply allow the Court to receive briefing and decide whether the Dkt. 64 stay should be enforced or modified in light of the present record.

7. Granting leave will not prejudice the SEC, the United States, the Receiver, or any party. Each may respond under Local Civil Rule 7.1(e), and Mr. Barton may reply under Local Civil Rule 7.1(f), unless the Court sets another schedule. The Proposed Motion also contemplates protective relief for any specific criminal-case concern upon a particularized showing by the United States.

8. A proposed order granting this Motion for Leave is submitted herewith.

WHEREFORE, Mr. Barton respectfully requests that the Court GRANT this Motion for Leave, permit the attached Proposed Motion (Exhibit A) to be filed and entered on the docket, and grant such other and further relief as is just and proper.

Dated: July 22, 2026

Respectfully submitted,

/s/ Timothy L. Barton
**Timothy L. Barton**
*Defendant, Pro Se*
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Civil Rule 7.1(b), Defendant conferred by email on the date of filing with counsel for the Securities and Exchange Commission, the United States, and the Receiver regarding the relief requested. The Securities and Exchange Commission and Receiver both are OPPOSED.

***/s/ Timothy L. Barton***
**Defendant, Pro Se**

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed through the Court's electronic-filing system, which will serve all counsel of record.

***/s/ Timothy L. Barton***
**Defendant, Pro Se**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § § § | |
| **v.** | § § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants.* | § § § | |

**[PROPOSED] ORDER GRANTING**
**DEFENDANT TIMOTHY BARTON'S MOTION FOR**
**LEAVE TO FILE OPPOSED MOTION TO ENFORCE OR MODIFY**
**THE LITIGATION STAY TO PERMIT RECIPROCAL MERITS DISCOVERY**

Before the Court is Defendant Timothy Barton's Motion for Leave to File Opposed Motion to Enforce or Modify the Litigation Stay to Permit Reciprocal Merits Discovery (the "Motion for Leave"). Having considered the Motion for Leave, the Court finds that good cause exists and that the Motion for Leave should be GRANTED.

It is therefore ORDERED that Defendant Timothy Barton is GRANTED leave to file his Opposed Motion to Enforce or Modify the Litigation Stay to Permit Reciprocal Merits Discovery, attached to the Motion for Leave as Exhibit A.

It is further ORDERED that the Clerk of Court is directed to file and enter Exhibit A as a separate motion on the docket of this case.

IT IS SO ORDERED this ____ day of ______________, 2026.

_______________________________
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY BARTON, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-cv-02118-X |

**DEFENDANT TIMOTHY BARTON'S OPPOSED**
**MOTION TO ENFORCE OR MODIFY THE LITIGATION**
**STAY TO PERMIT RECIPROCAL MERITS DISCOVERY**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy Barton respectfully moves under Federal Rules of Civil Procedure 26 and 54(b), the Court's inherent authority over its docket, and the equitable principles governing a litigation stay, to enforce or modify the stay entered at Dkt. 64. The issue is narrow: while Barton has remained barred from civil merits discovery, the Receiver has gathered evidence, interviewed witnesses, analyzed financial records, performed tracing, advanced disputed factual and legal conclusions, and supplied a record used by the SEC and the Court to obtain substantive receivership relief.

The United States obtained the stay because the civil and criminal cases involve the same transactions, evidence, and witnesses and because ordinary civil discovery could expose criminal-case evidence prematurely. Dkt. 44 at 1–2, 6–8. It represented that the stay would not unfairly prejudice the civil defendants. Id. at 8. Dkt. 64 excepted the Receiver only to the extent necessary to perform the duties and exercise the powers stated in the original appointment order, Dkt. 29.

That balance materially changed after remand. Dkt. 305 ordered the SEC to seek a renewed receivership and separately directed the Receiver to submit "all information obtained since his appointment" relevant to that relief. The resulting 179-page Declaration and Interim Report, Dkt. 308, stated that the Receiver possessed "far more information," was "best suited" to perform the tracing, and intended to show the asserted "inequity and unfairness" if Barton excluded assets. Dkt. 308 ¶¶ 13–19. The Report went beyond inventory, preservation, or valuation: it relied on interviews and professional analyses; characterized entities, transfers, corporate separateness, misuse, dissipation, and transactions described as resembling money laundering; and recommended which entities should remain within the remedy. Id. ¶¶ 23–39, 53–231. Yet it admitted that exact amounts remained undetermined, definitive tracing was sometimes "nearly impossible," and entity examples were only a "small cross-section." Id. ¶¶ 19 nn.4–5, 23–25, 54.

The Court expressly relied on Dkt. 308 for findings concerning tracing, dissipation, use of funds, and the renewed receivership's scope. Dkt. 416 at 6–24; Dkt. 417 at 2–3. Barton disputes those conclusions. Before they were used, however, he could not depose the Receiver or retained accountants; obtain complete tracing schedules, workpapers, software exports, interview materials, or source data; test selected examples against full account histories; retain a rebuttal expert with equivalent access; or present a developed competing tracing analysis. The requested relief is therefore prospective and practical: permit focused reciprocal discovery into the merits material already developed and still being developed, or prevent further reliance on it until Barton has a fair opportunity to examine it. Barton does not ask the Court in this motion to decide every preserved challenge to the receivership or any prior order, and he concedes or waives none.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. The stay preserved a limited Receiver carve-out; it did not transfer the SEC's litigation function.

The United States moved to intervene and stay this action on November 2, 2022, warning that civil depositions and discovery could reveal witness statements and evidence not yet available in the criminal case and thereby "effectively circumvent[] the limitations on criminal discovery." Dkt. 44 at 1–2, 6–8. Its requested carve-out allowed the Receiver only to perform the duties and exercise the powers stated in Dkt. 29. Id. at 2, 8. The Court adopted that limitation in Dkt. 64.

Dkt. 29 appointed the Receiver to marshal and preserve Receivership Entity assets. Dkt. 29 at 2. Paragraph 45 authorized a reasonable, cost-effective investigation of entity affairs so the Receiver could pursue claims for the estate's benefit. Id. ¶ 45. That authority was broad but functional: identify, preserve, recover, and administer estate property and claims. The SEC nevertheless remained the plaintiff and movant responsible for supporting the equitable remedy. The Fifth Circuit vacated the first appointment because the required *Netsphere*, 703 F.3d 296 (5th Cir. 2012) framework had not been applied and remanded after delaying vacatur for ninety days. SEC v. Barton, 79 F.4th 573, 575–81 (5th Cir. 2023). The mandate did not prohibit all supplemental evidence, but neither did it transfer the SEC's litigation function to the Receiver or eliminate adversarial testing of new evidence used to obtain renewed relief.

## B. Dkt. 305 converted the Receiver's post-appointment investigation into a merits submission supporting his renewed appointment.

On August 31, 2023, Dkt. 305 directed the SEC to seek a new receivership and the Receiver to file all information obtained since appointment that he believed relevant or useful. By then, the DOJ stay had operated for more than nine months. Barton could not depose SEC witnesses, obtain SEC investigative files, test Receiver interviews, inspect accounting workpapers, or develop contrary tracing evidence. The Receiver, by contrast, controlled records and entities, retained

lawyers and accountants at estate expense, obtained third-party materials, and continued investigating. The stay therefore froze only one side of evidentiary development.

Dkt. 308 candidly tied its work to the renewed remedy. The Receiver said the issue was whether entities "received or benefitted from assets traceable to Barton's alleged fraudulent activities," that his team had "far more information" after ten months of investigation, and that the Report would demonstrate the asserted "inequity and unfairness" if Barton excluded assets. Dkt. 308 ¶¶ 15, 18–19. It evaluated thousands of transactions; relied on professionals and interviews; interpreted governance and corporate separateness; characterized entities as shells or shams; characterized certain intercompany transactions as resembling money laundering; accused Barton of using entity funds personally; and made entity-by-entity recommendations. Id. ¶¶ 23–39, 53–231. Those propositions concern disputed control, tracing, misuse, intent, and the connection between assets and the SEC's allegations.

At the same time, the Report disclosed substantial limits: the accounting team was still determining Wall Lender Funds and other creditor receipts; commingling made definitive start-to-finish tracing "nearly impossible" for many accounts; and the single example generally offered for each entity was not a complete picture but only a "small cross-section." Id. ¶¶ 19 nn.4–5, 23–25, 54. Barton also lacked practical access to the source materials. The Receiver controlled the paper and electronic records, including Mr. Walji's legal working files, and Barton stated that supporting materials were not made available until approximately one week before the renewed-receivership hearing. See Dkts. 339–40. Thus, the Receiver and SEC could search and analyze the records while Barton could not independently review the same files or construct a contrary tracing analysis.

**C. The Court relied on Dkt. 308, and the same tracing work remains consequential.**

The November 29, 2023 memorandum stated that it relied on the Receiver's declaration and cited Dkt. 308 throughout its analysis of alleged post-complaint expenditures, personal

expenses, a plane purchase, litigation and foreclosure risk, and entity-specific tracing. Dkt. 416 at 6 n.21, 7 nn.25–28, 12–24. Dkt. 417 then found misuse and mismanagement, likely future dissipation or concealment, and receipt or benefit by every included entity. Dkt. 417 at 2–3. Before those propositions were used, they had not been tested through completed merits discovery, examination of the underlying witnesses and workpapers, or trial.

The civil merits remain stayed and the action was administratively closed on August 7, 2025. Dkt. 671. Yet the Receiver continues to identify forensic accounting, tracing, and investor identification as active or unfinished workstreams. See Dkt. 728 at 68–69, 98. The underlying records, methods, assumptions, and successor analyses therefore remain a present issue, not merely a historical dispute over a superseded report.

## II. LEGAL STANDARD

A civil stay in deference to a criminal case is discretionary. A court must maintain an even balance, the proponent bears a heavy burden to establish the stay's wisdom and justice, and changed conditions may require reconsideration. Landis v. North American Co., 299 U.S. 248, 254–58 (1936). Parallel proceedings ordinarily may continue, although a stay may issue when the interests of justice require it. SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1375–77 (D.C. Cir. 1980) (en banc). Due process concerns may arise when civil process is used unfairly to obtain evidence for a criminal case, United States v. Kordel, 397 U.S. 1, 11–12 (1970), and the Fifth Circuit requires accommodation of competing interests rather than a procedure that unfairly destroys one side's ability to litigate. Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1088–89 (5th Cir. 1979).

Dkt. 64 is interlocutory and may be revised under Rule 54(b). See Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990), abrogated on other grounds by

Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994) (en banc). Rule 26(b)(1) authorizes proportional discovery relevant to claims and defenses, considering the issues' importance, the parties' access to information and resources, and whether burden outweighs likely benefit.

## III. ARGUMENT

### A. The Dkt. 64 carve-out cannot operate as an indefinite one-way merits pipeline.

Barton does not contend that Dkt. 64 categorically barred the Receiver from investigating estate affairs. The different question is whether an estate-administration investigation may be converted into affirmative evidence supporting contested findings and future substantive relief while Barton remains unable to test it. A limited operational carve-out cannot fairly become an indefinite evidentiary pipeline through which one side develops the merits record at estate expense while the opposing party receives no reciprocal discovery.

No finding of contempt or intentional misconduct is necessary. Even if each investigative step was reasonably viewed as authorized by Dkt. 29, the stay's practical operation changed once the resulting witness information, tracing, and conclusions were presented and relied upon. The United States sought the stay to prevent premature exposure of criminal evidence, not to permit only the adverse side to continue creating new merits evidence. Because the same overlap of evidence and witnesses makes the Receiver's work relevant to the merits, the original assurance of no unfair prejudice cannot still hold without reciprocal access.

### B. Dkt. 308 performed an evidentiary and advocacy function, and its acknowledged limitations make testing essential.

Dkt. 308 was prepared to influence whether a new receivership would be entered and which entities it would cover; expressly advocated against Barton's position; used legal and quasi-legal characterizations such as "sham," disregard of corporate formalities, misuse, dissipation, and transactions resembling money laundering; relied on interviews and analyses unavailable through

reciprocal discovery; and recommended the entities and assets to include. Dkt. 308 ¶¶ 13–19, 23–39, 40–54, 55–231. These features do not establish that every statement is wrong. They establish that the Report functioned as evidence and advocacy and cannot fairly remain insulated from adversarial testing.

The need is heightened because the Report relied on incomplete and representative tracing. A single "small cross-section" may identify questions, but it cannot by itself determine the full extent of alleged taint, all funding sources within an entity, whether a transfer was a loan, reimbursement, capital contribution, management payment, or ordinary intercompany transaction, or whether all value in separately owned property is traceable. Those issues require complete account histories, formation and governance records, source-and-use analyses, workpapers, witness examination, legitimate business explanations, and alternative tracing.

**C. The one-sided post-remand record caused concrete prejudice and cannot substitute for the ordinary adversarial process.**

The renewed evidentiary record was created after the remedy had placed records and entities under the Receiver's control, after months of estate-funded investigation, and while Barton's discovery was frozen. The Receiver therefore became the principal factual investigator whose work materially replaced ordinary adversarial discovery. Barton could not determine whether omitted transactions contradicted selected examples; whether transfers were misclassified; whether interview summaries were complete; whether accounting assumptions were consistently applied; whether witnesses possessed contrary information; or whether an independent expert with complete data would reach different conclusions.

A response brief without discovery was not an equivalent substitute. Barton does not argue that a court can never consider supplemental evidence on remand, that the SEC may never cite Receiver work, or that the Receiver may not report estate facts. The narrower rule is that when

such material is used to prove disputed propositions, the opposing party must receive a meaningful opportunity to inspect its sources and methods, examine witnesses, obtain contrary evidence, and present expert analysis.

**D. Nearly four years of one-sided development, administrative closure, and continuing forensic work are changed circumstances warranting relief now.**

The stay began in November 2022. Nearly four years later, Barton still has had no civil merits discovery; the case is administratively closed; Receiver investigations, forensic work, reports, litigation, and professional expenditures continue; and the criminal trial is presently set for November 2026. Dkts. 64, 671, 728 at 68–69, 98. A stay reasonable at inception must be reassessed as its duration and practical effects expand. Landis, 299 U.S. at 257–58.

The renewed receivership's affirmance in SEC v. Barton, 135 F.4th 206 (5th Cir. 2025), does not eliminate this Court's continuing authority over Dkt. 64 or decide whether Barton must remain barred from discovery into evidence still being developed and used. This motion does not require vacatur of Dkts. 416 or 417. It seeks prospective access and a fair procedure before future reliance. Barton preserves and does not concede or waive any available objection concerning prior or future receivership orders, the appellate mandate, tracing, ownership, liquidation, or constitutional and statutory limits on the remedy. The requested relief is independent of any particular sale or disposition.

**E. A focused ninety-day first phase is proportional and protects the criminal case.**

The Court can correct the imbalance without opening unrestricted civil discovery. Barton proposes a ninety-day first phase limited to material generated, relied upon, or currently being developed concerning Dkt. 308, successor tracing work, and related merits conclusions:

1. Production of source documents, bank records, complete transaction data, tracing schedules, analyses, software exports, and workpapers relied upon for Dkt. 308 or any later report carrying forward its conclusions;
2. Production of nonprivileged interview notes, memoranda, recordings, declarations, and identification of each relied-upon witness or source, with a privilege log for withheld material;
3. Production of nonprivileged communications among the Receiver, retained professionals, and the SEC concerning the preparation, review, use, or incorporation of Dkt. 308 and later tracing or merits reports;
4. One deposition of the Receiver, not exceeding seven hours, limited to the sources, methodology, assumptions, qualifications, and conclusions of Dkt. 308 and successor tracing work;
5. One Rule 30(b)(6) deposition of the SEC, not exceeding seven hours, limited to the evidence supporting the renewed receivership, the SEC's use of Dkt. 308, and the current status of its civil evidentiary record; and
6. Leave for either side to seek additional narrowly tailored discovery upon a specific showing after the first phase.

The Court may sequence production before depositions, enter or modify a protective order, and exclude questions shown to genuinely compromise the criminal prosecution. Those safeguards directly address DOJ's stated concern. If the Court declines reciprocal discovery, it should instead enforce the stay evenhandedly by barring new merits submissions or reliance on untested Receiver-developed evidence during the stay.

## IV. RELIEF REQUESTED

Barton respectfully requests an order:

1. Clarifying that Dkt. 64 does not authorize indefinite use of newly developed merits evidence against Barton without reciprocal discovery;
2. Modifying Dkt. 64 to permit the focused ninety-day discovery phase described above;
3. Directing the Receiver and the SEC to preserve all source data, native files, metadata, workpapers, interview materials, communications, and other materials underlying Dkt. 308 and successor tracing or merits work;
4. Providing that no future Receiver declaration, tracing report, forensic or accounting analysis, investor analysis, or similar merits submission may support substantive relief against Barton unless he first receives the relevant nonprivileged source materials and a reasonable opportunity for focused discovery and response;
5. Alternatively, if reciprocal discovery is denied, enforcing the stay evenhandedly by precluding new merits submissions or reliance on untested Receiver-developed evidence during the stay;
6. Setting a prompt status conference to establish production dates, deposition dates, privilege-log requirements, and criminal-case safeguards; and
7. Granting such other and further relief as is just and proper.

Dated: July 22, 2026

Respectfully submitted,
***/s/ Timothy L. Barton***

**Defendant, Pro Se**
1846 East Rosemeade
Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Civil Rule 7.1(b), Defendant conferred by email on the date of filing with counsel for the Securities and Exchange Commission, and the Receiver regarding the relief requested. The Securities and Exchange Commission and Receiver both are OPPOSED.

***/s/ Timothy L. Barton***
**Defendant, Pro Se**

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed through the Court's electronic-filing system, which will serve all counsel of record.

***/s/ Timothy L. Barton***
**Defendant, Pro Se**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY BARTON, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-cv-02118-X |

**[PROPOSED] ORDER GRANTING DEFENDANT TIMOTHY**
**<u>BARTON'S MOTION TO ENFORCE OR MODIFY THE LITIGATION STAY</u>**

Before the Court is Defendant Timothy Barton's Motion to Enforce or Modify the Litigation Stay to Permit Reciprocal Merits Discovery. Having considered the motion, any response, the record, and applicable law, the Court GRANTS the motion as follows:

1. The litigation stay entered at Dkt. 64 is MODIFIED to permit a focused ninety-day phase of reciprocal merits discovery concerning Dkt. 308, successor tracing work, and related Receiver-developed merits conclusions.

2. The Receiver and the SEC shall preserve all source data, native files, metadata, bank records, complete transaction data, tracing schedules, analyses, software exports, workpapers, interview materials, communications, and other nonprivileged materials underlying Dkt. 308 and successor tracing or merits-related work.

3. Within twenty-one days after entry of this Order, the Receiver and the SEC shall substantially complete production of the nonprivileged materials described in the motion's proposed discovery protocol and serve a privilege log for responsive material withheld.

4. After substantial completion of production, Barton may take one deposition of the Receiver and one Rule 30(b)(6) deposition of the SEC, each not exceeding seven hours and limited

to the subjects stated in the motion. The depositions shall be completed within the ninety-day period unless otherwise ordered.

5. No future Receiver declaration, tracing report, forensic or accounting analysis, investor analysis, or similar merits submission may support substantive relief against Barton unless he first receives the relevant nonprivileged source materials and a reasonable opportunity for focused discovery and response.

6. If the United States contends that a specific request or question would genuinely compromise the parallel criminal proceeding, it may seek targeted protective relief upon a particularized showing after the parties confer in good faith.

7. All other provisions of Dkt. 64 remain in effect. Nothing in this Order adjudicates or waives any preserved challenge to a prior or future receivership order, tracing determination, ownership issue, liquidation decision, appellate mandate, or constitutional or statutory limit on the receivership remedy.

SO ORDERED.

Signed this _____ day of __________________, 2026.

___________________________________

**BRANTLEY STARR**
**UNITED STATES DISTRICT JUDGE**