UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY BARTON,<br>CARNEGIE DEVELOPMENT, LLC,<br>WALL007, LLC,<br>WALL009, LLC,<br>WALL010, LLC,<br>WALL011, LLC,<br>WALL012, LLC,<br>WALL016, LLC,<br>WALL017, LLC,<br>WALL018, LLC,<br>WALL019, LLC,<br>HAOQIANG FU (A/K/A MICHAEL FU),<br>STEPHEN T. WALL,<br><br>Defendants,<br><br>DJD LAND PARTNERS, LLC, and<br>LDG001, LLC,<br><br>Relief Defendants. | C.A. No.: 3:22-cv-2118-X<br><br>Jury Trial Demanded |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO TIMOTHY BARTON'S MOTION TO RELEASE FUNDS FROM THE RECEIVERSHIP ESTATE FOR HIS CRIMINAL DEFENSE AND TO RETAIN COUNSEL OF HIS CHOICE**

Plaintiff Securities and Exchange Commission ("SEC") submits this Response to Defendant Timothy Barton's ("Barton") Motion to Release Funds from the Receivership Estate for His Criminal Defense and to Retain Counsel of His Choice (Dkts. 809), and respectfully shows the Court as follows:

## I. INTRODUCTION

The Court should reject Barton's request to use the receivership entities' limited funds to pay his criminal defense counsel. The receivership only includes assets of business entities that received or benefitted from assets traceable to Barton's alleged securities fraud. Barton's personal assets are not frozen or in receivership, and he remains free to use his personal assets to fund his criminal defense. Barton cannot show that the receivership entities' assets are his to use. Even if he could, it would be inequitable to release them to Barton because the receivership's commingled funds are tainted by his alleged fraud, and using receivership assets to pay Barton's attorneys' fees would reward his wrongful interference with the receivership at the expense of investors. In addition, Barton has not demonstrated that his request for attorneys' fees is either necessary or reasonable.

## II. BACKGROUND

1. This Court has appointed a Receiver over certain Barton-controlled *entities* that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation and entered a preliminary injunction freezing the assets of other Barton-controlled entities that were not placed in receivership. (Dkts. 417, 418, 650). The Fifth Circuit affirmed the scope of the receivership and the preliminary injunction. *SEC v. Barton*, 135 F.4th 206 (5th Cir. 2025), *cert. denied sub nom. Barton v. SEC*, 146 S. Ct. 1851 (2026).

2. Barton's personal assets are *not* frozen or included in the receivership.

3. As the Receiver has consistently reported, the receivership estate is cash starved and holds primarily highly-leveraged and challenged real estate. *See, e.g.,* Receiver's 15th Quarterly Report at pp. 23-25 (Dkt. 728), Receiver's Declaration at ¶¶ 18, 20, 104-105, 191, 201, 207-216, 228, 236 (Dkt. 308). As of the end of the First Quarter of 2026, the receivership held only $1,245,547.36 in bank accounts and had substantial accrued but unpaid property taxes and other administrative expenses. Dkt. 728 at p. 74.

4. It is also uncertain, and in fact unlikely, that receivership assets will be sufficient to satisfy a disgorgement award for the benefit of investors, much less pay all creditors what they are owed. *See, e.g.,* Dkts. 650 at p. 2 and 308 at ¶¶ 191-196.

5. Further, Barton's repeated interference with the Receiver's attempts to sell receivership property and other wrongful conduct has caused the receivership estate to lose millions of dollars that might have otherwise been returned to investors. *See, e.g.,* Dkt. 728 at pp. 4, 16-19, 24-36, 69-72.

6. Against this backdrop, Barton requests that the Court direct the Receiver to release more than half the funds from the receivership estate, in an amount of not less than $700,000, so that he may retain criminal defense counsel of his choice.

## III. ARGUMENT

Barton provides no authority for the proposition that he is entitled to divert the assets of business *entities* in a receivership to pay his *personal* legal fees. Simply put, the Sixth Amendment does not guarantee an individual defendant access to the assets of separate corporate entities to pay for legal counsel, and the Court should deny Barton's motion at the outset because he has not demonstrated a right to use the receivership entities' assets for his personal use. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989) ("A defendant has no

Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice.").[1] The assets Baron wants to use here are not his own; they belong to entities with separate identities.

Even if he could show that certain receivership assets should be treated as his personal assets, Barton has not established that it would be equitable to release those assets to pay his attorneys' fees. Courts appoint receivers and freeze assets in SEC enforcement actions to preserve the status quo and prevent dissipation. *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2017 WL 4238705, at *3 (N.D. Tex. Sept. 25, 2017). "When reviewing a request to modify or terminate such orders, the Court must consider whether doing so 'is in the best interests of the defrauded investors[.]'" *SEC v. Heartland Grp. Ventures, LLC*, No. 4:21-CV-01310-O, 2022 WL 1527542, at *2 (N.D. Tex. Mar. 18, 2022), *report and recommendation adopted*, 2022 WL 1523471 (N.D. Tex. May 13, 2022) (citing *SEC v. Dobbins*, No. 3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004)).

Further, the use of frozen assets to pay attorneys' fees for a criminal defense can be disallowed. *Dobbins*, 2004 WL 957715, at *2; *see also Barton*, 135 F.4th at 227 n.71 ("'Just as a bank robber cannot use the loot to wage the best defense money can buy, ... a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.'") (quoting *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993)). Thus, even if

[1] In a companion case decided the same day, the Supreme Court reiterated that the Sixth Amendment does not require "Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees." *United States* v. *Monsanto*, 491 U.S. 600, 614-615 (1989). Moreover, the Supreme Court ruled, it did not violate the Sixth Amendment for the government to restrain the use of property for hiring an attorney based on a prejudgment showing of probable cause. *Id.* at 615–16.

the receivership's assets are treated as Barton's own (they should not be), Barton's request fails for several reasons.

*First,* Barton has not identified the specific funds he seeks to release or established that those funds are untainted by the alleged fraud. *See SEC v. Stanford Int'l Bank, Ltd.*, No. 309-CV-298-N, 2009 WL 8707814, at *3 (N.D. Tex. Oct. 9, 2009) ("[T]his Court denied Stanford's earlier motion to unfreeze $10 million in assets to pay attorneys fees…[because] Stanford had not made an accounting showing that the requested amount was 'untainted by potential fraud.'"); *Heartland Grp. Ventures, LLC*, 2022 WL 1527542, at *2 ("The touchstone of the Court's inquiry is 'equity' and a party seeking to unfreeze assets must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial.") (internal citations omitted). Indeed, the receivership only extends to entities that received or benefited from assets traceable to Barton's alleged fraudulent activities. Dkt. 650 at pp. 2-3; *Barton*, 135 F.4th at 220-221.[2]

*Second,* Barton has not established that he must use receivership funds. Specifically, Barton has not shown that he has no other assets or source of income to cover or mitigate the requested expenses, such as obtaining gainful employment or obtaining funds from family members or elsewhere. *See Heartland Grp. Ventures, LLC*, 2022 WL 1527542, at *5 ("[U]nfreezing assets for their monthly living expenses does not seem equitable without [defendants] having made reasonable efforts to obtain gainful employment that would mitigate the amount needed for their expenses."). Moreover, for several years Barton has been – and

[2] Barton has also not demonstrated, nor can he demonstrate, that there would be sufficient funds remaining to satisfy a disgorgement remedy. To the extent the Court reaches and applies such a requirement here, Barton has not satisfied it. *But cf. SEC v. FTC Cap. Mkts., Inc.* No. 09 CVI. 4755, 2010 WL 2652405, at *7 (S.D.N.Y. June 30, 2010) (rejecting, in the context of *criminal* defense fees, the SEC's argument that frozen funds should not be released because they were insufficient to secure disgorgement and concluding that the SEC was required to demonstrate the frozen funds were traceable to the fraud).

currently is – represented by highly competent counsel of his choosing in the criminal case. He has not established why that representation cannot continue without resorting to the use of limited receivership funds.

*Third,* Barton has not established that his request for attorneys' fees is reasonable. He provides no justification, itemization, or support for his "not less than $700,000 figure." This also warrants denying his request. *See, e.g., Dobbins*, 2004 WL 957715, at *2 (refusing request to release frozen assets for attorneys' fees where defendants failed to demonstrate the reasonableness of the request); *Heartland Grp. Ventures, LLC*, 2022 WL 1527542, at *5 (same).

*Fourth,* Barton's request is not in the best interests of the allegedly defrauded investors. To the contrary, his request, if granted, could have a devasting impact on the cash-strapped receivership. Barton is requesting "not less than $700,000," which is more than half of the receivership's cash on hand (before accrued expenses), and he noticeably fails to explain how the Receiver will successfully manage, value, market, and sell the receivership properties with little or no money.

*Fifth*, Barton makes his request with unclean hands. His repeated interference with the Receiver's property sales and his other wrongful conduct has meaningfully reduced the value of the receivership estate. Equity should not reward this conduct by deploying limited receivership assets for Barton's personal benefit to the detriment of investors.

In sum, Barton has not shown that the receivership entities' assets are his to use. Even if he could, those assets are tainted by his fraud and it would be inequitable to release them.

## IV. CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court deny Barton's Motion and grant the SEC such other or further relief as this Court may deem just, proper, and equitable.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Keefe M. Bernstein*
Keefe M. Bernstein
Texas Bar No. 24006839
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 900-2607 (phone)
(817) 978-4927 (facsimile)
bernsteink@sec.gov

Counsel for Plaintiff
Securities and Exchange Commission

**CERTIFICATE OF SERVICE**

I affirm that on July 22, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I also emailed a copy to the email address from which *pro se* Defendant Barton has been sending counsel for the SEC communications related to this case.

*/s/ Keefe M. Bernstein*
Keefe M. Bernstein