**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § | |
| **v.** | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants,* | § | |
| **DJD LAND PARTNERS LLC, and LDG001 LLC,** *Relief Defendants.* | § | |

**DEFENDANT TIMOTHY L. BARTON'S REPLY IN SUPPORT OF HIS OPPOSED MOTION TO RELEASE FUNDS FROM THE RECEIVERSHIP ESTATE FOR HIS CRIMINAL DEFENSE AND TO RETAIN COUNSEL OF HIS CHOICE (DKT. 809)**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton files this Reply in support of his Motion to Release Funds (Dkt. 809) and in response to the Commission's opposition (Dkt. 820).[1]

## I. INTRODUCTION

The Response rests on one move. The Commission assigns to Mr. Barton a tracing burden that the receivership orders, both Fifth Circuit decisions in this case, and the Receiver's own quarterly reports place on the Commission and the Receiver, and it then faults Mr. Barton for not carrying that burden. The Response tells the Court that the estate's funds are "tainted," yet the

[1]This reply is timely filed within 14 days of the Commission's July 22, 2026 response (Dkt. 820) under Local Rule 7.1(f), and no leave of Court is required: the June 5, 2026 Order provides that its leave requirement "shall not apply to responses and replies filed pursuant to L.R. 7.1(e),(f)." Dkt. 747 (PageID 22232). The Commission reads the Order the same way. Dkt. 821 at 1.

Receiver has reported for fifteen consecutive quarters that the forensic accounting that would separate tainted from untainted funds remains unfinished. The Commission cannot rely on the incompleteness of its own tracing as proof of taint, and it cannot use that incompleteness to defeat a Sixth Amendment right that attaches now, before the criminal trial set for November 2, 2026.

The Response's remaining points fare no better. Its assertion that Mr. Barton's "personal assets are not frozen" describes an empty set: the receivership and companion freeze swept in the entities through which Mr. Barton held essentially everything, down to the contents of his office building and his household items. Its authorities involve assets already adjudicated or judicially found probably forfeitable, which is not this record. And its equity arguments ask the Court to prefer administrative spending, which has consumed $3.7 million with no distribution to any investor, over a criminal defendant's constitutional right to counsel of his choice.

## II. THE TRACING BURDEN BELONGS TO THE COMMISSION AND THE RECEIVER, AND BY THEIR OWN ACCOUNT IT HAS NEVER BEEN CARRIED

### A. Traceability is the predicate the Commission must establish, not a defense Mr. Barton must disprove.

The first receivership in this case was vacated because it swept in entities without entity-specific findings that they "received or benefited from" Wall proceeds. SEC v. Barton, 79 F.4th 573, 575, 580–81 (5th Cir. 2023) (a new receivership "can only extend over entities that received or [benefited] from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation"). On remand, the Commission asked for 82 entities and obtained 54, precisely because traceability was its burden and it could not carry that burden as to the rest. SEC v. Barton, 135 F.4th 206 (5th Cir. 2025) (recounting that the SEC requested 82 entities and the district court included only 54); see Dkt. 650 ¶ 1 (listing the 54 Receivership Entities). The operative order embodies the same predicate: the Court took possession of entities "that each received or benefited

from assets traceable to Barton's alleged fraudulent activities." Dkt. 650 at 2–3. Traceability has been the Commission's burden and not the receivership's burden at every step of this case. Nothing in the Response explains why that allocation reverses at the moment the tracing question begins to matter to Mr. Barton's defense.

**B. The Fifth Circuit sustained the freeze as a tool for completing the tracing, not as an adjudication of taint.**

The Barton II panel affirmed the companion asset freeze on the express understanding that tracing remained unfinished and that the freeze would buy time to finish it: the injunction "provides the SEC and the district court additional time to trace funds and prevent further dissipation," and "[t]he asset freeze is merely to determine which assets are the subject matter of the litigation." 135 F.4th at 226–28. A restraint sustained as a means of determining which assets are connected to the alleged fraud cannot simultaneously serve as a conclusive presumption that every dollar in the estate is fraud proceeds. If the tracing has since been completed, the Commission should say so and file it. If it has not, the Commission has no evidentiary basis for calling the estate's cash "tainted." Indeed, no filing, report, or other record submission in this case evidences that the Commission has ever performed the tracing that *Barton-I* made its mandate and that *Barton II* reaffirmed as the Commission's own role and responsibility. The Commission has come forward with no tracing work product prepared by any qualified expert, or by any employee holding formal accounting training. To the contrary, the SEC's accountant, Carol Han, acknowledged under oath that she has no formal accounting training and that her title of "accountant" is a job title rather than a designation of expertise or experience. Dkt 359.

**C. The Receiver's own reports concede that no completed tracing exists.**

The Receiver's Fifteenth Quarterly Status Report, filed April 30, 2026, states that his accountants "still have not completed their forensic accounting," that the work continued in the First Quarter of 2026 "albeit in a very limited fashion," and that "[a]s of the date of this Report, the forensic accounting is still ongoing." Dkt. 728 at 67–68. The same report explains that after Barton I the accounting temporarily shifted from its primary focus to "finding tracing examples where Wall Investor Funds eventually flowed into the various assets." Id. at 67–68. Tracing examples are illustrations selected to support the receivership's scope; they are not a forensic tracing of the estate's funds, and the Receiver has never represented otherwise. His accountants report "extensive comingling" that complicates the analysis "exponentially," id. at 68, and his forward-looking plan still lists "completing a forensic accounting of the Receivership's bank accounts" to "trace where those monies ultimately flowed" as future work. Id. at 98 (PageID 21954). The Receiver has even represented that tracing is "cost-prohibitive" for items as small as a washer and dryer. Id. at 64 n.24 (PageID 21920). Fifteen reports over three and a half years say the same thing: the tracing that would separate tainted from untainted funds does not exist.

**D. The Commission's own authority places the burden on the Commission in exactly this context.**

The Response's footnote 2 cites SEC v. FTC Capital Markets, Inc., No. 09 Civ. 4755, 2010 WL 2652405, at *7 (S.D.N.Y. June 30, 2010), which rejected the Commission's position "in the context of criminal defense fees" and held that "the SEC was required to demonstrate the frozen funds were traceable to the fraud." Dkt. 820 at 4 n.2. That is this case. Stanford and Heartland, on which the Response leans, are not: neither involved release of funds for a criminal defense after Luis; Heartland concerned monthly living expenses; and in both the movants retained access to their own books. Here the Receiver "assumed possession of all documents and computers belonging to the Receivership Entities . . . on the first day of the Receivership," Dkt. 728 at 67

(PageID 21923), the receivership order enjoins Mr. Barton from touching estate records, Dkt. 650 ¶ 85 (PageID 20813–14), and his motion to compel production of records remains pending. Dkt. 810; see Dkt. 800 (granting leave). A litigant cannot be defaulted for failing to produce an accounting his adversary holds under lock and key.

## III. LUIS, NOT CAPLIN & DRYSDALE, SUPPLIES THE RULE OF DECISION

Luis v. United States, 578 U.S. 5 (2016), holds that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment. The Response's authorities address a different problem. Caplin & Drysdale, 491 U.S. 617 (1989), concerned assets already adjudged forfeitable after conviction; Monsanto, 491 U.S. 600 (1989), and Kaley v. United States, 571 U.S. 320 (2014), concerned restraints resting on a judicial finding of probable cause that the specific assets were tainted. No tribunal has made any such finding as to the receivership's cash, and the Receiver's accountants have not completed the analysis that could support one. On this record the taint theory is an allegation, and under Luis an allegation does not defeat the right to counsel of choice. The stakes of error are structural: a wrongful deprivation of chosen counsel requires reversal of any resulting conviction without harmless-error review. United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006). Granting the Motion protects both Mr. Barton's rights and the eventual criminal judgment; denying it builds a structural defect into the coming trial.

The Response's quotation of the "bank robber" aphorism, Dkt. 820 at 3 (quoting SEC v. Quinn, 997 F.2d 287, 289 (7th Cir. 1993)), assumes the very fact in dispute. A bank robber's loot is traced. The Commission's theory here is that commingled funds no one has finished tracing must be treated as loot because tracing them would be difficult. Luis rejected precisely that shortcut for untainted property, and the Commission's own cited authority, FTC Capital Markets, refused to let the SEC take it in the criminal-fee context.

## IV. THE "SEPARATE ENTITIES" ARGUMENT INVERTS THE RECEIVERSHIP'S OWN PREMISE

The Commission obtained this receivership on the theory that the entities were instruments through which Mr. Barton moved and held the proceeds of his alleged fraud, and it administers their assets as a single estate from which it proposes to satisfy any disgorgement award against him. Dkt. 650 at 2–3; Dkt. 820 at 2. Having treated the entities' assets as Mr. Barton's ill-gotten gains for purposes of seizure, administration, and remedy, the Commission cannot recharacterize the same assets as strangers' money for the sole purpose of defeating his Sixth Amendment claim. If the estate's assets are truly not Mr. Barton's, they cannot fund a disgorgement judgment against him; if they are his in substance, Luis governs their pretrial restraint. The Commission does not get both characterizations.

The companion assertion that "Barton's personal assets are not frozen or included in the receivership," Dkt. 820 at 2, describes a null set. The receivership swept in the 54 entities through which Mr. Barton held his real and personal property; the receiver took Mr. Barton and his son's Trusts; the Receiver sold the contents of the Turtle Creek building, see Dkt. 625, Ex. 1 (Morelli Decl.) (PageID 20273); and the Receiver treats even household appliances as presumptively estate property, on the stated theory that Mr. Barton's "general practice" was to pay personal expenses with entity funds. Dkt. 728 at 64 n.24 (PageID 21920). The Commission cannot maintain in one filing that everything Mr. Barton touched was entity property, and in the next that he retains a reservoir of personal assets with which to fund a federal criminal defense. His accompanying declaration confirms there is none.

## V. NECESSITY AND REASONABLENESS ARE ESTABLISHED, AND ANY RESIDUAL DOUBT HAS A REMEDY SHORT OF DENIAL

The criminal case is set for trial on November 2, 2026, with pretrial motions due August 24, 2026, and it has been designated complex under 18 U.S.C. § 3161(h)(7)(B)(ii) in light

of a discovery record measured in terabytes. See United States v. Barton, No. 3:22-cr-00352-K (N.D. Tex.), Dkt. 108 (Feb. 4, 2026); Dkt. 809 at 2–3. The Response observes that Mr. Barton is "represented by highly competent counsel," Dkt. 820 at 5, but representation on paper is not preparation in fact: as Mr. Barton's declaration sets out, counsel has received no payment, no experts or document-review resources have been engaged, and no funded trial preparation has occurred. The Sixth Amendment protects the choice and the effective deployment of retained counsel with the defendant's own untainted resources; the theoretical availability of appointed counsel does not cure the wrongful restraint of those resources. See Luis, 578 U.S. 5 (plurality opinion).

As to amount, the Motion already proposes the accountability the Response demands: disbursement against documented invoices or into counsel's trust account, quarterly reporting, and any further safeguard the Court deems appropriate. Dkt. 809 at 6, 9–10. Mr. Barton stands ready to submit an itemized defense budget and engagement terms in camera, so that reasonableness can be tested without disclosing defense strategy to the agency whose referral produced the prosecution. A dispute about the right number is a reason to set conditions or a hearing, not to deny counsel altogether.

The posture of counsel across these proceedings confirms both the necessity of the requested release and its cause. Mr. Barton is unrepresented in this civil action and in his related Fifth Circuit appeals, and his representation in the criminal case, while nominally in place, is unfunded and exists in name only: lead counsel Michael Edney is owed millions of dollars in unpaid fees and carried Mr. Barton's Fifth Circuit appellate work without compensation, and co-counsel Richard Roper likewise has never been paid. See Barton Decl. ¶¶ 10–13.

Nor is the absence of funded counsel an accident of circumstance. The Receiver, through counsel Charlene Koonce, pursued contempt proceedings against Mr. Edney and against the general counsel of his former firm, Hunton Andrews Kurth LLP, and, after a third party contributed toward the defense, renewed those proceedings — forcing the firm to expend hundreds of thousands of dollars to protect the contributor's identity — with the result that Mr. Edney ultimately departed the firm and no third party remains willing to contribute to Mr. Barton's defense for fear of the same treatment. The Receiver has separately sued six of Mr. Barton's former lawyers; those actions are stayed, but their pendency freezes those attorneys out of any role in his defense, and other attorneys who attempted to become involved were pressed to disclose whether and how much they had been paid, and withdrew under that pressure. Both Mr. Edney and Mr. Roper are available to be examined by the Court, concerning the amounts owed to them and the fact that, for want of funds, no substantive work has been performed on the criminal trial and none of the government's discovery has been reviewed. And the Commission's vigorous defense of the freeze — pressed through the Fifth Circuit and to the Supreme Court — has been in pursuit of a single object: to foreclose any release of funds for Mr. Barton's defense. See Barton Decl. ¶¶ 11–13.

## VI. EQUITY DOES NOT RUN ONLY IN THE COMMISSION'S DIRECTION

The Standardized Fund Accounting Report attached to the Fifteenth Quarterly Status Report shows total receipts of $4,372,384.20, total disbursements of $3,723,498.65, cash on hand of $1,245,547.36, and no distribution of any amount to any investor in the fifteen quarters this receivership has run. Dkt. 728 at 74 (PageID 21930); Dkt. 728-1 (Ex. A). The estate has funded professionals and administration while the tracing that was the freeze's stated purpose remains unfinished. On that record, the "best interests of the defraued investors" do not justify denying

the accused the means to defend the criminal case; the investors' interests are not served by an unfunded defense and the structural error it would embed. And the Response's "unclean hands" narrative rests on characterizations, not adjudications: the filings the Commission calls interference are motions this Court granted him leave to file. See Dkts. 798–801, 804–805. Unadjudicated accusations do not extinguish constitutional rights.

## VII. THE COMMISSION LACKS STANDING TO OPPOSE RELIEF DIRECTED TO THE RECEIVER'S ADMINISTRATION OF THE ESTATE, AND ITS OPPOSITION IS ENTITLED TO NO WEIGHT

As a threshold matter, the Motion seeks relief directed to the administration of the receivership estate: the release of estate funds held by the Receiver, subject to conditions administered through counsel's trust account. The Commission neither administers the estate nor possesses its records, and its Response offers no firsthand factual basis concerning the estate's finances, the status of the tracing, or the availability of unrestricted funds. Its opposition rests on characterization, not knowledge.

On these matters of estate administration, the Commission lacks standing to oppose the requested relief. The Motion seeks no remedy against the Commission and implicates no enforcement interest committed to its charge; whether estate funds may be released, and on what conditions, is a question between Mr. Barton, the Receiver, and the Court. To the extent the Commission asserts a generalized interest in preserving assets for a potential disgorgement award, that interest is fully protected by the conditions the Motion proposes and by the Court's continuing supervision — and it cannot substitute for the evidentiary showing of taint that, as Section III demonstrates, has never been made. At a minimum, an opposition filed by a party without custody of the funds and without knowledge of the estate's books is entitled to no evidentiary weight.

## VIII. ALTERNATIVE RELIEF

If the Court is not prepared to grant the Motion in full, Mr. Barton respectfully requests, in the alternative: (1) an evidentiary hearing at which the Commission and the Receiver must come forward with their complete forensic tracing as to the estate's liquid funds; (2) a phased release, with an initial retainer disbursement and the balance paid against invoices; (3) in camera review of the proposed defense budget; or (4) an order directing the Receiver to complete and file, by a date certain, the forensic accounting as to the estate's cash, with the Motion carried in the interim. Each alternative preserves every legitimate interest the Response identifies. Only outright denial extinguishes the constitutional one.

## CONCLUSION

For these reasons and those stated in the Motion (Dkt. 809), Mr. Barton respectfully requests that the Court grant the Motion, order the release of not less than $700,000 from unrestricted estate funds under the conditions proposed in the Motion, or grant the alternative relief described above, and grant such other relief to which he may be justly entitled.[2]

Dated: July 27, 2026

Respectfully submitted,

*/s/ Timothy L. Barton*
**Timothy L. Barton**, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me
*Defendant, appearing pro se*

[2] Mr. Barton's supporting declaration is tendered with a contemporaneous motion for leave to file a supplemental appendix, in deference to *Dethrow v. Parkland Health & Hospital System*, 204 F.R.D. 102, 103 (N.D. Tex. 2001). The declaration responds directly to factual assertions made for the first time in the Response.

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

/*s/ Timothy L. Barton*
**Timothy L. Barton**, Pro Se