**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 3:22-CV-2118-X |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY L. BARTON, et al., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § | |
| | § | |
| Relief Defendants. | § | |

**DEFENDANT TIMOTHY L. BARTON'S CONSOLIDATED REPLY IN SUPPORT OF HIS MOTION FOR PRESERVATION OF STATUS QUO (DKT. 786) AND HIS MOTIONS FOR CLARIFICATION AND PRE-CLOSING DISCLOSURE REGARDING THE ROCK CREEK AND FRISCO GATE PROPERTIES (DKTS. 807, 808)**

TO THE HONORABLE BRANTLEY STARR, UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton files this consolidated Reply in support of his motions at Dkts. 786, 807, and 808.[1]

## I. WHAT THESE MOTIONS ASK, AND WHAT THE RESPONSE DOES NOT DISPUTE

The motions do not ask the Court to revisit its sale approvals or to relitigate anything the Fifth Circuit affirmed. They ask for three narrow things before clear title leaves the estate: proof

[1]This consolidated reply responds to the Commission's omnibus response (Dkt. 822) and is timely under Local Rule 7.1(f); no leave is required. Dkt. 747 (PageID 22232) (leave requirement "shall not apply to responses and replies filed pursuant to L.R. 7.1(e),(f)").

that the transaction now closing is the transaction the Court approved; the disclosures that let the Court and the parties verify that; and compliance with the two structural commands of the Receivership Order, which authorizes sales "with due regard to the realization of the true and proper value" of the property, Dkt. 650 ¶ 93 (PageID 20817), and provides that clear title transfers "[u]pon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004." Id. ¶ 94 (PageID 20817). The Response quotes both paragraphs, Dkt. 822 at 2, and disputes neither. Nor does it dispute the record facts on which the motions rest: that the operative approvals date from December 2022 and 2023, Dkts. 104, 437, 438; that the Rock Creek contract by its own terms contemplated closing within days of the 2022 approval, Dkt. 807 at 2–5 (citing Dkt. 77, App. PageID 2382); that the transactions did not close for years while the parties exchanged extensions and the purchaser rented the property, Dkt. 728 at 29–36; and that the Receiver announced in June 2026 that closings were imminent, Dkt. 741 at 5.

## II. ROCK CREEK: AN UNSWORN REPORT OF CLOSING MOOTS NOTHING

The Response's lead argument is a sentence of hearsay: "the Receiver has informed the SEC that the sale of the Rock Creek property has already closed." Dkt. 822 at 2. No closing statement, deed, certification, or declaration accompanies the Response. A representation of counsel about what the Receiver reported is not record evidence, and mootness is not established by assertion. If the sale has closed, the motions' disclosure requests become more urgent, not less: the estate and the Court are entitled to know the final price, the amendments under which the sale closed, the disbursement of proceeds, and whether the closing conformed to the approval on which it rests and to the requirements of 28 U.S.C. § 2001. Post-closing accountability is squarely within the Court's supervisory power over its Receiver. The same disclosure and compliance issues remain live as to Frisco Gate and any remaining sales governed by the pending motions.

Even if Rock Creek has closed, the Court can still grant effectual relief by ordering production of the operative agreement and amendments, a sworn closing certification, an accounting of gross and net proceeds, and preservation of any proceeds still held. A case is not moot so long as the Court can fashion "some form of meaningful relief," even if complete restoration of the status quo is no longer possible. Church of Scientology of California v. United States, 506 U.S. 9, 12–13 (1992). That standard is met here.

There is also a sequencing fact the Court should not lose. Mr. Barton sought this relief beginning June 3, 2026 (Dkt. 745); the motion was struck for representational reasons since cured (Dkt. 746); his re-filing waited on the leave process the Commission defends elsewhere (Dkts. 783, 785, 786; 796, 805, 807); and the Response now argues the delay produced mootness. Dkt. 822 at 2. Equity does not permit an adversary to run out the clock through procedural gatekeeping and then plead the clock.

## III. FRISCO GATE: "CONFIDENCE" IN THE RECEIVER IS NOT A FURTHER ORDER OF THIS COURT

As to Frisco Gate, the Response concedes the sale has not closed and offers, in place of the disclosures sought, its "confidence that the Receiver would come back to the Court in the event material terms have changed." Dkt. 822 at 3. Paragraph 94 does not run on confidence. It conditions the transfer of clear title on a "further Order of this Court," entered "pursuant to such procedures as may be required by this Court" and consistent with § 2001. Dkt. 650 ¶ 94. Section 2001(b), in turn, ties a private sale to appraisal, publication, and price safeguards fixed by statute. The question the motions pose is whether a closing in late 2026, on a contract approved in 2022–2023 and since modified by extensions the Court has never passed on, is the transaction the Court approved. That is a question only disclosure can answer, and the Response never answers it; it argues instead that no "re-approval requirement" exists. Dkt. 822 at 3. Mr. Barton has not asked for automatic re-approval. He has asked the Receiver to show, before closing, that the approval still fits the deal. Compliance with § 2001 is transaction-specific and cannot be presumed where the operative terms, timing, market conditions, and closing economics remain undisclosed after years of extensions.

The Fifth Circuit's reasoning supports that request. The panel affirmed the 2023 sale approvals precisely because the district court had "considered changes in market conditions and all statutory requirements before determining the sales were in the best interest of the receivership estate." Dkt. 822 at 2–3 (quoting SEC v. Barton, 135 F.4th 206, 225–26 (5th Cir. 2025)). Current-conditions scrutiny is the reason those approvals survived appeal. The Response's position, that approvals from 2022–2023 carry forward indefinitely without any showing that conditions still match, inverts the logic of the affirmance it invokes.

## IV. THE PROCEDURAL VEHICLES ARE SOUND

The Response's footnote 1 asserts that Mr. Barton has not explained how Rules 60(b), 62, and 54(b) apply. Dkt. 822 at 2 n.1. The motion identifies the subdivisions and their office: Rule 60(b)(5) reaches orders whose prospective application is no longer equitable, and Rule 60(b)(4) reaches action taken in excess of the authority the Court itself defined, including consummation of materially modified transactions without the further order Paragraph 94 requires. Dkt. 786 at 6–9. Sale-approval orders in an ongoing receivership operate prospectively until closing; asking the Court to confirm, before that prospective operation completes, that its own conditions are satisfied is a conventional use of Rule 60(b) and of the Court's inherent authority over interlocutory orders. Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981). No party's reliance interest is disturbed by requiring the Receiver to demonstrate what the Response insists he can demonstrate.

## V. DISCLOSURE TO THE COURT IS NOT A THREAT TO THE ESTATE

The Response resists the disclosures on the ground that "there is a substantial risk that Barton will use transactional details the Receiver provides to again interfere with and attempt to scuttle a property sale." Dkt. 822 at 3. Two answers. First, the accusation is a characterization, not an adjudication, and it cannot justify withholding from the Court itself the information Paragraph 94 and § 2001 make relevant. Second, the concern has a conventional remedy short of secrecy: the Receiver may submit the closing documentation in camera or under seal, with any commercially sensitive terms redacted from the public docket. Mr. Barton proposed exactly that flexibility in the motions. Dkt. 786 at 21–22. The cost objection fares no better: a Receiver who has disbursed $3,723,498.65 from the estate, Dkt. 728-1 (Ex. A), cannot plausibly contend that certifying the current terms of two transactions is an unreasonable administrative burden.

The Response is not supported by a declaration from the Receiver, and the SEC does not claim personal knowledge of the transactions. The SEC's confidence therefore cannot substitute for the Court's independent supervision. Rule 66 requires administration of a receivership estate to accord with historical federal equity practice, and a receiver is "an officer and representative of the court" that appointed him. Fed. R. Civ. P. 66; Booth v. Clark, 58 U.S. (17 How.) 322, 331 (1855). The relevant question is not whether the SEC trusts the Receiver, but whether the Court has a record sufficient to determine that its own sale conditions, statutory safeguards, and

preservation objectives have been satisfied. Requiring a short sworn certification and closing accounting is ordinary judicial supervision, not interference with the estate.

## VI. THE SALES ARE OUTRUNNING THE TRACING, AND THE PROCEEDS SHOULD NOT

A receivership premised on traceability is liquidating assets before the tracing exists. The Receiver's current report states that his accountants "still have not completed their forensic accounting," that the work proceeded this year "in a very limited fashion," and that the post-Barton I focus was on "finding tracing examples," Dkt. 728 at 67–68 (PageID 21923–24), while his plan still lists completion of the forensic accounting as future work. Id. at 98 (PageID 21954). The Fifth Circuit sustained the companion freeze as a device to give the Commission "additional time to trace funds," 135 F.4th at 226–28, and vacated the first receivership for want of entity-level traceability findings. 79 F.4th 573, 580–81 (5th Cir. 2023). That sequence matters. Barton I vacated the original receivership because the district court had not made the entity-level traceability findings required by Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012), and Barton II sustained the companion freeze precisely so that the Commission could complete that tracing. 135 F.4th at 226–28. What the estate has produced in the intervening years is not the completed forensic accounting those decisions contemplate, but selected "tracing examples" — spot tracing of individual, one-sided transactions selected by the Receiver's own staff. Dkt. 728 at 67–68 (PageID 21923–24). The principal witness through whom those examples were presented at the hearing on reimposition of the receivership, Carol Hahn, is an employee of the Receiver who acknowledged under oath that she is not an accountant. Receivership Hr'g Tr. At DKT 359. Tracing commingled funds across dozens of entities is analysis "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," which a witness without those qualifications may not supply in the form of lay opinion. Fed. R. Evid. 701(c); DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 685–86 (5th Cir. 2003); see United States v. Riddle, 103 F.3d 423, 428–29 (5th Cir. 1997) (error to admit as lay opinion a bank examiner's specialized analysis that a lay person could not have offered). The Commission, as the party invoking this Court's equitable powers, bears the burden of establishing traceability, and it cannot discharge that burden by adopting the Receiver's incomplete, non-expert spot tracing as its own evidentiary foundation. A receivership "is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself." Gordon v. Washington, 295 U.S. 30, 37

(1935). Until that forensic accounting exists, the tracing premise on which the freeze and the receivership both rest remains unproven, and liquidation should not be permitted to outrun it. Preservation must therefore follow the property into its proceeds. The Court appointed the Receiver to marshal and preserve assets, not merely to convert them into cash. Once title transfers, the resulting cash becomes the substitute res; if it is commingled or disbursed before tracing is completed, the Court's ability to determine entity-level ownership and fashion effective relief is materially impaired. The Fifth Circuit has recognized that receivership distributions may be effectively unreviewable because the assets will be "distributed, and likely unrecoverable" before final appellate review. SEC v. Forex Asset Management LLC, 242 F.3d 325, 330 (5th Cir. 2001). Accordingly, net proceeds from Rock Creek, Frisco Gate, and any future closing governed by the pending motions should remain in segregated, interest-bearing accounts identified by property and entity, and should not be transferred to a general operating account or disbursed except by further order of the Court.

## VII. LIMITED TRANSPARENCY SHOULD FOLLOW THESE SALES

If liquidation is being undertaken for the benefit of alleged lenders, the Court should know whether the proceeds from the transactions at issue are actually being preserved for that purpose. Neither the Response nor the record it invokes identifies the gross and net proceeds, the selling entity and receiving account, the amount retained or reserved for alleged lenders, or the amount used or proposed for administrative and professional expenses. These are not merits questions. They are limited administration facts necessary to determine whether the transactions preserve value and whether the proceeds remain available for proper attribution after tracing is completed.

The Receiver should therefore certify under penalty of perjury the final purchase price; the operative agreement and all amendments; extensions, concessions, commissions, credits, and closing costs; gross and net proceeds; the selling entity; the account receiving the proceeds; and all completed or proposed disbursements. For Rock Creek, that certification and accounting should be filed promptly after the Court's order; for Frisco Gate, it should be filed before closing. The materials may be submitted in camera or under seal. None of this relief prevents a closing that complies with the existing approval. It preserves the substitute res, protects alleged lenders and disputed owners alike, and ensures an adequate record for judicial and appellate review.

## VIII. THE LIS PENDENS FOOTNOTE CHANGES NOTHING

The Response's footnote 2 notes the Magistrate Judge's recommendations on the lis pendens motions (Dkts. 770, 775) and casts Mr. Barton's sequencing request as waste. Dkt. 822 at 2 n.2. Mr. Barton's objections to those recommendations are pending before this Court (Dkts. 788, 789) and are subject to de novo determination. Asking that preservation questions filed on June 3 be heard before irreversible closings occur, see Dkt. 786 at 4–6 (citing Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano, 140 S. Ct. 696, 700–01 (2020)), is not a request to "restart" anything. It is a request that the merits be reached once, in the right order, before the subject matter disappears.

## CONCLUSION

Mr. Barton respectfully requests that the Court grant the motions at Dkts. 786, 807, and 808; require the Receiver to file under oath the transaction certification and proceeds accounting described above for Rock Creek and, before closing, for Frisco Gate, in camera or under seal if the Court prefers; direct that the net proceeds from those transactions and any future closing governed by the pending motions be held in segregated, interest-bearing accounts identified by property and entity pending completion of the forensic accounting and further order of the Court; prohibit transfer or disbursement from those accounts except by further order; and grant such other relief as is just and proper.

Dated: July 28, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***

**Timothy L. Barton, Pro Se**
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me
*Defendant, appearing pro se*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se