**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, et al.** | § | |
| | § | |
| ***Defendants.*** | § | |

**RECEIVER'S VERIFIED RESPONSE TO**
**DEFENDANT TIMOTHY BARTON'S MOTION TO COMPEL**
**TURNOVER AND PRODUCTION OF RECORDS [DKTS. 810, 814]**

Cort Thomas, as Receiver, files this Response to Defendant Timothy L. Barton's Opposed Motion to Compel Turnover and Production of Records [Dkts. 810, 814][1] (the "Motion") and respectfully shows the Court as follows:

## INTRODUCTION

At issue in this "motion to compel" is the best use of receivership funds. The Receiver does not oppose and has never withheld access to any of the records Barton seeks. The only dispute is about how the requested information should be provided to Barton and who should pay for his requests. The Receiver has already agreed to give Barton copies of the email accounts that Barton himself provided access to in the spring of 2023, as well as images of the devices seized from 2999 Turtle Creek (the "Turtle Creek Office"). The Receiver's IT professionals are currently loading all of this information for Barton onto external drives. As to the remaining paper documents (roughly 300 boxes of paper documents collected from the Turtle Creek Office), the Receiver has offered

[1] Barton filed the same motion twice. Dkt. 814 is identical to Dkt. 810.

to let Barton inspect those boxes, and flag whatever documents he wants or needs, and have an agreeable third party document service make copies. Until July 29, Barton insisted that the Estate pay to sort or digitize those boxes for him and refused the Receiver's proposal.

Because such digitization would come at substantial cost to the receivership estate (well over six figures) and Barton can inspect the documents himself, that request should be denied, the Motion itself should be denied as moot, and the Court should order Barton to reimburse the Receivership Estate for the costs on IT professionals to copy this information for him.

## ARGUMENT

As detailed throughout the Receiver's Quarterly Reports, obtaining access to documents and information from Defendant Barton has been difficult and even today is not complete. At the same time, the Receiver has never objected to Barton reviewing the documents and information in the Receiver's possession that were seized in connection with the Receiver's appointment. With his Motion, Barton seeks access to (1) the Receivership Entities' email accounts, which were hosted by a cloud-based service; (2) the Receivership Entities' physical electronic devices that were seized from the Turtle Creek Office and have been imaged and maintained by the Receiver's IT professionals; and (3) approximately 300 boxes of paper files that were seized from the Turtle Creek Office and are currently housed in two climate controlled storage units.

Barton first requested access to this information the evening of July 3, 2026, when he requested that the Receiver turn over all information and "[b]ear the reasonable costs of the turnover, return, and production . . . through the Receivership Estate." *See* Ex. A, email chain beginning with July 3 email from T. Barton. The Receiver responded on July 6, noting that (1) Barton himself provided the Receiver with access to the email accounts, but that the Receiver was nonetheless willing to image those accounts; and (2) that the volume of the paper documents would

make an initial review by the Receiver's team untenable, but that Barton was welcome to review the documents onsite. *Id.* In the weeks since then, the Receiver has consistently maintained this position and additionally offered to provide images of the seized electronic devices, noting however that Barton still has not provided the necessary passwords and BitLocker encryption passkeys for those devices (in violation of the Receivership Order). *See* Exs. A & B.

While each category of information is discussed separately below, the Receiver believes that the Motion is largely (if not completely) moot in light of the Receiver's continued willingness to share (with minor conditions) the following information.

***Email accounts.*** The Initial Receivership Order, entered October 18, 2022, required Barton to deliver, among other things, electronic records and access credentials, and to cooperate with the Receiver. Dkt. 29 ¶¶ 6, 8–10, 18. The Receiver asked Barton to supply usernames and passwords to access the Receivership Entities' electronic data, but Barton consistently refused. Specifically as to the Receivership Entities' email accounts, which were housed in a cloud server, Barton first refused to identify IT personnel or supply passwords and usernames. Dkt. 235, p. 3. Then Barton retained a new IT professional and directed him to change the very credentials Barton had been ordered to surrender. *Id.* Barton consistently withheld access to these email accounts on privilege grounds while asserting a right to control all of it and opposed the Receiver's proposed protocol on grounds the Receiver had already addressed. *See* Dkt. 232, pp. 2–3. After a prolonged dispute and immense efforts, the Receiver eventually obtained access to the cloud-based email server.

Under these facts it seems at the very least inequitable to force the Receiver to go through the expense of imaging email accounts that Barton himself possessed and refused to provide access to for several months. In order to avoid additional litigation and briefing costs on this issue and because Barton should already have access to all of this information, the Receiver has already

offered to image these accounts and provide them back to Barton on an external drive. *See* Ex. B. However, the Receiver respectfully requests that Barton be ordered to reimburse the Receivership Estate for all expenses incurred in this process.

***Physical Devices Seized from Turtle Creek Office.*** Again, the Receiver has asked for access credentials—and more specifically usernames, passwords, and BitLocker encryption passkeys—to the Receivership Estate's electronic assets from the outset of the Receiver's appointment. These access credentials have never been provided by Barton. Most recently, on July 29, Barton proposed that the Receiver first turnover images of every device, that he would then "try decryption and access on [his] end," and promised that he would then "further share the results." It is unclear whether Barton has access to these access credentials or to individuals who know the access credentials. Based on the track record in this case, the Receiver cannot simply trust that Barton will provide this information at a later date.

In order to avoid additional litigation and briefing costs on this issue, the Receiver has already offered to image the devices seized from the Turtle Creek Office and provide them back to Barton on an external drive. *See* Ex. B. However, the Receiver respectfully requests that the Court (1) reconfirm Barton's obligation to turn over access credentials or information for individuals who know the access credentials; and (2) order Barton to reimburse the Receivership Estate for all expenses incurred in this process.

***Paper Documents.*** The Receiver collected and boxed the paper documents as they were stored in the office, and the boxes remain organized by the room from which they were taken. The Receiver has told Barton (repeatedly) that he is welcome to access the documents and flag anything he desires scanned, subject only to the conditions that (1) a Receivership representative is present on site with Barton to ensure no records leave the site and (2) an agreeable third-party conduct any

scanning (again, to ensure that the documents are returned and replaced as they are found). For multiple weeks, Barton's response was that he would not sit in the storage unit and that the Receiver or his team should be the one to go through the documents. Inspection is the ordinary means of reviewing voluminous records held by another, and it is available to Barton at no cost.

The relief Barton seeks in the Motion would require the Receiver either (1) to open some 300 boxes, review them page by page, decide for each document whether it belongs to an entity listed in Dkt. 418, to Barton personally, or to a Receivership Entity, and deliver the sorted product to Barton—with the Estate (*i.e.*, defrauded investors and creditors) footing the bill; or (2) to image all of the contents of the roughly 300 boxes and provide the images to Barton.

As to reviewing the documents, Barton assumes that this can be done from custody logs and inventories already in the Receiver's possession. Dkt. 810, p. 5. But no detailed index of that kind exists, and the records held at the Turtle Creek Office were generally commingled between the various entities, irrespective of whether they are currently Receivership Entities or former receivership entities. The Receiver's duty runs to the Estate and to the investors and creditors it exists to compensate, the Estate's resources are limited, and Barton offers no reason why he cannot review his own files.

As to imaging the boxes, the Receiver has sought quotes to scan and digitize the paper documents. The quotes received to date range from $75,000 to more than $400,000. The most recent, dated July 20, 2026, prices the project at $124,237.17 for 315 boxes. The Receiver will comply with an order directing him to incur that expense, but respectfully believes the Court should not require the Estate to spend a six-figure sum to duplicate records Barton may review in person at no cost.

Finally, the Receiver notes that on July 29, Barton agreed to "plan for onsite review under

your standing offer." *See* Ex. B. The Receiver then offered to meet with Barton in the near future for Barton to assess his needs for the review. *Id.* This situation is still fluid, but the Receiver is optimistic that a reasonable solution has been reached.

***

The Receiver respectfully requests that the Court deny as moot the Motion at Dkts. 810 and 814, confirm that the Receiver may satisfy Barton's request as to the paper documents by making them available for inspection and copying what Barton flags, direct Barton to provide whatever passwords and encryption details he has to the Receiver, order Barton to reimburse the Receivership Estate for all costs incurred related to Barton's requests, and grant the Receiver such other and further relief to which he is entitled.

Dated: July 30, 2026

Respectfully submitted,

**RECEIVER**

By: */s/ Cortney C. Thomas*
Cortney C. Thomas
Texas Bar No. 24075153
cort@brownfoxlaw.com
BROWN FOX PLLC
2699 Howell Street, Suite 500
Dallas, TX 75204
T: 214.327.5000
F: 214.327.5001

## VERIFICATION

My name is Cortney C. Thomas. I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.