**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, et al.** | § | |
| | § | |
| ***Defendants.*** | § | |

**RECEIVER'S RESPONSE TO DEFENDANT TIMOTHY BARTON'S MOTION FOR RECONSIDERATION OF THE PRE-FILING REQUIREMENT**

Cort Thomas, as Receiver, files this Response to Defendant Timothy Barton's Motion for Reconsideration of the Pre-Filing Requirement in the Court's Order (Dkt. 747) [Dkts. 811, 813][1] (the "Motion") and in support would respectfully show the Court as follows:

## INTRODUCTION

Barton challenges the Court's June 5, 2026 Order [Dkt. 747] (the "Order"), allowing him to proceed pro se but requiring that "he must seek leave of the Court before filing any motion," on the ground that it amounts to a "pre-filing restriction" of the kind reviewed in *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008), and that it fails to satisfy *Baum*'s factors and procedures. But *Baum* was different because at issue in that case was an injunction barring the litigant from filing future lawsuits not before that court. The Order at issue here reaches only this case and merely adds one step (seeking leave) before Barton files a motion. *Baum* therefore does not govern here.

The Order is instead an exercise of this Court's inherent authority to manage its own

[1] Barton filed the same motion twice. Dkt. 813 is identical to Dkt. 811.

docket. As such, the question is whether it falls within the two limits to courts' inherent power that the Supreme Court has identified: that it must be a "reasonable response to the problems and needs confronting the court's fair administration of justice," and that it must not be "contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). Of course, requiring Barton to seek leave before filing a new motion does not violate any federal law, and Barton does not identify any. That leaves only whether the Court's preclearance requirement was reasonable, and on this record, reasonableness is not a close question. Barton's vexatious and abusive conduct is well known to this Court. Over nearly four years Barton has defied the Receivership Order, been held in civil contempt, stalled through a manufactured privilege dispute, driven away purchasers of court-approved sales, and litigated by attrition at the estate's expense. And since obtaining leave to proceed pro se seven weeks ago, he has flooded the docket with frivolous and often duplicative filings, including with five separate filings seeking the very relief he seeks again here.

The Motion should be denied.

## ARGUMENT

### A. The Order is an intra-case motion filing restriction governed by this Court's inherent power, not *Baum*.

At issue in *Baum* was an injunction that barred a litigant from filing claims in federal or state court without the district court's approval. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 183 (5th Cir. 2008) ("Appellant, Douglas Baum ("Baum"), appeals the modification of an injunction issued by the district court that enjoins Baum from directly or indirectly filing claims in any federal or state court or agency in Texas without the express written permission of Judge Lynn N. Hughes."). Thus, the factors and procedures Barton raises apply when a court seeks an *injunction* barring a litigant from commencing new proceedings. *See id.* at 189 ("In determining

whether it should impose a pre-filing injunction . . . to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors . . . ."). Barton cites no case, and the Receiver is not aware of any, requiring those factors or procedures for a mere restriction on motions within a single case. Nothing in the Order speaks to Barton filing any new lawsuit or new proceeding. The Order only restricts the filing of new motions *in this case*, and even then, allows new motions so long as Barton first obtains leave of court.

Such a motion filing restriction is the kind of docket management that federal courts routinely exercise even *sua sponte*. *See, e.g.*, *Henry v. U.S. I.R.S.*, No. CIV.A.02-0968, 2010 WL 2605822, at *4 (E.D. La. June 21, 2010) (ordering *sua sponte* "that Plaintiff shall not file any additional motions in this action without first seeking leave of court to do so *and* certifying, *in writing,* that the proposed submission is not repetitive or duplicative" where that litigant's "multitude of repetitive and duplicative submissions that have demanded an unwarranted expenditure of resources by the federal court system and the Government"); *Shuper v. Chandler*, No. 2:13-cv-110-GZS, Dkt. 119 (D. Me. Oct. 28, 2013) (finding plaintiff "has become an abusive litigant" where she "has deliberately and repeatedly failed to follow the rules and instructions of this Court and, as a result, has wasted the Court's time and resources" and ordering that "[a]bsent leave of the Court, Plaintiff Shuper shall file no further motions or attachments in this case until this Court receives a mandate on her pending appeals"); *Liberi v. Taitz*, No. 11-0485, 2011 WL 13143549, at *5 (C.D. Cal. June 14, 2011) (imposing motion filing restriction and noting the "flood of filings before the Court"); *Linear Technology Corp. v. Impala Linear Corp.*, No. C-98-1727 VRW, 2001 WL 36126932, at *4 (N.D. Cal. Sept. 21, 2001) (noting a "blizzard of motions," staying further proceedings, and directing that no further motions may be filed without leave of court); *Hall v. National City Corp. Welfare Benefits Plan*, No. 1:07-cv-649, Dkt. 97 (N.D. Ohio

Oct. 31, 2008) (stating that after "a hailstorm of motions were filed by both Plaintiff and Defendant" the court "ordered that no further motions be filed by either party without leave of Court"); *Cole v. Xlibris Corp.*, No. 1:05 CV 303, 2006 WL 980808, at *2 (N.D. Miss. Apr. 12, 2006) (noting pro se plaintiff "filed multiple motions and appeals" and stating "plaintiff shall file no further motions of any kind . . . . Should the plaintiff attempt to file motions in violation of this order, the motions will not be filed, acknowledged or acted on at any time"). Compared to the relatively few filings in those cases—described variously therein as a "blizzard," "flood," or "hailstorm" —Barton's voluminous filings here have been nothing short of a Texas gullywhumper.

The correct way to view the Order is as an exercise of the Court's inherent power. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962) (stating that courts' inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). In *Dietz*, the Supreme Court identified two limits on such inherent power. "First, the exercise of an inherent power must be a reasonable response to the problems and needs confronting the court's fair administration of justice." *Dietz*, 579 U.S. at 45 (internal quotations marks omitted). "Second, the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id.* Restricting further motion practice based on leave of court is a familiar exercise of that power. *See United States v. Blount*, 523 F. App'x 298, 300 (5th Cir. 2013) (affirming enforcement of an order requiring leave of court before filing further motions); *James v. Toyota Motor Corp.*, 515 F. Supp. 3d 640, 643 (S.D. Tex. 2021) (striking vexatious motions

under *Dietz*); *Henry v. U.S. I.R.S.*, No. 02-0968, 2010 WL 2605822, at *4 (E.D. La. June 21, 2010) (barring further motions absent leave and a certification of non-duplication).

As to the second inherent power limit identified in *Dietz* (not contrary to federal law), Barton cites no rule and no statute conferring a right to file motions without leave, because none exists. In fact, the Rules run the other way. *See* FED. R. CIV. P. 83(b) ("A judge may regulate practice in any manner consistent with federal law[.]"); FED. R. CIV. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). And in an equity receivership this Court's discretion is at its highest. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) ("[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." (quoting *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982))).

The first limit asks whether the Order responds reasonably to a real problem. As explained below, the record shows that the Order's restriction on new motions without leave is a reasonable and appropriate response to Barton's vexatious litigation tactics.

**B. Barton's conduct in this case makes the Order a reasonable response.**

Barton's violations of the Receivership Order and the impacts of those violations on the Receivership are voluminous and well documented. By way of example:

**1. Barton defied the Receivership Order from the outset.**

The Initial Receivership Order, entered October 18, 2022, required Barton to deliver records, financial information, and access credentials, and to cooperate with the Receiver. Dkt. 29 ¶¶ 6, 8–10, 18. Barton withheld nearly all of it. He refused to produce financial records and entity and asset information. Dkt. 133, pp. 5–7. He refused to identify IT personnel or supply passwords

and usernames, then retained a new IT professional and directed him to change the very credentials Barton had been ordered to surrender. Dkt. 235, p. 3.[2] He refused to identify the head of the Receivership Entities' accounting group, and when the Receiver located the individual through third parties, that Barton-controlled employee refused to answer any question. *Id.* Barton had verified in 2019 that JMJ Development Holdings owned $12 million in art; he produced an inventory of six items and claimed he could not remember the rest, notwithstanding photographs of extensive sculpture and artwork in an appraisal Barton himself filed with the Court. Dkt. 133, p. 9; Dkt. 235, p. 4. On the second day of the receivership, the Receiver learned Barton was removing art and antiques from the Rock Creek property. Barton has never accounted for them. Dkt. 235, p. 4.

On May 15, 2023, after extensive briefing, the Court found Barton in civil contempt "because he has repeatedly refused to follow [the Receivership Order's] clear requirements," ordered compliance within three days, imposed coercive sanctions of $500 per day, and assessed $19,250 in compensatory sanctions to reimburse the estate. Dkt. 235, pp. 5–7.

**2. Barton used a privilege dispute to inhibit the Receivership.**

Barton also withheld access to the Receivership Entities' email accounts on privilege grounds while asserting a right to control all of it, and opposed the Receiver's proposed protocol on grounds the Receiver had already addressed. Dkt. 232, pp. 2–3. He demanded yet another conference based on a misrepresentation of the conferral record. *Id.* at 2. He proposed to invert the burden of establishing privilege, which would have forced the Receiver to litigate every document Barton designated and to bear the cost of doing so. *Id.* at 5–6. Seven months after his appointment,

[2] Even now, Barton has not provided passwords and BitLocker encryption passkeys for the several devices seized from the Turtle Creek Property. As detailed in the Receiver's Verified Response to Barton's Motion to Compel Turnover and Production of Records, Barton currently insists that the Receiver turnover images of these devices, with Barton stating he will "try decryption and access on [his] end" and promising to "further share the results."

the Receiver still had no access to the entities' email accounts, OneDrive account, or certain accounting records. *Id.* at 2.

**3. Barton interfered with court-approved sales and drove away purchasers.**

Days after the Receiver moved to approve the sale of the Rock Creek property, Barton recorded a lis pendens against it, and the title company refused to issue title without the lis pendens being lifted. Dkt. 96. On the afternoon of the day the Court orally granted the sale motion, Barton contacted the purchaser and represented that the property suffered from foundation and flooding problems. The purchaser then asked for an extension of time of the closing date, and Barton's subsequent interlocutory appeal of the sale order (all of the way to the United States Supreme Court) delayed the sale until it finally closed on June 25, 2026. Dkt. 133, p. 10; Dkt. 723, p. 3. The Court has since found that the resulting delay and loss of value are "at least in part attributable to Barton's activity," and held him barred by unclean hands from equitable relief concerning that same property. Dkt. 723, p. 3.

The conduct escalated. Barton appeared at the Amerigold Suites and boasted to the property manager that he had thwarted an earlier, failed sale. Dkt. 558, pp. 3–4 ¶ 6. He contacted the second buyer of the Amerigold Suites and Hall Street properties, and the broker who had listed Rock Creek. *Id.* at 4–5 ¶ 9. On July 23, 2024, the Court read the non-interference provisions of the Receivership Order into the record and directed Barton to stop contacting contracted buyers. *Id.* at 5. Within a month Barton left a voicemail for the Frisco Gate buyer, contacted that buyer's broker, and told industry participants he was exonerated and would regain the properties by year end. *Id.* The second Amerigold buyer terminated its contract, citing Barton's statements and its concern that he would sue it after closing. *Id.* at 6.

**4. Barton has litigated by attrition, and the estate has paid for it.**

Barton "has opposed virtually every motion filed by the Receiver during the life of this case," at immense cost to the receivership and at the price of voluminous opinions from this Court and the Fifth Circuit. Dkt. 408, p. 4. He treated litigation as a business strategy before the receivership and continued the practice inside it. *Id.* at 6. He has appealed to the Fifth Circuit repeatedly, and he has lost, repeatedly, but also practically achieved the delays and stays that were otherwise denied. *See, e.g.*, Dkts. 651, 652; *SEC v. Barton*, 135 F.4th 206 (5th Cir. 2025), *cert. denied sub nom. Barton v. SEC*, 146 S. Ct. 1851 (2026). His grievance practice required this Court to impose a separate clearance requirement "to prevent the Receivership estate from being depleted for meritless grievances," Dkt. 649, which the Fifth Circuit stated was "not an injunction" but "an administrative measure designed to prevent both interference with the receivership and harassment of the receiver." *SEC. Barton*, No. 25-10871, 2026 WL 1388717, at *1 (5th Cir. May 18, 2026) (dismissing appeal). Barton's numerous, unnecessary (and often frivolous) filings have required briefing responses, draining estate assets that would otherwise be preserved for defrauded investors.

**5. Barton's conduct since the Order confirms its necessity.**

In the seven weeks since the Order was issued, Barton has rewarded the Court by generating more than thirty docket entries, most of them motions or motions for leave. *See Hall v. National City Corp. Welfare Benefits Plan*, No. 1:07-cv-649, Dkt. 97 (N.D. Ohio Oct. 31, 2008) (noting that after "requiring the parties to move for leave to file further motions," the court's "reward for that requirement was that . . . it received a renewed hailstorm of motions, this time motions for leave"). The Court has denied several as unnecessary. *See, e.g.*, Dkt. 802 (motion premised on a misunderstanding of administrative closure); Dkt. 803 (motion for return of a washer

and dryer the Receiver was never opposed to returning, filed without meeting local rules conference requirement); Dkt. 823 (successive motion offering no new basis). Others were stricken because Barton filed them without leave. Dkts. 746, 751. The Court has also had to direct Barton to comply with the Local Rules and to cease *ex parte* communications with chambers. Dkt. 749.

The Motion (or motions) now before the Court is perhaps the clearest illustration. Barton has sought reconsideration of Dkt. 747 five times. Dkts. 764, 767, 772, 811, 813. The Court denied one of them as moot because it is duplicative. Dkt. 776. Even now, this response addresses both Dkts. 811 and 813, which are identical filings, docketed twice.

Accordingly, in light of Barton's extensive history of vexatious litigation conduct including flooding the Court with frivolous, duplicative, and abusive filings, the Order's preclearance motion restriction was a reasonable response and will (hopefully) decrease time and expense of the Receiver responding to the flood of motions.

**C. Barton identifies no prejudice, and the record shows none.**

The Order's preclearance motion restriction imposes no major cost on Barton since it merely requires that he seek leave. The Court has granted him leave routinely. *See* Dkts. 765, 777, 785, 799, 800, 801, 804, 805, 827. Denials have been for cause and have been explained. *See* Dkts. 802, 803, 823. Although Barton complains that he was not heard before the Order issued, no prior warning is required. *See Blount*, 523 F. App'x at 300 (a prior warning is "not always" required where a litigant has filed many meritless pleadings) (citing *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988)). And in any event, he has now been heard on the pending Motion.

***

Accordingly, the Court's Order is a reasonable and lawful exercise of its inherent authority to manage this docket and to preserve the assets of a receivership estate that exists for the benefit

of defrauded investors. The Receiver respectfully requests that the Court deny Barton's Motion [Dkts. 811, 813] and grant the Receiver such other and further relief to which he may be entitled.

Dated: July 30, 2026

Respectfully submitted,

**RECEIVER**

By: */s/ Cortney C. Thomas*

Cortney C. Thomas
Texas Bar No. 24075153
cort@brownfoxlaw.com
BROWN FOX PLLC
2699 Howell Street, Suite 500
Dallas, TX 75204
T: 214.327.5000
F: 214.327.5001

## CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.