**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:22-CV-2118-X |
| TIMOTHY L. BARTON, et al., | § | |
| Defendants, | § | |

**DEFENDANT TIMOTHY L. BARTON'S REPLY TO THE RECEIVER'S RESPONSE (DKT. 836) IN SUPPORT OF HIS OPPOSED MOTION FOR RECONSIDERATION OF THE PRE-FILING REQUIREMENT IN THE COURT'S ORDER (DKT. 747)**

TO THE HONORABLE BRANTLEY STARR,

UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton files this Reply in support of his Motion for Reconsideration (Dkt. 811) of the pre-filing requirement in the Court's June 5, 2026 Order (Dkt. 747) and in response to the Receiver's opposition (Dkt. 836).[1] Mr. Barton has separately replied to the Commission's opposition (Dkt. 828), and the Commission has since filed a supplement clarifying its principal authority (Dkt. 829). This Reply addresses the arguments the Receiver adds.[2]

## I. THE "FIVE MOTIONS" AND "DUPLICATIVE FILINGS" NARRATIVE IS REFUTED BY THE FACE OF THE RECORD THE CLERK MADE

The Response builds its portrait of abuse on a count: Mr. Barton, it says, "has sought reconsideration of Dkt. 747 five times. Dkts. 764, 767, 772, 811, 813," and "filed the same

1 This Reply is timely and requires no leave: the June 5, 2026 Order exempts "responses and replies filed pursuant to L.R. 7.1(e),(f)." Dkt. 747. The Receiver's Response was filed on July 30, 2026 (Dkt. 836); this Reply is filed within the fourteen-day period of Local Rule 7.1(f), which runs through August 13, 2026.

2 The Response states that it "addresses both Dkts. 811 and 813, which are identical filings, docketed twice," and asserts in its footnote 1 that "Barton filed the same motion twice." Dkt. 836 at 1 n.1, 9. As Part I below shows from the face of the record, Mr. Barton submitted the motion once; the Clerk entered it twice and stamped Dkt. 813 "Filed Marked in error." Dkt. 813 at 1 (PageID 22806).

motion twice." Dkt. 836 at 1 n.1, 9. The docket itself tells a different story, and every step of it is documented.

When the June 5 Order issued, Mr. Barton had no CM/ECF access; the Court granted him electronic-filing access only later. Dkt. 777. Until then he filed on paper and depended entirely on Clerk processing. On June 12, 2026, he prepared a single filing package, exactly as the Order required: a motion for leave, a proposed order granting leave, and the proposed Motion for Reconsideration attached as Exhibit A with its own proposed order. Both Dkt. 811 and Dkt. 813 still carry the "(EXHIBIT A)" legend at the top of the first page and the June 12, 2026 signature date, because they are that exhibit. Dkt. 811 at 1, 5; Dkt. 813 at 1, 5.

In docketing, that package was merged with a second, unrelated filing package. Dkt. 764 was entered as a thirty-five-page composite that spliced the separate Dkt. 745 reinstatement papers into the middle of the reconsideration packet, and Dkt. 767 was entered as a thirty-one-page duplicate composite that, as Mr. Barton explained to the Clerk, "does not appear to reflect an independently intended filing package." On June 22, 2026, Mr. Barton wrote to the Clerk of Court requesting administrative review and nunc pro tunc correction of Dkts. 764, 766, and 767, describing the merger and duplication in detail, and he delivered a corrected leave package the same day. The Clerk docketed the corrected package as Dkt. 772, and the Court then found Dkt. 767 moot in light of the corrected filing. Dkt. 776 (June 25, 2026).

On July 9, 2026, the Court granted leave. Dkt. 799 (granting Dkt. 772 and directing the "clerk to enter the document as of the date of this order"). The Clerk then entered Exhibit A on the docket twice the same day, as Dkt. 811 and as Dkt. 813, and the Clerk's office itself stamped Dkt. 813 "Filed Marked in error." Dkt. 813 at 1. Mr. Barton filed nothing twice. The double entry the Receiver attributes to him bears, on its face, the Clerk's own error notation.

Counted honestly, the "five" entries are: one motion for leave (Dkt. 764), which the leave requirement itself compelled; one Clerk-created duplicate composite (Dkt. 767), which the Court

mooted; one corrected resubmission (Dkt. 772), made necessary by the docketing errors Mr. Barton had already flagged in writing; and the single reconsideration motion entered upon the grant of leave (Dkt. 811), together with the Clerk's erroneous second entry of it (Dkt. 813). That is one motion, processed through a paper-filing system the Order forced him into, with every irregularity identified and corrected at Mr. Barton's own initiative through a letter to the Clerk rather than through motion practice. A restriction on Mr. Barton's future filings cannot be justified by docketing artifacts he did not create and worked diligently to fix. And it is difficult to reconcile the Receiver's theme of "duplicative filings" with the fact that the one docket entry marked "filed in error" was marked so by the Clerk, not generated by any second submission from Mr. Barton.

## II. "ABUSIVE FILING" REQUIRES FINDINGS; THERE ARE NONE, AND THE RECEIVER'S OWN CONCESSIONS REFUTE THE LABEL

The Response calls Mr. Barton's filings "frivolous," "abusive," and "a Texas gullywhumper." Dkt. 836 at 2, 4, 9. Rhetoric is not a finding. No court has sanctioned Mr. Barton under Rule 11 for any motion at issue, made a finding under 28 U.S.C. § 1927, or found that any of his pro se motions was filed in bad faith. The June 5 Order itself contains no findings of any kind: it grants counsel's unopposed withdrawal and, in two sentences, imposes the leave requirement. Dkt. 747. The Order identifies no motion as frivolous, no Rule 11 violation, no bad-faith conduct, no disobedience of a court order, and no pattern of abusive motion practice.

The Receiver's own brief supplies the strongest refutation. It concedes that "[t]he Court has granted him leave routinely," citing nine grants: Dkts. 765, 777, 785, 799, 800, 801, 804, 805, and 827. Dkt. 836 at 9. Those grants covered this reconsideration motion, CM/ECF access, the re-filed preservation motion, the motion to compel turnover of records, the motion to release funds for criminal defense counsel, and the Frisco Gate and Rock Creek pre-closing disclosure motions. Each grant was this Court's own determination that the motion was proper to bring. Leave has been denied on case-specific grounds a small number of times (Dkts. 802, 803, 823),

including one instance in which the conference requirement would have revealed the Receiver was unopposed. A record in which the Court routinely permits the filings is the opposite of a record of abusive filing, and the Receiver cannot describe as "frivolous" a body of motions this Court has repeatedly allowed onto its docket.

The "more than thirty docket entries" figure (Dkt. 836 at 8) is an artifact of the Order's own architecture. Under the leave requirement, a single request for relief generates at least three entries: a motion for leave, an electronic order resolving it, and the separately entered motion. Add the corrective entries occasioned by the Clerk's processing errors described above, and the docket count multiplies without any additional substance from Mr. Barton. The Receiver's own authority makes the point for him: in Hall, the court observed that after "requiring the parties to move for leave to file further motions," its "reward for that requirement was that . . . it received a renewed hailstorm of motions, this time motions for leave." Dkt. 836 at 8 (quoting Hall v. Nat'l City Corp. Welfare Benefits Plan, No. 1:07-cv-649, Dkt. 97 (N.D. Ohio Oct. 31, 2008)). Leave requirements inflate docket counts; that is a reason to question the device, not a justification for it. The estate-expense rationale is inverted for the same reason: the Receiver bills the estate to oppose motions for leave that only exist because of the Order, a layer of briefing that ordinary motion practice would not generate. The Receiver cannot elect to oppose leave requests, bill the estate for doing so, and then invoke the resulting fees as a reason to perpetuate the restriction. Those are costs generated by the restriction itself, not findings that justified imposing it.

## III. BAUM GOVERNS BY FUNCTION, AND THE RECEIVER'S CONTRARY AUTHORITIES ARE NON-BINDING OR SUPPORT MR. BARTON

The Receiver's lead argument is that Baum v. Blue Moon Ventures, LLC, 513 F.3d 181 (5th Cir. 2008), "does not govern" because the injunction there barred new lawsuits, while the June 5 Order "merely adds one step" within this case. Dkt. 836 at 1–3. Baum's rule is not so confined. The Fifth Circuit wrote that "[n]otice and a hearing are required if the district court sua sponte imposes a pre-filing injunction or sua sponte modifies an existing injunction to deter

vexatious filings," 513 F.3d at 189, and the device it reviewed was precisely the one at issue here: a requirement of advance judicial permission before filing. An order that conditions every motion, on every subject, for the indefinite remainder of the case on advance permission operates as a pre-filing restraint on access to the court regardless of the label attached to it. Function, not nomenclature, controls; otherwise the safeguards could be avoided in every case by calling the restraint docket management.

That functional analysis is reinforced by the First Amendment. "The right of access to the courts is indeed but one aspect of the right of petition." Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). The Petition Clause also protects the right to appeal to courts and other government forums established to resolve legal disputes. Borough of Duryea v. Guarnieri, 564 U.S. 379, 387 (2011). Filing motions in this case and presenting a grievance to an attorney-disciplinary authority are petitioning activities. The Order therefore does more than regulate scheduling or form; it requires advance judicial permission before Mr. Barton may invoke those forums. That burden confirms why prior notice, findings, objective standards, and narrow tailoring are necessary.

The need for objective safeguards is heightened by the structure of the grievance provision. The Court appoints and supervises Receiver's counsel, approves their compensation and fee applications, and controls their continued service, while the Order requires Mr. Barton to obtain the Court's permission before submitting a grievance concerning those same attorneys. Mr. Barton alleges no actual bias and seeks no recusal in this Motion. But federal law separately protects against an objective appearance of partiality. See 28 U.S.C. § 455(a); Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988). At minimum, that structure weighs strongly in favor of neutral criteria, written reasons, prompt review, and a defined endpoint rather than an open-ended, standardless pre-clearance regime.

The Fifth Circuit authority the Receiver offers does not close that gap. United States v. Blount, 523 F. App'x 298 (5th Cir. 2013), is unpublished and non-precedential, and it arose in a closed § 2255 proceeding where the movant had filed "many frivolous pleadings." Even there, the panel reaffirmed, citing Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988), that "the imposition of a sanction without a prior warning should generally be avoided." The exception it recognized presupposes an adjudicated record of frivolous filings. Here there is no such record; there is a record of leave routinely granted. Blount's narrow exception for a prisoner who papered a closed case with frivolous motions does not describe a party defendant in an active receivership whose motions this Court keeps allowing.

The remaining cases (Dkt. 836 at 3–4) are out-of-circuit district court orders: Henry (E.D. La.), Shuper (D. Me.), Liberi (C.D. Cal.), Linear Technology (N.D. Cal.), Hall (N.D. Ohio), Cole (N.D. Miss.), and James v. Toyota (S.D. Tex.). None binds this Court, and each rested on a record and process absent here: documented findings of repetitive or abusive filings by the restricted litigant, restrictions imposed after the abusive pattern was identified on the record, restrictions applied to both parties after mutual excess, or narrower devices such as Henry's certification that a submission "is not repetitive or duplicative." None involved a universal leave requirement imposed sua sponte, without notice, without findings, and without standards, inside an order resolving an unopposed motion to withdraw as counsel.

The Receiver also repeats the Commission's reliance on SEC v. Barton, No. 25-10871, 2026 WL 1388717 (5th Cir. May 18, 2026), describing the Fifth Circuit as holding that the grievance pre-clearance requirement was "not an injunction" but "an administrative measure." Dkt. 836 at 8. That decision dismissed Mr. Barton's appeal for lack of appellate jurisdiction and expressly did not reach the merits; its language about "administrative measure[s]" explains why the provision was not appealable under 28 U.S.C. § 1292(a)(1), not whether it was validly imposed. The Commission itself has now filed a supplement clarifying that it "was not and is not

seeking to characterize the Fifth Circuit's opinion as an affirmance of the merits of the pre-clearance requirement." Dkt. 829 at 1–2. The Receiver's brief, filed two days after that clarification, invites the very reading the Commission withdrew. Appealability and validity are different questions, and the May 18 order answers only the first.

Dietz v. Bouldin, 579 U.S. 40 (2016), does not rescue the Order either; it constrains it. Dietz requires that any exercise of inherent power be "a reasonable response to the problems and needs confronting the court's fair administration of justice" and that it not conflict with any rule or statute. Id. at 45. Inherent powers "must be exercised with restraint and discretion," Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991), and "within the requirements of due process," Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). No advance notice stated that the Court was considering a filing restriction; no hearing was held; no response was requested; and no contemporaneous findings identified the conduct the restriction was meant to address. A restriction entered without notice, resting on no findings, setting no deadline for decision, and containing no end date is not a measured response to an identified problem; it is a standing condition on one party's access to the court, entered in an order about something else. Rule 83(b) permits a judge to regulate practice only in a manner "consistent with federal law," which includes the safeguards Baum articulates, and Rule 1's command of the "just, speedy, and inexpensive determination of every action" is poorly served by a process that took this single motion twenty-seven days to travel from signature (June 12) to entry on the docket (July 9), through no fault of the movant.

## IV. THE 2022–2025 HISTORY THE RECEIVER RECOUNTS WAS NOT THE BASIS OF THE ORDER AND CANNOT RETROACTIVELY BECOME SO

Most of the Response is a five-page recitation of grievances from 2022 through 2025: the contempt finding of May 2023, the privilege dispute, alleged interference with sales, and Mr. Barton's appeals. Dkt. 836 at 5–8. Three points dispose of it.

First, none of that history appears in the June 5 Order, which made no findings at all. Under Baum, the findings must support the restriction when it is imposed, after notice and an opportunity to be heard on the specific conduct said to justify it. An order silent as to its reasons cannot be defended by rationales assembled for the first time in an opposition brief. If this history is now offered as the restriction's justification, then Mr. Barton was entitled to notice of that theory and an opportunity to contest it before the restriction issued. That is exactly the process the Motion asks this Court to provide.

Second, the recited events are not what Baum's first factor examines. That factor asks whether the litigant has a history of "vexatious, harassing, or duplicative" filings. The episodes the Receiver describes were disputes over receivership administration, litigated years ago and largely through counsel, many of them contested then and contested still.[3] Pursuing an appeal to the Fifth Circuit, or a petition for certiorari, is the exercise of a statutory right of review, not harassment; no court has ever found any of Mr. Barton's appeals frivolous or sanctioned him for one. Losing an appeal is not vexatiousness, or every unsuccessful appellant would qualify.

Third, the period actually relevant to a restriction on Mr. Barton's pro se motion practice is the period in which he has practiced pro se: the weeks since June 5, 2026. As shown above, that record consists overwhelmingly of motions this Court granted leave to file. The Receiver's account of 2022–2025 explains why the Receiver is frustrated with Mr. Barton. It does not supply the findings, made on notice, of vexatious filing that the law requires before a court conditions a party's every motion on advance permission.

## V. THE "NO PREJUDICE" ARGUMENT FAILS ON THIS RECORD

3 The Receiver's footnote 2 (Dkt. 836 at 6 n.2) raises device-access matters that are the subject of separate, pending briefing on the motion to compel turnover and production of records (Dkt. 810) and are disputed there. They have no bearing on whether the pre-filing requirement satisfied the standards governing its entry, and Mr. Barton does not burden this Reply with them.

The Receiver argues the requirement "imposes no major cost" because leave is granted routinely and denials are explained. Dkt. 836 at 9. The prejudice is concrete and already on the docket. This very motion took twenty-seven days to reach the docket. Time-sensitive motions have been overtaken by events while leave was pending: Mr. Barton's pre-closing disclosure requests concerning the Rock Creek property moved through the leave process in early July (Dkts. 794, 796, granted at Dkts. 804, 805, filed at Dkts. 807, 808) while the transaction proceeded, after which the Commission argued the requests were moot because "the sale of the Rock Creek property has already closed." Dkt. 822 at 2. A screening step that consumes the time in which relief is possible, and then converts that delay into a mootness argument, is not a cost-free formality. The Order also supplies no standard for leave, no deadline for decision, and no requirement of reasons, so nothing prevents recurrence.

The Receiver's final point, that Mr. Barton "has now been heard on the pending Motion," Dkt. 836 at 9, concedes the defect it tries to cure. Being heard afterward, in briefing on a motion the Receiver urges the Court to deny, is not the notice and opportunity to be heard that must precede a sua sponte restriction. Baum, 513 F.3d at 189. On the Receiver's logic, no sua sponte restriction could ever be procedurally deficient, because the ensuing challenge to it would always retroactively supply the process. The law is otherwise, and Blount's narrow no-warning exception, addressed in Part III, presupposes the record of "many frivolous pleadings" that this docket does not contain.

## VI. LESS RESTRICTIVE TOOLS EXIST, AND NO ONE HAS SHOWN THEM INADEQUATE

Baum's fourth factor requires consideration of "the adequacy of alternative sanctions" before a filing restriction issues. 513 F.3d at 189. The Response never engages it. Rule 11 reaches filings presented for improper purposes; 28 U.S.C. § 1927 reaches unreasonable and vexatious multiplication of proceedings; the Court retains inherent authority to sanction bad-faith conduct after notice; and Local Rule 7.1 already polices conference obligations and briefing. The

Court may summarily deny any improper motion at a fraction of the cost the current regime imposes on everyone, including the estate. If some management of pro se filings is nonetheless thought necessary, Mr. Barton renews the alternative he proposed in the Motion and in Dkt. 828: a narrowed order stating objective criteria for leave, exempting emergency and time-sensitive motions, requiring prompt disposition with stated reasons, and terminating on a defined date.

## CONCLUSION AND PRAYER

The issue is not whether the Receiver disagrees with Mr. Barton's filings, but whether an indefinite pre-filing restriction may be imposed without advance notice, an opportunity to be heard, findings of vexatious conduct, objective standards, or a defined endpoint. The Receiver's Response does not cure those defects: its filing count is contradicted by the Clerk's own "Filed Marked in error" notation on Dkt. 813, its characterization of the Fifth Circuit's May 18 order has been withdrawn by the Commission, and its historical narrative was not identified as the basis for the June 5 Order. Mr. Barton therefore respectfully requests that the Court grant his Motion (Dkt. 811), vacate the pre-filing requirement, and disregard the characterization of Dkts. 811 and 813 as duplicative filings by Mr. Barton. Alternatively, he requests a narrowly tailored order with objective criteria, an emergency exception, prompt rulings with stated reasons, and a defined termination date, together with such other relief to which he may be entitled.

Dated: August 2, 2026

Respectfully submitted,
***/s/ Timothy L. Barton***

**Timothy L. Barton, Pro Se**
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me
Defendant, appearing pro se

## CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.