**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:22-CV-2118-X |
| TIMOTHY L. BARTON, et al., | § | |
| Defendants, | § | |

**DEFENDANT TIMOTHY L. BARTON'S REPLY TO THE RECEIVER'S RESPONSE (DKT. 833) IN SUPPORT OF HIS OPPOSED MOTION TO RELEASE FUNDS FROM THE RECEIVERSHIP ESTATE FOR HIS CRIMINAL DEFENSE AND TO RETAIN COUNSEL OF HIS CHOICE (DKT. 809)**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton files this Reply in support of his Motion to Release Funds (Dkt. 809) and in response to the Receiver's opposition (Dkt. 833).[1] The Response rests on three propositions: that the estate's money is not Mr. Barton's; that if it is, he must prove it untainted, because tracing "was already completed" and affirmed on appeal; and that he has made no showing of need or amount. Each proposition is contradicted by the Receiver's own filings, including the Sixteenth Quarterly Status Report the Receiver filed the same day as the Response, which reports, for the sixteenth consecutive quarter, that the forensic accounting of the estate's funds "is still ongoing." Dkt. 838 at 71.

## I. THE ASSERTION THAT TRACING "WAS ALREADY COMPLETED" IS REFUTED BY THE STATUS REPORT THE RECEIVER FILED THE SAME DAY

The Response says Mr. Barton's burden argument demands renewed tracing that "was already completed." Dkt. 833 at 3. But the Receiver's Sixteenth Quarterly Status Report, filed the

[1] This Reply is timely under L.R. 7.1(f) and exempt from the June 5, 2026 leave requirement. Dkt. 747 (PageID 22232). The Receiver filed Dkt. 833 on July 30, 2026; the deadline is August 13. Dkt. 824 separately replies to the Commission.

same day, states that his accountants "still have not completed their forensic accounting," that second-quarter work continued only "in a very limited fashion," and that the accounting "is still ongoing." Dkt. 838 at 69, 71. The report also describes "extensive comingling," lists "completing a forensic accounting" to trace where funds ultimately flowed as remaining work, and states that the Receiver is "waiting on completion" before concluding even one settlement. Id. at 70, 101.

The report also explains that, after the first appeal, the accountants shifted to "finding tracing examples where Wall Investor Funds eventually flowed into the various assets"—samples selected to support the receivership's scope on remand. Id. at 70. Examples are not a completed forensic accounting separating tainted from untainted cash. The Receiver has also stated that tracing even one household purchase was "cost-prohibitive," disclosed that the accountants have not been paid since April 2024, and continues to list completion as future work. Id. at 66 n.24, 70, 101. The Court should not deny access to counsel on a factual premise the Receiver's own formal reporting contradicts.

## II. WHAT THE FIFTH CIRCUIT AFFIRMED WAS THE RECEIVERSHIP'S SCOPE, NOT A FINDING THAT THE ESTATE'S CASH IS FRAUD PROCEEDS

The Response converts the Fifth Circuit's second decision into an adjudication that every estate dollar is tainted. Dkt. 833 at 3. That is not what either appeal decided. The first appeal vacated the original receivership because it included entities without entity-specific traceability findings and remanded under *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012). *SEC v. Barton*, 79 F.4th 573, 575, 580–81 (5th Cir. 2023). On remand, traceability remained the Commission's burden: it requested 82 entities and the Court included 54. Dkt. 651 at 4, 19. The second decision affirmed findings that each included entity "received or benefited from" traceable assets. *SEC v. Barton*, 135 F.4th 206, 220–24 (5th Cir. 2025). That is a scope determination, not a

finding that present cash—after four years of rents, settlements, and court-approved sales—is fraud proceeds.

The panel confirmed that distinction. It sustained the companion freeze because it gave the SEC and the district court "additional time to trace funds" and existed "to determine which assets are the subject matter of the litigation." Dkt. 651 at 28. A restraint affirmed to permit tracing cannot conclusively establish tracing's result. The Response's "bank robber" footnote does not alter that conclusion; it arose in balancing harms and stated that Mr. Barton's defense costs were "relevant to the receivership." Id. at 29 & n.71. This Motion presents them there. Likewise, the citation to *SEC v. Quinn* regarding "the victims' assets" presupposes that the property has been identified as victims' property. Whether the estate's present cash is such property remains unresolved.

## III. THE BURDEN-SHIFTING CASES REQUIRE A PREDICATE SHOWING ABOUT THE SPECIFIC FUNDS, AND THE RECEIVER'S OWN REPORTS NEGATE THAT PREDICATE

The out-of-circuit district decisions the Response collects, Dkt. 833 at 3 & n.2, all follow the same sequence: the government first makes a preliminary evidentiary showing that the specific assets in question are traceable to fraud, and only then must the defendant show the funds he seeks are untainted. In SEC v. Humphries, the burden shifted because "the SEC met its preliminary showing that the assets in question can be traced to fraud." No showing of that kind exists here as to the estate's liquid funds. What exists is the Receiver's report of "extensive comingling," an accounting "still ongoing," and sample "tracing examples" assembled for a different purpose. Dkt. 838 at 70–71. The Commission's own authority makes the point in precisely this context: in SEC v. FTC Capital Markets, Inc., the court held, "in the context of criminal defense fees," that "the SEC was required to demonstrate the frozen funds were traceable to the fraud." Dkt. 820 at 4 n.2; see Dkt. 824 at 4–5.

That allocation is not a technicality; it is what Luis v. United States, 578 U.S. 5 (2016), makes constitutionally necessary. Luis draws the line between tainted assets, which the government may restrain, and untainted assets needed to retain counsel of choice, which it may not. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989), and United States v. Monsanto, 491 U.S. 600 (1989), involved assets adjudicated forfeitable or restrained on a judicial finding of probable taint, and Kaley v. United States, 571 U.S. 320 (2014), concerned assets a grand jury had found probable cause to forfeit. No tribunal has made any such finding about the receivership's cash. On this record the taint theory is an allegation, and the accounting that could test it is, by the Receiver's own words, incomplete. The Constitution does not permit the government side of a case to leave its tracing unfinished for three and a half years and then treat its own unfinished homework as proof of taint, while a criminal trial approaches on November 2, 2026 and pretrial motions come due on August 24, 2026. Dkt. 831 ¶ 9.

The resulting prejudice is immediate and irreparable. Each day the estate withholds the only available defense funds is a day in which trial counsel cannot be funded, experts cannot be engaged, and the government's multi-terabyte production cannot be reviewed before the August 24 pretrial deadline and November 2 trial. Dkt. 831 ¶¶ 9–12. That lost preparation time cannot be restored after trial. Fundamental due process does not permit an unresolved allegation to become a conclusive finding merely because the Receiver has prolonged the accounting, and the resulting prejudice is not attributable to Mr. Barton.

## IV. MR. BARTON CANNOT BE FAULTED FOR NOT PRODUCING RECORDS THE RECEIVER SEIZED, HOLDS, AND REFUSES TO RETURN

The Response repeatedly faults Mr. Barton for the absence of records: no "specific Receivership funds" identified, no "complete financial disclosure," no "supporting records." Dkt. 833 at 2, 5. The Receiver is the custodian of every record that could make those showings.

His own report states that he "assumed possession of all documents and computers belonging to the Receivership Entities housed in the Turtle Creek Office on the first day of the Receivership." Dkt. 838 at 70. The Receivership Order bars Mr. Barton from the estate's records, and his motion to compel turnover and production of records (Dkts. 810, 814) is pending before this Court — opposed by the Receiver. Dkt. 834. A litigant cannot be defaulted for failing to produce an accounting his adversary holds under lock and key while that same adversary resists returning it.

The "no financial disclosure" assertion fails for a second, independent reason: the disclosure exists, and the Response ignores it. Two days before the Response was filed, Mr. Barton filed a sworn declaration under 28 U.S.C. § 1746 setting out his financial condition in the manner of a CJA Form 23 affidavit: no real property, no brokerage or investment accounts, no vehicle of material value, no salary, draw, or distribution since the receivership began, no third party able and willing to fund the defense, and criminal counsel of record, Richard Roper and Michael Edney, unpaid, with no retainer funded and no substantive trial preparation performed. Dkt. 831 ¶¶ 3–15 (filed July 28, 2026). Both counsel are available for examination by the Court. Id. ¶ 12. The Response, filed July 30, does not mention the declaration. An argument that "the record lacks evidence," Dkt. 833 at 2, sustained only by declining to read the record, is not a reason to deny the Motion.

## V. THE ENTITY-SEPARATENESS ARGUMENT CONTRADICTS THE RECEIVERSHIP'S OWN PREMISE AND PROVES FAR TOO MUCH

The Response's remaining argument is that the assets belong to the Receivership Entities rather than Mr. Barton under Tex. Bus. Orgs. Code § 101.106(b). Dkt. 833 at 2. That rule is unremarkable in isolation but inverts the receivership's premise. The Commission obtained control on the theory that the entities held and moved Mr. Barton's alleged proceeds; the estate is administered as a consolidated fund; its accounting report shows one cash pool; and entity assets

are liquidated for estate obligations and any eventual personal disgorgement award. The Receiver even treats household appliances as estate property because entity funds allegedly paid personal expenses. Dkt. 838 at 66 n.24. Having seized the property as Mr. Barton's alleged ill-gotten wealth, the estate cannot recharacterize it as strangers' money solely to defeat his Sixth Amendment claim. Caplin bars a defendant from spending property that has been established to belong to another. The unresolved question here is whether the estate's present liquid cash—including post-appointment operating income and sale proceeds—has been shown to be wholly third-party property or wholly traceable proceeds. The Receiver cannot avoid that inquiry merely by invoking entity form after administering and seeking to distribute the property on a consolidated remedial theory. The two characterizations cannot both be true. See Dkt. 824 at 6.

## VI. NECESSITY IS ESTABLISHED UNDER THE RECEIVER'S OWN STANDARD, AND DISPUTES ABOUT AMOUNT CALL FOR CONDITIONS, NOT DENIAL

The Response says the Fifth Circuit "places the burden on the defendant seeking frozen assets for fees" to show he cannot pay from other assets, citing Fed. Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 565 (5th Cir. 1987).[2] Taking that framing as given, the showing is made. Mr. Barton's declaration attests, under penalty of perjury, that he has "no other asset, income, credit, or source of funds, inside or outside the United States, available to pay for [his] criminal defense," and that "[t]he only funds in existence that could pay for it are funds the Receiver holds." Dkt. 831 ¶ 15. The declaration also answers the Response's employment point: Mr. Barton's business was his sole livelihood; its entities are all in the estate or under the freeze; and no lawful employment obtainable in the ninety days before trial could pay for the defense of a complex, multi-terabyte federal fraud prosecution. Id. ¶¶ 4–6, 9. The district-court decisions the Response

[2] Dixon predates Luis and addressed fees under a civil asset freeze. Even accepting the Receiver's formulation, the required showing is made here.

cites on employment involved requests for ongoing living expenses, not a trial retainer of this scale on this timetable.

The Response's observation that Mr. Barton "has litigated . . . with experienced counsel for years," Dkt. 833 at 5, mistakes the problem for its refutation. That history is a history of unpaid counsel: Mr. Edney is owed millions and carried the Fifth Circuit appellate work without compensation; no retainer has ever been funded for the criminal trial; and, as a result, no expert has been engaged, no document-review team assembled, and none of the government's multi-terabyte production reviewed. Dkt. 831 ¶¶ 10–12. The declaration further describes how the Receiver's own litigation choices — contempt proceedings against defense counsel and his firm's general counsel, suits against six of Mr. Barton's former lawyers, and pressure on prospective contributors — have dismantled every alternative avenue of funding. Id. ¶¶ 11, 13. Necessity on this record is not merely shown; it has in material part been manufactured by the estate's side of the case.

As to amount, the requested $700,000 is not a generalized draw for living expenses. It is a proposed, court-supervised defense fund for a complex federal fraud trial requiring two counsel, necessary experts, and personnel capable of reviewing a multi-terabyte production on an accelerated schedule. Dkt. 831 ¶¶ 9–12. Mr. Barton has offered disbursement through counsel's trust account or against documented invoices, quarterly reporting, phased payments, and in camera review of an itemized budget and engagement terms. Dkt. 809 at 6, 9–10; Dkt. 824 at 7. The demand for an executed engagement and invoices before funds exist is circular. Any dispute over amount supports conditions, phased release, or a hearing—not denial of counsel.

Nor can the estate's finances justify denial. The Receiver's newest Standardized Fund Accounting Report shows cash of $1,360,751.69 as of June 30, 2026, Dkt. 838 at 102, an increase

of more than $115,000 over the prior quarter, with anticipated Palisades sale proceeds still to come. Dkt. 728 at 74. More than $3.7 million has been disbursed, none to an alleged investor. Dkt. 728 at 74; Dkt. 824 at 8. An estate that has funded every category of professional except the defense of the person whose liberty is at stake is not making an argument from equity. A receivership is a preservation device, and the Fifth Circuit has cautioned that it may not be used to disadvantage the litigant upon whom it was imposed. *Netsphere*, 703 F.3d at 305–11. A phased, documented release subject to invoice approval, periodic reporting, and staged disbursements protects investors at least as rigorously as the estate's professional payments, particularly with additional sale proceeds anticipated. Investor recovery is not advanced by a structurally defective conviction obtained against an unrepresented or unprepared defendant. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006).[3]

## VII. ALTERNATIVE RELIEF

If the Court is not prepared to grant the Motion in full, Mr. Barton renews the alternatives stated in his Reply to the Commission: (1) an evidentiary hearing at which the Receiver and the Commission must come forward with their completed forensic tracing as to the estate's liquid funds; (2) a phased release, with an initial retainer disbursement and the balance paid against invoices; (3) in camera review of the proposed defense budget and engagement terms; or (4) an order directing the Receiver to complete and file, by a date certain, the forensic accounting of the estate's cash, with the Motion carried in the interim. Dkt. 824 at 9–10. Each alternative preserves every legitimate interest the Response identifies. Only outright denial extinguishes the constitutional one.

[3] The Motion seeks funds for a federal criminal defense, not counsel in this civil case; the right to criminal counsel of choice applies. Gonzalez-Lopez, 548 U.S. at 144.

## CONCLUSION AND PRAYER

The Constitution does not require a criminal defendant to prove innocence before retaining counsel of choice, nor may the estate postpone tracing and invoke its own unfinished work to deny the means of defense. The Receiver's opposition asks the Court to deem untraced funds conclusively tainted, convert a scope ruling into a merits adjudication, disregard a sworn financial declaration, and fault Mr. Barton for records the Receiver seized. For these reasons and those stated in the Motion (Dkt. 809) and prior Reply (Dkt. 824), Mr. Barton respectfully requests that the Court grant the Motion, order release of not less than $700,000 from unrestricted estate funds under the proposed conditions, or grant the alternative relief above and all other relief to which he is entitled.

Dated: August 3, 2026

Respectfully submitted,

*/s/ Timothy L. Barton*

**Timothy L. Barton, Pro Se**
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me
*Defendant, appearing pro se*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.