**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**TIMOTHY L. BARTON, et al.,**<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 3:22-CV-2118-X** |

**<u>DEFENDANT TIMOTHY L. BARTON'S REPLY TO THE RECEIVER'S RESPONSE (DKT. 837) IN SUPPORT OF HIS MOTION TO RECONSIDER (DKT. 812) THE COURT'S JUNE 9, 2026 ORDER (DKT. 755), OR ALTERNATIVELY TO STAY ITS EFFECT</u>**

TO THE HONORABLE BRANTLEY STARR,
UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton replies in support of his Motion to Reconsider (Dkt. 812) the Court's June 9, 2026 Order (Dkt. 755) and to the Receiver's opposition (Dkt. 837).[1]

The Receiver's three-page Response does not defend the June 9 Order, address Rule 54(b), answer the mistaken-premise argument, address the requested Texas Property Code process, or identify why no effectual relief remains. Instead, it predicts that the Court will deny two other motions and then asks the Court to declare this Motion moot. Dkt. 837 at 1-3. That is not mootness. It is a request to decide the merits in the Receiver's preferred sequence - the very sequencing problem Dkt. 812 asks the Court to correct.

## I. THE RESPONSE CONCEDES THAT DKT. 812 IS NOT MOOT NOW

The Receiver's formulation supplies the answer: "Once the Court denies Dkts. 786 and 809," Dkt. 812 "will therefore present no live issue." Dkt. 837 at 2 (emphasis added). A motion is not moot because an opponent expects the Court to reject related requests in the future.

[1] This Reply is timely under Local Rule 7.1(f) and requires no leave because the Court's June 5, 2026 Order exempts replies filed under Local Rule 7.1(e)-(f). Dkt. 747 (PageID 22232).

Mootness exists only when it is impossible for the Court to grant any effectual relief. Chafin v. Chafin, 568 U.S. 165, 172 (2013). The Receiver's prediction that Mr. Barton will lose the related motions addresses the merits, not Article III mootness. See id. at 174. Even when the preferred remedy is unavailable, a controversy remains live if the Court can fashion "some form of meaningful relief." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12-13 (1992).

Effectual relief is available here. The Court can reconsider the portion of Dkt. 755 that treated the Preservation Motion as nonexistent; determine the proper sequence for Dkts. 786, 809, and 812; provide the evidentiary process requested concerning the notices of lis pendens; preserve identifiable sale proceeds pending tracing; require a sworn closing certification and accounting for Rock Creek; and prevent the same problem from recurring at Frisco Gate and under the Court's July 8, 2026 directive concerning additional free-and-clear sales. Dkt. 792. Because the Court can grant each of those forms of relief, Dkt. 812 is not moot.

The Response therefore does not present a jurisdictional objection. It asks the Court to deny Dkts. 786 and 809 on the merits first and then use those denials to avoid deciding Dkt. 812. But Dkt. 812 explains why the order of decision matters: if title transfers and proceeds are pooled before the preservation and untainted-equity questions are adjudicated, the Receiver can manufacture the practical mootness he later invokes. The Court should decide Dkt. 812 on its own record, not dismiss it based on a forecast of rulings that have not occurred.

## II. INCORPORATION BY REFERENCE DOES NOT ANSWER THE DISTINCT GROUNDS FOR RECONSIDERATION

Dkt. 812 is not merely a placeholder for Dkts. 786 and 809. It challenges the reasoning and procedure of Dkt. 755 itself. It argues that the June 9 Order declined sequencing on the mistaken premise that no Preservation Motion was or could be before the Court; that the defect in the original filing was curable and was cured when counsel withdrew and the motion was renewed; that the Court had approved certain sales on an understanding about the timing of

closings; that irreversible transfers could defeat meaningful review; and that, at minimum, the lis-pendens issue should be considered on a developed record under Texas Property Code § 12.0071. Dkt. 812 at 2-6.

The Response answers none of those points. It does not mention Rule 54(b), under which an interlocutory order may be revised at any time and the Court may reconsider “for any reason it deems sufficient.” Austin v. Kroger Tex., L.P., 864 F.3d 326, 336 (5th Cir. 2017). It does not address the June 9 Order’s stated premise, the curative refiling, the requested evidentiary procedure, or the Court’s ability to preserve proceeds and supervise later sales. Its incorporation of responses to Dkts. 786 and 809 cannot supply arguments those responses did not make about Dkt. 755.

Nor is “rehash” a substitute for analysis. Dkt. 812 necessarily overlaps with the motions whose destruction by premature closing it sought to prevent. Overlap proves the sequencing issue; it does not eliminate it. The Receiver cannot first insist that the motions are related, then demand that the Court decide the derivative motions first, and finally claim the sequencing motion disappeared because the sequence he requested produced the result he predicted.

## III. THE RECEIVER’S SAME-DAY STATUS REPORT SUPPLIES THE MATERIAL CHANGES HIS RESPONSE SAYS DO NOT EXIST

Dkt. 837 asserts, through incorporation, that Mr. Barton identified “no material change warranting reconsideration.” Dkt. 837 at 2. The Receiver’s Sixteenth Quarterly Status Report, filed the same day, proves the opposite. It discloses that Rock Creek did not close on the transaction economics presented when the sale was approved. The property sold on June 25, 2026 for $1,400,000, but principal and note-rate interest had grown to $1,454,785.10. Dkt. 838 at 33. The Receiver negotiated a discounted lender payoff of $1,215,198 and renegotiated broker commissions at closing, leaving only $61,836.12 for the estate. Id. at 33-34.

Those are material changes, not clerical details. The sale approval was entered years earlier on a record involving a different debt balance, anticipated closing date, and expected economics. The Report also admits "numerous extensions" of the closing date and years of rental occupancy before closing. Id. at 32. Yet the operative contract, extensions, amendments, assignment documents, final settlement statement, and sworn certification of conformity with Dkt. 437 and 28 U.S.C. § 2001(b) have not been filed. The Report narrates selected figures; it does not provide the closing file that permits judicial verification.

The result confirms the harm Dkt. 812 identified. The Court was asked on June 3 to preserve the status quo. Dkt. 745. That filing was struck for a representation-status issue rather than adjudicated on the merits. Dkt. 746. The Receiver obtained Dkt. 755 on June 9; Rock Creek closed June 25; and the renewed reconsideration motion did not reach the docket until July 9 after the leave process. Dkts. 799, 812. The Receiver now relies on the completed closing to argue mootness. A procedural sequence that prevents adjudication before closing and then invokes the closing as a reason not to adjudicate is a circumstance the Court may correct under Rule 54(b)'s flexible reconsideration standard. See Austin, 864 F.3d at 336.

The Report also does not allocate the legal and professional expense incurred in obtaining repeated Rock Creek sale approvals, litigating title issues, and responding to the associated motions and appeals. The estate's true net recovery cannot be evaluated by citing the $61,836.12 cash remainder while omitting transaction-specific administrative expense. That omission reinforces the need for a sworn, property-level accounting rather than dismissal as moot.

## IV. ROCK CREEK'S CLOSING DOES NOT ELIMINATE EFFECTUAL RELIEF

The Court cannot now restore possession of Rock Creek through a pre-closing stay, but that does not moot the Motion. The Court can still order production of the operative agreement and all extensions, amendments, and assignments; require the final closing statement; direct a sworn certification that the transaction conformed to the Second Rock Creek Sale Order; identify

every closing disbursement and its authority; identify the account holding the $61,836.12 net proceeds; and preserve those proceeds as the substitute res pending completion of tracing and further order.

The inability to restore the original status quo does not moot a dispute where the Court can still grant meaningful relief. See Church of Scientology, 506 U.S. at 12-13. In applying the collateral-order doctrine, the Fifth Circuit recognized that a receivership distribution may become effectively unreviewable when assets are distributed and likely unrecoverable before final review. SEC v. Forex Asset Mgmt. LLC, 242 F.3d 325, 330 (5th Cir. 2001). That practical danger supports preserving identifiable proceeds while the pending ownership, tracing, and defense-funding issues are adjudicated.

The Receiver's position would create a perverse rule: the faster an officer of the Court completes a disputed transfer before a preservation motion is heard, the stronger the argument that judicial review should never occur. Equity does not reward that sequence. The appropriate response to a completed closing is tailored post-closing relief and protection of proceeds, not erasure of the dispute.

## V. FRISCO GATE AND DKT. 792 KEEP THE PRESERVATION QUESTION PRESENTLY LIVE

Even on the Receiver's own record, Frisco Gate has not closed. Dkt. 838 at 37-38. The Report identifies unresolved parking issues, continuing lender negotiations, substantial accrued interest and taxes, and an estimated net recovery of approximately $900,000 if the transaction were to close on the Report's current assumptions. Id. Those facts present exactly the current-terms, current-value, and current-authority questions raised in Dkts. 786, 808, and 812.

The Court's July 8 directive makes the issue broader, not narrower. Dkt. 792 directs the Receiver to solicit lender proposals for Receivership Properties and states that, absent workable proposals, the Court will instruct free-and-clear sales and later determine competing claims,

liens, and interests against proceeds. That sequence makes segregation, entity-level attribution, and a reviewable record essential. If title is transferred first and proceeds are pooled or spent before tracing and priority are resolved, the substitute res may be lost in the same way Dkt. 812 warned.

Thus, even if the Court were to deny release of defense funds from a particular account or deny some aspect of Dkt. 786, the Court still must decide whether disputed property-level proceeds will be identifiable, segregated, and preserved. The Receiver's proposed all-or-nothing mootness ruling would leave that independent question unanswered while liquidation accelerates.

## VI. THE LUIS AND TRACING QUESTIONS CANNOT BE ELIMINATED BY ASSUMPTION

Dkt. 837 reduces Luis to the assertion that Mr. Barton has no right to use property "owned by Receivership Entities." Dkt. 837 at 2. Luis holds that the Government may not restrain before trial a criminal defendant's own legitimate, untainted assets needed to retain counsel of choice. Luis v. United States, 578 U.S. 5, 12 (2016) (plurality opinion); id. at 25 (Thomas, J., concurring in the judgment). Whether the proceeds at issue satisfy the predicates of ownership, lack of taint, and necessity remains disputed. The receivership exists because the Commission and Receiver allege that entity assets are Mr. Barton's traceable fraud proceeds and may be liquidated toward estate obligations and potential personal relief. They cannot treat the same assets as his alleged proceeds for seizure and disposition, but as wholly unrelated third-party property only when he invokes the Sixth Amendment.

More importantly for Dkt. 812, the Receiver's same-day Report states that the forensic accounting "is still ongoing," that the accountants "still have not completed" it, and that the work proceeded in a "very limited fashion." Dkt. 838 at 69-71. Selected tracing examples used to support entity inclusion are not a completed segregation of tainted and untainted current cash.

Because ownership, taint, and necessity remain unresolved, the preservation question precedes the final Luis determination: the Court should preserve identifiable property-level proceeds pending tracing and adjudication rather than permit them to be converted, commingled, and disbursed in a manner that makes the constitutional issue impossible to decide.

A denial of Dkt. 809 would determine, at most, that the requested release was not warranted on the present record. It would not establish that every dollar of every property's proceeds is tainted, adjudicate final ownership, or authorize destruction of the evidence and substitute res needed for later review. The Response's premise improperly converts a possible denial of immediate relief into a final merits adjudication that no court has made.

## VII. THE LIS-PENDENS PROCEDURE REMAINS AN INDEPENDENT BASIS FOR RELIEF

Dkt. 812 alternatively asks the Court to revisit the procedure by which the four notices were declared void and to consider the issue on a developed record under Texas Property Code § 12.0071. The statute authorizes evidence and declarations with a motion, permits oral testimony and discovery, and directs the court to rule on the affidavits, counteraffidavits, and other proof allowed. Tex. Prop. Code § 12.0071(a)-(b), (e). Dkt. 837 does not address that request at all.

Mr. Barton does not ask the Court in this Reply to declare the notices valid as a matter of law. He asks that the validity and effect of title-related notices not be resolved through a compressed process divorced from the preservation, ownership, tracing, and current-transaction record. The Court's discretion under Rule 54(b) is broad enough to correct the sequence, receive evidence, clarify the scope of Dkt. 755, and prevent the voiding order from being treated as an adjudication of the underlying ownership or taint questions.

That relief remains meaningful even after Rock Creek closed because Dkt. 755 addressed four notices and because the Court's ruling may be invoked in connection with other properties, sanctions, and future transfers. The Receiver's pending sanctions request arising from the same

notices further confirms that the controversy and its collateral consequences remain live. Dkt. 838 at 32.

**VIII. THE RECEIVER'S DELAY ACCUSATION DOES NOT ANSWER THE MOTION**

The Response states that Mr. Barton's "own litigation conduct contributed to the delay." Dkt. 837 at 2. It identifies no particular act, supplies no legal standard, and does not explain how that assertion defeats Rule 54(b), mootness, Luis, or the requested evidentiary process. Appeals and motions authorized by law are not misconduct merely because the Receiver opposed them; no court has found the relevant appeals frivolous or sanctioned Mr. Barton for filing them.

The complete sequence is also more complicated than the Response suggests. The Receiver waited approximately twenty-two months after the July 31, 2024 notices before seeking emergency relief on June 3, 2026. Dkt. 754 at 2-6. Mr. Barton sought preservation the same day. Dkt. 745. The preservation filing was struck for a curable representation-status issue, while the Receiver's title-clearing motion proceeded on an expedited schedule. Dkts. 743, 746, 755. Once Mr. Barton was permitted to proceed pro se, the leave requirement delayed entry of the renewed motions. The Receiver cannot isolate only the delay he attributes to appeals while ignoring his own twenty-two-month wait, repeated contract extensions, and the procedural gatekeeping that prevented a merits ruling before June 25.

**CONCLUSION AND PRAYER**

Dkt. 837 does not establish mootness and does not answer the grounds for reconsidering Dkt. 755. It predicts future merits rulings, incorporates arguments directed to different motions, and overlooks the Receiver's own same-day disclosures: materially changed Rock Creek economics, a $61,836.12 net recovery, an unclosed and materially evolving Frisco Gate transaction, and forensic tracing that remains incomplete.

Mr. Barton respectfully requests that the Court grant Dkt. 812. Alternatively, he requests that the Court:

1. Hold that Dkt. 812 is not moot and decide it under Rule 54(b) on its own grounds;
2. Reconsider or clarify Dkt. 755 to the extent it treated the Preservation Motion as nonexistent, resolved the notices in isolation from the preservation and tracing questions, or could be read as adjudicating ownership or taint;
3. Require the Receiver to file the Rock Creek operative contract, extensions, amendments, assignments, final settlement statement, and a sworn closing certification and property-level accounting, in camera or under seal if appropriate;
4. Direct that the $61,836.12 Rock Creek net proceeds, and the net proceeds of Frisco Gate and any similar sale, remain segregated and identifiable by property and entity pending completion of tracing and further order;
5. Before any Frisco Gate closing, require current transaction documents, lender terms, a sworn certification of conformity with the operative sale authority, and reasonable advance notice to the Court and parties;
6. Set the lis-pendens issue for an evidentiary proceeding consistent with Texas Property Code § 12.0071, or permit supplemental affidavits and proof; and
7. Grant such other and further relief as is just and proper.

Dated: August 3, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***

**Timothy L. Barton, Pro Se**
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me
Defendant, appearing pro se

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed through the Court's electronic-filing system, which will serve all counsel of record.