**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| Plaintiff, | § | |
| v. | § | **Civil Action No. 3:22-CV-2118-X** |
| **TIMOTHY L. BARTON, et al.,** | § | |
| Defendants, | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| Relief Defendants. | § | |

**DEFENDANT TIMOTHY L. BARTON'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL TURNOVER AND PRODUCTION OF RECORDS [DKTS. 810, 814] AND RESPONSE TO THE REQUESTS FOR AFFIRMATIVE RELIEF IN THE RECEIVER'S VERIFIED RESPONSE [DKT. 834]**

TO THE HONORABLE BRANTLEY STARR,

UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton files this Reply in support of his Motion to Compel Turnover and Production of Records [Dkt. 810] and in response to the Receiver's Verified Response [Dkt. 834].[1]

[1] This reply is directed to the Receiver's Verified Response [Dkt. 834], filed July 30, 2026, and is timely under Local Rule 7.1(f). No leave is required. Dkt. 747 (leave requirement "shall not apply to responses and replies filed pursuant to L.R. 7.1(e),(f)"). Mr. Barton agrees with the Receiver that Dkt. 814 is a duplicate docketing of Dkt. 810; references herein are to Dkt. 810. Contemporaneously with this reply, Mr. Barton moves for leave to file a short reply appendix containing the parties' July 30, 2026 email exchange, which post-dates the last email in the Receiver's appendix and answers a factual assertion first made in the verified Response.

## I. ENTITLEMENT IS CONCEDED; WHAT REMAINS IS AN ORDER WITH A SCHEDULE

The Response opens by conceding the substance of the Motion: the Receiver "does not oppose and has never withheld access to any of the records Barton seeks," and "[t]he only dispute is about how the requested information should be provided to Barton and who should pay." Dkt. 834 at 1. The Receiver's IT vendor is imaging the email accounts and the seized devices now, and the approximately 315 boxes of paper files remain warehoused, unused, where they have sat since October 2022. *Id.* at 1, 4–5; Dkt. 835, APP009. On the Receiver's own account, then, nothing about entitlement is contested. The dispute has narrowed to four things: a schedule, confirmation of scope, the disposition of records the Receiver has held for nearly four years without using them, and costs.

That narrowing is a reason to grant the Motion, not to deny it as moot. A responding party's mid-litigation undertaking to provide the relief sought does not moot the request for an order compelling it; "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," and the party invoking mootness "bears the formidable burden" of showing the dispute cannot recur. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The Receiver's undertakings are prospective, informal, and hedged with "minor conditions," Dkt. 834 at 3, and the operative deadline is not the Receiver's: pretrial motions in the parallel criminal case are due August 24, 2026, and trial is set for November 2, 2026. Dkt. 810 at 2, 6. An order that fixes dates protects both sides and gives the vendor's work the Court's imprimatur. Mr. Barton asks the Court to grant the Motion and embody the agreed mechanics in an enforceable schedule, set out in Part VI below. Finally, shortly before this filing, the Receiver's counsel sent a further email concerning delivery of the imaged materials. Mr. Barton acknowledges that correspondence, and it changes nothing: a promise to deliver "right away" is precisely the prospective, informal undertaking that *Already* holds insufficient to moot the need for an order, and only deadlines fixed by the Court protect the August 24 pretrial-motions date.

## II. TWO OF THE MOTION'S THREE CATEGORIES ARE UNADDRESSED, AND THEREFORE UNOPPOSED

The Motion sought three distinct forms of relief: turnover of the records of the non-receivership entities frozen under Dkt. 418; return of Mr. Barton's personal and tax records; and a defense copy of the receivership's own records. Dkt. 810 at 4–6. The Response addresses only the third. It says nothing at all about Mr. Barton's personal books, tax records, bank records, and effects seized on October 18, 2022, and it engages the Dkt. 418 entities only obliquely, by conceding that the paper records "were generally commingled between the various entities, irrespective of whether they are currently Receivership Entities or former receivership entities." Dkt. 834 at 5.

That concession confirms the problem rather than answering it. "A court lacks jurisdiction to impose a receivership over property that is not the subject of an underlying claim or controversy." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012), quoted in *SEC v. Barton*, 79 F.4th 573, 580 (5th Cir. 2023). The Dkt. 418 entities were deliberately excluded from the receivership, and Mr. Barton's personal papers were never receivership property. Commingling within the Receiver's boxes is not a mandate to retain those records by default; it is the reason the Motion proposed an identification process. Dkt. 810 at 5. That identification imposes no burden. Because the paper files should be returned in their entirety, see Part III below, the personal and Dkt. 418-entity records among them come home with the boxes, and any such records identified within the imaged email and device data should be logged and routed for return under the Motion's neutral process, with any disputed item noted for the Court. Because the Response offers no argument against this relief, it should be granted as unopposed. And after nearly four years in which the Receiver has neither used these records nor answered for them, the relief should take the form of return, not supervised inspection: records that never belonged to the Receivership Estate should go back to their owners.

## III. THE PAPER DOCUMENTS SHOULD BE RETURNED: FOUR YEARS OF CUSTODY WITHOUT USE DEFEATS THE BURDEN NARRATIVE AND ANY BASIS FOR CONTINUED RETENTION

The verified Response states categorically that as to the roughly 300 boxes, "no detailed index of that kind exists." Dkt. 834 at 5. The Receiver's own appendix, filed the same day, records his counsel's statement that same morning: "As to the paper documents, we had an associate do the privilege review. She has been on maternity leave and comes back next week. I believe that she may have an index, but I will not know until next week." Dkt. 835, APP009. The Court need not resolve that tension. It need only order the Receiver to confirm, within seven days, whether any index, inventory, collection log, or review work product describing the boxes exists, and to produce any box-level index to Mr. Barton. If none exists, the confirmation costs a sentence. If one exists, it will save both sides the very expense the Response says it wants to avoid.

The same appendix undercuts the burden narrative in a second way. An estate associate has already performed a document-level privilege review of the paper files. *Id.* The page-by-page effort the Response describes as intolerable, Dkt. 834 at 5, has in material part already been performed and paid for by the estate. And the six-figure scanning quotes that occupy the Response, *id.*, answer a request no one presses: Mr. Barton does not ask the Court to order wholesale digitization of 315 boxes, and he no longer asks to inspect them in the Receiver's warehouse. He asks that the boxes be returned. The Receiver took custody of these records in October 2022. In the nearly four years since, the record discloses no use of them beyond the single privilege review noted above: no claim asserted from them, no production made from them, no administration performed with them. A receiver holds records in order to use them for the estate; custody is not an end in itself. Where four years pass without use, continued retention serves no receivership purpose, while the deprivation continues to burden the defense of a criminal case with pretrial motions due August 24, 2026 and trial set for November 2, 2026. To the extent Mr. Barton's July 29 correspondence explored the Receiver's standing offer of onsite review, Dkt. 835, APP010, that exploration assumed the Receiver had some continuing need for the originals; the Response reveals none. Requiring Mr. Barton (whose funds remain frozen, Dkt. 809) to spend his own time and money paging through 315 boxes under supervision would invert the equities: the party that seized the records and has never used them would keep the originals, while their owner paid for

the privilege of visiting them. The proportionate remedy is return. The Receiver should deliver the boxes to Mr. Barton or his designee, retaining at estate expense copies of any documents he certifies are needed for ongoing administration, with any index produced alongside.

## IV. DEVICES: THE CREDENTIAL POINT IS ANSWERED, AND IMAGES TRANSFER NOTHING THAT REQUIRES TRUST

The Response tells the Court that "[i]t is unclear whether Barton has access to these access credentials" and that the Receiver "cannot simply trust" him. Dkt. 834 at 4. Mr. Barton answered that question in writing on the morning of July 30: he has no passwords, keys, or codes for any seized device, and knows of no one who does. That exchange post-dates the last email in the Receiver's appendix and is the subject of the accompanying motion for leave to file a reply appendix. Mr. Barton does not oppose the order the Receiver requests on this point. He is willing to certify under penalty of perjury that he possesses no access credentials and to turn over promptly any credential he later locates or recalls, and the order proposed below includes exactly that.

The distrust theme also misunderstands the request. Mr. Barton asked that the vendor deliver each forensic image as captured, bit for bit, with acquisition and verification hash values and the image format identified. Dkt. 835, APP010. An encrypted image delivered in that form is the same sealed box the Receiver holds; the Receiver's vendor cannot open it either, because, as the Receiver's counsel wrote, "we do not have administrative passwords or bit-locker keys for any devices that were encrypted." Dkt. 835, APP011. Nothing about that transfer depends on trusting anyone. The hash values let both sides verify integrity, and the estate's own vendor estimated the entire imaging effort at "less than ten hours," with drives the vendor does "not estimate . . . to be expensive." Dkt. 835, APP009. Mr. Barton has offered to supply the blank drives himself. Dkt. 835, APP010.

## V. THE REIMBURSEMENT DEMAND IS PROCEDURALLY IMPROPER AND INEQUITABLE

The Response asks the Court to order Mr. Barton to "reimburse the Receivership Estate for all costs incurred related to Barton's requests." Dkt. 834 at 6. A request for a court order must be made by motion, not folded into a response brief. Fed. R. Civ. P. 7(b)(1). The demand is not

properly before the Court, and Mr. Barton reserves all responses should it ever be presented by motion.

It would fail on the merits in any event. The Fifth Circuit's receivership jurisprudence treats the receivership fund as the ordinary source for expenses the receivership itself generates: "charging the current receivership fund for reasonable receivership expenses . . . is an equitable solution." *Netsphere*, 703 F.3d at 312–14. The district court's discretion over such allocations is broad. *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 370 (5th Cir. 1982) ("[t]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership"). The copying costs here exist only because the Receiver holds custody of records seized from Mr. Barton and his entities. They are receivership expenses in the most literal sense. They are also expenses of the Receiver's own making: he has held these records for nearly four years without using them, and the only effect of that custody to date has been to keep Mr. Barton's own files out of his hands while the parallel prosecution advanced. Having neither used the records nor returned them, the estate cannot now bill their owner for their release. On the Receiver's own numbers they are also modest: less than ten hours of vendor time, plus drives Mr. Barton will supply. Dkt. 835, APP009–010. An estate that reports $130,837.20 in expenses for the one quarter alone, Dkt. 838 at 76, is not visibly imperiled by a half-week of vendor time.

The equities run the other way. Every dollar and every document Mr. Barton would use was frozen or seized at the request of the government's civil enforcement arm, and his motion for release of funds for his criminal defense remains pending. Dkt. 809. He needs these records to meet an August 24, 2026 pretrial-motions deadline in the parallel prosecution. Parallel civil and criminal proceedings are permissible only so long as they involve no "departure from proper standards in the administration of justice." *United States v. Kordel*, 397 U.S. 1, 11 (1970). Conditioning a defendant's copy of his own seized records on his payment to the entity that seized them, while he is barred from his funds and facing trial on the same subject matter, sits uneasily with that standard. As for the Response's account of the 2022–2023 credential disputes, Dkt. 834 at 3, the Court can note two things from the Receiver's own filings: access to the email accounts came from Mr. Barton in the spring of 2023, Dkt. 834 at 1 ("the email accounts that Barton himself provided access to in the spring of 2023"), and the Receiver has "not undergone the expense of a privilege review (or accessed the emails)" since. Dkt. 835, APP009. Whatever friction attended

the receivership's early months, it does not bear on who pays for copies in 2026 of records the Receiver concedes Mr. Barton is entitled to review.

## VI. THE ORDER THE COURT SHOULD ENTER

Mr. Barton respectfully requests that the Court grant the Motion and order: (1) as to the email accounts, that within seven days the Receiver deliver complete copies of all accounts imaged in Spring 2023, in native format with metadata intact, on drives supplied by Mr. Barton, and state whether any server, mirror, or cloud-hosted repository of the email data remains in the custody of the estate or its vendors, and, as to any cloud-hosted repository of the email data that the estate has never accessed, transfer control of that repository to Mr. Barton; (2) as to the seized devices, that within seven days the Receiver deliver each forensic image as captured, with acquisition and verification hash values and image format, together with the vendor's inventory of imaged devices (description, identifier if recorded, acquisition date, format, and approximate size); (3) that Mr. Barton certify under penalty of perjury, within seven days, that he possesses no access credentials for the seized devices and will promptly turn over any credential he later locates, the relief the Receiver himself requests; (4) as to the paper documents, that within seven days the Receiver confirm whether any index, inventory, collection log, or review work product describing the boxes exists and produce any box-level index, and that within fourteen days the Receiver deliver the approximately 315 boxes of paper documents to Mr. Barton or his designee, the Receiver retaining at estate expense copies of any documents he certifies are needed for the ongoing administration of the estate; (5) that Mr. Barton's personal and tax records, and the records of non-receivership entities listed in Dkt. 418, be returned to him in all events, and that any such records identified within the imaged data be logged and returned through the Motion's neutral process, with disputed items noted for the Court; (6) that within fourteen days the Receiver identify any additional categories of documents, devices, or data in the possession of the estate or its vendors, including mobile extractions, external drives, cloud-hosted repositories, backup media, and materials received from third parties, consistent with counsel's commitment "to getting you whatever we have," Dkt. 835, APP009; (7) that upon completion the Receiver certify that all responsive records in his possession, custody, or control have been identified; and (8) that the reasonable costs of imaging and copying be borne by the Receivership Estate as ordinary receivership expenses, with

Mr. Barton supplying the storage media, and that the Receiver's request that Mr. Barton reimburse the estate be denied. A proposed order accompanies this reply.

Dated: August 4, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***

**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no separate certificate of service is necessary because this document is being filed with the Court's electronic-filing system, which will serve all counsel of record.

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se