**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| ***Plaintiff,*** | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| ***Defendants,*** | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| ***Relief Defendants.*** | § | |

**APPENDIX IN SUPPORT OF RECEIVER'S VERIFIED MOTION TO RATIFY SETTLEMENT AGREEMENT WITH SOUTHERN PROPERTIES CAPITAL, LTD.**

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
James F. Hopper
Texas Bar No. 24116535
jimmy@brownfoxlaw.com
BROWN FOX PLLC
2699 Howell St., Suite 500
Dallas, TX 75204
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

| EXHIBIT | DESCRIPTION | APP PAGES |
|---|---|---|
| A | Declaration of Cortney C. Thomas | APP001-003 |
| A-1 | Settlement Agreement | APP004-018 |

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** | § | |
| *Defendants.* | § | |

**DECLARATION OF CORTNEY C. THOMAS**
**IN SUPPORT OF MOTION TO RATIFY SETTLEMENT AGREEMENT**

1. My name is Cortney C. Thomas. I have personal knowledge of the matters set forth in this Declaration, I am of sound mind, and I am otherwise competent to testify to these matters.

2. I am an attorney licensed to practice law in the State of Texas. I serve as the Receiver appointed in the case referenced above.

3. In connection with a global settlement with Southern Properties Capital, Ltd., ("SPC"), on August 18, 2026, I entered into a Settlement and Release Agreement ("Settlement Agreement") with Southern Properties Capital, Ltd. in the amount of $12,000,000.

4. A copy of the global Settlement Agreement is attached as Exhibit A-1. *App*. pp. 004-018.

5. With the exception of the provisions related to D4OP, the settlement does not include the sale of real estate. Although not required by the Court's Order Governing the Administration of the Estate,[1] in an abundance of caution, the parties nonetheless have sought ratification of the global settlement and through separate motions, also demonstrate that each

[1] Dkt. 63.

component transfer contemplated by the Settlement Agreement satisfies 28 U.S.C. § 2001 (the "Statute").

6. Neither SPC nor any of its affiliates are related to or controlled by any of the parties to this lawsuit, and are not related to, nor controlled by me, or any of my agents, employees, or attorneys.

I declare under penalty of perjury that the foregoing is true and correct.

August 24, 2026.

*/s/ Cortney C. Thomas*
CORTNEY C. THOMAS

# EXHIBIT A-1

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement (the "**Settlement Agreement**") is made and entered into this 18th day of August, 2026, by and between Southern Properties Capital, Ltd. (along with its Permitted Assigns) ("**SPC**") and Cort Thomas in his role as court-appointed receiver on behalf of the Receivership Entities[1] (the "**Receiver**" and together with SPC the "**Parties**") in *Securities and Exchange Commission v. Timothy Barton et. al.*, Case No. 3:22-cv-2118-X (the "**Receivership Case**"), pending before Judge Starr in the United States District Court for the Northern District of Texas, Dallas Division (the "**Court**").

## RECITALS

**WHEREAS**, Timothy Barton ("**Barton**") created separate "D4" entities: D4DS, LLC, D4FR, LLC, D4IN, LLC and D4OP, LLC (collectively the "**D4 Entities**");

**WHEREAS**, the D4 Entities borrowed money (the "**HUD Loans**") from the United States Department of Housing and Urban Development ("**HUD**") to purchase the real estate and begin development of the following apartment complexes: Bellwether Ridge in DeSoto, Texas ("**Bellwether Ridge**"), the Parc at Windmill Farms in Forney, Texas ("**Windmill Farms**"), the Parc at Ingleside near Corpus Christi, Texas ("**Ingleside**"), and the Parc at Opelika in Opelika, Alabama ("**Opelika**") (individually, a "**D4 Property**" or a "**Complex,**" and collectively, the "**D4 Properties**" or the "**Complexes**");

**WHEREAS**, the deed for Bellwether Ridge reflects D4DS, LLC as the record owner, which in turn has the following ownership structure: JMJD4, LLC (98.5%), JMJAV, LLC (1%), and N.E. Construction, LLP (0.5%);

**WHEREAS**, the deed for Windmill Farms reflects D4FR, LLC as the record owner, which in turn has the following ownership structure: JMJD4, LLC (98.5%), JMJAV, LLC (1%), and N.E. Construction, LLP (0.5%);

**WHEREAS**, the deed for Ingleside reflects D4IN, LLC as the record owner, which in turn has the following ownership structure: JMJD4, LLC (98.75%), JMJAV, LLC (1%), and AXIA Contracting, LLC (0.25%);

**WHEREAS**, the deed for Opelika reflects D4OP, LLC as the record owner, which in turn has the following ownership structure: D4OPM, LLC (98.75%), ONE MF D4, LLC (1%), and Bakken Contracting Co. LLC dba BC Contracting Co. (0.25%);

**WHEREAS**, SPC and certain Barton-controlled entities, including the entities referenced above that own the vast majority of the membership interests in the D4 Entities, entered into Promissory Notes, Pledge and Security Agreements and other loan documents related to each of the Complexes (collectively, the "**SPC Loan Documents**"), pursuant to which SPC loaned money to those entities for the purpose of purchasing the land and developing and constructing the Complexes (the "**SPC Debt**"). Furthermore, pursuant to the SPC Loan Documents, SPC was

[1] "**Receivership Entities**" includes all entities subject to administration in the Receivership Case including, but not limited to, those entities identified in the Order Appointing Receiver [Dkt. 417].

assigned the right to convert the SPC Debt on Bellwether Ridge, Windmill Farms, and Ingleside into membership interests in the D4 Entities that held the legal title to the Complexes upon written notice from SPC (the "**Conversion Rights**"), and that the membership interests of D4OPM, LLC and ONE MF D4, LLC in D4OP, LLC (totaling 99.75%) shall be assigned to SPC, upon written notice from SPC (the "**Assignment Rights**");

**WHEREAS**, on or about October 3, 2022, SPC sent notice of its intent to exercise the Conversion Rights in the SPC Loan Documents for the Bellwether Ridge, Windmill Farms, and Ingleside Complexes, and has since indicated it intended to exercise its Assignment Rights for the Opelika Complex but–for a court-ordered stay;

**WHEREAS**, on October 18, 2022, the Court entered an Order Appointing Receiver [Dkt. 29] in the Receivership Case, pursuant to which the Receiver was appointed as Receiver over each of the D4 Entities and each of the Barton entities that own the membership interests in the D4 Entities (the "**Initial Receivership Order**");

**WHEREAS**, on February 22, 2023, the Receiver filed a motion to approve the sale of two of the D4 Properties, Bellwether Ridge and Windmill Farms (Dkts. 161, 164), seeking authorization to sell those Complexes free and clear of any claim by SPC, arguing that SPC was entitled to receive reimbursement for the SPC Debt only as an investor or creditor to the extent of any unpaid loans or fees owed to it by any Receivership Entities;

**WHEREAS**, SPC responded by filing a Complaint in Intervention [Dkt. 184] (the "**Motion to Intervene**"), which the Court stayed pending completion of a "summary proceeding" [Dkt. 217];

**WHEREAS**, on April 13, 2023, the Receiver filed a Motion for Summary Judgment Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Properties ("**Receiver's Motion for Summary Judgment**") [Dkt. 207], in response to which SPC filed a lengthy Response [Dkt. 247] (the "**SPC Response**"), all of which the Court stayed along with all related deadlines after the Fifth Circuit vacated the Initial Receivership Order, and then dismissed without prejudice all other pending motions, including SPC's Motion to Intervene [Dkt. 306];

**WHEREAS**, after the Fifth Circuit remanded the case for further proceedings, on September 7, 2023, the SEC filed its Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose [Dkt. 309] (the "**Second Motion to Appoint Receiver**")

**WHEREAS**, on October 2, 2023, SPC filed a Motion for Intervention and a response in opposition to SEC's Second Motion to Appoint Receiver [Dkt. 327];

**WHEREAS**, the Court denied without prejudice SPC's Motion for Intervention and ordered that SPC may refile its motion after the Court resolved the SEC's Second Motion to Appoint Receiver [Dkt. 343];

**WHEREAS**, on November 29, 2023, the District Court entered its (1) Memorandum Opinion and Order [Dkt. 416], which granted the SEC's Second Motion to Appoint Receiver as to

54 of the 82 entities included in the motion; (2) an Order Appointing Receiver (the "**Second Receivership Order**") [Dkt. 417], which re-appointed the Receiver over each of the D4 Entities and all of the Barton entities that own the membership interests in each of the D4 Entities, except for the Barton entities that own the membership interests in D4OP, LLC;

**WHEREAS**, the Fifth Circuit Court of Appeals affirmed the Second Receivership Order on April 17, 2025 and subsequently denied a Motion for Rehearing;

**WHEREAS**, on October 14, 2025, Barton filed a Petition for a Writ of Certiorari with the U.S. Supreme Court in connection with the Fifth's Circuit affirmance of the Second Receivership Order (the "**Petition for Writ**"), which was denied by the U.S. Supreme Court on March 20, 2026;

**WHEREAS**, the Receiver contends that SPC has not effectively exercised its Conversion Rights or Assignment Rights, and therefore, SPC is not entitled to extract the D4 Properties from the Receivership;

**WHEREAS**, SPC disputes the contention that it has not effectively exercised its Conversion Rights and the Receiver's characterization of SPC as a mere lender or investor, and asserts that it is the equitable owner of the D4 Entities and/or the Complexes, having provided the land on which the Complexes were built and substantial funding for the projects and managed their development, construction and operations;

**WHEREAS**, SPC contends that none of the D4 Entities should have been included as Receivership Entities because it asserts (1) the D4 Entities have only a tangential connection to Barton; (2) very little, if any, investor funds are directly traced into the D4 Entities; and, (3) the investor funds were not used to develop, construct, or operate the D4 Properties;

**WHEREAS**, SPC also asserts (1) that it exercised its Conversion Right for three of the four Complexes before the Receiver was appointed, and argues that the Receiver is disregarding SPC's ownership rights, and that the Receiver's proposed sales would cause significant and irreparable harm to SPC because real property is inherently unique; (2) that SPC does not want to sell the Complexes it claims to have developed; (3) that SPC is entitled to specific performance of its Conversion Rights and Assignment Rights; and (4) that mere economic damages are not adequate to compensate SPC for its interests in such real property;

**WHEREAS**, SPC further claims that it is an innocent third party, not involved in the alleged fraudulent scheme conducted by Timothy Barton, and has received no payments from Barton, and that SPC's business model with respect to the D4 Properties was legitimate because SPC and Barton's original intent was for SPC to manage construction during project development and provide property management once leased, SPC was transparent in SEC and state-level filings, which disclosed SPC's intent to convert the debt to equity, and SPC was fully compliant with HUD regulations, which do not prohibit developers from agreeing to the sale of HUD-financed projects;

**WHEREAS**, the Receiver disputes each of SPC's arguments and contentions, and asserts among other arguments, that for a variety of reasons, all Pledge and Security Agreements are executory and can therefore be rejected by the Receiver, that SPC has unclean hands with regard to the transactions at issue, and that SPC should be treated as a creditor with respect to each of the Complexes;

**WHEREAS,** the Parties recognize that litigation to fully and finally resolve the claims and contentions of each will take many years, cost both sides a significant amount in attorney's fees, and result in continuing risk and uncertainty for both Parties and the Complexes and their management, all in the context of an uncertain real estate market;

**WHEREAS,** the Parties stipulate that Bellwether Ridge is currently worth approximately $27,283,333.33,[2] has an outstanding HUD Loan balance of approximately $16,979,078.75, and has an outstanding SPC Loan balance of $4,587,193.66, including accrued interest, as of June 30, 2026;

**WHEREAS,** the Parties stipulate that Parc at Windmill Farms is currently worth approximately $51,833,333.33,[3] has an outstanding HUD Loan balance of approximately $33,534,994.15, and has an outstanding SPC Loan balance of $9,809,312.03, including accrued interest, as of June 30, 2026;

**WHEREAS,** the Parties stipulate that Parc at Ingleside is currently worth approximately $27,250,000.00,[4] has an outstanding HUD Loan balance of approximately $23,708,803.94, and has an outstanding SPC Loan balance of $4,872,181.43, including accrued interest, as of June 30, 2026;

**WHEREAS,** the Parties stipulate that Parc at Opelika is currently worth approximately $32,070,000.00,[5] has an outstanding HUD Loan balance of approximately $21,879,316.64, and has an outstanding SPC Loan balance of $4,783,527.98, including accrued interest, as of June 30, 2026;[6]

**WHEREAS,** as of June 30, 2026, Sunridge Management Group, Inc. (the "**Property Manager**") controls the following bank accounts at Huntington Bank in the name of the D4 Entities (collectively, the "**Property Management Accounts**"):

- Bellwether – D4DS
  x9784 operating
  x9797 security deposit
  x3165 interest

- Parc at Windmill – D4FR
  x9483 operating

[2] The estimate of value for Bellwether Ridge is the average between the Broker Opinion of Value ("BOV") of National Valuation Consultants, Inc. ("NVC") ($28,000,000), Integra Realty Resources ("IRR") ($23,300,000), and Walker & Dunlop's Strike Price ($30,550,000).
[3] The estimate of value for Parc at Windmill Farms is the average between the BOV of NVC ($49,500,000), IRR ($48,200,000), and Walker & Dunlop's Strike Price ($57,800,000).
[4] The estimate of value for Parc at Ingleside is the average between the BOV of NVC ($25,000,000), IRR ($24,500,000), and Walker & Dunlop's Strike Price ($32,250,000).
[5] The estimate of value for Parc at Opelika is the average between the BOV of NVC ($31,000,000), IRR ($32,360,000), and Walker & Dunlop's Strike Price ($32,850,000).
[6] The Receiver received other BOVs for the D4 Properties in the initial months of the Receivership Case; however, the estimates of value for the D4 Properties provided herein are limited to the averages of the three most recent BOVs provided to the Receiver.

x9496 security deposit
x3136 interest

- Parc at Ingleside – D4IN
  x9810 operating
  x9836 security deposit
  x3178 interest

- Parc At Opelika – D4OP
  x0398 operating
  x0408 security deposit
  x3110 interest

**WHEREAS**, as of June 30, 2026, the Receiver controls the following bank account at Huntington Bank in the name of D4OP, LLC (the "**Receiver Account**"):

- D4OP LLC in Receivership (x7315);

**WHEREAS**, the Parties also dispute ownership of the Property Management Accounts and the Receiver Account;

**WHEREAS**, on September 4, 2025, the Parties mediated their disputes in good faith before retired United States Bankruptcy Judge Harlin Hale (the "**Mediation**") and reached an agreement in principle, subject to final documentation of the agreement that is set forth herein. During the Mediation, the Parties, with the assistance of Judge Hale, negotiated extensively at arm's length and in good faith and now desire to enter into this Settlement Agreement to fully resolve and settle all disputes and issues between the Parties regarding the D4 Properties, D4 Entities, HUD Loans, the Pledge and Security Agreements, the Conversion Rights, and the Assignment Rights, all claims and causes of action that could be asserted by SPC against the Receiver and Receivership Entities, and all claims and causes of action that could be asserted by the Receiver and Receivership Entities against SPC;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to Court Ratification (defined below), the Parties agree as follows:

1. Incorporation of Recitals. The above recitals are incorporated into and made a substantive part of this Settlement Agreement.

**Payments by SPC**

2. Settlement Payment. SPC shall pay to the Receiver $12,000,000 in full and final settlement of any and all claims between the Parties (the "**Settlement Payment**") pursuant to the terms of this Settlement Agreement, payable as follows:

a. Within seven (7) days of the satisfaction of the Condition Precedent set forth in paragraph 6(a) below, SPC shall make a one-time payment of $9,175,912.39 to a separate interest-bearing account held by the Receiver (the "**Escrow Payment**"), which is the total of the allocable share of the Settlement Payment attributable to Transfer of Interests pursuant to the MPAs for D4DS LLC, D4FR LLC and D4IN LLC referenced in Paragraph 3.[7] Such Escrow Payment shall be held in escrow by the Receiver until thirty (30) days after satisfaction of the Conditions Precedent in paragraph 6(a) and (b). In the event orders which satisfy the Conditions Precedent in paragraphs 6(a) and (b) are entered on different dates, the thirty days shall run from the date of the last order entered.

b. The remaining $2,824,087.61 of the Settlement Payment (the "**Additional Escrow Payment**") shall be paid in accordance with paragraph 6 below as part of the purchase price for the sale of Opelika to SPC.

**Transfer of Interests in D4DS, D4FR, and D4IN**

3. Transfer of Membership Interests. Within fourteen (14) days after the satisfaction or written waiver of the Conditions Precedent set forth in paragraphs 6(a), (b), and (c) below, the Receiver shall transfer to SPC all membership interests held by the Receiver in D4DS LLC (totaling 99.5% of membership interests), D4FR LLC (totaling 99.5% of membership interests), and D4IN LLC (totaling 99.75% of membership interests), pursuant to Membership Purchase Agreements (the "**MPAs**") in the form attached hereto as **Exhibits A, B and C,** or substantially similar agreements if modifications are necessary, respectively (the "**Transfer of Interests**").

**Sale and Transfer of Opelika Property**

4. Within fourteen (14) days after the satisfaction of the Conditions Precedent in paragraphs 6(a), (b) and (d) below, the Receiver shall sell the Opelika Property to SPC (the "Opelika Sale") pursuant to the Purchase and Sale Agreement (the "**PSA**") attached hereto as **Exhibit D,** or a substantially similar agreement if modifications are necessary.

5. Purchase Price, Closing and Transfer of Opelika Property to SPC. Within seven (7) days of the satisfaction of the Conditions Precedent in paragraphs 6(a) and (b), SPC shall deposit the Additional Escrow Payment in a separate interest-bearing account held by the Receiver. Such funds shall be held in escrow by the Receiver until thirty (30) days after satisfaction of the Conditions Precedent in paragraph 6(a) and (b). In the event orders which satisfy the Conditions Precedent in paragraphs 6(a) and (b) are entered on different dates, the thirty days shall run from the date of the last order entered.

[7] $2,353,645.97 of the Escrow Payment is attributable to the MPA for D4DS LLC, $4,471,496.01 of the Escrow Payment is attributable to the MPA for D4FR LLC, and $2,350,770.41 of the Escrow Payment is attributable to the MPA for D4IN LLC.

**Conditions Precedent**

6. Conditions Precedent. The Parties agree that the obligations set forth in this Settlement Agreement and Release are subject to and conditioned upon the foregoing, all of which are collectively referred to as the "**Conditions Precedent**":

a. Court Ratification of Settlement Agreement. At the request of SPC and not based on any requirements under the Second Receivership Order or otherwise, the Settlement Agreement is subject to ratification by the Receivership Court ("**Court Ratification**"). Within fourteen (14) days of execution of this Agreement, the Receiver shall file a motion in the Receivership Case seeking ratification of this Settlement Agreement. If Court Ratification of this Settlement Agreement does not occur within 60 days of filing the Motion to Ratify Settlement and Lift Stay, this Agreement shall be null and void, unless otherwise agreed to in writing by the Parties.

b. Court Approval of MPAs under 28 U.S.C. § 2001. Concurrently with the Motion to Ratify the Settlement and Lift Stay, the Receiver shall file separate Motions for Appointment of Appraisers, Approval of Appraisals, Setting of Approval Hearing, and Approval of Sale for each Transfer of Interests and the Opelika Sale (individually a "**Motion for Approval of Sale**" and together the "**Motions for Approval of Sales**"), for the consideration and on the terms set forth in the MPAs and PSA attached hereto as **Exhibits A, B, C and D**. The purchase price for the Receiver's transfer of interests in D4DS, LLC to SPC (the "**D4DS, LLC Transfer**") is $23,919,918.38 (the "D4DS, LLC Transfer Price"), which consists of the HUD loan balance, the SPC loan balance and $2,353,645.97 of the Settlement Payment; the purchase price for the Receiver's transfer of interests in D4FR, LLC to SPC (the "**D4FR, LLC Transfer**") is $47,815,802.19 (the "**D4FR, LLC Transfer Price**"), which consists of the HUD loan balance, the SPC loan balance, and $4,471,496.01 of the Settlement Payment; the purchase price for the Receiver's transfer of interests in D4IN, LLC to SPC (the "**D4IN, LLC Transfer**") is $30,931,755.78 (the "**D4IN, LLC Transfer Price**"), which consists of the HUD loan balance, the SPC loan balance and $2,350,770.41 of the Settlement Payment; and the purchase price for the Receiver's sale of Opelika to SPC (the "**Opelika Sale**") is $29,486,932.23 (the "**Opelika Sales Price**"), which consists of the HUD loan balance, the SPC loan balance, and $2,824,087.61 of the Settlement Payment. The Motions for Approval of the Sales shall provide that the Sales are **not** free and clear of all liens and interests. To the contrary, the Transfer of Interests and the Opelika Sale are expressly subject to the HUD Loans, SPC's Conversion Rights and Assignment Rights, SPC's Debt, SPC's ownership claims, and any UCC liens. Therefore, any purported "bona fide" purchaser offering to pay more than 10 percent of the total consideration set forth in the MPAs and the PSA in accordance with 28 U.S.C. § 2001 shall make any such offer expressly subject to SPC's Conversion Rights, Assignment Rights, and ownership claims with respect to the Interests and the Opelika Property. The Parties agree that a Motion for Approval of the Sale is only necessary for the Opelika Sale, but not

the Transfer of Interests, because membership interests are personal property not subject to 28 U.S.C § 2001. Rather, the Receiver's sale of personal property is governed by 28 U.S.C. § 2004 and the Court's Order Granting Motion for Order Governing Administration of Receivership Estate, Etc., [Dkt. 63]. However, the Parties agree to file Motions for Approval of Sales related to the Transfer of Interests out of an abundance of caution and to avoid any uncertainty or delays. In the event the Court does not grant any of the Motions for Approval of the Sale, SPC at its sole option, may elect to sever and terminate the rights and obligations with respect to such Sale (including the obligation to make the Additional Escrow Payment portion of the Settlement Payment set forth in paragraph 2(b) above if the Motion for Approval of the Opelika Sale is not approved) and consummate the remaining terms of the Settlement Agreement and Sales that have been approved by the Court. In the event a Motion for Sale is denied with respect to any of the Interests or the Opelika Property is not approved by the Court, the portion of the Escrow Payment or the Additional Escrow Payment, as applicable, attributable to the Interests or the Opelika Property for which court approval was denied, shall be returned to SPC.

c. <u>HUD Approval and Transfer of Interests (D4DS, D4FR, and D4IN).</u> Except as provided below regarding payment of the HUD Loans by SPC, the closing and transactions under the MPAs attached hereto as **Exhibits A, B,** and **C,** are subject to final approval of the transfer and assumption of the HUD-based mortgage loans on the Properties titled in the name of D4DS, D4FR and D4IN. Within sixty (60) days after entry of orders approving each respective Motion for Approval of Sale under each MPA (individually a "Sale Approval Order"), SPC shall submit a preliminary HUD approval package to Greystone Funding, LLC ("Greystone"), which is the initial step required to begin the process of seeking approval from HUD ("**HUD Approval**") for a Transfer of Physical Assets ("**TPA**") for Bellwether Ridge, Windmill Farms, and Ingleside. The Receiver shall provide reasonable cooperation and assistance to SPC and Greystone during the TPA process. The TPA application fee and all related costs (including, but not limited to, assumption-related inspections, reports, repair costs, and assumption fees) shall be borne by SPC. In the event HUD Approval is conditioned upon certain undertakings that the Receiver is unable or unwilling to perform, provided that such refusal by the Receiver is not unreasonable, or in the event HUD does not approve the TPA application, within 30 days of HUD's notification that it will not approve the TPA application or, if earlier, within 30 days after the expiration of the HUD Approval Period, at closing, SPC shall pay off the applicable HUD Loan(s) (the "**HUD Payoff**"). Any dispute over the reasonableness of the Receiver's refusal to perform in order to allow for assumption of the HUD Loans shall be resolved through mediation with former Bankruptcy Judge Hale, consistent with Section 24 below. For each respective Sale, SPC shall have twelve (12) months following Greystone's approval and submission of the request for HUD

Approval of the TPA to HUD to obtain HUD Approval of each respective Sale that is the subject of this subparagraph (c) (the "HUD Approval Period").

d. HUD Approval and Transfer of Physical Assets (Opelika Property). Except as provided below regarding payment of the HUD Loans by SPC, the Closing and funding of the Opelika Sale pursuant to the PSA attached hereto as **Exhibit D** is also subject to final approval of the transfer and assumption of the HUD-based mortgage loan on the Opelika Property by SPC (**"Opelika HUD Approval"**). Within sixty (60) days after entry by the Court of an order approving the Opelika Sale (the "Opelika **Sale Approval Order**"), SPC shall submit a preliminary HUD approval package to Greystone Funding, LLC ("Greystone"), which is the initial step required to begin the process of seeking approval from HUD ("**HUD Approval**") for a Transfer of Physical Assets ("**TPA**") for Opelika. The Receiver shall provide reasonable cooperation and assistance to SPC and Greystone during the TPA process. The TPA application fee and all related costs (including, but not limited to, assumption-related inspections, reports, repair costs, and assumption fees) shall be borne by SPC. In the event HUD Approval is conditioned upon certain undertakings that the Receiver is unable or unwilling to perform, provided that such refusal by the Receiver is not unreasonable, or in the event HUD does not approve the TPA application, within 30 days of HUD's notification that it will not approve the TPA application or, if earlier, within 30 days after the expiration of the HUD Approval Period, at closing SPC shall pay off the HUD Loan for Opelika (the "**Opelika Payoff**"). Any dispute over the reasonableness of the Receiver's refusal to perform in order to allow for assumption of the HUD Loans shall be resolved through mediation with former Bankruptcy Judge Hale, consistent with Section 24 below. SPC shall have twelve (12) months following Greystone's approval and submission of the request for HUD Approval of the TPA to HUD to obtain the Opelika HUD Approval.

**Additional Provisions**

7. Funds Held in Property Bank Accounts. The Parties agree that in connection with the Transfer of Interests, the Receiver releases any claim to any funds held in Property Management Accounts for the Bellwether Ridge, Windmill Farms and Ingleside Properties, and such Property Management Accounts shall be owned solely by the entities whose Interests are being transferred pursuant to the MPAs attached hereto as **Exhibits A, B and C**. The Parties also agree that in connection with the Opelika Sale, the Receiver releases any claim to any funds held in the Property Management Accounts for the Opelika Property, and shall cooperate with SPC in confirming ownership of such funds by SPC identified in **Exhibit D** contemporaneously with the closing of the Opelika Sale. For the avoidance of doubt, any funds held in the Receiver Account shall be retained by the Receiver and distributed to the Receivership as an excess cash payment within five (5) days of the Parties' execution of this Settlement Agreement.

8. SPC's Settlement Obligations. As provided above, the Parties agree that in consideration for entry into this Settlement Agreement, SPC shall make the Settlement Payment and shall make commercially reasonable efforts to receive HUD Approval. SPC shall also

cooperate with the Receiver to obtain Court Ratification and comply with 28 U.S.C. § 2001 or other applicable statutes and any relevant orders.

9. Receiver's Settlement Obligations. As provided above, the Receiver shall file and use best efforts to obtain Court Ratification of the Motion to Approve Settlement, and Court approval of the Motions for Approval of the Sale of the Complexes. The Receiver shall also cooperate with SPC in the effort to obtain HUD Approvals for the Transfer of Interests and Opelika Sale.

10. Release by the Receiver. Upon execution of the Settlement Agreement, Court Ratification, SPC's payment of the Settlement Amount, and the Receiver's Transfer of Interests, the Receiver, on behalf of himself and all Receivership Entities, including their respective officers, directors, employees, equity holders, affiliates, subsidiaries, parents, predecessors-in-interest, successors-in-interest, assigns, transferees, agents or other representatives or any other party claiming by, through or under the Receivership Entities (the "**Receivership Parties**"), hereby forever irrevocably releases, acquits and discharges SPC and its respective officers, directors, equity holders, affiliates, predecessors-in-interest, successors-in-interests, assigns, transferees, employees, agents, and representatives (collectively, the "**SPC Parties**"), from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies, whether known or unknown now or in the future regarding or relating to the D4 Properties, D4 Entities, HUD Loans, the Pledge and Security Agreements, the other loan documents related to the SPC Debt or any other issues in dispute between the Receiver and SPC, including but not limited to the claims and issues contained in the Receiver's Motion for Summary Judgment, SPC's Response, and SPC's Motion to Intervene; provided, however, this release shall not release any claims related to the obligations of the Parties under this Settlement Agreement.

11. Release by SPC. Upon execution of the Settlement Agreement, Court Ratification, SPC's payment of the Settlement Amount, and the Receiver's Transfer of Interests, SPC, on behalf of itself and the SPC Parties, hereby forever irrevocably releases, acquits and forever discharges the Receiver and the Receivership Parties, from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies whether known or unknown, now or in the future, regarding or relating to the D4 Properties, D4 Entities, HUD Loans, the Pledge and Security Agreements, the other loan documents related to the SPC Debt or any other issues in dispute between the Receiver and SPC, including but not limited to the claims and issues contained in the Receiver's Motion for Summary Judgment, SPC's Response, and SPC's Motion to Intervene; provided, however, this release shall not release any claims related to the obligations of the Parties under this Settlement Agreement.

12. Expenses. Each Party shall bear its own attorney's fees and costs in connection with the negotiation, execution, effectuation and approval of this Settlement Agreement.

13. Cooperation. The Parties agree to cooperate in good faith to effectuate the terms and conditions of this Settlement Agreement. The Parties shall take all necessary actions to receive the necessary approvals and prepare all documents necessary to achieve the foregoing, including through any litigation, appeals, or similar legal challenges to ratification or approval of the transactions contemplated by this Settlement Agreement.

14. Entire Agreement. This Settlement Agreement constitutes the entire agreement between the Parties hereto and supersedes and replaces all prior negotiations, proposed or actual agreement or agreements, written or oral, of any nature or substance relative thereto. Neither Party is relying and hereby disclaims reliance on any other representation, omission, or document not expressly contained in this Agreement.

15. Binding Effect. This Settlement Agreement shall be binding on any successors or assigns of the Parties hereto.

16. Representation by Counsel. The Parties acknowledge and understand that they are executing and delivering this Settlement Agreement with full knowledge of any and all rights which they may have with respect to the claims herein settled and released. Each acknowledges that it was represented by and consulted with an attorney of its own choosing before executing and delivering this Settlement Agreement to review this document and the claims being settled and released, and that they had a reasonable and sufficient opportunity to do so.

17. Notices. Unless otherwise specifically provided herein, any notice delivered under this Settlement Agreement shall be in writing addressed to the respective Party as set forth below and may be (a) personally served, (b) sent by overnight courier service or certified or registered United States mail, or (c) transmitted by e-mail, and shall be deemed to have been given (x) if delivered in person, when delivered, (y) if delivered by e-mail, on the date of transmission if transmitted on a business day before 5:00 p.m. (Central time) or, if not, on the next succeeding business day, and (z) if delivered by courier or certified or registered United States mail, when received. Notices shall be addressed as follows:

If to Receiver:

Cort C. Thomas
Brown Fox PLLC
2699 Howell St., Suite 500
Dallas, TX 75204
E-mail: cort@brownfoxlaw.com

With a copy to:

Charlene C. Koonce
James F. Hopper
Brown Fox PLLC
2699 Howell St., Suite 500
Dallas, TX 75204E-mail: charlene@brownfoxlaw.com
E-mail: jimmy@brownfoxlaw.com

If to SPC:

Erik Johnson, President
Southern Properties Capital, Ltd.
Transcontinental Realty Investors, Inc.
American Realty Investors, Inc. and

Pillar Income Asset Management, Inc.
1603 LBJ Freeway, Suite 800
Dallas, Texas 75234
Email: Erik.Johnson@pillarincome.com

With a copy to:

Mitchell Madden
Holmgren Johnson: Mitchell Madden, LLP
12801 N. Central Expressway, Suite 140
Dallas, Texas 75243
(972) 484-7780
Email: mmadden@thelomm.com
Assistant: Shawnte Kinney
Email: skinney@thelomm.com

Douglas J. Buncher
Ferguson Braswell Fraser Kubasta, PC
2500 Dallas Parkway, Suite 600
Plano, Texas 75093
Email: dbuncher@fbfk.law

18. Counterparts. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Settlement Agreement shall be final and binding upon execution and delivery of the Settlement Agreement by the Parties. The Parties agree that copies of this Settlement Agreement shall have the same effect and may be accepted with the same authority as the original and that this Settlement Agreement may be executed electronically and in counterparts.

19. Authority. The Parties represent that, subject to Court Ratification, they have the legal right and authority required to compromise and settle all claims under the terms and conditions set forth herein. The Parties also represent that the signatures on behalf of the Parties, or their counsel, to this Settlement Agreement is sufficient, without further approval of third parties, other than Court Ratification, to fully bind such party to the terms hereof, including without limitation, each of the payment obligations and releases set forth herein.

20. Amendments. This Settlement Agreement may only be amended, modified, or supplemented by a separate written document duly executed by authorized representatives of the Parties or their legal successors in interest.

21. Severability. If any provision of this Settlement Agreement shall be held to be invalid or unenforceable, the validity or enforceability of the remaining provisions shall not in any way be affected or impaired thereby, but rather this Settlement Agreement shall be construed as if not containing the invalid or unenforceable provision. However, if such provision is an essential element of this Settlement Agreement, such as the release provisions, then the Parties shall promptly attempt in good faith to negotiate a suitable replacement provision.

22. Jurisdiction and Governing Law. The Parties agree that the Court shall retain exclusive personal and subject matter jurisdiction to enforce the terms of this Settlement Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Settlement Agreement, or any breach of default hereunder. The Parties agree that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law, and expressly waive any requirement that separate notice be provided before pursuing such judgment. This Settlement Agreement shall be construed in accordance with and governed by the laws of the State of Texas (excluding the laws applicable to conflicts or choice of law).

23. Permitted Assignee. The Receiver acknowledges and agrees that SPC will assign its rights hereunder to enter into and consummate the Purchase and Sale Agreements which are contemplated by this Agreement to Affiliated Single Purpose Entities.

24. Mediation of Disputes. The Partes agree that they will submit any dispute between them arising out of the terms or performance of this Settlement Agreement to former Bankruptcy Judge Hale for mediation. In the event the Parties are unable to resolve such dispute at mediation, the Parties recognize the Court's continuing jurisdiction over this Agreement, the Complexes, all Receivership Entities and Receivership Properties, subject to and without waiver of SPC's contention in the event that this Settlement Agreement is not approved, that the D4 Entities and Complexes should not have been placed into the Receivership.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the Parties have executed this instrument on the dates indicated below.

***Executed on this 19th day of August, 2026***

CORT THOMAS, AS COURT APPOINTED RECEIVER
FOR D4DS, LLC, D4FR, LLC, D4IN, LLC, D4OP, LLC,
JMJD4, LLC, AND JMJAV, LLC

By: ______________________, Receiver
Title: Receiver

***Executed on this ____ day of August, 2026***

SOUTHERN PROPERTIES CAPITAL, LTD.

By: ______________________
Erik Johnson, President