**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON,** | § | |
| | § | |
| *Defendants* | § | |
| . | | |

**RECEIVER'S VERIFIED MOTION FOR APPOINTMENT OF APPRAISERS, APPROVAL OF APPRAISALS, APPROVAL HEARING, AND APPROVAL OF THE SALE OF THE PROPERTY KNOWN AS THE "PARC AT OPELIKA"**

Cort Thomas, as the court appointed Receiver, respectfully moves the Court as follows: [1]

## I. SUMMARY

As more fully articulated in the SPC Ratification Motion, the Receiver and SPC have reached a global settlement of all their disputes concerning the four D4 Properties (defined below), including SPC's claims that it is the rightful owner of the D4 Properties. This Sale Motion is being filed to comply with the Court's Order Appointing Receiver (the "Receivership Order") and 28 U.S.C. § 2001 (the "Statute"), and the Receiver requests appointment of three appraisers, approval of the appraisals, a hearing regarding approval of the sale of certain property, and, ultimately, the approval of the sale discussed below.

## II. FACTUAL BACKGROUND

### A. The Receivership Order and the Property.

1. On October 18, 2022, the Court entered an Order Appointing Receiver (the "Initial Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities owned or controlled by Defendant Barton (the "Receivership Entities"). The Court directed the Receiver to take possession and control of all Receivership Assets, "[t]he assets of the[] Receivership Entities," and Receivership Records. Receivership Order ¶¶ 6, 16, 17.

2. Following the Fifth Circuit's vacatur and remand of the Initial Receivership Order, this Court entered a second Order Appointing Receiver, which again directed the Receiver to

[1] Concurrently with filing this Motion (the "Opelika Sale Motion"), the Receiver is also filing (1) his Verified Motion to Ratify Settlement Agreement with Southern Properties Capital, Ltd. (the "SPC Ratification Motion"); (2) Motion for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Transfer of Windmill (the "Windmill Farms Transfer Motion"); (3) Motion for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Transfer of Parc at Ingleside (the "Ingleside Transfer Motion"); and (4) Motion for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Transfer of Bellwether Ridge (the "Bellwether Transfer Motion"). The Ratification Motion, Windmill Transfer Motion, Ingleside Transfer Motion, and Bellwether Transfer Motion are each hereby incorporated by reference as if fully set forth herein.

assume possession and control over a more limited set of Receivership Entities and all Receivership Assets. Dkt. 417, ¶¶ 1-2. The Court entered a third Order Appointing Receiver on June 23, 2025. Dkt. 650.[2]

3. On November 16, 2022, the Court entered the Order Governing the Administration of the Receivership ("Administrative Order") which established procedures for sales of real property in conformity with the Statute.[3]

4. Various "D4 Entities" are identified as Receivership Entities, and with minor exceptions not relevant to this motion, the parent entities of each D4 Entity is also a Receivership Entity. Each D4 Entity is the record owner of realty on which an apartment complex is located. More specifically, D4DS, LLC owns Bellwether Ridge, which is located in DeSoto Texas; D4FR, LLC owns the Parc at Windmill Farms, located in Forney, Texas; D4IN, LLC owns the Parc at Ingleside located in Corpus Christi, Texas; and D4OP, LLC owns the Parc at Opelika, located in Alabama.[4]

5. D4OP is the owner of the Parc at Opelika—a 168-unit apartment complex located at 1375 McCoy Street, Opelika, Alabama (the "Property"). D4OP is also the borrower on a HUD loan (the "HUD Loan") serviced by Greystone Servicing Corporation, Inc. ("Greystone"). The HUD Loan matures on November 1, 2062 and accrues interest at 2.99% annually. As of June 30, 2026, the balance on the HUD Loan was $21,879,316.64. Defendant Timothy Barton is listed as the "Section 50 Signatory" to the HUD Loan and associated Regulatory Agreement, and signed

---

[2] The Order entered at Dkt. 650 modified the order entered at Dkt. 417 only with regard to requiring Defendant Barton to obtain leave of court before filing any further bar grievances. The order entered at Dkt. 650 was also subject to an interlocutory appeal, which was dismissed by the Fifth Circuit on May 18, 2026. *See* Dkt. 649, and Appeal No. 25-10871. Collectively, Dkt. 417 and 650 are referenced above as the "Receivership Order."

[3] In connection with issuance of the Receivership Order, the Court ratified the Administrative Order. Dkt. 419.

[4] These entities are collectively referenced as the "D4 Entities."

the promissory note for the HUD Loan and all associated contract documents as the President of D4OP.

**B. The Southern Properties' Loan and Conversion Rights.**

6. Separately, but in connection with D4OP's purchase of the real estate on which the Parc at Opelika was constructed, D4OP's parent entities executed a promissory note (the "Note") for $5,129,000.00 with Southern Properties Capital, LTD ("Southern Properties"). The debt created by the Note is referenced below as the "SPC Debt." Southern Properties has represented that the purpose of this loan was to provide additional capital to D4OP in connection with the construction of the Property. As of June 30, 2026, an affiliate of Southern Properties claims that the balance of the Note is $4,783,527.98.

7. As evidenced through various motions filed by the Receiver and Southern Properties,[5] the primary dispute between Southern Properties and the Receiver centers upon a series of different agreements Barton and various Receivership Entities entered into with SPC. With respect to D4OP, Southern Properties asserts the relevant agreements entitle it to assignment of 99.75% of the membership interests in the "record owner of the Property," D4OP, and upon such assignment, the SPC Debt would be cancelled and Southern Properties would own D4OP and the Property (hereafter, the "Conversion Rights").

**C. The PSA and Settlement Agreement.**

8. While the Receiver disputes the validity of SPC's ownership claims, as articulated more fully in the Motion to Ratify, the Receiver strongly believes that it is in the best interest of the Receivership to resolve the SPC dispute now. Accordingly, the Receiver and SPC entered into

[5] *See e.g.*, Dkt. Nos. 206, 207, 208-1–208-5 (MSJ, supporting brief and evidence); Dkt. Nos. 254, 247-253 (Response and supporting brief and evidence) and Dkt. 215, 226, 233 and 234 (motion to strike and related briefing).

a Settlement Agreement, which was submitted for ratification concurrently with this Motion. The Receiver also entered into Member Purchase Agreements (the "MPAs") related to three of the D4 Entities, and a Purchase and Sale Agreement (the "PSA") regarding the Property.[6] The sale of the Property contemplated by the Settlement Agreement and the PSA related to D4OP at issue here is made specifically subject to SPC's continuing Conversion Rights. In other words, any competing bid made in compliance with the Statute will be subject to SPC's contractual rights to convert its debt into equity and thereby claim ownership of the subject Property, including for purposes of this Motion, the Parc at Opelika.

**D. Payment Required of SPC**

9. The transaction contemplated by the MPA is not contingent on a due diligence period. Indeed, SPC has agreed to enter the MPA with no diligence period at all. Within seven (7) days of Court ratification of the Settlement Agreement and Court approval of the sale contemplated by the PSA as requested in this motion,[7] SPC will make a one-time payment of $2,824,087.61 to a separate interest-bearing account held by the Receiver (the "**Escrow Payment**"), which is the total of the allocable share of the Settlement Payment attributable to the sale of the Property. The Receiver will hold the Escrow Payment until thirty (30) days after satisfaction of certain Conditions Precedent.

10. The Escrow Payment, together with the SPC Debt and HUD Debt totals $29,486,932.23 (the "**Contract Price**").

[6] The Settlement Agreement is attached as **Exhibit A-1** (APP005-019). The PSA related to the transfer of interests in D4OP, LLC is attached as **Exhibit A-2** (APP020-038).

[7] Ratification of the Settlement Agreement and approval of the sale of the Opelika Property are collectively referenced below as the "Conditions Precedent."

**D. Transfer of Interest in the Record Owner of the Property.**

11. Pursuant to the PSA, within fourteen (14) days after the satisfaction of the Conditions Precedent, the Receiver will sell the Parc at Opelika to SPC. In consideration of the sale, SPC waives and releases any entitlement to recover on the SPC Debt, as well as releasing any other claim or entitlement asserted against any Receivership Entity or the Receiver. In the event a third-party submits a competing bid as contemplated by the Statute, SPC's release would not apply, and thus any third-party purchaser would potentially acquire the Property at issue subject to the SPC Debt, as well as SPC's Conversion Rights.

## III. ARGUMENT AND AUTHORITIES

**A. Legal Standard**

Pursuant to the Statute, the Court may order the sale of real property via private sale "if it finds that the best interests of the estate will be conserved thereby." 28 U.S.C. § 2001(b). Before the confirmation of any private sale, (1) "the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities[, and] [n]o private sale shall be confirmed at a price less than two-thirds of the appraised value;" (2) "the terms [of the sale] shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation" and a hearing held, "of which notice to all interested parties shall be given by publication or otherwise as the court directs;" and (3) "[t]he private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 percent increase over the price offered in the private sale." *Id*.

**B. The Court Should Appoint The Identified Appraisers and Accept Their Appraisals.**

In accordance with this Court's Orders and the Statute, the Receiver obtained three independent appraisals of the Property. Two are certified appraisals, and one is an informal broker opinion of value (collectively, the "Appraisals").[8] True and correct copies of the three appraisals are included in the Appendix as **Exhibits A-3**, **A-4**, and **A-5** (APP039-263, APP264-404, and APP405-437). The Receiver requests that the Court appoint the appraisers for the purpose of providing the attached Appraisals and accept these three appraisals as required by the Statute.

The three Appraisals value the Property at $32,360,000,[9] $31,000,000,[10] $32,850,000[11] resulting in an average appraised value of $32,070,000.[12] Thus, the settlement value for the sale of the Property, $29,486,932.23[13] exceeds two-thirds of the average appraised value of the Property as required by 28 U.S.C. § 2001(b). As outlined below, the Receiver contends the proposed sale of the Property both satisfies the two-thirds threshold and as will be further explained at a hearing, is in the best interest of the receivership.

[8] As permitted by the Court's Administration Order, to minimize expenses, the Receiver is using one informal opinion of value as an appraisal due to the cost of a certified appraisal on commercial property. Dkt. 63 at 9 ("Similarly, the Receiver may in his discretion utilize informal "opinions of value" received from respected brokers in the respective industries related to the subject property, as one or more of the "appraisals" required by § 2001(b).")

[9] The appraisal was issued by Stone Berger and Jimmy H. Jackson of Integra Realty Resources ("IRR") and is dated as of December 11, 2025. *App.* pp.039-263.

[10] The appraisal was issued by National Valuation Consultants, Inc. ("NVC") on or around November 26, 2025. *App.* pp. 264-404.

[11] The Broker Opinion of Value was issued by Walker & Dunlop on or around August 27, 2025. *App.* pp. 405-437.

[12] The average appraised value was calculated using the average price of each appraisal or Broker Opinion of Value $32,360,000, $31,000,000 and $32,850,000, respectively.

[13] This amount is based on the balance due on the HUD loan as of June 30, 2026 [$21,879,316.64], the balance due on the SPC Debt [$4,783,527.98] plus the amount of the Escrow Payment attributable to the Parc at Opelika [$2,824,087.61].

**C. The Terms of Any Competing Offers and Request for a Hearing on the Proposed Transfer**

The Statute also requires that the Court conduct a hearing to consider any proposed sale. At least ten days before the hearing, the Statute further requires publication of the terms of the proposed sale so that bona fide interested purchasers can submit competing bids of not less than 10% more than the Contract Price. To provide the same monetary and intrinsic value to the Receivership Estate as the proposed sale to SPC, the Receiver requests that any competing offer (hereafter a "Bona Fide Competing Offer") be required to also include written acknowledgement, signed under penalty of perjury in the form attached as **Exhibit A-6** (the "Acknowledgement), (APP438-441), which confirms:

- The transaction includes no due diligence period;
- Any purchase of all Receivership Entity interests in the Property be subject to SPC's Conversion Rights;
- Proof of funds on deposit to satisfy the full Bona Fide Competing Offer;
- As evidence that the competing offer is bona fide, deposit of 10% of the Bona Fide Competing Offer amount into escrow within 24 hours of communicating the Bona Fide Competing Offer to the Receiver;
- Deposit in escrow of the Bona Fide Competing Offer amount (10% more than the Contract Price), is required within seven days of less the funds deposited as Earnest Money, is required within **seven days** of entry of an order by the District Court granting this Motion. This deposit into escrow is required regardless of whether the order is appealed or subject to any subsequent stay order;
- Funds paid into escrow as required above are released to the Receiver within thirty days of court approval of this Motion;
- Funds paid into escrow, including funds released to the Receiver, will not be refunded, regardless of the outcome of any appeal of the Order granting this Motion and regardless of whether SPC exercises its Conversion Rights (before or after entry of such an order);

Further, the Receiver requests that any Bona Fide Competing Offer be accompanied by a corporate resolution, board approval or other express authorization for the Bona Fide Competing Offer by any management or governing authority over the offeror, or a written and signed statement, supported by any operative documents, explaining why such authorization is unnecessary.

The Receiver requests that the Court schedule a hearing on or before October 23, 2026 to consider the sale.[14] The Receiver will publish notice of the hearing at least ten (10) days prior to the hearing date as required by 28 U.S.C. § 2001(b) and provide notice of the hearing through the receivership website. Additionally, the Receiver requests that the Court require any objections to the proposed sale be filed no later than ten days after the date of an order setting the hearing, or fourteen days before such hearing, whichever date is earlier.

The Receiver requests that any Bona Fide Competing Offers be served on the Receiver and filed with the Court at least two days before the hearing scheduled to consider the transfer.

**D. After the Hearing, the Court Should Approve the Sale, or Any Bona Fide Competing Offers, as in the Best Interest of the Receivership.**

The disposition of the Property outlined above is in the best interest of the Receivership. While the Receiver anticipates that he might have received a higher purchase price if he had been able to retain a broker and list the Property, the claims asserted by Southern Properties and its Conversion Rights precluded that process. Nonetheless, the sale to SPC exceeds the statutorily required two-thirds average appraised value.

Further, transfer to any third party would be subject to SPC's contested Conversion Rights, a condition that effectively bars any transaction until SPC's disputed rights are resolved through

---

[14] To comply with the publication requirement, the Receiver requests that the Court schedule the hearing at least two weeks after this motion is filed. Due to competing obligations and conflicts, the Receiver also requests that the Court not schedule the hearing on or between September 7-22 or October 8-13.

expensive, time-consuming and uncertain litigation. Second, while the Receiver believes he would likely prevail in such litigation, the outcome is far from certain. If the Receiver were to lose that litigation, he would recover nothing for the Receivership Estate from these Properties. Third, while such litigation and the inevitable appeal were pending, the Receiver would be unable to move forward with any claims process or necessary steps to move this receivership towards a conclusion, despite a nearly four-year wait already.

Moreover, the Apartment Complexes are the most valuable Receivership Assets—assets Barton himself had suggested at the inception of the case should be sold to compensate the defrauded investors—and to date, the Receiver has not had sufficient assets or reason to initiate a claims process such that progress can be made towards finalization.[15] Further, as the Court is aware, to date, Barton's contumacious activities and meritless appeals have precluded the Receiver from closing any sale, thereby justifying efforts to generate income through a settlement with SPC.

For these reasons as well as those that will be articulated at a hearing, the Receiver requests that the Court conclude that sale of the Parc at Opelika to SPC as set forth in the PSA is in the best interests of the receivership estate.

## IV. CONCLUSION AND PRAYER

As set forth above, the Receiver requests that the Court (1) appoint the three appraisers identified above and in the Appraisals included in the Appendix; (2) approve and accept the Appraisals provided by each appraiser; (3) set this matter for hearing to consider approval of the sale on the terms provided by the Contract or as offered in any bona fide competing offer received after the date of this Motion; (4) require that any Bona Fide Competing Offers be submitted to the

[15] Any claims process would only be established by this Court's order, and the Receiver would not likely request permission to make any distribution until the Court rules on the merits of the SEC's claims against Barton.

Receiver at least two days before the date of the hearing and on the form attached as Exhibit C; and, (5) provided no timely Bona Fide Competing offers are received at least two days before the date of the hearing, enter an order authorizing the Receiver to sell the Property pursuant to the terms of the PSA. The Receiver also requests such other and further relief to which he is justly entitled.

Respectfully submitted,

By: *\/s/ Charlene C. Koonce*

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
James F. Hopper
Texas Bar No. 24116535
jimmy@brownfoxlaw.com
BROWN FOX PLLC
2699 Howell St., Suite 500
Dallas, TX 75204
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Receiver Cortney C. Thomas*

## **VERIFICATION**

My name is Cortney C. Thomas. I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on August 20, 2026, counsel for the Receiver conferred with counsel for the SEC and Defendant Barton. The Commission is unopposed. Defendant Barton is opposed.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce