**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.,** | § | |
| **Defendants,** | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| **Relief Defendants.** | | |

**DEFENDANT TIMOTHY BARTON'S MOTION FOR LEAVE TO FILE SUPPLEMENT TO CONSOLIDATED RESPONSE AND OBJECTION (DKT. 885)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE BRANTLEY STARR:

Defendant Timothy Barton, pro se, moves under Dkt. 747 for leave to file the attached Supplement (Exhibit A) to his Consolidated Response and Objection (Dkt. 885) to the Receiver's motions at Dkts. 872, 874, 876, 878 and 880.

1. *New matter.* Dkt. 885 was filed September 3, 2026. On September 4 the Receiver filed corrected appendices (Dkts. 886–888) replacing the mis-filed appraisals identified in Dkt. 885 Part V.A. On September 14–15, SPC's motion (Dkt. 890) and the order granting it (Dkt. 891) confirmed that the Settlement was produced by mediation before retired Chief Bankruptcy Judge Harlin D. Hale, whom the Settlement also designates to mediate future disputes. The corrected appendices also disclose, for the first time, the stated purpose and intended-use limitations of the appraisals on which the Receiver relies, and Dkt. 890 concedes several protective provisions Barton had requested. The Supplement responds to

those developments and places before the Court, in a Supplemental Appendix (L. Civ. R. 7.1(i)), SPC's own sworn statements and its parent's securities filings (Exhibits E and F) on the "conversion risk" for which the Receiver discounts the estate's assets. This motion repeats nothing in Dkt. 885.

2. The Court granted SPC leave to respond to Dkt. 885 because a party with an interest in the disposition of Dkt. 872 should be heard and leave "will cause no delay or prejudice." Dkt. 891. The Supplement is tendered thirteen days before the September 29 hearing (Dkt. 882), seeks no new motion practice, and concerns evidence in the Receiver's and SPC's possession.

3. The Court has stated that it will consider Dkt. 885 in ruling on Dkt. 872. Dkt. 891. Dkt. 885 was filed within the 21 days L. Civ. R. 7.1(e) allows; Dkt. 63 § A.1's seven-day provision is a notice mechanism for the Receiver, and a hearing has been set. If a shorter period governed, Barton requests under Fed. R. Civ. P. 6(b)(1)(B) that it be extended through this filing: the interval was three days, the five simultaneous filings ran to hundreds of pages with three wrong appraisals, Barton is pro se, and no one is prejudiced.

4. SPC suggests Barton has no interest because the estate will be insufficient to reach him. Dkt. 890. That assumes the Commission's untried claims will succeed and that every asserted investor claim is valid; none has been allowed, and the 2020 involuntary petitions before then-Judge Hale were dismissed after the petitioning creditors were ordered to appear for deposition. *In re WALL007 LLC*, No. 20-31131-hdh7, Dkt. 287 (Bankr. N.D. Tex. Nov. 23, 2020). Whether Barton is in the money is for the claims process, not a reason to deny him a hearing on a disposition that releases claims through "equity holders," Dkt. 873 App. 13 ¶ 10, and leaves his HUD obligations unaddressed.

Barton requests that the Court grant leave, deem the Supplement filed as of the date of its order, and grant such further relief as is just.

Dated: September 17, 2026
Respectfully submitted,

*/s/ Timothy Barton*
Timothy L. Barton, Pro Se
1846 East Rosemeade Parkway, #232,
Carrollton, Texas 75007
(214) 914-3811 ·
timothy.barton@proton.me

## CERTIFICATE OF CONFERENCE

On September 14, 2026, Barton conferred by e-mail with counsel for the Receiver and for the Securities and Exchange Commission, and on September 16, 2026 with counsel for SPC. The Receiver and the Commission do not oppose the motion. SPC status is not known at the time of filing this motion. L. Civ. R. 7.1(a)–(b).

## CERTIFICATE OF SERVICE

On September 17, 2026, the foregoing was served on all counsel of record through the Court's CM/ECF system.

*/s/ Timothy Barton*
Timothy L. Barton, Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.,** | § | |
| **Defendants,** | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| **Relief Defendants.** | | |

**[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO FILE SUPPLEMENT TO CONSOLIDATED RESPONSE AND OBJECTION (DKT. 885)**

Before the Court is Defendant Timothy Barton's Motion for Leave to File Supplement to Consolidated Response and Objection (Dkt. 885). The Motion is GRANTED. Barton may file the Supplement attached to the Motion as Exhibit A and the separately tendered Supplemental Appendix containing Exhibits D–L; the Supplement is deemed filed as of this Order and will be considered in ruling on Dkts. 872, 874, 876, 878 and 880.

SO ORDERED.

Signed ______________, 2026.

______________________________________
BRANTLEY STARR, UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No. 3:22-cv-2118-X** |
| **v.** | § | |
| | § | |
| **TIMOTHY BARTON, et al.,** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| | § | |
| **Relief Defendants.** | | |

**DEFENDANT TIMOTHY BARTON'S SUPPLEMENT TO CONSOLIDATED RESPONSE AND OBJECTION (DKT. 885)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE BRANTLEY STARR:

Barton supplements Dkt. 885 (the "Objection"), which is incorporated and not superseded, with matter that post-dates it or that the corrected appendices (Dkts. 886–888) and SPC's September 14 filing (Dkt. 890) make necessary. Nothing here relitigates the Receiver's authority to sell receivership assets or asks the Court to decide ultimate ownership. A compromise must be "fair and equitable and in the best interests of the estate," *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019); *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 373 (5th Cir. 1982), and the question is whether the Receiver has carried his burden on a record, and through procedures, sufficient to resolve the material disputed facts bearing on approval. See Black v. UniBank, No. 25-50986, slip op. at 19–25 (5th Cir. Aug. 25, 2026).

## I. THE CORRECTED APPENDICES DISCLOSE THAT THE APPRAISALS WERE COMMISSIONED FOR DIFFERENT 2025 PURPOSES

Dkts. 886–888 do more than correct the three mis-filed appraisals identified in Dkt. 885. They disclose the stated purpose and intended users of the valuation evidence on which the Receiver now relies. The IRR reports identify the D4 Entities as the intended users and state that their intended use is "HUD loan underwriting purposes," that no other party may rely on them, and that they are "not intended for any other use." Dkts. 886–888. The NVC reports identify Brown Fox Law as the client, Brown Fox and its clients as the intended users, and "Litigation purposes" as the intended use, with "no other intended use." Dkts. 886–888. The reports were prepared in late 2025; the SPC transactions were executed in August 2026. Barton does not contend that those limitations automatically invalidate an appraisal. But before purpose-limited 2025 reports are relied upon as evidence supporting late 2026 dispositions, the Receiver should identify any update, reinspection, revalidation, supplemental analysis or appraiser authorization addressing their use for the present transactions, and whether their material assumptions remain current.

## II. SPC'S SWORN STATEMENTS AND ITS PARENT'S PUBLIC FILINGS CONTRADICT THE "CONVERSION RISK" THE RECEIVER PRICED

The Receiver discounts assets he values at $19.6 million of equity plus $6.94 million of cash to a $12,000,000 payment because of the "risk" that "the Court could rule that SPC properly exercised its Conversion Rights." Dkt. 872 at 21–22. SPC's own evidence undercuts that risk.

***The notices deferred any transfer.*** The three October 3, 2022 letters signed by Bradley J. Muth as SPC's President state that a transfer will be effected "through a deed, once the lender on the Project and HUD have consented," and ask Barton to "return the signed contract so we can continue to process a TPA approval." Supp. App. 003, 007, 037.The Bellwether letter encloses an unsigned amendment extending a purchase contract because "HUD [was] taking

longer than expected to approve." Supp. App. 003–006.The Windmill Farms note had been extended to November 1, 2022 and had not matured on October 3, Supp. App. 103, and the Ingleside letter agreement cancels the note only "once HUD has approved the transfer." Supp. App. 100.The record identifies no default existing or invoked as of October 3, 2022; a receivership imposed on October 18 cannot supply one retroactively.

***SPC's President swore to the conditions***.Mr. Muth swore that "until September 16, 2022, SPC was not able to hold additional HUD-financed properties," Supp. App. 090 (Muth Decl. ¶ 59);that the exercise "remains subject to certain … conditions," Supp. App. 074 (Muth Decl. ¶ 8) (see also Supp. App. 123–124);and that "[a]ny interest was forgiven once TCI exercised its convertible rights," Supp. App. 087 (Muth Decl. ¶ 51) —while also swearing that SPC "is now the sole owner of Parc at Windmill Farms,"Supp. App. 089 (Muth Decl. ¶ 56).

***SPC's parent still reports unexercised options.***TCI, whose Form 10-K "encompass[es] SPC's financial statements,"Supp. App. 087 (Muth Decl. ¶ 48),was carrying all four D4 positions as notes receivable on August 6, 2026 — eighteen days before Dkt. 872 — each "convertible, at our option," with Windmill Farms and Opelika footnoted: "We are working with the borrower to extend the maturity and/or exercise our conversion option."TCI Form 10-Q, Note 8 (Aug. 6, 2026)(Supp. App. 094–095).Its fiscal-2022 Form 10-K, filed thirteen days after Mr. Muth swore SPC was "sole owner," described the notes the same way.TCI Form 10-K (Mar. 23, 2023)(Supp. App. 094).Barton offers these filings as evidence of what TCI represented publicly about its own assets, not as judicially noticed truth.Fed. R. Evid. 201. If SPC became the owner in October 2022, the Court should ask why its public parent still reported an unexercised option in August 2026. The Receiver's July 2026 status report likewise identifies the D4 Entities as the record owners and

HUD borrowers and characterizes SPC's position as a claim that it exercised conversion options. Supp. App. 112–113 (Dkt. 838 at 41–42).

The Receiver thus prices a "risk" his own briefing calls "executory and ineffective," Dkt. 872 ¶ 30, that SPC's declarant undercuts and SPC's parent does not report as fact. *Black* requires such facts to be heard on evidence, not assumed.

## III. THE STIPULATED "SPC DEBT" EXCEEDS THE RECEIVER'S OWN BALANCES BY $5,420,149.48

The Settlement stipulates balances "including accrued interest" totaling $24,052,215.10 and credits every dollar against the transfer prices. Dkt. 873 App. 8; Dkt. 872 at 14. The Receiver's own January 17, 2023 balances total $18,632,065.62, Dkt. 207 at 13–14, and TCI's carrying values ($18,633,000) match them rounded to thousands. The $5,420,149.48 increase is unexplained for any property. If SPC's exercise was effective, Mr. Muth says the interest was forgiven; if not, SPC holds unconverted notes. Barton does not contend every dollar is forgiven interest (Opelika was never exercised); he asks that none be credited until the Receiver files a property-by-property bridge from the January 2023 balances to the stipulated figures and SPC identifies the properties it claims to have converted. This receivership reserves disputed lender components: on Rock Creek the lender held back "approximately 60% of the interest … as well as all default interest and attorneys' fees" for the claims process. Dkt. 838 at 28.

## IV. THE MANAGER-HELD ACCOUNTS WERE REQUIRED TO BE IN THE RECEIVER'S CUSTODIAL STRUCTURE

The Receivership Order requires custodial accounts for all cash-equivalent Receivership Property, ¶ 90; and bars any disbursement of receivership funds except on the Receiver's written direction or Court order, ¶¶ 68, 71(A). Dkt. 650. The motion nonetheless discloses that from October 18, 2022 to August 21, 2026 the D4 Entities' rents accumulated in twelve accounts

controlled by Sunridge Management Group, Inc., "selected by SPC and … an SPC affiliate," now holding $6,940,710.13, and it releases SPC's "affiliates … agents, and representatives." Dkt. 872 at 15–16 & nn.12–13; Dkt. 873 App. 13–14 ¶¶ 7, 10. Barton does not presume no authority existed. The Receiver should identify any standing, categorical or transaction-specific written authorization for those accounts and disbursements, and file a verified account-by-account reconciliation, before claims against the affiliate that held the money are released for no identified consideration.

SPC's September 14 response emphasizes that the Receiver disclosed the manager-held accounts and their present balances. Dkt. 890. But disclosure of a current aggregate balance does not answer the accounting question. It does not establish the total rents and other cash generated from October 18, 2022 forward; the amounts released as HUD excess or surplus cash; operating expenditures; distributions; management or asset-management fees; payments or credits to SPC or its affiliates; or the amount remaining after those transactions. The existence of $6,940,710.13 on August 21, 2026 cannot substitute for an inception-to-date reconciliation. HUD's February 2, 2023 Windmill enforcement letter separately warned that "all disbursements may only be made in accordance with your business agreements with HUD."Supp. App. 098.

The need for that reconciliation is heightened by loan documents containing provisions that purported to compensate SPC through the property's HUD-approved excess cash — provisions the Receiver himself told the Court "directly contravened other terms of the HUD Loans." Dkt. 207 at 13 n.51; see also Supp. App. 126–128(showing both the amendment and its same-date rescission). Barton does not ask the Court in this Supplement to determine the validity or continued effectiveness of those provisions. He asks the Receiver to identify whether any D4 funds were paid, transferred, credited or retained under an asset-management, excess-cash or comparable arrangement during the receivership and, if so, the date, amount, recipient, source account, asserted

contractual basis, applicable HUD approval or surplus-cash computation, and the Receiver's written authorization.

## V. NO D4 ENTITY TAX RETURN HAS BEEN PRODUCED

Returns are signed under penalties of perjury, 26 U.S.C. § 6065; a partnership return made by a receiver must be signed by him and "accompanied by a copy of the order or instructions of the court authorizing signing." IRS, Instructions for Form 1065, "Who Must Sign" (2025). The Receiver has administered these entities since 2022, yet for any D4 Entity treated as a partnership for federal tax purposes no Form 1065, Schedule K-1 or, where applicable, Schedule L has been produced, although 26 U.S.C. § 6031(b) requires that each partner be furnished the return information and Barton cannot prepare his own return without it. They are contemporaneous evidence of the cash, liabilities and ownership the Receiver reported to the IRS — the facts now in dispute.

## VI. THE SETTLEMENT DESIGNATES ITS MEDIATOR FOR FUTURE DISPUTES; DISCLOSURE SHOULD PRECEDE RELIANCE

The Receiver and SPC rely on mediation to describe an arm's-length process: Judge Hale conducted two sessions and "made a mediator's proposal, which both parties accepted." Dkt. 872 ¶¶ 36–37; Dkt. 873 App. 8; Dkt. 890 ¶ 4. The Agreement also designates him to mediate future disputes over its terms, performance and HUD-related undertakings, §§ 6(c), 6(d), 24, Dkt. 873 App. 12–13, 17. This Court appointed him for the 2999 Turtle Creek dispute, Dkt. 154; he mediated the BM318 and Tamamoi settlements, Dkt. 524 ¶ 31; Dkt. 494 ¶ 10; on the bench he presided over the 2020 involuntary petitions against Barton-affiliated WALL entities, *In re WALL007 LLC*, No. 20-31131-hdh7. None of this establishes impropriety, and 28 U.S.C. § 455 is not invoked. The point is narrower: the parties rely on mediation as evidence of an arm's-length

process while designating the same mediator to resolve future disputes under the Settlement, and the approval record does not disclose who selected and paid the mediator or what related-engagement disclosures were made, although both the Texas Ethical Guidelines for Mediators, Guideline 4, and the Model Standards of Conduct for Mediators, Standard III, call for disclosure of relationships that may affect the appearance of neutrality. Barton seeks no mediation communications — only engagement, compensation and disclosure facts, and a ruling on the § 24 designation before approval.

## VII. BARTON'S CONTINUING OBLIGATIONS AND INDEPENDENT RIGHTS

The Objection identified Barton's Section 50 and Principal undertakings. Payoff alone will not discharge them: HUD's form provides that the Section 50 party's obligations "shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, any termination of the Regulatory Agreement, or any release of record of the Security Instrument." HUD Form 92466M, Section 50 Addendum. SPC now responds that payoff "retires the very instruments" creating Barton's exposure. Dkt. 890.

SPC's September 14 response also narrows several matters. SPC states that it will not oppose an express provision preserving any developer-fee or contractual enforcement right belonging to Barton individually; will not oppose a savings provision for independent, non-derivative rights outside the receivership estate; and agrees that Article 4.1 of the MPAs may be clarified so that the overbid threshold is 110% of the applicable total consideration rather than a construction that counts the SPC Debt twice, and that it will not oppose reasonable adjustments such as a refundable deposit, a defined diligence period or a longer closing window. Dkt. 890. Those concessions should be incorporated expressly into any approval order; they also confirm that the rights Barton asserts here are his own, not the entities'.

## VIII. RELIEF

In addition to the relief in Dkt. 885 Part VII, Barton asks that the Court:

1. Decline to approve Dkts. 872 and 874–880, or continue the September 29 hearing, until the filings below are made and Barton has seven days to respond;

2. Require SPC to file a verified statement identifying each property it contends it effectively converted; each default it contends existed as of October 3, 2022 and the notice invoking it; the chain of assignments by which it held each conversion right on that date; and a payoff-quality accounting of each note reconciled to TCI's Forms 10-K and 10-Q;

3. Require the Receiver to file (a) a verified property-by-property schedule bridging the January 17, 2023 balances to the stipulated SPC Debt and showing appraised value, HUD debt, manager-held cash, settlement consideration and net value to the estate, with the source of every figure; (b) a verified inception-to-date, property-by-property and account-by-account reconciliation of all receipts and disbursements from October 18, 2022 forward, specifically including excess or surplus-cash releases, management and asset-management fees, distributions, and transfers or credits to SPC, TCI, Pillar, Sunridge or any affiliate, with the written authority for each such transaction; (c) any update, reinspection, revalidation, supplemental analysis or appraiser authorization addressing use of the IRR and NVC reports for the present transactions; and (d) the tax materials in Part V, under a protective arrangement;

4. Pending that accounting, decline to credit disputed accrued interest against the transfer prices, or reserve it for the claims process on terms no less favorable than Rock Creek;

5. Require the Receiver and SPC to file declarations on the mediator's selection, compensation, related engagements and disclosures, and the intended operation of §§ 6(c), 6(d) and 24, and require the parties to address the § 24 designation before approval;

6. Provide in any approval order, consistent with SPC's stated positions in Dkt. 890, that no developer-fee or contractual enforcement right belonging to Barton individually is adjudicated or released; that no independent, non-derivative right outside the receivership estate is released; that nothing deems Barton to have consented to any transfer or TPA application; that no transfer closes until HUD and the lender have provided written protection identifying which of Barton's continuing Section 50, Principal and guaranty obligations terminate and which survive; that Article 4.1 of the MPAs is construed, as SPC proposes, so that the overbid threshold is 110% of the applicable total consideration without duplicative addition of the SPC Debt; and that the entities' native records are preserved; and

7. Conduct such evidentiary proceedings as are necessary under Fed. R. Civ. P. 43(c) to resolve disputed material facts bearing on approval, with the Receiver, as movant, bearing the burden. *Black*, slip op. at 19–20.

Dated: September 17, 2026

Respectfully submitted,

*/s/ Timothy Barton*

Timothy L. Barton, Pro Se
1846 East Rosemeade Parkway, #232,
Carrollton, Texas 75007
(214) 914-3811 ·
timothy.barton@proton.me

## CERTIFICATE OF SERVICE

On September 17, 2026, the foregoing was served on all counsel of record through the Court's CM/ECF system.

*/s/ Timothy Barton*
Timothy L. Barton, Pro Se

## INDEX OF SUPPLEMENTAL APPENDIX

Exhibits A–C accompanied Dkt. 885; Exhibits D–L are compiled in the separately filed Supplemental Appendix at APP002–APP128.

| **Ex.** | **Description** |
|---|---|
| D | SPC Exercise Notices, October 3, 2022, with enclosures |
| E | Declaration of Bradley Muth, March 10, 2023 (Dkt. 179 App. 2–22) |
| F | TCI SEC Filings Excerpt Sheet (Notes Receivable, Q3 2022–Q2 2026) |
| G | HUD Departmental Enforcement Center Letter re Parc at Windmill Farms, Feb. 2, 2023 |
| H | SPC Letter Agreement re Parc at Ingleside, June 13, 2019 |
| I | Windmill Farms Fourth Amendment to Note (eff. Nov. 1, 2020) and Second Amendment to Letter Loan Agreement (May 31, 2021) |
| J | Receiver's Sixteenth Quarterly Status Report, Dkt. 838 at 41–48 (HUD Apartments) |
| K | Amended and Restated Pledge and Security Agreement (TRWF–JMJ, Bellwether Ridge), Sections 7.13–7.15 |
| L | First Amendment to Note (Oct. 1, 2019, Article V Asset Management and Fees) and same-date Rescission (D. Moos) |