**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>v.<br><br>TIMOTHY BARTON, et al.,<br>Defendants, | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-cv-02118-X |

**APPENDIX IN SUPPORT OF DEFENDANT TIMOTHY BARTON'S EMERGENCY MOTION FOR ORDER ESTABLISHING EVIDENTIARY PROCEDURES FOR SEPTEMBER 29, 2026 HEARING OR, ALTERNATIVELY, FOR A BRIEF CONTINUANCE**

**<u>TABLE OF CONTENTS</u>**


| DESCRIPTION OF DOCUMENT | DOCKET LOCATION | BARTON APP. |
|---|---|---|
| Parc at Opelika — IRR appraisal transmittal<br>HUD underwriting purpose and intended users | Dkt. 886, ECF p. 46<br>Original App. 043 | APP001 |
| Parc at Opelika — NVC appraisal scope of work<br>Litigation purpose and intended users | Dkt. 886, ECF p. 280<br>Original App. 277 | APP002 |
| Parc at Ingleside — IRR appraisal transmittal<br>HUD underwriting purpose and intended users | Dkt. 887, ECF p. 35<br>Original App. 032 | APP003 |
| Parc at Ingleside — NVC appraisal scope of work<br>Litigation purpose and intended users | Dkt. 887, ECF p. 193<br>Original App. 190 | APP004 |
| Parc at Windmill Farms — IRR appraisal transmittal<br>HUD underwriting purpose and intended users | Dkt. 888, ECF p. 35<br>Original App. 032 | APP005 |
| Parc at Windmill Farms — NVC appraisal scope of work<br>Litigation purpose and intended users | Dkt. 888, ECF p. 220<br>Original App. 217 | APP006 |
| Receiver's declaration and interim report<br>Bellwether Ridge debt and projected proceeds; Windmill Farms valuation | Dkt. 308, ECF p. 35 | APP007 |
| Receiver's declaration and interim report<br>Windmill Farms debt and projected proceeds; Ingleside loan balances | Dkt. 308, ECF p. 36 | APP008 |
| Receiver's declaration and interim report<br>Opelika HUD and SPC loan balances | Dkt. 308, ECF p. 37 | APP009 |
| SPC Settlement and Release Agreement<br>Four-property values and June 30, 2026 loan balances | Dkt. 873, ECF p. 11<br>Original App. 008 | APP010 |
| SPC Settlement and Release Agreement<br>Project accounts, disputed ownership, and settlement payment | Dkt. 873, ECF p. 12<br>Original App. 009 | APP011 |
| SPC Settlement and Release Agreement<br>Receiver's release, including equity holders; reciprocal release | Dkt. 873, ECF p. 17<br>Original App. 014 | APP012 |
| Receiver's Verified Motion to Ratify Settlement Agreement with SPC<br>Project-account balances/restrictions as of August 21, 2026 | Dkt. 872, ECF p. 20 | APP013 |

Integra Realty Resources
Atlanta | Charlotte | Raleigh | Memphis | Richmond
Birmingham | Columbia | Greensboro | Charleston

880 Montclair Road
Suite 275
Birmingham, AL 35213

T 205.949.5995
F 205.271.2389
www.irr.com

December 10, 2025

Cort Thomas
Receiver
D4DS, LLC, D4FR, LLC, D4IN, LLC and D4OP, LLC
8111 Preston Road
Dallas, TX 75225

SUBJECT: Market Value Appraisal
Parc at Opelika
1375 McCoy St
Opelika, Lee County, Alabama 36801
IRR - Birmingham File No. 173-2025-0714

Dear Mr. Thomas:

Integra Realty Resources – Birmingham is pleased to submit the accompanying appraisal of the referenced property. The purpose of the appraisal is to develop an opinion of the market value as is, pertaining to the fee simple interest in the property.

The client for the assignment is D4DS, LLC, D4FR, LLC, D4IN, LLC and D4OP, LLC. The intended user of this report is the client. The intended use of the report is for HUD loan underwriting purposes. No other party or parties may use or rely on the information, opinions, and conclusions contained in this report.

The subject is the Parc at Opelika, which is an existing multifamily property containing 168 dwelling units. The property is comprised of seven three-story apartment buildings, a clubhouse and two detached buildings with 12 parking garages. The subject offers 1BR/1BA, 2BR/2BA and 3BR/2BA units. The improvements were constructed in 2022 and are 90% leased as of the effective appraisal date. The site area is 11.95 acres or 520,543 square feet.

The appraisal conforms to the Uniform Standards of Professional Appraisal Practice (USPAP), the Code of Professional Ethics and Standards of Professional Practice of the Appraisal Institute and applicable state appraisal regulations. The appraisal is also prepared in accordance with the appraisal regulations issued in connection with the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA).

# Scope of Work

**SCOPE OF WORK DEFINED**

The Scope of Work requirement within the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Standards Board states that the appraiser must provide the following information within each appraisal, appraisal review, or appraisal consulting assignment:

1. Identify the problem to be solved;
2. Determine and perform the scope of work necessary to develop credible assignment results; and
3. Disclose the scope of work in the report.

While the scope of work is addressed within many sections of this report, the following is a summary of the Scope of Work for this assignment.

**APPRAISAL ELEMENTS**

There are six key assignment elements that need to be addressed when identifying the appraisal problem. These include:

1. Client and any other intended users;
2. Intended use of the appraiser's opinions and conclusions;
3. Type and definition of value;
4. Effective date of the appraiser's opinions and conclusions;
5. Subject of the assignment and its relevant characteristics (e.g. interest valued, physical and legal characteristics); and
6. Assignment conditions (e.g. hypothetical conditions, extraordinary assumptions, supplemental standards, and jurisdictional exceptions).

**CLIENT, INTENDED USERS, AND INTENDED USE**

| | |
|---|---|
| Client: | Brown Fox Law |
| Intended Users: | Brown Fox Law (the "client") and its clients |
| Intended Use: | Litigation purposes |

This report has no other intended use, and National Valuation Consultants, Inc. is not responsible for the use of this report by any third parties.

Integra Realty Resources
San Antonio
909 NE Loop 410, suite 632
San Antonio, TX, 78209
T 210.446.4444
www.irr.com

December 12, 2025

Cort Thomas, Receiver
D4DS, LLC, D4FR, LLC, D4IN, LLC, D4OP, LLC
8111 Preston Road, Suite 300
Dallas, TX 75225

SUBJECT: Market Value Appraisal
Parc at Ingleside
2850 Avenue J
Ingleside, San Patricio County, Texas 78362
IRR - San Antonio File No. 179-2025-0389

Dear Mr. Thomas:

Integra Realty Resources – San Antonio is pleased to submit the accompanying appraisal of the referenced property. The purpose of the appraisal is to develop the following opinions of value:

> The market value as is of the fee simple interest in the subject property as of the effective date of the appraisal, December 9, 2025

The client for the assignment is D4DS, LLC, D4FR, LLC, D4IN, LLC, D4OP, LLC. The client and intended user is D4DS, LLC, D4FR, LLC, D4IN, LLC, D4OP, LLC. The intended use of the report is for HUD loan underwriting purposes. No other party or parties may use or rely on the information, opinions, and conclusions contained in this report.

# Scope of Work

**SCOPE OF WORK DEFINED**

The Scope of Work requirement within the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Standards Board states that the appraiser must provide the following information within each appraisal, appraisal review, or appraisal consulting assignment:

1. Identify the problem to be solved;
2. Determine and perform the scope of work necessary to develop credible assignment results; and
3. Disclose the scope of work in the report.

While the scope of work is addressed within many sections of this report, the following is a summary of the Scope of Work for this assignment.

**APPRAISAL ELEMENTS**

There are six key assignment elements that need to be addressed when identifying the appraisal problem. These include:

1. Client and any other intended users;
2. Intended use of the appraiser's opinions and conclusions;
3. Type and definition of value;
4. Effective date of the appraiser's opinions and conclusions;
5. Subject of the assignment and its relevant characteristics (e.g. interest valued, physical and legal characteristics); and
6. Assignment conditions (e.g. hypothetical conditions, extraordinary assumptions, supplemental standards, and jurisdictional exceptions).

**CLIENT, INTENDED USERS, AND INTENDED USE**

| | |
|---|---|
| Client: | Brown Fox Law |
| Intended Users: | Brown Fox Law (the "client") and its clients |
| Intended Use: | Litigation purposes |

This report has no other intended use, and National Valuation Consultants, Inc. is not responsible for the use of this report by any third parties.

Integra Realty Resources
Dallas

1100 Mira Vista Boulevard
Suite 300
Plano, TX, 75093

T 972.881.7191
F 972.733.1403
www.irr.com

December 11, 2025

Mr. Cort Thomas, Receiver
D4DS, LLC, D4FR, LLC, D4IN, LLC, D4OP, LLC
8111 Preston Road, Suite 300
Dallas, Texas 75225

SUBJECT: Market Value Appraisal
Parc at Windmill Farms
1003 Windmill Farms Boulevard
Forney ETJ, Kaufman County, Texas 75126
IRR - Dallas File No. 191-2025-1343

Dear Mr. Cort Thomas:

Integra Realty Resources – Dallas is pleased to submit the accompanying appraisal of the referenced property. The purpose of the appraisal is to develop the following opinions of value:

> The market value as is of the fee simple interest in the subject property as of the effective date of the appraisal, December 10, 2025

The client for the assignment is D4DS, LLC, D4FR, LLC, D4IN, LLC, D4OP, LLC. The client and intended user is D4DS, LLC, D4FR, LLC, D4IN, LLC, D4OP, LLC. The intended use of the report is for HUD loan underwriting purposes. No other party or parties may use or rely on the information, opinions, and conclusions contained in this report.

# Scope of Work

**SCOPE OF WORK DEFINED**

The Scope of Work requirement within the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Standards Board states that the appraiser must provide the following information within each appraisal, appraisal review, or appraisal consulting assignment:

1. Identify the problem to be solved;
2. Determine and perform the scope of work necessary to develop credible assignment results; and
3. Disclose the scope of work in the report.

While the scope of work is addressed within many sections of this report, the following is a summary of the Scope of Work for this assignment.

**APPRAISAL ELEMENTS**

There are six key assignment elements that need to be addressed when identifying the appraisal problem. These include:

1. Client and any other intended users;
2. Intended use of the appraiser's opinions and conclusions;
3. Type and definition of value;
4. Effective date of the appraiser's opinions and conclusions;
5. Subject of the assignment and its relevant characteristics (e.g. interest valued, physical and legal characteristics); and
6. Assignment conditions (e.g. hypothetical conditions, extraordinary assumptions, supplemental standards, and jurisdictional exceptions).

**CLIENT, INTENDED USERS, AND INTENDED USE**

| | |
|---|---|
| Client: | Brown Fox Law |
| Intended Users: | Brown Fox Law (the "client") and its clients |
| Intended Use: | Litigation purposes |

This report has no other intended use, and National Valuation Consultants, Inc. is not responsible for the use of this report by any third parties.

claims to the proceeds from the sale of Bellwether Ridge could be administered through a claims process, where the adjudication of its claim to the proceeds from the sale of any HUD Apartment complex could range from treatment as an unsecured creditor, to the Court's determination that SPC is entitled to 100% of the sale proceeds.

90. As of the date of this Declaration, the contract for the sale of Bellwether Ridge remains pending, but the Sale Motion has been denied without prejudice. Pursuant to the parties' contract, because several months have passed since the execution of the agreement, either of the parties to the contract may terminate at any time. Once the issue of SPC's claimed ownership has been resolved, court approval for any sale will still be necessary pursuant to 28 U.S.C. § 2001. Assuming that SPC is ultimately treated as a lender, and if the Court approves the sale, after discounting the HUD loan balance ($17,823,548.47), the SPC loan balance ($3,797,758.95), and the fee to buyer's broker ($270,000), the sale would result in a net benefit of approximately $5.1 million to the Receivership Estate prior to other closing costs.[14]

(b) <u>D4FR, LLC—Parc at Windmill Farms (Forney)</u>

91. **<u>Tracing.</u>** D4FR, LLC is the record owner of the Park at Windmill Farms apartment complex located at 1003 Windmill Farms Blvd., Forney, TX 75126 ("Windmill Farms"). D4FR received Wall Investor Funds that were used to construct Windmill Farms. An example of such a transaction is included as Exhibit 6.

92. **<u>Background.</u>** In accordance with this Court's Orders and 28 U.S.C. § 2001, I also obtained three independent appraisals of Windmill Farms. One is a certified appraisal, and two are informal broker opinions of value. The three appraisals value Windmill Farms at $50,000,000,

[14] These loan balances for each of the HUD Apartments are as of January 2023. I intend to update loan balances no later than January 2024.

Case 3:22-cv-02118-X Document 293 Filed 09/26/23 Page 36 of 174 PageID 24720

$52,000,000 - $56,000,000, $53,000,000 - $58,000,000 resulting in an average appraised value of $53,166,666.

93. Despite difficulties listing the Property with a broker (as outlined above), after communicating with dozens of potential interested purchasers, I ultimately entered into a Purchase and Sale Agreement with Palmetto/i3 whereby I agreed, subject to Court approval, to sell the Property to Palmetto/i3, which would assume the existing HUD loan, for a total of $51,000,000.

94. As of the date of this Declaration, the contract for the sale of Windmill Farms remains pending, but the Sale Motion has been denied without prejudice. Assuming that SPC is ultimately treated as a lender, and if the Court ultimately approves the sale, after discounting the Greystone loan balance ($35,076,762.98), the SPC loan balance ($7,885,547.12), and the fee to buyer's broker ($510,000), the sale will result in a net benefit of approximately $7.5 million to the Receivership Estate prior to other closing costs.

(c) D4IN, LLC—Parc at Ingleside (Corpus Christi area)

95. **Tracing.** D4IN, LLC is the record owner of the Parc at Ingleside apartment complex located at 2850 Ave. J, Ingleside, TX, 78362 ("Parc at Ingleside"). As discussed above, D4IN benefitted from Wall Investor Funds in a variety of ways, including salary payments and the securing of the HUD loan. My accountants' tracing analysis is still ongoing, but examples that show D4IN's involvement in other Receivership Entities' extensive commingling are included as Exhibit 7.

96. **Background.** I am still gathering opinions of value and appraisal(s) on this property. To date, I have received opinions of value ranging between $28 million and $31.1 million. As of January 13, 2023, the balance on the HUD loan for this property was $24,790,081.91. As of January 17, 2023, SPC claims that the balance of its second loan for this property was $3,759,163.65. While I am hopeful that the value of this property compared to its

Case 3:22-cv-01213-X Document 201 Filed 09/04/23 Page 37 of 79 PageID 2712

loans will continue to increase in the coming months while the ownership dispute with SPC is resolved, the estimates above indicate that the sale of this property would result in the infusion of no more than $2.5 million into the Receivership Estate.

(d) D4OP, LLC—Parc at Opelika (Alabama)

97. **Tracing.** D4OP, LLC is the record owner of the Parc at Opelika apartment complex located at 1375 McCoy Street, Opelika, AL 36801 (the "Parc at Opelika). D4OP received Wall Investor Funds that were used to construct the Parc at Opelika. Examples of some of these transactions are included as Exhibits 8.

98. **Background.** Construction on Opelika is complete and the rental process is ongoing. Endorsement of the HUD loan on the Opelika is not yet complete and cost certification remains in process. I have encountered multiple challenges in this respect, including construction liens, interest payments that had to be made when draw requests were delayed, ongoing challenges surrounding my team's lack of access to QuickBooks and the Receivership Entities' digital files, and most recently Barton's refusal to sign cost certification documents.

99. The auditors assisting me with the cost certification identified two findings related to funds flowing from D4OP's bank accounts that required curing prior to the submission of the cost certification: (1) the repayment of an SBA loan (totaling $166,782.52) and (2) the repayment of monies sent to other Receivership Entities ($126,582.00). I cured these findings during the Second Quarter of 2023. At this time, although certification is not guaranteed, I am optimistic that it will occur, albeit with potential loan penalty payments.

100. Similar to Bellwether Ridge, Windmill Farms and Ingleside, Opelika has both a HUD loan and additional funding from SPC. As of January 13, 2023, the balance on the HUD loan for this property was $21,878,710.41. As of January 17, 2023, SPC claims that the balance of its second loan for this property was $3,189,659.90. SPC claims that while it has not yet

**WHEREAS,** the Parties recognize that litigation to fully and finally resolve the claims and contentions of each will take many years, cost both sides a significant amount in attorney's fees, and result in continuing risk and uncertainty for both Parties and the Complexes and their management, all in the context of an uncertain real estate market;

**WHEREAS,** the Parties stipulate that Bellwether Ridge is currently worth approximately $27,283,333.33,[2] has an outstanding HUD Loan balance of approximately $16,979,078.75, and has an outstanding SPC Loan balance of $4,587,193.66, including accrued interest, as of June 30, 2026;

**WHEREAS,** the Parties stipulate that Parc at Windmill Farms is currently worth approximately $51,833,333.33,[3] has an outstanding HUD Loan balance of approximately $33,534,994.15, and has an outstanding SPC Loan balance of $9,809,312.03, including accrued interest, as of June 30, 2026;

**WHEREAS,** the Parties stipulate that Parc at Ingleside is currently worth approximately $27,250,000.00,[4] has an outstanding HUD Loan balance of approximately $23,708,803.94, and has an outstanding SPC Loan balance of $4,872,181.43, including accrued interest, as of June 30, 2026;

**WHEREAS,** the Parties stipulate that Parc at Opelika is currently worth approximately $32,070,000.00,[5] has an outstanding HUD Loan balance of approximately $21,879,316.64, and has an outstanding SPC Loan balance of $4,783,527.98, including accrued interest, as of June 30, 2026;[6]

**WHEREAS,** as of June 30, 2026, Sunridge Management Group, Inc. (the "**Property Manager**") controls the following bank accounts at Huntington Bank in the name of the D4 Entities (collectively, the "**Property Management Accounts**"):

- Bellwether – D4DS
  x9784 operating
  x9797 security deposit
  x3165 interest

- Parc at Windmill – D4FR
  x9483 operating

[2] The estimate of value for Bellwether Ridge is the average between the Broker Opinion of Value ("BOV") of National Valuation Consultants, Inc. ("NVC") ($28,000,000), Integra Realty Resources ("IRR") ($23,300,000), and Walker & Dunlop's Strike Price ($30,550,000).
[3] The estimate of value for Parc at Windmill Farms is the average between the BOV of NVC ($49,500,000), IRR ($48,200,000), and Walker & Dunlop's Strike Price ($57,800,000).
[4] The estimate of value for Parc at Ingleside is the average between the BOV of NVC ($25,000,000), IRR ($24,500,000), and Walker & Dunlop's Strike Price ($32,250,000).
[5] The estimate of value for Parc at Opelika is the average between the BOV of NVC ($31,000,000), IRR ($32,360,000), and Walker & Dunlop's Strike Price ($32,850,000).
[6] The Receiver received other BOVs for the D4 Properties in the initial months of the Receivership Case; however, the estimates of value for the D4 Properties provided herein are limited to the averages of the three most recent BOVs provided to the Receiver.

x9496 security deposit
x3136 interest

- Parc at Ingleside – D4IN
  x9810 operating
  x9836 security deposit
  x3178 interest

- Parc At Opelika – D4OP
  x0398 operating
  x0408 security deposit
  x3110 interest

**WHEREAS**, as of June 30, 2026, the Receiver controls the following bank account at Huntington Bank in the name of D4OP, LLC (the "**Receiver Account**"):

- D4OP LLC in Receivership (x7315);

**WHEREAS**, the Parties also dispute ownership of the Property Management Accounts and the Receiver Account;

**WHEREAS**, on September 4, 2025, the Parties mediated their disputes in good faith before retired United States Bankruptcy Judge Harlin Hale (the "**Mediation**") and reached an agreement in principle, subject to final documentation of the agreement that is set forth herein. During the Mediation, the Parties, with the assistance of Judge Hale, negotiated extensively at arm's length and in good faith and now desire to enter into this Settlement Agreement to fully resolve and settle all disputes and issues between the Parties regarding the D4 Properties, D4 Entities, HUD Loans, the Pledge and Security Agreements, the Conversion Rights, and the Assignment Rights, all claims and causes of action that could be asserted by SPC against the Receiver and Receivership Entities, and all claims and causes of action that could be asserted by the Receiver and Receivership Entities against SPC;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to Court Ratification (defined below), the Parties agree as follows:

1. Incorporation of Recitals. The above recitals are incorporated into and made a substantive part of this Settlement Agreement.

**Payments by SPC**

2. Settlement Payment. SPC shall pay to the Receiver $12,000,000 in full and final settlement of any and all claims between the Parties (the "**Settlement Payment**") pursuant to the terms of this Settlement Agreement, payable as follows:

cooperate with the Receiver to obtain Court Ratification and comply with 28 U.S.C. § 2001 or other applicable statutes and any relevant orders.

9. Receiver's Settlement Obligations. As provided above, the Receiver shall file and use best efforts to obtain Court Ratification of the Motion to Approve Settlement, and Court approval of the Motions for Approval of the Sale of the Complexes. The Receiver shall also cooperate with SPC in the effort to obtain HUD Approvals for the Transfer of Interests and Opelika Sale.

10. Release by the Receiver. Upon execution of the Settlement Agreement, Court Ratification, SPC's payment of the Settlement Amount, and the Receiver's Transfer of Interests, the Receiver, on behalf of himself and all Receivership Entities, including their respective officers, directors, employees, equity holders, affiliates, subsidiaries, parents, predecessors-in-interest, successors-in-interest, assigns, transferees, agents or other representatives or any other party claiming by, through or under the Receivership Entities (the "**Receivership Parties**"), hereby forever irrevocably releases, acquits and discharges SPC and its respective officers, directors, equity holders, affiliates, predecessors-in-interest, successors-in-interests, assigns, transferees, employees, agents, and representatives (collectively, the "**SPC Parties**"), from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies, whether known or unknown now or in the future regarding or relating to the D4 Properties, D4 Entities, HUD Loans, the Pledge and Security Agreements, the other loan documents related to the SPC Debt or any other issues in dispute between the Receiver and SPC, including but not limited to the claims and issues contained in the Receiver's Motion for Summary Judgment, SPC's Response, and SPC's Motion to Intervene; provided, however, this release shall not release any claims related to the obligations of the Parties under this Settlement Agreement.

11. Release by SPC. Upon execution of the Settlement Agreement, Court Ratification, SPC's payment of the Settlement Amount, and the Receiver's Transfer of Interests, SPC, on behalf of itself and the SPC Parties, hereby forever irrevocably releases, acquits and forever discharges the Receiver and the Receivership Parties, from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies whether known or unknown, now or in the future, regarding or relating to the D4 Properties, D4 Entities, HUD Loans, the Pledge and Security Agreements, the other loan documents related to the SPC Debt or any other issues in dispute between the Receiver and SPC, including but not limited to the claims and issues contained in the Receiver's Motion for Summary Judgment, SPC's Response, and SPC's Motion to Intervene; provided, however, this release shall not release any claims related to the obligations of the Parties under this Settlement Agreement.

12. Expenses. Each Party shall bear its own attorney's fees and costs in connection with the negotiation, execution, effectuation and approval of this Settlement Agreement.

13. Cooperation. The Parties agree to cooperate in good faith to effectuate the terms and conditions of this Settlement Agreement. The Parties shall take all necessary actions to receive the necessary approvals and prepare all documents necessary to achieve the foregoing, including through any litigation, appeals, or similar legal challenges to ratification or approval of the transactions contemplated by this Settlement Agreement.

Additionally, as of the date of this filing, the property manager maintains bank accounts that collectively hold **$6,940,710.13**:[13]

| Entity | Account | Balance (8/21/26) |
|---|---|---|
| D4DS | 9784 | $1,494,791.06 |
| D4DS (SD) | 9797 | $47,000.00 |
| D4FR | 9483 | $2,532,973.27 |
| D4FR (SD) | 9496 | $121,000.00 |
| D4IN | 9810 | $102,908.19 |
| D4IN (SD) | 9836 | $82,000.00 |
| D4OP | 398 | $2,471,037.61 |
| D4OP (SD) | 408 | $89,000.00 |
| | | **$6,940,710.13** |

At the same time, as outlined herein, for the Receiver to obtain this "best day in court" result, he would (1) retain contingency counsel, likely on a 40% contingency (approximately $10.6 million) and (2) pay experts, court costs, and Receiver time, among other things required under a standard contingency arrangement (conservatively estimated to cost an additional $500,000). Thus, using today's values[14] the Receiver's best day in court would net approximately $15,400,000. While this best-day-in-court admittedly exceeds the $12,000,000[15] the Receiver keeps as part of the settlement, the litigation risk that the Receiver obtains $0, the costs of such litigation irrespective of whether the Receiver ultimately wins, the risk of decreasing property values, and the delay inherent in the litigation necessary to proceed with a sale, all support disposition through the settlement at issue. Given these risks and factors,

[13] The management accounts hold tenant security deposits, as well as other funds including "excess cash." HUD requires a 'minimum balance" be maintained in these accounts, and that minimum balance fluctuates, although ownership of the "excess cash" would be subject to litigation "Excess cash" is calculated annually. AS of December 31, 2025, auditors reported $5,336,184.00 in available excess cash.

[14] Of course, the Receiver could not make an immediate sale given SPC's claimed ownership interests and Barton's inevitable appeal of any sale order. Moreover, future value, interest rates, and other relevant variables are unknown.

[15] Pursuant to the Settlement Agreement, SPC will pay the Receiver $12,000,000 and will relinquish its claim of ownership to approximately $507,000 in funds held in a separate D4OP account. These funds predominantly consist of payments from the lender in connection with cost certification of the project and funds transferred by the Receiver to cure findings of improper pre-Receivership transfers of funds from D4OP accounts to other Receivership Entities.