**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Civil Action No. 3:22-cv-02118-X** |
| | § | |
| **TIMOTHY BARTON, et al.,** | § | |
| *Defendants,* | § | |

**DEFENDANT'S OBJECTION TO THE**
**RECEIVER'S NINTH QUARTERLY FEE APPLICATION**

Defendant Timothy L. Barton, pro se, objects to the Receiver's Ninth Quarterly Fee Application (Dkt. 901), Appendix (Dkt. 902), and proposed order (Dkt. 901-1) for October through December 2024. The Application says it seeks $98,653.65. The proposed order directs $101,874.56, the difference being $3,220.91 in expenses the Application says "are not sought in this fee application" because the Court already awarded them. Dkt. 901 at 3, 6; Dkt. 901-1 at 2. The Receiver's own section heading misstates his total. The status report the Application relies on is dated to a day three months before the quarter it covers ended. Nearly half of counsel's fees are one associate "drafting" a privilege log, for the third quarter running, that Barton has never received. The certificate of conference says the SEC reviewed this Application in January 2025, yet the filed version discusses events of August 2026. The Receiver verified this filing under penalty of perjury, yet the record does not show that the filed version received the review required before submission. Not one dollar should be approved until the Receiver lodges unredacted invoices for *in camera* review and files a corrected application after the full SEC review required by the Court's orders.

## I. THE RECEIVER BEARS THE BURDEN, AND THE COURT MUST SCRUTINIZE

The applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded, and "billing judgment" must be shown. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983). Billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). A court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326. In a receivership, results are "always relevant," and "[n]o receivership is intended to generously reward court-appointed officers." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 480, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975); *SEC v. Striker Petroleum, LLC*, No. 3:09-CV-2304-D, 2012 WL 685333, at *3 (N.D. Tex. Mar. 2, 2012). "The rights of those who ultimately pay must be carefully protected." *Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 252 (5th Cir. 2018) (quoting *Newton v. Consol. Gas Co.*, 259 U.S. 101, 105 (1922)). That duty does not wait for an objection: "the court can adjust the fee request[s] sua sponte." *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, slip op. at 2 (N.D. Tex. May 27, 2008) (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987)).

## II. THE RECORD DOES NOT SHOW THAT THE SEC REVIEWED THE FILED APPLICATION AS REQUIRED

SEC review is the gatekeeping step the Court built into its orders: the complete application, exhibits, and billing information must reach SEC counsel at least thirty days before filing, and the SEC, "[f]ollowing its receipt and review," is to "object to deviations and charges with which it

does not agree." Dkt. 417 ¶ 64; Dkt. 650 ¶ 117; SEC, *Billing Instructions for Receivers* at 1, § A.2 ("Billing Instructions"). The certificate of conference swears the Application and invoices went to SEC counsel on January 31, 2025, and that "[a] copy" was "again sent" on September 17, 2026, one day before filing. Dkt. 901 at 18. But the document filed on September 18, 2026 is not the document sent in January 2025: it discusses Barton's August 14, 2026 objection, the Court's August 20, 2026 order, and the August 24, 2026 SPC settlement motion. Dkt. 901 at 2–3. Whatever the SEC saw in 2025, it was not this Application, and a one-day resend does not satisfy a thirty-day requirement.

The filed papers contain facial defects that the required review should have identified: (1) the proposed order directs $101,874.56 against a stated request of $98,653.65, the difference being the $3,220.91 in Receiver expenses the Application disclaims, Dkt. 901 at 3, 6; Dkt. 901-1 at 2; (2) the Receiver's section heading states his fees and expenses as "$13,855.41," while his own invoice totals $13,885.41, Dkt. 901 at 4; Dkt. 902, APP012; (3) the Application says those expenses "were previously sought" in the Fourth Application, Dkt. 593, filed December 31, 2024, and "granted" in Dkt. 609, which expressly awarded Receiver expenses only through September 30, 2024, yet the schedule includes a December 23 transcript charge and a December 31, 2024 postage charge outside that awarded period, Dkt. 609 at 6–7; Dkt. 902, APP008; (4) the schedule bills two identical $36.30 FedEx charges on November 25, 2024, each for sending "seven copies" of the amicus brief to the Fifth Circuit, APP008; (5) the Application states the accountants' hours as "142.97," while their timekeeper table sums to 143.0, and the lodestar divides by 475.77 hours on that basis, Dkt. 901 at 8–9; Dkt. 902, APP033; (6) the Application twice says the Tenth Status Report, which covers the quarter ending December 31, 2024, "was filed on October 30, 2024," Dkt. 901 at 5, 7; Dkt. 599; (7) the accountant's invoice is issued by "Ahuja & Consultants, Inc."

and billed to Brown Fox, yet the order pays "Ahuja & Clark, PLLC," Dkt. 902, APP032; Dkt. 901-1 at 2; and (8) the accountant's $478.65 in expenses is resubmitted with the bare statement that the Court "did not include" it in the Dkt. 609 award, with no explanation of why or on what basis it may be tendered again, Dkt. 901 at 8 n.3. These defects are apparent from the filed papers, yet the certificate reports SEC non-opposition.

Courts give the SEC's position "great weight" because the SEC is presumed to have done the review the orders assign to it. *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *Striker*, 2012 WL 685333, at *3. That presumption is rebutted here. The record does not establish that the filed version received the review contemplated by the orders, so the SEC's non-opposition should be given no weight. Even the SEC's qualified position is misreported: the SEC "believes it would be appropriate to impose a holdback" of 20%, Dkt. 901 at 9, 18, while the proposed order recites that "Plaintiff does not oppose the relief requested" and directs payment of 100%. Dkt. 901-1 at 1–2. This Court should not lend its signature to an order that recites a non-opposition the record contradicts. It should give the SEC's silence no weight, require the SEC to state on the record what it reviewed and when, and require the Receiver to re-serve a corrected application for the full thirty-day review before any ruling.

## III. REDACTED AND BLOCK-BILLED ENTRIES REQUIRE IN CAMERA REVIEW BEFORE ANY APPROVAL

Billing Instructions § D.2 requires a reasonably detailed narrative identifying the participants, scope, and purpose of the work. Twenty-five entries totaling $8,479.50 are redacted, Dkt. 902, APP005–012, APP015–029, and they fall where scrutiny matters: the Receiver's October 3 conference with Mr. Wells (0.3 hour, $115.50) and October 8 call with him (0.1 hour, $38.50) have no stated subject at all, APP005, and both entries in the Fu litigation category, 0.4

hour and $154 for an action that remained stayed, conceal the subject of the conferences billed, APP026; Dkt. 599 at 28. The Receiver offers to "submit unredacted copies of this and prior invoices for *in camera* review" if "the Court desires." Dkt. 901 at 5, 7. The Court should desire. The burden is his, the objector cannot test what he cannot read, and documentation "too vague to permit meaningful review" is disallowed. *Kellstrom*, 50 F.3d at 326. The Court should order the Receiver to lodge complete unredacted copies of Exhibits B and C within fourteen days for in camera review and, for each redaction, provide Defendant a sufficiently detailed nonprivileged narrative or a privilege/redaction log stating the basis for withholding. Any entry that remains inadequately documented should be disallowed. Entries over one hour that combine activities must also "include a notation of the approximate time spent on each activity," Billing Instructions § D.4; those that do not should be reduced by a percentage that substitutes for the missing billing judgment. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

## IV. THE APPLICATION IS FACIALLY WRONG IN WAYS THAT REQUIRE DISALLOWANCE

*The $3,220.91 the Receiver says he is not seeking.* The Application states that the Receiver's fourth-quarter expenses were sought in Dkt. 593, "which the Court granted" in Dkt. 609, and that "[t]hese expenses are not sought in this fee application." Dkt. 901 at 6. Yet the proposed order pays them. Dkt. 901-1 at 2; Dkt. 902, APP008, APP012. Dkt. 609 authorized $12,002.34 to Cort Thomas for Receiver expenses incurred only from October 1, 2023 through September 30, 2024. Dkt. 609 at 6–7. The Ninth Application's schedule includes October–December 2024 expenses, including December 23 and December 31 charges, outside that awarded period. Dkt. 902, APP008. Dkt. 609 therefore cannot support treating those later expenses as

already awarded. The $3,220.91 must be struck; the duplicate $36.30 FedEx line must be struck regardless.

*The accountant's expenses and payee.* The $478.65 consists of $228.66 "Postage and Courier" and $249.99 "Secretary of State Website," with no dates, receipts, entities, or purpose. Dkt. 902, APP034. Each line exceeds $75 and required an attached receipt. Billing Instructions § E.2(j)(4). The Receiver says Dkt. 609 "did not include" these amounts. Dkt. 901 at 8 n.3. Dkt. 609 granted the Fourth Application and awarded $563,081.75 to Ahuja & Clark for July–September 2023 accounting services, but not these $478.65 expenses. Dkt. 609 at 7. The Ninth Application gives no basis for carrying them forward. Without the required receipts and a supported basis for renewed payment, they should be denied. And the invoice is from "Ahuja & Consultants, Inc." while the proposed order pays "Ahuja & Clark, PLLC," Dkt. 902, APP032; Dkt. 901-1 at 2; the Court cannot order the estate to pay an entity that did not issue the invoice and is not shown to hold the receivable. The invoice's claim to be "net of write off fees of $6,370.50," APP037, identifies not one written-off entry, which is not the documentation *Saizan* requires. 448 F.3d at 799.

*The verified chronology.* The Application twice states that the Tenth Status Report for the quarter ending December 31, 2024 "was filed on October 30, 2024." Dkt. 901 at 5, 7. The Eighth Application likewise used the Seventh Application's Brown Fox figure, Dkt. 899 at 7, and this one carries a heading that does not match its own invoice. A verified application must be "true and accurate." Billing Instructions § A.1(b). These recurring errors require correction before payment.

*Restricted funds.* The SFAR and status report agree on $2,056,588.90 in ending cash, but the report identifies $400,192.49 held in D4OP's name and unavailable to other entities, and the proposed order authorizes payment "from the receivership assets" without identifying the source.

Dkt. 902, APP002; Dkt. 599 at 25 & n.19; Dkt. 901-1 at 1. The orders require custodial accounts and reporting per estate. Dkt. 417 ¶¶ 37, 58. No order should permit entity-specific charges to be paid from another entity's restricted funds.

## V. THE CHALLENGED WORK IS NOT SHOWN TO BE NECESSARY OR BENEFICIAL

*Privilege review.* Farwa Zahra billed 153.9 hours ($26,932.50) this quarter, 47.5% of everything Brown Fox charged, in twenty-nine entries of which twenty-seven read, in full, "Continue drafting privilege log of potential privileged paper documents found at Turtle Creek office." Dkt. 902, APP027–029. The other two are "[r]ecord contents of each box reviewed the day prior" (1.9 hours, $332.50) and "[c]reate privilege log spreadsheet" (6.4 hours, $1,120). APP027. With the second quarter's 94.4 hours and the third quarter's 232.3, the estate has now been charged 480.6 hours and $84,105 for one associate to sort and list paper in a storage unit. Dkt. 898, APP042–043; Dkt. 900, APP036–039. No entry states a box count, document count, or result. To the extent the entries reflect transcription, spreadsheet population, box inventory, or other clerical work rather than legal privilege analysis, § E.2(k) makes that work non-reimbursable and its value is not enhanced "just because a lawyer does it," *Walker*, 99 F.3d at 770. The Court's protocol contemplates a search-result report and an opportunity for Barton to assert personal privilege before release. Dkt. 235 ¶¶ 6–10, 12. After 480 hours and three quarters, the Application does not say that any log has been delivered to Barton or that a single document has been released or withheld. The Receiver has not shown what the estate bought for $84,105. The clerical entries should be disallowed and the balance reduced for boilerplate descriptions that permit no review.

*Two professionals at one meeting.* On November 14, 2024, the Receiver billed 2.9 hours ($1,116.50) for a "[m]eeting with T. Barton and K. Coker" and follow-up, and Mr. Wells billed

another 2.9 hours ($580) for the same meeting and follow-up with the Receiver. Dkt. 902, APP006, APP021–022. Neither entry explains why two timekeepers were required for the full duration, which is the duplication *Hensley* excludes. 461 U.S. at 434. The overlapping $580 should be disallowed.

*Surveillance of Barton's criminal case and website.* The invoices bill a paralegal to review "T. Barton's criminal case docket to determine attorney and the potential filing of any motion to release funds" ($22), Ms. Koonce to "[r]eview new website created by Barton" and "Barton's motion for extension of trial setting in his criminal case" (0.7 hour, $269.50), and the Receiver to "review latest actions and websites of Barton" and a "motion for continuance of criminal case" within a 0.6-hour, $231 block. Dkt. 902, APP007, APP022, APP025. The Application does not explain why or to what extent monitoring Barton's criminal docket or personal website was reasonably necessary to preserve or administer receivership property. Charges unsupported by that nexus should be disallowed.

*Chores at attorney rates.* Mr. Wells billed $40 to correspond with Terminix about an invoice, $60 for payroll, and, within a 2.7-hour entry on November 5, $40 for water and landscaper payments and $340 for travel to Rock Creek and an insurance self-inspection. Dkt. 902, APP018–022. "[N]on-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Walker*, 99 F.3d at 770 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (compensable "only if the work is legal rather than clerical"). Local travel within twenty miles "will not be reimbursed." Billing Instructions § E.2(j). The attorney-rate and travel components must be disallowed.

*Tax work.* The accountants billed 133.9 of 143.0 hours ($29,217.50 of $30,770, 95%) to "Tax Issues," Dkt. 902, APP032, while the Receiver's report says forensic accounting remained incomplete and a Walker Ranch settlement waited on it. Dkt. 599 at 23–24. On October 7, 2024, Ms. Kaur billed 6.5 hours ($975) to prepare "Form 1065 and 1120 for the year ending 2024 for 11 entities," APP035, but the entry does not identify the taxpayers, their tax years, or explain how final 2024 returns could properly be prepared at that time. On October 14, Mr. Kwande billed 3.8 hours ($1,045) for Texas returns for six Wall entities including "Wall008," which does not exist, with no separate time for it. APP036; Dkt. 417 at 4–5. Carnegie Development's 2023 Form 1120-SF consumed 20.2 hours ($5,854) this quarter on top of 40.4 hours ($11,110) last quarter, 60.6 hours and $16,964 for one return, with the entries describing attachments, schedules, and a "mailing packet" but never the balances transferred or the result. Dkt. 902, APP035–036; Dkt. 900, APP046, APP048–049. Entity-specific tax charges must be allocated to the entity that benefits. Dkt. 417 ¶¶ 37, 58. The $975 unnamed-entity charge, the Wall008 component, and the unexplained portion of the Form 1120-SF work should be disallowed.

## VI. THE HOLDBACK AND THE FILING HISTORY

The Receiver asks the Court to waive the 20% holdback the SEC supports. Dkt. 901 at 9. It should be imposed. Each application remains "interim" and subject to final cost-benefit review. Billing Instructions at 1; Dkt. 417 ¶¶ 63–67; Dkt. 650 ¶¶ 116–120. Nine applications were filed together on September 18, 2026, Dkts. 897–914, this one twenty months after it came due and only after Defendant objected to yet another extension, Dkts. 861, 870, although the orders required filing within forty-five days of each quarter. Dkt. 417 ¶ 64; Dkt. 650 ¶ 117. The facial errors and disclaimed expenses in these late-filed applications reinforce the need for the holdback. Defendant preserves all objections to completeness, accuracy, and compensability for final review.

## VII. RELIEF REQUESTED

Defendant asks that the Court: (1) withhold ruling until the Receiver lodges unredacted Exhibits B and C for *in camera* review within fourteen days and provide Defendant a sufficient nonprivileged narrative or privilege/redaction log; disallow inadequately documented entries; (2) require a corrected application that reconciles the proposed order to the stated request, corrects the Receiver's heading, the accountants' hours, and the status-report dates, and is re-served on the SEC for the full thirty-day review, with the SEC to file a statement identifying what it reviewed and when; (3) strike the $3,220.91 in disclaimed expenses, including the duplicate $36.30 FedEx charge; (4) disallow the $478.65 accountant expenses; clerical or unreviewable privilege-review charges; the $580 duplicate meeting time; unsupported criminal-docket or website-monitoring charges; attorney-rate or travel components of bill-paying entries; the $975 unnamed-entity tax charge; the Wall008 component; and unexplained Form 1120-SF work; (5) direct no payment to "Ahuja & Clark, PLLC" absent proof it holds the receivable; (6) impose the 20% holdback and strike the "unopposed" recital; (7) prohibit professional-fee payment from restricted D4OP funds; and (8) grant other just relief.

Dated: September 25, 2026
Respectfully submitted,
***/s/ Timothy L. Barton***

**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

## CERTIFICATE OF SERVICE

I certify that on September 25, 2026, this document was filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all registered counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**