**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| v. | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** *Relief Defendants.* | § | |

**DEFENDANT'S OBJECTION TO THE**
**RECEIVER'S TENTH QUARTERLY FEE APPLICATION**

Defendant Timothy L. Barton, pro se, objects to the Receiver's Tenth Quarterly Fee Application (Dkt. 903), Appendix (Dkt. 904), and proposed order (Dkt. 903-1) for January through March 2025. This time the totals add. Little else does. The Application swears that an associate who billed nothing this quarter performed "substantial effort" in it. It dates the status report it relies on to a day six months before the quarter began. It describes expenses that are not in the expense schedule and accountant expenses that are not on the accountant's invoice. It bills the estate for lawyers to defend the Receiver's own prior fee application, which the SEC's Billing Instructions forbid, and for a lawyer to spend a day at a hotel coordinating an electrician. The certificate of conference says the SEC reviewed this Application in April 2025, yet the filed version discusses events of August 2026. The Receiver verified this filing under penalty of perjury; the SEC told the Court it does not object; yet the record does not show timely SEC review. No payment should be authorized until the Receiver lodges unredacted invoices for*in camera*review and re-serves a corrected application for the required review period.

## I. THE RECEIVER BEARS THE BURDEN, AND THE COURT MUST SCRUTINIZE

The applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded, and "billing judgment" must be shown. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983). Billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). A court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326. In a receivership, results are "always relevant," and "[n]o receivership is intended to generously reward court-appointed officers." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 480, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975); *SEC v. Striker Petroleum, LLC*, No. 3:09-CV-2304-D, 2012 WL 685333, at *3 (N.D. Tex. Mar. 2, 2012). "The rights of those who ultimately pay must be carefully protected." *Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 252 (5th Cir. 2018) (quoting *Newton v. Consol. Gas Co.*, 259 U.S. 101, 105 (1922)). That duty does not wait for an objection: "the court can adjust the fee request[s] sua sponte." *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, slip op. at 2 (N.D. Tex. May 27, 2008) (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987)).

## II. THE RECORD DOES NOT SHOW TIMELY SEC REVIEW

SEC review is the gatekeeping step the Court built into its orders: the complete application, exhibits, and billing information must reach SEC counsel at least thirty days before filing, and the SEC, "[f]ollowing its receipt and review," is to "object to deviations and charges with which it does not agree." Dkt. 417 ¶ 64; Dkt. 650 ¶ 117; SEC, *Billing Instructions for Receivers* at 1, § A.2

("Billing Instructions"). The certificate of conference swears the Application and invoices went to SEC counsel on April 15, 2025, and that "[a] copy" was "again sent" on September 17, 2026, one day before filing. Dkt. 903 at 17. But the document filed on September 18, 2026 is not the document sent in April 2025: it discusses Barton's August 14, 2026 objection, the Court's August 20, 2026 order, and the August 24, 2026 SPC settlement motion. Dkt. 903 at 2–3. Whatever the SEC saw in 2025, it was not this Application, and a one-day resend does not satisfy a thirty-day requirement.

The public filing reveals these facial defects:(1) the Application states that "substantial effort was also performed by associate F. Zarah in completing a privilege review" this quarter, Dkt. 903 at 7, but no such timekeeper appearsin the Brown Fox fee table or anywhere in the invoice, Dkt. 903 at 6; Dkt. 904, APP015–028, the sentence having been copied from the Ninth Application, Dkt. 901 at 7; (2) the Application twice says the Eleventh Status Report, which covers the quarter ending March 31, 2025, "was filed on October 30, 2024," Dkt. 903 at 5, 7; Dkt. 636; (3) the Application describes the Receiver's expenses as including "entity-related searches with the Texas Secretary of State, postage, Fedex, and binding fees, website renewal fees, and transcript fees," Dkt. 903 at 5–6, the Ninth Application's list, Dkt. 901 at 5–6, while the schedule actually filed contains none of those items and consists of storage, a mailbox renewal, a courier charge, postage, and two Electricman invoices, Dkt. 904, APP007; (4) the Application describes the accountant's $34.10 in expenses as "postage and courier expenses, as well as certain Secretary of State fees," Dkt. 903 at 8, again the Ninth's language, while the invoice lists "Forms 1099 Filing Fees" and postage, Dkt. 904, APP032; (5) the Receiver measures his claimed 50% "discount" against a "regular billing rate" of $650, Dkt. 903 at 9, which was $575 in the Ninth Application filed the same day,

Dkt. 901 at 4 n.2, so the discount grew without any change to what the estate is charged; (6) the accountant's invoice is issued by "Ahuja & Consultants, Inc." and billed to Brown Fox, yet the order pays "Ahuja & Clark, PLLC," Dkt. 904, APP030; Dkt. 903-1 at 2; and (7) the SFAR reports $1,280,347.23 in ending cash while the status report gives $1,083,343.16, a $197,004.07 gap the Receiver has never bridged, Dkt. 904, APP002; Dkt. 636 at 66. Anyone of these discrepancies is addressed in the certificate of conference or proposed order.

Courts give the SEC's position "great weight" because the SEC is presumed to have done the review the orders assign to it. *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *Striker*, 2012 WL 685333, at *3. That presumption is rebutted here.Non-opposition does not establish meaningful review where the record does not show that the SEC received and reviewed the materially revised Application thirty days before filing.Even the SEC's qualified position is misreported: the SEC "believes it would be appropriate to impose a holdback" of 20%, Dkt. 903 at 9, 17, while the proposed order recites that "Plaintiff does not oppose the relief requested" and directspayment of 100%. Dkt. 903-1 at 1–2. This Court should not lend its signature to an order that recites a non-opposition the record contradicts. It should give the SEC's silence no weight, require the SEC to state on the record what it reviewed and when, and require the Receiver to re-serve a corrected application for the full thirty-day review before any ruling.

## III. ONE-FIFTH OF THE FEES ARE REDACTED; IN CAMERA REVIEW MUST PRECEDE ANY APPROVAL

Each entry must give "in reasonable detail an appropriate narrative description of the services rendered," including "the participants in, as well as the scope, identification and purpose of the activity." Billing Instructions § D.2.Redaction does not relieve the applicant of its burden to establish compensability. Yet 16 of the Receiver's 75 entries are redacted ($2,733.50 of

$14,360.50), as are 28 of Brown Fox's 97 entries ($12,357 of $39,180). Dkt. 904, APP005–012, APP015–028. In all, 44 entries and $15,090.50, 21% of the professional fees, can be evaluated by no one but the Receiver. Ms. Koonce's March 24 entry bills 2.4 hours ($924) to "[c]onfer with C. Thomas regarding ______" and for "research regarding ______." APP026. The Receiver's February 11 meeting with Ms. Koonce has no subject at all. APP006. Those entries support nothing.

The Receiver offers to "submit unredacted copies of this and prior invoices for *in camera* review" if "the Court desires." Dkt. 903 at 5, 7. The Court should desire. The burden is his, the objector cannot test what he cannot read, and documentation "too vague to permit meaningful review" is disallowed. *Kellstrom*, 50 F.3d at 326.Privilege or confidentiality does not eliminate the burden. The Court should require unredacted Exhibits B and C in camera within fourteen days, disclosure of nonprivileged information under a protective order, and disallow unsupported entries. Brown Fox placed 153.6 hours ($34,256.50), 87% of its fees, in "Case Administration," raising a § D.3 project-identification issue. Dkt. 904, APP017–027. Separately, Ms. Koonce's January 27 entry combines an FDCO settlement agreement with a fee-petition reply for 6.2 hours ($2,387) with no allocation, APP020, contrary to § D.4's requirement that entries over one hour "include a notation of the approximate time spent on each activity." Such entries should be reduced by a percentage that substitutes for the missing billing judgment. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

## IV. THE APPLICATION IS FACIALLY WRONG IN WAYS THAT REQUIRE DISALLOWANCE

*Defending the Receiver's own fees at the estate's expense.* "Time spent preparing fee applications, or any documentation in support thereof, may not be charged to the receivership

estate." Billing Instructions § E.1(d). The Receiver writes off his own time drafting applications, Dkt. 903 at 4–5, and then charges the estate for his lawyers to defend them. Clearly identified entries for reviewing Barton's objection to the Fourth Application and preparing the reply total 9.1 hours and $3,244.50: $423.50 for the Receiver and $2,821 for Brown Fox, including Mr. Wells's 4.2 hours ($840) on January 29 to "[r]eview and revise reply to Barton's opposition to fourth quarterly fee application." Dkt. 904, APP005, APP019–021. More fee-reply time is buried in mixed entries such as the January 27 entry above. A reply in support of a fee application is "documentation in support thereof."Moore involved appellate defense of an already-entered compensation order, not an interim fee application governed by § E.1(d). See*Moore*, 912 F.3d at 251–52. The $3,244.50 must be disallowed, with the fee-reply component of every mixed entry.

*The Electricman charges.* Two invoices from "Electricman, Inc. - Goldmark Hospitality," dated the same day, for $210.01 and $2,966.05, make up $3,176.06, or 51%, of the Receiver's expense request. Dkt. 904, APP007. Nothing identifies the work, distinguishes the charges, or establishes necessity or reasonableness. The Application itself does not mention an electrician. Dkt. 903 at 5–6. The Court should require adequate substantiation before allowing $3,176.06.

*The wrong payee and the phantom write-off.* The invoice is from "Ahuja & Consultants, Inc." and billed to Brown Fox. Dkt. 904, APP030. The proposed order pays "Ahuja & Clark, PLLC." Dkt. 903-1 at 2. The Court cannot order the estate to pay an entity that did not issue the invoice and is not shown to hold the receivable. The invoice's claim to be "net of write off fees of $3,080.00," APP034, identifies not one written-off entry, which is not the documentation *Saizan* requires. 448 F.3d at 799.

*The verified narrative.* A verified application must be "true and accurate." Billing Instructions § A.1(b). This one attributessubstantial work to an associate who billed nothing, dates

a report to the wrong year, describes expenses that were not incurred, and describes accountant expenses that do not match the accountant's invoice.Those sentences appear copied from the Ninth Application without reconciliation to the Tenth exhibits. The Court should not approve an unreconciled narrative,and the cash presentation, with an unbridged $197,004.07 gap and $400,192.49 in restricted D4OP funds, Dkt. 636 at 66 & n.24, cannot show that these payments are affordable from unrestricted assets. Dkt. 417 ¶¶ 37, 58.

## V. THE CHALLENGED WORK IS NOT SHOWN TO BE NECESSARY OR BENEFICIAL

*A lawyer as property manager.* On March 20, 2025, Mr. Wells billed 7.4 hours ($1,480) to "[t]ravel to and from Amerigold Suites; meet with electrician and retaining wall company and coordinate repair of wooden electrical boxes; debrief from same with C. Thomas; organize photos and receipts from same." Dkt. 904, APP025. With contractor research on March 18 (1.4 hours), vendor correspondence on March 19 (0.3), a handyman repair list on March 21 (0.5), and repair correspondence on March 26 (0.4), the repair project consumed 10.0 attorney hours and $2,000. APP025–026. Other entries bill $40 to pay an insurance premium and $60 to coordinate payroll. APP024, APP026. "[N]on-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Walker*, 99 F.3d at 770 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (compensable "only if the work is legal rather than clerical"). Local travel within twenty miles "will not be reimbursed," and the March 20 entry does not separate travel from anything else. Billing Instructions §§ D.4, E.2(j). The estate pays a property manager at Amerigold; it should not also pay a lawyer $200 an hour to meet an electrician. The attorney-rate and travel components of these entries must be disallowed.

*Litigation staffing.* Mr. Wells billed 7.4 hours ($1,480) on March 10, 4.6 hours ($920) on March 11, and 0.8 hour ($160) on March 12, 12.8 hours and $2,560, to research and prepare a response to a motion for more definite statement under Rule 12(e), with Ms. Koonce billing further review. Dkt. 904, APP024–025. The Application makes no attempt to show that this or the BM318, McCormick, and FHC work was "reasonably likely to produce a net economic benefit to the estate," and the Receiver's certification, Dkt. 903 at 15–16, contains none of the litigation certification the Instructions require. Billing Instructions § E.1(b); Dkt. 417 ¶¶ 44–45.Under § E.1(b), those charges should not be approved absent the required certification.

*Tax work.* The accountants billed $13,775 of $18,929 (73%) to "Tax Issues," Dkt. 904, APP030, most of it not the "preparation and filing of additional federal and state tax returns" the Application describes, Dkt. 903 at 8, but notices, reinstatements, and extensions: Mr. Kwande's notice-related entries alone total 21.4 hours ($5,885), with $325 more for Ms. Ahuja's review, in repeated descriptions that do not identify the taxpayer, the notice, or the resolution. APP033–034. Extension entries refer to "55 entities" and "24 entities" without naming them. *Id.* Entity-specific tax charges must be allocated to the entity that benefits. Dkt. 417 ¶¶ 37, 58. Unidentified notice and extension work should be reduced.

## VI. THE HOLDBACK AND THE FILING HISTORY

The Receiver asks the Court to waive the 20% holdback the SEC supports, on the strength of a discount measured against a rate he raised. Dkt. 903 at 9. It should be imposed. Every application is "interim and ... subject to a cost benefit review and final review." Billing Instructions at 1; Dkt. 417 ¶¶ 63–67; Dkt. 650 ¶¶ 116–120. Nine applications were filed on one day, September 18, 2026, Dkts. 897–914,this one more than sixteen months after the forty-five-day deadlineand only after Defendant objected to yet another extension,Dkts. 861, 870, although the orders required

filing within forty-five days of each quarter. Dkt. 417 ¶ 64; Dkt. 650 ¶ 117. Filing nine applications at once, with narratives copied from one quarter to the next and not reconciled with the exhibits, and demanding payment in full without holdback, is the opposite of the "concern for the investors" the Application professes. Dkt. 903 at 5. Defendant preserves every objection to the completeness, accuracy, and compensability of these fees for the final review the orders require.

## VII. RELIEF REQUESTED

Defendant respectfully asks that the Court: (1) withhold ruling pending review of unredacted Exhibits B and C *in camera* within fourteen days, require disclosure of nonprivileged information under a protective order, and disallow unsupported entries; (2) require a corrected application whose narrative matches its exhibits, re-served on the SEC for the full thirty-day review, with the SEC to state what it reviewed and when; (3) disallow the $3,244.50 fee-defense charges and fee-reply components and require substantiation before allowing the $3,176.06 Electricman reimbursement, and disallow the attorney-rate and travel components of the Amerigold repair and bill-paying entries, unallocated mixed or inadequately project-identified entries including the $2,387 January 27 entry, and unidentified tax-notice and extension work; (4) decline uncertified litigation charges absent the § E.1(b) certification; (5) direct that no payment issue to "Ahuja & Clark, PLLC" absentproof that it holds the receivable; (6) impose the 20% holdback and strike the proposed order's recital that the Application is unopposed; (7) prohibit payment of any professional fee from the restricted D4OP funds; and (8) grant all other just relief.

Dated: September 25, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, this document was filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all registered counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**