**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br> *Plaintiff,* <br> v. <br> **TIMOTHY BARTON, et al.,** <br> *Defendants,* <br> **DJD LAND PARTNERS, LLC, and LDG001, LLC,** <br> *Relief Defendants.* | § § § § § § § § § § § § § | **Civil Action No. 3:22-cv-02118-X** |

**DEFENDANT'S OBJECTION TO THE
RECEIVER'S ELEVENTH QUARTERLY FEE APPLICATION**

Defendant Timothy L. Barton, pro se, objects to the Receiver's Eleventh Quarterly Fee Application (Dkt. 905), proposed order (Dkt. 905-1), and belated appendix (Dkt. 917) for April through June 2025. The sworn write-off conflicts with the invoice; challenged charges include personal grievance defense, attorney-rate errands, and family litigation later dismissed for lack of evidence. The record does not establish timely SEC review of the materially revised Application. Neither verification nor non-opposition cures these defects. No fee should be approved without unredacted invoices lodged *in camera* and a corrected application supported by documented thirty-day SEC review.

## I. THE RECEIVER BEARS THE BURDEN, AND THE COURT MUST SCRUTINIZE

The applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded, and "billing judgment" must be shown. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437

(1983). Billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). A court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326. In a receivership, results are "always relevant," and "[n]o receivership is intended to generously reward court-appointed officers." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 481 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975); *SEC v. Striker Petroleum, LLC*, No. 3:09-CV-2304-D, 2012 WL 685333, at *3 (N.D. Tex. Mar. 2, 2012). "The rights of those who ultimately pay must be carefully protected." *Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 252 (5th Cir. 2018) (quoting *Newton v. Consol. Gas Co.*, 259 U.S. 101, 105 (1922)). That duty does not wait for an objection: "the court can adjust the fee request[s] sua sponte." *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, slip op. at 2 (N.D. Tex. May 27, 2008) (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987)).

## II. THE RECORD DOES NOT ESTABLISH TIMELY SEC REVIEW OF THE REVISED APPLICATION

The complete application, exhibits, and billing information must reach SEC counsel at least thirty days before filing; the SEC, "[f]ollowing its receipt and review," must "object to deviations and charges with which it does not agree." Dkt. 417 ¶ 64; Dkt. 650 ¶ 117; SEC, *Billing Instructions for Receivers* at 1, § A.2 ("Billing Instructions"). The certificate says the Application and invoices were sent August 4, 2025, and "[a] copy" was "again sent" September 17, 2026, one day before filing. Dkt. 905 at 17. Yet the filed Application discusses Barton's August 14, 2026 objection, the August 20, 2026 order, and the August 24, 2026 SPC settlement motion. Dkt. 905 at 2–3. Whatever the SEC reviewed in August 2025 was not this materially revised Application. Although invoices

were supplied in 2025, the record does not establish receipt of the revised Application and all supporting materials thirty days before filing. Non-opposition does not establish compliance. Separately, Dkt. 906 reproduces the Application instead of the appendix; the SFAR and invoices were not publicly filed until September 21, 2026. Dkt. 917. Filing without the appendix violates Local Rule 7.1(i).

The public filings disclose: (1) the Receiver swears he "written off" 31.2 hours worth $12,012, Dkt. 905 at 4, but his invoice carries 24.0 no-charge hours, and 59.1 hours less 31.2 would leave 27.9 charged hours and a fee of $10,741.50, not the $13,513.50 requested, Dkt. 917, APP006–014; (2) the Application identifies the Twelfth Status Report as "Dkt. 636" in one place and "Dkt. 663" in others, and says it was filed on "July 30, 2025" on one page and "July 31, 2025" on the next, Dkt. 905 at 5, 7, 8; (3) Dkt. 906 reproduces the verified Application instead of supplying the appendix; (4) the accountant's invoice is issued by "Ahuja & Consultants, Inc." and billed to Brown Fox, yet the order pays "Ahuja & Clark, PLLC," and the order describes the $51,016.50 as "fees and expenses" although the invoice contains no expenses, Dkt. 917, APP036; Dkt. 905-1 at 2; (5) three of Mr. Carrillo's entries bill more time than their own allocations account for, including June 16 (allocations of 0.9 and 1.8 hours billed as 3.7 hours, $300 unexplained), Dkt. 917, APP018–019; (6) the Receiver measures his claimed "over 60%" discount against a "regular billing rate" that has risen from $575 to $650 across these applications while the estate's rate did not move, Dkt. 905 at 4 n.2; Dkt. 901 at 4 n.2; and (7) the SFAR reports $2,042,326.68 in ending cash while the status report gives $1,833,697.46, a $208,629.22 difference that the cited filings do not reconcile, Dkt. 917, APP002; Dkt. 663 at 67. Non-opposition resolves none of these defects.

Courts give the SEC's position "great weight" because the SEC is presumed to have performed the assigned review. *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *Striker*, 2012 WL 685333, at *3. Timely review of this revised Application is not established. Non-opposition neither proves compliance nor cures these defects. Moreover, the SEC supports a 20% holdback, Dkt. 905 at 8–9, 17, but the proposed order recites that "Plaintiff does not oppose the relief requested" and directs 100% payment. Dkt. 905-1 at 1–2. The Court should reject that recital, require the SEC to identify what it reviewed and when, and require re-service of the corrected application and exhibits for full thirty-day review before ruling.

## III. TWO-FIFTHS OF COUNSEL'S FEES ARE REDACTED; IN CAMERA REVIEW MUST PRECEDE ANY APPROVAL

Each entry must give "in reasonable detail an appropriate narrative description of the services rendered," including "the participants in, as well as the scope, identification and purpose of the activity." Billing Instructions § D.2. Any claim of privilege must be explained sufficiently to permit review without disclosing protected advice. Yet 50 of Brown Fox's 135 entries are redacted, 99.6 of 244.3 hours and $22,030.50 of $52,729, 42% of the firm's fees, as are 16 of the Receiver's 84 entries ($2,271.50). Dkt. 917, APP006–014, APP016–034. In all, 66 entries and $24,302 are inaccessible to meaningful review on the public record. Ms. Koonce's April 1 call, analysis, and research entry conceals its subjects (2.6 hours, $1,001). APP016. Mr. Wells's June 30 entry allocates 4.6 hours ($920) to a response to something the estate is not permitted to know. APP031. The April 28 meeting among the Receiver, Mr. Wells, and Mr. Hopper is billed by two of them ($643.50) with its subject concealed. APP007, APP023–024. Those entries support nothing.

The Receiver offers unredacted invoices *in camera* if "the Court desires." Dkt. 905 at 5, 7. His burden requires documentation permitting meaningful review. *Kellstrom*, 50 F.3d at 326. Privilege may protect billing narratives; it does not establish compensability. The Receiver should lodge complete unredacted copies of Exhibits B and C in camera within fourteen days and provide sufficiently descriptive nonprivileged entries or an appropriate privilege explanation. Disclosure to Defendant under a protective order should extend to material the Court determines appropriate; entries the Court cannot meaningfully evaluate should be disallowed. Entries over one hour that combine activities must "include a notation of the approximate time spent on each activity," Billing Instructions § D.4; Mr. Carrillo's entries that bill more than they allocate ($420 in unexplained time) should be reduced to their allocations, and other unallocated mixed entries reduced by a percentage that substitutes for the missing billing judgment. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

## IV. THE APPLICATION IS FACIALLY WRONG IN WAYS THAT REQUIRE DISALLOWANCE

*The write-off that does not exist.* Billing judgment "requires documentation ... of the hours written off." *Saizan*, 448 F.3d at 799. The Receiver's sworn statement that he wrote off 31.2 hours is contradicted by his own invoice, which documents 24.0. Dkt. 905 at 4; Dkt. 917, APP006–014. The 7.2-hour difference is worth $2,772 at his rate. A verified application must be "true and accurate." Billing Instructions § A.1(b). The Court should hold the Receiver to his sworn write-off and reduce the Receiver's fee to $10,741.50, or at minimum disallow the $2,772 that his two inconsistent accounts leave unsupported.

*Defending Ms. Koonce's grievance at the estate's expense.* Barton filed a State Bar grievance against Ms. Koonce. The estate is being billed for her defense: Mr. Wells's response to

the "bar complaint against C. Koonce" on May 16 (2.1 hours), May 27 (1.7), and June 27 (2.8), $1,320; his May 23 review of the "supplemental bar complaint" ($80); Ms. Koonce's May 22 conference about the grievance ($154) and June 12 request to the State Bar investigator for an extension ($38.50); and the Receiver's June 10 review of the "reply to Barton's responses regarding Grievance" ($154). Dkt. 917, APP008, APP025–027, APP029, APP031. That is $1,746.50 in entries that name the grievance, before the mixed entries that combine grievance work with other tasks: Ms. Koonce's May 15 entry (2.5 hours, $962.50) and the Receiver's June 11 entry (0.7 hour, $269.50). APP008, APP025. A grievance is a proceeding against a lawyer personally. Its defense is the lawyer's expense, or her firm's, not the receivership's, and nothing in the orders authorizes the estate to fund it. Dkt. 417 ¶¶ 44–45. *Moore* allows a court officer to recover the cost of defending a compensation order, 912 F.3d at 251–52; it says nothing about a disciplinary complaint. The $1,746.50 must be disallowed, and the grievance component of the mixed entries with it.

*The wrong payee and the phantom write-off.* The invoice is from "Ahuja & Consultants, Inc." and billed to Brown Fox. Dkt. 917, APP036. The proposed order pays "Ahuja & Clark, PLLC." Dkt. 905-1 at 2. The Court cannot order the estate to pay an entity that did not issue the invoice and is not shown to hold the receivable. The invoice's claim to be "net of write off fees of $245.00," APP041, identifies not one written-off entry.

*The cash presentation.* The SFAR reports $2,042,326.68; the status report gives $1,833,697.46 in receivership bank accounts, a $208,629.22 difference that the cited filings do not reconcile. Dkt. 917, APP002; Dkt. 663 at 67. The same report identifies $60,000 for Walker Ranch and $400,192.49 held in D4OP's name and unavailable to other entities, Dkt. 663 at 67 n.25, and the proposed order authorizes payment "from the receivership assets" without identifying the

source. The orders require custodial accounts and reporting per estate. Dkt. 417 ¶¶ 37, 58. An unreconciled cash presentation cannot show affordability, and no order should permit payment from restricted funds.

## V. THE CHALLENGED WORK IS NOT SHOWN TO BE NECESSARY OR BENEFICIAL

*Lawyers as couriers and property managers.* The Receiver writes off his own trips to deliver paychecks at Amerigold. Dkt. 905 at 4; Dkt. 917, APP010–013. Then Mr. Hopper bills 0.5 hour at $300 to "travel to Amerigold Suites to deliver paychecks" ($150), 3.4 hours ($1,020) to drive to Venus and "inspect receivership properties," and 1.0 hour ($300) for a property-manager meeting about maintenance. APP027–028. Mr. Wells bills 1.7 hours ($340) to troubleshoot a credit-card machine at Amerigold, including travel. APP017. Mr. Carrillo bills 1.0 hour ($300) for "travel to and from" a Dallas bankruptcy status conference. APP019. "[N]on-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Walker*, 99 F.3d at 770 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (compensable "only if the work is legal rather than clerical"). Local travel within twenty miles "will not be reimbursed," and longer travel is billable at half rate. Billing Instructions § E.2(j). The Receiver cannot write off his own paycheck deliveries as unworthy of compensation and bill the same errand at $300 an hour when an associate makes it. These charges must be disallowed.

*Suing Barton's family.* Brown Fox's "Fu, et al. Litigation" category alone carries 27.4 hours and $6,645.50 this quarter. Dkt. 917, APP031–034. The Receiver's own report says the family sought stay relief in March 2025, the claims were severed in April, and Martine Barton was then dismissed without prejudice because evidence showed the transfers attributed to her had

benefited Barton or receivership entities. Dkt. 663 at 71–72. The estate paid to sue her and then paid to dismiss her. Litigation charges "will be paid only if the litigation is reasonably likely to produce a net economic benefit to the estate," and the applicant "shall certify" that determination based on the legal theories, "the likelihood of collection," and alternatives. Billing Instructions § E.1(b). The Receiver's certification, Dkt. 905 at 15–16, contains no such statement, and the entries do not allocate work among defendants. Mr. Wells's $260 summary of Victoria Barton's car payments and $280 in further payment summaries, APP030, APP033–034, do not identify what claim they support. The uncertified $6,645.50 should be disallowed.

*Strategy memoranda that go nowhere.* After the Fifth Circuit's April 2025 decision, Mr. Wells billed 2.9 hours on May 13, 3.7 on May 15, 1.9 on May 28, and 1.6 on June 24, 10.1 hours and $2,020, to prepare and re-prepare a "strategy summary," with no work product, decision, or use identified. Dkt. 917, APP019, APP025–027. Repeated drafting of an internal memorandum for a departing associate is the "redundant" time *Hensley* excludes. 461 U.S. at 434. The $2,020 should be reduced.

*Tax work.* The accountants billed $46,085 of $51,016.50 (90%) to "Tax Issues." Dkt. 917, APP036–041. Mr. Kwande billed 8.7 hours ($2,392.50) across April 16, 21, and 30 for "planning" and "task assignments" before any return was prepared, APP038; the May 19 and 22 Form 1065 entries list the same entities for $630 in apparently duplicative or unexplained repeated preparation entries, APP039; and a June 3 entry bills $1,705 to "trace" K-1s for 26 entities without naming a result, APP040, while the Receiver's report concedes forensic accounting was pursued "only to a limited extent" that quarter. Dkt. 663 at 60–61. Entity-specific tax charges must be allocated to the entity that benefits. Dkt. 417 ¶¶ 37, 58. Apparently duplicative or unexplained repeated preparation

entries, unallocated charges, and planning-only charges should be reduced absent an adequate explanation.

## VI. THE HOLDBACK AND THE FILING HISTORY

The Receiver asks the Court to waive the 20% holdback the SEC supports, citing a discount computed on a write-off his invoice does not support. Dkt. 905 at 8–9. It should be imposed. Every application is "interim and ... subject to a cost benefit review and final review." Billing Instructions at 1; Dkt. 417 ¶¶ 63–67; Dkt. 650 ¶¶ 116–120. Nine applications were filed on one day, September 18, 2026, Dkts. 897–914, this one fourteen months after it came due and only after Defendant objected to yet another extension, Dkts. 861, 870, although the orders required filing within forty-five days of each quarter. Dkt. 417 ¶ 64; Dkt. 650 ¶ 117. This Application was filed twice, without its exhibits, with a sworn write-off its own invoice contradicts. That is the opposite of the "concern for the investors" it professes. Dkt. 905 at 5. Defendant preserves every objection to the completeness, accuracy, and compensability of these fees for the final review the orders require.

## VII. RELIEF REQUESTED

Defendant respectfully asks that the Court: (1) disregard Dkt. 906 as the erroneously duplicated Application rather than the appendix; (2) withhold approval pending complete unredacted Exhibits B and C lodged *in camera* within fourteen days, sufficiently descriptive nonprivileged entries or an appropriate privilege explanation, and disclosure to Defendant under protective order to the extent appropriate; disallow entries the Court cannot meaningfully evaluate; (3) require a corrected application and exhibits reconciling the write-off and correcting docket/date references, re-served for full thirty-day SEC review, with a statement of what the SEC reviewed and when; (4) reduce the Receiver's fee to $10,741.50 or disallow at least $2,772; (5) disallow the $1,746.50 grievance charges and grievance portions of mixed entries, attorney-rate courier,

inspection, and travel charges, $420 in unallocated Carrillo time, and uncertified $6,645.50 family-litigation charges; reduce apparently duplicative or unexplained repeated tax-preparation and planning-only charges absent adequate explanation, and the $2,020 in repeated strategy summaries; (6) decline payment to "Ahuja & Clark, PLLC" without proof it holds the receivable and decline approval of unsupported accountant "expenses"; (7) impose the 20% holdback and decline to enter the proposed order in its present form, including its non-opposition recital; (8) prohibit professional-fee payment from restricted D4OP funds; and (9) grant all other just relief.

Dated: September 25, 2026
Respectfully submitted,
***/s/ Timothy L. Barton***
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

## CERTIFICATE OF SERVICE

I certify that on September 25, 2026, this document was filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all registered counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**