**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br> *Plaintiff,* | § | |
| v. | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** <br> *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** <br> *Relief Defendants.* | § | |

**DEFENDANT'S OBJECTION TO THE**
**<u>RECEIVER'S TWELFTH QUARTERLY FEE APPLICATION</u>**

Defendant Timothy L. Barton, pro se, objects to the Receiver's Twelfth Quarterly Fee Application (Dkt. 907), Appendix (Dkt. 908), and proposed order (Dkt. 907-1) for July–September 2025. The filing shows: $7,997.50 in entries naming the State Bar grievance against Ms. Koonce, plus thousands more in mixed entries, without a showing that disciplinary-defense work recovered or conserved Receivership Property or otherwise benefited the estate; $6,260 for a departing associate's "strategy summary" during his last two weeks; an SFAR classifying all $851,456.62 of quarterly disbursements as payments "to Receiver or Other Professionals" although the status report shows $594,116.90 paid to professionals; and 29% of professional fees behind redactions. The certificate says the SEC reviewed this Application in November 2025, yet the filed version discusses August 2026 events. The Receiver verified it under penalty of perjury; the SEC's non-opposition was qualified by support for a 20% holdback, the record does not establish that the version actually filed received the required thirty-day SEC review. Not one dollar should be

approved until the Receiver lodges unredacted invoices for *in camera* review and files a corrected application that is re-served for the full thirty-day SEC review required by the Receivership Order.

## I. THE RECEIVER BEARS THE BURDEN, AND THE COURT MUST SCRUTINIZE

The applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded, and "billing judgment" must be shown. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983). Billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). A court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326. In a receivership, results are "always relevant," and "[n]o receivership is intended to generously reward court-appointed officers." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 481 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975); *SEC v. Striker Petroleum, LLC*, No. 3:09-CV-2304-D, 2012 WL 685333, at *3 (N.D. Tex. Mar. 2, 2012). "The rights of those who ultimately pay must be carefully protected." *Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 252 (5th Cir. 2018) (quoting *Newton v. Consol. Gas Co.*, 259 U.S. 101, 105 (1922)). That duty does not wait for an objection: "the court can adjust the fee request[s] sua sponte." *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, slip op. at 2 (N.D. Tex. May 27, 2008) (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987)).

## II. THE SEC DID NOT REVIEW THIS APPLICATION, AND ITS NON-OPPOSITION DESERVES NO WEIGHT

The orders require the complete application, exhibits, and billing information to reach SEC counsel at least thirty days before filing, with the SEC to review and object to disputed charges. Dkt. 417 ¶ 64; Dkt. 650 ¶ 117; SEC, Billing Instructions for Receivers at 1, § A.2 ("Billing Instructions"). The certificate says the Application and invoices went to the SEC November 5, 2025 and "[a] copy" was "again sent" September 17, 2026—one day before filing. Dkt. 907 at 17. But the September 18 filing discusses Barton's August 14, 2026 objection, the Court's August 20 order, and the August 24 SPC motion. Dkt. 907 at 2–3. Whatever the SEC reviewed in 2025 was not the September 2026 version; one-day service does not satisfy Dkt. 650 ¶ 117. The SEC did not read the version filed.

What the SEC missed is worse. From the public papers alone: (1) the SFAR puts all $851,456.62 in "Disbursements to Receiver or Other Professionals," while the same-quarter status report shows $594,116.90 paid on the Fifth and Sixth fee awards plus separate taxes, utilities, insurance, and repairs—so either $257,339.72 went to professionals without approval or the SFAR misclassifies estate spending, Dkt. 908, APP002; Dkt. 689 at 71–72; Billing Instructions § C.4; (2) the Application says additional time was written off to get Jimmy Hopper "up to speed," yet the invoice shows only 1.6 no-charge Hopper hours against 54.4 billed, Dkt. 907 at 7; Dkt. 908, APP027–028; (3) four entries exceed their allocations—Carrillo Aug. 25 (0.9/1.0), Aug. 27 (1.5/1.6), Sept. 25 (4.0/4.3), and Hopper Sept. 5 (1.4/1.5)—$180 unallocated, APP018–019, APP021, APP023; (4) "Ahuja & Consultants, Inc." invoices Brown Fox, but the proposed order pays "Ahuja & Clark, PLLC" for "fees and expenses" although the Application says no accountant expenses were incurred, APP034; Dkt. 907 at 8; Dkt. 907-1 at 2; (5) the Receiver's claimed "over

50%" discount uses a $650 regular rate, while the Ninth Application filed the same day uses $575, Dkt. 907 at 4 n.2; Dkt. 901 at 4 n.2; and (6) storage rose from $806 to $961 in one month without explanation, while a $468.15 Terminix reimbursement sits beside $1,471.35 in pest-control payments reportedly paid directly by the estate, APP007–008; Dkt. 689 at 72. Anyone who opened the exhibits would have caught these. The SEC caught none.

SEC positions receive "great weight" because review is presumed. *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *Striker*, 2012 WL 685333, at *3. The presumption is rebutted here. Non-opposition to an application the SEC could not have read is not acquiescence; it is abdication by the party that sought this receivership and now would have the estate pay without looking at the bill. The SEC's position is also misreported: it supports a 20% holdback, Dkt. 907 at 9, 17, while the proposed order says "Plaintiff does not oppose the relief requested" and directs 100% payment. Dkt. 907-1 at 1–2. The Court should not sign a recital the record contradicts; it should give the SEC's silence no weight, require the SEC to state what it reviewed and when, strike the recital, and require full thirty-day review of a corrected application before ruling.

## III. MORE THAN A QUARTER OF THE FEES ARE REDACTED; IN CAMERA REVIEW MUST PRECEDE ANY APPROVAL

Billing entries must reasonably detail the services, participants, scope, identity, and purpose. Billing Instructions § D.2. Nothing there authorizes redacting time entries. Yet 50 of Brown Fox's 141 entries are redacted—96.3 of 251.3 hours and $27,012 of $69,455.50, 39% of its fees—and 14 of the Receiver's 72 entries are redacted ($4,966.50). Dkt. 908, APP005–014, APP016–032. Altogether, 64 entries and $31,978.50—29% of professional fees—cannot be evaluated publicly. Wells's July 9–10 entries allocate 5.2 and 4.3 hours ($1,900) to revising an

unidentified document. APP025. Koonce's July 2 entry bills 4.5 hours ($1,732.50) for concealed conferences, property-sale appeals, SEC communications, and a grievance response; her August 12 entry bills 3.3 hours ($1,270.50) for a concealed discussion, SPC mediation, and an SEC call about intended amicus briefs, with no allocation among purposes. APP016–017.

The Receiver offers unredacted invoices for in camera review "if the Court desires." Dkt. 907 at 5, 7. The Court should desire: the burden is his, concealed work cannot be tested, and vague support may be disallowed. *Kellstrom*, 50 F.3d at 326. Privilege does not erase fee substantiation; in camera review protects it while testing necessity, allocation, duplication, and compensability. The Court should require unredacted Exhibits B and C within fourteen days, protected disclosure to Defendant as appropriate, and disallow unsupported entries. Mixed entries over one hour must approximate time by activity. Billing Instructions § D.4. Reduce the $180 over-billed entries to their allocations and unallocated mixed entries by an appropriate percentage for missing billing judgment. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

## IV. THE APPLICATION IS FACIALLY WRONG IN WAYS THAT REQUIRE DISALLOWANCE

*Ms. Koonce's grievance defense, billed to the estate.* Barton's State Bar grievance was dismissed October 17, 2025. Dkt. 689 at 21. July 1–August 7 charges naming it were: Wells July 1, 6.3 hours/$1,260; Koonce July 7, 6.2/$2,387, July 21, 0.8/$308, July 23, 5.8/$2,233, July 24, 3.9/$1,501.50; Receiver July 11, July 24, and August 7, 0.8/$308. Dkt. 908, APP006–007, APP023–024, APP027. Total: 23.8 hours/$7,997.50, before Koonce's July 2 and 9 mixed entries ($1,732.50; $1,001) and Carrillo's $90 grievance-appeal appearance and $60 appeal amicus work. APP016, APP020, APP022. A grievance targets the lawyer personally; the Application does not show this defense recovered/conserved Receivership Property, benefited the estate, or is otherwise

compensable. Dkt. 417 ¶¶ 44–45. *Moore* permits costs of defending a compensation order, 912 F.3d at 251–52, not personal disciplinary defense. The estate also funds an amicus brief in an appeal to which it is not a party. Disallow all allocated and mixed grievance time absent the required estate-benefit showing.

*The SFAR.* Billing Instructions § C.4 requires a quarterly SFAR. This one puts every disbursement on line 10a as professional payments and zeroes operating expenses/taxes. Dkt. 908, APP002. Yet the status report shows $594,116.90 in Fifth/Sixth fee awards plus separate taxes, utilities, insurance, repairs, and other operating costs. Dkt. 689 at 71–72. It also reports $650,690.73 main-account plus $203,565.89 Amerigold disbursements—$854,256.62, $2,800 above the SFAR—and notes a $2,800 rent-check chargeback without showing its SFAR treatment. Id. at 70–72 & n.24. Thus $257,339.72 of the SFAR's professional-payment classification and the separate $2,800 remain unreconciled. That cannot support a finding the estate can afford these fees; it is also accountants' work product billed at APP036. Require a corrected SFAR before ruling.

*The wrong payee and phantom write-off.* "Ahuja & Consultants, Inc." invoices Brown Fox, while the proposed order pays "Ahuja & Clark, PLLC." Dkt. 908, APP034; Dkt. 907-1 at 2. The record does not establish that Ahuja & Clark owns the receivable; payment should await proof of assignment, succession, agency, or other entitlement. The invoice also claims a $577.50 write-off without identifying any removed entry. APP038. That is not the documentation *Saizan* requires. 448 F.3d at 799.

*Expenses.* Two storage units cost $806 in August and September and $961 in October, a 19% unexplained increase, and the Application does not explain why both remain needed after reported completion of the paper privilege review. Dkt. 908, APP007–008, APP032. The $468.15

Terminix reimbursement requires the vendor invoice/receipt, proof of payment, benefited-entity allocation, and confirmation it does not duplicate the separately reported $1,471.35 pest-control payments. Dkt. 689 at 72. Unsupported expenses should be denied.

## V. THE CHALLENGED WORK IS NOT SHOWN TO BE NECESSARY OR BENEFICIAL

*A departing associate's "strategy summary."* Wells left Brown Fox July 31, 2025. Dkt. 907 at 7. During his final two weeks he billed July 16 (3.4), 17 (3.5), 18 (2.4), 21 (2.1), 22 (2.6), 24 (3.8), 28 (6.2), and 29 (7.3): 31.3 hours/$6,260 to "continue preparing strategy summary in light of Fifth Circuit decision." Dkt. 908, APP026–027. He had billed another 10.1 hours/$2,020 on the same summary the prior quarter. Dkt. 917, APP019, APP025–027. That is 41.4 hours/$8,280 for an internal memorandum whose contents, use, and recipient are unidentified. Repeated drafting is redundant under *Hensley*, 461 U.S. at 434; a departing lawyer's transition memorandum is the firm's cost. The $6,260 should be disallowed.

*Lawyers as vendors' clerks.* Mr. Wells billed $40 to coordinate payroll and $60 to coordinate a repair payment; Mr. Hopper billed $120 for lawn-service communications, $60 for a vendor payment, $30 to email about a fire extinguisher, and $120 to handle pest-control and lawn invoices, all at $300 an hour. Dkt. 908, APP018, APP020, APP027–029. "[N]on-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Walker*, 99 F.3d at 770 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (compensable "only if the work is legal rather than clerical"). The attorney-rate component of these $430 must be disallowed.

*Privilege review, quarter four.* Zahra billed 10.4 hours/$1,820 to "[g]o through additional storage unit boxes," bringing four-quarter paper privilege review to 491.0 hours/$85,925. Dkt.

908, APP031–032; Dkt. 898, APP042–043; Dkt. 900, APP036–039; Dkt. 902, APP027–029. The Application still does not say any log was delivered under Dkt. 235 ¶¶ 6–10, 12, or that one document was released or withheld. It does not show what the estate bought for $85,925.

*Suing Barton's family.* The "Fu, et al. Litigation" category carries 4.1 hours ($1,578.50), including a concealed conference and renewed-stay work, and further family-litigation drafting appears elsewhere, including Mr. Hopper's September 15 allocation of 3.2 hours ($960) concerning Max and Victoria Barton. Dkt. 908, APP013, APP017, APP021–022, APP031. Litigation charges "will be paid only if the litigation is reasonably likely to produce a net economic benefit to the estate," and the applicant "shall certify" that determination. Billing Instructions § E.1(b). The Receiver's certification, Dkt. 907 at 15–16, contains no such statement, one quarter after he dismissed Martine Barton because the evidence did not support the claim. Dkt. 663 at 71–72. Uncertified litigation charges should be disallowed.

*Tax work.* Accountants billed $22,171.50 of $23,036.50 (96%) to "Tax Issues" and $865 to accounting. Dkt. 908, APP034. Three clusters lack support for time or rate: $1,402.50 for manager "planning"/"assignments" July 22–23; $2,392.50 for database searches and entity-status reports July 30–31 at a $275 manager rate; and $1,237.50 for September 17 and 22 "continued review" of Texas returns naming no entity, issue, or result. APP036–038. Unsupported portions of these $5,032.50 should be reduced.

## VI. THE HOLDBACK AND THE FILING HISTORY

The Receiver asks to waive the SEC-supported 20% holdback. Dkt. 907 at 9. Applications are interim and subject to final cost-benefit review. Billing Instructions at 1; Dkt. 417 ¶¶ 63–67; Dkt. 650 ¶¶ 116–120. Dkt. 609 declined a holdback because professionals had gone unpaid over a year and deferred several applications. Dkt. 609 at 6. Here, nine applications were filed together

September 18, 2026, Dkts. 897–914; this one has the defects above; and the SEC again supports 20%. Discounts reduce charges; a holdback preserves part of an interim award. Impose 20% on any newly approved unpaid amount or make a case-specific contrary finding. This Application was roughly ten months late and filed only after Defendant opposed another extension, Dkts. 861, 870, despite the forty-five-day rule. Dkt. 417 ¶ 64; Dkt. 650 ¶ 117. The Receiver's claimed "concern for the investors," Dkt. 907 at 5, does not eliminate a holdback on this disputed record. Defendant preserves all completeness, accuracy, and compensability objections for final review.

*Payment source and D4OP restrictions.* The proposed order authorizes payment from "receivership assets recovered by the Receiver" without identifying the paying account or entity. Dkt. 907-1 at 1–2. The Sixteenth Status Report identifies $400,192.49 held in D4OP's name as unavailable to other Receivership Entities, Dkt. 838 at 76 n.29, and Exhibit A-4 says D4OP account use is "generally restricted by HUD regulations." Dkt. 838-1, Ex. A-4. This Application does not show those funds may pay general professional fees or what portion is chargeable to D4OP. Any payment order should exclude D4OP funds absent proof the payment is HUD-permitted and attributable to D4OP.

## VII. RELIEF REQUESTED

Defendant asks the Court to: (1) withhold ruling pending unredacted Exhibits B/C in camera within fourteen days, protected disclosure as appropriate, and disallowance of unsupported entries; (2) require a corrected application/SFAR accurately classifying disbursements and reconciling $2,800, re-served for full thirty-day SEC review, with the SEC stating what version it reviewed and when; (3) disallow $7,997.50 grievance entries, July 2/9 mixed grievance components, and $150 appeal work absent estate benefit; (4) disallow $6,260 strategy-summary charges, attorney-rate portions of $430 vendor/payment entries, $180 over-billed time, uncertified

family-litigation charges, and unsupported tax clusters, and reduce privilege-review charges for no demonstrated result; (5) deny the storage increase and Terminix reimbursement absent invoice/receipt, payment proof, allocation, and nonduplication; (6) withhold payment to "Ahuja & Clark, PLLC" absent entitlement proof and strike accountant "expenses"; (7) impose 20% holdback on newly approved unpaid amounts, or make a case-specific contrary finding, and strike the unopposed recital; (8) bar professional-fee payment from restricted D4OP funds absent proof it is HUD-permitted and chargeable to D4OP; and (9) grant all other just relief.

Dated: September 25, 2026
Respectfully submitted,
***/s/ Timothy L. Barton***
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, this document was filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all registered counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**