**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| v. | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** *Relief Defendants.* | § | |

**DEFENDANT'S OBJECTION TO THE**
**RECEIVER'S THIRTEENTH QUARTERLY FEE APPLICATION**

Defendant Timothy L. Barton, pro se, objects to the Receiver’s Thirteenth Quarterly Fee Application (Dkt. 909), Appendix (Dkt. 910), and proposed order (Dkt. 909-1) for October through December 2025. The components add to the $73,376.60 requested. The Application nonetheless states the Receiver’s own fee two different ways, dates the status report it relies on to a day before the quarter ended, attaches a fund accounting report captioned for the wrong quarter, names the accountant three different ways across the Application, the invoice, and the proposed order, and asks the estate to pay $10,542 for a fourth amicus brief supporting the SEC, bringing the amicus total charged to investors to more than $40,000. The certificate of conference says this Application and its invoices were provided to the SEC in February 2026, yet the filed version discusses events of August 2026. The Receiver verified this filing under penalty of perjury; the Application reports that the SEC does not object except for a 20% holdback; the filed record does not establish that the Application actually filed received the required thirty-day SEC review. Approval should be

withheld until the Receiver lodges unredacted invoices for *in camera* review and files a corrected application that receives the required thirty-day SEC review.

## I. THE RECEIVER BEARS THE BURDEN, AND THE COURT MUST SCRUTINIZE

The applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded, and "billing judgment" must be shown. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983). Billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). A court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326. In a receivership, results are "always relevant," and "[n]o receivership is intended to generously reward court-appointed officers." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 481 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975); *SEC v. Striker Petroleum, LLC*, No. 3:09-CV-2304-D, 2012 WL 685333, at *3 (N.D. Tex. Mar. 2, 2012). "The rights of those who ultimately pay must be carefully protected." *Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 253 (5th Cir. 2018) (quoting *Newton v. Consol. Gas Co.*, 259 U.S. 101, 105 (1922)). That duty does not wait for an objection: "the court can adjust the fee request[s] sua sponte." *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, slip op. at 2 (N.D. Tex. May 27, 2008) (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987)).

## II. THE FILED RECORD DOES NOT ESTABLISH THE REQUIRED THIRTY-DAY SEC REVIEW OF THE APPLICATION ACTUALLY FILED

SEC review is the gatekeeping step the Court built into its orders: the complete application, exhibits, and billing information must reach SEC counsel at least thirty days before filing, and the SEC, "[f]ollowing its receipt and review," is to "object to deviations and charges with which it does not agree." Dkt. 417 ¶ 64; Dkt. 650 ¶ 117; SEC, *Billing Instructions for Receivers* at 1, § A.2 ("Billing Instructions"). The certificate of conference swears the Application and invoices went to SEC counsel on February 6, 2026, and that "[a] copy" was "again sent" on September 17, 2026, one day before filing. Dkt. 909 at 17. But the document filed on September 18, 2026 is not the document sent in February: it discusses Barton's August 14, 2026 objection, the Court's August 20, 2026 order, and the August 24, 2026 SPC settlement motion. Dkt. 909 at 2–3. The record therefore does not establish that the Application actually filed received the thirty-day SEC review required by the governing fee procedures.

The filed papers contain the following facial discrepancies: (1) the Application requests $12,320 in Receiver fees on page 4 and, on page 9, describes the Receiver's fee as "$12,435.50 billed," while claiming 6.4 written-off hours against an invoice that shows 6.7 no-charge hours, Dkt. 909 at 4–5, 9; Dkt. 910, APP005–011, two fee figures and two write-off figures for one quarter; (2) the Application twice says the Fourteenth Status Report, which covers the quarter ending December 31, 2025, "was filed on October 30, 2025," Dkt. 909 at 5, 7, when the docket shows January 30, 2026, Dkt. 707; (3) the SFAR is captioned "As of September 30, 2025" on both of its pages while its rows report October through December, Dkt. 910, APP002–003; (4) that SFAR reports $41,421.24 in "Disbursements to Receiver or Other Professionals" in a quarter in which the Application swears no member of the Receiver's team has been paid for work since

April 1, 2024, Dkt. 909 at 2; Dkt. 910, APP002, and does not say who received it; (5) the accountant is "Ahuja & Clark, PLLC" in the Application, "Ahuja & Consultants, Inc." on the invoice, and "Ahuja & Consultants, PLLC" in the proposed order, Dkt. 909 at 7–8; Dkt. 910, APP026; Dkt. 909-1 at 2; (6) three entries bill more than their own allocations account for, including Mr. Hopper's October 23 entry (allocations of "1." and ".2" billed as 1.9 hours, $210 unexplained) and Mr. Carrillo's October 28 and November 20 entries ($120), Dkt. 910, APP015–016, APP021; and (7) the Receiver measures his claimed "over 50%" discount against a "regular billing rate" of $650 that was $575 in the Ninth Application filed the same day, Dkt. 909 at 4 n.2; Dkt. 901 at 4 n.2. These discrepancies are apparent from the filed papers.

Courts give the SEC's position "great weight" because the SEC is presumed to have done the review the orders assign to it. *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *Striker*, 2012 WL 685333, at *3. That premise warrants caution here because the filed record does not establish that the Application actually filed received the prescribed thirty-day SEC review. The SEC's qualified position is also not accurately reflected in the proposed order: the SEC "believes it would be appropriate to impose a holdback" of 20%, Dkt. 909 at 9, 17, while the proposed order recites that "Plaintiff does not oppose the relief requested" and directs payment of 100%. Dkt. 909-1 at 1–2. The proposed order should not recite unqualified non-opposition when the Application itself states that the SEC supports a 20% holdback. The Court should require the SEC to state on the record what it reviewed and when and require the Receiver to re-serve a corrected application for the full thirty-day review before any ruling.

## III. REDACTED AND BLOCK-BILLED ENTRIES REQUIRE IN CAMERA REVIEW BEFORE ANY APPROVAL

Each entry must give "in reasonable detail an appropriate narrative description of the services rendered," including "the participants in, as well as the scope, identification and purpose of the activity." Billing Instructions § D.2. Privilege or confidentiality may justify withholding protected detail, but neither eliminates the applicant's burden to provide enough information for meaningful review. Thirty-five dated entries containing visible redactions carry $9,782 in total fees, Dkt. 910, APP005–011, APP013–024, among them the Receiver's November 19 ($77) and December 2 ($115.50) conferences, which have no stated subject, and Mr. Carrillo's October 22 "research" ($600), whose topic is blank. APP006–007, APP019. The Receiver offers to "submit unredacted copies of this and prior invoices for *in camera* review" if "the Court desires." Dkt. 909 at 5, 7. In camera review is appropriate. The burden is his, the objector cannot test what he cannot read, and documentation "too vague to permit meaningful review" is disallowed. *Kellstrom*, 50 F.3d at 326. The Court should order the Receiver to lodge complete unredacted copies of Exhibits B and C within fourteen days for in camera review and require sufficient nonprivileged information, or an appropriate privilege/redaction log, to permit meaningful review while preserving legitimate privilege or confidentiality; entries not adequately supported should not be approved. Entries over one hour that combine activities must "include a notation of the approximate time spent on each activity," Billing Instructions § D.4; the $330 in unsupported time-allocation differences should be reduced to the supported allocations, and unallocated mixed entries reduced by a percentage that substitutes for the missing billing judgment. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

## IV. THE APPLICATION IS FACIALLY WRONG IN WAYS THAT REQUIRE DISALLOWANCE

*Two fees for one quarter.* A verified application must be "true and accurate." Billing Instructions § A.1(b). This one asks for $12,320 and describes the same fee as $12,435.50; it swears to 6.4 written-off hours while the invoice shows 6.7. Dkt. 909 at 4–5, 9; Dkt. 910, APP005–011. The $115.50 difference is small. What it shows is that the narrative and the exhibit were never reconciled before the Receiver verified them, in this Application as in the Ninth, Tenth, Eleventh, and Twelfth. The Court should not approve totals the Receiver himself has not checked.

*The SFAR.* The Instructions require a Standardized Fund Accounting Report "for the most recent quarter" with each application. Billing Instructions § C.4. The one filed is captioned for the prior quarter and reports $41,421.24 paid to "Receiver or Other Professionals" that the Application does not explain. Dkt. 910, APP002–003. If professionals were paid $41,421.24 in a quarter in which the Receiver says none of his team was paid, the Court is entitled to know who, for what, and under what authority. The Court should require a corrected SFAR, with that line itemized, before any ruling.

*Three names for one payee.* The present record does not establish that the entity named in the proposed order is the invoicing entity or the entity entitled to receive the requested payment. The Application would pay "Ahuja & Clark, PLLC," the invoice comes from "Ahuja & Consultants, Inc.," and the proposed order would pay "Ahuja & Consultants, PLLC," an entity that appears nowhere else in the record. Dkt. 909 at 7–8; Dkt. 910, APP026; Dkt. 909-1 at 2. No payment should issue until the Receiver identifies the entity entitled to receive it.

*Expenses.* Storage for two units, now $961 a month, is $2,883 of the $3,469.60 requested, 83%. Dkt. 910, APP007. The rate rose from $806 with no explanation, Dkt. 908, APP007–008,

and the Application does not say why two units are still needed after the paper privilege review the Receiver reported complete in September 2025. Dkt. 908, APP031–032. The December 15 charge appears to prepay January 2026 storage and should be explained or properly allocated before approval. The unsupported storage increase and any amount not shown to belong to this quarter should be denied.

## V. THE CHALLENGED WORK IS NOT SHOWN TO BE NECESSARY OR BENEFICIAL

*A fourth amicus brief.* Seventeen entries (34.8 hours, $10,542) went to an amicus brief in Fifth Circuit No. 24-10788, Barton's appeal from the sale-ratification orders, in support of the SEC, which filed its own appellee's brief, plus $17.50 in postage. Dkt. 910, APP006, APP007, APP013–016, APP019, APP023. Mr. Carrillo billed 9.3 hours ($2,790) on October 27 and 6.9 hours ($2,070) on October 28 alone. APP015–016. With the $9,163 and $19,466 charged for the 2024 amicus brief and $1,360.50 the prior quarter, the estate has now paid more than $40,500 for the Receiver to file friend-of-the-court briefs in Barton's appeals, every one of them urging that the receivership and its sales continue. Dkt. 898, APP035–037; Dkt. 900, APP005–006, APP021, APP025–028; Dkt. 908, APP016, APP022. Appellate work by a court-appointed officer may be compensable, but the amount remains subject to judicial scrutiny for necessity, rate, and hours. *Moore*, 912 F.3d at 251–53. The objection is not that appellate work is categorically noncompensable; it is that this Application does not demonstrate why this additional amicus work was necessary, reasonable, and beneficial when the SEC filed its own appellee brief. A receivership is "an extraordinary remedy that should be employed with the utmost caution," *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012), not a standing budget for advocacy the SEC is already providing. Nothing in the Application explains what this brief added to the

SEC's, and the litigation certification the Instructions require is absent. Billing Instructions § E.1(b); Dkt. 909 at 15–16. The $10,542 should be disallowed.

*Feral cats, culverts, and mail.* Mr. Hopper billed $300 an hour to confer with a Gillespie Street neighbor about "animal control" (0.5 hour), to confer with "the City of Dallas and local animal shelters regarding treatment of feral cats" (0.5), to inspect the Gillespie house about the cats (2.2 hours, $660), to coordinate a culvert, mowing, and lawn work (0.5), to discuss farming and a culvert invoice (0.5), to sort and "categorize" mail (0.5 hour, $150), and to work on a tax chart (1.6 hours, $480). Dkt. 910, APP021–023. That is $2,040 in expressly allocated time for tasks a property manager, a paralegal, or a bookkeeper performs. "[N]on-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Walker*, 99 F.3d at 770 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (compensable "only if the work is legal rather than clerical"). The attorney-rate component of these $2,040 must be disallowed.

*Tax work.* The accountants billed 37.1 of 49.2 hours ($9,312 of $11,718.50) to "Tax Issues." Dkt. 910, APP026. Mr. Kwande's October 16 and 21 entries bill 5.8 hours ($1,595) for five entities at once (Enoch Investments, D4DS, D4FR, D4IN, D4OP), and the October 13, 22, and 23 entries bill 7.3 hours ($2,007.50) for five more, with no allocation of time among taxpayers and no statement of what was filed. APP028. Entity-specific tax charges should be allocated to the entity that benefits. The Receivership Order requires custodial accounts and reporting for each Receivership Estate, Dkt. 417 ¶¶ 37, 58, and the record separately identifies restrictions applicable to D4OP funds. See Dkt. 543 at 58 n.23. The present Application does not establish that D4OP should bear tax work performed for other entities. Unallocated multi-entity charges should be reduced.

## VI. THE HOLDBACK AND THE FILING HISTORY

The Receiver asks the Court to waive the 20% holdback the SEC supports, on the strength of a discount computed from a fee figure that does not match his request. Dkt. 909 at 9. It should be imposed. Every application is "interim and ... subject to a cost benefit review and final review." Billing Instructions at 1; Dkt. 417 ¶¶ 63–67; Dkt. 650 ¶¶ 116–120. Nine applications were filed on one day, September 18, 2026, Dkts. 897–914, this one seven months after it came due and only after Defendant objected to yet another extension, Dkts. 861, 870, although the orders required filing within forty-five days of each quarter. Dkt. 417 ¶ 64; Dkt. 650 ¶ 117. These inconsistencies counsel against full payment without the SEC-supported holdback and the final review contemplated by the governing orders. Defendant preserves every objection to the completeness, accuracy, and compensability of these fees for the final review the orders require.

## VII. RELIEF REQUESTED

Defendant respectfully asks that the Court: (1) withhold any ruling until the Receiver lodges complete unredacted copies of Exhibits B and C for *in camera* review within fourteen days and require sufficient nonprivileged information, or an appropriate privilege/redaction log, to permit meaningful review while preserving legitimate privilege or confidentiality, with unsupported entries disallowed; (2) require a corrected application that states one fee and one write-off, corrects the status-report date, identifies the payee, and attaches a corrected SFAR for the proper quarter itemizing the $41,421.24 paid to professionals, re-served on the SEC for the full thirty-day review, with the SEC to file a statement identifying what it reviewed and when; (3) disallow the $10,542 amicus charges and $17.50 postage, the attorney-rate component of the $2,040 in property-management, mail, and chart entries, the $330 in unsupported time-allocation differences, and the unallocated multi-entity tax charges; (4) deny the unsupported storage increase

and any expense not shown to belong to the quarter; (5) direct that no payment issue to any Ahuja entity until the Receiver identifies the entity entitled to receive the requested payment; (6) impose the 20% holdback and strike the proposed order's recital that the Application is unopposed; (7) prohibit payment from D4OP funds of professional fees not shown to benefit D4OP or otherwise lawfully chargeable to D4OP; and (8) grant all other just relief.

Dated: September 25, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, this document was filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all registered counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**