**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| v. | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** *Relief Defendants.* | § | |

**DEFENDANT'S OBJECTION TO THE**
**RECEIVER'S FIFTEENTH QUARTERLY FEE APPLICATION**

Defendant Timothy L. Barton, pro se, objects to the Receiver's Fifteenth Quarterly Fee Application (Dkt. 913), Appendix (Dkt. 914), and proposed order (Dkt. 913-1) for April through June 2026. The $102,103.89 request includes a $269.50 entry marked "[No charge]," a $231 paycheck delivery the Application says was written off, paralegal time preparing a fee application barred by the Billing Instructions, a discount comparison that mixes expenses with fees and write-offs with hours, an unexplained $1,298,915.57 beside the disbursement line, and figures that do not match the status report. The certificate says the SEC received the Application on August 14, 2026, but the filed version discusses events of August 20 and 24. The Receiver verified the filing under penalty of perjury and the SEC stated qualified non-opposition, but these facial contradictions materially undermine any inference that the filed version received the review contemplated by the governing orders. No payment should be approved until the Receiver lodges unredacted invoices for *in camera* review and files a corrected application after the SEC has completed the required review.

## I. THE RECEIVER BEARS THE BURDEN, AND THE COURT MUST SCRUTINIZE

The applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995). Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded, and "billing judgment" must be shown. Hensley v. Eckerhart, 461 U.S. 424, 434, 437 (1983). Billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006). A court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." Kellstrom, 50 F.3d at 326. In a receivership, results are "always relevant," and "[n]o receivership is intended to generously reward court-appointed officers." SEC v. W.L. Moody & Co., 374 F. Supp. 465, 480, 483 (S.D. Tex. 1974), aff'd, 519 F.2d 1087 (5th Cir. 1975); SEC v. Striker Petroleum, LLC, No. 3:09-CV-2304-D, 2012 WL 685333, at *3 (N.D. Tex. Mar. 2, 2012). "The rights of those who ultimately pay must be carefully protected." Moore v. Tangipahoa Par. Sch. Bd., 912 F.3d 247, 252 (5th Cir. 2018) (quoting Newton v. Consol. Gas Co., 259 U.S. 101, 105 (1922)). That duty does not wait for an objection: "the court can adjust the fee request[s] sua sponte." SEC v. AmeriFirst Funding, Inc., No. 3:07-CV-1188-D, slip op. at 2 (N.D. Tex. May 27, 2008) (quoting Curtis v. Bill Hanna Ford, Inc., 822 F.2d 549, 551 (5th Cir. 1987)).

## II. THE SEC DID NOT REVIEW THIS APPLICATION, AND ITS NON-OPPOSITION DESERVES NO WEIGHT

SEC review is the gatekeeping step the Court built into its orders: the complete application, exhibits, and billing information must reach SEC counsel at least thirty days before filing, and the SEC, "[f]ollowing its receipt and review," is to "object to deviations and charges with which it

does not agree." Dkt. 417 ¶ 64; Dkt. 650 ¶ 117; SEC, *Billing Instructions for Receivers* at 1, § A.2 ("Billing Instructions"). The certificate of conference swears the Application and invoices went to SEC counsel on August 14, 2026, and that "[a] copy" was "again sent" on September 17, 2026, one day before filing. Dkt. 913 at 17. But the document filed on September 18 is not the document sent on August 14: it discusses the Court's August 20, 2026 order and the August 24, 2026 SPC settlement motion. Dkt. 913 at 2–3. Even for the one application delivered within 2026, what the SEC reviewed was revised after delivery and re-sent the day before filing. The SEC's non-opposition is to a document it had for one day.

What the SEC missed is worse. A pro se defendant, working from the public filing, found these defects on the face of the papers: (1) the Receiver's April 22, 2026 entry, "[m]eeting with Amerigold property manager to deliver pay checks," is marked "[No charge]" and billed $269.50, and that $269.50 is carried into the $6,429.50 administration subtotal and the $19,250 fee request, Dkt. 914, APP005–006, APP014; (2) the Application swears the Receiver "has written off the entirety of his time" for "bi-weekly meetings with the Amerigold property manager to drop off paychecks," Dkt. 913 at 4–5, while the invoice charges the estate for two of them, April 22 ($269.50) and June 17 ($231), APP005, APP013; (3) the holdback argument compares "$23,238.89 billed," which is fees plus $3,988.89 in expenses, with "$42,834.50 if no discounts were applied," which is 54.7 hours at $750 plus the $1,809.50 in write-offs the hours already include, Dkt. 913 at 9, so both sides of the comparison are inflated; (4) the Brown Fox table labels 194.2 hours "Hours Billed" when 7.6 of them were billed at zero, so Mr. Godkin's line reads 10.4 hours at $200 against a fee of $1,220, Dkt. 913 at 6; Dkt. 914, APP016–035; (5) the SFAR prints "$1,298,915.57" beside line 10, "Disbursements for Receivership Operations," next to the $130,837.20 the line actually reports, with no explanation of what the larger figure is, Dkt. 914,

APP002; (6) that SFAR reports $1,360,751.69 in ending cash while the status report gives $1,359,539.51, and its Amerigold income of $180,536.17 does not match the report's $180,052.44, Dkt. 914, APP002; Dkt. 838 at 76–77; (7) the accountant is "Ahuja & Clark, PLLC" in the Application and "Ahuja & Consultants, Inc." on invoice 8240.Bar, Dkt. 913 at 8; Dkt. 914, APP037; and (8) the Receiver measures his discount against a "regular billing rate" of $750 that was $575 in the Ninth Application filed the same day, Dkt. 913 at 4 n.2; Dkt. 901 at 4 n.2. Anyone who opened the exhibits would have caught these. The SEC caught none.

Courts give the SEC's position "great weight" because the SEC is presumed to have done the review the orders assign to it. SEC v. Fifth Ave. Coach Lines, Inc., 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); Striker, 2012 WL 685333, at *3. That presumption is rebutted here. An SEC that did not notice an invoice charging for an entry marked "No charge" did not review the invoice. Non-opposition on that record is not acquiescence; it is abdication by the party that sought this receivership and now would have the estate pay for it without looking at the bill. Even the SEC's qualified position is misreported: the SEC "believes it would be appropriate to impose a holdback" of 20%, Dkt. 913 at 9, 17, while the proposed order recites that "Plaintiff does not oppose the relief requested" and directs payment of 100%. Dkt. 913-1 at 1–2. This Court should not lend its signature to an order that recites a non-opposition the record contradicts. It should give the SEC's silence no weight, require the SEC to state on the record what it reviewed and when, and require the Receiver to re-serve a corrected application for the full thirty-day review before any ruling.

## III. REDACTED AND BLOCK-BILLED ENTRIES REQUIRE IN CAMERA REVIEW BEFORE ANY APPROVAL

Each entry must give "in reasonable detail an appropriate narrative description of the services rendered," including "the participants in, as well as the scope, identification and purpose

of the activity." Billing Instructions § D.2. Fifty-one entries and $14,998.50 are redacted, including 15 of the Receiver's 75 entries and $5,005 of his $19,250. Dkt. 914, APP005–014, APP016–035. The Receiver's April 6 meeting with Ms. Richardson ($115.50) and her June 9 correspondence ($40) have no stated subject, APP005, APP033, and Ms. Koonce's June 30 entry ($462) combines concealed communications with sales, sanctions, and appraiser work without allocation. APP035. The Receiver offers to "submit unredacted copies of this and prior invoices for *in camera* review" if "the Court desires." Dkt. 913 at 5, 7. The Court should require it. Because the burden is his and the objector cannot test hidden entries, the Receiver should lodge complete unredacted Exhibits B and C for *in camera* review within fourteen days; disclose nonprivileged material; provide supplemented descriptions or an appropriate privilege/redaction log for material properly withheld; and disallow or reduce entries that remain inadequately documented. Kellstrom, 50 F.3d at 326. Entries over one hour combining activities must state approximate time per activity. Billing Instructions § D.4. The Receiver's April 22 ($693) and June 9 ($808.50) entries and Ms. Koonce's June 16 ($1,386) and June 22 ($1,155) entries each combine four or more matters without allocation, APP009, APP012–013, APP024–026, and should be reduced by a percentage that substitutes for the missing billing judgment. Walker v. U.S. Dep't of Hous. & Urban Dev., 99 F.3d 761, 770 (5th Cir. 1996).

## IV. THE APPLICATION IS FACIALLY WRONG IN WAYS THAT REQUIRE DISALLOWANCE

*Charging for "No charge."* Billing judgment "requires documentation ... of the hours written off." *Saizan*, 448 F.3d at 799. Here the documentation says "[No charge]" and the bill says $269.50. Dkt. 914, APP005. The Application then represents to the Court that every paycheck delivery was written off, Dkt. 913 at 4–5, while charging two of them. The $269.50 and the $231

must be struck, and the Receiver's fee reduced to $18,749.50. More important than the $500.50 is what it shows: the invoice was not read by the person who verified it, and it was not read by the SEC that did not object to it.

*Preparing the Receiver's fee application at the estate's expense.* "Time spent preparing fee applications, or any documentation in support thereof, may not be charged to the receivership estate." Billing Instructions § E.1(d). Ms. O'Rourke billed $33 on May 8 for the extension motion, $198 on May 11 to revise the Fourteenth Fee Application, build its hours chart, and compile exhibits, and $44 on May 12 for slipsheets, Bates numbers, and review of the extension order. Dkt. 914, APP018, APP030. Under § E.1(d), the $198 should be disallowed; the fee-application portion of the mixed $44 entry should be disallowed or allocated; and the $33 should be disallowed to the extent extension work falls within the prohibition. These entries also show the Fourteenth Application's hours, totals, exhibits, and Bates numbering were assembled by May 12, four months before filing. Dkt. 870; Dkt. 913 at 2.

*A discount that counts expenses as fees.* The Receiver tells the Court he "discounted his own fees by close to 50% ($23,238.89 billed versus $42,834.50)." Dkt. 913 at 9. The $23,238.89 includes $3,988.89 in storage, postage, and filing fees, which are not fees and are not discounted. The $42,834.50 is 54.7 hours at $750 plus $1,809.50 for write-offs the 54.7 hours already contain. Strip the padding and the comparison is $19,250 against $41,025. The $41,025 benchmark also uses a $750 non-receivership rate that conflicts with the $575 regular rate stated in the Ninth Application filed the same day. Dkt. 913 at 4 n.2; Dkt. 901 at 4 n.2. At the rate the estate actually pays, the write-off is 8.6%. The Court should disregard the advertised discount and the holdback argument built on it.

*The SFAR and the payee.* The Instructions require an SFAR "for the most recent quarter." Billing Instructions § C.4. This one prints $130,837.20 and $1,298,915.57 on the same disbursement line without explanation and does not match the status report on ending cash or income. Dkt. 914, APP002; Dkt. 838 at 76–77. The accountants also billed 41.7 hours and $10,603 in June to "reconcile" the 2025 books and workpapers they maintain. APP040–041. The quarter's own report remains unreconciled. The payee is stated three ways: "Ahuja & Clark, PLLC" in the Application, "Ahuja & Consultants, Inc." on the invoice, and "Ahuja & Consultants, PLLC" in the proposed order. Dkt. 913 at 8; Dkt. 914, APP037; Dkt. 913-1 at 2. No payment should issue until the Receiver identifies the legal entity that owns the receivable.

## V. THE CHALLENGED WORK IS NOT SHOWN TO BE NECESSARY OR BENEFICIAL

*Lawyers moving boxes.* Mr. Godkin billed $200 an hour on April 6, 7, 21, and 22, May 14 and 20, and June 3 to "coordinate storage of mail and non-privileged documents," to confer "regarding storage," and to "[t]ransport and store boxes of receivership documents," 5.4 hours and $1,080. Dkt. 914, APP028–033. Ms. O'Rourke billed $297 to file address changes and to receive, save, and pay for certificate files, and Mr. Hopper billed $300 for payroll, checks, lawn invoices, and scheduling tree trimming. APP030–035. The Receiver billed $231 to deliver paychecks. APP013. "[N]on-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Walker*, 99 F.3d at 770 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (compensable "only if the work is legal rather than clerical"). The estate pays $1,045 a month for two storage units and $587.45 in address-change fees this quarter; it should not also pay lawyers

to carry the boxes and file the forms. The attorney-rate component of these $1,908 must be disallowed.

*Expenses.* Storage is $3,135 of the $3,988.89 requested, 79%, at $1,045 a month for two units, a rate that has risen from $666 since 2024 with no explanation and no stated continuing need after the paper privilege review was reported complete in September 2025. Dkt. 914, APP007; Dkt. 908, APP031–032. The June 15 charge pays for July, outside the quarter. Unsupported storage costs and any out-of-period charge should be denied.

*Litigation charges.* Ms. Richardson and Mr. Debter bill for an eviction trial, a response to a motion to lift the litigation stay, sanctions briefing, and Fifth Circuit matters, Dkt. 914, APP018–019, APP035, without the litigation certification the Instructions require for any litigation charge. Billing Instructions § E.1(b); Dkt. 913 at 15–16. Uncertified litigation charges should be reduced.

## VI. THE HOLDBACK AND THE FILING HISTORY

The Receiver asks the Court to waive the 20% holdback the SEC supports, relying on a discount that counts expenses as fees. Dkt. 913 at 9. The holdback should be imposed. Every application is "interim and ... subject to a cost benefit review and final review." Billing Instructions at 1; Dkt. 417 ¶¶ 63–67; Dkt. 650 ¶¶ 116–120. Nine applications were filed on September 18, 2026, Dkts. 897–914, only after Defendant opposed another extension, Dkts. 861, 870, although the orders required filing within forty-five days of each quarter. Dkt. 417 ¶ 64; Dkt. 650 ¶ 117. Dkt. 838 also identifies $400,192.49 related to D4OP as unavailable to other Receivership Entities, Dkt. 838 at 76 n.29, while the proposed order authorizes payment generally from "receivership assets," Dkt. 913-1 at 1. No professional fee should be paid from D4OP funds absent a showing that it benefits D4OP or is otherwise lawfully chargeable to it. Defendant preserves all objections for the final review.

## VII. RELIEF REQUESTED

Defendant respectfully asks that the Court: (1) withhold any ruling until the Receiver lodges complete unredacted copies of Exhibits B and C for *in camera* review within fourteen days, with nonprivileged disclosure and supplemented descriptions or an appropriate privilege/redaction log for material properly withheld, and disallow or reduce inadequately documented entries; (2) require a corrected application and SFAR, re-served on the SEC for full thirty-day review, with the SEC stating what it reviewed and when; (3) strike the $269.50 "[No charge]" entry and $231 June 17 paycheck delivery; disallow the $198 direct fee-application charge, disallow or allocate the fee-application portion of the mixed $44 entry, and disallow the $33 extension charge to the extent § E.1(d) applies; disallow the attorney-rate component of the $1,908 operational entries and unallocated block-billed portions identified above; (4) reduce the $10,603 June reconciliation charges and uncertified litigation charges; (5) deny the unsupported storage increase and any out-of-period expense; (6) withhold payment to any Ahuja entity until the Receiver identifies the legal payee; (7) impose the 20% holdback and strike the proposed order's unqualified non-opposition recital; (8) prohibit payment from D4OP funds of professional fees not shown to benefit D4OP or otherwise lawfully chargeable to D4OP; and (9) grant all other just relief.

Dated: September 25, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, this document was filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all registered counsel of record.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**