**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TIMOTHY BARTON, et al., | § | Civil Action No. 3:22-CV-2118-X |
| | § | |
| Defendants, | § | |
| | § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § | |
| | § | |
| Relief Defendants. | § | |

**DEFENDANT TIMOTHY L. BARTON'S WRITTEN PROFFER, REQUESTED FINDINGS, AND PROPOSED ORDER LANGUAGE FOR THE SEPTEMBER 29, 2026 HEARING (DKT. 925)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Timothy L. Barton, appearing pro se, tenders this written proffer at the September 29, 2026 hearing as a matter of efficiency. The Court has allotted twenty minutes to each side (Dkt. 925 at 2). Rather than read docket citations aloud, Barton sets out here the record references, the questions he asks the Court to decide, the findings he requests, and the order language he proposes, and uses his oral time to identify the decision points and answer the Court's questions.

This document does not supplement Dkt. 885, does not seek reconsideration of Dkt. 926, and does not raise any matter outside the September 29 hearing. It addresses only the Court's "further consideration of the proposed transfer[s]" and sale reserved by Dkt. 925 at 3–5.

## I. WHAT DKT. 925 RESERVED FOR DECISION

Dkt. 925 appointed the appraisers, accepted the appraisals, and found each contract price above two-thirds of the average appraised value. As to each transaction it then provided that, "[f]ollowing the Court's further consideration of the proposed transfer at the hearing scheduled below, if the transfer is approved," the Receiver is authorized to convey. Dkt. 925 at 3, 4, 5. The Court also made its consideration "contingent upon the Receiver publicizing the terms of the proposed transfer prior to the hearing and providing a ten-day window" for a Bona Fide Competing Offer. Id. at 2.

That is the confirmation step of 28 U.S.C. § 2001(b), which the Receiver invoked for all four transactions (Dkt. 872 at 18 n.11). The statute permits a private sale "upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby"; requires that "the terms thereof shall be published … at least ten days before confirmation"; and provides that the sale "shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase." Barton therefore understands four matters to remain: (1) whether the terms were published; (2) the conditions under which a competing offer may be made; (3) the best-interest finding and the consideration actually received for each transfer; and (4) the form of the four orders. Each is addressed below.

## II. DECISION POINTS

### A. Publication of the terms

Barton does not contend that publication was untimely. An advertisement ran in the Dallas Morning News on September 16, 2026, more than ten days before the hearing. The advertisement identified the four properties and stated that an offer must exceed the sale amount by at least ten percent. It did not state the proposed transaction prices ($23,919,918.38; $30,931,755.78; $47,815,802.19; $29,486,932.23), the minimum qualifying bids computed on the Receiver's own forms ($26,311,910.22; $34,024,931.36; $52,597,382.43; $32,435,625.45) (Dkt. 875 App. 376; Dkt. 877 App. 353; Dkt. 879 App. 380; Dkt. 881 App. 439), or the conditions attached to a competing offer (Dkt. 880 at 8).

Barton asks that the Receiver state on the record what was published, how many prospective purchasers responded, what materials each received, and whether any offer was submitted; and that the Court find whether the "terms" of the sales were published within the meaning of § 2001(b). If they were not, Barton asks that confirmation be deferred only until the prices and conditions are published and a ten-day window on those terms has run.

### B. The competing-offer conditions belong to the Court

Section 2001(b) places the conditions of a competing offer with the Court. The conditions on file were drawn from SPC's purchase agreements: no diligence period; ten percent of the offer into escrow within twenty-four hours; the balance within seven days of the order "regardless of whether the order is appealed"; no refund "regardless of the outcome of any appeal … and regardless of whether SPC exercises its Conversion Rights"; and the purchase taken subject to SPC's conversion, assignment and ownership claims. Dkt. 880 at 8; Dkt. 875 App. 021–022 (MPA art. 4.1). SPC itself has up to twelve months to obtain HUD approval. Dkt. 873 App. 011–012 ¶ 6(c)–(d).

On the accepted appraisals, the 110% floor exceeds the average appraised value for Parc at Ingleside ($34,024,931.36 against $27,250,000), Windmill Farms ($52,597,382.43 against $51,833,333.33) and Parc at Opelika ($32,435,625.45 against $32,070,000). Dkt. 925 at 3–5. A cash purchaser would have to pay more than the appraised value, and still take subject to SPC's claims, to top a transaction priced below the appraised value.

SPC has stated in writing that Article 4.1 "is susceptible to" a reading that adds the SPC Debt a second time "and SPC does not intend it"; that it "will accept an order clarifying that the overbid threshold is one hundred ten percent of the total consideration"; that it "will not oppose" a refundable deposit, a defined diligence period, or a longer closing window; and that "[t]he remedy for imperfect bid procedures is better bid procedures." Dkt. 892 at 18. The Receiver has stated that he "might have received a higher purchase price if he had been able to retain a broker and list the Property." Dkt. 880 at 9.

Barton asks that the conditions be prescribed by the Court as set out in Part V, paragraph 1, and that a short window be re-opened on those conditions with the prices published. Ratification is complete (Dkt. 926); the sixty-day condition in Settlement ¶ 6(a) is satisfied; and no closing can occur until HUD acts. The request changes no economic term of the compromise.

### C. Parc at Opelika: consideration credited for a non-obligor's debt

Opelika is the only transaction structured as a sale of realty, so § 2001(b) applies without dispute (Dkt. 896 at 6; Dkt. 892 at 9). The contract price of $29,486,932.23 is the HUD balance ($21,879,316.64) plus the SPC Debt ($4,783,527.98) plus cash ($2,824,087.61). Dkt. 880 at 9 n.13. The SPC Debt is a note that "D4OP's parent entities executed." Dkt. 880 at 4 ¶ 6. Those parents, D4OPM, LLC and One MF D4, LLC, are not Receivership Entities. Dkt. 872 at 11 n.8. D4OP, the seller, is not an obligor.

Net of the parents' note, the estate receives $24,703,404.25 for property the accepted appraisals value at an average of $32,070,000, or 77%. The two-thirds floor is met. The questions are whether crediting a non-obligor's debt as consideration conserves the best interests of the estate, and on what base the ten-percent overbid should be measured. SPC's response that "[a] buyer of pledged interests takes subject to the pledge" (Dkt. 892 at 17) does not reach a deed sale of realty by D4OP; SPC's Opelika right runs against the parents' membership interests (Dkt. 880 at 5 ¶ 7), which the estate does not hold and is not selling.

Barton asks for an express best-interest finding on this point and for the Opelika overbid floor to be measured on the net consideration to the estate.

**D. The SPC-Debt increase and the manager-held accounts**

The four SPC balances credited in the settlement total $24,052,215.10 as of June 30, 2026. Dkt. 872 at 18. The Receiver's own summary-judgment brief stated the four balances as of January 17, 2023 at $3,797,758.95, $7,885,547.12, $3,759,163.65 and $3,189,595.90, a total of $18,632,065.62. Dkt. 207 at 21–22. The increase of $5,420,149.48 is credited against the transfer prices and raises each overbid floor. No payoff statement or interest bridge is in the record. On the Rock Creek closing, the lender's disputed interest, default interest and fees were held back to "be adjudicated among all creditors as part of the Receivership's claims process." Dkt. 838 at 28.

Separately, the property manager holds $6,940,710.13 in the entities' accounts, including $5,336,184.00 that auditors reported as excess cash. Dkt. 872 at 20 & n.13. Settlement ¶ 7 releases those accounts with the entities. Dkt. 873 App. 013. The Receiver's "best day in court" applies a 40% contingency of "approximately $10.6 million" (Dkt. 872 at 20), which corresponds to a base of about $26.5 million, that is, the $19,613,243.46 of equity (id. at 19) plus the manager-held cash. SPC describes the excess cash as "a disputed pool." Dkt. 892 at 21.

Barton asks that closing be conditioned on a verified property-by-property bridge of the SPC balances and a reconciliation of the manager-held accounts, or that the disputed increase and any claims against the manager and its affiliates be reserved for the claims process; and that the proceeds of each transaction be held and accounted for by reference to the estate whose interest or property is transferred, consistent with Dkt. 650 ¶ 90 (custodial accounts "[f]or each of the Receivership Estates") and with Dkt. 925's direction that claims relating to these entities be administered in the claims process. Barton does not ask the Court to decide any question of distribution today.

**E. Form and scope of the four orders**

Savings clause. SPC "will not oppose an express provision in the approval order stating that the order neither adjudicates nor releases any developer fee or contractual enforcement right belonging to Barton in his individual capacity," nor a provision that the order "neither adjudicates nor releases independent rights belonging to any non-party or non-signatory." Dkt. 892 at 10–11. Dkt. 926 contains neither. Barton asks that both be included in each of the four orders.

Scope of conveyance. The Receiver's ownership table shows minority members N.E. Construction, LLP (0.5% of D4DS and D4FR), AXIA Contracting, LLC (0.25% of D4IN) and Bakken Contracting Co. LLC (0.25% of D4OP). Dkt. 872 at 7. None is listed as a Receivership Entity in Dkt. 650 ¶¶ 2–54, and the Settlement transfers the Receiver's 99.5%, 99.5% and 99.75% interests. Dkt. 873 App. 009 ¶ 3. Barton asks that the orders convey only the Receivership Entities' interests rather than "all membership interests."

HUD and Section 50. Barton is the "Section 50 Signatory" on the HUD loans and Regulatory Agreements. Dkt. 880 at 3–4 ¶ 5. The Settlement makes closing depend on HUD approval or payoff. Dkt. 873 App. 011–013 ¶ 6(c)–(d). Barton asks that each order condition

closing on HUD approval of the transfer or full payoff of the HUD loan; require a written release of the signatory or a statement identifying which of his obligations terminate and which survive; and state that nothing in the order deems Barton to have consented to any transfer application. Barton will comply with whatever cooperation the Receivership Order requires of him in connection with HUD.

Findings. Barton asks that each order adjudicate the objections directed to that transaction and trace its conclusions to the record, as the Court did for ratification in Dkt. 926. The Receiver's reply describes the Fifth Circuit's decision in SEC v. Hill, No. 25-50986 (5th Cir. Aug. 25, 2026), as vacating an order that "neither adjudicated the objector's claims nor traced any facts to the record." Dkt. 896 at 7–8. Barton asks only for that.

## III. OFFER OF PROOF

Pursuant to Fed. R. Evid. 103(a)(2), Barton tenders as an offer of proof the exhibits attached to Dkts. 893 and 920, for which leave to file was denied (Dkts. 922, 924), so that the substance of the excluded material is of record.

## IV. REQUESTED FINDINGS

If the Court approves any of the four transactions over Barton's objections, Barton respectfully requests that the order address:

1. What issues remained for decision under Dkt. 925 after entry of Dkt. 926.
2. Whether the September 16, 2026 publication stated the "terms" of the sales within § 2001(b), and if so how a prospective purchaser could determine the amount of a qualifying offer.
3. Whether any prospective purchaser responded to the publication and whether any offer was received.

4. Why the transaction is in the best interests of the estate, including, for Opelika, why the cancellation of a note owed by non-Receivership Entities is credited as consideration to the estate.
5. How the Court values the $24,052,215.10 SPC-Debt component, including the obligor and the basis for the increase from the January 2023 balances.
6. How the Court treats the $6,940,710.13 in manager-held accounts and the other assets and liabilities that travel with each entity.
7. Why the competing-offer conditions provide an economically meaningful opportunity for a third-party purchaser.
8. The exact interest conveyed (percentage, record holder and transferee) in each transaction.
9. When each transaction may be consummated and when deeds, membership interests, account control and releases may change hands.

## V. PROPOSED ORDER LANGUAGE

Barton proposes the following paragraphs for inclusion in each of the four orders, adapted to the transaction concerned:

1. **Competing-offer conditions.** Any Bona Fide Competing Offer shall be measured against one hundred ten percent (110%) of the total consideration recited in the applicable MPA or PSA, with the SPC Debt counted once and no separate SPC-Debt add-on; shall be accompanied by a deposit of ten percent (10%) of the offer, refundable if the offer is not accepted or the transaction does not close; shall be afforded a diligence period of thirty (30) days; and shall be afforded the same period for HUD approval as the Settlement affords SPC. The Receiver shall publish the transaction prices and these conditions, and the Court will consider any Bona Fide Competing Offer submitted within ten (10) days of that publication.
2. **Opelika consideration.** For purposes of § 2001(b), the consideration received by the estate for the Parc at Opelika is measured net of the $4,783,527.98 note obligation of D4OPM, LLC and One MF D4, LLC, and the ten-percent overbid threshold is computed on that net amount.
3. **Reservation.** The increase in the SPC Debt above the balances stated in Dkt. 207 at 21–22 is reserved for determination in the Receivership claims process, or, alternatively, closing is conditioned on the Receiver's filing of a verified property-by-property statement of principal, interest, fees, payments and credits from January 17, 2023 to June 30, 2026. Nothing in this Order releases any claim of the Receivership

Estates against the property manager or its affiliates relating to the accounts identified in Dkt. 872 at 20, which are reserved for the claims process pending a reconciliation.

4. **Proceeds.** The Escrow Payment, the Additional Escrow Payment and all other consideration received under the Settlement Agreement shall be held in, and accounted for by reference to, the Receivership Estate whose interest or property is transferred, pending the claims process, and shall not be commingled with other Receivership Funds except by further order.

5. **Savings and scope.** This Order neither adjudicates nor releases any developer fee or contractual enforcement right belonging to Timothy L. Barton in his individual capacity, nor any independent, non-derivative right belonging to any non-party or non-signatory. This Order authorizes the transfer only of the membership interests held by the Receivership Entities (99.5% of D4DS, LLC; 99.5% of D4FR, LLC; 99.75% of D4IN, LLC) and does not purport to transfer the interests of any other member.

6. **HUD and status quo.** Closing is conditioned on HUD's written approval of the transfer or full payoff of the HUD Loan, and on delivery of a written release of the Section 50 Signatory or a statement identifying which of his obligations terminate and which survive. Nothing in this Order deems Timothy L. Barton to have consented to any transfer application. No release of escrowed funds to the Receiver, conveyance of a deed, transfer of membership interests or of operating-account control, or effectiveness of any release shall occur until fourteen (14) days after entry of this Order.

## VI. REQUEST FOR A FOURTEEN-DAY STATUS-QUO PERIOD

If the Court approves one or more transactions, Barton requests the fourteen-day period reflected in paragraph 6 above so that a motion for stay pending appeal may be presented first to this Court, as Fed. R. App. P. 8(a)(1) requires, before any step becomes practically irreversible. See Fed. R. Civ. P. 62(c). The Settlement holds the escrowed funds for thirty days after the last approval order and allows SPC up to twelve months for HUD approval (Dkt. 873 App. 009, 011–012 ¶¶ 2(a), 5, 6(c)–(d)); nothing in it makes consummation depend on the exhaustion of appellate review. A fourteen-day hold therefore alters no economic term and costs the estate nothing.

## CONCLUSION

Barton does not ask the Court to revisit Dkt. 926. He asks the Court to decide the questions Dkt. 925 reserved (whether the terms were published, on what conditions a competing offer may be made, what consideration the estate actually receives, and what the four orders will say) on findings traceable to the record, and to allow a short status-quo period before the transactions become irreversible.

Dated: September 30, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**
Defendant, Pro Se
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

I certify that, at the September 29, 2026 hearing, the Receiver verbally conveyed his opposition to this written proffer. Southern Properties Capital, Ltd. (SPC) and the Securities and Exchange Commission (SEC) took no position.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**

**CERTIFICATE OF SERVICE**

I certify that on September 30, 2026, this document was tendered in open court and copies were delivered by hand to counsel for the Receiver, counsel for the Securities and Exchange Commission, and counsel for Southern Properties Capital, Ltd., and that a copy will be served on all counsel of record through the Court's CM/ECF system if the Court directs that it be filed.

***/s/ Timothy L. Barton***
**Timothy L. Barton, Pro Se**