**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § § § § | |
| **v.** | § | **Civil Action No. 3:22-cv-02118-X** |
| **TIMOTHY BARTON, et al.,** *Defendants,* | § § § § | |
| **DJD LAND PARTNERS LLC, and LDG001 LLC,** *Relief Defendants.* | § § § | |

**DEFENDANT TIMOTHY BARTON'S RESPONSE AND OBJECTION TO RECEIVER'S MOTION TO EXTEND TIME TO FILE STATUS REPORT REGARDING LENDER PROPOSALS**

Defendant Timothy Barton, appearing pro se, opposes Dkt. 940 to the extent it would postpone all lender reporting until October 30, 2026. Any order on that motion should address reporting time and presentation only; it should not itself approve a lender proposal, allow a debt, determine lien priority, or authorize a sale. If the Court grants additional time, Barton requests that it preserve a concise October 6 interim report of information then available and permit an October 30 update identifying subsequent developments. Ongoing negotiations do not explain why the Receiver cannot report the work already completed and the status of pending discussions. Barton prefers separately filed lender reports; if the Court permits incorporation into the quarterly filing, he requests a separately titled lender appendix with property and ownership-entity identifiers and the safeguards described below. Barton seeks no independent affirmative relief through this response. The alternatives identified below are requested solely as conditions on, or a partial denial of, the extension sought in Dkt. 940.

This response is filed under Local Rule 7.1(e). Dkt. 747 expressly exempts responses and replies under Local Rule 7.1(e)–(f) from its motion-leave requirement. The proposed conditions on any extension address the timing, presentation, and consideration of the very report placed at issue by Dkt. 940.

**I. The governing standard requires cause for the relief actually requested**

Because the Receiver moved before the deadline, Federal Rule of Civil Procedure 6(b)(1)(A) supplies the good-cause standard; the post-deadline excusable-neglect standard does not apply. See Lujan v. National Wildlife Federation, 497 U.S. 871, 895–96 & n.5 (1990) (explaining Rule 6's cause requirement and distinction between pre- and post-deadline requests). Lujan concerned late affidavits, not a receivership report; its relevance here is the rule governing extensions.

The Court also has broad discretion to supervise this receivership. SEC v. Safety Finance Service, Inc., 674 F.2d 368, 372–73 (5th Cir. 1982). That discretion permits a tailored reporting arrangement. Barton does not contend that separate filing is categorically required by Rule 6 or that an extension is forbidden. He submits that the reasons offered favor an interim report with supplementation and an independently identifiable presentation of the lender inquiry.

**II. Dkt. 792 requires a distinct lender inquiry that should remain independently identifiable**

Dkt. 792 directed the Receiver to solicit lender proposals concerning each Receivership Property, with the objective of accomplishing sales, paying down pre-receivership loan balances, and addressing remaining claims through the claims process. It required a report detailing the outcome within ninety days. Dkt. 792 at 1–2. Dkt. 940 ¶ 2 acknowledges October 6 as the deadline.

The report has an immediate decision-making function. If workable proposals cannot be secured, Dkt. 792 states that the Court will instruct the Receiver to begin sales free and clear of liens and loans, thereafter determine competing claims, liens, and interests, and distribute proceeds. Dkt. 792 at 2. The Court therefore needs to distinguish a workable proposal from an unresolved negotiation or an unsuccessful inquiry, property by property.

The quarterly obligation is broader: Dkt. 650 requires reporting and accounting for each Receivership Estate, including assets, liabilities, administrative expenses, proposed dispositions, creditors, and claims. Dkt. 650 ¶¶ 111–112, at 25–26. The obligations overlap but are not interchangeable. A consolidated narrative could leave unclear which property received which proposal, which ownership entity bears the debt, and which negotiations produced no workable result.

Dkt. 792 does not expressly prohibit incorporation into another filing or prescribe a comprehensive entity-by-entity accounting. Barton prefers a separate filing to preserve the distinct assignment, deadline, and property-specific review contemplated by that order. If incorporation is permitted, a separately titled lender appendix should preserve those functions. Identifying each property's ownership entity connects the lender report to the existing estate-by-estate accounting obligation without expanding this response into a new accounting motion.

**III. The motion's stated reasons do not justify the requested blanket deferral**

Ongoing discussions (Dkt. 940 ¶ 2). The Receiver says he has diligently engaged lenders and that several discussions continue. The motion supplies no property or lender names, outreach chronology, number of completed discussions, proposals received, or particular obstacle to reporting existing information. Rule 6 does not require a prescribed checklist of these details. Their absence nevertheless leaves unexplained why unfinished discussions prevent reporting

finished work or accurately identifying a discussion as pending. Barton does not ask the Court to infer that no work occurred.

The distinction between reporting and completing negotiations is decisive. Dkt. 792 requires a status report about the outcome of the inquiry; it does not make reporting contingent upon every lender reaching agreement. If further time might produce a better result for a particular property, the Receiver can identify that property, summarize its present status, and explain the requested additional time. That permits assessment of a targeted extension instead of postponing disclosure for every property. The requested interim filing is informational; Barton does not ask the Court to deem pending discussions unsuccessful or accelerate a disposition because a proposal remains under negotiation on October 6.

Efficiency and the common October 30 date (Dkt. 940 ¶ 3). A concise October 6 property table can be incorporated by reference into the October 30 update without repeating its contents. If the update appears in the quarterly filing, an identifiable lender appendix would preserve the targeted inquiry while accommodating the Receiver's stated efficiency concern. The motion does not explain why that arrangement would be impracticable. Barton does not contend that Rule 6 requires quantified preparation costs or savings.

Completeness and absence of delay (Dkt. 940 ¶ 4). Continued negotiations may justify supplementation, but completeness is not a reason to withhold a candid interim status. Nor must Barton prove an improper motive to oppose the scope of relief. Even a good-faith request should account for the practical consequences of delaying all results and obscuring the original reporting checkpoint. The SEC's nonopposition, reported in the conference certificate, does not supply the missing property-specific explanation.

**IV. Conditions on any extension should preserve an interim report and focused update**

If the Court grants an extension, Barton requests that it condition the additional time on preserving October 6 for a concise interim report and providing an October 30 update identifying subsequent developments. Using information then available, the interim report should identify each covered property, its ownership entity and lender, the inquiry's status, whether a proposal has been received, the principal unresolved issue, and any known proposal expiration or transaction deadline before October 30. Based on the Receiver's existing records, the report should distinguish no outreach, no response, pending negotiations, and inquiries that have concluded without a workable proposal.

As a condition on any extension, principal financial terms should be reported to the extent already reflected in a lender proposal, negotiation, or the Receiver's existing analysis, including the claimed balance, proposed payoff or compromise, lien releases, remaining deficiencies or reserved claims, and any existing estimate of estate proceeds and its stated assumptions. Disputed amounts should be identified as disputed. Additional details may be supplied in the October 30 update. These are proposed conditions to make an extension useful, not a claim that Dkt. 792 already specified every field. The interim report would summarize existing information without new appraisals, a new financial reconstruction, or production of all negotiation communications.

In paragraphs 3 and 5 of Dkt. 940, the Receiver requests permission to incorporate the lender report into the quarterly filing, but Dkt. 940-1 at 1 states that the Receiver "SHALL incorporate" the lender report into the quarterly filing. Any consolidation should instead be permissive and expressly conditioned on safeguards. If the Court grants an extension, the Receiver could include the October 30 lender update in the quarterly filing, provided that it appears as a separately titled appendix addressing each covered property, identifying its

ownership entity and lender, and expressly reporting the status and results of the Dkt. 792 inquiry. The appendix should distinguish information available on October 6 from later developments and state the date through which the lender information is current. A quarterly accounting cutoff should not silently truncate the lender inquiry. Incorporation should not dilute Dkt. 650's separate estate-by-estate requirements.

As a condition on any extension, the order should preserve consideration of substantive relief for the appropriate procedure. Before taking substantive action based upon the lender report—such as approving a proposal, allowing a claim, determining lien priority, or authorizing a disposition—Barton respectfully requests notice and a meaningful opportunity to respond under whatever procedure the Court directs. In SEC v. Torchia, 922 F.3d 1307, 1316–19 (11th Cir. 2019), the court recognized economical summary receivership procedures but required a meaningful opportunity to contest substantive determinations. Torchia involved merits determinations, not a scheduling extension, and is persuasive rather than binding authority here. It supports meaningful process before contested substantive determinations; it does not establish an automatic right to respond to every report. Barton seeks no advance authorization for a separate response to an informational report and no alteration of any existing response deadline.

Any order on Dkt. 940 should address reporting time and presentation only. It should not itself approve a lender proposal, allow a debt, determine lien priority, or authorize a sale. Barton requests no stay or modification of an existing transaction order and no adjudication of other entities' claims through this pro se response.

**V. Requested disposition**

Barton respectfully requests that the Court deny Dkt. 940 to the extent it would postpone all reporting until October 30. If the Court grants additional time, he requests that it condition the extension on preserving an October 6 interim report of information then available and providing

an October 30 update. He prefers separate lender filings but requests, if incorporation is permitted, a separately titled appendix identifying each property and ownership entity, distinguishing October 6 information from later developments, and stating the date through which the information is current. If the Court defers all reporting until October 30, Barton requests those same presentation safeguards as conditions on the extension, with financial terms limited to information already reflected in proposals, negotiations, or the Receiver's existing analysis. Any extension order should address reporting only, grant no substantive relief, and preserve notice and a meaningful opportunity to respond before substantive action under whatever procedure the Court directs.

The Receiver can continue negotiating while identifying what the ninety-day inquiry has accomplished. Preserving that checkpoint gives the Court usable information and accommodates a supported need for further discussions.

Dated: October 3, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***
**Timothy L. Barton**
Defendant, Pro Se
1846 East Rosemeade Parkway,
#232
Carrollton, Texas 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), no certificate of service is required for service accomplished through filing with the Court's electronic-filing system.

***/s/ Timothy L. Barton***
**Timothy L. Barton**