**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, et al.** | § | |
| | § | |
| ***Defendants*,** | § | |

**RECEIVER'S CONSOLIDATED REPLY**
**IN SUPPORT OF THE RECEIVER'S VERIFIED**
**SEVENTH THROUGH FIFTEENTH QUARTERLY FEE APPLICATIONS**

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
2699 Howell Street, Suite 500
Dallas, TX 75204

Timothy B. Wells
Texas Bar No. 24131941
tim@brownfoxlaw.com
BROWN FOX PLLC
306 W. 7th Street, Suite 1000
Fort Worth, TX 76102
T: (214) 327-5000
F: (214) 327-5001

Cort Thomas, as the court-appointed Receiver, files this consolidated Reply to Barton's Objections (Dkts. 927–35) (collectively "Objections") to the Receiver's Seventh Quarterly Fee Application (Dkt. 897), Eighth Quarterly Fee Application (Dkt. 899), Ninth Quarterly Fee Application (Dkt. 901), Tenth Quarterly Fee Application (Dkt. 903), Eleventh Quarterly Fee Application (Dkt. 905), Twelfth Quarterly Fee Application (Dkt. 907), Thirteenth Quarterly Fee Application (Dkt. 909), Fourteenth Quarterly Fee Application (Dkt. 911), and Fifteenth Quarterly Fee Application (Dkt. 913) (collectively "Fee Applications") and respectfully shows the Court as follows.

## I. <u>INTRODUCTION</u>

Through his apparent and undisclosed use of generative artificial intelligence,[1] Barton's Objections nitpick every aspect of the Receiver's Fee Applications. Yet, none of Barton's Objections assert that the Receiver's fee applications should not be granted. Nor do his Objections challenge the lodestar or *Johnson* factors or oppose the overwhelming majority of the fees or expenses incurred by the Receiver and his team. Rather, Barton's complaints with the Fee Applications are limited. He seeks only to exclude or reduce certain line-item fees and expenses. But many of the complained of fees—such as responding to the bar grievance filed against Ms. Koonce or submitting briefs in the Fifth Circuit—were incurred because of Barton's own actions. Moreover, several of Barton's arguments have already been evaluated and rejected by the Court when granting prior fee applications.[2] For others, such as his complaint that certain time entries violate SEC billing guidelines, Barton cites to no authority that any SEC billing instructions apply to this particular Receivership. Further, Barton does not attach or adequately cite to the SEC billing instructions he references. To the extent Barton's objections to certain clerical or mathematical errors regarding the Fee

[1] As the Court is well aware, Local Rule 7.2(f) requires disclosure of the use of generative artificial intelligence.

[2] *See* Barton's Response to Receiver's Fourth Quarterly Fee Application (Dkt. 597) (raising unreasonable fee and expense objections and complaining about redacted time entries); *cf.* Order Granting Receiver's Fourth Fee Application (Dkt. 609) (awarding the Receiver his full fees and expenses despite Barton's objections); *see also* Dkt. 195 at 2, Dkt. 287 at 2 explaining that the Receiver's redactions are reasonable.

Applications are correct, the Receiver's written down time of nearly 100 hours (or $38,500 even at a drastically reduced rate) more than covers these charges.

In what has become routine, Barton seeks to further delay payment of the Receiver's Fee Applications through his insistence that the Court conduct an *in camera* review of the Receiver's billing records. While the Receiver is happy to provide the Court with unredacted copies of his billing records to review *in camera*, such a review is unnecessary. The Receiver's redactions are made only to preserve his privilege arising from conversations with his counsel or to protect information that is likely to prejudice the Receivership if publicly disclosed at this time.

The Receivership, which began nearly four years ago, is now in its sixteenth quarter. Yet, the Receiver and his professional team were last compensated for work done in the sixth quarter—nearly two and a half years ago. While the Receiver sought and was granted extensions to the deadlines to file his fee applications when the Receivership was in financial difficulty, now that the Receivership is entering a better financial position, it is time for the Receiver and his team to be paid their fees. The Court should grant the Receiver's Fee Applications.

## II. ARGUMENT

Many of Barton's complaints with the Fee Applications are consistent across his Objections. As such, the Receiver addresses these global objections first and then addresses specific challenges from the Objections.

### A. The Fee Applications' Fees and Expenses Are Reasonable and Necessary.[3]

#### 1. The Fee Applications are Well Within the Court's Discretion.

Barton repeatedly complains about the reasonableness of the Fee Applications by attacking "billing judgment" and challenging whether particular charges qualify under uncertain "SEC billing instructions." But evaluating the questioned charges reveals that many arose from Barton's own

[3] The Receiver concedes that minor mathematical errors exist as explained below.

conduct or lack of cooperation. For instance, the dozens of hours the Receiver's team spent defending Ms. Koonce from a baseless bar grievance occurred because Barton filed the grievance. Similarly, the filing of amicus briefs in the Fifth Circuit was necessitated by Barton's appeal of the Receivership Order and appeals of multiple orders approving property sales. The Receiver and his team have spent thousands of hours protecting the Receivership Estate that they would not otherwise have needed to spend but for Barton's actions.

Barton's objections based on SEC billing instructions are equally flawed. First, Barton does not point to any authority applying SEC billing instructions in this particular Receivership. Further, Barton does not attach or adequately cite to the billing instructions he purports to reference. But even if Barton could establish that certain SEC billing instructions apply here, his objections are unpersuasive. For example, the charges surrounding the privilege review, which Barton complains of, arose because of Barton's insistence that the Receiver conduct the privilege review and use a lawyer not otherwise connected to the Receivership. Due to the volume of paper documents under the Receiver's control, the documents must be stored in a designated storage facility. And to conduct the privilege review, the Receiver's office did not have adequate space to move the files and conduct the privilege review there, which required the reviewing attorney to travel to the storage unit to review the documents. As such, these fees were necessary and reasonable. Any objection to travel time being included in the Fee Applications is more than offset by the nearly 100 hours of time the Receiver has written off across the Fee Applications.

Further, Barton's Objections ignore the Court's discretion in determining fees awarded to receivers. *SEC v. Allen*, No. 3:11-CV-882-O, 2013 WL 12125996, at *2 (N.D. Tex. Feb. 26, 2013); *see also SEC v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 373 (5th Cir. 1982). This Court is an expert as to the reasonableness of attorney's fees and may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees. *See Primrose Operating Co. v. Nat'l Am. Ins.*

*Co.*, 382 F.3d 546, 562 (5th Cir. 2004). It also ignores the deference arising from the absence of an objection by the SEC. *Allen*, 2013 WL 12125996, at *3. In addition to the lodestar analysis and the *Moody* considerations, a receiver's compensation generally "corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted [sic] to him, and the perplexity and difficulty involved in that management." *Stuart v. Boulware*, 133 U.S. 78, 82 (1890).

**2. The SEC has Reviewed the Fee Applications and is Unopposed.**

Barton repeatedly complains that the Receiver did not comply with the Receivership Order by timely sending the Fee Applications to the SEC. But these challenges are contrary to the facts and ignore the Receiver's verified Fee Applications and certificates of conference that attest to the Receiver having sent each of the Fee Applications to the SEC on two different occasions. For each quarter, the Receiver timely sent the SEC the initial draft fee applications. The Receiver also sent the Fee Applications to the SEC for a second time prior to filing the applications. The verified Fee Applications also attest that having reviewed the Fee Applications the SEC is unopposed to the relief sought.

**3. Redacted and Block-Billed Entries are Permissible and Do Not Require In Camera Review.**

Barton challenges the Receiver's redactions made to protect privileged information and conversations and urges the Court to delay approval of the fee applications pending an *in camera* review of unredacted fee invoices. Such a request is nothing more than another unnecessary Barton stall tactic. Redacted billing records are acceptable if the court has sufficient information to form an opinion on the reasonableness of the fees. *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009); *Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-CV-00293, 2021 WL 5155715, at *3–4 (S.D. Tex. July 21, 2021) (Alanis, M.J.) (partially redacted entries provided

sufficient information for the Court to determine that the time expended was reasonable).[4] Likewise, "[b]lock-billed entries do not preclude a fee award, 'as long as the evidence produced is adequate to determine reasonable hours.'" *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, No. CV H-14-1368, 2020 WL 821879, at *11 (S.D. Tex. Feb. 19, 2020) (Rosenthal, J.) quoting *DeLeon v. Abbott*, 687 F. App'x 340, 346 n.4 (5th Cir. 2017) (Elrod, J., concurring).

The Receiver's redactions are made to protect privileged information and information that would prejudice the Receivership if publicly disclosed at this time. Throughout his Objections, Barton fails to identify any specific entry that is overly redacted or any block-billed entry that prevents the Court from determining whether a reasonable amount of time was expended. As offered in the Fee Applications and reiterated here, the Receiver is willing to provide unredacted invoices for the Court's *in camera* review, if necessary.

**4. Fees Incurred Managing the Receivership Estate Are Reasonable, Necessary, and Beneficial.**

Barton repeatedly complains that various fees billed while investigating fraudulent transfer claims, administering the Receivership, or managing assets of the Receivership Estate have not been shown to be necessary or reasonable. But these objections ignore the unique circumstances of this Receivership—*e.g.*, the serial appeals, the illiquid assets, the unfortunate continued delays—which have required continued administration of the Receivership and its various properties for nearly four years. But-for Barton's repeated and improper appeals of the Receivership property sale orders, many of these administrative tasks would have been relieved years ago. These complaints also ignore the Receiver's verified Fee Applications which state that the fees and expenses incurred were necessary and reasonable. While Barton may not like why the fees were incurred, each entry was necessary to

---

[4] Indeed, the Court has previously determined at least twice that redactions made by the Receiver are reasonable given the sensitivity of the information at issue and did not hinder the Court's reasonableness determination. *See* Dkt. 195 at 2; Dkt. 287 at 2.

the administration of the Receivership or management of the Receivership Estate.

**5. Ahuja & Clark and Ahuja & Consultants are the Same Entities.**

Barton challenges whether Ahuja & Clark or Ahuja & Consultants is the entity that holds the receivable for the tax fees billed to the Receivership. But the challenge is a nonstarter because the entities are the same. Ahuja & Clark changed its name to Ahuja & Consultants by filing a Certificate of Conversion with the Texas Secretary of State on January 25, 2024. Ahuja & Consultants uses the same Employer Identification Number (EIN) that Ahuja & Clark used.

**B. Responses to Barton's More Specific Objections**

**1. Seventh Quarterly Fee Application**

The Receiver's Seventh Quarterly Fee Application requests fees for April 1, 2024 through June 30, 2024. In addition to the general objections mentioned above, Barton objects to several minor typographical and mathematical errors. But these objections do not materially change the substance of the request. First, the Ahuja & Consultants invoice heading does incorrectly say Q1 2024; however, the bill is dated June 30, 2024 and reflects time entries and expenses from April-June 2024. Next, Barton is correct that the Receiver did actually write off more time (6.7 hours) than the 6.0 hours stated in the fee application.

As in past Fee Applications, the Receiver is seeking to pay Veracity for multiple quarters through this one Fee Application.[5] Barton challenges the inclusion of the Veracity fees and expenses because (1) the Receiver is seeking retroactive approval for one invoice that was already inadvertently paid and (2) because the Receiver's total requested fees in the Fee Application mistakenly omitted the $10,772.46 owed to Veracity. To start, Barton cites no authority precluding retroactive approval of a payment made by mistake. Moreover, despite a mathematical error, the Receiver's Fee

[5] The Receiver seeks payment to Veracity of fees and expenses rendered during the periods from October 1, 2024, through June 30, 2026. The Court has approved of this practice in past orders. *See e.g.*, Dkt. 609 (granting Veracity's fees and expenses between July 1, 2023 and September 30, 2024, even though the order says September 30, 2023).

Application clearly contemplates inclusion of the fees and expenses owed to Veracity. Barton admits as much by pointing to the proposed order's inclusion of this amount in its total.[6] Further, such an error now corrected through this reply does not amount to waiver or introduction of a new argument. *See United States v. Guerrero*, 169 F.3d 933, 940 n.1 (5th Cir. 1999) (noting that errors can be fixed through a reply brief).

Barton additionally objects to paying $2,256.01 in expenses to Ahuja & Consultants because he asserts these expenses were previously submitted in the Receiver's Fourth Fee Application. But these expenses were not previously paid. The Receiver's Fourth Fee Application sought expenses from Q4 2023 through Q3 2024, which included the $2,256.01 now sought.[7] But the order granting the Receiver's Fourth Fee Application appears to have inadvertently missed including these fees in the awarded amount.[8] Because they were not previously paid, nor were they denied by the Court, the Receiver now seeks payment for these charges.

Barton also challenges Joshua Mahaffey's billing rate from an April 30, 2024 entry. The Receiver concedes that the entry did mistakenly bill 1.0 hours at a rate of $475 when the correct rate should be $275. As such, this entry should be discounted by $200. With this concession, the Receiver's revised Seventh Quarterly fee request would be $171,385.97. However, the Court may also determine that such a concession is unnecessary based on the Receiver's already significant write down.

Barton's complaints regarding the lawsuits against his family members,[9] lawyers,[10] and

---

[6] *See* Dkt. 927 at 1 ("the stated total, $160,813.51, omits the $10,772.46 Veracity request the proposed order directs be paid").

[7] *See* Dkt. 594 at APP117–18.

[8] *See* Dkt. 593 at 10.

[9] *See Thomas v. Barton, et al.*, No. 3:25-cv-946-X.

[10] *See Thomas v. Walji, et al.*, No. 3:24-cv-512-X.

former business associates[11] ignore the mandate of the Receivership Order which provides that "[t]he Receiver is authorized, empowered, and directed to investigate, prosecute . . . to recover and/or conserve Receivership Property."[12] As is evident from the Complaints filed in each case, the lawsuits intend to do just that.

**2. Eighth Quarterly Fee Application**

The Receiver's Eighth Quarterly Fee Application seeks fees and expenses incurred from July 1, 2024 through September 30, 2024. In addition to the general objections mentioned above, Barton again challenges several typographical and mathematical errors. The first is the Receiver mistakenly including in the proposed order $2,640.39 in expenses accrued during the Eighth Quarter that were already paid through the Receiver's Fourth Quarterly Fee Application.[13] While the proposed order is incorrect, the component parts of the Receiver's Eighth Fee Application ($20,868.50 for Receiver's fees; $112,509.50 for Receiver's counsel's fees; and $69,639.18 to Ahuja & Consultants) equal the $203,017.18 actually sought. Such a typographical error now corrected through this reply does not amount to waiver or introduction of a new argument. *See Guerrero*, 169 F.3d 940 n.1.

Barton further challenges the Receiver's mistaken reference to seeking $104,954.00 in fees and expenses to Brown Fox when he actually seeks $112,509.50.[14] Throughout the Fee Application the correct figure of $112,509.50 is listed several times. As with the other errors above, one inadvertent typographical error does not amount to waiver, especially when the correct amount is listed elsewhere in the Fee Application.

---

[11] *See Thomas v. Fu, et al.*, No. 3:24-cv-612-X.

[12] Receivership Order, Dkt. 650 at 22.

[13] *See* Dkt. 899 at 6 (explaining that these expenses have been paid through the Fourt Quarter Fee Application); *see also* Dkt. 609 at 7 (awarding expenses incurred from October 1, 2023, to September 30, 2024).

[14] *See id.* at 7.

**3. Ninth Quarterly Fee Application**

The Receiver's Ninth Quarterly Fee Application seeks fees and expenses incurred from October 1, 2024 through December 31, 2024. In addition to the general objections mentioned above, Barton again challenges a typographical and mathematical error. Here, the Receiver mistakenly stated that $2,640.39 in expenses accrued during the Ninth Quarter were paid in the order granting the Receiver's Fourth Quarterly Fee Application.[15] This is incorrect.[16] Regardless, Barton contends that the Receiver disclaimed these expenses and waived his ability to recover them. Like the Eighth Fee Application objection, this is incorrect. *See Guerrero*, 169 F.3d at 940 n.1. The component parts of the Receiver's Fee Application ($13,855.41 for Receiver's fees; $56,740.50 for Receiver's counsel's fees; and $31,248.65 to Ahuja & Consultants) equal the $101,844.56 actually sought. The Receiver's proposed order also states the correct amount.

**4. Eleventh Quarterly Fee Application[17]**

The Receiver's Eleventh Quarterly Fee Application seeks fees and expenses incurred from April 1, 2025, through June 30, 2025. In addition to the general objections mentioned above, Barton's specific complaint here is that the Receiver mistakenly reported more write off hours than he actually wrote off. But this does not change the overall amount owed under the Fee Application. And Barton does not provide any basis or authority under which this would change the amount of fees and expenses owed under the Fee Application.

**5. Fourteenth Quarterly Fee Application**

The Receiver's Fourteenth Quarterly Fee Application seeks fees and expenses incurred from January 1, 2026, through March 31, 2026. In addition to the general objections mentioned above,

---

[15] *See* Dkt. 901 at 6.

[16] *See* Dkt. 609 at 7.

[17] The Receiver does not reply to specific objections for the Tenth, Twelfth, or Thirteenth Quarterly Fee Applications because the reply to global objections discussed above covers all of Barton's challenges raised in these Objections.

Barton objects that the fees and expenses sought by the Receiver's accountants do not add up to the total fees requested, resulting in a $330.37 difference. But the fees and expenses do correctly add up. The component parts of the Receiver's Fee Application ($15,604.65 for Receiver's fees; $40,154.50 for Receiver's counsel's fees; and $4,716.37 to Ahuja & Consultants) equal the $60,475.52 actually sought.

#### 6. Fifteenth Quarterly Fee Application

The Receiver's Fifteenth Quarterly Fee Application seeks fees and expenses incurred from April 1, 2026, through June 30, 2026. In addition to the general objections mentioned above, Barton objects to this Fee Application based on two time entries the Receiver intended to write off but inadvertently included as billed time entries. The Receiver will concede that both charges, one on April 22, 2026 for $269.50 and the other on June 17, 2026 for $231.00, which total $500.50, were supposed to be written off. The Court could, however, decide that the time the Receiver has already written off is sufficient to offset the intended write off here.

### C. No Holdback Is Necessary

As mentioned above, the Receiver has already written off nearly 100 hours or $38,500. Given the substantial reductions already taken, the Receiver once again respectfully requests that no holdback occur in this case.[18] While the SEC has indicated that it believes imposing a holdback in the amount of 20% of the fees and expenses is appropriate for each Fee Application, the Court is not bound by this recommendation.

## III. CONCLUSION

For the foregoing reasons, the Court should deny all of Barton's Objections and grant all of the Receiver's Fee Applications.

---

[18] In granting the Receiver's previous fee applications, the Court has elected not to impose the 20% holdback. *See* Dkts. 195, 287, 553, 593, 667.

Respectfully submitted,

By: */s/ Timothy B. Wells*

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
2699 Howell Street, Suite 500
Dallas, TX 75204

Timothy B. Wells
Texas Bar No. 24131941
tim@brownfoxlaw.com
BROWN FOX PLLC
306 W. 7th Street, Suite 1000
Fort Worth, TX 76102
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.