**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 3:22-CV-2118-X** |
| **TIMOTHY BARTON, et al.,** | § | |
| **Defendants,** | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| **Relief Defendants.** | § | |

**DEFENDANT'S OPPOSED MOTION FOR LEAVE**
**TO FILE SURREPLY AND BRIEF IN SUPPORT**

Defendant Timothy L. Barton requests leave under Local Civil Rule 7.1(h), consistent with the Court's orders at Dkts. 747 and 749, to file the limited surreply attached as Exhibit A concerning the Receiver's consolidated reply (Dkt. 946) in support of the Seventh through Fifteenth Quarterly Fee Applications (Dkts. 897, 899, 901, 903, 905, 907, 909, 911, 913). Barton asks that Exhibit A be deemed filed upon entry of the order granting leave.

## I. Standard

Local Civil Rule 7.1(e) and (f) provide for a response and a reply, but not a surreply as of right. Leave is appropriate to address material arguments first raised in a reply that the responding party has not had an opportunity to answer. *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239–40 (N.D. Tex. 1991) (Fitzwater, J.); *cf.* Austin v. Kroger Tex., L.P., 864 F.3d 326, 336 (5th Cir. 2017) (upholding denial where the reply raised no new arguments). See also RedHawk Holdings Corp. v. Schreiber, No. 20-30157, slip op. at 5–9 (5th Cir. Nov. 12, 2020)

(unpublished) (vacating an order relying exclusively on new reply matters when no opportunity to respond was allowed). Barton seeks no surreply as of right, only a limited opportunity to address the new offset theory and proposed corrections identified below.

## II. The reply raises new grounds and corrections warranting a limited response

First, the reply concedes billing errors identified in Barton's objections, including the $200 rate error (Dkt. 946 at 7), a proposed Eighth application order that includes $2,640.39 already paid (id. at 8), an incorrect statement concerning the Ninth application (id. at 9), and $500.50 in entries that should have been written off (id. at 10). The reply then newly proposes that previously written-off hours can offset conceded overcharges without correcting the requested payments. *Id.* at 2, 7, 10. Exhibit A responds to that newly articulated offset rationale, not merely the errors previously identified.

Second, the reply seeks to correct figures in verified fee applications by statements in an unverified reply brief, relying on *United States v. Guerrero*, 169 F.3d 933, 940 n.1 (5th Cir. 1999). Dkt. 946 at 7–9. It also acknowledges inaccuracies in the order on the Fourth application, Dkt. 609. Id. at 6 n.5, 7 n.8. The reply does not supply verified amended applications or corrected proposed orders. Exhibit A addresses whether the Court should approve disbursements on that unreconciled record, including the difference between the Ninth application's asserted total and its proposed payment directives.

Third, the reply asserts that no authority applies the Commission's Billing Instructions to this receivership and faults Barton for not attaching them. *Dkt. 946* at 1, 3. The operative Receivership Order, Dkt. 650 ¶¶ 116–120, requires SEC review of proposed fee applications, interim cost-benefit and final review, and permits a 20% holdback; it does not expressly

incorporate the published Billing Instructions. Exhibit A explains their relevance as SEC guidance bearing on fee reasonableness and attaches a public copy as Exhibit A-1.

Fourth, the SEC's recommendation of a 20% holdback was already disclosed in the filed applications. See, e.g., Dkts. 897 at 17–18; 913 at 16–17. The reply did not first disclose that position. Rather, the reply newly aggregates "nearly 100 hours or $38,500" in written-off time across nine applications and invokes that figure in requesting no deductions or holdback. Dkt. 946 at 2, 7, 10. Exhibit A briefly responds to that newly quantified contention without treating the SEC recommendation itself as *a* new issue.

Exhibit A also corrects two characterizations of the objections by citing Dkt. 927 at 1, 4–5, 9–10, and withdraws one arithmetic objection to the Fourteenth application. It re-argues no underlying merits objection and requests no change to the briefing schedule. It introduces no new evidence about disputed facts; its only supplemental attachment, Exhibit A-1, is the Commission's publicly available Billing Instructions, provided for the Court's convenience.

## III. Request

Barton requests leave to file Exhibit A and an order deeming it filed upon entry of the order granting leave. This motion seeks leave only, without any ruling now on the merits of the fee applications or Barton's pending objections.

Dated: October 15, 2026

Respectfully submitted,

*/s/ Timothy L. Barton*
**Timothy L. Barton, Defendant, Pro Se**
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF CONFERENCE**

I certify that I conferred on October 14, 2026, with counsel for the Receiver and counsel for the Securities and Exchange Commission regarding the relief requested in this Motion for Leave to File Surreply. Counsel for the Receiver and counsel for the Commission advised that they oppose the requested relief. Accordingly, this motion is opposed.

***/s/ Timothy L. Barton***
**Timothy L. Barton**

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, I electronically filed the foregoing Motion for Leave to File Surreply and Brief in Support, together with its accompanying exhibits and proposed order, with the Clerk of Court using the CM/ECF system, which transmitted notice of the filing to all counsel of record registered to receive electronic service.

***/s/ Timothy L. Barton***
**Timothy L. Barton**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| v. | § | **Civil Action No. 3:22-CV-2118-X** |
| **TIMOTHY BARTON, et al.,** | § | |
| *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| *Relief Defendants.* | § | |

**ORDER GRANTING LEAVE TO FILE SURREPLY**

Before the Court is Defendant Timothy L. Barton's Motion for Leave to File Surreply (Dkt. ____) concerning the Receiver's consolidated reply (Dkt. 946) in support of the Seventh through Fifteenth Quarterly Fee Applications (Dkts. 897, 899, 901, 903, 905, 907, 909, 911, 913).

Having considered the motion, the Court GRANTS it. Consistent with the Court's orders at Dkts. 747 and 749, Barton is granted leave to file the surreply attached to the motion as Exhibit A. The Clerk is DIRECTED to docket Exhibit A, with its attachment, as Defendant's Surreply, which is deemed filed as of the date of this Order.

This Order grants leave only and does not decide the fee applications or the objections to them.

**SO ORDERED** this ______ day of __________________, 2026.

___________________________________
**BRANTLEY STARR**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:22-CV-2118-X** |
| **TIMOTHY BARTON, et al.,** | § | |
| **Defendants,** | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| **Relief Defendants.** | § | |

**DEFENDANT TIMOTHY L. BARTON'S SURREPLY TO THE RECEIVER'S CONSOLIDATED REPLY (DKT. 946) IN SUPPORT OF THE SEVENTH THROUGH FIFTEENTH QUARTERLY FEE APPLICATIONS**

Defendant Timothy L. Barton submits this proposed surreply as Exhibit A to his motion for leave. It responds to new assertions, concessions, and explanations in the Receiver's consolidated reply (Dkt. 946). It does not repeat the objections at Dkts. 927–935, which stand on their own.

## I. The Receiver's "offset" theory asks the Court to leave conceded overcharges in place.

The reply concedes errors the objections identified. The Seventh application billed Joshua Mahaffey's April 30, 2024 entry at $475 rather than $275, an overcharge of $200. Dkt. 946 at 7. The Fifteenth application billed $500.50 for two entries, April 22 and June 17, 2026, that "were supposed to be written off." *Id.* at 10. The Seventh application's stated total omitted $10,772.46 that its proposed order directs be paid. *Id.* at 6–7. The Eighth application's proposed order includes

$2,640.39 in expenses that were "already paid." *Id.* at 8. The Ninth application's statement about the same figure "is incorrect." *Id.* at 9 & n.16. The Seventh and Eleventh applications misreported the hours written off. *Id.* at 6, 9.

Having conceded the overcharges, the reply asks the Court not to correct them. It suggests the $200 "concession is unnecessary based on the Receiver's already significant write down," *id.* at 7, and that the Court "could" treat time "already written off" as "sufficient to offset" the $500.50, *id.* at 10, because the Receiver has written off "nearly 100 hours or $38,500" across the nine applications. *Id.* at 2, 10. That argument appears in none of the applications, and Barton has not had an opportunity to answer it.

The answer is short. Hours written off were never requested. They are not in the lodestar and cannot be credited against it. A fee applicant is "charged with proving that [it] exercised billing judgment," and billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Billing judgment is a condition of the request, not a reserve against errors in the hours that remain. *See* *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (a fee applicant "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). An entry billed at the wrong rate is an overcharge whether or not other time went unbilled. The conceded amounts should be deducted, not excused.

## II. Verified applications are not corrected by an unverified reply, and the corrected figures still do not reconcile.

The Receiver relies on the verification of his applications to establish that every charge was necessary and reasonable. Dkt. 946 at 4, 5. He then corrects those verified applications through a reply brief, citing *United States v. Guerrero*, 169 F.3d 933, 940 n.1 (5th Cir. 1999), for the proposition that an error may be "corrected through this reply." Dkt. 946 at 7, 8. The footnote in

*Guerrero* concerns errors in appellate briefs, not the evidentiary support for receivership fees. It does not establish that an unsworn reply can reconcile verified fee amounts or authorize an inaccurate payment directive. The Court should require a verified reconciliation or, if necessary, an amended application, together with corrected proposed orders, before ruling on disputed amounts. Neither has been supplied. The Court is being asked to sign proposed orders the Receiver himself says are wrong, *id.* at 8, on the strength of representations in a brief.

The reply's own corrections show why that matters. The Ninth application identifies $3,220.91 in expenses as not sought. Dkt. 901 at 5–6. The reply addresses a different figure, $2,640.39, says the application's statement about it "is incorrect," and does not say what the correct statement is. Dkt. 946 at 9 & n.16. The reply states a total of $101,844.56 for the Ninth application, *id.* at 9, while the payment directives in the proposed order total $101,874.56. Dkt. 901-1 at 2. A reply that corrects one error and leaves two unreconciled is not a basis for entering an order.

The pattern reaches orders already entered. The Receiver now acknowledges that the order granting the Fourth application awarded Veracity's fees through September 30, 2024 "even though the order says September 30, 2023," Dkt. 946 at 6 n.5, and that the same order "appears to have inadvertently missed" $2,256.01 the Fourth application requested. *Id.* at 7 & n.8. Errors in proposed orders become errors in orders. Barton asks that the Court decline to enter the proposed orders as submitted and require corrected, verified figures and corrected proposed orders before any award.

Two related points. First, an amount requested in the Fourth application and omitted from the order granting it should be addressed by a motion directed to Dkt. 609, so the record shows why the award is changing, rather than carried into a later quarter as a new charge. Second, the reply says Barton "cites no authority precluding retroactive approval of a payment made by mistake." Dkt. 946 at 6. The current Receivership Order states that compensation of the Receiver

and Retained Personnel "shall require the prior approval of the Court." Dkt. 650 ¶ 116, at 27. The order operative on the actual payment date must also be identified. If that order required advance approval, a later request for ratification must disclose the payment date, source account, amount, and basis for approval. The fact that money was already disbursed cannot itself justify a second payment.

A distinct payment-control problem concerns Veracity. The Receiver acknowledged an earlier $1,786.13 disbursement. Dkt. 897 at 8 n.3; Dkt. 927 at 6–7. Yet Dkt. 897-1 at 2 directs payment of the full $10,772.46 Veracity amount. Any order must expressly credit the previously paid $1,786.13 against any new disbursement, without treating that credit as Barton's consent to retroactive approval.

## III. The "no authority" point does not answer the objections.

The reply asserts that Barton "does not point to any authority applying SEC billing instructions in this particular Receivership" and "does not attach or adequately cite" them. Dkt. 946 at 1, 3. The Receivership Order does not name the Billing Instructions. It does build the fee process around the Commission's review of every application. The Receiver must serve counsel for the Commission with each proposed application, "together with all exhibits and relevant billing information in a format to be provided by SEC staff," at least thirty days before filing it. Dkt. 650 ¶ 117, at 27. Every application is interim and "subject to cost benefit and final reviews at the close of the receivership." *Id.* ¶ 118. And each application "may be subject to a holdback in the amount of 20% of the amount of fees and expenses." *Id.* ¶ 119. The Billing Instructions are the published

standards Commission staff apply in the review the Order requires, and the 20% holdback the Commission now recommends, Dkt. 946 at 10, is the one the Order contemplates.[1]

The SEC's published Billing Instructions expressly call for reasonably detailed time descriptions (§ D.2), approximate allocations where a single entry exceeding one hour combines two or more activities in an Activity Category (§ D.4), and no reimbursement for travel time within twenty miles of the professional's office, with longer-distance travel time limited to 50% of the regular rate (§ E.2(j)). Dkt. 927 at 7–8 identifies privilege-review entries combining travel with document review without separating the time. Dkt. 946 gives no distance, allocation, or calculation establishing the chargeable portion. The Court can evaluate these defects whether it treats the instructions as controlling or as persuasive evidence of reasonable billing.

Whether the Court treats the Billing Instructions as binding or as the Commission's statement of what a reasonable receivership bill looks like, the entries the objections identify, including travel time billed to the estate, block-billed entries, and redactions that obscure the subject matter of the billed work, must still be shown reasonable under the lodestar standard the Receiver himself invokes. Dkt. 946 at 3–5. The reply does not make that showing. It says the Receiver's verification is enough. *Id.* at 5. For applications whose verified figures the Receiver has now corrected in a brief, it is not.

## IV. The Court should apply the holdback the Commission recommends.

The reply discloses that "the SEC has indicated that it believes imposing a holdback in the amount of 20% of the fees and expenses is appropriate for each Fee Application," and asks the Court to disregard that recommendation. Dkt. 946 at 10. The applications present the Commission

[1] The Billing Instructions are published by the Commission. Because the reply faults Barton for not attaching them (Dkt. 946 at 1, 3), a copy is attached as Exhibit A-1 for the Court's convenience. It is a public document, not evidence on any disputed fact.

as having reviewed them and as "unopposed." *Id.* at 4. The Commission's position, as the Receiver now reports it, is non-opposition with a 20% holdback. The Receiver relies on the first half and asks the Court to ignore the second.

The holdback is the Order's own mechanism, not a sanction. Each application "may be subject to a holdback in the amount of 20% of the amount of fees and expenses," and the amounts held back are "paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership." Dkt. 650 ¶ 119, at 27. The Court declined to apply it on earlier applications. Dkt. 946 at 10 n.18. None of those applications came to the Court with conceded overcharges, a proposed order the Receiver admits is wrong, and an acknowledged error in a prior order. These do. The holdback denies no fee; it preserves the conceded and disputed amounts for the cost-benefit and final review the Order already requires, Dkt. 650 ¶ 118; and it follows the position of the only party whose review the Receiver cites. Barton asks that any order approving the Seventh through Fifteenth applications impose the 20% holdback the Commission recommends, pending the final fee application.

Because the SEC's position appears here through the Receiver's characterization rather than a direct SEC filing, Barton also requests that the Court obtain the SEC's own confirmation whether it recommends a 20% holdback on each of the nine applications before rejecting that safeguard. This is a request for confirmation of the SEC's position, not for another merits briefing round.

## V. The record answers the reply's characterizations.

The reply states that "none of Barton's Objections assert that the Receiver's fee applications should not be granted." Dkt. 946 at 1. Dkt. 927 at 1 and 9–10 asks the Court to withhold approval pending review and correction. The reply states that Barton "fails to identify any specific entry that is overly redacted or any block-billed entry." Dkt. 946 at 5. Dkt. 927 at 4–

5 identifies the redacted correspondence entry at Dkt. 898, APP007, and the June 24, 2024 block-billed entry at APP037. The Receiver "is happy to provide" unredacted records for *in camera* review. Dkt. 946 at 2, 5. Barton asks the Court to accept that offer before ruling, so that the Court can independently determine reasonableness without publicly disclosing legitimately privileged information.

One narrowing. The reply explains that the Fourteenth application's accounting figures, $4,386.00 in fees and $330.37 in expenses, sum to the $4,716.37 requested. Dkt. 946 at 10. Barton withdraws the arithmetic objection to that sum. His remaining objections to the Fourteenth application stand.

## VI. Relief requested

Barton asks that the Court (1) deduct the conceded amounts, $200 from the Seventh application and $500.50 from the Fifteenth, and exclude from any order on the Eighth application the $2,640.39 the Receiver admits was already paid, and expressly credit the $1,786.13 already paid to Veracity against any new payment under the Seventh application, without waiving Barton's objection to retroactive approval; (2) decline to enter the proposed orders as submitted and require corrected, verified figures and corrected proposed orders before any award; (3) accept the Receiver's offer of *in camera* review of the unredacted billing records before ruling; (4) impose on each application the 20% holdback the Commission recommends, pending the final fee application; and (5) obtain the SEC's direct confirmation of its holdback position before declining to apply that protection. Barton's objections at Dkts. 927–935 are incorporated and not repeated here.

Dated: October 15, 2026

Respectfully submitted,

***/s/ Timothy L. Barton***
**Timothy L. Barton, Defendant, Pro Se**
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

## CERTIFICATE OF SERVICE

I certify that on October 15, 2026, this surreply was served on all counsel of record by CM/ECF.

***/s/ Timothy L. Barton***
**Timothy L. Barton**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 3:22-CV-2118-X** |
| **TIMOTHY BARTON, et al.,** | § | |
| **Defendants,** | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| **Relief Defendants.** | § | |

# EXHIBIT A-1

to Defendant Timothy L. Barton's Surreply (Exhibit A)

**U.S. Securities and Exchange Commission**
*Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission*

Version 10.01.08 (eleven pages, with Exhibit A, Standardized Fund Accounting Report)

Published at
https://www.sec.gov/oiea/Article/billinginstructions.pdf
Retrieved October 14, 2026

**BILLING INSTRUCTIONS FOR RECEIVERS IN CIVIL ACTIONS COMMENCED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION**

Except where inconsistent with guidelines established by the applicable district or circuit court, the undersigned hereby represents that, if appointed receiver in a civil action commenced by the U.S. Securities and Exchange Commission (the "SEC" or the "Commission"), each application for professional fees and expenses (the "Application") submitted by the receiver, including all contractors and/or professionals retained by the receiver, will comply with these billing instructions (the "Billing Instructions"). Undersigned further represents that any deviation from the Billing Instructions will be described in writing and submitted to the SEC at least 30 days prior to the filing of the Application with the Receivership Court. Following its receipt and review of proposed applications, as described in section A.2 below, the SEC may object to deviations and charges with which it does not agree.

Undersigned acknowledges that all applications for compensation are interim and are subject to a cost benefit review and final review at the close of the receivership. At the close of the receivership, the receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the receiver during the course of the receivership.

Undersigned acknowledges that, to the extent requested by the SEC, interim fee applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the court as part of the final fee application submitted at the close of the receivership.

## A. CERTIFICATION

1. Each Application must contain a Certification by the Applicant that:

   (a) the Certifying Professional has read the Application;

   (b) to the best of the Applicant's knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in the Certification and described in the Application);

   (c) all fees contained in the Application are based on the rates listed in the Applicant's fee schedule attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

   (d) the Applicant has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and,

   (e) in seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Applicant requests reimbursement only for the amount billed to the Applicant by the third-party vendor and paid by the Applicant to such vendor. If such services are performed by the receiver, the receiver will certify that it is not making a profit on such reimbursable service.

2. At least 30 days prior to the filing of the Application with the Court, the Applicant will provide to SEC Counsel a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

## B. ATTENDANCE AT HEARING ON APPLICATION

The Receiver or other Certifying Professional shall be present at any hearing to

consider the Application.

## C. CONTENT OF APPLICATION

The following information must be provided in the Application:

1. Information about the Applicant and the Application.

   (a) the time period covered by the Application;

   (b) the date the receiver was appointed, the date of the order approving employment of the Applicant, and the date services commenced;

   (c) the names and hourly rates of all Applicant's professionals and paraprofessionals (the "Fee Schedule"); and,

   (d) whether the Application is interim or final, and the dates of previous orders on interim Applications along with amounts requested and the amounts allowed or disallowed, all amounts of previous payments, and amount of any allowed Applications which remain unpaid.

2. Case Status (Narrative).

   (a) The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

   (b) Summary of the administration of the case, including all funds received and disbursed, and when the case is expected to close;

   (c) Summary of creditor claims proceedings, including a description of established or anticipated procedures for: (i) providing notice to known and unknown claimants; (ii) receipt and review of claims; (iii) making recommendations to court for payment or denial of claims; and, (iv) final disposition of claims. This summary should also include the status of such claims proceedings after they have been commenced;

   (d) Description of assets in the receivership estate, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended; and,

(e) Description of liquidated and unliquidated claims held by the receiver, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments).

3. <u>Current and Previous Billings.</u>

(a) Total compensation and expenses requested and any amount(s) previously requested;

(b) Total compensation and expenses previously awarded by the court; and,

(c) Total hours billed and total amount of billing for each person who billed time during the period for which fees are requested.

4. <u>Standardized Fund Accounting Report.</u>

The SEC's Standardized Fund Accounting Report ("SFAR") submitted by the Receiver for the most recent quarter shall be attached to any fee application as "Exhibit A".

**D. <u>TIME RECORDS REQUIRED TO SUPPORT FEE APPLICATIONS</u>**

1. Each professional and paraprofessional must record time in increments of tenths of an hour, and must keep contemporaneous time records on a daily basis.

2. Time records must set forth in reasonable detail an appropriate narrative description of the services rendered. Without limiting the foregoing, the description should include indications of the participants in, as well as the scope, identification and purpose of the activity that is reasonable in the circumstances.

3. The Application should separately describe each business enterprise or litigation matter (i.e., "Project") for which outside professionals have been employed. For example, separate litigation matters should be set out individually in the Application as

individual Projects and each such Project should contain Activity Categories as described in Sections D.4 and D.5 below. Each Project Category should contain a narrative summary of the following information:

(a) a description of the project, its necessity and benefit to the estate and the status of the project including pending litigation for which compensation and/or reimbursement of expenses is requested;

(b) identification of each person providing services on the project; and

(c) a statement of the number of hours spent and the amount of compensation requested by professionals and paraprofessionals on the project.

4. In recording time, each professional and paraprofessional may, subject to Section D.5 immediately below, describe in one entry the nature of the services rendered during that day and the aggregate time expended for that day in an "Activity Category" (as described in section D.5.a and D.5.b, below) without delineating the actual time spent on each discrete activity in an Activity Category, provided, however, single time entries of more than one hour in an Activity Category that include two or more activities must include a notation of the approximate time spent on each activity within the Activity Category.

5. Time records shall be in chronological order by Activity Category. Only one category should be used for any given activity and professionals and paraprofessionals should make their best effort to be consistent in their use of categories. This applies both within and across firms. Thus, it may be appropriate for all professionals to discuss the categories in advance and agree generally on how activities will be categorized. Every effort should be made to use the listed categories in the first instance and to coordinate the use of additional categories with other professionals in the case. Notwithstanding the above, all categories must correspond with the SEC's SFAR. The

time information reflected on the Application shall also be supplied to the SEC Counsel in an electronic format as directed by SEC staff.

(a) Legal Activities. The following categories are generally more applicable to attorneys but may be used by all professionals where appropriate.

**ASSET ANALYSIS AND RECOVERY.** Identification and review of potential assets including causes of action and non-litigation recoveries.

**ASSET DISPOSITION.** Sales, leases, abandonment and related transaction work. Where extended series of sales or other disposition of assets is contemplated, a separate category should be established for each major transaction.

**BUSINESS OPERATIONS.** Issues related to operation of an ongoing business.

**CASE ADMINISTRATION.** Coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.

**CLAIMS ADMINISTRATION AND OBJECTIONS.** Expenses in formulating, gaining approval of and administering any claims procedure.

**EMPLOYEE BENEFITS/PENSIONS.** Review issues such as severance, retention, 401K coverage and continuance of pension plan.

(b) Financial Activities. The following categories are generally more applicable to accountants and financial advisors, but may be used by all professionals where appropriate.

**ACCOUNTING/AUDITING.** Activities related to maintaining and auditing books of account, preparation of financial statements and account analysis.

**BUSINESS ANALYSIS.** Preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility studies.

**CORPORATE FINANCE.** Review financial aspects of potential mergers, acquisitions and disposition of company or subsidiaries.

**DATA ANALYSIS.** Management information systems review, installation and

analysis, construction, maintenance and reporting of significant case financial data, lease rejection, claims, etc.

**STATUS REPORTS.** Preparation and review of periodic reports as may be required by the court.

**LITIGATION CONSULTING.** Providing consulting and expert witness services relating to forensic accounting; etc.

**FORENSIC ACCOUNTING.** Reconstructing books and records from past transactions and bringing accounting current; tracing and sourcing assets.

**TAX ISSUES.** Analysis of tax issues and preparation of state and federal tax returns.

**VALUATION.** Appraise or review appraisals of assets.

**E. PAYMENT OF FEES AND EXPENSES**

1. Presentation of Fees and Expenses in Application.

(a) All fees and expenses must be necessary and reasonable; excessive charges will not be paid. To the extent that an Applicant seeks reimbursement of expenses, the Application shall include a categorization of such expenses along with an exhibit summarizing the total expenses for the period covered by the Application.

(b) Charges for litigation will be paid only if the litigation is reasonably likely to produce a net economic benefit to the estate. With respect to each litigation matter, the Applicant shall certify that the Applicant determined that the action was likely to produce a net economic benefit to the estate, based on reviews of: (i) the legal theories upon which the action was based, including issues of standing; (ii) the likelihood of collection on any judgment which might be obtained; and, (iii) alternative methods of seeking the relief, such as the retention of counsel on a contingency basis. Retention of counsel on a contingency fee basis should be pursued where the Receiver (after consulting with SEC Counsel) concludes that retention of counsel under the approved fee schedule would produce a lesser economic benefit to the receivership estate. The receiver should memorialize these cost-benefit analyses, through communications with the receiver's counsel, as support for the engagement of such counsel.

(c) Invoices and/or bills for each expense item for which reimbursement

is sought must be kept for seven (7) years after the close of the receivership. Such support shall be provided on request to the court and the SEC, and in appropriate circumstances to any party in interest provided that, where applicable, privilege or confidentiality can be preserved.

(d) Time spent preparing fee applications, or any documentation in support thereof, may not be charged to the receivership estate.

2. Allowable and Non-Allowable Reimbursable Expenses.

(a) Filing Fees Process Service Fees, Witness Fees and Expert Witness Fees.

Filing fees (including for necessary adversaries), process service fees, witness fees, and expert witness fees (subject to court approval of the employment of any professionals and the reasonableness of such fees) shall be allowable to the extent of the actual cost incurred by the Applicant.

(b) Court Reporter Fees and Transcripts.

Court reporter fees and copies of transcripts shall be allowable to the extent of the actual cost incurred by the Applicant.

(c) Lien and Title Searches.

The cost for lien and title searches (whether done in-house or by an outside vendor) is allowable to the extent of the actual cost incurred by, or invoiced to, the Applicant.

(d) Photocopying.

Photocopying shall be allowable at a cost not to exceed $.15 per page. The Applicant shall set forth in its fee application the total number of copies. Outside vendor photocopying charges are allowable at the actual cost invoiced to the Applicant. Necessary copies obtained from the Clerk of the Court (including certified copies) or from the approved court copy service will be permitted at the actual cost incurred by the Applicant.

The Applicant shall not reflect on the Application any copies for which the Applicant has been, or expects to be, reimbursed (eg., payment from an opposing party for document production from which the Applicant has been reimbursed).

(e) Postage, Overnight Delivered Courier/Messenger Services.

The cost of postage, overnight delivery, and outside courier/messenger services are reimbursable for the actual cost incurred, if reasonably incurred. Charges should be minimized whenever possible. For example, couriers/messengers and overnight delivery service should be used only when first-class mail is impracticable.

(f) Telephone.

Long distance telephone charges are allowable to the Applicant for the actual cost invoiced from the telephone carrier. Charges for local telephone exchange service and cellular telephone service shall not be reimbursable.

(g) Facsimile Transmission.

A charge for outgoing facsimile transmission to long distance telephone numbers are reimbursable at the lower of (a) toll charges or (b) if such amount is not readily determinable, $1.00 per page for domestic and $2.00 per page for international transmissions. Charges for in-coming facsimiles are not reimbursable. The Application shall state the total number of pages of the outgoing transmissions.

(h) Computerized Research.

Computerized legal research services such as Lexis and Westlaw are reimbursable to the extent of the invoiced cost from the vendor, however if such service is provided on a monthly or other periodic rate, proportional usage shall not be reimbursable.

(i) Parking.

Reimbursement for parking is allowable, including parking by a professional to attend court proceedings, depositions or case conferences, parking at the airport, and client and third party parking (including validation).

(j) Travel Expenses and Meals.

Local travel time and related expenses for destinations within a twenty (20) mile radius of the Applicant's office including mileage, taxis, etc. and meals (including staff meals) will not be reimbursed. Mileage charges for out-of-town travel (outside a twenty (20) mile radius of the Applicant's office) with one's own car are reimbursable at the lesser of the amount customarily charged clients or the amount allowed by the Internal Revenue Service for per mile deductions. For purposes of the foregoing, the Applicant's office shall be the office in which the person incurring the travel expense is located.

Long distance travel time outside a twenty (20) mile radius of the Applicant's office is reimbursable at 50% of the Applicant's regular billing rate.. The reimbursement of long distance travel expenses is subject to the following limitations: (1) the Applicant shall seek and use the lowest airfare or train fare available to Applicant; (2) luxury accommodations and deluxe meals are not reimbursable; (3) personal, incidental charges such as telephone and laundry are not reimbursable unless necessary as a result of a reasonably unforeseen extended stay not due to the fault of the traveler; and (4) each out-of-pocket travel and allowable miscellaneous administrative expense exceeding $75 requires a receipt that is to be attached to the invoice.

(k) Word Processing, Document Preparation, Data Processing, Proofreading, Secretarial and Other Staff Services.

Secretarial, library, word processing, document preparation (other than by professionals or paraprofessionals), data processing, and other staff services (exclusive of paraprofessional services), including overtime for the foregoing, are not reimbursable. Charges for proofreading for typographical or similar errors are not reimbursable whether the services are performed by a paralegal, secretary, or temporary staff.

(l) Communications with Investors.

Where appropriate, the estate should promptly create a website, and update the website as appropriate, to provide information as to the activities and condition of the estate to investors. In addition, any necessary basic communications with investors should be handled by clerical or paralegal staff (or comparatively paid staff) to the extent possible. Expenses stemming from a failure to comply with this policy will not be submitted.

Candidate for Appointment as Receiver in
Civil Action Commenced by the
U.S. Securities and Exchange Commission

Date: ______________

______________________________
[Printed Name]
[Address 1]
[Address 2]
[Address 3]
[E-Mail Address]
[Phone Number]
[Fax Number]

# EXHIBIT A

RECEIVER NAME
ADDRESS
CONTACT NUMBER

# STANDARDIZED FUND ACCOUNTING REPORT

CIVIL – RECEIVERSHIP FUND

---

FUND NAME
CIVIL COURT DOCKET No.

REPORTING PERIOD MM/DD/YYYY TO MM/DD/YYYY

OR

FINAL REPORT DATED MM/DD/YYYY

REPORT INSTRUCTIONS

The Standardized Fund Accounting Report (SFAR) should be prepared for the reporting period on a cash basis which is a comprehensive basis of accounting other than generally accepted accounting principles. In cash basis accounting, revenues are recorded only when cash is received and expenses are recorded only when cash is paid. Cash basis accounting does not recognize promises to pay or expectations to receive money or services in the future. For all income and expenses, provide documentation evidencing the income received or expense incurred. Business income or assets that are not cash should be reported in the notes with documentation of their current fair market value. For cash and cash equivalents, provide the latest bank and/or investment records to the SEC. Do not file any of the above documentation with the court unless ordered.

**Line 1 – Beginning Balance:** Balance of the Fund at the beginning of the reporting period. The beginning balance may not necessarily include all amounts received in the Fund since inception unless this is the first SFAR filed.

**Line 2 – Business Income:** Amounts received by the Fund from operational income of the business assets, or other business sources.

**Line 3 – Cash and Cash Equivalents:** Include the value of bank and/or brokerage/security accounts as of the reporting period end date. Cash includes coins, currency, checks, money orders, and funds on deposit with a financial institution. Securities include U.S. government securities, municipal securities, corporate stocks, corporate bonds, and securitized debt instruments.

**Line 4 – Interest/Dividend Income:** Interest and/or dividends earned by the Fund from investments and other personal assets during the reporting period.

**Line 5 – Business Asset Liquidation:** Amounts received by the Fund as a result of selling or disposing of the assets of the business in receivership. This is separate from the income generated by the asset and reported in Line 2.

**Line 6 – Personal Asset Liquidation:** Amounts received by the Fund as a result of selling or disposing of the personal assets of individuals.

**Line 7 – Third-Party Litigation Income:** Amounts received by the Fund pursuant to third-party litigation. This should not be included in the income reported in Line 2.

**Line 8 – Miscellaneous - Other:** Amounts received from, an identified payor.

**Line 9 – Disbursements to Investors:** Amounts distributed from the Fund to harmed investors/claimants.

**Line 10 – Disbursements for Receivership Operations:**

> **Line 10a – Disbursements to Receiver or Other Professionals:** Amounts paid from the Fund (both fees and costs, including travel) for Receiver services and contractual services by accountants, bookkeepers, stock brokers, realty brokers, appraisers, agents, trustees, investigators, not related to expenses under Line 10b.
> **Line 10b – Business Asset and Operating Expenses:** Amounts paid from the Fund for the business property assets' maintenance and business operating expenses, taxes,

professional fees, liquidation expenses, administrative services, appraisals and valuation expenses, payment to participant, moving/storage, office furniture and equipment, delivery services, resident agent, copying costs, asset protection costs, etc. These expenses are separate and distinct from those in Line 10a.

**Line 10c – Personal Asset Expenses:** Amounts paid from the Fund for the personal property assets' maintenance and operating expenses, taxes, professional fees, liquidation expenses, administrative services, appraisals and valuation costs, payment to participant, moving/storage, office furniture and equipment, delivery services, resident agent, copying costs, asset protection costs, etc. These expenses are separate and distinct from those in Line 10a.

**Line 10d – Investment Expenses:** Amounts paid from the Fund for banking fees, Court Registry Investment System (CRIS) fees, mandated or economically necessary continuing investments, and other investment related costs.

**Line 10e – Third–Party Litigation Expenses:** Amounts paid from the Fund for attorney fees related to receivership operations and litigation expenses to recover assets to the receivership estate, including outside counsel fees and costs, travel costs, investigative services, filing fees, process servers, court reporters for depositions, etc.

**Line 10f – Tax Administrator Fees and Bonds:** Amounts paid to the Fund's tax administrator for services and/or fiduciary bonds.

**Line 10g – Federal and State Tax Expenses:** Amounts paid in federal and state taxes.

**Line 11 – Disbursements for Distribution Expenses Paid by the Fund:** This line reflects amounts paid from the Fund to administer the plan and should not include amounts reported per Line 14 below. For any disbursement claimed, you must provide the documentation evidencing the expense.

**11a – Distribution Plan Development Expenses:** All expenses related to the development of a plan of distribution which precede the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**11b – Distribution Plan Implementation Expenses:** All expenses related to the implementation of a plan of distribution which occur following the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**Line 12 – Disbursements to Court/Other:** Amounts paid from the Fund for

**12a** – Court Registry Investment System (CRIS) or other banking fees related to the Fund.

**12b** – federal income taxes.

**Line 13 – Ending Balance:** Compute as Total Funds Available less Total Funds Disbursed.

**Line 14 – Ending Balance of Fund – Net Assets:** Describe the structure of the Fund's ending balance (basis of the Fund's net assets):

**14a – Cash & Cash Equivalents:** Amount of the Fund consisting of cash and currency.

**14b – Investments:** Amount of the Fund that is invested.

**14c – Other Assets or Uncleared Funds:** Amount of other assets or funds that have not cleared a financial institution.

## OTHER SUPPLEMENTAL INFORMATION

**Line 15 – Disbursements for Plan Administration Expenses Not Paid by the Fund:** This line reflects amounts paid by the defendant or other party to administer the plan and should not include amounts paid from the Fund assets as reported in Line 11.

**15a – Plan Development Expenses Not Paid by the Fund:** All expenses related to the development of a plan of distribution which precede the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.
**15b – Plan Implementation Expenses Not Paid by the Fund:** All expenses related to the implementation of a plan of distribution which occur following the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.
**15c – Tax Administrator Fees & Bonds Not Paid by the Fund**: Amounts paid to the Fund's tax administrator for services and/or fiduciary bonds.

**Line 16 – Disbursements to Court/Other Not Paid by the Fund:** Amounts not paid from the Fund for
**16a** – Court Registry Investment System (CRIS) or other banking fees related to the Fund.
**16b** – federal income taxes.

**Line 17 – DC & State Tax Payments:** Taxes paid by a third party which are paid to the DC government or state tax authority.

**Line 18 – No. of Claims:** This should reflect
**18a** – the number of claims received from investors <u>during this reporting period.</u>
**18b** – the number of claims received from investors as a result of all orders since the inception of the Fund.

**Line 19 – No. of Claimants/Investors:** This should reflect
**19a** – the number of claimants/investors receiving distributions <u>during this reporting period.</u>
**19b** – the number of claimant/investors receiving distributions pursuant to all orders of distribution since the inception of the Fund.

**STANDARDIZED FUND ACCOUNTING REPORT for {Name of Fund} - Cash Basis**

Receivership; Civil Court Docket No.

Reporting Period MM/DD/YYYY to MM/DD/YYYY or Final Report Dated MM/DD/YYYY

**FUND ACCOUNTING (See Instructions):**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 1** | **Beginning Balance (As of MM/DD/YYYY):** | | | |
| | ***Increases in Fund Balance:*** | | | |
| **Line 2** | **Business Income** | | | |
| **Line 3** | **Cash and Securities** | | | |
| **Line 4** | **Interest/Dividend Income** | | | |
| **Line 5** | **Business Asset Liquidation** | | | |
| **Line 6** | **Personal Asset Liquidation** | | | |
| **Line 7** | **Third-Party Litigation Income** | | | |
| **Line 8** | **Miscellaneous - Other** | | | |
| | **Total Funds Available (Lines 1 – 8):** | | | |
| | ***Decreases in Fund Balance:*** | | | |
| **Line 9** | **Disbursements to Investors** | | | |
| **Line 10** | **Disbursements for Receivership Operations** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | | | |
| *Line 10b* | *Business Asset Expenses* | | | |
| *Line 10c* | *Personal Asset Expenses* | | | |
| *Line 10d* | *Investment Expenses* | | | |
| *Line 10e* | *Third-Party Litigation Expenses* | | | |
| | 1. Attorney Fees | | | |
| | 2. Litigation Expenses | | | |
| | *Total Third-Party Litigation Expenses* | | | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | | | |
| *Line 10g* | *Federal and State Tax Payments* | | | |
| | **Total Disbursements for Receivership Operations** | | | |
| **Line 11** | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator........................................ | | | |
| | Independent Distribution Consultant (IDC).......... | | | |
| | Distribution Agent........................................ | | | |
| | Consultants................................................ | | | |
| | Legal Advisers............................................ | | | |
| | Tax Advisers.............................................. | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | *Total Plan Development Expenses* | | | |
| *Line 11b* | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator........................................ | | | |
| | IDC.......................................................... | | | |
| | Distribution Agent........................................ | | | |
| | Consultants................................................ | | | |
| | Legal Advisers............................................ | | | |
| | Tax Advisers.............................................. | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan...................... | | | |
| | Claimant Identification.................................. | | | |
| | Claims Processing........................................ | | | |
| | Web Site Maintenance/Call Center.................... | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | | |
| | *Total Plan Implementation Expenses* | | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | |
| **Line 12** | **Disbursements to Court/Other:** | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | | | |
| *Line 12b* | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other:** | | | |
| | **Total Funds Disbursed (Lines 9 – 11):** | | | |
| **Line 13** | **Ending Balance (As of MM/DD/YYYY):** | | | |



9/08/08

STANDARDIZED FUND ACCOUNTING REPORT for {Name of Fund} - Cash Basis
Receivership; Civil Court Docket No.
Reporting Period MM/DD/YYYY to MM/DD/YYYY or Final Report Dated MM/DD/YYYY

| | | | | |
|---|---|---|---|---|
| **Line 14** | **Ending Balance of Fund – Net Assets:** | | | |
| *Line 14a* | *Cash & Cash Equivalents* | | | |
| *Line 14b* | *Investments* | | | |
| *Line 14c* | *Other Assets or Uncleared Funds* | | | |
| | **Total Ending Balance of Fund – Net Assets** | | | |

| **OTHER SUPPLEMENTAL INFORMATION:** | | **Detail** | **Subtotal** | **Grand Total** |
|---|---|---|---|---|
| | ***Report of Items NOT To Be Paid by the Fund:*** | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | | | |
| | Claimant Identification | | | |
| | Claims Processing | | | |
| | Web Site Maintenance/Call Center | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. FAIR Reporting Expenses | | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | | | |
| *Line 16b* | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | |
| **Line 17** | **DC & State Tax Payments** | | | |
| **Line 18** | **No. of Claims:** | | | |
| *Line 18a* | *# of Claims Received This Reporting Period* | | | |
| *Line 18b* | *# of Claims Received Since Inception of Fund* | | | |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| *Line 19a* | *# of Claimants/Investors Paid This Reporting Period* | | | |
| *Line 19b* | *# of Claimants/Investors Paid Since Inception of Fund* | | | |

Receiver:

By: ______________________________
(signature)

______________________________
(printed name)

______________________________
(title)

Date: ____________________________