**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| | § | |
| ***Defendants*,** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| | § | |
| ***Relief Defendants*.** | § | |

**APPENDIX IN SUPPORT OF RECEIVER'S PARTIALLY UNOPPOSED VERIFIED MOTION TO RATIFY SETTLEMENT AGREEMENT WITH LIBERTY BANKERS LIFE INSURANCE COMPANY AND AMERICAN BENEFIT LIFE INSURANCE COMPANY**

Dated October 15, 2026

Respectfully submitted,

*<u>/s/ Timothy B. Wells</u>*
Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
James F. Hopper
Texas Bar No. 24116535
jimmy@brownfoxlaw.com
BROWN FOX PLLC
2699 Howell St., Suite 500
Dallas, Texas 75204

Timothy B. Wells
Texas Bar No. 24131941
tim@brownfoxlaw.com
BROWN FOX PLLC
306 W. 7th Street, Suite 1000
Fort Worth, TX 76102
T: (214) 327-5000
F: (214) 327-5001

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

| EXHIBIT | DESCRIPTION | APP PAGES |
|---|---|---|
| A | Settlement and Release Agreement between Receiver and Liberty Bankers Life Insurance Company and American Benefit Life Insurance Company | APP001-APP022 |

# EXHIBIT A

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement (the "**Settlement Agreement**") is made and entered into this 8th day of October, 2026, by and among Liberty Bankers Life Insurance Company, an Oklahoma insurance company ("**Liberty**"), American Benefit Life Insurance Company, a wholly owned subsidiary of Liberty ("**American Benefit**"), and Cort Thomas in his role as court-appointed receiver on behalf of the Receivership Entities[1] (the "**Receiver**" and together with Liberty and American Benefit, the "**Parties**") in Securities and Exchange Commission v. Timothy Barton et. al., Case No. 3:22-cv-2118-X (the "**Receivership Case**"), pending before Judge Starr in the United States District Court for the Northern District of Texas, Dallas Division (the "**Court**").

## RECITALS

**WHEREAS**, Ridgeview Addition, LLC, JMJ Development, LLC, 2999TC JMJ Equity, LLC, Lynco Ventures, LLC, and DJD Land Partners, LLC were included as Receivership Entities in the Order Appointing Receiver first entered in the Receivership Court on October 18, 2022, and included in all subsequent Orders Appointing Receiver (collectively, the "**Order Appointing Receiver**") entered by the Court.

WHEREAS, American Benefit made a loan to Ridgeview Addition, LLC with a committed sum of $2,050,000 dated April 26, 2021 (the "**Ridgeview Loan**"), secured by 15.004 acres of land located in Johnson County, Texas (the "**Ridgeview Collateral**"), as further described and labeled as Tract 4 in Exhibit A hereto; and

**WHEREAS**, as permitted by the Order Appointing Receiver, no payments have been made on the Ridgeview Loan since the institution of the Receivership Case; and

**WHEREAS**, as of June 30, 2026, the outstanding principal balance of the Ridgeview Loan is $1,826,300.98, the accrued non-default interest is $543,020.05, the accrued default interest is $678,775.34, and the accrued fees and expenses are $40,233.41; and

**WHEREAS**, Liberty made a loan to JMJ Development, LLC, with a committed sum of $2,000,000, (the "**JMJ Loan**") secured by a second lien deed of trust on three parcels: (i) the Ridgeview Collateral; (ii) the 63.764 acre tract (the "**Lynco Northstar Collateral**"), as further described and labeled as Tract 1 in Ex. A; and (iii) the 128.8645 acre tract of land (the "**DJD Northstar Collateral**"), as further described and labeled as Tract 2 in Ex. A; and

**WHEREAS**, as permitted by the Order Appointing Receiver, no payments have been made on the JMJ Loan since institution of the Receivership Case; and

**WHEREAS**, as of June 30, 2026, the outstanding principal balance of the JMJ Loan is $1,450,000, the accrued non-default interest is $514,347.16, the accrued default interest is $411,477.84, and the accrued fees and expenses are $14,773.18; and

[1] "**Receivership Entities**" includes all entities subject to administration in the Receivership Case including, but not limited to, those entities identified in the Order Appointing Receiver [Dkt. 417].

**WHEREAS**, Liberty received a 0.30675% membership interest in 2999TC JMJ Equity, LLC, the equity owner of a proposed luxury hotel development on Turtle Creek Boulevard in Dallas, Texas (the "**Hotel Interest**") as additional consideration for the JMJ Loan; and

**WHEREAS**, the Ridgeview Loan is cross collateralized with the JMJ Loan; and

**WHEREAS**, Liberty has purchased two loans from Southern Star Capital, LLC as lender to DJD Land Partners, LLC, as follows: (i) a loan in the original principal amount of $900,000, which is secured by a first lien on the Lynco Northstar Collateral (the "**Wall009 Loan**"), (ii) a loan in the original principal balance of $127,500, which is secured by a first lien on 1.01 acre tract as further described and labeled as Tract 3 in Ex. A (the "**One Acre Northstar Collateral**"), owned by DJD Land Partners, LLC (the "**DJD Loan**"); and

**WHEREAS**, as permitted by the Order Appointing Receiver, no payments have been made on the Wall009 Loan or the DJD Loan, since the institution of the Receivership Case; and

**WHEREAS**, as of June 30, 2026, the outstanding principal balance of the Wall009 Loan is $810,000, and the accrued non-default interest is $169,201.23, the accrued default interest is $342,513.50, and the accrued fees and expenses are $95,137.18; and

**WHEREAS**, as of June 30, 2026, the outstanding principal balance of the DJD Loan is $127,500, the accrued non-default interest is $15,902.57, the accrued default interest is $40,535.39, and the accrued fees and expenses are $53,448.49; and

**WHEREAS**, the Wall009 Loan is cross collateralized with the DJD Loan; and

**WHEREAS**, the parties stipulate that the Ridgeview Collateral is currently worth approximately $2,650,000 (the "**Ridgeview Collateral Value**"); and

**WHEREAS**, the parties stipulate that the Lynco Northstar Collateral is currently worth approximately $1,430,000 (the "**Lynco Northstar Collateral Value**"); and

**WHEREAS**, the parties stipulate that the DJD Northstar Collateral is currently worth approximately $2,490,000 (the "**DJD Northstar Collateral Value**"); and

**WHEREAS**, the parties stipulate that the One Acre Northstar Collateral is currently worth approximately $285,000 (the "**One Acre Northstar Collateral Value**");[2] and

---

[2] The Parties acknowledge that Newmark has provided to Liberty a $120,000 valuation for the One Acre Northstar Collateral Value. For purposes of settlement only, the parties stipulate to the $285,000 valuation provided by Integra Realty Resources.

**WHEREAS**, the value of the Ridgeview Collateral ($2,650,000) is substantially less than the combined outstanding balance of the Ridgeview Loan ($3,088,329.78) and the JMJ Loan ($2,390,598.18), each of which is secured by the Ridgeview Collateral;[3] and

**WHEREAS**, the value of the Lynco Northstar Collateral ($1,430,000) is substantially less than the outstanding balance of the remaining debt held by Liberty on the Lynco Northstar Collateral;[4] and

**WHEREAS,** the value of the One Acre Northstar Collateral ($285,000) is substantially less than the outstanding balance of the debt held by Liberty on the One Acre Northstar Collateral;[5] and

**WHEREAS**, the Receiver has determined that a sale of the Ridgeview Collateral, the Lynco Northstar Collateral, and the One Acre Northstar Collateral cannot be conducted as required by 28 U.S.C. § 2001 with the result of a net benefit to the Receivership Estate, and that the Receiver is therefore authorized to abandon those parcels to the lienholder pursuant to Section D.1 of the Order Granting Motion for Order Governing Administration of the Receivership Estate, Dkt. 63, the basis for which determination the Receiver will include in his reports as that Order requires; and

**WHEREAS**, Liberty and the Receiver recognize the substantial costs associated with any litigation in connection with the loans, as well as the uncertainty of the outcome of such litigation; and

**WHEREAS**, the parties wish to settle any disputes with respect to the loans and collateral discussed herein;

**WHEREAS**, the Ridgeview Loan, the Ridgeview Collateral, the JMJ Loan, the Lynco Northstar Collateral, the DJD Northstar Collateral, the Hotel Interest, the Wall009 Loan, the DJD Loan, and the One Acre Northstar Collateral are referred to collectively herein as the "**Liberty Loans and Collateral**"; and

**WHEREAS**, on August 12, 2026, the Parties mediated their disputes in good faith before retired United States Bankruptcy Judge Harlin Hale (the "**Mediation**") and reached an agreement in principle, subject to final documentation of the agreement that is set forth herein. During the Mediation, the Parties, with the assistance of Judge Hale, negotiated extensively at arm's length and in good faith and now desire to enter into this Settlement Agreement to fully resolve and settle

---

[3] The total debt Liberty holds against the Ridgeview Collateral, accounting just for principal and non-default interest, is $4,333,668.19 ($2,369,321.03 for the Ridgeview Loan and $1,964,347.16 for the JMJ Loan). The parties therefore estimate that the Receivership Estate has negative equity in the Ridgeview Collateral of approximately $1,683,668.19.

[4] The total debt Liberty holds against the Lynco Northstar Collateral, accounting just for remaining principal and non-default interest on the JMJ Loan ($1,683,668.19) and principal and non-default interest of $979,201.23 on the Wall009 Loan, is $2,662,869.42. The parties therefore estimate that the Receivership Estate has negative equity in the Lynco Northstar Collateral of approximately $1,232,869.42.

[5] The total debt Liberty holds against the One Acre Northstar Collateral, accounting just for remaining principal and non-default interest on the Wall 009 Loan ($1,232,869.42) and remaining principal and non-default interest on the DJD Loan ($143,402.57) is $1,376,271.99. The parties therefore estimate that the Receivership Estate has negative equity in the One Acre Northstar Collateral of approximately $1,091,271.99.

all disputes and issues between the Parties regarding the relating to the Ridgeview Loan, Ridgeview Collateral, JMJ Loan, Lynco Northstar Collateral, DJD Northstar Collateral, Hotel Interest, Wall009 Loan, and One Acre Northstar Collateral, all claims and causes of action that could be asserted by Liberty against the Receiver and Receivership Entities, and all claims and causes of action that could be asserted by the Receiver and Receivership Entities against Liberty;

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and subject to court ratification (defined below), the parties agree as follows

1. Incorporation of Recitals. The above recitals are incorporated and made a substantive part of this Settlement Agreement.

**Condition Precedent**

2. Court Ratification. At the request of Liberty and not based on any requirements in the Receivership Case, the Settlement Agreement is subject to ratification by the Receivership Court ("**Court Ratification**"). Within seven (7) days of execution of this Agreement, the Receiver shall file a motion in the Receivership Case seeking ratification of this Settlement Agreement. The Receiver shall provide Liberty a reasonable opportunity to review and comment upon the Motion to Ratify Settlement and the form of proposed order before filing. The Motion to Ratify Settlement shall request that the Court find that (i) the Receiver's Abandonment is authorized under Section D.1 of the Order Granting Motion for Order Governing Administration of the Receivership Estate, Dkt. 63, (ii) 28 U.S.C. § 2001 does not apply to the Receiver's Abandonment, and (iii) upon the Receiver's Abandonment the abandoned parcels are no longer Receivership Property and the stay and injunctive provisions of the Order Appointing Receiver do not bar foreclosure by Liberty or American Benefit. If Court Ratification of this Settlement Agreement does not occur within 60 days of filing the Motion to Ratify Settlement, this Agreement shall be null and void, unless otherwise agreed to in writing by the Parties. That 60-day period shall be automatically extended for so long as any objection to the Motion to Ratify Settlement, or any appeal from an order ratifying this Settlement Agreement, remains pending. For purposes of this Settlement Agreement, Court Ratification occurs upon entry of an order ratifying this Settlement Agreement, without regard to whether that order has become final and non-appealable. The Parties agree that the obligations set forth in this Settlement Agreement and Release are subject to and conditioned upon the foregoing condition precedent.

**Payment by Liberty**

3. Settlement Payment. Liberty will pay Receiver $100,000 in immediately available funds ("**Settlement Payment**") within seven (7) days of Court Ratification. Absent a court-ordered stay, if the Receiver has not both filed the notice of the Receiver's Abandonment and delivered the recordable instrument described in Paragraph 4 within thirty (30) days after Liberty makes the Settlement Payment, Liberty may terminate this Settlement Agreement by written notice to the Receiver, and the Receiver shall return the Settlement Payment to Liberty within ten (10) days after that notice. If a court-ordered stay prevents the Receiver from filing the notice of the Receiver's Abandonment, and an appellate court thereafter reverses or vacates the order granting Court Ratification or otherwise enters a ruling that prevents the Receiver's Abandonment from

taking effect, Liberty may terminate this Settlement Agreement by written notice to the Receiver, and the Receiver shall return the Settlement Payment to Liberty within ten (10) days after that notice. Liberty shall have no other right to a return of the Settlement Payment on account of a court-ordered stay.

4. Receiver's Abandonment. Upon Court Ratification and receipt of the Settlement Payment, pursuant to and in accordance with the provisions of the Order Granting Motion for Order Governing Administration of the Receivership Estate, Dkt. 63, the Receiver shall be deemed to have abandoned, automatically and without further action by either Party, the Ridgeview Collateral, the Lynco Northstar Collateral, and the One Acre Northstar Collateral (the "**Receiver's Abandonment**") and will thereby forfeit any right to object to foreclosure proceedings instituted by Liberty and/or American Benefit (in their sole discretion) regarding such collateral. As of the date of the Receiver's Abandonment, the Receiver will not be responsible for any liens, liabilities, or obligations on or connected to the Ridgeview Collateral or the Lynco Northstar Collateral. Notwithstanding the foregoing, the Receiver recognizes that, after the Receiver's Abandonment, existing creditors will be permitted to file claims in an eventual claims process established in the Receivership Case. All such claims must be made through the formal claims process established in the Receivership Case, and the Receiver will not be responsible for reimbursing or otherwise paying Liberty for any additional payments made by Liberty to any actual or potential creditors, including taxing authorities. To the extent any liens, liabilities, or obligations on or connected to the Ridgeview Collateral, the Lynco Northstar Collateral, or the One Acre Northstar Collateral survive the Receiver's Abandonment and attach to the land, Liberty shall not look to the Receiver or any Receivership Entity for satisfaction, and releases the Receiver from any responsibility for such lien, liability, or obligation. Within ten (10) business days after the Settlement Payment, the Receiver shall (i) file in the Receivership Case a notice of the Receiver's Abandonment and (ii) execute and deliver to Liberty a recordable instrument evidencing the Receiver's Abandonment, in form reasonably acceptable to Liberty.

5. Liberty's Abandonment. Upon making the Settlement Payment, Liberty shall be deemed to have abandoned the Hotel Interest and all of Liberty's interest in the DJD Northstar Collateral. Within ten (10) business days after the Settlement Payment, Liberty shall execute and deliver to the Receiver a recordable release of Liberty's lien on the DJD Northstar Collateral and an assignment of the Hotel Interest, each in form reasonably acceptable to the Receiver.

## Additional Provisions

6. Release by the Receiver. Upon execution of the Settlement Agreement, Court Ratification, Liberty's payment of the Settlement Payment, and the Receiver's Abandonment, the Receiver, on behalf of himself and all Receivership Entities, including their respective officers, directors, employees, equity holders, affiliates, subsidiaries, parents, predecessors-in-interest, successors-in-interest, assigns, transferees, agents or other representatives (the "**Receivership Parties**"), hereby forever irrevocably release, acquit and discharge Liberty and American Benefit and their respective officers, directors, equity holders, affiliates, predecessors-in-interest, successors-in-interests, assigns, transferees, employees, agents, and representatives (collectively, the "**Liberty Parties**"), from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies, whether known or unknown now or in the future regarding or relating to the Liberty Loans and Collateral; provided, however, this release

shall not release any claims related to the obligations of the Parties under this Settlement Agreement, or any other claim, if any, related to other properties, agreements, or Receivership Entities which are not the subject of this Agreement.

7. Release by Liberty and American Benefit. Upon execution of the Settlement Agreement, Court Ratification, Liberty's payment of the Settlement Payment, and Liberty's Abandonment, Liberty and American Benefit, each on behalf of itself and the Liberty Parties, hereby forever irrevocably release, acquit and forever discharge the Receiver and the Receivership Parties, from any and all demands, claims, actions, causes of action, rights, liabilities, obligations, suits, damages, or controversies whether known or unknown, now or in the future, regarding or relating to the Liberty Loans and Collateral; provided, however, this release shall not release any claims related to the obligations of the Parties under this Settlement Agreement, or any other claim, if any, related to other properties, agreements, or Receivership Entities which are not the subject of this Agreement.

8. Conditional Release by Liberty and American Benefit. Upon execution of the Settlement Agreement, Court Ratification, Liberty's payment of the Settlement Payment, and the Receiver's Abandonment, the Liberty Parties, hereby forever irrevocably release, acquit and forever discharge Timothy Barton from any and all demands, claims, actions, guaranty agreements, causes of action, rights, liabilities, obligations, suits, damages, or controversies whether known or unknown, now or in the future, regarding the Liberty Loans and Collateral (the "**Barton Release**"), provided that the Barton Release shall be null and void, and shall have no effect, if Timothy Barton files a lawsuit against Liberty Parties or any of the Liberty Parties' officers or managers based on any event related to or arising out of any of the transactions underlying the Settlement Agreement or based on the Settlement Agreement itself. The Barton Release includes any release of Timothy Barton executed and delivered by the Liberty Parties in the form of Exhibit B, and that release is subject to the same condition. The Barton Release shall become effective only if Timothy Barton executes and delivers to Liberty a corresponding release of the Liberty Parties, in the form attached hereto as Exhibit B.

9. Expenses. Each Party shall bear its own attorney's fees and costs in connection with the negotiation, execution, effectuation, and approval of this Settlement Agreement.

10. No Admission; Settlement Purposes Only. This Settlement Agreement, including the recitals and the stipulated values set forth herein, is a compromise of disputed claims. Nothing in this Settlement Agreement constitutes an admission by either Party as to any fact, valuation, or legal position, and neither this Settlement Agreement nor any recital or stipulation in it may be offered or used as evidence of any Party's position in any other proceeding, matter, or receivership asset.

11. Exhibits. Exhibit A (the tract depictions referenced in the recitals) and Exhibit B (the form of release described in Paragraph 8) shall be agreed by the Parties and attached to this Settlement Agreement before execution, and upon attachment are incorporated herein for all purposes. No Party shall be obligated to execute this Settlement Agreement until both Exhibits are attached.

12. Cooperation. The Parties agree to cooperate in good faith to effectuate the terms and conditions of this Settlement Agreement. The Parties shall take all necessary actions to receive the necessary approvals and prepare all documents necessary to achieve the foregoing, including through any litigation, appeals, or similar legal challenges to ratification or approval of the transactions contemplated by this Settlement Agreement. Notwithstanding the foregoing, the Receiver shall conduct, and shall bear the cost of, any objection, litigation, appeal, or similar legal challenge to ratification or approval of this Settlement Agreement, and Liberty's obligation under this paragraph shall be limited to reasonable cooperation, execution of documents, and provision of information.

13. Entire Agreement. This Settlement Agreement constitutes the entire agreement between the Parties hereto and supersedes and replaces all prior negotiations, proposed or actual agreement or agreements, written or oral, of any nature or substance relative thereto. Neither Party is relying and hereby disclaims reliance on any other representation, omission, or document not expressly contained in this Agreement.

14. Binding Effect. This Settlement Agreement shall be binding on any successors or assigns of the Parties hereto.

15. Representation by Counsel. The Parties acknowledge and understand that they are executing and delivering this Settlement Agreement with full knowledge of any and all rights which they may have with respect to the claims herein settled and released. Each acknowledges that it was represented by and consulted with an attorney of its own choosing before executing and delivering this Settlement Agreement to review this document and the claims being settled and released, and that they had a reasonable and sufficient opportunity to do so.

16. Notices. Unless otherwise specifically provided herein, any notice delivered under this Settlement Agreement shall be in writing addressed to the respective Party as set forth below and may be (a) personally served, (b) sent by overnight courier service or certified or registered United States mail, or (c) transmitted by e-mail, and shall be deemed to have been given (x) if delivered in person, when delivered, (y) if delivered by e-mail, on the date of transmission if transmitted on a business day before 5:00 p.m. (Central time) or, if not, on the next succeeding business day, and (z) if delivered by courier or certified or registered United States mail, when received. Notices shall be addressed as follows:

If to Receiver:

Cort C. Thomas
Brown Fox PLLC
2699 Howell Street, Suite 500, Dallas, Texas 75204
E-mail: cort@brownfoxlaw.com

With a copy to:

Charlene C. Koonce
James F. Hopper
Brown Fox PLLC
2699 Howell Street, Suite 500, Dallas, Texas 75204
E-mail: charlene@brownfoxlaw.com
E-mail: jimmy@brownfoxlaw.com

If to Liberty or American Benefit:

Bradford A. Phillips, President
Liberty Bankers Life Insurance Company
1605 LBJ Freeway, Suite 700
Dallas, Texas 75234
Email: BPhillips@lbig.com

With a copy to:

Mitchell Madden
The Law Offices of Mitchell Madden
12801 N. Central Expressway, Suite 140
Dallas, Texas 75243
(972) 484-7780
Email: mmadden@thelomm.com Assistant: Shawnte Kinney
Email: skinney@thelomm.com

17. Counterparts. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Settlement Agreement shall be final and binding upon execution and delivery of the Settlement Agreement by the Parties. The Parties agree that copies of this Settlement Agreement shall have the same effect and may be accepted with the same authority as the original and that this Settlement Agreement may be executed electronically and in counterparts.

18. Authority. The Parties represent that they have the legal right and authority required to compromise and settle all claims under the terms and conditions set forth herein. The Parties also represent that the signatures on behalf of the Parties, or their counsel, to this Settlement Agreement is sufficient, without further approval of third parties, other than Court Ratification, to fully bind such party to the terms hereof, including without limitation, each of the payment obligations and releases set forth herein.

19. Amendments. This Settlement Agreement may only be amended, modified, or supplemented by a separate written document duly executed by authorized representatives of the Parties or their legal successors in interest.

20. Severability. If any provision of this Settlement Agreement shall be held to be invalid or unenforceable, the validity or enforceability of the remaining provisions shall not in any way be affected or impaired thereby, but rather this Settlement Agreement shall be construed as if

not containing the invalid or unenforceable provision. However, if such provision is an essential element of this Settlement Agreement, such as the release provisions, then the Parties shall promptly attempt in good faith to negotiate a suitable replacement provision.

21. Jurisdiction and Governing Law. The Parties agree that the Court shall retain exclusive personal and subject matter jurisdiction to enforce the terms of this Settlement Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Settlement Agreement, or any breach of default hereunder. The Parties agree that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law, and expressly waive any requirement that separate notice be provided before pursuing such judgment. This Settlement Agreement shall be construed in accordance with and governed by the laws of the State of Texas (excluding the laws applicable to conflicts or choice of law).

22. Mediation of Disputes. The Parties agree that they will submit any dispute between them arising out of the terms or performance of this Settlement Agreement to former Bankruptcy Judge Hale for mediation. In the event the parties are unable to resolve such dispute at mediation, the Parties recognize the Court's continuing jurisdiction over this Agreement and all collateral and loans discussed herein. If a mediation has not been convened within thirty (30) days after a Party delivers a written request for mediation, either Party may proceed directly to the Court without further obligation under this paragraph.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the Parties have executed this instrument on the dates indicated below.

***Executed on this*** 8th ***day of October, 2026***

CORT THOMAS, AS COURT APPOINTED RECEIVER

By: ____________________, Receiver
Title: Receiver

***Executed on this*** 8th ***day of October, 2026***

LIBERTY BANKERS LIFE INSURANCE COMPANY

By: ____________________
Bradford A. Phillips, President

***Executed on this*** 8th ***day of October, 2026***

AMERICAN BENEFIT LIFE INSURANCE COMPANY

By: ____________________
Bradford A. Phillips, President

# EXHIBIT A


TRACT 1
Owner:
Ventures LLC
TRACT 2
Owner:
DJD Land Partners LLC
TRACT 3
Owner:
DJD Land Partners LLC
TRACT 4
Owner:
Ridgeview Addition LLC


TRACT 1
LYNCO VENTURES LLC
Owner
11209 CR 501
Address
126.0358.00070
Parcel ID
UPDATED 2025-Q2
County
Navigate
Copy
Location
Street Address 11209 CR 501
State TX
Zip 76084
Municipality Alvarado
County Johnson County
School District Venus Independent School District
Mailing Address
Street Address 13901 MIDWAY RD
City DALLAS
State TX
Zip 75244




**DJD LAND PARTNERS LLC**
Owner

**11417 CR 501**
Address

**126.0857.00051**
Parcel ID

UPDATED 2025-Q2

County Navigate Copy

**Location**

| | |
|---|---|
| Street Address | 11417 CR 501 |
| State | TX |
| Zip | 76084 |
| Municipality | Alvarado |
| County | Johnson County |
| School District | Venus Independent School District |

**Mailing Address**

| | |
|---|---|
| Street Address | 13901 MIDWAY RD STE 102 |
| City | DALLAS |
| State | TX |
| Zip | 75244 |


DJD LAND PARTNERS LLC
Owner
1025 N FM 157
Address
126.0857.00030
Parcel ID
UPDATED 2025 Q2
County
Navigate
Copy
Location
Street Address 1025 N FM 157
City VENUS
State TX
Zip 76084
Municipality Alvarado
County Johnson County
School District Venus Independent School District
Mailing Address
Street Address 13901 MIDWAY RD STE 102
City DALLAS
State TX
Zip 75244
TRACT 3


RIDGEVIEW ADDITION LLC
Owner
753 NATALIA
Address
126.3919.01002
Parcel ID
UPDATED 2025-Q2
County
Navigate
Copy
TRACT 4

# EXHIBIT B

**EXHIBIT B**

**FORM OF RELEASE**

**RELEASE**

This Release (this "Release") is made and entered into by and among Timothy Barton ("Barton"), Liberty Bankers Life Insurance Company, an Oklahoma insurance company ("Liberty"), and American Benefit Life Insurance Company, a wholly owned subsidiary of Liberty ("American Benefit").

**RECITALS**

WHEREAS, this Release is entered into pursuant to Paragraph 8 of that certain Settlement and Release Agreement dated as of the 8th day of October, 2026 (the "Settlement Agreement") by and among the Liberty Parties and Cort Thomas, in his capacity as court-appointed receiver on behalf of the Receivership Entities (the "Receiver") in Securities and Exchange Commission v. Timothy Barton et. al., Case No. 3:22-cv-2118-X (the "Receivership Case");

WHEREAS, Barton is alleged to be obligated upon, or to hold or assert interests, rights or claims relating to, certain of the Liberty Loans and Collateral, including under one or more guaranty agreements; and

WHEREAS, Paragraph 8 of the Settlement Agreement provides that the Liberty Parties forever irrevocably release, acquit and forever discharge Barton from any and all demands, claims, actions, guaranty agreements, causes of action, rights, liabilities, obligations, suits, damages or controversies, whether known or unknown, now or in the future, regarding the Liberty Loans and Collateral (the "Barton Release"), subject to the condition stated in that Paragraph; and

WHEREAS, Paragraph 8 of the Settlement Agreement further provides that the Barton Release shall become effective only if Barton executes and delivers to Liberty a corresponding release of the Liberty Parties in the form of this Release; and

WHEREAS, the Parties mutually execute and deliver this Release in consideration of the releases and the other covenants and agreements set forth in the Settlement Agreement, the receipt and sufficiency of which Barton hereby acknowledges;

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Incorporation of Recitals.** The above recitals are incorporated and made a substantive part of this Release.

2. **Definitions.** For purposes of this Release:

(a) "Liberty Parties" means Liberty and American Benefit and their respective officers, directors, managers, members, partners, equity holders, affiliates, subsidiaries, parents, predecessors-in-interest (including Southern Star Capital, LLC as to the Wall009 Loan and the DJD Loan), successors-in-interest, assigns, transferees, employees, agents, attorneys, insurers, loan servicers and other representatives.

(b) "Barton Parties" means Barton and his heirs, executors, administrators, legal representatives, successors, assigns and transferees, and each person or entity claiming by, through or under Barton with respect to the Liberty Loans and Collateral.

(c) "Party" means each the Liberty Parties and the Barton Parties, and together the "Parties."

(d) Capitalized terms used in this Release and not otherwise defined have the meanings given to them in the Settlement Agreement, including "Liberty Loans and Collateral," "Liberty Loans," "Wall009 Loan," "DJD Loan," "Court Ratification" and "Receivership Entities."

3. **RELEASE BY BARTON. BARTON, ON BEHALF OF HIMSELF AND EACH OF THE BARTON PARTIES, HEREBY FOREVER IRREVOCABLY RELEASES, ACQUITS AND FOREVER DISCHARGES THE LIBERTY PARTIES FROM ANY AND ALL DEMANDS, CLAIMS, ACTIONS, CAUSES OF ACTION, RIGHTS, LIABILITIES, OBLIGATIONS, SUITS, DAMAGES OR CONTROVERSIES, WHETHER KNOWN OR UNKNOWN, NOW OR IN THE FUTURE, REGARDING OR RELATING TO THE LIBERTY LOANS AND COLLATERAL, INCLUDING ANY SUCH CLAIM ARISING IN WHOLE OR IN PART FROM THE SOLE, JOINT, COMPARATIVE OR CONCURRENT NEGLIGENCE OF ANY LIBERTY PARTY; PROVIDED, HOWEVER, THAT THIS RELEASE DOES NOT RELEASE ANY CLAIM, IF ANY, RELATED TO OTHER PROPERTIES, AGREEMENTS, TRANSACTIONS, BUSINESS DEALINGS, ENTITIES OR RECEIVERSHIP ENTITIES THAT ARE NOT THE SUBJECT OF THE SETTLEMENT AGREEMENT.**

4. **RELEASE BY THE LIBERTY PARTIES. THE LIBERTY PARTIES HEREBY FOREVER RELEASE, ACQUIT AND FOREVER DISCHARGE THE BARTON PARTIES FROM ANY AND ALL DEMANDS, CLAIMS, ACTIONS, CAUSES OF ACTION, RIGHTS, LIABILITIES, OBLIGATIONS, SUITS, DAMAGES OR CONTROVERSIES, WHETHER KNOWN OR UNKNOWN, NOW OR IN THE FUTURE, REGARDING OR RELATING TO THE LIBERTY LOANS AND COLLATERAL, INCLUDING ANY SUCH CLAIM ARISING IN WHOLE OR IN PART FROM THE SOLE, JOINT, COMPARATIVE OR CONCURRENT NEGLIGENCE OF ANY BARTON PARTY; PROVIDED, HOWEVER, THAT THIS RELEASE DOES NOT RELEASE ANY CLAIM, IF ANY, RELATED TO OTHER PROPERTIES, AGREEMENTS, TRANSACTIONS, BUSINESS DEALINGS, ENTITIES OR RECEIVERSHIP ENTITIES THAT ARE NOT THE SUBJECT OF THE SETTLEMENT AGREEMENT. THIS RELEASE IS SUBJECT**

**TO PARAGRAPH 8 OF THIS RELEASE AND TO THE CONDITION STATED IN PARAGRAPH 8 OF THE SETTLEMENT AGREEMENT.**

5. **Covenant Not to Sue.** The Parties will not commence, prosecute, maintain, or voluntarily aid, assist or participate in the commencement, prosecution or maintenance of, any demand, claim, action, cause of action, suit or proceeding of any kind against any other Party regarding or relating to any matter released by the asserting Party under Paragraph 3 or Paragraph 4, as applicable. If any Party breaches this paragraph, the breaching Party shall pay the reasonable attorneys' fees, expenses and costs incurred by any other Party in defending against or otherwise responding to the matter. Nothing in this paragraph limits the effect of the proviso in Paragraph 8 of the Settlement Agreement.

6. **Unknown and Future Claims.** The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those they now know or believe to be true with respect to the Liberty Loans and Collateral. This Release remains in full force and effect notwithstanding the discovery or existence of any such different or additional facts, and each Party knowingly and voluntarily waives any right to assert that this Release is or should be void, voidable or subject to rescission on account of any such fact.

7. **No Assignment.** The Parties represent and warrant that they have not assigned, transferred, conveyed, encumbered or purported to assign, transfer, convey or encumber, in whole or in part, any claim released under this Release to any person or entity. The breaching Party shall indemnify and hold the non-breaching Party harmless from any demand, claim, liability, damage, cost or expense, including reasonable attorneys' fees, arising out of or relating to a breach of the foregoing representation.

8. **Effectiveness.** This Release is effective upon its execution by the Parties and delivery to the other Parties, is irrevocable, and is not conditioned upon any further act by any person, except that if the Settlement Agreement is terminated in accordance with its terms, or becomes null and void because Court Ratification does not occur within the period provided in Paragraph 2 of the Settlement Agreement as extended, this Release shall likewise be null and void and of no effect. Notwithstanding the foregoing, the release granted by the Liberty Parties in Paragraph 4 is subject to the condition stated in Paragraph 8 of the Settlement Agreement, and shall be null and void and of no effect if Timothy Barton files a lawsuit of the kind described in that Paragraph. The release granted by Barton in Paragraph 3 is not subject to that condition and remains irrevocable.

9. **No Admission; Settlement Purposes Only.** This Release is executed in compromise of disputed claims. Nothing in this Release constitutes an admission by the Barton Parties or by any Liberty Party as to any fact, valuation or legal position, and neither this Release nor any recital in it may be offered or used as evidence of any person's position in any other proceeding, matter or receivership asset, except in a proceeding to enforce this Release or the Settlement Agreement.

10. **Acknowledgment; Opportunity to Consult Counsel.** The Parties acknowledge and understand that they are executing and delivering this Release with full knowledge of any and all rights that they may have with respect to the claims released in it. The Parties

acknowledge that they have had a reasonable and sufficient opportunity to consult with an attorney of their own choosing before executing and delivering this Release and to review this document and the claims being released. The Parties further acknowledge that they are not relying, and hereby disclaim reliance, upon any representation, omission or document not expressly contained in this Release.

11. **Binding Effect.** This Release is binding upon Barton and each of the Barton Parties and inures to the benefit of each of the Liberty Parties. Each Liberty Party that is not a signatory to this Release is an intended third-party beneficiary of it and may enforce it directly. This Release is binding upon Liberty, American Benefit and each of the Liberty Parties and inures to the benefit of each of the Barton Parties. Each Barton Party that is not a signatory to this Release is an intended third-party beneficiary of it and may enforce it directly.

12. **Entire Agreement; Amendment.** This Release, together with the Settlement Agreement, constitutes the entire agreement between the Parties with respect to the claims released under this Release and supersedes all prior negotiations, proposed or actual agreements, written or oral, relative to the claims released under this Release. Nothing in this Release modifies, supersedes, impairs or releases the notes, deeds of trust, guaranties, security agreements, assignments or other instruments evidencing or securing the Liberty Loans, each of which remains in full force and effect in accordance with its terms except as expressly provided in the Settlement Agreement. This Release may be amended, modified or supplemented only by a separate written document executed by Barton and Liberty.

13. **Severability.** If any provision of this Release is held to be invalid or unenforceable, the validity and enforceability of the remaining provisions shall not be affected or impaired, and this Release shall be construed as if it did not contain the invalid or unenforceable provision, except that the releases granted in Paragraphs 3 and 4 are essential elements of this Release.

14. **Jurisdiction and Governing Law.** The United States District Court for the Northern District of Texas, Dallas Division, shall retain exclusive personal and subject matter jurisdiction to enforce the terms of this Release and to decide any claim or dispute arising out of, resulting from, or connected with this Release or any breach of it. This Release shall be construed in accordance with and governed by the laws of the State of Texas, excluding the laws applicable to conflicts or choice of law.

15. **Counterparts.** This Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A copy of this Release shall have the same effect and may be accepted with the same authority as the original, and this Release may be executed electronically and in counterparts.

**[SIGNATURE PAGE TO FOLLOW]**

Executed on this _______ day of __________, 2026

**BARTON**

By: ______________________________________
Timothy Barton, Individually

Executed on this _______ day of __________, 2026

**LIBERTY BANKERS LIFE INSURANCE COMPANY**

By: ______________________________________
Bradford A. Phillips, President

Executed on this _______ day of __________, 2026

**AMERICAN BENEFIT LIFE INSURANCE COMPANY**

By: ______________________________________
Bradford A. Phillips, President

STATE OF TEXAS §
§
COUNTY OF ____________ §

This instrument was acknowledged before me on the ______ day of ____________________, 2026, by Timothy Barton.

______________________________________
Notary Public, State of Texas