**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **Civil Action No. 3:22-CV-2118-X** |
| **TIMOTHY BARTON, et al.,** | § | |
| *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| *Relief Defendants.* | § | |

**DEFENDANT TIMOTHY BARTON'S RESPONSE AND OBJECTION TO THE RECEIVER'S PARTIALLY UNOPPOSED VERIFIED MOTION TO RATIFY SETTLEMENT AGREEMENT WITH LIBERTY BANKERS LIFE INSURANCE COMPANY AND AMERICAN BENEFIT LIFE INSURANCE COMPANY (DKT. 953)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ 3
I. PRELIMINARY STATEMENT ........ 4
II. BARTON'S STANDING AND THE SCOPE OF THIS RESPONSE ........ 5
III. BACKGROUND ........ 6
A. The four tracts and the four loans. ........ 6
B. The Court's 2024 ruling on the Lynco and One Acre tracts. ........ 7
C. Liberty's acquisition of the Southern Star loans. ........ 8
D. The July 8 Order and the Receiver's "four options." ........ 8
E. The settlement and the timing of the Motion. ........ 9
IV. LEGAL STANDARD ........ 10
V. OBJECTIONS ........ 11
A. Lien priority, notice, and the actual effect of abandonment. ........ 11
B. Debt allocation and unreconciled financial models. ........ 12
C. The 2024 foreclosure ruling and integrated-parcel concerns. ........ 13
D. Missing appraisals and unsupported per-acre assumptions. ........ 14
E. Sale-versus-abandonment classification and the net-benefit predicate. ........ 15
F. Unquantified settlement consideration. ........ 16
G. Individual rights, guaranties, deficiencies, and tax treatment. ........ 16
H. Record required for meaningful review. ........ 17
I. Relationship to the SPC settlement and reservation of claims. ........ 18
J. Automatic abandonment and effective-date protection. ........ 18
VI. HEARING ........ 19
VII. RELIEF REQUESTED ........ 19

# TABLE OF AUTHORITIES

## Cases


*Acadia Land Co. v. Horuff,* 110 F.2d 354 (5th Cir. 1940) ........ 10

*Black v. UniBank,* No. 25-50986 (5th Cir. Aug. 25, 2026) ........ 10, 19

*SEC v. Barton,* 135 F.4th 206 (5th Cir. 2025) ........ 11

*SEC v. Barton,* 170 F.4th 938 (5th Cir. 2026) ........ 10, 19

*SEC v. Stanford Int'l Bank, Ltd.,* 927 F.3d 830, 840 (5th Cir. 2019) ........ 10, 16

*SEC v. T-Bar Res., LLC,* 2008 WL 4790987 (N.D. Tex. Oct. 28, 2008) ........ 10

*SEC v. Wencke,* 742 F.2d 1230, 1231 (9th Cir. 1984) ........ 8, 13

*Sowell v. Fed. Reserve Bank of Dallas,* 268 U.S. 449, 456–57 (1925) ........ 13

*Zacarias v. Stanford Int'l Bank, Ltd.,* 945 F.3d 883, 895–901 (5th Cir. 2019) ........ 16


## Statutes


26 U.S.C. § 108 ........ 17

28 U.S.C. § 2001 ........ 10, 15, 20

28 U.S.C. § 2004 ........ 11

Tex. Bus. & Com. Code § 3.203(b) ........ 4

Tex. Prop. Code § 51.003 ........ 6


## Regulations


26 C.F.R. § 1.6050P-1(d)(7) ........ 17

TO THE HONORABLE UNITED STATES
DISTRICT JUDGE BRANTLEY STARR:

Defendant Timothy Barton, individually and pro se, objects to the Receiver's Partially Unopposed Verified Motion to Ratify Settlement Agreement with Liberty Bankers Life Insurance Company and American Benefit Life Insurance Company (Dkt. 953) (the "Motion") and proposed order (Dkt. 953-1). Unless stated otherwise, figures are drawn from the Motion, its appendix (Dkt. 954), or cited court filings. This Response is submitted within the seven-day objection period in Dkt. 63 § A.1(b). It contests the pending Motion and proposes conditions on any approval; any independent discovery or stay application will be pursued through the applicable procedure, including Dkt. 747 if required.

## I. PRELIMINARY STATEMENT

The Motion would permit abandonment of three Venus, Texas tracts with stipulated gross values totaling $4,365,000, followed by foreclosure at the lenders' election without opposition from the Receiver. In exchange, Liberty Bankers Life Insurance Company ("Liberty") would pay the estate $100,000, release its lien on a fourth tract, assign a small membership interest, and exchange releases. Dkt. 953 at 10–14; Dkt. 954 App. 4–6. The submission lacks the underlying appraisals, a complete lien-priority analysis, and a loan-by-loan statement of what liabilities terminate or survive.

First, lien priority remains unproved. The JMJ Loan is described as secured by a second-lien deed of trust; Liberty acquired asserted first-lien positions on Lynco and One Acre from Southern Star Capital, LLC ("Southern Star") after the receivership began. An assignee may enforce its transferor's rights, Tex. Bus. & Com. Code § 3.203(b), but the Motion does not supply assignments, deeds of trust, title reports, or a parcel-by-parcel priority analysis. The Ridgeview

loan's position is unstated, while the Receiver reports additional liens. Dkt. 953 ¶¶ 7, 11; Dkt. 838 at 61.

Second, in 2024 the Court refused Southern Star's requested foreclosure, relying on the Receiver's representations that an orderly sale would preserve greater value and that separating the One Acre tract from surrounding land would disproportionately impair both parcels. Dkts. 508, 551. The Receiver then asserted a $1,590,000 Lynco appraisal and more than $500,000 in equity; the current stipulated Lynco value is $1,430,000. Neither underlying appraisal accompanies the Motion. Changed circumstances may justify a different result, but the Motion must reconcile them.

Third, the asserted negative-equity result depends on the allocation of cross-collateralized loans and a negotiating assumption of principal plus 40% of non-default interest. Dkt. 953 at 12–13. The junior JMJ Loan cannot simply be ignored, but the relevant instruments, payment sequence, remaining enforceable balance, and discharge terms are not shown. Moreover, the Agreement's own model uses different interest assumptions. Dkt. 954 App. 3 nn.3–5. These are material matters for determining the net benefit of abandonment under Dkt. 63 § D.1.

Barton requests denial or deferral pending the supporting documents identified in Part V.H, affected-creditor notice, a hearing under Dkt. 63, and findings identifying the actual economic and legal effect of ratification.

## II. BARTON'S STANDING AND THE SCOPE OF THIS RESPONSE

Barton appears only individually, not on behalf of any entity or creditor. The settlement names him, alleges that he may be personally obligated on guaranties, and conditions any individual release on his executing Exhibit B. Dkt. 954 App. 6 ¶ 8, App. 18–22. The proposed order would also authorize foreclosure notwithstanding the receivership stay. Dkt. 953-1 at 2. A foreclosure price may affect a claimed deficiency, subject to Texas law and defenses.

See Tex. Prop. Code § 51.003. Barton therefore challenges the transaction insofar as it may affect his independent rights, defenses, and alleged exposure. He does not concede that he owes any guaranty or that any deficiency is recoverable.

References to other creditors or entities identify gaps in the Receiver's presentation, not claims Barton seeks to litigate for them. He requests resolution of the pending Motion on an adequate record and reservation of issues not properly before the Court.

## III. BACKGROUND

### A. The four tracts and the four loans.

The Motion concerns four tracts in Johnson County, Texas, held by three Receivership Entities, and four loans now held by Liberty or its wholly owned subsidiary American Benefit Life Insurance Company ("American Benefit"). The Motion's own descriptions are collected in Table 1. Dkt. 953 ¶¶ 2-15; Dkt. 954 App. 1-3.

Table 1. Four tracts and asserted lien positions (Dkt. 953 ¶¶ 2–15; Dkt. 838).

| Tract / owner | Acres | Stipulated value | Asserted Liberty position / unresolved interests |
|---|---|---|---|
| Ridgeview / Ridgeview Addition | 15.004 (54 lots) | $2,650,000 | Ridgeview Loan; priority unstated. JMJ second lien. Additional liens reported (Dkt. 838 at 61). |
| Lynco / Lynco Ventures | 63.764 | $1,430,000 | Wall009 first lien acquired from Southern Star; JMJ second lien. |
| One Acre / DJD Land Partners | 1.01 | $285,000 | DJD Loan first lien acquired from Southern Star; Liberty Newmark value $120,000. |
| DJD Northstar / DJD Land Partners (retained) | 128.8645 | $2,490,000 | JMJ second lien to be released; another lienholder unidentified. |

The balances Liberty asserts as of June 30, 2026, and the Receiver's negotiating formula of principal plus 40 percent of non-default interest, are set out in Table 2. Dkt. 953 ¶¶ 6, 9, 13, 14, 26.

Table 2. Claimed balances and settlement-model formula (Dkt. 953 ¶¶ 6, 9, 13–14, 26).

| **Loan** | **Total claimed 6/30/26** | **Principal + 40% non-default interest** |
|---|---|---|
| Ridgeview | $3,088,329.78 | $2,043,509.00 |
| JMJ | $2,390,598.18 | $1,655,738.86 |
| Wall009 | $1,416,851.91 | $877,680.49 |
| DJD | $237,386.45 | $133,861.03 |
| TOTAL | $7,133,166.32 | $4,710,789.38 |

**B. The Court's 2024 ruling on the Lynco and One Acre tracts.**

In May 2024 Southern Star, then the holder of the Wall009 and DJD notes, moved to modify the stay so that it could foreclose both tracts. Dkt. 498. It reported payoff balances of $1,071,273.34 and $186,651.32 as of May 1, 2024, appraisals of $1,210,000 and $120,000, and that it was winding up its affairs after the death of its principal. Dkt. 498 ¶¶ 1-2, 13. The Receiver opposed in a verified response. He told the Court that "[a]ppraisals commissioned by the Receiver ... demonstrate the Properties still have equity and provide value to the Receivership Estate," that his appraisal of the Lynco tract was $1,590,000, that "over $500,000 in equity thus remains in the Property, which presents substantial value to the Receivership Estate," and that the one-acre tract should be sold with the surrounding DJD acreage because carving it out would "disproportionately" impair the value of both. Dkt. 508 at 2, 6-7. He told the Court that "[f]oreclosure sales rarely if ever generate any value above the lien which provides the basis for foreclosure," that allowing foreclosure "would result in an inequitable distribution elevating Southern Star over every other creditor, secured and otherwise," and that "[t]he Receiver will not,

however, simply walk away from value to appease frustrated creditors." *Id.* at 9-10. The SEC agreed that the Receiver's appraisals showed equity and that foreclosure "may reduce the value of the receivership assets." Dkt. 509 at 2.

The Court denied the motion on August 14, 2024, applying the three-factor stay test. See *SEC v. Wencke,* 742 F.2d 1230, 1231 (9th Cir. 1984). Dkt. 551 at 2-5. It found that the Receiver's interest in keeping the tracts outweighed the lender's injury; that there was "evidence in the record that Southern Star is overstating its loss in equity by $380,000"; that a forced sale of the one acre "would disproportionately drop" its value compared with a sale of the whole; that "a foreclosure sale would generate less revenue upon sale than an arms-length transaction"; and that Southern Star had not shown "why its need to force a foreclosure sale outpaces the needs of all other lenders, creditors, etc." *Id.* at 3-5.

**C. Liberty's acquisition of the Southern Star loans.**

At some point "[a]fter the inception of the Receivership," Liberty "purchased" the Wall009 and DJD loans from Southern Star. Dkt. 953 ¶ 11. The Motion does not say when, for what consideration, or whether the Receiver was notified. The balances Liberty now asserts on those two loans include $383,048.89 in default interest and $148,585.67 in "fees and expenses," none of it itemized. *Id.* ¶¶ 13-14. The Motion identifies Liberty as an affiliate of Southern Properties Capital, Ltd. ("SPC"), the counterparty to the settlement ratified at Dkt. 926, and states that both settlements were pursued at the same August 12, 2026 mediation toward "a global resolution on all outstanding issues between the Receiver and SPC/the Liberty Parties." Dkt. 953 at 1-2.

**D. The July 8 Order and the Receiver's "four options."**

On July 8, 2026, the Court directed the Receiver to solicit lender proposals "to determine if there is a path forward to accomplish sales, pay down some or all the outstanding pre-

Receivership balances on the loans, and allow remaining claims to be dealt with as part of the Receivership's claims process," and stated that if workable proposals could not be secured, the Receiver would sell "free and clear of all liens and loans" and "[t]he Court will then determine the priority of all competing claims, liens, and interests and distribute proceeds accordingly." Dkt. 792 at 1-2. The Receiver's July 30, 2026 report described the first agreement reached under that Order, at Rock Creek, where the lender held back approximately 60 percent of accrued interest "as well as all default interest and attorneys' fees," with "[t]hese remaining items" to "be adjudicated among all creditors as part of the Receivership's claims process." Dkt. 838 at 27-28. Of the Venus tracts, the same report said that the Receiver "still cannot determine if he will be able to recover any value for the Receivership Estate," that a consulting expert retained in early 2024 on their highest and best use had produced work that "will be shared at a later date," and that "[i]f the development agreements with the City are finalized, the value of the properties could increase significantly." *Id.* at 59-60.

The Motion describes four options the Receiver has "begun presenting" to lenders. The fourth is a $100,000 payment in exchange for abandonment wherever "the principal balance plus 40% of the non-default interest exceeds the appraised value." Dkt. 953 ¶ 26. The status report that Dkt. 792 requires on the outcome of all lender discussions is not yet due; the Court extended that deadline to October 30, 2026. Dkt. 945; Dkt. 953 at 8 n.8.

**E. The settlement and the timing of the Motion.**

The Settlement Agreement was signed on October 8, 2026. Dkt. 954 App. 10. It required the Receiver to move for ratification within seven days and gave Liberty "a reasonable opportunity to review and comment upon the Motion to Ratify Settlement and the form of proposed order before filing." Id. App. 4 ¶ 2. On October 13 counsel for the Receiver circulated the proposed

motion to Barton by email. Barton stated that he opposed the Motion "as presently presented" and asked for additional information and three business days to review and confer. Dkt. 953 at 16. The Receiver filed the Motion on October 15, citing "the Settlement Agreement's deadlines," and filed the Settlement Agreement and its exhibits the same day as Dkt. 954. *Id.* The certificate of conference does not state that Barton consented to any part of the relief; the "partially unopposed" caption reflects the SEC's non-opposition. *Id.* The Agreement makes the Receiver responsible, at the estate's expense, for "any objection, litigation, appeal, or similar legal challenge to ratification," while Liberty's obligation "shall be limited to reasonable cooperation." Dkt. 954 App. 7 ¶ 12.

## IV. LEGAL STANDARD

A compromise must be fair, equitable, and in the estate's best interests. See *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). Review of a receivership disposition is for abuse of discretion, with record-supported findings and no legal error. See *SEC v. Barton*, 170 F.4th 938, 944–45 (5th Cir. 2026). Meaningful consideration of material factual disputes and an evidentiary basis for the ruling are required; not every objection requires a separate full adversary trial. See *Black v. UniBank*, No. 25-50986, slip op. at 25–28 (5th Cir. Aug. 25, 2026).

Under Dkt. 650 ¶¶ 92, 94, real-estate sales require further court authorization. Dkt. 63 § D.1 separately permits abandonment to a lienholder if the Receiver determines that a sale compliant with 28 U.S.C. § 2001 would not yield a net benefit; the basis for that determination must appear in his reports. Section D.2 addresses sale procedures and permissible valuation substitutes. A genuine private sale implicates § 2001(b)'s requirements, including appraisal, notice, minimum price, and higher-offer safeguards. See *Acadia Land Co. v. Horuff*, 110 F.2d 354, 354–55 (5th Cir. 1940); *SEC v. T-Bar Res., LLC*, No. 3:07-CV-1994-B, 2008 WL 4790987, at *3–4 (N.D. Tex. Oct.

28, 2008). Whether this transaction is a private sale or an authorized abandonment requires analysis of its operation, not its label. See also 28 U.S.C. § 2004 (personal property). Barton preserves his objection to the nunc pro tunc adoption of Dkt. 63 after vacatur of the initial receivership order, but assumes its terms for this response. Dkt. 419 ¶ 4; *SEC v. Barton,* 135 F.4th 206 (5th Cir. 2025) (jurisdictional dismissal).

## V. OBJECTIONS

### A. Lien priority, notice, and the actual effect of abandonment.

Dkt. 63 § D.1 authorizes abandonment "to the lienholder" where the lien consumes the value. It presupposes that the Court knows who the lienholder is and where it stands. The Motion does not supply that information for any of the three tracts the estate would give up.

The Motion describes the JMJ Loan as a second-lien obligation; calls the former Southern Star positions on Lynco and One Acre first liens; and does not identify the Ridgeview Loan's priority. Dkt. 953 ¶¶ 4, 7, 11. The July 2026 report mentions significant additional Ridgeview liens. Dkt. 838 at 61. The proposed model expressly omits other liens, while the retained DJD Northstar tract has an unidentified "another lienholder." Dkt. 953 at 13–14. No complete title reports, deeds of trust, assignments, or payoff statements accompany Dkt. 954. The Receiver must identify each instrument, parcel covered, lien priority, and current amount before reliance on asserted secured claims.

Priority matters because junior foreclosure generally leaves senior liens intact, while senior foreclosure may affect subordinate collateral interests according to their validity and priority. Dkt. 838 at 91 reports Circle H Contractors' approximately $64,000 infrastructure claim, but does not establish a perfected lien or its rank. The Receiver should identify affected interests, notify record lienholders, and explain how any claimed rights and claims-process remedies survive. Dkt. 954

App. 5 ¶ 4. Abandonment would remove these parcels from ordinary estate administration and allow foreclosure without the receivership stay as a barrier; it does not necessarily eliminate all federal jurisdiction over settlement enforcement. Dkt. 954 App. 9 ¶¶ 21–22. The order should specify which priority, claim-allowance, and personal-liability issues remain undecided.

**B. Debt allocation and unreconciled financial models.**

The Motion computes the estate's position tract by tract, assuming a sale at the stipulated value, a 4 percent brokerage fee, and payment of each loan at principal plus 40 percent of non-default interest. Dkt. 953 at 12-13. Table 3 restates that computation, in whole dollars, with the senior lien on each tract applied before the junior JMJ Loan.

Table 3. Illustrative priority-order amounts; unverified and before other rights/costs (Dkt. 953 at 12–13).

| Illustrative step | Ridgeview | Lynco | One Acre |
|---|---|---|---|
| Stipulated gross value | $2,650,000 | $1,430,000 | $285,000 |
| Net after stated taxes and 4% broker fee | $2,428,296 | $1,372,800 | $273,600 |
| Less stated senior loan formula | $2,043,509 | $877,680 | $133,861 |
| Value above stated senior lien | $384,787 | $495,120 | $139,739 |
| JMJ treatment | Junior balance still unpaid | Junior balance still unpaid | JMJ lien coverage not stated |

The stated figures yield approximately $1,019,646 above assumed senior liens across the three tracts before considering junior secured debt; that amount is not established estate equity. Dkt. 953 at 12–13. The Motion charges the junior JMJ Loan against Lynco before paying the described first-lien Wall009 Loan, carries a resulting Wall009 shortfall into One Acre, and reports a $636,093.19 aggregate shortfall. Applied in assumed priority order, Wall009 would be paid from Lynco, potentially leaving approximately $139,739 on One Acre after its stated senior DJD Loan, before other costs and competing interests. Table 3 is illustrative only: no distributable surplus is

established, and reordering cannot alone eliminate the aggregate debt-minus-proceeds shortfall. Cross-collateral instruments and applicable marshaling principles—not Barton's election—control. See *Sowell v. Fed. Reserve Bank of Dallas,* 268 U.S. 449, 456–57 (1925).

The Receiver must reconcile three distinct measures: the $7,133,166.32 aggregate claimed June 30 balance, his $4,710,789.38 principal-plus-40%-interest formula, and the Agreement's recitals, which use full non-default interest and claim a $1,091,271.99 final-tract deficit. Dkt. 953 at 12–13; Dkt. 954 App. 3 nn.3–5. The $2,422,376.94 difference between the first two measures consists of $745,482.61 in omitted non-default interest, $1,473,302.07 in default interest, and $203,592.26 in fees—not proven principal forgiveness. Ratification should not establish the validity, priority, or collectible amount of any balance. The Receiver should specify what obligations, if any, are discharged, held for the claims process, or enforceable against particular collateral or persons. Dkt. 792 at 2; Dkt. 838 at 28.

**C. The 2024 foreclosure ruling and integrated-parcel concerns.**

The proposed order would declare that the receivership stay does not bar Liberty's foreclosure. Dkt. 953-1 at 2. In 2024 this Court denied Southern Star's request for that relief on Lynco and One Acre, applying the three-factor test. See *SEC v. Wencke,* 742 F.2d 1230 (9th Cir. 1984). Dkt. 551. The elapsed time, current interest, and negotiated consideration may change the analysis, but the Receiver should address those changes and the earlier findings rather than leave them unexplained.

The Receiver reported Lynco at $1,590,000 in 2024, versus $1,430,000 now, without producing the appraisals. Dkt. 508 at 6; Dkt. 953 ¶ 3. He previously maintained that carving the building-and-road-access One Acre parcel from the surrounding DJD acreage would disproportionately reduce both values; the Court adopted that concern. Dkt. 508 at 7; Dkt. 551 at 3. The proposed settlement now contemplates separate foreclosure of One Acre while the estate

retains the surrounding DJD tract. The Receiver should address whether that parcel supplies frontage, access, utilities, easements, infrastructure, or development rights, and whether both appraisals reflect their relationship. The maps at Dkt. 954 App. 14–15 raise the question but do not establish an easement or landlocked condition.

The Receiver attributes deterioration partly to accrued interest. Dkt. 953 at 11 n.10. But default interest and $203,592.26 in claimed fees require supporting instruments and itemization; the negotiated model does not establish their enforceability. The Court should require a present comparison of market disposition and foreclosure, informed by the earlier conclusion that foreclosure could depress recovery. Dkts. 508, 551.

**D. Missing appraisals and unsupported per-acre assumptions.**

The parties stipulate to the latest appraised figures for settlement purposes, but provide neither the appraisals nor their dates, comparables, assumptions, and adjustments. Dkt. 953 ¶ 3; Dkt. 954 App. 2 n.2, App. 6 ¶ 10. Lynco's $1,430,000 over 63.764 acres implies about $22,426 per acre; retained DJD Northstar's $2,490,000 over 128.8645 acres implies about $19,323 per acre. Their blended figure is about $20,350 per acre. The Court should require verified closed-sale comparables, consideration, dates, acreage, zoning, access, utilities, development status, and adjustments supporting those valuations. Barton does not assert without such data that no sale occurred at those prices. The two tracts must be assessed separately: Lynco is proposed for abandonment; DJD Northstar is retained after the contemplated lien release.

The Receiver previously stated a $1,590,000 Lynco appraisal, while his July 2026 report described Ridgeview's 54 lots and a 2021 $61,000-per-lot take-down contract—subject to phased sales, additional liens, public improvements, and uncertainty about net recovery. Dkts. 508 at 6, 838 at 59–61. Those older measures do not establish present realizable value. They require

reconciliation with present as-is values, carrying and infrastructure costs, and integrated development alternatives. Liberty's Newmark appraisal of One Acre is reportedly $120,000, compared with the stipulated $285,000; both reports should be produced. Dkt. 954 App. 2 n.2.

Dkt. 63 § D.1 requires a no-net-benefit determination and its basis in the Receiver's reports. The Motion offers an economic calculation, but not the appraisal, lien, collateral, or allocation support needed to test it. The Receiver should identify the report containing his required analysis or supplement the record with its basis and supporting nonprivileged evidence. The issue is adequacy of the showing, not the absence of a separately captioned preapproval report.

**E. Sale-versus-abandonment classification and the net-benefit predicate.**

Dkt. 63 § D.1 authorizes abandonment where a § 2001 sale cannot yield a net estate benefit; it does not transform every negotiated land disposition into a private sale. Here the estate would relinquish its interests, and Liberty may later foreclose at its election; title is not necessarily conveyed directly to Liberty by ratification alone. The Court should first decide whether this is genuinely an abandonment or, in substance, a private sale to a creditor for the combined consideration. If a sale, § 2001(b) safeguards require analysis. If abandonment, the Receiver must still substantiate the § D.1 no-net-benefit determination. The Motion's use of Dkt. 63 § B.4(g), concerning settlement of contractual rights, does not independently establish authority to dispose of real property without the governing realty analysis. Dkt. 650 ¶¶ 92, 94.

Dkt. 792 describes a possible market sale free and clear with liens attaching to proceeds if lender negotiations fail, subject to further court instruction. That conditional alternative is a meaningful benchmark, not an automatic directive to sell. The Motion should explain why this lender proposal outperforms that alternative, whether other offers were considered, and how it fits the October 30 lender-status report required by Dkts. 792 and 945.

**F. Unquantified settlement consideration.**

The fourth option described in Dkt. 953 ¶ 26 permits a lender to pay $100,000 to the estate for abandonment of qualifying underwater collateral. Uniformity of offers is not itself proof of net benefit here. Consideration includes Liberty's $100,000 payment, release of its lien on retained DJD Northstar, a 0.30675% interest in 2999TC JMJ Equity, LLC, and reciprocal releases. Dkt. 953 at 2 n.4; Dkt. 954 App. 5–6. The Motion does not quantify the lien release's realizable value, remaining senior debt, membership interest, or obligations extinguished by the releases. The former Southern Star notes' acquisition terms and unitemized fees also remain undisclosed. Dkts. 498 ¶¶ 7, 9–10, 13; 953 ¶¶ 11, 13–14. The proper comparison is the aggregate net value of the consideration and alternatives—not an assumption that any component necessarily has zero value.

**G. Individual rights, guaranties, deficiencies, and tax treatment.**

Paragraphs 7–8 of the Agreement contemplate releases, but Barton is not a party and has not executed Exhibit B. Paragraph 8 conditions his individual release on doing so; Exhibit B would make Barton's release irrevocable while making the lender's release ineffective if he later sues on covered matters, with fee-shifting and unknown-claims language. Dkt. 954 App. 6 ¶¶ 7–8, App. 19–21 ¶¶ 3–8. Exhibit B ¶ 12 also preserves underlying notes, liens, and guaranties except as expressly modified. Paragraph 6 uses broad entity-related release language, including equity holders. Id. App. 5 ¶ 6. The order should not purport to release any independently owned claim of Barton or establish personal guaranty liability, a deficiency, or any waived defense. See *Stanford*, 927 F.3d at 845–50 (protecting truly independent claims); *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 895–901 (5th Cir. 2019) (recognizing that claims sufficiently derivative of receivership injuries may instead be barred). Barton seeks preservation of genuinely independent claims, not a ruling that every entity-related grievance belongs to him.

The Court should also require a loan-by-loan explanation of each borrower, alleged guarantor, collateral, debt balance, lien surviving foreclosure, release, and effective discharge date. Barton requests consideration of an express, lender-agreed waiver of personal deficiencies on identified obligations effective at a definite settlement event, without conditioning it on Exhibit B. That is a proposed negotiated protection, not a promise already in the Agreement or a waiver the Court can infer from it. In-rem foreclosure rights must be distinguished from personal collection rights. The Receiver should explain anticipated Forms 1099-A and 1099-C, entity tax classifications, and possible K-1 consequences; a guarantor is not treated as a debtor merely by guaranteeing a loan for 1099-C reporting. 26 C.F.R. § 1.6050P-1(d)(7). Neither absence of a personal Form 1099-C nor a no-deficiency covenant necessarily eliminates taxable gain or cancellation-of-debt income. See 26 U.S.C. § 108. Barton seeks accurate reporting and disclosure, not suppression of legally required forms or a present tax ruling.

### H. Record required for meaningful review.

The Receiver agreed to move within seven days while allowing Liberty to review the proposed filing; Barton requested three business days to review and confer. Dkt. 954 App. 4 ¶ 2; Dkt. 953 at 16. The Agreement extends the ratification window while an objection remains pending. The negotiated filing deadline did not compel the Court to rule without the information necessary to evaluate the proposed disposition.

Before ruling, the Receiver should provide available, nonprivileged support for: (1) current and prior appraisals and underlying comparable sales, including Newmark's One Acre report; (2) recorded security instruments, cross-collateral terms, assignments, and parcel-specific title/lien reports; (3) dated loan acquisitions and payoff-quality statements itemizing interest, fees, credits,

and asserted guaranties; (4) the identity and balance of the other DJD Northstar lienholder; (5) lender proposals and responses under Dkt. 792; (6) existing nonprivileged valuation/feasibility material relied upon concerning Venus; (7) the net value of each settlement component; (8) any cross-settlement consideration; and (9) a loan-by-loan discharge, deficiency, and anticipated tax-reporting schedule. Any unavailable or withheld item should be identified with the reason. These are requests for support of the movant's case; if broader discovery is necessary, Barton will seek it through applicable procedures.

**I. Relationship to the SPC settlement and reservation of claims.**

Dkt. 953 at 1–2 identifies Liberty's affiliation with SPC, their common August 12 mediation, and a contemplated global resolution. Bradford A. Phillips signed this Agreement for Liberty and American Benefit. Dkt. 954 App. 10. The D4 settlement was ratified and related transfers approved in Dkts. 926 and 944. Those public facts warrant a nonprivileged explanation of whether any payment, asset concession, release, or closing condition in one transaction was exchanged for terms in the other. Common affiliation alone does not prove improper coordination. Barton requests no determination of that question here and waives no otherwise available independent claim or defense. The separate private financing negotiations are not presented for adjudication in this Response.

**J. Automatic abandonment and effective-date protection.**

The Agreement makes ratification effective upon entry, whether appealable or not, and provides that after the $100,000 payment abandonment occurs automatically, before recordable notices follow. Dkt. 954 App. 4–5 ¶¶ 2–4. Delaying paperwork alone does not preserve property status. Paragraph 3 itself contemplates court-ordered stays, while paragraph 19 calls for a separately executed amendment. Barton asks that any conditional approval requiring a fourteen-

day implementation period be accompanied by a conforming executed amendment deferring both automatic abandonment and steps toward foreclosure. Any separate coercive stay will be requested through the applicable leave-and-stay procedure; calling a restraint a condition does not avoid that procedure. The need for a meaningful record is acute because interlocutory appeal of settlement ratification is not assured. See *SEC v. Barton*, 170 F.4th 938 (5th Cir. 2026).

## VI. HEARING

Under Dkt. 63 § A.1(b), a timely objection or anticipated objection requires the Receiver to obtain a hearing date and serve notice. The Receiver's certificate confirms Barton's opposition. Dkt. 953 at 16. Appraisal comparables, collateral priority, debt allocation, releases, and foreclosure consequences are materially disputed. Barton requests an evidentiary hearing and record-linked findings, particularly in light of Dkts. 508 and 551. See *Black, slip op. at 25–28*.

## VII. RELIEF REQUESTED

Defendant Barton respectfully requests that the Court:

1. Deny ratification on the present record or defer ruling pending an adequate supporting record;
2. Require the existing, nonprivileged materials and reconciliations identified in Part V.H, including comparable-sale support and a loan-by-loan liability and anticipated tax-reporting schedule;
3. Require identification and appropriate notice of affected record lienholders and known claimants, without presuming an unverified claim is a perfected lien;
4. Set the hearing required by Dkt. 63 § A.1(b), preferably after the October 30 status report, receive appropriate evidence, and enter findings on the disputed material facts;

5. Require a supported determination whether this transaction is a § 2001 sale or an abandonment satisfying Dkt. 63 § D.1, considered against the conditional market-sale alternative in Dkt. 792;
6. If approval is contemplated: (a) reserve all genuinely independent claims and defenses and state that Barton has not signed Exhibit B or conceded any guaranty, deficiency, lien validity, priority, or federal tax obligation; (b) identify the survival and effective discharge of each obligation, distinguishing personal liability from collateral rights, and consider conditioning approval on an express lender-agreed no-personal-deficiency protection; (c) require the parties to execute a conforming written amendment if a fourteen-day deferral of automatic abandonment is imposed, without prejudice to a separate stay application; and (d) leave unresolved default interest, fees, and other contested amounts for determination through the appropriate process; and
7. Grant such other and further relief as the Court deems just.

Dated: October 21, 2026

Respectfully submitted,

/***s/ Timothy Barton***
**Timothy L. Barton, Pro Se**
1846 East Rosemeade Parkway, #232
Carrollton, Texas 75007
Telephone: (214) 914-3811
timothy.barton@proton.me

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2026, I filed the foregoing Response and Objection using the Court's CM/ECF system, which sends notice to registered ECF participants.

***/s/ Timothy L. Barton***
**Timothy L. Barton**